**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
(212) 209-4800
David J. Molton
May Orenstein
Daniel J. Saval
Kerry Quinn

*Attorneys for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 15 Case** |
| | ) | |
| **Fairfield Sentry Limited, et al.,** | ) | **Case No. 10-13164 (BRL)** |
| | ) | |
| **Debtors in Foreign Proceedings.** | ) | **Jointly Administered** |
| | ) | |
| | ) | |
| | ) | |
| **Fairfield Sentry Limited (In Official** | ) | **Adv. Pro. No. 10-3635** |
| **Liquidation), acting by and through the** | ) | |
| **Foreign Representatives thereof,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Complaint** |
| | ) | |
| **-against-** | ) | |
| | ) | |
| **ABN AMRO Schweiz AG, Adler and Co** | ) | |
| **Privatbank AG, Allianzbank** | ) | |
| **SPA/Unifortune Conservative Side Pocket,** | ) | |
| **Alternative Investment Strategies, Arsenal** | ) | **Jury Trial Demanded** |
| **SPC, Arsenal SPC OBO Glasgow SEG Port,** | ) | |
| **Banca Arner SA, Banca Unione Di Credito,** | ) | |
| **Bank Hapoalim Switzerland Ltd., Bank** | ) | |
| **Julius Baer & Co. Ltd., Bank Sarasin &** | ) | |
| **CIE, Banque Cantonale Vaudoise, Banque** | ) | |
| **Cramer & CIE SA, Banque Safdie SA,** | ) | |
| **Barclay's Bank PLC Singapore Wealth,** | ) | |
| **BBH Lux Guardian II, BBH Lux Ref** | ) | |
| **Fairfield GRN, Bbva (Suisse) SA, BCV** | ) | |

**AMC Defensive AL Fund, BNP Paribas** )
**(Suisse) SA, BNP Paribas (Suisse) SA Ex** )
**Fortis, BNP Paribas (Suisse) SA Private,** )
**BSI AG, BSI Ex Banca Del Gottardo, Caceis** )
**Bank Luxembourg, CBB (BVI)/ The Alkima** )
**Fund, CBT Gems Low Vol Reg, Compagnie** )
**Bancaire Helvetique, Centrum Bank AG** )
**(AMS), Fidulex Managament Inc, Lariden** )
**Leu Ltd., Corner Banca SA, Credit Suisse** )
**AG Zuirch, Dexia Banque International A** )
**Luxembourg, Dresdner Bank Schweiz, EFG** )
**Bank SA Switzerland, EFG Eurofinancier** )
**D'Invest MCL, Endurance Absolute Ltd.** )
**Master, Fairfield Investment GCI, Fairfield** )
**Investment Fund Ltd., Fairfield Masters** )
**Ltd., Falcon Private Bank, FCL IFP Global** )
**Diversified CLS, FIF Advanced Ltd., Finter** )
**Bank Zuirch, Harmony Capital Fund Ltd.,** )
**IHAG Handelsbank AG, Incore Bank AG,** )
**JP Morgan (Suisse) SA, Karla** )
**Multistrategies Ltd., KBC Investments** )
**LTD., LGT Bank In Liechtenstein AG,** )
**Liechtensteinische LB Reinvest AMS,** )
**Lloyds TSB Bank Geneva, Lombard Odier** )
**Darier Hentsch & CIE, Longboat Ltd.,** )
**Master Capital and Hedge Fund, NBK** )
**Banque Privee Suisse SA, Pictet & CIE,** )
**PKB Privatbank AG, Private Space Ltd.,** )
**Quasar Funs SPC, RBC Dexia Investor** )
**Service Julius Baer SICAV, RBS Coutts** )
**Bank Ltd., Richourt AAA Multistrategies,** )
**Rothschold Bank AG Zurich (Dublin),** )
**Rothschild Bank Geneva (Dublin),** )
**Rothschild Lugano Dublin, Sella Bank AG,** )
**SIS Seeganintersettle, Six SIS Ltd., Societe** )
**Generale Bank & Trust, Soundview Fund,** )
**Springer Fund of Funds Ltd., Swisscanto** )
**FD Centre Clients A/C, T1 Global Fund** )
**Ltd., Teorema Alternative Strategies, UBS** )
**AG New York, UBS AG Zurich, UBS Jersey** )
**Nominees, Verwaltungs UND Privat-Bank** )
**AG Aktiengesellschaft (AMS), Vorarlberger** )
**Landes UND Hypothekenbank** )
**Ankiengesellscharft and Beneficial Owners** )
**of the Accounts Held in the Name of CGC** )

| NA 1-1000, | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

    Plaintiff Fairfield Sentry Limited ("Sentry"), through its attorneys Brown Rudnick LLP, for the complaint against Defendants, alleges the following based on personal knowledge or information derived from its books and records or from other sources, including, *inter alia*, court filings and statements of governmental agencies and other parties.

## PRELIMINARY STATEMENT

    1.  This action and similar actions brought by Sentry have been authorized by Sentry's court-appointed liquidators to recover payments made by Sentry for the redemption of Sentry shares prior to December 2008. Sentry and its affiliate funds, Fairfield Sigma Limited and Fairfield Lambda Limited, were created as a means for private investment in managed accounts established with Bernard L. Madoff Investment Securities LLC ("BLMIS"), a broker dealer purportedly providing investment advisory services. Following revelations in December 2008 that Bernard L. Madoff ("Madoff"), the proprietor of BLMIS, had been operating a Ponzi scheme, Sentry was involuntarily put into liquidation in proceedings commenced in the Commercial Division of the High Court of Justice, British Virgin Islands.

    2.  From Sentry's inception until the disclosure of Madoff's fraud, substantially all investor funds, net of fees and expenses, raised by Sentry through the sale of its shares were transferred to BLMIS for investment in accounts managed by Madoff. Prior to December 2008, the voting, participating shares of Sentry, $.01 par

value per share (the "Shares") were redeemable in accordance with their terms for a price equal to their "Net Asset Value." Net Asset Value was to be determined, in accordance with applicable accounting standards, as the value of the assets of Sentry divided by number of Shares outstanding, net of certain expenses ("Net Asset Value"). From time to time, in order to make payments believed by Sentry to be due upon redemption of Shares ("Redemption Payments"), Sentry withdrew funds from its BLMIS accounts.

3.    At all relevant times, Sentry believed funds received by it from BLMIS were the proceeds from the sale of securities held by BLMIS for the account of Sentry. Sentry furthermore believed that the amount, per share, paid by it for each Share redeemed was equal to the per share Net Asset Value.

4.    At all relevant times, Sentry was mistaken both as to the source of the funds received by it from BLMIS and the value and existence of assets held for its account by BLMIS. Upon information and belief, none of the securities shown on statements provided to Sentry by BLMIS as being held for Sentry's account existed in fact. Furthermore, upon information and belief, amounts withdrawn by Sentry from its accounts with BLMIS, believed by Sentry to be the proceeds from the sale of securities held by BLMIS for Sentry, were, in fact, derived from funds obtained by BLMIS from deposits made by Sentry or from other investors and customers of BLMIS. As a result of these mistakes, at all relevant times, the Net Asset Value of each Share redeemed was miscalculated, and Redemption Payments were mistakenly made for amounts far in excess of the actual Net Asset Value of Shares redeemed.

5.    During the period from and after April 20, 2004, Sentry made Redemption Payments aggregating USD $38,257,152.53 to the above beneficiaries of accounts held in

the name of CGC NA (collectively, the "Citco Defendants").  At the time such payments were made, Sentry mistakenly believed that such payments were in the amount of the Net Asset Value of the Shares tendered at the time of redemption.  In fact, however, the Redemption Payments made to the Citco Defendants far exceeded the actual Net Asset Value of the Shares redeemed.  Moreover, to the extent that the funds used to pay such Redemption Payments were made with amounts that had been withdrawn by Sentry from their BLMIS accounts, such amounts were not, as Sentry believed them to be, proceeds of the liquidation of securities held for their accounts.  On information and belief, any amounts obtained by Sentry from BLMIS to make Redemption Payments to the Citco Defendants were obtained from Sentry's investors other than the Citco Defendants or other investors who had made deposits, directly or indirectly, with BLMIS.

6.    Upon information and belief, the Citco Defendants have either retained the Redemption Payments made to them by Sentry for their own account and benefit or, alternatively, paid all or some portion of such payments to or for the account of persons or entities (the "Beneficial Shareholders") for whom the Citco Defendants may have subscribed for shares of Sentry in the capacity of trustee, agent, representative, nominee or custodian.

7.    In December 2008, it became known to Sentry that BLMIS had been operated for many years by Madoff as a massive Ponzi scheme and that account statements rendered by BLMIS prior to December 2008, showing that Sentry had securities having a market value in excess of $6 billion on account with BLMIS, were entirely fictitious.  Following the revelation of the fraud, Sentry's board of directors suspended any further redemptions of Sentry shares and the calculation of the Net Asset

5

Value.  As of December 2008 and presently, Sentry has approximately 4.7 million shares outstanding.

8.      Sentry's actual assets are estimated to be far less than the amount needed by Sentry to satisfy claims that have been or may be asserted against it.  Irving H. Picard, the Trustee appointed by the United States District Court for the Southern District of New York for the liquidation of BLMIS (the "BLMIS Trustee"), has asserted claims against Sentry in an adversary proceeding pending before the United States Bankruptcy Court of the Southern District of New York, Picard v. Fairfield Sentry Limited, et al., No. 08-01789 (BRL) (the "BLMIS Adversary Proceeding").  Pursuant to the complaint filed by in the BLMIS Adversary Proceedings, the BLMIS Trustee seeks recovery from Sentry of approximately $3.2 billion transferred to it from BLMIS, which funds, the BLMIS Trustee alleges, were the misappropriated assets of other direct and indirect investors of BLMIS.  A substantial amount of such transferred funds were applied by Sentry to the making of Redemption Payments.

9.      Unless Redemption Payments mistakenly paid to shareholders are recovered by Sentry, Sentry will be unable to satisfy its liabilities and claims that have been made or are expected to be made against it.  Moreover, to the extent such liabilities and claims must be satisfied solely from Sentry's current assets, the Defendants will have been unjustly enriched since they will not bear their proportionate share of such liabilities and claims, but rather Defendants would retain a windfall at the expense of other shareholders, claimants and creditors of Sentry.

**JURISDICTION AND VENUE**

10.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1334(b), as this adversary proceeding arises under, arises in and/or relates to the Chapter 15 proceedings of the above-captioned Debtors, In re Fairfield Sentry Limited, et al., No. 10-13164 (BRL), pending in this Court.  Additionally, pursuant to section 78eee(b)(2)(A)(iii) of the Securities Investor Protection Act ("SIPA"), which incorporates 28 U.S.C. § 1334(b) and applicable provisions of Title 11 of the United States Code, jurisdiction is also proper in this Court because this action also relates to the consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, pending in this Court under the caption Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, SIPA Liquidation No. 08-1789 (BRL).  Pursuant to the standing order of reference of the United States District Court for the Southern District of New York, dated July 10, 1984, all proceedings related to cases under Title 11 of the United States Code (as amended, the "Bankruptcy Code") are referred to this Court for adjudication.

11.     This is a core proceeding under 28 U.S.C. §§ 157(b)(2).  Should the Court determine this to be a non-core proceeding, Plaintiff consents to entry of final judgment and order by this Court.

12.     This Court has jurisdiction over the Citco Defendants and any Beneficial Shareholders pursuant to Rules 7004(d) and (f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") because the Citco Defendants and the Beneficial Shareholders, on information and belief, conducted investment transactions from within or directed to the United States.

7

13.     Moreover, upon information and belief, this Court has jurisdiction over the Citco Defendants and any Beneficial Shareholders by virtue of the legally binding and valid agreements and representations set forth in one or more Subscription Agreements the Citco Defendants entered into with Sentry (collectively, the "Subscription Agreement").

14.     The Subscription Agreement provides for, *inter alia*, the irrevocable submission by the Citco Defendants to the jurisdiction of the New York courts with respect to any proceeding in respect of Sentry and the Citco Defendants' consent to service of process by the mailing of such process to the Citco Defendants. Furthermore, by executing the Subscription Agreement, the Citco Defendants agreed to all terms and conditions contained therein, including the express provision that any agreement made by the Citco Defendants in the Subscription Agreement would also apply to any other person for whom the Citco Defendants was subscribing as trustee, agent, representative, or nominee – i.e., all Beneficial Shareholders. Moreover, by executing the Subscription Agreement, the Citco Defendants represented that they had all requisite authority from Beneficial Shareholders to execute and perform any and all obligations on their behalf, and also agreed to indemnify Sentry for any damages resulting from an assertion by a Beneficial Shareholder that the Citco Defendants lacked proper authorization to enter into the Subscription Agreement or perform the obligations thereof.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## PARTIES

16.     Sentry, a British Virgin Islands company, was organized in 1990 under the International Business Company Act of the British Virgin Islands and was subsequently

re-registered as a business company under the BVI Business Companies Act 2004. Sentry's registered agent is Codan Trust company (B.V.I.) located at Romasco Place, Wickhams Cay 1, Road Town, Tortola, BVI. Sentry is currently in liquidation in proceedings commenced on April 21, 2009 in the Commercial Division of the High Court of Justice, British Virgin Islands (the "BVI Court").

17.    The Citco Defendants were, at all relevant times, registered holders of Shares. Upon information and belief, the Citco Defendants are various corporate entities and individuals organized and residing in various jurisdictions. Upon information and belief, the Citco Defendants subscribed for the purchase of Shares by entering into one or more Subscription Agreements with Sentry (collectively, the "Subscription Agreement"). All purchases of Shares by the Citco Defendants were subject to the terms of the Subscription Agreement.

18.    Defendants "Beneficial Owners of the Accounts Held in the Name of CGC NA 1-1000" are any persons or entities having a beneficial ownership or interests in Shares of Sentry issued to the Citco Defendants and on whose behalf the Citco Defendants were acting as trustee, agent, representative, or nominee (individually, a "Beneficial Shareholder" and collectively, "Beneficial Shareholders").

## NOTICE PURSUANT TO FED. R. CIV. P. 44.1

19.    Issues to be resolved in this case may be determined to be governed by the laws of the British Virgin Islands. In that event, Plaintiff intends to rely upon the applicable laws of that territory.

## FACTUAL ALLEGATIONS

20.      Sentry was the largest of all so-called "feeder funds" to maintain accounts with BLMIS.  Its account statements with BLMIS as of the end of October 2008 showed in excess of $6 billion of assets supposedly held by BLMIS.  As stated in its offering materials, Sentry's investment objective was to achieve capital appreciation of its assets primarily through investments in BLMIS.  Sentry raised funds for investment in BLMIS by selling its Shares, which were listed on the Irish Stock Exchange in Dublin, to qualified investors.

21.      Substantially all of the funds (some 95%) raised by Sentry from sales of its Shares, net of fees and expenses, were turned over to BLMIS, and supposedly credited to accounts held in the name of Sentry with BLMIS, purportedly for use in a split-strike conversion investment strategy.  In accordance with Sentry's Articles of Association and other relevant documents governing Sentry and its Shares, from time to time, Sentry paid to shareholders, for each Share tendered for redemption, an amount that was based on Sentry's Net Asset Value, as it was then calculated.

22.      In calculating Net Asset Value, Sentry used and relied upon account statements rendered from time to time by BLMIS purportedly showing securities or interests or rights in securities held by BLMIS for the account of Sentry.  Generally, all securities identified on BLMIS account statements were traded on public exchanges and had readily ascertainable market values.

23.      Upon information and belief, the purchases and sales of securities and other transactions shown on the account statements provided by BLMIS as having been made for the account of Sentry never in fact occurred and no investments were ever made

by BLMIS for the account of Sentry.  Upon information and belief, all assets shown on BLMIS account statements rendered to Sentry were entirely fictitious.  Further, upon information and belief, funds deposited by Sentry with BLMIS for the purchase of securities to be held by BLMIS for the account of Sentry were used by Madoff to pay requests for payments or redemptions from other BLMIS account holders or were misappropriated by Madoff for other unauthorized uses.

24.    From time to time, to fund Redemption Payments, Sentry requested funds from BLMIS.  Sentry believed that the funds provided to it in response to such requests represented proceeds from the sale or liquidation of securities or positions held for the account of Sentry.  Upon information and belief, however, payments made by BLMIS purportedly representing the proceeds of securities transactions were in fact deposits made with BLMIS by Sentry and/or other investors with BLMIS.

25.    During the period from and after April 20, 2004, the Citco Defendants received Redemption Payments totaling USD $38,257,152.53 from Sentry in respect of Shares tendered for redemption.

26.    On December 11, 2008, the FBI arrested Madoff for violation of federal securities laws.  On that same day, the United States Attorney brought criminal charges against Madoff, alleging that Madoff ran a multi-billion dollar Ponzi scheme.  United States v. Madoff, No. O8-mj-2735 (S.D.N.Y. filed Dec. 11, 2008).  Upon arrest, Madoff was reported to have told the agents that "there is no innocent explanation" for the fraudulent scheme he had orchestrated and confessed that he "paid investors with money that wasn't there." Although Madoff had purported to invest funds obtained from investors and feeder funds in securities, in reality, funds obtained from investors were not

used to purchase securities.  Instead, new funds obtained from investors, including amounts obtained from Sentry, Sigma and Lambda, were misappropriated by Madoff and used to fund withdrawals from accounts held by other investors with BLMIS, including Sentry.  In March 2009, Madoff pleaded guilty to the criminal charges brought against him, and he is now serving a 150-year sentence in federal prison.

27.    On December 11, 2008, the United States Securities and Exchange Commission ("SEC") filed an emergency action in the Southern District of New York to halt ongoing fraudulent offerings of securities and investment advisory fraud by Madoff and BLMIS.  <u>SEC v. Madoff</u>, No. 08-cv-10791 (S.D.N.Y. filed Dec. 11, 2008). On February 9, 2009, the SEC submitted to the Court a proposed partial judgment, to which Madoff consented, imposing a permanent injunction and continuing relief against him, including a permanent freezing of his assets.

28.    Following the revelation of the fraud, Sentry's board of directors suspended any further redemptions of Sentry shares and the calculation of the Net Asset Value. As of December 2008 and presently, Sentry has approximately 4.7 million shares outstanding.

29.    On December 15, 2008, a trustee was appointed for the liquidation of the BLMIS estate.  Proceedings for such liquidation are pending in the Bankruptcy Court for the Southern District of New York under the caption <u>Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC</u>, SIPA Liquidation No. 08-1789 (BRL).

30.    On May 18, 2009, the BLMIS Trustee commenced the BLMIS Adversary Proceeding against Sentry and other defendants.  In the BLMIS Adversary Proceeding,

the BLMIS Trustee seeks to recover approximately $3.5 billion from Sentry and others on account of transfers that BLMIS allegedly made to Sentry and other persons during the six year period preceding the filing of the BLMIS liquidation proceedings. These transfers are alleged by the BLMIS Trustee to have been preferential transfers under Section 547 of the Bankruptcy Code and/or fraudulent transfers under Sections 544 and 548 of the Bankruptcy Code and applicable state law. The BLMIS Adversary Proceeding is currently pending and the claims asserted therein are unresolved.

31.     On April 21, 2009, shareholders of Sentry applied to the BVI Court for the appointment of a liquidator over Sentry. On July 21, 2009, Messrs. Kenneth Krys and Christopher Stride were appointed by the BVI Court as the joint liquidators and foreign representatives of Sentry in its liquidation proceeding, Matter No. BVIHCV2009/136, which is currently pending before the BVI Court under Part VI, titled "Liquidation," of the Insolvency Act, 2003 of the BVI. Effective on September 8, 2010, in accordance with BVI law, Christopher Stride resigned from his position as official liquidator for Sentry and was replaced by Ms. Joanna Lau, who now serves as joint liquidator and foreign representative for Sentry along with Mr. Krys (together, the "Foreign Representatives").

32.     Upon appointment, the Foreign Representatives obtained, among other things, custody and control of Sentry assets, the power to do all acts and execute, in the name and on behalf of Sentry, any deeds, receipts or other documents, and the power to compromise claims, commence litigation and to dispose of property on behalf of Sentry.

33.     Acting in accordance with authority afforded to them as official liquidators, and with the consent of the BVI Court, the Foreign Representatives

authorized this and similar actions against redeeming shareholders to be commenced for and in the name of Sentry.

## FIRST CLAIM
### *(Unjust Enrichment- Against the Citco Defendants)*

34.     Sentry repeats and alleges again the allegations contained in paragraphs 1 through 33 above as if set forth herein.

35.     As alleged above, to the extent amounts were withdrawn from BLMIS to make Redemption Payments to the Citco Defendants, such withdrawn funds consisted of funds deposited with BLMIS by Sentry and other investors and were not, as Sentry mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

36.     By reason of its receipt of funds deposited by other investors with BLMIS, the Citco Defendants have been unjustly enriched to the detriment of Sentry, its creditors and the current holders of Shares in Sentry.

37.     It would offend principles of equity and good conscience to permit the Citco Defendants to retain the Redemption Payments it received from Sentry.

38.     Sentry is entitled to recover from the Citco Defendants a sum equal to the Redemption Payments received by them from Sentry.

## SECOND CLAIM
### *(Unjust Enrichment- Against Beneficial Shareholders)*

39.     Sentry repeats and alleges again the allegations contained in paragraphs 1 through 38 above as if set forth herein.

40.     Upon information and belief, the Citco Defendants may have subscribed to all or some portion of the Shares issued to them under the Subscription Agreement in the capacity of trustee, agent, representative, or nominee for Beneficial Shareholders.

41.     Upon information and belief, the Citco Defendants may have paid to or credited some or all of the Redemptions Payments received by them to accounts of Beneficial Shareholders.   As alleged above, any payments received by Beneficial Shareholders upon the redemption of Shares issued to the Citco Defendants consisted of funds invested with BLMIS by Sentry and other investors and were not, as Sentry mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

42.     To the extent that a Beneficial Shareholder received any portion of the Redemption Payments paid to the Citco Defendants in their capacity as trustee, agent, representative, or nominee for a Beneficial Shareholder, such Beneficial Shareholder has been unjustly enriched to the detriment of Sentry, its creditors and the current holders of Shares in Sentry.

43.     It would offend principles of equity and good conscience to permit any Beneficial Shareholders to retain the Redemption Payments made by Sentry.

44.     Sentry is entitled to recover from any Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of Sentry held by them through the Citco Defendants.

## THIRD CLAIM
### *(Money Had and Received-Against the Citco Defendants)*

45.     Sentry repeats and alleges again the allegations contained in paragraphs 1 through 44 above as if set forth herein.

46.     As alleged above, the Redemption Payments received by the Citco Defendants upon the tender of Shares consisted of amounts deposited with BLMIS by Sentry and other investors to BLMIS and were not, as Sentry mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

47.     By reason of their receipt of funds representing the deposits with BLMIS of Sentry and other investors, the Citco Defendants have been unjustly enriched to the detriment of Sentry, its creditors and the current holders of Shares in Sentry.

48.     Furthermore, the Citco Defendants were not entitled to receive the Redemption Payments because the amounts of the Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received by the Citco Defendants for their redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

49.     To the extent that Redemption Payments are not recovered by Sentry, the loss will be disproportionately and unjustly borne by Sentry, its creditors and the current holders of shares in Sentry.

50.     It would offend principles of equity and good conscience to permit the Citco Defendants to retain the Redemption Payments they received from Sentry.

51.     By reason of the foregoing, Sentry is entitled to recover from the Citco Defendants a sum in an amount equal to the Redemption Payments.

## FOURTH CLAIM
### (Money Had and Received-Against Beneficial Shareholders)

52.     Sentry repeats and alleges again the allegations contained in paragraphs 1 through 51 above as if set forth herein.

53.     Upon information and belief, the Citco Defendants may have subscribed to all or some portion of the Shares issued to them under the Subscription Agreement in the capacity of trustee, agent, representative, or nominee for Beneficial Shareholders.

54.     Upon information and belief, the Citco Defendants may have paid to or credited some or all of the Redemptions Payments received by them to accounts of Beneficial Shareholders.   As alleged above, any payments received by Beneficial Shareholder upon the redemption of Shares issued to the Citco Defendants consisted of amounts deposited with BLMIS by Sentry or by other investors and were not, as Sentry mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

55.     To the extent that a Beneficial Shareholder received any portion of the Redemption Payments paid to the Citco Defendants in their capacity as trustee, agent, representative, or nominee for Beneficial Shareholders, such Beneficial Shareholders have been unjustly enriched to the detriment of Sentry, its creditors and the current holders of Shares in Sentry.

56.     Furthermore, Beneficial Shareholders were not entitled to receive any portion of the Redemption Payments paid to the Citco Defendants upon the redemption of Shares issued to them in their capacity as trustee, agent, representative, or nominee for Beneficial Shareholders because the amounts transferred by Sentry with respect to

Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received for redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

57.    To the extent the Redemption Payments are not recovered by Sentry, the loss will be disproportionately and unjustly borne solely by Sentry, its creditors and the current holders of Shares in Sentry.

58.    It would offend principles of equity and good conscience to permit Beneficial Shareholders to retain the Redemption Payments made by Sentry.

59.    By reason of the foregoing, Sentry is entitled to recover from Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of Sentry held for them through the Citco Defendants.

## FIFTH CLAIM
### *(Mistaken Payment-Against the Citco Defendants)*

60.    Sentry repeats and alleges the allegations contained in paragraphs 1 through 59 above as if set forth herein.

61.    As described above, Sentry made each of the Redemption Payments to the Citco Defendants under the mistaken belief that the amounts paid to the Citco Defendants represented the proceeds of the sale of securities held for Sentry in accounts established with BLMIS.

62.    Upon information and belief, however, BLMIS did not hold any securities or interests of securities on account for Sentry and the payments made by BLMIS to

Sentry to fund Redemption Payments to the Citco Defendants represented, in fact, funds deposited with BLMIS by Sentry and other investors.

63.    The Redemption Payments, while benefiting the Citco Defendants, were made to the detriment of Sentry, its creditors and the current holders of their Shares.

64.    Additionally, the Citco Defendants were not entitled to receive the Redemption Payments because, as was unknown to Sentry, the amounts transferred by Sentry with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received by the Citco Defendants for its redemption of Shares to be in excess of the actual Net Asset Value of such Shares. In these circumstances, the Redemption Payments should be returned for the benefit of Sentry, its creditors and the current holders of Shares in Sentry.

65.    To the extent the Redemption Payments are not recovered by Sentry, the loss will be disproportionately and unjustly borne solely by Sentry, their creditors and the current holders of Shares in Sentry.

66.    It would thus offend principles of equity and good conscience to permit the Citco Defendants to retain the Redemption Payments.

67.    By reason of the foregoing, Sentry is entitled to recover from the Citco Defendants a sum in an amount equal to the Redemption Payments.

## SIXTH CLAIM
### *(Mistaken Payment-Against Beneficial Holders)*

68.    Sentry repeats and alleges again the allegations contained in paragraphs 1 through 67 above as if set forth herein.

69.     As described above, Sentry made each of the Redemption Payments to the Citco Defendants under the mistaken belief that the amounts paid to the Citco Defendants represented the proceeds of the sale of securities held for Sentry in accounts established with BLMIS.

70.     However, upon information and belief, BLMIS did not hold any securities or interests of securities on account for Sentry and the payments made by BLMIS to Sentry to fund Redemption Payments to the Citco Defendants represented, in fact, amounts deposited with  BLMIS by Sentry and other investors.

71.     Upon information and belief, the Citco Defendants may have paid to or credited some or all of the redemptions payments received by them to accounts of Beneficial Shareholders.   As alleged above, any payments received by Beneficial Shareholders upon the redemption of shares issued to the Citco Defendants consisted of amounts deposited with BLMIS by Sentry and other investors and were not the proceeds of the sale of assets held by BLMIS for the account of Sentry.

72.     Additionally, Beneficial Shareholders were not entitled to receive any portion of the Redemption Payments received by the Citco Defendants upon the redemption of Shares issued to them in their capacity as trustee, agent, representative, or nominee for Beneficial Shareholders because, as was unknown to Sentry, the amounts transferred by Sentry with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the Redemption Payments received by the Citco Defendants for their redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

73.     The Redemption Payments, while benefiting any Beneficial Shareholder receiving any portion thereof, were made to the detriment of Sentry, its creditors and the current holders of Shares in Sentry.

74.     It would thus offend principles of equity and good conscience to permit any Beneficial Shareholder to retain the Redemption Payments.

75.     By reason of the foregoing, Sentry is entitled to recover from any Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of Sentry held for them through the Citco Defendants.

## SEVENTH CLAIM
### *(Constructive Trust-Against all Defendants)*

76.     Sentry repeats and alleges again the allegations contained in paragraphs 1 through 75 above as if set forth herein.

77.     As described above, upon receipt of a redemption request, Sentry made each redemption payment to the Citco Defendants based on a miscalculated and inflated Net Asset Value, which caused Redemption Payments to be in excess of the actual Net Asset Value of redeemed Shares.

78.     As alleged above, the Redemption Payments represented deposits with BLMIS made by Sentry and other investors and were not, as Sentry mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

79.     Upon information and belief, the Citco Defendants may have paid some or all of the Redemptions Payments they received to Beneficial Shareholders.

80.     By reason of their receipt of some or all of the Redemption Payments, Defendants have been unjustly enriched to the detriment of Sentry, its creditors and the current holders of Shares in Sentry.

81.     Furthermore, Defendants were not entitled to receive the Redemption Payments because the amounts transferred by Sentry with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received by the Citco Defendants for their redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

82.     It would offend principles of equity and good conscience to permit Defendants to retain the Redemption Payments.

83.     By reason of the foregoing, a constructive trust should be imposed on the Redemption Payments that were received by Defendants for the benefit of Sentry, its creditors and the current holders of Shares in Sentry.

## PRAYER FOR RELIEF

WHEREFORE, Sentry requests the following relief:

84.     On the First, Third and Fifth Claims, judgment for compensatory damages in favor of Sentry against the Citco Defendants in an amount representing the Redemption Payments made to the Citco Defendants, plus interest;

85.     On the Second, Fourth and Sixth Claims, judgment for compensatory damages in favor of Sentry against Beneficial Shareholders in an amount representing the amounts of Redemption Payments received by Beneficial Shareholders, plus interest;

86.    On the Seventh Claim, imposing a constructive trust on Redemption Payments; and

87.    Awarding Sentry the costs and disbursements of the action, including reasonable attorneys' fees and accountants' and experts' fees, costs and expenses;

88.    Granting Sentry such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff Fairfield Sentry Limited demands a trial by jury.

Dated: New York, New York
        September 21, 2010

BROWN RUDNICK LLP

By: /s/ Kerry L. Quinn
        David J. Molton
        May Orenstein
        Daniel J. Saval
        Kerry L. Quinn

Seven Times Square
New York, New York 10036
Telephone: 212.209.4800
Facsimile: 212.209.4801

*Attorneys for the Foreign Representatives*