Hearing Date:  October 26, 2010 at 10:00 a.m.
Objection Deadline:  October 12, 2010 at 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 15 Case |
| | ) |
| Fairfield Sentry Limited, et al., | ) Case No. 10-13164 (BRL) |
| | ) |
|     Debtors in Foreign Proceedings. | ) Jointly Administered |
| | ) |
| | ) Related Adversary |
| | ) Proceedings Listed in Exhibit A |
| | ) |

**MOTION OF FOREIGN REPRESENTATIVES SEEKING (1) CONSOLIDATION OF CERTAIN ADVERSARY PROCEEDINGS; (2) IMPLEMENTATION OF A COORDINATED SCHEDULE FOR THOSE PROCEEDINGS AND (3) ENTRY OF A CASE MANAGEMENT ORDER TO GOVERN ALL ADVERSARY PROCEEDINGS AND CONTESTED MATTERS RELATED TO THESE CHAPTER 15 CASES**

BROWN RUDNICK LLP
David J. Molton
May Orenstein
Daniel J. Saval
Kerry L. Quinn
Seven Times Square
New York, NY 10036
(212) 209-4800

September 23, 2010

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

JURISDICTION AND VENUE ................................................................................................... 5

FACTUAL BACKGROUND ....................................................................................................... 5

    Background to the Debtors' Investments with BLMIS ..................................................... 5

    Calculation of Net Asset Value and Mistaken Payments to Redeemers ........................... 6

    Exposure of Madoff Fraud ............................................................................................... 7

    Procedural History of Debtors' Liquidations ................................................................... 8

ARGUMENT .............................................................................................................................. 9

I.      THE REDEEMER ACTIONS SHOULD BE CONSOLIDATED FOR PRE-
       TRIAL AND DISCOVERY PURPOSES ......................................................................... 9

    A.    The Redeemer Actions Involve Common Issues of Fact......................................... 10

    B.    The Redeemer Actions Involve Common Issues of Law ........................................ 11

    C.    Consolidation Will Promote Efficiency.................................................................. 12

    D.    The Court May Consolidate Future Related Redeemer Actions .............................. 12

II.    THE REDEEMER ACTIONS SHOULD PROGRESS ON A COORDINATED
       SCHEDULE.................................................................................................................... 13

III.   CASE MANAGEMENT PROCEDURES SHOULD BE IMPLEMENTED TO
       PROMOTE THE EFFICIENT ADMINISTRATION OF ALL ADVERSARY
       PROCEEDINGS AND CONTESTED MATTERS RELATED TO DEBTORS'
       CHAPTER 15 CASES ..................................................................................................... 13

CONCLUSION............................................................................................................................ 14

# TABLE OF AUTHORITIES

## Caselaw

BD v. DeBuono, 193 F.R.D. 117 (S.D.N.Y. 2000) ................................................................ 10-11

Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121 (2d Cir. 1999)........................................12

Equal Employment Opportunity Comm'n v. Die Fliedermaus, L.L.C.,
    77 F. Supp. 2d 460 (S.D.N.Y. 1999)............................................................................10, 12

In re Fairfield Sentry Limited, et al., No. 10-13164 (BRL)............................................................1

Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC,
    208 F.R.D. 59 (S.D.N.Y. 2002) ....................................................................................10, 12

Johnson v. Celotex Corp., 899 F.2d 1281 (2d Cir. 1990) ........................................................ 9-10

Nationsrent, Inc. v. Sheffield (In re NationsRent, Inc.),
    2003 WL 21414667 (Bankr. D. Del. June 18, 2003)..........................................................12

Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Labranche & Co.,
    229 F.R.D. 395 (S.D.N.Y. 2004) ......................................................................................12

Primavera Familienstiftung v. Askin, 173 F.R.D. 115 (S.D.N.Y. 1997)........................................9

Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC,
    SIPA Liquidation No. 08-1789 (BRL)..................................................................................8

Skwortz v. Crayfish Co. Ltd., 2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) .............................10

## Statutes and Rules

11 U.S.C. § 105(a) ....................................................................................... 1, 4, 5, 13-14

11 U.S.C. § 105(d) ....................................................................................................................4

11 U.S.C. § 1501 .......................................................................................................................5

11 U.S.C. § 1521(a) ..........................................................................................................1, 4, 5, 14

28 U.S.C. § 157 ..........................................................................................................................5

28 U.S.C. § 1334........................................................................................................................2, 5

28 U.S.C. § 1408........................................................................................................................5

28 U.S.C. § 1409(a) ....................................................................................................................5

28 U.S.C. § 1452 .........................................................................................................................2

Fed. R. Civ. P. 42(a) ...............................................................................................................9, 11

Fed. R. Bankr. P. 7042 .......................................................................................................1, 3, 5

Fed. R. Bankr. P. 9014 ................................................................................................................5

Fed. R. Bankr. P. 9017 ................................................................................................................5

Kenneth Krys and Joanna Lau (together with their predecessors, the "Foreign Representatives" or "Liquidators"), in their capacities as foreign representatives and liquidators of Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda," and together with Sentry and Sigma, the "Debtors") respectfully move for (1) consolidation of the adversary proceedings listed in Exhibit A, and any other actions now pending or later filed in this district that arise out of or are related to the same facts, for pretrial and discovery purposes, pursuant to 11 U.S.C. §§ 105(a) and 1521(a)(7) and Rule 7042 of the Federal Rules of Bankruptcy Procedure (a proposed order is attached as Exhibit B); (2) entry of a preliminary scheduling order to govern the adversary proceedings listed in Exhibit A (a proposed order is attached as Exhibit C), and (3) entry of a case management order to govern all adversary proceedings and contested matters related to the Debtors' Chapter 15 cases, captioned In re Fairfield Sentry Limited, et al., No. 10-13164 (BRL) (a proposed order is attached as Exhibit D).

In support of the Motion, the Foreign Representatives respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.      Sentry, like its sister funds, Lambda and Sigma, is presently in liquidation proceedings pending before the Commercial Division of the High Court of Justice, British Virgin Islands (the "BVI Court").  Pursuant to an Order of this Court issued July 22, 2010 (the "Recognition Order"), these foreign liquidation proceedings have been recognized by this Court as "foreign main proceedings" under Chapter 15.

2.      Sentry was the largest of all the so-called "feeder funds" to invest with Bernard L. Madoff ("Madoff") through Bernard L. Madoff Investment Securities LLC ("BLMIS").  As of December 2008, when Madoff's fraud was discovered, over $6 billion of assets were purportedly held on account with BLMIS for Sentry.  In order to maximize recovery for creditors and other entities and persons with valid claims in the Debtors' BVI liquidation proceedings, the Foreign

Representatives have directed the filing of numerous action on behalf of the Debtors, including actions (the "Redeemer Actions") brought against entities and individuals ("Redeemers") who, prior to the disclosure of the Madoff fraud, received payments upon the redemption of shares issued by the Debtors ("Redemption Payments").  As alleged in the complaints filed in the Redeemer Actions, such payments were made by the Debtors in mistaken reliance on false account statements rendered by BLMIS and on the mistaken belief that the monies paid by BLMIS to Sentry and then by Sentry to Redeemers represented the liquidated proceeds of sales of assets belonging to the Debtors.

3.      The Foreign Representatives began commencing Redeemer Actions in the United States in April 2010, with the first such Redeemer Action filed in the Supreme Court of the State of New York ("New York State Court" ) in early April.  Prior to that, the Foreign Representatives had been filing protective writs in the British Virgin Islands to prevent claims from becoming time barred.  Since April 2010, all actions against Redeemers are, to the extent possible, being pursued in the United States.  From April 2010 until July 2010, prior to the Recognition Order, the Foreign Representatives directed the filing of numerous actions against Redeemers in New York State Court.  Following the Recognition Order, all actions against Redeemers have been commenced as Adversary Proceedings in connection with the Funds' Chapter 15 cases.  Further, all of the Redeemer Actions that had been previously commenced in New York State Court (to the extent the Foreign Representatives decided to pursue the actions) were removed pursuant to Sections 1334 and 1452 of Title 28 of the United States Code.

4.      As of today's date, the Foreign Representatives have filed 32 adversary proceedings against Redeemers in this Court, and removed an additional 59 of these actions from New York State Court.  Of these, all but one have already been referred to this Court, and the

2

remaining one is subject to the same referral request.   Putting aside the one exception, 90

Redeemer Actions are pending or will soon be pending before this Court, with more actions to

follow in the future based on the Foreign Representatives' ongoing investigation and analysis.

The amount claimed in the actions currently pending exceeds $3.6 billion.

5.     Generally speaking, the Foreign Representatives have been commencing

Redeemer Actions on a "rolling" basis, so as to commence each action as soon as practicable,

given the timing of Redemption Payments and the application of the relevant statutes of

limitations.   The instant motion seeks (i) consolidation of the Redeemer Actions for discovery

and pre-trial purposes; (ii) entry of a preliminary scheduling order in the Redeemer Actions; and

(iii) implementation of certain case management procedures to govern all adversary proceedings

and contested matters filed in connection with the Debtors' Chapter 15 cases.

6.     All of the Redeemer Actions involve common facts and legal issues.   Among

other similarities, all of the Redeemer Actions arise from payments made to Redeemers by the

Debtors for redemptions of Shares of Debtors.   These Redemption Payments were mistakenly

believed at the time to represent each Redeemer's pro rata interest in assets of the Debtors, based

on the "Net Asset Value" of the Debtors as it was then calculated.   All the Redeemer Actions

seek recovery of those payments based on the same equitable and legal causes of action.   As

such, the Redeemer Actions involve "common issues of law or fact," sufficient to satisfy the

standard for consolidation set forth in Bankruptcy Rule 7042.

7.     Based on the number of Redeemer Actions filed to date – and those expected to

be filed in the future – the consolidation of these actions for pre-trial and discovery purposes will

promote the convenient and economical disposition of these matters.   Indeed, the actions would

be practically unmanageable without such consolidation. A proposed order to consolidate the Redeemer Actions is attached as <u>Exhibit B</u>.

8.      The orderly and efficient administration of the Redeemer Actions would greatly benefit from coordination. Although the actions have been commenced on a rolling basis over the course of the last few months, all of the Redeemer Actions are still in similar procedural postures, with complaints filed in all the actions (or ready to be filed in all the actions once adversary proceeding numbers are assigned) and with responses still outstanding in almost all of the actions. In this situation, a scheduling order to coordinate the timing of responses to complaints in the Redeemer Actions would promote the efficient administration of the Redeemer Actions. A proposed scheduling order for the Redeemer Actions is attached as <u>Exhibit C</u>.

9.      Similarly, the Foreign Representatives also seek, pursuant to 11 U.S.C. §§ 105(a), 105(d) and 1521(a)(7), the entry of a case management order to govern all adversary proceedings and contested matters filed in connection with Debtors' Chapter 15 cases in order to foster the efficient administration of all such proceedings. In addition to the removed Redeemer Actions, the Foreign Representatives have removed two other actions to this Court: (i) an action against entities and persons that purported to provide investment advisory services to the Debtors including Fairfield Greenwich Group and related entities and individuals, captioned <u>Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.</u>, 10-CV-06873 (GBD), and (ii) a purported shareholder derivative action brought by two alleged investors of Sentry, naming Sentry as a nominal defendant, entitled <u>Morning Mist Holdings Limited v. Fairfield Greenwich Group, et al.</u> No. 10-CV-06874 (GBD). The <u>Fairfield Greenwich Group</u> action was originally commenced in New York State Court at the direction of Sentry's board of directors prior to the Foreign Representatives' appointment; it was removed to this Court at the same time as the Redeemer

4

Actions. Similarly, the <u>Morning Mist</u> action was commenced in New York State Court and removed to this Court with the other actions. In connection with the Recognition Order and pursuant to the automatic stay of the Bankruptcy Code, the <u>Morning Mist</u> action is presently stayed. The Foreign Representatives are currently evaluating claims against other potential defendants and may commence additional actions in the future. A proposed order implementing case management procedures is attached as <u>Exhibit D</u>.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for relief are Sections 105(a)&(d) and 1521(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 7042, 9014, 9017. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## FACTUAL BACKGROUND

### Background to the Debtors' Investments with BLMIS

11.    The Debtors were created as a means for private investment in managed accounts established with BLMIS, a broker dealer purportedly providing investment advisory services. Sentry invested directly in BLMIS, while Sigma and Lambda invested indirectly through Sentry. Sigma was established for investments in Euros (EUR), and Lambda was similarly established for investment in Swiss Francs (CHF). As mentioned above, Sentry was the largest of all so-called "feeder funds" to maintain accounts with BLMIS. Its BLMIS account statements as of the end of October 2008 showed in excess of $6 billion of assets.

12.    Debtors raised money for investment in BLMIS through the sale of voting participating shares (the "Shares"). Substantially all of the money (some 95%) that the Debtors raised, net of fees and expenses, was transferred to BLMIS, through Sentry, and supposedly

credited to accounts held in the name of Sentry with BLMIS, purportedly for use in a split-strike conversion investment strategy. All of the money invested by the Debtors with BLMIS is believed to have been used by Madoff in his perpetration of a massive Ponzi scheme.

13.     The Foreign Representatives, as the BVI Court-appointed liquidators of the Debtors, represent the interests of the Debtors' creditors and others with claims against the Debtors, including holders of their Shares. In contrast to claims brought by entities and persons deemed to have been "customers" of BLMIS within the meaning of the Securities Investor Protection Act ("SIPA"), the Madoff Trustee has disallowed claims asserted by indirect investors in BLMIS, including shareholders of Debtors.[1]  In the event such disallowance is upheld, these Madoff victims may have no other remedy other than through recoveries realized by the Foreign Representatives.

## Calculation of Net Asset Value and Mistaken Payments to Redeemers

14.     Prior to disclosure of the Madoff fraud in December 2008, the Shares were redeemed by the Debtors at the election of holders for a price believed to be equivalent to the "Net Asset Value" of the Shares, on a per Share basis. Net Asset Value was to be determined, in accordance with applicable accounting standards, as the value of the respective assets of Sentry, Sigma and Lambda divided by the number of shares outstanding in each fund, net of certain expenses.

15.     In accordance with its Articles of Association and other governing documents, from time to time, Sentry paid shareholders (including Sigma and Lambda) an amount, for each Share tendered for redemption, based on the Net Asset Value for that Share, as it was then calculated. Sigma and Lambda similarly paid their shareholders, for each share tendered in

redemption, an amount that was based on those funds' Net Asset Value, as it was then calculated.

16.     In order to make payments believed by the Debtors to be due upon redemption of Shares, Sentry made withdrawals from time to time from its BLMIS account.  At all relevant times, the Debtors mistakenly believed that payments received by Sentry from BLMIS were the proceeds from the sale of securities held by BLMIS for Sentry's account.  The Debtors also mistakenly believed that the amount, per share, paid by them for each Share redeemed was equal to the per share Net Asset Value.

17.     Upon information and belief, the purchases and sales of securities and other transactions shown on the account statements provided by BLMIS as having been made for the account of Sentry never in fact occurred and no investments were ever made by BLMIS. Further, upon information and belief, monies deposited by Sentry with BLMIS for the purchase of securities were used by Madoff to pay other BLMIS account holders that had made requests for payments or redemptions or were otherwise misappropriated by Madoff for unauthorized uses.  Upon information and belief, all assets shown on BLMIS account statements rendered to Sentry were entirely fictitious.  As a result, at all relevant times, the Net Asset Value of each Share redeemed was miscalculated, and Redemption Payments were mistakenly made for amounts far in excess of actual Net Asset Value.

**Exposure of Madoff Fraud**

18.     On December 11, 2008, the FBI arrested Madoff for violation of federal securities laws.

---

[1]     As this Court is aware, the Madoff Trustee has taken the position that the SIPA "customer claims" asserted against the BLMIS estate by indirect investors in BLMIS, such as the Debtors' investors, should be disallowed. This issue is presently scheduled for hearing before the Court on October 19, 2010.

19.     On December 11, 2008, the United States Securities and Exchange Commission ("SEC") filed an emergency action in the Southern District of New York to halt ongoing fraudulent offerings of securities and investment advisory fraud by Madoff and BLMIS.  SEC v. Madoff, No. 08-cv-10791 (S.D.N.Y. filed Dec. 11, 2008).  On February 9, 2009, the SEC submitted to the Court a proposed partial judgment, to which Madoff consented, imposing a permanent injunction and continuing relief against him, including a permanent freezing of his assets.

20.     In March 2009, Madoff pleaded guilty to the criminal charges brought against him, and he is now serving a 150-year sentence in federal prison.

**Procedural History of Debtors' Liquidations**

21.     Following the revelation of the fraud in December 2008, the Debtors' boards of directors suspended the calculation of the Net Asset Value and any further redemptions of Sentry, Sigma and Lambda shares.  As of December 2008 and presently, Sentry, Sigma and Lambda had and have, respectively, approximately 4.7 million, 3.9 million and 0.2 million shares outstanding.

22.     On December 15, 2008, a trustee was appointed for the liquidation of the BLMIS estate (the "Madoff Trustee").  Proceedings for such liquidation are pending in this Court under the caption Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, SIPA Liquidation No. 08-1789 (BRL).  Among the adversary proceedings that the Madoff Trustee has commenced is an adversary proceeding against Sentry and other defendants seeking to recover approximately $3.5 billion in connection with transfers that BLMIS allegedly made to Sentry during the six year period preceding the filing of the BLMIS liquidation proceedings.  These transfers are alleged to have been preferential transfers under

Section 547 of the Bankruptcy Code and/or fraudulent transfers under Sections 544 and 548 of the Bankruptcy Code and applicable state law.

23.    While the liquidation of the BLMIS estate was pending, the Debtors were also put into liquidation.  The BVI court appointed a liquidator for Lambda on April 23, 2009, and liquidators for Sentry and Sigma on July 21, 2009.

24.    Upon their appointment, the Foreign Representatives obtained, among other rights and powers, custody and control of the Debtors' assets, the power to do all acts and execute, in the name and on behalf of the Debtors, any deeds, receipts or other documents, and the power to compromise claims, commence litigation and to dispose of property on behalf of the Debtors.

25.    Acting in accordance with authority afforded to them as Liquidators under BVI law, and with the consent of the BVI Court, the Foreign Representatives have filed or directed the filing of numerous actions on the Debtors' behalf, including the Redeemer Actions, in order to recover the assets of the Debtors for ultimate distribution to all claimants of the Debtors in accordance with law applicable to the BVI liquidation proceedings.

## ARGUMENT

### I.
### THE REDEEMER ACTIONS SHOULD BE
### CONSOLIDATED FOR PRE-TRIAL AND DISCOVERY PURPOSES

26.    Rule 42(a) of the Federal Rules of Civil Procedure[2] sets forth the standard for consolidating adversary proceedings.  It provides:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

---

[2]    Rule 42(a) of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Fed. R. Bankr. P. 7042.

Fed. R. Civ. P. 42(a).  The trial court "has broad discretion to consolidate actions" under this rule, <u>Primavera Familienstiftung v. Askin</u>, 173 F.R.D. 115, 129 (S.D.N.Y. 1997), with a preference for consolidation where it would promote judicial economy.  <u>Johnson v. Celotex Corp.</u>, 899 F.2d 1281, 1285 (2d Cir. 1990) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation.").  So long as any confusion or prejudice does not outweigh efficiency considerations, consolidation is appropriate.  <u>Equal Employment Opportunity Comm'n v. Die Fliedermaus, L.L.C.</u>, 77 F. Supp. 2d 460, 466 (S.D.N.Y. 1999); <u>Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC</u>, 208 F.R.D. 59, 61 (S.D.N.Y. 2002).  Moreover, as long as there are common questions of law and fact, consolidation is appropriate even when parties differ.  <u>Skwortz v. Crayfish Co. Ltd.</u>, 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001).

A.    <u>**The Redeemer Actions Involve Common Issues of Fact**</u>

27.    The Redeemer Actions easily satisfy the standard for consolidation because they involve common questions of both fact and law.  The Redeemer Actions share the  following common facts: (1) each Redeemer was a registered holder of shares of the Debtors;  (2) each Redeemer tendered shares for redemption between April 2004 and December 2008 on behalf of itself and/or for beneficiaries on whose behalf the Redeemer was acting as a nominee, custodian, trustee or other representative; and (3) each Redeemer received payments based on a mistaken and miscalculated Net Asset Value.  Additionally, most of the Redeemers are foreign entities who have signed a subscription agreement consenting to New York jurisdiction and simplified service methods in connection with any proceedings arising out of or asserted with respect to its subscription for Shares.

28.    These common factual issues alone are more than sufficient to warrant consolidation.  <u>See BD v. DeBuono</u>, 193 F.R.D. 117, 141 (S.D.N.Y. 2000) ("It is well-settled

that even one substantial common question of law or fact is enough for commonality under Rule 42(a).").

29.     Given the substantial overlap of factual issues in the Redeemer Actions, discovery in each of the actions is likely to involve many of the same issues.  Indeed, in response to substantially identical document requests served in actions filed in New York State Court prior to removal, Redeemers made nearly identical objections based upon nearly identical positions regarding jurisdiction, service of process and the purported confidentiality of information sought. Consolidation would allow the resolution of such objections on a coordinated and consolidated basis, rather than in a piecemeal fashion.

**B.     The Redeemer Actions Involve Common Issues of Law**

30.     The Redeemer Actions also involve common legal issues, claims and defenses, further demonstrating that consolidation is warranted.

31.     To begin with, jurisdiction over most of the Redeemers is premised, in part, on subscription agreements executed by Redeemers on their own behalf and on behalf of any beneficiaries (collectively, the "Subscription Agreements").  In these Subscription Agreements, Redeemers consented to jurisdiction in New York and to service of process by certified or registered mail.[3]  A significant number of Redeemers have indicated their intention to dispute the sufficiency of service of process made pursuant to these Subscription Agreements.

32.     In addition to common issues involving jurisdiction and service of process, the Redeemer Actions will require the resolution of common legal issues regarding the amounts recoverable on nearly identical causes of action asserted against each Redeemer, consisting of claims for unjust enrichment, money had and received, mistaken payment, and constructive trust.

---

[3]     For the Redeemers that did not execute this type of Subscription Agreement, jurisdiction is based on the contacts that those Redeemers have in the United States.

See Equal Employment Opportunity Comm'n v. Die Fliedermaus, L.L.C., 77 F. Supp. 2d at 466

(consolidation appropriate, in part, because actions involved the same legal theories).

33.    Given the identity of legal issues – including similarities in jurisdictional and

service issues, potential choice of law issues, legal claims and defenses – pre-trial motion

practice is likely to be similar across all the Redeemer Actions.

**C.    Consolidation Will Promote Efficiency**

34.    Consolidation of the Redeemer Actions will promote the efficient and economical

disposition of these matters.  Given the common legal and factual issues, there is no need to

burden the parties and the Court with duplicative briefing and repetitive argument on the same

legal issues arising from the same set of facts.  NationsRent, Inc. v. Sheffield (In re NationsRent,

Inc.), 2003 WL 21414667, at *2 (Bankr. D. Del. June 18, 2003).  Moreover, discovery is at a

relatively early stage in all of the actions, nullifying any claims of prejudice as a result of

consolidation.  See, e.g., Internet Law Library, Inc., 208 F.R.D. at 61-62 (where actions involved

the same stock purchase agreement, court authorized consolidation despite possibility that

discovery in one case could be held up).

**D.    The Court May Consolidate Future Related Redeemer Actions**

35.    The Foreign Representatives anticipate that additional related Redeemer Actions

will be filed in the future.  In the interests of efficient case management, the Foreign

Representatives request that these additional Redeemer Actions be consolidated automatically

without the need for a further motion.  See, e.g., Devlin v. Transp. Commc'n Int'l Union, 175

F.3d 121, 130 (2d Cir. 1999); Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v.

Labranche & Co., 229 F.R.D. 395, 402 (S.D.N.Y. 2004); see also Internet Law Library, Inc., 208

F.R.D. at 61-62 ("[S]hort of cases ready for trial, cases at different stages of litigation are

routinely consolidated."). The Foreign Representatives will notify the Court promptly when any such actions are filed.

## II.
## THE REDEEMER ACTIONS SHOULD
## PROGRESS ON A COORDINATED SCHEDULE

36.     As part of the consolidation, the Redeemer Actions should progress on a coordinated schedule. As an initial matter, responses to complaints should be coordinated. Notwithstanding the fact that the Redeemer Actions have not, heretofore, been consolidated, the Foreign Representatives have been working with counsel for Redeemers to coordinate the initial procedural phases of the actions, with most responses to complaints currently due, per agreement or stipulations executed by parties to individual actions, on October 25, 2010. In order to promote efficient case management, the Foreign Representatives are willing to agree to extend the deadline for responses to complaints until December 3, 2010, giving Defendants in all actions currently on file more than sixty (60) days (and in some cases much longer) to respond to complaints. To the extent that any Defendant files a motion in response to the complaints, the Foreign Representatives propose a deadline of February 3, 2011 to oppose any such motion, and a deadline of March 3, 2011 to reply. A proposed scheduling order is attached as **Exhibit C**. As appropriate, the Foreign Representatives will propose a revised scheduling order to govern discovery following the responses to complaints.


## III.
## CASE MANAGEMENT PROCEDURES SHOULD BE IMPLEMENTED
## TO PROMOTE THE EFFICIENT ADMINISTRATION OF ALL
## ADVERSARY PROCEEDINGS AND CONTESTED
## MATTERS RELATED TO DEBTORS' CHAPTER 15 CASES

37.     The Foreign Representatives also respectfully request that the Court enter an order substantially in the form of Exhibit D in order to establish procedures that will promote the

efficient and economical disposition of the Redeemer Actions and other adversary proceedings and contested matters filed in connection with the Debtors' Chapter 15 cases.  Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a) <u>see</u> <u>also</u> 11 U.S.C. § 1521(a)(7) ("where necessary to effectuate the purposes of this chapter . . . the court may, at the request of the foreign representative, grant any appropriate relief, including . . . (7) granting any additional relief that may be available to a trustee . . .").  In light of the number of adversary proceedings filed to date (and those expected to be filed in the future), as well as other contested matters relating to the Debtors' Chapter 15 cases that the Liquidators anticipate will be pending before this Court, the Liquidators believe that implementation of case management procedures are necessary and appropriate to assist the parties and the Court in effectively managing these proceedings.  The Liquidators also believe that the proposed procedures will significantly reduce the costs of administering these cases.  <u>See</u> <u>In re Basis Yield Alpha (Master)</u> (on its own motion, the court established case management procedures similar to the proposed case management order attached as Exhibit D), Case No.07-12762 (D.I. 8).

## <u>CONCLUSION</u>

38.    WHEREFORE, the Foreign Representatives respectfully request entry of Orders of this Court substantially in the form annexed hereto (i) consolidating the Redeemer Actions, (ii) setting a schedule for responding to complaints; and (iii) implementing certain case management procedures for these Chapter 15 cases and related adversary proceedings and contested matters.

Dated:  New York, New York
            September 23, 2010

Respectfully submitted,

**BROWN RUDNICK LLP**

By: /s/ David J. Molton
     David J. Molton
     May Orenstein
     Daniel J. Saval
     Kerry L. Quinn
     7 Times Square
     New York, New York  10036
     Tel.: (212) 209-4800
     Fax: (212) 209-4801

     *Counsel to the Foreign Representatives*

**EXHIBIT A**

| | CASE NAME | ADV. P. NO. / CIVIL ACTION NO. (if ADV. P. NO. is pending) |
|---|---|---|
| 1. | Fairfield Sentry Ltd. v. ABN AMRO Schweiz AG, et al. | 10-03635-BRL |
| 2. | Fairfield Sentry Ltd., et al. v. ABN AMRO Schweiz AG, et al. | 10-03636-BRL |
| 3. | Fairfield Sentry Ltd. v. Al Nahyan Mansour B. Zayed et al. | 10-cv-06769-GBD |
| 4. | Fairfield Sentry Ltd. v. Almel Ltd./Pacific Inter. et al. | 10-cv-06768-GBD |
| 5. | Fairfield Sentry Ltd. v. Alton Select Ltd., et al. | 10-03541-BRL |
| 6. | Fairfield Sentry Ltd. v. AXA Isle of Man A/C L & C, et al. | 10-03623-BRL |
| 7. | Fairfield Sentry Ltd. v. Banco Atlantico (Bah.) et al. | 10-cv-06761-GBD |
| 8. | Fairfield Sentry Ltd., et al. v. Banco Atlantico (Gib.), et al. | 10-cv-06767-GBD |
| 9. | Fairfield Sentry Ltd. v. Banco Bilbao Vizcaya Argentaria, S.A. | 10-03515-BRL |
| 10. | Fairfield Sentry Ltd. et al. v. Banco Itau Europa Lux. SA et al. | 10-cv-06558-GBD |
| 11. | Fairfield Sentry Ltd., et al. v. Banco Santander (Suisse) S.A., et al. | 10-03509-BRL |
| 12. | Fairfield Sentry Ltd., et al. v. Bank Hapoalim (Suisse) Ltd., et al. | 10-03510-BRL |
| 13. | Fairfield Sentry Ltd. v. Bank of Am. Nat'l Trust & Sav. Ass'n, et al. | 10-03615-BRL |
| 14. | Fairfield Sentry Ltd. v. Banque de Commerce et de Placements, et al. | 10-cv-06564-GBD |
| 15. | Fairfield Sentry Ltd., et al. v. Banque de Lux., et al. | 10-03616-BRL |
| 16. | Fairfield Sentry Ltd., et al. v. Banque Piguet & Cie SA., et al. | 10-03514-BRL |
| 17. | Fairfield Sentry Ltd., et al. v. Banque Privee Edmond De Rothschild (Eur.), et al. | 10-03505-BRL |
| 18. | Fairfield Sentry Ltd., et al. v. Banque Sudameris, et al. | 10-03586-BRL |
| 19. | Fairfield Sentry Ltd., et al. v. Banque Sudameris, et al. | 10-cv-06565-GBD |
| 20. | Fairfield Sentry Ltd., et al. v. Banque Syz & Co. SA, et al. | 10-03513-BRL |
| 21. | Fairfield Sentry Ltd. et al. v. Blubank Ltd., et al. | 10-cv-06566-GBD |
| 22. | Fairfield Sentry Ltd. v. BNP Paribas Lux. , et al. | 10-03626-BRL |
| 23. | Fairfield Sentry Ltd., et al. v. BNP Paribas Sec. Servs. Lux., et al. | 10-03627-BRL |
| 24. | Fairfield Sentry Ltd. v. Brown Brothers Harriman & Co. et al. | 10-cv-06568-GBD |
| 25. | Fairfield Sentry Ltd., et al. v. Caceis Bank Lux., et al. | 10-03624-BRL |
| 26. | Fairfield Sentry Ltd., et al. v. Cathay United Bank, et al. | 10-03506-BRL |
| 27. | Fairfield Sentry Ltd. v. CDC IXIS et al. | 10-cv-06557-GBD |
| 28. | Fairfield Sentry Ltd. v. Citibank NA London, et al. | 10-03622-BRL |
| 29. | Fairfield Sentry Ltd., et al. v. Citibank (Switz.) Zurich, et al. | 10-03640-BRL |
| 30. | Fairfield Sentry Ltd., et al. v. Clarks Fork Found., et al. | 10-03511-BRL |
| 31. | Fairfield Sentry Ltd. et al. v. Credit Suisse (Bah.), et al. | 10-cv-06760-GBD |
| 32. | Fairfield Sigma Ltd. v. Credit Suisse Int'l, et al. | 10-03620-BRL |
| 33. | Fairfield Sentry Ltd. v. Creditio Privato Commerciale SA, et al. | 10-cv-06771-GBD |
| 34. | Fairfield Sentry Ltd. v. Delta Nat'l Bank, et al. | 10-03589-BRL |
| 35. | Fairfield Sentry Ltd. v. Delta Nat'l Bank, et al. | 10-cv-06603-GBD |
| 36. | Fairfield Sentry Ltd. v. Deutsche Bank AG Sing. et al. | 10-cv-06560-GBD |

## EXHIBIT A

| | CASE NAME | ADV. P. NO. / CIVIL ACTION NO. (if ADV. P. NO. is pending) |
|---|---|---|
| 37. | Fairfield Sentry Ltd. v. Deutsche Bank (Cayman) et al. | 10-cv-06553-GBD |
| 38. | Fairfield Sentry Ltd. et al. v. Deutsche Bank (Suisse) SA Geneve et al. | 10-cv-06570-GBD |
| 39. | Fairfield Sentry Ltd. v. Deutsche Bank Trust Co. Am. et al. | 10-cv-06569-GBD |
| 40. | Fairfield Sentry Ltd. et al. v. Dresdner Bank LateinAmerika AG et al. | 10-cv-06556-GBD |
| 41. | Fairfield Sentry Ltd., et al. v. EFG Bank, et al. | 10-03625-BRL |
| 42. | Fairfield Sentry Ltd. v. FIBI Bank (Switz.) et al. | 10-cv-06758-GBD |
| 43. | Fairfield Sentry Ltd. v. Fidulex Mgmt. et al. | 10-cv-06567-GBD |
| 44. | Fairfield Sentry Ltd. v. Fortis (Isle of Man) Nominees Ltd et al. | 10-cv-06593-GBD |
| 45. | Fairfield Sentry Ltd., et al. v. FS ABN AMRO Global Custody, et al. | 10-03504-BRL |
| 46. | Fairfield Sentry Ltd., et al. v. FS/AND Banc Andorra, et al. | 10-03632-BRL |
| 47. | Fairfield Sentry Ltd. v. FS/BBVA Miami, et al. | 10-03618-BRL |
| 48. | Fairfield Sentry Ltd. et al. v. FS/CBESSA et al. | 10-cv-06584-GBD |
| 49. | Fairfield Sentry Ltd. v. FS/HSBC Private Banking Nom, et al. | 10-03629-BRL |
| 50. | Fairfield Sentry Ltd., et al. v. FS Mizrahi Tefahot Bank Ltd., et al. | 10-03512-BRL |
| 51. | Fairfield Sigma Ltd. v. FS Oddo & Cie, et al. | 10-03621-BRL |
| 52. | Fairfield Sentry Ltd. v. Fund Nominees Ltd., et al. | 10-03525-BRL |
| 53. | Fairfield Sentry Ltd. v. Hambros Guernsey Nominees et al. | 10-cv-06886-GBD |
| 54. | Fairfield Sentry Ltd. v. HSBC Institutional Trust Srvs. (Asia) Ltd., et al. | 10-03619-BRL |
| 55. | Fairfield Sentry Ltd., et al. v. HSBC Private Bank (Guernsey) Ltd., et al. | 10-03631-BRL |
| 56. | Fairfield Sentry Ltd. v. HSBC Private Bank (Suisse) SA et al. | 10-03633-BRL |
| 57. | Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Lux.) SA et al. | 10-03630-BRL |
| 58. | Fairfield Sentry Ltd. et al. v. ING Bank (Suisse) SA et al. | 10-cv-06604-GBD |
| 59. | Fairfield Sentry Ltd. v. JP Morgan Trust Co. (Cayman) et al. | 10-cv-06597-GBD |
| 60. | Fairfield Sentry Ltd. v. Juan Jose Lacroze, et al. | 10-03528-BRL |
| 61. | Fairfield Sentry Ltd. v. Juan Jose Lacroze, et al. | 10-cv-06428-VM |
| 62. | Fairfield Sentry Ltd. v. Kookmin Bank et al. | 10-cv-06594-GBD |
| 63. | Fairfield Sentry Ltd. et al. v. Lombard Odier Darier Hentsch & Cie, et al. | 10-cv-06601-GBD |
| 64. | Fairfield Sentry Ltd., et al. v. Lombardy Props. Ltd., et al. | 10-03521-BRL |
| 65. | Fairfield Sentry Ltd., et al. v. Meritz Fire & Marine Ins. Co. Ltd., et al. | 10-03507-BRL |
| 66. | Fairfield Sentry Ltd. v. Merrill Lynch Bank (Suisse) SA et al. | 10-cv-06598-GBD |
| 67. | Fairfield Sentry Ltd., et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al. | 10-03516-BRL |
| 68. | Fairfield Sentry Ltd. v. Monte Paschi Ireland Ltd et al. | 10-cv-06599-GBD |

**EXHIBIT A**

| | CASE NAME | ADV. P. NO. / CIVIL ACTION NO. (if ADV. P. NO. is pending) |
|---|---|---|
| 69. | Fairfield Sentry Ltd., et al. v. Neue Bank AG, et al. | 10-03519-BRL |
| 70. | Fairfield Sentry Ltd. et al. v. Nomura Int'l plc et al. | 10-cv-06600-GBD |
| 71. | Fairfield Sentry Ltd. v. Northern Navigation Am. Inc. et al | 10-cv-06759-GBD |
| 72. | Fairfield Sentry Ltd. v. Pictet & Cie et al. | 10-cv-06627-GBD |
| 73. | Fairfield Sentry Ltd., et al. v. RBC Dominion Sec. Sub A/C, et al. | 10-03502-BRL |
| 74. | Fairfield Sentry Ltd., et al. v. Robinson & Co., et al. | 10-03628-BRL |
| 75. | Fairfield Sentry Ltd., et al. v. Schroder & Co. (Asia) Ltd., et al. | 10-03508-BRL |
| 76. | Fairfield Sentry Ltd., et al. v. SG Private Banking (Suisse) SA et al. | 10-cv-06765-GBD |
| 77. | Fairfield Sentry Ltd., et al. v. SG Private Banking (Suisse) SA et al. | 10-03595-BRL |
| 78. | Fairfield Sentry Ltd. v. Sherli Elghanian Krayem, et al. | 10-03614-BRL |
| 79. | Fairfield Sentry Ltd. et al. v. SNS Global Custody, et al. | 10-cv-06585-GBD |
| 80. | Fairfield Sentry Ltd. v. State Street Bank Lux. SA et al. | 10-cv-06587-GBD |
| 81. | Fairfield Sentry Ltd. v. Strina Luisa et al. | 10-cv-06772-GBD |
| 82. | Fairfield Sentry Ltd., et al. v. Tercas – Cassa di Risparmio della Provincia di Teramo S.P.A., et al. | 10-03503-BRL |
| 83. | Fairfield Sentry Ltd., et al. v. Theodoor GGC Amsterdam, et al. | 10-03496-BRL |
| 84. | Fairfield Sentry Ltd. v. UBS AG New York et al. | 10-cv-06596-GBD |
| 85. | Fairfield Sentry Ltd. v. UBS Cayman REF Greenlake Arbitrage et al. | 10-cv-06586-GBD |
| 86. | Fairfield Sentry Ltd. v. Vontobel Asset Mgmt., et al. | 10-03540-BRL |
| 87. | Fairfield Sentry Ltd. v. Wall Street Sec. SA, et al. | 10-cv-06595-GBD |
| 88. | Fairfield Sentry Ltd. v. Weston Sec. Ltd., et al. | 10-cv-06762-GBD |
| 89. | Fairfield Sentry Ltd. v. ZCM Asset Holding Co. (Berm.) Ltd., et al. | 10-cv-06770-GBD |
| 90. | Fairfield Sentry Ltd. v. Zurich Capital Mkts. Co., et al. | 10-03634-BRL |

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

                                                                    Chapter 15

In re:                                                              Case No. 10-13164 (BRL)
FAIRFIELD SENTRY LIMITED, et al.,

            Debtors in Foreign Proceedings.                         Jointly Administered

-----------------------------------------------------------X

## ORDER AUTHORIZING THE CONSOLIDATION OF THE REDEEMER ACTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7042

    Upon the motion (the "Motion")[4] of Kenneth Krys and Joanna Lau (the "Foreign Representatives"), in their capacities as the foreign representatives and liquidators of Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda," together with Sentry and Sigma, the "Debtors"), for the entry of an Order authorizing the consolidation of certain adversary proceedings pending in connection with the above captioned matter (the "Redeemer Actions"), as defined in Exhibit A of the Foreign Representatives' Motion, pursuant to Federal Rule of Bankruptcy Procedure 7042, for pretrial and discovery purposes. Upon consideration of the Motion and the arguments contained therein; and the Court having found sufficient cause appearing therefore, it is hereby ORDERED:

    1.    The Redeemer Actions shall be consolidated for pretrial purposes, including coordination of all fact and expert discovery and motions concerning issues of law and fact common to these matters, in accordance with the terms of this Order.

    2.    Any other actions now pending or later filed in this district that arise out of or are related to the same facts as alleged in the Redeemer Actions shall be consolidated for pretrial and discovery purposes.

    3.    Counsel shall call to the attention of the Clerk of this Court the filing of any case that might be consolidated as part of the Court's Order.

    4.    All non-evidentiary hearings and conferences held with respect to the Redeemer Actions shall be treated as a joint hearing or conference.

    5.    All parties to the Adversary Proceedings shall adhere to the rules and procedures to be outlined in any Case Management Order entered by the Court;

---

[4]    Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Motion.

6.      A docket entry shall be made in each of the Redeemer Actions, substantially as follows:

An Order has been entered in this Proceeding directing the procedural consolidation of this action and other Redeemer Actions filed in connection with the jointly administered Chapter 15 cases of Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (Case No. 10-13164); the docket for Fairfield Sentry Limited et al. v. Theodoor GGC Amsterdam et al., AP No. 10-03496, should be consulted for all matters covered under the Court's Order.

7.      Nothing herein is to be construed as requiring the consolidation of these Redeemer Actions for the purposes of evidentiary hearings or trial.  All parties to the Redeemer Actions reserve their respective rights concerning the consolidation of the proceedings for trial and evidentiary hearings.

8.      Service of this Order as provided in the Motion shall be deemed good and sufficient notice

9.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: September ___, 2010
       New York, New York


_____
UNITED STATES BANKRUTPCY JUDGE

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

|  |  |
|---|---|
|  | Chapter 15 |
| In re: | Case No. 10-13164 (BRL) |
| FAIRFIELD SENTRY LIMITED, et al., |  |
|  |  |
| Debtors in Foreign Proceedings. | Jointly Administered |

-----------------------------------------------------------X

**PRELIMINARY SCHEDULING ORDER FOR REDEEMER ACTIONS**

Upon the motion (the "Motion")[5] of Kenneth Krys and Joanna Lau (the "Foreign Representatives"), in their capacities as the foreign representatives and liquidators of Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda," together with Sentry and Sigma, the "Debtors"), for the entry of an Order establishing a schedule for responding to complaints in certain adversary proceedings currently pending in this Court in connection with the above captioned matter (the "Redeemer Actions"), as defined in Exhibit A of the Foreign Representatives' Motion.  Upon consideration of the Motion and the arguments contained therein; and the Court having found sufficient cause appearing therefore, it is hereby ORDERED:

1.      The deadline for filing responses to complaints in the Redeemer Actions, whether by answer, motion or otherwise, shall be December 3, 2010.

2.      The deadline for submitting opposing briefs in response to any motions filed in response to the complaints shall be February 3, 2011.

3.      The deadline for submitting reply briefs in further support of any motions shall be March 3, 2011.

5.      Service of this Order as provided in the Motion shall be deemed good and sufficient notice.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: September ___, 2010
    New York, New York

_____
      UNITED STATES BANKRUTPCY JUDGE

---

[5]      Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Motion.

**EXHIBIT D**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

Chapter 15

In re:                                                                                     Case No. 10-13164 (BRL)
FAIRFIELD SENTRY LIMITED, et al.,

       Debtors in Foreign Proceedings.                        Jointly Administered

-----------------------------------------------------------X

**Case Management Order**

      Upon the motion (the "Motion")[6] of Kenneth Krys and Joanna Lau, in their capacities as the foreign representatives and liquidators of Fairfield Sentry Limited ("<u>Sentry</u>") and Fairfield Sigma Limited ("<u>Sigma</u>") and Fairfield Lambda Limited ("<u>Lambda</u>," together with Sentry and Sigma, the "<u>Debtors</u>"), for the entry of an Order authorizing the implementation of case management procedures pursuant to Sections 105(a)&(d) and 1521(a)(7) of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 9014 and 9017, and Federal Rule of Civil Procedure 43; and upon consideration of the Motion and the arguments contained therein;

      And the Court finding that supplemental procedures should be implemented to permit it effectively to manage its caseload; to permit it effectively to prepare for hearings; and to minimize costs of administration, particularly with respect to litigation costs;

      And the Court believing that a clarification of procedures that the Court will follow in this case, particularly with respect to contested matters and adversary proceedings, is in the interests of justice, and the Court having found that no other notice be given, and sufficient cause appearing therefore, is in the interests of justice, it is hereby:

---

[6] Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Motion.

ORDERED that pursuant to 11 U.S.C. §§ 105(a)&(d) and 1521(a)(7) of the Bankruptcy Code, and Rules 9014 and 9017 of the Federal Rules of Bankruptcy Procedure that in these Chapter 15 cases, and adversary proceedings and contested matters relating to these Chapter 15 cases (including, without limitation, the Redeemer Actions), the following procedures shall apply:

Rule 2004 Examinations

1.   Applications for examinations under Fed. R. Bankr. P. 2004 shall be made only on notice.  If no opposition is expected, an application may be made on presentment.

Procedures in Contested Matters[7]

2.   Normally the Court will hold evidentiary hearings on motions and applications (hereafter, "Motions") in contested matters if, but only if, it determines that there exist material disputed issues of fact.  It may, however, nevertheless order an evidentiary hearing if the motion papers do not address all arguably relevant facts; in such event, parties will be notified in advance of the hearing.  To obviate the expense of drafting supporting affidavits, declarations and similar statements under oath (hereafter, "Affidavits"), and the expense of preparing, transporting, and presenting live witnesses on matters not likely to be disputed, the Court will take representations in Motions duly signed by counsel subject to Rule 9011, or verified or sworn to by non-counsel, as true, except to the extent disputed in responsive papers by an opposing party.  Proffers at hearings will be unnecessary, and should not be used, provided that the facts to be proffered are appropriately set forth in the Motion papers.

3.   The initial hearing on all Motions in contested matters will be a non-evidentiary hearing, unless:

(a) the Motion is noticed as an evidentiary hearing;

(b) the opposing parties agree that it should be an evidentiary hearing, and so

advise the Court;

(c) the Motion is of a type specified in Local Bankruptcy Rule 9014-2 (b), (c), (d) or (e); or

(d) the Court otherwise directs in advance of the hearing.

If, upon or after the filing of a Motion, any party wishes an evidentiary hearing on a Motion not covered under Local Bankruptcy Rule 9014-2, such party shall confer with all other parties involved to determine whether there is agreement that an evidentiary hearing is appropriate.  In the absence of an ability to agree, the Court will consider requests for an evidentiary hearing by conference call.  Where bona fide disputes exist as to the need for an evidentiary hearing, requests for an evidentiary hearing will normally be granted.  Notwithstanding Local Bankruptcy Rule 9014-2, the Court may, upon advance request and for cause shown, order that the initial hearing on a Motion of the type specified in Local Bankruptcy Rule 9014-2(c), (d) or (e) will be a non-evidentiary hearing.  Normally, interests of judicial economy and the absence of disputed material issues of fact will collectively provide cause shown for holding a non-evidentiary hearing on Motions subject to Local Bankruptcy Rule 9014-2(c), (d) or (e).

4.  Concurrently with any determination that an evidentiary hearing is necessary or desirable, Chambers must be notified with an estimate of expected trial time; parties may be informed that a different return date is necessary if the available time on the requested day is insufficient.  Any motion noticed as an evidentiary hearing shall state, just below the return date in the upper right-hand corner, and prominently (such as with underlining or bold face), "Evidentiary Hearing Requested."

5.  Pretrial orders are not required with respect to evidentiary hearings in contested matters unless otherwise ordered by the Court.  However, on any evidentiary hearing in a

---

[7] For purposes of this Order, a "contested matter" is any matter other than one in an adversary proceeding.

contested matter, the parties are to exchange witness lists, trial exhibits, and designations of deposition testimony (in each case with a copy to Chambers) no later than 3 full business days before the hearing, except as otherwise ordered by the Court.  Any of the foregoing not listed or exchanged, whether characterized as "rebuttal" or otherwise, will not be permitted absent a showing of cause and a showing as to why it could not have been previously listed and exchanged.

6.    Except as otherwise ordered by the Court for cause shown before the hearing, all direct testimony in contested matters other than duly designated deposition testimony shall be submitted by Affidavit, and all cross-examination and subsequent examination shall be taken live.  Unless otherwise ordered by the Court, all Affidavits shall be submitted to the adversary and the Court no later than 3 full business days before the hearing.  Notwithstanding the foregoing, litigants may, if they are so advised, (1) introduce the testimony of witnesses who reasonably can be expected not to be cooperative (such as employees or agents of adversaries) by calling them as adverse witnesses and taking their testimony on "adverse direct," or (2) by agreement, or by order of the Court for cause shown, agree that direct testimony will be "live." The Court will normally regard taking direct testimony "live" as appropriate if, but only if, matters of credibility are important in the particular case, and credibility on direct, as well as on cross-examination, is at issue; the Court will normally regard "live" direct as inappropriate where the bulk of the testimony is historical or involves more than minimal discussion of accounting information or other financial or numerical analysis.  In any instances where direct testimony too will proceed "live," the proponent(s) of such testimony will be responsible for so advising the Court's chambers in advance, and taking such steps (e.g. subpoenas) as are

necessary to secure the attendance of any non-cooperating witnesses. Nothing in this Order precludes taking, or introducing, deposition testimony on videotape.

7. Counsel are reminded that, unless otherwise ordered by the Court, Fed. R. Civ. P. 26(a)(1) (initial disclosures), 26(a)(2) (disclosures with respect to expert testimony), 26(a)(3) (additional pretrial disclosures) and 26(f) (mandatory meeting before scheduling conference/discovery plan) are inapplicable in contested matters in this case.

8. Expedited discovery in contested matters is authorized without further Court order. This authorization is without prejudice to the rights of any party or witness to seek protective order relief if the time to respond or appear, or the burden of the requested discovery, is unreasonable, or for other cause shown. Litigants are expected to work informally and cooperatively to effect any necessary discovery, with due recognition of the time exigencies that are typical in bankruptcy litigation. Document requests by letter, fax or e-mail are authorized.

9. Where the evidentiary hearing in a contested matter is anticipated to be unusually extensive or complex, the parties (after conferring among themselves to prepare joint recommendations, if possible) may request revisions in these procedures (e.g., to provide for a pretrial order, exchanges of expert reports, or other measures of the type utilized in plenary litigation), or the Court may do so on its own motion. The parties should agree in advance, and with specificity, as to how expert testimony will be presented, and what, if any, materials upon which experts based their opinions will be exchanged. If, after good faith efforts to agree, differences remain, any party may seek a determination with respect to procedures for experts by conference call.

10. Upon request in advance, the Court will permit out-of-town counsel and stakeholders to participate by telephone, so long as the phone system is not overloaded, on matters requiring only remarks of counsel.  Presence in the courtroom will be necessary on evidentiary hearings.  Those participating by phone may not use speakerphones, unless first authorized by the Court; by reason of technical limitations of the equipment, and the way speakerphones disrupt proceedings in the courtroom, speakerphone authorizations usually will not be granted.  Persons so participating are to put their phones on "mute" except when they need to be heard.  Persons so participating are not to put their phones on "hold" under any circumstances.

11. The Foreign Representatives shall be authorized to schedule, in cooperation with the Court, periodic omnibus hearings ("Omnibus Hearings") at which motions, applications and other requests for relief shall be heard.

Procedures in Adversary Proceedings

12. Unless otherwise ordered by the Court, the procedures in those adversary proceedings that have been or are hereafter filed will be governed by Fed. R. Bankr. P. 7001-7087 and 9001-9036 (except that Rules 9013 and 9014 shall not apply), and Local Bankruptcy Rules 7005-1 through 7087-1.  As a result, except as provided otherwise by the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and this Order, the procedures in adversary proceedings will approximate the practices and procedures typically followed in plenary actions in the United States District Courts.

13. Pre-trial conferences for adversary proceedings shall be scheduled on Omnibus Hearing dates; provided, however, that initial pre-trial conferences scheduled in connection with

adversary proceedings involving the Foreign Representatives or any of the Debtors shall be set on a date that is at least forty-five (45) days after the filing of the complaint.

14. Pleadings filed in connection with, and trials related to, adversary proceedings shall be scheduled upon request of a party to the adversary proceeding and approval of the Court. After a hearing date has been set by the Court, unless otherwise ordered by the Court, the parties to the adversary proceeding shall confer and agree upon a briefing schedule for all adversary matters, which shall be submitted for approval of the Court. If a briefing schedule cannot be agreed upon, the parties to the adversary proceeding shall appear at the next scheduled pre-trial conference or some other date set by the Court.

15. Factual assertions on motions in adversary proceedings must be supported by Affidavits. Affidavits may be used to offer other admissible evidence (such as transcripts of deposition or other testimony, or relevant documents), so long as any other applicable evidentiary requirements are satisfied. Unless the Court orders otherwise in advance, the initial hearing on a Motion in an adversary proceedings will be non-evidentiary. If, after review of opposing Affidavits, or consideration of points made at the initial hearing, the Court determines that an evidentiary hearing is necessary on a motion in an adversary proceeding, counsel will be so advised.

16. Practitioners are reminded that Fed. R. Civ. P. 26(a)(1) (initial disclosures), 26(a)(2) (disclosures with respect to expert testimony), 26(a)(3) (additional pretrial disclosures) and 26(f) (mandatory meeting before scheduling conference/discovery plan) are applicable in adversary proceedings unless otherwise ordered by the Court.

17. Except as otherwise ordered by the Court, pretrial orders are required in all adversary proceedings. They will cover, among other things, stipulations as to undisputed facts; contentions

of fact and law; trial witnesses; trial exhibits; designations of deposition testimony; evidentiary objections; experts; submission of briefs; and estimates of trial time.  Respective parties must work together to submit a jointly prepared pretrial order (which may include *portions* prepared only by one side or the other, such as statements of contentions), and are not to submit separate pretrial orders, or pretrial order fragments, based on stated difficulties in reaching agreement, "time pressures," or otherwise.   The Court has determined not to otherwise order under Local Bankruptcy Rule 7016-1, and thus submission of marked pleadings is not required.

18. Except as otherwise ordered by the Court for cause shown before the trial, all direct testimony in trials in adversary proceedings shall be submitted by Affidavit, and all cross-examination and subsequent examination shall be taken "live."  Unless otherwise ordered by the Court, all Affidavits shall be submitted to the adversary and the Court at the time(s) prescribed under the pretrial order.  Notwithstanding the first sentence of this paragraph, litigants may, if they are so advised, (1) introduce the testimony of witnesses who reasonably can be expected to be non-cooperative (such as employees or agents of adversaries) by calling them as adverse witnesses and taking their testimony on "adverse direct," or (2) by order of the Court for cause shown, provide that direct testimony will be "live" as well.  The Court will normally regard taking direct testimony "live" as appropriate if, but only if, matters of credibility are important in the particular case, and credibility on direct, as well as on cross-examination, is at issue; the Court will normally regard "live" direct as inappropriate where the bulk of the testimony is historical or involves more than minimal discussion of accounting information or other financial or numerical analysis. In any instances where direct testimony too will proceed "live," the proponent(s) of such testimony will be responsible for so advising the Court's chambers in advance, and taking such steps (e.g. subpoenas) as are necessary to secure the attendance of any non-cooperating witnesses.

19. Where the evidentiary hearing in a contested matter is anticipated to be unusually extensive or complex, the parties (after conferring among themselves to prepare joint recommendations, if possible) may request revisions in these procedures (e.g., to provide for a pretrial order, exchanges of expert reports, or other measures of the type utilized in plenary litigation), or the Court may do so on its own motion.  The parties should agree in advance, and with specificity, as to how expert testimony will be presented, and what, if any, materials upon which experts based their opinions will be exchanged. If, after good faith efforts to agree, differences remain, any party may seek a determination with respect to procedures for experts by conference call.

20. Upon request in advance, the Court will permit out-of-town counsel and stakeholders to participate by telephone, so long as the phone system is not overloaded, on matters requiring only remarks of counsel. Presence in the courtroom will be necessary on evidentiary hearings. Those participating by phone may not use speakerphones, unless first authorized by the Court; by reason of technical limitations of the equipment, and the way speakerphones disrupt proceedings in the courtroom, speakerphone authorizations usually will not be granted. Persons so participating are to put their phones on "mute" except when they need to be heard.  Persons so participating are not to put their phones on "hold" under any circumstances.

Motions, Briefs and Legal Memoranda

21. On Motions that reasonably may be expected to engender opposition and as to which the movant will wish the opportunity to reply, the movant should confer with any expected adversaries to agree on a briefing schedule. If efforts to agree are unsuccessful or if circumstances make that impractical, the movant may unilaterally set the schedule, but if it is unreasonable, the opposing party may apply to the Court for modifications in the schedule, and where it appears that

the schedule unilaterally set was not a reasonable one, requests for modification will presumptively be granted. Counsel are expected to provide for a sufficient time for the Court's review of reply papers, and to advise Chambers as to when reply papers will be forthcoming. In the absence of extraordinary circumstances, the Court will not accept papers "handed up" at the time of a hearing.

22. Parties may, if they wish, include citations of legal authority within Motions, and when they do so, Local Bankruptcy Rule 9013-1(b)'s requirements for the submission of a memorandum of law will be deemed to have been satisfied.

23. Counsel are reminded that as stated in Local Bankruptcy Rule 7056-1, no motion for summary judgment shall be made without first seeking a pre-motion conference. The request for such shall be made by letter, filed on the Court's ECF system, setting forth, in general terms, and in as non-argumentative a manner as practicable, the issues to be presented under the motion.

24. Motions for reargument must identify with particularity the matter required under Local Bankruptcy Rule 9023-1.  If, after review of the motion, the Court determines that it wishes a response, and/or a hearing, it will then notify counsel accordingly.

25. Parties are reminded of the requirements of Local Bankruptcy Rule 9004-2, calling for the return date and time of a motion to be included in the upper right-hand corner of the caption of the motion and all related pleadings.  By way of clarification and implementation of that Rule, the return date and time shall be noted on the first page of *all submissions* to this Court, including, without limitation, Motions; affidavits, affirmations and declarations; Briefs; exhibit packages; and proposed orders.

26. "Backs" (sometimes referred to as "Blue Backs" or "covers") are not required, and *are not to be used,* on either Motion papers or Briefs, on Chambers copies and elsewhere. Papers must, however, be securely stapled or otherwise fastened, preferably by a means that allows open

documents to lie flat as, for example, spiral binding does, and "Velo" binding does not.  In lieu of backs, every submission (including Briefs) <u>must</u> include, on the first page, the name, address, and phone number of the firm submitting the papers, the party for whom it is acting, the attorney(s) with principal responsibility for the submission, and, if different, the attorney most likely to argue the matter (who should be identified as such).  Bar numbers are not required.  However, inclusion of an attorney's name on the papers shall be deemed to be a representation that the attorney in question is a member in good standing of at least one federal court, and if the attorney is not admitted to practice in this Court, that an application to appear *pro hace vice* has been or promptly will be filed.

Temporary Restraining Orders

27. The requirements of Fed. R. Civ. P. 65(b) with respect to an application for a temporary restraining order ("TRO") -- including, in particular, requirements as to notice of the application -- will be strictly enforced. Applications for TROs will be heard in open court, on the record, with a court reporter or audio recording. Parties wishing to be heard in opposition will be heard by telephone upon request. Applicants seeking TROs are reminded of the need to submit with their motion papers the written Affidavit required under Rule 65(b) confirming the notice provided to anyone who might wish to oppose the application. Any assertions that notice cannot or should not be given must likewise be supported by Affidavit.

28. Any request for a TRO shall be preceded by a telephone call to the Court's Chambers, advising Chambers of the nature of the controversy; the need for emergency relief; why a noticed hearing for a preliminary injunction would be insufficient; when a hearing on the TRO application is needed; and when the papers will be forthcoming. Except in those rare cases where advance notice of the TRO application would vitiate the purpose of the TRO (and where that will be

xi

established by Affidavit), immediate telephonic notice of the prospective application shall be provided to all parties reasonably expected to be affected by entry of the TRO, or provisions therein -- and, in addition, the papers on the application shall be hand delivered or faxed to any such parties at the same time that the papers are delivered or faxed to Chambers. Litigants are reminded of the requirements of Paragraph 12 above, under which factual assertions on motions in adversary proceedings must be supported by affidavit; requests for TROs and preliminary injunctions are in this category.

Discovery and Due Diligence Disputes

29. Counsel are encouraged to resolve discovery and due diligence disputes by negotiation in good faith, and, if necessary, conference call with the Court. The Court will make itself available for such calls, but they may not be scheduled until and unless the parties have first tried and failed to resolve the disputed matters themselves. Unless otherwise ordered by the Court, no motion with respect to a discovery or due diligence dispute shall be filed unless counsel have first conferred in good faith to resolve it, and also sought to resolve the matter by conference call. Accordingly, the Court will not sign Orders to Show Cause with respect to discovery disputes, except upon an affidavit establishing why the Court's normal procedures, as set forth in this paragraph, are unsatisfactory. If practical, the Court will resolve the dispute in the conference call, without submission of papers.

Appeals

30. In the event of any appeal or motion for leave to appeal where the transcript of the proceedings and/or of the decision is to be part of the record, and no later than the time prescribed for initial designation of the record, the appellant(s) and appellee(s) must jointly contact Chambers

to discuss the mechanism for corrections to the transcript, and means for anyone with differences as to proposed corrections to have notice and opportunity to be heard.

Conference Calls and Chambers Conferences

31. The Court will be available for chambers conferences and conference calls to address procedural or case administration matters not involving substantive rights. Any and all parties wishing to participate, or who reasonably can be expected to desire to be heard, must be given notice. While such conferences will normally be off the record, any participant may request that the conference be recorded, and such requests will presumptively be granted.

Agendas

32. Submission of hearing agendas is required in this case. In each such agenda:

(a)  Disputed matters are to be shown first.

(b)  The listings of filings with respect to matters on the agenda shall be limited to submissions of substance - motions, opposing pleadings and briefs -and need not, and shall not, include the supporting affidavits, exhibit binders, or miscellaneous filings, such as notices of adjournment and affidavits of service.

(c)  The Agenda must be submitted, and served, by 5:00 p.m. of the day before the hearing. It can *and must* be updated if there are changes.

(d)  Settlements of disputed matters are encouraged. If discussions as to settlement are ongoing and are proceeding constructively, telephonic notice of such to Chambers (by joint call or by one representative with the authority of anyone else concerned) is required. To minimize the Court's expenditure of preparation time on settled matters, counsel must call or fax Chambers *immediately* (even if before or after traditional business hours) when an agreement in principle as to settlement is reached.

Conflicts with Local Bankruptcy

33. In the event of any actual or perceived conflict between the provisions of this order and the Local Bankruptcy Rules, litigants and their adversaries shall jointly call Chambers for guidance and/or rulings.

Clarifications and Modifications

34. Requests for clarifications, modifications, and/or improvements to this order are entirely appropriate; they may be made in connection with any status conference, or upon Motion.

Dated: New York, New York            _____
      September __, 2010                   United States Bankruptcy Judge