Hearing Date:  December 15, 2010, at 10:00 a.m.
Objection Deadline:  November 15, 2010, at 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 Case |
| Fairfield Sentry Limited, et al., | Case No. 10-13164 (BRL) |
| Debtors in Foreign Proceedings. | Jointly Administered |

| | |
|---|---|
| Fairfield Sentry Limited (In Official Liquidation), acting by and through the Foreign Representatives thereof, | |
| Plaintiffs, | Adv. Pro. No. 10-03633 BRL) |
| -against- | (and 13 additional adversary proceedings) |
| HSBC Private Bank (Suisse) SA and Beneficial Owners of the Accounts Held in the Name of HSBC Private Bank (Suisse) SA 1-1000, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO REMAND AND FOR ABSTENTION

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

Of Counsel:

Evan A. Davis
Thomas J. Moloney
Lawrence B. Friedman
Carmine D. Boccuzzi Jr.
Breon S. Peace

*(Continued on inside cover)*

*(Continued from outside cover)*

One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Defendants HSBC Private Bank (Suisse) SA, HSBC Securities Services (Luxembourg) SA, HSBC Bank USA NA, HSBC Private Bank (C.I.) Limited (sued here as HSBC Private Bank (Guernsey) Ltd), HSBC Private Banking Nominee 1 (Jersey) Limited (sued here as FS/HSBC Private Banking Nom), Robinson & Co., Caceis Bank Luxembourg, CDC IXIS, Citibank NA London, Citibank (Switzerland) AG, Citigroup, Citivic Nominees Limited, BNP Paribas Securities Services Luxembourg, BGL BNP Paribas (sued here as BNP Paribas Luxembourg SA), BNP Paribas (Suisse) SA, BNP Paribas (Suisse) SA Ex Fortis*, and BNP Paribas (Suisse) SA Private

---

**Fairfield Sentry Limited (In Official Liquidation),**
**acting by and through the**
**Foreign Representatives thereof,**

          **Plaintiffs,**

          **-against-**

**HSBC Securities Services (Luxembourg) SA and**
**Beneficial Owners of the Accounts Held in the**
**Name of HSBC Securities Services**
**(Luxembourg) SA,**

          **Defendants.**

      **Adv. Pro. No. 10-03630 (BRL)**

---

**Fairfield Sentry Limited (In Official Liquidation),**
**acting by and through the**
**Foreign Representatives thereof,**

          **Plaintiffs,**

          **-against-**

**FS/HSBC Private Banking Nom and**
**Beneficial Owners of the Accounts Held in the**
**Name of FS/HSBC Private Banking**
**Nom 1-1000,**

          **Defendants.**

      **Adv. Pro. No. 10-03629 (BRL)**

|  | ) |  |
| --- | --- | --- |
| **Fairfield Sentry Limited, et al. (In Official** | ) | |
| **Liquidation), acting by and through the** | ) | |
| **Foreign Representatives thereof,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Adv. Pro. No. 10-03628 (BRL)** |
| **-against-** | ) | |
| | ) | |
| **Robinson & Co. and Beneficial Owners of the** | ) | |
| **Accounts Held in the Name of Robinson** | ) | |
| **& Co. 1-1000,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

_____    )
**Fairfield Sentry Limited, et al. (In Official**    )
**Liquidation), acting by and through the**    )
**Foreign Representatives thereof,**    )
                                           )
                **Plaintiffs,**    )
                                           )
            **-against-**    )    **Adv. Pro. No. 10-03631 (BRL)**
                                           )
**HSBC Private Bank (Guernsey) LTD and**    )
**Beneficial Owners of the Accounts Held in the**    )
**Name of HSBC Private Bank**    )
**(Guernsey) LTD 1-1000,**    )
                                           )
              **Defendants.**    )
_____    )


_____    )
**Fairfield Sentry Limited, et al. (In Official**    )
**Liquidation), acting by and through the**    )
**Foreign Representatives thereof,**    )
                                           )
                **Plaintiffs,**    )
                                           )    **Adv. Pro. No. 10-03624 (BRL)**
            **-against-**    )
                                           )
**Caceis Bank Luxembourg and Beneficial**    )
**Owners of the Accounts Held in the Name of**    )
**Caceis Bank Luxembourg 1-1000,**    )
                                           )
              **Defendants.**    )
_____    )

| | |
|---|---|
| **Fairfield Sentry Limited (In Official Liquidation), acting by and through the Foreign Representatives thereof,**<br><br>   **Plaintiffs,**<br><br>   **-against-**<br><br>**CDC IXIS and Beneficial Owners of the Accounts Held in the Name of CDC IXIS 1-1000,**<br><br>   **Defendants.** | **Adv. Pro. No. 10-03754 (BRL)** |
| **Fairfield Sentry Limited (In Official Liquidation), acting by and through the Foreign Representatives thereof,**<br><br>   **Plaintiffs,**<br><br>   **-against-**<br><br>**Citibank NA London and Beneficial Owners of the Accounts Held in the Name of Citibank NA London 1-1000,**<br><br>   **Defendants.** | **Adv. Pro. No. 10-03622 (BRL)** |
| **Fairfield Sentry Limited, et al. (In Official Liquidation), acting by and through the Foreign Representatives thereof,**<br><br>   **Plaintiffs,**<br><br>   **-against-**<br><br>**Citibank (Switzerland) Zurich, et al.**<br><br>   **Defendants.** | **Adv. Pro. No. 10-03640 (BRL)** |

| | |
|---|---|
| **Fairfield Sentry Limited (In Official Liquidation),** acting by and through the Foreign Representatives thereof, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| -against- | ) ) | **Adv. Pro. No. 10-03634 (BRL)**
| **Zurich Capital Markets Company and Beneficial Owners of the Accounts Held in the Name of Zurich Capital Markets Company 1-1000 et al.,** | ) ) ) ) ) |
| Defendants. | ) ) ) |

| | |
|---|---|
| **Fairfield Sentry Limited, et al. (In Official Liquidation), acting by and through the Foreign Representatives thereof,** | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| -against- | ) ) ) | **Adv. Pro. No. 10-03627 (BRL)**
| **BNP Paribas Securities Services Luxembourg and Beneficial Owners of the Accounts Held in the Name of BNP Paribas Securities Services Luxembourg 1-1000,** | ) ) ) ) |
| Defendants. | ) ) ) |

|  |  |  |
|---|---|---|
| **Fairfield Sentry Limited (In Official Liquidation), acting by and through the Foreign Representatives thereof,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**BNP Paribas Luxembourg SA and Beneficial Owners of the Accounts Held in the Name of BNP Paribas Luxembourg SA 1-1000,**<br><br>**Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Adv. Pro. No. 10-03626 (BRL)** |
| **Fairfield Sentry Limited, et al. (In Official Liquidation), acting by and through the Foreign Representatives thereof,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**ABN AMRO Schweiz AG, et al.**<br><br>**Defendants.** | ) ) ) ) ) ) ) ) ) ) ) | **Adv. Pro. No. 10-03636 (BRL)** |
| **Fairfield Sentry Limited (In Official Liquidation), acting by and through the Foreign Representatives thereof,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**ABN AMRO Schweiz AG, et al.**<br><br>**Defendants.** | ) ) ) ) ) ) ) ) ) ) ) | **Adv. Pro. No. 10-03635 (BRL)** |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ..................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND........................................................ 2

    A.    The State Court Actions............................................................................ 2

    B.    Plaintiffs' State Law Claims ..................................................................... 3

    C.    The Chapter 15 Cases and the Notices of Removal .................................. 5

    D.    Other Related Actions .............................................................................. 6

ARGUMENT ................................................................................................................. 7

I.      THE PRESUMPTION AGAINST REMOVAL........................................................ 7

II.    THE ACTIONS ARE NOT REMOVABLE BECAUSE THEY ARE NOT
      WITHIN THE DISTRICT COURT'S BANKRUPTCY JURISDICTION............ 8

    A.    The Actions Do Not Arise Under, Or Arise In A Case Under, The
         Bankruptcy Code .................................................................................... 8

    B.    The Court Lacks "Related To" Jurisdiction .............................................. 11

         1.    *The Actions Are Not "Related To" The Funds' Chapter 15
             Cases* ........................................................................................... 11

         2.    *The Actions Are Not "Related To" The SIPA Liquidation* ................. 14

III.   THE REMOVALS ARE UNTIMELY ................................................................. 17

IV.   EVEN IF "RELATED TO" JURISDICTION WERE TO EXIST, THIS
      COURT MUST ABSTAIN FROM HEARING THE ACTIONS .......................... 21

V.    THE ACTIONS SHOULD ALSO BE REMANDED PURSUANT TO 28
      U.S.C. §§ 1334(c)(1) AND 1452(b) ......................................................... 25

    A.    Remand Will Not Impact The Administration Of Plaintiffs' Estates ......... 26

    B.    Because Unsettled State Law Claims Predominate, Comity
         Considerations Warrant Remand .............................................................. 26

C.      The Moving Defendants Will Not Consent To Trial By Jury In
        This Court ................................................................................................      28

D.      The Court Should Not Reward Plaintiffs' Blatant Forum Shopping ..........      28

CONCLUSION .............................................................................................................      31

## TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

11 U.S.C. § 304 .................................................................................................................9, 10, 12-13

11 U.S.C. § 541(a) ...........................................................................................    11

11 U.S.C. § 1501 ..............................................................................................    11

11 U.S.C. § 1504 ..............................................................................................    20

11 U.S.C. § 1509(b)(3) .....................................................................................    14

11 U.S.C. §§ 1520(a)(1)-(4) .............................................................................    11

11 U.S.C. § 1521 ..............................................................................................    11, 14

11 U.S.C. § 1528 ..............................................................................................    12

15 U.S.C. § 78eee(b)(2)(A)(iii) ........................................................................ 5, 15, 22

28 U.S.C. § 157 ................................................................................................8, 10-11, 28

28 U.S.C. § 1334 .............................................................................................5, 8, 21-22, 24-25

28 U.S.C. 1446 .................................................................................................    17-19

28 U.S.C. § 1447 ..............................................................................................    19

28 U.S.C. § 1452 .............................................................................................5, 8, 19, 25

28 U.S.C. § 2075, as amended by Pub. L. No. 95-598, § 247, 92 Stat. 2672 ....................    19

Fed. R. Bankr. P. 9027 ..................................................................................... 5, 17-21

Fed. R. Civ. P. 44.1 ..........................................................................................    4

**Cases**

176-60 Union Tpk., Inc. v. Howard Beach Fitness Ctr, Inc.,
209 B.R. 307 (S.D.N.Y. 1997)...........................................................................    16

9821 Shore Rd. Owners Corp. v. Seminole Realty Co. (In re 9281 Shore Road
Owners Corp.),
214 B.R. 676 (Bankr. E.D.N.Y. 1997)..............................................................    28

Balensweig v. Kitrell & Kitrell, P.C.,
410 B.R. 157 (Bankr. S.D.N.Y. 2008) (Lifland, J.)..................................................... 16

Bondi v. Grant Thornton Int'l,
322 B.R. 44 (S.D.N.Y. 2005)....................................................................................... 12

Cent. Buffalo Project Corp. v. Edison Bros. Stores, Inc.,
No. 92 Civ. 642E(F) 1992 WL 392626 (W.D.N.Y. Dec. 15, 1992)............................ 20

Channel Bell Assocs. v. W.R. Grace & Co.,
No. 91 Civ. 5485 (PKL), 1992 WL 232085 (S.D.N.Y. Aug. 31, 1992) .................... 25

Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,
130 B.R. 405 (S.D.N.Y. 1991)........................................................................9, 25, 27-28

Durso Supermarkets., Inc. v. D'Urso (In re Durso Supermarkets, Inc.),
170 B.R. 211 (S.D.N.Y. 1994)..................................................................................... 10

Fogerty v. Petroquest Res., Inc. (In re Condor Ins. Ltd.),
601 F.3d 319 (5th Cir. 2010) ....................................................................................... 12

Gen. Ry. Signal Co. v. City of New York
(In re Leco Enters., Inc.), 144 B.R. 244 (S.D.N.Y. 1992) ........................................... 8

Granfinanciera, S.A. v. Nordberg,
492 U.S. 33 (1989)........................................................................................................ 28

In re JSC BTA Bank,
--- B.R. ----, No. 10-10638, 2010 WL 3306885 (Bankr. S.D.N.Y. Aug. 23, 2010) ........... 11-12

In re Maxwell Commc'n Corp.,
170 B.R. 800 (Bankr. S.D.N.Y. 1994) (Brozman, J.) ......................................... 13-14

In re Orion Pictures Corp.,
4 F.3d 1095 (2d Cir. 1993)........................................................................................... 10

In re Riverside Nursing Home,
144 B.R. 951 (S.D.N.Y. 1992)..................................................................................... 9

In re W.R. Grace & Co.,
591 F.3d 164 (3d Cir. 2009).......................................................................................... 16

ING Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat),
338 B.R. 574 (Bankr. S.D.N.Y. 2005)........................................................................ 22

Intra Muros Trust v. Truck Stop Scale Co.,
163 B.R. 344 (N.D. Ind. 1994) ................................................................................... 19

JCPL Leasing Corp. v. Treco (In re Treco),
227 B.R. 343 (Bankr. S.D.N.Y. 1998) ................................................................... 12

Joremi Enters. Inc. v. Hershkowitz (In re New 188th LLC),
396 B.R. 885 (Bankr. S.D.N.Y. 2008) ............................................................... 23

Kerusa Co. v. W10Z/515 Real Estate Ltd. P'ship (In re J.A. Jones Constr.),
No. 04 Civ. 708 (GEL), 2004 WL 1048239 (S.D.N.Y. May 7, 2004) ............................. 26

Krys v. Surgue,
No. 08 Civ. 3086, 2008 WL 4700920 (S.D.N.Y. Oct. 23, 2008) ....................................... 25

Lead I JV, LP v. North Fork Bank,
401 B.R. 571 (E.D.N.Y. 2009) ......................................................................... 19

Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),
304 F.3d 223 (2d Cir. 2002)............................................................................. 26

Lupo v. Human Affairs Int'l, Inc.,
28 F.3d 269 (2d Cir. 1994)................................................................................. 8

Maggio v. Touche Ross & Co. (In re Oliver's Stores, Inc.),
107 B.R. 40 (Bankr. D.N.J. 1989) ...................................................................... 27

Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear
Corp.),
241 B.R. 511 (Bankr. S.D.N.Y. 1999)................................................................. 26

Mt. McKinley Ins. Co. v. Corning, Inc.,
399 F.3d 436 (2d Cir. 2005) ............................................................................. 22

N.Y. City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Secs. Litig.),
293 B.R. 308 (S.D.N.Y. 2003)........................................................................... 21

O'Sullivan v. Loy (In re Loy),
No. 07-51040 (FJS), 2009 WL 2381339 (Bankr. E.D. Va. Aug. 3, 2009) ........................ 10

Osanitsch v. Marconi PLC (In re Marconi PLC),
363 B.R. 361 (S.D.N.Y. 2007).........................................................................8, 10, 12-13

Pan Atlantic Group, Inc. v. Republic Ins. Co.,
878 F. Supp. 630 (S.D.N.Y. 1995)..................................................................... 8

Picard v. Fairfield Sentry Ltd., et al.,
No. 09-1239 (BRL) (Bankr. S.D.N.Y. July 20, 2010)...................................... 15

Pinson v. Knoll, Inc.,
No. 07 Civ. 1739, 2007 WL 1771554 (S.D.N.Y. 2007) ................................................. 18

Publicker Indus., Inc. v. U.S. (In re Cuyahoga Equip. Corp.),
980 F.2d 110 (2d. Cir. 1992)............................................................................. 12

Rationis Enterps. Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.,
426 F.3d 580 (2d Cir. 2005)............................................................................... 4

Renaissance Cosmetics Inc. v. Dev. Specialists Inc.,
277 B.R. 5 (S.D.N.Y. 2002)................................................................................ 27

Rupp v. Elmari (In re Elmari),
369 B.R. 96 (Bankr. E.D.N.Y. 2007)................................................................. 27

State Bank of Lombard v. Chart House, Inc.
46 B.R. 468 (N.D. Ill. 1985) ............................................................................. 19

Tech. Outsource Solutions, LLC v. Eni Tech., Inc.,
No. 02 Civ. 6433 (CJS), 2003 WL 252141 (W.D.N.Y. Jan. 23, 2003) ............ 23

Things Remembered, Inc. v. Petrarca,
516 U.S. 124 (1995)...................................................................................... 7, 19

Thomas v. Baldwin,
189 F. Supp. 2d 1 (E.D.N.Y. 2002) ................................................................... 21

Von Richtofen v. Family M. Found. Ltd.,
339 B.R. 315 (S.D.N.Y. 2005)....................................................................... 21-22

Vornado Realty Trust v. Stop & Shop Supermarket Cos. (In re Bradless Stores,
Inc.),
311 B.R. 29 (Bankr. S.D.N.Y. 2004) (Lifland, J.), aff'd, 2005 WL 106794
(S.D.N.Y. Jan. 19, 2005).................................................................................... 22

Wachovia Bank, N.A. v. Carroll,
No. 1:08 Civ. 741 (MHT), 2009 WL 330019 (M.D. Ala. Feb. 10, 2009) ......... 30

Whitaker v. Am. Telecasting, Inc.,
261 F.3d 196 (2d Cir. 2001)............................................................................... 18

**Other Authorities**

H.R. Rep. No. 109-31(I), (2005)........................................................................ 12

HON. BURTON R. LIFLAND, ET AL., THE AMERICAN BANKRUPTCY INSTITUTE
GUIDE TO CROSS-BORDER INSOLVENCY IN THE UNITED STATES 37 (Am. Bankr.
Inst. 2008) .......................................................................................................... 11

Chris Frates, Madoff Victims Take On The Pyramids, Politico, Sept. 29, 2010,
available at http://www.politico.com/news/stories/0910/42844.html................ 15

vi

Defendants HSBC Private Bank (Suisse) SA, HSBC Securities Services
(Luxembourg) SA, HSBC Bank USA NA, HSBC Private Bank (C.I.) Limited, HSBC
Private Banking Nominee 1 (Jersey) Limited, Robinson & Co., Caceis Bank Luxembourg,
CDC IXIS, Citibank NA London, Citibank (Switzerland) AG, Citigroup, Citivic Nominees
Limited, BNP Paribas Securities Services Luxembourg, BGL BNP Paribas,[1] BNP Paribas
(Suisse) SA, BNP Paribas (Suisse) SA Ex Fortis and BNP Paribas (Suisse) SA Private
(collectively, the "Moving Defendants"), by their attorneys Cleary Gottlieb Steen &
Hamilton LLP, respectfully submit this memorandum of law in support of their motion,
pursuant to 28 U.S.C. §§ 1334(c)(1) and (2), 1447, and 1452(b), and Federal Rule of
Bankruptcy Procedure 9027, for an order remanding the above-captioned actions (the
"Actions") to the New York State Supreme Court for New York County, and/or abstaining
from the Actions.

## PRELIMINARY STATEMENT

The claims in these Actions have nothing to do with the federal
bankruptcy laws and no real connection to any bankruptcy case. They instead involve a
novel and highly dubious application of the New York State law of payment by mistake.
This Court lacks subject matter jurisdiction over the parties' disputes and, in any event,
must abstain from addressing them in the interests of federalism and comity and allow the
New York courts to decide them. Plaintiffs themselves commenced the Actions in state
court months ago, after filing nearly identical claims in the British Virgin Islands (the

---

[1] The complaint in Adversary Proceeding No. 10-03626 names "BNP Paribas Luxembourg
SA" as a defendant. As of October 1, 2010, BNP Paribas Luxembourg SA merged with BGL
BNP Paribas and has ceased to exist.

"BVI"), and their latest attempt at forum shopping by removing to this Court should not be countenanced.  Accordingly, the Court should remand the Actions back to New York Supreme Court.

## PROCEDURAL AND FACTUAL BACKGROUND

### A.    The State Court Actions

Plaintiffs[2] are the largest of the "feeder funds" and two indirect feeders that sold shares to investors and invested the proceeds with Bernard L. Madoff Investment Securities LLC ("BLMIS").  Between April and July 2010, they commenced more than 140 related lawsuits, including the Actions, in the Supreme Court of the State of New York for New York County, by filing summonses with notice.  The lawsuits assert common law claims under New York law and seek restitution of redemption payments that the Funds allegedly received from BLMIS and then paid to registered shareholders and unnamed "beneficial owners" in respect of interests in the Funds' shares tendered for redemption.  In June 2010, Plaintiffs purported to serve many of the summonses by international registered mail.[3]

In July 2010, several of the Moving Defendants entered into stipulations with Plaintiffs extending the time to demand complaints.  On August 19, 2010, a defendant in one of the actions filed a Request for Judicial Intervention and noted that all

---

[2]    Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma"), and Fairfield Lambda Limited ("Fairfield Lambda") (together, "Plaintiffs" or the "Funds").  The Funds were organized under the laws of the BVI and are currently in liquidation proceedings there.

[3]    The Moving Defendants make this motion to remand without prejudice to or waiver of any rights or defenses, including without limitation defenses based upon lack of personal jurisdiction, improper service of process, or failure to attempt service of process.  The Moving Defendants intend to assert any applicable defenses in their responses to the Complaints, which are not yet due.

of the actions were related.  Request for Judicial Intervention, *Fairfield Sentry Ltd. v. Safra Nat'l Bank of New York*, Index No. 650645/2010 (NY Sup. Ct. Aug 19, 2010) (Docket No. 7), attached as Ex. 1 to the Declaration of Charles J. Keeley, III, sworn on Oct. 4, 2010 ("Keeley Decl.").  That lawsuit was assigned to Justice Bernard Fried of the Commercial Division.  Plaintiffs also purported to serve discovery requests in most of the lawsuits, and many of the Moving Defendants served responses and objections to those requests.

> **B.    Plaintiffs' State Law Claims**

Plaintiffs first filed their Complaints in the Actions on September 21, 2010, months after they commenced the Actions in state court.  The Complaints purport to assert four common law claims—unjust enrichment, money had and received, mistaken payment and constructive trust—based on payments that the Funds allegedly received from BLMIS and then paid to registered shareholders in respect of shares tendered for redemption.[4]  (Compl. ¶¶ 25-26, 35-84.)[5]  Each claim is asserted against both the named registered shareholder and unnamed "Beneficial Shareholders" for whom the registered shareholder may have acted as trustee, agent, representative or nominee.

---

[4]    Three of the Complaints name one or more of the Moving Defendants as defendants but contain no allegations or claims against them.  *See* Complaint, *Fairfield Sentry Ltd. v. Zurich Capital Mkts. Co.*, Adv. Pro. No. 10-3634; Complaint, *Fairfield Sentry Ltd. v ABN AMRO Schweiz AG*, Adv. Pro. No. 10-3635; Complaint, *Fairfield Sentry Ltd.  v. ABN AMRO Schweiz AG*, Adv. Pro. No. 10-3636.

[5]    The paragraphs of the Complaints referenced in this motion correspond to the Complaint filed in *Fairfield Sentry Ltd. v. HSBC Private Bank (Suisse) SA*, Adv. Pro. No. 10-3633.  While all Complaints contain substantially identical allegations, the paragraph numbering varies slightly depending on the number of parties named.

3

(Compl. ¶¶ 19, 35-84.)  Plaintiffs do not assert that any of these common law claims are governed by anything other than New York law.[6]

All of Plaintiffs' claims are based on a novel and highly dubious theory of mistake.  Essentially, the Funds allege that the monies they allegedly received from BLMIS and used to make redemption payments were not, as the Funds then believed, "proceeds from the sale of securities held by BLMIS for the account of Sentry." (Compl. ¶¶ 36, 42, 55, 79.)  The Funds also allege that "the amounts of the Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received by [the registered shareholder defendant] for its redemption of shares to be in excess of the actual Net Asset Value of such Shares." (Compl. ¶¶ 49, 47, 65, 73, 82.)

Thus, it is Plaintiffs' theory under New York State law that, even though they are not out of pocket one penny of the amount they paid to redeeming investors, they are nonetheless entitled to a windfall recovery from those who in good faith decided to redeem some or all of their investment in the Funds at any point within the six year statute of limitations.  Accordingly, the Actions are hardly the typical "payment by mistake" case where the failure to order restitution would be unjust because the payor will be out of pocket absent restitution, and the payee will suffer no loss if restitution is ordered.  Here, it is the ordering of restitution that would be unjust, because Plaintiffs are

---

[6]     The Complaints make passing reference to BVI law, stating that unspecified "[i]ssues to be resolved in this case may be determined to be governed by the laws of the British Virgin Islands.  In that event, Plaintiffs intend to rely upon the applicable laws of that territory." (Compl. ¶ 20).  These statements do not give notice that Plaintiffs will argue that BVI law governs their claims.  *See Rationis Enterps. Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.*, 426 F.3d 580, 586 (2d Cir. 2005) (stating that under, Federal Rule of Civil Procedure 44.1, "a litigant must provide the opposing party with reasonable notice that an argument *will be raised*") (emphasis added).

4

not out of pocket as a result of the "mistake" they claim, and no defendant has been

unjustly enriched by anything Plaintiffs did or did not do.

      **C.**      **The Chapter 15 Cases and the Notices of Removal**

      On June 14, 2010, the BVI-appointed liquidators for the Funds (the

"Foreign Representatives") filed petitions in this Court for recognition of the Funds'

liquidation proceedings in the BVI as foreign main proceedings under chapter 15 of the

Bankruptcy Code.  (Notice of Removal ¶ 4.)  On July 22, 2010, this Court entered an

Order (the "Recognition Order") recognizing the BVI liquidation proceedings as foreign

main proceedings.  (*Id.*)

      On September 3 and 7, 2010, Plaintiffs removed the instant Actions and

others from state court. (Notice of Removal at 1.)    Plaintiffs allege that the claims

asserted in the Actions are removable pursuant to 28 U.S.C. § 1452(a) and Rule 9027 of

the Federal Rules of Bankruptcy Procedure. (*Id.* ¶ 5.)  They further allege that subject

matter jurisdiction exists over the claims pursuant to 28 U.S.C. § 1334(b) "because they

arise in and/or are related to the Debtors' Chapter 15 cases." (*Id.* ¶ 6.)  Plaintiffs also

maintain that the claims are "core proceedings" because they "concern the administration

of the Debtors' Chapter 15 cases, affect the liquidation of the Debtors' assets, and are in

furtherance of the Foreign Representatives' efforts to administer and realize upon the

Debtors' assets in the United States pursuant to the Recognition Order and applicable

provisions of Chapter 15 of the Bankruptcy Code."  (*Id.* ¶ 9.)

      Additionally, the Complaints allege that there is jurisdiction pursuant to

section 78eee(b)(2)(A)(iii) of the Securities Investor Protection Act ("SIPA"), which

purportedly "incorporates 28 U.S.C. § 1334(b) and applicable provisions of Title 11,"

because the Actions are related to the consolidated liquidation proceedings of BLMIS and

Madoff, *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, SIPA Liquidation No. 08-1789 (BRL) (the "SIPA Liquidation"). (Compl. ¶ 10.) The Trustee appointed for the SIPA Liquidation has brought an adversary proceeding against Fairfield Sentry to recover approximately $3.5 billion in transfers it allegedly received from BLMIS. (Compl. ¶ 31.)   The Trustee is not, however, a party to any of the Actions.

In total, Plaintiffs have removed approximately 60 of the actions they commenced in New York Supreme Court.  All of the removed actions have been transferred to this Court pursuant to the Standing Order of Referral of Cases to Bankruptcy Judges, dated July 10, 1984.  In addition, Plaintiffs have filed roughly 35 similar actions directly in this Court.  On September 20, 2010, the Moving Defendants filed a motion requesting that the District Court withdraw the reference of the Actions for the purpose of deciding the instant remand motion.

### D.    Other Related Actions

Between October 2009 and March 2010, before commencing the New York state actions, the Funds filed claims in the BVI for restitution of redemption payments allegedly paid by "mistake" to more than 90 registered shareholders. *See, e.g.*, Keeley Decl. Ex. 2 (Notice, Claim No.: BVIHC (COM) 404/2009 Between Fairfield Sentry Limited and Banco General SA/Banca Privada et al. (E. Caribbean Sup. Ct., High Ct. of Justice, Virgin Islands, Commercial Div. Nov. 18, 2009)).  Many of these shareholders are also defendants in the New York actions, and thus are facing essentially the same claims in the BVI and in New York.  Unlike in the New York actions, the Funds have purported to serve the BVI claims pursuant to The Hague Convention on Service Abroad, and these proceedings are moving forward in the BVI.

6

In addition, Fairfield Sentry filed an action in New York Supreme Court against its service providers and other individuals responsible for the operation of the fund, seeking to recover management and performance fees.  Keeley Decl. Ex. 3 (Complaint ¶¶ 5, 11, *Fairfield Sentry Ltd. v. Fairfield Greenwich Group*, No. 601687/2009 (N.Y. Sup. Ct. May 29, 2009)).   That action also was assigned to Justice Fried.   In July 2009, after the defendants had removed that action, Fairfield Sentry brought a motion to have it remanded back to state court, which the court granted in December 2009.  Keeley Decl. Ex. 4 (Fairfield Sentry Ltd's Mem. of Law In Support of Its Motion to Remand ("Fairfield Sentry's Remand Motion") (S.D.N.Y. July 10, 2009) (Docket No. 10)), *Fairfield Sentry Ltd v. Fairfield Greenwich Gr.*, 09 Civ. 5650 (VM)(THK) (S.D.N.Y. July 10, 2009) (Docket No. 10); Keeley Decl. Ex. 5 (Decision Granting Fairfield Sentry's Remand Motion, *Fairfield Sentry Ltd. v. Fairfield Greenwich Gr.*, 09 Civ. 5650 (VM) (THK) (S.D.N.Y. Dec. 23, 2009) (Docket No. 89).   Almost nine months later, on September 10, 2010, Fairfield Sentry removed that action again from state court, and it has since been referred to this Court.[7]

## ARGUMENT

## I.     THE PRESUMPTION AGAINST REMOVAL

General principles of removal and remand apply to bankruptcy as well as non-bankruptcy actions.  *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128

---

[7]     Also before Justice Fried are three actions consolidated with Fairfield Sentry's state court action. *Morning Mist Holdings Lmd. v. Fairfield Greenwich Gr.*, Index No. 601511/2009 (N.Y. Sup. Ct.); *David I. Ferber SEP IRS v. Fairfield Greenwich Gr.*, Index No. 600469/2009 (N.Y. Sup. Ct.); *Pierce v. Fairfield Greenwich Gr.*, Index No. 600498/2009 (N.Y. Sup. Ct).  The *Morning Mist* case was removed by the Funds and has been referred to this Court, *Morning Mist Holdings v. Fairfield Greenwich Gr.*, Adv. Pro. No. 10-03765 (BRL).  On September 27, 2010, Plaintiffs in that case filed a motion to remand it back to state court.

(1995).  The removing party bears the burden of establishing that there is federal subject

matter jurisdiction over the action.  *See Pan Atlantic Group, Inc. v. Republic Ins.*

*Co.*, 878 F. Supp. 630, 637 (S.D.N.Y. 1995).  As Fairfield Sentry correctly emphasized

in its own remand motion, "there is a strong presumption against removal."  Fairfield

Sentry's Remand Motion at 5 (citing *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274

(2d Cir. 1994).  "In light of the congressional intent to restrict federal court jurisdiction,

as well as the importance of preserving the independence of state governments, federal

courts construe the removal statute narrowly, resolving any doubts against removability."

*Lupo*, 28 F.3d at 274

## II.   THE ACTIONS ARE NOT REMOVABLE BECAUSE THEY ARE NOT WITHIN THE DISTRICT COURT'S BANKRUPTCY JURISDICTION

Section 1452 of Title 28 only authorizes a party to remove a claim or

cause of action if the District Court "has jurisdiction of such claim or cause of action

under section 1334" of the same title.  Under Section 1334(b), the District Courts have

jurisdiction over civil actions that "arise under" the Bankruptcy Code, or "arise in" or are

"related to" a case under the Bankruptcy Code.  28 U.S.C. § 1334(b).  District Courts

may refer such actions to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a).

### A.   The Actions Do Not Arise Under, Or Arise In A Case Under, The Bankruptcy Code

"'Arising in' and 'arising under' proceedings encompass the matters that

are at the core of the jurisdiction of the bankruptcy courts, and depend upon the

application or construction of bankruptcy law as expressed in Title 11."  *Osanitsch v.*

*Marconi PLC (In re Marconi PLC)*, 363 B.R. 361, 366 (S.D.N.Y. 2007) (Lynch, J.)

(quoting *Gen. Ry. Signal Co. v. City of New York* (*In re Leco Enters., Inc.*), 144 B.R. 244,

248 (S.D.N.Y. 1992)).  Specifically, actions "arising under" the Bankruptcy Code are

8

those where the underlying claim is "predicated on a right created by a provision of title

11." *Drexel Burnham Lambert Gr., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407

(S.D.N.Y. 1991) (quoting *World Travel Vacation Brokers, Inc. v. Bowery Sav. Bank (In

re Chargit Inc.*), 81 B.R. 243, 246-47 (Bankr. S.D.N.Y. 1987) (Lifland, J)).  An action

"arising in" a case under the Bankruptcy Code is not based "on any right expressly

created by title 11, but nevertheless would have no existence outside of the bankruptcy."

*Drexel Burnham*, 130 B.R. at 407; *see also In re Riverside Nursing Home*, 144 B.R. 951,

955 (S.D.N.Y. 1992) (stating that a proceeding "arises in" a case under the Bankruptcy

Code "if it is a proceeding that, by its very nature, could only arise in a bankruptcy case

and has no existence outside of bankruptcy").

   Plaintiffs' claims unquestionably do not "arise under" the Bankruptcy

Code.  Rather, their claims invoke purported rights created, if at all, exclusively by state

common law.  The Actions are not of a nature that could only "arise in" a bankruptcy

case, as proven by the fact that Plaintiffs commenced the Actions in state court, in most

instances before even filing their chapter 15 cases.  Further, the Actions seek to recover

payments made well before Plaintiffs entered liquidation in the BVI or sought

recognition of the BVI proceedings under chapter 15.  Simply put, chapter 15 recognition

of the BVI proceedings has established the Foreign Representatives' right of access to

state and federal courts in the United States, and Plaintiffs' claims now proceed wholly

independent of any provision of the Bankruptcy Code.

   Courts have previously rejected attempts, such as Plaintiffs' attempt here,

to characterize common law claims arising from pre-petition transactions as "core

proceedings" in the context of ancillary cases under chapter 15 or former section 304.

9

For example, in *Marconi*, a former employee sought to assert common law tort and

contract claims for severance benefits against a foreign debtor in a proceeding under

former section 304. *In re Marconi PLC,* 363 B.R. at 362, 366. The court observed that,

"[t]o be a core proceeding, an action must have at its foundation the creation,

recognition, or adjudication of rights which would not exist independent of a bankruptcy

environment." *Id.* at 366. The claimant's common law claims, which were not "created

by or unique to bankruptcy law," "manifestly [did] not fall within this category." *Id.*; *see*

*also O'Sullivan v. Loy (In re Loy)*, No. 07-51040 (FJS), 2009 WL 2381339 at *5-6

(Bankr. E.D. Va. Aug. 3, 2009) (rejecting the foreign representative's attempt to remove

a state law action concerning a real property dispute in the context of a chapter 15 case,

and finding that the action was not core because it "depend[ed] solely on the application

of non-bankruptcy law" and had "an independent existence outside of the bankruptcy

case").

        At most, the outcome of Plaintiffs' claims will affect the amount available

for distribution to the creditors of the estate being administered in the BVI. It is well-

settled that this is insufficient to render a claim "core." *See In re Orion Pictures Corp.,* 4

F.3d 1095, 1102 (2d Cir. 1993) (pre-petition contract claim was not core under

Section 157(b)(2)(A), which classifies as core all "matters concerning the administration

of the estate," even if a recovery would inure to the benefit of the estate); *Durso*

*Supermarkets, Inc. v. D'Urso (In re Durso Supermarkets, Inc.)*, 170 B.R. 211, 214

(S.D.N.Y. 1994) (noting that while debtors' fraud claim might enlarge or benefit the

estate, "that fact without more does not affect the liquidation of the assets of the estate or

the adjustment of the debtor-creditor or the equity security holder relationship'" to make

the claims core under Section 157(b)(2)(O)).

> **B.      The Court Lacks "Related To" Jurisdiction**
>
> > 1.      *The Actions Are Not "Related To" The Funds' Chapter 15 Cases*

Chapter 15 cases are ancillary proceedings that invoke the Bankruptcy

Court's jurisdiction to assist foreign insolvency proceedings. *See* 11 U.S.C. § 1501.

Given their ancillary nature, cases under chapter 15 are "unlike plenary cases commenced

under the Bankruptcy Code." *In re JSC BTA Bank*, --- B.R. ----, Civ. No. 10-10638, 2010

WL 3306885, at *5 (Bankr. S.D.N.Y. Aug. 23, 2010).  The commencement of a plenary

case creates a worldwide estate that consists of all property of a debtor, wherever located,

and is administered in that proceeding. 11 U.S.C. § 541(a).  By contrast, no estate is

created upon the commencement of a chapter 15 case, nor is any estate administered in

such a proceeding.  *See In re JSC BTA Bank*, 2010 WL 3306885, at *5.[8]

Furthermore, jurisdiction under chapter 15 by its terms is limited to assets

of the debtor located *within the territorial jurisdiction of the United States*. *See* 11 U.S.C.

§§ 1520(a)(1)-(4); 1521(a)(5); *see also In re JSC BTA Bank*, 2010 WL 3306885 at **5-9

(holding that in a chapter 15 case in which recognition has been granted, the automatic

stay does not bar a foreign arbitration against the debtor); HON. BURTON R. LIFLAND, ET

AL., THE AMERICAN BANKRUPTCY INSTITUTE GUIDE TO CROSS-BORDER INSOLVENCY IN

THE UNITED STATES 37 (Am. Bankr. Inst. 2008) (stating that "Chapter 15 intends that

---

[8]      An "estate" is defined in section 541(a) of the Bankruptcy Code, which provides "the
commencement of a case under section 301, 302 or 303 of this title creates an estate[.]"  An
ancillary proceeding under chapter 15 is commenced by filing a petition pursuant to § 1515, and
does not implicate sections 301, 302 or 303.  Therefore, there is no "estate" created in a chapter
15 ancillary proceeding as that term is defined in the Bankruptcy Code.

ancillary cases be limited to *property within the recognizing country*" (emphasis added));
c*f. Fogerty v. Petroquest Res., Inc. (In re Condor Ins. Ltd.),* 601 F.3d 319, 327 (5th Cir.
2010) (noting that chapter 15 was designed to prevent foreign representatives from
having to initiate more expansive proceedings when debtors "hide assets in the United
States out of the reach of the foreign jurisdiction"); *JCPL Leasing Corp. v. Treco (In re
Treco)*, 227 B.R. 343, 349-50 (Bankr. S.D.N.Y. 1998) (finding no jurisdiction under
former section 304 over tort and contract claims that did "not seek to recover property or
otherwise implicate the foreign debtors' *assets in this country*" (emphasis added)); *Bondi
v. Grant Thornton Int'l,* 322 B.R. 44, 48 (S.D.N.Y. 2005) (stating that the purpose of
former section 304 was to allow United States courts to assert control over "assets located
in the United States or otherwise subject to the jurisdiction of United States courts").
Even if a foreign representative commences a plenary case under another chapter after
recognition, jurisdiction in such a case generally is limited to assets located in the United
States. *See* 11 U.S.C. § 1528.[9]    "This concept of territorial jurisdiction is an essential
aspect of promoting cooperation and greater legal certainty in cross-border cases." *In re
JSC BTA Bank*, 2010 WL 3306885 at *6.

        Here, the Actions are not related to Plaintiffs' chapter 15 cases for two
reasons.  First, an action is "related to" a bankruptcy case only "if its outcome might have
any conceivable effect on the *bankrupt estate*."  *In re Marconi PLC*, 363 B.R. at 366
(emphasis added); *see also Publicker Indus., Inc. v. U.S. (In re Cuyahoga Equip. Corp.),*

_____

[9]        Furthermore, "[e]ven if a full case is brought [under another chapter], the court may
decide . . .  to stay or dismiss the United States case under the other chapter and limit the United
States' role to an ancillary case under [chapter 15]."  H.R. Rep. No. 109-31(I), at 106 (2005), *as
reprinted in* 2005 U.S.C.C.A.N. 88, 177.

980 F.2d 110, 114 (2d Cir. 1992).  However, because "no estate is being administered" in

an ancillary proceeding, "there is no basis for contending that . . . common-law tort and

contract claims are *related to* any bankruptcy case," "even under th[e] quite expansive

test [for 'related to' jurisdiction.]"  *In re Marconi PLC*, 363 B.R. at 366 (applying 11

U.S.C. § 304, the precursor to chapter 15); *see also In re Loy*, 2009 WL 2381339, at *6

(holding that state law claims asserted in a chapter 15 proceeding have "no impact

whatsoever on the bankruptcy estate, simply for the reason that no *estate* is created upon

the filing of a Chapter 15 petition").

    Second, even assuming that "related to" jurisdiction could exist despite the

fact that no estate is administered in a chapter 15 case, this Court lacks jurisdiction

because the Actions are not seeking to recover assets of the Funds located within the

territorial jurisdiction of the United States.  Instead, Plaintiffs are seeking to recover

payments made to investors around the world, all or substantially all of who are located

*outside* of the United States, because sale of the Funds' shares to U.S. residents or U.S.

citizens was largely prohibited.  *See, e.g.*, Keeley Decl. Ex. 6 (Fairfield Sigma Limited,

Confidential Private Placement Memorandum 10-11 (Feb. 16, 2006), attached as Exhibit

A to the Declaration of Kenneth Krys, *In re Fairfield Sentry Lrd., et al.*, No. 10-13164

(BRL) (Bankr. S.D.N.Y. June 14, 2010) (Docket No. 3).  (expressly prohibiting the direct

or indirect sale of shares to "citizens, nationals or residents of, or institutions or other

entities organized, chartered or resident in the United States of America").   Given

chapter 15's express territorial limitations, such an extraterritorial reach is clearly

unauthorized. *Cf. In re Maxwell Commc'n Corp.,* 170 B.R. 800, 814 (Bankr. S.D.N.Y.

1994) (Brozman, J.) ("where a foreign debtor makes a preferential transfer to a foreign

transferee and the center of gravity of that transfer is overseas, the presumption against

extraterritoriality prevents utilization of section 547 to avoid the transfer"), *aff'd*, 186

B.R. 807 (S.D.N.Y. 1995), *aff'd on other grounds*, 93 F.3d 1036 (2d Cir. 1996).[10]

By seeking to recover payments made around the world, Plaintiffs are

proposing to turn chapter 15 on its head and expand this Court's role beyond the ancillary

one intended into a *de facto* main proceeding.  The inappropriateness of this attempt is

underscored by the fact that Plaintiffs have brought nearly identical claims in the main

BVI proceeding against an overlapping group of defendants, creating a risk of

inconsistency and interference that chapter 15 was designed to avoid.

Finally, remanding the Actions to state court is consistent with the comity

requirements of chapter 15, which requires both federal *and* state courts to grant comity

and respect to the foreign proceeding. 11 U.S.C. § 1509(b)(3) (stating that a "court in the

United States" must grant comity and cooperation).

2.    *The Actions Are Not "Related To" The SIPA Liquidation*

Because their own chapter 15 cases cannot support jurisdiction, Plaintiffs

also apparently seek to base jurisdiction on a different proceeding, the SIPA Liquidation,

a basis they failed to allege in their removal notices.  This attempt to rely on the

provision in the SIPA statute defining the scope of jurisdiction that a court may exercise

*within SIPA proceedings* fails because the Funds' chapter 15 cases are *not* SIPA

_____

[10]    *Maxwell* was a chapter 11 case.  Chapter 15 not only lacks extraterritorial effect but
expressly denies the foreign representative the avoidance powers (including the power to avoid
preferential transfers under Section 547) that the trustee may exercise in a bankruptcy case under
chapters 7 or 11. *See* 11 U.S.C. § 1521(a)(7). It would be anomalous to allow a foreign
representative in a proceeding under chapter 15, where there is no "estate" to administer, *see
supra* pp. 11-12 & n.8, to pursue under state-law theories extraterritorial claims aimed at undoing
the debtor's transfers in circumstances where a chapter 7 or 11 trustee could not use his avoidance
powers extraterritorially.

14

proceedings. *See* 15 U.S.C. § 78eee(b)(2)(A)(iii) (defining the jurisdiction and powers of

a court upon the filing with such court of an application for a protective decree under

section § 78eee(a)(3)(B)).   Conversely, the Court's jurisdiction in these chapter 15 cases

does not extend to actions that are allegedly related to an entirely separate liquidation

proceeding brought not under Title 11, but instead under SIPA.

Furthermore, the only possible nexus between the Actions and the SIPA

Liquidation is that any recovery by Plaintiffs in the Actions could be distributed in the

BVI liquidations to satisfy Plaintiffs' creditors, which might include the BLMIS estate.

The BLMIS Trustee has asserted six-year avoidance claims against the Funds' alleging

their complicity in the Madoff Fraud.[11]   Even putting aside the obvious unfairness of

visiting the consequences of the Funds' alleged complicity in the Madoff Fraud on the

Funds' innocent shareholders, who the Trustee has asserted have no right to participate

in any distribution from the BLMIS estate, this falls short of what is required to support

"related to" jurisdiction.[12]

First, the mere fact that the BLMIS Trustee has claims against the Funds

does not permit the Funds to bootstrap their own purported common law claims against

third parties into federal bankruptcy court actions. The Trustee is not a party to this case.

The proposition that anyone who might owe money to a debtor is therefore entitled to

---

[11]    *See* Keeley Decl. Ex. 7 (Amended Complaint ¶ 3, *Picard v. Fairfield Sentry Ltd., et al.*,
No. 09-1239 (BRL) (Bankr. S.D.N.Y. July 20, 2010) (Docket No. 23) (excerpted) (alleging that
defendants, including the Funds, "had actual and constructive knowledge of Madoff's fraud" and
"engaged in a systematic, purposeful enterprise with Madoff to maintain and profit from a fraud
and wrongly enrich themselves")).

[12]    Such unfairness is equivalent to stealing from one class of innocent shareholders to
benefit another, which is what SIPC's president recently confirmed is not SIPC's intent. *See* Chris
Frates, *Madoff Victims Take On The Pyramids*, Politico, Sept. 29, 2010, *available at*
http://politico.com/news/stories/0910/42844.html (last visited Oct. 3, 2010).

impose on the jurisdiction of the Court overseeing the debtor's case for any claim against any other party is an untenable theory of bankruptcy jurisdiction.  As this Court has stated, "[e]xtending 'related to' jurisdiction would not be proper in this instance as no possibility exists for the outcome of [the Actions] to have any negative or detrimental impact on the [BLMIS] estate."  *Balensweig v. Kitrell & Kitrell, P.C.*, 410 B.R. 157, 163 (Bankr. S.D.N.Y. 2008) (Lifland, J.).

        Additionally, there is no "related to" jurisdiction with respect to a case not involving the Debtor, where the Debtors' interest in the case is contingent on the outcome of yet another lawsuit.  Thus, even when a suit between non-debtors could give rise to a claim against the debtor's estate for indemnification, courts have found no "related to" jurisdiction. *See In re W.R. Grace & Co.*, 591 F.3d 164, 172 (3d Cir. 2009) (stating that "related to" jurisdiction turns on "whether the allegedly related lawsuit would affect the bankruptcy *without the intervention of yet another lawsuit"* ) (quoting *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002)) (emphasis added). Here, the Actions will not affect the rights or obligations of the BLMIS estate at all.  The only potential effect is to increase the Funds' ability to satisfy their liability to the BLMIS estate, if the BLMIS Trustee prevails on his clawback claim against the Funds. This potential indirect effect is far too attenuated to support jurisdiction.  *See 176-60 Union Tpk., Inc. v. Howard Beach Fitness Ctr, Inc.*, 209 B.R. 307, 313 (S.D.N.Y. 1997) (stating that "any controversy having 'only [a] speculative, indirect, or incidental effect on the estate' is not 'related to' the bankruptcy action") (internal quotation marks and citation omitted).

Accordingly, the Actions are not within the District Court's bankruptcy jurisdiction, and therefore are not removable.

## III.   THE REMOVALS ARE UNTIMELY

Even if bankruptcy jurisdiction existed over the Actions, they should be remanded because their removal was untimely.  The time for filing a notice of removal is governed by Federal Rule of Bankruptcy Procedure 9027 and 28 U.S.C. § 1446. Plaintiffs contend that the Actions are removable because they arise in and/or are related to their chapter 15 cases and are related to the SIPA Liquidation.  Pursuant to Rule 9027(a)(3), which applies because the SIPA Liquidation commenced before the filing of the summonses with notice in the Actions (the "Summonses"), all of the Actions are untimely removed.  In the alternative, if the Court deems the relevant "case under the Code" for the purposes of Rule 9027(a) to be Plaintiffs' chapter 15 cases, all the Actions are untimely removed pursuant to 28 U.S.C. § 1446(b) or, at the very least, five of the Actions are untimely removed pursuant to Rule 9027(a)(3).

The SIPA Liquidation commenced in December 2008, well before the filing of the first Summons in any of the Actions, which occurred on April 7, 2010. Notice of Removal Ex. B, *Fairfield Sentry Ltd. v. HSBC Sec. Serv. (Luxembourg) SA*, Adv. Pro. No. 10-03630 (BRL) (Summons with Notice filed on Apr. 7, 2010).  The "claim[s] or cause[s] of action" sought to be removed in all of the Actions were thus asserted "after the commencement" of the case under the Code to which Plaintiffs allege, albeit incorrectly, the Actions are related.  Fed. R. Bankr. P. 9027(a)(3).  Plaintiffs' time to remove the Actions to the Bankruptcy Court is therefore dictated by Rule 9027(a)(3), which limits the time to file for removal to "30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth their claim or cause of action

17

sought to be removed." Here, the notices of removal in the Actions were not filed until September 3 and 7, 2010, anywhere from six weeks to nearly as much as five months after the filing of the Summonses—all well beyond the 30-day time limit.

Plaintiffs cannot seriously dispute that the filing of the Summonses started the running of the 30-day period. A summons with notice can constitute an "initial pleading" so as to trigger the timing requirements of Rule 9027(a)(3) if it contains "sufficient information" to enable the removing party to "intelligently ascertain" the basis for removal. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 204 (2d Cir. 2001); *Pinson v. Knoll, Inc.*, 07 Civ. 1739, 2007 WL 1771554, at *2 (S.D.N.Y. June 18, 2007). Where, as here, the plaintiff is the removing party, it most certainly is able to "intelligently ascertain" the basis for removal from the summons with notice alone. Indeed, Plaintiffs removed all but one of the Actions before filing a complaint or any pleading other than a summons with notice,[13] which unequivocally demonstrates that Plaintiffs did in fact ascertain the removability of the Actions on the basis of the Summonses alone.[14]

As shown above, this Court should conclude that the Actions are not related to the SIPA Liquidation. In that event, the relevant "case under the Code" is Plaintiffs' chapter 15 cases, rather than the SIPA Liquidation. Even viewed from this

---

[13]    A complaint was filed in the *Zurich Capital Markets* action on August 13, 2010; however, it did not name any of the Moving Defendants and was not amended to do so until September 21, 2010.

[14]    Even if Rule 9027(a)(3) could be interpreted to start the 30-day calculation from the dates of receipt of the Summonses by the Moving Defendants, and not the dates the Summonses were filed (an interpretation of the Rule that is nonsensical in this instance because the Actions were removed by Plaintiffs, not by the Moving Defendants), removal of all the Actions is still untimely. The Funds purported to serve most of the Summonses in June, again far more than 30 days before the Actions were removed in September.

perspective, the Actions were still untimely removed.  Pursuant to 28 U.S.C. § 1446(b),

Plaintiffs had 30 days to remove the Actions from the date of the filing of the Summonses

with Notice because, as explained above, those are the "initial pleading[s] setting forth

the claim for relief" upon which removal is based.  *See State Bank of Lombard v. Chart*

*House, Inc.,* 46 B.R. 468, 472-73 (N.D. Ill. 1985).  If removability could not be

determined from certain of the Summonses because they were filed before Plaintiffs'

chapter 15 case commenced, Plaintiffs were required to remove those Actions within 30

days after the filing of their chapter 15 petitions, because upon filing those petitions it

could "first be ascertained that the case is one which is or has become removable" (at

least according to Plaintiffs' strained theory of bankruptcy jurisdiction).[15]  28 U.S.C.

§ 1446(b).  Because the Actions were removed on September 3 and 7, 2010, far more

than 30 days after both the filing of the Summonses and the filing of Plaintiffs' chapter

15 petitions, removal of the Actions was untimely.

        Finally, even if this Court were to extend Plaintiffs the benefit of the

longer time period for removal provided by Rule 9027(a)(2)—which, to the extent this

poses a conflict with the limitations of 28 U.S.C. § 1446, it should not do[16]—removal of

---

[15]    As discussed above, the 30-day calendar should run from the filing of the Summonses and/or the Chapter 15 petitions because the Actions were removed by Plaintiffs, who obviously do not need to await receipt of service by defendants in order to know that a supposedly removable action has been filed.

[16]    To the extent that the 30-day requirement of 28 U.S.C. 1446(b) conflicts with any time period for removal set out in Rule 9027(a)(3), the statute supersedes the Rule.  *See* 28 U.S.C. § 2075, as amended by Pub. L. No. 95-598, § 247, 92 Stat. 2672; *see also Intra Muros Trust v. Truck Stop Scale Co.*, 163 B.R. 344, 345 (N.D. Ind. 1994); *cf. Things Remembered*, 516 U.S. at 128-29 (holding that 28 U.S.C. § 1447 is applicable to actions removed pursuant to 28 U.S.C. § 1452); *but cf. Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 575-76 n.4 (E.D.N.Y. 2009) (noting that courts are split as to whether 28 U.S.C. § 1446(b) or Rule 9027 provides the appropriate time period for filing a notice of removal in cases related to a bankruptcy proceeding).

five of the Actions is still untimely.  Plaintiffs' chapter 15 cases commenced on June 14,

2010, when Plaintiffs filed their petition.  *See* 11 U.S.C. § 1504 (a chapter 15 case "is

commenced by the filing of a petition for recognition of a foreign proceeding under

section 1515").  Five of the Actions – against BNP Paribas Securities Services

Luxembourg, BGL BNP Paribas, CDC IXIS, HSBC Private Bank (C.I.) Limited and

HSBC Private Banking Nominee 1 (Jersey) Limited – were commenced by filing

summonses with notice *after* June 14, 2010.[17]  The 30-day time limit of Rule 9027(a)(3)

is thus applicable to those five Actions, rather than the 90-day period provided by Rule

9027(a)(2), because they were commenced *after* the filing of Plaintiffs' chapter 15 cases.

The notices of removal in those five actions were not filed until September 3, 2010, well

over 30 days after the filing of the Summonses (which, as explained above, are the

operative "initial pleadings" here for the purposes of Rule 9027(a)(3)).  Removal of those

five Actions was therefore untimely.

       Because the Plaintiffs untimely removed the Actions in contravention of

the applicable timing requirements, this Court should remand the Actions.  *See Cent.*

*Buffalo Project Corp. v. Edison Bros. Stores, Inc*., No. 92 Civ. 642E(F), 1992 WL

392626 (W.D.N.Y. Dec. 15, 1992) (granting motion to remand where removal was

---

[17]    *See* Notice of Removal Ex. B, *Fairfield Sentry Ltd. v. BNP Paribas Sec. Srvcs. Luxembourg,* Adv. Pro. No. 10-03627 (BRL) (Summons with Notice filed on June 15, 2010); Notice of Removal Ex. B, *Fairfield Sentry Ltd. v. BNP Paribas Luxembourg SA,* Adv. Pro. No. 10-03626 (BRL) (Summons with Notice filed on June 15, 2010); Notice of Removal Ex. B, *Fairfield Sentry Ltd. v. CDC IXIS,* Adv. Pro. No. 10-03754 (BRL) (Summons with Notice filed on July 14, 2010); *Fairfield Sentry Ltd. v. HSBC Private Bank (Guernsey) Ltd.,* Adv. Pro. No. 10-03631 (BRL) (Summons with Notice filed on July 16, 2010); *Fairfield Sentry Ltd. v. FS/HSBC Private Banking Nom,* Adv. Pro. No. 10-03629 (BRL) (Summons with Notice filed on July 16, 2010).

untimely under Rule 9027); *Thomas v. Baldwin*, 189 F. Supp. 2d 1, 2 (E.D.N.Y. 2002)

(remanding case where defendant waited 32 days to remove).

## IV.    EVEN IF "RELATED TO" JURISDICTION WERE TO EXIST, THIS COURT MUST ABSTAIN FROM HEARING THE ACTIONS

Even if the Actions were somehow "related to" either the chapter 15

proceedings or the SIPA Liquidation, this Court would be required to abstain pursuant to

28 U.S.C. § 1334(c)(2), which provides as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Thus, this Court must abstain if:  (1) the motion to abstain was timely filed; (2) the action

is based on state law claims; (3) the action does not "arise under" title 11 or "arise in" a

case under title 11; (4) the sole basis for federal jurisdiction is 28 U.S.C. § 1334; (5) an

action is commenced in state court; and (6) that action can be timely adjudicated in state

court.  *See N.Y. City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Secs. Litig.)*,

293 B.R. 308, 331 (S.D.N.Y. 2003).

Factors (1) through (5) are easily satisfied here:  the Moving Defendants

filed the instant motion just two weeks after Plaintiffs filed their Complaints in the

Actions; all of Plaintiffs' claims are based on state common law, *see* Compl. ¶¶ 35-84;[18]

---

[18]    Even if Plaintiffs were to maintain that BVI law governs their claims, that would be immaterial to the abstention analysis:  "For the purposes of the applicability of mandatory abstention, . . . the salient point is that the . . . action is not based upon any federal cause of action."  *Von Richtofen v. Family M. Found.Ltd.*, 339 B.R. 315, 320at 320 n.6 (S.D.N.Y. 2005).

those claims do not "arise under title 11" or "arise in" a case under title 11, *see supra* Part

II; Plaintiffs' sole alleged basis for jurisdiction is 28 U.S.C. § 1334(b) (and as that

provision is incorporated by section 78eee(b)(2)(A)(iii) of Title 15), *see* Compl. ¶ 10; and

the Actions were commenced in state court because Plaintiffs filed and then removed the

Actions from that forum.  *See Mt. McKinley Ins. Co. v. Corning, Inc.*, 399 F.3d 436, 446-

47 (2d Cir. 2005).  Because the Moving Defendants also satisfy the remaining factor –

the availability of timely state court adjudication – this Court must abstain and remand

the Actions back to state court.

          State courts routinely adjudicate common law claims premised on the

labels Plaintiffs invoke – unjust enrichment, money had and received, mistaken payment

and constructive trust.  Where, as here, "the [Actions] will likely be assigned to the

Commercial Division of the Supreme Court, where cases move on a fast-track basis[,]"

there is no reason why the Actions cannot be timely adjudicated in state court.[19]  *See ING*

*Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*, 338 B.R. 574, 582-83

(Bankr. S.D.N.Y. 2005); *see also Vornado Realty Trust v. Stop & Shop Supermarket Cos.*

*(In re Bradless Stores, Inc.)*, 311 B.R. 29, 35 (Bankr. S.D.N.Y. 2004) (Lifland, J.)

("find[ing] no reason why th[e] dispute cannot be timely adjudicated" by the Commercial

Division), *aff'd*, 2005 WL 106794 (S.D.N.Y. Jan. 19, 2005) (affirming decision to abstain

and emphasizing, with respect to timely adjudication, that there had been "no action

---

[19]      The Actions, if remanded, would likely be assigned to Justice Fried as related to the *Safra*
action discussed above, which was assigned to him.  Justice Fried has presided over Fairfield-
related actions in the Commercial Division, including (until recently) Plaintiffs' action against the
entities and individuals responsible for managing the Funds.  At least one court in this District has
expressed "total confidence that [Justice Fried's] resolution of the dispute before him will not
interfere with the proceeding pending in the bankruptcy court."  *Von Richtofen*, 339 B.R. at 320
(finding timely adjudication factor satisfied and abstaining pursuant to Section 1334(c)(2)).

taken on the substance of the dispute in any forum"); *Tech. Outsource Solutions, LLC v. Eni Tech., Inc.*, No. 02 Civ. 6433 (CJS), 2003 WL 252141, at *4 (W.D.N.Y. Jan. 23, 2003) (the Commercial Division was "designed to be 'a world-class forum for the resolution of business disputes'" (quoting Chief Judge Judith Kaye, The Commercial Division of the State of New York (2002), at http://www.courts.state.ny.us/comdiv/)).

This is especially true with respect to the Actions, because the chapter 15 proceedings and the SIPA Liquidation, which the Actions purportedly "relate to," are akin to chapter 7 liquidations, rather than reorganizations. While "[t]here is no clear consensus as to what constitutes 'timely adjudication' . . . courts focus on the status and needs of the bankruptcy case rather than any particular time guideline." *Joremi Enters. Inc. v. Hershkowitz (In re new 118th LLC)*, 396 B.R. 885, 894 (Bankr. S.D.N.Y. 2008) (citations omitted). Accordingly,

> [i]n deciding whether a matter may be timely adjudicated, perhaps the single most important factor is the nature of the underlying chapter proceeding. In a Chapter 7 proceeding, [for example,] the primary concern of the court is the orderly accumulation and distribution of assets of the estate. There is no administrative urgency or plan of reorganization to facilitate. In an adversary proceeding related to a Chapter 7 proceeding, timely adjudication can be weighed relatively lightly. By contrast, where a Chapter 11 reorganization is pending, the court must be sensitive to the needs of the debtor attempting to reorganize.

*Id.* (internal citations omitted); *see also In re Leco Enters.*, 144 B.R. at 252 (finding that the action can be timely adjudicated in state court "given the lack of urgency in . . . Chapter 7 bankruptcy proceeding[s]"). This rationale obtains with equal force here: the chapter 15 proceedings, which are only *ancillary to* a BVI liquidation are substantially similar to chapter 7 liquidation and, accordingly, there is no urgent reason why the

Actions cannot be litigated in state court (even assuming that the Commercial Division

could not adjudicate them as quickly as this Court – a doubtful assumption given that any

decision in this non-core proceeding would be subject to the District Court's *de novo*

review).   Thus, because "the primary concern is the orderly accumulation and

distribution of assets," the timely adjudication factor warrants little consideration in

determining whether these cases must be remanded to state court pursuant to Section

1334(c)(2).  *In re New 118th LLC,* 396 B.R. at 895 (collecting cases).  Moreover,

Plaintiffs waited nearly 18 months after purportedly discovering their so-called "mistake"

upon disclosure of Madoff's fraud in December 2008, and nearly a year after entering

liquidation in April 2009, to bring the first of the Actions in state court.  They cannot now

be heard to complain about timely adjudication by the state court.

The same result applies even if this Court concludes that, contrary to what

is shown above, the Actions are related to the SIPA Liquidation.  While there is of course

an interest in the BLMIS Trustee making distributions to BLMIS customers, including

Fairfield, as a practical matter the undertaking Fairfield proposes in the Actions –

chasing the beneficial owners who stand behind the nominee shareholders around the

world to recover redemptions paid to them – is a multi-year effort, even assuming that the

effort is actually workable at all.   And before that happens there will be early dispositive

motions challenging, among other things, personal jurisdiction, service, and the highly

novel theories of New York law upon which Plaintiffs rely, and these motions can be

more quickly (and authoritatively) decided in state court.  The state court determination

will be more authoritative because the New York Supreme Court and the Appellate

Division, to which even an interlocutory appeal may be taken as of right, are well-versed

24

in the development of the New York common law of restitution.  The adjudication also

will likely be quicker, or at least as quick, because the focus will be entirely on the

substance of New York common law without any distracting and unjustifiable effort to

enmesh the Actions in the complexities of the SIPA Liquidation.  These circumstances

support a finding that the Actions can be timely adjudicated in state court.  *See id*. at 895;

*Channel Bell Assocs. v. W.R. Grace & Co.*, No. 91 Civ. 5485 (PKL), 1992 WL 232085,

at *8 (S.D.N.Y. Aug. 31, 1992).

  For all of these reasons, Section 1334(c)(2) requires that this Court remand

the Actions to the Commercial Division.

## V.   THE ACTIONS SHOULD ALSO BE REMANDED PURSUANT TO 28 U.S.C. § 1334(c)(1) AND 1452(b)

  The Actions should also be remanded pursuant to 28 U.S.C. §§ 1334(c)(1)

and 1452(b),[20] which permits courts to abstain and/or remand the Actions on any

equitable ground.  Courts weigh a number of factors in determining whether discretionary

abstention or equitable remand is warranted, including:  (1) the effect of

remand/abstention on the efficient administration of the bankruptcy estate; (2) the extent

to which issues of state law predominate; (3) the difficulty or unsettled nature of the

applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the

proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and

(7) prejudice to the involuntarily removed defendants.  *Drexel Burnham Lambert Group*,

130 B.R. at 407.  The prevention of forum shopping is likewise relevant to whether

---

[20]    Courts in this District routinely note that discretionary abstention and equitable remand
involve the same analysis.  *See, e.g., In re WorldCom*, 293 B.R. at 334 (noting that both doctrines
essentially call for the same analysis); *Krys v. Surgue*, No. 08 Civ. 3086, 2008 WL 4700920, at
*10 (S.D.N.Y. Oct. 23, 2008) (same).

remand on equitable grounds is appropriate. *See Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 232 (2d Cir. 2002); *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 520 (Bankr. S.D.N.Y. 1999). Taken together, these factors weigh heavily in favor of remand here.

### A.    Remand Will Not Impact The Administration Of Plaintiffs' Estates

Adjudication in state court will not significantly impact the efficient administration of Plaintiffs' estates because no estate is being administered by this Court, *see supra* Part II.B., and the foreign proceedings are simply liquidations, as opposed to reorganizations. *See, e.g., Kerusa Co. v. W10Z/515 Real Estate Ltd. P'ship (In re J.A. Jones Constr.)*, No. 04 Civ. 708 (GEL), 2004 WL 1048239, at *4 (S.D.N.Y. May 7, 2004) (Lynch, J.); *see also id.* at *9 (observing that in the totality of the circumstances, equitable remand was warranted because, among other reasons, the action at issue involved a large number of parties, only one of which was in bankruptcy, and did not implicate any bankruptcy law issues). Moreover, because Plaintiffs have demanded a jury, the Actions, if removed, cannot be tried in this Court – a fact that weighs heavily in favor of remand. *See id*. at *6; *see also infra* Part V.C.

### B.    Because Unsettled State Law Claims Predominate, Comity Considerations Warrant Remand

The Actions involve only state common law claims, "and do not implicate any question of bankruptcy law or other matters of uniquely federal interest or expertise[,]" which in and of itself weighs in favor of remand. *See In re J.A. Jones Constr.,* 2004 WL 1048239, at *5. And as previously discussed, Plaintiffs' claims are very far from typical payment by mistake claims because Plaintiffs are not out of pocket one cent as a consequence of the redemption payments they made to investors who

redeemed all or part of their investment in good faith.  This novel and highly dubious

legal theory should be addressed by a New York state court.  *See Rupp v. Elmari (In re*

*Elmari)*, 369 B.R. 96, 102-03 (Bankr. E.D.N.Y. 2007) (abstaining from case presenting

novel issue of state law, where state law was unsettled and claims presented important

public policy considerations); *Drexel Burnham Labert Group*, 130 B.R. at 409

(concluding that presence of difficult issues of state law weighed in favor of equitable

remand); *Maggio v. Touche Ross & Co. (In re Oliver's Stores, Inc.)*, 107 B.R. 40, 43

(Bankr. D.N.J. 1989) (abstaining from resolving "novel claims" and observing that

"where diversity does not exist, and Congress has specifically provided for abstention,

the Court is bound by principles of comity to allow the state courts to determine their

own law").  Discretionary abstention based on the novelty of Plaintiffs' state law claims

is especially appropriate here, where "the resolution of those [claims] involves matters of

substantial public import, and . . . there exists no state precedent that will enable the

bankruptcy court to predict with reasonable certainty the result that the state courts would

reach were the issue before them."  *In re Elmari*, 369 B.R. at 103 (internal quotation

marks and citations omitted).

>         For the same reasons, comity considerations weigh in favor of remand.

Because Plaintiffs' common law claims involve attempts to stretch state law beyond its

limits, the state court has an interest in deciding these cases and guiding the development

of New York common law in this area.  *See, e.g., Renaissance Cosmetics Inc. v. Dev.*

*Specialists Inc.*, 277 B.R. 5, 16 (S.D.N.Y. 2002) (noting that comity concerns weigh in

favor of remand where the state court has an interest in developing its law).   More

generally, "[i]t is well settled that comity considerations dictate that federal courts should

be hesitant to exercise jurisdiction when state issues substantially predominate." *9821 Shore Rd. Owners Corp. v. Seminole Realty Co. (In re 9281 Shore Road Owners Corp.)*, 214 B.R. 676, 696 (Bankr. E.D.N.Y. 1997) (internal quotation marks omitted). Given that the Actions involve only state law claims that rest on dubious interpretations of New York law, this Court should defer to the state court to resolve Plaintiffs' claims.

**C.     The Moving Defendants Will Not Consent To Trial By Jury In This Court**

Plaintiffs have demanded jury trials. *See* Compl. (notice caption). "Demands for jury trials in non-core proceedings have been considered a sufficient ground for an equitable remand." *Drexel Burnham Lambert Group*, 130 B.R. at 409 ("Because a bankruptcy court cannot conduct a jury trial absent special designation by the district court and the consent of all parties, 28 U.S.C. § 157(e), the presence of a Seventh Amendment jury trial right in a removed action weighs heavily in favor of remand."); *see also In re J.A. Jones Constr.,* 2004 WL 1048239, at *6. Although Plaintiffs have consented to entry of final judgment and order by this Court, *see* Compl. ¶ 11, and may consent to a jury trial before it, the Moving Defendants would not so consent, and this Court will lack jurisdiction to preside over any jury trial should the Actions be tried in federal court. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52-53 (1989).

**D.     The Court Should Not Reward Plaintiffs' Blatant Forum Shopping**

Finally, the Actions are marked by Plaintiffs' calculated and blatant forum shopping, both as between BVI courts and courts in New York, and as between state and federal courts in New York. First, Plaintiffs commenced lawsuits against their own investors by filing actions in the BVI against at least 90 shareholders. These actions are

28

still pending, and three of the Moving Defendants are facing claims both in the United

States and the BVI, and therefore a risk of inconsistent results.

        Apparently unsure of their prospects for success in the BVI, Plaintiffs then

filed over 140 lawsuits in New York Supreme Court from April 2010 through July 2010

against many (but not all) of the defendants in the BVI actions and against additional

defendants.  Still unsatisfied, they removed these lawsuits to this District.  Further,

instead of having the District Court decide the instant motion and avoiding an inevitable

appeal, as the Moving Defendants suggested, Plaintiffs had the cases referred to this

Court, forcing the Moving Defendants to file a motion to withdraw the reference and

causing this and other courts in this District to be burdened with unnecessary and

wasteful motion practice.

        In perhaps the most glaring example of forum shopping, Plaintiffs, after

successfully moving to remand the action against the entities and individuals responsible

for the operation of the Funds to state court, have, nearly than nine months later, removed

the action back to federal court and have had it referred to this Court.  Plaintiffs clearly

found state court preferable in the first instance.  Now, however, as they jockey to have

the Actions litigated in this Court, their views on the subject have apparently changed,

and they have taken the glaringly improper step of removing an action they previously

caused to be remanded.

        Plaintiffs have made it clear that their ultimate goal is to fund a settlement

with the BLMIS Trustee through recovery in these and related actions.  From all that

appears, Plaintiffs' hope is that this Court will view their claims more favorably because

of their potential favorable impact not on the Fairfield estate in the BVI, but on the

29

BLMIS estate that the Court is administering.  In reality, however, it is unconscionable that Plaintiffs should be seeking to visit the consequences of their alleged complicity in the Madoff fraud on their innocent investors.  Their effort to buttress this poorly conceived and unjust effort with what they view as a potentially sympathetic forum should not be countenanced.  Ultimately – indicia of forum shopping aside – it is clear that Plaintiffs "once found state court to be an acceptable forum for adjudicating these claims and cannot complain too much if the case[s are] returned there."  *Wachovia Bank, N.A. v. Carroll*, No. 08 Civ. 741 (MHT), 2009 WL 330019, at *3 (M.D. Ala. Feb. 10, 2009) (abstaining on equitable grounds where, as here, the action, among other things, (1) involved only state law claims; (2) "existed before the bankruptcy case[,] . . . ask[ed] conceptually independent questions[,] and [was] a non-core proceeding"; and (3) was brought by plaintiff "in state court despite having possible avenues into federal court").

## CONCLUSION

For the reasons set forth above, this Court should remand the Actions to

the New York State Supreme Court.

Dated:   New York, New York
         October 4, 2010

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By

Evan A. Davis, a Member of the Firm

*Attorneys for Defendants HSBC Private Bank (Suisse)
SA, HSBC Securities Services (Luxembourg) SA, HSBC
Bank USA NA, HSBC Private Bank (C.I.) Limited (sued
here as HSBC Private Bank (Guernsey) Ltd), HSBC
Private Banking Nominee 1 (Jersey) Limited (sued here
as FS/HSBC Private Banking Nom), Robinson & Co.,
Caceis Bank Luxembourg, CDC IXIS, Citibank NA
London, Citibank (Switzerland) AG, Citigroup, Citivic
Nominees Limited, BNP Paribas Securities Services
Luxembourg, BGL BNP Paribas (sued here as BNP
Paribas Luxembourg SA), BNP Paribas (Suisse) SA, BNP
Paribas (Suisse) SA Ex Fortis, and BNP Paribas (Suisse)
SA Private*

31