# EXHIBIT A

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | **Chapter 15 Case** |
| | ) | |
| **Fairfield Sentry Limited, et al.,** | ) | **Case No: 10-13164 (BRL)** |
| | ) | |
| Debtors in Foreign Proceedings. | ) | **Jointly Administered** |
| | ) | |
| **Fairfield Sentry Limited (In Official Liquidation), acting by and through the Foreign Representatives thereof,** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **Adv. Pro. No. 10-03751** |
| | ) | |
| -against- | ) | |
| | ) | |
| **Fidulex Management and Beneficial Owners of the Accounts Held In the Name of Fidulex Management 1-1000,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW OF FIDULEX MANAGEMENT INC.
## IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE

WACHTELL, LIPTON, ROSEN & KATZ
Herbert M. Wachtell
Stephen R. DiPrima
Emil A. Kleinhaus
Graham W. Meli
51 West 52nd Street
New York, New York  10019
(212) 403-1000

*Attorneys for Defendant Fidulex Management Inc.*

October 4, 2010

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................2

ARGUMENT .............................................................................................................................6

THIS COURT SHOULD WITHDRAW THE REFERENCE OF THIS
ADVERSARY PROCEEDING..................................................................................................6

    A.    The absence of bankruptcy jurisdiction, let alone core bankruptcy
    jurisdiction, strongly supports withdrawal of the reference.....................................8

        1.    Plaintiffs' claims are not core. ....................................................................8

        2.    Plaintiffs' claims are not even "related to" a bankruptcy case. ...................9

            a)    Chapter 15 does not create an "estate" on which
            plaintiffs' claims can have an effect ..................................................9

            b)    Chapter 15 does not confer extraterritorial
            jurisdiction. .......................................................................................12

            c)    Plaintiffs' claims are not "related to" the BMIS
            liquidation proceeding ......................................................................13

    B.    The other relevant factors likewise strongly support
    withdrawal of the reference. ...................................................................................14

CONCLUSION.........................................................................................................................17

# TABLE OF AUTHORITIES

**Cases** **Page**

*Baker* v. *Simpson*,
  613 F.3d 346 (2d Cir. 2010) ................................................................ 7, 8

*Durso Supermarkets, Inc.* v. *D'Urso* (*In re Durso Supermarkets*),
  170 B.R. 211 (S.D.N.Y. 1994)............................................................... 8-9

*Feldman* v. *Beck Indus., Inc.* (*In re Beck Indus., Inc.*),
  479 F.2d 410 (2d Cir. 1973) ................................................................ 13

*Gen. Am. Tank Car. Corp.* v. *Gobel, Inc.* (*In re Gobel, Inc.*),
  80 F.2d 849 (2d Cir. 1936) ................................................................ 13-14

*Hassett* v. *BancOhio Nat'l Bank* (*In re CIS Corp.*),
  172 B.R. 748 (S.D.N.Y. 1994)............................................................ 14-15

*In re JSC BTA Bank*,
  2010 WL 3306885 (Bankr. S.D.N.Y. Aug. 23, 2010) .................................. 3, 10, 12

*Intellitek Computer Corp.* v. *Kollmorgen Corp.* (*In re Nanodata Computer Corp.*),
  74 B.R. 766 (W.D.N.Y. 1987) .............................................................. 9

*JCPL Leasing Corp.* v. *Treco* (*In re Treco*),
  227 B.R. 343 (Bankr. S.D.N.Y. 1998)..................................................... 13

*Joremi Enters., Inc.* v. *Hershkowitz* (*In re New 118th LLC*),
  396 B.R. 885 (Bankr. S.D.N.Y. 2008)..................................................... 7

*M. Fabrikant & Sons, Inc.* v. *Long's Jewelers Ltd.*,
  2008 WL 2596322 (S.D.N.Y. June 26, 2008) ............................................. 14, 15

*Maxwell Commc'n Corp. plc* v. *Barclays Bank, plc* (*In re Maxwell
  Commc'n Corp. plc*), 170 B.R. 800 (Bankr. S.D.N.Y. 1994),
  *aff'd* 186 B.R. 807 (S.D.N.Y. 1995) ..................................................... 13

*MBNA Am. Bank, N.A.* v. *Hill*,
  436 F.3d 104 (2d Cir. 2006) ................................................................ 7, 8

*Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*,
  458 U.S. 50 (1982)........................................................................... 6, 7, 9

*Northwest Airlines, Inc.* v. *City of Los Angeles*, (*In re Northwest Airlines Corp.*),
  384 B.R. 51 (S.D.N.Y. 2008)................................................................ 8 n.2

*Orion Pictures Corp.* v. *Showtime Networks, Inc.* (*In re Orion Pictures Corp.*),
  4 F.3d 1095 (2d Cir. 1993) .................................................................. 2, 6, 8, 14

*Osanitsch* v. *Marconi PLC (In re Marconi PLC)*,
363 B.R. 361 (S.D.N.Y 2007).....................................................................................9, 11, 12

*O'Sullivan* v. *Loy (In re Loy)*,
2009 WL 2381339 (Bankr. E.D. Va. Aug 3. 2009),
*aff'd on other grounds*, 432 B.R. 551 (E.D. Va. 2010) .........................................................12

*Pacor, Inc.* v. *Higgins (In re Pacor, Inc.)*,
743 F.2d 984 (3d Cir. 1984) ...............................................................................................9, 14

*Penthouse Media Grp.* v. *Guccione (In re Gen. Media, Inc.)*,
335 B.R. 66 (Bankr. S.D.N.Y. 2005).........................................................................................7

*Publicker Indus. Inc.* v. *United States (In re Cuyahoga Equip. Corp.)*,
980 F.2d 110 (2d Cir. 1992) .......................................................................................................9

*Solutia Inc.* v. *FMC Corp.*,
2004 WL 1661115 (S.D.N.Y. July 27, 2004) ..........................................................................15

*Tower Auto., Mexico, S. De R.L. De C.V.* v. *Grupo Proeza, S.A. De C.V.*
*(In re Tower Auto., Inc.)*, 356 B.R. 598 (Bankr. S.D.N.Y. 2006)............................................14

*United Orient Bank* v. *Green (In re Green)*,
200 B.R. 296 (S.D.N.Y. 1996)...................................................................................................8

*V.W. Eimicke, Inc.* v. *Amlicke (In re VWE Group, Inc.)*,
359 B.R. 441 (S.D.N.Y. 2007).......................................................................................8 n.2, 15

*Wachsmuth* v. *Cohen (In re Wachsmuth ex rel Gussen)*,
272 B.R. 766 (Bankr. M.D. Fla. 2001) ....................................................................................11

*Wechsler* v. *Squadron, Ellenoff, Plesent, & Sheinfeld LLP*,
201 B.R. 635 (S.D.N.Y. 1996)..................................................................................................17

## **Statutes**

11 U.S.C. § 301.................................................................................................................10, 11

11 U.S.C. § 302.................................................................................................................10, 11

11 U.S.C. § 303.................................................................................................................10, 11

11 U.S.C. § 304.................................................................................................................11, 13

11 U.S.C. § 541(a) ............................................................................................................10, 11

11 U.S.C. § 1502(4) ...................................................................................................................3

11 U.S.C. § 1504......................................................................................................................10

11 U.S.C. § 1511(a) ................................................................................................... 11 n.3

11 U.S.C. § 1520(a)(2) ................................................................................................. 10

28 U.S.C. § 157(a) ......................................................................................................... 6

28 U.S.C. § 157(b)(1) ..................................................................................................... 7

28 U.S.C. § 157(b)(2) ..................................................................................................... 7

28 U.S.C. § 157(c)(1) ................................................................................................. 7, 15

28 U.S.C. § 157(d) .................................................................................................. *passim*

28 U.S.C. § 157(e) .................................................................................................... 7, 14

28 U.S.C. § 1334(b) ................................................................................................ *passim*

28 U.S.C. § 1452(a) ....................................................................................................... 4

Fidulex Management Inc. ("Fidulex") respectfully submits this memorandum of law in support of its motion for entry of an order withdrawing the reference to the Bankruptcy Court of this adversary proceeding pursuant to 28 U.S.C. § 157(d).

## PRELIMINARY STATEMENT

This lawsuit, which was commenced by Fairfield Sentry Ltd. ("Sentry") in New York State Supreme Court, does not belong in federal court at all — it belongs in state court. The federal courts lack jurisdiction over plaintiffs' common law claims, plaintiffs' notice of removal was untimely, and plaintiffs' claims are subject to abstention and equitable remand. Fidulex, accordingly, has filed a motion to remand and for abstention simultaneously with this motion to withdraw the reference.

As long as this action is in any federal court, however, all aspects of the action, including Fidulex's motion to remand and for abstention, should be adjudicated by this Court rather than the Bankruptcy Court. The claims brought against Fidulex by Sentry and its affiliate Fairfield Sigma Ltd. ("Sigma") are based on common law theories such as mistake and unjust enrichment. As funds that invested with Bernard L. Madoff Investment Securities LLC ("BMIS"), Sentry and Sigma calculated the value of their assets, and paid out redemptions made by their shareholders, based on inaccurate information received from BMIS. They now assert that they are entitled to recover the payments made to their shareholders, even if the shareholders invested more money in Sentry and Sigma than they withdrew.

While the merits of the action are not before this Court, it should be pointed out that the claims being asserted are patently meritless: for example, they run afoul of the fairly obvious proposition that if the redemptions made from Sentry or Sigma were somehow the result of a "mistake" as to the Madoff Ponzi scheme, it is indisputable that the initial investments in

those funds were likewise based on the same "mistake." Thus, by way of a defense or counterclaim, the investments cancel out the redemptions. And here, the Complaint contains no allegation that Fidulex was anything but a "net loser" with respect to its overall investments in Sentry and Sigma.

This lawsuit presents a textbook case for application of 28 U.S.C. § 157(d), which authorizes this Court to "withdraw" any "case or proceeding referred" to the Bankruptcy Court "for cause." Under the controlling precedent in this Circuit, *Orion Pictures Corp.* v. *Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993), "cause" to withdraw the reference exists where the plaintiff's claims fall outside a bankruptcy court's "core" jurisdiction, and where interests of efficiency and sound administration would be served by such withdrawal. Here, as discussed below, it is beyond cavil that plaintiffs' claims fall outside the Bankruptcy Court's "core" jurisdiction. Indeed, those claims are not subject to bankruptcy jurisdiction at all, and thus are not even covered by the standing order under which bankruptcy-related cases are referred to the Bankruptcy Court. The other relevant factors identified in *Orion* also weigh decisively in favor of withdrawal of the reference.

## BACKGROUND

On April 20, 2010, Sentry commenced this action by filing a Summons with Notice in the New York State Supreme Court for New York County.[1] *See* Declaration of Emil A. Kleinhaus, Ex. 1 (Summons with Notice). Between April and July of 2010, Sentry also commenced a large number of similar actions in the same court. Those actions have likewise been removed to federal court by Sentry.

---

[1] Fidulex expressly reserves all defenses in this action, including defenses based on failure to state a claim, ineffective service of process, statutes of limitation, and lack of personal and subject matter jurisdiction.

Sentry was established as a vehicle to invest with BMIS, which was managed by Bernard L. Madoff. *See* Kleinhaus Decl. Ex. 2 (Complaint) ¶¶ 2, 21. Sigma, in turn, invested in Sentry. *Id.* ¶ 21. Both Sentry and Sigma are incorporated in the British Virgin Islands ("BVI"), and each is presently the subject of a liquidation proceeding in the Commercial Division of the High Court of Justice in the BVI. *Id.* ¶ 32.

Prior to the revelation of the Madoff fraud, Sentry's investment manager was Fairfield Greenwich (Bermuda) Ltd. and its custodian bank was Citco Bank Nederland, N.V. (Dublin Branch). *See* Kleinhaus Decl. Ex. 5 (Private Placement Memorandum for Fairfield Sentry Ltd. dated May 8, 2006), at 7, 16. With the exception of U.S. tax-exempt entities, citizens and residents of the United States were not permitted to subscribe for Sentry shares. *Id.* at 1. Sigma had the same manager as Sentry, its custodian was Citco Global Custody N.V., and it was entirely closed to U.S. investors. *See* Kleinhaus Decl. Ex. 5 (Private Placement Memorandum for Fairfield Sigma Ltd. dated February 16, 2006), at 5, 15, 1.

On June 14, 2010, the foreign liquidators of Sentry and Sigma filed a petition in the Bankruptcy Court for recognition of the BVI liquidation proceeding as a "foreign main proceeding" under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code"). Chapter 15 of the Bankruptcy Code, as was recently explained by the Bankruptcy Court in this District, "invokes the jurisdiction of the bankruptcy court to assist in the administration of a foreign insolvency or restructuring proceeding. Its most basic objective is to foster the orderly administration of cross-border restructurings." *In re JSC BTA Bank*, 2010 WL 3306885, at *5 (Bankr. S.D.N.Y. Aug. 23, 2010) (internal citations omitted)). Under chapter 15, a foreign proceeding can be recognized as a "foreign main proceeding" when it is "pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4).

-3-

On July 22, 2010, the Bankruptcy Court entered an order recognizing the BVI proceedings as "foreign main proceedings." *See* Kleinhaus Decl. Ex. 3 (Order Granting Chapter 15 Petitions of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited for Recognition of Foreign Proceedings, *In re Fairfield Sentry Limited, et al.*, No. 10-13164 (Bankr. S.D.N.Y. July 22, 2010)).

Months before initiating this action in New York state court, Sentry filed an action in the BVI against Fidulex based on theories of mistake and restitution. *See* Kleinhaus Decl. Ex. 7 (Notice, Claim No.:  BVIHC (COM) 357/2009 Between Fairfield Sentry Limited, Alfredo Migani and Others including Fidulex).  Sentry filed that action on October 13, 2009, and applied to the Eastern Caribbean Supreme Court in the BVI for permission to serve the Claim Form on April 12, 2010.  The BVI court entered an order permitting service of the Claim Form on April 14, 2010, and set a deadline for service of October 12, 2010.  *See id.*

Sentry filed a notice of removal of its New York state action on September 3, 2010.  The Notice of Removal asserts that the action is subject to removal under 28 U.S.C. § 1452(a), which permits removal of claims that are subject to federal bankruptcy jurisdiction under 28 U.S.C. § 1334(b).  *See* Kleinhaus Decl. Ex. 4 (Notice of Removal) ¶¶ 5-6.  Specifically, the Notice of Removal states that the claims at issue are subject to this Court's jurisdiction under section 1334(b) because "they arise in and/or are related to [Sentry's] Chapter 15 cases pending in the Bankruptcy Court."  *Id.* ¶ 6.  No other basis for federal jurisdiction is alleged.

Upon removal, this action was originally assigned to Judge George B. Daniels of the District Court.  On September 14, 2010, an entry appeared on the docket of the District Court stating that the action had been referred from the District Court to the Bankruptcy Court.  On September 24, 2010, a proceeding in the Bankruptcy Court was opened through the filing on the

Bankruptcy Court's docket of the District Court's Standing Order of Reference of Acting Chief

Judge Robert J. Ward, entered on July 11, 1984 (the "Standing Order").  Under that order, which

tracks the language of 28 U.S.C. § 1334(b), the District Court refers to the Bankruptcy Court

"any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or

related to a case under title 11."

On September 27, 2010, Sentry and Sigma filed a complaint against Fidulex.  *See*

Kleinhaus Decl. Ex. 2 (Complaint).  The Complaint asserts seven causes of action:  (1) "unjust

enrichment" against Fidulex; (2) "unjust enrichment" against beneficial holders of Sentry and

Sigma shares that allegedly held their shares in Fidulex's name; (3) "money had and received"

against Fidulex; (4) "money had and received" against beneficial holders that allegedly held their

shares in Fidulex's name; (5) "mistaken payment" against Fidulex; (6) "mistaken payment"

against beneficial holders that allegedly held their shares in Fidulex's name; and

(7) "constructive trust" against all defendants.  The essence of the complaint is that Fidulex — as

well as unnamed defendants that allegedly held Sentry or Sigma shares in Fidulex's name —

should be required to return redemption payments made by Sentry or Sigma that were based on

inaccurate information provided by BMIS.

Simultaneous with the filing of this motion to withdraw the reference, Fidulex has

filed in the Bankruptcy Court a motion to remand, and to abstain from determining, plaintiffs'

claims.  As set forth in the motion and the accompanying memorandum of law, Fidulex

respectfully submits that the federal courts lack jurisdiction over those claims, and that the

claims are subject to abstention and remand on multiple grounds.

## ARGUMENT

### THIS COURT SHOULD WITHDRAW THE REFERENCE OF
### THIS ADVERSARY PROCEEDING.

In *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50

(1982), the Supreme Court struck down the Bankruptcy Reform Act of 1978's broad grant of

jurisdiction to the bankruptcy courts, holding that the "adjudication of state-created private

rights, such as the right to recover contract damages," must be determined by an Article III court.

*Id.* at 71.  In response, Congress amended title 28 of the United States Code (the "Judicial

Code") to grant original jurisdiction of "all civil proceedings arising under title 11, or arising in

or related to cases under title 11" to the district courts, 28 U.S.C. § 1334(b), and to authorize the

district courts to "refer" to the bankruptcy courts all matters that are subject to bankruptcy

jurisdiction, 28 U.S.C. § 157(a).

Although providing for referral of proceedings to the Bankruptcy Court, Congress

also provided, in Section 157(d) of the Judicial Code, that "*[t]he district court may withdraw, in

whole or in part, any case or proceeding referred under this section . . . for cause shown*."  28

U.S.C. § 157(d) (emphasis added).  In applying section 157(d), the Second Circuit has instructed

that "[a] district court considering whether to withdraw the reference should first evaluate

whether the claim *is core or non-core*, since it is upon this issue that questions of efficiency and

uniformity will turn."  *Orion*, 4 F.3d at 1101 (emphasis added).  The Second Circuit has also

identified other relevant factors to be considered, including "efficient use of judicial resources,

delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum

shopping, and other related factors," *id*.

The distinction between "core" and "non-core" proceedings, which bears heavily on the withdrawal of the reference analysis, is at the heart of Congress's response to the *Northern Pipeline* decision from the Supreme Court. While "bankruptcy judges may hear and determine" core proceedings, subject only to ordinary appellate review, 28 U.S.C. § 157(b)(1), when "a proceeding is *not* a core proceeding," only a district judge may enter a final judgment, and is required to review a bankruptcy judge's proposed findings of fact and conclusions of law on a *de novo* basis. 28 U.S.C. § 157(c)(1) (emphasis added). Congress further legislated that a bankruptcy judge may only conduct a jury trial if it is "specifically designated" to do so by the district court and all parties expressly consent. 28 U.S.C. § 157(e).

Section 157(b)(2) of the Judicial Code contains a non-exhaustive list of "core proceedings." As explained by the case law, these core proceedings include "all civil proceedings arising under title 11 or arising in a case under title 11," as those terms are used in 28 U.S.C. § 1334(b), but *not* proceedings that merely "relate to" a bankruptcy case. *Joremi Enters., Inc.* v. *Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008); *accord Penthouse Media Grp.* v. *Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 72 (Bankr. S.D.N.Y. 2005). Proceedings "arise under" the Bankruptcy Code when they "clearly invoke substantive rights created by bankruptcy law." *MBNA Am. Bank, N.A.* v. *Hill*, 436 F.3d 104, 109 (2d Cir. 2006). Proceedings "arise in" a bankruptcy case when they "are not based on any right expressly created by" the Bankruptcy Code, "but nevertheless, *would have no existence outside of the bankruptcy*." *Baker* v. *Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (emphasis added). By contrast, "an action that does not depend upon the bankruptcy laws for its existence and which could proceed in a court that lacks federal bankruptcy jurisdiction is," at most, related to a

bankruptcy case and "non-core."  *E.g.*, *United Orient Bank* v. *Green (In re Green)*, 200 B.R. 296, 298 (S.D.N.Y. 1996).

As demonstrated below, the considerations identified by the Second Circuit in *Orion*, including the plainly non-core character of this proceeding, weigh decisively in favor of withdrawing the reference in the proceeding at bar.

### A.    The absence of bankruptcy jurisdiction, let alone core bankruptcy jurisdiction, strongly supports withdrawal of the reference.

The threshold inquiry under *Orion*, in deciding whether to withdraw the reference, is whether the claims at issue are core or non-core.  *Orion*, 4 F.3d at 1101.[2]  Here, not only are plaintiffs' claims not "core," but they are not subject to bankruptcy jurisdiction at all.

### 1.    Plaintiffs' claims are not core.

The common law claims being asserted by Sentry and Sigma are manifestly not core claims.  Those claims do not "arise under" the Bankruptcy Code for purposes of 28 U.S.C. § 1334(b), because they do not "invoke substantive rights created by federal bankruptcy law." *MBNA Am. Bank*, 436 F.3d at 108-09.  Likewise, they do not "arise in" a bankruptcy case, because they are not claims that "would have no existence outside of the bankruptcy."  *Baker*, 613 F.3d at 351.  Although plaintiffs' claims, if successful, could potentially benefit Sentry and Sigma, "that fact without more does not affect 'the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship,'" so as to render the claims core.  *Durso Supermarkets, Inc.* v. *D'Urso (In re Durso Supermarkets)*, 170 B.R. 211,

---

[2] Although some courts have suggested that the Bankruptcy Court should determine in the first instance whether a proceeding is core or non-core, "[c]ourts in the majority hold that the district court can determine, in the first instance, whether a proceeding is core or non-core."  *Northwest Airlines, Inc.* v. *City of Los Angeles*, (*In re Northwest Airlines Corp.*), 384 B.R. 51, 56 (S.D.N.Y. 2008) (citing *V.W. Eimicke, Inc.* v. *Amlicke* (*In re VWE Group, Inc.*), 359 B.R. 441, 447-48 (S.D.N.Y. 2007) (collecting cases)).

214 (S.D.N.Y. 1994) (quoting *Intellitek Computer Corp.* v. *Kollmorgen Corp.* (*In re Nanodata Computer Corp.*), 74 B.R. 766, 770-71 (W.D.N.Y. 1987)).

### 2. Plaintiffs' claims are not even "related to" a bankruptcy case.

While the clear absence of "core" jurisdiction over plaintiffs' claims itself weighs heavily in favor of withdrawing the reference, the absence of *any* bankruptcy jurisdiction over plaintiffs' claims is a further compelling reason to withdraw the reference. This Court's Standing Order referring matters to bankruptcy judges on its face applies *only* to claims that are subject to bankruptcy jurisdiction. Where the claims at issue are not subject even to "related to" jurisdiction under 28 U.S.C. § 1334(b), application of the Standing Order would serve to undermine, rather than to effectuate, the jurisdictional scheme established by Congress in response to *Northern Pipeline*.

### a) Chapter 15 does not create an "estate" on which plaintiffs' claims can have an effect.

The Second Circuit has held that a proceeding is "related to" a bankruptcy case if its outcome could have an effect on "*the bankrupt estate*." *Publicker Indus. Inc.* v. *United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 114 (2d Cir. 1992) (emphasis added); *accord, e.g.*, *Osanitsch* v. *Marconi PLC* (*In re Marconi PLC*), 363 B.R. 361, 366 (S.D.N.Y 2007) ("related to" jurisdiction exists when the outcome of a proceeding "could conceivably have any effect on the *estate being administered in bankruptcy*" (quoting *Pacor, Inc.* v. *Higgins* (*In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir. 1984) (emphasis added))). Accordingly, the minimum requirement for "related to" jurisdiction is that the claims being asserted have some possible effect on the *estate* being administered by the Bankruptcy Court. Here, however, there is no estate being administered by the Bankruptcy Court and, accordingly, "related to" jurisdiction does not lie.

Section 541 of the Bankruptcy Code states that "[t]he commencement of a case under section 301, 302, or 303 of this title" — the statutory provisions that permit the filing of voluntary, joint or involuntary case, respectively — "creates an estate."  11 U.S.C. § 541(a).  A chapter 15 case, however, unlike a case under chapter 11 or chapter 7, is *not* commenced with a filing under section 301, 302, or 303 of the Bankruptcy Code.  Rather, under section 1504 of the Bankruptcy Code, "[a] case under [chapter 15] is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515," which simply sets forth the requirements to be met in a petition for recognition.  11 U.S.C. § 1504.  Accordingly, the mere filing of an ancillary chapter 15 case, without the subsequent filing of a plenary bankruptcy case under section 301, 302, or 303, "does not create an estate as that term is used in the Bankruptcy Code."  *In re JSC BTA Bank*, 2010 WL 3306885, at *5 (Bankr. S.D.N.Y. Aug. 23, 2010).  This result is entirely consistent with the purpose of a chapter 15 case, in which the Bankruptcy Court plays the limited "auxiliary role" of protecting the U.S. property of a foreign debtor.  *Id.* at *6.

By its plain terms, chapter 15 itself confirms that recognition of a foreign liquidation as a "foreign main proceeding" does not create an estate.  Section 1520 of the Bankruptcy Code provides that, upon recognition of a foreign proceeding as a "foreign main proceeding," sections 363, 549 and 552 of the Bankruptcy Code "apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States *to the same extent that the sections would apply to property of an estate*."  11 U.S.C. § 1520(a)(2) (emphasis added).  The statute thus makes clear that recognition of a foreign main proceeding does not itself give rise to an "estate"; rather, after recognition, certain enumerated provisions of the Bankruptcy Code apply *as if* there were an estate.

Here, Sentry and Sigma have obtained recognition of their BVI liquidation proceedings as "foreign main proceedings," and are thus entitled to commence plenary bankruptcy cases that would create an "estate."[3]  Those funds, however, have elected *not* to commence either an involuntary case under section 303 or a voluntary case under section 301 or 302.  Accordingly, they have not taken the minimum steps required to create an estate under section 541(a) of the Bankruptcy Code.

The absence of an "estate" being administered by the Bankruptcy Court defeats any claim of "related to" jurisdiction.  In *Osanitsch* v. *Marconi PLC*, now-Circuit Judge Lynch was faced with the same basic issue presented here.  A former employee of a debtor in a proceeding under 11 U.S.C. § 304 — the predecessor statute to chapter 15 — filed an adversary proceeding against the debtor seeking severance benefits.  In concluding that subject matter jurisdiction was lacking over the employee's claims, Judge Lynch explained that, "in a § 304 proceeding, . . . there is no 'estate being administered in bankruptcy' in the United States" and, accordingly, "there is no basis for contending that [plaintiff's] common-law tort and contract claims are related to any bankruptcy case."  *Osanitsch*, 363 B.R. at 366.  Similarly, in *Wachsmuth* v. *Cohen* (*In re Wachsmuth ex rel Gussen*), 272 B.R. 766 (Bankr. M.D. Fla. 2001), the representative of a foreign debtor sought to bring an action to recover transfers made by the debtor based on state law, in that case the fraudulent transfer statute of the State of Florida.  Notwithstanding the proceeding that was pending under section 304 of the Bankruptcy Code, the court concluded that it lacked "related to" jurisdiction over the plaintiff's claims.  *Id*. at 770.

---

[3]  Section 1511 of the Bankruptcy Code provides that, "[u]pon recognition, a foreign representative may commence — (1) an involuntary case under section 303; or (2) a voluntary case under section 301 or 302, if the foreign proceeding is a foreign main proceeding."  11 U.S.C. § 1511(a).  Thus, upon recognition of a foreign proceeding, a foreign liquidator is entitled to file a plenary case under section 301, 302 or 303 and thus "create an estate" under section 541.  But absent such a filing, there is no "estate" created.

The same result is required under chapter 15, as reflected by the recent decision in *O'Sullivan* v. *Loy* (*In re Loy*), 2009 WL 2381339 (Bankr. E.D. Va. Aug 3, 2009). In that case, a chapter 15 debtor asserted state-law claims against the trustee administering his estate in the United Kingdom. As in *Osanitsch*, the court concluded that "[t]he action has no impact whatsoever on the bankruptcy estate, simply for the reason that *no estate is created upon the filing of a Chapter 15 petition*." 2009 WL 2381339, at *6 (emphasis added), *aff'd on other grounds*, 432 B.R. 551 (E.D. Va. 2010).

In sum, the filing of a chapter 15 petition does not in itself create an "estate" in this Court and, as a result, state-law claims asserted by a chapter 15 debtor or its foreign representative can have no effect on any such "estate." For that reason, the claims asserted in the Complaint are not "related to" a bankruptcy case for purposes of 28 U.S.C. § 1334(b).

###### b)      Chapter 15 does not confer extraterritorial jurisdiction.

The limited purpose and effect of a chapter 15 ancillary case defeats jurisdiction over plaintiffs' claims for the additional reason that those claims do not concern property of the debtor that is within the territorial jurisdiction of the United States. "[I]n the chapter 15 context, a bankruptcy court's jurisdiction over property of the debtor is expressly limited to property located 'within the territorial jurisdiction of the United States.'" *In re JSC BTA Bank*, 2010 WL 3306885, at *9 (quoting numerous provisions of chapter 15 that apply only within "the territorial jurisdiction of the United States").

The claims being asserted in the Complaint plainly look beyond the territory of the United States. The Complaint, which has been brought by the liquidators of BVI corporations owned primarily by non-U.S. investors, seeks to recover payments made by those

BVI corporations to Fidulex, a Panamanian corporation affiliated with a Swiss bank.  *See, e.g.*, *Maxwell Commc'n Corp. plc* v. *Barclays Bank, plc (In re Maxwell Commc'n Corp. plc)*, 170 B.R. 800, 809 (Bankr. S.D.N.Y. 1994) (concluding that an action by an English corporation to recover payments made to foreign lenders had a "center of gravity outside the U.S." and required "extraterritorial" application of U.S. law), *aff'd* 186 B.R. 807 (S.D.N.Y. 1995).  Since chapter 15 expressly limits the jurisdiction of the Bankruptcy Court by reference to U.S. territory, and its very purpose is to shield assets held *in this country* in aid of a foreign proceeding, the extraterritorial nature of plaintiffs' claims defeats any claim of jurisdiction.  *See JCPL Leasing Corp.* v. *Treco* (*In re Treco*), 227 B.R. 343, 350 (Bankr. S.D.N.Y. 1998) (holding that the pendency of a section 304 proceeding did not confer jurisdiction over claims that did "not seek to recover property or otherwise implicate the foreign debtors' assets *in this country*" (emphasis added)).

   c)  **Plaintiffs' claims are not "related to" the Madoff liquidation proceeding.**

  Plaintiffs allege in their Complaint that this action "relates to" the *BMIS* bankruptcy case for purposes of 28 U.S.C. § 1334(b).  Kleinhaus Decl. Ex. 2 (Complaint) ¶ 10.  That position has no merit.

  Under long-settled law, a dispute between non-debtors that merely has a potential effect on the value of a bankrupt estate is not "related to" a bankruptcy for jurisdictional purposes.  For example, in *Feldman* v. *Beck Indus., Inc.* (*In re Beck Indus., Inc.*), 479 F.2d 410 (2d Cir. 1973), the Second Circuit held that a bankruptcy referee lacked subject matter jurisdiction to restrain state court proceedings against a subsidiary of the debtor, even though the value of the debtor's stock holdings in the subsidiary would be directly impacted by the results of the state litigation, *see id*. at 416 (citing *Gen. Am. Tank Car. Corp. v. Gobel, Inc. (In re Gobel,*

*Inc.)*, 80 F.2d 849, 852 (2d Cir. 1936) (holding that "mere financial interest of a bankrupt estate

in the outcome of the litigation pending in state courts does not authorize the issuance of an

injunction against such prosecution")). As the Bankruptcy Court in this District has explained,

"despite the breadth of the 'conceivable impact' formulation in *Pacor*, there is nothing in that

decision that suggests that a dispute that only indirectly impacts a bankruptcy estate-by affecting

the value of one of its assets-comes within 'related to' bankruptcy jurisdiction." *Tower Auto.*

*Mexico, S. De R.L. De C.V.* v. *Grupo Proeza, S.A. De C.V. (In re Tower Auto., Inc.)*, 356 B.R.

598, 602 (Bankr. S.D.N.Y. 2006).

       Thus, whatever indirect interest the BMIS estate may have in plaintiffs' lawsuit

against Fidulex, that interest is too tenuous to support bankruptcy jurisdiction.

    **B.**    **The other relevant factors likewise strongly support**
        **withdrawal of the reference.**

       In light of the federal courts' evident lack of jurisdiction, the proper course of

action is to grant Fidulex's motion to withdraw the reference and remand this action to state

court. To the extent they are considered, however, the other factors identified by the Second

Circuit in the *Orion* case also support withdrawal of the reference.

       *First*, Sentry has demanded a jury trial. Under section 157(e)(2), only a district

court has the authority to preside over a jury trial of this proceeding, a factor that weighs heavily

in favor of withdrawing the reference. *See Orion*, 4 F.3d at 1101 ("If a case is non-core and a

jury demand has been filed, a district court might find that the inability of the bankruptcy court to

hold the trial constitutes cause to withdraw the reference."); *M. Fabrikant & Sons, Inc.* v. *Long's*

*Jewelers Ltd.*, 2008 WL 2596322 at *3 (S.D.N.Y. June 26, 2008) (demands for jury trials in non-

core proceedings "weigh heavily toward removing the reference"); *see also Hassett* v. *BancOhio*

*Nat'l Bank* (*In re CIS Corp.*), 172 B.R. 748, 755 (S.D.N.Y. 1994) ("The fact that an adversary

proceeding concerns non-core matters for which the right to a jury trial is available is sufficient

cause for discretionary withdrawal of the reference under § 157(d).").

       *Second*, as noted above, absent withdrawal of the reference, it can be expected

that the non-prevailing party on Fidulex's remand motion will appeal to this Court.  It would be a

waste of time, judicial resources and the parties' resources for the question of forum that is

presented by the remand motion to be litigated once in the Bankruptcy Court and then again in

the District Court.  *See Solutia Inc.* v. *FMC Corp.*, 2004 WL 1661115, at *3 (S.D.N.Y. July 27,

2004) ("By litigating this non-core matter in the district court, judicial resources will be

conserved instead of having two courts administer two rounds of briefing and argument on the

same issues.").  Similarly, putting aside the remand motion, the non-core character of this

proceeding will mean that all rulings by the Bankruptcy Court, including any findings of fact,

will be subject to *de novo* review by the District Court, another reason to withdraw the reference.

*See* 28 U.S.C. § 157(c)(1) (providing that findings of facts and conclusions of law in non-core

matters are all subject to "de novo" review).

       *Third*, plaintiffs' claims raise issues of common law that this Court is at least as

well-equipped as the Bankruptcy Court to handle.  *See M. Fabrikant*, 2008 WL 2596322 at *4

(finding that the plaintiff's non-core claims do not "involve bankruptcy law, so the bankruptcy

court is not in a better position to handle pre-trial proceedings"); *see also Solutia*, 2004 WL

1661115 at *4 (where "there are no bankruptcy-related issues . . . this factor weighs in favor of

withdrawal of the reference").  The District Court's consideration of this lawsuit, accordingly,

would in no way undermine the "uniformity of bankruptcy administration."  *See In re VWE*

*Group*, 359 B.R. at 451 (finding that withdrawal of debtor's non-core claim would not adversely

affect the uniformity of bankruptcy administration where the claim was not brought under bankruptcy law and arose prior to the debtor's bankruptcy filing).  Moreover, if a single Judge of the District Court hears all of plaintiffs' "mistake" actions, that Court will of course take a single consistent approach to the issues presented.

*Fourth*, withdrawal of the reference would be consistent with the goal of preventing forum shopping.  The liquidators of Sentry and Sigma, after bringing a mistake action against Fidulex in the BVI, subsequently decided to bring this action in New York state court, and later decided to remove the action to federal court, where they have recently filed a motion seeking consolidation of their actions before Judge Lifland in the Bankruptcy Court.  *See* Kleinhaus Decl. Ex. 6 (*In Fairfield Sentry Ltd. et al.*, No. 10-13164 (BRL) [Docket No. 115]). In the motion to consolidate, the liquidators are transparent about the reasons for their choice of forum.  The motion emphasizes that Sentry was the largest of the so-called "feeder funds" into BMIS (¶ 11), asserts that Sentry made withdrawals from BMIS at times in order to meet redemption requests from shareholders (¶ 16), and notes, among other things, that the Trustee for BMIS has commenced an adversary proceeding against Sentry seeking to recover approximately $3.5 billion in withdrawals made by Sentry from BMIS (¶ 22).

It is plain, therefore, that plaintiffs' design is to have their claims heard by the same Court that is presiding over the BMIS case.  Sentry and Sigma, however, are of course distinct from BMIS, and unlike BMIS, are not debtors with estates being administered in this country.  Moreover, the claims that they have sought to bring, unlike the claims asserted by the trustee for the BMIS estate, are common law claims that are not grounded in any way in federal bankruptcy law.  Whatever efficiency advantages could potentially be derived from collapsing the Sentry and Sigma lawsuits into the BMIS case are far outweighed by the strong policy

against forum shopping that is recognized by the case law. *See, e.g., Wechsler* v. *Squadron,*

*Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635, 641 (S.D.N.Y. 1996) (granting motion to

withdraw reference where it "is in the interest of the prevention of forum shopping that this case

be litigated by the District Court").

## CONCLUSION

For the reasons stated above, the reference to the Bankruptcy Court of this

adversary proceeding should be withdrawn pursuant to 28 U.S.C. § 157(d).

Dated:  New York, New York
       October 4, 2010

WACHTELL, LIPTON, ROSEN & KATZ

By: _____

Herbert M. Wachtell
Stephen R. DiPrima
Emil A. Kleinhaus
Graham W. Meli
51 West 52nd Street
New York, New York 10019
(212) 403-1000

Attorneys for Defendant Fidulex
Management Inc.