**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>FAIRFIELD SENTRY LIMITED, *et al.*,<br>    Debtors in Foreign Proceedings. | Ch. 15 Case<br>Case No. 10-13164 (BRL)<br>Jointly Administered |
| FAIRFIELD SENTRY LIMITED, *et al.* (In Liquidation), acting by and through the Foreign Representatives thereof,<br>    Plaintiffs,<br>-against-<br>THEODOOR GGC AMSTERDAM, *et al.*,<br>    Defendants. | Adv. Pro. No. 10-03496 (BRL)<br>(Procedurally Consolidated Under This Matter) |
| FAIRFIELD SENTRY LIMITED, *et al.* (In Liquidation), acting by and through the Foreign Representatives thereof,<br>    Plaintiffs,<br>-against-<br>EFG BANK, *et al.*,<br>    Defendants. | Adversary Proc. No. 10-03625 (BRL) |

| | |
|---|---|
| FAIRFIELD SENTRY LIMITED, *et al.* (In Liquidation), acting by and through the Foreign Representatives thereof,<br><br>    Plaintiffs,<br><br> -against-<br><br>ZURICH CAPITAL MARKETS COMPANY, *et al.*,<br><br>    Defendants. | Adversary Pro. No. 10-03634 (BRL) |
| FAIRFIELD SENTRY LIMITED, *et al.* (In Liquidation), acting by and through the Foreign Representatives thereof,<br><br>    Plaintiffs,<br><br> -against-<br><br>ABN AMRO SCHWEIZ AG a/k/a ABN AMRO (SWITZERLAND) AG, *et al.*,<br><br>    Defendants. | Adversary Pro. No. 10-03635 (BRL) |
| FAIRFIELD SENTRY LIMITED, *et al.* (In Liquidation), acting by and through the Foreign Representatives thereof,<br><br>    Plaintiffs,<br><br> -against-<br><br>ABN AMRO SCHWEIZ AG a/k/a ABN AMRO (SWITZERLAND) AG, *et al.*,<br><br>    Defendants. | Adversary Pro. No. 10-03636 (BRL) |

| | |
|---|---|
| FAIRFIELD SENTRY LIMITED, *et al.* (In Liquidation), acting by and through the Foreign Representatives thereof,<br><br>Plaintiffs,<br><br>-against-<br><br>BANCO ATLANTICO GIBRALTER LTD. a/k/a EFG BANK (GIBRALTER) LTD., *et al.*,<br><br>Defendants. | Adversary Proc. No. 10-03787 (BRL) |

## DECLARATION OF JEAN-MARIE CANAC

I Jean-Marie Canac, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and the laws of the United States of America, that the following is true and correct:

### Qualifications

1.     I am a French professor of French and Monegasque banking and financial law at the University of Nice Sophia Antipolis (France). I am also a partner at the law firm Canac & Partners in Nice, France. I am an Avocat at the Nice and Grasse Bar, and President of the Monegasque Branch of European Society for Banking and Financial Law. A full copy of my curriculum vitae is attached hereto as Exhibit A.

2.     I have been retained by counsel for EFG Bank (Monaco) f/k/a EFG Eurofinanciere D'Invest MCL ("EFG Monaco") named as a defendant in the above-captioned proceeding, to give an opinion on the legality under Monegasque law of disclosing certain information sought by the liquidator (the "Liquidator") of Fairfield Sentry Limited (in liquidation), in a Motion Seeking Limited Relief from Order Staying Redeemer Actions and Entry of Order Directing Defendants to Make Expedited Initial Disclosures on Beneficial Holders and Authorizing Amendment to Complaints in Redeemer Actions, filed on 25 May 2012 (the "Expedited Disclosure Motion").

3

3. I make this declaration upon my own personal knowledge and affirm that I am familiar with the statutes, treaties and other authorities cited herein.

**Overview of Relief Sought and Summary of Opinion**

4. I understand that the Expedited Disclosure Motion seeks to have the United States Bankruptcy Court in the Southern District of New York (the "Bankruptcy Court") enter an order directing EFG Monaco "to disclose to the Foreign Representative the names and, if known, the addresses, telephone numbers, facsimile numbers and email addresses for (i) any person or entity on whose account or for whose benefit such Defendant subscribed for or held shares of the Funds that were redeemed in exchange for redemption payments identified in exhibits to complaints filed in Redeemer Actions; and (ii) any other person or entity known by a Defendant to have received the payments or any portion of payments identified in exhibits to complaints filed in Redeemer Actions by virtue of such person having a beneficial interest in shares redeemed in exchange for such payments" (the "Expedited Disclosure Request").

5. Based on this understanding, it is my opinion that if the Bankruptcy Court were to grant the Expedited Disclosure Motion and order EFG Monaco to disclose the information sought in the Expedited Disclosure Request, compliance by EFG Monaco would violate Monegasque banking secrecy laws and Monegasque data privacy laws. Under Monegasque law a violation of the relevant banking secrecy or data privacy laws implicates Article 308 of the Monegasque Penal Code, which provides for punishment of imprisonment from one month to three years and a fine.

**I. Monegasque Banking Secrecy Law**

6. Banking secrecy in Monaco is governed by the French Banking Act of 24 January 1984, codified in Article L 511-33 and L 511.34 of the French Monetary and Financial Code, (the "Banking Secrecy Law") which is applicable in the Principality of Monaco pursuant to the Sovereign Act of 14 April 1945 and certain treaties dated 18 May 1963, 27 November 1987 and 20

4

October 2010. Violations of Banking Secrecy Law also implicate Article 308 of the Monegasque Penal Code.

7. Article L533-11 provides that any member of the Board of Directors or any individual who participates in the management or administration of certain institutions ("Credit Institutions"), among them banks, or who is employed by such institution is bound by professional secrecy. Professional Secrecy may not be raised against the "Autorité de Contrôle Prudentiel," which is the French Authority that is in charge of the control of the banks in France and in Monaco, the Banque de France, or a court acting within the scope of criminal proceedings. The latter exception, however, does not apply to a court acting within the scope of civil or commercial proceedings. Additionally, Credit Institutions may disclose certain information covered by professional secrecy to ratings agencies for the purpose of rating financial instruments and to entities with which they enter into or negotiate certain transactions, to the extent necessary. Except for these specific exceptions, Credit Institutions may otherwise only disclose information covered by professional secrecy when the persons or entities implicated expressly consent.

8. Article L.511-34 provides that certain firms that form part of a financial group ("Financial Group Members") or a mixed group or a financial conglomerate which includes credit institutions or investment firms having their registered office in a Member State of the European Community or a State party to the European Economic Area Agreement or a State that has adopted certain agreements, must send certain information to firms in the same group that have their registered office in one of said States. This includes (i) information relating to the financial condition of each member necessary to manage the group; (ii) information necessary to combat money laundering and terrorist financing; (iii) information necessary to monitor and detect insider transactions and price manipulation; and (iv) information necessary to resolve certain conflicts of

5

interest. The entities that receive such information are bound by professional secrecy under the terms and conditions and subject to the penalties provided under Article L.511-33.

9.  Professional secrecy, of which banking secrecy is only a variant, is also governed in Monaco by Article 308 of the Penal Code, which provides that any person who discloses information subject to professional secrecy laws, except in cases where the law requires or authorizes them to make such disclosure, "shall be punished by imprisonment from one to six months and a fine of 2 250 to 9 000 Euros or any of those penalties."

10. The Government of Monaco and Judges of the Principality enforce banking secrecy laws with much rigor. The confidentiality obligations imposed upon financial institutions were enacted for the benefit of the client, and unless a particular exception to the obligation of secrecy applies, only the client has the ability to waive confidentiality and to permit disclosure of information pertaining to it to third parties. Based on my understanding that the proceedings before the Bankruptcy Court in which the Expedited Disclosure Motion applies are of a civil and not criminal nature it is my opinion that none of the exceptions to the duty of confidentiality imposed upon EFG Monaco, its management, and employees by the laws discussed above apply and that it would be a criminal offense under Monegasque law for EFG Monaco and its employees who participates in its management or administration, to disclose the information sought in the Expedited Disclosure Requests to the Liquidator.

## II. Monegasque Data Privacy Law

11. Under Monegasque law, the "automated processing of personal data" is governed by Law No. 1165 of 23 December 1993 (the "Data Privacy Law"). The Data Privacy Law relates to all automatic or computer operations to collect, record, process, modify, store, or destroy information that identifies a "a specific or identifiable natural person." The Data Privacy Law further states that "the automatic processing of personal data should not affect the fundamental rights and freedoms

6

set forth in Title III of the Constitution." Among these freedoms, Article 22 of the Monegasque Constitution codifies the right to privacy and secrecy of correspondence: "Everybody has the right to respect for his private and family life and secrecy of correspondence."

12. Violations of the Data Privacy Law are subject to Articles 308-2 to 308-5 of the Penal Code, under which violations of the Data Privacy Law may be punishable by imprisonment from one month to three years or a fine of 18 000 to 90 000 Euros. The Data Privacy Law permits the limited disclosure of personal information to the CCIN (Control Commission of Nominative Information), which performs a supervisory function over the automatic processing of personal data. Absent this limited exception, however, the disclosure of personal information that identifies a specific or identifiable natural person is prohibited by the Data Privacy Law. In any case, the above mentioned provisions of the Data Privacy Law did not have effect to derogate Article 308 of Penal Code.

13. It is my opinion that because none of the exceptions to the Data Privacy Law apply to the Expedited Disclosure Motion, it would be a violation of the Data Privacy Law and a criminal offense under Monegasque law for EFG Monaco to disclose the information sought in the Expedited Disclosure Requests.

**Summary and Conclusion**

14. In summary, absent customer consent, EFG Monaco's disclosure of the information sought in the Expedited Disclosure Request would violate Monegasque banking secrecy laws, as codified in Articles L 511-33 and L 511.34 of the French Monetary and Financial Code applicable in Monaco, and Monegasque data privacy laws as codified in Law No. 1165 of 23 December 1993. Such violations are subject to Article 308 and 308-2 to 308-5 of the Monaco Penal Code, which imposes criminal sanctions of incarceration for one month to three years and a fine. Accordingly, if the Bankruptcy Court were to grant the Expedited Disclosure Motion, EFG Monaco would not be

7

able to comply without subjecting its officers, directors, and employees to criminal liability under Monegasque law.

*–Remainder of Page Intentionally Blank–*

Executed on 8 June 2012, at Cannes, France

By : Jean-Marie Canac

# EXHIBIT A

**Jean-Marie CANAC**
CANAC & PARTNERS
9, Avenue Henri Matisse
06200 NICE - FRANCE
Tel :        04 93 98 32 14
Mobile :    06 72 84 30 02

e.mail : jm.canac@canac-associes.com

1978 Diplôme de Juriste Conseil d'Entreprise
Diplôme d'Etudes Supérieures de Droit des Affaires

1977 Maîtrise de Droit Privé
Certificat d'Aptitude à la Profession d'Avocat
Certificat d'Etudes Judiciaires
Maîtrise d'Histoire
English – fluent (written, spoken and comprehension)
Spanish – good (spoken and comprehensive)

**Professional Experience**

Since 2007
CANAC AND PARTNERS LAW FIRM

Avocat at the Nice and Grasse Bar
Senior Partner
Professor at the University of Nice Sophia Antipolis (banking and financial law, Monegasque law)

Président of the Monegasque Branch of European Society for Banking and Financial Law.

Président of Henri Capitant Society for the French and Roman Legal Culture (Monaco Branch)

Customers References: Credit Suisse Monaco, Barclays Bank Monaco, Le Credit Lyonnais bank, Banque de Gestion Edmond de Rothschild, Julius Bar Bank (MC), etc.

Correspondent Monaco law (banking and finance) for many English or American law firms (Linklaters, Slaughter and May, Baker and Mac Kenzie, Lovell's, Allen & Overy.....).

2004- 2007
ERNST AND YOUNG LAW FIRM

Avocat at the Grasse Bar.
Partner in charge of the E.Y. Sophia Antipolis – Côte d'Azur Law Firm.

In charge of the management of the office (8 lawyers), member of the executive committee.

Advising in Monegasque and French law (banking and finance matters, corporate law, social law, M & A operations…)

Active in banking and finance legal, compliance and regulatory matters in France and in Monaco.

1/4

| | |
|---|---|
| 1999 - 2004 | **ERNST & YOUNG INTERNATIONAL – SOMODECO – MONACO** |

Executive manager – Legal Advisor

Responsible for set up of banking and finance department within the firm – with responsibility for legal banking and finance matters, covering both Monaco and the region 'South of France' – creation and development of a dedicated team of five legal professionals.

Advising more than thirty banks and asset management companies based in Monaco, as well as English and Swiss law offices on banking and financial matters. Also providing advices to the Monegasque Association of Banks.

Providing advice on banking law, financial law and Monegasque financial and banking regulations. Preparation and set-up of procedures, legal audit, regulatory and controls.

Correspondent in Monaco (banking and finance) for many English or American law firms (Linklaters, Slaughter and May, Baker and Mac Kenzie, Lovell's.....).

| | |
|---|---|
| 1978 - 1999 | **Banque WORMS – Paris** |

1990 - General Counsel - Director of legal and tax, litigation and special affairs department.

Responsible for four departments with around fifty people and directly answerable to the C.E.O.

«Compliance Officer » for the American and Asian branches of the bank.

Since 1998, member of the Executive Committee

1988 - General Counsel - Director of legal and tax and litigation department.

1984 - Head of litigation department.

1978 - Authorized representative at Legal and litigation Department.

| | |
|---|---|
| 1977 / 1978 | **Professor Rives-Langes law firm** |

Trainee lawyer to the Montpellier Bar.


**Other Professional experiences**

| | |
|---|---|
| 1977 / 1978 | "Assistant" at the University of Montpellier (Banking law) |
| 1983 / 1998 | "Assistant" at the University of Paris I - (Business law – Corporate law) |

2/4

| | |
|---|---|
| 1984 / 2007 | Lecturer for DESS Business Law - DJCE – University of Montpellier (banking law, finance law) |
| 1985 / 1996 | Attendance at numerous conferences both in France and abroad concerning commercial law, banking law, financial law and banking and financial regulation and insolvency regulations. |

**Publications (Digest)**

    ν "The Memorandum of Agreement on property leasing," Memory Faculty of Law of Montpellier in 1977.

    ν "The legal nature of the statement of claims," Gazette du Palais - 1995, with Mr. Francis Teitgen Barrister and Master Olivier Grisoni.

    ν "The risks of banking", Faculty of Law of Montpellier in 1998.
    ν "Banking and Finance Law of the Principality of Monaco" Review of Monegasque Law No. 5.

    ν "Jurisprudence Monaco: some elements" - Lamy 2007.

    ν "The trust under French law", The Tribune Riviera 2007.

    ν "MiFID" Banking and Finance in 2007.

    ν "The Dailly law and its consequences for the banker," Commercial Court of Nanterre in 1997.

    ν "The new financial legislation Monaco" Mixtures AEDBF 2008. As many comments from judicial decisions, including Monaco.

    Since 1999 (digest) – Banking Secrecy in Monaco – The responsibility of the Banker/Private Wealth manager in Monaco - The legal organisation and bank controls in Monaco in light of Regulation 97.02 of the CRBF – The clauses of assignment of competence in Monegasque Law – Netting in Monaco – Anti money laundering organisation in Monaco and France – The application and limits of banking laws in Monaco – Compliance in Monaco banks – Trusteeship in French legislation – Leasing in Monaco – MIF Directive in Monaco, etc.

    Jean-Marie Canac was for years a permanent member of the Legal Committee of the French Banking Association.

    He has organized seven International Days of Banking and Finance AEDBF Monaco.

**Memberships**

    Member of the Association for Law and Commerce
    Member of INSOL International

Member of the Cercle Montesquieu
Member of the National Association des Banking Lawyers (France)

**Credentials**

Monsieur Jean Michel Daunizeau – Former Crédit Agricole S.A General Counsel.
Bâtonnier Francis Teitgen – former Bâtonnier of Paris – Avocat Weil Gotshal Paris.
Monsieur François Schwerrer –Banque Postale General Counsel
Monsieur Jean-Pierre Mattout, Partner Kramer Levin Paris – Former General Counsel of BNP Paribas, and France Telecom.
Monsieur François Poher, Géénral Counsel Credit Suisse Monaco.
Monsieur Philippe Narmino, Ministry of Justice of Monaco.

## SKILLS & ACHIEVEMENTS

(Examples)

Managerial level

- Creation and development of a team of around fifty persons comprising two management levels with a mix of strong personalities and of a highly autonomous nature (in house lawyers).
- Integration of colleagues as a result of a merger and creation *ex nihilo* of a team from previously untrained and unskilled employees.

Organisational level

- Setting up cautionary procedures in the light of Regulation 97-02 of the *Comité de Réglementation Bancaire*.
- Setting up and adapting organic procedures and documentation essential for running the bank.
- Setting up anti money laundering procedures.

Technical

- Setting up computer and information management structures within the bank
- Handling complex operations within the realm of business and banking, Private Wealth Management and international negotiation.

Negotiation

- Negotiations with the American Federal Reserve following infractions committed by the bank Worms within the American territory (Glass Steagall Act).
- Negotiations of strategic market account (amounts greater than 500 MF).
- Negotiation of settlements in international disputes (Chile, Venezuela, USA, Spain, Switzerland, Asia, Morocco).

Administration

- Handling amounts greater than 3 Billion FRF on contentious files.
- Handling Bank forecasts.
- Handling the Bank's portfolio and insurance
- Administration of a team of around fifty persons, and handling recruitment, career development.