UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

In re:                                                    :    Chapter 15 Case
                                                          :
Fairfield Sentry Limited, et al.,                         :    Case No. 10-13164 (BRL)
                                                          :
    Debtors in Foreign Proceedings.                      :    Jointly Administered
                                                          :
------------------------------------------------X         :
                                                          :
Fairfield Sentry Limited (In                              :    Adv. Pro. No. 10-03776 (BRL)
Liquidation), Fairfield Sigma Limited                     :
(In Liquidation) and Fairfield Lambda Limited             :
(In Liquidation), acting by and through the               :
Foreign Representatives thereof, and Kenneth              :
Krys and Joanna Lau, solely in their                      :
Capacities as Foreign Representative and                  :
Liquidators thereof,                                      :
                                                          :
                  Plaintiffs,                                   :
                                                          :
                 -against-                                     :
                                                          :
Fortis (Isle of Man) Nomintees Limited a/k/a              :
ABN AMRO Fund Services (Isle of Man)                      :
Nominees Limited, Seven Seas, LP Hedge,                   :
Platinum, and Beneficial Owners of the                    :
Accounts held in the name of Fortis (Isle of              :
Man) Nominees LTD 1-1000                                  :
                                                          :
                  Defendants.                                   :
------------------------------------------------X

## **DECLARATION OF PETER BRUCE CLUCAS**

I, Peter Bruce Clucas of Fort Anne, Douglas, Isle of Man, IM1 5PD, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and the laws of the United States of America, that the following is true and correct:

1.    I am an advocate in good standing of the High Court of Justice of the Isle of Man (the "High Court"). I am a director in the Isle of Man incorporated legal practice operating under the name of Cains Advocates Limited. I have a broad-based practice in commercial litigation and practice at the above address. I was admitted as an advocate of the High Court in 1993. Attached hereto as Exhibit A is a true and correct copy of my resumé. Copies of any authorities or documents referred to herein will be provided upon request.

2.    Where matters stated herein are within my own knowledge they are true; otherwise they are true to the best of my knowledge, information and belief. I affirm that I am familiar with the statutes, treaties and other authorities cited herein.

Background

3.    I am asked by counsel for the Isle of Man registered company ABN AMRO Fund Services (Isle of Man) Nominees Limited ("ABN AMRO") to advise on certain principles of Isle of Man law relating to the disclosure of certain information which arise in the present case. In particular, I have been asked for my opinion regarding the application of Isle of Man confidentiality and

1

      data protection law to a discovery request made upon ABN AMRO by Fairfield Sentry Limited (the "Foreign Representative"), which seeks certain documents and information from ABN AMRO.

4. I understand that ABN AMRO has made no appearance in the action and that it intends to challenge the jurisdiction of this Court. I further understand that this Court has not yet determined whether it has jurisdiction over ABN AMRO.

5. That notwithstanding, I understand that on 25th May 2012 the Foreign Representative filed a Motion Seeking Limited Relief from Order Staying Redeemer Actions and Entry of Order Directing Defendants to Make Expedited Initial Disclosures on Beneficial Holders and Authorising Amendment to Complaints in Redeemer Actions (the "Expedited Disclosure Motion"), which I have reviewed.

6. The Expedited Disclosure Motion seeks to have the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") issue an order requiring ABN AMRO and other defendants, within 10 days after entry of said order, "to disclose to the Foreign Representative the names and, if known, the address, telephone numbers, facsimile numbers and email addresses for (i) any person or entity on whose account or for whose benefit such Defendant subscribed for or held shares of the Funds (as defined in the Expedited Disclosure Motion) that were redeemed in exchange for redemption payments identified in exhibits to complaints filed in Redeemer Actions; and (ii) any other person or entity known by the Defendant to have received the payments or any portion of payments identified in exhibits to complaints filed in Redeemer Actions by virtue of such person having a beneficial interest in shares redeemed in exchange for such payments" (the "Expedited Disclosure Request").

7. For the reasons set forth below, it is my opinion that, until a decision that this Bankruptcy Court has jurisdiction over ABN AMRO, by making disclosure according to the terms of the Expedited Disclosure Request ABN AMRO would expose itself to vulnerability to claims in breach of its duty of confidentiality and/or breach of statutory duty from customers and/or persons who are the subjects of the information disclosed and who would not otherwise consent to its disclosure.

8. For purposes of this declaration, I have had the opportunity of reading a copy of the declaration of Mr. Nuno Manuel Camilo Santo Costa submitted in support of the opposition of HSBC Private Banking Nominee 1 (Jersey) Limited to the Expedited Disclosure Motion. To a large extent, I believe that the conclusions which Mr. Costa makes in relation to the laws of Jersey also apply under Isle of Man law. For that reason I have adopted where appropriate the content of Mr. Costa's declaration when making this declaration.

.Discovery in proceedings before the Isle of Man High Court

9. Once proceedings issued before the High Court have been served then, subject to successful challenges to the jurisdiction of the High Court/applications to strike-out and so on, the High Court generally makes orders for discovery following the close of pleadings and as part of the

procedural timetable which is set in anticipation of the trial of the action. In <u>Tarben Limited and Others v KSI Hawk Limited and Another</u> (ORD2010/74, 18th February 2011), Deemster (Judge) Corlett stated that it is a *"long standing principle of both English and Manx law that disclosure of documentation is generally given only after pleadings have closed"*.

10. The scope of discovery in proceedings within the jurisdiction of the High Court is framed by the issues raised on the pleadings filed by the parties therein. When considering Isle of Man's own law and procedure governing discovery (more properly known as disclosure in the Isle of Man), the position is prescribed by Rules of Court which provides that a party to civil proceedings before the High Court are under a duty to disclose documents: -

    (a) upon which he relies; or

    (b) which adversely affect his own case or another party's case; or

    (c) support another party's case.

Application of these rules necessitate all parties to adequately state their respective case in the pleadings (Part 7, Chapter 5 of the Rules of the High Court of Justice of the Isle of Man 2009). The exchange of properly-particularised pleadings is therefore key.

Obtaining evidence or information in Isle of Man

11. The Evidence (Proceedings in Other Jurisdiction) Act 1975 (the "1975 Act"), an Act of Parliament of the United Kingdom, has been extended with modifications to apply and be of full force and effect in the Isle of Man. The 1975 Act, as applied in the Isle of Man, enables the Isle of Man fully to fulfil international obligations under the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, concluded on March 18th, 1970 at The Hague (the "Hague Evidence Convention").

12. Sections 1 to 3 of the 1975 Act, as applied in the Isle of Man, make provision for the taking of evidence in the Isle of Man in proceedings pending or in contemplation before courts outside of the Isle of Man. The proceedings in question must relate to civil or commercial matters arising in a court or tribunal <u>exercising jurisdiction</u> in the relevant country or territory thus (at Section 1):-

*"Where an application is made to the High Court of Justice in the Isle of Man for an order for evidence to be obtained in the Isle of Man, and the court is satisfied—*

*(a) that the application is made in pursuance of a request issued by or on behalf of a court or tribunal ("the requesting court") exercising jurisdiction or in a country or territory outside the Isle of Man; and*

*(b) that the evidence to which the application relates is to be obtained for the purposes of civil proceedings which either have been instituted before the requesting court or whose institution before that court is contemplated,*

*the High Court of Justice in the Isle of Man shall have the powers conferred on it by the following provisions of this Act."*

13. Where these criteria are met, the requesting court may apply to the High Court (the High Court being the central authority in the Isle of Man designated to execute letters of request,

3

by virtue of the Hague Evidence Convention) for assistance in obtaining evidence. Under Section 2 of the 1975 Act, as applied in the Isle of Man, the High Court is empowered to make such provision for the obtaining of evidence in the Isle of Man as may appear to be appropriate, including for the production of documents. In accordance with Article 23 of the Hague Evidence Convention, Section 2(3) of the 1975 Act provides that the High Court will only execute Letters of Request issued for the purpose of obtaining evidence for use at trial in the proceedings before the requesting foreign court. For this reason, the 1975 Act, as applied in the Isle of Man, cannot be used for the purpose of obtaining pre-action discovery, or indeed any form of procedural discovery. Orders concerning the production of documents are subject to the provisions of Section 2(4) of the 1975 Act, as applied in the Isle of Man, which states that:-

> *(4) An order under this section shall not require a person—*
> *(a) to state what documents relevant to the proceedings to which the application for the order relates are or have been in his possession, custody or power, or*
> *(b) to produce any documents other than particular documents specified in the order as being documents appearing to the court making the order to be, or to be likely to be, in his possession, custody or power."*

14. The High Court has held that, as a matter of principle, it should always strive to give effect to Letters of Request: it should decline to comply with a foreign request only insofar as it is not proper or permissible or practicable under Isle of Man law to give effect to it. In <u>Impex Services Worldwide Limited</u> [2003-05] Manx Law Reports 115, Deemster Doyle stated:-

> *"52. Here on the Isle of Man, we are all citizens of the Island but we are also citizens of the global community in which we live, work and contribute. We need to recognise our international as well as our local responsibilities. If the English High Court requires assistance then the Manx High Court, if it has jurisdiction and subject to any necessary safeguards, should not, in a proper case, be slow to provide such assistance."*
>
> *...*
>
> *82. Friendly and sophisticated jurisdictions, which respect the rule of law and human rights, need to be aware that if things go wrong in their jurisdiction, and person in the Isle of Man have information that would assist them, then the Manx courts, in a proper case and, if necessary, subject to suitable safeguards, will offer judicial co-operation and assistance when that is reasonably requested by the judicial authority in that friendly jurisdiction. When the call for help comes, the Manx courts will, in proper cases, answer the call positively and provide the necessary co-operations and assistance".*

This principle reflects judicial and international comity. It is, further, vital that a high degree of precision be exercised in the framing of the request and in giving effect to it. Evidence taken must be relevant, under the law of the requesting court, to the issues in the proceedings before it.

<u>Disclosure of Information pursuant to "Norwich Pharmacal" Jurisdiction</u>

15. There may be cases in which the High Court will lend assistance to foreign plaintiffs (or would-be plaintiffs) in ordering disclosure by parties to assist in the prosecution of

4

proceedings or contemplated proceedings, for instance in the usual course of substantive proceedings brought in the Isle of Man by foreign plaintiffs. Another instance, in exceptional cases, is under the so-called "Norwich-Pharmacal" jurisdiction as developed in the Isle of Man. In *Secilpar S.L v Burgundy Consultants Limited and Trafalgar Nominees Limited*, [2003-05] MLR 352, Deemster Doyle stated at para.67:

*"Although as a general rule no independent action for discovery would lie against a person against whom no reasonable cause of action could be alleged, or who was in the position of a mere witness in the strict sense, the rule did not apply where (a) without discovery of the information in the possession of the person against whom discovery was sought no action could be begun against the wrongdoer, and (b) the person against whom discovery was sought had himself, albeit through no fault of his own, been involved in the wrongful acts of another so as to facilitate the wrongdoing. In such circumstances, although he might have incurred no personal liability, he was under a duty to assist the person who had been wronged by giving him full information and disclosing the identity of the wrongdoer."*

16. Orders made under the "Norwich-Pharmacal" jurisdiction are sought by issuing proceedings in the Isle of Man supported by evidence disclosing, among other things, a good arguable case. Such orders, if granted *ex parte*, would be served by personal service through an officer of the High Court called the Coroner; otherwise, if ordered following a hearing *inter partes*, they would be effective as orders of the High Court received directly by the affected party.

17. The High Court in *Secilpar*, at paragraph 72, stated:

*"It is becoming widely accepted that comity between the Courts of different countries requires mutual respect for the territorial integrity of each other's jurisdiction, but that this should not inhibit a court in one jurisdiction from rendering whatever assistance it properly can to a Court in another in respect of assets located or persons resident within the territory of the former".*

18. Consistent with this notion of comity, the Isle of Man High Court may exercise its "Norwich Pharmacal" disclosure jurisdiction in aid of proceedings before the court of another territory. Its jurisdiction to exercise such disclosure in aid of foreign proceedings is confirmed by Section 56B of the High Court Act 1991 which states that:-

*"56B Interim relief in the absence of substantive proceedings*
   *(1) The High Court shall have power to grant interim relief where proceedings have been or are to be commenced in a country or territory outside the Island.*
*(2) On an application for any interim relief under subsection (1) the High Court may refuse to grant that relief if, in the opinion of the Court, the fact that it has no jurisdiction apart from this section in relation to the subject-matter of the proceedings in question makes it inexpedient for the Court to grant it.*
*(3) In this section 'interim relief' means interim relief of any kind which the High Court has power to grant in proceedings relating to matters within its jurisdiction, other than-*
   *(a)   a warrant for the arrest of property; or*
   *(b)   provision for obtaining evidence."*

19. In *Secilpar*, Deemster Doyle, after reviewing relevant authorities from England and other common law jurisdictions, summarised the "Norwich Pharmacal" jurisdiction of the High Court as follows: -

*"The jurisdiction is a wide one. It is not restricted, as was at one time thought, to the disclosure of the names of wrongdoers only. In particular, where a plaintiff wishes to*

*investigate the passage of monies in and out of bank accounts in aid of a tracing claim, discovery can be ordered of a bank's books and documents : see Bankers Trust Company v Shapira [1980] 1 WLR 124, at 1281F-1282F.*

*Though founded ultimately on notions of justice, nevertheless, it is important to emphasise the extraordinary nature of this relief because it is not a usual order and is not one that a court would lightly grant in the absence of powerful factors. I emphasise the following characteristics of this type of order:-*

(1)  *It is made against an innocent party whose only involvement is to become mixed up in the tortious or wrongful activities of others. There is at that stage no evidence of any wrongdoing on the part of the innocent party. (2) Instead, whatever wrongdoing there is, exists only on the part of a person or persons against whom no relief may be sought at that stage and indeed against whom there is probably insufficient evidence to found an action. In other words, this person or these persons will most probably not be before the court and would not be able to answer what are often very serious allegations made against them.*

(3)  *Usually, there will, moreover, exist a legal relationship between the innocent person against whom a discovery order is sought and the alleged wrongdoer and this relationship may involve strict duties to be observed on the innocent party's part. The present case offers what is a common scenario: the innocent defendant is a bank and the alleged wrongdoers its customers. In this situation, any discovery to be made by the innocent party may well, apart from a court order, expose that innocent party to liability, both civil and possibly even criminal. At the very least, a breach of confidentiality is involved.*

(4)  *The court, accordingly, in applications for Norwich Pharmacal relief must, in its discretion, balance the competing interests of the victim of the alleged wrongdoing and an innocent party caught up in the wrongdoing.*

*Given these characteristics as I have outlined, such orders are therefore not lightly made as I have said. In my view, it is essential for the court to bear the following in mind before Norwich Pharmacal order is made:-*

(1)  *There must be cogent and compelling evidence to demonstrate that serious tortious or wrongful activities have taken place. And where fraud or similar serious allegations are made, the degree of proof must correspondingly be high : see In re. H (Minors) [1996] AC 563, at 586C-H. All the more so when the alleged wrongdoer is not and will not likely be before the court.*

(2)  *It must also be clearly demonstrated that the order will or will very likely reap substantial and worthwhile benefits for the plaintiff. Where, as in the present case, the plaintiff is likely to make a tracing claim, there must be a serious possibility that the discovery sought must either allow the plaintiff to preserve what may well be his assets or realistically lead to the discovery of such assets : see Arab Monetary Fund v Hashim (No 5) [1992] 1 All ER 911, at 916-D-E, 918J-919A .*

(3)  *The discovery sought must not be unduly wide. There is no entitlement to general discovery (by general discovery is meant discovery in the Peruvian Guano sense) : see Arab Monetary Fund at 918D-E, 919H. It follows therefore that not only must any order be specific, it must also be restricted to those or those classes of documents that are necessary to enable the plaintiff to preserve or discover assets. This is not to say that discovery orders cannot be wide, what is important is that the discovery, whether wide or narrow, is necessary".*

<u>Disclosure and the duty of confidentiality</u>

6

20. In the present case there is a request from the Foreign Representative in the form of the Expedited Disclosure Request. The Foreign Representative has sought no order from the High Court—whether through the institution of substantive proceedings in the Isle of Man or by way of order in aid of the action purportedly commenced in New York pursuant to the "Norwich Pharmacal" jurisdiction of the High Court or otherwise—or from any other court whose jurisdiction has been established compelling ABN AMRO to make disclosure in accordance with the Expedited Disclosure Request. Such disclosure would, as discussed below, necessarily include confidential customer information. As a consequence, were ABN AMRO to make disclosure according to the terms of the Expedited Disclosure Request, it would be vulnerable to claims for breach of its duty of confidentiality.

21. The English Court of Appeal in the case of _Tournier v National Provincial and Union Bank of England_ [1924] 1 KB 461 held that a banker owes his customer a legal duty of confidentiality not to disclose information to third parties and that any breach of this duty could give rise to liability in damages if loss results. The right to confidence is that of the customer and cannot be waived by the bank.

22. The duty arises between a banker and customer upon the opening of an account and continues beyond the time when the account is closed. It covers all transactions concerning the account and information obtained by virtue of the relationship between the banker and its customer.

23. In the Isle of Man there are no statutory provisions giving rise to the banker's or custodian's duty of confidentiality: the law in this area has evolved through decisions of the High Court adopting and applying the principles set out in the _Tournier_ case (see for example _Re Bank of Ireland Holdings (Isle of Man) Limited_, [2005-06] MLR 507).

24. The Expedited Disclosure Request seeks personal information including the names and contact information of any beneficial owner of Fairfield Fund shares and any other person or entity to whom payment in respect of Fairfield Fund shares were due or made. Absent the application of an exception (discussed immediately below), the disclosure of such information would violate the duty of confidentiality.

25. As confirmed in _Bank of Ireland Holdings (Isle of Man) Limited_, the duty of confidentiality in the Isle of Man, following the _Tournier_ line of authority, is qualified by four reasonable exceptions making disclosure permissible thus:
    (1) where the bank is compelled by law to disclose information;
    (2) if the bank has a public duty to disclose the information;
    (3) if the bank's own interests require disclosure; and
    (4) where the customer has agreed to the information being disclosed.

26. Insofar as its customers have not agreed to disclose of information, I consider that only other relevant exception to the duty of confidentiality in this case is where ABN AMRO is compelled

7

by law to disclose information. Whether or not it is so compelled turns on whether or not it is under compulsion from a court of competent jurisdiction having jurisdiction over ABN AMRO in extant proceedings. As stated above, I understand that there being no order from a court of competent jurisdiction, and with the question of this Court's jurisdiction over ABN AMRO being in any case at large pending resolution of the challenge to jurisdiction, in my view ABN AMRO is unable to disclose without exposing itself to vulnerability to claims from its customers for breach of its duty of confidentiality.

Disclosure and the data protection legislation

27. I consider that disclosure by ABN AMRO according to the Expedited Disclosure Request would expose it further to vulnerability to claims pursuant to the provisions of the Data Protection Act 2002 (the "DPA").

28. The first data protection principle under the DPA specifies that (Schedule 1, Part 1):

*"Personal data shall be processed fairly and lawfully and, in particular, shall not be processed unless –*
    *(a)    at least one of the conditions in Schedule 2 is met ...."*

29. Under Section 1 of the DPA, "data" is defined thus:

*"data" means information which –*

(a) *is being processed by means of equipment operating automatically in response to instructions given for that purpose;*

(b) *is recorded with the intention that it should be processed by means of such equipment; or*

(c) *is recorded as part of a relevant filing system or with the intention that it should form part of a relevant filing system, or*

(d) *[not relevant for present purposes].*

30. The definition of "personal data" contained within Section 1 of the DPA is in the following terms:

*"personal data" means data that relate to a living individual who can be identified –*

(a) *from those data; or*

(b) *from those data and other information that is in the possession of, or is likely to come into the possession of, the data controller, and includes any expression of opinion about the individual and any indication of the intentions of the data controller or any other person in respect of the individual.*

31. "Processing" is very widely defined under the DPA and means obtaining, recording or holding the information or data or carrying out any set of operations on the information or data including expressly (amongst other specified actions) "disclosure of the information or data by transmission, dissemination or otherwise making available"... (Section 1 of the DPA)

32. Pursuant to Section 11 of the DPA, an individual who suffers damage by reason of any contravention by a data controller of any requirement of the DPA is entitled to compensation from the data controller. In certain circumstances, an individual may also be entitled to

compensation for distress in connection with a breach by a data controller of a requirement under the DPA.

33. I understand that, as it operates as a nominee company, ABN AMRO would not normally hold or process personal data so as to require it to register as a data controller under the DPA. Nevertheless, I consider it likely that ABN AMRO would be considered a data controller for the purposes of the DPA if and insofar as it gave disclosure pursuant to the Expedited Disclosure Request. This is on the basis that it would be brought within the definition of a data controller contained in section 1 of the DPA, being "*a person who . . . determines the purposes for which and the manner in which any personal data are or are to be processed.*"

34. The wide terms of the Expedited Disclosure Request require the disclosure of "personal data" within the meaning of the DPA. In summary then, unless a Schedule 2 condition or other exemption applies, I consider it likely that ABN AMRO would be in contravention of the first data protection principle and of the DPA thereby making it vulnerable to a claim to compensation in the event of compliance with the Expedited Disclosure Request.

35. The Schedule 2 conditions permitting the processing of personal data include, among others[1], where (condition 1) the data subject has consented to the processing and where (condition 3):

*"the processing is necessary for compliance with any legal obligation to which the data controller is subject, other than an obligation imposed by contract".*

It is my view that the other Schedule 2 conditions are either irrelevant or, where involving a balance of interests (N.B. condition 6), are unlikely to permit ABN AMRO to respond to the Expedited Disclosure Request without committing a breach of the DPA.

36. An exemption from certain of the requirements under the DPA (including, in part, the fair processing requirement contained in the first data protection principle) is provided in Section 31 of the DPA as follows:

*"31 Disclosures required by law or made in connection with legal proceedings etc.*

*(1) Personal data are exempt from the non-disclosure provisions where the disclosure is required by or under any statutory provision, by any rule of law or by the order of a court.*

*(2) Personal data are exempt from the non-disclosure provisions where the disclosure is necessary –*

*(a) for the purpose of, or in connection with, any legal proceedings (including*

---

[1] The other Schedule 2 conditions are as follows:
  2  Processing necessary for the performance of a contract with the data subject or for the taking of steps at the request of the data subject with a view to entering into a contract
  4  Processing to protect the vital interests of the data subject
  5  Processing necessary for the administration of justice or the exercise of public functions
  6  Processing for legitimate interests of the data controller or another party (save to the extent that this is unwarranted by reason of prejudice to the data subject's rights, freedoms and interests)

9

*prospective legal proceedings); or*

*(b) for the purpose of obtaining legal advice;*

*or is otherwise necessary for the purposes of establishing, exercising or defending legal rights."*

37. I would clarify that the "non-disclosure provisions" referred to in the Section 31 exemption constitute only a partial derogation from the requirement on a data controller to comply with the data protection principles set forth in Schedule 1 to the DPA and do not, for example, excuse the data controller from having to comply with a Schedule 2 condition. In effect, Section 31 of the DPA serves to permit, in certain circumstances, the disclosure of information without the need to inform data subjects in advance or having to comply with certain of the other data protection principles, but only then to the extent that compliance would be inconsistent with the disclosure in question.

38. Insofar as the data subjects do not consent to disclosure then, similarly to the possibility of claims arising from the common-law duty of confidentiality referred to above, as there is no order from a court of competent jurisdiction, and with the question of this Court's jurisdiction over ABN AMRO remaining at large pending resolution of the challenge to jurisdiction, the protection of condition 3 under Schedule 2 and the Section 31 exemption are by no means certainly engaged. In my view ABN AMRO is unable to disclose without exposing itself to vulnerability to claims under the DPA for contravention of the first data protection principle from individuals who are the subject of the personal data disclosed.

39. Furthermore, unless relevant conditions or exemptions apply, the eighth data protection principle under the DPA – which restricts the transfer of personal data outside the European Economic Area unless adequate protection can be ensured – could also constitute a further potential source of vulnerability were ABN AMRO to make disclosure, particularly insofar as the would-be recipient(s) has not signed up to the so-called "Safe Harbor" privacy principles in the United States which have been approved by the European Commission as meeting the above-mentioned adequacy requirement.

40. At the same time as being vulnerable to claims from individuals who were/are the subject of the data disclosed, I consider that ABN AMRO would also be vulnerable to potential enforcement action by the Isle of Man Data Protection Supervisor by way of service of enforcement notices for contravention of the data protection principles. Non-compliance with such a notice would constitute an offence under Section 43 of the DPA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 7th June 2012

*[signature]*

..............................................

**PETER BRUCE CLUCAS**

# EXHIBIT A



# Peter Clucas



Peter manages the firm's Litigation Department. His areas of practice include general commercial litigation matters, insolvency and money laundering matters.

Regularly recommended by the legal directories for his work in these areas, he is described as:

"unfailingly efficient and effective". Clients have commented that he "has the skill set of a formidable advocate: he is well prepared, confident and very good on his feet". He is "readily available, personable and gets results".

Peter has extensive advocacy experience, and appears regularly before the various divisions of the Isle of Man High Court.

### Recommendations

Chambers UK
Chambers Global
Chambers Europe
Legal 500
PLC Which Lawyer?

### Academic history

Called to the Manx Bar in 1993

### Professional memberships

Isle of Man Law Society

International Compliance Association

Full CV – Peter Clucas continued

## Key cases

- *Dominator Limited v Gilberson SL & Others* – Acted for plaintiff in seeking Limitation Decree under Article 10 of Convention on Limitation for Maritime Claims 1976; case involved appeal court decision on power to allow service out of jurisdiction.

- *Re Kaupthing Singer & Friedlander (Isle of Man) Limited* – Represented bank in wind-up of Kaupthing Singer & Friedlander (Isle of Man) Limited.

- *Re Scottish & Newcastle International Limited* – Acted for subsidiary of multi-national brewer in relation to corporate restructuring involving Court approved capital reduction.

- *Re Nedgroup Target Return Fund Plc* – Acted for closed ended investment company in relation to restructuring and closure of sub-funds via scheme of arrangement.

- *Golfrate Africa Limited v Aziz, Moaz & Strand (London) Limited* – successfully defended third party in "Norwich Pharmacal" application.

- *LSI Faragy v El Faragy* – Acted for defendant in enforcement proceedings involving conflict of laws / comity principles.

- *Law Investments Limited & Others* – Acted for liquidator in winding-up of five related companies in which fraud was alleged.

- *Bellingden Limited v Locke* – Acted for defendants proceedings struck out for abuse of process – forum conviens case.

- *Lumsden Limited v Liggins and Others* – Acted for plaintiff in obtaining judgment against defendant and his professional partners for knowing assistance in breach of trust.

- *Re LCL Insurance Company Limited* - Acting for applicant in relation to seeking Court sanction to insurance business transfer scheme.

## Cains

Fort Anne, Douglas,
Isle of Man IM1 5PD
Tel: +44 1624 638300
Fax: +44 1624 638333
Email: law@cains.com

One Love Lane,
London EC2V 7JN
Tel: +44 20 7367 0030
Fax: +44 20 7367 0031
Email: london@cains.com

19th Floor, 6 Battery Road
Singapore 049909
Tel: +65 6307 9928
Fax: +65 6307 9929
Email: singapore@cains.com

Directors: A J Corlett, R V Vanderplank, J R G Walton, S F Caine, P B Clucas, M T Edwards and T M Shepherd
Cains is the trading name of Cains Advocates Limited, an incorporated legal practice in the Isle of Man with registered number 102780C.
Registered office: Fort Anne, Douglas, Isle of Man IM1 5PD