# Exhibit E

**[1994–95 CILR 56]**

**IN THE MATTER OF BANK OF CREDIT AND COMMERCE INTERNATIONAL (OVERSEAS) LIMITED
(in liquidation)**

GRAND COURT (Harre, C.J.): January 26th, 1994

*Confidential Relationships—protection of bank's interest—use in foreign proceedings—Confidential Relationships (Preservation) Law, s.3(2)(b)(v) applies to proceedings outside Cayman Islands to which bank a party*

*Confidential Relationships—protection of bank's interest—scope of interest—as against customer Confidential Relationships (Preservation) Law, s.3(2)(b)(v) not confined to transactions for, or with, customer—as against third parties is so confined*

*Courts—Grand Court—precedent—Grand Court normally follows own previous decisions as matter of judicial comity unless obiter or wrong*

The plaintiff bank sought a declaration that it was entitled to disclose confidential information for the purpose of proceedings against the bank's auditors in England.

The plaintiff's liquidators wished to pursue litigation in England against the bank's auditors and named partners and employees of those auditors to recover compensation for alleged negligence, breach of duty and/or breach of contract which resulted in the collapse of the bank and the leaving of liabilities to customers. The bank wished to disclose information, which would be caught by the Confidential Relationships (Preservation) Law, to protect its interests as against these customers and it sought a declaration in the present proceedings that it was empowered to do so under the terms of s.3(2)(b)(v) of that Law, which allowed confidential information to be divulged in "any proceedings, cause or matter" where it was reasonably necessary for the protection of the bank's interest.

The information concerned was contained in documents relating to borrower groups which were alleged to be relevant to the matters involved in the English proceedings. They were not confined to "transactions by the bank for, or with, its customer" within the meaning of the sub-section but extended to such matters as the growth of high-risk activities and the losses incurred; the heavy dependency of the Group in general on a small number of major borrowers or groups of borrowers; and the increasing number of numbered accounts in relation to which there was no recorded identification of the relevant borrower or depositor.

---

1994–95 CILR 57

The plaintiff submitted that (a) the bank was a party to the proceedings through its liquidators; (b) the "proceedings, cause or matter" in which the confidentiality rules did not apply by virtue of s.3(2)(b)(v) were not limited to those commenced in the Cayman Islands; (c) the bank's interest, which it was entitled to protect as against its customers was not limited to "transactions of the bank for, or with, its customer"; and (d) a previously expressed opinion of the Grand Court was *obiter*, in so far as it stated that the "proceedings, cause or matter" were limited to the Cayman Islands and wrong, in so far as it held that in protecting itself against its customer the bank's interest was confined to "transactions of the bank for, or with, its customer."

**Held,** granting the declarations sought:

(1) The plaintiff was entitled to disclose the confidential information for use in the English proceedings, since the bank was a party to the proceedings through its liquidators and the "proceedings, cause or matter" within the meaning of s.3(2)(b)(v) for which the information was to be used did not need to be limited to one arising within the Cayman Islands (page 59, lines 34–44; page 60, lines 39–45).

(2) Similarly, it was entitled to protect its interests and disclose the information concerned under the same provision because the interest to be protected as against customers did not need to be confined to "transactions of the bank for, or with, its customer," since its interest was only confined in this way as against third parties (page 61, line 10 – page 62, line 26).

(3) In reaching these conclusions, the court was prepared to depart from the previously expressed opinions of the Grand Court because, although they would normally be followed as a matter of judicial comity, the first was in fact *obiter* and the other wrong (page 59, lines 4–32; page 62, lines 12–26).

**Cases cited:**
(1) *Att. Gen.* v. *Bank of Nova Scotia*, 1984–85 CILR 418, not followed.
(2) *Huddersfield Police Auth.* v. *Watson*, [1947] K.B. 842; [1947] 2 All E.R. 193, *dictum* of Lord Goddard, C.J. applied.
(3) *Tournier* v. *National Provncl. & Union Bank of England*, [1924] 1 K.B. 461; [1923] All E.R. Rep. 550, applied.
(4) *X A.G.* v. *A Bank*, [1983] 2 All E.R. 464; [1983] 2 Lloyd's Rep. 535, applied.

**Legislation construed:**
Confidential Relationships (Preservation) Law (Law 16 of 1976), s.3(2)(b)(v), as substituted by the Confidential Relationships (Preservation) (Amendment) Law, 1979 (Law 26 of 1979), s.3: The relevant terms of this section are set out at page 58, lines 19–29.

---

1994–95 CILR 58

s.3A(1), as added by the Confidential Relationships (Preservation) (Amendment) Law, 1979 (Law 26 of 1979), s.4:
"Whenever a person intends or is required to give in evidence in, or in connection with, any proceeding being tried, inquired into or determined by any court, tribunal or other authority (whether within or without the Islands) any confidential information within the meaning of this Law, he shall before so doing apply for directions and any adjournment necessary for that purpose may be granted."

*H. St.J. Moses* for the plaintiff;
*I.F. Archie*, *Senior Crown Counsel*, for the Attorney General.

**HARRE, C.J.:** In its application by originating summons the plaintiff asked the court to make a determination with regard to two matters of construction of the Confidential Relationships (Preservation) Law ("the
15    Law") in relation to the seeking, divulging or obtaining of confidential information by the plaintiff in certain English High Court actions against its auditors or any consolidated proceedings arising therefrom.
       The matter concerns s.3(2)(b)(v) which reads as follows:
          "This Law has no application to the seeking, divulging, or
20        obtaining, of confidential information—
             ...
             (b) by or to—
                 ...
                 (v) a bank in any proceedings, cause or matter when and
25                   to the extent to which it is reasonably necessary for
                     the protection of the bank's interest, either as against
                     its customers or as against third parties in respect of
                     transactions of the bank for, or with, its cus-
                     tomer...."
30    The first question for determination is whether the words "any proceedings, cause or matter" refer only to proceedings, causes or matters within the Cayman Islands. That fell for consideration by the former Chief

    Justice, Summerfield, C.J., in *Att. Gen.* v. *Bank of Nova Scotia* (1). The issue before him is set out as follows (1984–85 CILR at 426):

35     "[W]hether the first defendant can rely on s.3(2)(b)(v) for the purpose of making disclosure of the confidential information ... to a United States court on the ground that to do so is reasonably necessary for the protection of the bank's interest."

    The following is the relevant passage from his judgment (*ibid.*, at 429):

40     "The first point that should be made is that, in contrast with s.3A(1), which makes express references to proceedings within and without these Islands, s.3(2)(b)(v) makes no reference to proceedings outside these Islands. In my view s.3(2)(b)(v) has application only in relation to proceedings, causes or matters within these Islands."

45     Mr. Moses asks me to take the view that this and other observations of my

learned predecessor to which I shall refer later were in part *obiter*, in part distinguishable and should not in any event be followed. I would not lightly adopt the last of these alternatives, although it is open to me to do so. The principle is to be found in the following passage from the

5   judgment of Lord Goddard, C.J. in *Huddersfield Police Auth.* v. *Watson* (2) ([1947] K.B. at 848):

    "... I can only say for myself that I think the modern practice, and the modern view of the subject, is that a judge of first instance, though he would always follow the decision of another judge of first

10     instance, unless he is convinced the judgment is wrong, would follow it as a matter of judicial comity. He certainly is not bound to follow the decision of a judge of equal jurisdiction."

    It is by now abundantly a matter of record in these courts that many Cayman banks have customers and employ many professionals outside

15  these Islands. The nature of their business frequently involves litigation of an international kind and their being required to protect their interests, whether against customers or third parties. Actions of this nature may be both complex and protracted with issues possibly involving additional evidence and new parties arising along the way. It would be most onerous

20  for banks to have to make successive applications of uncertain outcome under s.3A of the Confidential Relationships (Preservation) Law during the conduct of litigation of this kind, simply because that litigation was taking place outside the Cayman Islands. The essence of the matter, in my judgment, and the *ratio decidendi* of that part of the judgment of

25  Summerfield, C.J. from which the passage to which I have referred is taken, lies in the question whether or not disclosure is reasonably necessary for the protection of the bank's interests within the terms of s.3(2)(b)(v). That is so whether or not the disclosure is to be to a Cayman court. If that view is right, the words "to a United States court" in the

30  question before Summerfield, C.J. do not go to the main issue and his *dictum* that s.3(2)(b)(v) has application only to proceedings, causes or matters within these Islands may be considered *obiter*. I have come to a

different view of that for the reasons which I have expressed.

 As a matter of drafting I considered whether I should draw the
35 conclusion from the omission of the words "whether within or without
the Islands," which appear in s.3A(1) of the Law, from s.3(2)(b)(v) that
proceedings outside the Islands were intended to be excluded. I concluded
that I should not. Section 3A(1) deals with a very different situation. It
expresses the circumstances under which an application must be made for
40 directions from a judge. Section 3(2)(b)(v) expresses a total exemption, for
a specific purpose, from the application of the Law. The scope of the
exception should not be dependent on territorial considerations but on the
extent to which disclosure is reasonably necessary to protect the bank's
interest and what is the ambit of the interest which it is entitled to protect.
45  That is the question which I now have to determine in relation to a

---

1994–95 CILR 60

second declaration sought by the applicant which I made in the following
amended form:

> "It is hereby declared that the Confidential Relationships (Preservation) Law (as amended) has no application to the seeking,
> 5 divulging, or obtaining, of confidential information, including the
> giving in evidence of confidential information, by the plaintiff in
> English High Court actions CH 1992–B–No. 2754, CH 1993–B–No.
> 1509 and CH 1993–B–No. 1512 (or any consolidated proceedings
> arising therefrom) to the extent that any such disclosure is reasonably
> 10 necessary to protect the interests of the plaintiff."

In the three English actions there referred to, Bank of Credit and
Commerce International (Overseas) Ltd. is the first-named plaintiff and
the relief sought is in respect of, *inter alia*, the audit and preparation of its
accounts. The defendants are firms of auditors alleged to be responsible
15 for negligence, breach of duty and/or breach of contract and named
partners or employees of those firms. The actions have been consolidated
with other actions commenced by other companies in the BCCI Group.

 In relation to this aspect of the matter, I shall now consider the
following passage from the judgment of Summerfield, C.J. in the *Bank of
20 Nova Scotia* case (1) (1984–85 CILR at 429–430):

> "Secondly, although this provision is rather loosely worded, in my
> view it contemplates only proceedings, causes or matters to which
> the bank is a party.... The purpose of this provision is to allow a
> bank, for example, to sue a customer to recover on overdrawn
> 25 accounts or to sue guarantors of an overdraft or to defend
> proceedings relating to disputed accounts or transactions, and reveal
> confidential information relevant to such proceedings.
>
>  Thirdly, the bank's interest which it may protect is in respect of
> (and confined to) transactions of the bank for, or with, its
> 30 customer—and no other interest. One situation this provision does
> not contemplate is one where the bank discloses confidential
> information to a foreign court, *e.g.* in answer to a subpoena issued by

35     that court, or otherwise than in accordance with the provision of the Confidential Relationships (Preservation) Law, in order to escape possible contempt proceedings. Why in the world would the legislature give a bank, and a bank alone, that latitude to undermine the operation of this Law? No reasonable construction of the provision would allow that course."

40     Bank of Credit and Commerce International (Overseas) Ltd. is, through its liquidators, a party to the proceedings in respect of which disclosure has now been sought. I agree with the view of Summerfield, C.J. that s.3(2)(b)(v) contemplates only proceedings, causes or matters to which the bank is a party. But to determine the nature of the bank's interest, in respect of which it is entitled to invoke the provision in such proceedings,

45     needs consideration at rather greater length.

1994–95 CILR 61

    The Confidential Relationships (Preservation) Law is a penal statute. As first enacted, it provided that nothing in it should by implication be deemed to derogate from the rule in *Tournier* v. *National Provncl. & Union Bank of England* (3) which deals with the civil duty of banks to

5     preserve the confidentiality of the business of their customers. When the Law was amended in 1979, that provision was removed and s.3(2)(b)(v) appeared. The intention of that was clearly to seek to remove obscurity as to the precise ambit of the common law rule as applied by reference in a statute which carries penal sanctions.

10     Unfortunately that was not, in my judgment, a very happy legislative exercise. In developing that comment I propose to adopt what was said by Leggat, J. in *X A.G.* v. *A Bank* (4) in respect of *Tournier*. It was this ([1983] 2 All E.R. at 477–478):

       "First, Bankes, L.J. considered in a classic passage what the

15        qualifications are of the contractual duty of secrecy implied in the relationship of banker and customer, remarking that there appeared to be no authority on the point. He said . . . :

          'On principle I think that the qualifications can be classified under four heads: (*a*) where disclosure is under compulsion by

20           law; (*b*) where there is a duty to the public to disclose; (*c*) where the interests of the bank require disclosure; (*d*) where the disclosure is made by the express or implied consent of the customer.'

       In referring in particular to examples of the third class, he

25        mentioned the issue by a bank of a writ claiming payment of an overdraft stating on the face of the writ the amount of the overdraft. In a comparable passage Scrutton, L.J. gave a similar example . . . whilst Atkin, L.J. expressed himself somewhat more widely, saying . . . :

30           'It is difficult to hit upon a formula which will define the maximum of the obligation which must necessarily be implied.

> But I think it safe to say that the obligation not to disclose information such as I have mentioned is subject to the qualification that the bank have the right to disclose such information when, and the extent to which it is reasonably necessary for the protection of the bank's interests, either against their customer or as against third parties in respect of transactions of the bank for or with their customer, or for protecting the bank, or persons interested, or the public, against fraud or crime.'"

Leggatt, J. referred to a submission by counsel to the effect that the duty described by their Lordships in *Tournier* was not absolute and that the first three of Bankes, L.J.'s qualifications or exceptions were only examples of public policy, and that *Tournier* does not constitute a statute and does not fall to be construed as such. I think that is right.

---

1994–95 CILR 62

Unfortunately, the Confidential Relationships (Preservation) Law is a statute and does fall to be construed as such. That task is made no easier because of the ambiguity of the wording of s.3(2)(b)(v), which can be illustrated by the adding of notional commas in the text of the statute at the following alternative points:

*Either*

> "... interests, either as against their customer or as against third parties, in respect of...."

*Or*

> "... interests, either as against their customer or, as against third parties, in respect of...."

In favouring the second construction, I must respectfully differ from what was said by my predecessor in the first sentence of his third conclusion in the *Bank of Nova Scotia* case (1) while entirely agreeing with the rest of that conclusion. My first reason for this view is because the alternative would bring in from the judgment of Atkin, L.J. in *Tournier* (3) a restriction which does not appear in the other judgments of the court in that case; secondly, because it is a more natural construction of the words used; and, most importantly, because it is the only interpretation which is consistent with the less elliptically phrased expression of the principle in the following passage which appears a few lines earlier in the judgment of Atkin, L.J. ([1924] 1 K.B. at 486):

> "But the bank is entitled to secure itself in respect of liabilities it incurs to the customer, or the customer to it, and in respect of liabilities to third parties in respect of the transactions it conducts for or with its customer."

In my view what Atkin, L.J. said there about liabilities to third parties must apply equally to rights against third parties.

I have already briefly described the nature of the English actions referred to in my second declaration on the summons. They are actions

35   against auditors. On March 4th, 1993, the English High Court ordered that five actions, in three of which the company was the principal plaintiff and these are the three referred to in my declaration, be consolidated. There was before me at the hearing of the summons a draft of the consolidated statement of claim in the English proceedings. It gave this court an opportunity to consider the matters there in issue and in respect of which confidential information and documents might be given in evidence. The draft contained schedules of matters which, taken alone or together, were indications that the business of BCCI (Overseas) Ltd. and other companies
40   in the BCCI Group might have been conducted in a manner in which there was a risk of material misstatements resulting from error or fraud. Among those matters were the growth of high-risk activities and the losses incurred; the heavy dependency of the Group in general on a small number of major borrowers or groups of borrowers; and the increasing number of
45   numbered accounts in relation to which there was no recorded identifica

1994–95 CILR 63

tion of the relevant borrower or depositor. These matters, in so far as they relate to BCCI (Overseas) Ltd., are in respect of (though not necessarily confined to) "transactions by the bank for, or with, its customer" and it is in evidence in this application that the bulk of the confidential information
5    as defined by the Confidential Relationships (Preservation) Law is contained in appendices to Schedule 7 of the draft statement of claim, which contain details of borrower groups which are alleged to be relevant to those matters. The appendices purport to set out particulars of imprudent conduct "in relation to each target account of the target
10   borrowers." 17 such target borrowers are identified by name.
     This is an action by the liquidators, based on these allegations, the purpose of which is to recover sums for the benefit principally of the depositors of the bank who have lost so heavily as a result of the activities of the bank and its associated companies. It must be in the bank's interest
15   to recover the maximum possible sum for its creditors in this way. If there are some transactions which may fall outside the banker-customer relationship, they are likely both to be minimal in relation to the vast overall size of this matter and in any event not to involve confidential information as defined in the Law. It is for these reasons that I made my
20   order dated August 27th, 1993.

*Declaration accordingly.*

Attorneys: *Hunter & Hunter* for the plaintiff; *Government Legal Dept.*