# Exhibit H



*Number* 6 *of* 2003

**DATA PROTECTION (AMENDMENT) ACT 2003**

ARRANGEMENT OF SECTIONS

Section

1. Definitions.

2. Amendment of section 1 (interpretation and application of Act) of Principal Act.

3. Amendment of section 2 (collection, processing, keeping, use and disclosure of personal data) of Principal Act.

4. Provisions in relation to processing.

5. Amendment of section 4 (right of access) of Principal Act.

6. Amendment of section 5 (restriction of right of access) of Principal Act.

7. Amendment of section 6 (right of rectification or erasure) of Principal Act.

8. Certain rights of data subjects.

9. Amendment of section 8 (disclosure of personal data in certain cases) of Principal Act.

10. Additional functions of Commissioner.

11. Amendment of section 10 (enforcement of data protection) of Principal Act.

12. Restriction on transfer of personal data outside State.

13. Prior checking of processing by Commissioner.

14. Amendment of section 13 (codes of practice) of Principal Act.

15. Amendment of section 14 (annual report) of Principal Act.

Section

    16.   Amendment of section 16 (the register) of Principal Act.

    17.   Amendment of section 17 (applications for registration) of Principal Act.

    18.   Amendment of section 18 (duration and continuance of registration) of Principal Act.

    19.   Amendment of Section 31 (penalties) of Principal Act.

    20.   Amendment of Second Schedule (the Data Protection Commissioner) to Principal Act.

    21.   Journalism, literature and art.

    22.   Repeals and Revocation.

    23.   Short title, collective citation, construction and commencement.

————————

Acts Referred to

Data Protection Act 1988                                  1988, No. 25

Dentists Act 1985                                        1985, No.  9

Freedom of Information Act 1997                          1997, No. 13

Interpretation Act 1937                                  1937, No. 38

Medical Practitioners Act 1978                           1978, No.  4

National Archives Act 1986                               1986, No. 11

Social Welfare (Consolidation) Act 1993                  1993, No. 27

Statistics Act 1993                                      1993, No. 21



*Number* 6 *of* 2003

---

**DATA PROTECTION (AMENDMENT) ACT 2003**

---

AN ACT TO GIVE EFFECT TO DIRECTIVE 95/46/EC OF THE
EUROPEAN PARLIAMENT AND OF THE COUNCIL OF
24 OCTOBER 1995 ON THE PROTECTION OF INDIVID-
UALS WITH REGARD TO THE PROCESSING OF PER-
SONAL DATA AND ON THE FREE MOVEMENT OF
SUCH DATA, FOR THAT PURPOSE TO AMEND THE
DATA PROTECTION ACT 1988 AND TO PROVIDE FOR
RELATED MATTERS. [10*th April,* 2003]

BE IT ENACTED BY THE OIREACHTAS AS FOLLOWS:

**1.**—In this Act—

Definitions.

''Minister'' means Minister for Justice, Equality and Law Reform;

''the Principal Act'' means the Data Protection Act 1988.

**2.**—Section 1 of the Principal Act is amended—

Amendment of
section 1
(interpretation and
application of Act)
of Principal Act.

　(*a*) in subsection (1)—

　　　(i) by the insertion of the following definitions:

　　　　''‘the *Act of 2003*’ means the *Data Protection
(Amendment) Act 2003*;

　　　　‘automated data’ means information that—

　　　　　(*a*) is being processed by means of equipment
operating automatically in response to
instructions given for that purpose, or

　　　　　(*b*) is recorded with the intention that it should
be processed by means of such
equipment;

　　　　‘blocking’, in relation to data, means so marking the
data that it is not possible to process it for purposes
in relation to which it is marked;

　　　　‘the Directive’ means Directive 95/46/EC of the
European Parliament and of the Council of 24
October 1995 on the protection of individuals with

S.2

regard to the processing of personal data and on the free movement of such data[1];

'the EEA Agreement' means the Agreement on the European Economic Area signed at Oporto on 2 May 1992 as adjusted by the Protocol signed at Brussels on 17 March 1993;

'enactment' means a statute or a statutory instrument (within the meaning of the Interpretation Act 1937);

'the European Economic Area' has the meaning assigned to it by the EEA Agreement;

'manual data' means information that is recorded as part of a relevant filing system or with the intention that it should form part of a relevant filing system;

'relevant filing system' means any set of information relating to individuals to the extent that, although the information is not processed by means of equipment operating automatically in response to instructions given for that purpose, the set is structured, either by reference to individuals or by reference to criteria relating to individuals, in such a way that specific information relating to a particular individual is readily accessible;

'sensitive personal data' means personal data as to—

> (*a*) the racial or ethnic origin, the political opinions or the religious or philosophical beliefs of the data subject,

> (*b*) whether the data subject is a member of a trade union,

> (*c*) the physical or mental health or condition or sexual life of the data subject,

> (*d*) the commission or alleged commission of any offence by the data subject, or

> (*e*) any proceedings for an offence committed or alleged to have been committed by the data subject, the disposal of such proceedings or the sentence of any court in such proceedings;'',

(ii) by the substitution of the following definition for the definition of ''data'':

''data' means automated data and manual data;'',

(iii) by the substitution of the following for the definition of ''direct marketing'':

''direct marketing' includes direct mailing other than direct mailing carried out in the course of political activities by a political party or its members, or a

[1] O.J. No. L 281/38 of 23.11.95, p. 31.

body established by or under statute or a candidate S.2
for election to, or a holder of, elective political
office;'',

(iv) by the substitution of the following definition for the
definition of ''personal data'':

'''personal data' means data relating to a living indi-
vidual who is or can be identified either from the
data or from the data in conjunction with other infor-
mation that is in, or is likely to come into, the pos-
session of the data controller;'',

and

(v) by the substitution of the following definition for the
definition of ''processing'':

'''processing', of or in relation to information or
data, means performing any operation or set of oper-
ations on the information or data, whether or not by
automatic means, including—

(*a*) obtaining, recording or keeping the infor-
mation or data,

(*b*) collecting, organising, storing, altering or
adapting the information or data,

(*c*) retrieving, consulting or using the infor-
mation or data,

(*d*) disclosing the information or data by trans-
mitting, disseminating or otherwise mak-
ing it available, or

(*e*) aligning, combining, blocking, erasing or
destroying the information or data;'',

(*b*) by the insertion of the following subsections after subsection
(3):

''(3A) A word or expression that is used in this Act
and also in the Directive has, unless the context otherwise
requires, the same meaning in this Act as it has in the
Directive.

(3B) (*a*) Subject to any regulations under section 15(2)
of this Act, this Act applies to data controllers
in respect of the processing of personal data
only if—

(i) the data controller is established in the
State and the data are processed in the
context of that establishment, or

(ii) the data controller is established neither
in the State nor in any other state that is
a contracting party to the EEA Agree-
ment but makes use of equipment in the
State for processing the data otherwise
than for the purpose of transit through
the territory of the State.

(*b*) For the purposes of paragraph (*a*) of this sub-section, each of the following shall be treated as established in the State:

    (i) an individual who is normally resident in the State,

    (ii) a body incorporated under the law of the State,

    (iii) a partnership or other unincorporated association formed under the law of the State, and

    (iv) a person who does not fall within subparagraphs (i), (ii) or (iii) of this paragraph, but maintains in the State—

        (I) an office, branch or agency through which he or she carries on any activity, or

        (II) a regular practice,

    and the reference to establishment in any other state that is a contracting party to the EEA Agreement shall be construed accordingly.

(*c*) A data controller to whom paragraph (*a*)(ii) of this subsection applies must, without prejudice to any legal proceedings that could be commenced against the data controller, designate a representative established in the State.

(3C) Section 2 and sections 2A and 2B (which sections were inserted by the *Act of 2003*) of this Act shall not apply to—

(*a*) data kept solely for the purpose of historical research, or

(*b*) other data consisting of archives or departmental records (within the meaning in each case of the National Archives Act 1986),

and the keeping of which complies with such requirements (if any) as may be prescribed for the purpose of safeguarding the fundamental rights and freedoms of data subjects.'',

and

(*c*) by the insertion of the following subsection after subsection (4):

''(5) (*a*) A right conferred by this Act shall not prejudice the exercise of a right conferred by the Freedom of Information Act 1997.

(*b*) The Commissioner and the Information Com- S.2
missioner shall, in the performance of their
functions, co-operate with and provide assist-
ance to each other.''.

**3.**—Section 2 of the Principal Act is amended—

Amendment of
section 2
(collection,
processing, keeping,
use and disclosure
of personal data) of
Principal Act.

(*a*) by the substitution of the following subsection for subsection
(1):

''(1) A data controller shall, as respects personal data
kept by him or her, comply with the following provisions:

(*a*) the data or, as the case may be, the information
constituting the data shall have been
obtained, and the data shall be processed,
fairly,

(*b*) the data shall be accurate and complete and,
where necessary, kept up to date,

(*c*) the data—

(i) shall have been obtained only for one or
more specified, explicit and legitimate
purposes,

(ii) shall not be further processed in a manner
incompatible with that purpose or those
purposes,

(iii) shall be adequate, relevant and not
excessive in relation to the purpose or
purposes for which they were collected
or are further processed, and

(iv) shall not be kept for longer than is neces-
sary for that purpose or those purposes,

(*d*) appropriate security measures shall be taken
against unauthorised access to, or unauthor-
ised alteration, disclosure or destruction of,
the data, in particular where the processing
involves the transmission of data over a net-
work, and against all other unlawful forms of
processing.'',

(*b*) in subsection (5), by the substitution of the following para-
graph for paragraph (*a*):

''(*a*) Subparagraphs (ii) and (iv) of paragraph (*c*) of the
said subsection (1) do not apply to personal data
kept for statistical or research or other scientific
purposes, and the keeping of which complies with
such requirements (if any) as may be prescribed
for the purpose of safeguarding the fundamental
rights and freedoms of data subjects, and'',

(*c*) by the deletion of subsection (6), and

(*d*) by the substitution of the following subsections for subsec-
tion (7):

9

"(7) Where—

(*a*) personal data are kept for the purpose of direct marketing, and

(*b*) the data subject concerned requests the data controller in writing—

(i) not to process the data for that purpose, or

(ii) to cease processing the data for that purpose,

then—

(I) if the request is under paragraph (*b*)(i) of this subsection, the data controller—

(A) shall, where the data are kept only for the purpose aforesaid, as soon as may be and in any event not more than 40 days after the request has been given or sent to him or her, erase the data, and

(B) shall not, where the data are kept for that purpose and other purposes, process the data for that purpose after the expiration of the period aforesaid,

(II) if the request is under paragraph (*b*)(ii) of this subsection, as soon as may be and in any event not more than 40 days after the request has been given or sent to the data controller, he or she—

(A) shall, where the data are kept only for the purpose aforesaid, erase the data, and

(B) shall, where the data are kept for that purpose and other purposes, cease processing the data for that purpose,

and

(III) the data controller shall notify the data subject in writing accordingly and, where appropriate, inform him or her of those other purposes.

(8) Where a data controller anticipates that personal data, including personal data that is required by law to be made available to the public, kept by him or her will be processed for the purposes of direct marketing, the data controller shall inform the persons to whom the data relates that they may object, by means of a request in

writing to the data controller and free of charge, to such S.3
processing.''.

**4.**—The following sections are inserted in the Principal Act after
section 2:

''Processing of
personal data.

    2A.—(1) Personal data shall not be processed
by a data controller unless section 2 of this Act
(as amended by the *Act of 2003*) is complied with
by the data controller and at least one of the fol-
lowing conditions is met:

(*a*) the data subject has given his or her con-
sent to the processing or, if the data
subject, by reason of his or her physi-
cal or mental incapacity or age, is or
is likely to be unable to appreciate the
nature and effect of such consent, it
is given by a parent or guardian or a
grandparent, uncle, aunt, brother or
sister of the data subject and the giv-
ing of such consent is not prohibited
by law,

(*b*) the processing is necessary—

   (i) for the performance of a contract
to which the data subject is a
party,

  (ii) in order to take steps at the
request of the data subject prior
to entering into a contract,

 (iii) for compliance with a legal obli-
gation to which the data control-
ler is subject other than an obli-
gation imposed by contract, or

 (iv) to prevent—

    (I) injury or other damage to the
health of the data subject, or

   (II) serious loss of or damage to
property of the data subject,

or otherwise to protect his or her
vital interests where the seeking
of the consent of the data subject
or another person referred to in
paragraph (*a*) of this subsection is
likely to result in those interests
being damaged,

(*c*) the processing is necessary—

   (i) for the administration of justice,

  (ii) for the performance of a function
conferred on a person by or
under an enactment,

S.4

(iii) for the performance of a function of the Government or a Minister of the Government, or

(iv) for the performance of any other function of a public nature performed in the public interest by a person,

(*d*) the processing is necessary for the purposes of the legitimate interests pursued by the data controller or by a third party or parties to whom the data are disclosed, except where the processing is unwarranted in any particular case by reason of prejudice to the fundamental rights and freedoms or legitimate interests of the data subject.

(2) The Minister may, after consultation with the Commissioner, by regulations specify particular circumstances in which subsection (1)(*d*) of this section is, or is not, to be taken as satisfied.

Processing of sensitive personal data.

2B.—(1) Sensitive personal data shall not be processed by a data controller unless:

(*a*) sections 2 and 2A (as amended and inserted, respectively, by the *Act of 2003*) are complied with, and

(*b*) in addition, at least one of the following conditions is met:

(i) the consent referred to in paragraph (*a*) of subsection (1) of section 2A (as inserted by the *Act of 2003*) of this Act is explicitly given,

(ii) the processing is necessary for the purpose of exercising or performing any right or obligation which is conferred or imposed by law on the data controller in connection with employment,

(iii) the processing is necessary to prevent injury or other damage to the health of the data subject or another person or serious loss in respect of, or damage to, property or otherwise to protect the vital interests of the data subject or of another person in a case where—

(I) consent to the processing cannot be given by or on behalf of the data subject in accordance with section

2A(1)(*a*) (inserted by the S.4
*Act of 2003*) of this Act, or

 (II) the data controller cannot
reasonably be expected to
obtain such consent,

or the processing is necessary to
prevent injury to, or damage to
the health of, another person, or
serious loss in respect of, or damage to, the property of another
person, in a case where such consent has been unreasonably
withheld,

(iv) the processing—

 (I) is carried out in the course of
its legitimate activities by
any body corporate, or any
unincorporated body of persons, that—

  (A) is not established, and
whose activities are not
carried on, for profit,
and

  (B) exists for political,
philosophical, religious
or trade union purposes,

 (II) is carried out with appropriate safeguards for the fundamental rights and freedoms
of data subjects,

 (III) relates only to individuals
who either are members of
the body or have regular
contact with it in connection
with its purposes, and

 (IV) does not involve disclosure of
the data to a third party
without the consent of the
data subject,

(v) the information contained in the
data has been made public as a
result of steps deliberately taken
by the data subject,

(vi) the processing is necessary—

 (I) for the administration of
justice,

 (II) for the performance of a function conferred on a person
by or under an enactment, or

(III) for the performance of a function of the Government or a Minister of the Government,

(vii) the processing—

(I) is required for the purpose of obtaining legal advice or for the purposes of, or in connection with, legal proceedings or prospective legal proceedings, or

(II) is otherwise necessary for the purposes of establishing, exercising or defending legal rights,

(viii) the processing is necessary for medical purposes and is undertaken by—

(I) a health professional, or

(II) a person who in the circumstances owes a duty of confidentiality to the data subject that is equivalent to that which would exist if that person were a health professional,

(ix) the processing is necessary in order to obtain information for use, subject to and in accordance with the Statistics Act 1993, only for statistical, compilation and analysis purposes,

(x) the processing is carried out by political parties, or candidates for election to, or holders of, elective political office, in the course of electoral activities for the purpose of compiling data on people's political opinions and complies with such requirements (if any) as may be prescribed for the purpose of safeguarding the fundamental rights and freedoms of data subjects,

(xi) the processing is authorised by regulations that are made by the Minister and are made for reasons of substantial public interest,

(xii) the processing is necessary for the purpose of the assessment, collection or payment of any tax, duty, levy or other moneys owed or

payable to the State and the data has been provided by the data subject solely for that purpose,

(xiii) the processing is necessary for the purposes of determining entitlement to or control of, or any other purpose connected with the administration of any benefit, pension, assistance, allowance, supplement or payment under the Social Welfare (Consolidation) Act 1993, or any non-statutory scheme administered by the Minister for Social, Community and Family Affairs.

(2) The Minister may by regulations made after consultation with the Commissioner—

(*a*) exclude the application of subsection (1)(*b*)(ii) of this section in such cases as may be specified, or

(*b*) provide that, in such cases as may be specified, the condition in the said subsection (1)(*b*)(ii) is not to be regarded as satisfied unless such further conditions as may be specified are also satisfied.

(3) The Minister may by regulations make such provision as he considers appropriate for the protection of data subjects in relation to the processing of personal data as to—

(*a*) the commission or alleged commission of any offence by data subjects,

(*b*) any proceedings for an offence committed or alleged to have been committed by data subjects, the disposal of such proceedings or the sentence of any court in such proceedings,

(*c*) any act or omission or alleged act or omission of data subjects giving rise to administrative sanctions,

(*d*) any civil proceedings in a court or other tribunal to which data subjects are parties or any judgment, order or decision of such a tribunal in any such proceedings,

and processing of personal data shall be in compliance with any regulations under this subsection.

(4) In this section—

'health professional' includes a registered medical practitioner, within the meaning of the Medical

S.4

Practitioners Act 1978, a registered dentist, within the meaning of the Dentists Act 1985 or a member of any other class of health worker or social worker standing specified by regulations made by the Minister after consultation with the Minister for Health and Children and any other Minister of the Government who, having regard to his or her functions, ought, in the opinion of the Minister, to be consulted;

'medical purposes' includes the purposes of preventive medicine, medical diagnosis, medical research, the provision of care and treatment and the management of healthcare services.

Security measures for personal data.

2C.—(1) In determining appropriate security measures for the purposes of section 2(1)(*d*) of this Act, in particular (but without prejudice to the generality of that provision), where the processing involves the transmission of data over a network, a data controller—

(*a*) may have regard to the state of technological development and the cost of implementing the measures, and

(*b*) shall ensure that the measures provide a level of security appropriate to—

(i) the harm that might result from unauthorised or unlawful processing, accidental or unlawful destruction or accidental loss of, or damage to, the data concerned, and

(ii) the nature of the data concerned.

(2) A data controller or data processor shall take all reasonable steps to ensure that—

(*a*) persons employed by him or her, and

(*b*) other persons at the place of work concerned,

are aware of and comply with the relevant security measures aforesaid.

(3) Where processing of personal data is carried out by a data processor on behalf of a data controller, the data controller shall—

(*a*) ensure that the processing is carried out in pursuance of a contract in writing or in another equivalent form between the data controller and the data processor and that the contract provides that the data processor carries out the processing only on and subject to the instructions of the data controller and that the data processor complies with obligations equivalent

to those imposed on the data control-
ler by section 2(1)(*d*) of this Act,

S.4

(*b*) ensure that the data processor provides
sufficient guarantees in respect of the
technical security measures, and
organisational measures, governing
the processing, and

(*c*) take reasonable steps to ensure com-
pliance with those measures.

*Fair processing of
personal data.*

2D.—(1) Personal data shall not be treated,
for the purposes of section 2(1)(*a*) of this Act, as
processed fairly unless—

(*a*) in the case of data obtained from the
data subject, the data controller
ensures, so far as practicable, that the
data subject has, is provided with, or
has made readily available to him or
her, at least the information specified
in subsection (2) of this section,

(*b*) in any other case, the data controller
ensures, so far as practicable, that the
data subject has, is provided with, or
has made readily available to him or
her, at least the information specified
in subsection (3) of this section—

(i) not later than the time when the
data controller first processes the
data, or

(ii) if disclosure of the data to a third
party is envisaged, not later than
the time of such disclosure.

(2) The information referred to in subsection
(1)(*a*) of this section is:

(*a*) the identity of the data controller,

(*b*) if he or she has nominated a representa-
tive for the purposes of this Act, the
identity of the representative,

(*c*) the purpose or purposes for which the
data are intended to be processed,
and

(*d*) any other information which is neces-
sary, having regard to the specific cir-
cumstances in which the data are or
are to be processed, to enable pro-
cessing in respect of the data to be fair
to the data subject such as infor-
mation as to the recipients or categor-
ies of recipients of the data, as to
whether replies to questions asked for
the purpose of the collection of the
data are obligatory, as to the possible

S.4

consequences of failure to give such replies and as to the existence of the right of access to and the right to rectify the data concerning him or her.

(3) The information referred to in subsection (1)(*b*) of this section is:

(*a*) the information specified in subsection (2) of this section,

(*b*) the categories of data concerned, and

(*c*) the name of the original data controller.

(4) The said subsection (1)(*b*) does not apply—

(*a*) where, in particular for processing for statistical purposes or for the purposes of historical or scientific research, the provision of the information specified therein proves impossible or would involve a disproportionate effort, or

(*b*) in any case where the processing of the information contained or to be contained in the data by the data controller is necessary for compliance with a legal obligation to which the data controller is subject other than an obligation imposed by contract,

if such conditions as may be specified in regulations made by the Minister after consultation with the Commissioner are complied with.''.

Amendment of section 4 (right of access) of Principal Act.

**5.**—Section 4 of the Principal Act is amended—

(*a*) in subsection (1), by the substitution of the following paragraphs for paragraphs (*a*) and (*b*):

''(*a*) Subject to the provisions of this Act, an individual shall, if he or she so requests a data controller by notice in writing—

(i) be informed by the data controller whether the data processed by or on behalf of the data controller include personal data relating to the individual,

(ii) if it does, be supplied by the data controller with a description of—

(I) the categories of data being processed by or on behalf of the data controller,

(II) the personal data constituting the data of which that individual is the data subject,

(III) the purpose or purposes of the processing, S.5 and

(IV) the recipients or categories of recipients to whom the data are or may be disclosed,

(iii) have communicated to him or her in intelligible form—

(I) the information constituting any personal data of which that individual is the data subject, and

(II) any information known or available to the data controller as to the source of those data unless the communication of that information is contrary to the public interest,

and

(iv) where the processing by automatic means of the data of which the individual is the data subject has constituted or is likely to constitute the sole basis for any decision significantly affecting him or her, be informed free of charge by the data controller of the logic involved in the processing,

as soon as may be and in any event not more than 40 days after compliance by the individual with the provisions of this section and, where any of the information is expressed in terms that are not intelligible to the average person without explanation, the information shall be accompanied by an explanation of those terms.

(*b*) A request under paragraph (*a*) of this subsection that does not relate to all of its subparagraphs shall, in the absence of any indication to the contrary, be treated as relating to all of them.",

(*b*) by the insertion of the following subsection after subsection (4):

"(4A) (*a*) Where personal data relating to a data subject consist of an expression of opinion about the data subject by another person, the data may be disclosed to the data subject without obtaining the consent of that person to the disclosure.

(*b*) Paragraph (*a*) of this subsection does not apply—

(i) to personal data held by or on behalf of the person in charge of an institution referred to in section 5(1)(*c*) of this Act and consisting of an expression of opinion by another person about the data subject if the data subject is being or was detained in such an institution, or

(ii) if the expression of opinion referred to in that paragraph was given in confidence or on the understanding that it would be treated as confidential.'',

(*c*) in subsection (8)(*a*), by the insertion after ''in the interests of data subjects'' of ''or in the public interest'', and

(*d*) by the insertion of the following subsections after subsection (8):

''(9) The obligations imposed by subsection (1)(*a*)(iii) (inserted by the *Act of 2003*) of this section shall be complied with by supplying the data subject with a copy of the information concerned in permanent form unless—

(*a*) the supply of such a copy is not possible or would involve disproportionate effort, or

(*b*) the data subject agrees otherwise.

(10) Where a data controller has previously complied with a request under subsection (1) of this section, the data controller is not obliged to comply with a subsequent identical or similar request under that subsection by the same individual unless, in the opinion of the data controller, a reasonable interval has elapsed between compliance with the previous request and the making of the current request.

(11) In determining for the purposes of subsection (10) of this section whether the reasonable interval specified in that subsection has elapsed, regard shall be had to the nature of the data, the purpose for which the data are processed and the frequency with which the data are altered.

(12) Subsection (1)(*a*)(iv) of this section is not to be regarded as requiring the provision of information as to the logic involved in the taking of a decision if and to the extent only that such provision would adversely affect trade secrets or intellectual property (in particular any copyright protecting computer software).

(13) (*a*) A person shall not, in connection with—

(i) the recruitment of another person as an employee,

(ii) the continued employment of another person, or

(iii) a contract for the provision of services to him or her by another person,

require that other person—

(I) to make a request under subsection (1) of this section, or

(II) to supply him or her with data relating to
that other person obtained as a result of
such a request.

(*b*) A person who contravenes paragraph (*a*) of
this subsection shall be guilty of an offence.''.

**6.**—Section 5 of the Principal Act is amended by the insertion in
subsection (1) before paragraph (*h*) of the following paragraph:

Amendment of
section 5
(restriction of right
of access) of
Principal Act.

''(*gg*) kept by the Commissioner or the Information Com-
missioner for the purposes of his or her functions,''.

**7.**—Section 6 of the Principal Act is amended—

(*a*) in subsection (1), by the insertion after ''where appropri-
ate,'' of ''blocked or'', and

(*b*) by the substitution of the following subsection for subsec-
tion (2):

''(2) Where a data controller complies, or is deemed
to have complied, with a request under subsection (1) of
this section, he or she shall, as soon as may be and in any
event not more than 40 days after the request has been
given or sent to him or her, notify—

(*a*) the individual making the request, and

(*b*) if such compliance materially modifies the data
concerned, any person to whom the data were
disclosed during the period of 12 months
immediately before the giving or sending of
the request unless such notification proves
impossible or involves a disproportionate
effort,

of the rectification, blocking, erasure or statement
concerned.''.

**8.**—The following sections are inserted in the Principal Act after
section 6:

''Right of data
subject to object to
processing likely to
cause damage or
distress.

6A.—(1) Subject to subsection (3) and unless
otherwise provided by any enactment, an individ-
ual is entitled at any time, by notice in writing
served on a data controller, to request him or her
to cease within a reasonable time, or not to begin,
processing or processing for a specified purpose
or in a specified manner any personal data in
respect of which he or she is the data subject if
the processing falls within subsection (2) of this
section on the ground that, for specified
reasons—

(*a*) the processing of those data or their pro-
cessing for that purpose or in that
manner is causing or likely to cause
substantial damage or distress to him
or her or to another person, and

S.8

(*b*) the damage or distress is or would be
unwarranted.

(2) This subsection applies to processing that
is necessary—

(*a*) for the performance of a task carried out
in the public interest or in the exercise
of official authority vested in the data
controller or in a third party to whom
the data are or are to be disclosed, or

(*b*) for the purposes of the legitimate
interests pursued by the data control-
ler to whom the data are or are to be
disclosed, unless those interests are
overridden by the interests of the data
subject in relation to fundamental
rights and freedoms and, in particular,
his or her right to privacy with respect
to the processing of personal data.

(3) Subsection (1) does not apply—

(*a*) in a case where the data subject has
given his or her explicit consent to the
processing,

(*b*) if the processing is necessary—

(i) for the performance of a contract
to which the data subject is a
party,

(ii) in order to take steps at the
request of the data subject prior
to his or her entering into a
contract,

(iii) for compliance with any legal obli-
gation to which the data control-
ler or data subject is subject other
than one imposed by contract, or

(iv) to protect the vital interests of the
data subject,

(*c*) to processing carried out by political par-
ties or candidates for election to, or
holders of elective political office, in
the course of electoral activities, or

(*d*) in such other cases, if any, as may be
specified in regulations made by the
Minister after consultation with the
Commissioner.

(4) Where a notice under subsection (1) of this
section is served on a data controller, he or she
shall, as soon as practicable and in any event not
later than 20 days after the receipt of the notice,
serve a notice on the individual concerned—

(*a*) stating that he or she has complied or    S.8
intends to comply with the request
concerned, or

(*b*) stating that he or she is of opinion that
the request is unjustified to any extent
and the reasons for the opinion and
the extent (if any) to which he or she
has complied or intends to comply
with it.

(5) If the Commissioner is satisfied, on the
application to him or her in that behalf of an indi-
vidual who has served a notice under subsection
(1) of this section that appears to the Com-
missioner to be justified, or to be justified to any
extent, that the data controller concerned has
failed to comply with the notice or to comply with
it to that extent and that not less than 40 days
have elapsed since the receipt of the notice by
him or her, the Commissioner may, by an
enforcement notice served on the data controller,
order him or her to take such steps for complying
with the request, or for complying with it to that
extent, as the Commissioner thinks fit and speci-
fies in the enforcement notice, and that notice
shall specify the reasons for the Commissioner
being satisfied as aforesaid.

Rights in relation to
automated decision
taking.

6B.—(1) Subject to subsection (2) of this
section, a decision which produces legal effects
concerning a data subject or otherwise signifi-
cantly affects a data subject may not be based
solely on processing by automatic means of per-
sonal data in respect of which he or she is the data
subject and which is intended to evaluate certain
personal matters relating to him or her such as,
for example (but without prejudice to the gener-
ality of the foregoing), his or her performance at
work, creditworthiness, reliability or conduct.

(2) Subsection (1) of this section does not
apply—

(*a*) in a case in which a decision referred to
in that subsection—

(i) is made in the course of steps
taken—

(I) for the purpose of consider-
ing whether to enter into a
contract with the data
subject,

(II) with a view to entering into
such a contract, or

(III) in the course of performing
such a contract,

or

(ii) is authorised or required by any enactment and the data subject has been informed of the proposal to make the decision, and

(iii) either—

(I) the effect of the decision is to grant a request of the data subject, or

(II) adequate steps have been taken to safeguard the legitimate interests of the data subject by, for example (but without prejudice to the generality of the foregoing), the making of arrangements to enable him or her to make representations to the data controller in relation to the proposal,

or

(*b*) if the data subject consents to the processing referred to in subsection (1).".

Amendment of section 8 (disclosure of personal data in certain cases) of Principal Act.

**9.**—Section 8 of the Principal Act is amended by—

(*a*) the substitution of "processing" for "disclosure" in each place where it occurs, and

(*b*) the deletion of paragraph (*g*).

Additional functions of Commissioner.

**10.**—Section 9 of the Principal Act is amended by the insertion of the following subsections after subsection (1):

"(1A) (*a*) The lawfulness of the processing of personal data (including their transmission to the Central Unit of Eurodac established pursuant to the Council Regulation) in accordance with the Council Regulation shall be monitored by the Commissioner.

(*b*) In paragraph (*a*) of this subsection, 'the Council Regulation' means Council Regulation (EC) No. 2725/2000 of 11 December 2000[2] concerning the establishment of Eurodac for the comparison of fingerprints for the effective application of the Dublin Convention.

(1B) The Commissioner shall arrange for the dissemination in such form and manner as he or she considers appropriate of—

(*a*) any Community finding (within the meaning of subsection (2)(*b*) (inserted by the *Act of 2003*) of section 11 of this Act),

(*b*) any decision of the European Commission or the European Council under the procedure provided for in Article 31(2) of the Directive that is made for the

[2] O.J. No. L 316, 15.12.00, p. 0001-0010.

purposes of paragraph 3 or 4 of Article 26 of the S.10
Directive, and

(*c*) such other information as may appear to him or her to
be expedient to give to data controllers in relation
to the protection of the rights and freedoms of data
subjects in respect of the processing of personal data
in countries and territories outside the European
Economic Area.

(1C) The Commissioner shall be the supervisory authority in
the State for the purposes of the Directive.

(1D) The Commissioner shall also perform any functions in
relation to data protection that the Minister may confer on him
or her by regulations for the purpose of enabling the Govern-
ment to give effect to any international obligations of the
State.''.

**11.**—Section 10 of the Principal Act is amended—

(*a*) in subsection (1)—

(i) in paragraph (*a*), by the deletion of ''by a data con-
troller or a data processor'', and

(ii) in paragraph (*b*), by the substitution of the following
subparagraph for subparagraph (ii):

''(ii) if he or she is unable to arrange, within a
reasonable time, for the amicable resolution
by the parties concerned of the matter the
subject of the complaint, notify in writing the
individual who made the complaint of his or
her decision in relation to it and that the indi-
vidual may, if aggrieved by the decision,
appeal against it to the Court under section
26 of this Act within 21 days from the receipt
by him or her of the notification.'',

(*b*) by the insertion of the following subsection after subsection
(1):

''(1A) The Commissioner may carry out or cause to
be carried out such investigations as he or she considers
appropriate in order to ensure compliance with the pro-
visions of this Act and to identify any contravention
thereof.'',

(*c*) in subsection (2), by the deletion of '', being a data control-
ler or a data processor,'',

(*d*) in subsection (3), by the substitution of the following para-
graph for paragraph (*a*):

''(*a*) to block, rectify, erase or destroy any of the data
concerned, or'',

and

(*e*) in subsection (7), by the substitution of the following for so
much of the subsection as follows paragraph (*a*):

Amendment of
section 10
(enforcement of
data protection) of
Principal Act.

"(*b*) if such compliance materially modifies the data concerned, any person to whom the data were disclosed during the period beginning 12 months before the date of the service of the enforcement notice concerned and ending immediately before such compliance unless such notification proves impossible or involves a disproportionate effort,

of the blocking, rectification, erasure, destruction or statement concerned.".

Restriction on
transfer of personal
data outside State.

**12.**—The following section is substituted for section 11 of the Principal Act:

"**11.**—(1) The transfer of personal data to a country or territory outside the European Economic Area may not take place unless that country or territory ensures an adequate level of protection for the privacy and the fundamental rights and freedoms of data subjects in relation to the processing of personal data having regard to all the circumstances surrounding the transfer and, in particular, but without prejudice to the generality of the foregoing, to—

(*a*) the nature of the data,

(*b*) the purposes for which and the period during which the data are intended to be processed,

(*c*) the country or territory of origin of the information contained in the data,

(*d*) the country or territory of final destination of that information,

(*e*) the law in force in the country or territory referred to in paragraph (*d*),

(*f*) any relevant codes of conduct or other rules which are enforceable in that country or territory,

(*g*) any security measures taken in respect of the data in that country or territory, and

(*h*) the international obligations of that country or territory.

(2) (*a*) Where in any proceedings under this Act a question arises—

(i) whether the adequate level of protection specified in subsection (1) of this section is ensured by a country or territory outside the European Economic Area to which personal data are to be transferred, and

(ii) a Community finding has been made in relation to transfers of the kind in question,

the question shall be determined in accordance with that finding.

(*b*) In paragraph (*a*) of this subsection 'Community finding' means a finding of the European Commission made

for the purposes of paragraph (4) or (6) of Article    S.12
25 of the Directive under the procedure provided for
in Article 31(2) of the Directive in relation to
whether the adequate level of protection specified in
subsection (1) of this section is ensured by a country
or territory outside the European Economic Area.

(3) The Commissioner shall inform the Commission and the
supervisory authorities of the other Member States of any case
where he or she considers that a country or territory outside the
European Economic Area does not ensure the adequate level
of protection referred to in subsection (1) of this section.

(4) (*a*)  This section shall not apply to a transfer of data if—

   (i)  the transfer of the data or the information consti-
        tuting the data is required or authorised by or
        under—

        (I)  any enactment, or

        (II)  any    convention   or   other   instrument
              imposing an international obligation on the
              State,

   (ii)  the data subject has given his or her consent to
         the transfer,

   (iii)  the transfer is necessary—

         (I)  for the performance of a contract between
              the data subject and the data controller, or

         (II)  for the taking of steps at the request of the
               data subject with a view to his or her
               entering into a contract with the data
               controller,

   (iv)  the transfer is necessary—

         (I)  for the conclusion of a contract between the
              data controller and a person other than the
              data subject that—

              (A)  is entered into at the request of the
                   data subject, and

              (B)  is in the interests of the data subject,
                   or

         (II)  for the performance of such a contract,

   (v)  the transfer is necessary for reasons of substantial
        public interest,

   (vi)  the transfer is necessary for the purpose of
         obtaining legal advice or for the purpose of or
         in connection with legal proceedings or prospec-
         tive legal proceedings or is otherwise necessary
         for the purposes of establishing or defending
         legal rights,

(vii) the transfer is necessary in order to prevent injury or other damage to the health of the data subject or serious loss of or damage to property of the data subject or otherwise to protect his or her vital interests, and informing the data subject of, or seeking his or her consent to, the transfer is likely to damage his or her vital interests,

(viii) the transfer is of part only of the personal data on a register established by or under an enactment, being—

(I) a register intended for consultation by the public, or

(II) a register intended for consultation by persons having a legitimate interest in its subject matter,

and, in the case of a register referred to in clause (II) of this subparagraph, the transfer is made, at the request of, or to, a person referred to in that clause and any conditions to which such consultation is subject are complied with by any person to whom the data are or are to be transferred, or

(ix) the transfer has been authorised by the Commissioner where the data controller adduces adequate safeguards with respect to the privacy and fundamental rights and freedoms of individuals and for the exercise by individuals of their relevant rights under this Act or the transfer is made on terms of a kind approved by the Commissioner as ensuring such safeguards.

(*b*) The Commissioner shall inform the European Commission and the supervisory authorities of the other states in the European Economic Area of any authorisation or approval under paragraph (*a*)(ix) of this subsection.

(*c*) The Commissioner shall comply with any decision of the European Commission under the procedure laid down in Article 31.2 of the Directive made for the purposes of paragraph 3 or 4 of Article 26 of the Directive.

(5) The Minister may, after consultation with the Commissioner, by regulations specify—

(*a*) the circumstances in which a transfer of data is to be taken for the purposes of subsection (4)(*a*)(v) of this section to be necessary for reasons of substantial public interest, and

(*b*) the circumstances in which such a transfer which is not required by or under an enactment is not to be so taken.

(6) Where, in relation to a transfer of data to a country or territory outside the European Economic Area, a data controller adduces the safeguards for the data subject concerned referred to in subsection (4)(*a*)(ix) of this section by means of a contract embodying the contractual clauses referred to in paragraph 2 or 4 of Article 26 of the Directive, the data subject shall have the same right—

    (*a*) to enforce a clause of the contract conferring rights on him or her or relating to such rights, and

    (*b*) to compensation or damages for breach of such a clause,

that he or she would have if he or she were a party to the contract.

(7) The Commissioner may, subject to the provisions of this section, prohibit the transfer of personal data from the State to a place outside the State unless such transfer is required or authorised by or under any enactment or required by any convention or other instrument imposing an international obligation on the State.

(8) In determining whether to prohibit a transfer of personal data under this section, the Commissioner shall also consider whether the transfer would be likely to cause damage or distress to any person and have regard to the desirability of facilitating international transfers of data.

(9) A prohibition under subsection (7) of this section shall be effected by the service of a notice (referred to in this Act as a prohibition notice) on the person proposing to transfer the data concerned.

(10) A prohibition notice shall—

    (*a*) prohibit the transfer concerned either absolutely or until the person aforesaid has taken such steps as are specified in the notice for protecting the interests of the data subjects concerned,

    (*b*) specify the time when it is to take effect,

    (*c*) specify the grounds for the prohibition, and

    (*d*) subject to subsection (12) of this section, state that the person concerned may appeal to the Court under section 26 of this Act against the prohibition specified in the notice within 21 days from the service of the notice on him or her.

(11) Subject to subsection (12) of this section, the time specified in a prohibition notice for compliance with the prohibition specified therein shall not be expressed to expire before the end of the period of 21 days specified in subsection (10)(*d*) of this section and, if an appeal is brought against the prohibition, the prohibition need not be complied with and subsection (15) of this section shall not apply in relation thereto, pending the determination or withdrawal of the appeal.

(12) If the Commissioner—

S.12

S.12

　　　　(*a*) by reason of special circumstances, is of opinion that a
　　　　　　prohibition specified in a prohibition notice should
　　　　　　be complied with urgently, and

　　　　(*b*) includes a statement to that effect in the notice,

subsections (10)(*d*) and (11) of this section shall not apply in
relation to the notice but the notice shall contain a statement of
the effect of the provisions of section 26 (other than subsection
(3)) of this Act and shall not require compliance with the pro-
hibition before the end of the period of 7 days beginning on the
date on which the notice is served.

　　(13) The Commissioner may cancel a prohibition notice and,
if he or she does so, shall notify in writing the person on whom
it was served accordingly.

　　(14) (*a*) This section applies, with any necessary modifi-
　　　　　　cations, to a transfer of information from the State
　　　　　　to a place outside the State for conversion into
　　　　　　personal data as it applies to a transfer of personal
　　　　　　data from the State to such a place.

　　　　(*b*) In paragraph (*a*) of this subsection 'information'
　　　　　　means information (not being data) relating to a
　　　　　　living individual who can be identified from it.

　　(15) A person who, without reasonable excuse, fails or ref-
uses to comply with a prohibition specified in a prohibition
notice shall be guilty of an offence.''.

Prior checking of
processing by
Commissioner.

　　**13.**—The following section is inserted into the Act of 1988 after
section 12:

　　''12A.—(1) This section applies to any processing that is of
a prescribed description, being processing that appears to the
Commissioner to be particularly likely—

　　　　(*a*) to cause substantial damage or substantial distress to
　　　　　　data subjects, or

　　　　(*b*) otherwise significantly to prejudice the rights and free-
　　　　　　doms of data subjects.

　　(2) The Commissioner, on receiving—

　　　　(*a*) an application under section 17 of this Act by a person
　　　　　　to whom section 16 of this Act applies for regis-
　　　　　　tration in the register and any prescribed infor-
　　　　　　mation and any other information that he or she may
　　　　　　require, or

　　　　(*b*) a request from a data controller in that behalf,

shall consider and determine—

　　　　(i) whether any of the processing to which the application
　　　　　　or request relates is processing to which this section
　　　　　　applies,

(ii) if it does, whether the processing to which this section
applies is likely to comply with the provisions of this
Act.

(3) Subject to subsection (4) of this section, the Com-
missioner shall, within the period of 90 days from the day on
which he or she receives an application or a request referred to
in subsection (2) of this section, serve a notice on the data con-
troller concerned stating the extent to which, in the opinion of
the Commissioner, the proposed processing is likely or unlikely
to comply with the provisions of this Act.

(4) Before the end of the period referred to in subsection
(3), the Commissioner may, by reason of special circumstances,
extend that period once only, by notice in writing served on the
data controller concerned, by such further period not exceeding
90 days as the Commissioner may specify in the notice.

(5) If, for the purposes of his or her functions under this
section, the Commissioner serves an information notice on the
data controller concerned before the end of the period referred
to in subsection (3) of this section or that period as extended
under subsection (4) of this section—

(*a*) the period from the date of service of the notice to the
date of compliance with the requirement in the
notice, or

(*b*) if the requirement is set aside under section 26 of this
Act, the period from the date of such service to the
date of such setting aside,

shall be added to the period referred to in the said subsection
(3) or that period as so extended as aforesaid.

(6) Processing to which this section applies shall not be car-
ried on unless—

(*a*) the data controller has—

(i) previously made an application under section 17
of this Act and furnished the information speci-
fied in that section to the Commissioner, or

(ii) made a request under subsection (2) of this
section,

and

(*b*) the data controller has complied with any information
notice served on him or her in relation to the matter,
and

(*c*) (i) the period of 90 days from the date of the receipt of
the application or request referred to in subsec-
tion (3) of this section (or that period as
extended under subsections (4) and (5) of this
section or either of them) has elapsed without
the receipt by the data controller of a notice
under the said subsection (3), or

(ii) the data controller has received a notice under the
said subsection (3) stating that the particular

processing proposed to be carried on is likely to comply with the provisions of this Act, or

(iii) the data controller—

(I) has received a notice under the said subsection (3) stating that, if the requirements specified by the Commissioner (which he or she is hereby authorised to specify) and appended to the notice are complied with by the data controller, the processing proposed to be carried on is likely to comply with the provisions of this Act, and

(II) has complied with those requirements.

(7) A person who contravenes subsection (6) of this section shall be guilty of an offence.

(8) An appeal against a notice under subsection (3) of this section or a requirement appended to the notice may be made to and heard and determined by the Court under section 26 of this Act and that section shall apply as if such a notice and such a requirement were specified in subsection (1) of the said section 26.

(9) The Minister, after consultation with the Commissioner, may by regulations amend subsections (3), (4) and (6) of this section by substituting for the number of days for the time being specified therein a different number specified in the regulations.

(10) A data controller shall pay to the Commissioner such fee (if any) as may be prescribed in respect of the consideration by the Commissioner, in relation to proposed processing by the data controller, of the matters referred to in paragraphs (i) and (ii) of subsection (2) of this section and different fees may be prescribed in relation to different categories of processing.

(11) In this section a reference to a data controller includes a reference to a data processor.''.

Amendment of
section 13 (codes of
practice) of
Principal Act.

**14.**—(1) Section 13 of the Principal Act is amended—

(*a*) by the substitution of the following subsection for subsection (2):

''(2) The Commissioner shall—

(*a*) where a code of practice (referred to subsequently in this section as a code) so prepared is submitted to him or her for consideration, consider the code and, after such consultation with such data subjects or persons representing data subjects and with the relevant trade associations or other bodies aforesaid as appears to him or her to be appropriate—

(i) if he or she is of opinion that the code provides for the data subjects concerned a measure of protection with regard to

personal data relating to them that con- S.14
forms with that provided for by section 2,
sections 2A to 2D (inserted by the *Act of
2003*) and sections 3 and 4 (other than
subsection (8)) and 6 of this Act, approve
of the code and encourage its dissemi-
nation to the data controllers concerned,
and

(ii) in any event notify the association or body
concerned of his or her decision to
approve or not to approve the code,

(*b*) where he or she considers it necessary or desir-
able to do so and after such consultation with
any trade associations or other bodies
referred to in subsection (1) of this section
having an interest in the matter and data sub-
jects or persons representing data subjects as
he or she considers appropriate, prepare, and
arrange for the dissemination to such persons
as he or she considers appropriate of, codes
of practice for guidance as to good practice in
dealing with personal data, and subsection (3)
of this section shall apply to a code of practice
prepared under this subsection as it applies to
a code,

(*c*) in such manner and by such means as he or she
considers most effective for the purposes of
this paragraph, promote the following of good
practice by data controllers and, in particular,
so perform his or her functions under this Act
as to promote compliance with this Act by
data controllers,

(*d*) arrange for the dissemination in such form and
manner as he or she considers appropriate of
such information as appears to him or her to
be expedient to give to the public about the
operation of this Act, about the practices in
processing of personal data (including com-
pliance with the requirements of this Act)
that appear to the Commissioner to be desir-
able having regard to the interests of data
subjects and other persons likely to be
affected by such processing and about other
matters within the scope of his or her func-
tions under this Act, and may give advice to
any person in relation to any of those
matters.'',

and

(*b*) by the insertion of the following subsections after subsection
(4):

''(5) The Commissioner shall be paid by a person in
relation to whom a service is provided under this section
such fee (if any) as may be prescribed and different fees
may be prescribed in relation to different such services
and different classes of persons.

(6) In proceedings in any court or other tribunal, any provision of a code, or a code of practice, approved under subsection (3) of this section that appears to the court or other tribunal concerned to be relevant to the proceedings may be taken into account in determining the question concerned.''.

(2) A code of practice approved under subsection (2) of the said section 13 and in force immediately before the commencement of this section shall continue in force after such commencement as if approved under subsection (2) (inserted by this section) of section 13 of the Principal Act.

**Amendment of section 14 (annual report) of Principal Act.**

**15.**—Section 14 of the Principal Act is amended by the insertion of the following subsection after subsection (2):

''(3) For the purposes of the law of defamation, a report under subsection (1) shall be absolutely privileged.''.

**Amendment of section 16 (the register) of Principal Act.**

**16.**—Section 16 of the Act of 1988 is amended by the substitution of the following subsection for subsection (1):

''(1) In this section 'person to whom this section applies' means a data controller and a data processor (other than such (if any) categories of data controller and data processor as may be specified in regulations made by the Minister after consultation with the Commissioner) except in so far as—

(*a*) they carry out—

(i) processing whose sole purpose is the keeping in accordance with law of a register that is intended to provide information to the public and is open to consultation either by the public in general or by any person demonstrating a legitimate interest,

(ii) processing of manual data (other than such categories, if any, of such data as may be prescribed), or

(iii) any combination of the foregoing categories of processing,

or

(*b*) the data controller is a body that is not established or conducted for profit and is carrying out processing for the purposes of establishing or maintaining membership of or support for the body or providing or administering activities for individuals who are either members of the body or have regular contact with it.''.

**Amendment of section 17 (applications for registration) of Principal Act.**

**17.**—Section 17 of the Principal Act is amended—

(*a*) in subsection (1)—

(i) by the substitution of the following paragraph for paragraph (*b*):

"(*b*) Where a data controller intends to keep personal data for two or more related purposes, he or she shall make an application for registration in respect of those purposes and, subject to the provisions of this Act, entries shall be made in the register in accordance with any such application,",

and

(ii) by the insertion of the following paragraph after paragraph (*b*):

"(*c*) Where a data controller intends to keep personal data for two or more unrelated purposes, he shall make an application for separate registration in respect of each of those purposes and, subject to the provisions of this Act, entries shall be made in the register in accordance with each such application.",

and

(*b*) by the substitution of the following subsection for subsection (3):

"(3) The Commissioner shall not accept such an application for registration as aforesaid from a data controller who keeps sensitive personal data unless he or she is of opinion that appropriate safeguards for the protection of the privacy of the data subjects are being, and will continue to be, provided by him or her.".

**18.**—Section 18 of the Principal Act is amended by the substitution of the following subsection for subsection (2):

"(2) The prescribed period (which shall not be less than one year) shall be calculated—

(*a*) in the case of a first registration from the date on which the relevant entry was made in the register, and

(*b*) in the case of a registration which has been continued under this section, from the day following the expiration of the latest prescribed period.".

**19.**—Section 31 of the Principal Act is amended in subsection (1) by—

(*a*) in paragraph (*a*), the substitution of "€3,000" for "£1,000", and

(*b*) in paragraph (*b*), the substitution of "€100,000" for "£50,000".

**20.**—The Second Schedule to the Principal Act is amended by the insertion of the following paragraph after paragraph 9:

"10. (1) A person who holds or held the office of Commissioner or who is or was a member of the staff of the Commissioner shall not disclose to a person other than the Commissioner or such a member any information that is obtained by him or her in his capacity as Commissioner or as

S.17

Amendment of section 18 (duration and continuance of registration) of Principal Act.

Amendment of section 31 (penalties) of Principal Act.

Amendment of Second Schedule (the Data Protection Commissioner) to Principal Act.

such a member that could reasonably be regarded as confidential without the consent of the person to whom it relates.

(2) A person who contravenes subparagraph (1) of this paragraph shall be guilty of an offence.''.

**21.**—The following section is inserted into the Principal Act after section 22:

''**22A.**—(1) Personal data that are processed only for journalistic, artistic or literary purposes shall be exempt from compliance with any provision of this Act specified in subsection (2) of this section if—

(*a*) the processing is undertaken solely with a view to the publication of any journalistic, literary or artistic material,

(*b*) the data controller reasonably believes that, having regard in particular to the special importance of the public interest in freedom of expression, such publication would be in the public interest, and

(*c*) the data controller reasonably believes that, in all the circumstances, compliance with that provision would be incompatible with journalistic, artistic or literary purposes.

(2) The provisions referred to in subsection (1) of this section are—

(*a*) section 2 (as amended by the *Act of 2003*), other than subsection (1)(*d*),

(*b*) sections 2A, 2B and 2D (which sections were inserted by the *Act of 2003*),

(*c*) section 3,

(*d*) sections 4 and 6 (which sections were amended by the *Act of 2003*), and

(*e*) sections 6A and 6B (which sections were inserted by the *Act of 2003*).

(3) In considering for the purposes of subsection (1)(*b*) of this section whether publication of the material concerned would be in the public interest, regard may be had to any code of practice approved under subsections (1) or (2) of section 13 (as amended by the *Act of 2003*) of this Act.

(4) In this section 'publication', in relation to journalistic, artistic or literary material, means the act of making the material available to the public or any section of the public in any form or by any means.''.

**22.**—(1) Section 23 and subsections (3), (4) and (5) of section 24 and the Third Schedule of the Principal Act are repealed.

(2) The European Communities (Data Protection) Regulations 2001 (S.I. No. 626 of 2001) are hereby revoked.

**23.**—(1) This Act may be cited as the Data Protection (Amendment) Act 2003.

Short title, collective citation, construction and commencement.

(2) This Act and the Principal Act may be cited together as the Data Protection Acts 1988 and 2003 and shall be construed together as one.

(3) Subject to the subsequent provisions of this section, this Act shall come into operation on such day or days as, by order or orders made by the Minister under this section, may be fixed therefor either generally or with reference to any particular purpose or provision and different days may be so fixed for different purposes and different provisions including the application of *section 22(1)* to different provisions specified therein.

(4) This Act, in so far as it—

    (*a*) amends section 2 of the Principal Act and applies it to manual data, and

    (*b*) inserts sections 2A and 2B into that Act,

comes into operation on 24 October 2007 in respect of manual data held in relevant filing systems on the passing of this Act.

(5) Notwithstanding *subsection (4)*, a data controller shall, if so requested in writing by a data subject when making a request under section 4 of the Principal Act—

    (*a*) rectify, erase, block or destroy any data relating to him or her which are incomplete or inaccurate, or

    (*b*) cease holding manual data relating to him or her in a way incompatible with the legitimate purposes pursued by the data controller.

BAILE ÁTHA CLIATH
ARNA FHOILSIÚ AG OIFIG AN tSOLÁTHAIR
Le ceannach díreach ón
OIFIG DHÍOLTA FOILSEACHÁN RIALTAIS,
TEACH SUN ALLIANCE, SRÁID THEACH LAIGHEAN, BAILE ÁTHA CLIATH 2,
nó tríd an bpost ó
FOILSEACHÁIN RIALTAIS, AN RANNÓG POST-TRÁCHTA,
51 FAICHE STIABHNA, BAILE ÁTHA CLIATH 2,
(Teil: 01 - 6476834/35/36/37; Fax: 01 - 6476843)
nó trí aon díoltóir leabhar.
_____
DUBLIN
PUBLISHED BY THE STATIONERY OFFICE
To be purchased directly from the
GOVERNMENT PUBLICATIONS SALE OFFICE,
SUN ALLIANCE HOUSE, MOLESWORTH STREET, DUBLIN 2,
or by mail order from
GOVERNMENT PUBLICATIONS, POSTAL TRADE SECTION,
51 ST. STEPHEN'S GREEN, DUBLIN 2,
(Tel: 01 - 6476834/35/36/37; Fax: 01 - 6476843)
or through any bookseller.

€4.06

Wt. 513. 1,250. 4/03. Cahill. (X44346). Gr. 30-15.

ISBN 0-7557-3907-8

9 780755 739073