# EXHIBIT A

**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
David J. Molton
212-209-4800

*Attorneys for the Foreign Representatives*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**FAIRFIELD SENTRY LIMITED, et al.,**<br><br>    **Debtors in Foreign Proceedings.** | ) Chapter 15 Case<br>)<br>) **Case No. 10-13164**<br>) **(SMB)**<br>)<br>) **Jointly Administered**<br>) |
| **FAIRFIELD SENTRY LIMITED (IN LIQUIDATION) and FAIRFIELD SIGMA LIMITED (IN LIQUIDATION), acting by and through the Foreign Representatives thereof, and KENNETH KRYS and CHARLOTTE CAULFIELD, solely in their capacities as Foreign Representatives and Liquidators thereof,**<br><br>                                        **Plaintiffs,**<br><br>                        **-against-**<br><br>**ABN AMRO SCHWEIZ AG a/k/a ABN AMRO (SWITZERLAND) AG, ADLER AND CO PRIVATBANK AG,        ALLIANZBANK        SPA/UNIFORTUNE CONSERVATIVE        SIDE        POCKET,        ALTERNATIVE INVESTMENT STRATEGIES, ARSENAL SPC, ARSENAL SPC OBO GLASGOW SEG PORT, BANCA ARNER SA, BANCA UNIONE DI CREDITO, BANK HAPOALIM SWITZERLAND LTD., BANK JULIUS BAER & CO. LTD., BANK SARASIN & CIE, BANQUE CANTONALE VAUDOISE, BANQUE CRAMER & CIE SA, BBVA (SUISSE) SA, BCV AMC DEFENSIVE AL FUND, BNP PARIBAS (SUISSE) SA, BNP PARIBAS (SUISSE) SA EX FORTIS, BNP PARIBAS (SUISSE) SA PRIVATE, BSI AG, BSI EX BANCA DEL GOTTARDO, CACEIS BANK LUXEMBOURG, CBB (BVI)/ THE ALKIMA FUND, CBT GEMS LOW VOL REG, COMPAGNIE BANCAIRE HELVETIQUE, CENTRUM BANK AG (AMS), CLARIDEN LEU LTD., CORNER BANCA SA, CREDIT SUISSE AG** | )<br>)<br>)<br>)<br>)<br>) **Adv. Pro. No. 10-03635**<br>) **(SMB)**<br>)<br>) **FOURTH AMENDED**<br>) **COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

REDACTED WITH REDACT-IT

| | |
|---|---|
| **ZURICH, DEXIA BANQUE INTERNATIONAL A LUXEMBOURG, DRESDNER BANK SCHWEIZ, EFG BANK SA SWITZERLAND, EFG EUROFINANCIER D'INVEST MCL, ENDURANCE ABSOLUTE LTD. MASTER, FAIRFIELD INVESTMENT GCI, FAIRFIELD INVESTMENT FUND LTD., FALCON PRIVATE BANK, FIF ADVANCED LTD., FINTER BANK ZURICH, HARMONY CAPITAL FUND LTD., HSBC, IHAG HANDELSBANK AG, INCORE BANK AG, KARASEL ENHANCED PORTFOLIO, KARLA MULTISTRATEGIES LTD., KBC INVESTMENTS LTD., LGT BANK IN LIECHTENSTEIN AG, LIECHTENSTEINISCHE LB REINVEST AMS, LLOYDS TSB BANK GENEVA, LOMBARD ODIER DARIER HENTSCH & CIE, LONGBOAT LTD., MASTER CAPITAL AND HEDGE FUND, NATIONAL BANK OF KUWAIT, NBK BANQUE PRIVEE SUISSE SA, PICTET & CIE, PKB PRIVATBANK AG, PRIVATE SPACE LTD., QUASAR FUNDS SPC a/k/a QUASAR FUND SPC CLASS A AND CLASS B CGCNV, RBC DEXIA INVESTOR SERVICE JULIUS BAER SICAV, RBS COUTTS BANK LTD., RICHOURT AAA MULTISTRATEGIES, ROTHSCHILD BANK AG ZURICH (DUBLIN) a/k/a ROTHSCHILD BANK AG, ROTHSCHILD BANK GENEVA (DUBLIN), ROTHSCHILD LUGANO DUBLIN a/k/a BANCA PRIVATA EDMOND DE ROTHSCHILD LUGANO S.A., SELLA BANK AG, SIS SEEGANINTERSETTLE, SIX SIS LTD., SOCIETE GENERALE BANK & TRUST, SOUNDVIEW FUND, SWISSCANTO FD CENTRE CLIENTS A/C, T1 GLOBAL FUND LTD., UBS AG NEW YORK, UBS AG ZURICH, UBS JERSEY NOMINEES, VERWALTUNGS UND PRIVAT-BANK AG AKTIENGESELLSCHAFT (AMS), VORARLBERGER LANDES UND HYPOTHEKENBANK AKTIENGESELLSCHAFT and BENEFICIAL OWNERS OF ACCOUNTS HELD IN THE NAME OF CGC NA 1-1000,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) ) ) |

        Fairfield Sentry Limited ("Sentry"), and Fairfield Sigma Limited ("Sigma"), by and through Kenneth Krys and Charlotte Caulfield (together with their predecessors, the "Foreign Representatives"), and Kenneth Krys and Charlotte Caulfield (together with Sentry and Sigma, the "Plaintiffs"), solely in their capacities as the Liquidators of Sentry and Sigma and the

REDACTED WITH REDACT-IT

Foreign Representatives of the liquidation proceedings involving Sentry, Sigma, and Fairfield Lambda Limited ("Lambda," together with Sentry and Sigma, the "Funds" or the "Debtors") pending before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands (the "BVI Court"), for their complaint against Defendants, allege the following based on personal knowledge or information derived from the Funds' books and records or from other sources, including, *inter alia*, court filings and statements of governmental agencies and other parties.

## PRELIMINARY STATEMENT

1.      This action and similar actions are brought by the Plaintiffs, with the approval of the foreign court having jurisdiction over the matter, to recover payments made to shareholders for the redemption of shares in the Funds prior to December 2008.

2.      The Funds were created as a means for private investment in managed accounts with Bernard L. Madoff Investment Securities LLC ("BLMIS"), the brokerage business that Bernard L. Madoff used to perpetrate his massive Ponzi scheme.  Sentry was the largest of all so-called "feeder funds" to maintain accounts with BLMIS.  Sigma and Lambda were indirect BLMIS feeder funds established for foreign currency investments (respectively, Euro and Swiss Franc investments) through purchases of shares of Sentry.  Sentry's account statements with BLMIS as of the end of October 2008 showed in excess of $6 billion of assets supposedly held by BLMIS for Sentry.  As stated in their offering materials, the Funds' investment objective was to achieve capital appreciation of assets through investments in BLMIS (directly, in the case of Sentry; and indirectly, through Sentry, in the cases of Sigma and Lambda).

3.      It is now known that these types of feeder funds were essential to the perpetration of Madoff's Ponzi scheme.  In order for the Ponzi scheme to operate, Madoff required a

2

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 5 of 80

REDACTED WITH REDACT-IT

continuous flow of new investors and investments to be able to satisfy redemption requests from early investors.  Feeder funds, such as Sentry (which was a direct feeder fund into BLMIS), and Sigma and Lambda (which were indirect feeder funds, through Sentry, into BLMIS), brought new investors into this scheme, allowing Madoff to make payments to early investors and thereby creating and perpetuating the illusion that BLMIS was engaged in a successful investment strategy and actively trading securities.

4.      From the Funds' inception until the disclosure of Madoff's fraud in December 2008, during most relevant times, substantially all cash, net of fees and expenses, raised by the Funds through the sale of their shares was transferred (either directly in the case of Sentry or indirectly through Sentry in the cases of Sigma and Lambda) to BLMIS for investment in accounts managed by Madoff.  Prior to December 2008, the voting, participating shares of Sentry ($.01 par value per share), Sigma (€.01 par value per share), and Lambda (CHF.01 par value per share) (the "Shares"), were redeemable for a price equal to the applicable Fund's "Net Asset Value."  Net Asset Value was to be determined, in accordance with applicable accounting standards, as the value of the respective assets of Sentry, Sigma, and Lambda divided by the number of shares outstanding in each Fund, net of certain expenses ("Net Asset Value").

5.      From time to time, in order to make payments to investors for the redemption of Shares ("Redemption Payments"), Sentry generally made withdrawals from its BLMIS accounts. On occasion, Sentry made Redemption Payments directly from amounts on hand invested by other subscribers in the Funds.  At all relevant times, the Funds believed payments that Sentry received from BLMIS represented the proceeds of sales of securities and/or investments held by BLMIS for Sentry.  The amount, per share, paid by the Funds to shareholders for each Share redeemed was to be equal to the per share Net Asset Value, which was calculated based

principally on the assets that the Funds believed were being held, and investments that were being made, by BLMIS for Sentry's account.

6.    As the world now knows, Madoff was operating a massive Ponzi scheme through BLMIS.  Thus, at all relevant times, the money that Sentry transferred to BLMIS was not invested, but, rather, was used by Madoff to pay other BLMIS investors or was otherwise misappropriated by Madoff for unauthorized uses.  Further, none of the securities shown on statements provided to Sentry by BLMIS were in fact purchased for Sentry.  Additionally, none of the amounts withdrawn by Sentry from its accounts with BLMIS were proceeds of sales of securities or other investments.  Instead, such amounts represented the monies of more recent investors into the Madoff scheme.

7.    In light of the fraudulent nature of BLMIS and its operation as a massive Ponzi scheme, at all relevant times the assets purportedly held at BLMIS for Sentry were non-existent, and the Funds were insolvent at the time Redemption Payments were made or they were rendered insolvent by those payments.  As a result, at all relevant times, the Net Asset Value of the Shares redeemed was miscalculated, and Redemption Payments were mistakenly made for amounts far in excess of the Net Asset Value of Shares redeemed that would have been calculated based upon the true facts existing at any relevant time.

8.    At all relevant times, all payments made from BLMIS to Sentry and other feeder funds and investors were made by Madoff to perpetuate his Ponzi scheme and avoid detection of his fraud.  Similarly, the Redemption Payments that the Funds made to redeeming shareholders were not made in the ordinary course of any business or for any legitimate purposes.  Those Redemption Payments did not conform to or follow the terms of the Funds' Subscription Agreements, Articles of Association and/or other offering documents, as they were based upon

4

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 7 of 80

REDACTED WITH REDACT-IT

Net Asset Values that were not calculated based upon the true facts existing at any relevant time, and because, more generally, the Redemption Payments represented the proceeds arising from investment in BLMIS (or a substitute therefor, in the form of subscription monies from other investors in the Funds, used as a shortcut to investing subscription monies with BLMIS and simultaneously withdrawing monies from BLMIS), which the world now knows was operated by Madoff as a Ponzi scheme.  These payments were crucial in perpetuating the Ponzi scheme and maintaining the illusion that Madoff was making actual investments and employing a successful investment strategy.

9.    During the period from and after April 20, 2004, through November 19, 2008, following the receipt by Sentry and Sigma of notices of redemption, Sentry and Sigma made Redemption Payments to accounts held in the name of CGC NA (the "Citco Subscriber") aggregating USD $51,929,665.41.

10.    At the time such payments were made, Sentry and Sigma mistakenly believed that such payments were in the amount of the Net Asset Value of the Shares tendered at the time of redemption.  In fact, however, as stated, the Redemption Payments made to the Citco Subscriber far exceeded the Net Asset Value of Shares redeemed that would have been calculated based on the true facts existing at that time or any relevant time.  Moreover, these Redemption Payments did not, as Sentry and Sigma intended, represent the proceeds arising from the profitability of or to continue investment in BLMIS.  Instead, any amounts obtained directly or indirectly by Sentry and Sigma from BLMIS to make Redemption Payments to the Citco Subscriber generally were proceeds of Madoff's Ponzi scheme, obtained from other BLMIS investors or other Sentry investors invested in BLMIS.

REDACTED WITH REDACT-IT

11.     Accordingly, the Funds' actual assets are, and at relevant times were, far less than the amount needed to satisfy their liabilities and the claims that have been or may be asserted against them, and, at all relevant times, the Funds were unable to pay their debts as they fell or would fall due.   Indeed, at the time the Redemptions Payments were made, the Funds had insufficient assets from which to pay debts as they fell or would fall due.

12.     In particular, claims had been previously asserted against the Funds in actions commenced by Irving H. Picard, the Trustee appointed by the United States District Court for the Southern District of New York for the liquidation of BLMIS (the "BLMIS Trustee"), in an adversary proceeding pending before the United States Bankruptcy Court of the Southern District of New York, Picard v. Fairfield Sentry Limited, et al., No. 08-01789 (SMB) (the "BLMIS Adversary Proceeding").   As set forth in the complaint filed in the BLMIS Adversary Proceedings, the BLMIS Trustee sought to recover from the Funds, on preference and fraudulent transfer grounds, approximately $3.2 billion.   This amount was alleged to have been transferred to the Funds from BLMIS, directly (in the case of Sentry), or indirectly (in the cases of Sigma and Lambda), during the six years preceding the December 2008 disclosure of the Madoff fraud. The BLMIS Trustee alleged that the monies transferred from BLMIS to the Funds were the misappropriated assets of other BLMIS investors.   At all relevant times, monies that the Funds received from BLMIS, net of fees and expenses, were transferred to shareholders as Redemption Payments.

13.     On July 13, 2011, pursuant to an agreement between the Foreign Representatives and the BLMIS Trustee dated May 9, 2011, the United States Bankruptcy Court for the Southern District of New York entered judgments against each of the Funds on the claims against the Funds asserted in the BLMIS Adversary Proceeding (the "Judgments") in the amount of

$3,054,000,000 with respect to Sentry, $752,300,000 with respect to Sigma, and $52,900,000 with respect to Lambda.  The Redemption Payments rendered the Funds unable to satisfy their liabilities to the BLMIS customers, the BLMIS Trustee, including on account of the Judgments, and other creditors of the Funds, and further increased the amount of those liabilities.  In this way, the Redemption Payments caused the Funds to become insolvent and/or deepened their existing insolvency, in that, among other things, at all relevant times the Funds were unable to pay their debts as they fell or would fall due.

14.    Upon information and belief, the Citco Subscriber has paid all or some portion of such payments to or for the account of persons or entities, including, but not limited to, ABN AMRO Schweiz AG a/k/a ABN AMRO Switzerland AG, Adler and Co Privatbank AG, Allianzbank SPA/Unifortune Conservative Side Pocket, Alternative Investment Strategies, Arsenal SPC, Arsenal SPC OBO Glasgow SEG Port, Banca Arner SA, Banca Unione Di Credito, Bank Hapoalim Switzerland Ltd., Bank Julius Baer & Co. Ltd., Bank Sarasin & CIE, Banque Cantonale Vaudoise, Banque Cramer & CIE SA, BBVA (Suisse) SA, BCV AMC Defensive AL Fund, BNP Paribas (Suisse) SA, BNP Paribas (Suisse) SA Ex Fortis, BNP Paribas (Suisse) SA Private, BSI AG, BSI Ex Banca Del Gottardo, Caceis Bank Luxembourg, CBB (BVI)/ The Alkima Fund, CBT Gems Low Vol Reg, Compagnie Bancaire Helvetique, Centrum Bank AG (AMS), Clariden Leu Ltd., Corner Banca SA, Credit Suisse AG Zurich, Dexia Banque International A Luxembourg, Dresdner Bank Schweiz, EFG Bank SA Switzerland, EFG Eurofinancier D'Invest MCL, Endurance Absolute Ltd. Master, Fairfield Investment GCI, Fairfield Investment Fund Ltd., Falcon Private Bank, FIF Advanced Ltd., Finter Bank Zurich, Harmony Capital Fund Ltd., HSBC, IHAG Handelsbank AG, Incore Bank AG, Karasel Enhanced Portfolio, Karla Multistrategies Ltd., KBC Investments LTD., LGT Bank In

Liechtenstein AG, Liechtensteinische LB Reinvest AMS, Lloyds TSB Bank Geneva, Lombard

Odier Darier Hentsch & CIE, Longboat Ltd., Master Capital and Hedge Fund, National Bank of

Kuwait, NBK Banque Privee Suisse SA, Pictet & CIE, PKB Privatbank AG, Private Space Ltd.,

Quasar Funds SPC a/k/a Quasar Fund SPC Class A and Class B CGCNV, RBC Dexia Investor

Service Julius Baer SICAV, RBS Coutts Bank Ltd., Richourt AAA Multistrategies, Rothschild

Bank AG Zurich (Dublin) a/k/a Rothschild Bank AG, Rothschild Bank Geneva (Dublin),

Rothschild Lugano Dublin a/k/a Banca Privata Edmond de Rothschild Lugano S.A., Sella Bank

AG, SIS Seeganintersettle, Six SIS Ltd., Societe Generale Bank & Trust, Soundview Fund,

Swisscanto FD Centre Clients A/C, T1 Global Fund Ltd., UBS AG New York, UBS AG Zurich,

UBS Jersey Nominees, Verwaltungs UND Privat-Bank AG Aktiengesellschaft (AMS),

Vorarlberger Landes UND Hypothekenbank Aktiengesellschaft, and Beneficial Owners of the

Accounts Held in the Name of CGC NA 1-1000, for whom the Citco Subscriber may have

subscribed for shares of the Funds in the capacity of trustee, agent, representative, nominee or

custodian (individually, a "Beneficial Shareholder" and collectively, the "Beneficial

Shareholders" or the "Defendants").

15.    Following the revelation of Madoff's fraud in December 2008, the Funds' boards

of directors suspended any further redemptions of the Funds' shares and the calculation of each

of the Funds' Net Asset Value.  As of December 2008 and presently, Sentry, Sigma, and Lambda

have, respectively, approximately 4.7 million, 3.9 million, and 0.2 million shares outstanding.

16.    Unless Redemption Payments paid to shareholders are recovered for the Funds'

estates, the Funds will be unable to satisfy their liabilities and claims that have been made or may

be made against them; further, recoveries of Redemption Payments will increase distributions to

the Funds' investors who have been harmed.  Moreover, to the extent such liabilities and claims

REDACTED WITH REDACT-IT

must be satisfied solely from the Funds' current assets, Defendants will have been unjustly enriched as they will not bear their proportionate share of such liabilities and claims, but rather will retain a windfall at the expense of other shareholders and creditors of the Funds.

## JURISDICTION AND VENUE

17.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 157(b) and 1334(b), as this adversary proceeding and the claims asserted by the Foreign Representatives herein arise under, arise in and/or relate to the Chapter 15 proceedings of the above-captioned Debtors, In re Fairfield Sentry Limited, et al., No. 10-13164 (SMB), pending in this Court.  Additionally, pursuant to section 78eee(b)(2)(A)(iii) of the Securities Investor Protection Act ("SIPA"), which incorporates 28 U.S.C. § 1334(b) and applicable provisions of Title 11 of the United States Code, jurisdiction is also proper in this Court because this action also relates to the consolidated liquidation proceedings of BLMIS and Bernard L. Madoff, pending in this Court under the caption Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC, SIPA Liquidation No. 08-1789 (SMB).  Pursuant to the Amended Standing Order of reference of the United States District Court for the Southern District of New York, dated January 31, 2012, all proceedings arising in, arising under and/or related to cases under Title 11 of the United States Code (as amended, the "Bankruptcy Code") are referred to this Court for adjudication.

18.     This is a core proceeding under 28 U.S.C. §§ 157(b)(2).[1]  Should the Court determine this to be a non-core proceeding, Plaintiffs consent to entry of final judgment and order by this Court.

---

[1]      Although the District Court, in In re Fairfield Sentry Ltd., No. 1:11-mc-00224-LAP, 458 B.R. 665 (S.D.N.Y. 2011), held that causes of action alleged by the Plaintiffs in other cases before this Court—causes of action that are similar or the same as those alleged in this complaint—are not core proceedings, this determination may be subject to appeal.  In any event, plaintiffs submit that the causes of action in this complaint, which include, inter alia, allegations regarding transfers of property that were directed into the territorial jurisdiction of the United States, render the claims asserted in this complaint core in accordance with the District Court's decision.

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 12 of 80

REDACTED WITH REDACT-IT

19.     This Court has jurisdiction over the Beneficial Shareholders pursuant to Rules

7004(d) and (f) of the Federal Rules of Bankruptcy Procedure and New York Civil Practice Law

& Rules § 302 (McKinney 2008) because the Beneficial Shareholders purposely availed

themselves of the laws of the United States and the State of New York by, among other things,

investing money with the Funds, knowing and intending that the Funds would invest

substantially all of that money in New York-based BLMIS.  The Beneficial Shareholders thus

knowingly accepted the rights, benefits, and privileges of conducting business and/or

transactions in the United States and New York, derived significant revenue from New York, and

maintained minimum contacts and/or general business contacts with the United States and New

York in connection with the claims alleged herein.  The Beneficial Shareholders should therefore

reasonably expect to be subject to United States jurisdiction.

20.     Moreover, this Court has jurisdiction over the Beneficial Shareholders by virtue

of the legally binding and valid agreements and representations set forth in one or more

agreements for the subscription of Shares that the Citco Subscriber entered into with Sentry and

Sigma.

21.     The Citco Subscriber, upon information and belief, entered into a Subscription

Agreement with Sentry on or about September 27, 2004 (the "Initial Subscription Agreement")

pursuant to which the Citco Subscriber subscribed for Shares.  Subsequent to entering into the

Initial Subscription Agreement, the Citco Subscriber, upon information and belief, entered into

additional agreements (the "Subsequent Subscription Agreements") with Sentry and Sigma

between February 4, 2005 and August 27, 2008, pursuant to which it subscribed for additional

Shares on the same terms and conditions as those shares subscribed for pursuant to the Initial

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 13 of 80

REDACTED WITH REDACT-IT

Subscription Agreement.    The Initial Subscription Agreement and Subsequent Subscription Agreements are collectively referred to herein as the "Subscription Agreements."

22.    The Subscription Agreements provide for, *inter alia*, the irrevocable submission by the Citco Subscriber to the jurisdiction of the New York courts with respect to any proceeding with respect to said agreement and Sentry and Sigma and the Citco Subscriber's consent to service of process by the mailing of such process, as provided therein.    In particular, the Subscription Agreements provide as follows:

> New York Courts.    Subscriber agrees that any suit, action or proceeding ("Proceeding") with respect to this Agreement and the Fund may be brought in New York.    Subscriber irrevocably submits to the jurisdiction of the New York courts with respect to any Proceeding and consents that service of process as provided by New York law may be made upon Subscriber in such Proceeding, and may not claim that a Proceeding has been brought in an inconvenient forum. Subscriber consents to the service of process out of any New York court in any such Proceeding by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to Subscriber at the address of Subscriber then appearing on the Fund's records.    Nothing herein shall affect the Fund's right to commence any Proceeding or otherwise to proceed against Subscriber in any other jurisdiction or to serve process upon Subscriber in any manner permitted by any applicable law in any relevant jurisdiction.

23.    Furthermore, by executing the Subscription Agreements, the Citco Subscriber agreed to all terms and conditions contained therein, including the express provision that any agreement made by the Citco Subscriber in the Subscription Agreement would also apply to any other person for whom the Citco Subscriber was subscribing as trustee, agent, representative, or nominee – i.e., all Beneficial Shareholders.    Moreover, by executing the Subscription Agreements, the Citco Subscriber represented that it had all requisite authority from Beneficial Shareholders to execute and perform any and all obligations on their behalf, and also agreed to indemnify Sentry and Sigma for any damages resulting from an assertion by a Beneficial Shareholder that the Citco Subscriber lacked proper authorization to enter into the Subscription

11

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 14 of 80

REDACTED WITH REDACT-IT

Agreement or perform the obligations thereof. Specifically, the Subscription Agreements provide as follows:

> <u>If Subscriber is acting as a Representatives</u>. If Subscriber is subscribing as trustee, agent, representatives, or nominee for another person (the "Beneficial Shareholder"), Subscriber agrees that the representations and agreements herein are made by Subscriber with respect to itself and the Beneficial Shareholder. Subscriber has all requisite authority from the Beneficial Shareholder to execute and perform the obligations hereunder. Subscriber also agrees to indemnify the Fund . . . for any and all costs, fees and expenses (including legal fees and disbursements, fines and amounts paid in settlement) in connection with any damages resulting from Subscriber's misrepresentation or misstatement contained here, or the assertion of Subscriber's lack of proper authorization from the Beneficial Shareholder to enter into this Agreement or perform the obligations hereof.

24.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## PARTIES

### Plaintiffs

25.    Sentry, a British Virgin Islands company, was organized in 1990 under the International Business Company Act of the British Virgin Islands and was subsequently re-registered as a business company under the BVI Business Companies Act 2004. Sentry's registered agent is Codan Trust Company (B.V.I.) located at Romasco Place, Wickhams Cay 1, Road Town, Tortola, BVI. Sentry is currently in liquidation in proceedings commenced on April 21, 2009 in the BVI Court.

26.    Sigma, a British Virgin Islands company, was organized in 1990 under the International Business Company Act of the British Virgin Islands and was subsequently re-registered as a business company under the BVI Business Companies Act 2004. Sigma's registered agent is Codan Trust Company (B.V.I.) located at Romasco Place, Wickhams Cay 1, Road Town, Tortola, BVI. Sigma is currently in liquidation in proceedings commenced on April 23, 2009, in the BVI Court.

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A - Proposed Amended Complaint_Clean (Redacted Version)    Pg 15 of 80

REDACTED WITH REDACT-IT

27.    The Foreign Representatives were appointed by the BVI Court as Liquidators of the Funds to supervise the liquidation of the Funds' estates and, where necessary, commence proceedings in the name of and on behalf of the Funds or in their own official names.  On April 23, 2009, the BVI Court issued an order appointing Christopher Stride as liquidator of Lambda (the "Lambda Appointment Order").    On July 21, 2009, the BVI Court issued an order appointing Kenneth Krys and Mr. Stride as joint liquidators of Sentry and Sigma (the "Sentry & Sigma Appointment Order").    On September 6, 2010, the BVI Court issued notices acknowledging Mr. Stride's resignation and the appointment of Joanna Lau as joint liquidator with Mr. Krys of all three Funds (the "Supplemental Appointment Order").  On November 23, 2011, Ms. Lau resigned as joint liquidator of the Funds.  On June 24, 2014, the BVI Court issued an order appointing Charlotte Caulfield as joint liquidator, with Mr. Krys, of all three Funds (the "Second Supplemental Appointment Order" and, together with the Lambda Appointment Order, the Sentry & Sigma Appointment Order, and the Supplemental Appointment Order, the "BVI Appointment Orders").    The Foreign Representatives, in their capacities as Foreign Representatives and liquidators of the Funds, have been authorized by the foreign court having jurisdiction over the matter to bring this action and the claims herein, including the avoidance claims herein under the BVI Insolvency Act of 2003 (the "BVI Insolvency Act").

28.    Pursuant to the BVI Appointment Orders, the Foreign Representatives are responsible for all aspects of the Funds' businesses, including, among other things, custody and control of the Funds' assets, the power to do all acts and execute, in the name and on behalf of the Funds, any deeds, receipts or other documents, and the power to compromise claims, commence litigation and to dispose of property.  After obtaining BVI Court approval, the Foreign Representatives filed petitions in this Court in June of 2010, under Chapter 15 of Title

13

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 16 of 80

REDACTED WITH REDACT-IT

11 of the United States Code, seeking recognition of the BVI Liquidation Proceedings as "foreign main proceedings" under Chapter 15. On July 22, 2010, this Court issued an order (the "Recognition Order") granting that recognition.

29.    Pursuant to the Recognition Order, the Foreign Representatives were automatically afforded relief available under 11 U.S.C. § 1520, including application of the Bankruptcy Code's automatic stay to the Funds and their property located in the United States, as well as the ability to operate the Funds' business and exercise the rights and powers of a trustee under Sections 363 and 552 of the Bankruptcy Code. Moreover, the Bankruptcy Court specifically granted additional relief in the Recognition Order to the Foreign Representatives pursuant to 11 U.S.C. § 1521(a). Such relief includes, but is not limited to: (i) staying any actions, proceedings or execution against the Funds' assets to the extent not stayed under Section 1520; (ii) authorizing the Foreign Representatives to seek leave to conduct discovery concerning the Funds' assets, affairs, rights, obligations or liabilities; (iii) entrusting the Foreign Representatives with the administration and realization of the Funds assets that are located within the United States, including all claims and causes of action belonging to the Funds; and (iv) otherwise giving full force and effect to the Proceedings before the BVI Court.

**Defendants**

30.    Defendants "Beneficial Owners of the Accounts Held in the Name of CGC NA 1-1000" are, as noted, any persons or entities having a beneficial ownership or interests in Shares of Sentry and Sigma issued to the Citco Subscriber and on whose behalf the Citco Subscriber was acting as trustee, agent, representative, or nominee (individually, a "Beneficial Shareholder").

14

31.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with ABN AMRO Schweiz AG a/k/a ABN AMRO (Switzerland) AG.  Upon information and belief, ABN AMRO Schweiz AG a/k/a ABN AMRO (Switzerland) AG is a corporate entity organized under the laws of Switzerland and has its registered address at Beethovenstrasse 33, CH-8002 Zurich, Switzerland.

32.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Adler and Co Privatbank AG.  Upon Information and belief, Adler and Co Privatbank AG is a corporate entity organized under the laws of Switzerland and has its registered address at Claridenstreasse 22, CH-8022 Zurich, Switzerland.

33.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Allianzbank SPA/Unifortune Conservative Side Pocket.  Upon information and belief, Allianzbank SPA/Unifortune Conservative Side Pocket is a corporate entity organized under the laws of Italy and has its registered address at Via Donizetti 53, Milan 20128, Italy.

34.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Alternative Investment Strategies.  Upon information and belief, Alternative Investment Strategies is a corporate entity organized under the laws of Bermuda and has its registered address c/o Absolute Performance Ltd., Bamboo Gate, 11 Harbour Road, Paget PG 03, Bermuda.

35.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with

Arsenal SPC.  Upon information and belief, Arsenal SPC is a corporate entity organized under the laws of the Cayman Islands and has its registered address at Corporate Centre West Bay Road, P.O. Box 31106, SMB, Grand Cayman, Cayman Islands.

36.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Arsenal SPC Obo Glasgow SEG Port.  Upon information and belief, Arsenal SPC Obo Glasgow SEG Port is a corporate entity organized under the laws of Switzerland and has its registered address at Rue de la Croiz 19, 1203 Geneva, Switzerland.

37.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Banca Arner SA.  Upon information and belief, Banca Arner SA is a corporate entity organized under the laws of Switzerland and has its registered address at Piazza Manzoni 8, CH-6901 Lugano, Switzerland.

38.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Banca Unione di Credito.  Upon information and belief, Banca Unione di Credito is a corporate entity organized under the laws of Switzerland and has its registered address at Piazza Dante 7, CH-6901 Lugano, Switzerland.

39.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Bank Hapoalim Switzerland Ltd.  Upon information and belief, Bank Hapoalim Switzerland Ltd. is a corporate entity organized under the laws of Luxembourg and has its registered address at 18 Boulevard Royal, 2449 Luxembourg.

40.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Bank Julius Baer & Co. Ltd.  Upon information and belief, Bank Julius Baer & Co. Ltd. is a corporate entity organized under the laws of Switzerland and has its registered address at Hohlstrasse 602, CH-8010 Zurich, Switzerland.

41.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Bank Sarasin & Cie.  Upon information and belief, Bank Sarasin & Cie is a corporate entity organized under the laws of Switzerland and has its registered address at Elizabethenstrasse 62, CH-4002 Basel, Switzerland.

42.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Banque Cantonale Vaudoise.  Upon information and belief, Banque Cantonale Vaudoise is a corporate entity organized under the laws of Switzerland and has its registered address at Place St. Francois 14, CH-1001 Lausanne, Switzerland.

43.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Banque Cramer & Cie SA.  Upon information and belief, Banque Cramer & Cie is a corporate entity organized under the laws of Switzerland and has its registered address at 20-22 Avenue de Miremont, P.O. Box 403, CH-1211 Geneva 12, Switzerland.

44.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with BBVA (SUISSE) SA.  Upon information and belief, BBVA (Suisse) SA is a corporate entity

17

REDACTED WITH REDACT-IT

organized under the laws of Switzerland and has its registered address at P.O. Box 3930, Zeltweg 63, 8021 Zurich, Switzerland.

45.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with BCV AMC Defensive AL Fund.  Upon information and belief, BCV AMC Defensive AL Fund is a corporate entity organized under the laws of Switzerland and has its registered address at Place St. Francois, CH-1001 Lausanne, Switzerland.

46.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with BNP Paribas (Suisse) SA.  Upon information and belief, BNP Paribas (Suisse) SA is a corporate entity organized under the laws of Switzerland and has its registered address at 2 Place de Hollande, Case Postale, CH-1211 Geneva, Switzerland.

47.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with BNP Paribas (Suisse) SA Ex Fortis.  Upon information and belief, BNP Paribas (Suisse) SA Ex Fortis is a corporate entity organized under the laws of Switzerland and has its registered address at 2 Place de Hollande, Case Postale, CH-1211 Geneva, Switzerland.

48.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with BNP Paribas (Suisse) SA Private.  Upon information and belief, BNP Paribas (Suisse) SA Private is a corporate entity organized under the laws of Switzerland and has its registered address at 2 Place de Hollande, Case Postale,  CH-1211 Geneva, Switzerland.

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 21 of 80

REDACTED WITH REDACT-IT

49.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with BSI AG.  Upon information and belief, BSI AG is a corporate entity organized under the laws of Switzerland and has its registered address at Via Peri 23, CH-6901 Lugano, Switzerland.

50.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with BSI Ex Banca Del Gottardo.  Upon information and belief, BSI Ex Banca Del Gottardo is a corporate entity organized under the laws of Switzerland and has its registered address at Viale S Franscini 8, CH-6900 Lugano, Switzerland.

51.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Caceis Bank Luxembourg.  Upon information and belief, Caceis Bank Luxembourg is a corporate entity organized under the laws of Luxembourg and has its registered address at 5 Allee Scheffer, Luxembourg L-2520, Luxembourg.

52.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with CBB (BVI)/ The Alkima Fund.

53.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with CBT Gems Low Vol Reg.  Upon information and belief, CBT Gems Low Vol Reg is a corporate entity organized under the laws of the Bahamas and has its registered address at One Montague Place 1st Floor, East Bay Street, P.O. Box N-4906, Nassau, Bahamas.

REDACTED WITH REDACT-IT

54.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Compagnie Bancaire Helvetique.  Upon information and belief, Compagnie Bancaire Helvetique is a corporate entity organized under the laws of Switzerland and has its registered address at Route de Chancy 6B, Case Postale 64, CH-1211 Geneva 8, Switzerland.

55.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Centrum Bank AG (AMS).  Upon information and belief, Centrum Bank AG (AMS) is a corporate entity organized under the laws of Liechtenstein and has its registered address at Kirchstrasse 3, Postfach 1168, Vaduz FL 9490, Liechtenstein.

56.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Clariden Leu Ltd.  Upon information and belief, Clariden Leu Ltd. is a corporate entity organized under the laws of Switzerland and has its registered address at Bahnhofstrasse 32, CH-8001, Zurich, Switzerland.

57.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Corner Banca SA.  Upon information and belief, Corner Banca SA is a corporate entity organized under the laws of Switzerland and has its registered address at Via Canova 16, CH-6901 Lugano, Switzerland.

58.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Credit Suisse AG Zurich.  Upon information and belief, Credit Suisse AG Zurich is a corporate

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 23 of 80

REDACTED WITH REDACT-IT

entity organized under the laws of Switzerland and has its registered address at P.O. Box 300, Uetlibergstrasse 231, CH-8070 Zurich, Switzerland.

59.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Dexia Banque International A Luxembourg.    Upon information and belief, Dexia Banque International A Luxembourg is a corporate entity organized under the laws of Luxembourg and has its registered address at 69 Route D'Esch, Luxembourg L-2953, Luxembourg.

60.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Dresdner Bank Schweiz.    Upon information and belief, Dresdner Bank Schweiz is a corporate entity organized under the laws of Liechtenstein and has its registered address at LGT Bank In Liechtenstein AG ex DBS, Herrengasse 12, Vaduz FL-9490, Liechtenstein.

61.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with EFG Bank SA Switzerland.    Upon information and belief, EFG Bank SA Switzerland is a corporate entity organized under the laws of Switzerland and has its registered address at 24 Quai du Seujet, CH-1211 Geneva 2, Switzerland.

62.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with EFG Eurofinancier D'Invest MCL.    Upon information and belief, EFG Eurofinancier D'Invest MCL is a corporate entity organized under the laws of Monaco and has its registered address at Villa les Aigles, 15 Avenue D'Ostenede, Monaco MC 9800.

21

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 24 of 80

REDACTED WITH REDACT-IT

63.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Endurance Absolute Ltd. Master.  Upon information and belief, Endurance Absolute Ltd. Master is a corporate entity organized under the laws of the United Kingdom and has its registered address c/o Argyle Investment Advisors, Iveagh Ltd., 21 Queen Anne's Gate, London SW1H 9BU, United Kingdom.

64.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Fairfield Investment GCI.  Upon information and belief, Fairfield Investment GCI is a corporate entity organized under the laws of New York and has as its registered address the Fairfield Greenwich Group, Finance Group, 919 Third Avenue, New York 10022.

65.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Fairfield Investment Fund Ltd.  Upon information and belief, Fairfield Investment Fund Ltd. is a corporate entity organized under the laws of New York and has as its registered address the Fairfield Greenwich Group, Finance Group, 919 Third Avenue, New York 10022.

66.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Falcon Private Bank.  Upon information and belief, Falcon Private Bank is a corporate entity organized under the laws of Switzerland and has its registered address at Pelikanstrasse 37, P.O. Box 1376, CH-8021, Zurich, Switzerland.

67.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 25 of 80

REDACTED WITH REDACT-IT

FIF Advanced Ltd.  Upon information and belief, FIF Advanced Ltd. is a corporate entity organized under the laws of New York and has as its registered address the Fairfield Greenwich Group, Finance Group, 919 Third Avenue, New York 10022.

68.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Finter Bank Zurich.  Upon information and belief, Finter Bank Zurich is a corporate entity organized under the laws of Switzerland and has as its registered address Corso S Gottardo 35, CH-6830 Chiasso, Switzerland.

69.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Harmony Capital Fund Ltd.  Upon information and belief, Harmony Capital Fund Ltd. is a corporate entity organized under the laws of the United Kingdom and has its registered address c/o Jason Capital Partners LLP, 28 Grosvenor Street, London W1K 4QR, United Kingdom.

70.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with HSBC.  Upon information and belief, HSBC is a corporate entity organized under the laws of the United Kingdom and has its registered address 8 Canada Square, Canary Wharf, London, United Kingdom.

71.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with IHAG Handelsbank AG.  Upon information and belief, IHAG Handelsbank AG is a corporate entity organized under the laws of Switzerland and has as its registered address Bleicherweg 18, 8022- Zurich, Switzerland.

72.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Incore Bank AG.  Upon information and belief, Incore Bank AG is a corporate entity organized under the laws of Switzerland and has as its registered address Dreikoenigstr 8, CH-8022 Zurich, Switzerland.

73.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Karasel Enhanced Portfolio.

74.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Karla Multistrategies Ltd.  Upon information and belief, Karla Multistrategies Ltd. is a corporate entity organized under the laws of The Netherlands and has as its registered address Naritaweg 165, 1043 BW Amsterdam, The Netherlands.

75.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with KBC Investments Ltd.  Upon information and belief, KBC Investments Ltd. is a corporate entity organized under the laws of New York and has as its registered address 140 East 45th Street, 42nd Floor, New York 10017.

76.     Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with LGT Bank In Liechtenstein AG.  Upon information and belief, LGT Bank In Liechtenstein AG is a corporate entity organized under the laws of Liechtenstein and has as its registered address Herrengasse 12, Vaduz FL 9490, Liechtenstein.

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 27 of 80

REDACTED WITH REDACT-IT

77.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Liechtensteinische LB Reinvest AMS.    Upon information and belief, Liechtensteinische LB Reinvest AMS is a corporate entity organized under the laws of Liechtenstein and has as its registered address Liechtensteinische Landesbank AG, Staedtle 44, Vaduz FL-9490, Liechtenstein.

78.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Lloyds TSB Bank Geneva. Upon information and belief, Lloyd's TSB Bank Geneva is a corporate entity organized under the laws of Switzerland and has as its registered address Place Bel-Air 1, CH-1211 Geneva 2, Switzerland.

79.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Lombard Odier Darier Hentsch & Cie.    Upon information and belief, Lombard Odier Darier Hentsch & Cie is a corporate entity organized under the laws of Switzerland and has as its registered address Rue de la Corraterie 11, 1204 Geneva, Switzerland.

80.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Longboat Ltd.

81.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Master Capital and Hedge Fund.  Upon information and belief, Master Capital and Hedge Fund

is a corporate entity organized under the laws of The Netherlands and has its registered address

c/o Citco Fund Services Europe BV, Naritaweg 165, 1043 BW Amsterdam, The Netherlands.

82.    Based on Sentry and Sigma records, some or all of the Redemption Payments

made to the Citco Subscriber may have been paid to an account holder or holders associated with

National Bank of Kuwait.  Upon information and belief, National Bank of Kuwait is a corporate

entity organized under the laws of Kuwait and has its registered address P.O. Box 95 Safat,

13001 Kuwait, Abdullah Al Ahmad Street, Sharq, State of Kuwait.

83.    Based on Sentry and Sigma records, some or all of the Redemption Payments

made to the Citco Subscriber may have been paid to an account holder or holders associated with

NBK Banque Privee Suisse SA.  Upon information and belief, NBK Banque Privee Suisse SA is

a corporate entity organized under the laws of Switzerland and has as its registered address Quai

du Mont Blanc 21, P.O. Box 1923, Geneva 1, Switzerland.

84.    Based on Sentry and Sigma records, some or all of the Redemption Payments

made to the Citco Subscriber may have been paid to an account holder or holders associated with

Pictet & Cie.  Upon information and belief, Pictet & Cie is a corporate entity organized under the

laws of Switzerland and has as its registered address Route Des Acacias 60, 1211 Geneva 73,

Switzerland.

85.    Based on Sentry and Sigma records, some or all of the Redemption Payments

made to the Citco Subscriber may have been paid to an account holder or holders associated with

PKB Privatbank AG.  Upon information and belief, PKB Privatbank AG is a corporate entity

organized under the laws of Switzerland and has as its registered address Via Balestra 1, CH-

6901 Lugano, Switzerland.

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A - Proposed Amended Complaint_Clean (Redacted Version)    Pg 29 of 80

REDACTED WITH REDACT-IT

86.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Private Space Ltd.   Upon information and belief, Private Space Ltd is a corporate entity organized under the laws of Monaco and has as its registered address 7 Rue du Gabian, MC 98000, Monaco.

87.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Quasar Funds SPC a/k/a Quasar Fund SPC Class A and Class B CGCNV.   Upon information and belief, Quasar Funds SPC a/k/a Quasar Fund SPC Class A and Class B CGCNV is a corporate entity organized under the laws of The Netherlands and has its registered address c/o Citco Fund Services Europe BV, Naritaweg 165, 1043 BW Amsterdam, The Netherlands.

88.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with RBC Dexia Investor Service Julius Baer SICAV.   Upon information and belief, RBC Dexia Investor Service Julius Baer SICAV is a corporate entity organized under the laws of Luxembourg and has as its registered address Dexia Fund Services, 69 Route D'Esch, Luxembourg L-2953, Luxembourg.

89.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with RBS Coutts Bank Ltd.  Upon information and belief, RBS Coutts Bank Ltd. is a corporate entity organized under the laws of Switzerland and has as its registered address P.O. Box 2200, Stauffacherstrasse 1, CH-8022 Zurich, Switzerland.

90.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Richourt AAA Multistrategies.  Upon information and belief, Richourt AAA Multistrategies is a corporate entity organized under the laws of The Netherlands and has as its registered address Telstone 8 Teleport, 1043 BW Amsterdam, The Netherlands.

91.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Rothschild Bank AG Zurich (Dublin) a/k/a Rothschild Bank AG.  Upon information and belief, Rothschild Bank AG Zurich (Dublin) a/k/a Rothschild Bank AG is a corporate entity organized under the laws of Switzerland and has as its registered address Zollikerstrasse 181, CH-8034 Zurich, Switzerland.

92.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Rothschild Bank Geneva (Dublin).  Upon information and belief, Rothschild Bank Geneva (Dublin) is a corporate entity organized under the laws of Switzerland and has as its registered address Banca Privee Edmond de Rothschild, 18 rue de Hesse, CH-1204 Geneva, Switzerland.

93.      Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Rothschild Lugano Dublin a/k/a Banca Privata Edmond de Rothschild Lugano S.A.  Upon information and belief, Rothschild Lugano Dublin a/k/a Banca Privata Edmond de Rothschild Lugano S.A. is a corporate entity organized under the laws of Switzerland and has as its registered address Via Ginevra 2, CH-6900 Lugano, Switzerland.

94.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Sella Bank AG.  Upon information and belief, Sella Bank AG is a corporate entity organized under the laws of Switzerland and has as its registered address Corso Elvezia 9, CH-6900 Lugano, Switzerland.

95.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with SIS Seeganintersettle.  Upon information and belief, SIS Seeganintersettle is a corporate entity organized under the laws of Switzerland and has as its registered address Baslerstrasse 100, CH-4601 Olten, Switzerland.

96.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Six SIS Ltd.  Upon information and belief, Six SIS Ltd. is a corporate entity organized under the laws of Switzerland and has as its registered address Baslerstrasse 100, CH-4601 Olten, Switzerland.

97.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Societe Generale Bank & Trust.  Upon information and belief, Societe Generale Bank & Trust is a corporate entity organized under the laws of Luxembourg and has as its registered address 11-13 Avenue Emile Reuter, Luxembourg L-2420, Luxembourg.

98.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Soundview Fund.  Upon information and belief, Soundview Fund is a corporate entity organized

29

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 32 of 80

REDACTED WITH REDACT-IT

under the laws of The Netherlands and has as its registered address Naritaweg 165, 1043 BW
Amsterdam, The Netherlands.

99.    Based on Sentry and Sigma records, some or all of the Redemption Payments
made to the Citco Subscriber may have been paid to an account holder or holders associated with
Swisscanto FD Centre Clients A/C.  Upon information and belief, Swisscanto FD Centre Clients
A/C is a corporate entity organized under the laws of the United Kingdom and has as its
registered address 4th Floor, 51 Moorgate, London EC2R 6BH, United Kingdom.

100.    Based on Sentry and Sigma records, some or all of the Redemption Payments
made to the Citco Subscriber may have been paid to an account holder or holders associated with
T1 Global Fund Ltd.  Upon information and belief, T1 Global Fund Ltd. is a corporate entity
organized under the laws of Switzerland and has its registered address c/o Trust and Gain Asset
Management, Corso San Gottardo 46, 6830 Chiasso, Switzerland.

101.    Based on Sentry and Sigma records, some or all of the Redemption Payments
made to the Citco Subscriber may have been paid to an account holder or holders associated with
UBS AG New York.  Upon information and belief, UBS AG New York is a corporate entity
organized under the laws of New York and has as its registered address 101 Park Avenue, New
York 10178.

102.    Based on Sentry and Sigma records, some or all of the Redemption Payments
made to the Citco Subscriber may have been paid to an account holder or holders associated with
UBS AG Zurich.  Upon information and belief, UBS AG Zurich is a corporate entity organized
under the laws of Switzerland and has as its registered address UBS Wealth Management,
Badenerstrasse 574/C, CH-8098 Zurich, Switzerland.

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 33 of 80

REDACTED WITH REDACT-IT

103.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with UBS Jersey Nominees.  Upon information and belief, UBS Jersey Nominees is a corporate entity organized under the laws of the United Kingdom and has as its registered address P.O. Box 350, 24 Union Street, St Helier JE4 8UJ, Jersey, United Kingdom.

104.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Verwaltungs UND Privat-Bank AG Aktiengesellschaft (AMS).  Upon information and belief, Verwaltungs UND Privat-Bank AG Aktiengesellschaft (AMS) is a corporate entity organized under the laws of Liechtenstein and has as its registered address Im Zentrum, Vaduz FL-9490, Liechtenstein.

105.    Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with Vorarlberger Landes Und Hypothekenbank Aktiengesellschaft.  Upon information and belief, Vorarlberger Landes Und Hypothekenbank Aktiengesellschaft is a corporate entity organized under the laws of Austria and has as its registered address Hypo-Passage 1, Bregenz 6900, Austria.

## NOTICE PURSUANT TO FED. R. CIV. P. 44.1

106.    Certain of the substantive issues to be resolved in this case will be governed by the laws of the British Virgin Islands.  Plaintiffs intend to rely upon the applicable laws of that territory.

10-03635-jpm   Doc 139-1   Filed 09/20/16   Entered 09/20/16 23:54:28   Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)   Pg 34 of 80

REDACTED WITH REDACT-IT

## FACTUAL ALLEGATIONS

### A.   Role of Feeder Funds In Madoff Fraud

107.   Sentry was the largest of all the so-called "feeder funds" to maintain accounts with BLMIS.  Sigma and Lambda were indirect BLMIS feeder funds established for foreign currency (respectively, Euro and Swiss franc) investment through purchase of shares of Sentry. Sentry's account statements with BLMIS as of the end of October 2008 showed in excess of $6 billion of invested assets supposedly held by BLMIS.  As stated in its offering materials, Sentry's investment objective was to achieve capital appreciation through investments in BLMIS.

108.   As discussed above, Sentry, Sigma, and Lambda were established for the purpose of making investments in BLMIS.  It is now known that these types of feeder funds were a crucial part of Madoff's Ponzi scheme.  The feeder funds brought new investors and new investments into the scheme, allowing Madoff to make payments to early investors who sought to liquidate their investments, and in this way, the feeder funds were used by Madoff to continue and perpetuate his fraud by maintaining the illusion that BLMIS was making active investments and engaging in a successful investment strategy.

### B.   Calculation of Net Asset Value and Shareholder Redemption Payments

109.   Substantially all of the money (up to 95%) raised by the Funds from the sale of their Shares, net of fees and expenses, was turned over to and invested in BLMIS (by and/or through Sentry), and supposedly credited to accounts held in the name of Sentry with BLMIS, purportedly for use in the now infamous "split-strike conversion" investment strategy.  In accordance with the Funds' Subscription Agreements, Articles of Association, offering materials and/or other relevant documents, from time to time, the Funds paid to shareholders, for each

Share tendered for redemption, an amount that was based on each of the respective Funds' purported Net Asset Value, as it was then calculated.

110.    In calculating each of the Funds' Net Asset Value, the Funds' administrators used and relied on account statements provided by BLMIS purportedly showing securities and investments, or interests or rights in securities and investments, held by BLMIS for the account of Sentry.   Generally, all securities identified on BLMIS account statements were traded on public exchanges and had readily ascertainable market values, and those market values (in addition to, among other items, cash on hand that was identified in the Sentry account statement for the relevant time period) were used in accordance with the Funds' Subscription Agreements, Articles of Association, offering materials and/or other documents to calculate the Net Asset Value of the Shares.

111.    In fact, at all relevant times, no securities were ever purchased or sold by BLMIS for Sentry and any stated cash on hand in the BLMIS accounts was based on misinformation and fictitious account statements.   None of the transactions shown on the account statements provided by BLMIS to Sentry ever occurred.   Indeed, no investments of any kind were ever made by BLMIS for Sentry.   At all relevant times, all of the account statements that BLMIS provided to Sentry were entirely and utterly fictitious.   Further, all amounts deposited by Sentry (or by Sigma and Lambda through Sentry) with BLMIS for investment and the purchase of securities to be held by BLMIS for the account of Sentry were used by Madoff to pay other BLMIS investors or were misappropriated by Madoff for other unauthorized uses.

112.    From time to time, to make Redemption Payments, Sentry (and Sigma and Lambda through Sentry) made withdrawals from Sentry's BLMIS accounts (or utilized subscription monies of other investors on hand that were directed for investment in BLMIS).

The Funds believed that the amounts provided in connection with such withdrawals represented the proceeds arising from the profitability of or to continue investment in BLMIS.  In fact, however, payments made by BLMIS to Sentry purportedly representing the proceeds of sales of securities or other investment positions were nothing other than the deposits of other BLMIS investors or previous deposits made by Sentry, never invested but rather misused and misappropriated as part of Madoff's fraud.  At all relevant times, payments made from BLMIS to Sentry were made by Madoff to continue and perpetuate his Ponzi scheme and avoid detection of his fraud.  The payments from BLMIS to Sentry were not payments made in the ordinary course of or as part of any business, nor did they have a legitimate business purpose.  Similarly, the Redemption Payments were not made for any legitimate purposes or in the ordinary course of any business.

113.    Given the fraudulent nature of BLMIS and its operation as a massive Ponzi scheme, the money paid by the Funds (directly in the case of Sentry and indirectly in the cases of Sigma and Lambda) to BLMIS on account of Sentry was, at all relevant times and unknown to the Funds, misused and misappropriated by Madoff as part of his Ponzi scheme.  At all relevant times, the Funds were insolvent when the Redemption Payments were made or were rendered insolvent, and/or their insolvency was deepened, as a result of the Redemption Payments.

**C.**    **Redemption Payments Made or Transferred to Defendants**

114.    During the period from and after April 20, 2004, through November 19, 2008, the Beneficial Shareholders received Redemption Payments totaling USD $51,929,665.41 from Sentry and Sigma in respect of Shares tendered for redemption.

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 37 of 80

REDACTED WITH REDACT-IT

115.    At Defendants' directions and instructions, some or all of the Redemption Payments were received at, upon information and belief, designated United States-based bank accounts.

116.    The dates and amounts of each Redemption Payment received by the Beneficial Shareholders from Sentry, and the bank accounts to which each Redemption Payment was made, are set forth on Exhibit A.  The dates and amounts of each Redemption Payment received by the Beneficial Shareholders from Sigma, and the bank accounts to which each Redemption Payment was made, are set forth on Exhibit B.

117.    At the time those Redemption Payments were made, the Funds had insufficient assets and were unable to pay their debts as they would fall due.  In exchange for each Redemption Payment, each of which constitutes or forms part of a transaction between the Beneficial Shareholders and Sentry and Sigma, Sentry and Sigma received no consideration or consideration of a value that, in money or money's worth, was significantly less than the value, in money or money's worth, of the consideration provided by Sentry and Sigma.

118.    Upon information and belief, the Beneficial Shareholders received Redemption Payments in excess of amounts paid by such person(s) for purchase of their Shares.

### D.    Citco Did Not Issue Any Certifications of Net Asset Value in "Good Faith"

119.    Article 11 of the Funds' Articles provides that "[a]ny certificate as to the Net Asset Value per Share . . . given in good faith by or on behalf of the Directors shall be binding on all parties."  During the relevant period, statements of the Net Asset Value were issued by the Funds' administrators, Citco Fund Services (Europe) B.V. and its delegatee Citco (Canada) Inc. (the "Administrators").  On April 16, 2014, the Judicial Committee of the Privy Council (the "Privy Council") issued a decision in which it held that certain statements of Net Asset Value, in

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 38 of 80

REDACTED WITH REDACT-IT

particular, certain monthly emails, contract notes, and monthly account statements issued by the Administrators, constituted "certificates" for the purposes of Article 11 (the "Certificates").   The Privy Council did not, however, address whether such Certificates were given "in good faith."   In carrying out this responsibility, the Administrators and affiliated Citco companies within Citco Group Limited (collectively, "Citco") acted with a lack of good faith in giving the Certificates.

*REDACTED*



*REDACTED*



REDACTED



REDACTED



REDACTED



REDACTED



REDACTED



*REDACTED*



*REDACTED*

REDACTED WITH REDACT-IT

*REDACTED*

148.    By virtue of the foregoing conduct, Citco issued the Certificates without good faith.  The Funds were the primary victims of Citco's conduct and its lack of good faith in issuing the Certificates.

149.    The Citco Subscriber served as trustee, agent, representative, nominee or custodian for the Beneficial Shareholders in connection with their investments in the Funds, including, by:  subscribing to Shares of Sentry and Sigma on behalf of the Beneficial Shareholders, maintaining custody of the Shares as record shareholders, paying redemption proceeds from the Shares of Sentry and Sigma to the Beneficial Shareholders, and otherwise exercising control over the Shares of Sentry and Sigma.

150.    Further, each of the Subscription Agreements, executed by the Citco Subscriber, manifested the Beneficial Shareholders' consent for the Citco Subscriber to act on behalf of and subject to the Beneficial Shareholders' control.

151.    In executing the Subscription Agreements, the Citco Subscriber accepted and agreed to act on behalf of the Beneficial Shareholders.

152.    Accordingly, the Beneficial Shareholders, except for Sigma and Lambda, who were primary victims of Citco's conduct, had the same knowledge as Citco regarding all relevant matters relating to BLMIS and the Funds' Net Asset Values at all relevant times

## E.    Exposure of Madoff's Fraud

153.    On December 11, 2008, federal agents arrested Madoff for violation of federal securities laws.  On that same day, the United States Attorney brought criminal charges against Madoff, alleging that Madoff ran a multi-billion dollar Ponzi scheme.  See United States v. Madoff, No. 08-mj-2735 (S.D.N.Y., filed Dec. 11, 2008).  Upon arrest, Madoff was reported to have told the agents that "there is no innocent explanation" for the fraudulent scheme he had orchestrated and confessed that he "paid investors with money that wasn't there."

154.    On December 11, 2008, the United States Securities and Exchange Commission ("SEC") filed an emergency action in the Southern District of New York to halt ongoing fraudulent offerings of securities and investment advisory fraud by Madoff and BLMIS.  See SEC v. Madoff, No. 08-cv-10791 (S.D.N.Y. filed Dec. 11, 2008). On February 9, 2009, the SEC submitted to the Court a proposed partial judgment, to which Madoff consented, imposing a permanent injunction and continuing relief against him, including a permanent freezing of his assets.

155.    In March 2009, Madoff pleaded guilty to the criminal charges brought against him.  In his plea allocution, Madoff confessed: "for many years up until my arrest on December 11, 2008, I operated a Ponzi scheme through the investment advisory side of my business, Bernard L. Madoff Securities LLC."  As Madoff himself described how the scheme worked:

The essence of my scheme was that I represented to clients and prospective clients who wished to open investment advisory and individual trading accounts with me that I would invest their money in shares of common stock, options and other securities of large well-known corporations, and upon request, would return to them their profits and principal. Those representations were false because for many years up and until I was arrested on December 11, 2008, I never invested those funds in the securities, as I had promised. Instead, those funds were deposited in a bank account at Chase Manhattan Bank. When clients wished to receive the profits they believed they had earned with me or to redeem their principal, I used the money in the Chase Manhattan bank account that belonged to them or other clients to pay the requested funds.

156.    Madoff further confessed to covering up his fraud by fabricating false trade confirmation and account statements:

To further cover-up the fact that I had not executed trades on behalf of my investment advisory clients, I knowingly caused false trading confirmations and client account statements that reflected the bogus transactions and positions to be created and sent to clients purportedly involved in the split strike conversion strategy, as well as other individual clients I defrauded who believed they had invested in securities through me. The clients receiving trade confirmations and account statements had no way of knowing by reviewing these documents that I had never engaged in the transactions represented on the statements and confirmations.

157.    Madoff is now serving a 150-year sentence in federal prison.

F.    **The Funds' Estates in Liquidation**

158.    Following the revelation of Madoff's fraud, the Funds' boards of directors suspended any further redemptions of Shares and the calculation of the Funds' Net Asset Values. As of December 2008 and presently, Sentry, Sigma, and Lambda had, respectively, approximately 4.7 million, 3.9 million, and 0.2 million shares outstanding.

159.    In 2009, the Funds were put into liquidation proceedings in the BVI.

160.    On February 27, 2009, a secured creditor of Lambda commenced proceedings in the BVI Court pursuant to the BVI Insolvency Act seeking the appointment of a liquidator over Lambda (the "Lambda Proceeding"). The Lambda Proceeding is pending in the BVI Court as claim number BVIHC(COM)2009/74.

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 50 of 80

REDACTED WITH REDACT-IT

161.    On April 21, 2009, ten shareholders applied to the BVI Court for the appointment

of a liquidator over Sentry (the "Sentry Proceeding").  The Sentry Proceeding is pending in the

BVI Court under claim number BVIHC(COM)2009/136.

162.    On April 23, 2009, a shareholder applied to the BVI Court for the appointment of

a liquidator over Sigma (the "Sigma Proceeding" and collectively with the Lambda Proceeding

and the Sentry Proceeding, the "BVI Liquidation Proceedings").  The Sigma Proceeding is

pending in the BVI Court under claim number BVIHC(COM)2009/139.

163.    As alleged above, the BVI Court issued orders – the BVI Appointment Orders –

appointing the Foreign Representatives as liquidators of the Funds.  Pursuant to the BVI

Appointment Orders, the Foreign Representatives are responsible for all aspects of the Funds'

business, including protecting, realizing, and distributing assets for the Funds' estates.

164.    The Redemption Payments that were made to Defendants were mistaken

payments and constituted or formed part of avoidable transactions, and generally represent assets

of Sentry and Sigma's estates that Defendants are not entitled to keep.

**FIRST CLAIM**
*(Unjust Enrichment- Against All Defendants)*

165.    Sentry and Sigma (acting by the Foreign Representatives, in their capacities as

liquidators of Sentry and Sigma and on behalf of Sentry and Sigma) repeat and allege again the

allegations contained in paragraphs 1 through 164 above as if set forth herein.

166.    Upon information and belief, the Citco Subscriber may have subscribed to all or

some portion of the Shares issued to it under the Subscription Agreements in the capacity of

trustee, agent, representative, or nominee for the Beneficial Shareholders.

167.    Upon information and belief, the Citco Subscriber may have paid to or credited

some or all of the Redemption Payments received by it from Sentry and Sigma to accounts of the

Beneficial Shareholders.  These Redemption Payments did not, as Sentry and Sigma mistakenly believed, represent the proceeds arising from the profitability of or to continue investment in BLMIS.  Instead, Redemption Payments were made for amounts far in excess of the Net Asset Value of Shares redeemed that would have been calculated based upon the true facts existing at that time or any relevant time.

168.    Neither the Citco Subscriber nor the Beneficial Shareholders provided valuable consideration to Sentry and Sigma in exchange for the Redemption Payments or any portion thereof received by them, in that they received Redemption Payments made for amounts far in excess of the Net Asset Value of Shares redeemed that would have been calculated based upon the true facts existing at that time or any relevant time.

169.    To the extent that a Beneficial Shareholder received any portion of the Redemption Payments paid to the Citco Subscriber in its capacity as trustee, agent, representative, or nominee for a Beneficial Shareholder, such Beneficial Shareholder has been unjustly enriched to the detriment of Sentry and Sigma and other shareholders and creditors of Sentry and Sigma.

170.    It would offend principles of equity and good conscience to permit any Beneficial Shareholders to retain the Redemption Payments made by Sentry and Sigma.

171.    The Foreign Representatives, in their capacities as liquidators of Sentry and Sigma and on behalf of Sentry and Sigma, are entitled to recover from any Beneficial Shareholders an amount equal to any portion of any Redemption Payments received by them, or, in the alternative, an amount equal to the amount of all Redemption Payments received by any Beneficial Shareholders less the amount of redemption payments that such Beneficial

Shareholders would have received had the Net Asset Value been calculated based upon the true facts existing at the time.

## SECOND CLAIM
### *(Money Had and Received-Against All Defendants)*

172.    Sentry and Sigma (acting by the Foreign Representatives, in their capacities as liquidators of Sentry and Sigma and on behalf of Sentry and Sigma) repeat and allege again the allegations contained in paragraphs 1 through 171 above as if set forth herein.

173.    Upon information and belief, the Citco Subscriber may have subscribed to all or some portion of the Shares issued to it under the Subscription Agreements in the capacity of trustee, agent, representative, or nominee for the Beneficial Shareholders.

174.    Upon information and belief, the Citco Subscriber may have paid to or credited some or all of the Redemption Payments received by it to accounts of the Beneficial Shareholders.  As alleged above, to the extent amounts were withdrawn from BLMIS to make Redemption Payments to the Citco Subscriber, each of such payments consisted of monies deposited with BLMIS for investment, but never invested and instead misappropriated as part of Madoff's fraud.  The source of these Redemption Payments did not, as Sentry and Sigma mistakenly believed, represent the proceeds arising from the profitability of or to continue investment in BLMIS.

175.    Neither the Citco Subscriber nor the Beneficial Shareholders provided valuable consideration to Sentry and Sigma in exchange for the Redemption Payments or any portion thereof received by them, in that they received Redemption Payments made for amounts far in excess of the Net Asset Value of Shares redeemed that would have been calculated based upon the true facts existing at that time or any relevant time.

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 53 of 80

REDACTED WITH REDACT-IT

176.    To the extent that a Beneficial Shareholder received any portion of the Redemption Payments paid to the Citco Subscriber in its capacity as trustee, agent, representative, or nominee for the Beneficial Shareholders, such Beneficial Shareholders have been unjustly enriched to the detriment of Sentry and Sigma and other shareholders and creditors of Sentry and Sigma.

177.    Furthermore, the Beneficial Shareholders were not entitled to receive the Redemption Payments paid to the Citco Subscriber upon the redemption of Shares issued to it in its capacity as trustee, agent, representative, or nominee for the Beneficial Shareholders because the amounts transferred by Sentry with respect to each of the Redemption Payments was based on a miscalculated and inflated Net Asset Value which caused the payment received for redemption of Shares to be in excess of the Net Asset Value of such Shares that would have been calculated based upon the true facts existing at that time or any relevant time.

178.    To the extent the Redemption Payments are not recovered by the Foreign Representatives, in their capacities as liquidators of Sentry and Sigma and on behalf of Sentry and Sigma, the loss will be disproportionately and unjustly borne by Sentry and Sigma and other shareholders and creditors of Sentry and Sigma.

179.    It would offend principles of equity and good conscience to permit the Beneficial Shareholders to retain the Redemption Payments made by Sentry and Sigma.

180.    The Foreign Representatives, in their capacities as liquidators of Sentry and Sigma and on behalf of Sentry and Sigma, are entitled to recover from the Beneficial Shareholders an amount equal to any portion of any Redemption Payments received by them, or, in the alternative, an amount equal to the amount of all Redemption Payments received by the Beneficial Shareholders less the amount of redemption payments that such Beneficial

REDACTED WITH REDACT-IT

Shareholders would have received had the Net Asset Value been calculated based upon the true facts existing at the time.

## THIRD CLAIM
### *(Mistaken Payment-Against All Defendants)*

181.    Sentry and Sigma (acting by the Foreign Representatives, in their capacities as liquidators of Sentry and Sigma and on behalf of Sentry and Sigma) repeat and allege again the allegations contained in paragraphs 1 through 180 above as if set forth herein.

182.    As described above, Sentry and Sigma made each of the Redemption Payments to the Citco Subscriber under the mistaken belief that the amounts paid to the Citco Subscriber represented the proceeds arising from the profitability of or to continue investment in BLMIS and were based upon the Net Asset Value of Shares redeemed based upon the true facts at that time.

183.    However, upon information and belief, BLMIS did not hold any securities or interests of securities on account for Sentry and the payments made by BLMIS to Sentry to fund Redemption Payments to the Citco Subscriber represented, in fact, money deposited with BLMIS by other BLMIS investors or previous deposits made by Sentry with BLMIS, never invested but rather misused and misappropriated as part of Madoff's fraud.

184.    Upon information and belief, the Citco Subscriber may have paid to or credited some or all of the Redemption Payments received by it to accounts of the Beneficial Shareholders.  These Redemption Payments did not, as Sentry and Sigma mistakenly believed, represent the proceeds arising from the profitability of or to continue investment in BLMIS.

185.    Additionally, the Beneficial Shareholders were not entitled to receive the Redemption Payments received by the Citco Subscriber upon the redemption of Shares issued to it in their capacity as trustee, agent, representative, or nominee for the Beneficial Shareholders

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 55 of 80

REDACTED WITH REDACT-IT

because, as was unknown to Sentry and Sigma, the amounts transferred with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the Redemption Payments received by the Citco Subscriber for its redemption of Shares to be in excess of the Net Asset Value of such Shares that would have been calculated based upon the true facts existing at that time or any relevant time.

186.    Neither the Citco Subscriber nor the Beneficial Shareholders provided valuable consideration to Sentry and Sigma in exchange for the Redemption Payments or any portion thereof received by them, in that they received Redemption Payments made for amounts far in excess of the Net Asset Value of Shares redeemed that would have been calculated based upon the true facts existing at that time or any relevant time.

187.    The Redemption Payments, while benefiting any Beneficial Shareholder receiving any portion thereof, were made to the detriment of Sentry and Sigma and other shareholders and creditors of Sentry and Sigma.

188.    To the extent the Redemption Payments are not recovered by the Foreign Representatives, in their capacities as liquidators of Sentry and Sigma and on behalf of Sentry and Sigma, the loss will be disproportionately and unjustly borne by Sentry and Sigma and other shareholders and creditors of Sentry and Sigma.

189.    It would thus offend principles of equity and good conscience to permit any Beneficial Shareholder to retain the Redemption Payments.

190.    The Foreign Representatives in their capacities as liquidators of Sentry and Sigma and on behalf of Sentry and Sigma are entitled to recover from any Beneficial Shareholders an amount equal to any portion of any Redemption Payments received by them, or, in the alternative, an amount equal to the amount of all Redemption Payments received by any

Beneficial Shareholders less the amount of redemption payments that such Beneficial Shareholders would have received had the Net Asset Value been calculated based upon the true facts existing at the time.

## FOURTH CLAIM
### *(Constructive Trust-Against All Defendants)*

191.    Sentry and Sigma (acting by the Foreign Representatives, in their capacities as liquidators of Sentry and Sigma and on behalf of Sentry and Sigma) repeat and allege again the allegations contained in paragraphs 1 through 190 above as if set forth herein.

192.    As described above, upon receipt of a redemption request, Sentry and Sigma made each of the Redemption Payments to the Citco Subscriber based on a miscalculated and inflated Net Asset Value, which caused those Redemption Payments to be in excess of the Net Asset Value of redeemed Shares that would have been calculated based upon the true facts existing at that time or any relevant time.

193.    As alleged above, the Redemption Payments generally represented the proceeds arising from or to continue investment in what the world now knows was Madoff's Ponzi scheme.  Accordingly, these Redemption Payments did not, as Sentry and Sigma mistakenly believed, represent the proceeds arising from the profitability of (or to continue investment in) BLMIS.

194.    Upon information and belief, the Citco Subscriber may have paid some or all of the Redemption Payments it received to the Beneficial Shareholders.

195.    By reason of their receipt of some or all of the Redemption Payments, the Beneficial Shareholders have been unjustly enriched to the detriment of Sentry and Sigma and other shareholders and creditors of Sentry and Sigma.

10-03635-jpm   Doc 139-1   Filed 09/20/16   Entered 09/20/16 23:54:28   Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)   Pg 57 of 80

REDACTED WITH REDACT-IT

196.    Furthermore, the Beneficial Shareholders were not entitled to receive the Redemption Payments because the amounts transferred with respect to each of the Redemption Payments was based on a miscalculated and inflated Net Asset Value, which caused the payment received by the Citco Subscriber for its redemption of Shares to be in excess of the Net Asset Value of such Shares that would have been calculated based upon the true facts existing at that time or any relevant time.

197.    It would offend principles of equity and good conscience to permit the Beneficial Shareholders to retain the Redemption Payments.

198.    By reason of the foregoing, a constructive trust should be imposed on the Redemption Payments that were received by the Beneficial Shareholders from Sentry and Sigma for the benefit of the Foreign Representatives and Sentry and Sigma and other shareholders and creditors of Sentry and Sigma.

### FIFTH CLAIM
#### *(Unfair Preference Pursuant to Section 245 of the BVI Insolvency Act - Against All Defendants)*

199.    The Foreign Representatives, in their capacities as Foreign Representatives and liquidators of Sentry, repeat and allege again the allegations contained in paragraphs 1 through 198 above as if set forth herein.

200.    Section 245 of the BVI Insolvency Act provides:

(1) Subject to subsection (2), a transaction entered into by a company is an unfair preference given by the company to a creditor if the transaction (a) is an insolvency transaction; (b) is entered into within the vulnerability period; and (c) has the effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he would have been in if the transaction had not been entered into.

(2) A transaction is not an unfair preference if the transaction took place in the ordinary course of business;

(3) A transaction may be an unfair preference notwithstanding that it is entered into pursuant to the order of a court or tribunal in or outside the Virgin Islands.

(4) Where a transaction entered into the by the company within the vulnerability period has the effect specific in subsection 1(c) in respect of a creditor who is a connected person, unless the contrary is proved, it is presumed that the transaction was an insolvency transaction and that it did not take place in the ordinary course of business.

201.    A creditor is defined in Section 9 of the BVI Insolvency Act as follows:

(1) A person is a creditor of another person (the debtor) if he has a claim against the debtor, whether by assignment or otherwise, that is, or would be, an admissible claim in (a) the liquidation of the debtor, in the case of a debtor that is a company or a foreign company; or (b) the bankruptcy of the debtor, in the case of a debtor who is an individual.

202.    The BVI Insolvency Act further defines an "insolvency transaction" as a transaction that: "(a) is entered into at a time when the company is insolvent; or (b) . . . causes the company to become insolvent."  BVI Insolvency Act § 244(2).

203.    For the purposes of assessing unfair preferences under Section 245 of the BVI Insolvency Act and undervalue transactions under Section 246 of the BVI Insolvency Act, a company is "insolvent" if: "(c). . . (ii) the company is unable to pay its debts as they fall due."  BVI Insolvency Act §§ 8, 244(3).

204.    For purposes of Section 245 and Section 246 of the BVI Insolvency Act, "vulnerability period" means "in the case of a transaction entered into with, or a preference given to, a connected person, the period commencing two years prior to the onset of insolvency and ending on the appointment of the administrator or, if the company is in liquidation, the liquidator . . . ."  BVI Insolvency Act § 244(1).

205.    The "onset of insolvency" is defined as: "the date on which the application for the appointment of the liquidator was filed."  BVI Insolvency Act § 244(1).  Thus, the vulnerability period, for each of the Funds, is the period commencing two years prior to the application for the

appointment of the Liquidators for each Fund and ending on the date of the appointment of the

liquidators of each Fund.

206.    A "connected person" is:

(1) . . . one or more of the following

(a) a promoter of the company;

(b) a director or *member of the company* or of a related company;

(c) a beneficiary under a trust of which the company is or has been a trustee;

(d) a related company;

(e) another company one of whose directors is also a director of the company;

(f) a nominee, relative, spouse or relative of a spouse of a person referred to in
paragraphs (a) to (c);

(g) a person in partnership with a person referred to in paragraphs (a) to (c); and

(h) a trustee of a trust having as a beneficiary a person who is, apart from this
paragraph, a connected person.

BVI Insolvency Act § 5 (emphasis added).

207.    Redemption Payments aggregating $12,718,111.47 were made by Sentry to the

Citco Subscriber during the two-year period prior to the application for appointment of the

Liquidators of Sentry in the BVI Liquidation Proceedings (the "Sentry Vulnerability Period").

208.    During the Sentry Vulnerability Period, Sentry was insolvent or was rendered

insolvent by the making of Redemption Payments.

209.    Each of the Redemptions and/or Redemption Payments made during the Sentry

Vulnerability Period ("Vulnerability Period Payments") was an "insolvency transaction" within

the meaning of Section 245 of the BVI Insolvency Act.

REDACTED WITH REDACT-IT

210.    The Citco Subscriber was a shareholder (i.e., a member) of Sentry during the Sentry Vulnerability Period and was, accordingly, a "connected person" as defined in the BVI Insolvency Act.

211.    Each of the Vulnerability Period Payments put the Citco Subscriber in a better position than it would have been in had such Payment not been made.

212.    Because the Citco Subscriber was a "connected person" as defined in the BVI Insolvency Act, there is a statutory presumption that the Redemptions and/or Vulnerability Period Payments were "insolvency transactions."  Further, even were this not presumed, the Redemptions and/or Vulnerability Period Payments were "insolvency transactions" because at all material times the Funds were insolvent.  This is because the Funds' assets were up to 95% invested with BLMIS and were only able to pay debts falling due either (i) with payments (including fictitious profits) from the Ponzi scheme BLMIS, i.e. using the proceeds of fraud, or (ii) by using incoming subscription monies (as a shortcut for investing those monies and also withdrawing monies from BLMIS to pay redeemers).  Each time the Funds withdrew monies from BLMIS an equivalent liability immediately arose to the creditors of and investors in BLMIS.  On any commercial basis the Funds were insolvent on a cash flow basis at all material times

213.    In addition, there is a statutory presumption that the Vulnerability Period Payments were "not made in the ordinary course of any business" of Sentry.  even were this not presumed, the same would follow in that, among other things, each Vulnerability Period Payment represented a distribution of monies (including fictitious profits) from Madoff's Ponzi scheme or incoming subscription monies (which merely represented a shortcut for investing

58

REDACTED WITH REDACT-IT

those monies and also withdrawing monies from BLMIS to pay redeemers), and it was no part of the ordinary course of business of the Funds to invest in and distribute profits of a Ponzi scheme.

214.    Each of the Vulnerability Period Payments was made following receipt by Sentry of a notice of redemption in respect of Shares, which triggered the redemption process under the Articles.  Following the receipt by Sentry of a notice of redemption by the Citco Subscriber, the Citco Subscriber became a contingent creditor.  Upon the subsequent redemption of the Beneficial Shareholders' shares and until such time as the Citco Subscriber received the Vulnerability Period Payment, the Citco Subscriber was a "creditor" of Sentry with an admissible claim against Sentry in any subsequent liquidation of Sentry had payment of the Redemption Price not been made, albeit that post-liquidation Citco Subscriber would have been deferred to outside creditors.

215.    Upon information and belief, the Citco Subscriber may have subscribed to all or some portion of the Shares issued to it under the Subscription Agreement in the capacity of trustee, agent, representative, or nominee for the Beneficial Shareholders.

216.    Upon information and belief, the Citco Subscriber may have paid to or credited some or all of the Redemption Payments received by it to accounts of the Beneficial Shareholders.

217.    To the extent that any money that the Citco Subscriber received in connection with the Vulnerability Period Payments was transferred to the Beneficial Shareholders, the Foreign Representatives, in their capacities as Foreign Representatives and Liquidators of Sentry, are entitled to avoid and set aside such further transfer by the Citco Subscriber to the Beneficial Shareholders and to recover from the Beneficial Shareholders an amount equal to any portion of any Vulnerability Period Payments received by them, and the Foreign Representatives,

in their capacities as liquidators of Sentry and Sigma, rely on, inter alia, section 249(2)(b) of the

BVI Insolvency Act.

## SIXTH CLAIM
### (Undervalue Transaction Pursuant to Section 246 of the
### BVI Insolvency Act – Against All Defendants)

218.    The Foreign Representatives, in their capacities as Foreign Representatives and

liquidators of Sentry, repeat and allege again the allegations contained in paragraphs 1 through

217 above as if set forth herein.

219.    Section 246 of the BVI Insolvency Act provides that;

(1) Subject to subsection (2), a company enters into an undervalue transaction
with a person if (a) the company makes a gift to that person or otherwise enters
into a transaction with that person on terms that provide for the company to
receive no consideration; or (b) the company enters into a transaction with that
person for a consideration the value of which, in money or money's worth, is
significantly less than the value, in money or money's worth, of the consideration
provided by the company; and (c) in either case, the transaction concerned (i) is
an insolvency transaction; and (ii) is entered into within the vulnerability period.

(2) A company does not enter into an undervalue transaction with a person if (a)
the company enters into the transaction in good faith and for the purposes of its
business; and (b) at the time when it enters into the transaction, there were
reasonable grounds for believing that the transaction would benefit the company.

(3) A transaction may be an undervalue transaction notwithstanding that it is
entered into pursuant to the order of a court or tribunal in or outside the Virgin
Islands.

(4) Where a company enters into a transaction with a connected person within the
vulnerability period and the transaction falls within subsection (1)(a) or
subsection (1)(b), unless the contrary is proved, it is presumed that (a) the
transaction was an insolvency transaction; and (b) subsection (2) did not apply to
the transaction.

220.    During the Sentry Vulnerability Period, all assets purportedly held by BLMIS for

Sentry and other investors were non-existent, and Sentry was insolvent or rendered insolvent by

the Vulnerability Period Payments, as alleged in paragraph 212 above.    Thus, each of the

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 63 of 80

REDACTED WITH REDACT-IT

Redemptions and/or Vulnerability Period Payments qualifies as an "insolvency transaction" within the meaning of Section 244 of the BVI Insolvency Act and for purposes of Section 246 of the BVI Insolvency Act.

221.    Sentry received no consideration for any of the Vulnerability Period Payments, or in the alternative, Sentry received, for each Vulnerability Period Payment, consideration, the value of which, in money or money's worth, was significantly less than the value, in money or money's worth, of the consideration provided by Sentry to the Citco Subscriber for each of the Vulnerability Period Payments.

222.    The Citco Subscriber was a shareholder (i.e., a member) of Sentry during the Vulnerability Period and was, accordingly, a "connected person" as defined in the BVI Insolvency Act.

223.    Because the Citco Subscriber was a "connected person" as defined in the BVI Insolvency Act, there is a statutory presumption that the Redemptions and/or Vulnerability Period Payments were "insolvency transactions."  Further, there is a statutory presumption that the Vulnerability Period Payments were not made good faith and for the purposes of the Funds' business with reasonable grounds to believe that they would benefit the Funds.  Even were that not presumed, it is in any event clear that the purpose of the Funds was not to invest in and distribute fictitious profits from a Ponzi scheme such as BLMIS.

224.    Upon information and belief, the Citco Subscriber may have subscribed to all or some portion of the Shares issued to it under the Subscription Agreement in the capacity of trustee, agent, representative, or nominee for the Beneficial Shareholders.

225.    Upon information and belief, the Citco Subscriber may have paid to or credited some or all of the Redemption Payments received by it to accounts of the Beneficial Shareholders.

226.    To the extent that any money that the Citco Subscriber received in connection with the Vulnerability Period Payments was transferred to the Beneficial Shareholders, the Foreign Representatives, in their capacities as Foreign Representatives and liquidators of Sentry, are entitled to avoid and set aside such further transfer by the Citco Subscriber to the Beneficial Shareholders and to recover from the Beneficial Shareholders an amount equal to any portion of any Vulnerability Period Payments received by them, and the Foreign Representatives, in their capacities as liquidators of Sentry and Sigma, rely on, inter alia, section 249(2)(b) of the BVI Insolvency Act.

## SEVENTH CLAIM
### *(Breach of Contract - Against All Defendants)*

227.    Sentry and Sigma (acting by the Foreign Representatives, in their capacities as liquidators of Sentry and Sigma and on behalf of Sentry and Sigma) repeat and allege again the allegations contained in paragraphs 1 through 226 above as if set forth herein.

228.    The Citco Subscriber, upon information and belief, entered into a written agreement or agreements with Sentry between December 31, 1998 and December 30, 2002, pursuant to which the Citco Subscriber subscribed for Shares.  Subsequent to entering into such agreements, the Citco Subscriber, upon information and belief, entered into the Initial Subscription Agreement with Sentry on or about September 27, 2004, pursuant to which the Citco Subscriber subscribed for additional shares.  The Citco Subscriber's subscription for shares was made pursuant to the terms of the Initial Subscription Agreement itself as well as the terms of the other documents referred to therein, namely; (i) Sentry's Private Placement Memorandum

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 65 of 80

REDACTED WITH REDACT-IT

(as amended from time to time); and (ii) Sentry's Memorandum of Association and Articles of Association (the "Articles"). Subsequent to entering into the Initial Subscription Agreement, the Citco Subscriber, upon information and belief, entered into the Subsequent Subscription Agreements with Sentry and Sigma between February 4, 2005 and August 27, 2008, pursuant to which it subscribed for additional Shares on the same terms and conditions as those Shares subscribed for pursuant to the Initial Subscription Agreement.   The Initial Subscription Agreement, together with the Subsequent Subscription Agreements, including all of the terms and provisions incorporated therein by reference to the Private Placement Memorandum (as amended from time to time) and the Articles, are collectively referred to herein as the "Fund Documents."

229.    The Fund Documents provide for the calculation of the redemption price for Shares (the "Redemption Price") based on the "Net Asset Value per Share."  Net Asset Value per share is to be determined by the directors of the Funds as of the relevant valuation day "by dividing the value of the net assets of [Sentry/Sigma/Lambda] by the number of Shares then in issue [.]" Articles at 11(1).

230.    The Fund Documents provide that in determining the Net Asset Value per share for each class of shares issued, the value of the net assets of the Funds is to be adjusted "to take into account any dividends, distributions, assets or liabilities" attributable to such class of shares. Articles at 11(1).   Pursuant to the Fund Documents, each subscriber, including the Citco Subscriber acknowledges that "the value of its Shares and redemptions thereof, and the performance of the Fund, may be based on unaudited and in some cases, estimated, valuations of the Fund's investment and that any valuation provided in Subscriber's account statement may be an unaudited, estimated value."  See Initial Subscription Agreement ¶ 10.

63

REDACTED WITH REDACT-IT

231.    With respect to the valuation of different types of assets, the Fund Documents prescribe methods of valuation that are, however, subject to the exercise of the judgment and discretion by the Directors of the Funds.  For example, with respect to the valuation of assets consisting of securities, the Fund Documents prescribe methods of valuation based on price and market data, provided however that "[i]f the Directors determine that [any of the prescribed methods of valuation] does not fairly represent its market value, the Directors shall value such securities as they determine and shall set forth the basis of such valuation in writing in the Company's records[.]"  Articles at 11(3)(b).

232.    With respect to the value of any shares of stock held by the Funds in an "investment company," the Fund Documents provide for valuation "in accordance with the manner in which such shares are valued by such investment company" provided however that "the Directors may make such adjustments in such valuations the Directors may from time to time consider appropriate."  Articles at 11(3)(c).

233.    With respect to assets that have been "realised or contracted to be realised" the Fund Documents provide for the inclusion of the assets receivable in respect of such realization, provided however that "if the value of such assets is not then known exactly then its value shall be as estimated by the Directors."   Articles at 11(3)(e).

234.    Additionally, the Fund Documents provide that "notwithstanding the foregoing, in the case of extraordinary circumstances which, in the Directors' sole discretion, warrant a different valuation of any securities, such securities will be valued at such prices as the Directors shall determine."  Articles at 11(3)(f).

REDACTED WITH REDACT-IT

235.    The Fund Documents provide that any "certificate" as to the Net Asset Value per Share or as to the Redemption Price that is given in good faith by or on behalf of the Directors "shall be binding on all parties."  Articles at 11(1).

236.    No Certificate was provided in good faith by or on behalf of the Directors to the Citco Subscriber in respect of any Net Asset Value determination made while the Citco Subscriber were a member of the Funds or in respect of any Redemption Payment made to the Citco Subscriber.

237.    Pursuant to the Fund Documents, at any time prior to the good faith issuance and receipt of a Certificate, the Redemption Price calculated in respect of the redemptions by the Citco Subscriber and paid to the Citco Subscriber remains subject to adjustment, recalculation and redetermination based on, inter alia, the foregoing identified provisions of the Fund Documents.  Upon the true interpretation of the Fund Documents, the same contained an implied term for repayment of any over-payments, and/or such a term is to be implied on the basis of obviousness and/or as being necessary for the business efficacy of the Fund Documents and/or to give effect to the reasonable expectations of the parties.

238.    Upon information and belief, the Citco Subscribers may have subscribed to all or some portion of the Shares issued to it under the Fund Documents in the capacity of trustee, agent, representative, or nominee for the Beneficial Shareholders.

239.    Each Beneficial Shareholder authorized the Citco Subscriber to enter into the Fund Documents on his, her or its behalf and to bind the Beneficial Shareholder to the agreements and representations contained therein to the same extent as had the Beneficial Shareholder executed the Fund Documents on his, her or its, own behalf.

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 68 of 80

REDACTED WITH REDACT-IT

240.    Upon information and belief, the Citco Subscriber received the Redemption Payments listed on Exhibit A and Exhibit B in respect of Shares submitted for redemption.

241.    Upon information and belief, the Citco Subscriber may have paid to or credited some or all of the Redemption Payments received by it from Sentry and Sigma to accounts of the Beneficial Shareholders.

242.    Subsequent to December 8, 2008, Sentry and Sigma have determined that the Net Asset Value calculations upon which Redemption Payments were made to the Citco Subscriber included assets not held by or on behalf of Sentry and Sigma at the time of the making of such payments and, additionally, that such Net Asset Value calculations failed to account for and make appropriate deduction of liabilities of Sentry and Sigma existing at the time of such payments.  For these and other reasons, such Net Asset Value calculation substantially overstated the net asset value of the assets of Sentry and Sigma.

243.    To the extent that any Beneficial Shareholder has received Redemption Payments in excess of the Net Asset Value of the Shares redeemed, such Beneficial Shareholder is contractually obligated to return amounts in excess of the Net Asset Value that would have been calculated based upon the true facts existing at the relevant time.

244.    Following determination by the Funds that Redemption Payments made to the Citco Subscriber had been calculated on the basis of an overstated Net Asset Value, demand was made on the Beneficial Shareholders by demand on the Citco Subscriber for the return of excess and overpaid Redemption Payments.

245.    The Beneficial Shareholders have failed and refused to repay to the Funds the amounts that, under the Fund Documents, they are contractually required to repay to the Funds.

66

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 69 of 80

REDACTED WITH REDACT-IT

246.    The failure of the Beneficial Shareholders to make the repayment requested constitutes a breach of the Fund Documents for which Sentry and Sigma are entitled to the award of damages.

### EIGHTH CLAIM
*(Breach of Implied Covenant of Good Faith and*
*Fair Dealing - Against All Defendants)*

247.    Sentry and Sigma (acting by the Foreign Representatives, in their capacities as liquidators of Sentry and Sigma and on behalf of Sentry and Sigma) repeat and allege again the allegations contained in paragraphs 1 through 246 above as if set forth herein.

248.    Upon information and belief, the Citco Subscriber may have subscribed to all or some portion of the Shares issued to it under the Fund Documents in the capacity of trustee, agent, representative, or nominee for the Beneficial Shareholders.

249.    Upon information and belief, the Citco Subscriber may have paid to or credited some or all of the Redemption Payments received by it from Sentry and Sigma to accounts of the Beneficial Shareholders.

250.    Following determination by the Funds that Redemption Payments made to the Citco Subscriber had been calculated on the basis of an overstated Net Asset Value, demand was made on the Beneficial Shareholders by demand on the Citco Subscriber for the return of excess and overpaid Redemption Payments.

251.    The Beneficial Shareholders have failed and refused to make repayment to Sentry and Sigma.

252.    By retaining the Redemption Payments to which they are not entitled, the Beneficial Shareholders have deprived Sentry and Sigma of the benefit of their bargain and have subverted the Fund Documents.

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 70 of 80

REDACTED WITH REDACT-IT

253.    The failure of the Beneficial Shareholders to make the repayment requested constitutes a breach of the implied covenant of good faith and fair dealing that inheres in the Fund Documents for which Sentry and Sigma are entitled to the award of damages.

## NINTH CLAIM
### (Declaratory Judgment - Against All Defendants)

254.    Sentry and Sigma (acting by the Foreign Representatives, in their capacities as liquidators of Sentry and Sigma and on behalf of Sentry and Sigma) repeat and allege again the allegations contained in paragraphs 1 through 253 above as if set forth herein.

255.    An actual and justiciable controversy exists between the Plaintiffs and the Defendants with respect to the obligation of the Defendants to repay to the Funds all or a portion of amounts received by them as excess or overpaid Redemption Payments under circumstances where:

(i)     the Net Asset Value per Share calculation upon which the Redemption Price was paid, directly or indirectly, to any Defendant has been subsequently adjusted, recalculated or redetermined in accordance with the Fund Documents;

(ii)    the resulting adjusted, recalculated and redetermined Redemption Price is less than the Redemption Price paid to the Defendant;

(iii)   prior to such adjustment, recalculation or redetermination, no binding Certificate has been issued by the Funds; and

(iv)    Citco issued no Certificates in good faith.

256.    The harm to Sentry and Sigma is real and immediate because, as a result of the failure and refusal of the Defendants to make repayment, Sentry and Sigma have become insolvent and are presently unable to pay their debts as they fall or will fall due.

257.    Plaintiffs have no adequate remedy at law.

68

10-03635-jpm   Doc 139-1   Filed 09/20/16   Entered 09/20/16 23:54:28   Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)   Pg 71 of 80

REDACTED WITH REDACT-IT

258.     Pursuant to 28 U.S.C. § 2201 et. seq., Plaintiffs are entitled to a declaration by this Court declaring that, pursuant to the Fund Documents, each Defendant must repay Sentry and Sigma that portion of the Redemption Payments received by such Defendant representing the amount by which such Redemption Payments exceeded the Redemption Price as it has been subsequently adjusted, recalculated and redetermined by Sentry and Sigma.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request the following relief:

A.     On the First, Second, and Third Claims, judgment in favor of Plaintiffs and against the Beneficial Shareholders allowing the Plaintiffs to recover an amount equal to any portion of the Redemption Payments received by the Beneficial Shareholders, plus interest, or, in the alternative, an amount equal to any portion of the Redemption Payments received by the Beneficial Shareholders less the amount of such portion that such Beneficial Shareholders would have received had the Net Asset Value been calculated based upon the true facts existing at the time, plus interest;

B.     On the Fourth Claim, imposition of a constructive trust on Redemption Payments; and;

C.     On the Fifth Claim:

    i.     a declaratory judgment in favor of the Foreign Representatives and against the Beneficial Shareholders that the Redemptions and/or Vulnerability Period Payments constitute Unfair Preferences under Section 245 of the BVI Insolvency Act;

    ii.     judgment pursuant to Section 249 of the BVI Insolvency Act, setting aside and avoiding the Redemptions and/or Vulnerability Period Payments; and

    iii.     judgment pursuant to Section 249 of the BVI Insolvency Act against the Beneficial Shareholders in the amount of the avoided Vulnerability Period Payments received by them or for their benefit, plus interest;

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 72 of 80

REDACTED WITH REDACT-IT

D.    On the Sixth Claim:

    i.    a declaratory judgment in favor of the Foreign Representatives and against the Beneficial Shareholders that the Redemptions and/or Vulnerability Period Payments constitute Undervalue Transactions under Section 246 of the BVI Insolvency Act;

    ii.    judgment pursuant to Section 249 of the BVI Insolvency Act, setting aside and avoiding the Redemptions and/or Vulnerability Period Payments; and

    iii.    judgment pursuant to Section 249 of the BVI Insolvency Act against the Beneficial Shareholders in the amount of the avoided Vulnerability Period Payments received by them or for their benefit, plus interest;

E.    On the Seventh and Eighth Claims, judgment against the Defendants and in favor of the Plaintiffs in an amount to be determined at trial;

F.    On the Ninth Claim, a declaratory judgment against the Defendants and in favor of the Plaintiffs that, under the Fund Documents, the Defendants must repay that portion of the Redemption Payments received by such Defendant representing the amount by which such Redemption Payments exceeded the Redemption Price as it has been subsequently adjusted, recalculated and redetermined by the Funds;

G.    Awarding Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees and accountants' and experts' fees, costs and expenses; and

H.    Granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
        September 20, 2016

BROWN RUDNICK LLP


By: /s/ David J. Molton
        David J. Molton
        May Orenstein
        Daniel J. Saval

Seven Times Square
New York, New York 10036
Telephone: 212.209.4800
Facsimile: 212.209.4801

*Attorneys for the Foreign Representatives*

10-03635-jpm    Doc 139-1    Filed 09/20/16    Entered 09/20/16 23:54:28    Exhibit A -
Proposed Amended Complaint_Clean (Redacted Version)    Pg 74 of 80

REDACTED WITH REDACT-IT

# EXHIBIT A

REDACTED WITH REDACT-IT

*Redemption Payments Received by Defendants from Sentry*
*From April 21, 2004 Through November 19, 2008*

| Payment Date | Redemption Payment | No. of Shares | Bank Account to which Redemption Payment Was Made |
|---|---|---|---|
| April 21, 2004 | $325,094.34 | 334.37 | Citco Global Custody (NA) NV, Netherlands |
| April 21, 2004 | $10,937,878.23 | 11249.96 | Citco Global Custody (NA) NV, Netherlands |
| July 16, 2004 | $147,542.37 | 148.21 | Citco Global Custody (NA) NV, Netherlands |
| August 13, 2004 | $25,000.00 | 25.09 | Citco Global Custody (NA) NV, Netherlands |
| October 19, 2004 | $415,708.68 | 409.61 | Citco Global Custody (NA) NV, Netherlands |
| November 16, 2004 | $304,550.25 | 300 | Citco Global Custody (NA) NV, Netherlands |
| December 13, 2004 | $53,962.38 | 52.74 | Citco Global Custody (NA) NV, Netherlands |
| February 16, 2005 | $25,771.59 | 25 | Citco Global Custody (NA) NV, Netherlands |
| February 16, 2005 | $68,191.63 | 66.15 | Citco Global Custody (NA) NV, Netherlands |
| March 15, 2005 | $105,977.66 | 102.43 | Citco Global Custody (NA) NV, Netherlands |
| April 14, 2005 | $152,343.04 | 146 | Citco Global Custody (NA) NV, Netherlands |
| May 13, 2005 | $168,857.07 | 161.6 | Citco Global Custody (NA) NV, Netherlands |
| June 15, 2005 | $44,698.16 | 42.51 | Citco Global Custody (NA) NV, Netherlands |
| June 15, 2005 | $566,376.42 | 538.65 | Citco Global Custody (NA) NV, Netherlands |
| June 15, 2005 | $1,572,836.72 | 1495.84 | Citco Global Custody (NA) NV, Netherlands |
| July 15, 2005 | $1,354,042.63 | 1281.8 | Citco Global Custody (NA) NV, Netherlands |
| September 15, 2005 | $2,690.99 | 2.54 | Citco Global Custody (NA) NV, Netherlands |
| September 15, 2005 | $4,237.78 | 4 | Citco Global Custody (NA) NV, Netherlands |
| September 15, 2005 | $55,875.10 | 52.74 | Citco Global Custody (NA) NV, Netherlands |
| November 17, 2005 | $584,991.41 | 538.65 | Citco Global Custody (NA) NV, Netherlands |

### Redemption Payments Received by Defendants from Sentry
### From April 21, 2004 Through November 19, 2008

| | | | |
|---|---|---|---|
| December 19, 2005 | $319,381.83 | 291.89 | Citco Global Custody (NA) NV, Netherlands |
| December 19, 2005 | $792,989.13 | 724.73 | Citco Global Custody (NA) NV, Netherlands |
| December 19, 2005 | $113,554.58 | 103.78 | Citco Global Custody (NA) NV, Netherlands |
| January 19, 2006 | $1,495,058.15 | 1359.05 | Citco Global Custody (NA) NV, Netherlands |
| January 19, 2006 | $179,411.38 | 163.09 | Citco Global Custody (NA) NV, Netherlands |
| January 19, 2006 | $1,026,975.86 | 933.55 | Citco Global Custody (NA) NV, Netherlands |
| February 15, 2006 | $2,922,356.34 | 2638.07 | Citco Global Custody (NA) NV, Netherlands |
| March 17, 2006 | $4,786,139.73 | 4312.08 | Citco Global Custody (NA) NV, Netherlands |
| May 15, 2006 | $1,202,873.58 | 1059.75 | Citco Global Custody (NA) NV, Netherlands |
| May 15, 2006 | $505,712.00 | 445.54 | Citco Global Custody (NA) NV, Netherlands |
| May 15, 2006 | $258,054.55 | 227.35 | Citco Global Custody (NA) NV, Netherlands |
| June 16, 2006 | $2,191,799.23 | 1917.54 | Citco Global Custody (NA) NV, Netherlands |
| July 20, 2006 | $628,887.98 | 547.41 | Citco Global Custody (NA) NV, Netherlands |
| August 14, 2006 | $56,114.50 | 48.33 | Citco Global Custody (NA) NV, Netherlands |
| August 14, 2006 | $1,131,137.32 | 974.22 | Citco Global Custody (NA) NV, Netherlands |
| September 14, 2006 | $921,808.37 | 787.87 | Citco Global Custody (NA) NV, Netherlands |
| November 14, 2006 | $205,295.78 | 173.55 | Citco Global Custody (NA) NV, Netherlands |
| December 15, 2006 | $129,720.13 | 108.73 | Citco Global Custody (NA) NV, Netherlands |
| January 16, 2007 | $380,529.93 | 316.25 | Citco Global Custody (NA) NV, Netherlands |
| February 15, 2007 | $688,899.70 | 570.89 | Citco Global Custody (NA) NV, Netherlands |
| March 16, 2007 | $969,525.04 | 804.35 | Citco Global Custody (NA) NV, Netherlands |
| April 17, 2007 | $138,405.76 | 112.97 | Citco Global Custody (NA) NV, Netherlands |

*Redemption Payments Received by Defendants from Sentry*
*From April 21, 2004 Through November 19, 2008*

| | | | |
|---|---|---|---|
| April 17, 2007 | $231,284.76 | 188.78 | Citco Global Custody (NA) NV, Netherlands |
| April 17, 2007 | $306,288.75 | 250 | Citco Global Custody (NA) NV, Netherlands |
| April 17, 2007 | $329,958.74 | 269.32 | Citco Global Custody (NA) NV, Netherlands |
| May 16, 2007 | $2,721,854.12* | 2200.18 | Citco Global Custody (NA) NV, Netherlands |
| June 15, 2007 | $268,180.77* | 215.04 | Citco Global Custody (NA) NV, Netherlands |
| July 19, 2007 | $42,948.49* | 34.32 | Citco Global Custody (NA) NV, Netherlands |
| August 17, 2007 | $277,224.68* | 221.16 | Citco Global Custody (NA) NV, Netherlands |
| August 17, 2007 | $407,689.25* | 325.24 | Citco Global Custody (NA) NV, Netherlands |
| September 19, 2007 | $410,137.62* | 326.18 | Citco Global Custody (NA) NV, Netherlands |
| October 16, 2007 | $322,120.87* | 253.7312 | Citco Global Custody (NA) NV, Netherlands |
| November 19, 2007 | $407,022.51* | 319.1359 | Citco Global Custody (NA) NV, Netherlands |
| December 19, 2007 | $34,149.12* | 26.5 | Citco Global Custody (NA) NV, Netherlands |
| December 19, 2007 | $69,586.89* | 54 | Citco Global Custody (NA) NV, Netherlands |
| December 19, 2007 | $732,517.99* | 568.44 | Citco Global Custody (NA) NV, Netherlands |
| January 17, 2008 | $297,807.14* | 230.57 | Citco Global Custody (NA) NV, Netherlands |
| January 17, 2008 | $297,807.14* | 230.57 | Citco Global Custody (NA) NV, Netherlands |
| February 15, 2008 | $185,374.88* | 142.6245 | Citco Global Custody (NA) NV, Netherlands |
| February 15, 2008 | $190,048.10* | 146.22 | Citco Global Custody (NA) NV, Netherlands |
| March 18, 2008 | $220,396.47* | 169.46 | Citco Global Custody (NA) NV, Netherlands |
| April 14, 2008 | $342,904.8* | 263.17 | Citco Global Custody (NA) NV, Netherlands |
| May 15, 2008 | $700,000.00* | 532.2994 | Citco Global Custody (NA) NV, Netherlands |
| June 17, 2008 | $484,617.93* | 365.55 | Citco Global Custody (NA) NV, Netherlands |

### *Redemption Payments Received by Defendants from Sentry*
### *From April 21, 2004 Through November 19, 2008*

| | | | |
|---|---|---|---|
| June 17, 2008 | $3,318,920.26* | 2503.48 | Citco Global Custody (NA) NV, Netherlands |
| July 15, 2008 | $73,811.84* | 55.71 | Citco Global Custody (NA) NV, Netherlands |
| August 18, 2008 | $66,720.16* | 50 | Citco Global Custody (NA) NV, Netherlands |
| November 19, 2008 | $186,363.88* | 138.07 | Citco Global Custody (NA) NV, Netherlands |
| November 19, 2008 | $193,247.74* | 143.17 | Citco Global Custody (NA) NV, Netherlands |
| November 19, 2008 | $466,658.82* | 345.73 | Citco Global Custody (NA) NV, Netherlands |

* Denotes Redemptions in the Sentry Vulnerability Period.

**EXHIBIT B**

*Redemption Payment Received by Defendants from Sigma*
*On January 27, 2006*

| Payment Date | Redemption Payment | No. of Shares | Bank Account to which Redemption Payment Was Made |
|---|---|---|---|
| January 27, 2006 | $382,764.37 | 1,896.69 | Citco Global Custody (NA) NV, Netherlands |

All $USD amounts are based on the exchange rate as of the date of the Redemption Payment. However, upon application of a different exchange rate, as may be required by applicable law, the amount of damages may be different.