# EXHIBIT I

THE EASTERN CARIBBEAN SUPREME COURT

VIRGIN ISLANDS

IN THE COURT OF APPEAL

BETWEEN:

Civil Appeal No:  14  of 2011

LODGED
Registrar's Office
MAY 0 4 2011
Virgin Islands
at 4:15P

FAIRFIELD SENTRY LIMITED (in Liquidation)

Appellant

-and-

ALFREDO MIGANI & 22 Others

Respondents

Civil Appeal No:  15  of 2011

FAIRFIELD SENTRY LIMITED (in Liquidation)

Appellant

-and-

BANCO GENERAL SA/BANCA PRIVADA & 30 Others

Respondents

Civil Appeal No:  16  of 2011

FAIRFIELD SENTRY LIMITED (in Liquidation)

Appellants

-and-

BANK JULIUS BAER & CO LTD & 26 Others

Respondents

Civil Appeal No: 17 of 2011

FAIRFIELD SENTRY LIMITED (in Liquidation)

Appellant

-and-

BANK JULIUS BAER & CO LIMITED & 26 Others

Respondents

Civil Appeal No: 18 of 2011

FAIRFIELD SENTRY LIMITED (in Liquidation)

Appellant

-and-

ARBITRAL FINANCE INC & 23 Others

Respondents

Civil Appeal No: 19 of 2011

FAIRFIELD SENTRY LIMITED (in Liquidation)

Appellant

-and-

BANK JULIUS BAER & CO LTD & 33 Others

Respondents

Civil Appeal No: 20 of 2011

FAIRFIELD SENTRY LIMITED (in Liquidation)

Appellant

-and-

WISE GLOBAL FUND LIMITED

Respondents

Civil Appeal No: 21 of 2011

**FAIRFIELD SENTRY LIMITED (in Liquidation)**

Appellant

-and-

**CREDIT SUISSE LONDON NOMINEES LIMITED**

Respondents

---

APPELLANTS WRITTEN SUBMISSIONS
ON LEAVE TO APPEAL, STAY AND APPEAL

---

**Introduction**

1. These written submissions are filed on behalf of the Appellant, Fairfield Sentry Limited (in liquidation) ("Sentry"):

   (a) in support of its application for leave to appeal the judgment (the "Judgment") and order of Mr Justice Edward Bannister, dated 20 April 2011 in each of the proceedings identified in the heading to this document (the "Claims");
   (b) in support of its application for a stay pending the determination of the appeal;
   (c) in support of its application for a direction that the parties make oral submissions before the full court on the appeal; and
   (d) in respect of the appeal itself.

2. The Judgment provides for the hearing of preliminary issues in the Claims. The order that arises from the Judgment has not yet been settled. No transcript of first instance proceedings has yet been produced. The Appeal is made in respect of three of the aspects of the Judgment: (a) the direction that there be a hearing of certain preliminary issues; (b) the refusal of the Judge to order disclosure in respect of the preliminary issues hearing;

and (c) the refusal of the Judge to allow the liquidators to search and index their own documentation for the purpose of finding and disclosing documentary evidence relevant to the determination of the preliminary issues.

**Background**

3. Sentry is a British Virgin Islands company incorporated in 1990 under the terms of the International Business Companies Act, 1984. Sentry was placed into liquidation on 21 July 2009 on just and equitable grounds.

4. Sentry operated as an investment fund and was recognised and regulated by the BVI Financial Services Commission as a professional fund under the terms of the Mutual Funds Act, 1996.

5. The Respondents acquired shares in Sentry by way of an investment and at different times redeemed all or a proportion of those shares. Sentry's Articles of Association provided that the price at which shares in it were to be redeemed by investors should be calculated with reference to the Net Asset Value ("NAV") of Sentry.

6. Approximately 95% of the Sentry's funds were invested with Bernard L. Madoff Investment Securities LLC ("BLMIS"), a company which ultimately proved to be a Ponzi scheme. Accordingly, it is the view of Sentry's liquidators that the NAV for the purpose of making redemption payments to the Respondent and others was calculated under a mistake of fact as, unbeknown to Sentry, BLMIS was in fact operating a Ponzi scheme and its investments in BLMIS were therefore lost from the date of Sentry's investment in it.

7. Accordingly, Sentry, at the instance of its liquidators, filed the Claims, requiring the Respondents and others to make restitution of the overpayment of redemption monies made as a result of the mistaken calculation of NAV or, alternatively, for the setting aside of any redemption on the basis that payment of redemption monies was made under a mutual mistake.

**Preliminary Issues**

8. The Respondents filed applications for directions for the determination of the following issues as preliminary issues (save that some of the Respondents did not seek a determination on (c) as a preliminary issue):

    (a) Whether any certificates within the meaning of Article 11(1) of Sentry's Memorandum and Articles of Association were given by or on behalf of Sentry's directors in connection with the Defendants' redemptions;

    (b) Whether Article 11(1) provides a complete defence to the Claims on the basis of estoppel/contractual allocation of risk; and

    (c) Whether, irrespective of NAV, the Defendants by surrendering their shares gave good consideration for Sentry's payment of redemption monies and whether or not this provides a complete defence to the Claims.

9. On 20 April 2011 the Judge made a direction that the following issues be the subject of a preliminary issues hearing [Judgment, paragraph 23]:

    (a) Whether certain documents constitute a certificate for the purpose of Article 11(1);

    (b) If the answer to (a) is "yes", whether any, and, if so, which, of the documents at issue constitute a certificate as to NAV or a certificate as to redemption price within the meaning of the Articles;

    (c) If the answer to either of the aspects of (b) is "yes", whether the publication or delivery of a document (including certain electronic documents) containing substantially the same information as a document identified at (b) above as a matter of information only or in connection with a redemption request to a redeeming member of Sentry precludes Sentry from claiming that redemption monies were overpaid and were recoverable from that redeeming member; and

(d) Whether a redeeming member of Sentry in surrendering its shares gave good consideration for the payment of the redemption price and whether that precludes Sentry from asserting that the excess redemption payment is recoverable.

10. The Judge ordered that, notwithstanding the determination of the issue at (a) – (c) above in favour of the Respondents, Sentry shall not be debarred from subsequently asserting on the basis of a fact or facts not known to the liquidators of Sentry at the time of the preliminary issues hearing, that a particular defendant to the Claims is liable to pay it all or part of the redemption monies that form the subject matter of the Claims.

11. The Judge further declined to order disclosure.

**Leave to Appeal**

12. For all of the reasons set out below under the subheading "Submissions on the Substantive Appeal", the appeal has a good prospect of success, either wholly or in part. Accordingly leave to appeal should be granted.

**Stay**

13. A very short timetable is contemplated for the filing of further evidence for the hearing of preliminary issues [Judgment, paragraph 25]. Accordingly, provided that leave to appeal is granted, the Court ought to order a stay of the order of 20 April 2011 pending determination of the appeal to avoid the parties incurring unnecessary expense.

**Oral Submissions**

14. The appeal is a procedural appeal within the meaning of ECSC CPR 62.1(2). Such appeals are generally considered by a single judge of the court on paper (ECSC CPR 62.10(3)). Given the value and complexity of the Claims (evidenced by the fact that the Respondents were represented by no fewer than five Queen's Counsel and six junior counsel at first instance (see the appearances in the Judgment)) it is inappropriate for this appeal to be dealt with in this manner. Accordingly, the Court should direct that the parties make oral submissions before the full court pursuant to ECSC CPR 62.10(5).

**Submissions on the Substantive Appeal**

15. The Respondents' applications for preliminary issues were grounded in the following criteria:

    *" [That the issues](i) are potentially dispositive of all the clawback actions; (ii) can be tried rapidly, (iii) can be tried at a considerably reduced cost as compared with a full trial, and (iv) will not cause any material prejudice to the parties by being tried as preliminary issues. ...."*

16. The analysis advanced by the Appellant below was that the courts should be reluctant to order preliminary issues in cases where:

(a) there is some substantial dispute as to the facts *Allen* v *Gulf Oil Refining Ltd* [1981] AC 100 I per Lord Wilberforce at pp. 1010-1011; *Lonrho Pic* v *Fayed* [1992] I AC 448 per Lord Bridge at 470; *Nyembo* v *Refugee Appeals Tribunal and another* [2007] IESC 25;

(b) the questions of law at issue are not simple *Tilling* v *Whiteman* [1980] AC I per Lord Wilberforce at 18; *Allen* v *Gulf Oil Refining Ltd* [1981] AC 1001 per Lord Wilberforce at pp*1010-1011;* *Lonrho Pic* v *Fayed* [1992]1 AC 448 per Lord Bridge at 470;

(c) the process is only likely to add to the cost and length of legal proceedings *Windsor Refrigerator Co Ltd* v *Branch Nominees Ltd* [1961] Ch 375 per Lord Evershed MR at 396; *Tilling v Whiteman* [1980] AC I per Lord Wilberforce at 18; *Customs and Excise Commissioners v Zoological Society of London* [1999] All ER (D) 778 per Lightman J; and

(d) (related to c)) there is some likelihood of an appeal.

17. The Judge, in the Judgment, did not engage with the authorities identified above or with the criteria set out in them, save for saying:

    *"The pitfalls of directing preliminary issues are well known and have been alluded to in numerous judgments handed down by judges at all levels and in many    different jurisdictions. I do not need to cite from these judgments..."* [Judgment, paragraph 12]

18. In failing to properly engage with the case law advanced by the Appellant, the Judge erred.

19. In *Allen v Gulf Oil Refining Ltd*, it was held that preliminary issues should be ordered only in *"clear and simple"* cases. This case is among the most difficult and complicated possible and not appropriate for preliminary issues determination.

20. Further, *Tilling v Whiteman* supports the proposition that preliminary issues determinations should normally be confined to cases where the legal issue is "short and easily decided". In the instant case, the factual and legal issues are not straightforward. Contrary to the Judge's finding in paragraphs 13 and 14 of the Judgment, the Article 11(1) issue is neither short nor easily decided and thus cannot be *"peculiarly suited to be taken as a preliminary issue"*. For example, the Respondents have asked the court to rule that in circumstances where no document expressly described as a certificate was issued by Sentry's directors, other documents (account statements to shareholders, references to the NAV in emails to shareholders and on Citco's website) should constructively be determined to be "certificates" and count as such for the purposes of a binding NAV pursuant to Article 11(1) of Sentry's Articles.

21. The alleged "good consideration" defence is similarly not an issue that is "short and easily decided", contrary to the Judge's finding at paragraph 19 of the Judgment. There is no clear authority in point as to whether any consideration will suffice or whether the defence operates only *pro tanto* the value given. In the latter case, the issue is conclusive in neither direction, as any alleged value given will have to be ascertained as a matter of disputed fact.

22. Nor is it right to say, as the Respondents submitted and as the Judge appeared to accept, that it does not matter whether these issues are appealed at the preliminary issues stage or after a trial on the full facts. Any appeal is likely to progress to Privy Council level and that would hold up the eventual trial for a long period. Further, should an appeal be taken to the decision of the eventual trial, there may in consequence be two appeals, with each potentially going as far as the Privy Council, and with each bringing attendant delays and cost consequences.

23. Paragraphs 18 and 23(3) of the Judgment allow the liquidators of Sentry to challenge, in relation to each individual Defendant to the Claims, the result of the determination of the Article 11(1) issue (if adverse) by reference to actual facts not known to the liquidators at the time at which the preliminary issues hearing is held.

24. In order to determine the proper factual position, the liquidators of Sentry would need to review the significant number of documents in their possession (estimated at approximately 500,000) and those documents which have yet to come into their possession (such as emails – both internal and external). It follows that in those circumstances this ruling would not save time or money in the long run.

25. Even if the Judge is correct that the Article 11(1) issue and the good consideration issue, as formulated therein, are suitable for preliminary determination, there remains the issue of disclosure.

26. The Judgment expressly precludes disclosure before the preliminary issues hearing.

27. The refusal to order disclosure before preliminary issues are determined necessitates the hearing of the preliminary issues application and a resulting decision uninformed by all of the facts. If successful on the preliminary issues, the final disposal of the actions would require that the Respondents make a further application for summary judgment on the basis of such determination. It would then be open to the liquidators to oppose such applications on the basis of the relevant facts specific to each defendant.

28. The formula set out by the Judge at paragraph 23 of the Judgment therefore requires a split process in which issues of law and fact are decided in isolation from each other. Aside from the obvious disadvantages of artificially separating factual from legal issues in terms of reaching a fully considered and well-reasoned decision, there are potential drawbacks in relation to the cost-effectiveness and potential for delay of the proposed procedure.

29. Further, given that the Judgment precludes the liquidators of Sentry from reviewing their own documents, they will not be in a position to avail themselves of the provision made by the Judge at paragraph 23(3) of the Judgment.

**Conclusion**

30. In light of the foregoing the Court should:

    (1) Grant the Applicant/Appellant leave to appeal;
    (2) Stay the order of 20 April 2011 pending the determination of the appeal;
    (3) Direct that the parties are to make oral submissions on the appeal before the full court; and
    (4) Ultimately, set aside the order of 20 April 2011 herein; or
    (5) In the event that the order of 20 April 2011 is not set aside, make orders for disclosure in the terms of the draft order lodged on 4 May 2011.

31. It is recognised that the Claims require appropriate case management, however the appropriate course would be to direct a test case that would decide all of the issues save for change of position defences which are highly fact sensitive.

Robert Nader
Forbes Hare

4 May 2011