# EXHIBIT M

IN THE HIGH COURT OF JUSTICE

(VIRGIN ISLANDS)

(CIVIL)

BVIHCM NO. 0030   OF 2010

BETWEEN:

ABN AMRO FUND SERVICES (Isle of Man) NOMINEES )
                                              )
                    Claimant                  )
           vs.                                )
                                              )
FAIRFIELD SENTRY LIMITED (in liquidation)     )
                                              )
                    Defendant                 )
_____ )

TRANSCRIPT OF CHAMBER PROCEEDINGS

Monday, 10th October 2011
9:41 a.m.

BEFORE:    HONOURABLE EDWARD BANNISTER, Judge

Court Reporting Unit
Government of the British Virgin Islands
Road Town, Tortola
British Virgin Islands

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

```
APPEARANCES:            FORBES HARE
                        Chambers
                        Road Town, Tortola
                        British Virgin Islands
                        BY:  MICHAEL BRINDLE QC,

                        For the Claimant


                        MAPLES AND CALDER
                        Chambers
                        ROAD TOWN, TORTOLA
                        BRITISH VIRGIN ISLANDS
                        BY:  DOMINICA CHAMBERS QC, and
                        ARABELLA DI IORIO

                        For the Maple & Calder Defendants

                        O'NEAL WEBSTER
                        Chambers
                        ROAD TOWN, TORTOLA
                        BRITISH VIRGIN ISLANDS
                        BY:  LORD FALCONER, QC,
                        PAUL WEBSTER, QC and
                        NADINE WHYTE

                        For the O'Neal Webster Defendants


                        HARNEYS
                        Craigmuir Chambers
                        Road Town, Tortola
                        British Virgin Islands
                        BY:  MARK HAPGOOD QC,
                        and KISSOCK LAING


                        For the Harneys Defendants
```

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2                          * * *

 3          THE CLERK:                  BVI HCM 30 of

 4   2010 - ABN Amro Fund Services (Isle of Man) Nominees

 5   Limited v. Fairfield Sentry Limited (in liquidation).

 6          THE COURT:                  There is a

 7   small, cosmetic correction to the draft judgment which

 8   I earlier circulated.

 9          In Paragraph 17 on page 8, four lines or

10   the fifth line from the end of that paragraph 17, the

11   word 'mistaken' has been added after the words

12   'confuses one'.  The word 'mistaken' has been added

13   into the first numbered sentence.  But with that slight

14   difference, I formally deliver that judgment and I

15   dismiss the Claim against ABN Amro accordingly.  Who is

16   going next?

17          MR. HAPGOOD:                Well, I think,

18   My Lord, it is probably for me to take off, if that is

19   agreeable to Your Lordship.

20          THE COURT:                  Yes, it is.

21          MR. HAPGOOD:                There are one

22   or two loose ends that needs to be tied up.

23          The first is and I don't think Your

24   Lordship has yet formally made or signed the Order

25   which the parties have been agreeing in relation to the
```

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1  hearing on the 16th of September.  I don't know whether

2  Your Lordship has been given a copy of that.  I think

3  there is one tiny point that may need to be sorted out.

4           THE COURT:              Right.  I am

5  not sure I have a copy in front of me, Mr. Hapgood.

6           MR. HAPGOOD:            Well, perhaps

7  if one could be located.  I will come back to that.

8           Now, in relation to the hearing on the

9  27th of September, I invite you to dismiss the Claim

10 against ABN Amro in Action 30 of 2010.

11          THE COURT:              Yes.  I have

12 done that.

13          MR. HAPGOOD:            Thank you.

14          Now, the question then arises in relation

15 to other claims in the eight actions against the

16 Defendants represented by Harneys, nearly all of whom

17 were, was being termed the 'PI Defendants'.  There is

18 one which was served late and he wasn't formally a PI

19 Defendant and I think there was a second one in that

20 category.

21          Now, what we invite you to consider is in

22 the exercise of your powers under CPR 26.1 (2)

23 paragraph (i) and (w).  (i) you are familiar with.  You

24 dealt with it in your recent judgment.  (w) is you

25 partake any other debt, give any direction or make any

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1   other order for the purpose of managing the case and

2   furthering the overriding objectives.

3            Now, since and there is I think a

4   corresponding application made on behalf of the other

5   three firms and their respective clients.

6            Now the position is that every claim

7   alleged by Fairfield Sentry was formally in identical

8   terms; and, therefore, it must fail in the light of the

9   failure of the claim against ABN Amro that all the

10  other claims will fail.

11           There is, in our respectful submission,

12  no point whatsoever of the Defendant being put to the

13  costs of issuing what would be a very great many

14  applications.  It was not fair on the Defendants to

15  have in some cases very large claims hanging in the

16  air.  This is one context in which finality is an

17  important policy of the law; and, of course, the

18  hearing on the 27th proceeded on the basis, on the 16th

19  September, that in effect one PI Defendant would be

20  representative of all the PI Defendants.  So a

21  streamlined procedure and finally we do not want to

22  send a confusing signal to Judge Lifland.  As it

23  happens Judge Lifland has just stayed all the actions

24  in the bankruptcy court before him.  He did so pending

25  two matters.  One of which was sight of your judgment

1    which he would now be shown.  But we do want it to be

2    clear to Judge Lifland that all these claims are being

3    dismissed.

4              We don't seek an Order beyond the 8

5    actions in which preliminary issues were ordered to be

6    heard, but we do seek an order that in those 8 actions,

7    all claims against all Defendants who are represented

8    by the four BVI firms who have been instructed in this

9    matter should now be dismissed.

10             THE COURT:                Mr. Brindle,

11   are you there.

12             MR. BRINDLE:              My Lord, as far

13   as the 8 actions are concerned, there is no dispute

14   about that.

15             THE COURT:                I am glad to

16   hear that.

17             MR. BRINDLE:              The matter is

18   different and I don't know what my learned friend is

19   going to say in relation to the other Defendants who

20   are not within the 8.

21             MR. HAPGOOD:              Well, I will

22   say nothing at all about that because that is something

23   which I think can eventually be ventilated in

24   correspondence and will happy to try to see if we can

25   find the best way forward.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1          THE COURT:                In exercise of

2     my case management powers, therefore, I am going to

3     treat the other 7 claims as being in front of me this

4     afternoon as far as you are concerned and I am going to

5     dismiss those claims along with the claim against ABN

6     Amro.  I am not saying anything about any claims that

7     weren't in front of me on the 28th and 29th of July.

8               MR. HAPGOOD:               Thank you.

9          My Lord, may I then move on to costs.

10             There are three aspects to costs, of

11    which two are probably not actually going to be an

12    issue.  There is, first, what one might called the

13    round one costs.  That is to say the costs of the

14    application for an order for the hearing of preliminary

15    issues that were ordered before you on the 18th of

16    April and Your Lordship gave judgment on that on the

17    20th of April.  And on costs Your Lordship ordered that

18    the costs of the application for preliminary issues be

19    put in the preliminary issues.  Paragraph 8 of the

20    Order of the 28th of April; and then in addition to

21    that there is the costs of the one and a half day

22    hearing on the 28th and 29th of July.

23             Now, I don't know if Your Lordship has

24    been provided with a copy of the skeleton arguments

25    which we put on the 14th September, which from

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1472

1    paragraphs 8 to 16 made our collective submissions on

2    the costs incurred on those very dates, 8th and 20th of

3    April, 28th and 29th July.  Essentially there are two

4    facets to this.  First, of course, we have to accept

5    that we did not succeed on everything because we lost

6    on Article 11.  But against that are these factors.

7            The first is that we were completely

8    successful at the April hearing.  Indeed, Sentry, if

9    you will recall, strongly opposed any trial of

10    preliminary issues and indeed, Your Lordship twice

11    asked Mr. Gadd why Sentry was opposing.  In the event

12    Your Lordship ordered and which was upheld and endorsed

13    twice in the Court of Appeal has resulted in an

14    enormous savings of costs and, in my submission, those

15    factors should be reflected in your overall order.

16            Furthermore, it was in a sense one

17    issued, one overriding issue at the end of July,

18    namely, was there an argument which could short circuit

19    or would otherwise have been absolutely massive

20    litigation; and the answer to that turned out to be,

21    yes.  So for those reasons and reasons we gave in our

22    skeleton argument, in my submission, there should be no

23    deduction on the paragraph 11 point.

24            Now, there is then the question of the

25    extent of the legal representation of the PI Defendant.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1    Now, can I please take separately, one, the costs of

2    the BVI firms as they appeared before you and,

3    secondly, the costs of the four London counsel who

4    appeared before you.  As regard the BVI firms, in my

5    submission, there should be no absolutely no reduction

6    at all.  Fairfield chose to pursue some 55 financial

7    institutions, most of them were served out of the

8    jurisdiction and they were entirely at liberty to

9    choose the firm of their choice to represent them in

10   the BVI of course many of the institutions already had

11   an established link with a BVI firm.  And, therefore,

12   there was nothing unreasonable in that large number of

13   banks having instructed different firms and there was

14   nothing unreasonable in those firms helping to prepare

15   the application and being present in Court to protect

16   their clients' interests.

17              Now, as regards the costs of London

18   counsel and what of course would not be visible to you

19   is the enormous amount of work that was done here in

20   London between the four counsels coordinating the

21   presentation of the case and trying to ensure that Your

22   Lordship had the benefit of a single skeleton argument

23   which in the event we were able to achieve.  Mr.

24   Brindle accepted at the telephone hearing on the 15th

25   of September that the fact that there had been four

1   London counsel had not added to the length of the

2   hearing.  The banks, our clients were facing enormous

3   claims including in the case of Mr. Chambers, a claim

4   for more than $8 hundred million in one of the actions.

5   And, in my submission, unless Your Lordship felt that

6   this had somehow been duplicated or otherwise wasteful,

7   then having succeeded we should have our costs.

8          If you are minded to knock something off,

9   we would please ask that you do so on the basis that

10  the counsel's fees or leading counsel's fees are

11  reduced at the same rateable proportion because that

12  reflects the fact that although some of us were less

13  than others, it was in a great genuine sense a team

14  effort.

15         Now, that just leaves the costs of the

16  telephone hearing on the 15th September, and the costs

17  of the hearing on the 27th of September, and in my

18  submission, Mr. Brindle challenged our client or took

19  the point about there being no ruling on mutual

20  mistake.  We came and we argued it and we've succeeded

21  and so we should have our costs of that application.

22  Similarly, we should have the residual costs of the

23  actions which would cover such matters like settling

24  the Defence et cetera, et cetera.  So those are my

25  submissions on costs.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

```
1              THE COURT:              Yes, Mr.

2     Brindle.

3              MR. BRINDLE:              Yes.  My Lord,

4     there seems to me to be two essential points:  One is

5     how to deal with the costs of the preliminary issues

6     and we would say that would also apply to the costs of

7     the 28th of April on the one hand and, secondly, the

8     question of how much sets of costs should be allowed

9     which is quite a separate point.

10             On the first point, with respect to my

11    learned friend, he doesn't already recognise it, but

12    they did not succeed by any means on the preliminary

13    issues.  He doesn't give any effect to that in his

14    arguments.

15             Now, My Lord, the position is looking at

16    it in a sense back to front, of course on summary

17    judgment they should have their costs; and, of course,

18    on the action as a whole, they should have their costs

19    because they have won.  But insofar as the preliminary

20    issues were part of that process, I would submit they

21    should be dealt with separately.  It was the Defendants

22    who sought the preliminary issues and choose them to a

23    large extent and they chose broadly two issues one of

24    which turns out to be found against them.  A great deal

25    of time and effort was directed to that issue.  I
```

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1    wouldn't say most of it, but it probably is, in fact,

2    most of the time.  Certainly most of Your Lordship's

3    judgment was directed to that issue on which they lost.

4    And our respectful submission is that the justice here

5    is to say that in that part of the action that

6    concerned the preliminary issues, that ought to be

7    dealt with on the basis of who won and who lost the

8    preliminary issues and it was a draw.  We won one, big

9    point.  They won one, big point.  And to fail to give

10   effect to that would be quite unfair.

11              They, of course, get their overall costs

12   of the action subject to this, but having chosen one

13   substantial point to argue on which they failed, it

14   would be quite unjust that they should have their

15   costs.  It would be quite unjust they shouldn't pay the

16   costs of that.  Of course, there is no point in making

17   an order that is too complicated; that we have our

18   costs on one bit and them on the other.  A better

19   result is that they simply cancel each other out.  But

20   if they get their overall cost of the action including

21   summary judgment, but don't get the costs of the

22   preliminary issues which were 50/50 that's a fair

23   result.

24              I would submit that that position which I

25   was going to submit last time is actually rather

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1    stronger after we had the last two hearings because

2    Your Lordship has said in your recent judgment that, in

3    fact, the preliminary issues have turned out to be

4    rather less dispositive than it was thought they might

5    be.  There was a need for quite a complex further

6    argument in which you have given quite an elaborate

7    judgment to dispose of the question of Summary

8    Judgment.  So that is what I say fairly, firmly on the

9    first point, that the preliminary issues costs should

10    not be adverse to us for those reasons.

11              The second point is the point about one

12    set of costs or more.

13              Now my learned friend has not directed

14    you to the provisions of the rules which Your Lordship

15    will be familiar with under Rule 64.7 of the Eastern

16    Caribbean Supreme Court Rules which I am sure are

17    readily to hand in some form or other in court.  If

18    Your Lordship has not got it on your desk, I am sure

19    somebody from my side can give it to you.  But as you

20    will be aware what it says very shortly is --

21              THE COURT:              Yes, I have got

22    it.  I have read it, Mr. Brindle.

23              MR. BRINDLE:              -- if two or

24    more parties having the same interest are separately

25    represented, the Court may disallow more than one set

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1478

1   of costs.

2             This particular point seems to me with

3   respect to have been well envisaged by the rule makers.

4   What we have here is parties with absolutely identical

5   interests and I mean absolutely identical interests

6   deciding for reasons which they are perfectly entitled

7   to if that is the way they want to run their

8   litigation, to engage four or five, I can't remember

9   which it is, sets of lawyers, because they have not

10   only a full BVI set, but a full London set as well and

11   leading counsel to boot all to come along and incur

12   vast amounts of costs all arguing exactly the same

13   point.

14             Now, my learned friend made the point

15   last time which I accepted and I repeat my acceptance

16   of it.  In terms of the way the matter was dealt with

17   in court, it was dealt with expeditiously and the

18   defendants were very careful not to waste the Court's

19   time and they did not waste the Court's time and they

20   did not repeat themselves.  And the matter was dealt

21   with in court very expeditiously, but if we are looking

22   at the incidents of costs, what we are being asked to

23   pay here are four or five, I can't remember how many it

24   is, sets of doubled costs by parties who are in the

25   same interest and no good reason has yet been come up

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1   with by the other side as to why they needed to

2   multiply this by five and why one party couldn't

3   perfectly easily have been chosen, ABN Amro was chose

4   as the lead Defendant, so to speak.  Why couldn't it

5   just have been ABN Amro's costs?  Why should we have to

6   pay five times, if that is the right number, maybe

7   four, those costs?  And no good reason has been adduced

8   for that.

9          The Rule is there under 67.4.  And I

10   would submit it is a paradigm case for the application

11   of that Rule.

12          There is further point I would like to

13   make in relation to the Ogier Defendants that their

14   position is particularly weak because they opposed, as

15   Your Lordship may possibly recall --

16          THE COURT:          I do remember

17   that.

18          MR. BRINDLE:          -- they opposed

19   the issue four preliminary issue at all and it would be

20   most unfair if they having opposed the point on which

21   they won should be rewarded by a full set of costs in

22   their favour and so that's in a sense a particular

23   point in relation to them which they may want to deal

24   with.  But I think Your Lordship has my point.  I have

25   made them before.  They wouldn't come as any surprise

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1480

1    to Your Lordship.

2                    THE COURT:                Thank you.  Mr.

3    Hapgood.

4                    MR. LORD:                My Lord, could

5    I just respond to the point about the Ogier Defendants?

6                    THE COURT:                Yes, Mr. Lord.

7                    MR. LORD:                My Lord, it is

8    not correct for Mr. Brindle to say that we opposed the

9    consideration issue.  We simply didn't propose it in

10   our application form.

11                   My Lord, I made it perfectly clear to

12   Your Lordship on the 18th that if Your Lordship was

13   minded to order it we were very happy to go along with

14   it and we would argue it and we would support the

15   consideration defence.  And I showed Your Lordship

16   where the consideration defence is pleaded in our

17   pleadings.

18                   So, My Lord, that is an unfair point by

19   Mr. Brindle.

20                   My Lord, just in reply, can I just deal

21   very briefly with the two points he makes.  What Mr.

22   Brindle doesn't give any consideration for is the fact

23   that on the overriding objective it was our proposal

24   to --

25                   THE COURT:                It was a

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1481

1    preliminary issue.

2                    MR. LORD:                    It was opposed

3    by Mr. Gadd.  If Your Lordship had gone along with the

4    liquidator's suggestion, we would be two years down the

5    line and would be millions of dollars down the line and

6    the fact of the matter is we proposed these.  They have

7    been proposed.  They have been dealt with.  They have

8    been dealt with, which Mr. Brindle fairly accepts,

9    efficiently.  And they have had a considerable say in

10   your costs.  And Your Lordship, in my submission, must

11   have said that in any order Your Lordship made.

12                   My Lord, the other point is there was a

13   considerable overlap in relation to the two issues and

14   insofar as we had only proposed the consideration

15   issue, I very much expect that it would have amount to

16   very much of a saving in costs; and ultimately, as the

17   Rules make clear, the general rule that a successful

18   party, which is the Defendant in this case, should be

19   awarded their costs.  This is not the sort of case and

20   we all know those sort of cases where days and days and

21   days are taken on issues which are lost and in those

22   circumstances there are a myriad of decisions in the

23   case before where people said, well, six days were

24   taken up on this issue or the issue that you lost and,

25   therefore, disallowing those costs.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1          My Lord, as far as the point about the

2     identical interests, My Lord, Mr. Brindle really misses

3     the point.   The point is that his client has chosen to

4     sue a whole host of defendants in a rather scatter-gun

5     approach and they have all quite reasonably got

6     together and instructed a number of firms and it would

7     be completely unrealistic if not impossible for them to

8     have instructed one firm.

9          As far as the Ogier clients are

10    concerned, there are six of them concerned with the

11    preliminary issues.   There is another 8 or 9 and Your

12    Lordship will see even when Your Lordship comes to

13    assess the costs the amount of effort that it takes to

14    coordinate all of this it would have been completely

15    impossible for one firm of solicitors or for one Q.C.

16    to have dealt with all of these banks and to have got

17    approval for one common skeleton argument, one common

18    approach in the submissions.   And what Your Lordship

19    has to bear in mind is that at this stage what you are

20    deciding are questions of principles.   You are not

21    deciding, as I understand it, questions of

22    reasonableness.   And Mr. Hapgood made it clear in

23    telling Your Lordship that we have worked incredibly

24    hard to make sure that there has been no duplication.

25          Now, it may be that when Your Lordship

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1   comes to assess the costs, you look at them and say

2   maybe there were some costs that could have been

3   avoided but those are questions of reasonableness.

4   They are not questions of principle that are before

5   Your Lordship today and for those reasons I endorse

6   everything Mr. Hapgood said and would ask Your Lordship

7   to follow the general rule.  We have won.  We should

8   have our costs.  Not only the costs of the proceedings,

9   not only ABN Amro's costs to summary judgment, but the

10  entire costs of the preliminary issues which ultimately

11  has saved an awful lot of money both for the

12  liquidators and our clients.

13          MR. CHAMBERS:          My Lord, this

14  is Dominic Chambers for the Defendants.  I gratefully

15  adopt what my learned friends Mr. Hapgood and Mr. Lord

16  said.

17          So far as my learned friend Mr. Brindle's

18  first point is concerned the costs of the preliminary

19  issues, what my learned friend ignores is our extension

20  in April which got the preliminary issues order and

21  then heard by Your Lordship in July.  It also ignores

22  the fact that we were willing in July in the sense that

23  we achieved our objective which was to get the action

24  dismissed.

25          So far as the second point is concerned,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1484

1   sets of costs, it was, in our submission, quite

2   reasonable for the banks to instruct who they did.  It

3   was particularly important for Credit Suisse to be able

4   to instruct Maples and Calder.  Credit Suisse was in a

5   somewhat different position from some of the other

6   defendants not least because we weren't being sued in

7   the United States of America; and, in our submission,

8   it would be wholly unjust and wrong to deprive Credit

9   Suisse of these costs, in particular the costs of

10  instructing Maples and Calder and if there is to be any

11  deduction in costs, it should be a deduction in the

12  costs of London counsel pro rata as my learned friend

13  submitted.  Those are my submissions.

14              THE COURT:              Thank you.

15              MR. WEBSTER:              And, My Lord, I

16  appear on behalf of the O'Neal Webster Defendants.  I

17  adopt the previous submissions.

18              THE COURT:              Well, I have to

19  decide now how to deal with the costs of this action.

20              It is common ground that the costs of the

21  proceedings generally and of the Summary Judgment

22  Application in which I have just handed down judgment

23  should be met in principle by the Claimants.  So that

24  is the first Order I make.

25              When I directed a preliminary issue on

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1    the 20th of April, either then or subsequently and I

2    can no longer remember, I said that the costs of that

3    application should be costs in the preliminary issue.

4    When the preliminary issue came on for hearing, it

5    turned out that one issue was decided against the

6    applicants, but another one, as formulated, was decided

7    in their favour.  Even that didn't dispose of the case

8    finally but it is implicit in the Rules that

9    preliminary issue, sorry, that a preliminary issue may

10   properly be heard even if it doesn't dispose of the

11   proceedings as a whole.

12               It seems to me that the proper order to

13   make in relation to that is that Fairfield Sentry

14   should pay 75 percent of the Defendants' costs and the

15   reason I say that is because although the Article 11

16   point was lost and although the consideration point did

17   not finally dispose of the action, in fact it has a

18   significant role in its final determination in

19   accordance with the judgment I have just given.  So I

20   think that the justice of the case is that the

21   liquidators should pay 75 percent of the preliminary

22   issue application and of the hearings of those issues.

23               I now have to turn to the question of

24   multiple representation and Mr. Brindle has drawn my

25   attention to Part 64.7 of the Civil Procedure Rules and

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

```
 1    it is obviously important.  If two or more parties turn

 2    up with solicitors and counsel to argue exactly the

 3    same point, that in a proper case multiple sets of

 4    costs should not be permitted.  But this doesn't seem

 5    to me to be an ordinary case.  I mean the sums here are

 6    vast.  The claims are vast and it seems to me that

 7    people facing claims of this magnitude and potentially

 8    years and I mean years of litigation based upon them

 9    are entitled to have their own counsel arguing their

10    calling.

11              There obviously was a great deal of

12    cooperation.  At the moment it is impossible for me to

13    see how much, but I am not in principle going to award

14    only one set of costs in relation to the hearings other

15    than the last one where obviously only ABN Amro

16    appeared.

17              But in saying that I do bear in mind that

18    certainly on the Article 11 point three counsel turned

19    up at the hearing to argue essentially different

20    paragraphs of one argument and it may be that when the

21    thing is considered in the round it turns out that

22    there was no need, at the hearing, for more than one

23    counsel to argue anything.  So that although it seems

24    to me that these institutions are entitled to separate

25    solicitorial costs and I can quite see that in the run
```

1    up to the hearing it is likely to be reasonable that

2    they should have separate counsels' costs, I am not

3    deciding any of those points at the moment.  That will

4    have to be done on an assessment, but as far as brief

5    fees are concerned for the 28th and 29th of July, it

6    seems to me that that is very much at-large.  And so in

7    saying that I am not in principle going to deprive the

8    parties of separate sets of costs for both solicitors

9    and counsel.  I am making it quite clear that when it

10   comes to assessment, it may be that more than one,

11   sorry, it may be that work done by one counsel or even

12   one firm of solicitors may turn up to have been

13   unnecessary.

14          So in that way I'm not at this stage in

15   the state of my knowledge or rather in the state of my

16   influence making on order which should be one set of

17   costs but on assessment it seems to me that any

18   submissions will be listened to and I'll make my

19   decision accordingly if it turns out it is me that has

20   to assess it.  Is there anything else?

21          MR. HAPGOOD:              Did Your

22   Lordship also Order that costs be petered out in

23   expense of the liquidation?

24          THE COURT:                They are not an

25   expense of liquidation, Mr. Hapgood.  They are simply

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1   paid because the company chose to litigate in its own

2   name.  So that they just come up first.

3                  MR. HAPGOOD:              Right.  Okay.

4   Thank you very much for that.

5                  THE COURT:              I think you'll

6   find that's the position.  It is just I mean the

7   liquidators can't say whoops we're in liquidation.  It

8   is all unfair.  It is just that is hung around their

9   necks as a result of what they choose to do in the

10  company's name.

11                 MR. HAPGOOD:              Thank you, My

12  Lord.

13                 THE COURT:              I think

14  everybody very much for dealing with this so

15  efficiently.

16                 (Matter adjourned at 10:15 a.m.)

17

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1

2

3                    REPORTER'S CERTIFICATE

4

5          I, YVETTE MADURO, Certified Court Reporter do

6    hereby certify:

7          That on the 10th day of October, 2011,

8    the foregoing proceedings were taken down by me in

9    machine shorthand, consisting of 25 pages herein; that

10   the foregoing is a true and correct transcript of the

11   proceedings had.

12         That I am not an attorney, relative, or

13   employee of any party hereto, or otherwise interested

14   in the events of this cause;

15         IN WITNESS WHEREOF, I have hereunto affixed

16   my signature at Road Town, Tortola, British Virgin

17   Islands, this 26th day of January, 2012.

18

19

20

21         _____
           YVETTE MADURO
22         Certified Court Reporter

23

24

25

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT