# EXHIBIT N

BRITISH VIRGIN ISLANDS
EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
COMMERCIAL DIVISION

CLAIM NO. BVIHC (COM) 357 OF 2009
FAIRFIELD SENTRY LIMITED (in Liquidation)
And
ALFREDO MIGANI & 22 Others

CLAIM NO. BVIHC (COM) 404 OF 2009
FAIRFIELD SENTRY LIMITED (in Liquidation)
And
BANCO GENERAL SA/BANCA PRIVADA & 30 Others

CLAIM NO. BVIHC (COM) 425 OF 2009
FAIRFIELD SENTRY LIMITED (in Liquidation)
And
BANK JULIUS BAER & CO LTD & 26 Others

CLAIM NO. BVIHC (COM) 5 OF 2010
FAIRFIELD SENTRY LIMITED (in Liquidation)
And
BANK JULIUS BAER & CO LIMITED & 26 Others

CLAIM NO. BVIHC (COM) 15 OF 2010
FAIRFIELD SENTRY LIMITED (in Liquidation)
And
ARBITRAL FINANCE INC & 23 Others

CLAIM NO. BVIHC (COM) 30 OF 2010
FAIRFIELD SENTRY LIMITED (in Liquidation)
And
BANK JULIUS BAER & CO LTD & 33 Others

CLAIM NO. BVIHC (COM) 153 OF 2010
FAIRFIELD SENTRY LIMITED (in Liquidation)
And
WISE GLOBAL FUND LIMITED

**FAIRFIELD SENTRY LIMITED (in Liquidation)**

**And**

**CREDIT SUISSE LONDON NOMINEES LIMITED**

Appearances:   Mr Dominic Chambers QC and Ms Arabella di Iorio for the Maples & Calder Defendants
Mr David Lord QC, Mr Robert Foote and Ms Claire Goldstein for the Ogier Defendants
Mr Mark Hapgood QC, Mr Philip Kite and Mr Kissock Laing for the Harneys Defendants
Lord Falconer QC, Mr Paul Webster QC and Ms Nadine Whyte for the O'Neal Defendants
Mr Michael Gadd and Mr William Hare for the Claimant

## JUDGMENT

[2011: 18, 20 April]

(Mutual fund claiming repayment of redemption money as having been paid by mistake of fact – Article providing that certificate of NAV or redemption price binding on the parties – defendants claiming article provides redeemers with complete defence – whether to order trial of preliminary issue with disclosure and witnesses – claimant alleging need to ascertain full facts by examining fund's documents – balance of convenience and risk in deciding whether to order preliminary issue – whether if issue ordered there should be full disclosure or whether issue to be decided as question of mixed law and fact on exhibited documents – whether should be saving for facts that might emerge in future – how to protect claimant in that event - whether to order second preliminary issue as to defence of bona fide purchaser for value – directions – multiple representation)

[1]    **Bannister J [ag]:** These are applications made by certain defendants in certain proceedings which have been brought by Fairfield Sentry Limited ('Sentry'), acting by its Joint Liquidators ('the Liquidators'), since September 2009 in order to recover redemptions made by Sentry before it went into liquidation on 21 July 2009. To date, and with the approval of this Court, the Liquidators have caused Sentry to commence 15 such actions, seeking to impeach, in the earlier claims, redemptions made on and after September 2003, but with the claims made in at least one of the later actions going back to 1997. These latter claims raise obvious limitation difficulties, but I am not concerned with that issue in the applications with which I now have to deal.

[2]    The claims are identical in each case. Sentry alleges that the relevant redemption payments being attacked were made under a mistake of fact. Sentry pleads that 95% of funds under management

were invested (if that is the right word) with Bernard L Madoff Investment Securities LLC ('BLMIS') and that given the nature of the Ponzi scheme run by that entity, the very making of the investments involved their immediate loss, with the consequence, so it is pleaded, that the NAV's on which the redemption payments were predicated were illusory or very nearly illusory. Although not pleaded in this way, the mistake relied upon is that Sentry, when it calculated the redemption price, thought it had much more money in the bank, so to speak, than it really had and it is this mistake that Sentry relies upon in order to plead that the redeemers were unjustly enriched when they redeemed their shares.

[3] Some but not all of the defendants against whom claims have been made have put in defences. These documents are, I understand, largely (although not completely) identical in substance. They plead a number of elaborate defences based upon various types of estoppel (which may in truth be the same defence dressed up in a variety of different clothing), but all rely upon Article 11(1) of Sentry's Articles of Association, the material part of which is in the following terms:

> 'Any certificate as to the Net Asset Value per Share or as to the Subscription Price or Redemption Price therefor given in good faith by or on behalf of the Directors shall be binding on all parties.'

[4] The applicants all plead that Sentry is estopped by Article 11(1) from attempting to go behind the NAV upon which the impugned redemptions are said to have been based. I shall refer to this as 'the Article 11(1) defence.'

[5] The applicants additionally plead that by paying for their redemption proceeds by surrendering their rights as members of Sentry, they are to be treated as bona fide purchasers for value of the redemption monies and that because they were paid out by way of bargain and sale that bargain cannot now be reopened. I fear that I may have done less than justice to the argument, but that is the best I can do. I shall call this 'the consideration defence.'

[6] The applications before me are for orders that the Article 11 defence and the consideration defence be tried by way of preliminary issue. The applicants say that if one or other of these defences is held good at the preliminary issue stage that will be the end of the proceedings, with the consequent saving of the costs of a seven week (or three month – estimates differed) trial avoided.

[7]   The obvious flaw with this attractively simple way of putting things is that if the preliminary issues are ordered but the applicants fail when they are tried, they will appeal – potentially as far as the Privy Council. If they continue to fail all the way up, that will produce very considerable delay, delay during which the costs of running the liquidation in the meantime will necessarily escalate to the disadvantage to Sentry's investors. On the other hand, there can be no doubt that if there preliminary issues are ordered and tried and the applicants succeed upon them (or one of them) then, subject to various matters which I will have to deal with in a moment, there will be a self evident saving in costs to the applicant defendants and to the estate. Further, the Liquidators will be able to close the liquidation far sooner than if matters had to be held up for a full trial of the redeemer claims, (and whether or not that were to be achieved by selection of a test case).

[8]   Surprisingly, the applications are opposed by the Liquidators. I would have expected that, faced with a potentially determinative preliminary point (or points), the Liquidators would have wished, in the interest of investors, to have it decided at the earliest opportunity so as to eliminate the detriment to the estate caused by the risk of fighting a potentially ruinously expensive set of doomed proceedings. But Mr Gadd, who, together with Mr Hare, has appeared on the present applications for the Liquidators, submits, first, that before I make any decision whether to order the trial of these preliminary issues, I should wait until he has begun and completed the examination of over 500,000 pages of documents which have been handed over to the Liquidators by the Sentry's administrator, Citco Fund Services Europe BV ('Citco'). He estimates that this task will require the application of some 1,400 man hours, will take twelve weeks and will cost, as he puts it, six figures. If one assumes a middle ranking employee carrying out this task at a rate of US$250 per hour, the cost on that basis will be in the region of some US$350,000.

[9]   Mr Gadd's reason for submitting that this task should be completed before I even consider whether to order the trial of preliminary issues is that it may turn out that in relation to some of the documents relied upon by the applicants as certificates of NAV or of Redemption Prices there exist side agreements pursuant to which particular redeemers agreed not to rely upon such documents as certificates within the meaning of Article 11(1). Further, he says that amongst the 500,000 pages of potentially disclosable documents, there may be documents that evidence a want of authority on the part of Citco either to calculate or to certify NAV's or Redemption Prices. If he can

show that, submits Mr Gadd, then the certificates relied upon by the applicants will not fall within Article 11(1), since they will not have been given or made 'on behalf of' Sentry'.

[10]   Even then, Mr Gadd submits that instead of considering, in the light of disclosure to be provided by the Liquidators, whether or not to order the preliminary issues identified by the applicants, I should instead decline to order any preliminary issues at all but instead wait until it is possible to identify an appropriate test case and give directions for the full trial of that case.

[11]   If Mr Gadd's concerns that disclosure may throw up side agreements or absence of authority on the part of Citco for the production and distribution of all or part of the documents which it has been sending out to investors are justified, then the prospects for identifying a test case would seem to me to be marginal. In any event, as I understand the position, the Liquidators have yet to obtain all of the documents which they are entitled to from Citco, so that a term date within which the Liquidators might express themselves satisfied that they have everything that they need has yet to appear on the horizon.

## Conclusions

[12]   The pitfalls of directing preliminary issues are well known and have been alluded to in numerous judgments handed down by judges at all levels and in many different jurisdictions. I do not need to cite from these judgments, but the risks include the possibility that an issue, however carefully formulated, will not in fact prove determinative, either because it later turns out to be the wrong issue altogether or because its determination does not enable time and costs to be saved where it is envisaged that there will be a subsequent trial on the facts. The other obvious pitfall is that the unsuccessful party appeals the decision on the preliminary issue, and after a futile expenditure of costs and considerable delay the parties find themselves back at square one again and still having to face a full dress trial.

[13]   In the present case, however, it seems to me that the Article 11(1) defence is both peculiarly suited to be taken as a preliminary issue and capable (depending upon which way the issue is decided) of saving an as yet unquantified but potentially very large amount of costs and delay. The possible costs saving is obvious, but the delay point is also of considerable importance in the present case, since it is to be presumed that the defendants to these proceedings are having to reflect the claims (whether as actual liabilities or as claims which require to be noted) in their financial statements. If

they have good defences to them, the sooner that is established the better. Similarly, the sooner that distributions are made in the liquidation the better.

[14]    I take the view that the Article 11(1) defence is peculiarly suited to be taken by way of preliminary issue because Article 11(1) is part of the very agreement pursuant to which the defendants to these proceeding were paid their redemption monies. If Sentry's own constitution contains a provision that appears to be at least capable of offering both Sentry and its investors finality, then it seems to me that, once the point is taken against them, the Liquidators should be concerned to establish at the earliest opportunity whether it does or not. There is really no sense in pursuing these various proceedings until the point has been cleared out of the way.

[15]    I am, however, conscious of Mr Gadd's point that when the documents in the possession of the Liquidators have been examined it may turn out to be the case that side agreements exist under which certain investors waived (if indeed there was anything to waive) reliance upon Article 11(1) or which show that Citco had no authority to issue the various documents relied upon by the applicants as amounting to certificates for the purposes of Article 11(1).

[16]    The former of these possibilities appears to me to be remote as a matter of fact and extravagant as a matter of law. Unless executed under seal it is difficult to see how any such waiver, in the absence of some change of position on the part of Sentry, could bind an individual investor and even more difficult to see what that change could consist of. The idea of investors executing deeds waiving the right to rely on Article 11(1) seems fanciful.

[17]    As for the second possibility, apart from the fact that it seems improbable to a degree that Citco was acting without authority[1], it seems to me as a matter of first impression (while leaving the point open) to be irrelevant in the context of any consideration of the Article 11 defence. Without deciding the point, it seems to me that investors must have been entitled under the internal management rule to assume that the officers and agents of Sentry had the authority to carry out the tasks that they performed.

[18]    Nevertheless, I accept that what seems now to be improbable or irrelevant may turn out when more is known to be both probable and relevant. In order to cater for this possibility I propose that

---

[1] as Mr Hapgood QC, for the Harneys defendants, pointed out, Citco will have been appointed under a written agreement to act as administrator of Sentry

my order in respect of the Article 11(1) preliminary issue should be in a form which does not extinguish it. I deal with the form of order below.

[19] So far as concerns the consideration defence, it seems to me that once it is decided that there should be a preliminary issue on the Article 11(1) defence, nothing is lost in delay or costs by also determining the pure point of law which is involved in the consideration defence. I shall therefore direct that that point also be determined as a preliminary issue.

[20] So far as disclosure is concerned, Mr Gadd wished to be allowed to provide it, or rather wished that if a preliminary issue was to be ordered at all, that it be ordered only after he had given it. That wish is necessarily disappointed by the order I propose to make and it follows that his reasons for desiring that disclosure take place therefore fall away.

[21] By the end of the hearing (in contrast to their earlier stances) none of Mr Chambers QC, for the Maples & Calder defendants, Mr Hapgood QC, for the Harneys defendants or Lord Falconer QC for the O'Neal Webster defendants wished me to make an order for disclosure in any directions for the hearing of the preliminary issues. Mr Lord QC, for the Ogier Defendants, however, asked me to make an order for disclosure, specifically of four classes of document: (a) board minutes approving any of the documents relied upon by the applicants as certificates for the purposes of Article 11(1) or expressly minuting that NAV had been 'certified'; (b) documents delegating the right to certify to Citco or qualifying or revoking any such right; (c) any audited financial statements from which it could be established that the board had approved NAV; and (d) any documents acknowledging that NAV was final and binding and/or that investors were entitled to rely upon it.

[22] I will not order disclosure of these or any documents as part of the preliminary issue process. For a start, disclosure would cost investors over a quarter of a million dollars in circumstances in which (depending upon the way the preliminary issue is decided) they may never have to spend that sum. Secondly, what the board thought was the legal effect of Article 11(1) is irrelevant to its construction and effect. Thirdly, absence of actual authority on the part of Citco to certify NAV or Redemption Prices (if, which remains to be determined, that is what it was doing in publishing or distributing the documents relied upon the by applicants) is, for the reasons given above, only remotely likely to be relevant, so that an order for disclosure on the point would in the circumstances be disproportionate.

[23] I therefore propose to direct preliminary issues in the following terms:

'(1) Whether any (and, if so, which) of the documents copies of which are exhibited at pages 2 to 17 inclusive of exhibit PRK-1 to the affidavit sworn in the proceedings the short title and first reference to which is Fairfield Sentry Limited (in liquidation) –v- Bank Julius Baer & Co Limited and others BVIHC(COM) 30/2010 on 8 March 2011 (or copies of any further documents which may be exhibited to any witness statement made in connection with this issue) ('the documents') is a certificate within the meaning of Article 11(1) of the Articles of Association of the Claimant ('Article 11(1)', 'the Articles';

(2) if the answer to (1) is yes, whether any (and, if so, which) of the documents is

    (a) a certificate as to the Net Asset Value per share ('NAV') or

    (b) a certificate as to Redemption Price

within the meaning of the Articles;

(3) if the answer to (2)(a) or (b) is yes, whether the publication or delivery by the Claimant

    (a) as a matter of information only, or

    (b) in connection with a redemption request

of a document containing substantially the same items of information as a document identified as falling within (2)(a) or (b) above to a redeeming or redeemed Member of the Claimant precludes the Claimant from asserting that money paid to that redeeming or redeemed Member on redemption exceeded the true Redemption Price and as such is recoverable as to the excess from such redeeming Member.

For the purposes of this issue 'document' includes emails and materials accessible on a website maintained by the Claimant or Citco Fund Services (Europe) BV or Fairfield Greenwich Group.



(2) Whether a redeeming Member of the Claimant in surrendering its shares gave good consideration for the payment by the Claimant of the Redemption Price and, if so, whether that precludes the Claimant from asserting that the money paid to that Member on redemption exceeded the true Redemption Price and as such is recoverable as to the excess from such redeeming Member.

(3) Determination against the Claimant of any of the questions falling to be determined in issue (1) above shall not debar the Claimant from subsequently asserting on the basis of a fact or facts not actually known to the Liquidators of the Claimant at the time of the hearing of issue (1) that notwithstanding the determination of that question a particular defendant is liable to repay to the

Claimant all or some part of any redemption monies paid to that defendant'

[24]   I appreciate that the parties have had no time to give any proper consideration to this proposed formulation. If, after consideration, they are unable to accept it or to agree amendments to it, the applicants must take out a short hearing as soon as possible after the start of next term in order to resolve any outstanding difficulties. In the meantime, no order will be drawn up.

[25]   The parties should, I think, agree a short timetable for any further evidence that any party may wish to put in and then arrange for a two day hearing on a date to be fixed. Directions mirroring those set out numbered (7) to (10) in the draft order submitted by the 7th and 25th Defendants in BVIHC(COM) 30/2010 should be incorporated in the order as drawn up. There is no reason why progress on these matters should not start immediately.

[26]   I will order that each of the proceedings which are before me be stayed until after determination of the preliminary issues As for proceedings not presently before me, I direct that no further steps be taken in them until after determination of the preliminary issues. I direct the Liquidators to send copies of the order made on these applications, once drawn up, to all defendants (other than the applicants) in all actions brought by Sentry seeking repayment of redemption money.

[27]   I give an indication at this stage that while I cannot prevent the applicants from arranging to have their own separate representation on the hearing of the preliminary issues, if it transpires that legal representatives do no (or little) more than adopt the submissions of other parties, then I may give consideration to making no separate costs order in favour of such party (assuming that it would otherwise have been entitled to one). The same applies to any other defendants who may wish to appear on the hearing of the preliminary issue. I give this indication now so that parties wishing to be represented on the hearing may make arrangements, if at all possible and where conflicts are not a problem, for multiple representation. Parties are free to apply to me at any time to seek any guidance which they may need or to resolve any difficulties which may arise in making such arrangements.

*[signature]*

Commercial Court Judge

20 April 2010

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

(COMMERCIAL DIVISION)



Claim No: BVIHC (COM) 336/2009

        FAIRFIELD SENTRY LIMITED (in Liquidation)
        -and-
        WOLNOMS LIMITED

Claim No: BVIHC (COM) 357/2009

        FAIRFIELD SENTRY LIMITED (in Liquidation)
        -and-
        ALFREDO MIGANI & 22 Others

Claim No: BVIHC (COM) 404/2009

        FAIRFIELD SENTRY LIMITED (in Liquidation)
        -and-
        BANCO GENERAL SA/BANCA RIVADA & 30 Others

Claim No: BVIHC (COM) 425/2009

        FAIRFIELD SENTRY LIMITED (in Liquidation)
        -and-
        BANK JULIUS BAER & CO LTD & 26 Others

Claim No. BVIHC (COM) 5/2010

        FAIRFIELD SENTRY LIMITED (in Liquidation)
        -and-
        BANK JULIUS BAER & CO. LTD. and Others

Claim No. BVIHC (COM) 15/2010

        FAIRFIELD SENTRY LIMITED (in Liquidation)
        -and-
        ARBITRAL FINANCE INC & 23 Others

Claim No. BVIHC (COM) 30/2010

        FAIRFIELD SENTRY LIMITED (in Liquidation)
        -and-
        BANK JULIUS BAER & CO LTD & 33 Others

Claim No. BVIHC.(COM) 153/2010

FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
WISE GLOBAL FUND LIMITED

Claim No: BVIHC (COM) 9/2011

FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
TRINCASTER CORP

Claim No: BVIHC (COM) 10/2011

FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
ATLANTIC ALTERNATIVE FUND, LTD

Claim No: BVIHC (COM) 16/2011

FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
LOEWEN GLOBAL FUND LIMITED

Claim No: BVIHC (COM) 19/2011

FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
MARTELLO NOMINEES LIMITED

Claim No. BVIHC (COM) 20/2011

FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
CREDIT SUISSE LONDON NOMINEES LIMITED

Claim No BVIHC (COM) 21/2011

FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
GROSVENOR BALANCE GROWTH FUND LIMITED

Claim No: BVIHC (COM) 22/2011

FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
VANCE ENTERPRISES LIMITED

Claim No: BVIHC (COM) 28/2011

FAIRFIELD LAMBDA LIMITED (in Liquidation)
-and-
CREDIT SUISSE LONDON NOMINEES LIMITED

Claim No: BVIHC (COM) 29/2011

FAIRFIELD SIGMA LIMITED (in Liquidation)

-and-

CREDIT SUISSE LONDON NOMINEES LIMITED

---

ORDER

---

**BEFORE**     The Honourable Justice Edward Bannister Q.C.

**DATED**      20 April 2011

**ENTERED**    /0 May 2011

UPON the Notices of Application filed herein on behalf of the Applicants/Preliminary Issues Defendants ("the PI Defendants") dated 2 February 2011, 2 March 2011, 8 March 2011 and 28 March 2011 coming on for hearing

AND UPON the application by Fairfield Sentry Limited (in liquidation) (which, together with Fairfield Sigma Limited (in liquidation) and Fairfield Lambda Limited (in liquidation) will hereafter be referred to as "the Claimants") for leave to appeal from this Order

UPON hearing (i). Dominic Chambers Q.C. and. Arabella di Iorio, (ii) David Lord QC, . Michael Fay and. Claire Goldstein,(iii). Mark Hapgood Q.C., Phillip Kite and. Kissock Laing, and (iv) Lord Falconer QC, Paul Webster Q.C. and. Nadine Whyte on behalf of the PI Defendants, and Michael Gadd and William Hare on behalf of the Claimants

UPON reading:

(a)    The Witness Statements of Ben Mays dated 2 February 2011 and 28 March 2011;

(b)    The Witness Statements of Claire Goldstein dated 2 March 2011 and 15 April 2011;

(c)    The Witness Statement of Phillip Kite dated 8 March 2011;

(d)    The Witness Statements of Rhonda Brown dated 8 March 2011 and 14 April 2011;

(e) The Third Witness Statement of Kenneth Krys dated 8 April 2011

and the other documents recorded on the Court file as having been read

**IT IS HEREBY ORDERED THAT:**

1. The issues listed in the schedule to this order ("the Preliminary Issues") be tried as preliminary issues in the following claims:
    BVIHC(COM)357/2009,    BVIHC(COM)404/2009,    BVIHC(COM)425/2009,
    BVIHC(COM)5/2010,    BVIHC(COM)15/2010,    BVIHC(COM)30/2010,
    BVIHC(COM)153/2010, and    BVIHC(COM)20/2011.

2. Determination against the Claimants of any of the questions falling to be determined in issue (1) – (3) of the Preliminary Issues shall not debar the Claimants from subsequently asserting on the basis of a fact or facts not actually known to the Liquidators of the Claimants at the time of the hearing of Preliminary Issue (1)- (3) that notwithstanding the determination of that question a particular defendant is liable to repay to the Claimants all or some part of any redemption monies paid to that defendant.

3. There be the following directions for the determination of the Preliminary Issues:
    (a) That on or before 13 May 2011 the parties are to file and exchange any further witness statements upon which they wish to rely;
    (b) There is to be no cross-examination of any witness without the leave of the Court;
    (c) Preparation of trial bundles is to be undertaken by Maples and Calder on behalf of the PI Defendants and the bundles are to be filed by 6 June 2011 and otherwise prepared in accordance with CPR Part 69.B.9;
    (d) The hearing is to be fixed through the usual channels and will be heard on the first convenient date after 20 June 2011 with an agreed time estimate of 2 days;
    (e) There is to be a Pre-Trial Review in accordance with CPR Part 69B.8 in the week commencing 13 June 2011, with a time estimate of half a day;
    (f) Skeleton arguments are to be exchanged by 20 June 2011.

4. Save as set out in paragraphs 1 to 3 of this Order, all of the actions listed in paragraph 1 above are stayed until after the determination of the Preliminary Issues.

5. Save where there is a compelling reason for doing so, no further steps shall be taken after submission to the jurisdiction by the Defendant or Defendants in the remaining proceedings in the title to this Order or in any other actions brought by the Claimants in the BVI seeking repayment of redemption monies until after the determination of the Preliminary Issues.

6. The Claimants and their Liquidators are refused permission to index the documents in their control and to review them for the purposes of locating documents (if any) which might be relevant to the determination of the Preliminary Issues.

7. The Claimants are to send copies of this Order to all defendants, other than the PI Defendants, to all actions brought by the Claimants in the BVI seeking repayment of redemption monies.

8. The costs of the application for preliminary issues be costs in the Preliminary Issues.

9. Liberty to all parties to apply.

10. The Claimants' application for leave to appeal is refused.

BY ORDER OF THE COURT

_[signature]_
REGISTRAR

## Schedule of Preliminary Issues to be tried

(1)     Whether any (and, if so, which) of the documents copies of which are exhibited at pages 2 to 17 inclusive of exhibit PRK-1 to the affidavit of Phillip Kite sworn in the proceedings the short title and first reference to which is Fairfield Sentry Limited (in liquidation) –v– Bank Julius Baer & Co Limited and others BVIHC(COM) 30/2010 on 8 March 2011 (or copies of any further documents which may be exhibited to any witness statement made in connection with this issue) ("the documents") is a certificate within the meaning of Article 11(1) of the Articles of Association of the Claimant ("Article 11(1)", "the Articles");

(2)     If the answer to (1) is yes, whether any (and, if so, which) of the documents is

    (a)     a certificate as to the Net Asset Value per share ('NAV') or

    (b)     a certificate as to Redemption Price

within the meaning of the Articles;

(3)     If the answer to (2)(a) or (b) is yes:

Whether the publication or delivery by the Claimant

(a) as a matter of information only, or

(b) in connection with a redemption request

of a document containing substantially the same items of information as a document identified as falling within (2)(a) or (b) above to a redeeming or redeemed Member of the Claimant precludes the Claimant from asserting that money paid to that redeeming or redeemed Member on redemption exceeded the true Redemption Price and as such is recoverable as to the excess from such redeeming Member.

For the purposes of this issue 'document' includes emails and materials accessible on a website maintained by the Claimant or Citco Fund Services (Europe) BV or Fairfield Greenwich Group.

(4)     Whether a redeeming Member of the Claimant in surrendering its shares gave good consideration for the payment by the Claimant of the Redemption Price and, if so, whether that precludes the Claimant from asserting that the money paid to that Member on redemption exceeded the true Redemption Price and as such is recoverable as to the excess from such redeeming Member.

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
BRITISH VIRGIN ISLANDS
(COMMERCIAL DIVISION)

Claim No: BVIHC (COM) 357/2009
FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
ALFREDO MIGANI & 22 Others

Claim No: BVIHC (COM) 404/2009
FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
BANCO GENERAL SA/BANCA RIVADA & 30 Others

Claim No: BVIHC (COM) 425/2009
FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
BANK JULIUS BAER & CO LTD & 26 Others

Claim No. BVIHC (COM) 5/2010
FAIRFIELD SENTRY LIMITED (in Liquidation)
and
BANK JULIUS BAER & CO. LTD. and Others

Claim No. BVIHC (COM) 15/2010
FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
ARBITRAL FINANCE INC & 23 Others

Claim No. BVIHC (COM) 30/2010
FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
BANK JULIUS BAER & CO LTD & 33 Others

Claim No. BVIHC.(COM) 153/2010
FAIRFIELD SENTRY LIMITED (in Liquidation)
and
WISE GLOBAL FUND LIMITED

Claim No: BVIHC (COM) 9/2011
FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
TRINCASTER CORP

Claim No: BVIHC (COM) 10/2011
FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
ATLANTIC ALTERNATIVE FUND, LTD

Claim No: BVIHC (COM) 16/2011
FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
LOEWEN GLOBAL FUND LIMITED

Claim No: BVIHC (COM) 19/2011
FAIRFIELD SENTRY LIMITED (in Liquidation)
-and-
MARTELLO NOMINEES LIMITED

Claim No. BVIHC.(COM) 20/2011
FAIRFIELD SENTRY LIMITED (in Liquidation)



-and-

CREDIT SUISSE LONDON NOMINEES LIMITED

Claim No: BVIHC (COM) 28/2011

FAIRFIELD LAMDA LIMITED (in Liquidation)

-and-

CREDIT SUISSE LONDON NOMINEES LIMITED

Claim No: BVIHC (COM) 29/2011

FAIRFIELD SIGMA LIMITED (in Liquidation)

-and-

CREDIT SUISSE LONDON NOMINEES LIMITED

---

ORDER

---

Maples and Calder
Sea Meadow House
Road Town
Tortola
British Virgin Islands
Tel: +1 2 84 852 3000
Fax: +1 284 852 3097

17                                                              MS Page No. 17