# EXHIBIT S

IN THE HIGH COURT OF JUSTICE

CLAIMS NO. BVIHC (COM) 2009/0136, 2009/0139 and 2009/0074 [Section 273]

IN THE MATTER OF THE INSOLVENCY ACT, 2003
AND IN THE MATTER OF FAIRFIELD SENTRY LIMITED (IN LIQUIDATION)

BETWEEN:
ABN AMRO FUND SERVICES (ISLE OF MAN) NOMINEES LIMITED
(formerly FORTIS (ISLE OF MAN) NOMINEES LIMITED) and others

UBS AG NEW YORK and others

Applicants

AND

KENNETH KRYS AND CHARLOTTE CAULFIELD
(as Joint Liquidators of Fairfield Sentry Limited)

FAIRFIELD SENTRY LIMITED (in liquidation)

Respondents

AND

IN THE MATTER OF THE INSOLVENCY ACT, 2003
AND IN THE MATTER OF FAIRFIELD SIGMA LIMITED (IN LIQUIDATION)

BETWEEN:
ABN AMRO FUND SERVICES (ISLE OF MAN) NOMINEES LIMITED
(formerly FORTIS (ISLE OF MAN) NOMINEES LIMITED) and others

UBS AG NEW YORK and others

Applicants

and

KENNETH KRYS AND CHARLOTTE CAULFIELD
(as Joint Liquidators of Fairfield Sigma Limited)

FAIRFIELD SIGMA LIMITED (in liquidation)

Respondents

AND

1

IN THE MATTER OF THE INSOLVENCY ACT, 2003
AND IN THE MATTER OF FAIRFIELD LAMBDA LIMITED (IN LIQUIDATION)

BETWEEN:

### ABN AMRO FUND SERVICES (ISLE OF MAN) NOMINEES LIMITED
### (formerly FORTIS (ISLE OF MAN) NOMINEES LIMITED) and others

### UBS AG NEW YORK and others

Applicants

and

### KENNETH KRYS AND CHARLOTTE CAULFIELD
### (as Joint Liquidators of Fairfield Lambda Limited)

### FAIRFIELD LAMBDA LIMITED (in liquidation)

Respondents

**Appearances:**

Mr. Mark Hapgood QC, and Mr. Alan Roxburgh, Mr. Phillip Kite and Ms Colleen Farrington of Harney Westwood & Riegels for Applicants ABN AMRO Fund Services (Isle of Man) Nominees Limited, Bank Julius Baer & Co Limited, SNS Global Custody BV, Deutsche Bank Trust Company Americas and Deutsche Bank (Suisse) SA

Mr. Stephen Rubin QC, and Mr. Piers Plumptre, and Ms. Nadine Whyte of O'Neal Webster for Applicants UBS AG New York, UBS AG Zurich, UBS Jersey Nominees, UBS (Luxembourg) SA, UBS Deutschland AG / Dresdner Lateinamerika AG, UBS Fund Services (Cayman) Limited, UBS Cayman Limited, UBS Fund Services (Ireland) Ltd and UBS Zurich

Mr. Gabriel Moss QC and Mr. William Hare and Ms. Sinead Harris of Forbes Hare for Respondents

.................................
2015:   March 23-26
2016:   March 11
.................................

### JUDGMENT

*Applications pursuant to Section 273 of the Insolvency Act, 2003 ("Act") for orders reversing or modifying decisions of liquidators to bring proceedings in United States and directing them to withdraw the proceedings, or alternatively anti-suit injunctions to same effect – Applicants redeemed shares in Funds, now in*

*liquidation, before fraud (Ponzi scheme) of Bernard Madoff uncovered in 2008 –
Liquidators had brought common law restitutionary claims in BVI to recover
redemption payments - Claims determined against liquidators on Privy Council
appeal of results of preliminary issues trial – Certificates of net asset value ("NAV")
were binding – Now liquidators seek to recover the redemption payments in U.S.
Bankruptcy Court proceedings based on claims of unjust enrichment, money had
and received, mistaken payment and constructive trust which Applicants submit
are in essence the same as restitutionary claims determined in BVI – Liquidators
assert issue of NAV certificates not being binding (because allegedly not "given in
good faith") not determined – Liquidators also bring in U.S. Bankruptcy Court
claims based on undervalue transaction provisions of Act, and seek voidable
transaction relief under Section 249 of Act.*

*Applicants submitted that liquidators should not be permitted to pursue U.S.
Bankruptcy Court proceedings because of positions taken by them and
determinations made in BVI proceedings, and statutory undervalue transaction
claims should be brought in BVI, not in U.S.*

*Section 273 is a limited remedy – If basis for applicant to have standing, or
legitimate interest, and for court to have jurisdiction which it may exercise under
Section 273, when applicant's true complaint is not as creditor or contributory, it is
where act, omission or decision of liquidator involves not an administrative matter
but a matter with one or more of the following (sometime overlapping)
characteristics (a) a legal issue, such as determination of competing claims and
priorities; (b) a matter that it is not for liquidators to decide at their own discretion;
and/or (c) the exercise of a power given specifically to liquidators where applicant
could have no other recourse, remedy or right to challenge the substantive
consequence of the act, omission or decision (which may mean the act, omission
or decision itself if that is the final substantive consequence) – Even if persons
affected by acts, omissions or decisions with comparable characteristics may
come within Section 273, applicant must have legitimate interest in relief sought.*

*Applicants did not have standing, and in any event did not have a legitimate
interest – court did not have jurisdiction which it may exercise to grant Section 273
relief – Even if Applicants had standing and a legitimate interest, applications for
Section 273 relief should be dismissed – Test for exercise of Section 273 power
not met – Liquidators' "acts, omissions or decisions" in issue not "so utterly
unreasonable and absurd that no reasonable man would have done it", "so
manifestly absurd or perverse that they fall completely outside the permissible
range of options" or "so perverse that no reasonable liquidator could have arrived
at [them]" – Alternative claims for anti-suit injunctions to restrain liquidators from
pursuing U.S. Proceedings dismissed – More orderly and logical that U.S.*

3

*Bankruptcy Court make determinations first on which, if any, restitutionary claims it
will entertain, and then whether there are sufficient of same, similar or aligned
factual determinations that may need to be made for undervalue transaction
claims or leave it to BVI court to deal with those claims in their entirety – Court
also questioned whether appropriate means for it to control conduct of officer of
the court officers is by way of injunction – Applications dismissed.*

[1]    **LEON J [Ag]:**  The Applicants seek orders in each of the three Applications
against each of the three Respondent companies in liquidation, Fairfield Sentry
Limited ("**Sentry**"), Fairfield Sigma Limited ('**Sigma**') and Fairfield Lambda Limited
('**Lambda**') (together, "**Funds**"), and their Joint Liquidators, Kenneth Krys and
Charlotte Caulfield ("**Liquidators**"), to prevent the Liquidators from continuing with
proceedings ("**U.S. Proceedings**") against the Applicants pending (against the
Applicants and others) in the United States Bankruptcy Court for the Southern
District of New York ("**U.S. Bankruptcy Court**").

[2]    The Funds, which were incorporated in this jurisdiction, were "feeder funds" that
invested in Bernard L. Madoff Investment Securities LLC ("**BLMIS**"), the entity
through which Bernard Madoff conducted his infamous Ponzi scheme. Sentry had
invested the majority of its assets directly in BLMIS while Sigma and Lambda had
invested in BLMIS indirectly, by investing in Sentry. After the fraud was exposed
following Madoff's arrest on 11 December 2008, this Court made orders to wind up
the Funds under the Insolvency Act, 2003 ("**Act**") on 'just and equitable' grounds.

[3]    The Applicants are former registered shareholders of Sentry, and in some cases
also of Sigma and Lambda. Their redeemable shares were redeemed in the period
from 2004 to 2008, before the fraud was exposed. Redemption payments were
made to them pursuant to the Articles of Association of the Funds.

[4]    The Liquidators seek to recover the redemption payments in the U.S.
Proceedings.

4

[5]    The U.S. Proceedings are currently stayed. The Liquidators wish to pursue the U.S. Proceedings, if permitted to do so, but have not applied for the stay to be lifted pending determination of these Applications. They state that thereafter they will seek the sanction of this Court (which would be by way of an ex parte application in the usual manner) which, they submit, "is only needed to ensure the liquidators recover their costs" and which is to be "given unless the proposed action is vexatious or oppressive"[1].

[6]    In the U.S. Proceedings the first causes of action asserted by the Funds are unjust enrichment, money had and received mistaken payment and constructive trust. The essence of these restitutionary claims is comparable. The Funds assert, in seeking to recover the redemption monies paid to the Applicants based on these causes of action, that:

a)    the Funds mistakenly believed that monies withdrawn by Sentry from BLMIS in the redemptions represented the proceeds of sale of investments held by BLMIS for the account of Sentry;

b)    the redemption payments were based on a miscalculated Net Asset Value ("**NAV**") of the funds (given the fraudulent Ponzi scheme and the fictitious profits shown by it) and that valuable consideration was not provided for them; and

c)    the certificates of NAV, which otherwise would be binding, are not binding because the certificates were not "given in good faith" (and alternatively in some cases the redemption payments were received in bad faith[2]).

---

[1] Skeleton Argument of the Respondents – Hearing on 23rd March 2015 ("**Respondents' Skeleton**"), page 2, footnote 1. The Court notes that in addition to the Respondents' Skeleton, it had the benefit of the Applicants' Skeleton Argument; the Applicants' 200 page, 550 paragraph, "Full Written Submissions"; and post-hearing written submissions by way of correspondence to the Court that extended into the second half of May 2015.
[2] The Respondents submitted that for present purposes there is no need to consider the bad faith receipt question (see Respondents' Skeleton, page 5, footnote 4). However the Respondents did submit orally that there is evidence of bad faith by redeemers, including some of the Applicants; that some redeemers had enough information to know that they were receiving the proceeds of fraud; and that there were "lots of red

[7]    Second, in the U.S. Proceedings the Liquidators seek declaratory judgments that the redemption payments made during the "vulnerability period", as defined in Section 244 of the Act, constituted voidable transactions – unfair preferences under Section 245 of the Act and/or undervalue transactions under Section 246 of the Act – and they seek orders pursuant to Section 249 of the Act setting aside and avoiding those payments and giving judgment in the amount of those payments ("**BVI Insolvency Act Claims**").

[8]    Section 249 of the Act empowers this Court to make orders in respect of unfair preferences and undervalue transactions. The Liquidators have not brought claims under the Act in this jurisdiction.[3]

[9]    Specifically, the Applicants seek the following relief on these Applications:

a)    orders under Section 273 of the Act reversing or modifying the Liquidators' decisions to bring and pursue, and to cause the Funds to bring and pursue, the U.S. Proceedings, and directing the Liquidators to withdraw or discontinue the U.S. Proceedings;

b)    the discharge or variation of any previous orders authorizing the Liquidators to bring the U.S. Proceedings or any proceedings against the Applicants in the United States; and

c)    alternatively, injunctions (often referred to as an 'anti-suit injunction') restraining the Liquidators from taking any

---

flags about Madoff". Whether the evidence referred to, which was not in issue on these Applications, would meet the test (whatever it is) for relief, would need to be determined under the applicable law. Of course it may be easy to see with much hindsight that there were "lots of red flags" (which of course many people in various positions did not see). Also, the Court raised during the hearing, but did not need to consider for this Judgment, whether redeemers were not just asking for their money back, which they were entitled to do. These are issues for another day, and perhaps another court.

[3] The Applicants submitted in March 2015 that the BVI Insolvency Act claims were not at that date statute-barred in this jurisdiction. The Respondents did not in March 2015 dispute that assertion.

6

further steps in the U.S. Proceedings against the Applicants other than such steps as may be necessary to withdraw or discontinue the U.S. Proceedings or the claims made therein against the Applicants.

[10]    Section 273 of the Act provides as follows:

A person aggrieved by an act, omission or decision of an office holder may apply to the Court and the Court may confirm, reverse or modify the act, omission or decision of the office holder.

[11]    The Respondents submit that these Applications should be dismissed on four grounds.

[12]    First, the Respondents submit that the Applicants lack standing under Section 273 of the Act ("**Section 273 Standing and Jurisdiction Issue**") because they are former members of the Funds who are applying as defendants in proceedings brought by the Liquidators, not persons with an ongoing interest in the liquidated company who are entitled to participate in the ultimate distribution – creditors, contributories and members; persons who have a legitimate interest in the relief sought and the efficient management of the liquidation – who may challenge actions of the Liquidators under Section 273 and assert that those actions are manifestly contrary (adverse) to the interests of the liquidated company and those with an interest in it.

[13]    The test, say the Respondents, is not whether the Applicants have "an interest in making the application or may be affected by its outcome", but whether the Applicants have "a legitimate interest in the relief sought".[4] The Respondents submit that the Applicants are not merely strangers to the liquidations but in fact adverse to them.

[14]    Second, the Respondents submit that even if the Applicants have standing, the Applicants cannot meet the asserted test for the exercise by the Court of its

---

[4] Deloitte & Touche v Johnson ("**Deloitte**") [1999] BCC 992 at 997, lines C-E (PC).

Section 273 power as the Liquidators' actions are not "so utterly unreasonable and absurd that no reasonable person would have done it" ("**273 Relief Issue**").

[15]   The Respondents submit that the U.S. Proceedings were brought pursuant to legal advice and with the support of unconflicted members of the Liquidation Committee and the sanction of this Court, and are for the purpose of recovering assets for the benefit of victims of the Madoff fraud.

[16]   Third, the Respondents submit that the Applicants cannot meet the test for an anti-suit injunction in that they cannot show that the Respondents' actions in the U.S. Proceedings are "vexatious or oppressive".

[17]   Fourth, the Respondents submit that an anti-suit injunction would not be consistent with judicial comity between this Court and the U.S. Bankruptcy Court, which is the court that should decide whether the actions before it have merit. They point out that these Applications are not trials of the merits of the claims that the Respondents seek to advance in the U.S. Proceedings.

## BVI Proceedings and Privy Council Opinion

[18]   Relevant background to these Applications is that the Liquidators had brought common law restitutionary claims in this jurisdiction ("**BVI Proceedings**"). Ultimately the fundamental issues in the BVI Proceedings were essentially determined on the results of the trial of preliminary issues that were appealed to the Privy Council[5].

[19]   The Privy Council held that the sums paid to the redeeming defendants in the BVI Proceedings were legally due to them because certificates (pursuant to the Funds' Articles of Association) had been issued that established the NAV (unless not "given in good faith")[6].

---

[5] Fairfield Sentry Limited v Migani ("**Privy Council Opinion**") [2014] UKPC 9.
[6] Article 11(1)(c) of the Articles of Association provided (as set out in paragraph 13, lines E-F, of the Privy Council Opinion) that "Any certificate as to the Net Asset Value per Share or as to the Subscription Price or Redemption Price therefor given in good faith by or on behalf of the Directors shall be binding on all parties."

8

[20]    In the result, the Applicants submit that claims by the Funds based on common law restitutionary claims governed by BVI law cannot be pursued against them, and could not have been pursued against them unless the certificates of NAV used to calculate the redemption prices were not "given in good faith".

[21]    The Applicants submit that the "given in good faith" issue, which they say was not raised or preserved when the preliminary issues were formulated, is foreclosed for several reasons including "issue estoppel and/or by the doctrine of *Henderson v Henderson*" (abuse of process)[7] and in any event fails under a proper construction of the Articles of Association (Article 11 would not, it is submitted, enable the Funds to take advantage of their own bad faith or that of their agent which acted under the direction of Sentry's board of directors) and "because the alleged reckless indifference of the administrator to the accuracy of the NAV calculation and to the existence of the assets ostensibly held by BLMIS negates the plea of mistake on which the Restitutionary Claims are founded."[8]

[22]    The Respondents submit that after the BVI Proceedings began and the preliminary issues were formulated, the Liquidators "have come into possession of evidence [that as a practical matter "couldn't have been unearthed before"] suggesting that Citco [the entity that issued the certificates] did not issue the documentation [that the Privy Council held to be certificates] in good faith"; that "Citco acted recklessly as to the truth when issuing the certificates, which amounts to bad faith as a

---

[7] See Johnson v Gore Wood & Co [2002] 2 AC 1 at 31, lines A-E (HL) (which was quoted in Walbrook Trustees (Jersey) Ltd & Others v William Simon Fattal & Others [2009] EWCA Civ 297, para. 4 (CA)) in which it was stated "But Henderson v Henderson abuse of process, as now understood, although separate and distinct from cause of action estoppel and issue estoppel, has much in common with them. The underlying public interest is the same: that there should be finality in litigation and that a party should not be twice vexed in the same matter. The public interest is reinforced by the current emphasis on efficiency and economy in the conduct of litigation, in the interests of the parties and the public as a whole. The bringing of a claim or the raising of a defence in later proceedings may, without more, amount to abuse if the court is satisfied (the onus being on the party alleging abuse) that the claim or defence should have been raised in the earlier proceedings if it was to be raised at all. ... there will rarely be a finding of abuse unless the later proceeding involves what the court regards as unjust harassment of a party. It is, however, wrong to hold that because a matter could have been raised in earlier proceedings it should have been, so as to render the raising of it in later proceedings necessarily abusive. That is to adopt too dogmatic an approach to what should in my opinion be a broad, merits-based judgment which takes account of the public and private interests involved and also takes account of all the facts of the case, focusing attention on the crucial question whether, in all the circumstances, a party is misusing or abusing the process of the court by seeking to raise before it the issue which could have been raised before."
[8] Applicants' Skeleton Argument, paragraph 41, summarizes this position.

9

matter of BVI law, and that such bad faith will not be attributed to the Funds, since they were the victims of the bad faith." The Respondents therefore say that "the certificates will not be binding" and the Funds will be able to pursue the restitutionary claims in the U.S.

[23]    The Respondents submitted that the Liquidators:

> ... intend to pursue the common law restitution claims in the US Proceedings on the basis that the documents of [NAV] which the Privy Council held to be certificates, but which are only binding if issued in good faith, were not issued in good faith because Citco acted with reckless indifference in issuing them.[9]

[24]    They submit that even if the sums redeemed were contractually due to the redeemers, the allegations of a preference or undervalue transaction are not affected.

[25]    The Respondents state, as noted above, that the Liquidators, before resuming the U.S. Proceedings, will seek the sanction of this Court (on an ex parte application, in the usual manner). However, they submit that this Court should give sanction unless the proposed proceedings are vexatious or oppressive[10], and that sanction is only needed to ensure the Liquidators recover their costs.

## SECTION 273 STANDING AND JURISDICTION ISSUE

[26]    As set out above, the Respondents submit that the Applicants lack standing under Section 273 of the Act.

---

[9] Respondents' Skeleton, paragraph 63.
[10] Lloyd-Owen v Bull [1936] 4 DLR 273 (PC) where the Privy Council stated "A Judge in winding up is the custodian of the interests of every class affected by the liquidation. It is his duty even if it be in a voluntary liquidation that opportunity offers to see to it that all assets of the company are brought into the winding-up. In authorising proceedings, especially if they may or will involve some drain upon the assets, he must satisfy himself as to their probable success: where, as in the present case, they involve no possible charge on assets, he will nevertheless be careful to see that any action taken in the company's name under his authority is not vexatious or merely oppressive." The Privy Council held that the judge's giving of notification to the defendants to the proposed action, and permitting them to file evidence and conduct "what approached as near to a preliminary trial of the proposed action as they could make it", was inappropriate.

[27]    The Judgment of Leon J dated 11 March 2016 Pg 12 of 39 The question of whether the Court has
jurisdiction to intervene to review "an act, omission or decision of an office holder"
and to consider whether to "confirm, reverse or modify" it. The section permits
(gives standing to) a "person aggrieved" to raise with the Court the matter about
which the person is aggrieved and then empowers this Court with a discretion to
"confirm, reverse or modify the act, omission or decision of the office holder." The
office holder is, after all, an officer of this Court.

[28]    While much of the jurisprudence cited by the parties focused on who is an
aggrieved person[11], key court decisions imply that situations in which the Court
can intervene inform when a person has standing and may be considered a
person aggrieved.

### A.  Broader Context for Assessing Section 273 Standing and Jurisdiction.

[29]    Before turning to the authorities, and the specifics of Section 273, it may be helpful
to put the Section 273 standing and jurisdiction question in the broader context.

[30]    Generally speaking, the scheme of the Act, as interpreted in the jurisprudence,
sets out the role of the court in at least three categories. The Act mandates what a
court must do in certain circumstances, it gives a broad discretion in a second
category of circumstances, and it gives the court a limited role in a third category
of circumstances. (If there are other categories, they are not material for the
purposes of this contextual analysis of Section 273.)

[31]    There are some fundamental illustrations of these categories.

---

[11] While the Applicants cited authorities on the meaning given to "aggrieved person" in other contexts, and
while the Court accepts the value of a broad reading of words conferring standing in remedial provisions, the
words must be considered in the context of the statute in question, which is a basic principle of statutory
construction. In that regard, the words in the judgment in Sevenoaks Urban District Council v Twynam [1929]
2 K.B. 440 (Divisional Court) are enlightening and applicable: "Is it true to say that in these circumstances
and with the meaning of this part of this statute this respondent was a 'person ... aggrieved'? Now
undoubtedly those words, 'a person aggrieved,' have very often been considered, and, if one looked at the
mere terms apart from their context and apart from the particular circumstances, it would have been quite
easy to marshal decision of contradictory import. But as been said again and again there is often little utility
in seeking to interpret particular expressions in one statute by reference to decisions given upon similar
expressions in different statutes which have been enacted alio intuitu. The problem with which we are
concerned is not, what is the meaning of the expression 'aggrieved' in any one of a dozen other statutes, but
what is its meaning in this part of this statute?"

[32]    certain circumstances and may set it aside in other circumstances (Section 157).
There are broad Court discretions when interim relief is sought (Section 170), on
the hearing of an application for the appointment of a liquidator (Section 167), with
respect to the appointment of a liquidator (Section 162), and in relation to the
termination of a liquidation (Section 233).

[33]    However, when it comes to granting sanction (ex parte) to an office holder or to
reviewing remuneration applications by an office holder, the court's role is limited.

[34]    The court's role also is limited in reviewing a liquidator's business/commercial
(practical) decisions on valuing, realizing and disposing of assets, which have
been termed "administrative" powers.[12]

[35]    The latter point was expressed as follows by the English Court of Appeal in
Mitchell and another v Buckingham International plc (in liq) and others, Re
Buckingham International plc (No 2) ("**Buckingham 2**")[13], a judgment (along with a
prior judgment of the Court of Appeal in the same matter, Mitchell & Anor v Carter
and Anor ("**Buckingham 1**")[14], upon which considerable weight was placed by
the Applicants:

When liquidators are exercising their administrative powers to realize assets, the
court will be very slow to substitute its judgment for the liquidators' on what is
essentially a businessman's decision (see Re Edennote Ltd, Tottenham Hotspur
plc v Ryman [1996] 2 BCLC 389 at 394).[15]

[36]    This is so even though the responsibility of the liquidator for collecting assets and
implementing the statutory scheme for distribution among creditors and members
of the company is subject to the ultimate control of the court, and even though the

---

[12] Leon v York-o-Matic Ltd [1966] 1 WLR 1450 (Ch); Re Edennote Ltd ("**Edennote**") [1995] BCC 389 (Ch)
and [1996] BCC 718 (CA).
[13] [1998] 2 BCLC 369 (Ch. Div. and CA) at 391 lines f-g (CA per Lord Bingham CJ, Judge and Robert Walker
LLJ, affirming judgment of Harman J, leave to appeal to House of Lords refused).
[14] [1997] BCC 907 (CA per Leggatt, Millett and Aldous L.JJ.), reversing Re Buckingham International plc.
[1997] BCC 71 (Ch (Companies Court) per Blackburne J).
[15] Buckingham 2, page 391, lines f-g.

court has powers to enable (assist) the liquidator, as an officer of the court, to get in and realize for the benefit of all creditors all assets of the company.[16]

[37]    The authorities cited on these Applications make clear, and the Applicants and Respondents accepted, that the court does not have the power to intervene in administrative matters for which an office holder is responsible.

[38]    The Applicants assert that there are authorities that take a more liberal approach to standing under Section 273 (or its equivalent in other jurisdictions) than other authorities cited, focusing on the person needing to have a "genuine grievance".[17] They say that the authorities' real focus is precluding officious interference in the conduct of a liquidation and denying an audience to "mere busybodies" and they are not "mere busybodies".

[39]    The difficult question is when a court has jurisdiction to and may intervene, and when an applicant has standing and a legitimate interest to seek relief under Section 273.

### B.  When Court Has Jurisdiction to and may Intervene, and Applicant Has Standing and a Legitimate Interest, under Section 273.

[40]    Consideration of when a court has jurisdiction to and may intervene, and when an applicant has standing and a legitimate interest to seek relief, under Section 273 could begin with Deloitte[18].

[41]    Deloitte involved an application by defendants to proceedings being brought by liquidators in the Cayman Islands to remove the liquidators or to preclude them from bringing proceedings against the defendant due to an alleged conflict.

---

[16] Buckingham 1, page 912, lines d-f.
[17] Attorney-General of the Gambia v N'Jie [1961] AC 617 at 634; Cook v Southend-on-Sea Borough Council [1990] 2 QB 1 (CA).
[18] See footnote 4.

13

[42]    The relevant statutory provision, unlike in the case of Section 273 of the Act, did
not specify who may apply.[19] The Privy Council concluded that accordingly the
defendants-applicants "do not lack a statutory qualification to invoke the section."[20]

[43]    The Privy Council held that questions of standing can arise in two different kinds of
case. When a court is asked to exercise a power conferred by statute, the
applicant must be qualified by the statute to make the application (as it held was
the situation in the case before it). However when a court is asked to exercise a
statutory power or its inherent jurisdiction, "it will act only on the application of a
party with a sufficient interest to make it. This is not a matter of jurisdiction. It is a
matter of judicial restraint." The Privy Council continued:

It is, therefore, incumbent on the court to consider not only whether it has
jurisdiction to make the order but whether the applicant is a proper person to
invoke the jurisdiction.

Where the court is asked to exercise a statutory power, therefore, the applicant
must show that he is a person qualified to make the application. But this does not
conclude the question. He must also show that he is a proper person to make the
application. This does not mean, as the appellants submit, that he 'has an interest
in making the application or may be affected by its outcome'. It means that he has
a legitimate interest *in the relief sought*.

...

The standing of an applicant cannot therefore be considered separately and
without regard to the nature of the relief for which the application is made.
[emphasis in the judgment][21]

[44]    The Privy Council held that the appellants did not lack a statutory qualification to
invoke the section of the legislation but the question remained whether they had a
legitimate interest in the relief sought. They did not have a legitimate interest in

---

[19] The Cayman Islands Companies Law (1995 Revision), Section 106(1), provided: "Any official liquidator
may resign or be removed by the court on due cause shown; ...", as quoted in Deloitte, page 995, lines C-D.
[20] Deloitte, page 997, lines E-F.
[21] Deloitte, page 997, lines C-E.

14

having the liquidators removed. The appellants were not merely strangers to the liquidation; their interests were adverse to the liquidation and the interests of the creditors. While the court has inherent jurisdiction to control the conduct of its own officers, it did not follow that the appellants were proper persons to invoke that jurisdiction.

[45]    In Buckingham 1 and Buckingham 2, the issue was one of competing creditor claims and priorities[22]. The English Court of Appeal in Buckingham drew a distinction as follows:

> In this case, by contrast, when the provisional liquidators launched their s. 304 petition [in the U.S., aimed at bringing certain assets into the estate rather than allowing those assets to go to a particular creditor], they did so for the same purpose as they might (in times when there was a lower level of comity in cross-border insolvency) have sought an anti-suit (or anti-execution) injunction from the English court [that is, to bring the assets into the estate rather than have them go to one creditor]... That is eminently a matter for the Companies Court, or for liquidators acting under the control of the Companies Court. It is not a matter for the liquidators to decide at their own discretion in the way in which they might take decisions as to the disposal of their company's assets.[23]

[46]    In other words, what the court was doing was assisting the liquidators to realize assets for the body of creditors of the estate but reserving to itself the determination of competing claims and priorities.

[47]    It also was made clear by Aldous LJ in Buckingham 1 that the court has jurisdiction over a liquidator and the power to act to prevent "an act which would not be lawful"[24]. By "not be lawful", he appears to have meant that it would not accord with the law's scheme of priorities and competing claims in a liquidation, as opposed to being, for example, criminal.

[48]    In that regard, Aldous LJ stated as follows:

---

[22] Buckingham 1, page 912, lines c-d; Buckingham 2, page 391, lines d-f.
[23] Buckingham 2, page 391, lines h-i.
[24] page 911, lines g-h (per Aldous LJ).

Thus, if the court should decide that the liquidators were not entitled to any sum which would be awarded by the US court, the court could prevent the liquidators from pursuing the proceedings and seeking to recover that sum.[25]

[49]    The Applicants rely on the door having been left somewhat to standing and ascertaining who is a "person aggrieved" by the judgment of Peter Gibson LJ in Mahomed v Morris ("**Mahomed**") where he stated as follows:

> In general I respectfully agree with the sentence which I have cited from *Edennote* ["In the latter capacity alone [applicants were both unsecured creditors and persons denied an opportunity to purchase an asset of the company], like any other outsider to the liquidation, they would not have had the locus standi to apply under s. 168(5)."]. It could not have been the intention of Parliament that any outsider to the liquidation, dissatisfied with some act or decision of the liquidator, could attack that act or decision by the special procedure of s. 168(5). However, I would accept that someone, like the landlord in *Hans Place Ltd*, who is directly affected by the exercise of a power given specifically to liquidators, and who would not otherwise have any right to challenge the exercise of that power, can utilize s. 168(5). It may be that other persons can properly bring themselves within the subsection. But the mere fact that the act or decision is that of a liquidator in respect of an asset of the company the proceeds of which would be available for unsecured creditors is not enough, as can be seen from the example of the persons denied an opportunity to buy an asset of the company from the liquidators in *Edennote*.[26]

[50]    Peter Gibson LJ also referred to a decision of Laddie J in Hamilton v Official Receiver[27] in which a contributory sought the assignment to him, for value, of a claim which the liquidator did not intend to pursue and the liquidator was ordered to assign it. He continued:

> The judgment is silent as to the capacity in which the applicant was allowed relief under s. 168(5) and it does not appear that his attention was drawn to *Re Edennote Ltd.* In my judgment the decision can be supported on the same basis that *Edennote* was decided.

---

[25] Buckingham 1, page 911, lines g-h (per Aldous LJ) [which Mr. Moss drew to this Court's attention, having had his submission of "no jurisdiction" rejected by the Court of Appeal in Buckingham 1].
[26] [2001] BCC 233 (CA per Peter Gibson and Schiemann L.JJ and Wilson J), at page 240 paragraph 26.
[27] [1998] BPIR 602.

[51]    In summary, if there is an established basis for an applicant to have standing, or a legitimate interest, under Section 273 – and for the Court to have jurisdiction which it may exercise – when the applicant's true complaint is not in the usual capacity of a creditor or contributory (even if the applicant is a creditor or contributory and can use that capacity as a basis of asserting standing – to get a 'foot in the door', so to speak), that basis appears to be where the act, omission or decision of the liquidator involves not an administrative (business/commercial) matter but a matter that has one or more of the following characteristics (which may sometimes be overlapping characteristics):

a)  a legal issue, such as the determination of competing claims and priorities (as in Buckingham 1 and Buckingham 2);

b)  a matter that it is not for the liquidators to decide at their own discretion; and/or

c)  the exercise of a power given specifically to liquidators where the applicant could have no other recourse, remedy or right to challenge the substantive consequence of the act, omission or decision (which may mean the act, omission or decision itself if that is the final substantive consequence).

[52]    Moreover, as Mahomed indicates, it may be that persons affected by other acts, omissions or decisions with generally speaking comparable characteristics can properly bring themselves within Section 273.

[53]    However, in any event and importantly, the applicant must have a legitimate interest in the relief sought. It is not sufficient that the applicant has an interest in making the application or may be affected by the outcome.

17

c. Do Applicants Have Standing and a Legitimate Interest, and Does Court have Jurisdiction which it may Exercise in this Case?

[54]    The Applicants submit that they are not "mere busybodies" but "aggrieved persons"[28] with a genuine grievance, and persons "directly affected by the exercise of a power given specifically to liquidators"[29].

[55]    In that regard, while they point to their situation as defendants in the U.S. Proceedings, they say that they have standing to bring, and a legitimate interest in bringing, their Section 273 applications; and that this Court has jurisdiction which it may exercise in regard to their Section 273 applications.

[56]    The Applicants submit that in this case the decision of the Liquidators to pursue the U.S. Proceedings is dependent on legal considerations, and as such the Court has a greater role.

[57]    The Applicants submit that the following four legal considerations (which in some cases are inter-related) exist and are relevant to their standing and legitimate interest:

- first, whether it is permissible for the Respondents, having argued that their claims for restitution are governed by BVI laws and having pursued their claims in this jurisdiction and lost, to continue to assert what they say are the same causes of action in the U.S. [The substance of this consideration is discussed below in the part "Section 273 Relief Issue" under *"First Consideration: Restitutionary Claims Should Not Be Pursued in U.S."*];

- second, whether as a matter of public policy claims by the Liquidators raising issues involving the Act, and hence BVI law, should be brought in this jurisdiction [The substance of this consideration is discussed below in the part "Section 273 Relief Issue" under *"Second Consideration: BVI Insolvency Act Claims Should Be Brought in this Jurisdiction"*];

---

[28] Edennote, pages 721-722.
[29] Mahomed & Anor v Morris & Ors. (**"Mahomed"**) [2001] BCC 233 (CA).

third, whether any court other than the BVI court can grant relief under Section 249 of the Act setting aside and avoiding the payments [The substance of this consideration is discussed below in the part "Section 273 Relief Issue" under "Third Consideration: U.S. Bankruptcy Court Cannot Grant Section 249 Relief"]; and

- fourth, whether the BVI Insolvency Act Claims are bound to fail [The substance of this consideration is discussed below in the part "Section 273 Relief Issue" under "Fourth Consideration: BVI Insolvency Act Claims Bound to Fail"].

[58]    However, these types of legal considerations are not legal issues such as the determination by the liquidators of competing claims and priorities. These are legal issues that arise in the U.S. Proceedings themselves, not in the decision of the Liquidators to bring the U.S. Proceedings, and initially can be determined by the U.S. Bankruptcy Court if it determines to do so.

[59]    Further, the Applicants do not submit that they have no other recourse, remedy or right to challenge on a preliminary basis the substantive consequence of the act, omission or decision (that is, to challenge on a preliminary basis the Liquidators' claims brought in the U.S. Proceedings, whether on inconvenient forum grounds; on issue estoppel, res judicata, abuse of process and/or other comparable doctrines to prevent abuse; or otherwise).

[60]    Rather, they submit that they have no other means of obtaining a review in this jurisdiction, under BVI law, of the exercise by the Liquidators of their powers to bring the U.S. Proceedings (being the "act, omission or decision" on which they are focused). But that is different than having no other remedy at all for the substantive concern of the person claiming to be "aggrieved by the act, omission or decision".

19

[61]    The Respondents accept that there may be situations where a person would have no other remedy and there could be a "denial of natural justice"[30]. However, they are quick to submit that the Applicants are not in that situation as they have remedies in the U.S. Proceedings (to dispute jurisdiction; to seek an early dismissal of unmeritorious claims). Presumably the Applicants also may raise in the U.S. Proceedings issue estoppel, res judicata, abuse of process and/or other comparable doctrines to prevent abuse if the Liquidators seek to litigate claims or facts that have been or appropriately could have been determined elsewhere in other proceedings.

[62]    The U.S. Bankruptcy Court may determine that there is nothing left of any form of restitutionary claims or that whatever is left is for the determination of this Court given the fact and history of, and judicial admissions and determinations in, the BVI Proceedings, the governing law of the Articles of Association, and other factors it deems legally and factually relevant under its mandate to make preliminary determinations.

[63]    And with respect to the BVI Insolvency Act Claims, the U.S. Bankruptcy Court may determine, based on considerations elsewhere in this Judgment, and other factors it considers legally and factually relevant under its mandate to make preliminary determinations, that they should be determined in this jurisdiction and any remedy granted by this Court.

[64]    The Applicants counter that the remedies in the U.S. Proceedings are not a review by this Court of the exercise of the Liquidators' powers to bring the U.S. Proceedings in the first place. However, that does not seem to be the relevant point: they have remedies in the U.S. Proceedings in respect of the substance of what the Liquidators are doing.

[65]    The Applicants also point out that in the U.S. Proceedings they will have substantial irrecoverable expenditures on legal costs, even if successful,

---

[30] Re Hans Place Ltd ("**Hans Place**") [1992] BCC 737; PriceWaterhouseCoopers v Saad Investment Company Limited [2014] UKPC 35

presumably on the basis that the U.S. Proceedings are not subject to "loser pay" rules as would be the case in the Virgin Islands.

[66]    Accepting that is the case, it does not mean that the Applicants do not have remedies but rather that there are differences in the remedies available and the remedies sought on these Applications. Those differences are not sufficient to be able to say that the Applicants lack remedies.

[67]    The Respondents submit that the Applicants' interest can be only as former members of the Funds who are defendants in proceedings brought by the Liquidators and are seeking to prevent claims from being pursued against them as debtors of the Funds. This, they submit, is not a legitimate interest in terms of standing to seek relief pursuant to Section 273.

[68]    While it does appear to be the case that the Applicants are motivated by a desire to cut off the Liquidators' claims against them in the U.S. Proceedings, they would appear to have some contingent interest in the ultimate distributions as they would have some entitlement in the ultimate distribution if there are successful claims against them for recovery of their redemption proceeds in the U.S. Proceedings or otherwise.

[69]    However, that is not the basis upon which they apply – none of their submissions focus on a detriment to the estates or their positions as contingent interested persons – rather their submissions are focused on them not being subjected to the U.S. Proceedings.

[70]    In any event it is questionable whether their contingent interests are not so remote and overwhelmed economically by their contradictory interests as defendants in the U.S. Proceedings as to leave them, as a matter of realism, largely (if not entirely) in the litigation defendant category.

[71]    The Applicants' interest as former members of the Funds who are defendants in proceedings brought by the Liquidators does not give them a legitimate interest upon which this Court may act to grant relief.

21

[72]   Accordingly, the Applications should be dismissed on the basis that Applicants do not have standing, and in any event do not have a legitimate interest, and as a result this Court does not have jurisdiction which it may exercise to grant Section 273 relief.

## SECTION 273 RELIEF ISSUE

[73]   As set out above, the Respondents submit that even if the Applicants have standing under Section 273 of the Act (and assuming they have a legitimate interest), they cannot meet the test for the exercise by the Court of its Section 273 power as the Liquidators' actions are not "so utterly unreasonable and absurd that no reasonable man would have done it".[31]

[74]   In the event this Court is wrong in its conclusion that Applicants do not have standing, and in any event do not have a legitimate interest, and as a result this Court does [32]have jurisdiction which it may exercise to grant Section 273 relief, the question of whether Section 273 relief should be granted will be considered.

[75]   The Respondents point out that the U.S. Proceedings were brought pursuant to legal advice and with the support of unconflicted members of the Liquidation Committee[33] and the sanction of this Court, and are for the purpose of recovering assets for the benefit of victims of the Madoff fraud.

[76]   The essence of the Respondents' submissions is that the Court's role is not to second-guess a liquidator's decisions taken to bring in assets for an insolvent estate. Section 273 is not for a court to question whether a liquidator has chosen the best approach but rather it is to prevent a liquidator from taking steps that are "so manifestly absurd or perverse that they fall completely outside the permissible range of options". The authorities cited in support of this position yield other articulations of the test such as "affected by mala fides" or "so perverse that no reasonable

---

[31] Edennote, page 722, lines B-D.
[32]

[33] A relevant factor: Mahomed (CA).

22

liquidator could have arrived at it"; "so utterly unreasonable and absurd that no reasonable man would have done it".[35]

[77] The Respondents accepted that it would be mala fides and would meet the test for this Court's intervention if a liquidator were bringing unmeritorious (hopeless) court proceedings as a hardball tactic just to pressure the defendant into a settlement. However, that was not really the Applicants' contention despite the Applicants submitting, as set out in this Judgment, that the Respondents' claims are bound to fail.

[78] In a situation where a liquidator states (without waiving privilege) that he or she has an accepted legal opinion of there being sufficient merit to justify the bringing of a claim, it seems that it would be virtually impossible, in the absence of highly compelling contradictory factual evidence, for a court on a preliminary review of the merits to conclude that such motivation was the sole or primary motive.

[79] The substance of the four legal considerations that the Applicants raised in support of their submission that they have standing and a legitimate interest, and that this Court has jurisdiction which it may exercise, are the focus of the Applicants' submissions that the Liquidators bringing of the U.S. Proceedings meets the test for the exercise by the Court of its Section 273 power to grant relief, as articulated in the above paragraphs. In effect they submit that the Liquidators' decision to bring the U.S. Proceedings is "so manifestly absurd or perverse that [it falls] completely outside the permissible range of options"; "so perverse that no reasonable liquidator could have arrived at it"; "so utterly unreasonable and absurd that no reasonable man would have done it".

[80] The merits of the following four legal considerations (which considerations were listed earlier in this Judgment and which in some cases are inter-related) are asserted by the Applicants in respect of the Section 273 Relief Issue:

---

[34] Re Hans Place Ltd at p. 745H-746A.
[35] Edennote at p.722, lines B-D.

- first, whether it is permissible for the Respondents, having argued that
  their claims for restitution are governed by BVI laws and having pursued
  their claims in this jurisdiction and lost, to continue to assert what they
  say are the same causes of action in the U.S. [This consideration is
  discussed below under *First Consideration: Restitutionary Claims
  Should Not Be Pursued in U.S.*"];

- second, whether as a matter of public policy, claims by the Liquidators
  raising issues involving the Act, and hence BVI law, should be brought in
  this jurisdiction [This consideration is discussed below under "*Second
  Consideration: BVI Insolvency Act Claims Should Be Brought in this
  Jurisdiction*"];

- third, whether any court other than the BVI court can grant relief under
  Section 249 of the Act setting aside and avoiding the payments [This
  consideration is discussed below under "*Third Consideration: U.S.
  Bankruptcy Court Cannot Grant Section 249 Relief*"]; and

- fourth, whether the BVI Insolvency Act Claims are bound to fail [This
  consideration is discussed below under "*Fourth Consideration: BVI
  Insolvency Act Claims Bound to Fail*"].

[81]    **First Consideration: Restitutionary Claims Should Not Be Pursued in U.S.**
The Applicants raise the following two reasons under this consideration:

a)   that the restitutionary claims are subject to BVI law under which
     they are bound to fail and the Liquidators should not be allowed
     to pursue equivalent causes of action and seek an opposite
     and inconsistent result in the U.S.; and

b)   that the restitutionary claims ought not to be pursued in the
     U.S. because the BVI Insolvency Act Claims cannot be
     pursued there and all claims should be brought in the same
     proceedings.

[82]    Respecting the first of the two reasons, the Applicants submit that the
restitutionary claims are subject to BVI law and that the Respondents have

24

judicially admitted that is the case by bringing and pursuing the BVI Proceedings, asserting to this Court that restitutionary claims are governed by the Articles of Association, which means BVI law. Throughout the BVI Proceedings the parties treated the case as governed entirely by BVI law. The main contractual claim of the Respondents in the U.S. Proceedings, if such claim is available to be pursued, appears necessarily grounded in the meaning of "given in good faith" in the Articles of Association, which are governed by BVI law.

[83]    According to the Applicants, an attempt to raise a belatedly discovered New York law provision in subscription agreements that may apply (according to the Respondents, at least in some instances) was rejected by the Privy Council.[36]

[84]    The Applicants further submit that the New York jurisdiction clauses in many (but not necessarily all) of the subscription agreements do not apply. By their terms they would only apply to proceedings "with respect to this Agreement and the Fund", and neither the restitutionary claims nor the BVI Insolvency Act Claims are with respect to the subscription agreements (as noted above, and by the Privy Council, the Articles of Association which are governed by BVI law give rise to the redemption payment obligation). However, the Applicants acknowledge that the Respondents contend for a broader meaning of "with respect to", and that is a New York law issue. Also the Applicants submit that the jurisdiction clause provides for submission to the jurisdiction of the New York courts, not the US Bankruptcy Court, which is a Federal Court of the United States.

[85]    Similar to their position on governing law, the Applicants submit that Sentry submitted to this Court in the BVI Proceedings, in order to establish this Court's jurisdiction, that the restitutionary claims being brought were not in respect of the subscription agreements. They submit that it would be abusive and vexatious to now assert that jurisdiction can be founded in New York on the basis that the restitutionary claims are made "with respect to" the subscription agreements.

---

[36] Privy Council Judgment, paragraphs 17 and 20.

[86]    This Judgment of Leon, J dated 11 March 2016 Court that the Respondents put their stake in the ground on their restitutionary claims, both in respect of governing law and the applicable jurisdiction, and must live with the outcome of their restitutionary claims under BVI law already determined by the Privy Council in the BVI Proceedings, which of course is not the outcome they sought in the BVI Proceedings.

[87]    However, as compelling as these submissions are to this Court, in light of the commencement of the U.S. Proceedings, it is for the U.S. Bankruptcy Court to assess whether there is any scope remaining for the Respondents to pursue claims in the U.S. Proceedings that were or could have been brought in the BVI Proceedings, were determined by the outcome of the BVI Proceedings or should more appropriately be brought in the Territory of the Virgin Islands, including but not limited to the fact that they are or may be under BVI law and the judicial admissions of the Respondents on governing law and the applicable jurisdiction.

[88]    To the extent issues with respect to the subscription agreements arise in relation to jurisdiction, governing law or the relevance of the subscription agreements at all, if they do, the U.S. Bankruptcy Court appears to be better positioned than this Court to determine them (and for comparable reasons to why this Court considers it may be better positioned to determine issues of BVI law).

[89]    Presumably the U.S. Bankruptcy Court will consider and as applicable apply, with considerable diligence and care, all available considerations of issue estoppel, res judicata, abuse of process and/or other comparable doctrines to prevent abuse, if it considers that they may be engaged, and will consider, if and when the issues are presented to it, whether the restitutionary claims in the US Proceedings can be brought and maintained at all, and if so, whether the U.S., and the U.S. Bankruptcy Court, is the appropriate and convenient forum for the determination of such claims (including in light of the second reason discussed below).

[90]    The second of the two reasons advanced for the Applicants' submission that the restitutionary claims ought not to be pursued in the U.S. is that the BVI Insolvency

26

Act Claims cannot be pursued there (which the Applicants raise as in their Second and Third Considerations, discussed below), and all claims should be brought in the same proceedings.

[91]    This Court agrees that ideally all claims by the Respondents against the Applicants should be brought in the same jurisdiction, ideally in the same proceedings, unless "fragmentation is imperative", as to do otherwise ordinarily would be "inefficient and impractical".

[92]    However, there may be sufficient reason at this stage that the U.S. Proceedings are a better platform for determination of any restitutionary claims, if notwithstanding the considerations above, the U.S. Bankruptcy Court determines that there are restitutionary claims that can be pursued in the U.S. Proceedings and it is determined that the BVI Insolvency Claims should be pursued or must be pursued in the Territory of the Virgin Islands. In other words, it may turn out that fragmentation is imperative.

[93]    Is that conclusion changed by the existence of the BVI Insolvency Act Claims, and the compelling submission that this is the jurisdiction for the determination of those statutory claims? If the U.S. Bankruptcy Court is going to determine any restitutionary claims against the Respondents, is it in a better or as good a position to determine the factual and legal issues in the BVI Insolvency Act Claims?

[94]    As discussed below, it cannot be that the U.S. Bankruptcy Court is in as good or a better position to determine the legal issues in the BVI Insolvency Act Claims as those are under BVI law, just as it cannot be that this Court is in a better position than the U.S. Bankruptcy Court to determine New York law issues.

[95]    The U.S. Bankruptcy Court may or may not be in a better position to determine the factual issues although it is difficult to see, at least on what is available on these Applications, that the BVI Insolvency Act Claims depend sufficiently on the same, similar or aligned factual determinations that may need to be made to determine any restitutionary claims that continue in the U.S. Proceedings.

27

[96]    Also, it is a matter of (as discussed in the part below "The Consideration: U.S.
Bankruptcy Court Cannot Grant Section 249 Relief") from a Territory of the Virgin
Islands perspective that the U.S. Bankruptcy Court could grant the statutory relief
that Section 249 of the Act empowers this Court to grant. Whether it could grant
comparable or other sufficient and appropriate relief is for it to determine.

[97]    For this question to be determined, logically and as a matter of 'good order', it
seems that the U.S. Bankruptcy Court, if it can do so and chooses to do so, should
(from this Court's perspective) determine:

- first which, if any, restitutionary claims in the U.S. Proceedings it can and
  is going to entertain (despite all of the submissions of the Applicants
  which may be made why it cannot and should not, including on
  inconvenient forum grounds; on issue estoppel, res judicata, abuse of
  process and/or other comparable doctrines to prevent abuse; on judicial
  admissions made in the BVI Proceedings; or otherwise), and

- second if it is going to entertain any of the restitutionary claims in the U.S.
  Proceedings, whether it can and chooses to entertain any of the BVI
  Insolvency Act Claims, including whether there are sufficient of the same,
  similar or aligned factual determinations that need to be made in the
  restitutionary claims that are necessary or desirable for the BVI
  Insolvency Act Claims, and whether to leave it to this Court to deal with
  the BVI Insolvency Act Claims in their entirety, or to deal with those
  claims based on certain factual determinations that will likely need to be
  made in the U.S. Proceedings.

[98]    While of course this Court cannot ask the U.S. Bankruptcy Court to proceed in any
particular manner, if indeed the manner suggested is even open to it, it is more
orderly and logical that this Court leave it to the U.S. Bankruptcy Court to make
such determinations first in that regard as it considers appropriate and just and
consistent with applicable conflict of laws principles.

28

[99]   **Second Consideration:   BVI Insolvency Act Claims Should Be Brought in**
**this Jurisdiction.**  The Applicants submit that as a matter of public policy claims
by the Liquidators raising issues involving the Act, namely the BVI Insolvency Act
Claims, should be brought in this jurisdiction, and that business people would
expect that such claims would be brought in this jurisdiction.

[100]   Issues of BVI law would be more easily and appropriately resolved by this Court
than by the U.S. Bankruptcy Court relying on expert evidence of BVI law, they say.

[101]   They point by way of examples to a number of issues of BVI law that will need to
be resolved.

[102]   First, there will be an issue of whether a redemption payment is a "transaction"
within the meaning of the Act (Sections 245 and 246) or whether it is "merely part
of, or a consequence of, a redemption transaction into which the Fund entered at
an earlier stage".

[103]   Second, if it was a "transaction", there will be an issue whether the transaction was
an "insolvency transaction" (Section 244(2)-(3)). The Applicants submit that that
issue raises three questions of BVI law.

[104]   Third, under Section 244(1), there will be an issue of the date on which the
vulnerability period begins, which in turn is based on whether the impugned
transaction was with a "connected person" and the Liquidators have pleaded that
the transaction were with connected persons, the Applicants being members of the
Funds.

[105]   Fourth, there will be an issue whether the Applicants were "creditors" of the Funds
for the purposes of Section 245(1); the scope and application of Sections 245(2)
and 246(2); the identification for the purposes of Section 246(1)(b) of the
consideration for which the Funds entered into the redemption transactions; and
the correct approach to the valuation of that consideration.

[106]   The Applicants submit that it is generally better that questions of law be decided
by courts of the jurisdiction of the law in issue.

[107]   If the issues of BVI law are determined in the U.S. Proceedings, the Applicants (and indeed the Respondents) will be deprived of appeal rights to the Court of Appeal and ultimately to the Privy Council, and the courts of this jurisdiction will have been deprived of the opportunity to determine those legal issues.

[108]   They submit that the BVI Insolvency Act Claims are extensively dependent on issues of BVI law, with which this Court and the courts to which appeals from this Court proceed, will be more familiar than the U.S. Bankruptcy Court and the courts to which appeals from it proceed, and that it is important for the development of the BVI as an international commercial centre that this Court is seen to ensure that BVI law is strictly followed in BVI insolvency matters and if there are to be appeals, it is preferable that they be heard by the appellate courts of this jurisdiction.

[109]   In essence the Respondents submit that the Applicants over-state each of the alleged reasons why the U.S. Bankruptcy Court cannot determine the BVI Insolvency Act Claims.

[110]   As articulated in dealing with the First Consideration, it cannot be that the U.S. Bankruptcy Court is in as good or a better position to determine the legal issues in the BVI Insolvency Act Claims as those are under BVI law, just as it cannot be that this Court is in a better position than the U.S. Bankruptcy Court to determine New York law issues.

[111]   The U.S. Bankruptcy Court may or may not be in a better position to determine the factual issues although it is difficult to see, at least on what is available on these Applications, that the BVI Insolvency Act Claims depend sufficiently on the same, similar or aligned factual determinations that may need to be made to determine any restitutionary claims that continue in the U.S. Proceedings.

[112]   Also, it is difficult to see (as discussed in the section below "Third Consideration: U.S. Bankruptcy Court Cannot Grant Section 249 Relief") that the U.S. Bankruptcy Court could grant statutory relief that this Court may grant under Section 249 of the Act.

[113]    However set out above, it seems that on his consideration, logically and as a matter of 'good order', it seems that the U.S. Bankruptcy Court, if it can do so and chooses to do so, should (from this Court's perspective) determine:

- first which, if any, restitutionary claims in the U.S. Proceedings it can and is going to entertain (despite all of the submissions of the Applicants which may be made why it cannot and should not, including on inconvenient forum grounds; on issue estoppel, res judicata, abuse of process and/or other comparable doctrines to prevent abuse; on judicial admissions made in the BVI Proceedings; or otherwise), and

- second if it is going to entertain any of the restitutionary claims in U.S. Proceedings, whether it can and chooses to entertain any of the BVI Insolvency Act Claims, including whether there are sufficient of the same, similar or aligned factual determinations that need to be made in the restitutionary claims that are necessary or desirable for the BVI Insolvency Act Claims, and whether to leave it to this Court to deal with the BVI Insolvency Act Claims in their entirety, or to deal with those claims based on certain factual determinations that will likely need to be made in the U.S. Proceedings.

[114]    In doing so, the U.S. Bankruptcy Court may choose to have regard to the extent of BVI law involved in the BVI Insolvency Act Claims, whether it considers it is able to grant relief under Section 249 of the Act, or in some other manner, and the other factors advanced by the Applicants (assuming those factors are advanced to the U.S. Bankruptcy Court).

[115]    While, as stated above, of course this Court cannot ask the U.S. Bankruptcy Court to proceed in any particular manner, if indeed the manner suggested is even open to it, it is more orderly and logical that this Court leave it to the U.S. Bankruptcy Court to make such determinations first in that regard as it considers appropriate and just and consistent with applicable conflict of laws principles.

[116]   It may turn out that some "fragmentation is imperative" of the U.S. Bankruptcy
Court may conclude, having regard to the extent and nature of the restitutionary
claims it will entertain (if any), that fragmentation can be avoided or its
consequences reduced, and the public policy considerations (of a jurisdiction's
laws being determined by the courts of that jurisdiction) better served, by requiring
the BVI Insolvency Act Claims to be pursued in this jurisdiction if they are going to
be pursued at all.

[117]   **Third Consideration: U.S. Bankruptcy Court Cannot Grant Section 249 Relief.**
The Applicants raise an objection under their First Consideration that only this
Court can grant statutory relief under Section 249 of the Act setting aside and
avoiding the payments that the Respondents allege are unfair preferences and
undervalue transactions, and that the U.S. Bankruptcy Court has no power to
make a declaration or grant relief under Part VIII of the Act ("Voidable
Transactions").

[118]   The Applicants submit that there is no example of any U.S. court applying
discretion under foreign statutory provisions. In the case of Section 249 of the Act,
the discretion is given to this Court. They submit it is nonsensical to suggest that
the U.S. Bankruptcy Court (or any foreign court) can exercise the statutory
discretion.

[119]   As stated above, it is difficult to see that whatever determinations the U.S.
Bankruptcy Court could make in respect of the factual or even legal issues
respecting the allegedly voidable transactions that the U.S. Bankruptcy Court
could grant the statutory relief under Section 249 of the Act that this Court could
grant. As noted below, however, it may consider that it can grant other comparable
and effective relief.

[120]   Section 249 provides that where this Court (as defined term in the Act) is satisfied
that a transaction entered into by a company is a voidable transaction, this Court,
on application of the office holder, may make various orders, as specified in
Section 249(1)(a)-(c) and 249(2).

[121]  If the U.S. Bankruptcy Court were to have jurisdiction, and see fit, to entertain the BVI Insolvency Act Claims, presumably if it has the jurisdiction to do so, it could make declaratory determinations with respect to the allegedly voidable transactions. Whether it could make any other comparable and effective types of orders remains to be determined.

[122]  If the U.S. Bankruptcy Court were to make, for example, declaratory determinations, presumably the office holder (the Liquidators) would need to apply to this Court under Section 249 if they wish this Court to make any of the types of discretionary orders available under the section. Upon such an application, this Court would need to be "satisfied" that any transaction subject to such declaratory determination is a "voidable transaction" and then would need to determine the appropriate relief from the options under Section 249. What this Court would need to do to be "satisfied" remains to be determined, including the effect of the U.S. Bankruptcy Court's declaratory determination.

[123]  It remains for the U.S. Bankruptcy Court to determine, if asked to do so, whether from its perspective this method of adjudicating the BVI Insolvency Act Claims is logical, practical, efficient or appropriate.

[124]  If it determines it is not, then either "fragmentation is imperative", or indeed it may determine that any remaining restitutionary claims should be determined in this jurisdiction (in particular, the alleged availability and applicability of the "given in good faith" issue).

[125]  **Fourth Consideration: BVI Insolvency Act Claims Bound to Fail.** The Applicants submit that the unfair preference claims and the undervalue transaction claims are bound to fail for two reasons.

[126]  First, the Applicants submit that the redemptions were not "insolvency transactions", as defined in the Act.[37] The Liquidators' pleaded case is that each of the redemption payments made during a period of two years prior to the filing of

---

[37] Act, Section 244(1) and (2): A transaction is an insolvency transaction if (a) it is entered into at time when the company is insolvent; or (b) it causes the company to become insolvent.

33

the application for the appointment of a liquidator in respect of the relevant Fund constituted an insolvency transaction entered into by the Fund within the vulnerability period.

[127]   The Applicants submit that a redemption payment is not a "transaction" but part of, or a consequence of, a redemption transaction into which the Fund entered at an earlier stage [38] and in any event that the redemption payments were not "insolvency transactions". They say that the Liquidators' case is that as a result of redemption payments made before the Madoff fraud was exposed, the Funds were unable to satisfy liabilities to the BLMIS Trustee arising under consent judgments entered against the Funds on 13 July 2011 pursuant to a settlement agreement made on 9 May 2011 and that although the Funds as a result notionally have substantial liabilities to the BLMIS Trustee, those liabilities either have been discharged or will become payable only if and when Fairfield has received funds with which to discharge them.

[128]   In their submissions on why the BVI Insolvency Act Claims involve issues of BVI law (discussed separately in this Judgment), the Applicants say that the issue of whether the redemption payments were insolvency transactions raises three questions of BVI law, namely whether the Funds, even now, are unable to pay their debts as they fall due; assuming the funds are not so able, whether that inability had commenced at the time when the redemption payments were made; and alternatively and on the same assumption, whether the redemption payments caused the Funds now to be unable to pay their debts as they fall due.

[129]   Given these submissions of the Applicants on the issues of BVI law that arise in the BVI Insolvency Act Claims, it is rather difficult to accept that this Court can now make a summary determination on these Applications that they are "bound to fail".

[130]   Second, the Applicants submit, as a reason that the unfair preference claims are bound to fail, that the Applicants, as redeeming members of a company, were not

---

[38] Re Taylor-Sinclair (Capital) Ltd, Knights v Seymour Pierce Ellis Ltd. [2001] 2 BCLC 176.

34

"creditors" for the purposes of Section 245 of the Act[39], relying on Westford
Special Situations Fund Ltd v Barfield Nominees Ltd.("**Westford**")[40]

[131]    The submission turns on the definition of "creditor" under Section 9 of the Act that
"[a] person is a creditor of another person (the debtor) if he has a claim against the
debtor ... that is, or would be, an admissible claim in" a liquidation or bankruptcy of
the debtor.

[132]    The Applicants point out that the Liquidators have pleaded that the Applicants
were creditors within that definition. The Applicants submit that based on Section
197 of the Act (which precludes a member and a past member of a company from
claiming "in the liquidation of the company for a sum due to him in his character as
a member") and Westford (which dealt with the meaning of creditors for the
purposes of Section 162 of the Act, being the provision setting out who may apply
to the court for the appointment of a liquidator), they are not "creditors".

[133]    However, to succeed on that argument the Applicants acknowledge that they must
distinguish or otherwise deal with the judgment in Somers Dublin Ltd. v Monarch
Pointe Fund Ltd.[41] as the "two judgments are not fully reconcilable. It is therefore
necessary to analyze them in order to identify the principle by which this court is
bound."[42]

[134]    Given the nature of the submissions of the Applicants on this second "bound to
fail" reason, it too seems inappropriate for it to be decided in the context of a
summary determination on these Applications.

[135]    Both reasons, however, lend support to the Applicants' submissions that there are
difficult issues of BVI law to be determined such that the U.S. Bankruptcy Court
may conclude that the BVI Insolvency Act Claims should be determined in this
jurisdiction.

---

[39] Act, Section 245(1) "... a transaction entered into by a company is un unfair preference given by the
company to a creditor if the transaction ...".
[40] BVIHCVAP 2010/014, 28 March 2011.
[41] BVIHCVAP 2010/040, 11 March 2013.
[42] Applicant's Skeleton Argument, paragraph 77.

[136]   Accordingly, even if the Applicants have standing and a legitimate interest under
Section 273 of the Act, the Applications for Section 273 relief should be dismissed
on the basis that the Applicants do not meet the test for the exercise by the Court
of its Section 273 power. This is so because the Liquidators' "acts, omissions or
decisions" in issue are not "so utterly unreasonable and absurd that no reasonable
man would have done it", "so manifestly absurd or perverse that they fall
completely outside the permissible range of options" or "so perverse that no
reasonable liquidator could have arrived at [them]".

## ANTI-SUIT INJUNCTIONS

[137]   The Applicants seek, in the alternative, anti-suit injunctions to restrain the
Liquidators from pursuing the U.S. Proceedings.

[138]   In support of the alternative applications, the Applicants rely on all the submissions
made on their main applications.

[139]   The Applicants summarize their submissions on the application of the principles
for the granting of an anti-suit injunction, as set out in particular in Société
Nationale Industrielle Aérospatiale v Lee Kui Jak [43], to the facts on these
Applications, in the following manner.

[140]   They submit that it is not in the interests of justice for the U.S. Proceedings to
continue. Contrary to the submissions of the Respondents that an anti-suit
injunction would not be consistent with judicial comity between this Court and the
U.S. Bankruptcy Court, which is the court that should decide whether the actions
before it have merit, the Applicants submit that the U.S. Bankruptcy Court has
recognized that this Court has the authority to decide if the U.S. Proceedings
should be allowed to continue, so there should be no concern that an anti-suit
injunction would breach comity.

[141]   Further the Applicants submit that if the proceedings are bound to fail, they are
vexatious. It is also unjust and vexatious for foreign claims to be pursued that

---

[43] [1987] 1 AC 871; see also Carlyle Capital Corporation Ltd v Conway [2013] 2 Lloyd's Rep 179.

would interfere with the process of this Court or compromise the integrity of its judgments. Therefore, the Applicants submit that it is vexatious and oppressive for the restitution claims to be pursued in the U.S., and the ends of justice require that the BVI Insolvency Act Claims should be adjudicated only in this jurisdiction. Also it is vexatious for proceedings to be pursued in a foreign jurisdiction where claims based on equivalent causes of action have already been dismissed in this jurisdiction so that the pursuit of the claims is a collateral attack on the Privy Council Opinion. It is not unjust to deprive Fairfield of any advantages of litigation in the United States because the restitutionary claims are bound to fail and the BVI Insolvency Act Claims, which are also bound to fail, could properly be brought only in this jurisdiction. The ends of justice would be served by the grant of an injunction to restrain the Liquidators from continuing the U.S. Proceedings.

[142]   As set out in the preceding sections of this Judgment on the main grounds of the Applications, this Court considers that it is more orderly and logical that this Court leave it to the U.S. Bankruptcy Court to make determinations first on which, if any, restitutionary claims it is going to entertain, and then whether there are sufficient of the same, similar or aligned factual determinations that may need to be made for the BVI Insolvency Act Claims, or leave it to this Court to deal with the BVI Insolvency Act Claims in their entirety.

[143]   Further, this Court questions whether an appropriate means for it to be controlling the conduct of a liquidator, an officer of the court – one of its own officers – is by way of injunction. The Court has inherent jurisdiction to control the conduct of its own officers, which the Privy Council in Deloitte held "is beyond dispute".[44] Whether the inherent jurisdiction in the context of a person claiming to be "aggrieved by an act, omission or decision of an office holder" has been replaced by Section 273 of the Act need not be determined on these Applications, as even if there is inherent jurisdiction beyond Section 273 of the Act, the Applicants would not be proper persons to invoke the jurisdiction, for the same reason as they would not be proper persons to invoke the Section 273 jurisdiction if they were persons

---

[44] Deloitte, page 998, lines B-C.

"aggressive and in fact constitute a decision of an offence holder within the meaning of that section.

[144]    Accordingly, the alternative claims for anti-suit injunctions to restrain the Liquidators from pursuing the U.S. Proceedings should be dismissed.

## ORDER AND DIRECTION

[145]    This Court orders that the Applications are dismissed.

[146]    This Court directs that the parties shall file and exchange written submissions on costs by 4:00 pm on Wednesday 16 March 2016, following which this Court will make its order regarding the costs of the Applications.

Justice Barry Leon
**Commercial Court Judge**
11 March 2016

38