**BROWN RUDNICK LLP**
David J. Molton
Daniel J. Saval
Marek P. Krzyzowski
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800

*Counsel for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) **Chapter 15 Case** |
| **FAIRFIELD SENTRY LIMITED, et al.,** | ) |
| | ) **Case No: 10-13164 (SMB)** |
| Debtors in Foreign Proceedings. | ) |
| | ) **Jointly Administered** |
| | ) |
| **FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,** | ) |
| | ) |
| Plaintiffs, | ) **Adv. Pro. No. 10-03496** |
| -against- | ) |
| | ) |
| **THEODOOR GGC AMSTERDAM, et al.,** | ) **Administratively** |
| | ) **Consolidated** |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL BACKGROUND................................................................................................ 4

I.      Commencement of These Actions and Initial Procedural Issues ....................................... 4

II.     The BVI Redeemer Actions and the Preliminary Issues .................................................... 6

III.    The October 18, 2011 Stay Order ....................................................................................... 9

IV.     Developments During Pendency of Stay ............................................................................ 9

V.      The Proposed Amendments ............................................................................................... 15

VI.     Integrated Briefing of Motion for Leave and Motions to Dismiss ................................... 20

ARGUMENT ............................................................................................................................... 20

I.      Legal Standard for Amendment......................................................................................... 20

II.     The Bases for Amendment Here are Well-Recognized. .................................................... 22

III.    There is no Undue Delay, Bad Faith, or Prejudice to Defendants.................................... 24

IV.     Amendment Would Not be Futile...................................................................................... 27

CONCLUSION............................................................................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Agerbrink v. Model Serv. LLC,
  155 F. Supp. 3d 448 (S.D.N.Y. 2016)........................................................................26

Allison v. Clos-ette Too, L.L.C.,
  No. 14 CIV. 1618 LAK JCF, 2015 WL 136102 (S.D.N.Y. Jan. 9, 2015) ..............................22

In re AMR Corp.,
  506 B.R. 368 (Bankr. S.D.N.Y. 2014)......................................................................25

In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Mendelow),
  Adv. Pro. No. 10-04283 (SMB), 2016 WL 5415505 (Bankr. S.D.N.Y. Sep. 28,
  2016) ...............................................................................................................21, 22

Block v. First Blood Assocs.,
  988 F.2d 344 (2d Cir. 1993) .................................................................................22

Bridgeport Music, Inc. v. Universal Music Grp., Inc.,
  248 F.R.D. 408 (S.D.N.Y. 2008) ..........................................................................22

City of New York v. Grp. Health Inc.,
  649 F.3d 151 (2d Cir. 2011) .................................................................................21

Dubai Islamic Bank v. Citibank, N.A.,
  256 F. Supp. 2d 158 (S.D.N.Y. 2003)....................................................................27

Evans v. Syracuse City Sch. Dist.,
  704 F.2d 44 (2d Cir. 1983) ...................................................................................22

In re Facebook, Inc., IPO Sec. & Derivative Litig.,
  986 F. Supp. 2d 428 (S.D.N.Y. 2013).....................................................................21

In re Fairfield Sentry Ltd.,
  2010 WL 4910119 (S.D.N.Y. Nov. 22, 2010) ...........................................................6

In re Fairfield Sentry Ltd.,
  452 B.R. 64 (Bankr. S.D.N.Y. 2011)........................................................................5

In re Fairfield Sentry Ltd. Litig.,
  458 B.R. 665 (S.D.N.Y. 2011).................................................................................6

Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.,
  665 F.Supp.2d 239 (S.D.N.Y. 2009).......................................................................22

Kroshnyi v. U.S. Pack Courier Servs., Inc.,
    771 F.3d 93 (2d Cir. 2014) ...............................................................................21

McGuire v. Warren,
    207 Fed. Appx. 34 (2d Cir. 2006) .....................................................................22

Middle Atlantic Utils. Co. v. S.M.W. Dev. Co.,
    392 F.2d 380 (2d Cir. 1968) ..............................................................................25

Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank,
    549 B.R. 56 (S.D.N.Y. 2016)......................................................................18, 24

Orange Cty. Choppers, Inc. v. Olaes Enters, Inc.,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007)................................................................30

Panther Partners Inc. v. Ikanos Commc'ns, Inc.,
    681 F.3d 114 (2d Cir. 2012) ..............................................................................27

In re Pfizer Inc. Sec. Litig.,
    No. 04 CIV. 9866 LTS HBP, 2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) ..........................22

S.E.C. v. DCI Telecomm., Inc.,
    207 F.R.D. 32 (S.D.N.Y. 2002) .........................................................................26

Williams v. Citigroup Inc.,
    659 F.3d 208 (2d Cir. 2011) ..............................................................................21

**Other Authorities**

Fed. R. Bankr. P. 7015 ................................................................................................21

Fed. R. Civ. P. 15(a)(2).............................................................................................21

Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators" or "Foreign Representatives"), in their capacities as the duly appointed Liquidators and Foreign Representatives of Fairfield Sentry Limited (In Liquidation) ("Sentry"), Fairfield Sigma Limited (In Liquidation), and Fairfield Lambda Limited (In Liquidation) (collectively, the "Fairfield Funds" or "Funds") in these consolidated adversary proceedings (the "Actions"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to amend the complaints pursuant to Rule 15 of the Federal Rules of Civil Procedure, made applicable to these Actions by Rule 7015 of the Federal Rules of Bankruptcy Procedure. In support of this motion (the "Motion"), the Liquidators respectfully state as follows:

## PRELIMINARY STATEMENT

Over six years ago, the Liquidators of the Fairfield Funds began commencing these Actions, which seek to recover a current aggregate of over $6 billion in redemption payments that many of the world's largest financial institutions and other investors in the Funds refused to return after it came to light that the Bernard L. Madoff Securities Investment LLC ("BLMIS") investment return figures—on which the calculation of Defendants' payments depended—were pure fiction, generated by the perpetrator of the largest Ponzi scheme in history.  Bringing suit on behalf of the Fairfield Funds, including Sentry, the largest feeder fund through which overseas investors invested into BLMIS, the Liquidators commenced these Actions in the sole forum to which the Funds' investors had expressly consented to jurisdiction, *i.e.*, the state and federal courts in the state of New York, seeking recovery of the massively overpaid redemptions.

At the outset of the litigation, however, following rulings issued by the Eastern Caribbean Supreme Court, British Virgin Islands Commercial Division ("BVI Court") in a then-pending (and now-concluded) litigation initiated by the Liquidators to preserve limitations

positions (the "BVI Redeemer Actions"), this Court (Lifland, J.) on October 18, 2011 imposed a stay order pending further developments on appeal with respect to those BVI issues (the "Stay Order").  The appeal of those BVI issues has now been resolved.  During the five years in which this litigation has been subject to the Stay Order, however, there have been material developments in the law and the facts, which now warrant amendment of the operative complaints.

First, the resolution of the BVI appeals underlying the Stay Order has yielded a material change in legal principles relevant to the common law restitutionary and contract-based claims asserted here.  As detailed herein, at the outset of the BVI Redeemer Actions, the defendants in that litigation prevailed upon the BVI Court—over the objections of the Liquidators—to use a BVI (and English-based) procedural device known as "preliminary issues" in an attempt to obtain an early, dispositive judgment based upon two affirmative defenses asserted by them, namely that (i) the redeemers purportedly had given "good consideration" for their redemption payments, and (ii) certain documentation periodically issued by the Funds' administrator, Citco, constituted "certificates," purportedly making the certified NAV used to calculate redemption payments binding on the Funds and their investors, even though wildly inaccurate (the "Preliminary Issues").  Defendants' procedural gambit failed.  Following nearly three years of appeals, the highest court in the BVI judicial system, the Judicial Committee of the UK Privy Council, in April 2014 issued a judgment (the "Privy Council Judgment") that indeed settled the legal issues before it, but did not—because it could not—settle issues that were not before it, including critical factual issues.  While not dispositive, the Privy Council Judgment nevertheless materially modified the legal principles applicable to the common law claims asserted here, and,

as discussed herein, had the effect of placing at the center of the controversy the issue of whether Citco had issued its NAV certificates "in good faith."

Second, the Liquidators in the summer of 2014 obtained detailed and overwhelming documentary evidence that Citco had not in fact acted "in good faith" in issuing the wildly incorrect certificates of NAV. As summarized in the proposed amendments discussed herein, the evidence obtained by the Liquidators shows that Citco personnel, based on their review of proprietary information concerning the Funds' accounts at BLMIS, began sounding the alarm (internally) about BLMIS years before the fraud became public, with Citco personnel, for example, (i) questioning whether the Funds' assets at BLMIS even existed ("I will not change my [opinion] as long as I [do] not see evidence that the portfolio exists"); (ii) expressing concern that BLMIS could be a repeat of the Manhattan Investment Fund fraud of the 1990s "multiplied by a factor of five"; and (iii) raising alarms over the fact that there was no segregation of duties between BLMIS as investment manager and fund custodian. Repeatedly turning a blind eye to these grave concerns, however, Citco, rather than withdrawing, ceasing to issue the certificates, or sounding a public alarm, instead ultimately made a corporate decision to continue on as service providers—in exchange for an 800% increase in fees. As attested in the accompanying declaration Gabriel Moss, Queen's Counsel, the proposed amendments provide a good arguable basis for pleading a "lack of good faith" under BVI law.

Third, and unsurprisingly given the passage of five years, during the pendency of the Stay Order there have been certain additional developments of law and fact warranting amendment. These include the issuance of decisional case law bearing upon the jurisdictional implications of certain redeemers' use of U.S. banks in connection with receipt of redemption payments from the Funds; further factual detail bearing upon insolvency issues in connection the

Liquidators' BVI statutory avoidance claims; and further information obtained by the Liquidators concerning the precise mechanism and sourcing of monies used to make the redemption payments, among other issues. As discussed herein, the Liquidators have proposed amendments to address these issues.

Amendments to account for developments in law and fact are perhaps the best-recognized and least controversial bases for granting leave to amend. In this Circuit, as the Court recently noted in a separate adversary proceeding arising out of the Madoff fraud, there is a preference for resolving claims on the merits. Defendants can make no showing of malice, undue delay or prejudice. And as explained herein—and will become clear during the course of the agreed-upon and Court-ordered integrated briefing of this Motion and Defendants' motions to dismiss—amendment would not be futile. After years of delay, it is time to proceed to the merits.

**PROCEDURAL BACKGROUND**

I.    <u>Commencement of These Actions and Initial Procedural Issues</u>

In April 2010, the Liquidators initiated this litigation by filing suit in New York State Supreme Court against certain of the Funds' redeemers, seeking the return of redemption payments following the exposure of the Madoff fraud.

On July 22, 2010, this Court issued a decision and order recognizing the liquidation proceedings for Sentry, Sigma and Lambda in the British Virgin Islands (the "<u>BVI Liquidations</u>") as foreign main proceedings under Chapter 15 (the "<u>Recognition Order</u>"). Following entry of the Recognition Order, all additional Redeemer Actions were filed in this

4

Court, and actions that had been previously filed in New York State court were removed to this Court or voluntarily discontinued.[1]

Following negotiated extensions of time to move or answer with particular individual defendants, the Liquidators agreed to several successive general extensions of time for defendants to move or answer, with each such extension being so ordered by the Court.[2]  The Liquidators agreed to these extensions for multiple reasons, among them (i) the pendency of motions to remand and for abstention that had in the interim been filed by certain Defendants concerning actions initially commenced in state court and thereafter removed; (ii) the pendency of motions filed by certain Defendants to withdraw the reference with respect to the remand motions; and (iii) to conserve costs by coordinating the timing of responses to complaints in as many Actions as possible.  As a result of these extensions, the Actions remained, in practical effect, stayed while defendants' remand, abstention and withdrawal of the reference motions were pending, from October 2010 until May 2011.

On May 23, 2011, this Court denied Defendants' remand/abstention motions.  See In re Fairfield Sentry Ltd., 452 B.R. 64 (Bankr. S.D.N.Y. 2011).[3]

---

[1] All Redeemer Actions in this Court were administratively consolidated and a case management order was entered to govern service of documents in these actions.  See Order Authorizing the Consolidation of the Redeemer Actions Pursuant to Federal Rule of Bankruptcy Procedure 7042, Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.), Adv. P. No. 10-03496-SMB [Docket No. 24]; Amended Order Authorizing the Consolidation of the Redeemer Actions Pursuant to Federal Rule of Bankruptcy Procedure 7042 [Docket No. 25] ("Consolidation Order"); Order Establishing Case Management Procedures to Govern Redeemer Actions Pursuant to 11 U.S.C. §§ 105(a), 1507(a), and 1521(a)(7) and Bankruptcy Rules 7016, 7042, and 9007 [Docket No. 467] ("Case Management Order").  Unless otherwise noted, all docket numbers referenced herein refer to the lead docket for Redeemer Actions, Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.), Adv. P. No. 10-03496-SMB, as identified in the Consolidation Order.

[2] See, e.g., Revised Second Amended Preliminary Scheduling Order for Redeemer Actions [Docket No. 220]; Amended Scheduling Order for Redeemer Actions [Docket No. 340]; Amended Scheduling Order for Redeemer Actions [Docket No. 371]; Amended Scheduling Order for Redeemer Actions [Docket No. 372]; Amended Scheduling Order for Redeemer Actions [Docket No. 403].

[3] Defendants appealed, and obtained a stay of the Removed Actions from the District Court pending a decision on their motions for leave to appeal and if granted, of the appeal.  See District Court Stay Order, In re Fairfield Sentry

On September 19, 2011, the District Court issued an order (the "<u>Remand Decision</u>")
granting a motion by Defendants for leave to appeal this Court's denial of their procedural
motions and, upon appeal, (i) reversing this Court's ruling that the removed actions were "core
proceedings" in the context of abstention analysis, and (ii) directing this Court to determine
whether the removed actions could be timely adjudicated in state court for purposes of 28 U.S.C.
§ 1334(c)(2).  <u>See</u> <u>In re Fairfield Sentry Ltd. Litig.</u>, 458 B.R. 665, 692 (S.D.N.Y. 2011).

Before further developments in connection with the District Court's Remand Decision
could occur, developments in a then-pending BVI litigation led this Court to modify the posture
of the actions, as discussed next.

## II.    <u>The BVI Redeemer Actions and the Preliminary Issues</u>

As detailed in the accompanying declaration of the Liquidators' BVI counsel, William
Hare of Forbes Hare, the Liquidators, subsequent to their appointment as Liquidators in the BVI
Liquidations, but before their discovery of the Subscription Agreements with provisions by
which Fund redeemers consented to the jurisdiction of state and federal courts in the state of
New York[4] (owing to the limited nature of information initially available to the Liquidators),

---

<u>Litig.</u>, No. 11-00224 (S.D.N.Y. July 14, 2011) [Docket No. 9].  Although the District Court stay applied only to the
Removed Actions, this Court extended, through revised scheduling orders, the time for defendants in all Redeemer
Actions to respond to complaints so as to allow the District Court to decide the motions for leave to appeal this
Court's decision on remand/abstention.  The District Court had previously denied the withdrawal of the reference
motions in November 2010.  <u>See</u> <u>In re Fairfield Sentry Ltd.</u>, 2010 WL 4910119, at *1 (S.D.N.Y. Nov. 22, 2010).

[4] A clause in the Subscription Agreements provides:

<u>New York Courts</u>.  Subscriber agrees that any suit, action or proceeding ("Proceeding") with
respect to this Agreement and the Fund may be brought in New York.  *Subscriber irrevocably
submits to the jurisdiction of the New York courts with respect to any Proceeding and consents
that service of process as provided by New York law may be made upon Subscriber in such
Proceeding, and may not claim that a Proceeding has been brought in an inconvenient forum.*
Subscriber consents to the service of process out of any New York court in any such Proceeding
by the mailing of copies thereof, by certified or registered mail, return receipt requested,
addressed to Subscriber at the address of Subscriber then appearing on the Fund's records.
Nothing herein shall affect the Fund's right to commence any Proceeding or otherwise to proceed

commenced actions in the BVI Court to preserve the Funds' positions with respect to statute of limitations issues.  See October 21, 2016 Declaration of William Hare in Support of Motion for Leave to Amend ("Hare Declaration") ¶¶ 13-18.  In these BVI actions (*i.e.*, the BVI Redeemer Actions), the Liquidators asserted common law restitutionary claims seeking recovery of redemption payments from approximately 74 defendants; the omnibus portion of these actions concerned redemptions in late 2003 and early 2004.  See id. ¶¶ 15, 17-20.

At the outset of the BVI Redeemer Actions, however, certain defendants in those actions sought to cause the BVI Court to adopt a procedure known as "Preliminary Issues," under which certain discrete issues are selected for early adjudication, in the hopes that such adjudication might save time and expense by proving dispositive of the claims.  See Hare Decl. ¶¶ 23-25.  In particular, the BVI Redeemer Action defendants sought the determination as preliminary issues of certain defenses they had asserted, most significantly (i) that the redeemers purportedly had given "good consideration" for their redemption payments, and (ii) that certain documentation periodically issued by the Funds' administrator, Citco, constituted "certificates," purportedly making the certified NAV used to calculate redemption payments final and binding under the Funds' Articles as against the Funds and their investors, even though wildly inaccurate (the "Preliminary Issues").  See id. ¶ 31.

The Liquidators opposed use of the preliminary issues procedure, on the basis that there was a substantial risk that litigating the Preliminary Issues would involve enormous cost and delay without yielding any ruling that was dispositive of the claims, in part because factual

---

against Subscriber in any other jurisdiction or to serve process upon Subscriber in any manner permitted by any applicable law in any relevant jurisdiction.

See October 21, 2016 Declaration of David J. Molton in Support of Motion for Leave to Amend ("Molton Decl.") Ex. C (Proposed Amended Complaint, Adv. Pro. No. 11-01255) at ¶ 22 (emphasis added).

findings might be necessary to reach dispositive rulings on those defenses. <u>See</u> <u>id.</u> ¶¶ 26, 40-42, 44. The Liquidators indicated that, at minimum, if the preliminary issues mechanism were used, there should be an opportunity for factual discovery bearing upon the relevant issues. <u>See</u> <u>id.</u> ¶ 27.

Rejecting the Liquidators' position, the BVI Court ordered adoption of the preliminary issues mechanism, and expressly carved out factual issues relevant thereto. <u>See</u> <u>id.</u> ¶¶ 30-31, 48-49. The Eastern Caribbean Court of Appeal ("<u>EC COA</u>") left undisturbed the BVI Court's decision to use the preliminary issues mechanism, on the basis that it had been a "case management decision" subject to considerable discretion by the BVI Court. <u>See</u> <u>id.</u> ¶¶ 33, 53.

On September 16, 2011, the BVI Court rendered its decision on the Preliminary Issues. The court found that the documents periodically issued by Citco did not constitute "certificates," but that the redeemers had in fact given "good consideration" for their redemption payments, the result being that the good consideration defense would bar the Liquidators' restitutionary claims in the BVI Redeemer Actions. <u>See</u> <u>id.</u> ¶ 35. On October 10, 2011, the BVI Court declined to adjourn a summary judgment motion that had been filed by certain defendants in the BVI Redeemer Actions to allow for the Liquidators to investigate matters of "good faith" relating to the defendants; the BVI Court instead granted summary judgment in favor of these Preliminary Issue defendants, on the basis of its Preliminary Issues judgment. <u>See</u> <u>id.</u> ¶ 36.

The Liquidators lodged appeals with the EC COA of the Preliminary Issues decision and the related summary judgment decision. <u>See</u> <u>id.</u> These appeals were adjudicated in June 2012, as discussed below.

## III.    The October 18, 2011 Stay Order

On October 18, 2011—*i.e.*, following the Preliminary Issues decision and the related summary judgment decision issued by the BVI Court in the BVI Redeemer Actions—this Court entered an order (as amended on October 19, 2011) staying these Actions pending the resolution of (i) appeals of the Preliminary Issues/summary judgment decisions, and (ii) appeal to the Second Circuit of the District Court's Remand Decision.[5]    See Stay Order [Docket No. 418]. The Stay Order carved out and permitted (i) the commencement of new Actions; (ii) the effectuation or completion of service in any Actions already on file or in newly-filed Actions; (iii) participation in settlement discussions; (iv) entry into settlement, tolling or any other type of agreements; and (v) dismissal of Actions with or without prejudice.    See Stay Order at ¶ 4.    The Stay Order also allowed the Liquidators to file a schedule of then-contemplated amendments on November 29, 2011.    See id.; see also Notice of Proposed Amendments [Docket No. 429].

## IV.    Developments During Pendency of Stay

### A.    Liquidators' Attempts to Lift the Stay

Notwithstanding the BVI Court's decisions on Preliminary Issues and summary judgment, on December 5, 2011, the EC COA provided the Liquidators with sanction to proceed with the Actions pending the appeals of those BVI Court decisions.[6]    By letter dated December 14, 2011—and opposed by Defendants by letter dated December 22, 2011—the Liquidators sought a lifting of the stay to proceed with the Actions.    On January 10, 2012, this Court

---

[5] On March 1, 2012, the Second Circuit denied, without prejudice, the Liquidators' motion seeking leave to take an interlocutory appeal of the Remand Decision.    See Fairfield Sentry Ltd. (In Liquidation) v. HSBC Private Bank Suisse SA, Lead Case No. 11-mb-4425 [Docket No. 52] (2d Cir. Mar 1, 2011).    The Second Circuit's order provided that the Liquidators could renew the request for leave to take an interlocutory appeal of the Remand Decision at a later stage of the proceedings.

[6] "Sanction" is sought by liquidators in a BVI liquidation proceeding (generally through an *ex parte* process), and it concerns not the authority of a liquidator to undertake a course of action, nor the *bona fides* of the actions taken by a

(Lifland, J.) denied the Liquidators request to lift the stay, stating: "After due consideration, the status quo shall be maintained until resolution of pending appeals." See Memorandum Endorsement 1/10/2012 [Docket No. 445].[7]

On May 25, 2012, the Liquidators sought partial relief from the Stay Order for the purposes of seeking expedited discovery into the identity of beneficial owners (the "Expedited Discovery Motion"). See [Docket No. 480]. Following an initial decision of this Court and interlocutory appeal proceedings in the District Court, this Court, on remand from the District Court, entered a minute order and bench ruling on July 19, 2012, which, *inter alia*, denied the Liquidators' request for expedited discovery concerning beneficial holders, but lifted the stay for the limited purpose of allowing the Liquidators to amend certain complaints in the Actions. See Minute Order and Bench Ruling [Docket No. 799].

In rejecting the Liquidators' request for expedited discovery, the Court in its bench ruling cited "the glaring uncertainty of the offshore underpinnings for this litigation," referencing the Preliminary Issues appeals (the EC COA had just issued a decision which upheld the BVI Court's Preliminary Issues rulings, as discussed next) and the pending Section 273 Applications ("there appears remaining a pending motion in the BVI courts to withdraw the Foreign Representative's authority to continue the proceedings here"). See Bench Ruling [Docket No. 799-2] at 2.

---

liquidator, but instead the right of a liquidator (by court order) to be funded by the estate in connection with his pursuit of such action. See Hare Decl. ¶ 72.

[7] Following the BVI Court's decisions on Preliminary Issues and summary judgment in the BVI Redeemer Actions, a small number of defendants in those actions commenced applications in the BVI Court pursuant to Section 273 of the BVI Insolvency Act seeking to obtain orders from BVI Court requiring the Liquidators to discontinue the U.S. litigation pending in this Court (*i.e.*, the Actions) (such applications, the "Section 273 Applications"). In February 2012, the BVI Court effectively adjourned the Section 273 Applications pending the ongoing appeals to the EC COA. The Section 273 Applications would be renewed following the 2014 Privy Council Judgment, as discussed below. See Procedural Background Part IV-D, infra.

### B.    EC COA Preliminary Issues Decision and Contract Claim Amendments

On June 13, 2012, the EC COA rendered a decision in the Preliminary Issues appeal, concerning the "good consideration" defense and the "certificates" defense.  The decision dismissed the appeals from the BVI Court decision (*i.e.*, affirmed the BVI Court on both issues), albeit on somewhat different grounds than the reasoning used by the BVI Court.  See Hare Decl. ¶ 37.  The upshot of the EC COA's decision was that the documents concerning NAV issued by Citco were not considered to be "certificates" that could be final and binding.[8]

Following the Preliminary Issues ruling of the EC COA that no certificates had been issued, and using the permission to file as-of-right amendments granted by this Court on remand proceedings concerning the Expedited Discovery Motion, the Liquidators in late 2012 and early 2013 filed amended complaints in 183 actions, asserting contract-based claims seeking the recovery of overpaid redemption amounts, on the theory that the Madoff fraud-inflated NAV was subject to revision until finally certified (and could not be used to defeat those claims), and the redeemers were under an implied obligation to return overpaid redemption amounts.

Because as-of-right amendments had already previously been used in 129 of the then-pending Actions, however, the Liquidators did not have authority to file the contract-based claims in those Actions.  In order to preserve the parties' positions on the claims without teeing up the type of substantive merits briefing that the Court had indicated it did not then wish to reach, the Liquidators entered into stipulations with defendants in those actions, preserving the position of each side with respect to arguments regarding timeliness and statutes of limitation that would otherwise arise between the date the stipulation and the time the Liquidators

---

[8] Following its entry of judgments on appeals of the Preliminary Issues Decision and Summary Judgment Decision, on July 25, 2012 the Eastern Caribbean Court of Appeals nonetheless granted the Liquidators continued sanction to prosecute the redeemer actions in the United States pending an appeal of its judgments to the Privy Council.

ultimately sought permission to amend the complaints.  See [Docket Nos. 817, 823] (the "Timeliness Stipulations").

During the course of seeking to enter into the Timeliness Stipulations, the failure of hundreds of defendants to appear in the litigation posed a practical obstacle to constructive case management.  In particular, with no counsel or contact to negotiate with, the Liquidators were not able to secure consents of non-appearing defendants to the Timeliness Stipulations. Accordingly, the Liquidators on February 13, 2014 filed a motion seeking limited relief from the Stay Order for entry of an order requiring the non-appearing defendants to appear in the Actions. See Motion Seeking Limited Relief from Stay [Docket Nos. 835, 836].  Opposition and reply briefs were filed, but before the motion could be argued, the parties received word that the Privy Council had reached a judgment.

### C.    Judgment of the Privy Council

On April 16, 2014, the Privy Council issued its decision and judgment resolving the Preliminary Issues.  As detailed in the accompanying October 20, 2016 Declaration of Gabriel Moss, Queen's Counsel, in Support of Motion for Leave to Amend (the "Moss Declaration") and the Hare Declaration, the Privy Council resolved the "good consideration" and the "certification" issues in a combined fashion.

The Privy Council held that certain categories of transaction documents periodically issued by Citco (including emails to investors, contract notes, and account statements) constituted "certificates" of NAV with Article 11 of the Funds' Articles.  See Moss Decl. ¶ 37. If the NAV was certified in a manner complying with Article 11, the Funds would be under a contractual obligation to make the redemption payments that they had in fact made.  See id.  In

this way, the Privy Council effectively merged the "good consideration" and "certification" issues. See id.

What the Privy Council did not decide, however—because, as discussed above, the issue was not before it—was whether the certificates were given "in good faith," see Moss Decl. ¶ 38, which, as discussed below, Article 11 requires in order for the certificate to be binding, see Argument Part IV-A, infra.  Following issuance of the judgment, however, the Preliminary Issues defendants sought to bring the good faith issue within the scope of the judgment through the process of agreeing on the form of "declarations" on the preliminary issues.  See Hare Decl. ¶ 63.  The Liquidators took the position that no declarations were necessary because the Privy Council Judgment was clear as to its effect, but that if any declarations were issued, any reference to the certificates should include the wording "if given in good faith."  See id. ¶ 64. The redeemers argued that declarations should be used, in order to achieve the outcome that the Privy Council Judgment could bar the claims even where the certificates were not given "in good faith."  See id.  ¶¶ 63, 65.  Having heard the parties' arguments, the Privy Council declined to adopt any declarations—consistent with the position of the Funds.  See id. ¶ 66.  This was reflected in its final order, which was issued on October 8, 2014 and which made the Privy Council Judgment final.  See id.

D.      **Section 273 Proceedings**

After the Privy Council Judgment became final as a result of its October 8, 2014 order, certain Fund redeemers renewed applications first filed following the initial BVI Court ruling on Preliminary Issues (and/or filed new applications) seeking relief from the BVI Court under Section 273 of the BVI Insolvency Act (and certain injunctive relief), the effect of which relief

would be to bar the Liquidators from proceeding with these Adversary Proceedings (*i.e.*, the Section 273 Applications, noted above, <u>see</u> <u>supra</u> at n. 7).

Following voluminous submissions by the parties, the BVI Court (Leon, J.) conducted a four-day trial of the Section 273 Applications in March 2015.  At the trial, the Section 273 Applicants, after questioning the wisdom of allowing U.S. courts to adjudicate foreign law, proceeded to seek relief from the BVI Court by relying heavily upon contentions of U.S. law, including, *inter alia*, federal subject matter jurisdiction, the construction of various provisions of Chapter 15, mandatory abstention, and personal jurisdiction.  Defendants also presented lengthy arguments purporting to show on the merits that the Liquidators' common law claims and BVI Statutory Claims asserted in these Actions were "bound to fail," such that the BVI Court should enter an order in effect causing the Liquidators to cease entirely the prosecution of these Actions.

On March 11, 2016, the BVI Court (Leon, J.)  issued a decision dismissing and rejecting the Section 273 Applications in their entirety.  <u>See generally</u> Hare Decl., Ex. S (the "<u>Section 273 Judgment</u>").  The BVI Court first found that the Applicants lack standing to seek the relief sought by their Section 273 Applications.  <u>See</u> <u>id.</u> ¶¶ 26-72.  The BVI Court next found that, even if the Applicants had standing, their request for Section 273 relief failed on the merits.  <u>See</u> <u>id.</u> ¶¶ 73-136.  The BVI Court also held that there was no basis for injunctive relief, for similar reasons.  Accordingly, the BVI Court dismissed the Section 273 Applications.  <u>See</u> <u>id.</u> ¶¶ 137-144.  In so ruling, the BVI Court also included, in dicta, comments upon issues that may arise before this Court, and it indicated that, in its view, it would be "orderly and logical" for this Court to consider a range of legal issues that the Applicants, by their Section 273 Applications, had sought to prevent this Court from ever addressing.  <u>See, e.g.</u>, <u>id.</u> ¶¶ 97-98.

14

On March 14, 2016, the Liquidators notified this Court of the decision.  See Mar. 14, 2016 Letter to Judge Bernstein [Docket No. 887].

On July 7, 2016, following receipt of sanction from the EC COA on June 24, 2016 to proceed fully with this litigation,[9] the Liquidators sought a status conference to proceed with recommencing the action.  See July 7, 2016 Letter to Judge Bernstein [Docket No. 897].  The Court set a status conference for July 27, 2016.

At the July 27, 2016 conference, the Liquidators sought permission to proceed with amendment of the complaints, through an initial step of transmitting a template of the amendments to Defendants.  Defendants argued that proceeding with amendment was premature, see July 27, 2016 Hearing Tr. at 40:11-41:2, and that if amendment were permitted, individual amended complaints (rather than a template of amendments) should be provided to Defendants, see id. at 71:21-72:20.  At the hearing, the Court ordered that the Liquidators file their individual proposed amended complaints and submit them to Defendants.  See id. at 69:18-19, 70:17-18, 72-9:17.  The Court further argued that following the filing of the proposed amended complaints, the parties should meet and confer regarding a briefing schedule concerning leave to amend and other threshold issues.  See id. at 73:2-6.

## V.    The Proposed Amendments

Following the July 27, 2016 conference, the Liquidators filed redacted versions of their proposed amended complaints on the dockets and, for each Defendant for which counsel had

---

[9] Following an initial denial of sanction by the BVI Court (Bannister, J., who had previously retired, but returned to the bench for a short period to assist with the press of business, before again retiring), the EC COA on June 24, 2016 granted the Liquidators sanction to prosecute the Actions expeditiously to a final, non-appealable judgment or judgments.  See July 7, 2016 Letter to Judge Bernstein [Docket No. 897].  As noted in the July 7, 2016 letter to the Court, on June 28, 2016, the Eastern Caribbean Court of Appeals considered case management issues with respect to the appeal of the Section 273 Judgment and listed argument in November 2016.

appeared, served upon counsel of record for the Defendant both a redacted and an unredacted

version of the proposed amended complaint (the "Proposed Amended Complaints").[10]

The primary sets of amendments contained in the Proposed Amended Complaints are as

follows:

### A.    Citco's Lack of Good Faith in Issuing Certificates

Relying upon the evidence obtained in during the Summer of 2014 by the Liquidators

concerning Citco, the Liquidators have included in each proposed amended complaint a set of

factual allegations showing that Citco did not act "in good faith" when it issued its inaccurate

certifications of the Funds' NAV.  As explained below and in the accompanying declaration of

Gabriel Moss, QC, redemption payments were calculated based upon this certified NAV, and if

such certificates were not given "in good faith," the import is that under Article 11 of the Funds'

Articles, the NAV figures are not final and binding.  As discussed below, this has implications

for all the common law claims, both restitutionary (mistake-based) and contract-based.  See

Molton Decl. Ex. C (Proposed Amended Complaint, Adv. Pro. No. 11-01255)  ¶¶ 45-74.

### B.    Amendments Involving Contract-Based Claims

Following the June 13, 2012 ruling of the EC COA that the documents issued by Citco

did not constitute "certificates" under the Articles, the Liquidators had in late 2012 and early

2013 filed amendments in 183 actions for which the complaints could be amended as-of-right,

asserting breach of contract and implied covenant of good faith and fair dealing claims for return

of the overpaid redemption amounts.  The theory of these claims was that because there was no

"certificate" that made the NAV final and binding, the NAV was provisional and subject to

---

[10] Pursuant to this Court's September 6, 2016 sealing order, the Liquidators were authorized to file unredacted
versions of the Proposed Amended Complaints under seal and file redacted versions on the public dockets.  See

revision to correct errors, and the redeemers had an obligation under the Articles and Subscription Agreements to return the overpaid amount of the redemption. Following the Privy Council ruling, which held that the Citco documents did constitute "certificates," and following the Liquidators' receipt of evidence that Citco did not, however, issue the certificates "in good faith," the Liquidators seek leave to amend the contract-based claims already in certain operative complaints to allege that no binding certificate was given "in good faith," and amend to add contract-based claims so alleging to those actions where no contract-based claim has yet been added because leave of court was required to amend. See Molton Decl. Ex. C (Proposed Amended Complaint, Adv. Pro. No. 11-01255) ¶¶ 176-217.

## C.    Amendments to BVI Statutory Claims

The Liquidators have already asserted in the operative complaints, for actions where redemptions fell within the two-year statutory look-back period provided under BVI law, claims seeking the avoidance of the redemption payments under Sections 245, 246, and 249 of the BVI Insolvency Act. As noted in the Moss Declaration, the Proposed Amended Complaints reflect certain additional detail regarding the insolvency issues bearing upon those claims. See Moss Decl. ¶¶ 53-55. The Liquidators seek leave to amend the language of the BVI claims accordingly. See Molton Decl. Ex. C (Proposed Amended Complaint, Adv. Pro. No. 11-01255) ¶¶ 144-175.

## D.    Amendments to Personal Jurisdiction Allegations

As noted above, the primary basis for the exercise of personal jurisdiction over Defendants is their express consent to such jurisdiction in the Subscription Agreements. The

---

Order Authorizing the Foreign Representatives to File Proposed Amended Complaints in Partially Redacted Form and Unredacted Proposed Amended Complaints Under Seal [Docket No. 909].

17

Liquidators have, however, asserted in many of the currently operative complaints additional jurisdictional allegations, concerning for example the use of U.S. banks and the directing of investment into the United States.  The Liquidators propose edits to that language to (i) reflect recent legal decisions bearing upon such a basis for jurisdiction, see Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank, 549 B.R. 56, 69 (S.D.N.Y. 2016), and (ii) include related allegations, if not already included, that Sentry redeemers used U.S. correspondent banks in connection with their receipt of the redemption payments.  See Molton Decl. Ex. C (Proposed Amended Complaint, Adv. Pro. No. 11-01255) ¶ 19.

### E.    Amendments Concerning Knowledge of Beneficial Owners

For two subsets of complaints, the Proposed Amended Complaints include allegations that the redemptions were not received in good faith by the Fund investors in question.  This is separate from the concept that NAV certificates were not given in good faith.  As noted below and in the Moss Declaration, the bad faith receipt of redemption payments by a defendant redeemer can provide a basis for concluding that the payments still are recoverable notwithstanding the issuance of certificates of NAV.  See Moss Decl. ¶¶ 45-51.  Here, the basis for allegations of recipient bad faith is that certain defendants had sufficient knowledge of irregularities or misconduct at BLMIS that their receipt of the redemption payments was not in good faith.  Such allegations already are pending against one group of defendants, i.e., the eight "knowledge defendants" that are alleged to have had such sufficient knowledge.[11]  By this

---

[11] See Fairfield Sentry Ltd. (In Liquidation) v. Citibank NA London, Adv. Pro No. 10-03622-SMB; Fairfield Sentry Ltd. (In Liquidation) v. Citigroup Global Markets Ltd., Adv. Pro No. 11-02770-SMB; Fairfield Sentry Ltd. (In Liquidation) v. HSBC Private Bank (Suisse) S.A., Adv. Pro No. 10-03633-SMB; Fairfield Sentry Ltd. (In Liquidation) v. HSBC Secs. Servs. (Lux.) S.A., Adv. Pro No. 10-03630-SMB; Fairfield Sentry Ltd. (In Liquidation) v. Merrill Lynch Int'l, Adv. Pro No. 11-01463-SMB; Fairfield Sentry Ltd. (In Liquidation) v. UBS AG N.Y., Adv. Pro No. 10-03780-SMB; Fairfield Sentry Ltd. (In Liquidation) v. UBS Luxembourg SA, Adv. Pro No. 11-01250-SMB; Fairfield Sentry Ltd. (In Liquidation) v. Zurich Capital Mkts. Co., Adv. Pro No. 10-03634-SMB.

motion, the Liquidators now seek to make two amendments concerning such recipient knowledge. First, certain Proposed Amended Complaints include factual allegations that bear upon the Liquidators' ability to charge the beneficial owners of knowledge defendant record holders with those record holders' knowledge, such that the beneficial owners' receipt also is considered not in good faith. Second, having included the allegations regarding Citco's lack of good faith in issuing certificates, the Liquidators propose to include in the two actions asserted against Citco beneficiaries[12] similar allegations providing a basis for charging certain Citco beneficial owners with Citco's knowledge, such that those beneficial owners' receipt of redemption payments is considered not in good faith. See Molton Decl. Ex. B (Proposed Amended Complaint, Adv. Pro. No. 11-02770) at ¶¶ 78-81.

### F.    Wording Changes to Account for New Factual Detail

As reflected in the Proposed Amended Complaints, the Liquidators also seek leave to make a series of discrete edits to various factual allegations to add precision to certain details based upon information the Liquidators have learned since the inception of the litigation. See, e.g., Molton Decl. Ex. C (Proposed Amended Complaint, Adv. Pro. No. 11-01255) ¶¶ 4, 5, 8, 10, 31, 34, 97, 102, 110, 117, 125, 134, 136, 145.

### G.    Deletion of Certain Procedural Background

In the Proposed Amended Complaints, the Liquidators have also removed certain allegations describing then-current BVI liquidation and sanction procedural issues. See, e.g., Molton Decl. Ex. C (Proposed Amended Complaint, Adv. Pro. No. 11-01255) (redlined version, prior paragraphs 54-58).

---

[12] See Fairfield Sentry Ltd. (In Liquidation) v. ABN AMRO Schweiz AG, Adv. Pro. No. 10-03635-SMB (Bankr. S.D.N.Y.); Fairfield Sentry Ltd. (In Liquidation) v. ABN AMRO Schweiz AG, Adv. Pro. No. 10-03636-SMB (Bankr. S.D.N.Y.).

19

## VI.    Integrated Briefing of Motion for Leave and Motions to Dismiss

On September 21, 2016, counsel for the Liquidators and liaison counsel for Defendants met and conferred regarding a briefing schedule for motions for leave to amend complaints and other threshold and pleading issues.   Following that meeting and further communications between counsel, the parties on October 18, 2016 presented to the Court a joint supplemental case management order setting forth an integrated briefing schedule for (i) the Liquidators' motion for leave to file amended complaints in the Adversary Proceedings, and (ii) motions to dismiss to be filed by Defendants in the Adversary Proceedings.  On October 18, 2016, the Court entered the supplemental case management order (the "Supplemental CMO").

This Motion followed.

## ARGUMENT

Leave to amend the complaints should be granted.  The proposed amendments reflect material changes in the law and factual evidence during the pendency of the Stay Order.  The Liquidators acted promptly upon completion of the BVI matters underlying the Stay Order to petition the Court to recommence the litigation and proceed with amendment.  It is plain that there has been no bad faith, undue delay, or prejudice.  Further, as explained herein and as will be demonstrated during the course of the integrated briefing of this Motion and Defendants' motions to dismiss, while the burden lies with Defendants to show futility, amendment would not be futile.

## I.    Legal Standard for Amendment

Federal Rule of Civil Procedure 15, made applicable to here by Federal Rule of Bankruptcy Procedure 7015, provides that a party may amend its pleading with "the court's

20

leave," which the court "should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Fed. R. Bankr. P. 7015.

In this Circuit, Rule 15 is applied as a "permissive standard" consistent with a "strong preference for resolving disputes on the merits." Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011). As this Court recently explained, "[g]enerally, amendments are favored because they 'tend to facilitate a proper decision on the merits.'" In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Mendelow), Adv. Pro. No. 10-04283 (SMB), 2016 WL 5415505, at *8 (Bankr. S.D.N.Y. Sep. 28, 2016) (quoting In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 428, 472 (S.D.N.Y. 2013)).

Accordingly, leave to amend should be granted barring a "substantial reason" such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Mendelow, 2016 WL 5415505, at *8 (citing Foman v. Davis, 371 U.S. 178, 192 (1962)); see also Kroshnyi v. U.S. Pack Courier Servs., Inc., 771 F.3d 93, 109 (2d Cir. 2014). With respect to prejudice, the nonmoving party must show "actual" prejudice, and not just the possibility of prejudice. Mendelow, 2016 WL 5415505, at *11.

Further, the burden for demonstrating a basis for denying leave generally rests with the non-moving party. With respect to bad faith, prejudice, or futility, the burden rests squarely with the non-moving party. See City of New York v. Grp. Health Inc., 649 F.3d 151, 157 (2d Cir. 2011) ("The rule in our circuit is to allow a party to amend its complaint unless the nonmovant demonstrates prejudice or bad faith.") (citation omitted); Mendelow, 2016 WL 5415505, at *11 ("The party opposing leave has the burden to demonstrate that the amendment would be futile")

(citing <u>Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.</u>, 665 F.Supp.2d 239, 250 (S.D.N.Y. 2009)); <u>Allison v. Clos-ette Too, L.L.C.</u>, No. 14 CIV. 1618 LAK JCF, 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015) (party opposing motion bears the burden of establishing futility).

With respect to undue delay, the burden again is borne by the non-moving party, except in circumstances of "inordinate delay," in which case the burden correspondingly shifts to the moving party to provide a "satisfactory explanation" for the inordinate delay. See <u>Picard v. Mendelow</u>, 2016 WL 5415505, at *9; <u>see also</u> <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d Cir. 1993) ("[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.") (quoting <u>Evans v. Syracuse City Sch. Dist.</u>, 704 F.2d 44, 47 (2d Cir. 1983)).

## II.    The Bases for Amendment Here are Well-Recognized.

While the Liquidators need not make an affirmative showing—as noted, leave to amend should be granted in the absence of undue delay, bad faith, prejudice or futility (issues discussed below)—the Liquidators note at the outset that the reasons for seeking leave here are bases well-recognized in the case law, namely (i) to account for intervening changes in law, and (ii) to reflect new factual evidence obtained by the plaintiffs. See <u>Mendelow</u>, 2016 WL 5415505, at *10 (finding a five-year delay in filing amended complaint justified by intervening decisions that "flesh[ed] out" and then finally resolved applicable pleading burden); <u>McGuire v. Warren</u>, 207 Fed. Appx. 34, 36-37 (2d Cir. 2006) (permitting amendment to reflect change in applicable law); <u>In re Pfizer Inc. Sec. Litig.</u>, No. 04 CIV. 9866 LTS HBP, 2012 WL 983548, at *2 (S.D.N.Y. Mar. 22, 2012) ("Courts routinely grant leave to amend when a plaintiff seeks to refine the complaint to reflect evidence obtained during discovery"); <u>Bridgeport Music, Inc. v. Universal</u>

<u>Music Grp., Inc.</u>, 248 F.R.D. 408, 415 (S.D.N.Y. 2008) ("federal courts have consistently granted motions to amend where . . . it appears that new facts and allegations were developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings") (internal quotations omitted).

Here, nearly all of the Liquidators' proposed amendments fall within these two categories.

<u>First</u>, as discussed above, the allegations regarding Citco's lack of good faith in issuing the certificates reflect factual evidence first obtained by the Liquidators well after the filing of the initial complaints, specifically during the summer of 2014. Further, such factual matters are of greater significance in light of a change in intervening law in the form of the Privy Council Judgment resolving the Preliminary Issues. Prior to the issuance of that judgment, the rule (as determined by the EC COA) was that Citco had issued <u>no</u> certificates; after the judgment, the question became whether the certificates were issued "in good faith," as discussed in the futility analysis below.

<u>Second</u>, the contract-based claims also reflect material changes in the law. The claims were first added (to actions where as-of-right amendments were possible) following the June 13, 2012 EC COA ruling that Citco had issued no final and binding certificates. That rule was changed as a result of the Privy Council Judgment, such that the Liquidators seek to amend those contract-based claims to provide that the certificates are not final and binding because not given "in good faith." The Liquidators also seek to add such contract-based claims to actions where no as-of-right amendment existed at the time the Liquidators filed the first round of contract-based claims following the EC COA decision on certificates.

23

<u>Third</u>, the wording changes to the BVI Statutory Claims for which the Liquidators seek leave would reflect additional factual detail bearing upon certain insolvency issues in connection with those claims.  <u>See</u> Moss Decl. ¶¶ 53-55.

<u>Fourth</u>, the amendments concerning the use of U.S. banks reflect recent case law addressing the jurisdictional implications of such use.  <u>See</u> <u>Arcapita</u>, 549 B.R. at 69.

<u>Fifth</u>, the Liquidators seek leave to make certain discrete wording changes concerning the fact that in certain instances, subscription monies were used by the Funds to directly pay redemption payments.    These amendments reflect factual information received by the Liquidators subsequent to the commencement of this litigation.

Accordingly, although the Court need not rely on such showing, because amendment should be denied only if Defendants establish undue delay, bad faith, prejudice, or futility (which they cannot, as discussed below), the uncontroversial nature of the reasons to make amendments further supports the granting of leave here.

**III.    <u>There is no Undue Delay, Bad Faith, or Prejudice to Defendants.</u>**

As discussed above, it is the burden of parties opposing leave to demonstrate undue delay, bad faith, or prejudice.  Nevertheless, it is plain that none of these factors is present here.

<u>First</u>, there has been no undue delay.  This action has been subject to the Stay Order since October 18, 2011.  The Liquidators on multiple occasions sought relief from the stay, but Defendants opposed this relief, and, as discussed above, the Court repeatedly made plain that it would not lift the Stay Order to reach merits issues until there was clarity on the BVI Preliminary Issues dispute that had prompted the stay.  <u>See</u> Procedural Background Part IV-A, <u>supra</u>.  Indeed, in the instances where the Court granted the Liquidators limited relief to proceed with as-of-right amendments (a process that, because not requiring "leave" under Rule 15, does

24

not trigger merits—*e.g.*, futility—briefing), the Liquidators amended to take advantage of legal and factual developments at the time of those amendments (for example, the addition of contract-based claims following the EC COA's June 13, 2012 ruling on Preliminary Issues and the addition of knowledge allegations against certain redeemer defendants).  With leave to amend thereafter exhausted and the Court having indicated repeatedly that it would not reach merits issues while Preliminary Issues remained unsettled, the Liquidators next, promptly following resolution of the those issues (and the Section 273 Applications, by the BVI Court), sought sanction to proceed with this litigation, and upon obtaining sanction from the EC COA, requested that this Court recommence the litigation, with the first order of business being the amendment of complaints.[13]  Accordingly, there is no basis for asserting delay.  In any event, mere delay generally cannot provide a basis for denial of a right to amend "absent a showing of bad faith or undue prejudice."  In re AMR Corp., 506 B.R. 368, 383 (Bankr. S.D.N.Y. 2014) (citing, *inter alia*, Middle Atlantic Utils. Co. v. S.M.W. Dev. Co., 392 F.2d 380, 384 (2d Cir. 1968)).  As discussed next, neither is present here.

Second, Defendants can make no showing of bad faith.  Here, as discussed above, the Liquidators have consistently sought to amend the complaints to reflect legal and factual developments, to the extent they had the authority to do so.  As further discussed above, the Liquidators also entered into constructive stipulations with hundreds of Defendants in order to preserve the stipulating parties' positions on timeliness and limitations issues and put all actions on a similar footing with respect to amendments, without triggering the merits briefing that the Court indicated it would not reach while BVI issues remained uncertain.  And as soon as granted

---

[13] Beyond the obstacle presented by the Stay Order, the Liquidators (i) did not even possess the evidence underlying the primary amendment (Citco's lack of good faith) until 2014, and (ii) could not in any event amend to reflect the

authority to proceed with proposing substantive amendments, they have done so, to reflect material developments in the law and factual evidence.  There is no basis in any of this for a finding of bad faith.  See S.E.C. v. DCI Telecomm., Inc., 207 F.R.D. 32, 34 (S.D.N.Y. 2002) (finding "no showing of malice" and stating that even "[u]ndue delay, standing alone, does not constitute bad faith").

Third, Defendants can make no showing of undue prejudice.  This litigation is still at the pleading stage, with motions to dismiss still to be filed as part of the Court-ordered integrated briefing schedule.  See Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 454-55 (S.D.N.Y. 2016) (in finding no undue prejudice to bar amendment, noting, *inter alia*, that plaintiff filed motion to amend before close of discovery, and amendment should not significantly prolong action).  Further, with respect to the most significant categories of amendment, Defendants have known for months (if not years) that such amendments were anticipated.  For example, contract-based claims already were asserted against 183 defendants beginning in 2012, and the Timeliness Stipulations signaled that such claims would likely be asserted against the remaining Defendants.  For the Citco allegations, while the allegations were not provided to Defendants until the Proposed Amended Complaints were served, the fact that the Liquidators intended to assert a theory that the certificates were not given in good faith in was known to Defendants no later than October 2014, when it was part of the Privy Council "declarations" process discussed above.  Here, the amendments all concern the same underlying conduct as the operative complaints—*i.e.*, massively overpaid redemptions and the failure of Defendants to return them even after it became clear their calculation was paid on fictional investment return figures.

---

legal principles yielded by the Preliminary Issues appeal until that appeal was finally decided by the Privy Council in 2014.

## IV.    Amendment Would Not be Futile.

The burden to prove futility rests squarely upon Defendants.  See Argument Part I, supra. Further, the standard for evaluating futility largely overlaps with the standard for deciding a motion to dismiss under Rule 12(b)(6).  See Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure"); Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 162 (S.D.N.Y. 2003) ("A court measures futility under the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)(6)").  Owing to the unique posture of this case, however, no motion to dismiss under Rule 12(b)(6) has yet been filed, and presenting extensive argument in this submission based upon anticipated or speculated grounds for dismissal would be particularly wasteful, as actual motions to dismiss will soon be filed by Defendants as an integrated part of the briefing of this motion for leave to amend, with the Liquidators granted ample opportunity under the Supplemental CMO to respond in detail.  Under these circumstances and in light of the relevant burden, the Liquidators will now only concisely address why the claims are not futile, and reserve all rights to respond to any and all futility and Rule 12(b)(6) arguments actually made by Defendants in their anticipated motion to dismiss submissions.

### A.    The Common Law Restitutionary Claims

The common law restitutionary mistake-based claims (unjust enrichment, money had and received, mistaken payment) are asserted against record holders and beneficial owners, and all rely upon variations of a core restitutionary theory: the NAV figures upon which redemption payments were calculated were incorrect, and defendants are not entitled to keep the incorrectly

calculated redemption payments.  See Molton Decl. Ex. C (Proposed Amended Complaint, Adv.

Pro. No. 11-01255) ¶¶ 87-143.

Based upon filings made by Fund redeemers in the BVI Redeemer Actions and in

connection with the Section 273 Applications, the Liquidators anticipate that Defendants'

primary substantive argument that the restitutionary claims are futile will be that following the

Privy Council Judgment, the "certificates" of NAV issued by Citco must be treated as final and

binding, such that, under the Privy Council Judgment, the restitutionary claims are no longer

viable.

The central flaw in such argument is that it ignores the actual, express language of the

Articles which the Privy Council Judgment construed (the Articles are governed by BVI law),

and purports to engraft upon the Privy Council Judgment the resolution of issues that were not

before that court (let alone considered and decided by it).

First, the Articles provide that the certificate is binding if issued "in good faith."  As

discussed above and set forth in the Hare Declaration, factual issues that could affect the

Preliminary Issues, including whether the certificates were issued "in good faith," were expressly

carved out of the Preliminary Issues procedure.  See Procedural Background Part II, supra.

Indeed, discussed at above, the existence and discovery of facts that could affect application of

the legal issues to be determined as Preliminary Issues was one of the reasons the Liquidators

vigorously opposed the procedure and suggested that it could prove wasteful and time-

consuming.  See id.  Further, after the Privy Council issued its decision and, consistent with its

mandate, did not address the issue of "good faith" in that decision, the Preliminary Issues

defendants attempted through the "declarations" process (as outlined above and in the Hare

Declaration) to cause the Privy Council to reach and decide in their favor the issue concerning

28

the importance or relevance of "good faith." <u>See</u> <u>id.</u> This the Privy Council refused to do. <u>See</u> <u>id.</u> Accordingly, as explained in the Moss Declaration, the Privy Council ruling is not dispositive of whether the "certificates" were in fact binding under Article 11 (and therefore whether the defendants have a "certification" or "good consideration" defense that defeats the common law claims asserted by the Liquidators), and thus is not dispositive of the restitutionary claims, which, with the proposed amendments concerning Citco's lack of good faith, remain viable and well-pleaded. <u>See</u> Moss Decl. ¶¶ 32-44, 52.

<u>Second</u>, the Proposed Amendments include extensive allegations that far surpass any relevant pleading standard for a lack of good faith on Citco's part. As noted above, the proposed amendments include, for example, allegations that:

- Citco personnel questioned whether the Funds' assets at BLMIS even existed ("I will not change my [opinion] as long as I [do] not see evidence that the portfolio exists");

- Citco personnel expressed concern that BLMIS could be a repeat of the Manhattan Investment Fund fraud of the 1990s "multiplied by a factor of five";

- Citco personnel raised alarms over the fact that there was no segregation of duties between BLMIS as investment manager and fund custodian; and

- Citco repeatedly turned a blind eye to such concerns and, rather than withdrawing, ceasing to issue the certificates, or sounding a public alarm, instead made a corporate decision to continue on as service providers, ultimately accepting an increase in fees of 800% (tied directly to the magnitude of the NAV that Citco was certifying) in exchange for staying on as service provider. <u>See</u> Molton Decl. Ex. C (Proposed Amended Complaint, Adv. Pro. No. 11-01255) ¶¶ 45-74.

As set forth in the Moss Declaration, such allegations are sufficient to plead an arguable (*i.e.*, sufficient) case of bad faith under BVI law.  See Moss. Decl. ¶ 44.

### B.     Contract-Based Claims

As noted above, the Liquidators also have asserted, in over half of the now-pending Actions, claims for breach of contract and breach of the implied covenant of good faith and fair dealing, arising from Defendants' failure to return the portion of their redemption payments that constituted overpayment, because calculated based upon the incorrect NAV.  The theory of these claims is that because no issued certificate of the incorrect NAV is final and binding, the NAV figure can be revised, and redeemers must return any amounts overpaid to them based upon an initial and not yet binding NAV.  Indeed, the Funds sent letters to redeemers demanding the return of the incorrectly paid amounts prior to the assertion of these claims.

Because the contract-based claims rely heavily upon the Articles, the Liquidators understand that the Court may find that BVI law governs the claims.  However, for most defendants (those who signed onto subscription agreements), the contract-based claims also rely in part upon provisions of the subscription agreements, which are governed by New York law. Whether BVI/UK law or New York law applies, however, there is an implied obligation, arising under the contract or the contractual relationship, to return the overpaid amounts.  As set forth in the Moss Declaration, under BVI law, such an obligation exists.  See Moss Decl. ¶ 57.  And under New York law, such an obligation may exist under a contract or an implied covenant of good faith and fair dealing theory.  See, e.g., Orange Cty. Choppers, Inc. v. Olaes Enters., Inc., 497 F. Supp. 2d 541, 559-60 (S.D.N.Y. 2007).

While contract-based claims were not asserted in the BVI Redeemer Actions, the Liquidators anticipate that Defendants will argue that the claims are futile because the

certificates of NAV issued by Citco are indeed binding.  As discussed above, however, that is not correct, because the certificates are sufficiently alleged not to have been issued "in good faith."  Accordingly, as amended (*i.e.*, including the reference to the "good faith" language and the Citco allegations), the claims are not futile and are sufficiently pleaded.

###    C.    The BVI Statutory Claims

The BVI Statutory Claims already are included in the relevant operative complaints in which they are applicable, and no motion to dismiss concerning their merits has yet been adjudicated.[14]  While the accompanying Moss Declaration attests briefly that the elements of the claims are satisfied, see Moss Decl. ¶ 55, the Liquidators reserve all rights to respond if and when Defendants argue in the course of this briefing that amendment of these claims would be futile and/or that the claims should be dismissed.

*        *        *

Ultimately, the burden to demonstrate futility falls squarely upon Defendants, and the Liquidators expect that the briefing of this Motion and Defendants' motions to dismiss will make plain that amendment here would not be futile, and that, after years of delay, leave should be granted and the case should proceed to the merits.

---

[14] The proposed amendments to the BVI Statutory Claims concern the addition of detail concerning insolvency issues that are part of the analysis for these claims.  See Moss Decl. ¶¶ 53-55.

31

## CONCLUSION

For the foregoing reasons, the Liquidators respectfully request that the Court grant leave to the Liquidators to file an amended complaint in each Action, in substantially the form of the Proposed Amended Complaint filed on the docket for that Action as listed in the corresponding column of Exhibit A to the Molton Declaration accompanying this Motion.

Dated:    New York, New York
          October 21, 2016

                                    Respectfully submitted,

                                    **BROWN RUDNICK LLP**

                                    By: _/s/ David J. Molton_____
                                          David J. Molton
                                          Daniel J. Saval
                                          Marek P. Krzyzowski
                                    7 Times Square
                                    New York, New York 10036
                                    Tel.: (212) 209-4800
                                    Fax: (212) 209-4801
                                    dmolton@brownrudnick.com
                                    dsaval@brownrudnick.com
                                    mkrzyzowski@brownrudnick.com

                                    *Counsel for the Foreign Representatives*