**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br>**Fairfield Sentry Limited, et al.,**<br>       Debtors in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (BRL)<br><br>Jointly Administered |
| **Fairfield Sentry Limited (In Liquidation), et al., acting by and through the Foreign Representatives thereof,**<br><br>                    Plaintiffs,<br><br>                    -against-<br><br>**Theodoor GGC Amsterdam, et al.,**<br>                    Defendants. | Adv. Pro. No. 10-03496 (BRL)<br>Administratively Consolidated |

**DECLARATION OF PHILLIP KITE**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**
**AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

I, PHILLIP KITE, do hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

1.   I am a partner and the Global Head of Litigation for the law firm Harney Westwood & Riegels (*Harneys*), which by number is the oldest and largest law firm practising British Virgin Islands (*BVI*) law.

2.   I read law at Birmingham University in the United Kingdom, graduating in 1989. In the jurisdiction of England and Wales, the legal profession is split between solicitors and barristers. I qualified as a solicitor, having passed my examinations for the Legal Practice Course at Chester College of Law in the UK in 1990. Following my training as an articled clerk, I was admitted to the Roll of Solicitors in England and Wales (although

1

now practising BVI law, I am no longer practising English law). I also qualified as a solicitor advocate, which granted me rights of audience in the Higher Courts of England and Wales. In 1997 I moved to the BVI to join Harneys' litigation team and was called to the Bar of the Eastern Caribbean Supreme Court. I was also called to the Bar of Anguilla in 1998.

3. I have worked at Harneys continuously since 1997 and became a partner in 2001. In my practice I specialize in complex and high value multi-jurisdictional litigation. In my role as global head of litigation, I oversee the work of over 40 litigation lawyers plus consultants and support staff.

4. During my time at Harneys, I have sat on a number of BVI government advisory committees and advised on BVI legislation, including those committees reviewing the BVI Insolvency Act of 2003 and the Civil Procedure Rules which govern the litigation procedure and rules for commercial claims.

5. Starting in 2009, the liquidators (*Liquidators*) of Fairfield Sentry Limited (*Sentry*), Fairfield Sigma Limited (*Sigma*) and Fairfield Lambda Limited (*Lambda*) (together, the *Funds*) issued a number of claims in the BVI in the name of the Funds (the *BVI Redeemer Claims*) against a large number of their investors whose shares were redeemed by the Funds prior to the Funds' liquidation (the *Redeemers*). The Liquidators later brought similar actions against many of the same Redeemers in the United States, which I understand have been consolidated before this Court (the *US Redeemer Claims*).

6. I had the conduct of the BVI Redeemer Claims litigation on behalf of, *inter alia*, ten PI Defendants (defined below)[1] from the inception of the Claims until (as I explain below) they were dismissed. The defendants represented by my firm constituted the largest group of the defendants who participated in the preliminary issues application (discussed

---

[1] Harneys' PI Defendant clients are: ABN AMRO Fund Services (Isle of Man) Nominees Limited; Quilvest Finance Limited; SNS Global Custody BV; Bank Julius Baer & Co Limited; Caja de Ahorros y Monte de Piedad de Madrid; Deutsche Bank (Suisse) SA; Lloyds TSB Bank; Deutsche Bank Trust Company Americas; Martello Nominees Limited; and Wise Global Fund Limited.

2

further below) that led to the dismissal of the BVI Redeemer Claims against those defendants (**PI Defendants**). As a result, my firm and Queen's Counsel instructed to act on behalf of our clients often took the lead in the BVI Redeemer Claims litigation.[2] I attended the majority of hearings in the High Court of Justice (Commercial Division) in the Eastern Caribbean Supreme Court (**BVI Commercial Court**) and the Eastern Caribbean Court of Appeal (**EC Court of Appeal**) and the Judicial Committee of the Privy Council (**Privy Council**). Both during the BVI Redeemer Claims litigation, and since its conclusion, I have also worked closely with my clients' New York lawyers in the US Redeemer Claims, namely Latham & Watkins LLP, WilmerHale, McKool Smith and Moses & Singer.

7. The primary purpose of this Declaration is to describe the procedural history of the BVI Redeemer Claims litigation and introduce relevant documents not provided by Mr William Hare of Messrs. Forbes Hare, in his Declaration filed on 21 October 2016.

8. In the interests of assisting the Court, I do not respond to every point contained in Mr Hare's Declaration, but this should not be taken as an admission of its contents. Other than where stated, I have adopted Mr Hare's definitions for ease of reference, but I make no admissions in so doing. Nor should anything I say herein be taken to be a waiver of privilege, which for the avoidance of doubt is not waived.

**LITIGATION OF THE BVI REDEEMER CLAIMS**

9. The litigation of the BVI Redeemer Claims proceeded as follows. On 20 April 2011, Bannister J of the BVI Commercial Court, after an application by the PI Defendants,[3] ordered a trial of certain preliminary issues (**Preliminary Issues**) in eight of the BVI Redeemer Claims, and ordered that no further steps should be taken in the remaining actions, once the defendants had submitted to the jurisdiction, until after the determination of those

---

[2] Of the balance of the PI Defendants, to my knowledge Messrs O'Neal Webster acted for a further four defendants; Ogier acted for a further six defendants; and Maples and Calder acted for two defendants.

[3] Hare Declaration, Exhibit G.

3

preliminary issues.[4] An order for trial of preliminary issues is a procedure where the Court orders a trial of a discrete specific issue or issues, the determination of which is/are likely to resolve the case altogether. Broadly, in the BVI Redeemer Claims the Preliminary Issues were (1) whether certain documents constituted binding certificates of NAV pursuant to Article 11 of the Funds' Articles of Association, precluding the Funds from recovering redemption payments made on the basis of those certificates (***Certificate Issue***); and (2) whether the Redeemers gave good consideration in surrendering their shares for the redemption payments they received, precluding the Funds from seeking the return of those payments (***Good Consideration Issue***).

10. On 16 September 2011, Bannister J held in favour of Sentry with respect to the Certificate Issue in holding that the documents at issue did not constitute certificates under Article 11, but held in favour of the PI Defendants with respect to the Good Consideration Issue in holding that the Redeemers had given good consideration for the redemption payments and that this precluded the Funds from asserting that the payments exceeded the true redemption price or that any such excess was recoverable. A true and correct copy of the PI Defendants' skeleton argument for the trial of Preliminary Issues is attached hereto as Exhibit A. A true and correct copy of the judgment of Bannister J is attached hereto as Exhibit B. A true and correct copy of the order of Bannister J is attached hereto as Exhibit C.

11. Sentry appealed the BVI Commercial Court's judgment on the Good Consideration Issue to the EC Court of Appeal and the PI Defendants appealed its judgment on the Certificate Issue.

12. Bannister J directed in his order dated 16 September 2011 that a single application for summary judgment should be made on behalf of one of the PI Defendants.

---

[4] Hare Declaration, Exhibit L.

4

On 20 September 2011, in accordance with this direction, one of the PI Defendants represented by my firm (ABN AMRO Fund Services (Isle of Man) Nominees Ltd) filed an application in one of the actions for summary judgment against Sentry and for dismissal of claims against it.[5] Sentry opposed the application, submitting in support of their opposition a witness statement from one of its Liquidators, Mr Kenneth Krys. A true and correct copy of the Fifth Witness Statement of Kenneth Krys dated 26 September 2011 is attached hereto as Exhibit D.

13. Following a hearing on 27 September 2011, on 10 October 2011[6] Bannister J refused Sentry's request for an adjournment to allow the Liquidators to review documents to which they had recently obtained access, and granted summary judgment in favour of all of the PI Defendants, dismissing all of the BVI Redeemer Claims against them.[7] In his judgment, Bannister J rejected Sentry's argument that, notwithstanding the determination of the Good Consideration Issue against it, its claims based on mutual mistake could still succeed. A true and correct copy of the order dated 10 October 2011, entered 22 June 2012, is attached hereto as Exhibit E. The Liquidators appealed to the EC Court of Appeal. A true and correct copy of Sentry's skeleton argument in support of appeal dated 5 January 2012 is attached hereto as Exhibit F.

14. On 13 June 2012, the EC Court of Appeal delivered a judgment upholding the BVI Commercial Court's judgment on both Preliminary Issues and dismissing the appeal against summary judgment. A true and correct copy of the judgment of the EC Court of Appeal is attached hereto as Exhibit G. A true and correct copy of the order of the EC Court of Appeal is attached hereto as Exhibit H.

---

[5] Hare Declaration, Exhibit E.

[6] Hare Declaration, Exhibit M.

[7] Hare Declaration, Exhibit P.

15. The parties then sought to appeal to the Privy Council. In order to bring an appeal to the Privy Council, it is necessary to obtain permission (also known as leave) to appeal. On 4 October 2012, the EC Court of Appeal granted conditional leave to appeal to the PI Defendants, but dismissed Sentry's application for leave to appeal because it had been filed out of time. On 15 May 2013, the EC Court of Appeal made a further order granting final leave to appeal to the PI Defendants. A true and correct copy of the EC Court of Appeal's judgment and order dated 4 October 2012 is attached hereto as Exhibit I. A true and correct copy of the EC Court of Appeal's order dated 15 May 2013 is attached hereto as Exhibit J.

16. Having failed to obtain permission to appeal from the EC Court of Appeal, Sentry applied directly to Her Majesty in Council for permission. A true and correct copy of Sentry's notice of appeal dated 13 August 2012 is attached hereto as Exhibit K.

17. The proposed grounds of appeal set out in Sentry's notice of appeal fell under three heads: (1) that the lower courts had reached the wrong decision on the Good Consideration Issue; (2) that Sentry's claims could succeed on the basis of mutual mistake (and therefore summary judgment should not have been granted); and (3) the summary judgment application should have been adjourned to allow the Liquidators to review documents to which they had recently obtained access.

18. On 13 March 2013, Her Majesty in Council granted Sentry permission to appeal on the "substantive issue" (i.e. Heads 1 and 2 above) and refused permission on the "procedural issue" (i.e. Head 3 above). A true and correct copy of the Order in Council dated 13 March 2013 is attached hereto as Exhibit L.

19. A true and correct copy of Sentry's case for appeal on the Good Consideration Issue dated 4 February 2014 is attached hereto as Exhibit M. A true and correct copy of Sentry's case for appeal on the Certificate Issue dated 18 February 2014 is attached hereto as

6

Exhibit N. In paragraphs 19-20 of its case for appeal on the Good Consideration Issue, Sentry abandoned its argument based on mutual mistake (i.e. Head 2 above). The result of this was that Sentry's appeal proceeded solely in relation to Head 1, namely the Good Consideration Issue. There was no surviving separate challenge to the order of Bannister J granting summary judgment or to the EC Court of Appeal's order upholding the grant of summary judgment.

20. In a judgment delivered on 16 April 2014, the Privy Council allowed (that is, granted) the PI Defendants' appeal on the Certificate Issue and dismissed Sentry's appeal on the Good Consideration Issue.[8] In paragraph 14 of its judgment, the Privy Council referred to an Administration Agreement between Sentry and Citco dated 20 February 2003, which was entered into evidence in the proceedings. A true and correct copy of this Administration Agreement is attached hereto as Exhibit O.

21. In August 2016, all the BVI Redeemer Claims that had not already been dismissed by Bannister J's summary judgment order of 13 October 2011 were voluntarily discontinued by the Liquidators.[9]

**GOVERNING LAW**

22. I note the contents of paragraphs 10(b), 14-15 and 16 of Mr Hare's declaration. To the extent Mr Hare may seek to convey by that evidence that the Liquidators considered that (a) the Subscription Agreements governed the redemptions, and (b) New York law governed the redemptions, I would refer the Court to the evidence filed in support of the Liquidators' applications for permission to serve the BVI Redeemer Claims outside the BVI. There, the Liquidators expressly took the position in the affidavit of José Santos Torres that their claims were governed by the Articles of Association, and therefore by BVI law, and that

---

[8] Hare Declaration, Exhibit Q.
[9] Hare Declaration ¶¶ 67, 68.

the choice of law in the Subscription Agreements "does not apply to this restitution claim." A true and correct copy of the affidavit of José Santos Torres sworn on 23 April 2010 is attached hereto as Exhibit P.

23. Similarly, in the skeleton arguments filed on behalf of the Liquidators in support of the applications for permission to serve the BVI Redeemer Claims outside the BVI, it was stated that the redemption payments at issue were made "pursuant to the mechanisms set out in Articles 9 to 11 of the Articles of Association" and that their claims were "made on the basis that a redemption price in excess of that due under the Articles [of Association] was paid by mistake." In order to obtain permission to serve BVI proceedings out of the jurisdiction it is necessary to show that the claims fall within one of the "gateways" set out in rule 7.3 of the Eastern Caribbean Supreme Court Civil Procedure Rules 2000 (*CPR*). The relevant gateway relied upon by the Liquidators was CPR 7.3(3)(b)(ii) which, as it then stood, applied to claims to "enforce, rescind, dissolve or otherwise affect a contract" which by its terms or by implication is "governed by the law of a Member State or Territory". (The BVI is a Territory as defined in CPR 2.4). True and correct copies of the skeleton arguments filed in support of the applications for permission to serve out of the jurisdiction, dated 8 April 2010 and 12 May 2010, are attached hereto as Exhibit Q. A true and correct copy of the BVI Commercial Court orders granting these applications, dated 12 April 2010 and 13 May 2010, entered 14 April 2010 and 14 May 2010, are attached hereto as Exhibit R.

## SECTION 273/ANTI-SUIT APPLICATIONS

24. Lastly, in relation to the Section 273/Anti-suit Applications, the appeals against the order of Leon J dated 11 March 2016 were listed before the EC Court of Appeal in the week commencing 21 November 2016. On 21 November 2016, those appeals were adjourned for hearing at a special sitting of the EC Court of Appeal to be held from 23 to 25 January 2017.

Executed on the 12th day of January 2017

London, UK

_____
Phillip Kite

| **Index of Exhibits** | |
|---|---|
| Exhibit A. | PI Defendants' Skeleton Argument for the Trial of Preliminary Issues dated 15 July 2011 |
| Exhibit B. | Judgment of Bannister J dated 16 September 2011 |
| Exhibit C. | Order of Bannister J dated 16 September 2011, entered 12 October 2011 |
| Exhibit D. | Fifth Witness Statement of Kenneth Krys dated 26 September 2011 |
| Exhibit E. | Order of Bannister J dated 10 October 2011, entered 22 June 2012 |
| Exhibit F. | Sentry's Skeleton Argument in Support of Appeal dated 5 January 2012 |
| Exhibit G. | Judgment of EC Court of Appeal dated 13 June 2012 |
| Exhibit H. | Order of EC Court of Appeal dated 13 June 2012 |
| Exhibit I. | Judgment of EC Court of Appeal dated 4 October 2012 |
| Exhibit J. | Order of EC Court of Appeal dated 15 May 2013 |
| Exhibit K. | Sentry's Notice of Appeal dated 13 August 2012 |
| Exhibit L. | Order in Council dated 13 March 2013 |
| Exhibit M. | Sentry's Case for Appeal on the Good Consideration Issue dated 4 February 2014 |
| Exhibit N. | Sentry's Case for Appeal on the Certificate Issue dated 18 February 2014 |
| Exhibit O. | Administration Agreement between Sentry and Citco dated 20 February 2003 |
| Exhibit P. | Affidavit of José Santos Torres sworn on 23 April 2010 |
| Exhibit Q. | Sentry's Skeleton Arguments in Support of Applications for Permission to Serve out of the Jurisdiction dated 8 April 2010 and 12 May 2010 |
| Exhibit R. | Orders of BVI Commercial Court Granting Permission to Serve out of the Jurisdiction dated 12 April 2010 and 13 May 2010, entered 14 April 2010 and 14 May 2010 |