UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>FAIRFIELD SENTRY LIMITED, *et al.*,<br>    Debtors in Foreign Proceedings. | Ch. 15 Case<br>Case No. 10-13164 (SMB)<br>Jointly Administered |
| FAIRFIELD SENTRY LIMITED, *et al.* (In Liquidation), acting by and through the Foreign Representatives thereof,<br>    Plaintiffs,<br>-against-<br>THEODOOR GGC AMSTERDAM, *et al.*,<br>    Defendants. | Adv. Pro. No. 10-03496 (SMB)<br>Administratively Consolidated |
| FAIRFIELD SENTRY LIMITED, *et al.* (In Liquidation), acting by and through the Foreign Representatives thereof,<br>    Plaintiffs,<br>-against-<br>ABN AMRO SCHWEIZ AG a/k/a ABN AMRO (SWITZERLAND) AG, *et al.*,<br>    Defendants. | Adversary Pro. No. 10-03635 (SMB) |
| FAIRFIELD SENTRY LIMITED, *et al.* (In Liquidation), acting by and through the Foreign Representatives thereof,<br>    Plaintiffs,<br>-against-<br>ABN AMRO SCHWEIZ AG a/k/a ABN AMRO (SWITZERLAND) AG, *et al.*,<br>    Defendants. | Adversary Pro. No. 10-03636 (SMB) |

## DECLARATION OF GÉRALDINE GAZO

I, Géraldine Gazo, being duly sworn under penalty of perjury, pursuant to 28 U.S.C. § 1746 and the laws of the United States of America, declares that the following is true and correct:

## Qualifications

1.    I am a citizen of Monaco and an Attorney licensed to practice law in the Principality of Monaco. My offices are located at 3 Avenue de Grande-Bretagne, MC 98000, Monaco.

2.    I have been a Barrister with the Bar of Monaco since 1997 and was appointed as a Defense Counsel of the Bar of Monaco in 2005. I am the Principality of Monaco's representative member at the International Court of Arbitration of the ICC. I have a Law degree and a Doctorate of Laws from the Université Panthéon-Assas (Paris II) in Paris, France. I am a Member of the Economic and Social Council of the Principality of Monaco since 2003 and serve as President of the Finance section. I am a Knight of the Order of Saint-Charles of the Principality of Monaco. A full copy of my curriculum vitae is attached hereto. **(Exhibit 1)**

3.    I have been retained by counsel for EFG Bank (Monaco) S.A.M. f/k/a EFG Eurofinancière d'Invest MCL ("EFG") named as a defendant in the above-captioned proceeding to give my opinion on three questions relating to the postal service of summons, complaint and amended complaints.

4.    I make this declaration upon my own personal knowledge and affirm that I am familiar with the international treaties, law and case-laws cited herein.

## Question No. 1:

Counsel for the Fairfield liquidators have filed certificates with New York state court and the US Bankruptcy Court noting service of the complaints, amended complaints and summons by postal service. Is postal service of a summons and complaint issued in a foreign proceeding valid under the laws of Monaco?

## Response to Question No. 1:

5.    The Hague Convention of 15 November 1965 (hereinafter the "Convention") concerned the service abroad of judicial and extrajudicial documents in civil or commercial matters. **(Exhibit 2)**

6.    The United States of America acceded to the aforementioned Convention, and ratified it on 24 August 1967; it entered into force on 10 February 1969. **(Exhibit 3)**

7.    The Principality of Monaco acceded to the Convention on 1 March 2007, and following Ordinance No. 1,059 of 13 April 2007, published in the *Journal de Monaco* ("Monaco Journal") of 11 May 2007; the Convention entered into force in Monaco on 1 November 2007. However, in Monaco's legal system, an international convention's entry into force has a dual nature; that is, in addition to the signing and the ratification of the international convention, a Sovereign Ordinance is required to acknowledge and incorporate the convention under domestic law. **(Exhibit 4)**

8.    The Principality of Monaco issued four declarations relating to Articles 8, 10, 15 and 16 of the Convention. The Convention and the declarations establish the requirements for

2

valid and enforceable service of a judicial complaint from a foreign proceeding on defendants located within the Principality of Monaco.

9. Article 3 of the Convention provides that:

*"The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalization or other equivalent formality.*

*The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate."*

And Article 5 of the Convention specifies that:

*"The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either -*

*a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or*
*b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.*

10. The Monegasque legal framework for valid and enforceable service of process from a US foreign proceeding on Monegasque defendants requires that US Authorities send a request to the Monaco Authorities to serve the judicial documents. Then, the Monaco Authorities asks a Monaco Bailiff to serve the summons, and/or the complaint, and/or the amended complaint with a sworn translation in French (i.e. the official language of Monaco) to the Monegasque defendant.

11. According to the *"Affidavits of Service"* the Liquidators filed, the "summons," "complaints," and "amended complaints" were allegedly served in the following way: *"postage pre-paid envelope to be delivered via International Registered Mail and depositing same in official depository under the exclusive care and custody of the United States Postal Service within the State of New York, upon the following: SEE ATTACHED SERVICE LIST."* EFG appears as the recipient of the above notifications via the postal service in the *"Service List"* annexed to the *"Affidavits of Service"* above. I understand from the terms used by the signatory of these *"Affidavits"* that no other method has been used to effect service of the abovementioned documents.

12. Monaco's second declaration specifically concerns Article 10 of the Convention regarding postal service of a judicial complaint from a foreign proceeding on defendants located within the Principality of Monaco, stating:

*"The Principality of Monaco declares that it is opposed to the exercise of the freedom provided for in Article 10, paragraph 1 a)."* **(Exhibit 5)**

3

Therefore, the Principality of Monaco, when acting as the State of destination, is opposed and has not consented to under the Convention the direct service of judicial documents, using the postal service, to defendants located within the Principality of Monaco. For service of a judicial complaint from a foreign proceeding on defendants located within the Principality of Monaco to be valid and enforceable, the parties must comply with the provisions of Article 3 and Article 5 of the Convention.

13. It follows from the combined provisions in Articles 3 and 5 above, and the Principality of Monaco's opposition to the application of freedom described by Article 10, paragraph 1a) of the Convention, that the service of judicial and/or extrajudicial documents via the postal service is not in accordance with Monaco's legal system.

14. In conclusion, I am of the opinion that the service of the abovementioned documents to EFG solely via the postal service does not comply with Monegasque law. Service of the abovementioned documents by postal service as reflected in the Affidavits of Service will be declared void and unenforceable by a Monegasque Judge consistent with the provisions of the Convention, Sovereign Ordinance, declarations and Monegasque law described above.

**Question No. 2:**

In the complaints, amended complaints and the proposed amended complaints, the Fairfield liquidators refer to provisions of subscription agreements which purport to authorize postal service on a signatory. Are those provisions of the subscription agreements purportedly authorizing postal service of a summons and complaint enforceable under the laws of Monaco?

**Response to Question No. 2:**

15. The subscription agreements clause in question is covered in page 8 of the "Complaint" of 21 September 2010; notably, it is reproduced in full on page 10 of the "First Amended Complaint" of 10 January 2011 as well as on page 10 of the "Second Amended Complaint" of 3 May 2011. The clause concerns the application of New York law, assigning exclusive jurisdiction to the Courts of New York. It also provides that the subscriber consents to any notifications outside of a New York court that are made via the postal service.

16. It is common to come across an article in a contract relating to the applicable law and the jurisdiction of the courts. There is no disputing that the parties may choose the law applicable to their contractual relationship and agree to submit to the jurisdiction of their choosing, which would of course be subject to the applicable rules of jurisdiction *ratione materiae* and *ratione loci*. However, the contractual provision in question relating to a notification or service via postal service is a different matter.

17. In Monaco, international conventions take precedence over domestic laws of the contracting countries, even those established subsequently, as the Court of Revision—the highest civil court in Monaco— has ruled. (**Exhibit 6**)

18. This principle has since been reaffirmed on several occasions by the Court of Appeal in Monaco. Thus, in a judgment dated 21 June 1994, the Court of Appeal ruled that:

4

*"Considering that an international Convention is essentially a contract under international law between legal persons, whose only inherent aim is to bind the signatory states together in their relationships;*

*That only when it arises from the Convention, the objective of this text shall be to establish direct rights to the benefit of nationals of the signatory states, or place obligations upon them;*

*That a provision of an international agreement must be considered by the judge as being **directly applicable**, when taking into account the wording, objective and nature of the agreement, it contains a clear, precise obligation, whose fulfilment and effect does not require any supplementary measures."* (**Exhibit 7**)

19. In a judgment dated 30 August 2001 delivered in a case in point concerning the International Covenant on Civil and Political Rights of 16 December 1966, the Court of Appeal ruled:

*"In this regard, it should be noted, in effect, that in a judgment delivered on 21 April 1980, the Court of Revision held that international conventions take precedence over domestic laws of the contracting countries, even those established subsequently. The abovementioned International Covenant on Civil and Political Rights stipulates (...) however, that the Gouvernement princier* [the "Prince's Government," i.e. Monaco's government] *indicated that this text should be interpreted as stating a general principal to which limited exceptions could be made under law, set out in the declaration annexed to that Covenant. It follows that this principal of direct application under Monegasque law may only be limited by means of a legal provision."* (**Exhibit 8**)

20. Under this case law, it is my opinion that the signatory parties of the "Subscription Agreements" cannot, by means of a simple contractual provision, prevent application of an international convention that was lawfully introduced into Monegasque national law, with supra-legislative value, and which should be applied directly by the Monegasque Judge. As a result, the requirements for valid and enforceable service of judicial documents under the Convention, Sovereign Ordinance and declarations cannot be altered by contract or agreement between parties.

21. Consequently, I am of the opinion that the subscription agreements clause, which would authorize, as is claimed, the service of a summons via the postal service and/or a complaint to the Monegasque company EFG, is contrary to the Convention, as well as the declaration of the Principality of Monaco opposing the exercise of freedom provided for by Article 10, paragraph 1 a) of the aforementioned Convention. Therefore, this subscription agreements clause would not be valid and enforceable within the Principality of Monaco as it conflicts with the Convention that is directly applicable in this circumstance.

**Question No. 3:**

In the complaints, amended complaints and the proposed amended complaints, the Fairfield liquidators note that CGC NA (the "Citco Subscriber"), the fund administrator, "upon information and belief," signed subscription agreements with Fairfield Sentry and Fairfield Sigma which contain provisions allegedly binding beneficial shareholders to the provisions of

5

those subscription agreements which purport to authorize postal service on a signatory. If so, then are those provisions purportedly authorizing postal service of a summons and complaint allegedly signed by CGC NA in its representative capacity and allegedly binding on beneficial shareholders enforceable under the laws of Monaco?

**Response to Question No.3:**

22.    As indicated in my response to Question No. 2, the parties cannot, through contractual provision, provide any opposition to the application of an international convention that has been lawfully introduced into domestic law in the Principality of Monaco and which has supra-legislative value.

23.    Consequently, I am of the opinion that the abovementioned provisions, authorizing the purported postal service of a summons and a complaint apparently signed by CGC NA in its representative capacity and which would apparently bind the beneficial shareholders, would not be valid and enforceable within the Principality of Monaco for the reasons indicated in my response to Question No. 2.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: January 26, 2017
       Principality of Monaco

GÉRALDINE GAZO

6

List of Exhibits:

1 - Curriculum Vitae of Maître Géraldine Gazo

2 – Hague Convention of 15 November 1965

3 – Status Table

4 – Sovereign Ordinance n° 1,059 of 13 April 2007

5 – Monaco's Declarations Articles 8, 10, 15, 16

6 – Case Law, Court of Révision, 21 April 1980

7 – Case Law, Court of Appeal, 21 June 1994

8 – Case Law, Court of Appeal, 30 August 2001