UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br> **Fairfield Sentry Limited, et al.,** <br>     Debtors in Foreign Proceedings. | **Chapter 15 Case** <br><br> **Case No. 10-13164 (BRL)** |
| **Fairfield Sentry Limited, et al.,** <br> (In Liquidation), acting by and through <br> The Foreign Representatives thereof, <br>     Plaintiffs, <br><br> - against - <br><br> **Theodoor CGC Amsterdam, et al.,** <br>     Defendants. | **Jointly Administered** <br><br><br><br> **Adv. Pro. No. 10-03496 (BRL)** <br><br> **Administratively Consolidated** |
| This declaration is submitted in the following Adversary Proceedings: <br><br> 10-3519 <br> 10-3635 <br> 10-3636 | |

**DECLARATION OF DR. HILMAR HOCH IN OPPOSITION TO
THE FOREIGN REPRESENTATIVES' MOTION FOR LEAVE TO AMEND AND
IN SUPPORT OF THE LIECHTENSTEIN BANKS' MOTION TO DISMISS**

Hilmar Hoch, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury as follows:

**A.   Qualifications**

1.   I am a citizen and resident of the Principality of Liechtenstein ("Liechtenstein") and an attorney licensed to practice law in Liechtenstein. I am the Deputy Chief Justice of the Constitutional Court of Liechtenstein, the highest court of Liechtenstein. In my capacity as a judge, I have participated in, and authored, numerous court decisions concerning issues arising under the Liechtenstein Constitution, including issues concerning the relationship between domestic and international civil procedure.

2. I am also a partner in the business law firm of Seeger, Frick & Partner, in Schaan, Liechtenstein.[1] As an attorney, over the last twenty-five years, I have advised numerous clients on issues relating to civil procedure, including service of process.

3. I hold a law degree and a doctorate in law from the University of Bern, Switzerland.[2] I also hold an LL.M. degree from Harvard Law School.

4. My *curriculum vitae* is attached hereto as <u>Exhibit A</u>.

5. I make this declaration on behalf of Centrum Bank Aktiengesellschaft,[3] LGT Bank in Liechtenstein AG (now known as "LGT Bank AG"), Liechtensteinische Landesbank Aktiengesellschaft ("LLB", sued in the Present Actions as "Liechtensteinische LB Reinvest AMS"), Verwaltungs- und Privat-Bank Aktiengesellschaft (now known as "VP Bank AG"), and Neue Bank AG (all of the banks mentioned in this paragraph 5 collectively, the "Liechtenstein Banks") in opposition to the motion for leave to amend of Kenneth Krys and Charlotte Caulfield, in their capacity as the joint liquidators (the "Foreign Representatives") of plaintiffs Fairfield Sentry Limited (in liquidation), Fairfield Sigma Limited (in liquidation), and Fairfield Lambda Limited (in liquidation), and in support of the Liechtenstein Banks' motion to dismiss the complaints.

6. I have previously made a declaration, dated June 8, 2012, with respect to the above-captioned proceedings (the "Present Actions").[4]

---

[1] Attorneys in private practice in Liechtenstein are regularly elected to serve part-time as judges on Liechtenstein courts or in other government functions.

[2] Liechtenstein attorneys have traditionally obtained their law degrees in neighboring Switzerland or Austria.

[3] I have been informed that Centrum Bank Aktiengesellschaft is now part of VP Bank AG.

[4] *See* Adv. Proc. 10-03496 (administratively consolidated), ECF #688.

2

7. I make this declaration upon my own personal knowledge and affirm that I am familiar with the facts referred to, and the statutes and other authorities cited herein.

**B.  Pertinent Facts**

8. I understand that according to sworn affidavits filed with the New York State Supreme Court, the Foreign Representatives rely on having mailed a summons with notice by international registered mail as service on defendants Centrum Bank, LGT Bank AG, LLB, and VP Bank AG in two cases filed by the Foreign Representative in New York State Supreme Court (index nos. 650277/2010 and 650316/2010, collectively, the "State Court Actions").  I further understand that the Foreign Representatives subsequently removed the State Court Actions to the Federal District Court for the Southern District of New York, and these actions were then referred to this Court, where they are pending as Adversary Proceeding Nos. 10-03635 (SMB) and 10-03636 (SMB) (the "CITCO Actions").

9. I further understand that the Foreign Representatives have filed affidavits of service with this Court claiming to have served defendants Centrum Bank, LGT Bank AG, LLB and VP Bank with process by mailing to each of them at their respective Liechtenstein addresses a summons and amended complaint in both CITCO Actions.[5]

10. I further understand that the Foreign Liquidators commenced a separate action in this court against Neue Bank AG and Beneficial Owners of the Accounts Held in the Name of Neue Bank AG 1-1000, pending as Adversary Proceeding No. 10-03519 (SMB) and that they have filed affidavits of service claiming to have served defendants Neue

---

[5] Adv. Proc. 10-03635 (SMB), ECF #54; Adv. Proc. 10-03635 (SMB), ECF #54.

3

Bank AG and the holders of beneficial accounts with process by mailing to Neue Bank AG at its Liechtenstein address a summons and complaint.[6]

11. I will herein refer to the aforementioned documents mailed by the Foreign Representative as the "Foreign Official Documents."

12. Given the lack of written evidence to the contrary, I understand that the Foreign Representatives have not completed or attempted service of the Foreign Official Documents on any of the Liechtenstein Banks through any other means besides their own sending of these documents by international registered mail. Specifically, I understand that the Foreign Representatives have not initiated procedures of international judicial assistance from the competent authorities of Liechtenstein upon a request from the relevant authorities of the United States of America.

**C.    Summary of Conclusions**

13. My professional opinion, based on the facts known to me and the review of the applicable Liechtenstein Constitution, statutes and regulations, case law, and relevant scholarly literature, is as follows:

   a. Delivery of the Foreign Official Documents on the Liechtenstein Banks by international registered mail is not valid service and is prohibited under Liechtenstein law.

   b. The service of process of documents initiating a lawsuit, such as the Foreign Official Documents, is a governmental act according to Liechtenstein law.

   c. Liechtenstein law views not only the issuance but also the transmittal of the summonses to the Liechtenstein Banks on Liechtenstein territory as a governmental act. Any different characterization of the act of service of the

---

[6] Adv. Proc. 10-03519 (SMB), ECF #3 and ECF #10.

Foreign Official Documents under American law or by American courts would be irrelevant.

d. As a governmental act, the transmittal of a summons is reserved to Liechtenstein public officials or recognized service providers according to the provisions of applicable Liechtenstein law.

e. There is no bilateral or multilateral treaty to which both the United States and Liechtenstein are a party or accepted custom between the governments of Liechtenstein and the United States governing the transmittal of a summons. Therefore, the only lawful way to effectuate valid service on Liechtenstein territory of a summons or similar document emanating from the United States is via mutual legal assistance, in accordance with the applicable Liechtenstein statute governing service.

f. Furthermore, by the same statute, official documents in a foreign language to be served in Liechtenstein require a translation into German, and a transmission without such translation generally renders service invalid.

g. Under Liechtenstein law the service of the Foreign Official Documents on a defendant on the territory of Liechtenstein – other than in accordance with applicable Liechtenstein law – is an act by a representative of a foreign government. As a result, delivery of the Foreign Official Documents by registered (or other) mail is prohibited under Liechtenstein criminal law as a violation of Liechtenstein sovereignty and carries a penalty of imprisonment.

h. Furthermore, Liechtenstein courts will not enforce a foreign judgment against a party in Liechtenstein if service of the summons and other official documents was not completed in accordance with applicable Liechtenstein law.

5

      i.    Any agreement that permits service of process or of other official documents by mail in contravention of the mandatory service provisions of Liechtenstein law is against Liechtenstein public order, and therefore void and unenforceable.

**D.**    **Analysis and Opinion**

*(1)*    *Liechtenstein Considers Service of Official Documents on Liechtenstein Territory a Governmental Act*

14.    Service of official documents on the territory of Liechtenstein is considered by the Liechtenstein government to be a governmental act reserved to Liechtenstein government agencies and officials.[7] This understanding is consistent with the laws of the neighboring countries, Austria and Switzerland.[8]

15.    Liechtenstein law determines the nature and consequences of actions on Liechtenstein territory, in accordance with undisputed principles of territorial sovereignty accepted by public international law. Therefore, if Foreign Official Documents are

---

[7] Note Verbale of the Ministry of Foreign Affairs of the Principality of Liechtenstein to the Embassy of the United States of America, dated January 27, 2017 as cited in the letter of the Ministry to the undersigned of the same date (hereinafter "Note Verbale"), 2. A true and complete copy of this letter is attached hereto as <u>Exhibit B</u>. *See* also *Vernehmlassungsbericht der Regierung betreffend die Schaffung eines Gesetzes über die Zustellung behördlicher Dokumente (Zustellgesetz) und die Abänderung zustellrechtlicher Bestimmungen in anderen Gesetzen* (Consultation report of the [Liechtenstein] government regarding the enactment of a law on service of official documents (Law on Service) and the amendment of service provisions in other laws), Vaduz, June 12, 2007 ("Report"), at 13.

[8] *See* Declaration of Dr. Nicholas Simon, dated June 6, 2012, submitted in administratively consolidated Adv. Pro. No. 10-3496 (SMB), ECF #695, on behalf of Defendant Vorarlberger Landes- und Hypothekenbank Aktiengesellschaft ("Simon Decl.") at ¶ I. 2, and the Note Verbale of the Austrian Foreign Ministry to the U.S. Embassy in Vienna, dated January 7, 2002, attached to the Simon Decl. as Exhibit A (the "Austrian Note Verbale"); *see* further Declaration of Prof. Nicolas Jeandin, dated January 11, 2017, submitted in administratively consolidated Adv. Pro. No. 10-03496 (SMB), ECF #964, and in the CITCO Actions, ECF #175 and ECF#194; in each instance on behalf of Defendant HSBC Private Bank (Suisse) S.A., at ¶11.

delivered in the territory of Liechtenstein, the characterization of the act of service under foreign law, such as the law of the United States or an American State, is irrelevant.[9]

**(2)   *The Summonses in the State Court Actions and the Present Actions are Official Documents***

16.    Any document commencing a lawsuit will be considered by Liechtenstein authorities to be an "official document," irrespective of who drafted the document and who delivered it.[10]

17.    The summonses in the State Court Actions and the Present Actions purport to set the Liechtenstein Defendants a statutory deadline to respond to the complaint and threaten a default judgment by the American court against any defendant who fails to respond before the lapse of the deadline.[11]  This makes these documents "official".[12]

**(3)   *Service of Official Documents in Liechtenstein Must Be Performed According to the Liechtenstein Law of Service***

18.    Liechtenstein law regulates all aspects of service of official documents in a comprehensive statute, the Law on Service (*Zustellgesetz*).[13] The provisions of the Law

---

[9] Note Verbale ¶5. I express no opinion as to whether the interpretation by certain American courts that service of process is a private – as opposed to a governmental – act is correct under applicable American law.

[10] Note Verbale ¶5-6.

[11] *See*, for example, Exhibit B (Summons with Notice) to Certified Order Transferring Case No. 10-cv-6640 from the U.S. District Court, S.D.N.Y., to the U.S. Bankruptcy Court, S.D.N.Y., Adv. Proc. 10-03635 (SMB), ECF #1-5, at 6 *et seq*.; and Exhibit B (Summons with Notice) to Certified Order Transferring Case No. 10-cv-6640 from the U.S. District Court, S.D.N.Y., to the U.S. Bankruptcy Court, S.D.N.Y., Adv. Proc. 10-03635 (SMB), ECF #1-5, at 6 *et seq*. *See* further Summons with Notice of Pre-Trial Conference, Adv. Proc. 10-03635 (SMB), ECF #11; and Summons with Notice of Pre-Trial Conference, Adv. Proc. 10-03519 (SMB), ECF #2.

[12] Note Verbale ¶¶3-6.

[13] Law of October 22, 2008 on the Service of Official Documents (*Gesetz vom 22. Oktober 2008 über die Zustellung behördlicher Dokumente, Zustellgesetz*, the "Law on Service" or "LS"); Note Verbale ¶7.

on Service are mandatory throughout, i.e., they are not subject to the disposition of private parties and may not be altered by private agreement.[14]

19.     Pursuant to the Law on Service, service of official documents in Liechtenstein must be carried out by court-appointed officials or court-appointed service providers,[15] and any person carrying out service of official documents acts in the capacity of an officer of the issuing authority.[16]

*(4)    Service of Foreign Official Documents Must Be Ordered by a Liechtenstein Court upon Application of the Foreign Authority*

20.     If a document emanating from a foreign authority or court is to be served in Liechtenstein, the law provides that service on Liechtenstein territory is to be made pursuant to the provisions of existing international treaties or international custom or, in the absence of either, the Law on Service.[17]

21.     No bilateral treaty exists between Liechtenstein and the United States addressing civil procedure in international matters or proper procedures for service of process.[18] Liechtenstein also is not party to any relevant multilateral treaty, such as the Hague Convention of November 15, 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention").[19]   There also is no international custom between the United States and Liechtenstein regarding the service of documents originating from courts or government agencies of other countries

---

[14] Note Verbale ¶14.

[15] LS Article 3.

[16] LS Article 4.

[17] LS Article 14(1); Note Verbale ¶7.

[18] Note Verbale ¶8.

[19] *Id.*

8

outside the provisions of the Law on Service.[20] Liechtenstein has objected to purported service by registered mail of official documents emanating from the United States on addressees in Liechtenstein and declared that the provisions of the Law on Service are mandatory.[21] Thus the Law on Service governs service of foreign official documents originating in the United States and to be served in Liechtenstein, as in the present case.

22. To serve foreign official documents in Liechtenstein, the foreign authority or court from which the documents originate must make an application for legal assistance to the Liechtenstein District Court (*Landgericht*),[22] via letters rogatory to the Liechtenstein Ministry of Justice.[23]

23. The District Court must provide legal assistance to foreign courts upon application, unless a mandatory reason to refuse legal assistance exists.[24] The court must provide any legal assistance pursuant to the provisions of the applicable Liechtenstein laws,[25] meaning that service of foreign court documents must be ordered by the District Court and carried out by a court-appointed official or court-appointed service provider, as set forth above.

---

[20] *Id*.

[21] Note Verbale ¶9.

[22] LS Article 14 (1) and Section 27 (1) of the Liechtenstein Law of December 10, 1912 on the exercise of jurisdiction of the courts and jurisdiction of the courts in civil matters (*Gesetz vom 10. Dezember 1912 über die Ausübung der Gerichtsbarkeit und die Zuständigkeit der Gerichte in bürgerlichen Rechtssachen*) ("Law on Jurisdiction" or "LJ"); Note Verbale ¶9.

[23] Note Verbale ¶9, last sentence.

[24] LJ Article 27 (1) and (2). Reasons for refusal of legal assistance are: 1. if the requested act is not within the jurisdiction of the courts (if another authority has jurisdiction to order the requested act, the court may transfer the request to such authority); if the requested act is prohibited by Liechtenstein law; and 3. if the requesting state does not provide mutual legal assistance. LJ Section 27 (2). *See* also Note Verbale ¶12.

[25] LJ Section 28 (1); Note Verbale ¶10.

24. The Law on Service enables, but does not compel, the District Court to permit other methods of service, upon specific request of the foreign court and if this does not contradict basic tenets of Liechtenstein law.[26]

25. Based on the facts known to me, no request was made in the present case to a Liechtenstein court to permit service of the Foreign Official Documents on any of the Liechtenstein Banks in any specific way, including by registered mail. Given that such a request would be the first mandatory step under Liechtenstein law for service other than pursuant to Liechtenstein court order and by public officials, the attempted service by registered mail violates Liechtenstein law and is invalid for this reason alone.

26. Furthermore, there is no reported Liechtenstein authority for allowing service by international registered mail in deviation from the provisions of the Law on Service, and Liechtenstein has communicated to the United States its objection to service of official documents by registered mail.[27]

27. I have reviewed *Marks v. Alfa Group*, 615 F. Supp. 2d 375 (E.D. Pa. 2009), and *Lewis v. Dimeo*, 41 F. Supp. 3d 108 (D. Mass. 2014). For the reasons set forth above, it is my opinion that those courts' interpretation of Liechtenstein's law for service is incorrect. Liechtenstein does not permit service of process by international registered mail.

**(5)** *Foreign Official Documents to Be Served in Liechtenstein Must Be Translated*

28. In addition, any foreign official document in a foreign language must be served along with a translation into the official language of Liechtenstein, i.e., German.[28]

---

[26] LJ Section 28 (2); Note Verbale ¶10.
[27] Note Verbale ¶11.
[28] LS Article 14 (2). Note Verbale ¶13.

10

29.    The right to a translation of official documents in a foreign language into German emanates from the Liechtenstein Constitution.[29] Thus, a translation is necessary in every case, unless it is waived in accordance with the provisions of the Law on Service.

30.    The Law on Service provides that the translation requirement may be waived, provided the document is otherwise served properly, if the recipient accepts service of the document without German translation. Acceptance, and thus a waiver, is presumed if the recipient does not object within fourteen days upon service of the document, but for the 14-day deadline to run, the recipient must not only be served properly but must also be advised of the right to object to service without translation.[30]

31.    Based on the available evidence known to me, the Foreign Official Documents were not translated into German and none of the Liechtenstein Banks was advised of its right to refuse acceptance of service without translation when the Foreign Official Documents were mailed to it by the Foreign Representative without translation. Thus the attempted service of the Foreign Official Documents also violates Liechtenstein law for lack of the required translation and is also invalid for that reason.[31]

**(6)**    ***Attempted Service of Foreign Official Documents on Liechtenstein Territory is Prohibited as an Act Reserved to Governmental Officials and Is a Criminal Offense***

32.    As explained above, service of official documents is a governmental act in Liechtenstein. A foreign party purporting to serve a party in Liechtenstein in deviation from the procedures prescribed by the Law on Service is tantamount to usurping a function reserved to government officials. Liechtenstein law expressly prohibits anyone

---

[29] Opinion of the Liechtenstein Constitutional Court (*Entscheidung des Staatsgerichtshof*), StGH 2000/1, Liechtenstein Official Reporter (*Liechtensteiner Entscheidsammlung*, LES) 2003, 71, at 77.

[30] LS Article 14 (2), last sentence (addressee must be advised of the right to a translation); Note Verbale ¶13.

[31] *Cf.* Austrian Note Verbale ¶4 for the very similar Austrian Law on Service.

11

from performing on Liechtenstein territory an act that by law is reserved to a governmental official or authority, and makes a contravention a criminal offense punishable by up to three years' imprisonment.[32]

33.   There can thus be no doubt that any attempt to serve a party in Liechtenstein in any other way than prescribed by Liechtenstein law is prohibited.

*(7)   A Private Agreement Regarding Service of Process Is Void*

34.   As stated above, the provisions of the Law on Service are mandatory throughout and private parties may not enter into any agreements providing for service by any specific means, including means that differ from those contemplated by the Law on Service. Thus any purported private agreement providing for such alternative means of service in Liechtenstein would be deemed an illegal attempt at circumventing the mandatory provisions for service in Liechtenstein. Accordingly, such an agreement would not be able to cure the breach of Liechtenstein law that results from any attempt at serving foreign official documents without obtaining an order by the competent Liechtenstein court; it would be null and void under Liechtenstein law and could not be enforced in a Liechtenstein court.[33] Any attempted service in accordance with such an agreement on Liechtenstein territory would be a criminal offense.

**D.   Conclusion**

35.   As stated above, it is my opinion that delivery of the Foreign Court Documents on the Liechtenstein Banks by international registered mail and without translation does not constitute valid service and is prohibited under Liechtenstein law.

---

[32] Article 2 of the Liechtenstein Law for the Protection of the State of March 14, 1949 (*Staatsschutzgesetz vom 14. März 1949*); Note Verbale ¶15.

[33] Note Verbale ¶14.

12

36. Any purported agreement permitting service by any means other than as ordered by a Liechtenstein court is void and would be unenforceable in Liechtenstein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 27, 2017, at Schaan, Liechtenstein

_____
Dr. Hilmar Hoch, LL.M., Esq.

13