**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**Fairfield Sentry Limited, et al.,**<br><br>    Debtors in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (SMB)<br><br>Jointly Administered |
| **Fairfield Sentry Limited, et al.<br>(In Liquidation), acting by and<br>through the Foreign<br>Representatives thereof,**<br>            Plaintiffs,<br><br>            -against-<br><br>**Theodoor GGC Amsterdam, et al.,**<br>            Defendants. | Adv. Pro. No. 10-03496 (SMB)<br><br>Administratively Consolidated |
| This supplemental memorandum of law applies to the Adversary Proceedings listed on Exhibit A | |

**THE HSBC DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND
AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    The Court Lacks Personal Jurisdiction over the Foreign Knowledge Defendants ......... 2

    II.    The "Knowledge" Allegations Are Deficiently Pled and Barred as a Matter of Law ... 3

        1.    The "Knowledge" Allegations Fail to Establish Actual Knowledge Under U.S. Law or "Blind-Eye" Knowledge Under BVI Law .............................. 3

        2.    The Liquidators Are Precluded from Relying on These Allegations ......... 7

    III.    The "Knowledge" Allegations Are Legally Irrelevant .................................................... 8

    IV.    The Complaints Against "HSBC"—a Non-Existent Entity—Fail to State a Claim and Were Not Validly Served ....................................................................................... 9

    V.    The Liquidators Failed to Validly Serve Certain Other HSBC Defendants .................. 10

CONCLUSION ................................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

Fed. R. Civ. P. 9(b) .................................................................................................... 4

Fed. R. Civ. P. 12(b)(4) ............................................................................................. 10

Fed. R. Civ. P. 12(b)(5) ............................................................................................. 10

**Cases**

*5-Star Mgmt., Inc. v. Rogers*,
940 F. Supp. 512 (E.D.N.Y. 1996) ........................................................................... 7

*Am. Protein Corp. v. AB Volvo*,
844 F.2d 56 (2d Cir. 1988) ........................................................................................ 3

*AMTO, LLC v. Bedford Asset Mgmt., LLC*,
No. 14-CV-9913, 2015 WL 3457452 (S.D.N.Y. June 1, 2015) ............................... 10

*Defer LP v. Raymond James Fin. Inc.*,
654 F. Supp. 2d 204 (S.D.N.Y. 2009) ....................................................................... 5

*Elendow Fund, LLC v. Rye Select Broad Mkt. XL Fund (In re Tremont Sec. Law, State Law and Ins. Litig.)*,
No. 10 Civ. 9061 (TPG), 2013 WL 5179064 (S.D.N.Y. Sept. 16, 2013), *aff'd* 588 F. App'x 27 (2d Cir. 2014) ................................................................................................ 7

*Hill v. HSBC Bank plc*,
No. 14-CV-09475-LTS, 2016 WL 4926199 (S.D.N.Y. Sept. 15, 2016) ................... 3

*In re Zyprexa Prods. Liab. Litig.*,
549 F. Supp. 2d 496 (E.D.N.Y. 2008) ....................................................................... 5

*Krys v. Pigott*,
749 F.3d 117 (2d Cir. 2014) ...................................................................................... 4

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
431 F. App'x 17 (2d Cir. 2011) ............................................................................. 4, 6

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
737 F. Supp. 2d 137 (S.D.N.Y. 2010)........................................................................... 4

*Picard v. Legacy Capital Ltd. (In re BLMIS)*,
548 B.R. 13 (Bankr. S.D.N.Y 2016).............................................................................. 3, 4, 7

*Picard v. Merkin (In re BLMIS)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014)........................................................................... 3

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)............................................................................................ 7

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009)........................................................................... 1

*Strougo v. Barclays PLC*,
105 F. Supp. 3d 330 (S.D.N.Y. 2015)........................................................................... 1

*Trikona Advisers Ltd. v. Chugh*,
No. 14-975-cv, 2017 WL 191936 (2d Cir. Jan. 18, 2017).............................................. 7-8

*Winkler-Koch Eng'g Co. v. Universal Oil Prods. Co. (Del.)*,
79 F. Supp. 1013 (S.D.N.Y. 1947)................................................................................ 4

*Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*,
No. 113209/09, 2011 WL 5962804 (N.Y. Sup. Ct. Apr. 15, 2011)................................ 4

HSBC Securities Services (Luxembourg) S.A. ("HSSL"), HSBC Private Bank (Suisse) S.A. ("PBRS"), HSBC Bank USA, N.A. ("HBUS"), HSBC Trust Company AG ("HSBC Guyerzeller") and HSBC Latin America Holdings (UK) Limited ("HSBC Panama") (collectively, the "HSBC Defendants"),[1] by their undersigned attorneys, submit this supplemental memorandum of law in support of the Consolidated Brief, in order to address unique allegations made against them in the relevant complaints (the "Complaints").

## PRELIMINARY STATEMENT

The Complaints against the HSBC Defendants are substantively identical to the sample complaint cited in the Consolidated Brief except for one section in the Complaints against HSSL, PBRS, and HBUS (the "Knowledge Defendants"), which contains allegations that purport to establish that they "[k]new or [s]hould [h]ave [k]nown" of the BLMIS fraud.[2] The Liquidators acknowledge they simply lifted these allegations wholesale from the BLMIS Trustee's allegations in *Picard v. HSBC Bank plc*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y.),[3] an approach that is inherently improper.[4] Even assuming *arguendo* that this were appropriate, the

---

[1] The HSBC Defendants incorporate by reference all applicable arguments made in the Consolidated Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend and in Support of Defendants' Motion to Dismiss (the "Consolidated Brief") and in the declarations and exhibits submitted therewith. All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Consolidated Brief. For citation purposes, the HSBC Defendants refer herein to the proposed amended complaints in *Fairfield Sentry Ltd. v. HSBC Private Bank (Suisse) S.A.*, Adv. Pro. No. 10-03633 (Bankr. S.D.N.Y. Sept. 20, 2016) (Dkt No. 33-1) ("PBRS Compl."), *Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Lux.) S.A.*, Adv. Pro. No. 10-03630 (Bankr. S.D.N.Y. Sept. 22, 2016 ) (Dkt. No. 35-1) ("HSSL Compl."), and *Fairfield Sentry Ltd. v. Zurich Capital Mkts. Co.*, Adv. Pro. No. 10-03634 (Bankr. S.D.N.Y. Sept. 20, 2016) (Dkt. No. 77-1) ("HBUS Compl.").

[2] *See* PBRS Compl. ¶¶ 77-91; HSSL Compl. ¶¶ 81-92; HBUS Compl. ¶¶ 104-15.

[3] *See* PBRS Compl. at 29 n.2; HSSL Compl. at 30 n.2; HBUS Compl. at 33 n.3.

[4] The BLMIS Trustee's claims against the Knowledge Defendants have been dismissed or are otherwise unresolved. *See Extraterritoriality Decision*, at *37; Prop. Order, *Picard v. HSBC Bank plc*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y. Jan. 20, 2017) (Dkt. No. 443-4). A complaint's allegations "that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009); *see also Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 343 (S.D.N.Y. 2015) (requiring independent investigation by party seeking to rely on allegations contained in a complaint filed in another lawsuit). The Liquidators also made plain errors in cutting and pasting the BLMIS Trustee's allegations. For example,

Consolidated Brief's arguments still apply with equal force to the HBSC Defendants. Those arguments, as well as the arguments set forth below, compel denying the Liquidators' motion for leave to amend and granting the HSBC Defendants' motion to dismiss.

*First*, none of the Liquidators' "knowledge" allegations cure the Complaints' failure to allege any basis for personal jurisdiction over the foreign Knowledge Defendants (and the foreign beneficial owners on whose behalf they acted). *Second*, the allegations plainly are not adequate to establish actual or "blind-eye" knowledge under U.S. or BVI law, respectively. Moreover, the Liquidators are estopped from relying on the "knowledge" allegations with respect to their BVI Common Law and Contract Claims. *Third*, the "knowledge" allegations, even if they were permissible and adequately pled, do not cure numerous fatal defects in the Complaints that exist regardless of the Knowledge Defendants' knowledge or state of mind. *Fourth*, the Liquidators' complaints purporting to name "HSBC"—a non-existent entity—as a defendant not only fail to state a claim, but fail to even identify a juridical entity against whom their allegations are directed. *Finally*, the Complaints against PBRS, HSBC Guyerzeller, and HSBC Panama should also be dismissed due to insufficient service of process.

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction over the Foreign Knowledge Defendants

The only potentially relevant additional facts pertaining to personal jurisdiction in the "knowledge" allegations, beyond those dealt with in the Consolidated Brief, are (a) that unspecified "HSBC bank affiliates" on two occasions engaged KPMG to conduct due diligence,[5]

---

paragraphs 87 and 111 of the PBRS and HBUS Complaints, respectively, allege that these defendants "delegated custodial duties to BLMIS," when the BLMIS Trustee's allegation was made only against other HSBC entities. *See* Am. Compl. ¶ 308, *Picard v. HSBC Bank plc*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y. Dec. 5, 2010) (Dkt. No. 170-1).

[5]    *See, e.g.*, HBUS Compl. ¶¶ 109, 112.

2

and (b) that in July 2001, "HSBC Suisse and its affiliates' due diligence team" met with Fairfield representatives at some unspecified location.[6]

These alleged connections are plainly immaterial, as none of the claims in these actions arose out of these contacts, which, in any event, were not significant in the context of the foreign contractual relationships between the foreign Knowledge Defendants and the Funds. *See Hill v. HSBC Bank plc*, No. 14-CV-09475-LTS, 2016 WL 4926199, at *4 & n.7 (S.D.N.Y. Sept. 15, 2016) (rejecting as jurisdictionally insufficient allegations concerning KPMG's performance of due diligence on behalf of HSBC Bank plc in New York). Further, the Complaints do not allege that the Knowledge Defendants, rather than their "affiliates," engaged KPMG to perform any due diligence on BLMIS.[7] *See, e.g.*, *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988) (allegations against a company's affiliate are insufficient to establish the company's liability absent allegations that the affiliate was a "mere instrumentality" of the company).

## II. The "Knowledge" Allegations Are Deficiently Pled and Barred as a Matter of Law

### 1. The "Knowledge" Allegations Fail to Establish Actual Knowledge Under U.S. Law or "Blind-Eye" Knowledge Under BVI Law

The "knowledge" allegations would only be substantively relevant if they were sufficient (a) to establish that the Knowledge Defendants had actual knowledge of BLMIS's fraud, thereby disqualifying them from relying on the Section 546(e) safe harbor[8] and the statutory defense available under Section 31 of the BVI Business Companies Act 2004,[9] or (b) to establish the "blind-eye" knowledge required for "bad faith" under BVI law, which would potentially affect

---

[6]    PBRS Compl. ¶ 82.

[7]    As is evident from Exhibits C and D to the Supplemental Moloney Declaration, dated January 27, 2017, the 2006 and 2008 KPMG reports were prepared at the direction of HSBC Bank plc, not the Knowledge Defendants.

[8]    *See Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y 2016) (Bernstein, J.); *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 138 (Bankr. S.D.N.Y. 2014) (Bernstein, J.) (a transfer recipient "cannot avail himself of the § 546(e) safe harbor" unless actual knowledge is adequately alleged).

[9]    *See* Consolidated Brief at 51-52; Mortimore Decl. ¶¶ 83-87.

3

the availability of certain defenses to the Common Law Claims. These allegations fail to meet either threshold.[10]

None of the allegations support a claim that any Knowledge Defendant had actual knowledge of the fraud.[11] Instead, in each Complaint, it is simply alleged that the Knowledge Defendant "was well aware of the indicia of fraud surrounding BLMIS."[12] Moreover, the so-called "indicia of fraud" the Liquidators identify, including BLMIS's secrecy and apparently "too good to be true" results, were well-known aspects of Madoff's strategy that failed to alert multiple regulators and his many investors of the fraud. It is only with the benefit of hindsight that these allegations could be characterized as fraud indicators, which is plainly impermissible.[13]

The sparse allegations set forth in the Complaints also fall far short of satisfying what is required under BVI law for alleging "blind-eye" knowledge. *First*, the Liquidators' allegations do not establish that any Knowledge Defendant had a "firm belief" that BLMIS was operating a Ponzi scheme. As a threshold matter, certain of the Liquidators' allegations seek to impute the purported knowledge of HSBC affiliates (many of which are not even identified) to the Knowledge Defendants. PBRS Compl. ¶¶ 82-83, 85-91; HSSL Compl. ¶¶ 81-88; HBUS Compl.

---

[10] "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 431 F. App'x 17, 18 (2d Cir. 2011). In addition, when "allegations in a complaint sound in fraud, they must be pleaded with particularity." *Id.*; Fed. R. Civ. P. 9(b).

[11] Although each "knowledge" section of the Complaints begins with the heading that the Knowledge Defendants "Knew or Should Have Known" of BLMIS's fraud, *see* PBRS Compl. at 29; HSSL Compl. at 30; HBUS Compl. at 33, section headings are not even technically part of the pleadings under Fed. R. Civ. P. 10(b). *See Winkler-Koch Eng'g Co. v. Universal Oil Prods. Co. (Del.)*, 79 F. Supp. 1013, 1019 (S.D.N.Y. 1947). Because the headings here are simply alternative legal conclusions, they would not help the Liquidators even if they were part of the pleadings. *See Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (courts are not required to "accept as true a legal conclusion couched as a factual allegation").

[12] PBRS Compl. ¶ 81; HBUS Compl. ¶ 104.

[13] *Cf. Legacy Capital Ltd.*, 548 B.R. at 33 (rejecting red flag allegations because they "amount[] to pleading fraud by hindsight"); *see also MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 143-45 (S.D.N.Y. 2010) (finding that awareness of red flags is not enough to show actual knowledge of Madoff's fraud); *Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*, No. 113209/09, 2011 WL 5962804, at *12-13 (N.Y. Sup. Ct. Apr. 15, 2011) (finding no actual knowledge where plaintiff "fail[ed] to explain how one or more alleged red flags made it so obvious that Madoff was running a Ponzi scheme that defendants must have known about the scheme").

4

¶¶ 105-115. This is wholly improper and requires that these allegations be disregarded.[14]

*Accord Defer LP v. Raymond James Fin. Inc.*, 654 F. Supp. 2d 204, 217 (S.D.N.Y. 2009) (knowledge cannot be imputed between sister corporations). Even if such allegations could be considered, taken together, they establish only the innocuous facts that:

- "a high-ranking member of [an] HSBC Suisse affiliate . . . inquired about" various aspects of Madoff's operations and certain employees questioned the wisdom of investing into his opaque strategy, *see, e.g.*, PBRS Compl. ¶ 82;

- in August 2001, "HSBC Bank USA issued a due diligence report on Sentry," stating that the "due diligence team . . . formed its 'opinions' solely on the basis of meetings with Fairfield representatives" and a publicly-available "MAR/Hedge article on Madoff," because they were "unable to meet with Madoff," *see id.* ¶ 83; HBUS Compl. ¶ 105;

- "HSBC Bank USA issued another due diligence report on Sentry" in January 2003 along the same lines as the August 2001 report, PBRS Compl. ¶ 84, HBUS Compl. ¶ 106, and an additional report in 2004, HBUS Compl. ¶ 108; and

- KPMG issued two due diligence reports to a different HSBC entity, one of which was subsequently forwarded to an employee of Bank Medici by "[PBRS, HSSL or HBUS] and/or its affiliates . . . to explain Madoff's investment strategy" "with the comment that the Feeder Funds were in good shape," PBRS Compl. ¶ 91; HBUS Compl. ¶ 115; HSSL Compl. ¶ 88.

These allegations reflect, at most, only the Knowledge Defendants' limited visibility into various aspects of BLMIS's operations—which was the direct result of BLMIS's well-known lack of transparency[15]—and do not support a claim that any Knowledge Defendant had any firm suspicion that BLMIS was engaged in fraud. Indeed, the Liquidators themselves summarize

---

[14] The Liquidators' separate attempt to impute the knowledge of Zurich Capital Markets ("Zurich") to HBUS, one of the purported "Beneficial Shareholders" that invested through Zurich as nominee, likewise fails. The relevant Complaint contains no allegations whatsoever about Zurich's knowledge, Prop. Am. Compl. ¶ 96-99, *Fairfield Sentry Ltd. v. Zurich Cap. Mkts. Co.*, Adv. Pro. 10-03634 (Bankr. S.D.N.Y Sept. 20, 2016) (Dkt. No. 77-1); *supra* note 11, and without any knowledge allegations, there can be no imputation. Furthermore, there is no allegation that Zurich had any duty to report to HBUS while acting within the scope of its limited purported agency, as is required under BVI law. *See* Mortimore Decl. ¶ 90.

[15] The MAR/Hedge article, attached as Exhibit B to the Supplemental Moloney Declaration, plainly demonstrates that concerns regarding BLMIS's trading strategy and lack of transparency had been raised as early as 2001 and were widely known in the market. *See In re Zyprexa Prods. Liab. Litig.*, 549 F. Supp. 2d 496, 501 (E.D.N.Y. 2008) ("Judicial notice can be taken of . . . press releases and news articles and published analyst reports in determining what the market knew.").

5

their "knowledge" allegations with the assertion that the Knowledge Defendants "[s]hould [h]ave [k]nown" of BLMIS's fraud,[16] which, even if assumed true, sounds in negligence at best. *See* Mortimore Decl. ¶¶ 110-14; *accord MLSMK*, 431 F. App'x at 18-19.

*Second*, even if the Complaints had established that the Knowledge Defendants had a "firm belief" in BLMIS's fraud, and not simply a "vague feeling of unease," they still fail to plead that any Knowledge Defendant made a "deliberate decision to avoid confirming" that belief. In fact, the Complaints' allegations establish the exact opposite. Specifically, the Complaints allege that the Knowledge Defendants and/or their affiliates conducted due diligence on BLMIS, including by sending KPMG to investigate BLMIS.[17] None of these due diligence efforts suggest that the Knowledge Defendants had any "reason to doubt that BLMIS carried on the investment business that it claimed to conduct." Mortimore Decl. ¶ 248; *see also id.* ¶ 134(c) ("The HSBC Amended Complaint refers to due diligence undertaken on two occasions by KPMG on the instructions of HSBC, which demonstrates that HSBC did not deliberately decide to '*avoid obtaining confirmation*' that BLMIS was operating a Ponzi scheme and undermines any claim that HSBC had blind-eye knowledge or acted recklessly.").[18] The documents memorializing these continued due diligence efforts—which include reports demonstrating that KPMG audited BLMIS's activities twice (and came away both times without

---

[16] *See* PBRS Compl. at 29; HSSL Compl. at 30; HBUS Compl. at 33.

[17] *See, e.g.*, PBRS Compl. ¶¶ 82-83 (identifying 2001 due diligence efforts by "HSBC Suisse's and its affiliates' due diligence team" and its lack of visibility into BLMIS's strategy); *id.* ¶ 84 (identifying 2003 due diligence efforts and HSBC Suisse's inability to "understand [Madoff's] investment strategy); *id.* ¶¶ 85-91 (2006 and 2008 engagement of KPMG to identify "fraud risks in BLMIS's methods").

[18] Further evidence that certain HSBC entities are victims of BLMIS's fraud is provided by the convictions and guilty pleas of BLMIS employees arising from their involvement in deceiving KPMG for the very purpose of misleading KPMG and certain HSBC entities. *See, e.g.*, Trial Tr. 4612-19, *United States v. Bonventre*, No. 10 Cr. 228 (LTS) (S.D.N.Y. Dec. 2, 2013) (Dkt. No. 854); Trial Tr. 4777 (S.D.N.Y. Dec. 4, 2013) (Dkt. No. 856) (BLMIS CFO Frank DiPascali describing the creation of the fake documents and DTC trade reports that allowed KPMG to track trades for the KPMG reports); Sentencing Tr. 43:19-25 (S.D.N.Y. Dec. 9, 2014) (Dkt. No. 1234) (sentencing BLMIS employees for participation in "KPMG audit falsification" that was "directed to misleading a client").

6

any concern that Madoff was engaged in any fraudulent activity)—support the same conclusion.[19] *See Elendow Fund, LLC v. Rye Select Broad Mkt. XL Fund (In re Tremont Sec. Law, State Law and Ins. Litig.)*, No. 10 Civ. 9061 (TPG), 2013 WL 5179064, at *5 (S.D.N.Y. Sept. 16, 2013) ("[I]f [defendant] had known, or even strongly suspected, that Madoff was perpetrating a fraud, it would have been peculiar for [defendant] to continue . . . sending Madoff due-diligence questionnaires."), *aff'd* 588 F. App'x 27 (2d Cir. 2014); *Legacy Capital*, 548 B.R. at 32, 34 (retaining a third party "to conduct due diligence implies that [defendant] did not know that Madoff was a fraud . . . [and] did not turn away or willfully blind itself to suspicions").

### 2. The Liquidators Are Precluded from Relying on These Allegations

The legal question of whether bad faith receipt of redemption payments would support the Liquidators' mistake-based claims was within the scope of the Preliminary Issues decided in the BVI. The Liquidators could have—and should have—raised this legal question before the Privy Council, but they did not. Rather, they conceded before the Privy Council that, if the documents under review were "certificates" establishing the NAV per share, then restitution was not available. The Liquidators therefore waived any argument about the legal import of bad faith receipt and are estopped from re-litigating the Article 11 Issue or the Good Consideration Issue by asserting any "bad faith" allegations here. This is true regardless of whether they raised the precise arguments in the BVI that they want to make now. *See, e.g.*, *Trikona Advisers Ltd. v.*

---

[19] KPMG, of course, did not determine that BLMIS was running a Ponzi scheme. The 2006 KPMG report and the draft 2008 KPMG report, described in the Complaints as identifying a "laundry list" of *risks*, did not identify any fraudulent behavior that actually existed to the knowledge of either KPMG or any HSBC entity. *See* PBRS Compl. ¶¶ 85, 90; HSSL Compl. ¶¶ 82, 87; HBUS Compl. ¶¶ 109, 114. Both reports indicate that, "to HSBC's knowledge, no allegations of fraud or misconduct have been raised," and set forth a series of tests KPMG ran to eliminate the risk that BLMIS's trades were "a sham in order to divert client cash." *See* 2006 and 2008 KPMG Reports at 1.2 and Appendix B. Because the Liquidators' allegations rely heavily on the content of the KPMG reports, the court may take judicial notice of these reports, which were publicly filed in *Picard v. HSBC Bank plc*, Adv. Pro. No. 09-01364 (Bankr. S.D.N.Y. June 26, 2015) (Dkt. No. 395). *See, e.g.*, *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000); *5-Star Mgmt., Inc. v. Rogers*, 940 F. Supp. 512, 518 (E.D.N.Y.1996). The KPMG reports are included as Exhibits C and D to the Supplemental Moloney Declaration for ease of reference.

7

*Chugh*, No. 14-975-cv, 2017 WL 191936, at *6 (2d Cir. Jan. 18, 2017) (plaintiff was collaterally estopped when relevant issues were litigated and necessarily decided in the Cayman Islands).

The *factual* proviso in Justice Bannister's Preliminary Issues Order—which indicated that the Liquidators are not barred from pursuing restitution claims based on "facts not actually known to the Liquidators . . . at the time of the [Preliminary Issues] hearing"[20]—is of no avail here, as the *legal* question of whether the Knowledge Defendants' purported knowledge impacts the Liquidators' claims was waived. Justice Bannister's proviso also cannot apply because the Liquidators were aware of the very allegations they seek to incorporate here, as the BLMIS Trustee's complaint that they copied was filed in this Court in December 2010, nine months before the Preliminary Issues hearing before Justice Bannister in September 2011.[21]

### III. The "Knowledge" Allegations Are Legally Irrelevant

Even if they were properly pled and not precluded (neither of which is the case), the "knowledge" allegations would still not save the Liquidators' claims. The Privy Council held that the Funds had a contractual obligation to make a redemption payment to a redeeming member based on the NAV as stated at the time, and that obligation "is unaffected by the state of mind of the redeeming member." Mortimore Decl. ¶ 125 ("As a matter of BVI and English law . . . the contractual obligation of a Fund to make a Redemption Payment to a redeeming member depends solely on the NAV per share stated in the applicable certificate and is unaffected by the state of mind of the redeeming member."); *id*. at ¶ 122.[22]

---

[20]    Decision of Bannister, J. ¶ 2 (Hare Decl., Ex. N).

[21]    *See* Hare Decl. ¶ 56 (noting that the Liquidators submitted an affidavit requesting an adjournment of the Preliminary Issues proceedings to "mount additional claims against some or all of the redeemers . . . [who were] in knowing receipt" based on the allegations asserted by the BLMIS Trustee, which Justice Bannister denied).

[22]    Moreover, as noted above, Section 31 of the BVI Business Company Act of 2004 prevents the Funds from claiming that the actions of their agent, Citco, were invalid, unless parties dealing with Citco had "actual knowledge of Citco's fraud." *See* Mortimore Decl. ¶¶ 84-87.

8

The EC Court of Appeal's ruling on the Good Consideration Issue also forecloses the Liquidators' mistake-based claims because the Knowledge Defendants "provided exactly the same consideration as the other Defendant[s]," *i.e.*, "the shares delivered up on Redemption." Mortimore Decl. ¶ 119. The Common Law Claims are not saved by the Knowledge Defendants' purported bad faith because a "redeeming member is not unjustly enriched if he receives no more than his contractual entitlement." *Id.* ¶ 125. The "good consideration defence therefore applies and there can be no claim in restitution to recover the Redemption Payment." *Id.*

*Finally*, the "knowledge" allegations are also irrelevant to the Liquidators' BVI Insolvency Claims, *see* Mortimore Decl. ¶¶ 179, 230, which otherwise fail to state a claim. *See* Consolidated Brief at 61-69; Mortimore Decl. ¶¶ 175, 228.

### IV. The Complaints Against "HSBC"—a Non-Existent Entity—Fail to State a Claim and Were Not Validly Served

The Liquidators' complaints against the generic, non-existent entity "HSBC" in two adversary proceedings (the "ABN Complaints")[23] fail to satisfy even the most basic requirements of notice pleading and should therefore be dismissed. *First*, the ABN Complaints fail to indicate which "HSBC" entity they intended to sue, and the London address on the affidavit of service is shared by multiple corporate entities. *See* ABN Compl. ¶ 70. *Second*, these complaints do not allege that "HSBC" actually received any transfers from the Funds, nor do they allege when or to whom these purported transfers were made. The ABN Complaints simply allege that all of these transfers "may have" occurred and were somehow "associated" with "HSBC." *Id. Finally*, these complaints were never actually served on any legal entity. *See* Fed. R. Civ. P. 12(b)(4)-(5).

---

[23] *See* Prop. Am. Compl., *Fairfield Sentry v. ABN Amro Schweiz AG*, Adv. Pro. No. 10-03635 (Bankr. S.D.N.Y. Sept. 20, 2016) (Dkt. No. 139-1) ("ABN Compl."); Prop. Am. Compl., *Fairfield Sentry v. ABN Amro Schweiz AG*, Adv. Pro. No. 10-03636 (Bankr. S.D.N.Y. Sept. 21, 2016) (Dkt. No. 152-1). The ABN Complaints are identical with respect to the issues addressed here.

9

## V. The Liquidators Failed to Validly Serve Certain Other HSBC Defendants

The Liquidators' attempts to serve the Complaints against PBRS, HSBC Guyerzeller, and HSBC Panama by registered mail[24] also fail for various reasons. *First*, the Liquidators' purported service on PBRS's counsel fails, as service on counsel is a sufficient alternative means of service under Rule 4(f) only when it has been ordered by the Court, which was not the case here. *See, e.g.*, *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-CV-9913, 2015 WL 3457452, at *4-6 (S.D.N.Y. June 1, 2015). *Second*, the Liquidators tried to serve HSBC Guyerzeller by mailing the relevant complaint "care of" a third party in Belgium, but service on that third party—which the Liquidators do not (and cannot) allege was a process agent—is not service on HSBC Guyerzeller and thus is insufficient. *Finally*, the Liquidators' attempted service on HSBC Panama fails because Panama law requires that personal service be effected by a duly appointed court official, *see* Decl. of Roy C. Durling, dated January 27, 2017, ¶ 13, or made through Panama's "central authority" pursuant to the Inter-American Convention on Letters Rogatory, *see id.* ¶¶ 20-30, neither of which happened here.

## CONCLUSION

For the foregoing reasons, this Court should deny the Liquidators' Motion for Leave to Amend and dismiss the Complaints against the HSBC Defendants with prejudice.

---

[24] *See* Service Aff., *Fairfield Sentry Ltd. v. HSBC Private Bank (Suisse) S.A.*, Adv. Pro. No. 10-03633 (Bankr. S.D.N.Y. Bankr. Oct. 19, 2010) (Dkt. No. 15); Service Aff., *Fairfield Sentry Ltd. v. FS/HSBC Guyerzeller Zurich*, Adv. Pro. No. 11-01594 (Bankr. S.D.N.Y. Mar. 25, 2011) (Dkt. No. 5); Service Aff., *Fairfield Sentry Ltd. v. HSBC Sec. (Pan.) S.A.*, Adv. Pro. No. 12-01270 (Bankr. S.D.N.Y. Apr. 17, 2012) (Dkt. No. 3).

10

Dated: New York, New York
January 27, 2017

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:   /s/ Thomas J. Moloney
      Thomas J. Moloney

One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999
(tmoloney@cgsh.com)

*Attorneys for the HSBC Defendants*

# EXHIBIT A

This supplemental memorandum of law applies to the following adversary proceedings:

| Adv. Pro. No. | Defendant Name | Unique Issues Addressed[1] |
|---|---|---|
| 10-03630 | HSBC Securities Services (Luxembourg) S.A. | Personal Jurisdiction, "Knowledge" Allegations |
| 10-03633 | HSBC Private Bank (Suisse) S.A. | Personal Jurisdiction, "Knowledge" Allegations |
| 10-03634 | HSBC Bank USA, N.A. | "Knowledge" Allegations |
| 10-03635 | "HSBC" | Failure to State Claim, Insufficient Service of Process |
| 10-03636 | "HSBC" | Failure to State Claim, Insufficient Service of Process |
| 11-01594 | HSBC Trust Company AG (f/k/a FS/HSBC Guyerzeller Zurich) | Insufficient Service of Process |
| 12-01270 | HSBC Latin America Holdings (UK) Limited (successor-in-interest to HSBC Securities (Panama) S.A.) | Insufficient Service of Process |

---

[1] For the avoidance of doubt, the Complaints also fail to plead any basis for personal jurisdiction over HSBC Guyerzeller and HSBC Panama (as well as "HSBC," to the extent it can even properly be considered a defendant), for the reasons set forth in the Consolidated Brief.