**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 Case |
| **Fairfield Sentry Limited, et al.,** | |
| **Debtors in Foreign Proceedings.** | Case No. 10-13164 (SMB) |
| **Fairfield Sentry Limited (In Liquidation), et al., acting by and through the Foreign Representatives thereof,** | Jointly Administered |
| Plaintiffs, | Adv. Pro. No. 10-03496 (SMB) |
| -against- | Administratively Consolidated |
| **Theodoor GGC Amsterdam, et al.,** Defendants. | |
| This declaration applies to the Adversary Proceedings listed on Exhibit A | |

<u>**DECLARATION OF ROY C. DURLING**</u>



I, Roy C. Durling, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and the laws of the United States of America, that the following is true and correct:

## I.    QUALIFICATIONS AND REQUEST

1.    I am a practicing attorney in the Republic of Panama.  I hold a Juris Doctor degree from Cornell University, Ithaca, New York, which was awarded in 1986.  The School of Law of the University of Panama formally recognized my Cornell University law degree in 1992.  On December 10, 1992 the Supreme Court of Panama granted me the license to practice law in the Republic of Panama.  I am currently a partner at the law firm Arias, Fabrega & Fabrega, with offices at PH ARIFA, 9th and 10th Floors, West Boulevard, Santa Maria Business District, Panama, Republic of Panama.  I have been working with Arias, Fabrega & Fabrega since 1991. While at Arias, Fabrega & Fabrega I have concentrated on the areas of banking, finance, commercial, corporate, and international laws, among others.  Over the course of the years, as a Panamanian law practitioner, I have counseled many clients on banking and financial matters and have rendered numerous opinions on various Panamanian banking law issues. The International Who's Who of Business Lawyers recognized me as a Leading Banking Lawyer in Panama (years 2003 through 2010 and 2013).  Since 1987, I am admitted to practice law in the State of New York, United States of America.  From 1986 until 1990 I worked as an associate with the law firm Haight, Gardner, Poor & Havens (today part of Holland & Knight) in New York, New York, concentrating in the areas of corporate finance.  I also hold a Bachelor of Arts degree from Georgetown University, Washington, D.C., which was awarded in 1983.  I read, write and speak fluent English and Spanish, the language of the laws of the Republic of Panama.

2.    I have been asked by counsel to HSBC Latin America Holdings (UK) Limited, which retained all potential liability arising from the Fairfield Litigation (defined below) against HSBC Securities (Panama) S.A., formerly known as Banistmo Securities, Inc. (hereinafter referred to as

"HSBC Panama") to set forth my views on whether the liquidators of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited (the "Liquidators") validly served process on HSBC Panama or the "Beneficial Owners Of Accounts Held In The Name Of HSBC Securities (Panama) SA 1-1000" (the "Beneficial Owners") in Panama by international registered mail, as attested to by the Affidavit of Service of Christopher Michael Lau Kamg, dated April 12, 2012 (the "Affidavit of Service").

3.      I make this declaration upon my own personal knowledge and affirm that I am familiar with the statutes, treaties and other authorities cited herein.   Spanish versions and certified English translations of the relevant portions of the statutes and treaties cited herein are attached hereto in Exhibit B.  I have also reviewed the Affidavit of Service and the following complaints filed in *Fairfield Sentry v. HSBC Securities (Panama) S.A.*, Adv. Pro. No. 12-1270: (i) the original complaint, filed on April 4, 2012, (ii) the first amended complaint, filed on October 11, 2012, and (iii) the proposed second amended complaint, filed on September 12, 2016 (together, the "Complaints").

4.      I am further aware that HSBC Panama was a securities dealer (broker-dealer) organized under the laws of the Republic of Panama with its headquarters in Panama City, Republic of Panama.

5.      This opinion considers sources of Panama law that apply to service of process.

## II.   SUMMARY OF CONCLUSIONS

6.      The Panamanian judicial system considers the general principle of service of process to be a very significant component of the system's foundation.  Moreover, the lack of personal service of process is grounds for refusal of enforcement in Panama of a foreign judicial decision.

7.      The United States and Panama are parties to, and bound by, the Inter-American Convention on Letters Rogatory of January 30, 1975 (the "Inter-American Convention").

3

8.      The appropriate mechanism for a plaintiff in a proceeding in a U.S. court to serve process or deliver a summons to a party in the Republic of Panama would be under the terms of the Inter-American Convention.

9.      In Panama, the competent authority to process requests and serve documents, such as the Complaints, from foreign courts on individuals or entities within Panama is the Fourth Chamber of the Supreme Court of Justice.

10.     Service of process, as described in the Affidavit of Service, would not comply with Panama law as it would not comply with (i) the Inter-American Convention, which would be the applicable convention for this matter, or (ii) Panama law governing service in a legal proceeding in a court of general jurisdiction of the Republic of Panama on a defendant residing or located in the Republic of Panama.

### III.     EXPLANATIONS AND SUPPORT OF CONCLUSIONS

#### A.      Service of Process Under Panama law

11.     Panama law does not include any provisions that would allow private parties, in the context of Panamanian judicial proceedings, to agree to a service of process method different from the one provided by Panama law.

12.     Service of process is part of the larger principle of "due process" that refers to the duty to observe all relevant steps and procedures required in a particular proceeding. According to Panamanian Supreme Court decisions, the observance of proper service of proper process is "a fundamental principle of the Panamanian legal system and a matter of public order."[1]

13.     In the case of a legal proceeding in a court of general jurisdiction of the Republic of Panama, in which the plaintiff and defendant are located in Panama, service by registered

---

[1] Supreme Court of Justice. Fourth Chamber. September 14, 1995 ruling on a rogatory commission from British Courts.

mail is not permitted.  Rather, service of process has to be effected in person pursuant to Article 1002 of the Panamanian Judicial Code.  Moreover, such service in person has to be effected by a duly appointed court official, pursuant to Article 1004 of the Panamanian Judicial Code.

14.    The duty to comply with service of process in Panamanian proceedings is of such relevance and importance, that failure to observe such principle will render the act of attempted service or notice without value (*i.e.*, a legal nullity).   Article 1022 of the Panamanian Judicial Code states that, "[n]o judicial decision may begin to take effect before the parties have been legally notified."  (Translated from Spanish.)

15.    Moreover, the lack of personal service of process is grounds for refusal of enforcement of a foreign judicial decision under Article 1419 of the Panamanian Judicial Code.

16.    According to the Affidavit of Service, the service of process was effected on HSBC Panama, as well as on the Beneficial Owners (without specifying the names of such Beneficial Owners).

17.    If the Liquidators' claims against HSBC Panama and the Beneficial Owners were proceeding in a court of general jurisdiction of the Republic of Panama, service by registered mail would not be valid on either HSBC Panama or the Beneficial Owners, as it would not have been effected by a duly appointed court official, as required by Panama law.

18.    In addition, as for the Beneficial Owners, the non-individualization of said Beneficial Owners would result in the impossibility of personally serving process upon each of them and therefore, such service of process would be contrary to Panama law, which requires personal service of process.

19.    As a result, any judgment obtained by the Liquidators against HSBC Panama or the

Beneficial Owners would not be enforceable in Panama.

**B.    Service of Process Under the Inter-American Convention**

20.    Under Article 1012 of the Panamanian Judicial Code, the provisions of the Judicial Code regarding service of process abroad apply without prejudice to any applicable treaty or convention.

21.    Panama is not a party to the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  However, the Republic of Panama and the United States of America are parties to the Inter-American Convention.[2]

22.    Article 2 of the Inter-American Convention provides that the Convention "shall apply to letters rogatory, issued in conjunction with proceedings in civil and commercial matters held before the appropriate judicial or other adjudicatory authority of one of the States Parties to this Convention, that have as their purpose: a. The performance of procedural acts of a merely formal nature, such as notifications, summonses or citations abroad; b. The taking of evidence and the obtaining of information abroad, unless an express reservation is made in this respect."

23.    Therefore, the applicable convention for "notifications, summonses or citations abroad" between the Republic of Panama and the United States of America is the Inter-American Convention.

24.    On August 26, 2014, the Permanent Mission of Panama to the Organization of American States designated the "*Dirección General de Asuntos Juridicos y Tratados del Ministerio de Relaciones Exteriores de la Republica de Panamá*" as the central authority for the Inter-American Convention to whom letters rogatory should be addressed so that procedural acts, such as service of process, may be properly carried out in connection with proceedings before a foreign (*i.e.*, non-

---

[2] A list of Inter-American Convention signatories is available at http://www.oas.org/juridico/english/sigs/b-36.html.

Panamanian) court.

25.    Therefore, to effect service of process on HSBC Panama, the U.S. court would have to submit a petition or "letter rogatory" to "*Dirección General de Asuntos Juridicos y Tratados del Ministerio de Relaciones Exteriores de la Republica de Panamá*" as the central authority designated by the Republic of Panama under the Inter-American Convention, so that such central authority could forward this request to the Fourth Chamber of the Supreme Court of Justice of Panama, which in turn would carry out the procedural act of serving the applicable party in Panama.

26.    In sum, the Inter-American Convention provides the appropriate mechanisms for a U.S. court to request that the Panamanian judiciary assist with services of process or summonses regarding a party in the Republic of Panama.

**C.    Jurisdiction of the Fourth Chamber of the Supreme Court of Justice**

27.    In connection with foreign proceedings, as part of the general principle of service of process in the Panamanian judicial system, Panama has granted special jurisdiction to the Fourth Chamber of the Supreme Court of Justice to serve and perform, in Panama, procedural acts requested from foreign courts.

28.    Article 100 of the Panamanian Judicial Code lists the procedural activities and cases that fall under the jurisdiction of the Fourth Chamber of the Supreme Court of Justice. Paragraph 3— which is complemented by the introductory phrase "it is a duty of the Fourth Chamber" or "*a la Sala Cuarta corresponde*" in Spanish—includes among those activities, the duty to receive requests for judicial assistance ("*exhortos*" in Spanish) and rogatory commissions from foreign courts, and determine their enforcement within the national territory, and the government official or tribunal that will enforce it.  Accordingly, service of foreign proceedings in Panama must be effected through the Fourth Chamber.

7

29.     The Fourth Chamber of the Supreme Court of Justice of Panama has extensive experience processing and granting letters rogatory from U.S. courts, including the U.S. District Court for the Southern District of New York.

30.     In general, the Fourth Chamber of the Supreme Court of Justice of Panama will accept the enforcement of letters rogatory submitted with the documentation and information required in Articles 5 and 8 of the Inter-American Convention, which include:

    i.      an authenticated copy of the complaint with its supporting documents, and of other exhibits or rulings that serve as the basis for the measure requested;

    ii.     written information identifying the judicial or other adjudicatory authority issuing the letter, indicating the time limits allowed the person affected to act upon the request, and warning of the consequences of failure to do so;

    iii.    information on the existence and address of the court-appointed defense counsel, or, of competent legal aid societies in the State of origin; and

    iv.    translation of all documents to the official language of Panama (Spanish).

31.     Accordingly, to the extent the Liquidators seek to effect service of process upon HSBC Panama, the Fourth Chamber of the Supreme Court of Panama would have jurisdiction over any letter rogatory requesting judicial assistance from Panamanian courts to deliver such service of process.

32.     According to the Affidavit of Service, the service of process was effected through "postage pre-paid envelope to be delivered via International Registered Mail and depositing same in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York."   Therefore, the Affidavit of Service does not comply with the requirements of the Inter-American Convention because:

    i.      The service of process was made via International Registered Mail instead of a

Letter Rogatory addressed to the central authority appointed by the Republic of Panama under the Inter-American Convention;

ii.   The documents sent via International Registered Mail do not include a translation of all documents to the official language of Panama (Spanish);

iii.   The documents sent via International Registered Mail do not include information on the existence and address of the court-appointed defense counsel, or, of competent legal aid societies in the State of origin.

33.   For the foregoing reasons, it is my opinion that the purported service of process on HSBC Panama and the Beneficial Owners, as described in the Affidavit of Service, would not comply with Panama law, as it fails to comply with provisions of the Inter-American Convention, which is the applicable convention for the matter, or to otherwise comply with Panama law.

Executed on January 27, 2017, at Panama City, Republic of Panama.

By: Roy C. Durling

# EXHIBIT A

This declaration applies to the following adversary proceedings:

| | Adv. Pro. No. | Case Name | Defendant Name |
|---|---|---|---|
| 1. | 10-03630 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Securities Services (Luxembourg) SA, et al.* | HSBC Securities Services (Luxembourg) S.A. |
| 2. | 10-03633 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Suisse) SA, et al.* | HSBC Private Bank (Suisse) S.A. |
| 3. | 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Markets Company, et al.* | HSBC Bank USA, N.A. |
| 4. | 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | "HSBC" |
| 5. | 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | "HSBC" |
| 6. | 11-01594 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/HSBC Guyerzeller Zurich, et al.* | HSBC Trust Company AG (f/k/a FS/HSBC Guyerzeller Zurich) |
| 7. | 12-01270 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Securities (Panama) SA, et al.* | HSBC Latin America Holdings (UK) Limited (successor-in-interest to HSBC Securities (Panama) S.A.) |

**EXHIBIT B**

**RELEVANT PROVISIONS OF STATUTES AND TREATIES**

TAB 1

Inter-American Convention on Letters Rogatory, Arts. 2, 5, 8

# GACETA OFICIAL
## ORGANO DEL ESTADO

| AÑO LXXIII | PANAMA, REPUBLICA DE PANAMA, VIERNES 23 DE ABRIL DE 1976 | No. 18.072 |

### CONTENIDO

**LA ASAMBLEA NACIONAL DE REPRESENTANTES DE CORREGIMIENTOS**

Ley No. 12 de 23 de octubre de 1975, por la cual se
aprueba la Convención Interamericana sobre Exhortos o
Cartas Rogatorias

**AVISOS Y EDICTOS**

---

## La Asamblea Nacional de Representantes de Corregimientos

---

### APRUEBASE LA CONVENCION INTERAMERICANA SOBRE EXHORTOS O CARTAS ROGATORIAS

LEY NUMERO *12*

(de *23* de *octubre* de 1975)

Por la cual se aprueba la Convención Interamericana sobre Exhortos
o Cartas Rogatorias.

LA ASAMBLEA NACIONAL DE REPRESENTANTES DE CORREGIMIENTOS

DECRETA:

ARTICULO 1:     Apruébase en todas sus partes la CONVENCION INTERAMERICANA
SOBRE EXHORTOS O CARTAS ROGATORIAS, que a la letra dice:

CONVENCION INTERAMERICANA SOBRE EXHORTOS

O CARTAS ROGATORIAS

Los Gobiernos de los Estados Miembros de la Organización de los Estados
Americanos, deseosos de concertar una Convención sobre exhortos o Cartas
rogatorias, han acordado lo siguiente:

I. USO DE EXPRESIONES

Artículo 1

Para los efectos de esta Convención las expresiones "exhortos" o
"cartas rogatorias" se utilizan como sinónimos en el texto español. Las
expresiones "commissions rogatoires", y "letters rogatory" y "cartas roga-
tórias", empleadas en los textos francés, inglés y portugués, respectiva-
mente, comprenden tanto los exhortos como las cartas rogatorias.

2                 Gaceta Oficial, Viernes 23 de abril de 1976                 No. 18.072

# GACETA OFICIAL

ORGANO DEL ESTADO

DIRECTOR

**HUMBERTO SPADAFORA P.**

OFICINA:

Editora Renovación, S.A., Vía Fernández de Córdoba (Vista
Hermosa). Teléfono 61-7894 Apartado Postal B-6
Panamá, 9-A República de Panamá.

AVISOS Y EDICTOS Y OTRAS PUBLICACIONES
Dirección General de Ingresos
Para Suscripciones ver a la Administración

SUSCRIPCIONES

Mínima: 6 meses: En la República: B/.6.00
En el Exterior B/.8.00
Un año en la República: B/.10.00
En el Exterior: B/.12.00

TODO PAGO ADELANTADO
Número suelto: B/.0.15. Solicítese en la Oficina de Venta de
Impresos Oficiales. Avenida Eloy Alfaro 4-16.

## II.    ALCANCE DE LA CONVENCION

### Artículo 2

La presente Convención se aplicará a los exhortos o cartas rogatorias expedidos en actuaciones y procesos en materia civil o comercial por los órganos jurisdiccionales de uno de los Estados Partes en esta Convención, y que tengan por objeto:

a)    La realización de actos procesales de mero trámite, tales como notificaciones, citaciones o emplazamientos en el extranjero;

b)    La recepción y obtención de pruebas e informes en el extranjero, salvo reserva expresa al respecto.

### ARTICULO 3

La presente Convención no se aplicará a ningún exhorto o carta rogatoria referente a actos procesales distintos de los mencionados en el artículo anterior; en especial, no se aplicará a los actos que impliquen ejecución coactiva.

## III.    TRANSMISION DE EXHORTOS O CARTAS ROGATORIAS

### Artículo 4

Los exhortos o cartas rogatorias podrán ser transmitidos al órgano requerido por las propias partes interesadas, por vía judicial, por intermedio de los funcionarios consulares o agentes diplomáticos o por la autoridad central del Estado requirente o requerido según el caso.

Cada Estado Parte informará a la Secretaría General de la Organización de los Estados Americanos acerca de cuál es la autoridad central competente para recibir y distribuir exhortos o cartas rogatorias.

## IV.    REQUISITOS PARA EL CUMPLIMIENTO

### Artículo 5

Los exhortos o cartas rogatorias se cumplirán en los Estados Partes siempre que reunan los siguientes requisitos:

a.    Que el exhorto o carta rogatoria se encuentre legalizado, salvo lo dispuesto en los artículos 6 y 7 de esta Convención. Se presumirá que el exhorto o carta rogatoria se halla debidamente le-

galizado en el Estado requirente cuando lo hubiere sido por fun-
cionario consular o agente diplomático competente:

b.    Que el exhorto o carta rogatoria y la documentación anexa se en-
cuentren debidamente traducidos al idioma oficial del Estado re-
querido.

### Artículo 6

Cuando los exhortos o cartas rogatorias se transmitan por vía consular
o diplomática o por intermedio de la autoridad central será innecesario el
requisito de la legalización.

### Artículo 7

Los tribunales de las zonas fronterizas de los Estados Partes podrán
dar cumplimiento a los exhortos o cartas rogatorias previstos en esta Con-
vención en forma directa, sin necesidad de legalizaciones.

### Artículo 8

Los exhortos o cartas rogatorias deberán ir acompañados de los documen-
tos que se entregarán al citado, notificado o emplazado y que serán:

a.    Copia autenticada de la demanda y sus anexos, y de los escritos
o resoluciones que sirvan de fundamento a la diligencia solici-
tada;

b.    Información escrita acerca de cuál es el órgano jurisdiccional
requirente, los términos de que dispusiere la persona afectada
para actuar, y las advertencias que le hiciere dicho órgano so-
bre las consecuencias que entrañaría su inactividad;

c.    En su caso, información acerca de la existencia y domicilio de
la defensoría de oficio o de sociedades de auxilio legal compe-
tentes en el Estado requirente.

### Artículo 9

El cumplimiento de exhortos o cartas rogatorias no implicará en defini-
tiva el reconocimiento de la competencia del órgano jurisdiccional requiren-
te ni el compromiso de reconocer la validez o de proceder a la ejecución de
la sentencia que dictare.

### V.  TRAMITACION

### Artículo 10

Los exhortos o cartas rogatorias se tramitarán de acuerdo con las leyes
y normas procesales del Estado requerido;

A solicitud del órgano jurisdiccional requirente podrá otorgarse al

exhorto o carta rogatoria una tramitación especial, o aceptarse la obser-
vancia de formalidades adicionales en la práctica de la diligencia solici-
tada, siempre que ello no fuere contrario a la legislación del Estado re-
querido.

### Artículo 11

El órgano jurisdiccional requerido tendrá competencia para conocer de
las cuestiones que se susciten con motivo del cumplimiento de la diligencia
solicitada.

Si el órgano jurisdiccional requerido se declarare incompetente para
proceder a la tramitación del exhorto o carta rogatoria, transmitirá de ofi-
cio los documentos y antecedentes del caso a la autoridad judicial competen-
te de su Estado.

### Artículo 12

En el trámite y cumplimiento de exhortos o cartas rogatorias las costas
y demás gastos correrán por cuenta de los interesados.

Será facultativo del Estado requerido dar trámite a l exhorto o carta ro-
gatoria que carezca de idicación acerca del interesado que resultare respon-
sable de los gastos y costas cuando se causaren. En los exhortos o cartas
rogatorias o con ocasión de su trámite podrá indicarse la identidad del apo-
derado del interesado para los fines legales.

En beneficio de pobreza se regulará por las leyes del Estado requerido.

### Artículo 13

Los funcionarios consulares o agentes diplomáticos de los Estados Partes
en esta Convención podrán dar cumplimiento a las diligencias indicadas en el
Artículo 2 en el Estado en donde se encuentren acreditados siempre que ello
no se oponga a las leyes del mismo. En la ejecución de tales diligencias no
podrán emplear medios que impliquen coerción.

## VI. DISPOSICIONES GENERALES

### Artículo 14

Los Estados Partes que pertenezcan a sistemas de integración económica
podrán acordar directamente entre sí procedimientos y trámites particulares

más expeditos que los previstos en esta Convención. Estos acuerdos podrán
ser extendidos a terceros Estados en la forma que resolvieren las partes.

### Artículo 15

Esta Convención no restringirá las disposiciones de convenciones que
en materia de exhortos o cartas rogatorias hubieren sido suscritas o que
se suscribieren en el futuro en forma bilateral o multilateral por los Es-
tados Partes, o las prácticas más favorables que dichos Estados pudieran ob-
servar en la materia.

### Artículo 16

Los Estados Partes en esta Convención podrán declarar que extienden las
normas de la misma a la tramitación de exhortos o cartas rogatorias que se
refieran a materia criminal, laboral, contencioso-administrativo, juicios
arbitrales u otras materias objeto de jurisdicción especial. Tales decla-
raciones se comunicarán a la Secretaría General de la Organización de los
Estados Americanos.

### Artículo 17

El Estado requerido podrá rehusar el cumplimiento de un exhorto o carta
rogatoria cuando sea manifiestamente contrario a su orden público.

### Artículo 18

Los Estados Partes informarán a la Secretaría General de la Organización
de los Estados Americanos acerca de los requisitos exigidos por sus leyes
para la legalización y para la traducción de exhortos o cartas rogatorias.

### VII. DISPOSICIONES FINALES

### Artículo 19

La presente Convención estará abierta a la firma de los Estados Miembros
de la Organización de los Estados Americanos.

### Artículo 20

La presente Convención está sujeta a ratificación. Los instrumentos
de ratificación se depositarán en la Secretaría General de la Organización
de los Estados Americanos.

### Artículo 21

La presente Convención quedará abierta a la adhesión de cualquier otro Estado. Los instrumentos de adhesión se depositarán en la Secretaría General de la Organización de los Estados Americanos.

### Artículo 22

La presente Convención entrará en vigor el trigésimo día a partir de la fecha en que haya sido depositado el segundo instrumento de ratificación.

Para cada Estado que ratifique la Convención o se adhiera a ella después de haber sido depositado el segundo instrumento de ratificación, la Convención entrará en vigor el trigésimo día a partir de la fecha en que tal Estado haya depositado su instrumento de ratificación o adhesión.

### Artículo 23

Los Estados Partes que tengan dos o más unidades territoriales en las que rijan distintos sistemas jurídicos relacionados con cuestiones tratadas en la presente Convención, podrá declarar, en el momento de la firma, ratificación o adhesión, que la Convención se aplicará a todas sus unidades territoriales o solamente a una o más de ellas.

Tales declaraciones podrán ser modificadas mediante declaraciones ulteriores, que especificarán expresamente la o las unidades territoriales a las que se aplicará la presente Convención. Dichas declaraciones ulteriores se transmitirán a la Secretaría General de la Organización de los Estados Americanos y surtirán efecto treinta días despues de recibidas.

### Artículo 24

La presente Convención regirá indefinidamente, pero cualquiera de los Estados Partes podrá denunciarla. El instrumento de denuncia será depositado en la Secretaría General de la Organización de los Estados Americanos.

Transcurrido un año, contado a partir de la fecha de depósito del instrumento de denuncia, la Convención cesará en sus efectos para el Estado denunciante, quedando subsistente para los demás Estados Partes.

### Artículo 25

El instrumento original de la presente Convención, cuyos textos en es-

pañol, francés, inglés y portugués son igualmente auténticos, será deposita-
do en la Secretaría General de la Organización de los Estados Americanos.
Dicha Secretaría notificará a los Estados Miembros de la Organización de
los Estados Americanos y a los Estados que se hayan adheridos a la Conven-
ción, las firmas, los depósitos de instrumento de ratificación, adhesión
y denuncia, así como las reservas que hubiere.  También les transmitirá la
información a que se refiere el párrafo segundo del Artículo 4 y el Artículo
18, así como las declaraciones previstas en los Artículos 16 y 23 de la pre-
sente Convención.

EN FE DE LO CUAL, los plenipotenciarios infrascritos, debidamente auto-
rizados por sus respectivos Gobiernos, firman la presente Convención

HECHA EN LA CIUDAD DE PANAMA, República de Panamá, el día treinta de ene-
ro de mil novecientos setenta y cinco.

ARTICULO 2:  Esta Ley comenzará a regir a partir de su promulgación.

COMUNIQUESE Y PUBLIQUESE.

Dada en la ciudad de Panamá, a los *veintitres*        días del mes de
*octubre* de mil novecientos setenta y cinco.

DARIO GONZALEZ PITTY
Presidente de la Asamblea Nacional
de Representantes de Corregimientos

CARLOS CALZADILLA G.
Secretario General de la Asamblea
Nacional de Representantes de
Corregimientos

# AVISOS Y EDICTOS

AVISO

Por medio de la Escritura Pública Número 2730, de 7 de
abril de 1976, de la Notaría Quinta del Circuito de Panamá,
registrada el 12 de abril de 1976, al tomo 126, folio 450,
asiento 121,203 "B", de la Sección de Personas Mercantil
del Registro Público de Panamá, ha sido disuelta la socie-
dad "SERVO CORPORATION".

L-146765
(Unica Publicación)

MINISTERIO DE HACIENDA Y TESORO
DIRECCION GENERAL DE PROVEEDURIA Y GASTOS
DEPARTAMENTO DE MATERIALES Y COMPRAS

AVISO DE LICITACION PUBLICA
No. 3

EL SUSCRITO JEFE DEL DEPARTAMENTO DE COMPRAS

Invita por este medio a todas las casas comerciales para
que se acerquen a nuestro Departamento durante las horas
laborables a retirar listas y pliego de cargos, a fin de que
puedan participar en las cotizaciones de precios convocada
por esta Dependencia con el objeto de adquirir MATERIAL
DE CONSTRUCCION, SOLICITADO POR EL MINISTERIO
DE OBRAS PUBLICAS.

8                              Gaceta Oficial, Viernes 23 de abril de 1976                    No. 18.072

Las propuestas se recibirán en dos sobres cerrados con los originales escritos en papel sellado con timbre del Soldado de la Independencia y tres copias en papel simple, hasta las DIEZ EN PUNTO DE LA MAÑANA (10:00 a.m.) DEL DIA 11 DE MAYO DE 1976.

Este Departamento no efectuará cotizaciones telefónicas salvo casos especiales y urgentes.

VIELSA GARCIA
Jefe del Departamento de Compras

Panamá, 12 de abril de 1976.

CAJA DE SEGURO SOCIAL
DEPARTAMENTO DE COMPRAS

LICITACION PUBLICA No. 24-M

Hasta el día 4 de MAYO de 1976, a las 10:00 A.M. se recibirán propuestas en el Despacho del Jefe del Depto. de Compras de esta Institución para la adquisición de PRODUCTOS RADIOLOGICOS, con destino al Depósito General de Medicamentos.

Las propuestas deben ser presentadas en dos sobres cerrados, con el original escrito en papel sellado y tres copias en papel simple, y con timbre del Soldado de la Independencia en el or iginal. Deben ajustarse a las disposiciones del Código Fiscal, al Decreto No. 170 de 2 de Septiembre de 1960, y a la Ley No. 63 de 11 de Diciembre de 1961.

Las especificaciones 6 pliegos de cargos se entregarán en las horas hábiles de trabajo, en las oficinas del Jefe del Departamento de Compras, ubicadas en el Tercer Piso del Edificio de Administración de la Caja de Seguro Social.

LICDO. EDGARDO REYES MEDINA
Jefe del Depto. de Compras a.i.

Panamá, 17 de abril de 1976.-

EDICTO NUMERO 536

DEPARTAMENTO DE CATASTRO
ALCALDIA DEL DISTRITO DE LA
CHORRERA

El suscrito Alcalde del Distrito de La Chorrera, Hace saber:

Que el señor LORENZO DE GRACIA M., varón, panameño mayor de edad, casado, con residencia en esta ciudad, con cédula de identidad personal No. 8AV-16-234, en su propio nombre o en representación de su propia persona ha solicitado a este despacho que se le adjudique a título de plena propiedad en concepto de venta un lote de terreno municipal urbano, localizado en el lugar denominado GUADALUPE del barrio Corregimiento de Guadalupe Corregimiento de este distrito donde --------distinguida con el número-------- cuyos linderos y medidas son los siguientes:
NORTE: Predio de Victoriano Iglesia con 20.00 Mts.
SUR: Predio de la Calle Don Bosco con 16.00 Mts.
ESTE: Predio de Victoriano Iglesia con 30.00 Mts.
OESTE: Predio de Olga Lay con 30.00 Mts.

Area total del terreno seiscientos veinte metros con dieciséis centímetros cuadrados (620.16 Mts 2).

Con base a lo que dispone el Artículo 14 del Acuerdo Municipal No. 11 de 6 de marzo de 1957, se fija el presente Edicto en lugar visible del lote de terreno solicitado, por el término de diez (10) días para que dentro de dicho término pueda oponerse la persona o personas que se encuentren afectadas.

Entréguensele sendas copias del presente Edicto al interesado, para su publicación por una sola vez en un periódico de gran circulación y en la Gaceta Oficial.

La Chorrera 27 de noviembre de mil novecientos setenta y dos.

El Alcalde
(Fdo) Licdo. EDMUNDO BERMUDEZ

El Jefe del Departamento de Catastro Municipal
(Fdo) EDITH DE LA C. DE RODRIGUEZ

L- 146755
Unica publicación

REPUBLICA DE PANAMA
MINISTERIO DE DESARROLLO AGROPECUARIO
DIRECCION NACIONAL DE REFORMA AGRARIA
OFICINA REGIONAL ZONA #5- CAPIRA
EDICTO No. 151.DRA -75

El suscrito, Funcionario Sustanciador de la Dirección Nacional de Reforma Agraria, en la provincia de Panamá, al público,

HACE SABER:

Que el Sr. Luis Pitty vecino del corregimiento de Playa Leona, distrito de La Chorrera, ha solicitado a la Dirección Nacional de Reforma Agraria mediante solicitud No. 8-0382 la adjudicación a Título Oneroso, de una parcela que forma parte de la Finca No. 671 inscrita a Tomo No. 14 Folio 84,Sección de la Propiedad y de la Propiedad de la Nación, una superficie de 0 Has. 1068.93 M2., ubicada en el Corregimiento de : Playa Leona, Distrito de La Chorrera de esta provincia, cuyos linderos son los siguientes:

NORTE: Camino hacia el Hospital Nicolás A. Solano

SUR: Roberto Lorenzo

ESTE: Roberto Barría

OESTE: Roberto Lorenzo.

Para los efectos legales se fija el presente EDICTO en lugar visible de este Despacho en la Alcaldía del distrito de La Chorrera y copias del mismo se entregarán al interesado para que las haga publicar en los órganos de publicidad correspondientes, tal como lo ordena el Artículo 108 del Código Agrario.

Este EDICTO tendrá una vigencia de quince (15) días a partir de la última publicación.

Dado en Capira a los 26 días del mes de noviembre del año 1975.

MANUEL J. MORA MURGAS

SOFIA E. DE GONZALEZ
Secretaria de Ad-Hoc

L- 146746
Unica publicación

EDITORA RENOVACION, S.A.

TAB 2

Inter-American Convention on Letters Rogatory, Arts. 2, 5, 8 (English Translation)



City of New York, State of New York, County of New York

I, Wendy Poon, hereby affirm that the following is to the best of my knowledge and belief, a true and accurate Translation from Spanish to English of the document "Inter-American Convention on Letters Rogatory, Arts. 2, 5, 8"

_____
Wendy Poon
TransPerfect Translations International, Inc.

Sworn to before me this
January 27, 2017

_____
Signature, Notary Public

ALITASHA YOUNGER
Notary Public - State of New York
No. 01YO6335137
Qualified in KING County
Commission Expires Dec 28, 2019

_____
Stamp, Notary Public

## Inter-American Convention on Letters Rogatory

**Article 2.**

This Convention shall apply to letters rogatory, issued in conjunction with proceedings in civil and commercial matters held before the appropriate judicial or other adjudicatory authority of one of the States Parties to this Convention, that have as their purpose:

a. The performance of procedural acts of a merely formal nature, such as notifications, summons or citations abroad;

b. The taking of evidence and the obtaining of information abroad, unless an express reservation is made in this respect.

**Article 5.**

Letters rogatory shall be executed in the States Parties provided they meet the following requirements:

a. The letter rogatory is legalized, except as provided for in Articles 6 and 7 of this Convention. The letter rogatory shall be presumed to be duly legalized in the State of origin when legalized by the competent consular or diplomatic agent;

b. The letter rogatory and the associated documentation are duly translated into the official language of the State of destination.

**Article 8.**

Letters rogatory shall be accompanied by the following documents to be delivered to the person on whom process, summons or notification is being served:

a. An authenticated copy of the complaint with its supporting documents, and of other documents or rulings that serve as the basis for the measure requested;

b. Written information identifying the judicial or other adjudicatory authority issuing the letter, indicating the time-limits allowed the person affected to act upon the request, and warning of the consequences of failure to do so;

c. Where appropriate, information on the existence and address of the court-appointed defense counsel or of competent legal-aid societies in the State of origin.

TAB 3

Panamanian Judicial Code, Arts. 100, 1002, 1004, 1012, 1022, 1419

# Código Judicial
## de la República de Panamá

BIBLIOTECA
PROPIEDAD DE
ARIAS, FABREGA & FABREGA

## EDICIÓN ACTUALIZADA
### 2016



# [1]Resolución No. 1

(De 30 de agosto de 2001)

### Que adopta el Texto Único del Código Judicial

### LA COMISIÓN DE GOBIERNO, JUSTICIA Y ASUNTOS CONSTITUCIONALES DE LA ASAMBLEA LEGISLATIVA Y EL PLENO DE LA CORTE SUPREMA DE JUSTICIA

### CONSIDERANDO:

Que el artículo 108 de la Ley 23 de 1 de junio de 2001 "Que modifica y adiciona artículos al Código Judicial y dicta disposiciones urgentes para agilizar y mejorar la eficacia de la justicia", autorizó a la Comisión de Gobierno, Justicia y Asuntos Constitucionales de la Asamblea Legislativa y al Órgano Judicial, para que elaboren una ordenación sistemática de las disposiciones no reformadas del Código Judicial y de las nuevas disposiciones de dicha Ley, en forma de texto único, con una enumeración corrida de artículos, comenzando con el número uno;

Que emprendida la tarea así encomendada, la Comisión de Gobierno, Justicia y Asuntos Constitucionales de la Asamblea Legislativa y el Órgano Judicial acordaron, como reglas para el reordenamiento, suprimir las disposiciones declaradas totalmente inconstitucionales; excluir los párrafos, frases o palabras declaradas inconstitucionales cuya supresión no alteró el sentido de la norma, y conservar las frases declaradas parcialmente inconstitucionales, si con la exclusión se altera el sentido de la disposición, haciendo el llamado correspondiente; incluir las disposiciones adicionadas o modificadas al Código Judicial por las leyes 38 de 10 de julio de 2001 y 39 de 19 de julio de 2001; revisar y ajustar las referencias normativas de las disposiciones reordenadas; y corregir los errores gramaticales, de construcción y sistematización consistentes con la técnica legislativa moderna;

Que la revisión integral del Código Judicial, permitió establecer que un número plural de sus disposiciones contienen referencias a entidades públicas y figuras jurídicas desaparecidas, reemplazadas o suprimidas, que demandan su readecuación y ajuste correspondiente, en la cual, además, deben ser acogidas las observaciones que surjan a partir del presente reordenamiento.

### RESUELVEN:

1. Adoptar el Texto Único del Código Judicial de la República de Panamá, ordenado por el artículo 108 de la Ley 23 del 1 de junio de 2001.

2. Ordenar la publicación en la Gaceta Oficial del Texto Único del Código Judicial de la República de Panamá, adoptado en virtud de la presente Resolución, conjuntamente con ésta.

### COMUNÍQUESE Y CÚMPLASE

Dada en la ciudad de Panamá, a los treinta días del mes de agosto del año dos mil uno.

**Por La Comisión de Gobierno, Justicia y Asuntos Constitucionales**

**Por la Corte Suprema de Justicia**

**H.L. RUBÉN AROSEMENA V.**
**Presidente**

**MAG. MIRTZA F. DE AGUILERA**
**Presidenta**

**JOSÉ GÓMEZ NÚÑEZ**
**Secretario General de la Asamblea Legislativa**

---

[1] Publicada en la Gaceta Oficial 24.384 de 10 de septiembre de 2001

conflicto entre una norma del Código Judicial y las disposiciones de las leyes N° 135 de 1943 y N° 33 de 1946 debe darse aplicación preferente a estas últimas, por ser especiales". (Sentencia de 29 de enero de 1992 del Pleno de la Corte Suprema de Justicia). Revista Juris, Año 2, N° 5, Pág. 556, Sistemas Jurídicos, S.A. R.J. de enero de 1992, Pág. 94.

**[1]ART. 99.** Las sentencias que dicte la Sala Tercera, en virtud de lo dispuesto en esta Sección, son finales, definitivas y obligatorias; no admiten recurso alguno, y las de nulidad deberán publicarse en la Gaceta Oficial.

## Sección 6ª
### Sala Cuarta, de Negocios Generales

**ART. 100.** A la Sala Cuarta corresponde:
1. Decidir los impedimentos del Director General del Registro Público y del Director General de Registro Civil, si no fueren en el último caso atribuidos a otro Tribunal;
2. Examinar las resoluciones judiciales pronunciadas en país extranjero, incluso las arbitrales, para el efecto de decidir si pueden ser o no ejecutadas en la República de Panamá, sin perjuicio de lo estipulado en los tratados públicos;

**JURISPRUDENCIA. Exequátur – Laudo marítimo.** *Procede el trámite de exequátur ante la Sala Cuarta inclusive tratándose de sentencias arbitrales marítimas.*

"Ahora bien, el Pleno es de la opinión que le asiste la razón a la amparista, ya que la actuación del Tribunal demandado constituye una infracción a la garantía del debido proceso, porque, se dio una marcada usurpación de competencia al entrar a ejecutarse una decisión proferida por un Tribunal Arbitral extranjero, sin antes ser presentada ante la instancia correspondiente (Sala Cuarta de Negocios Generales) para su debido examen.

Asimismo, el Pleno manifiesta que la infracción es clara, porque tanto una norma introducida en el Código Judicial (artículo 100, numeral 2), como las normas contenidas en un cuerpo normativo establecido especialmente para

la jurisdicción marítima, establecen con claridad que negocios como el que es objeto de la acción de amparo bajo examen, tienen que ser previamente presentado ante la Sala Cuarta de Negocios Generales, para que ésta a su vez decida si pueden o no ser ejecutables en nuestro país.

Tal como expresa la apoderada judicial de la amparista, desde 1982 el Código de Procedimiento Marítimo, contenía un procedimiento de ejecución de resoluciones extranjeras, específicamente, en los artículos 422 al 431, pero hay quienes señalan que podría pensarse que el mismo no dejaba claro si el tema debatido era competencia de los Tribunales Marítimos o de la Sala Cuarta de Negocios Generales. Sin embargo, atinadamente, bajo sentencia de 20 de marzo de 1990, esa misma Sala de la Corte Suprema de Justicia manifestó que a pesar que el Tribunal Marítimo tenía competencia para ejecutar laudos arbitrales en materia marítima dictados por tribunales extranjeros, no contaba con la facultad de otorgar el Exequátur. Es decir, la facultad de autorizar la ejecutabilidad de esa decisión arbitral dictada en el extranjero, ya que es exclusiva de la propia Sala Cuarta de Negocios Constitucionales, en virtud del contenido del numeral 2 del artículo 100 del Código Judicial." (Sentencia del Pleno de la Corte Suprema de Justicia de 6 de enero de

3. Recibir los exhortos y comisiones rogatorias librados por tribunales extranjeros y determinar su cumplimiento en el territorio nacional y el funcionario o tribunal que debe cumplirlo;
4. Declarar quiénes reúnen las condiciones necesarias para ejercer la abogacía y para desempeñar el cargo de Magistrado de Tribunal Superior de Distrito Judicial;
5. Revisar y aprobar las tarifas de honorarios que establezcan los Colegios o Asociaciones de abogados;
6. **[2]Proponer las reformas o modificaciones que requieran las leyes, presentando a la Asamblea**

---

[1] Mediante sentencia de 14 de mayo de 2013, el Pleno de la Corte Suprema de Justicia declara la frase "no admiten recurso alguno" Constitucional.

[2] Mediante Sentencia de 12 de marzo de 2014, el Pleno de la Corte Suprema de Justicia declaró este ordinal, Inconstitucional (G.O. 27,615-A de 5 de septiembre de 2014).

Art. 100

*Legislativa el proyecto o proyectos necesarios, con una clara y minuciosa exposición de motivos;*

7. Expedir el Reglamento para régimen interno de la Corte y de las Salas, el reparto de casos y el arreglo de las Secretarías con miras a facilitar la marcha de los negocios atribuídos a la Corte. El Reglamento y sus modificaciones deberán publicarse en la Gaceta Oficial o en el Registro Judicial;

8. Revisar y aprobar con las enmiendas que estime necesarias el Reglamento para el régimen interno de todos los Tribunales y Juzgados de la República;

9. Aplicar a particulares, litigantes y abogados, las sanciones correccionales y disciplinarias que señale la Ley;

10. [1]Cuidar de que los fallos del Pleno y de las Salas sean oportunamente publicados en el Registro Judicial;

11. Conocer de las apelaciones contra las sanciones correccionales impuestas individualmente por los Magistrados;

12. Evacuar los informes que el Órgano Ejecutivo, la Asamblea legislativa y el Procurador General de la Nación, pidan a la Corte relativos a la administración de justicia, a la organización y régimen de los tribunales y a los asuntos económicos de los mismos;

13. Conocer de todos los asuntos que le atribuye el Título XII, del Libro I de este Código;

14. [2]Para cumplir las funciones especificadas en los dos numerales que anteceden, la Sala de Negocios Generales tiene potestad suficiente para exigir de todos los empleados del Órgano Judicial y de la administración pública y las entidades autónomas o semiautónomas todos los informes que juzgue necesarios sobre los negocios que cursan o han cursado en los Tribunales y sobre datos que existan en las oficinas respectivas y para pedirles todos los informes que consideren valiosos para el mejor cumplimiento del Título XII, Libro I de este Código;

15. Aprobar, cada dos años, la lista de Auxiliares de la Jurisdicción que actuarán en los procesos;

16. De las cuestiones que se susciten entre dos o más Municipios cuando éstos obren en su carácter de persona jurídica en el campo del derecho privado;

17. Conceder licencia a todos los funcionarios del Órgano Judicial para llevar a cabo estudios o adiestramientos relacionados con las funciones que desempeñan, oído el concepto favorable del Jefe inmediato o de la mayoría de los Magistrados cuando se trate de un Tribunal colegiado;

18. Dar cuenta a la Asamblea Legislativa de las dudas, vacíos, contradicciones e inconvenientes que se vayan observando en la aplicación de las leyes civiles, penales, mercantiles y judiciales;

19. [3]Determinar la suspensión o remoción del Contralor General, o Subcontralor General de la República; y

20. Dirigir la edición del Registro Judicial para que se publique regularmente.

---

[1] **VER** Acuerdo 361 de 30 de junio de 2003 (G.O. 24.861 de 7 de agosto de 2003), por el cual se eleva el Departamento de Relatoría a Dirección de Registro Judicial.

[2] **VER** Acuerdo 363 de 3 de octubre de 2002 (G.O. 24.734 de 5 de febrero de 2003), por el cual se crea el Centro de Estadísticas Judiciales.

[3] **VER** Constitución Política, Art. 279 en concordancia con el Art. 4 de la Ley 32 de 8 de noviembre de 1984 (G.O. 20.188 de 20 de noviembre de 1984), el cual señala que el Contralor y el Sub Contralor General de la República, no podrán ser suspendidos ni removidos sino por la Corte Suprema de Justicia, con fundamento en las causas que contempla la Ley.

SIJUSA

21. [1]Llevar un registro de los abogados y firmas de abogados que actúen como custodios locales autorizados de certificados de acciones emitidas al portador de conformidad con la ley, y aplicar las sanciones que correspondan por incumplimiento de las obligaciones en virtud del ejercicio de la actividad de custodia de los certificados de acciones emitidas al portador.

CAPÍTULO II

## Repartos y Substanciación de los Negocios y Modos de Dirimir los Desacuerdos

**ART. 101.** Las demandas, recursos, peticiones e instancias, formulados ante la Corte Suprema de Justicia, y los negocios que hayan de ingresar por alguna razón en ella, deberán dirigirse al Presidente de la Corte si competen al Pleno de ésta o a la Sala de Negocios Generales; y a los Presidentes de las Salas Primera, Segunda y Tercera, si se tratare, respectivamente, de negocios civiles, penales, contencioso – administrativos y laborales, y se hará la presentación ante el Secretario General o de la Sala correspondiente, quien debe dejar constancia de ese acto.

**JURISPRUDENCIA. Recurso de casación.** *El recurso de casación penal, debe dirigirse al Magistrado Presidente de la Sala Segunda de lo Penal.*

El Licenciado GERARDO PUERTO GORDON ha interpuesto recurso de casación penal en el fondo contra la resolución de 19 de julio de 1999, expedida por el Tribunal Superior del Tercer Distrito Judicial, que confirma la sentencia de 9 de diciembre de 1998, mediante la cual el Juzgado de Circuito de lo Penal del Circuito Judicial de Bocas del Toro condena a SEGUNDO MENDOZA MENDOZA a la pena de ocho (8) años de prisión, como autor de un delito contra la salud pública relacionado con drogas.

Vencido el término de lista que establece el artículo 2439 del Código Judicial, corresponde a la Sala examinar el libelo de formalización del recurso, a objeto de decidir sobre su admisibilidad.

A tal efecto, prima facie se advierte que el escrito se dirige a los "Honorables Señores Magistrados de la Corte Suprema de Justicia, Sala Segunda Penal", contraviniendo lo que prescribe el artículo 101 del Código Judicial, según el cual el recurso sub júdice debe dirigirse al Magistrado Presidente de esta Sala. (Sentencia de 22 de marzo de 2000, Corte Suprema de Justicia, Sala de lo Penal) R.J. de Marzo de 2000, Pág. 230. [1]

**ART. 102.** Tres veces por semana necesariamente, y en cualquier momento, tratándose de negocios urgentes deben el Presidente de la Corte y los Presidentes de Sala, asistidos de los respectivos secretarios, repartir los negocios que hayan ingresado. Este reparto es acto de mero trámite y puede revocarse o reformarse si se hiciera contrariando disposiciones expresas de la Sección 2ª del Capítulo anterior.

**ART. 103.** Para determinar el turno, los nueve Magistrados serán registrados en una lista por orden alfabético de apellidos, si se trata de negocios atribuidos al Pleno. Este turno no se alterará, sino en virtud de cambios ocurridos en el personal titular del Pleno.

**ART. 104.** Los días y horas señalados para hacer los repartos se darán a conocer al público por medio de carteles fijados en lugares visibles de la Secretaría. El acto de repartir los negocios del Pleno y de las Salas será siempre público y al mismo tienen derecho a concurrir los apoderados, defensores, litigantes y encausados.

**ART. 105.** El reparto de los negocios del Pleno y de las Salas servirá para designar el Magistrado que debe sustanciar el incidente de impedimento o recusación de otro Magistrado, y para los demás casos semejantes.

**ART. 106.** En el Pleno y en las Salas, los asuntos, expedientes, demandas y recursos, serán todos numerados; luego se insacularán bolas numeradas de manera que los de éstas correspondan con los de aquéllos.

---

[1] Aparece tal como fue adicionado por el Art. 24 de la Ley 47 de 6 de agosto de 2013 (G.O. 27.346-C de 6 de agosto de 2013).

pero en cuanto a frutos, intereses, daños y perjuicios y costas, puede completarse, modificarse o aclararse, de oficio, dentro de los tres días siguientes a su notificación o a solicitud de parte hecha dentro del mismo término.

También puede el Juez dictar una sentencia aclarar las frases obscuras o de doble sentido, en la parte resolutiva, lo cual puede hacerse dentro de los términos fijados en la primera parte de este artículo.

Toda decisión judicial, sea de la clase que fuere, en que se haya incurrido, *en su parte resolutiva*, un error *pura y manifiestamente aritmético o de escritura o de cita*, es corregible y reformable en cualquier tiempo por el juez respectivo, de oficio o a solicitud de parte, pero sólo en cuanto al error cometido.

**JURISPRUDENCIA. Aclaración de sentencia.** *La solicitud de aclaración de sentencia no es un recurso; la misma debe ceñirse a los supuestos que contempla la Ley.*

"Desea dejar sentado la Sala que las facultades otorgadas oficiosamente al Juez o a las partes en este artículo 986 del Código Judicial, no es técnicamente un recurso, por cuanto que, tal como la misma norma lo expresa, la sentencia mantendrá su resolución en cuanto a lo principal; las complementaciones, modificaciones o aclaraciones sólo son cuestiones de tipo accesorio." (Sentencia de 31 de mayo de 1994. Sala Primera; Recurso de casación; Transporte y Equipo, S.A. vs. Aseguradora Mundial de Panamá, S.A.) Revista Juris, Año 3, N° 10, Pág. 180, Sistemas Jurídicos, S.A. R.J. de mayo de 1994, Pág. 237.

**ART. 1000.** Los recursos que se hayan interpuesto o se interponga contra la sentencia, se entenderán interpuestos también contra las adiciones, modificaciones y aclaraciones a que se refieren los artículos anteriores, a menos que el recurrente exprese lo contrario o que les sean favorables. Además, contra dichas adiciones, modificaciones y aclaraciones se pueden interponer los mismos recursos que contra la sentencia; y al efecto se notificarán en la misma forma que ésta a las partes.

## CAPÍTULO IV

### Notificaciones y Citaciones

[1]**ART. 1001.** Las notificaciones a las partes deberán hacerse siempre por medio de edicto, salvo en los casos que más adelante se expresan El edicto contendrá la expresión del proceso en el que ha de hacerse la notificación, la fecha y la parte resolutiva de la providencia, auto o sentencia que deba notificarse.

El edicto será fijado al día siguiente de dictada la resolución por el Juez y su fijación durará cinco días.

Este edicto se agregará al expediente con expresión del día y hora de su fijación y desfijación, y la notificación surtirá efectos legales desde la fecha y hora en que fuera desfijado.

Los edictos llevarán una numeración continua y con copia de cada uno de ellos se formará un cuaderno que se conservará en Secretaría.

En los Expedientes Judiciales Electrónicos, los edictos serán generados, publicados y almacenados únicamente en el Sistema Automatizado de Gestión Judicial. En todo caso, serán fijados y agregados en el respectivo Expediente Judicial Electrónico e igualmente podrán ser examinados en la consulta pública del Sistema.

[2]**ART. 1002.** Se notificarán personalmente:
1. Las resoluciones que corran en traslado la demanda, la demanda corregida, la demanda de reconvención, la demanda de coparte y, en general, la primera resolución que deba notificarse en

[1] El último párrafo aparece tal como fue adicionado por el Art. 49 de la Ley 75 de 18 de diciembre de 2015 (G.O. 27931-B de 18 de diciembre de 2015).
[2] Aparece tal como fue subrogado por el Art. 50 de la Ley 75 de 18 de diciembre de 2015 (G.O. 27931-B de 18 de diciembre de 2015). VER Art. 107 de la Ley 23 de 2001 (G.O. 24.316 de 5 de junio de 2001), que dice: "Transcurridos sesenta (60) días calendarios después de la entrada en vigencia de la

  
Art. 1003

todo proceso a la parte contraria a la proponente.

2. La sentencia de primera instancia.
3. La resolución en que se decrete apremio corporal o sanción pecuniaria.
4. Las resoluciones a que aluden los artículos 499, 552, 567, 604, 607, 608, 609, 610, 646, 747, 769, 865, 1358,1363, 1367, 1375, 1377, 1397, 1398, 1437, 1439, 1641, 1653, 1802, 1914 y 1929, así como las demás que expresamente señale la ley.

En el caso de los demandados o terceros, la notificación personal podrá surtirse también con sus representantes o apoderados.

**ART. 1003.** Las resoluciones dictadas en segunda instancia se notificarán por edicto, salvo aquéllas que dispone la Ley notificar personalmente. Si se hubiere de hacer la notificación, dos meses después de haber ingresado el proceso al despacho del Magistrado Sustanciador para fallar, se entregará copia de la resolución que se va a notificar a la persona que se encuentra en la oficina, habitación o lugar designado por el apoderado y, de no encontrarse persona alguna en dicha dirección se remitirá copia de la resolución por correo recomendado a la dirección postal dada por el apoderado y a falta de ella, a su dirección o a entrega general. Luego del informe de la entrega

presente Ley, se entenderán legalmente notificadas todas aquellas resoluciones que se encuentren pendientes de notificación personal a los apoderados en aquellos procesos civiles que hayan estado paralizados por más de dos (2) meses. Se exceptúan las demandas que se encontraren pendientes de surtir el traslado." La Ley 23 entró en vigencia el 5 de septiembre del 2001, por tanto el plazo al que alude este artículo, se cúmplió el 5 de noviembre de 2001, a partir de este día, están notificadas personalmente, *por imperio de la Ley*, todas aquellas resoluciones pendientes de notificación personal a los apoderados judiciales, en los procesos que hayan estado paralizados por más de dos meses.

de las copias o del informe sobre la remisión de éstas por correo, se fijará un edicto por el término de cinco días, de conformidad con el artículo 1001 y quedará hecha la notificación desde su desfijación.

La falta de remisión de la copia del edicto no anula ni invalida la notificación, sin perjuicio de las sanciones disciplinarias que puedan imponerse al Secretario por esta omisión.

**JURISPRUDENCIA. Notificación – errónea.** *Adolece de nulidad la notificación, dado que se envió la sentencia por correo a una dirección inadecuada.*

"Realizado el análisis jurídico que corresponde, esta Colegiatura debe señalar que no comparte el criterio del Apelante, y; por el contrario, considera que sí es nulo el acto de notificación de la Sentencia de segunda instancia realizada a la Parte demandante, a un domicilio distinto del que había designado, para los fines de recibir las notificaciones en la sede del Tribunal.

Lo anterior es así, porque a fojas 148 del expediente, Tomo I, consta que el Tribunal Superior del Segundo Distrito Judicial, a solicitud de la Parte demandada, dictó el Auto No. 5 de 5 de enero de 2006, por medio del cual ordenó la corrección de la demanda, en el sentido de que se consignara la dirección de los apoderados de la Parte actora, para recibir las notificaciones en la Ciudad de Santiago, sede del Tribunal, requerimiento este que fue cumplido por la Parte demandante del Proceso, mediante la presentación del escrito de la demanda corregida de fecha 20 de enero de 2006, visible a foja 156 del expediente, Tomo I.

Sin embargo, y a pesar que la circunstancia antes descrita se encontraba acreditada en Autos, la Secretaría Judicial del Tribunal Superior, procede a notificar la Sentencia de segunda instancia remitiendo de manera directa copia de la misma, por correo recomendado (Ver foja 2,062 del expediente, Tomo V), pero a un domicilio distinto al señalado por la Parte demandante para los fines de recibir las notificaciones en la sede del Tribunal. Luego fijó el edicto por el término de cinco (5) días, de conformidad con el artículo 1001 del Código Judicial, dando por notificada la decisión. (Ver foja 2,066 del expediente, Tomo V)

Para los efectos de la notificación de las Resoluciones dictadas en segunda instancia después de dos meses de haber ingresado el Proceso al despacho, es aplicable el procedimiento contenido en el artículo 1003 del Código Judicial, cuyo texto pasamos a transcribir para mayor ilustración:

SIJUSA

"Artículo 1003. ...

Conforme lo dispuesto en el artículo precitado, no le queda duda a esta Sala que la Secretaría Judicial del Tribunal Superior no cumplió a cabalidad con el procedimiento de notificación allí contenido, porque si la Parte demandante tenía su domicilio fijado en la Ciudad de Santiago para los efectos de recibir las notificaciones en la sede del Tribunal, era en ese lugar donde debió ser notificada y no en la Ciudad de Panamá como erróneamente lo hizo." (Sentencia de la Sala Primera de lo Civil de 26 de abril de 2010) R.J. de abril de 2010, Pág. 259.

**ART. 1004.** Las notificaciones personales se practicarán haciendo saber la resolución del Juez a aquellos a quienes deba ser notificada, por medio de una diligencia en que se expresará en letras, el lugar, hora, día, mes y año de la notificación, todo lo que firmarán, el notificado o un testigo por él, si no pudiere o no quisiere firmar y el Secretario, expresando éste debajo de su firma, su cargo. En todo caso de notificación personal se dará copia de la resolución que se notifique.

Los Secretarios podrán encomendar a un empleado del Tribunal y bajo su responsabilidad, las notificaciones personales que ellos no puedan practicar por sí mismos, autenticándolas en la forma indicada en el artículo anterior. Las citaciones serán hechas por el empleado que designe el Secretario o por los interesados autorizados por el Secretario, quienes podrán pedir el auxilio de la Fuerza Pública en caso necesario.

Los Secretarios tienen obligación de notificar personalmente las resoluciones que deban hacerse saber en otra forma, si las partes lo solicitan siempre que no se haya efectuado la notificación de la respectiva resolución. Puede asimismo hacerse la notificación personal aún después de fijado el edicto y antes de su desfijación.

Los Secretarios y empleados sólo podrán hacer estas notificaciones dentro de la circunscripción donde tiene competencia el Juez por cuya cuenta obren.

[1]**ART. 1005.** El Pleno de la Corte Suprema de Justicia podrá, mediante acuerdo, crear y organizar centros especializados que colaboren con los Tribunales, en la práctica de notificaciones, citaciones y demás servicios comunes, para el mejor funcionamiento de la administración de justicia. Igualmente, en ejercicio de esta facultad, podrá crear centros para la solución alternativa de conflictos, los cuales se regirán por el Decreto Ley 5 de 1999, sobre arbitraje de la conciliación y de la mediación.

**ART. 1006.** Las providencias y medidas que se dicten o adopten en el curso de las audiencias y diligencia, se considerarán notificadas el día en que éstas se celebren, aunque no haya concurrido una de las partes.

---

[1] Con respecto a las instancias que colaboran con los Juzgados en la realización del servicios comunes y notificación, **VER** Acuerdo 229 de 16 de marzo de 2011, que crea centros de comunicaciones (G.O. 26.774 de 28 de abril de 2011); **VER** Acuerdo 101 de 12 de abril de 2002 (G.O. 24.544 de 3 de mayo de 2002), por el cual se crea la Dirección Ejecutiva Nacional de Servicios Comunes en el Órgano Judicial. Se integran en esta Dirección los diversos Acuerdos que habían venido reglamentando y organizando la ejecución de las comunicaciones judiciales, en tal sentido **VER** Acuerdo 437 de 14 de diciembre de 2000 (G.O. 24.210 de 29 de diciembre de 2000), que crea el Centro de Comunicaciones Judiciales; Acuerdo 45 de 2002 (G.O. 24.521 de 1 de abril de 2002); Acuerdo 123 de 2002 (G.O. 24.705 de 23 de diciembre de 2002); Acuerdo 257 de 2003 (G.O. 24.798 de 30 de enero de 2003); **VER** Acuerdo 411 de 2005 (G.O. 25.392 de 23 de septiembre de 2005) y Acuerdo 53 de 15 de febrero de 2006 (G.O. 25.509 de 23 de marzo de 2006). Con respecto a los Centros para Solución alternativa de Conflictos, **VER** Acuerdo 294 de 6 de septiembre de 2001 (G.O. 24.404 de 8 de octubre de 2001), por el cual se crean los Centros de Mediación en el Órgano Judicial, con la reforma que le hace el Acuerdo 228 de 19 de junio de 2003 (G.O. 24.877 de 1 de septiembre de 2003). **VER** Acuerdo 330 de 12 de junio de 2007, por el cual se crean los Centros de Custodia de Expedientes Vigentes (G.O. 26.097 de 4 de agosto de 2008).

de la demanda por medio de exhorto o despacho enviado al Juez de Circuito o Municipal, según donde se encuentre el demandado, remitiéndole copia de ella y de los documentos que con la misma se hubieren presentado, requiriéndolo para que comparezca a estar a derecho en el proceso y a contestar la demanda en el término de veinte días.

**ART. 1012.** Si el demandado estuviere en el extranjero y fuere de domicilio o residencia conocido, sin perjuicio de lo que dispongan los tratados o convenios ratificados por la República, será notificado por medio de exhorto o carta rogatoria que se dirigirá por conducto del Órgano Ejecutivo y de los agentes diplomáticos o consulares de Panamá o de una nación amiga, en observación de las prescripciones del derecho internacional.

En este caso, se dará traslado al demandado para que conteste la demanda en un término de cuarenta días, con apercibimiento de la Ley.

El demandante tendrá la facultad para hacer que se cite al demandado a comparecer a estar a derecho en el proceso por medio de edicto emplazatorio, que permanecerá fijado veinte días, siempre que el exhorto o la carta rogatoria se demorase para su diligenciamiento más de cuatro meses desde la fecha en que se envió, o que regresase con la indicación de que no es viable o que no se puede practicar. En estos casos, el edicto deberá publicarse por cinco días consecutivos en un periódico de amplia circulación nacional, con el apercibimiento de que si no comparece el demandado transcurridos veinte días desde la última publicación en el periódico, se le nombrará un defensor con el que se seguirá el proceso.

una carga del Tribunal una vez la parte hace el *señalamiento exacto del domicilio del demandado en el país extranjero.*

"Para los efectos del presente Proceso, resulta irrelevante determinar si la solicitud por escrito de la emisión de un exhorto o carta rogatoria se haya presentado con posterioridad dentro o después de los tres meses de presentada la Demanda, cuando el demandante fue lo suficientemente diligente de indicar dentro de dicha Demanda, el domicilio específico y detallado en territorio extranjero, de uno de los Demandados.

Aceptar que la emisión del trámite contemplado en el artículo 1012 del Código Judicial, para la emisión de exhortos o cartas rogatorias a otro país resulta procedente únicamente sí es solicitado por el Demandante, a pesar que en la Demanda se hizo el señalamiento respectivo, es endilgar una responsabilidad a la parte que no le compete, y que es propia del Tribunal, menos aún en proceder a levantar un secuestro con base a tal suposición.

El análisis previamente expuesto conlleva a esta Sala a considerar que le asiste la razón al Recurrente, en cuanto al cargo de ilegalidad endilgado a la Resolución recurrida, toda vez que se considera existió la omisión de esperar el cumplimiento del trámite de notificación por exhorto o carta rogatoria señalado en el artículo 1012 del Código Judicial, por lo que esta Sala procederá a invalidar la Resolución recurrida y ordenar en consecuencia que se cumpla con el trámite omitido." (Sentencia de la Sala Primera de lo Civil de 16 de diciembre de 2011) R.J. de diciembre de 2011, Pág. 1260.

**ART. 1013.** Si el demandado estuviere en el extranjero y se desconociera su domicilio o residencia, podrá el demandante hacer que se cite al demandado para que comparezca a estar a derecho en el proceso, por medio de edicto emplazatorio que permanecerá fijado veinte días, el cual deberá publicarse por cinco días consecutivos en un periódico de amplia circulación nacional, con el apercibimiento de que si no comparece transcurridos cuarenta días desde la última publicación en el periódico, se le nombrará un defensor con el que se seguirá el proceso.

La manifestación de que desconoce el paradero del demandado la hará el demandante o su apoderado, según las prescripciones establecidas en el artículo 1016, cuyas garantías procesales a favor del demandado ausente también se aplicarán en este caso.

reiterada por la Sala Tercera de la Corte. Sobre el particular son consultables las resoluciones de: 21 de julio de 1995, Magistrado Sustanciador Edgardo Molino Mola; 24 de enero de 1996, Magistrado Edgardo Molino Mola; 3 de diciembre de 1997, Magistrada Ponente Mirtza Angélica Franceschi de Aguilera; 10 de diciembre de 1998, Magistrada Ponente Mirtza Angélica Franceschi de Aguilera; 18 de enero de 1999, Magistrada Ponente Mirtza Angélica Franceschi de Aguilera; 13 de marzo de 1996, Magistrado Sustanciador Arturo Hoyos; 26 de mayo de 1997 Magistrado Ponente Arturo Hoyos. (Sentencia de 3 de febrero de 1999, Sala de lo Contencioso Administrativo de la Corte Suprema de Justicia). Revista Juris, Año 8, Tomo II, Vol. 2, Pág. 84, Sistemas Jurídicos, S.A.

**ART. 1022.** Ninguna resolución judicial puede comenzar a surtir efectos antes de haberse notificado legalmente a las partes.

Se exceptúan las resoluciones que por disposición especial de la Ley deban cumplirse de inmediato, sin audiencia de la parte, como las que se decretan en procedimiento de secuestro, la de suspensión de términos y otras similares, expresamente previstas en este Código, las cuales serán notificadas después de cumplidas.

**ART. 1023.** Siempre que una persona figure en un proceso como representante de varias, se considera como una sola para el efecto de las notificaciones y demás diligencias semejantes.

[1]**ART. 1024.** En el acto de la notificación no se admitirá al notificado otra manifestación que la de apelación, casación, allanamiento, desistimiento, la ratificación de lo actuado, la renuncia de trámites y términos u otro acto de igual naturaleza. Puede también hacerse nombramiento de vocero, depositario, perito, testigo actuario, administrador o de cualquier otro cargo y la aceptación o no de esas designaciones.

---

[1] Aparece tal como fue subrogado por el Art. 42 de la Ley 15 de 7 de febrero de 2008 (G.O. 25.973 de 8 de febrero de 2008).

Dentro del Sistema de Gestión Judicial, las manifestaciones de que trata el párrafo anterior podrán realizarse por medio de documento electrónico.

**ART. 1025.** Las partes o sus apoderados pueden constituir de palabra o por escrito, voceros para los actos que deban surtirse verbalmente o para diligencias específicas. Si por escrito los constituyen, lo harán por medio de un memorial que pueden presentar los mismos voceros.

**ART. 1026.** Lo dispuesto en este Capítulo es sin perjuicio de lo que en procedimientos especiales se disponga expresamente sobre el modo de hacer las notificaciones.

**ART. 1027.** Las notificaciones hechas en forma distinta de las expresadas en este Código son nulas, e incurrirá el Secretario que las haga o tolere en una multa de cinco balboas (B/.5.00) a veinticinco balboas (B/.25.00) que le impondrá el Juez del conocimiento con la sola constancia de la notificación ilegalmente hecha, y será responsable de los daños y perjuicios que con ello haya causado. Sin embargo, siempre que del expediente resultare que la parte ha tenido conocimiento de la resolución que la motivó, la notificación surtirá sus efectos desde entonces. El Secretario no quedará relevado de su responsabilidad.

La petición de nulidad se tramitará por la vía de incidente.

## CAPÍTULO V
### Efectos de las Sentencias
#### Sección 1ª
#### Cosa Juzgada

**ART. 1028.** La sentencia ejecutoriada que en proceso contencioso decide la pretensión tiene fuerza de cosa juzgada en otro proceso cuando entre la nueva demanda y la anteriormente fallada hubiere:

Art. 1415 – Art. 1419

### Sección 3ª
### Reglas Especiales Sobre
### Arrendamientos Rústicos

**ART. 1415.** Por causas graves, como enfermedad del inquilino o trastornos económicos de consideración por el lanzamiento en locales o predios ocupados por empresas industriales o agrícolas, el Juez podrá conceder plazos adicionales para la desocupación que no excederá de una tercera parte de los que fije la Ley y siempre que se garanticen con el depósito en el Tribunal de las rentas que correspondan a estos plazos.

**ART. 1416.** Cuando según el contrato de arrendamiento el predio se hubiere arrendado para fines de pronto rendimiento, no se efectuará su restitución mientras no transcurra el tiempo en que deban cumplirse el ciclo natural de aquellos y haya sido recogida en la cosecha, a cuyo efecto el Juez señalará el plazo que estime razonable. No obstante, si el demandante ofrece pagar el valor que puedan tener los cultivos a la época de la recolección, se practicará el lanzamiento una vez cubierto su importe, según la estimación pericial que de ellos se haga.

**ART. 1417.** Durante el plazo de espera dado al demandado conforme al artículo anterior, aquél deberá seguir pagando los cánones estipulados en el contrato.

En el transcurso de dicho plazo no podrá el demandado efectuar nuevos siembros o cultivos y si los hiciere no impedirán ellos el lanzamiento ni estará obligado el demandante a indemnización alguna por tal concepto.

**ART. 1418.** Si el predio que debe restituirse hubiere sido arrendado para el mantenimiento de ganado y el demandado alega que tropieza con graves dificultades para traslado de los semovientes a otro bien, podrá el Juez, según las circunstancias, suspender la entrega y concederle un plazo prudencial para tal efecto.

En este caso tendrá aplicación lo dispuesto en el párrafo primero del artículo anterior.

### Sección 4ª
### Reconocimiento y Ejecución de
### Sentencia Extranjera

[1]**ART. 1419.** Las sentencias pronunciadas por Tribunales extranjeros y los fallos arbitrales extranjeros, tendrán en la República de Panamá la fuerza que establezcan los convenios o tratados respectivos.

Si no hubiere tratados especiales con el Estado en que se haya pronunciado la sentencia, ésta podrá ser ejecutada en Panamá, salvo prueba de que en dicho Estado no se da cumplimiento a las dictadas por los Tribunales panameños.

Si la sentencia procediera de un Estado en que no se dé cumplimiento a las dictadas por los Tribunales panameños, no tendrá fuerza en Panamá.

Sin perjuicio de lo que se dispone en tratados especiales, ninguna sentencia dictada en país extranjero podrá ser ejecutada en Panamá, si no reúne los siguientes requisitos:

1. Que la sentencia haya sido dictada a consecuencia del ejercicio de una pretensión personal, salvo lo que la Ley disponga especialmente en materia de sucesiones abiertas en países extranjeros;
2. Que no haya sido dictada en rebeldía, entendiéndose por tal, para los efectos de este artículo, el caso en que la demanda no haya sido personalmente notificada al

---

[1] Los Arts. 1419 al 1421 del Código Judicial que corresponden a los Arts. 1409 al 1411 de la Versión previa al reordenamiento, fueron derogados por el Art. 63 del Decreto Ley 5 de 8 de junio de 1999, sólo en lo que se refieren a laudos o sentencias arbitrales extranjeras.

SIJUSA

demandado, habiéndose ordenado la notificación personal por el Tribunal de la causa, a menos que el demandado rebelde solicite la ejecución;

3. Que la obligación para cuyo cumplimiento se haya procedido sea lícita en Panamá; y

4. Que la copia de la sentencia sea auténtica.

Se entiende por sentencia la decisión que decide la pretensión.

**JURISPRUDENCIA. Sentencia extranjera de divorcio.** *Es ejecutable la sentencia extranjera de divorcio. Se entiende asimilable la causal de divorcio al mutuo consentimiento.*

"Al verificar la documentación presentada y atendiendo a lo consagrado en el artículo 1419 del Código Judicial, la Sala advierte que de la lectura de la sentencia se desprende que esta fue dictada en el ejercicio de una pretensión personal en la cual los cónyuges manifestaron al Juez de la causa su conformidad con la disolución del vínculo matrimonial, tomándose en cuenta el acuerdo habido entre las partes con relación a la guarda reglamentación de visita, de igual forma la alimentación de la menor de edad; por otro lado ambos cónyuges renunciaron a la pensión alimenticia, esto permite concluir que no fue dictada en rebeldía.

En cuanto a la licitud de la obligación se observa que la sentencia de fecha 7 de diciembre de 2004, no viola el orden jurídico interno, las partes tenían más de dos (2) años de estar casados; si bien es cierto el tribunal extranjero no establece la causal; no obstante la sentencia que se pretende ejecutar en nuestro territorio contempla régimen de pensión alimenticia, custodia, lo que permite asimilarlo a la causal de "mutuo consentimiento", contemplada en el numeral 10 del artículo 212 del Código de la Familia.

"Artículo 212: Son causales de divorcio

1. El mutuo consentimiento de los cónyuges siempre que se cumplan los siguientes requisitos

2. Que el matrimonio tenga como mínimo dos años de celebrado.

3. Que las partes ratifiquen su solicitud de divorcio transcurridos dos meses desde la presentación de la demanda de divorcio y antes de los seis (6) meses de la citada presentación"

Concluye esta Sala que la sentencia cuyo reconocimiento y ejecución se solicita fue emitida en atención a una pretensión personal, no fue dictada en rebeldía, no viola el orden público interno, cumpliéndose con la norma que regula esta materia, por lo que debemos concordar con la recomendación del señor Procurador General de la Nación y acceder a

lo solicitado". (Sentencia de la Sala Cuarta de Negocios Generales de 12 de diciembre de 2011). R.J. de diciembre de 2011, Pág. 2241.

**JURISPRUDENCIA. Validación de testamento.**

"Analizada la anterior solicitud, resulta evidente que las sentencias de 13 de mayo de 1999, dictadas por la Corte de Circuito del Condado Dade del Estado de la Florida, Estados unidos de Norteamérica de conformidad con el artículo 1419 del Código Judicial, no cumplen con los requisitos que establece nuestro ordenamiento interno para reconocer y declarar ejecutable en la República de Panamá una resolución extranjera por medio del mecanismo del exequátur.

Con anterioridad la Sala reiteradamente ha mantenido su posición de que el acto de validación de testamento, tiene un carácter probatorio, lo que lo excluye del trámite de exequátur, pues el mismo no produce el efecto de cosa juzgada, postulado esencial para la declaratoria del exequátur, de conformidad con nuestra legislación. (Sentencia de 4 de febrero de 2000, Corte Suprema de Justicia, Sala Cuarta de Negocios Generales) R.J. de Febrero de 2000, pág. 518.

**ART. 1420.** La solicitud para que se declare si debe o no cumplirse una sentencia de Tribunal extranjero, será presentada a la Corte Suprema de Justicia, salvo que, conforme a los respectivos tratados, deba conocer del asunto otro Tribunal. La Corte dará traslado a la parte que deba cumplir la sentencia y al Procurador General de la Nación por el término de cinco días a cada uno y si todos estuvieren acordes en que debe ejecutarse, lo decretará así.

Si las partes no estuvieren acordes y hubiere hechos que probar, la Corte concederá un término de tres días para aducir pruebas y de quince días para practicarlas, sin perjuicio de conceder un término extraordinario para practicar pruebas en el extranjero. Vencido éste, oirá a las partes, dando sucesivamente a cada una un término de tres días, expirado el cual decidirá si debe o no ejecutarse la sentencia.

Si la Corte declara que debe ejecutarse la sentencia se pedirá su ejecución ante el Tribunal competente.

La autenticidad y eficacia de las sentencias dictadas en país extranjero se establece de conformidad con el artículo 877.

TAB 4

Panamanian Judicial Code, Arts. 100, 1002, 1004, 1012, 1022, 1419
(English Translation)



City of New York, State of New York, County of New York

I, Wendy Poon, hereby affirm that the following is to the best of my knowledge and belief, a true and accurate Translation from Spanish to English of the document "Panamanian Judicial Code, Arts. 100, 1002, 1004, 1012, 1022, 1419"

_____

Wendy Poon
TransPerfect Translations International, Inc.

Sworn to before me this
January 27, 2017

_____

Signature, Notary Public

ALITASHA YOUNGER
Notary Public - State of New York
No. 01YO6335137
Qualified in KING County
Commission Expires Dec 28, 2019

_____

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

Panamanian Judicial Code

## Article 100.

The Fourth Chamber of the Court is responsible for:

1.    Deciding the impediments of the General Director of the Public Registry and of the General Director of Civil Registry, if the case was not attributed to another Court;

2.    Examining judicial and arbitral decisions pronounced in foreign countries, for the purpose of deciding whether or not they may be executed in the Republic of Panama, without prejudice to the provisions of public treaties;

3.    Receiving rogatory orders and letters rogatory issued by foreign courts and determining its compliance in the national territory and the officer or court that must comply;

4.    Declaring who is eligible to practice law and to serve as Judge of the Superior Court of the Judicial District;

5.    Reviewing and approving the fees established by the Bar Associations or Lawyer Associations;

6.    **Proposing the amendments or modifications required by law, presenting the Legislative Assembly the necessary project(s) with a clear and elaborate disclosure of motives;**

7.    Issuing the Rules of Procedure for the internal regime of the Court and the Chambers, the distribution of cases and the arrangement of the Secretariats in order to facilitate the business attributed to the Court. The Regulation and its modifications must be published in the Official Gazette or in the Judicial Record;

8.    Reviewing and approving amendments that the Regulation for the internal regime of all the Tribunals and Courts of the Republic deems necessary;

9.    Applying to individuals, litigants and lawyers, the correctional and disciplinary sanctions that the Law establishes;

10.   Ensuring that the decisions of the Supreme Court Plenary and the Chambers of the Supreme Court are published in the Judicial Records;

11.   Reviewing the appeals against the penal sanctions imposed individually by the Judges;

12.   Evacuating the reports that the Executive Body, the Legislative Assembly and the Attorney General of the Nation request from the Court concerning the administration of justice, the organization and regime of courts and their economic affairs;

13.     Reviewing all matters attributed by Title XII, of Book I of this Code;

14.     In order to perform the functions specified in the two preceding paragraphs, the Chamber of General Business Matters has sufficient power to demand from all employees of the Judicial Branch and the Public Administration and the autonomous or semiautonomous entities all the reports it deems necessary on the businesses made in the Courts and on data that exists in the respective offices and to request all the reports that they consider valuable for the better compliance of Title Xll, Book I of this Code;

15.     Approving, every two years, the list of the Auxiliaries that will act in the processes;

16.     The issues that may arise between two or more Municipalities when they act in their character of legal person in the field of the private law;

17.     Granting license to all officials of the Judicial Branch to carry out studies or training related to the functions they perform, having heard the favorable opinion of the immediate Chief or of the majority of the Judges in the case of a collegiate Tribunal;

18.     Informing the Legislative Assembly of the doubts, gaps, contradictions and inconveniences that may be observed in the application of civil, criminal, commercial and judicial laws;

19.     Determining the suspension or removal of the Comptroller General or Subcomptroller-General of the Republic; and,

20.     Directing the edition of the Judicial Record so that it is published regularly.

21.     Keeping a register of lawyers and law firms acting as authorized local custodians of share certificates issued to the bearer in accordance with the law, and applying the corresponding sanctions for breach of obligations under the exercise of custody activity of the share certificates issued to the bearer.

**Article 1002**

The following shall be served personally:

1.     Orders to serve summons of complaints, amended complaints, counterclaims, cross-claims, and, in general, the first order to be served upon the counterparty of the proponent in any court proceeding.

2.     Judgments of Court of First Instance.

3.     Orders whereby an execution on the person or a financial penalty is adjudged.

4.     The orders referred to in §§ 499, 552, 567, 604, 607, 608, 609, 610, 646, 747, 769, 865, 1358, 1363, 1367, 1375, 1377, 1397, 1398, 1437, 1439, 1641, 1653, 1802, 1914, and 1929, as well as those expressly provided for in the Law.

As for defendants or third parties, personal service may also be served upon legal representatives or legal attorneys.

### Article 1004.

Personal service shall be served, informing the Judge's order, on those persons to whom it shall be served, by means of written order which shall contain, in words, the place, time, day, month, and year of service, all of which shall be signed by the party being served or a witness on his/her behalf, if such party may not or does not want to sign it, and the Court Clerk, stating his/her position below the signature. In all the cases of personal service, a copy of the order being served shall be delivered.

Court Clerks may mandate a Court employee, under his/her responsibility, the personal service they cannot serve by themselves, authenticating them as indicated in the preceding section. Summons shall be served by the employee the Clerk had appointed or by the interested parties the Clerk had authorized thereto, who may call for help from the Public Forces if necessary.

Court Clerks have an obligation to personally serve all orders that must be made known in a different manner if the parties request so, provided the respective order had not been served yet. Personal service may likewise be made even after a service by publication had been posted and before removal thereof.

Court Clerks and employees may only serve these notices within the venue where the Judge, on whose behalf they act, has the authority.

### Article 1012.

If the defendant is abroad and their domicile or residence is known, without prejudice to the provisions of treaties or conventions ratified by the Republic, they will be notified by means of a letter rogatory that will be addressed through the Executive Branch and the Diplomatic or consular agents of Panama or of a friendly nation, in observance of the prescriptions of international law.

In this case, the claim will be transferred to the defendant so that they may answer the lawsuit in a term of forty days, under penalty of the law.

The plaintiff shall have the power to have the defendant summoned to appear in the process by means of an edict, which shall remain fixed for twenty days, provided that the letter rogatory was delayed for its execution more than four months from the date it was sent, or returned with an indication that it is not feasible or practicable. In these cases, the edict shall be published for five consecutive days in a newspaper of wide national circulation, with the warning that if the respondent does not appear after twenty days from the last publication in the newspaper, he will be provided a lawyer with whom the process will continue.

### Article 1022.

No judicial decision may begin to take effect before the parties have been legally notified.

Resolutions that by special provision of the law must be fulfilled immediately, without a hearing of the party are excluded, such as those decreed in seizure procedures, suspension of terms and other similar procedures, expressly provided in this Code, which will be notified upon completion.

**Article 1419.**

The judgments issued by foreign tribunals and the foreign arbitral awards, shall have the force established by the respective agreements or treaties in the Republic of Panama.

If there are no special treaties with the State where the judgment was issued, it may be executed in Panama, except if it is proven that such State does not comply with the judgments issued by Panamanian Courts.

If the decision comes from a State that does not comply with judgments issued by Panamanian Courts, then the judgment has no legal force or effect in Panama.

Without prejudice to the provisions of special treaties, no judgment rendered in a foreign country may be executed in Panama if it does not meet the following requirements:

1.    That the judgment has been issued as a result of the exercise of a personal claim, except by what the law provides especially in matters related to inheritance issues in foreign countries.

2.    That the judgment was not rendered in absentia, meaning, for the purposes of this article, the case in which the Court ordered the personal notification of the claim to the defendant and the claim was not personally notified, unless the defendant asks for execution;

3.    That the obligation for which compliance has been carried out is legal in Panama; and,

4.    That the copy of the judgment is authentic.

The judgment is the decision that decides the claim.