UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 15 Case |
| Fairfield Sentry Limited, et al. | ) Case No. 10-13164 (SMB) |
| Debtors in Foreign Proceedings. | ) Jointly Administered |

DECLARATON OF GERHARD NIGGLI
IN SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS

I, RA lic.iur. **GERHARD NIGGLI**, LL.M., do hereby declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746 and the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

1   I hold a Patent as an attorney-at-law from the Aufsichtskommission über die Anwältinnen und Anwälte (supervisory commission on attorneys) of the Obergericht des Kantons Zürich (Supreme Court of the Canton of Zurich), Switzerland, and I am registered as an attorney-at-law with the Register of Attorneys of the Canton of Zurich, Switzerland. A list with all attorneys registered with the Aufsichtskommission über die Anwältinnen und Anwälte may be consulted under the following internet address:
www.gerichte-zh.ch/fileadmin/user_upload/Dokumente/obergericht/
Aufsichtskommission/Anwaltsregister.pdf.
I am the founder and owner of Niggli Rechtsanwälte, and I have practised civil, corporate, commercial and regulatory law with a specific focus on collective investments in Switzerland for over 24 years.

2   A copy of my curriculum vitae is exhibited hereto [Exhibit 1].

3   I have been asked by Credit Suisse AG, on behalf of "*SAAF II (CH), Anlagefonds schweizerischen Rechts mit besonderem Risiko - SAAF II (CH) Global Fund, Anlagefonds schweizerischen Rechts mit besonderem Risiko*" (hereafter "**SAAF II (CH) Global**"), to submit this Declaration in support of their supplemental motion to dismiss certain actions brought against them

by Kenneth M. Krys and Charlotte Caulfield, in their capacities as joint liquidators of Fairfield Sentry Limited (in liquidation) and Fairfield Sigma Limited (in liquidation).

4   Except as otherwise appears, this Declaration is made from facts within my own knowledge and from my review of the materials (i) obtained upon a search at the Swiss Official Gazette of Commerce, (ii) the internet site of the Swiss Financial Markets Supervisory Authority FINMA (hereafter "**FINMA**"), carried out on 25 January 2017, and (iii) requested from and provided by the Swiss fund management company of SAAF II (CH) Global, which are exhibited hereto. The statements of legal opinion in this Declaration represent my views of the laws of Switzerland as a practising Swiss lawyer.

5   I have prepared this Declaration upon a mandate given to me by CREDIT SUISSE AG, Zurich. I am compensated for my work based on time spent at an hourly rate of Swiss France 540.00 plus value added tax of 8%. The payment of my fees is not contingent on the outcome of this litigation.

A.  **Overview & Summary of Opinions**

6   In this Declaration, I explain the legal nature of open-ended collective investment schemes in the form of contractual funds (in German language; vertraglicher Anlagenfonds) established under Swiss law and why Kenneth M. Krys and Charlotte Caulfield, in their capacities as joint liquidators of Fairfield Sentry Limited (in liquidation) and Fairfield Sigma Limited (in liquidation) cannot sustain these proceedings against Defendant SAAF II (CH) Global.

B.  **The legal qualification of SAAF II (CH) Global under Swiss law**

7   From the documents obtained from the former fund management company of SAAF II (CH) Global and the internet website of FINMA, the following can be seen to be the position:

   (a)  SAAF II (CH) Global was established and existed during its entire term as an *open-ended collective investment scheme in the form of a contractual fund* within the meaning of articles 25ss of the Swiss Federal Act on Collective Investment Schemes of 23. June 2006 (as amended) (hereafter "**CISA**" – [Exhibit 2]) (see copy of the Sales Prospectus with integrated Fund Regulations for SAAF II (CH) of February 2010 [Exhibit 3]).

   (b)  CISA provides for four different types of open ended collective investment schemes. SAAF II (CH) Global qualified as a so-called *other fund for alternative investments* with the meaning of article 71 of CISA (see copy of the Sales Prospectus with integrated Fund Regulations for SAAF II (CH) of February 2010 [Exhibit 3]).

   (c)  SAAF II (CH) Global was established and existed as one of several separate sub-funds of *SAAF II (CH), Anlagefonds schweizerischen Rechts mit besonderem Risiko*. SAAF

II (CH), Anlagefonds schweizerischen Rechts mit besonderem Risiko had been established as an umbrella fund within the meaning of article 93 CISA (see copy of the Sales Prospectus with integrated Fund Regulations for SAAF II (CH) of February 2010 [Exhibit 3]).

8   Legal construction of open-ended collective investment schemes of the contractual type under CISA:

(a)   Open-ended collective investment schemes in the form of contractual funds, so-called *investment funds*, are the predominant type of collective investment scheme in Switzerland. Out of a total number of 1547 collective investment schemes existing on January 25, 2017 with authorization by FINMA, 1529 are investment funds (see list of Swiss collective investment schemes authorised by FINMA, updated on 25 January 2017 available from: `www.finma.ch/en/~/media/finma/dokumente/bewilligungstraeger/pdf/afch.pdf?la=en`.

(b)   The contractual type of fund is also dominant in Germany, Austria, the Principality of Liechtenstein and frequently used in the Principality of Luxembourg and France.

(c)   Legally, a Swiss investment fund is based on several[1] and parallel collective investment agreements (a so-called "*fund contract*") under which a fund management company commits itself to:

(i)   involving investors in accordance with the number and type of units which they have acquired in the investment fund, and

(ii)   managing the fund's assets in accordance with the provisions of the fund contract (see article 25 paragraph 1 CISA).

(d)   The fund contract is a statutory contract defined by CISA.

(e)   The fund management company drawing up the fund contract, must be licensed by FINMA, and the fund contract (including each amendment to it) must be approved by FINMA (see article 13 paragraph 1 and 2a CISA, article 15 paragraph 1a CISA and article 26 and 27 CISA).

---

[1] The statutory definition of a collective investment scheme provided by article 7 CISA requires that assets are raised from more than one investor, and Article 5 paragraph 1 of the Swiss Ordinance on Collective Investment Schemes of 22. November 2006 (as amended) (hereafter "*CISO*" – [Exhibit 4]), adopted by the Swiss Federal Council under CISA, explicitly states that the assets of any collective investment scheme must be provided by at least two independent investors. So-called single investor funds are only permissible if the investor is a regulated insurance institution, a public entity or a retirement benefits institution with professional treasury operations (article 5 paragraph 4 CISO).

(f) On concluding a collective investment contract, or subscribing and paying in cash, investors in a Swiss investment fund acquire a *contractual claim* against the fund management company to participate in the assets and income of the investment fund in accordance with the fund units they acquire (see article 78 paragraph 1 CISA). Their claims are document in so-called fund units (see article 11 CISA). However, investors have no ownership or co-ownership rights in the assets of the investment fund, are not shareholders of any company whatsoever (see Jutzi/Schären: Grundriss des Schweizerischen Kollektivanlagerechts, Bern 2014, N. 217), and are not involved in any way in the governance or management of the investment fund (see article 5 paragraph 1 CISO; article 2 paragraph 2f e contrario; Jutzi/Schären: Grundriss des Schweizerischen Kollektivanlagerechts, Bern 2014, N. 102). Under the fund contracts, only relationships between each of the several investors on the one side and the fund management company and the custodian bank on the other side arise, but no legal relationship between the various investors in the investment fund are created.

(g) A Swiss investment fund is established:

    (i) upon the approval of the fund contract by FINMA submitted to it by the fund management company, and

    (ii) the subsequent conclusion of the first fund contract between the fund management company, the custodian bank (see below section (j) and the first investor.

(h) Since Swiss investment funds are not incorporated, they are not registered with any company register. However, all relevant information such as changes to the fund contract information etc. are published in the Swiss Official Gazette of Commerce and the publication media stipulated in the fund contract and disclosed in the mandatory prospectus of a Swiss investment fund.

(i) The assets of each Swiss investment fund are managed by its fund management company in its own discretion[2] and in its own name, but for the account of the investors. Most important, the fund management company exercises all rights associated with the investment fund (see article 30 CISA). Membership and creditor's rights associated with the investments must be exercised independently and exclusively in the interests of the investors (article 23 paragraph 1 CISA).

(j) Pursuant to article 73 CISA, the assets of a Swiss investment fund must be kept with a custodian bank, being a bank pursuant to the Swiss Federal Act on Banks and Savings

---

[2] Only with the approval of FINMA, a Swiss fund management company may delegate certain of their tasks such as the portfolio management to qualifying third parties (article 18 CISA).

Banks of 8 November 1934 (as amended). The custodian bank is a party to the fund contract (see article 13 paragraph 1 and 2e CISA and article 25 paragraph 2 CISA) and must be licensed by FINMA to perform its function (see article 72 paragraph 1 CISA).

(k) A Swiss fund management company must keep the assets of each Swiss investment fund established and managed by it separate from its own assets. Because Swiss investment funds are not constituted as independent, separate legal subjects, and in order to protect the interests of investors, the Swiss legislator has explicitly stipulated in article 35 CISA, that in case of the fund management company's bankruptcy the assets and rights belonging to an investment fund will be segregated in favour of the investors.

(l) Swiss investment funds are not only not incorporated, but have no separate legal personality and are not legal subjects (see Supreme Court Decision 115 III 14 E. 2.a and 140 III 177 E.4.1.; decision A-719/213 of the Federal Administrative Court of 26 March 2015, E.2.5.4. and 2.6.4.4.M; Jutzi/Schären: Grundriss des Schweizerischen Kollektivanlagerechts, Bern 2014, N. 218).

(m) All rights of a Swiss investment fund must be exercised by the relevant Swiss fund management company. Accordingly, a Swiss investment fund has neither the capacity to sue or to be sued.

C.  **Current status of SAAF II (CH) Global**

9   On 20. December 2010 the fund management company and the custodian bank of SAAF II (CH) Global resolved to give notice to terminate the fund contract of SAAF II (CH) Global pursuant to article 96 paragraph 1a and paragraph 2 CISA and the terms of the relevant fund contract. The notice was published in the Swiss Official Gazette of Commerce on 29. December 2010 (see excerpt from the Swiss Official Gazette of Commerce of 29. December 2010, reference 00578263 [Exhibit 5]) and FINMA informed as required by article 96 paragraph 4 CISA. At the same time, the fund management company immediately stopped to issue and redeem any unit in SAAF II (CH) Global (article 97 paragraph 1 CISA).

10  Thereafter, and pursuant to article 116 CISO, the fund management company undertook to dissolve SAAF II (CH) Global and to liquidate its assets (see copy of the liquidation report as of 30. June 2012 [Exhibit 6]).

11  Prior to the final payment, the fund management company requested authorisation from FINMA to perform the final payment. Such authorization was granted on 13. September 2012 (see copy of the authorization letter of FINMA of 13. September 2012 [Exhibit 7]) and the notice of the final payment to investors and the conclusion of the liquidation was published on September 18, 2012 (see copy of the notice letter to investors of September 18, 2012 [Exhibit 8] and the

| | |
|---|---|
| | excerpt from the Swiss Official Gazette of Commerce of 18. September 2012, reference 00814123 [Exhibit 9]). |
| 12 | FINMA removed SAAF II (CH) Global from its register of authorized Swiss collective investment schemes and published such removal on 4. October, 2012 (see: www.finma.ch/en/~/media/finma/dokumente/dokumentencenter/mutationslisten/afch_mut_1209.pdf?la=en; print-out in [Exhibit 10]). Since then, SAAF II (CH) Global, no longer is in existence. |

D. **Conclusion**

| | |
|---|---|
| 13 | SAAF II (CH) Global was a sub-fund of the contractual investment fund SAAF II (CH) based on fund contracts. As such, neither SAAF II (CH) Global nor SAAF II (CH) ware at any time during their entire existence, legal subjects and had never the capacity to be sued. |
| 14 | The collective investment agreement on SAAF II (CH) Global (and all other former sub-funds of SAAF II (CH)) have been terminated and SAAF II (CH) Global and SAAF II (CH) have subsequently been dissolved and the assets of SAAF II (CH) Global liquidated. The final payment to the investors of SAAF II (CH) Global has been effected and SAAF II (CH) Global and SAAF II (CH) no longer exist. |

Executed on 27. January 2017

Zurich, Switzerland                                    RA lic.iur. GERHARD NIGGLI, LL.M.

**Exhibits:**

1. Curriculum vitae of Gerhard Niggli;

2. Copy of the Swiss Federal Act on Collective Investment Schemes of 23. June 2006;

3. Copy of the Sales Prospectus with integrated Fund Regulations for SAAF II (CH) of February 2010;

4. Copy of the Swiss Ordinance on Collective Investment Schemes of 22. November 2006;

5. Excerpt from SOGC with notice to investors of 29. December 2010, reference 00578263;

6. Copy of the liquidation report as of 30. June 2012;

7. Copy of the authorization by FINMA to effect final payment of 13. September 2012;

8. Notice letter to investors about final payment of 18. September 18, 2012;

9. Excerpt from SOGC with final notice of 18. September, 2012 reference 00814123;

10. Print-out of the FINMA notice of removal of SAAF II (CH) Global from list of authorized funds.