# EXHIBIT 2

*English is not an official language of the Swiss Confederation. This translation is provided for information purposes only and has no legal force.*

# Federal Act
# on Collective Investment Schemes
## (Collective Investment Schemes Act, CISA)

of 23 June 2006 (Status as of 1 July 2016)

*The Federal Assembly of the Swiss Confederation,*

based on Article 98 paragraphs 1 and 2 and 122 paragraph 1
of the Federal Constitution[1],
and having considered the Federal Council Dispatch of 23 September 2005[2],
*decrees:*

## Title 1     General Provisions
## Chapter 1     Aim and Scope of Application

### Art. 1     Aim

This Act aims to protect investors and to ensure transparency and the proper functioning of the market for collective investment schemes.

### Art. 2     Scope of Application

[1] This Act governs the following, irrespective of their legal status:

   a.   Swiss collective investment schemes and persons who are responsible for the management and distribution of such schemes, and the safekeeping of assets held in them;

   b.   foreign collective investment schemes which are distributed in Switzerland;

   c.   persons who manage foreign collective investment schemes in or from Switzerland;

   d.   persons who distribute foreign collective investment schemes in Switzerland;

   e.   persons who distribute, from Switzerland, foreign collective investment schemes which are not exclusively reserved for qualified investors as de-

AS **2006** 5379

1     SR **101**
2     BBl **2005** 6395

fined in Article 10 paragraph 3, 3bis or 3ter, or subject to equivalent foreign law;

f. persons who represent foreign collective investment schemes in Switzerland.[3]

2 The following are not governed by this Act:

a. institutions and ancillary institutions in the occupational pensions sector, including investment foundations;

b. social security institutions and compensation funds;

c. public authorities and institutions;

d. operating companies which are engaged in business activities;

e. companies which by way of a majority of the votes or by any another way bring together one or more companies to form a group under single management (holding companies);

f. investment clubs whose members are in a position to manage their financial interests themselves;

g. associations and foundations as defined in the Swiss Civil Code[4];

h.[5] asset managers of collective investment schemes whose investors are qualified as defined in Article 10 paragraph 3, 3bis or 3ter and which meet one of the following requirements:

1. The assets under management, including the assets acquired through the use of leveraged finance, amount in total to no more than CHF 100 million.

2. The assets under management of the collective investment schemes consist of non-leveraged collective investment schemes where investors are not permitted to exercise redemption rights for a period of five years after their first investment is made in each of these collective investment schemes, and amount to no more than CHF 500 million.

3. The investors are exclusively group companies of the group of companies to which the asset manager belongs.

2bis Asset managers of collective investment schemes pursuant to paragraph 2 letter h may subject themselves to this Act if this is required by the country in which the collective investment scheme is established or distributed. The Federal Council defines the details. It may require a registration nonetheless in order to be able to collect economically significant data irrespective of whether such asset managers subject themselves to this Act.[6]

---

3 Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

4 SR **210**

5 Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

6 Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

3 Investment companies in the form of Swiss companies limited by shares are not governed by this Act, provided they are listed on a Swiss exchange, or provided that:

   a.   only shareholders as defined in Article 10 paragraphs 3, 3bis and 3ter are entitled to participate in them; and

   b.   their shares are registered.7

4 …8

### Art. 39          Distribution

1 The distribution of collective investment schemes pursuant to this Act is defined as any offering of and advertising for collective investment schemes that is not exclusively directed at investors as defined in Article 10 paragraph 3 letters a and b.

2 The following are not deemed to be distribution:

   a.   the provision of information and the subscription of collective investment schemes at the instigation of or at the own initiative of investors, especially in the context of investment advisory agreements or for execution-only transactions;

   b.   the provision of information and the subscription of collective investment schemes based on a written discretionary management agreement with financial intermediaries as defined in Article 10 paragraph 3 letter a;

   c.   the provision of information and the subscription of collective investment schemes based on a written discretionary management agreement with an independent asset manager which:
      1.   in its capacity as a financial intermediary is governed by Article 2 Paragraph 3e of the Anti-Money Laundering Act of 10 October 199710,
      2.   is governed by the code of conduct issued by a specific industry body, such code of conduct being recognised as the minimum standard by the Swiss Financial Market Supervisory Authority (FINMA),
      3.   the discretionary management agreement complies with the standards of a specific industry body, such standards being recognized as the minimum standard by FINMA;

   d.   the publication of prices, net asset values and tax data by regulated financial intermediaries;

   e.   the offering of stock option schemes in the form of collective investment schemes to employees.

---

7   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

8   Repealed by No I of the Federal Act of 28 Sept. 2012, with effect from 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

9   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

10   SR **955.0**

**Art. 4**      In-house funds

[1] This Act does not govern in-house funds of a contractual nature which are created by banks and securities dealers for the purpose of collectively managing the assets of existing clients, provided the following requirements are met:

  a.   Clients participate in such in-house funds exclusively on the basis of a written discretionary management agreement.

  b.   No unit certificates are issued.

  c.[11]  They do not distribute such in-house funds.

[2] The creation and dissolution of in-house funds must be notified to the audit company[12] appointed under the Swiss Banking Act and the Stock Exchange Act.

[3] In the event of bankruptcy of the bank or securities dealer, assets and rights that form part of in-house funds shall be segregated in favour of the investors.

**Art. 5**      Structured products

[1] Structured products, such as capital-protected products, capped return products and certificates, may only be distributed in or from Switzerland to non-qualified investors if:[13]

  a.   they are issued, guaranteed or secured in an equivalent manner by:[14]

    1.   a bank as defined in the Federal Act on Banks and Savings Banks of 8 November 1934[15],

    2.   an insurance company as defined in the Federal Act on the Supervision of Insurance Companies of 17 December 2004[16],

    3.   a securities dealer as defined in the Stock Exchange Act of 24 March 1995[17],

    4.   a foreign institution that is subject to equivalent standards of supervision,

  b.   a simplified prospectus is available for them.

[1bis] The issuing of structured products to non-qualified investors by special purpose entities is permitted if they are distributed by an institution as defined in paragraph 1

---

11   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

12   Term in accordance with Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829). This change has been made throughout the text.

13   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

14   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

15   SR **952.0**

16   SR **961.01**

17   SR **954.1**

letter a and equivalent security is ensured. The Federal Council defines the requirements for equivalent security.[18]

2 The simplified prospectus must comply with the following requirements:

a. It must describe, in accordance with a standard format, the key characteristics of the structured product (key data), its profit and loss prospects, together with the significant risks for investors.

b. It must be easily understood by the average investor.

c. It must make reference to the fact that the structured product is neither a collective investment scheme, nor does it require the authorisation of FINMA.

3 A provisional simplified prospectus including indicative information must be made available free of charge to interested persons prior to subscribing the product or prior to concluding an agreement to subscribe the product. In addition, the definitive simplified prospectus must be made available free of charge to interested persons on issue or on concluding an agreement to subscribe the product.[19]

4 The requirement under Article 1156 of the Swiss Code of Obligations[20] for a prospectus shall not apply in this case.

5 In all other respects, structured products are not governed by this Act.

#### Art. 6   Delegation to the Federal Council

1 Within the framework of the implementing regulations, the Federal Council may fully or partially subject the collective investment schemes, similar schemes or companies to this Act, or fully or partially exempt asset-pooling constructs or companies from being subjected to this Act, provided that the protective purpose of this Act is not impaired.

2 For consultation purposes, it submits the relevant provisions to the committee responsible, in accordance with Article 151 paragraph 1 of the Parliament Act of 13 December 2002[21].

## Chapter 2   Collective Investment Schemes

#### Art. 7   Definition

1 Collective investment schemes are assets raised from investors for the purpose of collective investment, and which are managed for the account of such investors. The investment requirements of the investors are met on an equal basis.

2 Collective investment schemes may be open or closed-ended.

---

18 Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
19 Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
20 SR **220**
21 SR **171.10**

3 The Federal Council may stipulate a minimum number of investors in accordance with the legal status and target group.[22]

4 In the case of single investor funds, the fund management company and the investment company with variable capital (SICAV) may delegate the investment decisions to the single investor. FINMA may exempt them from the duty to subject themselves to supervision recognised under Article 31 paragraph 3 and Article 36 paragraph 3, respectively.[23]

### Art. 8          Open-ended collective investment schemes

1 Open-ended collective investment schemes may be in the form of a contractual fund (Art. 25 et seq.) or SICAV (Art. 36 et seq.).

2 With open-ended collective investment schemes, investors have either a direct or indirect legal entitlement, at the expense of the collective assets, to redeem their units at the net asset value.

3 Each open-ended collective investment scheme has its own fund regulations. In the case of contractual funds this is the collective investment contract (fund contract), and in the case of SICAVs it is the articles of association and the investment regulations.

### Art. 9          Closed-ended collective investment schemes

1 Closed-ended collective investment schemes may be in the form of a limited partnership for collective capital investments (Art. 98 et seq.) or an investment company with fixed capital (SICAF, Art. 110 et seq.).

2 In the case of closed-ended collective investment schemes, investors have neither a direct nor an indirect legal entitlement at the expense of the collective assets to the redemption of their units at the net asset value.

3 Limited partnerships for collective investment are based on a company agreement.

4 SICAFs are based on articles of association and issue a set of investment regulations.

### Art. 10          Investors

1 Investors are natural and legal persons, as well as general and limited partnerships, which hold units in collective investment schemes.

2 Collective investment schemes are open to all investors, except where this Act, the fund regulations or the articles of association restrict investor eligibility to qualified investors.

---

22   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
     (AS **2013** 585; BBl **2012** 3639).
23   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
     (AS **2013** 585; BBl **2012** 3639).

3 Qualified investors pursuant to this Act specifically include:[24]

   a.[25] regulated financial intermediaries such as banks, securities traders, fund management companies and asset managers of collective investment schemes, as well as central banks;

   b.   regulated insurance institutions;

   c.   public entities and retirement benefits institutions with professional treasury operations;

   d.   companies with professional treasury operations;

   e. and f.   …[26]

3bis High-net-worth individuals may declare in writing that they wish to be deemed qualified investors. In addition, the Federal Council may make such persons' suitability as qualified investors dependent on certain conditions, specifically technical qualifications.[27]

3ter Investors who have concluded a written discretionary management agreement as defined in Article 3 Paragraph 2b and c are deemed qualified investors unless they have declared in writing that they do not wish to be deemed as such.[28]

4 The Federal Council may deem other categories of investors to be qualified.

5 The FINMA may fully or partially exempt collective investment schemes from certain provisions of this Act, provided that they are exclusively open towards qualified investors and that the protective purpose of this Act is not impaired, specifically from the provisions concerning:[29]

   a.[30] …

   b.   the requirement to produce a prospectus;

   c.   the requirement to produce a semi-annual report;

   d.   the requirement to provide investors with the right to terminate their investment at any time;

   e.   the requirement to issue and redeem units in cash;

   f.   risk diversification.

24   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 June 2013 (AS **2013** 585; BBl **2012** 3639).
25   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 June 2013 (AS **2013** 585; BBl **2012** 3639).
26   Repealed by No I of the Federal Act of 28 Sept. 2012, with effect from 1 June 2013 (AS **2013** 585; BBl **2012** 3639).
27   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 June 2013 (AS **2013** 585; BBl **2012** 3639).
28   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 June 2013 (AS **2013** 585; BBl **2012** 3639).
29   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 June 2013 (AS **2013** 585; BBl **2012** 3639).
30   Repealed by No I of the Federal Act of 28 Sept. 2012, with effect from 1 June 2013 (AS **2013** 585; BBl **2012** 3639).

### Art. 11    Units

Units are claims against the fund management company conferring entitlement to the assets and income of the investment fund or interests in the investment company.

### Art. 12    Protection against confusion or deception

[1] The designation «collective investment scheme» must not provide any grounds for confusion or deception, in particular in relation to the investments.

[2] Designations such as «investment fund», «investment company with variable capital», «SICAV», «limited partnership for collective investment», «investment company with fixed capital» and «SICAF» may only be used for the relevant collective investment schemes governed by this Act.[31]

## Chapter 3    Authorisation and Approval
## Section 1    General

### Art. 13    Authorisation requirement

[1] Any party responsible for the management of a collective investment scheme, the safekeeping of the assets held in it or the distribution of it to non-qualified investors must obtain authorisation from FINMA.[32]

[2] The following are required to obtain authorisation:

    a.  fund management companies;
    b.  SICAVs;
    c.  limited partnerships for collective investment;
    d.  SICAFs;
    e.[33] custodian banks of Swiss collective investment schemes;
    f.[34] asset managers of collective investment schemes;
    g.  distributors;
    h.  representatives of foreign collective investment schemes.

[3] Asset managers of collective investment schemes, distributors and representatives who are already subject to other equivalent official supervisory control may be granted exemption from the authorisation requirements by the Federal Council.[35]

---

[31] Amended by No III of the Federal Act of 25 Sept. 2015 (Law on Business Names), in force since 1 July 2016 (AS **2016** 1507; BBl **2014** 9305).

[32] Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

[33] Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

[34] Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

4 …36

5 The persons cited in paragraph 2 letters a-d may only be entered in the Commercial Register once authorisation has been granted by FINMA.

### Art. 14   Authorisation requirements

1 Authorisation is granted if:

  a.  the persons responsible for management and the business operations have a good reputation, guarantee proper management, and possess the requisite specialist qualifications;

  b.  the significant equity holders have a good reputation and do not exert their influence to the detriment of prudent and sound business practice;

  c.  compliance with the duties stemming from this Act is assured by internal regulations and an appropriate organisational structure;

  d.  sufficient financial guarantees are available;

  e.  the additional authorisation conditions listed in the relevant provisions of the Act are met.

1bis Insofar as the financial guarantees are used to meet minimal capital requirements, the Federal Council may stipulate higher capital requirements than required by the Code of Obligations37.38

1ter The Federal Council may stipulate additional authorisation conditions in accordance with international developments. It may also make its granting of authorisation dependent on the conclusion of professional indemnity insurance or on evidence of financial guarantees.39

2 Furthermore, FINMA may make its granting of authorisation dependent on compliance with the codes of conduct of a specific industry body.

3 The following are deemed to be significant equity holders, provided they directly or indirectly control at least 10 percent of the capital or votes in the persons specified in Article 13 paragraph 2 or can materially influence their business activities in another way:

  a.  natural and legal persons:

  b.  general and limited partnerships;

35   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

36   Repealed by No I of the Federal Act of 28 Sept. 2012, with effect from 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

37   SR **220**

38   Inserted by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

39   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

c. financially related parties which meet this criterion on a combined basis.[40]

**Art. 15** Duty to obtain approval

[1] The following documents are required for obtaining the approval of FINMA:

a. for investment fund, the collective investment contract (Art. 25);

b. for SICAVs, the articles of association and investment regulations;

c. for limited partnerships for collective investment, the company agreement;

d. SICAFs, the articles of association and investment regulations;

e.[41] the relevant documents of foreign collective investment schemes which are distributed to non-qualified investors.

[2] If an investment fund or SICAV is structured as an open-ended collective investment scheme with subfunds (Art. 92 et seq.), each subfund or category of shares requires individual approval.

**Art. 16** Change in circumstances

If there is a change in the circumstances underlying the authorisation or approval, FINMA's authorisation or approval must be sought prior to the continuation of activity.

**Art. 17** Simplified authorisation and approval procedure

The Federal Council may specify a simplified authorisation and approval procedure process for collective investment schemes.

## Section 2[42] Asset Managers of Collective Investment Schemes

**Art. 18** Organisation

[1] Asset managers of collective investment schemes with their registered office in Switzerland may be:

a. legal persons in the form of companies limited by shares, partnerships limited by shares or limited liability companies;

b. general and limited partnerships;

c. Swiss branches of a foreign asset manager of collective investment schemes, provided:

---

40 Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

41 Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

42 Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

1. the asset manager, including its branch, is subject to an appropriate supervisory control at its registered office,
2. the asset manager is adequately organised and has commensurate financial resources and qualified personnel to operate a branch in Switzerland, and
3. an agreement exists on cooperation and the exchange of information between FINMA and the relevant foreign supervisory authorities.

2 FINMA may make asset managers of collective investment schemes which belong to a financial group or conglomerate subject to group or conglomerate supervision if required by international standards.

3 FINMA may in justified instances grant collective investment schemes full or partial exemption from provisions of this Act, provided:

a. the protective purpose of this Act is not impaired; and

b. the asset management of collective investment schemes has been transferred to them by the following persons only:
   1. licensees pursuant to Article 13 paragraph 2 letters a–d and f, or
   2. foreign fund management companies or companies which in terms of organisation and investor rights are subject to regulations which are equivalent to the provisions of this Act.

### Art. 18*a*    Duties

1 The asset manager of collective investment schemes ensures the proper conduct of portfolio and risk management for one or more collective investment schemes.

2 It may in the course of such duties additionally perform administrative activities, subject to the provisions of Article 31.

3 In addition, it may perform the following ancillary services in particular:

a. fund business for foreign collective investment schemes, provided an agreement exists on the cooperation and the exchange of information between FINMA and the relevant foreign supervisory authorities in relation to the fund business and the foreign law requires such an agreement;

b. discretionary management of individual portfolios;

c. investment advisory services;

d. distribution of collective investment schemes;

e. representation of foreign collective investment schemes.

### Art. 18*b*    Delegation of tasks

1 Asset managers of collective investment schemes may delegate specific tasks, provided this is in the interest of efficient management.

2 They shall appoint only those persons who are properly qualified to execute the task, and ensure they receive the instruction, monitoring and control required for the implementation of the tasks assigned.

3 They may only delegate investment decisions to asset managers of collective investment schemes who are subject to recognised supervision.

4 Where foreign law requires an agreement on the cooperation and the exchange of information with foreign supervisory authorities, they may only delegate investment decisions to asset managers abroad where such an agreement exists between FINMA and the relevant foreign supervisory authorities.

**Art. 18***c*       Changes

FINMA must be notified in advance of any change in asset manager for collective investment schemes.

## Section 3       Distributors

### Art. 19

1 …43

1bis A financial intermediary may only distribute foreign collective investment schemes intended solely for qualified investors if it is subject to appropriate supervision in Switzerland or its country of domicile.44

2 The Federal Council defines the authorisation conditions.

3 In particular, it may make authorisation dependent on adequate financial and professional guarantees on the part of the distributors.

4 …45

## Chapter 4       Code of Conduct

### Art. 20       Principles

1 Licensees (authorised parties) and their agents shall fulfil the following requirements in particular:46

---

43    Repealed by No I of the Federal Act of 28 Sept. 2012, with effect from 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).
44    Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).
45    Repealed by No I of the Federal Act of 28 Sept. 2012, with effect from 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).
46    Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).

    a.   duty of loyalty: they act independently and exclusively in the interests of the investors;

    b.   due diligence: they implement the organisational measures that are necessary for proper management;

    c.[47]  duty to provide information: They ensure the provision of transparent financial statements and provide appropriate information about the collective investment schemes which they manage and distribute and the assets which they hold in safekeeping; they disclose all charges and fees incurred directly or indirectly by the investors and their appropriation; they notify investors of compensation for the distribution of collective investment schemes in the form of commissions, brokerage fees and other soft commissions in a full, truthful and comprehensible manner.

2 FINMA may specify minimum standards in the form of the codes of conduct of industry bodies.

3 Licensees shall take all necessary precautions to ensure that all duties in relation to all their business activities are performed properly.[48]

### Art. 21     Investments

1 The licensees and their agents pursue an investment policy that at all times corresponds with the investment characteristics of the collective investment scheme as set out in the relevant documents.

2 In respect of the purchase and sale of assets and rights on their own behalf as well as that of third parties, they are only entitled to receive the fees specified in the relevant documents. Commissions and other financial benefits must be credited to the collective investment scheme.

3 Assets acquired for their own account may only be purchased at market price, while any sale of own-account assets must also be at market price.

### Art. 22     Securities transactions

1 Counterparties for securities trades and other transactions must be carefully selected. They must offer a guarantee of best execution in terms of price, time and quantity.

2 The choice of counterparties must be reviewed at regular intervals.

3 Agreements which curtail the freedom of decision of the licensees or their agents are not permitted.

---

47    Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

48    Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

**Art. 23**        Exercising membership and creditors' rights

[1] The membership and creditors' rights associated with the investments must be exercised independently and exclusively in the interests of the investors.

[2] Article 685*d* paragraph 2 of the Code of Obligations[49] does not apply to investment funds.

[3] If a fund management company manages several investment funds, the level of the participation with respect to the percentage limit set out in Article 685*d* paragraph 1 of the Code of Obligations is calculated individually for each investment fund.

[4] Paragraph 3 also applies to each subfund of an open-ended collective investment scheme as defined in Article 92 et seq.

**Art. 24**        Further rules of conduct[50]

[1] The licensees shall take the measures required to ensure the legitimate acquisition of clients and the objective provision of advice to the latter.

[2] If they engage the services of third parties in the distribution of units in collective investment schemes, they shall conclude distribution agreements with these third parties.

[3] The licensees and third parties engaged to distribute units shall record in writing the client's requirements that they have ascertained and the reasons for each recommendation for investment in a specific collective investment scheme. This written record is handed over to the client.[51]

## Title 2        Open-Ended Collective Investment Schemes
## Chapter 1      The Contractual Fund
### Section 1      Definition

### Art. 25

[1] The contractual fund (investment fund) is based on a collective investment agreement (fund contract) under which the fund management company commits itself to:

   a.  involving investors in accordance with the number and type of units which they have acquired in the investment fund;

   b.  managing the fund's assets in accordance with the provisions of the fund contract at its own discretion and for its own account.

[2] The custodian bank is a party to the contract in accordance with the tasks conferred on it by the law and by the fund contract.

---

49   SR **220**
50   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 Jan. 2014
     (AS **2013** 585; BBl **2012** 3639).
51   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 Jan. 2014
     (AS **2013** 585; BBl **2012** 3639).

3 The investment fund must have the stipulated minimum assets. The Federal Coun-
cil determines the level thereof, and the period in which it must be accumulated.

## Section 2 The Fund Contract

### Art. 26 Content

1 The fund management company draws up the fund contract and, with the consent
of the custodian bank, submits it to FINMA for approval.

2 The fund contract sets out the rights and duties of the investors, the fund manage-
ment company and the custodian bank.

3 The Federal Council determines the minimum contents.[52]

### Art. 27 Amendments to the fund contract

1 Amendments to the fund contract must be submitted by the fund management
company, with the consent of the custodian bank, to FINMA.

2 If the fund management company amends the fund contract, it must publish a
summary of the significant amendments in advance, in which reference is made to
the locations where the full wording of the contractual amendments may be obtained
free of charge.

3 These publications must inform investors of their right to lodge objections with
FINMA within 30 days of their publication. The procedure is based on the Federal
Act on Administrative Procedure of 20 December 1968[53]. Investors must further-
more be made aware that they may request the repayment of their units in cash,
while observing the contractual or regulatory notice period.[54]

4 FINMA publishes its decision in the media of publication.

## Section 3 The Fund Management Company

### Art. 28 Organisation

1 The fund management company must be a company limited by shares with its
registered office and main administrative office in Switzerland.

2 It must have a minimum capital. The Federal Council shall decide such amount.

3 The share capital must be divided into registered shares.

52 Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
(AS **2013** 585; BBl **2012** 3639).
53 SR **172.021**
54 Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
(AS **2013** 585; BBl **2012** 3639).

[4] The fund management company must have an organisational structure that is appropriate to the tasks conferred on it. It sets out the duties and responsibilities in the articles of association and in the organisational regulations.

[5] The persons holding executive powers at the fund management company and custodian bank must be independent of the other party.

### Art. 29[55]   Objects

[1] The primary object of the fund management company is the conduct of fund business. In addition, it may provide the following ancillary services:

   a.   discretionary management of individual portfolios;

   b.   investment advisory services;

   c.   safekeeping and technical administration of collective investment schemes.

[2] The conduct of fund business for foreign collective investment schemes is governed by Article 18*a* paragraph 3 letter a.

### Art. 30   Duties

The fund management company manages the fund at its own discretion and in its own name but for the account of the investors. In particular:

   a.   it decides on the issue of units, investments and their valuation;

   b.   it calculates the net asset value;

   c.   it determines issue and redemption prices in addition to income distributions;

   d.   it exercises all rights associated with the investment fund.

### Art. 31   Delegation of duties

[1] The fund management company may delegate investment decisions as well as specific tasks, provided this is in the interest of efficient management.

[2] It shall appoint only those persons who are properly qualified to execute the task, and ensure they receive their instruction, monitoring and control required for the implementation of the assigned tasks.

[3] It may only delegate investment decisions to asset managers of collective investment schemes who are subject to a recognized supervision.[56]

[4] Where foreign law requires an agreement on cooperation and the exchange of information with foreign supervisory authorities, it may only delegate investment decisions to asset managers abroad where such an agreement exists between FINMA

---

55   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
     (AS **2013** 585; BBl **2012** 3639).

56   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
     (AS **2013** 585; BBl **2012** 3639).

and the relevant foreign supervisory authorities for the investment decisions concerned.[57]

5 For collective investment schemes subject to simplified distribution in the European Union under a specific treaty, investment decisions may not be delegated to the custodian bank or to other companies whose interests may conflict with those of the fund management company or the investors.[58]

6 The fund management company is liable for the actions of its agents as if they were its own.[59]

### Art. 32    Capital adequacy

1 There must be an appropriate relationship between the equity of the fund management company and the total assets of the collective investment schemes that it manages. The Federal Council regulates this relationship.

2 In special cases, FINMA may grant a relaxation of the requirements or may order a tightening thereof.

3 The fund management company may not invest the prescribed equity in fund units which it itself has issued, nor may it lend the equity to its shareholders or to closely connected natural and legal persons. The holding of liquid assets with the custodian bank is not deemed to be lending.

### Art. 33    Rights

1 The fund management company is entitled to:

    a.    receive the fees stipulated in the fund contract;

    b.    be exempt from any liabilities which may have arisen in the course of the proper execution of its duties;

    c.    receive reimbursement of the expenses incurred in connection with such liabilities.

2 These payments are made from the assets of the investment fund. Investors are not held personally liable.

### Art. 34    Change of fund management company

1 The rights and duties of the fund management company may be transferred to another fund management company.

---

57    Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).
58    Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).
59    Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).

[2] In order to be effective, the transfer agreement between the outgoing and incoming fund management company must be in writing, have the consent of the custodian bank and be approved by FINMA.

[3] Prior to approval by FINMA, the outgoing fund management company publishes the proposed change in the media of publication.[60]

[4] The investors must be informed in these publications of their right to lodge objections with FINMA within 30 days from publication. The procedure is based on the Federal Act on Administrative Procedure of 20 December 1968[61].[62]

[5] FINMA authorises the change of fund management company if the legal requirements have been met and the continuation of the investment fund is in the interest of the investors.

[6] It publishes its decision in the media of publication.

### Art. 35       Segregation of fund assets

[1] In the case of bankruptcy, assets and rights belonging to the fund management company will be segregated in favour of the investors. The same is true for the schedule of debts, assets and income potential. The fund management's claims are subject to Article 33.[63]

[2] Debts of the fund management company which do not arise under the fund contract may not be set off against claims of the investment fund.

## Chapter 2     Investment Company with Variable Capital
## Section 1     General Provisions

### Art. 36       Definition and duties [64]

[1] SICAV is a company:

    a.    whose capital and number of shares are not specified in advance;

    b.    whose capital is divided into company and investor shares;

    c.    for whose liabilities only the company's assets are liable;

    d.    whose sole object is collective capital investment.

[2] A SICAV shall have a minimum level of assets. The Federal Council determines the level and the period within which it must be accumulated.

---

60    Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
61    SR **172.021**
62    Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
63    Amended by Annex No 3 of the Federal Act of 18 March 2011 (Securing Investments), in force since 1 Sept. 2011 (AS **2011** 3919; BBl **2010** 3993).
64    Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

3 The SICAV may only delegate investment decisions to asset managers of collective investment schemes subject to recognised supervision. Articles 30 and 31 paragraphs 1-5 apply mutatis mutandis.[65]

### Art. 37   Formation

1 The formation of a SICAV is based on the provisions of the Code of Obligations[66] regarding the formation of companies limited by shares, with the exception of the provisions regarding contributions in kind, acquisitions in kind and special privileges.

2 The Federal Council specifies the minimum investment amount for a SICAV on its formation.[67]

3 …[68]

### Art. 38   Company name

1 The company name must contain a description of the legal status or the abbreviation thereof (SICAV).

2 In all other respects, the provisions of the Code of Obligations[69] regarding the name of companies limited by shares apply.

### Art. 39   Capital adequacy

1 There must be an appropriate relationship between the holdings of the company shareholders and the total assets of the SICAV. The Federal Council regulates this relationship.

2 In special cases, FINMA may grant a relaxation of the requirements or may order a tightening thereof.

### Art. 40   Shares

1 The company shares are registered.

2 The company and investor shares have no nominal value and must be fully paid up in cash.

3 The shares are freely transferable. The articles of association may restrict investor eligibility to qualified investors if the shares of the SICAV are not listed on an exchange. If the SICAV withholds its consent to a transfer of the shares, Article 82 applies.

[65]   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
[66]   SR **220**
[67]   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
[68]   Repealed by No I of the Federal Act of 28 Sept. 2012, with effect from 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
[69]   SR **220**

4 The articles of association may specify different categories of shares, to which different rights are assigned.

5 The issuing of participation certificates, dividend right certificates and preference shares is prohibited.

**Art. 41**      Company shareholders

1 The company shareholders contribute the minimum holding necessary for the formation of the SICAV.

2 They resolve the dissolution of the SICAV and its subfunds in accordance with Article 96 paragraphs 2 and 3. [70]

3 In all other respects, the provisions regarding the rights of the shareholders (Art. 46 et seq.) apply.

4 The rights and duties of the company shareholders pass to the purchaser on the transfer of the shares.

**Art. 42**      Issue and redemption of shares

1 Unless the law and articles of association provide otherwise, a SICAV may at any time issue new shares at the net asset value and must, if requested by a shareholder, at any time redeem issued shares at the net asset value. This requires neither an amendment to the articles of association nor an entry in the Commercial Register.

2 A SICAV may not hold treasury shares, whether directly or indirectly.

3 The shareholders have no entitlement to the portion of newly issued shares corresponding to their previous holding. In the case of real estate funds, this is subject to Article 66 paragraph 1.

4 In all other respects, the issue and redemption of shares is conducted in accordance with Articles 78 to 82.

**Art. 43**      Articles of association

1 The articles of association must contain provisions concerning:

   a..  the company name and its registered office;

   b.  the objects;

   c.  the minimum investment amount;

   d.  the convening of general meetings;

   e.  the executive and governing bodies;

   f.  the media of publication.

2 To be effective, the articles of association must include provisions on the following:

[70] Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

a.   the term;

b.   the restriction of shareholder eligibility to qualified investors and associated limitation of the transferability of shares (Art. 40, Para. 3);

c.   the categories of shares and rights associated therewith;

d.   the delegation of management and representation, and the attendant procedural details (Art. 51);

e.   the passing of resolutions by means of correspondence.

### Art. 44      Investment regulations

A SICAV shall produce a set of investment regulations. Its contents are based on the provisions regarding the fund contract, unless the law and articles of association provide otherwise.

### Art. 44*a*[71]      Custodian bank

[1] The SICAV must appoint a custodian bank in accordance with Articles 72–74.

[2] FINMA may grant exemptions from this duty if justified, provided:

a.   the SICAV is exclusively open to qualified investors;

b.   one or more institutions which are subject to equivalent supervision execute the transactions related to settlement and specialise in such transactions (prime broker); and

c.   it is ensured that the prime broker or the foreign supervisory authority responsible for the prime broker will provide FINMA with all the information and documents that it requires to carry out its duties.

### Art. 45[72]      Relationship with the Financial Market Infrastructure Act

The provisions on public takeover offers (Arts. 125 to 141 of the Financial Market Infrastructure Act of 19 June 2015[73]) do not apply to SICAVs .

---

[71]   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

[72]   Amended by Annex No 9 of the Financial Market Infrastructure Act of 19 June 2015, in force since 1 Jan. 2016 (AS **2015** 5339; BBl **2014** 7483).

[73]   SR **958.1**

## Section 2 Shareholders' Rights and Obligations[74]

### Art. 46 Membership rights

[1] Any person recognised as a shareholder by the SICAV may exercise membership rights.

[2] The shareholders may represent their shares at a general meeting in person or be represented by a third party. Unless the articles of association provide otherwise, the third party need not be a shareholder.

[3] A SICAV shall keep a register of the shares, in which the names and addresses of company shareholders are recorded. It shall also keep a register under Article 697*l* of the Code of Obligations[75] of the beneficial owners of the shares held by company shareholders.[76]

[4] The articles of association may specify that the company shareholders and investor shareholders are both entitled to at least one seat on the board of directors in the case of self-managed as well as externally managed SICAVs.[77]

### Art. 46*a*[78] Company shareholders' obligation to give notice

[1] Company shareholders whose shares are not listed on a stock exchange are subject to the obligation to give notice under Article 697*j* of the Code of Obligations[79].

[2] The consequences of failure to comply with obligation to give notice are governed by Article 697*m* of the Code of Obligations.

### Art. 47[80] Voting rights

[1] Each share carries one vote.

[2] The Federal Council may authorise FINMA to order the splitting or merging of shares in a share class.

---

[74] Amended by No I 6 of the Federal Act of 12 Dec. 2014 on the Implementation of the revised recommendations 2012 of the Financial Action Task Force, in force since 1 July 2015 (AS **2015** 1389; BBl **2014** 605).

[75] SR **220**

[76] Second sentence inserted by No I 6 of the Federal Act of 12 Dec. 2014 on the Implementation of the revised recommendations 2012 of the Financial Action Task Force, in force since 1 July 2015 (AS **2015** 1389; BBl **2014** 605).

[77] Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

[78] Inserted by No I 6 of the Federal Act of 12 Dec. 2014 on the Implementation of the revised recommendations 2012 of the Financial Action Task Force, in force since 1 July 2015 (AS **2015** 1389; BBl **2014** 605).

[79] SR **220**

[80] Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

### Art. 48      Inspection rights

Inspection rights are based on the provisions of the Code of Obligations[81] regarding the shareholders' inspection rights unless this Act provides otherwise.

### Art. 49      Other rights

In all other respects, Articles 78 et seq. apply.

## Section 3      Organisation

### Art. 50      General meeting

[1] The supreme governing body of the SICAV is the general meeting of shareholders.

[2] The general meeting is held every year within four months of the close of the business year.

[3] Unless otherwise provided for by the Federal Council, in all other respects, the provisions of the Code of Obligations[82] regarding the general meetings of companies limited by shares apply.[83]

### Art. 51      Board of directors

[1] The board of directors consists of at least three but no more than seven members.

[2] The articles of association may authorise the board of directors to transfer management and representation in full or in part to individual members or third parties in accordance with the organizational regulations.

[3] The persons holding executive powers at the SICAV and custodian bank must be independent of the other party.

[4] The board of directors draws up the prospectus as well as the Key Investor Information Document or the simplified prospectus.[84]

[5] The administration of a SICAV may only be delegated to an authorised fund management company in accordance with Article 28 et seq.

[6] Unless otherwise provided for by the Federal Council, in all other respects, the provisions of the Code of Obligations[85] regarding the board of directors of companies limited by shares apply.[86]

81   SR **220**
82   SR **220**
83   Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).
84   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
85   SR **220**
86   Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

**Art. 52**        Audit company

A SICAV shall appoint an audit company (Art. 126 et seq.).

## Chapter 3
## Types of Open-Ended Collective Investment Schemes
## and Investment Regulations
### Section 1        Securities Funds

#### Art. 53        Definition

Securities funds are open-ended collective investment schemes which invest their assets in securities and comply with the laws of the European Communities.

#### Art. 54        Permitted investments

[1] Securities funds may invest in transferable securities issued on a large scale and in non-securitised rights having the same function (uncertified securities) and which are traded on a stock exchange or another regulated market that is open to the public, in addition to other liquid financial assets.

[2] The fund management company may also hold a limited volume of other securities and rights, as well as adequate liquidity.

#### Art. 55        Investment techniques

[1] The fund management company and the SICAV may employ the following investment techniques for the purpose of efficient management:

   a.   securities lending;

   b.   repurchase agreements;

   c.   borrowing of funds, though only on a temporary basis and up to a certain percentage;

   d.   pledging or transferring the ownership of collateral, however, only up to a certain percentage.

[2] The Federal Council may permit other investment techniques such as short selling and the granting of loans.

[3] It defines the percentage limits. FINMA regulates the details.

#### Art. 56        Use of derivatives

[1] The fund management company and the SICAV may conduct transactions in derivatives provided:

   a.   such transactions do not result in a change to the investment characteristics of the securities fund;

24

b.   they have an appropriate organisational structure and adequate risk man-
     agement;

c.   the persons entrusted with processing and monitoring are qualified to do so,
     and can at all times comprehend and track the effect of the derivatives used.

2 The overall exposure to transactions involving derivatives may not exceed a certain
percentage of the fund's net assets. Exposure to transactions involving derivatives
must be calculated in relation to the statutory and regulatory limits, specifically with
regard to risk diversification.

3 The Federal Council determines the percentage rate. FINMA regulates the details.

### Art. 57    Risk diversification

1 In relation to their investments, the fund management company and SICAV must
comply with the principles of risk diversification. As a rule, they may invest only a
certain percentage of the fund's assets in the same debt issuer or company.

2 The voting rights acquired through the purchase of securities or rights in a single
debt issuer or company may not exceed a certain percentage.

3 The Federal Council decides the percentage rates. FINMA regulates the details.

## Section 2    Real Estate Funds

### Art. 58    Definition

Real estate funds are open-ended collective investment schemes which invest their
assets in real estate.

### Art. 59    Permitted investments

1 Real estate funds may invest their assets in:

a.   property, including fixtures and fittings;

b.   investments in and claims on real estate companies whose sole objective is
     the purchase and sale and/or the rental and lease of their own property, pro-
     vided that at least two thirds of their capital and voting rights are incorpo-
     rated in the investment fund;

c.   units in other real estate investment funds and listed real estate investment
     companies amounting to no more than 25% of the fund's total assets;

d.   foreign real estate securities whose value can be adequately valued.

2 Co-ownership of property is permitted only if the fund management company or
the SICAV can exert a dominant influence.

### Art. 60 Securing liabilities

In order to secure their liabilities, the fund management company and SICAV must maintain an adequate proportion of the fund's assets in short-term fixed-interest securities or in funds available at short notice.

### Art. 61 Use of derivatives

The fund management company and SICAV may conduct derivative transactions provided they comply with the investment policy. The provisions concerning the use of derivatives for securities funds (Art. 56) shall apply accordingly.

### Art. 62 Risk diversification

Investments must be diversified by type of property, purpose of use, age, building fabric and location.

### Art. 63 Special duties

[1] The fund management company shall bear responsibility with regard to the investors for ensuring that the real estate companies belonging to the real estate fund comply with this Act and with the fund regulations.

[2] The fund management company, custodian bank and its agents, as well as closely related natural and legal persons, may not acquire real estate assets from real estate funds or assign any such assets to them.

[3] A SICAV may not acquire any real estate assets from the company shareholders, their agents, or closely connected natural or legal persons, nor may it assign such assets to them.

[4] If justified, individual situations may arise where FINMA may grant an exemption from the ban on transactions with closely related persons as defined in paragraphs 2 and 3 if this is in the interest of the investors. The Federal Council regulates the exemption criteria.[87]

### Art. 64 Valuation experts [88]

[1] The fund management company and the SICAV shall appoint at least two natural persons or one legal person as valuation experts. Appointments require the approval of FINMA.[89]

[2] Approval is granted if the valuation experts:[90]

---

87 Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

88 Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

89 Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

90 Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

a. possess the necessary qualifications;

b. are independent;

c.[91] …

3 The valuation experts must conduct their valuations with the due diligence and expertise required of a valuation expert.[92]

4 FINMA may make recognition dependent on the conclusion of professional indemnity insurance or on the evidence of financial guarantees.[93]

5 It may stipulate additional requirements for the valuation experts and describe the valuation methods to be adopted.[94]

### Art. 65    Special powers

1 The fund management company and the SICAV may commission the construction of buildings provided the fund regulations explicitly permit the purchase of building land and the execution of construction projects.

2 They may pledge land and cede the rights of lien as collateral; however, the encumbrance may not exceed on average a certain percentage of the market value of all real estate assets.

3 The Federal Council defines the percentage rate. FINMA regulates the details.

### Art. 66    Issue and redemption of units

1 The fund management company and the SICAV must offer new units first to existing investors.

2 The investors may request the redemption of their units at the end of a financial year provided they give twelve months' prior notice.

### Art. 67    Trading

The fund management company and the SICAV ensure that real estate fund units are regularly traded via a bank or a securities dealer on a stock exchange or over the counter.

---

91  Repealed by No I of the Federal Act of 28 Sept. 2012, with effect from 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

92  Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

93  Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

94  Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

## Section 3     Other Funds for Traditional and Alternative Investments

### Art. 68     Definition

Other funds for traditional and alternative investments are open-ended collective investment schemes that are neither securities funds nor real estate funds.

### Art. 69     Permitted investments

[1] In particular, investments in securities, precious metals, real estate, commodities, derivatives, units of other collective investment schemes, as well as other assets and rights, are permitted for other funds for traditional and alternative investments.

[2] The following investments in particular may be conducted for these funds:

   a.  those that have only limited marketability;

   b.  those that are subject to strong price fluctuations;

   c.  those that exhibit limited risk diversification;

   d.  those that are difficult to value.

### Art. 70     Other funds for traditional investments

[1] Other funds for traditional investments include open-ended collective investment schemes which in terms of their investments, investment techniques and investment restrictions exhibit a risk profile that is typical for traditional investments.

[2] Other funds for traditional investments are subject to the provisions concerning the use of investment techniques and derivatives for securities funds.

### Art. 71     Other funds for alternative investments

[1] Other funds for alternative investments include open-ended collective investment schemes whose investments, structure, investment techniques (short-selling, borrowing of funds, etc.) and investment restrictions exhibit a risk profile that is typical for alternative investments.

[2] Leverage is permitted only up to a certain percentage of the fund's net assets. The Federal Council determines the percentage rate. FINMA regulates the details.

[3] Reference must be made in the fund name, as well as in the prospectus and marketing material, to the special risks involved in alternative investments.

[4] The prospectus must be offered free of charge to interested persons prior to an agreement being concluded or prior to subscription.

[5] FINMA may allow the transaction-related settlement services of a directly investing other fund for alternative investments to be provided by a regulated institution specializing in such transactions (prime broker). It may specify which monitoring functions must be undertaken by the fund management company and the SICAV.

## **Chapter 4      Common Provisions**
### **Section 1      Custodian Bank**

#### **Art. 72**      Organisation

[1] The custodian bank must be a bank pursuant to the Federal Act on Banks and Savings Banks of 8 November 1934[95] and have an appropriate organisational structure to act as custodian bank to collective investment schemes.[96]

[2] In addition to the persons entrusted with the management of the business operations, the persons entrusted with the tasks of custodian bank activity must also comply with the requirements laid down in Article 14 paragraph 1 letter a.

#### **Art. 73**      Duties

[1] The custodian bank is responsible for the safekeeping of the investment fund's assets, the issue and redemption of units, as well as payment transfers on behalf of the investment fund.

[2] It may transfer the responsibility for the safekeeping of the investment fund's assets to third-party custodians and collective securities depositories in Switzerland or abroad, provided this is in the interest of efficient safekeeping. Investors must be informed in the prospectus about the risks associated with such transfers.[97]

[2bis] Financial instruments may only be transferred (paragraph 2) to regulated third-party custodians and collective securities depositories. This does not apply to mandatory safekeeping at a location where the transfer to regulated third-party custodians and collective securities depositories is not possible, in particular due to mandatory legal provisions or to the investment product's modalities. Investors must be informed in the product documentation of safekeeping by non-regulated third-party custodians or collective securities depositories.[98]

[3] The custodian bank ensures that the fund management company or the SICAV complies with this Act and with the fund regulations. It verifies whether:[99]

   a.   the calculation of the net asset value and of the issue and redemption prices of the units is in compliance with this Act and with the fund regulations;

   b.   the investment decisions are in compliance with this Act and with the fund regulations;

   c.   the income is appropriated in accordance with the fund regulations.

---

95    SR **952.0**
96    Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
97    Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
98    Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
99    Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

[4] The Federal Council regulates the requirements for acting as a custodian bank and may specify parameters for the protection of the securities investments.[100]

### Art. 74    Change of custodian bank

[1] In the case of investment funds, the provisions concerning a change of fund management company (Art. 34) also apply accordingly to a change of custodian bank.

[2] In the case of a SICAV, a change of custodian bank requires written agreement and must be approved in advance by FINMA.

[3] FINMA shall publish its decision in the media of publication.

### Section 2
### Prospectus, Key Investor Information Document
### and Simplified Prospectus [101]

### Art. 75    Prospectus

[1] The fund management company and the SICAV shall publish a prospectus for each open-ended collective investment scheme.

[2] The prospectus shall include the fund regulations in cases where interested persons are not notified as to where such regulations may be separately obtained prior to an agreement being concluded or prior to subscription. The Federal Council determines which other information must be contained in the prospectus.

[3] If requested, the prospectus must be provided free of charge to interested persons prior to an agreement being concluded or prior to subscription.

### Art. 76[102]    Key Investors Information Document and simplified prospectus

[1] A document containing key information for investors must be published for securities funds and other funds for traditional investments, while a simplified prospectus must be published for real estate funds.

[2] The Key Investor Information Document contains factual information on the key features of the collective investment scheme concerned. It shall be presented in such a way that investors understand the nature and risks of the collective investment scheme and can make informed investment decisions on that basis.

[3] The simplified prospectus contains a summary of the key information provided in the prospectus. It must be easy to understand.

---

100  Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
     (AS **2013** 585; BBl **2012** 3639).
101  Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
     (AS **2013** 585; BBl **2012** 3639).
102  Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 June 2013
     (AS **2013** 585; BBl **2012** 3639).

4 The Federal Council determines the key characteristics and information. The FINMA may formalize the key information in accordance with international developments.

5 The Key Investor Information Document and simplified prospectus must be made available free of charge to any interested person prior to subscription of the product and prior to concluding an agreement for subscription of the product

**Art. 77**[103]      Common provisions

1 Reference must be made to the prospectus and the Key Investor Information Document or the simplified prospectus in all advertising material, citing where such documents may be obtained.

2 The prospectus, the Key Investor Information Document or the simplified prospectus and any amendment to such documents must be submitted to the FINMA forthwith.

## Section 3      Position of Investors

**Art. 78**      Purchase and redemption

1 On concluding a contract, or subscribing and paying in cash, investors acquire:

   a.   in the case of an investment fund, a claim against the fund management company to participate in the assets and income of the investment fund in accordance with the fund units they acquire;

   b.   in the case of a SICAV, an interest in the company and its unappropriated net earnings in accordance with the shares they acquire.

2 They are, in principle, entitled at all times to request the redemption of their units and payment of the redemption amount in cash. Unit certificates must be returned for cancellation purposes.

3 In the case of collective investment schemes with various unit classes, the Federal Council regulates the details.

4 FINMA may allow a derogation from the duty to make payments in and out of the fund in cash.

5 In the case of collective investment schemes with subfunds, the asset entitlements are based on Article 93 paragraph 2 and Article 94 paragraph 2.

**Art. 79**      Exceptions from the right to redeem at any time

1 In accordance with the investment provisions (Art. 54 et seq., Art. 59 et seq. and Art. 69 et seq.), the Federal Council may in the case of collective investment

---

103   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 June 2013
      (AS **2013** 585; BBl **2012** 3639).

schemes whose value is difficult to ascertain, or which have limited marketability, specify exemptions from the right to redeem at any time.

2 However, it may only suspend the right to redeem at any time for a maximum period of five years.

### Art. 80      Issue and redemption price

The issue and redemption prices of the units are based on the net asset value per unit on the day of valuation, plus or minus any fees and expenses.

### Art. 81      Deferred repayment

1 The Federal Council determines in which instances the fund regulations may specify a limited deferment of the repayment of the units in the interest of all investors.

2 FINMA may in exceptional instances grant limited deferment for the repayment of the units in the interest of all investors.

### Art. 82      Enforced redemption

The Federal Council enforces redemption if:

a.  this is necessary to safeguard the reputation of the financial market, and specifically to combat money laundering;

b.  the investor no longer meets the statutory, regulatory or contractual requirements, or the requirements set out in the articles of association, for participation in a collective investment scheme.

### Art. 83      Calculation and publication of the net asset value

1 The net asset value of an open-ended collective investment scheme is calculated at the market value as of the end of the financial year, and on each day on which units are issued or redeemed.

2 The net asset value per unit represents the market value of the fund's assets, less all the fund's liabilities, divided by the number of units in circulation.

3 FINMA may permit a method of calculating the net asset value(s) that differs from that specified in paragraph 2, provided such method meets international standards and the protective purpose of this Act is not impaired as a result.

4 The fund management company and the SICAV publish the net asset values at regular intervals.

### Art. 84      Right to information

1 The fund management company and the SICAV shall on request supply investors with information concerning the basis for the calculation of the net asset value per unit.

2 If investors express an interest in more detailed information on specific business transactions effected by the fund management company or the SICAV, such as the exercising of membership and creditors' rights, or on risk management, they must be given such information at any time.[104]

3 The investors may request at the courts of the registered office of the fund management company or the SICAV that the audit company or another expert investigate the matter which requires clarification and furnish the investors with a report.

### Art. 85   Claim for reimbursement

If the open-ended collective investment scheme is unlawfully denied asset entitlements or benefits are withheld from it, the investors may claim compensation from the open-ended collective investment scheme concerned.

### Art. 86   Representative of the investors

1 The investors may request that the courts appoint a representative if they wish to pursue a claim for damages in favour of the open-ended collective investment scheme.

2 The court shall give notice of the appointment in the media of publication of the open-ended collective investment scheme.

3 The representative has the same rights as the investors.

4 If the representative files an action for damages in favour of the open-ended collective investment scheme, the investors may no longer exercise their individual right to file such an action.

5 Unless the court decides otherwise, the expenses incurred by the representative are paid by the investment fund.

## Section 4   Accounting, Valuation and Financial Statements

### Art. 87   Accounting duty

Separate books of account must be kept for each open-ended collective investment scheme. Unless this Act or the implementing regulations provide otherwise, Article 662 et seq. of the Code of Obligations[105] apply.

### Art. 88   Valuation at market value

1 Investments which are listed on a stock exchange or another regulated market open to the public shall be valued at the prices paid on the main market.

---

104   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
       (AS **2013** 585; BBl **2012** 3639).
105   SR **220**. Today, Art. 957 et seq.

2 Other investments for which no current price is available must be valued at the price that would probably be obtained in a diligent sale at the time of valuation.

### Art. 89    Annual and semi-annual report

1 An annual report shall be published for each open-ended collective investment scheme within four months of the close of the financial year; it shall contain the following data in particular:

   a.  the annual accounts consisting of a statement of net assets or the balance sheet and the profit and loss account, together with information concerning the appropriation of net income and the disclosure of expenses;

   b.  the number of units redeemed and newly issued during the financial year, as well as the final balance of the issued units;

   c.  the inventory of the fund's assets at market value and the resulting value (net asset value) of a fund unit as of the last day of the financial year;

   d.  the valuation principles as well as the principles used for the calculation of the net asset value;

   e.  a breakdown of the buy and sell transactions;

   f.  the names of persons and companies to which duties have been entrusted;

   g.  information relating to matters of particular economic or legal significance, specifically:
       1.  amendments to the fund regulations,
       2.  material questions concerning interpretation of this Act and the fund regulations,
       3.  a change of fund management company and custodian bank,
       4.[106] changes concerning the executive officers at the fund management company, SICAV or asset manager of collective investment schemes,
       5.  legal disputes;

   h.  the performance of the open-ended collective investment scheme, possibly benchmarking it with comparable investments;

   i.  a brief report by the audit company regarding the information mentioned above, as well as the items set out in Article 90 in the case of real estate funds.

2 The statement of net assets of the investment fund and the balance sheet of the SICAV must be prepared on the basis of market values.

3 A semi-annual report must be issued within two months after the end of the first half of the financial year. The report contains an unaudited statement of net assets or unaudited balance sheet and income statement, as well as information as per Paragraph 1b, c and e.

106   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
     (AS **2013** 585; BBl **2012** 3639).

4 The annual and semi-annual reports shall be filed with FINMA the latest at the time of publication.

5 These are made available for inspection free of charge to interested parties for ten years.

**Art. 90**    Annual accounts and annual report of real estate funds

1 The annual accounts of a real estate fund consist of a consolidated statement of net assets or balance sheet and profit and loss account of the real estate fund and the associated real estate companies. Article 89 applies accordingly.

2 The statement of net assets must show property assets at market value.

3 The inventory of the fund's assets must state the purchase price and estimated market values of the individual property assets.

4 In addition to the information required as per Article 89, the annual report and the annual accounts shall contain the particulars of the valuation expert, the valuation methods and the capitalisation and discounting rates applied.

**Art. 91**    Supervisory requirements

FINMA issues additional regulations concerning the duty to maintain books of account, valuation, financial statements and publication requirements.

## Section 5
## Open-Ended Collective Investment Schemes with Subfunds

**Art. 92**    Definition

In the case of an open-ended collective investment scheme with subfunds (umbrella fund), each subfund constitutes a collective investment scheme in its own right and has its own net asset value.

**Art. 93**    Umbrella funds

1 In the case of an umbrella fund, investors are only entitled to the income and assets of the respective subfund in which they are participating.

2 Each subfund is liable only for its own liabilities.

**Art. 94**    SICAV with subfunds

1 Investors are only entitled to participate in the assets and income of the respective subfund in accordance with the number of shares they hold.

2 Each subfund is liable only for its own liabilities. In contracts with third parties, a SICAV must disclose that liability is restricted to a single subfund. If the restriction

35

is not disclosed, a SICAV is liable with its entire assets, subject to Article 55 and
Article 100 paragraph 1 of the Code of Obligations[107].

## Section 6    Restructuring and Dissolution

### Art. 95[108]    Restructuring

[1] The following restructurings of open-ended collective investment schemes are
permitted:

   a.   a merger through the transfer of assets and liabilities;

   b.   a conversion to a different legal status of a collective investment scheme;

   c.   in the case of SICAVs: the transfer of assets in accordance with Articles 69–
        77 of the Mergers Act of 3 October 2003[109].

[2] A restructuring in accordance with paragraph 1 letters b and c may only be entered
in the Commercial Register following FINMA's approval in accordance with Article
15.

### Art. 96    Dissolution

[1] An investment fund is dissolved:

   a.   if it was formed for an unlimited period: on notice by the fund management
        company or the custodian bank;

   b.   if it was formed for a fixed period: on expiry of such period;

   c.   by order of FINMA:
        1.   if it was formed for a fixed period: based on reasonable cause, at the re-
             quest of the fund management company or the custodian bank,
        2.   if the minimum assets fall below the required amount,
        3.   in the cases specified in Article 13 paragraph 3 et seq.

[2] A SICAV is dissolved:

   a.   if it was formed for an unlimited period: by resolution of the company
        shareholders, provided such resolution is carried by at least two thirds of the
        company shares;

   b.   if it was formed for a fixed period: on expiry of such period;

   c.   by order of FINMA:
        1.   if it was formed for a fixed period: based on reasonable cause, by reso-
             lution of the company shareholders, provided such resolution is carried
             by at least two thirds of the company shares,

107   SR **220**
108   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).
109   SR **221.301**

2. if the minimum assets fall below the stipulated amount,

3. in the cases specified in Article 133 et seq.;

d. in the other cases specified by the Act.

3 For the dissolution of subfunds, paragraphs 1 and 2 apply accordingly.

4 The fund management company and the SICAV shall notify FINMA of the dissolution forthwith, and shall announce the dissolution in the media of publication.

### Art. 97     Consequences of dissolution

1 Following its dissolution, an investment fund or SICAV may neither issue nor redeem any units.

2 In the case of an investment fund, investors have a claim to a proportionate share of the proceeds of liquidation.

3 In the case of a SICAV, investors have the right to a proportionate share of the proceeds of the liquidation. The rights of company shareholders are subordinate. In all other respects, Articles 737 et seq. of the Code of Obligations[110] apply.

## Title 3     Closed-Ended Collective Investment Schemes
## Chapter 1     The Limited Partnership for Collective Investment

### Art. 98     Definition

1 A limited partnership for collective investment is a partnership whose sole object is collective investment. At least one member bears unlimited liability (general partner), while the other members (limited partners) are liable only up to a specified amount (limited partner's contribution).

2 General partners must be companies limited by shares with their registered office in Switzerland. They may only be active as a general partner in one limited partnership for collective investment.

2bis The conditions for obtaining an authorisation as defined in Article 14 also apply to the general partners.[111]

3 Limited partners must be qualified investors as defined in Article 10 paragraph 3.

### Art. 99     Relationship to the Code of Obligations

Unless this Act provides otherwise, the provisions of the Code of Obligations[112] concerning limited partnerships apply.

---

110   SR **220**
111   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).
112   SR **220**

### Art. 100    Commercial Register

[1] The partnership exists on being entered in the Commercial Register.

[2] Notification of the facts to be entered or any amendments thereto must be signed by all general partners in the Commercial Register or submitted in writing together with notarised signatures.

### Art. 101[113]    Partnership name

The partnership name must contain a description of the legal status or its permitted abbreviation.

### Art. 102    Partnership agreement and prospectus

[1] The partnership agreement must contain provisions regarding:

   a.   the partnership name and its registered office;
   b.   the object;
   c.   the company name and the registered office of the general partners;
   d.   total limited partners' contributions;
   e.   the duration;
   f.   the conditions of the limited partners' joining and departing;
   g.   the maintenance of a register of limited partners;
   h.   the investments, investment policy, investment restrictions, risk diversification, the risks associated with investment, and the investment techniques;
   i.   the delegation of management and representation;
   j.   the appointment of a custodian bank and a paying agent.

[2] The partnership agreement must be in writing.

[3] The prospectus specifically sets out the information contained in the partnership agreement in accordance with paragraph 1 letter h.

### Art. 103    Investments

[1] The partnership conducts investments in risk capital.

[2] The Federal Council may also permit other investments.

### Art. 104    Non-competition clause

[1] The limited partners are entitled without the consent of the general partners to conduct other business transactions for their own account and on behalf of third parties and to participate in other companies.

---

[113]   Amended by No III of the Federal Act of 25 Sept. 2015 (Law on Business Names), in force since 1 July 2016 (AS **2016** 1507; BBl **2014** 9305).

2 Unless the partnership agreement provides otherwise, the general partners may without the consent of the limited partners conduct other business transactions for their own account and on behalf of third parties and participate in other companies, provided this is disclosed and the interests of the limited partnership for collective investment are not impaired as a consequence.

### Art. 105    Joining and departure of limited partners

1 Where specified by the partnership agreement, the general partner may decide on the joining and departure of limited partners.

2 This is subject to the provisions of the Code of Obligations114 regarding the exclusion of owners of the limited partnership.

3 The Federal Council may prescribe compulsory exclusion. This shall be based on Article 82.

### Art. 106    Inspection and information

1 The limited partners are entitled to inspect the business accounts of the partnership at any time. Business confidentiality with regard to the companies in which the limited partnership invests shall be preserved.

2 The limited partners are entitled to obtain information about the business performance of the partnership at least once every quarter.

### Art. 107    Audit company

The partnership shall appoint an audit company (Art. 126 et seq.).

### Art. 108    Financial statements

1 With respect to the financial statements of the partnership and the valuation of the assets, Article 88 et seq. apply accordingly.

2 Internationally recognised standards must be observed.

### Art. 109    Dissolution

The partnership is dissolved:

    a.    by resolution of the owners;
    b.    for the reasons set forth in this Act and in the partnership agreement;
    c.    by order of FINMA in the cases specified in Article 133 et seq.

114   SR **220**

## Chapter 2   The Investment Company with Fixed Capital

### Art. 110   Definition

[1] SICAF is a company limited by shares pursuant to the Code of Obligations[115] (Art. 620 et seq. CO):

   a.   the sole object of which is the investment of collective capital;

   b.   the shareholders of which are not required to be qualified pursuant to Article 10 paragraph 3; and

   c.   which is not listed on a Swiss stock exchange.

[2] There must be an appropriate relationship between a SICAF's equity and its total assets. The Federal Council defines this relationship.[116]

### Art. 111   Company name

[1] The company name must contain the designation of its legal status or the abbreviation thereof (SICAF).

[2] In all other respects, the provisions of the Code of Obligations[117] regarding the name of companies limited by shares apply.

### Art. 112   Relationship with the Code of Obligations

Unless this Act provides otherwise, the provisions of the Code of Obligations[118] concerning companies limited by shares apply.

### Art. 113   Shares

[1] The share capital is fully paid up.

[2] The issuing of voting shares, participation certificates, dividend right certificates and preference shares is prohibited.

[3] The Federal Council may specify compulsory redemption. This is laid down in Article 82.

### Art. 114[119]   Custodian bank

The SICAF must appoint a custodian bank in accordance with Articles 72–74.

---

115   SR **220**
116   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
117   SR **220**
118   SR **220**
119   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

### Art. 115     Investment policy and investment restrictions

[1] A SICAF defines the investments, investment policy, investment restrictions, risk diversification, together with the risks associated with the investments, in the articles of association and in the investment regulations.

[2] The investments are subject to Article 69; Articles 64, 70 and 71 apply accordingly.

[3] Resolutions to amend the investment regulations must be passed by a majority of votes at the general meeting.

### Art. 116     Prospectus

A SICAF shall produce a prospectus. In this respect Articles 75 and 77 apply accordingly.

### Art. 117     Financial statements

With respect to the financial statements, Article 89 paragraph 1 letters a and c-i, paragraphs 2-4 and Article 90 apply accordingly in addition to the statutory provisions concerning accounting standards.

### Art. 118     Audit company

A SICAF shall appoint an audit company (Art. 126 et seq.).

## Title 4        Foreign Collective Investment Schemes
## Chapter 1      Definition and Approval

### Art. 119     Definition

[1] The following are considered foreign open-ended collective investment schemes:

   a.  assets that were accumulated on the basis of a fund contract or another agreement with similar effect for the purpose of collective investment and are managed by a fund management company with its registered office and main administrative office abroad;

   b.  companies and schemes with their registered office and main administrative office located abroad whose purpose is collective investment and whose investors have a legal right with regard to the company itself, or with regard to a closely associated company, to the redemption of their units at the net asset value.

[2] Closed-end collective investment schemes are deemed to be companies and schemes with their registered office and main administrative office located abroad whose purpose is collective capital investment and whose investors have no legal right with regard to the company itself, or with regard to a closely connected company, to the redemption of their units at the net asset value.

41

**Art. 120**        Duty to obtain approval

[1] Prior to distributing foreign collective investment schemes in or from Switzerland to non-qualified investors this must be approved by FINMA. The representative shall submit the relevant binding documents such as sales prospectus, articles of association and fund contract to FINMA.[120]

[2] Approval is granted if:

   a.[121] the collective investment scheme, fund management company or company, asset manager of the collective investment scheme and depository are subject to public supervision intended to protect investors;

   b.[122] with regard to organization, investor rights and investment policy, the fund management company or company and the depository are subject to regulations which are equivalent to the provisions of this Act;

   c.   the designation of the collective investment scheme does not provide grounds for confusion or deception;

   d.   a representative and a paying agent are appointed for the distribution of units in Switzerland;

   e.[123] there is an agreement on cooperation and the exchange of information between FINMA and the relevant foreign supervisory authorities for distribution.

[2bis] The representative and the paying agent may only end their mandate with FINMA's prior approval.[124]

[3] The Federal Council may specify a simplified, fast-track approval procedure for foreign collective investment schemes provided such investments have already been approved by a foreign supervisory authority, such arrangement being reciprocal.

[4] Foreign collective investment schemes which are only distributed to qualified investors do not require approval but must meet the conditions pursuant to paragraph 2 letters c and d at all times.[125]

**Art. 121**        Paying agent

[1] The paying agent must be a bank pursuant to the Federal Act on Banks and Savings Banks of 8 November 1934[126].

---

120   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
       (AS **2013** 585; BBl **2012** 3639).
121   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
       (AS **2013** 585; BBl **2012** 3639).
122   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
       (AS **2013** 585; BBl **2012** 3639).
123   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
       (AS **2013** 585; BBl **2012** 3639).
124   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
       (AS **2013** 585; BBl **2012** 3639).
125   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
       (AS **2013** 585; BBl **2012** 3639).
126   SR **952.0**

2 The investors may request the issue and redemption of the units from the paying agent.

### Art. 122   International treaties

Assuming the mutual recognition of regulations and measures of an equivalent standard, the Federal Council may conclude international treaties which specify that collective investment schemes from the signatory countries merely have a duty to register rather than the duty to obtain approval.

## Chapter 2
## Representatives of Foreign Collective Investment Schemes

### Art. 123   Mandate

1 Prior to distributing foreign collective investment schemes in or from Switzerland, the fund management company or the company must appoint a representative to undertake the duties specified in Article 124, subject to the provisions of Article 122.[127]

2 The fund management and the investment scheme company undertake to provide the representative with the information the latter may require for the performance of its tasks.

### Art. 124   Duties

1 The representative represents the foreign collective investment scheme with regard to investors and FINMA. The representative's powers of representation may not be restricted.

2 The representative observes the statutory obligations to report, publish and inform, as well as the codes of conduct of industry bodies which have been declared to be the minimum standard by FINMA. The representative's identity must be disclosed in every publication.

### Art. 125   Place of performance

1 The place of performance for units of the foreign collective investment schemes distributed in Switzerland is the registered office of the representative.

2 It shall continue to be the registered office of the representative after the revocation of authorisation or following the dissolution of the foreign collective investment scheme.

---

[127] Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

### Title 5      Audit[128] and Supervision
### Chapter 1      Audit

#### Art. 126      Appointment

[1] The following persons must appoint an audit company licensed by Federal Audit Oversight Authority under Article 9*a* paragraph 1 of the Auditor Oversight Act of 16 December 2005[129] to carry out an audit under Article 24 of the Financial Market Supervision Act of 22 June 2007[130]:[131]

- a.   fund management companies for themselves and for the investment funds they manage;
- b.   SICAVs;
- c.   limited partnerships for collective investment;
- d.   SICAFs;
- e.[132] asset managers of collective investment schemes;
- f.   representatives of foreign collective investment schemes.

[2] ...[133]

[3] The same audit company must examine the following:

- a.   the fund management company and the investment funds it manages;
- b.   the SICAV and any fund management company that it appoints pursuant to Article 51 Paragraph 5.

[4] FINMA may grant exceptions in the cases given in paragraph 3 letter b.

[5] The persons named in paragraph 1, managed investment funds and any real estate companies belonging to real estate funds or real estate investment companies must have their annual accounts and if applicable their consolidated accounts audited by a state supervised audit firm in accordance with the principles of the Code of Obligations[134] on the ordinary audit.[135]

---

128   Term in accordance with Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829). This change has been made throughout the text.

129   SR **221.302**

130   SR **956.1**

131   Amended by Annex No 4 of the Federal Act of 20 June 2014 (Consolidation of Oversight through Audit Companies), in force since 1 Jan. 2015 (AS **2014** 4073; BBl **2013** 6857).

132   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

133   Repealed by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, with effect from 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

134   SR **220**

135   Inserted by Annex No 4 of the Federal Act of 20 June 2014 (Consolidation of Oversight through Audit Companies), in force since 1 Jan. 2015 (AS **2014** 4073; BBl **2013** 6857).

[6] The Federal Council shall regulate the details. It may authorise FINMA to issue implementing provisions on matters of limited scope, and in particular on largely technical matters.[136]

**Art. 127–129**[137]

**Art. 130**[138]    Duty to provide information

[1] The valuation experts and real estate companies belonging to the collective investment scheme shall provide the audit company with full access to the accounting records, the accounting vouchers, the records and to the reports of the valuation experts; moreover, they shall supply them with all the information needed to perform the audit function.

[2] The audit company of the custodian bank and the audit company of the other licensees cooperate with each other.

**Art. 131**[139]

## Chapter 2    Supervision

**Art. 132**[140]    Supervision

[1] FINMA issues the necessary authorisations and approvals pursuant to this Act and supervises compliance with the statutory, contractual and regulatory provisions as well as the provisions of the articles of association.

[2] It does not review the expediency of the business decisions taken by the licensees.

**Art. 133**[141]    Supervisory instruments

[1] In the event of infringements of the contractual or regulatory provisions or of the provisions of the articles of association, the supervisory instruments pursuant to

---

136   Inserted by Annex No 4 of the Federal Act of 20 June 2014 (Consolidation of Oversight through Audit Companies), in force since 1 Jan. 2015 (AS **2014** 4073; BBl **2013** 6857).

137   Repealed by Annex No 4 of the Federal Act of 20 June 2014 (Consolidation of Oversight through Audit Companies), with effect from 1 Jan. 2015 (AS **2014** 4073; BBl **2013** 6857).

138   Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

139   Repealed by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, with effect from 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

140   Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

141   Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

Credit institutions

Articles 30–35 and 37 of the Financial Market Supervision Act of 22 June 2007[142] apply mutatis mutandis.[143]

[2] Article 37 of the Financial Market Supervision Act of 22 June 2007 also applies mutatis mutandis to approval under the present Act.

[3] If the investors' rights appear to be endangered, FINMA may order the licensees to provide the necessary collateral.

[4] If an enforceable order issued by FINMA is not complied with after prior warning within the deadline that has been set, FINMA may itself carry out the required actions at the expense of the negligent party.

### Art. 134[144]   Liquidation

Licensees from which authorisation has been withdrawn or collective investment schemes from which approval has been withdrawn may be liquidated by FINMA. The Federal Council regulates the details.

### Art. 135   Measures in the case of non-authorised or non-approved activity

[1] Where persons operate without any authorisation or approval, FINMA may order that the collective investment scheme be dissolved.

[2] To safeguard the interests of investors, FINMA may order that the collective investment scheme be changed to another legal status.

### Art. 136   Other measures

[1] In justified cases, FINMA may, in accordance with Article 64, appoint valuation experts to value the assets of real estate funds or real estate investment companies.

[2] It may dismiss the valuation experts appointed by the real estate fund or by the real estate investment company.

### Art. 137[145]   Initiation of bankruptcy proceedings

[1] Where there is justified concern that a licensee as defined in Article 13 paragraph 2 letters a–d or f is excessively indebted or has serious liquidity problems and there is no prospect of restructuring or restructuring has failed, FINMA shall withdraw authorisation from the licensee, initiate bankruptcy proceedings and make this public.[146]

[142] SR **956.1**
[143] Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
[144] Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).
[145] Amended by Annex No 3 of the Federal Act of 18 March 2011 (Securing Investments), in force since 1 Sept. 2011 (AS **2011** 3919; BBl **2010** 3993).
[146] Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

2 The provisions on composition proceedings (Art. 293–336 of the Federal Act of 11 April 1889[147] on Debt Enforcement and Bankruptcy, DEBA), on a stay of proceedings for companies (Art. 725 and 725*a* of the Code of Obligations[148]) and on notification of the court (Art. 728*c* para. 3 of the Code of Obligations) do not apply to the licensee referred to in paragraph 1.

3 FINMA appoints one or more bankruptcy liquidators. These are subject to supervisory control by FINMA and shall provide FINMA with a report if requested.[149]

### Art. 138[150]    Conduct of bankruptcy proceedings

1 The bankruptcy order has the effect of a commencement of bankruptcy proceedings pursuant to Articles 197-220 DEBA[151].

2 The bankruptcy proceedings are conducted in accordance with Articles 221–270 DEBA. Article 138 letters a-c remain subject to reservation.

3 FINMA may issue different rulings and orders.

### Art. 138*a*[152]    Creditors' meetings and creditors' committees

1 The bankruptcy liquidator may apply to FINMA for the following:

   a.  to constitute a creditors' meeting and determine its powers as well as the necessary attendance and voting quorums necessary to pass resolutions;

   b.  to designate a creditors' committee and determine its composition and powers.

2 In the case of a SICAV with subfunds as defined in Article 94, a creditors' meeting or creditors' committee may be established for each subfund.

3 FINMA is under no obligation to follow the proposals of the bankruptcy liquidator.

### Art. 138*b*[153]    Distribution and closure of the proceedings

1 The distribution list is not published.

2 Following the distribution, the bankruptcy liquidator shall provide FINMA with a final report.

3 FINMA issues the necessary orders for the closure of the proceedings. It announces the closure publicly.

---

147  SR **281.1**
148  SR **220**
149  Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
150  Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
151  SR **281.1**
152  Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
153  Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

### Art. 138*c*[154]   Foreign insolvency proceedings

Articles 37*f* and 37*g* of the Federal Act on Banks and Savings Banks of 8 November 1934[155] apply to recognising foreign bankruptcy decrees and insolvency measures, as well as for coordination with foreign insolvency proceedings.

### Art. 138*d*[156]   Appeals

[1] In bankruptcy proceedings, creditors and owners of an authorised party covered by Article 137 paragraph 1 may appeal only against realisation actions. Appeals pursuant to Article 17 DEBA[157].

[2] Appeals in bankruptcy proceedings have no suspensive effect. The instructing judge can restore the suspensive effect on request.

### Art. 139[158]   Duty to provide information

[1] Persons who perform a role in the context of this Act must provide FINMA with all the information and documents that it requires to carry out its duties.

[2] FINMA may order licensees to provide it with the information it requires to carry out its duties.[159]

### Art. 140   Service of judgments

The cantonal civil courts and the Federal Court shall provide FINMA with a full copy of their decisions in civil disputes between a person or company subject to this Act and an investor, in their entirety and free of charge.

### Art. 141[160]

### Art. 142[161]

### Art. 143[162]

---

[154] Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

[155] SR **952.0**

[156] Inserted by Annex No 9 of the Financial Market Infrastructure Act of 19 June 2015, in force since 1 Jan. 2016 (AS **2015** 5339; BBl **2014** 7483).

[157] SR **281.1**

[158] Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

[159] Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

[160] Repealed by Annex No 9 of the Financial Market Infrastructure Act of 19 June 2015, with effect from 1 Jan. 2016 (AS **2015** 5339; BBl **2014** 7483).

[161] Repealed by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, with effect from 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

[162] Repealed by Annex No 9 of the Financial Market Infrastructure Act of 19 June 2015, with effect from 1 Jan. 2016 (AS **2015** 5339; BBl **2014** 7483).

### Art. 144    Collection and reporting of data [163]

[1] FINMA is authorised to collect data concerning licensees' business activities and the trend of collective investment schemes in order to maintain market transparency or to execute its supervisory function. It may appoint third parties to collect this information or order licensees to submit this data themselves.[164]

[2] Third parties appointed to collect data must treat such data as confidential.

[3] The statistical reporting duties vis-à-vis the Swiss National Bank, as specified in the Swiss National Bank Act of 3 October 2003[165], together with the right of FINMA and the Swiss National Bank to exchange data are reserved.

## Title 6      Liability and Criminal Provisions
## Chapter 1    Liability

### Art. 145    Principle

[1] Any person who breaches their duties is liable to the company, the individual investors and the company's creditors for the losses resulting therefrom, unless they prove that they are not at fault. Any person involved in the establishment, management, asset management, distribution, auditing or liquidation of any of the following entities may be held liable:

   a.   the fund management company;
   b.   the SICAV;
   c.   the limited partnership for collective investment;
   d.   the SICAF;
   e.   the custodian bank;
   f.   the distributor;
   g.   the representative of foreign collective investment schemes;
   h.   the audit company;
   i.   the liquidator.

[2] Liability as defined in paragraph 1 also applies to the valuation expert and the representative of the investors.[166]

[3] Any person who assigns the fulfilment of a task to a third party is liable for the losses caused by that third party unless they prove that they applied the degree of due diligence with regard to the selection, instruction and monitoring required in the

163  Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
164  Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
165  SR **951.11**
166  Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, with effect from 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

given circumstances, subject to Article 31 paragraph 5, and Article 73 paragraph 2.[167]

[4] The liability of the executive and governing bodies of the fund management company, SICAV and SICAF is based on the provisions of the Code of Obligations[168] governing companies limited by shares.

[5] The liability of a limited partnership for collective investment is based on the provisions of the Code of Obligations governing limited partnerships.

### Art. 146     Joint and several liability and recourse

[1] If more than one person is liable to pay compensation, each of them is liable jointly and severally to the extent that the loss is attributable directly to them by reason of their fault and the circumstances.

[2] The claimant may file a claim for the overall loss against more than one party jointly, and may request that in the same proceedings the court determine each individual defendant's liability to pay compensation.

[3] The court, taking all circumstances into consideration, determines recourse among the parties.

### Art. 147     Time limits

[1] The right to claim damages expires five years after the day on which the person affected became aware of the loss and of the person liable to pay compensation, but not later than one year after redemption of a unit and in all cases not later than ten years after the harmful act.

[2] If the proceedings relate to an offence punishable act for which criminal law prescribes a longer limitation period, this period also applies to the civil claim.

---

[167]  Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).
[168]  SR **220**

## **Chapter 2   Criminal Provisions**

**Art. 148**   Felonies and misdemeanours[169]

[1] Any person who wilfully does any of the following is liable to a custodial sentence not exceeding three years or to a monetary penalty:[170]

a.[171] …

b.   establishes a collective investment scheme without approval or authorisation;

c.[172] …

d.[173] distributes domestic and foreign collective investment schemes without approval or authorisation;

e.   fails to maintain the books of account in an orderly manner or does not archive company books of account, records and documents as prescribed;

f.   in the annual accounts, annual report, semi-annual report, prospectus, the Key Investor Information Document or simplified prospectus, or in other information:[174]

   1.   provides false information or withholds material facts,

   2.   does not provide all the mandatory information;

g.   with respect to the annual accounts, annual report, semi-annual report, prospectus, Key Investor Information Document or simplified prospectus:[175]

   1.   fails to produce them or fails to produce them in an orderly manner,

   2.   fails to publish them or fails to publish them by the specified deadline,

   3.   fails to submit them to FINMA or fails to submit them to FINMA by the specified time,

   4.[176] …

---

169   Amended by No I 1 of the Federal Act of 12 Dec. 2014 on Expanding the Offence of Breach of Professional Confidentiality, in force since 1 July 2015 (AS **2015** 1535; BBl **2014** 6231 6241).

170   Amended by No I 1 of the Federal Act of 12 Dec. 2014 on Expanding the Offence of Breach of Professional Confidentiality, in force since 1 July 2015 (AS **2015** 1535; BBl **2014** 6231 6241).

171   Repealed by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, with effect from 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

172   Repealed by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, with effect from 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

173   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

174   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

175   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

176   Repealed by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, with effect from 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

- h. provides false information to the audit company, the investigating officer, the administrative receiver, the liquidator or FINMA or refuses to provide the requested information;

i.[177] …

- j. as valuation experts, commit a gross breach of the duties assigned to them;

- k. discloses confidential client information that has been entrusted to a person in their capacity as a member of an executive or governing body, employee, agent or liquidator of a fund management company, or that such person has become party to in the course of their duties, even after termination of the official or contractual relationship or the professional activity.

- l.[178] discloses confidential information disclosed to them under letter k to other persons or exploits such information for their own benefit or for the benefit of another person.

[1bis] Any person who secures a financial advantage for themselves or for another person through an act under paragraph 1 letters k or l shall be liable to a custodial sentence not exceeding five years or to monetary penalty.[179]

[2] Where the offender acts through negligence, the penalty is a fine not exceeding CHF 250,000.

[3] …[180]

### Art. 149     Contraventions

[1] Any person who wilfully does any of the following is liable to a fine not exceeding CHF 500,000:

- a. commits a breach of the provision concerning the protection against confusion or deception (Art. 12);

- b. provides non-permissible, false or misleading information in advertising material for a collective investment scheme;

- c.[181] distributes an in-house fund;

- d. fails to file the required notification with FINMA, the Swiss National Bank or investors, or provides false information therein;

---

[177] Repealed by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, with effect from 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

[178] Inserted by No I 1 of the Federal Act of 12 Dec. 2014 on Expanding the Offence of Breach of Professional Confidentiality, in force since 1 July 2015 (AS **2015** 1535; BBl **2014** 6231 6241).

[179] Inserted by No I 1 of the Federal Act of 12 Dec. 2014 on Expanding the Offence of Breach of Professional Confidentiality, in force since 1 July 2015 (AS **2015** 1535; BBl **2014** 6231 6241).

[180] Repealed by Annex No 9 of the Financial Market Infrastructure Act of 19 June 2015 with effect from 1 Jan. 2016 (AS **2015** 5339; BBl **2014** 7483).

[181] Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

    e.    distributes a structured product to non-qualified investors without:[182]
        1.    complying with the conditions of Article 5 Paragraph 1 letter a,
        2.    a simplified prospectus being available,
        3.[183] the simplified prospectus making reference as per Article 5 Paragraph 2 letter c.

    f.[184] fails to keep the share register in terms of Article 46 paragraph 3 correctly.

[2] Where the offender acts through negligence, the penalty is a fine not exceeding CHF 150,000.

[3] …[185]

[4] …[186]

**Art. 150**[187]    Prosecution of breaches of client confidentiality

Responsibility for the prosecution and judgment of breaches of client confidentiality (Article 148 paragraph 1 letter k) rests with the cantons.

**Art. 151**[188]

---

182   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).
183   Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).
184   Inserted by No I 6 of the Federal Act of 12 Dec. 2014 on the Implementation of the revised recommendations 2012 of the Financial Action Task Force, in force since 1 July 2015 (AS **2015** 1389; BBl **2014** 605).
185   Repealed by Annex No 9 of the Financial Market Infrastructure Act of 19 June 2015, with effect from 1 Jan. 2016 (AS **2015** 5339; BBl **2014** 7483).
186   Repealed by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, with effect from 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).
187   Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).
188   Repealed by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, with effect from 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).

### Title 7        **Final Provisions**[189]

#### Chapter 1
**Implementation; Repeal and Amendment of Existing Law**[190]

**Art. 152**[191]        Implementation

[1] The Federal Council issues the implementing provisions.

[2] When issuing subordinate legislation, the Federal Council and FINMA shall observe the key requirements of the law of the European Communities.

**Art. 153**        Repeal and amendment of existing law

The repeal and amendment of the existing law are set out in the Annex.

#### Chapter 2        **Transitional Provisions**[192]

**Art. 154**        Transitional provisions for Swiss investment funds

[1] When this Act comes into force, pending proceedings concerning amendments to the investment regulations as well as a change in fund management company or custodian bank are assessed on the basis of existing procedural law.

[2] Within one year of this Act coming into force, fund management companies must:

   a.    publish a simplified prospectus for each real estate fund and for all other funds for traditional investments;

   b.[193] provide evidence to FINMA that the asset managers of Swiss collective investment schemes which they appoint are subject to government supervision.

[3] Within one year of this Act coming into force, fund management companies must submit the amended fund regulations to FINMA for approval.

[4] In special cases, FINMA may extend the time limits given in this Article.

**Art. 155**        Transitional provisions for foreign collective investment schemes

[1] Within six months of this Act coming into force, foreign collective investment schemes which are newly subject to this Act must report to FINMA and file an

189   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).
190   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).
191   Amended by Annex No 14 of the Financial Market Supervision Act of 22 June 2007, in
      force since 1 Jan. 2009 (AS **2008** 5207 5205; BBl **2006** 2829).
192   Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).
193   Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
      (AS **2013** 585; BBl **2012** 3639).

application for approval. They may continue their activities until a decision regarding approval is reached.

² FINMA shall decide whether to grant approval within two years following the Act coming into force.

³ In special cases, FINMA may extend the time limits given in this Article.

### Art. 156     Transitional provisions for representatives of foreign collective investment schemes

¹ Within one year of this Act coming into force, representatives of foreign collective investment schemes must publish a simplified prospectus and submit it to FINMA in respect of each foreign collective investment scheme which they represent in Switzerland and which is comparable in Switzerland to a real estate fund or other fund for traditional investments.

² Within one year of this Act coming into force, representatives of foreign collective investment schemes must provide FINMA with evidence that they have appointed an audit company (Article 126 et seq.).

### Art. 157     Transitional provisions for licensees and Swiss collective investment schemes

¹ Within six months of this Act coming into force, the following persons must register with FINMA:

   a.   SICAF;

   b.[194] asset managers of collective investment schemes.

² Within one year of this Act coming into force, they must satisfy the requirements of the Act and file an application for approval or authorisation. They may continue their activity until a decision regarding authorisation is reached.

³ FINMA decides whether to grant approval or authorisation within two years following the Act coming into force.

⁴ In special cases, FINMA may extend the time limits given in this Article.

### Art. 158     Transitional provisions for legal entities which use a designation pursuant to Article 12

¹ Within one year of this Act coming into force, legal entities whose designation breaches Article 12 must amend such designation.

² If the necessary amendment of the designation is not completed within the given period, FINMA shall grant the legal entity a period of grace. If such period of grace expires with no action being taken, FINMA shall dissolve the legal entity for the purpose of liquidation and appoint the liquidators.

---

[194]  Amended by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
        (AS **2013** 585; BBl **2012** 3639).

## Chapter 3[195]
## Transitional Provisions for the Amendment of 28 September 2012

**Art. 158*a***     Transitional provisions for Swiss collective investment schemes

[1] Fund management companies, SICAVs and limited partnerships for collective investment must submit their amended fund contracts, fund regulations and partnership agreements to FINMA for approval within two years following the amendment of 28 September 2012 coming into force.

[2] Fund management companies and SICAVs which have delegated the investment decisions of Swiss collective investment schemes abroad where no corresponding agreement exists between FINMA and the relevant foreign supervisory authorities, despite the fact that foreign law requires such an agreement, shall report said delegations to FINMA forthwith. One year after this amendment coming into force, they must submit a statement in which such authorities agree to cooperate and exchange information with FINMA.

[3] In special cases, FINMA may extend the time limits given in this Article.

**Art. 158*b***     Transitional provisions for the delegation of investment decisions and safekeeping of the investment fund's assets

[1] Asset managers of collective investment schemes, fund management companies and SICAVs which have delegated investment decisions to asset managers of collective investment schemes which are not subject to recognised supervision must notify FINMA of said delegation within six months following the amendment of 28 September 2012 coming into force. The delegation must fulfil the statutory requirements no later than two years after this amendment has come into force, unless the delegation has ensued to an asset manager of collective investment schemes as defined in Article 158*c* paragraph 2.

[2] Custodian banks must confirm to FINMA that the safekeeping of fund assets of existing Swiss collective investment schemes has only been transferred to third-party custodians and collective securities depositories as defined in Article 73 no later than two years after this amendment has come into force, and that such transfer is in the interest of efficient safekeeping.

**Art. 158*c***     Transitional provisions for asset managers and fund management companies of foreign collective investment schemes

[1] Asset managers of foreign collective investment schemes which now are also subject to this Act must report to FINMA no later than six months after the amendment of 28 September 2012 has come into force.

---

[195] Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013 (AS **2013** 585; BBl **2012** 3639).

[2] They must meet the statutory requirements no later than two years after this amendment has come into force and apply for authorisation. They may continue their activities until a decision regarding their application has been reached.

[3] In special cases, FINMA may extend the time limits given in this Article.

**Art. 158***d*      Transitional provision for the distribution of collective
                  investment schemes

[1] Representatives of foreign collective investment schemes and distributors which are now subject to this Act must report to FINMA no later than six months after the amendment of 28 September 2012 has come into force.

[2] They must meet the statutory requirements no later than two years after this amendment has entered into force and apply for authorisation. They may continue their activities until a decision regarding their application has been reached.

[3] Representatives distributing foreign collective investment schemes under existing law, which previously did not require an agreement between FINMA and the relevant supervisory authority, must submit a statement to FINMA no later than one year after this amendment has come into force to confirm that such authorities agree to cooperate and exchange information with FINMA in order to continue to distribute funds.

[4] Foreign collective investment schemes which are distributed exclusively to qualified investors in Switzerland must meet the conditions stipulated in Article 120 paragraph 4 and Article 123 no later than two years after this amendment has come into force.

[5] Foreign collective investment schemes which are admitted for distribution to non-qualified investors in or from Switzerland must meet the newly introduced requirements pursuant to Article 120 paragraph 2 no later than one year after this amendment has come into force.

[6] In special cases, FINMA may extend the time limits given in this Article.

**Art. 158***e*      Transitional provision for high-net-worth individuals pursuant to
                  Article 10 paragraph 3[bis]

High net worth individuals are no longer permitted to invest in collective investments schemes reserved for qualified investors if they do not meet the requirements of Article 10 paragraph 3[bis] within two years after the amendment of 28 September 2012 has come into force.

### **Chapter 4    Referendum and Commencement**[196]

**Art. 159**        …[197]

[1] This Act is subject to an optional referendum.

[2] The Federal Council determines its commencement date.

Commencement date: 1 January 2007[198]

---

[196]  Inserted by No I of the Federal Act of 28 Sept. 2012, in force since 1 March 2013
       (AS **2013** 585; BBl **2012** 3639).
[197]  Repealed by No I of the Federal Act of 28 Sept. 2012, with effect from 1 March 2013
       (AS **2013** 585; BBl **2012** 3639).
[198]  Federal Council Decree of 22 Nov. 2006

*Annex*
(Art. 153)

## Amendment of the existing law

I

The Investment Funds Act of 18 March 1994[199] is repealed.

II

The following federal acts are amended as follows:
…[200]

---

[199] [AS **1994** 2523, **2000** 2355 Annex No 27, **2004** 1985 Annex No II 4]
[200] The amendments may be consulted under AS **2006** 5379.