# EXHIBIT 4

**951.311**

*English is not an official language of the Swiss Confederation. This translation is provided for information purposes only and has no legal force.*

# Ordinance
# on Collective Investment Schemes
**(Collective Investment Schemes Ordinance, CISO)**

of 22 November 2006 (Status as of 1 January 2015)

*The Swiss Federal Council,*

based on the Federal Act of 23 June 2006[1] on Collective Investment Schemes (CISA; referred to below as: the Act),

*decrees:*

## Title 1        General Provisions
## Chapter 1      Object and Scope

**Art. 1**[2]        Qualified investors under foreign law
            (Art. 2 para. 1 let. e CISA)

The following are deemed qualified investors under foreign law pursuant to Article 2 paragraph 1 letter e of the Act:

   a.   institutional investors with professional treasury operations, specifically including regulated financial intermediaries and insurance institutions, public entities, retirement benefits institutions and companies with professional treasury operations;

   b.   high-net-worth individuals who at the time of purchase meet requirements that are comparable to those of Article 6;

   c.   private individuals who have concluded a discretionary management agreement with a regulated financial intermediary that purchases units of collective investment schemes for their account.

**Art. 1***a*[3]        Investment club
            (Art. 2 para. 2 let. f CISA)

Irrespective of its legal status, an investment club must meet the following requirements:

AS **2006** 5787
1    SR **951.31**
2    Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
3    Originally Art. 1

1

a.  The membership rights are set out in the relevant constitutive document for its chosen legal status.

b.  The members or a section of the members take the investment decisions.

c.  The members are informed about the status of the investments on a regular basis.

d.  The number of members does not exceed twenty.

**Art. 1***b*[4]   Non-subject asset managers of collective investment schemes
(Art. 2 para. 2 let. h CISA)

[1] The following principles apply to calculation of the thresholds of the assets managed by the asset manager of collective investment schemes pursuant to Article 2 paragraph 2 letter h numbers 1 and 2 of the Act:

a.  Assets managed include all Swiss and foreign collective investment schemes managed by the same asset manager of collective investment schemes irrespective of whether it manages them directly or via delegation or via a company with which it is connected:
    1.  via a single management; via
    2.  a relationship of common control; or
    3.  via a significant direct or indirect interest.

b.  The value is calculated on at least a quarterly basis, under due consideration of any leverage effect.

c.  For collective investment schemes that were established more than 12 months previously, the threshold may be calculated on the basis of the average value of the assets over the last four quarters.

d.  The value of the collective investment schemes pursuant to Article 2 paragraph 2 letter h number 2 of the Act is calculated on the basis of the capital commitments or nominal value of the collective investment vehicles concerned, provided the price of the investments underlying such vehicles is not obtained through trading on a regulated market.

[2] FINMA regulates the details for calculating the assets and the leverage effect in accordance with paragraph 1.

[3] Where an asset manager of collective investment schemes exceeds a threshold as defined in Article 2 paragraph 2 letter h numbers 1 and 2 of the Act, it shall notify FINMA to that effect within 10 days and submit to the latter an application for approval pursuant to Article 14 et seq. of the Act within 90 days.

[4] Irrespective of their legal status, public or private companies that are connected to one another through an economic unit are deemed to be group companies of the group of companies pursuant to Article 2 paragraph 2 letter h number 3 of the Act.

---

[4]   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

[5] Companies constitute an economic unit when one company directly or indirectly holds more than half the voting rights or capital of the other, or controls it in any other way.

### Art. 1c[5]   Voluntary submission
(Art. 2 para. 2bis CISA)

[1] An asset manager of collective investment schemes as defined in Article 2 paragraph 2 letter h of the Act may submit an application for authorisation to FINMA in accordance with Article 14 et seq. of the Act if it:

a.   has its registered office in Switzerland; and

b.   Swiss or applicable foreign law provides that the asset management of collective investment schemes may only be delegated to a regulated asset manager of collective investment schemes.

[2] It must meet the same conditions of authorisation as the asset manager of collective investment schemes that is required to obtain authorisation.

### Art. 2   Investment company
(Art. 2 para. 3 CISA)

Newly established investment companies whose issue prospectus provides for a listing on a Swiss exchange are treated as equivalent to listed companies provided listing is completed within one year.

### Art. 3[6]   Distribution
(Art. 3 CISA)

[1] The offering of collective investment schemes or advertising for collective investment schemes includes any type of activity whose object is the purchase of units of collective investment schemes by an investor.

[2] At the instigation of or on the own initiative of investors pursuant to Article 3 paragraph 2 letter a of the Act, information is provided or collective investment schemes subscribed when:

a.   the information is issued in the context of advisory agreements as defined in paragraph 3 or the collective investment schemes are subscribed in the context of such agreements;

b.   the investor requests information or purchases units of a specific collective investment scheme without prior action or contact, specifically of the asset manager of collective investment schemes, distributor or representative.

[3] Advisory agreements pursuant to Article 3 paragraph 2 letter a of the Act are agreements that:

5   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
6   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

a.    are aimed at a long-term advisory relationship in return for a fee; and

b.    are concluded in writing with a regulated financial intermediary as defined in Article 10 paragraph 3 letter a of the Act or with an independent asset manager in accordance with Article 3 paragraph 2 letter c of the Act.

[4] Offerings of collective investment schemes and advertising for collective investment schemes that are exclusively reserved for investors pursuant to Article 10 paragraph 3 let. a and b of the Act must not be accessible to the other qualified and non-qualified investors.

[5] The publication of prices, net asset values and tax data by regulated financial intermediaries is not deemed distribution unless such announcements contain contact information.

[6] Employee share participation schemes pursuant to Article 3 paragraph 2 letter e of the Act must:

a.    constitute a direct or indirect investment in the employer's company or in another company that by way of a majority of the votes or in any other way brings the company together with the employer's company under a single management (group);

b.    be directed at employees:
      1.    who are not serving a period of notice at the time of the offering,
      2.    for whom the employee participation plan is a component of the salary.

[7] In the case of structured products, paragraphs 4 and 5 apply mutatis mutandis.

### Art. 4        Structured products
(Art. 5 CISA)

[1] A structured product may only be distributed to non-qualified investors in or from Switzerland if it:

a.    is issued, guaranteed or secured in an equivalent manner by a financial intermediary pursuant to Article 5 paragraph 1 let. a numbers 1–3 of the Act;

b.    is issued, guaranteed or secured in an equivalent manner by a regulated financial intermediary pursuant to Article 5 paragraph 1 let. a number 4 of the Act which has a branch in Switzerland, unless the structured product is listed on a Swiss stock exchange that ensures transparency as provided for in paragraph 2 and Article 5 paragraph 2 of the Act.[7]

[1bis] In particular, the following are deemed to be equivalent collateral pursuant to Article 5 paragraph 1 and paragraph 1bis of the Act:

a.    any legally enforceable assurance from a regulated financial intermediary pursuant to Article 5 paragraph 1 letter a of the Act:
      1.    to guarantee the performance obligations of the issuer of a structured product,

7    Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

2. to provide the issuer with financial resources such that it is able to satisfy the claims of the investors; or

b. the provision of legally enforceable physical security held in Switzerland in favour of the investors.[8]

[1ter] A special purpose entity is a legal person whose exclusive purpose is the issuing of structured products and whose assets may only be used in the interests of the investors.[9]

[2] Where a structured product is not issued, guaranteed or secured in an equivalent manner by a regulated financial intermediary pursuant to Article 5 paragraph 1 of the Act, attention must explicitly be drawn thereto in the simplified prospectus.[10]

[3] The financial intermediaries specified in Article 5 paragraph 1a of the Act shall formalize the requirements for the simplified prospectus through a system of self-regulation. This shall be approved by the Swiss Financial Market Supervisory Authority (FINMA).[11]

[4] The requirement to produce a simplified prospectus does not apply where the structured product:

a. is listed on a Swiss exchange, thereby ensuring transparency pursuant to paragraph 2 and Article 5 paragraph 2 of the Act or

b.[12] is not distributed in Switzerland but from Switzerland to non-qualified investors and transparency is assured by virtue of foreign regulations pursuant to Article 5 paragraph 2 of the Act.

[5] The provisional simplified prospectus must denote that the information is only indicative and refer investors to the issue date of the definitive simplified prospectus. The requirements for the provisional simplified prospectus are based on paragraph 3.[13]

---

8   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
    (AS **2013** 607).
9   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
    (AS **2013** 607).
10  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
    (AS **2013** 607).
11  Amended by Annex No 6 of the Financial Market Audit Act of 15 Oct. 2008,
    in force since 1 Jan. 2009 (AS **2008** 5363).
12  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
    (AS **2013** 607).
13  Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
    (AS **2013** 607).

## Chapter 2   Collective Investment Schemes

**Art. 5**[14]      Definition of collective investment scheme
            (Art. 7 para. 3 and 4 CISA)

[1] Irrespective of legal status, collective investment schemes are assets provided by at least two mutually independent investors for the purpose of collective investment and which are managed externally.

[2] Investors are mutually independent when they provide assets that are mutually independent in legal and de facto terms.

[3] For group companies in the same group of companies pursuant to Article 1*b* paragraph 4, the requirement for the assets to be independent pursuant to paragraph 2 does not apply.

[4] The assets of a collective investment scheme may be provided by a single investor (single investor fund) where such investor is an investor pursuant to Article 10 paragraph 3 letter b or c of the Act.

[5] The restriction of investor eligibility to investors as defined in paragraph 4 must be disclosed in the relevant documents pursuant to Article 15 paragraph 1 of the Act.

**Art. 6**[15]      Qualified investors
            (Art. 10 para. 3bis and 3ter CISA)

[1] A high-net-worth individual pursuant to Article 10 paragraph 3bis of the Act is any natural person who at the time of subscribing to the collective investment scheme meets one of the following conditions:

   a.  Investors shall provide evidence that they:
       1.  have the knowledge required to comprehend the risks of the investments based on their individual education and professional experience or based on comparable experience in the financial sector; and
       2.  hold assets of at least five hundred thousand Swiss francs.
   b.  Investors shall confirm in writing that they hold assets of at least five million Swiss francs.

[2] The financial investments directly or indirectly owned by the investors are attributed to the assets pursuant to paragraph 1, specifically:

   a.  bank credit balances at sight or on demand;
   b.  trust funds;
   c.  securities including collective investment schemes and structured products;
   d.  derivatives;

---

14   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
     (AS **2013** 607).
15   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
     (AS **2013** 607).

6

e.   precious metals;

f.   life insurance policies with a surrender value.

[3] Direct investments in real estate, social security entitlements and occupational pension assets are not financial investments pursuant to paragraph 2.

[4] Assets pursuant to paragraph 1 letter b may comprise immovable assets of up to two million Swiss francs. Immovable assets are included at their net value. The net value is calculated on the basis of the market value less all debt associated with the immovable asset.

[5] At the time of purchase, the investor must provide evidence of the assets pursuant to paragraph 1.

**Art. 6***a*[16]      Written declaration
          (Art. 10 para. 3bis and 3ter CISA)

[1] High-net-worth individuals wishing to be considered qualified investors pursuant to Article 10 paragraph 3bis of the Act shall confirm this in writing. If a private investment structure is set up for one or more high net-worth individuals, confirmation may be provided by a person responsible for managing the investment structure provided he or she is authorised to do so by the investment structure.[17]

[2] The financial intermediary and the independent asset manager shall:

a.   notify the investors pursuant to Article 10 paragraph 3ter of the Act that they are deemed a qualified investor;

b.   explain the associated risks to them; and

c.   refer them to the opportunity to be able to explain in writing that they do not wish to be deemed a qualified investor

## **Chapter 3    Authorisation and Approval**
### **Section 1    General**

**Art. 7**        Authorisation documentation
          (Art. 13 and 14 CISA)

Any party applying for authorisation under Article 13 of the Act must submit the following documents to FINMA:

a.   the articles of association and the organisational regulations in the case of a fund management company, a SICAV and a SICAF;

b.   the company agreement in the case of a limited partnership for collective investment;

16   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

17   Amended by Annex No 3 of the Financial Market Audit Ordinance of 5 Nov. 2014, in force since 1 Jan. 2015 (AS **2014** 4295).

c.  the relevant organisational documents in the case of an asset manager, a representative of foreign collective investment schemes and a distributor.

**Art. 8**       Exemption from the authorisation requirement[18]
                 (Art. 13 para. 3 CISA)

[1] Any party authorised as a bank pursuant to the Federal Act on Banks and Savings Institutions of November 8, 1934[19], as a securities trader pursuant to the Stock Exchange Act of March 24, 1995[20] or as an insurance institution pursuant to the Federal Act on the Supervision of Insurance Companies of December 17, 2004[21], is exempted from the duty to obtain authorisation for asset managers of collective investment schemes and distributors.[22]

[1bis] Any party authorised as a fund management company is exempted from the duty to obtain authorisation for asset managers of collective investment schemes, distributors and representatives of foreign collective investment schemes.[23]

[2] Any party authorised as an asset manager of collective investment schemes is exempted from the duty to obtain authorisation for distributors.[24]

[3] Representatives of foreign collective investment schemes are exempted from the duty to obtain authorisation for distributors.[25]

[4] Agents of insurance institutions which are integrated legally and de facto into the organisation of the insurance institution on a legal or constructive basis by virtue of the agency agreement are not subject to the duty to obtain authorisation for distributors. FINMA regulates the details.

**Art. 9**[26]

**Art. 10**      Good reputation, guarantees and specialist qualifications
                 (Art. 14 para. 1 let. a CISA)

[1] The persons responsible for the management and business operations shall be suitably qualified for the intended activity on the basis of their education and training, experience and career history.

---

18  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
    (AS **2013** 607).
19  SR **952.0**
20  SR **954.1**
21  SR **961.01**
22  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
    (AS **2013** 607).
23  Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
    (AS **2013** 607).
24  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
    (AS **2013** 607).
25  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
    (AS **2013** 607).
26  Repealed by No I of the Ordinance of 13 Feb. 2013, with effect from 1 March 2013
    (AS **2013** 607).

[2] FINMA determines the requirements for furnishing evidence of good reputation, the guaranteeing of proper management and the possession of the requisite specialist qualifications.

[3] In assessing these requirements, it also takes account of the intended activity on behalf of the licensee, together with the nature of the intended investments.

[4] In justified individual instances, it may grant derogations from these requirements.

### Art. 11   Significant equity holders
(Art. 14 para. 1b and para. 3 CISA)

FINMA specifies the requirements for the furnishing of evidence of the good reputation of significant equity holders. Furthermore, it specifies the requirements for the furnishing of evidence that such significant equity holders cannot exert their influence to the detriment of prudent and sound business practice.

### Art. 12   Organisational structure
(Art. 14 para. 1 let. c CISA)

[1] The executive board must comprise at least two persons. These persons must have their place of residence at a location which is suitable for the proper managing of the business operations.

[2] The authorised signatories of the licensee must sign jointly.

[3] The licensee must define its organisational structure in a set of organisational regulations.[27]

[4] It must employ personnel who are properly and suitably qualified for its activity.

[5] FINMA may require that an internal audit be performed if required by the scope and nature of the activity.

[6] In justified instances, it may grant derogations from these requirements.

### Art. 12*a*[28]   Risk management, internal control system and compliance
(Art. 14 para. 1ter CISA)

[1] The licensee must ensure it has proper and appropriate risk management, an internal control system (ICS) and compliance covering its entire business activities.

[2] Risk management must be organised so that all material risks can be adequately identified, assessed, controlled and monitored.

[3] The licensee shall separate the functions of risk management, the internal control system and compliance in functional and hierarchical terms from the operating units, in particular from the investment decisions function (portfolio management).

[4] FINMA may grant derogations from these requirements in justified instances.

---

27   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

28   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

**Art. 13**      Financial guarantees
                 (Art. 14 para. 1 let. d. CISA)

The licensee has sufficient financial guarantees if it meets the relevant provisions
regarding the minimum capital or minimum investment amount.

**Art. 13***a*[29]      Documents of foreign collective investment schemes
                 (Art. 15 para. 1 let. e CISA)

For foreign collective investment schemes, the following documents must be sub-
mitted to FINMA for approval:

  a.  the prospectus;

  b.  the simplified prospectus or key investor information document;

  c.  the collective investment agreement for the contractual collective investment
      schemes;

  d.  the articles of association and the investment regulations or the company
      agreement of collective investment schemes organised under company law;

  e.  other documents that would be necessary for approval under applicable for-
      eign laws and those for Swiss collective investment schemes in accordance
      with Article 15 paragraph 1 of the Act.

**Art. 14**      Change of organisational structure and documents
                 (Art. 16 CISA)

[1] In the event of changes to the organisational structure, authorisation must be ob-
tained from FINMA. The documents defined in Article 7 must be submitted to
FINMA.

[2] Changes to documents in accordance with Article 15 of the Act must be submitted
to FINMA, with the exception of:

  a.  the relevant documents of foreign collective investment schemes;

  b.  any change in the total limited partners' contributions in the company
      agreement of the limited partnership for collective investment.

  c.[30]  changes to documents requiring approval in the case of a domestic collective
      investment scheme where such documents relate exclusively to provisions
      on sales and distribution restrictions and are required in the context of for-
      eign laws, international treaties, bilateral or supervisory arrangements, etc.

**Art. 15**      Duty to report
                 (Art. 16 CISA)

[1] The licensees, with the exception of the custodian bank, shall report:

---

[29]  Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
[30]  Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).

a.  any change in the persons responsible for the management and the business operations;

b.  facts which might call into question the good reputation or the guaranteeing of proper management by the persons responsible for the management and the business operations, specifically the instigation of criminal proceedings against them;

c.  any change in significant equity holders, except for company shareholders in a SICAV and limited partners in a limited partnership for collective investment;

d.  facts which might call into question the good reputation of significant equity holders, specifically the instigation of criminal proceedings against them;

e.  facts which call into question the prudent and sound business practice of the licensees owing to the influence of the significant equity holders;

f.  any change with respect to the financial guarantees (Art. 13), in particular if the minimum requirements are no longer met.

2 The custodian bank shall report any change of executive persons entrusted with the performance of the custodian bank's duties (Art. 72 para. 2 CISA).

3 Furthermore, amendments to the prospectus, simplified prospectus or key investor information document of an investment fund, SICAV, limited partnership for collective investment and SICAF must also be reported[31]

4 The representatives of foreign collective investment schemes that are not exclusively distributed to qualified investors must report[32]

a.[33] measures taken by a foreign supervisory authority against the collective investment scheme, specifically its withdrawal of approval;

b.[34] changes to the documents for foreign collective investment schemes in accordance with Article 13*a*;

c.[35] …

5 The report must be made immediately to FINMA, which shall establish whether the reported facts comply with the Act.

---

31  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
32  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
33  Amended by Annex No 6 of the Financial Market Audit Act of 15 Oct. 2008, in force since 1 Jan. 2009 (AS **2008** 5363).
34  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
35  Repealed by No I of the Ordinance of 13 Feb. 2013, with effect from 1 March 2013 (AS **2013** 607).

**Art. 16**       Requirements for the simplified approval procedure
                  (Art. 17 CISA)

[1] The simplified approval procedure may only be adopted where the fund regulations:

   a.   comply with a format which FINMA has recognised as being the minimum
        standard, such as model regulations and prospectuses of a specific industry
        body; or

   b.   comply with a set of standards which FINMA has recognised as binding in
        relation to the relevant licensee.

[2] FINMA shall give the applicant confirmation of its receipt of the application.

[3] Where additional information is required for the purpose of assessing the application, FINMA may instruct the applicant to submit such information at a subsequent time.

**Art. 17**       Time limits for the simplified approval procedure
                  (Art. 17 CISA)

[1] Open-ended collective investment schemes for qualified investors are deemed to have been approved on expiry of the following time limits:

   a.   securities funds, real estate funds and other funds for traditional investments:
        following receipt of the application;

   b.   other funds for alternative investments: four weeks following receipt of the
        application.

[2] FINMA shall approve open-ended collective investment schemes which are directed towards the public at the latest within the following time limits:

   a.   securities funds: four weeks following receipt of the application;

   b.   real estate funds and other funds for traditional investments: six weeks following receipt of the application;

   c.   other funds for alternative investments: eight weeks following receipt of the
        application.

[3] The period begins one day following receipt of the application.

[4] Where FINMA requires further information, the commencement of the period must be postponed from the time the request is made until such time as the information is received by FINMA.

**Art. 18**       Subsequent amendment of documents
                  (Art. 17 CISA)

[1] FINMA may demand that a subsequent amendment be made to the documents for collective investment schemes for qualified investors for a period of up to three months following simplified approval.

[2] The investors must:

12

a.    be made aware of the possibility of an amendment in advance;

b.    be informed of subsequent amendments in the media of publication.

## Section 2
## Conditions of Authorisation for Asset Managers of Collective Investment Schemes Organised under Swiss Law[36]

**Art. 19**[37]       Minimum capital and furnishing of collateral
(Art. 14 para. 1 let. d CISA)

[1] The minimum capital of asset managers of collective investment schemes that exclusively perform duties pursuant to Article 18*a* paragraphs 1, 2 and 3 letters b–d of the Act amounts to 200,000 Swiss francs and is paid up in cash.

[2] The minimum capital of asset managers of collective investment schemes that conduct investment fund business for foreign collective investment schemes pursuant to Article 18*a* paragraph 3 letter a of the Act amounts to 500,000 Swiss francs and is paid up in cash.

[3] In place of the minimum capital, FINMA may permit partnerships to provide collateral, specifically a bank guarantee or cash deposit on a blocked account held with a bank and which equates to the minimum capital pursuant to paragraphs 1 and 2.

[4] In justified individual instances, it may stipulate an alternative minimum amount.

[5] The minimum capital must be maintained at all times.

**Art. 20**       Components of capital
(Art. 14 para. 1d and 18 para. 3 CISA)[38]

[1] In the case of a company limited by shares and a partnership limited by shares, the capital is the share and participation capital, and in the case of a limited liability company it is the issued capital.

[2] In the case of partnerships, the capital is:[39]

   a. the capital accounts;

   b. the partnership contributions; and

   c. the assets of the partners with unlimited liability.

---

36   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
37   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
38   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
39   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

[3] The capital accounts and assets of the partners with unlimited liability may only be ascribed to the capital if an irrevocable written declaration deposited with a licensed audit company provides evidence that:[40]

  a. in the event of liquidation, bankruptcy or administration proceedings such assets shall be subordinate to the claims of all other creditors; and

  b. the asset manager of collective investment schemes is obliged:[41]
     1. net such assets with its own claims nor secure them from its own assets,
     2. reduce any of the components of the capital as defined in paragraph 2 letters a and c to the extent that the minimum capital is no longer maintained without the prior consent of the audit company.

**Art. 21**[42]   Level of capital adequacy
             (Art. 14 para. 1 let. d. CISA)

[1] The required capital amounts to:

  a. 0.02 percent of the total assets of the collective investment schemes managed by the asset manager exceeding 250 million Swiss francs;

  b. at all times at least one quarter of the fixed costs in accordance with the most recent annual financial statement; and

  c. no more than 20 million Swiss francs.

[2] The following are fixed costs:

  a. personnel expenses;
  b. operating expenses (overheads);
  c. depreciation of investment assets;
  d. expense for allowances, provisions and losses.

[3] Asset managers of collective investment schemes must also:

  a. hold additional capital of 0.01 percent of the total assets of the collective investment schemes managed by the asset manager of the collective investment schemes; or

  b. conclude professional indemnity insurance. FINMA regulates the details.

[4] The portion of personnel expenses which are exclusively dependent on the business result or in relation to which no legal entitlement exists is deductible under paragraph 2 letter a.

[5] The prescribed capital adequacy must be maintained at all times.

---

40   Amended by Annex No 3 of the Financial Market Audit Ordinance of 5 Nov. 2014, in force since 1 Jan. 2015 (AS **2014** 4295).
41   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
42   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

6 Asset managers of collective investment schemes shall notify FINMA of capital inadequacy immediately.

7 In justified instances, FINMA may grant a relaxation.

### Art. 22 Qualifying capital
(Art. 14 para. 1 let. d. CISA)

1 Legal entities may include the following in qualifying capital:

a. the paid-up share and participation capital in the case of a company limited by shares and partnership limited by shares, and the issued capital in the case of a limited liability company;

b. the general statutory reserve and other reserves;

c. retained earnings;

d. the net profit for the current financial year after deducting the estimated earnings distribution, provided an audited interim financial statement including full income statement is available;

e. hidden reserves, provided they are assigned to a separate account and designated as own funds. Their allowability must be confirmed in the audit report[43].

2 Partnerships may include the following in qualifying capital:[44]

a. the capital accounts;

b. the partnership contributions;

c. the collateral as defined in Article 19 paragraph 2;

d. the funds of the partners with unlimited liability, provided the conditions stated in Article 20 paragraph 3 are met.

3 For asset managers of collective investment schemes, any loans granted to them including bonds with a maturity of at least five years may be included in qualifying capital if an irrevocable written declaration deposited with a licensed audit company provides evidence that:[45]

a. in the event of liquidation, bankruptcy or administration proceedings such loans are subordinate to the claims of all other creditors; and

b. they have committed themselves not to net the loans with their claims nor secure them from their own assets.

4 The qualifying capital as defined in paragraphs 1 and 2 letters a–d must account for at least 50 percent of the total required.

---

43 Expression in accordance with Annex No 6 of the Financial Market Audit Act of 15 Oct. 2008, in force since 1 Jan. 2009 (AS **2008** 5363).

44 Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

45 Amended by Annex No 3 of the Financial Market Audit Ordinance of 5 Nov. 2014, in force since 1 Jan. 2015 (AS **2014** 4295).

**Art. 23**    Deductions in relation to the calculation of qualifying capital
                (Art. 14 para. 1 let. d. CISA)

The following shall be deducted when calculating capital adequacy:

a.  the loss carried forward and the loss for the current financial year;

b.  any unsecured allowance and provision for the current financial year;

c.  in the case of loans, repayment of the original nominal amount of 20 percent per year for the last five years in accordance with Article 22 paragraph 3;

d.  intangible assets (including start-up and organisational costs as well as goodwill) with the exception of software;

e.  in the case of a company limited by shares and partnership limited by shares, the shares which they hold in the company at their own risk;

f.  in the case of a limited liability company, the capital contribution which it holds in the company at its own risk; g. the carrying amount of investments, unless a consolidation is performed in accordance with Article 29.

**Art. 24**    Description of the area of business
                (Art. 14 para. 1 let. c CISA)[46]

[1] Asset managers of collective investment schemes must describe their area of business in factually and geographically precise terms in the articles of association, company agreements or organisational regulations.[47]

[2] Where they wish to operate a subsidiary, a branch or a representative office abroad, they shall provide FINMA with all the information it requires for the assessment of the duties, specifically:

a.  name and address of the subsidiary, branch or representative office;

b.  the names of the persons entrusted with the management and the business operations;

c.  the audit company[48];

d.  name and address of the supervisory authority in the foreign country of domicile.

[3] They shall notify FINMA immediately of any material change in relation to their subsidiaries, branches or representative offices abroad.

---

[46]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

[47]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

[48]   Term in accordance with Annex No 6 of the Financial Market Audit Ordinance of 15 Oct. 2008, in force since 1 Jan. 2009 (AS **2008** 5363). This amendment has been made throughout the text.

**Art. 24***a*[49]      Duties
(Art. 18*a* CISA)

Asset managers of collective investment schemes may in addition to their duties pursuant to Article 18*a* of the Act specifically perform services and administrative activities such as the acceptance and transmission of orders involving financial instruments in the name of and for the account of clients.

**Art. 25**[50]      Agreement
(Art. 14 para. 1 let. c CISA)

Asset managers of collective investment schemes must conclude a written agreement with their clients that governs the rights and obligations of the parties and other material matters.

**Art. 26**[51]      Delegation of activities
(Art. 18*b* CISA)

Asset managers of collective investment schemes that conduct portfolio management and risk management for collective investment schemes may not delegate such duties to other companies whose interests may conflict with those of the investor or the asset manager of collective investment schemes.

**Art. 27**[52]      Standards of industry bodies
(Art. 14 para. 2 CISA)

FINMA may make its granting of authorisation dependent on the asset manager of collective investment schemes complying with the code of conduct of a specific industry body.

**Art. 28**[53]      Accounting
(Art. 14 para. 1ter CISA)

[1] Asset managers of collective investment schemes are subject to the accounting regulations of the Code of Obligations (CO)[54].[55]

[2] Where the asset managers of collective investment schemes are subject to specific, more stringent accounting standards, such regulations take precedence.

[49]   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
[50]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
[51]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
[52]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
[53]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
[54]   SR **220**. Now: Art. 957 ff. OR.
[55]   Amended by Annex 2 No 3 of the Banking Ordinance of 30 April 2014, in force since 1 Jan. 2015 (AS **2014** 1269).

**Art. 29**[56]

### Section 2*a*[57]
### Conditions of Authorisation for Asset Managers of Collective Investment Schemes Organised under Foreign Law

**Art. 29***a*      Foreign asset managers of collective investment schemes
(Art. 18 para. 1 let. c CISA)

[1] Any company established under foreign law is deemed to be a foreign asset manager of collective investment schemes if it:

a.   is authorised as an asset manager of collective investment schemes abroad;

b.   uses the term «asset manager of collective investment schemes», or an expression that indicates that it conducts asset management of collective investment schemes, in its name, in the designation of its objects or in its business documents; or

c.   conducts asset management in accordance with the legislation on collective investment schemes.

[2] If the foreign asset manager of collective investment schemes is actually managed in Switzerland or conducts its business largely or exclusively in or from Switzerland, it shall be organised in accordance with Swiss law. In addition, it is subject to the provisions for domestic asset managers of collective investment schemes.

**Art. 29***b*      Duty to obtain authorisation and conditions of authorisation
(Art. 2 para. 1 let. c, 13 para. 2 let. f, 14 and 18 CISA)

[1] A foreign asset manager of collective investment schemes requires FINMA authorisation if it employs persons in Switzerland that conduct asset management on its behalf on a permanent, commercial basis in or from Switzerland in accordance with the legislation on collective investment schemes (branch).

[2] FINMA grants the foreign asset manager of collective investment schemes authorisation to establish a branch if:

a.   it is sufficiently organised and has adequate financial resources and qualified personnel to operate a branch in Switzerland;

b.   it is subject to an appropriate supervisory body that also covers the branch;

c.   the foreign supervisory authorities responsible do not raise any objections to the establishment of a branch;

d.   the foreign supervisory authorities responsible have concluded an agreement on cooperation and exchange of information with FINMA;

---

[56]   Repealed by No I of the Ordinance of 13 Feb. 2013, with effect from 1 March 2013 (AS **2013** 607).

[57]   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

    e.    the foreign supervisory authorities responsible undertake to notify FINMA immediately if circumstances occur that could seriously jeopardise the interests of the clients, their assets or the collective investment schemes it manages;

    f.    the branch meets the conditions of authorisation pursuant to Article 14 paragraph 1 let. a–c and 2 of the Act in addition to Article 10 et seq. of the present Ordinance and possesses a set of rules which provide a clear definition of the scope of business and establish an adequate organisational structure corresponding to the business activities; and

    g.    the foreign asset manager of collective investment schemes provides evidence that the name of the branch may be entered in the Commercial Register.

3 If the foreign asset manager of collective investment schemes constitutes an element of a group operating in the financial sector, FINMA may, subject to Article 18 paragraph 2 of the Act, make authorisation dependent on the condition that the former is subject to appropriate consolidated supervision by the foreign supervisory authorities responsible.

4 FINMA may require the branch to provide collateral if necessary for the protection of clients.

5 The foreign asset manager of collective investment schemes may only register the branch for entry in the Commercial Register if FINMA has granted it authorisation for the branch to be established.

**Art. 29***c*    Branches
(Art. 18 para. 1 let. c CISA)

1 Where a foreign asset manager of collective investment schemes establishes two or more branches in Switzerland, it shall:

    a.    obtain authorisation for each of them;

    b.    designate one of them as being responsible for relationships with FINMA.

2 Such branches shall meet the requirements of the Act and the present Ordinance on a combined basis. An audit report is sufficient.

**Art. 29***d*    Annual accounts and interim accounts of the branch

1 The branch may prepare its annual accounts and interim accounts in accordance with the provisions applicable to the foreign asset manager of collective investment schemes provided they satisfy international standards on financial reporting.

2 The following claims and obligations are presented separately:

    a.    those in relation to the foreign asset manager of collective investment schemes;

    b.    those in relation to the companies operating in the financial sector or real estate companies where:

1. the foreign asset manager of collective investment schemes forms an economic entity with them, or

2. it is assumed that the foreign asset manager of collective investment schemes is legally bound or de facto obligated to provide assistance to such company.

[3] Paragraph 2 also applies to off-balance-sheet exposures.

[4] The branch submits its annual accounts and interim accounts to FINMA. Publication is not required.

### Art. 29*e*[58]      Audit report

[1] The audit company prepares its report in one of the official languages of Switzerland and sends it to FINMA. The manager of the branch receives a copy.

[2] The branch forwards the copy of the audit report to the unit of the foreign asset manager of collective investment schemes that is responsible for the business activities of the branch.

### Art. 29*f*      Closure of a branch

The foreign asset manager of collective investment schemes obtains FINMA's authorisation prior to the closure of a branch.

## Section 3      Conditions of Authorisation for Distributors

### Art. 30      Authorisation conditions
(Art. 3 and 19 para. 2 CISA)

[1] FINMA shall grant authorisation to a natural person who wishes to distribute units of a collective investment scheme where that person can provide evidence of:[59]

    a. the conclusion of professional indemnity insurance appropriate to his or her business activities amounting to at least 250,000 Swiss francs, covering his or her activity as a distributor, or the depositing of an appropriate deposit of the same amount;

    b. permitted procedural details in relation to distribution; and

    c. a written distribution agreement with the fund management company, the SICAV, the limited partnership for collective investment or the SICAF, or the representative of a foreign collective investment scheme, under which agreement the person is expressly prohibited from receiving payments for the purchase of units.

---

[58] Amended by Annex No 3 of the Financial Market Audit Ordinance of 5 Nov. 2014, in force since 1 Jan. 2015 (AS **2014** 4295).

[59] Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

2 It shall grant authorisation to legal persons and competent partnerships if they or
the persons holding executive powers meet the requirements stated in paragraph 1.

3 It may also make its granting of authorisation dependent on the distributor's com-
pliance with the relevant standards of a specific industry body.

**Art. 30***a*[60]    Distribution by financial intermediaries
           (Art. 19 para. 1bis CISA)

1 A financial intermediary may distribute foreign collective investment schemes to
qualified investors in Switzerland provided it is admitted for distribution of collec-
tive investment schemes in its country of domicile and concludes a written distribu-
tion agreement with a representative pursuant to Article 131*a* to which Swiss law is
applicable.

2 The distribution agreement commits the financial intermediary to exclusively using
fund documents that indicate the representative, paying agent and place of jurisdic-
tion.

## **Chapter 4    Code of Conduct**

**Art. 31**    Duty of loyalty:
           (Art. 20 para. 1 let. a CISA)

1 The licensees and their agents may only purchase investments from collective
investment schemes for their own account at the market price and may only sell such
investments from their own portfolios at the market price.

2 In relation to services delegated to third parties they shall waive the compensation
owed to them in accordance with the fund regulations, company agreement, invest-
ment regulations or discretionary management agreement where such compensation
is not used for payment of the services rendered by such third parties.

3 Where investments of a collective investment scheme are transferred to another
scheme of the same licensee or a scheme belonging to a related licensee, no costs
may be levied.

4 The licensees may not levy any issue or redemption fees if they purchase target
funds which:

   a.   they manage themselves either directly or indirectly; or

   b.   are managed by a company to which they are related by virtue of:

        1. common management,

        2. control, or

        3. a significant direct or indirect interest.[61]

60   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
     (AS **2013** 607).
61   Amended by No I of the Ordinance of 28. Jan. 2009, in force since 1 March 2009
     (AS **2009** 719).

5 When a management fee is levied on investments in target funds pursuant to para-graph 4, Article 73 paragraph 4 applies accordingly.[62]

6 FINMA regulates the details. It may declare that paragraph 4 and 5 also applies to other products.[63]

**Art. 32**          Special duty of loyalty in relation to real estate investments
                     (Art. 20 para. 1 let. a, 21 para. 3 and 63 CISA)

1 The fees payable to closely related natural or legal persons which participate in the planning, construction, purchasing or sale of a building for the account of the collec-tive investment scheme shall be calculated by the licensees exclusively on the basis of the normal prices prevailing in the sector.

2 The valuation expert shall check the fee invoice prior to settlement thereof and if necessary furnish the licensee and the audit company with a report.

3 Where real estate investments of a collective investment scheme are transferred to another scheme of the same licensee or a related licensee, no compensation may be levied for buying and selling work undertaken.

4 Payments by real estate companies to their directors, executives and personnel shall be included in the compensation to which the fund management company and the SICAV are entitled in accordance with the fund regulations.

**Art. 32***a*[64]      Exceptions to the ban on transactions with closely connected persons
                     (Art. 63 para. 3 and 4 CISA)

1 Pursuant to Article 63 paragraph 4 of the Act, FINMA may in justified individual cases grant an exemption from the ban on transactions with closely related persons pursuant to Article 63 paragraphs 2 and 3 of the Act if:

   a.   the relevant documents of the collective investment scheme provide for such a possibility;

   b.   the exemption is in the interests of the investors;

   c.   in addition to the valuation by the regular valuation experts for the real estate fund, a valuation expert who is independent of such experts or their employ-er and of the fund management company or SICAV as well as the custodian bank of the real estate fund pursuant to Article 64 paragraph 1 of the Act confirms the market conformity of the purchase and sale price for the prop-erty and of the transaction costs.

2 Following conclusion of the transaction, the fund management company or SICAV prepares a report containing the following:

---

62   Amended by No I of the Ordinance of 28. Jan. 2009, in force since 1 March 2009
     (AS **2009** 719).
63   Inserted by No I of the Ordinance of 28. Jan. 2009, in force since 1 March 2009
     (AS **2009** 719).
64   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
     (AS **2013** 607).

a.  information on the individual properties acquired or transferred and their value on the date of acquisition or transfer;

b.  the valuation reports by the regular valuation experts;

c.  the report on the market conformity of the purchase or sales price by the valuation experts pursuant to paragraph 1 lit. c.

3 As part of its audit of the fund management company or SICAV, the audit company confirms adherence to the special duty of loyalty in relation to real estate investments;

4 The approved transactions with closely related persons are mentioned in the annual report of the collective investment scheme.

5 In the case of real estate investments where the fund management company, SICAV or persons closely related thereto commissioned construction projects, FINMA may not grant any exemptions from the prohibition of transactions with closely related persons.

**Art. 32*b*[65]**       Conflicts of interest
                 (Art. 20 para. 1 let. a CISA)

The licensees must take effective organisational and administrative measures to identify, prevent, settle and monitor conflicts of interest in order to prevent the latter from harming the interests of the investors. Where conflicts of interest cannot be avoided, they shall be disclosed to the investors.

**Art. 33**       Due diligence
                 (Art. 20 para. 1 let. b CISA)

1 The licensees shall ensure the effective separation of the activities of decision-making (asset management), implementation (trading and settlement) and administration.

2 FINMA may in justified individual instances permit exemptions or order the separation of additional functions.

**Art. 34**       Duty of disclosure
                 (Art. 20 para. 1 let. c and 23 CISA)

1 The licensees shall draw investors' attention to the risks associated with a specific type of investing in particular.

2 They shall disclose all costs incurred on the issue and redemption of units and in the administration of the collective investment scheme. In addition, they shall disclose the manner in which the management fee is used and the levying of any performance fee.

---

65   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
     (AS **2013** 607).

[2bis] The duty of disclosure with regard to compensation for distribution encompasses the nature and scale of all fees and other pecuniary benefits through which the activities of the distributor are to be compensated.[66]

[3] They shall ensure a degree of transparency in relation to the exercising of membership and creditors' rights such that investors are in a position to comprehend the manner in which such rights are exercised.

[4] The fund management company and asset managers of collective investment schemes that purchase units of a collective investment scheme managed by them on behalf of clients shall inform the latter of the payments received.[67]

**Art. 34a**[68]       Duty to keep records
                (Art. 24 para. 3 CISA)

[1] The duty to keep a record under Article 24 paragraph 3 of the Act applies to distribution activities as defined in Article 3 of the Act.

[2] The form and content of the record is governed by the rules of conduct for a system of self-regulation that are recognised by as a minimum standard FINMA under Article 7 paragraph 3 of the Financial Market Supervision Act of 22 June 2007[69].

## Title 2       **Open-Ended Collective Investment Schemes**
## Chapter 1    **Contractual Fund**
## Section 1     **Minimum Assets**
                **(**Art. 25 para. 3 CISA)

**Art. 35**

[1] The investment fund or the subfund an umbrella fund must be issued for subscription (launch) within one year of approval by FINMA.

[2] The investment fund or subfund an umbrella fund must have net assets of at least 5 million Swiss francs at the latest one year following its launch.

[3] FINMA may extend the time limits for a corresponding application.

[4] Following expiry of the time period as defined in paragraphs 2 and 3, the fund management company shall notify FINMA of any shortfall forthwith.

---

66   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
67   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
68   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 Jan. 2014
      (AS **2013** 607).
69   SR **956.1**

## Section 2    Fund Contract

**Art. 35*a*[70]**    Minimum content of the fund contract
(Art. 26 para. 3 CISA)

[1] In particular, the fund contract contains the following information:

   a.  the name of the investment fund, together with the name and registered of-
       fice of the fund management company, the custodian bank and the asset
       manager of collective investment schemes;

   b.  investor eligibility;

   c.  the investment policy, investment techniques, risk diversification and the
       risks associated with the investment;

   d.  the subdivision into subfunds;

   e.  the unit classes;

   f.  investors' right to cancel;

   g.  the accounting year;

   h.  the calculation of the net asset value and of the issue and redemption pric-
       es;

   i.  the appropriation of net income and capital gains from the sale of assets and
       rights;

   j.  the type, amount and calculation of all fees, the issue and redemption com-
       mission together with the incidental costs for the purchase and sale of the in-
       vestments (brokerage fees, charges, duties) that may be charged to the fund's
       assets or to the investors;

   k.  the duration of the contract and the conditions of dissolution;

   l.  the media of publication;

   m.  the conditions for the deferment of redemption and compulsory redemption;

   n.  the locations at which the fund contract, prospectus, key investor infor-
       mation document and simplified prospectus, together with the annual and
       semi-annual reports, may be obtained free of charge;

   o.  the unit of account;

   p.  the restructuring.

[2] When approving the fund contract, FINMA shall only verify the provisions pursu-
ant to paragraph 1 lit. a–g and ensure their compliance with the Act.

[3] When approving a contractual fund, FINMA, at the fund management company's
request, shall verify all provisions of the fund contract and ensure their compliance
with the Act where the fund is to be distributed abroad and such action is required
under foreign law.

[70]   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
       (AS **2013** 607).

4 FINMA may formalise the content of the fund contract in accordance with international developments.

**Art. 36**      Investment policy guidelines
                 (Art. 26 para. 3 let. b CISA)

1 The fund contract sets out the permitted investments:

   a.   by type (equity securities, debt securities, derivative instruments, residential property, commercial properties; precious metals; commodities, etc.);

   b.   by country, geographical region, sector or currency.

2 For other funds as defined in Article 68 et seq. of the Act, it also sets out information on the special features and risks of the individual investments in terms of their characteristics and valuation.

3 The fund contract sets out the permitted investment techniques and instruments.

**Art. 37**[71]     Fees and incidental costs
                 (Art. 26 para. 3 CISA)

1 The following may be charged to the assets of the fund or any subfunds:

   a.   a management fee for remunerating the activities of the fund management company;

   b.   custody fees and other costs for the remuneration of the custodian bank's activity, including the costs for the safekeeping of the fund's assets by third-party custodians or collective securities depositories;

   c.   a management fee and any performance fees for the remuneration of the asset manager of collective investment schemes;

   d.   any distribution fees for remuneration of the distributors' activity;

   e.   all the incidental costs listed in paragraph 2.

2 Where explicitly provided by the fund contract, the following incidental costs may be charged to the assets of the fund or the subfunds:

   a.   costs for the purchase and sale of the investments, specifically standard brokerage fees, commissions, taxes and duties, as well as costs for the verification and maintenance of quality standards in the case of physical investments;

   b.   costs for the purchase and sale of real estate investments, specifically standard brokerage fees, lawyers' fees and notary charges, the cost of amendments;

   c.   the supervisory authority's fees in relation to the establishment, amendment, liquidation or merger of the fund or any subfunds;

   d.   the supervisory authority's annual fees;

[71]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

    e.   the audit company's fees for annual auditing as well as certification in the case of establishments, amendments, liquidation or merger of the fund or any subfunds;

    f.   fees for legal and tax advisors in connection with the establishment, modification, liquidation or merger of funds or any subfunds, as well as generally upholding the interests of the fund and its investors;

    g.   notary and commercial register expenses for registration in the Commercial Register of licensees under the collective investment schemes legislation;

    h.   the cost of publishing the net asset value of the fund or its subfunds, together with all the costs of providing notices to investors, including translation costs, provided such costs cannot be ascribed to any failure on the part of the fund management company;

    i.   the cost of printing legal documents as well as the fund's annual and semi-annual reports;

    j.   the cost of any registration of the fund with a foreign supervisory authority, and specifically the commission levied by the foreign supervisory authority, translation costs and remuneration for the representative or paying agent abroad;

    k.   costs relating to the exercising of voting rights or creditors' rights by the fund, including the cost of fees paid to external advisors;

    l.   costs and fees relating to intellectual property registered in the name of the fund or with rights of use for the fund;

    m.   fees paid to the members of the board of directors of the SICAV and the cost of liability insurance;

    n.   all costs incurred though any extraordinary steps taken to safeguard the interests of investors by the fund management company, asset manager of collective investment schemes or custodian bank.

[3] The fund contract sets out the fees and incidental costs in a single, comprehensive overview, providing a breakdown by type, maximum amount and calculation.

[4] Use of the term «all-in fee» is only permissible if it includes all fees with the exception of issue and redemption fees but including incidental costs. If the term «flat fee» is used, specific information must be provided indicating which fees and incidental costs it does not include.

[5] The fund management company, asset manager of collective investment schemes and custodian bank may pay commissions only as reimbursement for the fund's distribution activities and only if this specifically provided for in the fund contract.

**Art. 38**[72]    Issue and redemption price; supplementary charges and deductions
(Art. 26 para. 3 CISA)

[1] The investors may be charged for the following:

   a.   all-in incidental costs incurred by the issue, redemption or conversion of
        units for the purchase and sale of investments;

   b.   a fee for subscriptions, conversions or redemptions to the distributor to cover
        the costs associated with distribution.

[2] The fund contract describes in a comprehensible, transparent manner the fees that
may be charged to the investors, as well as their scale and the method of calculation.

**Art. 39**    Media of publication
(Art. 26 para. 3 CISA)[73]

[1] The prospectus for the investment fund must specify one or more media of publica-
tion in which the information required by the Act and the Ordinance shall be made
available to investors. The media of publication may be print media or electronic
platforms that are publicly accessible and recognized by FINMA.[74]

[2] All facts which are subject to the disclosure requirement, and in relation to which
investors are entitled to lodge objections with FINMA, in addition to the dissolution
of an investment fund, must be published in the media of publication intended for
such purpose.

**Art. 40**    Unit classes
(Art. 26 para. 3 let. k and 78 para. 3 CISA)

[1] The fund management company may create, liquidate or merge unit classes subject
to the consent of the custodian bank and the approval of FINMA. In doing so it shall
address the following specific criteria: cost structure, reference currency, currency
hedging, distribution or reinvestment of income, minimum investment or investor
eligibility.

[2] The procedural details are set out in the prospectus. The risk that a class may be
liable for another class must be specifically disclosed in the prospectus.

[3] The fund management company announces the creation, dissolution or merging of
unit classes in the media of publication. Only a merger is deemed to be an amend-
ment to the fund contract, and is governed by Article 27 of the Act.

[4] Article 112 paragraph 3a-c applies accordingly.

---

[72]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
       (AS **2013** 607).
[73]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
       (AS **2013** 607).
[74]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
       (AS **2013** 607).

**Art. 41**     Amendments to the fund contract; duty to publish, time limit for
lodging objections, entry into force and cash repayments
(Art. 27 paras. 2 and 3 CISA)

[1] The fund management company shall publish any amendment to the fund contract
in the media of publication of the relevant fund in the form specified by the Act. In
this publication, the fund management company shall inform investors in a clear,
comprehensible manner about which amendments to the fund contract are covered
by FINMA's verification and ascertainment of compliance with the Act.[75]

[1bis] Amendments that are required by law, provided such amendments do not affect
the rights of investors or are of an exclusively formal nature, may be exempted by
FINMA from the duty to publish.[76]

[2] The period in which objections to the amendment of the fund contract may be
lodged commences on the day following announcement in the media of publication.

[2bis] When approving the amendment to the fund contract, FINMA shall only verify
the amendments to the provisions pursuant to Article 35*a* paragraph 1 lit. a–g and
ensure their compliance with the Act.[77]

[2ter] Where in relation to the approval of a fund contract pursuant to Article 35*a*
paragraph 3 FINMA has verified all provisions and ensured their compliance with
the Act, it shall also in relation to the amendment to such fund contract verify all
provisions and ensure their adherence with the Act if the investment fund is to be
distributed abroad and such action is required under foreign law.[78]

[3] In its decision FINMA specifies the date on which the amendment to the fund
contract enters into force.

## Section 3     The Fund Management Company

**Art. 42**     Main administrative office in Switzerland
(Art. 28 para. 1 CISA)

The main administrative office of the fund management company is located in
Switzerland if:

a.   the inalienable and non-transferable tasks of the board of directors in ac-
cordance with Article 716a of the Swiss Code of Obligations are carried out
in Switzerland.[79]

---

75   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
(AS **2013** 607).
76   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
(AS **2013** 607).
77   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
(AS **2013** 607).
78   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
(AS **2013** 607).
79   SR **220**

- b. In relation to each of the investment funds it manages, at least the following tasks are carried out in Switzerland:
    1. deciding on the issue of units;
    2. deciding on the investment policy and valuation of the assets;
    3.[80] valuation of the assets;
    4. determining the issue and redemption prices;
    5. determining the profit distributions;
    6. determining the contents of the prospectus, the simplified prospectus, the annual and semi-annual report as well as other publications intended for investors; and
    7. fund accounting.

**Art. 43**      Minimum capital
                 (Art. 28 para. 2 CISA)

The fund management company shall have share capital of at least 1 million Swiss francs, to be paid up in cash.

**Art. 44**      Organisation
                 (Art. 28 para. 4 CISA)

[1] The board of directors of the fund management company comprises at least three members.

[2] The fund management company generally has at least three full-time employees with signatory powers.

**Art. 45**      Independence
                 (Art. 28 para. 5 CISA)

[1] Simultaneous membership of the board of directors of the fund management company and board of directors of the custodian bank is permitted.

[2] Simultaneous membership of the executive board of the fund management company and executive board of the custodian bank is not permitted.

[3] A majority of the members of the board of directors of the fund management company must be independent of those persons entrusted by the custodian bank with tasks in accordance with Article 73 of the Act. The persons entrusted by the custodian bank at executive board level with tasks in accordance with Article 73 of the Act are not deemed to be independent.

[4] None of the persons vested with signatory powers on behalf of the fund management company may at the same time be responsible for custodian bank duties as per Article 73 of the Act.

---

[80]    Amended by No I of the Ordinance of 13 Feb. 2008, in force since 1 March 2008 (AS **2008** 571).

**Art. 46**       Conduct of fund business
                  (Art. 29 CISA)

[1] In addition to the tasks set out in Article 30 of the Act, the fund business specifically includes:

   a.    the representation of foreign collective investment schemes;

   b.    the acquisition of interests in companies whose primary object is the collective investment scheme business;

   c.    the management of unit accounts;

   d.    the distribution of collective investment schemes;

   e.    the rendering of administrative services for collective investment schemes and similar investment vehicles such as in-house funds, investment foundations and investment companies.

[2] Such activities, in addition to the other services set out in Article 29 of the Act may only be performed by the fund management company where provided by the articles of association.

[3] FINMA regulates the details.

**Art. 47**       Capital adequacy
                  (Art. 32 CISA)

In relation to the qualifying capital, Articles 22 and 23 shall apply accordingly.

**Art. 48**       Level of capital adequacy
                  (Art. 32 para. 1 CISA)

[1] The required capital adequacy shall never exceed 20 million Swiss francs.

[2] It is calculated as a percentage of the total assets of the collective investment scheme managed by the fund management company in the following manner:

   a.    1 percent for that portion not exceeding 50 million Swiss francs;

   b.    ¾ percent for that portion exceeding 50 million but not exceeding 100 million Swiss francs;

   c.    ½ percent for that portion exceeding 100 million but not exceeding 150 million Swiss francs;

   d.    ¼ percent for that portion exceeding 150 million but not exceeding 250 million Swiss francs;

   e.    ⅛ for that portion exceeding 250 million Swiss francs.

[3] Where the fund management company renders ancillary services under Article 29 paragraph 1 of the Act, the operational risks arising from such transactions are calculated using the basic indicator approach as defined in Article 92 of the Capital Adequacy Ordinance of 1 June 2012[81].[82]

81    SR **952.03**

4 If the fund management company is entrusted with the administration and portfolio management of the assets of a SICAV, its total assets must be included in the calculation of capital adequacy in accordance with paragraph 2.[83]

4bis If the fund management company is solely entrusted with the administration of a SICAV, it must hold additional capital of 0.01 percent of the total assets of the SICAV.[84]

5 The fund management company shall deduct the carrying amount of its participating interests from the capital adequacy.

6 The prescribed capital adequacy must be maintained at all times.

7 The fund management company shall notify FINMA of capital inadequacy immediately.


### Art. 49    Annual report

1 The fund management company submits its own annual report to FINMA within ten days of its approval by the general meeting of shareholders.

2 It shall attach a breakdown of the prescribed and actual capital adequacy as per the balance sheet date to the annual report.

3 The preparation and format of the annual financial statements are governed by the relevant provisions of the Swiss Code of Obligations[85].


### Art. 50    Change of fund management company; time limit for lodging objections, entry into force and cash repayments
(Art. 34 paras. 3, 4 and 6 CISA)

1 In relation to a change of fund management company, Article 41 applies accordingly.

2 The merging of fund management companies or developments which are tantamount to a merger are deemed to be a change pursuant to Article 34 of the Act.

---

82  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
83  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
84  Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
85  SR **220**

## Chapter 2   Investment Company with Variable Capital
## Section 1   General Provisions

**Art. 51**[86]   Self and externally managed SICAVs
(Art. 36 para. 3 CISA)

[1] The self-managed SICAV performs its own administration. It may only delegate portfolio management in accordance with Article 36 paragraph 3 of the Act to an asset manager of collective investment schemes that is subject to a recognised supervisory body.

[2] The externally managed SICAV delegates administration to an authorised fund management company. Administration also includes distribution of the SICAV. In addition, the externally managed SICAV delegates portfolio management to the same fund management company or to an asset manager of collective investment schemes that is subject to a recognised supervisory body.

[3] The provisions of Article 64 are reserved.

**Art. 52**   Object
(Art. 36 para. 1 let. d CISA)

A SICAV may only manage its own assets or those of its subfunds. It is specifically prohibited from rendering services pursuant to Article 29 of the Act on behalf of third parties.

**Art. 53**   Minimum assets
(Art. 36 para. 2 CISA)

In relation to the minimum assets of a SICAV, Article 35 applies accordingly.

**Art. 54**[87]   Minimum investment amount

[1] In respect of a self-managed SICAV and an externally managed SICAV that delegates administration to an authorised fund management company and portfolio management to another asset manager of collective investment schemes, company shareholders must provide a minimum investment amount of 500,000 Swiss francs at the time of formation.

[2] Where the externally managed SICAV delegates administration and portfolio management to the same authorised fund management company, company shareholders must provide a minimum investment amount of 250,000 Swiss francs at the time of formation.

[3] The minimum investment amount must be maintained at all times.

[4] A SICAV shall notify FINMA of any shortfall immediately.

---

[86]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
[87]   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

**Art. 55** Definition and level of capital adequacy
(Art. 39 CISA)

[1] The holdings provided by the company shareholders are included in the capital.

[2] The following must be deducted from the capital:

   a. any balance sheet loss attributable to the company shareholders;

   b. any allowances and provisions attributable to the company shareholders;

   c. intangible assets (including start-up and organisational costs as well as goodwill) with the exception of software.

[3] The self-managed SICAV calculates the required level of capital adequacy in accordance with Article 48.

[3bis] An externally managed SICA that delegates administration to an authorised fund management company and portfolio management to an asset manager of collective investment schemes calculates the required level of capital adequacy pursuant to Article 48 accordingly. It may deduct 20 percent from this amount.[88]

[3ter] An externally managed SICAV that delegates portfolio management to a bank pursuant to the Federal Act on Banks and Savings Institutions of November 8, 1934[89] or to a securities trader pursuant to the Stock Exchange Act of March 24, 1995[90] with its registered office in Switzerland may be exempted by FINMA from the duty to include its own resources in the assets.[91]

[4] Where an externally managed SICAV delegates administration and portfolio management to the same authorised fund management company, it is not required to include its own resources in the assets (Art. 48 para. 4).[92]

[5] The prescribed ratio between the equity and total assets of a self-managed SICAV as well as an externally managed SICAV that delegates administration to an authorised fund management company and portfolio management to an asset manager of collective investment schemes shall be maintained at all times.[93]

[6] A SICAV notifies FINMA of capital inadequacy immediately.

[7] FINMA regulates the details.

---

88 Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
89 SR **952.0**
90 SR **954.1**
91 Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
92 Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
93 Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

**Art. 56**      Net issue price at time of initial issue
                 (Art. 40 para. 4 CISA)

All shares have the same net issue price at the time of initial issue of their category, irrespective of whether they belong to different categories. This represents the issue price payable by the investors at the time of issue less any fees and incidental costs.

**Art. 57**[94]

**Art. 58**      Issue and redemption of shares
                 (Art. 42 paras. 1 and 3 CISA)

[1] Articles 37 and 38 apply accordingly.

[2] Company shareholders may redeem their shares if:

   a.   the appropriate ratio between holdings of the company shareholders and to-
        tal assets of the SICAV is maintained even after redemption; and

   b.   the minimum investment amount is maintained.

**Art. 59**      Investment in treasury shares
                 (Art. 42 paras. 2 and 94 CISA)

Investments by a subfund in other subfunds of the same SICAV do not constitute an investment in treasury shares.

**Art. 60**      Media of publication
                 (Art. 43 para. 1 let. f CISA)

Article 39 applies accordingly.

**Art. 61**      SICAV with share classes
                 (Art. 40 para. 4 and 78 para. 3 CISA)

[1] Where provided by the articles of association, a SICAV may create, dissolve or merge share classes with the approval of FINMA.

[2] Article 40 applies accordingly. The merger requires the approval of the general meeting of shareholders.

[3] The risk that a class of shares may be liable for another class must be disclosed in the prospectus.

**Art. 62**      Voting rights
                 (Art. 40 paras. 4, 47 and 94 CISA)

[1] Shareholders have voting rights in respect of:

   a.   the subfund in which they are invested;

---

[94]   Repealed by No I of the Ordinance of 13 Feb. 2013, with effect from 1 March 2013
       (AS **2013** 607).

b.    the company if the decision affects the SICAV as a whole.

2 If the share of voting rights assigned to a subfund differs significantly from the share of assets assigned to the subfund, the shareholders may at the general meeting resolve to split or merge the shares of a share category in accordance with paragraph 1 letter b. FINMA must give its consent for such decision to be valid.

3 FINMA may order the splitting or merging of shares in a share class.

**Art. 62***a*[95]      Custodian bank
(Art. 44*a* CISA)

In relation to the custodian bank, Articles 15 paragraph 2 and 45 apply accordingly.

**Art. 62***b*[96]      Content of investment regulations
(Art. 43 and 44 CISA)

1 The content and approval of the investment regulations are based on the provisions on the fund contract, unless the law or articles of association provide otherwise.

2 When convening the general meeting, the SICAV informs shareholders in writing about:

a.    which changes to the investment regulations FINMA has verified; and

b.    which of these changes FINMA has established as being in compliance with the Act.

3 Paragraphs 1 and 2 apply to the articles of association accordingly, provided the latter regulate the contents of the investment regulations.

## Section 2    Organisation

**Art. 63**      General meeting
(Art. 50 and 94 CISA)

1 The articles of association may provide for general meetings in respect of individual subfunds where decisions are involved which affect only such subfunds.

2 Shareholders which together hold at least 10 percent of the votes of all or some subfunds may request that items be included on the agenda for discussion at the general meeting of the SICAV or subfund.

3 The general meeting of the SICAV or subfunds is responsible for amending the investment regulations provided such amendment:

a.    is not required by law;

b.[97]  affects the rights of shareholders; or

---

95   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
     (AS **2013** 607).
96   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
     (AS **2013** 607).

    c.   is not of an exclusively formal nature.

4 In the media of publication, the SICAV publishes the material amendments to the fund regulations resolved by the general meeting and approved by FINMA, indicating the offices from which the amended wording may be obtained free of charge.

5 The provision regarding important resolutions passed by the general meeting of a company limited by shares (Art. 704 CO[98]) does not apply.[99]

### Art. 64    Board of directors
(Art. 51 CISA)

1 The board of directors has the following tasks:

    a.   performing the duties required under Article 716a of the Swiss Code of Obligations[100];

    b.   determining the principles of the investment policy;

    c.[101] appointing the custodian bank or an institution in accordance with Article 44*a* paragraph 2 of the Act;

    d.   creating new subfunds, where provided by the articles of association;

    e.   drawing up the prospectus and the simplified prospectus;

    f.   administration.

2 The tasks laid down in paragraph 1a–c may not be delegated.

3 In a self-managed SICAV, the tasks defined in paragraph 1 letters d and e, in addition to the administrative sub-tasks defined in paragraph 1 letter f, specifically risk management, the structuring of the internal control system (ICS) and compliance, may only be delegated to the executive board.

4 In relation to the organisational structure of a self-managed SICAV, Articles 44 and 45 apply accordingly.

### Art. 65    Delegation of tasks[102]
(Art. 36 para. 3 and 51 para. 5 CISA)

1 If the board of directors delegates the administration, investment decisions or distribution to third parties, the rights and responsibilities of the contracting parties must be described in a written contract, to include specifically:[103]

---

97    Amended by No I of the Ordinance of 13 Feb. 2008, in force since 1 March 2008 (AS **2008** 571).

98    SR **220**

99    Inserted by Annex No 6 of the Financial Market Audit Act of 15 Oct. 2008, in force since 1 Jan. 2009 (AS **2008** 5363).

100   SR **220**

101   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

102   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

103   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

a. the tasks conferred;

b. any powers for further delegation;

c. the accountability of the fund management company;

d. the inspection rights of the board of directors.

1bis Articles 30 and 31 paragraphs 1–5 of the Act apply to the delegation of tasks accordingly.[104]

2 FINMA regulates the details.

**Art. 66**[105]

# Chapter 3
## Types of Open-Ended Collective Investment Schemes and Investment Regulations
### Section 1       General Provisions

**Art. 67**       Compliance with investment regulations
                     (Art. 53 et seq. CISA)

1 Unless specified otherwise, the percentage restrictions given in this chapter relate to the fund assets at market values; they must be maintained at all times.

2 If the limits are exceeded as a result of market changes, the investments must be restored to the permitted level within a reasonable period, taking due account of the investors' interests.

3 Securities funds and other funds must comply with the investment restrictions within six months of launch.

4 Real estate funds must comply with the investment restrictions within two years of launch.

5 FINMA may extend the time limits specified in paragraphs 3 and 4 at the request of the fund management company and the SICAV.

**Art. 68**       Subsidiary companies and permitted investments
                     (Art. 53 et seq. CISA)

1 With regard to the administration of collective investment schemes, the fund management company and the SICAV may deploy subsidiaries whose sole object is the holding of assets for collective investment. FINMA regulates the details.

2 A SICAV may acquire movable and non-movable assets which are essential for the direct performance of its operations. FINMA regulates the details.

---

104   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
105   Repealed by No I of the Ordinance of 13 Feb. 2013, with effect from 1 March 2013
      (AS **2013** 607).

**Art. 69**      Umbrella funds

(Art. 92 et seq. CISA)

1 Umbrella funds may only comprise subfunds of the same type.

2 The following types of fund qualify:

    a.   securities funds;

    b.   real estate funds;

    c.   other funds for traditional investments;

    d.   other funds for alternative investments.

3 In the case of collective investment schemes which include subfunds, the investment restrictions and techniques for each individual subfund apply.


## Section 2      Securities Funds

**Art. 70**      Permitted investments

(Art. 54 paras. 1 and 2 CISA)

1 The following investments are permitted:

    a.   securities in accordance with Article 71;

    b.   derivative financial instruments in accordance with Article 72;

    c.   units in collective investment schemes which comply with the requirements specified in Article 73;

    d.   money market instruments as specified in Article 74;

    e.   sight or time deposits with a term to maturity not exceeding twelve months held with banks domiciled in Switzerland or in a member state of the European Union or in another country provided that the bank is subject to supervision in that country which is equivalent to the standard of supervision in Switzerland.

2 The following are not permitted:

    a.   investments in precious metals or precious metals certificates, commodities or commodity certificates;

    b.   short-selling of investments in accordance with paragraph 1letters a, b, c and d.

3 Investments in assets other than those named in paragraph 1 may not exceed 10 percent of the fund's total assets.

4 A fund management company which also offers personalised asset management in accordance with Article 29 letter a of the Act may not invest the investor's assets, whether in full or in part, in units of the collective investment scheme that it manages, unless the client has given his or her general consent beforehand.

**Art. 71**     Securities
(Art. 54 CISA)

1 Securities are deemed to be equity or debt securities pursuant to Article 54 paragraph 1 of the Act which embody a participation right or claim or the right to acquire such securities and rights by way of subscription or exchange, specifically warrants.

2 Investments in securities from new issues are permitted only if the terms of issue provide for their admission to an exchange or other regulated market which is open to the public. If one year following purchase they are not yet admitted on the exchange or other market open to the public, such securities must be sold within one month.

3 FINMA may formalise the permitted investments for a securities fund in accordance with the laws currently in force in the European Communities.[106]

**Art. 72**     Derivative financial instruments
(Art. 54 and 56 CISA)

1 Derivative financial instruments are permitted if:

   a.   their underlyings are instruments as defined in Article 70 paragraph 1letters a-d, financial indices, interest rates, exchange rates, loans or currencies;

   b.   the underlyings are instruments permitted by the fund regulations; and

   c.   they are traded on an exchange or other regulated market open to the public.

2 In the case of transactions involving OTC derivatives, the following conditions shall be complied with in addition:

   a.   The counterparty is a regulated financial intermediary specializing in such transactions.

   b.   The OTC derivatives are traded daily or may be returned to the issuer at any time. In addition, it is possible for them to be valued in a reliable and transparent manner.

3 A securities fund's overall exposure associated with derivative financial instruments may not exceed 100 percent of the net assets. The overall exposure may not exceed 200 percent of the fund's total net assets. When taking account of the possibility of temporary borrowing amounting to no more than 10 percent of the net assets (Art. 77 para 2), the overall exposure may not exceed 210 percent of the fund's total net assets.

4Warrants must be treated in the same manner as financial instruments.

**Art. 73**     Investments in other collective investment schemes (target funds)
(Art. 54 and 57 para. 1 CISA)

1 The fund management company and the SICAV may only invest in target funds if:

---

106   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
       (AS **2013** 607).

a.   their documents restrict investments in other target funds for their part to a total of 10 percent;

b.   these funds are subject to provisions equivalent to those pertaining to securities funds in respect of the object, organisation, investment policy, investor protection, risk diversification, asset segregation, borrowing, lending, short-selling of securities and money market instruments, issue and redemption of units and content of the semi-annual and annual reports;

c.   the target funds are admitted as collective investment schemes in the country of domicile, where they are subject to investor protection which is equivalent to that in Switzerland, and international legal assistance is ensured.

2 They may invest a maximum of:

a.   20 percent of the fund's assets in units of the same target fund; and

b.[107] 30 percent of the fund's assets in units of target funds that do not meet the relevant directives of the European Union (undertakings for collective investment in transferable securities, UCITS) but are equivalent to these or Swiss securities funds pursuant to Article 53 of the Act.

3 In relation to investments in target funds, Articles 78-84 do not apply.

4 If, in accordance with the fund regulations, a significant portion of the fund assets may be invested in target funds:

a.[108] the fund regulations and the prospectus must contain information about the maximum level of management fees to be borne by the investing collective investment scheme itself as well as by the target funds;

b.   the annual report must specify the maximum portion of management fees that the investing collective investment scheme and the target funds may each bear.

**Art. 73***a*[109]     Master feeder- structures
                 (Art. 54 and 57 para. 1 CISA)

1 A feeder fund is a collective investment scheme that by way of derogation from Article 73 paragraph 2 letter a invests at least 85 percent of the fund's assets in units of the same target fund (master fund).

2 The master fund is a Swiss collective investment scheme of the same type as the feeder fund but is not itself a feeder fund and does not hold any units in such a fund.

3 A feeder fund may invest up to 15 percent of its fund assets in liquid assets (Art. 75) or derivative financial instruments (Art. 72). The derivative financial instruments may only be used for hedging purposes.

---

107   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
108   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
109   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

4 FINMA regulates the details.

### Art. 74    Money market instruments
(Art. 54 para. 1 CISA)

1 The fund management company and the SICAV may acquire money market instruments if these are liquid and can be valued and are traded on an exchange or other regulated market that is open to the public.

2 Money market instruments that are not traded on an exchange or other regulated market that is open to the public may only be acquired if the issue or the issuer is subject to provisions regarding creditor or investor protection and if the money market instruments are issued or guaranteed by:

   a.   the Swiss National Bank;

   b.   the central bank of a member state of the European Union;

   c.   the European Central Bank;

   d.   the European Union;

   e.   the European Investment Bank;

   f.   the Organisation for Economic Cooperation and Development (OECD);

   g.   another state including its constituent parts;

   h.   a public international body of which Switzerland or at least one member state of the European Union is a member;

   i.   a public body;

   j.   a company whose securities are traded on an exchange or other regulated market open to the public;

   k.   a bank, securities trader or other institution that is subject to supervision equivalent to that in Switzerland.

### Art. 75    Liquid assets
(Art. 54 para. 2 CISA)

Liquid assets comprise bank credit balances and claims arising from repurchase agreements at sight or on demand with maturities of up to twelve months.

### Art. 76    Securities lending and repurchase agreements (repo, reverse repo)
(Art. 55 para. 1 let. a and b CISA)

1 Securities lending and repurchase agreements may only be used for the efficient management of the fund's assets. The custodian bank is liable for the proper, efficient settlement of securities lending and repurchase transactions.

2 Banks, brokers, insurance institutions and securities clearing organisations may be used as borrowers in the context of securities lending provided they specialise in securities lending and furnish collateral which corresponds to the scope and risk of

the proposed transactions. Repurchase transactions may be conducted under the same conditions with the institutions mentioned.

3 Securities lending and repurchase transactions are governed by a standardised framework agreement.

**Art. 77**        Raising and granting of loans; encumbrance of the fund's assets
                (Art. 55 para. 1 let. c and d and para. 2 CISA)

1 At the expense of a securities fund:

   a.   no loans may be granted, nor may any guarantees be concluded;

   b.   no more than 25 percent of the fund's net assets may be pledged or owner-
        ship thereof be transferred as collateral.

2 Securities funds may borrow the equivalent of up to 10 percent of the net assets on a temporary basis.

3 Securities lending and repurchase agreements in the form of reverse repos are not deemed to be lending pursuant to paragraph 1a.

4 Repurchase agreements in the form of repos pursuant to paragraph 2 are deemed to be borrowing unless the funds obtained are used as part of an arbitrage transaction for the acquisition of securities of a similar type in connection with a reverse repo.

**Art. 78**        Risk diversification in relation to securities and money market
                instruments
                (Art. 57 CISA)

1 Including the derivative financial instruments, the fund management company and the SICAV may invest up to 10 percent of the fund's assets in securities or money market instruments of the same issuer.

2 The total value of the securities and money market instruments of the issuers in which more than 5 percent of the fund's assets are invested may not exceed 40 percent of the fund's assets. This limit does not apply to sight or time deposits as defined in Article 79 or to transactions in OTC derivatives as defined in Article 80, to which the counterparty is a bank as defined in Article 70 paragraph 1e.

**Art. 79**        Risk diversification in relation to sight and time deposits
                (Art. 57 CISA)

The fund management company and the SICAV may invest up to 20 percent of the fund's assets in sight and time deposits held with the same bank. Investments in bank deposits (Art. 70 para. 1 let. e) in addition to liquid assets (Art. 75) are both subject to this limit.

**Art. 80**        Risk diversification in relation to OTC transactions and derivatives
                (Art. 57 CISA)

1 The fund management company and the SICAV may invest up to 5 percent of the fund's assets in OTC transactions with the same counterparty.

2 Where the counterparty is a bank as defined in Article 70 paragraph 1e, this limit is raised to 10 percent of the fund's assets.

3 The derivative financial instruments and claims against counterparties arising from OTC transactions are subject to the regulations on risk diversification as defined in Articles 73 and 78-84. This does not apply to derivatives on indices which comply with the conditions defined in Article 82 paragraph 1 letter b.

4 Where the claims arising from OTC transactions are hedged using collateral in the form of liquid assets such claims are not included in the calculation of counterparty risk. FINMA regulates the details of the collateral requirements. In doing so, it shall take account of international standards.[110]

### Art. 81      Overall limits
(Art. 57 CISA)

1 Investments, deposits and claims in accordance with Articles 78–80 from the same issuer may not exceed 20 percent of the fund's overall assets.

2 Investments and money market instruments in accordance with Article 78 from the same group of companies may not exceed 20 percent of the fund's overall assets.

3 The limits defined in Articles 78–80 and 83 paragraph 1 may not be accumulated.

4 In the case of umbrella funds, these limits apply to each individual subfund.

5 Companies which form a group in accordance with international accounting regulations are deemed to be a single issuer.

### Art. 82      Exceptions for index funds
(Art. 57 CISA)

1 The fund management company and the SICAV may invest a maximum of 20 percent of the fund's assets in securities or money market instruments from the same issuer if:

   a.   the fund regulations provide for the tracking of an index of equity or debt securities which is recognized by FINMA (index funds); and

   b.   the index is sufficiently diversified, representative of the market to which it relates, and is published in an appropriate manner.

2 The limit is increased to 35 percent for any securities or money market instruments from the same issuer where such instruments strongly dominate regulated markets. This exemption only applies in relation to a single issuer.

3 The investments defined in this article are not considered when observing the limit of 40 percent defined in Article 78 paragraph 2.

---

[110]   Inserted by No I of the Ordinance of 13 Feb. 2013 (AS **2013** 607). Amended by Anhang 4 Ziff. 1 der V vom 25. Juni 2014, in force since 1 Jan. 2015 (AS **2014** 2321).

**Art. 83**      Exemptions for publicly guaranteed or issued investments
                 (Art. 57 para. 1 CISA)

[1] The fund management company and the SICAV may invest up to 35 percent of the fund's assets in securities or money market instruments of the same issuer provided such instruments are issued or guaranteed by:

   a.   an OECD member country;

   b.   a public body from the OECD;

   c.   a public international body of which Switzerland or a member state of the European Union is a member.

[2] Subject to the approval of FINMA, they may invest up to 100 percent of the fund's assets in securities or money market instruments of the same issuer. In such event the following rules must be observed:

   a.   the investments are spread across securities or money market instruments from at least six different issues.

   b.   up to 30 percent of the fund's assets are invested in securities and money market instruments of the same issue.

   c.   reference is made in the prospectus and in the advertising material to the specific approval of FINMA; the issuers in which more than 35 percent of the fund's assets are invested are also listed therein.

   d.   the fund regulations include a listing of the issuers in which more than 35 percent of the fund's assets may be invested, together with the corresponding guarantors.

[3] Provided the protection of investors is not endangered, FINMA grants authorisation.

[4] The investments defined in this article are not considered when observing the limit of 40 percent defined in Article 78 paragraph 2.

**Art. 84**      Limit to the equity interest in a single issuer
                 (Art. 57 para. 2 CISA)

[1] Neither the fund management company nor the SICAV may acquire equity securities representing more than 10 percent of the overall voting rights in a company or which would enable it to exert a material influence on the management of an issuing company.

[2] FINMA may grant an exception provided the fund management company or the SICAV provides evidence that it does not exert a material influence.

[3] The fund management company and the SICAV may acquire the following on behalf of the fund assets:

   a.   up to 10 percent of the non-voting equity paper, debt instruments or money market instruments of the same issuer;

   b.   up to 25 percent of the units in other collective investment schemes which meets the requirements specified in Article 73.

[4] The limit defined in paragraph 3 does not apply if, at the time of acquisition, the gross amount of the debt instruments, the money market instruments or the units in other collective investment schemes cannot be calculated.

[5] The limits defined in paragraphs 1 and 3 do not apply to securities and money market instruments which are issued or guaranteed by a country or public body belonging to the OECD or by international public bodies of which Switzerland or a member state of the European Union is a member.

### Art. 85 Specific obligation to inform in the prospectus
(Art. 75 CISA)

[1] The prospectus must provide information about the categories of investment instruments in which the fund is invested and whether transactions involving derivative financial instruments are conducted. Where transactions involving derivative financial instruments are conducted, an explanation must be given as to whether such transactions are conducted as part of the investment strategy or for the hedging of investment positions, and how the use of such instruments affects the risk profile of the securities fund.

[2] Where the fund management company or the SICAV are permitted to invest the fund's assets primarily in investments other than those defined in Article 70 paragraph 1letters a and e, or where they constitute an index fund (Art. 82), specific reference must be made to this fact in the prospectus and in the advertising material.

[3] Where the net assets of a securities fund exhibit high volatility or a high leverage effect owing to the composition of the investments or the investment techniques applied, specific reference must be made to this fact in the prospectus and in the advertising material.

## Section 3 Real Estate Funds

### Art. 86 Permitted investments
(Art. 59 para. 1 and 62 CISA)

[1] The investments of real estate funds or real estate SICAVs must be specifically named in the fund regulations.[111]

[2] The following real estate, which is entered on the basis of the registration of the fund management company, SICAV or fund management company appointed by the SICAV pursuant to paragraph 2[bis], is deemed to be real estate pursuant to Article 59 paragraph 1 letter a:[112]

a.  residential buildings;

---

[111] Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
(AS **2013** 607).
[112] Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
(AS **2013** 607).

- b.  properties which are used exclusively or mainly for commercial purposes; mainly means where the income from the commercial element accounts for at least 60 percent of the total income from real estate (commercially used properties);

- c.  mixed-use buildings used for residential as well as commercial purposes; mixed means where the income from the commercial element accounts for more than 20 percent but less than 60 percent of the income from real estate;

- d.  condominiums;

- e.  building land (including properties for demolition) and buildings under construction;

- f.  leasehold land.

2bis The real estate must be entered in the Land Register under the name of the fund management company or SICAV with a remark to the effect that it belongs to the real estate fund. Where the real estate fund or SICAV under whose name the real estate is registered has subfunds, the subfund to which the real estate belongs must be specified.[113]

3 The following investments are also permitted:

- a.  mortgage notes or other contractual charges on property;

- b.  participations in and claims against real estate companies as defined in Article 59 paragraph 1 letter b of the Act;

- c.  units in other real estate funds (including real estate investment trusts or REITs) and real estate investment companies and certificates which are traded on an exchange or other regulated market which is open to the public, as defined in Article 59 paragraph 1 letter c of the Act;

- d.  foreign real estate securities as defined in Article 59 paragraph 1 letter d of the Act.

4 Undeveloped plots of land belonging to a real estate fund must be connected to the infrastructure network and suitable for immediate development and must also possess legally effective planning permission for their development. Construction work must commence prior to the expiry of the period for which the relevant planning permission is valid.[114]

### Art. 87        Risk diversification and limits
(Art. 62 CISA)

1 Real estate funds must spread their investments over at least ten properties. Residential estates which have been built using the same principles of construction and neighbouring plots of land are deemed to be a single property.

---

113   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
114   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).

2 The market value of a single property may not exceed 25 percent of the fund's assets.

3 The following limits expressed as a percentage of the fund's assets apply to the investments defined in a–d:

a.   up to 30 percent of the fund's assets may be invested in building land, including properties for demolition, and buildings under construction;

b.[115]  up to 30 percent of the fund's assets may be invested in leasehold land;

c.   up to 10 percent of the fund's assets may be invested in mortgage notes and other rights of lien on real estate;

d.   up to 25 percent of the fund's assets may be invested in other real estate funds and real estate investment companies as defined in Article 86 paragraph 3 letter c.

4 The investments defined in paragraph 3 letters a and b may together account for up to 40 percent of the fund's assets.[116]

5 FINMA may grant exemptions in justified individual instances.

**Art. 88**      Dominant influence of the fund management company and the
                 SICAV in the case of ordinary co-ownership
                 (Art. 59 para. 2 CISA)

1 The fund management company and the SICAV are deemed to exert a dominant influence if they have a majority of the co-ownership shares and votes.

2 In a set of rules governing use and administration as defined in Article 647 paragraph 1 of the Swiss Civil Code of 10 December 1907 (CC)[117] they shall retain all rights, measures and actions provided for in Articles 647*a*–651 CC.

3 The right of pre-emption pursuant to Article 682 CC may not be suspended under contract.

4 Co-ownership of common facilities associated with properties held by the collective investment scheme which are part of a more extensive development must not grant a controlling influence. In such cases, the right of pre-emption pursuant to paragraph 3 may be suspended under contract.

**Art. 89**      Liabilities; short-term fixed interest securities and funds available at
                 short notice
                 (Art. 60 CISA)

1 Liabilities are deemed to be borrowings, obligations from business activities, in addition to all claims arising from units on which notice has been given.

---

115   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
116   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
117   SR **210**

2 Short-term fixed interest securities are deemed to be debt securities with a term or residual term to maturity of up to twelve months.

3 Funds available at short notice are deemed to be cash on hand, postal check[118] and bank account deposits at sight and on demand with maturities of up to twelve months, as well as guaranteed credit facilities with a bank for up to 10 percent of the fund's net assets. The credit facilities must be included in the maximum level of pledging permitted pursuant to Article 96 paragraph 1.

### Art. 90    Collateral for construction projects
(Art. 65 CISA)

Fixed-income securities with a term or residual term to maturity of up to 24 months may be held as collateral for impending construction projects.

### Art. 91[119]    Derivative financial instruments
(Art. 61 CISA)

Derivative financial instruments are permitted for the hedging of interest rate, currency, credit and market risk. The provisions applicable to securities funds (Art. 72) apply mutatis mutandis.

### Art. 91*a*[120]    Closely related persons
(Art. 63 para. 2 and 3 CISA)

1 In particular, closely related persons include:

   a.   the fund management company, SICAV, custodian bank and their agents, specifically architects and building contractors commissioned by them;

   b.   the members of the board of directors and employees of the fund management company or SICAV;

   c.   the board of directors and members of the executive board as well as employees of the custodian bank appointed to monitor the real estate funds;

   d.   the audit company and the employees entrusted with the auditing of the real estate funds;

   e.   the valuation experts;

   f.   the real estate companies not belonging 100 percent to the real estate fund and members of the board of directors and employees of such real estate companies;

118   Following the Federal Council Decree of 7 June 201, which converted SwissPost into Swiss Post Ltd under special legislation and spun off Post Finance as a private company limited by shares, the reference to postal check deposits has been irrelevant since 26 June 2013.
119   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
120   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

   f.   the property management businesses entrusted with the management of the
        real estate and members of the board of directors and employees of such
        property management businesses;

   h.   the significant equity holders pursuant to Article 14 paragraph 3 of the Act
        of the companies mentioned in letters a–g above.

2 Agents pursuant to paragraph 1 letter a are not deemed to be closely related per-
sons if evidence can be provided that they neither exert nor have exerted direct or
direct influence on the fund management company or the SICAV and the fund
management company or SICAV are not biased in the matter in any other way

**Art. 92**      Valuation of real estate upon purchase or sale
                 (Art. 64 CISA)

1 Real estate which the fund management company or SICAV wish to purchase must
be valued in advance.[121]

2 The valuation expert shall physically inspect the property when performing the
valuation.

3 On the sale of real estate, FINMA may grant an exemption from the duty to obtain
a valuation pursuant to paragraph 1.

4 The fund management company and the SICAV must explain to the audit company
for the reason for any sale price which is below the estimated valuation or purchase
price which is above such valuation.

**Art. 93**      Valuation of properties belonging to the collective investment
                 scheme
                 (Art. 64 CISA)[122]

1 The market value of the properties belonging to the real estate fund must be reap-
praised by the valuation experts at the end of each accounting year.

2 The properties must be physically inspected by the valuation experts at least every
three years.

3 In the event of a sale, a new valuation may be waived if:

   a.   the existing valuation is no older than three months; and

   b.   there has not been any material change in the situation.[123]

4 Where the fund management company and the SICAV do not adopt the revised
valuation figure in their accounts, they must explain this to the audit company.

---

121   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
122   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
123   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).

**Art. 94**        Assessment and valuation in relation to construction projects
                   (Art. 64 and 65 CISA)[124]

[1] In relation to construction projects, the fund management company and the SICAV shall instruct at least one valuation expert to examine whether or not the probable costs are reasonable and in accordance with the prevailing market situation.

[2] Following the completion of the building, the fund management company and the SICAV shall instruct at least one valuation expert to assess the market value.

**Art. 95**        Duty to publish
                   (Art. 67 CISA)[125]

[1] The fund management company and the SICAV shall publish in the media of publication the market value of the fund's assets and resulting net asset value of the fund units simultaneously with the announcement to the bank or securities trader entrusted with the regular on and off-exchange trading of the units of the real estate fund.

[2] In relation to real estate funds which are traded on an exchange or other regulated market open to the public, the relevant regulations governing stock trading must also be observed.

**Art. 96**        Special powers
                   (Art. 65 CISA)

[1] In relation to pledging land and ceding the rights of lien as collateral pursuant to Article 65 paragraph 2 of the Act, the encumbrance may not exceed on average one third of the market value of all real estate assets.[126]

[1bis] To safeguard liquidity, the charge may be temporarily and exceptionally increased to half the market value where:

   a.   provision is made in the fund regulations; and

   b.   the interests of the investors are safeguarded.[127]

[1ter] As part of its audit of the real estate fund, the audit company expresses its opinion on the conditions pursuant to paragraph 1bis.[128]

[2] Where the fund management company and the SICAV commission the construction of buildings or carry out the refurbishment of buildings, they may during the period of preparation, construction or refurbishment credit the income statement of the real estate fund for building land and buildings under construction at the prevail-

124   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
125   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
126   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
127   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
128   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).

ing market rate, provided the costs do not exceed the estimated market value as a result.

**Art. 97**  Issuing of units in real estate funds
(Art. 66 CISA)

[1] Units may be issued at any time. This may only be effected in tranches.

[2] The fund management company and SICAV shall specify at least:

   a.  the planned number of new units to be issued;

   b.  the planned subscription ratio for the existing investors;

   c.  the issuing method for the subscription rights.

[3] The valuation experts shall review the market value of each property in order to calculate the net asset value and determine the issue price.

**Art. 98**  Early redemption of units in real estate funds
(Art. 66 CISA)

Units on which notice has been given in the course of an accounting year may be redeemed early by the fund management company and the SICAV at the close of said accounting year, providing:

   a.  the investor has stated this wish in writing at the time of serving notice;

   b.  the wishes of all investors who have requested early redemption can be met.

## Section 4    Other Funds for Traditional and Alternative Investments

**Art. 99**  Permitted investments
(Art. 69 CISA)

[1] The following investments are specifically admitted for other funds:

   a.  securities;

   b.  units in collective investment schemes;

   c.  money market instruments;

   d.  sight and time deposits with a term of up to twelve months;

   e.  precious metals;

   f.  derivative financial instruments whose underlyings are securities, collective investment schemes, money market instruments, derivative financial instruments, indices, interest rates, exchange rates, loans, currencies, precious metals, commodities or similar instruments;

   g.  structured products relating to securities, collective investment schemes, money market instruments, derivative financial instruments, indices, interest rates, exchange rates, currencies, precious metals, commodities or similar instruments.

52

[2] In the case of other funds for alternative investments, FINMA may admit other investments such as commodities and the corresponding commodity certificates.[129]

[3] Investments as defined in Article 69 paragraph 2 of the Act must be explicitly named in the fund regulations.

[4] In the case of investments in units of collective investment schemes, Article 73 paragraph 4 applies accordingly.

**Art. 100**      Investment techniques and restrictions
                  (Art. 70 para. 2 CISA and Art. 71 para. 2 CISA)

[1] Other funds for traditional investments may:

   a.   raise loans for an amount not exceeding 25 percent of the fund's net assets;
   b.[130]  pledge or cede as collateral no more than 60 percent of the fund's net assets;
   c.   commit to an overall exposure of up to 225 percent of the fund's net assets;
   d.   engage in short-selling.

[2] Other funds for alternative investments may:

   a.   raise loans for an amount not exceeding 50 percent of the fund's net assets;
   b.[131]  pledge or cede as collateral no more than 100 percent of the fund's net assets;
   c.   commit to an overall exposure of up to 600 percent of the fund's net assets;
   d.   engage in short-selling.

[3] The investment restrictions shall be set out explicitly in the fund regulations. Such regulations shall also govern the nature and scale of short-selling permitted.

**Art. 101**      Derogations
                  (Art. 69–71 CISA)

FINMA may in individual cases grant a derogation from the regulations pertaining to:

   a.   the permitted investments;
   b.   the investment techniques;
   c.   the restrictions;
   d.   the risk diversification.

---

129   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
130   Amended by No I of the Ordinance of 13 Feb. 2008, in force since 1 March 2008 (AS **2008** 571).
131   Amended by No I of the Ordinance of 13 Feb. 2008, in force since 1 March 2008 (AS **2008** 571).

**Art. 102**         Risk notice
(Art. 71 para. 3 CISA)

[1] The notice regarding special risks (warning clause) requires the approval of
FINMA.

[2] The warning clause must be placed on the first page of the fund regulations and the
prospectus, and in all cases in the form in which it was approved by FINMA.

## Chapter 4     General Provisions
### Section 1     Custodian Bank

**Art. 102***a*[132]    Organisational structure
(Art. 72 CISA)

[1] The custodian bank must have an organisational structure that is appropriate to its
tasks and employ personnel who possess suitable, relevant qualifications for their
activity.

[2] For the fulfilment of its activities as custodian bank, it has at least three full-time
employees with signatory powers.

**Art. 103**        Duty of disclosure
(Art. 72 para. 2 CISA)

The custodian bank shall notify the audit company of the executive persons entrust-
ed with the tasks of custodian bank activity.

**Art. 104**        Duties
(Art. 73 CISA)

[1] The custodian bank has the following tasks:

a.   It is responsible for account and safekeeping account management on behalf
     of the collective investment schemes, but does not have independent access
     to their assets.

b.   It ensures that in the case of transactions relating to the assets of the collec-
     tive investment scheme the counter-value is transferred thereto within the
     usual time limit.

c.   It notifies the fund management company or collective investment scheme if
     the counter-value is not refunded within the usual time limit and where pos-
     sible requests reimbursement for the asset item concerned from the counter-
     party.

[132]   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
        (AS **2013** 607).

d. It keeps the required records and accounts in such manner that it is at all times able to distinguish between the assets held in safe custody of the individual collective investment schemes.

e. In relation to assets that cannot be placed in safe custody, it verifies ownership of the fund management company or collective investment scheme and keeps a record thereof.[133]

2 In the case of real estate funds, it shall be responsible for the safekeeping of mortgage notes against which no loans have been raised, in addition to the shares in real estate companies. It may hold accounts with third parties for the purpose of the ongoing management of real estate assets.

3 In the case of collective investment schemes comprising subfunds, all duties shall be performed by the same custodian bank.

**Art. 105**      Change of custodian bank, time limit for lodging objections, entry
                  into force and cash payments
                  (Art. 74 CISA)

1 Article 41 applies mutatis mutandis to the change in custodian bank of a contractual fund.

2 The decision to change custodian bank shall be published immediately in the media of publication of the SICAV.

**Art. 105***a*[134]      Duties in relation to the delegation of safekeeping
                  (Art. 73 para. 2 and 2bis CISA)

Where the custodian bank transfers safekeeping of the fund's assets to a third-party custodian or collective securities depository in Switzerland or abroad, it shall verify and monitor whether the latter:

a. possesses an appropriate organisational structure, financial guarantees and the specialist qualifications required given the nature and complexity of the assets entrusted to it;

b. is subject to regular external audits, thereby ensuring that it possesses the financial instruments;

c. the assets received from the custodian bank are kept in safe custody in such a manner that by means of regular portfolio comparisons they can at all times be clearly identified as belonging to the fund's assets;

d. complies with the provisions applicable to the custodian bank with respect to the performance of the tasks delegated to it and the avoidance of conflicts of interest.

133   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
       (AS **2013** 607).
134   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
       (AS **2013** 607).

## Section 2    Prospectus and Simplified Prospectus

#### Art. 106    Prospectus
(Art. 75 and 77 CISA)

[1] The fund management company and the SICAV shall set out in the prospectus (Annex I) all material information required for the evaluation of the collective investment scheme by prospective investors. The prospectus shall in addition contain the fund regulations where interested parties are not notified as to where such regulations may be separately obtained prior to subscription of the units.

[2] The fund management company and the SICAV shall date the prospectus and submit it and any amendment thereto to FINMA at the latest by the time of publication.

[3] They shall amend the prospectus in the event of material changes, but at least once per year.

#### Art. 107    Simplified prospectus for real estate funds[135]
(Art. 76 and 77 CISA)

[1] The simplified prospectus for real estate funds contains the information required pursuant to Annex 2. FINMA specifically sets out these requirements.[136]

[2] The fund management company and the SICAV shall date the simplified prospectus and submit it and any amendment thereto to FINMA at the latest by the time of publication.

[3] They shall amend such prospectus in the event of material changes, but at least once per year.

## Section 3
## Key Investor Information Document for Securities Funds and Other Funds for Traditional Investments[137]
(Art. 76 and 77 CISA)

#### Art. 107*a*[138]    Basic requirements

[1] The key investor information document for securities funds and other funds for traditional investments contains the information required pursuant to Annex 3.

[2] The fund management company and the SICAV date the key investor information document and submit it and any amendment thereto to FINMA immediately.

---

135  Amended by No I of the Ordinance of 29 June 2011, in force since 15 July 2011 (AS **2011** 3177).
136  Amended by No I of the Ordinance of 29 June 2011, in force since 15 July 2011 (AS **2011** 3177).
137  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
138  Inserted by No I of the Ordinance of 29 June 2011 (AS **2011** 3177). Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

**Art. 107***b*[139]   In the case of multiple subfunds

Collective investment schemes that comprise several subfunds must publish a key investor information document for each subfund.

**Art. 107***c*[140]   In the case of multiple unit classes

[1] Collective investment schemes that comprise several unit classes must publish a key investor information document for each of these unit classes. Several unit classes may be summarised provided the requirements pursuant to Annex 3, in particular the requirements relating to the length of the document, are met.

[2] In relation to one unit class or several other unit classes, the fund management company and the SICAV may select a representative unit class provided such choice is not misleading to investors in the other unit classes. In such cases, the «risk and earnings profile» section of the key investor information document must contain the explanation of the significant risk that applies to each of the unit classes being represented.

[3] Different unit classes may not be summarized in a representative unit class pursuant to paragraph 2. The fund management company and the SICAV keep a record of the unit classes represented by the representative unit class pursuant to paragraph 2, as well as the reasons for such choice.

**Art. 107***d*[141]   Reviews

[1] The fund management company and the SICAV shall review the key investor information document in the event of any material change to the information, but at least once per year.

[2] If a review finds that the key investor information document requires amendment, the fund management company and the SICAV must make a revised version available immediately.

**Art. 107***e*[142]   Publication

The key investor information document, including the appropriately revised presentation of the collective investment scheme's past performance in the period to December 31, must be published by the fund management company and the SICAV within the first 35 working days of the following year.

---

[139]   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
[140]   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
[141]   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
[142]   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

## Section 3  Position of Investors

**Art. 108**  Payment; certification of units
(Art. 78 para. 1 and 2 CISA)

[1] The paying agent shall be a bank under the Federal Act on Banks and Savings Banks of 8 November 1934[143][144]

[2] Where the fund regulations provide for the delivery of unit certificates, the custodian bank, at the investor's request, certifies his or her rights in securities (Art. 965 CO[145]) without par value, in registered form and structured as order instruments (Art. 967 and 1145 CO).[146]

[3] Unit certificates may only be issued after payment of the issue price.

[4] The issuing of fractions of units shall only be permitted in the case of investment funds.

**Art. 109**  Exceptions from the right to redeem at any time
(Art. 79 CISA)

[1] The regulations of a collective investment scheme whose value is difficult to ascertain, or which has limited marketability, may provide for notice to be served only on specific dates, subject to a minimum of four times per year.

[2] FINMA may in the event of a justified request restrict the right to redeem at any time depending on the investments and investment policy. This shall apply specifically in the case of: a. investments which are not listed and not traded on another regulated market open to the public; b. mortgages; c. private equity investments.

[3] Where the right to redeem at any time is restricted, such fact must be stated explicitly in the fund regulations, in the prospectus and in the simplified prospectus.

[4] The right to redeem at any time may be suspended for a maximum of five years.

**Art. 110**  Deferred repayment
(Art. 81 CISA)

[1] The fund regulations may provide for repayment to be deferred temporarily in the following exceptional cases:

   a.  where a market which serves as the basis for the valuation of a significant proportion of the fund's assets is closed, or if trading on such market is restricted or suspended;

   b.  in the event of political, economic, military, monetary or other emergencies;

---

143  SR **952.0**
144  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
145  SR **220**
146  Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

   c.   if, owing to exchange controls or restrictions on other asset transfers, the collective investment scheme can no longer transact its business;

   d.   in the event of large-scale withdrawals of units which may significantly endanger the interests of the other investors.

2 The audit company and FINMA must be informed immediately of any decision to defer redemptions. The decision must also be communicated to the investors in a suitable manner.


### Art. 111    Enforced redemption
(Art. 82 CISA)

1 Enforced redemption pursuant to Article 82 of the Act is permitted only in exceptional circumstances.

2 The reasons for enforced redemption must be set out in the fund regulations.


## Section 4
## Open-Ended Collective Investment Schemes with Subfunds

### Art. 112    Subfunds
(Art. 92-94 CISA)

1 The fund management company and the SICAV shall prepare a single set of fund regulations for a collective investment scheme. Such regulations shall include the designation of the scheme and the additional designations of the individual subfunds.

2 Where the fund management company or the SICAV has the right to create additional subfunds, or dissolve or merge existing subfunds, specific reference must be made thereto in the fund regulations.

3 The fund management company and the SICAV shall also set out in the fund regulations that:

   a.   fees may be debited only to that subfund for which a specific service is rendered;

   b.   costs which cannot be clearly assigned to a particular subfund are charged to the individual subfunds in proportion to their assets;

   c.   investors are only entitled to the assets and income of the particular subfund in which they are invested or whose shares they hold;

   d.   only the subfund concerned is liable for the liabilities of that individual subfund.

4 The fees charged when investors convert from one subfund to another are cited explicitly in the fund regulations.

5 In relation to the merging of subfunds, Article 115 applies accordingly.

**Art. 113**     SICAV with subfunds
                 (Art. 94 CISA)

The risk that a subfund is in certain circumstances liable for another subfund must
be disclosed in the prospectus.

## Section 5     Restructuring and Dissolution

**Art. 114**     Conditions relating to restructurings
                 (Art. 92 and 95 para. 1 CISA)

[1] Investment funds or subfunds may be merged by the fund management company
if:

   a.   provision therefore is made in the relevant fund contracts;

   b.   they are managed by the same fund management company;

   c.   the relevant fund contracts are basically identical in terms of the provisions
        pursuant to Article 26 paragraph 3 letters b, d, e and i of the Act;

   d.   the assets of the funds concerned are valued, the exchange ratio is calculat-
        ed, and the assets and liabilities are acquired on the same day;

   e.   no costs arise as a result for either the investment fund or subfunds, or the
        investors.

[2] In the case of a transfer of the assets of a SICAV, paragraph 1 shall apply accord-
ingly.

[3] FINMA may make the merging of investment funds and the transfer of assets of a
SICAV dependent on additional conditions, especially in the case of real estate
funds.

**Art. 115**     Procedure for the merging of collective investment schemes
                 (Art. 95 para. 1 let. a and b CISA)

[1] In the case of the merging of two investment funds, the investors of the fund being
transferred receive an equivalent number of units in the acquiring fund. The fund
being transferred is terminated without liquidation.

[2] The fund contract governs the merging procedure. In particular, it contains provi-
sions regarding:

   a.   the information to be given to the investors;

   b.   the audit company's duty to inspect the accounts at the time of the merger.

[3] FINMA may grant limited deferment of repayment if the merger is likely to take
more than one day.

[4] The fund management company shall notify FINMA that the merger has been
completed.

[5] In the case of the transfer of assets of a SICAV, paragraphs 2-4 apply accordingly.

**Art. 116**     Dissolution of a collective investment scheme
(Art. 96 and 97 CISA)

[1] The collective investment scheme shall be dissolved and may be liquidated immediately provided:

a. the fund management company or the custodian bank has served notice;

b. the shareholders of a SICAV have resolved the dissolution.

[2] Where FINMA orders the dissolution of the collective investment scheme, such scheme shall be liquidated immediately.

[3] Prior to the final payment, the fund management company or the SICAV shall obtain authorisation from FINMA.

[4] The trading of units on the exchange ceases at the time of dissolution.

[5] The termination of the custodian bank agreement between the SICAV and the custodian bank shall be notified to FINMA and the audit company immediately.

## Title 3     Closed-Ended Collective Investment Schemes
## Chapter 1     Limited Partnership for Collective Investment

**Art. 117**[147]     Object
(Art. 98 para. 1 CISA)

[1] The limited partnership for collective investment may only manage its own investments. It is specifically prohibited from rendering services pursuant to Article 29 of the Act on behalf of third parties or taking up entrepreneurial activities for the pursuit of commercial purposes.

[2] It invests in risk capital of companies and projects and can determine their strategic direction. It can also invest in instruments pursuant to Article 121.

[3] To achieve this object, it may:

a. take control of voting rights in companies;

b. sit on the governing body responsible for ultimate management, supervision and control of its participations, in order to safeguard the interests of the limited partners.

**Art. 118**     General partners
(Art. 98 para. 2 CISA)

[1] ...[148]

---

[147] Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

[148] Repealed by No I of the Ordinance of 13 Feb. 2013, with effect from 1 March 2013 (AS **2013** 607).

2 Where the company has a general partner, the general partner must have a minimum paid-up share capital of 100,000 Swiss francs. Where it has several general partners, they must together have a minimum paid-up share capital of 100,000 Swiss francs.

3 In relation to the general partners, the authorisation and reporting duties defined in Articles 14 paragraph 1 and 15 paragraph 1 apply accordingly.

**Art. 119** Company agreement
(Art. 9 para. 3 and 102 CISA)[149]

1 The general partners may delegate investment decisions and other activities, provided this is in the interests of efficient management.

2 They shall exclusively commission persons who are properly qualified to execute such activities, and shall ensure the instruction, monitoring and control necessary with respect to implementation of the tasks assigned.

3 The persons holding executive powers with the general partners may participate in the company as limited partners if:

　　a.　this is provided for in the company agreement;

　　b.　the participating interest stems from their private assets; and

　　c.　the participating interest is subscribed at the time of launch.

3bis High-net-worth individuals pursuant to Article 6 who have submitted a written declaration pursuant to Article 6*a* paragraph 1 may participate in the company as limited partners, where specified by the company agreement.[150]

4 The company agreement regulates the details and must be published in an official language. FINMA may authorise a different language in individual cases.[151]

**Art. 120** Risk capital
(Art. 103 para. 1 CISA)

1 Risk capital is generally used for the direct or indirect financing of companies and projects in the basic expectation of generating above-average added value, coupled with the above-average probability of making a loss.

2 Financing may take the following specific forms:

　　a.　equity capital;

　　b.　borrowed capital;

　　c.　mixed forms of equity and borrowed capital such as mezzanine financing.

---

149　Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
150　Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).
151　Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

**Art. 121**     Other investments
               (Art. 103 para. 2 CISA)

1 The following are specifically permitted:

   a.[152] construction, real estate and infrastructure projects;

   b.   alternative investments.

2 The company agreement regulates the details.

3 Only construction, real estate and infrastructure projects by persons which are neither directly nor indirectly related with the following are permitted:

   a.   the general partner;

   b.   the persons responsible for the management and the business operations; or

   c.   the investors.[153]

4 The general partner, the persons responsible for the management and the business operations and closely related natural and legal persons, as well as the investors of a limited partnership for collective investment, may not acquire real estate and infra-structure assets from the latter nor assign any such assets to it.[154]

## Chapter 2     Investment Company with Fixed Capital

**Art. 122**     Objects
               (Art. 110 CISA)

1 The investment company with fixed capital may only manage its own assets. Its primary object is to generate income and/or capital gains, whereby it does not pursue any entrepreneurial activities in the true sense. It is specifically prohibited from rendering services pursuant to Article 29 of the Act on behalf of third parties.

2 It may delegate investment decisions as well as specific tasks, provided this is in the interests of efficient management.

**Art. 122***a*[155]     Minimum investment amount
               (Art. 110 para. 2 CISA)

1 Shares amounting to at least 500,000 Swiss francs must be fully paid up in cash at the time of formation.

2 The minimum investment amount must be maintained at all times.

---

152   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
153   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
154   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).
155   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).

3 The SICAF shall notify FINMA of any shortfall in the minimum investment amount immediately.

**Art. 122*b*[156]**    Treasury shares of the governing bodies
                        (Art. 110 para. 2 CISA)

The governing bodies must at all times hold treasury shares as a percentage of the total assets of the SICAF as follows, subject to a maximum of 20 million Swiss francs:

   a.   1 percent for that portion not exceeding 50 million Swiss francs;

   b.   ¾ percent for that portion exceeding 50 million but not exceeding 100 million Swiss francs;

   c.   ½ percent for that portion exceeding 100 million but not exceeding 150 million Swiss francs;

   d.   ¼ percent for that portion exceeding 150 million but not exceeding 250 million Swiss francs;

   e.   ⅛ for that portion exceeding 250 million Swiss francs.

**Art. 123**    Permitted investments
                (Art. 110 CISA)

1 The provisions concerning permitted investments for other funds apply accordingly.

2 FINMA may authorise other investments.

**Art. 124**    Media of publication
                (Art. 112 CISA)

Article 39 applies accordingly.

**Art. 125**    Enforced redemption
                (Art. 113 para. 3 CISA)

Article 111 applies accordingly.

**Art. 126**    Amendments to the articles of association and investment
                regulations
(Art. 115 para. 3 CISA)

In the media of publication, the SICAF shall publish the significant amendments to the articles of association and the fund regulations resolved by the general meeting and approved by FINMA, indicating the locations where the full wording of the amendments may be obtained free of charge.

[156]    Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
         (AS **2013** 607).

## Title 4        Foreign Collective Investment Schemes

## Chapter 1      Approval

**Art. 127**        Designation of the foreign collective investment scheme
                    (Art. 120 para. 2c and 122 CISA)[157]

If the designation of a foreign collective investment scheme provides grounds or
might provide grounds for confusion or deception, FINMA may require a supple-
mentary explanation.

**Art. 128**[158]    Representative agreement and paying agent agreement
                    (Art. 120 para. 2 let. d CISA)

[1] A fund management company of a foreign collective investment scheme or a
foreign fund management company that is admitted for distribution in Switzerland
shall provide evidence that it has concluded a written representative agreement.

[2] A fund management company of a foreign collective investment scheme or a fund
management company that is admitted for distribution in Switzerland and the custo-
dian bank shall provide evidence that they have concluded a written paying agent
agreement.

[3] In relation to the distribution of foreign collective investment schemes in Switzer-
land, the representative agreement specifically regulates:

   a.   the rights and duties of the foreign collective investment scheme and the rep-
        resentative pursuant to Article 124 paragraph 2 of the Act, in particular with
        regard to its duty to report, publish and inform, as well as the code of con-
        duct;

   b.   the manner in which the collective investment schemes are distributed in
        Switzerland; and

   c.   the duty of a foreign collective investment scheme to report to the repre-
        sentative, specifically with regard to changes to the prospectus and the or-
        ganisational structure of the foreign collective investment scheme.

[4] FINMA shall publish a list of countries with which it has concluded an agreement
on cooperation and the exchange of information pursuant to Article 120 paragraph 2
letter e of the Act.

---

157   Amended by No I of the Ordinance of 13 Feb. 2008, in force since 1 March 2008
      (AS **2008** 571).
158   Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
      (AS **2013** 607).

**Art. 128***a*[159]    Duties of the representative
            (Art. 124 para. 2 CISA)

The representative of a foreign collective investment shall have an appropriate organisational structure for the fulfilment of its duties pursuant to Article 124 of the Act.

**Art. 129**[160]    Simplified, fast-track approval procedure
            (Art. 120 para. 3 CISA)

FINMA may in individual cases specify a simplified, fast-track approval procedure for foreign collective investment schemes provided such investments have already been approved by a foreign supervisory authority, such arrangement being reciprocal.

**Art. 130**    Lapse of approval
            (Art. 15 and 120 CISA)

The approval for foreign collective investment schemes pursuant to Articles 15 and 120 of the Act lapses if the supervisory authority in the country of domicile of the collective investment scheme withdraws its approval.

## Chapter 2    Representatives of Foreign Collective Investment Schemes

**Art. 131**    Minimum capital and furnishing of collateral
            (Art. 14 para. 1 let. d CISA)

[1] The representative of foreign collective investment schemes must have a minimum capital of 100 000 Swiss francs. This must be paid up in cash.

[2] In all other respects, Articles 19 and 20 apply mutatis mutandis.

**Art. 131***a*[161]    Duties of the representative in relation to distribution to qualified
            investors
            (Art. 120 para. 4 CISA)

[1] The representative of a foreign collective investment scheme that in Switzerland is distributed solely to qualified investors must conclude a written distribution agreement pursuant to Article 30*a* with the financial intermediary pursuant to Article 19 paragraph 1[bis] of the Act.

[2] It shall ensure that it is able to provide investors with the binding documents for the foreign collective investment scheme.

---

[159]  Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
       (AS **2013** 607).
[160]  Amended by Annex No 6 of the Financial Market Audit Act of 15 Oct. 2008, in force
       since 1 Jan. 2009 (AS **2008** 5363).
[161]  Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
       (AS **2013** 607).

**Art. 132** Professional indemnity insurance
(Art. 14 para. 1 let. d CISA)

The representative shall conclude professional indemnity insurance appropriate to its business activities of at least 1 million Swiss francs, less the minimum capital or effective collateral furnished in accordance with Article 131.

**Art. 133** Publication and reporting regulations
(Art. 75–77, 83 para. 4 and 124 para. 2 CISA)[162]

[1] The representative of a foreign collective investment scheme shall publish the documents pursuant to Articles 13*a* and 15 paragraph 3, together with the annual and semi-annual report, in an official language. FINMA may authorise publication in another language, provided publication is directed only towards a specific investor eligibility.[163]

[2] The following must be indicated in the publications and marketing material:

   a. the country of domicile of the collective investment scheme;

   b. the representative;

   c. the paying agent;

   d.[164] the location where the documents pursuant to Articles 13*a* and 15 paragraph 3, together with the annual and semi-annual report, may be obtained.

[3] The representative of a foreign collective investment scheme shall submit the annual and semi-annual reports to FINMA immediately, notify it of amendments to such documents pursuant to Article 13*a* immediately and publish such amendments in the media of publication. Articles 39 paragraph 1 and 41 paragraph 1, second sentence, apply mutatis mutandis.[165]

[4] It shall publish the net asset values of units at regular intervals.

[5] The publication and reporting regulations do not apply to foreign collective investment schemes that are exclusively distributed to qualified investors.[166]

---

162 Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
   (AS **2013** 607).
163 Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
   (AS **2013** 607).
164 Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
   (AS **2013** 607).
165 Amended by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
   (AS **2013** 607).
166 Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013
   (AS **2013** 607).

## Title 5   Audit and Supervision[167]
## Chapter 1   Audit[168]

**Art. 134**[169]   Audit of the custodian bank
(Art. 126 para. 1 and 6 CISA)

[1] The audit company for the custodian bank shall verify whether the custodian bank is complying with the supervision and contractual provisions.

[2] If the audit company for the custodian bank identifies an infringement of supervision or contractual provisions or other irregularities, it shall inform FINMA and the audit company for the fund management company or for the investment company with variable capital (SICAV).

**Art. 135**[170]   Audit report
(Art. 126 para. 1 and 6 CISA)

[1] The audit company for the custodian bank shall specify in a separate audit report whether the custodian bank is complying with the supervision and the contractual provisions.

[2] It must also include any reservation in the audit report under Article 27 paragraph 1 of the Financial Market Supervision Act of 22 June 2007[171] on the custodian bank.

[3] It shall submit the audit report under paragraph 1 to the following recipients:

   a.   the fund management company or the SICAV;

   b.   FINMA;

   c.   the audit company for the fund management company or the SICAV.

[4] The audit company for the fund management company or the SICAV shall take account of the results of the report on the audit of the custodian bank in their own audits.

[5] It may request additional information from the audit company for the custodian bank that it requires to carry out its tasks.

---

[167] Amended by Annex No 3 of the Financial Market Audit Ordinance of 5 Nov. 2014, in force since 1 Jan. 2015 (AS **2014** 4295).
[168] Inserted by Annex No 3 of the Financial Market Audit Ordinance of 5 Nov. 2014, in force since 1 Jan. 2015 (AS **2014** 4295).
[169] Amended by Annex No 3 of the Financial Market Audit Ordinance of 5 Nov. 2014, in force since 1 Jan. 2015 (AS **2014** 4295).
[170] Amended by Annex No 3 of the Financial Market Audit Ordinance of 5 Nov. 2014, in force since 1 Jan. 2015 (AS **2014** 4295).
[171] SR **956.1**

**Art. 136**[172]    Cooperation between audit companies
                (Art. 126 para. 1 and 6 CISA)

Audit companies for supervised bodies that work together in accordance with Article 31 of the Act must for their part also work closely together.

**Art. 137**[173]    Audit of accounts
                (Art. 126 para. 5 and 6 CISA)

[1] When auditing the accounts of collective investment schemes, the information under Articles 89 paragraph 1 letters a–h and 90 of the Act shall be audited.

[2] In relation to the auditing of accounts of persons named in Article 126 paragraph 1 of the Act, of the investment funds managed and of any real estate company belonging to the real estate funds or to the real estate investment companies, FINMA may regulate the details relating to form, content, periodicity, time limits and recipients of reports as well as the conduct of the audit.

**Art. 138–140**[174]

## Chapter 2    Supervision[175]

**Art. 141**    Continuation of the collective investment scheme
            (Art. 96 CISA)

[1] Where the continuation of the investment fund is in the interests of the investors and a suitable new fund management company or custodian bank can be found, FINMA may order the transfer of the fund contract thereto including rights and obligations.

[2] Where the new fund management company enters into the fund contract, the liabilities and ownership of the assets and rights belonging to the investment fund must by law be passed to the new fund management company.

[3] Where the continuation of the SICAV is in the interests of the investors and a suitable new SICAV can be found, FINMA may order the transfer of the assets thereto.

**Art. 142**    Form of documents to be submitted
            (Art. 1 and 144 CISA)

[1] FINMA may determine the form for submission, specifically:

172 Amended by Annex No 3 of the Financial Market Audit Ordinance of 5 Nov. 2014, in force since 1 Jan. 2015 (AS **2014** 4295).
173 Amended by Annex No 3 of the Financial Market Audit Ordinance of 5 Nov. 2014, in force since 1 Jan. 2015 (AS **2014** 4295).
174 Repealed by Annex No 6 of the Financial Market Audit Ordinance of 15 Oct. 2008, with effect from 1 Jan. 2009 (AS **2008** 5363).
175 Inserted by Annex No 3 of the Financial Market Audit Ordinance of 5 Nov. 2014, in force since 1 Jan. 2015 (AS **2014** 4295).

  a.   of the prospectuses and simplified prospectuses;

  b.   of the documents specified in Article 15 paragraph 1a-e of the Act;

  c.   of the annual and semi-annual reports.

2 It may designate a third party as the recipient of the submission.


## Title 6        Final and Transitional Provisions


**Art. 143**[176]


**Art. 144**        Transitional provisions

1 With the exception of the following provisions, this Ordinance applies to the following from its commencement date:

  a.   new collective investment schemes and existing investment funds;

  b.   all persons subject to the duty to obtain authorisation in accordance with Article 13 of the Act;

  c.   audit companies pursuant to Article 126 et seq. of the Act.

2 Within one year of this Ordinance coming into force, investment clubs must comply with the provisions set out in Article 1.

3 Within six months of this Ordinance coming into force, regulated financial intermediaries as defined in Article 5 paragraph 1 letter a of the Act must issue simplified prospectuses which satisfy the requirements of Article 4 paragraph 3.

4 Within one year of this Ordinance coming into force, existing investment funds and subfunds of an umbrella fund must comply with the provision concerning minimum assets (Art. 35 para. 2).

5 One year after this Ordinance comes into force, joint and several guarantees in accordance Article 15 paragraph 1e of the Investment Fund Ordinance of 19 October 1994[177] are no longer be recognised as qualifying capital.

6 Within one year of this Ordinance coming into force, existing representatives of foreign collective investment schemes shall comply with the provisions concerning minimum capital (Art. 131) and professional indemnity insurance (Art. 132).

7 Exceptions which FINMA has granted on a case-by-case basis to fund management companies of investment funds for institutional investors with professional treasury operations in accordance with Article 2 paragraph 2 of the Investment Fund Ordinance (Art. 10 para. 5 CISA) continue to apply.


[176]   Repealed by No I of the Ordinance of 29 June 2011, with effect from 15 July 2011
        (AS **2011** 3177).
[177]   [AS **1994** 2547, **1997** 85 Art. 57 No 2 2255 2779 II 64, **2000** 2713, **2004** 2073 3535]

[8] Within one year of this Ordinance coming into force, the audit companies of asset managers and of representatives of foreign collective investment schemes must at the least comply with the recognition requirements specified in Article 136.

[9] In special cases, FINMA may extend the time limits cited in this Article.

**Art. 144*a*[178]**   Transitional provisions to the Amendment of 29 June 2011 for Swiss collective investment schemes

[1] Within three years of the Amendment of 29 June 2011 coming into force, the fund management company and the SICAV must publish simplified prospectuses for existing securities funds and other funds for traditional investments pursuant to Annex 3 and submit these prospectuses to FINMA.

[2] For securities funds and other funds for traditional investments which are approved within one year of the Amendment coming into force, the fund management company and the SICAV may publish simplified prospectuses pursuant to Annex 2. Paragraph 1 applies.

**Art. 144*b*[179]**   Transitional provisions to the Amendment of 29 June 2011 for foreign collective investment schemes

[1] Within three years of the Amendment of 29 June 2011 coming into force, representatives of foreign collective investment schemes must for each foreign collective investment scheme which they represent in Switzerland or which is comparable to another fund for traditional investments publish a simplified prospectus pursuant to Annex 3 and submit it to the FINMA.

[2] For foreign collective investment schemes which are comparable to a Swiss securities fund or another fund for traditional investments and which within one year of the Amendment coming into force are approved for public distribution in and from Switzerland, their representatives may publish simplified prospectuses pursuant to Annex 2. Paragraph 1 applies.

**Art. 144*c*[180]**   Transitional provisions to the Amendment of 13 February 2013

[1] Banks, securities traders, insurance institutions and asset managers of collective investment schemes that operate as representatives of foreign collective investment schemes must within one year of the Amendment of 13 February 2013 coming into force meet the statutory requirements and submit an application for approval as a representative of foreign collective investment schemes. They may continue their activities until a decision regarding approval has been reached.

---

[178]   Inserted by No I of the Ordinance of 29 June 2011, in force since 15 July 2011 (AS **2011** 3177).
[179]   Inserted by No I of the Ordinance of 29 June 2011, in force since 15 July 2011 (AS **2011** 3177).
[180]   Inserted by No I of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

[2] Asset managers of collective investment schemes that are organised in accordance with Swiss law, existing fund management companies and SICAFs must meet the relevant applicable capital regulations pursuant to Articles 19–22, 48 and 122*b* within one year of the Amendment coming into force.

[3] Within one year of the Amendment coming into force, licensees pursuant to Article 13 paragraph 2 letters a–d and f–h of the Act must comply with the provisions concerning the organisational structure pursuant to Article 12 as well as the risk management, internal control system and compliance pursuant to Article 12*a*.

[4] Within one year of the Amendment coming into force custodian banks must comply with the provisions concerning the organisational structure pursuant to Articles 12*a* and 102*a*.

[5] Within two years of the Amendment coming into force, financial intermediaries that distribute foreign collective investment schemes to qualified investors must comply with the provisions of Article 30*a*.

[6] Existing encumbrance arrangements pursuant to Article 96 paragraph 1 which exceed the threshold must be rectified within five years.

[7] Unit certificates which are structured as securities in accordance with Article 108 paragraph 2 and which are in bearer form must be converted into registered securities by 31 December 2016.

[8] Limited partnerships for collective investment which admit high-net-worth individuals pursuant to Article 119 paragraph 3[bis] as limited partners must amend their company agreement within two years. After the amendment comes into force, qualified investors pursuant to Article 10 paragraph 3[ter] of the Act may no longer acquire any investments as limited partners.

### Art. 145    Commencement

This Ordinance comes into force on 1 January 2007.

*Annex 1*[181]
*(*Art. 106)

## Minimum content of the prospectus

In addition to the content prescribed in the Act and in the Ordinance, the prospectus shall contain the following:

### 1 Information concerning the collective investment scheme

1.1 Date of formation and indication of the country in which the collective investment scheme was established;

1.2 In the case of collective investment schemes with a definitive term: the duration (Art. 43 CISA);

1.3 Information concerning the relevant tax provisions (including deductions of withholding tax) for the collective investment scheme;

1.4 Accounting year;

1.5 Name of the audit company;

1.6 Information concerning the units (e. g. nature of the rights represented by the unit and description of the voting rights of the investors where applicable; available documents or certificates; qualification and denomination of any securities; conditions and effects of the dissolution of the collective investment scheme);

1.7 Where applicable, information about exchanges and markets on which the units are listed or traded;

1.8 Procedural details and conditions for the subscription, conversion and redemption of units, including the possibility of subscription or repayment of tangible assets (e.g. method, frequency of price calculation and publication, information about the medium of publication) and conditions under which such actions may be suspended;

1.9 Information concerning the calculation and appropriation of net income as well as the frequency of payments in accordance with the distribution policy;

1.10 Description of the investment objectives, investment policy, permitted investments, investment techniques applied, investment restrictions and other rules applicable to risk management;

1.11 Information concerning the rules applicable to calculation of the net asset value;

1.12 Information concerning the calculation and amount of the fees payable at the expense of the collective investment scheme to the fund management com-

---

[181] Revised by No II of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

pany, custodian bank, asset managers of collective investment schemes, distributors pursuant to Article 37; information about incidental costs, any performance fee and the coefficient of the total expense ratio (TER); finally, information concerning commissions and other financial benefits where applicable; information concerning the calculation and amount of fees charged to the investors pursuant to Article 38;

1.13   Information concerning the location where the fund contract, if not attached to the prospectus, and annual and semi-annual reports may be obtained;

1.14   Information concerning the legal status (contractual investment fund or SICAV) and nature of the collective investment scheme (securities fund, real estate fund, other fund for traditional or alternative investments);

1.15   Information concerning the specific risks and high volatility, where applicable;

1.16   In the case of funds for alternative investments, a glossary explaining the most important specialist terms.

## 2   Information concerning the licensee (fund management company, SICAV)

2.1   Date of formation, legal status, domicile and main administrative office;

2.2   Information concerning other collective investment schemes managed by the fund management company and, where applicable, about its rendering of other services;

2.3   Names and functions of members of the governing and executive bodies in addition to any relevant activities not performed on behalf of the licensee (fund management company, SICAV);

2.4   Amount of subscribed and paid-up capital;

2.5   Persons to whom investment decisions and other specific tasks have been delegated;

2.6   Information concerning the exercising of membership and creditors' rights.

## 3   Information concerning the custodian bank

3.1   Legal status, registered office and main administrative office;

3.2   Primary activity.

## 4   Information concerning third parties whose fees are charged to the collective investment scheme

4.1   Name/company;

74

4.2    Elements of the contract between the licensee (fund management company, SICAV) and third parties which are significant for the investors, except for fee arrangements;

4.3    Other significant activities of the third parties;

4.4    Specialist knowledge of third parties entrusted with management and decision- making powers.

## 5    Further information

Information concerning payments to the investors, the redemption of units and information and notices published about the collective investment scheme both in relation to the country of domicile and any third countries in which the units are distributed.

## 6    Further investment information

6.1    Where applicable, the historical results of the collective investment scheme; such information may be contained either in the prospectus or attached thereto;

6.2    Profile of the typical investor for whom the collective investment scheme has been conceived.

## 7    Financial information

Any costs or fees, with the exception of the costs cited in numbers 1.8 and 1.12, by way of a breakdown showing those charged to the investor and those deducted from the assets of the collective investment scheme.

*Annex 2*[182]
*(*Art. 107)

## Simplified prospectus for real estate funds

The simplified prospectus for real estate funds contains the following information:

### 1 Brief profile of the collective investment scheme

1.1 Date of formation and indication of the country in which the collective investment scheme was established;

1.2 Information concerning different subfunds where applicable;

1.3 Name of fund management company where applicable;

1.4 The duration in the case of collective investment schemes with a fixed term;

1.5 Name of the custodian bank;

1.6 Name of the audit company;

1.7 Names of the persons to whom investment decisions and other specific tasks are delegated;

1.8 Name of the financial group offering the collective investment scheme (e.g. a bank).

### 2 Investment information

2.1 Brief definition of the investment objective;

2.2 Investment strategy and brief assessment of the risk profile of the collective investment scheme (including the information required pursuant to Art. 53 et seq., 58 et seq. and 68 et seq. CISA where applicable);

2.3 The past performance of the collective investment scheme, where applicable, and a warning notice that past performance provides no indication as to future performance;

2.4 Profile of the typical investor for whom the collective investment scheme has been conceived.

### 3 Financial information

3.1 Information concerning the relevant tax provisions (including deductions of withholding tax) for the collective investment scheme;

---

[182] Revised by No II para. 1 of the Ordinance of 29 June 2011 (AS **2011** 3177) and by No II of the Ordinance of 13 Feb. 2013, in force since 1 March 2013 (AS **2013** 607).

3.2    Information concerning the fees charged in relation to the issuing and re-
       deeming of units;

3.3    Information concerning the fees and costs charged to the investors and to the
       fund's assets; furthermore, information about the intended appropriation of
       the management fee, any performance fee and the coefficient of the total ex-
       pense ratio (TER).

## 4      Information concerning trading

4.1    The manner in which units may be purchased;

4.2    The manner in which units may be redeemed;

4.3    Where applicable in the case of collective investment schemes with different
       subfunds, information concerning the manner in which investors may con-
       vert from one subfund to another and information concerning the attendant
       costs;

4.4    The date and manner in which income is distributed where applicable;

4.5    Frequency and location/manner of publication or disclosure of the net asset
       values.

## 5      Further information

5.1    Information concerning the location where the prospectus and the annual
       and semi-annual reports may be obtained free of charge on request;

5.2    The relevant supervisory authority;

5.3    Information concerning a contact point where further information may be
       obtained, where applicable;

5.4    Date of publication of the simplified prospectus.

*Annex 3*[183]
(Art. 107*a*)

## Simplified prospectus for securities funds and other funds for traditional investments
## (hereinafter «Key investor information document»)

The key investor information document must be fair, clear and not misleading, and contain the following information:

### 1    Title and content of document

1.1    The title «Key investor information» shall appear prominently at the top of the first page.

1.2    An explanatory statement must appear directly underneath the title. It shall read:

*«This document provides you with key investor information about this fund. It is not marketing material. The information is required by law to help you understand the nature and the risks of investing in this fund. You are advised to read it so you can make an informed decision about whether to invest».*

1.3    The name of the collective investment scheme/subfund, if applicable/unit class, if applicable.

In the case of a subfund or unit class, the name of the collective investment scheme must follow the subfund or unit class name.

1.4    The name of the fund management company shall be stated, if applicable.

1.5    In addition, in cases where the fund management company forms part of a group of companies for legal, administrative or marketing purposes, the name of the group may be stated. Corporate branding may be included provided it does not hinder an investor in understanding the key elements of the investment or diminish his ability to compare investment products.

1.6    The document must include the following statement:

*«This fund is authorised and regulated by [identity of competent authority].»*

1.7    Information on publication shall consist of the following statement:

*«This key investor information is accurate as at [the date of publication].»*

---

[183]    Amended by No II para. 2 of the Ordinance of 29 June 2011, in force since 15 July 2011
(AS **2011** 3177).

## **2      Objectives and investment policy**

2.1    A description of the objectives and investment policy.

2.2    The main categories of eligible financial instruments that are the object of investment.

2.3    Reference to the possibility that the investor may redeem units of collective investment schemes on demand, qualifying that statement with an indication as to the frequency of dealing in units.

2.4    Whether the collective investment scheme has a particular target in relation to any industrial, geographic or other market sectors of specific classes of assets.

2.5    Whether the collective investment scheme allows for discretionary choices with regard to the particular investments that are to be made, and whether this approach includes or implies a reference to a benchmark and if so, which one. Where a reference to a benchmark is implied, the degree of freedom available in relation to this benchmark must be indicated, and where the collective investment scheme has an index-tracking objective, this must be stated.

2.6    Whether dividend income is distributed or reinvested.

2.7    Where specific asset management techniques are used, which may include hedging, arbitrage or leverage, an explanation in simple terms of the factors that are expected to determine the performance of the collective investment scheme.

2.8    Where the collective investment scheme invests in debt securities, an indication of whether they are issued by corporate bodies, governments or other entities, and, if applicable, any minimum rating requirements.

2.9    Where the choice of assets is guided by specific criteria, an explanation of those criteria, such as «growth», «value» or «high dividends».

2.10   Where on predefined dates the collective investment scheme pays distributions whose level is derived using an algorithm and which are linked to the performance, changes in price or other conditions of assets, indices or benchmark portfolios or to the performance of other collective investment schemes with a similar investment strategy (hereinafter «structured collective investment scheme»), an explanation in simple terms of the factors that are expected to determine the pay-off as well as the performance of the collective investment scheme must be provided. If applicable, this includes references to the detailed information in the fund regulations or prospectus. This information includes the formula of the algorithm and an illustration of how the collective investment scheme's distributions are computed.

        The explanation must be accompanied by an illustration, showing at least three scenarios of the fund's potential performance. Appropriate scenarios must be chosen to show the circumstances in which the formula may generate a low, a medium or a high return, including, where applicable, a negative return for the investor.

The scenarios shall be based on reasonable and conservative assumptions about future market conditions and price movements. In particular, they shall not artificially magnify the importance of the final performance of the collective investment scheme. However, whenever the formula exposes investors to the possibility of substantial losses, such as a capital guarantee that functions only under certain circumstances, these losses must be appropriately illustrated, even if the probability of the corresponding market conditions is low.

The scenarios must be accompanied by a statement that they are examples that are included to illustrate the formula, and do not represent a forecast of what might happen. It must be made clear that the scenarios presented may not have an equal probability of occurrence.

2.11   Where the impact of portfolio transaction costs on returns is likely to be material due to the strategy adopted by the collective investment scheme, a statement that this is the case, making it also clear that portfolio transaction costs are paid from the assets of the collective investment scheme in addition to the charges set out in section 4.

2.12   Where a minimum recommended term for holding units in the collective investment scheme is stated either in the prospectus or in any marketing documents, or where it is stated that a minimum holding period is an essential element of the investment strategy, a statement with the following wording:

*«Recommendation: this fund may not be appropriate for investors who plan to withdraw their money within [period of time].»*

2.13   The «Objectives and investment policy» section shall distinguish between the broad categories of investments as specified under paragraphs 2.2, 2.4 and 2.8 and the approach to these investments to be adopted by a fund management company or SICAV as specified under paragraphs 2.5, 2.7, 2.9 and 2.10.

2.14   Where a collective investment scheme invests a material portion of its assets in other collective investment schemes, the description of the objectives and investment policy of such collective investment scheme shall contain a brief explanation of the manner in which the other collective investment schemes must be chosen in the context of day-to-day administration.

2.15   The «Objectives and investment policy» section may contain elements other than those listed in paragraphs 2.7-2.12, including a description of the collective investment scheme's investments strategy, where these elements are necessary to adequately describe the objectives and investment policy of the collective investment scheme.

## 3       Risk and reward profile

3.1     The «Risk and reward profile» section shall contain a synthetic indicator, supplemented by:

a.    a narrative explanation of the synthetic indicator and its main limitations, including the following information:

–    a statement that historical data, such as is used in calculating the synthetic indicator, may not be a reliable indication of the future risk profile of the collective investment scheme;

–    a statement that the risk and reward category shown is not guaranteed to remain unchanged and that the categorization of the collective investment scheme may shift over time;

–    a statement that the lowest category does not mean a risk-free investment;

–    a brief explanation as to why the collective investment scheme is in a specific category;

–    details of the nature, timing and extent of any capital guarantee or protection offered by the collective investment scheme, including the potential effects of redeeming units outside of the guaranteed or protected period.

b.    a narrative explanation of risks which are materially relevant to the collective investment scheme and which are not adequately captured by the synthetic indicator, including the following categories of risks, where these are material:

–    credit risk, where a significant level of investment is made in debt securities;

–    liquidity risk, where a significant level of investment is made in financial instruments, which are by their nature sufficiently liquid, yet which may under certain circumstances have a relatively low level of liquidity, so as to have an impact on the level of liquidity risk of the collective investment scheme as a whole;

–    counterparty risk, where a collective investment scheme is backed by a guarantee from a third party, or where its investment exposure is obtained to a material degree through contracts with a counterparty;

–    operational risks and risks related to safekeeping of assets;

–    impact of financial techniques such as derivative contracts on the collective investment scheme's risk profile where such techniques are used to obtain, increase or reduce exposure to underlying assets.

3.2     Where a collective investment scheme invests a material portion of its assets in other collective investment schemes, the narrative explanations referred to in paragraph 3.1 b must take account of the risks of each of the target funds where they are likely to be materially relevant to the collective investment scheme in overall terms.

3.3     The synthetic indicator shall rank the collective investment scheme on a scale from 1 to 7 on the basis of its volatility record. The scale shall be

shown as a sequence of categories denoted by whole numbers in ascending order from 1 to 7 running from left to right, representing levels of risk and reward, from lowest to highest. It should be made clear on the scale that lower risk entails potentially lower reward and that higher risk entails potentially higher rewards.

The category into which the collective investment scheme falls must be prominently indicated.

No colours may be used for distinguishing between items on the scale.

3.4 The computation of the synthetic indicator, as well as any of its subsequent revisions, must be adequately documented. The fund management company or SICAV shall keep records of these computations for a period of not less than five years. This period shall be extended to five years after maturity for the case of structured collective investment schemes.

3.5 The identification and explanation of risks referred to in paragraph 3.1 b must be consistent with the internal process of the fund management company or SICAV. Where a fund management company manages more than one collective investment scheme, the risks shall be identified and explained in a consistent fashion.

## 4   Charges

4.1 The charges must be presented in a table structured in the following way:

| **One-off charges taken before or after you invest:** | |
|---|---|
| Issue fee | [] % |
| Redemption fee | [] % |
| This is the maximum that may be deducted from your investment. | |
| **Charges taken from the fund over a year:** | |
| Ongoing charges | [] % |
| **Charges taken from the fund under certain specific conditions:** | |
| Performance fee | [] %* |
| * a year of any returns the fund achieves above the benchmark for these fees, the [insert name of benchmark] | |

A percentage amount must be indicated for each of these charges.

In the case of a performance fee, the amount charged in the collective investment scheme's last financial year shall be included as a percentage figure.

4.2 The table referred to in paragraph 4.1 shall be completed in accordance with the following requirements:

a. issue and redemption fees shall each be the maximum percentage which might be deducted from the investor's capital commitment to the collective investment scheme;

b. a single figure must be shown for charges taken from the collective investment scheme over a year, to be known as the «ongoing charges», representing all annual charges and other payments taken from the assets of the collective investment scheme over the defined period, and based on the figures for the preceding year.

c. the table shall list and explain any charges taken from the collective investment scheme under certain specific conditions, the basis on which the charge is calculated, and when the charge applies.

4.3 The «Charges» section shall contain a narrative explanation of each of the charges specified in the table including the following information:

a. with regard to issue and redemption fees:
– it shall be made clear that the charges are always maximum figures, as in some cases the investor may pay less;
– a statement shall be included stating that the investor can find out the actual issue and redemption fees from their financial advisor or distributor;

b. with regard to «ongoing charges», there shall be a statement that the ongoing charges figure is based on the previous year's expenses, for the year ending [month/year], and that this figure may vary from year to year where this is the case.

4.4 The «Charges» section shall contain a statement about the importance of charges which makes clear that the charges an investor pays are used to pay the costs of running the collective investment scheme, including the costs of marketing and distributing the fund units, and that these charges reduce the potential growth of the investment.

4.5 Where a new collective investment scheme cannot comply with the requirements contained in paragraph 4.2 b and paragraph 4.3 b, the ongoing charges shall be estimated, based on the expected total of charges.

4.6 Paragraph 4.5 does not apply to funds which charge an all-in fee, where instead that figure shall be displayed.

4.7 Where a collective investment scheme invests a material portion of its assets in other collective investment schemes, the explanation of the charges shall take account of all costs to be borne by the collective investment scheme itself as investor in target funds. Specifically, all issue and redemption fees as well as all ongoing charges levied by the target funds must be included in the computation of the collective investment scheme's own ongoing charges.

4.8 The «Charges» section shall include, where relevant, a cross-reference to those parts of the fund regulations where more detailed information on charges can be found, including information on performance fees and how they are calculated.

## 5    Past performance

5.1    The information about the past performance of the collective investment scheme must be presented in a bar chart covering the performance of the collective investment scheme for the past 10 years. Collective investment schemes with performance of less than five complete calendar years must use a presentation covering the last five years only.

5.2    The size of the bar chart referred to in paragraph 5.1 must allow for legibility, but may under no circumstances exceed half a page in the key investor information document.

5.3    The calculation of past performance figures shall be based on the net asset value of the collective investment scheme, and shall be calculated on the basis that any distributable income of the collective investment scheme has been reinvested.

5.4    For any years for which data is not available, the year shall be shown as blank with no annotation other than the date.

5.5    A simulated performance record for the period before data was available is only permitted for a new unit class of an existing fund or subfund by taking the performance of another class, provided the two classes do not differ materially in the extent of their participation in the assets of the fund. The simulated performance record must be fair, clear and not misleading.

       In all cases where performance has been simulated, there must be prominent disclosure that the performance has been simulated.

5.6    For a collective investment scheme which does not yet have performance data for one complete calendar year, a statement must be included explaining that there is insufficient data to provide a useful indication of past performance to investors.

5.7    Where the «Objectives and investment policy» section makes reference to a benchmark, a bar showing the performance of that benchmark shall be included in the chart alongside each bar showing the collective investment scheme's past performance.

5.8    For collective investment schemes which do not have past performance data over the required five or 10 years, the benchmark pursuant to paragraph 5.7 must not be shown for years in which the collective investment scheme did not exist.

5.9    In the case of a structured collective investment scheme, the key investor information document shall not contain any information on past performance.

5.10   The bar chart layout must be supplemented by statements which appear prominently and which:
       a.    warn about its limited value as a guide to future performance;

  b. indicate briefly which charges and fees have been included or excluded from the calculation of past performance, except in the case of collective investment schemes which do not have issue and redemption fees;

  c. indicate the year in which the collective investment scheme came into existence;

  d. indicate the currency in which past performance has been calculated.

5.11 The bar chart presenting past performance must comply with the following criteria:

  – the scale of the Y-axis of the bar chart shall be linear, not logarithmic;

  – the scale must be adapted to the span of the bars shown and shall not compress the bars so as to make fluctuations in returns harder to distinguish;

  – the X-axis shall be set at the level of 0% performance;

  – a label shall be added to each bar indicating the return in percentage that was achieved;

  – past performance figures shall be rounded to one decimal place.

5.12 A key investor information document shall not contain any record of past performance for any part of the current calendar year.

5.13 Where a material change occurs to a collective investment scheme's objectives and investment policy during the period displayed in the bar chart, the collective investment scheme's past performance prior to that material change must continue to be shown.

5.14 The period prior to the material change referred to in paragraph 5.13 must be indicated on the bar chart and labelled with a clear warning that the performance was achieved under circumstances that no longer apply.

## 6 Practical information

6.1 The name of the custodian bank;

6.2 Where and how to obtain further information about the collective investment scheme, copies of its fund regulations, prospectus and latest annual and half-yearly report, stating in which language(s) those documents are available, and that they may be obtained free of charge;

6.3 Where and how to obtain other practical information, including where to find the latest prices of units;

6.4 The following statement:

  *«[Insert name of SICAV or fund management company] may be held liable solely on the basis of any statement contained in this document that is misleading, inaccurate or inconsistent with the relevant parts of the fund regulations and prospectus.»*

6.5 Where applicable:

  – that the key investor information document describes a subfund,

- that the assets and liabilities of each subfund of an umbrella fund are segregated by law and not mutually liable, as well as a statement on how this might affect the investor;
- whether or not the investor has the right to exchange his investment in units of one subfund for units in another subfund, and if so, where to obtain information about how to exercise that right;

6.6 Where applicable, information about the unit classes available.

## 7    Length and presentation

7.1 The key investor information may not exceed two pages of A4-sized paper when printed and for structured collective investment schemes may not exceed three pages of A4-sized paper when printed.

7.2 A key investor information document shall be:
- presented and laid out in a way that is easy to read, using characters of readable size;
- clearly expressed and written in language that communicates in a way that facilitates the investor's understanding of the information being communicated, in particular where:
  i.    the language used is clear, succinct and comprehensible;
  ii.   the use of jargon is avoided;
  iii.  technical terms are avoided when everyday words can be used instead;
- focused on the key information that investors need.

7.3 Where colours are used, they should not diminish the comprehensibility of the information in the event that the key investor information document is printed or photocopied in black and white.

7.4 Where the design of the corporate branding of the fund management company or the group to which it belongs is used, it may not distract the investor or obscure the text.