**BROWN RUDNICK LLP**
David J. Molton
May Orenstein
Daniel J. Saval
Marek P. Krzyzowski
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800

*Counsel for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LIMITED, et al., | Case No: 10-13164 (SMB) |
| Debtors in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | |
| Plaintiffs, | Adv. Pro. No. 10-03496 |
| -against- | |
| THEODOOR GGC AMSTERDAM, et al., | Administratively Consolidated |
| Defendants. | |
| This Opposition applies to the adversary proceedings listed in Exhibit A hereto. | |

**FOREIGN REPRESENTATIVES' MEMORANDUM OF
LAW IN OPPOSITION TO PI DEFENDANTS' SUPPLEMENTAL
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
BASED ON THE DOCTRINE OF *RES JUDICATA* AND IN FURTHER SUPPORT OF
FOREIGN REPRESENTATIVES' MOTION FOR LEAVE TO AMEND COMPLAINTS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

SUMMARY OF RELEVANT PROCEDURAL BACKGROUND .............................................2

ARGUMENT..............................................................................................................................4

I.    THE LIQUIDATORS INCORPORATE THEIR OMNIBUS BRIEF. ..............................4

II.   THE JUDGMENTS ENTERED IN THE BVI PROCEEDINGS DO NOT
PRECLUDE THE LIQUIDATORS' CLAIMS AGAINST THE PI
DEFENDANTS. ................................................................................................................4

    A.    English Law Governs the Preclusive Effect of the BVI Summary
Judgments. ............................................................................................................5

    B.    No English Doctrine Precludes The Claims Against the PI Defendants. .................5

        1.    Cause of Action Estoppel ........................................................................... 6

        2.    Issue Estoppel .............................................................................................. 7

        3.    *Henderson v. Henderson* Doctrine.............................................................. 7

CONCLUSION..........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfadda v. Fenn*,
    966 F. Supp. 1317 (S.D.N.Y. 1997).....................................................................................5

*RA Glob. Servs., Inc. v. Avicenna Overseas Corp.*,
    843 F. Supp. 2d 386 (S.D.N.Y. 2012).....................................................................................5

*Simmtech Co. Ltd. v. Citibank, N.A.*,
    No. 13-CV-6768 (KBF), 2016 WL 4184296 (S.D.N.Y. Aug. 3, 2016), *appeal
    filed* No. 16-2994, 2016 WL 4184296 (2d Cir. 2016) ................................................................5

Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators" or "Foreign Representatives"), in their capacities as the duly appointed Liquidators and Foreign Representatives of Fairfield Sentry Limited (In Liquidation) ("Sentry"), Fairfield Sigma Limited (In Liquidation) ("Sigma"), and Fairfield Lambda Limited (In Liquidation) ("Lambda," and together with Sentry and Sigma, the "Funds") in the consolidated adversary proceedings (the "Redeemer Actions"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to the PI Defendants' *Supplemental Memorandum in Support of Defendants' Motion to Dismiss Based on the Doctrine of Res Judicata* ("PI Defendants' Joinder and Supplemental MTD" or "Mot.") and in further support of the Foreign Representatives' motion for leave to amend the complaints in the Redeemer Actions (the "Motion to Amend").[1] In opposition to the PI Defendants' Joinder and Supplemental MTD and in support of the Motion to Amend, the Liquidators state as follows:

## PRELIMINARY STATEMENT

By this motion, the 13 PI Defendants that obtained summary judgment dismissing the Liquidators' claims in the BVI Court argue that the claims asserted against them in this Court are barred under the doctrine of *res judicata*. Their motion fails because—as the PI Defendants themselves concede—none of the redemptions at issue here were adjudicated in the BVI Court. Under BVI/English law, which governs the preclusive effect of the BVI summary judgments, that fact is dispositive, whether under cause of action estoppel, issue estoppel, or the *Henderson* doctrine. While the PI Defendants' arguments fail for additional reasons discussed herein, the Court need not reach them. The motion should be dismissed.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Foreign Representative's Memorandum of Law in Opposition to Defendants' Consolidated Memorandum of Law and in Further Support of Foreign Representatives' Motion for Leave to Amend Complaints*, dated Mar. 31, 2017 (Adv. Pro. 10-03496, ECF. No. 1336) (the "Liquidators' Omnibus Brief").

## SUMMARY OF RELEVANT PROCEDURAL BACKGROUND[2]

After the Liquidators were appointed, but before they discovered the Subscription Agreements containing the Forum Clause, the Liquidators commenced litigation in the BVI Court against the PI Defendants, to preserve positions with respect to statute of limitations issues. *See* Hare Decl. ¶¶ 13-20; *see also* Molton PI Decl.,[3] Exs. A, ¶¶ 6-15; B, ¶¶ 3-4; C, ¶ 13. In those BVI Proceedings,[4] the Liquidators asserted only common law restitutionary claims, seeking recovery of redemption payments from approximately 74 defendants; the omnibus portion of these actions concerned redemptions in late 2003 and early 2004. Hare Decl. ¶¶ 15, 17-20.

Beginning in or about April 2010, after the Liquidators had discovered the Forum Clause, the Liquidators filed suits against the PI Defendants in the United States. These actions concern redemptions (the "NY Redemption Claims") none of which were at issue in the BVI Proceedings—as PI Defendants concede. *See* Mot. at 5. Until July 27, 2016 these actions were effectively subject to a stay entered by this Court in the fall of 2011 following a decision of the BVI Court on the "Preliminary Issues," discussed next. *See* Stay Order [Docket No. 418].

---

[2] A detailed account of the relevant factual and procedural background is set forth in the Motion to Amend, and accompanying declarations.

[3] *Supplemental Declaration of David J. Molton in Support of Opposition to PI Defendants' Supplemental Memorandum in Support of Defendants' Motion to Dismiss Based on the Doctrine of Res Judicata and in Further Support of Foreign Representatives' Motion for Leave to Amend Complaints*, submitted herewith ("Molton PI Decl.").

[4] "BVI Proceedings" refer to proceedings at all stages of litigation in the British Virgin Islands relevant to the Liquidators' claims against the PI Defendants, including the Preliminary Issues proceedings (including the final resolution of the Preliminary Issues by the Privy Council Judgment) and all summary judgment proceedings.

2

*The Preliminary Issues and Summary Judgment*

At the urging of the PI Defendants, and over the Liquidators' objections,[5] the BVI Court adjudicated certain discrete issues relevant to the common law restitutionary claims in a procedure known as "Preliminary Issues." *See* Hare Decl. ¶¶ 23-25.[6] In doing so, the BVI Court carved out questions of fact from the Preliminary Issues based on facts not then known to the Liquidators, which effectively preserved the Funds' right to argue that the Preliminary Issues are not determinative with respect to such facts. *See* Hare Decl. ¶ 48 n.21 & Ex. L at 1061 (citing Bannister J, Order of 20 April 2011 [1/2], paragraph 22). On September 16, 2011, the BVI Court rendered its decision on the Preliminary Issues,[7] holding that the documents periodically issued by Citco did not constitute "certificates," but that the redeemers had given "good consideration" for their redemption payments, the result being that the good consideration defense would bar the Liquidators' restitutionary claims in the BVI Redeemer Actions. *See id.* ¶ 35.

On October 10, 2011, on the basis of its Preliminary Issues Judgment, the BVI Court granted summary judgment in favor of the thirteen PI Defendants. *See id*. ¶ 36.[8]

---

[5] The Liquidators opposed use of the preliminary issues procedure on the basis that there was a substantial risk that litigating the Preliminary Issues would involve enormous cost and delay (which indisputably was the case) without yielding any ruling that was dispositive of the claims, in part because factual findings might be necessary to reach dispositive rulings on those defenses (which is exactly what happened). *See* Hare Decl. ¶¶ 26, 40-42, 44.

[6] The BVI Court ordered that the following be resolved as Preliminary Issues: (a) whether various documents issued to investors constituted certificates of NAV, within the meaning of the Funds' Articles (and related issues) (the "Certification" issues); and (b) whether redeeming investors gave good consideration for the redemption payments by surrendering their shares, such that no claim could lie in restitution in respect of those payments (the "Good consideration" issue). Hare Decl. ¶ 31 (citing order of 20 April 2011, Bannister J).

[7] The 13 PI Defendants relevant to this Motion are the only defendants (of the 74 that were the subject of actions in the BVI) that participated in the Preliminary Issues proceedings.

[8] The PI Defendants' suggestion (at 1-2) that the claims against them in the BVI Proceedings were dismissed as a result of the Preliminary Issues judgment is misleading. The Preliminary Issues Judgment was issued by the *trial court* in the Preliminary Issues Proceedings and included the erroneous "good consideration" rationale that ultimately was superseded by the Privy Council Judgment. *See* Moss II ¶¶ 12-19; *see also* Liquidators' Omnibus Brief at 38-40.

3

On June 13, 2012, the EC Court of Appeal affirmed the BVI Court on both issues, albeit on somewhat different grounds.[9] On April 16, 2014, the Preliminary Issues were determined by the Privy Council, Hare Decl. ¶¶ 38, 58, which held that certain documents periodically issued by Citco constituted "certificates" of NAV under Article 11 of the Funds' Articles. *See* Moss II ¶¶ 15-17. If the NAV was certified in a manner complying with Article 11, the Funds would be under a contractual obligation to make the redemption payments that they had in fact made. *See id.*[10] The Privy Council did not decide (because the issue was not before it), whether the certificates were given "in good faith." *Id.* ¶ 19.[11] The Privy Council also did not adjudicate any contract-based or Insolvency Act claims, which were not asserted in the BVI Proceedings.

## ARGUMENT

### I.     THE LIQUIDATORS INCORPORATE THEIR OMNIBUS BRIEF.

In opposition to the PI Defendants' Joinder and Supplemental MTD, the Liquidators adopt and incorporate herein, the Liquidators' Omnibus Brief.

### II.    THE JUDGMENTS ENTERED IN THE BVI PROCEEDINGS DO NOT PRECLUDE THE LIQUIDATORS' CLAIMS AGAINST THE PI DEFENDANTS.

The PI Defendants argue that federal *res judicata* doctrine bars the claims asserted against them here, because they obtained summary judgment dismissing the Liquidators'

---

[9] The upshot of the EC Court of Appeal's decision was that the documents concerning NAV issued by Citco were not considered to be "certificates" that could be final and binding, and the "good consideration" defense was applicable and dispositive, notwithstanding the certification ruling. *See* Moss II ¶ 14.

[10] Mr. Moss has stated the actual, express holdings of the Privy Council Judgment as follows:
 (i) "to the extent that the payments made . . . by the Funds constituted payment of sums that it was legally obliged to pay, the payments cannot be recovered", [PCJ at ¶ 18]
 (ii) "whether or not the sums paid by the Funds represent sums contractually due depends on the certification provisions in the Articles", [PCJ at ¶ 24], and
 (iii) "the documents sent out by Citco constituted 'certificates' for the purposes of Article 11(1) of the Articles". [PCJ at ¶ 30].
Moss II ¶ 50.

[11] Following issuance of the judgment, the PI Defendants sought to bring the "good faith issue" within the scope of the judgment through the process of agreeing on the form of "declarations" on the preliminary issues, but the Privy Council declined to adopt any declarations – consistent with the position of the Funds. Hare Decl. ¶¶ 63-66.

4

common law claims against them in the BVI Court. Their argument fails, because BVI/English law governs the preclusive effect of the BVI summary judgments, and the claims here are not barred under English doctrines of cause of action estoppel, issue estoppel, or *Henderson v. Henderson*.

### A. English Law Governs the Preclusive Effect of the BVI Summary Judgments.

The PI Defendants base their argument solely on a doctrine that has no application here, namely the federal doctrine of *res judicata*. As demonstrated in the Liquidators' omnibus brief (at 36-38), BVI/English law (which has material, relevant differences from federal standards) governs the preclusive effect of the BVI summary judgments.[12] Because the PI Defendants present no argument under BVI law, their motion should be dismissed.

### B. No English Doctrine Precludes The Claims Against the PI Defendants.

Three English doctrines govern the preclusive effect of judgments like the BVI Court summary judgments: cause of action estoppel, issue estoppel, and *Henderson v. Henderson*. *See*

---

[12] To support their erroneous assertion that U.S. preclusion law applies, the PI Defendants (at 4 n.5) quote *Alfadda v. Fenn*, 966 F. Supp. 1317, 1329 (S.D.N.Y. 1997) (cited by *RA Glob. Servs., Inc. v. Avicenna Overseas Corp.*, 843 F. Supp. 2d 386, 389 n.2 (S.D.N.Y. 2012)), the same case cited in Defendants' Omnibus Brief. *See* Liquidators' Omnibus Brief at 38 n. 47. The PI Defendants' citation (at 4 n.5) to *RA Glob. Servs., Inc.*, 843 F. Supp. 2d at 389 n.2, is misguided, because in that case, the parties *consented* to the court's application of New York law to govern the preclusive effect of an English judgment. *See* Memorandum of law in Opposition to the Motion by Defendants Avicenna Overseas Corp. and Huseyin Gun to Dismiss the First Amended Complaint at 8 & n.8, *RA Glob. Servs., Inc.*, 843 F. Supp. 2d at 386 (explaining that plaintiffs had decided to "address this motion by applying New York claim preclusion law, as [defendants] contend applies," but acknowledging authorities suggesting that UK law may have been proper law to apply). Not only did the parties in that case consent to New York law, but they also failed to provide the court with evidence of meaningful differences between New York and English preclusion law as applied to the facts at issue. *See RA Glob. Servs., Inc.*, 843 F. Supp. 2d at 389 n.2. Notwithstanding the selection of New York law, in consideration of the rule that a foreign judgment should be given no more conclusive effect than it would be accorded by the rendering jurisdiction, the court incorporated English preclusion law into its analysis. *Id. Simmtech Co. Ltd. v. Citibank, N.A.*, No. 13-CV-6768 (KBF), 2016 WL 4184296, at *8 (S.D.N.Y. Aug. 3, 2016), *appeal filed* No. 16-2994, 2016 WL 4184296 (2d Cir. 2016), is similarly inapposite because that case, like *Alfadda*, involved only federal claims.

5

Supp. Moss III ¶¶ 6-11;[13] Liquidators' Omnibus Brief at 40-46; Moss II ¶¶ 10, 22, 39, 49(b), 50, 57. None of these doctrines bar the Liquidators' claims against the PI Defendants.

    1.    <u>Cause of Action Estoppel</u>

Cause of action estoppel—the English doctrine perhaps most relevant to the gist of the PI Defendants' argument, namely that they have already prevailed on these claims—has no application here. Most obviously, the NY Redemption Claims do not involve redemptions that were at issue in the BVI Proceedings—as the PI Defendants themselves concede. *See* PI Defendants' Joinder and Supplemental MTD at 5 ("[T]he common law claims asserted here seek recovery of additional redemptions not included in the BVI Actions . . . ."); *id.* at 9; *see also* Def. Omnibus Brief at 8. This is dispositive. Under English law, each redemption gives rise to a separate and distinct cause of action. *See* Liquidators' Omnibus Brief at 43 (citing Moss II ¶¶ 49(b), 53). Indeed, cause of action estoppel does not bar litigation of a separate claim even if it arises out of the same relationship or is based on the same type of transaction as the first. *See id.* at 42-43. Because none of the same redemptions were involved, the causes of action resolved by judgments in the BVI Proceedings are not identical to the Liquidators' common law claims here, and cause of action estoppel does not apply. *Id.* (citing Moss II ¶¶ 22, 49(a)-(b); 53); Supp. Moss III ¶ 7. Cause of action estoppel also does not bar the Liquidators' BVI Insolvency Act claims, because these too are based on redemptions not at issue in the BVI Proceedings. Supp. Moss III ¶ 7; *see also* Molton PI Decl., Ex. A, ¶ 8.

---

[13] *Further Supplemental Declaration of Gabriel Moss QC in Support of Opposition to PI Defendants' Supplemental Memorandum in Support of Defendants' Motion to Dismiss Based on the Doctrine of Res Judicata and in Further Support of Foreign Representatives' Motion for Leave to Amend Complaints* submitted herewith ("Supp. Moss III").

6

2.    Issue Estoppel

The gist of PI Defendants' argument is that they have prevailed on the causes of actions asserted against them, not that the Liquidators are estopped as to certain issues. Nevertheless, if analyzed under English issue estoppel doctrine, the motion also fails. For an issue estoppel to arise under English law, the issue must be one that was actually and necessarily determined by the court in the initial litigation. *See* Liquidators' Omnibus Brief at 40-42 (citing Moss II ¶¶ 35, 37). Here, issue estoppel does not bar the NY Redemption Claims because neither the Bad Faith Issues,[14] nor the application of the BVI Insolvency Act were litigated in the PI Proceedings. *Id.* at 40-41; Moss II ¶¶ 19, 50-51, 53; Supp. Moss III ¶ 7; *see also* Molton PI Decl., Ex. C, ¶ 15.[15]

3.    *Henderson v. Henderson* Doctrine

Henderson doctrine does not bar the Liquidators' claims against the PI Defendants because (i) under English law, the Liquidators *were not required* to sue the PI Defendants on every redemption in one suit in the BVI, and (ii) therefore there was nothing remotely "abusive" about the Liquidators' subsequently bringing claims for other redemptions and/or their reasonable forum decisions in connection therewith, which owed to the limited information available to them in the months after their appointment.

The *Henderson* doctrine permits a court, in the exercise of discretion, to dismiss a claim asserted in a second litigation that "could and should" have been raised in the first litigation on the ground that assertion of the claim is an abuse of the court's process and dismissal is required by public policy. *See* Liquidators' Omnibus Brief at 43 (citing Moss II ¶ 38). That a litigant

---

[14] The Bad Faith Issues are precisely the type of factual issues that Bannister J carved out from any decision on the Preliminary Issues.

[15] The PI Defendants' argument that the Liquidators could or should have raised certain issues or claims before the Privy Council is irrelevant to issue estoppel. *See* Liquidators' Omnibus Brief at 41-42 n.53 (citing Moss II ¶¶ 37, 51)). While an earlier opportunity to raise an issue may in some cases give rise to a *Henderson* abuse of process argument, as discussed in Section II-A-3 *infra*, *Henderson* does not apply here.

7

"could and should" have brought a claim or litigated an issue is necessary, but not sufficient. *Id.* at 44 (citing Moss II ¶ 42). To the contrary, "it is generally not abusive for a party to seek to litigate issues which he is not estopped from litigating." *Id.* (citing Moss II ¶ 39). The doctrine requires a "broad, merits-based judgment" as to whether a party is *misusing or abusing the court's process* by seeking to raise the claim that could have been raised in a prior proceeding. *Id.* (citing Moss II ¶ 42; Mortimore Decl. ¶ 54).

Here, there is no basis to find that in late 2009 and early 2010, when the BVI Proceedings were first commenced, the Liquidators (only having been appointed a short time before and working their way through the wreckage wrought by the Madoff fraud on a multitude of issues) "should" have asserted causes of action arising from *all* redemptions the PI Defendants received during the period prior to the exposure of the Madoff fraud. *See* Supp. Moss III ¶¶ 5, 9-11; *see also* Molton PI Decl. Exs. A, ¶¶ 6-15; B, ¶¶ 3-4; C, ¶ 13. As noted, each redemption payment constitutes a separate cause of action which may be asserted separately, even if the redemptions arise under the same contract and the legal basis for each cause of action is the same. *See* Supp. Moss III ¶¶ 10-11; *see also* Moss II ¶ 22 (a party is not precluded from bringing "separate proceedings in respect of each [debt due], because each debt constitutes a separate cause of action and a separate claim" regardless of whether "the legal basis for each claim/cause of action is the same (i.e. a claim for a debt/breach of contract) and the parties and the contract provision relied upon are the same")); *accord* Liquidators' Omnibus Brief at 41-43 (citing Moss II ¶¶ 49(b), 53)). Because the Liquidators' restitutionary, contract-based and BVI Insolvency Act claims all relate to different redemptions than those litigated in the BVI, the Liquidators' claims

8

constitute separate causes of action that may proceed separately. Supp. Moss III ¶¶ 5-7; *see also* Moss II ¶¶ 22, 49(b).[16]

Moreover, claims based on later redemptions were not held back for strategic reasons, much less for the type of "abusive" reasons required to succeed on a *Henderson* argument. Supp. Moss III ¶¶ 9-10; *see also* Moss II ¶¶ 39, 57(c); Molton PI Decl., Exs. A, ¶¶ 6-15; B, ¶¶ 3-4; C, ¶ 13. Instead, before the Liquidators discovered the Forum Clause in the months following their appointment, they were faced with the expiration of potentially valuable estate claims. Hare Decl. ¶¶ 13-15; *see also* Molton PI Decl., Exs. A, ¶¶ 6-9; B, ¶ 4; C, ¶ 13. To preserve positions as to those redemptions with respect to limitations issues, the Liquidators proceeded on a "rolling basis," first identifying among the vast records of the Funds those claims that would soonest expire and filing those claims as soon as possible. *See* Hare Decl. ¶ 15. Once the Liquidators discovered the Subscription Agreements and analyzed the possibility of proceeding in the United States, they began filing suit in New York against Defendants for which a

---

[16] The PI Defendants are wrong to suggest (at 6-7 n.7) that the Liquidators should and could have pursued the Bad Faith issues in 2011. As set forth in detail in the Liquidators' Omnibus Brief (at 43-46), the Liquidators did not obtain access to sufficient, specific evidence necessary to consider litigation of the Bad Faith Issues until the summer of 2014, years after the BVI Court proceedings had entered summary judgment. *Id.* at 44-45 (citing Hare Decl. ¶ 42 n.16; Moss II ¶ 57(a)). And, as noted, BVI Court expressly carved out questions of fact based on facts not then known to the Liquidators from the scope of the Preliminary Issues, which effectively preserved the Funds' right to argue that the Preliminary Issues are not determinative with respect to previously unknown facts, such as the bad faith of Citco. *See* Hare Decl. ¶ 48 n.21 & Ex. L at 1061 (citing Bannister J, Order of 20 April 2011 [1/2], paragraph 22). As already established by the Liquidators' Omnibus Brief (at 42-43 (citing Moss II ¶¶ 49, 53)), even if, *arguendo*, the Liquidators had sufficient information to litigate the Bad Faith Issues, no cause of action estoppel exists under BVI/English law with respect to the NY Redemption Claims because they relate to different redemptions and, accordingly, different causes of action than those that were resolved by the Privy Council. *See* Supp. Moss III ¶ 7. Because the NY Redemption Claims relate to different redemptions and thus different causes of action than those resolved by the Privy Council, the PI Defendants' argument (at 6-7 n.7) that "[t]he common law causes of action asserted in the proposed amended complaints are identical to the common law causes of action asserted in the BVI Actions," is nonsensical. Similarly misguided is the PI Defendants' suggestion (at 6-7 n.7) that the allegations of Citco's bad faith are "irrelevant." As discussed in the Liquidators' Omnibus Brief (at 46-51), Citco's alleged bad faith is relevant to the question of whether the Defendants, including the PI Defendants, can establish the contractual requirements necessary to bind the Funds to the valuations set out in the certificates. *See also, e.g.*, Moss II ¶¶ 73, 91(d) (quoting *Weavering*), 96, 113. Further, with respect to the PI Defendants that are Citco Customers or are themselves bad faith recipients in their own right, they are precluded from raising the certification defense and are liable in restitution and/or by contract to return the overpaid redemptions received by them. *See* Liquidators' Omnibus Brief at 52-55; Moss II ¶¶ 116-23.

9

Subscription Agreement had been located or for which U.S. presence was known. *See id.* ¶¶ 16, 19.[17]

There is nothing abusive about the assertion of the NY Redemption Claims, concerning different redemption payments, in another forum (such as this one) which has jurisdiction over the parties and the subject matter. *See* Supp. Moss III ¶¶ 9, 11; *see also* Molton PI Decl., Exs. A, ¶¶ 6-15; B ¶ 4; C ¶¶ 13-18. Accordingly, *Henderson* does not bar the Liquidators' claims. *See* Supp. Moss III ¶ 11 ("Even if the Liquidators had brought claims for some redemption payments in the BVI and for other redemption payments in the US without any particular reason for doing so, that would not be an abuse: they are claims for separate debts that the Liquidators can pursue in separate actions. But in fact . . . there was a good reason . . . ."); Moss II ¶ 40 ("It will be a rare case where the litigation of an issue which has not previously been decided between the same parties or their privies will amount to an abuse of process, see Lord Hobhouse in In re Norris."); *id.* ¶ 57(c) ("I would . . . be surprised if the BVI court were to regard it as abusive for the Funds to raise arguments in relation to one redemption that were not raised in proceedings concerned with a separate redemption. If a litigant is owed two separate debts, the fact that he might fail in proceedings claiming the first debt because he omits to run good arguments does not mean that it is abusive for him to run different or better arguments when separately claiming the second debt.") (citing *Arnold v. National Westminster Bank* [1991] 2 AC 93).

## CONCLUSION

For the foregoing reasons, the Liquidators respectfully request that the PI Defendants' Joinder and Supplemental MTD be denied and the Liquidators' Motion to Amend be granted.

---

[17] The Liquidators filed only 27 additional claims in the BVI, and did so only against Defendants for which they could not locate a long form subscription agreement or identify a U.S. presence. Hare Decl. ¶ 19 & n.8.

10

Dated: New York, New York
April 6, 2017

                        BROWN RUDNICK LLP

                        By: */s/ David J. Molton*
                             David J. Molton
                             May Orenstein
                             Daniel J. Saval
                             Marek P. Krzyzowski

                        7 Times Square
                        New York, New York 10036
                        Telephone: 212.209.4800
                        Facsimile: 212.209.4801
                        dmolton@brownrudnick.com
                        dsaval@brownrudnick.com
                        mkrzyzowski@brownrudnick.com

                        *Counsel for the Foreign Representatives*

# EXHIBIT A

| Name | Adv. Pro. No | Defendant(s) Name |
|---|---|---|
| Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) S.A., et al. | Bankr. 10-3595 | SG Private Banking (Suisse) SA |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. EFG Bank, et al. | Bankr. 10-3625 | EFG Bank a/k/a EFG Bank AG and/or EFG Bank SA |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Mkts. Co., et al. | Bankr. 10-3634 | EFG Bank f/k/a EFG Private Bank S.A. |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al. | Bankr. 10-3635 | Bank Julius Baer & Co. Ltd. <br> Banque Pictet & Cie SA <br> EFG Bank f/k/a EFG Bank S.A. Switzerland <br> Lloyds TSB Bank Geneva <br> Lombard Odier Darier Hentsch & Cie <br> UBS AG (sued as UBS AG Zurich and UBS AG New York) |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al. | Bankr. 10-3636 | Bank Julius Baer & Co. Ltd. <br> Banque Pictet & Cie SA <br> EFG Bank f/k/a EFG Bank S.A. Switzerland <br> Lloyds TSB Bank Geneva <br> Lombard Odier Darier Hentsch & Cie <br> UBS AG (sued as UBS AG Zurich and UBS AG New York) |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank Trust Co. Am., et al. | Bankr. 10-3744 | Deutsche Bank Trust Company America |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank (Suisse) S.A. Geneve, et al. | Bankr. 10-3745 | Deutsche Bank (Suisse) SA Geneve |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. SNS Global Custody B.V., et al. | Bankr. 10-3757 | SNS Global Custody B.V. a/k/a SNS Bank N.V. |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. Pictet & Cie, et al. | Bankr. 10-3764 | Banque Pictet & Cie SA |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis (Isle of Man) Nominees Ltd., et al. | Bankr. 10-3776 | Fortis (Isle of Man) Nominees Limited a/k/a ABN AMRO Fund Services (Isle of Man) Nominees Limited |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS AG N.Y., et al. | Bankr. 10-3780 | UBS AG (sued as UBS AG New York) |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) S.A., et al. | Bankr. 10-3786 | SG Private Banking (Suisse) SA |

| Name | Adv. Pro. No | Defendant(s) Name |
|---|---|---|
| Fairfield Sentry Ltd. (In Liquidation), et al. v. Lombard Odier Darier Hentsch & Cie, et al. | Bankr. 10-3795 | Lombard Odier Darier Hentsch & Cie |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Julius Baer & Co. Ltd., Zurich, et al. | Bankr. 11-1243 | Bank Julius Baer & Co. Ltd. |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Lux. SA, et al. | Bankr. 11-1250 | UBS Luxembourg SA |
| Fairfield Sentry Ltd. (In Liquidation), et al. v. Mirabaud & Cie, et al. | Bankr. 11-1257 | Mirabaud & Cie a/k/a Mirabaud & Cie Banquiers Prives |