**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 Case |
| Fairfield Sentry Limited, et al., | Case No. 10-13164 (SMB) |
| Debtors in Foreign Proceedings. | Jointly Administered |

| | |
|---|---|
| Fairfield Sentry Limited, et al., | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 10-3496 (SMB) |
| Theodoor GGC Amsterdam, et al., | Administratively Consolidated |
| Defendants. | |

This brief is submitted in the following Adversary Proceedings:

10-3519, 10-3635, 10-3636

**LIECHTENSTEIN DEFENDANTS'**
**INDIVIDUAL SUPPLEMENTAL REPLY MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND AND**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .......................................................................................................................2

I.     The Burden of Alleging Proper Service is on the Liquidators, and They Have Not
       Pleaded that Citco Was the Liechtenstein Defendants' Agent ...........................................2

II.    The Liechtenstein Defendants Did Not Appoint – And Could Not Have
       Appointed – Citco to Consent to Service by Mail ...............................................................4

       A.     Under Liechtenstein law, an agent who signs in his own name and not the
              principal's does not bind the principal....................................................................4

       B.     The Liechtenstein Defendants could not have given Citco actual authority
              to agree to an illegal means of service ...................................................................5

       C.     The Liquidators do not allege that Citco had apparent authority..........................7

III.   Performance of an Illegal Contract Is Unenforceable Under New York Law and
       This Court Therefore Should Not Give Effect to Service by Mail ......................................8

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*4C Foods Corp. v. Packaging Automation Co.*,
   2014 WL 6602535 (S.D.N.Y. Nov. 18, 2014)................................................7, 8 n.10

*Anabas Export Ltd. v. Alper Indus. Inc.*,
   603 F. Supp. 1275 (S.D.N.Y. 1985)....................................................................9

*Bankers Trust Co. v. Litton Sys., Inc.*,
   599 F.2d 488 (2d Cir. 1979).............................................................................10

*Carruthers v. Flaum*,
   365 F. Supp. 2d 448 (S.D.N.Y. 2005)...............................................................6

*Dornberger v. Metropolitan Life Ins. Co.*,
   961 F. Supp. 506 (S.D.N.Y. 1997) ...................................................................9

*Hartman v. Harris*,
   810 F. Supp. 82 (S.D.N.Y. 1992) .....................................................................6

*Hesslein v. Matzner*,
   19 N.Y.S.2d 462 (City Ct. 1940) ..................................................................8, 9

*Jiehua Huang v. AirMedia Grp. Inc.*,
   2017 WL 1157134 (S.D.N.Y. Mar. 27, 2017) ..................................................3

*Kahn v. Kahn*,
   360 F. App'x 202 (2d Cir. 2010) ......................................................................2

*Korea Life Ins. Co. v. Morgan Guar. Trust Co. of New York*,
   269 F. Supp. 2d 424 (S.D.N.Y. 2003)..........................................................9, 10

*Kwon v. Yun*,
   2006 WL 416375 (S.D.N.Y. Feb. 21, 2006).....................................................2

*Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading
Co.*,
   179 F. Supp. 2d 118 (S.D.N.Y. 2000)...........................................................6, 7

*Precedo Capital Grp. Inc. v. Twitter Inc.*,
   33 F. Supp. 3d 245, 253 (S.D.N.Y. 2014) ........................................................4

*Rutkin v. Reinfeld*,
   229 F.2d 248 (2d Cir. 1956)..............................................................................9

**Page(s)**

*Zalewski v. T.P. Builders, Inc.*,
   2011 WL 3328549 (N.D.N.Y. Aug. 2, 2011) ...................................................................8 n.10

**Other Authorities**

Fed. R. Civ. P. 12(b) ...........................................................................................................1 n.3

Fed. R. Civ. P. 44.1 .............................................................................................................4 n.7

Restatement (Second) of Conflicts of Law § 202 (1971) .................................................8

Restatement (Second) of Agency § 19 (1958) ...................................................................6

## PRELIMINARY STATEMENT

The Liechtenstein Defendants[1] submit this reply in further opposition to the Liquidators' motion to amend and in further support of their motion to dismiss the complaints in adversary proceedings 10-3635, 10-3636, and 10-3519 (the "Complaints" or the "Fourth Proposed Amended Complaints").[2]

The Liquidators' boilerplate opposition does nothing to cure the defective (and undisputedly illegal) service by mail on the Liechtenstein Defendants. For the reasons set forth in Section II.A.2 of the Consolidated Motion to Dismiss Reply Brief,[3] the subscription agreements' forum selection clause does not apply to these adversary proceedings and cannot be enforced against non-signatories, which alone should result in dismissal for failure of service and lack of jurisdiction.

In addition and independently, these actions should be dismissed for improper service on the Liechtenstein Defendants for the following reasons:

1. The Liquidators bear the burden of alleging and proving service, but fail to allege in the operative pleadings that Citco was appointed as the Liechtenstein Defendants' agent, and therefore that Citco bound the Liechtenstein Defendants to the service clause in the subscription agreements.

---

[1] The Liechtenstein Defendants are LGT Bank in Liechtenstein AG (now known as LGT Bank AG), Liechtensteinische Landesbank Aktiengesellschaft, Verwaltungs-und Privat-Bank Aktiengesellschaft (now known as VP Bank AG), Centrum Bank Aktiengesellschaft, which is now owned by VPB, and Neue Bank AG.

In the most recent proposed amended complaint against Neue Bank, the Liquidators allege that Neue Bank entered into the subscription agreements with Sentry directly, and not through Citco as an agent. *See* Adv. Pro. No. 10-3519 (Dkt. No. 20, Ex. A), at ¶ 21. Accordingly, for purposes of this reply brief, Neue Bank does not join in the Liechtenstein Defendants' arguments concerning whether Citco served as an agent or was capable of doing so. Neue Bank joins all remaining arguments.

[2] *See* Notice of Filing of Proposed Amended Complaint, Adv. Pro. No. 10-3635, (Bankr. S.D.N.Y. Sept. 20, 2016) (Dkt. No. 139); Adv. Pro. No. 10-3636 (Bankr. S.D.N.Y. Sept. 21, 2016) (Dkt. No. 152); Adv. Pro. No. 10-3519 (Bankr. S.D.N.Y. Sept. 15, 2016) (Dkt. No. 20).

[3] Each Liechtenstein Defendant joins in the Consolidated Motion to Dismiss Reply Brief (Dkt. No. 1457). Joinder in that motion does not waive the Liechtenstein Defendants' jurisdictional objections. Fed. R. Civ. P. 12(b). Capitalized terms not defined herein have the same meaning as in the Consolidated Motion to Dismiss Reply Brief.

2. In any event, the Liechtenstein Defendants could not have appointed, and therefore did not confer actual authority on, Citco to agree to the service clause, inasmuch as that provision calls for service by mail, which is prohibited by Liechtenstein law.[4]

3. The Liquidators do not plead facts showing that Citco had apparent authority to bind the Liechtenstein Defendants to the service clause because the Liquidators do not allege any interaction between the Liechtenstein Defendants and the Funds.

4. Regardless of whether Citco had authority to agree to service by mail, Citco's consent (or Neue Bank's alleged consent) to such service cannot be given effect in this Court at the request of the Liquidators.  Under New York law, the Court cannot give effect to a contract, the performance of which was illegal in a foreign jurisdiction, at the request of a party that is guilty of performing the illegal act.

Accordingly, the Liquidators' motion for leave to amend should be denied and the

Complaints should be dismissed with prejudice.[5]

## ARGUMENT

## I.    The Burden of Alleging Proper Service is on the Liquidators, and They Have Not Pleaded that Citco Was the Liechtenstein Defendants' Agent

The Liquidators, as the plaintiffs, have the burden of pleading the adequacy of service of

process.  *See Kahn v. Kahn*, 360 F. App'x 202, 203 (2d Cir. 2010) ("On a Rule 12(b)(5) motion

to dismiss, the plaintiff bears the burden of establishing that service was sufficient."); *Kwon v.

Yun*, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006) ("The burden on a motion to dismiss for

insufficient service of process rests with the plaintiff, who must, through specific factual

allegations and any supporting materials, make a prima facie showing that service was proper.").

The Liquidators have not met that burden.  The Liquidators' theory of service is that the

---

[4]    *See* Declaration of Dr. Hilmar Hoch in Support of the Liechtenstein Defendants' Motion to Dismiss, dated January 27, 2017 (Dkt. No. 1161) ("Hoch Decl.") ¶ 13(a); Note Verbale of the Office of Foreign Affairs of the Principality of Liechtenstein to the Embassy of the United States of America, dated January 27, 2017, as quoted in the Letter of the Office to Dr. Hoch of the same date ("Note Verbale," attached to the Hoch Decl. as Exhibit B) ¶ 11.

[5]    For the reasons set forth in Section IV.D of the Consolidated Motion to Dismiss Reply Brief, the Liquidators should not be permitted to re-serve the Liechtenstein Defendants should the Court determine that the Liquidators' service upon the Liechtenstein Defendants was improper.

Liechtenstein Defendants consented to service by mail in the subscription agreements, which were executed not by the Liechtenstein Defendants themselves (other than Neue Bank), but by Citco. In the Complaints, the Liquidators rely on the bare, conclusory allegation that when Citco signed the subscription agreements, it was acting as agent for the Liechtenstein Defendants. But the Liquidators have not provided the subscription agreements purportedly signed on behalf of the Liechtenstein Defendants or pleaded any specific, non-conclusory facts to show the existence of an agency relationship. Thus, the Liquidators have not met their burden of pleading that Citco was an agent capable of consenting to service by mail on behalf of the Liechtenstein Defendants, and the Complaints should be dismissed on this basis. *See Jiehua Huang v. AirMedia Grp. Inc.*, 2017 WL 1157134, at *4 (S.D.N.Y. Mar. 27, 2017) ("Conclusory statements that a defendant was properly served are insufficient" to withstand a motion to dismiss).

Perhaps recognizing that the service allegations in the Fourth Proposed Amended Complaints fail, the Liquidators, via a footnote buried in their recently-filed opposition papers, sought leave to file yet another proposed amended complaint – without withdrawing their motion to file the Fourth Proposed Amended Complaint – containing additional allegations about the purported agency relationship with Citco.[6] These belated allegations, which constitute at least the <u>sixth</u> attempt by the Liquidators to submit adequate pleadings, unfairly present the Liechtenstein Defendants and the Court with a moving target. The allegations in the March 2017 Briefing are not the subject of this pending motion, and the Liechtenstein Defendants will therefore not respond to them in detail at this time. But even if these belated allegations of agency were considered, they would not cure the inadequacies of the Liquidators' service

---

[6]    *See* Opposition, Adv. Pro. No. 10-3496 (Dkt. No. 1336); Revised Proposed Fourth Amended Complaints, Adv. Pro. No. 10-3635; Adv. Pro. No. 10-3636, Exhibits E and F to Molton II, Adv. Pro. No. 10-3496 (Dkt. No. 1337) (the "March 2017 Briefing").

allegations, as discussed below.

## II.    The Liechtenstein Defendants Did Not Appoint – And Could Not Have Appointed – Citco to Consent to Service by Mail

The Liechtenstein Defendants could only be bound by the subscription agreements' service provisions (which were signed only by Citco) if Citco had actual or apparent authority to bind them as their agent.  *See, e.g.*, *Precedo Capital Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 253 (S.D.N.Y. 2014).  But the Liquidators do not sufficiently allege either theory of agency.

### A.    Under Liechtenstein law, an agent who signs in his own name and not the principal's does not bind the principal

Citco could not have bound the Liechtenstein Defendants to the subscription agreements because it did not sign the agreements in the names of the Liechtenstein Defendants, but rather in Citco's own name.  Under Liechtenstein law,[7] an agent has "direct agency," which gives it the authority to bind its principal, only if the agency representation is disclosed to the counterparty and if the agent signs in the name of the principal.  *See* Supplemental Declaration of Dr. Hilmar Hoch in Support of the Liechtenstein Defendants' Motion to Dismiss, dated June 8, 2017 ("Supp. Hoch Decl.") ¶¶ 5, 7.  If an agreement with a third party is not signed in the principal's name, then there is only "indirect agency," through which the agent cannot create a direct obligation between the principal and the counterparty and the counterparty "has recourse only against the agent."  *Id.* ¶¶ 4, 6.  Moreover, where the existence of an agency relationship is ambiguous, "it must be assumed that the agent is acting in its own name."  *Id.* ¶ 5.

---

[7]    Liechtenstein law should govern the agency question because Liechtenstein has the greatest interest in the outcome of this issue.  Liechtenstein considers service of process to be a sovereign act, and considers mail service by a private party to be a crime and a violation of its sovereignty.  *See* Hoch Decl. ¶ 32.  Whether Citco had authority to consent to service by mail on the Liechtenstein Defendants' behalf will affect whether this Court will recognize the adequacy of the Liquidators' attempted service – and therefore whether the Court will sanction violations of Liechtenstein law and sovereignty.  *See infra* at 9.  No other jurisdiction has an interest as great in this issue.  But, in any event, the Liquidators have not identified any other law that should apply.  *See* Fed. R. Civ. P. 44.1.

The Liquidators have not alleged that Citco signed in the names of the Liechtenstein

Defendants nor have they pleaded that Citco indicated to the Funds that it was acting as agent for

the Liechtenstein Defendants when executing the subscription agreements.  Indeed, the pleadings

are to the contrary.  According to the Complaints, the accounts at issue were "held in the name of

CGC NA (the 'Citco Record Subscriber')," and not in the name of any of the Liechtenstein

Defendants.[8]  Fourth Prop. Amend. Compl. ¶ 9.  Furthermore, the subscription agreement that

the Liquidators describe as a model is not with Citco (or any of the Liechtenstein Defendants)

and itself does not state that Citco was acting as an agent, but rather only that some provisions

would apply <u>if</u> Citco were acting as an agent.[9]  This document thus cannot show whether Citco

was acting as the Liechtenstein Defendants' agent.  Accordingly, Citco did not (and could not)

have had the authority to bind the Liechtenstein Defendants to the service clause in the

subscription agreements.  *See* Supp. Hoch Decl. ¶¶ 7, 9-10.

**B.    The Liechtenstein Defendants could not have given Citco actual authority to agree to an illegal means of service**

In any event, the Liechtenstein Defendants could not have made Citco their agent for

purposes of executing the illegal contract.  The Liquidators have not submitted any evidence of

Liechtenstein law and do not dispute the expert declaration of Dr. Hoch and the Note Verbale

from the Office of Foreign Affairs of the Principality of Liechtenstein, which show

unequivocally that under Liechtenstein law, service by mail is unlawful, even criminal, and a

serious incursion on the nation's sovereignty.  *See* Opening Brief at 3-7; Hoch Decl. ¶¶ 13(a),

---

[8]     This is in contrast to the subscription agreement for HSBC that the Liquidators' counsel attached to his affidavit, which identifies the subscriber as "HSBC Private Bank (Suisse) SA."  *See* Subscription Agreement of HSBC Private Bank (Suisse) SA, Exhibit A to Molton II (Dkt. No. 1337) ("HSBC Subscription Agreement").  In the case of the Liechtenstein Defendants, the Liquidators have pleaded that the subscriber was Citco and not the Liechtenstein Defendants.  *See* Fourth Prop. Amend. Compl. ¶ 9.

[9]     *See, e.g.*, HSBC Subscription Agreement ¶ 11 ("[I]f the Subscriber is acting as agent, representative or nominee. . ."); ¶ 27 ("If subscriber is subscribing as trustee, agent, representative, or nominee. . .").

(g); Note Verbale ¶ 11.  It is thus undisputed that the clause in the subscription agreements

purporting to consent to mail service is an illegal agreement.  Consequently, Citco <u>could not</u>

have had actual authority to bind the Liechtenstein Defendants to the service provision.

As Dr. Hoch explains, under Liechtenstein law, a principal cannot legally "confer powers

onto the agent that the principal itself does not have."  Supp. Hoch Decl. ¶ 12.  If the principal

cannot do something, an agent may not agree to do it on the principal's behalf, and a principal

would not be bound by any such agreement made by the agent.  *Id.* ¶¶ 12, 14.  When a principal

attempts to appoint an agent to commit an illegal act, that appointment is "void" and is not given

any effect under Liechtenstein law.  *Id.* ¶ 12.

While the Liechtenstein Defendants submit that Liechtenstein law should control these

agency issues, New York law would dictate the same conclusion.  Under New York law, an

agent does not have authority to bind its principal to an illegal act.  *See Lehman Bros. Commer.*

*Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 148 (S.D.N.Y.

2000) ("[A]s a matter of law, a principal cannot confer actual authority upon an agent to act

illegally.").  Likewise, "[i]t is well settled under New York law that a contract to perform illegal

acts is void and unenforceable."  *Hartman v. Harris*, 810 F. Supp. 82, 84 (S.D.N.Y. 1992) (citing

*Riggs v. Palmer*, 115 N.Y. 506, 511-12 (1889)); *see also Carruthers v. Flaum*, 365 F. Supp. 2d

448, 462 (S.D.N.Y. 2005) ("If the contract upon which recovery is sought is premised on an

illegal purpose, than the contract is void.") (citations omitted).  Thus, under New York law, a

principal cannot authorize an agent to do something that the principal itself is prohibited from

doing, and Citco could not have had actual authority to bind the Liechtenstein Defendants to an

illegal agreement.  *See* Restatement (Second) of Agency § 19 (1958) ("The appointment of an

agent to do an act is illegal if an agreement to do such an act or the doing of the act itself would be criminal, tortious, or otherwise opposed to public policy.").

Consequently, even if there were a non-conclusory allegation that the Liechtenstein Defendants had appointed Citco to agree to mail service, that appointment would be unenforceable under both Liechtenstein and New York law. Thus, Citco had no actual authority to agree to service by mail.

### C.    The Liquidators do not allege that Citco had apparent authority

The Liquidators also fail to allege that Citco had apparent authority to agree to mail service on behalf of the Liechtenstein Defendants. Liechtenstein and New York law are in accord that apparent authority requires the <u>principal</u> to indicate <u>to the contractual counterparty</u> something that would lead the contractual counterparty to reasonably believe that the agent was authorized to sign the contract. *See 4C Foods Corp. v. Packaging Automation Co.*, 2014 WL 6602535, at *6 (S.D.N.Y. Nov. 18, 2014) ("As a matter of law, something has to be communicated <u>by the putative principal</u> . . . <u>to the [counterparty]</u> for apparent authority to exist.") (emphasis added); Supp. Hoch Decl. ¶ 5 ("[T]he agent's authority can be inferred where the principal's behavior or other circumstances attributable to the latter provide a sound basis for a third party to believe in good faith that the agent is empowered to act in the principal's name (apparent authority)."). Apparent authority thus exists only where "(1) the principal [ ], by words or conduct, create[s] an appearance of authority in the agent; and (2) the third party [ ] reasonably rel[ies] on that appearance of authority." *Lehman Bros.*, 179 F. Supp. 2d at 148 (citing *FDIC v. Providence College*, 115 F.3d 136, 140 (2d Cir. 1997)).

Here, the Liquidators do not allege that the Liechtenstein Defendants had <u>any</u> contact with the Funds or did <u>anything</u> to give the Funds the impression that Citco had the authority to bind them to an illegal contract. Indeed, in both the Fourth Proposed Amended Complaints and

the March 2017 Briefing, the Liquidators do not allege <u>any</u> interaction between the Funds and

the Liechtenstein Defendants whatsoever, let alone interactions that could have led the Funds

reasonably to believe that Citco had apparent authority, as agent, to consent to an illegal method

of service.[10]

### III.    Performance of an Illegal Contract Is Unenforceable Under New York Law and This Court Therefore Should Not Give Effect to Service by Mail

This Court should not honor the Liquidators' request to enforce the illegal service clause.

The Liquidators do not dispute the illegality of the service clause under Liechtenstein law, but

simply recite that New York law determines what the effect of this illegality should be in these

proceedings.  The Liquidators, however, do not offer any support for the position that New York

law would <u>ignore</u> the illegality of the service clause in Liechtenstein and require this Court to

sanction an illegal act in a foreign country.  Nor is there any.

When performance of a contract "is illegal in the place of performance, the contract will

usually be denied enforcement."  Restatement (Second) of Conflicts of Law § 202 (1971); *see*

*also Hesslein v. Matzner*, 19 N.Y.S.2d 462, 463 (City Ct. 1940) ("[W]here the contract is to be

performed in a foreign state or country, the parties are deemed to have intended that performance

should be rendered in accordance with the law of the country where the contract is to be

performed.").  Under New York law, therefore, a court should not enforce a contract that is

---

[10]    In the March 2017 Briefing, the Liquidators assert that unnamed "Defendants" entered into Brokerage and Custody Agreements with some members of Citco Group Limited, through which the Citco entity signing the subscription agreements purportedly became the Liechtenstein Defendants' agent.  *See* March 2017 Briefing ¶¶ 9, 107.  At most, these allegation involve representations made by the Liechtenstein Defendants to a Citco entity – not to the Funds.  They thus cannot support the conclusion that Citco had apparent authority.  That is particularly so because the allegations are made "upon information and belief."  *See 4C Foods Corp.*, 2014 WL 6602535, at *7 ("[S]ince apparent authority cannot exist without some communication running directly from the putative principals to [the counterparty], the very fact that these allegations are made on 'information and belief' gives the lie to any plausible inference of apparent authority.").  Moreover, these allegations are conclusory and generic and are not directed at any particular one of the 146 defendants in these adversary proceedings or any particular Citco entity.  *See Zalewski v. T.P. Builders, Inc.*, 2011 WL 3328549, at *5 (N.D.N.Y. Aug. 2, 2011) ("The court will not accept conclusory allegations . . . or vague group pleading to serve as a basis for liability.").

illegal in the place of performance – even where performance might have been legal if carried out in New York. "[I]f a contract or sale is made with a view of violating the laws of another country though not otherwise obnoxious to the law either of the forum or of the place where the contract is made, it will not be enforced. The courts will treat bargains as against public policy which have for their object the violation of the law of a sister state." *Hesslein*, 19 N.Y.S.2d at 463 (plaintiff could not sue guarantor under contract for sale of Czech currency that was illegal under Czech law); *accord Rutkin v. Reinfeld*, 229 F.2d 248, 255 (2d Cir. 1956) (same principle).

Public policy and principles of comity support that practice here, where the government of Liechtenstein views service other than as permitted under Liechtenstein law as a violation of Liechtenstein's national sovereignty. *See* Hoch Decl. ¶¶ 14-17. Service is not a purely private matter in Liechtenstein, as demonstrated by the Note Verbale, sent by the Office of Foreign Affairs of the Principality of Liechtenstein to the Embassy of the United States of America. *See* Note Verbale ¶¶ 1-2; *see also* Opening Brief at 6-7.

Courts have similarly held that a contract will be voided for illegality when either (1) the parties are not *in pari delicto*, or (2) the contract is still executory. *See Korea Life Ins. Co. v. Morgan Guar. Trust Co. of New York*, 269 F. Supp. 2d 424, 441 (S.D.N.Y. 2003). Each of those prongs provides an independent basis for this Court to decline to enforce the Liquidators' attempted mail service in contravention of Liechtenstein law.

As to the first prong, courts look to the relative culpability of the parties and refuse to enforce an illegal contract when enforcement is requested by the guiltier one. That is, "parties to an illegal agreement generally are not permitted to come to court to seek its enforcement." *Dornberger v. Metropolitan Life Ins. Co.*, 961 F. Supp. 506, 533 (S.D.N.Y. 1997). "[A] party to an illegal contract cannot ask a court of law to help him carry out his illegal object." *Anabas*

-9-

*Export Ltd. v. Alper Indus. Inc.*, 603 F. Supp. 1275, 1276 (S.D.N.Y. 1985) (quoting *Stone v. Freeman*, 298 N.Y. 268 (1948)).  Put another way, "when a plaintiff sues to recover on an illegal bargain, courts deny relief because the plaintiff is a wrongdoer, not because they favor the defendant.  Courts will not aid a person 'who founds his cause of action upon his own immoral or illegal act.'"  *Bankers Trust Co. v. Litton Sys., Inc.*, 599 F.2d 488, 492 (2d Cir. 1979) (quoting Restatement of Contracts § 598 cmt. c (1932)).

Here, the Liquidators are the parties guilty of performing under an illegal agreement, and they have based their pleading on their own unlawful act – carrying out service by illegal means in Liechtenstein.  Moreover, the Liquidators failed to correct this defect, despite years of warning from the Liechtenstein Defendants that service was improper.  *See* Opening Brief at 2 n.5.  The Court should not honor the Liquidators' request to validate their contempt for foreign law.

As to the second prong, a contract can be voided for illegality where it remains executory – *i.e.*, where performance "is incomplete" – such that "there is still a *locus poenitentiae*," an opportunity to withdraw without committing a crime.  *Korea Life Ins. Co.*, 269 F. Supp. 2d at 441 (citing *Congress & Empire Spring Co. v. Knowlton*, 103 U.S. 49, 60 (1880)).  The subscription agreements are no longer executory, but the "executory" prong of the analysis nonetheless is instructive and favors dismissal.  There is still a *locus poenitentiae* here because a ruling that service on the Liechtenstein Defendants was ineffective will void the illegal act and leave the parties in the pre-crime status quo.

## CONCLUSION

The Court should deny the Liquidators' motion for leave to amend and dismiss the Complaints with prejudice.

Dated:  New York, New York
      June 9, 2017

  /s/ Jascha D. Preuss
Jascha D. Preuss
REISS+PREUSS LLP
200 West 41st Street
New York, NY  10036
(646) 731-2770
jpreuss@reisspreuss.com

*Counsel for Liechtensteinische Landesbank AG*

  /s/ David M. Morris
David M. Morris
FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON LLP
One New York Plaza
New York, NY  10004
(212) 859-8000
david.morris@friedfrank.com

*Counsel for Verwaltungs-und Privat-Bank*
*Aktiengesellschaft (now known as VP Bank*
*AG) and Centrum Bank Aktiengesellschaft*

  /s/ Alexander B. Lees
Stacey J. Rappaport
Alexander B. Lees
MILBANK, TWEED, HADLEY
 & McCLOY LLP
28 Liberty Street
New York, NY  10005
(212) 530-5000
srappaport@milbank.com
alees@milbank.com

*Counsel for LGT Bank AG*

  /s/ William M. Brodsky
William M. Brodsky
Amit Shertzer
FOX HORAN & CAMERINI LLP
825 Third Avenue
New York, NY  10022
(212) 480-4800
william.brodsky@foxlex.com
ashertzer@foxlex.com

*Counsel for Neue Bank AG*

13667972