UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: )<br>**Fairfield Sentry Limited, et al.,** )<br>    Debtors in Foreign Proceedings. ) | **Chapter 15 Case**<br><br>Case No. 10-13164 (BRL) |
| **Fairfield Sentry Limited, et al.,** )<br>(In Liquidation), acting by and through )<br>The Foreign Representatives thereof, )<br>                Plaintiffs, )<br>)<br>      - against - )<br>)<br>**Theodoor CGC Amsterdam, et al.,** )<br>                Defendants. ) | **Jointly Administered**<br><br>Adv. Pro. No. 10-03496 (BRL)<br><br>Administratively Consolidated |
| This declaration is submitted in the following )<br>Adversary Proceedings: )<br>)<br>10-3519 )<br>10-3635 )<br>10-3636 )<br>) | |

**SUPPLEMENTAL DECLARATION OF DR. HILMAR HOCH IN OPPOSITION TO
THE FOREIGN REPRESENTATIVES' MOTION FOR LEAVE TO AMEND AND
IN SUPPORT OF THE LIECHTENSTEIN BANKS' MOTION TO DISMISS**

Hilmar Hoch, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury as follows:

**A.   Introduction**

1.   I make this Supplemental Declaration on behalf of the Liechtenstein Banks (as defined in my prior Declaration In Opposition to the Foreign Representatives' Motion for Leave to Amend and in Support of the Liechtenstein Bank's Motion to Dismiss, dated

January 27, 2017 ("January 27 Declaration").[1] For my qualifications I refer to paragraphs 1 through 12 of my January 27 Declaration. In this Supplemental Declaration I explain the law of Liechtenstein and apply that law to facts alleged by the Liquidators. I make no statement and give no opinion as to any other law.

2.   I have been asked by the Liechtenstein Defendants to supplement my conclusions in the January 27 Declaration in light of arguments raised by the Liquidators that certain Citco entities signed subscription agreements ("Subscription Agreements") on behalf of certain Liechtenstein Banks, namely LGT Bank AG, LLB, VPB Bank AG and Centrum Bank Aktiengesellschaft, the defendants in the CITCO Actions[2] (the "Banks"),[3] as the Banks' agent and that the Banks thus are bound by clauses in the Subscription Agreements providing for a mandatory New York forum and consent to service by mail.[4]

3.   In addition to documents previously reviewed, I have reviewed a sample "long form" subscription agreement that was proffered by the Liquidators, *inter alia*, as evidence for the forum selection and consent to service by mail clauses;[5] however, this agreement is neither with Citco nor with any of the Banks, and the Liquidators appear not to have provided specific Subscription Agreements that refer to Citco or the Banks.

---

[1] *See Fairfield Sentry Ltd. et al. v. Theodoor CGC Amsterdam, et al*, 10-03496, Dkt. No. 1161; *Fairfield Sentry Ltd. et al. v. ABN Amro Schweiz AG*, Adv. Proc. No. 10-3635, Dkt. No. 218; *Fairfield Sentry Ltd. et al. v. ABN Amro Schweiz AG*, 10-03636, Dkt. No 245; *Fairfield Sentry Ltd. et al. v. Neue Bank AG et al.*, 10-03519, Dkt. No. 34.
[2] *See* Notice of Filing of Proposed Amended Complaint, *Fairfield Sentry Ltd. et al. v. ABN Amro Schweiz AG et al.*, Adv. Pro. No. Adv. Proc. No. 10-3635 (Bankr. S.D.N.Y. Sept. 20, 2016) (DktNo. 139-1); *Fairfield Sentry Ltd. et al. v. ABN Amro Schweiz AG et al.*, Adv. Proc. No. 10-03636 (Bankr. S.D.N.Y. Sept. 20, 2016) (Dkt. No. 152) (the "Amended Complaints"). In relevant part, the allegations in both proposed Amended Complaints are virtually identical. I will therefore refer to the two aforementioned documents collectively as the "Amended Complaints" and differentiate only for attribution where the paragraph numbers containing relevant allegations in the two Amended Complaints differ.
[3] This definition of the "Banks" excludes Neue Bank AG, which is not a defendant in the CITCO Actions but in a separate action, and which is alleged to have signed a Subscription Agreement.
[4] Amended Complaints, para. 20-23 and 14; Liquidators' Consolidated Opposition Brief at 5-6.
[5] Subscription Agreement, *Fairfield Sentry Ltd. et al. v. Theodoor CGC Amsterdam, et al.*, 10-03496, Dkt. No.1337.

2

**B.      Analysis and Opinion**

**(1)     Direct vs. Indirect Agency**

4.      Liechtenstein law distinguishes between "direct agency" (*direkte* or *unmittelbare Stellvertretung*), requiring that the agent act with actual or apparent authority <u>and</u> in the name of the principal, and "indirect agency" (*indirekte* or *mittelbare Stellvertretung*), in which case the agent acts for the benefit of a principal but in the agent's own name.[6] Only in the case of direct agency does an agreement exist between the principal and the third party,[7] whereas in the case of indirect agency the agreement exists only between the agent and the third party.[8] It is my opinion that in the present case, the Liquidators do not allege facts establishing the elements required for direct agency under Liechtenstein law. The allegations at most establish a case of indirect agency, where there is no privity of contract between the principal (the Banks) and the counterparty (the Fairfield funds), and accordingly the Banks are neither bound by the forum selection clause nor by the clause consenting to service by mail in the Subscription Agreements.

5.      In the case of direct agency, the principal either explicitly confers authority on the agent, e.g., in a document or other intentional communication disclosing the direct agency and providing evidence to a third party of the existence and scope of the agent's authority to act in the principal's name (actual authority),[9] or the agent's authority can be inferred, where the principal's behavior or other circumstances attributable to the principal provide

---

[6] See decisions of the Liechtenstein Supreme Court (OGH) LES 2013, 78 (80) and LES 2001, 81 (90); OGH 9 C 130/99-47, para. 6.4.3 (www.gerichtsentscheide.li); Strasser, in: Rummel, ABGB³ § 1002 ABGB, note 67 (1.1.2000, rdb.at). (Liechtenstein law is in many respects borrowed from Austrian law. Accordingly it is common to cite to Austrian literature.)
[7] Rubin in: Kletečka/Schauer, ABGB-ON 1.02 § 1002, note 25 (1.3.2017 rdb.at).
[8] Strasser, *l.c.*, note 8.
[9] Rubin, *l.c.*, notes 30, 43 and 44.

3

a sound basis for a third party to believe in good faith that the agent is empowered to act in the principal's name (apparent authority).[10] In case of doubt whether such circumstances constitute a sufficient basis for the third party to believe in good faith that the agent is acting for a principal, it must be assumed that the agent is acting in its own name.[11]

6. By contrast in the case of "indirect agency" the principal and the agent will often enter into an agreement (only between themselves) under which the agent provides a service to the principal while acting in the agent's own name.[12] Various reasons may exist for such an arrangement. If the agent subsequently enters into an agreement with a third party for the benefit of the principal but does not disclose the identity of the principal and the agency relationship, or even if the identity and relationship is disclosed but the parties to the agreement still manifest consent that the agent should be the party to the agreement by signing in its own name, the agreement is between the agent and the third party, and the third party has recourse only against the agent.[13]

7. In light of Liechtenstein – and general civil law – doctrine concerning the differences between direct and indirect agency, the Liquidators' allegations in the Amended Complaints do not support their conclusion that Citco acted as the direct agent of the Banks, in the sense that the Banks empowered Citco to act, and enter into a contractual relationship with the Fairfield funds, <u>in the Banks' name</u>.

---

[10] Strasser, *l.c.*, notes 44-48.
[11] Freudenthaler/Wiesinger, Die Stellvertretung, JAP 2005/2006, p. 50.
[12] Rubin, *l.c.*, note 67.
[13] Strasser, *l.c.*, note 8; *see also* Rubin *l.c.*, notes 67 and 68.

8. As the Liquidators concede in their Amended Complaints, the Banks did not enter into any Subscription Agreements. Instead the Amended Complaints allege that the Citco entered into Subscription Agreements <u>in its own name (rather than in the Banks' names)</u>.[14]

9. The Liquidators allege generally that the Citco Subscribers acted as "agents" for Beneficial Shareholders (i.e., the Banks), but they fail to allege any act or behavior <u>by the Banks</u> or other clear circumstances attributable to them that could have caused the Fairfield funds to believe in good faith that the Citco Subscribers had authority to <u>act in the Banks' name</u>, and thus as direct agents. Since, as outlined above,[15] in case of doubt, it must be assumed that the agent is acting in its own name the blanket assertion that the Citco Subscribers subscribed to shares of the Fairfield funds "on behalf of" the Banks[16] does not constitute a sufficient basis for the Fairfield funds to believe in good faith that the Citco Subscribers were empowered to do so in the name of the Banks. Nor do the allegations that the Citco Subscribers maintained custody of the shares (notably: as "record shareholders"),[17] paid redemption proceeds to the Banks,[18] or exercised control over the shares[19] establish a behavior by the Banks whereby they communicated authority to the Fairfield funds that Citco was acting in their name. Nor does the alleged execution of the Subscription Agreements by Citco, without more, manifest that the Banks

---

[14] Amended Complaints, para. 21 ("The Citco Subscribers, upon information and belief, entered into a Subscription Agreement with Sentry on or about January 3, 2003 (the "Initial Subscription Agreement") pursuant to which <u>the Citco Subscribers subscribed for Shares</u>") (emphasis added).
[15] *See supra* at para. 5.
[16] Amended Complaints, Adv. Proc. No. 10-3635, Dkt. No. 139-1, para. 149; Adv. Proc. No. 10-3636, Dkt. No. 152-1, para. 157.
[17] *See id.,* Adv. Proc. No. 10-3635, Dkt. No. 139-1, para. 149; and Adv. Proc. No. 10-3636, Dkt. No. 152-1, para. 157.
[18] *Id*.
[19] *Id.*

consented to Citco acting in their names.[20] Likewise, the assertion that by executing the Subscription Agreements Citco accepted to act on behalf of the Banks[21] does not by itself establish a sound basis for the Fairfield funds to believe in good faith that Citco was empowered to act in the Banks' name. In sum, the Liquidators have not alleged any communication by the Banks to the funds nor have they alleged any specific circumstances that would justify the appearance of Citco's authority to enter into an agreement in the name of the Banks. Thus the allegations do not establish an agreement between the funds and the Banks.

10. Applying Liechtenstein law to these allegations supports a case of indirect agency, and thus an absence of contractual privity between the Fairfield funds and the Banks. Accordingly, both the forum selection clause and the consent to service by mail clause could, under Liechtenstein law, at most bind Citco, but not the Banks.

*(2)*   *No Authority of Agent to Enter Into Agreement Illegal for Principal*

11. Furthermore, as I stated in the January 27 Declaration, the provisions of the Liechtenstein Law on Service are mandatory and not subject to disposition by private parties, because service in Liechtenstein is considered an official act reserved to the government.[22] Accordingly a private agreement providing for service by mail is void, and carrying out service pursuant to such an agreement is an illegal act.[23]

12. Thus, even assuming, for argument's sake, that the Banks appointed Citco as their direct agent to act in their name, the Fairfield funds had no reason to believe in good faith that Citco had also been empowered by the Banks to enter into an agreement in their

---

[20] *Id.*, Adv. Proc. No. 10-3635, Dkt. No. 139-1, para. 150; and Adv. Proc. No. 10-3636, Dkt. No. 152-1, para. 158.
[21] *Id.*, Adv. Proc. No. 10-3635, Dkt. No. 139-1, para. 151; and Adv. Proc. No. 10-3636, Dkt. No. 152-1, para. 159.
[22] January 27 Declaration, para. 34.
[23] *Id.*

6

name providing for consent to service by mail - an illegal and even criminal act according to Liechtenstein law. But even if the Banks had known that Citco entered into such an illegal agreement (which, it has to be stressed, is not alleged by the Liquidators), and if the Banks had given their approval, Citco would still not have the legal power to do so, because under Liechtenstein law a principal cannot confer powers onto an agent that the principal does not itself have, following the legal principle that "*nemo plus iuris transferre potest quam ipse habet*" ("no one can transfer more rights than he has himself").[24] Accordingly, given that agreeing to service by mail is void under Liechtenstein law, even acting as a direct agent Citco could not have validly agreed to service on the Banks by mail in Liechtenstein. Accordingly, in any case, service on the Banks in Liechtenstein remains illegal and void.

C.  **Conclusion**

13.    As explained above, it is my opinion that Citco under Liechtenstein law did not enter into an agreement in the name of the Banks that provided for jurisdiction of New York courts or for service by mail. Thus the Banks are not bound by such an agreement.

14.    Moreover, even if Citco had been purportedly been appointed by the Banks as their direct agent to enter into an agreements providing for service in Liechtenstein by mail, Citco could not have validly entered into such an agreement under Liechtenstein law in the Banks' name because a principal cannot empower an agent to engage in act that is illegal for the principal, such as agreeing to service by mail.

*  *  *

---

[24] Strasser, *l.c.*, note 52.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 8, 2017, at Schaan, Liechtenstein

_____
Dr. Hilmar Hoch, LL.M., Esq.