UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>Debtors in Foreign Proceedings. | ) Chapter 15 Case<br>)<br>)<br>) Case No: 10-13164 (SMB)<br>)<br>) Jointly Administered<br>)<br>) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>-against-<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>Defendants. | )<br>)<br>)<br>) Adv. Pro. No. 10-03496<br>)<br>)<br>)<br>) Administratively<br>) Consolidated<br>) Under This Matter<br>) |
| THIS DOCUMENT APPLIES TO:<br><br>ALL ADVERSARY PROCEEDINGS LISTED IN EXHIBIT A | ) Adv. Pro. Nos. Listed on<br>) Exhibit A Attached<br>) Hereto<br>) |

SUPPLEMENTAL REPLY MEMORANDUM OF LAW OF DEFENDANTS
IN THE ADVERSARY PROCEEDINGS LISTED ON EXHIBIT A
IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE
TO AMEND AND IN FURTHER SUPPORT OF THOSE DEFENDANTS'
MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS*

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ........................................................................................... 1

THE ACTIONS SHOULD BE DISMISSED ON
*FORUM NON CONVENIENS* GROUNDS. ........................................................................ 2

    A.    Forum Selection Clauses in Certain Subscription
          Agreements Pose No Obstacle to FNC Dismissal. .......................................... 2

    B.    The Liquidators' Forum Choice Smacks of Forum
          Shopping and Warrants No Deference. ........................................................... 3

    C.    The BVI is an Adequate Alternative Forum. ................................................... 6

    D.    The Balance of the *Gilbert* Factors Strongly
          Favors Adjudication in the BVI. .................................................................... 10

          1.    The Public Interest Factors Overwhelmingly
                Favor the BVI Forum. ......................................................................... 10

          2.    The Private Interest Factors Also Strongly
                Favor the BVI Forum. ......................................................................... 12

CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackermann v. Levine,*
   788 F.2d 830 (2d Cir. 1986) ..................................................................................................9

*Banco de Seguros del Estado v. J.P. Morgan Chase & Co.,*
   500 F. Supp. 2d 251 (S.D.N.Y. 2007) ....................................................................................8

*Bank of Credit & Comm. Int'l (Overseas) Ltd. v. State Bank of Pakistan,*
   273 F.3d 241 (2d Cir. 2001) ................................................................................................7, 8

*Coan v. State Farm Mut. Auto. Ins. Co.,*
   911 F. Supp. 81 (E.D.N.Y. 1996) ..........................................................................................3

*DiRienzo v. Philip Servs. Corp.,*
   294 F.3d 21 (2d Cir. 2002) (*en banc*) ....................................................................................7

*Dowling v. Hyland Therapeutics Div., Travenol Labs., Inc.,*
   767 F. Supp. 57 (S.D.N.Y. 1991) ..........................................................................................8

*Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.,*
   806 F. Supp. 2d 712 (S.D.N.Y. 2011) ................................................................................6, 9

*Falzon v. Johnson,*
   No. 12 CV 0674 (ILG), 2012 WL 4801558 (E.D.N.Y. Sept. 11, 2012) .................................9

*Firebird Republics Fund, Ltd. v. Moore Capital Mgmt. LLC,*
   No. 09 Civ. 303 (AKH), 2009 WL 2043885 (S.D.N.Y. July 14, 2009) ...............................10

*Flame S.A. v. Indus. Carriers, Inc.,*
   777 F. Supp. 2d 717 (S.D.N.Y. 2011) ....................................................................................9

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947) ...............................................................................................2, 7, 8, 10

*Holzman v. Guoqiang Xin,*
   No. 12-cv-8405 (AJN), 2015 WL 5544357 (S.D.N.Y. Sept. 18, 2015) ...............................10

*In re Bancredit Cayman, Ltd.,*
   No. 06-11026 (SMB), 2008 WL 5396618 (Bankr. S.D.N.Y. Nov. 25, 2008) ....................3, 4

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Action,*
   420 F.3d 702 (7th Cir. 2005) ..................................................................................................7

*In re Commodore Int'l, Ltd.*,
  242 B.R. 243 (Bankr. S.D.N.Y. 1999) ................................................................................. 12

*In re Hellas Telecomms. (Luxembourg) II SCA*,
  555 B.R. 323 (Bankr. S.D.N.Y. 2016) ........................................................................ 4, 5, 10

*In re Kinbrace Corp. (Seidel v. Ritter)*,
  Adv. Pro. No. 15-01432 (SMB), 2017 WL 1380524 (Bankr. S.D.N.Y. Apr.
  17, 2017) ............................................................................................................................ 5, 8

*Irragori v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) (*en banc*) ........................................................................ *passim*

*Levitin v. Sony Music Entertainment*,
  101 F. Supp. 3d 376 (S.D.N.Y. 2015) ...................................................................................... 9

*Maxwell v. State Farm Mut. Auto. Ins. Co.*,
  92 A.D.2d 1049 (3d Dep't 1983) ............................................................................................ 3

*Murray v. British Broad. Corp.*,
  81 F.3d 287 (2d Cir. 1996) .................................................................................................... 10

*Norex Petroleum Ltd. v. Access Indus. Inc.*,
  416 F.3d 146 (2d Cir. 2005) ............................................................................................ 5, 6, 7

*Palacios v. Coca-Cola Co.*,
  499 F. App'x 54 (2d Cir. 2012) ............................................................................................... 7

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ............................................................................................................. 10

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
  329 F.3d 64 (2d Cir. 2003) ............................................................................................... 6, 10

*Progressive Ne. Ins. Co. v. State Farm Ins. Cos.*,
  81 A.D.3d 1376 (4th Dep't 2011) ........................................................................................... 3

*Sasson v. TLG Acquisition LLC*,
  127 A.D.3d 480 (1st Dep't 2015) ........................................................................................... 3

*Saud v. PIA Investments Ltd.*,
  No. 07 Civ. 5603 (NRB), 2007 WL 4457441 (S.D.N.Y. Dec. 14, 2007) ............................. 10

*Schertenleib v. Traum*,
  589 F.2d 1156 (2d Cir. 1978) ............................................................................................... 10

*Scottish Air Int'l Inc. v. British Caledonian Grp., PLC*,
  81 F.3d 1224 (2d Cir. 1996) ................................................................................................. 10

*Securities Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   Adv. P. No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) ...................................................................................................................................... 2

*Sung Hwan Co. Ltd. v. Rite Aid Corp.*,
   7 N.Y.3d 78 (2006) ............................................................................................................ 9

*Tiwari v. BWIA Int'l*,
   No. 96 CIV. 6649 (RPP), 1997 WL 441944 (S.D.N.Y. Aug. 5, 1997) ............................. 8

*Veleron Holding, B.V. v. BNP Paribas S.A.*,
   No. 1-12-cv-05966 (CM) (S.D.N.Y. April 16, 2014) .................................................. 4, 9

**Statutes and Court Rules**

28 U.S.C. § 1404(a) ............................................................................................................ 9

BVI Business Companies Act § 31 .................................................................................. 11

BVI Insolvency Act § 245 ................................................................................................ 11

BVI Insolvency Act § 246 ................................................................................................ 11

BVI Insolvency Act § 249 ......................................................................................... 11, 12

Fed. R. Civ. P. 21 ................................................................................................................ 9

N.Y. C.P.L.R. § 302(a) ....................................................................................................... 9

N.Y. C.P.L.R. § 5302 .......................................................................................................... 9

N.Y. C.P.L.R. § 5304 .......................................................................................................... 9

## PRELIMINARY STATEMENT

In opposing the FNC Defendants' motion,[1] the Liquidators cannot, and do not, deny that: they are BVI court-appointed insolvency officers of BVI-incorporated Funds; their claims *all* arise under BVI common law and statutes—a point underscored by their submission, on the consolidated motion to dismiss briefing, of two declarations on disputed points of BVI substantive law, totaling 154 pages and 359 paragraphs, signed by their BVI appellate advocate; their claims all relate to the redemption by (almost exclusively foreign) Defendants of shares in the BVI Funds; the BVI Court not only permits litigation of the subject matter of the Actions, but for years the Liquidators actually litigated BVI law claims, almost identical to some of the claims at issue here, in that court and on appeal through the Privy Council; and the Liquidators only discontinued the last of their BVI Actions months before seeking leave to amend their pleadings in this Court, and after losing on the merits in the Privy Council. The Liquidators, moreover, identify no particular U.S. public interest in adjudicating their BVI law claims on the merits or any U.S.-based assets implicated by those claims.

These uncontested and incontestable facts describe a paradigmatic case for FNC dismissal, if these Actions are not dismissed for the other threshold reasons that Defendants raised elsewhere.[2] The Liquidators' principal opposition argument is that the FNC Defendants have waived their right to make this motion. But that contention is based on mischaracterizing the Liquidators' claims as being governed by the forum selection clause of some Defendants'

---

[1] Capitalized terms not defined here have the same meanings as in the FNC Defendants' initial memorandum of law, filed on January 27, 2017 (ECF No. 1109) (the "FNC Br."). The Liquidators' Opposition, filed on April 6, 2017 (ECF No. 1406), is cited as "Opp." and their Opposition to the Consolidated Memorandum of Law in Support of Defendants' Motion to Dismiss, filed on March 31, 2017 (ECF No. 1336), as "Consol. Opp." All ECF citations refer to Adv. P. No. 10-03496 (SMB), the main administratively consolidated adversary proceeding. The FNC Defendants incorporate by reference the arguments relating to the Subscription Agreements in the Consolidated Reply Memorandum of Law in Further Opposition to Plaintiffs' Motion for Leave to Amend and in Further Support of Defendants' Motion to Dismiss (the "Consol. Reply"), filed on May 26, 2017 (ECF No. 1457), at 8-12.

[2] If the Actions are all dismissed on one or more such grounds, the FNC motion would, of course, be moot.

Subscription Agreements. The Liquidators are estopped from making that argument, and in any event it is wrong: their claims are governed by the Funds' "Articles of Association and BVI Law," not the Subscription Agreements.[3] The Liquidators nevertheless try to import the forum selection clauses from those agreements into the Articles, but their contrived arguments all fail.

Moving past the "waiver" myth, the Liquidators offer no cogent response to the FNC Defendants' showings under the test of *Irragori v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (*en banc*). *First*, their self-serving denial of forum shopping cannot withstand scrutiny. Pursuing novel BVI law claims here, rather than in the BVI judicial system—where they have lost at every turn, are subject to "loser pays" rules, and from which they recently withdrew their last remaining claims—smacks of forum shopping. In any event, the Liquidators are foreign plaintiffs whose forum choice was not motivated by genuine convenience, and is therefore entitled to no deference. *Second*, the Liquidators protest that the BVI Court is no longer available, after they deliberately ran out the limitations clock. But the case law on which they rely is distinguishable, and poses no obstacle to granting this motion—certainly not conditionally. *Third*, the Liquidators fail to rebut the FNC Defendants' showing that the balance of the *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947) factors strongly favors dismissal.

## THE ACTIONS SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.

### A. Forum Selection Clauses in Certain Subscription Agreements Pose No Obstacle to FNC Dismissal.

The Liquidators' main argument is that "nearly all" of the FNC Defendants "expressly waived" any FNC argument by signing form Subscription Agreements with a forum selection clause. Opp. 3. This contention fails several times over. *First*, the Liquidators are judicially

---

[3] *Securities Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. P. No. 08-01789 (SMB), 2016 WL 6900689, at *15 (Bankr. S.D.N.Y. Nov. 22, 2016) ("*Extraterritoriality/Comity Dec.*") (citing Privy Council Decision ¶ 10).

2

estopped from relying on those clauses, because they successfully argued to the BVI Court in 2011 that their claims were only "with respect to the Articles," and not the Subscription Agreements. *See* Consol. Br. 26-27; Consol. Reply 8. *Second*, these Actions are *not* governed by the Subscription Agreements, but instead by the Articles and BVI law, and none of the Liquidators' revisionist theories changes that. Contrary to those theories: (a) the Subscription Agreements and Articles do *not* form a single, integrated contract; (b) the forum selection clause in the former *cannot* be imported into the latter;[4] and (c) the term "and" in Fairfield-drafted form Subscription Agreements does *not* really mean "or."[5] *See* FNC Br. 7; Consol. Br. 24-28; Consol. Reply 9-12. *Third*, it is not true that "nearly all" FNC Defendants signed such Subscription Agreements; the Liquidators' own pleadings allege only that 98 of the 156 FNC Defendants did so (*see* Ex. B),[6] and the forum selection clause, even if otherwise applicable, could not bind non-signatories. *See* Consol. Reply 11-12. In sum, *no* FNC Defendant has waived its right to move on FNC grounds.

### B. The Liquidators' Forum Choice Smacks of Forum Shopping and Warrants No Deference.

Where, as here, a foreign plaintiff sues in the U.S., "a plausible likelihood exists that the selection was made for forum-shopping reasons," *Irragori*, 274 F.3d at 71, and therefore is entitled to no "special deference." *In re Bancredit Cayman, Ltd.*, No. 06-11026 (SMB), 2008 WL 5396618, at *3 (Bankr. S.D.N.Y. Nov. 25, 2008).

---

[4] None of the authorities cited at Opp. 5-6 addressed whether the forum selection clause in a contract *other than the one on which plaintiffs' claims are based* nonetheless applies to those claims. As shown at Consol. Reply 9-12, the forum clause in some Defendants' Subscription Agreement does not govern the claims asserted by the Liquidators.

[5] New York state and federal courts regularly accord "and" its plain (conjunctive) meaning, so that when "and" joins two or more triggering conditions, they *all* must be satisfied. *See, e.g., Coan v. State Farm Mut. Auto. Ins. Co.*, 911 F. Supp. 81, 85 (E.D.N.Y. 1996); *Sasson v. TLG Acquisition LLC*, 127 A.D.3d 480, 481 (1st Dep't 2015); *Progressive Ne. Ins. Co. v. State Farm Ins. Cos.*, 81 A.D.3d 1376, 1378 (4th Dep't 2011); *Maxwell v. State Farm Mut. Auto. Ins. Co.*, 92 A.D.2d 1049, 1050 (3d Dep't 1983). The Subscription Agreements must be so interpreted.

[6] There were originally 160 FNC Defendants, but the Liquidators dismissed the Actions against four. Ex. A at n.1.

3

That "plausible likelihood" is confirmed here. The Liquidators are foreign insolvency officers who invoked Chapter 15 to commence cases in the U.S. against almost exclusively foreign defendants, asserting *only* claims under their own home country's laws. *See In re Hellas Telecomms. (Luxembourg) II SCA*, 555 B.R. 323, 347 n.19 (Bankr. S.D.N.Y. 2016) ("the purpose of chapter 15 is advanced by having the U.K. court resolve the U.K. law issues in this case. This weighs against giving deference to the Plaintiffs' (Foreign representatives appointed by the U.K. court) choice of a New York forum for the U.K. law claims"). The Liquidators, moreover, are obviously "hopeful of an advantage given the degree of unpredictability associated with an American court's interpretation of [foreign] law," *id.* at 347, especially after the Privy Council rejected the claims they asserted at home. They self-evidently also prefer to assert their novel and aggressive interpretations of BVI law in a court that does not follow "loser pays" rules that would expose them to liability for Defendants' attorneys' fees in the BVI if they lost there yet again.[7] And finally, "in relation to the core operative facts in dispute the parties and events at best have only marginal links to the [Liquidators'] chosen venue." *Bancredit Cayman*, 2008 WL 5396618, at *3. The Liquidators have engaged in forum shopping, pure and simple.[8]

The Liquidators seek to avoid this conclusion through a "straw man" mischaracterization of this motion. They claim that their commencement of over 200 actions in this Court by the time the BVI Court issued its first substantive decision "contradict[s]" Defendants' "'forum shopping' narrative." Opp. 1; *see also id.* 11-12. Not so. The FNC Defendants do not contend

---

[7] B. Lacy Decl. in Further Support of Mot. to Dismiss on *Forum Non Conveniens* Grounds (submitted herewith) ¶¶ 19-21 (June 8, 2017) ("Lacy Decl.") (discussing BVI law's "loser pays" rule). The fact that "the United States does not have a 'loser pays' attorney's fees" rule is "precisely the sort of factor a court is supposed to consider in assessing *forum non conveniens*." *Veleron Holding, B.V. v. BNP Paribas S.A.*, No. 1-12-cv-05966 (CM), slip op. at 51 (S.D.N.Y. April 16, 2014) (ECF No. 162) (Ex. G) (granting FNC dismissal in favor of an English court).

[8] Last July, this Court asked counsel for the Liquidators "why [they] didn't commence [the Actions] in the BVI," to which counsel responded with the same rationales they repeat in opposition to this motion. As the Court observed, their response "doesn't explain it." July 27, 2016 H'rg Tr. at 14:21-15:23 (ECF No. 906). Forum shopping does.

4

that the mere timing of the Liquidators' filings here establishes forum shopping, or that "the Liquidators should have moved forward earlier with the U.S. litigation." Opp. 12. Instead, the Liquidators' forum shopping is demonstrated by the full sequence of events: they brought dozens of BVI law claims in *both* the BVI *and* here (including 33 BVI Actions, against 74 defendants for $1.45 billion), and then—only *after* the Privy Council decisively ruled against them—*discontinued all their remaining BVI Actions*, centralizing here for the first time *all* of their claims (which, they now concede, are governed by BVI law). Then, in an explicit (but ultimately futile) effort to circumvent the Privy Council Decision, the Liquidators requested leave of this Court to amend their pleadings to assert here amended BVI law claims that they could have filed (but chose not to file) in the BVI. That history further confirms the Liquidators' forum shopping.

But "[e]ven if forum-shopping reasons did not inform the foreign plaintiff's decision to file an action in a U.S. court, 'there is nonetheless little reason to assume that it is convenient for a foreign plaintiff.'" *Hellas*, 555 B.R. at 346 (quoting *Irragori*, 274 F.3d at 71); *see In re Kinbrace Corp. (Seidel v. Ritter)*, Adv. Pro. No. 15-01432 (SMB), 2017 WL 1380524, at *5 (Bankr. S.D.N.Y. Apr. 17, 2017) (domestic trustee for foreign debtor received only "diminished deference" as he "stepped into the shoes of" a foreign entity; granting FNC dismissal). This case is fundamentally unlike *Norex Petroleum Ltd. v. Access Indus. Inc.*, 416 F.3d 146 (2d Cir. 2005), upon which the Liquidators rely. *See* Opp. 11 & n.15, 13, 14. In *Norex*, a Cypriot plaintiff with a Canadian beneficial owner chose a U.S. forum; defendants urged that Russia would have been more convenient. The Second Circuit held that plaintiff's forum choice was entitled to deference because "it appear[ed] doubtful from the record that Norex could have perfected jurisdiction over all defendants in either of its presumptively convenient home forums, Canada or Cyprus, or even in defendants' preferred forum, Russia," while "all defendants were amenable to suit" in New

York, "where some reside[d] or [were] incorporated." *Norex*, 416 F.3d at 155. But here, the Liquidators could have obtained jurisdiction over all defendants in the BVI, which is *both* their "presumptively convenient home forum," *id.*, *and* the FNC Defendants' preferred forum. *See infra* at 6. Instead, they chose to sue in New York, where not all defendants are amenable to suit and few "reside or are incorporated,"[9] to gain a "tactical advantage." *Irragori*, 274 F.3d at 73. Unlike the *Norex* plaintiff, the Liquidators' choice of this forum is entitled to no deference.[10]

### C.  The BVI is an Adequate Alternative Forum.

"An alternative forum is adequate if defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003). The Liquidators do not deny that under BVI rules, all Defendants—wherever based—can be served with process, *see* FNC Br. 8, or that the BVI Court permits litigation of the Liquidators' BVI law claims for restitution, breach of the Articles of Association of BVI-registered Funds, and relief under the BVI Insolvency Act. Again relying nearly exclusively on *Norex*, the Liquidators contend that their own home court is nevertheless inadequate because their claims would now be time-barred if brought there. *See* Opp. 8-9. But *Norex* is inapposite. There, the proposed Russian forum would not have heard plaintiff's claims because "Russian courts would deem [the key] issue precluded by the default judgment entered against it in" another Russian case. *Norex*, 416 F.3d at 158. The Liquidators make no such assertion—and in fact contend that BVI law *permits* adjudication on the merits of

---

[9] Only six FNC Defendants are allegedly incorporated or have principal places of business in New York. Exs. C, D.

[10] The Liquidators claim that the pendency of *other plaintiffs'* Madoff-related litigation in New York—and even actions by the BLMIS Trustee that this Court *dismissed* on extraterritoriality or comity grounds—somehow renders this Court a "convenient" forum for *this* action. Opp. 14. But the Liquidators offer no reason why this should be so—and ignore that the *Anwar* and *Picard* actions both were commenced by domestic plaintiffs asserting claims under domestic law, while they are foreign plaintiffs suing only under foreign law. The pendency of other Madoff-related litigation, moreover, posed no barrier to FNC dismissal in *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712 (S.D.N.Y. 2011). There, as here: foreign plaintiffs engaged in apparent forum shopping; none of their claims arose under U.S. federal law; and the "'core operative facts' on which [th]e litigation [wa]s based ar[o]se mostly out of the operations of foreign entities outside the United States." *Id.* at 725 (citation omitted).

6

the claims they filed here, notwithstanding the Privy Council's decision against them. *See* Consol. Opp. 35 ("The Privy Council Judgment Does Not Make Amendment Futile"), 35-51.

The Liquidators' "unavailability" argument is instead based on the passage of limitations periods that they tactically allowed to expire, precisely to avoid litigating their BVI law claims at home. *See* FNC Br. 9-11. In *Norex*, the non-Russian plaintiff was previously sued in Russian proceedings, but defaulted because it believed it had not been properly served and was not subject to Russian personal jurisdiction; the Russian default judgment apparently barred it from filing a new action there. *See Norex*, 416 F.3d at 158. In contrast, the Liquidators engaged in rank gamesmanship to avoid *suing* in their *home forum*—yet now claim immunity from the consequences. They seek refuge in the Second Circuit's observation that the "singular concern" of *Irragori's* second step is "the fact of present availability," *Norex*, 416 F.3d at 159,[11] *see* Opp. 8, but that court did not, and could not, abrogate the principle that "the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." *Gilbert*, 330 U.S. at 508 (footnote omitted).[12] The Liquidators should not benefit from their inequitable conduct.[13]

Even if the Court were to consider the effect of a limitations bar that the Liquidators intentionally created, it could still grant this motion. A court certainly may condition FNC

---

[11] Because the claim in *Norex* was apparently barred by the previous default judgment, any language in that opinion that could be read to suggest that a plaintiff may *deliberately* render a forum unavailable should be treated as *dicta*.

[12] In addition to *Norex*, the Liquidators rely on *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 29 (2d Cir. 2002) (*en banc*) and *Bank of Credit & Comm. Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241 (2d Cir. 2001). *See* Opp. 8. But in *DiRienzo*, the Second Circuit did not even discuss the "availability" issue and in *Bank of Credit & Comm. Int'l*, it vacated an FNC dismissal where the Pakistani statute of limitations in effect at the time of the District Court's decision had been repealed and replaced, remanding so that the District Court could "consider the implications of the new statute to its *forum non conveniens* analysis." *Id.* at 247.

[13] *See Palacios v. Coca-Cola Co.*, 499 F. App'x 54 (2d Cir. 2012) (affirming denial of motion to reinstate plaintiffs' U.S. claims, previously conditionally dismissed for FNC, after plaintiffs elected not to appeal the dismissal of their claims in Guatemala); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Action*, 420 F.3d 702, 707 (7th Cir. 2005) (remanding for determination whether "the plaintiffs did not act in good faith and manipulated the dismissal of their case in Mexico," in which case the District Court was "free once again to dismiss this complaint" for FNC).

7

dismissal on defendants waiving time bars in the alternative forum. *See, e.g., Kinbrace*, 2017 WL 13802524, at *8. If this Court declines to dismiss this case on other threshold grounds (*see supra* at 1 & n.2) and conditions FNC dismissal on such a waiver, many FNC Defendants have indicated that they would be willing to agree to a waiver, applicable only to claims that would have been timely had they been commenced in the BVI on the respective filing dates in this Court, provided the Liquidators re-file promptly in the BVI by a date set by this Court.[14]

The Liquidators' convoluted fallback argument is equally flawed. They describe the BVI Court as an "illusory alternative forum," hypothesizing that because no Defendant is present in the BVI, that *could* create a "material obstacle to enforcement of judgments," *if* a defendant defaulted in the BVI rather than "appear[ing] and engag[ing] in the merits of the suit." Opp. 9. In addition to being purely conjectural, this argument fails because the possibility of future judgment enforcement obstacles does *not* render inadequate an otherwise adequate forum at the second step of the *Irragori* analysis; the Liquidators tellingly cite no authority supporting that proposition.[15] And in any event, the Liquidators have not identified a single jurisdiction where any Defendant is present or has assets that would be less willing to recognize a BVI judgment than an American one. They also ignore the fact that in New York—where, the Liquidators

---

[14] *See, e.g., Tiwari v. BWIA Int'l*, No. 96 CIV. 6649 (RPP), 1997 WL 441944, at *4 (S.D.N.Y. Aug. 5, 1997) (60 days to re-file in Guyana); *Dowling v. Hyland Therapeutics Div., Travenol Labs., Inc.*, 767 F. Supp. 57, 60 (S.D.N.Y. 1991) (60 days to re-file in Ireland). Limitations defenses may be waived under BVI law, *see* Lacy Decl. ¶¶ 4-18, and the Liquidators do not contend otherwise. In contrast, in *Bank of Credit & Comm. Int'l*, 273 F.3d at 244 (cited at Opp. 8), the time bar was unwaivable as a matter of local law. The Liquidators' suggestion that the FNC Defendants were required on this motion to "offer[] an express, enforceable consent to enforcement of BVI Court judgments, and a waiver of limitations arguments," Opp. 10, is conspicuously unsupported by any citation. In fact, it is improper to condition dismissal on defendants consenting to "the enforcement of a foreign judgment here." *Banco de Seguros del Estado v. J.P. Morgan Chase & Co.*, 500 F. Supp. 2d 251, 264 (S.D.N.Y. 2007). As for limitations, the accepted practice is for defendants to agree to waive the defense only *after* the court has granted conditional dismissal. *See, e.g., Tiwari*, 1997 WL 441944, at *4. Should the Court issue an order for conditional dismissal here, the FNC Defendants request that it include a mechanism to make clear which FNC Defendants have then decided to waive. But no FNC Defendant is required to waive (or is waiving) a limitations defense at this time.

[15] At most, concerns about enforceability "may" be relevant to the *Gilbert* private interest factor analysis. *Gilbert*, 330 U.S. at 508; *see also Banco de Seguros del Estado*, 500 F. Supp. 2d at 263 (New York statute permitting enforcement of foreign judgments "satisfies the fourth private interest factor" of *Gilbert*); *infra* at 12.

8

posit, at least some Defendants have bank accounts (*see* Opp. 16-17)—"a foreign default judgment is not more or less conclusive but '*as* conclusive an adjudication' as a contested judgment." *Ackermann v. Levine*, 788 F.2d 830, 842 (2d Cir. 1986) (emphasis in original; citation omitted).[16] In short, there is nothing "illusory" about the BVI forum or its adequacy.

Nor is there merit to the Liquidators' suggestion that this motion is deficient because the FNC Defendants constitute only a "subset" of all Defendants. *See* Opp. 2, 10. The 156 FNC Defendants include *all* the Defendants named in each of 89 separate adversary proceedings. *See* Ex. E. This Court can dismiss those entire proceedings on FNC grounds while staying the separate proceedings the Liquidators brought against other defendants until the BVI Court decides the exclusively BVI law issues dispositive of *all* claims the Liquidators brought here against "redeemers."[17] This Court could then apply the BVI Court's rulings to the other cases.[18]

---

[16] The relevant statute does not distinguish between foreign default judgments and those resulting from litigation on the merits. *See* N.Y. C.P.L.R. § 5302 (the statute applies to any "foreign country judgment which is final, conclusive and enforceable where rendered"), § 5304 (listing grounds for non-recognition and not including that the foreign judgment was entered on default); *Flame S.A. v. Indus. Carriers, Inc.*, 777 F. Supp. 2d 717 (S.D.N.Y. 2011) (denying motion to dismiss action based on an English default judgment); *Sung Hwan Co. Ltd. v. Rite Aid Corp.*, 7 N.Y.3d 78 (2006) (reversing dismissal of action based on a Korean default judgment). The Liquidators suggest that, absent a defendant's appearance, a BVI judgment would not be recognized in New York for lack of personal jurisdiction, *see* Opp. 9-10 & n.13, but "[u]nder [N.Y. C.P.L.R. §] 5305(b), courts have recognized the validity of a foreign judgment using any of the jurisdictional bases New York recognizes," specifically including N.Y. C.P.L.R. § 302(a). *Sung Hwan Co.*, 7 N.Y.3d at 83. The Liquidators fail to address this point.

[17] *Cf. Extraterritoriality/Comity Dec.*, 2016 WL 6900689, at *15-17, 26-28, 30, 33-37 (dismissing claims against some, but not all, defendants, in separate adversary proceedings commenced by the BLMIS Trustee).

[18] In the 17 adversary proceedings in which some but not all Defendants are FNC Defendants, *see* Ex. F, the court may sever the claims against the non-FNC Defendants and dismiss the claims against the FNC Defendants on FNC grounds. *See Erausquin*, 806 F. Supp. 2d at 720-30 (severing claims against one defendant pursuant to Fed. R. Civ. P. 21 and dismissing clams against the others for FNC); *Veleron*, slip op. at 23-34, 44-56 (Ex. G) (dismissing foreign law claims against foreign defendants for FNC and denying motion to dismiss U.S. securities law claim against a domestic defendant that did not move on FNC grounds). The cases on which the Liquidators rely, *see* Opp. 10, are inapposite. In *Levitin v. Sony Music Entertainment*, 101 F. Supp. 3d 376, 391-93 (S.D.N.Y. 2015)— unlike here—plaintiffs were U.S. citizens and residents who would have faced "insuperable obstacles" litigating copyright claims in nine different jurisdictions had the FNC motion been granted, and there was no indication of forum shopping. *Falzon v. Johnson*, No. 12 CV 0674 (ILG), 2012 WL 4801558, at *8 (E.D.N.Y. Sept. 11, 2012), *adopted by* 2012 WL 4798670 (E.D.N.Y. Oct. 9, 2012), was an automobile accident case involving not an FNC motion, but a 28 U.S.C. § 1404(a) transfer motion; one defendant there was not amenable to service of process in the proposed transferee district. In contrast, the Liquidators do not deny that *all* Defendants here are amenable to service in the BVI. That distinction also renders irrelevant the other cases the Liquidators cite at Opp. 10.

### D. The Balance of the *Gilbert* Factors Strongly Favors Adjudication in the BVI.

#### 1. The Public Interest Factors Overwhelmingly Favor the BVI Forum.

As the FNC Defendants have demonstrated (*see* FNC Br. 13-14), there are strong public interests in: (a) having BVI courts, not American courts, interpret the law of the BVI—which, as the Liquidators concede, governs all of their claims—and the BVI law Articles; and (b) not burdening this Court with "the uncertain and time-consuming task" of resolving "inevitably conflicting expert evidence on numerous questions of [foreign] law." *Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978); *see also* FNC Br. 13-14. And, in contrast to the BVI, the U.S. "has no interest in regulating the transfers from a foreign fund to its investors." *Extraterratoriality/Comity Dec.*, 2016 WL 6900689, at *16. The Actions, moreover, implicate no U.S. assets. The Liquidators ignore all of this, instead suggesting that it is not burdensome, in general, for a domestic court to interpret English/BVI law. *See* Opp. 17. But courts in this Circuit frequently grant FNC dismissal in favor of British and other common law jurisdictions where (as here) foreign plaintiffs assert foreign-law claims, especially where those claims raise complex or novel issues, relate to a foreign corporation's internal affairs or have been the subject of voluminous foreign law expert declarations.[19] In this case, *all* of those circumstances exist.

The Liquidators assert that the "burden" of construing foreign law here is "substantially

---

[19] *See, e.g., Pollux*, 329 F.3d at 76 (affirming FNC dismissal where "the overwhelming majority of plaintiffs' claims necessitate the application of English law"); *Scottish Air Int'l Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1233-34 (2d Cir. 1996) (affirming FNC dismissal where "British law will apply to critical issues because the litigation involves the internal affairs of a Scottish corporation"); *Firebird Republics Fund, Ltd. v. Moore Capital Mgmt. LLC*, No. 09 Civ. 303 (AKH), 2009 WL 2043885 (S.D.N.Y. July 14, 2009) (granting FNC motion where English law governed a dispute concerning sale of foreign company's stock between foreign entities); *Holzman v. Guoqiang Xin*, No. 12-cv-8405 (AJN), 2015 WL 5544357, at *10 (S.D.N.Y. Sept. 18, 2015) (granting FNC dismissal where plaintiffs' claims all "sound under Cayman Islands corporate law"); *Saud v. PIA Investments Ltd.*, No. 07 Civ. 5603 (NRB), 2007 WL 4457441, at *5 (S.D.N.Y. Dec. 14, 2007) (granting FNC dismissal in favor of the BVI where a BVI corporation's Articles of Association and a BVI "statute give rise to the right of redemption plaintiff claims was wrongly used against him"); *Hellas*, 555 B.R. at 344 ("The UK Court is in a better position to interpret U.K. law to the complex facts raised by this case...."), 350 ("It is preferable to allow the U.K. court to decide a matter of its own law, especially when the issue would be a matter of first impression"); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) (reinstating FNC dismissal of Scottish plaintiffs' claims); *Murray v. British Broad. Corp.*, 81 F.3d 287, 293 (2d Cir. 1996) (affirming FNC dismissal of a British plaintiff's claim).

10

less than in other instances," Opp. 17, but their own submissions disprove that. Opposing the consolidated motion to dismiss, the Liquidators submitted two BVI law declarations of Gabriel Moss, Q.C., filed on October 21, 2016 (ECF No. 926) and March 31, 2017 (ECF No. 1338). His two opinions fill over 150 pages and 359 paragraphs (plus subparagraphs), addressing a plethora of disputed and novel issues of English/BVI law, including: whether the Privy Council Decision precludes the proposed amended common law claims;[20] whether Citco's alleged bad faith is a necessary part of the breach of contract claims (ECF No. 1338, ¶¶ 113-115); and numerous issues regarding the interpretation of BVI Insolvency Act §§ 245, 246 and 249 (*see* ECF No. 926, ¶¶ 55, 56; ECF No. 1338, ¶¶ 127-302).[21] And if this Court reached the "merits," it would also have to consider Defendants' extensive BVI law declarations (ECF Nos. 962, 1456).

In addition to the important public interests in adjudicating such BVI law issues locally, rather than through a battle of expert declarations here, there is an obvious public interest in avoiding duplicative trials. This can only be assured in the BVI. A trial of the BVI Insolvency Act claims here might well be followed by a *de novo* trial by the BVI Court, which alone can

---

[20] This incorporates: (i) whether the Privy Council Decision approved lower court decisions on the "certificates" and "good consideration" issues (ECF No. 1338, ¶¶ 12-19); (ii) whether the Privy Council Decision operates as *res judicata* (*id.* ¶¶ 17–69), including under (A) "cause of action estoppel" (*id.* ¶¶ 20-33), (B) "issue estoppel" (*id.* ¶¶ 34–37), or (C) "*Henderson v Henderson* abuse of process" (*id.* ¶¶ 38–43); (iii) the relevance of "good faith" to the Privy Council Decision (ECF No. 926, ¶¶ 32-38); (iv) whether the "BVI Court would hold that the Funds are bound by the certificates issued by Citco even if issued in bad faith" (ECF No. 1338, ¶ 60), including (A) the effect of the *Weavering* decision (*id.* ¶¶ 62-69), (B) whether Citco was the Funds' agent (*id.* ¶¶ 70-77), (C) the relevance of BVI Business Companies Act § 31 (*id.* ¶¶ 78-80), and (D) whether the BVI Court would construe Article 11(1) "to prevent the Funds from avoiding the otherwise conclusive effect of certificates in reliance on their 'own' wrong" (*id.* ¶ 81; *see also id.* ¶¶ 82-92); (v) the "test for showing absence of good faith under BVI law" (ECF No. 926, ¶ 39; *see also id.* ¶¶ 40-43); (vi) whether the amended pleadings adequately allege Citco's lack of good faith (ECF No. 926, ¶ 44; ECF No. 1338, ¶¶ 103-112); (vii) whether a term may be implied "into the Articles to the effect that a recipient in bad faith must repay a payment made on the basis of a fictitious NAV" (ECF No. 926, ¶ 47; *see also id.* ¶¶ 48-51; ECF No. 1338, ¶¶ 116-123); (viii) whether redeeming Defendants may defend on the basis of "*ex turpi causa*" (ECF No. 1338, ¶¶ 93-101); and (ix) the effect of Citco's alleged bad faith on a restitution claim (*id.* ¶ 102).

[21] These include: (i) the meaning of "entering into a transaction" under Sections 245 and 246 (ECF No. 1338, ¶¶ 145-157); (ii) whether the Liquidators have pleaded unfair preference claims (*id.* ¶¶ 159-162); (iii) whether the Defendants were creditors at the time of the redemptions (*id.* ¶¶ 163-181); (iv) issues of the Funds' "insolvency" (ECF No. 926, ¶¶ 55, 56; ECF No. 1338, ¶¶ 182-221, 268); (v) the meaning of "ordinary course of business" as used in the BVI Insolvency Act (*id.* ¶¶ 222-232); (vi) whether the Liquidators have pleaded an "undervalue claim" (*id.* ¶¶ 233-67); and (vii) whether non-BVI courts may issue orders under Section 249 (*id.* ¶¶ 276-302).

11

award relief under Section 249 of that Act. *See* Consol. Br. 69-70; Consol. Reply 44-46.

In response, the Liquidators identify no countervailing public interests, pointing only to two alleged "connections" with New York: (1) some FNC Defendants signed Subscription Agreements; and (2) other Madoff-related cases are pending here. But these arguments are mere makeweights: the Subscription Agreements are irrelevant and the other actions, unlike this one, involve U.S. plaintiffs and U.S. law and *do* implicate U.S. interests. *See supra* at 3, 6 n.10.[22]

### 2. The Private Interest Factors Also Strongly Favor the BVI Forum.

The BVI is most convenient for the Liquidators, and no less convenient than New York for Defendants and non-party witnesses based elsewhere. *See* FNC Br. 16-17 & n.28. The Liquidators do not deny that evidence is obtainable in the BVI from foreign non-party Citco through contractual submissions to jurisdiction there. *See* FNC Br. 17. Their observation that "key Citco entities . . . appeared in this District" as defendants in a previous case, Opp. 15-16, is irrelevant; the question is whether they would voluntarily provide evidence as *non-parties* in *these* proceedings. There is no reason to believe either that a U.S. court judgment would be more readily enforceable elsewhere than a BVI judgment, or that the pendency here of U.S. plaintiffs' U.S.-law Madoff-related claims against other parties makes this Court more convenient for *these* proceedings. *See supra* at 6 n.10, 8-9 & 8 n.15. And the parties' interest in avoiding duplicative trials of the BVI Insolvency Act claims can be vindicated only in the BVI. *See supra* at 11-12.

### CONCLUSION

For the foregoing reasons, this Court should deny the Liquidators' motions for leave to amend and dismiss their Complaints on *forum non conveniens* grounds.

---

[22] In *In re Commodore Int'l., Ltd.*, 242 B.R. 243, 263 (Bankr. S.D.N.Y. 1999), the court dismissed on FNC grounds U.S. law avoidance claims asserted by Bahamian debtors' creditors committee against a foreign defendant, as the "public interest factors weigh[ed] demonstrably in favor of" adjudication in the Bahamas. Such factors weigh even more heavily for dismissal here, as the avoidance claims arise under foreign law, not the Bankruptcy Code.

Dated:  New York, New York
        June 9, 2017

                                                        Respectfully submitted,

                                                        **HOGAN LOVELLS US LLP**

                                                        By:   /s/Marc J. Gottridge
                                                              Marc J. Gottridge
                                                              Benjamin J.O. Lewis
                                                        875 Third Avenue
                                                         New York, NY 10022
                                                         Telephone: (212) 918-3000
                                                         Facsimile: (212) 918-3100
                                                         marc.gottridge@hoganlovells.com
                                                         ben.lewis@hoganlovells.com

                                                         **[ADDITIONAL COUNSEL LISTED ON EXHIBIT H]**