# **EXHIBIT C**

to render them

spoken and made
ecover more costs
ify that there was

# CHAPTER 43.

## LIMITATION.

*(24th August,* 1961.)    20/1961
33/1961

## PART I.

### PRELIMINARY.

**1.** This Ordinance may be cited as the Limitation    Short title.
Ordinance.

**2.** In this Ordinance—    Interpretation.

"action" includes any proceeding in a court of law;

"duty" includes any debt due to Her Majesty;

"foreshore" means the shore and bed of the sea and of any
tidal water, below the line of the medium high tide
between the spring tides and the neap tides;

"land" includes corporeal hereditaments and
rentcharges, and any legal or equitable estate or
interest therein, including an interest in the
proceeds of the sale of land held upon trust for sale,
but save as aforesaid does not include any
incorporeal hereditaments;

"parent" has the same meaning as in the Fatal Accidents    Cap. 26.
Act;

"personal estate" and "personal property" do not include
chattels real;

"rent" includes a rentcharge and a rentservice;

"rentcharge" means any annuity or periodical sum of
money charged upon or payable out of land, or a rent
service or interest on a mortgage on land;

"settled land" and "tenant for life" have the same    Cap. 230.
meanings respectively as in the Settled Estates Act;

466          **CAP. 43)**          *Limitation.*

"ship" includes every description of vessel used in navigation not propelled by oars;

Cap. 303.

"trust" and "trustee" have the same meanings respectively as in the Trustee Ordinance;

"trust for sale" has the same meaning as in the Trustee Ordinance.

(2)  For the purposes of this Ordinance, a person shall be deemed to be under a disability while he is an infant, or of unsound mind, or a convict subject to the operation of the Forfeiture Act, in whose case no administrator or curator has been appointed under that Act.

Cap. 29.

(3)  For the purposes of the last foregoing subsection but without prejudice to the generality thereof, a person shall be conclusively presumed to be of unsound mind while he is detained in pursuance of any enactment authorising the detention of persons of unsound mind or criminal lunatics.

(4)  A person shall be deemed to claim through another person, if he became entitled by, through, under, or by the act of that other person to the right claimed, and any person whose estate or interest might have been barred by a person entitled to an entailed interest in possession shall be deemed to claim through the person so entitled:

Provided that a person becoming entitled to any estate or interest by virtue of a special power of appointment shall not be deemed to claim through the appointor.

(5)  References in this Ordinance to a right of action to recover land shall include references to a right to enter into possession of the land or, in the case of rentcharges, to distrain for arrears of rent, and references to the bringing of such an action shall include references to the making of such an entry or distress.

(6)  References in this Ordinance to the possession of land shall, in the case of rentcharges, be construed as references to the receipt of the rent, and references to the date of dispossession or discontinuance of possession of land shall, in the case of rentcharges, be construed as references to the date of the last receipt of rent.

(7)  In Part II references to a right of action shall include references to a cause of action and to a right to receive money secured by a mortgage or charge on any property or to recover

proceeds of the sale of land, and to a right to receive a share or interest in the personal estate of a deceased person; and references to the date of the accrual of a right of action shall—

(*a*) in the case of an action for an account, be construed as references to the date on which the matter arose in respect of which an account is claimed;

(*b*) in the case of an action upon a judgment, be construed as references to the date on which the judgment became enforceable;

(*c*) in the case of an action to recover arrears of rent, dower or interest, or damages in respect thereof, be construed as references to the date on which the rent, dower or interest became due.

## PART II.

PERIODS OF LIMITATION FOR DIFFERENT CLASSES OF ACTION.

**3.** The provisions of this Part shall have effect subject to the provisions of Part III which provide for the extension of the periods of limitation in the case of disability, acknowledgment, part payment, fraud and mistake.

<div style="float:right; font-size:small">Part II to be subject to provisions of Part III relating to disability, acknowledgement, fraud, etc.</div>

*Actions of contract and tort and certain other actions.*

**4.** (1) The following actions shall not be brought after the expiration of six years from the date on which the cause of action accrued, that is to say—

<div style="float:right; font-size:small">Limitations of actions of contract and tort, and certain other actions.</div>

(*a*) actions founded on simple contract or on tort;

(*b*) actions to enforce a recognisance;

(*c*) actions to enforce an award, where the submission is not by an instrument under seal;

(*d*) actions to recover any sum recoverable by virtue of any enactment, other than a penalty or forfeiture or sum by way of penalty or forfeiture.

(2) An action for an account shall not be brought in respect of any matter which arose more than six years before the commencement of the action.

(3) An action upon a specialty shall not be brought after the expiration of twelve years from the date on which the cause of action accrued:

468          **CAP. 43**)                    *Limitation.*

Provided that this subsection shall not affect any action for which a shorter period of limitation is prescribed by any other provision of this Ordinance.

(4) An action shall not be brought upon any judgment after the expiration of twelve years from the date on which judgment became enforceable, and no arrears of interest in respect of any judgment debt shall be recovered after the expiration of six years from the date on which the interest became due.

(5) An action to recover any penalty or forfeiture, or sum by way of penalty or forfeiture, recoverable by virtue of any enactment shall not be brought after the expiration of two years from the date on which the cause of action accrued:

Provided that for the purposes of this subsection the expression "penalty" shall not include a fine to which any person is liable on conviction of a criminal offence.

(6) Subsection (1) shall apply to an action to recover seamen's wages, but save as aforesaid this section shall not apply to any cause of action within the Admiralty jursidiction of the High Court which is enforceable *in rem.*

(7) This section shall not apply to any claim for specific performance of a contract or for an injunction or for other equitable relief, except in so far as any provision thereof may be applied by the Court by analogy in like manner as the corresponding enactment repealed by this Ordinance has heretofore been applied.

Limitation in case of successive conversions and extinction of title of owner of converted goods.

**5.** (1) Where any cause of action in respect of the conversion or wrongful detention of a chattel has accrued to any person and, before he recovers possession of the chattel, a further conversion or wrongful detention takes places, no action shall be brought in respect of the further conversion or detention after the expiration of six years from the accrual of the cause of action in respect of the original conversion or detention.

(2) Where any such cause of action has accrued to any person and the period prescribed for bringing that action and for bringing any action in respect of such a further conversion or wrongful detention as aforesaid has expired and he has not during that period recovered possession of the chattel, the title of that person to the chattel shall be extinguished.

*Actions to recover land and rent.*

**6.** (1) No action shall be brought by the Crown to recover any land after the expiration of thirty years from the date on which the right of action accrued to the Crown or, if it first accrued to some person through whom the Crown claims, to that person:

*Limitation of actions to recover land.*

Provided that an action to recover foreshore may be brought by the Crown at any time before the expiration of sixty years from the said date, and where any right of action to recover land, which has ceased to be foreshore but remains in the ownership of the Crown, accrued when the land was foreshore, the action may be brought at any time before the expiration of sixty years from the date of the accrual of the right of action, or of thirty years from the date when the land ceased to be foreshore, whichever period first expires.

(2) No action shall be brought by any spiritual or eleemosynary corporation sole to recover any land after the expiration of thirty years from the date on which the right of action accrued to the corporation sole or, if it first accrued to some person through whom the corporation sole claims, to that person.

(3) No action shall be brought by any other person to recover any land after the expiration of twelve years from the date on which the right of action accrued to him or, if it first accrued to some person through whom he claims, to that person:

Provided that, if the right of action first accrued to the Crown or a spiritual or eleemosynary corporation sole through whom the person bringing the action claims, the action may be brought at any time before the expiration of the period during which the action could have been brought by the Crown or the corporation sole, or of twelve years from the date on which the right of action accrued to some person other than the Crown or the corporation sole, whichever period first expires.

**7.** (1) Where the person bringing an action to recover land, or some person through whom he claims, has been in possession thereof, and has while entitled thereto been dispossessed or discontinued his possession, the right of action shall be deemed to have accrued on the date of the dispossession or discontinuance.

*Accrual of right of action in case of present interests in land.*

470        **CAP. 43**)        *Limitation.*

(2) Where any person brings an action to recover any land of a deceased person, whether under a will or on intestacy, and the deceased person was on the date of his death in possession of the land or, in the case of a rentcharge created by will or taking effect upon his death, in possession of the land charged, and was the last person entitled to the land to be in possession thereof, the right of action shall be deemed to have accrued on the date of his death.

(3) Where any person brings an action to recover land, being an estate or interest in possession assured otherwise than by will to him, or to some person through whom he claims, by a person who, at the date when the assurance took effect, was in possession of the land or, in the case of a rentcharge created by the assurance, in possession of the land charged, and no person has been in possession of the land by virtue of the assurance, the right of action shall be deemed to have accrued on the date when the assurance took effect.

Accrual of right of action in case of future interests.

**8.** (1) Subject as hereafter in this section provided, the right of action to recover any land shall, in a case where the estate or interest claimed was an estate or interest in reversion or remainder or any other future estate or interest and no person has taken possession of the land by virtue of the estate or interest claimed, be deemed to have accrued on the date on which the estate or interest fell into possession by the determination of the preceding estate or interest.

(2) If the person entitled to the preceding estate or interest, was not in possession of the land on the date of the determination thereof, no action shall be brought by the person entitled to the succeeding estate or interest after the expiration of twelve years from the date on which the right of action accrued to the person entitled to the preceding estate or interest, or six years from the date on which the right of action accrued to the person entitled to the succeeding estate or interest, whichever period last expires:

Provided that, where the Crown or a spiritual or eleemosynary corporation sole is entitled to the succeeding estate or interest, the foregoing provisions of this subsection shall have effect with the substitution for the reference to twelve years of a reference to thirty years, and for the reference to six years of a reference to twelve years.

(3) The foregoing provisions of this section shall not apply to any estate or interest which falls into possession on the

determination of an entailed interest and which might have been barred by the person entitled to the entailed interest.

(4) No person shall bring an action to recover any estate or interest in land under an assurance taking effect after the right of action to recover the land had accrued to the person by whom the assurance was made or some person through whom he claimed or some person entitled to a preceding estate or interest, unless the action is brought within the period during which the person by whom the assurance was made could have brought such an action.

(5) Where any person is entitled to any estate or interest in land in possession and, while so entitled, is also entitled to any future estate or interest in that land, and his right to recover the estate or interest in possession is barred under this Ordinance, no action shall be brought by that person, or by any person claiming through him, in respect of the future estate or interest, unless in the meantime possession of the land has been recovered by a person entitled to an intermediate estate or interest.

**9.** (1) Subject to the provisions of subsection (1) of section 19, the provisions of this Ordinance shall apply to equitable interests in land, including interests in the proceeds of the sale of land held upon trust for sale, in like manner as they apply to legal estates, and accordingly a right of action to recover the land shall, for the purposes of this Ordinance but not otherwise, be deemed to accrue to a person entitled in possession to such an equitable interest in the like manner and circumstances and on the same date as it would accrue if his interest were a legal estate in the land.

*Provisions in case of settled land and land held on trust.*

*33/1961.*

(2) Where the period prescribed by this Ordinance has expired for the bringing of an action to recover land by a tenant for life of settled land, his legal estate shall not be extinguished, if and so long as the right of action to recover the land of any person entitled to a beneficial interest in the land either has not accrued or has not been barred by this Ordinance, and the legal estate shall accordingly remain vested in the tenant for life and shall devolve in accordance with the Settled Estates Act; but if and when every such right of action as aforesaid has been barred by this Ordinance, the said legal estate shall be extinguished.

*Cap. 230.*

472        CAP. 43)        *Limitation.*

(3) Where any land is held upon trust including a trust for sale, and the period prescribed by this Ordinance has expired for the bringing of an action to recover the land by the trustees, the estate of the trustees shall not be extinguished if and so long as the right of action to recover the land of any person entitled to a beneficial interest in the land or in the proceeds of sale either has not accrued or has not been barred by this Ordinance, but if and when every such right of action has been so barred the estate of the trustees shall be extinguished.

33/1961.

(4) Where any land is held upon trust, including a trust for sale, an action to recover the land may be brought by the trustees on behalf of any person entitled to a beneficial interest in possession in the land or in the proceeds of sale whose right of action has not been barred by this Ordinance, notwithstanding that the right of action of the trustees would apart from this provision have been barred by this Ordinance.

33/1961.

(5) Where any settled land or any land held on trust for sale is in the possession of a person entitled to a beneficial interest in the land or in the proceeds of sale, not being a person solely and absolutely entitled thereto, no right of action to recover the land shall be deemed for the purposes of this Ordinance to accrue during such possession to any person in whom the land is vested as tenant for life or trustee, or to any other person entitled to a beneficial interest in the land or the proceeds of sale.

33/1961.

Accrual of right of action in case of forfeiture or breach of condition.

**10.** A right of action to recover land by virtue of a forfeiture or breach of condition shall be deemed to have accrued on the date on which the forfeiture was incurred or the condition broken:

Provided that, if such a right has accrued to a person entitled to an estate or interest in reversion or remainder and the land was not recovered by virtue thereof, the right of action to recover the land shall not be deemed to have accrued to that person until his estate or interest fell into possession, as if no such forfeiture or breach of condition had occurred.

Accrual of right of action in case of certain tenancies.

**11.** (1) A tenancy at will shall, for the purposes of this Ordinance, be deemed to be determined at the expiration of a period of one year from the commencement thereof, unless it has previously been determined, and accordingly the right of action of the person entitled to the land subject to the

t including a trust
is Ordinance has
ver the land by the
be extinguished if
er the land of any
he land or in the
as not been barred
ch right of action
trustees shall be

, including a trust
be brought by the
beneficial interest
of sale whose right
this Ordinance,
he trustees would
y this Ordinance.

held on trust for
d to a beneficial
sale, not being a
no right of action
purposes of this
to any person in
trustee, or to any
in the land or the

d by virtue of a
deemed to have
was incurred or

ued to a person
r remainder and
he right of action
e accrued to that
ssession, as if no
ccurred.

purposes of this
he expiration of
t thereof, unless
rdingly the right
d subject to the

tenancy shall be deemed to have accrued on the date of such determination.

(2) A tenancy from year to year or other period, without a lease in writing shall, for the purposes of this Ordinance, be deemed to be determined at the expiration of the first year or other period, and accordingly the right of action of the person entitled to the land subject to the tenancy shall be deemed to have accrued at the date of such determination:

Provided that, where any rent has subsequently been received in respect of the tenancy, the right of action shall be deemed to have accrued on the date of the last receipt of rent.

(3) Where any person is in possession of land by virtue of a lease in writing by which a rent of not less than three dollars is reserved, and the rent is received by some person wrongfully claiming to be entitled to the land in reversion immediately expectant on the determination of the lease, and no rent is subsequently received by the person rightfully so entitled, the right of action of the last-named person to recover the land shall be deemed to have accrued at the date when the rent was first received by the person wrongfully claiming as aforesaid and not at the date of the determination of the lease.

(4) Subsections (1) and (3) shall not apply to any tenancy at will or lease granted by the Crown.

**12.** (1) No right of action to recover land shall be deemed to accrue unless the land is in the possession of some person in whose favour the period of limitation can run (hereafter in this section referred to as "adverse possession") and where under the foregoing provisions of this Ordinance any such right of action is deemed to accrue on a certain date and no person is in adverse possession on that date, the right of action shall not be deemed to accrue unless and until adverse possession is taken of the land.

*Right of action not to accrue or continue unless there is adverse possession.*

(2) Where a right of action to recover land has accrued and thereafter, before the right is barred, the land ceases to be in adverse possession, the right of action shall no longer be deemed to have accrued and no fresh right of action shall be deemed to accrue unless and until the land is again taken into adverse possession.

(3) For the purposes of this section—

474        **CAP. 43**)            *Limitation.*

(*a*) possession of any land subject to a rentcharge by a person (other than the person entitled to the rentcharge) who does not pay the rent shall be deemed to be adverse possession of the rentcharge; and

(*b*) receipt of rent under a lease by a person wrongfully claiming, in accordance with subsection (3) of the last foregoing section, the land in reversion shall be deemed to be adverse possession of the land.

Cure of defective disentailing assurance.

**13.** Where a person entitled in remainder to an entailed interest in any land has made an assurance thereof which fails to bar the issue in tail or the estates and interests taking effect on the determination of the entailed interest, or fails to bar the last-mentioned estates and interests only, and any person takes possession of the land by virtue of the assurance, and that person or any other person whatsoever (other than a person entitled to possession by virtue of the settlement) is in possession of the land for a period of twelve years from the commencement of the time at which the assurance, if it had then been executed by the person entitled to the entailed interest, would have operated, without the consent of any other person, to bar the issue in tail and such estates and interests as aforesaid, then, at the expiration of that period, the assurance shall operate, and be deemed always to have operated, to bar the issue in tail and those estates and interests.

Limitation of redemption actions.

**14.** When a mortgagee of land has been in possession of any of the morgaged land for a period of twelve years, no action to redeem the land of which the mortgagee has been so in possession shall thereafter be brought by the mortgagor or any person claiming through him.

No right of action to be preserved by formal entry or continual claim.

**15.** For the purposes of this Ordinance, no person shall be deemed to have been in possession of any land by reason only of having made a formal entry thereon, and no continual or other claim upon or near any land shall preserve any right of action to recover the land.

Administration to date back to death.

**16.** For the purposes of the provisions of this Ordinance relating to actions for the recovery of land, an administrator of the estate of a deceased person shall be deemed to claim as if there had been no interval of time between the death of the deceased person and the grant of the letters of administration.

**17.**  No action shall be brought, or distress made, to recover arrears of rent, or damages in respect thereof, after the expiration of six years from the date on which the arrears became due.

Limitation of actions to recover rent.

*Actions to recover money secured by a mortgage or charge or to recover proceeds of the sale of land.*

**18.**  (1) No action shall be brought to recover any principal sum of money secured by a mortgage or other charge on property, whether real or personal, or to recover proceeds of the sale of land, after the expiration of twelve years from the date when the right to receive the money accrued.

Limitation of actions to recover money secured by a mortgage or charge or to recover proceeds of the sale of land.

(2) No foreclosure action in respect of mortgaged personal property shall be brought after the expiration of twelve years from the date on which the right to foreclose accrued:

Provided that if, after that date the mortgagee was in possession of the mortgaged property, the right to foreclose on the property which was in his possession shall not, for the purposes of this subsection, be deemed to have accrued until the date on which his possession discontinued.

(3) The right to receive any principal sum of money secured by a mortgage or other charge and the right to foreclose on the property subject to the mortgage or charge shall not be deemed to accrue so long as that property comprises any future interest or any life insurance policy which has not matured or been determined.

(4) Nothing in this section shall apply to a foreclosure action in respect of mortgaged land, but the provisions of this Ordinance relating to actions to recover land shall apply to such an action.

(5) No action to recover arrears of interest payable in respect of any sum of money secured by a mortgage or other charge or payable in respect of proceeds of the sale of land, or to recover damages in respect of such arrears shall be brought after the expiration of six years from the date on which the interest became due:

Provided that—

(*a*)  where a prior mortgagee or other incumbrancer has been in possession of the property charged, and an action is brought within one year of the discontinuance

476        **CAP. 43**)        *Limitation.*

of such possession by the subsequent incumbrancer, he may recover by that action all the arrears of interest which fell due during the period of possession by the prior incumbrancer or damages in respect thereof, notwithstanding that the period exceeded six years;

33/1961.

(*b*) where the property subject to the mortgage or charge comprises any future interest or life insurance policy and it is a term of the mortgage or charge that arrears of interest shall be treated as part of the principal sum of money secured by the mortgage or charge, interest shall not be deemed to become due before the right to receive the principal sum of money has accrued or is deemed to have accrued.

(6)  This section shall not apply to any mortgage or charge on a ship.

*Actions in respect of trust property or the personal estate of deceased persons.*

**Limitation of actions in respect of trust property.**

**19.** (1) No period of limitation prescribed by this Ordinance shall apply to an action by a beneficiary under a trust, being an action—

(*a*) in respect of any fraud or fraudulent breach of trust to which the trustee was a party or privy; or

(*b*) to recover from the trustee trust property or the proceeds thereof in the possession of the trustee, or previously received by the trustee and converted to his use.

33/1961.

(2)  Subject as aforesaid, an action by a beneficiary to recover trust property or in respect of any breach of trust, not being an action for which a period of limitation is prescribed by any other provision of this Ordinance, shall not be brought after the expiration of six years from the date on which the right of action accrued:

Provided that the right of action shall not be deemed to have accrued to any beneficiary entitled to a future interest in the trust property, until the interest fell into possession.

(3)  No beneficiary as against whom there would be a good defence under this Ordinance shall derive any greater or other benefit from a judgment or order obtained by any other beneficiary than he could have obtained if he had brought the action and this Ordinance had been pleaded in defence.

**20.** Subject to the provisions of subsection (1) of the last foregoing section, no action in respect of any claim to the personal estate of a deceased person or to any share or interest in such estate, whether under a will or on intestacy, shall be brought after the expiration of twelve years from the date when the right to receive the share or interest accrued, and no action to recover arrears of interest in respect of any legacy, or damages in respect of such arrears, shall be brought after the expiration of six years from the date on which the interest became due.

<div style="float:right">Limitations of actions claiming personal estate of a deceased person.</div>

## PART III.

### EXTENSION OF LIMITATION PERIODS IN CASE OF DISABILITY, ACKNOWLEDGMENT, PART PAYMENT, FRAUD AND MISTAKE.

#### *Disability.*

**21.** If on the date when any right of action accrued for which a period of limitation is prescribed by this Ordinance, the person to whom it accrued was under a disability, the action may be brought at any time before the expiration of six years, or in the case of actions to which the last foregoing section applies, one year from the date when the person ceased to be under a disability or died, whichever event first occurred, notwithstanding that the period of limitation has expired:

<div style="float:right">Extension of limitation period in case of disability.</div>

Provided that—

(*a*) this section shall not affect any case where the right of action first accrued to some person (not under a disability) through whom the person under a disability claims;

(*b*) when a right of action which has accrued to a person under a disability accrues, on the death of that person while still under a disability, to another person under a disability, no further extension of time shall be allowed by reason of the disability of the second person;

(*c*) no action to recover land or money charged on land shall be brought by virtue of this section by any person after the expiration of thirty years from the date on which the right of action accrued to that person or some person through whom he claims;

478          **CAP. 43)**          *Limitation.*

Cap. 62.
33/1961.

(*d*) this section, so far as it relates to the disability of infancy or unsoundness of mind, shall not apply to any actions to which the Public Authorities Protection Act applies, unless the plaintiff proves that the person under a disability was not, at the time when the right of action accrued to him, in the custody of a parent; and

(*e*) this section shall not apply to any action to recover a penalty or forfeiture, or sum by way thereof, by virtue of any enactment, except where the action is brought by an aggrieved party.

*Acknowledgment and part payment.*

Fresh accrual of action on acknowledgment or part payment.

**22.** (1) Where there has accrued any right of action (including a foreclosure action) to recover land or any right of a mortgagee of personal property to bring a foreclosure action in respect of the property, and—

(*a*) the person in possession of the land or personal property acknowledges the title of the person to whom the right of action has accrued; or

(*b*) in the case of a foreclosure or other action by a mortgagee, the person in possession as aforesaid or the person liable for the mortgage debt makes any payment in respect thereof, whether of principal or interest;

the right shall be deemed to have accrued on and not before the date of the acknowledgment or payment.

(2) The foregoing subsection shall apply to a right of action to recover land accrued to a person entitled to an estate or interest taking effect on the determination of an entailed interest against whom time is running under section 13, and on the making of the acknowledgment that section shall cease to apply to the land.

(3) Where a mortgagee is by virtue of the mortgage in possession of any mortgaged land and either receives any sum in respect of the principal or interest of the mortgage debt or acknowledges the title of the mortgagor, or his equity of redemption, an action to redeem the land in his possession may be brought at any time before the expiration of twelve years from the date of the payment or acknowledgment.

33/1961.

(4) Where any right of action has accrued to recover any debt or liquidated pecuniary claim, or any claim to the personal estate of a deceased person or to any share or interest therein, and the person liable or accountable therefor

acknowledges the claim or makes any payment in respect thereof, the right shall be deemed to have accrued on and not before the date of the acknowledgment or the last payment:

Provided that a payment of a part of the rent or interest due at any time shall not extend the period for claiming the remainder then due, but any payment of interest shall be treated as a payment in respect of the principal debt.

**23.** (1) Every such acknowledgment as aforesaid shall be in writing and signed by the person making the acknowledgment.

*Formal provisions as to acknowledgments and part payments.*

(2) Any such acknowledgment or payment as aforesaid may be made by the agent of the person by whom it is required to be made under the last foregoing section, and shall be made to the person, or to an agent of the person, whose title or claim is being acknowledged or, as the case may be, in respect of whose claim the payment is being made.

**24.** (1) An acknowledgment of the title to any land, or mortgaged personalty, by any person in possession thereof shall bind all other persons in possession during the ensuing period of limitation.

*Effect of acknowledgments or part payment on persons other than the maker or recipient.*

(2) A payment in respect of a mortgage debt by the mortgagor or any person in possession of the mortgaged property shall, so far as any right of the mortgagee to foreclose or otherwise to recover the property is concerned, bind all other persons in possession of the mortgaged property during the ensuing period of limitation.

*33/1961.*

(3) Where two or more mortgagees are by virtue of the mortgage in possession of the mortgaged land, an acknowledgment of the mortgagor's title or of his equity of redemption by one of the mortgagees shall only bind him and his successors, and shall not bind any other mortgagee or his successors, and where the mortgagee by whom the acknowledgment is given is entitled to a part of the mortgaged land and not to any ascertained part of the mortgage debt, the mortgagor shall be entitled to redeem that part of the land on payment, with interest, of the part of the mortgage debt which bears the same proportion to the whole of the debt as the value of the part of the land bears to the whole of the mortgaged land.

480        **CAP. 43**)              *Limitation.*

(4) Where there are two or more mortgagors, and the title or right to redemption of one of the mortgagors is acknowledged as aforesaid, the acknowledgment shall be deemed to have been made to all the mortgagors.

(5) An acknowledgment of any debt or other liquidated pecuniary claim shall bind the acknowledgor and his successors but not any other person:

Provided that an acknowledgment made after the expiration of the period of limitation prescribed for the bringing of an action to recover the debt or other claim shall not bind any successor on whom the liability devolves on the determination of a preceding estate or interest in property under a settlement taking effect before the date of the acknowledgment.

(6) A payment made in respect of any debt or other liquidated pecuniary claim shall bind all persons liable in respect thereof:

Provided that a payment made after the expiration of the period of limitation prescribed for the bringing of an action to recover the debt or other claim shall not not bind any person other than the person making the payment and his successors, and shall not bind any successor on whom the liability devolves on the determination of a preceding estate or interest in property under a settlement taking effect before the date of the payment.

(7) An acknowledgment by one of several personal representatives of any claim to the personal estate of a deceased person, or to any share or interest therein, or a payment by one of several personal representatives in respect of any such claim shall bind the estate of the deceased person.

(8) In this section the expression "successor", in relation to any mortgagee or person liable in respect of any debt or claim, means his personal representatives and any other person on whom the rights under the mortgage or, as the case may be, the liability in respect of the debt or claim devolve, whether on death or bankruptcy or the disposition of property or the determination of a limited estate or interest in settled property or otherwise.

Postponement of
limitation period
in case of fraud
or mistake.

**25.** Where, in the case of any action for which a period of limitation is prescribed by this Ordinance, either—

(*a*) the action is based upon the fraud of the defendant or his agent or of any person through whom he claims or his agent, or

(*b*) the right of action is concealed by the fraud of any such person as aforesaid, or

(*c*) the action is for relief from the consequences of a mistake,

the period of limitation shall not begin to run until the plaintiff has discovered the fraud or the mistake, as the case may be, or could with reasonable diligence have discovered it:

Provided that nothing in this section shall enable any action to be brought to recover, or enforce any charge against, or set aside any transaction affecting, any property which—

(i) in the case of fraud, has been purchased for valuable consideration by a person who was not a party to the fraud and did not at the time of the purchase know or have reason to believe that any fraud had been committed, or

(ii) in the case of mistake, has been purchased for valuable consideration, subsequently to the transaction in which the mistake was made, by a person who did not know or have reason to believe that the mistake had been made.

## PART IV.

### GENERAL.

**26.** (1) This Ordinance and any other enactment relating to the limitation of actions shall apply to arbitrations as they apply to actions in the High Court.

*Application of Ordinance and other limitation enactments to arbitrations.*

(2) Notwithstanding any term in an arbitration agreement to the effect that no cause of action shall accrue in respect of any matter required by the agreement to be referred until an award is made under the agreement, the cause of action shall, for the purpose of this Ordinance and of any other such enactment (whether in their application to arbitrations or to other proceedings), be deemed to have accrued in respect of any such matter at the time when it would have accrued but for that term in the agreement.

482          **CAP. 43)**              *Limitation.*

(3) For the purpose of this Ordinance and of any such enactment as aforesaid, an arbitration shall be deemed to be commenced when one party to the arbitration serves on the other party or parties a notice requiring him or them to appoint an arbitrator or to agree to the appointment of an arbitrator, or, where the arbitration agreement provides that the reference shall be to a person named or designated in the agreement, requiring him or them to submit the dispute to the person so named or designated.

(4) Any such notice as aforesaid may be served either—

(*a*) by delivering it to the person on whom it is to be served; or

(*b*) by leaving it at the usual or last known place of abode in the Territory of that person; or

(*c*) by sending it by post in a registered letter addressed to that person at his usual or last known place of abode in the Territory;

as well as in any other manner provided in the arbitration agreement; and where a notice is sent by post in manner prescribed by paragraph (*c*), service thereof shall, unless the contrary is proved, be deemed to have been effected at the time at which the letter would have been delivered in the ordinary course of post.

(5) Where the High Court orders that an award be set aside or orders, after the commencement of an arbitration, that the arbitration shall cease to have effect with respect to the dispute referred, the Court may further order that the period between the commencement of the arbitration and the date of the order of the Court shall be excluded in computing the time prescribed by this Ordinance or any such enactment as aforesaid for the commencement of proceedings (including arbitration) with respect to the dispute referred.

Cap. 6.

(6) This section shall apply to an arbitration under the Arbitration Ordinance as well as to an arbitration pursuant to an arbitration agreement, and subsections (3) and (4) shall have effect, in relation to an arbitration under the Arbitration Ordinance, as if for the references to the arbitration agreement there were substituted references to such of the provisions of the said Act or of any order, scheme, rules, regulations, or byelaws made thereunder as relate to the arbitration.

*Limitation.*  (CAP. 43  483

(7) In this section the expressions "arbitration", and "award" have the same meanings as in the Arbitration Act, 1889, and the expression "arbitration agreement" has the same meaning as the expression "submission" in the said Act.

<div style="text-align: right">33/1961<br>52 & 53 Vict.,<br>c. 49.</div>

**27.**  For the purposes of this Ordinance, any claim by way of set-off or counterclaim shall be deemed to be a separate action and to have been commenced on the same date as the action in which the set-off or counterclaim is pleaded.

<div style="text-align: right">Provisions as to set-off or counterclaim.</div>

**28.**  Nothing in this Ordinance shall affect any equitable jurisdiction to refuse relief on the ground of acquiescence or otherwise.

<div style="text-align: right">Acquiescence.</div>

**29.**  (1) Save as in this Ordinance otherwise expressly provided and without prejudice to the provisions of section 30, this Ordinance shall apply to proceedings by or against the Crown in like manner as it applies to proceedings between subjects:

<div style="text-align: right">Application to the Crown.</div>

Provided that this Ordinance shall not apply to any proceedings by the Crown for the recovery of any tax or duty or interest thereon or to any forfeiture proceedings under any law relating to duties of excise or to any proceedings in respect of the forfeiture of a ship.

(2) For the purposes of this section, proceedings by or against the Crown shall include proceedings by or against any Government Department or any officer of the Crown as such or any person acting on behalf of the Crown.

(3) Nothing in this Ordinance shall affect the prerogative right of Her Majesty to any gold or silver mine.

**30.**  This Ordinance shall not apply to any action or arbitration for which a period of limitation is prescribed by any other enactment, or to any action or arbitration to which the Crown is a party and for which, if it were between subjects, a period of limitation would be prescribed by any other enactment.

<div style="text-align: right">Saving for other limitation enactments.</div>

**31.**  Nothing in this Ordinance shall—

(*a*) enable any action to be brought which was barred before the commencement of this Ordinance by an enactment repealed by this Ordinance, except in so far

<div style="text-align: right">Provisions as to actions already barred and pending actions.</div>

484          **CAP. 43**)                    *Limitation.*

as the cause of action or right of action may be revived by an acknowledgment or part payment made in accordance with provisions of this Ordinance; or

(*b*) affect any action or arbitration commenced before the commencement of this Ordinance or the title to any property which is the subject of any such action or arbitration.



# Limitation Act 1980

### CHAPTER 58

## ARRANGEMENT OF SECTIONS

### PART I

#### ORDINARY TIME LIMITS FOR DIFFERENT CLASSES OF ACTION

*Time limits under Part I subject to extension or exclusion under Part II*

Section
1.  Time limits under Part I subject to extension or exclusion under Part II.

*Actions founded on tort*

2.  Time limit for actions founded on tort.
3.  Time limit in case of successive conversions and extinction of title of owner of converted goods.
4.  Special time limit in case of theft.

*Actions founded on simple contract*

5.  Time limit for actions founded on simple contract.
6.  Special time limit for actions in respect of certain loans.
7.  Time limit for actions to enforce certain awards.

*General rule for actions on a specialty*

8.  Time limit for actions on a specialty.

*Actions for sums recoverable by statute*

9.  Time limit for actions for sums recoverable by statute.
10.  Special time limit for claiming contribution.

A

ii          c. 58              *Limitation Act 1980*

Section

### Actions in respect of wrongs causing personal injuries or death

11.   Special time limit for actions in respect of personal injuries.
12.   Special time limit for actions under Fatal Accidents legislation.
13.   Operation of time limit under section 12 in relation to different dependants.
14.   Definition of date of knowledge for purposes of sections 11 and 12.

### Actions to recover land and rent

15.   Time limit for actions to recover land.
16.   Time limit for redemption actions.
17.   Extinction of title to land after expiration of time limit.
18.   Settled land and land held on trust.
19.   Time limit for actions to recover rent.

### Actions to recover money secured by a mortgage or charge or to recover proceeds of the sale of land

20.   Time limit for actions to recover money secured by a mortgage or charge or to recover proceeds of the sale of land.

### Actions in respect of trust property or the personal estate of deceased persons

21.   Time limit for actions in respect of trust property.
22.   Time limit for actions claiming personal estate of a deceased person.

### Actions for an account

23.   Time limit in respect of actions for an account.

### Miscellaneous and supplemental

24.   Time limit for actions to enforce judgments.
25.   Time limit for actions to enforce advowsons and extinction of title to advowsons.
26.   Administration to date back to death.
27.   Cure of defective disentailing assurance.

## PART II

### EXTENSION OR EXCLUSION OF ORDINARY TIME LIMITS

#### Disability

28    Extension of limitation period in case of disability.

*Limitation Act 1980*     c. **58**     iii

### *Acknowledgment and part payment*

Section
29. Fresh accrual of action on acknowledgment or part payment.
30. Formal provisions as to acknowledgments and part payments.
31. Effect of acknowledgment or part payment on persons other than the maker or recipient.

### *Fraud, concealment and mistake*

32. Postponement of limitation period in case of fraud, concealment or mistake.

### *Discretionary exclusion of time limit for actions in respect of personal injuries or death*

33. Discretionary exclusion of time limit for actions in respect of personal injuries or death.


## Part III

### Miscellaneous and General

34. Application of Act and other limitation enactments to arbitrations.
35. New claims in pending actions: rules of court.
36. Equitable jurisdiction and remedies.
37. Application to the Crown and the Duke of Cornwall.
38. Interpretation.
39. Saving for other limitation enactments.
40. Transitional provisions, amendments and repeals.
41. Short title, commencement and extent.

Schedules:

Schedule 1—Provisions with respect to actions to recover land.
Schedule 2—Transitional provisions.
Schedule 3—Consequential amendments.
Schedule 4—Enactments repealed.

c. **58**          1

## ELIZABETH II



# Limitation Act 1980

## 1980 CHAPTER 58

An Act to consolidate the Limitation Acts 1939 to 1980.
[13th November 1980]

B E IT ENACTED by the Queen's most Excellent Majesty, by and
with the advice and consent of the Lords Spiritual and
Temporal, and Commons, in this present Parliament
assembled, and by the authority of the same, as follows:—

### PART I

#### ORDINARY TIME LIMITS FOR DIFFERENT CLASSES OF ACTION

##### *Time limits under Part I subject to extension or exclusion under Part II*

**1.**—(1) This Part of this Act gives the ordinary time limits
for bringing actions of the various classes mentioned in the
following provisions of this Part.

(2) The ordinary time limits given in this Part of this Act
are subject to extension or exclusion in accordance with the
provisions of Part II of this Act.

Time limits
under Part I
subject to
extension or
exclusion
under Part II.

#### *Actions founded on tort*

**2.** An action founded on tort shall not be brought after the
expiration of six years from the date on which the cause of action
accrued.

Time limit for
actions foun-
ded on tort.

A 2

2          c. **58**                    *Limitation Act 1980*

PART I
Time limit
in case of
successive
conversions
and
extinction
of title of
owner of
converted
goods.

**3.**—(1) Where any cause of action in respect of the conversion of a chattel has accrued to any person and, before he recovers possession of the chattel, a further conversion takes place, no action shall be brought in respect of the further conversion after the expiration of six years from the accrual of the cause of action in respect of the original conversion.

(2) Where any such cause of action has accrued to any person and the period prescribed for bringing that action has expired and he has not during that period recovered possession of the chattel, the title of that person to the chattel shall be extinguished.

Special time limit in case of theft.

**4.**—(1) The right of any person from whom a chattel is stolen to bring an action in respect of the theft shall not be subject to the time limits under sections 2 and 3(1) of this Act, but if his title to the chattel is extinguished under section 3(2) of this Act he may not bring an action in respect of a theft preceding the loss of his title, unless the theft in question preceded the conversion from which time began to run for the purposes of section 3(2).

(2) Subsection (1) above shall apply to any conversion related to the theft of a chattel as it applies to the theft of a chattel; and, except as provided below, every conversion following the theft of a chattel before the person from whom it is stolen recovers possession of it shall be regarded for the purposes of this section as related to the theft.

If anyone purchases the stolen chattel in good faith neither the purchase nor any conversion following it shall be regarded as related to the theft.

(3) Any cause of action accruing in respect of the theft or any conversion related to the theft of a chattel to any person from whom the chattel is stolen shall be disregarded for the purpose of applying section 3(1) or (2) of this Act to his case.

(4) Where in any action brought in respect of the conversion of a chattel it is proved that the chattel was stolen from the plaintiff or anyone through whom he claims it shall be presumed that any conversion following the theft is related to the theft unless the contrary is shown.

(5) In this section "theft" includes—

    (*a*) any conduct outside England and Wales which would be theft if committed in England and Wales; and

    (*b*) obtaining any chattel (in England and Wales or elsewhere) in the circumstances described in section 15(1) of the Theft Act 1968 (obtaining by deception) or by blackmail within the meaning of section 21 of that Act;

1968 c. 60.

and references in this section to a chattel being "stolen" shall be construed accordingly.

*Limitation Act 1980*      c. **58**      **3**

### *Actions founded on simple contract*

<div style="float:right">PART I

Time limit for
actions
founded on
simple
contract.</div>

**5.** An action founded on simple contract shall not be brought after the expiration of six years from the date on which the cause of action accrued.

<div style="float:right">Special time
limit for
actions in
respect of
certain loans.</div>

**6.**—(1) Subject to subsection (3) below, section 5 of this Act shall not bar the right of action on a contract of loan to which this section applies.

(2) This section applies to any contract of loan which—

    (*a*) does not provide for repayment of the debt on or before a fixed or determinable date ; and

    (*b*) does not effectively (whether or not it purports to do so) make the obligation to repay the debt conditional on a demand for repayment made by or on behalf of the creditor or on any other matter ;

except where in connection with taking the loan the debtor enters into any collateral obligation to pay the amount of the debt or any part of it (as, for example, by delivering a promissory note as security for the debt) on terms which would exclude the application of this section to the contract of loan if they applied directly to repayment of the debt.

(3) Where a demand in writing for repayment of the debt under a contract of loan to which this section applies is made by or on behalf of the creditor (or, where there are joint creditors, by or on behalf of any one of them) section 5 of this Act shall thereupon apply as if the cause of action to recover the debt had accrued on the date on which the demand was made.

(4) In this section " promissory note " has the same meaning as in the Bills of Exchange Act 1882.

<div style="float:right">1882 c. 61.</div>

<div style="float:right">Time limit
for actions
to enforce
certain awards.</div>

**7.** An action to enforce an award, where the submission is not by an instrument under seal, shall not be brought after the expiration of six years from the date on which the cause of action accrued.

### *General rule for actions on a specialty*

<div style="float:right">Time limit
for actions
on a specialty.</div>

**8.**—(1) An action upon a specialty shall not be brought after the expiration of twelve years from the date on which the cause of action accrued.

(2) Subsection (1) above shall not affect any action for which a shorter period of limitation is prescribed by any other provision of this Act.

4          c. **58**          *Limitation Act 1980*

PART I
Time limit
for actions
for sums
recoverable
by statute.

*Actions for sums recoverable by statute*

**9.**—(1) An action to recover any sum recoverable by virtue of any enactment shall not be brought after the expiration of six years from the date on which the cause of action accrued.

(2) Subsection (1) above shall not affect any action to which section 10 of this Act applies.

**10.**—(1) Where under section 1 of the Civil Liability (Contribution) Act 1978 any person becomes entitled to a right to recover contribution in respect of any damage from any other person, no action to recover contribution by virtue of that right shall be brought after the expiration of two years from the date on which that right accrued.

(2) For the purposes of this section the date on which a right to recover contribution in respect of any damage accrues to any person (referred to below in this section as " the relevant date ") shall be ascertained as provided in subsections (3) and (4) below.

(3) If the person in question is held liable in respect of that damage—

(*a*) by a judgment given in any civil proceedings ; or

(*b*) by an award made on any arbitration ;

the relevant date shall be the date on which the judgment is given, or the date of the award (as the case may be).

For the purposes of this subsection no account shall be taken of any judgment or award given or made on appeal in so far as it varies the amount of damages awarded against the person in question.

(4) If, in any case not within subsection (3) above, the person in question makes or agrees to make any payment to one or more persons in compensation for that damage (whether he admits any liability in respect of the damage or not), the relevant date shall be the earliest date on which the amount to be paid by him is agreed between him (or his representative) and the person (or each of the persons, as the case may be) to whom the payment is to be made.

(5) An action to recover contribution shall be one to which sections 28, 32 and 35 of this Act apply, but otherwise Parts II and III of this Act (except sections 34, 37 and 38) shall not apply for the purposes of this section.

*Actions in respect of wrongs causing personal injuries or death*

Special time
limit for
actions in
respect of
personal
injuries.

**11.**—(1) This section applies to any action for damages for negligence, nuisance or breach of duty (whether the duty exists by virtue of a contract or of provision made by or under a statute or independently of any contract or any such provision) where the damages claimed by the plaintiff for the negligence, nuisance

or breach of duty consist of or include damages in respect of personal injuries to the plaintiff or any other person.

(2) None of the time limits given in the preceding provisions of this Act shall apply to an action to which this section applies.

(3) An action to which this section applies shall not be brought after the expiration of the period applicable in accordance with subsection (4) or (5) below.

(4) Except where subsection (5) below applies, the period applicable is three years from—

(a) the date on which the cause of action accrued ; or

(b) the date of knowledge (if later) of the person injured.

(5) If the person injured dies before the expiration of the period mentioned in subsection (4) above, the period applicable as respects the cause of action surviving for the benefit of his estate by virtue of section 1 of the Law Reform (Miscellaneous Provisions) Act 1934 shall be three years from—

1934 c. 41.

(a) the date of death ; or

(b) the date of the personal representative's knowledge ;

whichever is the later.

(6) For the purposes of this section " personal representative " includes any person who is or has been a personal representative of the deceased, including an executor who has not proved the will (whether or not he has renounced probate) but not anyone appointed only as a special personal representative in relation to settled land ; and regard shall be had to any knowledge acquired by any such person while a personal representative or previously.

(7) If there is more than one personal representative, and their dates of knowledge are different, subsection (5)(b) above shall be read as referring to the earliest of those dates.

**12.**—(1) An action under the Fatal Accidents Act 1976 shall not be brought if the death occurred when the person injured could no longer maintain an action and recover damages in respect of the injury (whether because of a time limit in this Act or in any other Act, or for any other reason).

Special time limit for actions under Fatal Accidents legislation.

1976 c. 30.

Where any such action by the injured person would have been barred by the time limit in section 11 of this Act, no account shall be taken of the possibility of that time limit being overridden under section 33 of this Act.

(2) None of the time limits given in the preceding provisions of this Act shall apply to an action under the Fatal Accidents

6          c. 58          *Limitation Act 1980*

PART I

Act 1976, but no such action shall be brought after the expiration of three years from—

(*a*) the date of death ; or

(*b*) the date of knowledge of the person for whose benefit the action is brought ;

whichever is the later.

1976 c. 30.

(3) An action under the Fatal Accidents Act 1976 shall be one to which sections 28, 33 and 35 of this Act apply, and the application to any such action of the time limit under subsection (2) above shall be subject to section 39 ; but otherwise Parts II and III of this Act shall not apply to any such action.

Operation of time limit under section 12 in relation to different dependants.

**13.**—(1) Where there is more than one person for whose benefit an action under the Fatal Accidents Act 1976 is brought, section 12(2)(*b*) of this Act shall be applied separately to each of them.

(2) Subject to subsection (3) below, if by virtue of subsection (1) above the action would be outside the time limit given by section 12(2) as regards one or more, but not all, of the persons for whose benefit it is brought, the court shall direct that any person as regards whom the action would be outside that limit shall be excluded from those for whom the action is brought.

(3) The court shall not give such a direction if it is shown that if the action were brought exclusively for the benefit of the person in question it would not be defeated by a defence of limitation (whether in consequence of section 28 of this Act or an agreement between the parties not to raise the defence, or otherwise).

Definition of date of knowledge for purposes of sections 11 and 12.

**14.**—(1) In sections 11 and 12 of this Act references to a person's date of knowledge are references to the date on which he first had knowledge of the following facts—

(*a*) that the injury in question was significant ; and

(*b*) that the injury was attributable in whole or in part to the act or omission which is alleged to constitute negligence, nuisance or breach of duty ; and

(*c*) the identity of the defendant ; and

(*d*) if it is alleged that the act or omission was that of a person other than the defendant, the identity of that person and the additional facts supporting the bringing of an action against the defendant ;

and knowledge that any acts or omissions did or did not, as a matter of law, involve negligence, nuisance or breach of duty is irrelevant.

(2) For the purposes of this section an injury is significant if the person whose date of knowledge is in question would reasonably have considered it sufficiently serious to justify his instituting proceedings for damages against a defendant who did not dispute liability and was able to satisfy a judgment.

(3) For the purposes of this section a person's knowledge includes knowledge which he might reasonably have been expected to acquire—

    (*a*) from facts observable or ascertainable by him ; or

    (*b*) from facts ascertainable by him with the help of medical or other appropriate expert advice which it is reasonable for him to seek ;

but a person shall not be fixed under this subsection with knowledge of a fact ascertainable only with the help of expert advice so long as he has taken all reasonable steps to obtain (and, where appropriate, to act on) that advice.

### Actions to recover land and rent

**15.**—(1) No action shall be brought by any person to recover any land after the expiration of twelve years from the date on which the right of action accrued to him or, if it first accrued to some person through whom he claims, to that person.

(2) Subject to the following provisions of this section, where—

    (*a*) the estate or interest claimed was an estate or interest in reversion or remainder or any other future estate or interest and the right of action to recover the land accrued on the date on which the estate or interest fell into possession by the determination of the preceding estate or interest; and

    (*b*) the person entitled to the preceding estate or interest (not being a term of years absolute) was not in possession of the land on that date;

no action shall be brought by the person entitled to the succeeding estate or interest after the expiration of twelve years from the date on which the right of action accrued to the person entitled to the preceding estate or interest or six years from the date on which the right of action accrued to the person entitled to the succeeding estate or interest, whichever period last expires.

(3) Subsection (2) above shall not apply to any estate or interest which falls into possession on the determination of an entailed interest and which might have been barred by the person entitled to the entailed interest.

(4) No person shall bring an action to recover any estate or interest in land under an assurance taking effect after the right

8        c. **58**                    *Limitation Act 1980*

PART I    of action to recover the land had accrued to the person by whom the assurance was made or some person through whom he claimed or some person entitled to a preceding estate or interest, unless the action is brought within the period during which the person by whom the assurance was made could have brought such an action.

(5) Where any person is entitled to any estate or interest in land in possession and, while so entitled, is also entitled to any future estate or interest in that land, and his right to recover the estate or interest in possession is barred under this Act, no action shall be brought by that person, or by any person claiming through him, in respect of the future estate or interest, unless in the meantime possession of the land has been recovered by a person entitled to an intermediate estate or interest.

(6) Part I of Schedule 1 to this Act contains provisions for determining the date of accrual of rights of action to recover land in the cases there mentioned.

(7) Part II of that Schedule contains provisions modifying the provisions of this section in their application to actions brought by, or by a person claiming through, the Crown or any spiritual or eleemosynary corporation sole.

Time limit for redemption actions.

**16.** When a mortgagee of land has been in possession of any of the mortgaged land for a period of twelve years, no action to redeem the land of which the mortgagee has been so in possession shall be brought after the end of that period by the mortgagor or any person claiming through him.

Extinction of title to land after expiration of time limit.
1925 c. 21.

**17.** Subject to—

(*a*) section 18 of this Act ; and

(*b*) section 75 of the Land Registration Act 1925 ;

at the expiration of the period prescribed by this Act for any person to bring an action to recover land (including a redemption action) the title of that person to the land shall be extinguished.

Settled land and land held on trust.

**18.**—(1) Subject to section 21(1) and (2) of this Act, the provisions of this Act shall apply to equitable interests in land, including interests in the proceeds of the sale of land held upon trust for sale, as they apply to legal estates.

Accordingly a right of action to recover the land shall, for the purposes of this Act but not otherwise, be treated as accruing to a person entitled in possession to such an equitable interest in the like manner and circumstances, and on the same date, as it would accrue if his interest were a legal estate in the land (and any relevant provision of Part I of Schedule 1 to this Act shall apply in any such case accordingly).

*Limitation Act 1980*    c. 58    9

(2) Where the period prescribed by this Act has expired for the bringing of an action to recover land by a tenant for life or a statutory owner of settled land—

    (a) his legal estate shall not be extinguished if and so long as the right of action to recover the land of any person entitled to a beneficial interest in the land either has not accrued or has not been barred by this Act; and

    (b) the legal estate shall accordingly remain vested in the tenant for life or statutory owner and shall devolve in accordance with the Settled Land Act 1925;    1925 c. 18.

but if and when every such right of action has been barred by this Act, his legal estate shall be extinguished.

(3) Where any land is held upon trust (including a trust for sale) and the period prescribed by this Act has expired for the bringing of an action to recover the land by the trustees, the estate of the trustees shall not be extinguished if and so long as the right of action to recover the land of any person entitled to a beneficial interest in the land or in the proceeds of sale either has not accrued or has not been barred by this Act; but if and when every such right of action has been so barred the estate of the trustees shall be extinguished.

(4) Where—

    (a) any settled land is vested in a statutory owner; or

    (b) any land is held upon trust (including a trust for sale);

an action to recover the land may be brought by the statutory owner or trustees on behalf of any person entitled to a beneficial interest in possession in the land or in the proceeds of sale whose right of action has not been barred by this Act, notwithstanding that the right of action of the statutory owner or trustees would apart from this provision have been barred by this Act.

**19.** No action shall be brought, or distress made, to recover arrears of rent, or damages in respect of arrears of rent, after the expiration of six years from the date on which the arrears became due.    Time limit for actions to recover rent.

*Actions to recover money secured by a mortgage or charge*
*or to recover proceeds of the sale of land*

**20.**—(1) No action shall be brought to recover—    Time limit for actions to recover money secured by a mortgage or charge or to recover proceeds of the sale of land.

    (a) any principal sum of money secured by a mortgage or other charge on property (whether real or personal); or

    (b) proceeds of the sale of land;

after the expiration of twelve years from the date on which the right to receive the money accrued.

10          c. 58          *Limitation Act 1980*

PART I          (2) No foreclosure action in respect of mortgaged personal property shall be brought after the expiration of twelve years from the date on which the right to foreclose accrued.

But if the mortgagee was in possession of the mortgaged property after that date, the right to foreclose on the property which was in his possession shall not be treated as having accrued for the purposes of this subsection until the date on which his possession discontinued.

(3) The right to receive any principal sum of money secured by a mortgage or other charge and the right to foreclose on the property subject to the mortgage or charge shall not be treated as accruing so long as that property comprises any future interest or any life insurance policy which has not matured or been determined.

(4) Nothing in this section shall apply to a foreclosure action in respect of mortgaged land, but the provisions of this Act relating to actions to recover land shall apply to such an action.

(5) Subject to subsections (6) and (7) below, no action to recover arrears of interest payable in respect of any sum of money secured by a mortgage or other charge or payable in respect of proceeds of the sale of land, or to recover damages in respect of such arrears shall be brought after the expiration of six years from the date on which the interest became due.

(6) Where—
    (a) a prior mortgagee or other incumbrancer has been in possession of the property charged ; and
    (b) an action is brought within one year of the discontinuance of that possession by the subsequent incumbrancer :

the subsequent incumbrancer may recover by that action all the arrears of interest which fell due during the period of possession by the prior incumbrancer or damages in respect of those arrears, notwithstanding that the period exceeded six years.

(7) Where—
    (a) the property subject to the mortgage or charge comprises any future interest or life insurance policy ; and
    (b) it is a term of the mortgage or charge that arrears of interest shall be treated as part of the principal sum of money secured by the mortgage or charge ;

interest shall not be treated as becoming due before the right to recover the principal sum of money has accrued or is treated as having accrued.

*Limitation Act 1980*　　　　**c. 58**　　　**11**

*Actions in respect of trust property or the personal estate*　　PART I
*of deceased persons*

**21.**—(1) No period of limitation prescribed by this Act shall Time limit
apply to an action by a beneficiary under a trust, being an for actions
action— in respect of
trust property.

- (*a*) in respect of any fraud or fraudulent breach of trust
to which the trustee was a party or privy ; or
- (*b*) to recover from the trustee trust property or the pro-
ceeds of trust property in the possession of the trustee,
or previously received by the trustee and converted to
his use.

(2) Where a trustee who is also a beneficiary under the trust
receives or retains trust property or its proceeds as his share
on a distribution of trust property under the trust, his liability
in any action brought by virtue of subsection (1)(*b*) above to
recover that property or its proceeds after the expiration of the
period of limitation prescribed by this Act for bringing an action
to recover trust property shall be limited to the excess over his
proper share.

This subsection only applies if the trustee acted honestly and
reasonably in making the distribution.

(3) Subject to the preceding provisions of this section, an
action by a beneficiary to recover trust property or in respect
of any breach of trust, not being an action for which a period
of limitation is prescribed by any other provision of this Act,
shall not be brought after the expiration of six years from the
date on which the right of action accrued.

For the purposes of this subsection, the right of action shall
not be treated as having accrued to any beneficiary entitled to
a future interest in the trust property until the interest fell into
possession.

(4) No beneficiary as against whom there would be a good
defence under this Act shall derive any greater or other benefit
from a judgment or order obtained by any other beneficiary
than he could have obtained if he had brought the action and
this Act had been pleaded in defence.

**22.** Subject to section 21(1) and (2) of this Act— Time limit
for actions
- (*a*) no action in respect of any claim to the personal estate claiming
of a deceased person or to any share or interest in any personal
such estate (whether under a will or on intestacy) shall estate of a
be brought after the expiration of twelve years from deceased
the date on which the right to receive the share or person.
interest accrued ; and

12        c. 58          *Limitation Act 1980*

(*b*) no action to recover arrears of interest in respect of any legacy, or damages in respect of such arrears, shall be brought after the expiration of six years from the date on which the interest became due.

### *Actions for an account*

Time limit in respect of actions for an account.

**23.** An action for an account shall not be brought after the expiration of any time limit under this Act which is applicable to the claim which is the basis of the duty to account.

### *Miscellaneous and supplemental*

Time limit for actions to enforce judgments.

**24.**—(1) An action shall not be brought upon any judgment after the expiration of six years from the date on which the judgment became enforceable.

(2) No arrears of interest in respect of any judgment debt shall be recovered after the expiration of six years from the date on which the interest became due.

Time limit for actions to enforce advowsons and extinction of title to advowsons.

**25.**—(1) No person shall bring an action to enforce a right to present to or bestow any ecclesiastical benefice as patron of that benefice after the expiration of whichever of the following periods last expires, that is to say—

(*a*) a period during which three clerks in succession have held the benefice adversely to the right of presentation or gift of the person in question (or of some person through whom he claims) ; or

(*b*) a period of sixty years during which the benefice has been held adversely to that right ;

and in no case after the expiration of a period of one hundred years during which the benefice has been held adversely to that right or to the right of some person entitled to a preceding estate or interest or an undivided share or alternate right of presentation or gift held or derived under the same title.

This subsection shall apply to the Crown or a bishop claiming a right to present to or bestow any ecclesiastical benefice as patron, but shall not affect the right of the Crown or a bishop to present or collate to any ecclesiastical benefice by reason of a lapse.

(2) Where any benefice becomes void after being held adversely to the right of presentation or gift of the patron of the benefice and a clerk is presented or collated to the benefice by Her Majesty or the ordinary—

(*a*) the possession of that clerk shall be treated as adverse ; but

*Limitation Act 1980*     c. 58     13

PART I

(b) where the benefice is avoided in consequence of the incumbent being made a bishop, the incumbency of the new clerk shall, for the purpose of subsection (1)(a) above, be treated as a continuation of the prior incumbency.

(3) Subject to section 75 of the Land Registration Act 1925, at the expiration of the period prescribed by this Act for any person to bring an action to enforce an advowson the title of that person to the advowson shall be extinguished.

1925 c. 21.

**26.** For the purposes of the provisions of this Act relating to actions for the recovery of land and advowsons an administrator of the estate of a deceased person shall be treated as claiming as if there had been no interval of time between the death of the deceased person and the grant of the letters of adminstration.

Administration to date back to death.

**27.**—(1) This section applies where—

Cure of defective disentailing assurance.

(a) a person entitled in remainder to an entailed interest in any land makes an assurance of his interest which fails to bar the issue in tail or the estates and interests taking effect on the determination of the entailed interest, or fails to bar those estates and interests only ; and

(b) any person takes possession of the land by virtue of the assurance.

(2) If the person taking possession of the land by virtue of the assurance, or any other person whatsoever (other than a person entitled to possession by virtue of the settlement) is in possession of the land for a period of twelve years from the commencement of the time when the assurance could have operated as an effective bar, the assurance shall thereupon operate, and be treated as having always operated, to bar the issue in tail and the estates and interests taking effect on the determination of the entailed interest.

(3) The reference in subsection (2) above to the time when the assurance could have operated as an effective bar is a reference to the time at which the assurance, if it had then been executed by the person entitled to the entailed interest, would have operated, without the consent of any other person, to bar the issue in tail and the estates and interests taking effect on the determination of the entailed interest.

14      c. 58      *Limitation Act 1980*

## Part II

### Extension or Exclusion of Ordinary Time Limits

#### *Disability*

Extension of limitation period in case of disability.

**28.**—(1) Subject to the following provisions of this section, if on the date when any right of action accrued for which a period of limitation is prescribed by this Act, the person to whom it accrued was under a disability, the action may be brought at any time before the expiration of six years from the date when he ceased to be under a disability or died (whichever first occurred) notwithstanding that the period of limitation has expired.

(2) This section shall not affect any case where the right of action first accrued to some person (not under a disability) through whom the person under a disability claims.

(3) When a right of action which has accrued to a person under a disability accrues, on the death of that person while still under a disability, to another person under a disability, no further extension of time shall be allowed by reason of the disability of the second person.

(4) No action to recover land or money charged on land shall be brought by virtue of this section by any person after the expiration of thirty years from the date on which the right of action accrued to that person or some person through whom he claims.

(5) If the action is one to which section 10 of this Act applies, subsection (1) above shall have effect as if for the words " six years " there were substituted the words " two years ".

(6) If the action is one to which section 11 or 12(2) of this Act applies, subsection (1) above shall have effect as if for the words " six years " there were substituted the words " three years ".

#### *Acknowledgment and part payment*

Fresh accrual of action on acknowledgment or part payment.

**29.**—(1) Subsections (2) and (3) below apply where any right of action (including a foreclosure action) to recover land or an advowson or any right of a mortgagee of personal property to bring a foreclosure action in respect of the property has accrued.

(2) If the person in possession of the land, benefice or personal property in question acknowledges the title of the person to whom the right of action has accrued—

    (*a*) the right shall be treated as having accrued on and not before the date of the acknowledgment ; and

*Limitation Act 1980*    c. **58**    15

(*b*) in the case of a right of action to recover land which
has accrued to a person entitled to an estate or interest
taking effect on the determination of an entailed
interest against whom time is running under section
27 of this Act, section 27 shall thereupon cease to
apply to the land.

(3) In the case of a foreclosure or other action by a mort-
gagee, if the person in possession of the land, benefice or personal
property in question or the person liable for the mortgage debt
makes any payment in respect of the debt (whether of principal
or interest) the right shall be treated as having accrued on and
not before the date of the payment.

(4) Where a mortgagee is by virtue of the mortgage in posses-
sion of any mortgaged land and either—

(*a*) receives any sum in respect of the principal or interest
of the mortgage debt ; or

(*b*) acknowledges the title of the mortgagor, or his equity
of redemption ;

an action to redeem the land in his possession may be brought
at any time before the expiration of twelve years from the date
of the payment or acknowledgment.

(5) Subject to subsection (6) below, where any right of action
has accrued to recover—

(*a*) any debt or other liquidated pecuniary claim ; or

(*b*) any claim to the personal estate of a deceased person or
to any share or interest in any such estate ;

and the person liable or accountable for the claim acknowledges
the claim or makes any payment in respect of it the right shall
be treated as having accrued on and not before the date of the
acknowledgment or payment.

(6) A payment of a part of the rent or interest due at any time
shall not extend the period for claiming the remainder then due,
but any payment of interest shall be treated as a payment in
respect of the principal debt.

(7) Subject to subsection (6) above, a current period of
limitation may be repeatedly extended under this section by
further acknowledgments or payments, but a right of action, once
barred by this Act, shall not be revived by any subsequent
acknowledgment or payment.

16        c. **58**                    *Limitation Act 1980*

PART II
Formal
provisions as to
acknowledg-
ments and
part payments.

**30.**—(1) To be effective for the purposes of section 29 of this Act, an acknowledgment must be in writing and signed by the person making it.

(2) For the purposes of section 29, any acknowledgment or payment—

(a) may be made by the agent of the person by whom it is required to be made under that section ; and

(b) shall be made to the person, or to an agent of the person, whose title or claim is being acknowledged or, as the case may be, in respect of whose claim the payment is being made.

Effect of
acknowledg-
ment or part
payment on
persons other
than the
maker or
recipient.

**31.**—(1) An acknowledgment of the title to any land, benefice, or mortgaged personalty by any person in possession of it shall bind all other persons in possession during the ensuing period of limitation.

(2) A payment in respect of a mortgage debt by the mortgagor or any other person liable for the debt, or by any person in possession of the mortgaged property, shall, so far as any right of the mortgagee to foreclose or otherwise to recover the property is concerned, bind all other persons in possession of the mortgaged property during the ensuing period of limitation.

(3) Where two or more mortgagees are by virtue of the mortgage in possession of the mortgaged land, an acknowledgment of the mortgagor's title or of his equity of redemption by one of the mortgagees shall only bind him and his successors and shall not bind any other mortgagee or his successors.

(4) Where in a case within subsection (3) above the mortgagee by whom the acknowledgment is given is entitled to a part of the mortgaged land and not to any ascertained part of the mortgage debt the mortgagor shall be entitled to redeem that part of the land on payment, with interest, of the part of the mortgage debt which bears the same proportion to the whole of the debt as the value of the part of the land bears to the whole of the mortgaged land.

(5) Where there are two or more mortgagors, and the title or equity of redemption of one of the mortgagors is acknowledged as mentioned above in this section, the acknowledgment shall be treated as having been made to all the mortgagors.

(6) An acknowledgment of any debt or other liquidated pecuniary claim shall bind the acknowledgor and his successors but not any other person.

(7) A payment made in respect of any debt or other liquidated pecuniary claim shall bind all persons liable in respect of the debt or claim.

*Limitation Act 1980*    c. **58**    17

(8) An acknowledgment by one of several personal representa-    PART II
tives of any claim to the personal estate of a deceased person or
to any share or interest in any such estate, or a payment by one
of several personal representatives in respect of any such claim,
shall bind the estate of the deceased person.

(9) In this section " successor ", in relation to any mortgagee
or person liable in respect of any debt or claim, means his
personal representatives and any other person on whom the
rights under the mortgage or, as the case may be, the liability
in respect of the debt or claim devolve (whether on death or
bankruptcy or the disposition of property or the determination of
a limited estate or interest in settled property or otherwise).

### *Fraud, concealment and mistake*

**32.**—(1) Subject to subsection (3) below, where in the case of Postponement
any action for which a period of limitation is prescribed by this of limitation
Act, either—                                                      period in case
                                                                  of fraud,
(a) the action is based upon the fraud of the defendant ; or concealment
(b) any fact relevant to the plaintiff's right of action has or mistake.
    been deliberately concealed from him by the defendant ;
    or
(c) the action is for relief from the consequences of a
    mistake ;

the period of limitation shall not begin to run until the plaintiff
has discovered the fraud, concealment or mistake (as the case
may be) or could with reasonable diligence have discovered it.

References in this subsection to the defendant include refer-
ences to the defendant's agent and to any person through whom
the defendant claims and his agent.

(2) For the purposes of subsection (1) above, deliberate com-
mission of a breach of duty in circumstances in which it is
unlikely to be discovered for some time amounts to deliberate
concealment of the facts involved in that breach of duty.

(3) Nothing in this section shall enable any action—
(a) to recover, or recover the value of, any property ; or
(b) to enforce any charge against, or set aside any transac-
    tion affecting, any property ;

to be brought against the purchaser of the property or any person
claiming through him in any case where the property has been
purchased for valuable consideration by an innocent third party
since the fraud or concealment or (as the case may be) the
transaction in which the mistake was made took place.

18    c. 58    *Limitation Act 1980*

PART II    (4) A purchaser is an innocent third party for the purposes
of this section—

(a) in the case of fraud or concealment of any fact relevant
to the plaintiff's right of action, if he was not a party
to the fraud or (as the case may be) to the concealment
of that fact and did not at the time of the purchase
know or have reason to believe that the fraud or con-
cealment had taken place ; and

(b) in the case of mistake, if he did not at the time of the
purchase know or have reason to believe that the mis-
take had been made.

*Discretionary exclusion of time limit for actions in
respect of personal injuries or death*

Discretionary
exclusion of
time limit for
actions in
respect of
personal
injuries or
death.

**33.**—(1) If it appears to the court that it would be equitable
to allow an action to proceed having regard to the degree to
which—

(a) the provisions of section 11 or 12 of this Act prejudice
the plaintiff or any person whom he represents ; and

(b) any decision of the court under this subsection would
prejudice the defendant or any person whom he repre-
sents ;

the court may direct that those provisions shall not apply to the
action, or shall not apply to any specified cause of action to
which the action relates.

(2) The court shall not under this section disapply section
12(1) except where the reason why the person injured could no
longer maintain an action was because of the time limit in
section 11.

1976 c. 30.

1961 c. 27.

If, for example, the person injured could at his death no
longer maintain an action under the Fatal Accidents Act 1976
because of the time limit in Article 29 in Schedule 1 to the
Carriage by Air Act 1961, the court has no power to direct that
section 12(1) shall not apply.

(3) In acting under this section the court shall have regard
to all the circumstances of the case and in particular to—

(a) the length of, and the reasons for, the delay on the part
of the plaintiff ;

(b) the extent to which, having regard to the delay, the evi-
dence adduced or likely to be adduced by the plaintiff
or the defendant is or is likely to be less cogent than if
the action had been brought within the time allowed
by section 11 or (as the case may be) by section 12 ;

*Limitation Act 1980*    **c. 58**    19

  (c) the conduct of the defendant after the cause of action arose, including the extent (if any) to which he responded to requests reasonably made by the plaintiff for information or inspection for the purpose of ascertaining facts which were or might be relevant to the plaintiff's cause of action against the defendant;

  (d) the duration of any disability of the plaintiff arising after the date of the accrual of the cause of action;

  (e) the extent to which the plaintiff acted promptly and reasonably once he knew whether or not the act or omission of the defendant, to which the injury was attributable, might be capable at that time of giving rise to an action for damages;

  (f) the steps, if any, taken by the plaintiff to obtain medical, legal or other expert advice and the nature of any such advice he may have received.

(4) In a case where the person injured died when, because of section 11, he could no longer maintain an action and recover damages in respect of the injury, the court shall have regard in particular to the length of, and the reasons for, the delay on the part of the deceased.

(5) In a case under subsection (4) above, or any other case where the time limit, or one of the time limits, depends on the date of knowledge of a person other than the plaintiff, subsection (3) above shall have effect with appropriate modifications, and shall have effect in particular as if references to the plaintiff included references to any person whose date of knowledge is or was relevant in determining a time limit.

(6) A direction by the court disapplying the provisions of section 12(1) shall operate to disapply the provisions to the same effect in section 1(1) of the Fatal Accidents Act 1976.    1976 c. 30.

(7) In this section "the court" means the court in which the action has been brought.

(8) References in this section to section 11 include references to that section as extended by any of the preceding provisions of this Part of this Act or by any provision of Part III of this Act

## PART III

### MISCELLANEOUS AND GENERAL

**34.**—(1) This Act and any other limitation enactment shall apply to arbitrations as they apply to actions in the High Court.    Application of Act and other

(2) Notwithstanding any term in an arbitration agreement to the effect that no cause of action shall accrue in respect of any matter required by the agreement to be referred until an award    limitation enactments to arbitrations.

20        c. 58              *Limitation Act 1980*

PART III  is made under the agreement, the cause of action shall, for the purposes of this Act and any other limitation enactment (whether in their application to arbitrations or to other proceedings), be deemed to have accrued in respect of any such matter at the time when it would have accrued but for that term in the agreement.

(3) For the purposes of this Act and of any other limitation enactment an arbitration shall be treated as being commenced—

(a) when one party to the arbitration serves on the other party or parties a notice requiring him or them to appoint an arbitrator or to agree to the appointment of an arbitrator ; or

(b) where the arbitration agreement provides that the reference shall be to a person named or designated in the agreement, when one party to the arbitration serves on the other party or parties a notice requiring him or them to submit the dispute to the person so named or designated.

(4) Any such notice may be served either—

(a) by delivering it to the person on whom it is to be served ; or

(b) by leaving it at the usual or last-known place of abode in England and Wales of that person ; or

(c) by sending it by post in a registered letter addressed to that person at his usual or last-known place of abode in England and Wales ;

as well as in any other manner provided in the arbitration agreement.

(5) Where the High Court—

(a) orders that an award be set aside ; or

(b) orders, after the commencement of an arbitration, that the arbitration agreement shall cease to have effect with respect to the dispute referred ;

the court may further order that the period between the commencement of the arbitration and the date of the order of the court shall be excluded in computing the time prescribed by this Act or by any other limitation enactment for the commencement of proceedings (including arbitration) with respect to the dispute referred.

(6) This section shall apply to an arbitration under an Act of Parliament as well as to an arbitration pursuant to an arbitration agreement.

Subsections (3) and (4) above shall have effect, in relation to an arbitration under an Act, as if for the references to the

*Limitation Act 1980*          c. 58          21

arbitration agreement there were substituted references to such PART III
of the provisions of the Act or of any order, scheme, rules,
regulations or byelaws made under the Act as relate to the
arbitration.

(7) In this section—

   (*a*) " arbitration ", " arbitration agreement " and " award "
      have the same meanings as in Part I of the Arbitration 1950 c. 27.
      Act 1950 ; and

   (*b*) references to any other limitation enactment are refer-
      ences to any other enactment relating to the limitation
      of actions, whether passed before or after the passing
      of this Act.

**35.**—(1) For the purposes of this Act, any new claim made New claims in
in the course of any action shall be deemed to be a separate pending
action and to have been commenced— actions: rules of court.

   (*a*) in the case of a new claim made in or by way of third
      party proceedings, on the date on which those pro-
      ceedings were commenced ; and

   (*b*) in the case of any other new claim, on the same date
      as the original action.

(2) In this section a new claim means any claim by way of
set-off or counterclaim, and any claim involving either—

   (*a*) the addition or substitution of a new cause of action ; or

   (*b*) the addition or substitution of a new party ;

and " third party proceedings " means any proceedings brought
in the course of any action by any party to the action against
a person not previously a party to the action, other than pro-
ceedings brought by joining any such person as defendant to any
claim already made in the original action by the party bringing
the proceedings.

(3) Except as provided by section 33 of this Act or by rules
of court, neither the High Court nor any county court shall
allow a new claim within subsection (1)(*b*) above, other than an
original set-off or counterclaim, to be made in the course of any
action after the expiry of any time limit under this Act which
would affect a new action to enforce that claim.

For the purposes of this subsection, a claim is an original set-
off or an original counterclaim if it is a claim made by way of
set-off or (as the case may be) by way of counterclaim by a party
who has not previously made any claim in the action.

22          c. 58          *Limitation Act 1980*

PART III    (4) Rules of court may provide for allowing a new claim to which subsection (3) above applies to be made as there mentioned, but only if the conditions specified in subsection (5) below are satisfied, and subject to any further restrictions the rules may impose.

(5) The conditions referred to in subsection (4) above are the following—

(*a*) in the case of a claim involving a new cause of action, if the new cause of action arises out of the same facts or substantially the same facts as are already in issue on any claim previously made in the original action ; and

(*b*) in the case of a claim involving a new party, if the addition or substitution of the new party is necessary for the determination of the original action.

(6) The addition or substitution of a new party shall not be regarded for the purposes of subsection (5)(*b*) above as necessary for the determination of the original action unless either—

(*a*) the new party is substituted for a party whose name was given in any claim made in the original action in mistake for the new party's name ; or

(*b*) any claim already made in the original action cannot be maintained by or against an existing party unless the new party is joined or substituted as plaintiff or defendant in that action.

(7) Subject to subsection (4) above, rules of court may provide for allowing a party to any action to claim relief in a new capacity in respect of a new cause of action notwithstanding that he had no title to make that claim at the date of the commencement of the action.

This subsection shall not be taken as prejudicing the power of rules of court to provide for allowing a party to claim relief in a new capacity without adding or substituting a new cause of action.

(8) Subsections (3) to (7) above shall apply in relation to a new claim made in the course of third party proceedings as if those proceedings were the original action, and subject to such other modifications as may be prescribed by rules of court in any case or class of case.

1925 c. 49.    (9) In this section " rules of court " means rules made under
1959 c. 22.    section 99 of the Supreme Court of Judicature (Consolidation) Act 1925 or section 102 of the County Courts Act 1959 (as the case may require).

*Limitation Act 1980*        c. **58**        23

**36.**—(1) The following time limits under this Act, that is to say—

(a) the time limit under section 2 for actions founded on tort;

(b) the time limit under section 5 for actions founded on simple contract;

(c) the time limit under section 7 for actions to enforce awards where the submission is not by an instrument under seal;

(d) the time limit under section 8 for actions on a specialty;

(e) the time limit under section 9 for actions to recover a sum recoverable by virtue of any enactment; and

(f) the time limit under section 24 for actions to enforce a judgment;

shall not apply to any claim for specific performance of a contract or for an injunction or for other equitable relief, except in so far as any such time limit may be applied by the court by analogy in like manner as the corresponding time limit under any enactment repealed by the Limitation Act 1939 was applied before 1st July 1940.

PART III
Equitable jurisdiction and remedies.

1939 c. 21.

(2) Nothing in this Act shall affect any equitable jurisdiction to refuse relief on the ground of acquiescence or otherwise.

**37.**—(1) Except as otherwise expressly provided in this Act, and without prejudice to section 39, this Act shall apply to proceedings by or against the Crown in like manner as it applies to proceedings between subjects.

Application to the Crown and the Duke of Cornwall.

(2) Notwithstanding subsection (1) above, this Act shall not apply to—

(a) any proceedings by the Crown for the recovery of any tax or duty or interest on any tax or duty;

(b) any forfeiture proceedings under the customs and excise Acts (within the meaning of the Customs and Excise Management Act 1979); or

1979 c. 2.

(c) any proceedings in respect of the forfeiture of a ship.

In this subsection " duty " includes any debt due to Her Majesty under section 16 of the Tithe Act 1936, and " ship " includes every description of vessel used in navigation not propelled by oars.

1936 c. 43.

(3) For the purposes of this section, proceedings by or against the Crown include—

(a) proceedings by or against Her Majesty in right of the Duchy of Lancaster;

24        c. 58                *Limitation Act 1980*

PART III            (b) proceedings by or against any Government department
                        or any officer of the Crown as such or any person
                        acting on behalf of the Crown ; and

                    (c) proceedings by or against the Duke of Cornwall.

(4) For the purpose of the provisions of this Act relating to
actions for the recovery of land and advowsons, references to
the Crown shall include references to Her Majesty in right of
the Duchy of Lancaster ; and those provisions shall apply to
lands and advowsons forming part of the possessions of the
Duchy of Cornwall as if for the references to the Crown there
were substituted references to the Duke of Cornwall as defined
1863 c. 49.    in the Duchy of Cornwall Management Act 1863.

(5) For the purposes of this Act a proceeding by petition
of right (in any case where any such proceeding lies, by virtue
1947 c. 44.    of any saving in section 40 of the Crown Proceedings Act 1947,
notwithstanding the general abolition by that Act of proceed-
ings by way of petition of right) shall be treated as being com-
menced on the date on which the petition is presented.

(6) Nothing in this Act shall affect the prerogative right of Her
Majesty (whether in right of the Crown or of the Duchy of
Lancaster) or of the Duke of Cornwall to any gold or silver mine.

Interpretation.    **38.**—(1) In this Act, unless the context otherwise requires—
            " action " includes any proceeding in a court of law,
                including an ecclesiastical court ;
            " land " includes corporeal hereditaments, tithes and rent-
                charges and any legal or equitable estate or interest
                therein, including an interest in the proceeds of the
                sale of land held upon trust for sale, but except as
                provided above in this definition does not include any
                incorporeal hereditament ;
            " personal estate " and " personal property " do not include
                chattels real ;
            " personal injuries " includes any disease and any impair-
                ment of a person's physical or mental condition, and
                " injury " and cognate expressions shall be construed
                accordingly ;
            " rent " includes a rentcharge and a rentservice ;
            " rentcharge " means any annuity or periodical sum of
                money charged upon or payable out of land, except a
                rent service or interest on a mortgage on land ;
            " settled land ", " statutory owner " and " tenant for life "
1925 c. 18.        have the same meanings respectively as in the Settled
                Land Act 1925 ;
            " trust " and " trustee " have the same meanings respectively
1925 c. 19.        as in the Trustee Act 1925 ; and

" trust for sale " has the same meaning as in the Law of
Property Act 1925.

PART III
1925 c. 20.

(2) For the purposes of this Act a person shall be treated as
under a disability while he is an infant, or of unsound mind.

(3) For the purposes of subsection (2) above a person is of
unsound mind if he is a person who, by reason of mental dis-
order within the meaning of the Mental Health Act 1959, is
incapable of managing and administering his property and
affairs.

1959 c. 72.

(4) Without prejudice to the generality of subsection (3) above,
a person shall be conclusively presumed for the purposes of
subsection (2) above to be of unsound mind—

    (*a*) while he is liable to be detained or subject to guardian-
        ship under the Mental Health Act 1959 ; and

    (*b*) while he is receiving treatment as an in-patient in any
        hospital or mental nursing home within the meaning
        of that Act without being liable to be detained under
        that Act, being treatment which follows without any
        interval a period during which he was liable to be
        detained or subject to guardianship under that Act
        or by virtue of any enactment repealed or excluded by
        that Act.

(5) Subject to subsection (6) below, a person shall be treated
as claiming through another person if he became entitled by,
through, under, or by the act of that other person to the right
claimed, and any person whose estate or interest might have been
barred by a person entitled to an entailed interest in possession
shall be treated as claiming through the person so entitled.

(6) A person becoming entitled to any estate or interest by
virtue of a special power of appointment shall not be treated
as claiming through the appointor.

(7) References in this Act to a right of action to recover land
shall include references to a right to enter into possession of the
land or, in the case of rentcharges and tithes, to distrain for
arrears of rent or tithe, and references to the bringing of such an
action shall include references to the making of such an entry
or distress.

(8) References in this Act to the possession of land shall, in
the case of tithes and rentcharges, be construed as references
to the receipt of the tithe or rent, and references to the date of
dispossession or discontinuance of possession of land shall,
in the case of rent charges, be construed as references to the
date of the last receipt of rent.

26        c. **58**        *Limitation Act 1980*

PART III

(9) References in Part II of this Act to a right of action shall include references to—

(a) a cause of action ;

(b) a right to receive money secured by a mortgage or charge on any property ;

(c) a right to recover proceeds of the sale of land ; and

(d) a right to receive a share or interest in the personal estate of a deceased person.

(10) References in Part II to the date of the accrual of a right of action shall be construed—

(a) in the case of an action upon a judgment, as references to the date on which the judgment became enforceable ; and

(b) in the case of an action to recover arrears of rent or interest, or damages in respect of arrears of rent or interest, as references to the date on which the rent or interest became due.

Saving for other limitation enactments.

**39.** This Act shall not apply to any action or arbitration for which a period of limitation is prescribed by or under any other enactment (whether passed before or after the passing of this Act) or to any action or arbitration to which the Crown is a party and for which, if it were between subjects, a period of limitation would be prescribed by or under any such other enactment.

Transitional provisions, amendments and repeals.

**40.**—(1) Schedule 2 to this Act, which contains transitional provisions, shall have effect.

(2) The enactments specified in Schedule 3 to this Act shall have effect subject to the amendments specified in that Schedule, being amendments consequential on the provisions of this Act ; but the amendment of any enactment by that Schedule shall not be taken as prejudicing the operation of section 17(2) of the Interpretation Act 1978 (effect of repeals).

1978 c. 30.

(3) The enactments specified in Schedule 4 to this Act are hereby repealed to the extent specified in column 3 of that Schedule.

Short title, commencement and extent.

**41.**—(1) This Act may be cited as the Limitation Act 1980.

(2) This Act, except section 35, shall come into force on 1st May 1981.

(3) Section 35 of this Act shall come into force on 1st May 1981 to the extent (if any) that the section substituted for section

*Limitation Act 1980*                    c. **58**            27

28 of the Limitation Act 1939 by section 8 of the Limitation
Amendment Act 1980 is in force immediately before that date ;
but otherwise section 35 shall come into force on such day as the
Lord Chancellor may by order made by statutory instrument ap-
point, and different days may be appointed for different purposes
of that section (including its application in relation to different
courts or proceedings). <span style="float:right">PART III<br>1980 c. 24.</span>

(4) The repeal by this Act of section 14(1) of the Limitation
Act 1963 and the corresponding saving in paragraph 2 of
Schedule 2 to this Act shall extend to Northern Ireland, but
otherwise this Act does not extend to Scotland or to Northern
Ireland. <span style="float:right">1963 c. 47</span>

28      c. 58            *Limitation Act 1980*

# SCHEDULES

Section 15(6),(7).

## SCHEDULE 1

### Provisions with Respect to Actions to Recover Land

#### Part I

##### Accrual of Rights of Action to Recover Land

*Accrual of right of action in case of present interests in land*

1. Where the person bringing an action to recover land, or some person through whom he claims, has been in possession of the land, and has while entitled to the land been dispossessed or discontinued his possession, the right of action shall be treated as having accrued on the date of the dispossession or discontinuance.

2. Where any person brings an action to recover any land of a deceased person (whether under a will or on intestacy) and the deceased person—

    (*a*) was on the date of his death in possession of the land or, in the case of a rentcharge created by will or taking effect upon his death, in possession of the land charged ; and

    (*b*) was the last person entitled to the land to be in possession of it ;

the right of action shall be treated as having accrued on the date of his death.

3. Where any person brings an action to recover land, being an estate or interest in possession assured otherwise than by will to him, or to some person through whom he claims, and—

    (*a*) the person making the assurance was on the date when the assurance took effect in possession of the land or, in the case of a rentcharge created by the assurance, in possession of the land charged ; and

    (*b*) no person has been in possession of the land by virtue of the assurance ;

the right of action shall be treated as having accrued on the date when the assurance took effect.

*Accrual of right of action in case of future interests*

4. The right of action to recover any land shall, in a case where—

    (*a*) the estate or interest claimed was an estate or interest in reversion or remainder or any other future estate or interest ; and

    (*b*) no person has taken possession of the land by virtue of the estate or interest claimed ;

be treated as having accrued on the date on which the estate or interest fell into possession by the determination of the preceding estate or interest.

*Limitation Act 1980*    **c. 58**    29

5.—(1) Subject to sub-paragraph (2) below, a tenancy from year to year or other period, without a lease in writing, shall for the purposes of this Act be treated as being determined at the expiration of the first year or other period ; and accordingly the right of action of the person entitled to the land subject to the tenancy shall be treated as having accrued at the date on which in accordance with this sub-paragraph the tenancy is determined.

(2) Where any rent has subsequently been received in respect of the tenancy, the right of action shall be treated as having accrued on the date of the last receipt of rent.

6.—(1) Where—

(a) any person is in possession of land by virtue of a lease in writing by which a rent of not less than ten pounds a year is reserved ; and

(b) the rent is received by some person wrongfully claiming to be entitled to the land in reversion immediately expectant on the determination of the lease ; and

(c) no rent is subsequently received by the person rightfully so entitled ;

the right of action to recover the land of the person rightfully so entitled shall be treated as having accrued on the date when the rent was first received by the person wrongfully claiming to be so entitled and not on the date of the determination of the lease.

(2) Sub-paragraph (1) above shall not apply to any lease granted by the Crown.

### Accrual of right of action in case of forfeiture or breach of condition

7.—(1) Subject to sub-paragraph (2) below, a right of action to recover land by virtue of a forfeiture or breach of condition shall be treated as having accrued on the date on which the forfeiture was incurred or the condition broken.

(2) If any such right has accrued to a person entitled to an estate or interest in reversion or remainder and the land was not recovered by virtue of that right, the right of action to recover the land shall not be treated as having accrued to that person until his estate or interest fell into possession, as if no such forfeiture or breach of condition had occurred.

### Right of action not to accrue or continue unless there is adverse possession

8.—(1) No right of action to recover land shall be treated as accruing unless the land is in the possession of some person in whose favour the period of limitation can run (referred to below in this paragraph as " adverse possession ") ; and where under the preceding provisions of this Schedule any such right of action is treated as

30          c. 58          *Limitation Act 1980*

Sch. 1    accruing on a certain date and no person is in adverse possession on
that date, the right of action shall not be treated as accruing unless
and until adverse possession is taken of the land.

(2) Where a right of action to recover land has accrued and after
its accrual, before the right is barred, the land ceases to be in
adverse possession, the right of action shall no longer be treated as
having accrued and no fresh right of action shall be treated as
accruing unless and until the land is again taken into adverse
possession.

(3) For the purposes of this paragraph—

(*a*) possession of any land subject to a rentcharge by a person
(other than the person entitled to the rentcharge) who does
not pay the rent shall be treated as adverse possession of
the rentcharge ; and

(*b*) receipt of rent under a lease by a person wrongfully claiming
to be entitled to the land in reversion immediately expec-
tant on the determination of the lease shall be treated as
adverse possession of the land.

(4) For the purpose of determining whether a person occupying any
land is in adverse possession of the land it shall not be assumed
by implication of law that his occupation is by permission of the
person entitled to the land merely by virtue of the fact that his
occupation is not inconsistent with the latter's present or future
enjoyment of the land.

This provision shall not be taken as prejudicing a finding to the
effect that a person's occupation of any land is by implied permis-
sion of the person entitled to the land in any case where such a
finding is justified on the actual facts of the case.

### *Possession of beneficiary not adverse to others interested in settled land or land held on trust for sale*

9. Where any settled land or any land held on trust for sale is
in the possession of a person entitled to a beneficial interest in the
land or in the proceeds of sale (not being a person solely or abso-
lutely entitled to the land or the proceeds), no right of action to
recover the land shall be treated for the purposes of this Act as
accruing during that possession to any person in whom the land is
vested as tenant for life, statutory owner or trustee, or to any other
person entitled to a beneficial interest in the land or the proceeds
of sale.

## Part II

### Modifications of Section 15 where Crown or Certain Corporations Sole are involved

10. Subject to paragraph 11 below, section 15(1) of this Act shall
apply to the bringing of an action to recover any land by the Crown
or by any spiritual or eleemosynary corporation sole with the sub-
stitution for the reference to twelve years of a reference to thirty
years.

*Limitation Act 1980*            **c. 58**            31

11.—(1) An action to recover foreshore may be brought by the SCH. 1
Crown at any time before the expiration of sixty years from the date
mentioned in section 15(1) of this Act.

(2) Where any right of action to recover land which has ceased
to be foreshore but remains in the ownership of the Crown accrued
when the land was foreshore, the action may be brought at any time
before the expiration of—

    (a) sixty years from the date of accrual of the right of action ;
       or

    (b) thirty years from the date when the land ceased to be fore-
       shore ;

whichever period first expires.

(3) In this paragraph " foreshore " means the shore and bed of the
sea and of any tidal water, below the line of the medium high tide
between the spring tides and the neap tides.

12. Notwithstanding section 15(1) of this Act, where in the case of
any action brought by a person other than the Crown or a spiritual
or eleemosynary corporation sole the right of action first accrued to
the Crown or any such corporation sole through whom the person
in question claims, the action may be brought at any time before
the expiration of—

    (a) the period during which the action could have been brought
       by the Crown or the corporation sole ; or

    (b) twelve years from the date on which the right of action
       accrued to some person other than the Crown or the cor-
       poration sole ;

whichever period first expires.

13. Section 15(2) of this Act shall apply in any case where the
Crown or a spiritual or eleemosynary corporation sole is entitled to
the succeeding estate or interest with the substitution—

    (a) for the reference to twelve years of a reference to thirty
       years ; and

    (b) for the reference to six years of a reference to twelve years.

## SCHEDULE 2

Section 40(1).

### TRANSITIONAL PROVISIONS

1. Nothing in this Act shall affect the operation of section 4 of the
Limitation Act 1963, as it had effect immediately before 1 January 1963 c. 47.
1979 (being the date on which the Civil Liability (Contribution) Act 1978 c. 47.
1978 came in to force), in relation to any case where the damage in
question occurred before that date.

2. The amendment made by section 14(1) of the Limitation Act
1963 in section 5 of the Limitation (Enemies and War Prisoners) Act 1945 c. 16.
1945 (which provides that section 5 shall have effect as if for the
words " in force in Northern Ireland at the date of the passing of this

32        c. **58**        *Limitation Act 1980*

Sch. 2

Act" there were substituted the words "for the time being in force in Northern Ireland") shall continue to have effect notwithstanding the repeal by this Act of section 14(1).

1963 c. 47.

1975 c. 54.

3. It is hereby declared that a decision taken at any time by a court to grant, or not to grant, leave under Part I of the Limitation Act 1963 (which, so far as it related to leave, was repealed by the Limitation Act 1975) does not affect the determination of any question in proceedings under any provision of this Act which corresponds to a provision of the Limitation Act 1975, but in such proceedings account may be taken of evidence admitted in proceedings under Part I of the Limitation Act 1963.

1976 c. 30.

1846 c. 93.

4.—(1) In section 33(6) of this Act the reference to section 1 (1) of the Fatal Accidents Act 1976 shall be construed as including a reference to section 1 of the Fatal Accidents Act 1846.

(2) Any other reference in that section, or in section 12 or 13 of this Act, to the Fatal Accidents Act 1976 shall be construed as including a reference to the Fatal Accidents Act 1846.

1939 c. 21.

1980 c. 24.

5. Notwithstanding anything in section 29(7) of this Act or in the repeals made by this Act, the Limitation Act 1939 shall continue to have effect in relation to any acknowledgment or payment made before the coming into force of section 6 of the Limitation Amendment Act 1980 (which amended section 23 of the Limitation Act 1939 and made certain repeals in sections 23 and 25 of that Act so as to prevent the revival by acknowledgment or part payment of a right of action barred by that Act) as it had effect immediately before section 6 came into force.

6. Section 28 of the Limitation Act 1939 (provisions as to set-off or counterclaim) shall continue to apply (as originally enacted) to any claim by way of set-off or counterclaim made in an action to which section 35 of this Act does not apply, but as if the reference in section 28 to that Act were a reference to this Act ; and, in relation to any such action, references in this Act to section 35 of this Act shall be construed as references to section 28 as it applies by virtue of this paragraph.

1968 c. 59.

7. Section 37(2)(c) of this Act shall be treated for the purposes of the Hovercraft Act 1968 as if it were contained in an Act passed before that Act.

8. In relation to a lease granted before the coming into force of section 3 (2) of the Limitation Amendment Act 1980 (which substituted "ten pounds a year" for "twenty shillings" in section 9(3) of the Limitation Act 1939), paragraph 6(1)(a) of Schedule 1 to this Act shall have effect as if for the words "ten pounds a year" there were substituted the words "twenty shillings".

9.—(1) Nothing in any provision of this Act shall—

   (a) enable any action to be brought which was barred by this Act or (as the case may be) by the Limitation Act 1939 before the relevant date ; or

   (b) affect any action or arbitration commenced before that date or the title to any property which is the subject of any such action or arbitration.

*Limitation Act 1980*   c. **58**   33

(2) In sub-paragraph (1) above " the relevant date " means—   Sᴄʜ. 2

   (*a*) in relation to section 35 of this Act, the date on which that
section comes into force in relation to actions of the
description in question or, if section 8 of the Limitation 1980 c. 24.
Amendment Act 1980 (which substituted the provisions
reproduced in section 35 for section 28 of the Limitation
Act 1939) is in force immediately before 1st May 1981 in
relation to actions of that description, the date on which
section 8 came into force in relation to actions of that des-
cription ; and

   (*b*) in relation to any other provision of this Act, 1st August
1980 (being the date of coming into force of the remaining
provisions of the Limitation Amendment Act 1980, apart
from section 8).

### SCHEDULE 3

Section 40(2).

#### Cᴏɴsᴇǫᴜᴇɴᴛɪᴀʟ Aᴍᴇɴᴅᴍᴇɴᴛs

1. In section 83 of the Land Registration Act 1925 (right to 1925 c. 21.
indemnity in case of errors in and rectifications of the register),
in subsection (11) (accrual of cause of action in respect of a right to
indemnity), for the words " the Limitation Act 1623 " there shall
be substituted the words " the Limitation Act 1980 ".

2. In section 21A of the Administration of Estates Act 1925 1925 c. 23.
(debtor who becomes creditor's executor by representation or admini-
strator to account for debt to estate) the reference in subsection (2)
to the Limitation Act 1939 shall be construed as including a
reference to this Act.

3. In section 2(1) of the Limitation (Enemies and War Prisoners) 1945 c. 16.
Act 1945 (interpretation), for the words " the Limitation Act 1939 "
in the definition of " statute of limitation " there shall be substituted
the words " the Limitation Act 1980 ".

4. In section 3(4) of the Charitable Trusts (Validation) Act 1954 1954 c. 58.
(application of section 31(2) to (4) of the Limitation Act 1939 for
purposes of that section), for the words " Subsections (2) to (4) of
section thirty-one of the Limitation Act 1939 " there shall be
substituted the words " Subsections (2) to (6) of section thirty-eight
of the Limitation Act 1980 ".

5. In section 5(3) of the Carriage by Air Act 1961 (application of 1961 c. 27.
time limit in that Act to arbitrations), for the words " section twenty-
seven of the Limitation Act 1939 " there shall be substituted the
words " section thirty-four of the Limitation Act 1980 ".

6. In section 7(2)(*a*) of the Carriage of Goods by Road Act 1965 1965 c. 37.
(application of time limit in that Act to arbitrations), for the words
" section 27 of the Limitation Act 1939 " there shall be substituted
the words " section 34 of the Limitation Act 1980 ".

7. In paragraph 7(6) of Schedule 3 to the Agriculture Act 1967 1967 c. 22.
(conditions applying to amalgamated agricultural units) for the words
" the Limitation Act 1939 " there shall be substituted the words
" the Limitation Act 1980 ".

34          c. 58          *Limitation Act 1980*

<table>
<tr><td>Sch. 3<br>1969 c. 10.</td><td>8. In paragraph 6(2) of Schedule 3 to the Mines and Quarries (Tips) Act 1969 (time limits for claims for compensation under that Act to be treated as if contained in Part I of the Limitation Act 1939), for the words " the Limitation Act 1939 " there shall be substituted the words " the Limitation Act 1980 ".</td></tr>
<tr><td>1969 c. 59.</td><td>9. In section 25(5) of the Law of Property Act 1969 (accrual of cause of action to recover compensation for loss due to undisclosed land charges), for the words " the Limitation Act 1939 " there shall be substituted the words " the Limitation Act 1980 ".</td></tr>
<tr><td>1971 c. 22.</td><td>10. In section 10 of the Animals Act 1971 (application of certain enactments to liability under sections 2 to 4 of that Act) for the words " the Limitation Acts 1939 to 1963 " there shall be substituted the words " the Limitation Act 1980 ".</td></tr>
<tr><td>1972 c. 21.</td><td>11. In section 2(4) of the Deposit of Poisonous Waste Act 1972 (civil liability under that Act) for the words from " the Limitation Acts 1939 and 1963 " to " 1954 " there shall be substituted the words " the Limitation Act 1980 ".</td></tr>
<tr><td>1974 c. 40.</td><td>12. In section 88(4) of the Control of Pollution Act 1974 (civil liability under that Act) for paragraph (c) there shall be substituted the following paragraph—<br>" (c) the Limitation Act 1980 ".</td></tr>
</table>

Section 40(3).

## SCHEDULE 4
### ENACTMENTS REPEALED

| Chapter | Short title | Extent of Repeal |
|---|---|---|
| 2 & 3 Geo. 6 c. 21. | The Limitation Act 1939. | The whole Act. |
| 7 & 8 Eliz. 2 c. 72. | The Mental Health Act 1959. | In Schedule 7, Part I, the entry relating to the Limitation Act 1939. |
| 1963 c. 47. | The Limitation Act 1963. | Sections 4 and 5.<br>Section 7(7).<br>Section 14(1).<br>Sections 15 and 16. |
| 1975 c. 54. | The Limitation Act 1975. | The whole Act. |
| 1976 c. 30. | The Fatal Accidents Act 1976. | In Schedule 1, paragraph 3. |
| 1978 c. 47. | The Civil Liability (Contribution) Act 1978. | In Schedule 1, paragraph 6. |
| 1980 c. 24. | The Limitation Amendment Act 1980. | Sections 1 to 9.<br>Sections 11 to 13.<br>Section 14(2) to (4).<br>Schedules 1 and 2. |

PRINTED IN ENGLAND BY BERNARD M. THIMONT
Controller of Her Majesty's Stationery Office and Queen's Printer of Acts of Parliament

c. **58**                    *Limitation Act 1980*

LONDON: PUBLISHED BY HER MAJESTY'S STATIONERY OFFICE

£2·70p net

ISBN 0 10 545880 5



LITIGATION LIBRARY

# LIMITATION PERIODS

SEVENTH EDITION

by

**ANDREW MCGEE, B.A., B.C.L., (Oxon.), F.R.S.A. of Lincoln's Inn, Barrister**

*Professor of Business Law, Manchester University Barrister, Kings Chambers, Leeds and Manchester*

SWEET & MAXWELL

THOMSON REUTERS



e

on Periods is, as always, a time to
ears. This time, unusually, it is not
s dominated judicial activity. There
particular with amendments caused
ith whether proposed amendments
facts as the existing claim. Few of
articular issue of principle.

also continue to generate case law,
latter on the exercise of the discre-
an inevitable consequence of the
e Human Rights Act 1998. Two
on periods continue to get shorter, a
century. The other is that very short
liscretion to extend. That discretion
are so many more cases where the
ght wonder whether the shortening
't perhaps too far.

resting cases dealing with, among
*l v Hackney*) and limitation in rela-
*es Ltd*).

is time from the Supreme Court,
*tral Bank of Nigeria*, restricted the
tion under s.21(1), thereby resolv-
also perhaps now seen the end of
ng the s.2 limitation period by
aches of fiduciary duty.

*Ltd* came to a somewhat surprising
liquidated pecuniary claim" and it
he next four years.

e new sets of facts illustrating the
n the various amendments which
e good to see at least a consolida-
prospect of any root and branch
v Commission.

both professional and academic,
ints. Clients have also unwittingly
h have enhanced my understand-
& Maxwell have been their usual
mething publishable.

ongstanding fascination with this
wever, my daughter Grace has for
in ancient Rome and Greece than
ssics. Perhaps I can interest her in

# TABLE OF CONTENTS

*Preface*
*Table of Cases*
*Table of Statutes*
*Table of Statutory Instruments*

**1  Definition, Background and Policy**
Definition                                         1.001
Background                                        1.003
Policy                                              1.043
Reform                                             1.063

**2  The Running and Expiry of Time**
The Running of Time                              2.001
Meaning of "Action"                              2.002
Commencing Action and Notifying Claims         2.003
Computation of Time                             2.004
Where Remedy is Barred                          2.025
Where the Right is Extinguished                 2.030

**3  The Relevance of the Remedy**
Ambit of S.36                                     3.002
Common Law Remedies                             3.004
Equitable Remedies                              3.007
Statutory Remedies                              3.008
Modern Remedies                                 3.009
The Proviso to S.36(1)                          3.010
Equitable Remedies                              3.015
Multiple Actions                                3.027
The Law Commission's Proposals                 3.029

**4  Categorisation**
Significance                                      4.001
Time of Categorisation                          4.002
Action in Tort                                    4.003
Action Founded on Simple Contract              4.010
Concurrent Rights in Contract and Tort         4.011
Contract or Statute                             4.023
Tort or Statute                                 4.025
Action for Personal Injuries                    4.027
Actions in Respect of Latent Damage            4.034
Action to Recover Land                          4.035
Simple Contract or Specialty?                   4.036
Suing on a Judgment                             4.040
Judgment or Contract                            4.041
Trust and Fiduciary Duty                        4.042
Subrogation                                      4.044
The Law Commission's Proposals                 4.045

**5  Actions Founded on Tort**
General Principles                               5.002
What is "Damage"?                               5.010

CONTENTS viii

| | |
|---|---|
| Local Authorities | 5.020 |
| The Two Loss Problem | 5.021 |
| Physical Damage | 5.022 |
| Economic Loss | 5.026 |
| Insurance | 5.042 |
| Procedural Questions | 5.068 |
| The Law Commission's Proposals | 5.078 |

**6   The Latent Damage Act 1986**

| | |
|---|---|
| Background | 6.001 |
| The Latent Damage Act 1986 | 6.002 |
| Conclusion | 6.058 |
| The Law Commission's Proposals | 6.059 |

**7   The Consumer Protection Act 1987**

| | |
|---|---|
| Three-year Period | 7.002 |
| Commencement of Period | 7.003 |
| Personal Injury Causing Death | 7.005 |
| The Longstop | 7.013 |
| Claimant under Disability | 7.022 |
| Fraud, Concealment or Mistake | 7.023 |
| Action for Non-disclosure of Name | 7.025 |

**8   Personal Injuries and Defamation**

| | |
|---|---|
| Discoverability | 8.002 |
| Judicial discretion | 8.003 |
| The Fatal Accident Acts | 8.004 |
| Personal Injuries | 8.005 |
| Personal Injuries | 8.014 |
| Defamation | 8.093 |

**9   Judicial Review and Other Crown Proceedings**

| | |
|---|---|
| Judicial Review | 9.002 |
| Other Crown Proceedings | 9.011 |

**10   Accrual of Cause of Action in Contract**

| | |
|---|---|
| Right Accrues on Breach | 10.002 |
| Restitutionary Claims | 10.006 |
| Anticipatory Breach | 10.007 |
| Breach a Question of Fact | 10.008 |
| Accounts | 10.011 |
| Payment on Demand | 10.019 |
| Ascertainment of Sums Due | 10.027 |
| Continuing Obligations | 10.028 |
| Indemnity Contracts | 10.034 |
| Insurance Contracts | 10.039 |
| Contracts of Guarantee | 10.042 |
| Contracts of Loan | 10.043 |
| The Law Commission's Proposals | 10.046 |

**11   Actions to Recover Sums Due Under Statute**

| | |
|---|---|
| Section 9 of the 1980 Act | 11.002 |
| Sum of Money Due | 11.003 |

viii

ix                              CONTENTS

5.020

5.021

5.022

5.026

5.042

5.068

5.078


6.001

6.002

6.058

6.059


7.002

7.003

7.005

7.013

7.022

7.023

7.025


8.002

8.003

8.004

8.005

8.014

8.093

ngs

9.002

9.011


10.002

10.006

10.007

10.008

10.011

10.019

10.027

10.028

10.034

10.039

10.042

10.043

10.046

te

11.002

11.003

Due under an Enactment                                   11.010
Tortious Actions                                         11.017
Accrual of Cause of Action                               11.018
Successive Causes of Action                              11.026
The Law Commission's Proposals                           11.027

**12  Personal Property**
Conversion                                               12.003
Theft                                                    12.007
Limited Interests in Goods                               12.011
Relationship with Fraud                                  12.012
Relationship with Acknowledgment                         12.013
Mortgages of Personal Property                           12.014
Action for Principal Sum                                 12.018
Action for Arrears of Interest                           12.021
Effect of Expiry of Period                               12.026
The Law Commission's Proposals                           12.028

**13  Real Property**
Land                                                     13.002
Mortgages                                                13.086
Rent                                                     13.095
Land Held on Trust                                       13.100
Special Rules for the Crown, etc.                        13.103

**14  Trustees and Personal Representatives**
When Does a Trust Exist?                                 14.002
Breach of Trust                                          14.004
Identifying the Basis of the Action                      14.019
Fiduciary Duties                                         14.020
Future Interests                                         14.023
Charitable Trusts                                        14.025
Express and Constructive Trustees                        14.027
Equitable Interests in Land                              14.033
Laches                                                   14.037
Estates of Deceased Persons                              14.038
Other Persons Treated as Trustees                        14.051
The Law Commission's Proposals                           14.053

**15  Contribution**
The Same Damage                                          15.003
Defendant's Legal Liability to Claimant                  15.010
Third Party's Liability to the Claimant                  15.011
Timing                                                   15.017
What Must be Agreed?                                     15.023
Admission of Liability Irrelevant                        15.026
Payments into Court                                      15.027
Multiple Claimants                                       15.028
The Law Commission's Proposals                           15.040

**16  Arbitration**
Statutory and Contractual Time-limits                    16.002
Meaning of "dispute under the Agreement"                 16.003

CONTENTS                    x

Accrual of Cause of Action                                          16.004
Running of Time                                                     16.007
Commencement of the Arbitration                                     16.008
Extending the Time-limits                                           16.021
Arbitrators' Discretion                                             16.038
Expiry of Time in Other Contractual Cases                           16.042
Suing on an Award                                                   16.043
Postponement of Running of Time                                     16.046
Arbitrations and s.35 of the Limitation Act 1980                    16.047
Delay in the Conduct of the Arbitration                            16.049
The Arbitrator's Powers in Cases of Delay                           16.050
The Court's Powers in Cases of Delay                                16.052

**17   Miscellaneous Cases**
Actions for Account                                                 17.002
Actions on Judgments                                                17.003
Charging Orders                                                     17.008
Awards                                                              17.014
Advowsons                                                           17.017
Company, Insolvency and Bankruptcy Law                              17.020
The Law Commission's Proposals                                      17.060

**18   Acknowledgment and Part-payment**
Land                                                                18.002
Mortgages-general                                                   18.004
Debts, Etc.                                                         18.005
Repeated Extensions                                                 18.011
Formal Provisions                                                   18.012
Authority to Acknowledge                                            18.013
Position of Third Parties                                           18.016
Sufficient Acknowledgment                                           18.025
Timing of Acknowledgment                                            18.037
Pleading                                                            18.040
Requests for Further Information                                    18.041
Acknowledgment and Estoppel                                         18.042
Part-payment                                                        18.043
Sufficiency of Payment                                              18.044
Appropriation of Payments                                           18.047
The Law Commission's Proposals                                      18.050

**19   Disability**
Meaning of Disability                                               19.002
The Effect of Disability                                            19.014
The Running of Time                                                 19.015
Intermittent Disability                                             19.017
The Position in Personal Injury Cases                               19.018
Successive Accruals                                                 19.019
Relationship between Disability and Want of Prosecution             19.025
Disability and Abuse of Process                                     19.026
Actions to Recover Land                                             19.032
Relationship with Other Grounds of Extension                        19.033
The Latent Damage Act 1986                                          19.034
The Consumer Protection Act 1987                                    19.041

x

16.004
16.007
16.008
16.021
16.038
16.042
16.043
16.046
80
16.047
16.049
16.050
16.052

17.002
17.003
17.008
17.014
17.017
17.020
17.060

18.002
18.004
18.005
18.011
18.012
18.013
18.016
18.025
18.037
18.040
18.041
18.042
18.043
18.044
18.047
18.050

19.002
19.014
19.015
19.017
19.018
19.019
: Prosecution
19.025
19.026
19.032
19.033
:n
19.034
19.041

xi                    CONTENTS

Disability and Defamation                                    19.042
The Law Commission's Proposals                               19.043

**20  Fraud, Concealment and Mistake**
History                                                      20.002
Ambit of Section                                             20.003
Meaning of Diligence                                         20.004
Fraud                                                        20.009
Concealment                                                  20.015
Mistake                                                      20.045
Relationship with Conversion                                 20.052
Position of Third Parties                                    20.053
The Latent Damage Act 1986                                   20.059
The Consumer Protection Act 1987                             20.060
The Law Commission's Proposals                               20.061

**21  Pleading Questions**
How to Plead                                                 21.002
When to Plead                                                21.003
Burden of Proof                                              21.012
Foregoing the Statute                                        21.018
Estoppel                                                     21.024
Pre-action Discovery                                         21.027
Section 33 and Appeals                                       21.028
Consolidation                                                21.029
Ratification                                                 21.030
The Law Commission's Proposals                               21.031

**22  Procedural Delays**
Amending the Claim Form before Service                       22.003
Unserved Claim Forms                                         22.005
Failure to Serve the Claim Form in Time                      22.006
The Old Authorities                                          22.007
The Three Classes of Case                                    22.011
Which Factors are Relevant                                   22.020
Where the Claim Form is Served Out of Time                   22.027
Timing of Application                                        22.029
Four-month Claim Forms and Six-month Claim Forms             22.030
Issuing a Second Claim Form                                  22.039
Amendment of the Claim Form/Pleadings                        22.041
CPR Pts 17 and 19 and s.35 of the 1980 Act                   22.043
Amendment by Defendant                                       22.044
Defective Claim Forms                                        22.045
Adding a New Cause of Action                                 22.047
Adding a Later Cause of Action                               22.051
Amendments and Relation Back                                 22.052
Dismissal for Want of Prosecution                            22.053
Limitation and Abuse of Process                              22.054
The Law Commission's Proposals                               22.055

**23  Section 35**
General                                                      23.001
Ambit of s.35                                                23.007

CONTENTS                                                xii

CPR Pt 19                                               23.041
Meaning of "Set-Off" And "Counterclaim"                 23.063
Sections 35 and 33                                      23.066
Effect of Adding New Parties                            23.067
Determining the Limitation Issue in s.35 Cases          23.070
Actions on Awards                                       23.071
Commencing a New Action                                 23.072
Removal of Parties from the Action                      23.073
New Parties and Contribution                            23.075
The Law Commission's Proposals                          23.076

24   **The Merchant Shipping Act 1995**
Ambit of the Act                                        24.002
Fatal Accidents Acts                                    24.005
Salvage Services                                        24.006
Accrual of Cause of Action                              24.007
Extending Time                                          24.008
Application to Crown                                     24.020
Sister Ships                                            24.021
Failure to Serve the Claim Form in Time                 24.022
The Law Commission's Proposals                          24.025

25   **The Foreign Limitation Periods Act 1984**
History and Purpose                                     25.001
Commencement of Proceedings                             25.014
Exercise of Discretion                                  25.017
Renvoi                                                  25.018
Exceptions to S.1 of the FLPA 1984                      25.021
Undue Hardship                                          25.028
Foreign Judgments on Limitation Points                  25.032
Burden of Proof                                         25.037
Arbitrations                                            25.038
Application to Crown                                     25.039
Transitional Provisions                                 25.040
The Law Commission's Proposals                          25.041

26   **The Carriage Statutes**
General                                                 26.001
Carriage of Goods by Sea Act 1971                       26.002
Article III R.6 of the Hague-Visby Rules                26.004
Substitute Tonnage                                      26.005
Carriage of Goods by Road Act 1965                      26.018
Carriage by Air Act 1961                                26.025
International Transport Conventions Act 1983             26.034
Carriage of Passengers by Road Act 1974                 26.041
The Merchant Shipping Act 1979                          26.048
The Law Commission's Proposals                          26.056

27   **Other Statutes**
General                                                 27.001
Workmen's Compensation Acts                             27.002
Third Parties (Rights Against Insurers) Act 1930        27.003
Limitation (Enemies and War Prisoners) Act 1945         27.004



xii

23.041
23.063
23.066
23.067
23.070
23.071
23.072
23.073
23.075
23.076

24.002
24.005
24.006
24.007
24.008
24.020
24.021
24.022
24.025

25.001
25.014
25.017
25.018
25.021
25.028
25.032
25.037
25.038
25.039
25.040
25.041

26.001
26.002
26.004
26.005
26.018
26.025
26.034
26.041
26.048
26.056

27.001
27.002
27.003
27.004

xiii

# CONTENTS

Uniform Laws on International Sales Act 1967                    27.005
Equal Pay Act 1970                                             27.006
Taxes Management Act 1970                                      27.013
Defective Premises Act 1972                                    27.017
Solicitors Act 1974                                            27.019
Matrimonial Causes Act 1973                                    27.020
Inheritance (Provision for Family and Dependants) Act 1975     27.021
Administration of Justice Act 1982                             27.023
Sex Discrimination Act 1975 and Race Relations Act 1976        27.024
Rent Act 1977                                                  27.029
Employment Rights Act 1996                                     27.030
Magistrates' Courts Act 1980                                   27.035
Social Security Act 1986                                       27.036
Planning Law                                                   27.037
Intellectual Property                                          27.041
Proceeds of Crime Act 2002                                     27.042
The Law Commission's Proposals                                 27.047

28   **European Law**                                          28.001
     European Union Law                                        28.031
     European Court of Justice                                 28.038
     Human Rights

*Index*

1930
t 1945

# CHAPTER 2

# The Running and Expiry of Time

## THE RUNNING OF TIME

Once time has begun to run it will run continuously, except in the situations discussed at para.2.018 et seq. This general rule is of very wide application, and it is only in rare cases that the clock can be stopped once it has started. Time ceases to run when the claimant commences legal proceedings in respect of the cause of action in question. It is a general principle of some importance that the bringing of an action stops the running of time for the purposes of that action only. Therefore, in *Manby v Manby*[1] the bringing of a creditor's petition in an administration action did not save the debt from becoming statute-barred for other purposes.[2] In *Lefevre v White*[3] the plaintiff brought a personal injuries action, which was successful. When the defendant became bankrupt the plaintiff sought to sue the defendant's liability insurers under the 1930 Act. The writ against the insurers was issued more than six years after the injury was suffered. The plaintiff argued that the writ against the defendant saved the running of time for the purposes of this action, but this argument was rejected—commencing proceedings against one defendant does not stop time from running in favour of other defendants.[4] In *Virgo Steamship Co v Skaarup Shipping Corporation*[5] the plaintiffs had begun separate actions against each of two defendants. After the expiry of the limitation period they sought to add the first defendants in the action against the second defendants. At first sight, s.35 of the 1980 Act would seem to preclude this,[6] but the plaintiffs argued that the running of time had been suspended by the bringing of the action against the first defendants. Hobhouse J. rejected this argument, holding that the action brought against the first defendants was effective to stop the running of time only for the purposes of that particular action.[7] This decision

**2.001**

---

[1] (1876) 3 Ch. 101, Malins V.C.
[2] Part of the difficulty in this case arose from the fact that the actions were commenced before the Judicature Acts 1873–1875 came into force, and one was in the Common Pleas whilst the other was in Chancery. This distinction is wholly obsolete, but the reasoning in the case proceeds on the more general principle stated in the text.
[3] [1990] 1 Lloyd's Rep. 569, Popplewell J.
[4] The Law Commission's proposals on this topic (contained in the Draft Bill annexed to Law Com.272) would have the effect that in an action for a declaration by a third party against an insurer, the insurer would not be able to rely on a limitation defence against the third party unless the insured could rely on it against the third party. This would be relevant where proceedings were started after the expiry of a limitation period applicable to an action against the insured, but while such an action was in progress.
[5] *Virgo Steamship Co v Skaarup Shipping Corporation*, June 21, 1988, Hobhouse J., unreported.
[6] For s.35, see Ch.23.
[7] See also *The Kapetan Markos* [1986] 1 Lloyd's Rep. 211, CA. The position is now governed by CPR rr.17.4 and 19.5, as to which see Ch.23.

goes further than that in *Manby v Manby*, since the plaintiffs here were merely seeking a different way of enforcing the same claim against the same person, whereas in *Manby v Manby* the enforcement of different claims (and claims against different persons) was in issue. The position is also often different in cases to which the Hague-Visby Rules apply and in which suit is validly brought in another jurisdiction.[8]

## MEANING OF "ACTION"

2.002    "Action" is partially defined in s.38(1) of the 1980 Act as including proceedings in any court of law, including an ecclesiastical court. Section 34 of the 1980 Act extends the effect of this by providing that the limitation rules apply to arbitrations as they apply to actions in the High Court. It can be seen that the definition is a very broad one. However, *Lowsley v Forbes*[9] establishes beyond doubt that the enforcement of a judgment is not an action for these purposes. It must be remembered that the time-limits do not apply to an action which is not governed by the 1980 Act at all, such as certain actions for equitable relief[10] or an action asking the court to exercise its inherent jurisdiction over a solicitor.[11]

## COMMENCING ACTION AND NOTIFYING CLAIMS

2.003    A few of the more specialised limitation provisions in English law draw a distinction between notifying claims and bringing proceedings. The most common examples are to be found in the International Carriage statutes, discussed in Ch.26. In these cases the usual result appears to be that the notifying of a claim to the prospective defendant may be a condition precedent to the bringing of a claim.[12] However, a time-limit of this kind is not properly to be regarded as a limitation period, since it is not a limit within which proceedings must be brought.[13] Another example is to be found in the Commercial Agents (Council Directive) Regulations 1993[14] which require an agent to give notice of his intention to bring a compensation claim within one year of the termination of his agency, though the time limit for bringing the claim remains the standard six years.

---

8    *The Nordglimt* [1988] Q.B. 183, Hobhouse J.; for the Hague-Visby Rules, see paras 26.002–26.016.
9    [1999] A.C. 329, HL, affirming principles laid down in *W.T. Lamb & Sons Ltd v Rider* [1948] 2 K.B. 331, CA and *Natwest Bank v Powney* [1991] Ch. 339, CA; see also Ch.17 for discussion of points about interest arising in these cases.
10    1980 Act s.36; see Ch.3.
11    *Bray v Stuart A. West & Co.* (1989) 139 New L.J. 753, Warner J.
12    As was apparently the case under the Workmen's Compensation Act 1906–1925; see *Leivers v Berber Walker & Co. Ltd* [1943] 1 All E.R. 386, CA; see further para.27.002.
13    See also para.1.001 for the definition of limitation period for the purposes of this work.
14    SI 1993/3059.

ince the plaintiffs here were merely
me claim against the same person,
f different claims (and claims against
n is also often different in cases to
iich suit is validly brought in another


the 1980 Act as including proceed-
istical court. Section 34 of the 1980
the limitation rules apply to arbitra-
t. It can be seen that the definition is
i⁹ establishes beyond doubt that the
n for these purposes. It must be
to an action which is not governed
s for equitable relief¹⁰ or an action
ction over a solicitor.¹¹


IFYING CLAIMS


provisions in English law draw a
ging proceedings. The most com-
nal Carriage statutes, discussed in
o be that the notifying of a claim to
n precedent to the bringing of a
: not properly to be regarded as a
thin which proceedings must be
the Commercial Agents (Council
i agent to give notice of his inten-
ie year of the termination of his
e claim remains the standard six

## COMPUTATION OF TIME

A system of law which adopts limitation periods must also have rules for **2.004**
determining exactly when time expires in any given case. A number of difficulties
arise in measuring time, and the response of English law to these is discussed in
the following paragraphs.

### PARTS OF A DAY ARE IGNORED

The general rule in calculating the expiry of a limitation period is usually **2.005**
expressed as being that parts of a day are ignored. This formulation is ambiguous,
and needs to be clarified by example. In *Gelmini v Moriggia*¹⁵ the defendant had
given a promissory note. The time for payment of this expired on September 22,
1906. The plaintiff's writ on the note was issued on September 23, 1912. Channell
J. held that the cause of action was complete at the beginning of September 23,
1906, since that was the earliest moment at which proceedings could have been
commenced, notwithstanding that the court office obviously would not have been
open at midnight. Consequently the six-year limitation period expired at the end
of September 22, 1912, and the writ issued on the following day was out of time.
This is the simplest possible example, since the cause of action was held to accrue
at the very beginning of a day. Greater complexities arise where the cause of ac-
tion accrues during the course of a day. In *Radcliffe v Bartholomew*¹⁶ the relevant
statute required an action against justices to be brought "within one month" of the
commission of the wrong. The alleged wrong occurred on May 30 and the action
was commenced on June 30. It was held that this action was in time, since the day
of commission of the wrong was to be excluded from the calculation.

That case may be contrasted with *Dorber v London Brick Co.*¹⁷ This was an **2.006**
unfair dismissal case, and it was held that the day of dismissal was included in the
calculation of the time period allowed.¹⁸ Perhaps the most satisfactory of the
authorities on this point is *Marren v Dawson Bentley & Co.*¹⁹ The plaintiff was
injured in an accident at 13.30 on November 8, 1954, and the writ was issued on
November 8, 1957. The question was whether time had expired at the end of
November 7, 1957, and Havers J. held that it had not. The day on which the cause
of action accrues is to be disregarded in calculating the running of time. It
therefore followed that time began to run at the first moment of November 9, 1954
and expired at the end of November 8, 1957. Havers J. expressly declined to fol-
low *Gelmini v Moriggia*, but it is not clear whether his decision is inconsistent
with that in *Gelmini*. The latter case deals with one very specific situation, namely
where the cause of action must accrue on the stroke of midnight. It is arguable that
here there is no question of disregarding any part of a day; the cause of action was
in existence throughout September 23, 1906. Consequently, it may be argued that
on those very special facts the decision is still good law.

The alternative is to say that time did not begin to run until the start of **2.007**
September 24, which seems a very odd conclusion, given that the time for pay-

---

: Hague-Visby Rules, see paras 26.002–

*W.T. Lamb & Sons Ltd v Rider* [1948] 2
339, CA; see also Ch.17 for discussion of


Varner J.

pensation Act 1906–1925; see *Leivers v*
: further para.27.002.

for the purposes of this work.

¹⁵ [1913] 2 K.B. 549, Channell J.
¹⁶ [1892] 1 Q.B. 161, DC.
¹⁷ [1974] I.C.R. 270, NIRC.
¹⁸ Though it may be possible to explain this case as applying only to the particular wording of the
   statute in question.
¹⁹ [1961] 2 Q.B. 135, Havers J.

28                    THE RUNNING AND EXPIRY OF TIME

ment expired at the end of September 22. It is submitted that the cases are reconcilable and that both are correct on this point. The rule is that any part of a day (but not a whole day) happening after the cause of action accrues is excluded from the calculation of the limitation period. Strictly speaking this will normally lead to the extension of the limitation period by a few hours but it could equally be argued that the contrary rule would lead to the shortening of that period.

## WHERE PROCESS CANNOT BE ISSUED ON THE LAST DAY

2.008    A difficult practical problem arises when it is impossible to issue process on the last day of the limitation period because the court offices are closed on that day. In two cases, *Morris v Richards*[20] and *Gelmini v Moriggia*[21] it was held that time could not be extended until the next day on which the court was open. There has, of course, long been a power in rules of court to extend the time for doing any act which those rules required[22] but the acts involved here are required to be done by a statute, and rules of court cannot and do not purport to extend the time for these. These cases relied on the absence of any corresponding rule in the Limitation Act as a ground for holding that time could not be extended. In *Hodgson v Armstrong*[23] a different view was taken of a provision which required the plaintiff to give notice to the court by a certain time. It was held that this situation, which required the court actively to do something, could properly be distinguished from those in the two earlier cases.

## ERROR BY COURT STAFF

2.009    Although the general rule is that proceedings are started when the court issues a claim form at the request of the claimant,[24] it may happen that the form as issued is received in the court office on a date earlier than that on which it is issued (where, for example, the claimant sends the form by post). In these circumstances the claim is "brought" for limitation purposes on the date when the form is received in the court office, not on the later date when it is issued.[25]

2.010    There are two important recent authorities on the question of what happens when documents for the issuing of process are received in the court office before the expiry of the limitation period but the proceedings are not issued until after the end of the limitation period. In *St Helens MBC v Barnes*[26] the Court of Appeal considered para.5 of CPR 7PD, which so far as presently relevant reads:

"5.1    Proceedings are started when the court issues a claim form at the request of the Claimant (see r 7.2) but where the claim form as issued was received in the court office on a date earlier than

---

[20]    (1881) 45 L.T. 210.
[21]    [1913] 2 K.B. 549 Channell J.
[22]    Formerly RSC Ord.3 r.5. CPR r.3.10 now gives a general power to remedy any procedural error, imposing such sanctions as are appropriate. For guidance on the application of this provision see *Cala Homes (South) Ltd v Chichester DC, The Times*, October 15, 1999; *Hannigan v Hannigan*, May 18, 2000, unreported, CA.
[23]    [1967] Q.B. 299, CA.
[24]    CPR 7.2.
[25]    CPR 4PD 5.1. Under the old rules the same position was reached, without benefit of a corresponding express provision, in *Riniker v University College London*, March 31, 1999, unreported. For the earlier authorities see *Clarke v Smith* (1858) 2 H. & N. 753 (157 E.R. 311); *Campbell v Smart* (1847) 5 C.B. 196 (136 E.R. 851); *Carr v Morice* (1873) 16 Equity 125; *Chanoch v Hertz* (1888) 4 T.L.R. 331; *re N* [1967] 1 Ch. 512; *Harrison v Touche Ross, The Times*, February 14, 1995.
[26]    [2006] EWCA Civ 1372.

XPIRY OF TIME                                    COMPUTATION OF TIME                    29

submitted that the cases are reconcil-
he rule is that any part of a day (but
f action accrues is excluded from the
peaking this will normally lead to the
hours but it could equally be argued
ening of that period.

**D ON THE LAST DAY**

is impossible to issue process on the
ourt offices are closed on that day. In
*v Moriggia*[21] it was held that time
which the court was open. There has,
to extend the time for doing any act
lved here are required to be done by
purport to extend the time for these.
esponding rule in the Limitation Act
extended. In *Hodgson v Armstrong*[23]
h required the plaintiff to give notice
it this situation, which required the
y be distinguished from those in the

s are started when the court issues a
may happen that the form as issued
ier than that on which it is issued
rm by post). In these circumstances
ses on the date when the form is
e when it is issued.[25]

i on the question of what happens
received in the court office before
eedings are not issued until after the
*C v Barnes*[26] the Court of Appeal
i presently relevant reads:

claim form at the request of the Claimant
ved in the court office on a date earlier than

eral power to remedy any procedural error,
nce on the application of this provision see
October 15, 1999; *Hannigan v Hannigan*,

s reached, without benefit of a correspond-
London, March 31, 1999, unreported. For
N. 753 (157 E.R. 311); *Campbell v Smart*
) 16 Equity 125; *Chanoch v Hertz* (1888) 4
*Ross, The Times,* February 14, 1995.

the date on which it was issued by the court, the claim is 'brought' for the purposes of the Limitation Act 1980 and any other relevant statutes on that earlier date.

5.2    The date on which the claim form was received by the court will be recorded by a date stamp either on the claim form held on the court file or on the letter that accompanied the claim form when it was received by the court."

In this case, the day before the limitation period expired, the claimant's solicitor attended the court office with the Claim Form in triplicate and a cheque for the issue fee. The solicitor handed these and a covering letter to a clerk. The clerk date stamped the solicitor's copy of the letter with the court's official stamp to record the fact that the letter and its enclosures had been received on that day. The following day (a Friday) the court offices were open but a number of its staff were taking industrial action. When the solicitor phoned the court that day he was told that there was nobody working in the new issue section but they would be back to work on Monday. So it transpired that the claim form was not issued and dated until three days after time had expired.    **2.011**

The question for the Court of Appeal was when is a claim "brought" for the purpose of the 1980 Act under the procedural regime introduced by the CPR? Is it on the date which appears on the claim form when the court issues it and the proceedings are started as provided by r.7.2, or is it when the court receives the request to issue it? The Court of Appeal held that proceedings start on the date entered on the claim form by the court which is their date of issue. However, claims are "brought" for the purposes of the Limitation Act when the claimant's request for the issue of a claim form (together with the court fee) is delivered to the court office.    **2.012**

The same principle was followed in *Secretary of State for Trade and Industry v Vohora*,[27] a case concerning s.7(2) of the Company Directors Disqualification Act 1986 which provides:    **2.013**

"Except with the leave of the court, an application for the making under that section of a disqualification order against any person shall not be made after the end of the period of 2 years beginning with the day on which the company of which that person is or has been a director became insolvent."

It was held that the application is made when the form is received in the court office and is recorded by a date stamp either on the claim form held on the court file or on the letter that accompanied the claim form when it was received by the court, even if it is not issued until a later date.[28]    **2.014**

This distinction is a somewhat uncomfortable one, since the court must take an active step when issuing a claim form, yet in the light of the two recent cases, and of the express provisions of the CPR, this point must for the time being be regarded as settled.[29]    **2.015**

The difficult questions about when proceedings are "brought" arose again in *Barker v Hambleton DC*[30] where the claim form was pushed under the outer door of the court building after close of business on the last possible day for issuing proceedings. The possibility of this had been foreshadowed in *Mucelli v Government of Albania*[31] where Lord Neuberger suggested,[32] obiter, that this would not    **2.016**

27    [2007] EWHC 2656 (Ch), Evans-Lombe J.
28    For a similar point arising under the Magistrates Court Act 1980, see para.27.035.
29    Earlier cases, in particular *Pritam Kaur v S. Russel & Sons Ltd* [1973] Q.B. 336, Willis J., must now be regarded as having been superseded.
30    [2011] EWHC 1707 (Admin), Judge Shaun Spencer QC.
31    [2009] 1 W.L.R. 276 HL.

30                        THE RUNNING AND EXPIRY OF TIME

amount to the bringing of the action on the day when the claim form was delivered. This ignored the suggestions to the contrary in *Van Aken v Camden LBC*,[33] though that case was not cited to the House of Lords. Judge Spencer followed Lord Neuberger's comments, holding that on a day when the Court Office is open, the delivery of documents to the court building after hours does not amount to the bringing of an action on that day. The action is brought only when the Court Office is next open and the documents can be processed. A further variant on the many ways in which attempts to issue proceedings can go astray occurred in *Page v Hewetts Solicitors*[34] where the claimants' solicitor asserted that he had sent the claim form to the court (by DX) in time for issue, but that the court office must have lost it. The Court of Appeal held that if that were the case (and it was not necessary to decide the point because this was an application for strikeout/summary judgment) then the claimants would indeed have "brought" the action within time. In effect the position is that a claimant does not have to take the risk that a claim form properly sent to the court will be accidentally lost, mislaid, damaged or destroyed by the acts of the court staff. It is sufficient if the claimant has done all that he is reasonably expected to do to deliver the claim form to the court.

2.017      *Harry Yearsley Ltd v Secretary of State for Justice*[35] draws attention to the provisions of the Public Contracts (Amendment) Regulations 2009[36] which amend the Public Contracts Regulations 2006.[37] The amendment introduces a provision believed to be unique in English law to the effect that the limitation period provided for by the Regulations runs until the proceedings are served rather than merely issued.

## SUSPENSION OF RUNNING OF TIME

2.018      As a general rule it may be said that the English law of limitations does not permit the running of time to be suspended once it has started. Thus in *Prideaux v Webber*[38] it was held that not even the suspension of the King's law during the period of the Commonwealth could prevent time from running in a case where it had started to do so before the Commonwealth began. Five exceptions to this principle may be mentioned. The first is found in s.13 of the 1996 Act. This provides that where the High Court orders that an arbitration award should be set aside or that an arbitration agreement should cease to have effect, the court may also order that the period between the commencement of the arbitration and the making of the order shall not count for the purposes of calculating the time within which proceedings may be commenced.[39] The second is contained in s.33 of the Limitation Act 1980. This is the section that allows the court to extend the normal three-year limitation period in the case of actions for personal injuries. In exercising this discretion the court may take account of any disability of the plaintiff which arose after the cause of action accrued. In both cases it is a matter for the court's discretion whether to rely on these matters, and only in the former case

---

[32]  At [85].
[33]  [2003] 1 W.L.R. 684.
[34]  [2012] EWCA Civ 805.
[35]  [2011] EWHC 1160 (TCC), Edwards-Stuart J.
[36]  Implementing Directive 2007/66/EC.
[37]  Implementing Directives 2004/18/EC and 89/665/EEC.
[38]  (1661) 1 Lev. 31.
[39]  See further para.16.027.



y when the claim form was delivered.
n *Van Aken v Camden LBC*,[33] though
ords. Judge Spencer followed Lord
ty when the Court Office is open, the
g after hours does not amount to the
1 is brought only when the Court Of-
processed. A further variant on the
dings can go astray occurred in *Page*
solicitor asserted that he had sent the
· issue, but that the court office must
if that were the case (and it was not
s was an application for strikeout/
ld indeed have "brought" the action
aimant does not have to take the risk
ill be accidentally lost, mislaid, dam-
aff. It is sufficient if the claimant has
o deliver the claim form to the court.
*for Justice*[35] draws attention to the
ent) Regulations 2009[36] which amend
e amendment introduces a provision
he effect that the limitation period
1e proceedings are served rather than

English law of limitations does not
nce it has started. Thus in *Prideaux v*
ension of the King's law during the
time from running in a case where it
ealth began. Five exceptions to this
ound in s.13 of the 1996 Act. This
1at an arbitration award should be set
d cease to have effect, the court may
nencement of the arbitration and the
urposes of calculating the time within
he second is contained in s.33 of the
allows the court to extend the normal
1ions for personal injuries. In exercis-
unt of any disability of the plaintiff
d. In both cases it is a matter for the
matters, and only in the former case

can the running of time be stopped. Under s.33 the court is merely empowered to allow the bringing of the action notwithstanding that time has expired.

The position is, of course, quite different where time has not already started to run. In such cases, Pt II of the 1980 Act contains a number of provisions which may delay the date at which time starts to run in the event of disability,[40] acknowledgment[41] or fraud.[42] The third exception arises under the statutes relating to the carriage of goods (and in some cases persons), which are dealt with in Ch.26. Most of these provide that the running of time is suspended if a plaintiff makes a written claim to the carrier, even though no proceedings are started. This suspension lasts until the carrier rejects the claim, after which time it starts to run again (if the carrier admits the claim, the problem of timing clearly does not arise). The fourth exception arises from the decision of the House of Lords in *Sheldon v Outhwaite*[43] where it was held that a deliberate concealment by the defendant of a material fact after the cause of action has accrued operates to reset the limitation clock to zero. The final exception is to be foun in the Limitation (Enemies and War Prisoners) Act 1945.[44] This statute suspends the running of time where any person who is a necessary party to the action is an enemy[45] or is detained in enemy territory. In these circumstances time cannot expire until at least one year after the party ceases to be an enemy or to be detained. This provision is capable of suspending the running of time where the cause of action has already accrued. Time will be suspended if any necessary party to the action meets the requisite conditions. Therefore, this Act, uniquely among limitation provisions, will suspend the running of time because of the unavailability of the defendant. However, it is only parties whose absence can have this effect—the absence under the same circumstances of a necessary witness in the case does not bring the statute into operation. Clearly this provision is of very little practical importance at the present day.

**2.019**

## DUAL CAPACITY

The general rule explained in the preceding paragraph is clearly capable of giving rise to injustice. One problematic situation is that of the person who occupies two capacities at once. He is not allowed to use one capacity to bring an action against himself in the other capacity, and it may therefore be necessary to decide whether the running of time can be suspended so long as the two capacities coexist. An example of this occurred in *Bowring-Hanbury's Trustee v Bowring-Hanbury*[46] where a husband lent money to his wife who later died without repaying it. He became her executor, but was then made bankrupt. His trustee in bankruptcy sought to sue the wife's estate. In the Court of Appeal[47] the case turned on whether the running of time could be suspended so long as the husband was both the creditor and the personal representative of the debtor. The Court of Appeal held that the running of time is not suspended in these circumstances but sug-

**2.020**

---

[40] 1980 Act ss.28, 28A; see Ch.19.
[41] 1980 Act ss.29–31; see Ch.18.
[42] 1980 Act ss.32, 32A; see Ch.20.
[43] [1995] 2 All E.R. 558 for a detailed discussion of this case see Ch.20.
[44] See also para.27.004.
[45] Within the meaning of the Trading with the Enemy Act 1939.
[46] [1942] 1 All E.R. 516, Bennett J.; [1943] 1 All E.R. 48, CA.
[47] At first instance the plaintiff had rested his case on acknowledgment; see para.18.015.

32                    THE RUNNING AND EXPIRY OF TIME

gested that the position might be different where the creditor is the administrator of the estate.[48]

**2.021**    The position may be different where a debtor of the deceased becomes the personal representative. Where the debtor becomes the administrator it appears that time ceases to run. Where the debtor becomes the executor the rule is that time continues to run until the will is proved. However, on proof of the will the debt is treated as having been paid at the time of death, so that the original obligation ceases to exist. However, the debtor is obliged to account for the sum due out of the estate[49]; consequently, a new obligation arises on death and time will presumably run from the date of death.

## PROTECTIVE CLAIMS

**2.022**    A claimant may issue proceedings in order to prevent the limitation period from expiring, even though he has no present intention of pursuing the litigation. However, it is likely to be an abuse of process to issue proceedings where the claimant has no present awareness of proper grounds for bringing the action, but is aware that such grounds may come into existence at a later date.[50] A defendant has some limited tactical riposte to the issue of a protective claim form by calling for it to be served within 14 days.[51] If the claimant does not comply, the defendant may apply to court, which may dismiss the claim or make such other order as it thinks fit. It seems unlikely that a court would do more than order prompt service of the claim form.

## SERVICE OF PROCESS

**2.023**    The preceding paragraphs have dealt with calculation of time in connection with the issuing of process. In *Trow v Ind Coope (West Midlands) Ltd*[52] the Court of Appeal had to resolve similar problems in connection with the service of a writ. The writ in this case was issued on September 10, 1965 and was served on September 10, 1966. The majority of the Court of Appeal, Lord Denning M.R. dissenting, held that the service was out of time. For the purpose of calculating the duration of a writ, the day on which the writ is issued is included. This is obviously in direct contradiction to the rule for the issuing of a writ and it is easy to sympathise with Lord Denning's view that there is no rational justification for the distinction. It nevertheless appears still to be good law.

**2.024**    When considering the effect of the expiry of a limitation period in English law there are essentially two possible results. The first is that the plaintiff's remedy is barred, but his right is not extinguished. The second is that the plaintiff's right is itself extinguished.[53]

---

[48] See *Re Benzon* [1912] 1 Ch. 196; *Seagram v Knight* (1867) 2 Ch. App. 628; *Rhodes v Smethurst* (1938) 4 M. & W. 42. See also (1943) 59 L.Q.R. 117 for an argument that time continues to run where the creditor becomes the personal representative, whether as executor or as administrator.
[49] *Ingle v Richards (No.2)* (1860) 28 Beav. 366.
[50] *West Bromwich Building Society v Mander Hadley & Co.*, The Times, March 9, 1998, The Independent, March 10, 1998, CA.
[51] CPR r.7.7.
[52] [1967] 2 Q.B. 899, CA.
[53] On the history of this distinction, see *Sanders v Sanders* (1881) 19 Ch D. 373; *Re Alison* (1879) 11 Ch D. 284; *Re Clifden* [1900] 1 Ch. 774; *Harvey v Wynn* (1905) 22 T.L.R. 93; and *Unger* (1940) 4 M.L.R. 45.

ere the creditor is the administrator

btor of the deceased becomes the
comes the administrator it appears
comes the executor the rule is that
However, on proof of the will the
of death, so that the original obliga-
iged to account for the sum due out
ion arises on death and time will

## WHERE REMEDY IS BARRED

The barring of the remedy has been regarded as the usual response of the law to **2.025**
the expiry of the limitation period. Therefore, in an action founded on contract[54]
(simple or special) or on tort,[55] the effect of the expiry of the limitation period is
generally said to be that the remedy is barred, but the plaintiff's right is not
extinguished. In *McIntyre v Gentoo Group Ltd*[56] the court reaffirmed[57] the
traditional rule that the Limitation Act 1980, if applicable, does no more than bar
a claim or action. Cases relied upon include: *Curren v Milburn*,[58] *Norwegian
Government v Calcutta Marine Engineering Co. Ltd*,[59] and *Ridgeway Motors
(Isleworth) Ltd v ALTS Limited*.[60]

r to prevent the limitation period
intention of pursuing the litigation.
ss to issue proceedings where the
grounds for bringing the action, but
stence at a later date.[50] A defendant
f a protective claim form by calling
ant does not comply, the defendant
aim or make such order as it
do more than order prompt service

### THEFT AND CONVERSION

The general principle stated in the previous paragraph was significantly modi-    **2.026**
fied by the enactment of ss.3 and 4 of the 1980 Act. These sections, which are
extensively considered in Ch.12, deal with the time-limits applicable in cases of
theft and conversion of property.[61] They provide that upon the expiry of the limita-
tion period which they stipulate, the property rights of the original owner shall be
extinguished. This is in addition to the barring of the original owner's judicial
remedy.[62] Consequently, the general principle stated above will not apply in tort
cases involving rights to personal property.[63]

calculation of time in connection
*ye (West Midlands) Ltd*[52] the Court
nnection with the service of a writ.
ber 10, 1965 and was served on
rt of Appeal, Lord Denning M.R.
. For the purpose of calculating the
s issued is included. This is obvi-
: issuing of a writ and it is easy to
e is no rational justification for the
od law.

### THE LATENT DAMAGE ACT 1986

It appears that the Latent Damage Act 1986 follows the general rule for tort    **2.027**
cases. Thus, the expiry of any limitation period prescribed by this Act serves only
to bar the remedy, not to extinguish the plaintiff's right.

a limitation period in English law
irst is that the plaintiff's remedy is
econd is that the plaintiff's right is

### THE MERCHANT SHIPPING ACT 1995

The Merchant Shipping Act 1995,[64] which is considered extensively in Ch.24,    **2.028**
applies to claims arising out of damage caused by the fault of a ship. It does not
deal expressly with the question of the effect of expiry of time and judges have as-
sumed that it follows the traditional patterns for non-property-based claims by
merely barring the plaintiff's remedy.[65] This conclusion would appear to be sound
as a matter of principle and it is submitted that it is correct.

.867) 2 Ch. App. 628; *Rhodes v Smethurst*
for an argument that time continues to run
whether as executor or as administrator.

*& Co., The Times*, March 9, 1998, The

(1881) 19 Ch D. 373; *Re Alison* (1879) 11
*r* (1905) 22 T.L.R. 93; and *Unger* (1940) 4

---

[54] *Royal Norwegian Government v Constant & Constant* [1960] 2 Lloyd's Rep. 431, Diplock J.
[55] *C. & M. Matthews Ltd v Marsden Building Society* [1951] Ch. 758.
[56] [2010] EWHC 5 (Admin), John Howell QC.
[57] See [62] et seq.
[58] (1889) 42 Ch D. 424, CA, at 434–5, per Cotton L.J.
[59] [1960] 2 Lloyd's Rep. 431, at 442, per Diplock J.
[60] Unreported; see para.17.005.
[61] This is necessarily limited to personal property, since real property can be neither stolen nor
converted.
[62] The Law Commission's Consultation Paper proposes reversing this rule.
[63] See also s.27A, inserted by the Proceeds of Crime Act 2002 and considered at para.27.042.
[64] s.190 of this Act replaces the former s.8 of the Maritime Conventions Act 1911, though for present
purposes the two provisions are materially identical.
[65] *The Preveze* [1973] 1 Lloyd's Rep. 202, Mocatta J.

34                    THE RUNNING AND EXPIRY OF TIME

**EFFECT OF BARRING OF REMEDY**

2.029        A number of potentially significant consequences follow from holding that the
plaintiff's right is not extinguished. First, limitation is a matter which must be
specifically pleaded by the defendant if he wishes to take advantage of it[66] and the
plaintiff's cause of action is not regarded as time-barred until that plea is made.[67]
A defendant who considers it unconscionable to take advantage of the lapse of
time need not do so,[68] though it is possible that this rule does not apply to trustees
defending an action relating to the trust property.[69] Secondly, if the plaintiff is able
to assert his right in some way other than by the bringing of an action (and which
does not involve any other unlawful act) then his right will be recognised by the
law: all that is taken away is the possibility of obtaining a judicial remedy to
enforce his right.[70] Thirdly, a mortgagee is entitled to retain arrears of mortgage
interest on the redemption of a mortgage, even though his action for those arrears
has become time-barred.[71]

## WHERE THE RIGHT IS EXTINGUISHED

2.030        In a number of cases the effect of the expiry of the period of limitation is to
extinguish entirely the plaintiff's right. It is not clear how this affects the principles
discussed in the previous paragraph. Logically, it might be thought that limitation
would not have to be pleaded in such cases, but CPR 16PD-014[72] draws no distinc-
tion of this kind and it therefore appears that an express plea is still required. It
may be suggested, however, that in these cases leave to amend the pleadings to
include a limitation plea will more readily be given, subject, of course, to an ap-
propriate order for costs. The following paragraphs consider a number of cases
falling into this category.

**LAND**

2.031        The most important class of case where the expiry of time extinguishes the
plaintiff's right is that relating to land. Section 17 of the 1980 Act provides that,
subject to specified exceptions on the expiry of the limitation period for bringing
any action for the recovery of land (within the extended meaning given to that
phrase by s.38 of the Act[73]), the title of the person whose action is barred shall be
extinguished.

---

[66]    CPR 16PD-014. Although it is in the discretion of the court whether to allow limitation to be relied
upon where it has not been pleaded, it is thought that courts continue to be reluctant to allow
limitation defences which have not been clearly set up.
[67]    *Kennett v Brown* [1988] 1 W.L.R. 582, CA.
[68]    *Unger* (1940) 4 M.L.R. 45.
[69]    See paras 14.036–14.038.
[70]    *C. & M. Matthews Ltd v Marsden Building Society* [1951] Ch. 758; see also *Allen v Waters & Co.*
[1935] 1 K.B. 200.
[71]    See paras 12.019–12.020.
[72]    The former rule was RSC Ord.18 r.8, but the position was the same.
[73]    See para.13.003.

XPIRY OF TIME

quences follow from holding that the
imitation is a matter which must be
ishes to take advantage of it[66] and the
time-barred until that plea is made.[67]
le to take advantage of the lapse of
at this rule does not apply to trustees
rty.[69] Secondly, if the plaintiff is able
the bringing of an action (and which
en his right will be recognised by the
y of obtaining a judicial remedy to
entitled to retain arrears of mortgage
en though his action for those arrears

ISHED

piry of the period of limitation is to
ot clear how this affects the principles
ly, it might be thought that limitation
ut CPR 16PD-014[72] draws no distinc-
at an express plea is still required. It
ases leave to amend the pleadings to
e given, subject, of course, to an ap-
agraphs consider a number of cases

the expiry of time extinguishes the
on 17 of the 1980 Act provides that,
of the limitation period for bringing
the extended meaning given to that
erson whose action is barred shall be

e court whether to allow limitation to be relied
that courts continue to be reluctant to allow
up.

1951] Ch. 758; see also *Allen v Waters & Co.*

n was the same.

---

## PERSONAL PROPERTY

2.032

As is explained in Ch.12, the expiry of the limitation period for an action for conversion will normally have the effect of extinguishing the title of the person deprived to the chattel. This rule is subject to exceptions in the case of stolen property.

## THE CONSUMER PROTECTION ACT 1987

2.033

Section 11A(3) of the 1980 Act[74] provides that the expiry of the 10-year longstop period for the bringing of an action under the Consumer Protection Act 1987 shall operate to extinguish the plaintiff's right of action, even where that right has not accrued at the time. However, this rule does not apply to the expiry of the basic three-year period laid down by the Act. It is therefore to be assumed that this operates merely to bar the remedy.

## THE HAGUE-VISBY RULES

2.034

These Rules, considered extensively at paras 26.002–26.016, govern many contracts for the international carriage of goods by sea. In *Aries Tanker Corporation v Total Transport Ltd*[75] the House of Lords held that the expiry of the one-year time-limit applied under those rules extinguishes the rights of the plaintiff, as well as barring his remedy.

---

[74]   As added by Sch.1 to the Consumer Protection Act 1987.
[75]   [1976] 2 Lloyd's Rep. 256.

Neutral Citation Number: [2010] EWHC 5 (Admin)

Case No: CO/7261/2007

**IN THE HIGH COURT OF JUSTICE**
**QUEEN'S BENCH DIVISION**
**ADMINISTRATIVE COURT**

Royal Courts of Justice
Strand, London, WC2A 2LL

Date: January 4th 2010

**Before:**

**MR JOHN HOWELL QC**
Sitting as a Deputy High Court Judge

**Between:**

**THE QUEEN**

**on the application of**

**ANTHONY McINTYRE** (1)              Claimants
**ELAINE McINTYRE** (2)
**- and -**
**GENTOO GROUP LIMITED**              Defendant

(Transcript of the Handed Down Judgment of
WordWave International Limited
A Merrill Communications Company
165 Fleet Street, London EC4A 2DY
Tel No: 020 7404 1400, Fax No: 020 7404 1424
Official Shorthand Writers to the Court)

**Mr Michael Paget** (instructed by **Harding Swinburne Jackson & Co**) for the **Claimants**
**Mr Sam Grodzinski** (instructed by **Olswang**) for the **Defendant**

Hearing date: November 30th 2009
Further written submissions on December 1st, December 3rd, December 14th and December 18th
2009
**Judgment**
**As Approved by the Court**

**Crown copyright©**

**Mr John Howell QC:**

**INTRODUCTION**

1.    The Claimants, Anthony and Elaine McIntyre, are the assured tenants of a dwelling at 6 Hollywood Avenue, Marley Potts, Sunderland ("*the property*"). Their claim for judicial review impugns the decision taken in April 2007 by their then landlord, North Sunderland Housing Company Limited ("*NSHC*"), to refuse its consent for them to exchange homes with another of that company's assured tenants. Subsequently, in May 2007, NSHC gave them its consent to that exchange but only on the condition that Mr McIntyre first paid what he owed under a court order obtained by Sunderland City Council in 1998.That order related to rent which had not been paid by Mr McIntyre in respect of another dwelling that by 2007 was also owned by NSHC. In effect this claim seeks judicial review of that subsequent decision.

2.    The Defendant, Gentoo Group Limited, is a not-for-profit company limited by guarantee. It is a registered social landlord. It used to be known as Sunderland Housing Company Limited ("*SHCL*"). It is the parent company of a group which includes NSHC as a one of its subsidiaries. NSHC is also a registered social landlord. In July 2007 the ownership of the property was assigned by NSHC to Gentoo Sunderland Limited. That company, which is another subsidiary of the Defendant, is also a registered social landlord. It is that company which filed an acknowledgement of service in relation to this claim. No point is taken about the identification of Gentoo Group Limited as the Defendant.

3.    The Claimants were granted permission to make this claim by Cranston J following a hearing on April 23rd 2008.

4.    This claim requires consideration of the some of the implications of the decisions of the Divisional Court and of the Court of Appeal, in *R (Weaver) v London & Quadrant Housing Trust* [2008] EWHC 1377 (Admin) and [2009] EWCA Civ 587, that decisions of a registered social landlord taken in the discharge of its function of managing and allocating social housing are amenable to judicial review on "conventional public law grounds". It raises the questions (i) whether a decision about a condition upon which permission is given by such a landlord to an exchange by its tenants of their homes is amenable to judicial review and, if it is, (ii) what are the consequences, substantively and procedurally, of the application of public law to a decision by a registered social landlord whether or not (and, if so, how) to exercise its contractual rights.

5.    On behalf of the Claimants Mr Michael Paget contended that NSHC's decision, to give the Claimants consent to the exchange proposed only on the basis that all Mr McIntyre's historic and unenforceable rent arrears in respect of another tenancy had to be paid first, is one amenable to judicial review; that it was a decision which no reasonable person could have taken

**High Court Judgment: Approved for handing down**
**No permission is granted to copy or use in court**

*R (McIntyre) v Gentoo Group Ltd*

in the circumstances; and that NSHC simply applied a blanket policy without considering the Claimants' circumstances.

6.    On behalf of the Defendant Mr Sam Grodzinski contended that NSHC's decision was not one amenable to judicial review. But, even if it was in principle amenable to judicial review, he submitted that this claim for judicial review should be dismissed in any event as the Claimants had and have alternative remedies available to them to resolve any dispute about it. He further contended that the decision impugned was not unreasonable. Finally he submitted that the complaint, that NSHC simply applied a policy and refused to consider the Claimants' circumstances, is a complaint which should not be entertained as it was not raised in the Claimants' grounds and was thus not one to which the Defendant has had an opportunity to adduce evidence in reply. He also submitted that that complaint has no factual basis.

## THE FACTUAL BACKGROUND

7.    The property was originally let to the Claimants jointly on a secure tenancy in May 1984 by Sunderland City Council. Apart from a period in 1996 in which they separated, the Claimants have lived together at the property since then.

8.    In 1996, when separated from his wife, Mr McIntyre lived at another property, 78 Rockingham Road, Redhouse, as the tenant of the City Council. Whilst living there he fell into arrears with his rent. As a result the City Council obtained a judgment from Sunderland County Court against him on April 15th 1998 for £597.80 plus £133.75 in respect of costs.

9.    The City Council made a number of attempts to execute that order. A warrant for execution was first issued in July 1998 and was subsequently re-issued five times. Various unsuccessful attempts were made by the County Court's bailiff to obtain entry to the property and a number of letters addressed to Mr McIntyre at the property were returned to the City Council marked "gone away", despite the fact (as stated in the Amended Statement of Facts and Grounds) that he has lived there since leaving Rockingham Road in December 1996. Mr McIntyre has never been paid any of the amounts that he was ordered to pay by the Sunderland County Court.

10.    On March 26th 2001 both the property and 78 Rockingham Road, as well as over 36,000 other dwellings and certain other premises, were sold by the City Council to SHCL.

11.    That stock transfer brought the Claimants' secure tenancy of the property to an end. Instead, in its place, the Claimants were granted an assured, non-shorthold weekly tenancy by SHCL to begin on March 27th 2001.

12.    The Claimants' assured tenancy agreement expressly provided *inter alia* that:

> "You must not assign all or part of the property without prior written permission of [SHCL]."

But it also made specific provision for "mutual exchanges". It stated that:

> "You have the right to exchange your home with another tenant, providing you meet certain conditions. Please refer to the Tenants' Handbook for further details of the right to exchange and the circumstances in which it applies."

13.     The Tenants' Handbook stated that a tenant had a right to exchange his home with another tenant

> "providing you both meet certain conditions including:

> ▪  You both have your local Housing Company's written consent.

> ▪  You make sure that neither of you is in breach of any of your tenancy conditions or obligations. You must also comply with any reasonable condition attached to your local Housing Company consent relating to the payment of outstanding rent, the remedying of any breach or performing any obligation of the tenancy agreement.

> ▪  The exchange does not result in any property either becoming overcrowded or under occupied."

The Tenants' Handbook also provided that a tenant could also "exchange with another tenant of any local Housing Company in Sunderland Housing Group, Local Authority or Registered Social Landlord throughout the country providing consent is granted". It further indicated that the local Housing Company's permission for an exchange might be withheld but

> "Your local Housing Company will not unreasonably withhold permission. It will not withhold permission on any grounds except those in Schedule 2 to the Housing Act 1988."

14.     Clause 9.1 of the Agreement for the Transfer of Housing Stock between the City Council and SHCL provided that:

> "All arrears of rent due as at the Completion Date from existing and former tenants of the Property [which included all the freehold and leasehold property the subject of the housing stock transfer]....(the "Arrears")...together with all rights to recover the same shall be assigned by the Council to [SHCL]".

Subsequently, in a Deed of Assignment of Rent and Service Charge Arrears and Overpayments dated December 21st 2001, the City Council assigned to SHCL

> "1.1 all the Council's right and remedies for recovery of and interest in the Arrears brief details of which are set out in the Annex hereto; and

> 1.2 (so far as the Council is able) the benefit of any....orders for possession and money judgments obtained by the Council against

Former Tenants and/or other occupiers of the premises comprised in the Property."

15. Guidelines issued by what was then the Department of the Environment provided at that time that no more than 12,000 properties should be held by a registered social landlord. Accordingly the stock transferred to SHCL was transferred to five of its subsidiaries according to their geographical location. Thus, on July 31st 2001, the ownership of a number of premises, including both the property and 78 Rockingham Road, was transferred by SHCL to NSHC (who thus became the Claimants' landlord).

16. It is agreed that whatever rights SHCL had against Mr McIntyre in respect of the arrears of rent at 78 Rockingham Road and the order of the Sunderland County Court as a result of the transactions referred to above were also vested in NSHC.

17. On April 3rd 2007 the Claimants applied for consent to enable them to exchange tenancies with an individual who was another tenant of that company in Corinthian Square.

18. NSHC replied in a letter dated April 5th 2007 stating that consent was refused as there were rent arrears and court costs outstanding in respect of 78 Rockingham Road.

19. It appears that the Claimants' solicitors subsequently had a telephone conversation with NSHC in which an offer was made that, if consent was granted, Mr McIntyre would pay the amount outstanding by instalments. They also wrote to NSHC asking it to reconsider its decision contending that it was unreasonable to withhold consent to an exchange based on an irrecoverable debt; that it meant punishing Mrs McIntyre for a matter not of her own making; and that a strict policy of refusing an exchange on the basis of historical rent arrears was *prima facie* unreasonable.

20. In response, in a letter dated May 17th 2007, NSHC stated that its consent was not being withheld but that it was conditional on Mr McIntyre clearing the Former Tenant Rent Arrears owed to the Sunderland Housing Group before any move; that it was entirely reasonable to require him to pay monies which were outstanding before permitting him to exchange; and that, given the Group's historic dealings with him with respect to the arrears, the offer to pay by instalments after the exchange was not acceptable.

**WHETHER NSHC'S DECISION IS AMENABLE TO JUDICIAL REVIEW**

21. In *R (Weaver) v London & Quadrant Housing Trust* [2009] EWCA Civ 587 the Court of Appeal considered whether a decision by a registered social landlord to terminate a tenancy of social housing was one required to be taken compatibly with Convention rights and whether it was also amenable to judicial review on conventional public law grounds. It was common ground in that case that a registered social landlord was a person some of whose functions were functions of a public nature. The Court of Appeal held by a majority (Elias and Lawrence Collins LJJ, Rix LJ dissenting) that the

decision by a registered social landlord to serve a notice to quit on one of its assured tenants occupying social housing was an act which would be unlawful under section 6 of the Human Rights Act 1998 if it was incompatible with Convention rights as it was an act done in the discharge of its public function of managing and allocating social housing and accordingly that the nature of the act was not "private" the purpose of subsection (5) of that section. The majority in the Court of Appeal also accepted as correct the concession made by counsel for the Housing Trust that, if the act was one to which section 6 of the 1998 Act applied, it was also one also governed by public law and thus susceptible of judicial review on conventional public law grounds (as the Divisional Court had held): see eg per Elias LJ at [5] and [83].

22.    On behalf of the Defendant Mr Grodzinski reserved the right to contend that *Weaver* was wrongly decided if this claim falls to considered hereafter by the Court of Appeal and Supreme Court; that it does not follow from a finding that a decision of a registered social landlord must comply with Convention rights that it is also a decision governed by public law and amenable to judicial review; and that in any event the position of NSHC is distinguishable from that of the London & Quadrant Housing Trust.

23.    At this stage, however, Mr Grodzinski sought to distinguish *Weaver*, and to contend that the decision in this case was not one governed by public law and amenable to judicial review, on three main grounds. These were (i) that a decision to refuse consent to the mutual exchange of a tenancy does not result in the individuals who may be concerned becoming homeless which a decision to terminate a tenancy may do; (ii) that assignment of a secure tenancy by way of exchange falls outside the cases governed by Part VI of the Housing Act 1996 dealing with the allocation of housing accommodation; and (iii) that registered social landlords are not obliged by any enactment to deal with applications for mutual exchange on any particular basis, unlike local housing authorities who must deal with applications for such exchanges in accordance with section 92 of the Housing Act 1985.

24.    Each of these three points is correct. But they do not serve, either individually or collectively, to distinguish this case from *Weaver*. Whether an exchange of social housing should be permitted involves a decision to be taken in the discharge of what the majority in the Court of Appeal regarded as the public function of managing and allocating social housing. This is not merely because (as the Tenants' Handbook in this case recognises) such an exchange may result in a property becoming overcrowded or under-occupied. It may also involve questions about how best to meet not only the need for social housing of those tenants wishing to exchange and their families but also the need of others for it. Like a decision to terminate a tenancy, in some cases it may also engage an individual's right to respect for his or her private and family life.

25.    Thus the fact that registered social landlords may have greater freedom than local housing authorities have in responding to applications for mutual exchange does not mean that such applications do not require them to take

High Court Judgment: Approved for handing down
No permission is granted to copy or use in court

decisions in the discharge of what the Court of Appeal regarded as their public function of managing and allocating social housing. Nor did the majority of the Court of Appeal intend to limit that function to the doing of those things that are governed in the case of a local housing authority by Part VI of the Housing Act 1996 which regulates the allocation of housing by such an authority. Indeed a decision to terminate a tenancy by a local housing authority is not governed by those provisions: see section 159(2) of the 1996 Act. The fact that such a decision may result in an individual becoming homeless was not the basis for regarding that decision in *Weaver* as not constituting an act of a private nature. The decision was so regarded because it was one taken in the discharge of what the Court of Appeal regarded as a registered social landlord's public function of managing and allocating social housing. That explains why it also was considered susceptible to a claim for judicial review. Such a claim is one to review the lawfulness *inter alia* of "a decision, action or failure to act in relation to the exercise of a public function": see CPR Part 54 rule 54.1(2)(a)(ii).

26.    Mr Grodzinski had a further argument why NSHC's decision in this case was not amenable to judicial review. The condition it imposed, he submitted, was no more or less than a requirement to comply expressly with a condition set out in the Claimants' assured tenancy as a condition which might be imposed on a consent to a mutual exchange. Although NSHC had a choice whether or not to impose that condition, its decision to do so had no public law element. It was merely the exercise of an existing contractual right. It simply involved the application of a condition relating to the payment of outstanding rent which was specifically envisaged in the Tenants' Handbook. Mr Grodzinski's submission assumes that the condition imposed fell within that description, an assumption which I do not accept for reasons which I shall explain. But, even if that assumption had been well founded, NSHC was not obliged to impose that condition. It had a discretion whether or not to do so, a discretion which fell to be exercised as part of its function of managing and allocating social housing. Indeed it is the Defendant's case that imposing the condition which NSHC did in this case (and others like it in other cases) was a reasonable and proportionate way of managing such social housing. What makes public law applicable is that the decision was one taken in relation to the exercise of a public function. There is no additional requirement that the specific decision impugned has itself to have some other and further "public law element" (whatever that might mean and involve).

27.    In my judgment, therefore, the decision in *Weaver* is directly applicable. The declaration granted by the Divisional Court in that case, that the defendant was amenable to judicial review on conventional public law grounds in respect of decisions taken in the performance of its function of managing and allocating its housing stock (or perhaps more accurately, as the majority of the Court of Appeal thought, its stock of social housing), applies not merely to decisions concerning the termination of a tenancy of social housing but also to those concerned with the mutual exchange of such tenancies.

## THE RELATIONSHIP BETWEEN PRIVATE AND PUBLIC LAW

28.     Underlying some of Mr Grodzinski's specific submissions on the amenability of the decision in this case to judicial review on "conventional public law grounds" is an assumption that public law makes no difference when considering the lawfulness of an exercise of a contractual right, particularly one that must be exercised reasonably.

29.     The fact that a right may have been exercised in accordance with the terms of a contract that confers it does not necessarily mean that the decision to exercise that right is one that may not be invalid as a matter of public law. Before tenants of local housing authorities were given statutory security of tenure, for example, the Court of Appeal held that the validity of such an authority's decision to serve a notice to quit could be impugned on the ground of unreasonableness: see *Cannock Chase DC v Kelly* [1978] 1 WLR 1 per Megaw LJ at p6, per Lawton LJ at p9-10. Similarly a registered social landlord's decision to serve a notice to quit on an assured tenant of social housing may also be impugned on conventional public law grounds in accordance with the decision in *Weaver*. Thus, even if the exercise of a contractual right may be unfettered as a matter of private law, that does not mean that the decision to exercise it may not be impugned in public law, for example on *Wednesbury* grounds.

30.     Mr Grodzinski's general approach may have more apparent plausibility in the case of contractual rights which may only be exercised reasonably or not unreasonably or to impose reasonable conditions or obligations. But, even if the requirements and consequences of public and private law were identical in such cases, it would not mean that the only law applicable was private law. What it would mean is that there would be much to be said for refusing permission for, or relief in, claims for judicial review by any other party to the contract as there would be an alternative remedy available to them in other proceedings. Judicial review is not a procedure to be used to provide a party to a contract with a better remedy for a breach of contract than contract law itself provides: see *Hampshire County Council v Supportways Community Services Ltd* [2006] EWCA Civ 1035 per Dyson LJ at [42] and per Mummery LJ at [61].

31.     In the case of contractual rights which may only be exercised reasonably or not unreasonably or to impose reasonable conditions or obligations, however, there are at least four main areas where the requirements and consequences of public and private law may diverge (disregarding for present purposes any additional requirement to act fairly or to give effect to a legitimate expectation that public law may impose).

    i)      First there may be a difference in what matters fall to be assessed as reasonable or unreasonable. Thus public law may affect the process by which a decision is reached to exercise such a right (including the considerations taken into account and the purpose for which the right may be exercised) as well as requiring the result not to be objectively unreasonable. In private law by contrast the objective reasonableness of what is done may be the only relevant matter. In other cases the reasons

why that result was in fact chosen may also be material. There is, therefore, no necessary identity in what matters falls to be assessed as reasonable or unreasonable in public and private law.

ii)     Secondly the perspective from which the reasonableness or unreasonableness of what is done falls to be assessed may be markedly different. Normally the functions which are vested in a public authority, and the rights which it may acquire in discharging them, fall to be exercised in the public interest for the purpose for which the function was conferred having regard to the consequences of their exercise for others. The reasonableness of their exercise does not normally fall to be assessed purely by reference to the interests of the public authority itself since functions are not normally vested in such a body for its own benefit. By contrast the reasonableness of the exercise of some rights in private law may fall to be assessed simply by reference to the particular legitimate interests of the person having that right. In such a case a right might be exercised reasonably (or not unreasonably) as a matter of private law but unreasonably as a matter of public law.

iii)    Thirdly the onus of proof and the standard of reasonableness to be deployed in resolving any dispute about the exercise of the right may vary. In public law, for example, the onus is on a claimant to show that a public authority's decision was one no reasonable person could have made in the circumstances. In private law the onus may instead be on the person exercising a right to show that what he has done is reasonable.

iv)     Finally the persons who may be able to challenge the reasonableness of what is done may be different. In public law anyone with a sufficient interest may do so. In private law it is normally only another party to the contract who may do. In this case, for example, the person with whom the Claimants wished to exchange tenancies might have challenged NSHC's decision to grant the Claimants a conditional consent to that exchange if that decision was unlawful in public law even though as a matter of private law that person may not have been able to do so.

32.     Ultimately the extent to which there may be differences in connection with the exercise of a contractual right between the requirements of public and private law and the consequences of their application will depend in part on an analysis of what that right, and disputes about its exercise, involve as a matter private law. But it may also depend in part on what is involved in treating a decision of a body discharging a public function as being amenable to judicial review in respect of the exercise of a contractual right on "conventional public law grounds". In particular it is necessary to consider what the significance may be in public law of what may be unlawful as a matter of private law.

33.     The validity of a decision of public authority may normally be impugned as a matter of public law if it misdirects itself in law either about the statutory

or prerogative power which it is deciding whether or not to exercise or (except in the case of courts and tribunals in some cases) about the law which falls to be applied in its exercise. That law also necessarily governs what may be a relevant or a legally irrelevant consideration in any decision whether or not (and, if so, how) to exercise the statutory or prerogative power in question.

34.    Where the question for a public authority is whether or not (and, if so, how) to exercise a contractual right the issue may not necessarily be the same. Private law governing that contractual right does not limit the legal capacity of a public authority: it limits what it has a right to do in that particular case. If a public authority may lawfully exercise that right as a matter of private law, therefore, it may be able to take into account, when deciding whether or not to exercise that right as a matter of public law, matters which would be irrelevant in private law. Conversely a contractual right may be exercisable as a matter of private law in a manner which it would not be capable of being exercised in public law as the considerations which a public body may take into account in exercising its public functions may be narrower than those which a person not exercising such functions may do: see eg *Hang Wah Chong Investment Co. Ltd v the Attorney General for Hong Kong* [1981] 1 WLR 1141.

35.    What public law may require is not necessarily to be equated, therefore, with what contract law may require. Thus it may be possible, for example, that a public authority could decide to break its contractual obligations and pay damages in respect of any resulting loss lawfully as a matter of public law if the public interest so required. Similarly, in a case of legal uncertainty, it may be possible that a public authority could decide not unreasonably to seek to rely on a contractual right, or on a mode of exercising it, to which it may well not be entitled having had regard to the public interest and its fiduciary duty towards those who may be required to finance its activities. Nor does every legal error made by a public authority necessarily mean that its decision is invalid in public law. For example public authorities have a power to compromise claims provided that, in doing so, they do not undertake to do anything they have no power to do: see eg *Hazell v the Council of the London Borough of Hammersmith and Fulham* [1992] 2 AC 1 per Lord Templeman at p38. The fact that a public authority may be mistaken about the law in deciding whether (and, if so, how) to compromise a claim does not mean that its decision to compromise it or the compromise itself is invalid (provided that it has power to do anything which it undertakes to do as part of the compromise).

36.    Nonetheless, when a public authority decides whether or not (and, if so, how) to exercise any contractual right it may have, it must consider whether it can do so lawfully as a matter of private law. No reasonable public authority would do otherwise. Of course failure to do so may be immaterial if there is a contractual right to do what the authority may decide to do. However, if a public authority simply assumes, or decides to act on the basis, that it has a contractual right to do what it decides to do or, when doing so, takes into account something that it may not do as a matter of

private law, then it has equally misdirected itself in law or taken into account what in the circumstances is a legally irrelevant consideration when discharging the public function in question and it has thereby erred in public law. In such a case the other contracting party will no doubt have an alternative remedy available in private law and it may well find that permission to apply for, and any relief sought on, a claim for judicial review will be refused. But it is possible that there may be some occasions in which others adversely affected may have sufficient standing to apply for judicial review if a decision taken in relation to the discharge of a public function is thus erroneous in law (as indicated above) or the question of its lawfulness may arise in other proceedings. The fact that such a decision is taken in relation to the discharge of a public function makes it likely that there will be others who may be adversely affected by it, including those who may be required to help finance the authority's activities.

37. Against that background it is necessary to consider, therefore, what the position in private law governing NSHC's decision was; whether the Claimants' contention that the decision was unlawful in public law is well founded and what (if anything) it may add to any complaint they may have had in private law; and whether in any event relief ought to be refused if there was and is an alternative remedy available to them.

## THE PRIVATE LAW APPLICABLE TO NSHC'S DECISION

38. The Claimants have the right in accordance with their assured tenancy agreement to exchange their home with another assured or secure tenant if each has their landlord's written consent and any conditions imposed are met. That agreement states that the Claimant's landlord "will not unreasonably withhold permission" to the exchange and that it "will not withhold permission on any grounds except those mentioned in Schedule 2 to the Housing Act 1988". The parties agree that tenancy agreement does not expressly limit the conditions which may be imposed on any such permission. But it specifically states that the Claimants "must…comply with any reasonable condition attached to your local Housing Company consent relating to the payment of outstanding rent, the remedying of any breach or performing any obligation of the tenancy agreement."

39. There are two relevant preliminary questions which arise in private law about the Claimants' right to exchange: (i) whether section 1 of the Landlord and Tenant Act 1988 applies to its exercise; and, if it does, (ii) what are the consequences of its application.

*(i) whether section 1 of the Landlord and Tenant Act 1988 applies to the Claimants' right to exchange*

40. Section 1 of the Landlord and Tenant Act 1988 applies where a tenancy (other than a secure tenancy or an introductory tenancy) includes a covenant, condition or agreement on the part of the tenant not to assign the tenancy without the consent of the landlord and that provision is subject to the qualification that the consent is not to be unreasonably withheld (whether or

not it is subject to any other qualification): see sections 1(1), 5(1) and (3) of the 1988 Act.

41.    Mr Grodzinski contended on behalf of the Defendant that section 1 of the Landlord and Tenant Act 1988 did not apply to the Claimants' right to exchange on the grounds (i) that the right to assign in the Claimants' assured tenancy was not subject to the qualification that the consent required was not to be unreasonably withheld and (ii) that the contractual provision in relation to exchange is not in the same terms as envisaged in that section.

42.    There is an express general provision in the Claimants' assured tenancy which limits their right to assign it so that they may not assign all or part of the property without the prior permission of their landlord. As an *express* term of their assured tenancy, that provision is qualified in any event by a proviso to the effect that such permission will not be unreasonably withheld by virtue of section 19(1) of the Landlord and Tenant Act 1927. The application of section 19 of the 1927 Act is excluded only when a term restricting assignment without the consent of the landlord is *implied* in an assured tenancy by virtue of section 15 of the Housing Act 1988: see section 15(1)-(3) of the 1988 Act. Accordingly Mr Grodzinski's contention, the right to assign in the Claimants' assured tenancy was not subject to the qualification that consent required was not to be unreasonably withheld, is wrong.

43.    Mr Grodzinski's second point, as I understand it, is that the Claimants' right to exchange is not one that involves the exercise of any right to assign their tenancy. He submitted that, where the tenants agree, any such exchange will be effected by way of surrender of the respective tenancies and the grant of new tenancies. Where they do not agree, he stated that the Defendant would allow a form of mutual exchange of the tenancies by way of assignment.

44.    In my judgment the right to exchange conferred by the Claimants' assured tenancy agreement is one to be exercised by the assignment of their tenancy. It is to be noted that the Claimants' right is to exchange with another of their landlord's assured tenants or with the tenant of another local housing company in the Sunderland Housing Group, the tenant of another registered social landlord or the tenant of a local housing authority. Where a secure tenant of such a housing authority wishes to exchange his tenancy with an assured tenant of a registered social landlord, he does so by assigning his secure tenancy to the assured tenant: see section 92 of the Housing Act 1985. That assignment is an agreement to which the landlord is not a party: *Sanctuary Housing Association v Baker* (1998) 30 HLR 809. In such a "exchange" the assured tenant will equally assign his tenancy to the secure tenant. Mr Grodzinski's contention gives no weight to the fact that what is involved is indeed an "exchange" between the two, not a multi-party agreement involving their landlords accepting surrenders and granting new tenancies on unspecified terms to the tenants involved. There is, of course, a general restriction in the Claimants' assured tenancy on their right to assign without permission. In my judgment the provision for exchange in the Claimants' assured tenancy agreement is a specific provision governing assignment in a particular case which not merely states that permission for

High Court Judgment: Approved for handing down
No permission is granted to copy or use in court

the exchange may not be unreasonably refused but which also significantly limits the grounds upon such permission may be refused. Thus NSHC's own policy states that "assured tenants have a legal right to mutually exchange their tenancy and a limited right to assign in other circumstances."

45.    No doubt in practice, if the tenants involved and their landlords agree that the existing tenancies should be surrendered and new tenancies should be granted on the same or different terms as those surrendered, there may be no assignment by each tenant to the other of their tenancy. But the Claimants' contractual right is the right to assign their tenancy in exchange for that another eligible tenant subject to any condition which their landlord may impose when their landlord cannot reasonably refuse its permission on one of the stated grounds. Such an assignment is not something which their landlord "may allow" if the tenants do not agree to surrender their existing tenancies and accept the grant of new tenancies, as Mr Grodzinski suggested. In such circumstances it is what they are entitled to do.

46.    In my judgment NSHC's decision on the Claimants' application for consent to the exchange was thus one to which section 1 of the Landlord and Tenant Act 1988 applied.

*(ii) the consequences of the application of section 1 of the Landlord and Tenant Act 1988*

47.    In a case to which section 1 of the Landlord and Tenant Act 1988 applies, when the tenant serves a written application for consent, the landlord must serve a written notice on the tenant within a reasonable time specifying the reasons for withholding that consent (if it is withheld) and the conditions imposed (if it is granted subject to conditions). The landlord also owes a duty to give consent, except in a case where it is reasonable not to give it, and that duty is not satisfied if consent is granted subject to any condition that is not a reasonable condition: see section 1(3)(a) and 1(4) of the 1988 Act. Civil proceedings may be brought from a breach of these duties (which are owed to the tenant seeking consent, not to any potential assignee) in the same manner as any other claim in tort for breach of statutory duty: see section 4 of the 1998 Act; *Footwear Corporation v Amplight* [1999] 1 WLR 551 at p559. Moreover, if a dispute arises whether a refusal of consent or a condition subject to which it is given was reasonable, it is for the landlord to show that it was: see section 1(6) of the 1988 Act.

48.    There are three overriding principles in determining such a dispute between landlord and tenant following the imposition of a condition or the withholding of consent, which were identified by Lord Bingham in *Ashworth Frazer Ltd v Gloucester City Council* [2001] UKHL 59, [2001] 1 WLR 2180,:

"3..........The first, as expressed by Balcombe LJ in *International Drilling Fluids Ltd v Louisville Investments (Uxbridge) Ltd* [1986] Ch 513, 520 is that

*R (McIntyre) v Gentoo Group Ltd*

"a landlord is not entitled to refuse his consent to an assignment on grounds which have nothing whatever to do with the relationship of landlord and tenant in regard to the subject matter of the lease ..."

The same principle was earlier expressed by Sargant LJ in *Houlder Bros & Co Ltd v Gibbs* [1925] Ch 575, 587:

"in a case of this kind the reason must be something affecting the subject matter of the contract which forms the relationship between the landlord and the tenant, and ... it must not be something wholly extraneous and completely dissociated from the subject matter of the contract."

While difficult borderline questions are bound to arise, the principle to be applied is clear.

4. Secondly, in any case where the requirements of the first principle are met, the question whether the landlord's conduct was reasonable or unreasonable will be one of fact to be decided by the tribunal of fact. There are many reported cases... care must be taken not to elevate a decision made on the facts of a particular case into a principle of law. The correct approach was very clearly laid down by Lord Denning MR in *Bickel v Duke of Westminster* [1977] QB 517, 524.

5. Thirdly, the landlord's obligation is to show that his conduct was reasonable, not that it was right or justifiable. As Danckwerts LJ held in *Pimms Ltd v Tallow Chandlers Company* [1964] 2 QB 547, 564: "it is not necessary for the landlords to prove that the conclusions which led them to refuse consent were justified, if they were conclusions which might be reached by a reasonable man in the circumstances ..." Subject always to the first principle outlined above, I would respectfully endorse the observation of Viscount Dunedin in *Viscount Tredegar v Harwood* [1929] AC 72, 78 that one "should read reasonableness in the general sense". There are few expressions more routinely used by British lawyers than "reasonable", and the expression should be given a broad, common sense meaning in this context as in others."

49.     The circumstances in which a landlord may be required to take into account anything other than his own interests, however, are exceptional. As Carnwath LJ put it in *NCR Limited v Riverland Portfolio No 1 Limited* [2005] EWCA Civ 312,

"34......there is no doubt that the lessor is normally entitled to be guided by reference to his own interests alone. As Lord Rodger accepted in *Ashworth Fraser*:

"... the court is not concerned with whether or not the terms of the contract are reasonable as between the parties. The court is

*R (McIntyre) v Gentoo Group Ltd*

concerned only with the assignment and with whether or not it is reasonable for the landlord to withhold consent to that assignment...." (para [69]).

..........

35. However, there may be exceptions. In the *International Drilling* case, where the authorities were considered by Balcombe LJ. He found "two streams of authority" which he reconciled in the following passage:-

> "A proper reconciliation of those two streams of authority can be achieved by saying that while a landlord need usually only consider his own relevant interest, there may be cases where there is such a disproportion between the benefit to the landlord and detriment to the tenant if the landlord withholds his consent to an assignment that it is unreasonable for the landlord to refuse consent." ([1986] 1Ch 513, 521C-D)

In that case the Court of Appeal upheld the finding of the judge that the refusal had been unreasonable. Balcombe LJ thought it right to take into account the fact that the decision resulted in the premises being left empty. He said:-

> "Although (the judge) did not expressly mention the disproportionate harm to the tenants if the landlords were entitled to refuse consent to the assignment, compared with the minimum disadvantage which he clearly considered the landlords would suffer by a diminution in the paper value of the reversion – 'paper value' because he was satisfied there was no prospect of the landlords wishing to realise a reversion – he clearly recognised the curious results to which the landlord's arguments based solely upon a consideration of their own interests could lead." (p 521G-H).

36. The judge had referred to the unfairness of an approach which had the effect that, the more the substantial the lessee, the more easily the landlord would be able to justify a refusal of consent since unless the proposed assignee's covenant was as strong, a reasonable man might form the view that the market would regard the reversion as less attractive. Balcombe LJ commented:-

> "In my judgment the gross unfairness to the tenants of the example postulated by the judge strengthens the arguments in favour, in an appropriate case of which the instant case is one, of it being unreasonable for the landlord not to consider the detriment to the tenant if consent is refused, where the detriment is extreme and disproportionate to the landlord."

That passage needs to be seen against the background of the judge's conclusions in that case, which included findings that there was "no

possibility" that the proposed use would have a depreciatory effect on the letting value at the end of the lease; that there was no significant danger that the rent would not be paid throughout the term; that the rent obtainable on future rent reviews would not be prejudiced; and that the was "no prospect" of the property being placed on the market or mortgaged to the fullest extent possible. (p 518 F-G)"

As Carnwath LJ later observed (at [51]),

"the approach taken in that case was exceptional, and dependent on the strong findings made by the judge."

50.   This approach to the question of what may be reasonable may have a different focus in such cases from that which may apply in public law. Normally a person discharging a public function does not do so in his own interests. Such a person discharges it in the public interest for the purpose for which the function was conferred having regard to the consequences for those who may be beneficially or adversely affected by any decision it may take. The difference may be less marked, however, where the landlord is a registered social landlord when it is managing and allocating its social housing as such a body is not profit-making. But there may remain features of a transaction (such as, for example, the effect of a refusal of permission or a condition imposed on a person wanting to participate in an exchange who is not its tenant) which may at least arguably be irrelevant to the reasonableness of its decision under the 1988 Act but relevant to its decision as a matter of public law. In public law, at least arguably, the scales may also not be so heavily weighted in favour of the landlord's interest. Whether it is necessary in this case to come to any conclusion on these matters I will consider below in the light of the particular grounds raised.

## THE GROUNDS ON WHICH NSHC'S DECISION IS CHALLENGED

51.   The Claimants' case is that no reasonable public body could have decided that consent should only be granted for the exchange which they proposed if Mr McIntyre first paid the amount due under the order of the Sunderland County Court in 1998 given (a) that amount, and the rent arrears to which that order related, were irrecoverable by NSHC and (b) that, in any event, both relate to a different property, 78 Rockingham Road. Mr Paget also submitted that it was unreasonable for NSHC to require payment at all since the amount involved is relatively small and the Claimants have discharged their obligations with respect to rent on the property. He further submitted that it was unreasonable in any event for NSHC to refuse the offer made that Mr McIntyre would pay off the amount requested by instalments after any exchange. He finally contended that NSHC simply applied a blanket policy without considering the Claimants' circumstances.

52.   Mr Grodzinski submitted that NSHC was a non-profit making company limited by guarantee with responsibilities in connection with the social housing it provided and that, in making its consent conditional on Mr McIntyre first paying what was due to it before he could obtain a benefit from it, it was simply adopting a sensible, cost-effective and proportionate

approach to obtaining payment of a small debt it was owed on the recovery of which Sunderland City Council had already expended resources fruitlessly. He contended that all NSHC was doing was imposing a "reasonable condition...relating to the payment of outstanding rent" specifically envisaged by the Tenants' Handbook. He also pointed out, by way of analogy, that there is a well established principle that a mortgagor cannot redeem except on payment of all arrears of interest including those which may have become statute-barred: see *Re Howell's Application* [1972] Ch 509 at p513; *Ezekiel v Orakpo* [1997] 1 WLR 340 CA at p347, and *Yorkshire Bank Finance v Mulhall* [2008] EWCA Civ 1156, [2009] 1 P&CR 16 CA.

53.    It is convenient to consider initially Mr Paget's submissions (i) that the amounts to which the condition impugned related were not amounts to which NHSC ever acquired any right; (ii) that they were in any event irrecoverable by reason of the lapse of time since the rent accrued and the order was made against Mr McIntyre and the significance of that if they were; and (iii) about the significance of the fact that they related to 78 Rockingham Road. I will then consider his other contentions against the background of my conclusions on these matters.

*(i) whether NSHC ever had any right to the amounts to which the condition impugned related*

54.    Mr Paget claims that the amount due under the order of Sunderland County Court and the rent arrears to which it related were both irrecoverable by NSHC on the ground (a) that the right to the benefit of both was not assigned by the Sunderland City Council to SHCL and (b) that in any event Mr McIntyre would have had a defence to any claim in respect of them by virtue of the Limitation Act 1980.

55.    Whether the benefit of the court order and the right to any rent arrears in respect of 78 Rockingham Road were assigned by Sunderland City Council to SHCL depends on the terms of the Deed of Assignment of Rent and Service Charge Arrears and Overpayments (referred to in paragraph [14] above).

56.    Mr Paget submitted that there was no evidence that the City Council's rights in relation to the arrears of rent at 78 Rockingham Road were assigned by virtue of Clause 1.1 of that Deed. Clause 1 stated that the intent was that SHCL should "have the right to recover all arrears of rent and (where applicable) service charge ("the Arrears"): see Clause 1. The Deed was intended to give effect to the obligation imposed by Clause 9.1 of Agreement for the Transfer of Housing Stock (set out in paragraph [14] above) to assign all such arrears due at the Completion Date from existing and former tenants of the dwellings transferred, which would have included Mr McIntyre's rent arrears in respect of 78 Rockingham Road. The Annex referred to in Clause 1.1 is apparently a lengthy computer print out. No reference can be found in it, however, to the arrears in respect of 78

Rockingham Road. It appears, therefore, that the right to those arrears may not have been assigned to SHCL.

57.    But in any event it is plain that the benefit of any orders for money judgments obtained by the City Council against former tenants of premises comprised in Clause 9.1 of the stock transfer were assigned by Clause 1.2 of the Deed of Assignment to SHCL. That unarguably included the money judgment obtained against Mr McIntyre in respect of 78 Rockingham Road (as Mr Paget has now conceded).

58.    Accordingly in my judgment SHCL became entitled by virtue of the Deed of Assignment to the benefit of the court order which the City Council had obtained in 1998 against Mr McIntyre.

*(ii) whether the amounts were irrecoverable by NSHC and the significance of that if they were*

59.    The Claimants' case assumes that, by virtue of the time which has elapsed since it was made, the amounts payable in accordance with the order of the Sunderland County Court are now irrecoverable. That assumption is not correct.

60.    True it is that, by virtue of section 19 of the Limitation Act 1980, no action may be brought to recover arrears of rent after the expiration of six years from the date on which the arrears became due. But that provision is irrelevant in any event in relation to the bringing of any action now to recover the arrears of rent which Mr McIntyre owed on 78 Rockingham Road. No such action could have been brought in respect of the arrears of rent to which the order of Sunderland County Court related after that order was made. The cause of action in respect of those arrears was merged in the judgment: see eg Halsbury's Laws of England Volume 9 *Contract* 4th ed reissue at [1063]. In terms of securing payment of the amounts in question with the assistance of the court, therefore, the relevant question concerns that order.

61.    Section 24(1) of the Limitation Act 1980 provides that an action shall not be brought upon any judgment after the expiration of six years from the date on which the judgment became enforceable. But the House of Lords has held, in *Lowsley and another v Forbes* [1999] 1 AC 329, that "an action upon any judgment" in that section refers only to a fresh action brought upon it to obtain a second judgment that could be executed and that accordingly proceedings to execute a judgment debt are not an "action upon a judgment" for this purpose: see per Lord Lloyd at p342; *Ridgeway Motors (Isleworth) Ltd v ALTS Limited* [2005] EWCA Civ 92, [2005] 1 WLR 2871, per Mummery LJ at [29].

62.    The Limitation Act 1980 does not provide for any limitation period in respect of the execution of a judgment that has been obtained. A writ or warrant of execution to enforce a judgment or order may only be issued, however, where six years or more have elapsed since the date of the judgment or order, with the permission of the court: see CPR Schedule 1,

RSC Order 46 r2(1)(a), CPR Schedule 2 CCR Order 25 r5(1)(a). The lapse of six years may, and ordinarily will, in itself justify refusing a judgment creditor permission to issue the writ or warrant of execution, unless the judgment creditor can justify the granting of permission by showing that the circumstances of his or her case takes it out of the ordinary: see *Patel v Singh* [2002] EWCA Civ 1938 per Peter Gibson LJ at [24]. But neither RSC Order 46 r2(1)(a) nor CCR Order 25 r5(1)(a) of itself bars proceedings to issue a writ or warrant of execution in respect of a judgment debt six years after the order was obtained. Whether permission would be ever granted to issue a writ of execution in respect of the order of the Sunderland County Court, however, is not a question for determination, or one which is capable of determination given the information available, on this claim.

63. Nor does the fact that more than six years have elapsed since the order was made preclude recovery of the debt it created by means, such as a winding up or bankruptcy petition, which do nor involve a fresh action brought upon it to obtain a second judgment: see *Ridgeway Motors (Isleworth) Ltd v ALTS Limited supra* per Mummery LJ at [29] and [35(2)].

64. It follows that debt created by the order of the Sunderland County Court cannot be regarded as necessarily irrecoverable (as the Claimants' case has assumed). The premise for the Claimants' arguments on this point is thus flawed.

65. In my judgement, however, the Claimants' case (insofar as it is based on the time which has elapsed since the rent accrued in respect of 78 Rockingham Road and the order of the County Court was made) would have not have been improved had the premise been well founded.

66. As Mr Grodzinski correctly submitted, the relevant provisions of the Limitation Act 1980, if applicable, only bar a claim or action. They do not of themselves extinguish any liability in respect of which such a claim or action might otherwise have been brought. As Cotton LJ stated in *Curren v Milburn* (1889) 42 Ch D 424 CA at p434-5, "statute-barred debts are due, though payment of them cannot be enforced by action". "It seems to me to be clear law that the expiry of the limitation period bars the remedy by action and does not extinguish the right": see per Diplock J (as he then was) in *Norwegian Government v Calcutta Marine Engineering Co. Ltd* [1960] 2 Lloyds Rep 431 at p442. Similarly a judgment debt still remains due, and a liability of the person ordered to pay, after six years: see *Ridgeway Motors (Isleworth) Ltd v ALTS Limited supra* per Mummery LJ at [35(2)]. Thus a refusal to give permission to issue a writ or warrant of execution does not extinguish the debt nor does it necessarily preclude a subsequent application for such permission: cf *WT Lamb & Sons v Rider* [1948] 2 KB 331 per Scott LJ at p334.

67. Mr Paget submitted that the condition which NSHC imposed represented an attempt by it to by-pass the requirement to obtain permission to issue a writ or warrant of execution in respect of the judgment debt. Obviously, if the condition it imposed had been complied with, NSHC would have had no need to obtain such permission. But NSHC was under no requirement to

seek permission to issue a writ or warrant of execution in order to recover what it was owed by Mr McIntyre if it could obtain payment by other means.

68. For the purpose of considering the significance of the lapse of time since the order of the County Court was made and the arrears to which it related accrued, I shall assume that they related to the property. I shall consider later the significance of the fact that they related to 78 Rockingham Road.

69. It may well reasonable in some circumstances for a landlord to refuse permission to an assignment, or to impose conditions, in order to secure that the terms of the tenancy are complied with. It may well be more difficult to secure the discharge by a tenant of his obligations after his tenancy has been assigned. Such a concern would plainly be something that had to do with the relationship of landlord and tenant in regard to the subject matter of the lease and thus something that satisfied the first principle identified by Lord Bingham in *Ashworth Frazer Ltd v Gloucester City Council*.

70. Mr Paget contended, however, that the condition impugned was not one relating to the payment of outstanding rent as described in the Tenants' Handbook. He submitted that, quite apart from the fact that it related to amounts due in respect of 78 Rockingham Road, any rent not paid by Mr McIntyre was not now "outstanding" as it could not be recovered by a claim as it would be time-barred. In that connection he drew attention to section 92(5) of the Housing Act 1985 on which he suggested the Tenants' Handbook was modelled in this respect. That subsection identifies the only condition which a local housing authority may impose on any consent which it may give to one of its secure tenants to assign his tenancy to another secure tenant or to an assured tenant of certain providers of social housing by way of mutual exchange. Subsection (5) provides that:

> **"Where rent lawfully due from the tenant has not been paid or an obligation of the tenancy has been broken or not performed, the consent required by virtue of this section may be given subject to a condition requiring the tenant to pay the outstanding rent, remedy the breach or perform the obligation."**

Mr Paget submitted that rent is not "lawfully due", and accordingly cannot be "outstanding", if a claim for it would be statute-barred. Mr Grodzinski's response was that a statute-barred debt is still one which is due.

71. Mr Paget may well be correct that rent is not "lawfully" due for the purpose of Part IV of the Housing Act 1985 if a claim for it is statute-barred. Thus one of the grounds on which possession of a dwelling let under a secure tenancy may be ordered under that Part is that "rent lawfully due from the tenant has not been paid or an obligation of the tenancy has been broken or not performed", the same phrase as is used in section 92(5): see section 84 of, and Ground 1 in Part 1 of Schedule 2 to, the Housing Act 1985. There is the same requirement that rent be "lawfully due" but unpaid for an order of possession to be granted of an assured tenancy: see Grounds 8 and 10 in Schedule 2 to the Housing Act 1988. Those requirements for an order of possession to be granted reflect a ground on which dwellings subject to the

*R (McIntyre) v Gentoo Group Ltd*

Rent Acts could also be recovered. In that context the Court of Appeal considered that "rent is not lawfully due unless it can be recovered by process at law": see *Bird v Hildage* [1948] 1 KB 91 at p99. Of course there may be other circumstances, such as the existence of a set-off, in which rent ostensibly due may not be "lawfully" due. But it may be that rent is also not "legally due" when it is statute-barred, as Mr Paget suggested. Indeed it may be thought odd that an order for possession might be obtained in such a case.

72.    I do not propose to reach any conclusion on that point, however, as it is unnecessary to do so. The Tenants' Handbook (unlike section 92(5) of the Housing Act 1985) does not provide that the condition relating to "outstanding rent" which it describes may be imposed only if rent lawfully due from the tenant has not been paid. Rent may simply be "outstanding" if it is due and has not been paid. Moreover, and more significantly, the terms of the Claimants' assured tenancy do not limit the conditions that the landlord may impose when giving consent to a mutual exchange to the conditions specifically mentioned (as both parties agree). Accordingly, even if the specific condition referred to in the Tenants' Handbook as one which might be imposed does not cover the condition actually imposed by NSHC, the question would still remain (on any claim for judicial review) whether the decision to impose it on the consent given to the Claimants was one no reasonable landlord of social housing could have imposed in the circumstances.

73.    In that respect Mr Grodzinski's invocation by analogy of the principle that a mortgagor cannot redeem except on payment of all arrears of interest (including those which may have become statute-barred) is not exact. The amounts of interest in question are those owed to the mortgagee in respect of the mortgaged property. Here the amounts outstanding were not owed in respect of the property sought to be exchanged, a distinct objection raised by Mr Paget (which I shall consider separately below). For the purpose simply of considering the significance of the time which has elapsed since the county court order was made against Mr McIntyre, however, I am assuming that the court order and rent arrears related to the property. On that assumption the distinction between defending a claim that is statute-barred and the terms on which it may be just to allow a right to be exercised made in the context of mortgage redemption is of some assistance in considering whether or not the condition NSHC imposed was unreasonable. As Kindersely VC stated in *Edmunds v Waugh* (1866) LR 1 Eq 418 at 421 (in a passage cited by Pennycuick VC in *Re Howell's Application supra* at p666), "is the omission of the mortgagor to pay the interest which he ought to have paid less culpable than the omission of the mortgagee to demand and enforce payment of it?" Moreover, in considering relative culpability for the fact that the amount under the order of the Sunderland County Court has remained outstanding since 1998 and whether that may have made insistence on its payment in 2007 unreasonable, the fact that the repeated efforts of Sunderland City Council to enforce the order it obtained were frustrated cannot be ignored. Nor is there any evidence that the City Council, SHCL or NSHC ever informed Mr McIntyre that he need not pay the amounts ordered.

74.    In my judgment it cannot be said that no reasonable landlord of social housing could have made payment of any amount due from Mr McIntyre a condition of its consent to a mutual exchange of his joint tenancy merely on the ground of the lapse of time since the order was made by Sunderland County Court.

*(iii) the significance of the fact that the arrears of rent and the order of the County Court related to 78 Rockingham Road, not the property*

75.    Mr Paget also contended that it had been unreasonable to impose the condition on the consent given to the Claimants because the rent outstanding and the County Court judgment did not relate to the property and, contrary to the Defendant's case, it was thus not a condition of the description expressly referred to in the Tenants' Handbook.

76.    The fact that the arrears to which the County Court Order relates were owed by Mr McIntryre in respect of 78 Rockingham Road raises the question whether the first of the principles identified by Lord Bingham in *Ashworth Frazer Ltd v Gloucester City Council* (set out in paragraph [48] above) is infringed by a condition imposed on a permission to assign that the tenant must pay any arrears of rent owed to the landlord in respect of a tenancy other than that in respect of which consent to assignment is sought. Is such a condition (to use the descriptions of the principle quoted by Lord Bingham) one that has "nothing whatever to do with the relationship of landlord and tenant *in regard to the subject matter of the lease*"; is it one "wholly extraneous and completely dissociated from *the subject matter of the contract*" (which is the tenancy the subject of the proposed assignment for which consent is sought)?

77.    Mr Grodzinski submitted that this principle was not infringed by a refusal or condition which was not based on something "wholly extraneous to the lessee" proposing to assign. On that basis he contended that the condition imposed had something to do with the lessee, Mr McIntyre. In support of his submission Mr Grodzinski relied on what Pollock MR had stated in *Houlder Bros & Co Ltd v Gibbs* [1925] Ch 575 at p583, the case on which he said the first principle identified by Lord Bingham was based. Pollock MR described the reason given by the landlord for refusal in that case as one which was "independent of the relation between lessor and lessee, and is on grounds which are entirely personal to the lessor, and wholly extraneous to the lessee".

78.    There are two problems with Mr Grodzinski's submission in relation to the law on this point. The first is that it seeks impermissibly to elevate one observation by one member of the court about the reason why the refusal in that case was unreasonable into a criterion by which reasonableness is to be judged. The fact that something that does not relate to the proposed assignor (for example the proposed use of the premises by the proposed assignee) does not necessarily mean that it is irrelevant. Nor does the fact that something relates to the proposed assignor (for example the colour of his hair) necessarily make it relevant. The second, and more significant, objection to Mr Grodzinski's submission, however, is that, whatever Pollock

MR may have said, the principle that has been recognised by the courts on numerous occasions is the principle as described by Lord Bingham in *Ashworth Frazer Ltd v Gloucester City Council.*

79.     As Balcombe LJ explained in *International Drilling Fluids Ltd v Louisville Investments (Uxbridge) Ltd supra* at p519-520, the first principle is a corollary of the fact that the purpose of a covenant against assignment without the consent of the landlord, such consent not to be unreasonably withheld, is to protect the lessor from having his premises used or occupied in an undesirable way or by an undesirable assignee. As Lord Rodger said in *Ashworth Frazer Ltd v Gloucester City Council* at [61], such a clause "must be interpreted and applied so as to give effect to this purpose." Thus it will not normally be reasonable for a landlord, for example, to seek to impose a condition which is designed to increase or enhance the rights that he enjoys under the lease: see *Mount Eden Land Ltd v Staudley Investments Ltd* (1997) 74 P&CR 306 per Phillips LJ (as he then was) at p310. No doubt, in considering whether the manner in which the premises sought to be assigned may be used could be undesirable, a landlord may take into account whether such a use of those premises will adversely affect other property which he may have. In that respect considerations relevant to good estate management are relevant. But, as the Court of Appeal held in *Bromley Park Garden Estates Ltd v Moss* [1982] 1 WLR 1019, the fact that a landlord's response to the request for permission to assign may be good estate management and will produce a financial advantage for him does not of itself necessarily make it reasonable in this context. Such advantages may be collateral benefits which it was not purpose of the covenant to enable him to secure. Thus, in *Houlder Bros & Co Ltd v Gibbs* [1925] Ch 575 itself, the Court of Appeal found that a landlord's consent was unreasonably refused when his objection to an otherwise unobjectionable, proposed assignee was that, if he became the tenant, the landlord would be likely to lose rental income from other premises which the proposed assignee currently occupied and would vacate. That objection had nothing to do with the personality of the proposed assignee or with the subject matter of the lease (for example how the premises demised were to be used or the obligations under it).

80.     In this case the condition imposed when giving the Claimants permission had nothing whatever to do with the personality of the proposed assignee of their tenancy, the manner in which the property might be used or ensuring that the terms of the Claimants' assured tenancy were performed. It was concerned with securing the payment of an amount which Mr McIntyre, who happens to be one of the joint tenants of the property, owes to the person who is his landlord. In my judgment it is not the purpose of a qualified covenant against assignment to provide the landlord with a lever enabling him to recover debts which do not arise under, or at least in connection with, the tenancy to be assigned but which the tenant who wishes to assign may owe his landlord in some other capacity. That would plainly be so in relation to debts incurred in respect of any goods or services which the landlord chose to provide under a separate contract to the proposed assignor having no connection with the tenancy which he wishes to assign. There is no reason why the result should be any different if the debt arises under a

different tenancy agreement and has no connection with the tenancy in respect of which the tenant seeks permission to assign.

81.     Mr Grodzinski submitted that the condition was one expressly provided for in the terms of this assured tenancy. In my judgment that is not correct (quite apart from the fact that the condition imposed related not merely to the payment of outstanding rent but also to the payment of court costs). The natural and ordinary meaning of the provision in that agreement (set out in paragraph [13] above), when it refers to the tenant complying with a condition relating to the payment of outstanding rent, is that it is a reference to any rent outstanding from the tenant under the tenancy. That interpretation is reinforced when it is joint tenants who may be required to comply with such a condition. It would require different language to alert those who may be contemplating entering into a joint tenancy referring to that condition that it might relate to outstanding rent which they did not jointly owe their landlord under their joint tenancy. But in any event a refusal to give permission or a condition imposed on any permission does not become reasonable for the purpose of section 1 of the Landlord and Tenant Act 1988, on the basis that the parties have agreed that it should be so regarded, if it infringes the first principle identified by Lord Bingham, unless they have reached an agreement in respect of a "qualifying lease" in accordance with the provisions of section 19(1A) to 19(1E) of the Landlord and Tenant Act 1927: see section 19(1A). A "qualifying lease" does not include a tenancy (such as the Claimants') by which a building or part of a building is let wholly or mainly as a single private residence: see section 19(1E)(a) and 25 of the 1927 Act.

82.     Mr Grodzinski also contended that what NSHC did in this case was simply what Parliament has enabled a local housing authority to do (by virtue of section 92(5) of the Housing Act 1985) when considering an application for permission by one of its secure tenants for a mutual exchange and that accordingly it could not be unreasonable for a registered social landlord to do so when considering an application for permission by one of its own tenants occupying social housing.

83.     Section 92(5) of the 1985 Act is set out (in paragraph [70]) above. In my judgment, however, the rent due from the tenant referred to in that subsection is also the rent due from him under the secure tenancy which he wishes to assign. Mr Grodzinski contended that the reference in that subsection to "rent lawfully due from the tenant" in that subsection must be capable of referring to refer to rent due from him under another tenancy as otherwise it would be surplusage. That phrase occurs in the context of a reference to a situation "where rent lawfully due from the tenant has not been paid or an obligation of the tenancy has been broken or not performed". Mr Grodzinski pointed out that a failure to pay the rent involves a breach of an obligation of the tenancy and accordingly he argued that, if the phrase "rent lawfully due from the tenant" was to add anything, it must refer to rent due under another tenancy. But the fact that rent has not been paid in accordance with the terms of the tenancy does not necessarily mean it is lawfully due: the amount lawfully due may be less, for example if there is a

**High Court Judgment: Approved for handing down**
**No permission is granted to copy or use in court**

*R (McIntyre) v Gentoo Group Ltd*

set off. Moreover, as mentioned in paragraph [71] above, the same language is also used when describing the grounds on which possession of a secure tenancy may be ordered. In that context likewise in my judgment it is only rent which is lawfully due from the tenant under the tenancy of the dwelling in respect of which an order for possession is sought that may justify such an order. Mr Grodzinski's construction would allow a local housing authority to impose a condition, or seek possession, if rent was due under another tenancy but not if some other obligation of that other tenancy had been broken or not performed. That would reflect no intelligible legislative policy. If what a secure tenant may have done or may not have done under another tenancy is relevant to whether he should be given permission to assign or to keep possession of his dwelling, it makes no sense to distinguish between his obligation to pay rent and his other obligations under that tenancy.

84.    Accordingly Mr Grodzinski's invocation of section 92(5) of the Housing Act 1985 does not alter the conclusion that the condition imposed by NSHC on the consent it gave the Claimants was not one that it could impose on any consent to an assignment by them which was not to be unreasonably refused as it was a condition that infringed the first principle identified by Lord Bingham in *Ashworth Frazer Ltd v Gloucester City Council.*

85.    Mr Grodzinski rightly pointed out that Lord Bingham had indicated that, while the principle to be applied is clear, difficult borderline questions are bound to arise. In my judgment different considerations might arise, for example, if the tenant proposing to assign had undertaken to pay some debt or discharge some other obligation in order to obtain the tenancy but had subsequently failed to do so. But there is nothing to suggest that in this case the grant of the Claimants' assured joint tenancy was conditional on, or tied to, any undertaking by Mr McIntyre to clear the arrears on 78 Rockingham Road. Its grant was plainly simply part of the arrangements for the stock transfer from Sunderland City Council to SHCL.

86.    The assignment proposed by the Claimants, however, is part of a mutual exchange. If that exchange had been with a tenant of another landlord, no further question would arise. But in this case the exchange did not merely require NSHC to give the Claimants permission to assign their tenancy to the individual occupying the property in Corinthian Square. It also required NSHC to give that individual its permission to assign her tenancy in that property to the Claimants as she was also an assured tenant of NSHC. Mr Grodzinski submitted that, in considering whether the Claimants were suitable tenants for the dwelling in Corinthian Square, NSHC was entitled to have regard to Mr McIntyre's failure to pay rent and the amounts due under the court order in respect of 78 Rockingham Road.

87.    Both the Claimants and the individual occupying the property in Corinthian Road each required NSHC's consent. Mr Grodzinski's argument is concerned with whether NSHC could have been justified in imposing the condition it did in this case on her assignment to the Claimants. It is not directed at whether the decision to impose the condition on the consent given to the Claimants to assign (which is what is impugned) was lawful.

88.    Even if it may be assumed that the same condition was imposed on any consent given to that individual, however, in my judgment there would have been a fundamental objection to it. The purpose which the parties intend the power (which a landlord has to impose conditions on a permission to assign which cannot be unreasonably withheld) to serve is to enable an objection to be removed which might otherwise justify a refusal of that permission. Its purpose is not to enable a landlord to obtain some other advantage for itself, in effect enabling it to use the requirement to obtain consent to obtain a benefit for itself when it cannot otherwise reasonably refuse consent. In this case NSHC was not entitled to refuse consent to the individual occupying the property in Corinthian Square on the ground that one of the proposed joint tenants to whom she wished to assign was an undesirable tenant from the landlord's point of view.

89.    One of the main purposes of a qualified covenant against assignment is, of course, to protect a landlord from having his premises occupied by an undesirable assignee. A proposed assignee who has failed to comply with a court order to pay amounts which he now owes to the landlord might well be regarded as an undesirable tenant by that landlord, even if he or she is only one of a number of individuals who may become joint tenants if the assignment occurs. The difficulty in this case, however, is that Tenants' Handbook states that permission will not be withheld for an exchange on any grounds except those in Schedule 2 to the Housing Act 1988 (which are the grounds upon which an order for possession may be made against an assured tenant). The grounds in Schedule 2 appear to relate only to the assured tenant (who is proposing to assign), not to an individual to whom such a tenant is proposing to assign (who may not be such a tenant). But, even if they could be so read, these grounds would not have allowed permission to be refused because Mr McIntyre had arrears of rent or a court order made against him in respect of such arrears at 78 Rockingham Road. A number of the grounds mentioned in Schedule 2 arise when rent lawfully due from the tenant is unpaid or is in arrears or where the tenant has persistently delayed paying rent which has become lawfully due: see grounds 8, 10 and 11. The rent there referred to is plainly that due in respect of the tenancy in respect of which an order for possession may be obtained and the reference to "the tenant" in those grounds, where two or more persons jointly constitute the tenant in relation to a tenancy, is a reference to all of them: see section 45(3) of the Housing Act 1988. Assuming that these grounds may apply to a proposed assignee, consent to assign might have been refused to the individual occupying the property in Corinthian Square if the Claimants had been in arrears with their rent in respect with respect to the property, but they were not. Nor is there any other ground in Schedule 2 to the 1988 Act which could have justified refusal of consent to assign to the Claimants. This is perhaps less surprising than it may at first sight appear. The circumstances in which a local housing authority can refuse one of its secure tenants permission to assign by way of exchange to other tenants of social housing under section 92 of the Housing Act 1985 by reference to their undesirability as tenants are limited and would not cover the circumstances of this case: see section 92(3) of, and Schedule 3 to, the 1985 Act.

*R (McIntyre) v Gentoo Group Ltd*

90.    The condition imposed by NSHC was thus not one in my judgment that it could impose on any consent to an assignment by the Claimants which was not to be unreasonably refused as a matter of private law. NSHC plainly proceeded on the assumption that it could do so and in that respect erred in law and took into account something, namely the amounts outstanding in respect of 78 Rockingham Road, that was irrelevant to its decision to impose that condition. It thereby erred as a matter of public law.

91.    Had the condition been one capable of being imposed as a matter of private law, however, there is no reason in my judgment why it would have been unreasonable to do so as a matter of public law subject to the other arguments which Mr Paget advanced. Recovering what is owed to a registered social landlord to assist in the provision of social housing is patently not an unreasonable objective in itself for such a landlord. Indeed it might well be thought not to be acting reasonably, other things being equal, if it does not do what it reasonably can do to obtain what it is owed by others, including those who occupy its social housing.

*(iv) the Claimants' other contentions*

92.    Apart from complaints based on the age of the amounts outstanding and the dwelling in respect of which the debt was incurred, Mr Paget also submitted that it was unreasonable for NSHC to require payment at all since it effectively penalised Mrs McIntyre, who was unable to benefit from an exchange through no fault of her own; that the amount involved is small, and that the Claimants have discharged their obligations with respect to rent on the property. He further submits that it was unreasonable in any event for NSHC to refuse the offer made that Mr McIntyre would pay off the amount requested by instalments after any exchange. He finally contends that NSHC simply applied a blanket policy without considering the Claimants' circumstances.

93.    In any mutual exchange where all the tenants involved require permission from their landlords, it is inevitable that one of those involved may be denied the benefit of the exchange proposed due to the fault of another which leads to that other individual being refused permission or to him being granted permission on terms with which he may not comply. That is not to suggest that Ms McIntyre's position as an "innocent party" should necessarily be ignored in public law, any more than the position of the person with whom the Claimants wished to exchange should be. But the effect that a refusal of, or a condition imposed on, any permission may have on such an "innocent party" would not necessarily of itself make a decision to refuse consent, or to give it only on certain terms which may not be met, *Wednesbury* unreasonable. What weight it may have in any decision must depend on the circumstances and in particular the nature and extent of any adverse impact on such an "innocent party". In this case there is no evidence that NSHC was informed that there would be any specific adverse effect either on Mrs McIntyre or on the person with whom the Claimants wished to exchange homes if they were unable to move if the condition was not met and the exchange did not proceed. There was therefore nothing (apart from

any inevitable disappointment) which might have been weighed in any balance by NSHC.

94.    The fact that the amounts in question may not be themselves be "large" from the point of view of the landlord in the context of its total revenues does not make any attempt to recover them in this, no doubt cheaper, manner unreasonable. Indeed the complaint coming from the Claimants that the amount is not relatively large has the bizarre consequence that their complaint would have even less force if NSHC had been less generous and had sought to obtain more by also requiring prior payment of the arrears of the interest due on the judgment debt which Mr McIntyre owed.

95.    Mr Paget further submitted that it was unreasonable in any event for NSHC to refuse the offer made that Mr McIntyre would pay off the amounts requested by instalments after any exchange. There is no evidence, however, that Mr McIntyre did not have sufficient resources to enable him to pay off the amounts required nor, if he did not have them, (as I have mentioned) of any specified detriment to him or his wife in not being able to exchange their tenancy immediately. Moreover Sunderland City Council's experience when seeking to get Mr McIntyre to meet his obligations under the order of the Sunderland County Court to which I have referred (and to which NSHC evidently intended to refer in its letter dated May 17th 2007 notwithstanding the misleading reference to the Sunderland Housing Group) provided grounds for scepticism about the enforcement of any such undertaking by him, something that was not unreasonably taken into account by NSHC when rejecting the offer.

96.    Mr Paget further contended that NSHC had simply applied a blanket policy without considering the Claimants' circumstances. Even if there was anything in the evidence currently available to support this contention, I would have refused leave to amend the grounds on which this claim is brought to raise it. The Defendant has had no opportunity to deal with the contention in evidence. In fact, however, there is nothing bar assertion to support this contention. If anything the evidence shows that NSHC were prepared to consider arguments which were put to it, for example with respect to the offer that Mr McIntyre would pay the amounts in question by instalments. The fact that the arguments were rejected for reasons which were given does not prove that NSHC simply applied a blanket policy without considering the Claimants' circumstances. If anything it shows that it was willing to consider any arguments put forward but that it was not persuaded by them.

*(v) conclusion*

97.    In considering any claim that a decision is one no reasonable registered social landlord could have taken in discharging its function of managing and allocating its social housing stock, it is necessary to look at the position overall rather than point by point (although each point needs to be considered). Moreover it is also necessary not to overlook the fact that such a decision is one taken in the discharge of that function by a body not conducting its activities for profit and one which has experience in

discharging that task that this court does not have. Its discretionary decisions in the discharge of that function which do not engage any Convention right are ones to which considerable respect should be given.

98.     Leaving aside the fact that the amounts which the condition impugned required to be paid related to a different tenancy, there is nothing in this case which comes close to establishing that the decision was one no reasonable social landlord could have taken in the circumstances. NSHC was simply adopting a cost-effective way of recovering amounts from Mr McIntyre to which NSHC was entitled which hitherto he had successfully avoided paying and which, given its responsibilities for social housing, NSHC may well not have been justified in expending further resources in seeking to recover from him. There is no evidence that Mr McIntyre did not have, or that NSHC should have concluded that he did not have, the resources to satisfy the condition. There is equally no evidence that NSHC had any reason to consider that the result of imposing the condition it did was likely to be anything more than the disappointment which those involved in the proposed mutual exchange would no doubt have felt if it did not proceed. In these circumstances to require Mr McIntyre to discharge his debt to NSHC before he was permitted to receive the benefit of a transfer which he wanted from it cannot possibly be said to be irrational in public law. Mr Paget's assertion that the Claimants have discharged their obligations with respect to rent on the property, apparently with the assistance of housing benefit, is not disputed by the Defendant. But that cannot alter the conclusion that the decision was not unreasonable.

99.     In the circumstances I do not need to resolve the question (referred to in paragraph [50] above) whether there are differences in the approach to the reasonableness of any balance to be struck under the Landlord and Tenant Act 1988 and in public law and the considerations to which regard may be had in each case if only because of the absence of any evidence in this case of any likely adverse effect on the Claimants or on the person with whom they wished to exchange homes of the condition imposed.

100.    However, as I have mentioned, in my judgment the condition imposed on the consent given to the Claimants did not comply with the first principle identified by Lord Bingham in *Ashworth Frazer Ltd v Gloucester City Council* (with which any condition must comply when imposed on a permission to assign under a covenant not to assign without permission which is not to be unreasonably withheld). NSHC proceeded on the assumption that it could impose such a condition and it thereby erred in law and took into account a legally irrelevant consideration when deciding to impose it. Its decision to do so was accordingly unlawful in public law. That brings me to the question whether relief on this claim for judicial review should nonetheless be refused on the ground that there were, and are, alternative remedies available to the Claimants.

**WHETHER RELIEF SHOULD BE REFUSED IN ANY EVENT**

101.    Mr Grodzinski contended that the claim which the Claimants now advance should be dismissed in any event as judicial review is a remedy of last resort

and there were, and are, alternative remedies available to them which they should have used. He relies on (a) the right which the Claimants had to bring a claim for breach of contract if the condition imposed was not "reasonable" given the terms of the tenancy and to bring proceedings under the Landlord and Tenant Act 1988 and (b) on the Claimants' right to apply to the Independent Housing Ombudsman.

102.    Normally the fact that a claimant has a suitable alternative remedy available is a reason why permission to claim judicial review should be refused. However permission to make this claim has already been granted. Accordingly Mr Grodzinski's submission is in effect that relief should be refused as a matter of discretion in this case on that ground. There is no doubt jurisdiction to do so: see eg M Fordham *Judicial Review Handbook* 5th ed at [36.3.8]. The question is whether there is a good reason to do so in this case given that the points now raised were not raised by the Defendant when permission was sought either in the Acknowledgement of Service or at the hearing before Cranston J.

*(i) proceedings by way of ordinary claim*

103.    Mr Grodzinski's submitted in effect that the issues in this case were all ones that fell to be dealt with as a matter of private law. By contrast Mr Paget contended that NSHC's decision was "infused with public law elements" and that public law "can be part of a defence but not a claim", so that in effect the claim in this case had to be advanced by judicial review.

104.    There can be no doubt that an ordinary claim which only involves questions and matters arising under section 1 of the Landlord and Tenant Act 1988 is a suitable alternative remedy for a tenant who is refused permission for an assignment or only granted permission for it subject to a condition. Indeed it is a better remedy for such a claimant since the onus is on the landlord in such proceedings to show that his refusal of permission, or that any condition on which it may have been given, was reasonable; whereas on a claim for judicial review the onus is on the claimant to show that the landlord's decision in that respect was unreasonable.

105.    The practical problem is that in some cases there may be grounds on which a tenant may be able to impugn the landlord's decision on "conventional public law" grounds which may raise additional considerations. In my judgment there will normally be no good reason why in such a case a tenant who has been refused permission to assign, or who has been given it subject to conditions, may not impugn the legality in public law of the decision to do so in an ordinary claim which may also deal with the legality of the decision in private law. Judicial review is a procedure. The application of substantive public law is not limited to cases in the Administrative Court. Nor is it limited to cases in which it is invoked as a defence. Mr Paget's submission effectively seeks to invoke a rule of procedural exclusivity often sought to be located in *O'Reilly v. Mackman* [1983] 2 AC 237 and *Cocks v Thanet District Council* [1983] 2 AC 286. However, as Lord Steyn stated in *Boddington v the British Transport Police* [1999] 2 AC 143 at p172,

"Since *O'Reilly v. Mackman* decisions of the House of Lords have made clear that the primary focus of the rule of procedural exclusivity is situations in which an individual's sole aim was to challenge a public law act or decision. It does not apply in a civil case when an individual seeks to establish private law rights which cannot be determined without an examination of the validity of a public law decision."

That is precisely what would be involved when an assured tenant of a registered social landlord seeks to establish his right to assign his tenancy and, if so, on what conditions by impugning a decision affecting it on public law grounds. If the decision is invalid, either the landlord will not have lawfully refused any permission within the relevant period in breach of his duty under section 1 of the 1988 Act or his consent will have been given subject to an invalid condition. Such a case does not involve a statutory relationship which happens to include a contractual element; it involves a contractual relationship which happens to possess a public law dimension: cf *Clark v University of Lincolnshire and Humberside* [2000] 1 WLR 1988 per Sedley LJ at [16]. Indeed, far from it being an abuse of process for a tenant to bring in one claim all his claims about his landlord's decision on his application to exchange or assign, it would normally be contrary to the overriding objective for him not to do so. The claims will almost inevitably involve consideration of number of common elements. To bring only one claim will save expense and enable as many aspects of the case to be dealt with on one occasion as possible.

106.    Had the question of alternative remedy been raised when permission to make this claim was sought, permission would no doubt have been refused. The question is whether relief should now be refused as a matter of discretion given that there has now been a hearing of the claim.

107.    The question of alternative remedies appears only to have been raised by the Defendant for the first time in its amended detailed grounds in August 2009 and then only in relation to any claim on (what I consider to be) the (misconceived) basis that the Claimants had a claim in contract if the specific condition mentioned in the assured tenancy agreement was not reasonable as stated by that agreement. No mention was made of the position under the Landlord and Tenant Act 1988. On the other hand there is nothing to indicate that the Claimants gave any detailed thought to question of alternative remedies. There is no response to the Defendant's contentions about the existence of alternative remedies in the Claimants' skeleton argument for the hearing of this claim dated November 10th 2009.

108.    The well established rule in respect of claims for judicial review is that "it is a cardinal principle that, save in the most exceptional cases, the jurisdiction will not be exercised where other remedies were available and have not been used": per Sir John Donaldson MR *R v Epping and Harlow General Commissioners ex p Goldstraw* [1983] 3 All ER 257 at p262. That was applied by the Court of Appeal even after the Administrative Court had made a decision on the merits in *R v Birmingham City Council ex p Ferrero Ltd* [1993] 1 All ER 530. That judicial review is a remedy of last resort has been reiterated on numerous occasions notwithstanding the introduction of

the Civil Procedure Rules. There is nothing exceptional in this case which would have made proceeding by means of an ordinary claim inadequate or inappropriate. Far from this claim being "infused with public law elements", it is hard to identify anything in it which might realistically add anything material to any allegation that could be made in proceedings under the Landlord and Tenant Act 1988 that the imposition of the condition on its consent by NSHC was not reasonable.

109.    Further there is no point in quashing the decision NSHC took in May 2007: the dwelling which the Claimants wished to become the tenants of in Corinthian Square as a result of the exchange proposed was apparently let to another person in June 2008. Any further application which the Claimants may make for an exchange will have to be dealt with by their new landlord on the merits as they exist when it falls to be considered. The only practical significance now of the decision in May 2007 is if the Claimants have any right to damages under section 4 of the Landlord and Tenant Act 1988. To establish that, if there has been a breach of a duty owed to them under that Act and if they have suffered any loss as a result, they will need to bring a claim in any event under that Act.

110.    Accordingly in these circumstances the order to quash the decision in May 2007 and the order requiring the Defendant to consent to the exchange sought (which would in any event have been inappropriate) is refused.

111.    No order requiring the Defendant to do, or not to do, anything in relation to any future application for mutual exchange is appropriate in any event given that the Defendant is not the Claimants' landlord.

*(ii) a complaint to the ombudsman*

112.    In these circumstances I need not deal in any detail with Mr Grodzinski's other contention that the Claimants could also have asked the Housing Ombudsman to investigate a complaint and that relief should in any event be refused on that ground. Had I not refused relief for the reasons mentioned above, I would not have accepted this submission. Under the relevant scheme the Ombudsman will not consider complaints which in his opinion "concern matters where proceedings have been issued or they have already been taken to a court or tribunal [and] where a complainant will have or has had the opportunity to raise them in the proceedings" or "are matters where the Ombudsman considers it quicker, fairer, more reasonable, and more effective to seek a remedy through the courts, other tribunal or procedure": see paragraph 16(e) and (f) of the scheme. There is, therefore, no certainty that the Ombudsman would accept any complaint now made to him. Although Lord Woolf CJ said in *R (Cowl) v Plymouth City Council* [2002] 1 WLR 803 at [14], that the court should consider staying proceedings for judicial review where the issues might be resolved outside the litigation process, in my judgment it would have been contrary to the overriding objective to stay the claim now, given that the Defendant raised the point in August 2009 but then apparently did nothing to seek a stay of this claim before the hearing. At that stage from the Claimants' point of view the only result of making a complaint to the Ombudsman, given the timescales on

High Court Judgment: Approved for handing down
No permission is granted to copy or use in court

*R (McIntyre) v Gentoo Group Ltd*

which it is indicated he may operate, might have been further delay in resolving a claim relating to a decision in May 2007.

## CONCLUSION

113.    For the reasons given above, the condition which NSHC imposed on the consent it gave the Claimants for the exchange they proposed, that Mr McIntyre should first pay all the amounts outstanding under the order made against him by Sunderland County Court, was one which was not lawfully imposed. It was not one that had anything to do with the relationship of landlord and tenant in regard to the subject matter of the Claimants' assured tenancy of the property as the amounts related to another dwelling, 78 Rockingham Road. It was a condition which could not be lawfully imposed as a matter of private law on any consent to an assignment by them which was not to be unreasonably withheld. NSHC proceeded on the assumption that it could impose such a condition and it thereby erred in law and took into account a legally irrelevant consideration when deciding to impose it. Its decision to do so was accordingly unlawful in public law.

114.    NSHC's decision was otherwise one that cannot be impugned in public law.

115.    In the circumstances, and having regard to the fact that an alternative remedy in respect of the condition imposed was and is available to the Claimants by way of an ordinary claim, the relief sought in respect of NSHC's decision on this claim for judicial review is refused. The Claimants' claim for judicial review is accordingly dismissed.

116.    In future claims concerning any decision to refuse permission to assign or exchange, or to grant such permission only on conditions, to which section 1 of the Landlord and Tenant Act 1988 applies should normally be brought by ordinary claim, even if they also include claims that the decision of the registered social landlord involved was unlawful as a matter of public law.

582

**[1988]**

[COURT OF APPEAL]                                     A

\*KENNETT v. BROWN AND ANOTHER

1988   March 2                      Lord Donaldson of Lymington M.R.
                                    and Parker L.J.

> *Limitation of Action—Personal injuries—Time limit, power to*   B
> *override—First defendant claiming contribution and damages for*
> *personal injury against second defendant—Contribution notice*
> *out of time—Whether first defendant's claim for personal injury*
> *"original set-off or counterclaim"—Whether first defendant entitled*
> *to bring claim before seeking to disapply time limit—Limitation*
> *Act 1980 (c. 58), s. 35(3)*[1]

> The plaintiff suffered personal injuries in a road accident    C
> and brought an action against the first defendant claiming
> damages. Subsequently the second defendant was joined as a
> party. Shortly after the expiry of three years from the accident
> the first defendant served a contribution notice on the second
> defendant. He claimed an indemnity in respect of any liability
> he might incur to the plaintiff and damages for personal injury.
> The first defendant applied for directions, and the district
> registrar held that there could be no claim by the first defendant   D
> in respect of his own injuries until he had applied under section
> 33 of the Limitation Act 1980 to disapply the limitation period.
> He stood the application over. On appeal by the first defendant,
> Sir Douglas Frank held that it was for the second defendant to
> raise the issue of limitation in the contribution proceedings, and
> that the first defendant should at that stage apply under section
> 33. He gave directions accordingly.                            E
>   On appeal by the second defendant:—
>   *Held,* dismissing the appeal, that the first defendant's claim
> against the second defendant was "any other new claim" within
> the meaning of section 35(1)(*b*) of the Act of 1980, and related
> back to the date of the commencement of the original action by
> the plaintiff, but that since it was not raised by the original
> defendant against the original plaintiff it was not an "original    F
> set-off or counterclaim" within subsection (3), and it was
> therefore subject to the appropriate limitation period prescribed
> by the Act; that on its true construction section 35(3) did not
> prevent the bringing of such a claim but merely operated as a
> procedural bar which the defendant to such a claim could raise
> if he wished; and that, accordingly, the question whether the
> first defendant's claim against the second defendant was time-
> barred did not fall to be considered until the point had been    G
> pleaded by the second defendant, when an application under
> section 33 to disapply the time limit could be made (post,
> pp. 584F—585B, D–H).
>   Decision of Sir Douglas Frank Q.C. sitting as a deputy
> judge of the Queen's Bench Division affirmed.

    No cases are referred to in the judgments or were cited in
argument.                                                         H

    APPEAL from Sir Douglas Frank Q.C., sitting as a deputy judge of
the Queen's Bench Division.
    In an action brought by the plaintiff, Karen Fay Kennett, against the
first defendant, Ian Roger Brown, and the second defendant, Mark

---

[1] Limitation Act 1980, s. 35(3); see post, p. 584E–F.

583

1 W.L.R.                    Kennett v. Brown (C.A.)

A    Teagle, for personal injuries suffered in a road accident on 15 July 1983
the first defendant served a contribution notice dated 12 August 1986 on
the second defendant. By the notice he claimed a contribution in respect
of any damages he might be ordered to pay the plaintiff and also
damages for personal injuries he had suffered in the accident, which he
alleged was caused by the second defendant's negligence. On 19 August
1987, on the first defendant's summons for directions, Mr. District

B    Registrar Whittaker put the first defendant to his election whether his
claims against the second defendant should be struck out as statute-
barred, or whether he should apply for an adjournment to enable him to
apply under section 33 of the Limitation Act 1980 for the limitation
period to be disapplied. On 10 November 1987, on appeal by the first
defendant, Sir Douglas Frank Q.C., sitting as a deputy High Court

C    judge, ordered that the second defendant should plead to the contribution
notice within 14 days.
     The second defendant appealed on the grounds that (1) the judge
had erred in concluding that the first defendant had been entitled to
appeal from an order of adjournment obtained on his own request;
(2) the judge had been wrong in law in concluding that section 35(3) of
the Limitation Act 1980 was not mandatory in its provisions; (3) the

D    judge had erred in law in concluding that the court should not consider
the provisions of the Limitation Act 1980 until such time as it had been
pleaded; and (4) that the order of the judge was wrong and ought to be
set aside.
     The facts are stated in the judgment of Lord Donaldson M.R.

E    *Sean Overend* for the second defendant.
     *Alexander Dawson* for the first defendant.

LORD DONALDSON OF LYMINGTON M.R. This is an appeal from a
decision of Sir Douglas Frank sitting as a deputy High Court judge
which raises a novel point on the meaning and effect of section 35 of the
Limitation Act 1980. I would like to say at the outset that the argument

F    has been commendably brief, commendably helpful and we could not
have asked for more assistance.
     Let me first turn very briefly to the facts. Originally there were two
parties to the action: Karen Kennett, the plaintiff, who was a pillion
passenger on a motor-bicycle ridden by Mr. Brown when it came into
collision with another ridden by Mr. Teagle. Miss Kennett sued Mr.
Brown. Not surprisingly, when Mr. Brown, the first defendant, said that

G    Mr. Teagle was to blame for the accident, Mr. Teagle was joined as the
second defendant.
     There then followed a claim for contribution by the second defendant
against the first defendant, and later—a short time after the expiry of
three years from the date of the accident—the first defendant served a
contribution notice on the second defendant. This claimed (a) and

H    indemnity in respect of any liability which he, the first defendant, had to
the plaintiff, and (b) damages for personal injuries which the first
defendant himself had suffered in the accident.
     Eventually the first defendant applied for directions in relation to the
cross-claims of himself and the second defendant. The district registrar
referred himself, or was referred, to section 35 and held that the first
defendant's claim in respect of his own injuries could not be put forward
unless and until there had first been an application under section 33 of

584

Lord Donaldson
of Lymington M.R.                  Kennett v. Brown (C.A.)                  [1988]

the Limitation Act 1980 to disapply the ordinary limitation period. He    A
told the first defendant that he must elect either to have his claim struck
out or to have his application for directions stood over until such time as
he had successfully applied under section 33 to have the limitation
period disapplied.

The first defendant then appealed to Sir Douglas Frank against that
decision. Sir Douglas Frank held that the district registrar was in error    B
in stepping in at that stage and preventing the claim going forward. It
was for the second defendant to raise the issue of limitation by pleading
in the contribution proceedings, and at that stage it would be for Mr.
Brown to make his application under section 33. Whether the district
registrar was right or whether Sir Douglas Frank was right depends upon
the true construction of section 35, which, so far as is material, is in the
following terms:                                                             C

"(1) For the purposes of this Act, any new claim made in the course
of any action shall be deemed to be a separate action and to have
been commenced—(a) in the case of a new claim made in or by way
of third party proceedings, on the date on which those proceedings
were commenced; and (b) in the case of any other new claim, on
the same date as the original action. (2) In this section a new claim    D
means any claim by way of set-off or counterclaim, and any claim
involving either—(a) the addition or substitution of a new cause of
action; or (b) the addition or substitution of a new party; and 'third
party proceedings' means any proceedings brought in the course of
any action by any party to the action against a person not previously
a party to the action, other than proceedings brought by joining any
such person as defendant to any claim already made in the original    E
action by the party bringing the proceedings. (3) Except as provided
by section 33 of this Act or by rules of court, neither the High
Court nor any county court shall allow a new claim within subsection
(1)(b) above, other than an original set-off or counterclaim, to be
made in the course of any action after the expiry of any time limit
under this Act which would affect a new action to enforce that    F
claim."

The district registrar took the view, rightly in my judgment, that the
first defendant's claim against the second defendant was a claim coming
within subsection (1)(b). It was a new claim made in the course of the
action and it was not a new claim made in or by way of third party
proceedings, because third party proceedings involve bringing somebody    G
in who is not already a party to the action. It was thus under (b) a "case
of any other new claim."

The effect of section 35(1) was to cause that new claim to relate
back, so far as its commencement date is concerned, to the date of the
original action. It is on that basis that Mr. Overend, who has appeared
for the second defendant, says that the intention of the Act must be to
enable the court to stop the claim at the very moment at which it is    H
made, because, if it does not then stop the claim, there is no way in
which the limitation point can ever thereafter be raised since what he
described as "the statutory relation back," which is an accurate
description, will already have operated.

The fallacy of that argument in my judgment is that whilst section
35(1) will indeed prevent the second defendant ever pleading section 11
(which is the appropriate personal injuries section) of the Limitation Act

585

1 W.L.R.                Kennett v. Brown (C.A.)          Lord Donaldson
                                                         of Lymington M.R.

A   1980, it does not prevent his relying upon section 35(3). He will be able
    to say to the court that this was a new claim within subsection (1)(*b*);
    that it was not an original set-off or counterclaim, which I construe as
    being a set-off or counterclaim raised by an original defendant against
    an original plaintiff; and he would be able to say to the court: "Subject
    to any application under section 33, you are not to allow this claim to be
    made in the course of any action after the expiry of, in this case, the
B   time limit prescribed by section 11."

        That does not of course answer the question which is at the heart of
    this appeal, namely: when does the section 35(3) point fall to be
    considered? It is said by Mr. Dawson, who appears for the first
    defendant, that it ought to be considered if and when the point is
    pleaded by the second defendant. It is said by Mr. Overend, who
C   appears for the second defendant, that it ought to be taken as soon as
    the contribution notice is served. For my part I can see no practical
    reason for considering the section at the earliest possible moment, since
    it would equally be available as a defence at a later stage.

        So I look at the wording of the subsection. Parliament must be
    deemed to have been aware of the way in which, subject to special
    provisions made in rules of court, the Limitation Acts have always been
D   applied, namely, as procedural bars which a defendant to a particular
    claim could raise if he wished, but which he was not obliged to raise if
    he did not wish.

        If the view of the statute which is put forward by Mr. Overend is
    accepted, it would be necessary in every case where a new claim falling
    within section 35(1)(*b*) was raised after the expiry of the limitation
    period for the person raising the claim to make an application under
E   section 33 to have the Limitation Act disapplied.

        I can see no reason of policy why that should be the case and why
    Parliament should ever have intended it, and so I approach the words
    "neither the High Court nor any county court shall allow a new claim
    . . . to be made in the course of any action" without feeling that I am in
    any way bound by the literal meaning of those words. In section 11 and
F   the various other sections the wording of the Act is "no action shall be
    brought." We know that Parliament does not mean by that that no
    action shall be brought: it means that no action shall succeed. I see no
    reason why the words here—"neither the High Court nor any county
    court shall allow a new claim . . . to be made"—should receive any
    other construction.

        Therefore I would hold that Sir Douglas Frank was right and that the
G   district registrar was in error in trying to stop this claim at the stage at
    which he did. Sir Douglas Frank gave orders for directions. Those
    directions in my judgment should stand. It will be open to the second
    defendant to plead section 35(3) in his defence, and perhaps I should
    say, though it will be a matter for the judge who is concerned with it,
    that I do not think that the passage of time which has elapsed in
H   elucidating this interesting point of construction should count against the
    first defendant when the judge is considering whether or not to disapply
    the statute. Apart from that, of course it is entirely a matter for
    whichever judge is concerned with the application.

        I would accordingly dismiss the appeal.

        PARKER L.J. I agree. The only point which has caused me any
    trouble in the course of this argument is the suggestion that if the order

586

**Parker L.J.**                 Kennett v. Brown (C.A.)                    **[1988]**

A

under appeal stands it might be that the second defendant would be shut out from pleading a defence otherwise available. It is, as Lord Donaldson of Lymington M.R. has said, clear that the result of section 35(1)(*b*) is that the Limitation Act 1980 as such cannot be pleaded. But the same effect is acheived by setting up section 35(3) as stopping the claim. That will do what it ought to do, which is to force the first defendant, whose contribution notice was out of time, to resort to the court to get a dispensation under section 33. It also affords to the first defendant the right which he claims, that he should not be put to resorting to the court under section 33 unless and until it is made plain that the time limit is being taken against him.

B

I would therefore also dismiss this appeal.

*Appeal dismissed with costs.*
*Legal aid taxation of first*
*defendant's costs.*

C

*Solicitors: Gregory Rowcliffe & Co. for John Stallard & Co., Worcester; Stephens & Scown, St. Austell.*

R. C. W.

D

E

F

G

H

 **Justice**

# PART 16 - STATEMENTS OF CASE

Contents of this Part

| Title | Number |
|-------|--------|
| Part not to apply where claimant uses Part 8 procedure | Rule 16.1 |
| Contents of the claim form | Rule 16.2 |
| Statement of value to be included in the claim form | Rule 16.3 |
| Contents of the particulars of claim | Rule 16.4 |
| Content of defence | Rule 16.5 |
| Defence of set-off | Rule 16.6 |
| Reply to defence | Rule 16.7 |
| Court's power to dispense with statements of case | Rule 16.8 |

## Part not to apply where claimant uses Part 8 procedure

**16.1**  This Part does not apply where the claimant uses the procedure set out in Part 8 (alternative procedure for claims).

Back to top

## Contents of the claim form

**16.2**

(1) The claim form must –

(a) contain a concise statement of the nature of the claim;

(b) specify the remedy which the claimant seeks;

(c) where the claimant is making a claim for money, contain a statement of value in accordance with rule 16.3;

(cc) where the claimant's only claim is for a specified sum, contain a statement of the interest accrued on that sum; and

(d) contain such other matters as may be set out in a practice direction.

(1A) In civil proceedings against the Crown, as defined in rule 66.1(2), the claim form must also contain –

(a) the names of the government departments and officers of the Crown concerned; and

(b) brief details of the circumstances in which it is alleged that the liability of the Crown arose.

PART 16 - STATEMENTS OF CASE - Civil Procedure Rules

(2) If the particulars of claim specified in rule 16.4 are not contained in, or are not served with the claim form, the claimant must state on the claim form that the particulars of claim will follow.

(3) If the claimant is claiming in a representative capacity, the claim form must state what that capacity is.

(4) If the defendant is sued in a representative capacity, the claim form must state what that capacity is.

(5) The court may grant any remedy to which the claimant is entitled even if that remedy is not specified in the claim form.

(Part 22 requires a claim form to be verified by a statement of truth)

Back to top

## Statement of value to be included in the claim form

**16.3**

(1) This rule applies where the claimant is making a claim for money.

(2) The claimant must, in the claim form, state –

(a) the amount of money claimed;

(b) that the claimant expects to recover –

(i) not more than £10,000;

(ii) more than £10,000 but not more than £25,000; or

(iii) more than £25,000; or

(c) that the claimant cannot say how much is likely to be recovered.

(3) In a claim for personal injuries, the claimant must also state in the claim form whether the amount which the claimant expects to recover as general damages for pain, suffering and loss of amenity is –

(a) not more than £1,000; or

(b) more than £1,000.

(4) In a claim which includes a claim by a tenant of residential premises against a landlord where the tenant is seeking an order requiring the landlord to carry out repairs or other work to the premises, the claimant must also state in the claim form –

(a) whether the estimated costs of those repairs or other work is –

(i) not more than £1,000; or

(ii) more than £1,000; and

PART 16 - STATEMENTS OF CASE - Civil Procedure Rules

(b) whether the value of any other claim for damages is –

(i) not more than £1,000; or

(ii) more than £1,000.

(5) If the claim form is to be issued in the High Court it must, where this rule applies –

(a) state that the claimant expects to recover more than £100,000;

(b) state that some other enactment provides that the claim may be commenced only in the High Court and specify that enactment;

(c) if the claim is a claim for personal injuries state that the claimant expects to recover £50,000 or more; or

(d) state that the claim is to be in one of the specialist High Court lists and state which list.

(6) When calculating how much the claimant expects to recover, the claimant must disregard any possibility –

(a) that the court may make an award of –

(i) interest;

(ii) costs;

(b) that the court may make a finding of contributory negligence;

(c) that the defendant may make a counterclaim or that the defence may include a set-off; or

(d) that the defendant may be liable to pay an amount of money which the court awards to the claimant to the Secretary of State for Social Security under section 6 of the Social Security (Recovery of Benefits) Act 1997 [1].

(7) The statement of value in the claim form does not limit the power of the court to give judgment for the amount which it finds the claimant is entitled to.

Back to top

## Contents of the particulars of claim

**16.4**

(1) Particulars of claim must include –

(a) a concise statement of the facts on which the claimant relies;

(b) if the claimant is seeking interest, a statement to that effect and the details set out in paragraph (2);

(c) if the claimant is seeking aggravated damages[GL] or exemplary damages[GL], a statement to that effect and his grounds for claiming them;

(d) if the claimant is seeking provisional damages, a statement to that effect and his grounds for claiming them; and

(e) such other matters as may be set out in a practice direction.

(2) If the claimant is seeking interest he must –

(a) state whether he is doing so –

(i) under the terms of a contract;

(ii) under an enactment and if so which; or

(iii) on some other basis and if so what that basis is; and

(b) if the claim is for a specified amount of money, state –

(i) the percentage rate at which interest is claimed;

(ii) the date from which it is claimed;

(iii) the date to which it is calculated, which must not be later than the date on which the claim form is issued;

(iv) the total amount of interest claimed to the date of calculation; and

(v) the daily rate at which interest accrues after that date.

(Part 22 requires particulars of claim to be verified by a statement of truth)

Back to top

## Content of defence

**16.5**

(1) In his defence, the defendant must state –

(a) which of the allegations in the particulars of claim he denies;

(b) which allegations he is unable to admit or deny, but which he requires the claimant to prove; and

(c) which allegations he admits.

(2) Where the defendant denies an allegation –

(a) he must state his reasons for doing so; and

(b) if he intends to put forward a different version of events from that given by the claimant, he must state his own version.

(3) A defendant who –

(a) fails to deal with an allegation; but

(b) has set out in his defence the nature of his case in relation to the issue to which that allegation is relevant,

shall be taken to require that allegation to be proved.

(4) Where the claim includes a money claim, a defendant shall be taken to require that any allegation relating to the amount of money claimed be proved unless he expressly admits the allegation.

(5) Subject to paragraphs (3) and (4), a defendant who fails to deal with an allegation shall be taken to admit that allegation.

(6) If the defendant disputes the claimant's statement of value under rule 16.3 he must –

(a) state why he disputes it; and

(b) if he is able, give his own statement of the value of the claim.

(7) If the defendant is defending in a representative capacity, he must state what that capacity is.

(8) If the defendant has not filed an acknowledgment of service under Part 10, the defendant must give an address for service.

(Part 22 requires a defence to be verified by a statement of truth)

(Rule 6.23 makes provision in relation to addresses for service.)

Back to top

## Defence of set-off

**16.6** Where a defendant –

(a) contends he is entitled to money from the claimant; and

(b) relies on this as a defence to the whole or part of the claim,

the contention may be included in the defence and set off against the claim, whether or not it is also a Part 20 claim.

Back to top

## Reply to defence

**16.7**

(1) A claimant who does not file a reply to the defence shall not be taken to admit the matters raised in the defence.

(2) A claimant who –

(a) files a reply to a defence; but

(b) fails to deal with a matter raised in the defence, shall be taken to require that matter to be proved.

(Part 22 requires a reply to be verified by a statement of truth)

Back to top

## Court's power to dispense with statements of case

**16.8**  If a claim form has been –

(a) issued in accordance with rule 7.2; and

(b) served in accordance with rule 7.5,

the court may make an order that the claim will continue without any other statement of case.

Back to top

## Footnotes

1. 1997 c.27. Back to text

 **Justice**

# PRACTICE DIRECTION 16 – STATEMENTS OF CASE

This practice direction supplements CPR Part 16

Contents of this Practice Direction

| Title | Number |
| --- | --- |
| General | |
| The claim form | |
| Particulars of claim | Para. 3.1 |
| Matters which must be included in the particulars of claim in certain types of claim | |
| Personal injury claims | Para. 4.1 |
| Fatal accident claims | Para. 5.1 |
| Hire purchase claims | Para. 6.1 |
| Other matters to be included in particulars of claim | |
| Matters which must be specifically set out in the particulars of claim if relied on | |
| General | |
| The defence | |
| General | Para. 10.1 |
| Statement of truth | Para. 11.1 |
| Matters which must be included in the defence | |
| Personal injury claims | Para. 12.1 |
| Other matters | Para. 13.1 |
| Competition Act 1998 | |
| Human rights | |

## General

**1.1** The provisions of Part 16 do not apply to claims in respect of which the Part 8 procedure is being used.

**1.2** Where special provisions about statements of case are made by the rules and practice directions applying to particular types of proceedings, the provisions of Part 16 and of this practice direction apply only to the extent that they are not inconsistent with those rules and practice directions.

**1.3** Examples of types of proceedings with special provisions about statements of case include –

(1) defamation claims (Part 53);

(2) possession claims (Part 55); and

(3) probate claims (Part 57).

**1.4** If exceptionally a statement of case exceeds 25 pages (excluding schedules) an appropriate short summary must also be filed and served.

Back to top

## The claim form

**2.1** Rule 16.2 refers to matters which the claim form must contain. Where the claim is for money, the claim form must also contain the statement of value referred to in rule 16.3.

**2.2** The claim form must include an address at which the claimant resides or carries on business. This paragraph applies even though the claimant's address for service is the business address of his solicitor.

**2.3** Where the defendant is an individual, the claimant should (if he is able to do so) include in the claim form an address at which the defendant resides or carries on business. This paragraph applies even though the defendant's solicitors have agreed to accept service on the defendant's behalf.

**2.4** Any address which is provided for the purpose of these provisions must include a postcode or its equivalent in any EEA state (if applicable), unless the court orders otherwise. Postcode information for the United Kingdom may be obtained from www.royalmail.com or the Royal Mail Address Management Guide.

**2.5** If the claim form does not show a full address, including postcode, at which the claimant(s) and defendant(s) reside or carry on business, the claim form will be issued but will be retained by the court and will not be served until the claimant has supplied a full address, including postcode, or the court has dispensed with the requirement to do so. The court will notify the claimant.

**2.6** The claim form must be headed with the title of the proceedings, including the full name of each party. The full name means, in each case where it is known:

(a) in the case of an individual, his full unabbreviated name and title by which he is known;

(b) in the case of an individual carrying on business in a name other than his own name, the full unabbreviated name of the individual, together with the title by which he is known, and the full trading name (for example, John Smith 'trading as' or 'T/as' 'JS Autos');

(c) in the case of a partnership (other than a limited liability partnership (LLP)) –

(i) where partners are being sued in the name of the partnership, the full name by which the partnership is known, together with the words '(A Firm)'; or

(ii) where partners are being sued as individuals, the full unabbreviated name of each partner and the title by which he is known;

(d) in the case of a company or limited liability partnership registered in England and Wales, the full registered name, including suffix (plc, limited, LLP, etc), if any;

(e) in the case of any other company or corporation, the full name by which it is known, including suffix where appropriate.

(For information about how and where a claim may be started see Part 7 and Practice Direction 7A.)

Back to top

## Particulars of claim

**3.1**  If practicable, the particulars of claim should be set out in the claim form.

**3.2**  Where the claimant does not include the particulars of claim in the claim form, particulars of claim may be served separately:

(1) either at the same time as the claim form, or

(2) within 14 days after service of the claim form[1] provided that the service of the particulars of claim is not later than 4 months from the date of issue of the claim form[2] (or 6 months where the claim form is to be served out of the jurisdiction[3]).

**3.3**  If the particulars of claim are not included in or have not been served with the claim form, the claim form must also contain a statement that particulars of claim will follow[4].

**3.4**  Particulars of claim which are not included in the claim form must be verified by a statement of truth, the form of which is as follows:

'[I believe][the claimant believes] that the facts stated in these particulars of claim are true.'

**3.5**  Attention is drawn to rule 32.14 which sets out the consequences of verifying a statement of case containing a false statement without an honest belief in its truth.

**3.6**  The full particulars of claim must include:

(1) the matters set out in rule 16.4, and

(2) where appropriate, the matters set out in practice directions relating to specific types of claims.

**3.7**  Attention is drawn to the provisions of rule 16.4(2) in respect of a claim for interest.

**3.8**  Particulars of claim served separately from the claim form must also contain:

(1) the name of the court in which the claim is proceeding,

(2) the claim number,

(3) the title of the proceedings, and

(4) the claimant's address for service.

Back to top

## Matters which must be included in the particulars of claim in certain types of claim

## Personal injury claims

**4.1** The particulars of claim must contain:

(1) the claimant's date of birth, and

(2) brief details of the claimant's personal injuries.

**4.2** The claimant must attach to his particulars of claim a schedule of details of any past and future expenses and losses which he claims.

**4.3** Where the claimant is relying on the evidence of a medical practitioner the claimant must attach to or serve with his particulars of claim a report from a medical practitioner about the personal injuries which he alleges in his claim.

**4.3A**

(1) In a soft tissue injury claim, the claimant may not proceed unless the medical report is a fixed cost medical report. Where the claimant files more than one medical report, the first report obtained must be a fixed cost medical report from an accredited medical expert selected via the MedCo Portal (website at: www.medco.org.uk) and any further report from an expert in any of the following disciplines must also be a fixed cost medical report:

(a) Consultant Orthopaedic Surgeon;

(b) Consultant in Accident and Emergency Medicine;

(c) General Practitioner registered with the General Medical Council;

(d) Physiotherapist registered with the Health and Care Professions Council.

(1A) The cost of obtaining a further report from an expert not listed in paragraph (1)(a) to (d) is not subject to rule 45.29 (2A)(b), but the use of that expert and the cost must be justified.

(2) In this paragraph, 'accredited medical expert', 'fixed costs medical report', 'MedCo' and 'soft tissue injury claim' have the same meaning as in paragraph 1.1(A1), (10A), (12A), and (16A), respectively, of the RTA Protocol.

**4.4** In a provisional damages claim the claimant must state in his particulars of claim:

(1) that he is seeking an award of provisional damages under either section 32A of the Senior Courts Act 1981 or section 51 of the County Courts Act 1984,

(2) that there is a chance that at some future time the claimant will develop some serious disease or suffer some serious deterioration in his physical or mental condition, and

(3) specify the disease or type of deterioration in respect of which an application may be made at a future date.

(Part 41 and Practice Direction 41A contain information about awards for provisional damages.)

Back to top

## Fatal accident claims

**5.1**  In a fatal accident claim the claimant must state in his particulars of claim:

(1) that it is brought under the Fatal Accidents Act 1976,

(2) the dependants on whose behalf the claim is made,

(3) the date of birth of each dependant, and

(4) details of the nature of the dependency claim.

**5.2**  A fatal accident claim may include a claim for damages for bereavement.

**5.3**  In a fatal accident claim the claimant may also bring a claim under the Law Reform (Miscellaneous Provisions) Act 1934 on behalf of the estate of the deceased.

(For information on apportionment under the Law Reform (Miscellaneous Provisions) Act 1934 and the Fatal Accidents Act 1976 or between dependants see Part 37 and Practice Direction 37.)

Back to top

## Hire purchase claims

**6.1**  Where the claim is for the delivery of goods let under a hire-purchase agreement or conditional sale agreement to a person other than a company or other corporation, the claimant must state in the particulars of claim:

(1) the date of the agreement,

(2) the parties to the agreement,

(3) the number or other identification of the agreement,

(4) where the claimant was not one of the original parties to the agreement, the means by which the rights and duties of the creditor passed to him,

(5) whether the agreement is a regulated agreement, and if it is not a regulated agreement, the reason why,

(6) the place where the agreement was signed by the defendant,

(7) the goods claimed,

(8) the total price of the goods,

(9) the paid-up sum,

(10) the unpaid balance of the total price,

(11) whether a default notice or a notice under section 76(1) or 98(1) of the Consumer Credit Act 1974 has been served on the defendant, and if it has, the date and method of service,

(12) the date when the right to demand delivery of the goods accrued,

(13) the amount (if any) claimed as an alternative to the delivery of goods, and

(14) the amount (if any) claimed in addition to –

(a) the delivery of the goods, or

(b) any claim under (13) above,

with the grounds of each claim.

(if the agreement is a regulated agreement the procedure set out in Practice Direction 7B should be used).

**6.2**  Where the claim is not for the delivery of goods, the claimant must state in his particulars of claim:

(1) the matters set out in paragraph 6.1(1) to (6) above,

(2) the goods let under the agreement,

(3) the amount of the total price,

(4) the paid-up sum,

(5) the amount (if any) claimed as being due and unpaid in respect of any instalment or instalments of the total price, and

(6) the nature and amount of any other claim and how it arises.

Back to top

## Other matters to be included in particulars of claim

**7.1**  Where a claim is made for an injunction or declaration in respect of or relating to any land or the possession, occupation, use or enjoyment of any land the particulars of claim must:

(1) state whether or not the injunction or declaration relates to residential premises, and

(2) identify the land (by reference to a plan where necessary).

**7.2**  Where a claim is brought to enforce a right to recover possession of goods the particulars of claim must contain a statement showing the value of the goods.

**7.3**  Where a claim is based upon a written agreement:

(1) a copy of the contract or documents constituting the agreement should be attached to or served with the particulars of claim and the original(s) should be available at the hearing, and

(2) any general conditions of sale incorporated in the contract should also be attached (but where the contract is or the documents constituting the agreement are bulky this practice direction is complied with by attaching or serving only the relevant parts of the contract or documents).

**7.4**  Where a claim is based upon an oral agreement, the particulars of claim should set out the contractual words used and state by whom, to whom, when and where they were spoken.

**7.5**  Where a claim is based upon an agreement by conduct, the particulars of claim must specify the conduct relied on and state by whom, when and where the acts constituting the conduct were done.

**7.6**  In a claim issued in the High Court relating to a Consumer Credit Agreement, the particulars of claim must contain a statement that the action is not one to which section 141 of the Consumer Credit Act 1974 applies.

Back to top

## Matters which must be specifically set out in the particulars of claim if relied on

**8.1**  A claimant who wishes to rely on evidence:

(1) under section 11 of the Civil Evidence Act 1968 of a conviction of an offence, or

(2) under section 12 of the above-mentioned Act of a finding or adjudication of adultery or paternity,

must include in his particulars of claim a statement to that effect and give the following details:

(1) the type of conviction, finding or adjudication and its date,

(2) the court or Court-Martial which made the conviction, finding or adjudication, and

(3) the issue in the claim to which it relates.

**8.2**  The claimant must specifically set out the following matters in his particulars of claim where he wishes to rely on them in support of his claim:

(1) any allegation of fraud,

(2) the fact of any illegality,

(3) details of any misrepresentation,

(4) details of all breaches of trust,

(5) notice or knowledge of a fact,

(6) details of unsoundness of mind or undue influence,

(7) details of wilful default, and

(8) any facts relating to mitigation of loss or damage.

Back to top

**General**

**9.1**  Where a claim is for a sum of money expressed in a foreign currency it must expressly state:

(1) that the claim is for payment in a specified foreign currency,

(2) why it is for payment in that currency,

(3) the Sterling equivalent of the sum at the date of the claim, and

(4) the source of the exchange rate relied on to calculate the Sterling equivalent.

**9.2**  A subsequent statement of case must not contradict or be inconsistent with an earlier one; for example a reply to a defence must not bring in a new claim. Where new matters have come to light the appropriate course may be to seek the court's permission to amend the statement of case.

**9.3**  In clinical negligence claims, the words 'clinical negligence' should be inserted at the top of every statement of case.

Back to top

## The defence

## General

**10.1**  Rule 16.5 deals with the contents of the defence.

**10.2**  A defendant should deal with every allegation in accordance with rule 16.5(1) and (2).

**10.3**  Rule 16.5(3), (4) and (5) sets out the consequences of not dealing with an allegation.

**10.4**  Where the defendant is an individual, and the claim form does not contain an address at which he resides or carries on business, or contains an incorrect address, the defendant must provide such an address in the defence.

**10.5**  Where the defendant's address for service is not where he resides or carries on business, he must still provide the address required by paragraph 10.4.

**10.6**  Any address which is provided for the purpose of these provisions must include a postcode, unless the court orders otherwise. Postcode information may be obtained from www.royalmail.com or the Royal Mail Address Management Guide.

**10.7**  Where a defendant to a claim or counterclaim is an individual, he must provide his date of birth (if known) in the acknowledgment of service, admission, defence, defence and counterclaim, reply or other response.

Back to top

## Statement of truth

**11.1**  Part 22 requires a defence to be verified by a statement of truth.

**11.2**  The form of the statement of truth is as follows:

'[I believe][the defendant believes] that the facts stated in the defence are true.'

**11.3** Attention is drawn to rule 32.14 which sets out the consequences of verifying a statement of case containing a false statement without an honest belief in its truth.

Back to top

## Matters which must be included in the defence

**Personal injury claims**

**12.1** Where the claim is for personal injuries and the claimant has attached a medical report in respect of his alleged injuries, the defendant should:

(1) state in his defence whether he –

(a) agrees,

(b) disputes, or

(c) neither agrees nor disputes but has no knowledge of,

the matters contained in the medical report,

(2) where he disputes any part of the medical report, give in his defence his reasons for doing so, and

(3) where he has obtained his own medical report on which he intends to rely, attach it to his defence.

**12.2** Where the claim is for personal injuries and the claimant has included a schedule of past and future expenses and losses, the defendant should include in or attach to his defence a counter-schedule stating:

(1) which of those items he –

(a) agrees,

(b) disputes, or

(c) neither agrees nor disputes but has no knowledge of, and

(2) where any items are disputed, supplying alternative figures where appropriate.

Back to top

**Other matters**

**13.1** The defendant must give details of the expiry of any relevant limitation period relied on.

**13.2** Rule 37.3 and paragraph 2 of Practice Direction 37 contains information about a defence of tender.

**13.3** A party may:

(1) refer in his statement of case to any point of law on which his claim or defence, as the case may be, is based,

(2) give in his statement of case the name of any witness he proposes to call, and

(3) attach to or serve with this statement of case a copy of any document which he considers is necessary to his claim or defence, as the case may be (including any expert's report to be filed in accordance with Part 35).

Back to top

## Competition Act 1998

**14** A party who wishes to rely on a finding of the Office of Fair Trading as provided by section 58 of the Competition Act 1998 must include in his statement of case a statement to that effect and identify the Office's finding on which he seeks to rely.

Back to top

## Human rights

**15.1** A party who seeks to rely on any provision of or right arising under the Human Rights Act 1998 or seeks a remedy available under that Act –

(1) must state that fact in his statement of case; and

(2) must in his statement of case –

(a) give precise details of the Convention right which it is alleged has been infringed and details of the alleged infringement;

(b) specify the relief sought;

(c) state if the relief sought includes–

(i) a declaration of incompatibility in accordance with section 4 of that Act, or

(ii) damages in respect of a judicial act to which section 9(3) of that Act applies;

(d) where the relief sought includes a declaration of incompatibility in accordance with section 4 of that Act, give precise details of the legislative provision alleged to be incompatible and details of the alleged incompatibility;

(e) where the claim is founded on a finding of unlawfulness by another court or tribunal, give details of the finding; and

(f) where the claim is founded on a judicial act which is alleged to have infringed a Convention right of the party as provided by section 9 of the Human Rights Act 1998, the judicial act complained of and the court or tribunal which is alleged to have made it.

(Practice Direction 19A provides for notice to be given and parties joined in the circumstances referred to in (c), (d) and (f))

**15.2** A party who seeks to amend his statement of case to include the matters referred to in paragraph 15.1 must, unless the court orders otherwise, do so as soon as possible.

(Part 17 provides for the amendment of a statement of case)

Back to top

## Footnotes

1. See rule 7.4(1)(b). Back to text
2. See rules 7.4(2) and 7.5(1). Back to text
3. See rule 7.5(2). Back to text
4. See rule 16.2(2). Back to text

# EASTERN CARIBBEAN SUPREME COURT



# CIVIL PROCEDURE RULES 2000

**The Caribbean Law Publishing Company**
Kingston

First published in Jamaica 2001 by
The Caribbean Law Publishing Company
11 Cunningham Avenue
Box 686
Kingston 6

© 2001 Eastern Caribbean Supreme Court

All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means electronic, photocopying, recording or otherwise without the prior permission of the Eastern Caribbean Supreme Court.

ISBN 976-8167-20-3

A catalogue of record of this book is available from the
National Library of Jamaica

Typeset by Robert Harris

Set in Stone Informal  10/14 x 30

Printed in the United States of America

# EASTERN CARIBBEAN SUPREME COURT
## CIVIL PROCEDURE RULES 2000

The Chief Justice and two other judges of the Supreme Court, being the authority empowered by section 17 of the West Indies Associated States Supreme Court Order 1967 (Vol. X of the Laws of Grenada 1990, p. 470) to make rules regulating the practice and procedure of the Court of Appeal and the High Court, have made the following rules —

1. **Citation:** Theses rules may be cited as the
**EASTERN CARIBBEAN SUPREME COURT CIVIL PROCEDURE RULES 2000**

2.**Rules in the Schedule:** The Rules in the Schedule hereto are the rules governing civil procedure in the Eastern Caribbean Supreme Court.

3.Reference to the Rules: It shall not be necessary to include the Schedule to these rules in the annual volume of the Laws of a Member State or Territory of the Eastern Caribbean Supreme Court, but a reference may be made thereto in such volume and shall be sufficient.

4.Repeal: The Rules of the Supreme Court (Revision) 1970 are repealed, subject to the transitional provisions contained in Part 73 of the Schedule hereto.

5.Commencement: These Rules are deemed to have come into effect in each of the Member States and Territories of the Eastern Caribbean Supreme Court on  December 31st 2000.

<div align="center">

**SCHEDULE**

</div>

(Rule 2)

Eastern Caribbean Supreme Court Civil Procedure Rules 2000, published by The Caribbean Law Publishing Company Ltd. at the request and by the authority of the Chief justice and two other judges appointed by him.

Made the 3rd day of May 2001.

Sir Dennis Byron
Chief Justice

Albert N. J. Matthew
Justice of Appeal

Adrian Saunders
High Court Judge

# TABLE OF CONTENTS

## Part 1: Overriding Objective

| | |
|---|---|
| The overriding objective | Rule 1.1 |
| Application of overriding objective by the court | Rule 1.2 |
| Duty of parties | Rule 1.3 |

## Part 2: Application and Interpretation of these Rules

| | |
|---|---|
| Citation | Rule 2.1 |
| Application of these Rules | Rule 2.2 |
| Application of Interpretation Acts | Rule 2.3 |
| Definitions | Rule 2.4 |
| Who may exercise the powers of the court | Rule 2.5 |
| Court staff | Rule 2.6 |
| Court's discretion as to where, when and how it deals with cases | Rule 2.7 |

## Part 3: Time, Documents

| | |
|---|---|
| Time – court to state calendar date | Rule 3.1 |
| Time – computation | Rule 3.2 |
| Vacations | Rule 3.3 |
| Hearings in vacations | Rule 3.4 |
| Time – vacations | Rule 3.5 |
| Documents | Rule 3.6 |
| Filing of documents | Rule 3.7 |
| Filing and service by FAX | Rule 3.8 |
| Sealing of documents issued by the court | Rule 3.9 |
| Forms | Rule 3.10 |

Statements of case – address for service                Rule 3.11

Statements of case – certificate of truth                Rule 3.12

Failure to give certificate of truth                        Rule 3.13

Right to inspect, etc. certain documents filed in court office    Rule 3.14


## Part 4: Practice Directions and Guides

Who may issue practice directions                        Rule 4.1

Scope of practice directions                            Rule 4.2

Publication of practice directions                        Rule 4.3

Compliance with practice directions                    Rule 4.4

Practice guides                                        Rule 4.5

Date from which practice directions and guides take effect    Rule 4.6


## Part 5: Service of Claim Form within Jurisdiction

Service of claim form – normal method                    Rule 5.1

Statement of claim to be served with claim form            Rule 5.2

Method of personal service                            Rule 5.3

Permitted place of service                                Rule 5.4

Proof of personal service                                Rule 5.5

Service on legal practitioner                            Rule 5.6

Service on limited company                            Rule 5.7

Service on firm or partnership                            Rule 5.8

Service on body corporate                            Rule 5.9

Service on minors and patients                            Rule 5.10

Proof of postal service                                Rule 5.11

Proof of service by FAX                                Rule 5.12

Alternative methods of service                            Rule 5.13

Power of court to make order for service by specified method    Rule 5.14

Proof of service by specified method                        Rule 5.15

Service of claim form by contractually agreed method        Rule 5.16

Service of claim form on agent of principal who is out of jurisdiction    Rule 5.17

Service of claim for possession of vacant land                Rule 5.18

Deemed date of service                                Rule 5.19

## Part 6: Service of other Documents

| | |
|---|---|
| Who is to serve documents other than claim form | Rule 6.1 |
| Method of service | Rule 6.2 |
| Address for service | Rule 6.3 |
| Serving documents where no address for service is given | Rule 6.4 |
| Service of documents on person who is not a party | Rule 6.5 |
| Deemed date of service | Rule 6.6 |
| Proof of service | Rule 6.7 |
| Power of court to dispense with service | Rule 6.8 |
| Service of notices, etc. on Attorney General | Rule 6.9 |

## Part 7: Service of Court Process out of Jurisdiction

| | |
|---|---|
| Scope of this Part | Rule 7.1 |
| General rule as to service of claim form out of jurisdiction | Rule 7.2 |
| Service of claim form out of jurisdiction in specified proceedings | Rule 7.3 |
| Proceedings which include other types of claim | Rule 7.4 |
| Permission to serve claim form out of jurisdiction | Rule 7.5 |
| Acknowledgment of service and defence where claim form served out of the jurisdiction | Rule 7.6 |
| Application to set aside service under rule 7.3 | Rule 7.7 |
| Mode of service of claim form – general provisions | Rule 7.8 |
| Mode of Service - alternative procedure | Rule 7.8A |
| Power of Court to dispense with service of the claim form | Rule 7.8B |
| Service of claim form through foreign governments, or judicial or consular authorities | Rule 7.9 |
| Procedure where claim form is to be served through foreign Governments, etc. | Rule 7.10 |
| Service of claim form on a State where court permits service out of jurisdiction | Rule 7.11 |
| Translation of claim form | Rule 7.12 |
| Undertaking to be responsible for expenses of Minister with responsibility for foreign affairs | Rule 7.13 |
| Service of court process other than claim form | Rule 7.14 |

## Part 8: How to Start Proceedings

| | |
|---|---|
| The claimant – how to start proceedings | Rule 8.1 |
| Statement of claim, etc. to be issued and served with claim form | Rule 8.2 |
| Where to start proceedings | Rule 8.3 |

| | |
|---|---|
| Right to make claim which includes two or more claims | Rule 8.4 |
| Claim not to fail by adding or failing to add parties | Rule 8.5 |
| What must be included in claim form | Rule 8.6 |
| Claimant's duty to set out case | Rule 8.7 |
| Permission to rely on allegation or factual argument | Rule 8.7A |
| Certificate of value (small claims) | Rule 8.8 |
| Special requirements applying to claims for personal injuries | Rule 8.9 |
| Relator claims | Rule 8.10 |
| Service of claim form | Rule 8.11 |
| Time within which claim form may be served | Rule 8.12 |
| Extension of time for serving claim form | Rule 8.13 |
| Defence form, etc. must be served with claim form | Rule 8.14 |

## Part 9: Acknowledgment of Service and Notice of Intention to Defend

| | |
|---|---|
| Scope of this Part | Rule 9.1 |
| Filing acknowledgment of service and consequence of not doing so | Rule 9.2 |
| The period for filing acknowledgment of service | Rule 9.3 |
| Notice to claimant of filing of acknowledgment of service | Rule 9.4 |
| Contents of acknowledgment of service | Rule 9.5 |
| Right to dispute jurisdiction of court not taken away by acknowledgment of service | Rule 9.6 |
| Procedure for disputing court's jurisdiction, | Rule 9.7 |
| Procedure for applying for a stay etc. where defendant served out of jurisdiction | Rule 9.7A |

## Part 10: Defence

| | |
|---|---|
| Scope of this Part | Rule 10.1 |
| The defendant – filing defence and consequences of not doing so | Rule 10.2 |
| The period for filing defence | Rule 10.3 |
| Service of copy of defence | Rule 10.4 |
| Defendant's duty to set out case | Rule 10.5 |
| Special requirements applying to claims for personal injuries | Rule 10.6 |
| Consequences of not setting out defence | Rule 10.7 |
| Defence of tender | Rule 10.8 |
| Reply to defence | Rule 10.9 |

## Part 11: General Rules about Applications for Court Orders

| | |
|---|---|
| Scope of this Part | Rule 11.1 |
| Applicants and respondents | Rule 11.2 |
| Applications to be dealt with at case management conference | Rule 11.3 |
| Time when application is made | Rule 11.4 |
| Where to make application | Rule 11.5 |
| Application to be in writing | Rule 11.6 |
| What application must include | Rule 11.7 |
| Notice of application and evidence in support | Rule 11.8 |
| Evidence in support of application | Rule 11.9 |
| Contents of notice of application | Rule 11.10 |
| Service of notice of application | Rule 1 1.11 |
| Powers of court in relation to conduct of application | Rule 11.12 |
| Consequence of not asking for order in application | Rule 11.13 |
| Applications which may be dealt with without hearing | Rule 11.14 |
| Service of application where order made on application made without notice | Rule 11.15 |
| Applications to set aside or vary order made on application made without notice | Rule 11.16 |
| Power of court to proceed in absence of party | Rule 11.17 |
| Application to set aside order made in absence of party | Rule 11.18 |

## Part 12: Default Judgments

| | |
|---|---|
| Scope of this Part | Rule 12.1 |
| Claims in which default judgment may not be obtained | Rule 12.2 |
| Cases in which permission required | Rule 12.3 |
| Conditions to be satisfied – judgment for failure to file acknowledgment of service | Rule 12.4 |
| Conditions to be satisfied – judgment for failure to defend | Rule 12.5 |
| Admission of part – request for time to pay | Rule 12.6 |
| Procedure | Rule 12.7 |
| Claim for specified sum of money | Rule 12.8 |
| Claim against more than one defendant | Rule 12.9 |
| Nature of default judgment | Rule 12.10 |
| Interest | Rule 12.11 |
| Costs | Rule 12.12 |

Defendant's rights following default judgment                                    Rule 12.13

## Part 13: Setting Aside or varying Default Judgment

Scope of this Part                                                               Rule 13.1

Cases where court must set aside default judgment                                Rule 13.2

Cases where court may set aside or vary default judgment                         Rule 13.3

Applications to vary or set aside default judgment – procedure                   Rule 13.4

Court to impose condition as to filing of defence                               Rule 13.5

Hearing to be treated as case management conference                              Rule 13.6

Abandoned claims to be restored if judgment set aside                            Rule 13.7

## Part 14: Judgment on Admissions

Making an admission                                                              Rule 14.1

Satisfaction                                                                     Rule 14.2

Admissions where party a minor or patient                                        Rule 14.3

Admission by notice in writing – application for judgment                        Rule 14.4

Admission in whole or in part of money claim                                     Rule 14.5

Admission of whole of claim for specified sum of money                           Rule 14.6

Admission of part of claim for money only                                        Rule 14.7

Admission of liability to pay whole of claim for unspecified sum of money        Rule 14.8

Requests for time to pay                                                         Rule 14.9

Requests for time to pay – procedure where time and rate agreed a               Rule 14.10

Requests for time to pay – procedure where lime and rate not agreed             Rule 14.11

Right of redetermination                                                         Rule 14.12

Variation of order                                                               Rule 14.13

## Part 15: Summary Judgment

Scope of this Part                                                               Rule 15.1

Grounds for summary judgment                                                     Rule 15.2

Types of proceedings for which summary judgment is not available                 Rule 15.3

Procedure                                                                        Rule 15.4

Evidence for purpose of summary judgment hearing                                 Rule 15.5

Powers of court on application for summary judgment                              Rule 15.6

## Part 16: Assessment of Damages

Scope of this Part                                                                        Rule 16.1

Assessment of damages after default judgment                                              Rule 16.2

Assessment of damages after admission of liability on claim for unspecified sum of money  Rule 16.3

Assessment of damages after direction for trial of issue of quantum                       Rule 16.4

## Part 17: Interim Remedies

Orders for interim remedies                                                               Rule 17.1

Time when an order for interim remedy may be made                                         Rule 17.2

How to apply for interim remedy                                                           Rule 17.3

Interim injunctions and similar orders                                                    Rule 17.4

Interim payments – general procedure                                                      Rule 17.5

Interim payments – conditions to be satisfied and matters to be taken into account        Rule 17.6

Powers of court where it has made order for interim payment                               Rule 17.7

Power of court to order early trial                                                       Rule 17.8

## Part 18: Ancillary Claims

Meaning of ancillary claim                                                                Rule 18. 1

Ancillary claim to be treated as claim for purposes of these Rules                        Rule 18.2

Defendant's claim for contribution or indemnity from co-defendant                         Rule 18.3

Procedure for making ancillary claim                                                      Rule 18.4

Service of ancillary claim form                                                           Rule 18.5

Counterclaim may survive claim                                                            Rule 18.6

Restrictions on right to make counterclaim or set-off in proceedings by or against Crown  Rule 18.7

Adding other defendants to counterclaim                                                   Rule 18.8

Defence to ancillary claim                                                                Rule 18.9

Matters relevant to whether ancillary claim should be dealt with separately from main claim  Rule 18.10

Effect of service of ancillary claim form                                                 Rule 18.11

Special provisions relating to judgment on failure to file defence to ancillary claim     Rule 18.12

Procedural steps on service of ancillary claim form on person who is not a party          Rule 18.13

Case management where there is defence to ancillary claim                                 Rule 18.14

### Part 19: Addition and Substitution of Parties

Scope of this Part — Rule 19.1

Change of parties – general — Rule 19.2

Procedure for adding and substituting parties — Rule 19.3

Special provisions about adding or substituting parties after end of relevant limitation period — Rule 19.4

### Part 20: Changes to Statements of Case

Changes to statements of case — Rule 20.1

Changes to statement of case after end of relevant limitation period — Rule 20.2

Filing an amended statement of case — Rule 20.3

### Part 21: Representative Parties

Representative claimants and defendants – general — Rule 21.1

Appointment of representative claimant or defendant – procedure — Rule 21.2

Consequence of order appointing representative party — Rule 21.3

Representation of persons who cannot be ascertained, etc. in proceedings about estates, trusts and construction of written instruments — Rule 21.4

Compromise in proceedings to which rule 21.4 applies — Rule 21.5

Representation of beneficiaries by trustees — Rule 21.6

Proceedings against estate of deceased person — Rule 21.7

Power of court to give directions to enable proceedings to be carried on after party's death — Rule 21.8

Power of court to strike out action after death of claimant — Rule 21.9

### Part 22: Miscellaneous Rules about Parties

Partners — Rule 22.1

Person carrying on business in another name — Rule 22.2

Bodies corporate — Rule 22.3

### Part 23: Minors and Patients

Scope of this Part — Rule 23.1

Requirement of next friend in proceedings by or against minors or patients — Rule 23.2

Stage of proceedings at which next friend becomes necessary          Rule 23.3

Who may be minor's next friend          Rule 23.4

Who may be patient's next friend          Rule 23.5

Conditions for being next friend          Rule 23.6

How person becomes next friend without court order          Rule 23.7

How person becomes next friend by court order          Rule 23.8

Court's power to terminate appointment of and substitute next friend          Rule 23.9

Appointment of next friend by court order – supplementary          Rule 23.10

Procedure where appointment as next friend ceases          Rule 23.11

Compromise, etc. on behalf of minor or patient          Rule 23.12

Control of money recovered by or on behalf of minor or patient          Rule 23.13

## Part 24: Security for Costs

Scope of this Part          Rule 24.1

Application for order for security for costs          Rule 24.2

Conditions to be satisfied          Rule 24.3

Security for costs against counter-claiming defendant          Rule 24.4

Enforcing order for security for costs          Rule 24.5

## Part 25: Case Management – The Objective

Court's duty to actively manage cases          Rule 25.1

## Part 26: Case Management –The Court's Powers

Court's general powers of management          Rule 26.1

Courts power to make orders of its own initiative          Rule 26.2

Sanctions - striking out statement of case          Rule 26.3

Court's general power to strike out statement of case          Rule 26.4

Judgment without trial after striking out          Rule 26.5

Setting aside judgment after striking out          Rule 26.6

Court's powers in cases of failure to comply with rules, etc.          Rule 26.7

Relief from sanctions          Rule 26.8

General power of court to rectify matters where there has been a procedural error          Rule 26.9

## Part 27: Case Management Conferences – Procedure

Scope of this Part                                                                   Rule 27.1

Fixed date claims – first hearing                                                    Rule 27.2

Case management conference                                                           Rule 27.3

Attendance at case management conference or pre-trial review                         Rule 27.4

Orders to be made at case management conference                                      Rule 27.5

Dispensing with case management conference in simple and urgent proceedings          Rule 27.6

Adjournment of case management conference                                            Rule 27.7

Variation of case management timetable                                               Rule 27.8

Listing questionnaire                                                                Rule 27. 9

Fixing trial date                                                                    Rule 27. 10

## Part 28: Disclosure and Inspection of Documents

Scope of this Part                                                                       Rule 28.1

Duty of disclosure limited to documents which are or have been in party's control         Rule 28.2

Disclosure of copies                                                                      Rule 28.3

Standard disclosure                                                                       Rule 28.4

Specific disclosure                                                                       Rule 28.5

Criteria for ordering specific disclosure                                                 Rule 28.6

Procedure for disclosure                                                                  Rule 28. 7

Duty of legal practitioner                                                                Rule 28. 8

Requirement for maker to certify understanding of the duty of disclosure                  Rule 28.9

Disclosure in stages                                                                      Rule 28.10

Inspection and copying of listed documents                                                Rule 28.11

Duty of disclosure continuous during proceedings                                          Rule 28.12

Consequence of failure to disclose documents under order for disclosure                   Rule 28.13

Claim of right to withhold disclosure or inspection document                              Rule 28.14

Restriction on use of a privileged document inspection of which has been inadvertently allowed   Rule 28.15

Documents referred to in statements of case, etc.                                         Rule 28.16

Subsequent use of disclosed documents                                                     Rule 28.17

Notice to prove document                                                                  Rule 28.18

## Part 29: Evidence

Power of court to control evidence — Rule 29.1

Evidence at trial – general rule — Rule 29.2

Evidence by video link or other means — Rule 29.3

Requirement to serve witness statements — Rule 29.4

Form of witness statements — Rule 29.5

Witness summaries — Rule 29.6

Procedure where one party does not serve witness statement by date directed — Rule 29.7

Witness to give evidence unless court otherwise orders — Rule 29.8

Amplifying witness statements at trial — Rule 29.9

Cross-examination on witness statement — Rule 29.10

Consequence of failure to serve witness statement or summary — Rule 29.11

Use of witness statement for other purposes — Rule 29.12

Notice to admit facts — Rule 29.13

## Part 30: Affidavits

Affidavit evidence — Rule 30.1

Form of affidavits — Rule 30.2

Contents of affidavits — Rule 30.3

Documents to be used in conjunction with affidavits — Rule 30.4

Making of affidavits — Rule 30.5

Service of affidavits — Rule 30.6

## Part 31: Miscellaneous Rules about Evidence

Use of plans, photographs, etc. as evidence — Rule 31.1

Evidence on questions of foreign law — Rule 31.2

Evidence of consent of trustee to act — Rule 31.3

## Part 32: Experts and Assessors

Scope of this Part — Rule 32.1

General duty of court and of parties — Rule 32.2

Expert's overriding duty to court — Rule 32.3

Way in which expert's duty to court is to be carried out                    Rule 32.4

Expert's right to apply to court for directions                             Rule 32.5

Court's power to restrict expert evidence                                   Rule 32.6

General requirement for expert evidence to be given in written report       Rule 32.7

Written questions to experts                                                Rule 32.8

Court's power to direct evidence by single expert                           Rule 32.9

Cross-examination of court appointed expert                                 Rule 32.10

Instructions to single expert                                               Rule 32.11

Power of court to direct party to provide expert report                     Rule 32.12

Expert's reports to be addressed to court                                   Rule 32.13

Contents of report                                                          Rule 32.14

Meeting of experts                                                          Rule 32.15

Consequence of failure to disclose expert's report                         Rule 32.16

Appointment of assessor                                                     Rule 32.17

## Part 33: Court Attendance by Witnesses and Depositions

Scope of this Part                                                          Rule 33.1

Witness summonses                                                           Rule 33.2

Issue of witness summons                                                    Rule 33.3

Witness summons in aid of inferior court or tribunal                        Rule 33.4

Time for serving witness summons                                            Rule 33.5

Compensation for loss of time                                               Rule 33.6

Evidence by deposition before examiner                                      Rule 33.7

Conduct of examination                                                      Rule 33.8

Evidence without examiner being present                                     Rule 33.9

Enforcing attendance of witness                                             Rule 33.10

Special report                                                              Rule 33.11

Fees and expenses of examiner                                               Rule 33.12

Order for payment of examiner's fees                                        Rule 33.13

Use of deposition at hearing                                                Rule 33.14

Where person to be examined is out of the jurisdiction –letter of request   Rule 33.15

Early appointment to produce documents                                      Rule 33.16

## Part 34: Requests for Information

Right of parties to obtain information                                     Rule 34.1

Orders compelling reply to request for information                        Rule 34.2

Information obtained under Part 34 not to be used in other proceedings     Rule 34.3

Certificate of truth                                                      Rule 34.4

## Part 35: Offers to Settle

Scope of this Part                                                        Rule 35.1

Introductory                                                              Rule 35.2

Making offer to settle                                                    Rule 35.3

Time when offer to settle may be made                                     Rule 35.4

Procedure for making offer to settle                                      Rule 35.5

Extent to which offer to settle covers interest, costs or counterclaim    Rule 35.6

Offer to settle made after interim payment                               Rule 35.7

Offer to settle part of claim                                             Rule 35.8

Time limit for accepting offer to settle                                 Rule 35.9

Procedure for acceptance                                                 Rule 35.10

Effect of acceptance – generally                                         Rule 35.11

Effect of acceptance – more than two parties                             Rule 35.12

Costs of offeror and offeree where offer is accepted – defendant's offer  Rule 35.13

Costs of offeror and offeree where offer is accepted – claimant's offer   Rule 35.14

Costs where offer not accepted – general rules                           Rule 35.15

How costs are to be dealt with                                           Rule 35.16

## Part 36: Payments into Court to Support Offers under Part 35 and under Court Order

Scope of this Part                                                        Rule 36.1

Payments into court to support offers to settle                          Rule 36.2

Right to payment out on acceptance of offer                              Rule 36.3

Cases where payment out requires court order                             Rule 36.4

Money paid into court under order                                        Rule 36.5

Money paid into court as condition for permission to defend or to continue to defend   Rule 36.6

Proceedings under Fatal Accidents Acts                                   Rule 36.7

## Part 37: Discontinuance

Scope of this Part                                             Rule 37.1

Right to discontinue claim                                     Rule 37.2

Procedure for discontinuing                                    Rule 37.3

Right to apply to have notice of discontinuance set aside      Rule 37.4

Effect of discontinuance                                       Rule 37.5

Liability for costs                                            Rule 37.6

Quantification of costs                                        Rule 37.7

Discontinuance and subsequent proceedings                      Rule 37.8

## Part 38: Pre-Trial Review

Scope of this Part                                             Rule 38.1

Direction for pre-trial review                                 Rule 38.2

Rules relating to case management conference to apply          Rule 38.3

Who is to conduct pre-trial review                             Rule 38.4

Parties to prepare pre-trial memorandum                        Rule 38.5

Directions at pre-trial review                                 Rule 38.6

## Part 39: Trial

Documents for use at trial                                     Rule 39.1

Cross-examination                                              Rule 39.2

Written submissions                                            Rule 39.3

Failure of party to attend trial                               Rule 39.4

Applications to set aside judgment given in party's absence    Rule 39.5

Adjournment of trial                                           Rule 39.6

Inspection                                                     Rule 39.7

## Part 40: Appointment of Referee to Inquire and Report

Power to order trial before referee                            Rule 40.1

Reference to referee to inquire and report                     Rule 40.2

Appointment of referee                                         Rule 40.3

Conduct of reference                                           Rule 40.4

Report following reference                                              Rule 40.5

Consideration of report by court                                       Rule 40.6

Restrictions on appointment of referee in a claim by or against Crown  Rule 40.7


## Part 41: Accounts and Inquiries

Scope of this Part                                                     Rule 41.1

Directions for account                                                 Rule 41.2

Verification of account                                                Rule 41.3

Notice of omissions                                                    Rule 41.4

Allowances                                                             Rule 41.5

Delay                                                                  Rule 41.6

Distribution before entitlement ascertained                           Rule 41.7


## Part 42: Judgments and Orders

Scope of this Part                                                     Rule 42.1

Parties present when order made or notified of terms to be bound      Rule 42.2

Practice forms to be used where available                             Rule 42.3

Standard requirements                                                  Rule 42.4

Drawing of judgments and orders                                       Rule 42.5

Service of orders                                                      Rule 42.6

Consent judgments and orders                                          Rule 42.7

Time when judgment or order takes effect                              Rule 42.8

Time for complying with judgment or order                             Rule 42.9

Correction of errors in judgments or orders                           Rule 42.10

Cases where court gives judgment both on claim and counterclaim       Rule 42.11

Service of copy order on person not a party                           Rule 42.12


## Part 43: Enforcement – General Provisions

Scope of this Part                                                     Rule 43.11

Procedure for beginning enforcement                                    Rule 43.2

Judgment subject to conditions                                         Rule 43.3

Separate enforcement of costs                                          Rule 43.4

Effect of setting aside judgment or order                             Rule 43.5

Court's powers where person ordered to do act fails to comply         Rule 43.6

Judgment for sum in foreign currency                                            Rule 43.7

Enforcement by or against person who is not a party                             Rule 43.8

Enforcement against partnership                                                 Rule 43.9

Enforcement of awards, etc. made by outside bodies                             Rule 43.10

## Part 44: Oral Examination in Aid of Enforcement

Scope of this Part                                                             Rule 44.1

Who may be orally examined                                                      Rule 44.2

Procedure to obtain order for oral examination                                 Rule 44.3

Order for oral examination                                                      Rule 44.4

Conduct of oral examination                                                     Rule 44.5

Order for payment by instalments                                               Rule 44.6

Financial position notice                                                       Rule 44.7

## Part 45: How Judgments may be Enforced

Scope of this Part                                                             Rule 45.1

How money judgments may be enforced                                            Rule 45.2

Enforcement of orders for payment of money into court                          Rule 45.3

Enforcement of judgments and orders for possession of land                     Rule 45.4

Enforcement of judgments and orders for delivery of goods                      Rule 45.5

Enforcement of judgments and orders requiring person to do act
        within specified time or not to do act                                 Rule 45.6

Enforcement of judgments and orders requiring body corporate to
        do act within specified time or not to do act                          Rule 45.7

## Part 46: General Rules about Writs of Execution

Meaning of "writ of execution"                                                 Rule 46.1

Permission required to enforce in certain cases                                Rule 46.2

Application for permission to enforce                                          Rule 46.3

Amount to be recovered on enforcement                                          Rule 46.4

Enforcement of judgment or order requiring judgment debtor to do two or more different things   Rule 46.5

No writ of execution against Crown                                             Rule 46.6

Enforcement of judgment for payment by instalments                             Rule 46.7

No writ of execution for goods or payment of assessed value unless court has assessed value    Rule 46.8

Order for specific delivery    Rule 46.9

Period for which writ of execution valid    Rule 46.10

Renewal of writ of execution    Rule 46.11

Period for which court may renew writ of execution    Rule 46.12

Effective date of renewed writ unchanged    Rule 46.13

Claims to goods seized under writ of execution    Rule 46.14

Suspension of writ of execution at request of judgment creditor    Rule 46.15

Return to writ of execution    Rule 46.16

## Part 47: Variation of Terms of Judgments and Suspension of Writs

Scope of this Part    Rule 47.1

Applications to vary time and method of payment or to suspend order for seizure and sale of goods or writ of delivery    Rule 47.2

Where no objection except as to terms – procedure    Rule 47.3

Application for redetermination of court's decision    Rule 47.4

Where judgment creditor objects to variation or suspension    Rule 47.5

Pre-suspension costs    Rule 47.6

Judgment creditor's right to re-issue writ of execution    Rule 47.7

## Part 48: Charging Orders

Scope of this Part and definitions    Rule 48.1

How to apply for charging order    Rule 48.2

Evidence in support of application for charging order    Rule 48.3

Single charging order for more than one judgment debt    Rule 48.4

Procedure for making provisional charging order    Rule 48.5

Interested persons    Rule 48.6

Service of provisional charging order and of copies    Rule 48.7

Making of final charging order    Rule 48.8

Effect of provisional or final charging order    Rule 48.9

Discharge or variation of final charging order    Rule 48.10

Enforcement of charging order by sale    Rule 48.11

## Part 49: Stop Notices and Stop Orders

| | |
|---|---|
| Scope of this Part | Rule 49.1 |
| Right to apply for stop notice | Rule 49.2 |
| Procedure for obtaining stop notice | Rule 49.3 |
| Service | Rule 49.4 |
| Amendment of stop notice | Rule 49.5 |
| Withdrawal or discharge of stop notice | Rule 49.6 |
| Stop orders | Rule 49.7 |
| Procedure on application for stop order | Rule 49.8 |
| Power to vary or discharge stop order | Rule 49.9 |

## Part 50: Attachment of Debts

| | |
|---|---|
| Scope of this Part | Rule 50.1 |
| Circumstances in which court may make order for attachment of debts | Rule 50.2 |
| Procedure – making of provisional order | Rule 50.3 |
| Money in bank accounts, etc. | Rule 50.4 |
| Joint funds | Rule 50.5 |
| Presumption of equal shares in joint funds | Rule 50.6 |
| Attachment of debts owed by firm | Rule 50.7 |
| Service of provisional order | Rule 50.8 |
| Effect of provisional order | Rule 50.9 |
| Hearing to consider making final order | Rule 50.10 |
| Claim to debt by person other than judgment debtor | Rule 50.11 |
| Enforcement against garnishee | Rule 50.12 |
| Discharge of garnishee's debt to judgment debtor | Rule 50.13 |
| Costs of attachment of debts proceedings | Rule 50.14 |
| Money in court | Rule 50.15 |

## Part 51: Appointment of Receiver

| | |
|---|---|
| Scope of this Part | Rule 51.1 |
| Application for appointment of receiver and injunction | Rule 51.2 |
| Conditions for appointment of receiver | Rule 51.3 |

Giving of security by receiver    Rule 51.4

Remuneration of receiver    Rule 51.5

Receiver's powers    Rule 51.6

Accounts of receiver    Rule 51.7

Payment of balance into court    Rule 51.8

Default by receiver    Rule 51.9

## Part 52: Judgment Summonses

Scope of this Part    Rule 52.1

Issue of judgment summons    Rule 52.2

Service of judgment summons    Rule 52.3

Hearing of judgment summons    Rule 52.4

Failure to comply with instalment order    Rule 52.5

Restored hearing of judgment summons    Rule 52.6

## Part 53: Committal and Confiscation of Assets

Scope of this Part    Rule 53.1

Order specifying time for act to be done    Rule 53.2

When committal order or sequestration order may be made    Rule 53.3

Committal order or sequestration order against officer of body corporate    Rule 53.4

Making committal order or sequestration order when judgment or order not served    Rule 53.5

Undertakings    Rule 53.6

Application for committal order or sequestration order    Rule 53.7

Service of notice of hearing    Rule 53.8

Powers of the court    Rule 53.9

Restoration of adjourned hearing    Rule 53.10

Application for enforcement of suspended committal order or order for sequestration    Rule 53.11

Special provisions relating to order for sequestration    Rule 53.12

## Part 54: Interpleader

Scope of this Part    Rule 54.1

Claim to goods taken in execution    Rule 54.2

How to interplead    Rule 54.3

| Service of interpleader application | Rule 54.4 |
| Powers of the court | Rule 54.5 |
| Power to order sale of goods taken in execution | Rule 54.6 |

### Part 55: Sale of Land by Order of Court

| Scope of this Part | Rule 55.1 |
| Application for order for sale | Rule 55.2 |
| Hearing of application | Rule 55.3 |
| Order for sale | Rule 55.4 |
| Directions | Rule 55.5 |
| Further directions | Rule 55.6 |

### Part 56: Administrative Law

| Scope of this Part | Rule 56.1 |
| Who may apply for judicial review | Rule 56.2 |
| Judicial review – application for leave | Rule 56.3 |
| Judicial review – hearing of application for leave | Rule 56.4 |
| Delay | Rule 56.5 |
| Proceedings by way of claim which should be application for administrative order | Rule 56.6 |
| How to make application for administrative order | Rule 56.7 |
| Joinder of claims for other relief | Rule 56.8 |
| Service of claim form for administrative order | Rule 56.9 |
| Evidence in answer | Rule 56.10 |
| First hearing | Rule 56.11 |
| Procedural applications | Rule 56.12 |
| Hearing of application for administrative order | Rule 56.13 |
| Special provisions relating to orders for judicial review | Rule 56.14 |

### Part 57: Habeas Corpus

| Scope of this Part | Rule 57.1 |
| Application for issue of writ of Habeas Corpus | Rule 57.2 |
| Power of court | Rule 57.3 |
| Service of writ | Rule 57.4 |

Return to writ                                          Rule 57.5

Powers of court on hearing writ                          Rule 57.6

Bringing up prisoner to give evidence, etc.              Rule 57.7


## Part 58: Bail Applications

Scope of this Part                                       Rule 58.1

How to apply to the court                                Rule 58.2

Hearing of application                                   Rule 58.3


## Part 59: Proceedings by and against the Crown

Scope of this Part                                       Rule 58.1

Service of claim form                                    Rule 59.2

Claimant's duty to give particulars                      Rule 59.3

Applications in certain revenue matters                  Rule 59.4

Proceedings relating to postal packets                   Rule 59.5

Applications under s. 24 (2) or 25 (2) of the Act        Rule 59.6

Enforcement against Crown                                Rule 59.7


## Part 60: Appeals to the High Court

Scope of this Part                                       Rule 60.1

How to appeal to the court                               Rule 60.2

Effect of appeal                                         Rule 60.3

Persons on whom claim form must be served                Rule 60.4

Time within which claim form must be served              Rule 60.5

Amendment of statement of case                           Rule 60.6

First hearing                                            Rule 60.7

Hearing of appeal                                        Rule 60.8

Right of minister to be heard                            Rule 60.9


## Part 61: Appeals to the Court by
way of Case Stated

### Contents of this Part

Scope of this Part                                       Rule 61.1

Application for order to state a case — Rule 61.2

Persons on whom claim form must be served — Rule 61.3

Time within which claim form must be served — Rule 61.4

Signing and service of case — Rule 61.5

How to commence proceedings in the High
Court to determine a case — Rule 61.6

How to commence proceedings in the Court
of Appeal to determine a case — Rule 61.7

Determination of Case — Rule 61.8

Time within which case must be stated — Rule 61.9

## Part 62: Appeals to the Court of Appeal

Scope of this Part — Rule 62.1

How to obtain leave to appeal — Rule 62.2

How to appeal — Rule 62.3

Contents of notice of appeal — Rule 62.4

Time for filing notice of appeal — Rule 62.5

Summary appeal — Rule 62.6

Service of notice of appeal — Rule 62.7

Counter notice — Rule 62.8

Action to be taken on receipt of notice of appeal — Rule 62.9

Interlocutory appeal — Rule 62.10

Skeleton arguments — Rule 62.11

The record – appeals from High Court — Rule 62.12

The record – appeals from magistrates' courts — Rule 62.13

Case management — Rule 62.14

Procedural applications to court — Rule 62.15

Powers of single judge of the court, master and Chief Registrar to make certain orders — Rule 62.16

Security for costs of appeal — Rule 62.17

Non-disclosure of payment into court, etc. — Rule 62.18

Stay of execution — Rule 62.19

General powers of the court — Rule 62.20

Failure of party to attend appeal — Rule 62.21

Application to set aside a decision made in party's absence       Rule 62.22

Adjournment of appeal       Rule 2.23

Certificate of result of appeal       Rule 62.24

Withdrawal or discontinuance       Rule 62.25

Liability for costs on withdrawal or discontinuance       Rule 62.26

Quantification of costs on withdrawal or discontinuance       Rule 62.27

Judicial Review appeal       Rule 62.28

## Part 63: Change of Legal Practitioner

Scope of this Part       Rule 63.1

Change of legal practitioner       Rule 63.2

Notice of appointment of legal practitioner       Rule 63.3

Party acting in person       Rule 63.4

Application by another party to remove legal practitioner from record       Rule 63.5

Application by legal practitioner to be removed from record       Rule 63.6

Time when notice or order takes effect       Rule 63.7

## Part 64: Costs – General

Scope of this Part       Rule 64.1

Definitions and application       Rule 64.2

Orders about costs       Rule 64.3

Costs where there is an appeal       Rule 64.4

Entitlement to recover costs       Rule 64.5

Successful party generally entitled to costs       Rule 64.6

Two or more parties having same interest       Rule 64.7

Wasted costs orders       Rule 64.8

Court's powers in relation to wasted costs orders       Rule 64.9

Costs against person who is not a party       Rule 64.10

## Part 65: Costs – Quantification

Scope of this Part       Rule 65.1

Basis of quantification       Rule 65.2

Ways in which costs are to be quantified       Rule 65.3

Fixed costs       Rule 65.4

Prescribed costs.                                                                  Rule 65.5

Applications to determine value of claim for purpose of prescribed costs            Rule 65.6

What is included in prescribed costs                                               Rule 65.7

Budgeted costs                                                                     Rule 65.8

Client's consent to application for budgeted costs                                 Rule 65.9

What is included in costs budget                                                   Rule 65.10

Assessed costs – procedural applications                                          Rule 65.11

Assessed costs – general                                                          Rule 65.12

Costs of Proceedings in Court of Appeal.                                          Rule 65.13

Costs capping orders – General                                                    Rule 65.14

Application  for a costs capping order                                            Rule 65.15

Application to vary a costs capping order                                         Rule 65.16

      Appendix A – Fixed Costs

      Appendix B – Prescribed Costs

      Appendix C – Prescribed Costs: Percentage to be allowed at various stages of claim

## Part 66: Mortgage Claims

Scope of this Part                                         Rule 66.1

Mortgage claim to be by fixed date claim                   Rule 66.2

Evidence at first hearing                                  Rule 66.3

Claim for possession or payment of mortgage debt           Rule 66.4

## Part 67: Administration Claims

Scope of this Part                                             Rule 67.1

Parties                                                       Rule 67.2

Claims by third parties                                       Rule 67.3

Determination of questions without administration claim        Rule 67.4

Judgments and orders in administration claims                  Rule 67.5

Conduct of sale of trust property                             Rule 67.6

## Part 68: Contentious Probate Proceedings

Scope of this Part                                         Rule 68.1

How to commence probate proceedings                        Rule 68.2

Parties to proceedings for revocation of grant             Rule 68.3

| | |
|---|---|
| Lodgment of grant in proceedings for revocation | Rule 68.4 |
| Affidavit of testamentary scripts | Rule 68.5 |
| Failure to file acknowledgment of service | Rule 68.6 |
| Counterclaim | Rule 68.7 |
| Contents of statements of case | Rule 68.8 |
| Discontinuance and dismissal | Rule 68.9 |
| Compromise of claim: trial on affidavit evidence | Rule 68.10 |
| Application for order to bring in will, etc. | Rule 68.11 |
| Probate counterclaim in other proceedings | Rule 68.12 |

## Part 69: Defamation Claims

| | |
|---|---|
| Scope of this Part | Rule 69.1 |
| Claimant's statement of claim | Rule 69.2 |
| Defendant's statement of case | Rule 69.3 |
| Ruling on meaning | Rule 69.4 |
| Payments into court and offers | Rule 69.5 |
| Statement in open court | Rule 69.6 |
| Requests for information | Rule 69.7 |
| Evidence to mitigate damages | Rule 69.8 |

## Part 70: Admiralty Proceedings

| | |
|---|---|
| Scope of this Part | Rule 70.1 |
| Claims to be dealt with under this Part | Rule 70.2 |
| Admiralty claims in rem | Rule 70.3 |
| How to make Admiralty claim | Rule 70.4 |
| Service of claim form in rem | Rule 70.5 |
| Service on ships, etc. – how effected | Rule 70.6 |
| Service of claim form out of jurisdiction | Rule 70.7 |
| Acknowledgment of service | Rule 70.8 |
| Warrant of arrest | Rule 70.9 |
| Caveat against arrest | Rule 70.10 |
| Committal of legal practitioner for failing to comply with undertaking | Rule 70.11 |
| Execution, etc. of warrant of arrest | Rule 70.12 |

Directions with respect to property under arrest     Rule 70.13

Release of property under arrest     Rule 70.14

Caveat against release etc.     Rule 70.15

Duration of caveats     Rule 70.16

Bail     Rule 70.17

Intervenors     Rule 70.18

Preliminary acts     Rule 70.19

Failure to file preliminary act: proceedings against party in default     Rule 70.20

Special provisions as to statements of case in collision, etc. proceedings     Rule: 70.21

Judgment by default     Rule 70. 22

Order for sale of ship: determination of priority of claims     Rule 70.23

Appraisement and sale of property     Rules 70.24

Undertakings as to expenses, etc.     Rules 70.25

Payment into and out of court     Rules 70.26

Case management conferences     Rules 70.27

Trial     Rule 70.28

Stay of proceedings in collision, etc. proceedings until security given     Rule 70. 29

Inspection of ship, etc.     Rule 70.30

Examination of witnesses and other persons: evidence by affidavit     Rule 70. 31

Proceedings for apportionment of salvage     Rule 70. 32

Applications in proceedings in rem     Rule 70.33

Limitation proceedings: parties     Rule 70.34

Limitation proceedings: payments into court     Rule 70.35

Application for decree or directions in limitation proceedings     Rule 70.36

Limitation proceedings: proceedings under decree     Rule 70.37

Limitation proceedings: proceedings to set aside decree     Rule 70. 38

## Part 71: Obtaining Evidence for Foreign Courts

Scope of this Part     Rule 71.1

Application for order     Rule 71.2

Application by Attorney General in certain cases     Rule 71.3

Person to take and manner of taking examination     Rule 71.4

Dealing with depositions     Rule 71.5

Claim to privilege     Rule 71.6

## Part 72: Reciprocal Enforcement of Judgments

| | |
|---|---|
| Scope of this Part | Rule 72.1 |
| Application for registration | Rule 72.2 |
| Security for costs | Rule 72.3 |
| Order for registration | Rule 72.4 |
| Register of judgments | Rule 72.5 |
| Notice of registration | Rule 72.6 |
| Application to set aside registration | Rule 72.7 |
| Issue of execution | Rule 72.8 |
| Certified copy of High Court judgment for enforcement in another country | Rule 72.9 |

## Part 73: Transitional Provisions

| | |
|---|---|
| Scope of this Part | Rule 73.1 |
| New proceedings | Rule 73.2 |
| Old proceedings | Rule 73.3 |
| Exercise of discretion | Rule 73.4 |

## Part 74: Schedules

| | |
|---|---|
| Scope of this Part | Rule 74.1 |
| Subject matter of schedules | Rule 74.2 |

## Appendix

### Prescribed Forms

| | |
|---|---|
| Form 1: | Claim Form |
| Form 1A: | Notes for Defendant |
| Form 2: | Fixed Date Claim Form |
| Form 3: | Application to Pay by Instalments |

| | |
|---|---|
| Form 4: | Acknowledgment of Service of Claim Form |
| Form 4A: | Acknowledgment of Service of Fixed Date Claim Form |
| Form 5: | Defence and Counterclaim |
| Form 6: | Application |
| Form 7: | Request for Default Judgment |
| Form 8: | Request for Entry of Judgment on Admissions |
| Form 9: | Ancillary Claim Form |
| Form 10: | Listing Questionnaire |
| Form 11: | List of Documents |
| Form 12: | Witness Summons |
| Form 13: | Notice to Non-Party Served With Order |
| Form 14: | Order for Oral Examination |
| Form 15: | Notice of Adjourned Examination |
| Form 16: | Financial Position Notice |
| Form 17: | Writ of Execution Against Goods (Fieri Facas) |
| Form 18: | Writ of Possession |
| Form 19: | Writ of Delivery or Value |
| Form 20: | Writ of Specific Delivery |
| Form 21: | Judgment Summons |
| Form 22: | Writ of Habeas Corpus |
| Form 23: | Notice of Appeal |
| Form 24: | Certificate of Result of Appeal |
| Form 25: | Admiralty Claim In Rem |
| Form 26 | Admiralty Limitation Claim |
| Form 27: | Warrant of Arrest (Admiralty) |
| Form 28: | Request for Claim to be recorded as satisfied |
| Form 29: | Request for Order for Oral Examination of an individual |
| Form 30: | Request for Order for Oral Examination of an officer of a debtor company |
| Form 31: | Hearing On Assessment Of Damages |
| Form 32: | Form of Judgment for amount to be decided by the Court |

**PART 64**

**Costs – General**

**Contents of this Part**

| | |
|---|---|
| Scope of this Part | Rule 64.1 |
| Definitions and application | Rule 64.2 |
| Orders about costs | Rule 64.3 |
| Costs where there is an appeal | Rule 64.4 |
| Entitlement to recover costs | Rule 64.5 |
| Successful party generally entitled to costs | Rule 64.6 |
| Two or more parties having same interest | Rule 64.7 |
| Wasted costs orders | Rule 64.8 |
| Court's powers in relation to wasted costs orders | Rule 64.9 |
| Costs against person who is not a party | Rule 64.10 |

## Scope of this Part

64.1 This Part contains general Rules about costs and the entitlement to costs. Part 65 deals with the quantification of such costs.

## Definitions and application

64.2  (1)  In this Part and in Part 65, unless the context otherwise requires –

"**assessed costs**" and "**assessment**" have the meanings given them by rules 65.11 and 65.12;

"**budgeted costs**" has the meaning given it by rule 65.8;

"**costs**" include a legal practitioner's charges and disbursements, fixed costs, prescribed costs, budgeted costs or assessed costs;

"**fixed costs**" has the meaning given it by rule 65.4; and

"**prescribed costs**" has the meaning given it by rule 65.5.

(2) If costs of –

(a) a legal practitioner to his or her client;

(b) arbitration proceedings; or

(c) proceedings before a tribunal or other statutory body;

are to be taxed or assessed by the court, they must be assessed in accordance with rule 65.12.

(3) If in any enactment there is a reference to the taxation of any costs this is to be construed as referring to the assessment of such costs in accordance with rule 65.12, unless the enactment otherwise provides.

## Orders about costs

64.3 The court's powers to make orders about costs include power to make orders requiring a party to pay the costs of another person arising out of or related to all or any part of any proceedings.

## Costs where there is an appeal

64.4 The court hearing an appeal may make orders about the costs of the proceedings giving rise to the appeal as well as the costs of the appeal.

## Entitlement to recover costs

64.5 A person may not recover the costs of proceedings from any other party or person except by virtue of –

(a) an agreement between the parties;

(b) an order of the court; or

(c) a provision of these Rules.

## Successful party generally entitled to costs

64.6 (1) Where the court, including the Court of Appeal, decides to make an order about the costs of any proceedings, the general rule is that it must order the unsuccessful party to pay the costs of the successful party.

(2) The court may however order a successful party to pay all or part of the costs of an unsuccessful party or may make no order as to costs.

(3) This rule gives the court power in particular to order a person to pay –

(a) costs from or up to a certain date only;

(b) costs relating only to a certain distinct part of the proceedings; or

(c) only a specified proportion of another person's costs.

(4) The court may not make an order under paragraph 3(a) or 3(b) unless it is satisfied that an order under paragraph 3(c) would not be more practicable.

(5) In deciding who should be liable to pay costs the court must have regard to all the circumstances.

(6) In particular it must have regard to –
    (a) the conduct of the parties both before and during the proceedings;
    (b) the manner in which a party has pursued –
        (i) a particular allegation;
        (ii) a particular issue; or
        (iii) the case;
    (c) whether a party has succeeded on particular issues, even if the party has not been successful in the whole of the proceedings;
    (d) whether it was reasonable for a party to –
        (i) pursue a particular allegation; and/or
        (ii) raise a particular issue; and
    (e) whether the claimant gave reasonable notice of intention to issue a claim.
    •Rule 65.11 sets out the way in which the court must deal with the costs of procedural hearings other than a case management conference or pre-trial review.

## Two or more parties having same interest

64.7 If two or more parties having the same interest in relation to proceedings are separately represented the court may disallow more than one set of costs.

## Wasted costs orders

64.8 (1)In any proceedings the court may by order –
    (a) direct the legal practitioner to pay; or
    (b) disallow as against the legal practitioner's client;
the whole or part of any wasted costs.

(2) In this rule –

"**wasted costs**" means any costs incurred by a party –

(a) as a result of any improper, unreasonable or negligent act or omission on the part of any legal practitioner or any employee of the legal practitioner; or

(b) which, in the light of any act or omission occurring after they were incurred;

the court considers it unreasonable to expect that party to pay.

## Court's powers in relation to wasted cost orders

64.9 (1) The court may make an order under this Rule where –

(a) a party or his legal representative, fails to comply with a Rule, practice direction or court order; or

it appears to the court that the conduct of a party or his legal representative, before or during the proceedings, was unreasonable or improper.

(2) Where paragraph (1) applies, the court may –

(a) disallow all or part of the costs which are being assessed; or

(b) order the party at fault or his legal representative to pay costs to the court or which he has caused any other party to incur; or both.

(3) Where –

(a) the court makes an order under paragraph (2) against a legally represented party: and

(b)                          the party is not present when the order is made, the party's legal practitioner receives notice of the order.

## Costs against person who is not a party

64.10(1) This rule applies where

(a) an application is made for; or

(b) the court is considering whether to make;

an order that a person who is not a party to the proceedings nor the legal practitioner to a party should pay the costs of some other person.

(2) Any application by a party must be on notice to the person against whom the costs order is sought and must be supported by evidence on affidavit.

(3) If the court is considering making an order against a person the court must give that person notice of the fact that it is minded to make such an order.

(4) A notice under paragraph (3) must state the grounds of the application on which the court is minded to make the order.

(5) A notice under paragraph (2) or (3) must state a date, time and place at which that person may attend to show cause why the order should not be made.

(6) The person against whom the costs order is sought and all parties to the proceedings must be given 14 days notice of the hearing.