**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 Case |
| Fairfield Sentry Limited, et al., | Case No. 10-13164 (SMB) |
| Debtors in Foreign Proceedings. | Jointly Administered |
| Fairfield Sentry Limited, (In Liquidation), et al., acting by and through the Foreign Representatives thereof, | Adv. Pro. No. 10-03496 (SMB) |
| Plaintiffs, | Administratively Consolidated |
| -against- | |
| Theodoor GGC Amsterdam, et al., Defendants. | |
| This supplemental memorandum of law applies to the Adversary Proceedings listed on Exhibit A hereto | |

**THE HSBC DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 1

I.    The Liquidators Do Not Have the Unilateral Right to "Revise" Their Pleadings ................ 1

II.   The Liquidators Are Precluded from Relying on Any "Knowledge" Allegation.................. 2

III.  The "Revised" Allegations Do Not Help the Liquidators ....................................... 4

      A.   The "Knowledge" Allegations Do Not Establish Actual Knowledge ........................... 6

      B.   The "Knowledge" Allegations Do Not Establish "Blind-Eye" Knowledge.................... 6

IV.   The "Knowledge" Allegations Are Irrelevant ....................................................... 8

V.    The Liquidators Fail to Establish Any Basis for Personal Jurisdiction ............................... 9

VI.   The Liquidators Failed to Validly Serve Certain Foreign HSBC Defendants..................... 10

VII.  The Complaints Against "HSBC" Must Be Dismissed ....................................................... 10

CONCLUSION............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Defer LP v. Raymond James Fin. Inc.*,
654 F. Supp. 2d 204 (S.D.N.Y. 2009) ................................................................... 5

*Gilstrap v. Radianz Ltd.*,
443 F. Supp. 2d 474 (S.D.N.Y. 2006), *aff'd*, 233 F. App'x 83 (2d Cir. 2007) ................... 9

*Kamilche Co. v. United States*,
53 F.3d 1059 (9th Cir. 1995) ............................................................................. 2, 3

*Kearse v. Lincoln Hosp.*,
No. 07 Civ. 4730 (PAC) (JCF), 2009 WL 1706554 (S.D.N.Y. June 17, 2009) ................ 10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) ............................................................................. 3

*Sec. Indus. Ass'n v. Bd. of Governors of Fed. Reserve Sys.*,
900 F.2d 360 (D.C. Cir. 1990) ........................................................................... 2

## Other Authorities

Brooke Masters, *HSBC had 'Madoff warnings in 2001,'* FIN. TIMES, Dec. 6, 2010,
https://www.ft.com/content/2428b572-016c-11e0-9b29-00144feab49a .......................... 3

Greg Farrell, *Madoff trustee sues HSBC for $9bn*, FIN. TIMES, Dec. 6, 2010,
https://www.ft.com/content/b9e20996-00d2-11e0-aa29-00144feab49a .......................... 3

The HSBC Defendants,[1] by their undersigned attorneys, submit this supplemental reply memorandum of law in further support of Defendants' motion to dismiss and in response to the Liquidators' individual opposition brief ("Supplemental Opposition" or "Supp. Opp.").

## PRELIMINARY STATEMENT

The Liquidators now recognize the inadequacy of their pleadings and purport to revise their proposed, already several times amended, Complaints. These unilateral proposed revisions should not be considered—they are procedurally improper, and the CMO was designed to protect Defendants against having to litigate against a moving target. Even if they were considered, they would not save the Liquidators' defective claims from dismissal.

## ARGUMENT

### I.    The Liquidators Do Not Have the Unilateral Right to "Revise" Their Pleadings

The Liquidators implicitly acknowledge the inadequacy of their purported "knowledge" allegations by including with their Supplemental Opposition "revised" Complaints,[2] which include new allegations drawn from selected excerpts from the trial in *Primeo Fund (In Official Liquidation) v. Bank of Bermuda (Cayman) Ltd.* in the Cayman Islands ("*Primeo*"). As a procedural matter, these "revisions" are unauthorized under the CMO and the Federal Rules of Bankruptcy Procedure and therefore are a nullity. *See* Consol. Reply 33-34.

---

[1]    The HSBC Defendants incorporate by reference all applicable arguments made in the Consolidated Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss ("Consolidated Reply" or "Consol. Reply"). All capitalized terms not otherwise defined herein have the meaning ascribed to them in the HSBC Defendants' Supplemental Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend and in Support of Defendants' Motion to Dismiss ("HSBC Br."), Consolidated Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend and in Support of Defendants' Motion to Dismiss ("Consol. Br."), and the Consolidated Reply.

[2]    While the HSBC Defendants refer to the "revised" proposed amended HSSL complaint attached as Exhibit B to the Declaration of David J. Molton, dated April 6, 2017 ("Molton Decl."), filed in *Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Lux.) S.A.*, Adv. Pro. No. 10-03630 (Bankr. S.D.N.Y. Apr. 12, 2017) (Dkt. No. 69) ("New Compl."), their arguments apply equally to the "revised" proposed amended complaints against HBUS and PBRS.

Even if the Liquidators had requested the Court's permission to revise their pleadings (which they did not do), these revisions should not be permitted.  The Liquidators had years to formulate the Complaints they wished to rely on before this massive, multi-defendant coordinated briefing effort got underway.  The HSBC Defendants have invested substantial time and effort in their opening round of briefing and expert reports on foreign law, and it would not be fair to require them to address a new target in their reply.  Moreover, as shown below, the Liquidators' explanation of both the reasons for and the significance of their purported new allegations is plainly inadequate to justify further amendment.

## II.    The Liquidators Are Precluded from Relying on Any "Knowledge" Allegation

The Preliminary Issues—which addressed the questions of whether certificates issued by the Funds are binding and whether shareholders provided good consideration, entitling them to retain their redemption payments—were fully litigated and decided against the Liquidators in the BVI.  *See* Consol. Br. 14-16; Mortimore I ¶¶ 18-34.  The Liquidators had every opportunity to raise the legal argument that a shareholder's bad faith could affect the determination of the Preliminary Issues.  They chose not to, and are now precluded from doing so before this Court.

Applicable federal preclusion principles make clear that "preclusion because of a prior adjudication results from the resolution of a question *in issue*, not from the litigation of specific *arguments* directed to the issue."  *Sec. Indus. Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 900 F.2d 360, 364 (D.C. Cir. 1990).  Accordingly, "[i]f the party against whom preclusion is sought did in fact litigate an issue . . . and suffered an adverse determination, . . . new arguments may not be presented to obtain a different determination of that issue."  *Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995) (quoting Restatement (Second) of Judgments § 27).

The Liquidators do not dispute that they could have raised their bad faith receipt argument in the BVI.  As a matter of fact, in December 2010—months before the Preliminary

2

Issues proceeding began—the Liquidators were aware of the bad faith allegations they now seek to raise against the Knowledge Defendants, as these were made in the BLMIS Trustee's complaint from which they copied their purported "knowledge" allegations here.[3]  HSBC Br. 8.[4] Thus, while a proviso in Justice Bannister's Preliminary Issues Order indicated that the Liquidators would not be barred from pursuing restitution claims based on "facts not actually known . . . at the time of the [Preliminary Issues] hearing," Preliminary Issues Order ¶ 23 (Hare Decl., Ex. N), that proviso does not apply here because the Liquidators *actually knew at the time* that they could raise the bad faith receipt argument.  Despite knowing this, the Liquidators deliberately chose not to raise it.  *See* Consol. Br. 46-47.  They then conceded before the Privy Council that if the NAV statements were "certificates," their restitution claims would fail.  They did so with full knowledge of the bad faith allegations they now make, never suggesting that a bad faith receipt argument might alter that determination.  *See id.*; Mortimore I ¶ 65.

In this context, the Privy Council held that the Funds were obliged to make the redemption payments at the stated price, and also left intact the EC Court of Appeal holding that shareholders provided good consideration, barring any restitution claims.  Given these "material and litigated issue[s]," the Liquidators "cannot now argue . . . any other legal theory—that is inconsistent with [those] ruling[s]." *Kamilche*, 53 F.3d at 1063.  "Any such challenges are subsumed in and precluded by [those decisions'] collateral estoppel effect." *Id*.

---

[3]     The Liquidators cannot copy and paste allegations from the BLMIS Trustee's complaints. *See* HSBC Br. 1 n.4; Supp. Opp. 6 n.7.  "[A] complaint that merely recites others' allegations" is insufficient unless it also includes "non-conclusory facts . . . sufficient to render unproblematic any implied reliance on the" un-adjudicated allegations. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 180 (2d Cir. 2015).  Here, the Liquidators allege no facts about the Knowledge Defendants' purported knowledge beyond those copied from the Trustee.

[4]     These allegations were widely reported and well known. *See, e.g.*, Greg Farrell, *Madoff trustee sues HSBC for $9bn*, Fin. Times, Dec. 6, 2010, https://www.ft.com/content/b9e20996-00d2-11e0-aa29-00144feab49a (noting that the BLMIS Trustee was "claiming the London-based bank turned a blind eye to 'red flags'"); Brooke Masters, *HSBC had 'Madoff warnings in 2001,'* Fin. Times, Dec. 6, 2010, https://www.ft.com/content/2428b572-016c-11e0-9b29-00144feab49a.  The Liquidators were also aware of similar bad faith allegations against a PI Defendant, UBS AG. *See* Fifth Witness Statement of Kenneth Krys ¶ 8 (Kite Decl., Ex. D).

BVI preclusion principles, if they applied, would require the same result.  The Liquidators plainly *could* have raised their bad faith receipt argument in the Preliminary Issues proceeding.  They also *should* have done so, as is confirmed by the fact that they now contend that had bad faith receipt been raised and established, it would require restitution.  Supp. Opp. 7-8.  Yet the Liquidators did not raise this point of law, even though their entitlement to restitution was the precise question posed in the Preliminary Issues proceeding.  As a result, this argument was necessarily decided within the scope of the Preliminary Issues, and the Liquidators are estopped under BVI law from pursuing it here.  *See* Mortimore II ¶ 36.

The Liquidators' attempt to raise the bad faith receipt argument now, after strategically deciding not to in the BVI, is also vexatious and harassing.  BVI law does not permit this type of abuse of process.  Mortimore II ¶ 49.  (*Henderson v. Henderson* doctrine requires parties "to bring their whole case before the court so that all aspects of it may be finally decided . . . once and for all").

### III.    The "Revised" Allegations Do Not Help the Liquidators

*First*, the "revised" allegations were cherry-picked by the Liquidators from the transcript of a trial that lasted over three months and involved dozens of witnesses and experts.[5]  In fact, the Liquidators do not rely on any direct witness trial testimony—instead, they merely extract quotations from a handful of documents referenced primarily during arguments by counsel.[6]

*Second*, HSSL is the only Knowledge Defendant implicated in the *Primeo* action.  Yet many of the "revised" allegations do not even relate to HSSL, and thus should be disregarded entirely.  *See, e.g.*, New Compl. ¶ 90.  None of the allegations has anything to do with HBUS or PBRS either.  Nor do the Liquidators plead any non-conclusory basis upon which to impute

---

[5]      *See* Decl. of Andrew Pullinger, dated June 8, 2017 ("Pullinger Decl."), ¶ 11.

[6]      *See* Molton Decl., Ex. A (attaching excerpts from the *Primeo* trial); Pullinger Decl. ¶¶ 11-12.

HSSL's purported knowledge to HBUS or PBRS.  *Accord Defer LP v. Raymond James Fin. Inc.*, 654 F. Supp. 2d 204, 217-18 (S.D.N.Y. 2009) (no imputation between sister corporations).

*Third*, the vast majority of statements allegedly reflecting HSBC employees' concerns about BLMIS were made *before* HSBC Bank plc hired KPMG to conduct an independent audit of BLMIS in 2005.[7]  As the Liquidators' own pleadings reveal, HSBC Bank plc hired KPMG to check and alleviate these exact concerns.  *See* New Compl. ¶ 100.  As Christine Coe testified in a New York criminal trial against BLMIS employees, KPMG's review provided the "independent comfort" she needed to continue the relationship with BLMIS.[8]  Notably, the Liquidators do not allege that any HSBC entity ignored KPMG's recommendations, and indeed they recognize that HSBC Bank plc sent in KPMG to conduct *another* review in 2008.  *Id.* ¶¶ 107, 110.

*Fourth*, the few statements occurring *after* KPMG conducted its first audit only express "unease" about BLMIS during this period of global financial turmoil.  *See* New Compl. ¶ 110.  And, again, HSBC Bank plc sent KPMG back for a second review in 2008.  The only other allegation arising *after* BLMIS's collapse simply confirms that employees of certain HSBC entities, like many others who dealt with BLMIS, later regretted that they dealt with an entity with a "black box" trading strategy inherently impossible to fully understand.  *Id.* ¶ 111.

*Finally*, none of these allegations demonstrates that the Knowledge Defendants avoided confirming any suspicions or that they had "no real belief in the truth" of the investment returns BLMIS reported.  *See* HSBC Br. 6-7.

---

[7]    *See, e.g.*, New Compl. ¶¶ 90-94, 96, 98-106, 108-09.

[8]    New Compl. ¶ 106; Trial Tr. 6586:3-14, *United States v. Bonventre*, No. 10 Cr. 228 (LTS) (S.D.N.Y. Jan. 8, 2014) (Dkt. No. 880) (Coe testifying that KPMG reports gave her "complete reassurance").

### A. The "Knowledge" Allegations Do Not Establish Actual Knowledge

Neither the old nor the new "knowledge" allegations shows that any Knowledge Defendant had "actual knowledge" of BLMIS's Ponzi scheme. HSBC Br. 4. At most, the allegations demonstrate a purported awareness of so-called "red flags," which have repeatedly been found insufficient to plead "actual knowledge." *See id.* 4 n.13.[9] Thus, the Liquidators cannot escape the Section 546(e) safe harbor or disqualify the Knowledge Defendants from relying on the statutory defense under Section 31 of the BVI Business Companies Act 2004.[10]

The Liquidators try to avoid the Section 546(e) safe harbor by repeating their argument that it does not apply extraterritorially to bar avoidance of the redemption payments allegedly received by the HSBC Defendants. Supp. Opp. 4 nn.4-5. That argument fails. Because the safe-harbor does, in fact, apply to the Liquidators' claims involving both foreign and domestic transfers (indeed, the Liquidators do not deny that Section 546(e) applies to their claims against domestic parties, including HBUS, involving domestic transfers), *see* Consol. Reply 1, 17-20, their claims survive here only if the Complaints allege "actual knowledge"—they do not.[11]

### B. The "Knowledge" Allegations Do Not Establish "Blind-Eye" Knowledge

To establish "blind eye knowledge" under BVI law, the Liquidators must plead that the Knowledge Defendants had suspicions of BLMIS's fraud that were *firmly grounded and targeted at specific facts*," but deliberately avoided confirming those suspicions, or that the

---

[9]     The Liquidators' decision to remove the phrase "should have known" from their Complaints shows they recognize these pleading deficiencies. *See* HSBC Br. 4 n.11.

[10]     *See* Consol. Br. 51-52; HSBC Br. 3-4; Mortimore I ¶¶ 83-87; Mortimore II ¶¶ 60-63.

[11]     The Liquidators also do not refute that their attempt to impute Zurich Capital's purported knowledge to HBUS fails on multiple levels—including because the Liquidators make no allegations of Zurich Capital's knowledge, leaving no knowledge to impute from Zurich Capital to HBUS. *See* HSBC Br. 5 n.14; *see also* HBUS Compl. ¶¶ 96-99. Instead, the Liquidators protest that any attention to imputation is "a red herring," as though they had never attempted to plead imputation in the first place. Supp. Opp. 7 n.11.

Knowledge Defendants otherwise could "*have no real belief in the truth*" that BLMIS was not a Ponzi scheme.  Mortimore II ¶¶ 99-100 (emphasis added).

Here, the "knowledge" allegations (old and new) are insufficient to satisfy that standard because they show nothing more than a "vague feeling of unease."  Mortimore I ¶¶ 110-14; HSBC Br. 4-7.  While the Liquidators falsely claim that the KPMG reports provide "factual allegations" that the Knowledge Defendants were alerted to 20 different fraud risks, Supp. Opp. 5, they fail to grapple with the actual text of those reports.  The fraud risks identified were plainly not unique to BLMIS, but were generic categories of risk applicable to all investment managers charged with investing a pool of investor funds.  For each of these generic risks, KPMG identified (i) the internal controls BLMIS had in place against such risk, (ii) the testing conducted by KPMG to gain comfort, and (iii) a conclusion or recommendation for additional measures HSBC Bank plc might want to consider taking for further protection.  For example, KPMG conducted specific tests to negate the risk that BLMIS's purported trading was "a sham in order to divert client cash."  *See* HSBC Br. 7 n.19 (quoting KPMG reports).  These due diligence allegations cannot and do not establish that the Knowledge Defendants were indifferent to the truth.  In fact, they establish the exact opposite.  *Id.*  Nor do they possibly demonstrate that any suspicion went unchecked.  *See id.* 6.  The Complaints also fail to identify any "deliberate decision . . . to avoid confirming" the existence of firmly grounded suspicions (even had such suspicions been sufficiently identified).[12]

The Liquidators wrongly claim that "bad faith" can be established under a lower standard of "recklessness," as opposed to "blind eye knowledge."  Supp. Opp. 4.  For the reasons set forth by their expert, the HSBC Defendants dispute that any such lesser standard exists or that any

---

[12]    Mortimore I ¶ 114; *see also* HSBC Br. 6.  The Liquidators' decision to remove the phrase "should have known" from their Complaints shows they recognize these pleading deficiencies.  The remaining conclusory language is irrelevant.  *See* HSBC Br. 4 n.11.

standard of "bad faith" has been demonstrated here.  Mortimore II ¶¶ 98-103.  Even if any such "bad faith" were pled, it would not cure any of the fatal problems with the Complaints.

## IV.    The "Knowledge" Allegations Are Irrelevant

*First*, the Liquidators do not dispute that their "knowledge" allegations (old and new) have no application to their BVI Insolvency Claims,[13] which otherwise fail to state a claim.[14]

*Second*, the Liquidators' Common Law and Contract Claims are barred by the Privy Council Decision regardless of any redemption payment recipient's purported bad faith.  Under that decision, the Funds were contractually obligated to make redemption payments based on the NAV stated at the time—an obligation that "is unaffected by the state of mind of the redeeming member."  Mortimore I ¶ 125.  As the Privy Council made clear, to "produce finality," "any *unqualified* documentary statement of the Redemption Price or the NAV per share on which it is based *must be intended to be definitive*."  Privy Council Decision ¶¶ 26, 30 (Hare Decl., Ex. Q) (emphasis added).  Implying a term that would allow the Liquidators to recover redemption payments made in accordance with a certified NAV based on bad faith receipt[15] is totally inconsistent with the rationale of the Privy Council Decision.  It would annul the finality of those transactions, abolishing the "sole object of the certification process."  *Id.* ¶ 26 ("There is no rational ground for regarding finality as desirable in some cases but not in others."); *see also* Mortimore II ¶¶ 61(a)-(e).

Moreover, BVI statutory law explicitly bars the Liquidators' unsupported argument that the Knowledge Defendants' purported "bad faith" would preclude their reliance on fraudulently-issued certificates.  Mortimore II ¶ 61(f).  Section 31 of the Business Companies Act 2004

---

[13]    *See* HSBC Br. 9; Supp. Opp. 7-8; *see also* Mortimore I ¶¶ 179, 230.

[14]    *See* Consol. Br. 61-69; Mortimore II ¶¶ 9, 127-28, 141, 142, 144, 168, 172, 178, 180, 182, 185, 206.

[15]    *See* Moss I ¶¶ 48-51; Moss II ¶¶ 116-20.

provides that the Funds can preclude reliance on the certificates *only* by establishing that the

Knowledge Defendants had "actual knowledge" of the fraud. *See* Mortimore I ¶¶ 83-87. Thus,

even assuming the Knowledge Defendants acted in "bad faith," they can still rely on the

certificates because they did not have actual knowledge of the fraud. *See supra* Part III.A.

*Third*, the EC Court of Appeal's ruling on the Good Consideration Issue independently

forecloses the Liquidators' restitution claims. *See, e.g.*, HSBC Br. 9; Mortimore I ¶¶ 37-40,

68-69, 119, 124-29 (explaining that the "good faith of the recipient is irrelevant to the

availability of the good consideration defence to a claim in restitution").[16] The Liquidators'

expert, Mr. Moss, concedes that "no decided authority" under BVI law contradicts this

conclusion. Moss II ¶ 119. Indeed, the contrary argument advanced by Mr. Moss, which he

recognizes is based solely on a "tentatively" expressed view in *dicta* in a footnote of one case,

*id.*, has been *rejected* by the only English court to have considered it. Mortimore II ¶ 109; *see*

*also* Mortimore I ¶ 129. Thus, the Knowledge Defendants' position is the only one on this issue

with any basis in BVI law. Moreover, adopting Mr. Moss's view, which is not based on any

decided precedent, would require this Court to create and expand foreign law, which it should

not do. *See, e.g.*, *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 491 (S.D.N.Y. 2006) (U.S.

courts must be "hesitant to . . . expand[], extend[], or depart[] from well-settled and long

established principles" of foreign law), *aff'd*, 233 F. App'x 83 (2d Cir. 2007).

## V.    The Liquidators Fail to Establish Any Basis for Personal Jurisdiction

Neither the old or new proposed "knowledge" allegations in the Complaints against the

foreign HSBC Defendants has any relevance to personal jurisdiction. *See* HSBC Br. 2-3. The

---

[16]    Contrary to the Liquidators' argument, the EC Court of Appeal's decision on the Good Consideration Issue is a binding statement of BVI law and was left intact by the Privy Council Decision. *See* Consol. Reply 29-30.

Liquidators raise no jurisdictional argument in their Supplemental Opposition that is not fully addressed in the Consolidated Reply. *See* Consol. Reply 8-17.[17]

### VI.    The Liquidators Failed to Validly Serve Certain Foreign HSBC Defendants

The Liquidators try to sidestep the improper service arguments set forth by PBRS, HSBC Guyerzeller, and HSBC Panama, *see* HSBC Br. 9-10, by regurgitating the same erroneous assertions that the Forum Selection Clause contained in the Subscription Agreements (which do not apply) and Rule 4 (which was not complied with) excuse their failure to properly serve any Foreign Defendant. These arguments fail. *See* Consol. Br. 70-75; Consol. Reply 46-50. The claims against these HSBC Defendants must therefore be dismissed.

### VII.    The Complaints Against "HSBC" Must Be Dismissed

With respect to claims against "HSBC," the Liquidators never served process on an existing legal entity, and they do not even plausibly allege that any transfer to "HSBC" ever occurred. *See* HSBC Br. 9. The fact that *some* legal entity exists at the address the Liquidators purportedly served does not excuse their failure to serve whatever entity they meant to sue, particularly when they already sued 16 *existing* HSBC-affiliated entities.[18] In any event, the Liquidators plead only that these transfers "may have" occurred and were somehow "associated" with "HSBC." *Id.* This is insufficient. The Liquidators therefore cannot maintain these claims.

### CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaints against the HSBC Defendants with prejudice.

---

[17]    Contrary to the Liquidators' contention, Supp. Opp. 2 n.2, HSBC Guyerzeller and HSBC Panama moved to dismiss for lack of personal jurisdiction. *See* HSBC Br. 1 n.1; Consol. Br. Ex. B.

[18]    The Liquidators cannot reserve the right to amend these Complaints at some later date. *See* Supp. Opp. 10 n.15. The Liquidators have had several years to search the "Funds' records" to identify the entity they meant to sue, and there is no indication that the Liquidators have done anything to advance this effort. *See Kearse v. Lincoln Hosp.*, No. 07 Civ. 4730 (PAC) (JCF), 2009 WL 1706554, at *2 (S.D.N.Y. June 17, 2009) (dismissing complaint where plaintiff "had both time and access" to relevant records to identify proper defendant).

Dated:  New York, New York
        June 9, 2017

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By:  _/s/ Thomas J. Moloney_____
        Thomas J. Moloney

One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999
(tmoloney@cgsh.com)

*Attorneys for the HSBC Defendants*

# EXHIBIT A

This supplemental reply memorandum of law applies to the following adversary proceedings:

| Adv. Pro. No. | Defendant Name | Unique Issues Addressed |
|---|---|---|
| 10-03630 | HSBC Securities Services (Luxembourg) S.A. | Personal Jurisdiction, "Knowledge" Allegations |
| 10-03633 | HSBC Private Bank (Suisse) S.A. | Personal Jurisdiction, "Knowledge" Allegations |
| 10-03634 | HSBC Bank USA, N.A. | "Knowledge" Allegations |
| 10-03635 | "HSBC" | Failure to State Claim, Insufficient Service of Process |
| 10-03636 | "HSBC" | Failure to State Claim, Insufficient Service of Process |
| 11-01594 | HSBC Trust Company AG (f/k/a FS/HSBC Guyerzeller Zurich) | Insufficient Service of Process |
| 12-01270 | HSBC Latin America Holdings (UK) Limited (successor-in-interest to HSBC Securities (Panama) S.A.) | Insufficient Service of Process |