Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza

New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for the BNP Paribas Defendants*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br>**Fairfield Sentry Limited, et al.,**<br>        **Debtors in Foreign Proceedings.** | **Chapter 15 Case**<br>**Case No. 10-13164 (SMB)**<br>**Jointly Administered** |
| **Fairfield Sentry Limited (In Liquidation), et al.,**<br>**acting by and through the Foreign Representatives thereof,**<br>        **Plaintiffs,**<br>        -against-<br>**Theodoor GGC Amsterdam, et al.,**<br>        **Defendants.** | **Adv. Pro. No. 10-03496 (SMB)**<br><br>**Administratively Consolidated** |
| **This motion is submitted in the following Adversary Proceedings:**<br>**10-03635  10-03636  10-04098  10-04099  11-01242**<br>**11-01579  11-01617  12-01551** | |

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW OF BNPP DEFENDANTS
JOINTLY IN FURTHER SUPPORT OF THE FAIRFIELD DEFENDANTS'
CONSOLIDATED REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO
LIQUIDATORS' MOTION FOR LEAVE TO AMEND AND IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ............................................................................................................ 1

    I.      The Court Lacks Personal Jurisdiction Over The BNPP Defendants ........... 1

    II.     BNPP Suisse, Among Other BNPP Defendants, Was Not Properly Served ........................................................................................................... 3

    III.    The Liquidators Fail To Plead That Any BNPP Defendant Knew About The Fraud ............................................................................................ 5

          A.     The Liquidators Concede That They Have Not Shown That The Actual Knowledge Exception To Section 546(e) Applies .................................................................................................... 6

          B.     The Liquidators Have Not Otherwise Properly Pleaded That Any BNPP Defendant Received Redemptions In Bad Faith ....................................................................................................... 6

                1.     The Liquidators Have Not Properly Pleaded That The Citco Subscribers Acted In Bad Faith .......................... 6

                2.     Bad Faith Cannot Be Imputed To The Citco Record Subscribers ....................................................................... 7

                3.     Citco Subscribers' Bad Faith Cannot Be Imputed To BNPP Suisse ............................................................... 10

          C.     Bad Faith Receipt Is Legally Insufficient To Support The Liquidators' Claims ....................................................................... 10

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ago v. Begg, Inc.*,
705 F. Supp. 613 (D.D.C. 1988), *aff'd*, 911 F.2d 819 (D.C. Cir. 1990) ........................... 10

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) ............................................................................. 9

*Bank of Commc'ns v. Ocean Dev. Am., Inc.*,
No. 07-Civ-4628, 2010 WL 768881 (S.D.N.Y. Mar. 8, 2010) ........................................ 7

*Brooklyn Fed. Sav. Bank v. Crosstown W. 28 LLC*,
2010 WL 5141734 (N.Y. Sup. Ct. Kings Cty. 2010) ...................................................... 5

*Defer LP v. Raymond James Fin., Inc.*,
654 F. Supp. 2d 204 (S.D.N.Y. 2009) ............................................................................. 9

*Fernandez v. UBS AG*,
No. 15-Civ-2859, 2016 WL 7163823 (S.D.N.Y. Dec. 7, 2016) ...................................... 6

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,
991 F. Supp. 2d 479 (S.D.N.Y. 2014) ............................................................................. 8

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,
2013 WL 10112073 (S.D.N.Y. Mar. 26, 2013) ............................................................... 9

*In re Bernard L. Madoff Inv. Sec. LLC (In re BLMIS)*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) ............................................................................ 7

*In re Crysen/Montenay Energy Co.*,
166 B.R. 546 (S.D.N.Y. 1994) ........................................................................................ 5

*In re Kingate Mgmt. Ltd. Litig.*,
784 F.3d 128 (2d Cir. 2015) ............................................................................................ 7

*KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*,
812 F. Supp. 2d 377 (S.D.N.Y. 2011) ............................................................................. 3

*Kuwait Inv. Office v. Am. Int'l Grp., Inc.*,
128 F. Supp. 3d 792 (S.D.N.Y. 2015) ............................................................................. 9

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
424 F.3d 195 (2d Cir. 2005) ....................................................................................... 9

*Liberty Ridge LLC v. RealTech Sys. Corp.*,
173 F. Supp. 2d 129 (S.D.N.Y. 2001) ......................................................................... 7

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
431 F. App'x 17 (2d Cir. 2011) ................................................................................... 7

*Oei v. Citibank, N.A.*,
957 F. Supp. 492 (S.D.N.Y. 1997) ............................................................................... 9

*Prado v. City of New York*,
No. 12-Civ-4239, 2015 WL 5190427 (S.D.N.Y. Sept. 3, 2015) ...................................... 4

*Rosner v. Bank of China*,
No. 06-Civ-13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637
(2d Cir. 2009)............................................................................................................... 7

*Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*,
451 F. Supp. 2d 585 (S.D.N.Y. 2006) ......................................................................... 4

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) ....................................................................................... 2

**PRELIMINARY STATEMENT**

The BNPP Defendants respectfully submit this reply memorandum of law, to be read as a supplement to the Fairfield defendants' consolidated reply memorandum of law, which the BNPP Defendants fully join and incorporate by reference.  Consolidated Reply Mem. Law, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-03496 (Bankr. S.D.N.Y. May 26, 2017), ECF No. 1457 (hereinafter, the "Consolidated Reply" or "Consol. Rep.").[1]  For the reasons set forth in the Consolidated Reply and below, the above-referenced adversary proceedings against the BNPP Defendants should be dismissed, and the Liquidators' motion for leave to amend should be denied as futile.

**ARGUMENT**

**I.   The Court Lacks Personal Jurisdiction Over The BNPP Defendants**

The Liquidators do not dispute that it is their burden to demonstrate that personal jurisdiction exists over the BNPP Defendants.  BNPP Br. 3.  They have failed to meet that burden, since neither the Forum Selection Clause nor any of the alleged contacts the BNPP Defendants had with the forum provides a basis for the Court to exercise personal jurisdiction over the BNPP Defendants.  Consol. Rep. 8–17.

For the reasons set forth in the Consolidated Reply, the BNPP Defendants do not maintain the requisite contacts with this forum to be subject to this Court's general jurisdiction, nor do the Liquidators' claims sufficiently relate to the BNPP Defendants' specific contacts with

---

[1] All terms which are not defined herein have the definitions stated in either the Consolidated Reply; the Supplemental Memorandum of Law of BNPP Defendants, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-03496 (Bankr. S.D.N.Y. Jan. 27, 2017), ECF No. 1222 (hereinafter, "BNPP Br."); or the Foreign Representatives' Memorandum of Law in Opposition to the Supplemental Memorandum of Law of BNPP Defendants, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-03496 (Bankr. S.D.N.Y. Apr. 6, 2017), ECF No. 1423 (hereinafter, "BNPP Opp.").

1

the Forum to warrant the exercise of specific jurisdiction.[2]  Moreover, the BNPP Defendants have not consented to jurisdiction in New York by purportedly signing the Subscription Agreements containing the Forum Selection Clause, BNPP Opp. 2–3, since the Liquidators' claims are not with respect to the Subscription Agreement *and* the Fund, as required by the terms of the agreements themselves.  Consol. Rep. 9–10.

Furthermore, as regards BNPP Suisse, the Liquidators concede that it did not sign any Subscription Agreement, fatally undermining their claim that BNPP Suisse is bound thereby.  Although the Liquidators belatedly claim that the *Citco Record Subscribers*[3] are so "closely related" to BNPP Suisse that the former's execution of the Subscription Agreements binds BNPP Suisse,[4] *see, e.g.*, Consol. Mot. at B-1 pp. 2–3, 6; BNPP Opp. 3, the Liquidators have failed to carry their burden of plausibly pleading that (1) BNPP Suisse was so "closely related" to the Citco Record Subscribers that they were effectively affiliates, and that (2) the Forum Selection Clause was reasonably communicated to BNPP Suisse.  Opp. 6 n.5; Consol. Rep. 11–12.

Even if the Court credited the Liquidators' new Citco-related allegations raised for the first time in their opposition brief (which it should not),[5] the Liquidators' own authority requires

---

[2]   The BNPP Defendants' alleged contacts are identical to the other Foreign Defendants'.  *Compare* BNPP Opp. 3 (outlining BNPP Defendants' alleged knowledge that the Funds would invest in BLMIS and their purported use of U.S. correspondent bank accounts) *with* Consol. Rep. 12–14 (discussing same for all Foreign Defendants).

[3]   The Citco Record Subscribers refer to the Citco entities alleged to have signed the Subscription Agreements on behalf of the defendants in the two *ABN AMRO* actions and were previously defined as "Citco Subscribers" in the initial proposed amended complaints.  *Compare* ABN AMRO I Prop. Compl. ¶ 9 *and* ABN AMRO II Prop. Compl. ¶ 9 *with* Prop. Am. Compl. Adv. Pro. No. 10-03635 ¶ 9 (Molton II Decl., Ex. E) (hereinafter, "ABN AMRO I Prop. Compl. II") *and* Prop. Am. Compl. Adv. Pro. No. 10-03636 ¶ 9 (Molton II Decl., Ex. F) (hereinafter, "ABN AMRO II Prop. Compl. II").

[4]   ABN AMRO I Prop. Compl. ¶ 23; ABN AMRO II Prop. Compl. ¶ 23; ABN AMRO I Prop. Compl. II ¶ 106; ABN AMRO II Prop. Compl. II ¶ 114; Consol. Mot. at B-1 pp. 2–3, 6.

[5]   The Liquidators effectively force the BNPP Defendants to litigate against a moving target by improperly amending their Citco-related allegations yet another time with their Opposition.  Consol. Rep. 33–34.  This tactic not only violates the jointly-negotiated Case Management Order that governs the instant briefing, but is also procedurally unfair and impermissible.  *Id.*; *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its complaint through statements made in motion papers.").  The Court should not reward this gamesmanship by crediting these new allegations.

that they allege that BNPP Suisse was sufficiently "closely related" to the Citco Subscribers to have had an *affiliate*-type relationship with them. *KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 384 (S.D.N.Y. 2011) (cited at Opp. 6). Their allegations that Citco Subscribers allegedly performed "paperwork" or took on certain "administrative burden[s]" for BNPP Suisse merely suggest that certain Citco entities performed ministerial duties ancillary to the processing of redemptions made by BNPP Suisse.[6] Thus, instead of showing that the entities are "closely related," these allegations demonstrate the very opposite: that they engaged in an *arm's length transaction*, as would any unrelated third parties.[7]

The Liquidators have also failed to allege that the Forum Selection Clause was *ever* communicated to BNPP Suisse or, indeed, even that BNPP Suisse had access to the Subscription Agreement. *See* Consol. Rep. 11–12. Because the Forum Selection Clause can bind only a party to whom that clause had been communicated, *id.*, it cannot be enforced against BNPP Suisse.

Accordingly, these proceedings should be dismissed for lack of personal jurisdiction. *Id.*

## II. BNPP Suisse, Among Other BNPP Defendants, Was Not Properly Served

During the seven years of litigation, the Liquidators have attempted to serve the BNPP Defendants only through privately-dispatched mail to their purported addresses, and, in the case of BNPP Suisse, addresses of certain Citco entities.[8] Neither the Federal Rules of Civil

---

[6] ABN AMRO I Prop. Compl. II ¶ 106 (describing this relationship as a "service" to assist in the "administrative burden" of "keeping track of investments" and "completing the paperwork"); ABN AMRO II Prop. Compl. II ¶ 114 (same); B&C Agreement §§ 2, 4, 10 (Molton II Decl., Ex. G) (customer ultimately bears liability for losses).

[7] Initially, the Liquidators alleged only that the Citco Record Subscribers acted as a mere "trustee, agent, representative, or nominee" for BNPP Suisse and that "some or all of the Redemption Payments made to the Citco Subscriber may have been paid to an account holder or holders associated with [BNPP Suisse]." BNPP Br. 7–9. Neither these allegations nor the new ones show that BNPP Suisse was an affiliate of Citco. *See* Consol. Rep. 34–35.

[8] BNPP Br. 4 nn.7–8 (identifying affidavits of service to BNPP Suisse in the *ABN AMRO* actions); *see also* Aff. Service at 2, *Fairfield Sentry Ltd. v. BNP Paribas Arbitrage SNC*, Adv. Pro. No. 10-04098 (Bankr. S.D.N.Y. Nov. 16, 2010), ECF No. 3; Aff. Service at 2, *Fairfield Sentry Ltd. v. BNP Paribas Private Bank and Trust Cayman Ltd.*, Adv. Pro. No. 10-04099 (Bankr. S.D.N.Y. Nov. 16, 2010), ECF No. 3; Aff. Service at 2, *Fairfield Sentry Ltd. v.*

3

Procedure nor the Hague Convention authorizes that method,[9] nor have the BNPP Defendants consented to it. Consol. Rep. 46. Therefore, the Liquidators have failed to meet their burden of demonstrating that proper service was effected. BNPP Br. 3.

The purported service on BNPP Suisse was deficient for three additional reasons. *First*, the Liquidators do not dispute that service by privately-dispatched mail within Switzerland is unlawful under Swiss law. Consol. Rep. 48 n.72; BNPP Br. 4; Jeandin Decl. ¶ 18. Thus, even if the Forum Selection Clause applied here, under New York law, it should not be enforced to authorize such illegal service attempts made within Switzerland. Consol. Rep. 47 & n.70.

*Second*, the Liquidators nowhere allege that BNPP Suisse appointed the Citco Service Entities as agents to receive service of process, despite their burden of pleading "facts and circumstances" demonstrating that such appointment occurred.[10] In fact, in the Broker and Custody Agreements ("B&C Agreements"), Citco disclaimed any duty to monitor the beneficial shareholders' investments, making clear that the beneficial shareholders did not appoint any Citco entity as an agent for service of process on their behalf. *See, e.g.*, B&C Agreement §§ 2.9, 6.4 (Molton II Decl., Ex. G).[11]

---

*FS/Fortis Banque Luxembourg*, Adv. Pro. No. 11-01242 (Bankr. S.D.N.Y. Mar. 1, 2011), ECF No. 3; Aff. Service at 2–3, *Fairfield Sentry Ltd. v. BNP Paribas Securities Nominees Ltd.*, Adv. Pro. No. 11-01579 (Bankr. S.D.N.Y. March. 25, 2011), ECF No. 5; Aff. Service at 2, *Fairfield Sentry Ltd. v. Fortis Bank SA/NV*, Adv. Pro. No. 11-01617 (Bankr. S.D.N.Y. Mar. 25, 2011), ECF No. 5; Aff. Service at 2, *Fairfield Sentry Ltd. v. BNP Paribas España*, Adv. Pro. No. 12-01551 (Bankr. S.D.N.Y. Apr. 18, 2012), ECF No. 3.

[9] The Liquidators do not even attempt to dispute that Rule 4 permits service by mail only when dispatched *by the court* or by any internationally-agreed means. Consol. Rep. 48. As the Supreme Court recently emphasized, the Hague Convention does not independently authorize the Liquidators' service by privately-dispatched mail. *Id*. at 49 (citing *Water Splash, Inc. v. Menon*, 16-254, 2017 WL 2216933, at *8 (U.S. May 22, 2017)).

[10] It is undisputed that the Liquidators had the burden to show that the purported agent was in fact authorized to receive service by "present[ing] facts and circumstances showing the proper relationship between the defendant and its alleged agent in fact existed." *Prado v. City of New York*, No. 12 Civ. 4239, 2015 WL 5190427, at *3 (S.D.N.Y. Sept. 3, 2015) (internal quotation marks omitted) (cited at BNPP Br. 5); *see also Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 590 (S.D.N.Y. 2006) (cited at BNPP Br. 5 n.10).

[11] The Liquidators purportedly served BNPP only "c/o" the Citco Service Entities. BNPP Br. 4 n.9; *see also* State Ct. I Aff. at 4–5; ABN AMRO I Aff. Service at 8–9; State Ct. II Aff. at 2–3, 12; ABN AMRO II Aff. Service at 8–9. However, only four of seven such entities are alleged parties to the Subscription or B&C Agreements,

4

*Third*, even if the Forum Selection Clause of the Subscription Agreement could be enforced against BNPP Suisse, the Liquidators have not shown that BNPP Suisse was served in accordance with that clause. As the Liquidators concede, Opp. 73 n.97, in the event that the Forum Selection Clause applies, defendants are "entitled to service upon them in accordance with [its] terms[.]" *Brooklyn Fed. Sav. Bank v. Crosstown W. 28 LLC*, 2010 WL 5141734, at *5 (N.Y. Sup. Ct. Dec. 19, 2010). Here, the Liquidators have not shown that they mailed service to the "address[es] of [the Citco Record Subscribers] then appearing on the Fund's records."[12] Nor do Liquidators specify which of the Citco Record Subscribers purportedly acted on BNPP Suisse's behalf.[13] In short, regardless of whether BNPP Suisse had notice of this litigation,[14] it was not properly served and the claims against it must be dismissed.

## III. The Liquidators Fail To Plead That Any BNPP Defendant Knew About The Fraud

After several years of litigation, the Liquidators now attempt to resuscitate the very claims that have failed in the BVI by theorizing that Fairfield redeemers and Citco entities received Fairfield redemption payments in bad faith. To start, the Liquidators are precluded from putting forth such a theory at this late stage of the litigation under both U.S. and BVI law.

---

neither of which appoint any Citco entity as process agent. ABN AMRO I Prop. Compl. II ¶ 9; ABN AMRO II Prop. Compl. II ¶ 9; B&C Agreement §§ 2.1–2.7, 7.1.1–7.1.2 (Molton II Decl., Ex. G). The remainder of the Citco Service Entities are not alleged to have had any contact with BNPP Suisse at all.

[12] Sentry Subscription Agreement ¶ 19 (Molton II Decl., Ex. A). In fact, Citco entities were allegedly served at addresses that *differ* from those in the B&C Agreements. *Compare, e.g.*, State Ct. II Aff. 2–3 (Citco Global Custody (N.A.) N.V. served in Cork and Amsterdam) *with* B&C Agreement 2 (Molton II Decl., Ex. G) (Citco Global Custody (N.A.) N.V. in Netherlands Antilles).

[13] Only a single Citco Record Subscriber is named in Adv. Pro. No. 10-03635, but it was never served. *Compare* ABN AMRO I Prop. Compl. ¶ 9 (identifying CGC NA as alleged record shareholder) *and* ABN AMRO I Prop. Compl. II ¶ 9 (same) *with* State Ct. I Aff. at 4–5 (service "c/o" CGC NA *at* another non-Citco Record Subscriber entity) *and* ABN AMRO I Aff. Service at 8–9 (same). In Adv. Pro. No. 10-03636, the Liquidators allege four Citco Record Subscribers acted on behalf of sixty-one defendants but fail to specify whether the two Citco Record Subscribers served had any relationship with BNPP Suisse. *Compare, e.g.*, ABN AMRO II Prop. Am. Compl. ¶ 9 (alleging four Citco Record Subscribers) *with* State Ct. II Aff. at 2–3, 12 (service sent "c/o" two of four alleged Citco Record Subscribers).

[14] *See In re Crysen/Montenay Energy Co.*, 166 B.R. 546, 554 (S.D.N.Y. 1994) ("[A]ctual notice is no substitute for valid service of process.") (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987)).

5

Consol. Rep. 22–28. Moreover, even if they are not precluded from doing so, they have failed to plead that the BNPP Defendants acted in bad faith. Indeed, the only actions against them for which the Liquidators even attempt to make such a showing are the two *ABN AMRO* actions (Adv. Pro. Nos. 10-03635 and 10-03636), in which the *sole* BNPP Defendant is BNPP Suisse.[15]

    A. <u>The Liquidators Concede That They Have Not Shown That The Actual Knowledge Exception To Section 546(e) Applies</u>

Critically, the Liquidators concede in their Opposition that they have not pleaded facts supporting the "actual knowledge" exception to Section 546(e), BNPP Opp. 5 n.4, arguing only that 546(e) does not apply to these proceedings. For the reasons set forth in the Consolidated Reply, Section 546(e) does apply to the Liquidators' claims, both because its application here would not be extraterritorial and because Congress in any event clearly intended it to apply extraterritorially. Consol. Rep. 17–22. Given that their bad faith allegations against the Citco Subscribers are legally insufficient to warrant imputation against any of the BNPP Defendants, the claims against the BNPP Defendants must be dismissed under Section 546(e).

    B. <u>The Liquidators Have Not Otherwise Properly Pleaded That Any BNPP Defendant Received Redemptions In Bad Faith</u>

        *1.*     The Liquidators Have Not Properly Pleaded That The Citco Subscribers Acted In Bad Faith

The Liquidators' contentions that Federal Rule of Civil Procedure 9(b)'s heightened pleading standards do not apply, BNPP Opp. 5–6, are incorrect. "[C]ourts analyzing whether claims sound in fraud look to whether fraud or deception is a necessary component of that claim." *Fernandez v. UBS AG*, No. 15-Civ-2859, 2016 WL 7163823, at *21 (S.D.N.Y. Dec. 7,

---

[15] To the extent that the Liquidators attempt to imply that any allegations related to the Citco Subscribers' knowledge apply to any BNPP Defendants other than BNPP Suisse, such allusions are wholly unfounded. *Compare* ABN AMRO I Prop. Compl. II ¶¶ 46–48 (BNPP Suisse identified as the only BNPP defendant) *and* ABN AMRO II Prop. Compl. II ¶¶ 51–53 (same) *with* BNPP Opp. 5–10 (alleging that the "BNPP Defendants" received Fairfield redemptions in bad faith).

6

2016). The Liquidators' claims clearly sound in "fraud or mistake" since they are based upon the Madoff fraud and their contention that the Citco entities "knew of or consciously disregarded" that fraud.[16] Additionally, contrary to the Liquidators' assertions that Rule 9(b) permits mental conditions to be alleged generally, BNPP Opp. 5, courts in this district have consistently held that the Rule does not give "license to base claims of fraud on speculation and conclusory allegations."[17] The Liquidators' generalized allegations of bad faith on the part of the Citco Subscribers fall far short of the specificity required by Rule 9(b). BNPP Br. 7–8. Moreover, even if Rule 9(b) did not apply to the allegations, they still fail under Rule 8. *Id.*

       2.  Bad Faith Cannot Be Imputed To The Citco Record Subscribers

Because the Administrators and Citco Subscribers performed vastly different roles at the behest of different entities, Consol. Rep. 34–35, the Liquidators must impute knowledge of Madoff's activities from the Administrators to the Citco Subscribers—the only Citco entities alleged to have dealt with BNPP Suisse—in order to prevail on their bad faith receipt claims. The Liquidators advance two theories for doing so: (i) all Citco entities possessed the same knowledge because they were related to one another;[18] and (ii) the Citco Subscribers are linked

---

[16]  ABN AMRO I Prop. Compl. II ¶¶ 168, 189, 192, 199, 206–15, 218; ABN AMRO II Prop. Compl. II ¶¶ 176, 197, 200, 207, 214–23, 226. Whether they literally plead that BNPP Suisse committed fraud is irrelevant. *See In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 146 (2d Cir. 2015) (plaintiffs "could not . . . deny[] that the claims depended on fraudulent conduct when in fact they did depend on fraudulent conduct").

[17]  *Rosner v. Bank of China*, No. 06-Civ-13562, 2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18, 2008) (citations omitted), *aff'd*, 349 F. App'x 637 (2d Cir. 2009) (cited at BNPP Br. 7); *see also MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 431 F. App'x 17, 18 (2d Cir. 2011) (plaintiff must meet the particularity requirements of Rule 9(b) in pleading bad faith with respect to the Madoff fraud). *Liberty Ridge LLC v. RealTech Sys. Corp.*, 173 F. Supp. 2d 129 (S.D.N.Y. 2001) (cited at BNPP Opp. 6) is not to the contrary; it rules simply that a plaintiff is not tasked with *literally* pleading the condition of a defendant's mind. Likewise, *In re Bernard L. Madoff Inv. Sec. LLC (In re BLMIS)*, 454 B.R. 317, 332 (Bankr. S.D.N.Y. 2011) (cited at BNPP Opp. 6) is limited to "claims of constructive fraud," which do not implicate Rule 9(b) because scienter "is *not an element*" of such claims. *Bank of Commc'ns v. Ocean Dev. Am., Inc.*, No. 07-Civ-4628, 2010 WL 768881, at *6 (S.D.N.Y. Mar. 8, 2010) (emphasis added).

[18]  *See, e.g.*, ABN AMRO I Prop. Compl. II ¶ 168 (suggesting that, because information related to BLMIS was conveyed to Citco Bank Nederland N.V., it was also known by that entity's "wholly owned subsidiary" and by other entities that Citco Bank Nederland N.V. "worked with").

7

to the Citco Banks due to the B&C Agreements.[19]  Neither provides a basis for imputation.

Broad-based allegations that the Citco Subscribers and Administrators—legally distinct corporate entities[20]—had the same knowledge simply because they are related must fail. "Plaintiffs may not evade their obligation to plead specific claims against specific defendants by generalized pleading"—e.g., conflating all affiliates into one unit. *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 991 F. Supp. 2d 479, 501 (S.D.N.Y. 2014).  The Liquidators' bad faith allegations focus on the Administrators and Citco Group's management, ABN AMRO I Prop. Compl. II ¶¶ 143–44, and do not implicate any Citco Record Subscribers.  Although the Liquidators argue that *all* Citco Subscribers possessed knowledge of the BLMIS fraud, only one of the eight is also an Administrator.[21]  The Liquidators never allege, however, that that entity (Citco Fund Services (Europe) B.V.) served as BNPP Suisse's registered shareholder.[22]

The new allegations fail to cure this pleading defect.  The Liquidators define the Citco Banks and the Citco Record Subscribers collectively as the "Citco Subscribers"; put forth allegations related solely to the Citco *Banks*' knowledge of the fraud; and attempt to implicate the Citco Record Subscribers by concluding that "the Citco *Subscribers* knew . . . [they] did not

---

[19]     *See, e.g.*, ABN AMRO I Prop. Compl. II ¶ 9 (defining the Citco Record Shareholder and the Citco Banks collectively as the "Citco Subscriber" since such entities were party to the B&C Agreements).

[20]     ABN AMRO I Prop. Compl. II ¶ 166 (describing the Citco entities as "eleven separate entities").

[21]     *See* ABN AMRO I Prop. Compl. II ¶ 9; ABN AMRO II Prop. Compl. II ¶ 9.

[22]     The Liquidators' response to the BNPP Defendants' argument that there were no allegations regarding Citco Fund Services (Europe) B.V., BNPP Br. 8 n.16, is that it is "belied" by new allegations that were not raised until *after* the BNPP submitted their opening brief, BNPP Opp. 7 n.6.  This argument emphasizes that their new allegations are a moving target, not to be considered.  *See supra* at 2.  These allegations do not pertain to Citco Fund Services (Europe) B.V.'s knowledge other than the general group pleading related to Administrators.  *E.g.*, ABN AMRO I Prop. Compl. II ¶ 143.  Similarly, the Liquidators have also not alleged that CGC NA (the only Citco Record Subscriber in Adv. Pro. No. 10-03635) itself knew about the Madoff fraud.

8

have an independent source to verify information received from BLMIS."[23] While artful, this pleading tactic is misleading and finds no support in precedent.

Indeed, the *only* authority on which the Liquidators rely undermines their position, clarifying that "[g]roup pleading allows plaintiffs only to connect defendants to statements—it does *not* also transitively convey scienter." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 406 (S.D.N.Y. 2010) (emphasis added); *see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 209 (2d Cir. 2005) (corporate relationship that "is essentially one of two siblings" "does not support the imputation of notice or knowledge") (citation omitted).[24] The vague allegation that an entity with knowledge "worked with" other Citco entities, ABN AMRO I Prop. Compl. II ¶ 168, is plainly insufficient to impute knowledge between the entities. Thus, the Liquidators cannot properly assert that, despite separate roles and locations in various countries,[25] all Citco entities' knowledge had been collectively shared.

The Liquidators' second theory, which purports to impute knowledge to the Citco Record Subscribers by virtue of their agency relationship with the Citco Banks,[26] fares no better. Although agency law allows an agent's knowledge to be attributable to its principal under certain

---

[23]  *See* ABN AMRO I Prop. Compl. II ¶ 9, 168–170 (emphasis added). The Liquidators' theory that the "free flow of information and co-ordination of action between" all Citco affiliates, *id.* ¶ 169, is sufficient to impute wrongdoing to all entities, BNPP Opp. 8, amounts to nothing more than generalized pleading that the *Bank of N.Y. Mellon* court found unavailing. *Cf.* Am Compl. ¶ 31, *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 2013 WL 10112073 (S.D.N.Y. Mar. 26, 2013) ("Defendants, *either by themselves or through their subsidiaries and affiliates*, provided trustee and custodial services during the class period to a variety of institutional investors throughout the world." (emphasis added)); *see also Kuwait Inv. Office v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 810 (S.D.N.Y. 2015) (even where information regarding the "subsidiary that was at the center of the alleged misconduct" "was accessible to scrutiny by" the parent entity, allegations improperly grouped parties into one unit).

[24]  *See also Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 218 (S.D.N.Y. 2009) (disallowing plaintiff from "aggregat[ing] the knowledge of two or more separate corporate entities on the basis that they share the same parent"); *Oei v. Citibank, N.A.*, 957 F. Supp. 492, 519 (S.D.N.Y. 1997) (to impute knowledge between "related" Citibank entities requires evidence that the court "should pierce the corporate veil").

[25]  *See* Fairfield Sigma Private Placement Memorandum at v–vi (Molton II Decl., Ex. D) (various Citco entities located in Canada, the British Virgin Islands, the Netherlands, and Ireland).

[26]  *See, e.g.*, ABN AMRO I Prop. Compl. II ¶ 124 ("[T]he Citco Record Subscriber was and at all times acted as the nominee of and agent for the Citco Banks with respect to such share purchases and custody thereof[.]").

9

circumstances, the Liquidators attempt to argue the very opposite: that the knowledge of the *principals* (i.e., the Citco Banks) should be attributed to their *agents* (i.e., the Citco Record Subscribers).[27] BNPP Opp 7. That claim is not supported by law or logic.[28]

### 3. Citco Subscribers' Bad Faith Cannot Be Imputed To BNPP Suisse

Even if the Liquidators could impute the Administrators' knowledge to the Citco Subscribers, they cannot (as they must)[29] demonstrate that the Citco Subscribers' knowledge can be imputed, in turn, to BNPP Suisse. BNPP Br. 8. The Liquidators' claim that no such imputation is necessary, BNPP Opp. 9, is incorrect because the law requires that the defendant—i.e., BNPP Suisse—received redemptions in bad faith. Consol. Rep. 35.

### C. Bad Faith Receipt Is Legally Insufficient To Support The Liquidators' Claims

Even if the Liquidators had properly alleged that BNPP Suisse redeemed in bad faith, BNPP Opp. 9, the Liquidators' claims would still independently be barred by (i) *ex turpi causa*, as Citco's bad faith would be imputed to the Funds, and (ii) the Privy Council's and EC Court of Appeal's rulings that the NAV statements were binding and that redeeming members gave good consideration, respectively. *Id*. at 29–32. Accordingly, these proceedings should be dismissed.

## CONCLUSION

For the reasons set forth above, this Court should deny the Liquidators' Motion for Leave to Amend and dismiss the Complaints with prejudice.

---

[27] ABN AMRO I Prop. Compl. II ¶¶ 124, 168; ABN AMRO II Prop. Compl. II ¶¶ 132, 176.

[28] *See* Restatement (Third) Of Agency § 5.03 cmt. g (2006) ("Notice of facts that a principal knows or has reason to know is not imputed downward to an agent."); *Ago v. Begg, Inc.*, 705 F. Supp. 613, 617–18 (D.D.C. 1988) ("[T]he law of agency . . . sensibly does not hold agents responsible for knowledge known only by the principal."), *aff'd*, 911 F.2d 819 (D.C. Cir. 1990).

[29] Imputation to BNPP Suisse is necessary to the Liquidators' claims. The Liquidators' reliance on Article 8 and paragraph 27 of the Subscription Agreement does not relieve them of the burden of properly alleging that BNPP Suisse (rather than the Citco Subscribers) received the Fairfield redemptions in bad faith. BNPP Opp. 9; Consol. Rep. 35 (citing Mortimore II Decl. ¶ 114).

10

Dated: New York, New York
June 9, 2017

                              Respectfully submitted,
**Cleary Gottlieb Steen & Hamilton LLP**

By:     /s/ Ari D. MacKinnon

Breon S. Peace
Ari D. MacKinnon
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for the BNP Paribas Defendants*

11