**BROWN RUDNICK LLP**
David J. Molton
May Orenstein
Daniel J. Saval
Marek P. Krzyzowski
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800

**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
Michael K. Kellogg (admitted *pro hac vice*)
Aaron M. Panner (admitted *pro hac vice*)
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C.  20036
Telephone: (202) 326-7900

*Counsel for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** ) | |
| ) | **Chapter 15 Case** |
| **FAIRFIELD SENTRY LIMITED, et al.,** ) | |
| ) | **Case No: 10-13164 (SMB)** |
| **Debtors in Foreign Proceedings.** ) | |
| ) | **Jointly Administered** |
| ) | |
| **FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | **Adv. Pro. No. 10-03496** |
| **-against-** ) | |
| ) | |
| **THEODOOR GGC AMSTERDAM, et al.,** ) | **Administratively** |
| ) | **Consolidated** |
| **Defendants.** ) | |
| ) | |
| **This Document applies to the adversary proceedings** ) | |
| **listed in APPENDIX D hereto.** ) | |

**FOREIGN REPRESENTATIVES' MEMORANDUM**
**OF LAW IN OPPOSITION TO DEFENDANTS' CONSOLIDATED**
**MEMORANDUM OF LAW AND IN FURTHER SUPPORT OF FOREIGN**
**REPRESENTATIVES' MOTION FOR LEAVE TO AMEND COMPLAINTS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 4

I.   The Court Has Personal Jurisdiction Over All Defendants. ................................... 4

     A.    Nearly All Defendants Have Expressly Consented to Jurisdiction. ..................... 4

     B.    The Court May Exercise Jurisdiction Based on Defendants' Contacts. .............. 11

II.  The Court Has Subject Matter Jurisdiction Over The Liquidators' Claims. ................... 18

     A.    The Actions Are "Related to" a Case Under Title 11 Because They
           Could Conceivably Affect the Bankrupt Estate. .................................................. 18

     B.    Defendants' Arguments Against Subject Matter Jurisdiction Are Unavailing. ..... 20

III. The BVI Insolvency Act Claims Are Adequately Pled. .................................................. 25

     A.    Defendants Were Creditors At The Time Of The Redemption Payments. ........... 25

     B.    Defendants Provided Insufficient Consideration. ................................................ 27

     C.    The Funds Were Insolvent At The Time Of The Redemption Payments. ............ 28

     D.    Defendants' Affirmative Defenses Are Meritless And Premature. ...................... 31

     E.    This Court Can Grant Relief On The BVI Insolvency Act Claims. ...................... 33

IV.  The Common Law Claims Are Adequately Pled. ............................................................ 35

     A.    The Privy Council Judgment Does Not Make Amendment Futile. ...................... 35

     B.    Citco's Agency Does Not Preclude the Common Law Claims. ........................... 46

     C.    The Liquidators May Plead Restitutionary Claims in the Alternative. ................ 51

     D.    The Citco Subscribers' Bad Faith Binds Their Beneficial Owners/Customers. ... 52

     E.    The Liquidators Have Sufficiently Alleged Injury-In-Fact. ................................ 55

V.   Section 546(e) Does Not Bar Any of The Claims. ........................................................... 57

     A.    Section 546(e) Does Not Apply Extraterritorially. ............................................. 57

     B.    Principles of International Comity Reinforce The Conclusion That Section
           546(e) Does Not Apply Extraterritorially. .......................................................... 64

     C.    Defendants Seek an Impermissible Extraterritorial Application of Section
           546(e). .................................................................................................................. 65

     D.    Even if Section 546(e) Applies, It Does Not Bar The Common Law Claims. ..... 70

VI.  All Defendants Were Properly Served. ........................................................................... 71

     A.    The Foreign Defendants Were Properly Served. ................................................. 71

     B.    The Swiss Defendants Were Properly Served Under U.S. Law. .......................... 74

CONCLUSION ...................................................................................................................... 75

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackermann v. Levine*,
  788 F. 2d 830 (2d Cir. 1986)..................................................................................73

*Adelphia Recovery Tr. v. FPL Grp., Inc. (In re Adelphia Commc'ns Corp.)*,
  512 B.R. 447 (Bankr. S.D.N.Y. 2014).....................................................................27

*Adelphia Recovery Tr. v. Goldman, Sachs & Co.*,
  748 F.3d 110 (2d Cir. 2014)....................................................................................66

*Al-Kurdi v. United States*,
  25 Cl. Ct. 599 (1992) ..............................................................................................70

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  175 F. Supp. 3d 44 (S.D.N.Y. 2016)..................................................................56, 57

*Albany Ins. Co. v. Banco Mexicano, S.A.*,
  No. 96 CIV. 9473 DAB, 1998 WL 730337 (S.D.N.Y. Oct. 19, 1998), *aff'd*,
  182 F.3d 898 (2d Cir. 1999)......................................................................................9

*Albert Levine Assocs. v. Hudson*,
  43 F.R.D. 392 (S.D.N.Y. 1967) .........................................................................74, 75

*Alfadda v. Fenn*,
  966 F. Supp. 1317 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 41 (2d Cir. 1998) .................38

*Alfred E. Mann Living Tr. v. ETRIC Aviation SAr.l.*,
  910 N.Y.S.2d 418 (N.Y. App. Div. 1st Dep't 2010) .........................................72, 73

*Anderson v. Canarail, Inc.*,
  No. 05 CIV. 3828 (HB), 2005 WL 2454072 (S.D.N.Y. Oct. 6, 2005) ....................73

*Ansell Healthcare, Inc. v. Maersk Line*,
  545 F. Supp.2d 339 (S.D.N.Y. 2008).......................................................................74

*Anwar v. Fairfield Greenwich Ltd.*,
  728 F. Supp. 2d 372 (S.D.N.Y. 2010)......................................................................45

*AP Servs. LLP v. Silva*,
  483 B.R. 63 (S.D.N.Y. 2012)...............................................................................70, 71

ii

*Arnold v Britton*
    [2015] AC 1619A ..................................................................................................48

*Balaber-Strauss v. Town of Harrison (In re Murphy),*
    331 B.R. 107 (Bankr. S.D.N.Y. 2005) ...............................................................57

*Bancredit Cayman Ltd. v. Santana (In re Bancredit Cayman Ltd.),*
    No. 06-11026 (SMB), 2008 WL 5396618 (Bankr. S.D.N.Y. Nov. 25, 2008 .........25

*Bank of Am., N.A. v. Wilmington Tr. FSB,*
    943 F. Supp. 2d 417 (S.D.N.Y. 2013).................................................................22

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    305 F.3d 120 (2d Cir. 2002)...............................................................................17

*Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Morgan Stanley Mortg. Capital, Inc.,*
    No. 11 CIV. 0505 (CM), 2013 WL 3146824 (S.D.N.Y. June 19, 2013)...............54

*Bank of N.Y. v. FDIC,*
    453 F. Supp. 2d 82 (D.D.C. 2006), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007)....................9

*Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exch. Inc.),*
    347 B.R. 708 (Bankr. C.D. Cal. 2006)...............................................................60

*Barnes v. Pozzi,*
    No. 10 CIV. 2554 JGK, 2012 WL 3155073 (S.D.N.Y. Aug. 3, 2012)...................38

*Barth Packaging, Inc. v. Excelsior Packaging Grp., Inc.,*
    No. 7:11-CV-2563 VB, 2011 WL 3628858 (S.D.N.Y. Aug. 16, 2011) .................52

*In re Bayou Grp., LLC,*
    372 B.R. 661 (Bankr. S.D.N.Y. 2007) ...............................................................30

*Bianco v. Erkins (In re Gaston & Snow),*
    243 F.3d 599 (2d Cir. 2001)..........................................................................37, 38

*Bloomfield v. Bloomfield,* 764 N.E.2d 950 (N.Y. 2001) ...............................................75

*BNY Corp. Trustee Servs. v. Eurosail UK Plc*
    [2013] 1 WLR 1408............................................................................................29

*BOKF, N.A. v. Caesars Entm't Corp.,*
    162 F. Supp. 3d 243, 246 ....................................................................................7

*British Am. Ins. Co. Ltd. v. Fullerton (In re British Am. Ins. Co. Ltd.),*
    488 B.R. 205 (Bankr. S.D. Fla. 2013)...............................................19, 20, 23, 25

*Brooklyn Fed. Sav. Bank v. Crosstown W. 28 LLC*,
  29 Misc. 3d 1237(A), 958 N.Y.S.2d 644 (N.Y. Sup. Ct. Kings Cty. 2010) ...........................73

*Burda Media, Inc. v. Viertel*,
  417 F.3d 292 (2d Cir. 2005)..........................................................................................73

*Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*,
  No. 09-CIV-6148-VMMHD, 2012 WL 12932049 (S.D.N.Y. July 17, 2012)..........................9

*Re Casa Estates (UK) Ltd*,
  [2014] 2 BCLC 49 ...........................................................................................28, 31, 32

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995)........................................................................................................22

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)...........................................................................................68

*Re: Cheyne Finance Plc (2)*
  [2007] EWHC 2402 (Ch)..................................................................................................29

*Cobalt Multifamily Inv'rs. I, LLC v. Shapiro*,
  857 F. Supp. 2d 419 (S.D.N.Y. 2012)..............................................................................49

*In re Colonial Realty Co.*,
  980 F.2d 125 (2d Cir. 1992)...........................................................................................63

*In re Commc'ns, Inc*,
  452 B.R. 21 (S.D.N.Y. 2011)..........................................................................................22

*In re Compuware Sec. Litig.*,
  386 F. Supp. 2d 913 (E.D. Mich. 2005)..........................................................................56

*Contemporary Indus. Corp. v. Frost*,
  564 F.3d 981 (8th Cir. 2009) ....................................................................................59, 70

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*,
  No. 04 CIV. 2867 (BSJ)(HBP), 2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006) ....................52

*Coregis Ins. Co. v. Am. Health Found., Inc.*,
  241 F.3d 123 (2d Cir. 2001)............................................................................................7

*In re Cornerstone Propane Partners, LP Sec. Litig.*,
  No. C 03-2522 MHP, 2006 WL 1180267 (N.D. Cal. May 3, 2006).......................................56

*Cunningham v. Brown*,
  265 U.S. 1 (1924).........................................................................................................29

iv

*Cytec Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.*,
    No. 14-CV-1561 PKC, 2015 WL 3762592 (S.D.N.Y. May 15, 2015).................................52

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006)..................................................................................................4

*DeMille v. DeMille*,
    774 N.Y.S.2d 156 (N.Y. App. Div. 2d Dep't 2004) ..............................................................30

*Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*,
    No. 07-Civ. 9580 (HB) 2008 WL 4833001 (S.D.N.Y. Nov. 5, 2008).......................................7

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)...............................................................................................11

*Drenis v. Haligiannis*,
    452 F. Supp. 2d 418 (S.D.N.Y 2006)..................................................................................30

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)..........................................................................................................56

*EEOC v. Arabian Am. Oil Co.*,
    499 U.S. 244 (1991), *superseded by statute as recognized in Arbaugh v. Y&H
    Corp.*, 546 U.S. 500 (2006)..........................................................................................58, 59

*England v. Smith*
    [2001] Ch 419 ..................................................................................................................34

*Fairfield Lease Corp. v. Empire Emps. Sunshine Club*,
    74 Misc. 2d 329, 345 N.Y.S.2d 305 (D. Nassau Cty. Ct. 1973) ............................................73

*In re Fairfield Sentry Ltd.*,
    452 B.R. 64 (Bankr. S.D.N.Y.), *rev'd on other grounds sub nom.*, *In re
    Fairfield Sentry Ltd. Litig.*, 458 B.R. 665 (S.D.N.Y. 2011) ............................................18, 24

*In re Fairfield Sentry Ltd.*,
    No. 10 CIV. 7340, 2010 WL 4910119 (S.D.N.Y. Nov. 22, 2010) .........................................19

*Fairfield Sentry Ltd. v. HSBC Private Bank (Suisse) SA, et al.*,
    No. 11-4425-mb, Doc. No. 52 (2d Cir. Mar. 1, 2012)..........................................................20

*Farrell Lines, Inc. v. Columbus Cello-Poly Corp.*,
    32 F. Supp. 2d 118 (S.D.N.Y.1997).....................................................................................5

*In re Fed.-Mogul Glob., Inc.*,
    300 F.3d 368 (3d Cir. 2002)..............................................................................................22

*Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
796 F.3d 520 (5th Cir. 2015) ............................................................24

*In re First Cent. Fin. Corp.*,
377 F.3d 209 (2d Cir. 2004)............................................................52

*Fogerty v. Petroquest Res., Inc. (In re Condor Ins. Ltd.)*,
601 F.3d 319 (5th Cir. 2010) ........................................20, 35, 63

*Frankel v. ICD Holdings*,
930 F. Supp. 54 (S.D.N.Y. 1996)............................................75

*GATX Flightlease Aircraft Co. v. Airbus S.A.S.*,
15 Misc. 3d 1143(A), 841 N.Y.S.2d 820 (Table) (Sup. Ct. N.Y. Cty. 2007),
*aff'd sub nom. In re GATX Flightlease Aircraft Co. Ltd.*, 40 A.D.3d 445 (1st
Dep't 2007) ............................................................37, 38

*GMAC Commercial Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*,
242 F. Supp. 2d 279 (S.D.N.Y. 2002)............................................10

*Gordon v. Harrison (In re Alpha Protective Servs., Inc.)*,
531 B.R. 889 (Bankr. M.D. Ga. 2015)............................................28

*Gowan v. Westford Asset Mgmt. LLC (In re Dreier LLP)*,
462 B.R. 474 (Bankr. S.D.N.Y. 2011)............................................30

*Graulty v. Brooks (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*,
819 F.2d 214 (9th Cir. 1987) ............................................................31

*Green v. Santa Fe Indus., Inc.*,
514 N.E.2d 105 (1987)............................................................43

*Greene's Ready Mixed Concrete Co. v. Fillmore Pac. Assocs. Ltd.*,
808 F. Supp. 307 (S.D.N.Y. 1992)............................................10

*Hau Yin To v. HSBC Holdings PLC*,
No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ....................15

*Hein v. Cuprum, SA de CV.*,
136 F. Supp. 2d 63 (N.D.N.Y. 2001)............................................73, 74

*Henderson v. Buchanan*,
985 F.2d 1021 (9th Cir. 1993) ............................................ *passim*

*Heredia v. Transp. SA., Inc.*,
101 F. Supp. 2d 158 (S.D.N.Y. 2000)............................................73

*Hildene Capital Mgmt., LLC v. Friedman, Billings, RamseGrp., Inc.,*
    No. 11-cv-5832 (AJN) 2012 WL 3542196 (S.D.N.Y. Aug. 15, 2012)...................................52

*Hill v. HSBC Bank PLC,*
    No. 14 CV09745-LTS, 2016 WL 4926199 (S.D.N.Y. Sep. 15, 2016) ...................................15

*HMS Holdings Corp. v. Moiseenko,*
    49 Misc. 3d 1215(A), 29 N.Y.S.3d 847 (Table) (N.Y. Sup. Ct. Albany Cty.
    2015) ...........................................................................................................................7

*Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Luxembourg) II
    SCA),*
    524 B.R. 488 (Bankr. S.D.N.Y. 2015) ...................................................19, 20, 34, 58

*Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Luxembourg) II
    SCA),*
    526 B.R. 499 (Bankr. S.D.N.Y. 2015) ........................................................58, 59, 66

*Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Luxembourg) II
    SCA),*
    535 B.R. 543 (Bankr. S.D.N.Y. 2015) ...................................................24, 28, 34, 35

*ICP Strategic Credit Income Master Fund Ltd. v. DLA Piper LLP (US) (In re ICP
    Strategic Credit Income Fund Ltd.),*
    No. 13-12116 (REG), 2015 WL 5404880 (Bankr. S.D.N.Y. Sept. 15, 2015) ........................48

*In re IMAX Sec. Litig.,*
    272 F.R.D. 138 (S.D.N.Y. 2010) .............................................................................56

*In re Impax Labs., Inc. Sec. Litig.,*
    No. C 04-4802 JW, 2008 WL 1766943 (N.D. Cal. Apr. 17, 2008)........................................56

*J. McIntyre Mach., Ltd. v. Nicastro,*
    564 U.S. 873 (2011)..................................................................................................13

*JCPL Leasing Corp. v. Treco (In re Treco),*
    227 B.R. 343 (Bankr. S.D.N.Y. 1998) ................................................................................22

*Johnson v. Gore Wood*
    [2002] 2 AC 1 .........................................................................................................44

*Joremi Enters., Inc. v. Hershkowitz (In re New 118th LLC),*
    396 B.R. 885 (Bankr. S.D.N.Y. 2008) ..............................................................................21

*Kacocha v. Nestle Purina Petcare Co.,*
    No. 15-CV-5489 (KMK), 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016)..............................56

*Kaiser Steel Corp. v. Charles Schwab & Co.*,
   913 F.2d 846 (10th Cir. 1990) ...........................................................................59

*In re Kaufman*,
   93 B.R. 319 (Bankr. S.D.N.Y. 1988) ...............................................................30

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013)...............................................................................31

*Kim v. Co-op. Centrale Raiffeisen-Boerenleebank B.A.*,
   364 F. Supp. 2d 346 (S.D.N.Y. 2005).........................................................37, 38

*Kirschner v. KPMG LLP*,
   938 N.E.2d 941 (N.Y. 2010) (Ciparick, J., dissenting)..............................49, 50

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941)......................................................................................36, 37

*In re Kojima*,
   177 B.R. 696 (Bankr. D. Colo. 1995) ...............................................................35

*Koninklijke Philips Elecs. v. Digital Works, Inc.*,
   358 F. Supp. 2d 328 (S.D.N.Y. 2005)..................................................................4

*Korea Life Ins. Co., Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
   269 F. Supp. 2d 424 (S.D.N.Y. 2003)...............................................................75

*Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*,
   768 F.3d 239 (2d Cir. 2014)..............................................................23, 35, 61

*KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*,
   812 F. Supp. 2d 377 (S.D.N.Y. 2011)..................................................................6

*Kuenzle. v. HTM Sport-Und Freizeitgerate AG*,
   102 F.3d 453 (10th Cir. 1996) ..........................................................................17

*LaFleur v. Whitman*,
   300 F.3d 256 (2d Cir. 2002)...............................................................................40

*Langerman v. Langerman*,
   303 N.Y. 465 (1952) ..........................................................................................37

*LaRoss Partners, LLC v. Contact 911 Inc.*,
   874 F. Supp. 2d 147 (E.D.N.Y. 2012) .............................................................4, 6

*LaSala v. Bordier et Cie*,
   519 F.3d 121 (3d Cir. 2008)...............................................................................70

*Leema Enters. v. Willi,*
   575 F. Supp. 1533 (S.D.N.Y. 1983)................................................................15

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros.
   Holdings Inc.),*
   469 B.R. 415 (Bankr. S.D.N.Y. 2012) .............................................................71

*Lemme v. Wine of Japan Import, Inc.,*
   631 F. Supp. 456 (E.D.N.Y.1986) ...................................................................74

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL,*
   732 F.3d 161 (2d Cir. 2013)................................................................. *passim*

*Licci v. Lebanese Can. Bank SAL,*
   984 N.E.2d 893 (N.Y. 2012)............................................................................16

*Lippe v. Bairnco Corp.,*
   99 Fed App'x 274 (2d Cir. 2004).....................................................................30

*Loftin v. Bande (In re Flag Telecom Holdings, Ltd. Sec. Litig.),*
   574 F.3d 29 (2d Cir. 2009)...............................................................................56

*Loginovskaya v. Batrachenko,*
   764 F.3d 266 (2d Cir. 2014).............................................................................67

*Long Island Lighting Co. v. Transam. Delaval, Inc.,*
   646 F. Supp. 1442 (S.D.N.Y. 1986).................................................................30

*LT Game Int'l Ltd. v. DEQ Sys. Corp.,*
   No. 2:13-4593 (WJM), 2013 WL 5536195 (D.N.J. 2013) ..............................74

*M/S Bremen v. Zapata Off-Shore Co.,*
   407 U.S. 1 (1972).............................................................................................5

*Marine Tr. Corp. v. Switzerland Gen. Ins. Co.,*
   263 N.Y. 139 (1933) ........................................................................................38

*Martinez v. Bloomberg LP,*
   740 F.3d 211 (2d Cir. 2014)..............................................................................5

*Mashreqbank PSC v. Ahmad Hamad Algosaibi & Bros. Co.,*
   40 Misc. 3d 1214(A), 975 N.Y.S.2d 710 (Table) (Sup. Ct. N.Y. Cty. 2013) ..................37, 38

*Maxwell Commc'n Corp. plc v. Société Générale (In re Maxwell Commc'n Corp.
   plc),* 93 F.3d 1036, 1047 (2d Cir. 1996) ...........................................................64, 65

*Mazzeo v. United States (In re Mazzeo),*
   131 F.3d 295 (2d Cir. 1997)..................................................................................30

*Metzeler v. Bouchard Transp. Co. (In re Metzeler),*
   78 B.R. 674 (Bankr. S.D.N.Y. 1987) ...................................................................35

*In re Mirena IUD Prods. Liab. Litig.,*
   29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014).............................................................28

*Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.),*
   247 B.R. 51 (Bankr. S.D.N.Y. 1999), *aff'd*, 263 B.R. 406 (S.D.N.Y. 2001)..........54

*Molina v. Faust Goetz Schenker & Blee, LLP,*
   No. 15-CV-9010 (LAK), 2017 WL 435936 (S.D.N.Y. Jan. 31, 2017)....................40

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),*
   714 F.3d 127 (2d Cir. 2013)..................................................................................23

*Morrison v. Nat'l Australia Bank Ltd.,*
   561 U.S. 247 (2010)................................................................................... *passim*

*Morton v. Nat'l Bank of N.Y.C. (In re Morton),*
   866 F.2d 561 (2d Cir. 1989)..................................................................................21

*Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In
   re Motors Liquidation Co.),*
   No. 09-50026 (MG), 2017 WL 632126 (Bankr. S.D.N.Y. Feb. 16, 2017).............4, 12, 14, 15

*Motrade v. Rizkozaan, Inc.,*
   No. 95 CIV. 6545 (DC), 1998 WL 108013 (S.D.N.Y. Mar. 11, 1998) ..................38

*Nat'l Bank of N. Am. v. Newmark (In re Newmark),*
   20 B.R. 842 (Bankr. E.D.N.Y. 1982).....................................................................55

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.,*
   884 F. Supp. 2d 127 (S.D.N.Y. 2012)....................................................................62

*National Equip. Rental, Ltd. v. Reagin,*
   338 F.2d 759 (2d Cir. 1964)..................................................................................72

*National Equip. Rental, Ltd. v. Szukhent,*
   375 U.S. 311 (1964)..........................................................................................71, 75

*NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.,*
   105 F.3d 72 (2d Cir. 1997)....................................................................................40

*NCC Sunday Inserts, Inc. v. World Color Press, Inc.*,
  692 F. Supp. 327 (S.D.N.Y. 1988) .......................................................................28

*In re Nortel Networks, Inc.*,
  469 B.R. 478 (Bankr. D. Del. 2012) ....................................................................35

*O'Connell v. Arthur Andersen LLP (In re Alphastar Ins. Grp. Ltd.)*
  383 B.R. 231 (Bankr. S.D.N.Y. 2008) .................................................................48

*O'Toole v. MyPlace Dev. SP. ZO.O. (In re Sledziejowski)*,
  No. 13-22050, 2016 WL 6155929 (Bankr. S.D.N.Y. 2016) ................................15

*In re OAS S.A.*,
  533 B.R. 83 (Bankr. S.D.N.Y. 2015) ...................................................................24

*Ocwen Loan Servicing, LLC v. Rescap Liquidating Tr. (In re Residential Capital
  LLC)*,
  533 B.R. 379 (Bankr. S.D.N.Y. 2015) (Glenn, J.) ...............................................9

*Official Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain
  Islamic Bank*,
  549 B.R. 56 (S.D.N.Y. 2016) ....................................................................... passim

*Official Comm. of Unsecured Creditors of Hechinger Inv. Co. v. Fleet Retail Fin.
  Grp. (In re Hechinger Inv. Co. of Del.)*,
  274 B.R. 71 (D. Del. 2002) ..................................................................................70

*Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re
  Hydrogen, L.L.C.)*,
  431 B.R. 337 (Bankr. S.D.N.Y. 2010) .................................................................37

*In re Optimal U.S. Litig.*,
  813 F. Supp. 2d 351 (S.D.N.Y. 2011) ...................................................................7

*In re Optimal U.S. Litig.*,
  865 F. Supp. 2d 451 (S.D.N.Y. 2012) ............................................................69, 70

*Orr v. Kinderhill Corp.*,
  991 F.2d 31 (2d Cir. 1993) ...................................................................................31

*Pallen v. Allied Van Lines, Inc.*,
  223 F. Supp. 394 (S.D.N.Y. 1963) .......................................................................36

*Papir v. Wurms*,
  2005 WL 372061 (S.D.N.Y. Feb. 15, 2005) ...................................................73, 74

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
    671 F.3d 261 (2d Cir. 2012)................................................................39

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011)..............................................19, 21, 22

*Patel v Mirza*
    [2016] 3 WLR 399 .........................................................................49

*Pereira v. Marshall & Sterling, Inc. (In re Payroll Exp. Corp.)*,
    No. 92-B-43150(CB), 2005 WL 2438444 (Bankr. S.D.N.Y. Mar. 30, 2005) .........................37

*Peterson v. Ritchie Capital Mgmt., LLC (In re Lancelot Inv'rs Fund, L.P.)*,
    No. 08 B 28225, 2012 WL 718631 (Bankr. N.D. Ill. Mar. 2, 2012)........................29

*Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*,
    255 F. Supp. 2d 134 (W.D.N.Y. 2003) ...................................................30

*Phelan v. Middle States Oil Corp.*,
    210 F.2d 360 (1954).......................................................................54

*Phillips v. Brewin Dolphin Bell Lawrie Ltd.*
    [2001] BCC 864 .......................................................................27, 29

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
    440 B.R. 274 (Bankr. S.D.N.Y. 2010) ..................................................16

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ..................................................30

*Picard v. Cohmad Securities Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    418 B.R. 75 (Bankr. S.D.N.Y. 2009) ...............................................74, 75

*Picard v. J.P. Morgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) .........................13

*Picard v. Madoff (In re Bernard L. Madoff Inv. Secs. LLC)*,
    458 B.R. 87 (Bankr. S.D.N.Y. 2011) .................................................29, 30

*Prod. Res. Grp., LLC v. Martin Prof'l, A/S*,
    907 F. Supp. 2d 401 (S.D.N.Y. 2012)...................................................9

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equipment Corp.)*,
    980 F.2d 110 (2d Cir. 1992)...........................................................19

*RJR Nabisco, Inc. v. European Cmty.*,
    136 S. Ct. 2090 (2016)..............................................................58, 64

*In re Rose*,
    318 B.R. 771 (Bankr. S.D.N.Y. 2004) ...................................................................62

*Rosen v. Brookhaven Capital Mgmt. Co.*,
    113 F. Supp. 2d 615 (S.D.N.Y. 2000)...................................................................62

*Ross v. Bank of Am., N.A. (USA)*,
    524 F.3d 217 (2d Cir. 2008)..................................................................................57

*Rushaid v. Pictet & Cie*,
    28 N.Y. 3d 316 (2016) ..............................................................................14, 15, 16

*Saeco Vending, S.P.A. v. Seaga Mfg., Inc.*,
    No. 15-CV-3280 (AJN), 2016 WL 1659132 (S.D.N.Y. Jan. 28, 2016) ..................5

*Saltz v. First Frontier, LP*,
    782 F. Supp. 2d 61, 71-72 (S.D.N.Y. 2010), *aff'd*, 485 Fed. App'x 461 (2d
    Cir. 2012) ..............................................................................................................45

*Schoenbrod v. Siegler*,
    230 N.E.2d 638 (N.Y. 1967).................................................................................37

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    505 B.R. 135 (S.D.N.Y. 2013)..............................................................................60

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ....................................13, 16, 18

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    513 B.R. 222 (S.D.N.Y. 2014), supplemented by No. 12-MC-115 JSR, 2014
    WL 3778155 (S.D.N.Y. July 28, 2014) ....................................................... *passim*

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    Adv. P. No. 08–01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22,
    2016) ........................................................................................................... *passim*

*Seismic Reservoir 2020, Inc. v. Paulsson*,
    785 F.3d 330 (9th Cir. 2015) ................................................................................34

*Sherwood Invs. Oversears Ltd., Inc. v. Royal Bank of Scotland N.V. (In re
    Sherwood Investments Overseas Ltd.)*,
    No. 6:10-BK-00584-KSJ, 2015 WL 4486470 (Bankr. M.D. Fla. July 22,
    2015), *aff'd*, 2016 WL 5719450 (M.D. Fla.), *appeal filed*, No. 16-16824 (11th
    Cir. Oct. 31, 2016) ................................................................................................69

*Sherwood Invs. Oversears Ltd., Inc. v. Royal Bank of Scotland N.V. (In re Sherwood Invs. Overseas Ltd.)*,
  2016 WL 5719450 (M.D. Fla. Sept. 30, 2016), *appeal filed*, No. 16-16824
  (11th Cir. Oct. 31, 2016) ..................................................................................60

*Somers Dublin Ltd A/C KBCS v. Monarch Pointe Fund Ltd*,
  HCVAP 2011/040 (Mar. 11 2013) ...........................................................25, 26

*Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.)*,
  562 B.R. 601 (Bankr. S.D.N.Y. 2017) ..............................................58, 60, 63

*SPV OSUS Ltd. v. UBS AG*,
  114 F. Supp. 3d 161 (S.D.N.Y. 2015) ...............................................................17

*Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*,
  809 F.3d 94 (2d Cir. 2015) ...............................................................................39

*Stephenson v. PricewaterhouseCoopers, LLP*,
  768 F. Supp. 2d 562 (S.D.N.Y. 2011), *aff'd*, 482 F. App'x 618 (2d Cir. 2012),
  *as amended* (June 13, 2012) .............................................................................45

*Stern v. Marshall*,
  564 U.S. 462 (2011) ..........................................................................................20

*Stichting Ter Behartiging Van de Belangen Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*,
  407 F.3d 34 (2d Cir. 2005) ................................................................................10

*In re Tower Grp. Int'l, Ltd. Sec. Litig.*,
  Case No. 13 CIV. 5852 (AT), 2015 WL 5813393 (S.D.N.Y. Sept. 18, 2015) ........45

*Transcience Corp. v. Big Time Toys*,
  LLC, 50 F. Supp. 3d 441, 452-53 (S.D.N.Y. 2014) ..........................................51

*Treeline Inv. Partners, LP v. Koren*,
  No. 07 CIV. 1964 (DLC), 2007 WL 1933860 (S.D.N.Y. July 3, 2007) ........73, 74, 75

*In re Tremont Secs. Law, State Law & Ins. Litig.*,
  703 F. Supp. 2d 362 (S.D.N.Y. 2010) ...............................................................45

*In re Tribune Co. Fraudulent Conveyance Litig.*,
  499 B.R. 310, 317 (S.D.N.Y. 2013), *aff'd*, 818 F.3d 98 (2d Cir. 2016)),
  *petition for cert filed sub nom. Deutsche Bank Tr. Co. Ams. v. Robert R. McCormick Found.*, No. 16-317 (Sept. 12, 2016)) ..............................................59

*Trikona Advisers Ltd. v. Chugh*,
  846 F.3d 22 (2d Cir. 2017) ..........................................................................34, 63

*In re Trinsum Grp., Inc.*,
    460 B.R. 379 (Bankr. S.D.N.Y. 2011) ..................................................................37

*TVT Records v. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005) ...............................................................................9

*U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*,
    No. 16-CV-01450 (JGK), 2017 WL 398410 (S.D.N.Y. Jan. 30, 2017) .................................52

*U.S. Fid. & Guar. Co. v. Treadwell Corp.*,
    58 F. Supp. 2d 77 (S.D.N.Y. 1999) .....................................................................41

*Estate of Ungar v. Palestinian Auth.*,
    412 F. Supp. 2d 328 (S.D.N.Y. 2006) ...................................................................73

*Universal Trading & Invest. Co., Inc. v. Tymoshenko*,
    No. 11 Civ. 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. 2012) ............................................16

*Vazquez v. Sund Emba Ab*,
    152 A.D.2d 389, 548 N.Y.S.2d 728 (N.Y. App. Div. 2d Dep't 1989) ...................................73

*Velazquez v. Countrywide Home Loans Servicing, L.P. (In re Velazquez)*,
    660 F.3d 893 (5th Cir. 2011) .............................................................................6

*Voreep v. Tarom Romanian Air Transp.*,
    No. 96 CIV. 1384 (LMM), 1999 WL 311811 (S.D.N.Y. May 18, 1999) .................................37, 38

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*,
    591 F.3d 164 (3d Cir. 2009) ...........................................................................21, 22

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d. Cir. 2016) ...........................................................................13

*Weiss v. La Suisse*,
    161 F. Supp. 2d 305 (S.D.N.Y. 2001) ....................................................................37

*Westford Special Situations Funds Ltd. v. Barfield Nominees Ltd.*,
    HVCAP 2010/014 (Mar. 28, 2011) ........................................................................26

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ....................................................................................52

## Statutes

11 U.S.C. § 561(d) .......................................................................................60, 61

11 U.S.C. §§ 1509(b)(1)-(3) ...............................................................................24

11 U.S.C. § 1519 .......................................................................................................22

11 U.S.C. § 1520 .......................................................................................................22

11 U.S.C. § 1521 .......................................................................................................22

11 U.S.C. § 1528 .......................................................................................................22

28 U.S.C. § 1334 ..........................................................................................18, 22, 24

BVI Insolvency Act § 5(1)(b) ...................................................................................28

BVI Insolvency Act § 245(1) ....................................................................................25

BVI Insolvency Act § 245(4) ....................................................................................28

BVI Insolvency Act § 246(4) ....................................................................................28

N.Y. Debt. & Cred. Law § 274 .................................................................................30

N.Y. Gen. Oblig. Law § 5-1402 .................................................................................5

Pub. L. No. 102-166, § 109, 105 Stat. 1071, 1077 (codified at 42 U.S.C. §
    2000e(f)) ...........................................................................................................59

Pub. L. No. 111-203, § 929P(b), 124 Stat. 1376 (2010) (codified at 15 U.S.C. §
    77v(c)) ..............................................................................................................59

## Other Authorities

Fed. R. Civ. P. 8(d)(3)...............................................................................................51

H.R. Rep. No. 109-31(I), 110 (2005) ........................................................................24

Leif M. Clark, *Ancillary & Other Cross-Border Insolvency Cases Under*...................22

## PRELIMINARY STATEMENT

Defendants hold billions of dollars in redemption payments calculated from a NAV based on the non-existent assets of the largest Ponzi scheme in history.  When that scheme was exposed, the Funds suffered billions of dollars in losses, to the detriment of their remaining, non-redeeming shareholders.  Defendants acknowledge this, but refuse to return their overpaid redemptions.  The BVI-based Liquidators of the Funds commenced these suits to recover these redemption payments in the New York forum that nearly all Defendants agreed to as a condition of investment, and obtained recognition under Chapter 15 as foreign representatives of the Funds, in a decision resoundingly affirmed by the Second Circuit.

Following years of delay arising from procedural gambits pressed by fewer than 20 Defendants in related foreign litigations (i) to obtain a judgment that those Defendants hoped would resolve all issues before this Court (it did not) (the "Preliminary Issues" proceeding), and then (ii) to stop the Liquidators from proceeding in this Court with respect to their claims (which has not succeeded) (the BVI Section 273 proceeding), Defendants now ask the Court to resolve this case without discovery.  But this Court has jurisdiction over the Defendants and the subject matter; Plaintiffs have stated claims under BVI statute and common law; and nothing in U.S. bankruptcy law provides Defendants with the blanket defense they assert.

**I.**    This Court has jurisdiction over all of the Defendants.  Virtually all of them consented to this Court's jurisdiction in the Subscription Agreement, which broadly covers claims, like these, which are "with respect to" the Subscription Agreements and the Funds.  Furthermore, all of the Defendants purposefully availed themselves of the privilege of doing business in this forum by investing in Madoff feeder funds and, in the case of Sentry investors,

by designating U.S. correspondent banks to effectuate investments and redemptions. Other courts in this District have found that comparable actions established personal jurisdiction.

II.     This Court has subject matter jurisdiction over these actions because they could conceivably affect the debtors' bankruptcy estate. Defendants' contrary arguments are incorrect: the prior ruling of the District Court that these are not "core" proceedings does not defeat subject matter jurisdiction; the possibility of further action to enforce this Court's judgment does not mean that this Court's judgments would be without effect; and the location of the assets at issue is likewise irrelevant to the Court's subject matter jurisdiction here.

III.     The complaints properly state claims under the BVI Insolvency Act for unfair preference and undervalue transaction. As explained in the accompanying further declaration of Gabriel Moss QC, it is clear under BVI law that (i) Defendants were creditors of the Funds when the redemptions were paid and the redemption payments put them in a better position than they would have occupied had they made their claims through the liquidation; and (ii) the Funds paid cash to Defendants for shares that were, in fact, nearly valueless. Plaintiffs have likewise properly alleged, and benefit from a statutory presumption, that the Funds were insolvent at the time of the redemption payments. And Defendants' "ordinary course" and "good faith" defenses, to which presumptions benefiting Plaintiffs also apply, are incorrect or, at best, premature

IV.     Plaintiffs have stated a claim under BVI common law. Defendants' argument that the prior judgment of the Privy Council bars Plaintiffs claims is incorrect for two basic reasons. First, BVI law—not U.S. law—governs the preclusive effect of the BVI judgment. Second, under that law, because of the limited scope of the issue decided by the Privy Council and the lack of participation by most of the Defendants in that litigation, it is clear that none of Plaintiffs' claims are precluded. In particular, because the Privy Council did not decide the effect of the

2

alleged bad faith certification of the Funds' NAV, that issue must be decided in this action. Furthermore, the fact that Citco—which certified the NAV—was the Funds' agent does not bar Plaintiffs' claims under BVI law.

**V.**     Defendants' argument that Section 546(e) of the Bankruptcy Code bars Plaintiffs' claims is incorrect because that provision does not apply extraterritorially.  That provision limits trustees' avoidance power with regard to certain securities contracts, but nothing in that provision purports to apply to foreign transfers—particularly in light of the strong presumption against applying statutes extraterritorially.  Effectively acknowledging that Section 546(e) does not, of its own force, apply outside the U.S., Defendants rely instead on Section 561(d), but that provision simply clarifies that Section 546(e) applies in a Chapter 15 case to the same extent as in a case under Chapter 7 or Chapter 11.  Because Section 546(e) does not apply extraterritorially in cases under those chapters, it does not apply extraterritorially in this case either.

**VI.**     All of the Defendants were properly served.  Under the applicable forum selection clause of the Subscription Agreements, Defendants admittedly consented to service consistent with New York law, which provides for service under the Hague Convention, which in turn generally permits mail service of the kind effected here.  Moreover, Defendants more specifically consented to mail service.  And, for Defendants in countries where mail service is not authorized, because Defendants consented to such service, it is effective for purposes of federal law.

In sum, Chapter 15 exists for cases like this one.  Defendants' effort to keep billions of dollars in payments they admit were calculated on a fraud threatens the integrity of a foreign bankruptcy estate.  It is the Chapter 15 court's role to serve as "arm of the foreign bankruptcy court" in the Liquidators' efforts to recover the redemptions for the benefit of the foreign estate. The motion to amend should be granted and the dismissal motions should be denied.

# ARGUMENT[1]

## I.    The Court Has Personal Jurisdiction Over All Defendants.

The Court has personal jurisdiction over Defendants for two reasons.  First, as a condition of their investment in the Funds, nearly all Defendants by contract submitted to the jurisdiction of this Court.  Second, by investing in the Funds, all Defendants purposefully availed themselves of the privilege of doing business within the forum.[2]

At this stage, a plaintiff "need only make a *prima facie* showing of personal jurisdiction over" Defendants.  *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, No. 09-50026 (MG), 2017 WL 632126, at *7 (Bankr. S.D.N.Y. Feb. 16, 2017) (Glenn, J.).  While the Court may consider materials outside the pleadings, it must credit a plaintiff's jurisdictional allegations, construe all pleadings and affidavits the light most favorable to the plaintiff, and resolve all doubts in its favor.  *See Official Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 63 (S.D.N.Y. 2016).

### A.    Nearly All Defendants Have Expressly Consented to Jurisdiction.

Almost every Defendant has consented to this Court's jurisdiction by agreeing in its Subscription Agreement to litigate in this Court.  Ample precedent confirms that a valid and applicable forum selection clause conclusively affords the court personal jurisdiction over defendants bound by it.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 153 (E.D.N.Y. 2012); *Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005);

---

[1] Defendants oppose amendment solely on futility grounds, relying on their motion to dismiss arguments.  *See* Def. 16-17.  Because the dismissal arguments fail for the reasons demonstrated herein, the futility arguments likewise fail.

[2] Defendants concede that the Court may exercise personal jurisdiction over 29 Defendants present in the United States, from whom an aggregate of over $100 million in damages is sought.  *See Consolidated Mem. of Law*, Jan. 13,

*Farrell Lines, Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 127 (S.D.N.Y.1997).

Indeed, forum selection clauses are "an indispensable element in international trade, commerce,

and contracting," reducing uncertainty over the proper forum for suit. *M/S Bremen v. Zapata*

*Off-Shore Co.*, 407 U.S. 1, 12-13 (1972). Thus, the Second Circuit follows the strong federal

policy that favors enforcement of forum selection clauses, which dictates that "in all but the most

unusual cases, the interest of justice is served by holding parties to their bargain." *Martinez v.*

*Bloomberg LP*, 740 F.3d 211, 219 (2d Cir. 2014) (citations omitted).[3]

As the Proposed Amended Complaints reflect, record holders subscribing in the Funds

from 2003 onward signed subscription agreements containing the following provision:

> New York Courts. Subscriber agrees that any suit, action or
> proceeding ("Proceeding") with respect to this Agreement and the
> Fund may be brought in New York. Subscriber irrevocably
> submits to the jurisdiction of the New York courts with respect to
> any Proceeding and consents that service of process as provided by
> New York law may be made upon Subscriber in such Proceeding,
> and may not claim that a Proceeding has been brought in an
> inconvenient forum.

Subscription Agreement ("SA") ¶ 19 (the "Forum Clause").[4]  The record holders made this

commitment not only on their own behalf, but also on behalf of the beneficial owners for whom

---

2017 [ECF No. 960], at 23-25 ("Def.") (contesting personal jurisdiction only on behalf of "Foreign Defendants");
*compare* Def. Appendix A ("Defendants") *with* Def. Appendix B ("Foreign Defendants").

[3] The strong federal policy accords with New York's policy, which, by statute, makes such clauses enforceable in
cases involving transactions of at least $1 million, *see* N.Y. Gen. Oblig. Law § 5-1402, thereby covering most
actions in this Court. "New York law actively encourages parties to international commercial agreements to select
New York as a forum regardless of other contacts with the state." *Saeco Vending, S.P.A. v. Seaga Mfg., Inc.*, No.
15-CV-3280 (AJN), 2016 WL 1659132, at *5 (S.D.N.Y. Jan. 28, 2016) (citing NY Gen. Oblig. Law § 5-1402).

[4] A representative SA is attached as Exhibit A to the Declaration of David J. Molton in Support of Plaintiffs'
Opposition to Defendants' Motion to Dismiss, Mar. 31, 2017, submitted herewith ("Molton II"). Upon first
subscribing, subscribers signed the Subscription Agreement in long form. *See* Proposed Amended Complaint
("PAC") ¶¶ 21, 177, attached as Exhibit B to the Declaration of David J. Molton, dated Oct. 21, 2016 [ECF No.
924] ("Molton I"). For subsequent subscriptions, subscribers signed a short-form agreement, by which they agreed
to be bound by the terms of the Subscription Agreement. *See* Molton II Ex. A-1 (short-form); *see also* SA ¶ 13
("Subsequent Subscriptions.  If Subscriber subscribes for additional shares at a later date, Subscriber shall be

they placed investments.  *See id.* Ex. A ¶ 27.[5]  Defendants do not dispute that this clause is

enforceable if it applies to the Liquidators' claims.  Instead, they argue (at 24-28) that (i) the

clause does not reach the Liquidators' claims, and (ii) hundreds of Defendants are not bound by a

Subscription Agreement.  Both arguments fail.

### 1.    The Forum Clause Covers All of The Liquidators' Claims.

By its terms, the Forum Clause reaches actions that are "with respect to [the Subscription]

Agreement and the Fund."  *See* Forum Clause.  The most natural reading of that provision is that

it reaches all actions that are with respect to the Subscription Agreement as well as all actions

that are with respect to the Fund; the Forum Clause is not restricted to actions that are with

respect to *both* the Subscription Agreement and the Fund.  By way of analogy, if one were

informed that "books with respect to biology and chemistry are in the third bookcase in the

science section of the library," that would make clear that books about making plastics would be

in the third bookcase, as would books about evolution—the statement would not be restricted to

books about both subjects.  *See Velazquez v. Countrywide Home Loans Servicing, L.P. (In re*

*Velazquez)*, 660 F.3d 893, 897-99 (5th Cir. 2011) (for contract empowering lender to "do and pay

---

deemed to have re-executed this [Subscription] Agreement in subscribing for those Shares.").  Insofar as cited
herein, the provisions in the Sentry Subscription Agreement (Molton II Ex. A) are also found in the Sigma and
Lambda Subscription Agreements, albeit under different paragraph numbers; references herein to Subscription
Agreement paragraph numbers use the numbering found in the Sentry Subscription Agreement.

[5] The Subscription Agreement provides:  "<u>If Subscriber is acting as a Representative.</u>  If Subscriber is subscribing as
trustee, agent, representative, or nominee for another person (the 'Beneficial Shareholder'), Subscriber agrees that
the representations and agreements herein are made by Subscriber with respect to itself and the Beneficial
Shareholder.  Subscriber has all the requisite authority from the Beneficial Shareholder to execute and perform the
obligations hereunder."  SA ¶ 27.  The subscriber also provides an indemnity to the Fund relating to the provision.
*See id.*  Even absent this paragraph, the beneficial owners would be bound by the Forum Clause, (i) because they are
closely related parties, such that enforcement against them is foreseeable, and (ii) under estoppel principles, given
the redemption monies they received through the contract.  *See LaRoss Partners LLC*, 874 F. Supp. 2d at 154-61
(enforcing forum clause against "closely related" non-signatory where it "should have been foreseeable to [non-
signatory ] that its role in the Agreement and its relationship to [signatory] would lead to it being bound," and also on
estoppel grounds given benefits non-signatory derived from contract); *see also KTV Media Int'l, Inc. v. Galaxy Grp.,*
*LA LLC*, 812 F. Supp. 2d 377, 386-87 (S.D.N.Y. 2011) (enforcing clause against closely related non-signatory).

for whatever is reasonable or appropriate to protect [its] interest in the Property and rights under

this Security Instrument," the second "and" means "either or both") (collecting cases); *BOKF,*

*N.A. v. Caesars Entm't Corp.*, 162 F. Supp. 3d 243, 246 n.5 (S.D.N.Y. 2016) (New York law)

("[W]hether 'and' is a conjunctive or disjunctive term—and similarly whether 'or' is conjunctive

or disjunctive—may well depend on the context and usage in a particular contract.").   In this

case, it would make no sense to read the Forum Clause as carving out a hypothetical suit with

respect to the Subscription Agreement that was not "with respect to" the Fund.   Likewise, if a

suit is with respect to the Fund, the Forum Clause applies; it need not also be with respect to the

Subscription Agreement.   Because Defendants do not dispute that the Liquidators' claims are

"with respect to" the Funds, the Forum Clause applies.

　　　In any event, accepting for argument's sake that the Forum Clause applies only when a

suit is with respect to *both* the Subscription Agreement and the Funds, it is satisfied.   The phrase

"with respect to" is construed broadly, alongside phrases such as "related to" and "in connection

with"—and in contradistinction to narrower phrases such as "arise out of."   *See Coregis Ins. Co.*

*v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001) (Sotomayor, J.).   Thus, in the

forum selection context, "with respect to" is satisfied so long as there is a "discoverable relation"

between the items.   *See Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07-Civ. 9580

(HB) 2008 WL 4833001, at *7 (S.D.N.Y. Nov. 5, 2008) (citing *Coregis*, 241 F.3d at 128–29);

*HMS Holdings Corp. v. Moiseenko*, 49 Misc. 3d 1215(A), 29 N.Y.S.3d 847 (Table), at *4 (N.Y.

Sup. Ct. Albany Cty. 2015) (quoting *Coregis*, 241 F.3d at 128-29); *see also In re Optimal U.S.*

*Litig.*, 813 F. Supp. 2d 351, 367 (S.D.N.Y. 2011) ("'related to' is typically defined more broadly

than the phrase 'arising out of' and is not necessarily tied to the concept of a causal connection").

Here, it is easy to "discover" a "relation" between the Liquidators' claims and the Subscription Agreements. Defendants acknowledge that these suits involve rights and defenses arising from the Articles; the Articles and the Subscription Agreements—defined jointly (along with the offering memorandum) as the "Fund Documents"—are expressly linked in the contracts Defendants signed. As the Subscription Agreement provides (in ¶ 1), "Subscriber subscribes for the Shares pursuant to the terms herein, the Memorandum, and the Fund's Memorandum of Association and Articles of Association (collectively, the 'Fund Documents')." It goes on (in ¶ 2) to say that, "[i]f the Fund accepts this subscription, Subscriber shall become a shareholder of the Fund and be bound by the Fund Documents." And it underscores (at ¶ 7) that "Subscriber acknowledges that in making a decision to subscribe for Shares, Subscriber has relied solely upon the Fund Documents and independent investigations made by the Subscriber . . . .").

In short, it is the Subscription Agreement by which Defendants became bound to the Articles they now invoke and under which key substantive rights at issue arise. *See* SA ¶ 2. It is the Subscription Agreements under which Defendants placed the investments at issue in these suits. *See id.* ¶ 1. And it is the Subscription Agreements in which Defendants identified the banks through which they would receive the redemption payments that are the subject of these claims. *See id.* ¶ 30(g).[6] The notion that there cannot be found in any of this a "discoverable relation" between the claims and the Subscription Agreement borders on the frivolous.

Defendants' contention (at 25-26) that to find the Forum Clause applicable, the Court would have to "revisit" the Privy Council's ruling that substantive rights arose from the Articles is likewise incorrect. Given the interrelationship between the Articles and Subscription

---

[6] *See also* SA ¶ 9 ("Redemptions"); ¶ 10 ("Valuations"); ¶ 20(D) (concerning redemption payment bank accounts); ¶ 21 (further representations as conditions to receiving redemption payments).

Agreements, a ruling that rights and defenses arise from the Articles simply confirms that the claims are "with respect to" the Subscription Agreements as well. For example, in *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09-CIV-6148-VMMHD, 2012 WL 12932049, at *45 (S.D.N.Y. July 17, 2012), a letter evidencing debt made the debt subject to terms of subordination agreement. The Court held that an action seeking to collect on letter was "related to" subordination agreement, even if claims did not arise under the subordination agreement, because "the law is clear that the term 'arising under' is narrower than 'relating to.'" Accordingly, "[m]ovants do not need to show that the rights invoked 'arise under' the [subordination agreement], but only that the lawsuit is about a matter connected, or associated, with [the subordination agreement]." *Id.*; *see also Prod. Res. Grp., LLC v. Martin Prof'l, A/S*, 907 F. Supp. 2d 401, 414 (S.D.N.Y. 2012) (in holding that forum selection clause governed claims, explaining that "[w]hile it may be that Plaintiff does not base its patent claims on the Agreements, that is, they do not arise from the Agreements, there is little doubt that the patent claims relate to the very agreements that governed Defendants' use of Plaintiff's patents.").

The Forum Clause applies here for a further reason: given the expressed intention that all three "Fund Documents" govern Defendants' investment and rights relating thereto, those documents (*i.e.*, the Articles, Subscription Agreements and Private Placement Memoranda) form an integrated contract. *See TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 89 (2d Cir. 2005); *Bank of N.Y. v. FDIC*, 453 F. Supp. 2d 82, 99-100 (D.D.C. 2006), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007); *Ocwen Loan Servicing, LLC v. Rescap Liquidating Tr. (In re Residential Capital LLC)*, 533 B.R. 379, 396-97 (Bankr. S.D.N.Y. 2015) (Glenn, J.). Given this integration, the Forum Clause applies to all of the Fund Documents as parts of a single contract. *See Albany Ins. Co. v. Banco Mexicano, S.A.*, No. 96 CIV. 9473 DAB, 1998 WL 730337, at *2 (S.D.N.Y. Oct.

19, 1998), *aff'd*, 182 F.3d 898 (2d Cir. 1999) ("The district court found that the loan notes and the warehouse receipts together formed an integrated contract, so that . . . the forum selection clause applied to Albany's claims under the receipts. We agree.""); *GMAC Commercial Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*, 242 F. Supp. 2d 279, 283 (S.D.N.Y. 2002); *Greene's Ready Mixed Concrete Co. v. Fillmore Pac. Assocs. Ltd.*, 808 F. Supp. 307, 310 (S.D.N.Y. 1992).

Defendants' effort (at 26-27) to invoke as a basis for estoppel a statement that BVI counsel made in 2010 to support serving process in the BVI redeemer litigation fares no better. Judicial estoppel applies in federal cases "only in situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced." *Stichting Ter Behartiging Van de Belangen Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005).[7] Context confirms that the phrase that Defendants snip from BVI counsel's papers ("not made on or in respect of those agreements") was part of a sentence arguing that BVI substantive law *governs* the restitutionary claims; counsel even pointed out that the Forum Clause "is not a choice of law provision."[8] Accordingly, if any position was "adopted" by the BVI Court (other than service being authorized), it was that BVI law *governed* the claims; the court made no

---

[7] Defendants rely solely on U.S. judicial estoppel principles, and do not contend that a doctrine of judicial estoppel exists under the laws of the BVI or England.

[8] The full quote: "Prima facie the restitution claim is governed by the same law as governs the Articles (This is so despite the subscription agreements being subject to NYS law: the claims are not made on or in respect of those agreements: they contain agreements to submit to the jurisdiction of NYS in respect of other claims, but that is not a choice of law provision)." *See Decl. of Phillip Kite*, Jan. 13, 2017 [ECF No. 963] ("Kite Decl.") Ex. Q ¶ 19(c) (Sentry Skeleton). Indeed, the supporting affidavit of Jose Santos Torres, language from which Defendants do not excerpt in their brief, makes crystal clear that the issue was *governing law* and not the construction of the Forum Clause or its application to the claims: "There is a good argument that the restitution claim is governed by the same law as the contract, i.e. the Articles, pursuant to which the payment was made. (This is so, despite the subscription agreements being governed by the law of the State of New York, because that choice of law does not apply to this restitution claim and, *while a clause containing the submission to the courts of New York may apply to all claims, it [is] not itself a choice of law clause*." *Id.* Ex. P (Santos Torres Aff.) ¶ 5(g) (emphasis added). *See also* n.52, *infra*.

finding as to "in respect of." Because the position that BVI law governs the restitutionary claims (which the Liquidators do not dispute) is not relevant to, let alone "inconsistent" with, the Liquidators' position concerning the Forum Clause, there is no basis for judicial estoppel.

2.    The Forum Clause Binds Nearly All Defendants.

Of the 424 Defendants that contest personal jurisdiction:[9]

- **198** do not contest that the Liquidators have alleged that they signed a Subscription Agreement. *See* Appendix B, attached hereto. At the motion to dismiss stage, these allegations are sufficient to make a *prima facie* showing of personal jurisdiction. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85-86 (2d Cir. 2013).[10]

- **192** are beneficial owners that are bound by the Forum Clause in the Subscription Agreements. *See* SA ¶ 27 (consents are made on behalf of beneficial owners); *see also* n.5, *supra* (authorities binding non-signatories to forum selection clauses). *See* Appendix B-1.

- With respect to the remaining **30**, against which the Liquidators do not advance jurisdictional allegations based on Subscription Agreements, *see* Appendix C, the Court may assert jurisdiction based on purposeful contacts, discussed next.

**B.    The Court May Exercise Jurisdiction Based on Defendants' Contacts.**

This Court may exercise specific jurisdiction over all Defendants for the independent reason that Defendants had purposeful contacts with the United States. Defendants subscribed to the Funds knowing and intending that the Funds would derive substantially all their returns from the Funds' investment in U.S.-based BLMIS. And the Sentry Defendants carried out their investments and received redemption payments through the purposeful use of U.S. bank

---

[9] In addition to figures set forth in bullet points, three Defendants contest allegations of U.S. presence, *see* Appendix A-1, and one incorrectly contends that the Liquidators do not make forum selection clause allegations against them, *see* Appendix B (Bank Hapoalim B.M., Tel Aviv). *See* Adv. Pro. 11-01467 [ECF No. 13] ¶ 20.

[10] To the extent that any Defendant purports to contradict the Liquidators' allegations concerning jurisdiction, the Court must credit the allegations and construe pleadings and affidavits in the light most favorable to the Liquidators, unless and until the Court orders a full evidentiary hearing on jurisdiction or hears the matter on summary judgment. *See Dorchester*, 722 F.3d at 84-86. Here, however, even if there were any credible dispute as to individual Defendants, which the Liquidators address in supplemental responses, no evidentiary hearing is required, because all Defendants are subject to jurisdiction based upon their purposeful availment of the forum, discussed *infra*.

accounts. These facts show that (i) Defendants have "the requisite minimum contacts with the United States at large," (ii) Plaintiffs' claims "arise out of or relate to" those contacts, and (iii) the exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice." *Arcapita*, 549 B.R. at 63-64; *see also In re Motors Liquidation Co.*, 2017 WL 632126, at *7 (citing *In re MF Global Holdings Ltd.*, 561 B.R. 608, 620-21 (Bankr. S.D.N.Y. 2016)).

### 1.    Defendants Have Minimum Contacts with the United States.

"Minimum contacts necessary to support [specific jurisdiction] exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (internal quotations omitted) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)). Two sets of "minimum contacts" are present.

### a.    Defendants Decided to Invest in Madoff Feeder Funds

The Liquidators allege that all Defendants "invest[ed] money with the Funds, knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS." *See* PAC ¶ 19. Defendants' suggestion (at 30) that they were merely "predicting" that subscription monies might through a "stream of commerce" end up in the United States is incorrect. These were *feeder funds*: indirect investment in U.S.-based BLMIS was their stated purpose. *See* PAC ¶ 2 ("As stated in their offering materials, the Funds' investment objective was to achieve capital appreciation of assets through investments in BLMIS."); *see also* Private Placement Memorandum for Fairfield Sentry Limited dated August 14, 2016 ("Sentry PPM") at 2, 9-10, attached as Exhibit C to Molton II.[11] That the Funds (and not Defendants) made direct investments into BLMIS, *see* Def. 30, does not mean that Defendants had no forum-related

purpose: to the contrary, Defendants themselves decided to invest in Madoff feeder funds in the first place. This Court's own precedents confirm that this is enough to give it personal jurisdiction over Defendants.[12] *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*SIPC I*") (finding specific jurisdiction where suit was "based upon BLI's investment of tens of millions of dollars in Fairfield Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom"), *cited in Picard v. J.P. Morgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (Bernstein, J.) ("subsequent litigation involving other defendants has confirmed that defendants who invested . . . indirectly with BLMIS and received payments from BLMIS . . . as subsequent transferees of . . . initial transferees were subject to the Court's personal jurisdiction").[13]

b. The Sentry Defendants Purposefully Used U.S. Banks

For those Defendants that invested in Sentry, the Court may exercise jurisdiction on an additional basis: their purposeful use of U.S. correspondent banks to effectuate the investments

---

[11] Defendants agreed in their Subscription Agreements to be bound by the terms of the PPMs. *See* SA ¶¶ 1, 2.

[12] Defendants' conduct distinguishes this case from *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) (cited at Def. 30), in which four of the defendant's machines somehow wound up in New Jersey even though defendant's distributor never targeted the state, *see id.* at 882. So, too, with *Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d. Cir. 2016) (cited at Def. 29-30), where plaintiffs with U.S. contacts were caught up in "indiscriminate violence" perpetrated overseas by the defendants, *see id.* at 337.

[13] While Judge Lifland's analysis in *SIPC I* regarding extraterritorial application of the Bankruptcy Code has since been abrogated, *see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014) ("*SIPC II*"), supplemented by No. 12-MC-115 JSR, 2014 WL 3778155 (S.D.N.Y. July 28, 2014) (Rakoff, J.); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. P. No. 08–01789 (SMB), 2016 WL 6900689, at *5-7 (Bankr. S.D.N.Y. Nov. 22, 2016) (Bernstein, J.) ("*SIPC III*"), his analysis of personal jurisdiction was not disturbed. *Cf. Picard v. J.P. Morgan Chase & Co.*, 2014 WL 5106909, at *9 (citing *SIPC I's* personal jurisdiction analysis *after* District Judge Rakoff's decision on extraterritoriality). Indeed, "whether sufficient contacts with the United States support the assertion of personal jurisdiction is a different question from whether a transaction is domestic for purposes of extraterritoriality." *SIPC III*, 2016 WL 6900689, at *30 n.34; *see also id.* at *18 ("the tests for personal jurisdiction and extraterritoriality are not the same") (citing *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012)); *id.* at *18 n.17 ("Judge Rakoff['s] . . . failure to mention the allegations relating to personal jurisdiction implies that he deemed them to be irrelevant to the issue of extraterritoriality.").

and redemption payments at issue here.  "It should hardly be unforeseeable to a bank that selects and makes use of a particular forum's banking system that it might be subject to the burden of a lawsuit in that forum for wrongs related to, and arising from, that use."  *Licci*, 732 F.3d at 171. Thus, so long as the defendant's usage of a U.S. bank account to effectuate the activity at issue is "purposeful" or "volitional," as opposed to lacking in purpose, it constitutes a contact supporting jurisdiction.  *See Arcapita,*, 549 B.R. at 65-67; *Licci*, 732 F.3d at 170-73; *Rushaid v. Pictet & Cie*, 28 N.Y. 3d 316, 325-38 (2016).  Indeed, so long as it reflects such a purpose, even *one* usage of a U.S. bank account for an otherwise foreign transaction suffices.  *Arcapita*, 549 B.R. at 66.[14]

Contrary to Defendants' argument (at 32-33), the fact that Sentry required Defendants to invest in U.S. dollars and use a U.S. correspondent bank does not mean that investors lacked such "purpose."  As Defendants acknowledge (at 31 n.27), they could have invested in funds that did not require this.  But the Sentry investors selected the Fund that *did* require them to use the U.S. banking system—a decision as purposeful as any in the correspondent bank cases.  *See In re Motors Liquidation Co.*, 2017 WL 632126, at *10 (where defendant purchased interest in term loan that *required* loan payments be made in New York, defendant's use of New York correspondent bank account to receive such payments was sufficiently "purposeful and not coincidental" to be among contacts supporting jurisdiction).[15]  Indeed, the Sentry investors were

---

[14] "The use of a U.S. correspondent bank account to process a dollar-denominated transaction may confer personal jurisdiction over the transferee but under the ET Decision, does not render an otherwise foreign transfer domestic." *SIPC III*, 2016 WL 6900689, at *30 n.34.

[15] The *Motors* case shows why Defendants are wrong in their attempt to limit *Arcapita*.  When the *Arcapita* court stated in dicta that "[h]ad the record demonstrated that [the plaintiff], as opposed to [the defendants], selected the U.S. dollar and the New York accounts to effectuate the Placements, the [defendants] contacts with the United States would have been adventitious, and jurisdiction would not have lied," *Arcapita* 549 B.R. at 71, it was merely observing that for a transaction that did not inherently require use of the U.S. banking system (or having any other relevant connection to the United States), if the defendant had no role in selecting use of that system, there would be no purposeful availment on which to base jurisdiction.  Here, by contrast, there is no question that the Sentry investors made a purposeful decision to use U.S. banks, by selecting Sentry over other feeder funds.  And indeed, the *Arcapita* court made clear that where the plaintiff and defendants "jointly" select U.S. banks, jurisdiction will lie.

required to write into their Subscription Agreements a U.S. correspondent bank, SA ¶ 30(g),

which demonstrates that they knew they were availing themselves of the U.S. banking system.

*See also id.* ¶ 8 (representing that subscriber is a sophisticated investor).

Moreover, the Sentry investors' use of U.S. banks was not peripheral or "incidental."

Defendants used the U.S. banks for the specific purpose of carrying out investments in and

redemptions from feeder funds for U.S.-based BLMIS.  The U.S. banks they chose were thus the

means by which they received the very redemption payments at issue in this suit.  *See Arcapita*,

549 B.R. at 69 ("[defendants'] New York contacts—*i.e.*, the receipt of the transferred funds in

New York correspondent bank accounts—are at the heart of this cause of action"); *Licci*, 732

F.3d at 171 ("the correspondent account at issue is alleged to have been used as an instrument to

achieve the very wrong alleged").[16]

### 2.    The Liquidators' Claims Arise Out of or Relate to Defendants' Contacts.

Under any relevant standard, the Liquidators' claims are appropriately related to

Defendants' contacts.  In the Second Circuit, specific jurisdiction may be exercised based on

---

*See Arcapita*, 549 B.R. at 68 n.15.  Judge Glenn's citation of *Arcapita* to support jurisdiction in a case where defendant used a U.S. bank for an investment that *required* use of the U.S. banking system, *see In re Motors Liquidation Co.*, 2017 WL 632126, at *10, only confirms this.

[16] That is, unlike in *Hill v. HSBC Bank PLC*, No. 14 CV09745-LTS, 2016 WL 4926199, at *4 (S.D.N.Y. Sep. 15, 2016), where the court found the contacts of the defendant administrators and custodians of Madoff feeder funds to be incidental to fulfillment of a foreign contract, or *Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136, at *7 n.6 (S.D.N.Y. Mar. 1, 2017), where the court found that the use of U.S. bank accounts was incidental and "not specifically directed by any of the [defendant administrators and custodians]," here, the Sentry Defendants chose to use the U.S. banking system for the very purpose of carrying out their investments in Madoff feeder funds and receiving the redemption payments that now are the subject of this litigation.  Likewise, in *O'Toole v. MyPlace Dev. SP. ZO.O. (In re Sledziejowski)*, No. 13-22050, 2016 WL 6155929, at *4 (Bankr. S.D.N.Y. 2016), the court emphasized that the focus must be on the *defendant's* purposeful availment (not that of its forum-domiciled counterparty)—a principle under which jurisdiction obtains here.  Further, while the *Sledziejowski* court's "knowing receipt" point was based upon a New York decision that was reversed by the New York Court of Appeals, *see Rushaid*, 28 N.Y. 3d at 325-29, the Sentry Defendants' conduct was in any event more than "knowing receipt"—it was a purposeful investment in Madoff feeder funds, including a purposeful selection of the particular fund requiring use of U.S. banks. *Compare Leema Enters. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983) ("mere maintenance"

minimum contacts where the claims "arise[] out of, or relate[] to," those contacts.  *Licci*, 732 F.3d at 170 (internal citations omitted); *Arcapita*, 549 B.R. at 63-64 (similar).  Because of the "striking similar[ity]" of the New York long-arm statute analysis, federal courts in New York often rely on analysis under the New York standard, *see Licci*, 732 F.2d at 170; *Arcapita*, 549 B.R. at 68-70,[17] under which the inquiry is "relatively permissive," such that "[t]he claim need only be in some way arguably connected to the transaction," *Rushaid*, 28 N.Y. 3d at 329; *accord Licci v. Lebanese Can. Bank SAL*, 984 N.E.2d 893, 900-01 (N.Y. 2012) (requiring only "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former").[18]  The result here is the same under both tests.

*First*, the claims against *all* Defendants "arise out of or relate to" Defendants' purposeful investments in the Madoff feeder funds, because the claims seek to avoid or recoup the returns on those very investments.  Had Defendants not invested in these Madoff feeder funds, the claims would not lie.  *See SIPC I*, 480 B.R. at 517.

*Second*, the claims against the Sentry Defendants also "arise out of or relate to" their use of the U.S. banking system.  The claims attack the redemption payments that the Sentry Defendants received through their U.S. bank accounts.  Indeed, as Defendants acknowledge (at 32), use of U.S. banks was *required* for them to receive the redemptions now sought to be

---

of accounts that were "unrelated to the fraud alleged"); *Universal Trading & Invest. Co., Inc. v. Tymoshenko*, No. 11 Civ. 7877 (PAC), 2012 WL 6186471, at *3 (S.D.N.Y. 2012) (not alleged that use of U.S. banks was "purposeful").

[17] "[N]o court has yet held that [New York's long arm statute] confers jurisdiction, but that asserting such jurisdiction would nonetheless violate constitutional due process." *Arcapita*, 549 B.R. at 69.

[18] Even if Defendants were correct (at 34) that a proximate cause test should apply, the contacts here would satisfy such a test.  *Cf. Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 274, 280 n.3 (Bankr. S.D.N.Y. 2010) (where "but for transfers of BLMIS funds to and from Miri Chais's BLMIS brokerage accounts or other United States bank accounts, there could be no fraudulent transfer claims against her," the claims were "so related to the contacts at issue that specific jurisdiction is supported under any of these tests [including but-for and proximate cause].").  Accordingly, there is no need to rely on any other means (*see* Def. 34-35) to satisfy the standard.

avoided. This satisfies the standard. *See Arcapita*, 549 B.R. at 69 ("the receipt of the transferred funds in New York correspondent bank accounts . . . are at the heart of this cause of action" and"[t]he receipt of the funds in New York is precisely the conduct targeted by the Committee, and the activity that the cause of action seeks to have voided").

Finally, Defendants' argument (at 33-34) that other actors (Citco and BLMIS) engaged in conduct from which the claims arise is beside the point. Defendants identify no case holding that a defendant's purposeful conduct must be the exclusive reason that the claims exist.[19] Jurisdiction may be exercised so long as the claims arise out of or relate to the defendants' purposeful contacts. Here, they do.

3.    The Exercise of Jurisdiction Would Not be Unreasonable.

Defendants present no "compelling case" that the exercise of jurisdiction here would be "unreasonable," *Bank Brussels Lambert*, 305 F.3d 129-30, because it fails to "comport with fair play and substantial justice." *Licci*, 732 F.3d at 170. Relevant factors may include "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; and (3) the plaintiff's interest in obtaining convenient and effective relief." *Id.* (internal citations omitted).

Defendants do not approach a showing that the exercise of jurisdiction would be unreasonable. *First*, even if their files are overseas, *see* Def. 35, "the conveniences of modern

---

[19] In *Kuenzle. v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453 (10th Cir. 1996), the defendants' contacts with the forum had no bearing on the injury at issue, which related to a product the plaintiff purchased outside of the forum and brought into the forum herself. *See id.* at 456-57. Here, by contrast, had Defendants not chosen to invest in Madoff feeder funds, they would not face suit. In *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015), the plaintiffs failed to satisfy even a "but-for" standard, as the plaintiff investors in BLMIS "fail[ed] to allege any meaningful connection whatsoever between" the conduct of defendants (fellow investors in BLMIS, and administrator of feeder fund in which plaintiffs did not invest) and plaintiffs' injuries. *Id.* at 170. Again, here inflated redemption payments would not have been received by Defendants had they not invested in these Madoff feeder funds, and would not have been received by the Sentry Defendants had they not used U.S. banks.

communication and transportation ease" any burden the defense of the case in this Court might impose. *See Licci*, 732 F.3d at 174 (internal citations and quotations omitted). *Second*, Defendants' contention (at 35) that a U.S. court cannot enter the relief sought merely rehashes their meritless attempt to limit Section 249 of the BVI Insolvency Act. *See* Part III-E, *infra*. *Third*, Defendants' assertion (at 35) that "the United States has little interest in determining disputes between foreign parties arising exclusively under foreign law and relating exclusively to the recovery of foreign assets" writes their own conduct out of the complaint. All Defendants decided to invest in Madoff feeder funds in the first place. *See SIPC I*, 480 B.R. at 517 (investor in Fairfield Sentry could not claim violation of due process rights from having to appear in a New York court for suit on investment). And the Sentry Defendants affirmatively chose to use the U.S. banking system to carry out their investments. *See Arcapita*, 549 B.R. at 68 ("when a defendant purposely selects and uses a correspondent bank account to effectuate a particular transaction, and a plaintiff later files a lawsuit asserting a cause of action arising out of that transaction, the defendant can hardly claim that it could not have foreseen being haled into court in the forum in which the correspondent bank account it had selected is located").

## II. The Court Has Subject Matter Jurisdiction Over The Liquidators' Claims.

### A. The Actions Are "Related to" a Case Under Title 11 Because They Could Conceivably Affect the Bankrupt Estate.

The Court has subject-matter jurisdiction over these actions because, at a minimum, they are "related to" a case "under title 11." 28 U.S.C. § 1334(b).[20] A civil proceeding is "related to"

---

[20] This Court expressed at the July 27, 2016 status conference in these Actions that it did not "see what the subject matter jurisdiction issue is" in these Actions. Decl. of T. Moloney in Opp. to Pls.'Mot. for Leave to Amend and In Sup. of Defs.' Mot. to Dismiss, dated Jan. 13, 2017 [ECF No. 961], Ex. F (July 27, 2016 Hr'g Tr. at 66:24-25). For the reasons set forth herein, the Court was correct in its observation. Moreover, as Defendants acknowledge (at 19 n.15), Judge Lifland previously found that "related to" jurisdiction exists over the Actions in connection with Defendants' motions for remand or abstention. *See In re Fairfield Sentry Ltd.*, 452 B.R. 64 (Bankr. S.D.N.Y.)

a bankruptcy case if the proceeding's "outcome might have any 'conceivable effect' on the bankrupt estate." *Publicker Indus. Inc. v. United States (In re Cuyahoga Equipment Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992). That is true even where, as here, the estate is administered mainly overseas. *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011). As long as the foreign estate, "*wherever located*, may conceivably be affected by the [] actions," subject matter jurisdiction exists. *Id.* (emphasis added). "Nothing further is required." *Id.*[21]

It is beyond cavil that the Debtors' BVI estates "may conceivably be affected" by the Actions because any recoveries from the Actions will benefit those estates. *See In re Fairfield Sentry Ltd.*, No. 10 CIV. 7340, 2010 WL 4910119 at *1 (S.D.N.Y. Nov. 22, 2010) (Preska, J.) ("Any recovery thus would accrue to the benefit of the Plaintiffs' bankruptcy estates."); *see also Hellas I*, 524 B.R. 488, 515 (Bankr. S.D.N.Y. 2015) (Glenn, J.); *British Am. Ins. Co. Ltd.*, 488 B.R. at 223-24. Because the test for "related to" jurisdiction is satisfied, the subject matter jurisdiction inquiry ends there.[22]

---

("*Fairfield I*"), *rev'd on other grounds sub nom.*, *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665 (S.D.N.Y. 2011) ("*Fairfield II*"). Although Judge Preska reversed Judge Lifland's decision denying those motions and remanded the matter to this Court for further proceedings, Judge Preska did not disturb Judge Lifland's ruling on "related to" jurisdiction. *See Fairfield II*, 458 B.R. at 689 ("The Court need not address whether 'related to' jurisdiction exists in these cases because even if it does, the Bankruptcy Court must reconsider abstaining these cases for the reasons that follow."). Judge Lifland's finding of subject matter jurisdiction in *Fairfield I* is correct and should be followed here.

[21] Although *Parmalat* involved a proceeding under Section 304 (Chapter 15's predecessor), courts have consistently applied the decision in the context of a Chapter 15 case and treated the foreign estate of the debtor in such a case as the "estate" for purposes of the "conceivable effect" inquiry. *See, e.g.*, *Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Luxembourg) II SCA)*, 524 B.R. 488, 515 (Bankr. S.D.N.Y. 2015) ("*Hellas I*") (Glenn, J.) (applying *Parmalat*); *cf. British Am. Ins. Co. Ltd. v. Fullerton (In re British Am. Ins. Co. Ltd.)*, 488 B.R. 205, 224 (Bankr. S.D. Fla. 2013) ("The Court may also define the extent of related to jurisdiction in chapter 15 cases by the potential effect of the action on the estate administered in the foreign proceeding."). Defendants do not dispute this.

[22] Defendants briefly suggest that, even if the "related to" test is satisfied under *Parmalat*, the exercise of subject matter jurisdiction may not comport with Article III of the U.S. Constitution because the Actions purportedly "do not implicate the laws of the United States." Def. 21-22. But Defendants cite nothing to support that proposition, and it is incorrect: the case implicates Chapter 15, which is part of the laws of the United States. That does not automatically mean, as Defendants suggest, that "a bankruptcy court has jurisdiction over any action commenced by a foreign representative solely by virtue of Chapter 15 recognition." Def. 22 n.16. Rather, to qualify for "related to" jurisdiction, the Actions, as with *any* action brought in connection with *any* bankruptcy case (including a Chapter 7

**B.     Defendants' Arguments Against Subject Matter Jurisdiction Are Unavailing.**

Defendants attempt to sidestep the straightforward Section 1334(b) jurisdictional analysis by arguing that (i) the Actions are not "core" proceedings; (ii) the Actions will not affect the Funds' estates without a separate proceeding; and (iii) the assets at issue are not located in the United States. *See* Def. 17-23. These arguments have no impact on the Court's jurisdiction.

1.     The District Court's Decision On "Core" Jurisdiction Does Not Defeat Subject Matter Jurisdiction.

The District Court's ruling in *Fairfield II* that the Actions are not "core" proceedings does not affect the conclusion that the Court has subject matter jurisdiction. That ruling, made in connection with certain Defendants' since-withdrawn remand and abstention motions,[23] concerns the "allocat[ion of] authority to enter final judgment between the bankruptcy court and the district court"; it "*does not implicate questions of subject matter jurisdiction*." *Stern v. Marshall*, 564 U.S. 462, 480 (2011) (emphasis added); *see also Hellas I*, 524 B.R. at 515-16 ("[W]hether this Court has the authority to enter a final judgment on the Plaintiffs' claims does not affect the Court's jurisdiction to consider the claims and enter a non-final judgment."). "Saying only that a matter is not core fails to answer the jurisdictional question." *In re British Am. Ins. Co.*, 488 B.R. at 234.[24]

---

or 11 case), a Chapter 15 case must meet the "conceivable effect" test—as the Actions clearly do. Moreover, the relief and assistance sought in this Court in connection with the BVI Avoidance Claims directly implicate the "appropriate relief" available under Section 1521(a). *See, e.g.*, *Fogerty v. Petroquest Res., Inc. (In re Condor Ins. Ltd.)*, 601 F.3d 319, 322, 329 (5th Cir. 2010) (holding that bankruptcy court had authority to grant relief under Nevis avoidance law pursuant to Section 1521(a)).

[23] *See Notice of Withdrawal of Motions to Remand and for Abstention*, dated Jan. 13, 2017 [ECF No. 954].

[24] Plaintiffs sought leave to appeal *Fairfield II* to the Second Circuit, but the Second Circuit denied the petition "without prejudice to the parties seeking leave to appeal after all proceedings before the bankruptcy court and district court have been completed with respect to whether mandatory abstention is appropriate." *Fairfield Sentry Ltd. v. HSBC Private Bank (Suisse) SA, et al.*, No. 11-4425-mb, Doc. No. 52 (2d Cir. Mar. 1, 2012). Because the remand motions have all recently been withdrawn by the relevant Defendants, an appeal has now become moot. For the

2.    Plaintiffs Will Not Need To Commence A Separate Proceeding For The
      Actions To "Conceivably Effect" The Debtors' Estates.

Defendants' argument that "related to" jurisdiction does not exist because "another action would need to be filed before the current action could affect a bankruptcy proceeding," *see* Def. 22, is wrong.   As explained at Part III-E, *infra*, this Court can grant full relief on the BVI Insolvency Claims.   At most, the Foreign Representatives, in certain cases, may need to commence an enforcement proceeding overseas (if they are unable to enforce judgment here[25]) to collect on a judgment entered by this Court—a far cry from the "entirely separate action" Defendants imagine (at 22).   *Cf. Morton v. Nat'l Bank of N.Y.C. (In re Morton)*, 866 F.2d 561, 565-66 (2d Cir. 1989) (finding renewal of a judgment lien to be "continuation" of an action).

Even assuming that the Foreign Representatives would need to seek further or additional relief before the BVI Court following judgment on the BVI avoidance claims in these Actions, the liberal test for "related to" jurisdiction would *still* be satisfied because these Actions plainly "could alter the debtor's rights, liabilities, options, or freedom of action" and impact "the handling and administration of the bankruptcy estate."   *See Joremi Enters., Inc. v. Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) (Bernstein, J.).   The possibility of future judgment enforcement proceedings or other proceedings following judgment by this Court plainly does not change the "conceivable effect" analysis under *Parmalat*.[26]

---

avoidance of doubt, Plaintiffs reserve all rights as to whether the Actions are "core" proceedings either as a statutory or constitutional matter.  But that issue need not be reached to determine that subject matter jurisdiction exists here.

[25] Such enforcement proceedings will not be necessary as to Defendants that have U.S. bank accounts or other U.S. assets, even if those Defendants are foreign residents or domiciles.

[26] The Third Circuit authorities Defendants cite (at 22) involved litigation between non-debtor parties where the sole basis for asserting "related to" jurisdiction was the possibility of an indemnification claim that might later have been asserted against the debtor.  *See W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164, 172 (3d Cir. 2009) (to trigger estate liability, non-debtor party "would first have to be found liable by its state courts and would then have to successfully bring an indemnification claim or contribution claim against [the debtor] in the Bankruptcy Court"); *In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368, 382 (3d Cir. 2002) ("any indemnification claims

3.    The Location of the Assets Is Irrelevant to Subject Matter Jurisdiction.

Nothing in Section 1334(b) or Chapter 15 supports, and *Parmalat* effectively precludes, Defendants' argument that the Court's authority extends only to proceedings seeking the recovery of U.S. assets.[27]    That argument confuses the limits of *in rem* jurisdiction over the *debtor's* assets in a Chapter 15 case with the separate matter of federal subject matter jurisdiction over a proceeding.    The Court should reject it.

To be sure, in a Chapter 15 case, U.S. courts can generally only exercise *in rem* jurisdiction over the debtor's U.S.-sited property.[28]    Various provisions of Chapter 15 accomplish that limitation by using the phrase "within the territorial jurisdiction of the United States," which Congress defined in Section 1502(8).    *See* 11 U.S.C. §§ 1520(a)(1), 1520(a)(2), 1521(a)(5), 1528; *see also* 11 U.S.C. §§ 1519(a)(2), 1521(b) (similar); Leif M. Clark, *Ancillary & Other Cross-Border Insolvency Cases Under Chapter 15 of the Bankruptcy Code* § 4[8], at 33 (2008) (explaining that the phrase differentiates "the limited scope of chapter 15 jurisdiction

---

that [] defendants might have against Debtors have not yet accrued").    Those cases are inapposite and, in any event, have been rejected in this Circuit.    *See Bank of Am., N.A. v. Wilmington Tr. FSB*, 943 F. Supp. 2d 417, 425 (S.D.N.Y. 2013) ("The fact that this indemnification (or lack thereof) is not a certainty does not preclude the Court from finding 'related to' jurisdiction."); *In re Commc'ns, Inc*, 452 B.R. 21, 29 (S.D.N.Y. 2011) ("Prior to the issuance of the Third Circuit's decision in *W.R. Grace*, several of my Southern District colleagues rejected the pre-*Grace* Third Circuit law on which that decision is based . . . the Second Circuit, if directly confronted with the question, is more likely to decide that a bankruptcy court has "related to" jurisdiction to enjoin non-debtor litigation if the bankruptcy estate may be obligated to indemnify or contribute to the losing party.").    Here, the Actions assert claims by or directly on behalf of the Debtors for the benefit of the Debtors' estates, bringing them squarely within "related to" jurisdiction.    *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995) ("Proceedings 'related to' the bankruptcy include [] causes of action owned by the debtor which become property of the estate.").

[27] Defendants' characterization (at 20) of *Parmalat* as requiring that the proceeding at issue "implicat[e] U.S.-based assets" is incorrect.    Nothing in *Parmalat* speaks to such a limitation.    Defendants also cite *JCPL Leasing Corp. v. Treco (In re Treco)*, 227 B.R. 343 (Bankr. S.D.N.Y. 1998), a pre-*Parmalat* decision that involved a Section 304 proceeding, for the proposition that "related to" jurisdiction does not exist where claims do not seek to recover or otherwise implicate the foreign debtor's U.S. assets.    *See* Def. 21.    That notion cannot survive *Parmalat*, as the court did not apply the "conceivable effect" test in the manner instructed by *Parmalat*.    *See Treco*, 227 B.R. at 349 (declining to apply "conceivable effect" test on the basis that the Section 304 proceeding did not create an estate that is administered by the U.S. court).

[28] The cases cited by Defendants (at 20) merely confirm this principle, and stand for nothing else.

from the usual extraterritorial reach of U.S. bankruptcy law" regarding the assets of the estate).

As Judge Kimball has explained, however, "none of this has anything to do with subject matter

jurisdiction." *In re British Am. Ins. Co. Ltd.*, 488 B.R. at 226. "This Court's power over assets

related to a title 11 case involves the exercise of its *in rem* jurisdiction over such assets. Whether

there is subject matter jurisdiction is *an entirely separate question* from whether there is *in rem*

or personal jurisdiction." *Id.* The Complaints here are "*in personam* actions for judgments, not

*in rem* or *quasi in rem* actions aimed at recovering specific assets." *Id.* at 235 (reviewing and

commenting on District Court's decision in *Fairfield II* that the Actions are not "core");[29] PAC

Prayer for Relief (request for judgment "allowing the Plaintiffs to recover an amount equal to the

Redemption Payments received by [Defendant]"). The subject matter jurisdiction inquiry here

thus does not implicate the scope of Chapter 15 *in rem* jurisdiction over *property of the debtor*.

If anything, the fact that this is a Chapter 15 case only *bolsters* federal jurisdiction (and

the retention thereof) over the Actions under Section 1334. When Congress enacted Chapter 15

in 2005, it did not amend Section 1334 to create any limitation—territorial or otherwise—where

the Chapter 15 case is the basis for subject matter jurisdiction. *See Morning Mist Holdings Ltd.

v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 136 (2d Cir. 2013) ("the statutory text

controls, first and ultimately"). Congress *did*, however, amend Section 1334 to preclude federal

---

[29] Thus, to the extent Defendants rely on *Fairfield II* in support of their tortured "U.S. assets" argument, such reliance is misguided. *See In re British Am. Ins. Co.*, 488 B.R. at 235 ("[t]he court in *Fairfield II* confused the court's *in rem* jurisdiction in bankruptcy matters with subject matter jurisdiction"). Nevertheless, it bears noting that the claims asserted in the Actions, in many cases, are *themselves* U.S. assets for purposes of Chapter 15. Section 1502(8) defines property of the debtor "within the territorial jurisdiction of the United States" to include "intangible property deemed located under applicable nonbankruptcy law to be located within that territory, including any property subject to attachment or garnishment that may properly be seized or garnished by an action in a Federal or State court in the United States." The claims at issue are "intangible property" and the claims that can be collected on ("attach[ed]" or "garnished") in the United States under state law (even against foreign Defendants, *i.e.*, where those defendants have U.S. bank accounts, correspondent or otherwise, or other U.S. assets) are properly deemed U.S. property. *See Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 245 (2d Cir. 2014) (holding

courts from permissively abstaining from hearing proceedings "with respect to a case under chapter 15." 28 U.S.C. § 1334(c)(1). That amendment "is consistent with Chapter 15's emphasis on concentrating the resolution of cases involving foreign bankruptcies in one court system"—*i.e.*, the *federal* court system. *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 796 F.3d 520, 525-26 (5th Cir. 2015); *see* H.R. Rep. No. 109-31(I), 110 (2005) (noting goal of Chapter 15 "to concentrate control of these questions [of ancillary assistance] in one court").[30]

Defendants' position would bar a recognized foreign representative from pursuing *any* claim seeking money damages (*i.e.*, any *in personam* claim) in U.S. federal court based on Section 1334 jurisdiction (as such a claim would not be seeking the recovery of specific U.S. assets). That result would not only be inconsistent with Section 1334 and Second Circuit precedent, but would also frustrate a key purpose of Chapter 15: granting a foreign representative full access to United States courts, including federal courts, in order to seek ancillary assistance. *See* 11 U.S.C. §§ 1509(b)(1)-(3) (upon recognition, foreign representative "has the capacity to sue and be sued in a court in the United States" and "may apply directly to a court in the United States for appropriate relief," and "a court in the United States shall grant comity or cooperation to the foreign representative"); *In re OAS S.A.*, 533 B.R. 83, 99 (Bankr. S.D.N.Y. 2015) (Chapter 15 recognition "unlocks the foreign representative's access to courts in the United States, [and] once the door is unlocked, the access is complete.").

---

that Sentry's SIPA claim is U.S. property under Section 1502(8) because the SIPA Trustee, the party obligated to make distributions on that claim, is located in New York and those distributions can be attached or garnished there).

[30] The "with respect to a chapter 15 case" carve-out in Section 1334(c)(1) applies to "*both the Chapter 15 case itself and cases 'arising in or related to' Chapter 15 cases . . . .*" *Firefighters' Ret. Sys*, 796 F.3d at 526 (emphasis added); *see also Hosking v. TPG Capital Mgmt., L.P.* (*In re Hellas Telecomms. (Luxembourg) II SCA*), 535 B.R. 543, 588 (Bankr. S.D.N.Y. 2015) ("*Hellas III*") (same); *Fairfield I*, 452 B.R. at 83 (similar)).

24

In sum, where, as here, the court "has subject matter jurisdiction over a dispute, has personal jurisdiction or *in rem* jurisdiction sufficient to support the action, and the action is not subject to abstention or remand or the limitations of section 1506, [the] Court should exercise that subject matter jurisdiction to assist the foreign proceeding.  This is consistent with the primary goal of chapter 15." *In re British Am. Ins. Co. Ltd.*, 488 B.R. at 236.[31]

## III.    The BVI Insolvency Act Claims Are Adequately Pled.

Plaintiffs have pled facts sufficient to state plausible claims for unfair preference and undervalue transaction under BVI Insolvency Act Sections 245 and 246, and Defendants' arguments to the contrary should be rejected.

### A.    Defendants Were Creditors At The Time Of The Redemption Payments.

Section 245 preference claims apply to transactions between a company and a creditor of that company.  *See* BVI Insolvency Act § 245(1).  Defendants are subject to a Section 245 claim as creditors, because the Eastern Caribbean Court of Appeal ("ECCA") has unequivocally held that a member (*i.e.*, shareholder) becomes a creditor (albeit a subordinated or deferred creditor) between the time of redemption and payment.  *See Further Declaration of Gabriel Moss QC in Support of Motion for Leave to Amend*, submitted herewith ("Moss II") ¶¶ 161(a), 170-73; *Somers Dublin Ltd A/C KBCS v. Monarch Pointe Fund Ltd*, HCVAP 2011/040 (Mar. 11 2013)

---

[31] Defendants misread (at 21) *Bancredit Cayman Ltd. v. Santana (In re Bancredit Cayman Ltd.)*, No. 06-11026 (SMB), 2008 WL 5396618, at *9 (Bankr. S.D.N.Y. Nov. 25, 2008) (Bernstein, J.), to stand for the proposition that the exercise of subject matter jurisdiction here risks the U.S. becoming "collection court to the world."  The quoted language relates not to subject matter jurisdiction, but to *forum non conveniens*. *Id.*  Although certain Defendants have raised such an argument in a separate motion (to which the Liquidators will separately respond), because Defendants did not make a *forum non conveniens* in their omnibus brief, *Bancredit Cayman* is irrelevant here.

("*Monarch Point*") ("[A] redeemed member is a creditor in respect of his redemption payment

. . . ."). Accordingly, a redemption payment is a payment to a creditor.[32]

Defendants attempt to circumvent this principle by contending that "the Funds did not

enter into a transaction [for purposes of Section 245] when they made a payment, but rather when

they received a redemption request" and that, at the time of the redemption request, Defendants

were members, not creditors. *See* Def. 62-63. That argument finds no support in BVI or English

law. *See* Moss II ¶¶ 145-157. The avoidance provisions in the BVI Insolvency Act are modeled

on the UK Insolvency Act, pursuant to which payment of a debt is typically considered a transfer

that may be avoided as a preference. *See id.* ¶¶ 147-51. Defendants' interpretation of

"transaction" as used in Section 245, which relies entirely on their and their expert's say-so,

would largely deprive Section 245 of effect, as preferences are often the payment of debts already

due. *See id.* ¶ 151. The logical reading of the statute, consistent with its origins, is to include

redemption payments as preference "transactions." *See id.* ¶¶ 147-51, 155, 157.

In any event, even if the "transaction" was limited to the moment at which the redemption

was requested because, Defendants were contingent creditors. *See id.* ¶¶ 161(a), 164. A

---

[32]    Defendants contend that members and former members cannot be creditors under Section 197 of the BVI
Insolvency Act and *Westford Special Situations Funds Ltd. v. Barfield Nominees Ltd.*, HVCAP 2010/014 (Mar. 28,
2011) ("*Westford*"). *See* Def. 63 n.43. However, as the ECCA held in *Monarch Pointe*, "the purpose of Section 197
is merely to subordinate former members' claims . . . as creditor to that of ordinary unsecured (and usually external)
creditors," not to exclude former members from obtaining deferred creditor status. Moss II ¶ 179 (quoting *Monarch
Pointe*). And *Westford*, an ECCA case decided *before Monarch Pointe*, is a criticized opinion that stands for the
limited proposition that an unpaid redeemer does not have standing to apply for the appointment of liquidators—a
proposition that is irrelevant here. *See id.* ¶¶ 174-80*; see also id.* ¶ 174 n. 53 (quoting *Westford*: "The redeemed
shareholder, *notwithstanding that he is a creditor of the company in the wider sense in respect of any unpaid
redemption proceeds*, encounters a restriction on the steps he can initiate in relation to a liquidation of the
company.") (emphasis added). The ECCA clarified the point in *Monarch Pointe*, expressly stating that "a redeeming
member is a creditor in respect of his redemption payment (save for the purpose of filing an application to appoint a
liquidator)." *Id.* ¶ 177 (quoting *Monarch Pointe*). And in *Shell Pensioenfonds*, another ECCA decision issued
subsequent to *Monarch Point*, the ECCA stated: "There is no statement in *Westford* which can or should be taken to
mean that an unpaid redeemer is not a creditor of the company at all . . . ." *Id.* ¶ 176. Indeed, by stating that
"redeeming members are entitled to claim any surplus ahead of non-redeeming members," Def. 63 n.43, Defendants
are acknowledging their creditor status that creates this entitlement. *See* Moss II ¶ 173.

contingent creditor is a creditor whose debt or liability is not immediate and depends on some future event taking place. *See id.* ¶ 161(a) (citing *Re Sutherland* [1963] AC 235). Once redemptions were requested, it was inevitable that Defendants would become creditors in respect of the redemption payment as soon as the redemption took place. *See id.* Under the BVI Insolvency Act, a "liability" may be "contingent"; liabilities existing at the start of a liquidation are "admissible as claims" in the liquidation; and a "creditor" is a person who has a claim which would be an admissible claim in a liquidation. *See id.* ¶¶ 161(a), 164. Accordingly, Defendants were creditors, as holders of contingent liabilities, at the time of the redemption requests.

## B.    **Defendants Provided Insufficient Consideration.**

Because the Funds paid out cash to Defendants in exchange for valueless or near valueless shares, the redemptions at issue are undervalue transactions under Section 246. In an insolvency law avoidance claim, courts routinely rely on subsequent events to show the true value of an asset at the time of a transaction. *See* Moss II ¶¶ 245, 253, 260.[33] Just so here: the subsequent revelation of Madoff's fraud confirms that the shares were valueless or nearly so at the time of the redemptions. *See* Moss II ¶¶ 256, 262.

Defendants are wrong to contend (at 64) that the redeemed shares must have been worth the price paid by the Funds because "the Funds were willing, reasonably well-informed purchasers of the shares" and the price "represented the open market value of the shares." Value is an objective determination, so the subjective views of the Funds are irrelevant. *See* Moss II ¶¶

---

[33] *See also Phillips v. Brewin Dolphin Bell Lawrie Limited* [2001] BCC 864 (applying hindsight to determine value in connection with a UK Insolvency Act claim and explaining that it is "unsatisfactory and unnecessary for the court to wear blinkers and pretend that it does not know what has happened"); *accord Adelphia Recovery Tr. v. FPL Grp., Inc. (In re Adelphia Commc'ns Corp.)*, 512 B.R. 447, 495 (Bankr. S.D.N.Y. 2014) (Gerber, J.) (explaining that, in a solvency analysis, "courts may consider information originating subsequent to the transfer date," such as the "[s]ubsequent discovery of fraud," "if it tends to shed light on a fair and accurate assessment of the asset or liability as of the pertinent date, which assures that the valuation is based in reality") (internal quotation omitted).

239-43.  In addition, there was no "open market value of shares" because the shares were neither listed nor available for sale on any "market"—rather, the redemptions were simply non-negotiated sales back to the company.  *See id.* ¶¶ 239, 242, 263, 266.

## C.    <u>The Funds Were Insolvent At The Time Of The Redemption Payments.</u>

Under the BVI Insolvency Act, as Defendants concede (at 65 n.44), insolvency is presumed because the Defendants were members.  *See Declaration of Gabriel Moss QC in Support of Motion for Leave to Amend*, dated Oct. 21, 2016 [ECF No. 926] ("Moss I") ¶¶ 55-56; BVI Insolvency Act §§ 5(1)(b), 245(4), 246(4).  It will be Defendants' burden to rebut that presumption with contrary evidence, *see* Moss II ¶ 216; *Re Casa Estates (UK) Ltd*, [2014] 2 BCLC 49—evidence they have not presented, and that the Court should not consider at this stage in the proceedings.  *See In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014); *cf. Gordon v. Harrison (In re Alpha Protective Servs., Inc.)*, 531 B.R. 889, 898 (Bankr. M.D. Ga. 2015) (presumption of insolvency under 11 U.S.C. § 547(f) "is rebuttable, but rebutting the presumption requires the presentation of evidence, which a court is not permitted to consider at the motion to dismiss stage").[34]  Defendants are therefore left *solely* with the argument that the presumption of insolvency is rebutted on the face of the Complaints.  *See* Def. 65 n.44.  It is not.

*First*, that argument depends on Defendants' incorrect assertion (at 65-66) that the "cash-flow" insolvency test, as applied to the BVI avoidance claims, considers only "known debts"— excluding later uncovered liabilities attendant to the BLMIS fraud.  *See* Def. 65-66.  The BVI Insolvency Act neither defines "debts" nor limits the facts to be considered in the solvency determination to the facts known to the debtor.  *See* Moss II ¶¶ 184, 202.  Indeed, UK Supreme

---

[34] Pleading standards are an issue of U.S. law.  *See NCC Sunday Inserts, Inc. v. World Color Press, Inc.*, 692 F. Supp. 327, 330 (S.D.N.Y. 1988); *Hellas III*, 535 B.R. at 561-62.  Therefore, the Court should disregard the testimony of Mr. Mortimore, to the extent that he purports to opine on the sufficiency of the pleadings.

Court precedent, which BVI Courts follow, refutes Defendants' reading of the term "debt" (at 65). That precedent treats the question of solvency as "an objective one and" adds that, "as a result, there can be no relevance in what the debtor does or does not know or what he ought to have known." Moss II ¶ 202 (citing *BNY Corp. Trustee Servs. v. Eurosail UK Plc* [2013] 1 WLR 1408); *id.* ¶ 192 (explaining that *Eurosail* "made it clear that the words 'unable to pay its debts as they fall due' looks not only to the present but also to the future").

*Second*, under English authority, events after the transaction at issue can be relevant for determining solvency. *See* id. ¶¶ 206-10 (discussing *Phillips v. Brewin Dolphin Bell Lawrie Ltd.* [2001] BCC 864); *id.* ¶ 191; *Re: Cheyne Finance Plc (2)* [2007] EWHC 2402 (Ch) ("The question of whether a company was able to pay its debts as they fell due was a question of fact to be decided as *a matter of commercial reality in light of all the circumstances.*" (emphasis added)). Indeed, a recent UK Court of Appeals decision recognizes that, consistent with U.S. law, Ponzi schemes are at all times insolvent "in any commercial sense . . . *whether on a cash flow basis or a balance sheet basis.*" *See* Moss II ¶¶ 195-97 (citing *Re Casa Estates (UK) Ltd*, [2014] 2 BCLC 49) (emphasis added)).[35] The Funds, although not Ponzi schemes themselves, relied on the assets of Madoff's Ponzi scheme to pay their debts as they fell due, and, thus, were insolvent "in any commercial sense." *See* Moss II ¶ 198; *see also id.* ¶ 213; *accord Peterson v. Ritchie Capital Mgmt., LLC (In re Lancelot Inv'rs Fund, L.P.)*, No. 08 B 28225, 2012 WL 718631, at *1-2, 7-8 (Bankr. N.D. Ill. Mar. 2, 2012) (allegations that bulk of debtors' assets consisted of nearly worthless notes issued from a Ponzi scheme sufficiently pled insolvency).

---

[35] *See also Cunningham v. Brown*, 265 U.S. 1, 8 (1924) (explaining that due to his fraudulent scheme, Charles Ponzi "was always insolvent, and became daily more so, the more his business succeeded"); *Picard v. Madoff (In re Bernard L. Madoff Inv. Secs. LLC)*, 458 B.R. 87, 110 n.15 (Bankr. S.D.N.Y. 2011) ("Ponzi schemes are, by definition, at all times insolvent.").

29

*Third*, even if contingent liabilities of the Funds (*i.e.*, their clawback liability to the BLMIS Trustee) were excluded from the solvency analysis, the Funds were insolvent because they incurred liability to BLMIS investors *at each moment* the Funds redeemed monies from BLMIS. Those other BLMIS investors were creditors of BLMIS because, although they did not yet know it because the fraud was yet uncovered, they held tort claims for rescission and fraudulent inducement.[36] As creditors, BLMIS investors held claims for actual fraudulent transfer, and potentially for constructive fraudulent transfer, under the New York Debtor and Creditor Law to recover redemption payments made to Sentry and subsequently transferred to Sigma and Lambda.[37] Under U.S. law, these claims were non-contingent debts at the time of the redemption transfer because, at that time, all events giving rise to liability under state fraudulent transfer law had occurred.[38] That liability rendered the Funds unable to pay their debts as they fell due when the redemption payments were made to Defendants. *See Moss II* ¶ 200.

---

[36] *See Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 428 (S.D.N.Y 2006); *In re Bayou Grp., LLC*, 372 B.R. 661, 665 (Bankr. S.D.N.Y. 2007); *see also Long Island Lighting Co. v. Transam. Delaval, Inc.*, 646 F. Supp. 1442, 1449 (S.D.N.Y. 1986) (fraudulent inducement claim accrues "when the [contract] is executed and when the party alleging fraud has given consideration and thus suffered damage") (citation omitted); *DeMille v. DeMille*, 774 N.Y.S.2d 156, 157 (N.Y. App. Div. 2d Dep't 2004) (action for rescission accrues once agreement is executed).

[37] BLMIS investors could pursue actual fraudulent transfer claims by alleging fraudulent intent, which is presumed in the context of a Ponzi scheme. *See, e.g.*, *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011). BLMIS investors could also pursue constructive fraudulent transfer claims by alleging that BLMIS was insolvent and that the Funds had constructive knowledge of the fraud. *See, e.g.*, N.Y. Debt. & Cred. Law § 274 (transfers are constructively fraudulent when made without fair consideration and the transferor is insolvent); *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. at 110 n.15 (Bankr. S.D.N.Y. 2011) (explaining that Ponzi schemes are always insolvent); *Gowan v. Westford Asset Mgmt. LLC (In re Dreier LLP)*, 462 B.R. 474, 488-89 (Bankr. S.D.N.Y. 2011) (holding that a transfer is not for "fair consideration" under the N.Y. Debtor and Creditor Law if the transferee has actual or constructive knowledge of the transferor's fraudulent intent).

[38] *See Lippe v. Bairnco Corp.*, 99 Fed App'x 274, 282 (2d Cir. 2004) (noting that once a cause of action accrues, liability for that cause of action is an "existing debt" to be included in the solvency calculation under the N.Y. Debtor and Creditor Law); *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 303 (2d Cir. 1997) (holding that debtor's liability to taxing authority became noncontingent upon his nonpayment of taxes because all events giving rise to liability had occurred); *Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 173-74 (W.D.N.Y. 2003) (including liability for cause of action that had accrued but not yet been filed in the solvency determination under N.Y. Debtor and Creditor Law); *In re Kaufman*, 93 B.R. 319, 322-23 (Bankr. S.D.N.Y. 1988) (holding that liability was triggered by events that had already occurred, so debt was noncontingent despite dispute over whether debtor was, in fact, liable). The same is true for rescission clams of investors in a Ponzi

### D.    Defendants' Affirmative Defenses Are Meritless And Premature.

Because members like Defendants are "connected persons" under the BVI Insolvency Act, BVI law presumes that the transactions at issue (1) were *not* in the ordinary course of business (for purposes of the Section 245 claim), and (2) were *not* good faith business transactions (for purposes of the Section 246 claim). *See* Moss II ¶¶ 222, 269. Defendants cannot, as they must at the motion to dismiss stage, rebut those presumptions based on the Complaints' allegations. *See Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

### 1.    Ordinary Course Defense

The redemptions were not, as Defendants argue (at 67), made in the ordinary course of business. It is far from a "normal good faith commercial transaction," *see* Moss II ¶ 229(c) (discussing *Re Casa Estates (UK) Ltd* [2014] 2 BCLC 49), for investment companies, such as the Funds, to make "payments out of sums calculated on the basis of fraudulent and non-existent assets." *Id.*[39] Defendants' argument (at 67) that these allegations constitute improper hindsight contradicts English law, which focuses on "substance rather than the outward appearance" and "commercial realities" in evaluating whether a transaction was in the ordinary course of business. Moss II ¶¶ 226, 227 n.58 (quoting *Aveling Barford Ltd v. Perion Ltd & Ors*, [1989] 5 BCC 677 (Hoffman J) and *In the matter of Wyser-Pratte Eurovalue Fund, Ltd.*, FSD 167 of 2010 (Grand Court of the Cayman Islands); *accord Orr v. Kinderhill Corp.*, 991 F.2d 31, 35-36 (2d Cir. 1993)

---

scheme, which, of course, are never filed before the scheme is uncovered (because the defrauded investors do not know they have such claims while the scheme remains in operation). But that does not render those claims contingent or otherwise non-existent for purposes of a solvency analysis. *See supra* at n.36.

[39] That is in accord with U.S. law holding that transfers related to fraudulent schemes are outside the ordinary course of business for purposes of a Section 547 preference claim. *See Henderson v. Buchanan*, 985 F.2d 1021, 1025 (9th Cir. 1993) ("[A] Ponzi scheme is not a business, and . . . transfers related to the scheme are not within the 'ordinary course of business.'") (internal quotations omitted); *Graulty v. Brooks (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*, 819 F.2d 214, 217 (9th Cir. 1987). Here, while the Funds were not themselves operated as a Ponzi scheme, they were almost entirely reliant on one (*i.e.*, BLMIS) to operate their business. *See* PAC ¶¶ 2-3.

(explaining that fraudulent conveyance law looks to the substance of a transaction over its form so as not to "deny economic reality"). Accordingly, "it is entirely permissible and appropriate to regard the transactions as they actually were, *i.e.*, by reference to the facts as they actually stood rather than fiction." Moss II ¶ 231. That the true facts became known only after the transactions occurred is no basis for the Court to "wear blinkers and pretend that it does not know what has happened." *Id.* ¶ 206 (quoting *Phillips v Brewin Dolphin Bell Lawrie Limited* [2001] BCC 864).

Defendants' position is also irreconcilable with their contention (at 54-55) that the wrongdoing of the Funds' agents (*i.e.*, FGG and Citco) should be imputed to the Funds. Their argument that the ordinary course defense is established on the face of the Complaints disregards that *Defendants themselves argue* that the complaints' allegations establish that the Funds, through the operation of their business, "intentionally cover[ed] up the largest Ponzi scheme in history in exchange for higher fees." *See* Def. 55. Defendants cannot have it both ways.

2.    Good Faith Defense

Defendants' good faith defense rewrites or ignores the Complaints' allegations in much the same way. As the Complaints detail, Defendants were paid sums in respect of non-existent assets. That conduct cannot fall within the rubric of "good faith" as understood in BVI law. *See* Moss II ¶¶ 273; 229(c) (explaining that the *Re Casa Estates (UK) Ltd* opinion supports a determination that payment out of fictitious profits using defrauded investors' monies cannot be described as a "normal good faith commercial transaction"). Neither could the Funds have reasonably believed that paying wildly inflated prices for valueless or near-valueless shares, as the Complaints describe, would benefit the Funds. *See id.* ¶ 274. And, again, Defendants' effort to paint the Complaints' allegations as improper hindsight conflicts with established English and BVI law (as well as with U.S. law). *See* id. ¶¶ 271, 273. Furthermore, Defendants' arguments

32

for imputation of the wrongdoing of the Funds' agents again refute their position that the redemption transactions were performed in good faith and intended to benefit the Funds.

And even without regard for subsequently known facts, Defendants *still* fail to establish how the redemption transactions were intended to "benefit the company."  That they involved compliance with an existing "contractual obligation," Def. 69, merely reflects, *at best*, an intent to be neutral in effect.  *See Moss II* ¶ 270.  Far from establishing the defense, the Complaints demonstrate that the redemption transactions fall well outside of its scope.  *See id.* (*citing Palmer's Company Law* and explaining that the purpose of the good faith exception is "to enable those running a struggling company to enter into transactions at what would otherwise be regarded as unfavourable terms in order to keep the company going").

### E.    This Court Can Grant Relief On The BVI Insolvency Act Claims.

Because this Court has subject matter jurisdiction, it plainly has the power to resolve the BVI Insolvency Act claims.  Furthermore, (i) nothing in the BVI Insolvency Act purports to restrict this Court from granting the requested relief; and (ii) the statutory avoidance provisions in section 245 and 246 have extraterritorial effect.  *See Moss II* ¶¶ 276, 285, 289.

In arguing to the contrary, Defendants note (at 69) that Section 249 of the BVI Insolvency Act lists possible remedies that the "Court" may adopt, and assert, incorrectly, that Section 2(1) defines Court to mean "BVI Court."  In fact, the definition of "Court" does not distinguish BVI courts from foreign courts; rather, that provision is a procedural venue statute that allocates the power to decide claims like these within the BVI court system.  *See Moss II* ¶ 278.  The "Court" that Section 249 empowers to grant relief is the "High Court," not BVI courts generally.  *See id.* And the purpose of identifying the "High Court" is to ensure that cases are brought there and not in the BVI Magistrates' Court.  *See id.*  However, "[t]he fact that it is clear that the statutory

33

avoidance provisions are intended to have effect without territorial limitation . . . strongly supports the proposition that BVI law would have no difficulty with those provisions being applied by foreign courts in aid of a BVI insolvency." *Id.* ¶ 289.[40]

In *Hellas*, Judge Glenn rejected much the same argument that Defendants raise here. *Hellas* involved a parallel statute under the UK Insolvency Act, which provided that only the High Court of Justice of England or Wales or another court with jurisdiction to wind up the debtor could grant relief under the Act's avoidance claims. *See Hellas III*, 535 B.R. at 563; Moss II ¶ 280. The Court determined that the statute "appears to be a procedural venue provision" and held that "[w]hile the Court is bound to apply the substantive law of the UK to adjudicate the [UK law avoidance] claim, it is not bound to follow UK procedural law." *Hellas III*, 535 B.R. at 566. The Court also held that, even if the venue statute "were an exclusive jurisdiction provision, [the] Court is not bound to enforce it." *Id.* at 567 (citing circuit court authorities and the Restatement (Second) of Conflict of Laws). The same result obtains here.[41]

To hold otherwise would frustrate the "primary purpose" of Chapter 15: "to facilitate the consolidation of multinational bankruptcies into *one single proceeding*." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 30 (2d Cir. 2017) (emphasis added); *see also Fairfield II*, 458 B.R. at

---

[40] The fact that the grant of remedies in Section 249 is subject to the exercise of discretion does not mean that discretion cannot be exercised by a foreign court. *See id.* ¶ 302 (discussing *England v. Smith* [2001] Ch 419, where the English court exercised an Australian Insolvency Law discretion pursuant to Australian law).

[41] *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330 (9th Cir. 2015), does not (as Defendants suggest at 70 n.46) compel any other result. There, a counterclaim for shareholder oppression under section 242 of the Alberta Business Corporations Act was dismissed because the act vested exclusive jurisdiction in the Queen's Bench of Alberta. *Seismic Reservoir*, 785 F.3d at 336. However, the *Hellas* court distinguished *Seismic Reservoir* on three grounds, all of which apply here. *See Hellas III*, 535 B.R. at 569-70. First, the provision at issue in *Seismic Reservoir* plainly was an exclusive jurisdiction provision, rather than the venue provisions at issue here and in *Hellas*. *See id.* Second, it was also not clear that the Alberta Business Corporations Act applied extraterritorially, whereas avoidance claims under the UK Insolvency Act do, as do avoidance claims under the BVI Insolvency Act. *See id.* at 570; Moss II ¶ 276. Third, *Seismic Reservoir*, unlike *Hellas* and the current proceedings, did not involve a Chapter 15 case, "the purpose of which is to provide means to facilitate cooperation between U.S. and foreign courts and efficiently administer cross-border insolvencies." *See Hellas III*, 535 B.R. at 570.

678-79 ("[A] Chapter 15 court in the United States acts as *an adjunct or arm* of the foreign bankruptcy court . . . to maximize assistance to the foreign court conducting the main proceeding.") (emphasis added).  That is why Chapter 15 gives U.S. courts the authority to grant relief under foreign insolvency law as a means of assisting the main insolvency proceeding.  That principle is confirmed by the numerous instances where U.S. courts have granted relief, or held that they can grant relief, under foreign avoidance law.[42]

Finally, the BVI Court's *dicta* in the Section 273 Judgment does not preclude the Court from granting relief.  That Court held that it is *for this Court* to determine "whether it can and chooses to entertain any of the BVI Insolvency Act Claims . . . ."[43]  For the reasons explained above, the Court can and should.  *See In re Fairfield Sentry Ltd.*, 768 F.3d at 246 & n.2 (explaining that where the BVI Court's judgment left an issue open for the U.S. Bankruptcy Court to decide, "it is not apparent at all that the BVI Court even expects or desires deference").

## IV.    The Common Law Claims Are Adequately Pled.

### A.    The Privy Council Judgment Does Not Make Amendment Futile.

The Privy Council Judgment does not preclude the Liquidators from pursuing their common-law claims.  Article 11 of the Funds' Articles, which governs determination of NAV, imposes at least two independent requirements for a NAV determination to be "binding on all parties":  (i) a "certificate" must be given "by or on behalf of the Directors," and (ii) that

---

[42] *See, e.g.*, *In re Condor Ins. Ltd.*, 601 F.3d at 329 (bankruptcy court had authority to grant relief under Nevis avoidance law pursuant to Section 1521(a)); *Hellas III*, 535 B.R. at 568 (granting motion to amend complaint to include fraudulent transfer and fraudulent trading claims under the U.K. Insolvency Act 1986); *In re Nortel Networks, Inc.*, 469 B.R. 478, 516-17 (Bankr. D. Del. 2012) (denying motion to dismiss, *inter alia*, claim for transaction at undervalue under UK Insolvency Act 1986 and similar claim for fraudulent dispositions under Irish Companies Act 1990); *In re Kojima*, 177 B.R. 696, 701-02 (Bankr. D. Colo. 1995) (denying motion to dismiss avoidance claims under Bankruptcy Law of Japan); *Metzeler v. Bouchard Transp. Co. (In re Metzeler)*, 78 B.R. 674, 677-78 (Bankr. S.D.N.Y. 1987) (denying motion to dismiss avoidance claims under German Bankruptcy Act).

[43] *Declaration of William Hare in Support of Motion for Leave to Amend*, dated October 21, 2016  [ECF. No. 925] ("Hare Decl."), Ex. S ¶ 113 (Mar. 11, 2016 Judgment of Leon, J.).

certificate must be made in "good faith." *See* Fairfield Sentry Ltd.'s Memorandum of Association and Articles of Association ("Article(s)") 11(1), attached to the Hare Decl., as Ex. F.[44]  The Liquidators' proposed amended claims for breach of contract, unjust enrichment, mistaken payment, money had and received, and constructive trust (collectively, the "Common Law Claims") raise issues of contract construction arising from the bad faith of Citco in its role as the Funds' administrator (the "Bad Faith Issues") including whether (i) a NAV certificate issued under Article 11 binds the Funds even if it can be shown that it was not issued (or received) in "good faith," and (ii) whether an implied right of restitution or recovery exists with respect to an overpayment made pursuant to a NAV certificate issued (or received) in bad faith.

The Privy Council Judgment simply did not resolve the Bad Faith Issues.  Defendants' contrary reading ignores that proceeding's intentionally limited scope.  Further, their argument rests on the notion that U.S. law determines the Privy Council Judgment's preclusive effect.  But black-letter law confirms that English/BVI law governs that issue—and that the judgment does not preclude the Liquidators' claims.

 1.   English/BVI Law Governs The Preclusive Effect of the Privy Council Judgment.

English/BVI law governs the Privy Council Judgment's preclusive scope.  Federal courts sitting in diversity apply the forum state's choice-of-law rules to decide the scope of a foreign judgment.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-98 (1941); *see also Pallen v. Allied Van Lines, Inc.*, 223 F. Supp. 394, 395-96 (S.D.N.Y. 1963) (applying New York choice of law rules to identify Florida law as governing preclusive effect of Florida judgment).

---

[44] The provision, which is found in the Articles of each Fund, reads in its entirety as follows:  "Any certificate as to the Net Asset Value per Share or as to the Subscription Price or Redemption Price therefor given in good faith by or on behalf of the Directors shall be binding on all parties." Article 11(1).

And ample precedent confirms that *Klaxon* governs cases grounded on bankruptcy jurisdiction absent a significant federal policy that demands otherwise. *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 606 (2d Cir. 2001).[45] Defendants identify no such policy, and none exists.

New York's choice of law rules, in turn, compel the conclusion that English/BVI law governs. Many cases confirm that, "to determine the preclusive effect of a foreign court's judgment, courts must look to the law of the foreign jurisdiction." *GATX Flightlease Aircraft Co. v. Airbus S.A.S.*, 15 Misc. 3d 1143(A), 841 N.Y.S.2d 820 (Table), at *5 (Sup. Ct. N.Y. Cty. 2007), *aff'd sub nom. In re GATX Flightlease Aircraft Co. Ltd.*, 40 A.D.3d 445 (1st Dep't 2007);[46] *see also Kim v. Co-op. Centrale Raiffeisen-Boerenleebank B.A.*, 364 F. Supp. 2d 346, 349 (S.D.N.Y. 2005); *Voreep v. Tarom Romanian Air Transp.*, No. 96 CIV. 1384 (LMM), 1999 WL 311811, at *3 (S.D.N.Y. May 18, 1999). Indeed, applying the ordinary principle that "the law of the rendering jurisdiction" fixes the boundaries of its judgments, *see Langerman v. Langerman*, 303 N.Y. 465, 473-74 (1952), courts routinely deny foreign judgments greater preclusive effect than they would have under foreign law. *Mashreqbank PSC v. Ahmad Hamad Algosaibi & Bros. Co.*, 40 Misc. 3d 1214(A), 975 N.Y.S.2d 710 (Table), at *3 (Sup. Ct. N.Y. Cty. 2013); *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 313 n.7 (S.D.N.Y. 2001); *GATX Flightlease*, 15 Misc. 3d 1143(A), 841 N.Y.S.2d 820 (Table), at *5; *Schoenbrod v. Siegler*, 230

---

[45] *In re Trinsum Grp., Inc.*, 460 B.R. 379, 389, 394-95 (Bankr. S.D.N.Y. 2011) (applying New York choice of law to select law governing state-law constructive fraudulent transfer claim and unjust enrichment claim); *Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 346 (Bankr. S.D.N.Y. 2010) (applying New York choice of law to select law governing breach of fiduciary duty claim); *Pereira v. Marshall & Sterling, Inc. (In re Payroll Exp. Corp.)*, No. 92-B-43150(CB), 2005 WL 2438444, at *15 (Bankr. S.D.N.Y. Mar. 30, 2005) (applying New York law to select governing contract and tort law).

[46] The court in *GATX Flightlease* noted that, although some New York courts have applied New York preclusion rules to foreign country judgment, "those courts generally have not discussed whether there was a conflict between the jurisdictions or whether the parties had raised choice of law as an issue in the first place." *GATX Flightlease*, 15 Misc. 3d 1143(A), 841 N.Y.S.2d 820 (Table), at *6. Notwithstanding those cases, the court concluded that, New York's choice of law rules require a court to apply the preclusion law of the foreign jurisdiction, and that "[t]o hold otherwise would only promote forum shopping and exhibit[] a disrespect for the principles underlying comity." *Id.*

N.E.2d 638, 641 (N.Y. 1967).[47]  Because English law would govern the preclusive effect of the

Privy Council Judgment in BVI courts, it governs its preclusive effect here, as well.

### 2.    The Privy Council Judgment Does Not Itself Foreclose the Claims.

Defendants cannot carry their burden to prove that, even after giving the Liquidators "the

benefit of every favorable inference," the Privy Council Judgment precludes the Liquidators'

claims. *Mashrequbank PSC*, 40 Misc. 3d 1214(A), 975 N.Y.S.2d 710 (Table), at *3.[48]    The

Privy Council Judgment was the final appeal from a preliminary issues proceeding.    The

preliminary issues procedure, which has no exact analog in U.S. law, is a case management tool

the court may use to resolve any given issue separately from all others. *See* Hare Decl. ¶ 23.  Its

salient feature is precisely its limited scope—it is not a plenary trial of all issues, and makes no

claim to resolve anything beyond the narrow issue(s) presented. *See id.* ¶¶ 23, 28.

Mr. Moss has stated the actual, express holdings of the Privy Council Judgment:

(i)    "to the extent that the payments made . . . by the Funds constituted payment of sums that it was legally obliged to pay, the payments cannot be recovered", [PCJ at ¶ 18]

(ii)    "whether or not the sums paid by the Funds represent sums contractually due depends on the certification provisions in the Articles", [PCJ at ¶ 24], and

---

[47] As their sole authority for their erroneous assertion, Defendants cite *Alfadda v. Fenn*, 966 F. Supp. 1317 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 41 (2d Cir. 1998), a case that predates *Gaston & Snow*.  In addition to being superseded, *Alfadda* involved only federal claims and thus does not implicate *Erie* considerations.  The *Alfadda* court observed that, to determine the preclusive effect of a foreign court judgment, a "federal court should normally apply either federal or state law, depending on the nature of the claim." *Id.* at 1329. This statement is entirely consistent with the rule that a federal court adjudicating claims that do not arise under federal law must apply the substantive law of the forum. *Alfadda* by no means even suggests that "state law" refers to state law *excluding* state choice of law principles.  Indeed, *Alfadda* has been interpreted, correctly, to mean state law including choice of law rules. *Voreep*, 1999 WL 311811, at *3 (citing *Alfadda* as authority for applying New York choice of law rules to conclude that the preclusive effect of a Romanian judgment would be determined under Romanian law).

[48] *See also Marine Tr. Corp. v. Switzerland Gen. Ins. Co.*, 263 N.Y. 139, 147 (1933); *Motrade v. Rizkozaan, Inc.*, No. 95 CIV. 6545 (DC), 1998 WL 108013, at *4 (S.D.N.Y. Mar. 11, 1998) (same); *accord Kim*, 364 F. Supp. 2d at 349 (applying the same standard in federal court on Rule 12 motions to dismiss); *Barnes v. Pozzi*, No. 10 CIV. 2554 JGK, 2012 WL 3155073, at *7 (S.D.N.Y. Aug. 3, 2012) (denying motion to dismiss due to failure of defendants to meet their burden to show preclusive effect under the applicable collateral estoppel law).

    (iii)    "the documents sent out by Citco constituted 'certificates' for the purposes of Article 11(1) of the Articles". [PCJ at ¶ 30].

Moss II ¶ 50.  The Privy Council accordingly had no occasion to resolve the implications of a certificate that was issued in bad faith and, so, failed to comply with the contract.  *Id.* ¶¶ 19, 51.

Further, for two reasons, the Court should reject Defendants' position (at 53-54) that the BVI Court's "good consideration" ruling and the affirmance of that ruling by the EC Court of Appeals means that the "good consideration" judgments independently give rise to preclusion. *First*, the Privy Council Judgment supersedes the judgment of EC Court of Appeal, exactly as in the U.S. the decision of an appellate court affirming an opinion of the lower court on different grounds supersedes the holdings of the lower court.  *See* Moss II ¶ 13 & n.2 ("Where a judgment is affirmed on appeal, the judgment below ceases to be a source of *res judicata*") (citing authority).[49]  The Privy Council's dismissal of the Liquidators' appeal from the EC Court of Appeals by no means implies that the Privy Council adopted the *ratio decisis* of the EC Court of Appeal.  *See* Moss II ¶¶ 12-14, 18; *see also id.* ¶ 53.  The only relevant judgment from the preliminary issues proceeding is that of the Privy Council.

*Second*, in answering the certification question, the Privy Council acknowledged the supposedly discrete "good consideration" issue only to indicate that it was not separate at all, but intertwined with certification.  *See* Moss II ¶ 15(a) (citing Privy Council Judgment ¶ 6); see also *id.* ¶ 16.  Under the Privy Council's reasoning, certification plays the critical role in defining contractual entitlement and good consideration:  upon receipt of a certificate, in exchange for

---

[49] Similar interpretive principles govern U.S. appellate rulings and foreclose arguments that alternative holdings argued on appeal but not expressly adopted are nonetheless preserved.  *See Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*, 809 F.3d 94, 101 (2d Cir. 2015) ("[W]e were fully aware of the bankruptcy court's alternative holding and could have adopted it—but we did not" and, therefore, the alternative holding "was impliedly foreclosed by our mandate"); *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.,* 671 F.3d 261, 270 (2d Cir. 2012)

surrender of shares, the shareholder has received only that to which it was entitled.  *See* Moss II ¶¶ 15(d); 16-17.  The Privy Council Judgment accordingly is wholly inconsistent with the "good consideration" rationale of the lower courts pursuant to which the *quid pro quo* of shares for payment suffices to preclude subsequent challenge.  Moss II ¶¶ 15, 18, 52.

### 3. Under English Law, the Liquidators Are Not Estopped.

The Court should reject Defendants' estoppel and waiver arguments, because they rely exclusively on inapposite U.S. federal case law that differs meaningfully from the English law of *res judicata*.[50]  No English preclusion doctrine precludes Plaintiffs' common law claims.

### a. Issue Estoppel

Defendants may not assert issue estoppel in the U.S. Redeemer Actions because the Bad Faith Issues were not litigated in the preliminary issues proceedings ("PI Proceedings").  As under U.S. law of collateral estoppel, for an issue estoppel to arise under English law, the issue must be one that was actually and necessarily determined by the court in the initial litigation.  Moss II ¶¶ 35, 37.[51]  Here, that is not the case with regard to the Bad Faith Issues.  *Id.* ¶¶ 19, 51, 53.[52]  Issue estoppel does not apply.[53]

---

(concluding that appellate court's mandate, which focused exclusively on the question of timely adjudication as a bar to abstention, without mentioning  alternative basis for denying abstention, "impliedly decided" alternative bases).

[50] Because Defendants made a deliberate decision to brief only U.S. law rather than applicable BVI/English law, they have failed to meet their burden on this motion to dismiss to show the preclusive effect of a foreign judgment.

[51]  The same conclusion would result under federal or New York law.  *See LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002); *NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.*, 105 F.3d 72, 79 (2d Cir. 1997).

[52] Defendants also assert (at 46-47) that the Liquidators waived their good faith argument "through their conduct of the Preliminary Issues litigation" or by "acced[ing]" to the Privy Council's conclusion.  To the extent that Defendants seek to evoke *judicial* estoppel, federal law readily precludes their position.  *See Molina v. Faust Goetz Schenker & Blee, LLP*, No. 15-CV-9010 (LAK), 2017 WL 435936, at *3 n. 12 (S.D.N.Y. Jan. 31, 2017) (observing that at least one court in the Second Circuit has implicitly found that *Erie* permits a federal court to apply federal judicial estoppel law in a diversity action) (*citing Vitrano v. State Farm Ins. Co.*, No. 08 CIV.103 (JGK), 2009 WL 3365866, at *4 (S.D.N.Y. Oct. 19, 2009) (noting that other circuits have held that *Erie* principles do not apply to judicial estoppel because a federal court's ability to protect itself from manipulation should not depend upon the law governing the underlying claims, and therefore federal judicial estoppel doctrine applied to the diversity case)).

Furthermore, under English law, which governs the preclusive effect of the Privy Council Judgment, there is no "non-mutual" collateral estoppel.  Thus, "issue estoppel" operates to preclude only the re-litigation of issues litigated in earlier proceedings between *the same parties* or those in privity with those parties.  Moss II ¶¶ 35-36.  Accordingly, no Defendant other than a PI Defendant may defend against a claim asserted against it in a U.S. Redeemer Action on the ground that the Liquidators have already litigated an issue necessary to the resolution of the claim in the BVI Proceedings and had that issue decided against them.

Defendants have not identified, much less established, facts that support the existence of privity between the PI Defendants and any non-PI Defendants.  *See* Moss II ¶¶ 46-47, 49(c).  In arguing to the contrary, Defendants assert that mere identity of legal interests can establish privity.  No case so holds.  Defendants and the Liquidators agree that privity means "a sufficient degree of identity . . . to make it just to hold that the decision to which one was party should be binding in proceedings to which the other is a party."  Moss II ¶ 27; *Declaration of Simon Mortimore, QC,* Jan. 13, 2017 [ECF No. 962] ("Mortimore Decl.") ¶ 46.

But that principle does not apply here.  A leading treatise identifies examples of privity as the relationship of a legal successor by death, insolvency or statute to the original litigant or the relationship of an entity to its controlling shareholder.  Moss II at ¶ 29 (discussing authorities

---

Judicial estoppel applies only if a party's current position is irreconcilably inconsistent with a position that it previously asserted and a tribunal adopted that position.  *See U.S. Fid. & Guar. Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77, 92 (S.D.N.Y. 1999).  The Liquidators did not urge the BVI Court to find that the absence of good faith would not impair the finality of NAV certification, nor did any of the BVI Court, the EC Court of Appeals or the Privy Council adopt such a position.  To the extent the Liquidators acceded in the context of the PI Proceedings that good faith was irrelevant, such position is easily reconcilable with the Liquidators' current position since any earlier position was attributable to the exclusion of good faith from issues to be litigated and the limited facts then known to the Liquidators regarding Citco's culpable knowledge.

[53] Any argument that the Liquidators could or should have raised the Bad Faith Issues before the Privy Council is irrelevant to issue estoppel, which applies only to issues actually and necessarily determined in the first proceeding.

41

cited at Mortimore ¶¶ 46-49).  These and other authorities contrast the sufficiency of these legal

relationships to create privity with the mere identity of the legal or factual questions resolved in

the first litigation with those that will determine the rights of a different party to a later litigation.

*Id.* ¶¶ 30-31.  The latter are not sufficient to show privity.  *Id.* ¶ 30.

Mr. Mortimore's assertion that the BVI Court could find privity in order to "achieve

consistency between parties in substantially the same position," Mortimore Decl. ¶ 53, substitutes

an identity of legal issues for actual privity, *see* Moss II ¶¶ 46, 49(c).[54]

Similarly insufficient is Mr. Mortimore's assertion that privity exists between PI

Defendants and other Defendants, because "[i]f that were not so, the purpose of ordering the

Preliminary Issues would be negated."  Mortimore Decl. ¶ 52.  The PI Proceedings resulted in

legal rulings disposing of the claims made in the BVI Court *and* resolved the issue of the status

of ordinary transaction documents as certificates that will apply here as precedent.  *See* Moss II

¶¶ 49-50.  Mr. Mortimore's other argument that the stay of actions in this Court pending the

resolution of the Preliminary Issues litigation establishes privity is likewise incorrect:  this Court

has discretion to enter stays for many reasons that neither recognize nor create a legal

relationship among the PI Defendants and the non-PI Defendants.  *See id.* ¶ 48.

b.    Cause of Action Estoppel

Neither does "cause of action estoppel" preclude the Liquidators' claims.  That principle

bars re-litigation of a claim by the same parties (or those in privity) *only* where the *claim* at issue

is *identical* to the *claim* previously adjudicated.  Moss II ¶ 22.  It does not bar a separate claim,

---

Moss II ¶¶ 37, 51.  While an earlier opportunity to raise an issue may in some cases give rise to a *Henderson* abuse
of process argument, as discussed in Part IV-A-3-c *infra*, *Henderson* does not apply here.

even if it arises out of the same relationship or is based on the same type of transaction as the first. *Id.* Applying these principles, it is clear that no non-PI Defendant can assert the defense of cause of action estoppel in the U.S. Redeemer Actions because, as discussed above, they were not parties to those actions or in privity with them.

As to the PI Defendants, the Liquidators have *not* re-asserted any claim against them that also was litigated in the PI Proceedings.[55] Defendants concede that the PI Proceedings involved different redemption payments, made during a different time period, than those at issue in the Redeemer Actions. Def. 8. Under English law, each redemption gives rise to a separate and distinct cause of action. Moss II ¶¶ 49(b), 53. Thus, the causes of action are not identical and estoppel does not apply. *Id.* ¶¶ 49(a)-(b); 53.

      c.      <u>*Henderson v. Henderson* Doctrine</u>

The rule of *Henderson v. Henderson* permits, as an exercise of discretion, dismissal of a claim asserted by a party in a second litigation on the ground that it is an abuse of the court's process. Moss II ¶ 38. Unlike claim and issue estoppel, which can only be applied to matters that were previously litigated, dismissal based on *Henderson* abuse is directed at claims, issues, and defenses that were not litigated but that "could and should" have been raised in the first litigation. *Id.* But that discretionary doctrine cannot bar Plaintiffs' claims here because (i) Plaintiffs were not in possession of sufficient facts to plead bad faith against Citco when they filed the BVI actions; and (ii) *Henderson* abuse is rarely found when there is no mutuality between the parties. *See id.* ¶¶ 56-57.

---

[54] Although minority shareholders own shares in the same entity will logically have legal interests in common and may be similarly situated with regard to a dispute involving the entity, Mr. Mortimore's expansive views of privity also fail under New York preclusion law. *See See Green v. Santa Fe Indus., Inc.*, 514 N.E.2d 105, 108-09 (1987).

[55] *See* Hare Decl. ¶¶ 67-68.

Further, that the litigant "could and should" have brought a claim or litigated an issue is a necessary but insufficient ground for a finding of *Henderson* abuse. Moss II ¶ 42. To the contrary, "it is generally not abusive for a party to seek to litigate issues which he is not estopped from litigating." *Id.* ¶ 39. A leading precedent instructs that it is "wrong to hold that because a matter could have been raised in earlier proceedings it should have been, so as to render the raising of it in later proceedings necessarily abusive." *See Johnson v. Gore Wood* [2002] 2 AC 1, cited by Moss II ¶ 37. Given its discretionary nature, the doctrine requires "a broad, merits-based judgment . . . focusing attention on the crucial question whether, in all the circumstances, a party is misusing or abusing the process of the court by seeking to raise before it the issue which could have been raised before." Moss II ¶ 42; *accord* Mortimore Decl. ¶ 54.

Here, *Henderson* cannot bar Plaintiffs' claims because the Liquidators could not have pursued the Bad Faith Issues in 2011. The Liquidators did not obtain access to sufficient, specific evidence to consider litigation of the Bad Faith Issues until the summer of 2014, years after the BVI Court proceedings had entered summary judgment. Hare Decl. ¶ 42 n.16. Defendants are wrong to insist (at 49) that prior to the Preliminary Issues trial, Liquidators knew "facts" that would have allowed the making of claims in reliance on the Bad Faith Issues and that they had to have made those claims at that time, or be thereafter barred under *Henderson*. They point (at 50) to a pleading filed against certain directors of the Funds and members of the so-called "Fairfield Greenwich Group" ("FGG"),[56] as well as on Judge Marrero's 2010 decision in the *Anwar* litigation sustaining the pleading of a federal securities fraud claim against Citco. The allegations against Citco in the 2010 *Anwar* complaint, however, do not include the evidentiary

---

[56] Def. 7-8, 48-49 (citing Complaint, *Fairfield Sentry Ltd. v. Fairfield Greenwich Grp.*, Adv. Pro. No. 10-3800 (SMB) (Bankr. S.D.N.Y. Sept. 29, 2010) (Dkt. No. 1-5) ("*Sentry v. FGG* Complaint.")).

44

basis necessary to support Defendants' *Henderson* argument.  Instead, the *Anwar* allegations rely on the existence of "red flags" indicative of fraud and what Citco should have known— allegations that have been frequently found insufficient in other BLMIS-related litigations.  *See* Second Consol. Am. Compl., *Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118 (S.D.N.Y. Sept. 29, 2009) (Dkt. No. 273); *see also Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 437 (S.D.N.Y. 2010) (although court concluded that allegations against Citco were sufficiently detailed, it relied on allegations providing that there were "numerous red flags surrounding Madoff's operations and purported results" that should have caused Citco to "increase . . . scrutiny" and "seek independent verification").[57]  The *Sentry v. FGG* Complaint similarly relies on what the defendants "knew or should have known" rather than particular facts directly supporting actual knowledge.  *See Sentry v. FGG Complaint*, *e.g.*, ¶¶ 78-79, 86-87, 92; *see also* First Amended Complaint, *Fairfield Sentry Ltd. v. Fairfield Greenwich Grp.*, Adv. Pro. No. 10-3800 (SMB) (Bankr. S.D.N.Y. Oct. 27, 2011) (Dkt. No. 12), *e.g.*, ¶¶ 59, 74-75, 84.  Defendants' reliance on U.S. litigation to support an argument for *Henderson* abuse moreover disregards a critical difference between English and U.S. law:  unlike U.S. practice, English law does not allow a litigant to assert a claim merely on a "good faith basis."  *See* Moss II ¶ 57(a).

Furthermore, although *Henderson* abuse can be asserted by a party that was not a party to the prior litigation or in privity with such a party, mutuality remains "highly material, if not

---

[57] Many BLMIS-related cases have been dismissed in the United States based on pleadings difficult to distinguish from those in *Anwar* in reliance on assertions that a service provider "knew or should have known" about Madoff's fraud based on so-called "red flags."  *See, e.g.*, *Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 578-79 (S.D.N.Y. 2011), *aff'd*, 482 F. App'x 618 (2d Cir. 2012), *as amended* (June 13, 2012) (dismissing amended complaint against auditor of Madoff feeder fund for failure to state a claim because although complaint alleged the existence of multiple "red flags", it did not allege that the auditor was aware of them or did the analysis necessary to understand their implications); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 71-72 (S.D.N.Y. 2010) (dismissing complaint reliant on "red flag" allegations), *aff'd*, 485 Fed. App'x 461 (2d Cir. 2012); *In re Tower Grp. Int'l, Ltd. Sec. Litig.*, Case No. 13 CIV. 5852 (AT), 2015 WL 5813393, at *7 (S.D.N.Y. Sept. 18, 2015) (same); *In re Tremont Secs. Law, State Law & Ins. Litig.*, 703 F. Supp. 2d 362, 373 (S.D.N.Y. 2010) (same).

dispositive." Moss II ¶ 41 (citing *Michael Wilson & Partners v Sinclair* [2017] EWCA Civ 3, ¶ 90). And, as discussed above, mutuality did (and does) not exist here. No BVI Court would have held a redeemer that was not a PI Defendant (or a privy of a PI Defendant) to have been bound by a ruling adverse to redeemers. Moss II ¶ 47; *see also id.* ¶ 49(c). Mr. Moss is "not aware of any case in which there has been held to be [*Henderson*] . . . abuse merely because a similar claim or issue has been determined against that litigant in proceedings against a different party." *Id.* ¶ 56. Mr. Mortimore likewise cites no such case. The US Redeemer Actions are not such "rare cases." Accordingly, *Henderson* does not bar the claims. *See* Moss II ¶¶ 56-58.

### B.     Citco's Agency Does Not Preclude the Common Law Claims.

#### 1.     Article 11 Allows a Challenge Based on Citco's Bad Faith.

Defendants are wrong to insist (at 52-53) that it is "inconceivable" that under BVI law, Article 11(1) would be interpreted to permit the Funds' to challenge a NAV determination based on the bad faith of their own agent (Citco). Defendants correctly note (at *id.*) that, under English law, "a contract will be interpreted so far as possible in such a manner as not to permit one party to it to take advantage of his own wrong." But that principle does not apply here.

*First*, application of the rule requires that the Funds have engaged in wrongdoing. *See* Def. 52-53; Mortimore Decl. ¶¶ 90-92. Here, there is no attribution of Citco's misconduct to the Funds. Under English law, the bad faith of a dishonest agent is not attributed to a principal for all purposes. *See* Moss II ¶¶ 87-89. Most pertinently, the bad faith of a dishonest agent will not be imputed to the principal for the purpose of defeating a restitution claim against an innocent recipient of the principal's property. *See id.* ¶ 89.[58] That principle applies here.

---

[58] This is true also with respect to the alleged knowledge of the employees of FGG. *See* Moss II ¶ 101 n.34.

46

*Second*, even if Citco's bad faith in issuing certificates with inflated NAVs were attributed to the Funds, the Articles unambiguously provide that a certificate is subject to challenge as having been made in bad faith. Article 11(1). Defendants' effort (*see* Mortimore Decl. ¶¶ 89, 92) to interpose an implied term into the Articles, such that Citco's issuance of certificates with an inflated NAV would breach the Articles, violates black-letter English law under which no term will be implied into a contract unless the contract otherwise would "lack commercial or practical coherence" or the term is so obvious that an express provision would not be necessary. Moss II ¶ 82 (citing *Marks & Spencer plc v. BNP Paribas Securities Services Trust Co (Jersey) Ltd* [2016] AC 742 at paragraph 21). Because the Articles already provide an agreed-to mechanism of remedying a bad faith certificate, those conditions are not met. *Id.* ¶ 84.

*Third,* Defendant's invocation of this equitable principle to assert a right to retain inflated payments to the detriment of existing shareholders is misconceived. Both underpayment and overpayment of the redemption price due are inequitable: underpayments prejudice redeemers who received less than their proportionate share of the NAV; overpayments prejudice remaining shareholders by disproportionately reducing their retained NAV, injuring the Funds. Construing Article 11 to allow challenges to NAV calculations treats shareholders equally; Defendants' invocation of the rule to bar that construction when Defendants are the beneficiaries of the bad faith is inequitable and unfair *See* Moss II ¶ 91 (quoting *Weavering*, discussed *infra*).

*Fourth*, Article 11(1) clearly provides that a certificate issued in good faith binds "all parties" (*i.e.*, *all* Fund shareholders and the Funds). There is no textual basis for the obvious corollary not to be true, *i.e.*, that a bad faith certificate will not bind any party. Had the intention been to place the Funds on different footing than shareholders, or redeeming shareholders on a different basis than remaining shareholders, with regard to a challenge to a NAV determination,

it would have been easy to draft the Articles to state that the Funds were bound by the certificates upon issuance. Similar to U.S. rules of contract interpretation, under English law, "[t]he mere fact that a contractual arrangement, if interpreted according to its natural language, has worked out badly, or even disastrously, for one of the parties is not a reason for departing from the natural language." *Arnold v Britton* [2015] AC 1619A; cited by Moss II ¶ 92. An English court is not enabled through the rules of interpretation to simply disregard words plainly written in order to achieve its view of an equitable outcome.

### 2.    The BVI Companies Act Does Not Bar a Challenge to the Certificates.

Section 31(1)(e) of the BVI Companies Act does not preclude the Funds' challenge to the certificates Citco issued. Section 31(1)(e) applies to a relationship governed by common law. *See* Moss II ¶ 79. The Funds' claim does not concern the validity of the NAV certificates as a matter of the common law but whether the document Citco issued fulfills the contractual requirements of Article 11. *Id.* ¶¶ 78-80. For that reason, Section 31(1)(e) is irrelevant.

### 3.    *Ex Turpi Causa* Does Not Bar the Funds' Recovery.

*Ex turpi causa* does not bar the Liquidators' claims. Although *ex turpi causa* is similar in origin and purpose to *in pari delicto*, *see see O'Connell v. Arthur Andersen LLP* (*In re Alphastar Ins. Grp. Ltd.*) 383 B.R. 231, 274 (Bankr. S.D.N.Y. 2008), Defendants' argument (at 54 & n.35) elides material distinctions between the two doctrines.[59] The New York variant of *in pari delicto*, in particular, rigidly provides that the wrongdoing of the agent will be imputed to the

---

[59] *Ex turpi causa* is an affirmative defense; affirmative defenses are governed by same the law that governs the claim itself. *See ICP Strategic Credit Income Master Fund Ltd. v. DLA Piper LLP (US) (In re ICP Strategic Credit Income Fund Ltd.)*, No. 13-12116 (REG), 2015 WL 5404880, at *12 (Bankr. S.D.N.Y. Sept. 15, 2015) (Gerber, J.); *Cobalt Multifamily Inv'rs. I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 434 (S.D.N.Y. 2012). Although Defendants correctly identify English *ex turpi causa* principles as the basis upon which they may defend against the action due to purported wrongdoing of the Funds, their arguments rely on New York's *in pari delicto* doctrine and disregard pertinent distinctions between it and English law. Def. 54, n.35.

corporate principal regardless of the impact on innocent corporate stakeholders. As stated by the

dissent in *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 959 (N.Y. 2010) (Ciparick, J., dissenting),

the New York rule "effectively precludes litigation by . . . trustees to recover against negligent or

complicit outside actors . . . ." This rigidity is scarcely moderated by a narrow adverse interest

exception pursuant to which the doctrine will not apply if an agent acted *solely* in his or her own

interest, *against* the interests of the principal, and the principal received no benefit at all. *Id.* at

953 (majority opinion) ("[s]o long as the corporate wrongdoer's fraudulent conduct enables the

business to survive" or to receive "any benefit," the adverse interest exception will not apply).

In contrast, *ex turpi causa* will be applied only when, in the court's discretion, it is

justified by principles of fairness and public policy. *See* Moss II ¶¶ 97(b), 98. When some illegal

or immoral act can reasonably be attributed to the plaintiff, the court, in the exercise of its

discretion, will weigh considerations of public policy and fairness to determine whether to apply

*ex turpi causa*. *See id.* ¶¶ 93, 97(b), 98. The first factor is whether the "underlying purpose of

the prohibition that has been transgressed" would be enhanced by denying the claim. *Id.* ¶ 97(b)

(quoting UK Supreme Court decision in *Patel v Mirza* [2016] 3 WLR 399 (Lord Toulson)).[60]

Second, the court will consider "relevant public policies which may be rendered ineffective or

---

[60] In *Patel v. Mirza*, Lord Toulson referred with approval to the list of factors propounded by an academic writer (Professor Burrows) as follows: "If the formation, purpose or performance of a contract involves conduct that is illegal (such as a crime) or contrary to public policy (such as a restraint of trade), the contract is unenforceable by one or either party if to deny enforcement would be an appropriate response to that conduct, taking into account where relevant  (a) how seriously illegal or contrary to public policy the conduct was; (b) whether the party seeking enforcement knew of, or intended, the conduct; (c) how central to the contract or its performance the conduct was; (d) how serious a sanction the denial of enforcement is for the party seeking enforcement; (e) whether denying enforcement will further the purpose of the rule which the conduct has infringed; (f) whether denying enforcement will act as a deterrent to conduct that is illegal or contrary to public policy; (g) whether denying enforcement will ensure that the party seeking enforcement does not profit from the conduct; (h) whether denying enforcement will avoid inconsistency in the law thereby maintaining the integrity of the legal system." Moss II ¶ 98.

49

less effective by denial of the claim." *Id.*  Last, the law requires the court to "keep[] in mind the possibility of overkill unless the law is applied with a due sense of proportionality." *Id.*

In this case, Defendants' argument fails at the threshold because no illegal act can be attributed to the Funds.  *See* Moss II ¶ 94.  Defendants' argument assumes that Citco's bad conduct will be imputed to the Funds, but, again, English law does not support this conclusion. *Id.* ¶ 89.  The conduct on which the Funds' common law claims are based—the Funds' overpayment of redemptions to Defendants based on a miscalculation of the Funds' true net assets—involves nothing illegal or immoral on the part of the Funds.  *Id.* ¶ 95.

Even if the Court were to determine that Citco's bad faith can be attributed to the Funds, the relevant factors weigh against application of the defense.  The first two factors, taken together, call for a cost-benefit analysis:  will the preclusion of the claim advance the purpose of the law or standard that the plaintiff has violated?  And, if so, does the advancement of that purpose outweigh the societal costs of preventing the claim from being prosecuted?  Here, the denial of the claim has no impact on Citco's misconduct.  Nor does any director, manager or investment manager of the Funds (including FGG parties) have a stake in the Redeemer Actions. For practical purposes, the Common Law Claims essentially frame a dispute between unredeemed shareholders (represented by the Liquidators) and redeemed shareholders who are material beneficiaries of the bad faith delivery of certificates.  *See* Moss II at ¶ 99.  As against the marginal (if any) discouragement of misconduct that might result from barring the Liquidators' claims, it is necessary to weigh the cost of foreclosing the reallocation of loss between these two groups of (usually) innocent shareholders.  *See id.* ¶ 91(d) (citing and quoting *Weavering* (finding unpersuasive arguments relying on illegality of scheme as defense against claims by liquidator

for recovery of redemption payments based on inflated NAV that would benefit and bring equity to unredeemed shareholders)).[61]

The last consideration, a "due sense of proportionality," weighs strongly against application of the doctrine. The equitable allocation of loss as between redeemers and unredeemed shareholders should take precedence here over the prudential concerns underlying *ex turpi causa*.[62] Proportionality here requires that the abstract principles that underlie the doctrine recede to allow aid to fraud victims in the recovery of their losses.

### C.    The Liquidators May Plead Restitutionary Claims in the Alternative.

Even if the Liquidators cannot *recover* simultaneously under breach of contract and quasi-contract theories, the Federal Rules of Civil Procedure permit them to *plead* these claims in the alternative. *Transcience Corp. v. Big Time Toys*, LLC, 50 F. Supp. 3d 441, 452-53 (S.D.N.Y. 2014); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *id.*(a)(3) (the relief sought may "include relief in the

---

[61] *Id.* (quoting *Weavering* ("Whoever the beneficiaries of the fraud were . . . they do not include unpaid redeemers. They will have suffered from the fraud by acquiring their shares at inflated prices, and will not have been able to extricate themselves. What available assets there are will have to be distributed pari passu amongst them, and for that purpose it is immaterial whether they prove by reference to the inflated redemption values which they expected to receive but did not, or by reference to some revised NAV - at least so long as there is consistency among them. By contrast, however, [the appellant] is (as it acknowledges) currently a beneficiary of the fraud, having received redemption payments by reference to the inflated NAV; and, to the extent that anyone is relying on illegality, it is [the appellant] by asserting its entitlement to retain the inflated redemption values.")).

[62] The *ex turpi causa* defense is no more justified by possible wrongdoing by FGG employees than by Citco's conduct. Assuming that certain FGG affiliated persons were agents of the Funds and had knowledge sufficient to constitute bad faith, as discussed *supra*, this conduct will not be attributed to the Funds for the purpose of defeating a restitution claim. Moss II ¶102 n.34; *see also id.* ¶ 100 n.33. Even if the bad faith of FGG employees could be attributed to the Funds, and that bad faith is sufficiently "illegal" to justify consideration of *ex turpi causa*, the relevant factors nonetheless weigh against its application for all of the same reasons discussed above. Moreover, under English law, "knowledge held by an agent who was not the one responsible for making the payment is irrelevant to the question of whether the payment was made by mistake." Moss II ¶ 102 n.3 (citing *BP Oil Int'l Ltd v Target Shipping Ltd* [2012] EWHC 1590 (Comm) (partly reversed on appeal but not on this issue: [2013] EWCA Civ 196)).

alternative or different types of relief").[63]   Courts hold that alternative pleadings are particularly

necessary where, like here, the parties dispute the scope of the agreements between them..[64]

The Court also should exercise its discretion not to dismiss the Liquidators' claims for

declaratory relief because the judgment will provide the parties with "relief from uncertainty,"

which the parties may not receive solely from resolution of the other claims.  *See, e.g.*, *Cytec

Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.*, No. 14-CV-1561 PKC, 2015 WL 3762592, at

*13-14 (S.D.N.Y. May 15, 2015); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

### D.   The Citco Subscribers' Bad Faith Binds Their Beneficial Owners/Customers.

Numerous Citco entities having knowledge that establishes Citco's "bad faith" delivery of

NAV certificates were also record subscribers in and shareholders of the Funds and/or the Citco

banks that were the controlling Citco entities of those record Citco subscribers and shareholders

(collectively, the "Citco Subscribers"), and numerous Defendants placed their investments in

Funds as Citco customers and beneficial owners through the Citco Subscribers, with whom the

customers had express contractual relationships (Brokerage and Custody Agreements) for that

purpose (the "Citco Customers").  Molton II, Exs. G, H, I.  These Citco Customer Defendants are

"bad faith" recipients precluded from raising the certification defense.  Moss II ¶¶ 116-123.[65]

---

[63] *Accord Barth Packaging, Inc. v. Excelsior Packaging Grp., Inc.*, No. 7:11-CV-2563 VB, 2011 WL 3628858, at *1 (S.D.N.Y. Aug. 16, 2011); *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04 CIV. 2867 (BSJ)(HBP), 2006 WL 6217754, at *7 (S.D.N.Y. Mar. 31, 2006).

[64] *See U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*, No. 16-CV-01450 (JGK), 2017 WL 398410, at *8–9 (S.D.N.Y. Jan. 30, 2017); *Hildene Capital Mgmt., LLC v. Friedman, Billings, RamseGrp., Inc.*, No. 11-cv-5832 (AJN) 2012 WL 3542196, at *11 (S.D.N.Y. Aug. 15, 2012).  Defendants' reliance on *In re First Cent. Fin. Corp.*, 377 F.3d 209 (2d Cir. 2004), is misguided, as that case involved a decision to dismiss equitable claims *on the merits* on summary judgment, where the court had already concluded that a valid, enforceable contract governed the parties' claims.

[65] The allegations regarding the Citco Subscribers and their Citco Customer Defendant are made in the two Citco Beneficial Owners complaints (the "Citco Customer Complaints").  *Fairfield Sentry Ltd v. ABN AMRO*, Adv. Pro. No. 10-3635 (Bankr. S.D.N.Y.); *Fairfield Sentry Ltd v. ABN AMRO Schwetz AG*, Adv. Pro. No. 10-3636 (Bankr. S.D.N.Y.).  Defendants have attacked the sufficiency of these pleadings with respect to this issue (at 56-58), and although the Liquidators are confident that their filed proposed amended complaints are sufficient to meet these attacks, they have attached as Exhibits E and F to Molton II copies of the proposed amended Citco Customer

*First*, Defendants are wrong in arguing (at 56 n.37, 57-58) that the Citco Customer Complaints fail to allege sufficiently the bad faith of the Citco Subscribers.  Even adopting Defendants' standard ("the Liquidators must show that [Citco] had a suspicion 'grounded and targeted at specific facts' and made a 'deliberate decision . . . to avoid obtaining confirmation of those facts.'") (at 56 (*quoting* Mortimore ¶ 112); *cf.* Moss II ¶¶ 103-111)), the allegations in Citco Customer Complaints amply suffice (and certainly satisfy the standard articulated by Mr. Moss), including alleging a deliberate decision by the Citco Subscribers to avoid confirming their suspicions and knowledge.  Molton II, Exs. E, ¶¶ 138-177; Ex. F, ¶¶ 146-185.

*Second*, Defendants' imputation arguments are red herrings.  Imputation of the Citco Subscribers' bad faith to the Citco Customers *is not necessary* to prevent such a customer Defendant from raising a defense to the Liquidators' contractual or restitution claim to the effect that (as a result of the certification by Citco) it was contractually entitled to the sum received. This is because it is the *registered shareholder* that is to be treated as the party to the Articles, and so it is the *registered shareholder's* bad faith that is relevant when considering whether a certificate is to be treated as "binding."  Under the Fund Documents, (i) the Funds were entitled to treat the registered holder of any share as the absolute owner thereof (and the only party entitled to receive distributions) and were not be bound to recognize an equitable or other claim to, or interest in, such share on the part of any other person (the Citco Customers) (Article 8), and (ii) the Citco Subscribers' entry into the Fund Documents bound the Citco Customers thereto (SA ¶ 27),  In other words, all that matters with respect to this point is the bad faith of the

---

Complaints which set forth additional factual allegations in these pleadings (in red line) that address the specific points that the Citco customer Defendants raise here. The Liquidators request that the Court grant the Liquidators' leave to file these revised proposed amended Citco Customer Complaints.

registered shareholder and subscriber; the registered shareholder/subscriber's customers are bound by the consequences thereof. Moss II ¶ 121.

*Third*, if attribution of knowledge were necessary (and it is not), under the present circumstances, as alleged by the Liquidators, contrary to Defendants' position (at 57) the knowledge obtained by the Citco Subscribers and other Citco entities in the course of the Citco's custodian and administration services for the Funds[66] is attributable to the Citco Customers: (i) the knowledge was obtained, addressed and certainly present "in the mind" of the Citco Subscribers during the course of their relationship with the Citco Customers,[67] and (ii) the knowledge was relevant and important to the duties and responsibilities of the Citco Subscribers to the Citco Customers.[68] *See* Moss II ¶ 122 (*citing Mountford v Scott* (1823) 37 ER 1105); *see also Phelan v. Middle States Oil Corp.*, 210 F.2d 360, 365-66 (1954) ("A principal is not charged with his agent's knowledge obtained before he became an agent . . . unless the information was in the agent's mind when he acted for the principal on the occasion under scrutiny. This rule taken over from English cases, was announced by Mr. Justice Bradley . . . in the *Distilled Spirits Case*, [78 U.S. 356, 366 (1870)].").[69]

---

[66] Citco Funds Services (Europe) B.V., *the Funds' administrator*, was a record subscriber with respect to certain Citco Customers (*see* Citco Customer Complaint, 10-3636, Molton II Ex. F, ¶ 9), and Citco Bank Nederland N.V., *the Funds' custodian*, itself or through its subsidiary/affiliate Citco Bank Nederland N.V. Dublin Branch or Citco Banking Corporation N.V., was a party to the Broker and Custody Agreements that each Citco Customer entered into to enable that customer to invest in the Funds through Citco. *See* Molton II, Ex. F ¶¶ 9, 114-132, Exs. G, H, I.

[67] Molton II, Ex. E, ¶¶ 106-124, 138-177, Ex. F, ¶¶ 114-132, 146-185.

[68] The Citco Subscribers' obligations were not merely "ministerial" (Def. 57). Molton II Ex. E ¶¶ 106-123, 176, Ex. F ¶¶ 114-132, 184, *id.*, Ex. G ¶¶ 7.3 (Citco had "unfettered discretion" to "act without first obtaining instructions from the Customer" to "preserve or safeguard" the Customer's securities and assets), 10.2 (Citco "agree[d] to use their best efforts and judgement and due care in performing their obligations"); Ex. H (same); Ex. I (same).

[69] *Accord Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Morgan Stanley Mortg. Capital, Inc.*, No. 11 CIV. 0505 (CM) (GWG), 2013 WL 3146824, at *26 (S.D.N.Y. June 19, 2013) (McMahon J.) (*citing Skiff–Murray v. Murray*, 793 N.Y.S.2d 243, 245-46 (N.Y. App. Div. 3d Dep't 2005)); *Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*, 247 B.R. 51, 98 (Bankr. S.D.N.Y. 1999), *aff'd*, 263 B.R. 406 (S.D.N.Y. 2001) ("The principal is affected by

*Fourth*, the Liquidators need not look beyond the knowledge of the Citco Subscribers themselves (*i.e.*, the Citco record holders and the Citco Banks) who clearly stood, as counterparties to the Citco Customers in the Brokerage and Custody Agreements, in an agency relationship with the Citco Customers, thereby triggering attribution.[70]

*Fifth*, Defendants' point that attribution would be ruled out by Citco's own bad faith (at 58) is wrong. Where a claimant is seeking to make a claim against a person for knowing receipt of misapplied money, and the person acted through an agent who knows that the money was misapplied, it will be no defense for the principal to say that his agent acted fraudulently. Moss II ¶ 123 (*citing Bilta*, at paragraph 205, per Lords Hodge and Toulson, this being an example of the 'first' type of case, where there is attribution; while the Funds' position vis-a-vis Citco is an example of the 'third' type of case where there is no attribution). And any disclaimer by Citco Customers of attribution, on grounds that they were victims of Citco's bad faith, fails, as they benefited through the overpaid redemptions. *See* Moss II ¶ 91(d) (*quoting Weavering*).

### E.    The Liquidators Have Sufficiently Alleged Injury-In-Fact.

Plaintiffs have pled sufficient injury to establish standing. The Fund Documents[71] detail calculation of redemption payments based on the Funds' true NAV, but the payments made here resulted from an incorrect calculation using an inflated NAV. PAC ¶¶ 178-90. When Plaintiffs realized that the NAV was inflated, they asked Defendants to return excess redemptions. PAC ¶ 190. Defendants refused. *Id.* ¶ 191. This represents precisely the "sort of 'paid too much' or 'received too little' harm [that] is classic economic injury-in-fact." *Alaska Elec. Pension Fund v.*

---

the agent's knowledge whenever the knowledge is of importance in the act which the agent is authorized to perform."); *Nat'l Bank of N. Am. v. Newmark (In re Newmark)*, 20 B.R. 842, 861 (Bankr. E.D.N.Y. 1982) (same).

[70] *See* n.68, *supra*; *see also* Molton II, Exs. G, H, I.

[71] The PPM, Articles, and Subscription Agreements. *See* PAC ¶ 177; SA ¶¶ 1, 2.

*Bank of Am. Corp.*, 175 F. Supp. 3d 44, 53 (S.D.N.Y. 2016); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *7 (S.D.N.Y. Aug. 12, 2016).

Defendants contend that the Liquidators have not pled damages because Defendants' redemption payments were funded "from time to time" by the Funds' redemptions from BLMIS, PAC ¶ 38, and the Funds' NAV and the value of their BLMIS investments were both inflated. Def. 58-59.  But that argument relies exclusively on "in-and-out trader" securities fraud cases that involve "fraud on the market" securities actions and that focus on the requirement that the plaintiff's losses were caused by the alleged fraud.[72]  Such "loss causation" is not at issue here. *First,* there was no public market for the Funds to "trade out" of their position at the same price as the redemptions,[73] and there are no allegations in the Complaints that the Funds redeemed (or even *could* redeem) from BLMIS at the exact price that they paid for each redemption involving Defendants.[74]  *Second*, the Funds had a legal right to recover the inflated redemption payments (*i.e.*, an Article III injury) at the moment Defendants refused to repay the excess amount, whereas an "in-and-out-trader" only suffers injury if it later sells its purchased shares at a loss.  *See Dura Pharm., Inc.*, 544 U.S. at 342.  *Third*, Sentry's right to redeem from BLMIS was not symmetrical with the Funds' obligations to make a redemption purchase from Defendants, as the Funds were

---

[72]  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005); *Loftin v. Bande* (*In re Flag Telecom Holdings, Ltd. Sec. Litig.*), 574 F.3d 29, 41 (2d Cir. 2009); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 151-52 (S.D.N.Y. 2010); *In re Impax Labs., Inc. Sec. Litig.*, No. C 04-4802 JW, 2008 WL 1766943, at *6-7 (N.D. Cal. Apr. 17, 2008); *In re Cornerstone Propane Partners, LP Sec. Litig.*, No. C 03-2522 MHP, 2006 WL 1180267, at *9 (N.D. Cal. May 3, 2006); *In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 920 (E.D. Mich. 2005).

[73]  The value of the Funds' shares was determined by a calculation described in the Fund Documents.  PAC ¶¶ 4-5, 35-39, 177-180; *see also* Sentry PPM at 1, 12-13; Article 11(1).

[74]   Defendants appear to acknowledge this in stating that "the NAV of the Funds was calculated based on the *apparent value* of the BLMIS accounts."  Def. 60 (emphasis added).  Moreover, the Complaints allege that Sentry sometimes used "subscription monies of other investors on hand," instead of withdrawals from its BLMIS accounts, to fund redemption payments to Defendants.  *See* PAC ¶ 38; *cf.* Def. 59.  Those subscription monies represent the proceeds of shares sold at *fluctuating* NAV levels that may not have corresponded with the purchase price of the redemption that those subscription monies funded.

permitted to refuse to redeem shares in some instances, and permitted to make compulsory redemptions in other instances. *See* Articles ¶¶ 10(1), 10(5); Sentry PPM at 23-24.[75]

Defendants' suggestion (at 59) that Plaintiffs could not have standing with respect to Defendants that were "net losers" in the Funds has no basis in precedent.[76]  To the contrary, the Second Circuit has made clear that, for Article III standing purposes, "the fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate standing." *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008) (internal quotation omitted); *see also Alaska Elec. Pension Fund*, 175 F. Supp. 3d at 53.  Here, the fact that Defendants received redemptions from the Funds that were based on a false valuation and to which they were not entitled amply supports standing.[77]

## V.    Section 546(e) Does Not Bar Any of The Claims.

### A.    Section 546(e) Does Not Apply Extraterritorially.

Defendants' argument that Plaintiffs' claims are barred by Section 546(e), *see* Def. 36-43, fails because Section 546(e) does not apply extraterritorially, and, as Defendants concede, they are seeking to apply the statute in an extraterritorial manner. *See* Def. 36.  Judge Glenn recently remarked in the *Hellas* proceedings that "it seems doubtful that Congress intended Section

---

[75]  While Defendants' obligations to purchase shares in the Funds became irrevocable upon acceptance of their subscription, SA ¶ 2, their redemption rights were not only conditional by contract but, upon the commencement of the Funds' liquidation proceedings, those rights (as well as any restitutionary claims that arguably could be made by shareholders) could no longer be exercised. *See* Moss II ¶ 126. Thus, Defendants' suggestion that the Funds did not suffer a "net injury" because they sold shares to Defendants at an inflated price (Def. 59) is not only irrelevant to the Article III standing analysis, but it also fails to account for the lack of contractual and legal symmetry between Defendants' purchases and redemptions of shares.

[76]  That suggestion also implies that Defendants agree that the Funds suffered damages (in Defendants' words, a "net injury") with respect to payments made to "net winners" (of which there are many among the Defendants).

[77]  Defendants' argument that Plaintiffs have failed to plead injury on the BVI avoidance claims (Def. 58 n.40) is plainly incorrect, as those claims, like avoidance claims under the U.S. Bankruptcy Code, exist for the benefit of an entity's insolvency *estate*, which in this case includes the interests of unredeemed members that were indisputably injured upon each redemption payment. *See generally Balaber-Strauss v. Town of Harrison (In re Murphy)*, 331 B.R. 107, 122 (Bankr. S.D.N.Y. 2005) (avoidance claims are for benefit of estate).

546(e) to apply to [] predominately foreign transfers." *Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Luxembourg) II SCA)*, 526 B.R. 499, 514 (Bankr. S.D.N.Y. 2015) ("*Hellas II*").[78]  As discussed below, that view is correct.

"It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (citations and internal quotations omitted); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 226-31 (S.D.N.Y. 2014) ("*District ET Decision*"); *Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.)*, 562 B.R. 601, 605-06 (Bankr. S.D.N.Y. 2017).  That presumption except when "the statute gives a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016) ("*Nabisco*"); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 259 (1991) ("*Aramco*"), *superseded by statute as recognized in Arbaugh v. Y&H Corp.*, 546 U.S. 500, 512-13 (2006).

Defendants cannot carry their burden of rebutting the presumption against extraterritoriality with respect to Section 546(e).  *See District ET Decision*, 513 B.R. at 231 (BLMIS trustee, who was asserting the extraterritorial application of Section 550(a), carried the burden to rebut the presumption).  Section 546(e) contains no language to indicate that it is intended to apply outside the United States.  The provision states that a trustee "may not avoid a transfer that is a . . . settlement payment . . . [or] in connection with a securities contract" "made by or to a . . . financial institution [or] financial participant."  11 U.S.C. § 546(e).  The statute

---

[78] Although the Court in *Hellas II* did not make a final ruling on the issue, Judge Glenn determined that dismissing the subject unjust enrichment claim under Section 546(e) "would be inappropriate at this stage of the pleadings [*i.e.*, the motion to dismiss stage] because it is unclear whether section 546(e) applies extraterritorially to the transfers underlying the [] unjust enrichment claim." *Id.* at 513.

does not use the terms "foreign", "extraterritorial", or similar words in identifying the transfers that Section 546(e) protects from avoidance.[79]   If the transfer in question is domestic, this provision limits the trustee's avoidance power to effect the statute's purpose of protecting U.S. financial markets.   *See Hellas II*, 526 B.R. at 514 ("Congress enacted Section 546(e) in order to provide certainty to securities transactions and, in so doing, to enhance the stability of the *nation's* financial markets.") (emphasis added) (quoting *In re Tribune Co. Fraudulent Conveyance Litig.*, 499 B.R. 310, 317 (S.D.N.Y. 2013), *aff'd*, 818 F.3d 98 (2d Cir. 2016)), *petition for cert filed sub nom. Deutsche Bank Tr. Co. Ams. v. Robert R. McCormick Found.*, No. 16-317 (Sept. 12, 2016)); *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 985-87 (8th Cir. 2009); *Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846, 849 (10th Cir. 1990).[80]   But if the transfer is foreign, the presumption against extraterritorial application precludes reading the statute to apply in that circumstance.   *See District ET Decision*, 513 B.R. at 22728.

Reading Section 546(e) in statutory context reinforces that conclusion.   Section 546(e) is an affirmative defense that limits otherwise expansive avoidance powers, including preference and fraudulent transfer claims under Sections 544, 547, and 548.   This Court and others have held that those Bankruptcy Code avoidance powers do not apply extraterritorially because the

---

[79] In the wake of the Supreme Court's extraterritoriality decisions, Congress has amended certain statutes to make clear that they apply extraterritorially.   For example, after *Morrison*, Congress amended the Dodd-Frank Act by, *inter alia*, granting the federal courts jurisdiction over "conduct within the United States that constitutes significant steps in furtherance of [a] violation, even if the securities transaction occurs outside the United States and involves only foreign investors; or . . . conduct occurring outside the United States that has a foreseeable substantial effect within the United States." Pub. L. No. 111-203, § 929P(b), 124 Stat. 1376 (2010) (codified at 15 U.S.C. § 77v(c)). Similarly, after the Court's ruling in *Aramco*, Congress passed the Civil Rights Act of 1991, which statutorily abrogated the Court's holding in *Aramco* to expand the scope of Title VII by amending the definition of "employee" to include a U.S. citizen employed in a foreign country. Pub. L. No. 102-166, § 109, 105 Stat. 1071, 1077 (codified at 42 U.S.C. § 2000e(f)).

[80] Judge Rakoff rejected an argument in the BLMIS proceedings that Section 546(g) (safe harbor for swap transactions) should protect the avoidance of BLMIS subsequent transfers (*i.e.*, transfers from the foreign feeder funds to their investors) based on the asserted "congressional intent" of protecting against systemic risk in the

federal statutes creating those powers do not provide a "clear indication" that they allow the trustee to avoid foreign transfers. *In re Ampal-Am. Israel Corp.*, 562 B.R. at 612; *see also District ET Decision*, 513 B.R. at 228; *Sherwood Invs. Oversears Ltd., Inc. v. Royal Bank of Scotland N.V. (In re Sherwood Invs. Overseas Ltd.)*, 2016 WL 5719450, at *11-12 (M.D. Fla. Sept. 30, 2016), *appeal filed*, No. 16-16824 (11th Cir. Oct. 31, 2016); *Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exch. Inc.)*, 347 B.R. 708, 714, 719 (Bankr. C.D. Cal. 2006). From this it follows that a statute limiting those powers is naturally read to have the same reach.[81]

For their part, Defendants do not argue that Section 546(e), of its own force, applies extraterritorially; instead, they claim that Section 561(d) gives Section 546(e) extraterritorial effect. That argument is incorrect. Section 561(d) provides that "[a]ny provision[]" of the Bankruptcy Code "relating to securities contracts . . . shall apply in a case under chapter 15" in order to ensure that (1) "enforcement of contractual provisions of such contracts . . . will not be stayed or otherwise limited by operation of any provision of this title or by order of a court in any case under this title . . . (such enforcement not to be limited based on the presence or absence of assets of the debtor in the United States)" and (2) "avoidance powers" are limited "to the same extent as in a proceeding under chapter 7 or 11."[82]    11 U.S.C. § 561(d). That provision does not

---

financial markets, and stated: "this reading of the legislative history *goes too far*." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 505 B.R. 135, 143 (S.D.N.Y. 2013) (emphasis added).

[81] For that reason, the fact that Section 541(a) provides for worldwide jurisdiction over "property of the estate" is not relevant to Section 546(e)'s extraterritoriality analysis. *See District ET Decision*, 513 B.R. at 229 ("That section 541's definition of 'property of the estate' may be relevant to interpreting 'property of the debtor' does not necessarily imply that transferred property is to be treated as 'property of the estate' under section 541 prior to recovery by the Trustee.").

[82] *See supra* at n.83, 84, *infra*, regarding the proper construction of Section 561(d).

provide that Section 546(e) applies extraterritorially in a Chapter 15 proceeding, let alone does it do so with the clarity required to overcome the *Morrison* presumption.

*First*, Section 546(e) is a provision that limits a trustee's avoidance power, and 561(d) states that Bankruptcy Code provisions related to securities contracts shall apply in Chapter 15 proceedings to "limit avoidance powers *to the same extent* as in a proceeding under chapter 7 or 11 of this title . . . ."  11 U.S.C. § 561(d) (emphasis added).  Accordingly, Section 561(d) does not expand the territorial reach of any provision limiting avoidance powers; it simply provides that such a provision applies in a Chapter 15 case "to the same extent" it applies in a Chapter 7 or 11 case.  Section 546(e) does not apply extraterritorially in a Chapter 7 or 11 case because nothing in Section 546(e) itself refers to extraterritorial application (as Defendants apparently concede).  Per the plain language of Section 561(d), the result can be no different in a proceeding under Chapter 15.  *See In re Fairfield Sentry Ltd.*, 768 F.3d at 244-45 (holding that Section 1520(a)(2), which makes Section 363 applicable to transfers of U.S. property "to the same extent that the section[] would apply to property of an estate", requires Section 363 review of the covered transfers under the same standards applicable in a Chapter 7 or 11 case).  Defendants' suggestion (at 36) that this renders Section 561(d) meaningless is incorrect:  in this very statutory context, for example, Section 561(d) makes Section 546(e) applicable in a Chapter 15 case when the transfer the foreign representative seeks to avoid is domestic—even if such a transfer would otherwise be avoidable under foreign law.

*Second*, the effort to read Section 561(d) as expanding the territorial reach of other Code provisions in Chapter 15 cases is inconsistent with Defendants' own statement that the provision simply clarifies that provisions relating to securities contracts apply in Chapter 15 cases "'to the same extent as in a proceeding under [another] chapter.'"   Def. 36 (quoting Section 561(d)).

61

Defendants' statement means that, if 546(e) has no extraterritorial application in a Chapter 7 or 11 case, it has no extraterritorial application in a Chapter 15 case. Defendants' failure to argue that Section 546(e) has extraterritorial application irrespective of Section 561(d) should thus be the end of the matter. *Cf.* Def. 36 n.29 (claiming that only Section 561(d), *not* Section 546(e), indicates "an express intention that the statute apply extraterritorially").

*Third*, the references in Section 561(d) to *enforcement* of securities contracts are beside the point here. The statute states, in a parenthetical, that enforcement of securities contracts is "not to be limited based on the presence or absence of assets of the debtor in the United States" (the "Enforcement Parenthetical").[83] But Section 546(e) does not affect the "enforcement" of securities contracts; rather, Defendants seek to invoke it "to limit avoidance powers." Def. 37 ("foreign representatives . . . cannot avoid transfers that fall within the statutory provisions of Section 546(e)"). Thus, to the extent Defendants rely on the Enforcement Parenthetical to argue that Section 546(e) has extraterritorial application, such reliance is misplaced: this case does not involve any question of staying or limiting enforcement of a securities contract.[84]

---

[83] Notwithstanding its placement at the end of Section 561(d), that the Enforcement Parenthetical begins with the words "*such enforcement*" necessarily means that it applies only to the part of Section 561(d) addressing the "*enforcement* of contractual provisions" of securities contracts, and not the part limiting avoidance powers. *See Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 127, 141 (S.D.N.Y. 2012) ("Statutory interpretation must take into account the structure and grammar of the provision.") (citations and internal quotations omitted); *In re Rose*, 318 B.R. 771, 774 (Bankr. S.D.N.Y. 2004) (similar). Moreover, if Section 561(d) were read to give Section 546(e) extraterritorial application in a Chapter 15 case (when it applies only domestically in a Chapter 7 or 11 case), that reading would conflict with, and override, the language of Section 561(d) limiting avoidance powers "to the same extent as in a proceeding under chapter 7 or 11." That construction of the statute cannot stand. *See Rosen v. Brookhaven Capital Mgmt. Co.*, 113 F. Supp. 2d 615, 626 (S.D.N.Y. 2000) (provisions of a statute must be constructed so as "not to allow one provision to invalidate another").

[84] Additionally, the Enforcement Parenthetical is not reasonably read to make *any* Code provisions apply extraterritorially in a Chapter 15 proceeding, *including* those relating to the enforcement of securities contracts. First of all, the parenthetical is framed in the *negative*, *i.e.*, enforcement is "*not* to be limited." Precluding a limitation on a federal statute's application is hardly a clear statement of affirmatively *extending* the territorial reach of that statute, particularly where, per *Morrison*, the statute is presumed to apply only domestically. That does not render the Enforcement Parenthetical without effect. For example, it would allow for the enforcement of a domestic securities contract per its terms, notwithstanding the application of the automatic stay in a Chapter 15 case, and regardless of whether assets relating to that contract (*e.g.*, collateral posted by the debtor) are located in the U.S. In that case, to

*Fourth*, and in any event, the Enforcement Parenthetical simply clarifies that provisions affecting enforcement of securities contracts apply irrespective of whether "assets *of the debtor*" are present in the United States. But "[p]roperty transferred to a third party prior to bankruptcy in payment of an antecedent debt is neither property of the estate nor property of the debtor. . . ." *In re Ampal-Am. Israel Corp.*, 562 B.R. at 612; *see also In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992). Therefore, when a party brings a claim to avoid a transfer made by the debtor (a claim of the sort that Section 546(e) refers to), the property transferred is not an "asset of the debtor" that would fall within the Enforcement Parenthetical's ambit.

*Fifth*, to read Section 561(d) to give Section 546(e) extraterritorial application would conflict with the "primary purpose" of Chapter 15: "to facilitate the consolidation of multinational bankruptcies into one single proceeding." *Trikona Advisors Ltd. v. Chugh*, 846 F.3d 22, 30 (2d Cir. 2017); *see also Fairfield II*, 458 B.R. at 678-79 (Preska, J.) ("[A] Chapter 15 court in the United States acts as an adjunct or arm of the foreign bankruptcy court . . . to maximize assistance to a foreign court conducting the main proceeding."). The extraterritorial application of Section 546(e) would undermine the Chapter 15 court's role in granting relief under the law of the foreign main proceeding, by imposing a U.S. statutory defense to foreign avoidance claims without limitation and regardless of whether there is any domestic interest at stake. *See In re Fogerty v. Petroquest Resources, Inc. (In re Condor)*, 601 F.3d 319, 327-28 (5th Cir. 2010) (holding that U.S. court had authority to adjudicate foreign avoidance claim in Chapter 15 proceeding, and stating that "Congress did not intend to restrict the powers of the U.S. court to apply the law of the country where the main proceeding pends"). Here, Defendants

---

the extent that foreign insolvency law may compel a different result that implicates non-U.S. assets (*i.e.*, staying action against those assets), the Enforcement Parenthetical ensures that U.S. law will prevail over that conflicting

seek to apply a unique provision of U.S. bankruptcy law to defeat the use of the BVI avoidance regime in a Chapter 15 case to avoid and recover foreign transfers. This is precisely the type of case where the presumption against extraterritoriality should be enforced. *See Nabisco*, 136 S. Ct. at 2107 ("Although a risk of conflict between the American statute and a foreign law is not a prerequisite for applying the presumption against extraterritoriality, where such a risk is evident, the need to enforce the presumption is at its apex.") (internal quotations omitted).

### B. Principles of International Comity Reinforce The Conclusion That Section 546(e) Does Not Apply Extraterritorially.

While the *Morrison* analysis is dispositive, principles of international comity, "which [are] especially important in the context of the Bankruptcy Code," also strongly militate against the extraterritorial application of Section 546(e). *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. P. Nos. 08-1789(SMB), 2016 WL 6900689, at *11 (Bankr. S.D.N.Y. Nov. 22, 2016) (hereinafter "*Bankruptcy ET Decision*"). International comity acts "as a canon of [statutory] construction that limits the reach of the Bankruptcy Code's avoidance and recovery provisions." *Id.* at *12; *see also Maxwell Commc'n Corp. plc v. Société Générale (In re Maxwell Commc'n Corp. plc)*, 93 F.3d 1036, 1047 (2d Cir. 1996) ("*Maxwell*") ("[I]nternational comity . . . as a canon of construction . . . might shorten the reach of a statute . . . ."). Additionally, as this Court recently noted in its *Bankruptcy ET Decision*, "Congress has explicitly recognized the central concept of comity under chapter 15 of the Bankruptcy Code when providing additional assistance to foreign representatives." *Bankruptcy ET Decision*, 2016 WL 6900689, at *11.

Here, the potential application of Section 546(e) threatens an intrusion of U.S. law in an area where foreign interests, not U.S. interests, are by far predominant. *See id.* at *14 (under

---

foreign law for purposes of enforcement *within the U.S.*

principles of comity, claims to recover Fund redemptions were better decided under BVI law, because BVI law has a "greater interest in regulating the activity that gave rise to the common claims asserted by the Trustee and the [Funds'] liquidators."). Specifically, Defendants are seeking to apply to foreign transfers a U.S. statutory defense—unique to U.S. bankruptcy law and designed to protect U.S. domestic financial markets—to dispose of claims arising under foreign (BVI) law, which recognizes no such defense. To avoid creating, under U.S. law, a worldwide defense to avoidance claims under foreign law directed to foreign transfers, comity reinforces the conclusion that Section 561(d) does not extend the reach of Section 546(e) beyond domestic transfers. *See Maxwell*, 93 F.3d at 1053 ("It should be remembered that the interest of the system as a whole [is to promote] a friendly intercourse between the sovereignties.").

### C. Defendants Seek an Impermissible Extraterritorial Application of Section 546(e).

Defendants do not and cannot dispute that they are seeking the extraterritorial application of Section 546(e). *See* Def. 36 & n.29.[85] Defendants state, as they have throughout these proceedings (as well as in connection with BLMIS extraterritoriality dismissal motions), that the Actions involve "wholly foreign-based claims," *i.e.*, "foreign plaintiffs, foreign transfers, foreign defendants with foreign assets, and foreign law claims that do not implicate any assets located in the United States." Def. 19; *see also id.* at 21-22 ("The claims here involve foreign law, foreign parties, and an effort to recover transfers made by a foreign entity to investors located overseas for the remote potential benefit of a foreign estate."); *id.* at 34 ("Nor can it be said that the United States is the focal point of the conduct alleged by the Liquidators.") (citations omitted). Under

---

[85] Since the presumption against extraterritoriality has not been rebutted, Defendants bear the burden to prove that the application of Section 546(e) here would be domestic. *See Morrison*, 561 U.S. at 266-69.

*any* formulation of what constitutes an extraterritorial application of Section 546(e), Defendants have conceded that they are seeking extraterritorial application.

Furthermore, Defendants cannot change their minds now (and likely will not do so in light of the appeal of the *Bankruptcy ET Decision*).   In the appeal of Judge Lifland's 2011 decision denying certain Defendants' motions for remand or abstention, those Defendants also argued that the transfers have no domestic nexus.  *See* Mem. of Law in Support of Defs. Mot. for Leave to Appeal, No. 1:11-mc-224 (LAP), at 2 (S.D.N.Y. July 8, 2011) [ECF No. 2] (asserting that the Actions involve "transfers that took place *entirely outside the United States*") (emphasis added). The District Court agreed, concluding that in this case "the foreign representatives seek recovery of foreign assets by challenging foreign transfers," and reversing Judge Lifland's ruling that the bankruptcy court had "core" jurisdiction" over the Actions.  *See Fairfield II*, 458 B.R. at 677, 687.   Having prevailed before the District Court in asserting their lack of U.S. nexus argument, these Defendants are now judicially estopped from changing their position.   *See Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116-17 (2d Cir. 2014).[86]

Ample precedent—including precedent involving BLMIS foreign feeder funds—confirms the result.  In determining whether application of a statute is extraterritorial, the Court must look to "the focus" of "congressional concern," and determine "the objects of the statute's solicitude." *Hellas II,* 526 B.R. at 515 (quoting *Morrison*, 561 U.S. at 266).   Because Section 546(e) limits

---

[86] In the BLMIS extraterritoriality proceedings certain Defendants (who substantially overlap with the defendants in the Trustee's subsequent transferee actions against Fairfield investors) also argued that their redemptions were not domestic.  *See* Consolidated Mem. of Law in Support of Extraterritorial Defendants' Motion to Dismiss, as Ordered by the Court on June 6, 2012 at 27, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, (No. 12-mc-00115 (JSR)), dated July 13, 2012 (Dkt. No. 235).  ("The Trustee's complaints fail to plead adequately any substantial domestic nexus for transfers made and received abroad by the Extraterritorial Defendants.  Combined with the presumption against extraterritoriality, the insufficiency of the Trustee's allegations cannot be cured, and constitute ample and immediate grounds for dismissal with prejudice of the Trustee's avoidance actions under Fed. R. Civ. P. 12(b)(6).").   And those Defendants were ultimately successful in having the subsequent transferee actions against them dismissed.  That is further ground for applying judicial estoppel.

the avoidance of certain transfers, the "focus" of the statute is naturally on the "transfer" that was made. When considering whether transfers are domestic or extraterritorial, courts consider "the location of the transfers as well as the component events of those transactions." *District ET Decision*, 513 B.R. at 227 (quoting *Maxwell Commc'n Corp. PLC v. Société Générale PLC (In re Maxwell Commc'n Corp.)*, 186 B.R. 807, 817 (S.D.N.Y. 1995)).

The relevant facts and circumstances confirm that application of Section 546(e) would be extraterritorial. The transfers themselves, as Defendants concede, "are predominately foreign: foreign feeder funds transferring assets abroad to their foreign customers and other foreign transferees." *District ET Decision*, 513 B.R. at 227. The Funds are all foreign entities—BVI corporations that were never listed or traded on any domestic securities exchange. *See* PAC ¶ 25.[87] Nearly all Defendants are subscribers in the Funds and are predominantly foreign entities organized and operating predominately outside the United States or are foreign nationals. *See* PAC ¶ 29-30.[88] The redemption payments were made from the Funds' accounts with Citco in Ireland,[89] and principally sent to foreign bank accounts.[90] All of this decisively establishes that the transfers were foreign. *See Bankruptcy ET Decision*, 2016 WL 6900689, at *17 (noting that

---

[87] Sentry's shares were listed on the Irish stock exchange. *See* Sentry PPM at 3; SA ¶ 5(c).

[88] Even where the Defendant resides or has citizenship in the United States, the focus of the extraterritoriality analysis is "the location of the transfer and not the location of the parties to the transfer." *Bankruptcy ET Decision*, 2016 WL 6900689 at *19; s*ee also Loginovskaya v. Batrachenko*, 764 F.3d 266, 274 (2d Cir. 2014).

[89] Sentry PPM at 11; Private Placement Memorandum for Fairfield Sigma Limited, dated December 1, 2008 ("Sigma PPM"), at v, 12, at v, 12, attached as Exhibit D to Molton II ("All proceeds from the sale of Shares will be received by the Fund in trust and will be deposited by the Fund into a segregated interest bearing account in the Fund's name at the Fund's bank, Citco Bank Nederland N.V. Dublin Branch."). While the Complaint alleges that Sentry frequently (but not always) made redemption payments from its BLMIS account to fund redemption payments to Defendants, *see* PAC ¶ 38, the issue here is not the location of the transfer from BLMIS to Sentry, but the location of the transfer from Sentry to Defendants. Indeed, in the extraterritoriality proceedings, there was no dispute that the transfers from BLMIS to the foreign feeder funds were domestic, but that did not factor into this Court's conclusion that transfers from certain of those feeder funds to their investors were foreign. *See Bankruptcy ET Decision*, 2016 WL 6900689, at *25-28; *see also District ET Decision*, 513 B.R. at 227-28.

[90] *See* Sigma PPM at 1, 12; Sentry PPM at 1, 112; SA ¶ 5(b).

under *District ET Decision*, "transfers between two foreign entities that do not reside in the United States using non-U.S. bank accounts (or correspondent U.S. bank accounts)—are obviously 'foreign'"). And while in many cases, Defendants' redemption payments were directed to foreign accounts through the use of correspondent accounts in the United States—a fact that is relevant for purposes of establishing personal jurisdiction, *see* Part I-B, *supra*[91]—this Court has ruled that "a transfer to a correspondent bank located in the United States is not a domestic transfer for purposes of extraterritoriality." *Bankruptcy ET Decision*, 2016 WL 6900689, at *20 (citing *District ET Decision*, 513 B.R. at 228, n.1).

The broader aspects of the "securities transactions" incidental to the transfers reinforce this conclusion. Defendants purchased their shares by submitting Subscription Agreements—the relevant "securities contract"—to the Funds through their administrator, Citco Fund Services (Europe) B.V. ("CFSE"), in the Netherlands, and sending a copy of the completed agreement to the Offshore Funds' investment manager, FGBL, in Bermuda.[92] Defendants' purchases were completed when the Funds accepted the Subscription Agreements.[93] The shares were issued in registered book entry form and maintained by the Funds' registrar, CFSE, in the Netherlands.[94] When the Defendants decided to redeem their shares, they sent redemption requests to CFSE in the Netherlands.[95] In sum, each step necessary for the Defendants to complete their purchases of

---

[91] *See Bankruptcy ET Decision*, 2016 WL 6900689, at *20 ("[A]lthough the purposeful use of a correspondent bank account may support personal jurisdiction, the routing of transfer to a U.S. bank account to facilitate the transfer to a foreign bank account is not a domestic transaction for extraterritoriality purposes." (citations omitted)).

[92] *See* Sigma PPM at v; Sentry PPM at 13-14; SA ¶¶ 2, 9. References to the Funds' private placement memoranda are appropriately considered here, because they are cited in the Complaint. *See, e.g.,* PAC ¶ 177; *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (citations omitted)).

[93] *See* Sentry PPM at 1-2, 12; Sigma PPM at 1, 12; SA ¶ 2.

[94] *See* Sentry PPM at 3; Sigma PPM Appendix A at 1-2.

[95] *See* Sigma PPM at RR-1.

shares in the Funds and receive redemptions of those shares, *i.e.*, "the component events" surrounding the transfers, occurred outside the territory of the United States. *See Sherwood Invs. Oversears Ltd., Inc. v. Royal Bank of Scotland N.V. (In re Sherwood Investments Overseas Ltd.)*, No. 6:10-BK-00584-KSJ, 2015 WL 4486470, at *21 (Bankr. M.D. Fla. July 22, 2015), *aff'd*, 2016 WL 5719450 (M.D. Fla.), *appeal filed*, No. 16-16824 (11th Cir. Oct. 31, 2016).

To be sure, these foreign transactions had some connection to the United States—the investments in the Funds were principally directed to the Funds' investments in BLMIS. But to conclude that is enough to establish domestic application would turn *Morrison* on its head:

> [I]t is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.

*Morrison*, 561 U.S. at 266 (emphasis in original); *see also Bankruptcy ET Decision*, 2016 WL 6900689, at *3 ("Courts however, must be wary in concluding too quickly that some minimal domestic conduct means the statute is being applied domestically. . . .") (citing *Morrison*, 561 U.S. at 266). As this Court held in this context, "[a] Subsequent Transferee's knowledge that it was investing in a foreign feeder fund that it knows will invest or entrust money with BLMIS does not, without more, render the subsequent redemption of that investment domestic." *Bankruptcy ET Decision*, 2016 WL 6900689, at * 22.

The decision in *In re Optimal U.S. Litig.*, 865 F. Supp. 2d 451 (S.D.N.Y. 2012), which Defendants do not cite, is highly instructive. In that case, BLMIS feeder fund investors asserted that their Section 10(b) securities fraud claims involved the domestic application of the Securities Exchange Act of 1934 because their purchases of feeder fund shares (and their claims pertaining thereto) were not only "in connection with" their purchase of shares in the feeder fund, but were

also "in connection with" Madoff's purported securities purchases and sales on behalf of the

feeder fund.  *Id.* at 453-54.  Judge Scheindlin rejected this argument, holding that "[g]iven the

presumption against extraterritorial application of the Exchange Act, it would contravene the

reasoning of *Morrison* to interpret the language 'in connection with' broadly to extend the reach

of the Exchange Act."  *Id.* at 455.  So too, here, any argument that Section 546(e)'s application

would be domestic, based on Defendants' assertion that the redemption payments were made "in

connection with" Sentry's securities contracts with BLMIS (Def. 42), must be rejected.  *See

District ET Decision*, 513 B.R. at 228 ("Although the chain of transfers originated with Madoff

Securities in New York, that fact is insufficient to make the recovery of these otherwise

thoroughly foreign subsequent transfers into a domestic application of section 550(a).").

### D.    Even if Section 546(e) Applies, It Does Not Bar The Common Law Claims.

Even if Section 546(e) could apply here, it does not extend to bar Plaintiffs' common-law

restitution and breach of contract claims.  To support their contrary position (at 38), Defendants

rely on cases that apply the Supremacy Clause of the Constitution to preempt state law claims

that conflict with the Bankruptcy Code.  *See Contemporary Indus. Corp.*, 564 F.3d at 988

(considering whether state law claims were preempted by Section 546(e)); *Official Comm. of

Unsecured Creditors of Hechinger Inv. Co. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of

Del.)*, 274 B.R. 71, 96 (D. Del. 2002) (same); *AP Servs. LLP v. Silva*, 483 B.R. 63, 66-70

(S.D.N.Y. 2012) (same).  These cases do not apply, however, because Plaintiffs' common law

claims substantively involve the application of *foreign* (BVI) law.[96]  And even if preemption

---

[96] By its terms, the Supremacy Clause only affects the laws of any "state", and makes no reference to "foreign" law.
*See Al-Kurdi v. United States*, 25 Cl. Ct. 599, 601 n.3 (1992).  Indeed, federal courts routinely adjudicate foreign law
claims, even where foreign legal standards might otherwise conflict with federal law.  *See, e.g., LaSala v. Bordier et
Cie*, 519 F.3d 121, 138-39 (3d Cir. 2008).  Applying the Supremacy Clause to preempt all foreign law claims in this
case would fly in the face of international comity and extend the Clause well beyond its scope.

principles were relevant, they would preempt only the claims that seek relief identical to those

barred by Section 546(e), *i.e.*, avoidance of the redemption payments.  Section 546(e) is "not all

encompassing and [does] not offer 'fail safe' protection against every cognizable claim made in

relation to transactions that may fit within the statutory framework."  *Lehman Bros. Holdings*

*Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 469 B.R. 415, 450

(Bankr. S.D.N.Y. 2012).  Thus, Section 546(e) only preempts state law claims that seek the same

remedy and relief as avoidance claims barred under the statute.  *See, e.g.*, *AP Servs LLP*, 483

B.R. at 71-72 (state law claims seeking "[p]ayment of money damages" were not preempted

because that remedy "would not implicate the danger against which Section 546(e) is intended to

protect—unwinding settled securities transactions").  Plaintiffs' common law claims that do not

seek a remedy that would have the effect of avoidance, and in particular  the claims seeking

money damages (Counts 1-6, 12-16), are not barred by Section 546(e).

**VI.**     **All Defendants Were Properly Served.**

The Court should reject Defendants' objections to service.  Almost all of them agreed to

mail service of just the sort that occurred.  And precedent confirms that service by mail also

complies with both Rule 4 and the Hague Convention.

**A.**     **The Foreign Defendants Were Properly Served.**

1.     Nearly All Defendants Consented to Mail Service.

Nearly all Foreign Defendants expressly consented to service by mail in the Forum

Clause of their Subscription Agreements.  As discussed above, that clause applies to this dispute

and binds record holders and their beneficial owners.  *See* Part I-A, *supra*.  Many cases hold that,

in contracts like these, parties may consent to forms of service not authorized in the rules, or even

waive service entirely.  *See National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16

(1964); *National Equip. Rental, Ltd. v. Reagin*, 338 F.2d 759, 761-62 (2d Cir. 1964).   This principle applies with no less force where some of the rules pertaining to service are provided by an international treaty.   *See Alfred E. Mann Living Tr. v. ETRIC Aviation SAr.l.*, 910 N.Y.S.2d 418, 422-23 (N.Y. App. Div. 1st Dep't 2010) (holding that "[defendant's] waiver of personal service freed plaintiff from the requirements of law that would otherwise dictate the manner in which to serve [defendant] with process . . . under the Hague Convention," and approving of e-mail service despite lack of authorization for such service under Hague Convention).

The Liquidators fully complied with the Forum Clause by serving Defendants by mail. *First*, Defendants—as they acknowledge—consented to "service of process as provided by New York law," which provides for service through the Hague Convention.   Contrary to Defendants' arguments and as explained below, the Hague Convention generally authorizes mail service.   The sole exception governs those Defendants in the few countries that have opted out of the Convention's mail service provision.   *See* Part VI-B, *infra* (discussing Swiss Defendants).

*Second*, Defendants agreed to an additional, more specific form of service, beyond whatever is permitted generally under New York law:   "Subscriber consents to the service of process out of any New York court in any such Proceeding, by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to the Subscriber at the address of Subscriber then appearing on the Fund's records."   Forum Clause.   This language—which Defendants omit from their service argument—authorizes the precise form of service that the Liquidators employed here.   Even if they had not complied with generally applicable New York

service requirements (and they did), the Liquidators complied with this additional, more specific agreed-to form of service.[97]   Accordingly, service on the Foreign Defendants was effective.

### 2.    Service on the Foreign Defendants Complied with Rule 4.

Mail service of the sort that occurred here complies with Rule 4 and the Hague Convention.   Where service on a foreign defendant is effected by a means authorized in the Hague Convention, it complies with Rule 4.   *See* Fed. R. Civ. P. 4; *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299-300 (2d Cir. 2005); *Treeline Inv. Partners, LP v. Koren*, No. 07 CIV. 1964 (DLC), 2007 WL 1933860, at *5 (S.D.N.Y. July 3, 2007).[98]   And mail service on defendants residing outside the United States *is* authorized by Article 10(a) the Hague Service Convention. *See Ackermann v. Levine*, 788 F. 2d 830, 838-39 (2d Cir. 1986);[99] *Treeline Inv. Partners, LP* , 2007 WL 1933860, at*5 n.5 ("[T]he law in this Circuit continues to provide for service by mail under Article 10(a) of the Hague Service Convention."); *Estate of Ungar v. Palestinian Auth.*, 412 F. Supp. 2d 328, 335 n.3 (S.D.N.Y. 2006);[100] *Anderson v. Canarail, Inc.*, No. 05 CIV. 3828 (HB), 2005 WL 2454072, at *4 (S.D.N.Y. Oct. 6, 2005).[101]   Because the Liquidators employed international mail service of the sort these cases endorse, service was effective.

---

[97] Further, under New York law, like federal law, service made in compliance with a contractually specified method is effective.  *See Alfred E. Mann Living Tr.*, 910 N.Y.S.2d at 421-22; *Brooklyn Fed. Sav. Bank v. Crosstown W. 28 LLC*, 29 Misc. 3d 1237(A), 958 N.Y.S.2d 644 (Table) (N.Y. Sup. Ct. Kings Cty. 2010); *Fairfield Lease Corp. v. Empire Emps. Sunshine Club*, 74 Misc. 2d 329, 345 N.Y.S.2d 305 (D. Nassau Cty. Ct. 1973).

[98] New York law also provides that service on an individual or entity in a foreign country is proper if made pursuant to the Hague Service Convention.  *See Vazquez v. Sund Emba Ab*, 152 A.D.2d 389, 394-97, 548 N.Y.S.2d 728, 730-33 (N.Y. App. Div. 2d Dep't 1989).

[99] The argument that *Ackermann* should be read to provide for mail service only into the United States, not from the United States, is refuted by many cases interpreting *Ackermann*, cited herein.  *See also Hein v. Cuprum, SA de CV.*, 136 F. Supp. 2d 63, 70–71 (N.D.N.Y. 2001) ("Under Article 10 of the Hague Convention, as interpreted in this Circuit, service of process by registered mail on a foreign defendant located in a signatory country is permissible.").

[100] While there is a circuit split, *Ackermann* remains the law of this Circuit.  *See Papir v. Wurms*, 2005 WL 372061, at *4 (S.D.N.Y. Feb. 15, 2005) ("*Ackermann* is the law of this Circuit and forecloses reliance on *Brockmeyer*").

[101] Contrary to Defendants' contentions (at 73), there is no requirement that (**i**) documents be translated to comply with the Hague Convention service requirements, *see Heredia v. Transp. SA., Inc.*, 101 F. Supp. 2d 158, 161–62

### B.    The Swiss Defendants Were Properly Served Under U.S. Law.

Even if Swiss law prohibits mail service (as the Swiss Defendants argue at 70-73), service by mail remains effective for purposes of federal law.  Again, the Liquidators here served Defendants in the manner the Swiss Defendants agreed to in the Subscription Agreements.  *See* Part VI-A, *supra*.  Swiss law does not govern the legal effect of those agreements in U.S. courts; the U.S. law discussed above does.  Swiss law cannot change the law of service in this Court.[102]

The Swiss Defendants cite no case to support their view that, because the service provision does not comply with Swiss law, that provision is void or unenforceable here.  Their assertion (at 73) that "illegality is determined by the law of the jurisdiction where the illegality takes place" conflates the question whether a contract is "illegal" under foreign law with the question of whether that would invalidate the contract under domestic law.  Defendants' own case explains that the forum's choice-of-law rules govern the latter question.  *See Korea Life Ins. Co., Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 269 F. Supp. 2d 424, 438, 440-41 (S.D.N.Y. 2003).  It

---

(S.D.N.Y. 2000); *Lemme v. Wine of Japan Import, Inc.*, 631 F. Supp. 456, 464 (E.D.N.Y.1986), or **(ii)** documents be mailed by the clerk of the court to comply with the Hague Convention, *see Hein v. Cuprum, SA de CV.*, 136 F. Supp. 2d 63, 70–71 (N.D.N.Y. 2001); *Treeline Inv. Partners, LP* 2007 WL 1933860, at * 5.  By complying with the Hague Service Convention, the Liquidators satisfied Rule 4(f)(1).  Thus, alternative forms of service provided for in Rule 4(f)(2) are irrelevant.  *See Papir*, 2005 WL 372061, at *4.  To the extent an out-of-Circuit district court decision can be read as departing from this rule, *see LT Game Int'l Ltd. v. DEQ Sys. Corp.*, No. 2:13-4593 (WJM), 2013 WL 5536195 (D.N.J. 2013), the Court should adhere to the approach in the Second Circuit.  Further, *Ansell Healthcare, Inc. v. Maersk Line*, 545 F. Supp.2d 339 (S.D.N.Y. 2008), relied on by Defendants for general proposition that requirements of Rule 4 should apply, makes no mention of the use of Article 10(a) as a basis for service.  Finally, the Foreign Defendants' reliance on *Picard v. Cohmad Securities Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R. 75, 82-83 (Bankr. S.D.N.Y. 2009) (Lifland, J.), is misplaced, because in that case the reason the Court determined that service by mail was not an "internationally agreed means" was that the country to which service was mailed had expressly opted out of Article 10(a), and there was no contractual provision governing service.

[102] Federal courts apply federal law to the enforcement of contractual provisions providing for a specific method of service so long as the service method contracted for is "well calculated to give notice and [is] within the bounds of due process."  There is no question that the Forum Clause is calculated to give notice given that it specifically provided for service to the address on file with the funds.  *See Albert Levine Assocs. v. Hudson*, 43 F.R.D. 392, 394 (S.D.N.Y. 1967) (enforcing contractual provision for mail service even where address was not referenced in contract).  Moreover, due process requirements are satisfied because the Swiss Defendants did in fact receive notice and have appeared in this action to contest, among other things, service.  Many courts have also recognized that even

also explains that, under New York law, choice-of-law provisions are presumptively enforceable. *Id.* at 440. The Subscription Agreements contain a choice of law provision selecting "the laws of New York, without giving effect to its conflict of law provisions." *See* SA ¶ 16. Yet the Swiss Defendants cite no case from New York (or elsewhere) finding that failure to comply with requirements for service under foreign law could invalidate a service consent provision valid under domestic law.[103] Indeed, such an exception would, in time, swallow much of the rule. The better understanding of the law is, as this Court observed in a case involving Swiss defendants that had not contractually consented to a form of service, that "nothing prevents Defendants from waiving service formalities in favor of eliminating the inefficient traverse portion of the litigation that now stands in the way of getting to the merits." *Picard*, 418 B.R. at 84 (Lifland, J.).[104]

## CONCLUSION

For the foregoing reasons, the Liquidators respectfully request that the Motions be denied and that the Liquidators' motion for leave to amend be granted.

---

applying the law provided for in the operative contracts (New York law) would result in the same outcome. *See, e.g.*, *Nat'l Equip. Rental, Ltd.*, 375 U.S. at 316; *Frankel v. ICD Holdings*, 930 F. Supp. 54, 60 (S.D.N.Y. 1996).

[103] The time limits for service in Rule 4(m) are inapplicable to service in a foreign country. *See* Fed. R. Civ. P. 4(m); *Treeline Inv. Partners, LP*, 2007 WL 1933860, at *5. Instead, service must be completed within a "reasonable" amount of time. *See In re Bernard L. Madoff Inv. Sec. LLC*, 418 B.R. at 83-84. Here, the Liquidators timely served the Defendants in accordance with the Subscription Agreements. Accordingly, in the event this Court determines that service on any Defendant was ineffective, the Liquidators should be provided with the opportunity to re-serve such parties via whatever means are ruled effective as to such Defendant. Defendants' argument that it is too late because several years have elapsed is meritless—it was Defendants themselves who supported the stay that prevented adjudication of their service argument.

[104] The argument that the Forum Clause should be "construed" to avoid illegality is likewise unavailing. Defendants' reliance on *Bloomfield v. Bloomfield* is misplaced, because there the court held only that where the parties' intentions *are not clear from the contract*, it will endeavor to construe the contract to avoid illegality. 764 N.E.2d 950, 952-53 (N.Y. 2001). Here, the expressed intent is clear:  to permit service by mail. More fundamentally, Defendants' argument suffers from the same flaw as their "enforcement" argument. Federal cases establish the principle that parties may contract for forms of service that the rules do not authorize; allowing parties to escape those contracts at their whim by arguing that the form of service is not authorized would defeat the principle. *Cf. Albert Levine Assocs., Inc.*, 43 F.R.D. at 394 (service was proper and defendant was not permitted to "repudiate its consent provision because the contingency of litigation foreseen and provided for has become a reality."); *Frankel*, 930 F. Supp. at 60 (finding defendants were served as per contract and denying improper service motion as "frivolous").

Dated:  New York, New York
        March 31, 2017

BROWN RUDNICK LLP


By:   _/s/ David J. Molton_____
        David J. Molton
        May Orenstein
        Daniel J. Saval
        Marek P. Krzyzowski

7 Times Square
New York, New York 10036
Telephone: 212.209.4800
Facsimile: 212.209.4801
dmolton@brownrudnick.com
dsaval@brownrudnick.com
mkrzyzowski@brownrudnick.com

– and –


KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
Michael K. Kellogg (admitted *pro hac vice*)
Aaron M. Panner (admitted *pro hac vice*)
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C.  20036
Telephone: 202.326.7900
Facsimile: 202.326.7999
mkellogg@kellogghansen.com
apanner@kellogghansen.com

*Counsel for the Foreign Representatives*

# Appendix A[1]

|   | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 1. | Adv. Pro. 10-03505 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Privee Edmond De Rothschild (Eur.), et al.* | Standard Chartered International (USA) Ltd. |
| 2. | Adv. Pro. 10-03515 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Bilbao Vizcaya Argentaria, S.A., et al.* | BBVA Miami |
| 3. | Adv. Pro. 10-03516 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al.* | Merrill Lynch, Pierce, Fenner & Smith, Inc. |
| 4. | Adv. Pro. 10-03521 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lombardy Props. Ltd., et al.* | Lombardy Properties Limited |
| 5. | Adv. Pro. 10-03540 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Vontobel Asset Mgmt. Inc., et al.* | Vontobel Asset Management Inc. |
| 6. | Adv. Pro. 10-03615 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank of Am. Nat'l Trust & Sav. Ass'n, et al.* | Bank of America National Trust and Savings Association |
| 7. | Adv. Pro. 10-03618 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/BBVA Miami, et al.* | BBVA Miami |
| 8. | Adv. Pro. 10-03622 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank NA London, et al.* | Citibank NA London |
| 9. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Mkts. Co., et al.* | HSBC Bank USA, N.A. |
| 10. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Mkts. Co., et al.* | Safra National Bank of New York |
| 11. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Mkts. Co., et al.* | ZCM Matched Funding Corp |
| 12. | Adv. Pro. 10-03744 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank Trust Co. Am., et al.* | Deutsche Bank Trust Company Americas |
| 13. | Adv. Pro. 10-03752 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Brown Bros. Harriman & Co., et al.* | Bank Boston International Florida |
| 14. | Adv. Pro. 10-03752 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Brown Bros. Harriman & Co., et al.* | Brown Brothers Harriman & Co. |
| 15. | Adv. Pro. 10-03752 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Brown Bros. Harriman & Co., et al.* | Credit Agricole (Miami) |
| 16. | Adv. Pro. 10-03752 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Brown Bros. Harriman & Co., et al.* | Credit Lyonnais Miami n/k/a Credit Lyonnais S.A. Miami |

[1] The Defendants included in this Appendix A are those that signed Defendants' Consolidated Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend and in Support of Defendants' Motion to Dismiss and do not contend that they are Foreign Defendants. *Compare* Defendants' Appendix A with Defendants' Appendix B.

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 17. | Adv. Pro. 10-03799 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Hambros Guernsey Nominees, et al.* | SG Hambros Bank & Trust (Guernsey) Ltd. n/k/a SG Hambros Bank (Channel Islands) Limited |
| 18. | Adv. Pro. 10-04099 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Private Bank & Trust Cayman Ltd., et al.* | Tremont Market Neutral Portfolio Ltd. |
| 19. | Adv. Pro. 10-04099 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Private Bank & Trust Cayman Ltd., et al.* | Tremont Partners Inc. |
| 20. | Adv. Pro. 11-01571 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banc of America Securities LLC, et al.* | Banc of America Securities LLC |
| 21. | Adv. Pro. 11-01578 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. NYROY, et al.* | NYROY, Royal Bank of Canada |
| 22. | Adv. Pro. 11-01592 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Judith Cherwinka, et al.* | Judith Cerwinka a/ka/a Judith Cherwinka IRA and Beneficial Owners of Accounts Held in the Name of Judith Cherwinka |
| 23. | Adv. Pro. 11-01595 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. KWI, et al.* | KWI |
| 24. | Adv. Pro. 11-02253 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada, et al.* | Royal Bank of Canada a/k/a RBC Capital Markets Corporation |
| 25. | Adv. Pro. 11-02336 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Naidot & Co., et al.* | Bessemer Trust Company |
| 26. | Adv. Pro. 11-02336 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Naidot & Co., et al.* | Naidot & Co. |
| 27. | Adv. Pro. 12-01124 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Itau Europa International, et al.* | Banco Itau Europa International |
| 28. | Adv. Pro. 12-01143 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Centre College, et al.* | Centre College |
| 29. | Adv. Pro. 12-01569 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/GSCO London, et al.* | FS/GSCO New York |

## Appendix A-1[2]

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 1. | Adv. Pro. 11-1607 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Melguizo, et al.* | Tatiana Melguizo |
| 2. | Adv. Pro. 10-3870 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Arden Int'l Capital Ltd., et al.* | Arden International Capital Limited † |
| 3. | Adv. Pro. 12-1145 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Gates Charitable Trust, et al.* | Gates Charitable Trust |
| 4. | Adv. Pro. 11-1458 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Arden Endowment Advisers Ltd., et al.* | Arden Endowment Advisers, Ltd. * † |
| 5. | Adv. Pro. 11-1458 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Arden Endowment Advisers Ltd., et al.* | Arden Asset Management, Inc. * † |

---

[2] The Defendants included in this Appendix A-1 are those that are not listed in Defendants' Appendix A, but filed joinders to Defendants' Consolidated Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend and in Support of Defendants' Motion to Dismiss, for whom the Liquidators allege that they maintain a registered address in the United States, were incorporated under the laws of the United States, and/or are a citizen of the United States. Defendants that are identified with a "†" dispute some or all of these allegations. Defendants that are identified with a "*" are Defendants that the Liquidators do not advance jurisdictional allegations against based on the Subscription Agreements.

# Appendix B[3]

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 1. | Adv. Pro. 10-03496 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.* | Theodoor GGC Amsterdam a/k/a Theodoor Gilissen Global Custody N.V. |
| 2. | Adv. Pro. 10-03502 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Dominion Sec. Sub A/C, et al.* | RBC Dominion Securities |
| 3. | Adv. Pro. 10-03504 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS ABN AMRO Global Custody, et al.* | FS ABN AMRO Global Custody |
| 4. | Adv. Pro. 10-03505 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Privee Edmond De Rothschild (Eur.), et al.* | Banque Privee Edmond de Rothschild (Europe) |
| 5. | Adv. Pro. 10-03507 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Meritz Fire & Marine Ins. Co. Ltd., et al.* | Meritz Fire & Marine Insurance Company LTD |
| 6. | Adv. Pro. 10-03508 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Schroder & Co. (Asia) Ltd., et al.* | Schoder & Co. (Asia) Ltd. |
| 7. | Adv. Pro. 10-03509 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Santander (Suisse) S.A., et al.* | Banco Santander (Suisse) S.A. |
| 8. | Adv. Pro. 10-03510 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Hapoalim (Suisse) Ltd., et al.* | Bank Hapoalim (Suisse) Ltd. |
| 9. | Adv. Pro. 10-03512 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS Mizrahi Tefahot Bank Ltd., et al.* | Mizrahi Tefahot Bank Limited |
| 10. | Adv. Pro. 10-03513 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Syz & Co. S.A., et al.* | Banque Syz & Co. SA |
| 11. | Adv. Pro. 10-03514 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Piguet & Cie S.A., et al.* | Banque Piguet & Cie SA |
| 12. | Adv. Pro. 10-03515 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Bilbao Vizcaya Argentaria, S.A., et al.* | Banco Bilbao Vizcaya Argentaria, S.A. |
| 13. | Adv. Pro. 10-03595 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) S.A., et al.* | SG Private Banking (Suisse) SA |
| 14. | Adv. Pro. 10-03616 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque de Lux., et al.* | Banque de Luxembourg |

[3] The Defendants included in this Appendix B are those that do not contest that the Liquidators alleged that they signed a Subscription Agreement. *Compare* Defendants' Appendix B with Defendants' Appendix B-1. Defendants identified with a "*" filed joinders to Defendants' Consolidated Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend and in Support of Defendants' Motion to Dismiss and, therefore, are not listed in Defendants' Appendix A and do not otherwise contest that they signed a Subscription Agreement. The Liquidators also note that defendant Bank Hapoalim B.M., Tel Aviv in Adversary Proceeding No. 11-01467 incorrectly contends that the Liquidators do not allege that it entered into a Subscription Agreement. *See* Defendants' Appendix B-1 Row 162.

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 15. | Adv. Pro. 10-03619 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Inst. Trust Srvs. (Asia) Ltd., et al.* | HSCBC Institutional Trust Services (Asia) Limited |
| 16. | Adv. Pro. 10-03620 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Credit Suisse Int'l, et al.* | Credit Suisse International |
| 17. | Adv. Pro. 10-03621 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. FS Oddo & Cie, et al.* | Oddo & Cie |
| 18. | Adv. Pro. 10-03623 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. AXA Isle of Man, et al.* | AXA Isle of Man Limited |
| 19. | Adv. Pro. 10-03624 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Caceis Bank Lux., et al.* | Caceis Bank Luxembourg |
| 20. | Adv. Pro. 10-03625 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. EFG Bank, et al.* | EFG Bank a/k/a EFG Bank AG and/or EFG Bank SA |
| 21. | Adv. Pro. 10-03628 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Robinson & Co., et al.* | Robinson & Co. |
| 22. | Adv. Pro. 10-03629 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/HSBC Private Banking Nom, et al.* | HSBC Private Banking Nominee 1 (Jersey) Litd. (n/k/a Republic Nominees Limited) |
| 23. | Adv. Pro. 10-03630 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Sec. Servs. (Lux.) S.A., et al.* | HSBC Securities Services (Luxembourg), SA |
| 24. | Adv. Pro. 10-03631 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Guernsey) Ltd., et al.* | HSBC Private Bank (C.I.) Limited |
| 25. | Adv. Pro. 10-03631 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Guernsey) Ltd., et al.* | HSBC Private Bank (Guernsey) Ltd. (n/k/a HSBC Private Bank (C.I.) Limited) |
| 26. | Adv. Pro. 10-03632 | *FS/ANDBanc Andorra a/k/a Andorra Banc Agricol Reig, S.A.* | ANDBanc Andorra a/k/a Andorra Banc Agricol Reig, S.A. |
| 27. | Adv. Pro. 10-03633 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Suisse) S.A., et al.* | HSBC Private Bank (Suisse) S.A. |
| 28. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Mkts. Co., et al.* | Zurich Capital Markets Company |
| 29. | Adv. Pro. 10-03640 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank (Switz.) AG, et al.* | Citibank (Switzerland) AG a/k/a Citibank (Switzerland) Zurich |
| 30. | Adv. Pro. 10-03745 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank (Suisse) S.A. Geneve, et al.* | Deutsche Bank (Suisse) SA Geneve |
| 31. | Adv. Pro. 10-03746 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank (Cayman), et al.* | Deutsche Bank (Cayman) |
| 32. | Adv. Pro. 10-03747 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank AG Sing., et al.* | Deutsche Bank AG Singapore |

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 33. | Adv. Pro. 10-03750 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Blubank Ltd., et al.* | Blubank Ltd. n/k/a Inteligo Bank Ltd. |
| 34. | Adv. Pro. 10-03753 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Dresdner LateinAmerika AG, et al.* | Dresdner Lateinamerika AG |
| 35. | Adv. Pro. 10-03753 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Dresdner LateinAmerika AG, et al.* | UBS Deutschland AG |
| 36. | Adv. Pro. 10-03754 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. CDC IXIS, et al.* | CDC Ixis |
| 37. | Adv. Pro. 10-03755 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Itau Europa Lux. SA, et al.* | Banco Itau Europa Luxembourg SA |
| 38. | Adv. Pro. 10-03756 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/CBESSA, et al.* | FS/CBESSA a/k/a/ Banque Privee Espirito Santo SA f/k/a Compagnie Bancaire Espirito Santo SA |
| 39. | Adv. Pro. 10-03757 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. SNS Global Custody B.V., et al.* | SNS Global Custody B.V. a/k/a SNS Bank N.V. |
| 40. | Adv. Pro. 10-03758 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Servs. (Cayman) Ltd. Ref Greenlake Arbitrage Fund Ltd., et al.* | UBS Fund Services (Cayman) Limited |
| 41. | Adv. Pro. 10-03764 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Pictet & Cie, et al.* | Banque Pictet & Cie SA |
| 42. | Adv. Pro. 10-03776 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis (Isle of Man) Nominees Ltd., et al.* | Fortis (Isle of Man) Nominees Limited a/k/a ABN AMRO Fund Services (Isle of Man) Nominees Limited |
| 43. | Adv. Pro. 10-03778 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Wall Street Sec. S.A., et al.* | Wall Street Securities S.A. f/k/a Bantal Brothers S.A. |
| 44. | Adv. Pro. 10-03780 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS AG N.Y., et al.* | UBS AG New York |
| 45. | Adv. Pro. 10-03782 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Bah.), et al.* | Credit Suisse (Bahamas) a/k/a Credit Suisse (Bahamas) Limited |
| 46. | Adv. Pro. 10-03782 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Bah.), et al.* | Credit Suisse AG, Nassau Branch |
| 47. | Adv. Pro. 10-03783 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Atlantico (Bah.), et al.* | Maria Férère as Liquidator of Banco Atlantico (Bahamas) a/k/a Banco Atlantico (Bahamas) Bank & Trust Limited |
| 48. | Adv. Pro. 10-03786 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) S.A., et al.* | SG Private Banking (Suisse) SA |

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 49. | Adv. Pro. 10-03787 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Atlantico (Gib.) Ltd., et al.* | EFG Bank (Gibraltar) Ltd. |
| 50. | Adv. Pro. 10-03787 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Atlantico (Gib.) Ltd., et al.* | European Financial Group EFG S.A. and European Financial Group EFG (Luxembourg) S.A. |
| 51. | Adv. Pro. 10-03788 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch Bank (Suisse) S.A., et al.* | Merrill Lynch Bank (Suisse) SA |
| 52. | Adv. Pro. 10-03791 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Monte Paschi Ir. Ltd., et al* | Monte Paschi Ireland Litd. |
| 53. | Adv. Pro. 10-03792 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ZCM Asset Holding Co. (Berm.) Ltd., et al.* | ZCM Asset Holding Company (Bermuda) Ltd. |
| 54. | Adv. Pro. 10-03793 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Nomura Int'l PLC, et al.* | Nomura International PLC |
| 55. | Adv. Pro. 10-03795 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lombard Odier Darier Hentsch & Cie, et al.* | Lombard Odier Darier Hentsch & Cie |
| 56. | Adv. Pro. 10-03799 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Hambros Guernsey Nominees, et al.* | Hambros Guernsey Nominees |
| 57. | Adv. Pro. 10-03799 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Hambros Guernsey Nominees, et al.* | SG Hambros Bank (Channel Islands) Limited-Guernsey Branch |
| 58. | Adv. Pro. 10-03799 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Hambros Guernsey Nominees, et al.* | SG Hambros Nominees (Jersey) |
| 59. | Adv. Pro. 10-03801 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ING Bank (Suisse) S.A., et al.* | ING (Suisse) SA, as predecessor to Bank Julius Baer & Co. Ltd. |
| 60. | Adv. Pro. 10-03863 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Sumitomo Banking & Trust Co. Ltd., et al.* | Sumitomo Trust & Banking Co., Ltd. |
| 61. | Adv. Pro. 10-03864 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Natixis Private Banking Int'l, et al.* | Natixis Bank, formerly known as Natixis Private Banking International S.A. |
| 62. | Adv. Pro. 10-03865 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Celfin Int'l Ltd., et al.* | Celfin International Limited |
| 63. | Adv. Pro. 10-03867 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS Stichting Stroeve Global Custody, et al.* | Stichting Stroeve Global Custody |
| 64. | Adv. Pro. 10-03868 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Kredietbank S.A. Luxembourgeoise, et al.* | Kredietbank SA Luxembourgeoise |
| 65. | Adv. Pro. 10-03869 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Six Sis AG, et al.* | SIX SIS AG |
| 66. | Adv. Pro. 10-03871 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Caceis Bank EX-IXIS IS, et al.* | Caceis Bank Ex Ixis Is |

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 67. | Adv. Pro. 10-03873 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bordier & Cie, et al.* | Bordier & Cie |
| 68. | Adv. Pro. 10-04087 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada (Suisse), et al.* | Banque SYZ SA as successor to Royal Bank of Canada (Suisse) S.A. |
| 69. | Adv. Pro. 10-04088 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Lux.) S.A., et al.* | Credit Suisse (Luxembourg) SA |
| 70. | Adv. Pro. 10-04089 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Inversis SA, et al.* | Banco Inversis S.A. |
| 71. | Adv. Pro. 10-04090 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Dexia BIL, et al.* | Banque Internationale à Luxembourg SA f/k/a Dexia Banque Internationale à Luxembourg SA |
| 72. | Adv. Pro. 10-04090 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Dexia BIL, et al.* | Candriam World Alternative (F/K/A Dexia World Alternative) |
| 73. | Adv. Pro. 10-04091 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Dexia Private Bank (Switz.), et al.* | Banque Internationale à Luxembourg (Suisse) SA f/k/a Dexia Private Bank (Switzerland) SA |
| 74. | Adv. Pro. 10-04094 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Natexis Banques Populaires, et al.* | Natixis S.A., formerly known as Natexis Banques Populaires |
| 75. | Adv. Pro. 10-04095 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Servs. (Cayman) Ltd., et al.* | UBS Fund Services (Cayman) Limited |
| 76. | Adv. Pro. 10-04096 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco di Desio e Della Brianza, et al.* | Banco di Desio e Della Brianza |
| 77. | Adv. Pro. 10-04096 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco di Desio e Della Brianza, et al.* | Zenit Alternative Investment |
| 78. | Adv. Pro. 10-04096 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco di Desio e Della Brianza, et al.* | Zenit Master |
| 79. | Adv. Pro. 10-04096 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco di Desio e Della Brianza, et al.* | Zenit Advanced Strategies |
| 80. | Adv. Pro. 10-04096 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco di Desio e Della Brianza, et al.* | Fondo Hunder |
| 81. | Adv. Pro. 10-04097 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Nominees (IOM) Ltd., et al.* | Banco Nominees (IOM) Limited (n/k/a Banco Nominees 2 (Guernsey) Limited) |
| 82. | Adv. Pro. 10-04098 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Arbitrage SNC, et al.* | BNC Parias Arbitrage SNC |

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 83. | Adv. Pro. 10-04099 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Private Bank & Trust Cayman Ltd., et al.* | BNP Paribas Private Bank and Trust Cayman Ltd. |
| 84. | Adv. Pro. 10-04100 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citivic Nominees Ltd., et al.* | Citivic Nominees Limited |
| 85. | Adv. Pro. 10-04236 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse Nominees, et al.* | Credit Suisse Nominees a/k/a Credit Suisse Nominees (Guernsey) Limited A/C Gib |
| 86. | Adv. Pro. 10-04238 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Hansard Europe Ltd., et al.* | Hansard Europe Ltd. |
| 87. | Adv. Pro. 11-01242 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Fortis Banque Lux., et al.* | Fortis Banque Luxembourg |
| 88. | Adv. Pro. 11-01243 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Julius Baer & Co. Ltd., Zurich, et al.* | Bank Julius Baer & Co. Ltd |
| 89. | Adv. Pro. 11-01244 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Agricole (Suisse) S.A., et al.* | Credit Agricole (Suisse) SA a/k/a Banque Du Credit Agricole (Suisse) SA |
| 90. | Adv. Pro. 11-01249 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Schroder & Co. Bank AG, et al.* | Schroder & Co. Bank AG |
| 91. | Adv. Pro. 11-01250 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Lux. SA, et al.* | UBS Luxembourg SA |
| 92. | Adv. Pro. 11-01253 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Swedclient/IAM, et al.* | FS/Swedclient/IAM |
| 93. | Adv. Pro. 11-01254 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/AEB Lux., et al.* | FS/AEB LUX a/k/a American Express Bank (London) a/k/a Standard Chartered PLC |
| 94. | Adv. Pro. 11-01256 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque SCS Alliance S.A., et al.* | Banque SCS Alliance SA |
| 95. | Adv. Pro. 11-01257 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Mirabaud & Cie, et al.* | Mirabaud & Cie a/k/a Mirabaud & Cie Banquiers Prives |
| 96. | Adv. Pro. 11-01258 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Servs. (Ir.) Ltd., et al.* | UBS Fund Services (Ireland) Ltd. |
| 97. | Adv. Pro. 11-01259 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Bank (Suisse) S.A., et al.* | Barclays Bank (Suisse) SA |
| 98. | Adv. Pro. 11-01260 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/NBK Kuwait, et al.* | National Bank of Kuwait S.A.K. |
| 99. | Adv. Pro. 11-01460 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. FS/LAB/AXA PM, et al.* | FS/LAB/AXA PM |

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 100. | Adv. Pro. 11-01462 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Grand Cathay Sec. (H.K.) Ltd., et al.* | Grand Cathay Securities (Hong Kong) Limited |
| 101. | Adv. Pro. 11-01463 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch Int'l, et al.* | Merrill Lynch International |
| 102. | Adv. Pro. 11-01464 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Natixis f/k/a IXIS Corporate And Investment Bank, et al.* | Natixis S.A. (in its own capacity and as successorin-interest of IXIS Corporate & Investment Bank) |
| 103. | Adv. Pro. 11-01470 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Barfield Nominees Ltd., et al.* | Barfield Nominees Limited |
| 104. | Adv. Pro. 11-01486 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Korea Exch. Bank* | Korea Exchange Bank |
| 105. | Adv. Pro. 11-01564 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank Nominees (Jersey) Ltd., et al.* | Deutsche Bank Nominees (Jersey) |
| 106. | Adv. Pro. 11-01565 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/ING Lux, et al.* | ING Luxembourg |
| 107. | Adv. Pro. 11-01566 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/SG Private Banking (Lugano-Svizzera) SA, et al.* | FS/SG Private Banking (Lugano-Svizzera) SA |
| 108. | Adv. Pro. 11-01567 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Global Fund Porvenir, et al.* | Global Fund Porvenir |
| 109. | Adv. Pro. 11-01569 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Banque Degroof Bruxelles, et al.* | Banque Degroof Bruxelles a/k/a Banque Degroof SA Bruxelles |
| 110. | Adv. Pro. 11-01575 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Industriel et Commercial Sing. Branch, et al.* | Credit Industriel et Commercial Singapore Branch |
| 111. | Adv. Pro. 11-01576 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Multi-Strategy Fund Ltd., et al.* | Multi-Strategy Fund Limited |
| 112. | Adv. Pro. 11-01577 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Cathay Life Ins. Co. Ltd., et al.* | Cathay Life Insurance Company Limited. |
| 113. | Adv. Pro. 11-01579 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Sec. Nominees Ltd., et al.* | BNP Paribas Securities Services Nominees Ltd. |
| 114. | Adv. Pro. 11-01581 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Rahn & Bodmer Banquiers, et al.* | Rahn & Bodmer Banquiers |
| 115. | Adv. Pro. 11-01582 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada (Asia) Ltd., et al.* | Royal Bank of Canada (Asia) Limited |
| 116. | Adv. Pro. 11-01584 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Societe Generale Bank & Trust (Lux.), et al.* | Societe Generale Bank & Trust (Luxembourg) |
| 117. | Adv. Pro. 11-01585 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque de Reescompte de Placement, et al.* | Banque de Reescompte et de Placement a/k/a BAREP |

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 118. | Adv. Pro. 11-01586 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Swedbank, et al.* | Swedbank |
| 119. | Adv. Pro. 11-01587 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bie Bank & Trust Bah. Ltd., et al.* | BIE Bank & Trust Bahamas Ltd. |
| 120. | Adv. Pro. 11-01589 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNY AIS Nominees Ltd., Credit Andorra/Crediinvest, et al.* | BNY AIS Nominees, Ntd. |
| 121. | Adv. Pro. 11-01591 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. All Funds Bank, et al* | AllFunds Bank |
| 122. | Adv. Pro. 11-01594 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/HSBC Guyerzeller Zurich, et al.* | FS/HSBC Guyerzeller Zurich (n/k/a HSBC Trust Company AG) |
| 123. | Adv. Pro. 11-01598 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque et Caisse D'Epargne de L'Etat Luxembourg, et al.* | Banque et Caisse D'Epargne de L'Etat Luxembourg |
| 124. | Adv. Pro. 11-01599 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Eduardo Fernandez de Valderrama Murillo, et al.* | Eduardo Fernandez de Valderrama Murillo |
| 125. | Adv. Pro. 11-01600 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/BBVA Zurich/Shares, et al.* | BBVA Zurich/Shares |
| 126. | Adv. Pro. 11-01601 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse AG Nassau Branch Wealth Mgmt., et al.* | Credit Suisse AG Nassau Branch Wealth Management |
| 127. | Adv. Pro. 11-01604 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. PFPC Bank Ltd., et al.* | BNY Mellon International Bank Ltd. f/k/a PFPC International Bank Ltd., PNC International Bank Limited and PFPC Bank Ltd. |
| 128. | Adv. Pro. 11-01606 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Koch Inv. (UK) Co., et al.* | Koch Investment (UK) Company |
| 129. | Adv. Pro. 11-01610 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Israel Discount Bank, Ltd., Tel Aviv, et al.* | Israel Discount Bank, Limited, Tel Aviv |
| 130. | Adv. Pro. 11-01612 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Sarasin & Cie AG, et al.* | Bank Sarasin & Cie AG |
| 131. | Adv. Pro. 11-01614 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis SA/NV, et al.* | Fortis Bank Nederland NV |
| 132. | Adv. Pro. 11-01615 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Societe Europeenne De Banque S.A. et al* | Societe Europeenne de Banque S.A. |
| 133. | Adv. Pro. 11-01617 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank SA/NV, et al.* | BNP Paribas Fortis |

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 134. | Adv. Pro. 11-01619 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. FS/NBP Titres, et al.* | NBP Titres |
| 135. | Adv. Pro. 11-01719 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Abu Dhabi Inv. Auth.* | Abu Dhabi Investment Authority |
| 136. | Adv. Pro. 11-01760 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Vontobel AG, et al.* | Bank Vontobel AG |
| 137. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors, et al.* | Lion Global Investors f/k/a Lion Fairfield Capital Management |
| 138. | Adv. Pro. 11-02422 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Global Custody Services N.V., et al.* | Fortis Global Custody Services N.V. n/k/a ABN AMRO Global Custody Services N.V. |
| 139. | Adv. Pro. 11-02440 | *Fairfield Sentry Ltd. (In Liquidation), et al v. Bank Sal. Oppenheim Jr. & Cie (Schweiz) AG a/k/a Bank Sal. Oppenheim Jr. & Cie, et al.* | Deutsche Bank (Suisse) SA as successor to Bank Sal. Oppenheim Jr. & Cie (Schweiz) AG A/K/A Bank Sal Oppenheim Jr. & CIE |
| 140. | Adv. Pro. 11-02530 | *Fairfield Sigma Limited (In Liquidation), et al. v. Avalon Absolute Return Funds PLC, et al.* | Avalon Absolute Return Funds PLC |
| 141. | Adv. Pro. 11-02532 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deltec Bank & Trust Limited, et al.* | Deltec Bank & Trust Limited |
| 142. | Adv. Pro. 11-02534 | *Fairfield Sigma Limited (In Liquidation), et al. v. Simgest SpA, et al.* | Simgest SpA |
| 143. | Adv. Pro. 11-02594 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Rothschild Trust (Schweiz) AG, et al.* | Rothschild Trust (Schweiz) AG |
| 144. | Adv. Pro. 11-02611 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Andorra Banc Agricol Reig SA, et al.* | Andorra Banc Agricol Reig S.A. |
| 145. | Adv. Pro. 11-02612 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse Nominees (Guernsey) Limited, et al.* | Credit Suisse Nominees (Guernsey) Limited |
| 146. | Adv. Pro. 11-02613 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Societe Generale Bank & Trust S.A. (Luxembourg), et al.* | Societe Generale Bank & Trust SA (Luxembourg) |
| 147. | Adv. Pro. 11-02771 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fullerton Capital PTE, Ltd., f/k/a Goldtree Investments Private Limited, et al.* | Fullerton Capital PTE Ltd. |
| 148. | Adv. Pro. 11-02772 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BankMed (Suisse) S.A., f/k/a Banque de la Mediterranee (Suisse) S.A., et al.* | BankMed (Suisse) SA |

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 149. | Adv. Pro. 11-02787 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Agricole Titres, et al.* | Credit Agricole Titres) |
| 150. | Adv. Pro. 12-01119 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank Nederland NV, et al.* | Fortis Bank (Nederland) N.V. |
| 151. | Adv. Pro. 12-01123 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banca Carige SPA, et al.* | Banca Carige S.P.A. |
| 152. | Adv. Pro. 12-01125 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Investec Bank (Switzerland) AG, et al.* | Investec Bank (Switzerland) AG |
| 153. | Adv. Pro. 12-01127 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse Nassau Branch Wealth Management a/k/a Credit Suisse Wealth Management Limited, et al.* | Credit Suisse Nassau Branch Wealth Management a/k/a Credit Suisse Wealth Management Limited |
| 154. | Adv. Pro. 12-01128 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Seoul Branch, Ltd., et al.* | HSCBC Seoul Branch, Ltd. |
| 155. | Adv. Pro. 12-01131 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Rothschild & Cie Banque Paris, et al.* | Rothschild & Cie Banque Paris |
| 156. | Adv. Pro. 12-01132 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Dexia Investor Services Espana S.A., et al.* | RBC Dexia Investor Services Espana, S.A. |
| 157. | Adv. Pro. 12-01134 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. SEI Investments Trustee and Custodial Services (Ireland) LTD Nominee A/C 1, et al.* | SEI Investements Trustee and Custodial Services (IRELAND) Ltd. |
| 158. | Adv. Pro. 12-01135 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Bank of Ireland Nominees Limited, et al.* | Bank of Ireland Nominees Limited |
| 159. | Adv. Pro. 12-01136 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Bred Banque Populaire, et al.* | BRED Banque Populaire |
| 160. | Adv. Pro. 12-01140 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banca Cesare Ponti SPA, et al.* | Banca Cesare Ponti S.P.A. |
| 161. | Adv. Pro. 12-01142 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank Korea Inc., et al.* | Citibank Korea Inc. |
| 162. | Adv. Pro. 12-01144 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Hapoalim BM, London, et al.* | Bank Hapoalim B.M., London |
| 163. | Adv. Pro. 12-01147 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Degroof Luxembourg SA, et al.* | Banque Degroof Luxembourg S.A. |
| 164. | Adv. Pro. 12-01148 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Banca Popolare Dell'Alto Adige Soc. Coop. Resp. Lim., et al.* | Banca Popolare dell'Alto Adige Soc. coop. pa. |
| 165. | Adv. Pro. 12-01155 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Kiangsu Chekiang and Shanghai Residents (H.K.) Association, et al.* | Kiangsu Chekiang and Shanghai Residents (H.K.) Association |

|      | Case No. | Case Name | Moving Defendant Name |
|------|----------|-----------|------------------------|
| 166. | Adv. Pro. 12-01158 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Bank Leumi Israel, et al.* | Bank Leumi Israel |
| 167. | Adv. Pro. 12-01162 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Delta S.P.A., et al.* | Delta S.P.A. |
| 168. | Adv. Pro. 12-01164 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Public Bank (Honk Kong) Limited f/k/a Asia Commercial Bank, et al.* | Public Bank (Hong Kong) Limited |
| 169. | Adv. Pro. 12-01164 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Public Bank (Honk Kong) Limited f/k/a Asia Commercial Bank, et al.* | Public Bank (Nominees) Limited |
| 170. | Adv. Pro. 12-01187 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Popolare Di Verona E Novara Luxembourg S.A. n/k/a Banco Popolare Luxembourg S.A., et al.* | Banco Popolare Di Verona E Novara Luxembourg S.A. n/k/a Banco Popolare Luxembourg S.A. |
| 171. | Adv. Pro. 12-01270 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Securities (Panama) SA f/k/a Banistmo Securities, Inc., et al.* | HSBC Securities (Panama) SA |
| 172. | Adv. Pro. 12-01271 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Hontai Life Insurance Company Limited, et al.* | Hontai Life Insurance Company Limited |
| 173. | Adv. Pro. 12-01272 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Schroders Italy SIM SpA, et al.* | Schroders Italy SIM SpA |
| 174. | Adv. Pro. 12-01285 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Banca Profilo SPA, et al.* | Banca Profilo SPA |
| 175. | Adv. Pro. 12-01287 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Patagonia (Uruguay) S.A.I.F.E., et al.* | Banco Patagonia (Uruguay) S.A.I.F.E. |
| 176. | Adv. Pro. 12-01288 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Cais Bank, et al.* | Cais Bank |
| 177. | Adv. Pro. 12-01288 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Cais Bank, et al.* | Caylon Paris |
| 178. | Adv. Pro. 12-01290 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC International Trustee Limited, et al.* | HSBC International Trustee Limited |
| 179. | Adv. Pro. 12-01294 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Alok Sama, et al.* | Alok Sama |
| 180. | Adv. Pro. 12-01295 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Sarasin & Cie a/k/a Bank Sarasin & Co., et al.* | Bank Sarasin & Cie a/k/a Bank Sarasin & Co. |
| 181. | Adv. Pro. 12-01551 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Espana f/k/a Fortis Bank (Espana), et al.* | BNP Paribas Espana |

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 182. | Adv. Pro. 12-01555 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSH Nordbank Securities S.A., et al.* | HSH Nordbank Securities S.A. |
| 183. | Adv. Pro. 12-01569 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/GSCO London, et al.* | FS/GSCO London |
| 184. | Adv. Pro. 16-01214 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Investor Services Bank S.A. f/k/a RBC Dexia Investor Services Bank S.A., et al.* | RBC Dexia Investor Services Bank, S.A. |
| 185. | Adv. Pro. 12-1122 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Maple Key Mkt. Neutral Cayman Islands LP, et al.* | Maple Securities U.S.A. Inc.* |
| 186. | Adv. Pro. 11-1607 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Melguizo, et al.* | Jorge Herman Melguizo* |
| 187. | Adv. Pro. 11-1607 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Melguizo, et al.* | Lina Maria Melguizo* |
| 188. | Adv. Pro. 12-1289 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Dreadnought Fin. OY, et al.* | Dreadnought Finance OY* |
| 189. | Adv. Pro. 11-1596 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Kefong Lee, et al.* | Kefong Lee* |
| 190. | Adv. Pro. 10-4093 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Commercial Bank of Kuwait, et al.* | Commercial Bank of Kuwait* |
| 191. | Adv. Pro. 11-1263 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Clearstream Banking S.A., et al.* | Clearstream Banking S.A.* |
| 192. | Adv. Pro. 12-1146 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Portobelo Advs., Inc., et al.* | Portobelo Advisors, Inc.* |
| 193. | Adv. Pro. 11-1616 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Woori Bank, et al.* | Woori Bank* |
| 194. | Adv. Pro. 12-1129 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Catalunya Caixa, et al.* | Catalunya Caixa f/k/a Caixa Catalunya a/k/a Caixa D'Estalvis de Catalunya* |

Appendix B [12]

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 195. | Adv. Pro. 10-4212 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Morgan Stanley AG, et al.* | Bank Morgan Stanley AG* |
| 196. | Adv. Pro. 11-1574 | *Fairfield Sentry Limited (In Liquidation), et al. v. Bureau of Labor Insurance, et al.* | Bureau of Labor Insurance* |
| 197. | Adv. Pro. 10-3503 | *Fairfield Sigma Ltd. (In Liquidation), et al. v. Tercas – Cassa di Risparmio della Provincia di Teramo S.P.A., et al.* | Banca Popolare di Bari S.C.p.A.* |
| 198. | Adv. Pro. 10-3519 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Neue Bank AG, et al.* | Neue Bank AG* |

# Appendix B-1[4]

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 1. | Adv. Pro. 10-03508 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Schroder & Co. (Asia) Ltd., et al.* | Perenco SA |
| 2. | Adv. Pro. 10-03515 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Bilbao Vizcaya Argentaria S.A., et al.* | Banco Bilbao Vizcaya Argentaria (Portugal) S.A. |
| 3. | Adv. Pro. 10-03515 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Bilbao Vizcaya Argentaria S.A., et al.* | BBVA Fundas Privanza |
| 4. | Adv. Pro. 10-03515 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Bilbao Vizcaya Argentaria S.A., et al.* | BBVA Grand Cayman |
| 5. | Adv. Pro. 10-03595 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) SA, et al.* | FIF Advanced Ltd. |
| 6. | Adv. Pro. 10-03621 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS Oddo & Cie, et al.* | OAM |
| 7. | Adv. Pro. 10-03624 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Caceis Bank Luxembourg, et al.* | Natixis S.A. or its predecessors in interest as the owner/operator of certain accounts named as defendants |
| 8. | Adv. Pro. 10-03628 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Robinson & Co., et al.* | Murdoch & Co |
| 9. | Adv. Pro. 10-03630 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Securities Services (Luxembourg) SA, et al.* | Private-Space Ltd. |
| 10. | Adv. Pro. 10-03631 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Guernsey) Ltd., et al.* | Republic Nominees Limited |
| 11. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Markets Company, et al.* | Banco Itau Europa Luxembourg |
| 12. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Markets Company, et al.* | Citibank (Switzerland) Zurich |
| 13. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Markets Company, et al.* | Citivic Nominees Limited |
| 14. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Markets Company, et al.* | Compagnie Bancaire Espirito Santo SA a/k/a Banque Privee Espirito Santo SA |
| 15. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Markets Company, et al.* | EFG Bank f/k/a EFG Private Bank S.A. |
| 16. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Markets Company, et al.* | Merrill Lynch Bank |

---

[4] The Defendants in this Appendix B-1 include those that the Liquidators allege are beneficial owners with respect to a record holder that signed a Subscription Agreement. Defendants identified with a "*" are not listed in Defendants' Appendix A, but filed a joinder to the Defendants' Consolidated Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend and in Support of Defendants' Motion to Dismiss.

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 17. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Markets Company, et al.* | ZCM Asset Holding Co.Bermuda |
| 18. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Allianz Bank Financial Advisors SpA |
| 19. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Arsenal SPC |
| 20. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Arsenal SPC OBO Glasgow SEG Port |
| 21. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Banca Arner S.A. |
| 22. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Bank Hapoalim Switzerland Ltd. |
| 23. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Bank Sarasin & Cie |
| 24. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Banque Cantonale Vaudoise |
| 25. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Banque Pictet & Cie SA |
| 26. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BBVA (Suisse) SA |
| 27. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BCV AMC Defensive Al Fund |
| 28. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BSI AG |
| 29. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BSI Ex Banca Del Gottardo |
| 30. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BNP Paribas (Suisse) SA |
| 31. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BNP Paribas (Suisse) SA Ex Fortis |
| 32. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BNP Paribas (Suisse) SA Private |
| 33. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Caceis Bank Luxembourg |
| 34. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Centrum Bank AG (AMS) |
| 35. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Clariden Leu Ltd. |
| 36. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Compagnie Bancaire Helvetique |

Appendix B-1 [2]

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 37. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Corner Banca SA |
| 38. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Credit Suisse AG Zurich |
| 39. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Dresdner Bank Schweiz |
| 40. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | EFG Bank (Monaco) f/k/a EFG Eurofinanciere D'Invest MCL |
| 41. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | EFG Bank f/k/a EFG Bank S.A. Switzerland |
| 42. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Fairfield Investment Fund Ltd. |
| 43. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Fairfield Investment GCI |
| 44. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Falcon Private Bank |
| 45. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | FIF Advanced Ltd. |
| 46. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Finter Bank Zurich |
| 47. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Harmony Capital Fund Ltd. |
| 48. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | HSBC |
| 49. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | IHAG Handelsbank AG |
| 50. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | InCore Bank AG |
| 51. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Bank Julius Baer & Co. Ltd. |
| 52. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | KBC Investments Ltd. |
| 53. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | LGT Bank in Liechtenstein AG |
| 54. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Liechtensteinische LB Reinvest AMS |
| 55. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Lloyds TSB Bank Geneva |
| 56. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Lombard Odier Darier Hentsch & Cie |

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 57. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | National Bank of Kuwait S.A.K. |
| 58. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | NBK Banque Privee (Suisse) S.A. |
| 59. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | PKB Privatbank AG |
| 60. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Quasarfuns SPC |
| 61. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | RBC Investor Services Bank S.A. |
| 62. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | RBS Coutts Bank Ltd. |
| 63. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Rothschild Bank AG Zurich (Dublin) a/k/a Rothschild Bank AG |
| 64. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Rothschild Bank Geneva (Dublin) |
| 65. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Rothschild Lugano Dublin a/k/a Banca Privata Edmond de Rothschild Lugano SA |
| 66. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Sis Seeganintersettle |
| 67. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | SIX SIS Ltd. |
| 68. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Societe Generale Bank & Trust |
| 69. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | T1 Global Fund Ltd. |
| 70. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | UBS AG New York |
| 71. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | UBS AG Zurich |
| 72. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | UBS Jersey Nominees Limited |
| 73. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Unifortune Conservative Side Pocket |
| 74. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Union Bancaire Privee, UBP SA |
| 75. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Verwaltungs und Privat-Bank AG Aktiengesellschaft |

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 76. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Vorarlberger Landes- und Hypothekenbank Aktiengesellschaft |
| 77. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | UBS AG New York |
| 78. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | UBS AG Zurich |
| 79. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | UBS Jersey Nominees Limited |
| 80. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Allianz Bank FinancialAdvisors SpA |
| 81. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Arsenal SPC |
| 82. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Arsenal SPC OBO Glasgow SEG Port |
| 83. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Banca Arner S.A. |
| 84. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Bank Hapoalim Switzerland Ltd. |
| 85. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Bank Leumi le-Israel B.M. |
| 86. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Bank Sarasin & Cie |
| 87. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Banque Cantonale Vaudoise |
| 88. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Banque Pictet & Cie SA |
| 89. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BBVA (Suisse) SA |
| 90. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BCV AMC Defensive Al Fund |
| 91. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BNP Paribas (Suisse) SA |
| 92. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BNP Paribas (Suisse) SA Ex Fortis |
| 93. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BNP Paribas (Suisse) SA Private |
| 94. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BSI AG |

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 95. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | BSI Ex Banca Del Gottardo |
| 96. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Caceis Bank Luxembourg |
| 97. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Centrum Bank AG (AMS) |
| 98. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Clariden Leu Ltd. |
| 99. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Compagnie Bancaire Helvetique |
| 100. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Corner Banca SA |
| 101. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Credit Suisse AG Zurich |
| 102. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Dresdner Bank Schweiz |
| 103. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | EFG Bank (Monaco) f/k/a EFG Eurofinanciere D'Invest MCL |
| 104. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | EFG Bank f/k/a EFG Bank S.A. Switzerland |
| 105. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Fairfield Investment Fund Ltd. |
| 106. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Fairfield Investment GCI |
| 107. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Falcon Private Bank |
| 108. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | FIF Advanced Ltd. |
| 109. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Finter Bank Zurich |
| 110. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Harmony Capital Fund Ltd. |
| 111. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | HSBC |
| 112. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | IHAG Handelsbank AG |
| 113. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | InCore Bank AG |
| 114. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Bank Julius Baer & Co. Ltd. |

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 115. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | KBC Investments Ltd. |
| 116. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | LGT Bank in Liechtenstein AG |
| 117. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Liechtensteinische LB Reinvest AMS |
| 118. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Lloyds TSB Bank Geneva |
| 119. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Lombard Odier Darier Hentsch & Cie |
| 120. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | National Bank of Kuwait S.A.K. |
| 121. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | NBK Banque Privee (Suisse) S.A. |
| 122. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | PKB Privatbank AG |
| 123. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Quasarfuns SPC |
| 124. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | RBC Investor Services Bank S.A. |
| 125. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | RBS Coutts Bank Ltd. |
| 126. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Rothschild Bank AG Zurich (Dublin) a/k/a Rothschild Bank AG |
| 127. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Rothschild Bank Geneva (Dublin) |
| 128. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Rothschild Lugano Dublin a/k/a Banca Privata Edmond de Rothschild Lugano SA |
| 129. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Sis Seeganintersettle |
| 130. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | SIX SIS Ltd. |
| 131. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Sis Seeganintersettle |
| 132. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | T1 Global Fund Ltd. |
| 133. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Unifortune Conservative Side Pocket |

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 134. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Union Bancaire Privee, UBP SA |
| 135. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Verwaltungs und Privat-Bank AG Aktiengesellschaft |
| 136. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Vorarlberger Landes-und Hypothekenbank |
| 137. | Adv. Pro. 10-03746 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank (Cayman), et al.* | Sciens CFO 1 Feeder Fund Ltd. |
| 138. | Adv. Pro. 10-03746 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank (Cayman), et al.* | Sciens Global Opportunity Fund |
| 139. | Adv. Pro. 10-03752 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Brown Brothers Harriman & Co., et al.* | Credit Lyonnais n/k/a LCL-LE Credit Lyonnais S.A. |
| 140. | Adv. Pro. 10-03752 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Brown Brothers Harriman & Co., et al.* | Raiffeisen Zentralbank Oesterreich AG |
| 141. | Adv. Pro. 10-03752 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Brown Brothers Harriman & Co., et al.* | SCB Nominees (CI) Ltd. |
| 142. | Adv. Pro. 10-03776 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis (Isle of Man) Nominees Ltd. a/k/a ABN AMRO Fund Services (Isle of Man) Nominees Ltd., et al.* | Odyssey Alternative Fund Limited |
| 143. | Adv. Pro. 10-03776 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis (Isle of Man) Nominees Ltd. a/k/a ABN AMRO Fund Services (Isle of Man) Nominees Ltd., et al.* | Platinum All Weather Fund |
| 144. | Adv. Pro. 10-03786 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) SA, et al.* | FIF Advanced Ltd. |
| 145. | Adv. Pro. 10-03792 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ZCM Asset Holding Company (Bermuda) Limited, et al.* | American Express Offshore Alternative Investment Fund |
| 146. | Adv. Pro. 10-03792 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ZCM Asset Holding Company (Bermuda) Limited, et al.* | Zurich Bank |
| 147. | Adv. Pro. 10-03871 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Caceis Bank EX- IXIS IS, et al.* | Natixis Multimanager, formerly known as IXIS Private Capital Management ("IPCM") |
| 148. | Adv. Pro. 10-04088 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Luxembourg) SA, et al.* | Leu Performance Fund |
| 149. | Adv. Pro. 10-04088 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Luxembourg) SA, et al.* | Leu Prima Global Fund |
| 150. | Adv. Pro. 10-04088 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Luxembourg) SA, et al.* | Prima Global Fund |

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 151. | Adv. Pro. 10-04095 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Services (Cayman) Limited, et al.* | DGAM Alternative Strategy Fund II, SPC - Cell A |
| 152. | Adv. Pro. 10-04095 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Services (Cayman) Limited, et al.* | DGAM Alternative Strategy Fund II, SPC - Cell B |
| 153. | Adv. Pro. 10-04095 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Services (Cayman) Limited, et al.* | DGAM Alternative Strategy Fund L.P. |
| 154. | Adv. Pro. 10-04095 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Services (Cayman) Limited, et al.* | DGAM Asset al.location Fund L.P. |
| 155. | Adv. Pro. 10-04100 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citivic Nominees Limited, et al.* | BNYM SA/NV f/k/a ABN Amro Mellon Global Security Services B.V. |
| 156. | Adv. Pro. 10-04236 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse Nominees, et al.* | Credit Suisse Gibraltar Limited |
| 157. | Adv. Pro. 11-01258 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Services (Ireland) Ltd., et al.* | UBS Zurich |
| 158. | Adv. Pro. 11-01589 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNYAIS Nominees Ltd., et al.* | Credit Andorra/Crediinvest |
| 159. | Adv. Pro. 11-01589 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNYAIS Nominees Ltd., et al.* | Credit Fons Alternatiu Dinamic Dolar FI |
| 160. | Adv. Pro. 11-01589 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. BNYAIS Nominees Ltd., et al.* | Credit Fons Alternatiu Dinamic |
| 161. | Adv. Pro. 11-01591 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. All Funds Bank, et al.* | NMAS1 Gestion SGIIC S.A. |
| 162. | Adv. Pro. 11-01594 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/HSBC Guyerzeller Zurich, et al.* | Stanhope Capital |
| 163. | Adv. Pro. 11-01614 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. IDF Global Fund, et al.* | IDF Global Fund |
| 164. | Adv. Pro. 11-02253 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada a/k/a RBC Capital Markets Corporation, et al.* | RBC Dominion Securities, Inc. |
| 165. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* | GE Brunei Life Ins FD -Lion Capital Balanced (330008) |
| 166. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* | GE Life |

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 167. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* | GE Life Shareholders FD- Lion Capital FI (330007) |
| 168. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* | GE Trust PTE Ltd.- Lion Capital FI (330012) |
| 169. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* | Life Ins Fund - Par (FI) - Lion Capital - SCND |
| 170. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* | Shareholders Fund -SCMS |
| 171. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* | GE Life S Pore LI Inv FD Par Slam (FI) |
| 172. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* | GE Life S Pore LI In FD Par Slam (FL) |
| 173. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* | SCND Life Ins Fund Par FI Slam |
| 174. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* | GE Brunei Life Ins FD Slam Balanced |
| 175. | Adv. Pro. 11-02392 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Investors f/k/a Lion Fairfield Capital Management, et al.* | GE Life Shareholders FD Slam FL |
| 176. | Adv. Pro. 11-02422 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Global Custody ServicesN.V. n/k/a ABNAMRO, et al.* | Fortis Bank (Nederland) N.V. n/k/a ABN AMRO Bank N.V. |
| 177. | Adv. Pro. 11-02787 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Agricole Titres, et al.* | CPR Online |
| 178. | Adv. Pro. 12-01119 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank (Nederland) N.V., et al.* | Sempervirens Capital Management Limited Class E-F Fund |
| 179. | Adv. Pro. 12-01134 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. SEI Investments Trustee and Custodial Services (Ireland) Ltd. Nominee A/C1, et al.* | Millennium Multi-Strategy Fund |

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 180. | Adv. Pro. 11-01584 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Societe Generale Bank & Trust (Lux.), et al.* | AAAM ** |
| 181. | Adv. Pro. 11-01242 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Fortis Banque Lux., et al.* | Banque Generale du Luxembourg S.A. * |
| 182. | Adv. Pro. 10-03525 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fund Nominees Ltd., et al.* | Collins Stewart (CI) Ltd. * |
| 183. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | LGT Bank in Liechtenstein AG n/k/a LGT Bank AG) * |
| 184. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Liechtensteinische Landesbank Aktiengesellschaft * |
| 185. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Verwaltungs-und Privat-Bank Aktiengesellschaft n/k/a VP Bank AG * |
| 186. | Adv. Pro. 10-03635 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Centrum Bank Aktiengesellschaft * |
| 187. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | LGT Bank in Liechtenstein AG n/k/a LGT Bank AG) * |
| 188. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Liechtensteinische Landesbank Aktiengesellschaft * |
| 189. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Verwaltungs-und Privat-Bank Aktiengesellschaft n/k/a VP Bank AG * |
| 190. | Adv. Pro. 10-03636 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Centrum Bank Aktiengesellschaft * |
| 191. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Bank Morgan Stanley AG * |
| 192. | Adv. Pro. 10-03634 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.* | Morgan Stanley & Co. International PLC * |

# Appendix C[5]

| | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
| 1. | Adv. Pro. 10-03798 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Strina, et al.* | Graziela Strina De Toledo Arruda |
| 2. | Adv. Pro. 10-03798 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Strina, et al.* | Luis M. Strina (Sued as Luisa M. Strina) |
| 3. | Adv. Pro. 11-01461 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Melrose Investments Ltd., et al.* | Caliber Investments Ltd. |
| 4. | Adv. Pro. 11-01461 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Melrose Investments Ltd., et al.* | Melrose Investments Ltd. |
| 5. | Adv. Pro. 11-02613 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Societe Generale Bank & Trust S.A. (Luxembourg), et al.* | Oval Alpha Palmares |
| 6. | Adv. Pro. 11-02613 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Societe Generale Bank & Trust S.A. (Luxembourg), et al.* | Palmares Europlus |
| 7. | Adv. Pro. 11-02613 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Societe Generale Bank & Trust S.A. (Luxembourg), et al.* | UMR |
| 8. | Adv. Pro. 11-02770 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citigroup Global Markets Limited, et al.* | Citigroup Global Markets Limited |
| 9. | Adv. Pro. 12-01264 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Jared Trading Limited/BVI et al.* | Jared Trading Limited/BVI |
| 10. | Adv. Pro. 12-01265 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Bank SA Madrid, et al.* | Barclays Bank SA Madrid |
| 11. | Adv. Pro. 12-01267 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. TAIB Bank E.C., et al.* | Taib Bank E.C. n/k/a Taib Bank B.S.C. |
| 12. | Adv. Pro. 12-01286 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco General SA Banca Privada, et al.* | Banco General SA Banca Privada |
| 13. | Adv. Pro. 12-01298 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Don Chimango SA, et al.* | Cititrust Bahamas Limited |
| 14. | Adv. Pro. 12-01301 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Unicorp Bank & Trust Limited, et al.* | Unicorp Bank & Trust Limited |
| 15. | Adv. Pro. 12-01550 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Atlantic Security Bank, et al.* | Atlantic Security Bank |
| 16. | Adv. Pro. 12-01556 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Somers Nominees (Far East) Limited List Parties, et al.* | HSBC Bank Bermuda Limited |
| 17. | Adv. Pro. 12-01556 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Somers Nominees (Far East) Limited List Parties,* | Somers Nominees (Far East) Limited |

---

[5] The Defendants included in this Appendix C are those that the Liquidators do not advance jurisdictional allegations against based on the Subscription Agreements.

|  | Case No. | Case Name | Moving Defendant Name |
|---|---|---|---|
|  |  | *et al.* |  |
| 18. | Adv. Pro. 12-01568 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Global Custody Services NV, et al.* | Fortis Global Custody Services NV |
| 19. | Adv. Pro. 12-01571 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank Cayman Limited n/k/a ABN AMRO Fund C227Services Bank (Cayman) Limited, et al.* | Fortis Bank Cayman Limited n/k/a ABN AMRO Fund Services Bank (Cayman) Limited |
| 20. | Adv. Pro. 12-01599 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Private Bank & Trust (Channel Islands) Limited, et al.* | Barclays Private Bank & Trust (Channel Islands) Limited |
| 21. | Adv. Pro. 12-01600 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Hyposwiss Private Bank Geneve F/K/A Anglo Irish Bank (Suisse), S.A. et al.* | Hyposwiss Private Bank Geneve SA |
| 22. | Adv. Pro. 12-01601 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Select Absolute Strategies SICAV, et al.* | Select Absolute Strategies SICAV |
| 23. | Adv. Pro. 12-01716 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Essex 21 Limited, et al.* | DMC (HD) Limited |
| 24. | Adv. Pro. 12-01716 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Essex 21 Limited, et al.* | Hyperion (HD) Limited |
| 25. | Adv. Pro. 12-01716 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Essex 21 Limited, et al.* | Essex 17 Limited |
| 26. | Adv. Pro. 12-01716 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Essex 21 Limited, et al.* | Essex 21 Limited |
| 27. | Adv. Pro. 10-03790 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Al Nahyan Mansour B Zayed, et al.* | Abdul Hamid M. Saeed |
| 28. | Adv. Pro. 10-03790 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Al Nahyan Mansour B Zayed, et al.* | Al Nahyan Mansour B. Zayed |
| 29. | Adv. Pro. 12-01567 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. First Gulf Bank, et al.* | First Gulf Bank |
| 30. | Adv. Pro. 12-01298 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Don Chimango SA, et al.* | Don Chimango SA |

# APPENDIX D

|  | CASE NAME | DOCKET NO. |
|---|---|---|
| 1. | Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al. | 10-03635-SMB |
| 2. | Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al. | 10-03636-SMB |
| 3. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Abu Dhabi Inv. Auth., et al. | 11-01719-SMB |
| 4. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Albemar Participation Ltd., et al. | 12-01266-SMB |
| 5. | Fairfield Sentry Ltd. (In Liquidation), et al. v. All Funds Bank, et al. | 11-01591-SMB |
| 6. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Almel Ltd., et al. | 10-03789-SMB |
| 7. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Alok Sama, et al. | 12-01294-SMB |
| 8. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Alton Alt. Fund Ltd., et al. | 12-01763-SMB |
| 9. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Alton Select Ltd., et al. | 10-03541-SMB |
| 10. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Andorra Banc Agricol Reig SA, et al. | 11-02611-SMB |
| 11. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Annex Ltd., et al. | 11-02593-SMB |
| 12. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Apollo Nominees, Inc., et al. | 11-01603-SMB |
| 13. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Arden Endowment Advisers Ltd., et al. | 11-01458-SMB |
| 14. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Arden Int'l Capital Ltd., et al. | 10-03870-SMB |
| 15. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Atl. Sec. Bank, et al. | 12-01550-SMB |
| 16. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Avalon Absolute Return Funds PLC, et al. | 11-02530-SMB |
| 17. | Fairfield Sentry Ltd. (In Liquidation), et al. v. AXA Isle of Man, et al. | 10-03623-SMB |
| 18. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banca Carige SPA, et al. | 12-01123-SMB |
| 19. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banca Cesare Ponti SPA, et al. | 12-01140-SMB |
| 20. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Banca Di San Marino SPA, et al. | 11-01572-SMB |
| 21. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Banca Popolare Dell'Alto, et al. | 12-01148-SMB |
| 22. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Banca Popolare  Friuladria SPA, et al. | 12-01156-SMB |
| 23. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banca Privada D'Andorra S.A., et al. | 11-01717-SMB |
| 24. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Banca Profilo SPA, et al. | 12-01285-SMB |
| 25. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banc of America Secs. LLC, et al. | 11-01571-SMB |
| 26. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Atlantico (Bah.), et al. | 10-03783-SMB |
| 27. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Atlantico (Gib.) Ltd., et al. | 10-03787-SMB |
| 28. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Bilbao Vizcaya Argentaria, S.A., et al. | 10-03515-SMB |
| 29. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco di Desio e Della Brianza, et al. | 10-04096-SMB |
| 30. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco General SA Banca Privada, et al. | 12-01286-SMB |
| 31. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Inversis SA, et al. | 10-04089-SMB |
| 32. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Itau Europa Int'l, et al. | 12-01124-SMB |
| 33. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Itau Europa Lux. SA, et al. | 10-03755-SMB |
| 34. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Nominees (IOM) Ltd., et al. | 10-04097-SMB |
| 35. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Patagonia (Uruguay) S.A.I.F.E., et al. | 12-01287-SMB |
| 36. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Popolare Di Verona E Novara Luxembourg, S.A., et al. | 12-01187-SMB |
| 37. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Privado Portugues (Cayman) Ltd., et al. | 11-02531-SMB |

# APPENDIX D

| | CASE NAME | DOCKET NO. |
|---|---|---|
| 38. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banco Santander (Suisse) S.A., et al. | 10-03509-SMB |
| 39. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank of Am. Nat'l Trust & Sav. Ass'n, et al. | 10-03615-SMB |
| 40. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Bank of Ireland Nominees Ltd., et al. | 12-01135-SMB |
| 41. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Hapoalim  BM, London, et al. | 12-01144-SMB |
| 42. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Hapoalim (Suisse) Ltd., et al. | 10-03510-SMB |
| 43. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Julius Baer & Co. Ltd., Zurich, et al. | 11-01243-SMB |
| 44. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BankMed (Suisse) S.A., et al. | 11-02772-SMB |
| 45. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Morgan Stanley AG, et al. | 10-04212-SMB |
| 46. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Beneficial Owners of Accounts Held in the Name of Bank Sal. Oppenheim Jr. & Cie (Schweiz) Ag 1-1000 | 11-02440-SMB |
| 47. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Sarasin & Cie, et al. | 12-01295-SMB |
| 48. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Sarasin & Cie AG, et al. | 11-01612-SMB |
| 49. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bank Vontobel AG, et al. | 11-01760-SMB |
| 50. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Baring Bros. Sturdza SA, et al. | 12-01157-SMB |
| 51. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Degroof Luxembourg S.A., et al. | 12-01147-SMB |
| 52. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque de Luxembourg, et al. | 10-03616-SMB |
| 53. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque de Reescompte et de Placement, et al. | 11-01585-SMB |
| 54. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque et Caisse D'Epargne de L'Etat Luxembourg, et al. | 11-01598-SMB |
| 55. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Piguet & Cie S.A., et al. | 10-03514-SMB |
| 56. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Privee Edmond De Rothschild (Eur.), et al. | 10-03505-SMB |
| 57. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque SCS Alliance S.A., et al. | 11-01256-SMB |
| 58. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Sudameris, et al. | 10-03586-SMB |
| 59. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Sudameris, et al. | 10-03749-SMB |
| 60. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Syz & Co. S.A., et al. | 10-03513-SMB |
| 61. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Bank SA Madrid, et al. | 12-01265-SMB |
| 62. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Bank (Suisse) S.A., et al. | 11-01259-SMB |
| 63. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Barclays Private Bank & Trust (Channel Islands) Limited, et al. | 12-01599-SMB |
| 64. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Barfield Nominees Ltd., et al. | 11-01470-SMB |
| 65. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bie Bank & Trust Bah. Ltd., et al. | 11-01587-SMB |
| 66. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bipielle Banke (Suisse), et al. | 11-01568-SMB |
| 67. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Blubank Ltd., et al. | 10-03750-SMB |
| 68. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Arbitrage SNC, et al. | 10-04098-SMB |
| 69. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Espana, et al. | 12-01551-SMB |
| 70. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Lux. S.A., et al. | 10-03626-SMB |

# APPENDIX D

| | CASE NAME | DOCKET NO. |
|---|---|---|
| 71. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Private Bank & Trust Cayman Ltd., et al. | 10-04099-SMB |
| 72. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Secs. Nominees Ltd., et al. | 11-01579-SMB |
| 73. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNP Paribas Secs. Servs. Lux., et al. | 10-03627-SMB |
| 74. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BNY AIS Nominees Ltd., Credit Andorra/Crediivest, et al. | 11-01589-SMB |
| 75. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bordier & Cie, et al. | 10-03873-SMB |
| 76. | Fairfield Sentry Ltd. (In Liquidation), et al. v. BP Alpha S.A., et al. | 11-01245-SMB |
| 77. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Bred Banque Populaire, et al. | 12-01136-SMB |
| 78. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Brown Bros. Harriman & Co., et al. | 10-03752-SMB |
| 79. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Bureau of Labor Ins., et al. | 11-01574-SMB |
| 80. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Caceis Bank EX-IXIS IS, et al. | 10-03871-SMB |
| 81. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Caceis Bank Lux., et al. | 10-03624-SMB |
| 82. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Cais Bank, et al. | 12-01288-SMB |
| 83. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Capital Global Mgmt. Ltd., et al. | 12-01552-SMB |
| 84. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Capluck Enters. Ltd., et al. | 11-01573-SMB |
| 85. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Catalunya Caixa, et al. | 12-01129-SMB |
| 86. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Cathay Life Ins. Co. Ltd., et al. | 11-01577-SMB |
| 87. | Fairfield Sentry Ltd. (In Liquidation), et al. v. CDC IXIS, et al. | 10-03754-SMB |
| 88. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Celfin Int'l Ltd., et al. | 10-03865-SMB |
| 89. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Centre Coll., et al. | 12-01143-SMB |
| 90. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Chelsea Trust Co., Ltd., et al. | 12-01138-SMB |
| 91. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Chen Tyan-Wen, et al. | 11-01611-SMB |
| 92. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Ching-Jung Fang, et al. | 11-02591-SMB |
| 93. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank Korea Inc., et al. | 12-01142-SMB |
| 94. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank NA London, et al. | 10-03622-SMB |
| 95. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank (Switz.) AG, et al. | 10-03640-SMB |
| 96. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Citigroup Global Markets Ltd., et al. | 11-02770-SMB |
| 97. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Citivic Nominees Ltd., et al. | 10-04100-SMB |
| 98. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Clarks Fork Foundation, et al. | 12-01150-SMB |
| 99. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Clearstream Banking S.A., et al. | 11-01263-SMB |
| 100. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Commercial Bank of Kuwait, et al. | 10-04093-SMB |
| 101. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Agricole (Suisse) S.A., et al. | 11-01244-SMB |
| 102. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Agricole Titres, et al. | 11-02787-SMB |
| 103. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Industriel et Commercial Sing. Branch, et al. | 11-01575-SMB |
| 104. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse AG Nassau Branch Wealth Mgmt., et al. | 11-01601-SMB |
| 105. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Bah.), et al. | 10-03782-SMB |
| 106. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Credit Suisse Int'l, et al. | 10-03620-SMB |
| 107. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse (Lux.) S.A., et al. | 10-04088-SMB |
| 108. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse Nassau Branch, et al. | 12-01127-SMB |
| 109. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse Nominees, et al. | 10-04236-SMB |
| 110. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Credit Suisse Nominees (Guernsey) Ltd., et al. | 11-02612-SMB |

# APPENDIX D

| | CASE NAME | DOCKET NO. |
|---|---|---|
| 111. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Criterium Capital Funds BV, et al. | 12-01268-SMB |
| 112. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Danobat S. Coop, et al. | 12-01159-SMB |
| 113. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Delta, S.P.A., et al. | 12-01162-SMB |
| 114. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Deltec Bank & Trust Ltd., et al. | 11-02532-SMB |
| 115. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank AG Singapore, et al. | 10-03747-SMB |
| 116. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank (Cayman), et al. | 10-03746-SMB |
| 117. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank Nominees (Jersey) Ltd., et al. | 11-01564-SMB |
| 118. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank (Suisse) S.A. Geneve, et al. | 10-03745-SMB |
| 119. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Deutsche Bank Trust Co. Am., et al. | 10-03744-SMB |
| 120. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Dexia BIL, et al. | 10-04090-SMB |
| 121. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Dexia Private Bank (Switz.), et al. | 10-04091-SMB |
| 122. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Don Chimango SA, et al. | 12-01298-SMB |
| 123. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Drake & Co., et al. | 11-01246-SMB |
| 124. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Dreadnought Fin. OY, et al. | 12-01289-SMB |
| 125. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Dresdner LateinAmerika AG, et al. | 10-03753-SMB |
| 126. | Fairfield Sentry Ltd. (In Liquidation), et al. v. E. Star Sicavf, et al. | 11-01597-SMB |
| 127. | Fairfield Sentry Ltd. (In Liquidation), et al. v. EC.Com, Inc., et al. | 11-02614-SMB |
| 128. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Eduardo Fernandez de Valderrama Murillo, et al. | 11-01599-SMB |
| 129. | Fairfield Sentry Ltd. (In Liquidation), et al. v. EFG Bank, et al. | 10-03625-SMB |
| 130. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Essex 21 Ltd., et al. | 12-01716-SMB |
| 131. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Field Nominees Ltd., et al. | 12-01133-SMB |
| 132. | Fairfield Sentry Ltd. (In Liquidation), et al. v. First Gulf Bank, et al. | 12-01567-SMB |
| 133. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank, SA/NV, et al. | 11-01617-SMB |
| 134. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank Cayman Limited, et al. | 12-01571-SMB |
| 135. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank Nederland  N.V., et al. | 12-01119-SMB |
| 136. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Global Custody Servs. N.V., et al. | 11-02422-SMB |
| 137. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Global Servs. NV, et al. | 12-01568-SMB |
| 138. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis Bank Nederland NV, et al. | 11-01614-SMB |
| 139. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fortis (Isle of Man) Nominees Ltd., et al. | 10-03776-SMB |
| 140. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FPB Int'l Bank, Inc., et al. | 12-01126-SMB |
| 141. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS ABN AMRO Global Custody, et al. | 10-03504-SMB |
| 142. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/AEB Lux., et al. | 11-01254-SMB |
| 143. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/AND Banc Andorra, et al. | 10-03632-SMB |
| 144. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Bank Leumi Israel, et al. | 12-01158-SMB |
| 145. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Banque Degroof Bruxelles, et al. | 11-01569-SMB |
| 146. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/BBVA Zurich/Shares, et al. | 11-01600-SMB |
| 147. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/BK Hapoalim/B M Tel Aviv, et al. | 11-01467-SMB |

# APPENDIX D

|  | CASE NAME | DOCKET NO. |
|---|---|---|
| 148. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/BBVA Miami, et al. | 10-03618-SMB |
| 149. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/CBESSA, et al. | 10-03756-SMB |
| 150. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Fortis Banque Lux., et al. | 11-01242-SMB |
| 151. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/GSCO London, et al. | 12-01569-SMB |
| 152. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/HSBC Guyerzeller Zurich, et al. | 11-01594-SMB |
| 153. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/HSBC Private Banking Nom, et al. | 10-03629-SMB |
| 154. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/ING Lux, et al. | 11-01565-SMB |
| 155. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Israel Disc. Bank, Ltd., Tel Aviv, et al. | 11-01610-SMB |
| 156. | Fairfield Sigma Ltd. (In Liquidation), et al. v. FS/LAB/AXA PM, et al. | 11-01460-SMB |
| 157. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS Mizrahi Tefahot Bank Ltd., et al. | 10-03512-SMB |
| 158. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/MLBS Geneva, et al. | 12-01269-SMB |
| 159. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/NBK Kuwait, et al. | 11-01260-SMB |
| 160. | Fairfield Sigma Ltd. (In Liquidation), et al. v. FS/NBP Titres, et al. | 11-01619-SMB |
| 161. | Fairfield Sigma Ltd. (In Liquidation), et al. v. FS Oddo & Cie, et al. | 10-03621-SMB |
| 162. | Fairfield Sigma Ltd. (In Liquidation), et al. v. FS/Procap/Bryan Garnier, et al. | 11-01262-SMB |
| 163. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/SG Private Banking (Lugano-Svizzera) SA, et al. | 11-01566-SMB |
| 164. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS Stichting Stroeve Global Custody, et al. | 10-03867-SMB |
| 165. | Fairfield Sentry Ltd. (In Liquidation), et al. v. FS/Swedclient/IAM, et al. | 11-01253-SMB |
| 166. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fullerton Capital PTE, Ltd., et al. | 11-02771-SMB |
| 167. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Fund Nominees Ltd., et al. | 10-03525-SMB |
| 168. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Gates Charitable Trust, et al. | 12-01145-SMB |
| 169. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Global Fund Porvenir, et al. | 11-01567-SMB |
| 170. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Grand Cathay Secs. (H.K.) Ltd., et al. | 11-01462-SMB |
| 171. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hambros Guernsey Nominees, et al. | 10-03799-SMB |
| 172. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hansard Europe Ltd., et al. | 10-04238-SMB |
| 173. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hinduja Bank (Switzerland) SA, et al. | 12-01185-SMB |
| 174. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hontai Life Ins. Co. Ltd., et al. | 12-01271-SMB |
| 175. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Int'l Trustee Ltd., et al. | 12-01290-SMB |
| 176. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Inst. Trust Servs. (Asia) Ltd., et al. | 10-03619-SMB |
| 177. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Guernsey) Ltd., et al. | 10-03631-SMB |
| 178. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Suisse) S.A., et al. | 10-03633-SMB |
| 179. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Secs. (Panama) SA, et al. | 12-01270-SMB |
| 180. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Secs. Servs. (Lux.) S.A., et al. | 10-03630-SMB |
| 181. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Seoul Branch, Ltd., et al. | 12-01128-SMB |
| 182. | Fairfield Sentry Ltd. (In Liquidation), et al. v. HSH Nordbank Secs. S.A., et al. | 12-01555-SMB |
| 183. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hsu, et al. | 11-01247-SMB |

# APPENDIX D

| | CASE NAME | DOCKET NO. |
|---|---|---|
| 184. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hua Nan Commercial Bank, et al. | 12-01153-SMB |
| 185. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Huang, et al. | 11-01255-SMB |
| 186. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Huang Long-Yin, et al. | 11-01465-SMB |
| 187. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hui-Liang Tsai & Chien-Hui Tu, et al. | 11-01466-SMB |
| 188. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Hyposwiss Private Bank Geneve, et al. | 12-01600-SMB |
| 189. | Fairfield Sentry Ltd. (In Liquidation), et al. v. ING Bank (Suisse) S.A., et al. | 10-03801-SMB |
| 190. | Fairfield Sentry Ltd. (In Liquidation), et al. v. International Hedge Fund Ltd., et al. | 12-01161-SMB |
| 191. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Investec Bank (Switzerland) AG, et al. | 12-01125-SMB |
| 192. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Irish Life Int'l, et al. | 12-01291-SMB |
| 193. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Istituto Bancario Sammarinese S.P.A., et al. | 12-01292-SMB |
| 194. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Jared Trading Ltd./BVI, et al. | 12-01264-SMB |
| 195. | Fairfield Sentry Ltd. (In Liquidation), et al. v. John E. Niederhuber IRA, et al. | 12-01296-SMB |
| 196. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Judith Cherwinka, et al. | 11-01592-SMB |
| 197. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Judith A. Hansen, et al. | 11-01593-SMB |
| 198. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Kasbank Depositary Trust Co., et al. | 12-01137-SMB |
| 199. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Kasbank Effecten Bewaarbedrijf, N.V., et al. | 12-01163-SMB |
| 200. | Fairfield Sigma Ltd. (In Liquidation), et al. v. KAS Depositary Trust Co., et al. | 11-02533-SMB |
| 201. | Fairfield Sentry Ltd. (In Liquidation), et al. v. KB (CI) Nominees Ltd., et al. | 10-04240-SMB |
| 202. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Kefong Lee, et al. | 11-01596-SMB |
| 203. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Kiangsu Chekiang, et al. | 12-01155-SMB |
| 204. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Koch Inv. (UK) Co., et al. | 11-01606-SMB |
| 205. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Kookmin Bank, et al. | 10-03777-SMB |
| 206. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Korea Exch. Bank, et al. | 11-01486-SMB |
| 207. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Kredietbank S.A. Luxembourgeoise, et al. | 10-03868-SMB |
| 208. | Fairfield Sentry Ltd. (In Liquidation), et al. v. KWI, et al. | 11-01595-SMB |
| 209. | Fairfield Sigma Ltd. (In Liquidation), et al. v. La Romana Inversiones SICAV, S.A., et al. | 12-01149-SMB |
| 210. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Lacroze, et al. | 10-03528-SMB |
| 211. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Leyden Dev., et al. | 11-01622-SMB |
| 212. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Lion Global Invs., et al. | 11-02392-SMB |
| 213. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Lombard Odier Darier Hentsch & Cie, et al. | 10-03795-SMB |
| 214. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Lombardy Props. Ltd., et al. | 10-03521-SMB |
| 215. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Loquat Holdings, Inc., et al. | 12-01152-SMB |
| 216. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Lung Yen Life Serv. Co. Ltd., et al. | 11-01608-SMB |
| 217. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Madison Cultural Arts Support Trust, et al. | 12-01121-SMB |
| 218. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Mandalay Invs. SA, et al. | 12-01141-SMB |
| 219. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Maple Key Mkt. Neutral Cayman Islands LP, et al. | 12-01122-SMB |
| 220. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Mario Pacheco Cortes, et al. | 11-02401-SMB |
| 221. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Melguizo, et al. | 11-01607-SMB |

# APPENDIX D

| | CASE NAME | DOCKET NO. |
|---|---|---|
| 222. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Melrose Inv. Ltd., et al. | 11-01461-SMB |
| 223. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Meritz Fire & Marine Ins. Co. Ltd., et al. | 10-03507-SMB |
| 224. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch Bank (Suisse) S.A., et al. | 10-03788-SMB |
| 225. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch Int'l, et al. | 11-01463-SMB |
| 226. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al. | 10-03516-SMB |
| 227. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Mirabaud & Cie, et al. | 11-01257-SMB |
| 228. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Monte Paschi Ireland Ltd., et al. | 10-03791-SMB |
| 229. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Multi-Strategy Fund Ltd., et al. | 11-01576-SMB |
| 230. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Naidot & Co., et al. | 11-02336-SMB |
| 231. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Natexis Banques Populaires, et al. | 10-04094-SMB |
| 232. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Natixis, et al. | 11-01464-SMB |
| 233. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Natixis Private Banking Int'l, et al. | 10-03864-SMB |
| 234. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Neue Bank AG, et al. | 10-03519-SMB |
| 235. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Nihon Unicom Corp., et al. | 11-01261-SMB |
| 236. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Nomura Int'l PLC, et al. | 10-03793-SMB |
| 237. | Fairfield Sentry Ltd. (In Liquidation), et al. v. NYROY, Royal Bank of Canada, et al. | 11-01578-SMB |
| 238. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Parson Fin. Panama S.A., et al. | 11-01580-SMB |
| 239. | Fairfield Sentry Ltd. (In Liquidation), et al. v. PFPC Bank Ltd., et al. | 11-01604-SMB |
| 240. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Pictet & Cie, et al. | 10-03764-SMB |
| 241. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Pleasant T. Rowland Found., Inc. et al. | 11-01613-SMB |
| 242. | Fairfield Sentry Ltd. (In Liquidation), et al. v. POBT Bank & Trust Ltd., et al. | 11-01248-SMB |
| 243. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Portobelo Advs., Inc., et al. | 12-01146-SMB |
| 244. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Presnow Ltd., et al. | 11-01620-SMB |
| 245. | Fairfield Sentry Ltd. (In Liquidation), et al. v. PRS Inv. Strategies Fund Class 4E, et al. | 10-04101-SMB |
| 246. | Fairfield Sentry Ltd. (In Liquidation), et al. v. P.S.I. Int'l Ltd., et al. | 11-02592-SMB |
| 247. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Public Bank (Hong Kong) Ltd., et al. | 12-01164-SMB |
| 248. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Rahn & Bodmer Banquiers, et al. | 11-01581-SMB |
| 249. | Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Dexia Inv. Servs. Espana S.A., et al. | 12-01132-SMB |
| 250. | Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Dominion Sec. Sub A/C, et al. | 10-03502-SMB |
| 251. | Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Investor Services Bank S.A. f/k/a RBC Dexia Investor Services Bank S.A., et al. | 16-01214-SMB |
| 252. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Robinson & Co., et al. | 10-03628-SMB |
| 253. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Rothschild & Cie Banque Paris, et al. | 12-01131-SMB |
| 254. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Rothschild Trust (Schweiz) AG, et al. | 11-02594-SMB |
| 255. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada, et al. | 11-02253-SMB |
| 256. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada (Asia) Ltd., et al. | 11-01582-SMB |

# APPENDIX D

| | CASE NAME | DOCKET NO. |
|---|---|---|
| 257. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Royal Bank of Canada (Suisse), et al. | 10-04087-SMB |
| 258. | Fairfield Sigma Ltd. (In Liquidation), et al. v. S. Coop Irizar, et al. | 11-01570-SMB |
| 259. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Samsung Absolute Return Trust M1, et al. | 12-01762-SMB |
| 260. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Societe Europeenne De Banque S.A. et al | 11-01615-SMB |
| 261. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Schroder & Co. (Asia) Ltd., et al. | 10-03508-SMB |
| 262. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Schroder & Co. Bank AG, et al. | 11-01249-SMB |
| 263. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Schroders Italy SIM SPA, et al. | 12-01272-SMB |
| 264. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Select Absolute Strategies Sicav, et al. | 12-01601-SMB |
| 265. | Fairfield Sigma Ltd. (In Liquidation), et al. v. SEI Invs. Trustee, et al. | 12-01134-SMB |
| 266. | Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) S.A., et al. | 10-03786-SMB |
| 267. | Fairfield Sentry Ltd. (In Liquidation), et al. v. SG Private Banking (Suisse) S.A., et al. | 10-03595-SMB |
| 268. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Sherli Elghanian Krayem, et al. | 10-03614-SMB |
| 269. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Silverado Holdings LDC, et al. | 12-01300-SMB |
| 270. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Simgest SpA, et al. | 11-02534-SMB |
| 271. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Six Sis AG, et al. | 10-03869-SMB |
| 272. | Fairfield Sentry Ltd. (In Liquidation), et al. v. SNS Global Custody B.V., et al. | 10-03757-SMB |
| 273. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Societe Generale Bank & Trust (Lux.), et al. | 11-01584-SMB |
| 274. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Societe Generale Bank & Trust S.A. (Lux.), et al. | 11-02613-SMB |
| 275. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Sofos Capital LLC, et al. | 12-01154-SMB |
| 276. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Somers Nominees (Far East) Ltd., et al. | 12-01556-SMB |
| 277. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Spin City Corp., et al. | 12-01160-SMB |
| 278. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Stichting Stroeve Global Custody, et al. | 11-02615-SMB |
| 279. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Strina, et al. | 10-03798-SMB |
| 280. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Sumitomo Banking & Trust Co. Ltd., et al. | 10-03863-SMB |
| 281. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Swedbank, et al. | 11-01586-SMB |
| 282. | Fairfield Sentry Ltd. (In Liquidation), et al. v. TAIB Bank E.C., et al. | 12-01267-SMB |
| 283. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Tayleigh Trust Co. Ltd., et al. | 12-01130-SMB |
| 284. | Fairfield Sigma Ltd. (In Liquidation), et al. v. Tercas – Cassa di Risparmio della Provincia di Teramo S.P.A., et al. | 10-03503-SMB |
| 285. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al. | 10-03496-SMB |
| 286. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Torshen, et al. | 10-03866-SMB |
| 287. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Triumph Offshore Fund, et al. | 12-01293-SMB |
| 288. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Tsao, et al. | 11-01468-SMB |
| 289. | Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS AG N.Y., et al. | 10-03780-SMB |
| 290. | Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Servs. (Cayman) Ltd., et al. | 10-04095-SMB |
| 291. | Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Servs. (Cayman) Ltd. Ref Greenlake Arbitrage Fund Ltd., et al. | 10-03758-SMB |
| 292. | Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Fund Servs. (Ir.) Ltd., et al. | 11-01258-SMB |
| 293. | Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Lux. SA, et al. | 11-01250-SMB |

# APPENDIX D

| | CASE NAME | DOCKET NO. |
|---|---|---|
| 294. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Unicorp Bank & Trust Ltd., et al. | 12-01301-SMB |
| 295. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Union Finance Int'l (HK) Ltd., et al. | 12-01139-SMB |
| 296. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Union USD Global Arbitrage A Fund, et al. | 10-03506-SMB |
| 297. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Vontobel Asset Mgmt. Inc., et al. | 10-03540-SMB |
| 298. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Wall Street Secs. S.A., et al. | 10-03778-SMB |
| 299. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Weston Sec. Ltd., et al. | 10-03784-SMB |
| 300. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Winchester Fiduciary Servs. Ltd., et al. | 12-01302-SMB |
| 301. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Woori Bank, et al. | 11-01616-SMB |
| 302. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Yuanta Asset Mgmt. (H.K.) Ltd., et al. | 11-01588-SMB |
| 303. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Zayed, et al. | 10-03790-SMB |
| 304. | Fairfield Sentry Ltd. (In Liquidation), et al. v. ZCM Asset Holding Co. (Berm.) Ltd., et al. | 10-03792-SMB |
| 305. | Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Mkts. Co., et al. | 10-03634-SMB |