# Exhibit 6a

Copie certifiée conforme

*Jean- Marc EYSSAUTIER*
*Directeur Général*

*CACEIS Bank*

Greffe du Tribunal de
Commerce de Paris
I          M
R

**1 2 OCT. 2006**
85363
N° DE DÉPOT

### Statuts modifiés
### Faisant suite à l'Assemblée Générale Extraordinaire
### du 29 septembre 2006

Société anonyme au capital social de 200.000.000 euros
Siège social : 1-3 Place Valhubert – 75013 PARIS
R.C.S. Paris 692 024 722

**Titre I**
Forme – dénomination - objet - siège – durée

<u>Article premier – Forme</u>

La société a été constituée sous la forme de société anonyme à conseil d'administration et immatriculée au Registre du Commerce et des Sociétés de Paris le 5 juin 1969. Elle a été transformée en société anonyme à directoire et conseil de surveillance par décision de l'assemblée générale mixte des actionnaires en date du 10 octobre 2005. Puis par décision de l'assemblée générale extraordinaire des actionnaires en date du 28 avril 2006, la société a été transformée en société anonyme à conseil d'administration.

Elle continue d'exister entre les propriétaires des actions ci-après créées et de celles qui pourraient l'être ultérieurement et est régie par le Code de Commerce et, en particulier, par ses articles L.225-17 à L.225-56, par les articles L.311-1 et suivants, L.211-1 et suivants, et L.511-1 et suivants du Code Monétaire et Financier, par les dispositions légales et réglementaires applicables aux établissements de crédit, par les lois et règlements en vigueur, ainsi que par les présents statuts.

<u>Article 2 - Objet</u>

La société a pour objet, en France et hors de France, de :

- Consentir toutes opérations de crédit ou de financement au bénéfice de la clientèle (ou des personnes morales la représentant en ce qui concerne les organismes de placement collectifs) dont tout ou partie des instruments financiers sont conservés par la société ;

- Mettre a disposition des clients, dont tout ou partie des instruments financiers sont conserves par la société, tous moyens de paiement et en assurer la gestion ;

- Assurer tous services liés à la fonction de dépositaire d'OPC et autres fonds d'investissement en ce compris les FCC.

- Assurer la tenue de compte et la conservation des instruments financiers vises a l'article L.211-1 du code monétaire et financier ainsi que tous instruments financiers, vifs ou dématérialisés, émis sur le fondement du droit français ou étranger, de parts sociales, de parts de fondateurs ou parts d'intérêts, sous la forme nominative, au porteur ou a ordre ainsi qu'accepter ou effectuer tous paiements de coupons d'intérêts, de dividendes ou d'autres droits détachés;

- Acquérir ou aliéner tous instruments financiers ou parts mentionnés à l'alinéa précédent ;

- Assurer la réception et la transmission d'ordres pour le compte de tiers portant sur l'ensemble de ces instruments financiers et toutes prestations accessoires;

- Assurer les opérations de change ;

- Assurer la compensation de toutes transactions sur instruments financiers tels que mentionnés a l'alinéa précédent;

- Assurer tous autres services bancaires ou financiers connexes dont notamment l'assistance en matière de gestion de trésorerie, d'ingénierie financière à l'intention de la clientèle dont tout ou partie des instruments financiers sont ou seront conservés par la société.

- Assurer la fourniture de tous services de gestion de trésorerie, comptable ou administrative en matière de tenue de compte, ainsi que toutes études relatives a ces opérations ;

- Accepter ou conférer, à l'occasion de prêts, emprunts ou toutes autres opérations, des affectations hypothécaires, nantissements ou autres garanties pour les clients dont tout ou partie des instruments financiers sont conservés par la société

- Assurer les fonctions d'agent de transfert, de centralisateur de passif et de domiciliation ;

- Et plus généralement la réalisation de toutes opérations financières, commerciales ou industrielles, mobilières ou immobilières, se rapportant directement ou indirectement à l'un des objets ou opérations mentionnées ci-dessus.

Les opérations de banque seront réalisées par CACEIS Bank au profit d'une clientèle essentiellement constituée d'institutionnels, à l'exclusion de toute clientèle de particuliers et dans le prolongement des services d'investissement et assimilés.

<u>Article 3 - Dénomination</u>

La société a pour dénomination : CACEIS Bank

Tous les actes et documents émanant de la société doivent mentionner la dénomination sociale précédée ou suivie immédiatement des mots « société anonyme » ou des initiales « s.a. » et de l'énonciation du capital.

<u>Article 4 - Siège social</u>

Le siège de la société est fixé à Paris 13$^{ème}$ - 1/3 place Valhubert.

Il pourra être transformé en tout autre endroit de Paris ou des départements limitrophes, par simple décision du conseil d'administration, sauf ratification de cette décision par la plus prochaine assemblée générale ordinaire, et partout ailleurs en vertu d'une délibération de l'assemblée générale extraordinaire.

Article 5 - durée

La durée de la société est fixée à 99 ans à compter de la date de son immatriculation ou registre du commerce, sauf dissolution anticipée ou prorogation résultant d'une décision de l'assemblée générale extraordinaire des actionnaires.

Titre II

Capital social - forme des actions
Droits et obligations attaches aux actions
Transmission des actions

Article 6 - Capital social

Le capital social est fixé à 200.000.000 euros (deux cents millions d'euros), divise en 8.235.863 (Huit millions deux cent trente cinq mille huit cent soixante trois) actions sans valeur nominale.

Article 7 - Modifications du capital social

Le capital social peut être augmenté, réduit ou amorti dans les conditions prévues par la loi.

Article 8 - forme des actions

Les actions sont nominatives. Elles donnent lieu à une inscription en compte individuel dans les conditions et selon les modalités prévues par les dispositions législatives et réglementaires en vigueur.

Article 9 - Cession et transmission des actions

Les actions sont cessibles conformément aux dispositions légales.

La cession des actions s'opère, a l'égard de la société et des tiers, par un virement du compte du cédant au compte du cessionnaire sur production d'un ordre de mouvement.

## Article 10 - indivisibilité des actions

Les actions sont indivisibles a l'égard de la société sous réserve des dispositions suivantes :

Le droit de vote attaché à l'action appartient à l'usufruitier dans les assemblées générales ordinaires et au nu-propriétaire dans les assemblées générales extraordinaires.

Même privé du droit de vote, le nu-propriétaire d'actions a toujours le droit de participer aux assemblées générales.
Les propriétaires indivis sont tenus de se faire représenter auprès de la société par un seul d'entre eux ou par un mandataire unique.

Les droits et obligations attachés à chaque action suivent le titre dans quelques mains qu'il passe.


## Article 11 - Droits et obligations attaches aux actions

Chaque action donne droit, dans la propriété de l'actif social, dans le partage des bénéfices et dans le boni de liquidation, à une part égale à la quotité du capital social qu'elle représente.

En outre, chaque action donne droit au vote et à la représentation dans les assemblées générales dans les conditions légales et statutaires.

Chaque fois qu'il sera nécessaire de posséder plusieurs actions pour exercer un droit quelconque, en cas d'échange, de regroupement ou d'attribution d'actions ou en conséquence d'augmentation ou de réduction de capital, y compris en l'absence de pertes, de fusion ou toute autre opération sociale, les propriétaires d'actions isolées ou en nombre inférieur à celui requis ne pourront exercer ces droits qu'à la condition de faire leur affaire personnelle du groupement et, éventuellement, de l'achat ou de la vente du nombre de droits nécessaires.

Les héritiers, ayants droit, représentants ou créanciers d'un actionnaire ne peuvent sous quelque prétexte que ce soit, requérir l'apposition des scellés ou exercer des poursuites sur les biens et valeurs de la société, ni demander le partage ou la licitation desdits biens, ni s'immiscer en aucune manière dans son administration ; ils doivent, pour l'exercice de leurs droits, s'en rapporter aux inventaires sociaux et aux décisions de l'assemblée générale.
Les actionnaires ne sont responsables du passif social que jusqu'a concurrence du montant nominal des actions qu'ils possèdent.

**Titre III**
Administration et contrôle de la société

Article 12 - Membres du conseil d'administration

La société est administrée par un conseil composé de trois membres au moins et six membres au plus, sauf décision de porter ce maximum à un chiffre supérieur en cas de fusion, dans conditions prévues par la législation en vigueur.

Article 13 - Conditions de nomination

Au cours de la vie sociale, les administrateurs sont nommés par l'assemblée générale ordinaire. Toutefois, en cas de fusion ou de scission, leur nomination peut être faite par l'assemblée générale extraordinaire. La durée de leurs fonctions est de 5 ans elle prend fin à l'issue de la réunion de l'assemblée générale ordinaire ayant statué sur les comptes de l'exercice écoulé et tenue dans l'année au cours de laquelle expire le mandat de l'administrateur.

Tout administrateur sortant est rééligible sous réserve de satisfaire aux conditions du présent article. Les administrateurs peuvent être révoqués et remplacés à tout moment par l'assemblée générale ordinaire.

La limite d'âge pour l'exercice des fonctions d'administrateur est fixée à soixante-cinq ans. Lorsque cette limite d'âge est atteinte, l'administrateur concerne cesse d'exercer ses fonctions a l'issue de la prochaine assemblée générale ordinaire.

En cas de vacance, par décès ou démission, d'un ou plusieurs sièges d'administrateurs, le conseil d'administration peut entre deux assemblées générales, procéder à des nominations à titre provisoire sous réserve de ratification par la plus prochaine assemblée générale ordinaire. L'administrateur nommé en remplacement d'un autre, ne reste en fonction que pour le temps restant à courir du mandat de son prédécesseur.

A défaut de ratification, les délibérations prises par le conseil d'administration et les actes accomplis antérieurement par lui ou les administrateurs n'en demeurent pas moins valables.

Lorsque le nombre des administrateurs est devenu inférieur au minimum légal, les administrateurs restants doivent convoquer immédiatement l'assemblée générale en vue de compléter l'effectif du conseil d'administration.

Une personne morale peut être nommée administrateur.  Lors de sa nomination, elle est tenue de designer un représentant permanent, personne physique, qui est soumis aux mêmes

conditions et obligations et qui encourt les mêmes responsabilités civile et pénale que s'il était administrateur en son nom propre, sans préjudice de la responsabilité solidaire de la personne morale qu'il représente.

Sa désignation ainsi que la cessation de son mandat sont soumises aux mêmes formalités de publicité que s'il était administrateur en son nom propre.

Le mandat de représentant permanent lui est donne pour la durée de celui de la personne morale administrateur. Il doit être confirme à chaque renouvellement du mandat de celle-ci.

Si la personne morale révoque le mandat de son représentant permanent, ou si celui-ci décède ou démissionne, elle est tenue de notifier cette modification sans délai à la société, par lettre recommandée, et de préciser l'identité de son nouveau représentant.

## Article 14 - Actions de fonction

Les administrateurs, personnes physiques ou personnes morales, doivent être propriétaires pendant toute la durée de leur mandat d'une (1) action au moins.

Si, au jour de sa nomination, un administrateur n'est pas propriétaire du nombre d'actions requis ou, si en cours de mandat, il cesse d'en être propriétaire, il est réputé démissionnaire d'office, s'il n'a pas régularisé sa situation dans le délai de trois mois.

## Article 15 - Organisation du conseil d'administration

Le conseil d'administration élit parmi ses membres un président qui est à peine de nullité de la nomination, une personne physique, pour une durée qui ne peut excéder celle de son mandat d'administrateur. Il détermine sa rémunération.

Le président est rééligible. Le conseil peut le révoquer à tout moment. Toute disposition contraire est réputée non écrite.

En cas d'empêchement temporaire ou de décès du président, le conseil d'administration peut déléguer un administrateur dans les fonctions de président.

En cas d'empêchement temporaire, cette délégation est donnée pour une durée limitée ; elle est renouvelable. En cas de décès du président, elle vaut jusqu'a l'élection du nouveau président.

Le conseil d'administration désigne également un secrétaire qui peut ne pas être administrateur ou actionnaire soit pour une durée déterminée, soit sans limitation de durée. Il est remplace par simple décision du conseil.

Le conseil d'administration se réunit au siège social ou en tout autre lieu figurant sur la convocation de son président, aussi souvent que l'intérêt de la société l'exige.

Les convocations sont réalisées par lettre adressée à chacun des administrateurs et mentionnent l'ordre du jour de la réunion. Toutefois, en cas d'urgence, la convocation peut être faite par tout moyen et même verbalement.

Les commissaires aux comptes sont convoques a certaines des réunions du conseil d'administration fixées par la législation en vigueur.

<u>Article 16 - Délibérations du conseil d'administration</u>

Il est tenu un registre de présence qui est signe par les administrateurs participant à la séance.

Le président, ou en son absence, un administrateur choisi par le conseil d'administration, préside les séances du conseil d'administration.

La moitié au moins des administrateurs doit être présente pour que les délibérations du conseil d'administration soient valables.

Sont réputés présents pour le calcul du quorum et de la majorité, les administrateurs qui participent aux réunions du conseil par des moyens de visioconférence, télétransmission ou télécommunication permettant leur identification et garantissant leur participation effective.

Tout administrateur ou représentant permanent d'une personne morale administrateur, peut donner par lettre ou par télégramme pouvoir a un autre administrateur ou représentant permanent d'une personne morale, administrateur, de le représenter a une séance du conseil, et de voter en ses lieu et place aux délibérations du conseil d'administration, mais chaque administrateur, ou représentant permanent d'une personne morale administrateur, ne peut représenter et émettre un vote qu'au nom d'un seul administrateur, personne physique ou morale au cours d'une même séance.

Les décisions sont prises à la majorité des membres présents ou représentés.
En cas de partage, la voix du président n'est pas prépondérante.

Les administrateurs, ainsi que toute personne appelée a assister aux réunions du conseil, sont tenus a la discrétion a l'égard des informations présentant un caractère confidentiel et données comme telles par le président du conseil.

<u>Article 17 - Procès-verbaux des délibérations</u>

Les délibérations du conseil d'administration sont constatées par des procès-verbaux signés par le président de la séance et par un administrateur.

Ils doivent indiquer les noms des administrateurs présents, excuses ou absents, ils doivent faire état de la présence ou de l'absence des commissaires aux comptes, de toutes personnes convoquées aux réunions en vertu d'une disposition légale ou réglementaire et de la présence de toute autre personne ayant assisté à tout ou partie de la réunion.

Ces procès-verbaux sont transcrits sur un registre spécial tenu au siège social, coté et paraphé.

Les copies ou extraits de ces procès-verbaux, sont certifiés par le président du conseil d'administration, un directeur général, l'administrateur délégué temporairement dans les fonctions de président, ou un fondé de pouvoir spécialement habilité à cet effet.

Au cours de la liquidation de la société, les copies ou extraits de ces procès-verbaux sont valablement certifies par l'un des liquidateurs.

Il est suffisamment justifié du nombre des administrateurs en exercice et de leur présence ou de leur représentation par la production d'une copie ou d'un extrait du procès-verbal.

<u>Article 18 - Pouvoirs du conseil d'administration</u>

Le conseil d'administration détermine les orientations de l'activité de la société et veille à leur mise en œuvre.

Sous réserve des pouvoirs expressément attribués aux assemblées d'actionnaires et dans la limite de l'objet social, il se saisit de toute question intéressant la bonne marche de la société et règle par ses délibérations les affaires qui la concernent.

Dans les rapports avec les tiers, la société est engagée même par les actes du conseil d'administration qui ne relèvent pas de l'objet social, à moins qu'elle ne prouve que le tiers savait que l'acte dépassait cet objet ou qu'il ne pouvait l'ignorer compte tenu des circonstances, étant exclu que la seule publication des statuts suffise à constituer cette preuve.

Le conseil d'administration procède aux contrôles et vérifications qu'il juge opportuns.

Chaque administrateur reçoit toutes les informations nécessaires à l'accomplissement de sa mission et peut se faire communiquer de la direction générale tous les documents qu'il estime utiles.

Article 19 - Président du conseil d'administration

Le président du conseil d'administration représente le conseil d'administration. Il organise et dirige les travaux de celui-ci, dont il rend compte a l'assemblée générale. Il veille au bon fonctionnement des organes de la société et s'assure, en particulier, que les administrateurs sont en mesure d'accomplir leur mission.

Le président du conseil d'administration reçoit communication par l'intéressé des conventions portant sur des opérations courantes et conclues à des conditions normales. Le président communique la liste et l'objet desdites conventions aux membres du conseil et aux commissaires aux comptes.

Article 20 - Direction générale

20-1 mode d'exercice de la direction générale :

La direction générale de la société est assumée, sous sa responsabilité, soit par le président du conseil d'administration, soit par une autre personne physique, nommée par le conseil d'administration et portant le titre de directeur général.

Le conseil d'administration choisit entre les deux modalités d'exercice de la direction générale en statuant à la majorité de ses membres.

Les actionnaires et les tiers seront informés du choix opéré par le conseil dans les conditions réglementaires.

Le changement de modalité d'exercice de la direction générale n'entraine pas une modification des statuts.

Lorsque la direction générale de la société est assumée par le président de conseil d'administration, les dispositions ci-après, relatives au directeur général lui sont applicables.

Lorsque le conseil d'administration choisit la dissociation des fonctions de président et de directeur général, il procède à la nomination du directeur général, fixe la durée de son mandat qui ne peut excéder celle du mandat du président et le cas échéant, les limitations de ses pouvoirs.

Le directeur général est révocable à tout moment par le conseil d'administration.

Le conseil d'administration détermine la rémunération éventuelle du directeur général.

20-2 pouvoirs du directeur général :

Le directeur général est investi des pouvoirs les plus étendus pour agir en toute circonstance au nom de la société. Il exerce ces pouvoirs dans la limite de l'objet social et sous réserve de ceux que la loi attribue expressément aux assemblées d'actionnaires et au conseil d'administration.

Il représente la société dans ses rapports avec les tiers. La société est engagée même par les actes du directeur général qui ne relèvent pas de l'objet, à moins qu'elle ne prouve que le tiers savait que l'acte dépassait cet objet ou qu'il ne pouvait l'ignorer compte tenu des circonstances, étant exclu que la seule publication des statuts suffise à constituer cette preuve.

Les décisions du conseil d'administration limitant les pouvoirs du directeur général sont inopposables aux tiers.

20-3 nomination - pouvoirs des directeurs généraux délégués :

Dans les conditions prévues par la loi, il peut être nomme un ou plusieurs directeurs généraux délégués.

20-4 mandataires spéciaux

Le conseil, sur la proposition du président ou du directeur général, le président ou le directeur général eux-mêmes, ainsi que le ou les directeurs généraux délégués, peuvent dans les limites fixées par la législation en vigueur, déléguer les pouvoirs qu'ils jugent convenables, soit pour assurer toute direction ou responsabilité dans la société, soit pour un ou plusieurs objets détermines, a tous mandataires faisant ou non partie du conseil et même étrangers a la société, pris individuellement ou réunis en comites ou commissions. Ces pouvoirs peuvent être permanents ou temporaires et comporter ou non la faculté de substituer.

Ces mandataires ou certains d'entre eux pourront également être habilites à certifier conforme toute copie ou extrait de tous documents dont les modalités de certification ne sont pas fixées par la loi, et notamment tous pouvoirs, comptes sociaux et statuts de la société, ainsi qu'a délivrer toute attestation la concernant.

Les délégations de pouvoirs ainsi conférées en vertu des présents statuts par le conseil d'administration, le président, le directeur général ou le ou les directeurs généraux délégués, conservent tous leurs effets, malgré l'expiration des fonctions du président, du directeur général, des directeurs généraux délégués ou des administrateurs en exercice au moment ou ces délégations ont été conférées.

Article 21 - Rémunération

Il peut être alloué au conseil d'administration une rémunération fixe annuelle, à titre de jetons de présence, dont le montant porté aux charges d'exploitation, est fixé par l'assemblée générale ordinaire et reste maintenu jusqu'a décision contraire de cette assemblée.

Le conseil d'administration répartit librement ces jetons de présence entre ses membres, dans les proportions qu'il juge convenables.

Le conseil d'administration détermine par ailleurs, la rémunération (fixe ou proportionnelle) attribuée au président, au directeur général et aux directeurs généraux délégués, éventuellement à l'administrateur remplissant provisoirement les fonctions de président, ainsi qu'a l'administrateur qui s'est vu confier un mandat spécial.

Indépendamment des salaires que les administrateurs lies à la société par un contrat de travail peuvent recevoir, il ne peut leur être alloué par la société aucune autre rémunération que celles prévues ci-dessus.

Le conseil d'administration peut autoriser le remboursement des frais de voyage et de déplacement et toutes dépenses engagées par les administrateurs le directeur général et les directeurs généraux délégués dans l'intérêt de la société.

Article 22 - Responsabilité des administrateurs

Les membres du conseil d'administration, administrateurs et représentants permanents des personnes morales administrateurs, sont responsables civilement et pénalement dans les conditions fixées par la législation en vigueur.

Article 23 - Conventions entre la société et l'un des administrateurs ou directeurs généraux

Les dispositions des articles l225.38 à l 225-43 sont applicables aux conventions conclues entre la société et l'un de ses administrateurs, ou directeurs généraux, directement ou par personne interposée.

**Titre IV**
**Contrôle de la société**

Article 24 - Commissaires aux comptes

Le contrôle des comptes de la société est effectue conformément a la loi par deux commissaires aux comptes titulaires nommés par l'assemblée générale pour une durée de six exercices.

Un ou plusieurs commissaires aux comptes suppléants, appelés à remplacer les titulaires en cas de décès, d'empêchement, ou de refus de ceux-ci, peuvent également être nommés par l'assemblée générale.

Ils exercent leur mission de contrôle conformément à la loi. Les commissaires aux comptes sont rééligibles.

En cas d'empêchement, de refus, de démission ou de décès, les commissaires aux comptes titulaires sont remplacés par les commissaires aux comptes suppléants.

Les commissaires aux comptes sont convoques a toutes les réunions du conseil d'administration qui examinent et arrêtent des comptes annuels ou intermédiaires ainsi qu'a toutes les assemblées d'actionnaires.

**Titre V**
**Assemblées générales**

Article 25 - Nature des assemblées

Les décisions des actionnaires sont prises en assemblée générale, lesquelles est qualifiées d'ordinaires ou d'extraordinaires selon la nature des décisions qu'elles sont appelées à prendre. La compétence respective de ces assemblées est celle prévue par la loi.

1.    Assemblée générale ordinaire

L'assemblée générale ordinaire est celle qui est appelée à prendre toutes décisions qui ne modifient pas les statuts. Notamment :

-    Elle approuve, rejette ou redresse les comptes, elle statue sur la répartition et l'affectation des bénéfices,

-   Elle nomme, révoque, les membres du conseil d'administration et ratifie ou rejette leurs cooptations ; elle nomme, révoque les commissaires aux comptes et leur donne tout quitus,

-   Elle fixe le montant des jetons de présence alloues aux administrateurs.

-   Elle décide des émissions d'obligations ainsi que de la constitution des sûretés particulières à leur conférer.

Chaque année, il est tenu, dans les délais légaux, une assemblée générale ordinaire, pour approuver les comptes annuels. Cette assemblée entend les rapports du conseil d'administration et des commissaires aux comptes. Elle délibère et statue sur les comptes annuels de l'exercice écoulé.

2.      Assemblée générale extraordinaire

L'assemblée générale extraordinaire est seule habilitée à modifier les statuts dans toutes leurs dispositions. Elle ne peut toutefois augmenter les engagements des actionnaires, sous réserve des opérations résultant d'un regroupement d'actions régulièrement effectue.


## Article 26 - Convocation et réunion des assemblées générales

Les assemblées générales sont convoquées par le conseil d'administration ou, a défaut, dans les conditions de l'article I.225-103 ii du code de commerce. Les convocations sont faites dans les conditions fixées par la réglementation en vigueur.
Les assemblées générales sont réunies au siège social ou en tout autre endroit indiqué dans la convocation.


## Article 27 - Ordre du jour

L'ordre du jour des assemblées est arrête par l'auteur de la convocation.

Un ou plusieurs actionnaires, représentant au moins la quotité du capital social requise et agissant dans les conditions et délais fixés par la loi, ont la faculté de demander, par lettre recommandée avec demande d'avis de réception, l'inscription a l'ordre du jour de l'assemblée de projets de résolution.

L'assemblée ne peut délibérer sur une question qui n'est pas inscrite à l'ordre du jour. Néanmoins, elle peut, en toutes circonstances, révoquer un ou plusieurs membres du conseil d'administration et procéder a leur remplacement.

L'ordre du jour des assemblées ne peut être modifié sur deuxième convocation.

### Article 28 - Admission aux assemblées - pouvoirs

Tout actionnaire a le droit de participer aux assemblées générales et aux délibérations personnellement ou par l'intermédiaire d'un mandataire, soit par correspondance dans les conditions légales et réglementaires.

### Article 29 - Tenue de l'assemblée - bureau - procès-verbaux

Les assemblées sont présidées par le président du conseil d'administration ou, en son absence, par un administrateur délégué à cet effet par le conseil. A défaut, l'assemblée élit elle-même son président.

Les deux actionnaires, présents et acceptant, représentant tant par eux-mêmes que comme mandataires le plus grand nombre de voix, remplissent les fonctions de scrutateurs.

Le bureau, ainsi constitue, désigne un secrétaire qui peut être pris en dehors des membres de l'assemblée.

Il est tenu une feuille de présence conformément à la réglementation en vigueur.

Les assemblées générales délibèrent aux conditions de quorum et de majorité prévues par la loi.

Les délibérations de l'assemblée générale sont constatées par des procès-verbaux inscrits sur un registre spécial et signés par les membres composant le bureau. Les copies ou extraits de ces procès-verbaux sont valablement certifies dans les conditions fixées par la loi.

Les délibérations des assemblées générales obligent tous les actionnaires, même absents, dissidents ou incapables.

### Article 30 - Quorum - vote - nombre de voix

Pour le calcul du quorum et de la majorité, sont réputés présents, les actionnaires qui participent a l'assemblée par des moyens de visioconférence ou par des moyens de télécommunication permettant leur identification et dont la nature et les conditions d'application sont déterminées par la réglementation en vigueur.

Dans les assemblées générales ordinaires et extraordinaires, le quorum est calculé sur l'ensemble des actions composant le capital social, déduction faite des actions privées du droit de vote en vertu des dispositions prévues par la loi.

Les assemblées générales sont convoquées et délibèrent dans les conditions prévues par la loi.

En cas de vote par correspondance, il n'est tenu compte pour le calcul du quorum que des formulaires reçus par la société avant la réunion de l'assemblée, dans les conditions et délais fixés par décret.

A chaque action est attaché un droit de vote.

## Article 31 - Droit de communication aux actionnaires

Tout actionnaire a le droit d'obtenir, dans les conditions et aux époques fixées par la loi, communication des documents nécessaires pour lui permettre de se prononcer en connaissance de cause et de porter un jugement sur la gestion et le contrôle de la société.

La nature de ces documents et les conditions de leur envoi ou mise à disposition sont déterminées par la loi et les règlements.

### Titre VI

### Exercice social - comptes sociaux - Affectation et répartition des bénéfices

## Article 32 - Exercice social

L'exercice social a une durée de douze mois, qui commence le 1er janvier et finit le 31 décembre.

## Article 33 - Inventaire - comptes annuels - bilan

Il est tenu une comptabilité régulière des opérations sociales, conformément aux lois et usages du commerce.

A la clôture de chaque exercice, le conseil d'administration dresse l'inventaire des divers éléments de l'actif et du passif. Il dresse également les comptes annuels, conformément aux dispositions légales.

Il annexe au bilan un état des cautionnements, avals et garanties donnes par la société et un état des sûretés consenties par elle.

Il établit un rapport de gestion sur la situation de la société et son activité au cours de l'exercice écoulé, et toutes autres informations exigées par les textes en vigueur.

Tous ces documents sont mis a la disposition du conseil d'administration et du ou des commissaires aux comptes et, le cas échéant, du comite d'entreprise, dans les conditions légales et réglementaires.

### Article 34- Affectation et répartition des bénéfices

Sur les bénéfices nets de chaque exercice, diminués le cas échéant des pertes antérieures, il est tout d'abord prélevé au moins cinq pour cent pour constituer le fonds de réserve légale prescrit par la loi ; ce prélèvement cesse d'être obligatoire lorsque le fonds de réserve atteint une somme égale au dixième du capital social, et reprend son cours lorsque pour une cause quelconque, la réserve légale est descendue au-dessous de cette fraction.

S'il résulte des comptes de l'exercice, tels qu'ils sont approuves par l'assemblée générale, l'existence d'un bénéfice distribuable tel qu'il est défini par la loi, l'assemblée générale décide de l'inscrire a un ou plusieurs postes de réserve dont elle règle l'affectation ou l'emploi, de le reporter a nouveau ou de le distribuer.

L'assemblée générale statuant sur les comptes de l'exercice à la faculté d'accorder a chaque actionnaire pour tout ou partie du dividende mis en distribution une option entre le paiement en numéraire ou en actions, et d'autoriser le directoire, en cas de décision par celui-ci de versement d'acomptes sur dividendes, à procéder au paiement dudit acomptes, en actions de la société.

Apres avoir constaté l'existence de réserves dont elle a la disposition, l'assemblée générale peut décider la distribution de sommes prélevées sur ces réserves. Dons ce cas, la décision indique expressément les postes de réserves sur lesquels les prélèvements sont effectues.

Toutefois, les dividendes sont prélevés par priorité sur le bénéfice distribuable de l'exercice.

La mise en paiement des dividendes doit avoir lieu dans un délai maximal de neuf mois âpres la clôture de l'exercice, sauf prolongation de ce délai par autorisation de justice.

## Titre VII

### Dissolution - liquidation

#### Article 35 - Capitaux propres inférieurs a la moitié du capital social

Si, du fait de pertes constatées dans les documents comptables, les capitaux propres de la société deviennent inférieurs a la moitié du capital social, le conseil d'administration est tenu, dans les quatre mois qui suivent l'approbation des comptes ayant fait apparaitre ces pertes, de convoquer l'assemblée générale extraordinaire a l'effet de décider, s'il y a lieu, la dissolution anticipée de la société.

Si la dissolution n'est pas prononcée les capitaux propres doivent être reconstitues a concurrence d'une valeur égale a la moitié du capital social dans les délais légaux.

#### Article 36 - Dissolution - liquidation

La dissolution de la société intervient à l'expiration du terme fixé par les statuts ou a la suite d'une décision de l'assemblée générale extraordinaire des actionnaires.

Un ou plusieurs liquidateurs sont alors nommés par cette assemblée générale extraordinaire aux conditions de quorum et de majorité prévues pour les assemblées générales ordinaires.

Le liquidateur représente la société. Tout l'actif social est réalisé et le passif acquitte par le liquidateur qui est investi des pouvoirs les plus étendus. Il repartit ensuite le solde disponible.
L'assemblée générale des actionnaires peut l'autoriser à continuer les affaires en cours ou a en engager de nouvelles pour les besoins de la liquidation.

L'actif net subsistant ôpres remboursement du nominal des actions est partage également entre toutes les actions.

En cas de réunion de toutes les actions en une seule main, la décision éventuelle de dissolution - qu'elle soit volontaire ou judiciaire - entraine, dans les conditions prévues par la loi, la transmission du patrimoine social a l'actionnaire unique, sans qu'il y ait lieu a liquidation.

## Titre VIII

### Contestations

### Article 37 - Contestations

Toutes contestations susceptibles de s'élever pendant la durée de la société ou âpres sa dissolution pendant le cours des opérations de liquidation, soit entre les actionnaires et la société, soit entre les actionnaires eux-mêmes, relativement aux affaires sociales ou a l'exécution des dispositions statutaires, seront jugées conformément a la loi et soumises a la juridiction des tribunaux compétents.

### Article 38 - Action en responsabilité

Aucune décision de l'assemblée générale ne peut avoir pour effet d'écarter ou d'éteindre une action en responsabilité contre le conseil d'administration ou l'un ou plusieurs membres du conseil d'administration.

L'action en responsabilité contre les membres du conseil d'administration tant sociale qu'individuelle, se prescrit par trois ans à compter du fait dommageable ou, s'il a été dissimule, de sa révélation. Toutefois, lorsque le fait est qualifie de crime, l'action se prescrit par dix ans.

# Exhibit 6b

**Certified true copy**

*[Signature]*
*Jean-Marc EYSSAUTIER*
*Managing Director*

[stamp]
Clerk of the Commercial
Court of Paris
I       M       R
OCT. 12, 2006
*85363*
FILING No.

# CACEIS Bank

*63B 2472*

Modified Articles of Association
Consequent to the Extraordinary General Meeting
of September 29, 2006

Limited company having share capital of €200,000,000
Registered office: 1-3 Place Valhubert – 75013 PARIS
Trade and Companies Registry of Paris 692 024 722

TITLE I
Form – Company Name – Purpose – Registered Office – Term

Article 1 – Form

The company was incorporated in the form of a limited company with Board of Directors, registered in the Trade and Companies Register of Paris on June 5, 1969. It was transformed into a limited company with Board of Directors and Supervisory Board by decision of the mixed general meeting of shareholders of October 10, 2005. Then, by decision of the extraordinary general meeting of shareholders on April 28, 2006, the company was transformed into a limited company with Board of Directors.

It continues to exist among the owners of shares hereinafter created and of those which could later be created and is governed by the Commercial Code and, in particular, by its Articles L. 225-17 through L. 225-56, by the Articles L. 311-1 *et seq.*, L. 211-1 *et seq.*, and L. 511-I *et seq.* of the Monetary and Financial Code, by the legal and regulatory provisions applicable to credit institutions, by current laws and regulations, as well as by these Articles of Association.

Article 2 – Purpose

The purpose of the company, in France and abroad, is that of:

− Permitting all credit or financing transactions for the benefit of the clientele (or of legal persons, representing them as regards collective investment undertakings), of which all or a part of the financial instruments are kept by the company;

− Making all means of payment available to the clients, and ensuring the management thereof, for all clients of which all or a part of the financial instruments are kept by the company;

− Ensuring all services linked to the role as depository of UCI and other investment funds, including special purpose vehicles (FCC);

− Ensuring the account keeping and the holding of the financial instruments addressed in Article L. 211-1 of the Monetary and Financial Code, as well as all financial instruments, whether securities in paper or dematerialized form, issued on the basis of French or foreign law, of company shares, of founders' shares or ownership interests, in the form of registered, bearer or promissory instruments, as well to accept or carry out all payments of interest coupons, of dividends or other ex-rights;

− Acquiring and alienating all financial instruments or shares mentioned in the preceding paragraph;

- Ensuring the receipt and transmission of orders on behalf of third parties relating to the whole of these financial instruments and all accessory services;

- Ensuring foreign exchange services;

- Ensuring the compensation of all transactions on financial instruments as mentioned in the preceding paragraph;

- Ensuring all other connected banking and financial services, of which, in particular, assistance as regards the management of treasury, financial engineering for the clientele of which all or a part of the financial instruments are or will be held by the company.

- Ensuring the provision of all management services for treasury, accounting or administration as regards account keeping, as well as all studies related to these transactions;

- Accepting or conferring, when dealing with loans, borrowings or any other transaction, mortgage assignment, pledging of collateral or other guarantees for the client of which all or a part of the financial instruments are held by the company

- Ensuring the role of transfer agent, of centralizing agent of liabilities and domiciliation agent;

- And more generally, the realization of all financial, commercial or industrial, securities or real estate transactions which relate directly or indirectly to one of the purposes or transactions mentioned here above.

The bank transactions will be carried out by CACEIS Bank for the benefit of a clientele that is essentially made up of institutional clients, with the exclusion of all clientele consisting of individuals, and in the extension of the investment and assimilated services.

Article 3 – Company Name

The company has the company name: CACEIS Bank

All deeds and documents being issued by the company must include the company name preceded or immediately followed by the words "*société anonyme*" [limited company] or by the initials "*s.a.*" [Ltd.] and the stating of the capital.

Article 4 – Registered office

The registered office of the company is located in the 13th arrondissement in Paris – 1-3 place Valhubert.

It can be changed to any other location in Paris or in the neighboring *départements*, by means of a simple decision of the Board of Directors, subject to ratification of said decision by the next ordinary general meeting, and anywhere else by virtue of a deliberation of the extraordinary general meeting.

Article 5 – Term

The term of the company is set at 99 years, running from the date of its registration in the trade register, subject to premature extension or winding up that results from a decision of the extraordinary general meeting of the shareholders.

**Title II**

**Share Capital – Form of the Shares**
**Rights and Obligations Attached to the Shares**
**Transmission of the Shares**

Article 6 – Share Capital

The share capital is set at €200,000,000 (two hundred million euros), divided into 8,235,863 (eight million, two hundred and thirty-five thousand, eight hundred and sixty-three) shares without any nominal value.

Article 7 – Modifications of the Share Capital

The share capital can be increased, decreased or amortized according to conditions provided for by the law.

Article 8 – Form of the Shares

The shares are registered. They require a registration in an individual account according to the conditions and the modalities provided for by current legislative and regulatory provisions.

Article 9 – Transfer and Transmission of Shares

The shares are transferrable in compliance with legal provisions.

The transfer of the shares will be made, vis-à-vis the company and third parties, by means of a transfer from the account of the transferor to the account of the transferee upon presentation of an instruction to carry out the transfer.

Article 10 – Indivisibility of the Shares

The shares are indivisible from the point of view of the company, subject to the following provisions:

The voting right attached to the share belongs to the usufruct holder in ordinary general meetings and to the bare owner in extraordinary general meetings.

Even if deprived of voting rights, the bare owner of shares always has the right to participate in general meetings.
Undivided owners are required to have themselves represented in dealings with the company by one of their number or by a sole representative.

The rights and obligations attached to each share accompany the security no matter whose hands it might pass through.

Article 11 – Rights and Obligations attached to the Shares

In the ownership of the corporate assets, in the division of the profits and in the liquidation surplus, each share entitles to a share that is equal to the round lot of the share capital that it represents.

Furthermore, each share gives a right to vote and to representation in general meetings in accordance with legal and statutory requirements.

In each circumstance where it will be necessary to possess a plurality of shares in order to be able to exercise any right, in the event of exchange, of aggregation or allocation of shares, or as a consequence of an increase or decrease in capital, including therein in the absence of losses, of merger or any other corporate transaction, the owners of isolated shares, or shares in a number that are lesser than that which is needed, will only be able to exercise these rights if they take on the personal responsibility of grouping and, eventually, the purchase or sale of the number of rights that are required.

The heirs, beneficial owners, representatives or creditors of a shareholder cannot, under any pretext whatsoever, demand that seals be placed or institute proceedings against assets and securities of the company, nor can they demand the division or sale by auction of said assets, nor to interfere in any way in its administration; for the exercise of their rights, they must rely on the balance sheets and inventories of the company and the decisions of the general meeting.
The shareholders are not responsible for the corporate liabilities beyond the value of the nominal amount of the shares that they possess.

**Title III**
**Administration and Audit of the Company**

Article 12 – Member of the Board of Directors

The company is administered by a Board made up of at least three and no more than six members, unless it is decided to raise this minimum to a higher number in the event of merger, according to circumstances provided for in current legislation.

Article 13 – Conditions of Appointment

Over the course of corporate life, the Directors are appointed by the ordinary general meeting. Nonetheless, in the event of a merger or demerger, their appointment can be made by an extraordinary general meeting. The term of their offices is 5 years, it ends upon the conclusion of the meeting of the ordinary general meeting, after the meeting has approved the accounts for the past fiscal year, and that the meeting is held during the year in which the mandate of the Director expires.

The departing Director can be re-elected provided they satisfy the requirements of this article. The Directors can be revoked and replaced at any time by the ordinary general meeting.

The age limit for the exercise of the offices of Director is set at age sixty-five. When this age limit has been reached, the concerned Director ceases to exercise their offices at the conclusion of the next ordinary general meeting.

In the event of a vacancy, brought about by death or resignation, of one or a plurality of Directors, the Board of Directors, between two general meetings, can proceed to provisional appointments subject to ratification by the next ordinary general meeting. The Director appointed in replacement of another, will solely remain in office for the time still to run in the mandate of their predecessor.

Lacking ratification, the deliberations taken by the Board of Directors and the deeds previously accomplished by them or the Directors will retain the same validity.

When the number of Directors falls below the legal minimum, the remaining Directors must immediately call the general meeting in order to fill out the headcount of the Board of Directors.

A legal person can be appointed Director. At the time of their appointment, it is required to designate a permanent representative, who must be a physical person, who is subject to the

same conditions and obligations and incurs the same civil and criminal liability as if they were a Director in their own name, without prejudice to the joint and several liability of the legal person that they represent.

Their designation, as well as the ending of their mandate are subject to the same formalities of publication as they would be if they were a Director in their own name.

The mandate of permanent representative is given to them for the term of that of the legal person acting as a Director. It must be confirmed at each renewal of the mandate of the same.

If the legal person revokes the mandate of their permanent representative, or if the same were to die or resign, the legal person is required to notify this modification without delay to the company, by registered letter, and to specify the identity of their new representative.

Article 14 – Office Share

The Directors, whether physical or legal persons, must be owners of at least one (1) share for the whole term of their mandate.

If, on the day of their appointment, a Director is not the owner of the number of shares that is required, or, during the course of the mandate, they were to cease being owners, they are deemed to have automatically resigned, if they have not regularized their situation within a time period of three months.

Article 15 – Organization of the Board of Directors

The Board of Directors elects a Chairperson from among their members, who must be a physical person for their appointment to be valid, for a term that cannot exceed that of their mandate as Director. It determines their remuneration.

The Chairperson can be re-elected. The Board can revoke them at any time. All provisions to the contrary will be deemed inexistent.

In the event of temporary unavailability or of death of the Chairperson, the Board of Directors can delegate a Director in the offices of the Chairperson.

In the event of temporary unavailability, this delegation is given for a limited time period; it is renewable. In the event of death of the Chairperson, the delegation will be valid until the election of the new Chairperson.

The Board of Directors likewise designates a Secretary who does not need to be a Director or a shareholder, this for either a pre-determined term, or for an unlimited term. They are replaced by a simple decision of the Board.

The Board of Directors meets in the company headquarters or at any other location appearing in the calling to be sent out by the Chairperson, as frequently as the interest of the company requires.

The callings are made by letter addressed to each of the Directors and mention the agenda of the meeting. Nonetheless, in the event of emergency, the calling can be made by any means and even orally.

The Statutory Auditors are called to specific meetings of the Board of Directors determined by current legislation.

Article 16 – Deliberations of the Board of Directors

An attendance sheet is kept which is signed by the Directors participating in the session.

The Chairperson, or in their absence, a Director selected from among the Board of Directors, chairs the session of the Board of Directors.

At least one half of the Directors must be present in order for the deliberations of the Board of Directors to be valid.

Directors who participate in meetings of the Board of Directors by videoconference, teletransmission or telecommunication that allows for them to be identified and ensuring their effective participation, are deemed to be present for determination of quorum and majority.

All Directors and permanent representatives of a legal person acting as a Director, can give a proxy by letter or by telegram to another Director or permanent representative of a legal person acting as a Director to represent them during a session of the Board, and to vote in their stead in deliberations of the Board of Directors, however each Director, or permanent representative of a legal person acting as a Director, can only represent and issue a vote in the name of one single Director, whether a physical or legal person, over the course of a same session.

Decisions are taken by a majority vote of the members who are present or represented.
In the event of a tie, the vote of the Chairperson does not cast the tie-breaking vote.

The Directors, as well as any other person called to participate in the meetings of the Board are bound to confidentiality as regards information that presents a confidential nature and is given as such by the Chairperson of the Board.

Article 17 – Minutes of the Deliberations

The deliberations of the Board of Directors are confirmed by minutes that are signed by the Chairperson of the session and by one Director.

The minutes must specify the names of the Directors who are present, excused or absent, they must make note of the presence or the absence of the Statutory Auditors, of all persons called to the meetings by virtue of a legal or regulatory provision and of the presence of any other person having participated in all or a part of the meeting.

These minutes are transcribed in a special numbered and signed register that is kept at the company headquarters.

The copies and excerpts of these minutes are certified by the Chairperson of the Board of Directors, a Managing Director, the Director temporarily delegated to the offices of Chairperson, or a legal representative specially authorized for this purpose.

During the winding up of the company, the copies or excerpts of these minutes are validly certified by one of the Liquidators.

A copy or an excerpt from the minutes is sufficient proof of the number of Directors in office, their attendance or their representation.

Article 18 – Powers of the Board of Directors

The Board of Directors determines the direction of the business of the company and ensures its implementation.

With the exception of those powers expressly assigned to the shareholders' meetings and subject to the limitations of the company purposes, it handles all matters that impact the proper functioning of the company and, by way of its deliberations, governs the business that concerns it.

In its relationships with third parties, the company is bound even by the actions of the Board of Directors which do not result from the company purpose, unless it can prove that the third party was aware that the action went beyond this purpose or that they could not ignore it given the circumstances, without the mere publication of the Articles of Association being sufficient to constitute such proof thereof.

The Board of Directors carries out the audits and verification that it deems to be opportune.

Each Director receives all information that is necessary for the accomplishment of their mission and can have all documents that they deem to be useful communicated to them by the General Management.

Article 19 – Chairperson of the Board of Directors

The Chairperson of the Board of Directors represents the Board of Directors. They organize and direct the work of the same, of which they give account to the general meeting. They ensure the proper functioning of the company bodies and ensure, in particular, that the Directors are able to accomplish their mission.

The Chairperson of the Board of Directors receives communications from the party interested by agreements relating to ordinary transactions concluded under normal terms. The Chairperson communicates the list and the purpose of said agreements to the members of the Board and to the Statutory Auditors.

Article 20 – General Management

20-1 Mode of operation of the general management:

The general management of the company is taken on, under its responsibility, either by the Chairperson of the Board of Directors, or by another physical person, appointed by the Board of Directors and carrying the title of Managing Director.

The Board of Directors selects between two modes of operation of the general management, acting on the majority vote of its members.

The shareholders and third parties will be informed of the selection made by the Board pursuant to regulatory terms.

The change in mode of operation of the general management does not bring about a modification of the Articles of Association.

When the general management of the company is assumed by the Chairperson of the Board of Directors, the provisions that follow regarding the Managing Director are also applicable to them.

In the event that the Board of Directors were to select the dissociation of the offices of the Chairperson and of the Managing Director, it will move ahead with the appointment of the Managing Director, will set the term of their mandate, which cannot exceed that of the mandate of the Chairperson, and, as the case may be, the limitations of their powers.

The Managing Director can be revoked at all times by the Board of Directors.

The Board of Directors determines the possible remuneration of the Managing Director.

20-2 Powers of the Managing Director:

The Managing Director is vested with the most extensive powers to be able to act in the name of the company, no matter the circumstances. They exercise their powers within the limitations of the company purpose and subject to that which the law specifically allocates to the shareholder meetings and to the Board of Directors.

They represent the company in its relationships with third parties. The company is bound even by the actions of the Board of Directors which do not result from the company purpose, unless it can prove that the third party was aware that the action went beyond this purpose or that they could not ignore it given the circumstances, without the mere publication of the Articles of Association being sufficient to constitute such proof thereof.

The decisions of the Board of Directors limiting the powers of the General Director are not enforceable against third parties.

20-3 Appointment – Powers of the Deputy Managing Directors

In circumstances provided for by law, one or a plurality of Deputy Managing Directors can be appointed.

20-4 Special Proxies

The Board, at the request of the Chairperson or of the Managing Director, the Chairperson or the Managing Director themselves, as well as the Deputy Managing Directors, may, within the limits provided under current law, delegate the powers it sees fit, either to ensure full management or responsibility in the company, or for one or more specific purposes, to all agents, whether members or not of the Board, and even third parties to the company, individually or jointly in committees or commissions. These powers can be permanent or temporary and entail, or not, the option of substitution.

These proxies, or some of them, can likewise be qualified to certify as being true copies of any copy or excerpt of any document for which the certification modalities are not set forth by law, and, in particular, all powers, company accounts and Articles of Association of the company, as well as to deliver any certificate concerning it.

The delegations of power that are thus conferred by virtue of these Articles of Association by the Board of Directors, the Chairperson, the Managing Director or the Deputy Managing Director(s), maintain their effect, notwithstanding the expiration of the offices of the Chairperson, of the Managing Director, of the Deputy Managing Directors or of the Directors in office at the time in which these delegations have been conferred.

Article 21 – Remuneration

A set annual remuneration can be allocated to the Board of Directors, as attendance fees, the amount recorded as an operating expense; it is set by the ordinary general meeting and will be retained until there is no counter decision of this meeting.

The Board of Directors freely distributes these attendance fees between its members, in appropriate proportions.

The Board of Directors furthermore determines the remuneration (set or proportional) allocated to the Chairperson, to the Managing Director and to the Deputy Managing Directors, possibly to the Director who is provisionally fulfilling the offices of Chairperson, as well as to the Director who has been conferred a special proxy.

Independently of the salaries that the Directors linked to the company by a work contract may receive, it is not possible that any remuneration other than that provided here above can be allocated by the company.

The Board of Directors can authorize the reimbursement of travel and accommodation expenses and all expenses incurred by the Directors, the Managing Director and the Deputy Managing Directors in the interest of the company.

Article 22 – Liability of the Directors

The members of the Board of Directors, Directors and permanent representatives of the legal persons acting as Directors, are civilly and criminally liable in accordance with the circumstances set forth by the current legislation.

Article 23 – Agreements between the Company and one of the Directors or Managing Directors

The provisions of Articles L. 225-38 through L. 225-43 are applicable to the conventions concluded between the company and one of the Directors, or Managing Directors, whether directly or through a third party.

**Title IV**
**Audit of the company**

<u>Article 24- Statutory Auditors</u>

The financial audit of the company is carried out in conformity with the law by two Statutory Auditors appointed by the general meeting for a term of six fiscal years.

One or a plurality of alternate auditors, called to replace the incumbents in the event of death, impediment or refusal of the same, may likewise be appointed by the general meeting.

They carry out their audit mission in conformity with the law. The Statutory Auditors can be re-elected.

In the event of impediment, of refusal, of resignation or of death, the incumbent Statutory Auditors are replaced by the alternate auditors.

The Statutory Auditors are called to all meetings of the Board of Directors which examine and approve annual or intermediary accounts, as well as all the shareholders' meeting.

**Title V**
**General meetings**

<u>Article 25 – Nature of the Meetings</u>

The decisions of the shareholders are taken in general meetings, which are classified as ordinary or extraordinary, depending on the nature of the decisions that they are called to take. The respective authority of these meetings is that provided for by the law.

1.      Ordinary General Meeting

The ordinary general meeting is that which is called to make all decisions which do not modify the Articles of Association, in particular:

−   It approves, rejects or adjusts the accounts, it approves the distribution and the allocation of the profit.

- It appoints, revokes, the members of the Board of Directors and ratifies or rejects their co-optations; it appoints, revokes the Statutory Auditors and discharges them.

- It sets out the amount of the attendance fees allocated to the Directors.

- It decides on the issuance of bonds as well as the pledging of specific securities to confer on them.

Each year, within legally specified terms, an ordinary general meeting is held to approve the annual accounts. This meeting hears the reports of the Board of Director and of the Statutory Auditors. It deliberates and approves the annual accounts of the previous fiscal year.

2.    Extraordinary General Meeting

The extraordinary general meeting is the only one authorized to modify any and all provisions of the Articles of Association. It cannot however increase the commitments of the shareholders, subject to the approval of the transactions resulting from a properly carried out reverse stock split.

Article 26 – Calling and Meeting of the General Meetings

The general meetings are called by the Board of Directors, or lacking that, according to the circumstances of Article L. 225-103 ii of the Commercial Code. The callings of the meetings are carried out according to the conditions set forth by current regulations.
The general meetings meet at the registered office or at any other location specified in the meeting calling.

Article 27 – Agenda

The agenda of the meetings is decided upon by the person in charge of the calling of the meeting.

One or a plurality of shareholders, representing at least the share of the required share capital and acting according to the circumstances and time periods set forth by the law, have the possibility of requesting, by registered mail with return receipt, the inclusion of draft resolutions in the agenda of the meeting.

The meeting cannot deliberate on an item that is not included in the agenda. It can however, in all circumstances, revoke one or a plurality of the members of the Board of Directors and proceed to their replacement.

The agenda of the meetings cannot be modified upon second calling.

<u>Article 28 – Admission to Meetings – Proxies</u>

All shareholders have the right to participate in the general meetings and in the deliberations in person or through the intermediary of a proxy, or by correspondence under current legal and regulatory conditions.

<u>Article 29 – Holding of the Meeting – Panel – Minutes</u>

The meetings are chaired by the Chairperson of the Board of Directors, or, in their absence, by a Director delegated for this purpose by the Board. Lacking this, the meeting itself elects its Chairperson.

The two shareholders, who are present and accept the task, representing both for themselves, as well as proxies, the largest number of votes, fulfill the offices of scrutineers.

The panel, thus incorporated, designates a Secretary who can be selected from outside of the members of the meeting.

An attendance sheet is kept in conformity of the current regulation.

The general meetings deliberate according to conditions of quorum and majority provided for by law.

The deliberations of the general meeting are confirmed by minutes recorded in a special register and signed by the members making up the panel. The copies of excerpts of these minutes are validly certified pursuant to conditions set forth by law.

The deliberations of the general meetings bind all shareholders, even those who are absent, dissenting or incompetent.

<u>Article 30 – Quorum – Voting – Number of Votes</u>

The shareholders who participate in the meeting by videoconference, or by means of telecommunication that allows for them to be identified, and for which the type and the conditions of application are determined by the current regulations, are deemed to be present for the determination of the quorum and majority.

In ordinary and extraordinary general meetings, the quorum is calculated over the entirety of the shares making up the share capital, after having deducted the shares without voting rights by virtue of the provisions provided by the law.

The general meetings are called and deliberate according to the conditions provided for by law.

In the event of voting by mail, only forms received by the company before the meeting is held shall be taken into consideration for calculation of quorum, within the terms and conditions set by law.

A voting right is attached to each share.

Article 31 – Right of Communication to Shareholders

All shareholders are entitled to receive all the information necessary for them to take an informed decision relating to the management and audit of the company, pursuant to the conditions and timing set forth by the law.

The type of these documents and the circumstances of their dispatch and provision are determined by the law and regulations.

**Title VI**

**Corporate Fiscal Year – Company Accounts –
Allocation and Distribution of Profits**

Article 32 – Corporate Fiscal Year

The corporate fiscal year has a term of twelve months, which starts on January 1 and finishes on December 31.

Article 33 – Inventory – Annual Accounts – Balance Sheet

A regular accounting of the company operations is kept, in conformity with the law and usual business practice.

Upon closing of each fiscal year, the Board of Directors drafts the inventory of the various elements of the assets and of the liabilities. It likewise drafts the annual accounts, in conformity with legal provisions.

It appends a statement of surety bonds, endorsements and guarantees given by the company, as well as a statement of sureties granted by it to the balance sheet.

It drafts a management report regarding the situation of the company and its business over the course of the past fiscal year, and all other information required by the current law and regulations.

All these documents are made available to the Board of Directors and or to the Statutory Auditor(s), and, as the case may be, to the works council, pursuant to the legal and regulatory conditions.

Article 34 – Allocation and Distribution of Profits

From the profit for the fiscal year, less losses from earlier years, if any, five percent is drawn to constitute a legal reserve fund; this drawing ceases to be obligatory when the reserve fund has reached a sum equal to one tenth of the share capital, and once again becomes effective, when for any reason whatsoever, the legal reserve falls below this fraction.

If the financial statements for the financial year, as approved by the general meeting, show a distributable profit as defined by the law, the general meeting decides whether to transfer it to one or several reserve headings, over which it governs the allocation or use, to carry it forward or to distribute it.

The general meeting approving the accounts of the fiscal year has the option of granting to every shareholder, for all or part of the dividend distributed, the choice between the payment in cash or in shares, and of authorizing the management board, in the event of decision by the same of payment of advances on dividends, to proceed with the payment of said advances, in shares of the company.

After having confirmed the existence of reserves over which it has access, the general meeting may decide on the payout of the amounts deducted from said reserves. In this case, the decisions expressly indicate the reserve items upon which the deductions will be made.

However, dividends are drawn in priority from the distributable profits of the fiscal year.

Dividends must be paid no later than nine months after the close of the fiscal year, unless an extension is granted by a court order.

**Title VII**

**Dissolution – Winding Up**

Article 35 – Own Capital Lesser than the Half of the Share Capital

If, due to losses recorded in the financial documents, the Company's own capital falls below half the amount of the share capital, the Board of Directors is required, within the four months following the approval of the accounts which brought the losses to light, to call an extraordinary general meeting for the purpose of deciding, if needed, the early dissolution of the company.

If this extraordinary general meeting decides against winding up the company, the own capital must be restored to an amount equal to half of the share capital within legal deadlines.

Article 36 – Dissolution – Winding Up

The dissolution of the company occurs upon expiration of the time period set forth by the Articles of Association or following a decision of the extraordinary general meeting of the shareholders.

One or more Liquidators are then appointed by said extraordinary general meeting according to the conditions of quorum and of majority provided for ordinary general meetings.

The Liquidator represents the company. All company assets are realized, and the liabilities are settled by the Liquidator who is vested with the most extensive powers. It then distributes the available balance.
The general meeting of the shareholders can authorize them to continue the business underway or to take on new business for the needs of the winding up.

The remaining net assets following reimbursement of the nominal value of the shares is equally distributed between all the shares.

In the event of consolidation of all the shares under one sole shareholder, the possible decision of dissolution – this whether voluntary or judicial – brings about, according to the conditions provided for by law, the transfer of the company assets to the sole shareholder, without there being any winding up.

**Title VIII**

**Disputes**

Article 37 – All Disputes

All disputes that might arise during the term of the company or after its dissolution during the course of the winding up operations, either between the shareholders and the company, or between the shareholders themselves, as regards the company business or the execution of the statutory provisions, will be judged in conformity with the law and submitted to the courts of competent jurisdiction.

Article 38 – Liability Claims

No decision of the general meeting may obviate or extinguish liability claim against the Board of Directors or one or a plurality of the members of the Board of Directors.

The liability claim against the members of the Board of Directors, whether as a company or individually, shall be time barred after three years running from the damaging event, or, if it is hidden, from when it was revealed. However, in the event in which the event qualifies as a crime, the claim is time barred after ten years.

**Morningside Translations**

# TRANSLATION CERTIFICATION

Date: January 21, 2020

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- French (France)

To:

- English (USA)

The documents are designated as:
- CACEIS Bank - Articles of association - 29-09-2006_English

Jay Bragg, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of Jay Bragg