# Exhibit 4

42816

# In the Royal Court of Jersey

## In the year one thousand nine hundred and eighty nine

the third day of January

Before the Judicial Greffier

**Limited Liability Companies**

On the application of the persons whose names appear on the subscribers' page to the Memorandum annexed hereto such persons being the founder members of a limited liability company named

### SBC JERSEY NOMINEES LIMITED

the Court has ordered the registration in the Register of Limited Liability Companies of the Memorandum and Articles of Association of the said company; the applicants having complied with the enactments in force in this Island relating to limited liability companies and the control of borrowing.

Of which Memorandum and Articles the tenor follows:—

C5/85.

## COMPANIES (JERSEY) LAWS, 1861 to 1968.

RC    42816

**WE**   MALCOLM LESLIE SINEL
\*   MICHAEL CAMERON ST JOHN BIRT
JULIAN ANHTHONY CLYDE-SMITH

the founder members of the limited liability company named

SBC JERSEY NOMINEES LIMITED

whose names appear on the subscribers page to the Memorandum of Association of the said company, hereby request the learned Court to order the registration of the Memorandum and Articles of Association of the said Company in the Register of limited liability companies of this Island in accordance with the Companies (Jersey) Laws, 1861 to 1968, and state that application is currently being made to the Finance and Economics Committee of the States of Jersey to grant the permission required under the Control of Borrowing (Jersey) Order, 1958, as amended.

Dated the    30th    day of    December 19 88

Office submitting application

OLEC TRUSTEE LIMITED

NOMINAL CAPITAL.......£10,000

Signatures . . . . . . . . . . . . . . .

ADVOCATE

. . . . . . . . . . . . . . . . . . . . . . . . . .

COMMERCIAL RELATIONS
3 0 DEC 1988
RECEIVED

. . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . .

**Notes:**   **1.**   The full names of the founder members may be inserted after\* if desired.

**2.**   Married women should describe themselves by their maiden names followed by "wife of........" and their husband's full names on both the subscribers page and this form when it includes the subscribers names.

**3.**   This form must be signed either by all the founder members or by an Advocate or Solicitor of the Royal Court of Jersey.

C3/88

THE JERSEY LIMITED LIABILITY COMPANIES LAWS, 1861 to 1968

COMPANY LIMITED BY SHARES

MEMORANDUM OF ASSOCIATION

of

SBC JERSEY NOMINEES LIMITED   ✓

1.  The name of the Company is SBC JERSEY NOMINEES LIMITED·   ✓

2.  The Registered Office of the Company will be situated in Jersey.  ✓

3.  The objects for which the Company is established are:-

    (1)  To act as nominee or agent or attorney either solely or
         jointly with others for any person or persons, company,
         corporation, government, state or province or for any
         municipal or other authority or public body.

    (2)  To hold in trust, and whether solely or jointly with others
         as trustee for or nominee of any person or persons, company
         corporation, government, state or province, or any municipal
         or other authority or public body and deal with, manage and
         turn to account, any real or personal property of any kind,
         and in particular shares, stocks, debentures, securities,
         policies, book debts, claims, and choses in action, lands,
         buildings, hereditaments, business concerns and undertakings,
         mortgages, charges, annuities, patents, licences, and any
         interest in real or personal property and any claims against
         such property or against any person or company or corporation.

    (3)  To receive from any person or corporate body money, securities,
         bullion or property on deposit or for safe custody or manage-
         ment and to act as attorneys, brokers, and agents.

    (4)  To act as trustee or manager of, or as depositary for, any
         unit or other trust, or issue of certificates or instruments
         evidencing the right or title of any person, partnership,
         body of persons or corporation, or the bearer of any such
         securities or instruments, to a proportionate share or
         interest in any such shares, stocks, debentures, debenture
         stock, bonds, loans, obligations or securities or any
         property, right or interest therein and to act as agent
         for the sale of any such certificates or instruments.

    (5)  To acquire by purchase or otherwise and to hold for investment
         or for the purpose of obtaining control of any Company con-
         cerned bonds, obligations, certificates of deposit, treasury
         bills, trade bills, bank acceptances, bills of exchange, shares,
         stocks, debentures, debenture stock and securities of all
         kinds created, issued or guaranteed by any Government,

Sovereign Ruler, commissioners, public body or authority, supreme, municipal, local or otherwise, in any part of the world, or by any company, bank association or partnership, whether with limited or unlimited liability, constituted or carrying on business in any part of the world, units of or participations in any unit trust scheme, mutual fund or collective investment scheme in any part of the world, policies of assurance and any rights and interests to or in any of the foregoing, and from time to time to sell, deal in, exchange, vary or dispose of any of the foregoing.

(6) To acquire any such bonds, obligations, certificates of deposit, treasury bills, trade bills, bank acceptances, bills of exchange, shares, stocks, debebtures, debenture stock, securities, units, participations, policies of assur-ance, rights or interests aforesaid by original subscription, tender, purchase, exchange or otherwise, and to subscribe for the same either conditionally or otherwise, to enter into underwriting and similar contracts with respect thereto and to exercise and enforce all rights and powers conferred by or incidental to the ownership thereof.

(7) To acquire (by way of investment or otherwise) by purchase, lease, exchange, hire or otherwise lands and real or personal property of any kind or of any tenure or any interest in the same; to erect and construct houses, buildings or works of every description of any land of the Company, or upon any other lands or property, and to pull down, rebuild, enlarge, alter and improve existing houses, buildings or works thereon and generally to manage, deal with and improve the property of the Company; and to sell, lease, let, mortgage or other-wise dispose of the lands, houses, buildings, and other property of the Company.

(8) To purchase, construct, maintain, improve, develop, work, control and manage any buildings, flats, apartments, hotels, clubs, restaurants, launderettes, baths, places of amusement, pleasure grounds, parks, gardens, stores, shops, dairies, reservoirs, roads, electric power, heat and light supply work, and other works and conveniences which the Company may think directly or indirectly conducive to these objects, and to contribute or otherwise assist or take part in the con-struction, maintenance, development working control and management thereof.

(9) To purchase for investment, commodities and rights and options in commodities of all kinds and to invest in commodity funds.

(10) To carry on all or any of the following businesses, namely: builders and contractors, decorators, merchants and dealers in stone, sand, lime, bricks, timber, hardware and other building requisites, brick and tile and terra-cotta makers, jobmasters, carriers, licensed victuallers and house agents.

(11) To carry on the business of and to act as merchants, traders, commission agents, ship owners and carriers, wholesalers, retailers, repairers and dealers and to manufacture, alter, improve, import, export, buy, sell, barter, exchange, pledge, make advances upon or otherwise deal in all kinds of plant,

machinery, apparatus, tools, vehicles, substances, materials,
goods, produce, chattels, articles, merchandise and other
personal property of any description whatsoever.

(12) To borrow or raise or secure the payment of money in any
manner and to issue debentures, debenture stock, bonds,
obligations and securities of all kinds, and to constitute
and secure the same as may seem expedient, with full power
to make the same transferable by delivery or by instrument
of transfer or otherwise, and either perpetual or terminable,
and either redeemable or otherwise, and to charge or secure
the same by trust, deed or otherwise, on the undertaking of
the Company, or upon any specific property and rights present
and future of the Company (including, if thought fit, uncalled
capital), or otherwise howsoever.

(13) To advance and lend money or assets of all kinds upon such
terms as may be arranged and upon such security (if any) as
may be thought fit.

(14) To facilitate and encourage the creation, issue or conversion
of debentures, debenture stock, bonds, obligations, shares,
stock and securities, and to act as agents in connection with
any such securities, and to take part in the conversion of
business concerns and undertakings into companies.

(15) To take part in the management, supervision and control of
the business or operations of any company, person, trust fund
or undertaking, and for that purpose to appoint and remunerate
any directors, trustees, accountants or other experts or
agents.

(16) To undertake and carry on the office or offices and duties of
trustee, custodian trustee, executor, administrator, director,
liquidator, receiver, attorney or nominee of or for any per-
son, company, corporation, association, scheme, trust fund,
charitable institution, government, state, municipal or
other body politic or corporate.

(17) To undertake the office of secretary, receiver, treasurer,
registrar, manager, advisor or auditor of any company or
government authority or body whatsoever and to procure the
registration of companies, mortgages, debenture stock or
securities.

(18) To act as advisors or consultants to any person, company or
body whatsoever on any matter relating to their financial,
taxation, investment or commercial affairs, and to manage the
funds and resources of any person, company or body.

(19) To take or otherwise acquire and hold shares and securities
in any other company having objects altogether or in part
similar to those of this Company, or carrying on any business
capable in the opinion of the directors of being conducted
so as directly or indirectly to benefit this Company, and
to sell, hold, re-issue, with or without guarantee, or other-
wise deal with or dispose of such shares or securities.

(20)   To employ experts to investigate and examine into the con-
dition, prospects, value, character and circumstances of
any business concerns and undertakings, and generally of
any assets, property or rights.

(21)   To carry on business as proprietors or managers of hotels,
restaurants, cafes, shops, taverns, beerhouses, wine bars,
launderettes, farms, dairies, livery stables, clubs, baths,
dressing rooms, reading, writing and newspaper rooms,
libraries, and grounds and places of amusement and recreation
generally, and to act as licensed victuallers, wine beer and
spirit.merchants, brewers, maltsters, distillers, importers,
and manufacturers of aerated mineral and artificial waters
and drinks, purveyors, ice merchants, importers and brokers
of live and dead stock, food and produce of all descriptions,
bakers, confectioners, hairdressers, perfumers, chemists,
tobacco and cigar manufacturers, importers and merchants,
and to carry on any other business which, in the opinion of
the directors, may conveniently be carried on in connection
therewith.

(22)   To carry on the business of builders, garage proprietors,
taxi-cab, omnibus, cab and other public or private conveyance
proprietors, omnibus, coach, motor, carriage or other vehicle
manufacturers, dealers and repairers, dealers in motor acces-
sories of all kinds, motor and mechanical engineers, horse
breeders and dealers, graziers, dealers in corn, straw and
fodder of all kinds.

(23)   To carry on the business of tourist agents and contractors,
and to facilitate travelling, and to provide for tourists and
travellers, or promote the provision of conveniences of all
kinds in the way of package tours, through tickets, circular
tickets, sleeping cars or berths, reserved places, hotel
and lodging accommodation, guides, safe deposits, enquiry
bureaus, libraries, lavatories, reading rooms, baggage trans-
port and otherwise.

(24)   To purchase, charter, hire, build or otherwise acquire ships,
aircraft and vessels of all kinds, with all equipment and
furniture, and to employ the same for such purposes as may
be thought fit and to charter and let out on hire ships, air-
craft and vessels.

(25)   To establish or promote companies and associations for any
purpose whatsoever, to assist on financial operations of all
kinds and to acquire, underwrite and dispose of shares and
interests in such companies or associations.

(26)   To transact or carry on all kinds of agency business.

(27)   To give any guarantee in relation to the pyament of any
debentures, debenture stock, bonds, obligations or securities,
and to guarantee the payment of interest thereon, or of
dividends on any stock or shares of any company, and to
guarantee the payment or repayment of monies by any person,
company, body or undertaking and to give indemnities of any
description.

(28)  To carry on the business of financiers for the promotion of
      the sale for cash, or on credit or on the instalment plan,
      hire purchase, hire agreement or easy payment or otherwise
      of any articles, commodities, services, vehicles, plant,
      machinery, apparatus, goods, things and merchandise of
      every kind and description.

(29)  To acquire and undertake the whole or any part of the busi-
      ness, property and liabilities of any person, company or
      other body carrying on any business which the Company is
      authorised to carry on or which may in the opinion of the
      directors be capable of being conveniently carried on in
      connection with any of the objects of the Company or cal-
      culated directly or indirectly to benefit this Company.

(30)  To apply for, purchase or otherwise acquire any patents,
      brevets d'invention, licences, concessions and the like,
      conferring any exclusive or non-exclusive or limited rights
      to use, or conferring any secret or other information as to
      any invention or process which may seem capable of being
      used for any of the purposes of the Company, or the acquisi-
      tion of which may seem calculated directly or indirectly
      to benefit the Company, and to use, exercise, develop or
      grant licences in respect of or otherwise to turn to account
      the property, rights or information so acquired.

(31)  To enter into partnership or into any arrangement for
      sharing profits, union of interests, co-operation, joint
      venture, reciprocal concession, or otherwise, with any
      person, company or other body carrying on or engaged in,
      or about to carry on or engage in any business or transac-
      tion which this Company is authorised to carry on or engage
      in, or any business or transaction capable of being con-
      ducted so as directly or indirectly to benefit this
      Company.

(32)  To establish and support or aid in the establishment and
      support of associations, institutions, funds, trusts and
      conveniences calculated to benefit employees or ex-employees
      of the Company (or its predecessors in business) or the
      dependants or connections of such persons, and to grant pen-
      sions and allowances, and to make payments towards insurance,
      and to subscribe or guarantee money for charitable or bene-
      volent objects, or for any exhibition, or for any public,
      general or useful object.

(33)  To purchase or otherwise acquire, and to sell, exchange,
      surrender, lease, mortgage, charge, convert, turn to
      account, dispose of and deal with property and rights of
      all kinds and, in particular, mortgages, debentures, con-
      cessions, options, contracts, patents, annuities, licences,
      stocks, shares, bonds, policies, book debts, business con-
      cerns and undertakings and claims, privileges and choses
      in action of all kinds.

(34)  To remunerate any person, company or other body for services
      rendered, or to be rendered, in placing or assisting to
      place or guaranteeing the placing of any of the shares in
      the Company's capital, or any debentures, debenture stock
      or other securities of the Company, or in or about the
      formation or promotion of the Company, or the conduct of
      its business.

(35)   To create, make, draw, accept, endorse, execute, issue,
discount, buy, sell and negotiate bills of exchange, pro-
missory notes, bills of lading, warrants, coupons, deben-
tures and other negotaible or transferable instruments and
to issue stock and warehouse warrants.

(36)   To do all or any of the things set out herein in any part of
the world and either as principals agents or otherwise and
either alone or in conjunction with others or by means of
any subsidiary or other Company and to enter into any agree-
ment with any such subsidiary for taking the profits and
bearing the losses of any business so carried on or for
financing any such subsidiary or guaranteeing its liabilities
or to make any other arrangements which may seem desirable
with reference to any business so carried on including
power at any time and either temporarily or permanently
to close any such business.

(37)   To sell, improve, manage, develop, exchange, lease, mortgage,
enfranchise, dispose of, turn to account, or otherwise deal
with all or any part of the property and rights of the Company.

(38)   To promote any other company for the purposes of acquiring all
or any of the property and/or undertaking the liabilities of
this Company or of undertaking any business or operations
which may appear likely to assist or benefit the Company or
to enhance the value of any property or business of the
Company and to place or guarantee the placing of, under-
write, subscribe for or otherwise acquire all or any part
of the shares, stocks, debentures, bonds or other securities
of any such company as aforesaid.

(39)   To pay for any property or rights acquired by the Company
either in cash or by the issue of fully or partially paid
up shares or debentures of the Company.

(40)   To adopt such means as may be to make known all the businesses
or any of them or the products of the Company as may seem
expedient, and in particular by advertising in the press, by
circulars, by purchase and exhibition of works of art or
interest, by publication in books and periodicals, and by
granting prizes rewards and donations, and to carry on and
conduct prize and competition schemes or any scheme or arrange-
ment of any kinds, either alone or in conjunction with any
other person, firm or company, whereby the above businesses
or any of them may be promoted or developed or whereby the
Company's services or products may be more extensively adver-
tised and make known.

(41)   Upon a distribution of assets or division of profits, to dis-
tribute the property, shares, stocks, debentures, debenture
stock, bonds, obligations or securities among the Members of
this Company in kind.

(42)   To procure the Company to be registered or recognised in any
part of the world outside the Island of Jersey.

(43)   To pay out of the funds of the Company all expenses which the
Company may lawfully pay for or incidental to the formation
and registration of or the raising of money for the Company
or the issue of its capital including brokerage and commission

for obtaining applications for or taking, placing or under-
writing or procuring the underwriting of shares, stocks,
debentures, bonds or other securities of the Company.

(44)    To do all such other things as the Company may decide are
incidental or conducive to the attainment of the objects
above specified.

AND IT IS HEREBY DECLARED THAT:-

(i)    The word "company" in this clause, except where used in re-
ference to this Company, shall be deemed to include any
partnership, firm or other body of persons, whether corporate
or unincorporate and wherever domiciled.

(ii)    The word "debenture" in this clause includes debenture stock.

(iii)    The objects specified in each of the paragraphs of this
clause shall be regarded as independent objects, and accor-
dingly shall be in no wise limited or restricted (except
where otherwise expressed in such paragraphs) by reference
to or inference from the terms of any other paragraph, or
the name of the Company but may be carried out in as full
and complete a manner and construed in as wide a sense as
if each of the said paragraphs defined the objects of a
separate and distinct Company.

4.    The Capital of the Company is £10,000 divided into 10,000 Shares of £1
each payable on allotment, or as may be called up by the Directors from
time to time, and with powers to increase the Capital according to law,
and to divide the Shares in the Capital for the time being into several
classes, and to attach thereto respectively such preferential, deferred
or special rights, privileges, or conditions as may be determined by
or in accordance with the regulations of the Company.

5.    Any Shares in the Capital of the Company may be allotted and issued in
payment or part payment of any purchase whatsoever by the Company.  In
the event of the Shares of the Company being issued for cash, the
amount shall be payable in full on allotment, unless the Company by
Resolution in General Meeting, or the Directors of the Company (subject
always to any prior resolution of a General Meeting) shall have decided
to accept payment by instalments or calls, whereupon payment shall be
made in accordance with such resolutions, and in accordance with the
provisions of the Articles of Association.

6.    The non-payment of a call on the day appointed for payment thereof shall
render the Shares in respect of which the call was made liable to be
forfeited.

7.    The liability of each Shareholder is limited to the amount for the time
being unpaid on each Share held by him.

8.    The Company shall exist until dissolved by Special Resolution or otherwise
according to Law.

9.    The corporate signature of the Company is SBC JERSEY NOMINEES LIMITED

We, the several persons whose names and addresses are hereunto subscribed, are desirous of being formed into a Company in pursuance of the above Memorandum and Articles of Association, and we respectively agree to take the number of Shares in the capital of the Company noted opposite our respective names.

| Name and address of Subscriber | Nos. of Shares taken | Signatures |
|---|---|---|
| **MALCOLM LESLIE SINEL** P.O. BOX 404, PIROUET HOUSE, UNION STREET, ST. HELIER, JERSEY. | 4 | |
| **MICHAEL CAMERON ST. JOHN BIRT** P.O. BOX 404, PIROUET HOUSE, UNION STREET, ST. HELIER, JERSEY | 4 | |
| **JULIAN ANTHONY CLYDE-SMITH** P.O. BOX 404, PIROUET HOUSE, UNION STREET, ST. HELIER, JERSEY. | 4 | |

DATED  this   30th        day  of    DECEMBER        1988

Witness to the above signatures :
Address :-   OGIER & LE CORNU,
             P.O. Box 404,
             Pirouet House,
             Union Street,
             St. Helier,
             Jersey.

## INDEX TO ARTICLES OF ASSOCIATION

| | Page |
|---|---|
| Accounts | 20. |
| Alteration of Share Capital | 3. |
| Alternate Directors | 15. |
| Appointment and Removal of Directors | 14. |
| Audit | 20. |
| Business | 2. |
| Calls on Shares | 5. |
| Capitalisation | 19. |
| Certificates | 4. |
| Corporations acting by Representatives | 12. |
| Definitions | 1. |
| Directors | 12. |
| Directors, alternate | 15. |
| Directors, appointment of | 14. |
| Directors, interests of | 12. |
| Directors, powers of | 14. |
| Directors, proceedings of | 15. |
| Directors, removal of | 14. |
| Dividends | 18. |
| Forfeiture of Shares | 6. |
| General Meeting | 8. |
| Indemnity | 22. |
| Interests of Directors | 12. |
| Lien | 4. |
| Managing Director | 14. |
| Members, votes of | 11. |
| Modification of Rights | 3. |
| Notice of General Meetings | 8. |
| Notices | 21. |
| Personal Estate, representatives for | 23. |
| Powers of Directors | 14. |
| Preliminary | 1. |
| Proceedings of Directors | 15. |
| Proceedings at General Meetings | 9. |
| Real Estate, representatives for | 23. |
| Removal and appointment of Directors | 14. |
| Representatives, Corporations acting by | 12. |
| Representatives for Real and Personal Estate | 23. |
| Reserves | 19. |
| Rights, modification of | 3. |
| Secretary | 17. |
| Shares | 4. |
| Shares, calls on | 5. |
| Shares, forfeiture of | 6. |
| Shares, transfer and transmission of | 7. |
| Share Capital | 2. |
| Share Capital, alteration of | 3. |
| The Seal | 17. |
| Transfer and Transmission of Shares | 7. |
| Votes of Members | 11. |
| Winding Up | 22. |

THE COMPANIES (JERSEY) LAWS, 1861 to 1968

COMPANY LIMITED BY SHARES

ARTICLES OF ASSOCIATION

of

SBC JERSEY NOMINEES LIMITED

PRELIMINARY

1.   In these Articles, if not inconsistent with the subject or context the words standing in the first column of the table next hereinafter contained shall bear the meaning set opposite to them respectively in the second column thereof:-

| Words | Meanings |
|---|---|
| The Articles | These Articles of Association as from time to time altered by Special Resolution. |
| Bankruptcy | Shall have the meaning assigned to it by Article 13 of the Interpretation (Jersey) Law 1954 and shall in addition mean any declaration or adjudication of bankruptcy or insolvency or their equivalent in any part of the world. |
| Board | A Meeting of the Directors duly constituted. |
| Clear Days | Shall be exclusive of the day on which any notice is served or deemed to be served and of the day on which the relevant meeting is to be held. |
| The Company | The Company established under the Memorandum of Association to which these Articles refer. |
| Debenture | Debenture and/or debenture stock. |
| Dividend | Dividend and/or bonus. |
| General Meeting | An Ordinary or an Extraordinary Meeting. |
| The Island | The Island of Jersey |
| The Law | The Companies (Jersey) Laws, 1861 - 1968 and every statutory modification or re-enactment thereof for the time being in force. |

1

| | |
|---|---|
| Month | Calendar month. |
| Office | The Registered Office for the time being of the Company. |
| Paid Up | Paid up and/or credited as paid up. |
| The Register | The Register of Members as required to be kept by Article 14 of the Law. |
| Seal | The Common Seal of the Company. |
| Secretary | Any person appointed by the Directors to perform any of the duties of the Secretary of the Company. |
| Special Resolution | A Special Resolution of the Company passed in accordance with Article 27 of the Law. |
| The United Kingdom | Great Britain and Northern Ireland. |
| Writing | Shall include printing, lithography, photography and other modes of representing or reproducing words in visible form. |

If not inconsistent with the subject matter or context, words importing the singular number include the plural and vice versa and words importing the masculine gender include the feminine gender, and words importing individuals shall include corporations.

2. Unless the context otherwise requires words or expressions contained in these Articles shall bear the same meanings as in the Law or any statutory modification thereof in force at the date at which the Articles become binding on the Company.

## BUSINESS

3. Any branch or kind of business which by the Memorandum of Association of the Company or these Articles is either expressly or by implication authorised to be undertaken by the Company, may be undertaken by the Directors at such time or times as they shall think fit, and further may be suffered by them to be in abeyance, whether such branch or kind of business may have been actually commenced or not, so long as the Directors may deem it expedient not to commence or proceed with such branch or kind of business.

## SHARE CAPITAL

4. The Share Capital of the Company as at the date of registration of these Articles is £10,000    divided into    10,000    Shares of £1.00    each.

5. Without prejudice to any special rights for the time being conferred on the holders of any shares or class of shares (which special rights shall not be varied or abrogated except with such consent or sanction as is provided by the next following Article) any share in the Company may be issued with such preferred deferred or other special rights or such restrictions, whether in regard to dividend,

2

return of capital, voting or otherwise as the Company may from time to time by ordinary resolution determine.

## ALTERATION OF SHARE CAPITAL

6.   The Company may from time to time by special resolution:-

(a)   whether all the shares for the time being created shall have been issued or not or whether all the shares for the time being issued shall have been fully called up or not increase its capital by such sum to be divided into shares of such amount as the resolution shall prescribe.  The new shares shall be issued upon such terms and conditions as the resolution creating the same may direct, and if no direction be given as the Directors shall determine.  The new shares shall be subject to the same provisions with reference to the payment of calls, lien, transfer, transmission, forfeiture and otherwise as the shares in the original share capital;

(b)   consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(c)   sub-divide its existing shares or any of them into shares of smaller amount than that fixed by its memorandum, so, however, that in the sub-division the proportion between the amount paid and the amount, if any, unpaid on each reduced share shall be the same as it was in the case of the share from which the reduced share is derived;

(d)   cancel any shares which, at the date of the passing of the special resolution in that behalf, have not been taken, or agreed to be taken, by any person and diminish the amount of its share capital by the amount of the shares so cancelled;

(e)   reduce its share capital, any capital redemption reserve fund or any share premium account in any manner and with and subject to any incident authorised and consent required by law.

7.   The Company may from time to time subject to the provisions of the Law:-

(a)   issue preference shares which are or at the option of the Company are to be liable to be redeemed;

(b)   convert the whole or any particular class of its preference shares into redeemable preference shares.

## MODIFICATION OF RIGHTS

8.   Whenever the Capital of the Company is divided into different classes of shares the special rights attached to any class may (unless otherwise provided by the terms of issue of the shares of that class) be varied or abrogated, either whilst the Company is a going concern or during or in contemplation of a winding-up, with the consent in writing of the holders of two-thirds of the issued shares of the class, or with the sanction of a Special Resolution passed at a separate meeting of the holders of the shares of the class, but not

otherwise. To every such separate meeting all the provisions of these Articles relating to General Meetings of the Company or to the proceedings thereat shall, mutatis mutandis, apply except that the necessary quorum shall be two persons at least holding or representing by proxy one-third in nominal amount of the issued shares of the class (but so that if at any adjourned meeting of such holders a quorum as above defined is not present, those members who are present shall be a quorum).

9.   The special rights conferred upon the holders of any shares or class of shares issued with preferred, deferred or other special rights shall (unless otherwise expressly provided by the conditions of issue of such shares) be deemed not to be varied by the creation or issue of further shares ranking pari passu therewith.

## SHARES

10.   Subject to the provisions of these Articles the unissued shares shall be at the disposal of the Directors, and they may allot, grant options over or otherwise dispose of them to such persons, at such times and generally on such terms and conditions as they think proper.

11.   No person shall be recognised by the Company as holding any share upon any trust, and the Company shall not be bound by or recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any share or in any fractional part of a share, or (except only as these Articles otherwise provide or as by Law required) any other right in respect of any share, except an absolute right to the entirety thereof in the registered holder.

## CERTIFICATES

12.   Every person whose name is entered as a member in the Register shall be entitled without payment to one certificate under the Seal for all his shares of each class specifying the share or shares held by him and the amount paid up thereon provided that the Company shall not be bound to register more than four persons as the joint holders of any share (except in the case of executors or trustees of a deceased member) and in the case of a share held jointly by several persons, the Company shall not be bound to issue more than one certificate therefor, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all.

13.   Where a member transfers part only of his holding of shares of a class he shall be entitled without payment to a balance certificate for the shares of that class retained by him.

14.   If a share certificate be defaced, lost or destroyed, it may be renewed on payment of such fee (if any) and on such terms (if any) as to evidence and indemnity as the Directors think fit. In case of loss or destruction, the members to whom such renewed certificate is given shall also bear and pay to the Company all expenses incidental to the investigation by the Company of the evidence of such loss or destruction and to such indemnity.

## LIEN

15.   The Company shall have a first and paramount lien on all the shares

4

(not being fully paid shares) registered in the name of a Member (whether solely or jointly with others) for his debts, liabilities and engagements, either alone or jointly with any other person, whether a Member or not, to or with the Company, whether the period for the payment or discharge thereof shall have actually arrived or not. Such lien shall extend to all dividends from time to time declared in respect of such shares.

16. For the purpose of enforcing such lien the Company may sell, in such manner as the Directors think fit, any shares on which the Company has a lien, but no sale shall be made unless some sum in respect of which the lien exists is presently payable, nor until the expiration of fourteen days after a notice in writing, stating and demanding payment of the sum presently payable, and giving notice of intention to sell in default, shall have been served on the holder for the time being of the shares or the person entitled by reason of his death or bankruptcy to the shares. For the purpose of giving effect to any such sale the Directors may authorise some person to transfer to the purchaser thereof the shares so sold.

17. The net proceeds of such sale, after payment of the costs of such sale, shall be applied in or towards payment or satisfaction of the debt or liability in respect whereof the lien exists, so far as the same is presently payable, and any residue shall (subject to a like lien for debts or liabilities not presently payable as existed upon the shares prior to the sale) be paid to the person entitled to the shares at the time of the sale. The purchaser shall be registered as the holder of the shares so transferred and he shall not be bound to see to the application of the purchase money, nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings in relation to the sale.

## CALLS ON SHARES

18. The Directors may from time to time make calls upon the members in respect of any moneys unpaid on their shares, whether on account of the amount of the shares or by way of premium, provided that (except as otherwise fixed by the conditions of application or allotment) no call on any share shall exceed one-fourth of the nominal amount of the share or be payable at less than fourteen days from the date fixed for the payment of the last preceding call, and each member shall, (subject to being given at least fourteen days' notice specifying the time or times and place of payment) pay to the Company at the time or times and place so specified the amount called on his share. A call may be made payable by instalments. A call may be revoked or postponed as the Directors may determine.

19. A call shall be deemed to have been made at the time when the Resolution of the Directors authorising the call was passed.

20. The joint holders of a share shall be jointly and severally liable to pay all calls and other moneys due in respect thereof.

21. If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest on the sum from the day appointed for payment thereof to the time of actual payment at such rate as the

Directors may determine, but the Directors shall be at liberty to waive payment of such interest wholly or in part.

22. Any sum which by the terms of issue of a share becomes payable upon allotment or at any fixed date, whether on account of the amount of the share or by way of premium, shall for all purposes of these Articles be deemed to be a call duly made and payable on the date on which, by the terms of issue, the same becomes payable, and in the case of non-payment all the relevant provisions of these Articles as to payment of interest, forfeiture or otherwise, shall apply as if such sum had become payable by virtue of a call duly made and notified.

23. The Directors may make arrangements on the issue of shares for a difference between the holders in the amount of calls to be paid and the time of payment.

24. The Directors may, if they think fit, receive from any member willing to advance the same all or any part of the money uncalled and unpaid upon the shares held by him beyond the sums actually called up thereon as a payment in advance of calls, and such payment in advance of calls, shall extinguish, so far as the same shall extend, the liability upon the shares in respect of which it is advanced, and upon the money so received, or so much thereof as from time to time exceeds the amount of the calls then made upon the shares in respect of which it has been received, the Company may (until the same would, but for such advances become presently payable) pay interest at such rate as the member paying such sum and the Directors agree upon. Provided that any amount paid up in advance of calls shall not entitle the holder of the shares upon which such amount is paid to participate in respect thereof in any dividend until the same would but for such advance become presently payable.

## FORFEITURE OF SHARES

25. If a member fails to pay any call or instalment of a call on the day appointed for payment thereof, the Directors may at any time thereafter, during such time as any part of such call or instalment remains unpaid, serve a notice on him requiring payment of so much of the call or instalment as is unpaid, together with any accrued interest and any costs, charges and expenses incurred by the Company by reason of such non-payment.

26. The notice shall name a further day (not earlier than fourteen days from the date of service thereof) on or before which and the place where the payment required by the notice is to be made, and shall state that, in the event of non-payment at or before the time and the place appointed, the shares on which the call was made will be liable to be forfeited.

27. If the requirements of any such notice as aforesaid are not complied with, any share in respect of which such notice has been given may at any time thereafter, before payment of all calls, instalments, interest, costs, charges and expenses due in respect thereof has been made, be forfeited by a Resolution of the Directors to that effect and such forfeiture shall include all dividends which shall have been declared on the forfeited shares and not actually paid before the

forfeiture.

28. A forfeited share shall become the property of the Company and may be sold, re-allotted or otherwise disposed of either to the person who was before forfeiture the holder thereof or entitled thereto, or to any other person, upon such terms and in such manner as the Directors shall think fit, and whether with or without all or any part of the amount previously paid up on the share or credited as so paid up and at any time before a sale, re-allotment or disposition the forfeiture may be cancelled on such terms as the Directors think fit. The Directors may, if necessary, authorise some person to transfer a forfeited share to any other person as aforesaid.

29. A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall notwithstanding the forfeiture remain liable to pay to the Company all moneys which at the date of forfeiture were presently payable by him to the Company in respect of the shares with interest thereon at such rate from the date of forfeiture until payment as the Directors may determine and the Directors may enforce payment without any allowance for the value of the shares at the time of forfeiture.

30. A record in the Minute Book of the Company that a share has been duly forfeited in pursuance of these Articles and stating the time when it was forfeited shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share adversely to the forfeiture thereof and such record and the receipt of the Company for the consideration (if any) given for the share on the sale, re-allotment or disposal thereof, together with the certificate for the share delivered to a purchaser or allottee thereof, shall constitute a good title to the share and the person to whom the share is sold, re-allotted or disposed of shall be registered as the holder of the share and shall not be bound to see to the application of the consideration (if any) nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale, re-allotment or disposal of the share.

31. The provisions of these Articles as to forfeiture shall apply in the case of non-payment of any sum, which by the terms of issue of a share, becomes payable at a fixed time, whether on account of the amount of the share, or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## TRANSFER AND TRANSMISSION OF SHARES

32. All transfers of shares shall be effected by transfer in writing in any usual common form approved by the Directors.

33. The instrument of transfer of a share shall be signed by or on behalf of the transferor. The transferor shall be deemed to remain the holder of the share until the name of the transferee is entered in the Register in respect thereof.

34. The Directors may in their absolute discretion refuse to register any transfer of any share (whether fully paid or not) provided that such refusal shall only be effective if notice thereof stating the grounds of refusal is given to the proposed transferee within one month after

the Directors shall have resolved upon such refusal.

35.  In case of the death of a Member, the survivors or survivor where the deceased was a joint holder, and the executors or administrators of the deceased where he was a sole or only surviving holder, shall be the only persons recognised by the Company as having title to his interest in the shares, but nothing in this Article shall release the estate of the deceased holder whether sole or joint from any liability in respect of any shares solely or jointly held by him.

36.  Any person becoming entitled to a share in consequence of the death, bankruptcy or incapacity of a Member shall, upon producing such evidence of his title as the Directors may require, have the right either to be registered himself as the holder of the share or to make such transfer thereof as the deceased, bankrupt or incapacitated Member could have made, but the Directors shall in either case have the same right to refuse or suspend registration as they would have had in the case of a transfer of the share by the deceased, bankrupt or incapacitated Member before the death, bankruptcy or incapacity.


## GENERAL MEETING

37.  The Company shall in each year hold a General Meeting in the Island as its Annual General Meeting at such time and place as may be determined by the Directors.  The first Annual General Meeting of the Company shall be held within eighteen months from the date of registration of the Company.

38.  All General Meetings, other than Annual General Meetings, shall be called Extraordinary General Meetings.

39.  The Directors may, whenever they think fit, convene an Extraordinary General Meeting and Extraordinary General Meetings shall also be convened on the requisition in writing dated and signed by not less than two members holding in the aggregate not less than one-tenth in amount of the issued capital of the Company. If at any time there are not within the Island sufficient Directors capable of acting to form a quorum, any Director or any member of the Company may convene an Extraordinary General Meeting in the same manner as nearly as possible as that in which meetings may be convened by the Directors.

### NOTICE OF GENERAL MEETINGS

40.  Ten days' notice at least of any General Meeting (exclusive of the day on which the notice is deemed to be served and the day for which notice is given) specifying the place, the day and the hour of the meeting and, in case of special business the general nature of that business, shall be given in manner hereinafter mentioned or in such other manner (if any) as may be prescribed by the Company in General Meeting to such persons as are, under the regulations of the Company, entitled to receive such notices from the Company. Whenever it is intended to pass a special resolution, the two meetings may be convened by one and the same notice, and it shall be no objection that the notice convenes the second meeting

8

contingently on the resolution being passed by the requisite majority at the first meeting. With the consent of all the members for the time being entitled to be present and to vote thereat a General Meeting may be convened on a shorter notice than ten days.

41.  In every notice calling a meeting of the Company or of any class of members of the Company there shall appear with reasonable prominence, a statement that a member entitled to attend and vote is entitled to appoint one or more proxies to attend and vote instead of him and that a proxy need not also be a member.

42.  The accidental omission to give notice to or the non-receipt of notice by, any person entitled to receive notice, shall not invalidate the proceedings at any General Meeting.

## PROCEEDINGS AT GENERAL MEETINGS

43.  All business shall be deemed special that is transacted at an Extraordinary General Meeting, and also all business that is transacted at an Annual General Meeting, with the exception of declaring dividends, the consideration of the accounts and balance sheet and the reports of the Directors and Auditors, the election of Directors and Auditors, and the fixing of the remuneration of Directors.

44.  No business shall be transacted at any General Meeting unless a quorum is present. Save as is in these Articles otherwise provided two members present in person or by proxy and entitled to vote shall be a quorum for all purposes.

45.  If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened on the requisition of or by members, shall be dissolved. In any other case it shall stand adjourned to the same day in the next week, at the same time and place, or to such other day and at such other time and place as the Chairman of the meeting may determine, and if at such adjourned meeting a quorum is not present within five minutes from the time appointed for the holding of the meeting, those members present in person or by proxy shall be a quorum.

46.  The Chairman (if any) of the Board of Directors or, failing him, some other Director nominated by the Directors shall preside as Chairman at every General Meeting of the Company, but if at any meeting neither the Chairman nor such other Director be present within fifteen minutes after the time appointed for holding the meeting, or if none of them be willing to act as Chairman, the Directors present shall choose some Director present to be Chairman or if no Director be present, or if all the Directors present decline to take the chair, the members present shall choose some member present to be Chairman.

47.  The Chairman may with the consent of any meeting at which a quorum is present (and shall if so directed by the meeting) adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting except business which might lawfully have been transacted at the meeting from which the adjournment took place. When a meeting is adjourned for fourteen days or more, seven clear days' notice at the

least, specifying the place, the day and the hour of the adjourned meeting, shall be given as in the case of the original meeting but it shall not be necessary to specify in such notice the nature of the business to be transacted at the adjourned meeting.  Save as aforesaid, it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting.

48.  (a)  At any General Meeting a resolution put to the vote of the meeting shall be decided on a show of hands, unless a poll is (before or on the declaration of the result of the show of hands) decided upon by the Chairman or demanded by at least two members or by any member or members representing at least one-tenth of the shares issued, present in person or by proxy and entitled to vote and unless a poll is so demanded, a declaration by the Chairman that a resolution has, on a show of hands, been carried, or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book of the proceedings of the Company shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.

(b)  A resolution in writing signed by all the members of the Company for the time being entitled to receive notice of and to attend and vote at General Meetings or their duly apppointed attorneys shall be as valid and effectual as if it had been passed at a meeting of the members duly convened and held.  Any such resolution may consist of several documents in the like form signed by one or more of the members or their attorneys and signature in the case of a corporate body which is a member shall be sufficient if made by a director thereof or its duly appointed attorney.

49.  The instrument appointing a proxy to vote at a Meeting shall be deemed also to confer authority to demand or join in demanding a poll; for the purposes of the last preceding Article a demand by a person as proxy for a member shall be the same as a demand by the member.

50.  If a poll is duly demanded, it shall be taken in such manner and at such place as the Chairman may direct (including the use of ballot or voting papers or tickets) and the result of a poll shall be deemed to be the Resolution of the meeting at which the poll was demanded. The Chairman may, in the event of a poll, appoint scrutineers and may adjourn  the meeting to some place and time fixed by him for the purpose of declaring the result of the poll.

51.  In the case of an equality of votes, whether on a show of hands or on a poll, the Chairman of the meeting at which the show of hands takes place or at which the poll is demanded shall be entitled to a second or casting vote.

52.  A poll demanded on the election of a Chairman or on a question of adjournment shall be taken forthwith.  A poll demanded on any other question shall be taken at such time and place as the Chairman directs not being more than thirty days from the date of the meeting or adjourned meeting at which the poll was demanded.

53. The demand for a poll shall not prevent the continuance of a meeting for the transaction of any business other than the question on which the poll has been demanded.

54. A demand for a poll may be withdrawn and no notice need be given of a poll not taken immediately.

## VOTES OF MEMBERS

55. Subject to any special rights, restrictions or prohibitions as to voting attached to any shares, on a show of hands every member who is present in person or by proxy shall have one vote, and on a poll every member who is present in person or by proxy shall have one vote for every share of which he is the holder.

56. In the case of joint holders, unless such joint holders shall have chosen one of their number to represent them and so notified the Company in writing, the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders and for this purpose seniority shall be determined by the order in which the names stand in the Register.

57. A member who has appointed Special and General Attorneys or a member of unsound mind in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by his Attorney, committee, receiver, curator bonis, or other person appointed by such court, and such Attorney, committee, receiver, curator bonis, or other person may on a poll vote by proxy, provided that such evidence as the Directors may require of the authority of the person claiming to vote shall have been deposited at the Office not less than forty-eight hours before the time for holding the meeting or adjourned meeting at which such person claims to vote.

58. No member shall, unless the Directors otherwise determine, be entitled to vote at any General Meeting, either personally or by proxy, or to exercise any privilege as a member unless all calls or other sums presently payable by him in respect of shares in the Company of which he is the holder or one of the joint holders have been paid.

59. No objection shall be raised to the qualification of any voter except at the meeting or adjourned meeting at which the vote objected to is given or tendered, and every vote not disallowed at such meeting shall be valid for all purposes. Any such objection made in due time shall be referred to the Chairman of the meeting, whose decision shall be final and conclusive.

60. On a poll votes may be given either personally or by proxy.

61. The instrument appointing a proxy shall be in writing under the hand of the appointor or of his attorney duly authorised in writing, or, if the appointor is a corporation, either under its common seal or under the hand of an officer or attorney so authorised.

62. Any person (whether a member of the Company or not) may be appointed to act as a proxy.

63. The instrument appointing a proxy and the power of attorney or other authority (if any) under which it is signed, or a notarially certified copy of such power or authority, shall be deposited at the Office or at such other place as is specified for that purpose in the notice of meeting or in the instrument of proxy issued by the Company before the time appointed for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote or, in the case of a poll, before the time appointed for taking the poll and in default the instrument of proxy shall not be treated as valid.

64. An instrument appointing a proxy shall be in any usual common form or in any form of which the Directors shall approve.

65. A vote given in accordance with the terms of an instrument of proxy shall be valid notwithstanding the death or insanity of the principal or the revocation of the instrument of proxy, or of the authority under which the instrument of proxy was executed, or the transfer of the share in respect of which the instrument of proxy is given, provided that no intimation in writing of such death, insanity, revocation or transfer shall have been received by the Company at the Office before the commencement of the meeting or adjourned meeting at which the instrument of proxy is used.

## CORPORATIONS ACTING BY REPRESENTATIVES

66. Any corporation which is a member of the Company may, by resolution of its Directors or other governing body, authorise such person as it thinks fit to act as its representative at any meeting of the Company or at any meeting of any class of members of the Company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual member of the Company.

## DIRECTORS

67. Unless and until otherwise determined by the Company by Ordinary Resolution, the Directors shall not be less than two.

68. A Director need not be a member of the Company.

69. The remuneration of the Directors shall from time to time be determined by the Company in general meeting, and such remuneration shall be deemed to accrue from day to day.    The Directors shall also be entitled to be paid all travelling, hotel and other expenses properly incurred by them in or with a view to the performance of their duties or in attending meetings of the Directors or of Committees of the Directors.

70. Any Director who, by request of the Board, performs special services for any purposes of the Company may be paid such other remuneration by way of salary, percentage of profits or otherwise as the Directors may determine.

## INTERESTS OF DIRECTORS

71. (a)    No Director or Managing Director shall be disqualified by his

office from contracting with the Company either as vendor, purchaser or otherwise, nor shall any such contract or any contract or arrangement entered into by or on behalf of the Company in which any Director shall be in any way interested be avoided, nor shall any Director so contracting, or being so interested, be liable to account to the Company for any profit realised by any contract or arrangement by reason of such Director holding that office, or of the fiduciary relation thereby established, but the nature of his interest must be disclosed by him at the meeting of the Directors at which the contract or arrangement is determined on, if his interest then exists, or in any other case at the first meeting of the Directors after the acquisition of his interest.  A general notice that such Director is a member of any specified firm or Company and is to be regarded as interested in all transactions with that firm or company shall be a sufficient disclosure under this Article as regards such Director and the said transactions, and after such general notice it shall not be necessary for such Director to give a special notice of any particular transaction with that firm or company.

(b)    A Director may vote in respect of any such contract or proposed contract and, if he does so vote, his vote shall be counted and he shall be capable of being counted towards the quorum at any meeting of the Directors at which any such contract or proposed contract shall come before the Directors for consideration.

(c)    A Director may hold any other office or place of profit under the Company in conjunction with his office of Director for such period and on such terms (as to remuneration and otherwise) as the Directors may determine.

(d)    Any Director may act by himself or his firm in a professional capacity for the Company and he or his firm shall be entitled to remuneration for professional services as if he were not a Director.

72.    Any Director may continue to be or become a Director or other officer or otherwise interested in any company promoted by the Company or in which the Company may be interested, and no such Director shall be accountable for any remuneration or other benefits received by him as a Director or officer or from his interest in such other company.  The Directors may exercise the voting power conferred by the shares in any other company held or owned by the Company, or exercisable by them as Directors of such other company, in such manner in all respects as they think fit (including the exercise thereof in favour of any Resolution appointing themselves or any of them Directors, or other officers of such company, or voting or providing for the payment of remuneration to the Directors, or other officers of such company) and any Director of the Company may vote in favour of the exercise of such voting rights in manner aforesaid notwithstanding that he may be or about to be appointed a Director, or other officer of such other company and as such is or may become interested in the exercise of such voting rights in manner aforesaid.

## POWERS OF DIRECTORS

73. The Business of the Company shall be managed by the Directors, who may exercise all such powers of the Company as are not by the Law or by these Articles required to be exercised by the Company in General Meeting, subject nevertheless to such regulations as may be prescribed by the Company in General Meeting, but no regulation made by the Company in General Meeting shall invalidate any prior act of the Directors which would have been valid if such regulation had not been made. The general powers given by this Article shall not be limited or restricted by any special authority or power given to the Directors by any other Article.

74. The Directors may exercise all the powers of the Company to borrow money and to mortgage or charge its undertaking, property and uncalled capital or any part thereof, and to issue debentures and other securities, whether outright or as security for any debt, liability or obligation of the Company or of any third party.

75. All cheques, promissory notes, drafts, bills of exchange and other negotiable or transferable instruments, and all receipts for moneys paid to the Company shall be signed, drawn, accepted, endorsed or otherwise executed, as the case may be, in such manner as the Directors shall from time to time by Resolution determine.

## MANAGING DIRECTOR

76. The Directors may from time to time appoint one or more of their body to the office of Managing Director or Manager or to any other office for such term and at such remuneration and upon such terms as to the duties to be performed, the powers to be exercised and all other matters as they think fit. The remuneration may be by way of salary or commission or participation in profits or otherwise, or partly in one way and partly in another, as they may think fit.

## APPOINTMENT AND REMOVAL OF DIRECTORS

77. The first Directors shall be determined in writing by the subscribers to the Memorandum of Association or the majority of them.

78. The Directors shall have power at any time, and from time to time, to appoint any person to be a Director, either to fill a casual vacancy or as an additional Director.

79. The Company may from time to time by Ordinary Resolution increase or reduce the number of Directors.

80. The Company may by Ordinary Resolution appoint any person as a Director and may remove any person from office as a Director before the expiration of his period of office.

81. The office of a Director shall be vacated in any of the following events namely:-

   (a) If (not being a Managing Director holding office as such subject to terms to the contrary in any contract between him and the Company) he resigns his office by notice in writing under his hand sent to or left at the Office.

14

(b)     If he becomes bankrupt or insolvent or makes any arrangement or composition with his creditors generally.

(c)     If he becomes of unsound mind.

(d)     If he ceases to be a Director by virtue of, or becomes prohibited from being a Director by reason of an order made under any provision of any law or enactment.

(e)     If he be removed by notice to the Company in writing signed by the holders of more than half the issued shares and deposited at the Office.

(f)     If he be removed by Ordinary Resolution passed pursuant to the preceding Article hereof.

### ALTERNATE DIRECTORS

82.     Each Director shall have the power to appoint either another Director or any other person to act as alternate Director in his place during his absence and may at his discretion remove such alternate Director. A person so appointed shall (except as regards power to appoint an alternate and remuneration) be subject in all respects to the terms and conditions existing with referece to the other Directors of the Company and each alternate Director, while so acting, shall exercise and discharge all the functions, powers and duties as a Director of his appointor in such appointor's absence. Any Director acting as alternate shall have an additional vote for each Director for whom he acts as alternate and shall also be considered as two Directors for the purpose of making a quorum of Directors. An alternate Director shall ipso facto cease to be an alternate Director if his appointor ceases for any reason to be a Director.

### PROCEEDINGS OF DIRECTORS

83.     The Directors may meet together for the despatch of business adjourn and otherwise regulate their meetings as they think fit. Questions arising at any meeting shall be determined by a majority of votes. In case of an equality of votes, the Chairman shall have a second or casting vote.   A Director may, and the Secretary on the requisition of a Director shall, at any time summon a meeting of the Directors.

84.     The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed at any other number shall be two.

85.     Any Director enabled to participate in the proceedings of a meeting by means of a communication device (including a telephone) which allows all the other Directors present at such meeting (whether in person or by proxy or by means of such type of communication device) to hear at all times such Director and such Director to hear at all times all other Directors present at such meeting (whether in person or by proxy or by means of such type of communication device) shall be deemed to be present at such meeting and shall be counted when reckoning a quorum.

86. The continuing Directors or a sole continuing Director may act notwithstanding any vacancies in their body, but if and so long as the number of Directors is reduced below the minimum number fixed by or in accordance with these Articles the continuing Directors or Director may act for the purpose of filling up vacancies in their body or of summoning General Meetings of the Company, but not for any other purpose. If there be no Directors or Director able or willing to act, then any two members may summon a General Meeting for the purpose of appointing Directors.

87. The Directors may from time to time elect and remove a Chairman and determine the period for which he is to hold office. The Chairman shall preside at all meetings of the Directors, but if there be no Chairman or if at any Meeting the Chairman be not present within five minutes after the time appointed for holding the same, the Directors present may choose one of their number to be Chairman of the meeting.

88. A Resolution in writing signed by all the Directors for the time being entitled to receive a notice of a meeting of the Directors shall be as valid and effectual as a Resolution passed at a meeting of the Directors duly convened and held and may consist of several documents in the like form each signed by one or more of the Directors.

89. The Directors may delegate any of their powers to committees consisting of such member or members of their body as they think fit. Any committee so formed shall, in the exercise of the powers so delegated conform to any regulations that may be imposed on them by the Directors.

90. The meetings and proceedings of any such committee shall be governed by the provisions of these Articles regulating the meetings and proceedings of the Directors so far as the same are applicable and are not superceded by any regulations made by the Directors under the last preceding Article.

91. All acts done by any meeting of the Directors, or of a committee of Directors or by any person acting as a Director shall, notwithstanding it be afterwards discovered that there was some defect in the appointment of any such Director or person acting as aforesaid, or that they or any of them were disqualified, or had vacated office, or were not entitled to vote, be as valid as if every such person had duly been appointed, and was qualified and had continued to be a Director and had been entitled to vote.

92. The Directors may from time to time provide for the management and transaction of the affairs of the Company in any specified locality, whether at home or abroad, in such manner as they think fit, and the provisions contained in the next following Articles shall be without prejudice to the general powers conferred by this Article.

93. The Directors may establish any committee, local boards or agencies for managing any of the affairs of the Company, either in the Channel Islands or elsewhere, and may appoint any persons to be members of such local boards or agencies, and may fix their remuneration and may delegate to any committee, local board, or

agent any of the powers, authorities and discretions vested in the Directors, with power to sub-delegate, and may authorise the members of any local board or any of them to fill any vacancies therein, and to act notwithstanding vacancies, and any such appointment or delegation may be made upon such terms and subject to such conditions as the Directors may think fit, and the Directors may remove any person so appointed, and may annul or vary any such delegation, but no person dealing in good faith and without notice of any such annulment or variation shall be affected thereby.

94.   The Directors may from time to time and at any time by power of attorney under the Seal, appoint any company, firm or person, or any fluctuating body of persons, whether nominated directly or indirectly by the Directors, to be attorney or attorneys of the Company for such purposes and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such power of attorney may contain such provisions for the protection and convenience of persons dealing with any such attorneys as the Directors may think fit, and may also authorise any such attorney to sub-delegate all or any of the powers, authorities and discretions vested in him.

95.   The Directors shall cause minutes to be made:-

(a)   of all appointments of officers made by the Directors;

(b)   of the names of the Directors present at each meeting of Directors and of any committee of Directors;

(c)   of all Resolutions and proceedings at all meetings of the Company and of the Directors and of committees of Directors.

Any such minute, if purporting to be signed by the Chairman of the meeting at which the proceedings were held, or by the Chairman of the next succeeding meeting, shall be evidence of the proceedings.

### SECRETARY

96.   The Secretary shall be appointed by the Directors for such time, at such remuneration and upon such conditions as they may think fit and any Secretary so appointed may be removed by them.  Anything required or authorised to be done by or to the Secretary, may, if the office is vacant or there is for any other reason no Secretary capable of acting, be done by or to any Assistant or Deputy Secretary, or if there is no Assistant or Deputy Secretary capable of acting, by or to any officer of the Company authorised generally or specially in that behalf by the Directors.   Provided that any provisions of these Articles requiring or authorising a thing to be done by or to a Director and the Secretary shall not be satisfied by its being done by or to the same person acting both as Director and as, or in the place of, the Secretary.

### THE SEAL

97.   The Directors shall provide for the safe custody of the Seal and the

17

Seal shall never be used except by the authority of a resolution of the Directors or of a committee of the Directors authorised by the Directors in that behalf.    The Directors may from time to time make such regulations as they see fit  determining the persons and the number of such persons in whose presence the Seal shall be used, and until otherwise so determined the Seal shall be affixed in the presence of two Directors, or of one Director and the Secretary, or some other person duly authorised by the Directors, who shall sign every instrument to which the Seal is affixed.  The Company may if the Directors so determine have for use in any territory, district or place not situated in the Island an official seal which shall be a facsimile of the seal of the Company and which shall be affixed in the same manner as the Seal.

## DIVIDENDS

98.    The Company in General Meeting may declare dividends, but no dividend shall exceed the amount recommended by the Directors; but the Company in General Meeting may declare a smaller dividend and the declaration of the Directors as to the amount of the profits shall be conclusive.

99.    No dividend shall be paid otherwise than out of profits.

100.    The Directors may if they think fit from time to time pay to the members such interim dividends as appear to the Directors to be justified by the profits of the Company.    If at any time the Share Capital of the Company is divided into different classes  the Directors may pay such interim dividends in respect of those shares in the capital of the Company which confer on the holders thereof deferred or non-preferred rights as well as in respect of those shares which confer on the holders thereof preferential rights with regard to dividend, and provided that the Directors act bona fide they shall not incur any responsibility to the holders of shares conferring a preference for any damage that they may suffer by reason of the payment of an interim dividend on any shares having deferred or non-preferred rights.  The Directors may also pay half-yearly or at other suitable intervals to be settled by them, any dividend which may be payable at a fixed rate if they are of the opinion that the profits justify the payment.

101.    Subject to the rights of persons, if any, entitled to shares with special rights as to dividends, all dividends shall be declared and paid according to the amount paid up on the Shares in respect whereof the dividend is paid, but no amount paid up on a share in advance of calls shall be treated for the purposes of this Article as paid up on the share.  Provided that if any share is issued on terms providing that it shall rank for dividend as from or after a particular date, such share shall rank for dividend accordingly.

102.    The Directors may deduct from any dividend or other moneys payable to any member on or in respect of a share all sums of money (if any) presently payable by him to the Company on account of calls or otherwise in relation to the shares of the Company.

103.    All unclaimed dividends may be invested or otherwise made use of by the Directors for the benefit of the Company until claimed.  No dividend shall bear interest against the Company.

18

104. Unless otherwise directed any dividend or other moneys payable on or in respect of a share may be paid by cheque or warrant sent through the post to the registered address of the member or person entitled thereto, and in the case of joint holders to that one whose name stands first on the Register in respect of their joint holding. Every such cheque or warrant shall be made payable to the order of the person to whom it is sent, and payment of the cheque or warrant shall be a good discharge to the Company.    Every such cheque or warrant shall be sent at the risk of the person entitled to the money represented thereby.

105. If several persons are registered as joint holders of any share, any one of them may give effectual receipts for any dividend or other moneys payable on or in respect of the share.

## RESERVES

106. The Directors may, before recommending any dividend, set aside out of the profits of the Company such sums as they think proper as a reserve or reserves which shall, at the discretion of the Directors, be applicable for any purpose to which the profits of the Company may be properly applied, and pending such application may, at the like discretion, either be employed in the business of the Company or be invested in such investments (other than shares of the Company) as the Directors may from time to time think fit.    The Directors may also without placing the same to reserve carry forward any profits which they may think prudent not to divide.

## CAPITALISATION

107. The Company in General Meeting may on the recommendation of the Directors resolve that it is desirable to capitalise any undivided profits of the Company (whether standing to the credit of the profit and loss account or any reserve or reserves or otherwise available for distribution) not required for paying the fixed dividends on any shares entitled to fixed preferential dividends with or without further participation in profits or, subject as hereinafter provided, any sum standing to the credit of a Share Premium Account or Capital Redemption Reserve Fund, and accordingly that the Directors be authorised and directed to appropriate the profits or sum resolved to be capitalised to the members in the proportion in which such profits or sum would have been divisible amongst them had the same been applied or been applicable in paying dividends and to apply such profits or sum on their behalf, either in or towards paying up the amounts, if any, for the time being unpaid on any shares or debentures held by such members respectively, or in paying up in full unissued shares or debentures of the Company such shares or debentures to be allotted and distributed, credited as fully paid up, to and amongst such members in the proportion aforesaid, or partly in one way and partly in the other; provided that any sum standing to the credit of a Share Premium Account or Capital Redemption Reserve Fund may, for the purpose of this Article, only be applied in the paying up of unissued shares to be issued to members as fully paid.

108. When such a Resolution as aforesaid shall have been passed, the Directors shall make all appropriations and applications of the profits or sum resolved to be capitalised thereby, and all allotments

19

and issues of fully paid shares or debentures, if any, and generally shall do all acts and things required to give effect thereto. Where any difficulty arises in respect of any appropriation and distribution the Directors may settle the same as they think expedient and in particular they may fix the value for distribution of any fully paid up shares or debentures, make cash payments (except from Share Premium Account or Capital Redemption Reserve Fund) to any shareholders on the footing of the value so fixed in order to adjust rights and vest any shares or debentures in trustees upon such trusts for the persons entitled to share in the appropriation and distribution as may seem just and expedient to the Directors.

## ACCOUNTS

109. The Directors shall cause to be kept proper accounts with respect to:-

    (a)    all sums of money received and expended by the Company and the matters in respect of which such receipts and expenditure take place, and

    (b)    the assets and liabilities of the Company.

110. The books of account shall be kept at the Office, or at such other place as the Directors think fit, and shall always be open to inspection by the Directors. No member (other than a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by the Law or authorised by the Directors or by the Company in General Meeting.

111. The Directors shall cause the books of the Company to be balanced annually, and shall draw up a Profit and Loss account of the Company during the year, together with a Balance Sheet of the Assets and Liabilities of the Company, and shall submit the same to the Auditor (if any) and lay the same, together with the Auditor's Certificate (if Auditors have been appointed) as to the correctness thereof, accompanied by a Report from the Board as to the state of the Company's affairs and the amount (if any) which they recommend be paid by way of dividend and the amount (if any) which they propose to carry to reserve, before the Members at the Ordinary General Meeting next ensuing. Such Balance Sheet shall, when approved by the Meeting become binding and conclusive upon the Members.

112. A copy of such Statement, Balance Sheet and Report shall be sent by post to the registered address of every Member ten clear days at least before the date of such Meeting.

113. The financial year shall close on the 31st December of each year or on such other date as the Directors may from time to time determine.

## AUDIT

114. The Directors or the Company in General Meeting, may, at any time if they think fit arrange for the accounts and balance sheet of the Company to be examined and the correctness thereof ascertained by one or more auditors.

20

115. Auditors may be appointed by the Directors, or by the Company in General Meeting, and the Company in General Meeting shall have power to remove auditors. Subject to the said power of removal any auditors appointed shall remain in office until the next following Annual General Meeting. The remuneration of Auditors shall be fixed by the Directors.

## NOTICES

116. Any notice or document may be served by the Company on any member either personally or by sending it through the post in a prepaid letter addressed to such member at his address as appearing in the Register. In the case of joint holders of a share, all notices shall be given to that one of the joint holders whose name stands first in the Register in respect of the joint holding, and notices so given shall be sufficient notice to all the joint holders.

117. Any member present, either personally or by proxy, at any meeting of the Company shall for all purposes be deemed to have received due notice of such meeting, and, where requisite of the purposes for which such meeting was convened.

118. Any summons, notice, order or other document required to be sent to or served upon the Company, or upon any officer of the Company may be sent or served by leaving the same or sending it through the post in a prepaid letter, envelope or wrapper, addressed to the Company or to such officer at the Office.

119. Any notice or other document, if served by post, shall be deemed to have been served twenty-four hours after the time when the letter containing the same is posted and in proving such service it shall be sufficient to prove that the letter containing the notice or document was properly addressed and duly posted. A notice given by advertisement shall be published in at least one leading daily newspaper in London and the Jersey Gazette and shall be deemed to have been served before noon on the day on which the advertisement appears.

120. A notice may be given by the Company to the persons entitled to a share in consequence of the death or bankruptcy of a member by sending it through the post in a prepaid letter addressed to them by name, or by the title of representatives of the deceased, or trustee of the bankrupt, or by any like description, at the address supplied for the purpose by the persons claiming to be so entitled or (until such an address has been supplied) by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

121. Notice of every General Meeting shall be given in any manner hereinbefore authorised to:-

    (a)    every member,

    (b)    every person upon whom the ownership of a share devolves by reason of his being a legal representative or a trustee in bankruptcy of a member,

(c)    such other persons as the Directors shall at any time and from time to time determine.

## WINDING UP

122. If the Company shall be wound up, the surplus assets remaining after payment of all creditors shall be divided among the members in proportion to the Capital which at the commencement of the winding up is paid up, or ought to have been paid up, on the shares held by them respectively, and if such surplus assets shall be insufficient to repay the whole of the paid up capital, they shall be distributed so that, as nearly as may be, the losses shall be borne by the members in proportion to the capital paid up, or which ought to have been paid up, at the commencement of the winding up on the shares held by them respectively. But this Article is to be subject to the rights of any shares which may be issued with special rights or privileges.

123. If the Company shall be wound up the Liquidator may, with the authority of a Special Resolution, divide among the members in specie, the whole or any part of the assets of the Company, and whether or not the assets shall consist of property of one kind or shall consist of properties of different kinds, and may for such purposes set such value as he deems fair upon any one or more class or classes of property, and may determine how such division shall be carried out as between the members or different classes of members. The Liquidator may, with the like authority, vest any part of the assets in trustees upon such trusts for the benefit of members as the Liquidator, with the like authority, shall think fit, and the liquidation of the Company may be closed and the Company dissolved, but so that no member shall be compelled to accept any shares in respect of which there is a liability.

## INDEMNITY

124. Every Director, Manager, Secretary and other officer or servant of the Company shall be indemnified by the Company against, and it shall be the duty of the Directors out of the funds of the Company to pay, all costs, charges, losses and expenses which any such officer or servant may incur or become liable to by reason of any contract entered into or act or deed done by him as such officer or servant or in any way in the discharge of his duties. The Directors may execute in the name or on behalf of the Company in favour of any Director or any other person who may incur or be about to incur any personal liability for the benefit of the Company such mortgages of the Company's property (present and future) as they think fit and any such mortgages may contain a power of sale, and such other powers, convenants and provisions as shall be agreed on.

125. No Director or other officer of the Company shall be liable for the acts, receipts, neglects or defaults of any other Director or officer or for joining in any receipt or other act for conformity or for any loss or expense happening to the Company through the insufficiency or deficiency of title to any property acquired by order of the Directors or on behalf of the Company, or for the insufficiency or deficiency of any security in or upon which any of the moneys of the Company shall be invested, or for any loss or damage arising from the bankrupty, insolvency or tortious act of any person with whom

22

any money, securities or effects shall be deposited, or for any loss occasioned by any error of judgement or oversight on his part, or for any other loss, damage or misfortune whatever which shall happen in the execution of the duties of his office or in relation thereto unless the same happen through his own dishonesty.

## REPRESENTATIVES FOR REAL AND PERSONAL ESTATE

126. In pursuance of Article 6 of the Law, the power and authority to represent the Company for the purchase or sale of real property will be vested in the Directors for the time being or in any person specifically designated by the Directors or in their duly appointed Attorney. The Directors or any person specifically designated by the Directors or their duly appointed Attorney will represent the Company in all legal and judicial transactions arising out of the real property of the Company.

127. One of the Directors of the Company for the time being or an Attorney duly appointed by the Directors will represent the Company before all Courts of Law with respect to all legal transactions other than those arising from the real property of the Company.