# CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK

PARIS

BRUSSELS

LONDON

FRANKFURT

COLOGNE

MOSCOW

2112 Pennsylvania Avenue, NW
Washington, DC 20037-3229
T: +1 202 974 1500
F: +1 202 974 1999

clearygottlieb.com

D: +1 202 974 1752
nbamberger@cgsh.com

ROME

MILAN

HONG KONG

BEIJING

BUENOS AIRES

SÃO PAULO

ABU DHABI

SEOUL

February 17, 2021

BY ECF
The Honorable Stuart M. Bernstein
U.S. Bankruptcy Court for the Southern District of New York
One Bowling Green, Courtroom 723
New York, New York 1004-1408

> Re:    *Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam,*
> *et al. (In re Fairfield Sentry Ltd.)*, No. 10-ap-03496-SMB
> (Administratively Consolidated)

Dear Judge Bernstein:

Pursuant to Local Rule 9023-1, Defendants in Appendix A, by their attorneys in Appendix B, respectfully ask the Court to reconsider one discrete aspect of its decision in *Fairfield III*[1] that would be dispositive as to all remaining claims in this litigation: Whether the constructive trust claim asserted under BVI law is precluded by Section 546(e).[2] Reconsideration is warranted because *Fairfield III* failed to analyze the substance of the constructive trust claim as pled. In fact, the claim is a recast avoidance claim, barred by Section 546(e) under this Court's prior holdings. Allowing the claim to proceed improperly privileges foreign equitable claims over both federal law and equivalent state law claims.

## A.    The *Fairfield III* Decision

In *Fairfield III*, the Court held that foreign claims that are "analogous to preference claims, state law fraudulent transfer claims or constructive fraudulent transfer claims under Bankruptcy Code § 548(a)(1)(B) . . . will be barred by the Safe Harbor if they meet its strictures." *Fairfield*

---

[1]    *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*").

[2]    Motions for re-argument under Local Rule 9023-1 are governed by the standards for motions under Federal Rule of Civil Procedure 59(e), made applicable by Federal Rule of Bankruptcy Procedure 9023. *See In re Asia Glob. Crossing, Ltd.*, 332 B.R. 520, 523-24 (Bankr. S.D.N.Y. 2005). The Court may grant a motion for re-argument when the movant identifies "the need to correct a clear error or prevent manifest injustice." *In re Longfin Corp. Secs. Class Action Litig.*, No. 18-cv-2933(DLC), 2019 WL 3409684, at *3 (S.D.N.Y. July 29, 2019). The movant's burden can be met by presenting "additional relevant case law and substantial legislative history" that could "reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Hon. Stuart M. Bernstein, p. 2

*III* at \*5; *see also Fairfield II* at 314.[3]   On that basis, after finding that the redemption payments were covered transactions under Section 546(e), the Court held that the Liquidators' claims under Sections 245 and 246 of the BVI Insolvency Act ("BIA") were barred. *Fairfield III* at \*5, 7.   The Court rooted its analysis in the elements the Liquidators would need to prove under the BIA provisions, and the extent to which those elements "resemble" claims under the Bankruptcy Code and state fraudulent avoidance law. *Id.* at \*5.   As the Court found, Section 546(e), as applied to Chapter 15 proceedings under Section 561(d), necessarily precludes claims brought under foreign law such as the Liquidators' statutory avoidance claims: "A chapter 15 foreign representative cannot exercise the avoidance powers available to a trustee in chapter 7 or chapter 11. *See* 11 U.S.C. § 1521(a)(7). ***Consequently, section 561(d) is necessarily referring to avoidance powers available under non-U.S. law***." *Fairfield II* at 310 (emphasis added).

Respectfully, the Court should have applied the same analysis of the statutory avoidance claims to the Liquidators' equitable constructive trust claim that seeks to accomplish the same thing.   But in addressing the constructive trust claim, *Fairfield III* asked a different question: Whether the Liquidators' claim is "preempted" under "the Supremacy Clause." *Fairfield III* at \*9.   The decision in this respect appears to overlook the fact that, as pled in this case, the constructive trust claim – like the BIA claims – is directly "analogous" to claims under the Bankruptcy Code or state fraudulent conveyance laws that Section 546(e) precludes. *See Fairfield III* at \*5.   When assessed under this Court's own standard in *Fairfield II*, the Liquidators' constructive trust claim fails for the same reason their other claims fail – not as a matter of preemption, but because the Bankruptcy Code safe harbor prohibits a foreign representative from pursuing it. *See* 11 U.S.C. § 561(d).[4]

**B.    The Liquidators' Constructive Trust Claim Seeks Avoidance Of The Redemption Payments.**

*Fairfield II* authorized the Liquidators to plead (subject to Defendants' right to move to dismiss) a BVI law constructive trust claim patterned on the claim brought in *DD Growth* [2017] UKPC 36 ("*DD Growth*").[5]   *DD Growth* involved a claim to recover redemption payments that had been made "by [the company's] directors in breach of their duties to the company." *Fairfield II* at 297 (quoting *DD Growth*, ¶ 64).   The *DD Growth* plaintiffs alleged that the funds' directors breached their duty because the payments were "unlawful" under a Cayman law that "prohibits a payment out of capital of the redemption proceeds." *DD Growth*, ¶¶ 58-59.   As the Privy Council held, this resulted in a *per se* breach of trust by the directors. *Id.* ¶ 59.   The claim in *DD Growth* accordingly conformed to the traditional elements of a constructive trust arising from "knowing receipt," as it is understood under English law.   To establish such a claim "the plaintiff must show, first, a disposal of his assets in breach of fiduciary duty; second, the beneficial receipt by the defendant of assets which are traceable as representing the assets of the plaintiff; and third, knowledge on the part of the defendant that the assets he received are traceable to a breach of fiduciary duty." *El Ajou v. Dollar Land Holdings Ltd.* [1994] 2 All E.R. 685, 700.

---

[3]   *In re Fairfield Sentry Ltd.*, 596 B.R. 275 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*").

[4]   Defendants argued that the Liquidators' constructive trust claim was simply a rebranded avoidance claim seeking the "same relief" to recover the same transfers based on the same theory that Defendants received "allegedly inflated redemption payments." Consolidated Brief at 31, Case No. 10-13164, Dkt. No. 2903 ("Consol. Br.").   The Court need not analyze the claim under preemption to reach the conclusion that the claim is barred under the terms of the statute. *See* Administratively Consolidated Reply at 10-11, Case No. 10-03496, Dkt. No. 3036 ("Consol. Reply").

[5]   Foreign law sources and treatises are included for convenience in Appendix C.

Hon. Stuart M. Bernstein, p. 3

Unlike the claim in *DD Growth*, however, the Liquidators' constructive trust claim is not premised on any breach of fiduciary duties or other tort by the Funds or their directors. As the Court recognized in *Fairfield III*, the Liquidators have disclaimed allegations that the Funds are at fault for the redemption payments. *Fairfield III* at *2 n.7. Instead, what the Liquidators actually try to *plead* in their operative complaints[6] is a typical avoidance claim. This is not surprising given the history of this case; in a very literal sense, the Liquidators have simply repackaged their avoidance allegations under the banner of "Constructive Trust."

The tell-tale sign that the Liquidators' claim is really one to "avoid" transfers is that their sole basis for contending that the transfers were unfair and "unconscionable" is that they frustrate *pro rata* distribution to other Fund investors. Third Am. Compl. ¶ 16, Case No. 10-03622, Dkt. No. 79 ("Third Am. Compl."). The Liquidators' own complaint spells this out in detail, alleging:

(1)    Redemption payments were made to each Defendant, Third Am. Compl. ¶¶ 9, 40;

(2)    In fact "those Redemption Payments [were] in excess of the Net Asset Value of redeemed Shares that would have been calculated based upon the true facts existing at that time," *id.* ¶ 97;

(3)    Defendants "had knowledge of the possibility of Madoff's Ponzi scheme," *id.* ¶ 79, and "consciously disregarded" evidence the NAV was inflated, *id.* ¶ 73;

(4)    Defendants were therefore "unjustly enriched to the detriment of [the Funds] and other shareholders and creditors of [the Funds]," *id.* ¶ 100; and

(5)    That because "[i]t would offend principles of equity and good conscience to permit Defendants to retain the Redemption Payments," *id.* ¶ 102, "a constructive trust should be imposed . . . for the benefit of the Foreign Representatives and [the Funds] and other shareholders and creditors of [the Funds]," *id.* ¶ 103.

Notably, the Liquidators make clear in their Proposed Fourth Amended Complaint that the purpose of their claim is "to recoup [the redemption payments] for the benefit of the Funds' estates," to avoid Defendants retaining funds "at the expense of other shareholders and creditors," and that "[a]ny recoveries will aid the Funds in satisfying their liabilities and redound to the benefit of the Funds' investors[.]" Prop. Fourth Am. Compl., ¶ 18, Case No. 10-03496, Dkt. No. 2873-20 ("Prop. Fourth Am. Compl."); *see also* Third Am. Compl. ¶ 16. These allegations are the language of an avoidance action: the Liquidators seek payments, made by an insolvent company,[7] on the basis that retention of the payments is unfair to other investors, and they propose to use the proceeds of those actions to fund distributions through a liquidation to other shareholders and creditors. *Cf. Fairfield II* at 302 (recognizing BIA Section 245 permits return of payments made

---

[6]    *See, e.g.*, Third Am. Compl. ¶¶ 96-103, No. 10-03622, Dkt. No. 79 ("Third Am. Compl."). In January 2020, the Liquidators filed proposed amended complaints. *See, e.g.*, Prop. Fourth Am. Compl., Case No. 10-03496, Dkt. 2873-20 ("Prop. Fourth Am. Compl."). The proposed amendments do not substantively change any portion of the operative complaints discussed in this Motion.

[7]    While insolvency is not an element of all constructive trust claims, it is pled here and is not just incidental to the claim. The Liquidators assert that these redemption payments were inequitable for the same reason that the payments pushed the Funds into insolvency. Like a trustee in bankruptcy, the Liquidators purport to pursue the constructive trust claim "for the benefit of . . . [the Funds'] creditors." Third Am. Compl. ¶ 103; *see also id.* ¶ 100 (alleging Defendants were enriched at the "detriment of . . . creditors").

Hon. Stuart M. Bernstein, p. 4

by insolvent debtor that "put the creditor in a better position than if the transfer had not been made and the company was liquidated").

Moreover, the Liquidators do *not* plead that Defendants received more money than they were legally entitled to, or that retaining redemption payments is unconscionable, *except* by way of looking at what money remains to satisfy the Funds' creditors – the classic justification for avoidance. *See In re Harris*, 464 F.3d 263, 273 (2d Cir. 2006) (Sotomayor, J.) (The Bankruptcy Code's avoidance provisions, including Section 548, "protect a debtor's estate from depletion to the prejudice of the unsecured creditor." (internal quotation omitted)). Indeed, the law and the Court's prior decisions foreclose such a claim. *See Fairfield II* at 300-01 ("Defendants gave the consideration required by their contracts with the Funds when they surrendered their shares in exchange for the Funds' discharge of their contractual redemption obligations."). There is nothing inherently unconscionable about an investor seeking the return of its money, even if it discovered that the fund it invested in, in turn, invested in a Ponzi scheme.[8]

The crux of the Liquidators' claim is that it would be unfair and unconscionable *to other investors* to permit "investors lucky enough to redeem their shares in the Funds before the collapse of the Ponzi scheme," Prop. Fourth Am. Compl. ¶ 7, to retain payments while others "found themselves victims of Madoff's Ponzi scheme," *id.* ¶ 18. The claim thus mirrors traditional avoidance claims under U.S. law and, specifically, claims for constructively fraudulent transfers. *See, e.g.*, 11 U.S.C. § 548(a)(1)(B); N.Y.D.C.L. § 273(a)(2). That the Liquidators have framed their claim as seeking imposition of a constructive trust rather than avoidance is of no moment where, as here, the relief sought is – as a matter of substance – avoidance of transfers in favor of *pro rata* distribution in bankruptcy. "What matters is not the form of the action, but the substance of the claim." *Att'y. Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 130 (2d Cir. 2001) (finding RICO claim precluded by the common law Revenue Rule where claim substantively sought to enforce Canadian tax law).

The Liquidators' constructive trust claim is an "avoidance" claim and therefore within the scope of Section 546(e) regardless of how it is labeled. Historically, avoidance was a common law, not statutory, remedy under English law. *See Alderson v. Temple* [1768] 98 E.R. 165 (Ct. of King's Bench) (allowing plaintiff's action in trover to recover void fraudulent conveyance of notes). In modern law, imposition of a constructive trust is an equitable remedy, providing – like an avoidance claim – for the setting aside and recovery of transfers of property. DOBBS' LAW OF REMEDIES § 4.3(2) (constructive trust is an equitable remedy that "restore[s] to the plaintiff a particular asset" or "one substituted for it"). The remedy serves the same purpose as a bankruptcy avoidance claim, and where – as here – the remedy is pursued by an insolvent estate, the claim duplicates an avoidance action. RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 55 (2011) ("Constructive trust is a means to recover specific property from the holder of legal title. . . . The underlying transaction is ordinarily one that is subject to avoidance for fraud, mistake or comparable grounds of invalidity[.]"). Courts have recognized that constructive trust claims can fall within the scope of claims that may be asserted under Section 544(b), which is itself barred by the safe harbor. *See, e.g.*, *Hays & Co. v. Merrill Lynch, Pierce,*

---

[8]    The investments were placed based on the same NAV calculation used for redemptions. *See Fairfield Sentry Ltd. (In Liquidation ) v. Migani* [2014] UKPC 9, ¶ 2 ("Investors participated indirectly in these placements by subscribing for shares in the Fund at a price dependent on the Fund's net asset value per share ('NAV').").

Hon. Stuart M. Bernstein, p. 5

*Fenner & Smith, Inc.*, 885 F.2d 1149, 1149, 1154 (3d Cir. 1989) (discussing Section 544(b) claim based on creditor constructive trust rights).

Nor can the Liquidators distinguish their constructive trust claim from the avoidance remedy they seek on the grounds that allegations of Defendants' supposed knowledge of Madoff's Ponzi scheme are an element of the claim. Section 546(e)'s prohibition on claims to avoid fraudulent conveyances applies equally to claims requiring a showing of the transferee's bad faith, as well as those premised on constructive fraud or other theories. The transferee's knowledge is relevant to claims for avoidance under both federal and state fraudulent conveyance law. *See, e.g.*, Uniform Fraudulent Transfer Act, Sec. 8 (currently enacted by 31 states and D.C.); N.Y.D.C.L. § 277(a) (providing a transfer is "not voidable . . . against a person that took in good faith and for a reasonably equivalent value"); 11 U.S.C. § 548(c) ("[A] transferee . . . that takes for value and in good faith has a lien on or may retain any interest transferred.").

That federal statutory avoidance claims may characterize good faith as a defense rather than an element does not bear on whether the remedy being sought is "avoidance." That is merely a question of allocation of the burden of proof; it does not transform the fundamental character of the claim. Whether the burden is assigned to plaintiff or defendant, a claim seeking to set aside a transfer by an insolvent for the benefit of creditors is an "avoidance" claim.[9] *See SIPC. v. BLMIS*, 516 B.R. 18, 24 (S.D.N.Y. 2014) (requiring that trustee plead "defendant did not act in good faith"). Indeed, the Liquidators must plead Defendants' knowledge as an element of their barred BIA Section 246 claims. *Fairfield II* at 303, 305 (requiring "plaintiff to plead and ultimately prove . . . the transferor" received inadequate consideration by pleading knowledge).

## C.    Domestic Preemption Rules Do Not Limit Section 546(e)'s Application to the Constructive Trust Claim.

As the Court has recognized, the safe harbor serves to protect the U.S. economy and financial system from the "ripple effect[s]" that would follow from trustees unwinding settled securities transactions involving financial institutions. *Fairfield II* at 307-08; *see also In re Enron Creditors Recovery Corp.*, 651 F.3d 329, 334 (2d Cir. 2011) (explaining that requiring a transferee to "repay amounts received in settled securities transactions" could "plac[e] other market participants and the securities markets themselves at risk"). Congress enacted this "broad" safe harbor expressly to "prevent the insolvency of one commodity or security firm from spreading to other firms and possibl[y] threatening the collapse of the affected market." *In re Tribune Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 91 (2d Cir. 2019) (quoting H.R. Rep. No. 97–420, at 1 (1982)). With Section 561(d), Congress made clear those protections applied to foreign law so that Chapter 15 did not permit an end-run around the safe harbor. *Fairfield II* at 310.

*Fairfield III* thus erred in permitting a foreign representative to use foreign common law claims to achieve what a domestic trustee cannot do under state law or foreign statutory law. Just as state law claims in conflict with federal law are preempted, so too U.S. courts are obligated not to apply foreign law conflicting with federal policy.[10] The Supremacy Clause does not subordinate

---

[9]    In New York, until last year, creditors had to show a transferee lacked good faith to avoid a constructively fraudulent transfer. *JDI Display Am., Inc. v. Jaco Elecs., Inc.*, 188 A.D.3d 844, 845 (N.Y. App. Div. 2020) ("The good faith of both the transferor and transferee is an indispensable element of fair consideration" under former N.Y.D.C.L. §§ 273 and 275).

[10]    *See, e.g., Hilton v. Guyot*, 159 U.S. 113, 164 (1895) ("[N]o nation will suffer the laws of another to interfere with her own to the injury of her citizens."); *Pravin Banker Assocs. Ltd. v. Banco Popular del Peru*, 109 F.3d 850,

Hon. Stuart M. Bernstein, p. 6

state law to *foreign* law in its applicability to U.S. court proceedings. Rather, it establishes that state law – which is otherwise equally binding within the United States – must yield to conflicts with federal law. The preemption doctrine is a disfavored one precisely because of state sovereignty. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action."). Neither the Liquidators nor *Fairfield III* identifies a basis for concluding that a conflict serious enough to preempt state law would nonetheless permit foreign claims to proceed.

The relevance of preemption cases is that they recognize that there is a direct conflict between Section 546(e) and common law claims that duplicate the relief sought by way of an avoidance action. Controlling Second Circuit precedent establishes that, in the event of such a conflict, the common law claims must yield. *See Tribune*, 946 F.3d at 90 (Section 546(e) bars non-bankruptcy fraudulent transfer claims because "[u]nwinding settled securities transactions by claims such as appellants' would seriously undermine" the securities markets that the safe harbor was designed to protect); *accord AP Servs., LLP v. Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012) (barring unjust enrichment claim that could not proceed "without frustrating the purpose of Section 546(e)"). Here, too, allowing the constructive trust claim that seeks to unwind safe harbored transactions to proceed would frustrate the purpose of Section 546(e), an incongruous result that overlooks the substance of the claim at issue and would defeat the purpose of the application of the safe harbor in Chapter 15 proceedings.

*Fairfield III*'s reliance on *Al-Kurdi v. United States*, 25 Cl. Ct. 599, 601 n.3 (Cl. Ct. 1992), does not support exempting foreign common law claims from the application of Section 546(e). *See Fairfield III* at *10. *Al-Kurdi* did not involve foreign claims that would have frustrated domestic public policy embodied in a federal statute like Section 546(e). Rather, it was a conflict-of-laws case, in which the question was whether U.S. or Jordanian law should control a contract dispute. *Al-Kurdi*, 25 Cl. Ct. at 601-02. The court considered the Supremacy Clause in a footnote, and only to note that federal law did not necessarily displace foreign law as providing the rule of decision. *Id.* at 601 n.3. Nor are cases construing SLUSA relevant as, unlike the safe harbor, SLUSA affirmatively limits its scope to claims under the "law of any State." 15 U.S.C. § 78bb(f)(1); *see also* Consol. Reply at 11. By contrast, as the Court held in *Fairfield II*, Section 561(d) makes Section 546(e) applicable to claims "under non-U.S. law." *Fairfield II* at 310.

*            *            *

Defendants respectfully request that the Court grant re-argument and dismiss the Liquidators' constructive trust claim because it seeks avoidance, which the Liquidators are barred by Section 546(e) from seeking here. Section 546(e) applies for all of the reasons that the Court found in *Fairfield II* and *III* and because allowing the Liquidators to circumvent the safe harbor by repleading the same substantive avoidance allegations as foreign law equitable claims would conflict with and frustrate the express federal policy underlying the safe harbor.

---

854 (2d Cir. 1997) (declining to recognize foreign proceedings when "contrary to the policies or prejudicial to the interests of the United States"); *Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984); ("[T]he obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act."); RESTATEMENT (SECOND) CONFLICT OF LAWS § 90 ("No action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum.").

Hon. Stuart M. Bernstein, p. 7

Respectfully submitted,

Nowell D. Bamberger

*Attorney for HSBC Securities Services*
*(Luxembourg) S.A., HSBC Private Bank (Suisse)*
*S.A., HSBC Bank USA, N.A.*