IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LIMITED, et al., | Case No. 10-13164 (CGM) |
| Debtor in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03496 (CGM) |
| Plaintiffs, | Administratively Consolidated |
| v. | |
| THEODOOR GGC AMSTERDAM, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03622 (CGM) |
| Plaintiffs, | |
| v. | |
| CITIBANK NA LONDON, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03626 (CGM) |
| Plaintiffs, | |
| v. | |
| BGL BNP PARIBAS S.A., et al., | |
| Defendants. | |

| | |
|---|---|
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03627 (CGM) |
| Plaintiffs, | |
| v. | |
| BNP PARIBAS SECURITIES SERVICES LUXEMBOURG, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03630 (CGM) |
| Plaintiffs, | |
| v. | |
| HSBC SECURITIES SERVICES (LUXEMBOURG) SA, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03633 (CGM) |
| Plaintiffs, | |
| v. | |
| HSBC PRIVATE BANK (SUISSE) SA, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03634 (CGM) |
| Plaintiffs, | |
| v. | |
| ZURICH CAPITAL MARKETS CO., et al., | |
| Defendants. | |

| | |
|---|---|
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>Defendants. | Adv. Pro. No. 10-03635 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>Defendants. | Adv. Pro. No. 10-03636 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UBS AG NEW YORK, et al.,<br><br>Defendants. | Adv. Pro. No. 10-03780 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BNP PARIBAS ARBITRAGE SNC, et al.,<br><br>Defendants. | Adv. Pro. No. 10-04098 (CGM) |

| | |
|---|---|
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-04099 (CGM) |
| Plaintiffs, | |
| v. | |
| BNP PARIBAS PRIVATE BANK & TRUST CAYMAN LTD., et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 11-01250 (CGM) |
| Plaintiffs, | |
| v. | |
| UBS EUROPE SE LUXEMBOURG BRANCH, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 11-01463 (CGM) |
| Plaintiffs, | |
| v. | |
| MERRILL LYNCH INTERNATIONAL, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 11-01579 (CGM) |
| Plaintiffs, | |
| v. | |
| BNP PARIBAS SECURITIES NOMINEES LTD., et al., | |
| Defendants. | |

| | |
|---|---|
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., <br><br>    Plaintiffs, <br><br>  v. <br><br>FORTIS BANK, SA/NV, et al., <br><br>    Defendants. | Adv. Pro. No. 11-01617 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., <br><br>    Plaintiffs, <br><br>  v. <br><br>CITIGROUP GLOBAL MARKETS LTD., et al., <br><br>    Defendants. | Adv. Pro. No. 11-02770 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., <br><br>    Plaintiffs, <br><br>  v. <br><br>BNP PARIBAS ESPANA, et al., <br><br>    Defendants. | Adv. Pro. No. 12-01551 (CGM) |

## <u>MEMORANDUM OF LAW IN SUPPORT OF THE LIQUIDATORS' MOTION FOR LEAVE TO AMEND COMPLAINTS IN THE KNOWLEDGE ACTIONS</u>

Date:  May 14, 2021

SELENDY & GAY PLLC

David Elsberg
Lena Konanova
Jordan Garman
Ester Murdukhayeva
Ronald Krock
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800

*Attorneys for Plaintiffs Foreign
Representatives*

# <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ..............................................................................2

PROCEDURAL BACKGROUND........................................................................4

    A.    2016 Amendments & *Fairfield II* ...........................................6

    B.    Motion For Leave To File Further Proposed Amended Complaints,
           *Fairfield III*, And The Present Motion.....................................8

ARGUMENT ..............................................................................................11

I.    THE LIQUIDATORS ARE ENTITLED TO AMEND UNDER RULE 15'S
     LIBERAL AMENDMENT STANDARD.........................................11

    A.    The Liquidators Move In Good Faith ....................................12

    B.    The Proposed Amendments Will Not Prejudice Defendants.................14

    C.    The Liquidators Promptly Sought Leave To Amend............................17

II.    RULE 16 DOES NOT BAR THE LIQUIDATORS' AMENDMENTS ..........................20

    A.    Rule 16 Does Not Apply To The BNP Defendant Actions Because The
           Liquidators Complied With All Relevant Deadlines............................20

    B.    Rule 16 Does Not Apply To The Prior Knowledge Defendant Actions
           Because The Relevant Scheduling Orders Have No Relevant Deadline...............21

    C.    Even If Rule 16 Did Apply, Liquidators Satisfy The "Good Cause"
           Standard ...............................................................23

CONCLUSION.............................................................................................24

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Abbatiello v. Monsanto Co.*,
    571 F. Supp. 2d 548 (S.D.N.Y. 2008)..........................................................17, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 12

*Agerbrink v. Model Serv. LLC*,
    155 F. Supp. 3d 448 (S.D.N.Y. 2016) ............................................ 12, 14, 18, 20

*Block v. First Blood Assocs.*,
    988 F.2d 344 (2d Cir. 1993)......................................................................14, 16

*Contrera v. Langer*,
    314 F. Supp. 3d 562 (S.D.N.Y. 2018) .............................................................. 12

*Duling v. Gristede's Operating Corp.*,
    265 F.R.D. 91 (S.D.N.Y. 2010) ..................................................................17, 18

*Eastman Kodak Co. v. Henry Bath LLC*,
    936 F.3d 86 (2d Cir. 2019)............................................................................... 12

*Evans v. Syracuse City Sch. Dist.*,
    704 F.2d 44 (2d Cir.1983) ............................................................................... 12

*Franco v. Ideal Mortg. Bankers, Ltd.*,
    2009 WL 3150320 (E.D.N.Y. Sept. 28, 2009), *order aff'd, appeal dismissed*, 2009
    WL 3756664 (E.D.N.Y. Nov. 3, 2009) ............................................................. 15

*In re Bernard L. Madoff Inv. Sec. LLC*,
    560 B.R. 208 (Bankr. S.D.N.Y. 2016) ............................................................. 17

*In re Fairfield Sentry Ltd.*,
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .......................................... 4

*In re Fairfield Sentry Ltd.*,
    596 B.R. 275 (Bankr. S.D.N.Y. 2018)......................................... 1, 2, 4, 5, 6, 7, 9

*In re Fairfield Sentry Ltd.*,
    2020 WL 4813565 (Bankr. S.D.N.Y. Aug. 10, 2020) ........................................ 9

*In re Fairfield Sentry Ltd.*,
    2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*,
    2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) ....................................1, 10

*In re Term Commodities Cotton Futures Litig.*,
    2018 WL 1737706 (S.D.N.Y. Feb. 28, 2018) .................................................. 22

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007) ....................................................................... 20

*Kleeberg v. Eber*,
    331 F.R.D. 302 (S.D.N.Y. 2019) ................................................................ 23

*Lazo v. Queens Health Food Emporium Inc.*,
    2012 WL 2357564 (E.D.N.Y. June 20, 2012) ............................................. 21

*Martin Hilti Family Trust v. Knoedler Gallery, LLC*,
    2015 WL 9412925 (S.D.N.Y. Dec. 22, 2015) ............................................. 21

*Mendez v. Pizza on Stone, LLC*,
    2012 WL 3133522 (S.D.N.Y. Aug. 1, 2012) .............................................. 21

*Monahan v. NYC Dep't of Corrections*,
    214 F.3d 275 (2d Cir. 2000) ....................................................................... 16

*Moroughan v. County of Suffolk*,
    99 F. Supp. 3d 317 (E.D.N.Y. 2015) .......................................................... 23

*N. Assur. Co. of Am. v. Ne. Marine, Inc.*,
    2013 WL 587089 (S.D.N.Y. Feb. 11, 2013) .............................................. 21

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017)....................................................... 12, 14, 18, 19

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*
    889 F. Supp. 2d 453 (S.D.N.Y. 2012) ........................................................ 23

*Phoenix Light SF Ltd. v. HSBC Bank USA, Nat'l Ass'n*,
    2021 WL 568080 (S.D.N.Y. Feb. 16, 2021) ......................................... 17, 19

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equipment, Ltd.*,
    2012 WL 2458060 (E.D.N.Y. June 27, 2012) ............................................ 22

*Primetime 24 Joint Venture v. DirecTV, Inc.*,
    2000 WL 426396 (S.D.N.Y. Apr. 20, 2000). .............................................. 12

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
    46 F.3d 230 (2d Cir. 1995)...................................................................... 17, 18

*Richardson Greenshields Secs., Inc. v. Lau*,
    825 F.2d 647 (2d Cir. 1987)........................................................................ 19

*Scott v. Chipotle Mexican Grill*,
    300 F.R.D. 193 (S.D.N.Y. 2014) ...................................................................... 14

*Spataro v. Glenwood Supply*,
    2011 WL 13175928 (E.D.N.Y. Sept. 12, 2011) *report and recommendation*
    *adopted*, 2011 WL 13175954 (E.D.N.Y. Oct. 4, 2011), *aff'd*, 479 F. App'x 403
    (2d Cir. 2012) ................................................................................................ 14

*Staggers v. Otto Gerdau Co.*,
    359 F.2d 292 (2d Cir. 1966) .......................................................................... 13

*State Teachers Ret. Bd. v. Fluor Corp.*,
    654 F.3d 843 (2d Cir. 1981) ...................................................................... 14, 15

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
    921 F.2d 409 (2d Cir. 1990) .......................................................................... 13

*Urban Box Office Network, Inc. v. Interfase Managers, L.P.*,
    232 F.R.D. 169 (S.D.N.Y. 2004) .................................................................... 19

*Valentini v. Citigroup, Inc.*,
    2013 WL 4407065 (S.D.N.Y. Aug. 16, 2013) ................................................ 19

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011) .......................................................................... 12

## **Rules**

Fed. R. Bankr. P. 7015 ............................................................................................ 12

Fed. R. Civ. P. 15 ................................................................................................... 12

## **Treatises**

Wright & Miller, Fed. Prac. & Proc. § 1488 (3d ed. 2019) ...................................... 18

Pursuant to Federal Rule of Civil Procedure 15, which applies to these adversary proceedings per Federal Rule of Bankruptcy Procedure 7015, Kenneth M. Krys and Greig Mitchell (the "Liquidators"), in their capacities as the duly appointed Liquidators and Foreign Representatives of Fairfield Sentry Limited (In Liquidation) ("Sentry"), Fairfield Sigma Limited (In Liquidation) ("Sigma"), and Fairfield Lambda Limited (In Liquidation) ("Lambda" and, together with Sentry and Sigma, the "Funds") in these consolidated adversary proceedings (the "U.S. Redeemer Actions"), respectfully seek leave to amend their complaints in 17 actions.[1] The Liquidators seek to meet the new constructive trust requirements announced by Judge Bernstein in his December 6, 2018 decision, *In re Fairfield Sentry Ltd.*, 596 B.R. 275 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*") (Dkt. 1743) by amending their constructive trust claims to supplement or add individualized allegations of Defendants' knowledge of the falsity of the Funds' Net Asset Values.[2] The Liquidators first sought leave to amend their complaints in these 17 actions, along with 12 other actions, in January 2020; Judge Bernstein held that motion in abeyance and subsequently denied Defendants' second-round motions to dismiss the constructive trust claims as barred by 11 U.S.C. § 546(e)'s safe harbor provision. *See In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *9–10 (Bankr. S.D.N.Y. Dec. 14, 2020) (Dkt. 3046), *reconsideration denied*, 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) (Dkt. 3080) (together, "*Fairfield III*"). At this Court's direction, *see* Apr. 26, 2021 Order (Dkt. 3616 at 3), the Liquidators now renew their motion for leave to amend their complaints in 17 actions to address the constructive trust claims.

---

[1] A schedule of the 17 relevant actions is filed as Exhibit 1 to the May 14, 2021 Declaration of David Elsberg ISO Motion ("Elsberg Decl."). All terms are defined herein.

[2] Unless otherwise noted, docket citations refer to the consolidated adversary proceeding docket, *Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.*, No. 10-ap-03496 (CGM) (Bankr. S.D.N.Y.), and page citations refer to ECF pagination.

1

Per the Court's guidance, *see* Elsberg Decl. Ex. 2 (Tr. 38:23–40:23), and the parties' agreement, *see id.* Ex. 3, the Liquidators do not address here why the amendments are not futile, as the parties will brief that issue in a future motion to dismiss.

## **PRELIMINARY STATEMENT**

For decades, Bernard L. Madoff ran the largest Ponzi scheme in history. Its collapse left relative winners and losers in its wake. Investors like Defendants, who redeemed their shares in the Funds before Madoff's fraud was revealed to the world, received a windfall; investors who did not redeem in time lost all or most of their investments. That outcome was not just a matter of luck—some of those "winners" <u>knew</u> when cashing out that the Funds' Net Asset Values ("<u>NAV</u>"), on which the redemption payments were based, were inflated. The Liquidators seek to recover from those who received overpayments in bad faith so that the Liquidators may equitably distribute the money to the Funds' stakeholders as part of the foreign main liquidation proceedings in the British Virgin Islands ("<u>BVI</u>") courts.

Pursuant to stipulated orders so-ordered by Judge Bernstein in 2019, the Liquidators now seek leave to amend their complaints. The proposed amendments add "knowledge" allegations that satisfy the legal standard articulated in *Fairfield II*, in which Judge Bernstein held for the first time that the Liquidators may assert constructive trust claims against <u>only</u> those Defendants who knew the calculation of the Funds' assets was incorrect at the time they redeemed their shares (each a "<u>Knowledge Defendant</u>" and, collectively, the "<u>Knowledge Defendants</u>"). *See Fairfield II*, 596 B.R. at 297. The Liquidators seek to assert knowledge allegations against the BNP Defendants, as well as to supplement existing knowledge allegations against the remaining prior Knowledge Defendants.

In the so-ordered stipulations implementing *Fairfield II*, Defendants agreed that the Liquidators could seek leave to file such further proposed amended complaints with new factual

allegations (while reserving Defendants' right to oppose the amendments). Though the Liquidators had no obligation to do so, they honored Defendants' request to certify, on or before January 15, 2020, the completion of filing of the operative complaints.[3] Elsberg Decl. Exs. 4, 5. The Liquidators also worked diligently to prepare and file the further proposed amended complaints and a new motion for leave by the same date. The Liquidators did so despite the intervening death of their foreign law expert and despite the significant amount of diligence required to supplement or plead particularized knowledge and imputation allegations against more than 100 Defendants under the reasonable inquiry standard of Federal Rule of Civil Procedure 11(b).

The allegations in these further proposed amended complaints—before this Court now—easily meet the extremely liberal amendment standard of Rule 15. For most Defendants, the new allegations merely supplement and strengthen existing knowledge allegations that have been pending for at least five years; for the BNP Defendants, new allegations were expressly contemplated by the stipulated orders to which they agreed. Defendants cannot meet their burden to show that the proposed amendments are in bad faith or would cause unfair prejudice. Nor have the Liquidators delayed in seeking these amendments.

The proposed amendments are not subject to the "good cause" standard of Federal Rule of Civil Procedure 16. The Liquidators' amendments in each of the 17 actions were timely. The so-ordered stipulations in 10 of the 17 actions set no deadline whatsoever for motions for further leave

---

[3] As explained below in Part A of the Procedural Background, the operative complaints were those amended following a round of consolidated motion for leave and motion to dismiss briefing in 2016 and 2017.

to amend; in the remaining seven, the Liquidators met the agreed-upon deadlines.[4]  Even if the proposed amendments were subject to Rule 16 (and they are not), this Court should grant leave, given the Liquidators' diligence in preparing and filing the new amendments and the lack of prejudice to Defendants.  As Judge Bernstein recognized, a shareholder alleged to have received an inflated redemption payment in bad faith cannot keep that payment at the expense of innocent non-redeeming shareholders.  This Court should grant leave to amend.

## PROCEDURAL BACKGROUND

This motion arises from more than a decade-long effort by the Liquidators in this Chapter 15 proceeding (and elsewhere) to recoup assets for the victims of the largest Ponzi scheme in history, as discussed at length in *Fairfield II* and *Fairfield III*.  Through the U.S. Redeemer Actions, the Liquidators have sought to reclaim more than $6 billion in redemption payments made to Defendants, investors in the largest Madoff feeder fund, Sentry, and its "funds of funds," Sigma and Lambda.  *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *2 (Bankr. S.D.N.Y. Aug. 6, 2018) (Dkt. 1723 at 4–6).  The Liquidators originally asserted claims of unjust enrichment, mistaken payment, money had and received, and constructive trust.  They subsequently amended their complaints in certain actions to include avoidance claims for undervalue transactions and unfair preferences pursuant to the BVI Insolvency Act of 2003, *Fairfield II*, 596 B.R. at 289 (Dkt. 1743 at 6), claims for breach of contract and breach of the implied covenant of good faith and fair dealing, *see* July 19, 2012 Bench Ruling (Dkt. 799-2 at 3–4), and knowledge allegations— including individualized allegations—against the prior Knowledge Defendants.  Thus, knowledge

---

[4] The seven actions with a deadline pertained to the BNP Defendants and required that motions for further leave to amend be filed "no later than" the date on which the Liquidators certified completion of the filing of the operative complaints. *See infra* at Procedural Background, Part B.

allegations against most Knowledge Defendants have been pending for between five and nine years.[5]

As explained below, the Liquidators sought to amend their complaints in 2016 to add allegations concerning the bad faith of the Funds' administrator, <u>Citco</u> (defined below), whose bad faith tainted <u>all</u> Defendants' redemptions. Judge Bernstein held for the first time in 2018, however, that Citco's bad faith did not subject Defendants' redemptions to clawback; instead, he held that the Liquidators had to allege that <u>individual Defendants</u> (not Citco as administrator) knew the NAV was false when they redeemed their shares. *See Fairfield II*, 596 B.R. at 295–301 (Dkt. 1743 at 27–38). Given *Fairfield II*'s emphasis on individualized knowledge allegations, to the exclusion of Citco's bad faith, the Liquidators sought in their January 2020 motion for leave to amend (Dkt. 2873) to supplement or, in the case of the BNP Defendants, to add individualized allegations

---

[5] *See* July 24, 2012 Am. Compl. (Dkt. 36), *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank NA London, et al.*, No. 10-ap-03622 (CMG) (Bankr. S.D.N.Y.); July 21, 2012 Am. Compl. (Dkt. 29), *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Sec. Servs. (Lux.) SA, et al.*, No. 10-ap-03630 (CGM) (Banrk. S.D.N.Y.); July 21, 2012 Am. Compl. (Dkt. 27), *Fairfield Sentry Ltd. (In Liquidation), et al. v. HSBC Private Bank (Suisse) SA, et al.*, No. 10-ap-03633 (CGM) (Bankr. S.D.N.Y.); July 24, 2012 Am. Compl. (Dkt. 24), *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS AG N.Y., et al.*, No. 10-ap-03780 (CGM) (Bankr. S.D.N.Y.); July 24, 2012 Am. Compl. (Dkt. 11), *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Lux. SA, et al.*, No. 11-ap-01250 (CGM) (Bankr. S.D.N.Y.); Nov. 2, 2012 Am. Compl. (Dkt. 7), *Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch Int'l, et al.*, No. 11-ap-01463 (CGM) (Banrk. S.D.N.Y.); Jan. 14, 2013 Am. Compl. (Dkt. 8), *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citigroup Global Mkts. Ltd., et al.*, No. 11-ap-02770 (CGM) (Bankr. S.D.N.Y.); July 21, 2012 Am. Compl. (Dkt. 62), *Fairfield Sentry Ltd. (In Liquidation), et al. v. Zurich Capital Mkts. Co., et al.*, No. 10-ap-03634 (CGM) (Bankr. S.D.N.Y.).

Knowledge allegations against the Citco beneficial holders have been pled in proposed form since 2016. *See* Sept. 20, 2016 Not. of Prop. Am. Compl. (Dkt. 139), *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.*, No. 10-ap-03635 (CGM) (Bankr. S.D.N.Y.); Sept 20, 2016 Not. Prop. Am. Compl. (Dkt. 152) *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.*, No. 10-ap-03636 (CGM) (Bankr. S.D.N.Y.).

learned <u>after</u> they filed their prior complaints.  On this Court's order, the Liquidators renew that request now.

### A.    2016 Amendments & *Fairfield II*

In mid-2014, the Liquidators obtained evidence that the Funds' administrator, Citco Fund Services (Europe) B.V. (and later, Citco Fund Services Canada) (together, "<u>Citco</u>"), had calculated and certified the Funds' NAV in bad faith, Oct. 21, 2016 Mot. to Amend (Dkt. 933 at 7), making any corresponding redemption payments not binding for purposes of the Funds' Articles of Association, *see* Oct. 10, 2003 Articles (Dkt. 925-6 § 11(1)).  While the U.S. Redeemer Actions had been subject to a stay of proceedings since October 18, 2011, the Bankruptcy Court in 2016 let the Liquidators file a motion for leave to amend and proposed amended complaints reflecting factual and legal developments during the pendency of the stay.  July 27, 2016 Hearing Tr. 69:18-21 (Dkt. 906).  In 2016, the Liquidators accordingly sought leave to amend their complaints to allege Citco's bad faith, and Defendants opposed and moved to dismiss.  Oct. 21, 2016 Mot. to Amend (Dkt. 933 at 20–21, 31–34); Jan. 13, 2017 Notice of Mot. to Dismiss (Dkt. 959).

On December 6, 2018, Judge Bernstein held that, even if assumed true, the allegations in the 2016 proposed amended complaints detailing Citco's bad faith could not afford the Liquidators relief from the binding nature of the NAVs under BVI common law and contract law.[6]  *Fairfield II*, 596 B.R. at 295–302, 316 (Dkt. 1743 at 27–40, 65).  He thus denied the Liquidators leave to amend and dismissed those unamended claims, with an important exception relevant here—Judge Bernstein allowed the Liquidators to assert constructive trust claims against those Defendants who "knew the NAV was inflated at the time of redemption."  *Id.* at 295 (Dkt. 1743 at 27); *see also id.*

---

[6] There is no dispute that BVI law governs the substance of all claims.  *See Fairfield II*, 596 B.R. at 290 (Dkt. 1743 at 18).

at 297 (Dkt. 1743 at 31) ("The only exception allows the Liquidators to impose a constructive trust as to any Defendant who received a redemption payment and knew that the Fund's BLMIS [Bernard L. Madoff Investment Securities LLC] investments were worthless or nearly worthless."). In other words, the Liquidators could "revisit the redemption payment[s] on a restitutionary theory only by alleging "bad faith by the redeeming shareholder." *Id.* at 295 (Dkt. 1743 at 27); *id.* at 282 (Dkt. 1743 at 4) (the Liquidators may assert constructive trust claims "to the extent the pleading or proposed amendment adequately alleges that a particular Defendant knew that the [NAV] as calculated at the time of the redemption payment was mistaken because the Funds' investments with [BLMIS] were worthless or nearly worthless"); *id.* at 301 (Dkt. 1743 at 38) (same); *id.* at 316 (Dkt. 1743 at 65) (same).[7] Judge Bernstein directed the Liquidators "to settle or submit a consensual order consistent with th[e] [D]ecision in each adversary proceeding." *Id.* at 316 (Dkt. 1743 at 65).

Between April 2 and April 18, 2019, Judge Bernstein entered stipulated orders, or entered the parties' settled orders, in 300 of the 303 adversary proceedings.[8] The orders, which were the product of extensive negotiations between the parties, "permit[ed] Plaintiffs leave to amend to assert only … constructive trust claims against Knowledge Defendants" and proposed BVI avoidance claims and dismissed the remainder of the common law and contract claims. *See, e.g.*, Apr. 15, 2019 Stipulated Order (Dkt. 431 at 8 (¶ I.B)) ("Stipulated Order" and, collectively with all other such orders, the "Orders"), *Fairfield Sentry Ltd. (In Liquidation) v. ABN AMRO Schweiz*

---

[7] The Liquidators have appealed that portion of *Fairfield II* denying the motion for leave to amend and dismissing the remaining common law and contract claims. *Fairfield Sentry Ltd. (In Liquidation) et al. v. Citibank NA London*, No. 19-cv-03911 (VSB) (S.D.N.Y.) (Admin. Consolidated).

[8] The orders in the remaining three proceedings were filed on August 5, 2019. *See* Elsberg Decl. ¶ 3.

*AG,* No. 10-ap-03635 (CGM) (Bankr. S.D.N.Y.).[9]  Consistent with those Orders, the Liquidators

filed the operative complaints in each of the surviving actions, asserting only constructive trust

and BVI avoidance claims.  Although the Orders specified no fixed deadline for amendment, the

Liquidators completed the process by January 15, 2020, Elsberg Decl. Ex. 5, consistent with

Defendants' request, *see* Elsberg Decl. Ex. 4.

### B. Motion For Leave To File Further Proposed Amended Complaints, *Fairfield III*, And The Present Motion

In addition to providing for the filing of the operative complaints, each Order relevant here

stated that the Liquidators could move for leave to amend to add new factual allegations:  "To the

extent [the Liquidators] seek to further amend … [an] Amended Complaint <u>to add new factual</u>

<u>allegations</u>, [the Liquidators] shall file a motion for leave to amend attaching that proffered further

amended complaint."  *See, e.g.*, Stipulated Order at 9 (¶ I.E) (emphasis added).  Most of the Orders

also stated, as part of their recitals, that the Liquidators either "intend to seek leave to further

amend" (in the case of the relevant BNP Defendants) or "may seek further leave to amend" (in the

case of all other Orders except in the UBS actions).[10]  *See generally*, Elsberg Decl. Ex. 7.  Seven

Orders, applicable only to the BNP Defendants, provided that the Liquidators would file any

motions to amend no later than when they certified completing filing of their operative

---

[9] The Orders relevant here are those filed in the seventeen remaining pending actions.  *See* Elsberg Decl. Ex. 6.

[10] The Orders in the two UBS actions included the stipulation that the Liquidators "shall file a motion for leave to amend" to the extent they wish to further amend their complaints.  *See* April 15, 2019 Stipulated Order (Dkt. 82 at 7–8 (¶ I.E)), *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS AG N.Y., et al.*, No. 10-ap-03780 (CGM) (Bankr. S.D.N.Y.); April 2, 2019 Stipulated Order (Dkt. 64 at 7–8 (¶ I.E)), *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Europe SE*, No. 11-ap-01250 (CGM) (Bankr. S.D.N.Y.).

complaints—which the Liquidators did, filing their motion for leave on the same day that they certified that they had completed filing their operative complaints—on January 15, 2020.

The Liquidators worked diligently to further amend the complaints to supplement or add specific, individualized allegations of knowledge or imputation for each of the Knowledge Defendants—amounting to <u>more than 100 Defendants</u> in total across the remaining proceedings. Among other things, the Liquidators worked extensively with a new foreign law expert, who had to be brought up to speed after their prior expert, steeped in the nuances of this case, suddenly passed away in March 2019. The Liquidators also performed an extensive investigation to ensure that the new allegations were consistent with Rule 11(b)'s "reasonable inquiry" requirement.

As relevant here, the Liquidators' motion for leave to amend involved further proposed amended complaints in 17 actions against eight sets of Knowledge Defendants.[11] Those allegations demonstrate that the Knowledge Defendants accepted redemption payments from the Funds despite knowing, under BVI law, "that the NAV [upon which the redemption payments were based] was wrong." *Fairfield II*, 596 B.R. at 301 (Dkt. 1743 at 38).[12] These factual allegations, accepted as true, enable the Liquidators to recover, for equitable distribution among

---

[11] Those are: (1) the HSBC Defendants, (2) the UBS Defendants, (3) the BNP Defendants, (4) the Citibank Defendants, (5) the Merrill Lynch Defendants, (6) ZCM, (7) the Third-Party Beneficial Shareholders of the foregoing Defendants, and (8) the Beneficial Shareholders of the Citco Entities.

[12] The Liquidators initially sought leave to amend in 29 actions, comprising the 17 actions at issue here and 12 previously dismissed actions in which the Liquidators sought to add knowledge allegations for the first time. In August 2020, Judge Bernstein held the Bankruptcy Court was divested of jurisdiction over the latter 12 actions because constructive trust claims in those actions had been dismissed with prejudice and were pending on appeal before the District Court. *See In re Fairfield Sentry Ltd.*, 2020 WL 4813565, at *12 (Bankr. S.D.N.Y. Aug. 10, 2020) (Dkt. 3046 at 31). The Liquidators have noticed an appeal of the divestiture decision. *See, e.g.*, Mar. 29, 2021 Not. of Appeal (Dkt. 93), *Fairfield Sentry Ltd. (In Liquidation), et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al.*, No. 10-ap-03516 (CGM) (Bankr. S.D.N.Y.).

the Funds' creditors and non-redeeming shareholders, approximately $2.36 billion in redemption payments received by the Knowledge Defendants. *See* Elsberg Decl. Ex. 1.

A week after the Liquidators filed their motion for leave to amend in January 2020, Defendants filed a letter asking Judge Bernstein to preemptively deny the motion and to set a hearing. Jan. 22, 2020 Def.'s Ltr. (Dkt. 2874 at 13). After multiple conferences, Judge Bernstein held in abeyance briefing on the motion for leave to amend, pending Defendants' filing a motion to dismiss based on the Bankruptcy Code's safe harbor provisions and certain service issues. *See* Feb. 25, 2020 Tr. (Dkt. 2885 at 45:9–10); Mar. 19, 2020 Order (Dkt. 2926 at 5–6 (¶ 2(a)); Apr. 14, 2020 (Dkt. 3028 at 2 (¶ 1(a))). In December 2020, Judge Bernstein held that while 11 U.S.C. § 546(e)'s safe harbor provision barred the Liquidators' BVI avoidance claims, it did not bar their constructive trust claims. *See Fairfield III*, 2020 WL 7345988, at *5–10 (Dkt. 3062 at 12–24).[13] Accordingly, 18 actions remain pending before the Bankruptcy Court with live constructive trust claims— the 17 actions at issue here and an action against Citco. *See* Elsberg Decl. Ex. 1.

At the omnibus hearing before this Court on April 21, 2021, the Liquidators advised the Court of the pending motion for leave to amend filed in January 2020 in 17 of the 18 remaining actions, and the Court directed the Liquidators to "file a new motion to amend." *Id*. Ex. 2 (Tr. 32:13–14): *see also id.* at 35:14–16, 38:2–5, 43:4–5; Apr. 26, 2021 Order (Dkt. 3616 at 3). The Liquidators now seek leave to file further proposed amended complaints in these 17 actions against the Knowledge Defendants.

---

[13] Judge Bernstein also permitted alternative service on HSBC Suisse via service on its U.S. counsel, *see Fairfield III*, 2020 WL 7345988, at *10-15 (Dkt. 3062 at 24–35).

## **ARGUMENT**

This Court should grant the Liquidators leave to file their further proposed amended complaints.  Under Rule 15's liberal amendment standard, the Court should grant the motion unless Defendants can show bad faith or prejudice, or there was undue delay in the filing.  None of these elements exists here.  The Liquidators seek these amendments in good faith, based on *Fairfield II*'s change in pleading requirements for their constructive trust claims.  The amendments will not prejudice Defendants—this case is still at the pleading stage, discovery has not begun, the prior Knowledge Defendants have been subject to knowledge allegations for between five and nine years, and the BNP Defendants have been on notice they will be subject to knowledge allegations for four years.  And the Liquidators did not delay in seeking leave, particularly as (1) their foreign law expert, whose expertise was necessary in drafting the amendments, passed away just three months after Judge Bernstein issued *Fairfield II*, (2) the Liquidators needed to perform significant diligence to assert particularized knowledge and imputation allegations against more than 100 Defendants consistent with Rule 11(b), and (3) the Liquidators seek only to add new allegations to supplement existing claims.

Rule 16, which requires "good cause" to amend a scheduling order, cannot prevent the Court from granting the Liquidators' motion, because it does not apply.  Rule 16 does not apply where—as here—deadlines to amend pleadings have been met, or where scheduling orders are silent as to amendment deadlines.  Even if that standard did apply, moreover, it is easily satisfied by the Liquidators' diligence in seeking leave and the lack of any prejudice to Defendants.

## I.    **THE LIQUIDATORS ARE ENTITLED TO AMEND UNDER RULE 15'S LIBERAL AMENDMENT STANDARD**

The Court should permit the Liquidators to file the further proposed amended complaints under Rule 15.  Rule 15(a)(2) provides that a court "should freely give leave [to amend] when

justice so requires." Fed. R. Civ. P. 15(a)(2); *see also* Fed. R. Bankr. P. 7015. This "permissive

standard is consistent with [the Second Circuit's] strong preference for resolving disputes on the

merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (quotation omitted).

Leave to amend should be denied only "for good reason, including futility, bad faith, undue delay,

or undue prejudice to the opposing party." *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86,

98 (2d Cir. 2019).[14] While "the party opposing the amendment bears the burden of showing

prejudice [and] bad faith," "the party seeking to amend its pleading must explain any delay."

*Contrera v. Langer*, 314 F. Supp. 3d 562, 567 (S.D.N.Y. 2018) (quotation omitted). "The rule in

this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the

nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).

Defendants cannot show bad faith or prejudice, and there is no undue delay.

### A.    The Liquidators Move In Good Faith

The Liquidators move in good faith for leave to amend and the Defendants cannot meet

their burden of showing otherwise. If a defendant "asserts … bad faith, there must be something

more than mere delay or inadvertence for the court to refuse to allow the amendment." *Primetime*

*24 Joint Venture v. DirecTV, Inc.*, 2000 WL 426396, at *5 (S.D.N.Y. Apr. 20, 2000). For example,

courts have denied leave to amend where a movant knowingly sought to obtain an unfair advantage

over its opponent through the amendment. *See, e.g.*, *Evans v. Syracuse City Sch. Dist.*, 704 F.2d

44, 48 (2d Cir.1983) (refusing to allow defendant to amend answer to assert the defense of *res*

---

[14] At the direction of the Court, *see* Elsberg Decl. Ex. 2 (Tr. 40:20–23), and as agreed by the parties, *see id.* Ex. 3, the parties will not brief futility on this motion. Futility is evaluated under the Rule 12(b)(6) standard, which requires the Court to determine whether a proposed amended complaint would "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also* *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 456 (S.D.N.Y. 2016).

*judicata* where plaintiff's counsel was unaware of earlier state court decision, and defendant should have advised plaintiff's counsel before resources were spent on discovery); *see also State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 418 (2d Cir. 1990) (party seeking amendment gained strategic advantage—reducing the likelihood of dismissal for *forum non conveniens*—by not initially pleading foreign law). The Liquidators had no such motive. As detailed further *infra* at Section I.C., the Liquidators initially claimed that Citco's bad faith tainted all redemptions, implicating all Defendants on an omnibus basis. Only after Judge Bernstein rejected that theory and held instead that a constructive trust claim requires a showing that each individual Defendant received redemption payments in bad faith—*i.e.*, knew the redemption payments were inflated—did the Liquidators seek leave to further amend the complaints to meet that standard with new or expanded allegations of individual bad faith.

The Liquidators submitted their motion for leave to file the further proposed amended complaints in January 2020, approximately nine months after the Orders implementing *Fairfield III* were finalized and entered. The Liquidators prepared their motion and the underlying amendments expeditiously, despite the March 2019 passing of their BVI law expert, who had been deeply involved in the case for years, and despite the significant amount of diligence required to conclude that their new factual allegations had or were likely to have evidentiary support. *See Staggers v. Otto Gerdau Co.*, 359 F.2d 292, 297 (2d Cir. 1966) (finding "no hint of bad faith" where amendment to substitute plaintiff was proposed a year after original plaintiffs' death). In a showing of good faith, the Liquidators promptly retained a new foreign law expert, necessary to amend the complaints and oppose a then-upcoming second round of motion to dismiss briefing—both largely governed by foreign law. The Liquidators also conducted extensive diligence to ensure that the proposed amendments were consistent with their obligations under Rule 11(b)(3),

13

including an independent investigation based on publicly available information about what Defendants knew and, for purposes of imputation among groups of more than 100 Defendants, how Defendants were structured and how they shared information amongst subdivisions, departments, and affiliates.

### B.    The Proposed Amendments Will Not Prejudice Defendants

Defendants cannot carry their burden of showing that the proposed amendments would prejudice them.  Prejudice to the opposing party is "perhaps [the] most important" reason to deny leave to amend.  *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). "[C]omplaints of 'the time, effort and money … expended in litigating [the] matter,' without more, [do not] constitute prejudice sufficient to warrant denial of leave to amend." *Pasternack*, 863 F.3d at 174 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993)).  Rather, courts consider whether an amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial," or "(ii) significantly delay the resolution of the dispute." *Id*. (quoting *Block*, 988 F.2d at 350)).  Additionally, "[w]hether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to the undue prejudice analysis." *Agerbrink*, 155 F. Supp. 3d at 455.

*First*, the amendments would not require Defendants to expend <u>any</u>—much less "significant"—additional resources to conduct new discovery on top of discovery previously obtained, as merits discovery has not even begun. *See, e.g.*, *Spataro v. Glenwood Supply*, 2011 WL 13175928, at *7 (E.D.N.Y. Sept. 12, 2011), *report and recommendation adopted*, 2011 WL 13175954 (E.D.N.Y. Oct. 4, 2011), *aff'd*, 479 F. App'x 403 (2d Cir. 2012) ("In this case, discovery has not yet begun, and defendant has not answered plaintiff's complaints, so any delay resulting from an amended pleading would not cause defendant any prejudice."); *accord Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014) ("A court is more likely to find an

14

amendment prejudicial if discovery has closed."). Any contrary argument by Defendants would be purely speculative.

*Second*, the amendments will not delay the resolution of the dispute, which is "[o]ne of the most important considerations in determining whether amendment would be prejudicial." *Franco v. Ideal Mortg. Bankers, Ltd.*, 2009 WL 3150320, at *4 (E.D.N.Y. Sept. 28, 2009), *order aff'd, appeal dismissed*, 2009 WL 3756664 (E.D.N.Y. Nov. 3, 2009). In *Franco*, the court held there was no undue delay where neither depositions nor expert discovery had begun, and no trial date had been set. *Id.* Similarly, in *State Teachers*, the Second Circuit held the district court had abused its discretion by denying leave to amend when "[it] [wa]s not a case where the amendment came on the eve of trial and would result in new problems of proof." 654 F.2d at 856. Here, discovery has not yet begun and no trial date has been set, hence there can be no undue delay.

Nor can Defendants show that the proposed amendments would significantly extend the length of discovery when it eventually beings. In most pending actions, the Liquidators already make knowledge allegations,[15] which they simply seek to supplement. Those Defendants will be subject to discovery of their bad faith receipt of redemption payments regardless of whether this motion is granted. In the remaining cases, allowing new knowledge allegations will simply put those actions on a discovery track parallel to the other actions, causing no delay.

*Finally*, there is no undue prejudice where the proposed amendments "did not unfairly sur-prise" Defendants "or impede the fair prosecution of their" defenses. *Monahan v. NYC Dep't of*

---

[15] For example, the amended complaint as to HSBC Private Bank Suisse SA, No. 10-ap-03633, alleges that HSBC Suisse "was well aware of the indicia of fraud surrounding BLMIS," *see* Third Amended Complaint (Dkt. 86 at 30 (¶ 81)), *Fairfield Sentry Ltd. (In Liquidation) v. HSBC Private Bank Suisse SA*, No. 10-ap-03633 (CGM) (Bankr. S.D.N.Y. (Jan. 9, 2020)), including because of a 2001 HSBC Bank USA due diligence report on Sentry, *id.* at 31 (¶ 83), and KPMG reviews in 2006 and 2008, *id.* at 31-34 (¶¶ 85–91).

*Corrections*, 214 F.3d 275, 284 (2d Cir. 2000). The constructive trust claims arise from the same transaction as the claims in the original pleadings—receipt of falsely inflated redemption payments in connection with one of history's most notorious fraudulent schemes—which the parties have been litigating since 2010. Most Defendants, moreover, have known the gist of Liquidators' knowledge allegations for between five and nine years; the BNP Defendants have known for four years (or at the least since April 2019).[16] *See Block*, 988 F.2d at 350–51 (permitting defendants to amend to assert affirmative defense in motion for summary judgment four years after the complaint was filed because plaintiffs had knowledge of the facts giving rise to the defense).

Defendants cannot plausibly claim that these amendments are a surprise. They stipulated to substantially identical provisions in each Knowledge Action that, to the extent the Liquidators seek to further amend an initial proposed amended complaint to add new "factual allegations," the Liquidators "<u>shall file a motion for leave to amend</u> attaching that proffered further amended complaint." *See, e.g.*, Stipulated Order at 9 (¶ I.E) (emphasis added); *see generally* Elsberg Decl. Ex. 7. An overwhelming majority of those Defendants also recognized, as part of their recitals, that the Liquidators either "intend to" or "may seek further leave to amend."[17] Stipulated Order at 7 (Recitals). The Orders that prior Knowledge Defendants signed did not specify a deadline for the Liquidators to move for leave; to the contrary, the Liquidators later stipulated with Defendants

---

[16] BNP Defendants have been on notice that knowledge allegations might be forthcoming since at least 2017, when such allegations were made against them in the *Picard* litigation. *See, e.g.*, Aug. 30, 2017 Am. Compl. (Dkt. 100), *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Inv. Secs. LLC v. BNP Paribas S.A., et al.*, No. 12-ap-01576 (CGM) (Bankr. S.D.N.Y.).

[17] Again, even the Orders for the two UBS actions stipulate that the Liquidators "shall file a motion for leave to amend" to the extent they wish to add factual allegations. *See* Stipulated Order (Dkt. 82 at 7–8 (¶ I.E.), *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS AG N.Y., et al.*, No. 10-ap-03780 (CGM) (Bankr. S.D.N.Y. Apr. 15, 2019); Stipulated Order (Dkt. 64 at 7–8 (¶ I.E.), *Fairfield Sentry Ltd. (In Liquidation), et al. v. UBS Europe SE*, No. 11-ap-01250 (CGM) (Bankr. S.D.N.Y. Apr. 2, 2019).

to file amended complaints by January 15, 2020, Elsberg Decl. Ex. 4, and the Liquidators met that deadline,  Elsberg Decl. Ex.  5.

### C.    The Liquidators Promptly Sought Leave To Amend

The Liquidators moved promptly by seeking leave to amend in January 2020.  "[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent," Wright & Miller, Fed. Prac. & Proc. § 1488 (3d ed. 2021), and "[a]n intervening change in pleading standards may justify leave to amend," *In re Bernard L. Madoff Inv. Sec. LLC*, 560 B.R. 208, 221 (Bankr. S.D.N.Y. 2016).  The Liquidators initially focused more heavily on Citco's bad faith, which spanned all actions, supporting claims that all redemptions were tainted and subject to clawback.  In *Fairfield II*, Judge Bernstein changed the pleading requirements and required the Liquidators to plead the knowledge of <u>specific</u> Defendants.  Courts have permitted amendments in similar circumstances.  *See, e.g.*, *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) (affirming grant of leave where "principal issue … changed several times during the four years of litigation" and any "tardiness may well have been due to … uncertainty as to what issue to focus on"); *Phoenix Light SF Ltd. v. HSBC Bank USA, Nat'l Ass'n*, 2021 WL 568080, at *2 (S.D.N.Y. Feb. 16, 2021) ("Although HSBC did not move to amend for several years, it explained the delay, including: to conform its defenses to the evidence uncovered throughout discovery[,] and to present a defense raised in a parallel RMBS case."); *Abbatiello v. Monsanto Co.*, 571 F. Supp. 2d 548, 552-53 (S.D.N.Y. 2008) (no undue delay in suit over land contamination where plaintiffs "initially focused on PCBs because of the known health and environmental risks" and presence in defendant's plant, but, after discussions with potential experts, acquired a better understanding of additional contaminants to allege); *cf. Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 98 (S.D.N.Y. 2010) ("A change in litigation strategy is a legitimate reason for seeking

17

to amend a pleading … as is the correction of potential deficiencies in the complaint." (citations omitted)).

Defendants cannot credibly argue that the Liquidators delayed in moving for leave to amend after *Fairfield II*. "Simply alleging that the plaintiff could have moved to amend earlier than she did … is insufficient to demonstrate undue delay," and "mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Agerbrink*, 155 F. Supp. 3d at 452, 452-53 (quotation marks and alterations omitted). After *Fairfield II*, the Liquidators worked diligently to prepare and file 29 particularized further proposed amended complaints against over 100 Defendants—including the 17 actions now the subject of this Motion—within nine months of the Orders permitting them, despite the intervening, untimely death of their integral foreign law expert and the significant diligence required to do so.

Even if there had been delay (there was none), "delay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice." *Pasternack*, 863 F.3d at 174; *see also Duling*, 265 F.R.D. at 97–98 ("Although some explanation must be provided to excuse a delay, even vague or 'thin' reasons are sufficient, in the absence of prejudice or bad faith." (alteration in original) (citations omitted)); *Agerbrink*, 155 F. Supp. 3d at 453 (no undue delay in an employment class action where plaintiff waited until "after [a Declaratory Judgment Act] claim was dismissed" to assert an unjust enrichment claim since an earlier amendment "would have potentially complicated" the prior claim and the decision to bring the new claim was "the logical outgrowth of … counsel's independent investigation"). Courts have thus allowed amendments where plaintiffs waited much longer before amending than Liquidators did here. *See, e.g.*, *Rachman*, 46 F.3d at 235 (affirming grant of leave to amend answer after interval of four years, despite unclear reasons for delay, where non-movant did not argue prejudice or bad faith);

18

*Agerbrink*, 155 F. Supp. 3d at 452–55, 461 (granting leave to amend after interval of between <u>10 and 13 months</u>, and while discovery was already underway); *see also id.* at 453 (collecting cases and citing, *e.g.*, *Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases where leave to amend was granted <u>two to five years</u> after filing of original pleadings, and where parties sought leave "to assert new claims long after they acquired the facts necessary to support those claims")); *Valentini v. Citigroup, Inc.*, No. 11-cv-1355 (JMF), 2013 WL 4407065, at *7, *9 (S.D.N.Y. Aug. 16, 2013) (delay of <u>18 months</u> "insufficient ground to warrant denial," though discovery was already ongoing, where non-movant "failed to establish bad faith or undue prejudice"). And even if the Liquidators had delayed seeking leave to amend (they did not), "the relevant question to determine undue delay under Rule 15(a)(2) is not how much time has elapsed since the complaint was filed, but how much remains before the Court evaluates its merits," *Phoenix Light SF Ltd.*, 2021 WL 568080, at *2, and these cases remain at the pleadings stage.

Defendants also cannot show undue delay where, as here, the Liquidators' proposed amendments will merely add factual allegations against the Knowledge Defendants who were previously the subject of constructive trust claims, *see Abbatiello*, 571 F. Supp. 2d at 553 (no undue delay, including because "[p]laintiffs do not seek to add new claims"); where "essentially no discovery has been undertaken," *Pasternack*, 863 F.3d at 174; where despite prior briefing, the "proposed amended complaint would be the first complaint to be considered after the district court decided a motion to dismiss," *id.*; and where, as discussed in Sections II.A. and II.B., there can be

no "allegation of untimeliness based on a scheduling order," *id.* (vacating denial of leave to amend for undue delay).[18]

## II.    RULE 16 DOES NOT BAR THE LIQUIDATORS' AMENDMENTS

Rule 16(b)'s "good cause" standard, under which "a schedule may be modified only for good cause and with the judge's consent," does not apply in any of the actions.  In the BNP Defendant actions, the Liquidators met the deadlines set forth in the agreed Orders by filing their prior motion for leave to amend on the same day as certifying completion of filing the operative complaints.  In the remaining actions, there was no deadline to amend, so the Liquidators could not have missed it.  Even if Rule 16 did apply, moreover, the Liquidators acted diligently under the circumstances, and Defendants would not be prejudiced by the amendments.

### A.    Rule 16 Does Not Apply To The BNP Defendant Actions Because The Liquidators Complied With All Relevant Deadlines

Rule 16 is inapplicable where, as in the BNP Defendant actions, Plaintiffs <u>complied</u> with deadlines contained in the relevant Orders to file a further motion for leave.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) ("Rule 16(b) also may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings <u>has passed</u>." (emphasis added)).  The relevant Orders in each of the BNP Defendant actions provided: "to the extent Plaintiffs seek to further amend the Proposed Amended Complaint … Plaintiffs shall file a motion for leave to amend … no later than the date on which

---

[18] Given that the Liquidators did not delay in moving to file the further proposed amended complaints, there clearly has been no "inordinate delay."  *See Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 232 F.R.D. 169, 172 (S.D.N.Y. 2004) (no inordinate delay despite three years of litigation and lapsed amendment deadline, where intervening jurisdictional challenge, motions to dismiss, and settlement discussions took priority).  But even inordinate delay without a satisfactory explanation is insufficient grounds on which to deny a motion for leave unless, unlike here, *see supra* Section I.B., the amendment would prejudice other parties.  *See Agerbrink*, 155 F. Supp. 3d at 453.

Plaintiffs provide written notice that they have served [the operative] complaints on each [relevant] Consolidated Defendant …." *See, e.g.*, Aug. 2, 2019 Stipulated Order (Dkt. 49 at 10 (¶ II.E) *Fairfield Sentry Ltd. (In Liquidation), et al. v. BGL BNP Paribas S.A., et al.*, No. 10-ap-03626 (CGM) (Bankr. S.D.N.Y.). Plaintiffs certified completion of service of those operative complaints to Defendants on January 15, 2020, *see* Elsberg Decl. Ex. 5, and filed a motion for leave to amend on the same day, *see* Dkt. 2873. As no deadline to amend passed for the BNP Defendant actions, *see Kasner*, 496 F.3d at 243, Rule 16 cannot bar the Liquidators' amendments in those cases.[19]

### B.    Rule 16 Does Not Apply To The Prior Knowledge Defendant Actions Because The Relevant Scheduling Orders Have No Relevant Deadline

District courts in this Circuit have consistently held that Rule 16 does not apply where a scheduling order does not contain a deadline. In *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, for example, the court held that Rule 16(b) did not apply because the "scheduling order did not set any deadline for amending the pleadings," and that the motion for leave was accordingly governed by Rule 15(a). 2015 WL 9412925, at *3 (S.D.N.Y. Dec. 22, 2015). Similarly, in *Mendez v. Pizza on Stone, LLC*, the court declined to apply Rule 16(b)'s good cause standard where "[t]he Court did not set a deadline for amendment of pleadings in the only Rule 16(b) scheduling order in th[e] case." 2012 WL 3133522, at *2 n.6 (S.D.N.Y. Aug. 1, 2012). And in *Lazo v. Queens Health Food Emporium Inc.*, the district court affirmed a magistrate holding that Rule 16 did not apply because "the case management plan … did not contain an agreed-to-deadline for filing amended pleadings," finding "this fact dispositive of [d]efendants' claim that [p]laintiffs must show good cause." 2012 WL 2357564, at *3 (E.D.N.Y. June 20, 2012); *see also N. Assur. Co. of*

---

[19] In their January 22, 2020 letter, Defendants tacitly conceded as much by challenging the motion for leave to amend as to BNP Defendants under <u>only</u> a Rule 15 analysis, and not a Rule 16 analysis. *See* Def.'s Jan. 22, 2020 Ltr. (Dkt. 2874 at 5 n.15).

*Am. v. Ne. Marine, Inc.*, 2013 WL 587089, at *4 (S.D.N.Y. Feb. 11, 2013) (implicitly finding Rule 16(b) inapplicable, where "the scheduling order did not impose a deadline for pleading amendments").

The relevant Orders in the prior Knowledge Defendant Actions set no deadline for further motions to amend—even as they explicitly acknowledge that the Liquidators might make such motions. *See, e.g.*, Stipulated Order at 5 ("Whereas, Plaintiffs have represented to Moving Defendants that Plaintiffs may seek further leave to amend to add allegations against certain Defendants."); *see also id.* at 7 (¶ I.E) ("To the extent Plaintiffs seek to further amend the Proposed Amended Complaint to add new factual allegations, Plaintiffs shall file a motion for leave to amend attaching that proffered further amended complaint."). Rule 16 thus does not apply. *See In re Term Commodities Cotton Futures Litig.*, 2018 WL 1737706, at *10 (S.D.N.Y. Feb. 28, 2018) ("[W]here a scheduling order has been entered but did not mention amendments to the pleadings let alone impose any deadlines for filing amended pleadings, and the record does not contain any indication that the Court or the parties understood that the pleadings would not be amended further, Rule 16(b) is not implicated.").

The only exception to this general rule also does not apply. "[C]ourts within the Second Circuit have applied Rule 16 to motions to amend, even though the scheduling orders were silent as to amendments … where the record contains some indication that the court and the parties understood that the pleadings would not be further amended." *Point 4 Data Corp. v. Tri-State Surgical Supply & Equipment, Ltd.*, 2012 WL 2458060, at *5 (E.D.N.Y. June 27, 2012); *see also id.* at *6 ("[W]here, as here, the parties convey to the court that there will be no further amendments after the court's case-management conference, Rule 16's 'good cause' standard applies even though the resulting scheduling order does not specifically contain a deadline for amending the

22

pleadings."). The Orders here indicate the <u>opposite</u>: they expressly contemplate the filing of further proposed amended complaints along with a motion for leave to amend. *See, e.g.*, Stipulated Order at 5, 7 (¶ I.E.).

### C. Even If Rule 16 Did Apply, Liquidators Satisfy The "Good Cause" Standard

Even if Rule 16(b)'s good cause standard applied (it does not), the Liquidators easily satisfy that standard. "The determination of whether 'good cause' exists under Rule 16(b) largely turns on the diligence of the moving party." *Kleeberg v. Eber*, 331 F.R.D. 302, 314 (S.D.N.Y. 2019). Specifically, a moving party must show that "despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Id.* (quoting *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)). Courts may also consider, in their discretion, other factors such as whether "allowing the amendment … will prejudice defendants." *Kassner*, 496 F.3d at 244.

As described *supra* Sections I.A and I.C., after *Fairfield II* set new pleading requirements for constructive trust claims, the Liquidators diligently worked to ready 29 particularized amended complaints—including the 17 complaints currently at issue—to address that new standard in a manner consistent with Rule 11(b) by making specific and individualized knowledge and imputation allegations against more than 100 Defendants. And after their expert's untimely death three months after *Fairfield II*, the Liquidators also quickly retained a new expert, whose foreign law expertise was necessary for the Liquidators to prepare their amendments—as the "knowledge" standard set forth in *Fairfield II* arises under foreign law. Despite the significant amount of work, the Liquidators completed filing the further proposed amended complaints just nine months after the Orders permitting such amendments were entered. "[A] nine-month period between the [event predicating amendment] and the motion to amend is not unreasonable to allow for further investigation by plaintiff before making the motion." *Moroughan v. County of Suffolk*, 99 F. Supp.

23

3d 317, 324 (E.D.N.Y. 2015) (holding that amendment satisfied Rule 16). And because the amendments will not lead to Defendants expending significant additional resources, would not delay the resolution of this case, and come as no surprise to Defendants, Defendants cannot show any prejudice, let alone prejudice sufficient to preclude a finding of "good cause." *Supra* Section I.B.

## CONCLUSION

For the foregoing reasons, the Liquidators respectfully request that the Court grant leave to the Liquidators to file the further proposed amended complaints, in substantially the form as appended to the Elsberg Declaration accompanying this motion.

Dated:    New York, NY
          May 14, 2021

Respectfully submitted,

SELENDY & GAY PLLC


By:    /s/ *David Elsberg*
       _____
       SELENDY & GAY PLLC

       David Elsberg
       Lena Konanova
       Jordan Garman
       Ester Murdukhayeva
       Ronald Krock
       1290 Avenue of the Americas
       New York, NY 10104
       Telephone: 212-390-9000
       delsberg@selendygay.com
       lkonanova@selendygay.com
       jgarman@selendygay.com
       emurdukhayeva@selendygay.com
       rkrock@selendygay.com

       -and-

       BROWN RUDNICK LLP

       David J. Molton
       Marek P. Krzyzowski
       Seven Times Square
       New York, NY 10036
       Telephone: 212-209-4800
       dmolton@brownrudnick.com
       mkrzyzowski@brownrudnick.com

       *Attorneys for Plaintiffs Foreign Representatives*