Hearing Date and Time: August 18, 2021 at 10:00 a.m. EDT
Objection Deadline: July 26, 2021

JENNER & BLOCK LLP
Richard Levin
Carl N. Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600

*Attorneys for Unifortune Conservative Side Pocket (not a juridical entity)*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LIMITED (IN LIQUIDATION) and FAIRFIELD SIGMA LIMITED (IN LIQUIDATION), acting by and through the Foreign Representatives thereof,<br><br>Plaintiffs,<br><br>v.<br><br>ABN AMRO SCHWEIZ AG A/K/A ABN AMRO (SWITZERLAND) AG, et al.,<br><br>Defendants. | Adv. Proc. No. 10-3635 (CGM)<br>Adv. Proc. No. 10-3636 (CGM) |
| This document is also being filed in the lead adversary proceeding, Fairfield Sentry Ltd. (in Liquidation), et al. v. Theodoor GGC Amsterdam, et al., Adv. Pro. No. 10-03496. | |

**DEFENDANT UNIFORTUNE CONSERVATIVE SIDE POCKET'S
MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS;
<u>MEMORANDUM IN SUPPORT THEREOF</u>**

Unifortune Conservative Side Pocket ("**Side Pocket**") moves for an order dismissing the complaint against Side Pocket in this adversary proceeding under Rules 4(f), 4(m), and 12(b)(5) of the Federal Rules of Civil Procedure ("**Civil Rules**"), made applicable to this adversary proceeding by Rules 7004 and 7012 of the Federal Rules of Bankruptcy Procedure

("**Bankruptcy Rules**"), for insufficient service of process. In the nearly 11 years since the Plaintiffs filed this adversary proceeding, they have not complied with the requirements of Rule 4(f), despite having access to information in their own books and records and information from the Defendant that would have permitted them to do so. Accordingly, the complaint against Side Pocket should be dismissed.

## BACKGROUND

The Fairfield Liquidators named "Allianzbank SPA/Unifortune Conservative Side Pocket" as a defendant in these adversary proceedings. "Allianzbank SPA/Unifortune Conservative Side Pocket" is not a single entity, but rather appears to be a combination of the name of an Allianz Bank affiliate and Side Pocket. Side Pocket is an Italian investment fund created in February 2009—after the revelation of the fraud of Bernard L. Madoff Investment Securities ("**BLMIS**")—and licensed by the Bank of Italy to receive and liquidate certain illiquid assets held by Unifortune Conservative Fund, not including any investments in any Fairfield fund. As such, it never invested in any Fairfield fund, never received any redemption payments, and never signed a Fairfield Subscription Agreement. Under Italian law, Side Pocket is not a juridical entity with capacity to sue and be sued. Under Bank of Italy regulations, Side Pocket was dissolved in November 2015, six years after its creation.

Consistent with their pleadings, apparently relying on the provision in the standard Fairfield Subscription Agreement that permits service by international registered mail, and according to the certificate of service they filed, the Liquidators served the summons and complaint by international registered mail on October 20, 2010 (in Adv. No. 10-3635) and October 21, 2010 (in Adv. No. 10-3636) on "Allianzbank SPA/Unifortune Conservative Side Pocket" at three addresses, none of which were Side Pocket's address. (Adv. No. 10-3635, ECF 54; Adv. No. 10-3636, ECF 53.) On January 26 and May 10, 2011 (in Adv. 10-3635) and on February 4 and May 10, 2011 (in Adv. 10-3636), they again served the summons and

2

complaint on the same named defendant, but this time added the correct address for Side Pocket: Via Donizetti 53, Milan, Italy. (Adv. No. 10-3635, ECF 78, 91; Adv. No. 10-3636, ECF 80, 92.) However, according to the best information that counsel for Side Pocket has been able to obtain, Side Pocket never received the documents and intends to seek discovery from the Liquidators of proof of mailing and of a signed return receipt. Rather, Side Pocket did not learn of the litigation until July 2012 as a result of a communication from an affiliate of Allianz Bank, with whom they were combined as a defendant.

Counsel for Side Pocket has informed counsel for the Liquidators on several occasions, beginning in January 2017, of the misnaming of the defendants and that Side Pocket is not a juridical entity. Liquidators' counsel's response to the advice was to blame the error "on the records of the [Fairfield] Funds," and to reserve the right "to revise the caption in the event discovery reveals information contrary to the Funds [sic] records." (Adv. No. 10-3635, ECF 292 at 1-2; Adv. No. 10-3636, ECF 321 at 1-2 ("**Mem. Opp.**").) In the 10+ years since the Liquidators filed this action against "Allianzbank SPA/Unifortune Conservative Side Pocket" and in the 4+ years since they were formally advised of Side Pocket's legal status, they have taken no apparent steps, not even an informal request to Side Pocket's counsel, to determine which entity might be a proper defendant, to correct their pleading or to effect any other form of service of process on Side Pocket, despite filing or proposing several amended complaints relating to other matters, including the "Further Proposed Amended Complaint" filed one week ago [Adv. 10-3635, ECF 559; Adv. 10-3636, ECF 617].

Determining a proper defendant from the Fairfield Funds' records, which the Liquidators control, and from documents filed in these adversary proceedings should not have been difficult. The BLMIS trustee reached an agreement with the Liquidators, which was approved by this court, that provided for the BLMIS to have "reasonable access to the other's documents, data, and other information relating to, or benefit in the pursuit of" subsequent

3

transferee claims, such as the only at issue in this adversary proceeding. *Picard v. Fairfield Sentry Ltd. (In re Bernard L. Madoff Inv. Secs. LLC)*, Adv. No. 09-1239 (Bankr. S.D.N.Y.), ECF 69-2 (Agreement) ¶ 14 at 14; *see id.*, ECF 95 (Order Approving Agreement). Apparently relying on the Fairfield books and records, including its share register, which the Liquidators maintain, the BLMIS trustee was able to identify the fund that invested with Fairfield and the asset manager that signed the Subscription Agreement and brought an action to recover redemption payments made by Fairfield funds. The BLMIS trustee filed that action on August 25, 2011, almost 10 years ago. *Picard v. Unifortune Asset Management SGR SPA (In re Bernard L. Madoff Inv. Secs. LLC)*, Adv. No. 11-02553 (Bankr. S.D.N.Y.), ECF 1.

In addition, Allianz Bank Financial Advisors SpA filed a Notice of Appearance in these adversary proceedings on June 8, 2012, which entered "an appearance as counsel in this action for Allianz Bank Financial Advisors SpA ('Allianz Bank'), improperly sued as 'Allianzbank SPA/Unifortune Conservative Side Pocket'" (a non-existent entity)." (Adv. No. 10-3635, ECF 117 at 2; Adv. No. 10-3636, ECF 118 at 2.) Although the Liquidators' First Amended Complaint and Second Amended Complaint were filed before the BLMIS trustee filed his complaint, the Liquidators' Third Amended Complaint was filed on July 20, 2012, after the BLMIS trustee had filed his complaint naming the correct defendants and after Allianz had filed its Notice of Appearance calling out the incorrect naming of the defendants and the nonexistence of Side Pocket as a juridical entity. Nevertheless, the Third Amended Complaint did not propose an amendment to the names.

Nor did the proposed Fourth Amended Complaint filed on September 20, 2016. Nor did the second proposed Fourth Amended Complaint filed on January 9, 2020, nor the Further Proposed Amended Complaint filed on May 14, 2021, despite:

(1) the documents described above;

4

    (2) the filing, by Side Pocket's counsel on January 20 and 23, 2017, of a Notice of Appearance and a Corporate Ownership Statement, which was Side Pocket's first appearance in the case and which both stated Side Pocket is not an entity capable of being sued, (Adv. No. 10-3635, ECF 188, 192; Adv. No. 10-3636, ECF 210, 215); and

    (3) the filing, by Side Pocket on January 27, 2017, of its *Supplemental Memorandum Of Law In Opposition To Plaintiffs' Motion For Leave To Amend* (Adv. No. 10-3635, ECF 221; Adv. No. 10-3636, ECF 248), which stated:

> The Liquidators have purported to name as a defendant the nonexistent defendant "Allianzbank SPA/Unifortune Conservative Side Pocket." Unifortune Conservative Side Pocket was a fund formed under the laws of Italy and not a juridical entity having the capacity to be sued. It was closed on November 20, 2015, and while extant, was unaffiliated with any entity named Allianzbank SPA.

*Id.* at 2 (citation omitted).

In response to these multiple notifications that the Liquidators had sued a non-existent "joint" entity and, even when separated, two entities that were misnamed and one not capable of being sued, the Liquidators took no action. In their opposition to Side Pocket's Supplemental Memorandum, the Liquidators brushed off the information:

> the allegations in the Proposed Amended Complaint are based, in part, on the records of the Funds. The Liquidators reserve their right to revise the caption and its complaint in the event discovery reveals information contrary to that in the Funds' records, such as a misnaming of the subject party defendant.

Mem. Opp. at 2 (citation omitted). They had information, in documents filed with this Court, directly contrary to their reading of the Fairfield Funds' records and directly contrary to the BLMIS trustee's reading of the same records. They did nothing about it.

Based on this record, this Court should dismiss this adversary proceeding under Bankruptcy Rule 7012 (applying Civil Rule 12(b)(5)), and under Bankruptcy Rule 7004 (applying Civil Rules 4(f) and 4(m)) for insufficient service of process.

5

## ARGUMENT

### I. The Liquidators' Claimed Service of Process Was Insufficient

#### A. Legal Standards

Sufficient service must occur before a federal court obtains jurisdiction over a defendant. *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006). Civil Rule 4 governs whether service was sufficient. The plaintiff has the burden to show sufficient service when a defendant challenges service. *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Rule 4(m) provides for dismissal of an action when the defendant has not been served within 90 days after the filing of the complaint, except the Rule does not apply to service in a foreign country under Rule 4(f).

Although the mandatory dismissal provisions of Rule 4(m) do not apply to service on a foreign defendant, the amount of time for service is not unlimited. Moore's Federal Practice - Civil ¶ 4.84 (2021). Rather, the court must "use a flexible due diligence standard to determine whether service was timely." *In re Bozel S.A.*, No. 16-v-3739, 2017 WL 3175606, at *2 (S.D.N.Y. July 25, 2017) (citations and internal quotation marks omitted). As with showing sufficient service of process in general, the plaintiff has the burden of proving the timely exercise of due diligence. *Id.; Lozano v. Bosdet*, 693 F.3d 485 (5th Cir. 2012); *Harris v. Orange S.A.*, 636 F. App'x 476 (11th Cir. 2015); *but see Usha (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129 (2d Cir. 2005) (dismissal is mandatory if plaintiff did not attempt service within the 90-day period).

Civil Rule 12(b)(5) permits a motion for dismissal for "insufficient service of process." Bankruptcy Rule 7004 governs service of process. It makes Civil Rule 4(e)–(j), (*l*), and (m) applicable in an adversary proceeding. Under Rule 4(h)(2), service upon a defendant that is a corporation, partnership, or unincorporated association and that is not within the United

6

States must be made "in any manner prescribed by Rule 4(f) for serving an individual." Rule 4(f) provides three alternatives:

> (1) by any internationally agreed means of service that is reasonably calculated to give note, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request;
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (i) [not applicable, per Rule 4(h)(2)];
>>>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

### B. The Liquidators Did Not Properly Serve Side Pocket

In this case, the Liquidators do not claim to have effected service under the Hague Convention or any other internationally agreed means of service (Rule 4(f)(1)), in response to a letter rogatory or letter of request (Rule 4(f)(2)(B)), or through mail that the clerk of the court has addressed and sent (Rule 4(f)(2)(C)(ii)). They do not claim to have effected service under Rule 4(f)(3), which requires prior court approval of the method of service. *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 750–751 (11th Cir. 2016); *Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004); *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164 (SMB), 2020 WL 7345988, at *11 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"). Nor do they claim to have received such approval. Accordingly, whether service was proper must be measured by the defendant's

7

consent to a different form of service or under Rule 4(f)(2)(A) (as prescribed for service in that country in its own courts).

The only basis on which the Liquidators might claim the defendant's consent is under the Subscription Agreement, which authorizes service by international registered mail. However, this court has rejected such reliance, holding that the Subscription Agreement does not apply to this proceeding. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164 (SMB), 2018 WL 3756343, at *10-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"). Moreover, as noted above, this defendant, Side Pocket, did not sign a Fairfield Subscription Agreement, so that method of service would be unavailable in any event.

That leaves only Rule 4(f)(2)(A), which permits service "as prescribed by the foreign country's law for service in that county in an action in its courts of general jurisdiction." That provision is limited to personal service, not service by international mail, registered or otherwise. *Brockmeyer v. May*, 383 F.3d 798, 806–08 (9th Cir. 2004). The Liquidators do not claim to have served by personal service.

Based on the foregoing, the purported service on Side Pocket in this adversary proceeding was insufficient.

### C. The Liquidators Have Not Shown Timely Exercise of Due Diligence

For the Liquidators to correct their defective service now, nearly 11 years after bringing this action, they must show they timely exercised due diligence in their efforts to serve the summons and complaint. Here, they had all the information they needed in Fairfield's books and records, which they possess and control, and were notified by Side Pocket of the deficiency.

This case is similar to *Zapata v. City of New York*, 502 F.3d 192, 196-97 (2d Cir. 2007), in which the Second Circuit affirmed the district court's dismissal for failure to timely serve

8

process because of the plaintiff's lack of due diligence. The plaintiff claimed that he did not have information about one defendant sufficient to permit proper service. But the record showed the other defendant had timely informed the plaintiff that the first defendant had not been served, the plaintiff and his counsel never asked the other defendant for information to permit service, and the plaintiff actually had the information and failed to communicate it to his counsel. As the Second Circuit stated, "In this context, a description of poor communication between client and counsel is a confession of neglect, not an excuse for it." *Id*. at 199. For the foregoing reasons, the Liquidators cannot show they were diligent in attempting service on Side Pocket, meriting dismissal of this adversary proceeding as against Side Pocket.

## II.    Proof of the Liquidators' Claimed Service of Process Was Insufficient.

Rule 4(*l*)(2)(B) requires, for service outside the United States other than under an international agreement, proof of service "by a receipt signed by the addressee, or by any other evidence satisfying the court that the summons and complaint were delivered to the addressee." In this case, the defendant did not receive a copy of the summons and complaint, and the Liquidators have not filed with the court a receipt signed by the defendant. Even if this Court were to find that the form of service the Liquidators claim to have effected was sufficient (it was not), the Court should require sufficient proof as required under Rule 4(*l*).

## CONCLUSION

For all the foregoing reasons, this Court should dismiss the Liquidators' complaint against Side Pocket for insufficient service of process.

Dated: New York, New York
      May 21, 2021

JENNER & BLOCK LLP

*/s/ Richard Levin*
Richard Levin
Carl N. Wedoff
919 Third Avenue
New York, New York 10022
Tel. (212) 891-1600
rlevin@jenner.com
cwedoff@jenner.com

*Attorneys for Unifortune Conservative Side Pocket (not a juridical entity)*

**CERTIFICATE OF SERVICE**

I Richard Levin, hereby certify under penalty of perjury that on May 21, 2021, I caused the NOTICE OF DEFENDANT UNIFORTUNE CONSERVATIVE SIDE POCKET'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND OF HEARING THEREON and DEFENDANT UNIFORTUNE CONSERVATIVE SIDE POCKET'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS to be served by CM/ECF on all counsel of record in Adversary Proceeding Numbers 10-3635 and 10-3636.

*/s/ Richard Levin*
Richard Levin