**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 Case |
| Fairfield Sentry Limited, et al., | Case No. 10-13164 (CGM) |
| Debtors in Foreign Proceedings | Jointly Administered |

| | |
|---|---|
| Fairfield Sentry Limited, et al., | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 10-3496 (CGM) |
| Theodoor GGC Amsterdam, et al., | Administratively Consolidated |
| Defendants | |

This brief is submitted in the following Adversary
Proceedings:

10-3635, 10-3636

**MEMORANDUM OF LAW BY**
**DEFENDANT CENTRUM BANK AKTIENGESELLSCHAFT**
**IN SUPPORT OF ITS MOTION PURSUANT TO FED. R. CIV. P. 12(b)(5)**
**TO DISMISS FOR FAILURE TO SERVE PROCESS**

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ....................................................................................1

**FACTS** ..........................................................................................................................3

**ARGUMENT** ................................................................................................................4

**I.**     **Service on Centrum by Mail Is Invalid, and the Complaints Therefore
Should Be Dismissed.** ..................................................................................... 5

   **A.**     **Liechtenstein law has a procedure for service, and the Liquidators did not
even try to follow it.** .................................................................................. 5

   **B.**     **The Liquidators did not seek letters rogatory.** ............................................ 6

   **C.**     **Service of process on Centrum by mail is invalid.** ...................................... 7

      **1.**     **Service of process by mail is invalid in Liechtenstein.** ......................... 7

      **2.**     **In violation of Liechtenstein law, the Liquidators failed to serve using a
governmet official and failed to provide a German translation, independently
making their service invalid.** ............................................................... 10

      **3.**     **The Liquidators did not even comply with the requirements
of Rule 4(f)(2)(C)(ii)** ........................................................................ 11

**II.**    **The Liquidators Cannot Rely on the Subscription Agreement or on
Purported Service on Citco.** .......................................................................... 12

**III.**   **Mailing the Complaints to U.S. Counsel Was Not Effective Service.** ........................ 15

**IV.**    **The Liquidators Have Not Moved the Court for Leave to Effect Service by
Alternative Means.  If the Liquidators Do So Move, Movant Should Have the Right
to be Heard in Opposition and the Court Should Not Permit Service by Alternative
Means.** ....................................................................................................... 16

**CONCLUSION** ..........................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Alpha Omega Tech., Inc. v. PGM - Comercio E Participacoes Ltda.*,
    No. 93 Civ. 6257, 1994 WL 37787 (S.D.N.Y. Feb. 9, 1994) ..................................................20

*In re Bozel S.A.*,
    549 B.R. 446 (Bankr. S.D.N.Y. 2016) ...................................................................................20

*Convergen Energy LLC v. Brooks*,
    No. 20-cv-3746, 2020 WL 4038353 (S.D.N.Y. July 17, 2020) ...............................................17

*Darden v. DaimlerChrysler North America Holdings Corp.*,
    191 F. Supp. 2d 382 (S.D.N.Y. 2002) ....................................................................................15

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*,
    No. 03 Civ. 8554, 2005 WL 1123755 (S.D.N.Y. May 11, 2005) ...........................................20

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
    Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Aug. 6, 2018) (*Fairfield I*) ........................... *passim*

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
    Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Dec. 14, 2020) (*Fairfield III*) ....................... *passim*

*Freeplay Music, LLC v. Rigol Tech. USA, Inc.*,
    No. 18 Civ. 10980, 2020 WL 564232 (S.D.N.Y. Feb. 4, 2020) ..............................................22

*Hawthorne v. Citicorp Data Sys., Inc.*,
    219 F.R.D. 47 (E.D.N.Y. 2003) ........................................................................................1, 5

*Jung v. Neschis*,
    No. 01 Civ. 6993, 2003 WL 1807202 (S.D.N.Y. Apr. 7, 2003) ....................................8, 9, 11

*Kahn v. Kahn*,
    360 F. App'x 202 (2d Cir. 2010) .............................................................................................4

*Kwon v. Yun*,
    No. 05 Civ. 1142, 2006 WL 416375 (S.D.N.Y. Feb. 21, 2006) ...............................................4

*Lewis v. Dimeo Constr. Co.*,
    41 F. Supp. 3d 108 (D. Mass. 2014) ................................................................................. 8-11

*Marks v. Alpha Group*,
    615 F. Supp. 2d 375 (E.D. Pa. 2009) ................................................................................ 8-11

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987) ..........................................................................................................1, 4, 5

*OSRecovery, Inc. v. One Group Int'l, Inc.*,
234 F.R.D. 59 (S.D.N.Y. 2005) ........................................................................1, 4

*Sanchez v. Hoosac Bank*,
No. 12 Civ. 8455, 2014 WL 1326031 (S.D.N.Y. Mar. 31, 2014) ...........................10

*Sigel v. United States*,
No. CIV.A CV-01-2907, 2003 WL 21696218 (E.D.N.Y. July 21, 2003) ........................9 n.16

*In re Ski Train Fire in Kaprun, Austrian on November 11, 2000*,
No. 01 Civ. 7342, 2003 WL 1807148 (S.D.N.Y. Apr. 4, 2003)..................................8, 20-21

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
No. MDL 1428, 2003 WL 21659368 (S.D.N.Y. July 15, 2003) .........................................8, 21

*U.S. v. Wiseman*,
445 F.2d 792 (2d Cir. 1971)........................................................................................10

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
No. 17 Civ. 8118, 2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018) ...........................17

**Rules**

Fed. R. Bankr. P. 7012 ..............................................................................................1

Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment.................................20

Fed. R. Civ. P. 4(a)(1)(F) ...........................................................................................10

Fed. R. Civ. P. 4(a)(1)(G) ...........................................................................................10

Fed. R. Civ. P. 4(c)(1)...................................................................................................4

Fed. R. Civ. P. 4(e) ................................................................................................5, 16

Fed. R. Civ. P. 4(f)..................................................................................1, 4, 5 n.10, 8

Fed. R. Civ. P. 4(f)(2) ..............................................................................5, 12, 16, 18

Fed. R. Civ. P. 4(f)(2)(A).............................................................................................5

Fed. R. Civ. P. 4(f)(2)(B) .............................................................................................5

Fed. R. Civ. P. 4(f)(2)(C) .....................................................................................7, 9, 12

Fed. R. Civ. P. 4(f)(2)(C)(i) .................................................................................5 n.10

Fed. R. Civ. P. 4(f)(2)(C)(ii) ...........................................................................8, 9, 10, 12

Fed. R. Civ. P. 4(f)(3) ........................................................................................ *passim*

Fed. R. Civ. P. 4(f)(3) advisory committee's note to Subdivision f ....................................... 17-18

Fed. R. Civ. P. 4(h) ...............................................................................................5 n.10

Fed. R. Civ. P. 4(h)(2)............................................................................................5, 16

Fed. R. Civ. P. 12(b)(5)..........................................................................................1, 4, 5

## Other Authorities

Black's Law Dictionary 1087 (7th ed. 1999)........................................................................9 n.16

Liechtenstein Law of October 22, 2008 on the Service of Official Documents.................... *passim*

## PRELIMINARY STATEMENT

Pursuant to this Court's April 26, 2021 order (Dkt. No. 3616)[1] and Rule 12(b)(5) of the

Federal Rules of Civil Procedure, made applicable here by Rule 7012 of the Federal Rules of

Bankruptcy Procedure, defendant Centrum Bank Aktiengesellschaft ("Centrum" or "Movant")[2]

moves to dismiss the complaints in adversary proceedings 10-3635 and 10-3636 (the

"Complaints") on the grounds that it was not properly served with process.[3]

"Before a . . . court may exercise personal jurisdiction over a defendant, the procedural

requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff &*

*Co.*, 484 U.S. 97, 104 (1987).  "Without proper service a court has no personal jurisdiction over

a defendant." *Hawthorne v. Citicorp Data Sys., Inc.*, 219 F.R.D. 47, 49 (E.D.N.Y. 2003); *see*

*also OSRecovery, Inc. v. One Group Int'l, Inc.*, 234 F.R.D. 59, 61 (S.D.N.Y. 2005) ("[Without

proper service] actual notice alone will not sustain personal jurisdiction over a defendant").

The Liquidators have not served Centrum – then an independent Liechtenstein bank (and

now part of VP Bank AG) with its corporate headquarters in Liechtenstein and no U.S.

employees or offices – using the procedures required by Rule 4(f) of the Federal Rules of Civil

Procedure.  Despite having had nine years of notice that Centrum contended that proper service

has not been made,[4] and nearly three years since this Court issued a ruling that should have

---

[1]    Pursuant to the Court's order that "each defendant must file a motion pertaining solely to itself," Centrum and Verwaltungs-und Privat-Bank Aktiengesellschaft ("VP Bank AG"), another defendant in these adversary proceedings, are each filing separate motions.  However, after the commencement of this litigation, VP Bank AG acquired Centrum, and Centrum has ceased to exist and is now a part of VP Bank AG.

[2]    Movant submits this motion without prejudice or waiver of any rights or defense, including, without limitation, defenses based on lack of personal jurisdiction or failure of service.

[3]    Unless otherwise noted, all emphases are added and all internal citations and quotations are omitted.

[4]    *See* Obj. of Liechtenstein Defs. to Foreign Representative's Mot. Seeking Limited Relief from Order Staying Redeemer Actions and Entry of Order Directing Defs. to Make Expedited Initial Disclosures on Beneficial Holders, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr.

-1-

apprised them that their purported service was invalid,[5] the Liquidators have not even attempted to make proper service on Centrum. Nor have the Liquidators moved this Court for alternative service pursuant to Federal Rule 4(f)(3).

Instead, the Liquidators rely on having mailed the summons and complaint by international registered mail to Centrum in Liechtenstein and to Citco Global Custody N.V. ("Citco") in the Netherlands and in Ireland, and by U.S. mail to Centrum's U.S. counsel, who had not agreed to accept service and who has consistently indicated that Centrum was appearing specially without waiver of its objections to service or personal jurisdiction.

As set forth in an official diplomatic note from the Office of Foreign Affairs of the Principality of Liechtenstein, and in a declaration from the Chief Justice of the Constitutional Court of Liechtenstein (the highest court of Liechtenstein), service by mail is both ineffective and forbidden under Liechtenstein law.[6]

Service of process is not a mere technicality. It is the process by which a court obtains power over a defendant. In Liechtenstein, it is viewed very seriously, as a sovereign, public act that is strictly regulated. Attempts to serve outside of those rules are criminal under Liechtenstein law. For a court to permit a plaintiff to proceed informally, without service as required, would be a gross violation of Liechtenstein's sovereignty and of due process. The

---

S.D.N.Y. June 8, 2012) (Dkt. No. 688) and attached thereto as Exhibit A, Declaration of Dr. Hilmar Hoch in Opp. to the Foreign Representative's Mot. Seeking Limited Relief from Order Staying Redeemer Actions and Entry of Order Directing Defs. to Make Expedited Initial Disclosures of Beneficial Holders and Authorizing Am. to Compls. in Redeemer Actions ("2012 Hoch Decl.").

[5] Mem. Decision and Order Regarding the Defs.' Mot. to Dismiss for Want of Jurisdiction, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Aug. 6, 2018) (Dkt. No. 1723) ("*Fairfield I*").

[6] *See* Declaration of Dr. Hilmar Hoch, dated May 21, 2021 ("Hoch Decl.") ¶ 12(a); Note Verbale of the Office of Foreign Affairs of the Principality of Liechtenstein to the Embassy of the United States of America, dated January 27, 2017, as quoted in the Letter of the Office to Dr. Hoch of the same date ("Note Verbale," attached to the Hoch Decl. as Exhibit B) ¶ 11.

Liquidators have already imposed huge litigation costs on defendants, and have indicated that they will continue to do so, including by urging the court to begin discovery imminently, which will increase costs by an order of magnitude. Before invoking this Court's power to impose these costs on a non-U.S. party, the Liquidators should have turned square corners and followed the rules, starting with proper service of a summons and complaint. They did not do so, despite having had many years of notice. These adversary proceedings should therefore be dismissed.

## **FACTS**

Prior to its 2015 acquisition by VP Bank AG, Centrum was a Liechtenstein bank organized under the laws of Liechtenstein and with its corporate headquarters in Liechtenstein. It is not alleged to have, and did not have, any U.S. employees or offices.[7]

The Liquidators did not serve Centrum with process using letters rogatory or any other method permitted by Liechtenstein law. Rather, they have asserted that they mailed the summons and complaint, in English and without a translation into German (the official language of Liechtenstein), to Centrum in Liechtenstein and to Citco (pursuant to an irrelevant subscription agreement) in the Netherlands and in Ireland.[8] In addition, the Liquidators have filed affidavits of service alleging that they mailed copies of the summons and complaint to U.S. counsel for Centrum using regular U.S. mail (not registered or return receipt requested),[9] even

---

[7]     *See* Fourth Am. Compl. ¶ 53, *Fairfield Sentry Ltd. v. ABN AMRO Schweiz AG*, Adv. Pro. No. 10-3635 (Bankr. S.D.N.Y. Jan. 9, 2020) (Dkt. No. 466) ("Upon information and belief, Centrum Bank AG (AMS) is a corporate entity organized under the laws of Liechtenstein and has its registered address at Kirchstrasse 3, Postfach 1168, Vaduz FL 9490, Liechtenstein."); Fourth Am. Compl. ¶ 58, *Fairfield Sentry Ltd. v. ABN AMRO Schweiz AG*, Adv. Pro. No. 10-3636 (Bankr. S.D.N.Y. Jan. 9, 2020) (Dkt. No. 517) (same).

[8]     *See* Aff. of Service, *Fairfield Sentry Ltd. v. ABN AMRO Schweiz AG*, Adv. Pro. No. 10-3635 (Bankr. S.D.N.Y. Oct. 22, 2010) (Dkt. No. 54); Aff. of Service, *Fairfield Sentry Ltd. v. ABN AMRO Schweiz AG*, Adv. Pro. No. 10-3636 (Bankr. S.D.N.Y. Oct. 22, 2010) (Dkt. No. 54).

[9]     *See* Aff. of Service, *Fairfield Sentry Ltd. v. ABN AMRO Schweiz AG*, Adv. Pro. No. 10-3635 (Bankr. S.D.N.Y. Oct. 20, 2010) (Dkt. No. 53); Aff. of Service, *Fairfield Sentry Ltd. v. ABN AMRO Schweiz AG*, Adv. Pro. No. 10-3636 (Bankr. S.D.N.Y. Oct. 20, 2010) (Dkt. No. 53).

though U.S. counsel has consistently insisted that Centrum was appearing specially, and expressly reserved all arguments relating to service of process.  *See supra* at 1 & n.4.

## ARGUMENT

Service of a summons and complaint is required to create jurisdiction over a defendant. Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint.  The plaintiff is responsible for having the summons and complaint served. . . .").  "Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Omni Cap.*, 484 U.S. at 104; *see also OSRecovery*, 234 F.R.D. at 61 ("[Without proper service] actual notice alone will not sustain personal jurisdiction over a defendant").  The Liquidators, as the plaintiffs, have the burden of showing the adequacy of service of process.  *See Kahn v. Kahn*, 360 F. App'x 202, 203 (2d Cir. 2010) ("On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient."); *Kwon v. Yun*, No. 05 Civ. 1142, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006) ("The burden on a motion to dismiss for insufficient service of process rests with the plaintiff, who must, through specific factual allegations and any supporting materials, make a prima facie showing that service was proper.").  Because the Liquidators have not served Movant in any of the ways permitted by Federal Rule 4(f), these adversary proceedings should be dismissed under Federal Rule 12(b)(5).

## I.    SERVICE ON CENTRUM BY MAIL IS INVALID, AND THE COMPLAINTS THEREFORE SHOULD BE DISMISSED.

Under the Federal Rules of Civil Procedure, service on an entity outside the United States may be made "(A) as prescribed by the foreign country's law," "(B) as the foreign authority directs in response to a letter rogatory," or "(C) unless prohibited by the foreign country's law by . . . (ii) using any form of mail that the clerk addresses and sends to the individual and that

requires a signed receipt. . . ."  Fed. R. Civ. P. 4(f)(2), invoked by Fed. R. Civ. P. 4(h)(2).[10]  The

Liquidators here did none of these.  Rather, the Liquidators sent the summons and complaints by

mail.  This purported service did not comply with Federal Rule 4 and is invalid, and the

Complaints should be dismissed.  *See* Fed. R. Civ. P. 4(e); Fed. R. Civ. P. 12(b)(5); *Omni Cap.*,

484 U.S. at 104; *Hawthorne*, 219 F.R.D. at 49.

### A.    Liechtenstein law has a procedure for service, and the Liquidators did not even try to follow it.

The first permitted means of service is "(A) as prescribed by the foreign country's law."

Fed. R. Civ. P. 4(f)(2)(A).  Under applicable Liechtenstein law, to serve foreign official

documents in Liechtenstein, a foreign authority or court from where the documents originate

<u>must</u> apply for legal assistance to the Liechtenstein District Court, which would then order an

official or service provider to serve the documents.  Note Verbale ¶ 9; Hoch Decl. ¶¶ 18, 21.  The

Liquidators did not follow and do not claim to have followed this procedure, and thus have not

served under Federal Rule 4(f)(2)(A).

### B.    The Liquidators did not seek letters rogatory.

The second permitted method of service is "(B) as the foreign authority directs in

response to a letter rogatory."   Fed. R. Civ. P. 4(f)(2)(B).  Liechtenstein permits service via

letters rogatory and has an established method for accepting and transmitting them.  The

Liechtenstein Law of October 22, 2008 on the Service of Official Documents (the "Liechtenstein

Law on Service") provides that "[t]o serve foreign official documents in Liechtenstein, the

foreign authority or court from where the documents originate must make an application for legal

---

[10]    Fed. R. Civ. P. 4(h) ("Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served: . . . (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)").

assistance to the Liechtenstein District Court" and that "service of official documents in Liechtenstein must be carried out by court-appointed officials or court-appointed service providers."  Hoch Decl. ¶¶ 21, 18; Note Verbale ¶ 10.  These are black-letter requirements of Liechtenstein law, and were easily available to the Liquidators at all times since the commencement of this litigation.  Moreover, Centrum brought these specific provisions to the Liquidators' attention in connection with its prior briefing on the issue of service of process in these proceedings, as early as 2012[11] and again in 2017.[12]  However, the Liquidators chose to disregard the laws of both the United States and Liechtenstein, and did not seek letters rogatory.

Service by letters rogatory in Liechtenstein is entirely practical and not particularly time consuming.  The Liechtenstein District Court is required by law to provide assistance to foreign courts in accordance with valid letters rogatory.  Hoch Decl. ¶¶ 21-23.  Litigants in United States courts, including the United States Bankruptcy Court for the Southern District of New York, have successfully used letters rogatory to serve process on defendants in Liechtenstein.  Hoch Decl. ¶ 12(g).  Indeed, the Trustee in the Madoff litigation successfully used letters rogatory to serve process in Liechtenstein on LGT Bank in Liechtenstein AG, one of the defendants in these adversary proceedings.  *See* Hoch Decl. ¶ 27.  The entire letters rogatory process took about two months, of which not more than one month was with the Liechtenstein authorities.  The Bankruptcy Court's request to the Liechtenstein court is dated August 22, 2012,[13] service was

---

[11]     *See supra* note 4.

[12]     *See* Liechtenstein Defs.' Individual Supplemental Mem. of Law in Opp. to Pls.' Mot. for Leave to Amend and in Supp. of Defs.' Mot. to Dismiss at 4, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Jan. 27, 2017) (Dkt. No. 1156); Declaration of Dr. Hilmar Hoch in Opp. to the Foreign Representatives' Motion for Leave to Amend and in Supp. of the Liechtenstein Banks' Mot. to Dismiss ¶¶ 18, 21, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Jan. 27, 2017) (Dkt. No. 1161) ("2017 Hoch Decl.").

[13]     Hoch Decl., Ex. C at 2.

completed by a Liechtenstein court bailiff on October 3, 2012, and the letter of the Liechtenstein

court to the Bankruptcy Court confirming service is dated October 4, 2012.[14]  The Trustee's

affidavit of service was filed in the Bankruptcy Court on October 26, 2012.[15]  Just as in that case,

it would not have been difficult for the Liquidators to have simply followed the law here.

### C.    Service of process on Centrum by mail is invalid.

The third method of service on a foreign defendant under the Federal Rules is "(C) <u>unless</u>

<u>prohibited by the foreign country's law</u> by . . .  using any form of mail <u>that the clerk addresses</u>

<u>and sends to the individual</u> <u>and that requires a signed receipt</u>."  Fed. R. Civ. P. 4(f)(2)(C).

### 1.    Service of process by mail is invalid in Liechtenstein.

Service is not permitted under this provision if "prohibited by the foreign country's laws."

Fed. R. Civ. P. 4(f)(2)(C).  Liechtenstein law prohibits service by mail.  *See* Hoch Decl. ¶ 26

("Liechtenstein does not permit service of process by international registered mail").

Liechtenstein, "as a matter of public order objects to any attempt of service of foreign official

documents by any form of mail . . . from a foreign country, including the United States."  Note

Verbale ¶ 11.  Consequently, "[d]elivery of the Foreign Official Documents on the Liechtenstein

Banks by international registered mail is not valid service and is prohibited by Liechtenstein

Law."  Hoch Decl. ¶ 12(a).  Indeed, "delivery of Foreign Official Documents by registered (or

other) mail is prohibited under Liechtenstein criminal law as a violation of Liechtenstein

sovereignty and carries a penalty of imprisonment."  Hoch Decl. ¶ 12(h); Note Verbale ¶ 15.

Thus, all of the Liquidators' purported service by mail are invalid and of no effect.

---

[14]    Hoch Decl., Ex. C at 4.

[15]    Hoch Decl., Ex. C, Aff. of Service of Summons and Compl. Upon Def., *Irving H. Picard for the Liquidation of B v. LGT Bank in Liechtenstein Ltd.*, Adv. Pro. No. 11-1929 (Bankr. S.D.N.Y. Oct. 26, 2012).

The one case in this district to address the issue of service by mail under Liechtenstein law confirms that service by mail is "prohibited by the laws of Liechtenstein and [i]s, therefore improper under Rule 4(f)(2)(C)(ii)." *Jung v. Neschis*, No. 01 Civ. 6993, 2003 WL 1807202, at *3 (S.D.N.Y. Apr. 7, 2003) (service by international registered mail invalid under Federal Rule 4(f) because Liechtenstein law did not permit such service).

Courts in this district have also recognized that "service by direct mail is prohibited by Austrian law" and that such service is "improper . . . under Rule 4(f)(C)(ii) and 4(f)(3)." *In re Ski Train Fire in Kaprun, Austrian on November 11, 2000*, No. 01 Civ. 7342, 2003 WL 1807148, at *7 (S.D.N.Y. Apr. 4, 2003); *see also In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, No. MDL 1428, 2003 WL 21659368, at *3 (S.D.N.Y. July 15, 2003). Because the Liechtenstein Law on Service is similar to Austrian law (Hoch Decl. ¶¶ 13 n.12, 31 n.36), those decisions support the conclusion that service by mail is prohibited by Liechtenstein law, and that the Liquidators have not properly served Movant here.

There are two cases from outside this district that suggest that Liechtenstein does not forbid service by mail, but those cases are quite different. *See Marks v. Alpha Group*, 615 F. Supp. 2d 375 (E.D. Pa. 2009); *Lewis v. Dimeo Constr. Co.*, 41 F. Supp. 3d 108 (D. Mass. 2014). First, those cases did not have the benefit of the official Liechtenstein statement of the law in the Note Verbale[16] and the opinion of Dr. Hoch, the Chief Justice of the Constitutional Court of Liechtenstein and an experienced Liechtenstein practitioner. Hoch Decl. ¶¶ 1-2. Instead, those courts interpreted the Liechtenstein statute for themselves. Movant respectfully submits that the Note Verbale and the opinion of Dr. Hoch definitively state that mail service is forbidden by Liechtenstein law. Hoch Decl. ¶ 12(a); Note Verbale ¶ 11. Second, both *Marks* and *Lewis* found

---

[16]     A Note Verbale is an official diplomatic communication from the government of one country to that of another country. *See Sigel v. United States*, No. CIV.A CV-01-2907, 2003 WL 21696218, at *1 n.4 (E.D.N.Y. July 21, 2003) (citing Black's Law Dictionary 1087 (7th ed. 1999)).

that service of process was not valid when, as here, it did not comply with Federal Rule 4(f)(2)(C)'s requirements. *See Marks*, 615 F. Supp. 2d at 379 (service not proper under Federal Rule 4(f)(2)(C)(ii) where signed receipt was not returned for package mailed by the clerk); *Lewis*, 41 F. Supp. 3d at 110-11 (service not proper under Federal Rule 4(f)(2)(C)(ii) where summons and complaint were mailed by plaintiffs rather than the clerk). The opinions' unsupported statements as to what Liechtenstein permits are therefore dicta. <u>Third</u>, *Marks* and *Lewis* are from outside this district, and their statements regarding mail service are both not binding and inconsistent with the decision in this district addressing the issue (*Jung v. Neschis*) and with the *Ski Train* cases from this district cited above regarding service in Austria. <u>Fourth</u>, in the prior briefing on the Liechtenstein service issue, the Liquidators did not submit any evidence of Liechtenstein law or even attempt to dispute the expert declaration of Dr. Hoch and the Note Verbale, and have therefore tacitly acknowledged those documents to contain correct statements of Liechtenstein law.

<u>Fifth</u>, the *Lewis* court premised its conclusion on the erroneous assumption that "[i]n effectuating service of process in a lawsuit, a party acts as a private party and not on behalf of the United States," 41 F. Supp. 2d at 111, which is wrong as a matter of both Liechtenstein and U.S. law. Whether service in Liechtenstein is a public or private act is to be determined by Liechtenstein law (Note Verbale ¶ 5), and as the Liechtenstein Office for Foreign Affairs makes clear, service of process in Liechtenstein is a public function and an "exercise of governmental power" that is "reserved to the public officials of Liechtenstein." Note Verbale ¶¶ 1-2; Hoch Decl. ¶ 13. Even under U.S. law, "the service of summons is essentially and traditionally a public function" and "the service of process is an act of public power." *U.S. v. Wiseman*, 445 F.2d 792, 796 (2d Cir. 1971) (affirming criminal convictions before Judge Weinfeld of private

-9-

process servers who filed false affidavits of service for deprivation of constitutional rights "under color of law" because "[u]nlike most functions involved in the conduct of a lawsuit by private parties, the service of summons is essentially and traditionally a public function" and therefore "we conclude that the activity involved in this case is activity which even when performed by a private party constitutes a 'public function,' and constitutes State action"); *see also Sanchez v. Hoosac Bank*, No. 12 Civ. 8455, 2014 WL 1326031, at *5, 7 (S.D.N.Y. Mar. 31, 2014). That issuance of a summons is a public, state action is highlighted by the Federal Rules themselves: the summons itself must be "signed by the clerk," Federal Rule 4(a)(1)(F), and "bear the court's seal," Fed. R. Civ. P. 4(a)(1)(G), and under Federal Rule 4(f)(2)(C)(ii), it is the clerk of the court who must address and send the summons to the foreign party.

Finally, Dr. Hoch specifically addresses *Marks* and *Lewis* and concludes that they incorrectly interpret Liechtenstein law regarding service of process. Hoch Decl. ¶ 26. Dr. Hoch, without equivocation, states that service by international registered mail is "not valid service and is prohibited under Liechtenstein law," and that "[t]here can thus be no doubt that any attempt to serve a party in Liechtenstein in any other way than prescribed by Liechtenstein law is prohibited." Hoch Decl. ¶¶ 12(a), 33. Respectfully, the Liechtenstein government's official statement of Liechtenstein law, as well as Dr. Hoch's analysis, are authoritative and should be adopted over the unsupported views of *Marks* and *Lewis* – which are inconsistent with the *Jung* decision in this district.

> **2.    In violation of Liechtenstein law, the Liquidators failed to serve using a government official and failed to provide a German translation, independently making their service invalid.**

The Liquidators failed to comply with other aspects of Liechtenstein law relating to service, which also and independently makes their service invalid.

<u>First</u>, Liechtenstein considers service of official documents, including documents commencing a lawsuit, to be a sovereign act reserved to Liechtenstein government agencies and officials.  Note Verbale ¶¶ 1-3, 6; Hoch Decl. ¶¶ 13-16.  As noted above, the Liechtenstein Law on Service requires that "[t]o serve foreign official documents in Liechtenstein, the foreign authority or court from where the documents originate must make an application for legal assistance to the Liechtenstein District Court" and that "service of official documents in Liechtenstein must be carried out by court-appointed officials or court-appointed service providers."  Hoch Decl. ¶¶ 21-22; Note Verbale ¶ 10.  The Liquidators did not follow this procedure.[17]

<u>Second</u>, Liechtenstein law also requires that documents must be served along with a translation into German (the official language of Liechtenstein).  Note Verbale ¶ 13; Hoch Decl. ¶ 28.  The Liquidators did not provide German translations.[18]  Thus, the Complaints were not served in accordance with Liechtenstein law, and service was not effective under Federal Rule 4(f)(2)(C).

### 3.  The Liquidators did not comply with the requirements of Rule 4(f)(2)(C)(ii).

Furthermore, the Liquidators are not within Federal Rule 4(f)(2)(C)(ii) because the Rule requires that the "clerk addresses and sends" the mail and "requires a signed receipt."  According to the Liquidators' sworn affidavits of service, the summonses at issue here were mailed by the Liquidators' own agents, and not by the clerk of the court, and the Liquidators do not even allege

---

[17]   The Liechtenstein Law on Service permits the Liechtenstein District Court to order other methods of service only upon specific request of the foreign court.  Note Verbale ¶ 10; Hoch. Decl. ¶ 23.  No such request was made by the Liquidators.

[18]   The Liechtenstein Law on Service permits waiver of the translation requirement, but only if the party being served is advised of its right to refuse to accept service without the translation and only if the document is otherwise served properly.  Note Verbale ¶ 13; Hoch. Decl. ¶¶ 29-30.  Neither of those conditions was satisfied here.

that they required a signed receipt.[19]  As noted above, the courts in *Marks* and *Lewis* both found

service of process was not valid when, as here, it did not comply with Federal Rule 4(f)(2)(C)'s

requirements.  *See Marks*, 615 F. Supp. 2d at 379; *Lewis*, 41 F. Supp. 3d at 110-11.  In any event,

any type of service under Federal Rule 4(f)(C), including clause (ii), is only permitted "unless

prohibited by the foreign country's law."  As stated above, Liechtenstein law prohibits any type

of service except pursuant to the provisions of the Liechtenstein Law on Service.

*   *   *

For these reasons, the purported mail service used by the Liquidators is invalid under

Liechtenstein law, and therefore under U.S. law pursuant to Federal Rule 4(f)(2).  Without

proper service under Liechtenstein law, Liechtenstein courts will not enforce a foreign judgment

against a party.  *See* Hoch Decl. ¶ 12(i).  It would accordingly be an extremely inefficient use of

judicial and party resources for a proceeding in this Court to continue without proper service

under Liechtenstein and federal law.

## II.    THE LIQUIDATORS CANNOT RELY ON THE SUBSCRIPTION AGREEMENT OR ON PURPORTED SERVICE ON CITCO.

The Liquidators' sole argument in their prior briefing on Liechtenstein service was that

Movant had "consented to services of process by mail in the Subscription Agreement, and the

Liquidators served [Centrum] in compliance with that provision."[20]  However, that argument was

made <u>before</u> Judge Bernstein's ruling that these adversary proceedings are not "with respect to"

the subscription agreements and that jurisdiction cannot be premised on purported consents in

the subscription agreements.  *See Fairfield I* at 23-27.  *Fairfield I* precludes that argument, as

---

[19]    *See supra* note 8.

[20]    Foreign Representatives' Mem. of Law in Opp. to the Liechtenstein Defs.' Individual Supplemental Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 4, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Apr. 6, 2017) (Dkt. No. 1400).

the Court has since ruled. *See* Mem. Decision Granting in Part and Denying in Part Defs.'

Renewed Mot. to Dismiss, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-

3496 (Bankr. S.D.N.Y. Dec. 14, 2020) (Dkt. No. 3062) ("*Fairfield III*"). In *Fairfield III*¸ Judge

Bernstein explained that "[t]he Court concluded in connection with the prior motion to dismiss

[*i.e.*, *Fairfield I*] that the U.S. Redeemer Actions were not proceedings with respect to the

subscription agreements. Until the Court issued *Fairfield I*, in August 2018, the Liquidators had

a reasonable basis to believe that they had properly served HSBC Suisse by mail in accordance

with the subscription agreements." *Fairfield III* at 31. Following *Fairfield I*, however, the

Liquidators are precluded from relying on service on Citco pursuant to the subscription

agreement, which was the sole basis in their prior opposition to support their attempted service

on Centrum. Moreover, as early as 2012, during briefing on the Liquidators' motion seeking

certain disclosures from defendants (which was defeated on appeal), Dr. Hoch, on Centrum's

behalf, succinctly explained that "any purported private agreement providing for . . . alternative

means of service in Liechtenstein would be deemed an illegal attempt at circumventing the

mandatory provisions for service in Liechtenstein. Accordingly, such an agreement would not

be able to cure the breach of Liechtenstein law that results from any attempt at serving foreign

court documents without obtaining an order by the competent Liechtenstein court; it would be

null and void under Liechtenstein law and could not be enforced in a Liechtenstein court."[21] The

same point was made in Centrum's briefing in *Fairfield I*.[22]

　　　　To explain in slightly more detail: in *Fairfield I*, the Liquidators argued that these

adversary proceedings are "with respect to" subscription agreements allegedly signed by some

defendants, and that choice of law and jurisdiction could be premised on consents to jurisdiction

---

[21]　　*See* 2012 Hoch Decl. ¶ 33.

[22]　　*See* 2017 Hoch Decl. ¶ 34.

in subscription agreements (which also provided for "consent[] that service of process as provided by New York law may be made upon Subscriber in any Proceeding" that is "with respect to" the subscription agreements). *Fairfield I* at 18-20. Judge Bernstein squarely rejected that argument and ruled that these adversary proceedings are not "with respect to" the subscription agreements and that jurisdiction in New York cannot be premised on the alleged consents in the subscription agreements. *See Fairfield I* at 23-27.

Thus, the Liquidators cannot rely on the subscription agreements to be a consent to service, any more than they could rely on them to constitute consent to jurisdiction. *See Fairfield III* at 31 (noting that the Liquidators would <u>not</u> have a "reasonable basis to believe" that service in accordance with the subscription agreements was proper after the Court's ruling in *Fairfield I*). Accordingly, the Liquidators cannot rely on service on Citco as service on Movant.

Furthermore, the Liquidators have not alleged that Centrum actually signed a subscription agreement. Instead, the Liquidators merely state "upon information and belief" that unspecified Citco subscribers signed subscription agreements. *See* Fourth Am. Compl. ¶ 21, *Fairfield Sentry Ltd. v. ABN AMRO Schweiz AG*, Adv. Pro. No. 10-3635 (Bankr. S.D.N.Y. Jan. 9, 2020) (Dkt. No. 466); Fourth Am. Compl. ¶ 21, *Fairfield Sentry Ltd. v. ABN AMRO Schweiz AG*, Adv. Pro. No. 10-3636 (Bankr. S.D.N.Y. Jan. 9, 2020) (Dkt. No. 517) ("The Citco Subscribers, upon information and belief, entered into a Subscription Agreement with Sentry"). Centrum has no record of such an agreement. The Liquidators bear the burden of proving effective service, which they have not met. *See Darden v. DaimlerChrysler North America Holdings Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) ("Once a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy.").

Because *Fairfield I* makes clear that the subscription agreements are entirely inapplicable for purposes of service and jurisdiction in these adversary proceedings, Movant assumes that the Liquidators will not rely on their purported service on Citco and therefore will not fully set out here the points it made and the authorities it introduced in its prior briefing on the Liechtenstein service issue, which further explain why service on Citco based on the subscription agreement was improper.[23]  Those points include that the Liquidators failed to adequately allege that Citco was appointed as Movant's agent, that Movant did not and could not confer actual authority on Citco to agree to service by mail because such service is prohibited by Liechtenstein law, and that the Liquidators have not pled facts showing that Citco had apparent authority to bind Movant to the service clause in the subscription agreement because the Liquidators do not allege any interaction between Movant and the Fairfield funds.  To the extent the Liquidators somehow still intend to rely on service on Citco pursuant to the subscription agreement, Movant respectfully incorporates that prior briefing and authorities and reserves the right to expand on those arguments in its reply.

## III.  MAILING THE COMPLAINTS TO U.S. COUNSEL WAS NOT EFFECTIVE SERVICE.

The Liquidators also filed affidavits of service asserting that they had caused a copy of the summonses and complaints to be sent by first-class U.S. mail to Movant's outside counsel in this case in the United States.[24]  Those mailed documents are not valid service under the Federal Rules of Civil Procedure.  The Liquidators conceded as much in *Fairfield III* where they did not even attempt to argue that their prior service on HSBC Private Bank (Suisse) SA's ("HSBC

---

[23]    *See supra* note 12; *see also* Hoch Decl. ¶ 35 (explaining that it is illegal under Liechtenstein law to appoint an agent to accept service of process at a location outside of Liechtenstein because "service must be completed at an address on Liechtenstein territory").

[24]    *See supra* note 9.

Suisse") U.S. counsel was proper, but rather only sought leave of the Court under Federal Rule 4(f)(3) for alternative service on HSBC Suisse's U.S. counsel. *See Fairfield III* at 25.

The Liquidators' concession – that service by U.S. mail on a putative defendant's counsel is not valid service – was unavoidable given that the Federal Rules require *defendants* (not their lawyers) to be served with process. The Federal Rules are quite specific about how service of process is to be accomplished and on whom process may be served, and they do not permit service of process by mail or on counsel. *See* Fed. R. Civ. P. 4(e), 4(f)(2), invoked by Fed. R. Civ. P. 4(h)(2). Moreover, service on a U.S. attorney is not permitted under Liechtenstein law because it "constitute[s] an impermissible circumvention on the [Liechtenstein] Law on Service," which requires service to be "completed at an address on Liechtenstein territory." Hoch Decl. ¶ 35. Therefore, the Liquidators' 2010 mailing of the summonses and complaints to Movant's U.S. outside counsel in this case was not proper service.

## IV. THE LIQUIDATORS HAVE NOT MOVED THE COURT FOR LEAVE TO EFFECT SERVICE BY ALTERNATIVE MEANS. IF THE LIQUIDATORS DO SO MOVE, MOVANT SHOULD HAVE THE RIGHT TO BE HEARD IN OPPOSITION AND THE COURT SHOULD NOT PERMIT SERVICE BY ALTERNATIVE MEANS.

If the Liquidators belatedly move for alternative service pursuant to Federal Rule 4(f)(3), Movant asks for the opportunity to be heard on that motion in the ordinary course. At present, the Liquidators have not made such a motion – despite having known since 2018 (*Fairfield I*) that their purported service was invalid and even though Centrum alerted the Liquidators to this failure of proper service nearly nine years ago – and there is nothing for Centrum to oppose. Centrum addresses this issue now only preliminarily, and reserves the right to oppose such a motion in the ordinary course if it is made. The Liquidators should not be permitted to request alternative service for the first time in their opposition to this motion, particularly considering the inequities that would result from the Liquidators failing to move for such relief despite Centrum

-16-

having apprised the Liquidators of their improper service many years ago and Centrum being afforded only seven days to respond in its reply to such a new, belated, and significant request.

Federal Rule 4(f)(3) permits an individual to be served outside of the United States "by other means not prohibited by international agreement, <u>as the court orders</u>." The party seeking alternative service must make "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Fairfield III* at 27 (citing *Wash. State Inv. Bd. v. Odebrecht S.A.*, No. 17 Civ. 8118, 2018 WL 6253877, at *6 (S.D.N.Y. Sept. 21, 2018)). The purpose of this inquiry is "to accord with 'principles of comity' by 'encourag[ing] the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process.'" *Convergen Energy LLC v. Brooks*, No. 20-cv-3746, 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020); *see also* Fed. R. Civ. P. 4(f)(3) advisory committee's note to Subdivision f ("Service by methods that would violate foreign law generally is not authorized. . . . Inasmuch as our Constitution requires that reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law.").

The Liquidators have not met this standard. Even if they had once believed that service could be effected by mail under the subscription agreement, that belief became unreasonable when *Fairfield I* was decided in 2018. *See supra* at 13-14. In the three years since that time, the Liquidators have not attempted service on Centrum under Federal Rule 4(f)(2). Nor have the Liquidators moved this Court for alternative service under Federal Rule 4(f)(3), even after *Fairfield III* was decided. The Liquidators cannot now complain that they are prejudiced when they have sat on this issue for many years.

-17-

Nor has there been a showing that "the circumstances are such that the court's intervention is necessary." Liechtenstein has an established procedure for effecting service of process by accepting letters rogatory. *See* Hoch Decl. ¶ 21; Note Verbale ¶ 9. The Liquidators' excuse in *Fairfield III* for not following the requirements of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention") for service of process was that doing so would be expensive and time consuming. *See Fairfield III* at 32. The delay that would have been incurred here is not significant. Service by letters rogatory on another Liechtenstein defendant in these adversary proceedings was accomplished in the Madoff Trustee litigation in about two months, of which only one month involved the Liechtenstein authorities. *See supra* at 6-7. While there would have been some, likely modest, cost to the Liquidators for serving by letters rogatory, that it is one of the costs a plaintiff should have to bear before it drags a defendant halfway around the world to participate in very expensive proceedings here. The Liquidators have already forced Centrum to engage in expensive briefing for over a decade, and now seek to begin discovery, which will undoubtedly also be very expensive. Under basic principles of justice and respect for the laws of other countries, the Liquidators should not be permitted to impose the costs of the U.S. judicial system on a foreign adversary without having complied with the U.S. judicial system's own rules.

In *Fairfield III*, Judge Bernstein granted the Liquidators' request to effect alternative service on Cleary Gottlieb Steen & Hamilton LLP, U.S. outside counsel to HSBC Suisse, at its New York offices. *See Fairfield III* at 24-35. That ruling is <u>not</u> binding on Centrum and should not be extended to it. Centrum reserves full analysis of the issue until after it has seen the Liquidators' request for such relief (if indeed the Liquidators do so). For the present, Centrum

-18-

notes the following distinctions from *Fairfield III*, in the hope that the Liquidators will be

dissuaded from making a Federal Rule 4(f)(3) motion:

First, the sole issue before the Court in *Fairfield III* was whether service on certain

particular Swiss defendants complied with the Hague Convention, and all other service issues

were "expressly preserved." *See* Scheduling Order ¶ 4, *Fairfield Sentry Ltd. v. Theodoor GGC*

*Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Mar. 20, 2020) (Dkt. No. 2926) ("[A]ll

other arguments . . . are expressly preserved, including . . . service issues other than the Hague

Service Issue. . . ."); *accord* Scheduling Order, *Fairfield Sentry Ltd. v. Theodoor GGC*

*Amsterdam* ¶¶ 4-5, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Apr. 14, 2020) (Dkt. No. 3028).

Centrum was not a party to that issue or that aspect of the ruling, which is therefore not binding

on it.

Second, Liechtenstein is not a signatory to the Hague Convention, and thus *Fairfield III*

did not address whether service was properly made in Liechtenstein.

Third, as the Court previously acknowledged, service is an individual issue, and the

rulings with respect to one defendant do not apply to other defendants. *See* Tr. of Apr. 21, 2021

Hearing at 40:11-12, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496

(Bankr. S.D.N.Y. Apr. 21, 2020) ("I know on the service issue we have to deal with each

[defendant] individually.").

Fourth, despite the rulings in *Fairfield I* and *III*, the Liquidators have not sought leave of

the Court to cure their failure of service. The Liquidators could have avoided this issue by

serving Centrum via letters rogatory or moving for alternative service at any time since this issue

was raised nine years ago. Even following *Fairfield III*, the Liquidators did not seek alternative

service under Federal Rule 4(f)(3) with respect to Centrum. The Court should not permit the

-19-

Liquidators to get another bite at the apple so many years after these cases began.  *See, e.g.*, *In re Bozel S.A.*, 549 B.R. 446, 450 (Bankr. S.D.N.Y. 2016) (finding efforts at service unreasonable where there was a two-year delay).

Fifth, Judge Bernstein's analysis in *Fairfield III* did not address the significant comity issues implicated in considering whether to effect alternative service here.  "In the interests of comity, a district court exercising its discretion under Rule 4(f)(3) should indeed make 'an earnest effort . . . to devise a method of communication that is consistent with due process and minimizes offense to foreign law.'"  *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, No. 03 Civ. 8554, 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005) (quoting Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment); *Alpha Omega Tech., Inc. v. PGM - Comercio E Participacoes Ltda.*, No. 93 CIV 6257, 1994 WL 37787, at *1 (S.D.N.Y. Feb. 9, 1994) (Courts "interpret the doctrine of comity of nations to provide that service in violation of the law of a foreign country is ineffective."); *see also In re Ski Train Fire*, 2003 WL 1807148, at *7 (finding alternative service by direct mail to be improper under Federal Rule 4(f)(3) due in part to principles of comity because Austria prohibited service by mail); *In re Ski Train Fire*, 2003 WL 21659368, at *3 (same).

In Liechtenstein, service of process is not a mere technicality.  As detailed above (*see supra* at 7-8), service is a significant and sensitive issue that is of paramount importance to Liechtenstein's government.  The Office of Foreign Affairs of the Principality of Liechtenstein cared enough about this issue to send an official diplomatic note (the Note Verbale) to the Embassy of the United States of America.  *See* Note Verbale, Ex. B to the Hoch Decl.  Service is not a purely private matter in Liechtenstein, but rather is considered a sovereign act reserved to the government.  Note Verbale ¶¶ 1-2; Hoch Decl. ¶ 13.  The government of Liechtenstein views

service other than as permitted under Liechtenstein law, including mail service by a private party, to be a crime and a violation of Liechtenstein's national sovereignty. Hoch Decl. ¶ 12(h); Note Verbale ¶ 15. Indeed, a "foreign party purporting to serve a party in Liechtenstein in deviation from the procedures prescribed by the Law on Service is tantamount to usurping a function reserved to government officials." Hoch Decl. ¶ 32. Authorizing alternative service here would offend and disregard Liechtenstein law, policy, and sovereignty. The Court should afford great weight to these serious public policy and comity considerations before exercising its discretion to authorize service in a manner that would be illegal in Liechtenstein.

Finally, in authorizing service on HSBC Suisse's U.S. counsel, the Court emphasized the "cost and delay" associated with serving HSBC Suisse and the other Swiss defendants in accordance with the requirements of the Hague Convention. *See Fairfield III* at 32-33. Service by letters rogatory in Liechtenstein is not particularly time consuming or difficult. As noted above, the Trustee in the Madoff case served a defendant in Liechtenstein in under two months. The Liechtenstein court responded quickly to letters rogatory from the Bankruptcy Court, and the whole process in Liechtenstein took less than a month. *See supra* at 6-7. Thus, a fundamental factual premise of *Fairfield III* is not applicable here. Moreover, the Liquidators did not move the Court for alternative service on Centrum, even after *Fairfield III*. The Liquidators cannot justly complain about delay which they themselves caused by their own inaction. And, in any event, cost and time cannot "excuse [plaintiffs] from [even] attempting such service at all." *Freeplay Music, LLC v. Rigol Tech. USA, Inc.*, No. 18 Civ. 10980, 2020 WL 564232, at *4 (S.D.N.Y. Feb. 4, 2020).

-21-

## **CONCLUSION**

For the reasons set forth above, the Complaints should be dismissed with prejudice for

failure to service process.

Dated:   New York, New York
          May 21, 2021

> /s/ David M. Morris
> David M. Morris
> FRIED, FRANK, HARRIS, SHRIVER
>   & JACOBSON LLP
> One New York Plaza
> New York, NY  10004
> (212) 859-8000
> david.morris@friedfrank.com
>
> *Counsel for Centrum Bank Aktiengesellschaft*
> *(now owned by VP Bank AG)*

24810713