UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>Fairfield Sentry Limited, et al.,<br>    Debtors in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM) |
| Fairfield Sentry Limited, et al.,<br>(In Liquidation), acting by and through<br>The Foreign Representatives thereof,<br>    Plaintiffs,<br><br>- against -<br><br>Theodoor CGC Amsterdam, et al.,<br>    Defendants. | Jointly Administered<br><br><br>Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| This declaration is submitted in the following Adversary Proceedings:<br><br>10-3635<br>10-3636 | |

## DECLARATION OF DR. HILMAR HOCH IN
## IN SUPPORT OF THE LIECHTENSTEIN BANKS' MOTION TO DISMISS

Hilmar Hoch, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury as follows:

**A.    Qualifications**

1.    I am a citizen and resident of the Principality of Liechtenstein ("Liechtenstein") and an attorney licensed to practice law in Liechtenstein. Since February 2018, I am the Chief Justice of the Constitutional Court of Liechtenstein, the highest court of Liechtenstein. From 1994 to 2005 I served as an Associate Justice of the Constitutional Court; and from 2005 until my election as Chief Justice, as Deputy Chief Justice. In my capacity as a judge, I have participated in, and authored, numerous court decisions

concerning issues arising under the Liechtenstein Constitution, including issues concerning the relationship between domestic and international law and civil procedure.

2. I am also an attorney in private practice in Triesen, Liechtenstein.[1] As an attorney, over the last twenty-eight years, I have advised numerous clients on issues relating to civil procedure, including service of process.

3. I hold a law degree and a doctorate in law from the University of Bern, Switzerland.[2] I also hold an LL.M. degree from Harvard Law School.

4. My *curriculum vitae* is attached hereto as Exhibit A.

5. I make this declaration on behalf of Centrum Bank Aktiengesellschaft ("Centrum Bank"),[3] LGT Bank in Liechtenstein AG (now known as LGT Bank AG) ("LGT Bank"), Liechtensteinische Landesbank Aktiengesellschaft (sued in the Present Actions as Liechtensteinische LB Reinvest AMS) ("Landesbank"), and Verwaltungs- und Privat-Bank Aktiengesellschaft (now known as VP Bank AG) ("VP Bank AG")(collectively, the "Liechtenstein Banks") in support of the Liechtenstein Banks' motion to dismiss the amended complaints in the above-captioned actions brought by the joint liquidators (the "Foreign Representatives") of plaintiffs Fairfield Sentry Limited (in liquidation), Fairfield Sigma Limited (in liquidation), and Fairfield Lambda Limited (in liquidation) (the "Present Actions").

6. I have previously made two declarations, dated June 8, 2012, with respect to two of the Present Actions,[4] and on January 27, 2017, with respect to the Present Actions.[5]

---

[1] Attorneys in private practice in Liechtenstein are regularly elected to serve part-time as judges on Liechtenstein courts or in other government functions.

[2] Liechtenstein attorneys have traditionally obtained their law degrees in neighboring Switzerland or Austria.

[3] I have been informed that Centrum Bank Aktiengesellschaft is now part of VP Bank AG.

[4] *See* Adv. Proc. 10-03496 (administratively consolidated), ECF #688.

[5] *See* Adv. Proc. 10-03496 (administratively consolidated), ECF #1161.

2

7.  I make this declaration upon my own personal knowledge and affirm that I am familiar with the facts referred to, and the statutes and other authorities cited herein.

**B.   Pertinent Facts**

8.  I understand that according to sworn affidavits filed with the New York State Supreme Court, the Foreign Representatives rely on having mailed a summons with notice by international registered mail as service on defendants Centrum Bank, LGT Bank, Landesbank, and VP Bank in two cases filed by the Foreign Representative in New York State Supreme Court (index nos. 650277/2010 and 650316/2010, collectively, the "State Court Actions"). I further understand that the Foreign Representatives subsequently removed the State Court Actions to the Federal District Court for the Southern District of New York, and these actions were then referred to this Court, where they are pending as Adversary Proceeding Nos. 10-03635 (CGM) and 10-03636 (CGM) (the "CITCO Actions").

9.  I further understand that the Foreign Representatives have filed affidavits of service with this Court claiming to have served the Liechtenstein Banks with process by mailing to each of them at their respective Liechtenstein addresses summonses and complaints (and amended versions thereof) in both CITCO Actions,[6] by also mailing certain such documents to defendants at addresses in Cork, Ireland; and in Amsterdam,

---

[6] Adv. Proc. 10-03635, ECF #54 (LGT Bank, Landesbank, Centrum Bank); Adv. Proc. 10-03636, ECF #54 (LGT Bank, Landesbank, Centrum Bank); Adv. Proc. 10-03635, ECF #78 (LGT Bank, Landesbank, Centrum, not VP Bank); Adv. Proc. 10-03635, ECF #79 (VP Bank); Adv. Proc. 10-03636, ECF #78 (VP Bank); Adv. Proc. 10-03636, ECF #79 (LGT Bank, Landesbank, Centrum Bank, VP Bank); Adv. Proc. 10-03636, ECF # 80 (same); Adv. Proc. 10-03635, ECF #91 (same).

3

The Netherlands, in each case in care of certain Citco affiliates,[7] and finally by mailing a summons and amended complaint in both CITCO Actions to Centrum Bank, LGT Bank, and VP Bank (but not Landesbank) at the address of their respective U.S. legal counsel.[8]

10. I will herein refer to the aforementioned documents mailed by the Foreign Representative as the "Foreign Official Documents."

11. Given the lack of written evidence to the contrary, I understand that the Foreign Representatives have not completed or attempted service of the Foreign Official Documents on any of the Liechtenstein Banks in Liechtenstein through any other means besides their own sending of these documents by international registered mail. Specifically, I understand that the Foreign Representatives have not initiated procedures of international judicial assistance from the competent authorities of Liechtenstein upon a request from the relevant authorities of the United States of America.

C. **Summary of Conclusions**

12. My professional opinion, based on the facts known to me and the review of the applicable Liechtenstein Constitution, statutes and regulations, case law, and relevant scholarly literature, is as follows:

a. Delivery of the Foreign Official Documents on the Liechtenstein Banks by international registered mail is not valid service and is prohibited under Liechtenstein law.

---

[7] Adv. Proc. 10-03635, ECF #54 (LGT Bank, Centrum Bank); Adv. Proc. 10-03636, ECF #54 (LGT Bank, Centrum Bank); Adv. Proc. 10-03635, ECF #78 (LGT Bank, Centrum Bank); Adv. Proc. 10-03635, ECF #79 (VP Bank); Adv. Proc. 10-03636, ECF #78 (VP Bank); Adv. Proc. 10-03636, ECF #79 (LGT Bank, Centrum Bank, VP Bank); Adv. Proc. 10-03636, ECF # 80 (same); Adv. Proc. 10-03635, ECF #91 (same).

[8] Adv. Proc. 10-03635, ECF #53 (LGT Bank, Centrum Bank, VP Bank, care of their respective U.S. counsel, but not Landesbank); Adv. Proc. 10-03636, ECF #53 (same).

4

b. The service of process of documents initiating a lawsuit, such as the Foreign Official Documents, is a governmental act according to Liechtenstein law.

c. Liechtenstein law views not only the issuance but also the transmittal of the summonses to the Liechtenstein Banks on Liechtenstein territory as a governmental act. Any different characterization of the act of service of the Foreign Official Documents under American law or by American courts would be irrelevant.

d. As a governmental act, the transmittal of a summons is reserved to Liechtenstein public officials or recognized service providers according to the provisions of applicable Liechtenstein law.

e. There is no bilateral or multilateral treaty to which both the United States and Liechtenstein are a party or accepted custom between the governments of Liechtenstein and the United States governing the transmittal of a summons. Therefore, the only lawful way to effectuate valid service on Liechtenstein territory of a summons or similar document emanating from the United States is via mutual legal assistance, in accordance with the applicable Liechtenstein statute governing service.

f. Furthermore, by the same statute, official documents in a foreign language to be served in Liechtenstein require a translation into German, and a transmission without such translation generally renders service invalid.

g. Service of process via mutual legal assistance, using letters rogatory, has been made in other cases pending before United States courts, including in the United States Bankruptcy Court for the Southern District of New York.

h. Under Liechtenstein law, the service of the Foreign Official Documents on a defendant on the territory of Liechtenstein – other than in accordance with applicable Liechtenstein law – is an act by a representative of a foreign government. As a result,

delivery of the Foreign Official Documents by registered (or other) mail is prohibited under Liechtenstein criminal law as a violation of Liechtenstein sovereignty and carries a penalty of imprisonment.

i.  Liechtenstein courts will not enforce a foreign judgment against a party in Liechtenstein if service of the summons and other official documents was not completed in accordance with applicable Liechtenstein law.

j.  Any agreement that permits service of process or of other official documents by mail in contravention of the mandatory service provisions of Liechtenstein law is against Liechtenstein public order, and therefore void and unenforceable.

**D.    Analysis and Opinion**

*(1)    Liechtenstein Considers Service Of Official Documents On Liechtenstein Territory A Governmental Act.*

13.  Service of official documents on the territory of Liechtenstein is considered by the Liechtenstein government to be a governmental act reserved to Liechtenstein government agencies and officials.[9] This is consistent with the laws of the neighboring countries, Austria and Switzerland.[10]

---

[9] Note Verbale of the Ministry of Foreign Affairs of the Principality of Liechtenstein to the Embassy of the United States of America, dated January 27, 2017 as cited in the letter of the Ministry to the undersigned of the same date (hereinafter "Note Verbale"), 2. A true and complete copy of this letter is attached hereto as Exhibit B. *See* also *Vernehmlassungsbericht der Regierung betreffend die Schaffung eines Gesetzes über die Zustellung behördlicher Dokumente (Zustellgesetz) und die Abänderung zustellrechtlicher Bestimmungen in anderen Gesetzen* (Consultation report of the [Liechtenstein] government regarding the enactment of a law on service of official documents (Law on Service) and the amendment of service provisions in other laws), Vaduz, June 12, 2007 ("Report"), at 13.

[10] *See* Declaration of Nicholas Simon, dated June 6, 2012, submitted in administratively consolidated Adv. Pro. No. 10-3496 (SMB), ECF #695, on behalf of Defendant Vorarlberger Landes- und Hypothekenbank Aktiengesellschaft ("Simon Decl.") at ¶ I. 2, and the Note Verbale of the Austrian Foreign Ministry to the U.S. Embassy in Vienna, dated January 7, 2002, attached to the Simon Decl. as Exhibit A (the "Austrian Note Verbale"); *see* further

6

14. Liechtenstein law determines the nature and consequences of actions on Liechtenstein territory, in accordance with undisputed principles of territorial sovereignty accepted by public international law. Therefore, if Foreign Official Documents are delivered in the territory of Liechtenstein, the characterization of the act of service under foreign law, such as the law of the United States or an American State, is irrelevant.[11]

(2) *The Summonses In The State Court Actions And The Present Actions Are Official Documents.*

15. Any document commencing a lawsuit will be considered by Liechtenstein authorities to be an "official document," irrespective of who drafted the document and who delivered it.[12]

16. The summonses in the State Court Actions and the Present Actions purport to set the Liechtenstein Banks a statutory deadline to respond to the complaint and threaten a default judgment by the American court against any defendant who fails to respond before the lapse of the deadline.[13] This makes these documents "official".[14]

---

Declaration of Prof. Nicholas Jeandin, dated January 11, 2017, submitted in administratively consolidated Adv. Pro. No. 10-3496 (SMB), ECF #694, and in the CITCO Actions, ECF# 175 and ECF# 194; in each instance on behalf of Defendant HSBC Private Bank (Suisse) S.A., at ¶ 11/

[11] Note Verbale ¶5. I express no opinion as to whether the interpretation by certain American courts that service of process is a private – as opposed to a governmental – act is correct under applicable American law.

[12] Note Verbale ¶5-6.

[13] *See*, for example, Exhibit B (Summons with Notice) to Certified Order Transferring Case No. 10-cv-6640 from the U.S. District Court, S.D.N.Y., to the U.S. Bankruptcy Court, S.D.N.Y., Adv. Proc. 10-03635 (CGM), ECF #1-5, at 6 *et seq*.; and Exhibit B (Summons with Notice) to Certified Order Transferring Case No. 10-cv-6640 from the U.S. District Court, S.D.N.Y., to the U.S. Bankruptcy Court, S.D.N.Y., Adv. Proc. 10-03635 (CGM), ECF #1-5, at 6 *et seq*. *See* further Summons with Notice of Pre-Trial Conference, Adv. Proc. 10-03635 (CGM), ECF #11; and Summons with Notice of Pre-Trial Conference, Adv. Proc. 10-03519 (CGM), ECF #2.

[14] Note Verbale ¶¶3-6.

### (3) *Service Of Official Documents In Liechtenstein Must Be Performed According To The Liechtenstein Law Of Service*

17. Liechtenstein law regulates all aspects of service of official documents in a comprehensive statute, the Law on Service (*Zustellgesetz*).[15] The provisions of the Law on Service are mandatory throughout, i.e., they are not subject to the disposition of private parties and may not be altered by private agreement.[16]

18. Pursuant to the Law on Service, service of official documents in Liechtenstein must be carried out by court-appointed officials or court-appointed service providers,[17] and any person carrying out service of official documents acts in the capacity of an officer of the issuing authority.[18]

### (4) *Service Of Foreign Official Documents Must Be Ordered By A Liechtenstein Court Upon Application Of The Foreign Authority.*

19. If a document emanating from a foreign authority or court is to be served in Liechtenstein, the law provides that service on Liechtenstein territory is to be made pursuant to the provisions of existing international treaties or international custom or, in the absence of either, the Law on Service.[19]

20. No bilateral treaty exists between Liechtenstein and the United States addressing civil procedure in international matters or proper procedures for service of process.[20] Liechtenstein also is not party to any relevant multilateral treaty, such as the Hague

---

[15] Law of October 22, 2008 on the Service of Official Documents (*Gesetz vom 22. Oktober 2008 über die Zustellung behördlicher Dokumente, Zustellgesetz*, the "Law on Service" or "LS"); Note Verbale ¶7.

[16] Note Verbale ¶14.

[17] LS Article 3.

[18] LS Article 4.

[19] LS Article 14(1); Note Verbale ¶7.

[20] Note Verbale ¶8.

8

Convention of November 15, 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention").[21] There also is no international custom between the United States and Liechtenstein regarding the service of documents originating from courts or government agencies of other countries outside the provisions of the Law on Service.[22] Liechtenstein has objected to purported service by registered mail of official documents emanating from the United States on addressees in Liechtenstein and declared that the provisions of the Law on Service are mandatory.[23] Thus, the Law on Service governs service of foreign official documents originating in the United States and to be served in Liechtenstein, as in the present case.

21. To serve foreign official documents in Liechtenstein, the foreign authority or court from which the documents originate must make an application for legal assistance to the Liechtenstein District Court (*Landgericht*),[24] via letters rogatory to the Liechtenstein Ministry of Justice.[25]

22. The District Court must provide legal assistance to foreign courts upon application, unless a mandatory reason to refuse legal assistance exists.[26] The court must provide any legal assistance pursuant to the provisions of the applicable Liechtenstein

---

[21] *Id.*

[22] *Id.*

[23] Note Verbale ¶9.

[24] LS Article 14 (1) and Section 27 (1) of the Liechtenstein Law of December 10, 1912 on the exercise of jurisdiction of the courts and jurisdiction of the courts in civil matters (*Gesetz vom 10. Dezember 1912 über die Ausübung der Gerichtsbarkeit und die Zuständigkeit der Gerichte in bürgerlichen Rechtssachen*) ("Law on Jurisdiction" or "LJ"); Note Verbale ¶9.

[25] Note Verbale ¶9, last sentence.

[26] LJ Article 27 (1) and (2). Reasons for refusal of legal assistance are: 1. if the requested act is not within the jurisdiction of the courts (if another authority has jurisdiction to order the requested act, the court may transfer the request to such authority); if the requested act is prohibited by Liechtenstein law; and 3. if the requesting state does not provide mutual legal assistance. LJ Section 27 (2). *See also* Note Verbale ¶12.

9

laws,[27] meaning that service of foreign court documents must be ordered by the District Court and carried out by a court-appointed official or court-appointed service provider, as set forth above.

23.    The Law on Service enables, but does not compel, the District Court to permit other methods of service, upon specific request of the foreign court and if this does not contradict basic tenets of Liechtenstein law.[28]

24.    Based on the facts known to me, no request was made in the present case to a Liechtenstein court to permit service of the Foreign Official Documents on any of the Liechtenstein Banks in any specific way, including by registered mail. The attempted service by registered mail violates Liechtenstein law and is invalid for this reason alone.

25.    Furthermore, there is no reported Liechtenstein authority for allowing service by international registered mail in deviation from the provisions of the Law on Service, and Liechtenstein has communicated to the United States its objection to service of official documents by registered mail.[29]

26.    I have reviewed *Marks v. Alfa Group*, 615 F. Supp. 2d 375 (E.D. Pa. 2009), and *Lewis v. Dimeo*, 41 F. Supp. 3d 108 (D. Mass. 2014). For the reasons set forth above, it is my opinion that those American courts' interpretation of Liechtenstein's law for service is incorrect. Liechtenstein does not permit service of process by international registered mail.

27.    Litigants in United States courts, including the United States Bankruptcy Court for the Southern District of New York, have successfully used the letters rogatory

---

[27] LJ Section 28 (1); Note Verbale ¶10.
[28] LJ Section 28 (2); Note Verbale ¶10.
[29] Note Verbale ¶11.

10

procedure to serve process on defendants in Liechtenstein, including on LGT Bank, one of the defendants in the present adversary proceedings.[30]

### (5) *Foreign Official Documents to Be Served in Liechtenstein Must Be Translated.*

28. In addition, any foreign official document in a foreign language must be served along with a translation into the official language of Liechtenstein, *i.e.*, German.[31]

29. The right to a translation of official documents in a foreign language into German emanates from the Liechtenstein Constitution.[32] Thus, a translation is necessary in every case, unless it is waived in accordance with the provisions of the Law on Service.

30. The Law on Service provides that the translation requirement may be waived, provided the document is otherwise served properly, if the recipient accepts service of the document without German translation. Acceptance, and thus a waiver, is presumed if the recipient does not object within fourteen days upon service of the document, but for the 14-day deadline to run, the recipient must not only be served properly but must also be advised of the right to object to service without translation.[33]

31. Based on the available evidence known to me, the Foreign Official Documents were not translated into German and none of the Liechtenstein Banks was advised of its right to refuse acceptance of service without translation when the Foreign Official

---

[30] *See, e.g.*, Letter of October 4, 2012 of Princely District Court of Liechtenstein to United States Bankruptcy Court, Southern District of New York, Mutual judicial assistance in civil matters, Your request for service dated 08/22/2012, bankruptcy case file number: 08-01789 (brl), contentious legal proceedings no. 11-02929 (brl); filed on October 26, 2012 as ECF #9 in Adv. Proc. 11-02929-CGM, captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. LGT Bank in Liechtenstein Ltd.* (the "Mutual Legal Assistance Confirmation"). A copy of the Mutual Legal Assistance Confirmation is attached hereto as Exhibit C.

[31] LS Article 14 (2). Note Verbale ¶13.

[32] Opinion of the Liechtenstein Constitutional Court (*Entscheidung des Staatsgerichtshof*), StGH 2000/1, Liechtenstein Official Reporter (*Liechtensteiner Entscheidsammlung*, LES) 2003, 71, at 77.

[33] LS Article 14 (2), last sentence (addressee must be advised of the right to a translation); Note Verbale ¶13.

11

Documents were mailed to it by the Foreign Representatives without translation. Thus the attempted service of the Foreign Official Documents also violates Liechtenstein law for lack of the required translation and is also invalid for that reason.[34]

### (6) Attempted Service on Liechtenstein Territory in Contravention of Liechtenstein Law Is A Criminal Offense.

32. As explained above, service of official documents is a governmental act in Liechtenstein. A foreign party purporting to serve a party in Liechtenstein in deviation from the procedures prescribed by the Law on Service is tantamount to usurping a function reserved to government officials. Liechtenstein law expressly prohibits anyone from performing on Liechtenstein territory an act that by law is reserved to a governmental official or authority, and makes a contravention a criminal offense punishable by up to three years' imprisonment.[35]

33. There can thus be no doubt that any attempt to serve a party in Liechtenstein in any other way than prescribed by Liechtenstein law is prohibited.

### (7) A Private Agreement Regarding Service of Process Is Void.

34. As stated above, the provisions of the Law on Service are mandatory throughout and private parties may not enter into any agreements providing for service by any specific means, including means that differ from those contemplated by the Law on Service. Thus any purported private agreement providing for such alternative means of service in Liechtenstein would be deemed an illegal attempt at circumventing the mandatory provisions for service in Liechtenstein. Accordingly, such an agreement

---

[34] *Cf.* Austrian Note Verbale ¶4 for the very similar Austrian Law on Service.
[35] Article 2 of the Liechtenstein Law for the Protection of the State of March 14, 1949 (*Staatsschutzgesetz vom 14. März 1949*); Note Verbale ¶15.

would not be able to cure the breach of Liechtenstein law that results from any attempt at serving foreign official documents without obtaining an order by the competent Liechtenstein court; it would be null and void under Liechtenstein law and could not be enforced in a Liechtenstein court.[36] Any attempted service in accordance with such an agreement on Liechtenstein territory would be a criminal offense.

(8)   *Mailing The Summons To A Third Party Outside Liechtenstein Is Not Valid Service*

35.    Furthermore it is my firm opinion that regardless of whether pursuant to an (illegal) agreement or not, the Foreign Representatives' mailing of a summons or complaint addressed to any of the Liechtenstein Banks in care of a third party, such as an attorney in the United States or an affiliate of the Citco group of companies, at addresses in Ireland and The Netherlands, is not valid service under Liechtenstein law. This would constitute an impermissible circumvention of the Law on Service. While the Law on Service permits a party, absent specific provisions to the contrary, to appoint an agent to accept service of documents from a public official or state agency, such an agent cannot be appointed if it does not have a physical address within Liechtenstein.[37] The reason for this is that service must be completed at an address on Liechtenstein territory, and in any case in accordance with the above-mentioned provisions of the Law on Service, including the translation.

**D.    Conclusions**

36.    Delivery of the Foreign Court Documents on the Liechtenstein Banks by international registered mail and without translation does not constitute valid service and is prohibited under Liechtenstein law.

---

[36] Note Verbale ¶14.
[37] Art. 9 Law on Service.

37. Any purported agreement permitting service by any means other than as ordered by a Liechtenstein court is void and would be unenforceable in Liechtenstein.

38. Service may not be made on an agent appointed that does not have an address in Liechtenstein on to which service is actually made, in the manner prescribed by Liechtenstein law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 21, 2021, at Triesen, Liechtenstein

_____
Dr. Hilmar Hoch, LL.M., Esq.