**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, *et al.*,<br><br>     *Debtors in Foreign Proceedings.* | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>(Jointly Administered) |
| FAIRFIELD SENTRY LTD. (In Liquidation), *et al.,*<br><br>     *Plaintiffs,*<br><br>     v.<br><br>ABN AMRO SCHWEIZ AG, *et al.,*<br><br>     *Defendants.* | Adv. Pro. No. 10-03635 (CGM) |
| FAIRFIELD SENTRY LTD. (In Liquidation), *et al.,*<br><br>     *Plaintiffs,*<br><br>     v.<br><br>ABN AMRO SCHWEIZ AG, *et al.,*<br><br>     *Defendants.* | Adv. Pro. No. 10-03636 (CGM) |
| This document is also being filed in the lead adversary proceeding, *Fairfield Sentry Ltd. (in Liquidation), et al. v. Theodoor GGC Amsterdam, et al.*, Adv. Pro. No. 10-03496. | |

**ALLIANZ BANK FINANCIAL ADVISORS S.P.A.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

    A.   Plaintiffs' Purported Service of the Summons and Complaint ...................................... 3

    B.   Relevant Procedural History ...................................................................................... 6

        1.   Allianz Bank's First Motion to Dismiss for Insufficient Service of Process.......... 6

        2.   Allianz Bank's Second Motion to Dismiss for Insufficient Service of Process ..... 7

        3.   The HSBC Decision................................................................................................ 8

ARGUMENT ........................................................................................................................ 9

I.    Plaintiffs' Purported Service Was Improper.......................................................... 9

    A.   The Purported Service Did Not Satisfy Rule 4(f)(1) Because
        It Was Not Authorized by the Hague Service Convention ......................................... 10

    B.   Rule 4(f)(2) Did Not Authorize Plaintiffs  to Serve
        Allianz Bank by International Mail ............................................................................ 12

II.   Plaintiffs' Anticipated Requests for Alternative Service and Additional
    Time to serve Should Be Denied ............................................................................ 13

    A.   Plaintiffs Never Reasonably Attempted Service ....................................................... 14

    B.   The Court Should Not Grant Plaintiffs Additional Time to Serve Allianz Bank......... 17

        1.   Plaintiffs Did Not Exercise Due Diligence in
           Attempting to Serve Allianz Bank ........................................................................ 17

        2.   Allianz Bank Has Been Prejudiced by Plaintiffs Lack of Due Diligence............. 19

JOINDER AND RESERVATION OF RIGHTS ........................................................................ 21

CONCLUSION ...................................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*,
   385 F. Supp. 3d 212 (S.D.N.Y. 2019) ............................................................... 15, 16

*Berdeaux v. OneCoin Ltd.*,
   No. 19-CV-4074(VEC), 2019 WL 8685006 (S.D.N.Y. 2019) ................................. 15

*Brockmeyer v. May*,
   383 F.3d 798 (9th Cir. 2004) .................................................................................. 12

*Cassano v. Altshuler*,
   186 F. Supp. 3d 318 (S.D.N.Y. 2016) ...................................................................... 18

*Charych v. Siriusware, Inc.*,
   No. CV 17-468 (JS) (GRB), 2018 WL 4870906 (E.D.N.Y. July 30, 2018)
   *aff'd*, 790 F. App'x 299 (2d Cir. 2019) .................................................................... 13

*Convergen Energy LLC v. Brooks*,
   No. 20-CV-3746 (LJL), 2020 WL 4038353 (S.D.N.Y. July 17, 2020) .................... 14

*Coudert Bros. LLP*,
   No. 16-CV-8237 (KMK), 2017 WL 1944162 (S.D.N.Y. May 10, 2017)......... 11, 13

*Dickerson v. Napolitano*,
   604 F.3d 732 (2d Cir. 2010) ...................................................................................... 9

*Essco Faith S.A. v. Tradeline (L.L.C.)*,
   No. 06 CV 1851 (BSJ)(MHD), 2008 WL 11515348 (S.D.N.Y. Jan. 14, 2008),
   *as amended*, 2008 WL 11515349 (S.D.N.Y. Apr. 11, 2008).................................... 17

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*),
   596 B.R. 275 (Bankr. S.D.N.Y. 2018) ...................................................................... 7

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*),
   Adv. Pro. No. 10-03496 (SMB),
   2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)....................................... 1, 7, 12

*Fed. Trade Commission v. Pecon Software Ltd.*,
   No. 12 Civ. 7186(PAE), 2013 WL 4016272 (S.D.N.Y. Aug. 7, 2013) ................... 16

*Freeplay Music, LLC v. Rigol Technology USA, Inc.*,
   No. 18 Civ. 10980 (ER), 2020 WL 564232 (S.D.N.Y. Feb. 4, 2020)...................... 16

*Halvorssen v. Simpson*,
    328 F.R.D. 30 (E.D.N.Y. 2018) .......................................................................... 16

*Hines v. Roc-A-Fella Records, LLC*,
    No. 19-CV-4587 (JPO), 2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020)................................. 17

*In re Bozel S.A.*,
    No. 16-cv-3739(ALC), 2017 WL 3175606 (S.D.N.Y. July 25, 2017)........................ 17, 18, 19

*In re Fairfield Sentry Ltd.*,
    No. 10-03496, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020)............................. 3, 8, 11

*In re Veon Ltd. Securities Litigation*,
    No. 15-CV-08672 (ALC), 2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018).................. 17, 18, 19

*L.A. Printex Industries, Inc. v. A.H. Schrieber Co.*,
    No. CV1100613SVWCWX, 2011 WL 13218042 (C.D. Cal. Aug. 26, 2011) ...................... 20

*Mayorga v. Ronaldo*,
    No. 2:19-CV-0168(JAD)(CWH), 2019 WL 1532861 (D. Nev. Apr. 8, 2019) ...................... 12

*Morgenthau v. Avion Resources Ltd.*,
    11 N.Y.3d 383 (2008)........................................................................................... 10

*Omni Capital International, Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987) ................................................................................................. 9

*Peifa Xu v. Gridsum Holding Inc.*,
    No. 18 CIV. 3655 (ER), 2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020) ................................ 15

*Picard v. Unifortune Asset Management SGR SPA, and Unifortune Conservative Funds*,
    Adv. Pro. No. 11-02553 (Bankr. S.D.N.Y.) ................................................................. 20

*S.E.C. v. China Northeast Petroleum Holdings Ltd.*,
    27 F. Supp. 3d 379 (S.D.N.Y. 2014) .................................................................. 14, 16

*SeaCube Containers LLC v. Compass Containers & Shipping Services Ltda.*,
    427 F. Supp. 3d 497 (S.D.N.Y. 2019) ...................................................................... 10

*SEC v. Cluff*,
    No. 17-CV-2460 (RMB) (KNF), 2018 WL 896027 (S.D.N.Y. Jan. 10, 2018)...................... 15

*Seretse v. Andersen Corp.*,
    No. CIV. 12-CV-323 SRN, 2013 WL 2434876 (D. Minn. June 4, 2013) .............................. 20

*Spin Master Ltd. v. 158*,
F.Supp.3d 348 (S.D.N.Y. 2020) ......................................................................... 15

*The Knit With v. Knitting Fever, Inc.*,
No. CIV. A. 08-4221, 2010 WL 2788203 (E.D. Pa. July 13, 2010) ........................... 10, 12, 13

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988) ........................................................................................ 10

*Water Splash, Inc. v. Menon*,
137 S. Ct. 1504, 1513 (2017) ……………………………………………………………10, 11

*Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*,
451 F. Supp. 2d 585 (S.D.N.Y. 2006) ................................................................. 16

*Zanghi v. Ritella*,
No. 19 CIV. 5830(NRB), 2020 WL 589409 (S.D.N.Y. Feb. 5, 2020) ......................... 13

*Zapata v. City of New York*,
502 F.3d 192 (2d Cir. 2007) ............................................................................. 19

*Zherka v. Ryan*,
52 F. Supp. 3d 571 (S.D.N.Y. 2014) ................................................................... 9

## RULES

Fed. R. Bank. P. 7004 ..................................................................................... 1

Fed. R. Bank. P. 7005 ..................................................................................... 1

Fed. R. Bank. P. 7012 ..................................................................................... 1

Fed. R. Civ. P. 4 ............................................................................................ 1

Fed. R. Civ. P. 4(f) ............................................................................... *passim*

Fed. R. Civ. P. 4(h)(2) ................................................................................... 5

Fed. R. Civ. P. 4(m) ............................................................................. *passim*

Fed. R. Civ. P. 5 ............................................................................................ 1

Fed. R. Civ. P. 6(b) ..................................................................................... 17

Fed. R. Civ. P. 12(b)(5)........................................................................................................*passim*

**OTHER AUTHORITIES**

Convention on the Service Abroad of Judicial and Extrajudicial Documents
in Civil or Commercial Matters ....................................................................................*passim*

U.S. Dep't of State, Italy Judicial Assistance (Service), available at https://travel.state.gov/
content/travel/en/legal/Judicial-Assistance-Country-Information/Italy.html ......................... 12

Pursuant to this Court's April 26, 2021 order (ECF No. 3616) ("April 26, 2021 Order"), and without waiving any jurisdictional defenses, Allianz Bank Financial Advisors S.p.A. ("Allianz Bank") respectfully submits this memorandum of law in support of its motion, pursuant to Rules 4, 5, and 12(b)(5) of the Federal Rules of Civil Procedures (the "Rules"), made applicable to these adversary proceedings by Federal Rules of Bankruptcy Procedure 7004, 7005, and 7012 (the "Motion"), for an order dismissing with prejudice all of the remaining claims brought by Kenneth Krys and Greig Mitchell (the "Plaintiffs"), in their capacities as foreign representatives and liquidators of Fairfield Sentry Limited (In Liquidation), Fairfield Sigma Limited (In Liquidation), and Fairfield Lambda Limited (In Liquidation), set forth in the amended complaints (Adv. Pro. No. 10-03635, ECF No. 466; Adv. Pro. No. 10-03636, ECF No. 517).[1]

## PRELIMINARY STATEMENT

These adversary proceedings have been pending for over a decade. During that time, Plaintiffs have attempted to serve Allianz Bank outside the United States by only one method— placing the summons and complaint in the mail.

This method of service was ineffective, and Plaintiffs have conceded this point. Specifically, Plaintiffs have acknowledged that service by mail is ineffective under the Hague Service Convention (defined below). And there can be no dispute that the Hague Service Convention applies to Allianz Bank given that it is located in Italy, a signatory to the Hague Service Convention. For these reasons alone, the complaints in these adversary proceedings should be dismissed.

---

[1] Unless otherwise indicated, "ECF No. __" shall refer to entries on the administratively consolidated docket, *Fairfield Sentry Limited (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.* (Adv. Pro. No. 10-03496).

But there is more. Plaintiffs have not even named Allianz Bank as a defendant in the complaints. They have instead named the non-existent entity, "Allianzbank SPA/Unifortune Conservative Side Pocket," and addressed all mail to this non-existent entity.

Plaintiffs have been on notice of their failure to name and serve a proper defendant since at least June 2012, when counsel for Allianz Bank appeared in these actions and notified Plaintiffs that Allianz Bank was "improperly sued as 'Allianzbank SPA/Unifortune Conservative Side Pocket' (a non-existent entity)." (*See, e.g.*, Adv. Pro. No. 10-03635, ECF No. 117; Adv. Pro. No. 10-03636, ECF No. 118.) Throughout the intervening nine years, Allianz Bank has consistently reminded Plaintiffs in its filings that Allianz Bank was never properly named or served. And yet, despite knowing for nine years that Allianz Bank was never properly served, Plaintiffs ***never*** made a single attempt to remedy this fundamental, jurisdictional defect. For example, they never attempted to serve Allianz Bank via the Hague Service Convention, and they never sought leave to serve—or even attempted service upon—Allianz Bank's counsel.

Allianz Bank expects that Plaintiffs will respond to this Motion by now seeking leave from this Court to effectuate alternative service. Any such request should be denied. As Plaintiffs themselves have acknowledged, to effectuate service upon Allianz Bank at this late date, Plaintiffs must show that they "reasonably attempted" service in the past and exercised "due diligence" in their prior attempts at service. (*See* ECF No. 3033 at 30, 34.) Plaintiffs cannot make either showing. These standards require more than what Plaintiffs have attempted here: placing the summons and complaint in the mail in violation of the Hague Convention, addressing the envelope to a non-existent entity in a foreign country, and then never again attempting service in the nine years since learning that the summons and complaint were directed to an incorrect party.

A finding by this Court that Plaintiffs failed to reasonably and diligently attempt service upon Allianz Bank would not conflict with the decision of the Hon. Stuart M. Bernstein in *In re Fairfield Sentry Ltd.*, No. 10-03496, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020).  Indeed, following the issuance of that decision, which dealt solely with HSBC Private Bank (Suisse) SA ("HSBC"), Judge Bernstein acknowledged that the "propriety of ordering [alternative] service on any other [defendant] depends on the facts of that case."  (ECF No. 3076 at 2.)  The facts surrounding Plaintiffs' purported service on Allianz Bank merit a different result than the facts presented in the HSBC case.  Specifically, Plaintiffs (i) did not undertake diligent efforts to serve Allianz Bank under Rule 4(f)(3), and (ii) cannot show alternative service would be timely under Rule 4(m).

For all these reasons, and the additional reasons set forth below, the Court should dismiss with prejudice the remaining claims against Allianz Bank, which was improperly named as Allianzbank SPA/Unifortune Conservative Side Pocket.

## STATEMENT OF FACTS

### A.    Plaintiffs' Purported Service of the Summons and Complaint

Adversary proceeding numbers 10-3635 and 10-3636 (the "Adversary Proceedings") were opened, and amended complaints were filed, on September 21, 2010.  Corresponding summons were issued on October 4, 2010. Each summons and complaint named the non-existent entity, "Allianzbank SPA/Unifortune Conservative Side Pocket" (the "Non-Existent Entity"), as a defendant.  (Adv. Pro. No. 10-03635, ECF No. 1; Adv. Pro. No. 10-03636, ECF No. 1.)

On October 20, 2010 (in Adv. Pro. No. 10-03635) and October 21, 2010 (in Adv. Pro. No. 10-03636), Plaintiffs' agent purported to serve the summons and complaint in each of the Adversary Proceedings upon the Non-Existent Entity via "International Registered Mail." (Adv. Pro. No. 10-03635, ECF No. 54 at 4, 6; Adv. Pro. No. 10-03635, ECF No. 54 at 4, 6.)  Specifically,

in each of the Adversary Proceedings, Plaintiffs' agent sent envelopes containing the summons and complaint to:

1. **Allianzbank SPA/Unifortune Conservative Side Pocket**
   c/o Citco Global Custody N.V.
   c/o Citco Bank Nederland NV
   Telestone 8 – Teleport
   Narritaweg 165
   1043BW Amsterdam
   The Netherlands

2. **Allianzbank SPA/Unifortune Conservative Side Pocket**
   c/o Citco Global Custody N.V.
   c/o Citco Data Processing Services Ltd.
   2600 Cork Airport Business Park
   Kinsale Road
   Cork, Ireland

3. **Allianzbank SPA/Unifortune Conservative Side Pocket**
   c/o AllianzBank S.p.A.
   Piazza Erculea 15
   20122 Milano
   Italy

On January 26, 2011 and May 10, 2011 (in Adv. Pro. No. 10-03635), and on February 4, 2011 and May 10, 2011 (in Adv. Pro. No. 10-03636), in addition to mail directed to the above addresses, Plaintiffs also sought to effect service by having their agent mail the Corrected First Amended Complaint and the Second Amended Complaint, and their associated summonses, to **Allianzbank SPA/Unifortune Conservative Side Pocket,** c/o AllianzBank S.p.A., Piazza Erculea 15, 20122 Milano, Italy.  (Adv. Pro. No. 10-03635, ECF Nos. 78 at 7, 91 at 7; Adv. Pro. No. 10-03636, ECF Nos. 80 at 7, 92 at 7.)

Kobre & Kim LLP ("Kobre & Kim") appeared on behalf of Allianz Bank in the Adversary Proceedings on June 8, 2012.  (*See* Adv. Pro. No. 10-03635, ECF No. 117 at 2; Adv. Pro. No. 10-03636, ECF No. 118 at 2.)  Allianz Bank is an entity incorporated and organized under the laws of Italy. (*See* Adv. Pro. No. 10-03635, ECF No. 118, at 2; Adv. Pro No. 10-03636, ECF No. 119,

at 2; *see also generally* Adv. Pro. No. 10-03635, ECF No. 491; Adv. Pro No. 10-03636, ECF No.

548.)

Upon appearing in the case in June 2012, Kobre & Kim immediately alerted Plaintiffs to

the fact that the Non-Existent Entity was not a proper party to name or serve.  (*See* Adv. Pro. No.

10-03635, ECF No. 117 at 2; Adv. Pro. No. 10-03636, ECF No. 118 at 2.)  Indeed, the notice of

appearance stated that Kobre & Kim was entering "an appearance in this action for Allianz Bank

Financial Advisors S.p.A. . . . improperly sued as 'Allianzbank SPA/Unifortune Conservative Side

Pocket' (a non-existent entity)."  *Id.*  In addition, Kobre & Kim expressly reserved Allianz Bank's

rights to challenge, among other things, service of process.

Allianz Bank's subsequent filings have consistently reminded Plaintiffs that the Non-

Existent Entity should not have been named, and that Allianz Bank was never served.  Those

filings state:

- ▪ The Liquidators have not actually named Allianz Bank as a defendant.  They have named the nonexistent entity of "Allianzbank SPA/Unifortune Conservative Side Pocket" . . . . [The Liquidators] purport to allege that they served the Non-Existent Defendant abroad via U.S. Postal Service, by mailing certain documents to the Non-Existent Defendant "c/o AllianzBank S.p.A."  (Adv. Pro. No. 10-03635, ECF No. 205 at 1; Adv. Pro. No. 10-03636, ECF No. 228 at 1.)

- ▪ Allianz Bank reserves, as appropriate, all rights to . . . assert any defenses and/or arguments relating to the Liquidators' failure properly to: (i) name or identify Allianz Bank as a defendant; (ii) identify or describe Allianz Bank (or its purported role in alleged events); and/or (iii) serve Allianz Bank.  (Adv. Pro. No. 10-03635, ECF No. 315 at 5; Adv. Pro. No. 10-03636, ECF No. 345 at 5.)

- ▪ The Liquidators have not named Allianz Bank as a defendant, but have purported to name the non-existent entity of "Allianzbank SPA/Unifortune Conservative Side Pocket."  By filing this Notice of Appearance, Allianz Bank does not waive – but expressly preserves – all arguments and/or defenses relating to the Liquidators' failure properly: (i) to name and/or identify Allianz Bank as a defendant; (ii) to identify and/or describe Allianz Bank or its purported role in alleged events; and (iii) to serve Allianz Bank.  (Adv. Pro. No. 10-03635, ECF No. 401 at n.1; Adv. Pro. No. 10-03636, ECF No. 450 at n.1.)

▪ The Liquidators have not actually named Allianz Bank as a defendant. They have named a nonexistent entity, "Allianzbank SPA/Unifortune Conservative Side Pocket" (the "Non-Existent Defendant"). The Liquidators allege that they served the Non-Existent Defendant abroad via U.S. Postal Service, by mailing certain documents to the Non-Existent Defendant "c/o AllianzBank S.p.A." . . . . For Allianz Bank, the Liquidators' purported service was particularly lacking given that . . . the Liquidators addressed the mailing to a nonexistent entity. (Adv. Pro. No. 10-03635, ECF No. 490 at 2; Adv. Pro. No. 10-03636, ECF No. 547 at 2.)

Despite having notice of their failure to properly name or serve Allianz Bank for nearly nine years, Plaintiffs have taken no steps to remedy this threshold, jurisdictional defect. Plaintiffs never sought leave—or otherwise attempted—to serve the summons or complaint on counsel for Allianz Bank, nor have Plaintiffs attempted any other form of service since their deficient mailings in 2010 and 2011.

Just one week ago, Plaintiffs filed a motion seeking leave to amend their complaints. The proposed amended complaints continue to incorrectly name the Non-Existent Entity as a defendant, and Plaintiffs did not request leave to re-serve the Non-Existent Entity, let alone serve Allianz Bank. (*See* Adv. Pro. No. 10-03635, ECF No. 559; Adv. Pro. No. 10-03636, ECF No. 617.)[2]

## B.    Relevant Procedural History

### 1.    Allianz Bank's First Motion to Dismiss for Insufficient Service of Process

On January 13, 2017, Allianz Bank and other foreign defendants moved to dismiss the complaints in these Adversary Proceedings for failure to properly serve under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters

---

[2] Plaintiffs have responded to Allianz Bank's statement that "Allianzbank SPA/Unifortune Conservative Side Pocket" is a non-existent entity only once. In April 2017, in response to Allianz Bank's first motion to dismiss under Rule 12(b)(5), which is described further in Section B.1. below, Plaintiffs stated merely that "the allegations in the Proposed Amended Complaint are based, in part, on the records of the Funds" and that they "reserve their right to revise the caption and its complaint in the event discovery reveals information contrary to that in the Funds' records." (Adv. Pro. No. 10-03635, ECF No. 288 at 1-2, 2-3; Adv. Pro. No. 10-03636, ECF No. 317 at 1-2, 2-3.) Of course, any revision to the captions and complaints will not cure Plaintiffs' prior failure to serve Allianz Bank.

("Hague Service Convention"), among other bases for dismissal. (Adv. Pro. No. 10-3635, ECF Nos. 170-71; Adv. Pro. No. 10-3636, ECF Nos. 189-90.)

Allianz Bank filed an individual brief in support of the motions to dismiss on January 27, 2017, and an individual reply brief on June 9, 2017. (Adv. Pro. No. 10-3635, ECF Nos. 205 and 315; Adv. Pro. No. 10-3636, ECF Nos. 228 and 345.) Those briefs made clear that Plaintiffs had named and served a Non-Existent Entity and that the complaints should be dismissed for insufficient service of process.

In decisions dated August 6, 2018 and December 6, 2018, the Court held that it had subject matter jurisdictions over these Adversary Proceedings and that certain claims should be dismissed. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), Adv. Pro. No. 10-03496 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018); *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), 596 B.R. 275 (Bankr. S.D.N.Y. 2018). In the August 6, 2018 decision, the Court held that subscription agreements allegedly executed by defendants in the Adversary Proceedings were "irrelevant" to the claims at issue. 2018 WL 3756343, at *12. In both decisions, the Court did not reach and did not rule on whether the claims against the Non-Existent Entity should be dismissed for improper service. In orders implementing the 2018 rulings, the Court explicitly reserved defendants' rights to move to dismiss on grounds not addressed by those rulings—including, as relevant here, insufficient service of process. (ECF Nos. 1957, 1958.)

### 2.    Allianz Bank's Second Motion to Dismiss for Insufficient Service of Process

On March 16, 2020, various defendants, including Allianz Bank, filed consolidated briefs in support of motions to dismiss for insufficient service of process and other grounds. (ECF No.

2902-03.)  On March 23, 2020, Allianz Bank submitted supplemental briefing in support of its motions to dismiss.  (ECF No. 2974.)

On April 14, 2020, the Court revised its prior briefing schedule for the motions to dismiss and, in so doing, limited the briefing to service issues arising in Adversary Proceeding No. 10-03633 (the "HSBC Action") against HSBC.  The Court "expressly preserved and held in abeyance" all other defendants' service arguments.  (ECF No. 3028, at 3 ¶ 4.)  Allianz Bank and the Non-Existent Defendant are not parties to the HSBC Action and, therefore, never completed briefing a motion to dismiss for insufficient service of process.

In their opposition to HSBC's motion to dismiss, Plaintiffs did not contest HSBC's argument that service by mail upon a foreign defendant does not comply with the Hague Service Convention.  (*See* Memorandum of Law in Opposition to Defendants' Renewed Motion to Dismiss, ECF No. 3033, at 23-24 (May 29, 2020) ("Consolidated Opposition").)  Instead, Plaintiffs sought retroactive approval of their deficient mail service upon HSBC's U.S. counsel, or authority to re-serve HSBC via alternative means.  (*Id.*)  Unlike in the HSBC Action, Plaintiffs have never served Allianz Bank's U.S. counsel by mail.

### 3.    The HSBC Decision

On December 14, 2020, the Court denied HSBC's motion to dismiss for improper service in the HSBC Action.  *See generally* HSBC Decision, 2020 WL 7345988.  In the HSBC Decision, the Court noted that "[t]he Liquidators do not dispute that mail service on HSBC Suisse failed to satisfy the requirements of the Hague Service Convention."  *Id*. at *10.  The Court nevertheless held that, based on facts specific to HSBC and their counsel, the Court would authorize alternative service upon Plaintiffs under Rule 4(f)(3).  *Id*.

In its April 26, 2021 Order, this Court denied without prejudice any outstanding motions to dismiss and set a briefing schedule requiring that any further motions to dismiss for insufficient service of process be filed by May 21, 2021.  (ECF No. 3616 at 2.)

## ARGUMENT

## I.    PLAINTIFFS' PURPORTED SERVICE WAS IMPROPER

The Court should dismiss Plaintiffs' claims against "Allianzbank SPA/Unifortune Conservative Side Pocket" for insufficient service of process under Rule 12(b)(5).

This Court cannot "exercise personal jurisdiction over a defendant," and an action must be dismissed, if the plaintiff fails to establish "a basis for the defendant's amenability to service . . ." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  An applicable statute or rule must supply the required authorization for service, because federal courts cannot "create a common-law rule authorizing service of process."  *Id.* at 107-08, 111.

In this case, "Allianz Bank SPA/Unifortune Conservative Side Pocket" is a non-existent entity and, therefore, is not amenable to service.  For this reason alone, the claims against this non-existent entity should be dismissed.

Assuming that Plaintiffs' references to "Allianz Bank SPA/Unifortune Conservative Side Pocket" are intended to refer to Allianz Bank, Plaintiffs' purported mail service upon Allianz Bank was also deficient.  Allianz Bank is an entity incorporated and organized under the laws of Italy. Rule 4(h)(2) provides that service upon a foreign corporation must be made "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery."  Fed. R. Civ. P. 4(h)(2).  Thus, Plaintiffs must carry their burden of proving proper and adequate service upon Allianz Bank under Rule 4(f).  *See Dickerson v. Napolitano*, 604 F.3d 732, 752-53 (2d Cir. 2010); *Zherka v. Ryan*, 52 F. Supp. 3d 571, 576 (S.D.N.Y. 2014) ("It is the plaintiff's burden to prove that service was adequate.").

As detailed below, Plaintiffs cannot meet their burden to show that their service by mail upon an Italian defendant complied with Rule 4(f).

### A.    The Purported Service Did Not Satisfy Rule 4(f)(1) Because It Was Not Authorized by the Hague Service Convention

Rule 4(f)(1) authorizes service "by any internationally agreed upon means . . . such as those authorized by the Hague [Service Convention]." The United States and Italy are signatories to the Hague Service Convention. *See The Knit With v. Knitting Fever, Inc.*, No. CIV. A. 08-4221, 2010 WL 2788203, at *4 n.2 (E.D. Pa. July 13, 2010). Where it applies, "compliance with the [Hague Service] Convention is mandatory." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988); *accord Morgenthau v. Avion Res. Ltd.*, 11 N.Y.3d 383, 390 (2008); *see also SeaCube Containers LLC v. Compass Containers & Shipping Servs. Ltda.*, 427 F. Supp. 3d 497, 500 (S.D.N.Y. 2019) ("Now that Brazil is a signatory to the Hague Service Convention, that international agreement is the exclusive means through which service can be effectuated when serving a Brazilian defendant.").

As the Supreme Court has explained, service by mail is proper in cases governed by the Hague Service Convention if two conditions are met: "first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017). Here, Plaintiffs cannot meet the second condition. No "otherwise-applicable law" authorized Plaintiffs to serve Allianz Bank by mail.

For example, no subsection of Rule 4(f)(2) authorized Plaintiffs to serve by mail as set out in Section I.B. below. In addition, Plaintiffs never requested that the Court authorize mail service upon the Non-Existent Entity or Allianz Bank under Rule 4(f)(3). Thus, the Federal Rules cannot constitute the "otherwise-applicable law" authorizing mail service.

10

The Hague Service Convention likewise cannot constitute the "otherwise-applicable law" that permitted Plaintiffs to serve by mail because the Hague Service Convention does not itself authorize mail service. *See Water Splash*, 137 S. Ct. at 1513 ("[T]his does not mean that the Convention affirmatively *authorizes* service by mail."). Rather, the Hague Service Convention is "agnostic on the topic." *In re Coudert Bros. LLP*, No. 16-CV-8237 (KMK), 2017 WL 1944162, at *8 (S.D.N.Y. May 10, 2017) ("[S]ervice via mail is not an appropriate form of service under Rule 4(f)(1) on a defendant residing in a country that is a signatory to the Hague [Service] Convention, absent some other international agreement providing for service via mail.") *Id*.

Critically, Plaintiffs have conceded in these Adversary Proceedings that their service by mail was not authorized by the Hague Service Convention. Indeed, the Stipulation and Order Regarding Service executed by Plaintiffs and a number of defendants in these Adversary Proceedings, including defendants located outside of Switzerland, specifies that: "The Consolidated Plaintiffs do not dispute that their prior mail service on the Stipulating Defendants did not satisfy the requirements of the Hague Service Convention." (ECF Nos. 3751, at 2; 3752, at 2.) Consistent with this position, Plaintiffs did not contest the invalidity of their purported mail service on HSBC in the HSBC Action. Rather, Plaintiffs' service arguments against HSBC relied entirely on their requests for: (i) retroactive approval of their deficient mail service; and (ii) authorization to re-effect service via alternative means. *See* Consolidated Opposition, ECF No. 3033 at 23-24; *see also* HSBC Decision, 2020 WL 7345988, at *10 ("[Plaintiffs] do not dispute that mail service on HSBC Suisse failed to satisfy the requirements of the Hague Service Convention.").

Rather than authorize service by mail, the Hague Service Convention authorizes service by request through the Italian Central Authority, with duplicate and Italian-language copies. *See*

11

Hague Service Convention, Nov. 15, 1965, Arts. 3, 5 (affirmatively authorizing service through

Central Authority, with duplicate copies and translations); *Brockmeyer v. May*, 383 F.3d 798, 804

(9th Cir. 2004) ("Rule 4(f)(1), by incorporating the Convention . . . affirmatively authorizes use of

a Central Authority"); *see also Mayorga v. Ronaldo*, No. 2:19-CV-0168(JAD)(CWH), 2019 WL

1532861, at *2 (D. Nev. Apr. 8, 2019) ("Counsel does not dispute that the Hague [Service]

Convention is applicable to this case . . . . As such, plaintiff must first comply with Italy's Central

Authority for process of service."). No such service was attempted by Plaintiffs. Accordingly,

Plaintiffs' service by mail falls short of the requirements of Rule 4(f)(1).[3]

### B.    Rule 4(f)(2) Did Not Authorize Plaintiffs to Serve Allianz Bank by International Mail

Rule 4(f)(2) authorizes service by a method reasonably calculated to give notice if, among

other things: (i) the service is made "as prescribed by the foreign country's law for service in that

country," *see* Rule 4(f)(2)(A); or (ii) the service is sent by the clerk of court and not prohibited by

the foreign country's laws, *see* Rule 4(f)(2)(C)(ii). Plaintiffs cannot rely on either relevant

subsection of Rule 4(f)(2) as set out below.[4]

Plaintiffs purported service by mail was improper under Rule 4(f)(2)(A) because Italian

law expressly forbids service by mail for actions in Italian courts. *See Knit With*, 2010 WL

2788203, at *10 ("[u]nder Italian law, service within Italy for an action in an Italian court . . . must

be done by a proper judicial officer."); U.S. Dep't of State, Italy Judicial Assistance (Service),

---

[3] To the extent Plaintiffs intend to argue that Allianz Bank consented to mail service by allegedly executing a subscription agreement, that argument is foreclosed by *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-03496 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018). In rejecting Plaintiffs' parallel argument that the same contractual provision evidenced non-U.S. defendants' consent to New York jurisdiction, the Court held that the subscription agreements are irrelevant to Plaintiffs' claims. 2018 WL 3756343, at *10-12. That holding is fatal to any renewed attempt to rely on the identical provision to support a "consent to service" argument.

[4] The remaining sections of Rule 4(f)(2) have no applicability to this case.

available    at    https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Italy.html (last accessed May 21, 2021) ("[O]nly judicial officers working for the Italian courts may serve documents in Italy").  Indeed, multiple district courts have refused to recognize service in Italy under Federal Rule 4(f)(2)(A) where, as here, a plaintiff has failed to establish that such service complied with Italian law.  *See, e.g.*, *Zanghi v. Ritella*, No. 19 CIV. 5830(NRB), 2020 WL 589409, at *4 (S.D.N.Y. Feb. 5, 2020) (holding that plaintiffs failed to establish that FedEx shipments complied with Italian law); *Knit With*, 2010 WL 2788203, at *10; *see also Charych v. Siriusware, Inc.*, No. CV 17-468 (JS) (GRB), 2018 WL 4870906, at *3 (E.D.N.Y. July 30, 2018) (holding Austrian law does not support service of process by mail by foreign authorities or private individuals, and also citing with approval authority holding "actual notice did not cure the deficient service"), *aff'd*, 790 F. App'x 299 (2d Cir. 2019).

Rule 4(f)(2)(C)(ii) is similarly unavailing because it requires use of "any form of mail that *the clerk* addresses and sends to the individual . . ." Fed. R. Civ. P. 4(f)(2)(c)(ii) (emphasis added). Here, Plaintiffs contend that service was effectuated by its agent, not the clerk of the court.  (*See supra* Statement of Facts Section A.)  Thus, Plaintiffs' purported service fails to satisfy Rule 4(f)(2)(C)(ii).  *See Coudert*, 2017 WL 1944162, at *12 (holding that "the *clerk of court* must address and send the summons and complaint," not "*an agent of Plaintiff*") (emphasis in original).

## II.    PLAINTIFFS' ANTICIPATED REQUESTS FOR ALTERNATIVE SERVICE AND ADDITIONAL TIME TO SERVE SHOULD BE DENIED

Allianz Bank anticipates that Plaintiffs will seek authorization from the Court to effectuate alternative service under Rules 4(f)(3) and 4(m) given Plaintiffs' prior failure to serve Allianz Bank consistent with Rules 4(f)(1) and 4(f)(2).  In light of the facts of this case, the Court should deny any request for alternative service.

*First*, there has been no prior reasonable attempt to serve Allianz Bank, and no request for alternative service, in the more than ten years that this litigation has been pending. Thus, any forthcoming request for alternative service should be denied under Rule 4(f)(3). *Second*, any forthcoming request for alternative service should be denied for the additional reason that Plaintiffs cannot show, as required under Rule 4(m), that they exercised due diligence in attempting to serve Allianz Bank.

A finding by this Court that Plaintiffs failed to reasonably and diligently attempt service upon Allianz Bank would not conflict with the HSBC Decision. Indeed, following the issuance of the HSBC Decision, Judge Bernstein acknowledged that the "propriety of ordering [alternative] service on any other [defendant] depends on the facts of that case." (Adv. Pro. No. 10-03496, ECF No. 3076 at 2.) Further, the HSBC Decision was expressly cabined to deciding service issues in the HSBC Action, "as the representative action" (ECF No. 3062 at 25 n.18), and "expressly preserved and held in abeyance" all other defendants' service arguments. (Scheduling Order, dated Apr. 14, 2020, ECF No. 3028 at 3 ¶ 4.)[5]

### A. Plaintiffs Never Reasonably Attempted Service

Although there is no exhaustion requirement to Rule 4(f)(3)—*i.e.*, Plaintiffs need not exhaust efforts to effect service pursuant Rules 4(f)(1) or 4(f)(2) before seeking alternative service—a minimum showing of attempted service is required. *Convergen Energy LLC v. Brooks*, No. 20-CV-3746 (LJL), 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020). Specifically, a plaintiff must demonstrate that: (i) it has "'reasonably attempted to effectuate service'" and

---

[5] Allianz Bank does not yet know the form of alternative service that Plaintiffs may request. Allianz Bank reserves all rights to contest any form of alternative service requested by Plaintiffs, including service upon Allianz Bank's counsel in the United States. This reservation of rights includes the right to assert that any method of alternative service requested by Plaintiffs is barred by Rule 4(f)(3) because it is "prohibited by international agreement." *See* Rule 4(f)(3); *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 397 (S.D.N.Y. 2014) (Rule 4(f)(3) does not permit means "prohibited by international agreement.").

(ii) "'the circumstances are such that the court's intervention is necessary.'" *Spin Master Ltd. v. 158*, 463 F.Supp.3d 348, 382 (S.D.N.Y. 2020) (citation omitted); *see also Peifa Xu v. Gridsum Holding Inc.*, No. 18 CIV. 3655 (ER), 2020 WL 1508748, at *14 (S.D.N.Y. Mar. 30, 2020) ("'When courts have allowed for alternative service, they have done so when plaintiffs have been unable, despite diligent efforts, to serve the defendant in the foreign country according to the Hague [Service] Convention procedures.'" (citation omitted)).

There was nothing reasonable about Plaintiffs' service attempts upon Allianz Bank. First, as Allianz Bank has demonstrated, Plaintiffs' purported attempt at mail service was wholly improper under the Hague Service Convention. Second, unlike in the HSBC Action, where service was also attempted via a mailing to HSBC's counsel (HSBC Decision at 30), Allianz Bank's counsel was never served. Third, Plaintiffs were on notice as early as June 2012 that they named as a defendant, and attempted to serve, a non-existent entity. Over nine years have passed since Plaintiffs learned of this deficiency, and yet, no additional service attempts have been made. This is unreasonable. Plaintiffs' complete failure to investigate the identity of the correct defendant and to take any steps to properly serve that defendant does not justify the Court's intervention via Rule 4(f)(3) now—a decade after this case was commenced. *See Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019) (denying request for alternative service under Rule 4(f)(3), and noting that plaintiff "has not even attempted to comply with the Hague [Service] Convention"); *Berdeaux v. OneCoin Ltd.*, No. 19-CV-4074(VEC), 2019 WL 8685006, at*1 (S.D.N.Y. 2019) ("Plaintiffs have not established a factual basis for their assertion that they have taken reasonable steps to find and serve the unserved Defendants.").

Moreover, without any justification for failing to do so, Plaintiffs have never previously moved for alternative service upon Allianz Bank. *SEC v. Cluff*, No. 17-CV-2460 (RMB) (KNF),

2018 WL 896027, at *4 (S.D.N.Y. Jan. 10, 2018) (denying motion for alternative service based, in part, on the failure to timely move).  Plaintiffs' failure to serve Allianz Bank is fundamental, and considerations including the cost and time of service do "not excuse [plaintiffs] from attempting such service at all." *Freeplay Music, LLC v. Rigol Tech. USA, Inc.*, No. 18 Civ. 10980 (ER), 2020 WL 564232, at *4 (S.D.N.Y. Feb. 4, 2020).[6]

Proper service serves important constitutional interests, and Plaintiffs cannot avoid proper service simply by showing that Allianz Bank had actual notice of this litigation.  Courts are unequivocal: "a defendant's 'actual knowledge is no substitute for service.'"  *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 397 (S.D.N.Y. 2014) (citations omitted).  Indeed, "defective service cannot be ignored on the mere assertion that defendant had 'actual notice.'"  *Fed. Trade Comm'n v. Pecon Software Ltd.*, No. 12 Civ. 7186(PAE), 2013 WL 4016272, at *9 (S.D.N.Y. Aug. 7, 2013) (quoting *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006)).

Finally, there is no showing that any action by Allianz Bank or foreign authorities have rendered this Court's intervention "necessary."  Courts routinely deny requests for alternative service where, as here, service under the Hague Service Convention is readily available but a plaintiff has made no efforts at compliance.  *Baliga*, 385 F. Supp. 3d at 220 (dismissing claims for improper service, and denying request for alternative service, where action had been pending for six months without effort to serve Hague defendants); *Halvorssen v. Simpson*, 328 F.R.D. 30, 35 (E.D.N.Y. 2018) (denying motion for alternative service where action had been pending less than a year with no effort at Hague service).

---

[6] To the extent Plaintiffs may argue that the costs of service are prohibitive, which they did in the Consolidated Opposition (ECF No. 3033 at 3, 30, 32, 34), those arguments should be rejected.  The amounts sought in the Adversary Proceedings are in the billions of dollars, and the relative cost of properly effecting service are low.

**B.**   **The Court Should Not Grant Plaintiffs Additional Time to Serve Allianz Bank**

**1.**   **Plaintiffs Did Not Exercise Due Diligence in Attempting to Serve Allianz Bank**

Although there is no strict time limit for service in a foreign country under Federal Rule 4(m), Plaintiffs do "not have unlimited time to serve" foreign defendants, such as Allianz Bank. *In re Bozel S.A.*, No. 16-cv-3739, 2017 WL 3175606(ALC), at *2 (S.D.N.Y. July 25, 2017). Rather, Plaintiffs bear the burden of showing "that [they] exercised due diligence in not timely serving" Allianz Bank. *Id*. at *2-*3.[7]

The "due diligence" standard for service upon foreign defendants is "practically the same" as the "good cause" standard applicable to requests for extensions of time to serve within the United States. *In re Veon Ltd. Sec. Litig.*, No. 15-CV-08672 (ALC), 2018 WL 4168958, at *8 (S.D.N.Y. Aug. 30, 2018); *accord Bozel*, 2017 WL 3175606, at *2 n.4. "Good cause, or 'excusable neglect,' is evidenced only in exceptional circumstances, where the insufficiency of service results from circumstances beyond the plaintiff's control." *Veon*, 2018 WL 4168958, at *9 (internal quotation marks omitted). "Courts assessing good cause also consider . . . whether the plaintiff has moved under Rule 6(b) for an enlargement of time.'" *Id.* (citation omitted). The Court has broad discretion to dismiss an action or defendant when service is insufficient. *See Essco Faith S.A. v. Tradeline (L.L.C.)*, No. 06 CV 1851 (BSJ)(MHD), 2008 WL 11515348, at *2 (S.D.N.Y. Jan. 14, 2008), *as amended*, 2008 WL 11515349 (S.D.N.Y. Apr. 11, 2008).

As explained above, Plaintiffs did not undertake diligent efforts to effect service on Allianz Bank. To the contrary, Plaintiffs placed the summons and complaint in the mail in violation of the

---

[7] Plaintiffs have conceded that, before this Court can grant them an opportunity to serve Allianz Bank at this late date, Plaintiffs must establish that they exercised "due diligence" in their prior attempts at service. *See* Consolidated Opposition, ECF No. 3033, at 34 (describing "due diligence" as a requirement); *see also Hines v. Roc-A-Fella Recs.*, LLC, No. 19-CV-4587 (JPO), 2020 WL 1888832, at *2 n.9 (S.D.N.Y. Apr. 16, 2020) ("[P]rejudice to the defendant, is irrelevant if plaintiff has not been diligent in attempting to make service.").

Hague Convention, addressed the envelope to a non-existent entity in a foreign country, and then never again attempted service in the nine years since learning that the summons and complaint were directed to an incorrect party. (*See supra* Section II.A.)

Where, as here, there are "gaping periods of inactivity" and "lengthy delays," dismissal under Rule 12(b)(5) is appropriate. *Bozel*, 2017 WL 3175606, at *3; *see also Cassano v. Altshuler*, 186 F. Supp. 3d 318, 322 (S.D.N.Y. 2016). Indeed, in *Cassano*, the court dismissed claims brought by *pro se* plaintiffs, in part, because they were "on notice for a substantial period of time that their method of service could be defective." 186 F. Supp. 3d at 323. In that case, plaintiffs' attempt at service took place in April 2015, a contemplated motion for improper service was raised at a pre-motion conference on May 28, 2015, and the court dismissed the actions on May 16, 2016. *Id.* at 319. Thus, at most, the "substantial period of time" for which plaintiffs were on notice of potentially defective service was approximately one year. Additionally, the court in *Cassano*, like the Court in this case, was confronted with a method of service that was "not permitted under the federal rules" and the court had not previously "issued an order allowing [p]laintiffs to serve [d]efendants via an alternate method." *Id.* at 321. Unlike the *pro se* plaintiffs in *Cassano*, the Plaintiffs in these Adversary Proceedings are highly sophisticated professional liquidators, represented by major law firms. Their delay in attempting proper service upon Allianz Bank is inexcusable.

The court's decision in *Veon*, 2018 WL 4168958, is also instructive. There, the court found a lack of due diligence where plaintiffs' prior "service attempts were flawed" and where the defendant averred that such flaws were known to plaintiffs. 2018 WL 4168958, at *9. Here, Plaintiffs must have understood that their service attempts were patently improper. Indeed, Plaintiffs were on notice that they named and improperly served a non-existent entity as early as

18

June 2012, when Kobre & Kim filed its notice of appearance. Then, when the Court rejected Plaintiffs' arguments about the applicability of the subscription agreements in August 2018, Plaintiffs must have known that their purported service on Citco in the Netherlands was lacking for an additional reason. Yet, in the nearly nine years since Kobre & Kim's appearance, and the three years since the Court's analysis of the subscription agreements, Plaintiffs have made no efforts to properly effect service on Allianz Bank. They have also never sought approval for alternative service from the Court. Any request for alternative service in response to this Motion would therefore be untimely. *See Veon*, 2018 WL 4168958, at *9; *see also Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007) (affirming dismissal and noting that plaintiff never requested any information from defendant after defendant "pointed out the failure to serve").

### 2.    Allianz Bank Has Been Prejudiced by Plaintiffs Lack of Due Diligence

Plaintiffs have undertaken no apparent effort—let alone diligent effort—to properly name and serve an entity other than the Non-Existent Entity. This lack of due diligence is sufficient to deny any forthcoming request by Plaintiffs for additional time to serve Allianz Bank. (*See supra* II.B.1.) But Plaintiffs' inaction has also prejudiced Allianz Bank, which supplies an additional basis for denying Plaintiffs additional time to serve. *See Bozel*, 2017 WL 3175606, at *2 (noting that courts consider prejudice as part of the Rule 4(m) inquiry). In particular, Allianz Bank has been forced to defend these Adversary Proceedings for nine years, at significant cost, without even knowing if Plaintiffs intended to name and serve Allianz Bank.

There is good reason for Allianz Bank's uncertainty as to whether it was intended to be named. The Non-Existent Entity—*i.e.*, "Allianzbank SPA/Unifortune Conservative Side Pocket"—appears to represent a combination of the names "Allianzbank SPA" and "Unifortune Conservative Side Pocket." Unifortune Conservative Side Pocket ("Unifortune") is separately

represented in these Adversary Proceedings.  (*See, e.g.*, Adv. Pro. No. 10-03635, ECF No. 192.)

According to its corporate ownership statement, Unifortune is a fund formed under the laws of

Italy.  In contrast, Allianz Bank is a "bank" authorized to provide "investment services" to

customers.  (*See, e.g.*, Adv. Pro. No. 10-03635, ECF No. 491.)  Had Plaintiffs conducted an

investigation into the relationship between Allianz Bank and Unifortune, they would have

concluded that Allianz Bank cannot be a proper defendant in these Adversary Proceedings because

Allianz Bank could never have received any redemptions for its own benefit.  Rather, even if one

were to assume that Allianz Bank received Fairfield redemptions (which Allianz Bank does not

concede), Allianz Bank would have received them solely in the capacity of a custodian for the

ultimate beneficial owner of the Fairfield securities.[8]

Although Plaintiffs might now attempt to remedy their failure to serve a proper party by

seeking discovery and alternative service, Plaintiffs cannot cure the prejudice Allianz Bank has

suffered by having to defend these proceedings while not knowing if it was even intended to be a

party.  This prejudice weighs in favor of denying any request by Plaintiffs for additional time to

serve.  *See Seretse v. Andersen Corp.*, No. CIV. 12-CV-323 SRN, 2013 WL 2434876, at *7 (D.

Minn. June 4, 2013) (finding, in the context of Rule 4(m), that "the uncertainty caused by delayed

resolution is itself a type of prejudice"); *L.A. Printex Indus., Inc. v. A.H. Schrieber Co.*, No.

CV1100613SVWCWX, 2011 WL 13218042, at *2 (C.D. Cal. Aug. 26, 2011) ("Defendants have

suffered prejudice in the form of unnecessarily inflated attorneys' fees and uncertainty with respect

to litigation in which they purportedly have been named as defendants.").  Indeed, if the Court

were to grant Plaintiffs' forthcoming request for additional time to serve, the Court would

---

[8] Tellingly, Irving H. Picard, as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC (the "SIPA Trustee") never sued Allianz Bank.  The SIPA Trustee has sued entities with names similar to Unifortune's.  *See Picard v. Unifortune Asset Mgmt. SGR SPA, and Unifortune Conservative Funds*, Adv. Pro. No. 11-02553 (Bankr. S.D.N.Y.).

20

essentially be condoning Plaintiffs' nine-year failure to investigate Allianz Bank's repeated statements that Plaintiffs named and improperly served a non-existent entity. The Court should not do so, especially where an investigation by Plaintiffs would have revealed that Allianz Bank is also not a proper party to these Adversary Proceedings.

## JOINDER AND RESERVATION OF RIGHTS

Allianz Bank hereby joins in and incorporates by reference all arguments in support of motions to dismiss under Rule 12(b)(5) raised by defendants in these consolidated adversary proceedings to the extent applicable to Allianz Bank and not inconsistent with the arguments set forth herein.

The April 26, 2021 Order directed Allianz Bank to raise only "challenge[s to] service of process." Allianz Bank reserves all other arguments and defenses, including but not limited to, lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, Allianz Bank respectfully requests that this Court dismiss the Amended Complaints with prejudice and grant such other relief as the Court deems just and proper.

Dated: May 21, 2021

Respectfully submitted,

/s/ *Jonathan D. Cogan*
Jonathan D. Cogan

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: (212) 488-1200
Fax: (212) 488-1220
jonathan.cogan@kobrekim.com

*Counsel for Allianz Bank Financial*
*Advisors S.p.A.*

21