# Exhibit A

*20-2268-cv*
*Bensch v. Estate of Umar*

# UNITED STATES COURT OF APPEALS
## For the Second Circuit

————————

August Term, 2020

Argued: January 29, 2021     Decided: June 23, 2021

Docket No. 20-2268-cv

————————

In the Matter of

Christopher J. Bensch, as Owner of the M/V "Loch Lomond",
a 2002 46' Sunseeker Camargue 44,
for Exoneration from or Limitation of Liability,

*Petitioner-Appellant,*

— v. —

Estate of Ahmed Abdulla Umar, Ameera Umar

*Claimants-Appellees,*

Waikiki Watercraft, LLC,

*Defendant.*

————————

B e f o r e :

Livingston, *Chief Judge,* Cabranes and Lynch, *Circuit Judges.*

————————————

Petitioner sought exoneration from or limitation of liability pursuant to 46 U.S.C. § 30511 *et seq.* in connection with a fatal boating accident. The district court (Sinatra, *J.*) dismissed the maritime complaint for failure to allege sufficient factual matter to state a plausible claim for exoneration or limitation, and denied his motion for leave to amend on grounds of futility and bad faith. Petitioner appeals, arguing that the district court applied the wrong standard in granting the motion to dismiss and exceeded its discretion in denying him leave to amend the complaint. We hold that the district court correctly applied the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to this maritime complaint, but conclude that the district court erred in denying leave to amend. Accordingly, we AFFIRM the judgment of the district court in part, REVERSE the judgment in part, and REMAND for further proceedings.

————————————

JAMES EDWARD MERCANTE, (Joseph R. Federici, Jr., *on the brief*), Rubin, Fiorella, Friedman & Mercante, LLP, New York, NY, *for Petitioner-Appellant.*

ROBERT J. MARANTO, JR., Andrews, Bernstein, Maranto & Nicotra PLLC, Buffalo, NY, *for Claimants-Appellees.*

————————————

GERARD E. LYNCH, *Circuit Judge*:

This appeal requires us to decide whether maritime complaints seeking

exoneration from or limitation of liability pursuant to the Limitation of Liability

Act, 46 U.S.C. § 30511 *et seq.,* must contain sufficient factual matter to satisfy the

"plausibility" standard applicable to pleadings under Federal Rule of Civil

2

Procedure 8(a), as interpreted by the Supreme Court in *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). We hold

that such maritime complaints must satisfy the plausibility standard. We

conclude, however, that the Petitioner's Second Proposed Amended Complaint

met that standard, and that the district court exceeded its discretion in denying

the motion for leave to amend.

## BACKGROUND

The case arises from a tragic boating accident on the Niagara River in

August 2018. Petitioner Christopher Bensch was piloting his boat, a 46-foot

pleasure craft, in a marked channel on the river. The decedent, Ahmed Abdulla

Umar, was operating a jet ski that he had rented from Waikiki Watercraft, LLC

("Waikiki"), with his young daughter as a passenger. Umar fell off the jet ski in

front of Bensch's vessel, which struck and killed him. Umar's daughter

fortunately survived. As described in more detail below, the parties dispute

responsibility for the fatal collision in litigation in both state and federal courts.

## I.    Legal Background: Exoneration and Limitation of Liability

The Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*, limits the liability

of a vessel owner to the value of the vessel (and any freight it is carrying, a factor

not relevant here) for any damage caused by a collision without the "privity or

knowledge" of the owner. *Id*. § 30505(b). The animating premise of the statute is

that the owner of a vessel is generally an absentee who entrusts the vessel to the

command of a captain whom the owner has limited ability to supervise or control

once the vessel is on the sea. Thus, in what we have described as an effort "to

encourage the development of American merchant shipping," the Act loosens the

normal rules of *respondeat superior* in admiralty cases by allowing shipowners to

insulate their personal assets (beyond the value of the ship) in cases where any

negligence is committed without the owner's privity or knowledge. *Complaint of

Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 754 (2d

Cir. 1988), quoting *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 150 (1957). This

policy, and the literal language of the statute, might suggest that it applies only

where the owner lacked knowledge of the accident itself, which occurred out of

his sight. But it has long been held that "[p]rivity and knowledge is a term of art

meaning complicity in the fault that caused the accident." *Blackler v. F. Jacobus

Transp. Co.*, 243 F.2d 733, 735 (2d Cir. 1957) (internal quotation marks omitted).

Thus, the fact that here the owner himself was operating the vessel at the time of

the injury does not defeat the limitation of liability action. *See id.* In effect, the

4

statute creates a federal admiralty forum in which the owner may seek limitation

of liability by establishing that he was not at fault with respect to the collision.[1]

Bensch seeks to avail himself of the benefits of that remedy by filing a

complaint asserting that he was not at fault in connection with the death of

Umar.

## II.    Procedural History

On October 30, 2018, Umar's widow, Ameera Umar, brought a wrongful

death action on behalf of herself and Umar's estate (together, the "Claimants") in

the Supreme Court of New York for Erie County against Bensch and Waikiki,

alleging that Bensch operated his boat negligently and that Waikiki failed to

provide adequate instruction regarding the proper operation of the jet ski.[2] On

January 4, 2019, Bensch brought this limitation action against the Claimants in

the United States District Court for the Western District of New York, invoking

---

[1] It is unnecessary for purposes of this case to trace the complex interaction of
federal and state jurisdiction arising from what the Supreme Court has called the
"tension" between the Limitation of Liability Act and the Savings to Suitors
clause in 28 U.S.C. § 1331(1), which preserves to admiralty plaintiffs all remedies,
including trial by jury, to which they are otherwise entitled. *See Lewis v. Lewis &
Clark Marine, Inc.*, 531 U.S. 438, 448 (2001).

[2] Waikiki is not involved in this appeal.

its admiralty jurisdiction and seeking exoneration from or limitation of liability

pursuant to the Limitation of Liability Act, 46 U.S.C. 30501 *et seq.*, and Rule F of

the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture

Actions (the "Supplemental Rules").[3]

Bensch did not include much detail about the accident in his initial

complaint. Besides identifying the action as one for exoneration from or

limitation of liability, describing the vessel and its value, and indicating that he

had been sued by Claimants for negligence and that the claims asserted would

exceed the value of his interest in the vessel, Bensch's initial complaint included

only two paragraphs concerning the accident itself. The first addressed Umar's

conduct, alleging that Umar "was recklessly operating a personal watercraft ('Jet

Ski') at a high rate of speed across the channel without regards [*sic*] to navigation

rules, wakes, water conditions, and marine traffic[,] . . . struck the wake of

another vessel, and fell off of the Jet Ski directly ahead of Petitioner's Vessel."

App'x at 8. As to his own conduct, Bensch alleged only that any damages

---

[3] On December 5, 2018, Bensch also removed the wrongful death action from
state court to the United States District Court for the Western District of New
York. In a ruling not challenged on this appeal, the district court remanded the
wrongful death action to state court, where it remains pending.

resulting from the accident "were not due to any fault, neglect, or want of care of

Petitioner and occurred without Petitioner's privity or knowledge." *Id*. On

September 26, 2019, Claimants moved to dismiss the complaint for failure to state

a claim upon which relief can be granted. On November 8, 2019, Bensch opposed

the motion to dismiss and also moved for leave to amend the complaint,

attaching a slightly amended version of his complaint (the "First Proposed

Amended Complaint"). The only material change from the initial complaint was

to add a single sentence stating that "[t]he voyage was a recreational excursion to

and from a dock located at 7619 Buffalo Ave, Niagara Falls, N.Y." App'x at 73.[4]

On January 9, 2020, United States Magistrate Judge Jeremiah J. McCarthy

recommended that the motion to dismiss be granted and the motion for leave to

amend be denied on grounds of futility. The magistrate judge concluded that

while the allegations in the initial complaint adequately pled that Umar was

negligent, "the Complaint contains no factual allegations showing that Bensch

was not *also* negligent." App'x at 82. Citing principally cases arising under Rule

---

[4] As noted below, this sentence was apparently intended to address the specific
requirement of Supplemental Rule F(2) that a complaint for exoneration from or
limitation of liability include certain details about the voyage, if any, on which
the vessel was engaged at the time of the accident. *See infra* note 6.

8(a) outside the admiralty context, including *Ashcroft v. Iqbal*, the magistrate

judge (whose views on this point were in due course adopted by the district

court) ruled that because a court is not bound to accept as true a legal conclusion

couched as a factual allegation, Bensch's disavowal of any negligence on his own

part was a mere legal conclusion that "fails to plausibly allege a basis for limiting

his liability." App'x at 83. The magistrate judge, in short, applied the same

pleading standard to Bensch's complaint in this maritime claim for exoneration

or limitation that would apply to a complaint in any other civil action under the

governing pleading standard announced in *Twombly* and *Iqbal*. The magistrate

judge further recommended denial on grounds of futility of the motion for leave

to amend because the change in the First Proposed Amended Complaint did

nothing to address the shortcomings of the initial complaint. *See Est. of Umar v.

Bensch*, No. 18-CV-1414, 2020 WL 3491633, at *4 (W.D.N.Y. Jan. 9, 2020), *report and

recommendation adopted*, No. 18-CV-1414, 2020 WL 3489674 (W.D.N.Y. June 26,

2020).

Bensch responded to the magistrate judge's Report and Recommendation

by filing yet another motion for leave to amend the complaint and attaching a

second amended complaint (the "Second Proposed Amended Complaint"). The

Second Proposed Amended Complaint added a number of additional allegations about Bensch, his boat, and his behavior on the day of the accident, including that Bensch was an "experienced operator," who was "familiar with boating on the Niagara River;" that his boat "was properly outfitted and equipped;" that at the time of the accident Bensch was "keeping a lookout ahead and to each side" and his "visibility was not impaired;" that he observed Umar, who was operating the jet ski "not on any particular course," "suddenly turn[ ] directly in front of [Bensch's] [v]essel's path;" and that he (unsuccessfully) "took appropriate action to avoid collision." App'x at 98.

Nevertheless, the magistrate judge recommended that Bensch's second motion for leave to amend be denied on grounds of bad faith. Because Bensch did not "suggest that [he was] unaware of the pleading requirements of Supplemental Rule F(2) and *Iqbal* and offer[ed] no excuse for [his] failure to satisfy those requirements," the magistrate judge concluded failing to meet those requirements until the second motion for leave to amend must have been deliberate and in bad faith. App'x at 104-05.

The district court (John L. Sinatra, Jr., *J.*) adopted, with some modifications, the substance of the magistrate judge's reports and recommendations discussed

9

above, dismissing Bensch's complaint and denying the motions to amend. The

principal modification relevant to this appeal is that the district court denied the

second motion for leave to amend for futility as well as on the basis of bad faith

as the magistrate judge had recommended. *Est. of Umar v. Bensch*, No.

18-CV-1414, 2020 WL 3489674, at *1 (W.D.N.Y. June 26, 2020).[5] This appeal

followed.

## DISCUSSION

Bensch argues that the plausibility standard for assessing the sufficiency of

a complaint that applies in civil litigation under Federal Rule of Civil Procedure

8(a), as announced by the Supreme Court in *Twombly* and *Iqbal,* is inapplicable to

maritime complaints for exoneration from or limitation of liability, which are also

governed by the Supplemental Rules. We write principally to address that

argument, which raises a question of first impression in this Court, and is of

general importance to the admiralty bar and the district courts. We also address

Bensch's specific argument as to whether he should have been permitted to file

his Second Proposed Amended Complaint.

---

[5] The district court also rejected the magistrate judge's recommendation that
attorney's fees should be awarded to Claimants. That determination has not been
appealed and therefore is not before us.

## I.    The Proper Pleading Standard under Rule F(2)

To analyze the pleading standard applicable in this case, it is necessary to
review the evolution and history of pleading under the Federal Rules of Civil
Procedure, and of the relationship of those rules to claims under maritime law,
particularly claims for exoneration from or limitation of liability.

The original text of the Federal Rules of Civil Procedure, adopted in 1937,
provided that "[t]hese rules govern the procedure in the district courts of the
United States of all suits of a civil nature whether cognizable as cases at law or in
equity." Fed. R. Civ. P. 1 (1937). The rules thus unified the formerly distinct
procedural regimes for cases in equity, which had been governed by the Federal
Equity Rules and cases at law, which had been governed by the procedures
applicable in the courts of the states where each federal court sat. *See* Order of the
Supreme Court of the United States (June 3, 1935), *reprinted in* Advisory
Committee on Civil Rules, Report of the Advisory Committee on Rules for Civil
Procedure iii (1937). Maritime claims, however, continued to be governed by a
separate set of admiralty rules.

That changed in 1966, when the admiralty rules were largely abolished,
and the final phrase of Rule 1 as quoted above was amended to read "whether

11

cognizable as cases at law or in equity *or in admiralty*." Fed. R. Civ. P. 1 (1966)

(emphasis added). That entire phrase was deleted as unnecessary in 2007,

because, as the Advisory Committee noted, "[t]he merger of law, equity and

admiralty practice is complete[, and t]here is no need to carry forward the

phrases that initially accomplished the merger." Fed. R. Civ. P. 1 (advisory

committee's note to 2007 amendment).

Even after the merger, however, the Advisory Committee recognized the

need to preserve "[c]ertain distinctively maritime remedies," and, accordingly, to

craft specific rules appropriate for cases invoking those remedies. Supplemental

Rule A (advisory committee's note to 1966 adoption). Accordingly, the Federal

Rules were supplemented with a specific set of Supplemental Rules applicable to

a short list of specific types of maritime claims. *Id.*; *see also* Fed. R. Civ. P. 9(h).

Among the particular remedies in admiralty actions subject to the Supplemental

Rules are "actions for exoneration from or limitation of liability." Supplemental

Rule A(1)(A)(iv). Supplemental Rule A(2) emphasizes, however, that even as to

the listed categories of maritime claims, that "[t]he Federal Rules of Civil

Procedure also apply to the foregoing proceedings except to the extent that they

are inconsistent with these Supplemental Rules."

The specific Supplemental Rule governing actions for limitation of liability is Rule F, which contains detailed provisions governing the contents of a complaint seeking that remedy. Under Rule F(2), as relevant here, a complaint "shall set forth the facts on the basis of which the right to limit liability is asserted."[6]

On appeal, Bensch insists that even his initial complaint was sufficient to satisfy Supplemental Rule F, because it asserted, albeit in conclusory terms, that Umar's negligent operation of the jet ski "was the direct cause of the incident and that [Bensch] does not have knowledge or privity of that negligence." Appellant's Br. 10. Although this argument would appear contrary to the text of Rule F(2), which explicitly requires the complaint to "set forth the *facts*" on which the claim for liability is based (emphasis added), Bensch nevertheless maintains that the formulation in his complaint is "standard admiralty wording" and that "similarly worded complaints have withstood dismissal" in a number of district

---

[6] Supplemental Rule F(2) also requires certain specific factual allegations, most of which are not relevant to this case. One that is of some marginal relevance to this matter is the requirement that the complaint "shall state the voyage[,] if any, on which the demands sought to be limited arose, with the date and place of its termination." Supplemental Rule F(2). *See supra* note 4.

13

courts in this Circuit. *Id.*[7] In effect, he argues that in maritime cases to which the Supplemental Rules apply, a distinctive customary admiralty standard of pleading governs, distinct from the Rule 8(a) standard as currently understood. As support for that contention, he relies on the venerable case of *Colonial Sand & Stone Co. v. Muscelli*, 151 F.2d 884 (2d Cir. 1945), authored by no less an authority than Judge Learned Hand.

Bensch accurately states the holding of *Colonial Sand*. At least as reflected in Judge Hand's opinion, the petition of the vessel owner in that case alleged no more, with respect to the owner's privity and knowledge concerning the causes of the claimant's injuries, than that those injuries "were suffered without the petitioner's knowledge, and were not caused by its fault or negligence, or that of any of its employees." *Id.* at 884. The claimant there, like the Claimants here, argued that this complaint was insufficient under then-governing Admiralty Rule 53, which, like the present Supplemental Rule F(2), required the petitioner in

---

[7] As examples of such district court cases, Bensch cites *In re Franz*, 7 F. Supp. 3d 238, 243 (N.D.N.Y. 2014), *In re Yanicky*, No. 11-CV-6287, 2011 WL 5523600, at *2 (W.D.N.Y. 2011), and *Matter of Schnittger*, 431 F. Supp. 3d 109, 114 (E.D.N.Y. 2019). While some of the cited cases are arguably distinguishable, we need not quibble over the specifics of the particular cases, and readily acknowledge that some district courts seem to have upheld the sufficiency of complaints that say little or nothing more than Bensch alleged here.

an exoneration or limitation case to "state the facts and circumstances by reason
of which exemption from liability is claimed." *Id*. at 885, quoting Admiralty Rule
53. The Court nevertheless held that the allegation in the petition was sufficient.
*Id*.

Bensch, however, wrenches that holding from its historical context. Indeed,
properly read in the context of the law of its time, *Colonial Sand* rejected the
notion of a special admiralty pleading standard, and effectively assimilated the
pleading standard under the admiralty rules to the general pleading standard of
the Federal Rules of Civil Procedure, as that standard was understood at the
time.

Notably, in *Colonial Sand*, it was the *claimant*, not the vessel owner, who
argued against the applicability of the general pleading standard for civil cases
under the Federal Rules to maritime complaints. Indeed, the claimant argued for
a distinctive admiralty pleading standard, relying on the particular language of
the old Admiralty Rules, and on what Judge Hand acknowledged was the
"common custom in the admiralty [bar] not to confine pleadings to the 'ultimate,'
'constitutive,' or 'operational,' facts on which the right or defense depends, as is

required in other branches of the law; but to set out a discursive narrative of the
pleader's version of the events." *Id*.

But Judge Hand dismissed that custom and glided past the specific
language of Admiralty Rule 53 to hold that there was no basis for applying a
special pleading rule in limitation of liability cases and "every reason to sustain a
pleading which is adequate under ordinary canons." *Id*. The general pleading
rule in most admiralty cases, Judge Hand wrote, required only that the libel (the
equivalent in traditional admiralty practice of a complaint) "shall 'allege in
distinct articles the various allegations of fact upon which the libellant relies in
support of his suit[.]'" *Id*., quoting Admiralty Rule 22. And *that* standard, Judge
Hand concluded, "is not different in substance from Rule 8(a) of the [Federal]
Rules of Civil [Procedure.]" *Id*. All that was required to invoke the right to limit
liability was that the owner had been sued for an injury that incurred without his
"privity or knowledge," and, under the prevailing pleading rules in admiralty, as
in civil cases, a general allegation of lack of negligence. *Id*.

Of course, when Judge Hand wrote, that was all that Federal Rule of Civil
Procedure 8 required of civil complaints. The text of the rule, then as now,
required only "a short and plain statement of the claim showing that the pleader

16

is entitled to relief." Fed. R. Civ. P. 8(a)(2). Crucially, however, the rule at that

time was understood to institute a system of "notice pleading," under which a

plaintiff was not required to plead extensive facts, but merely to identify the

nature of the claim sufficiently to put the defendant on notice of the suit it needed

to defend, with further factual development to be worked out through broad

discovery and motion practice.[8]

That general philosophy of pleading was embodied in the Supreme Court's

well-known decision in *Conley v. Gibson*, which sustained a complaint over the

defendants' objection that it "failed to set forth specific facts to support its general

allegations of discrimination," holding that the "notice pleading" regime enacted

by the Federal Rules of Civil Procedure "do[es] not require a claimant to set out

in detail the facts upon which he bases his claim," but rather required only "a

short and plain statement of the claim that will give the defendant fair notice of

what the plaintiff's claim is and the grounds upon which it rests." 355 U.S. 41, 47

(1957) (internal quotation marks and footnote omitted). Under *Conley*'s reading of

Rule 8, for which the Court cited cases extending back to 1944, "a complaint

---

[8] Judge Charles Clark, a member of the panel that decided *Colonial Sand*, was one
of the principal drafters of the original Federal Rules adopted in 1937, and a
vigorous proponent of the notice pleading system.

should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Id*. at 45-46.

Although Bensch continues to rely on the *Conley* formulation in support of

his argument that even his initial complaint was sufficient, *see* Appellant's Br. 21,

that philosophy of pleading was abandoned, and the *Conley* standard expressly

disavowed, in *Twombly*, 550 U.S. at 560-63, in which the Supreme Court

substituted a "plausibility" standard that requires civil complaints to plead not

merely legal conclusions but sufficient "factual content that allows the court to

draw the reasonable inference" that the plaintiff is entitled to prevail on his

claim. *Iqbal*, 556 U.S. at 678.

In *Colonial Sand*, Judge Hand ruled that there was no reason to read the

language of what is now Supplemental Rule F(2) to adopt a different standard of

pleading for maritime claims than the standard embodied in the Federal Rules of

Civil Procedure for all civil complaints. 151 F.2d at 885. Accordingly, Judge Hand

rejected the claimant's contention that the specific language of the Admiralty

Rules, which required a description of the "facts and circumstances" warranting

a finding that the petitioner lacked "privity and knowledge" of any negligence

18

resulting in the claimant's injuries, mandated that a maritime complaint contain

*more* facts than what was required of a civil complaint under Federal Rule of Civil

Procedure 8(a) as the courts then interpreted it. *Id*. Similarly, today we see no

reason to interpret the language of Supplemental Rule F(2) to permit a complaint

to proceed on *fewer* factual allegations than are required of a civil complaint

under Rule 8(a) as the Supreme Court now reads it. To the contrary, the language

of Rule F(2), which requires a recitation of "the facts on the basis of which the

right to limit liability is asserted" is fully compatible with the emphasis on

pleading concrete facts that was announced in *Twombly* and *Iqbal*.[9] Rule 8(a) of

the Federal Rules of Civil Procedure, as interpreted in those cases, is fully

consistent with the Supplemental Rules and thus applies in maritime cases under

Supplemental Rule A(2). We therefore conclude that the district court was correct

to hold that Supplemental Rule F(2) requires a vessel owner petitioning for

exoneration from or limitation of liability to set forth sufficient facts to render his

---

[9] *See* 5 Wright & Miller, Federal Practice and Procedure § 1227 (noting in general terms that while the pleading requirements of Rule 8 apply in admiralty and maritime claims, to the extent the Supplemental Rules apply in particular cases including claims for limitation of liability, "the effect of these provisions is to require a *higher* degree of specificity" than the standards applicable under the Civil Rules (emphasis added)).

claim of lack of "privity and knowledge" plausible as that phrase is defined in
*Iqbal*.

## IV.    The Pleading Standard Applied

Applying the plausibility standard to the successive iterations of Bensch's

complaint, we have little difficulty in affirming the district court's conclusion that

his initial complaint and his First Proposed Amended Complaint were

insufficient. As the magistrate judge stated in the first Report and

Recommendation, while the factual allegations of the initial complaint "indicate

that Umar was negligent, the Complaint contains no factual allegations showing

that Bensch was not *also* negligent." App'x at 82. Although the conclusory

disavowal of negligence in the initial complaint gives the Claimants notice of

Bensch's assertion that he lacked "privity and knowledge" and therefore is

entitled to exoneration from liability, App'x at 8 (¶ 6), the initial complaint

contains no factual allegations that could render that assertion plausible. And the

First Proposed Amended Complaint does nothing to address that problem: it

adds a fact that plugs what is arguably a different hole in the initial complaint, *see*

*supra* notes 4 and 6, but still pleads no facts that plausibly support Bensch's claim

of lack of negligence.

Bensch correctly points out that just as it is difficult to *prove* a negative, it is

difficult to allege facts that would plausibly indicate a negative. But as the

magistrate judge observed, it is hardly impossible to imagine such facts:

> For example, an "important consideration in many
> collision cases is whether there was a failure to maintain
> safe speed and a proper lookout[."] 2 Schoenbaum,
> Admiralty & Maritime Law §14:3 (6th ed.). "The duty of
> the lookout is of the highest importance . . . . The rigor of
> the requirement rises according to the power and speed of
> the vessel in question." The Ariadne, 80 U.S. 475, 478-79
> (1871). Bensch's Complaint contains no facts concerning
> the speed of his boat prior to the accident, or whether he
> observed Umar's reckless conduct in time to take evasive
> action.

App'x at 82-83. Allegations with respect to facts such as those specified by the

magistrate judge may be sufficient to render a claim of lack of negligence

plausible.

And indeed, Bensch then undertook, in his Second Proposed Amended

Complaint, to allege such facts. As set forth above, Bensch proposed to add

factual allegations that he was properly experienced in conditions on the

waterway in question, that his vessel was properly maintained, that he kept a

proper lookout, that he observed Umar on his jet ski, and that Umar's sudden

turn led him to take appropriate evasive action (although those efforts failed to avoid a collision).

It is true that those allegations could be more factually detailed. For example, as Claimants argue, the allegation that Bensch took "appropriate" evasive action is somewhat conclusory to the extent that it does not identify the particular actions that he took. Appellees Br. 11. Nor does Bensch specify the exact speed at which he was proceeding. But the plausibility standard does not require that a plaintiff plead every factual detail relevant to liability, or allege facts that, if proved to the factfinder's satisfaction, would rule out every possible defense to his claim. It is sufficient for the pleading to contain sufficient factual allegations to "nudge[ ] [the petitioner's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. We conclude that the Second Proposed Amended Complaint does just that.

## V.     The Second Motion to Amend

We review the denial of a motion for leave to amend for abuse of discretion. *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010). However, to the extent the denial of such a motion is based on futility, it rests on

a legal conclusion, which we review *de novo*. *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021).

What we have already said is sufficient to overturn the district court's finding of futility as to Bensch's second motion for leave to amend and to file his Second Proposed Amended Complaint. The district court's holding in this regard is itself conclusory, offering no analysis of the additional allegations that Bensch proposed to include in his Second Proposed Amended Complaint and merely asserting that *both* proposed amended complaints "fail to set forth the substantive facts necessary to suggest absence of fault and make limitation of liability possible." App'x at 114. Nor did the magistrate judge, who recommended denial of Bensch's second motion for leave to amend on a different ground, find any fault with the legal sufficiency of the Second Proposed Amended Complaint. For the reasons set forth above, we conclude that Bensch's Second Proposed Amended Complaint was sufficient to plausibly state a claim upon which relief can be granted and that the district court exceeded its discretion in denying Bensch's second motion for leave to amend for futility.

The magistrate judge's recommendation, adopted by the district court, that Bensch's second motion for leave to amend be denied on grounds of bad faith

presents a closer question. The magistrate judge was correct that Bensch did not

suggest that he was unaware of the pleading requirements of Supplemental Rule

F(2) and *Iqbal.* Moreover, the new facts alleged in the Second Proposed Amended

Complaint were all within Bensch's personal knowledge when he initiated this

action, and Bensch offered no excuse for his failure to include them in his initial

complaint (or even in his First Proposed Amended Complaint), particularly after

Claimants moved to dismiss on the grounds that the initial complaint failed to

allege a factual basis for its assertion that Bensch had not been negligent. And as

we have already ruled, the magistrate judge's determination that legal

conclusions couched as factual allegations are not sufficient to plausibly state a

claim upon which relief can be granted was indeed correct. We can sympathize,

moreover, with the magistrate judge's frustration with Bensch's somewhat stiff-

necked insistence on defending an outdated approach to pleading in the

maritime context.

But we disagree with the magistrate judge's equation of Bensch's position

on this point with "bad faith." Federal Rule of Civil Procedure 15(a) provides that

courts should "freely give leave [to amend] when justice so requires." A district

court may in its discretion deny leave to amend "for good reason, including

futility, bad faith, undue delay, or undue prejudice to the opposing party."

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Nothing in

the record supports any implication that Bensch was either engaged in delay and

imposing unnecessary additional litigation costs or inventing non-existent "facts"

for which there was no good faith basis. *See, e.g., id.* at 201-02 (affirming district

court's denial of leave to amend where "[p]laintiffs sought to amend their

complaint after an inordinate delay" of "more than seven months" and where

"discovery had closed, defendants had filed for summary judgment, and nearly

two years had passed since the filing of the original complaint"). Rather than

harboring some dilatory motive, it seems clear that Bensch was defending a legal

proposition about the proper pleading standard in the maritime context that,

while incorrect as we hold today, was believed in good faith by Bensch to be

correct.

Nor can we dismiss Bensch's argument as to the proper pleading standard

as frivolous. It was plausibly supported by decisions of several district courts,

and by a reasonable if ahistorical reading of an opinion of this Court which,

though old, has never been disavowed by subsequent binding authority. As

explained above, we hold that Bensch misinterpreted that precedent. But the

25

analysis set forth in this Opinion was not articulated in the motion to dismiss and

thus was not directly presented below. In a matter of some importance to the

admiralty practice, we do not think counsel for Bensch acted in bad faith either in

drafting the initial complaint, or in defending its sufficiency in response to

Claimants' motion to dismiss.

Accordingly, we conclude that the district court exceeded its discretion in

denying Bensch's second motion for leave to amend on the basis of bad faith.

## CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the district

court to the extent that it dismissed the initial complaint and denied Bensch's first

motion for leave to amend, but we REVERSE the judgment to the extent it denied

the second motion for leave to amend on grounds of futility and bad faith, and

REMAND the case for further proceedings consistent with this Opinion.