UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LIMITED, et al., | Case No. 10-13164 (CGM) |
| Debtor in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03496 (CGM) |
| Plaintiffs, | |
| v. | Administratively Consolidated |
| THEODOOR GGC AMSTERDAM, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03635 (CGM) |
| Plaintiffs, | |
| v. | |
| ABN AMRO SCHWEIZ AG, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03636 (CGM) |
| Plaintiffs, | |
| v. | |
| ABN AMRO SCHWEIZ AG, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO CENTRUM BANK
AKTIENGESELLSCHAFT'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE
OF PROCESS**

Date:  July 26, 2021

SELENDY & GAY PLLC

David Elsberg
Lena Konanova
Jordan Garman
Ester Murdukhayeva
Ronald Krock
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800

*Attorneys for Plaintiffs Foreign
Representatives*

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ...........................................................................................1

RELEVANT BACKGROUND ...........................................................................................2

    A.    The Liquidators' Original Good Faith Service Attempts ........................................2

    B.    The Bankruptcy Court's Prior Service Decisions ....................................................4

    C.    The Current Motion ................................................................................................6

ARGUMENT .......................................................................................................................6

I.    ALTERNATIVE SERVICE ON U.S. COUNSEL HAS ALREADY BEEN
    APPROVED IN THESE U.S. REDEEMER ACTIONS AND IS APPROPRIATE
    HERE FOR THE SAME REASONS ..............................................................................7

    A.    The Liquidators Easily Meet The Minimum Legal Threshold For
        Alternative Service Set By Judge Bernstein Where Defendant Has For
        Years Been In Contact With U.S. Counsel And Actively Engaged In
        These Actions..........................................................................................................7

    B.    The Court Should Exercise Its Discretion To Order Alternative Service
        Upon Defendant's U.S. Counsel As Judge Bernstein Did With HSBC
        Suisse ....................................................................................................................11

II.    THE LIQUIDATORS EXERCISED THE DUE DILIGENCE NECESSARY
    FOR THE OPPORTUNITY TO EFFECT NEW ALTERNATIVE SERVICE
    UPON DEFENDANT ....................................................................................................14

CONCLUSION ..................................................................................................................17

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Aqua Shield, Inc. v. Inter Pool Cover Team*,
  2007 WL 4326793 (E.D.N.Y. Dec. 7, 2007) .................................................. 15

*Arista Records LLC v. Media Servs. LLC*,
  2008 WL 563470 (S.D.N.Y. Feb. 25, 2008) ............................................... 7, 14

*Atlantica Holdings, Inc. v. BTA Bank JSC*,
  2014 WL 12778844 (S.D.N.Y. Mar. 31, 2014) ............................................... 7

*Blockbuster, LLC v. Grupo Mizbe, S.A.*,
  2015 WL 12712061 (S.D. Fla. July 22, 2015) ................................................ 2

*Burda Media, Inc. v. Blumenberg*,
  2004 WL 1110419 (S.D.N.Y. May 18, 2004), *aff'd sub nom. Burda Media, Inc. v.
  Viertel*, 417 F.3d 292 (2d Cir. 2005) ............................................................ 15

*Convergen Energy LLC v. Brooks*,
  2020 WL 4038353 (S.D.N.Y. July 17, 2020) .................................................. 7

*Enrenfeld v. Salim a Bin Mahfouz*,
  2005 WL 696769 (S.D.N.Y. Mar. 23, 2005) .................................................. 7

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*,
  2005 WL 1123755 (S.D.N.Y. May 11, 2005) ............................................... 10

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
  2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") ................. 5, 6, 11, 16

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
  2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*,
  2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) (together, "*Fairfield III*") ........ passim

*Icon DE Holdings LLC v. Eastside Distribs.*,
  2015 WL 4557278 (S.D.N.Y. July 28, 2015) ............................................... 10

*In re GLG Life Tech Corp. Sec. Litig.*,
  287 F.R.D. 262 (S.D.N.Y. 2012) ....................................................... 7, 8, 9, 10

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
  2003 WL 1807148 (S.D.N.Y. Apr. 4, 2003) ................................................... 9

*Jian Zhang v. Baidu.com Inc.*,
  293 F.R.D. 508 (S.D.N.Y. 2013) .............................................................. 7, 8

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
    2018 WL 4681616 (S.D.N.Y. Sept. 11), *adopted by* 2018 WL 4666069 (S.D.N.Y.
    Sept. 28, 2018) ........................................................................................................... 15

*Jung v. Neschis*,
    2003 WL 1807202 (S.D.N.Y. Apr. 7, 2003)........................................................... 9

*Lyell Theater Corp. v. Loews Corp.*,
    682 F.2d 37 (2d Cir. 1982)..................................................................................... 15

*Montalbano v. Easco Hand Tools, Inc.*,
    766 F.2d 737 (2d Cir. 1985)................................................................................... 15

*Ninety-Five Madison Co., L.P. v. Vitra Int'l, AG.*,
    2020 WL 1503640 (S.D.N.Y. Mar. 30, 2020) ...................................................... 16

*NYKCool A.B. v. Pac. Int'l Servs., Inc.*,
    2015 WL 998455 (S.D.N.Y. Mar. 5, 2015) ............................................................ 7

*RSM Prod. Corp. v. Fridman*,
    2007 WL 2295907 (S.D.N.Y. Aug. 10, 2007) ....................................................... 7

*SEC v. Jammin Java Corp.*,
    2016 WL 6650849 (C.D. Cal. Apr. 21, 2016) ..................................................... 10

*Trilliant Funding, Inc. v. Marengere (In re Bozel S.A.)*,
    2017 WL 3175606 (S.D.N.Y. July 25, 2017) ...................................................... 15

*USHA (India) Ltd. v. Honeywell Int'l, Inc.*,
    421 F.3d 1219 (2d Cir. 2005)................................................................................. 15

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
    2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018)................................................... 7, 9

*Zanghi v. Ritella*,
    2020 WL 589409 (S.D.N.Y. Feb. 5, 2020) ............................................................ 7

## <u>Rules</u>

Federal Rule of Civil Procedure 12(b)(5) ...................................................................... 1

Federal Rule of Civil Procedure 4(f)(3)................................................................. passim

Kenneth M. Krys and Greig Mitchell (the "Liquidators"), in their capacities as the duly
appointed Liquidators and Foreign Representatives of Fairfield Sentry Limited (In Liquidation)
("Sentry"), Fairfield Sigma Limited (In Liquidation) ("Sigma"), and Fairfield Lambda Limited (In
Liquidation) ("Lambda" and, together with Sentry and Sigma, the "Funds") in these consolidated
adversary proceedings (the "U.S. Redeemer Actions"), respectfully file this memorandum of law
in opposition to Centrum Bank Aktiengesellschaft's ("Centrum") motion to dismiss the complaint
under Federal Rule of Civil Procedure 12(b)(5) as made applicable to these actions by Federal
Rule of Bankruptcy Procedure 7012 (Dkt. 3769) (the "Motion" or "Mot.").[1]  Furthermore, the
Liquidators respectfully request the Court authorize the Liquidators to effect alternative service
upon Centrum under Federal Rule of Civil Procedure 4(f)(3) or, if required, to re-effect traditional
service, upon Centrum, pursuant to letters rogatory, as authorized by Federal Rule of Civil Proce-
dure 4(f)(2).

## PRELIMINARY STATEMENT

Centrum's Motion seeking dismissal for allegedly insufficient service of process is the lat-
est in a long series of attempts to avoid adjudication on the merits in this case, which has been
pending for over a decade.  This Court's predecessor, Judge Bernstein, already considered and
rejected similar arguments raised by the parties' chosen representative defendant, HSBC Private
Bank Suisse ("HSBC Suisse").  *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield
Sentry Ltd.)*, 2020 WL 7345988, at *10–15 (Bankr. S.D.N.Y. Dec. 14, 2020) (Dkt. 3062), *recon-
sideration denied*, 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) (Dkt. 3080) (together, "*Fair-
field III*").  Since that time, in the wake of this Court ordering each Defendant either to stipulate

---

[1] Unless otherwise noted, docket citations refer to the consolidated adversary proceeding docket,
*Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam*, No. 10-ap-03496 (CGM)
(Bankr. S.D.N.Y.), and page citations refer to ECF pagination.

that it will not contest service, or provide discovery concerning service and file a motion, Dkt. 3616, well over 100 of the remaining defendants in the U.S. Redeemer Actions have signed a stipulation agreeing <u>not</u> to contest service further before this Court. *See, e.g.*, Dkt. 3742. Centrum's Motion fares no better than HSBC Suisse's and should be denied.

Centrum contends its circumstances are distinct from those considered by Judge Bernstein as to HSBC Suisse. That argument fails. Centrum <u>admits</u> that, just like HSBC Suisse, it has been on notice of and participated through U.S. counsel in these actions since at least 2010. And, just like HSBC Suisse, Centrum has failed to demonstrate that alternative service upon its U.S. counsel would fail to apprise it of the claims in this suit consistent with constitutional due process (Part I, *infra*), much less that the Liquidators acted without diligence in their original attempt to serve Centrum over a decade ago (Part II, *infra*).

It is well past time that these U.S. Redeemer Actions proceed to the merits. The Liquidators respectfully request that the Court enter an order similar to the one issued against HSBC Suisse authorizing alternative service upon Centrum's U.S. counsel pursuant to Rule 4(f)(3) or, alternatively, permitting Liquidators to re-effect traditional service pursuant to letters rogatory, as authorized by Federal Rule of Civil Procedure 4(f)(2).[2]

## RELEVANT BACKGROUND

### A.   The Liquidators' Original Good Faith Service Attempts

Centrum is one of the foreign investors that redeemed fraudulently inflated shares from the Funds before the revelation of the Madoff scheme.

---

[2] We respectfully request that the Court treat this opposition as the Liquidators' motion for alternative or new service, just as Judge Bernstein did in *Fairfield III*. 2020 WL 7345988, at *14–15; *see also Blockbuster, LLC v. Grupo Mizbe, S.A.*, 2015 WL 12712061, at *1 (S.D. Fla. July 22, 2015) (granting alternative service *sua sponte*). The Liquidators can file a formal motion to that effect if the Court so directs.

At the outset of the U.S. Redeemer Actions, the Liquidators had little, if any, information within their possession concerning the Funds' investors or redemptions. July 26, 2021 Decl. of Kenneth Krys ("Krys Decl.") ¶ 3. Thus, after being appointed by the BVI court in July 2009, the Liquidators and their staff immediately undertook to obtain Fund records from third parties, including the Funds' former administrators, Citco Fund Services (Europe) B.V., from whom the Liquidators only received redemption information a year later in May and August 2010. *Id.* ¶ 6. Even upon receiving that information, the Liquidators realized that the subscription and redemption information provided to them was often incomplete. *Id.* ¶ 8.

From 2003 onward, the Funds consistently required subscribers making new investments to sign subscription agreements, sometimes referred to as "Long-Form Subscription Agreements," containing, in relevant part, a forum selection clause agreeing to the jurisdiction of the New York courts and under which the subscriber consented to service by mail for "any suit, action or proceeding with respect to [the subscription agreement] and the Fund." *Id.* ¶ 7. Those agreements also provided that "[i]f Subscriber is subscribing as trustee, agent, representative, or nominee for another person (the 'Beneficial Shareholder'), Subscriber agrees that the representations and agreements herein are made by Subscriber with respect to itself and the Beneficial Shareholder. Subscriber has all the requisite authority from the Beneficial Shareholder to execute and perform the obligations hereunder." Fourth Am. Compl. ¶ 23, No. 10-ap-03635 (Bankr. S.D.N.Y.) (Dkt. 466); Fourth Am. Compl. ¶ 23, No. 10-ap-03636 (Bankr. S.D.N.Y.) (Dkt. 517).

The Liquidators determined that they had Long-Form Subscription Agreements for the vast majority of the Funds' subscribers. *Id.* ¶ 9. Centrum is among the Defendants for whom the Liquidators possess a Long-Form Subscription Agreement. July 26, 2021 Decl. of David Elsberg ("Elsberg Decl.") Ex. 16. But in some cases, the Liquidators were not provided with a Long-Form

3

Subscription Agreement for a particular subscriber. Krys Decl. ¶ 9. In those cases, the Liquidators were often able to locate so-called "Short-Form Subscription Agreements," executed at the time of each subsequent subscription, which expressly reaffirmed a prior Long-Form Subscription Agreement. *Id.*

Thus, while the Liquidators were unable to obtain subscription agreements for just a handful of their former subscribers, they understood that those investors and any downstream transferees could be named as defendants in these actions and served pursuant to the forum selection clause, since a Long-Form Subscription Agreement would have been required for any subscriber who invested after 2003, *id.* ¶ 10—just like Centrum did, *see* Fourth Am. Compl. ¶ 131 & Ex. A, No. 10-ap-03635 (Bankr. S.D.N.Y.) (Dkt. 466) (referencing post-2003 redemptions); Fourth Am. Compl. ¶ 139 & Ex. A, No. 10-ap-03636 (Bankr. S.D.N.Y.) (Dkt. 517) (same).

On this basis, the Liquidators served Centrum and all other foreign defendants by international registered mail when they brought the current actions in 2010. July 26, 2021 David Molton Decl. ("Molton Decl.") ¶¶ 3, 6 & Exs. 2, 5. The Liquidators also served Centrum's U.S. counsel by first-class mail on October 8, 2010. *Id.* ¶¶ 5, 8 & Exs. 4, 7.

### B.    The Bankruptcy Court's Prior Service Decisions

On August 6, 2018, this Court's predecessor, Judge Stuart M. Bernstein, ruled for the first time—nearly nine years after the Liquidators' initial service attempts—that the New York forum selection clauses in the Funds' subscription agreements did not authorize service by mail. Though the subscription agreements conferred automatic jurisdiction over shareholders for "any suit, action or proceeding with respect to [the subscription agreement] and the Fund," the Court concluded that the actions were only "with respect to" to the Funds—not the agreements. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL 3756343, at *12 (Bankr.

4

S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*").[3]  Thereafter, in April 2019, Judge Bernstein entered stipulated orders in this and the other U.S. Redeemer Actions setting the service issue for further briefing.  *E.g.*, So Ordered Stipulation, No. 10-ap-03635 (Bankr. S.D.N.Y.) (Dkt. 431 ¶ II.A).

On March 16, 2020, the consolidated defendants filed a renewed motion to dismiss based, in part, on the Liquidators' allegedly insufficient service of process.  Dkt. 2903, 2910.  For administration purposes, Judge Bernstein limited the briefing to service upon defendants residing in Switzerland ("Swiss Defendants")—a signatory of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention").  The Parties agreed to use HSBC Suisse as a "representative" defendant.  *Fairfield III*, 2020 WL 7345988, at *10 n.18.  On December 14, 2020, Judge Bernstein denied that motion in relevant part, ruling that alternative service was appropriate under Rule 4(f)(3) and ordered the Liquidators to serve HSBC Suisse's U.S. Counsel, Cleary Gottlieb.[4]  *Id.*, at *1, *15.

In reaching that decision, Judge Bernstein found HSBC Suisse "ha[d] undoubtedly been in regular contact with [its U.S. counsel] Cleary Gottlieb and ha[d] actively participated in the HSBC Action since at least September 2010."  *Id.* at *12.  He further ruled that serving HSBC Suisse through Cleary Gottlieb did not implicate the Hague Convention—the only international treaty at issue—because "Cleary Gottlieb was served domestically," and "the Hague Service Convention is not implicated because no documents are transmitted abroad."  *Id.*  He also concluded that the Liquidators had a reasonable basis, at least until *Fairfield I*, to believe they had properly served HSBC Suisse via international registered mail by relying on the subscription agreements.  *Id.* at

---

[3] The Liquidators have appealed this ruling.  Notice of Appeal, No. 19-cv-03911-VSB (S.D.N.Y.) (Dkt. 1 at 3).  They filed their opening brief on July 21, 2021.  *Id.* (Dkt. 440).

[4] The Liquidators effected that service as directed on February 2, 2021.  Cert. of Service of Third Am. Summons and Third Am. Compl., No. 10-ap-03633 (Bankr. S.D.N.Y.) (Dkt. 114).

*13. Judge Bernstein also emphasized that other considerations such as speed and efficiency also militated in favor of allowing service on HSBC Suisse via Cleary Gottlieb. *Id.* at *12–13. Finally, Judge Bernstein explained that "the Court has considered the parties' other arguments and to the extent not addressed herein, concludes that they lack merit or are mooted by the Court's rulings." *Id.* at *15.

Thereafter, Judge Bernstein entered a series of implementing orders in the 18 remaining actions expressly preserving service of process as an issue for further briefing. *See, e.g.*, Feb. 26, 2021 So Ordered Stipulation, No. 10-ap-03635 (Bankr. S.D.N.Y.) (Dkt. 519 ¶ II.1.e). Since then, 113 of the 122 defendants in those actions—including non-Swiss Defendants—have stipulated that the Court's ruling in *Fairfield III* as to HSBC Suisse also applies to them, subject to their ability to further challenge service if that decision is reversed on appeal. *See, e.g.*, Dkt. 3742.

### C.    The Current Motion

Following a hearing on April 21, 2021, the Court ordered, in relevant part, that each defendant that wished to challenge service of process file a motion. Dkt. 3616. In so ordering, the Court instructed those defendants that it "do[es] n[o]t want to hear about the Hague Convention" but rather "about the law firm." Elsberg Decl. Ex. 1 (Apr. 21, 2021 Tr. 37:07–09). Centrum is one of the nine defendants, of the over 100 remaining defendants, that renewed its motion to dismiss for insufficient service of process. The Liquidators now oppose and ask the Court to deny the Motion and to authorize alternative or new service.

### **ARGUMENT**

This Court should deny the Motion for two principal reasons. ***First***, as discovery has conclusively shown, Centrum's situation is materially indistinguishable from that of HSBC Suisse— the representative defendant against whom the Court's predecessor, Judge Bernstein, ordered alternative service—since Centrum has been apprised of the claims against it for years and the

Court's intervention would avoid needless cost and delay to these over-decade-long proceedings.

**Second**, the Court may authorize new service where, as with HSBC Suisse, the Liquidators under-

took diligent, reasonable efforts to serve the initial complaint upon Centrum.

## I.    ALTERNATIVE SERVICE ON U.S. COUNSEL HAS ALREADY BEEN APPROVED IN THESE U.S. REDEEMER ACTIONS AND IS APPROPRIATE HERE FOR THE SAME REASONS

An alternative method of service under Rule 4(f)(3) is proper so long as it (1) is not pro-

hibited by international treaty, and (2) comports with constitutional notions of due process. *Fair-*

*field III*, 2020 WL 7345988, at *11.  The proposed alternative service on Centrum's U.S. counsel

easily meets that test.

### A.    The Liquidators Easily Meet The Minimum Legal Threshold For Alternative Service Set By Judge Bernstein Where Defendant Has For Years Been In Contact With U.S. Counsel And Actively Engaged In These Actions

This Court's authority to order domestic mail service on Centrum's U.S. counsel is not in

question.  In authorizing alternative service upon HSBC Suisse's U.S. counsel, Judge Bernstein

joined the vast majority of courts in the Southern District of New York finding that such service

is proper where there is "adequate communication between the counsel and the party to be served."

*Fairfield III*, 2020 WL 7345988, at *12.[5] (collecting cases).  In doing so, Judge Bernstein made

---

[5] *Compare Zanghi v. Ritella*, 2020 WL 589409, at *7 (S.D.N.Y. Feb. 5, 2020); *Wash. State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *4 (S.D.N.Y. Sept. 21, 2018); *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 2015 WL 998455, at *4–5 (S.D.N.Y. Mar. 5, 2015); *Atlantica Holdings, Inc. v. BTA Bank JSC*, 2014 WL 12778844, at *3 (S.D.N.Y. Mar. 31, 2014); *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012); *Arista Records LLC v. Media Servs.. LLC*, 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25, 2008); *RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at *6 (S.D.N.Y. Aug. 10, 2007); *Enrenfeld v. Salim a Bin Mahfouz*, 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (finding that service on U.S.-based counsel permissible under Rule 4(f)(3)), *with Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *7 (S.D.N.Y. July 17, 2020) (finding the opposite, though acknowledging that its holding "departs from … courts in this District that have held that a defendant located outside of the United States can be served through his or her United States counsel under Rule 4(f)(3)…" (emphasis added)).

two principal findings. *First*, he determined that Switzerland's objection to international mail service under Art. 10(a) of the Hague Service Convention did not preclude mail service on a domestic conduit under Rule 4(f)(3), explaining that "the Hague Service Convention is not implicated because no documents are transmitted abroad." *Id.* (citing *Baidu.com*, 293 F.R.D. at 515; *GLG Life Tech*, 287 F.R.D. at 267). *Second*, he determined that "HSBC Suisse has undoubtedly been in regular contact with Cleary Gottlieb and has actively participated in the HSBC Action since at least September 2010." *Id.* By authorizing alternative service on U.S. counsel for the representative Swiss Defendant, HSBC Suisse, Judge Bernstein later clarified that his authority to do so was "binding" on all other Swiss Defendants. Dkt. 3076 at 2. The logic of Judge Bernstein's decision applies with equal force to non-Swiss Defendants who, like Centrum, reside in Liechtenstein. Unsurprisingly, 113 of the 122 remaining defendants have since stipulated to *Fairfield III*'s application to them. *See, e.g.*, Dkt. 3742.

Centrum's attempts to distinguish itself from HSBC Suisse fail. Ignoring this Court's instruction that it "do[es] n[o]t want to hear about the Hague Convention" but rather "about the law firm" (Apr. 21, 2021 Tr. 37:07–09), Centrum expends considerable effort to assert that alternative service would be improper here because the original attempted service pursuant to the parties' Long-Form Subscription Agreement was purportedly in violation of foreign law. Mot. 5, 7–16, 20–21.

In particular, Centrum argues that Liechtenstein, which requires international service by letters rogatory, assigns criminal penalties under its domestic law for unsanctioned forms of service on Liechtenstein-based defendants. Mot. 8.

However, as Judge Bernstein explained, <u>foreign law is not implicated</u> when it comes to service upon U.S. counsel for a foreign defendant, "because no documents are transmitted abroad."

8

*Fairfield III*, 2020 WL 7345988, at *12.  That holding applies equally to a defendant residing in Liechtenstein, like Centrum, as it does to the Switzerland-based defendant, HSBC Suisse.  Centrum's authorities do not change that conclusion.[6]

Moreover, that Liechtenstein is not a signatory of the Hague Convention (Mot. 19), and requires discovery be served through letters rogatory, is not a basis for distinction.  Regardless of whether the Hague Convention or letters rogatory is the applicable regime for effecting foreign service, neither is implicated by alternative service upon U.S. counsel.

To the extent Centrum suggests Judge Bernstein failed to properly weigh comity concerns (Mot. 20), that is wrong.  HSBC Suisse raised similar concerns in its briefing on the renewed motion to dismiss.  Dkt. 2903 at 44 (explaining "that the service of judicial documents on [foreign] territory is part and parcel of state sovereignty").  But in authorizing alternative service upon its U.S. counsel, Judge Bernstein rejected those concerns.  *Fairfield III*, 2020 WL 7345988, at *15 (finding that HSBC Suisse's "other arguments … not addressed herein, … lack[ed] merit or are mooted by the Court's rulings").  That result is consistent with what other courts in the Southern District have held.  *See, e.g.*, *Odebrecht*, 2018 WL 6253877, at *9 (any potential "offense to Brazilian law" from service on U.S. counsel is "outweighed by … the delay and difficulties associated with obtaining [international] service"); *see also GLG Life Tech*, 287 F.R.D. at 266 (similar); *Exp.-*

---

[6]  Centrum cites (Mot. 8) to *Jung v. Neschis*, 2003 WL 1807202, at *3 (S.D.N.Y. Apr. 7, 2003), for the proposition that service by mail under Rule 4(f)(2) is "prohibited by the laws of Liechtenstein."  But the Liquidators have not attempted service under Rule 4(f)(2), and *Jung* has no bearing on the Liquidators' ability to seek alternative service on U.S. counsel under Rule 4(f)(3).  Centrum's analogy (Mot. 8) to *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 2003 WL 1807148, at *7 (S.D.N.Y. Apr. 4, 2003), fares no better.  That case held simply that alternative service of a foreign defendant on foreign soil under Rule 4(f)(3) "must comport with the laws of the foreign country."  *Id.* at *7.  The contemplated alternative service in our case would be upon domestic U.S. counsel.

*Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005) (similar).

Likewise, to the extent Centrum asserts that the failure to provide translations of their complaint should constitute an independent reason for dismissal (Mot. 3, 11–12), those arguments fare no better. HSBC Suisse argued so as well. Dkt. 2903 at 36 n.71. As the Liquidators explained, federal courts authorize alternative service on U.S. counsel for foreign defendants without requiring plaintiffs to first translate their complaints. *E.g., SEC v. Jammin Java Corp.*, 2016 WL 6650849, at *2 (C.D. Cal. Apr. 21, 2016) (granting alternative service request despite SEC's failure to translate the complaint into defendant's native German, consistent with the Hague Convention); *cf. Icon DE Holdings LLC v. Eastside Distribs.*, 2015 WL 4557278, at *1 (S.D.N.Y. July 28, 2015) (service inadequate where, unlike here, plaintiff attempted to effect service under the Hague Convention but failed to provide the required French translation).

The sole question, as Judge Bernstein recognized in his February 22, 2021 clarifying order, is whether based "on the facts of that case," Dkt. 3076 at 2, there is "adequate communication between the counsel and the party to be served" sufficient to conclude that counsel for Centrum was—like counsel for HSBC Suisse before it—reasonably likely to apprise their client of the claims against it, *Fairfield III*, 2020 WL 7345988, at *12 (citing *GLG Life Tech*, 287 F.R.D. at 267) (emphasis added).

Centrum has not disputed that the same standard should apply to it. Nor can it dispute that the Liquidators have satisfied that standard. Just as with HSBC Suisse, Centrum has been in regular contact with their U.S. counsel and has actively participated in the case since it began. As the stipulation between the parties and documentary evidence conclusively shows:

Centrum first learned of the action against it or around August 2010, when it received a copy of the complaints via international registered mail at Centrum's offices in Liechtenstein. *See* Elsberg Decl. Ex. 15 ¶ 4 (July 21, 2021 stipulation with Centrum). Thereafter, Centrum retained U.S. counsel, Withers Bergman LLP, in or around late 2010 or early 2011, to provide legal advice and represent Centrum's legal interests (including its defense) in connection with the Liquidators' claims. *See id.* ¶ 5. Shortly after Centrum was acquired by the Defendant Verwaltungs-und Privat-Bank Aktiengesellschaft ("VP Bank"), Withers withdrew its representation of Centrum and Fried Frank filed a stipulation of substitution of counsel. *Id.* ¶¶ 6–7. That firm appeared in these action on Centrum's behalf on January 27, 2017, when it filed a supplemental memorandum of law in support of a motion to dismiss. No. 10-ap-03635 (Dkt. 217). It has continuously represented Centrum in these actions since that time, actively participating in court conferences, motion practice, and negotiations with the Liquidators' counsel, *see* Elsberg Decl. Ex. 15 ¶ 7.

As such, there is no question that effecting alternative service upon such counsel would apprise Centrum of the claims against it consistent with constitutional due process.

### B. The Court Should Exercise Its Discretion To Order Alternative Service Upon Defendant's U.S. Counsel As Judge Bernstein Did With HSBC Suisse

Though courts have discretion to authorize mail service without more, they often require "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Fairfield III*, 2020 WL 7345988, at *11.

Judge Bernstein found both elements satisfied as to HSBC Suisse. ***First***, he found the Liquidators had made reasonable attempts to effectuate service, because "[u]ntil the Court issued *Fairfield I* in August 2018, the Liquidators had a reasonable basis to believe that they had properly served HSBC Suisse by mail in accordance with the subscription agreements. After the Court

11

issued *Fairfield I* and *Fairfield II* the parties entered into detailed stipulations in 2019 resolving the prior motion to dismiss and identifying the issues to be raised in the instant [m]otion to dismiss including 'whether service was properly effected.'" *Id.* at *13.

**Second**, he noted that "Courts often consider the cost and delay associated with service under the Hague Service Convention or other treaties when approving alternative service under Rule 4(f)(3)," and here the Liquidators had shown that service upon HSBC Suisse and other Swiss Defendants would cost $273,441 and take four months or more. *Id.* "Forcing the Liquidators to expend significant sums to effect service under the Hague Service Convention when cheaper and equally effective alternatives exist will adversely affect the amount available for ratable distribution to the Funds' creditors and shareholders." *Id.*

Centrum has not suggested any good reason why Judge Bernstein's holding that the Liquidators acted reasonably should not also bind it here. As with HSBC Suisse, the Liquidators had a Long-Form Subscription Agreement (Elsberg Decl. Ex. 16) with Citco, as record holder, which they reasonably understood to confer upon them the ability to serve Centrum, as beneficial owner on whose behalf Citco would have signed the agreement, via international registered mail.[7]

To the extent Centrum intends to argue (Mot. 15) that its status as a beneficial (rather than record) shareholder is a basis for distinguishing it from HSBC Suisse, that argument should also be rejected. Citco, acting as record holder, expressly committed to the jurisdiction of the New York courts and service of process under New York law for both itself and the beneficial

---

[7] Whatever subscription agreement covered the early years of the parties' business relationship has no bearing on what subscription agreement governed after 2003, when the Funds consistently required entry into a Long-Form Subscription Agreement, Krys Decl. ¶ 7—considering all the redemptions at issue in these actions post-date 2003, *see* Fourth Am. Compl. ¶ 131 & Ex. A, No. 10-ap-03635 (Bankr. S.D.N.Y.) (Dkt. 466) (referencing post-2003 redemptions); Fourth Am. Compl. ¶ 139 & Ex. A, No. 10-ap-03636 (Bankr. S.D.N.Y.) (Dkt. 517) (same).

shareholders, like Centrum, for whom it placed investments as an agent or representative. Fourth Am. Compl. ¶ 23, No. 10-ap-03635 (Dkt. 466); Fourth Am. Compl. ¶ 23, No. 10-ap-03635 (Dkt. 517). The Liquidators had a reasonable basis at the time of initial service to conclude that Centrum was bound to accept mail service, as provided for by the Long-Form Subscription Agreements.

It was not until years after that original service, when *Fairfield I* was decided and the implementing orders were entered, that the Court conclusively determined that the forum selection clause was ineffective to confer jurisdiction over the defendants. Each of the implementing orders after *Fairfield I* and *Fairfield II* preserved sufficiency of service for further briefing. The implementing orders after *Fairfield III* <u>also</u> preserved sufficiency of service for further briefing, as that issue had not yet been conclusively resolved as to Centrum and certain other defendants. The parties are in no different a position now than they were when they briefed the renewed motion to dismiss against HSBC Suisse. Just as then, the Court should conclude that the Liquidators have acted reasonably under the circumstances.[8] Now—in the context of Centrum's Motion challenging the sufficiency of service—is precisely the time for the Liquidators to seek authorization for the alternative service necessitated by *Fairfield I*.

And as with HSBC Suisse, the Court's authorization of alternative service upon Centrum would avoid unnecessary expense and delay in these over decade-old proceedings that would only

---

[8] To the extent Centrum or other defendants have suggested the "good cause" standard applies, that is incorrect. "Good cause" is relevant only to whether a court will excuse a plaintiff's failure to attempt <u>domestic service</u> within the 90-day period contemplated by Federal Rule of Civil Procedure 4(m). It has nothing to do with a request under Rule 4(f)(3) for alternative service upon U.S. counsel for a foreign defendant where, as here, the Liquidators undisputedly began their service attempts within the prescribed time frame. *See infra* Section II; Molton Decl. ¶¶ 3, 6 (indicating service of the September 21, 2010 Complaint upon Centrum just a few weeks later on October 21, 2010); *id.* Ex. 2 (affidavit of service in No. 10-ap-03635) (same); *id.* Ex. 5 (affidavit of service in No. 10-ap-03636) (same).

13

serve to further deplete the now insolvent Funds' considerably limited resources. Contrary to Centrum's assertion that it is neither "time consuming [n]or difficult" (Mot. 21), the estimates that the Liquidators obtained indicated that attempts to re-serve Centrum by letters rogatory would require 10–12 months or more and over $12,000, excluding attorney and staff costs. *See* Molton Decl. ¶ 17 & Ex. 10 (providing that "[t]he total cost of service of the [four] Liechtenstein Defendants, inclusive of service fees and translation fees, is $49,055.68"). That is in addition to the costs and delay associated with effecting service on <u>all other defendants</u> who have chosen to challenge service. *Id.* ¶ 18 & Ex. 10 (estimating a minimum of $70,437.88 for the translation and service of papers on the moving Defendants and estimating anywhere between 2 and 12 months depending on the country of service).

As we explained in our prior briefing (Dkt. 3033 at 42–43), the Liquidators are responsible to the Funds' stakeholders to grow—not deplete—the estate through judicious exercise of their statutory powers. Absent a ruling by this Court, the Liquidators should not expend estate resources or further delay their efforts to recover for estate beneficiaries. Requiring Plaintiffs to re-effect traditional service pursuant to letters rogatory now would accomplish nothing but increased cost and delay. As with HSBC Suisse, Centrum "had actual notice of the [action], has actively litigated for a decade through capable counsel, 'and, thus, as a practical matter, the purpose of the service requirement has already been accomplished.'" *Fairfield III*, 2020 WL 7345988, at *13 (quoting *Arista Records LLC*, 2008 WL 563470, at *2).

## II.    THE LIQUIDATORS EXERCISED THE DUE DILIGENCE NECESSARY FOR THE OPPORTUNITY TO EFFECT NEW ALTERNATIVE SERVICE UPON DEFENDANT

As previously held by Judge Bernstein, service in a foreign country under Rule 4(f) is evaluated according to a flexible due diligence standard "so long as the plaintiff attempts to begin

service on a foreign defendant within [the 120-day] timeframe" contemplated by Rule 4(m).[9]

*Fairfield III*, 2020 WL 7345988, at *14 (citing *USHA (India) Ltd. v. Honeywell Int'l, Inc.*, 421

F.3d 1219, 133–34 (2d Cir. 2005); *Trilliant Funding, Inc. v. Marengere (In re Bozel S.A.)*, 2017

WL 3175606, at *2 (S.D.N.Y. July 25, 2017)); *see also Burda Media, Inc. v. Blumenberg*, 2004

WL 1110419, at *6 (S.D.N.Y. May 18, 2004), *aff'd sub nom. Burda Media, Inc. v. Viertel*, 417

F.3d 292 (2d Cir. 2005) (plaintiff was diligent, despite 10-month delay in completing service under

the Hague Convention, where it was "uncertain" at outset of the case "whether service would take

place domestically or internationally"); *Aqua Shield, Inc. v. Inter Pool Cover Team*, 2007 WL

4326793, at *2 (E.D.N.Y. Dec. 7, 2007) (plaintiff was diligent where it was unclear if plaintiff was

"required to separately file service of the complaint upon [defendant] in accordance with the Hague

Convention"); *cf. Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (unlike

here, plaintiff was not diligent where it "never attempted to serve process in a foreign country"

and "has not exactly bent over backward to effect service").  Courts have found the requisite due

diligence even despite "periods of inactivity" by the plaintiff.  *Joint Stock Co. Channel One Russia

Worldwide v. Infomir LLC*, 2018 WL 4681616, at *11 (S.D.N.Y. Sept. 11, 2018 (R. & R.) (plaintiff

was diligent where period of inactivity was largely attributable to review of papers by German

authorities), *adopted by* 2018 WL 4666069 (S.D.N.Y. Sept. 28, 2018).

In assessing due diligence, courts look to the "[1] the reasonableness of the plaintiff's ef-

forts and [2] the prejudice to the defendant from any delay."  *In re Bozel S.A.*, 2017 WL 3175606,

at *2–3; *see also Lyell Theater Corp. v. Loews Corp.*, 682 F.2d 37, 42–43 (2d Cir. 1982) (finding

lack of due diligence where plaintiff's unreasonable delay resulted in prejudice to defendant).  The

Liquidators easily satisfy both prongs here.  **First**, as discussed in Part I.B, *supra*, the Liquidators'

---

[9] The Rule 4(m) time limit has since been reduced to 90 days.

attempts to serve the initial complaint and summons in a timely manner consistent with the sub-scription agreements was reasonable, as Judge Bernstein already held. *Fairfield III*, 2020 WL 7345988, at *13. Until *Fairfield I*, the Liquidators reasonably believed they had effectively served HSBC Suisse (and all defendants) under existing law specifying that defendants may consent to personal jurisdiction by private contract. *See, e.g.*, *Ninety-Five Madison Co., L.P. v. Vitra Int'l AG*, 2020 WL 1503640, at *4 (S.D.N.Y. Mar. 30, 2020). And, as with HSBC Suisse, the Liquidators reasonably waited for this Court's ruling on alternative service before expending estate resources on costly new service for Centrum that might not even be necessary.

*Second*, nothing in Centrum's Motion—much less the discovery—suggests any prejudice from a purported failure to receive service pursuant to letters rogatory. Nor could it. By the time *Fairfield I* was decided, the litigation had been pending for nearly nine years. Centrum's counsel has been monitoring the case throughout and periodically filing on Centrum's behalf. The parties' position has not materially changed since that time—the case remains at the pleading stage and the only "burden" undertaken by Centrum is the same one faced by HSBC Suisse—namely, the obligation to file a motion to press its arguments about ineffective service of process. That is not sufficient to defeat the Liquidators' diligence. As Judge Bernstein explained, "[t]he decision to litigate the propriety of past service or seek a different and less costly method of new service, rather than proceed with the costly and time-consuming process of serving the Defendants under the Hague Service Convention, does not signify a lack of due diligence." *Fairfield III*, 2020 WL 7345988, at *15.

Centrum wrongly asserts that "inequities … would result" if the Liquidators were "permit-ted to request alternative service for the first time in their opposition to this motion" and Centrum was "afforded only seven days to respond." Mot. 21–22. But the availability of alternative service

was one of two core issues briefed on the prior motion to dismiss filed well over a year ago now, and one of the seven issues preserved by the parties for further briefing in the implementing orders that followed *Fairfield III*.  Centrum cannot credibly argue that it would be surprised or disadvantaged by the Court's consideration of the Liquidators' request now.

Accordingly, the Liquidators have exercised the requisite diligence in order to be permitted to re-effect alternative service or, if the Court requires it, new service pursuant to letters rogatory.

## **CONCLUSION**

For the foregoing reasons, the Liquidators respectfully request that the Court deny the Motion and authorize the Liquidators to effect alternative service upon Centrum's U.S. counsel under Rule 4(f)(3) or, if required, to be afforded the opportunity to re-effect new service pursuant to letters rogatory under Rule 4(f)(2).

Dated:   New York, NY
         July 26, 2021

Respectfully submitted,

SELENDY & GAY PLLC

By: _____

SELENDY & GAY PLLC

David Elsberg
Lena Konanova
Jordan Garman
Ester Murdukhayeva
Ronald Krock
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
delsberg@selendygay.com
lkonanova@selendygay.com
jgarman@selendygay.com
emurdukhayeva@selendygay.com
rkrock@selendygay.com

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for Plaintiffs Foreign Representatives*

18