UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>    Debtor in Foreign<br>    Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN<br>LIQUIDATION), et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>    Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN<br>LIQUIDATION), et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>    Defendants. | Adv. Pro. No. 10-03635 (CGM) |

## <u>MEMORANDUM OF LAW IN OPPOSITION TO HSBC'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS</u>

Date:  July 26, 2021

SELENDY & GAY PLLC

David Elsberg
Lena Konanova
Jordan Garman

Ester Murdukhayeva
Ronald Krock
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800

*Attorneys for Plaintiffs Foreign
Representatives*

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ...........................................................................................2

RELEVANT BACKGROUND .............................................................................................4

    A.    The Liquidators' Original Good Faith Service Attempts .........................................4

    B.    The Bankruptcy Court's Prior Service Decisions ....................................................6

    C.    The Current Motion And Subsequent Discussions ..................................................8

ARGUMENT .........................................................................................................................9

I.    HSBC'S MOTION IS UNRELATED TO SERVICE ...........................................9

II.    ALTERNATIVE SERVICE ON U.S. COUNSEL HAS ALREADY BEEN
    APPROVED IN THESE U.S. REDEEMER ACTIONS AND IS APPROPRIATE
    HERE FOR THE SAME REASONS ....................................................................11

    A.    The Liquidators Easily Meet The Minimum Legal Threshold For
        Alternative Service Set By Judge Bernstein Where Defendant Has For
        Years Been In Contact With U.S. Counsel And Actively Engaged In This
        Action.....................................................................................................................11

    B.    The Court Should Exercise Its Discretion To Order Alternative Service
        Upon Defendant's U.S. Counsel As Judge Bernstein Did With HSBC
        Suisse ....................................................................................................................14

III.    THE LIQUIDATORS EXERCISED THE DUE DILIGENCE NECESSARY
    FOR THE OPPORTUNITY TO EFFECT NEW ALTERNATIVE SERVICE
    UPON DEFENDANT.............................................................................................17

CONCLUSION....................................................................................................................19

## **TABLE OF AUTHORITIES**

**Pages**

### **Cases**

*Aqua Shield, Inc. v. Inter Pool Cover Team*,
    2007 WL 4326793 (E.D.N.Y. Dec. 7, 2007) ................................................................. 17

*Arista Records LLC v. Media Servs. LLC*,
    2008 WL 563470 (S.D.N.Y. Feb. 25, 2008)............................................................. 12, 17

*Atlantica Holdings, Inc. v. BTA Bank JSC*,
    2014 WL 12778844 (S.D.N.Y. Mar. 31, 2014) .............................................................. 12

*Blockbuster, LLC v. Grupo Mizbe, S.A.*,
    2015 WL 12712061 (S.D. Fla. July 22, 2015)................................................................. 4

*Broadway v. adidas Am., Inc.*,
    2008 WL 2705566, at *5 (July 10, 2008) ....................................................................... 10

*Burda Media, Inc. v. Blumenberg*,
    2004 WL 1110419 (S.D.N.Y. May 18, 2004), *aff'd sub nom. Burda Media, Inc. v.*
    *Viertel*, 417 F.3d 292 (2d Cir. 2005)............................................................................. 17

*Convergen Energy LLC v. Brooks*,
    2020 WL 4038353 (S.D.N.Y. July 17, 2020) ................................................................. 12

*Enrenfeld v. Salim a Bin Mahfouz*,
    2005 WL 696769 (S.D.N.Y. Mar. 23, 2005) ................................................................. 12

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") .................. 6, 7, 14, 18

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*,
    2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) (together, "*Fairfield III*") ........ passim

*In re GLG Life Tech Corp. Sec. Litig.*,
    287 F.R.D. 262 (S.D.N.Y. 2012) ............................................................................. 12, 13

*Jian Zhang v. Baidu.com Inc.*,
    293 F.R.D. 508 (S.D.N.Y. 2013) .................................................................................. 12

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
    2018 WL 4681616 (S.D.N.Y. Sept. 11), *adopted by* 2018 WL 4666069 (S.D.N.Y.
    Sept. 28, 2018) ............................................................................................................. 18

*Lyell Theater Corp. v. Loews Corp.*,
  682 F.2d 37 (2d Cir. 1982).................................................................... 18

*Montalbano v. Easco Hand Tools, Inc.*,
  766 F.2d 737 (2d Cir. 1985)................................................................. 17

*Ninety-Five Madison Co., L.P. v. Vitra Int'l, AG.*,
  2020 WL 1503640 (S.D.N.Y. Mar. 30, 2020) .................................... 18

*NYKCool A.B. v. Pac. Int'l Servs., Inc.*,
  2015 WL 998455 (S.D.N.Y. Mar. 5, 2015) ......................................... 12

*RSM Prod. Corp. v. Fridman*,
  2007 WL 2295907 (S.D.N.Y. Aug. 10, 2007)..................................... 12

*Schiavone v. Fortune*,
  477 U.S. 21 (1986)............................................................................... 10

*Trilliant Funding, Inc. v. Marengere (In re Bozel S.A.)*,
  2017 WL 3175606 (S.D.N.Y. July 25, 2017) ............................... 17, 18

*USHA (India) Ltd. v. Honeywell Int'l, Inc.*,
  421 F.3d 1219 (2d Cir. 2005)............................................................... 17

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
  2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018).................................... 12

*Zanghi v. Ritella*,
  2020 WL 589409 (S.D.N.Y. Feb. 5, 2020).......................................... 12

## **Rules**

Federal Rule of Civil Procedure 12(b)(5) ...................................................... 1

Federal Rule of Civil Procedure 4(f)(3)............................................... passim

Kenneth M. Krys and Greig Mitchell (the "Liquidators"), in their capacities as the duly appointed Liquidators and Foreign Representatives of Fairfield Sentry Limited (In Liquidation) ("Sentry"), Fairfield Sigma Limited (In Liquidation) ("Sigma"), and Fairfield Lambda Limited (In Liquidation) ("Lambda" and, together with Sentry and Sigma, the "Funds") in these consolidated adversary proceedings (the "U.S. Redeemer Actions"), respectfully file this memorandum of law in opposition to HSBC's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(5) as made applicable to these actions by Federal Rule of Bankruptcy Procedure 7012 (Dkt. 3783) (the "Motion" or "Mot.").[1]

Although HSBC purports to seek dismissal for insufficient service of process, its Motion instead focuses on whether "HSBC" is the proper party to sue, *e.g., id.* at 4, 7–9—one of six other issues expressly preserved for future briefing, Feb. 26, 2021 So Ordered Stipulation, No. 10-ap-03635 (Dkt. 519 ¶ II.1.e).  HSBC's arguments are premature and outside the bounds of the briefing ordered by this Court on these motions.  Dkt. 3616 (ordering motion practice regarding leave to amend and service of process).

Notwithstanding HSBC's jumping ahead of the scheduling order, the Liquidators have worked as quickly and constructively as possible to resolve HSBC's contention as to proper party naming, by testing it against HSBC's own records, obtained as part of the limited service discovery authorized by the Court.  While the Liquidators have received evidence on the issue within the last few weeks, that inquiry is continuing.  Accordingly, to bring HSBC's briefing of the proper party issue in alignment with the scheduling order, the Liquidators respectfully request that the Court deny the Motion without prejudice to HSBC's ability to re-file the appropriate motion at the

---

[1] Unless otherwise noted, docket citations refer to the consolidated adversary proceeding docket, *Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam*, No. 10-ap-03496 (CGM) (Bankr. S.D.N.Y.), and page citations refer to ECF pagination.

appropriate time, and to allow the Liquidators the opportunity to complete their investigation into the proper party.

Finally, in case a service issue remains live at the time of such future briefing, and to give the Court maximum flexibility for handling HSBC's motion, we include here the Liquidators' arguments regarding alternative service that are available on the present record. If the proper party is foreign, the Liquidators respectfully request the Court authorize the Liquidators to effect alternative service upon that entity under Federal Rule of Civil Procedure 4(f)(3) or if required, to re-effect traditional service upon that entity pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), as authorized by Federal Rule of Civil Procedure 4(f)(1), or letters rogatory, as authorized by Federal Rule of Civil Procedure 4(f)(2).[2] If the proper entity is domestic, the Liquidators respectfully request the Court authorize the Liquidators to effect traditional service upon the proper entity under Rule 4(e).

## PRELIMINARY STATEMENT

Although framed as a motion to dismiss for insufficient service, HSBC's Motion instead relates to proper party naming. Specifically, HSBC contends that "HSBC" is not a legal entity and thus was not properly named as a Defendant—and that naming "HSBC" could not provide notice to a Defendant of this action. *See, e.g.*, Mot. 7–8. The parties have agreed that proper party naming is a separate issue from service, Feb. 26, 2021 So Ordered Stipulation, No. 10-ap-03635 (Dkt. 519 ¶ II.1.e), and this Court has thus far only authorized briefing on service—not proper party naming, Dkt. 3616. Because HSBC's Motion is beyond the scope of the motion practice authorized by this

---

[2] References herein to the "proper party," "proper entity," or "proper HSBC defendant" are not a concession that the improper party is named but rather a recognition that the issue has been contested by HSBC and not yet resolved.

2

Court, HSBC's Motion should be denied without prejudice to HSBC's ability to re-file the appropriate motion at the appropriate time.

To the extent that HSBC's Motion raises any issues related to service, this Court's predecessor, Judge Bernstein, already considered and rejected similar arguments raised by the parties' chosen representative defendant, HSBC Private Bank Suisse ("HSBC Suisse"). *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2020 WL 7345988, at *10–15 (Bankr. S.D.N.Y. Dec. 14, 2020) (Dkt. 3062), *reconsideration denied*, 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) (Dkt. 3080) (together, "*Fairfield III*"). Since that time, in the wake of this Court ordering each Defendant either to stipulate that it will not contest service, or to provide discovery concerning service and file a motion, Dkt. 3616, well over 100 of the remaining defendants in the U.S. Redeemer Actions—including each HSBC affiliate except for "HSBC"—have signed a stipulation agreeing not to contest service further before this Court. *See, e.g.*, Dkt. 3742. HSBC's Motion fares no better than HSBC Suisse's and should be denied.

HSBC contends its circumstances are distinct from those considered by Judge Bernstein as to HSBC Suisse. That argument fails. Just like HSBC Suisse, HSBC has been on notice of and actively participated through U.S. counsel in this action since at least 2012, when it was first named in the Third Amended Complaint. And, as with HSBC Suisse, HSBC has failed to demonstrate that alternative service upon its U.S. counsel would fail to apprise it or the proper defendant entity of the claims in this suit consistent with constitutional due process (Part I, *infra*), much less that the Liquidators acted without diligence in their original attempt to serve HSBC nearly a decade ago (Part II, *infra*).

It is well past time that these U.S. Redeemer Actions proceed to the merits. The Liquidators respectfully request that the Court deny HSBC's Motion. The Liquidators further request that,

once the proper party naming issue is resolved, this Court enter an order similar to the one issued

against HSBC Suisse authorizing alternative service upon that entity's U.S. counsel pursuant to

Rule 4(f)(3), if the entity is foreign.  In the alternative, if the proper entity is foreign, the Liquida-

tors respectfully request leave to re-effect traditional service pursuant to the Hague Convention, as

authorized by Federal Rule of Civil Procedure 4(f)(1), or letters rogatory, as authorized by Federal

Rule of Civil Procedure 4(f)(2).[3]  If the entity is domestic the Liquidators respectfully request  an

order authorizing service pursuant to Rule 4(e).

## RELEVANT BACKGROUND

### A.    The Liquidators' Original Good Faith Service Attempts

At the outset of the U.S. Redeemer Actions, the Liquidators had little, if any, information

within their possession concerning the Funds' investors or redemptions.  July 26, 2021 Decl. of

Kenneth Krys ("Krys Decl.") ¶ 3.  Thus, after being appointed by the BVI court in July 2009, the

Liquidators and their staff immediately undertook to obtain Fund records from third parties, in-

cluding the Funds' former administrator, Citco Fund Services (Europe) B.V., from whom the Liq-

uidators only received redemption information a year later in May and August 2010.  *Id.* ¶¶ 4, 6.

Even upon receiving that information, the Liquidators realized that the subscription and redemp-

tion information provided to them was often incomplete.  *Id.* ¶ 8.  That information reflected that

"HSBC" was the beneficiary of numerous redemptions from the Funds.  *Id.* ¶ 13.

From 2003 onward, the Funds consistently required subscribers making new investments

to sign subscription agreements, sometimes referred to as "Long-Form Subscription Agreements,"

---

[3] We respectfully request that the Court treat this opposition as the Liquidators' motion for alternative or new service, just as Judge Bernstein did in *Fairfield III*.  2020 WL 7345988, at *14–15; *see also Blockbuster, LLC v. Grupo Mizbe, S.A.*, 2015 WL 12712061, at *1 (S.D. Fla. July 22, 2015) (granting alternative service *sua sponte*).  The Liquidators can file a formal motion to that effect if the Court so directs.

containing, in relevant part, a forum selection clause agreeing to the jurisdiction of the New York courts and under which the subscriber <u>consented</u> to service by mail for "any suit, action or proceeding with respect to [the subscription agreement] and the Fund." *Id.* ¶ 7. Those agreements also provided that "[i]f Subscriber is subscribing as trustee, agent, representative, or nominee for another person (the '<u>Beneficial Shareholder</u>'), Subscriber agrees that the representations and agreements herein are made by Subscriber with respect to itself and the Beneficial Shareholder. Subscriber has all the requisite authority from the Beneficial Shareholder to execute and perform the obligations hereunder." Fourth Am. Compl. ¶ 23, No. 10-ap-03635 (Bankr. S.D.N.Y.) (Dkt. 466).

The Liquidators determined that they had Long-Form Subscription Agreements for the vast majority of the Funds' subscribers. Krys Decl. ¶ 9. But in some cases, the Liquidators were not provided with a Long-Form Subscription Agreement for a particular subscriber. *Id.* In those cases, the Liquidators were often able to locate so-called "Short-Form Subscription Agreements," executed at the time of each subsequent subscription, which expressly reaffirmed a prior Long-Form Subscription Agreement. *Id.*

HSBC is among the minority of defendants for whom the Liquidators did not receive either a Long- or Short-Form Subscription Agreement covering the post-2003 period. Nevertheless, the Liquidators understood that HSBC, and other beneficial shareholders like it, could be named as defendants in these actions and served pursuant to the forum selection clause, since a Long-Form Subscription Agreement would have been required for any subscriber who invested after 2003, *id.* ¶ 10—as HSBC did, *see* Fourth Am. Compl. ¶ 131 & Ex. A, No. 10-ap-03635 (Bankr. S.D.N.Y.) (Dkt. 466) (referencing post-2003 redemptions).

5

On this basis, the Liquidators served HSBC—which they reasonably believed to be foreign—and all other foreign defendants by international registered mail when they brought the current actions in 2010.  July 26, 2021 David Molton Decl. ("Molton Decl.") ¶ 10; *id.* Ex. 9 (No. 10-ap-03635, Dkt. 123).

### B.    The Bankruptcy Court's Prior Service Decisions

On August 6, 2018, this Court's predecessor, Judge Stuart M. Bernstein, ruled for the first time—nearly nine years after the Liquidators' initial service attempts—that the New York forum selection clauses in the Funds' subscription agreements did not authorize service by mail.  Though the subscription agreements conferred automatic jurisdiction over shareholders for "any suit, action or proceeding with respect to [the subscription agreement] and the Fund," the Court concluded that the actions were only "with respect to" to the Funds—not the agreements.  *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*").[4]  Thereafter, in April 2019, Judge Bernstein entered stipulated orders in this and the other U.S. Redeemer Actions setting the service issue for further briefing.  *E.g.*, So Ordered Stipulation, No. 10-ap-03635 (Bankr. S.D.N.Y.) (Dkt. 431 ¶ II.A).

On March 16, 2020, the consolidated defendants filed a renewed motion to dismiss based, in part, on the Liquidators' allegedly insufficient service of process.  Dkt. 2903, 2910.  For administration purposes, Judge Bernstein limited the briefing to service upon defendants residing in Switzerland ("Swiss Defendants")—a signatory of the Hague Convention.  The Parties agreed to use HSBC Suisse as a "representative" defendant.  *Fairfield III*, 2020 WL 7345988, at *10 n.18.  On December 14, 2020, Judge Bernstein denied that motion in relevant part, ruling that alternative

---

[4] The Liquidators have appealed this ruling.  Notice of Appeal, No. 19-cv-03911 (S.D.N.Y.) (Dkt. 1 at 3).  They filed their opening brief on July 21, 2021.  *Id.* (Dkt. 440).

service was appropriate under Rule 4(f)(3) and ordered the Liquidators to serve HSBC Suisse's U.S. Counsel, Cleary Gottlieb (who is also counsel to HSBC).[5]  *Id.*, at *1, *15.

In reaching that decision, Judge Bernstein found HSBC Suisse "ha[d] undoubtedly been in regular contact with [its U.S. counsel] Cleary Gottlieb and ha[d] actively participated in the HSBC Action since at least September 2010."  *Id.* at *12.  He further ruled that serving HSBC Suisse through Cleary Gottlieb did not implicate the Hague Convention—the only international treaty at issue—because "Cleary Gottlieb was served domestically," and "the Hague Service Convention is not implicated because no documents are transmitted abroad."  *Id.*  He also concluded that the Liquidators had a reasonable basis, at least until *Fairfield I*, to believe they had properly served HSBC Suisse via international registered mail by relying on the subscription agreements.  *Id.* at *13.  Judge Bernstein also emphasized that other considerations such as speed and efficiency also militated in favor of allowing service on HSBC Suisse via Cleary Gottlieb.  *Id.* at *12–13.  Finally, Judge Bernstein explained that "the Court has considered the parties' other arguments and to the extent not addressed herein, concludes that they lack merit or are mooted by the Court's rulings."  *Id.* at *15.

Thereafter, Judge Bernstein entered a series of implementing orders in the 18 remaining actions expressly preserving service of process as an issue for further briefing.  *See, e.g.*, Feb. 26, 2021 So Ordered Stipulation, No. 10-ap-03635 (Bankr. S.D.N.Y.) (Dkt. 519 ¶ II.1.e).  Since then, 113 of the 122 defendants in those actions—including every HSBC Defendant except "HSBC"— have stipulated that the Court's ruling in *Fairfield III* as to HSBC Suisse also applies to them,

---

[5] The Liquidators effected that service as directed on February 2, 2021.  Cert. of Service of Third. Am. Summons and Third Am. Compl., No. 10-ap-03633 (Bankr. S.D.N.Y.) (Dkt. 114).

subject to their ability to further challenge service if that decision is reversed on appeal. *See, e.g.*, Dkt. 3742.

### C.     The Current Motion And Subsequent Discussions

Following a hearing on April 21, 2021, the Court ordered, in relevant part, that each defendant that wished to challenge service of process file a motion. Dkt. 3616. In so ordering, the Court instructed those defendants that it "do[es] n[o]t want to hear about the Hague Convention" but rather "about the law firm." July 26, 2021 Decl. of David Elsberg ("Elsberg Decl.") Ex. 1 (Apr. 21, 2021 Tr. 37:07–09). HSBC is one of the nine defendants, of the over 100 remaining defendants, that renewed its motion to dismiss for insufficient service of process. The Liquidators now oppose and ask the Court to deny the Motion and to authorize alternative or new service.

Following HSBC's Motion, the Liquidators have repeatedly engaged with HSBC's counsel, Cleary Gottlieb, to resolve the question of which entity is the proper party—if, as HSBC argues, "HSBC" is not properly named. In the course of those discussions, HSBC's counsel represented to the Liquidators that HSBC Bank USA, N.A. ("HBUS") has relevant records concerning the at-issue redemptions. With Cleary's consent, the Liquidators subpoenaed HBUS and obtained underlying transaction records for the at-issue redemptions. Cleary represented to Plaintiffs on June 29, 2021 that HBUS has no records indicating that it received any transfers for its own account; based on the limited records HBUS produced, Cleary takes the position that the subject transfers were deposited into an account at HBUS belonging to Citco Banking Corporation N.V.

The Liquidators provided these records to counsel for Citco Fund Services (Europe) B.V. (the "Citco Administrator"), Paul, Weiss, Rifkind, Wharton & Garrison LLP, and sought information regarding the ultimate recipient of the at-issue redemptions. Counsel for the Citco Administrator finally clarified for the Liquidators on July 19, 2021 that their records show HBUS—a Defendant in the 10-ap-03634 action and an affiliate of HSBC Securities Services (Luxembourg)

SA, who signed the service stipulation—was the "beneficiary" of the transfers in question and a "custody client of Citco Bank and Trust." Thus, each of HBUS and Citco Global Custody (NA) is pointing its finger at the other, claiming the other is the one that should be named as the proper party.

## **ARGUMENT**

This Court should deny the Motion for three principal reasons. ***First***, HSBC's Motion relates to proper party naming, not service. ***Second***, as the docket clearly demonstrates, HSBC's situation is materially indistinguishable from that of HSBC Suisse—the representative defendant against whom the Court's predecessor, Judge Bernstein, ordered alternative service—since HSBC has been apprised of the claims against it for years and the Court's intervention would avoid needless cost and delay to these over-decade-long proceedings. ***Third***, the Court may authorize new service where, as with HSBC Suisse, the Liquidators undertook diligent, reasonable efforts to serve the initial complaint upon HSBC.

## I.    HSBC'S MOTION IS UNRELATED TO SERVICE

HSBC devotes its Motion (Dkt. 3783) to claims that "HSBC" does not identify a legal entity. That argument is unrelated to the question of whether HSBC was properly served with process in this action and is not appropriate at this juncture where the Court has limited briefing and discovery to service issues.

As explained above, HSBC's counsel, Cleary Gottlieb, takes the position that the subject transfers were deposited into an account at HBUS belonging to Citco Banking Corporation N.V. By contrast, counsel for the Citco Administrator informed the Liquidators just within the last few weeks that their records show <u>HBUS</u>—a defendant in the 10-ap-03634 action and an affiliate of HSBC Securities Services (Luxembourg) SA, which signed the service stipulation—was the "beneficiary" of the transfers in question and a "custody client of Citco Bank and Trust." Obtaining

even that limited information was possible only because the Court permitted narrow discovery on service and the Liquidators undertook diligent efforts over the course of months to relay information between HSBC's counsel and the Citco Administrator's counsel.[6]  However, that discovery has not yet resolved the question and a genuine dispute exists between the parties with respect to the naming of the proper defendant.[7]  Thus, to the extent that "HSBC" is not properly named in this action, the Liquidators should be permitted to continue their diligent investigation into the proper party, which they have a well-founded reason to believe may be HBUS or another affiliate of the HSBC Group, whose affiliates have been continuously represented in this litigation by Cleary Gottlieb.[8]

HSBC's attempts to fault the Liquidators for their investigation should be rejected.  In its July 25, 2021 letter further opposing the Liquidators' reasonable request for an adjournment to this Motion, HSBC wrongly asserts that the Liquidators had "plenty of time to figure [] out" the proper

---

[6] Unlike those defendants that approached the Liquidators during the multi-year discovery stay with documentary evidence in support of contentions that the Liquidators' current naming of an entity should be changed, HSBC never approached the Liquidators with any evidence on their naming contention.  Accordingly, as soon as discovery was authorized (even if only on the service issue), the Liquidators worked as quickly and constructively as possible to test HSBC's naming contention against HSBC's own records—obtained via a subpoena to HBUS—including comparing those records against the records of third party Citco.

[7] The Liquidators have proceeded expeditiously in the brief window for permitted discovery, which—by order of the Court—was to focus on service, rather than proper party naming.

[8] Contrary to HSBC's claim, this is not a case where a defendant was named as "a shot in the dark in case a substitution of entity became necessary."  Mot. 6 (quoting *Broadway v. adidas Am., Inc.*, 2008 WL 2705566, at *5 (July 10, 2008)).  The Liquidators named HSBC as a defendant based upon the Fund records they inherited.  Krys Decl. ¶¶ 3–6.  It is also unlike *Schiavone v. Fortune*, where "the ascertainment of the defendant's identity was [not] difficult for the plaintiffs" because "[a]n examination of the magazine's masthead clearly would have revealed the corporate entity responsible for the publication."  477 U.S. 21, 28 (1986).  Instead, identifying the proper defendant here involves disentangling complicated financial records and conflicting accounts from HSBC's counsel and the Citco Administrator.

defendant in this action.  Dkt. 3797 at 2.  But the limited discovery authorized here was on ser-

vice—<u>not</u> proper parties, which HSBC and its co-Defendants expressly preserved for future mo-

tion practice.  Hence, although the Liquidators have commenced aggressive inquiry into this issue,

they have not been able to explore it fully at this stage of the proceedings.  *See* Feb. 26, 2021 So

Ordered Stipulation, No. 10-ap-03635 (Dkt. 519 ¶ II.1.e) (separating service and naming); No. 10-

ap-3496 (Dkt. 3616) (ordering briefing on service only).  The Liquidators' investigation depends

upon information in Defendants' and third parties' possession, which will require further discov-

ery.  The Liquidators should thus be granted leave to effect alternative service on the proper party's

U.S. counsel, if the party is foreign, or traditional service on that party, if domestic.

## II.    ALTERNATIVE SERVICE ON U.S. COUNSEL HAS ALREADY BEEN APPROVED IN THESE U.S. REDEEMER ACTIONS AND IS APPROPRIATE HERE FOR THE SAME REASONS

An alternative method of service under Rule 4(f)(3) is proper so long as it (1) is not pro-

hibited by international treaty, and (2) comports with constitutional notions of due process.  *Fair-

field III*, 2020 WL 7345988, at *11.  The proposed alternative service on the proper HSBC defend-

ant's U.S. counsel easily meets that test.

### A.    The Liquidators Easily Meet The Minimum Legal Threshold For Alternative Service Set By Judge Bernstein Where Defendant Has For Years Been In Contact With U.S. Counsel And Actively Engaged In This Action

This Court's authority to order domestic mail service on a defendant's U.S. counsel is not

in question.  In authorizing alternative service upon HSBC Suisse's U.S. counsel, Judge Bernstein

joined the vast majority of courts in the Southern District of New York finding that such service

is proper where there is "adequate communication between the counsel and the party to be served."

*Fairfield III*, 2020 WL 7345988, at *12.[9] (collecting cases). In doing so, Judge Bernstein made two principal findings. ***First***, he determined that Switzerland's objection to international mail service under Art. 10(a) of the Hague Service Convention did not preclude mail service on a domestic conduit under Rule 4(f)(3), explaining that "the Hague Service Convention is not implicated because no documents are transmitted abroad." *Id.* (citing *Baidu.com*, 293 F.R.D. at 515; *GLG Life Tech*, 287 F.R.D. at 267). ***Second***, he determined that "HSBC Suisse has undoubtedly been in regular contact with Cleary Gottlieb and has actively participated in the HSBC Action since at least September 2010." *Id.* By authorizing alternative service on U.S. counsel for the representative Swiss Defendant, HSBC Suisse, Judge Bernstein later clarified that his authority to do so was "binding" on all other Swiss Defendants. Dkt. 3076, at 2. The logic of Judge Bernstein's decision applies with equal force to non-Swiss Defendants. Unsurprisingly, 113 of the 122 remaining defendants have since stipulated to *Fairfield III*'s application to them. *See, e.g.*, Dkt. 3742.

Indeed, like HSBC Suisse, the Liquidators served HSBC in a country that is also a signatory of the Hague Convention: the United Kingdom. However, unlike Switzerland, the United

---

[9] *Compare Zanghi v. Ritella*, 2020 WL 589409, at *7 (S.D.N.Y. Feb. 5, 2020); *Wash. State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *4 (S.D.N.Y. Sept. 21, 2018); *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 2015 WL 998455, at *4–5 (S.D.N.Y. Mar. 5, 2015); *Atlantica Holdings, Inc. v. BTA Bank JSC*, 2014 WL 12778844, at *3 (S.D.N.Y. Mar. 31, 2014); *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012); *Arista Records LLC v. Media Servs. LLC*, 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25, 2008); *RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at *6 (S.D.N.Y. Aug. 10, 2007); *Enrenfeld v. Salim a Bin Mahfouz*, 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (finding that service on U.S.-based counsel permissible under Rule 4(f)(3)), *with Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *7 (S.D.N.Y. July 17, 2020) (finding the opposite, though acknowledging that its holding "departs from … courts in this District that have held that a defendant located outside of the United States can be served through his or her United States counsel under Rule 4(f)(3) …" (emphasis added)).

Kingdom makes no objection to mail service under Art. 10(a). Whatever the case, the Hague Convention is not implicated in alternative service upon U.S. counsel.

The sole question, as Judge Bernstein recognized in his February 22, 2021 clarifying order, is whether based "on the facts of that case," Dkt. 3076 at 2, there is "adequate communication between the counsel and the party to be served" sufficient to conclude that counsel for HSBC was—like counsel for HSBC Suisse before it—reasonably likely to apprise their client of the claims against it, *Fairfield III*, 2020 WL 7345988, at *12 (citing *GLG Life Tech*, 287 F.R.D. at 267) (emphasis added).

HSBC has not disputed that the same standard should apply to it. Nor can it dispute that the Liquidators have satisfied that standard. Just as with HSBC Suisse, HSBC has actively participated in the case through its U.S. counsel (which also represents numerous other HSBC Group affiliates in this litigation) since it began, including by U.S. counsel's filing of the present Motion. As the docket shows, HSBC learned of the action against it by August 2012, when the Third Summons and Third Amended Complaint in these actions were mailed to the headquarters of the HSBC Group by international registered mail. *See* Molton Decl. ¶ 10; *id.* Ex. 9 (affidavit of service in No. 10-ap-03635). HSBC's affiliates in other actions had by December 2010 already retained U.S. counsel, Cleary Gottlieb, to defend against the Liquidators' claims. Dkt. 58 (appearing on behalf of other HSBC entities). Cleary Gottlieb specifically appeared in the 10-ap-03635 action to move to dismiss on HSBC's behalf on January 27, 2017. Motion to Dismiss, No. 10-ap-03635 (Bankr. S.D.N.Y.) (Dkt. 228). It has continuously represented HSBC in this action since that time, actively participating in court conferences, motion practice, and negotiations with the Liquidators' counsel.

As such, there is no question that effecting alternative service upon such counsel would apprise HSBC or the proper entity to be named in its place of the claims against it consistent with constitutional due process.

### B.    The Court Should Exercise Its Discretion To Order Alternative Service Upon Defendant's U.S. Counsel As Judge Bernstein Did With HSBC Suisse

Though courts have discretion to authorize mail service absent any showing, they often require "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Fairfield III*, 2020 WL 7345988, at *11.

Judge Bernstein found both elements satisfied as to HSBC Suisse. ***First***, he found the Liquidators had made reasonable attempts to effectuate service, because "[u]ntil the Court issued *Fairfield I* in August 2018, the Liquidators had a reasonable basis to believe that they had properly served HSBC Suisse by mail in accordance with the subscription agreements. After the Court issued *Fairfield I* and *Fairfield II* the parties entered into detailed stipulations in 2019 resolving the prior motion to dismiss and identifying the issues to be raised in the instant [m]otion to dismiss including 'whether service was properly effected.'" *Id.* at *13.

***Second***, he noted that "Courts often consider the cost and delay associated with service under the Hague Service Convention or other treaties when approving alternative service under Rule 4(f)(3)," and here the Liquidators had shown that service upon HSBC Suisse and other Swiss Defendants would cost $273,441 and take four months or more. *Id.* "Forcing the Liquidators to expend significant sums to effect service under the Hague Service Convention when cheaper and equally effective alternatives exist will adversely affect the amount available for ratable distribution to the Funds' creditors and shareholders." *Id.*

HSBC has not suggested any good reason why Judge Bernstein's holding that the Liquidators acted reasonably should not also bind it here. As with HSBC Suisse, the Liquidators had a reasonable basis for concluding the existence of a subscription agreement with Citco, as record holder, which they reasonably understood to confer upon them the ability to serve HSBC, as beneficial owner on whose behalf Citco would have signed the agreement, via international registered mail. The Funds consistently required their subscribers to sign a Long-Form Subscription Agreement for any new investment after 2003. Krys Decl. ¶ 7. Although the Liquidators have not received a post-2003 agreement for HSBC, they reasonably concluded that Citco must have executed one on HSBC's behalf and that HSBC could be served by international registered mail accordingly. *Id.* ¶ 10.[10]

It was not until years after that original service, when *Fairfield I* was decided and the implementing orders were entered, that the Court conclusively determined that the forum selection clause was ineffective to confer jurisdiction over the defendants. Each of the implementing orders after *Fairfield I* and *Fairfield II* preserved sufficiency of service for further briefing. The implementing orders after *Fairfield III* also preserved sufficiency of service for further briefing, as that issue had not yet been conclusively resolved as to HSBC and certain other defendants. The parties are in no different a position now than they were when they briefed the renewed motion to dismiss against HSBC Suisse. Just as then, the Court should conclude that the Liquidators have acted

---

[10] Whatever subscription agreement covered the early years of the parties' business relationship has no bearing on what subscription agreement governed after 2003, when the Funds consistently required entry into a Long-Form Subscription Agreement, Krys Decl. ¶ 7—considering all the redemptions at issue in this action post-date 2003, *see* Fourth Am. Compl. ¶ 131 & Ex. A, No. 10-ap-03635 (Bankr. S.D.N.Y.) (Dkt. 466) (referencing post-2003 redemptions).

reasonably under the circumstances[11] and authorize the alternative service necessitated by *Fair-field I*, if the proper defendant is foreign, or traditional service, if the proper defendant is domestic.

And as with HSBC Suisse, the Court's authorization of alternative service upon the proper HSBC defendant would avoid unnecessary expense and delay in these over decade-old proceedings that would only serve to further deplete the now insolvent Funds' considerably limited resources. If the proper defendant resides in a country that disallows service by mail or requires translation, then attempts to serve that defendant under the Hague Convention or through letters rogatory would require significant time and expense, as well as attorney and staff costs. That is in addition to the costs and delay associated with effecting service on all other defendants who have chosen to challenge service. *Id.* ¶ 18 & Ex. 10 (estimating a minimum of $70,437.88 for the translation and service of papers on the moving Defendants and estimating anywhere between 2 and 12 months depending on the country of service).

As we explained in our prior briefing (Dkt. 3033 at 42–43), the Liquidators are responsible to the Funds' stakeholders to grow—not deplete—the estate through judicious exercise of their statutory powers. Absent a ruling by this Court, the Liquidators should not expend estate resources or further delay their efforts to recover for estate beneficiaries. Requiring the Liquidators to re-effect traditional service under the Hague Convention or letters rogatory now would accomplish nothing but increased cost and delay. As with HSBC Suisse, HSBC here "had actual notice of the

---

[11] To the extent HSBC or other defendants have suggested the "good cause" standard applies, that is incorrect. "Good cause" is relevant only to whether a court will excuse a plaintiff's failure to attempt domestic service within the 90-day period contemplated by Federal Rule of Civil Procedure 4(m). It has nothing to do with a request under Rule 4(f)(3) for alternative service upon U.S. counsel for a foreign defendant where, as here, the Liquidators undisputedly began their service attempts within the prescribed time frame. *See infra* Section II; Molton Decl. ¶ 10 (indicating service of the July 20, 2012 Third Amended Complaint upon HSBC just a few days later on July 31, 2012); *id.* Ex. 9 (affidavit of service in No. 10-ap-03635).

[action], has actively litigated for a decade through capable counsel, 'and, thus, as a practical matter, the purpose of the service requirement has already been accomplished.'" *Fairfield III*, 2020 WL 7345988, at *13 (quoting *Arista Records LLC*, 2008 WL 563470, at *2).

### III. THE LIQUIDATORS EXERCISED THE DUE DILIGENCE NECESSARY FOR THE OPPORTUNITY TO EFFECT NEW ALTERNATIVE SERVICE UPON DEFENDANT

As previously held by Judge Bernstein, service in a foreign country under Rule 4(f) is evaluated according to a flexible due diligence standard "so long as the plaintiff attempts to begin service on a foreign defendant within [the 120-day] timeframe" contemplated by Rule 4(m).[12] *Fairfield III*, 2020 WL 7345988, at *14 (citing *USHA (India) Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 1219, 133–34 (2d Cir. 2005); *Trilliant Funding, Inc. v. Marengere (In re Bozel S.A.)*, 2017 WL 3175606, at *2 (S.D.N.Y. July 25, 2017)); *see also Burda Media, Inc. v. Blumenberg*, 2004 WL 1110419, at *6 (S.D.N.Y. May 18, 2004), *aff'd sub nom. Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005) (plaintiff was diligent, despite 10-month delay in completing service under the Hague Convention, where it was "uncertain" at outset of the case "whether service would take place domestically or internationally"); *Aqua Shield, Inc. v. Inter Pool Cover Team*, 2007 WL 4326793, at *2 (E.D.N.Y. Dec. 7, 2007) (plaintiff was diligent where it was unclear if plaintiff was "required to separately file service of the complaint upon [defendant] in accordance with the Hague Convention"); *cf. Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (unlike here, plaintiff was not diligent where it "never attempted to serve process in a foreign country" and "has not exactly bent over backward to effect service"). Courts have found the requisite due diligence even despite "periods of inactivity" by the plaintiff. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 4681616, at *11 (S.D.N.Y. Sept. 11, 2018 (R. & R.) (plaintiff

---

[12] The Rule 4(m) time limit has since been reduced to 90 days.

was diligent where period of inactivity was largely attributable to review of papers by German authorities), *adopted by* 2018 WL 4666069 (S.D.N.Y. Sept. 28, 2018).

In assessing due diligence, courts look to the "[1] the reasonableness of the plaintiff's efforts and [2] the prejudice to the defendant from any delay." *In re Bozel S.A.*, 2017 WL 3175606, at *2–3; *see also Lyell Theater Corp. v. Loews Corp.*, 682 F.2d 37, 42–43 (2d Cir. 1982) (finding lack of due diligence where plaintiff's unreasonable delay resulted in prejudice to defendant). The Liquidators easily satisfy both prongs here. ***First***, as discussed in Part I.B, *supra*, the Liquidators' attempts to serve the initial complaint and summons in a timely manner consistent with the subscription agreements was reasonable, as Judge Bernstein already held. *Fairfield III*, 2020 WL 7345988, at *13. Until *Fairfield I*, the Liquidators reasonably believed they had effectively served HSBC Suisse (and all defendants) under existing law specifying that defendants may consent to personal jurisdiction by private contract. *See, e.g.*, *Ninety-Five Madison Co., L.P. v. Vitra Int'l AG*, 2020 WL 1503640, at *4 (S.D.N.Y. Mar. 30, 2020). And, as with HSBC Suisse, the Liquidators reasonably waited for this Court's ruling on alternative service before expending estate resources on costly new service for HSBC that might not even be necessary.

***Second***, nothing in HSBC's Motion—much less the discovery—suggests any prejudice from a purported failure to receive service under the Hague Convention. Nor could it. By the time *Fairfield I* was decided, the litigation had been pending for nearly nine years. HSBC's counsel has been monitoring the case throughout and periodically making timely filings on HSBC's behalf. The parties' position has not materially changed since that time—the case remains at the pleading stage and the only "burden" undertaken by HSBC is the same one faced by HSBC Suisse—namely, the obligation to file a motion to press its arguments about ineffective service of process. That is not sufficient to defeat the Liquidators' diligence. As Judge Bernstein explained, "[t]he decision

18

to litigate the propriety of past service or seek a different and less costly method of new service, rather than proceed with the costly and time-consuming process of serving the Defendants under the Hague Service Convention, does not signify a lack of due diligence." *Fairfield III*, 2020 WL 7345988, at *15.

Accordingly, the Liquidators have exercised the requisite diligence in order to be permitted to re-effect alternative service on the proper foreign defendant or, if the Court requires it, new service pursuant to the Hague Convention or letters rogatory. Furthermore, they should be permitted to re-effect traditional service on the proper defendant, if that defendant is revealed to be domestic.

## **CONCLUSION**

For the foregoing reasons, the Liquidators respectfully request that the Court deny the Motion, allow the Liquidators additional time to continue their productive efforts to resolve the proper party naming issue, and authorize the Liquidators to effect alternative service upon U.S. counsel for the proper HSBC defendant under Rule 4(f)(3) or, if required, to be afforded the opportunity to re-effect new service under the Hague Convention or letters rogatory under Rule 4(f)(1) or Rule 4(f)(2), or, if the proper defendant is domestic, to re-effect new service via Rule 4(e).

Dated:    New York, NY
          July 26, 2021

Respectfully submitted,

SELENDY & GAY PLLC

By: _____

SELENDY & GAY PLLC

David Elsberg
Lena Konanova
Jordan Garman
Ester Murdukhayeva
Ronald Krock
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
delsberg@selendygay.com
lkonanova@selendygay.com
jgarman@selendygay.com
emurdukhayeva@selendygay.com
rkrock@selendygay.com

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for Plaintiffs Foreign Representatives*