UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>       Debtor in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>       Plaintiffs,<br><br>       v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>       Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>       Plaintiffs,<br><br>       v.<br><br>HSBC SECURITIES SERVICES (LUXEMBOURG) S.A., et al.,<br><br>       Defendants. | Adv. Pro. No. 10-03630 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>       Plaintiffs,<br><br>       v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>       Defendants. | Adv. Pro. No. 10-03635 (CGM) |

| | |
|---|---|
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., <br><br> Plaintiffs, <br><br> v. <br><br> ABN AMRO SCHWEIZ AG, et al., <br><br> Defendants. | Adv. Pro. No. 10-03636 (CGM) |

**DECLARATION OF KENNETH M. KRYS
IN SUPPORT OF MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
FOR INSUFFICIENT SERVICE OF PROCESS**

I, KENNETH M. KRYS, declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief:

1. I am the founder and Chief Executive Officer of KRyS Global, the brand name for various entities including Krys & Associates (BVI) Ltd., a firm providing corporate recovery, insolvency, and related services in the BVI.

2. I, along with Greig Mitchell (together, the "Joint Liquidators"), currently serve as a joint liquidator of Fairfield Sentry Limited (In Liquidation), Fairfield Sigma Limited (In Liquidation), and Fairfield Lambda Limited (In Liquidation) (collectively, the "Funds"), having been appointed to that office in liquidation proceedings pending before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands (the "BVI Court"). In such capacity and as the recognized foreign representative of the Funds under Chapter 15 of the U.S. Bankruptcy Code, I respectfully submit this Declaration in support of the Joint Liquidators' Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Insufficient Service of Process. The facts set forth herein are based on my personal knowledge or are derived from the books and records of the Funds or from other sources that I consider to be reliable.

**Efforts To Identify Redeeming Shareholder Names And Addresses**

3.  From the time I was appointed as a liquidator of the Funds on July 21, 2009, I have faced significant obstacles to accessing the Funds' books and records. The Funds themselves had no offices, records, or assets in the BVI, and no staff. All services were contracted to third parties, most of whom were located outside the BVI.

4.  Accordingly, I have had to seek out and obtain documents and information—including shareholder information—from those third-party service providers. These include, without limitation, various entities affiliated with the Citco Group (collectively, "Citco"); the Funds' registered agent, Codan Trustees (B.V.I.) Limited; the Funds' former investment manager, Fairfield Greenwich (Bermuda) Limited and its parent entity, Fairfield Greenwich Group; the Funds' former attorneys; the Funds' directors, Jan Naess and Peter Schmid; the Funds' auditors at PwC (Canada) and PwC (Netherlands); and Boies Schiller Flexner LLP, who represented a number of shareholders in *Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-0118 (S.D.N.Y.). Notwithstanding those efforts, the documents and information collected have been very limited.

5.  In January 2010, after retaining Brown Rudnick LLP and beginning the process of identifying possible claims and causes of actions available to the Funds against their former record and beneficial shareholders, I signed a one-year tolling agreement with Citco which, in relevant part, allowed me to collect information from Citco to assist in my investigations of the shareholders. The information I received from Citco thereafter included aspects of: (1) share registers for each Fund; (2) lists of subscriptions, redemptions, and transfers; and (3) contact information for shareholders.

6.  Following extended negotiations, I received in May and August 2010 some shareholder contact information from Citco regarding the list of redemptions over the life of the Funds.

3

The information provided purported to include the name of the paying Fund, the name and address of the redeeming shareholder, and the amount and date of the redemption payment.

7. The Funds consistently required from 2003 onward that subscribers making new investments sign agreements submitting to the jurisdiction of the New York courts and consenting to service by certified or registered mail for "any suit, action or proceeding with respect to [the subscription agreement] and the Fund" ("Long-Form Subscription Agreement"). *See also* Oct. 21, 2016 Hare Decl. ¶ 10(b) (Dkt. 925).

8. Yet, upon reviewing the subscription agreements and shareholder contact information received from Citco, it became apparent that the information being provided by Citco was often incomplete for some subscribers.

9. At the time the Joint Liquidators filed their original complaints, starting in August 2010, the Joint Liquidators determined they had Long-Form Subscription Agreements for the vast majority of the Funds' subscribers. However, the Joint Liquidators did not receive copies of Long-Form Subscription Agreements for all subscribers. In many of those cases, the Joint Liquidators had a shorter form agreement, typically entered into by existing subscribers at the time of each subsequent subscription ("Short-Form Subscription Agreement"), in which the subscriber expressly reaffirmed all of the representations and covenants made in its Long-Form Subscription Agreement.

10. Thus, while the Joint Liquidators received some combination of Long- and Short-Form Subscription Agreements for most subscribers, they still received no agreements for a handful of the subscribers. In this minority of cases, the Joint Liquidators were nevertheless able to satisfy themselves—based on our diligent review of the documents in the Funds' collection and the Funds' practice of using Long-Form Subscription Agreements—that any such subscriber who

purchased shares after 2003 would have executed at least a Long-Form Subscription Agreement and could be served by international registered mail accordingly.

11. Since that time, I have also utilized a number of methods to confirm and/or update such shareholder contact information, including by:

    a. Requesting that shareholders submit "Forms R184," which are standard claim forms in the BVI enabling shareholders to provide details about any amounts owed to them by the Funds, vote for the "Liquidation Committee"—an *ad hoc* committee principally made up of the Funds' subscribers—and provide the Joint Liquidators with updated contact information;

    b. Retaining the services of Intelysis—a business intelligence consulting firm providing global research and analysis—to investigate certain shareholders, help identify potential shareholder assets, and update shareholder contact information; and

    c. Conducting internet searches on shareholders to identify any updated shareholder contact information.

12. At the request of my lawyers, I directed my staff to search the Funds' records to locate subscription documents relevant to the moving Defendants. In doing so, we located subscription documents for beneficial shareholders corresponding to the following reference numbers:

    a. <u>102900</u>, which is the reference number associated with Defendant LGT Bank in Liechtenstein AG (now known as LGT Bank AG);

    b. <u>145325</u>, which is the reference number associated with Defendant Liechtensteinische Landesbank Aktiengesellschaft (sued as "Liechtensteinische LB Reinvest AMS" in the complaint);

    c. <u>190096</u>, which is the reference number associated with Defendant Unifortune Conservative Side Pocket (sued as "Allianzbank SpA/Unifortune Conservative Side Pocket" in the complaint); and

    d. <u>190500</u>, which is the reference number associated with Defendant Centrum Bank Aktiengesellschaft.

13. We also identified 24 separate redemptions between December 19, 2005 and November 19, 2008 by Citco Global Custody (NA) NV on behalf of an entity, "HSBC," who is a Defendant.

     I declare under the penalty of perjury under the laws of the Unites States of America that the foregoing is true and correct.

Dated:   Tortola, BVI
          July 26, 2021

                                                          KENNETH M. KRYS