**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 Case |
| Fairfield Sentry Limited, et al., | Case No. 10-13164 (CGM) |
| Debtors in Foreign Proceedings | Jointly Administered |

| | |
|---|---|
| Fairfield Sentry Limited, et al., | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 10-3496 (CGM) |
| Theodoor GGC Amsterdam, et al., | Administratively Consolidated |
| Defendants | |

This brief is submitted in the following Adversary
Proceedings:

10-3635, 10-3636

**REPLY MEMORANDUM OF LAW BY**
**DEFENDANT CENTRUM BANK AKTIENGESELLSCHAFT**
**IN SUPPORT OF ITS MOTION PURSUANT TO FED. R. CIV. P. 12(b)(5)**
**TO DISMISS FOR FAILURE TO SERVE PROCESS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT............................................................................................................4

I.      THE LIQUIDATORS CANNOT AND DO NOT CONTEND THAT THEY HAVE
        MADE PROPER SERVICE.................................................................................. 4

II.     THE LIQUIDATORS' ATTEMPT TO REQUEST ALTERNATIVE SERVICE IN
        THEIR OPPOSITION RATHER THAN MOVING THE COURT FOR
        ALTERNATIVE SERVICE IS PROCEDURALLY IMPROPER AND
        FUNDAMENTALLY UNFAIR ............................................................................ 5

III.    THE LIQUIDATORS HAVE NOT CARRIED THEIR BURDEN OF SHOWING
        THAT THEY ARE ENTITLED TO ALTERNATIVE SERVICE ............................... 7

        A.    *Fairfield III* does not decide this motion. ............................................ 7

        B.    The Liquidators have failed to meet their burden of proving that the Court
              should use its discretion to authorize alternative service on Movant. ............ 8

              1.    The Liquidators have not reasonably attempted to effectuate service
                    on Movant............................................................................. 9

              2.    The Liquidators have not shown that the Court's intervention is
                    necessary here....................................................................... 12

              3.    Principles of comity further militate against authorizing alternative
                    service.............................................................................. 16

CONCLUSION .....................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Convergen Energy LLC v. Brooks*,
  No. 20-cv-3746, 2020 WL 4038353 (S.D.N.Y. July 17, 2020) ............................................... 19

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*,
  No. 03Civ. 8554, 2005 WL 1123755 (S.D.N.Y. May 11, 2005) ............................................ 16

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
  Adv. Pro No. 10-3496 (Bankr. S.D.N.Y. August, 2018) (*Fairfield I*) ............................. *passim*

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
  Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Dec. 14, 2020) (*Fairfield III*) ....................... *passim*

*Freedom Watch, Inc. v. Org. of the Petrol. Exp. Countries (OPEC)*,
  766 F.3d 74 (D.C. Cir. 2014) ............................................................................................ 5, 17

*Peifa Xu v. Gridsum Holdings, Inc.*,
  No. 18 Civ. 3655, 2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020) ............................................ 8

*Sama v. Mullaney (In re Wonderwork, Inc.)*,
  611 B.R. 169 (Bankr. S.D.N.Y. 2020) ................................................................................... 5

*In re Ski Train Fire in Kaprun Austria on November 11, 2000*,
  No. 01 Civ. 7342, 2003 WL 1807148 (S.D.N.Y. Apr. 4, 2003) ............................................ 16

**Rules**

Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment ................................................. 13

Fed. R. Civ. P. 4(e) ........................................................................................................... 4 n.6

Fed. R. Civ. P. 4(f)(2) ................................................................................................... 4 & n.6

Fed. R. Civ. P. 4(f)(2)(c)(ii) ................................................................................................... 4

Fed. R. Civ. P. 4(f)(3) ............................................................................................ 1, 8, 9, 16

Fed. R. Civ. P. 4(h)(2) ..................................................................................................... 4 n.6

Fed. R. Civ. P. 7(b) ............................................................................................................... 5

Fed. R. Civ. P. 8(a)(2) ......................................................................................................... 15

Fed. R. Civ. P. 12(b)(5) ...................................................................................................... 1, 4

## PRELIMINARY STATEMENT

The Liquidators' Opposition continues their refusal to follow the basic rules required to invoke the Court's authority.[1]  The Liquidators concede that they have not served Movant in accordance with the Federal Rules of Civil Procedure, and admit that they merely delivered papers by international registered mail, which they do not dispute is invalid service under both Liechtenstein law and the Federal Rules.  That should be the end of the matter.  Because process has not been properly served, this motion should be granted and the case dismissed under Federal Rule 12(b)(5) for failure to serve process.

The Liquidators devote most of their Opposition to arguing that they should be granted alternative service under Federal Rule 4(f)(3).  However, they have not moved for alternative service, and the Court should therefore not consider granting such relief.  Instead of moving as required by the rules, the Liquidators suggest in a footnote that the Court treat the Opposition as a motion.  *See* Opp. at 2 n.2.  The Court has asked that this case be conducted under the Federal Rules and has rejected requests for relief by letter.[2]  Requests for relief (particularly a significant one such as this) should not be made by footnote.

---

[1]     Pursuant to the Court's order that "each defendant must file a motion pertaining solely to itself," Centrum and VP Bank, another defendant in these adversary proceedings, have each filed separate motions.  However, after the commencement of this litigation, VP Bank AG acquired Centrum, and Centrum has ceased to exist and is now a part of VP Bank AG.

   Unless otherwise noted, all emphases are added and all internal citations and quotations are omitted.  Capitalized terms not defined herein have the meanings set forth in Movant's Memorandum of Law in Support of its Motion Pursuant to Fed. R. Civ. P. 12(b)(5) to Dismiss for Service of Process (Dkt. No. 3769) ("Opening Brief" or "Opening Br.").  Citations to "Opposition" or "Opp." refer to the Liquidators' Memorandum of Law in Opposition to Centrum's Motion to Dismiss for Insufficient Service of Process (Dkt. No. 3799).  Except where otherwise noted, all docket citations are to the consolidated adversary proceeding docket, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496.

   Movant submits this motion and all associated papers without prejudice or waiver of any rights or defense, including, without limitation, defense based on lack of personal jurisdiction or failure of service.

[2]     *See, e.g.*, Am. Order, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. May 24, 2021) (Dkt. No. 3781).

-1-

If the Liquidators do make such a motion, Movant should be permitted to respond in due course, possibly with discovery as to "facts" asserted by the Liquidators and with due consideration by the Court to the reasonableness of the Liquidators' "efforts" to effect service.

But if the Court is inclined to entertain the Liquidators' request for alternative service now, that request should be denied. There is no reason for the Court to intervene. Service could have been made with reasonable effort in the ordinary course. The only sworn, competent evidence (from the Chief Justice of the Constitutional Court of Liechtenstein) is that service can be made in Liechtenstein by letters rogatory easily and efficiently.[3] Indeed, the Trustee in the Madoff litigation already did precisely that, serving by letters rogatory in approximately two months.[4] The Liquidators' unsworn "estimate" from a California process server who has shown no experience with service in Liechtenstein should be disregarded. Legal service would thus have taken far less time and been far less burdensome and costly than the Liquidators' efforts to avoid proper service, which have already resulted in numerous motions (which were ultimately not decided) and the present motion.[5]

Furthermore, the Liquidators did not have a reasonable basis to believe that service by mail would be valid. Unlike the situation in *Fairfield III*, here the Liquidators did not possess a subscription agreement with Movant in 2010, and thus could not have relied on that agreement to

---

[3]    *See* Hoch Decl. ¶¶ 18, 21-23; *see also* Opening Br. at 6-7.

[4]    *See* Hoch Decl., Ex. C Aff. of Service of Summons and Compl. Upon Def., *Irving H. Picard for the Liquidation of Bernard L. Madoff Secs. Inc. v. LGT Bank in Liechtenstein Ltd.*, Adv. Pro. No. 11-1929 (Bankr. S.D.N.Y. Oct. 26, 2012).

[5]    Movant first objected to service in 2012 (*see* Obj. of Liechtenstein Defs. to Foreign Representative's Mot. Seeking Limited Relief from Order Staying Redeemer Actions and Entry of Order Directing Defs. to Make Expedited Initial Disclosures on Beneficial Holders, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. June 8, 2012) (Dkt. No. 688)), and moved to challenge service in 2017. *See* Liechtenstein Defs.' Individual Supplemental Mem. of Law in Opp. to Pls.' Mot. for Leave to Amend and in Supp. of Defs.' Mot. to Dismiss, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* at 4, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Jan. 27, 2017) (Dkt. No. 1156).

justify mail service.  And even if that hurdle is overcome, the Liquidators failed to serve using

letters rogatory (or to move for alternative service) even after *Fairfield I* in 2018 where Judge

Bernstein ruled that these adversary proceedings were not "with respect to" the subscription

agreements.  *See Fairfield I* at 23-27.  That ruling established for any reasonable litigant that

service could not be made pursuant to the subscription agreements.  Judge Bernstein stated the

obvious in *Fairfield III* in 2020, finding that, since *Fairfield I*, the Liquidators would not have

had a "reasonable basis to believe" that their service in accordance with the subscription

agreements was proper after the Court's ruling in *Fairfield I*.  *See Fairfield III* at 31.  And even

after *Fairfield III*, the Liquidators did not serve via letters rogatory or move the Court for

alternative service.  The Liquidators are not entitled to alternative service under these

circumstances because they have not made reasonable efforts to serve Movant.

        Moreover, principles of comity and respect for the laws of foreign sovereigns weigh

against granting alternative service on U.S. counsel here.  Liechtenstein considers service of

process in its territory other than as provided by Liechtenstein law to be a usurpation of official

powers.  Service of process on U.S. counsel, with the understanding and intention that U.S.

counsel would transmit the service to Liechtenstein, is illegal under Liechtenstein law and not

valid.  The Court should not order this when the Liquidators could have easily effected service

years ago when the case began, after *Fairfield I*, or even after *Fairfield III*.

        Service of process is not a mere formality.  It is how a court establishes its right to

jurisdiction over a defendant.  Service is particularly important in a case like this involving a

non-U.S. defendant with no U.S. employees and no U.S. office and whose home jurisdiction

(Liechtenstein) requires strict compliance with service rules but also provides a means for

foreign parties to effect service on Liechtenstein residents with respect to litigation in other

countries.  It is only fair and respectful, to other countries and to foreign litigants, for the

Liquidators (like any plaintiff) to cut square corners in order to hail a foreign defendant regulated

by a different legal system into a U.S. court halfway around the world.

## ARGUMENT

## I.  THE LIQUIDATORS CANNOT AND DO NOT CONTEND THAT THEY HAVE MADE PROPER SERVICE

The Liquidators do not contest that it is their burden to prove service of process.  *See*

Opening Br. at 4 (citing *Khan v. Khan*, 360 F. Appx. 202, 203 (2d Cir. 2010)).

The Liquidators rely on only a single method of purported service – by international

registered mail on Movant in Liechtenstein (Opp. at 4) – and they do not claim that mailing

complies with the Federal Rules or Liechtenstein law.  In their Opposition, the Liquidators offer

no legal justification of their mail "service" and no rebuttal to Movants' analysis of the service

requirements and the Liquidators' failure to comply with them.  *See* Opening Br. at 4-12.

Indeed, the Liquidators specifically deny that they attempted to comply with Federal Rule

4(f)(2)(c)(ii) – which permits "using any form of mail that the clerk addresses and sends to the

individual and that requires a signed receipt" "unless prohibited by the foreign country's law" –

as they must, given that their own agents rather than the clerk mailed the complaints and that

they do not allege that they required a signed receipt.  *See* Opp. at 9 n.6 ("[T]he Liquidators have

not attempted service under Rule 4(f)(2)").  Accordingly, Movant's motion to dismiss under

Federal Rule 12(b)(5) should be granted as it is undisputed that the Liquidators did not serve

Movant in accordance with the Federal Rules and Liechtenstein law.[6]

---

[6]    The Liquidators attach as an exhibit an affidavit of service reflecting the mailing of a summons and amended complaint to Movant's U.S. counsel in 2010.  *See* Molton Decl. ¶ 8 & Ex. 7.  They do not argue that this mailing was proper service, nor could they because (among other reasons) service of process cannot be made on counsel or by mail.  *See* Opening Br. at 15-16 (citing Fed. R. Civ. P. 4(e), 4(f)(2), invoked by Fed. R. Civ. P. 4(h)(2)).

## II.    THE LIQUIDATORS' ATTEMPT TO REQUEST ALTERNATIVE SERVICE IN THEIR OPPOSITION RATHER THAN MOVING THE COURT FOR ALTERNATIVE SERVICE IS PROCEDURALLY IMPROPER AND FUNDAMENTALLY UNFAIR

The Liquidators have not moved the Court for alternative service, and any such request is therefore not before the Court. The Court can and should stop its analysis there and grant the present motion to dismiss.

Instead of making a proper, timely motion, the Liquidators, buried in a footnote, ask the Court to treat their Opposition as a motion for alternative service. *See* Opp. at 2 n.2. That is procedurally improper and not a permitted way to make such a request. *See Freedom Watch, Inc. v. Org. of the Petrol. Exp. Countries (OPEC)*, 766 F.3d 74, 81 (D.C. Cir. 2014) (explaining that "under the Federal Rules . . . a party seeking a district court order would file a formal motion and include a proposed order apprising the court of its request and specifying the relief sought" and rejecting defendant's objection that request for alternative service was made in opposition brief only because that objection was not preserved); *see also Sama v. Mullaney (In re Wonderwork, Inc.)*, 611 B.R. 169, 215 (Bankr. S.D.N.Y. 2020) ("The Court need not, however, consider arguments relegated to a footnote."). The Liquidators should be required to make a motion, as is the ordinary practice when a litigant seeks relief from a court. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion").

The Liquidators could have made such a motion at any time since the beginning of the case in 2010. Movant objected to their "service" by mail in 2012,[7] thus putting them on notice of the service issue, and included information regarding the proper way of service by letters rogatory. Service at that point by letters rogatory would have eliminated the need for the present motion practice and the numerous prior motions regarding service that were filed but deferred by

---

[7]    *See supra* note 5; Opening Br. at 6-7.

the Court.  Furthermore, by 2018, the Liquidators knew that their purported service on Movant

based on the subscription agreements was improper following Judge Bernstein's *Fairfield I*

decision holding that these adversary proceedings were not "with respect to" the subscription

agreements.  *See Fairfield I* at 23-27; Opening Br. at 13-15.  Again, instead of serving by letters

rogatory, the Liquidators chose for tactical reasons of their own to rest on their prior service on

HSBC Suisse, resulting in Judge Bernstein's 2020 decision in *Fairfield III*, which determined

that the Liquidators did not have a "reasonable basis to believe" that service based on the

subscription agreements was proper following *Fairfield I.  See Fairfield III* at 31; Opening Br. at

14.  Even then, the Liquidators did not serve Movant via letters rogatory or move for alternative

service.  The Liquidators failed to move even when Movant's counsel raised this issue with the

Liquidators' counsel in connection with the discovery ordered by the Court in connection with

this motion.

While Judge Bernstein granted the Liquidators' request for alternative service without

requiring that they make a motion in *Fairfield III*, the Court should not do the same here.  The

Court has indicated that it requires motions rather than letters.[8]   A footnote in an opposition brief

is not a proper way to request relief.

The Liquidators argue that "Centrum cannot credibly argue that it would be surprised or

disadvantaged by the Court's consideration of the Liquidators' request now."  Opp. at 17.  This

puts the cart before the horse.  There is no justification for the Liquidators' failure and their

conduct should not be rewarded.  Arguments about whether a belated motion for alternative

service should be granted despite the Liquidators' delay can be considered if the Liquidators ever

make such a motion.  Furthermore, the Liquidators' "no harm, no foul" argument is not true.

---

[8]     *See* Tr. of Apr. 21, 2021 Hearing at 30:7-16, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro.
No. 10-3496 (Bankr. S.D.N.Y. Apr. 21, 2021).

The Liquidators propounded discovery based on their plan to request alternative service without giving either Movant or the Court a specific request for such relief against which the reasonableness of such discovery could be judged. Additionally, the Court set a briefing schedule that allowed movants 30 days to move and the Liquidators 66 days for discovery and opposition, but only seven days for Movant to reply. Thus, Movant has had no opportunity for discovery on issues raised by the Liquidators in their Opposition. The Liquidators could have moved for alternative service but chose not to do so. Movant should not have been left guessing the precise nature or scope of the Liquidators' request or the legal or factual support that the Liquidators would present in connection with such a request, and then only have seven days to respond to such a request.

Accordingly, the Court should not entertain the Liquidators' latest procedural gambit and instead require them to follow the rules of this Court. The Liquidators did not move for alternative service and such relief therefore should not be granted.

## III.    THE LIQUIDATORS HAVE NOT CARRIED THEIR BURDEN OF SHOWING THAT THEY ARE ENTITLED TO ALTERNATIVE SERVICE

If the Court considers the Liquidators' request in their Opposition for alternative service, that request should be rejected.

### A.    *Fairfield III* does not decide this motion.

The Liquidators rely heavily on *Fairfield III*, arguing that as long as there is "adequate communication between the counsel and the party to be served," the "logic of Judge Bernstein's decision applies with equal force to non-Swiss defendants." Opp. at 7-8. That argument is wrong and disregards the many reasons why the Liquidators have failed to satisfy their burden of showing that alternative service on Movant's U.S. counsel is proper here. As set forth in more detail in the Opening Brief and in this reply:

- The Liquidators did not request alternative service promptly after *Fairfield III* was decided.  *See infra* Sec. III.B.1.a; Opening Br. at 17, 19.

- In *Fairfield III*, the Liquidators had a long-form subscription agreement with a service clause for HSBC Suisse (although the Court held the agreement was not relevant to these proceedings and service could not be premised on it).  Here, however, the Liquidators did not have a subscription agreement for Movant when they purported to serve by mail, and they therefore could not have reasonably relied on a subscription agreement that they did not have.  *See infra* Sec. III.B.1.b.

- *Fairfield III* addressed the procedures under the Hague Convention and in Switzerland, which are not relevant here because Liechtenstein is not a party to the Hague Convention and has different laws.  *See infra* Sec. III.B.1.a; Opening Br. at 19.

- *Fairfield III* did not address issues of comity as to Liechtenstein law, and had no evidence before it on Liechtenstein law.  Comity requires that each country's law and practice be considered separately.  *See infra* Sec. III.B.3; Opening Br. at 20-21.

- *Fairfield III* did not consider the ease with which the Madoff Trustee served process via letters rogatory in Liechtenstein, or the sworn statement of a Justice of the Constitutional Court of Liechtenstein about the feasibility of serving by letters rogatory in Liechtenstein.  *See infra* Sec. III.B.2; Opening Br. at 7, 18, 21.

**B.      The Liquidators have failed to meet their burden of proving that the Court should use its discretion to authorize alternative service on Movant.**

The Liquidators do not contest that for the Court to exercise its discretion to authorize alternative service under Federal Rule 4(f)(3), the Liquidators must make a showing that (a) they have reasonably attempted to effectuate service on Movant and (b) the circumstances are such that the Court's intervention is necessary.  *See Fairfield III* at 27; *see also Peifa Xu v. Gridsum Holdings, Inc.*, No. 18 Civ. 3655, 2020 WL 1508748, at *14 (S.D.N.Y. Mar. 30, 2020) (noting that the plaintiff is responsible for making such a showing).  The Liquidators have not satisfied either prong.

**1.    The Liquidators have not reasonably attempted to effectuate service on Movant.**

In arguing that their prior attempt at service was reasonable, the Liquidators rely solely on Judge Bernstein's ruling in *Fairfield III* that reliance on the service provision in the subscription agreement with HSBC Suisse was reasonable until the decision in *Fairfield I*. *See* Opp. at 11-13. But that argument fails here.

**a.    The Liquidators did nothing to effect service since *Fairfield III* in 2020.**

Most obviously, the Liquidators ignore that *Fairfield III* was decided in 2020. If the Liquidators wanted to follow *Fairfield III*'s path here, they should have moved the Court for leave to make alternative service (or served using letters rogatory) in 2020. But they did not. There is no justification for the Liquidators to have delayed making service after *Fairfield III*, thus demonstrating that the Liquidators did not make reasonable efforts.

The Liquidators make much of the fact that some defendants agreed by stipulation that *Fairfield III* would apply to them. *See* Opp. at 6, 8. The fact that some defendants voluntarily agreed is irrelevant. Furthermore, *Fairfield III* is not applicable to Movant because it addressed the Hague Convention and Swiss law, but Liechtenstein is not a signatory to the Hague Convention and the opinion did not address Liechtenstein law. Given that Federal Rule 4(f)(3) requires that the Court consider comity and the impact of alternative service on local law (*see infra* Sec. III.B.3), the analysis must necessarily be country-by-country because different countries have different laws. The fact that some parties, in other jurisdictions, decided to stipulate to the holding of *Fairfield* III while preserving their appellate rights,[9] does not require other, differently situated defendants to do so.

---

[9]    Swiss defendants may have had reason to anticipate that a ruling by this Court with respect to service on them would be substantially identical to that in *Fairfield III*, given that these defendants are located in the

     **b.**      **<u>The Liquidators could not have reasonably</u>**
**<u>relied on a subscription agreement for service</u>**
**<u>because they did not have such an agreement</u>**
**<u>when they purported to serve.</u>**

In *Fairfield III*, the Liquidators argued that their mail service was valid because it was authorized by a long form subscription agreement for HSBC Suisse that they had in their possession and filed with the Court.[10]  By contrast, the Liquidators did <u>not</u> have a subscription agreement for Centrum when they mailed the complaints to Liechtenstein.  While the Liquidators claim that "[a]s with HSBC Suisse, the Liquidators had a Long Form Subscription Agreement" for Centrum, "which they reasonably understood to confer upon them the ability to serve Centrum" by mail (Opp. at 12), the Liquidators conceded in connection with discovery on this motion that the Liquidators did not obtain a copy of that subscription agreement until August 19, 2011, approximately a year *after* the Liquidators' attempted service by mail.  *See* August 2, 2021 Declaration of Harrison D. Polans, Ex. A.  Thus, at the time the Liquidators attempted their service, they did not have a reasonable basis to rely on a subscription agreement because they did not have one in their possession.  That alone is sufficient to meaningfully distinguish the circumstances here from those with respect to HSBC Suisse in *Fairfield III*.

Without a subscription agreement, the Liquidators are left to hypothesize that the Fairfield funds allegedly required their subscribers after 2003 to sign long form subscription agreements.  *See* Opp. at 4.  But that was pure speculation, and not evidence of acting in good faith reliance on a subscription agreement in their actual possession.  Furthermore, the Liquidators have provided neither documentary evidence nor testimony to support their

---

same jurisdiction as HSBC Suisse (*i.e.*, Switzerland), unlike Movant, which is located in Liechtenstein, which is not a Hague Convention signatory state and has different laws.

[10]    *See* Decl. of David J. Molton, Ex. A, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Mar. 31, 2017) (Dkt. No. 1337).

assertion, but rather rely on self-serving statements in a declaration from one of the Liquidators. *See* Krys Decl. ¶¶ 7, 10. Nor do they state that they actually believed this purported "fact" in 2010 when they purported to serve. Serving a defendant based on a document that *might* hypothetically exist and if it did exist *might* hypothetically contain a clause relating to service is not a reasonable basis for haling a defendant into court halfway around the world, particularly where service could have otherwise been made relatively easily in accordance with Liechtenstein law, as was done by the Trustee in the Madoff litigation. The Liquidators admit that at the outset of these proceedings, around the time they sought to serve Movant, they had "little, if any, information within their possession concerning the Funds' investors." Opp. at 3. That "shoot first, aim later" approach is not what Judge Bernstein approved of in *Fairfield III*.

c.    **The stipulations signed after *Fairfield I*, *II*, and *III* do not justify the Liquidators' inaction.**

The Liquidators attempt to justify their failure to correct their defective service by claiming that following *Fairfield I* (and later *Fairfield II* and *III*), all issues relating to the sufficiency of service were "preserved . . . for further briefing" by stipulation (Opp. at 13), but the Liquidators carefully avoid citing the Court to the stipulations themselves, and accordingly misconstrue the language and pervert the purpose of those stipulations.

For example, the stipulation entered on April 15, 2019 (following *Fairfield II*) provides that "Moving Defendants that filed or joined a Motion to Dismiss may join in the Second Consolidated Motion to Dismiss (as defined herein) and may file or join an Individual Supplemental Brief (as defined herein). . . .  Arguments for dismissal that may be advanced in the Second Consolidated Motion to Dismiss or an Individual Supplemental Brief may include only the following issues: . . .  (iii) whether the Court may exercise personal jurisdiction over a

Moving Defendant including whether service was properly effected."[11]  Thus, the issue

preserved was <u>defendants'</u> right to file a motion to dismiss based on failure of service; nothing

suggests that the <u>Liquidators</u> were excused from making service or from considering the impact

of the court's rulings on service and taking appropriate action in response.[12]  The Liquidators

made a tactical or financial decision not to effect proper service or to seek leave for alternative

service at that point.  Having made that choice, they should be held to its consequences.  Their

gamesmanship with respect to service on a foreign entity in a country with strict service rules

should not be rewarded.

> **2.     The Liquidators have not shown that the Court's
>           intervention is necessary here.**

The Liquidators also have failed to show that the circumstances are such that it is

necessary for the Court to intervene and grant alternative service.

In their Opposition, the Liquidators do not contest the facts set out in the Opening Brief:

that Liechtenstein has an established procedure for effecting service of process by letters

rogatory and that process is practical and effective, and that the Trustee in the Madoff case

successfully used this very procedure.  *See* Opening Br. at 6-7, 18.  The Liquidators could have,

---

[11]     *See* Stipulated Order Granting in Part and Denying in Part Moving Defs.' Mot. to Dismiss and Pls.' Mot. for Leave to Amend, § II.A, at 12, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Apr. 15, 2019) (Dkt. No. 1957); Stipulated Order Granting in Part and Denying in Part Moving Defs.' Mot. to Dismiss and Pls.' Mot. for Leave to Amend, § II.A, at 12, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Apr. 15, 2019) (Dkt. No. 1958).

[12]     The stipulations following *Fairfield I* and *Fairfield III* similarly preserved the defendants' rights to move based on issues (including service) that had not yet been decided.  *See* Order and Stipulation Between the Liquidators and the Defs. Listed on Appendix A ¶ 3, at 4, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Sept. 20, 2018) (Dkt. No. 1735) (post-*Fairfield I* stipulation providing that the "Parties do not waive or forfeit any argument raised in the Motion for Leave, Consolidated Motion to Dismiss, or Individual Supplemental Motions . . . but expressly preserve those arguments."); Stipulated Order Granting in Part and Denying in Part Moving Defs.' Second Consolidated Mot. to Dismiss, Recitals at 11, ¶¶ II.1, 2 at 14-15, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Mar. 30, 2021) (Dkt. No. 3161) (post-*Fairfield III* stipulation explaining that "Motion to Dismiss Grounds" including service, except as resolved in *Fairfield I, II,* or *III* have been "expressly preserved" and are subject to further briefing on then-anticipated motion to dismiss).

at any time after commencing this litigation, availed themselves of that process and achieved service in accordance with Liechtenstein law and the Federal Rules, thereby avoiding both the entirely foreseeable need for the far-more-costly motion practice and discovery on this issue and the serious comity issues, as well as raising the risk that after all the litigation is done, they will have a judgment that is not enforceable in Liechtenstein.  The Liquidators could have served using letters rogatory (or moved the Court for alternative service) at any time in the nine years since Movant apprised them of the insufficiency of their prior attempted service, or in the nearly three years since *Fairfield I* made clear that the subscription agreements were inapplicable to these proceedings.

While the Liquidators argue that authorizing alternative service now "would avoid unnecessary expense and delay" (Opp. at 13), that is almost always the case when comparing court-ordered service on U.S. counsel to other service in international cases. But the choice to sue here and incur those costs was the Liquidators'.  The Liquidators chose to bring this case in the United States even though the Fairfield funds and the Liquidators are in the British Virgin Islands and the defendants are from all over the world.  That choice entails some costs, which a plaintiff should be required to bear.  One of those costs is compliance with the service rules.  Those rules require U.S. courts to take foreign law and comity into account in considering whether service in compliance with home-country rules would be practical.  *See, e.g.*, Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment ("[A]n earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law").  Given the relative simplicity of service in Liechtenstein by letters rogatory, it is perfectly reasonable to require the Liquidators to have served by letters rogatory in compliance with Liechtenstein's rules.

-13-

Moreover, although Movant notified the Liquidators of their failure of service nearly a decade ago and apprised them of the procedures for service via letters rogatory in Liechtenstein in 2012 (*see* Opening Br. at 6 (citing 2012 Hoch Decl.)), the Liquidators *just now for the first time* appear to be looking into the cost and time of complying with the procedures mandated by Liechtenstein law, receiving an "estimate" four days prior to their Opposition for translating the Complaints and serving via letters rogatory in Liechtenstein. *See* Molton Decl. Ex. 10 (dated July 22, 2021).

The Liquidators' "estimate" should be rejected. First, it is an unsupported, conclusory statement. Second, it is from a "Manager of Client Services" for a California process server, who evidently has no actual experience with Liechtenstein. The Liquidators' papers assert that the California firm has served papers under the Hague Convention for the Liquidators (Molton Decl. ¶ 11), but proffer no experience with service in Liechtenstein. Third, Movant has not had the opportunity to take discovery on this issue because of the Liquidators' tactical decision not to move for alternative service. Finally, the "estimate" does not address the real-world example, in which the Madoff Trustee was able to effect service by letters rogatory in Liechtenstein in about two months (of which only one month involved the Liechtenstein authorities) (Opening Br. at 7), which is much shorter than the "10-12 months or more" asserted in the Liquidators' estimate. Opp. at 14.

Moreover, the Liquidators' cost estimate of service by letters rogatory is misleading. The Liquidators contend that it would cost over $12,000 to complete service on Movant via letters rogatory. *See* Opp. at 14 (citing Molton Decl. ¶ 17 & Ex. 10). However, when read more carefully, the Liquidators' "estimate" for the cost of service of the letters rogatory is just $1,475 plus an "embassy fee" of $2,275 per case. *See* Molton Decl. Ex. 10. This modest expense pales

-14-

in light of the size of the case and the burden on the defendants (who are not American and do not do business in the U.S.) to litigate here.  The bulk of the Liquidators' claimed expense consists of translating the Complaints into German (roughly $5,000 per Liechtenstein defendant). Molton Decl. ¶ 15. The size of that expense was almost entirely in the Liquidator's control as it was the Liquidators' decision to file two 220+ paragraph complaints addressing more than 70 defendants rather than a "short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).  To a great extent, the cost of translation is a self-inflicted wound.  And the cost of translation does not outweigh Liechtenstein's interest in proper service, the fairness of giving notice to a foreigner in its own language, or the comity considerations that the Court should consider when evaluating a request for alternative service.  In short, translation is not an undue burden, but a reasonable and appropriate cost of giving respect to foreign sovereigns.

Finally, the Liquidators argue that "[r]equiring Plaintiffs to re-effect traditional service pursuant to letters rogatory now would accomplish nothing but increased cost and delay."  Opp. at 14.  First, Movant is not asking that the Liquidators "re-effect traditional service" since the Liquidators have never so served, and thus the Complaints should be dismissed.  Second, service is not a mere formality.  Liechtenstein has vigorously asserted that service of process in Liechtenstein must be made through the courts of that country and in accordance with its laws. Those values are particularly worthy of respect here given (a) the significant costs that Movant has incurred in litigating this case in the United States for many years despite the Liquidators having failed to serve process and knowing that they had failed to serve process, and (b) the fact that this even-more-costly motion practice could have been avoided had the Liquidators simply followed the rules and made proper service.  Parties invoking this Court's authority should be

required to cut square corners, particularly when haling defendants into court from halfway across the globe.

### 3. Principles of comity further militate against authorizing alternative service.

The Liquidators' Opposition gives short shrift to the comity and public policy considerations that Movant identified in its Opening Brief and that the Court should consider in determining whether to order alternative service pursuant to Federal Rule 4(f)(3). The Liquidators completely ignore the authorities cited by Movant establishing that the purpose of the Federal Rule 4(f)(3) inquiry is "to accord with 'principles of comity' by 'encourag[ing] the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process.'" Opening Br. at 17 (citing *Convergen Energy LLC v. Brooks*, No. 20-c-3746, 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020)). In their Opposition, the Liquidators concede that they have not attempted to follow foreign law. *See* Opp. at 8. Nor do the Liquidators address the requirement that courts applying Federal Rule 4(f)(3) should attempt to "minimize[] offense to foreign law" in the "interests of comity." *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, No. 03 Civ. 8554, 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005); *see also In re Ski Train Fire in Kaprun Austria on November 11, 2000*, No. 01 Civ. 7342, 2003 WL 1807148, at *7 (S.D.N.Y. Apr. 4, 2003) ("While Rule 4(f)(3) provides for substitute service 'as may be directed by the court,' any such service must comport with the laws of the foreign country.").

As Movant previously explained above and in the Opening Brief (*supra* Sec. III.B.2; Opening Br. at 6-7, 21), Liechtenstein has an established procedure for serving via letters rogatory with which it is not particularly difficult or time consuming to comply, and there is no reason why the Liquidators could not have so served Movant.

-16-

Furthermore, as previously explained (Opening Br. at 7-8, 20-21), comity considerations weigh decisively against permitting alternative service here. In sum, service of process in Liechtenstein is a governmental act reserved to public officials. Hoch Decl. ¶ 13; Note Verbale ¶¶ 1-2. Service other than as provided in the Liechtenstein Law of Service is unlawful and any attempt of private service on Liechtenstein territory is a crime in violation of Liechtenstein's sovereignty. *See* Hoch Decl. ¶ 12(h); Note Verbale ¶ 15. Service on U.S. counsel would contravene the mandatory service-related procedures set forth in Liechtenstein law, and U.S. counsel accordingly is neither authorized nor permitted to accept such service on Movant's behalf. *See* Hoch Decl. ¶ 35 (explaining that service on a U.S. attorney would "constitue an impermissible circumvention of the [Liechtenstein] Law on Service," which requires service to "be completed at an address on Liechtenstein territory"); Opening Br. at 16. In ordering alternative service on U.S. counsel, the Court would essentially require U.S. counsel to serve documents on Movant on Liechtenstein territory as the Court and the Liquidators' agent. *See Freedom Watch*, 766 F.3d at 84 ("[W]hen a court orders service on a foreign entity through its counsel in the United States, the attorney functions as a mechanism to transmit service to its intended recipient abroad."). Liechtenstein cares enough about the issue of service on defendants in its territory to have sent a diplomatic note on this topic to the U.S. Department of State. *See generally* Note Verbale (Ex. B to the Hoch Decl., Dkt. No. 3770). Issuing the relief that the Liquidators seek would place U.S. counsel for Movant in an untenable position.

The Liquidators do not meaningfully engage with these comity considerations. Instead, they implausibly contend that Judge Bernstein gave adequate consideration to, and rejected, these comity issues based on a catchall sentence at the end of his opinion in *Fairfield III* stating that "[t]he Court has considered the parties' other arguments and to the extent not addressed

-17-

herein, concludes that they lack merit or are mooted by the Court's ruling." Opp. at 6 (citing *Fairfield III* at 35), 9. That argument is unavailing for several reasons. First, the comity issues with respect to Movant are different than those for HSBC Suisse. Among other things, Liechtenstein is a different country than Switzerland and is not a party to the Hague Convention. The briefing on the comity issues in *Fairfield III*, which comprised just one paragraph,[13] did not address Liechtenstein law, including the prohibition of service on a party outside of the foreign country at issue (such as on U.S. counsel) or the availability of a legal method of service in accordance with Liechtenstein law. Nor should the briefing have addressed those issues because it was limited to HSBC Suisse, which is in Switzerland, not Liechtenstein. Second, the bare, one sentence conclusion without any analysis does not reflect the careful consideration that we respectfully suggest that the Court should give here in light of the seriousness of the comity and public policy considerations at issue. Finally, to the extent that the Liquidators do address the merits of Movant's comity arguments, they merely argue that the result in *Fairfield III* "is consistent with what other courts in the Southern District have held." Opp. at 9. But none of those cases deal with countervailing comity considerations as strong as those presented here, including that the requested alternative service would be illegal as in Liechtenstein, and that Liechtenstein routinely and quickly serves papers via letters rogatory. *See* Hoch Decl. ¶ 12(g).

Finally, the Liquidators argue that Judge Bernstein purportedly ruled that "foreign law is not implicated when it comes to service upon U.S. counsel for a foreign defendant 'because no documents are transmitted abroad.'" Opp. at 8 (quoting *Fairfield III* at 30). That interpretation of *Fairfield III* is not correct, and would flatly contradict the obligation of the Court to consider

---

[13]    *See* Consolidated Mem. of Law in Supp. of Defs.' Renewed Mot. to Dismiss Pursuant to 11 U.S.C. §§ 561(D), 546(E), and 546(G) and for Insufficient Service of Process Under the Hague Service Convention, at 36, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Mar. 16, 2020) (Dkt. No. 2903).

comity and avoid infringing on foreign law to the extent possible. *See Convergen*, 2020 WL 4038353, at *4-5. Rather, in the section of the opinion that the Liquidators cite, Judge Bernstein analyzed whether the proposed method of service was "not [] prohibited by international agreement," and concluded that the agreement at issue (the Hague Convention) did not prohibit service on U.S. counsel for the reason that the Liquidators quoted. *See Fairfield III* at 30. That aspect of *Fairfield III* does not apply to Movant because it is not a party to the Hague Convention, but Judge Bernstein did not make any broader statement about the relevance of foreign law, and the Court should not ignore Liechtenstein law and public policy here.

## **CONCLUSION**

For the reasons set forth above, as well as those set forth in the Opening Brief, the Complaints should be dismissed with prejudice for failure to service process.

Dated:  New York, New York
        August 2, 2021

  /s/ David M. Morris
David M. Morris
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, NY  10004
(212) 859-8000
david.morris@friedfrank.com

*Counsel for Centrum Bank Aktiengesellschaft
(now owned by VP Bank AG)*