**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Fairfield Sentry Limited, *et al.*,<br><br>    Debtors in Foreign Proceedings. | **Chapter 15 Case**<br><br>**Case No. 10-13164 (CGM)**<br><br>**Jointly Administered** |
| Fairfield Sentry Limited (In Liquidation), et al., acting by and through the Foreign Representatives thereof,<br>    Plaintiffs,<br><br>-against-<br><br>Theodoor GGC Amsterdam, *et al.*,<br>    Defendants. | **Adv. Pro. No. 10-03496 (CGM)**<br><br>**Administratively Consolidated** |
| Fairfield Sentry Limited (In Liquidation), et al., acting by and through the Foreign Representatives thereof,<br>    Plaintiffs,<br><br>-against-<br><br>ABN AMRO Schweiz, *et al.*,<br>    Defendants. | **Adv. Pro. No. 10-03635 (CGM)** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO
DISMISS CLAIMS AGAINST "HSBC" FOR FAILURE TO EFFECT
SERVICE OF PROCESS**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT........................................................................................................2

I.   The Liquidators Have Not Adequately Served "HSBC." .........................................2

II.  The Liquidators' Eleventh-Hour Requests for Alternative Service and Other
     Alternative Baseless Relief Cannot and Should Not Be Granted. ...........................4

     A.   Alternative Service On Cleary Gottlieb Is Improper Because Cleary
          Gottlieb Does Not Know Which Actual Legal Entity The Liquidators Intend
          To Serve And Would Not Know Where To Forward The Summons. ..................4

     B.   Alternative Service Is Improper Because The Liquidators Have Not
          Been Reasonably Diligent. .................................................................6

III. The Liquidators' Unexplained Requests For Other Forms Of Relief Should Be
     Ignored Or Rejected. .............................................................................9

CONCLUSION....................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

| | |
|---|---|
| Fed. R. Civ. P. 4(m) | 2, 10 |
| Fed. R. Civ. P. 12(b)(5) | 2, 3, 7 |
| Fed. R. Civ. P. 4(e) | 9, 10 |
| Fed. R. Civ. P. 4(f)(1) | 9 |
| Fed. R. Civ. P. 4(f)(2) | 9 |

**Cases**

*Broadway v. adidas Am., Inc.*,
2008 WL 2705566, at *5 (E.D. Ark. July 10, 2008) ............ 3

*Convergen Energy LLC v. Brooks*,
2020 WL 4038353 (S.D.N.Y. July 17, 2020) ............ 4, 6

*Cropp v. Golden Arch Realty Corp.*,
2009 WL 10710585 (D.S.C. Mar. 31, 2009) ............ 3

*Harper v. City of New York*,
424 F. App'x 36 (2d Cir. 2011) ............ 10

*Henderson v. United States*,
517 U.S. 654 (1996) ............ 2, 3, 11

*Hutchinson v. New York State Corr. Officers*,
2003 WL 22056997 (S.D.N.Y. Sept. 4, 2003) ............ 7, 10

*In re Bozel, S.A.*,
2017 WL 3175606 (S.D.N.Y. July 25, 2017) ............ 7

*In re Fairfield Sentry Ltd.*,
2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ............ 5, 6

*In re GLG Life Tech Corp. Secs. Litig.*,
287 F.R.D. 262 (S.D.N.Y. 2012) ............ 1

*Lampe v. Xouth, Inc.*,
952 F.2d 697 (3d Cir. 1991) ........................................................................................ 11

*O'Callaghan v. Sifre*,
242 F.R.D. 69 (S.D.N.Y. 2007) .................................................................................... 3

*Schiavone v. Fortune*,
477 U.S. 21 (1986) ........................................................................................................ 3

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018) ............................................................ 1, 4

**Other Authorities**

Hague Convention of November 15, 1965 on the Service Abroad of Judicial and
Extrajudicial Documents in Civil or Commercial Matters, 20 UST 36 l; TIAS 6638, RS
0.274.131. https://www.hcch.net/en/instruments/conventions/full-text/?cid=17 ............... 11

**INTRODUCTION**

The Liquidators' Opposition (Dkt. 3805)[1] concedes a cynical strategy: They acknowledge that "HSBC" – a brand, not the name of any actual legal entity – has not been effectively served. They also concede that they do not know the identity of the entity they are trying to sue under that name. *See* Opp'n at 10. Instead, they ask the Court to sanction service on "HSBC" or "the proper entity to be named in its place," *id.* at 14, on the undersigned counsel at Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb")[2] purportedly as "the proper HSBC defendant's U.S. counsel," *id.* at 11. But Cleary Gottlieb does not know what legal entity they are trying to serve, and the Liquidators have not identified one. Indeed, notably, the Liquidators have not even determined if the relevant defendant is foreign or domestic, instead asking the Court to authorize "alternative service . . . if the proper defendant is foreign, or traditional service, if the proper defendant is domestic." *Id.* at 16.

This is not how lawsuits work. Before the Liquidators can request alternative service, they must determine who they want to sue. And if intend to seek authorization to serve U.S. counsel in place of the methods of service provided under the Federal Rules, they must – at a minimum – identify a client whom that counsel actually represents.

---

[1]    Unless otherwise noted, "(Dkt. __)" refers to the administratively consolidated docket for the above-captioned proceedings: *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y.).

[2]    The Liquidators inaccurately refer to Cleary Gottlieb as counsel for "HSBC." *See, e.g.*, Mem. of Law in Opp'n to HSBC's Mot. to Dismiss for Insufficient Service of Process at 8 (Dkt. 3805) ("Opposition" or "Opp'n"). In fact, Cleary Gottlieb has been very careful to make clear that it is acting for specifically-identified entities affiliated with the HSBC Group (who have retained us, and from whom we take instructions). *See* Mem. of Law in Support of Mot. to Dismiss Claims Against "HSBC" for Failure to Effect Service of Process at 1 n.1 (Dkt. 3783) ("Motion" or "Mot."). Cleary Gottlieb itself has specific and independent standing to be heard on this issue given the Liquidators' improper efforts to effect service through our law firm. Indeed, the request for dismissal of "HSBC" was filed in the first instance as a letter request for an order to show cause on behalf of Cleary Gottlieb, and only as a motion following the Court's instruction. *Id.* At a minimum, the Court can consider the Motion and this Reply as submissions of an interested party that inform the dispute. *See In re GLG Life Tech Corp. Secs. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012); *Wash. State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *2 n.2 (S.D.N.Y. Sept. 21, 2018).

Failing that, the Federal Rules of Civil Procedure (the "Federal Rules") are clear about what should happen in this circumstance where a defendant has not been served: "the court – on motion or on its own after notice to the plaintiff – *must* dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added); *see also* Fed. R. Civ. P. 12(b)(5). Given the passage of time and lack of diligence by the Liquidators, dismissal is the appropriate outcome.

The Liquidators' primary answer to all of this is to argue that this motion is substantively "unrelated" to service. Opp'n at 9-11. They are wrong. Had they properly served a legal entity, we might know who the Liquidators are trying to sue and that entity would therefore have the ability to appear and defend this case. "[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States*, 517 U.S. 654, *672 (1996). That purpose has not been achieved here: The lack of valid service means there is no defendant on notice that it should defend this case, and that is why it should be dismissed as against "HSBC." In any event, the Court's obligation under the Federal Rules to dismiss claims against an unserved defendant arise whether or not the defendant moves for that relief.

## ARGUMENT

### I.     The Liquidators Have Not Adequately Served "HSBC."

The Liquidators concede that the only service attempted in this case – mailing a summons to "HSBC" via international registered mail sent in 2012 to 8 Canada Square, Canary Wharf, London, United Kingdom – was not effective service. *See* Mot. at 4-5; *cf.* Opp'n at 12-14, 18.

In an attempt to avoid the inevitable result that the Motion should be granted because "HSBC" has never been properly served, the Liquidators seek to forestall this Court's resolution of this threshold issue, notwithstanding the Court's express instruction that the issue of service be

2

addressed as a threshold matter. *See* Apr. 21, 2021 Hr'g Tr. at 73:3-5 ("I want a new motion on every single defendant on service. So either you sign on to the stipulation or you file your motion."). Specifically, the Liquidators ask the Court to deny the Motion without prejudice to this Court's adjudication of "the appropriate motion" at some "appropriate time" in the future, and to allow them to proceed with litigation against an admittedly-unserved defendant in the meantime. Opp'n at 1-2. That is unacceptable.

The law is clear – so clear that the Liquidators do not even bother to dispute it: Effective service is necessary to the maintenance of a lawsuit, *see Henderson*, 517 U.S. at 671, and "[the] misnomer of [a] corporation [is] a fatal defect" in service, *Cropp v. Golden Arch Realty Corp.*, 2009 WL 10710585, at *2-3 (D.S.C. Mar. 31, 2009) (cited in Mot. at 12) (granting Rule 12(b)(5) motion when summons was addressed to a "non-existent entity"); *see also Schiavone v. Fortune*, 477 U.S. 21, 23, 25-29 (1986) (dismissing complaint against defendant when complaint alleged generic name, address, and no further "embellishment" as providing insufficient notice to potential defendant).[3] "HSBC" has not been served in this case, and the result is not a merely technical defect: Because the Liquidators have not properly served *any* defendant, there is no defendant who can appear and defend this case. The claims should therefore be dismissed.[4]

---

[3] The Opposition's effort to address *Broadway v. adidas Am., Inc.*, 2008 WL 2705566, at *5 (E.D. Ark. July 10, 2008) (cited in Opp'n at 10 n.8) by pointing out that *adidas* involved plaintiffs who named a non-existent defendant "as 'a shot in the dark'" is a distinction without a difference. The Liquidators' placeholder suit against a brand name fares no better than the claims dismissed in *adidas* for insufficient service. 2008 WL 2705566, at *5. Nor does their unsupported assertion that identifying the entity the Liquidators wish to sue has been "'difficult'" hold any water. *See* Opp'n at 10 n.8 (quoting *Schiavone v. Fortune*, 477 U.S. 21, 28 (1986)). For the reasons to be explained in Section II.B, *infra*, the Liquidators have almost entirely lacked diligence in resolving this issue.

[4] The Liquidators' failure to properly effect service also precludes both a certificate of default and entry of a default judgment against "HSBC." *O'Callaghan v. Sifre*, 242 F.R.D. 69, 72 (S.D.N.Y. 2007) (noting that, for both entry of default and default judgment, federal and local rules require affidavit showing "that the pleading to which no response has been made was properly served," and that a default and default judgment "may not be granted . . . if the defendant has not been effectively served with process"); *accord* S.D.N.Y. Bankr. Local R. 7055-1 (requiring, as part of application for certificate of default, movant to submit affidavit showing proper service of pleading).

3

**II.     The Liquidators' Eleventh-Hour Requests for Alternative Service and Other Alternative Baseless Relief Cannot and Should Not Be Granted.**

Rather than defending the only service that has ever been attempted in this case some nine years ago, the Liquidators instead ask to be "granted leave to effect alternative service on the proper party's U.S. counsel, if the party is foreign, or traditional service on that party, if domestic." Opp'n at 11.  In other words, they seek a blank check to bypass service under the Federal Rules irrespective of who they want to sue, whose laws they are subject to, and whether they even have U.S. counsel.  And they fail to even identify to the Court the party they are asking for leave to serve.  Their request should be denied.

**A.     Alternative Service On Cleary Gottlieb Is Improper Because Cleary Gottlieb Does Not Know Which Actual Legal Entity The Liquidators Intend To Serve And Would Not Know Where To Forward The Summons.**

A court can only authorize alternative service if such service can satisfy Constitutional due process. *Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *3 (S.D.N.Y. July 17, 2020). The Liquidators' proposed service on Cleary Gottlieb plainly fails the Constitutional threshold. While some judges in this District have declined to authorize service on U.S. counsel for foreign defendants at all, *see, e.g.*, *id.* at *7-9, even those judges that have authorized such service have done so with the express understanding that serving the lawyer would effectively give notice to the client, given the lawyer's obligations to the client, *see, e.g.*, *Odebrecht*, 2018 WL 6253877, at *4 (reasoning that, because service on U.S. counsel "requires transmission of service papers to a foreign defendant via a domestic conduit like a law firm or agent," as a result, "ultimately, the foreign individual is served and thereby provided notice outside a United States judicial district"). Thus, as Judge Bernstein recognized when he ordered alternative service on HSBC Private Bank (Suisse) SA ("HSBC Suisse") (an entity that Cleary Gottlieb *does* represent), "[w]hen seeking approval of alternative service through counsel, the movant must show adequate communication

4

between the counsel and the party to be served." *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *12 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*").

The Liquidators' request for alternative service skips that step. They argue broadly that "the proper party" to this case "may be" HSBC Bank USA, N.A. ("HBUS") "or another affiliate of the HSBC Group, whose affiliates have been continuously represented in this litigation by Cleary Gottlieb." Opp'n at 10. But in order to seek service on Cleary Gottlieb, the Liquidators must identify who they are trying to serve, and then must establish – at a minimum, although this would not be sufficient – that the entity they are trying to serve is in fact represented by our law firm. Cleary Gottlieb would not deny our continuous representation in connection with these proceedings of certain HSBC-affiliated companies (including HBUS), but there are hundreds of HSBC affiliates around the world with *no* notice of these proceedings and with whom we have never had *any* contact. *See* Mot. at 4, 6. And, perhaps more importantly, without the Liquidators deciding which of those entities they want to sue, we would not know to whom to transmit a summons. The Court recently observed at the July 28, 2021 hearing in these actions that lawyers cannot appear on behalf of parties that do not exist. The Liquidators effectively concede that the brand "HSBC" is not a legal entity capable of being a party to this case. Yet they request service on Cleary Gottlieb in the name of "HSBC" as a means, apparently, of achieving service on an actual legal entity that they have not yet identified. For the same reason that we cannot represent a brand, we cannot accept service for one either: Alternative service cannot be authorized on a lawyer as a means to effectuate service on a non-existent entity that the lawyer cannot represent. The Liquidators' attempt to analogize this situation to the one addressed by Judge Bernstein in *Fairfield III* is thus wholly misplaced. *Compare* Opp'n at 11-17, with *Fairfield III,* 2020 WL 7345988, at *12 (requiring movant seeking alternative service to show adequate communication

5

between the counsel and the party to be served*")*; *Fairfield III*, 2020 WL 7345988 at *13 (authorizing alternative service based on previous purported service on Cleary Gottlieb by mail and HSBC Suisse's "actual notice of" specific adversary proceeding brought against it).

### B. Alternative Service Is Improper Because The Liquidators Have Not Been Reasonably Diligent.

There is a further deficiency in the Liquidators' request. They have not "reasonably attempted to effectuate service," which is a prerequisite to alternative service. *Convergen Energy*, 2020 WL 4038353, at *4. In *Fairfield III*, the Court determined that the Liquidators' delay in re-attempting service was justified because the Liquidators believed before August 2018 that their service was effective pursuant to the subscription agreements. 2020 WL 7345988, at *13. But unlike for defendants that signed subscription agreements with the Funds in the above-captioned administratively consolidated proceedings, *the Liquidators cannot rely on any subscription agreement between the Funds and "HSBC" because there is none.* See Opp'n at 5 ("HSBC is among the minority of defendants for whom the Liquidators did not receive either a Long- or Short-Form Subscription Agreement…"); *id.* at 15. The Liquidators concede as much, *id.* at 15, and it is obviously true because if there were a subscription agreement signed by a member of the HSBC Group, that agreement would identify the correct legal entity. Because the Liquidators have no contract with "HSBC" providing for service by international mail, *id.* at 5, they could not in good faith have relied on any such contract as the basis for service. Even if – as they now claim – they merely assumed that such a contract might have existed, *id.* at 15, it was not reasonable for them to rely on their mistaken assumption that an agreement existed to justify a wholesale lack of any effort to effectuate service in a manner that otherwise was not consistent with the Federal Rules of Civil Procedure. To the contrary, they should have expected that doing so was an invitation for such improper service to be successfully challenged.

6

Even setting aside the initially improper service, however, the Liquidators have known since at least January 2017 of their failure to name any defendant by purportedly serving "HSBC" and have not made any attempt to correct service. *See* HSBC Defs.' Suppl. Mem. of Law in Opp'n to Pls.' Mot. for Leave to Amend and in Supp. of Defs.' Mot. to Dismiss at 9 (Dkt. 1213), The delay in serving "HSBC" is therefore entirely separate from the delay in other U.S. redeemer actions and the circumstances considered by Judge Bernstein in *Fairfield III*. The Liquidators utterly fail to excuse such delay. *See In re Bozel, S.A.*, 2017 WL 3175606, at *3 (S.D.N.Y. July 25, 2017) (granting Rule 12(b)(5) motion when "there are lengthy delays where no specifics are provided about any service related activity"). Setting aside the lack of a subscription agreement signed by "HSBC," Opp'n at 15, the Liquidators' only attempt at service was not and cannot be considered to have been effective. The Liquidators' own errors – particularly those that were unreasonable on their face – cannot be an excuse for a lack of diligence. *See Hutchinson v. New York State Corr. Officers*, 2003 WL 22056997, at *10 (S.D.N.Y. Sept. 4, 2003) (finding plaintiff was not diligent when failure to serve defendant was "an oversight," resulting from poor coordination).

More generally, the Liquidators have had ample time over the past 10 years to investigate the naming defect and attempt proper service, including through their access to Citco's records and by pursuing collaborative efforts with defendants during the discovery stay. *See* Opp'n at 10 n.6; Decl. of Kenneth M. Krys. in Supp. of Mem. of Law in Opp'n to Defs.' Mots. to Dismiss for Insufficient Service of Process ¶¶ 5-6 (Dkt. 3806) ("Krys Declaration" or "Krys Decl."). There is no justification for why they have not done so here.

Yet, the Liquidators did not even begin the process of trying to identify the specific "HSBC" entity until after Cleary Gottlieb affirmatively reached out to resolve the naming defect

7

in April 2021, and even then they dragged their feet and resisted our efforts to resolve this issue – which we had initially sought to do even prior to their filing of a motion for leave to amend their complaints. *See* Mot. at 8-9; Opp'n at 9-10. The Liquidators have been on notice of the naming defect since at least January 2017, when the named HSBC Defendants filed a motion to dismiss and argued that "HSBC" was a non-juridical entity. And, as the moving papers describe and the Liquidators do not dispute, when Cleary Gottlieb *did* reach out to them and *invite* a process to identify the proper party in advance of the Liquidators' motion to amend (which might have resulted in the naming of an entity that at least exists), the Liquidators affirmatively refused. Mot. at 9. That is neither reasonable nor diligent.

Only after the Liquidators purported to serve Cleary Gottlieb with unenforceable discovery requests directed to "HSBC," and we informed them that our law firm would seek a protective order from the Court, did the Liquidators bother to engage with us. After Cleary Gottlieb's outreach, the Liquidators took over a month to review their records for more information on the identity of "HSBC," producing records they had previously possessed to Cleary Gottlieb on June 4, 2021. In good faith – recognizing that the transfers at issue were U.S. dollar payments that likely transited a U.S. bank account – HBUS searched its records of decade-old wire transfers, and agreed to accept a subpoena for those records. HBUS completed that review within three weeks and produced records within days. The Liquidators then took another two weeks to investigate Citco's records for the first time in connection with this issue, only to inform us that Citco's records refer to "HSBC-NY" – a notation not inconsistent with what HBUS's records show: transfers through *accounts* at HBUS that belong to an identified and unaffiliated third party.[5]

---

[5] This is despite the Liquidators' representations that they have relied on Citco's records in this litigation for the past 10 years. *See* Krys Decl. ¶¶ 5-6 (noting receipt of "lists of subscriptions, redemptions, and transfers" beginning early 2010).

The issue of whether the Liquidators have identified – or may in the future identify – whom they are trying to sue is a sideshow. *See* Opp'n at 11. The Liquidators have very conspicuously *not* asked the Court to authorize service on any identified legal entity, and they acknowledge that "HSBC" is not the name of any legal entity that can be served. *See, e.g., id.* at 19 (requesting authorization of alternative service or traditional service "on the proper defendant"). It is a stand-in for a defendant that the Liquidators hope to identify at some indeterminate time in the future. What the Liquidators appear to have done is sue every single name they recognized in the Fairfield Funds' records, but that approach is the very source of their problem: Without doing any further diligence to figure out *why* the name was listed (for example – was it a bank at which an account was held, like HBUS?) or even *what entity* is actually referenced, they did not know who to sue and therefore did not know who to serve. And they concededly still don't. *Id.* at 10. Despite what the Liquidators suggest, it was not (and is not) Cleary Gottlieb and our other clients' burden to identify to the Liquidators the defendant they should sue or to facilitate service for them. *Cf.* Opp'n at 10 n.6.

### III. The Liquidators' Unexplained Requests For Other Forms Of Relief Should Be Ignored Or Rejected.

Finally, in addition to alternative service on counsel, the Liquidators half-heartedly request a variety of other forms of service, including "the opportunity to re-effect new service under the Hague Convention or letters rogatory under Rule 4(f)(1) or Rule 4(f)(2), or, if the proper defendant is domestic, to re-effect new service via Rule 4(e)." *Id.* at 19. They also seek more time to continue investigations against other "affiliate[s] of the HSBC Group." *Id.* at 1-2, 10. They essentially do not explain these requests, and with good reason: none is viable.

9

The Liquidators are not entitled to an order permitting them to effect domestic service under Rule 4(e) for at least two reasons. First, they have not identified any domestic entity that they intend to serve. Rather, they have simply posited the conditional "if": They would like to serve domestically "*if* the proper defendant is domestic." *Id.* at 19 (emphasis added). Their blunderbuss request puts the cart before the horse. The Liquidators cannot seek an order for service before telling the Court who they intend to use that order to serve. Second, if the Liquidators are now seeking domestic service under Rule 4(e) more than a decade into this case, then they must show "good cause" to justify their alternative request for service, as they are now well outside the 120-day time period permitted by Rule 4(m) for service generally. *See Hutchinson*, 2003 WL 22056997, at *9-10 (cited in Mot. at 12) (finding no "good cause" to excuse lack of timeliness of domestic service). The Opposition does not contest that the "good cause" standard applies to domestic service under Rule 4(m), Opp'n at 16 n.11, and does not argue at any point that the Liquidators have met that standard. And for good reason: Given the lack of diligence outlined above, including their failure to investigate the naming defect to reattempt service, the Liquidators have not shown good cause, and they should not be granted an extension of time to effect any form of service. *See Harper v. City of New York*, 424 F. App'x 36, 41 (2d Cir. 2011) ("[E]ven assuming the prejudice to defendants was slight, plaintiff made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and has advanced no cognizable excuse for the delay." (quoting *Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007))). Nor should they be granted more time to investigate the proper defendant when such efforts began at Cleary Gottlieb's initiation mere months ago into a decade-old case. *See supra* at 7-8.

10

As for the request to serve via the Hague Convention or "letters rogatory," the Liquidators again fail to say who they intend to serve or where. Opp'n at 19. They fail even to explain their request in any meaningful way. And, importantly, without determining the identity and address of the proper defendant – which the Liquidators' Opposition, again, confirms they do not presently know, *id.* at 10 – the Liquidators cannot comply with the terms of the Hague Service Convention, which requires the identification of the "identity and address" of the person to be served, and expressly states that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." Hague Convention, Art. 1.[6] And even more fundamentally, even if a foreign authority served a request directed to "HSBC," the service accomplished by that exercise would not be effective service under domestic law because it would not provide valid notice to the defendant. *See Henderson*, 517 U.S. at *671.

## CONCLUSION

The Liquidators have chosen how they want to name the defendant in their complaint. But "[e]ffective service of process is . . . a prerequisite to proceeding further in a case." *Lampe v. Xouth, Inc.*, 952 F.2d 697, 701 (3d Cir. 1991). Their inability to justify alternative service on Cleary Gottlieb, or through other means, precludes this case from going any further. For these reasons, respectfully, this Court should dismiss the claims against "HSBC" for lack of service.

---

[6] Hague Convention of November 15, 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 UST 36 l; TIAS 6638, RS 0.274.131. https://www.hcch.net/en/instruments/conventions/full-text/?cid=17.

Dated: August 2, 2021
      Washington, D.C.

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Nowell D. Bamberger*
    Nowell D. Bamberger

2112 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
T: 202-974-1500
F: 202-974-1999
nbamberger@cgsh.com

*On behalf of Cleary Gottlieb Steen & Hamilton LLP and as counsel to HSBC Bank USA, N.A.*