

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 10-13164 (CGM)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   FAIRFIELD SENTRY LIMITED, ET AL.,

8

9           Debtor in Foreign

10          Proceedings.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12  Adv. Pro. No. 10-03496 (CGM)

13  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14  FAIRFIELD SENTRY LTD. (IN

15  LIQUIDATION), et al.,

16              Plaintiff,

17          v.

18  THEODOOR GGC AMSTERDAM ET AL,

19              Defendants.

20  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

21  Adv. Pro. No. 10-03630 (CGM)

22  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

23  FAIRFIELD SENTRY LTD. (IN

24  LIQUIDATION), et al.,

25              Plaintiff,

Page 2

1              v.

2    HSBC SECURITIES SERVICES

3    (LUXEMBOURG) SA et al.,

4                    Defendants.

5    - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    Adv. Pro. No. 10-03635 (CGM)

7    - - - - - - - - - - - - - - - - - - - - - - - - - - x

8    FAIRFIELD SENTRY LTD. (IN

9    LIQUIDATION), et al.,

10                   Plaintiff,

11             v.

12   UNION BANCAIRE PRIVEE, UBP

13   SA et al.,

14                   Defendants.

15   - - - - - - - - - - - - - - - - - - - - - - - - - - x

16   Adv. Pro. No. 10-03636 (CGM)

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18   FAIRFIELD SENTRY LTD. (IN

19   LIQUIDATION), et al.,

20                   Plaintiff,

21             v.

22   UNION BANCAIRE PRIVEE, UBP

23   SA et al.,

24                   Defendants.

25   - - - - - - - - - - - - - - - - - - - - - - - - - - x

Page 3

1

2              United States Bankruptcy Court

3              300 Quarropas Street, Room 248

4              White Plains, NY 10601

5

6              August 18, 2021

7              10:00 AM

8

9

10

11

12

13

14

15

16

17

18

19

20

21  B E F O R E :

22  HON CECELIA G. MORRIS

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO: UNKNOWN

Page 4

1    10-03630-cgm Fairfield Sentry Limited (In Liquidation) et al

2    v. HSBC Securities Services (Luxembourg) SA et al

3

4    Adversary proceeding: 10-03630-cgm Fairfield Sentry Limited

5    (In Liquidation) et al v. HSBC Securities Services

6    (Luxembourg) SA et al

7

8         Doc# 149 Motion to Dismiss Adversary Proceeding Notice

9         of Motion to Dismiss Pursuant to Fed. R. Civ. P.

10        12(b)(5) filed by Michael C. Lambert on behalf of

11        Private Space Ltd.. Responses due by 7/26/2021,

12

13        Doc# 155 Memorandum of Law in Opposition to Private-

14        Space Ltd.'s Motion to Dismiss for Insufficient Service

15        of Process

16

17        Doc# 162 Reply Memorandum of Law Reply Memorandum of

18        Law of Defendant Private-Space Ltd. in Support of

19        Renewed Motion Pursuant to Fed. R. Civ. P. 12(b)(5)

20        filed by Michael C. Lambert on behalf of Private Space

21        Ltd.

22

23    10-03635-cgm Fairfield Sentry Limited (In Liquidation) et al

24    v. Union Bancaire Privee, UBP SA et al

25

1    Doc# 568 Motion to Dismiss Adversary Proceeding for

2    Failure to Serve Process filed by David M. Morris on

3    behalf of Verwaltungs-und Privat-Bank AG

4    Aktiengesellschaft. Responses due by 7/26/2021,

5

6    Doc# 571 Motion to Dismiss Adversary Proceeding for

7    Failure to Serve Process filed by David M. Morris on

8    behalf of Verwaltungs-und Privat-Bank AG

9    Aktiengesellschaft. Responses due by 7/26/2021,

10

11   Doc# 573 Motion to Dismiss Adversary Proceeding For

12   Insufficient Service of Process filed by Gregory F.

13   Hauser on behalf of LGT Bank in Liechtenstein AG.

14

15   Doc# 577 Motion to Dismiss Adversary Proceeding For

16   Insufficient Service of Process filed by Gregory F.

17   Hauser on behalf of LGT Bank in Liechtenstein AG

18

19   Doc# 578 Motion to Dismiss Adversary Proceeding For

20   Insufficient Service of Process filed by Gregory F.

21   Hauser on behalf of LGT

22   Bank in Liechtenstein AG.

23

24   Doc# 579 Motion to Dismiss Adversary Proceeding For

25   Insufficient Service of Process filed by Gregory F.

Page 6

1        Hauser on behalf of Liechtensteinische LB Reinvest AMS,

2        AG.

3

4        Doc# 587 Motion to Dismiss Adversary Proceeding filed

5        by Nowell Bamberger on behalf of HSBC.

6

7        Doc# 596 Memorandum of Law in Opposition to Centrum

8        Bank Aktiengesellschaft's Motion to Dismiss for

9        Insufficient Service of Process

10

11       Doc# 597 Memorandum of Law in Opposition to LGT Bank

12       AG's Motion to Dismiss for Insufficient Service of

13       Process

14

15       Doc# 598 Memorandum of Law in Opposition to

16       Liechtensteinische Landesbank Aktiengesellschaft's

17       Motion to Dismiss for Insufficient Service of Process

18

19       Doc# 600 Memorandum of Law in Opposition to

20       Verwaltungs-undPrivat-Bank Aktiengesellschaft's Motion

21       to Dismiss for Insufficient Service of Process

22

23       Doc# 601 Memorandum of Law in Opposition to HSBC's

24       Motion to Dismiss for Insufficient Service of Process

25

Page 7

1    Doc# 609 Memorandum of Law (Reply Memorandum of Law by

2    Defendant Verwaltungs-Und Privat-Bank

3    Aktiengesellschaft in Support of its Motion Pursuant to

4    Fed. R. Civ. P. 12(b)(5) to Dismiss for Failure to

5    Serve Process) (related document(s)568) filed by David

6    M. Morris on behalf of Verwaltungs- und Privat-Bank AG

7    Aktiengesellschaft.

8

9    Doc# 610 Reply Memorandum of Law by Defendant Centrum

10   Bank Aktiengesellschaft in Support of its Motion

11   Pursuant to Fed. R. Civ.P. 12(b)(5) to Dismiss for

12   Failure to Serve Process (related document(s)571) filed

13   by David M. Morris on behalf of Centrum Bank AG (AMS).

14

15   Doc# 612 Reply to Motion (related document(s)579) filed

16   by Gregory F. Hauser on behalf of Liechtensteinische

17   Landesbank AG.

18

19   Doc# 613 Reply to Motion (related document(s)578) filed

20   by Gregory F. Hauser on behalf of LGT Bank in

21   Liechtenstein AG.

22

23   Doc# 614 Reply to Motion (related document(s)587) filed

24   by Nowell Bamberger on behalf of HSBC.

25

Page 8

1   Adversary proceeding: 10-03636-cgm Fairfield Sentry Limited

2   (In Liquidation) et al v. Union Bancaire Privee, UBP SA et

3   al

4          Doc# 637 Motion to Dismiss Adversary Proceeding For

5          Insufficient Service of Process filed by Gregory F.

6          Hauser on behalf of Liechtensteinische LB Reinvest AMS,

7          Liechtensteinische Landesbank AG.

8

9          Doc# 631 Motion to Dismiss Adversary Proceeding for

10         Failure to Serve Process filed by David M. Morris on

11         behalf of Centrum Bank AG (AMS). Responses due by

12         7/26/2021,

13

14         Doc# 628 Motion to Dismiss Adversary Proceeding for

15         Failure to Serve Process filed by David M. Morris on

16         behalf of Verwaltungs-und Privat-Bank AG

17         Aktiengesellschaft. Responses due by 7/26/2021

18

19         Doc# 627 Motion to Dismiss Case /Complaint for

20         Insufficient Service of Process filed by Michael B.

21         Weitman on behalf of Arden International Capital, Ltd.

22

23         Doc# 654 Memorandum of Law in Opposition to Arden

24         International Capital Limited's Motion to Dismiss for

25         Insufficient Service of Process

Page 9

1

2          Doc# 655 Memorandum of Law in Opposition to Centrum

3          Bank Aktiengesellschaft's Motion to Dismiss for

4          Insufficient Service of Process

5

6          Doc# 656 Memorandum of Law in Opposition to LGT Bank

7          AG's Motion to Dismiss for Insufficient Service of

8          Process

9

10          Doc# 657 Memorandum of Law in Opposition to

11          Liechtensteinische Landesbank Aktiengesellschaft's

12          Motion to Dismiss for Insufficient Service of Process

13

14          Doc# 659 Memorandum of Law in Opposition to

15          Verwaltungs-und Privat-Bank Aktiengesellschaft's Motion

16          to Dismiss for Insufficient Service of Process

17

18          Doc# 668 Reply to Motion to Dismiss for Insufficient

19          Service of Process filed by Michael B. Weitman on

20          behalf of Arden International Capital, Ltd.

21

22          Doc# 668 Reply to Motion to Dismiss for Insufficient

23          Service of Process filed by Michael B. Weitman on

24          behalf of Arden International Capital, Ltd..

25

1      Doc# 669 Reply Memorandum of Law by Defendant

2      Verwaltungs-Und Privat-Bank Aktiengesellschaft in

3      Support of its Motion Pursuant to Fed. R. Civ. P.

4      12(b)(5) to Dismiss for Failure to Serve Process

5      (related document(s)628) filed by David M. Morris on

6      behalf of Verwaltungs- und Privat-Bank AG

7      Aktiengesellschaft.

8

9      Doc# 670 Reply Memorandum of Law by Defendant Centrum

10     Bank Aktiengesellschaft in Support of its Motion

11     Pursuant to Fed. R. Civ.P. 12(b)(5) to Dismiss for

12     Failure to Serve Process (related document(s)631) filed

13     by David M. Morris on behalf of Centrum Bank AG (AMS).

14

15     Doc# 672 Reply to Motion (related document(s)637) filed

16     by Gregory F. Hauser on behalf of Liechtensteinische

17     Landesbank AG.

18

19     Doc# 673 Reply to Motion (related document(s)633) filed

20     by Gregory F. Hauser on behalf of LGT Bank in

21     Liechtenstein AG.

22

23   Adversary proceeding:  10-03496-cgm Fairfield Sentry Limited

24   (In Liquidation) et al v. Theodoor GGC Amsterdam et al

25

1          Doc# 3747 Motion to Dismiss Adversary Proceeding Notice

2          of Motion to Dismiss Pursuant to Fed. R. Civ. P.

3          12(b)(5) filed by Michael C. Lambert on behalf of

4          Private-Space Ltd.. Responses due by 7/26/2021

5

6     Adversary proceeding: 10-03496-cgm Fairfield Sentry Limited

7     (In Liquidation) et al v. Theodoor GGC Amsterdam et al

8

9          Doc# 3764 Motion to Dismiss Case /Complaint for

10         Insufficient Service of Process filed by Michael B.

11         Weitman on behalf of Arden International Capital

12         Limited.

13

14         Doc# 3765 Motion to Dismiss Adversary Proceeding for

15         Failure to Serve Process filed by David M. Morris on

16         behalf of Verwaltungs-und Privat-Bank

17         Aktiengesellschaft. Responses due by 7/26/2021,

18

19         Doc# 3768 Motion to Dismiss Adversary Proceeding for

20         Failure to Serve Process filed by David M. Morris on

21         behalf of Centrum Bank Aktiengesellschaft. Responses

22         due by 7/26/2021,

23

24         Doc# 633 Motion to Dismiss Adversary Proceeding for

25         Insufficient Service of Process filed by Gregory F.

Page 12

1          Hauser on behalf of LGT Bank in Liechtenstein AG.

2

3          Doc# 3771 Motion to Dismiss Adversary Proceeding For

4          Insufficient Service of Process filed by Gregory F.

5          Hauser on behalf of LGT Bank in Liechtenstein AG.

6

7          Doc# 3774 Motion to Dismiss Adversary Proceeding For

8          Insufficient Service of Process filed by Gregory F.

9          Hauser on behalf of Liechtensteinische LB Reinvest AMS.

10

11         Doc# 3782 Motion to Dismiss Adversary Proceeding filed

12         by Nowell Bamberger on behalf of HSBC.

13

14         Doc# 3798 Memorandum of Law in Opposition to Arden

15         International Capital Limited's Motion to Dismiss for

16         Insufficient Service of Process

17

18         Doc# 3799 Memorandum of Law in Opposition to Centrum

19         Bank Aktiengesellschaft's Motion to Dismiss for

20         Insufficient Service of Process

21

22         Doc# 3800 Memorandum of Law in Opposition to LGT Bank

23         AG's Motion to Dismiss for Insufficient Service of

24         Process

25

1        Doc# 3801 Memorandum of Law in Opposition to

2        Liechtensteinische Landesbank Aktiengesellschaft's

3        Motion to Dismiss for Insufficient Service of Process

4

5        Doc# 3802 Memorandum of Law in Opposition to Private-

6        Space Ltd.'s Motion to Dismiss for Insufficient Service

7        of Process

8

9        Doc# 3804 Memorandum of Law in Opposition to

10       Verwaltungs-undPrivat-Bank Aktiengesellschaft's Motion

11       to Dismiss for Insufficient Service of Process

12

13       Doc# 3805 Memorandum of Law in Opposition to HSBC's

14       Motion to Dismiss for Insufficient Service of Process

15

16       Doc# 3815 Reply to Motion to Dismiss for Insufficient

17       Service of Process filed by Michael B. Weitman on

18       behalf of Arden International Capital Limited.

19

20       Doc# 3815 Reply to Motion to Dismiss for Insufficient

21       Service of Process filed by Michael B. Weitman on

22       behalf of Arden International Capital Limited

23

24       Doc# 3816 Reply Memorandum of Law Reply Memorandum of

25       Law of Defendant Private-Space Ltd. in Support of

1    Renewed Motion to Dismiss Pursuant to Fed R. Civ. .

2    12(b)(5) filed by Michael C. Lambert on behalf of

3    Private-Space Ltd.

4

5    Doc# 3818 Reply Memorandum of Law by Defendant

6    Verwaltungs-Und Privat-Bank Aktiengesellschaft in

7    Support of its Motion Pursuant to Fed. R. Civ. P.

8    12(b)(5) to Dismiss for Failure to Serve Process

9    (related document(s)3765) filed by David M. Morris on

10   behalf of Verwaltungs-und Privat-Bank

11   Aktiengesellschaft.

12

13   Doc# 3819 Reply Memorandum of Law by Defendant Centrum

14   Bank Aktiengesellschaft in Support of its Motion

15   Pursuant to Fed. R. Civ. P. 12(b)(5) to Dismiss for

16   Failure to Serve Process (related document(s)3768)

17   filed by David M. Morris on behalf of Centrum Bank

18   Aktiengesellschaft

19

20   Doc# 3822 Reply to Motion (related document(s)3774)

21   filed by  Gregory F. Hauser on behalf of

22   Liechtensteinische LB ReinvestAMS, Liechtensteinsche

23   Landesbank Aktiengesellschaft.

24

25   Doc# 3823 Reply to Motion (related document(s)3771)

1        filed by Gregory F. Hauser on behalf of LGT Bank in

2        Liechtenstein AG.

3

4        Doc# 3824 Reply to Motion (Adv. Pro. No. 10-3635)

5        (related document(s)3782) filed by Nowell Bamberger on

6        behalf of HSBC.

7

8    10-13164-cgm Fairfield Sentry Limited and Nomura

9    International plc

10

11       Doc# 970 AMENDED Notice of Adjournment of Hearing RE:

12       Status conference; hearing held and adjourned to

13       8/18/2021 at 10:00AM at Videoconference (ZoomGov)

14       (CGM).

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 16

```
 1   A P P E A R A N C E S :

 2

 3   SELENDY & GAY, PLLC

 4        Attorneys for Fairfield Sentry Limited

 5        1290 Avenue of the Americas

 6        New York, NY 10104

 7

 8   BY:  DAVID ELSBERG

 9        YELENA KONANOVA

10

11   FRIED FRANK

12        Attorneys for VP Bank and Centrum

13        One New York Plaza

14        New York, NY 10004

15

16   BY:  DAVID MORRIS

17

18   GILMARTIN, POSTER & SHAFTO

19        Attorneys for Private-Space Limited

20        845 Third Avenue

21        New York, NY 10022

22

23   BY:  MICHAEL LAMBERT

24

25
```

Page 17

1   SEWARD & KISSELL LLP

2        Attorneys for Arden International Capital, Ltd.

3        One Battery Park Plaza

4        New York, NY 10004

5

6   BY:  WILLIAM MUNNO

7

8   KING & SPALDING LLP

9        Attorneys for National Bank of Kuwait, S.A.K. and NBK

10       Banque Privee

11       1185 Avenue of the Americas, 34th Floor

12       New York, NY 10036

13

14       BY:  RICHARD CIRILLO

15

16   CLEARY GOTTLIEB

17       Attorneys for HSBC Bank USA

18       One Liberty Plaza

19       New York, NY 10006

20

21   BY:  NOWELL BAMBERGER

22

23

24

25

Page 18

```
 1   WUERSCH & GERING LLP

 2         Attorneys for LGT Bank in Liechtenstein AG

 3         100 Wall Street, 10th Floor

 4         New York, NY 10005

 5

 6   BY:  GREGORY HAUSER

 7

 8   SHEARMAN & STERLING

 9         Attorneys for Nomura plc

10         599 Lexington Avenue

11         New York, NY 10022

12

13   BY:  RANDALL MARTIN

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2              THE COURT:  Good morning.  I hope everyone is

3      healthy.  This is the -- I'll read out all the adversaries:

4      10-03630, Fairfield Sentry Limited v. HSBC Security

5      (Luxembourg); 10-03635, Fairfield Sentry Limited v. Union

6      Bancaire Privee, UBP SA; 10-3636, Fairfield Sentry Limited

7      v. Union Bancaire Privee, UBP SA; 10-13164, Fairfield -- oh,

8      excuse me.  That's the lead case.  10-03496, Fairfield

9      Sentry v. Theodoor GGC Amsterdam; and then I have 10-13164,

10     Fairfield Sentry and Nomura International plc.  State your

11     name and affiliation.

12             MR. MORRIS:  Your Honor, it's David Morris.  I

13     represent VP Bank and Centrum, which is now owned by VP Bank

14     in 3635 and 3636.

15             THE COURT:  Thank you.

16             MR. MORRIS:  They are both Lichtenstein banks.

17             THE COURT:  Thank you.

18             MR. LAMBERT:  Good morning, Your Honor.  This is

19     Michael Lambert, of the firm Gilmartin, Poster & Shafto,

20     LLP.  I represent Private-Space Limited which is a defendant

21     in Adversary Proceeding 10-03630.

22             THE COURT:  Very good.

23             MR. MUNNO:  Good morning, Your Honor.  William

24     Munno, of Seward & Kissel.  We represent Arden International

25     Capital, Ltd.

Page 20

1          THE COURT:  In which case?

2          MR. MUNNO:  10-03636.

3          THE COURT:  Okay.

4          MR. CIRILLO:  Your Honor, this is Richard Cirillo.

5    I represent National Bank of Kuwait, S.A.K. and NBK Banque

6    Privee in 10-03635 and 36.

7          MR. BAMBERGER:  Good morning, Your Honor.  This is

8    Nowell Bamberger.  I represent the HSBC defendants in this.

9    With respect to the motions that are on for this morning.

10   there's a motion in 10-3635 and I just want to be clear,

11   with respect to that motion, I'm representing HSBC Bank USA,

12   and my law firm, Cleary Gottlieb Steen & Hamilton.

13         MR. HAUSER:  Your Honor, this is Gregory Hauser.

14   I represent LGT Bank in Liechtenstein and the

15   Liechtensteinische Landesbank.  Both of those are

16   Liechtenstein banks.  Both of those are defendants in both

17   3635 and 3636.

18         MR. MARTIN:  Your Honor, Randall Martin from

19   Shearman & Sterling.  I represent Nomura plc.  I thought I

20   heard you that name out, although I didn't think they were a

21   defendant in any pending action before you today.

22         THE COURT:  I don't know that I did.  I just -- I

23   went through -- I went through the stack that I had.  So

24   we'll just see.

25         MR. MARTIN:  Thank you, Your Honor.

Page 21

1            THE COURT:  Representing Fairfield?  Are they

2    having trouble getting in?  There you are.

3            MR. MOLTON:  Your Honor, David Molton, of Brown

4    Rudnick.  David Elsberg, who I see on the Zoom call, will be

5    handling this hearing.  And I don't -- have not gotten an

6    understanding as to why he hasn't been able to join.  I know

7    that his partner, Ms. Konanova, just joined and maybe she

8    can help us.

9            THE COURT:  Please.

10           MR. MOLTON:  Ms. Konanova?

11           MS. KONANOVA:  Your Honor, I understand that Mr.

12   Elsberg is just having a bit of tech trouble.  He was in

13   earlier, and I think seems to have gotten disconnected.  But

14   he's trying to get back on right now.

15           THE COURT:  Okay.  Thank you.  Because I honestly

16   -- I had an earlier hearing and disconnected myself too.

17   So, but I was able to get it right back.

18           MS. KONANOVA:  Thank you.

19           MR. MOLTON:  Your Honor, it seems to be par for

20   the course for these times.

21           THE COURT:  Right.  Exactly.  Oh, my goodness.  I

22   know.  At least we're not wearing masks at each other.  Any

23   update on him getting back in?

24           MS. KONANOVA:  Your Honor, if he's not able to

25   access the Zoom, we'll ask him to call in through a cell

Page 22

1    phone.  So I believe he's doing that right now.

2              THE COURT:  Okay.

3              MS. KONANOVA:  Thank you.

4              THE COURT:  He can come in.  But basically this is

5    a motion to dismiss under 12(b)(5) for insufficient service

6    of process.  Is that correct?  Is that what we're dealing

7    with today?

8              MS. KONANOVA:  Yes.

9              THE COURT:  I just want to make sure we're all on

10   the same page.

11             MS. KONANOVA:  Yes, Your Honor.

12             MR. BAMBERGER:  Yes, we are.

13             MR. MOLTON:  Yes, Your Honor.

14             THE COURT:  I know the defendants should start

15   arguing anyway.  I just didn't see Mr. Elsberg, and I would

16   like to have him here when the defendants start arguing.

17             MS. KONANOVA:  I appreciate your patience, Your

18   Honor.  If he's dialing in by phone, I'm sure he'll be on

19   momentarily.

20             THE COURT:  Just -- and let's just do some

21   clarification here.  I have Mr. Lambert on behalf of

22   Private-Space, Ltd. doing the argument there.  I have David

23   Morris on behalf of Verwaltungs-und Privat-Bank AG and

24   Centrum Bank and I have Gregory Hauser for LGT Bank

25   Liechtenstein and Liechtensteinische Landesbank

Page 23

```
 1   Aktiengesellschaft -- I don't know that one -- LB Reinvest,

 2   Nowell Bamberger for HSBC and David Whitman on behalf of

 3   Arden International Capital.  Am I correct on who's making

 4   the arguments today for the defendants?

 5              MR. MUNNO:  Your Honor, William Munno is making

 6   the argument on behalf of Arden International Capital, Ltd.

 7              THE COURT:  Okay.  Thank you.  Very good.  Is

 8   everyone else -- am I correct on everyone else making the

 9   arguments?

10              MR. MORRIS:  Yes, Your Honor.

11              MR. BAMBERGER:  Yes, Your Honor.

12              MR. MORRIS:  If it's easier -- it's David Morris -

13   - my client has changed its name to VP Bank, which is much

14   easier to pronounce than the very, very long German name

15   that it used to have.

16              THE COURT:  Thank you.  Thank you.  I will -- I

17   will note that.  But I think we have to say -- even though I

18   cannot pronounce it, I can spell it.  And we will go from

19   there.  Mr. Elsberg, you are now on the phone?

20              MR. ELSBERG:  Yes, Your Honor.  I apologize.  I've

21   not been able to get my video on.  But I am dialed in by my

22   phone.

23              THE COURT:  Okay.  If would you please just state

24   your name for the record.

25              MR. ELSBERG:  David Elsberg, for the liquidators.
```

Page 24

1          THE COURT:  Very good.  And who's taking the lead

2   argument?  I would prefer that you don't repeat yourself.

3   But who's taking the lead argument for the defendants?

4          MR. MORRIS:  It's David Morris.  I think I'll

5   start, and agree that most of the issues are common, but not

6   100 percent of them.

7          THE COURT:  Okay, Mr. Morris.  I know each has

8   their own motion.  But who are you representing?  Oh, I see

9   you.

10          MR. MORRIS:  VP Bank and Centrum, in 636 and 635.

11          THE COURT:  Okay.  Very good.  You may proceed.

12          MR. MORRIS:  The --

13          THE COURT:  36 -- let's get the record straight.

14   It's 3635 and 3636 --

15          MR. MORRIS:  Correct, Your Honor.

16          THE COURT:  -- instead of 63.  Okay.  Very good.

17   Please go ahead.

18          MR. MORRIS:  Apologies.

19          THE COURT:  That's fine.

20          MR. MORRIS:  This case is complicated enough

21   without my flipping the digits.  The liquidators have

22   conceded that they have not accomplished service.  The only

23   service they attempted was by mail, international mail,

24   which they acknowledge in their opposition papers is not

25   effective service.  So the only question is where do we go

Page 25

1   from here.  And we submit that having failed to serve,

2   that's enough.  The case should be dismissed because service

3   has not been made in many, many years.

4           The liquidators also have not made a motion for

5   alternative service.  They do in a footnote ask that the

6   Court grant alternative service by serving U.S. counsel.

7   But they haven't moved for that relief.  It's not

8   appropriate to grant a motion made by footnote, especially

9   not when there was discovery ordered on the plaintiff side,

10  but no opportunity for discovery on the defendant side on

11  jurisdiction because there was no motion for anything else.

12          The defendants have had -- the plaintiffs, sorry,

13  the liquidator has had years in order to make a motion for

14  alternative service.  The Liechtenstein defendants objected

15  to service in 2012.  They filed a series of motions for

16  dismissal based on the absence of service.  They filed -- we

17  filed an affidavit of a justice of the Liechtenstein

18  constitutional court explaining that Liechtenstein did not

19  accept mail service and did not accept service on U.S.

20  counsel and explaining how service should be made under

21  letters rogatory.  That was back in 2012.

22          So we submit that it's enough that the Court

23  shouldn't even consider at this point the liquidator's

24  request for alternative service.  They haven't made the

25  motion, and it would be untimely.  But if the Court is going

1    to consider that request, we argue that it should be denied.

2         The parties agree on the standard, I think, that

3    the burden of proof is on the liquidators, that they need to

4    establish reasonable efforts to effectuate service, that --

5    and they have to show that the circumstances are such that

6    the Court's intervention is necessary to order an

7    alternative.  And the Court needs to consider the comity

8    issues that are involved when imposing a different regime on

9    other countries.

10        So on the first prong, the diligence, the

11   liquidators have not made diligence efforts for service.

12   Even in 2010 when they began this case, they mailed service

13   to Liechtenstein.  They claim that the basis for that was

14   subscription agreements.  But it turns out they didn't have

15   subscription agreements in their possession from our clients

16   or the other Liechtenstein defendants or most of the other

17   moving defendants.

18        For VP Bank, they didn't get the -- a signed

19   subscription agreement until we produced it to them in

20   discovery this summer.  So they couldn't have relied on a

21   subscription agreement in 2010 as the basis of service

22   because they didn't have it.

23        For Centrum, they received a service agreement

24   sometime after 2010.  They haven't told us exactly when.

25   But their opposition papers make it clear that they didn't

Page 27

1    have it when they -- when they sent their registered letter

2    in 2010.  So it was unreasonable for them to serve by mail

3    in 2010.

4          They say that Citco must have executed a long-form

5    service agreement on VP Bank's behalf.  But that is pure

6    speculation.  They offered no record evidence for that must-

7    have and it doesn't meet the standard of reasonable

8    diligence.  It didn't meet the standard of reasonable

9    diligence in 2010.  It certainly doesn't meet it now and

10   didn't meet it over the course of time as they continued to

11   not do anything to cure their failure to serve on which they

12   were notified in 2012 by our objection to their service.

13         After Fairfield I, like eight years -- eight years

14   after the case had begun, the Court ruled that these cases

15   were not related to the subscription agreements.  And so, at

16   that time, the liquidators should certainly -- certainly

17   knew that they could not rely on the subscription

18   agreements.  But they didn't serve them, and they didn't

19   move for alternative service.  Instead they litigated that

20   issue with one of the -- with another defendant, which they

21   lost.  And in Fairfield III in 2020, the judge ruled that --

22   Judge Bernstein ruled that there was no doubt that service

23   could not be made under the service -- under the

24   subscription agreements.

25         So in 2010, the liquidators -- in -- sorry, after

Page 28

1   Fairfield I, the liquidators could have served us or tried

2   to serve us.  And after Fairfield III, they certainly could

3   have made a motion for alternative service or tried to serve

4   us, and they didn't.

5            Apparently they didn't even investigate how to

6   serve a Liechtenstein.  They certainly haven't put in any

7   evidence on that issue.  And in the only evidence they did

8   put in is a statement, an estimate from a process server

9   that they got this summer in 2021.  That process server

10  doesn't allege that they have any experience in service on

11  Liechtenstein and the liquidators' affirmation doesn't

12  allege that they have any -- that is a cover note -- a cover

13  affirmation to that process server estimate doesn't say that

14  the process server has experience in Liechtenstein.

15           The process server said -- the cover affirmation

16  says the process server has used Hague service but doesn't

17  say that they have any Liechtenstein experience.  And that's

18  a 2021 activity.  So there is no evidence in the record that

19  the liquidators did anything at all to attempt to serve

20  between 2010 and now or ask for alternative service.

21           The liquidators made a tactical or a financial

22  decision not to affect proper service or to seek leave for

23  alternative service.  That's a choice they made for their

24  own reasons and they should be held to it.  The case should

25  just be dismissed.

1             Comity plays an important role here, and it's not

2      just a formality.  There is a difference between the way

3      other countries view service and the way the United States

4      views service.  In Liechtenstein, the government cares a lot

5      about the way that its citizens are drawn into foreign

6      courts.  They care enough about this that their diplomatic

7      mission issued a note verbale, an official diplomatic note

8      in this case which we've submitted in the record.  And we've

9      presented an affidavit from the president of the

10     Liechtenstein Constitutional Court about how seriously

11     Liechtenstein takes service.

12             It is a crime to serve in Liechtenstein other than

13     under Liechtenstein law.  And the cases require that comity

14     be considered and the liquidators have not even addressed

15     that issue in their responding papers.

16             We would submit that at this point alternative

17     service should not be granted.  It's just too late.  But --

18     and is unreasonable under comity.  But if the -- it also is

19     not needed here.  the trustee served in Liechtenstein under

20     letters rogatory.  And we put in as an attachment to Dr.

21     Hoch, he's the Liechtenstein supreme court justice --

22     Constitutional Court justice, as an attachment to his

23     affidavit, it's exhibit C to docket 3767 --

24             THE COURT:  And he made -- but he made a ruling on

25     this then?

1          MR. MORRIS:  No.  He would not.  The Liechtenstein

2     system is they have -- those justices are part-time justices

3     and the court is a larger -- is a larger court.  It's a

4     different system that our system.  The trustee, Mr. Picard,

5     served in Liechtenstein by letters rogatory.  It took about

6     two months.  And so it was not difficult and far shorter

7     than the unsworn, noncredible estimate that the liquidators

8     have put in as to how long it would take to serve in

9     Liechtenstein.

10          So the only record evidence, the only sworn record

11     evidence is that it takes about two months.  They've had

12     over ten years and could have done it at any time.  The stay

13     which did not impact service, Judge Lifland's stay

14     explicitly in paragraph four from 2011 says nothing in this

15     order prevents plaintiffs from effecting or completing

16     service in any redeemer action.  So there is no reason just

17     for the liquidators to wait.

18          I think the liquidators' primary argument is some

19     combination of timing and cost.  And we've talked -- I've

20     addressed timing.  On cost, first, their estimate is

21     unsupported and conclusory and unreliable given that the

22     person they've put in doesn't have any stated experience

23     about Liechtenstein.  But their actual costs are mostly for

24     translation.  And that is a self-inflicted wound.  There was

25     no reason they needed to write a 220-plus-paragraph

1    complaint in two actions with voluminous appendices against

2    more than a hundred -- against 70 or so defendants.  That is

3    what creates the translation burden.

4            If they had issued -- if they had written a short,

5    simple, plain statement of the claim, as the rules require,

6    against us, then that translation burden would have been

7    minimal.  It would have -- and frankly easier to understand

8    and easier for everyone to deal with.

9            But even if you include the translation costs, the

10   -- it's not an unreasonable burden before dragging in non-

11   Americans, thousands of miles across the ocean into a

12   country they don't know and which they do not do business.

13   They have no offices, no employees, in a language they don't

14   speak or at least don't speak well.  Before the -- before

15   the Court allows the liquidators to do that, they should be

16   required to cut square corners, which they have not done

17   here.

18           And finally, I just would add that serving U.S.

19   counsel puts us a very difficult position because it is

20   illegal under Liechtenstein law to serve process in

21   Liechtenstein.  And there's no reason to put counsel in that

22   position when there were perfectly appropriate, not

23   difficult ways for service.

24           I can address Fairfield III if the Court wants.

25   The liquidator had argued that this case was decided by

Page 32

1    Fairfield III.  And let me just say a few words.  Fairfield

2    III is -- I mean, is certainly not directly applicable.  We

3    were not a litigant in the Fairfield III issue.  And it also

4    is not comparable.  It's a -- Fairfield III was a Hague

5    Convention case.  Liechtenstein is not a Hague Convention

6    country.  It was a Swiss law case.  Liechtenstein is

7    obviously a different law.

8           And in Fairfield III, the liquidators had a signed

9    subscription agreement.  Presumably that's why they picked

10   Fairfield III to be the first case they litigated.  But they

11   didn't have a signed subscription agreement for any of the

12   Liechtenstein defendants when they served in 2010.  And, as

13   I've said before, they didn't have that at all for one of my

14   clients until we produced it in discovery a few weeks ago.

15   There were -- as far as I know -- I mean, it was not

16   possible for the Court to consider the Liechtenstein comity

17   issues and its diplomatic note and the testimony -- the

18   affidavit of its respected jurist because --

19          THE COURT:  Let me just interrupt you, Mr. Morris.

20   I just want to be clear.  You're saying that they didn't

21   have the subscription agreement but then you produced it in

22   discovery, which I ordered in May.  Is that correct?

23          MR. MORRIS:  Correct.

24          THE COURT:  Isn't that what you just said?

25          MR. MORRIS:  Yes.

Page 33

1              THE COURT:  Okay.  So it did exist.

2              MR. MORRIS:  For -- yes.  It did exist.  But they

3    couldn't have relied on it in 2010 because they didn't have

4    it and --

5              THE COURT:  Because there wasn't discovery in

6    2010.  Move along.

7              MR. MORRIS:  Very well.  But even after Fairfield

8    I, the subscription agreement is irrelevant to service

9    because this case does not arise under the subscription

10   agreement.  So by 2018, the subscription agreement was an

11   irrelevancy to service as Fairfield III ruled when the

12   liquidators litigated that issue rather than just following

13   the instruction of Fairfield I which was the subscription

14   agreement is not relevant here.

15             So that's -- that is the essence of our argument,

16   in addition to what's in the papers.  And I'm happy to

17   answer questions that the Court may have.

18             THE COURT:  I have none.  I just asked you the one

19   I had.  Who was -- who would like to be next?

20             MR. MUNNO:  Your Honor, William Munno of Seward &

21   Kissell for Arden International Capital, Ltd., which is a

22   BVI company that wound up in 1995 returning all of its

23   assets to its investors.  It was a fund of hedge funds.

24             So let me start to say that Arden International

25   Capital, Ltd., or AIC, as I might call it, has never been

Page 34

1    served.  It never had an office in New York or elsewhere in

2    the U.S.  It never signed a subscription agreement agreeing

3    to be served by mail.  Plaintiffs now admit these facts.

4    Nevertheless plaintiffs continue to allege that AIC is a

5    U.S. corporation.  It never was, and plaintiffs knew that.

6    They did not comply with Rule 11(b)(3).  Plaintiffs

7    purported to serve by mail to a New York office building

8    that was never AIC's address.  Plaintiffs knew at least by

9    2017 that AIC was not a U.S. corporation.  That was detailed

10   in our motion to dismiss with evidence providing that it was

11   a BVI corporation.  Yet plaintiffs have alleged in

12   subsequent complaints that AIC is a U.S. corporation,

13   including the fifth amended complaint that they filed a week

14   ago.  In a new, because we produced it -- not only produced

15   it.  Let me say rather we attached it in our motion papers

16   that there was no clause permitting service by mail in the

17   1993 subscription agreement, and they acknowledged that.

18   They didn't have any subscription agreement and the one that

19   we have shows that there cannot be service by mail.  Now

20   plaintiffs did nothing, nothing for four years since 2017

21   when they had evidence that we were not a U.S. corporation

22   and could not be served by mail.  And that was something the

23   plaintiffs could have easily determined in 2011, ten years

24   ago.  But they failed to do that.  There is no excuse for

25   plaintiffs' gross neglect.  They have not shown good cause

1    as they must for failing to service AIC.  There are no

2    exceptional circumstances here for that failure.  And for

3    that reason and the reasons we detail in our motion papers,

4    the complaint should be dismissed.

5              THE COURT:  Very good.  Next?

6              MR. LAMBERT:  Good morning, Your Honor.  This is

7    Michael Lambert.  Again, I represent Private-Space, which is

8    a defendant in Adversary Proceeding 10-03630.  I will try my

9    best not to repeat any of the arguments Mr. Morris made,

10   many of which, most of which apply equally to my client,

11   Private-Space.

12             As with Mr. Morris' clients, Private-Space had

13   admittedly not been properly served.  The liquidators simply

14   do not contest the point.  The record shows that the

15   liquidators made exactly one attempt to serve Private-Space,

16   and that was in July of 2012 when they purportedly mailed a

17   summons and complaint to an address in Monaco.  But Monaco,

18   like Switzerland, is a signatory to The Hague Service

19   Convention, and like Switzerland, lodged an objection to

20   mail service.

21             That's all laid out in the opinion of Monegasque

22   counsel that is attached -- that is part of Private-Space's

23   moving papers on the pending motion.  That opinion has not

24   been challenged in any way by the liquidators.  And for that

25   reason and that reason alone, the case against Private-Space

1    should be dismissed.  They simply have not been properly

2    served.

3              I will now address, like Mr. Morris did, the issue

4    of whether this Court should exercise its discretion and

5    allow alternative service on Private-Space, notwithstanding

6    the fact that the liquidators have not made a motion for

7    expedited service except in a footnote in their opposition

8    papers.

9              The test, as Mr. Morris stated in his argument, is

10   that -- is whether the liquidators have made a reasonable

11   and diligent effort to affect service on Private-Space such

12   that they should now be allowed to have a do-over by

13   allowing them to affect alternative service on Private-

14   Space's counsel, which is my firm, or by some other Hague

15   Convention-compliant method of service on Private-Space

16   itself.

17             The emphatic answer to that question is that they

18   have not made such a -- any reasonable or diligent effort.

19   It is abundantly clear that that one 2012 effort was nothing

20   more than a casual and cavalier approach to service and that

21   they had no reasonable basis for even that one failed

22   attempt at service.

23             There are several reasons for that conclusion.

24   First, by July 2012, the liquidators were on notice that

25   mail service to objecting Hague Convention countries was

Page 37

1    prohibited.  They were first put on notice or should have

2    been on notice of that prohibition by Judge Lifland's 2009

3    decision in the related BLMIS litigation, the case of Picard

4    v. Cohmad Securities, which is cited in our brief.  That

5    case laid out that the Swiss government's prohibition on

6    service by mail under The Hague Convention.

7             In June of 2012, a group of Swiss defendants in

8    these same consolidated Fairfield actions made another

9    filing pointing out to Judge Lifland the prohibition of mail

10   service in Switzerland, and supported that argument with an

11   opinion of Swiss counsel.

12            Now both Judge Lifland's decision and the filings

13   in June 2012 in these cases involve service in Switzerland.

14   But a couple of minutes of online research would have shown

15   that Monaco was in the exact same position as Switzerland

16   when it come to mail service; that is, both Monaco and

17   Switzerland are members -- are Hague -- are signatories to

18   The Hague Service Convention -- excuse me -- and both lodged

19   objections to service by mail.

20            Yet a couple of weeks later after that filing in

21   this case, the liquidators chose a method of service that

22   they knew or should have known was invalid.  Now the

23   liquidators' response, as I understand it, is that at the

24   time they, in good faith, thought that they could rely on

25   the consent to mail service provision in the fund

1    subscription agreements.  But let's just take a closer look

2    at that argument as it pertains to Private-Space.  And when

3    we do, this is what we find.  We find no evidence that they

4    ever checked at the time to see if they had a long-form

5    subscription agreement from Private-Space.

6          And, Your Honor, you need to keep in mind that the

7    consent to service provision appears only in their long-form

8    subscription agreements, as opposed to just assuming or

9    hoping that they had such an agreement.  The evidence in

10   fact strongly suggests that the liquidators either made --

11   excuse me -- made no such effort in 2012 or, if they did,

12   they didn't find any such agreement.

13         And what is that evidence?  It's set forth in the

14   declaration that I submitted as part of Private-Space's

15   reply papers on the motion.  As part of the limited

16   discovery on service issues that Your Honor allowed,

17   Private-Space requested the liquidators to produce copies of

18   any subscription agreement on which the liquidators claimed

19   to have relied in serving Private-Space by mail back in

20   2012.

21         In response, the liquidators produced only two

22   short-form subscription agreements.  The short-form

23   subscription agreement do not contain any service by mail

24   provision.  I asked them to confirm that they had made a

25   diligent search for any such subscription agreement and they

Page 39

1    confirmed by email that they had made a diligent search.

2    Now they did include as part of their opposition papers two

3    long-form subscription agreement signed by HSBC Securities

4    Services (Luxembourg) which acted as Private-Space's

5    custodian and subscribers with respect to Private-Space's

6    investment in Fairfield.

7              But they only had those agreements because

8    Private-Space produced them in discovery on July 1st of this

9    year.  And you can -- and the proof of that is the Bates

10   numbers on the documents.  It's clear they came from

11   Private-Space's files.  In addition, the opposition

12   declaration that was submitted by the liquidator, Mr. Chris,

13   which defensively discusses the alleged difficulties the

14   liquidators have had in finding relevant documents.  That

15   declaration says nothing whatsoever about finding any

16   documents relating to Private-Space.

17             The conclusion, Your Honor, I submit is

18   inescapable, that in 2012, the liquidators not only made no

19   effort to ascertain Private-Space's position vis-à-vis The

20   Hague Convention and service by mail, but that they did not

21   have the very documents on which they claim to have relied

22   on in serving Private-Space by mail.  Third --

23             THE COURT:  I think I've already ruled on that,

24   have I not?  That's why we had discovery in May.

25             MR. LAMBERT:  You already ruled on what?

1            THE COURT:  The fact that they didn't have it and

2    they had discovery.  And I ruled that you could have --

3    since May, they could get discovery on the service issue.

4            MR. LAMBERT:  That's correct.

5            THE COURT:  And that's why it's been produced.

6            MR. LAMBERT:  That's correct.  But presumably the

7    funds must have had subscription agreements in their files,

8    whether it would have had discovery or not.  I mean, these

9    are their subscription agreement.

10           THE COURT:  I hear you.

11           MR. LAMBERT:  Yeah.  Okay.  Third, Your Honor,

12   Private-Space was a beneficial owner in the Fairfield funds.

13   Private-Space never signed any subscription agreement as a

14   subscriber.  And even the fund's long-from subscription

15   agreements refer only to mail service on a subscriber.  Even

16   the long-form subscription agreements are silent about mail

17   service on a beneficial owner.

18           Fourth, even if the liquidators had such a consent

19   from Private-Space, that is a consent to mail service, the

20   opinion of Monegasque counsel that we submitted as part of

21   our motion also opines that under Monegasque law, private

22   parties cannot contract around the prohibition of mail

23   service in Monaco.

24           And fifth and finally, Private-Space raised the

25   Monegasque prohibition on service by mail at its first

Page 41

1    opportunity to do so.  that was in January of 2017 when

2    Private-Space made its initial motion to dismiss.  One of

3    the grounds that we cited in support of that motion was

4    insufficient service of process.  The liquidators'

5    opposition to the 2017 motion was solely on the ground of a

6    presumed consent to service by mail via long-form

7    subscription agreement.

8              Now I've already discussed the dubiousness of that

9    proposition.  But as Mr. Morris pointed out, by August of

10   2018, when Judge Bernstein issued his Fairfield I decision,

11   he took away that argument because the subscription

12   agreements are not applicable to these cases.

13             So the liquidators have made no effort to cure

14   that defective 2012 service since January of 2017 when

15   Private-Space first raised the problem with the service or

16   since August of 2018 when the Fairfield I decision came

17   down, even though there was no impediment to their doing so

18   in the form of any court order or stay, as Mr. Morris

19   pointed out.

20             Now the liquidators try to justify their inaction

21   by arguing it would be too expensive and take too long to

22   affect proper Hague Convention service.  But what does their

23   unsworn evidence show?  The quote, the unsworn quote from a

24   process serving firm, which is attached to Mr. Molton's

25   declaration in opposition to the motion, shows that the

Page 42

1    combined service fee and alleged translation costs for

2    translating the document, the complaint into French, which

3    would be necessary in Monaco for Private-Space, comes to

4    less than $5,000 in total and that service in Monaco will

5    take an estimated two to four months.

6              I submit that that pales in significance compared

7    to the millions of dollars they are seeking to recover from

8    Private-Space and it's also likely to pale in significance

9    compared to the cost to the litigators of litigating the

10   service issue.  So I submit that the time and cost factors

11   are simply no excuse for their inaction.

12             For all of these reasons, the liquidators have

13   fallen woefully short of any due diligence or reasonableness

14   standard that would justify alternative service on Private-

15   Space's counsel some nine years after their one early feeble

16   and failed attempt at service.

17             Now under the two-pronged test for alternative

18   service pursuant to Rule 4(f)(3) set forth by Judge

19   Bernstein in his December 2020 Fairfield III ruling, that

20   should be the end of it because the liquidators have not

21   made a showing of a reasonable and diligent effort to affect

22   service on Private-Space.  They are not entitled to

23   alternative service.

24             But as Mr. Morris did, let me just briefly touch

25   on Fairfield III because Private-Space is in a fundamentally

Page 43

1    different position in these cases than HSBC Suisse was as to

2    which Judge Bernstein in Fairfield III authorized

3    alternative service by mail on HSBC Suisse's counsel, the

4    Cleary Gottlieb firm.  HSBC Suisse was first served in 2010.

5    At the same time, the record shows that the liquidators

6    directly served process on the Cleary Gottlieb firm.

7            At the time, Cleary Gottlieb was already actively

8    litigating on behalf of HSBC Suisse.  In fact, it looks like

9    in September of 2010, they had filed a motion to withdraw

10   the reference.  By contrast, at the time Private-Space was

11   supposedly served in 2012, no direct service was made on any

12   counsel for Private-Space, and for good reason.  Private-

13   Space did not have a counsel in the case in 2012.  Nobody

14   had filed a notice of appearance on behalf of Private-Space

15   in 2012.

16           And it wasn't until January of 2017 when my firm

17   filed a notice of appearance on behalf of Private-Space, and

18   that was immediately followed by Private-Space's initial

19   motion to dismiss which raised, among other things,

20   insufficient service and lack of personal jurisdiction.  The

21   latter grounds, you know, as Your Honor knows, has not yet

22   been decided and has been fully preserved.

23           It's legally irrelevant that Private-Space learned

24   about the action from HSBC Securities Services (Luxembourg)

25   in November 2010 and immediately retained counsel to protect

Page 44

1    its interests by, among other things, monitoring these

2    proceedings.  The case law is absolutely clear that notice

3    of a lawsuit is not substitute for proper service.

4           And the act of filing a motion to dismiss at the

5    first opportunity to do so should not by itself, which is

6    basically what the liquidators are here urging, open the

7    door to alternative service on the very counsel that made

8    the motion to dismiss.  Such a concept, I submit, totally

9    eviscerates the need for proper Rule 4 service.  Yes, we

10   didn't properly serve you nine years ago.  But because you

11   hired an attorney to protect your interests rather than risk

12   a default judgment based on an improper service of process,

13   we can cure the problem just by serving the very attorneys

14   who made the improper service and lack of personal

15   jurisdiction motion on your behalf.

16          That's a proposition I respectfully submit should

17   be rejected by the Court under all of these actions, and

18   plaintiffs' motion to dismiss should, I respectfully submit,

19   be granted.  Thank you, Your Honor.

20          THE COURT:  Thank you.  Next?

21          MR. HAUSER:  Your Honor, this is Gregory Hauser.

22   And again, I represent LGT Bank in Liechtenstein and the

23   Liechtensteinische Landesbank.  We'll just call those LGT

24   and LLB if it's easier for Your Honor.  It's easier for me

25   too.  They are both Liechtenstein entities, as are Mr.

Page 45

```
 1   Morris' clients.  And we join with his arguments 100

 2   percent.  We also join with Mr. Lambert's arguments with the

 3   exception of those that are specific to The Hague

 4   Convention, since Liechtenstein is not a Hague Convention

 5   country.

 6           I just want to mention some factual circumstances

 7   for each of my two clients.  With regard to LLB, again, as

 8   everybody has pointed out, the liquidators' only argument

 9   for having made reasonable efforts or having exercised due

10   diligence is reliance on these supposed subscription

11   agreements.  They do not however submit any evidence that

12   they had those subscription agreements in hand when they

13   made the service or that, at the time they made the service,

14   that they were relying on any particular agreement for any

15   particular defendant.

16           Indeed for LLB, the only agreement they've been

17   able to produce is one short-form subscription agreement

18   between LLB and Fairfield Sentry.  There isn't a single

19   long-form agreement for LLB with any of the Fairfield and

20   there's not even any short-form agreement between LLB and

21   either Fairfield Sigma or Fairfield Lambda.  So there's one

22   short-form subscription agreement with no service by mail

23   provision with only one of the plaintiffs.  That simply

24   isn't enough to rely on for reasonable efforts or due

25   diligence.
```

Page 46

1           With regard to LGT, there is one long-form

2    agreement for Fairfield Sigma.  There is none for Fairfield

3    Sentry.  There is none for Fairfield Lambda, and there is no

4    evidence from the liquidators that they had that agreement

5    in hand when they made service or that they relied on that

6    one long-form agreement when they made service.

7           The argument for reasonable efforts fails because

8    they lack evidence of the reliance that they've been

9    claiming.  And unless Your Honor has any questions specific

10   to LLB or LGT, we simply join with the other counsel and ask

11   that our motion to dismiss for insufficient service be

12   granted.

13           THE COURT:  Very good.  Thank you.

14           MR. BAMBERGER:  Your Honor, to conclude, Nowell

15   Bamberger.  I represent the HSBC defendants.  I appreciate

16   Your Honor's patience, and we'll try to be very brief.

17           We have a slightly different issue, as you may be

18   aware, than some of the other defendants.  And that is that

19   we don't actually know who the liquidators are trying to

20   serve.  I wish I wasn't before Your Honor on this issue.

21           My firm litigated on behalf of certain of our

22   other clients the Fairfield III decision.  The Court there

23   authorized service on us.  We don't think that's correct.

24   But following that decision, most of my clients stipulated

25   to service as hundreds -- a hundred or so other defendants

Page 47

```
1    have done.  My understanding is those stipulations are

2    submitted and before Your Honor to be signed off on.

3              In two cases, 3535 and 3536, the liquidators named

4    an entity described only as HSBC.  And we raised with them

5    repeatedly that we didn't know who that was.  And it became

6    clear through our discussions with them that they didn't

7    know either.

8              And when we pressed the issue, they -- after

9    telling us for months that they were relying on the fund's

10   documents as indicating that that was a correct defendant,

11   they realized they actually had no documents in one of the

12   cases suggesting any transfers had been made to our client.

13             THE COURT:  Be careful with your rules of

14   professional responsibility is all I can say.

15             MR. BAMBERGER:  I understand, Your Honor, and

16   that's why I was pretty clear, I think, about who I'm

17   representing.  And let me explain why I'm here speaking to

18   Your Honor.

19             THE COURT:  You keep calling it your client.  And

20   --

21             MR. BAMBERGER:  I --

22             THE COURT:  You don't -- you don't have anybody to

23   talk to.

24             MR. BAMBERGER:  I --

25             THE COURT:  You do not have authorization.  And
```

Page 48

1   unless you can show that to me, you cannot speak on behalf

2   of them.

3            MR. BAMBERGER:  I apologize for the misstatement,

4   Your Honor.  And what I was trying to say is the liquidators

5   indicated that there was an HSBC entity that had received

6   transfers.  And in one of the cases, when we pressed them on

7   that, it became clear that they had no such records, and

8   they dismissed that case.

9            In the other case, they provided us with some

10  records.  Those records have not resolved what entity they

11  are trying to sue.  And the reason I'm before Your Honor is

12  we are left with a case where there is an entity named HSBC.

13           We have every reason, and the liquidators have

14  every -- have given us every reason to believe that they are

15  trying to sue an entity that is affiliated with clients who

16  I represent.  They have acknowledged, the liquidators have

17  acknowledged that they have not affected service in any

18  sufficient way on that entity.  They are --

19           THE COURT:  And that's for them to deal with on

20  that entity.  You cannot speak for an entity that you don't

21  think exists.

22           MR. BAMBERGER:  I agree, Your Honor.

23           THE COURT:  You can't.

24           MR. BAMBERGER:  I agree, Your Honor.  And that's

25  precisely the problem because the liquidators have now come

1   to Your Honor and asked you to authorized service on me.

2   and that is the problem.

3                THE COURT:  Oh, okay.

4                MR. BAMBERGER:  Right.

5                THE COURT:  That's a different -- that's a

6   different issue.  Okay.

7                MR. BAMBERGER:  Right.  That's why I said I was

8   representing my law firm, Your Honor because that -- having

9   acknowledged that service wasn't effectuated, we cannot

10  stand in and be served for an entity we don't represent and

11  who -- we don't even know who it is.  And that's the issue

12  that we're before Your Honor on.  It's the most basic type

13  of notice issue.  You know, the purpose of service is

14  fundamentally so the defendant knows that they've been sued

15  and can appear in court.  And that's what we're missing

16  here.

17               And if you look at what the liquidators are asking

18  you to authorize in their brief, they don't -- they don't

19  actually make a square ask.  They ask you to authorize

20  service on me under Rule 4(f)(3).  They authorize, in the

21  alternative, service under The Hague Convention or maybe

22  under letters rogatory or, if the proper party is domestic,

23  under the Federal Rules of Civil Procedure.  They have to

24  figure out who they're suing first.  And then they have to

25  serve that entity.  And if they identify to us an entity --

1              THE COURT:  I'll just stop you right there.

2              MR. BAMBERGER:  Okay.

3              THE COURT:  I can tell Mr. Elsberg and anyone else

4    that if it can't be served on counsel, since there is no

5    counsel, then they're in default.  You've got to figure out

6    your service issue with that entity.  And I'm not dismissing

7    it, Mr. Bamberger.  I'm simply saying you can't depend on

8    that service, Mr. Elsberg.

9              You've got to figure that out.  That's a civil

10   procedure issue, and you've got to figure that out.  But

11   someone can't argue about dismissal when they're not

12   representing that client.  And that puts them in an ethical

13   situation, and you cannot do that, and you cannot serve the

14   law firm on that entity, for that entity.  I'll just clear

15   on that.

16             MR. ELSBERG:  Judge -- very clear, Your Honor.

17   Thank you.

18             MR. BAMBERGER:  And, Your Honor, the only other

19   thing I'd add is I think the Federal Rules 4(m) suggest when

20   service hasn't been effected, the proper remedy is that the

21   Court must dismiss.

22             THE COURT:  You cannot argue for a client that you

23   don't have.

24             MR. BAMBERGER:  I am, as a friend of the Court,

25   pointing out the rule, Your Honor --

1          THE COURT:  That is a nice thing for you to do.

2          MR. BAMBERGER:  -- and I'll stop talking.  I will

3     stop talking right now.

4          THE COURT:  Okay.

5          MR. BAMBERGER:  Thank you, Your Honor, for hearing

6     me.

7          THE COURT:  Thank you.  And yes, Mr. -- okay, Mr.

8     -- who have I not heard from?  Mr. Hauser, I've heard from

9     you.  Okay.  Anyone else wish to be heard before I turn to

10    Mr. Elsberg?  Mr. Elsberg?  You're on mute.

11         MR. ELSBERG:  Thank you, Your Honor.  I'd like to

12    start, if it would be helpful to Your Honor, just to do a

13    very quick recap of how we got here procedurally or I can

14    just jump right into the arguments, which ever you prefer.

15         THE COURT:  I think you should give me quick

16    recap.  Let's make the record robust.

17         MR. ELSBERG:  Yes.  Thank you, Your Honor.  So

18    Your Honor, in 2016 and 2017, the parties briefed motions to

19    dismiss on threshold issues, and those issues included

20    service.  Fairfield I, which is docket 1723, and Fairfield

21    II, which is docket 1743, resolved some of those threshold

22    issues but did not resolve service challenges.

23         The April '19 settled orders that implemented

24    Fairfield I and II specified that service was to be decided

25    in the future by motions to dismiss that would be filed by

Page 52

1    the defendants.  That's docket 1957, at page 10.

2            In March 25th, in a letter to Judge Bernstein, the

3    defendants wrote that Judge Bernstein could resolve the

4    service issues in a limited number of test cases that would

5    resolve claims against the significant number of defendants.

6    That's docket --

7            THE COURT:  I'm aware of that one.  Yes.

8            MR. ELSBERG:  Yes.

9            THE COURT:  And yet we're here today, so just keep

10   arguing.

11           MR. ELSBERG:  Okay.  At a March 27, 2020

12   conference, Judge Bernstein instructed the parties to

13   identify a representative complaint to resolve the service

14   issue.  That's at docket 3028.  The parties conferred and

15   agreed that HSBC Private Bank Suisse SA, which I refer to as

16   HSBC Suisse, would be the representative defendant for the

17   service issue.  That's docket 3016.

18           On December 14, 2020, Judge Bernstein ruled on the

19   service issue in Fairfield III using HSBC Suisse as the test

20   case or representative action.  That's docket 3062.  And

21   Judge Bernstein acknowledged that the liquidators were not

22   arguing that they complied with The Hague Service Convention

23   that held that alternative service on a foreign defendant's

24   U.S. counsel is permissible under FRCP 4(f)(3) and does not

25   run afoul of international agreements.

1          More specifically, Judge Bernstein held that

2     service on U.S. counsel was permissible if there was

3     adequate communication between counsel and the party to be

4     served and held that HSBC Suisse had undoubtedly been in

5     regular contact with the U.S. counsel and has actively

6     participated in the underlying action since at least

7     September 2010.

8          So after Fairfield III, the parties negotiated the

9     settled orders.  The defendants took the position that the

10    service ruling applied only to HSBC Suisse, even though it

11    was intended to be a representative defendant.  And the

12    defendants also maintained that all of the other defendants,

13    aside from HSBC Suisse, were entitled to brief their own

14    service challenges in the forthcoming motions to dismiss.

15         So then in February 22, 2021, Judge Bernstein

16    entered an order.  That's docket 3076.  And in that order,

17    Judge Bernstein wrote that certain determinations would bind

18    all Swiss defendants, specifically the Court's authority to

19    authorize service on U.S. counsel.

20         Judge Bernstein also wrote that the propriety of

21    service on other defendants depends on whether they, like

22    the HSBC Suisse, were in "regular contact" with U.S. counsel

23    who "has actively participated in the particular adversary

24    proceedings after it was commenced."  That's docket 3076, at

25    two and I'll refer to this as the contact test.

1          Judge Bernstein also wrote that he assumed that

2     the conclusions regarding diligence and prejudice for other

3     defendants are the same as they were with the HSBC Suisse.

4     That's docket 3076, at two.

5          Nonetheless at the February 22, 2021, after that

6     order, all of the defendants, except for about ten, refused

7     to stipulate to be bound by the service ruling.  at the

8     April 21, 2021 conference, Your Honor then ordered that all

9     defendants stipulate to be bound by Fairfield III's service

10    ruling or file individualized briefs and respond to

11    discovery on service issues.  That's docket 3809-1, at 62 to

12    63.

13         And at that point, the defendants changed course.

14    The service stipulation lists over 100 defendants.  So the

15    vast majority decided to stipulate.  About 18 neither

16    stipulated nor filed a motion.  And my understanding, Your

17    Honor, is that those defendants are deemed to have been

18    served properly pursuant to Your Honor's statement at the

19    April 21st conference at pages 63 to 64 of the transcript

20    which is docket 3809-1.

21         So that brings us to the motions that we're now

22    looking at.  Only nine defendants ended up filing service

23    motions.  Of the nine that were filed, two are no longer at

24    issue.  The liquidators voluntarily released claims against

25    Allianz Bank.  That's docket 3795, and Unifortune

Page 55

1    Conservative Side Pocket withdrew its motion on the record

2    at the July 28, 2021 conference and in a subsequent notice

3    of withdrawal which is the July 28, '21 transcript at 100

4    and is also reflected in a notice at docket 3827.

5              So what that leaves us with, Your Honor, is seven

6    motions filed by seven defendants for Your Honor to resolve.

7    And those are the ones we're addressing today.

8              THE COURT:  Okay.  Go on.

9              MR. ELSBERG:  Private-Space, Arden International,

10   a motion put in by Clearly that says they don't represent

11   HSBC, but they've put in a motion, and in addition to those

12   three, there are four that are similar.  They are all about

13   Liechtenstein entities.

14             That's LGT Bank in Liechtenstein AG, which I'll

15   refer to as LGT, Liechtensteinische Landesbank, which I'll

16   refer to as LLB, Verwaltungs-und Privat-Bank, which I'll

17   refer to as VP Bank, Centrum Bank AG, which I'll refer to as

18   Centrum.

19             So, Your Honor, that's the context that I wanted

20   to --

21             THE COURT:  Okay.  Let me just be clear on

22   something.

23             MR. ELSBERG:  Yes.

24             THE COURT:  So you're saying to me that the

25   attorneys here today are not representing certain of these -

1   - I understand about Cleary Gottlieb and HSBC.  But Centrum

2   Bank and the Liechtenstein, did I mishear you on this?

3            MR. ELSBERG:  Your Honor, I did not mean to say

4   that those lawyers are saying they have no clients.  The

5   only one is Cleary with respect to HSBC.

6            THE COURT:  Okay.  That's fine.  I just wanted to

7   -- I wanted to make sure that I heard what you said

8   properly.  Okay.

9            MR. ELSBERG:  Okay.  So with that background, Your

10  Honor, I will jump into the -- jump into the arguments.

11  Sorry.  I'm just pulling up.  One moment, Your Honor.

12           THE COURT:  Have we lost you, Mr. Elsberg?

13           MR. ELSBERG:  No.  I'm here.  I was just going

14  through lots of different sets of notes, and I think I've

15  found the right one.

16           Okay.  So Your Honor, I'll start by addressing the

17  six defendants who are arguing that service was improper

18  because of foreign law limitations.  And, Your Honor, those

19  defendants are LGT, LLB, VP Bank, Centrum, Arden and

20  Private-Space.  And for now I'm putting aside Cleary's

21  motion about HSBC because that one mainly focuses on

22  something different which is the proper party issue.  And

23  their arguments are different from the other defendants.

24           First I should note specifically with respect to

25  Arden, that, Your Honor, I do -- I appreciate that there's a

Page 57

1   preference to decide things on the merits.  So I will

2   address all the defendants' merits arguments.  But before

3   that, I have to quickly point out that I believe that at the

4   April 21, 2021 conference, Arden did not preserve the right

5   to make this motion, and so they could be deemed to have

6   consented to service, as Your Honor suggested at pages 63 to

7   64 of the transcript, which is docket 3089.  So I've noted

8   that.

9          But, Your Honor, I'll go on and I'll address the

10  merits with respect to all of the defendants now except for

11  HSBC.  So, Your Honor, all six of the defendants have been

12  in regular contact with U.S. counsel who has actively

13  participated in this adversary proceedings.  They don't

14  dispute that.

15         So the contact test that was set forth in Judge

16  Bernstein's February 22, '21 order which is docket 3076 has

17  been satisfied.  In fact, Your Honor, number one, all six

18  stipulated that they retained counsel in these adversary

19  proceedings in late 2010 or by spring 2011 at the latest.

20  Those are in their stipulations.

21         And number two, all stipulated that counsel has

22  continuously represented them in these proceedings since

23  then.  Again, that's in their stipulation.  Number three,

24  Your Honor, all six stipulated that counsel has been in

25  contact with them about the proceedings, including advising

Page 58

1    the defendants and reporting on developments in the

2    proceedings.  So there's no question that they satisfied the

3    test.

4             Now instead of contesting that the contact test,

5    the contact test is satisfied that Judge Bernstein laid out,

6    Arden and Private-Space point out that their counsel did not

7    enter a formal appearance, a formal appearance until January

8    of 2017.  That's at their -- Arden's reply at six to seven,

9    Private-Space's reply at eight, dockets 3815 and 2819.

10            But their argument about the timing of the

11   appearance, Your Honor, that argument doesn't get them

12   anywhere because the timing of counsel's appearance does not

13   change what matters under Fairfield III because the timing

14   of their appearance doesn't change that the contact test is

15   satisfied.

16            The fact that they entered an appearance when they

17   did just reflects the fact that the case was stayed for

18   about five years between October '11 and July 2016.  That's

19   when Judge Bernstein lifted the stay to allow for the filing

20   of amended complaints.  That's docket 418, and his oral

21   lift-stay order is docket 906.

22            So what happened here is they had counsel

23   monitoring, watching, advising them, in regular contact with

24   them.  And then what they did is they decided to appear in

25   January 2017, which they admit in paragraph three of their

1   stipulation, the Arden and Private-Space.  So Arden and

2   Private-Space's argument based on the timing of the

3   appearance of counsel doesn't get it anywhere.  It's beside

4   the point to the contact test, which is what matters.

5            Your Honor, five of the six defendants make

6   another argument -- or sorry, five of the six defendants do

7   not argue that they've been prejudiced in any way from any

8   non-compliance with foreign law on service.  And this makes

9   sense because, like HSBC Suisse, the representative

10  defendant in Fairfield, these defendants have been

11  represented by U.S. counsel since late 2010 or spring of

12  2011 at the latest.

13           The sixth defendant, Arden, asserts that it has

14  been prejudiced by the liquidators' noncompliance with

15  foreign law on service.  But Your Honor, if you look at

16  their papers, they don't say what that prejudice could

17  possibly be, given that, like HSBC Suisse, the

18  representative defendant, Arden has been represented by U.S.

19  counsel since May of 2011.  And they admit that, Arden does,

20  in their reply at page eight.  That's docket 3815.

21           Now Arden asserts that somehow it would be

22  prejudiced because it ceased operations in 2005 and it

23  returned all of its assets to its investors.  But, Your

24  Honor, that was Arden's choice.  Arden's choice to cease

25  operations five years before, five years before this

Page 60

1   litigation even began has nothing to do with any prejudice

2   that could be attributed to service.  So Arden's prejudice

3   argument fails, and it should be rejected.

4          Now the six defendants advance a number of other

5   arguments that also simply do not work.  The four

6   Liechtenstein defendants, VP Bank, Centrum, LGT Bank and

7   LLB, those four defendants argue that the liquidators should

8   not have asked this Court to construe our opposition brief

9   as a request for alternative service.  They say instead we

10  should be required to file a separate motion seeking

11  alternative service.

12         But here's the key, Your Honor.  The four

13  liquidators -- the four defendants don't give any reason why

14  the liquidators or this Court, Your Honor, should waste

15  their time and resources, excuse me, on another set of

16  motion papers.  Your Honor, there was absolutely no secret

17  here.  Everybody knew based on what happened in open court

18  that this round of briefing was going to be devoted to our

19  request for alternative service on the law firms.  And

20  everyone knew it because at the April 21 conference, Your

21  Honor was very clear that this Court wanted briefing on law

22  firm service.  That's at docket 3809, at page 37.

23         And on top of that, Your Honor, Your Honor

24  directed the defendants to file the opening briefs.  So in

25  light of that direction, there was no need, and it would not

Page 61

1    have made any sense for the liquidators to then barrel ahead

2    and file its own separate motion on the identical issue that

3    the defendants had just been instructed to brief.  So the

4    four defendants did go ahead and file their brief, as Your

5    Honor instructed.

6              And as Your Honor instructed, their briefs

7    included their arguments against our request for law firm

8    service just like the other defendants did.  And that means

9    there's zero prejudice here.  They've had a full and fair

10   opportunity to brief their arguments in not only an opening

11   but also in a reply brief.  So there's no reason to waste

12   time on another separate motion.  The problem with that --

13             THE COURT:  Let me interrupt -- let me interrupt

14   you one moment --

15             MR. ELSBERG:  Yeah.

16             THE COURT:  -- because you said the four

17   defendants.  Name those again for me.  I want to have them

18   in my mind clearly.

19             MR. ELSBERG:  Sure.  So the four Liechtenstein

20   defendants who make the argument about a separate motion,

21   Your Honor, are VP Bank --

22             THE COURT:  Okay.

23             MR. ELSBERG:  -- Centrum, LGT Bank and LLT.

24             THE COURT:  Okay.  Wait a minute.  Say those

25   again.  Centrum -- Centrum -- I just did two --

1           MR. ELSBERG:  The four --

2           THE COURT:  Who's Verwaltungs?  Is that the one

3    you're talking about?

4           MR. ELSBERG:  Yes.  I think that's VP Bank.

5    That's --

6           THE COURT:  I know, because he changed the name on

7    me.  But I needed to refer to what the actual litigation

8    was.  Okay.  And now Arden International is a different

9    argument.  You're talking about the four Liechtenstein, and

10   Arden is Morocco.

11          MR. ELSBERG:  Correct, Your Honor.

12          THE COURT:  Okay.  Thank you.  I just wanted to

13   clarify.

14          MR. ELSBERG:  Yes, Your Honor.  And yes, just to

15   confirm, Verwaltungs-und Privat-Bank AG is -- I'm referring

16   to it as VP Bank.

17          THE COURT:  Okay.

18          MR. ELSBERG:  And just to recap, Your Honor, the

19   four defendants that said we should have made a separate

20   motion rather than request in our opposition brief are,

21   number one, VP Bank, number two, Centrum, number three, LGT

22   Bank and, number four, LLB.

23          THE COURT:  Thank you.  Okay.  I have those in my

24   mind.

25          MR. ELSBERG:  Thank you, Your Honor.  So they say

Page 63

1    that we should have wasted time and we should have done the

2    separate motion, even though everybody knew exactly what was

3    going to happen on this motion and they put their arguments

4    about law service in their brief, their opening and their

5    reply brief.  So it's just -- I don't know why they would

6    ask to put in more paper except for delay.

7              On top of all that, Your Honor, in Fairfield III,

8    Judge Bernstein treated our opposition brief as a request

9    for alternative service.  And so it was very reasonable for

10   the liquidators and the defendants here to expect that the

11   same was going to happen this time around.  So Your Honor

12   should reject the Liechtenstein defendants' arguments, the

13   four defendants, that they were supposedly just shocked to

14   find out that we were requesting alternative service on this

15   motion.

16             But Your Honor, before I move off this point, I do

17   want to make something very clear, which is, Your Honor, I

18   do fully appreciate that there are situations where it would

19   make complete sense for a court to say you're making a

20   request for motion for the first time in your opposition

21   brief?  Forget it.  I'm not going to let you do that.  But,

22   Your Honor, I think this just isn't one of those situations

23   given the context that led up to it.

24             So Your Honor, now I'll switch to another category

25   of arguments that the six defendants make.  They all make

Page 64

1    arguments, Your Honor, concerning diligence.  So I'll start

2    with Arden's argument that the liquidators supposedly were

3    not diligent because the liquidators attempted mail service

4    on Arden at an incorrect address in New York rather than the

5    correct address in BVI.

6            But, Your Honor, the liquidators were diligent.

7    They prepared and served their complaint based on the

8    limited books and records that were available to them at the

9    time.  They relied on fund records, and it was reasonable

10   for them to rely on the fund records which reflected Arden's

11   contact information.

12           Now Arden says that the liquidators were required

13   to consult different sources to ascertain a different email

14   address.  But Your Honor, they don't cite any authority that

15   requires doing so in order for prior attempts at service to

16   be deemed reasonable.  And particularly in the circumstances

17   here, where you had liquidators, an insolvent entity, where

18   getting records was very difficult.

19           They were not held by the liquidators.  They were

20   often held by vendors who were located outside of the BVI.

21   So they did what was reasonable or one reasonable way to do

22   it, which the records showed, and they were supposed to show

23   who the correct entities were and their correct address.  So

24   the diligence argument about the wrong address should be

25   rejected.

Page 65

1           Your Honor, there's another diligence argument

2     that the six defendants make.  And this is the argument that

3     the liquidators should have attempted to effect foreign

4     service earlier.  That's what Arden and Private-Space say.

5     Or should have requested alternative service sooner.  That's

6     what the four Liechtenstein defendants say.

7           Arden says that the liquidators should have

8     attempted service, foreign service, after Arden's January

9     2017 motion to dismiss supposedly put the liquidators on

10    notice that the New York address was incorrect.  The other

11    five defendants say that the liquidators should have

12    attempted foreign service or requested alternative service.

13    And they say we should have done this after Fairfield I held

14    that the form selection clause authorizing mail service is

15    inapplicable here or right after Fairfield III was decided.

16          But there's a big problem with their argument,

17    Your Honor.  The settled orders that implemented Fairfield I

18    and Fairfield II, they were issued on April 15 of 2019.  And

19    those orders identified very specifically issues that were

20    to be briefed in the future.  They were to be briefed in the

21    future on motions to dismiss that were to be filed by the

22    defendants.

23          And one of the issues that was expressly reserved

24    with these motion to dismiss briefs was that the defendants

25    would file briefs on whether service had been properly

Page 66

1    effected.  And you can see that in the relevant settled

2    orders.  That's 10-3630, docket 1955, at pages 11 to 12, 10-

3    3635, docket 1957, at 11 to 12, and 10-3636, docket 1958, at

4    12.  So that was an issue, the service issue.  It had been

5    agreed future briefing by the defendants was how that was

6    going to be brought up.

7            Your Honor, it would have been a complete waste of

8    time and waste of the estate's limited resources to move for

9    alternative service or to try to effect service under

10   foreign law at a time when the liquidators did not know

11   which of those defendants, dozens and dozens of defendants

12   were actually going to contest service in the future when

13   the time came for the defendants to file their motions to

14   dismiss pursuant to those settled orders.

15           And, Your Honor, the efficiency and the

16   commonsense approach has been borne out by the way things

17   actually played out.  Once Fairfield III came out which

18   ruled on law firm service with respect to the representative

19   defendant, it resolves the service issue with respect to the

20   vast majority of the defendants.  They resisted at first.

21   But after resisting, the vast majority of defendants entered

22   into stipulations that obviated the need to reattempt

23   service.

24           So it was entirely reasonable for the liquidators

25   to act exactly as they did and to now ask for alternative

1    service as to those very few defendants who ended up

2    actually challenging the service.  And Judge Bernstein ruled

3    that it was reasonable for the liquidators to attempt mail

4    service in accordance with the subscription agreement.

5              Judge Bernstein also held, I'm paraphrasing here,

6    that the liquidators' decision to litigate the issue of

7    service after Fairfield I rather than proceed with the

8    costly and time-consuming process of service under The Hague

9    Convention did not signify a lack of due diligence.  That's

10   Fairfield III, 2020 WL 7345988, at *page 15.

11             So Your Honor, the bottom line is that it makes a

12   lot more sense than what the defendants say the liquidators

13   should have done, which is to waste resources.  So Your

14   Honor, the defendants' diligence argument based on supposed

15   delay and attention to reserve or to ask for alternative

16   service should be rejected.

17             So I'll move to another argument that is made by

18   Arden and Private-Space.  This is another form of diligence

19   argument and it also does not work.  Arden and Private-Space

20   point out that about a decade ago, when the liquidators

21   attempted to serve Arden and PS, the liquidators did not

22   also serve U.S. counsel.  What they say is that under

23   Fairfield III, you had to do both, and that the failure to

24   also serve U.S. counsel, in addition to attempting to serve

25   the entity, means that the liquidators did not act

Page 68

1    diligently.

2              But Your Honor, that is simply not what Fairfield

3    III says or implies.  In Fairfield III, Judge Bernstein

4    considered whether an attempt to timely serve by mail in

5    accordance with the procedures set forth in the long-form

6    agreement was sufficient to demonstrate due diligence.  And

7    he held that making such an attempt was in fact sufficient

8    to demonstrate due diligence.  That's at 2020 WL 7345988, at

9    15.

10             It also happens to be true after he said that

11   making the attempt is sufficient to demonstrate due

12   diligence, he also noted that the liquidators had also

13   attempted service on HSBC by serving their counsel by mail.

14   But Judge Bernstein did not suggest, he didn't imply that

15   such an effort to serve counsel by mail was necessary to

16   establish reasonableness or diligence.  Instead what he

17   held, and I'm quoting, is "The liquidators exercised due

18   diligence.  They attempted service in a timely manner

19   consistent with the subscription agreement."  And that's at

20   page 15 of the Westlaw cite.

21             So, Your Honor, Arden and Private-Space's

22   diligence argument based on not having served counsel in

23   addition to the entity about a decade ago should be

24   rejected.

25             Now I'll get to another one of the diligence

Page 69

1    arguments, and this is advanced by all six defendants, Your

2    Honor.  And this is the argument that the liquidators didn't

3    possess a subscription agreement when original service was

4    made.  So specifically, Your Honor, the six defendants say

5    that back in late 2010 when the liquidators served the

6    Liechtenstein defendants and in 2011 when the liquidators

7    served Arden and in 2012 when the liquidators served Private

8    Space, the liquidators did not possess the long-form

9    contracts authorizing mail service for LLB, VP Bank,

10   Centrum, Arden and Private-Space.

11          And they say the liquidators did not possess long-

12   form agreements for LGT except with respect to one of the

13   funds, the Sigma fund.  And all six of the defendants argue

14   that the lack of possession of the long-form agreement

15   supposedly demonstrates a failure to exercise reasonable

16   diligence.  But, Your Honor, that argument also doesn't

17   work.

18          In Fairfield III, Judge Bernstein considered

19   whether attempting to timely serve by mail in accordance

20   with the long-form procedures was sufficient to demonstrate

21   due diligence.  And as I mentioned a minute ago, he held

22   that it was sufficient to follow the procedures in the long

23   form.  And none of the defendants, none of the dispute that

24   the liquidators did in fact attempt to serve by mail in

25   2010, 2011 and 2012 in exactly the manner that Judge

Page 70

1    Bernstein found sufficient to show diligence.

2          Also, Your Honor, four out of the six, namely LGT,

3    VP Bank, Centrum and Private-Space, those four admit that

4    there are in fact long-form subscription agreements.  Now

5    it's true that some of those, some of those the liquidators

6    obtained after service.  But there's no question that there

7    are long-form subscription agreements that they are party

8    to.

9          Now the fifth defendant, LLB, put in briefings

10   that it does not deny that it was party to a long-form

11   agreement.  It does not say that it was a party.  But their

12   brief does not deny that they were a party to a long-form

13   agreement.  And LLB also does not dispute that the

14   liquidators possessed a short-form agreement for Sentry and

15   Sigma.  Those short-form agreements support the conclusion

16   that the corresponding long-form agreements were in place

17   for LLB because the fund's practice after 2003 consistently

18   was to use these standardized long-form and short-form

19   agreements.

20         The sixth defendant, Your Honor, Arden, does not

21   dispute that it received redemption payments after 2003 when

22   the funds had the practice of consistently using the long-

23   form agreements with the form selection clause.  And that's

24   exactly what the liquidators very reasonably believed to be

25   the case at the time they served LGT back in 2010.  And

Page 71

1    here's why.  In determining that mail service was authorized

2    on all of the defendants, including these six defendants,

3    the liquidators reasonably relied on their understanding

4    that after 2003, this was the consistent practice.

5           The consistent practice of all the funds was to

6    make redemption payments pursuant to subscription agreements

7    that contained language allowing mail service.  That I don't

8    think is disputed, that this was their consistent practice.

9    And that's in the fifth declaration at paragraph seven which

10   is docket 3806.

11          And as explained, Your Honor, in the Chris

12   declaration in paragraphs three and seven, the liquidators

13   were in a tough spot back then when they were trying to do

14   original service.  It was not easy.  They had very limited

15   access, Your Honor, to fund documents.  And this is because

16   the fund records were very often kept by third-party

17   vendors.  And most of those vendors, Your Honor, were

18   located outside of the BVI.  In fact, we're still battling.

19   The liquidators are still battling to try to get records

20   from various sources.

21          So back when the Madoff scheme collapsed and the

22   liquidators had to try to get their hands around this and

23   start serving complaints, what they did is very simply, with

24   incomplete information that was outside of their control,

25   they relied on the funds' undisputed tactics to use the

Page 72

1    long-form agreements after 2003.  It was a very practical

2    and reasonable approach.

3             And, Your Honor, I would submit that the

4    defendants' argument that the liquidators could have

5    exercised reasonable diligence only if they physically

6    possessed a subscription agreement for each defendant at the

7    time of service in 2010 is just -- it's not realistic.  It's

8    just not responsive to the actual circumstances of what

9    should be reasonable in this in this particular litigation.

10   So the Court should reject the argument based on possession

11   of long-form agreements.

12            There's another argument about subscription

13   agreement that I'll address now and this is the argument

14   that Private-Space makes.  The argument that they make is

15   that the liquidators could not have relied on subscription

16   agreement to attempt mail service on them because Private-

17   Space itself, Private-Space itself did not sign any such

18   agreement.

19            But that argument is very weak because they

20   concede that long-form agreements were in fact signed by

21   Private-Space's custodian, HSBC SFL.  You can see that in

22   Private-Space's reply brief at page six.  That's docket

23   3816.  They admit it.  They were signed by their custodian.

24   And that's critical, Your Honor, because paragraph 26 of the

25   long-form agreement for Private-Space, docket 3809-13, says

Page 73

1  two very important things.  One, the custodian has authority

2  to bind the beneficial shareholder and, number two, the

3  subscription agreements are binding on the beneficial

4  shareholder.  That's docket 3809-13, paragraph 27.

5          So the liquidators were obviously reasonable in

6  relying on paragraph 27 and attempting mail service on

7  beneficial shareholders like Private-Space.  The fact that

8  they didn't with their own pen sign it is irrelevant.

9          Now we'll address, Your Honor, another argument

10 that Private-Space uniquely makes.  None of the other

11 defendants makes this argument and this argument also fails.

12 What Private-Space argues is that a showing of actual notice

13 standing alone, standing alone is insufficient to defeat a

14 Rule 12(b)(5) motion to dismiss.  And what they do, Your

15 Honor -- and this is really a diversionary tactic -- is they

16 cite a litany of cases finding that actual notice alone is

17 not dispositive.  But that's a strawman, Your Honor, because

18 the liquidators are not arguing that actual notice in

19 isolation warrants alternative service.

20         The alternative service inquiry, Your Honor, is

21 very flexible and it allows for consideration of the facts

22 and circumstances of the particular case.  And here there's

23 not just actual notice.  But here the plaintiffs are the

24 liquidators of insolvent funds.  There was an attempt to

25 timely serve by mail, an attempt made in reasonable reliance

Page 74

1    on a contractual agreement, the long-form agreement.  The

2    defendants had very early notice of this case and, as we

3    know from what I said earlier, they stipulated.  They

4    stipulated.  They passed the contact test that Judge

5    Bernstein set out.  And with this group of factors, Your

6    Honor, there is simply no benefit to jumping through hoops

7    at this point to accomplish service 11 years into the

8    litigation.  It's just looking to waste time.

9            And Your Honor doesn't have to worry that if you -

10   - if you go the liquidators' way on this, that somehow

11   you're going to be opening up the floodgates and it's just

12   going to become too easy.  Everyone is going to be able to

13   come in and say, oh, there was actual notice.  And so I can

14   serve.

15           The constellation of facts that we have here that

16   I just went through is not likely to present itself in

17   another case.  And so there's no floodgate issue here.

18           On top of that, Your Honor, Judge Bernstein

19   already found in Fairfield III that actual notice showed

20   that there's no prejudice to defendants from alternative

21   service.  He found that actual notice could weigh against

22   requiring an insolvent party to take on the costs and delay

23   of The Hague Convention.  And that's Fairfield III, 2020 WL

24   7345988, at *page 13 and 15.  And that's also docket 3062.

25   So, Your Honor, Private-Space's argument based on actual

Page 75

1    notice should be rejected.

2         I'll move now, Your Honor, to address another

3    argument that five of the defendants make.  The five

4    defendants are LGT, LLB, VP Bank, Centrum and Arden.  This

5    is an argument that gets them nowhere.  Specifically, what

6    they argue, Your Honor, is that the liquidators should have

7    served in accordance with foreign law, so under The Hague

8    Convention for Arden and under Liechtenstein law for the

9    four Liechtenstein defendants.  And they say that the

10   liquidators should have done that supposedly because viewed

11   in isolation from the other defendants, service in those

12   matters wouldn't be very expensive or time-consuming.

13        But again, Your Honor, the defendants are being

14   unrealistic.  They're just kind of closing their eyes to the

15   realities of this case where there's a liquidator dealing

16   not with just one or two defendants, but with dozens and

17   dozens.

18        Your Honor, Judge Bernstein already found that the

19   issue of cost in the adversary proceedings is, in his words,

20   "particularly compelling."  And he found the cost issue

21   particularly compelling because of the funds' insolvency and

22   its duty to conserve estate resources so that the

23   stakeholders can get paid.  And Judge Bernstein accepted our

24   affidavit showing that it will cost $272,441 to serve all

25   123 Swiss defendants in accordance with The Hague

Page 76

1    Convention.  That's an average, Your Honor, of $2,214 per

2    defendant.  That's in Fairfield III at *page 13.

3            Here our affidavit shows that it would cost

4    approximately $49,000 to serve the four Liechtenstein

5    defendants, which is an average of about $12,250 per day.

6    That's a lot more than what it would -- than what Judge

7    Bernstein already found to be too much.  And the same goes

8    for the other defendants.  The amount that it would cost is

9    generally higher than the per defendant cost that was before

10   Judge Bernstein.

11           But on top of that, even putting aside if it would

12   -- if it would cost less, I think one of the defendants say

13   -- maybe a Morocco defendants says it would only cost about

14   $1,000 to do this.

15           THE COURT:  I thought he said five.  But I could

16   be corrected.

17           MR. ELSBERG:  But let's assume it's $5,000, it's

18   $1,000.  I would even say it's 50 cents.  By the way, I

19   think it's Arden that ay have said $1,000.

20           THE COURT:  Okay.

21           MR. ELSBERG:  Whatever the number $1,000, $5,000,

22   it would take -- according to the Liechtenstein defendants,

23   it would take two months to serve in Liechtenstein.  Arden

24   says it would take four months to serve in the BVI.  The

25   liquidators say in both cases it would take longer.

1          But Your Honor, even if they're right about the

2     number of months, a delay of months at this stage would be

3     prejudicial.  Discovery is starting and we're looking to

4     complete briefing on the remaining motion to dismiss issues.

5     And a delay of months would put these defendants on a

6     completely different timetable than other defendants,

7     including the dozens of other defendants in 03635 and 3636

8     who have stipulated to be bound by Fairfield III's service

9     decision.

10          It just makes no sense, no sense to cause delay

11     and put them on a different track, particularly since

12     requiring the liquidators to undertake these costs now would

13     serve absolutely no purpose, given that the liquidators

14     already served by mail in a reasonable reliance on

15     subscription agreements and the defendants have had notice

16     of this action for over a decade.  They've been in regular

17     contact.  The contact test is satisfied.  So Your Honor

18     should reject their argument about the cost and time to

19     serve.

20          Then we get into another floodgates argument.  The

21     Liechtenstein defendants argue that service on U.S. counsel

22     is almost always going to be cheaper than international

23     service.  But again, as I mentioned earlier, this -- the

24     constellation of factors that are present in this case are

25     not likely to be present in another case, including the

Page 78

1    liquidators of an insolvent estate, the number of

2    defendants, the fact that they've known about the case very

3    early and have had counsel.  There's just no reason to do it

4    again.

5         So now I'll move to another argument that the four

6    Liechtenstein defendants make that really doesn't hold any

7    water.  And this is their argument about comity.  What they

8    say is that Fairfield III somehow doesn't apply here because

9    Fairfield III involved The Hague Convention and didn't

10   address, they say, the issue of comity with respect to

11   countries like Liechtenstein.

12        But the problem for the four defendants here is

13   they can't hide behind foreign law and policy given the

14   rulings that have already happened here, Your Honor.  As

15   Your Honor already indicated, the issue here on this motion

16   is whether service on U.S. counsel is warranted based on a

17   specific defendant's contacts with U.S. counsel.  And in

18   Fairfield III, Judge Bernstein held that service on U.S.

19   counsel is appropriate.  And here's the key, Your Honor.

20   It's appropriate -- service on U.S. counsel is appropriate

21   regardless, regardless of foreign law limitations.  And the

22   reason is service on U.S. counsel is not on foreign soil.

23   That's Fairfield III, 2020 WL 7345988, at *page 12.

24        And here's another critical point, Your Honor.

25   The Liechtenstein defendants give no good reason why

1    Liechtenstein criminal law should apply extraterritorially

2    here in the United States to bar a form of service that

3    occurs where, here in the territorial jurisdiction of the

4    United States and is permitted under the laws of the United

5    States.  So their argument should fail for that reason

6    alone.

7               But on top of that, I need to address an argument

8    they make that I think is a little off-base.  They argue

9    that Judge Bernstein supposedly didn't really consider

10   comity.  And they say he didn't consider it why?  Because

11   there was only one paragraph, one paragraph in HSBC's --

12   HSBC Suisse's brief that address comity.  But that is not an

13   entirely complete statement.

14              The reality is, Your Honor, the very paragraph in

15   the HSBC Suisse's brief that they point to relied on and

16   cited to the declaration of Professor NicholasJeanDon.

17   That's docket 2903, at 36.  That's the brief which cites to

18   the professor's declaration.  The declaration is docket

19   2905, and there are seven pages to look at which span

20   paragraphs 10 through 22.

21              And in those 13 paragraphs spanning seven pages,

22   the professor focuses right on -- he's laser focused on

23   comity.  So for example, in those seven pages, he argued

24   that allowing service on Swiss soil would be a "severe

25   breach and violation" of Switzerland's "sovereignty" and its

Page 80

1    "public policy" and its "core values" and "the very core of

2    Swiss legal order."  Again that's docket 2905, paragraphs 10

3    to 22.  So there wasn't just one paragraph.

4            Judge Bernstein was presented with a well-

5    developed comity argument, and he held that it was not any

6    obstacle to serving a U.S. lawyer on U.S. soil, regardless

7    of the fact, Your Honor, that the U.S. lawyer was going to

8    need to transmit the papers to a client located on foreign

9    soil.  And again that's exactly what is allowed under U.S.

10   law applicable to territory in the U.S. jurisdiction.

11           So the same reason that Judge Bernstein applied

12   applies with equal force to the Liechtenstein defendants

13   here, and so Your Honor should reject their argument.

14           Now I'll move to another argument.  This is one

15   that's made by Arden.  Arden argues that the liquidators

16   supposedly flunk the good cause standard.  Now to begin

17   with, the good cause standard is simply inapplicable.  The

18   good cause standard comes from the text of FRCP 4(m), like

19   mother.  But Rule 4(m), like mother, is not applicable to

20   requests for service on foreign defendants.  Instead Rule

21   4(f) which is titled "Serving an Individual in a Foreign

22   Country" is the rule under which the liquidators are seeking

23   alternative service and have attempted service abroad.

24           And again, there's simply no good cause standard

25   in Rule 4(f) and that alone is a reason to reject Arden's

Page 81

1    good cause argument.

2             But in any event, Your Honor, if the Rule 4(m)

3    good cause standard hypothetically did apply, it's still

4    satisfied here.  The liquidators' reasonable efforts and

5    diligence far outweigh any prejudice to Arden.  As Judge

6    Bernstein wrote in Fairfield III, the good cause standard is

7    a comparable analysis to that required under the flexible

8    due diligence standard.  That's at 2020 WL 7345988 at *13,

9    note 21.

10            And the liquidators have been very diligent in

11   attempting to effect service.  They've done their best.  I

12   described it earlier, while being hampered by the need to

13   try to decipher limited fund records and to try to get these

14   records from other sources.  And it's important to note,

15   Your Honor, that these circumstances, the documents, it's

16   literally outside the liquidators' control.  They've done

17   the best that they can.

18            In any event, Your Honor, even if the good cause

19   standard did apply and even if we didn't satisfy it, a

20   discretionary extension would be appropriate.

21            Under Rule 4(m), like mother, the Court can extent

22   time even without good cause.  And here a discretionary

23   extension of cause is warranted because Arden had actual

24   notice of the claims from the get-go.  They have identified

25   zero prejudice, and because of the extraordinary

Page 82

1    circumstances of this litigation where there are dozens and

2    dozens of defendants, liquidators with limited resources and

3    at a very substantial information disadvantage.

4              So Your Honor, that is the argument that I have

5    with respect to all of the six defendants except for HSBC.

6    I don't know if Your Honor wants to hear from HSBC on this

7    motion or not.  I can --

8              THE COURT:  Because HSBC does not have a

9    representative in court.

10             MR. ELSBERG:  Correct, Your Honor.

11             THE COURT:  Very good.  Are you complete with your

12   arguments?

13             MR. ELSBERG:  Except for addressing Cleary's

14   motion, which is not on behalf of any entity, yes.

15             THE COURT:  Go ahead and argue that then.

16             MR. ELSBERG:  Okay.  So Your Honor, first of all,

17   Cleary's motion, which refers to HSBC, but they say they

18   don't represent HSBC, that motion should be denied because

19   they're seeking dismissal for what they say is a fake entity

20   that they don't represent.

21             And at the July 28, '21 conference, the recent

22   conference, Your Honor, my interpretation was that you

23   stated pretty clearly and forcefully that counsel cannot

24   seek dismissal on behalf of entities that counsel asserts

25   are fake.  That's at pages 96 to 99 of the transcript, which

1    is docket 971.

2            And as I recall it, Your Honor, counsel for

3    certain entities that do exist told Your Honor that he

4    should be allowed to make arguments on behalf of a fake

5    entity that does not exist, and he said that he should be

6    allowed to do so because he does represent other entities

7    that have an interest in avoiding some alleged prejudice

8    that he said could result if the fake entity is dismissed or

9    is not dismissed from the case.  That's at transcript 98,

10   lines 12 to 24.

11           And my recollection is that Your Honor rejected

12   that argument and said there's not going to be any motion to

13   dismiss granted based on insufficient service with respect

14   to any fake entities.  And that's at transcript 98, lines 12

15   to 24 once again.

16           I believe what's happening now is Cleary Gottlieb

17   is trying to do the exact thing that -- at least my

18   interpretation was they're trying to do what Your Honor

19   forbade by saying that they're appearing on behalf of not

20   the named defendant, but on behalf of other entities,

21   whether it's other HSBC entities --

22           THE COURT:  Mr. Elsberg, I'm going to cut you off

23   because I think you're trying to interpret something I said.

24   And I will interpret that myself to Cleary.

25           MR. ELSBERG:  Yes, Your Honor.

1              THE COURT:  And I will be clearer than I was

2     before.

3              MR. ELSBERG:  Yes, Your Honor.  And that's why I

4     was saying it's just my interpretation.  I'm not trying to

5     say that --

6              THE COURT:  That's fine.  That's fine.

7              MR. ELSBERG:  So anyway, my interpretation

8     obviously is not the one that controls here.  so anyway, to

9     me, they appear to be doing something similar to what

10    happened last time and was prohibited.  They also say that

11    they have independent standing because they were served with

12    discovery requests.  But the cases that they cite are cases

13    where amicus briefs were submitted.  The cases didn't allow

14    the third party to file motions, which is what has happened

15    here.

16             So I would suggest that the motions to dismiss

17    based on service should be denied for the same reason, at

18    least as I understood, Your Honor articulated the last time

19    around.  But anyway, Your Honor, there's another reason that

20    Cleary's motion should be denied, denied without prejudice

21    to give the parties some time, and this is what I'll explain

22    now.

23             Cleary's motion is -- and it goes to what I think

24    is a sensible way for everyone to work this out.  Cleary's

25    motion is premature because it's outside the scope of the

1   briefing that this Court ordered.  Cleary's motion primarily

2   --

3          THE COURT:  Excuse me.  you're talking about --

4   you're talking about the very narrow issue of the HSBC?

5          MR. ELSBERG:  Yes.  I'm talking about HSBC.

6          THE COURT:  Okay.

7          MR. ELSBERG:  Right now I'm talking only about

8   Cleary's brief which refers to HSBC which they say is not a

9   legal entity, but rather a brand name.

10          THE COURT:  Right.  Okay.

11          MR. ELSBERG:  So their motion primarily addresses

12   the proper party issue.  And this is obvious.  You can just

13   look at the preliminary statement, the first few paragraphs

14   at the table of contents.  Their lead argument, point one,

15   argues that the main HSBC does not identify a legal entity

16   capable of being sued as a party.  Point two of their brief

17   argues that Cleary doesn't know the identity of the proper

18   party.

19          But here's the thing, Your Honor.  The parties

20   agreed, and Judge Bernstein so ordered that the proper party

21   issue is separate from the service issue.  And that's in

22   Judge Bernstein's February 26, 2021 so ordered stipulation

23   which is docket 519.  And what that doe is it has a list of

24   issues that will briefed and future motion to be dismissed

25   and the service item is listed separately.

Page 86

1          It's defined as whether the Court should dismiss

2     claims for failure to properly effect service of process.

3     And then the proper party issue is listed separately and

4     defined as whether any of the claims must be dismissed

5     because the defendant is not a proper party to be sued on

6     the asserted claims.  And that list, which has been

7     separate, is in the whereas clause on page 12 and in

8     paragraph 2.1 on page 15.

9          So my only point there is that the parties and

10    Judge Bernstein had identified distinct issues and service

11    was distinct from proper party.  And I understand Your

12    Honor, and again, just my interpretation, I understood Your

13    Honor at the April 21 conference to direct the present

14    motion should be directed to the service issue and more

15    specifically on the issue of whether law firm service

16    satisfied the contact test that Judge Bernstein set forth in

17    his February 22, '21 order which is docket 3076.

18          And I have in mind some statements you made when I

19    think you said that you'd want to hear about the law firm

20    and that Judge Bernstein had been clear that the proper

21    thing to brief is law firm service.  And those are at page

22    37 of the transcript, docket 3809-1.

23          But again, you know, Your Honor, I'm not trying to

24    say that I heard you perfectly or that you issued any

25    ruling.  it's just my interpretation --

1              THE COURT:  Hold on.  Your argument is actually

2      clearing some things up for me too.  So thank you.

3              MR. ELSBERG:  Okay.  So what I'm -- I'm making a

4      fairly modest point here which is that --

5              THE COURT:  Yeah.  I hear you.  I hear you.

6              MR. ELSBERG:  -- which is that it's premature for

7      Cleary to be advancing a proper party argument, which is the

8      main thrust of their briefing.  And so a reasonable thing to

9      do would be to deny their premature motion now without --

10     without prejudice and then in the future they'll have the

11     chance to make any appropriate proper party arguments in the

12     future round of briefing, if one is even needed after the

13     fact record has been more fully developed.

14             And doing it that way, Your Honor, would really be

15     practical and efficient.  I'm basically saying it may be

16     required by prior orders.  But even more than that, even

17     more than that, what I'm saying is it's just the right,

18     good, efficient thing to do because if it's dismissed

19     without prejudice --

20             THE COURT:  Right.

21             MR. ELSBERG:  -- it's going to give the parties

22     time to determine who is the right party, and it could

23     completely moot any need for further motion practice on it.

24     And I can't promise Your Honor.  But what I can say is I do

25     believe that there's a pretty good chance that the parties

Page 88

1    are going to end up agreeing on who is the proper party

2    because --

3              THE COURT:  Okay.

4              MR. ELSBERG:  -- because we should be able to

5    figure out the correct recipient of the redemption.  And

6    even if we can't figure it out, at least the record will be

7    better developed.  And just to give you where we are now and

8    why I think we're very close to figuring it out is after we

9    got information from Cleary because of the subpoena, we made

10   lots of phone calls and emails and we've been working

11   diligently.  And we've made good progress because Cleary has

12   now told the liquidators that HSBC Bank USA NA, which I'll

13   refer to as HBUS, does have records concerning the at-issue

14   redemptions.

15             THE COURT:  Okay.

16             MR. ELSBERG:  So that's great.  We made progress.

17             THE COURT:  All right.

18             MR. ELSBERG:  And then through the subpoena, when

19   we subpoenaed HBUS, they said that they do have an account.

20   They do have an account.  But they say it's an account they

21   hold, but they don't own the account.  And they said instead

22   the at-issue transfers, the redemptions were put into an

23   account held at HBUS that belongs to Citco.

24             So we then went to Citco's counsel, Paul Weiss,

25   and we said, hey guys, HBUS says you're the one who received

1   the redemption.  They're just holding it in your account.

2   Citco's counsel, Paul Weiss, then pointed the finger back at

3   HBUS and said, no, no, HBUS is actually the beneficiary of

4   the at-issue redemption.

5            THE COURT:  Okay.

6            MR. ELSBERG:  So they're going like --

7            THE COURT:  You --

8            MR. ELSBERG:  And I just think -- I'll finish up.

9   I just think that if we had a little more time to talk to

10  Paul Weiss and Cleary, we're going to nail this down which

11  is why I think dismissing without prejudice and allowing the

12  parties to try to work it out before the proper party

13  motion, which is really the motion where this should have

14  been done anyway, is the sensible way to go.

15           THE COURT:  Very good.  And Mr. Nagless (ph) is on

16  the Zoom call, and I'm sure he would want to chime in with

17  what you have to say.  So I don't need to have any more

18  argument on that one.  Now I know I'm going to give you

19  rebuttal.  But I need to take a quick break.  We're going to

20  take a ten-minute break, and I'll be right back.

21           (Off the record.)

22           THE COURT:  Very good.  Is everyone back on the

23  phone, back on?  Mr. --

24           MR. LAMBERT:  We're on, Your Honor.

25           THE COURT:  Very good.  Mr. Munno, you seem to be

Page 90

1     eager.

2             MR. MUNNO:  I am eager.

3             THE COURT:  Okay.

4             MR. MUNNO: Thank you, Your Honor.  So let me

5     start. There are several points.  The first point that Mr.

6     Elsberg raised regarding that we argue that there was

7     improper service under foreign law, that is not the argument

8     Arden has made.  That's a sleight of hand.  Others may have

9     made that argument, not Arden.  And this is why.

10            What the plaintiffs have said all along until they

11    filed their opposition in July of this year was that service

12    was proper on Arden International Capital, Ltd. because it

13    is a U.S. corporation and because supposedly there was a

14    subscription agreement that said that you could serve by

15    mail.  That's the argument they made.  And what we have said

16    in response to that argument is, no, Arden International

17    Capital, Ltd. is not a U.S. corporation and, no, the

18    subscription agreement does not provide for service by mail.

19            We attached the subscription agreement in our

20    motion to dismiss in January 2017.  It's attached to Monique

21    Adams' declaration as exhibit one and it's ECF 237.  That's

22    the argument we made.  That's the argument, not that there

23    was improper service under foreign law.

24            What that told them in 2017 was that they were

25    wrong about some supposed nonexistent subscription agreement

1    with a clause saying you could serve by mail and that they

2    were wrong in thinking that somehow Arden International

3    Capital, Ltd. was a U.S. corporation, and we attached

4    documents showing that it was not a U.S. corporation.  They

5    had all that evidence.  We gave them evidence.  And since

6    that time, January of 2017 --

7            THE COURT:  Excuse me.  You filed it in 2017, and

8    you represented them at that time?

9            MR. MUNNO:  That's correct.

10           THE COURT:  Okay.

11           MR. MUNNO:  That's correct, which brings me to the

12   second point, which is that what they say in their

13   opposition papers is that AIC "has actively litigated for a

14   decade through capable counsel."  That's in their opposition

15   brief at 13.  They also say that AIC "participated through

16   U.S. counsel in this action since at least 2011."  Well,

17   those statements are not correct.  They are not correct.

18   What we said in our --

19           THE COURT:  I can't resist.  I must ask, about

20   competent counsel or timeframe?

21           MR. MUNNO:  Touché.  Counsel is pretty competent.

22           THE COURT:  Okay.

23           MR. MUNNO:  Service is not right.  So what we said

24   in our stipulation was that we have monitored the docket

25   activity and developments and from time to time reported

Page 92

1    about the status of the litigation.  We didn't actively

2    participate.  We first started to participate in 2017 solely

3    to address service of process and personal jurisdiction.

4    And those are the only things we've done, and we were very

5    clear in our papers.  We said we're making a limited

6    appearance solely, solely for service and jurisdiction.

7              So there hasn't been active litigation.  They

8    don't meet the contact test as regards Arden International

9    Capital, Ltd. and its counsel.

10             They also say that, well, we had limited books and

11   records.  But they don't attach any of those limited books

12   and records that supposedly put them to the -- allowed them

13   to believe that somehow Arden International Capital was a

14   U.S. corporation or that it would have been proper to send

15   by mail to an address at an office building where they never

16   have been.  They don't -- they don't attach that.  They just

17   make this general statement.  But they don't attach any

18   evidence that supports their supposed belief as regards

19   Arden International Capital, Ltd.

20             They also say that there was some consistent

21   practice that led them to believe that somehow or another

22   there may have been some subscription agreement, even though

23   we attached in 2017 the subscription agreement we entered

24   into in 1993.  And we obviously closed down the fund in

25   1995.  So it's hard to understand how there would have been

Page 93

1   any so-called long-form subscription agreement or indeed any

2   subsequent purchases of interest in the fund at that time.

3           They also say that it's not disputed that they

4   used reasonable efforts.  Well, we certainly disagree with

5   that.  And they try to suggest that, well, Rule 4(m) doesn't

6   apply -- 4(f).  But they weren't trying to serve Arden

7   International Capital under that rule.  They're saying that

8   it's a U.S. corporation, and we can serve you by mail

9   because the subscription agreement said so.  Both of those

10  things are false.  They knew it was false.  They were given

11  evidence that it was false.  And of four years-plus, they've

12  done nothing.

13          Now they say that we say that, well, it would only

14  cost you $1,000 and take up four months.  Well, we don't say

15  that.  That's what they said.  We didn't say that.  They

16  said it.  What we said was, okay, well if that's so, then

17  why didn't you do it for the past four years.  So what we

18  were pointing -- we were pointing that out.

19          We pointed out in our reply brief at page eight,

20  we said that, unlike Fairfield III, plaintiffs represent

21  that it will cost approximately $1,000 and take four months

22  at the most to complete service.  That's what they say in

23  their opposition brief at 12, citing Mr. Molton's

24  declaration of July 26th at paragraph 16 and exhibit 10.

25          Now so we're not the ones that said that.  They

Page 94

1    said that.  We point that out to Your Honor simply to say,

2    well, that's not a reasonable excuse.  The point -- and they

3    haven't met the reasonable diligence standard.  They did

4    nothing, absolutely nothing to effect service, knowing full

5    well, at least since January 2017, that Arden International

6    Capital, Ltd. is not a U.S. corporation and did not have a

7    subscription agreement allowing for service by mail.

8    They've done nothing.  And that is inexcusable, and that's

9    why this motion should be granted.

10            THE COURT:  Thank you.  Mr. Morris?

11            MR. MORRIS:  Yes.  Thank you, Your Honor.  The

12   first thing I wanted to point out was that Fairfield III

13   does not apply here, despite the quotations that the

14   liquidators brought from the judge's order.  And I thought I

15   should focus on that.  It's docket 3076, which was Judge

16   Bernstein's implementing order on Fairfield III.

17            He is clear that it applies "equally to all Swiss

18   defendants" and that it authorizes the liquidators to serve

19   process on the other Swiss defendants by mailing process to

20   the U.S. counsel.  And he is very clear that he was not

21   ruling on the non-Swiss defendants.  And so the aspersions

22   that are being cast I think are not appropriate based on

23   Judge Bernstein's order.

24            The second point I'd like to make about cost, the

25   liquidator did not respond in their argument to our point

Page 95

1    that the costs are entirely -- of translation are entirely

2    self-inflicted by the fact of their choices of they made on

3    how to frame the case.  And also there was -- this is one of

4    the examples of how their failure to make a motion is

5    prejudicial.

6              There was no discovery on their estimate because

7    it came in seven days before our reply papers were due.  And

8    there was no change to examine them, their process server on

9    the time estimates as well.  The other point on cost is

10   there's an irony here that the cost of translation is far

11   outweighed by the cost of these service motions.  This would

12   have been -- and the liquidators' oppositions to them.

13             The liquidator had under its control whether we're

14   having this fight by simply serving under the letters

15   rogatory in Liechtenstein.  This is not the kind of case in

16   which there's a country that is refusing service, as there

17   are countries that have that relationship with the United

18   States.  So the cost here is a red herring argument because

19   the costs here are being created by the liquidator.

20             On the question of motion, whether a motion is

21   required, I just would refer the Court to the DC Circuit

22   case we cited in our reply brief, Freedom Watch, and I think

23   it's 766 F.3d 74, which addresses this issue and requires a

24   formal motion.

25             Let me talk though more substantively on why

1    service on counsel is not appropriate.  And there's really

2    two issues.  Is it generally appropriate on counsel when the

3    foreign country at issue has reasonable procedures, and two,

4    is it appropriate here.

5           Generally, where the home country has reasonable

6    procedures, comity requires that those procedures be

7    followed.  It's how the United States maintains good

8    relations with other countries and expects the same results

9    when our companies are sued abroad.  And that of course

10   would not apply if the other country were uncooperative.

11   But that's not the case here.

12          Service on counsel discourages foreign entities

13   from retaining U.S. counsel, discourages them from

14   consulting with U.S. counsel and discourages them from

15   cooperating with U.S. litigation because the result of

16   cooperating is, in the liquidators' view, you lose your

17   right to have service.

18          The procedures followed here resulted in dismissal

19   of many cases which would not have -- which would not have

20   occurred had there not been a cooperation with the foreign

21   counsel.  And the -- establishing a penalty basically for a

22   foreign company that does the right thing and hires U.S.

23   counsel if there's U.S. litigation, that they cannot rely on

24   their home country service process is not good policy and

25   it's not fair.

Page 97

1          The liquidators' argument that this is not service

2     in a foreign country is -- well, is fallacious.  The purpose

3     of sending service to U.S. counsel is for them to convey it

4     to the foreign country.  And it may be that under U.S. law,

5     service is complete on delivery to the U.S. lawyer.  But the

6     whole purpose of that delivery is for the U.S. lawyer to

7     convey it to the foreign country.  And so it's -- that

8     federal circuit case that I mentioned before addresses that

9     point as well.

10          We quote it on page 17 of our reply brief, that

11     the -- everybody knows that the purpose of delivery of the

12     summons and complaint to the U.S. counsel is going to be for

13     it to be delivered by U.S. counsel to the foreign country.

14     So it's a little disingenuous to say the foreign country's

15     rules are not impacted at all.

16          And that points out the difficult position that

17     service on U.S. counsel puts the U.S. lawyers.  They're

18     being asked to do something that their client and their

19     client's government thinks is not appropriate.  And it puts

20     the client in a hard position because now they're going to

21     be -- they would be participating in a lawsuit for which

22     they have not been properly served in their country's view.

23     And it puts the lawyer in a very difficult position because

24     they're being asked to cooperate in an act that is not

25     proper under their client's -- the law applicable to their

Page 98

1      client.

2                      And all of this in a case where there is, and

3      there has been a perfectly reasonable solution that was

4      known to the liquidators since 2012 when we told them about

5      the letters rogatory in a formal objection in a statement

6      from Dr. Hoch and was known to them in Fairfield I and in

7      Fairfield III.  And there's just no good reason for them not

8      to have acted to avoid putting the Court in this position

9      and avoid putting counsel in this position and avoid putting

10     the liquidators -- the defendants in this position.

11                     And finally the liquidators also -- the result of

12     this -- of service on counsel may well be a judgment, if the

13     case goes in their favor, that's going to be unenforceable

14     in Liechtenstein for failure of service.  And that's where

15     VP Bank is.  And they're not here.

16                     And it would be a colossal waste of efforts to go

17     through this process only to have this result.  And I

18     understand that's the liquidators' problem.  But when we're

19     weighing good faith efforts and reasonableness of choices an

20     efficiency, I would urge the Court to take that into account

21     as well.

22                     THE COURT:  Thank you.

23                     MR. MORRIS:  And I thank you for your patience.

24                     THE COURT:  Very good.  Mr. Lambert?  You're on

25     mute.  You're on mute.

```
 1              MR. LAMBERT:  Sorry.  Yeah.  I just want --

 2              THE COURT:  That's fine.  We all do it.

 3              MR. LAMBERT:  Yeah.  We've all done it.  Right.  I

 4    just want to address one point that Mr. Elsberg raised.  It

 5    goes to our argument about the lack of diligence that the

 6    liquidators showed when they made that one abortive attempt

 7    to serve my client back in 2012.  And that is the argument

 8    that I made, that Private-Space did not itself ever sign a

 9    subscription agreement, long-form or short-form.  Any

10    subscription agreement that was signed on its behalf was

11    signed by its custodian, HSBC Securities Services

12    (Luxembourg).

13              Mr. Elsberg pointed out that my argument is a

14    fallacious one because there's a provision in the

15    subscription agreements whereby the subscriber is

16    representing that he's authorized to act on behalf of the

17    beneficial owner and that the beneficial owner is bound by

18    the agreement.  We're not contesting that by HSBC signing

19    this agreement, they bound us to this agreement.  We

20    subscribed to the shares in the funds.  There's no question

21    about that.  And we did it by having our subscribers sign

22    the subscription agreement.

23              But the subscription agreement provision which

24    deals with service of process by mail says, and it's in

25    paragraph 19 of this long-form subscription agreement, it
```

Page 100

1    reads, and I'm quoting, "Subscriber consents to the service

2    of process out of any New York court in any proceeding by

3    the mailing of copies thereof by certified or registered

4    mail, return-receipt requested, addressed to subscriber at

5    the address of subscriber then appearing on the fund's

6    records."

7              I mean, the Monaco address to which they sent

8    service, it's never been alleged that that's an address of a

9    subscriber, and I submit that there's no provision in this

10   agreement which authorizes mail service on a beneficiary,

11   even if the beneficiary is bound by this agreement.

12             And so I think that the -- so the answer to -- the

13   point I'm making here is that they weren't entitled to rely

14   on a consent to service provision in a subscription

15   agreement because Private-Space never signed on.  You have

16   to recognize, Your Honor, that these are the fund's forms of

17   documents, and under the well-known canon of construction,

18   any ambiguity in these agreements gets resolved against the

19   drafter.

20             And if they wanted to have these provisions allow

21   for service on a beneficial owner, it should have so

22   specified, and it doesn't.  Thank you, Your Honor. I

23   appreciate your patience in listening to us.

24             THE COURT:  Thank you.  Mr. Hauser?

25             MR. HAUSER:  Yes.  Thank you, Your Honor.  Just

Page 101

1    very briefly, first, we join a hundred percent in Mr.

2    Morris' arguments representing the other two Liechtenstein

3    defendants.  Just one quick point.  Counsel for the

4    liquidators said that we don't dispute this supposed

5    consistent practice about having people sign the long-form

6    agreements.

7            We do dispute that.  They've got conclusory -- we

8    dispute that they have submitted sufficient evidence to show

9    that there was any such consistent practice.  They have a

10   conclusory, we would suggest speculative statement in one of

11   their declarations.  There's no indication that that

12   declaration was made from personal firsthand knowledge.

13   They've submitted no documentary evidence to back this up.

14           We do dispute that there is evidence in front of

15   the Court sufficient to establish that there was a

16   consistent practice of having people sign the long-form

17   subscription agreements.

18           THE COURT:  Thank you.  And Mr. Bamberger, your --

19           MR. BAMBERGER:  Your Honor, just very, very

20   briefly.  I'm mindful of Your Honor's construction with

21   respect to our role here.  I think Mr. Elsberg is correct

22   that the narrow question Your Honor asked to be brief was

23   service on counsel.  I think you've already addressed that

24   with respect to the entity named as HSBC that we don't

25   represent.

Page 102

1          The only point I'd make is Mr. Elsberg spent a lot

2     of time talking about how this issue should properly be

3     resolved in a future round of briefing on, quote -- what he

4     referred to as the proper party issue.  And the problem with

5     that is if we haven't been served -- if a client of mine

6     hasn't been served and we can't appear, we're not going to

7     be able to argue that issue at that time either.  This isn't

8     as if they served one entity and we're arguing a different

9     entity should be the defendant.

10         So with that, and a reservation of rights, I don't

11    have anything else to add, Your Honor.

12         THE COURT:  Very good.  I'm going to take about a

13    20-minute break.  So you all -- we'll just -- we'll keep the

14    Zoom up.  So we'll leave it right there.  And I'll deal with

15    everything you discussed.  Thank you.

16         (Off the record.)

17         THE COURT:  Very good.  I'm ready to rule, unless

18    someone has anything else they wish to add.

19         Today the Court is deciding the service issue, and

20    this issue stems from Judge Bernstein's December the 14th,

21    2020 decision in which he determined that a foreign

22    corporation may be served pursuant to Federal Rule of Civil

23    Procedure 4(f), and it states, unless federal law provides

24    otherwise, an individual may be served at a place not within

25    any judicial district of the United States by any

1    internationally agreed means of service that is reasonably

2    calculated to give notice, such as those authorized by The

3    Hague Service Convention or, and this is three, 4(f)(3), by

4    any means not prohibited by international agreement as the

5    Court orders.

6           Judge Bernstein allowed service by mail on U.S.

7    counsel and held that such service effectuates service,

8    excuse me, under 4(f) despite the fact that it does not meet

9    The Hague Convention standards for service or, in this case,

10   the Liechtenstein or I think Morocco is still under Hague,

11   but not Liechtenstein -- Liechtenstein.  Service under this

12   rule cannot be retroactive.  So Judge Bernstein granted the

13   liquidators' request to serve U.S. counsel by mail and

14   ordered it done within 60 days.

15          In making this determination, Judge Bernstein

16   considered the following factors: adequate communication

17   between the counsel and party to be served, and you can see

18   Fairfield III, HSBC Suisse had undoubtedly been a regular

19   contact with Cleary Gottlieb and had actively participated

20   in the HSBC actions since at least September 2010.  I'm

21   going back to that order.  And then two, whether plaintiff

22   reasonably attempted service.  Yes, defendants were served

23   by mail as contemplated in the subscription agreements,

24   which turned out to be improper a la Fairfield I.  Cost and

25   delays associated with re-serving on counsel versus under

Page 104

1   The Hague Convention.

2            Pursuant to an order entered on February the 26th,

3   2021, Judge Bernstein stated the decision instructed the

4   parties to settle orders in each affected adversary

5   proceeding collectively, the affected adversary proceedings

6   on notice or submit consensual orders.  And I know there was

7   not agreement.  And submitted separate proposed orders to

8   the Court.

9            The principal difference between the proposed

10  orders concerns whether the Court's decision should also

11  authorized the liquidators to serve process on other Swiss

12  defendants by mailing their process to U.S. counsel.

13           In the end, the answer depends, as it did in the

14  HSBC Swiss, on whether U.S. counsel had been in regular

15  contact with their Swiss client and had actively

16  participated in the particular adversary proceeding effort

17  after it was commenced.

18           Consequently, while certain determinations bind

19  all Swiss defendants, specifically the Court's authority to

20  authorize service on U.S. counsel under Federal Rule of

21  Civil Procedure 4(f)(3), the propriety of ordering such

22  service on other Swiss defendants depends on the facts of

23  that case and that is the order in Fairfield Sentry Limited

24  (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.,

25  10-3496 jointly consolidated at ECF 3076.

Page 105

1          Before the Court are 11 motion to dismiss by seven

2     defendants in three adversarial proceedings.  The remainder

3     of the defendants have stipulated to proper service, and

4     that's pending the appeal of Judge Bernstein's decision.

5          In front of me is 10-3630, Private-Space, Ltd.

6     That's at docket 149150, and one defendant has settled.  Is

7     that correct?  Yes.  10-3635, Verwaltungs-und Privat-Bank,

8     docket 568569, Centrum Bank AG, 571572, LGT Bank in

9     Liechtenstein, 353575, 577, 579, Liechtenstein LB Reinvest,

10    579, 580, HSBC.  And then in 10-3636, Arden International

11    Capital, at 627, Verwaltungs-und Privat-Bank, 628, 629,

12    Centrum Bank AG, 631, 632, GTL Bank in Liechtenstein, 633,

13    634, and shorthand LLB, Liechtensteinische LB Reinvest AMS

14    Liechtensteinische Landesbank AG.

15         The first one I want to deal with is Cleary's

16    motion not on behalf of HSBC, for want of a better term, in

17    10-3635.  HSBC brief filed by Cleary Gottlieb and signed by

18    Mr. Bamberger states there is an entity named as a defendant

19    that is identified only as HSBC and the undersigned counsel

20    does not appear to know the identity of that entity.  The

21    firm argues that it has not been retained by and does not

22    represent any entity called HSBC.  It cannot accept service

23    on behalf of such non-entity and it would not know how to

24    advise such a non-entity that it had been served in its

25    place.

Page 106

1        Cleary Gottlieb asked the Court to dismiss the

2   complaint against HSBC despite the fact that it does not

3   represent HSBC and does not know if such an entity exists or

4   whether it's been properly served.  The Court has previously

5   cautioned counsel that bankruptcy Rule 90-11(b)(1) prohibits

6   the filing of a pleading for an improper purpose such as

7   delay, harassment or causing expense, even if the filing

8   relates to a claim that it is otherwise colorable.

9   Bankruptcy Rule 90-11(b)(2)(4) requires a party's attorney

10  to perform a reasonable preliminary investigation of the

11  facts and the applicable law before filing a paper in

12  federal court

13       The legal papers and attorney files in any case

14  must be grounded in both a non-frivolous legal theory and a

15  well-founded factual contention and/or denials that at a

16  minimum have a reasonable possibility of having evidentiary

17  support after further investigation and discovery.  That's

18  In re Telecom Court, 319 BR 857, Northern District of

19  Illinois, 2004, affirmed American Telecom Corp. v. Siemen

20  Information Commerce Networks, 404 C 8053 2005 Westlaw

21  5705113 Northern District of Illinois.

22       Good faith alone is not enough to comply with the

23  frivolous clauses of Bankruptcy Rule 90-11.  90-11 imposes

24  an affirmative obligation upon counsel to conduct a

25  reasonable inquiry into both the law and facts before

Page 107

1    advancing a particular position in the court.  In re Martin,

2    350 BR 812, Northern District of Indiana.

3          The liquidators mailed a summons to HSBC at its

4    registered address at global headquarters at HSBC Group at 8

5    Canadian Square, Canary Wharf, London, United Kingdom.  The

6    Court need not consider whether this is improper service as

7    HSBC has failed to properly appear in this court.  A

8    corporation or other entity may appear in a federal court

9    only through a licensed counsel.  In re Rowland and

10   California Men's Colony, 506 US 194, U.S. Supreme Court

11   1993., Jones v. Niagara Frontier Transport Authority, 722

12   F.2d 20, Second Circuit, 1983.

13         A corporation involved in a legal proceeding must

14   be represented by counsel.

15         As HSBC is an artificial entity and is not

16   represented by a counsel in this action, the motion to

17   dismiss -- and I will do it on behalf of the liquidators'

18   request, without prejudice -- by Cleary in 10-3636 must be -

19   - must be denied.

20         The remaining movants fit into Judge Bernstein's

21   Fairfield III decision and the law of the case is going to

22   be followed.  The Liechtenstein defendants, VP Bank, 10-3635

23   and 10-3636, VP Bank objects to liquidators' relying on

24   having mailed a summons and complaint by international

25   registered mail to VP Bank, AG Liechtenstein and to Citco

1   Global Custody NV in The Netherlands and in Ireland to VP

2   Bank's U.S. counsel who has not agreed to accept service and

3   who has not already indicated that VP Bank AG was appearing

4   especially without waiver of its obligation to service or

5   personal jurisdiction.

6          VP Bank also argues that the Liechtenstein law of

7   October the 22nd, 2008 on the service of official documents,

8   and that's the Liechtenstein law on service, provides that

9   to serve foreign official documents in Liechtenstein, a

10  foreign authority or court from where the documents

11  originate must be made applicable for legal assistance to

12  the Liechtenstein district court and that service of

13  official documents in Liechtenstein must be carried out by

14  court-appointed officials or court-appointed service

15  providers.

16         Centrum, 10-3635, 10-3636.  Liquidators rely on

17  having mailed the summons and complaint by international

18  registered mail to Centrum in Liechtenstein and to Citco

19  Global Custody NV in The Netherlands and in Ireland and by

20  U.S. mail to Centrum's U.S. counsel, who had not agreed to

21  accept service and who has consistently indicated that

22  Centrum was appearing specifically without waiver of its

23  objections to service or personal service.

24         Centrum also argues that the service by mail in

25  Liechtenstein is prohibited.

Page 109

1              LGT Bank, 10-3635, 10-3636, liquidators rely on

2       having mailed the summons and complaint by international

3       registered mail to LGT Liechtenstein and to Citco Global

4       Custody NV in The Netherlands and in Ireland and by U.S.

5       mail to LGT U.S. counsel who has not agreed to accept

6       service and who has consistently indicated that Centrum was

7       appearing specifically without waiver of its objection to

8       service or personal jurisdiction.

9              LGT Bank argues that service by mail in

10      Liechtenstein is prohibited.

11             Liechtensteinische LB Reinvest AMS, Landesbank AG,

12      10-365, 10-366.  Defendant Liechtensteinische Landesbank

13      Aktiengesellschaft sued here erroneously as Liechtenstein

14      LBB -- LB Reinvest AMS moves to dismiss the complaint.

15      Liquidators rely on having mailed the summons and complaint

16      by international registered mail to Landesbank in

17      Liechtenstein and to Citco Global Custody LB in The

18      Netherlands and in Ireland, service by mail is prohibited in

19      Liechtenstein as a defense.

20             Private-Space, 10-3630 and this is the case where

21      the custodian had -- was authorized to sign.  Private-Space

22      argues that Morocco prohibits service by mail and as such

23      the liquidator should not be permitted to cure service by

24      mailing process to Private-Space's U.S. counsel.  It argues

25      that unlike Cleary and HSBC, Private-Space has no U.S.-based

Page 110

1    counsel who was never served with papers and the only

2    service it was via registered international mail on July the

3    31st, 2012 to Private-Space, Ltd., 7 Rue de Gabin, MC 98000

4    Morocco.

5              AIC, 10-3636, plaintiff purports to serve AIC by

6    mailing a copy of the summons and then operative complaint

7    to an office building in New York, New York where AIC did

8    not, does not and never had an office.  AIC was incorporated

9    under the laws of the British Virgin Islands in 1993.  AIC

10   is a former offshore fund of hedge funds -- offshore fund of

11   hedge funds that ceased operations in 2005 and returned all

12   of its assets to the investor.  It argues that even if mail

13   service was proper, it was never served by mail at the

14   correct address.

15             On December the 14th, 2020, this Court issued a

16   well-reasoned -- this Court, with Judge Bernstein presiding,

17   issued a well-reasoned decision on service of process in

18   these redeemer actions.  And I know it was geared to the

19   Swiss.  I am following Judge Bernstein's law in the case for

20   all the other cases.  That's Fairfield Sentry Limited v.

21   Theodoor GGC Amsterdam, 220 Westlaw 7345988.

22             Reconsidering was denied, and then the order of

23   February the 23rd, 2021, the decision states, "A foreign

24   corporation may be served abroad in any manner prescribed by

25   Federal Rule of Civil Procedure 4(f) for serving an

Page 111

1    individual except personal delivery under (f)(2)(c)(i)," and

2    that's filed at Federal Rule of Civil Procedure 4(h)(2) Rule

3    4(f) in turn states in pertinent part, serving an induvial

4    in a foreign country, unless federal law provides otherwise,

5    an individual may be served at a place not within any

6    judicial district of the United States, one, by any

7    internationally agreed means of service that is reasonably

8    calculated to give notice such as those authorized by The

9    Hague Service Convention, by any means not prohibited by any

10   international agreement as the court orders.  Federal Rule

11   of Civil Procedure 4(f).

12          Courts have repeatedly recognized that there is no

13   hierarchy among the subsections of Rule 4(f).  Washington

14   State Investment Board v. Odebrecht SA, 1:17-cv-08118

15   (2018), Westlaw 2653877.  That's the Southern District of

16   New York, September 21, 2018.  According In re GLG Life Tech

17   Corp Securities Litigation, 287 F.R.D. 262, Southern

18   District of New York, 212, Advanced Aerofoil Techs AG v.

19   Todaro Number 11, cv-9505 ALC 2012 Westlaw 299959, Southern

20   District of New York, January 31, 2012.

21          Hence court-directed service under Rule F --

22   4(f)(3) is favored as service under Rule 4(f)(1).  GLG Life

23   Tech, 287 F.R.D., quoting Real Prox Inc. v. Rio

24   International Interlink, 285 F.3d 1007 9th Circuit 2002.  A

25   plaintiff -- and this is a quote, "A plaintiff is not

Page 112

1    required to attempt service through the other provisions of

2    AF before the court may order service pursuant to AF 3." SEC

3    v. Anticivic, 05 CV 699, KMW 2009 Westlaw 36139, Southern

4    District of New York, February the 13th, 2009.

5            Also see Madu, Edozie & Madu PC v. Socketworks

6    Ltd, Nigeria, 265 F.R.D. 106, Southern District of New York,

7    2010.

8            Service of process under Rule 453 is neither a

9    last resort nor extraordinary relief.

10           An alternative method of service under Rule

11   4(f)(3) so long as it is prohibited by international

12   agreement and comports with constitutional notions of due

13   process.  Odebrecht 2018 Westlaw 6253877.  Acordstream SICAV

14   v. Wayne, 989 F. Supp. 2d, Southern District at 264,

15   S.D.N.Y., 2013.

16           The decision to approve an alternate method of

17   service is committed to the court's sound discretion.  SEC

18   v. China Ne Petroleum Holding, 27 F. Supp. 3d 379, S.D.N.Y.

19   2014. In re Et South African Aprahei litigation, 643 F.

20   Supp. 2d 423, 2009, S.D.N.Y. (ph).

21           In exercising this discretion, the Court in this

22   district routinely require, and quote, "a showing that the

23   plaintiff has reasonably attempted to effectuate service on

24   the defendant and a showing that the circumstances are such

25   that the court's intervention nis necessary."  Odebrecht,

Page 113

1    2018 Westlaw 6253877.

2           "But nothing in Rule 4(f) itself or controlling

3    case law suggests that a court must always require a

4    litigant to first exhaust the potential for service under

5    The Hague Convention before granting an order permitting

6    alternative service under Rule 4(f)(3)."  GLG Life Tech, 287

7    F.R.D., at 266.

8           The Court also considered whether allowing service

9    on U.S. counsel was permissible and decided affirmatively so

10   long as the movant shows adequate communication between the

11   counsel and the party to be served.  And I quote, "The Court

12   agrees with Odebrecht and other cases ruling that a service

13   to a foreign defendant via a domestic conduit is permissible

14   under Rule 4(f)(3)."

15          Here there can be no doubt that adequate

16   communication exists between the counsel who filed these

17   motion to dismiss and their clients.  New York Rules of

18   Professional Conduct require that a lawyer promptly inform

19   the client of any decisions or circumstances with respect to

20   which the client's informed decision is defined as 1.0J as

21   required by these rules.

22          Any information required by the court rule or

23   other law to be communicated to a client and material

24   development in the matter including settlement or plea

25   offers.  Reasonable consultation with the client about the

Page 114

1    means in which the client's objective are being

2    accomplished, keep the client reasonably informed about the

3    status of the matter, promptly comply with the client's

4    reasonable request for information and consult with the

5    client about relevant information on the lawyer's conduct

6    when the lawyer knows that the client expects assistance not

7    permitted by these rules or other law.  A lawyer shall

8    explain a manner to the extent reasonably necessary to

9    permit the client to make informed decisions regarding the

10   representation.

11          Further though under the Rules of Professional

12   Responsibility, if the client relationship should break down

13   prior to the service being effectuated, the New York Rules

14   of Professional Conduct require that upon termination of

15   representation, a lawyer shall take steps to the extent

16   reasonably practicable to avoid foreseeable prejudice to the

17   right of the client including delivering to the client all

18   papers and property to which the client is entitled and

19   complying with the applicable laws and rules.  New York Code

20   of Professional Responsibility 1.16.

21          That includes forwarding papers that the client

22   has ordered to be accepted on behalf of the client.

23          The defendants argue that these cases have been

24   pending over ten years and try to say that service should

25   have been corrected during the timeframe.  The Court

Page 115

1    addressed that argument in his decisions and found that, and

2    I quote, "The liquidators exercised due diligence," and

3    service process, "in a timely manner consistent with the

4    subscription agreements."  Fairfield III, 2020 Westlaw

5    7345988, at 15.

6              Additionally, the Court held that the defendants

7    did not suffer prejudice as a result of the passage of time.

8    Again, I quote, "Despite the service issue, they have been

9    actively litigating numerous issues in this court since 2010

10   including the dismissal of all the liquidators' claims which

11   culminated in this decision and these threshold issues had

12   to be decided before the issue could be advanced."

13             Since the Court's decision in 2020, the only

14   delays in these redeemer actions were those created by this

15   Court for needing to get up to speed in this Chapter 15 as

16   well as the BLMIS Cipa case.  In fact, Judge Bernstein

17   issued a decision reconsidering his December of 2020

18   decision on February the 23rd, 2021, only five days prior to

19   this case being reassigned to me.

20             The Court also determined that service of foreign

21   countries would be cost-prohibited for these insolvent

22   cases.  Again that's in the order.  The Court also stated,

23   or his opinion, the Court also stated that where the

24   defendants, and I quote, "had actual notice of the redeemer

25   action, had actively litigated for a decade through capable

Page 116

1    counsel," and then quote again, "the purpose of the service

2    requirement has already been accomplished."

3            This Court sees no reason to abandon the law of

4    the case in these adversary proceedings.  In re Motor

5    Liquidating Company, 590 BR, 39 S.D.N.Y. 2018, law of the

6    case doctrine applies across adversary proceedings in the

7    same bankruptcy case.  It's affirmed at 943 F.3d 112, Second

8    Circuit (2019).

9            For the reasons stated herein, the motion to

10   dismiss by Cleary is denied.  The motion to dismiss by all

11   other plaintiffs is all other denied and service on the

12   defendants' U.S. counsel who files these motions is

13   permitted.  The liquidators must serve these counsel by

14   First Class mail within 60 days of the date of this

15   memorandum.

16           The liquidators, if you want to enforce a

17   judgment, should also consider whether any particular

18   defendant, either one of the movants or any of the non-

19   movants, should be served under international law as the

20   Court does not intend to permit additional service of

21   process in the future.

22           On February the 22nd, 2021 -- now end of decision,

23   submit an order, Mr. Elsberg.

24           Additional issues remaining to be briefed.  On

25   February the 22nd, Judge Bernstein signed a so-ordered stip

Page 117

1    in the redeemer action for the following issues to be

2    decided: the constructive trust pleadings issue and the

3    receipt issue which is -- should be coming after the

4    personal jurisdiction issue which is what I want briefed

5    next.  And you all can talk about that, about what timeframe

6    we want on that.

7             Brought up today though was the proper party

8    issue.  If a proper party is not in the courtroom, then the

9    default should enter against that party.  Defendants are

10   free to stipulations -- to stipulations of the proper party

11   if they do not wish a default judgment entered.  There are

12   no fake defendants.  A corporation or other artificial

13   entity may appear in the federal court only through a

14   incensed counsel.  I've said that before.

15            An attorney cannot represent a client that the

16   attorney argues does not exist.  Again, Code of Professional

17   Responsibility, 1.1.  An organizational client is a legal

18   entity.  It cannot act except through its officers,

19   directors, employers, members, shareholders and other

20   constituents.

21            That does not mean however that a constituent of

22   an organizational client are the clients of the lawyer.  The

23   client may not disclose to such constituents information

24   relating to the representation except for disclosure

25   explicitly or impliedly authorized by an organizational

Page 118

1   chart in order to carry out the representation or as

2   otherwise permitted under Rule 1.6.  authority and

3   responsibility provided in this rule are concurrent with the

4   authority and responsibility provided in other rules and a

5   lawyer for an organization continues to have duties of

6   communication, confidentiality and conflict of interest.

7           Since an attorney-client relationship is

8   essentially contractual, ordinary rules governing contract

9   formation determine whether such a relationship has been

10  created.  Jordan v. Lipsig, Sullivan, Mollen & Liapakis, 689

11  F. Supp. 192, SDNY (1988).

12          Formality is not an essential element in the

13  employment of an attorney and since the original

14  arrangements for representations are often informal, it is

15  not necessary to look at the words -- it is necessary,

16  excuse me, it is necessary to look at the words and the

17  actions of the parties.  Hashemi v. Shack, 609 F. Supp. 391,

18  S.D.N.Y. (1984).

19          Disclosure of the identity of a client and the fee

20  arrangement are not privileged communications.  In re

21  Shargel, 742 F.2d 61 (1984).  And I quote, "We have

22  consistently held that client identity and fee information

23  are, absent special circumstances, not privileged." Second

24  Circuit.

25          While the attorney-client privilege historically

Page 119

1    erodes at the same time as privilege against self-

2    incrimination, it was early established that privileges had

3    distinct policies and that the point of honor, the

4    attorney's reluctance to incriminate his client was not a

5    valid reason to invoke the attorney-client privilege.  And

6    that's from that case.

7           Under Rule 3.3, a lawyer is ethically required to

8    disclose, unless privileged or irrelevant, the identities of

9    the client the lawyer represents and the person who employed

10   the lawyers.

11          Now here comes my question which was brought up

12   today.  Are there any proper party issues that do not

13   involve "fake entities"?  Mr. Elsberg, you brought it up.

14   We can't hear you.

15          MR. ELSBERG:  Can you hear me now?

16          THE COURT:  Yes, perfectly.  Can you hear us?

17          MR. ELSBERG:  Hello?

18          THE COURT:  Can you hear us?

19          MR. ELSBERG:  Yes.  Can you hear me?

20          THE COURT:  Yes.  We can hear you now.  We can

21   hear you.

22          MR. ELSBERG:  Oh, the answer to your question is

23   no, Your Honor.

24          THE COURT:  Okay.  All right.

25          MR. FROOT:  Your Honor?

Page 120

1          THE COURT:  Yes, sir.  Mr. Froot?

2          MR. FROOT:  Excuse me.  For the Zurich defendants,

3    there is one defendant that is improperly named, I think

4    both the liquidators and Zurich know what entity is being

5    referred to.  So it's more of a clerical matter of fixing

6    the name, and we're involved in discussions over that proper

7    stipulation right now.

8          THE COURT:  Okay.  If you can't come to a

9    conclusion, I'll need a scheduling order to be entered and

10   we will deal with it in the courtroom.

11         MR. FROOT:  Yes, Your Honor.

12         MR. MORRIS:  Your Honor, it's David Morris.  As I

13   mentioned in argument, VP Bank has simplified its name and

14   is now known by that name and acquired Centrum, which has

15   merged into VP Bank.  So there's no dispute that the

16   entities all exist.  They just have a new name.

17         THE COURT:  I'll let you all figure that out.

18         MR. MORRIS:  Thank you, Your Honor.

19         THE COURT:  I'll stay with the old name until we

20   get something done with that.

21         MR. MORRIS:  Thank you.

22         THE COURT:  This Court must strike from the record

23   any pleadings made by a lawyer acting without a client and

24   default should be entered against any artificial entity who

25   is not represented by legitimate counsel.  And I've already

Page 121

1    gone over this many times.

2            When you're representing -- and you all have used

3    the term -- a fake client, the Court has to file with the

4    Court the identity of the person paying the fees for the

5    lawyer to appear on a fake entity's behalf and the amount of

6    the fees being paid or shall face a grievance committee

7    investigation.

8            As to any parties who may need to be switched out

9    but do not actually exist, a scheduling order should be

10   entered, a joint pretrial determined after discovery is

11   complete and eventually a trial date.  I'm moving forward

12   with the rest of the defendants.

13           Now then, at this point, I understand there is an

14   order consolidating the redeemer actions.  I want to hear

15   from you if that is viable and should be revoked.  It seems

16   that the defendants each have their own arguments on their

17   own case in their docket.  Mr. Elsberg, I'll hear from you

18   first.  You're on mute again.

19           MR. ELSBERG:  I'm so sorry, Your Honor.

20           THE COURT:  Okay.

21           MR. ELSBERG:  So I think that there are lots of

22   arguments about consolidation that are still outstanding.  I

23   don't know.  it might be productive for the parties to

24   confer about it and get back to Your Honor if that's

25   acceptable.

Page 122

1           THE COURT:  Yes, of course.  Of course.  And

2     you'll need to have orders on everything that I've just

3     given you.  The other thing is personal jurisdiction is the

4     next issue.

5           MR. ELSBERG:  Yes, Your Honor.

6           THE COURT:  And would you please also -- why don't

7     you all confer and let's set up a scheduling order to that

8     or I was going to say how do you suggest we go about setting

9     up a scheduling order on that.  But you're going to need a

10    scheduling order.  Well, I've given you 60 days to perfect

11    service.

12          MR. ELSBERG:  That's --

13          THE COURT:  And you have to make some decisions on

14    that, and it's got to be quick to get the rest of the

15    service done.

16          MR. ELSBERG:  Yes, Your Honor.

17          THE COURT:  Why don't you - -why don't we -- why

18    don't we still have a -- let's meet again on September 15th

19    just as a checking in day.

20          MR. ELSBERG:  Good idea, Your Honor.  The parties

21    have already begun these discussions.  So I'm very hopeful

22    that by the time we get to that hearing, we'll have some

23    agreed-upon proposals for Your Honor.

24          MR. BAMBERGER:  Your Honor, can I --

25          THE COURT:  Yom Kippur begins that evening.

Page 123

1              MR. ELSBERG:  Yes, Your Honor.

2              MR. BAMBERGER:  Yes, Your Honor.

3              THE COURT:  Mr. Bamberger, you were going to say

4     something.  I interrupted you.

5              MR. BAMBERGER:  Yeah.  A clerical issue, Your

6     Honor.  So there are a number of defendants.  I understand

7     Your Honor's order that personal jurisdiction will be the

8     next thing to be briefed.  I think defendants are eager to

9     get that briefed.  And so we'd be happy to do so on an

10    expedited basis.  We can talk about the schedule now, or if

11    you'd prefer that we confer --

12             THE COURT:  I'll prefer you all confer.

13             MR. BAMBERGER:  Just --

14             THE COURT:  I think it's pretty obvious you all

15    have been talking.

16             MR. BAMBERGER:  Yeah.

17             THE COURT:  I'm not opposed to anybody -- I prefer

18    people talking on that.

19             MR. BAMBERGER:  Just one point, Your Honor, on

20    which I think we actually need an order from the Court, and

21    that is that there are a number of defendants who -- not a

22    number, a few defendants who will not be raising personal

23    jurisdiction defenses.

24             The Court's order at our last conference granted

25    the liquidators leave to amend their complaints.  And under

Page 124

1   the rules, we would have -- those defendants would have a

2   deadline to answer or move.  And I think Your Honor is

3   setting a briefing schedule such that those defendants don't

4   need to do that on the deadline -- the 14-day deadline set

5   in the rules.  But I don't want there to be any ambiguity

6   about that.

7            THE COURT:  Mr. Elsberg?

8            MR. ELSBERG:  That's fine.  As I understand Mr.

9   Bamberger, there are a few defendants that simply don't plan

10  to contest personal jurisdiction.  We understand that they

11  do have some motion to dismiss arguments that will be coming

12  up, but not personal jurisdiction arguments.

13           THE COURT:  Okay.  All right.  If they don't need

14  to answer, then they don't need to answer.  So, okay.

15           MR. BAMBERGER:  Thank you, Your Honor.

16           THE COURT:  Anything else?  Am I missing anything?

17  I can always --

18           MR. ELSBERG:  Not --

19           THE COURT:  -- tell you I enjoy good lawyers.

20  It's always a joy.  So thanks, everybody.

21           MR. ELSBERG:  Thank you, Your Honor.

22           MR. BAMBERGER:  Thank you, Your Honor.

23           THE COURT:  We'll see you all again on September

24  15th.  Ten o'clock, same time.  Ten o'clock.

25           MR. LAMBERT:  Thank you, Judge.

1            THE COURT:  Thank you.

2            MR. ELSBERG:  Yes, Your Honor.  Thank you.  Bye-

3    bye.

4            THE COURT:  Go into chambers, please.

5

6            (Whereupon these proceedings were concluded)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                              Page        Line

5    Motions to Dismiss                        155

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 127

1           C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature: Sonya M. Ledanski Hyde]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  August 20, 2021