**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| FAIRFIELD SENTRY LIMITED, et al., | Case No. 10-13164 (CGM) |
| Debtors in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LIMITED (IN LIQUIDATION), et al., | |
| Plaintiffs, | Adv. Pro. No. 10-03496 (CGM) |
| | Administratively Consolidated |
| – against – | |
| THEODOOR GGC AMSTERDAM, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LIMITED (IN LIQUIDATION) et al., | |
| Plaintiffs, | Adv. Pro. No. 10-03635 (CGM) |
| v. | |
| ABN AMRO SCHWEIZ AG, et al., | |
| Defendants. | |

## BNP PARIBAS DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## **TABLE OF CONTENTS**

I.    Preliminary Statement ........................................................................................ 1

II.   Background ........................................................................................................ 3

   A.   The Liquidators' Proceedings. .................................................................... 3

   B.   Allegations Regarding the Redemption Payments. ...................................... 5

   C.   Allegations Regarding the Citco Platform. ................................................. 6

   D.   Specific Allegations about the Defendants ................................................. 9

III.  Argument .......................................................................................................... 10

   A.   The Redemption Accounts Do Not Establish Personal Jurisdiction. ............... 12

      1.   The Liquidators' Allege that the Redemption Process Did Not Occur in the United
           States. ................................................................................................... 12

      2.   The Liquidators' Admit that the Redemption Payments were Paid to Non-U.S.
           Accounts. ............................................................................................... 15

   B.   The Alleged Foreseeability of the Funds' Investment in BLMIS Does Not Establish
        Personal Jurisdiction Over the Defendants. .................................................... 15

   C.   The Exercise of Personal Jurisdiction over the Defendants Would Not Comport with Due
        Process. ......................................................................................................... 18

IV.   Conclusion ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

Federal Rules of Civil Procedure Rule 12(b)(2) ................................................. 1, 20

**Cases**

*Arista Records, LLC v. Doe 3,*
604 F.3d 110 (2d Cir. 2010) ............................................................................. 13

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County,*
480 U.S. 102 (1987) .......................................................................................... 17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................ 6

*Best Van Lines, Inc. v. Walker,*
490 F.3d 239 (2d Cir. 2007) ............................................................................. 10

*Burger King v. Rudzewicz,*
471 U.S. 462 (1985) .......................................................................................... 18

*DiStefano v. Carozzi N. Am., Inc.,*
286 F.3d 81 (2d Cir. 2001) ............................................................................... 10

*Fairfield Sentry Ltd. (In Liquidation) v. Migani,*
UKPC 9 (April 19, 2014) [2014] ..................................................................... 4, 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
466 U.S. 408 (1984) .......................................................................................... 15

*Hirsch v. Arthur Andersen & Co.,*
72 F.3d 1085 (2d Cir. 1995) ............................................................................. 13

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC,*
No. 19-CV-6046 (VSB), 2020 WL 1166053 (S.D.N.Y. Mar. 11, 2020) (Broderick, J) .... 12

*In re Fairfield Sentry Ltd.,*
596 B.R. 275 (Bankr. S.D.N.Y. 2018) ............................................................. 2, 15

*In re Fairfield Sentry Ltd.,*
No. 10-13164 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)................... 2, 5, 15, 16

*In re Fairfield Sentry Ltd.,*
No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ................... 15, 16

*L-7 Designs, Inc. v. Old Navy, LLC,*
647 F.3d 419 (2d Cir. 2011)................................................................................. 13

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.,*
No. 03 Civ. 2936(MBM), 2004 WL 1620874 (S.D.N.Y. July 20, 2004)........................ 12

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff),*
594 B.R. 167 (Bankr. S.D.N.Y. 2018) (Bernstein, J.) ....................................... 2, 10

*Pyskaty v. Wide World of Cars, LLC,*
856 F.3d 216 (2d Cir. 2017)................................................................................. 13

*Rose v. Goldman, Sachs & Co. Inc.,*
163 F. Supp. 2d 238 (S.D.N.Y. 2001)................................................................. 13

*SPV Osus Ltd. v. UBS AG, UBS S.A.,*
882 F.3d 333 (2d Cir. 2018)................................................................................. 16

*Walden v. Fiore,*
571 U.S. 277 (2014)...................................................................................... 12, 16-18

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980)........................................................................................... 18

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC,*
No. 19-cv-3444 (VSB), 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.)..... 10

BNP Paribas (Suisse) SA, BNP Paribas (Suisse) SA Ex Fortis (n/k/a BNP Paribas

(Suisse) SA), BNP Paribas (Suisse) SA Private (n/k/a BNP Paribas (Suisse) SA)[1] (collectively,

the "Defendants" and together with the other named defendants in the above-captioned

proceeding, "Citco Brokerage Customers"), by the undersigned counsel, respectfully submit this

memorandum of law in support of their motion to dismiss, with prejudice, the Fifth Amended

Complaint, Dkt. 620 (the "Citco Complaint" or the "FAC"), filed by Fairfield Sentry Limited

("Sentry") and Fairfield Sigma Limited ("Sigma"), by and through their foreign representatives

(the "Liquidators") in *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et

al.*, Adv. Pro. No. 10-03635 (Bankr. S.D.N.Y.), (the "Citco Proceeding") under Rule 12(b)(2) of

the Federal Rules of Civil Procedure for lack of personal jurisdiction.[2]

## I.    PRELIMINARY STATEMENT

The grounds requiring dismissal here are particular to the Defendants and the seventy-

three other Citco Brokerage Customers.  This is because there are no plausible allegations

whatsoever that a single redemption payment to these non-U.S. Defendants was made to U.S.

accounts or went through U.S. correspondent accounts.  The Liquidators have not alleged, let

alone established, personal jurisdiction over the Defendants or any of the other defendants.

Indeed, the only allegations in the Citco Complaint unique to the individual Citco Brokerage

Customers are the allegations alleging their places of incorporation and registered addresses.  See

FAC ¶¶ 33-104.  Thus, each Defendant is mentioned by name in just two paragraphs in the

---

[1] For the avoidance of doubt, BNP Paribas (Suisse) SA is the successor in interest to BNP Paribas (Suisse) SA Ex Fortis and BNP Paribas (Suisse) SA Private, which no longer exist as separate entities and have been merged into BNP Paribas (Suisse) SA.

[2] Sentry and Sigma are referred to collectively as the "Funds."  As alleged by the Liquidators, Sentry was the largest of the so-called "feeder-funds" to maintain accounts with Bernard L. Madoff Investment Securities LLC ("BLMIS") whereas Sigma was an indirect BLMIS feeder fund established for foreign currency investment through the purchase of shares of Sentry.  FAC ¶ 125.  Despite this distinction, the Liquidators refer to Sentry and Sigma as the "Funds" throughout the Citco Complaint and only occasionally acknowledge that Sigma was an indirect feeder fund for BLMIS.

Liquidators' allegations, and one of those paragraphs establishes that each resides outside the United States. *See* FAC ¶¶ 15, 47-49. All other allegations against the Citco Brokerage Customers, including the Defendants, are made by way of group pleading and none of those allegations tie the Citco Brokerage Customers or their alleged conduct to the United States.[3] Therefore, the Court lacks personal jurisdiction over the Defendants with regard to the Liquidators' sole remaining claim in the FACs and they must be dismissed.

This Court already dismissed all but one of the claims the Liquidators asserted against the Defendants for failure to state a claim. *See In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"); *In re Fairfield Sentry Ltd.*, 596 B.R. 275 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"). As a result, the Liquidators' sole remaining claim in the Citco Complaint is for the imposition of a "constructive trust" under British Virgin Islands ("BVI") law on redemption payments allegedly paid to the Defendants— *see* FAC ¶ 198—must be dismissed for lack of personal jurisdiction.

To proceed on their remaining claim, the Liquidators first must establish this Court's personal jurisdiction over each defendant with respect to each redemption payment that the Liquidators seek to reverse. *See Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) (Bernstein, J.). But the Citco Complaint is devoid of any allegations that would support an exercise of jurisdiction with respect to any redemption. In certain other cases before this Court, the Liquidators have argued that defendants are subject to jurisdiction because redemptions at issue were paid to U.S. correspondent accounts. While that is wrong for the reasons explained in other defendants' briefs, the Court need not even consider this argument in this Citco Proceeding because the Liquidators' own allegations demonstrate that all

---

[3] The other Citco Brokerage Customers will be filing separate and independent motions to dismiss asserting essentially the same basis for dismissal for lack of personal jurisdiction given the nearly identical allegations.

Citco Brokerage Customers, including the Defendants, received all redemption payments in accounts <u>outside the United States</u>. Indeed, the Liquidators specifically and separately allege, that every single redemption payment at issue in the Citco Complaint was paid to an account in the Netherlands, not the United States.[4]

The Liquidators in fact represented to the District Court that "every relevant component of the [redemption] transactions at issue here occurred <u>outside the territorial jurisdiction of the United States</u>." Plaintiffs-Appellants' Opening Brief For Second-Round Appeal at 24, *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-cv-03911-VSB (S.D.N.Y. July 21, 2021), Dkt. No. 440 ("<u>Liquidators' Appeal</u>") (emphasis added). And even if the receipt of redemption payments in U.S. accounts were sufficient to subject a party to this Court's jurisdiction—and it is not—that is not what the Liquidators have pleaded as to the Defendants (and the other Citco Brokerage Customers). For this reason alone, the Defendants should be dismissed for lack of personal jurisdiction under New York's long-arm statute.

Additionally, because the Liquidators fail to allege that the Defendants (and the other Citco Brokerage Customers) had any contacts with the United States, the exercise of jurisdiction over the Defendants would violate due process. The Court should dismiss the Liquidators' sole remaining claim against the Defendants on this basis too.

## II.    BACKGROUND

### A.    The Liquidators' Proceedings.

These cases are ancillary to the foreign liquidation of the Funds in the BVI. The Funds were placed into liquidation in 2009 before the Commercial Division of the Eastern Caribbean

---

[4]    The Liquidators include charts in the Citco Complaint that provide information on every redemption at issue. FAC at Exs. A, B. Those charts include a column entitled "Bank Account to which Redemption Payment Was Made," which is filled out in the same way for every redemption: "Citco Global Custody (NA) NV, <u>Netherlands.</u>" *Id.* (emphasis added).

High Court of Justice, British Virgin Islands after BLMIS's fraud was publicly revealed.[5]
Between October 2009 and March 2010, the Liquidators commenced actions in the BVI against
a number of the Funds' alleged investors seeking restitution on the theory that the Funds
mistakenly made redemption payments prior to BLMIS's collapse, and contemporaneously (and
subsequently) brought more than 300 actions in the United States against a partially overlapping
group of defendants with overlapping theories of liability.  The New York actions were stayed
pending resolution of the BVI actions.  In 2014, the Privy Council, the court of last resort for
appeals from the BVI, affirmed dismissal of the Liquidators' BVI law claims for restitution
based on mistake.  Starting in 2016, the Liquidators discontinued all remaining BVI actions,[6] and
began prosecuting the New York actions under a new theory:  that the payment of the
redemptions was not merely mistaken but the result of bad faith by the Funds' administrator,
Citco Fund Services.

According to the Liquidators' own allegations, every relevant aspect of their constructive
trust claim brought under BVI law is foreign:

- The Defendants are all foreign financial institutions with their principal places of
  business and places of incorporation outside the United States.  *See* FAC ¶ 79.  They
  are not alleged to conduct any business in the United States.

- The Funds are BVI hedge funds that are now in liquidation in their home
  jurisdiction of the BVI. *See* FAC ¶¶ 26-28.

- As a pre-condition to investing in the Funds, the Defendants and the other Citco
  Brokerage Customers were required to enter into Brokerage and Custody
  Agreements ("B&C Agreements") governed by the laws of the Netherlands with
  non-U.S. entities associated with Citco Group Limited ("Citco").  *See* FAC ¶ 8.

---

[5]    FAC ¶ 28.

[6]    *See* Declaration of William Hare in Support of Motion for Leave to Amend ¶ 68, Dkt. No. 145.  In the BVI
Court, the Liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the Fund's alleged
miscalculation of their NAV.  The Liquidators lost those claims at all levels of the BVI court system.  *See Fairfield
Sentry Ltd. (In Liquidation) v. Migani,* [2014] UKPC 9 (April 19, 2014) ("Migani") at ¶ 23 (concluding the
Liquidators' approach is "an impossible construction").  They also lost on their claim that redeeming investors did
not give good consideration for the redemptions.  *See general id.*

- Pursuant to the B&C Agreements, the Defendants and the other Citco Brokerage Customers are alleged to have received redemption payments in bank accounts in the Netherlands or other accounts outside the United States that were sent by the foreign Citco entities. *See* FAC ¶ 106; FAC, Exs. A and B.

This foreign claim was filed in this Court because the Liquidators mistakenly read the subscription agreements for the purchase of shares in the Funds as containing a New York forum selection clause for their claim against the Defendants (and the other Citco Brokerage Customers) redemption of shares. This Court rejected that theory because the Liquidators' claim is solely based on redemptions and does not arise out of the subscription agreements. *Fairfield I*, 2018 WL 3756343, at *11 ("adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").[7] The subscription agreements are also irrelevant, and cannot support jurisdiction, because the Citco Brokerage Customers did not enter into subscription agreements with the Funds. Rather, the Liquidators allege only that the Citco Brokerage Customers entered into B&C Agreements with the Citco entities; the Citco entities, who are not parties to these actions, entered into subscription agreements with the Funds. See FAC ¶ 16. The Liquidators are now grasping to justify maintaining these litigations against the Defendants, a forum with no connection to the redemption transactions at issue. [8]

**B.      Allegations Regarding the Redemption Payments.**

The BVI Liquidators seek to obtain a damages award of approximately $51 million in the aggregate from the non-U.S. Citco Brokerage Customers for redemptions allegedly received (the

---

[7] This ruling is the subject of a pending appeal to the District Court.

[8] *See* Tr. of July 27, 2016 Hr'g at 11-14, *Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.*, Adv. Pro. No. 10-03496 (Bankr. S.D.N.Y. July 28, 2016), Dkt. No. 906 ("THE COURT: It just sounds like you litigated these issues or you should litigate them in the BVI. I don't understand why they're here. … THE COURT: I understand that. But at some point you commenced these cases here …. And the question is why you didn't commence them in BVI?").

"<u>Redemption Payments</u>") outside the U.S., but do not specify the damages they are seeking from the Defendants or any other defendant in this action.[9]  FAC ¶¶ 8, 17.  Specifically, the Liquidators allege that between April 20, 2004, and November 19, 2008, Sentry and Sigma made Redemption Payments to accounts held in the name of CGC NA (an affiliate of Citco, defined by the Liquidators as the "<u>Citco Record Subscribers</u>")[10] aggregating $51,929,665.41.  *Id.*  The Liquidators do not specify the damages they are seeking with respect to the Defendants, but the Liquidators do allege that the Citco Brokerage Customers, through various entities associated with non-U.S. Citco entities,[11] invested outside the United States in the Funds.  FAC ¶ 2.

The Liquidators further allege that the Citco Subscribers[12] have either retained the Redemption Payments for their own accounts or paid all or some portion to the accounts of the Citco Brokerage Customers, including the Defendants.  FAC ¶¶ 15, 33-104.

### C.      Allegations Regarding the Citco Platform.

The Liquidators allege that to invest in the Funds, each of the Citco Brokerage Customers, including the Defendants, entered into a B&C Agreement with a Citco Record

---

[9] For purposes of this motion only, the Defendants take all of the factual allegations—but not legal or boilerplate conclusions couched as factual allegations—in the Citco Complaint as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Defendants reserve all rights to contest any such factual allegations that are false or inaccurate at the appropriate procedural stage of the Citco Proceedings, if necessary.

[10] According to the Liquidators' allegations in a related action in this Court, the Citco Record Subscriber and Citco Record Subscribers were foreign entities organized under the laws of foreign countries, either Curaçao or the Netherlands, members of the Funds, and registered holders of shares in the Funds, which they purchased by entering into Subscription Agreements with the Funds.  *See* First Am. Compl. ¶¶ 32-34, n.1, *Fairfield Sentry Limited (In Liquidation) et al. v. Citco Global Custody N.V. et al.*, Adv. Pro. No. 19-01122-CGM (S.D.N.Y. Nov. 26, 2019), Dkt. No. 19 ("*Citco Global Custody* Compl.").

[11] Citco and the various other Citco-affiliated entities as defined herein are not defendants in the Citco Complaint.

[12] The Liquidators collectively refer to the Citco Record Subscriber, the Citco Record Subscribers, and the Citco Banks, defined herein, as the "<u>Citco Subscribers</u>."  *See* FAC ¶ 8.  This memorandum hereinafter refers to both Citco Record Subscriber and Citco Record Subscribers, as those terms are defined by the Liquidators, as "<u>Citco Record Subscribers</u>" for ease of reference.

Subscriber and a Citco Bank.[13]  *See* FAC ¶ 106 ("each of the Defendants entered into the B&C

Agreements with a Citco Bank and the Citco Record Subscriber.").[14]

Significantly, the Liquidators affirmatively and explicitly allege that to receive

Redemption Payments, the Citco Brokerage Customers were *required* to maintain bank accounts

with the Citco Banks outside of the United States, into which all Redemption Payments were

deposited:

> It was under the B&C Agreements that the Citco Subscribers
> purchased shares in and made redemptions from the Funds for the
> benefit of Defendants, which are the subject of this action.  Under
> the B&C Agreements, the ***Defendants were required to maintain
> bank accounts at the Citco Banks from which and into which 'all
> moneys received from or for the account of' the Defendants were
> deposited*** (the "B&C Accounts").

FAC ¶ 106 (emphasis added).  Accordingly, the Liquidators do not (because they cannot) allege

that the Citco Banks were located in the United States.[15]  Indeed, in a related proceeding in this

Court, the Liquidators have alleged that the Citco Banks were located in the Netherlands, Dublin,

Ireland, or Curacao.  *See Citco Global Custody* Compl. ¶¶ 35-37, 39.  Furthermore, the

Liquidators allege that, pursuant to the B&C Agreements, the Citco Banks had the sole authority

to effect brokerage transactions on behalf of the Citco Brokerage Customers, and to deposit

Redemption Payments in the Citco Brokerage Customers' non-U.S. accounts at the Citco

---

[13] The Liquidators collectively refer to Citco Bank Nederland N.V., Citco Bank Nederland N.V. Dublin Branch, and
the Citco Banking Corporation N.V. as the "Citco Banks."
[14] The Liquidators filed examples of the B&C Agreements in 2017 as exhibits to the Declaration of David J. Molton
in Further Support of Motion for Leave to Amend and in Opposition to Defendants' Motion to Dismiss, *Fairfield
Sentry LTD. (In Liquidation) et al., v. Theodoor GGC Amsterdam, et al.,* Adv. Pro. No. 10-03496 (S.D.N.Y. Mar.
31, 2017), Dkt. No. 1337 ("Molton Decl.").  In one example, the beneficial owner entered into the B&C Agreement
with Citco Banking Corporation N.V. in the Netherlands, as "the Bank," and Citco Global Custody (N.A.) N.V., as
"the Custodian."  *See* Molton Decl., Ex. G.  In another example, the beneficial owner entered into the B&C
Agreement with Citco Bank Nederland N.V. Dublin Branch ("Citco Bank Dublin"), as "the Bank," and Citco Global
Custody N.V. as "the Custodian."  *See* Molton Decl., Ex. H.
[15] Pursuant to the example B&C Agreement filed by the Liquidators, for instance, at least some of the Citco
Brokerage Customers opened and maintained accounts with Citco Bank Dublin to receive the Redemption
Payments.  *See* Molton Decl., Ex. H.

Banks.[16]  Thus, all the Redemption Payments at issue in the Citco Proceedings were made by the offshore Citco Banks to offshore accounts; none was made to or through U.S. banks.

The Liquidators specifically allege that each Redemption Payment was made to an account with "Citco Global Custody (NA) NV, Netherlands."  FAC, Ex. A (Redemption Payments received by the Citco Brokerage Customers from Sentry) and FAC, Ex. B (Redemption Payments from Sigma).[17]  They do this in charts that list every single Redemption Payment at issue, which identify the date of the Redemption Payment, the amount paid, the number of shares redeemed, and the identity and location of the bank account to which each such payment was made.  *Id*.  Below is a sample of entries from these charts, demonstrating the detail with which the Liquidators have alleged that each Redemption Payment was received at bank accounts outside of the United States:

| Payment Date | Redemption Payment | No. of Shares | Bank Account to which Redemption Payment Was Made |
|---|---|---|---|
| April 21, 2004 | $325,094.34 | 334.37 | Citco Global Custody (NA) NV, Netherlands |
| April 21, 2004 | $10,937,878.23 | 11249.96 | Citco Global Custody (NA) NV, Netherlands |

---

[16]  Pursuant to the Liquidators' own allegations, "the Citco Banks were solely responsible for providing brokerage services to the Defendants.  According to the B&C Agreements, these services included … 'effecting [] transactions of and/or relating to the purchase and sale of and dealing in Securities in the name and for the account of the' Defendants".  FAC ¶ 108.  Additionally, the "B&C Agreements with the Defendants applied to all subscriptions and redemptions of Shares in the Funds by the Citco Subscribers on behalf of the Defendants, and all Redemption Payments were, upon information and belief, sent by the Citco Banks (upon their receipt from the Funds) to the Defendants' B&C Accounts."  FAC ¶ 115.  Further, the "B&C Agreements afforded the Citco Banks and the Citco Record Subscribers the power to … 'deposit in the [B&C] Account [at the Citco Banks] all moneys received from or for the account of the [Defendants]'".  FAC. ¶ 118.

[17]  The Liquidators' allegations do not identify the specific Citco Brokerage Customers that received Redemption Payments in accounts at Citco Global Custody, Netherlands or the specific Citco Brokerage Customers that received Redemption Payments in accounts at Citco Bank Dublin.  Nor do the Liquidators' allegations identify the Funds from which Citco Brokerage Customers received Redemption Payments.  For instance, the Liquidators do not specify if the Defendants or any other group of Citco Brokerage Customers received Redemption Payments from all of the Funds or Redemption Payments from just one of Sentry or Sigma.

| July 26, 2004 | $147.542.37 | 148.21 | Citco Global Custody (NA) NV, Netherlands |
|---|---|---|---|

FAC Ex. A.  The column on the far right, entitled "Bank Account to which Redemption Payment Was Made" contains the same information for every Redemption Payment:  "Citco Global Custody (NA) NV, *Netherlands*."  *Id*. (emphasis added).   In the exhibits, that column reads exactly the same for each Redemption Payment that the Citco Brokerage Customers allegedly received and does not differentiate any redemptions received by a particular defendant, including the Defendants.

### D.    Specific Allegations about the Defendants

The Liquidators fail to make any meaningful allegations specific to the Defendants. Indeed, each Defendant is mentioned by name only two times in this Citco Complaint. Specifically, here is a list of every allegation made by the Liquidators that mentions any of the Defendants:

1.    "some or all of the Redemption Payments made to the Citco Subscribers may have been paid to an account holder or holders associated with" the Defendants; and

2.    each of the Defendants are "a corporate entity organized under the laws of Switzerland."

FAC ¶¶ 47-49.

The Liquidators plainly make no allegations specifically about the Defendants that could possibly support an exercise of personal jurisdiction over them.  As explained below, the allegations that the Liquidators make as to the other Citco Brokerage Customers as an undifferentiated group also fail to establish a basis for personal jurisdiction.

9

### III.   <u>ARGUMENT</u>

The Liquidators bear the burden of establishing that this Court has personal jurisdiction over the Defendants. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). To meet this burden, under New York's long-arm statute, the Liquidators must satisfy two exacting pleading requirements: (1) the Defendants must have transacted business within the state; and (2) the claims asserted must arise from that business activity. *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, No. 19-cv-3444 (VSB), 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). The Liquidators also must demonstrate that this Court's exercise of personal jurisdiction over the Defendants "would comport with due process." *Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *3 (internal quotations omitted).

As Judge Bernstein held in the Madoff Trustee litigation with respect to the identical jurisdictional issue, each transaction involving Redemption Payments is a separate claim. Accordingly, the Liquidators must establish the Court's jurisdiction over the Defendants for ***each individual Redemption Payment***, as the Trustee was required to do. *In re Bernard L. Madoff*, 594 B.R. at 190 ("Each transfer is a separate claim, . . . and the Trustee must establish the court's jurisdiction with respect to each claim asserted.") (internal quotations and citations omitted). They have failed to do so here. Rather, the Liquidators have meticulously alleged that every single Redemption Payment was paid to an offshore bank; each claim therefore is foreign to the United States.

The Liquidators advance two primary bases for personal jurisdiction against the Citco Brokerage Customers. Both fail.

<u>First</u>, despite having painstakingly explained the structure and details of how the Redemption Payments were paid to the Citco Brokerage Customers, via off-shore bank accounts,

as detailed above, the Liquidators now insert into their Citco Complaint the conclusory and contradictory statement that "some or all of the Redemption Payments were received at, upon information and belief, designated United States-based bank accounts" as purportedly directed by the Citco Brokerage Customers.  FAC ¶ 133   This solitary, unsupported "information and belief" assertion (contained in a separate part of the Citco Complaint from the other generic jurisdictional allegations) is directly contradicted by the  specific allegations in the Citco Complaint.  As explained below, this belated, self-serving, and conclusory allegation cannot support the assertion of jurisdiction.

Second, the Liquidators allege, generally, in a broad-brush manner without mentioning the Defendants or any other individual defendant, that the Citco Brokerage Customers "purposely availed themselves of laws of the United States and the State of New York" by investing in the Funds allegedly "knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS."  FAC ¶ 20.  This jurisdictional theory likewise fails, because it is not relevant to the Liquidators' claim for constructive trust. That claim is wholly unrelated to the Funds' investments in, or redemptions from BLMIS—and indeed, the Liquidators seek to recover Redemption Payments from the Citco Brokerage Customers in these proceedings whether or not those payments were funded with redemptions from BLMIS.  As the Liquidators concede, moreover, some of the payments were not funded with redemptions from BLMIS.  The claim for constructive trust turns instead on (1) the Redemption Payments from the Funds that, as the Liquidators have affirmatively alleged and argued, took place entirely overseas, and (2) the calculation of those payments by the Liquidators' Dutch fund administrator, Citco Fund Services, that occurred in the Netherlands. This theory also fails because the Funds themselves, and not the Citco Brokerage Customers,

placed the investment in BLMIS, and a defendant's mere knowledge of a plaintiff's forum contacts is insufficient, under the Supreme Court's decision in *Walden v. Fiore*, to establish personal jurisdiction. 571 U.S. 277, 286 (2014).

      **A.**      **The Redemption Accounts Do Not Establish Personal Jurisdiction.**

          1.      The Liquidators' Allege that the Redemption Process Did Not Occur in the United States.

As set forth *supra* at Section II. C., the Liquidators' own allegations that the Redemption Payments were paid to accounts outside the United States defeat any assertion of personal jurisdiction over the Defendants based on the Redemption Payments. *See Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*, No. 03 Civ. 2936(MBM), 2004 WL 1620874, at *5 (S.D.N.Y. July 20, 2004) (holding non-U.S. bank did not engage in any jurisdictionally relevant activities in New York where the non-U.S. bank did not use its U.S. correspondent account to effect any transactions giving rise to plaintiff's claims); *see also Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, No. 19-CV-6046 (VSB), 2020 WL 1166053, at *5 (S.D.N.Y. Mar. 11, 2020) (Broderick, J) (holding plaintiff failed to make a *prima facie* showing with respect to section 302(a)(1) because plaintiff did not allege "the existence of a single act directed at New York out of which these claims arise.").

The Liquidators' unsupported allegation that "some or all of the Redemption Payments were received at, upon information and belief, designated United States-based bank accounts" as purportedly directed by the Citco Brokerage Customers (FAC ¶ 133) cannot create a U.S.-jurisdictional nexus for the Redemption Payments, particularly where it is directly contradicted by the Liquidators' far more robust and specific allegations regarding the receipt of the Redemption Payments into Netherlands accounts.

First, the Liquidators do not allege any facts to support of this single, self-serving, and unsubstantiated allegation. Conclusory allegations like this, based solely on "information and belief," are inadequate as a matter of law. *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (holding allegations based "upon information and belief" were entirely speculative where the complaint contained no allegations of fact which, if true, would have supported such allegations); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (explaining that a "conclusory allegation on information and belief" is insufficient to make a claim plausible where the complaint's factual allegations do not raise a right to relief above the speculative level); *Rose v. Goldman, Sachs & Co. Inc.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (finding that a complaint with no specific factual allegations to enable the court to evaluate information and belief assertions failed to state a claim).

Second, as demonstrated above, the detailed factual allegations in the Citco Complaint flatly ***contradict*** the Liquidators' isolated assertion that the Redemption Payments were supposedly paid to U.S. bank accounts. The Liquidators' own allegations and the terms of the B&C Agreements state just the opposite: the Redemption Payments occurred, by design, entirely outside the United States. *See L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011) (holding allegations that are "contradicted by more specific allegations or documentary evidence—from the Complaint and the exhibits attached thereto" need not be accepted); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint.").

A comparison with other complaints makes clear that the Liquidators have not and cannot allege that the Redemption Payments were paid at bank accounts based in the United States. In

13

those other complaints, the Liquidators allege specific facts that the Redemption Payments they seek to reverse were paid to accounts in the United States. For instance, in *Fairfield Sentry Limited (In Liquidation) et al. v. Banco Santander (Suisse) S.A.*, the Liquidators alleged that defendants "maintain[ed] bank accounts in the United States at Deutsche Bank Trust Company Americas in New York, and in fact receiv[ed] Redemption Payments in those United States-based and/or New York-based accounts." Third Amended Complaint ¶ 19, *Fairfield Sentry Limited (In Liquidation) v. Banco Santander (Suisse) S.A.*, Adv. Pro. No. 10-03509-CGM (S.D.N.Y. Aug. 2, 2019), Dkt. No. 52. The Liquidators further alleged that each Redemption Payment was made to "Deutsche Bank Trust Company Americas" in "New York." *Id.* at Ex. A. The Liquidators' complaint against Banco Santander (Suisse) S.A. is not an outlier. The Liquidators made similar factual allegations in other complaints. *See* Table 1, attached hereto.

Without more, such allegations, had they been made, are insufficient to establish jurisdiction. Here, however, the Liquidators made no similar allegations regarding the receipt of Redemption Payments in U.S. bank accounts. Instead, the Liquidators affirmatively pled that the receipt of Redemption Payments by the Citco Brokerage Customers was exclusively in accounts that were located ***outside the United States***.

Finally, the allegation that some of the Redemption Payments may have been received in U.S.-based accounts was not added until the Liquidators filed their proposed Fourth Amended Complaints in 2017, nearly a decade into these proceedings.[18] The first four iterations of the complaints consistently failed, for obvious reasons, to allege that the Redemption Payments were paid to U.S. bank accounts.[19]

---

[18] *See* Molton Decl., Exs. E and F (proposed Fourth Amended Complaints, filed March 31, 2017).
[19] *See* Compl., Dkt. No. 8 (Sept. 21, 2010), First Am. Compl., Dkt. No. 67. (Jan. 10, 2011), Second Am. Compl., Dkt. No. 86 (May 3, 2011), and Third Am. Compl., Dkt. No. 121 (July 20, 2012).

2.    The Liquidators' Admit that the Redemption Payments were Paid to Non-U.S. Accounts.

The Liquidators recently confirmed that the Redemption Payments were entirely outside of the United States in their opening appellate brief to the District Court challenging certain of Judge Bernstein's holdings in *Fairfield I*, *Fairfield II*, and *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"). The Liquidators affirmatively represented to the District Court that all Redemption Payments to the Citco Brokerage Customers, including the Defendants, occurred outside the United States:

> ***The redemption transfers at issue here were purely foreign***. The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). [***E***]***very relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States***.

Liquidators' Appeal at 24 (emphasis added). There can be no doubt that the Redemption Payments occurred completely outside the United States.

**B.    The Alleged Foreseeability of the Funds' Investment in BLMIS Does Not Establish Personal Jurisdiction Over the Defendants.**

The Liquidators allege that the Citco Brokerage Customers "purposely availed themselves of the laws of the United States and the State of New York" by investing in the Funds allegedly "knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS." FAC ¶ 20. But that allegation is jurisdictionally irrelevant for two reasons.

First, the non-party specific allegation that the Citco Brokerage Customers allegedly knew that their investments in the Funds would be comingled with other investments and the net surplus of those investments would ultimately be invested in BLMIS does not give rise to this litigation and thus does not support jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an

appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV Osus Ltd. v. UBS AG*, *UBS S.A.,* 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on 'the relationship among the defendant, the forum, and the litigation'"). The Liquidators' claim is not predicated on whether or not the funds they seek to *recover* were ever placed with or controlled by BLMIS. Nor does the Liquidators' claim focus on the decision to *invest* with the Funds as the basis for either liability or jurisdiction. *See Fairfield I*, 2018 WL 3756343, at *4-12 (finding subscription agreements irrelevant to claim not based on subscription). The Liquidators' claim for constructive trust relates to and arises out of the calculation of the NAV by the Funds' Dutch administrator, Citco Fund Services, and the foreign Funds' subsequent alleged disbursement of the Redemption Payments abroad on the basis of those calculations from their Irish bank accounts to bank accounts in the Netherlands. *See* FAC ¶¶ 137, 162, 196. The Citco Subscribers, on behalf of the Citco Brokerage Customers, made their requests for the Redemption Payments by tendering shares to Citco Fund Services in the Netherlands, *see Migani* ¶¶ 14-16 ; and, in turn, the Redemption Payments were funded from the Funds' bank accounts held at Citco Bank in Ireland, *see Fairfield III* at *7 (finding all transfers paid by Citco Bank). As the Liquidators themselves maintain, every element of the transaction is "purely foreign." Liquidators' Appeal at 24.

<u>Second,</u> knowledge that the Funds would invest some of their own money with BLMIS in New York is insufficient as a matter of law to support jurisdiction over the Citco Brokerage Customers. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Walden*, 571 U.S. at 284. In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful seizure of money in a Georgia airport.

*Id*. at 288.  The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over the police officer in Nevada.  *Id*. at 289.  As the Supreme Court explained, the foreseeability of a plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over the defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id*.  Instead, "[t]he substantial connection … between the defendant and the forum State necessary for a finding of minimum contacts must come about by <u>an action of the defendant purposefully directed toward the forum State</u>." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 112 (1987) (quotation omitted) (emphasis in original).  Even if true, the Liquidators' allegations that the Defendants knew that the Funds would invest with BLMIS does not satisfy *Walden*, and is insufficient to haul the Defendants into a New York court.

Moreover, the Liquidators' allegations, furthermore, establish that this factual scenario is not even true.  Indeed, the Liquidators do not allege that the Defendants contracted or invested directly with BLMIS.  Rather, the Liquidators allege that, in order to invest in the Funds (not BLMIS), the Defendants had to contract with the Citco Subscribers.  *See* FAC ¶¶  8, 106. Furthermore, while some of the money invested in the Funds was transferred to BLMIS, and some of the Redemption Payments may have been funded by transfers from BLMIS, that was not universally or even typically the case.  As the Liquidators' allege, the Funds netted subscriptions against redemptions, and accordingly, often funded Redemption Payments with money that came from other subscriptions.  Thus, that money was never placed with BLMIS in New York at all. *See* FAC¶ 130 (alleging that subscription money was used to pay redemptions as a "shortcut").

The law does not support the Liquidators' expansive view that an investment company can sue its investors in any jurisdiction where that investment company itself decides to make investments.

### C. The Exercise of Personal Jurisdiction over the Defendants Would Not Comport with Due Process.

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("The Due Process Clause … gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit.") (citation omitted).

As demonstrated above, the Citco Brokerage Customers had no contacts whatsoever with the United States related to the Liquidators' remaining claim to impose a constructive trust on the Redemption Payments. Accordingly, the exercise of personal jurisdiction over the Citco Brokerage Customers, including the Defendants, would not comport with due process. *See Walden*, 571 U.S. at 286 ("Due Process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.") (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Liquidators' Proceedings should be dismissed with prejudice under Rule 12(b)(2) for failure to allege personal jurisdiction over the Defendants.

Dated: October 29, 2021
New York, New York

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

*/s/ Ari D. MacKinnon_____*
Ari D. MacKinnon
Thomas S. Kessler

One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000

*Counsel for BNP Paribas (Suisse)
SA, BNP Paribas (Suisse) SA Ex
Fortis (n/k/a BNP Paribas (Suisse)
SA), BNP Paribas (Suisse) SA Private
(n/k/a BNP Paribas (Suisse) SA)*

**Table 1**

| | | | |
|---|---|---|---|
| 1 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.*, 10-ap-03496-CGM (Bankr. S.D.N.Y.) | "… and maintaining bank accounts in the United States at Citibank NA, and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts." Dkt. No. 1463-1 at ¶ 19. | Identifying "Citibank NA, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id.* at Ex. A. |
| 2 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Sudameris, et al.*, 10-ap-03749-CGM (Bankr. S.D.N.Y.) | "… maintaining bank accounts in the United States at Intesa BCI and Banca Intesa SpA, and in fact receiving Redemption Payments in those United States-based accounts." Dkt. No. 16 at ¶ 20. | Identifying "Intesa BCI New York, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id.* at Ex. A. |
| 3 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Privee Edmond De Rothschild (Eur.), et al.*, 10-ap-03505-CGM (Bankr. S.D.N.Y.) | "… and maintaining bank accounts in the United States at Bank of new York and Wachovia Bank NA and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts. Banque Privee and the Beneficial Shareholders selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption payments at issue in this action into those bank accounts." Dkt. No. 82 at ¶ 19. | Identifying "Wachovia Bank NA, New York, NY" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id.* at Ex. A. |