UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>Debtor in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>Defendants. | Adv. Pro. No. 10-03635 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>Defendants. | Adv. Pro. No. 10-03636 (CGM) |

**MEMORANDUM OF LAW OF DEFENDANT
NATIONAL BANK OF KUWAIT S.A.K.P. IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF JURISDICTION**

# TABLE OF CONTENTS

I.      BACKGROUND OF THE MOTION ……………….................................    1

II.     FACTS ……………………………………………………………    3

        A.   History of the Liquidators' Actions …………………………………..…    3

        B.   The Liquidators' Allegations about Redemption Payments ………………    5

        C.   The Liquidators' Allegations Regarding the Citco Group's Process …………..    8

III.    ARGUMENT ……………………………………………………...    10

        A.   The Liquidators' Generalized "Information and Belief" Allegation
             Contradicting Their Detailed, Specific Allegations Has No Legal Effect ……...    11

        B.   The Liquidators' Allegation that the Defendants Intended That their Money Be
             Invested indirectly in BLMIS Does Not Establish a Basis for
             Jurisdiction …………………………………………………………....    13

        C.   The Court's Exercise of Personal Jurisdiction over the Citco Brokerage
             Defendants Would Violate Fundamental Fairness under Due Process Analysis .    15

             CONCLUSION ………………………………………...…………………    16

             Table 1 ……………………………………………………………    17

# TABLE OF CASES

| Decision | Page |
|---|---|
| *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ………………………… | 12 |
| *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987) ……………… | 14 n.14 |
| *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2017) ……………………….. | 10, 15 n.15 |
| *Burger King v. Rudzewicz*, 471 U.S. 462 (1985) …………………………………… | 15 |
| *Cody v. Charter Commc'ns, LLC,* No. 17-CV-7118 (KMK) (S.D.N.Y. July 6, 2020) | 7 n.7 |
| *College Essay Optimizer, LLC v. Edswell, Inc.*, 2015 WL 5729681 (S.D.N.Y. Sept. 30, 2015) …………………………………………………………………….. | 15 n. 15 |
| *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81 (2d Cir. 2001) …………..………… | 9 |
| *Fairfield Sentry Limited (In Liquidation) v. Citco Global Custody N.V.*, Adv. Pro. No. 19-01122-CGM, Dkt. No. 19 (Nov. 26, 2019) …………………………….. | 7, 9 |
| *Fairfield Sentry Limited (in Liquidation) v. Migani*, [2014] UKPC 9 (Privy Council, Apr. 16, 2014) …………………………………………………………… | 3 n.4, 13 |
| *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ………….. | 14 |
| *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ……………………… | 12 |
| *Homeschool Buyers Club, Inc.*, 2020 WL 1166053 (S.D.N.Y. 20200 …………….... | 11 |
| *In re Bernard L. Madoff*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018) …………………….. | 10 |
| *In re Fairfield Sentry Ltd.*, 2018 WL 3756343 (Aug. 6, 2018) ("*Fairfield I*") ……... | 1, 4, 13, 14 |
| *In re Fairfield Sentry Ltd.*, 596 B.R. 275 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*") ….. | 1, 14 |
| *In re Fairfield Sentry Ltd.*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*") ……………………………………………………….... | 13, 14 |
| *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) ………………… | 12 |
| *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313 (S.D.N.Y. 2015) ……………… | 7 n.7 |

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*, 2004 WL 1620874 (S.D.N.Y. July 20, 2004) …………………………………………............    11

*Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216 (2d Cir. 2017) ...……………….    11

*Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238 (S.D.N.Y. 2001) ………………    12

*Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410 (S.D.N.Y. 2009) ….    15 n.15

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521(S.D.N.Y. 2017) ………………………………………………………………...    15 n.15

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) ………………………….    15

*Walden v. Fiore*, 571 U.S. 277 (2014) ……………………………………….................    14, 14 n.14, 15

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283 (S.D.N.Y. 2015) …….............    15 n. 15

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) …………….............    15

*Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) ………………………….    15 n. 15

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ……………………………………………...    10, 15 n.15

Defendant National Bank of Kuwait S.A.K.P, ("NBKK"), by its undersigned counsel, respectfully submits this memorandum of law in support of NBKK's motion under FRCP 12(b)(2) to dismiss for lack of personal jurisdiction the two substantially identical actions against NBKK brought by the Joint Liquidators ("Liquidators") of three Fairfield investment funds. Both actions are captioned *Fairfield Sentry Ltd. v. ABN AMRO Schweiz AG* and are filed under Adv. Pro. Nos. 10-03635 and 10-3636 (Bankr. S.D.N.Y.).[1] The original complaints in these actions were filed in 2010, affording the Liquidators more than eleven years to investigate their claims and assertions, during which time they have amended these complaints five times. Dismissal should therefore be with prejudice.

## I.    BACKGROUND OF THE MOTION

This Court has dismissed for failure to state a claim all but one of the claims the Liquidators asserted against NBKK. *See In re Fairfield Sentry Ltd.*, 2018 WL 3756343 (Aug. 6, 2018) ("*Fairfield I*"); *In re Fairfield Sentry Ltd.*, 596 B.R. 275 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"). Those dismissals are before the District Court. The one remaining claim asks for imposition of a "constructive trust" under the laws of the British Virgin Islands ("BVI") over unspecified redemption payments allegedly received by NBKK and seventy-three other defendants. FAC-3635 ¶¶ 198-209; FAC-3636 ¶¶ 206-16. The claim alleges that NBKK had imputed knowledge of actual knowledge of third-party administrators hired by the Fairfield funds about Madoff's fraud and funds' asset value overstatements at times when NBKK allegedly redeemed fund shares. Unlike other "knowledge defendant" lawsuits, the two naming against NBKK do not allege that it had such knowledge itself. The complaints in these two

---

[1] The operative complaint in each action is the Fifth Amended Complaint, attached as Exhibit A to the Notice of Motion. For simplicity of citation, the Fifth Amended Complaints will be cited as "FAC-3635" and "FAC-3636" with relevant paragraph citations.

actions describe other relevant played by Citco-affiliated entities and are called the "Citco Brokerage Proceedings" and the complaints the "Citco Brokerage Complaints." There are seventy-four defendants in the two Citco Brokerage Proceedings. For the purpose of this motion, the allegations against them are identical.[2] As to NBKK, the only allegations specific to it are Kuwaiti nationality and address in Kuwait City, Kuwait. FAC-3635 ¶ 82; FAC-3636 ¶ 88.

The Citco Brokerage Complaints make affirmative allegations that show on the face of the pleadings that the Liquidators have not only failed to "make a start" of showing, alleging a plausible prima facie basis sufficient for the court to exercise its jurisdiction over NBKK but affirmatively excludes a finding of personal jurisdiction over it. This result is not changed by the plaintiffs' single, generalized, "information and belief" assertion that "some or all" defendants designated NYC correspondent banks to receive redemption payments, FAC-3635 ¶ , 204; FAC-3636 ¶ 141 212, which the law in this Circuit disregards as inadequate. The Liquidators' complaints allege with redemption-by-redemption specificity that every single redemption payment at issue in the Citco Brokerage Proceedings was paid to an account in the Netherlands not in the United States. FAC-3635 ¶¶ 15, 82; FAC-3636 ¶¶ 15, 88. The law credits the concrete, specific allegations excluding jurisdiction over the vague "information and belief," "some or all" assertion. The only competent allegation is plaintiffs' admission that personal jurisdiction is lacking. In fact, the Liquidators recently admitted in the District Court appeal form dismissals of the other claims in these cases that "every relevant component of the [redemption] transactions at issue here occurred outside the territorial jurisdiction of the United States."

---

[2] NBKK understands that the other seventy-three defendants in the Citco Brokerage Proceedings intend to file separate, independent dismissal motions for lack of personal jurisdiction. The only allegations in the Citco Brokerage Complaints that are unique to an individual defendant are allegations alleging place of incorporation and registered addresses. FAC-3635 ¶¶ 33-104; FAC-3636 ¶¶ 34-112. This means each defendant in these cases is mentioned by name in only one or two paragraphs while all other allegations are "group pleading" against all seventy-four defendants without individualization or specification. FAC-3635 ¶¶ 198-209; FAC-3636 ¶¶ 206-16.

*Appellants' Brief in Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-cv-03911-VSB, Dkt. No. 440 at 24 (S.D.N.Y. July 21, 2021) ("Liquidators' Appeal") (emphasis added).

## II. FACTS

### A. History of the Liquidators' Actions

These Chapter 15 cases are ancillary to the Fairfield funds' foreign liquidation proceedings in the BVI. At first, the Liquidators sued several of the Fairfield funds' alleged investors in BVI court between October 2009 and March 2010. They sought restitution on the theory that the funds mistakenly made redemption payments based on a miscalculated Net Asset Value before BLMIS collapsed.[3] They then brought more than three hundred actions in New York against thousands of defendants on different theories of liability. Those actions were stayed pending resolution of the BVI actions, which were poised to, and did, present potentially dispositive rulings on claims in the BVI and New York actions.

In 2014, the English Privy Council, the court of last resort for appeals from BVI courts, affirmed dismissal of the Liquidators' BVI law claims for restitution based on mistake, and the Liquidators then discontinued all their BVI lawsuits.[4] Thereafter, the Liquidators adopted a new "constructive trust" theory as to NBKK and other Citco Brokerage defendants that the payments of redemptions were not merely mistaken but resulted from bad faith, although not the

---

[3] *See* Declaration of William Hare in Support of Liquidators' Motion for Leave to Amend, ¶ 15 (Adv. Pro No. 10-03635 Dkt. 145; Adv. Pro. No. 10-03636 Dkt. 164) (the "Hare Decl."). Mr. Hare was an attorney with Forbes Hare, a BVI law firm that advised the Liquidators in the BVI proceedings. *Id* at ¶ 5.

[4] *See* Hare Decl. ¶ 68. In the BVI courts, the Liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the fund's alleged miscalculation of their NAV. The Liquidators lost on the "mistaken payment" claims at all levels of the BVI court system, *Fairfield Sentry Limited (in Liquidation) v. Migani*, [2014] UKPC 9 ) at ¶ 23 (Privy Council, Apr. 16, 2014) (concluding the Liquidators' approach is "an impossible construction"), and on their claim that redeeming investors did not give "good consideration" for the redemption payments. *See id. passim.*

3

defendants' bad faith but the bad faith of the Fairfield funds' administrator, Citco, with which the

Liquidators assert NBKK and the other defendants should be tarred.[5] In making that assertion,

the Liquidators had to concede that every relevant aspect of the claim is foreign to the US. The

Citco Brokerage Complaints allege that:

- NBKK is non-US (Kuwaiti) financial institution with its principal place of business and incorporation outside the US (in Kuwait). *E.g.*, FAC-3635 ¶ 82; FAC-3636 ¶ 88. The Liquidators do not allege NBKK or the other defendants conduct business in the US;

- the Fairfield funds are BVI companies and are in liquidation in the BVI, which is the "foreign main proceeding" supporting the Chapter 15 jurisdiction over these cases. FAC-3635 FAC ¶¶ 26-28; FAC-3636 ¶¶ 26-29;

- NBKK was required to enter into Brokerage and Custody Agreements ("B&C Agreements"), governed by Netherlands law, with non-U.S. entities associated with Citco Group Limited ("Citco"). FAC-3635 ¶ 8; FAC-3636 ¶ 8; and

- the B&C Agreements required NBKK to receive all redemption payments sent from non-US Citco entities' non-US bank accounts in other non-US bank accounts outside the United States. FAC-3635 ¶ 106, 134, and Exs. A, B; FAC-3636 ¶ 114, 142, and Exs. A-C.

Earlier in these cases, the Liquidators pressed the view that jurisdiction over the

defendants is proper based on their incorrect reading of the Fairfield funds' subscription

agreements for purchasing shares, which contain a New York forum selection clause. However,

this court held that, because the claim in these cases is for redemptions not purchases, the

subscription agreements and forum selection clauses are inapplicable and do not confer

jurisdiction. *Fairfield I*, 2018 WL 3756343, at *11 (adhering to the Privy Council's holding

"that the Subscription Agreement was irrelevant to actions to recover the inflated redemption

payments").[6] Furthermore, the Liquidators have not alleged that NBKK even entered into a

---

[5] The various Citco-affiliated entities are not defendants in these actions against NBKK and the other Citco Brokerage Defendants.

[6] This ruling is a subject of a pending appeal before the District Court.

4

subscription agreement with the Fairfield funds and, instead, allege it entered into a B&C

Agreement <u>with the Citco entities</u>, which in turn entered into subscription agreements with the

Fairfield funds pursuant to which <u>the Citco entities</u> subscribed for shares in the funds. FAC-3635

¶¶ 16, 22; FAC-3636 ¶¶ 16, 22.

The Liquidators plainly have made no creditable allegations against NBKK to allow the

Court to exercise personal jurisdiction over them; the Complaints and the Liquidators' admission

say the is no connection between NY and the redemption payment claims. This court made the

point pithily:  "THE COURT: It just sounds like you litigated these issues or you should litigate

them in the BVI. I don't understand why they're here. … THE COURT: I understand that. But at

some point, you commenced these cases here …. And the question is why you didn't commence

them in BVI?"  Tr. July 28, 2016, Hr'g, at 11-14.

### B.    The Liquidators' Allegations about Redemption Payments

In these proceedings, the Liquidators seek an aggregate amount of approximately $1.76

billion from NBKK and the other Citco Brokerage defendants based on alleged separate

redemption payments they assert were paid and received <u>outside</u> the US. However, the

Liquidators do not identify any specific redemption by, any specific payment to, or any specific

damages sought from NBKK (or any other Citco Brokerage defendant), lumping all the

defendants together in a "group pleading" and failing to provide notice of these crucial points of

pleading when, what, where, and how. *E.g.,* FAC-3635 ¶¶ 8, 17, 198-209; FAC-3636 ¶¶ 8, 17,

206-16. In fact, the plaintiffs do not even allege that NBKK or any other defendant actually

received redemptions subject to the action but only that "some or all" did. This is so even though

the Liquidators have had years to study the Fairfield funds,' BLMIS,' and reportedly Citco's and

others' documents to which they have had possession or access. They do not allege that the

defendants have joint or joint and several liability but are responsible for their own alleged
redemptions, so "group pleading" is especially improper.

By contrast, the complaints make explicitly clear in specific allegations that show the
court lacks personal jurisdiction over NBKK. The Liquidators allege that all the Citco Brokerage
defendants (i) are non-US entities that (ii) engaged in alleged non-US transactions (iii) outside
the US with (iv) other non-US entities. The Liquidators expressly allege that every redemption
payment by every Citco Brokerage defendant was paid to a Netherlands bank, not a US
correspondent bank. FAC-3635 ¶ 106, 134, and Exs. A, B; FAC-3636 ¶ 114, 142, and Exs. A-C.
These specific allegations bear directly on the court's jurisdiction over these defendants in this
action and expressly preclude a finding of a plausible prima facie case that personal jurisdiction
is present.

In FAC-3635, the Liquidators allege that the Fairfield Sentry and Sigma funds, after
receiving notices of redemptions, made redemption payments to accounts of CGC NA (a Citco
affiliate that the Liquidators call the "Citco Record Subscriber"). These redemptions allegedly
aggregated about $52 million collectively for some or all the defendants. FAC-3635 ¶ 8. They
allege in FAC-3636 that the Fairfield Sentry, Sigma, and Lambda funds, after receiving notices,
made redemption payments to accounts of Citco Global Custody NV, Citco Global Custody
(NA) NV, Citco Fund Services (BVI), and Citco Fund Services (Europe) BV – all non-US
entities, which the Liquidators call the "Citco Record Subscribers") (together with the Citco
Record Subscriber, the "Citco Subscribers.") aggregating about $1.7 billion collectively for some
or all defendants. FAC-3636 ¶ 8.

In a related action before this Court, the Liquidators allege that Citco Subscribers (i) were
all foreign entities organized under the laws of Curaçao or The Netherlands; (ii) were all
members of the Fairfield funds; and (iii) were all registered holders of shares in the Fairfield

6

funds (iv) whose shares they obtained by their entering into Subscription Agreements with the funds. *Fairfield Sentry Limited (In Liquidation) v. Citco Global Custody N.V.*, Adv. Pro. No. 19-01122-CGM, Dkt. No. 19 ¶¶ 32-34 n.1 (Nov. 26, 2019) ("*Citco Global Custody* Compl.").[7] Thus, the Liquidators allege that the BVI-based and BVI-incorporated funds made the payments to Dutch and Caribbean companies, not to NBKK and not to correspondent banking accounts in the US.

The Liquidators then allege that the non-US Citco Subscribers <u>retained</u> or paid <u>all or some portion</u> of what they received from the Fairfield funds to Citco's Brokerage Customers, including NBKK, admitting than any particular defendant may not have received any redemption at all or when. They do not specify the amounts, times, or from which redemption payment(s) NBKK or any other defendant allegedly received money. This fails to provide a basis for the court to find personal jurisdiction and also fails to give reasonable notice to NBKK and the Citco Subscribers of the basis for the Liquidators' claim.

The Liquidators' complaints are very specific about this: they allege in the Exhibits to the Citco Brokerage Complaints that <u>every</u> redemption payment by the Citco Scribers to the Citco Brokerage defendants was made to an account at a Dutch entity, namely "Citco Global Custody (NA) NV, Netherlands."[8] Those Exhibits are captioned, "Redemption Payments Received by Defendants from Sentry." "Defendants" means the Citco Brokerage defendants. The last column of every chart is the same, "Bank Account to which Redemption Payment Was Made." Every

---

[7] The Court may take notice of filings pleadings in other cases. *E.g., Cody v. Charter Commc'ns, LLC*, No. 17-CV-7118 (KMK) at 6*n.2 (S.D.N.Y. July 6, 2020); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) ("In considering a motion to dismiss, a court is permitted to take judicial notice of public records, which includes complaints and other documents filed in federal court." (citation omitted)).

[8] FAC-3635 at Exs. A ("Redemption Payments received by Citco's Brokerage Customers from Sentry") and B ("Redemption Payments from Sigma"); FAC-3636 at Exs. A ("Redemption Payments from Sentry"), B ("Redemption Payments from Sigma"), and C ("Redemption Payments from Lambda").

entry in the Exhibits for every payment from the Citco Subscribers names the same Dutch bank:

Here is a representative extract from the Exhibits:

| Payment Date | Redemption Payment[9] | No. of Shares | Bank Account to which Redemption Payment Was Made |
|---|---|---|---|
| April 21, 2004 | $325,094.34 | 334.37 | Citco Global Custody (NA) NV, Netherlands |
| April 21, 2004 | $10,937,878.23 | 11249.96 | Citco Global Custody (NA) NV, Netherlands |
| July 26, 2004 | $147.542.37 | 148.21 | Citco Global Custody (NA) NV, Netherlands |

### C.    The Liquidators' Allegations Regarding the Citco Group's Process

The Liquidators allege that, to invest in a fund, each of the non-US Citco Brokerage

defendants entered into a "B&C Agreement" with one of the non-US Citco Record Subscribers

and a non-US Citco Bank.[10]  FAC-3635 ¶¶ 8, 106; FAC-3636 ¶¶ 8, 114.[11]  The Liquidators

allege that each Citco Brokerage defendant was required by the B&C Agreements to maintain

non-US Citco Bank account to receive redemption payments:

> It was under the B&C Agreements that the Citco Subscribers purchased shares in
> and made redemptions from the Funds for the benefit of Defendants, which are
> the subject of this action. Under the B&C Agreements, the Defendants were
> required to maintain bank accounts at the Citco Banks from which and into which

---

[9]  The Exhibits, however, do not show which Citco Brokerage defendant(s) allegedly received redemption payments in the aggregate amounts transferred on the various payment dates.

[10]  The Liquidators define "Citco Banks" as the non-US entities Citco Bank Nederland N.V., Citco Bank Nederland N.V. Dublin Branch, and the Citco Banking Corporation N.V. as the "Citco Banks."

[11]  The Liquidators filed examples of the B&C Agreements in 2017 as exhibits to the Declaration of David J. Molton in Further Support of Motion for Leave to Amend and in Opposition to Defendants' Motion to Dismiss. Adv. Pro. No. 10-03496, Dkt. No. 1337 ("Molton Decl."). In one example, the beneficial owner entered into the B&C Agreement with Citco Banking Corporation N.V. in the Netherlands, as "the Bank," and Citco Global Custody (N.A.) N.V., as "the Custodian." *See* Molton Decl. Ex. G. In another example, the beneficial owner entered into the B&C Agreement with Citco Bank Nederland N.V. Dublin Branch ("Citco Bank Dublin"), as "the Bank," and Citco Global Custody N.V. as "the Custodian." *See* Molton Decl. Ex. H.

'all moneys received from or for the account of' the Defendants were deposited (the "B&C Accounts"). (Emphasis added.)

FAC-3635 ¶ 106; FAC-3636. Thus, the Liquidators specifically allege that the Citco Brokerage defendants entered into purchases with non-US Citco entities and received any redemption payments in accounts only at a specific non-US Citco bank, not in or through banks located in the US. Indeed, in a related proceeding in this Court, the Liquidators have alleged that the Citco Banks were the Netherlands, Dublin, Ireland, or Curacao. *See Citco Global Custody* Compl. ¶¶ 35-37. Furthermore, the Liquidators allege that, pursuant to the B&C Agreements, the Citco Banks had the <u>sole authority</u> to effect brokerage transactions on behalf of the Citco's Brokerage defendants, including NBKK, and to deposit redemption payments in their non-U.S. accounts at the Citco Banks.[12] Thus, the Liquidators have affirmatively and specifically alleged that all redemption payments at issue in the Citco Brokerage Proceedings were made by non-US funds to non-US Citco Banks and then to non-US accounts of the Citco Brokerage defendants, and that none of them was made to or through U.S. banks, whether in correspondent or other accounts.

## III. ARGUMENT

The Liquidators must show that this Court has personal jurisdiction over NBKK. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). To meet this burden, the Liquidators must plausibly allege with non-conclusory allegations that (1) the defendant purposefully transacted business within the state; and (2) the claims asserted must arise from that

---

[12] The Liquidators allege, "[T]he Citco Banks were solely responsible for providing brokerage services to the Defendants. According to the B&C Agreements, these services included … 'effecting [] transactions of and/or relating to the purchase and sale of and dealing in Securities in the name and for the account of the Defendants." FAC-3635 ¶ 108; FAC-3636 ¶ 116. They also allege that the "B&C Agreements with the Defendants applied to all subscriptions and redemptions of Shares in the Funds by the Citco Subscribers on behalf of the Defendants, and all Redemption Payments were, upon information and belief, sent by the Citco Banks (upon their receipt from the Funds) to the Defendants' B&C Accounts." FAC-3635 ¶ 115; FAC-3636 ¶ 123. Further, they allege that "B&C Agreements afforded the Citco Banks and the Citco Record Subscribers the power to … 'deposit in the [B&C] Account [at the Citco Banks] all moneys received from or for the account of the [Defendants]'". FAC-3635 ¶ 118; FAC-3636 ¶ 126.

business activity. *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,
2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.) (citing *Best Van Lines, Inc. v.
Walker*, 490 F.3d 239, 246 (2d Cir. 2017)). The claims asserted here are, specifically, alleged
redemptions of Fairfield fund shares, not buying or holding shares. In addition, even if that
pleading burden is met, the Liquidators must  show that this Court's exercise of personal
jurisdiction "would comport with due process." *Zim Integrated Shipping Servs. Ltd.*, 2020 WL
5503557, at *3 (internal quotations omitted).

Judge Bernstein held in the Madoff Trustee litigation on the identical jurisdictional issue
that each transaction involving a redemption payment is a separate claim. Accordingly, the
Liquidators must establish the Court's jurisdiction for each individual redemption payment, just
as the Trustee must do. *In re Bernard L. Madoff*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018)
("Each transfer is a separate claim, and the Trustee must establish the court's jurisdiction with
respect to each claim asserted.") (internal quotations and citations omitted). They have failed to
do so here in at least two respects. First, the Liquidators have meticulously alleged that every
redemption payment was an entirely offshore transaction and therefore their claim for return of
the payment is entirely foreign to the US. Second, by lumping the defendants together and not
alleging NBKK received any redemption payments, the Liquidators have not competently
alleged jurisdiction over NBKK (or a claim for relief). This precludes finding personal
jurisdiction over NBKK. The Liquidators' two apparent arguments for personal jurisdiction over
NBKK and the other Citco Brokerage defendants Customers are incorrect and unpersuasive.

### A. The Liquidators' Generalized "Information and Belief" Allegation Contradicting Their Detailed, Specific Allegations Has No Legal Effect

In the face of all their specific, detailed allegations that the redemption payments had no
US contact, the Liquidators added to their fourth amended complaint a contradictory generalized
allegation "some or all of the Redemption Payments were received at, upon information and

belief, designated United States-based bank accounts" purportedly as directed by the Citco Brokerage defendants. FAC-3635 ¶ 133; FAC-3636 ¶ 141. The Liquidators' tepid suggestion is directly and forcefully contradicted by their detailed allegations of non-jurisdiction that they support with documents they cite and incorporate into their complaints. Those allegations are that all purchases and payments were made from non-US entities to other non-US entities without the involvement of any US entities.

These specific allegations of non-personal jurisdiction override the plaintiffs' contrary assertion and defeat the assertion of personal jurisdiction. *Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*, 2004 WL 1620874, at *5 (S.D.N.Y. July 20, 2004) (holding non-U.S. bank did not engage in any jurisdictionally relevant activities in New York where the non-U.S. bank did not use its U.S. correspondent account to effect any transactions giving rise to plaintiff's claims); *see also Homeschool Buyers Club, Inc.*, 2020 WL 1166053, at *5 (Broderick, J) (holding plaintiff failed to make a *prima facie* showing with respect to long-arm personal jurisdiction because it did not allege "the existence of a single act directed at New York out of which these claims arise").

The single generalized "information and belief" allegation not only is unsupported but is insufficient in the fact of the directly contradictory factual allegations to show "purposeful availment" of the laws and facilities of NY or the US. This is particularly so when the reference to "some or all" defendants admits that not all the defendants are even alleged to have used correspondent accounts (which the complaint elsewhere says they did not use). The specific non-conclusory allegations trump this paragraph and make it irrelevant in determining if the plaintiffs have made "a start" or a "prima facie case" of personal jurisdiction. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (allegations "upon information and belief" were entirely speculative where the complaint contained no allegations of fact which, if true, would

have supported such allegations); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (a "conclusory allegation on information and belief" is insufficient to make a claim plausible where the complaint's factual allegations do not raise a right to relief above the speculative level); *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (a complaint with no specific factual allegations to enable the court to evaluate information and belief assertions failed to state a claim). The Liquidators' repeated, specific, non-speculative allegations show there is no basis for jurisdiction; their speculative, implausible, and contrary "information and belief" assertion does not show the opposite.

In addition, internal inconsistency in the Liquidators' complaints does not create a question of fact that needs to be explored further. The contraction is created by the plaintiffs and does not legitimize an inquiry into which of their allegations is correct. If things were otherwise, all plaintiffs could make contradictory allegations and argue that the factual dispute they created must be resolved. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (allegations "contradicted by more specific allegations or documentary evidence—from the Complaint and the exhibits attached thereto" need not be accepted); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint.").[13]

---

[13] It may be worth noting that the Liquidators have made specific allegations of US bank contacts in other "knowledge defendant" "constructive trust" complaints, naming specific banks in the United States that allegedly receive redemption payments from one or a confined number of defendants. Although we do not credit either the accuracy or the legal sufficiency of the Liquidators' allegations in those cases, examples of their preparedness to plead specific US bank contacts can be seen routinely in other complaints. For example, they allege that defendants "maintain[ed] bank accounts in the United States at Deutsche Bank Trust Company Americas in New York, and in fact receiv[ed] Redemption Payments in those United States-based and/or New York-based accounts." Fairfield Sentry Limited (In Liquidation) et al. v. Banco Santander (Suisse) S.A., Adv. Pro. No. 10-03509-CGM, Dkt. No. 52 ¶ 19 (Bankr. S.D.N.Y. Aug. 2, 2019); id. at Ex. A. The same specificity is found routinely in the Liquidators' other cases as illustrated in Table 1 to this Memorandum. While the specific allegations may not suffice to show jurisdiction any more than the generalized ones in the Citco Brokerage Complaints, the contrast underscores the utter inadequacy of their allegations against the Citco Brokerage defendants.

### B. The Liquidators' Allegation that the Defendants Intended That their Money Be Invested indirectly in BLMIS Does Not Establish a Basis for Jurisdiction

The Liquidators' apparent second argument is another generalized allegation that all Citco Brokerage defendants "purposely availed themselves of laws of the United States and the State of New York" by investing money in the funds allegedly "knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS." FAC-3635 ¶ 20; FAC-3636 ¶ 20. Even if true, this does not support jurisdiction because the defendants <u>desire</u> when investing has no bearing on the defendants' <u>contacts</u> with the forum when they dis-invested, which is the correct focus of the jurisdictional inquiry. *See Fairfield I*, 2018 WL 3756343, at *17-27 (subscription agreement choice of law provision for purchases held irrelevant to redemption claims). The claim in these cases is that the <u>redemptions</u> lead to legal liability and the Liquidators' allegation is irrelevant.

To be specific, the Liquidators' constructive trust claim relates to allegations that the BVI Fairfield funds' Citco administrator in The Netherlands miscalculated the funds' asset value and that the Liquidators should be entitled to recover the funds' disbursement of redemption payments made from their Ireland bank accounts to Citco Bank's Netherlands accounts. FAC-3635 ¶¶ 137, 162, 196; FAC-3636 ¶¶ 145, 170, 204. Allegedly, the non-US Citco Subscribers made the redemption requests on behalf of the non-US Citco Brokerage defendants, including NBKK, by tendering shares to Citco Fund Services in the Netherlands. *Fairfield Sentry Limited (in Liquidation) v. Migani*, [2014] UKPC 9 ) at ¶¶ 14-16 (Privy Council, Apr. 16, 2014). In turn, the redemption payments were funded from the Fairfield funds' bank accounts at Citco Bank in Ireland. *In re Fairfield Sentry Ltd.*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*") at 7 (finding all transfers paid by Citco Bank). There is no US connection with the Liquidators' claim in these cases, a point they emphatically in their recent brief in the District

13

Court challenging Judge Bernstein's holdings in *Fairfield I*, *Fairfield II*, and *In re Fairfield*

*Sentry Ltd.*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"). They said:

> The redemption transfers at issue here were purely foreign. The Citco
> Administrator (a foreign entity) managed the share register and processed the
> redemption requests abroad, and the Funds (also foreign entities) transferred
> redemption payments to Defendants (also chiefly foreign entities). [E]very
> relevant component of the transactions at issue here occurred outside the
> territorial jurisdiction of the United States.

Liquidators' Appeal at 24 (emphasis added). The Liquidators may not assert contradictory

factual positions in the same cases. Their Citco Brokerage Complaints must be read to say that

the redemption transactions were "were purely foreign" and "occurred outside the territorial

jurisdiction of the United States." *Id.*

Furthermore, even if the defendants did intend investment money to be managed by

BLMIS, it would not establish a basis for personal jurisdiction over them. The reason is that

jurisdiction depends on the defendant's contacts with the forum, not connections of the plaintiffs

or third parties even when the defendant knows of those connections. That is the Supreme

Court's holding *Walden v. Fiore*, 571 U.S. 277, 284, 286 (2014) (this Court has "consistently

rejected attempts to satisfy this defendant-focused 'minimum contacts' inquiry by demonstrating

contacts between the plaintiff (or third-parties) and the forum State."); [14] and *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of

---

[14] In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful
seizure of money in a Georgia airport. 571 U.S. at 288. The police officer knew of the plaintiff's
connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada. The
Court held the Nevada court was barred from exercising personal jurisdiction over the police officer. *Id.*
at 289. The Court explained that the foreseeability of a plaintiff's connection to the forum is irrelevant to
whether there is jurisdiction over the defendant because it "impermissibly allows a plaintiff's contacts
with the defendant and forum to drive the jurisdictional analysis." *Id.* Instead, "[t]he substantial
connection … between the defendant and the forum State necessary for a finding of minimum contacts
must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) (quotation omitted) (emphasis in
original). Therefore, even if true, the Liquidators' allegation that the Citco Brokerage defendants knew
the funds would invest with BLMIS does not satisfy *Walden*.

14

another party or a third person is not an appropriate consideration when determining whether a

defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV*

*Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on the

relationship among the defendant, the forum, and the litigation").

### C. The Court's Exercise of Personal Jurisdiction over the Citco Brokerage Defendants Would Violate Fundamental Fairness under Due Process Analysis

The Court's exercise of jurisdiction must comport with reasonable standards to be

consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980) ("The Due Process Clause … gives a degree of predictability to the legal system that

allows potential defendants to structure their primary conduct with some minimum assurances as

to where that conduct will and will not render them liable to suit.") (citation omitted). The

Supreme court reiterate this principle in *Walden, supra*, 571 U.S. at 286, saying, "Due Process

requires that a defendant be haled into court in a forum state based on his own affiliation with the

State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with

other persons affiliated with the State.") (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475

(1985)). When, as here, defendants had no contact with the United States concerning the

redemptions that are the subject of the Liquidators' constructive trust claim, the exercise of

personal jurisdiction over them would violate due process. *See Walden*, 571 U.S. at 286.[15]

---

[15]  NBKK's position is that the liquidators may not have discovery to impeach their own allegations when those allegations, taken as true, eliminate any question of fact on the question of jurisdiction, which is the case with FAC-3635 and FAC-3636. Following Judge Morris' October 28, 2021, oral ruling setting out the procedural steps to address this issue under the FRCP, NBKK respectfully notes and preserves the question for later disposition in line with decisions that, in NBKK's view, support objections to the Liquidators taking jurisdictional discovery from NBKK in these cases where the relevant allegations differ from those in the case that was before the Court at the hearing yesterday. *E.g., Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2017) (affirming denial of jurisdictional discovery where plaintiff failed to establish a prima facie case of personal jurisdiction); *Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) (same); *Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs.*, 2020 WL 5503557, at *6 (S.D.N.Y. 2020) (Broderick, J.) (denying jurisdictional discovery where plaintiff's allegations, even if taken as true, were not sufficient to establish a prima facie case of personal

## CONCLUSION

NBKK respectfully asks the Court to dismiss these actions under Rule 12(b)(2) for failure

to allege personal jurisdiction.

Dated: New York, NY
October 29, 2021

Respectfully submitted

CIRILLO LAW OFFICE

*/s/ Richard A. Cirillo*

_____

Richard A. Cirillo
246 East 33rd Street – 1 FR
New York, NY 10016-4802
T:  917-541-6778
E:  richard@cirillo-law.com

*Attorney for Defendant National
Bank of Kuwait S.A.K.P.*

---

jurisdiction over defendant); *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp., AG*, 277 F. Supp. 3d 521, 599 (S.D.N.Y. 2017) (jurisdictional discovery not permitted when "a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction."); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 290 (S.D.N.Y. 2015) ("a plaintiff may not make conclusory non-fact-specific jurisdictional allegations against foreign defendants and thus obtain extensive discovery on that issue" (internal quotations omitted)); *College Essay Optimizer, LLC v. Edswell, Inc.*, 2015 WL 5729681, at *8 (S.D.N.Y. Sept. 30, 2015) (jurisdictional discovery not permitted when plaintiff has not demonstrated that "additional discoverable facts [exist] that could subject [Defendant] to long-arm jurisdiction"); *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 425 (S.D.N.Y. 2009) (plaintiff denied jurisdictional discovery when its own allegations underscored a lack of connection between defendants and New York and plaintiff did not allege meaningful ties between defendants and New York).

## TABLE 1

| No. | Action | Allegations | |
|-----|--------|-------------|---|
| 1 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.*, 10-ap-03496-CGM (Bankr. S.D.N.Y.) | "… and maintaining bank accounts in the United States at Citibank NA, and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts." Dkt. No. 1463-1 at ¶ 19. | Identifying "Citibank NA, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. at Ex. A. |
| 2 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Dominion Sec. Sub A/C, et al.*, 10-ap-03502-CGM (Bankr. S.D.N.Y.) | "RBC Dominion and the Beneficial Shareholders selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption Payments at issue in this action into those bank accounts." Dkt. No. 69 ¶ 19 | Identifying "JP Morgan Chase Manhattan Bank, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. at Ex. A. |
| 3 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Privee Edmond De Rothschild (Eur.), et al.*, 10-ap-03505-CGM (Bankr. S.D.N.Y.) | "… and maintaining bank accounts in the United States at Bank of new York and Wachovia Bank NA and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts. Banque Privee and the Beneficial Shareholders selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption payments at issue in this action into those bank accounts." Dkt. No. 82  at ¶ 19. | Identifying "Wachovia Bank NA, New York, NY" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. at Ex. A. |