**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, *et al.*,<br><br>    *Debtors in Foreign Proceedings.* | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (In Liquidation), *et al.*,<br><br>    *Plaintiffs*,<br><br>        v.<br><br>THEODOOR GGC AMSTERDAM, *et al.*,<br><br>    *Defendants*. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (In Liquidation), *et al.*,<br><br>    *Plaintiffs,*<br><br>        v.<br><br>ABN AMRO SCHWEIZ AG, *et al.*,<br><br>    *Defendants*. | Adv. Pro. No. 10-03635 (CGM) |

**THE EFG AND BSI DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION TO DISMISS**
**<u>FOR LACK OF PERSONAL JURISDICTION</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 4

    I.      The Liquidators' Proceedings ................................................................................ 4

    II.     The Liquidators' Allegations Concerning the EFG and BSI Defendants.............. 6

    III.    The Liquidators' Allegations Regarding Where the Redemption Payments Were Received........................................................................................................... 9

ARGUMENT…………………………………………………………………………….…11

    I.      The Liquidators Have Failed to Plead a *Prima Facie* Case for Personal Jurisdiction Over the EFG and BSI Defendants ................................................. 12

          A.     The Liquidators Cannot Rely on Group Pleading to Meet Their Pleading Burden...................................................................................................... 14

          B.     The Bank Accounts Involved in the Redemption Payments Do Not Establish Personal Jurisdiction. .............................................................. 16

               1.     The Liquidators' Allegations Establish that the Redemption Process Did Not Occur in the United States. ................................ 17

               2.     The Liquidators Cannot Plausibly Deny that the Redemption Payments were Paid to Non-U.S. Accounts.................................. 19

          C.     The Alleged Foreseeability of the Funds' Investment in BLMIS Does Not Establish Personal Jurisdiction over the EFG and BSI Defendants.......... 20

          D.     None of the Liquidators' Remaining Allegations Serve as a Basis for Personal Jurisdiction ............................................................................... 24

    II.     The Exercise of Personal Jurisdiction over the EFG and BSI Defendants Would Not Comport with Due Process. .................................................................................. 25

CONCLUSION...................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases:**

*Am. Tissue, Inc. v. DLJ Merch. Banking Partners, II, L.P.*,
  2006 WL 1084392 (S.D.N.Y. Apr. 20, 2006) ........................................................ 18

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ........................................................................ 18

*Asahi Metal Indus. Co., Ltd. v. Superior Court*,
  480 U.S. 102 (1987) ...................................................................... 22, 26, 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009). ....................................................................... 7

*Berdeaux v. OneCoin,*
  2021 WL 4267693 (S.D.N.Y. September 20, 2021) ............................................ 15

*Bristol-Myers Squibb v. Superior Court of California*,
  137 S. Ct. 1773 (2017) ....................................................................... 13

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018) .................................................................. 14

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ......................................................................... 12

*Dennis v. JPMorgan Chase & Co.*,
  343 F. Supp. 3d 122 (S.D.N.Y. 2018) ....................................................... 22

*DiStefano v. Carozzi N. Am., Inc.*,
  286 F.3d 81 (2d Cir. 2001) ................................................................. 12

*Doe v. Delaware State Police*,
  939 F. Supp.2d 313 (S.D.N.Y. 2013) ........................................................ 24

*Fairfield Sentry Limited (In Liquidation) et al. v. Banco Santander (Suisse) S.A.*,

Adv. Pro. No. 10-03509-CGM (Bankr. S.D.N.Y. Aug. 2, 2019) ........................................... 19

*Fairfield Sentry Limited (In Liquidation) et al. v. Citco Global Custody N.V. et al.*,

Adv. Pro. No. 19-01122-CGM (Nov. 26, 2019) ...................................................................... 7

*Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*,

No. 19-cv-03911-VSB (S.D.N.Y. July 21, 2021) .................................................................... 3

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,

UKPC 9 [2014] ........................................................................................................... 5, 21, 23

*Ford Motor Co. v. Mont. Eigth Jud. Dist. Ct.*,

141 S. Ct. 1017 (2021) .......................................................................................................... 27

*Gmurzynska v. Hutton*,

257 F.Supp.2d 621 (S.D.N.Y.2003) ...................................................................................... 24

*Guo Jin v. EBI, Inc.*,

2008 WL 896192 (E.D.N.Y. Mar. 31, 2008) ......................................................................... 25

*Hau Yin To v. HSBC Holdings PLC*,

2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ........................................................................... 22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,

466 U.S. 408 (1984) .............................................................................................................. 20

*Henkin v. Gibraltar Priv. Bank & Tr. Co.*,

2018 WL 557866 (E.D.N.Y. Jan. 22, 2018) .......................................................................... 22

*Hirsch v. Arthur Andersen & Co.*,

72 F.3d 1085 (2d Cir. 1995) .................................................................................................. 18

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,

2020 WL 1166053 (S.D.N.Y Mar. 11, 2020) ........................................................................ 17

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
   2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ........................................................................ 15

*In re CIL Limited*,
   582 B.R. 46 (Bankr. S.D.N.Y. 2018) .................................................................................... 26

*In re Fairfield Sentry Ltd.*,
   2018 WL 3756343 (Aug. 6, 2018) ........................................................................ 2, 4, 5, 6, 21

*In re Fairfield Sentry Ltd.*,
   2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ......................................... 4, 6, 10, 19, 21

*In re Fairfield Sentry Ltd.*,
   596 B.R. 275 (Bankr. S.D.N.Y. 2018) ............................................................................... 4, 23

*In re Mexican Gov't Bonds Antitrust Litig.*,
   2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020) ...................................................................... 23

*In re SSA Bonds Antitrust Litig.*,
   420 F. Supp. 3d 219 (S.D.N.Y. 2019) .................................................................................. 15

*In re Terrorist Attacks on September 11, 2001*,
   714 F.3d 659 (2d Cir. 2013) ................................................................................................ 12

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873, 882, 886 (2011) ............................................................................................ 23

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998) ........................................................................................... 14, 24

*King County, Washington v. IKB Deutsche Industriebank AG*,
   769 F. Supp. 2d 309 (S.D.N.Y. 2011) .............................................................................. 14, 15

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011) ................................................................................................ 18

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,

    84 F.3d 560 (2d Cir. 1996) ........................................................................ 14, 25, 26

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*,

    2004 WL 1620874 (S.D.N.Y. July 20, 2004) ........................................................ 17

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,

    549 B.R. 56 (S.D.N.Y. 2016) ................................................................................ 12

*Picard v. BNP Paribas S.A.*,

    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................... 2, 13

*Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.)*,

    627 B.R. 546 (Bankr. S.D.N.Y. 2021) .................................................................. 16

*Plunket v. Doyle*,

    2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ......................................................... 24

*Porina v. Marward Shipping Co.*,

    2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ....................................................... 26

*Pyskaty v. Wide World of Cars, LLC*,

    856 F.3d 216 (2d Cir. 2017) ................................................................................. 18

*Rose v. Goldman, Sachs & Co.*,

    163 F. Supp. 2d 238 (S.D.N.Y. 2001) .................................................................. 18

*SPV Osus Ltd. v. UBS AG*,

    882 F.3d 333 (2d Cir. 2018) ................................................................................. 21

*Sullivan v. Barclays PLC*,

    2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ......................................................... 22

*Tera Group., Inc. v. Citigroup, Inc.*,

    WL 4732426 (S.D.N.Y. Sept. 28, 2018) ......................................................... 13, 15

*Thorsen v. Sons of Norway*,

   996 F. Supp.2d 143 (E.D.N.Y. 2014)........................................................................ 26

*Walden v. Fiore*,

   571 U.S. 277 (2014) ....................................................................................*Passim*

*World-Wide Volkswagen Corp. v. Woodson*,

   444 U.S. 286 (1980) ........................................................................................ 25

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,

   2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ........................................................ 12

**Statutes:**

FRCP 12(b)(2)………………………………………………………………………………*Passim*

EFG Bank AG (sued as "EFG Bank SA Switzerland"), EFG Bank (Monaco) S.A.M. (sued as "EFG Eurofinancier D'Invest MCL") and BSI AG (individually and as successor-in-interest to Banca Unione di Credito and Banca del Gottardo (sued as "BSI Ex Banca Del Gottardo")) (together and as correctly named, the "EFG and BSI Defendants")[1] by the undersigned, respectfully submit this memorandum of law in support of their motions to dismiss, with prejudice, the Fifth Amended Complaint ("FAC" or "Citco Brokerage Complaint") of the Liquidators of Fairfield Sentry Limited and Fairfield Sigma Limited[2] (together, the "Funds" or "Fairfield") (the "Liquidators") in *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03635 (Bankr. S.D.N.Y.) (the "Citco Brokerage Proceeding"), under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.[3]

## PRELIMINARY STATEMENT

The Liquidators' sole remaining claim in the Citco Brokerage Proceeding is for the imposition of a constructive trust under British Virgin Islands ("BVI") law on redemption payments the EFG and BSI Defendants allegedly received indirectly from the Fairfield Funds. *See* FAC ¶ 198. Those payments are alleged to have been made from foreign funds (Fairfield) to a foreign record subscriber and into a foreign bank account. An unspecified portion of those alleged redemption transfers, in turn, "*may* have" purportedly been transferred to the EFG and BSI

---

[1]    The undersigned counsel for the EFG and BSI Defendants are currently engaged in discussions with counsel for the Liquidators to correct the relevant defendant names in the Citco Brokerage Proceeding that the Liquidators have misnamed in their pleadings.

[2]    Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma"), and Fairfield Lambda Limited ("Lambda") are referred to collectively as the "Funds." As alleged by the Liquidators, Sentry maintained accounts with Bernard L. Madoff Securities LLC whereas Sigma and Lambda were indirect feeder funds established for foreign currency investment through the purchase of shares of Sentry. FAC ¶ 125. Despite this distinction, the Liquidators refer to Sentry, Sigma, and Lambda as the "Funds" throughout the Citco Brokerage Complaint and only occasionally acknowledge that Sigma and Lambda were indirect feeder funds for Bernard L. Madoff Securities LLC.

[3]    The EFG and BSI Defendants have filed a nearly identical motion in the action *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03636, as the jurisdictional allegations are the same in that action.

1

Defendants, all of which are financial institutions incorporated in Switzerland or Monaco. The Court should dismiss the EFG and BSI Defendants from the Citco Brokerage Proceeding for lack of personal jurisdiction.

The Liquidators fail to meet their burden to show that the Court can exercise personal jurisdiction over *each* redemption payment that they seek to reverse,[4] as to *each* EFG and BSI Defendant.[5] Moreover, recognizing that they cannot—as they must—plead *particular* forum contacts by the EFG and BSI Defendants, the Liquidators improperly seek to group the EFG and BSI Defendants together with the several dozen other defendants the Citco Brokerage Proceeding (together, the "Defendants"). That pleading shortcut has correctly been recognized in this district as far short of what is needed by plaintiffs to plead a *prima facie* case for personal jurisdiction. But even if the Court were to credit that pleading tactic (which it should not), the Liquidators' allegations still fail to establish personal jurisdiction because they are either implausible on their face or jurisdictionally irrelevant.

*First*, any attempt by the Liquidators to rely on the New York forum selection clauses contained in the Funds' subscription agreements is misplaced. This Court has already held that the subscription agreements for Fairfield provide no basis for personal jurisdiction for claims that do not relate to the subscriptions but instead to the *redemptions* that are governed by the Funds' Articles of Association. *See In re Fairfield Sentry Ltd.*, 10-13164 (SMB), 2018 WL 3756343, at *12 (Aug. 6, 2018) ("*Fairfield I*").

*Second,* the Liquidators' own allegations (as well as the underlying facts alleged in and incorporated into the Citco Brokerage Complaint) demonstrate that the BSI and EFG Defendants

---

[4]    *See Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) (Bernstein, J.).

[5]    *See infra* pp. 21–22.

received all redemption payments in accounts *outside the United States*.  Contrary to their conclusory assertion that all Defendants received the transfers at U.S. bank accounts, the Liquidators specifically allege, redemption-by-redemption, that every redemption payment at issue in the Citco Brokerage Complaint was paid instead to a bank account in the *Netherlands*.[6] Indeed, the Liquidators recently argued with respect to the Defendants that "*every* relevant component of the [redemption] transactions at issue here occurred *outside the territorial jurisdiction of the United States.*"  *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-cv-03911-VSB, Dkt. No. 440 at 24 (S.D.N.Y. July 21, 2021) ("Liquidators' Appeal") (emphasis added).  Even if the receipt of redemption payments in U.S. accounts were sufficient to subject a party to this Court's jurisdiction—and it is not—that is not what the Liquidators have pleaded as to the EFG and BSI Defendants.

*Third*, the Liquidators assert the theory that the minimum contacts test is satisfied because the EFG and BSI Defendants knew that the Funds were directly or indirectly investing the Funds' own money with Bernard L. Madoff Investment Securities LLC ("BLMIS").  But this allegation is not relevant to the Liquidators' actual claim for knowing receipt, which turns on the *redemption* payments *from the Funds* and their allegations of Citco Fund Services' bad faith calculation of those payments in the Netherlands.  The Liquidators' claims here are not about, and do not arise out of, any investment with BLMIS.  Even if the Funds' investments with Madoff were relevant, however, those investments—not made by the EFG and BSI Defendants—are not the sort of minimum contacts that would support personal jurisdiction over the EFG and BSI Defendants.  As the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), establishes, a defendant's

---

[6]    In particular, the Liquidators include charts in the Citco Brokerage Complaint that provide information on every redemption at issue. FAC at Exs. A, B. Those charts include a column entitled "Bank Account to which Redemption Payment Was Made," which is filled out in the same way for every redemption: "Citco Global Custody (NA) NV, Netherlands."

knowledge of the *plaintiff's* contacts with the forum—here, the Funds' contacts with BLMIS—are insufficient to establish personal jurisdiction.

*Finally*, even if the minimum contacts requirements were satisfied, the exercise of jurisdiction would be unreasonable under the circumstances and therefore impermissible. The majority of relevant evidence (if not all of it) is overseas in the BVI, the Netherlands, Switzerland or Monaco, and the United States has little to no interest in adjudicating this foreign law claim between foreign parties for the recovery of purely foreign payments under a foreign law contract. The Liquidators have proffered no reason why the United States is more reasonable than their home jurisdiction of the BVI, or the EFG and BSI Defendants' home jurisdictions of Switzerland and Monaco. Finally, the burden on the EFG and BSI Defendants to litigating in New York is significant. The witnesses and evidence in this action are overseas and the EFG and BSI Defendants have obligations under Swiss and Monegasque foreign secrecy and privacy laws that potentially expose them to civil and criminal penalties abroad if discovery moves forward in this action.

For these reasons and those below, the Court should dismiss the EFG and BSI Defendants.

## **BACKGROUND**

### I.    The Liquidators' Proceedings

The Citco Brokerage Proceeding is ancillary to the foreign liquidation of the Funds in the BVI. *See Fairfield I*, 2018 WL 3756343, at *6; *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 316 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"); *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *2 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"). Between October 2009 and March 2010, the Liquidators commenced actions in the BVI against a number of the Funds' alleged investors seeking restitution on the theory that the Funds mistakenly made redemption payments

prior to BLMIS's collapse,[7] and have brought more than 300 actions in the United States against partially overlapping defendants with overlapping theories of liability.  *Fairfield I,* 2018 WL 3756343, at *6.  The New York actions were stayed pending resolution of the BVI actions, which were poised to present potentially dispositive rulings on claims in the BVI and New York actions. *Id.* at *2.  In 2014, the Privy Council—the court of last resort for appeals from the BVI—affirmed dismissal of the Liquidators' BVI law claims for restitution based on mistake.  *Id.* at *4–5.  Starting in 2016, after receiving that unfavorable decision, the Liquidators discontinued all remaining BVI actions,[8] *id.* at *5, and began prosecuting the New York actions under a new theory that the payment of the redemptions was not merely mistaken, but the result of bad faith by the Funds' administrator, Citco Fund Services.  *Id.* at *6.

According to the Liquidators' own allegations, every relevant aspect of their constructive trust claim brought under BVI law is foreign:

- The EFG and BSI Defendants are foreign financial institutions located abroad. *See infra* p. 9.

- The Funds are BVI hedge funds that are now in liquidation in their home jurisdiction of the BVI.  *See* FAC ¶¶ 26–27.

- As a pre-condition to investing in the Funds, the EFG and BSI Defendants were required to enter into Brokerage and Custody Agreements ("B&C Agreements") governed by the laws of the Netherlands with non-U.S. entities associated with Citco Group Limited ("Citco"), which contained a Netherlands choice-of-forum provision. *See infra* n. 11.

- Pursuant to the B&C Agreements, the Defendants received redemption payments in bank accounts in the Netherlands or other accounts outside the United States,

---

[7]    *See* Declaration of William Hare in Support of Motion for Leave to Amend ¶ 15 (Adv. Pro No. 10-03635 Dkt. No. 145; Adv. Pro. No. 10-03636 Dkt. No. 164) (the "Hare Decl.").

[8]    *See* Hare Decl. ¶ 68.  In the BVI courts, the Liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the Fund's alleged miscalculation of their NAV.  The Liquidators lost those claims at all levels of the BVI court system.  *See Fairfield Sentry Ltd. (In Liquidation) v. Migani,* [2014] UKPC 9 ("*Migani*") ¶ 23 (concluding the Liquidators' approach is "an impossible construction").  They also lost on their argument that redeeming investors did not give good consideration for the redemptions.  *See Fairfield I,* 2018 WL 3756343, at *5 (explaining history of BVI rulings on the good consideration defense).

which payments were sent by the foreign Citco entities.  *See* FAC, Exs. A, B; *see also Fairfield III*, 2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec. 14, 2020) (finding that the Liquidators conceded that "the redemption payments were made from the Funds' Citco Bank account in Ireland.")

This foreign claim is before this Court because the Liquidators made a mistake of law.  As this Court found, the Liquidators incorrectly construed the Fairfield subscription agreements for the purchase of shares in the Funds as containing a New York forum selection clause for their claim against the EFG and BSI Defendants' purported redemption of shares.  This Court rejected that theory because the Liquidators' claim is solely based on *redemptions* and does not arise out of the subscription agreements.  *Fairfield I*, 2018 WL 3756343, at *12 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").[9]  Moreover, the subscription agreements are also irrelevant, and cannot support jurisdiction, because it was not the *EFG and BSI Defendants*—but instead non-party Citco entities—with whom the Liquidators allege entered into subscription agreements with the Funds.  *See* FAC ¶ 16.  The Liquidators—now on their sixth iteration of their complaint—are grasping to justify the expense of litigating against the EFG and BSI Defendants and hundreds of others in New York, a forum with no connection to the redemption transactions at issue.[10]

## II.    The Liquidators' Allegations Concerning the EFG and BSI Defendants

In the Citco Brokerage Proceeding, the BVI Liquidators seek to obtain a damages award of approximately $51.9 million in total from all of the Defendants in the proceeding, for payments they allegedly received for redemptions they allegedly made (the "<u>Redemption Payments</u>") outside

---

[9]    This ruling is the subject of a pending appeal to the District Court.

[10]    *See Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam, et al.*, Adv. Pro. No. 10-03496, Dkt. No. 906 (Bankr. S.D.N.Y. July 27, 2016) Hr'g. Tr., at 11–14 ("THE COURT: It just sounds like you litigated these issues or you should litigate them in the BVI.  I don't understand why they're here. … THE COURT: I understand that.  But at some point you commenced these cases here …. And the question is why you didn't commence them in BVI?").

the U.S.[11]  FAC ¶¶ 8, 17.  An unspecified portion of the Redemption Payments, in turn, "*may have*" been paid to the EFG and BSI Defendants.  *See id.* ¶¶ 39, 50, 51, 62, 63.  The Liquidators allege that the EFG and BSI Defendants, through various entities associated with Citco and its affiliates, invested in the Funds, which in turn, channeled most private investments into managed accounts with BLMIS.  *Id.* ¶ 2.

In particular, the Liquidators allege that between April 20, 2004 and November 19, 2008, Sentry and Sigma made Redemption Payments to accounts held in the name of CGC NA (an affiliate of Citco, defined by the Liquidators as the "Citco Record Subscriber") totaling $51,929,665.41.  *Id.* ¶ 8.    Each of the EFG and BSI Defendants allegedly—along with the other Defendants in the Citco Brokerage Proceeding—entered into a B&C Agreement with the Citco Record Subscriber and a "Citco Bank."[12]  Like the EFG and BSI Defendants, all the Citco entities purportedly counterparties to the B&C Agreements are foreign.  In particular, the Citco Record Subscriber is incorporated under the laws of Curacao.  *See Fairfield Sentry Limited (In Liquidation) et al. v. Citco Global Custody N.V. et al.*, Adv. Pro. No. 19-01122-CGM, Dkt. No. 19 ¶ 34, n.1 (Nov. 26, 2019).  And each "Citco Bank" is incorporated in either the Netherlands, Ireland or Curacao.  *Id.* ¶¶ 35–37.[13]

---

[11]    For purposes of this motion only, the EFG and BSI Defendants take all of the factual allegations—but not legal or boilerplate conclusions couched as factual allegations—in the Citco Brokerage Complaint as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The EFG and BSI Defendants reserve all rights to contest any such factual allegations that are false or inaccurate at the appropriate procedural stage of the Citco Brokerage Proceeding, if necessary.

[12]    *See* FAC ¶ 8; *see also id.* ¶ 106 ("[E]ach of the Defendants entered into the B&C Agreements with a Citco Bank and the Citco Record Subscriber.").  The Liquidators collectively refer to Citco Bank Nederland N.V., Citco Bank Nederland N.V. Dublin Branch, and the Citco Banking Corporation N.V. as the "Citco Banks."

[13]    The Liquidators filed examples of the B&C Agreements in 2017 as exhibits to the Declaration of David J. Molton in Further Support of Motion for Leave to Amend and in Opposition to Defendants' Motion to Dismiss.  Adv. Pro. No. 10-03496, Dkt. No. 1337 ("Molton Decl.").  In one example, the beneficial owner entered into the B&C Agreement with Citco Banking Corporation N.V. in the Netherlands, as "the Bank," and Citco Global Custody (N.A.) N.V., as "the Custodian."  *See* Molton Decl. Ex. G.  In another example, the beneficial owner entered into the B&C Agreement with Citco Bank Nederland N.V. Dublin Branch ("Citco Bank Dublin"), as "the Bank," and Citco Global Custody N.V. as "the Custodian."  *See* Molton Decl. Ex. H.

Meanwhile, none of the EFG and BSI Defendants themselves are alleged to have had any defendant-specific contacts with the United States. Indeed, each of the EFG and BSI Defendants is specifically referenced only *twice* in the Citco Brokerage Complaint: once to outline that the Citco Record Subscriber may have "paid all or some portion of the Redemption Payments to or for the account of" the EFG and BSI Defendants and the approximately 70 other Defendants the Citco Brokerage Proceeding, FAC ¶ 15, and, the other, to identify the EFG and BSI Defendants' places of incorporation and registered addresses.

In particular, EFG Bank AG (sued as "EFG Bank SA Switzerland"), Banca Unione di Credito, BSI AG, and Banca del Gottardo (sued as "BSI Ex Banca Del Gottardo") are entities incorporated under the laws of Switzerland with registered addresses in Geneva and Lugano, Switzerland. *See id.* ¶¶ 39, 50, 51, 62. EFG Bank (Monaco) S.A.M. (sued as "EFG Eurofinancier d'Invest MCL") is alleged to be an entity located in Monaco with a registered Monegasque address. *See id.* ¶ 63. The Liquidators have not alleged that any of the EFG and BSI Defendants have their principal places of business in the United States or conducted business in the United States. Nor could they.

Rather than alleging U.S. touchpoints particular to the EFG and BSI Defendants, the Liquidators instead broadly assert that *all* the Defendants (which they collectively call the "Beneficial Shareholders"):

- should be bound by the New York forum selection clause contained in the subscription agreements between the Citco Record Subscriber and the Funds. *Id.* ¶¶ 23–24.

- "purposely availed themselves of the laws of the United States and the State of New York by, among other things, investing money with the Funds, and knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS." *Id.* ¶ 20.

- "knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York, derived significant revenue from New York, and maintained minimum contacts and/or general business contacts with the United States and New York." *Id*.

Despite having never made the assertion in the first four iterations of the Citco Brokerage Complaint,[14] the Liquidators now assert the conclusory allegation, again as to all Beneficial Shareholders:

- that "some or all of the Redemption Payments were received at, upon information and belief, designated United States-based bank accounts." FAC ¶ 133.

Beyond these allegations lodged broadly against all the Defendants in the Citco Brokerage Proceeding, the Liquidators have made no other attempts in the Citco Brokerage Complaint to assert that EFG and BSI Defendants have had any contact with the U.S. forum.

### III.    The Liquidators' Allegations Regarding Where the Redemption Payments Were Received

Significantly, the Liquidators affirmatively and explicitly allege that to receive Redemption Payments, the EFG and BSI Defendants were required to maintain bank accounts not in the United States but instead with the foreign Citco Bank entities, into which Redemption Payments "may have been" deposited:

> It was under the B&C Agreements that the Citco Subscribers purchased shares in and made redemptions from the Funds for the benefit of the Defendants, which are the subject of this action. Under the B&C Agreements, the *Defendants were required to maintain bank accounts at the Citco Banks from which and into which 'all moneys received from or for the account of' the Defendants were deposited* (the "B&C Accounts").

---

[14]    *See generally* Adv. Pro. No. 10-03635, Dkt. Nos. 8 (Complaint, filed September 21, 2010), 67 (First Amended Complaint, filed January 10, 2011), 86 (Second Amended Complaint, filed May 3, 2011), and 121 (Third Amended Complaint, filed July 20, 2012); Indeed, the allegation did not even materialize until the Liquidators filed their proposed Fourth Amended Complaints in 2017, nearly a decade into the Fairfield proceedings.  *See* Adv. Pro. No. 10-03496, Dkt. No. 1337, Exs. E and F (proposed Fourth Amended Complaints, filed March 31, 2017).

FAC ¶ 106 (emphasis added). The Liquidators do not (because they cannot) allege that the Citco

Banks were located in the United States.[15] Furthermore, the Liquidators allege that, pursuant to

the B&C Agreements, the Citco Banks had the sole authority to effect brokerage transactions on

behalf of the EFG and BSI Defendants and deposit Redemption Payments in the EFG and BSI

Defendants' foreign accounts at the Citco Banks.[16] And they have previously conceded that the

Redemption Payments were sent from the Funds' foreign bank account in Ireland. *Fairfield III*,

2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec. 14, 2020). Thus, by the Liquidators' own

allegations, all the Redemption Payments were made by the offshore Citco Banks to offshore

accounts; none of them were paid to or through U.S. banks.

Indeed, in the Exhibits to the Citco Brokerage Complaint, the Liquidators are very specific

about where the redemption payments were made: they allege that each Redemption Payment was

paid to a Dutch bank account. *See* FAC at Exs. A (Redemption Payments from Sentry) and B

(Redemption Payments from Sigma).[17] In particular, they identify each Redemption Payment at

issue, the date of the Redemption Payment, the amount paid, the number of shares redeemed, and

the identity and location of the bank account to which each such payment was made. *Id*. That

---

[15]    Pursuant to the sample B&C Agreement filed by the Liquidators, for instance, at least some of the Defendants opened and maintained accounts with Citco Bank Dublin to receive the Redemption Payments. *See* Molton Decl. Ex. H. *See also supra* p. 8.

[16]    "Moreover, the Citco Banks were solely responsible for providing brokerage services to the Defendants. According to the B&C Agreements, these services included . . . 'effecting [] transactions of and/or relating to the purchase and sale of and dealing in Securities in the name and for the account of the' Defendants." FAC ¶ 108. Additionally, the "B&C Agreements with the Defendants applied to all subscriptions and redemptions of Shares in the Funds by the Citco Subscriber on behalf of the Defendants, and all Redemption Payments were, upon information and belief, sent by the Citco Banks (upon their receipt from the Funds) to the Defendants' B&C Accounts." *Id.* ¶ 115. Further, the "B&C Agreements afforded the Citco Banks and the Citco Record Subscriber the power to … 'deposit in the [B&C] Account [at the Citco Banks] all moneys received from or for the account of the [Defendants].'" *Id.* ¶ 118.

[17]    While the Liquidators allege the identity of the bank account into which the Redemption Payments were made, they do not identify the specific Defendants that received Redemption Payments in accounts at Citco Global Custody, Netherlands or the specific Defendants that received Redemption Payments in accounts at Citco Bank Dublin. Accordingly, the EFG and BSI Defendants do not know which transfers the Liquidators allege they in particular received.

identity and location is the same for each Redemption Payment: "Citco Global Custody (NA) NV,

*Netherlands*." *Id*. (emphasis added).  A sample of entries from these charts follows:[18]

| Payment Date | Redemption Payment | No. of Shares | Bank Account to which Redemption Payment Was Made |
|---|---|---|---|
| April 21, 2004 | $325,094.34 | 334.37 | Citco Global Custody (NA) NV, Netherlands |
| April 21, 2004 | $10,937,878.23 | 11249.96 | Citco Global Custody (NA) NV, Netherlands |
| July 26, 2004 | $147.542.37 | 148.21 | Citco Global Custody (NA) NV, Netherlands |

In a tacit concession that the Redemption Payments have no U.S. nexus, the Liquidators

have abandoned their earlier assertion—formerly contained in a prior footnote to these Exhibits—

that the Redemption Payments were processed through any U.S. correspondent bank account.

*Compare* Third Amended Complaint, Dkt. No. 121, Ex. A (containing footnote "+" alleging

Redemption Payments "went through a correspondent bank account in the United States") *with*

FAC Ex. A (no such footnote).  The operative Citco Brokerage Complaint make no mention of a

correspondent bank account—whether in the U.S. or otherwise—whatsoever.

## ARGUMENT

The Liquidators bear the burden of establishing that this Court has personal jurisdiction

over the EFG and BSI Defendants.  *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir.

2001).   The Liquidators do not assert—because they cannot—any basis for general personal

jurisdiction over the EFG and BSI Defendants.  As none of the EFG and BSI Defendants are

---

[18]      These three entries are taken from the first three lines of Exhibit A to the Fifth Amended Complaint in the Citco Brokerage Proceeding.

alleged to be "at home" in the United States, the Liquidators must demonstrate that the Court can appropriately exercise specific jurisdiction over them. *See Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2014). To do so, the Liquidators must assert that (1) their claims arise out of the EFG and BSI Defendants' sufficient "minimum contacts with the relevant forum," and (2) "the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted). The minimum contacts inquiry "focuses on the relationship among the defendant, the forum, and the litigation," a relationship that "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotations omitted) (emphasis in original).[19] Here, the Liquidators have not shown such contacts and have accordingly failed to meet their pleading burden as to the EFG and BSI Defendants.

## I.    The Liquidators Have Failed to Plead a *Prima Facie* Case for Personal Jurisdiction Over the EFG and BSI Defendants

The Liquidators fall far short of demonstrating that this Court can exercise personal jurisdiction over the EFG and BSI Defendants. As Judge Bernstein held in the Madoff Trustee litigation, each Redemption Payment is a separate claim for jurisdictional purposes. *See In re Bernard L. Madoff*, 594 B.R. at 190 ("Each transfer is a separate claim, and the Trustee must establish the court's jurisdiction with respect to each claim asserted.") (internal quotations and citations omitted). Accordingly, the Liquidators must establish the Court's jurisdiction over *each* of the EFG and BSI Defendants for *each individual Redemption Payment*, as the Trustee was

---

[19]    The federal jurisdictional analysis is the same as under the New York long-arm statute, *see Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016) (the two "closely resemble" one another), which require the same basic elements that: (1) the EFG and BSI Defendants must have transacted business within the state; (2) the claims asserted must arise from that business activity; and (3) the exercise of personal jurisdiction would comport with due process. *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, 2020 WL 5503557, at 3*-*4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2017)).

required to do.  *See Tera Group, Inc. v. Citigroup, Inc.*, No. 17-CV-4302 (RJS), 2018 WL 4732426, at *3 (S.D.N.Y. Sept. 28, 2018) (holding that jurisdictional allegations must be pled as to each defendant).  To do so, the Liquidators cannot rely on the forum selection clauses contained in the subscription agreements that this Court has found wholly irrelevant to the Liquidators' claims. *Fairfield I,* at *12–14.   Instead, they must identify particular "suit-related contacts" that justify the exercise of personal jurisdiction.  *See Walden*, 571 U.S. at 284; *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017) (declining to exercise personal jurisdiction where "[w]hat is missing . . . is a connection between the forum and *the specific claims at issue*") (emphasis added).

The Liquidators appear to advance two primary bases for personal jurisdiction against all Beneficial Shareholders (including the EFG and BSI Defendants).  Their conclusory assertion that they received redemption payments in the United States is belied by their particularized allegations that the Redemption Payments were paid to the Netherlands.  Similarly, their argument that it was foreseeable that the *Funds* themselves would invest in BLMIS has no bearing on the *EFG and BSI Defendants'* contacts with the forum.  In short, both bases fail.

Finally, the Liquidators' remaining conclusory allegations fare no better.  Broad-based assertions that the EFG and BSI Defendants—along with the other Beneficial Shareholders— "knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York" or "derived . . . . revenue from New York"[20] cannot support a finding of personal jurisdiction.  *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) ("conclusory non-fact-specific jurisdictional allegations" insufficient for the exercise of personal jurisdiction).

---

[20]    *See* FAC ¶ 20.

13

### A.    The Liquidators Cannot Rely on Group Pleading to Meet Their Pleading Burden

As a threshold matter, the Liquidators do not plead—as they must—that the EFG and BSI Defendants *in particular* had contacts with the forum.  On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction.  *See id.*; *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–45 (2d Cir. 2010)).  Here, the Liquidators neglect their burden of making that showing as to *each* EFG and BSI Defendant specifically.  *See King County, Washington v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011) ("A plaintiff bears the burden of demonstrating that the court may exercise jurisdiction over *each* defendant." (emphasis added)).

Recognizing that their allegations as to the EFG and BSI Defendants fall woefully short, the Liquidators seek to cure their deficiencies by resorting to group pleading, classifying all the Defendants together as the "Beneficial Shareholders," *see* FAC ¶ 15.  The Liquidators then, in turn, broadly allege that all the Beneficial Shareholders generally availed themselves of the benefits of New York law or received revenues in New York.  *See supra* p. 9 (identifying relevant allegations).  The law in this district is well-settled, however, that such "improper group pleading" cannot provide the basis for exercising of personal jurisdiction.  *Berdeaux v. OneCoin*, 19-CV-4074 (VEC), 2021 WL 4267693, at *6 (S.D.N.Y. September 20, 2021); *see also HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-00967 (LJL), 2021 WL 918556, at *15 (S.D.N.Y. Mar. 10, 2021) (rejecting general allegation that "Defendants sent emails . . . to New York" as sufficient

to confer personal jurisdiction in part because it "conflates multiple parties and fails to provide specific allegations"). "Indeed, '[c]ourts in this district have . . . routinely granted 12(b)(2) motions to dismiss for lack of personal jurisdiction where the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand.'" *King County, Washington v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 321 (S.D.N.Y. 2011) (citation omitted).

  *Berdeaux v. OneCoin* and *Tera Group, Inc. v. Citigroup, Inc*. are instructive in this regard. Plaintiffs in *Berdeaux* sought to group four individual defendants together, by calling them the "Scott Group Defendants," "without distinguishing in the least among the four Defendants." *Berdeaux*, 2021 WL 4267693, at *6. The *Berdeaux* Court rejected plaintiffs' "attempt to extend an allegation levied against one particular [d]efendant to the remaining [d]efendants in the group, seemingly without any basis for doing so, absent speculative and conclusory allegations" and dismissed the defendants. *Id*; *see also In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 233 (S.D.N.Y. 2019) (rejecting personal jurisdiction allegations "in the form of a group pleading [as] insufficient"). Similarly, the *Tera* Court described a plaintiff's "resorts to group pleading" as "of the rankest kind" because the plaintiff sought to define "all of the defendants as a group of 'Dealer Defendants' – a unit that comprises a dozen multinational financial institutions" without particular averments as to *each* defendant. *Tera Group, Inc. v. Citigroup, Inc*., No. 17-CV-4302 (RJS), 2018 WL 4732426, at *3 (S.D.N.Y. Sept. 28, 2018). Here, the Court should likewise reject the Liquidators' attempts to dodge their obligation to plead personal jurisdiction over each of the EFG and BSI Defendants by indiscriminately lumping all of the Defendants together for jurisdictional purposes. *See* FAC ¶ 15.

  Other than these generic group pleading assertions that are insufficient to confer personal

jurisdiction over the EFG and BSI Defendants, the Liquidators make no specific allegations that the EFG and BSI Defendants in particular had U.S. contacts. The Liquidators' jurisdictional theory, therefore, is a far cry from instances in which this Court has exercised personal jurisdiction over foreign defendants. *See, e.g.*, *Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021) (detailing New York contacts sufficient for personal jurisdiction). The EFG and BSI Defendants—unlike those defendants—are not alleged by the Liquidators to have met with BLMIS or clients in New York, to have had New York executive offices from which key decisions were made, to have held itself out to contract counterparties as a New York-based entities or to have engaged in meetings in New York related to the redemptions at issue. *Compare id.* (outlining U.S. touchpoints) *with* FAC ¶ 20 (boilerplate allegations). The Court should dismiss the EFG and BSI Defendants based on the lack of defendant-specific allegations alone. But even if the Court were to overlook the Liquidators' improper tactic of group pleading (which it should not), the Liquidators' jurisdictional assertions still fail.

> **B.    The Bank Accounts Involved in the Redemption Payments Do Not Establish Personal Jurisdiction.**

The Liquidators cannot establish that personal jurisdiction by asserting that the Redemption Payment process took place in the U.S. They have previously acknowledged that all the Redemption Payments were paid *out* of a bank account located in Ireland. *See supra* pp. 8, 11. And in the Citco Brokerage Complaint, they allege that the Redemption Payments were paid *into* a bank account in the Netherlands. *See supra* p. 11. Their belated and self-serving conclusory allegation to the contrary—that "some or all of the Redemption Payments were received at, upon

information and belief, designated United States-based bank accounts," FAC ¶ 133—fails on its face.

      1.     ***The Liquidators' Allegations Establish that the Redemption Process Did Not Occur in the United States.***

    The Liquidators' own allegations that the Redemption Payments were paid to accounts outside the United States defeat any assertion of personal jurisdiction over the EFG and BSI Defendants based on the Redemption Payments. *See supra* p. 11; *see also Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*, 03 CIV. 2936 (MBM), 2004 WL 1620874, at *5 (S.D.N.Y. July 20, 2004) (holding non-U.S. bank did not engage in any jurisdictionally relevant activities in New York where the non-U.S. bank did not use its U.S. correspondent account to effect any transactions giving rise to plaintiff's claims); *see also Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, 19-CV-6046 (VSB), 2020 WL 1166053, at *5 (S.D.N.Y Mar. 11, 2020) (Broderick, J) (holding plaintiff failed to make a *prima facie* showing with respect to New York's long-arm statute because plaintiff did not allege "the existence of a single act directed at New York out of which these claims arise").

    The Liquidators' contradictory allegation that "some or all of the Redemption Payments were received at, upon information and belief, designated United States-based bank accounts" as purportedly directed by the EFG and BSI Defendants, FAC ¶ 133, cannot create a U.S.-jurisdictional nexus for the Redemption Payments, particularly where it is directly belied by the Liquidators' claim that each Redemption Payment was paid to the Netherlands.

    *First*, the Citco Brokerage Complaint alleges no facts in support of this single, self-serving, and unsubstantiated allegation.[21]  Conclusory allegations like this, based solely on "information

---

[21]    Nor can the Liquidators assert that such U.S. bank accounts were correspondent banking accounts, having now abandoned such allegations they raised in prior iterations of the Citco Brokerage Complaint. *See Am. Tissue, Inc. v. DLJ Merch. Banking Partners, II, L.P.*, No. 03 CIV. 6913 (GEL), 2006 WL 1084392, at *5 (S.D.N.Y. Apr. 20,

and belief," are inadequate as a matter of law. *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (holding allegations based "upon information and belief" were entirely speculative where the complaint contained no allegations of fact which, if true, would have supported such allegations); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (explaining that a "conclusory allegation on information and belief" is insufficient to make a claim plausible where the complaint's factual allegations do not raise a right to relief above the speculative level); *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (finding that a complaint with no specific factual allegations to enable the court to evaluate information and belief assertions failed to state a claim).

*Second*, as demonstrated above, the detailed factual allegations in the Citco Brokerage Complaint flatly *contradict* the Liquidators' isolated and belated assertion that the Redemption Payments were supposedly paid to U.S. bank accounts. The Liquidators' own allegations and the terms of the B&C Agreements state just the opposite: the Redemption Payments occurred, by design, entirely outside the United States. *See L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011) (holding allegations that are "contradicted by more specific allegations or documentary evidence—from the Complaint and the exhibits attached thereto" need not be accepted); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint.").

The Liquidators cannot "cure" their failure to plead a plausible basis of personal

---

2006) (finding that "the removal of the express allegations of control in the complaint constitutes an abandonment of that theory").

jurisdiction over the EFG and BSI Defendants with a self-serving allegation that is contradicted by both the Citco Brokerage Complaint and the B&C Agreements themselves.

### 2. *The Liquidators Cannot Plausibly Deny that the Redemption Payments were Paid to Non-U.S. Accounts.*

The Liquidators also cannot plausibly deny that the Redemption Payments were paid abroad from certain foreign bank accounts to other foreign bank accounts.   As this Court has recognized, the Liquidators have already conceded that "the [R]edemption [P]ayments were made from the Funds' Citco Bank account in Ireland." *Fairfield III*, 2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec. 14, 2020).   Conspicuously absent from the Citco Brokerage Complaint is *any* factual allegation supporting the plausible inference that the Redemption Payments were paid *to* bank accounts based in the United States.   In stark contrast, the Liquidators allege in other complaints specific facts that the redemptions they seek to reverse were paid to accounts in the United States.   For instance, in *Fairfield Sentry Limited (In Liquidation) et al. v. Banco Santander (Suisse) S.A.*, the Liquidators assert that defendants "maintain[ed] bank accounts in the United States at Deutsche Bank Trust Company Americas in New York, and in fact receiv[ed] Redemption Payments in those United States-based and/or New York-based accounts," Adv. Pro. No. 10-03509-CGM, Dkt. No. 52 ¶ 19 (Bankr. S.D.N.Y. Aug. 2, 2019), identifying that bank as the recipient of each specific redemption payment at issue, *id*. at Ex. A.   The Liquidators' allegations against Banco Santander (Suisse) S.A. are not an outlier.   *See* Table 1, attached hereto (outlining similar allegations against other non-Citco Brokerage Proceeding defendants).   Without more, such allegations would have been insufficient to establish jurisdiction.   Here, the Liquidators' inability to make such assertions in the Citco Brokerage Proceeding at all further underscores that there is no jurisdiction nexus for the Redemption Payments.

In fact, the Liquidators recently confirmed all of this in their opening appellate brief to the District Court, challenging certain of Judge Bernstein's holdings in *Fairfield I*, *Fairfield II*, and *Fairfield III*. The Liquidators affirmatively represented to the District Court that all Redemption Payments to the Defendants occurred outside the United States:

> **The redemption transfers at issue here were purely foreign**. The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). **[E]very relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States**.

Liquidators' Appeal at 24 (emphasis added). Accordingly, there can be little doubt that the Redemption Payments occurred completely outside the United States.

### C.    The Alleged Foreseeability of the Funds' Investment in BLMIS Does Not Establish Personal Jurisdiction over the EFG and BSI Defendants

The Liquidators' second theory—that the EFG and BSI Defendants (along with the other Beneficial Shareholders) "purposely availed themselves of laws of the United States and the State of New York" by investing money in the Funds allegedly "knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS," FAC ¶ 20—also fails. That theory is jurisdictionally irrelevant for three reasons.

*First*, the allegation that the EFG and BSI Defendants allegedly knew that their investments in the Funds would be comingled with other investments and the net surplus of those investments would ultimately be invested in BLMIS does not give rise to this litigation and thus does not support jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018)

(substantial connection "depends on the relationship among the defendant, the forum, and the litigation"). The Liquidators' constructive trust claim is not predicated on whether or not the funds they seek to *recover* were ever placed with or controlled by BLMIS. Nor does the Liquidators' claim focus on the decision to *invest* with the Funds as the basis for either liability or jurisdiction. *See Fairfield I*, 2018 WL 3756343, at *17–27 (finding subscription agreements irrelevant to claim because not based on subscription). Instead, the Liquidators' claim relates to and arises out of the calculation of the NAV by the Funds' Dutch administrator, Citco Fund Services, and the foreign Funds' subsequent alleged disbursement of the Redemption Payments abroad on the basis of those calculations from their Irish bank accounts to bank accounts in the Netherlands. *See* FAC ¶¶ 137, 162, 196. The Citco Record Subscriber, on behalf of the Defendants, made its requests for the Redemption Payments by tendering shares to Citco Fund Services in the Netherlands, *see Migani* ¶¶ 14–16; and, in turn, the Redemption Payments were funded from the Funds' bank accounts held at Citco Bank in Ireland, *see Fairfield III*, 2020 WL 7345988 at *7 (finding all transfers paid by Citco Bank). As the Liquidators themselves maintain, every element of the transaction is "purely foreign." Liquidators' Appeal at 24.

*Second*, knowledge that the Funds would invest some of their own money with BLMIS in New York is insufficient as a matter of law to support jurisdiction over the EFG and BSI Defendants. The Supreme Court has "consistently rejected attempts to satisfy this defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Walden*, 571 U.S. at 284. In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in a Nevada court for an unlawful seizure of money in a Georgia airport. *Id*. at 288. The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it

unconstitutional to exercise personal jurisdiction over the police officer in Nevada. *Id*. at 289. As

the Supreme Court explained, the foreseeability of plaintiff's connection to the forum is irrelevant

to whether there is jurisdiction over defendant because it "impermissibly allows a plaintiff's

contacts with the defendant and forum to drive the jurisdictional analysis." *Id*. Instead, "[t]he

substantial connection … between the defendant and the forum State necessary for a finding of

minimum contacts must come about by *an action of the defendant purposefully directed toward

the forum State*." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987)

(quotation omitted) (emphasis in original); *see also Hau Yin To v. HSBC Holdings PLC*, No.

15CV3590-LTS-SN, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d

Cir. 2017) ("[P]ayments to New York merely to ensure compliance with contract terms negotiated

and executed outside of New York do not 'project' a defendant into the state sufficiently to confer

personal jurisdiction over it.").

    Courts in this district have widely cited *Walden* to find that personal jurisdiction does not

exist over foreign bank defendants (like the EFG and BSI Defendants), where plaintiffs (like the

Liquidators) seek to rely on their *own* forum contacts to establish jurisdiction. *See, e.g.*, *Sullivan

v. Barclays PLC*, No. 13-CV-2811 (PKC), 2017 WL 685570, at *44 (S.D.N.Y. Feb. 21, 2017)

(rejecting plaintiffs' contacts with the forum as sufficient for personal jurisdiction and dismissing

Swiss bank defendant UBS because "plaintiffs' allegations concerning defendants' misconduct

does not allege a United States nexus to [that conduct]").[22]

    Even if true, the Liquidators' allegation that the EFG and BSI Defendants knew that the

---

[22]    *See also Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 207 (S.D.N.Y. 2018), *adhered to on denial
of reconsideration*, No. 16-CV-6496 (LAK), 2018 WL 6985207 (S.D.N.Y. Dec. 20, 2018) (plaintiffs' own forum
contacts did not give rise to personal jurisdiction where "the Foreign Defendants are alleged to have engaged in [the
conduct giving rise to the claims] while they were outside of the United States"); *cf. Henkin v. Gibraltar Priv. Bank
& Tr. Co.*, No. CV 16-5452, 2018 WL 557866, at *4 (E.D.N.Y. Jan. 22, 2018) (similar).

Funds would invest with BLMIS does not satisfy *Walden*, and is insufficient to haul the EFG and BSI Defendants into a New York court. Once the Citco Record Subscriber purportedly transferred the EFG and BSI Defendants' subscription money to the Funds, the money would have no longer been the EFG and BSI Defendants'. The Citco Record Subscriber entered into contracts to exchange the money for shares in the *Funds*—not shares in BLMIS.[23] While some of the money invested in the Funds was transferred to BLMIS, and some of the Redemption Payments may have been funded by transfers from BLMIS, that was not universally or even typically the case. As the Liquidators allege, the Funds netted subscriptions against redemptions, and accordingly, often funded Redemption Payments with money that came from new investments. *See* FAC ¶ 130 (alleging that subscription money was used to pay redemptions as a "shortcut"). Thus, those netted moneys were never placed with BLMIS in New York at all. The law does not support the Liquidators' expansive view that an investment company can sue its investors in any jurisdiction where that investment company itself decides to make investments. *See Walden*, 571 U.S. at 284.

*Third*, the Liquidators' suggestion that money placed with the Funds may have made its way to BLMIS is not a basis for asserting personal jurisdiction; it is nothing more than the type of "stream of commerce" theory of personal jurisdiction rejected by the Supreme Court. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 886 (2011) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum," but rather the defendant must "engage[] in conduct purposefully directed at [the forum]."); *In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-CV-2830, 2020 WL 7046837, at *3–4 (S.D.N.Y. Nov. 30, 2020) (holding neither an

---

[23]    *See Fairfield II*, 596 B.R. at 288 ("In rejecting Sentry's arguments relating to the Certification Issue, the Privy Council considered the provisions of Articles 9, 10 and 11, and concluded that the NAV had to be definitively determined at the time of the subscription or redemption; otherwise, the scheme was "unworkable."); *see also Migani* ¶ 10 ("The Subscription Agreement binds the subscriber to his subscription and to the terms of the Fund Documents.").

23

attempt to profit from conduct underlying claim nor foreseeability of a harm in forum were sufficient to establish jurisdiction in absence of a defendant's contact with forum).

### D.    None of the Liquidators' Remaining Allegations Serve as a Basis for Personal Jurisdiction

The remainder of the Liquidators' threadbare allegations, similarly, do not help them. They are merely broad and conclusory assertions that the EFG and BSI Defendants—along with the other Defendants— "transacted business" in New York, FAC ¶ 20, "derived significant revenue from New York," *id.*, or otherwise maintained "minimum contacts and/or general business contacts with the United States or New York," *id.* Such conclusions—unsupported by factual averments— are not entitled to any weight in the jurisdictional inquiry. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (courts need not credit "conclusory non-fact-specific jurisdictional allegations").[24]

Indeed, "courts have regularly held that a plaintiff asserting jurisdiction must tender *specific* allegations about the defendant's contacts with the forum state." *Delaware State Police*, 939 F. Supp.2d. at 332–33 (emphasis added); *Gmurzynska v. Hutton*, 257 F.Supp.2d 621, 625 (S.D.N.Y. 2003) (noting that "conclusory allegations are not enough to establish personal jurisdiction").[25] Under this standard, courts in this district have found that broad-based allegations about the transacting of business in New York or obtaining of revenue in New York patently insufficient to give rise to personal jurisdiction. *See Guo Jin v. EBI, Inc.*, No. 05-CV-

---

[24]    *See also Doe v. Delaware State Police*, 939 F. Supp.2d 313, 329 (S.D.N.Y. 2013) (ruling that broad allegations that the defendants—members of an out-of-state police force—would "issue warrants, execute warrants, seek extradition in New York, make New York court appearances, and purchase goods and services from New York manufacturers" insufficient to confer personal jurisdiction, absent particularized, defendant-specific N.Y. touchpoints relevant to the claim).

[25]    *See also Plunket v. Doyle*, No. 99–CV–11006, 2001 WL 175252, at *3 (S.D.N.Y. Feb. 22, 2001) ("Because plaintiff has alleged no facts beyond conclusory allegations, tending to show that defendants or their agents had contacts with New York and availed themselves of this forum, plaintiff has not met her due process burden.").

24

4201(NGG)(SMG), 2008 WL 896192, at *2 (E.D.N.Y. Mar. 31, 2008) ("Instead of providing the court with facts sufficient to justify its exercise of jurisdiction, [the plaintiff] has simply phrased legal conclusions as statements of fact, stating, for example, that Defendants 'contracted ... to supply services in the State of New York' and that Defendants 'have derived substantial revenue from . . . . services performed in New York.").   Here, the Liquidators' similarly conclusory allegations fare no better and do not salvage their jurisdictional theory.[26]

## II.    The Exercise of Personal Jurisdiction over the EFG and BSI Defendants Would Not Comport with Due Process.

Compounding the absence of sufficient minimum contacts with the forum or their connection to the Liquidators' claim, the Court's exercise of personal jurisdiction over the EFG and BSI Defendants would be unreasonable and contrary to "traditional notions of fair play and substantial justice." *Metro. Life*, 84 F.3d at 578 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).  "The Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citation omitted).  Here, where their purported contacts with the United States arose from actions that were taken by foreign entities on foreign soil pursuant to foreign contracts, the EFG and BSI Defendants should have "reasonably anticipate[d] being haled into court." *Id.*[27]  The inequity of exercising personal jurisdiction over the EFG and

---

[26]    For the avoidance of doubt, the EFG and BSI Defendants expressly preserve their argument that jurisdictional discovery is premature absent this Court finding that the Liquidators have pled a *prima facie* case of personal jurisdiction over the EFG and BSI Defendants.  While the Court has addressed this issue at a hearing on October 28, 2021 in two of the Liquidators' adversary proceedings captioned *Fairfield Sentry Ltd. v. HSBC Securities Services (Luxembourg) SA*, Adv Pro. No. 10-3630, and *Fairfield Sentry Ltd v. HSBC Private Bank (Suisse) SA*, Adv. Pro. No. 10-3633, it has not done so with respect to the allegations at issue here as to the EFG and BSI Defendants.

[27]    "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction." *In re CIL Limited*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) (internal quotation marks and citation omitted); *see also*

BSI Defendants is particularly blatant, as the Liquidators can (and have, albeit unsuccessfully) taken advantage of an alternative forum in the BVI.

In evaluating the reasonableness of exercising personal jurisdiction, "[a] court must consider the burden on defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi*, 480 U.S. at 113–14. Each of these factors weighs against exercising personal jurisdiction here.

*First*, defending the Liquidators' actions before this Court would create a burden on the EFG and BSI Defendants, as "none of their records, files, or witnesses with information about the litigation are located" in the United States. *Metro. Life*, 84 F.3d at 574. This holds true despite the availability of modern technology, which might reduce, but does not eliminate, this burden. *See id.* ("[T]his factor cuts slightly in favor of the defendant"); *Thorsen v. Sons of Norway*, 996 F. Supp.2d 143, 159 (E.D.N.Y. 2014) (finding the burden of traveling to New York had diminished in the modern age but was still an "important factor"). Moreover, all of the EFG and BSI Defendants hail from either Switzerland or Monaco, where discovery of such documents would expose these defendants to risk of civil and criminal liability. *See* Bench Ruling Granting in Part and Denying in Part the Foreign Representatives Motion Seeking Limited Relief, *Fairfield Sentry Ltd., (In Liquidation), et al., v. Theodoor GGC Amsterdam, et al.*, No. Adv. Pro. No. 10-03496, ECF No. 799-2 (July 19, 2012).[28]

---

*Porina v. Marward Shipping Co.*, No. 05 CIV. 5621(RPP), 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make a stronger showing of reasonableness in order to show that jurisdiction over the defendant is proper.").

[28]    In particular, the Court observed the following:

> The various respondents have described . . . the strong and undeniable interest of many nations in enforcing their banking secrecy laws. Thus, yielding to the Foreign Representative's Disclosure Request implicates the significant bank customer confidentiality laws of no fewer than 30 countries . . . . As such, this Court is hard-pressed to find any compelling United States' interest in mandating discovery here at this juncture of the pending litigation." *Id.*

*Second*, the United States' lesser interest in adjudicating disputes between *foreign* parties arising under *foreign* law further cautions against exercising jurisdiction. *Asahi*, 480 U.S. at 114–15. The Supreme Court has noted that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id*. at 115 (internal quotation marks omitted).

*Finally*, the Liquidators have not demonstrated that it is more convenient for them to litigate their claims against the EFG and BSI Defendants in New York rather than in the BVI. *See id.* at 114. Indeed, the Liquidators initially chose the BVI as the preferable and most convenient forum to pursue their claims. Only upon losing at the highest level in the BVI court system did the Liquidators then discontinue their suits in that forum, and make a strategy decision to pursue their claims in the United States in what they hoped would be a more advantageous forum. *See Ford Motor Co. v. Mont. Eigth Jud. Dist. Ct.* 141 S. Ct. 1017, 1022, at 1031 (2021) (noting that jurisdiction had been found improper where "the plaintiffs were engaged in forum-shopping"). The Liquidators' maneuvering demonstrates a lack of interest in obtaining convenient and effective relief and undercuts any claim that the assertion of personal jurisdiction over EFG in this Court would be reasonable.

## **CONCLUSION**

For the foregoing reasons, the Liquidators' Proceedings should be dismissed with prejudice under Rule 12(b)(2) for failure to allege personal jurisdiction over the EFG and BSI Defendants.

Dated: October 29, 2021
       New York, New York

Respectfully Submitted,

/s/ D. Farrington Yates
D. Farrington Yates
Adam M. Lavine
Donna (Dong Ni) Xu

**KOBRE & KIM LLP**
800 Third Avenue
New York, NY, 10022
T: (212) 488-1200
F: (212) 488-1220
Farrington.Yates@kobrekim.com
Adam.Lavine@kobrekim.com
Donna.Xu@kobrekim.com

*Counsel for the EFG and BSI
Defendants*

**Table 1**

| No. | Action | Allegations | |
|---|---|---|---|
| 1 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.*, 10-ap-03496-CGM (Bankr. S.D.N.Y.) | "… and maintaining bank accounts in the United States at Citibank NA, and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts." Dkt. No. 1463-1 at ¶ 19. | Identifying "Citibank NA, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. at Ex. A. |
| 2 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Dominion Sec. Sub A/C, et al.*, 10-ap-03502-CGM (Bankr. S.D.N.Y.) | "RBC Dominion and the Beneficial Shareholders selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption Payments at issue in this action into those bank accounts." Dkt. No. 69 ¶ 19 | Identifying "JP Morgan Chase Manhattan Bank, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. at Ex. A. |
| 3 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Privee Edmond De Rothschild (Eur.), et al.*, 10-ap-03505-CGM (Bankr. S.D.N.Y.) | "… and maintaining bank accounts in the United States at Bank of new York and Wachovia Bank NA and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts. Banque Privee and the Beneficial Shareholders selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption payments at issue in this action into those bank accounts." Dkt. No. 82 at ¶ 19. | Identifying "Wachovia Bank NA, New York, NY" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. at Ex. A. |