**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LIMITED, et al., | Case No: 10-13164 (SMB) |
| Debtors in Foreign Proceedings. | Jointly Administered |
| Fairfield Sentry Limited (In Liquidation), *et al.*, acting by and through the Foreign Representatives thereof, | |
| Plaintiffs, | Adv. Pro. No. 10-03496 (CGM) |
| -against- | Administratively |
| Theodoor GGC Amsterdam, et al., | Consolidated |
| Defendants. | |
| FAIRFIELD SENTRY LIMITED (IN LIQUIDATION) and FAIRFIELD SIGMA LIMITED (IN LIQUIDATION), acting by and through the Foreign Representative thereof, and KENNETH KRYS, solely in his capacity as Foreign Representative and Liquidator thereof, | Adv. Pro. No. 10-03635 (SMB) |
| Plaintiffs, | |
| -against- | |
| ABN AMRO SCHWEIZ AG A/K/A ABN AMRO (SWITZERLAND) AG, *et al.*, | |
| Defendants. | |

**CLARIDEN LEU LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

    A.    The Liquidators' Proceedings. ............................................................... 3

    B.    Allegations Regarding the Redemption Payments. ................................................ 5

    C.    Allegations Regarding the Citco Platform. ............................................................ 7

ARGUMENT ........................................................................................................................ 10

    A.    The Redemption Accounts Do Not Establish Personal Jurisdiction..................... 13

    B.    The Alleged Foreseeability of the Funds' Investment in BLMIS Does Not
           Establish Jurisdiction over Clariden Leu. ............................................................ 16

    C.    Exercising Personal Jurisdiction over Citco's Brokerage Customers Would
           Not Comport with Due Process. ........................................................................... 19

CONCLUSION..................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Arista Recs., LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ...................................................................... 14

*Asahi Metal Indus. Co., Ltd. v. Superior Court*,
    480 U.S. 102 (1987) ...................................................................... 18, 19–20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................... 5

*Benton v. Cameco Corp.*,
    375 F.3d 1070 (10th Cir. 2004) ...................................................................... 22

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2017) ...................................................................... 10

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985) ...................................................................... 20

*In re CIL Ltd.*,
    582 B.R. 46 (Bankr. S.D.N.Y. 2018) ...................................................................... 17

*DiStefano v. Carozzi N. Am., Inc.*,
    286 F.3d 81 (2d Cir. 2001) ...................................................................... 10

*In re Fairfield Sentry Ltd.*,
    2018 WL 3756343 (Aug. 6, 2018) ...................................................................... 2, 5, 17

*In re Fairfield Sentry Ltd.*,
    2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ...................................................................... 2, 17

*In re Fairfield Sentry Ltd.*,
    458 B.R. 665 (S.D.N.Y. 2011) ...................................................................... 20–21

*In re Fairfield Sentry Ltd.*,
    596 B.R. 275 (Bankr. S.D.N.Y. 2018) ...................................................................... 2

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,
    [2014] UKPC 9 (April 19, 2014) ...................................................................... 3–4, 17

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
    141 S. Ct. 1017 (2021) ...................................................................... 22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ...................................................................... 17

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995) ................................................................. 14

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,
  2020 WL 1166053 (S.D.N.Y. Mar. 11, 2020)p .................................... 13

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) ................................................................. 14

*Manko Window Sys., Inc. v. Prestik*,
  2017 WL 4355580 (D. Kan. Sept. 29, 2017)......................................... 22

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
  12 N.E.3d 458 (N.Y. 2014)................................................................... 20

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*,
  2004 WL 1620874 (S.D.N.Y. July 20, 2004) ....................................... 13

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................. 2, 11

*Porina v. Marward Shipping Co.*,
  2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006)....................................... 19

*Pyskaty v. Wide World of Cars, LLC*,
  856 F.3d 216 (2d Cir. 2017) ................................................................. 14

*Rocky Mountain Chocolate Factory v. Arellano*,
  2017 WL 4697503 (D. Colo. Oct. 19, 2017) ......................................... 22

*Rose v. Goldman, Sachs & Co.*,
  163 F. Supp. 2d 238 (S.D.N.Y. 2001) ................................................. 14

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
  277 F. Supp. 3d 521 (S.D.N.Y. 2017) ................................................. 12

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) ................................................................. 17

*Walden v. Fiore*,
  571 U.S. 277 (2014)............................................................... 13, 18, 20

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................... 12

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980).............................................................................. 19

*Xiu Feng Li v. Hock,*
     371 F. App'x 171 (2d Cir. 2010) ........................................................................................ 12

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC,*
     2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020).................................................................. 10–11

Defendant Clariden Leu Ltd ("Clariden Leu"), by its undersigned counsel, respectfully submits this memorandum of law in support of its motion to dismiss, with prejudice, the Fifth Amended Complaint ("FAC") of the Liquidators of Fairfield Sentry Limited and Fairfield Sigma Limited[1] in *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03635 (Bankr. S.D.N.Y.) (together with *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03636 (Bankr. S.D.N.Y.), the "Citco Brokerage Proceedings" and "Citco Brokerage Complaints") under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

The grounds requiring dismissal here are particular to Clariden Leu and the 73 other defendants in the Citco Brokerage Proceedings (together with Clariden Leu, the "Citco's Brokerage Customers")[2] because here, unlike the other remaining actions initiated by the

---

[1] Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma"), and Fairfield Lambda Limited ("Lambda") are referred to collectively as the "Funds." Liquidators allege that Sentry was the largest of the so-called "feeder-funds" to maintain accounts with Bernard L. Madoff Securities LLC whereas Sigma and Lambda were indirect BLMIS feeder funds established for foreign currency investment through the purchase of shares of Sentry. Adv. Pro. No. 10-03635 ¶ 125; Adv. Pro. No. 10-03636 ¶ 133. Despite this distinction, the Liquidators refer to Sentry, Sigma, and Lambda as the "Funds" throughout the Citco Brokerage Complaints and only occasionally acknowledge that Sigma and Lambda were indirect feeder funds for Bernard L. Madoff Securities LLC.

[2] The 73 other Citco's Brokerage Customers will be filing separate and independent motions to dismiss asserting the same basis for dismissal for lack of personal jurisdiction based on identical allegations against them as those against Clariden Leu. Indeed, the only allegations in the Citco Brokerage Complaints unique to each of the individual Citco's Brokerage Customers are the allegations concerning their respective places of incorporation and registered addresses. *See* Adv. Pro. No. 10-03635 FAC ¶¶ 33-104; Adv. Pro. No. 10-03636 FAC ¶¶ 34-112. This means that Clariden Leu is mentioned by name in just two paragraphs in the Citco Brokerage Complaints. *See* Adv. Pro. No. 10-03635 FAC ¶¶ 15, 57; Adv. Pro. No. 10-03636 FAC ¶ 15, 62. *All other allegations* are made against Citco's Brokerage Customers, including Clariden Leu, by way of group pleading.

Liquidators, there are no plausible allegations whatsoever that the redemption payments were made to U.S. accounts or went through U.S. correspondent accounts.

This Court already dismissed all but one of the claims the Liquidators asserted against Clariden Leu for failure to state a claim. *See In re Fairfield Sentry Ltd.*, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"); *In re Fairfield Sentry Ltd.*, 596 B.R. 275 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"); *In re Fairfield Sentry Ltd.*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"). The sole remaining claim against Clariden Leu—for a "constructive trust" under British Virgin Islands ("BVI") law on redemption payments that Clariden Leu allegedly received, *see* Adv. Pro. No. 10-03635 FAC ¶ 198; Adv. Pro. No. 10-03636 FAC ¶ 206—must be dismissed for lack of personal jurisdiction.

To proceed in this Court on this claim, the Liquidators first must establish this Court's personal jurisdiction over each redemption payment that they seek to reverse. *See Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) (Bernstein, J.). But the Complaint is devoid of any allegation that the redemption payments at issue were received in accounts in the United States. On the contrary, the Liquidators' allegations, the underlying documents incorporated into the Complaint (like the agreements Citco's Brokerage Customers entered into with certain Citco entities), and the arguments the Liquidators have made both in this Court and on appeal all speak with one voice: Citco's Brokerage Customers, including Clariden Leu, received each redemption payment at issue in accounts in the Netherlands, *not in the United States*.

The Liquidators will likely argue that their vague, conclusory allegation of receipt of redemption payments in unspecified U.S. accounts is sufficient to subject a party to this Court's jurisdiction. This is both untrue as a matter of law and it is also not what the Liquidators have

pleaded as to Clariden Leu (and the other Citco's Brokerage Customers). For this reason alone, Clariden Leu should be dismissed for lack of personal jurisdiction under New York's long-arm statute. Moreover, because the Liquidators affirmatively allege that Clariden Leu (and the other Citco's Brokerage Customers) had *no contacts* with the United States, the exercise of jurisdiction over Clariden Leu would violate due process. The Court should therefore dismiss the Liquidators' sole remaining claim against Clariden Leu.

## BACKGROUND

### A.    The Liquidators' Proceedings.

These cases are ancillary to the foreign liquidation of the Funds in court-supervised proceedings pending in the BVI. Between October 2009 and March 2010, the Liquidators commenced actions in the BVI against several of the Funds' alleged investors seeking restitution on the theory that the Funds mistakenly made redemption payments before and during BLMIS's collapse.[3] Since then, these Liquidators have brought more than 300 actions in the United States against partially overlapping defendants with overlapping theories of liability. The New York actions were stayed pending resolution of the BVI actions, which were poised to present potentially dispositive rulings on claims in the BVI and New York actions. In 2014, the Privy Council, the court of last resort for appeals for the BVI, affirmed dismissal of the Liquidators' BVI law claims for restitution based on mistake. Starting in 2016, after receiving that unfavorable decision, the Liquidators discontinued all remaining BVI actions,[4] and began

---

[3] *See* Declaration of William Hare in Support of Motion for Leave to Amend, ¶ 15 (Adv. Pro No. 10-03635 Dkt. 145; Adv. Pro. No. 10-03636 Dkt. 164) (the "Hare Decl.").

[4] *See* Hare Decl. ¶ 68. In the BVI courts, the Liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the Fund's alleged miscalculation of their NAV. The Liquidators lost those claims at all levels of the BVI court system. *See Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9 (April 19, 2014) ("Migani") ¶ 23 (concluding the Liquidators' approach

prosecuting the New York actions under a new theory that the payment of the redemptions was

not merely mistaken, but the result of bad faith by the Funds' administrator, Citco Fund Services.

According to the Liquidators' allegations, every relevant aspect of their constructive trust

claim brought under BVI law is foreign:

- Clariden Leu (along with the other Citco's Brokerage Customers) is a foreign financial institutions with its principal place of business and place of incorporation outside the United States. *See* Adv. Pro. No. 10-03635 FAC ¶ 57; Adv. Pro. No. 10-03636 FAC ¶ 62. It is not alleged to conduct any business in the United States.

- The Funds are BVI hedge funds that are now in liquidation in their home jurisdiction of the BVI. *See* Adv. Pro. No. 10-03635 FAC ¶¶ 26-28; Adv. Pro. No. 10-03636 FAC ¶¶ 26-29.

- As a pre-condition to investing in the Funds, Clariden Leu (and the other Citco's Brokerage Customers) was required to enter into Brokerage and Custody Agreements ("B&C Agreements") governed by the laws of the Netherlands with non-U.S. entities associated with Citco Group Limited ("Citco"). *See* Adv. Pro. No. 10-03635 FAC ¶ 8; Adv. Pro. No. 10-03636 FAC ¶ 8.

- Under the B&C Agreements, Clariden Leu (and the other Citco's Brokerage Customers) allegedly received from the foreign Cito entities redemption payments in bank accounts in the Netherlands or other accounts outside the United States. *See* Adv. Pro. No. 10-03635 FAC ¶ 106 and Exs. A, B; Adv. Pro. No. 10-03636 FAC ¶ 114 and Exs. A, B, and C.

The only apparent reason Liquidators have brought this foreign claim before this Court is

to avoid adverse rulings in the BVI. In bringing their claims here, Liquidators improperly read

the subscription agreements[5] for the purchase of shares in the Funds as imposing a New York

---

is "an impossible construction"). They also lost on their claim that redeeming investors did not give good consideration for the redemptions. *See generally id.*

[5] Unlike the other defendants against whom the Liquidators have pending constructive trust claims, the Liquidators do not allege that Clariden Leu (and the other Citco's Brokerage Customers) entered into subscription agreements with the Funds. Rather, the Liquidators allege that Citco's Brokerage Customers entered into B&C Agreements with the Citco entities, who in turn entered into subscription agreements with the Funds. *See* Adv. Pro. No. 10-03635 ¶ 16; Adv. Pro. No. 10-03636 ¶ 16. In particular, the Liquidators allege that certain Citco entities entered into subscription agreements and subsequent subscription agreements with the Funds

forum selection clause for their claim against Clariden Leu's (and the other Citco's Brokerage

Customers') redemption of shares. This Court rejected that theory because the Liquidators'

claim does not arise out of or relate to the subscription agreements. *Fairfield I*, 2018 WL

3756343, at *11 (adhering to the Privy Council's holding "that the Subscription Agreement was

irrelevant to actions to recover the inflated redemption payments").[6] Having abandoned their

remaining claims in the BVI, the Liquidators are now grasping to justify maintaining these

litigations against Clariden Leu (and the other Citco's Brokerage Customers) and hundreds of

others in New York, a forum with no connection to the redemption transactions at issue.[7]

**B.    Allegations Regarding the Redemption Payments.**

In these proceedings, the BVI Liquidators seek an aggregate damages award of

approximately $1.76 billion from Clariden Leu and the other Citco's Brokerage Customers for

redemptions they allegedly made and payments they allegedly received (the "Redemption

Payments") outside the United States.[8] The Liquidators do not specify the amount of damages

they seek from Clariden Leu in this action. Adv. Pro. No. 10-03635 FAC ¶¶ 8, 17; Adv. Pro. No.

10-03636 FAC ¶¶ 8, 17.

---

under which the Citco entities subscribed for shares in the Funds. *See* Adv. Pro. No. 10-03635 ¶
22; Adv. Pro. No. 10-03636 ¶ 22.

[6] This ruling is the subject of a pending appeal to the District Court.

[7] *See* Tr. July 27, 2016 Hr'g, at 11–14 ("THE COURT: It just sounds like you litigated these
issues or you should litigate them in the BVI. I don't understand why they're here. … THE
COURT: I understand that. But at some point you commenced these cases here …. And the
question is why you didn't commence them in BVI?").

[8] For purposes of this motion only, Clariden Leu takes all of the well-pleaded factual
allegations—but not legal or boilerplate conclusions couched as factual allegations—in the Citco
Complaints as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Clariden Leu reserves all
rights to contest any such factual allegations that are false or inaccurate at the appropriate
procedural stage of this proceeding, if necessary.

The Liquidators allege that Clariden Leu (and the other Citco's Brokerage Customers), through various entities associated with non-U.S. Citco and its affiliates,[9] invested outside the United States in the Funds, which channeled most private investments into managed accounts with BLMIS.  Adv. Pro. No. 10-03635 FAC ¶ 2; Adv. Pro. No. 10-03636 FAC ¶ 2.  In Adv. Pro. No. 10-03635, the Liquidators allege that between April 20, 2004, and November 19, 2008, following the receipt of notices of redemption, Sentry and Sigma made Redemption Payments to accounts held in the name of CGC NA (an affiliate of Citco, defined by the Liquidators as the "Citco Record Subscriber") aggregating $51,929,665.41.  FAC ¶ 8.  In Adv. Pro. No. 10-03636, the Liquidators allege that between April 20, 2004, and November 24, 2008, following the receipt of notices of redemption, Sentry, Sigma, and Lambda made Redemption Payments to accounts held in the names of Citco Global Custody NV, Citco Global Custody (NA) NV, Citco Fund Services (BVI), and Citco Fund Services (Europe) BV (collectively defined by the Liquidators as the "Citco Record Subscribers")[10] aggregating $1,713,056,327.45.  FAC ¶ 8.

The Liquidators further allege that the Citco Subscribers[11] have either retained the Redemption Payments made to them by the Funds for their own accounts or paid all or some

[9] Citco and the various other Citco-affiliated entities as defined herein are not defendants in this proceeding.

[10] According to the Liquidators' allegations in a related action in this Court, the Citco Record Subscriber and Citco Record Subscribers were foreign entities organized under the laws of foreign countries (either Curaçao or The Netherlands) and members of and registered holders of shares in the Funds, which they purchased by entering into Subscription Agreements with the Funds.  *See Fairfield Sentry Ltd. (In Liquidation) et al. v. Citco Global Custody N.V. et al.*, Adv. Pro. No. 19-01122-CGM, No. 19 ¶¶ 32-34, n.1 (Nov. 26, 2019) ("*Citco Global Custody* Compl.").

[11] The Liquidators collectively refer to the Citco Record Subscriber, the Citco Record Subscribers, and the Citco Banks, defined herein, as the "Citco Subscribers."  *See* Adv. Pro. No. 10-03635 FAC ¶ 8; Adv. Pro. No. 10-03636 FAC ¶ 8.  This memorandum refers to both Citco Record Subscriber and Citco Record Subscribers, as those terms are defined by the Liquidators, as "Citco Record Subscribers" for ease of reference.

portion of such Redemption Payments to the accounts of Citco's Brokerage Customers,
including Clariden Leu.  Adv. Pro. No. 10-03635 FAC ¶¶ 15, 33-104; Adv. Pro. No. 10-03636
FAC ¶ 15, 34-112.

        **C.**    **Allegations Regarding the Citco Platform.**

      The Liquidators allege that, to invest in the Funds, each of the Citco's Brokerage
Customers, including Clariden Leu, entered into a B&C Agreement with a Citco Record
Subscriber and a Citco Bank.[12]  Adv. Pro. No. 10-03635 FAC ¶ 8; Adv. Pro. No. 10-03636 FAC
¶ 8.  *See also* Adv. Pro. No. 10-03635 FAC ¶ 106 ("each of the Defendants entered into the B&C
Agreements with a Citco Bank and the Citco Record Subscriber."); Adv. Pro. No. 10-03636 FAC
¶ 114 ("[E]ach of the Defendants entered into the B&C Agreements with a Citco Bank and one
or more of the Citco Record Subscribers, usually Citco Global Custody.").[13]

      While the FAC contains a single, conclusory allegation that redemption payments were
made to U.S.-based bank accounts (Adv. Pro. No. 10-03635 FAC ¶ 133; Adv. Pro. No. 10-03636
FAC ¶ 141), the allegations in the FAC and other judicially-noticeable sources demonstrate
otherwise.  For example, the Liquidators allege that to receive Redemption Payments, Clariden
Leu (and the other Citco's Brokerage Customers) was *required* to maintain bank accounts with

---

[12] The Liquidators collectively refer to Citco Bank Nederland N.V., Citco Bank Nederland N.V.
Dublin Branch, and the Citco Banking Corporation N.V. as the "Citco Banks."

[13] The Liquidators filed examples of the B&C Agreements in 2017 as exhibits to the Declaration
of David J. Molton in Further Support of Motion for Leave to Amend and in Opposition to
Defendants' Motion to Dismiss.  Adv. Pro. No. 10-03496, Dkt. No. 1337 ("Molton Decl.").  In
one example, the beneficial owner entered into the B&C Agreement with Citco Banking
Corporation N.V. in the Netherlands, as "the Bank," and Citco Global Custody (N.A.) N.V., as
"the Custodian."  *See* Molton Decl. Ex. G.  In another example, the beneficial owner entered into
the B&C Agreement with Citco Bank Nederland N.V. Dublin Branch ("Citco Bank Dublin"), as
"the Bank," and Citco Global Custody N.V. as "the Custodian."  *See* Molton Decl. Ex. H.

the Citco Banks outside of the United States, into which all Redemption Payments were deposited:

> It was under the B&C Agreements that the Citco Subscribers purchased shares in and made redemptions from the Funds for the benefit of Defendants, which are the subject of this action.  Under the B&C Agreements, the *Defendants were required to maintain bank accounts at the Citco Banks from which and into which 'all moneys received from or for the account of' the Defendants were deposited* (the "B&C Accounts").

Adv. Pro. No. 10-03635 FAC ¶ 106 (emphasis added); Adv. Pro. No. 10-03636 FAC ¶ 114 (emphasis added).  In addition, the Liquidators do not (because they cannot) allege that the Citco Banks were located in the United States; in fact, in a related proceeding in this Court, the Liquidators alleged that the Citco Banks were located in the Netherlands; Dublin, Ireland; or Curacao.  *See Citco Global Custody* Compl. ¶¶ 35-37.  Furthermore, the Liquidators allege that, under the B&C Agreements, the Citco Banks had the sole authority to effect brokerage transactions on behalf of Clariden Leu (and the other Citco's Brokerage Customers) and deposit Redemption Payments in their non-U.S. accounts at the Citco Banks. Specifically, the Liquidators allege that:

- "[T]he Citco Banks were solely responsible for providing brokerage services to the Defendants.  According to the B&C Agreements, these services included … 'effecting [] transactions of and/or relating to the purchase and sale of and dealing in Securities in the name and for the account of the' Defendants."  Adv. Pro. No. 10-03635 FAC ¶ 108; Adv. Pro. No. 10-03636 FAC ¶ 116.

- The "B&C Agreements with the Defendants applied to all subscriptions and redemptions of Shares in the Funds by the Citco Subscribers on behalf of the Defendants, and all Redemption Payments were, upon information and belief, sent by the Citco Banks (upon their receipt from the Funds) to the Defendants' B&C Accounts."  Adv. Pro. No. 10-03635 FAC ¶ 115; Adv. Pro. No. 10-03636 FAC ¶ 123.

- The "B&C Agreements afforded the Citco Banks and the Citco Record Subscribers the power to … 'deposit in the [B&C] Account [at the Citco Banks] all moneys received from or for the account of the [Defendants].'"  Adv. Pro. No. 10-03635 FAC ¶ 118; 10-03636 Adv. Pro. No. FAC ¶ 126.

8

In sum, the FACs concede that all the Redemption Payments at issue in the Citco Brokerage

Proceedings were made by the offshore Citco Banks to offshore accounts and that none was

made to or through U.S. banks, the Liquidators' lone, conclusory allegation notwithstanding.

Finally, the specific allegations about each Redemption Payment confirm that none

touched the U.S.:  according to the Liquidators, each Redemption Payment was made to an

account with "Citco Global Custody (NA) NV, Netherlands."  Adv. Pro. No. 10-03635 FAC at

Exs. A (Redemption Payments received by Citco's Brokerage Customers from Sentry) and B

(Redemption Payments from Sigma); Adv. Pro. No. 10-03636 FAC at Exs. A (Redemption

Payments from Sentry), B (Redemption Payments from Sigma), and C (Redemption Payments

from Lambda).[14]  They list every single Redemption Payment at issue, the date of the

Redemption Payment, the amount paid, the number of shares redeemed, and the identity and

location of the bank account to which each such payment was made.  *Id*.  The "Bank Account to

which Redemption Payment Was Made" column contains the same information for every

Redemption Payment:  "Citco Global Custody (NA) NV, ***Netherlands***."  *Id*. (emphasis added).

A sample of entries from these charts, demonstrating the detail with which the Liquidators have

---

[14] The Liquidators' allegations do not specify whether Clariden Leu (or any of the other Citco's
Brokerage Customers) received Redemption Payments in accounts at Citco Global Custody,
Netherlands or in accounts at Citco Bank Dublin.  Nor do the Liquidators' allegations identify
the Funds from which Clariden Leu (or the other Citco's Brokerage Customers) received
Redemption Payments.  For instance, the Liquidators do not specify if Clariden Leu (or other
Citco's Brokerage Customers) received Redemption Payments from all of the Funds or
Redemption Payments from just one (or two) of Sentry, Sigma, or Lambda.

alleged that each Redemption Payment was received at bank accounts outside of the United

States, follows:

| Payment Date | Redemption Payment | No. of Shares | Bank Account to which Redemption Payment Was Made |
|---|---|---|---|
| April 21, 2004 | $325,094.34 | 334.37 | Citco Global Custody (NA) NV, Netherlands |
| April 21, 2004 | $10,937,878.23 | 11249.96 | Citco Global Custody (NA) NV, Netherlands |
| July 26, 2004 | $147.542.37 | 148.21 | Citco Global Custody (NA) NV, Netherlands |

The last column of the exhibits to both FACs reads exactly the same for every Redemption

Payment that Citco's Brokerage Customers (as an undifferentiated group that includes Clariden

Leu) allegedly received.

## ARGUMENT

The Liquidators bear the burden of establishing that this Court has personal jurisdiction

over Clariden Leu. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). To

meet this burden, under New York's long-arm statute, the Liquidators must satisfy two exacting

pleading requirements:  they must plead that (1)  Clariden Leu transacted business within the

state; and (2) the claims asserted arise from that business activity. *See Zim Integrated Shipping

Servs. Ltd. v. Bellwether Design Techs. LLC*, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020)

(Broderick, J.) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2017)).  Even

if the Liquidators could establish that Clariden Leu is subject to New York's long-arm statute—

and they cannot—the Liquidators also must demonstrate that this Court's exercise of personal

jurisdiction over Clariden Leu "would comport with due process." *Zim Integrated Shipping*

*Servs. Ltd.*, 2020 WL 5503557, at *3 (internal quotations omitted).  The Liquidators fail to shoulder this burden.

As Judge Bernstein held in the Madoff Trustee litigation concerning the identical jurisdictional issue, each transaction involving Redemption Payments is a separate claim.  The Liquidators must therefore plead non-conclusory allegations establishing the Court's jurisdiction over Clariden Leu for ***each individual Redemption Payment***, just as the Trustee is required to do.  *In re Bernard L. Madoff*, 594 B.R. at 190 ("Each transfer is a separate claim, and the Trustee must establish the court's jurisdiction with respect to each claim asserted.") (internal quotations and citations omitted).  They have failed to do so here.  Rather, the Liquidators have meticulously alleged that every single Redemption Payment was made to an offshore bank; each claim therefore is foreign to the United States.

The Liquidators appear to advance two primary bases for personal jurisdiction against Clariden Leu (and the other Citco's Brokerage Customers), but both fail.

*First*, despite having painstakingly explained the structure and details of each Redemption Payment was paid to Citco's Brokerage Customers via off-shore bank accounts, the Liquidators now insert into their Citco Brokerage Complaints the conclusory and flatly contradictory statement that "some or all of the Redemption Payments were received at, upon information and belief, designated United States-based bank accounts" as allegedly directed by Citco's Brokerage Customers.  Adv. Pro. No. 10-03635 FAC ¶ 133; Adv. Pro. No. 10-03636 FAC ¶ 141.  This solitary, unsupported "information and belief" assertion (in a separate part of the Complaint from the other generic jurisdictional allegations) is squarely at odds with the

specific allegations in the Complaint. As explained below, this belated, self-serving allegation cannot form the basis for personal jurisdiction.[15]

*Second*, the Liquidators allege, in a broad-brush manner without mentioning Clariden Leu or any other individual defendant, that Citco's Brokerage Customers "purposely availed themselves of laws of the United States and the State of New York" by investing money in the Funds allegedly "knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS." Adv. Pro. No. 10-03635 FAC ¶ 20; Adv. Pro. No. 10-03636 FAC ¶ 20. This jurisdictional theory likewise fails, because it is not relevant to the Liquidators' claim for constructive trust. That claim is wholly unrelated to the Funds' investments in, or redemptions from BLMIS—and indeed, the Liquidators seek to recover Redemption Payments from Clariden Leu (and the other Citco's Brokerage Customers) in this case whether or not those payments were funded with redemptions from BLMIS. As the Liquidators concede, moreover, some of the payments were not funded with redemptions from BLMIS. The claim for constructive trust turns instead on (1) the Redemption Payments from the Funds that as the Liquidators have affirmatively alleged and argued, took place entirely overseas, and (2) the calculation of those payments by the Liquidators' Dutch fund administrator, Citco Fund Services that occurred in the Netherlands. This theory also fails because the Funds

---

[15] The Liquidators are not entitled to conduct jurisdictional discovery of Clariden Leu to shore up their deficient jurisdictional allegations. Courts in this Circuit routinely reject requests for jurisdictional discovery where, as here, "a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction." *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 599 (S.D.N.Y. 2017) (internal quotations omitted); *see also Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) (affirming denial of jurisdictional discovery where plaintiff failed to establish a *prima facie* case of personal jurisdiction); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 290 (S.D.N.Y. 2015) ("[A] plaintiff may not make conclusory non-fact-specific jurisdictional allegations against foreign defendants and thus obtain extensive discovery on that issue.") (internal quotations omitted).

themselves, not Clariden Leu (or the other Citco's Brokerage Customers), placed the investment in BLMIS, and a defendant's mere knowledge of a plaintiff's forum contacts is insufficient, under the Supreme Court's decision in *Walden v. Fiore*, to establish personal jurisdiction.  571 U.S. 277, 286 (2014).

A.      **The Redemption Accounts Do Not Establish Personal Jurisdiction.**

As set forth *supra* (pp. 5–7), the Liquidators' allegations that the Redemption Payments were paid to accounts outside the United States defeat any assertion of personal jurisdiction over Clariden Leu based on the Redemption Payments.  *See Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*, 2004 WL 1620874, at *5 (S.D.N.Y. July 20, 2004) (holding non-U.S. bank did not engage in any jurisdictionally relevant activities in New York where the non-U.S. bank did not use its U.S. correspondent account to effect any transactions giving rise to plaintiff's claims); *see also Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, No. 19-cv-6046, 2020 WL 1166053 (S.D.N.Y. Mar. 11, 2020), at *5 (Broderick, J) (holding plaintiff failed to make a *prima facie* showing with respect to section 302(a)(1) because plaintiff did not allege "the existence of a single act directed at New York out of which these claims arise").

The Liquidators' free-standing and contradictory allegation that "some or all of the Redemption Payments were received at, upon information and belief, designated United States-based bank accounts" as purportedly directed by Citco's Brokerage Customers (Adv. Pro. No. 10-03635 FAC ¶ 133; Adv. Pro. No. 10-03636 FAC ¶ 141) cannot create a U.S.-jurisdictional nexus for the Redemption Payments, particularly where the Liquidators' far more robust and specific allegations regarding the receipt of the Redemption Payments into Netherlands accounts contradict the conclusory U.S.-related allegation.

*First*, the Citco Brokerage Complaints offer nothing to support this single, self-serving, and unsubstantiated allegation.  Conclusory allegations like this, based solely on "information

13

and belief," should be disregarded as a matter of law.  *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (holding allegations based "upon information and belief" were entirely speculative where the complaint contained no allegations of fact which, if true, would have supported such allegations); *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (explaining that a "conclusory allegation on information and belief" is insufficient to make a claim plausible where the complaint's factual allegations do not raise a right to relief above the speculative level); *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001) (finding that a complaint with no specific factual allegations to enable the court to evaluate information and belief assertions failed to state a claim).  The Liquidators cannot "cure" their dispositive failure to plead a plausible basis of personal jurisdiction over Clariden Leu with a non-party-specific, self-serving, unsubstantiated, and new allegation that is contradicted by the Citco Brokerage Complaints and the B&C Agreements themselves.

*Second*, as demonstrated above, the Complaint's detailed factual allegations *contradict* the Liquidators' isolated, belated assertion that the Redemption Payments were supposedly paid to U.S. bank accounts.  The Liquidators' allegations and the terms of the B&C Agreements state just the opposite:  the Redemption Payments occurred, by design, entirely outside the United States.  *See L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011) (holding allegations that are "contradicted by more specific allegations or documentary evidence—from the Complaint and the exhibits attached thereto" need not be accepted); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint.").

A comparison with other complaints makes clear that the Liquidators have not alleged that the Redemption Payments were paid at bank accounts based in the United States.  Nor can

they.  In those other complaints, the Liquidators allege specific facts showing that the

Redemption Payments they seek to reverse were made to accounts in the United States.  For

instance, in *Fairfield Sentry Ltd. (In Liquidation) et al. v. Banco Santander (Suisse) S.A.*, the

Liquidators alleged that defendants "maintain[ed] bank accounts in the United States at Deutsche

Bank Trust Company Americas in New York, and in fact receiv[ed] Redemption Payments in

those United States-based and/or New York-based accounts."  Adv. Pro. No. 10-03509-CGM,

Dkt. No. 52 ¶ 19 (Bankr. S.D.N.Y. Aug. 2, 2019).  The Liquidators further alleged that each

Redemption Payment was made to "Deutsche Bank Trust Company Americas" in "New York."

*Id*. at Ex. A.  The Liquidators' complaint against Banco Santander (Suisse) S.A. is not an outlier.

The Liquidators made similar factual allegations in other complaints.  *See* Table 1, attached

hereto.

Here, however, the Liquidators made no similar allegations regarding the receipt of

Redemption Payments in U.S. bank accounts.  Instead, the Liquidators affirmatively pleaded that

the Citco's Brokerage Customers receipt of Redemption Payments was exclusively in accounts

located *outside the United States*.

The Liquidators' free-standing allegation that some of the Redemption Payments may

have been received in U.S.-based accounts did not even materialize in any of the Liquidators'

pleadings until they filed their proposed Fourth Amended Complaints in 2017, nearly a decade

into the Fairfield Proceedings.[16]  The first four iterations of the complaints consistently failed,

for obvious reasons, to allege that the Redemption Payments were made to U.S. bank accounts.[17]

---

[16] *See* Adv. Pro. No. 10-03496, Dkt. No. 1337, Exs. E and F (proposed Fourth Amended Complaints, filed March 31, 2017).

[17] *See* Adv. Pro. No. 10-03635, Dkt. Nos. 8 (Complaint, filed September 21, 2010), 67 (First Amended Complaint, filed January 10, 2011), 86 (Second Amended Complaint, filed May 3, 2011), and 121 (Third Amended Complaint, filed July 20, 2012); Adv. Pro. No. 10-03636, Dkt.

*Third*, the Liquidators recently confirmed that the Redemption Payments were entirely outside of the United States in their opening appellate brief to the District Court challenging certain of Judge Bernstein's holdings in *Fairfield I*, *Fairfield II*, and *Fairfield III*. The Liquidators represented to the District Court that all Redemption Payments to Citco's Brokerage Customers (including Clariden Leu) occurred outside the United States:

> *The redemption transfers at issue here were purely foreign.* The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). [*E*]*very relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States.*

*Fairfield Sentry Ltd. (In Liquidation), et al. v. Citibank NA London, et al.*, No. 1:19-cv-03911 (ECF No. 440) ("Liquidators' Appeal") at 24 (emphasis added). There can be no doubt that the Redemption Payments occurred completely outside the United States.

### B.     The Alleged Foreseeability of the Funds' Investment in BLMIS Does Not Establish Jurisdiction over Clariden Leu.

The Liquidators allege that Citco's Brokerage Customers "purposely availed themselves of the laws of the United States and the State of New York" by investing money in the Funds allegedly "knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS." Adv. Pro. No. 10-03635 FAC ¶ 20; Adv. Pro. No. 10-03636 FAC ¶ 20. That allegation is irrelevant for at least two reasons.

*First*, the claims in this case do not arise from the non-party-specific allegation that Citco's Brokerage Customers allegedly knew that their investments in the Funds would be comingled with

---

Nos. 8 (Complaint, filed September 21, 2010), 67-1 (Corrected First Amended Complaint, filed January 10, 2011), 87 (Second Amended Complaint, filed May 3, 2011), and 122 (Third Amended Complaint, filed July 20, 2012).

other investments and the net surplus of those investments would ultimately be invested in BLMIS.

This allegation thus cannot support jurisdiction. *See Helicopteros Nacionales de Colombia, S.A.*

*v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is

not an appropriate consideration when determining whether a defendant has sufficient contacts

with a forum State to justify an assertion of jurisdiction."); *SPV Osus Ltd. v. UBS AG*, 882 F.3d

333, 344 (2d Cir. 2018) (substantial connection "depends on 'the relationship among the

defendant, the forum, and the litigation'"). The Liquidators' claim is not predicated on whether

the funds they seek to *recover* were ever placed with or controlled by BLMIS. Nor does the

Liquidators' claim focus on the *decision to invest* with the Funds as the basis for either liability or

jurisdiction. *See Fairfield I*, 2018 WL 3756343, at \*17–27 (finding subscription agreements

irrelevant to claim because not based on subscription). Rather, the constructive trust claim relates

to and arises out of the Funds' Dutch administrator's, Citco Fund Services', NAV calculation and

the foreign Funds' subsequent alleged disbursement of the Redemption Payments abroad on the

basis of those calculations from their Irish bank accounts to bank accounts in the Netherlands. *See*

Adv. Pro. No. 10-03635 FAC ¶¶ 137, 162, 196; Adv. Pro. No. 10-03636 FAC ¶¶ 145, 170, 204.

The Citco Subscribers, on behalf of Clariden Leu (and the other Citco's Brokerage Customers),

requested the Redemption Payments by tendering shares to Citco Fund Services in the

Netherlands, *see Migani* ¶¶ 14-16; and, in turn, the Redemption Payments were funded from the

Funds' bank accounts held at Citco Bank in Ireland, *see Fairfield III* at 7 (finding all transfers paid

by Citco Bank). As the Liquidators themselves maintain, every element of the transaction is

"purely foreign." Liquidators' Appeal at 24.

    *Second*, knowledge that the Funds would invest some of their own money with BLMIS in

New York is insufficient as a matter of law to support jurisdiction over Clariden Leu (and the other

Citco's Brokerage Customers).  The Supreme Court has "consistently rejected attempts to satisfy this defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Walden*, 571 U.S. at 284.  In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful seizure of money in a Georgia airport.  *Id*. at 288.  The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over the police officer in Nevada.  *Id*. at 289.  As the Supreme Court explained, the foreseeability of a plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over the defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."  *Id*.  Instead, "'[t]he substantial connection' … between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*."  *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) (quotation omitted) (emphasis in original).  Thus, even if true, the Liquidators' allegation that Citco's Brokerage Customers knew that the Funds would invest with BLMIS does not satisfy *Walden* and is insufficient to haul Clariden Leu into a New York court.

In addition, the FAC's allegations establish that it is not true that Citco's Brokerage Customers knew that the funds would be invested in the U.S.  The Liquidators do not allege that Clariden Leu contracted or invested directly with BLMIS.  Rather, the Liquidators allege that investing in the Funds (*not* BLMIS), required Clariden Leu (and the other Citco's Brokerage Customers) to contract with the Citco Subscribers.  *See* Adv. Pro. No. 10-03635 FAC ¶¶ 8, 106; Adv. Pro. No. 10-03636 FAC ¶¶ 8, 114.  Furthermore, while some of the money invested in the

18

Funds was transferred to BLMIS, and some of the Redemption Payments may have been funded

by transfers from BLMIS, that was not universally or even typically the case.  As the Liquidators

allege, the Funds netted subscriptions against redemptions, and thus, often funded Redemption

Payments with money that came from other subscriptions.  Thus, the FAC fails to allege that

Clariden Leu's (or any particular Citco's Brokerage Customer's) money was placed with BLMIS

in New York at all.  *See* Adv. Pro. No. 10-03635 FAC ¶ 130; Adv. Pro. No. 10-03636 FAC ¶ 138

(alleging that subscription money was used to pay redemptions as a "shortcut").  The law does not

support the Liquidators' expansive view that an investment company can sue its investors in any

jurisdiction where that investment company itself decides to make investments.

## C.    Exercising Personal Jurisdiction over Citco's Brokerage Customers Would Not Comport with Due Process.

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to

be consistent with due process.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that

allows potential defendants to structure their primary conduct with some minimum assurance as

to where that conduct will and will not render them liable to suit." (citation omitted)).  Courts

apply a "sliding scale" in assessing whether jurisdiction is consistent with due process:  "the

weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms

of unreasonableness to defeat jurisdiction."  *In re CIL Ltd.*, 582 B.R. 46, 79 (Bankr. S.D.N.Y.

2018) (internal quotation marks and citation omitted); *see also Porina v. Marward Shipping Co.*,

2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f a defendant's contacts with the United

States are weak, the plaintiff has to make a stronger showing of reasonableness in order to show

that jurisdiction over the defendant is proper.").  In evaluating the reasonableness of exercising

19

personal jurisdiction, "[a] court must consider the burden on defendant, the interests of the forum

State, and the plaintiff's interest in obtaining relief." *Asahi*, 480 U.S. at 113.

As demonstrated above,  Clariden Leu (and the other Citco's Brokerage Customers) had

no contacts whatsoever with the United States related to the Liquidators' remaining claim for a

constructive trust on the Redemption Payments.  The exercise of personal jurisdiction over

Clariden Leu would therefore not comport with due process. *See Walden*, 571 U.S. at 286

("Due Process requires that a defendant be haled into court in a forum state based on his own

affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes

by interacting with other persons affiliated with the State.") (quoting *Burger King v. Rudzewicz*,

471 U.S. 462, 475 (1985)).  Liquidators here seek to rely on the most incidental of contacts to

establish jurisdiction. *See supra* pp. 13–19.  If those contacts were deemed sufficient, the

Liquidators would therefore be required make a *stronger showing* that exercising jurisdiction

would be reasonable, but each of the factors that the Court must assess in weighing

reasonableness weighs *against* jurisdiction.

*First*, the United States' interest in adjudicating this dispute is minimal at best.  The

dispute is between foreign parties arising under foreign law under a foreign contract for the

return of cash sent between two foreign countries in a purely foreign transaction.  The case was

brought before this Court only because Liquidators apparently mistakenly believed that Clariden

Leu had consented to jurisdiction—a position the Court has since rejected.  Had the Liquidators

not filed a petition for Chapter 15 recognition, there would be no subject matter jurisdiction in

federal court over this claim at all for what is essentially a private dispute between foreign

parties. *In re Fairfield Sentry Ltd.*, 458 B.R. 665, 685 (S.D.N.Y. 2011) (Preska, J.) ("[T]hese

claims are disputes between two private parties that have existed for centuries and are 'made of

20

"the stuff of the traditional actions at common law tried by the courts at Westminster in

1789.""""). The Supreme Court has cautioned against finding jurisdiction over such a claim

between *foreign* parties arising under *foreign* law. *Asahi*, 480 U.S. at 115 ("Great care and

reserve should be exercised when extending our notions of personal jurisdiction into the

international field.") (internal citations omitted); *see also Mashreqbank PSC v. Ahmed Hamad Al

Gosaibi & Bros. Co.*, 12 N.E.3d 458, 459–60 (N.Y. 2014) (noting minimal interest of New York

in pursuing every alleged fraud that passes through correspondent accounts).

   *Second*, defending a constructive trust claim before this Court would impose substantial

burdens on Clariden Leu. Clariden Leu is a Swiss financial institution, and discovery of

documents about these redemption payments in the United States would potentially expose

Clariden Leu to civil and criminal liability under Swiss law. *See* Bench Ruling Granting in Part

and Denying in Part the Foreign Representatives Mot. Seeking Limited Relief, *Fairfield Sentry

Ltd., (In Liquidation), et al., v. Theodoor GGC Amsterdam, et al.*, Adv. Pro. No. 10-03496, ECF

No. 799-2 (July 19, 2012) ("The various respondents have described . . . the strong and

undeniable interest of many nations in enforcing their banking secrecy laws. Thus, yielding to

the Foreign Representative's Disclosure Request implicates the significant bank customer

confidentiality laws of no fewer than 30 countries . . . . As such, this Court is hard-pressed to

find any compelling United States' interest in mandating discovery here at this juncture of the

pending litigation.").

   *Third*, the Liquidators have not demonstrated that it is more reasonable for them to

litigate their claim against Clariden Leu in New York rather than in the BVI (where the Funds

are at home and where a court is administrating its main bankruptcy proceeding) or in

Switzerland, where Clariden Leu is at home and where Swiss courts could address the privacy

and bank secrecy interests. Indeed, the Liquidators initially chose the BVI as their preferred and most convenient forum to pursue related claims. Only after losing at the highest level in the BVI court system did the Liquidators then discontinue their suits in that forum, and pursue them here under new legal theories in what they hoped would be a more advantageous forum. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021) (noting that jurisdiction had been found improper where "the plaintiffs were engaged in forum-shopping"). The Liquidators' maneuvering demonstrates a lack of interest in obtaining convenient and effective relief and undercuts any claim that the assertion of personal jurisdiction over Clariden Leu in this Court would be reasonable.

Courts have held that defendants should be dismissed in circumstances like this, where at best "Defendants' contacts with [the forum] only 'barely satisf[y] the minimum contacts standard,'" and "a majority of the reasonableness factors weigh against the exercise of jurisdiction." *See, e.g.*, *Rocky Mountain Chocolate Factory v. Arellano*, 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017) (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004); *Benton*, 375 F.3d at 1080 (The defendant's "contacts with [the forum] were quite limited, barely satisfying the minimum contacts standard. As a result, [the defendant] need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry. Because the majority of the . . . reasonableness factors weigh in [the defendant's] favor, . . . exercise of personal jurisdiction . . . would offend traditional notions of fair play and substantial justice."); *Manko Window Sys., Inc. v. Prestik*, 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017) ("[B]ecause [Defendant's] contacts with Kansas are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction, the Court grants

Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).").  The same result is warranted here.

## CONCLUSION

The FAC here fails to allege any connection between this forum and Clariden Leu or the alleged conduct underlying the FAC's claims.  The FAC must therefore be dismissed as to Clariden Leu under Rule 12(b)(1) for failure to plead personal jurisdiction.

Dated:  October 29, 2021
      New York, New York

Respectfully Submitted,

**O'MELVENY & MYERS LLP**

By: */s/ William J. Sushon*
    William J. Sushon
    Daniel S. Shamah
    7 Times Square
    New York, New York 10036
    Telephone: (212) 326-2000
    Facsimile: (212) 326-2061
    wsushon@omm.com
    dshamah@omm.com

*Attorneys Defendant Clariden Leu Ltd.*

**Table 1**

| No. | Action | Allegations | |
|-----|--------|-------------|---|
| 1 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.*, 10-ap-03496-CGM (Bankr. S.D.N.Y.) | "… and maintaining bank accounts in the United States at Citibank NA, and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts." Dkt. No. 1463-1 at ¶ 19. | Identifying "Citibank NA, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. at Ex. A. |
| 2 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. RBC Dominion Sec. Sub A/C, et al.*, 10-ap-03502-CGM (Bankr. S.D.N.Y.) | "RBC Dominion and the Beneficial Shareholders selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption Payments at issue in this action into those bank accounts." Dkt. No. 69 ¶ 19 | Identifying "JP Morgan Chase Manhattan Bank, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. at Ex. A. |
| 3 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Privee Edmond De Rothschild (Eur.), et al.*, 10-ap-03505-CGM (Bankr. S.D.N.Y.) | "… and maintaining bank accounts in the United States at Bank of new York and Wachovia Bank NA and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts.  Banque Privee and the Beneficial Shareholders selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption payments at issue in this action into those bank accounts." Dkt. No. 82 at ¶ 19. | Identifying "Wachovia Bank NA, New York, NY" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. at Ex. A. |