**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>          Debtor in Foreign<br>          Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>          Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>          Defendants. | Adv. Pro. No. 10-03635 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BANK J.**
**SAFRA SARASIN AG, F/K/A BANK SARASIN & CIE'S MOTION TO**
**DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND .............................................................................................2

    A.    Plaintiffs' BVI and U.S. Proceedings ....................................... 2

    B.    Allegations about BJSS........................................................ 4

    C.    Allegations Regarding the Redemption Payments ............................. 5

    D.    Allegations Regarding the Citco Platform ............................................. 6

ARGUMENT ...............................................................................................8

    A.    Plaintiffs' Allegations About Redemption Payments Do Not
           Establish Personal Jurisdiction ............................................ 10

           1.    The FAC Offers No Well-Pled Allegations that Any Part of
                 the Redemption Process Occurred in the United States........................... 10

           2.    Plaintiffs Have Conceded that Redemption Payments were
                 Paid to Non-U.S. Accounts..................................................... 12

    B.    The Funds' Investments in BLMIS in New York Do Not Establish
           Jurisdiction over BJSS ....................................................... 12

    C.    The Exercise of Personal Jurisdiction over BJSS Would Not
           Comport with Due Process ................................................... 15

CONCLUSION...............................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arista Records, LLC* v. *Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ................................................................. 10

*Asahi Metal Indus. Co., Ltd.* v. *Superior Court*,
    480 U.S. 102 (1987) ........................................................................... 13

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 5

*Best Van Lines, Inc.* v. *Walker*,
    490 F.3d 239 (2d Cir. 2007) ............................................................. 9, 16

*Burger King* v. *Rudzewicz*,
    471 U.S. 462 (1985) ........................................................................... 15

*Daimler AG* v. *Bauman*,
    571 U.S. 117 (2014) ............................................................................. 8

*DiStefano* v. *Carozzi N. Am., Inc.*,
    286 F.3d 81 (2d Cir. 2001) ................................................................... 8

*In re Fairfield Sentry Ltd.*,
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ..................... 1, 3, 14

*In re Fairfield Sentry Ltd.*,
    2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) .................... 1, 4, 14

*In re Fairfield Sentry Ltd.*,
    596 B.R. 275 (Bankr. S.D.N.Y. 2018) ............................................... 1, 4

*Fairfield Sentry Ltd. (In Liquidation)* v. *Migani*,
    [2014] UKPC 9 .............................................................................. 3, 14

*Goodyear Dunlop Tires Operations, S.A.* v. *Brown*,
    564 U.S. 915 (2011) ............................................................................. 8

*Gucci Am., Inc.* v. *Weixing Li*,
    768 F.3d 122 (2d Cir. 2014) ................................................................. 8

## TABLE OF AUTHORITIES
*(Continued)*

**Page(s)**

*Helicopteros Nacionales de Colombia, S.A.* v. *Hall*,
466 U.S. 408 (1984)..................................................................................................13

*Hirsch* v. *Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995)......................................................................................11

*Homeschool Buyers Club, Inc.* v. *Brave Writer, LLC*,
2020 WL 1166053 (Mar. 11, 2020) .........................................................................11

*Intellivision* v. *Microsoft Corp.*,
484 F. App'x 616 (2d Cir. 2012) ..............................................................................12

*L-7 Designs, Inc.* v. *Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011).....................................................................................11

*Neewra, Inc.* v. *Manakh Al Khaleej Gen. Trading & Contracting Co.*,
2004 WL 1620874 (S.D.N.Y. July 20, 2004) ..........................................................11

*Picard* v. *BNP Paribas S.A. (In re Bernard L. Madoff)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018).......................................................................9

*Pyskaty* v. *Wide World of Cars, LLC*,
856 F.3d 216 (2d Cir. 2017).....................................................................................10

*Rose* v. *Goldman, Sachs & Co.*,
163 F. Supp. 2d 238 (S.D.N.Y. 2001).......................................................................10

*Sonterra Cap. Master Fund Ltd.* v. *Credit Suisse Grp. AG*,
277 F. Supp. 3d 521 (S.D.N.Y. 2017).......................................................................16

*Spiegel* v. *Schulman*,
604 F.3d 72 (2d Cir. 2010)........................................................................................16

*SPV Osus Ltd.* v. *UBS AG*,
882 F.3d 333 (2d Cir. 2018).....................................................................................13

*Walden* v. *Fiore*,
571 U.S. 277 (2014)............................................................................................13, 15

*Weisblum* v. *Prophase Labs, Inc.*,
88 F. Supp. 3d 283 (S.D.N.Y. 2015).........................................................................16

## TABLE OF AUTHORITIES
(*Continued*)

**Page(s)**

*World-Wide Volkswagen Corp.* v. *Woodson*,
    444 U.S. 286 (1980)..................................................................................................15

*Xiu Feng Li* v. *Hock*,
    371 F. App'x 171 (2d Cir. 2010) ...........................................................................16

*Zim Integrated Shipping Servs. Ltd.* v. *Bellwether Design Techs. LLC*,
    2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020)....................................................9, 16

**Statute**

11 U.S.C. § 561(d) ..........................................................................................................4

**Rule**

Fed. R. Civ. P. 12(b)(2)....................................................................................................1

Defendant Bank J. Safra Sarasin AG, f/k/a Bank Sarasin & Cie ("BJSS"), by and

through its undersigned counsel, respectfully submits this memorandum of law in support of its

motion to dismiss, with prejudice, the remaining claim against BJSS asserted in the Fifth Amended

Complaint (ECF No. 620) ("FAC") filed by Plaintiffs, as the liquidators of Fairfield Sentry Limited

("Sentry") and Fairfield Sigma Limited ("Sigma," and together with "Sentry," the "Funds")[1] in

*Fairfield Sentry Ltd. (In Liquidation), et al.* v. *ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-

03635 (Bankr. S.D.N.Y.) (the "Action"), pursuant to Federal Rule of Civil Procedure 12(b)(2).

## PRELIMINARY STATEMENT

This Court has already dismissed all but one of Plaintiffs' claims against BJSS and

the other defendants in the Action (together with BJSS, the "Citco Brokerage Customers") for

failure to state a claim. *See In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y.

Aug. 6, 2018) ("*Fairfield I*"); *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 316 (Bankr. S.D.N.Y.

2018) ("*Fairfield II*"); *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec.

14, 2020) ("*Fairfield III*").   The sole remaining claim against BJSS in the Action seeks the

imposition of a "constructive trust" under British Virgin Islands ("BVI") law with respect to

redemption payments allegedly paid to BJSS by non-U.S. entities associated with Citco Group

Limited, who invested with the Funds.  (*See* FAC ¶¶ 198, 209.)  In addition to failing to state any

claim, Plaintiffs' constructive trust claim must be dismissed because this Court lacks personal

jurisdiction over BJSS, a Swiss financial institution with its principal places of business and place

of incorporation outside the United States.  (*See* FAC ¶ 42.)

---

[1]    As alleged by Plaintiffs, Sentry maintained accounts with Bernard L. Madoff Securities
LLC ("BLMIS"), whereas Sigma was an indirect BLMIS feeder funds established for foreign
currency investment through the purchase of shares of Sentry.  (FAC ¶ 125.)

Moreover, Plaintiffs' own allegations (as well as the underlying facts alleged in and incorporated into the FAC) demonstrate that every relevant aspect of their constructive trust claim involves alleged conduct and transactions that occurred outside of the U.S.:

- The Funds are BVI hedge funds that are now in liquidation in their home jurisdiction of the BVI.  (*See* FAC ¶¶ 26–28);

- As a pre-condition to investing in the Funds, BJSS (and the other Citco Brokerage Customers) was required to enter into Brokerage and Custody Agreements ("B&C Agreements") governed by the laws of the Netherlands with non-U.S. entities associated with Citco Group Limited ("Citco").  (*See* FAC ¶ 8); and

- Pursuant to the B&C Agreements, BJSS (and the other Citco Brokerage Customers) is alleged to have received redemption payments in bank accounts in the Netherlands or other accounts outside the United States that were sent by the foreign Citco entities.  (*See* FAC ¶ 106 & Exs. A and B.)

Indeed, Plaintiffs have admitted in these proceedings that the transactions they seek to unwind through these actions are "purely foreign," arguing to the District Court that "every relevant component of the [redemption] transactions at issue here occurred ***outside the territorial jurisdiction of the United States***."  (Pls.-Appellants' Opening Br. for Second Round Appeal at 24, *Fairfield Sentry Ltd. (In Liquidation)* v. *Citibank NA London*, No. 19-cv-03911-VSB (S.D.N.Y. July 21, 2021), ECF No. 440 ("Plaintiffs' Appeal") (emphasis added).)  Because it is readily apparent from Plaintiffs' allegations that BJSS had ***no contacts*** with the United States, the exercise of jurisdiction over BJSS would violate due process and BJSS should be dismissed for lack of personal jurisdiction.

## BACKGROUND

A.    **Plaintiffs' BVI and U.S. Proceedings.**

This Action is ancillary to the foreign liquidation of the Funds in the BVI, the jurisdiction in which the Funds were incorporated.  (*See* FAC ¶ 14.)  The Funds were placed into liquidation in 2009 before the Commercial Division of the Eastern Caribbean High Court of

2

Justice, British Virgin Islands after BLMIS's fraud was publicly revealed. (*See* FAC ¶¶ 14, 26–
27.) Between October 2009 and March 2010, Plaintiffs commenced actions in the BVI against
several of the Funds' alleged investors seeking restitution on the theory that the Funds mistakenly
made redemption payments prior to and at the time of BLMIS's collapse.[2] Since then, Plaintiffs
have brought more than 300 actions in the United States against partially overlapping defendants
with overlapping theories of liability. The U.S. actions were stayed pending resolution of the BVI
actions. (*See* Order Staying Redeemer Actions, *Fairfield Sentry Ltd. (In Liquidation), et al.* v.
*Theodoor GGC Amsterdam et al.*, Adv. Pro. No. 10-03496, ECF No. 416.) In 2014, the Privy
Council, which is the court of last resort for appeals from the BVI, affirmed dismissal of Plaintiff's
BVI law claims for restitution based on mistake. *See Fairfield Sentry Ltd. (In Liquidation)* v.
*Migani* [2014] UKPC 9 ("*Migani*") ¶ 23. Starting in 2016, Plaintiffs discontinued all remaining
BVI actions,[3] and began prosecuting the U.S. actions under a new theory that the payment of the
redemptions was not merely mistaken, but the result of bad faith by the Funds' administrator, Citco
Fund Services. (*See* FAC ¶¶ 137–84.)

In a series of decisions issued from August 2018 through December 2020, this
Court dismissed all claims against BJSS and the other defendants in these proceedings for failure
to state a claim, except for claims for constructive trust related to alleged redemption payments
received. *Fairfield I*, 2018 WL 3756343, at *12 (finding "Defendants' consent to the Subscription

---

[2]    (*See* Declaration of William Hare in Support of Motion for Leave to Amend ¶¶ 15, 17,
Adv. Pro No. 10-03635, ECF No. 145 (the "Hare Decl.").)

[3]    (*See* Hare Decl. ¶ 68.) In the BVI courts, Plaintiffs unsuccessfully litigated on a "mistaken"
payment theory, premised on the Fund's alleged miscalculation of their NAV. Plaintiffs lost those
claims at all levels of the BVI court system. *See Migani* ¶ 23 (concluding Plaintiffs' approach is
"an impossible construction"). They also lost on their claim that redeeming investors did not give
good consideration for the redemptions. *See generally id*.

Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions"); *Fairfield II*, 596 B.R. at 316 ("dismissing all of [Plaintiffs'] Common Law Claims and the Contract Claims"); *Fairfield III*, 2020 WL 7345988, at *7 (finding "Plaintiffs' BVI Avoidance Claims . . . are barred by 11 U.S.C. § 561(d)"). Plaintiffs have appealed those decisions to the District Court. *See Fairfield Sentry Ltd. (In Liquidation)* v. *Citibank NA London*, No. 19-cv-03911-VSB (S.D.N.Y.); *Fairfield Sentry Ltd. (In Liquidation), et al.* v. *ABN AMRO Schweiz AG, et al.*, No. 19-cv-04964-VSB (S.D.N.Y.); *Fairfield Sentry Ltd. (In Liquidation), et al.* v. *ABN AMRO Schweiz AG, et al.*, No. 21-cv-04400-VSB (S.D.N.Y.).

      **B.    Allegations about BJSS.**

      Like many of the other Citco Brokerage Customers, BJSS is a Swiss financial institution that is not alleged to have maintained any offices or employees in New York, or conducted any business whatsoever in New York. *See* FAC ¶ 42. In addition, the FAC fails to make any meaningful BJSS-specific allegations—BJSS is mentioned by name only ***three times*** in the FAC:

1.    That "upon information and belief," the Citco Subscribers "paid all or some portion of such Redemption Payments to or for the account of persons or entities, including but not limited to," every defendant, including "Bank Sarasin & CIE" (FAC ¶ 15);

2.    That "some or all of the Redemption Payments made to the Citco Subscribers may have been paid" to "Bank Sarasin & CIE" (FAC ¶ 42); and

3.    "Bank Sarasin & CIE" is a corporate entity organized under the laws of Switzerland" (FAC ¶ 42).

All other allegations against BJSS are made by way of group pleading and none of those allegations tie BJSS to the United States.

### C.    Allegations Regarding the Redemption Payments.

Through this Action, Plaintiffs seek to recover approximately $51,929,665.41 in the aggregate from the Citco Brokerage Customers for redemptions they allegedly made and payments they allegedly received (the "Redemption Payments") outside the United States.[4]  (FAC ¶¶ 8, 17.)  Plaintiffs do not specify the portion of that amount that they are seeking from BJSS. Plaintiffs allege that the Citco Brokerage Customers, through non-U.S. Citco entities, invested outside the United States in the Funds, and that the Funds channeled most of their assets into managed accounts with BLMIS.  (FAC ¶ 2.)

Specifically, Plaintiffs allege that between April 20, 2004, and November 19, 2008, following the receipt of notices of redemption, Sentry and Sigma made Redemption Payments to accounts held in the name of CGC NA (an affiliate of Citco, defined by Plaintiffs as the "Citco Record Subscriber")[5] aggregating $51,929,665.41.  (FAC ¶ 8.)  Plaintiffs further allege that the Citco Subscribers[6] have either retained the Redemption Payments for their own accounts or paid all or some to the accounts of Citco Brokerage Customers.  (FAC ¶¶ 15, 33–104.)

---

[4]    Although the Court must take factual allegations as true for purposes of this motion, it need not credit legal or other unsupported conclusions alleged.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  BJSS reserves all rights to contest any such factual allegations that are false or inaccurate at the appropriate procedural stage of the Action, if necessary.

[5]    According to Plaintiffs' allegations in a related action before this Court, the Citco Record Subscriber and Citco Record Subscribers were foreign entities organized under the laws of either Curaçao or The Netherlands, and registered holders of shares in the Funds, which they purchased by entering into Subscription Agreements with the Funds.  (*See* First Am. Compl. ¶¶ 32–34 & n.1, *Fairfield Sentry Ltd. (In Liquidation) et al.* v. *Citco Global Custody N.V. et al.*, Adv. Pro. No. 19-01122-CGM (Nov. 26, 2019), ECF No. 19 ("*Citco Global Custody* Compl.").)

[6]    Plaintiffs collectively refer to the Citco Record Subscriber and the Citco Banks, defined herein, as the "Citco Subscribers."  (*See* FAC ¶ 8.)  This memorandum hereinafter refers to both Citco Record Subscriber and Citco Record Subscribers, as those terms are defined by Plaintiffs, as "Citco Record Subscribers" for ease of reference.

**D.    Allegations Regarding the Citco Platform.**

Plaintiffs allege that to invest in the Funds, each of the Citco Brokerage Customers,

including BJSS, entered into a B&C Agreement with a Citco Record Subscriber and a Citco Bank.[7]

(FAC ¶ 8; *see also id.* ¶ 106 ("[U]pon information and belief, each of the Defendants entered into

the B&C Agreements with a Citco Bank and the Citco Record Subscriber.").)[8]

Significantly, Plaintiffs affirmatively allege that to receive Redemption Payments,

the Citco Brokerage Customers were *required* to maintain bank accounts with the Citco Banks

outside of the United States, into which all Redemption Payments were deposited:

> It was under the B&C Agreements that the Citco Subscribers
> purchased shares in and made redemptions from the Funds for the
> benefit of Defendants, which are the subject of this action.  Under
> the B&C Agreements, the ***Defendants were required to maintain
> bank accounts at the Citco Banks from which and into which 'all
> moneys received from or for the account of' the Defendants were
> deposited*** (the "B&C Accounts").

(FAC ¶ 106 (emphasis added).)  Plaintiffs do not (because they cannot) allege that the Citco Banks

were located in the United States.[9]  Indeed, in a related proceeding in this Court, Plaintiffs have

alleged that the Citco Banks were located in The Netherlands, Ireland, or Curaçao.  (*See Citco*

---

[7]    Plaintiffs collectively refer to Citco Bank Nederland N.V., Citco Bank Nederland N.V. Dublin Branch, and the Citco Banking Corporation N.V. as the "Citco Banks."

[8]    Plaintiffs filed examples of the B&C Agreements in 2017 as exhibits to the Declaration of David J. Molton in Further Support of Motion for Leave to Amend and in Opposition to Defendants' Motion to Dismiss.  (Adv. Pro. No. 10-03496, ECF No. 1337 ("Molton Decl.").)  In one example, the beneficial owner entered into the B&C Agreement with Citco Banking Corporation N.V. in the Netherlands, as "the Bank," and Citco Global Custody (N.A.) N.V., as "the Custodian."  (*See* Molton Decl. Ex. G.)  In another example, the beneficial owner entered into the B&C Agreement with Citco Bank Nederland N.V. Dublin Branch ("Citco Bank Dublin"), as "the Bank," and Citco Global Custody N.V. as "the Custodian."  (*See* Molton Decl. Ex. H.)

[9]    Pursuant to the example B&C Agreement filed by Plaintiffs, for instance, at least some of Citco Brokerage Customers opened and maintained accounts with Citco Bank Dublin to receive the Redemption Payments.  (*See* Molton Decl. Ex. H.)

*Global Custody* Compl. ¶¶ 35–37.)   Furthermore, Plaintiffs allege that, pursuant to the B&C Agreements, the Citco Banks had the sole authority to effect brokerage transactions on behalf of the Citco Brokerage Customers and deposit Redemption Payments in their non-U.S. accounts at the Citco Banks.[10]   Thus, the FAC itself alleges that all the Redemption Payments at issue in the Action were made by the offshore Citco Banks to offshore accounts and that none were made to or through U.S. banks.

Plaintiffs further allege that each Redemption Payment was made to an account with "Citco Global Custody (NA) NV, Netherlands."   (FAC at Exs. A (Redemption Payments received by Citco Brokerage Customers from Sentry) and B (Redemption Payments from Sigma).)[11]   They do this in charts that list every single Redemption Payment at issue, which identify the date of the Redemption Payment, the amount paid, the number of shares redeemed, and the identity and location of the bank account to which each such payment was made.  *Id*.  A sample of entries from these charts, demonstrating the detail with which Plaintiffs have alleged that each Redemption Payment was received at bank accounts outside of the United States, follows:

---

[10]    Pursuant to Plaintiffs' own allegations, "the Citco Banks were solely responsible for providing brokerage services to the Defendants.  According to the B&C Agreements, these services included . . . 'effecting [] transactions of and/or relating to the purchase and sale of and dealing in Securities in the name and for the account of the Defendants."  (FAC ¶ 108.) Additionally, the "B&C Agreements with the Defendants applied to all subscriptions and redemptions of Shares in the Funds by the Citco Subscribers on behalf of the Defendants, and all Redemption Payments were, upon information and belief, sent by the Citco Banks (upon their receipt from the Funds) to the Defendants' B&C Accounts."  (FAC ¶ 115.)  Further, the "B&C Agreements afforded the Citco Banks and the Citco Record Subscribers the power to . . . 'deposit in the [B&C] Account [at the Citco Banks] all moneys received from or for the account of the [Defendants].'"  (FAC ¶ 118.)

[11]    Plaintiffs do not specify at which of the Citco Banks BJSS (or any of the other Citco Brokerage Customers) received Redemption Payments.  Nor do Plaintiffs identify from which of the Funds BJSS (or the other Citco Brokerage Customers) received Redemption Payments.

| Payment Date | Redemption Payment | No. of Shares | Bank Account to which Redemption Payment Was Made |
|---|---|---|---|
| April 21, 2004 | $325,094.34 | 334.37 | Citco Global Custody (NA) NV, Netherlands |
| April 21, 2004 | $10,937,878.23 | 11249.96 | Citco Global Custody (NA) NV, Netherlands |
| July 26, 2004 | $147,542.37 | 148.21 | Citco Global Custody (NA) NV, Netherlands |

(FAC at Ex. A.)  The column on the far right, entitled "Bank Account to which Redemption Payment Was Made" contains the same information for every Redemption Payment at issue: "Citco Global Custody (NA) NV, **Netherlands**."  (*Id.* (emphasis added).)  In the exhibits to the FAC, that column reads exactly the same for every Redemption Payment that the Citco Brokerage Customers (as an undifferentiated group that includes BJSS) allegedly received.  No U.S. bank accounts are listed.

## ARGUMENT

Plaintiffs bear the burden of establishing that this Court has personal jurisdiction over BJSS.  *See DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  Here, there is no allegation in the FAC that BJSS has "continuous and systematic" connections with New York to be subject to general jurisdiction in this District.  *Daimler AG* v. *Bauman*, 571 U.S. 117, 119 (2014) ("[T]he proper inquiry, this Court has explained, is whether a foreign corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011))); *Gucci Am., Inc.* v. *Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) ("[A] corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business.").  Rather,

8

Plaintiffs rely exclusively on some specific-jurisdiction theory based on New York's long-arm statute.

To establish specific jurisdiction under New York's long-arm statute, Plaintiffs must satisfy two exacting pleading requirements: (1) BJSS must have transacted business within the state; and (2) the claims asserted must arise from that business activity. *See Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *Zim Integrated Shipping Servs. Ltd.* v. *Bellwether Design Techs. LLC*, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.). Plaintiffs also must demonstrate that this Court's exercise of personal jurisdiction over BJSS "would comport with due process." *Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *3. As Judge Bernstein held in the Madoff Trustee litigation with respect to a similar jurisdictional issue, each transaction involving Redemption Payments is a separate claim. *See Picard* v. *BNP Paribas S.A. (In re Bernard L. Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018). Accordingly, Plaintiffs must establish the Court's jurisdiction over BJSS for ***each individual Redemption Payment***, just as the Trustee is required to do. *See id.* ("Each transfer is a separate claim, and the Trustee must establish the court's jurisdiction with respect to each claim asserted.").

The FAC appears to advance two bases for specific jurisdiction against the Citco Brokerage Customers as a collective: (i) that all of the Citco Brokerage Customers should be deemed to have received redemption payments in the U.S. (FAC ¶ 133); or (ii) that because the Funds invested with BLMIS in the U.S., all of the Funds' investors, including those who invested through the Citco Subscribers like BJSS and the other Citco Brokerage Customers, must have purposely availed themselves of the laws of the U.S. and New York (FAC ¶¶ 20). Both theories fail as a matter of law and are contradicted by the factual allegations in the FAC.

9

A.   **Plaintiffs' Allegations About Redemption Payments Do Not Establish Personal Jurisdiction.**

1.   The FAC Offers No Well-Pled Allegations that Any Part of the Redemption Process Occurred in the United States.

Plaintiffs first contend in the FAC "some or all of the Redemption Payments were received at, upon information and belief, designated United States-based bank accounts" without specifying any such amounts received by BJSS.  (FAC ¶ 133.)  This assertion does not plead any basis for personal jurisdiction as to BJSS.

*First*, the FAC offers nothing in support of its self-serving conclusion about the use of U.S. bank accounts.  The Second Circuit has held that, without supporting factual allegations, mere assertions made "upon information and belief" in a complaint are insufficient to plead a claim as a matter of law.  *See Pyskaty* v. *Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (holding allegations based "upon information and belief" were entirely speculative where the complaint contained no allegations of fact which, if true, would have supported such allegations); *Arista Records, LLC* v. *Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (explaining that a "conclusory allegation on information and belief" is insufficient to make a claim plausible where the complaint's factual allegations do not raise a right to relief above the speculative level); *Rose* v. *Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (finding that a complaint with no specific factual allegations to enable the court to evaluate information and belief assertions failed to state a claim).  Indeed, Plaintiffs' unsupported allegation that some of the Redemption Payments may have been received in U.S.-based accounts was not added until Plaintiffs filed their proposed Fourth Amended Complaints in 2017, nearly a decade into these proceedings.[12]  The first

---

[12]   (*See* Adv. Pro. No. 10-03496, ECF No. 1337, Exs. E and F (proposed Fourth Amended Complaints, filed March 31, 2017).)

four iterations of the complaints consistently failed to allege that any U.S. bank accounts were used.[13]

   *Second*, the factual allegations in the FAC flatly ***contradict*** Plaintiffs' isolated assertion that the Redemption Payments were supposedly paid to U.S. bank accounts. The FAC alleges that all ***Redemption Payments were paid to accounts outside the United States*** and the terms of the B&C Agreements that all of the Citco Brokerage Customers allegedly entered into required as much. (FAC ¶¶ 106–07.) Thus, Plaintiffs' own allegations defeat any assertion of personal jurisdiction over BJSS with respect to those transactions. *See Neewra, Inc.* v. *Manakh Al Khaleej Gen. Trading & Contracting Co.*, 2004 WL 1620874, at *5 (S.D.N.Y. July 20, 2004) (holding non-U.S. bank did not engage in any jurisdictionally relevant activities in New York where the non-U.S. bank did not use its U.S. correspondent account to effect any transactions giving rise to plaintiff's claims); *Homeschool Buyers Club, Inc.* v. *Brave Writer, LLC*, 2020 WL 1166053, at *5 (Mar. 11, 2020) (Broderick, J.) (holding plaintiff failed to make a *prima facie* showing with respect to section 302(a)(1) because plaintiff did not allege "the existence of a single act directed at New York out of which these claims arise"); *L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (holding allegations that are "contradicted by more specific allegations or documentary evidence—from the Complaint and the exhibits attached thereto" need not be accepted); *Hirsch* v. *Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint.").

---

[13]    (*See* Adv. Pro. No. 10-03635, ECF Nos. 8 (Complaint, filed September 21, 2010), 67 (First Amended Complaint, filed January 10, 2011), 86 (Second Amended Complaint, filed May 3, 2011), and 121 (Third Amended Complaint, filed July 20, 2012).)

2. Plaintiffs Have Conceded that Redemption Payments were Paid to Non-U.S. Accounts.

Plaintiffs recently confirmed that the Redemption Payments were entirely outside of the United States in their appellate brief to the District Court challenging certain of Judge Bernstein's rulings in *Fairfield I*, *Fairfield II* and *Fairfield III*. Plaintiffs affirmatively argued to the District Court that all Redemption Payments to Citco Brokerage Customers (including BJSS) occurred outside the United States:

> **The redemption transfers at issue here were purely foreign**. The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). . . . [*E*]*very relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States*.

Plaintiffs' Appeal at 24 (emphasis added). Plaintiffs are estopped from arguing otherwise now. *See Intellivision* v. *Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (explaining that "the purpose of the doctrine [of judicial estoppel] is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment").

**B.    The Funds' Investments in BLMIS in New York Do Not Establish Jurisdiction over BJSS.**

Plaintiffs' alternative theory for jurisdiction fares no better. The FAC simply asserts without factual support that all of the Citco Brokerage Customers must have "purposely availed themselves of the laws of the United States and the State of New York" by investing in the Funds, because those customers must have "know[n] and intend[ed] that the Funds would invest substantially all of that money in New York-based BLMIS." (FAC ¶ 20.) In addition to there being no well-pled factual allegation to support whether BJSS "knew" or "intended" funds to end up in BLMIS accounts in New York, Plaintiffs' theory is jurisdictionally irrelevant for two reasons.

12

*First*, the non-party-specific allegation that all of the Citco Brokerage Customers somehow knew that the Funds would comingle money from multiple investors and that some of that money would ultimately be invested in BLMIS accounts in New York is irrelevant as to whether there is jurisdiction over BJSS. As the Supreme Court has held, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 417 (1984); *SPV Osus Ltd.* v. *UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."). Thus, the Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Walden* v. *Fiore*, 571 U.S. 277, 284 (2014).

In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful seizure of money in a Georgia airport. *Id*. at 288. The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over the police officer in Nevada. *Id*. at 289. As the Supreme Court explained, the foreseeability of a plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over the defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id*. Instead, "[t]he substantial connection . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*." *Asahi Metal Indus. Co., Ltd.* v. *Superior Court*, 480 U.S. 102, 112 (1987). Here, there is

13

no allegation BJSS took any action directed at New York (or the U.S.) in allegedly seeking or receiving redemption payments from the Citco Subscribers.

*Second*, even if the Funds' decision to invest with BLMIS could be attributed to BJSS (and it cannot be), Plaintiffs' claims are not predicated on whether the redemptions they seek to *recover* were ever placed with or controlled by BLMIS in New York. Indeed, Plaintiffs' claims are not premised on any investor's decision to *invest* in the Funds. *See Fairfield I*, 2018 WL 3756343, at *4–12 (finding subscription agreements irrelevant to claim because not based on subscription).[14]  Rather, Plaintiffs' claims for constructive trust relate to and arise out of the calculation of the NAV by the Funds' Dutch administrator, Citco Fund Services, and the foreign Funds' subsequent alleged disbursement of the Redemption Payments abroad on the basis of those calculations from their Irish bank accounts to bank accounts in the Netherlands. (*See* FAC ¶¶ 137, 162, 196.)  The Citco Subscribers, allegedly on behalf of BJSS (and the other Citco Brokerage Customers), made their requests for the Redemption Payments by tendering shares to Citco Fund Services in the Netherlands, *see Migani* ¶¶ 14–16; and, in turn, the Redemption Payments were funded from the Funds' bank accounts held at Citco Bank in Ireland, *see Fairfield III*, 2020 WL 7345988, at *7 (finding all transfers were paid by Citco Bank).  As Plaintiffs themselves maintain, the transactions at issue were "purely foreign."  Plaintiffs' Appeal at 24.

Moreover, Plaintiffs do not allege that BJSS contracted or invested directly with BLMIS, let alone did so with respect to the Redemption Payments Plaintiffs seek to recover. Rather, Plaintiffs allege that in order to invest in the Funds (***not*** BLMIS), BJSS allegedly

---

[14]  The subscription agreements are also irrelevant, and cannot support jurisdiction, because Citco Brokerage Customers did not enter into subscription agreements with the Funds.  Rather, the Liquidators allege only that Citco Brokerage Customers entered into B&C Agreements with the Citco entities; the Citco entities, who are not parties to these actions, entered into subscription agreements with the Funds.  (*See* FAC ¶ 16.)

contracted with the Citco Subscribers.  (*See* FAC ¶¶ 8, 106.)  Furthermore, while the FAC alleges

that some of the money invested in the Funds was transferred to BLMIS (FAC ¶ 127), and some

of the Redemption Payments may have been funded by transfers from BLMIS (FAC ¶ 199), that

was not universally or even typically the case.  As Plaintiffs allege, the Funds netted subscriptions

against redemptions, and accordingly, often funded Redemption Payments with money that came

from other subscriptions.  Thus, that money was never placed with BLMIS in New York at all.

(*See* FAC ¶ 130 (alleging that subscription money was used to pay redemptions as a "shortcut").

Accordingly, the FAC fails to allege any relevant contacts by BJSS with New York.

> ### C.      The Exercise of Personal Jurisdiction over BJSS Would Not Comport with Due Process.

The Court's exercise of jurisdiction must be reasonable under the circumstances for

it to be consistent with due process.  *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286,

297 (1980) ("The Due Process Clause … gives a degree of predictability to the legal system that

allows potential defendants to structure their primary conduct with some minimum assurances as

to where that conduct will and will not render them liable to suit.").

As demonstrated above, BJSS had no contacts whatsoever with the United States

related to Plaintiffs' remaining claim to impose a constructive trust on the Redemption Payments

made to Citco Brokerage Customers.  Accordingly, the exercise of personal jurisdiction over BJSS

by definition would not comport with due process.  *See Walden*, 571 U.S. at 286  ("Due Process

requires that a defendant be haled into court in a forum state based on his own affiliation with the

State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with

other persons affiliated with the State.") (quoting *Burger King* v. *Rudzewicz*, 471 U.S. 462, 475

(1985)).

## CONCLUSION

Because the FAC fails to provide "any basis to demonstrate that [this Court] would have . . .

personal jurisdiction" over BJSS, the Court should dismiss the remaining claim against BJSS in

the Action. *See Spiegel* v. *Schulman*, 604 F.3d 72, 78 (2d Cir. 2010).[15]

Dated: October 29, 2021
       New York, New York

                          Respectfully submitted,

                          SULLIVAN & CROMWELL LLP

                          */s/ Andrew J. Finn*
                          Jeffrey T. Scott
                          Andrew J. Finn
                          125 Broad Street
                          New York, New York  10004
                          Telephone:  (212) 558-4000
                          Facsimile:  (212) 558-3588
                          E-mail:  scottj@sullcrom.com
                          E-mail:  finna@sullcrom.com

                          *Counsel for Bank J. Safra Sarasin AG, f/k/a Bank
                          Sarasin & Cie*

---

[15]    In addition, Plaintiffs should not be granted any jurisdictional discovery of BJSS.  Courts in this "Circuit routinely reject requests for jurisdictional discovery where," as here, "a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction." *Sonterra Cap. Master Fund Ltd.* v. *Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 599 (S.D.N.Y. 2017); *see also Xiu Feng Li* v. *Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) (affirming denial of jurisdictional discovery where plaintiff failed to establish a *prima facie* case of personal jurisdiction); *Best Van Lines, Inc.*, 490 F.3d at 241 (same); *Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *6 (Judge Broderick denying jurisdictional discovery where plaintiff's allegations, even if taken as true, were not sufficient to establish a *prima facie* case of personal jurisdiction over defendant); *Weisblum* v. *Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 290 (S.D.N.Y. 2015) ("[A] plaintiff may not make conclusory non-fact-specific jurisdictional allegations against foreign defendants and thus obtain extensive discovery on that issue.").