UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>               Debtors in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>(Jointly Administered) |
| FAIRFIELD SENTRY LIMITED (IN LIQUIDATION), et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>               Defendants. | Adv. Pro. No. 10-3496 (CGM)<br><br>(Administratively Consolidated) |
| FAIRFIELD SENTRY LIMITED (IN LIQUIDATION), and FAIRFIELD SIGMA LIMITED (IN LIQUIDATION), acting by and through the Foreign Representatives thereof, and KENNETH KRYS and CHARLOTTE CAULFIELD, solely in their capacities as Foreign Representatives and Liquidators thereof,<br><br>               Plaintiffs,<br><br>   -against-<br><br>ABN AMRO SCHWEIZ AG a/k/a ABN AMRO (SWITZERLAND) AG, et al.,<br><br>               Defendants. | Adv. Pro. No. 10-3635 (CGM) |

# DEFENDANT UBS AG'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Dated: October 29, 2021                    *Attorneys for Defendant UBS AG*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

FACTUAL BACKGROUND ................................................................ 4

    A.    The Liquidators' Proceedings ..................................... 4

    B.    Allegations Regarding the Redemption Payments ..................... 6

    C.    Allegations Regarding the Citco Platform ................. 7

    D.    Specific Allegations About UBS ................. 9

ARGUMENT ................................................................ 10

  I. The Redemption Accounts Do Not Establish Personal Jurisdiction ........... 13

    A.    The Liquidators' Own Allegations Confirm that the  Redemption Process Did Not Occur in the United States ............. 13

    B.    The Liquidators Admit that the Redemption  Payments were Paid to Non-U.S. Accounts ............. 15

  II. The Alleged Foreseeability of the Funds' Investment in  BLMIS Does Not Establish Personal Jurisdiction over UBS ............. 16

  III.    The Exercise of Personal Jurisdiction over  UBS Would Not Comport with Due Process ............. 19

CONCLUSION ................................................................ 22

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arista Records, LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010) .................................................................................. 14

*Asahi Metal Indus. Co. v. Superior Court,*
    480 U.S. 102 (1987) ................................................................................... 18, 20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .......................................................................................... 6

*Benton v. Cameco Corp.,*
    375 F.3d 1070 (10th Cir. 2004) ........................................................................ 21

*Best Van Lines, Inc. v. Walker,*
    490 F.3d 239 (2d Cir. 2007) ............................................................................. 11

*Burger King v. Rudzewicz,*
    471 U.S. 462 (1985) ......................................................................................... 19

*In re CIL Limited,*
    582 B.R. 46 (Bankr. S.D.N.Y. 2018) ................................................................ 20

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) ............................................................................ 10, 18, 19

*DiStefano v. Carozzi N. Am., Inc.,*
    286 F.3d 81 (2d Cir. 2001) ............................................................................... 10

*In re Fairfield Sentry Ltd.,*
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .................................. 2, 5, 17

*In re Fairfield Sentry Ltd.,*
    2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ....................................... 2, 17

*In re Fairfield Sentry Ltd.,*
    458 B.R. 665 (S.D.N.Y. 2011) .......................................................................... 20

*In re Fairfield Sentry Ltd.,*
    596 B.R. 275 (Bankr. S.D.N.Y. 2018) ................................................................. 2

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.,*
    141 S. Ct. 1017 (2021) ..................................................................................... 21

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) ......................................................................................... 16

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995)................................................................14

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,
2020 WL 1166053 ................................................................13

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011)................................................................14

*Manko Window Systems, Inc. v. Prestik*,
2017 WL 4355580 (D. Kan. Sept. 29, 2017) ................................................21

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*,
2004 WL 1620874 (S.D.N.Y. July 20, 2004) ................................................13

*Picard v. BNP Paribas S.A.*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ................................................3, 11

*Porina v. Marward Shipping Co.*,
2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006)................................................20

*Pyskaty v. Wide World of Cars, LLC*,
856 F.3d 216 (2d Cir. 2017)................................................................13

*Rocky Mountain Chocolate Factory v. Arellano*,
2017 WL 4697503 (D. Colo. Oct. 19, 2017) ................................................21

*Rose v. Goldman, Sachs & Co.*,
163 F. Supp. 2d 238 (S.D.N.Y. 2001)................................................14

*SPV OSUS Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018)................................................................10, 17

*Walden v. Fiore*,
571 U.S. 277 (2014)................................................................12, 18

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)................................................................19

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,
2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ................................................11

Defendant UBS AG (hereinafter "UBS," incorrectly sued as "UBS AG New York" and "UBS AG Zurich"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the Fifth Amended Complaint (the "FAC"; ECF Doc. 620) filed by Plaintiffs as the liquidators (the "Liquidators") for Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma," and together with Sentry, "Plaintiffs," or the "Funds") in Adversary Proceeding No. 10-3635.[1] For the same reasons, UBS also seeks dismissal of the Fifth Amended Complaint filed by Plaintiffs, as the liquidators for Sentry, Sigma, and Fairfield Lambda Limited ("Lambda"),[2] in *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.*, Adversary Proceeding No. 10-3636, which is based on allegations that are substantively the same as the allegations of the FAC in this case—but, pursuant to guidance from the Court's Chambers staff, UBS is filing separate papers in support of its motion to dismiss Adversary Proceeding No. 10-3636. In this memorandum, the lawsuits filed by the Liquidators under Adversary Proceeding Nos. 10-3635 and 10-3636 are referred to as the "Citco Brokerage Proceedings" and the operative pleadings in those actions are referred to as the "Citco Brokerage Complaints."

## PRELIMINARY STATEMENT

The grounds requiring dismissal here are particular to UBS and the other defendants in the Citco Brokerage Proceedings (together with UBS, "Citco's Brokerage Customers") because there are no plausible allegations whatsoever that a single redemption payment to a single

---

[1] Pursuant to the Court's direction, UBS is moving now solely on the basis of lack of personal jurisdiction. UBS reserves its right to seek dismissal for failure to state a claim upon which relief can be granted.

[2] Sentry, Sigma, and Lambda are referred to collectively as the "Fairfield Funds." As alleged by the Liquidators, Sentry maintained accounts with "Bernard L. Madoff [Investment] Securities LLC" ("BLMIS") whereas Sigma and Lambda were indirect BLMIS feeder funds established for foreign currency investment through the purchase of shares of Sentry. FAC ¶ 125. Despite this distinction, the Liquidators refer to Sentry, Sigma, and Lambda as the "Funds" throughout the Citco Brokerage Complaints and only occasionally acknowledge that Sigma and Lambda were indirect feeder funds for BLMIS.

defendant was made to U.S. accounts or went through U.S. correspondent accounts. The Liquidators have not alleged, let alone established, personal jurisdiction over UBS or any of the other defendants comprising Citco's Brokerage Customers. Indeed, the only allegations in the Citco Brokerage Complaints unique to the individual Citco's Brokerage Customers are the allegations alleging their places of incorporation and registered addresses. *See, e.g.*, FAC ¶¶ 33-104. Thus, allegations specific to UBS are propounded in just two paragraphs of the FAC. *See id.* ¶¶ 100-01. Those allegations incorrectly identify "UBS AG Zurich" and "UBS AG New York" as two separate entities—and claim, falsely, that "UBS AG New York" is a "corporate entity organized under the laws of New York," *id.* ¶ 100—when, in fact, UBS AG is a single entity "constituted as an Aktiengesellschaft organized under Swiss company law, with registered offices in Zurich and Basel, Switzerland" and its "principal place of business in Switzerland," that "maintains licensed branches in the United States, including in . . . New York," Declaration of Raimund Roehrich ¶¶ 3-7 (ECF Doc. 239) ("Roehrich Decl."). *All other allegations* against Citco's Brokerage Customers, including UBS, are made by way of group pleading and none of those allegations ties Citco's Brokerage Customers or their alleged conduct to the United States.[3]

This Court already dismissed all but one of the claims asserted against UBS and the other Citco's Brokerage Customers for failure to state a claim. *See In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"); *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 316 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"); *In re Fairfield Sentry Ltd.*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"). And the sole remaining claim against UBS and those other defendants—for the imposition of a "constructive trust" under

---

[3] The other Citco's Brokerage Customers will be filing separate and independent motions to seeking dismissal for lack of personal jurisdiction on essentially the same legal grounds, given that the propounded as against those other defendants are virtually identical to the allegations propounded as against UBS.

British Virgin Islands ("BVI") law on redemption payments allegedly paid to them, *see* FAC ¶ 198—must be dismissed for lack of personal jurisdiction.

To proceed on their remaining claim, the Liquidators first must establish this Court's personal jurisdiction over each defendant with respect to each redemption payment that the Liquidators seek to reverse. *See Picard v. BNP Paribas S.A.*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) (Bernstein, J.). But the Citco Brokerage Complaints are devoid of any allegations that would support an exercise of jurisdiction with respect to any redemption. In certain other cases before this Court, the Liquidators have argued that defendants are subject to jurisdiction because redemptions at issue were paid to U.S. correspondent accounts. Although that is wrong for reasons explained in other defendants' briefs, the Court need not even consider this argument in the Citco Brokerage Proceedings because the Liquidators' own allegations demonstrate that all defendants in the Citco Brokerage Complaints, including UBS, received all redemption payments in accounts *outside the United States*. Indeed, the Liquidators specifically and separately allege that every single redemption payment at issue in the Citco Brokerage Complaints was paid to an account in the Netherlands, not the United States.[4]

In fact, the Liquidators recently represented to the District Court that "every relevant component of the [redemption] transactions at issue here occurred *outside the territorial jurisdiction of the United States*." *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-cv-03911-VSB, Dkt. No. 440 at 24 (S.D.N.Y. July 21, 2021) ("Liquidators' Appeal") (emphasis added). And even if the receipt of redemption payments in U.S. accounts were sufficient to subject a party to this Court's jurisdiction—and it is not—that is not what the

---

[4] The Liquidators include charts in the Citco Brokerage Complaints that provide information on every redemption at issue. *See, e.g.*, FAC at Exs. A, B. Those charts include a column entitled "Bank Account to which Redemption Payment Was Made," which is filled out in the same way for every redemption: "Citco Global Custody (NA) NV, Netherlands." *Id.*

Liquidators have pleaded as to UBS (and the other Citco's Brokerage Customers).  For this reason alone, Plaintiffs' claims against UBS (and the other Citco's Brokerage Customers) should be dismissed for lack of personal jurisdiction.

Because the Liquidators fail to allege that UBS (or other Citco's Brokerage Customers) had *any jurisdictionally relevant contacts* with the United States, the exercise of jurisdiction over UBS would also violate due process.  The Court should dismiss the Liquidators' sole remaining claim as against UBS (and the other Citco's Brokerage Customers) on that basis as well.

## FACTUAL BACKGROUND[5]

### A.    The Liquidators' Proceedings

These cases are ancillary to the foreign liquidation of the Funds in the BVI.  Between October 2009 and March 2010, the Liquidators commenced actions in the BVI against several of the Funds' alleged investors seeking restitution, on the theory that the Funds mistakenly made redemption payments prior to and at the time of BLMIS's collapse.[6]  Since then, the Liquidators have brought more than 300 actions in the United States against partially overlapping defendants with overlapping theories of liability.  The New York actions were stayed pending resolution of the BVI actions.  In 2014, the Privy Council, which is the court of last resort for appeals from the BVI, affirmed dismissal of the Liquidators' BVI law claims for restitution based on mistake. Starting in 2016, the Liquidators discontinued all remaining BVI actions, and began prosecuting

---

[5]  Except as otherwise stated, the factual recitation set forth here is drawn from the allegations of the FAC.  UBS does not concede the accuracy of any such allegations and hereby reserves all of its rights to contest, at the appropriate time, any factual matter pleaded in the FAC.

[6]  *See* Declaration of William Hare in Support of Motion for Leave to Amend ¶ 15 (Adv. Pro No. 10-03635 Dkt. 145; Adv. Pro. No. 10-03636 Dkt. 164) (the "Hare Decl.").

the New York actions under a new theory that the payment of the redemptions was not merely

mistaken, but the result of bad faith by the Funds' administrator, Citco Fund Services.[7]

As the Liquidators have acknowledged, *see, e.g.*, Liquidators' Appeal at 24, every

relevant aspect of the Liquidators' constructive trust claim brought under BVI law is foreign:

- UBS (along with the other Citco's Brokerage Customers) is a foreign financial institution with its principal places of business and place of incorporation outside the United States.  *See* FAC ¶ 101; Roehrich Decl. ¶¶ 3-7 (ECF Doc. 239).  It is not alleged to have conducted any business in the United States relating to any of the redemption payments the Liquidators seek to recover.

- The Funds are BVI hedge funds that are now in liquidation in their home jurisdiction of the BVI.  *See* FAC ¶¶ 26-28.

- As a pre-condition to investing in the Funds, UBS (and the other Citco's Brokerage Customers) was required to enter into Brokerage and Custody Agreements ("B&C Agreements") governed by the laws of the Netherlands with non-U.S. entities associated with Citco Group Limited ("Citco").  *See* FAC ¶ 8.

- Pursuant to the B&C Agreements, UBS (and the other Citco's Brokerage Customers) is alleged to have received redemption payments that were sent by the foreign Citco entities into bank accounts in the Netherlands or other accounts outside the United States.  *See* FAC ¶ 106 and Exs. A, B.

This foreign claim was filed in this Court due to a mistake of law by the Liquidators.  As

this Court found, the Liquidators incorrectly construed the subscription agreements for the

purchase of shares in the Funds as containing a New York forum selection clause for their claim

against Citco's Brokerage Customers.  This Court rejected that theory because the Liquidators'

claim is solely based on redemptions and does not arise out of the subscription agreements.

*Fairfield I* , 2018 WL 3756343, at *11 (adhering to the Privy Council's holding "that the

---

[7]   *See* Hare Decl. ¶ 68.  In the BVI courts, the Liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the Fund's alleged miscalculation of their NAV.  The Liquidators lost those claims at all levels of the BVI court system.  *See* <u>*Fairfield Sentry Ltd. (In Liquidation) v. Migani,* [2014] UKPC 9 (April 19, 2014)</u> ("*Migani*") at ¶ 23 (concluding the Liquidators' approach is "an impossible construction").  They also lost on their claim that redeeming investors did not give good consideration for the redemptions.  *See id.*

Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").[8]

The subscription agreements are also irrelevant, and cannot support jurisdiction, because Citco's

Brokerage Customers did not enter into subscription agreements with the Funds.  Rather, the

Liquidators allege only that Citco's Brokerage Customers entered into B&C Agreements with

the Citco entities; the Citco entities, who are not parties to these actions, entered into

subscription agreements with the Funds.  *See* FAC ¶ 16.  The Liquidators are now grasping at

straws to try to justify maintaining these litigations against UBS in New York, a forum with no

connection to the redemption transactions at issue.[9]

### B.    Allegations Regarding the Redemption Payments

In the two Citco Brokerage Proceedings, the Liquidators seek to recover payments

totaling approximately $1.76 billion, in the aggregate, from UBS and the other Citco's Brokerage

Customers for redemptions allegedly received (the "Redemption Payments") outside the United

States.[10]  Although the dozens of defendants named in this suit are not jointly and severally liable

for any of the amounts sought to be recovered, the Liquidators do not specify the amount of

damages they are seeking from UBS or any other specific defendant in this action.  FAC ¶¶ 8,

17.  Rather, the Liquidators merely allege collectively that Citco's Brokerage Customers

"received Redemption Payments . . . from Sentry and Sigma in respect of shares tendered for

redemption."  FAC ¶ 132.

---

[8]  This ruling is the subject of a pending appeal to the District Court.

[9]  *See Fairfield Sentry Ltd. (In Liquidation) et al. v. Theodoor Amsterdam et al.*, July 27, 2016 Hr'g Tr. at 11-14 (Dkt. No. 906) ("THE COURT: It just sounds like you litigated these issues or you should litigate them in the BVI.  I don't understand why they're here. . . . THE COURT: I understand that.  But at some point you commenced these cases here . . . . And the question is why you didn't commence them in the BVI?").

[10]  For purposes of this motion only, UBS takes all of the factual allegations—but not legal or boilerplate conclusions couched as factual allegations—in the Citco Brokerage Complaints as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  UBS reserves all rights to contest any such factual allegations that are false or inaccurate at the appropriate procedural stage of this proceeding.

In Adversary Proceeding No. 10-03635, the Liquidators allege that between April 20, 2004, and November 19, 2008, Sentry and Sigma made Redemption Payments to accounts held in the name of CGC NA (an affiliate of Citco, defined by the Liquidators as the "Citco Record Subscriber")[11] totaling $51,929,665.41. FAC ¶ 8. The Liquidators further allege that the Citco Subscribers[12] have either retained the Redemption Payments for their own accounts or paid all or some to the accounts of Citco's Brokerage Customers. FAC ¶¶ 15, 33-104.

### C.    Allegations Regarding the Citco Platform

The Liquidators allege that to invest in the Funds, each of Citco's Brokerage Customers, including UBS, entered into a B&C Agreement with a Citco Record Subscriber and a Citco Bank.[13] FAC ¶ 8; *see also id.* ¶ 106 ("each of the Defendants entered into the B&C Agreements with a Citco Bank and the Citco Record Subscriber.").[14] Significantly, the Liquidators affirmatively and explicitly allege that, in order to receive Redemption Payments, UBS and the other Citco's Brokerage Customers were *required* to maintain bank accounts with the Citco Banks outside of the United States, into which all Redemption Payments were deposited:

---

[11]  According to the Liquidators' allegations in a related action in this Court, the Citco Record Subscriber and Citco Record Subscribers were foreign entities organized under the laws of either Curaçao or The Netherlands, and registered holders of shares in the Funds, which they purchased by entering into Subscription Agreements with the Funds. *See* Compl. ¶¶ 32-34 & n.1, *Fairfield Sentry Limited (In Liquidation) et al. v. Citco Global Custody N.V. et al.*, Adv. Pro. No. 19-01122, Dkt. No. 19 (Nov. 26, 2019) ("*Citco Global Custody Compl.*").

[12]  The Liquidators collectively refer to Citco Record Subscriber, the Citco Record Subscribers, and the Citco Banks, defined herein, as the "Citco Subscribers." *See* FAC ¶ 8. This memorandum hereinafter refers to both Citco Record Subscriber and Citco Record Subscribers, as those terms are defined by the Liquidators, as "Citco Record Subscribers" for ease of reference.

[13]  The Liquidators collectively refer to Citco Bank Nederland N.V., Citco Bank Nederland N.V. Dublin Branch, and the Citco Banking Corporation N.V. as the "Citco Banks."

[14]  The Liquidators filed examples of the B&C Agreements in 2017 as exhibits to the Declaration of David J. Molton in Further Support of Motion for Leave to Amend and in Opposition to Defendants' Motion to Dismiss. Adv. Pro. No. 10-03496, Dkt. No. 1337 ("Molton Decl."). In one example, the beneficial owner entered into the B&C Agreement with Citco Banking Corporation N.V. in the Netherlands, as "the Bank," and Citco Global Custody (N.A.) N.V., as "the Custodian." *See* Molton Decl. Ex. G. In another example, the beneficial owner entered into the B&C Agreement with Citco Bank Nederland N.V. Dublin Branch ("Citco Bank Dublin"), as "the Bank," and Citco Global Custody N.V. as "the Custodian." *See* Molton Decl. Ex. H.

> It was under the B&C Agreements that the Citco Subscribers purchased shares in and made redemptions from the Funds for the benefit of Defendants, which are the subject of this action. Under the B&C Agreements, the *Defendants were required to maintain bank accounts at the Citco Banks from which and into which 'all moneys received from or for the account of' the Defendants were deposited* (the "B&C Accounts").

FAC ¶ 106 (emphasis added). The Liquidators do not (and cannot) allege that the Citco Banks were located in the United States.[15] Indeed, in a related proceeding in this Court, the Liquidators have alleged that the Citco Banks were located in the Netherlands, Ireland, or Curacao. *See Citco Global Custody* Compl. ¶¶ 35-37, 39. Furthermore, the Liquidators allege that, pursuant to the B&C Agreements, the Citco Banks had the sole authority to effect brokerage transactions on behalf of Citco's Brokerage Customers and deposit Redemption Payments in their non-U.S. accounts at the Citco Banks.[16] Thus, the Citco Brokerage Complaints themselves allege that all the Redemption Payments at issue in the Citco Brokerage Proceedings were made by the offshore Citco Banks to offshore accounts and that none was made to or through U.S. banks.

The Liquidators specifically allege that each Redemption Payment was made to an account with "Citco Global Custody (NA) NV, Netherlands." FAC Ex. A (Redemption Payments received by Citco's Brokerage Customers from Sentry), Ex. B (Redemption Payments from Sigma).[17] They do this in charts that list every single Redemption Payment at issue, which

---

[15] Pursuant to the Liquidators' sample B&C Agreement, for example, at least some of Citco's Brokerage Customers maintained accounts with Citco Bank Dublin to receive Redemption Payments. Molton Decl. Ex. H.

[16] Pursuant to the Liquidators' own allegations, "the Citco Banks were solely responsible for providing brokerage services to the Defendants. According to the B&C Agreements, these services included … 'effecting [] transactions of and/or relating to the purchase and sale of and dealing in Securities in the name and for the account of the Defendants." FAC ¶ 108. Additionally, the "B&C Agreements with the Defendants applied to all subscriptions and redemptions of Shares in the Funds by the Citco Subscribers on behalf of the Defendants, and all Redemption Payments were, upon information and belief, sent by the Citco Banks (upon their receipt from the Funds) to the Defendants' B&C Accounts." *Id.* ¶ 115. Further, the "B&C Agreements afforded the Citco Banks and the Citco Record Subscribers the power to . . . 'deposit in the [B&C] Account [at the Citco Banks] all moneys received from or for the account of the [Defendants].'" *Id.* ¶ 118.

[17] The Liquidators do not specify at which of the Citco Banks UBS (or any of the other Citco's Brokerage Customers) received Redemption Payments. Nor do the Liquidators identify from which of the Funds UBS (or the other Citco's Brokerage Customers) received Redemption Payments.

8

identify the date of the Redemption Payment, the amount paid, the number of shares redeemed,

and the identity and location of the bank account to which each such payment was made. *Id.*

Here is a sample of entries from these charts, showing the detail with which the Liquidators have

alleged that each Redemption Payment was received at an account outside of the United States:

| Payment Date | Redemption Payment | No. of Shares | Bank Account to Which Redemption Payment Was Made |
|---|---|---|---|
| April 21, 2004 | $325,094.34 | 334.37 | Citco Global Custody (NA) NV, Netherlands |
| April 21, 2004 | $10,937,878.23 | 11249.96 | Citco Global Custody (NA) NV, Netherlands |
| July 16, 2004 | $147.542.37 | 148.21 | Citco Global Custody (NA) NV, Netherlands |

FAC Ex. A. The column on the far right, entitled "Bank Account to which Redemption Payment

Was Made," contains the same information for every Redemption Payment at issue:  "Citco

Global Custody (NA) NV, *Netherlands*." *Id*. (emphasis added).  In the exhibits to both of the

Citco Brokerage Complaints, that column reads exactly the same for every Redemption Payment

that any of Citco's Brokerage Customers (as an undifferentiated group that includes UBS)

allegedly received.

### D.   Specific Allegations About UBS

The Liquidators fail to make any meaningful UBS-specific allegations.  Indeed, UBS is

mentioned by name only in three paragraphs of the FAC.  *First*, in a blanket allegation that

references every named defendant, the Liquidators allege that, "upon information and belief," the

Citco Subscribers "paid all or some portion of such Redemption Payments to or for the account

of persons or entities, including . . . UBS AG New York" and "UBS AG Zurich."  FAC ¶ 15.

*Second*, the Liquidators allege that "some or all of the Redemption Payments made to the Citco

Subscribers may have been paid to an account holder or holders associated with . . . UBS AG

New York" or "UBS AG Zurich."  FAC ¶¶ 100-01.  *Third*, the Liquidators allege, incorrectly,

that "[u]pon information and belief, UBS AG New York is a corporate entity organized under the

laws of New York" and "UBS AG Zurich is a corporate entity organized under the laws of

Switzerland." *Id.* As explained previously, the Liquidators' references to "UBS AG New York"

and "UBS AG Zurich" in reality merely describe different branches or offices of a single legal

entity, UBS AG, which is an Aktiengesellschaft organized under Swiss law that has its principal

place of business in Switzerland. Roehrich Decl. ¶¶ 3-7.[18]

The Liquidators plainly make no allegations specifically about UBS that could possibly

support an exercise of personal jurisdiction here over such an entity that is organized under

foreign law and maintains its principal place of business overseas. As explained below, the

allegations that the Liquidators make as to Citco's Brokerage Customers (*i.e.*, all defendants in

these cases) as an undifferentiated group also fail to establish a basis for personal jurisdiction.

## ARGUMENT

The Liquidators bear the burden of establishing that this Court has personal jurisdiction

over UBS. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

The Liquidators do not—and credibly could not—assert that this Court has general

jurisdiction over a foreign entity such as UBS, a Swiss bank that is not "at home" in the United

States, and so Plaintiffs must plead facts supporting the exercise of specific jurisdiction over

UBS. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014); *SPV OSUS Ltd. v. UBS
AG*, 882 F.3d 333, 343-44 (2d Cir. 2018) (holding that "*Daimler* bars the court's exercise of

general jurisdiction" over UBS AG or various other affiliated "UBS Defendants"). To meet this

burden, under New York's long-arm statute, the Liquidators must satisfy two exacting pleading

---

[18] Notably, although the FAC contains these inaccurate allegations regarding the corporate status of "UBS AG New York," the Liquidators do not assert that "UBS AG New York"—or any other UBS-affiliated entity—is subject to general jurisdiction in this Court.

requirements:  (1) UBS must have transacted business within the state; and (2) the claims asserted must arise from that business activity.  *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).  The Liquidators also must demonstrate that this Court's exercise of personal jurisdiction over UBS "would comport with due process."  *Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *3 (internal quotations omitted).

As Judge Bernstein held in the Madoff Trustee litigation with respect to the identical jurisdictional issue, each transaction involving Redemption Payments is a separate claim. Accordingly, the Liquidators must establish the Court's jurisdiction over UBS for *each individual Redemption Payment*, just as the Trustee is required to do.  *BNP Paribas*, 594 B.R. at 190 ("Each transfer is a separate claim, and the Trustee must establish the court's jurisdiction with respect to each claim asserted." (citation and internal quotation omitted)).  They have failed to do so here.  Rather, the Liquidators have meticulously alleged that every single Redemption Payment was paid to an offshore bank; each claim therefore is foreign to the United States.

The Liquidators appear to advance two primary bases for personal jurisdiction against UBS and the other Citco's Brokerage Customers, but both fail.

*First*, despite having painstakingly explained the structure and details of how the Redemption Payments were paid to Citco's Brokerage Customers via off-shore bank accounts, the Liquidators now insert into their Citco Brokerage Complaints the conclusory and contradictory statement that "some or all of the Redemption Payments were received at, upon information and belief, designated United States-based bank accounts" as purportedly directed by Citco's Brokerage Customers.  FAC ¶ 133.  This solitary, unsupported "information and

11

belief" assertion (contained in a separate part of the Complaint from the other generic

jurisdictional allegations) is directly contradicted by the specific allegations in the Complaint.

As explained below, this belated, self-serving, and conclusory allegation cannot support the

assertion of jurisdiction.

*Second*, the Liquidators allege generally, in a broad-brush manner without mentioning

UBS or any other individual defendant, that Citco's Brokerage Customers "purposely availed

themselves of laws of the United States and the State of New York" by investing in the Funds

allegedly "knowing and intending that the Funds would invest substantially all of that money in

New York-based BLMIS." FAC ¶ 20. This jurisdictional theory likewise fails, for multiple

reasons. First, it is not relevant to the Liquidators' claim for constructive trust. That claim is

wholly unrelated to the Funds' investments in, or redemptions from BLMIS—and indeed, the

Liquidators seek to recover Redemption Payments from Citco's Brokerage Customers in these

proceedings whether or not those payments were funded with redemptions from BLMIS. As the

Liquidators concede, moreover, some of the payments were not funded with redemptions from

BLMIS. The claim for constructive trust turns instead on (1) the Redemption Payments from the

Funds that as the Liquidators have affirmatively alleged and argued, took place entirely overseas,

and (2) the calculation of those payments by the Liquidators' Dutch fund administrator, Citco

Fund Services, that occurred in the Netherlands. Second, this theory also fails because the Funds

themselves, not Citco's Brokerage Customers, placed the investment in BLMIS, and a

defendant's mere knowledge of a plaintiff's forum contacts is insufficient, under the Supreme

Court's decision in *Walden v. Fiore*, to establish personal jurisdiction. 571 U.S. 277, 286 (2014).

I.      **The Redemption Accounts Do Not Establish Personal Jurisdiction**

      A.      **The Liquidators' Own Allegations Confirm that the
Redemption Process Did Not Occur in the United States**

As set forth *supra* at Factual Background Section C, the Liquidators' own allegations that

the Redemption Payments were paid to accounts outside the United States defeat any assertion of

personal jurisdiction over UBS based on the Redemption Payments. *See Neewra, Inc. v. Manakh*

*Al Khaleej Gen. Trading & Contracting Co.*, 2004 WL 1620874, at *5 (S.D.N.Y. July 20, 2004)

(holding non-U.S. bank did not engage in any jurisdictionally relevant activities in New York

where the non-U.S. bank did not use its U.S. correspondent account to effect any transactions

giving rise to plaintiff's claims); *see also Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,

2020 WL 1166053, at *5 (Broderick, J) (holding plaintiff failed to make a *prima facie* showing

with respect to section 302(a)(1) because plaintiff did not allege "the existence of a single act

directed at New York out of which these claims arise").

The Liquidators' unsupported conclusory allegation that "some or all of the Redemption

Payments were received at, upon information and belief, designated United States-based bank

accounts," as purportedly directed by Citco's Brokerage Customers, FAC ¶ 133, cannot create a

U.S.-jurisdictional nexus for the Redemption Payments, particularly where it is directly

contradicted by the Liquidators' far more robust and specific factual allegations regarding the

receipt of the Redemption Payments into Netherlands accounts.

*First*, the Liquidators do not allege any facts to support this single, self-serving, and

unsubstantiated allegation.  Conclusory allegations like this, based solely on "information and

belief," are inadequate as a matter of law.  *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216,

226 (2d Cir. 2017) (holding allegations based "upon information and belief" were entirely

speculative where the complaint contained no allegations of fact which, if true, would have

supported such allegations); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)

(explaining that a "conclusory allegation on information and belief" is insufficient to make a

claim plausible where the complaint's factual allegations do not raise a right to relief above the

speculative level); *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001)

(finding that a complaint with no specific factual allegations to enable the court to evaluate

information and belief assertions failed to state a claim).

      *Second*, as demonstrated above, the detailed factual allegations in the Citco Brokerage

Complaints flatly *contradict* the Liquidators' isolated assertion that the Redemption Payments

were supposedly paid to U.S. bank accounts.  The Liquidators' own allegations and the terms of

the B&C Agreements state just the opposite:  the Redemption Payments occurred, by design,

entirely outside the United States.  *See L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422

(2d Cir. 2011) (holding allegations that are "contradicted by more specific allegations or

documentary evidence—from the Complaint and the exhibits attached thereto" need not be

accepted); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General,

conclusory allegations need not be credited, however, when they are belied by more specific

allegations of the complaint.").

      A comparison with other complaints makes clear that the Liquidators have not and cannot

allege that the Redemption Payments were paid at bank accounts based in the United States.  In

those other complaints, the Liquidators allege specific facts that the Redemption Payments they

seek to reverse were paid to accounts in the United States.  For instance, in *Fairfield Sentry*

*Limited (In Liquidation) et al. v. Banco Santander (Suisse) S.A.*, the Liquidators alleged that

defendants "maintain[ed] bank accounts in the United States at Deutsche Bank Trust Company

Americas in New York, and in fact receiv[ed] Redemption Payments in those United States-

based and/or New York-based accounts."  Adv. Pro. No. 10-03509, Dkt. No. 52 ¶ 19 (Bankr. S.D.N.Y. Aug. 2, 2019).  The Liquidators further alleged that each Redemption Payment was made to "Deutsche Bank Trust Company Americas" in "New York."  *Id.* at Ex. A.  The Liquidators' complaint against Banco Santander (Suisse) S.A. is not an outlier.  The Liquidators made similar factual allegations in other complaints.  *See* Table 1, attached hereto.

Without more, such allegations, had they been made, would be insufficient to establish jurisdiction.  But the Court need not even consider that issue in this case, however, because the Liquidators made no similar allegations regarding the receipt of Redemption Payments in U.S. bank accounts by UBS or any of the other Citco's Brokerage Customers.  Instead, the Liquidators affirmatively pled that Redemption Payments were received by Citco's Brokerage Customers exclusively in accounts that were located *outside the United States*.

Finally, the allegation that some of the Redemption Payments may have been received in U.S.-based accounts was not added until the Liquidators filed their proposed Fourth Amended Complaints in 2017, nearly a decade into these proceedings.[19]  The first four iterations of the complaints consistently failed, for obvious reasons, to allege that the Redemption Payments were paid to U.S. bank accounts.[20]

### B.   The Liquidators Admit that the Redemption Payments were Paid to Non-U.S. Accounts

The Liquidators recently confirmed that the Redemption Payments transpired entirely outside of the United States in their opening appellate brief to the District Court challenging certain of Judge Bernstein's holdings in *Fairfield I*, *Fairfield II*, and *Fairfield III*.  The

---

[19]  *See* Adv. Pro. No. 10-03496, Dkt. No. 1337, Exs. E and F (proposed Fourth Amended Complaints, filed March 31, 2017).

[20]  *See* Adv. Pro. No. 10-03635, Dkt. Nos. 8 (Complaint, filed September 21, 2010), 67 (First Amended Complaint, filed January 10, 2011), 86 (Second Amended Complaint, filed May 3, 2011), and 121 (Third Amended Complaint, filed July 20, 2012).

Liquidators affirmatively represented to the District Court that all Redemption Payments to

Citco's Brokerage Customers (including UBS) occurred outside the United States:

> *The redemption transfers at issue here were purely foreign.* The Citco
> Administrator (a foreign entity) managed the share register and processed the
> redemption requests abroad, and the Funds (also foreign entities) transferred
> redemption payments to Defendants (also chiefly foreign entities). *[E]very relevant
> component of the transactions at issue here occurred outside the territorial
> jurisdiction of the United States*.

Liquidators' Appeal at 24 (emphasis added). There can be no doubt that the Redemption

Payments to Citco's Brokerage Customers occurred completely outside the United States.

## II.   The Alleged Foreseeability of the Funds' Investment in BLMIS Does Not Establish Personal Jurisdiction over UBS

The Liquidators allege that Citco's Brokerage Customers "purposely availed themselves

of the laws of the United States and the State of New York" by investing in the Funds allegedly

"knowing and intending that the Funds would invest substantially all of that money in New

York-based BLMIS." FAC ¶ 20. That allegation is jurisdictionally irrelevant for two reasons.

*First*, the non-party-specific allegation that Citco's Brokerage Customers allegedly knew

that their investments in the Funds would be comingled with other investments and the net

surplus of those investments would ultimately be invested in BLMIS does not give rise to this

litigation and thus does not support jurisdiction, because it says nothing about any conduct by

UBS (or any other defendant) that contacted the United States. *See Helicopteros Nacionales de

Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a

third person is not an appropriate consideration when determining whether a defendant has

sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV Osus Ltd. v.

UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on the relationship

among the defendant, the forum, and the litigation"). The Liquidators' claim is not predicated on

whether the funds they seek to *recover* were ever placed with or controlled by BLMIS. Nor does

16

the Liquidators' claim focus on the decision to *invest* with the Funds as the basis for either liability or jurisdiction. *See Fairfield I*, 2018 WL 3756343, at \*4-12 (finding subscription agreements irrelevant to claim because not based on subscription). The Liquidators' claim for constructive trust relates to and arises out of the calculation of the NAV by the Funds' Dutch administrator, Citco Fund Services, and the foreign Funds' subsequent alleged disbursement of the Redemption Payments abroad on the basis of those calculations from their Irish bank accounts to bank accounts in the Netherlands. *See* FAC ¶¶ 137, 162, 196. The Citco Subscribers, on behalf of Citco's Brokerage Customers, made their requests for the Redemption Payments by tendering shares to Citco Fund Services in the Netherlands, *see Migani* ¶¶ 14-16; and, in turn, the Redemption Payments were funded from the Funds' bank accounts held at Citco Bank in Ireland, *see Fairfield III*, 2020 WL 7345988 at \*7 (finding all transfers paid by Citco Bank). As the Liquidators themselves maintain, every element of the transaction is "purely foreign." Liquidators' Appeal at 24.

*Second*, it would contravene controlling Supreme Court precedent to subject UBS (or any other defendant) to personal jurisdiction here merely on the basis of its alleged knowledge that *the Funds*—i.e., the Plaintiffs in this case—would invest some of their own money with BLMIS in New York. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Walden*, 571 U.S. at 284. In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful seizure of money in a Georgia airport. *Id.* at 288. The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over the police officer in

17

Nevada.  *Id*. at 289.  As the Supreme Court explained, the foreseeability of a plaintiff's

connection to the forum is irrelevant to whether there is jurisdiction over the defendant because it

"impermissibly allows a plaintiff's contacts with the defendant and forum to drive the

jurisdictional analysis."  *Id*.  Instead, "[t]he substantial connection between the defendant and the

forum State necessary for a finding of minimum contacts must come about by *an action of the

defendant purposefully directed toward the forum State*."  *Asahi Metal Indus. Co. v. Superior

Court*, 480 U.S. 102, 112 (1987) (citation and internal quotation omitted).  Even if true, the

Liquidators' allegation that Citco's Brokerage Customers knew that the Funds would invest with

BLMIS does not satisfy *Walden*, and is insufficient to haul UBS into a New York court.

Moreover, the Liquidators' allegations establish that this factual scenario is not even true.

Indeed, the Liquidators do not allege that UBS contracted or invested directly with BLMIS.

Rather, the Liquidators allege that in order to invest in the Funds (*not* BLMIS), UBS (and the

other Citco's Brokerage Customers) had to contract with the Citco Subscribers.  *See* FAC ¶¶ 8,

106.  Furthermore, while some of the money invested in the Funds was transferred to BLMIS,

and some of the Redemption Payments may have been funded by transfers from BLMIS, that

was not universally or even typically the case.  As the Liquidators allege, the Funds netted

subscriptions against redemptions, and accordingly, often funded Redemption Payments with

money that came from other subscriptions.  Thus, many Redemption Payments were made using

money that was never placed with BLMIS in New York at all.  *See* FAC ¶ 130 (alleging that

subscription money was used to pay redemptions as a "shortcut").  The law does not support the

Liquidators' expansive view that an investment company can sue its investors in any jurisdiction

where that investment company itself decides to make investments.

III.    **The Exercise of Personal Jurisdiction over
        UBS Would Not Comport with Due Process**

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to

be consistent with due process.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that

allows potential defendants to structure their primary conduct with some minimum assurances as

to where that conduct will and will not render them liable to suit.") (citation omitted).

As demonstrated above, the Liquidators fail to allege that Citco's Brokerage Customers

had any contacts whatsoever with the United States relating to the Liquidators' remaining claim

to impose a constructive trust on the Redemption Payments.  Accordingly, the exercise of

personal jurisdiction over Citco's Brokerage Customers, including UBS, would not comport with

due process.  *See Walden*, 571 U.S. at 286 ("Due Process requires that a defendant be haled into

court in a forum state based on his own affiliation with the State, not based on the 'random,

fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the

State.") (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Moreover, given the dearth of jurisdictionally significant contacts alleged by the

Liquidators, it would be unreasonable to subject Citco's Brokerage Customers to jurisdiction in

this Court under the circumstances present here.  Courts apply a "sliding scale" in assessing

whether jurisdiction is consistent with due process:  "the weaker the plaintiff's showing on

minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat

jurisdiction."  *In re CIL Limited*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) (internal quotation

omitted); *see also Porina v. Marward Shipping Co.*, 2006 WL 2465819, at *6 (S.D.N.Y. Aug.

24, 2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make

a stronger showing of reasonableness in order to show that jurisdiction over the defendant is

proper."). In evaluating the reasonableness of exercising personal jurisdiction, "[a] court must

consider the burden on defendant, the interests of the forum State, and the plaintiff's interest in

obtaining relief." *Asahi*, 480 U.S. at 113.

In this case, the relevant factors point uniformly toward the conclusion that exercising

jurisdiction over UBS and the other Citco's Brokerage Customers would contravene the

reasonableness requirement of constitutional due process. The United States has a minimal (if

any) interest in this litigation, which involves only foreign-law claims asserted as between

exclusively foreign parties relating to assets located overseas and business transacted overseas by

investment Funds organized under foreign law. *See, e.g.*, *In re Fairfield Sentry Ltd.*, 458 B.R.

665, 685 (S.D.N.Y. 2011) (Preska, J.). Moreover, the burden on UBS in litigating here is high,

including because UBS is a bank subject to Swiss privacy and bank-secrecy laws, and discovery

in a U.S. litigation of documents concerning the redemption payments at issue here would

potentially expose UBS to civil and criminal liability.[21] And the Liquidators cannot identify any

reason—other than their own desire to engage in forum shopping after receiving adverse rulings

from the BVI courts—why it is more reasonable to litigate these BVI-law claims involving

exclusively non-U.S. litigants in the U.S. bankruptcy courts rather than the Funds' home courts

in the BVI. *See Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1031

---

[21] Such laws include Articles 162, 271, and 273 of the Swiss Criminal Code, Article 47 of the Swiss Federal Act on Banks and Savings Banks, Article 328b of the Swiss Code of Obligations, the Swiss Federal Act on Data Protection of June 19, 1992, and related ordinances and regulations. Although UBS is mindful of the Court's recent instructions that discovery in these cases should proceed in accordance with the Federal Rules of Civil Procedure, UBS further believes that the Federal Rules of Civil Procedure and related principles of federal law afford foreign litigants rights to seek protection against discovery under appropriate circumstances, including but not limited to (1) where a plaintiff has failed to propound sufficient allegations to justify the assertion of jurisdiction over a foreign defendant, or even a sufficient start toward such showing to warrant the imposition of discovery obligations on such defendant, and (2) principles of international comity weigh against subjecting a foreign defendant to discovery obligations in a U.S. legal proceeding. UBS respectfully reserves its rights to seek any such relief at an appropriate time.

(2021) (noting that jurisdiction had been found improper where "the plaintiffs were engaged in forum-shopping").

Courts have repeatedly held that defendants should be dismissed in circumstances like this, where, even assuming "Defendants' contacts with [the forum] only 'barely satisf[y] the minimum contacts standard,'" a "majority of the reasonableness factors weigh against the exercise of jurisdiction." *E.g.*, *Rocky Mountain Chocolate Factory v. Arellano*, 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017) (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004)); *Benton*, 375 F.3d at 1080 (The defendant's "contacts with [the forum] were quite limited, barely satisfying the minimum contacts standard.  As a result, [the defendant] need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry.  Because the majority of the . . . reasonableness factors weigh in [the defendant's] favor, . . . exercise of personal jurisdiction . . . would offend traditional notions of fair play and substantial justice."); *Manko Window Systems, Inc. v. Prestik*, 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017) ("[B]ecause [Defendant's] contacts with Kansas are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction, the Court grants Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).").  The same result is warranted here.

## <u>CONCLUSION</u>

For the foregoing reasons, the Liquidators' Citco Brokerage Proceedings should be

dismissed with prejudice under Rule 12(b)(2) for failure to allege personal jurisdiction over

UBS.

Dated: New York, New York            Respectfully submitted,
       October 29, 2021              GIBSON, DUNN & CRUTCHER LLP

                                      By:   /s/ *Marshall R. King*
                                           Marshall R. King
                                           (mking@gibsondunn.com)
                                           Gabriel Herrmann
                                           (gherrmann@gibsondunn.com)

                                           200 Park Avenue
                                           New York, NY 10166-0193
                                           Tel.: (212) 351-4000

                                           *Attorneys for Defendant UBS AG*

22

**TABLE 1**

| No. | Action | Allegations | |
|---|---|---|---|
| 1 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.*, 10-ap-03496-CGM (Bankr. S.D.N.Y.) | " . . . and maintaining bank accounts in the United States at Citibank NA, and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts." Dkt. No. 1463-1 ¶ 19. | Identifying "Citibank NA, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. Ex. A. |
| 2 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Sudameris, et al.*, 10-ap-03749-CGM (Bankr. S.D.N.Y.) | " . . . maintaining bank accounts in the United States at Intesa BCI and Banca Intesa SpA, and in fact receiving Redemption Payments in those United States-based accounts." Dkt. No. 16 ¶ 20. | Identifying "Intesa BCI New York, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. Ex. A. |
| 3 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Privee Edmond De Rothschild (Eur.), et al.*, 10-ap-03505-CGM (Bankr. S.D.N.Y.) | " . . . and maintaining bank accounts in the United States at Bank of new York and Wachovia Bank NA and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts. Banque Privee and the Beneficial Shareholders selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption payments at issue in this action into those bank accounts." Dkt. No. 82 ¶ 19. | Identifying "Wachovia Bank NA, New York, NY" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id*. Ex. A. |