UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>        Debtors in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>(Jointly Administered) |
| FAIRFIELD SENTRY LIMITED (IN LIQUIDATION), et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>        Defendants. | Adv. Pro. No. 10-3496 (CGM)<br><br>(Administratively Consolidated) |
| FAIRFIELD SENTRY LIMITED (IN LIQUIDATION), and FAIRFIELD SIGMA LIMITED (IN LIQUIDATION), acting by and through the Foreign Representatives thereof, and KENNETH KRYS and CHARLOTTE CAULFIELD, solely in their capacities as Foreign Representatives and Liquidators thereof,<br><br>        Plaintiffs,<br><br>   -against-<br><br>ABN AMRO SCHWEIZ AG a/k/a ABN AMRO (SWITZERLAND) AG, et al.,<br><br>        Defendants. | Adv. Pro. No. 10-3635 (CGM) |

**DEFENDANT UBS JERSEY NOMINEES LIMITED'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Dated: October 29, 2021       *Attorneys for UBS Jersey Nominees Limited*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 4

     A.    The Liquidators' Proceedings ...................................................................... 4

     B.    Allegations Regarding the Redemption Payments ...................................... 6

     C.    Allegations Regarding the Citco Platform .................................................. 7

     D.    Specific Allegations About UBS Jersey ..................................................... 9

ARGUMENT ................................................................................................................... 10

    I.    The Redemption Accounts Do Not Establish Personal Jurisdiction .................... 12

     A.    The Liquidators' Own Allegations Confirm that the  Redemption
             Process Did Not Occur in the United States ............................................. 12

     B.    The Liquidators Admit that the Redemption  Payments were Paid
             into Non-U.S. Accounts ........................................................................... 15

    II.    The Alleged Foreseeability of the Funds' Investment in BLMIS  Does Not
         Establish Personal Jurisdiction over UBS Jersey ................................................. 16

    III.    The Exercise of Personal Jurisdiction over UBS Jersey  Would Not
         Comport with Constitutional Due Process ........................................................... 18

CONCLUSION ................................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arista Records, LLC v. Doe 3,*
   604 F.3d 110 (2d Cir. 2010) .................................................................................14

*Asahi Metal Indus. Co. v. Superior Court,*
   480 U.S. 102 (1987) ...................................................................................17, 19

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..........................................................................................6

*Benton v. Cameco Corp.,*
   375 F.3d 1070 (10th Cir. 2004) .........................................................................20

*Best Van Lines, Inc. v. Walker,*
   490 F.3d 239 (2d Cir. 2007) ...............................................................................10

*Burger King v. Rudzewicz,*
   471 U.S. 462 (1985) .........................................................................................19

*In re CIL Limited,*
   582 B.R. 46 (Bankr. S.D.N.Y. 2018) ..................................................................19

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014) ..............................................................................10, 17, 18

*DiStefano v. Carozzi N. Am., Inc.,*
   286 F.3d 81 (2d Cir. 2001) .................................................................................10

*In re Fairfield Sentry Ltd.,*
   2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ....................................2, 6, 16

*In re Fairfield Sentry Ltd.,*
   2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ......................................2, 16

*In re Fairfield Sentry Ltd.,*
   458 B.R. 665 (S.D.N.Y. 2011) ...........................................................................19

*In re Fairfield Sentry Ltd.,*
   596 B.R. 275 (Bankr. S.D.N.Y. 2018) ..................................................................2

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.,*
   141 S. Ct. 1017 (2021) ......................................................................................20

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984) .........................................................................................16

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995).................................................................................13

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,
    2020 WL 1166053 ............................................................................................12

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)...............................................................................13

*Manko Window Systems, Inc. v. Prestik*,
    2017 WL 4355580 (D. Kan. Sept. 29, 2017) .......................................................21

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*,
    2004 WL 1620874 (S.D.N.Y. July 20, 2004) ......................................................12

*Picard v. BNP Paribas S.A.*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) .............................................................3, 11

*Porina v. Marward Shipping Co.*,
    2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006).....................................................19

*Pyskaty v. Wide World of Cars, LLC*,
    856 F.3d 216 (2d Cir. 2017)...............................................................................13

*Rocky Mountain Chocolate Factory v. Arellano*,
    2017 WL 4697503 (D. Colo. Oct. 19, 2017) ......................................................20

*Rose v. Goldman, Sachs & Co.*,
    163 F. Supp. 2d 238 (S.D.N.Y. 2001).................................................................13

*SPV OSUS Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)..........................................................................10, 16

*Walden v. Fiore*,
    571 U.S. 277 (2014)......................................................................................12, 17

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..........................................................................................18

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,
    2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ....................................................11

Defendant UBS Jersey Nominees Limited (hereinafter "UBS Jersey"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the Fifth Amended Complaint (the "FAC"; ECF Doc. 620) filed by Plaintiffs as the liquidators (the "Liquidators") for Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma," and together with Sentry, "Plaintiffs," or the "Funds") in Adversary Proceeding No. 10-3635.[1]  For the same reasons, UBS Jersey also seeks dismissal of the Fifth Amended Complaint filed by Plaintiffs, as the liquidators for Sentry, Sigma, and Fairfield Lambda Limited ("Lambda"),[2] in *Fairfield Sentry Ltd. (In Liquidation), et al. v. ABN AMRO Schweiz AG, et al.*, Adversary Proceeding No. 10-3636, which is premised upon allegations that are substantively the same as the allegations of the FAC in this action but, pursuant to guidance from the Court's Chambers staff, UBS Jersey will be filing separate motion papers in support of its motion to dismiss Adversary Proceeding No. 10-3636. In this memorandum, the lawsuits filed by the Liquidators under Adversary Proceeding Nos. 10-3635 and 10-3636 are referred to as the "Citco Brokerage Proceedings" and the operative pleadings in those actions are referred to as the "Citco Brokerage Complaints."

## PRELIMINARY STATEMENT

The grounds requiring dismissal here are particular to UBS Jersey and the other defendants in the Citco Brokerage Proceedings (together with UBS Jersey, "Citco's Brokerage Customers") because there are no plausible allegations whatsoever that a single redemption

---

[1]  Pursuant to the Court's direction, UBS Jersey is moving now solely on the basis of lack of personal jurisdiction. UBS Jersey reserves its right to seek dismissal for failure to state a claim upon which relief can be granted.

[2]  Sentry, Sigma, and Lambda are referred to collectively as the "Fairfield Funds."  As alleged by the Liquidators, Sentry maintained accounts with "Bernard L. Madoff [Investment] Securities LLC" ("BLMIS") whereas Sigma and Lambda were indirect BLMIS feeder funds established for foreign currency investment through the purchase of shares of Sentry.  FAC ¶ 125.  Despite this distinction, the Liquidators refer to Sentry, Sigma, and Lambda as the "Funds" throughout the Citco Brokerage Complaints and only occasionally acknowledge that Sigma and Lambda were indirect feeder funds for BLMIS.

payment to a single defendant was made to U.S. accounts or went through U.S. correspondent accounts. The Liquidators have not alleged, let alone established, personal jurisdiction over UBS Jersey or any of the other defendants comprising Citco's Brokerage Customers. Indeed, the only allegations in the Citco Brokerage Complaints unique to the individual Citco's Brokerage Customers are the allegations alleging their places of incorporation and registered addresses. *See, e.g.*, FAC ¶¶ 34-104. Thus, allegations specific to UBS Jersey are propounded in just one paragraph of the FAC.[3] *See id.* ¶ 102. *All other allegations* against Citco's Brokerage Customers, including UBS Jersey, are made by way of group pleading and none of those allegations connects Citco's Brokerage Customers or their alleged conduct to the United States.[4]

This Court already dismissed all but one of the claims asserted against UBS Jersey and the other Citco's Brokerage Customers for failure to state a claim. *See In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"); *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 316 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"); *In re Fairfield Sentry Ltd.*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"). And as explained in this memorandum, the sole remaining claim against UBS Jersey and those other defendants—for the imposition of a "constructive trust" under British Virgin Islands ("BVI") law over redemption payments allegedly paid to them, *see* FAC ¶ 198—must be dismissed for lack of personal jurisdiction.

---

[3] The Liquidators allege, "[u]pon information and belief," that UBS Jersey is "a corporate entity organized under the laws of the United Kingdom" that has its registered address in "St Helier . . . , Jersey, United Kingdom." FAC ¶ 102. In reality, UBS Jersey is a registered private company organized under the laws of Jersey, not the United Kingdom, *see, e.g.*, https://www.jerseyfsc.org/registry/registry-entities/entity/193351, but for purposes of the present motion UBS Jersey accepts the Liquidators' allegation in this regard as true, because the relevant jurisdictional consequences are the same: UBS Jersey is a business entity organized under foreign law that has its principal place of business overseas.

[4] The other Citco's Brokerage Customers will be filing separate and independent motions to seeking dismissal for lack of personal jurisdiction on essentially the same legal grounds, given that the propounded as against those other defendants are virtually identical to the allegations propounded as against UBS.

To proceed on their remaining claim, the Liquidators first must establish this Court's personal jurisdiction over each defendant with respect to each redemption payment that the Liquidators seek to reverse.  *See Picard v. BNP Paribas S.A.*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) (Bernstein, J.).  But the Citco Brokerage Complaints are devoid of any allegations that would support an exercise of jurisdiction with respect to any redemption.  In certain other cases before this Court, the Liquidators have argued that defendants are subject to jurisdiction because redemptions at issue were paid to U.S. correspondent accounts.  Although that is wrong for reasons explained in other defendants' briefs, the Court need not even consider this argument in the Citco Brokerage Proceedings because the Liquidators' own allegations demonstrate that all defendants in the Citco Brokerage Complaints, including UBS Jersey, received all redemption payments in accounts *outside the United States*.  Indeed, the Liquidators specifically and separately allege that every single redemption payment at issue in the Citco Brokerage Complaints was paid to an account in the Netherlands, not the United States.[5]

In fact, the Liquidators recently represented to the District Court that "every relevant component of the [redemption] transactions at issue here occurred *outside the territorial jurisdiction of the United States*."  *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-cv-03911-VSB, Dkt. No. 440 at 24 (S.D.N.Y. July 21, 2021) ("Liquidators' Appeal") (emphasis added).  And even if the receipt of redemption payments in U.S. accounts were sufficient to subject a party to this Court's jurisdiction—which it is not—that is not what the Liquidators have pleaded as to UBS Jersey (and the other Citco's Brokerage Customers).  For

---

[5]  The Liquidators include charts in the Citco Brokerage Complaints that provide information on every redemption at issue.  *See, e.g.*, FAC at Exs. A, B.  Those charts include a column entitled "Bank Account to which Redemption Payment Was Made," which is filled out in the same way for every redemption:  "Citco Global Custody (NA) NV, Netherlands."  *Id.*

this reason alone, Plaintiffs' claims against UBS Jersey (and the other Citco's Brokerage Customers) should be dismissed for lack of personal jurisdiction.

Additionally, because the Liquidators fail to allege that UBS Jersey (or the other Citco's Brokerage Customers) had *any jurisdictionally relevant contacts* with the United States, the exercise of jurisdiction over UBS Jersey (or those other defendants) would violate due process. The Court should dismiss the Liquidators' sole remaining claim as against UBS Jersey (and the other Citco's Brokerage Customers) on that basis as well.

## **FACTUAL BACKGROUND**[6]

### A.    The Liquidators' Proceedings

These cases are ancillary to the foreign liquidation of the Funds in the BVI.  Between October 2009 and March 2010, the Liquidators commenced actions in the BVI against several of the Funds' alleged investors seeking restitution, on the theory that the Funds mistakenly made redemption payments prior to and at the time of BLMIS's collapse.[7]  Since then, the Liquidators have brought more than 300 actions in the United States against partially overlapping defendants with overlapping theories of liability.  The New York actions were stayed pending resolution of the BVI actions.  In 2014, the Privy Council, which is the court of last resort for appeals from the BVI, affirmed dismissal of the Liquidators' BVI law claims for restitution based on mistake. Starting in 2016, the Liquidators discontinued all remaining BVI actions, and began prosecuting

---

[6]  Except as otherwise stated, the factual recitation set forth here is drawn from the allegations of the FAC.  UBS Jersey does not concede the accuracy of any such allegations and hereby reserves all of its rights to contest, at the appropriate time, any factual matter pleaded in the FAC.

[7]  *See* Declaration of William Hare in Support of Motion for Leave to Amend ¶ 15 (Adv. Pro No. 10-03635 Dkt. 145; Adv. Pro. No. 10-03636 Dkt. 164) (the "Hare Decl.").

the New York actions under a new theory that the payment of the redemptions was not merely

mistaken, but the result of bad faith by the Funds' administrator, Citco Fund Services.[8]

As the Liquidators have acknowledged, *see, e.g.*, Liquidators' Appeal at 24, every

relevant aspect of the Liquidators' constructive trust claim brought under BVI law is foreign:

- UBS Jersey (along with the other Citco's Brokerage Customers) is a foreign financial institution with its principal places of business and place of incorporation outside the United States. *See* FAC ¶ 102. It is not alleged to have conducted any business in the United States relating to any of the redemption payments the Liquidators seek to recover.

- The Funds are BVI hedge funds that are now in liquidation in their home jurisdiction of the BVI. *See* FAC ¶¶ 26-28.

- As a pre-condition to investing in the Funds, UBS Jersey was required (as were the other Citco's Brokerage Customers) to enter into Brokerage and Custody Agreements ("B&C Agreements") governed by the laws of the Netherlands with non-U.S. entities associated with Citco Group Limited ("Citco"). *See* FAC ¶ 8.

- Pursuant to the B&C Agreements, UBS Jersey is alleged (as are the other Citco's Brokerage Customers) to have received redemption payments that were sent by the foreign Citco entities into bank accounts in the Netherlands or other accounts outside the United States. *See* FAC ¶ 106 and Exs. A, B.

This foreign claim was filed in this Court due to a mistake of law by the Liquidators. As

then-presiding Judge Bernstein found, the Liquidators incorrectly construed the subscription

agreements for the purchase of shares in the Funds as containing a New York forum selection

clause for their claim against Citco's Brokerage Customers. Judge Bernstein rejected that theory

because the Liquidators' claim is solely based on redemptions and does not arise out of the

subscription agreements. *Fairfield I* , 2018 WL 3756343, at *11 (adhering to the Privy Council's

holding "that the Subscription Agreement was irrelevant to actions to recover the inflated

---

[8]   *See* Hare Decl. ¶ 68. In the BVI courts, the Liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the Fund's alleged miscalculation of their NAV. The Liquidators lost those claims at all levels of the BVI court system. *See* Fairfield Sentry Ltd. (In Liquidation) v. Migani, [2014] UKPC 9 (April 19, 2014) ("*Migani*") at ¶ 23 (concluding the Liquidators' approach is "an impossible construction"). They also lost on their claim that redeeming investors did not give good consideration for the redemptions. *See id.*

redemption payments").[9]  The subscription agreements are also irrelevant, and cannot support

jurisdiction, because Citco's Brokerage Customers did not enter into subscription agreements

with the Funds.  Rather, the Liquidators allege only that Citco's Brokerage Customers entered

into B&C Agreements with the Citco entities; the Citco entities, who are not parties to these

actions, entered into subscription agreements with the Funds.  *See* FAC ¶ 16.  The Liquidators

are now grasping at straws to try to justify maintaining these litigations against UBS Jersey in

New York, a forum with no connection to the redemption transactions at issue.[10]

## B.    Allegations Regarding the Redemption Payments

In the two Citco Brokerage Proceedings, the Liquidators seek to recover payments

totaling approximately $1.76 billion, in the aggregate, from UBS Jersey and the other Citco's

Brokerage Customers for redemptions allegedly received (the "Redemption Payments") outside

the United States.[11]  Although the dozens of defendants named in this suit are not jointly and

severally liable for any of the amounts sought to be recovered, the Liquidators do not specify the

amount of damages they are seeking from UBS Jersey or any other specific defendant in this

action.  FAC ¶¶ 8, 17.  Rather, the Liquidators merely allege collectively that Citco's Brokerage

Customers "received Redemption Payments . . . from Sentry and Sigma in respect of shares

tendered for redemption."  FAC ¶ 132.

---

[9]   This ruling is the subject of a pending appeal to the District Court.

[10]   *See Fairfield Sentry Ltd. (In Liquidation) et al. v. Theodoor Amsterdam et al.*, July 27, 2016 Hr'g Tr. at 11-14 (Dkt. No. 906) ("THE COURT: It just sounds like you litigated these issues or you should litigate them in the BVI.  I don't understand why they're here. . . . THE COURT: I understand that.  But at some point you commenced these cases here . . . . And the question is why you didn't commence them in the BVI?").

[11]   For purposes of this motion only, UBS takes all of the factual allegations—but not legal or boilerplate conclusions couched as factual allegations—in the Citco Brokerage Complaints as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  UBS reserves all rights to contest any such factual allegations that are false or inaccurate at the appropriate procedural stage of this proceeding.

In this Adversary Proceeding (No. 10-03635), the Liquidators allege that between April 20, 2004, and November 19, 2008, Sentry and Sigma made Redemption Payments to accounts held in the name of CGC NA (an affiliate of Citco, defined by the Liquidators as the "Citco Record Subscriber")[12] totaling $51,929,665.41.  FAC ¶ 8.  The Liquidators further allege that the Citco Subscriber[13] has either retained the Redemption Payments for their own accounts or paid all or some to the accounts of Citco's Brokerage Customers.  FAC ¶¶ 15, 34-104.

### C.    Allegations Regarding the Citco Platform

The Liquidators allege that, to invest in the Funds, each of Citco's Brokerage Customers, including UBS Jersey, entered into a B&C Agreement with a Citco Record Subscriber and a Citco Bank.[14]  FAC ¶ 8; *see also id.* ¶ 106 ("each of the Defendants entered into the B&C Agreements with a Citco Bank and the Citco Record Subscriber.").[15]  Moreover, the Liquidators affirmatively and explicitly allege that, in order to receive Redemption Payments, UBS Jersey and the other Citco's Brokerage Customers were *required* to maintain bank accounts with the Citco Banks outside of the United States, into which all Redemption Payments were deposited:

---

[12]  According to the Liquidators' allegations in a related action in this Court, the Citco Record Subscriber and Citco Record Subscribers were foreign entities organized under the laws of either Curaçao or The Netherlands, and registered holders of shares in the Funds, which they purchased by entering into Subscription Agreements with the Funds.  *See* Compl. ¶¶ 32-34 & n.1, *Fairfield Sentry Limited (In Liquidation) et al. v. Citco Global Custody N.V. et al.*, Adv. Pro. No. 19-01122, Dkt. No. 19 (Nov. 26, 2019) ("*Citco Global Custody* Compl.").

[13]  The Liquidators collectively refer to the Citco Record Subscriber and the Citco Banks (as defined *infra*, *see* note 14) as the "Citco Subscribers."  *See* FAC ¶ 8.  This memorandum hereinafter refers to both Citco Record Subscriber and Citco Record Subscribers, as those terms are defined by the Liquidators, as "Citco Record Subscribers" for ease of reference.

[14]  The Liquidators collectively refer to Citco Bank Nederland N.V., Citco Bank Nederland N.V. Dublin Branch, and the Citco Banking Corporation N.V. as the "Citco Banks."

[15]  The Liquidators filed examples of the B&C Agreements in 2017 as exhibits to the Declaration of David J. Molton in Further Support of Motion for Leave to Amend and in Opposition to Defendants' Motion to Dismiss.  Adv. Pro. No. 10-03496, Dkt. No. 1337 ("Molton Decl.").  In one example, the beneficial owner entered into the B&C Agreement with Citco Banking Corporation N.V. in the Netherlands, as "the Bank," and Citco Global Custody (N.A.) N.V., as "the Custodian."  *See* Molton Decl. Ex. G.  In another example, the beneficial owner entered into the B&C Agreement with Citco Bank Nederland N.V. Dublin Branch ("Citco Bank Dublin"), as "the Bank," and Citco Global Custody N.V. as "the Custodian."  *See* Molton Decl. Ex. H.

> It was under the B&C Agreements that the Citco Subscribers purchased shares in and made redemptions from the Funds for the benefit of Defendants, which are the subject of this action.  Under the B&C Agreements, the *Defendants were required to maintain bank accounts at the Citco Banks from which and into which 'all moneys received from or for the account of' the Defendants were deposited* (the "B&C Accounts").

FAC ¶ 106 (emphasis added).  The Liquidators do not (and cannot) allege that the Citco Banks were located in the United States.[16]  Indeed, in a related proceeding in this Court, the Liquidators have alleged that the Citco Banks were located in the Netherlands, Ireland, or Curacao.  *See Citco Global Custody* Compl. ¶¶ 35-37, 39.  The Liquidators further allege that, pursuant to the B&C Agreements, the Citco Banks had the sole authority to effect brokerage transactions on behalf of Citco's Brokerage Customers and deposit Redemption Payments in their non-U.S. accounts at the Citco Banks.[17]  Thus, the Citco Brokerage Complaints themselves allege that all the Redemption Payments at issue in the Citco Brokerage Proceedings were made by the offshore Citco Banks to offshore accounts and that none was made to or through U.S. banks.

The Liquidators specifically allege that each Redemption Payment was made to an account with "Citco Global Custody (NA) NV, Netherlands."  FAC Ex. A (Redemption Payments received from Sentry), Ex. B (Redemption Payments from Sigma).[18]  They do so in

---

[16]  Pursuant to the example B&C Agreement filed by the Liquidators, for example, at least some of Citco's Brokerage Customers opened and maintained accounts with Citco Bank Dublin to receive the Redemption Payments.  *See* Molton Decl. Ex. H.

[17]  Pursuant to the Liquidators' own allegations, "the Citco Banks were solely responsible for providing brokerage services to the Defendants.  According to the B&C Agreements, these services included . . . 'effecting [] transactions of and/or relating to the purchase and sale of and dealing in Securities in the name and for the account of the Defendants."  FAC ¶ 108.  Additionally, the "B&C Agreements with the Defendants applied to all subscriptions and redemptions of Shares in the Funds by the Citco Subscribers on behalf of the Defendants, and all Redemption Payments were, upon information and belief, sent by the Citco Banks (upon their receipt from the Funds) to the Defendants' B&C Accounts."  *Id.* ¶ 115.  Further, the "B&C Agreements afforded the Citco Banks and the Citco Record Subscribers the power to . . . 'deposit in the [B&C] Account [at the Citco Banks] all moneys received from or for the account of the [Defendants]."  *Id.* ¶ 118.

[18]  The Liquidators do not specify at which of the Citco Banks UBS (or any of the other Citco's Brokerage Customers) received Redemption Payments.  Nor do the Liquidators identify from which of the Funds UBS (or the other Citco's Brokerage Customers) received Redemption Payments.

charts that list every Redemption Payment at issue and identify the date of each Redemption

Payment, the amount paid, the number of shares redeemed, and the identity and location of the

account to which each payment was made. *Id*. Here is a sample of entries from these charts,

demonstrating the detail with which the Liquidators have alleged that each Redemption Payment

was received at bank accounts outside of the United States:

| Payment Date | Redemption Payment | No. of Shares | Bank Account to Which Redemption Payment Was Made |
|---|---|---|---|
| April 21, 2004 | $325,094.34 | 334.37 | Citco Global Custody (NA) NV, Netherlands |
| April 21, 2004 | $10,937,878.23 | 11249.96 | Citco Global Custody (NA) NV, Netherlands |
| July 16, 2004 | $147.542.37 | 148.21 | Citco Global Custody (NA) NV, Netherlands |

FAC Ex. A. The column on the far right, entitled "Bank Account to which Redemption Payment

Was Made," contains the same information for every Redemption Payment at issue: "Citco

Global Custody (NA) NV, *Netherlands*." *Id*. (emphasis added). In the exhibits to both of the

Citco Brokerage Complaints, that column reads exactly the same for every Redemption Payment

that any of Citco's Brokerage Customers (as an undifferentiated group that includes UBS Jersey)

allegedly received.

### D.    Specific Allegations About UBS Jersey

The Liquidators fail to make any meaningful UBS Jersey-specific allegations. Indeed,

UBS Jersey is mentioned by name only in two paragraphs of the FAC. *First*, in a blanket

allegation that references every named defendant, the Liquidators allege that, "upon information

and belief," the Citco Subscribers "paid all or some portion of such Redemption Payments to or

for the account of persons or entities, including . . . UBS Jersey." FAC ¶ 15. *Second*, the

Liquidators allege that "some or all of the Redemption Payments made to the Citco Subscribers

may have been paid to an account holder or holders associated with . . . UBS Jersey." FAC

¶ 102.  *Third*, the Liquidators allege, "[u]pon information and belief," that UBS Jersey "is a corporate entity organized under the laws of the United Kingdom" that has its "registered address" in "St Helier," Jersey.[19]  *Id.*

The Liquidators plainly make no allegations specifically about UBS Jersey that could possibly support an exercise of personal jurisdiction here over such an entity that is organized under foreign law and maintains its principal place of business overseas.  As explained below, the allegations that the Liquidators make as to Citco's Brokerage Customers (*i.e.*, all defendants in these cases) as an undifferentiated group also fail to establish a basis for personal jurisdiction.

## **ARGUMENT**

The Liquidators bear the burden of establishing that this Court has personal jurisdiction over UBS Jersey.  *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

The Liquidators do not—and credibly could not—assert that this Court has general jurisdiction over a foreign entity such as UBS Jersey, a company based in the Bailiwick of Jersey that is not "at home" in the United States, and so Plaintiffs must plead facts supporting the exercise of specific jurisdiction over UBS Jersey.  *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014); *SPV OSUS Ltd. v. UBS AG*, 882 F.3d 333, 343-44 (2d Cir. 2018) (holding that "*Daimler* bars the court's exercise of general jurisdiction" over various "UBS Defendants" based overseas).  To meet this burden, under New York's long-arm statute, the Liquidators must satisfy two exacting pleading requirements:  (1) UBS Jersey must have transacted business within the state; and (2) the claims asserted must arise from that business activity.  *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.) (citing *Best Van Lines, Inc. v.  Walker*, 490 F.3d 239,

---

[19]  As noted previously, *see supra* note 3, this allegation is false, but is accepted as true for purposes of this motion.

246 (2d Cir. 2007)).  The Liquidators also must demonstrate that this Court's exercise of personal jurisdiction over UBS Jersey "would comport with due process."  *Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *3 (internal quotation omitted).

As Judge Bernstein held in the Madoff Trustee litigation with respect to the identical jurisdictional issue, each transaction involving Redemption Payments is a separate claim. Accordingly, the Liquidators must establish the Court's jurisdiction over UBS Jersey for *each individual Redemption Payment*, just as the Trustee is required to do.  *BNP Paribas*, 594 B.R. at 190 ("Each transfer is a separate claim, and the Trustee must establish the court's jurisdiction with respect to each claim asserted." (citation and internal quotation omitted)).  They have failed to do so here.  Rather, the Liquidators have meticulously alleged that every single Redemption Payment was paid to an offshore bank; each claim therefore is foreign to the United States.

The Liquidators appear to advance two primary bases for personal jurisdiction against UBS Jersey and the other Citco's Brokerage Customers, but both fail.

*First*, despite having painstakingly explained the structure and details of how the Redemption Payments were paid to Citco's Brokerage Customers via off-shore bank accounts, the Liquidators now insert into their Citco Brokerage Complaints the conclusory and contradictory statement that "some or all of the Redemption Payments were received at, upon information and belief, designated United States-based bank accounts" as purportedly directed by Citco's Brokerage Customers.  FAC ¶ 133.  This solitary, unsupported "information and belief" assertion (contained in a separate part of the Complaint from the other generic jurisdictional allegations) is directly contradicted by the specific allegations in the Complaint. As explained below, this belated, self-serving, and conclusory allegation cannot support the assertion of jurisdiction.

*Second*, the Liquidators allege generally, in a broad-brush manner without mentioning UBS Jersey or any other individual defendant, that Citco's Brokerage Customers "purposely availed themselves of laws of the United States and the State of New York" by investing in the Funds allegedly "knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS." FAC ¶ 20. This jurisdictional theory likewise fails, for multiple reasons. First, it is not relevant to the Liquidators' claim for constructive trust. That claim is wholly unrelated to the Funds' investments in, or redemptions from BLMIS—and indeed, the Liquidators seek to recover Redemption Payments from Citco's Brokerage Customers in these proceedings whether or not those payments were funded with redemptions from BLMIS. As the Liquidators concede, moreover, some of the payments were not funded with redemptions from BLMIS. The claim for constructive trust turns instead on (1) the Redemption Payments from the Funds that as the Liquidators have affirmatively alleged and argued, took place entirely overseas, and (2) the calculation of those payments by the Liquidators' Dutch fund administrator, Citco Fund Services, that occurred in the Netherlands. Second, this theory also fails because the Funds themselves, not Citco's Brokerage Customers, placed the investment in BLMIS, and a defendant's mere knowledge of a plaintiff's forum contacts is insufficient, under the Supreme Court's decision in *Walden v. Fiore*, to establish personal jurisdiction. 571 U.S. 277, 286 (2014).

I.    **The Redemption Accounts Do Not Establish Personal Jurisdiction**

   A.    **The Liquidators' Own Allegations Confirm that the Redemption Process Did Not Occur in the United States**

As set forth *supra* at Factual Background Section C, the Liquidators' own allegations that the Redemption Payments were paid to accounts outside the United States defeat any assertion of personal jurisdiction over UBS Jersey based on the Redemption Payments. *See Neewra, Inc. v.*

12

*Manakh Al Khaleej Gen. Trading & Contracting Co.*, 2004 WL 1620874, at *5 (S.D.N.Y. July 20, 2004) (holding non-U.S. bank did not engage in any jurisdictionally relevant activities in New York where the non-U.S. bank did not use its U.S. correspondent account to effect any transactions giving rise to plaintiff's claims); *see also Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, 2020 WL 1166053, at *5 (Broderick, J) (holding plaintiff failed to make a *prima facie* showing with respect to section 302(a)(1) because plaintiff did not allege "the existence of a single act directed at New York out of which these claims arise").

The Liquidators' unsupported conclusory allegation that "some or all of the Redemption Payments were received at, upon information and belief, designated United States-based bank accounts," as purportedly directed by Citco's Brokerage Customers, FAC ¶ 133, cannot create a U.S.-jurisdictional nexus for the Redemption Payments, particularly where it is directly contradicted by the Liquidators' far more robust and specific factual allegations regarding the receipt of the Redemption Payments into Netherlands accounts.

*First*, the Liquidators do not allege any facts to support this single, self-serving, and unsubstantiated allegation. Conclusory allegations like this, based solely on "information and belief," are inadequate as a matter of law. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (holding allegations based "upon information and belief" were entirely speculative where the complaint contained no allegations of fact which, if true, would have supported such allegations); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (explaining that a "conclusory allegation on information and belief" is insufficient to make a claim plausible where the complaint's factual allegations do not raise a right to relief above the speculative level); *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001)

13

(finding that a complaint with no specific factual allegations to enable the court to evaluate information and belief assertions failed to state a claim).

*Second*, as demonstrated above, the detailed factual allegations in the Citco Brokerage Complaints flatly *contradict* the Liquidators' isolated assertion that the Redemption Payments were supposedly paid to U.S. bank accounts.  The Liquidators' own allegations and the terms of the B&C Agreements state just the opposite:  the Redemption Payments occurred, by design, entirely outside the United States.  *See L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011) (holding allegations that are "contradicted by more specific allegations or documentary evidence—from the Complaint and the exhibits attached thereto" need not be accepted); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint.").

A comparison with other complaints makes clear that the Liquidators have not and cannot allege that the Redemption Payments were paid at bank accounts based in the United States.  In those other complaints, the Liquidators allege specific facts that the Redemption Payments they seek to reverse were paid to accounts in the United States.  For instance, in *Fairfield Sentry Limited (In Liquidation) et al. v. Banco Santander (Suisse) S.A.*, the Liquidators alleged that defendants "maintain[ed] bank accounts in the United States at Deutsche Bank Trust Company Americas in New York, and in fact receiv[ed] Redemption Payments in those United States-based and/or New York-based accounts."  Adv. Pro. No. 10-03509, Dkt. No. 52 ¶ 19 (Bankr. S.D.N.Y. Aug. 2, 2019).  The Liquidators further alleged that each Redemption Payment was made to "Deutsche Bank Trust Company Americas" in "New York."  *Id*. at Ex. A.  The

Liquidators' complaint against Banco Santander (Suisse) S.A. is not an outlier. The Liquidators made similar factual allegations in other complaints. *See* Table 1, attached hereto.

Without more, such allegations, had they been made, would be insufficient to establish jurisdiction. But the Court need not even consider that issue in this case, however, because the Liquidators made no similar allegations regarding the receipt of Redemption Payments in U.S. bank accounts by UBS Jersey or any of the other Citco's Brokerage Customers. Instead, the Liquidators affirmatively pled that Redemption Payments were received by Citco's Brokerage Customers exclusively in accounts that were located *outside the United States*.

Finally, the allegation that some of the Redemption Payments may have been received in U.S.-based accounts was not added until the Liquidators filed their proposed Fourth Amended Complaints in 2017, nearly a decade into these proceedings.[20] The first four iterations of the complaints consistently failed, for obvious reasons, to allege that the Redemption Payments were paid to U.S. bank accounts.[21]

### B. The Liquidators Admit that the Redemption Payments were Paid into Non-U.S. Accounts

The Liquidators recently confirmed that the Redemption Payments transpired entirely outside of the United States in their opening appellate brief to the District Court challenging certain of Judge Bernstein's holdings in *Fairfield I*, *Fairfield II*, and *Fairfield III*. The Liquidators affirmatively represented to the District Court that all Redemption Payments to Citco's Brokerage Customers (including UBS Jersey) occurred outside the United States:

> *The redemption transfers at issue here were purely foreign.* The Citco Administrator (a foreign entity) managed the share register and processed the

---

[20]   *See* Adv. Pro. No. 10-03496, Dkt. No. 1337, Exs. E and F (proposed Fourth Amended Complaints, filed March 31, 2017).

[21]   *See* Adv. Pro. No. 10-03635, Dkt. Nos. 8 (Complaint, filed September 21, 2010), 67 (First Amended Complaint, filed January 10, 2011), 86 (Second Amended Complaint, filed May 3, 2011), and 121 (Third Amended Complaint, filed July 20, 2012).

redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). *[E]very relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States*.

Liquidators' Appeal at 24 (emphasis added). There can be no doubt that the Redemption Payments to Citco's Brokerage Customers occurred completely outside the United States.

## II.    The Alleged Foreseeability of the Funds' Investment in BLMIS Does Not Establish Personal Jurisdiction over UBS Jersey

The Liquidators allege that Citco's Brokerage Customers "purposely availed themselves of the laws of the United States and the State of New York" by investing in the Funds allegedly "knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS." FAC ¶ 20. That allegation is jurisdictionally irrelevant for two reasons.

*First*, the non-party-specific allegation that Citco's Brokerage Customers allegedly knew that their investments in the Funds would be comingled with other investments and the net surplus of those investments would ultimately be invested in BLMIS does not give rise to this litigation and thus does not support jurisdiction, because it says nothing about any conduct by UBS Jersey (or any other defendant) that contacted the United States. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV OSUS Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on the relationship among the defendant, the forum, and the litigation"). The Liquidators' claim is not predicated on whether the funds they seek to *recover* were ever placed with or controlled by BLMIS. Nor does the Liquidators' claim focus on the decision to *invest* with the Funds as the basis for either liability or jurisdiction. *See Fairfield I*, 2018 WL 3756343, at *4-12 (finding subscription agreements irrelevant to claim because not based on subscription). The Liquidators'

claim for constructive trust relates to and arises out of the calculation of the NAV by the Funds'

Dutch administrator, Citco Fund Services, and the foreign Funds' subsequent alleged

disbursement of the Redemption Payments abroad on the basis of those calculations from their

Irish bank accounts to bank accounts in the Netherlands. *See* FAC ¶¶ 137, 162, 196. The Citco

Subscribers, on behalf of Citco's Brokerage Customers, made their requests for the Redemption

Payments by tendering shares to Citco Fund Services in the Netherlands, *see Migani* ¶¶ 14-16;

and, in turn, the Redemption Payments were funded from the Funds' bank accounts held at Citco

Bank in Ireland, *see Fairfield III*, 2020 WL 7345988 at *7 (finding all transfers paid by Citco

Bank). As the Liquidators themselves assert, every element of the transaction is "purely

foreign." Liquidators' Appeal at 24.

> *Second*, it would contravene controlling Supreme Court precedent to subject UBS Jersey

(or any other defendant) to personal jurisdiction here merely on the basis of its alleged

knowledge that *the Funds*—i.e., the ultimate Plaintiffs in this case—would invest some of their

own money with BLMIS in New York. The Supreme Court has "consistently rejected attempts

to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between

the plaintiff (or third-parties) and the forum State." *Walden*, 571 U.S. at 284. In *Walden*, a

Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful seizure of

money in a Georgia airport. *Id*. at 288. The police officer knew that the plaintiff had

connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada,

but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over

the police officer in Nevada. *Id*. at 289. As the Supreme Court explained, the foreseeability of a

plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over the defendant

because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the

jurisdictional analysis." *Id.*  Instead, "[t]he substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*."  *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (citation and internal quotation omitted).  Even if true, the Liquidators' allegation that Citco's Brokerage Customers knew that the Funds would invest with BLMIS does not satisfy *Walden*, and is insufficient to hale UBS Jersey into a New York court.

Moreover, the Liquidators' own allegations establish that this factual scenario is not even true.  Indeed, the Liquidators do not allege that UBS Jersey contracted or invested directly with BLMIS.  Rather, the Liquidators allege that in order to invest in the Funds (*not* BLMIS), UBS Jersey (and the other Citco's Brokerage Customers) had to contract with the Citco Subscribers. *See* FAC ¶¶ 8, 106.  Furthermore, while some of the money invested in the Funds was transferred to BLMIS, and some of the Redemption Payments may have been funded by transfers from BLMIS, that was not universally or even typically the case.  As the Liquidators allege, the Funds netted subscriptions against redemptions, and accordingly, often funded Redemption Payments with money that came from other subscriptions.  Thus, many Redemption Payments were made using money that was never placed with BLMIS in New York at all.  *See* FAC ¶ 130 (alleging that subscription money was used to pay redemptions as a "shortcut").  The law does not support the Liquidators' expansive view that an investment company can sue its investors in any jurisdiction where that investment company itself decides to make investments.

## III.    The Exercise of Personal Jurisdiction over UBS Jersey Would Not Comport with Constitutional Due Process

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that

allows potential defendants to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit.") (citation omitted).

As demonstrated above, the Liquidators fail to allege that Citco's Brokerage Customers had any contacts whatsoever with the United States relating to the Liquidators' remaining claim to impose a constructive trust on the Redemption Payments. Accordingly, the exercise of personal jurisdiction over Citco's Brokerage Customers, including UBS Jersey, would not comport with due process. *See Walden*, 571 U.S. at 286 ("Due Process requires that a defendant be haled into court in a forum state based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985))).

Moreover, given the dearth of jurisdictionally significant contacts alleged by the Liquidators, it would be unreasonable to subject Citco's Brokerage Customers to jurisdiction in this Court under the circumstances present here. Courts apply a "sliding scale" in assessing whether jurisdiction is consistent with due process: "the weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction." *In re CIL Limited*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) (internal quotation omitted); *see also Porina v. Marward Shipping Co.*, 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make a stronger showing of reasonableness in order to show that jurisdiction over the defendant is proper."). In evaluating the reasonableness of exercising personal jurisdiction, "[a] court must consider the burden on defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi*, 480 U.S. at 113.

In this case, the relevant factors point uniformly toward the conclusion that exercising jurisdiction over UBS Jersey and the other Citco's Brokerage Customers would contravene the reasonableness requirement of constitutional due process. The United States has a minimal (if any) interest in this litigation, which involves only foreign-law claims asserted as between exclusively foreign parties relating to assets located overseas and business transacted overseas by investment Funds organized under foreign law. *See, e.g.*, *In re Fairfield Sentry Ltd.*, 458 B.R. 665, 685 (S.D.N.Y. 2011) (Preska, J.). Moreover, UBS Jersey would bear a heavy burden if it were forced to litigate the Liquidators claim in this Court, thousands of miles from its home jurisdiction, including because all virtually of the key evidence and witnesses relevant to the Liquidators' claim against UBS Jersey are located overseas—principally in Jersey and nearby European jurisdictions that are also thousands of miles from this Courthouse.[22] And the Liquidators cannot identify any reason—other than their own desire to engage in forum shopping after receiving adverse rulings from the BVI courts—why it is reasonable to litigate these BVI-law claims involving exclusively non-U.S. litigants in the U.S. bankruptcy courts rather than the Funds' home courts in the BVI. *See Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021) (noting that jurisdiction had been found improper where "the plaintiffs were engaged in forum-shopping").

---

[22] Providing discovery in connection with the Citco Brokerage Proceedings could also potentially subject UBS Jersey to violations of privacy or confidentiality obligations in its home jurisdiction. Although UBS Jersey is mindful of the Court's recent instructions that discovery in these cases should proceed in accordance with the Federal Rules of Civil Procedure, UBS Jersey further believes that the Federal Rules of Civil Procedure and related principles of federal law afford foreign litigants rights to seek protection against discovery under appropriate circumstances, including but not limited to (1) where a plaintiff has failed to propound sufficient allegations to justify the assertion of jurisdiction over a foreign defendant, or even a sufficient start toward such showing to warrant the imposition of discovery obligations on such defendant, and (2) principles of international comity weigh against subjecting a foreign defendant to discovery obligations in a U.S. legal proceeding. UBS Jersey respectfully reserves its rights to seek any such relief at an appropriate time.

Courts have repeatedly held that defendants should be dismissed in circumstances like this, where, even assuming "Defendants' contacts with [the forum] only 'barely satisf[y] the minimum contacts standard,'" a "majority of the reasonableness factors weigh against the exercise of jurisdiction." *E.g.*, *Rocky Mountain Chocolate Factory v. Arellano*, 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017) (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004)); *Benton*, 375 F.3d at 1080 (The defendant's "contacts with [the forum] were quite limited, barely satisfying the minimum contacts standard.  As a result, [the defendant] need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry.  Because the majority of the . . . reasonableness factors weigh in [the defendant's] favor, . . . exercise of personal jurisdiction . . . would offend traditional notions of fair play and substantial justice."); *Manko Window Systems, Inc. v. Prestik*, 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017) ("[B]ecause [Defendant's] contacts with Kansas are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction, the Court grants Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).").  The same result is warranted here.

## <u>CONCLUSION</u>

For the foregoing reasons, the Liquidators' Citco Brokerage Proceedings should be

dismissed with prejudice under Rule 12(b)(2) for failure to allege personal jurisdiction over UBS

Jersey.

Dated: New York, New York          Respectfully submitted,
       October 29, 2021          GIBSON, DUNN & CRUTCHER LLP

                                 By:   /s/ *Marshall R. King*
                                     Marshall R. King
                                     (mking@gibsondunn.com)
                                     Gabriel Herrmann
                                     (gherrmann@gibsondunn.com)

                                   200 Park Avenue
                                   New York, NY 10166-0193
                                   Tel.: (212) 351-4000

                                   *Attorneys for Defendant*
                                   *UBS Jersey Nominees Limited*

**TABLE 1**

| No. | Action | Allegations | |
|---|---|---|---|
| 1 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Theodoor GGC Amsterdam, et al.*, 10-ap-03496-CGM (Bankr. S.D.N.Y.) | " . . . and maintaining bank accounts in the United States at Citibank NA, and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts." Dkt. No. 1463-1 ¶ 19. | Identifying "Citibank NA, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id.* Ex. A. |
| 2 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Sudameris, et al.*, 10-ap-03749-CGM (Bankr. S.D.N.Y.) | " . . . maintaining bank accounts in the United States at Intesa BCI and Banca Intesa SpA, and in fact receiving Redemption Payments in those United States-based accounts." Dkt. No. 16 ¶ 20. | Identifying "Intesa BCI New York, New York" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id.* Ex. A. |
| 3 | *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Privee Edmond De Rothschild (Eur.), et al.*, 10-ap-03505-CGM (Bankr. S.D.N.Y.) | " . . . and maintaining bank accounts in the United States at Bank of new York and Wachovia Bank NA and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts. Banque Privee and the Beneficial Shareholders selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption payments at issue in this action into those bank accounts." Dkt. No. 82 ¶ 19. | Identifying "Wachovia Bank NA, New York, NY" as the "Bank Account to Which Redemption Payment Was Made, Per Shareholder Direction." *Id.* Ex. A. |

23