UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>   Debtor in Foreign<br>   Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN<br>LIQUIDATION), et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>   Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN<br>LIQUIDATION), et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>   Defendants. | Adv. Pro. No. 10-03635 (CGM) |

## STIPULATION AND ORDER GOVERNING THE
## EXCHANGE OF ELECTRONICALLY STORED INFORMATION

   Upon agreement of the Parties for entry of an order establishing a protocol for the exchange

and production of documents in hard-copy format ("Documents") and electronically stored infor-

mation ("ESI"), as those terms are used in the Federal Rules of Bankruptcy Procedure and portions

of the Federal Rules of Civil Procedure made applicable thereby, Kenneth M. Krys and Greig

Mitchell, individually or collectively, in their capacities as the duly appointed Liquidators and

Foreign Representatives of Fairfield Sentry Limited (In Liquidation), Fairfield Sigma Limited (In

1

Liquidation), and Fairfield Lambda Limited (In Liquidation) and the undersigned defendants ("De-fendants") (each a "Party" and, collectively, the "Parties") hereby stipulate ("ESI Stipulation") and the Court orders as follows:

## I.     GENERAL PROVISIONS

A.     The Parties[1] and non-parties producing Documents and ESI (each a "Producing Party") shall prepare their Documents and ESI for production to any Party receiving the production (each a "Receiving Party") in accordance with this ESI Stipulation.

B.     If a provision of this agreement conflicts with the terms of the Stipulation and Order for the Production and Exchange of Confidential Information ("Confidentiality Stipulation") previously entered in Adversary Proceeding No. 10-03635 (the "Action"), the Confidentiality Stipulation will control absent further order of the Court.

## II.    FILTERING OR CULLING TECHNOLOGIES

A.     Other than using standard discovery tools and methodologies, including but not limited to De-NIST global deduplication, file type culling, email threading, or thread suppression, etc., prior to use by any Producing Party, the Producing Party and the Receiving Parties must meet and confer to disclose and discuss any other proposed use of predictive coding technologies (*i.e.*, technology assisted review – "TAR") that would reduce the reviewable collection or production. Each Producing Party shall retain the presumptive right and responsibility to manage and control searches of its data files, including the right to use predictive coding or TAR technologies.  Use of such technologies to reduce the reviewable collection or production, other than as described herein, will be subject to a separate mutually agreeable protocol for the use of such technologies to be negotiated with the Receiving Parties.  The Parties shall meet and confer in good faith regarding

---

[1] Defined terms in the Confidentiality Stipulation not otherwise defined herein are incorporated.

any such protocol, and shall promptly bring any unresolved disputes regarding such protocol to the Court for resolution (any such request for relief to be made in compliance with, without limitation, the laws of the United States, the Federal Rules of Bankruptcy Procedure or Federal Rules of Civil Procedure made applicable thereby, the Local Rules of the United States Bankruptcy Court for the Southern District of New York, chambers rules, and individual practices (together, the "Applicable Rules")).

B.       Notwithstanding this provision, the Producing Party and the Receiving Parties shall work collaboratively and shall not withhold consent to the use of technologies, or impose any burdensome disclosure or reporting requirements associated with those technologies, that would reasonably mitigate the burden of production on a producing party. Whatever technology is used, the Producing Party retains the responsibility of complying with the discovery obligations of Rule 34 of the Federal Rules of Civil Procedure.

## III.    PRODUCTION OF DOCUMENTS

A.       <u>TIFFs</u>. Producing Parties shall produce Documents in the form of single-page, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain Original Document orientation (*i.e.,* portrait to portrait and landscape to landscape) as technically reasonable. They shall provide TIFF image files in a self-identified "Images" folder.

B.       <u>OCR Text Files</u>. Producing Parties shall provide Optical Character Recognition ("<u>OCR</u>") text files as a multi-page file for each Document. They shall name each file with the beginning Bates number assigned to its corresponding Document, followed by .txt. They shall provide OCR text files in a self-identified "Text" directory. To the extent that a Document is

redacted, they shall produce OCR text files for that Document that shall not contain text for redacted portions.

C.    <u>Database Load Files/Cross-Reference Files</u>**.** Unless otherwise agreed by the Receiving Parties, Producing Parties shall provide Documents with Concordance-compatible image and data load files (*i.e.,* .OPT and DAT files) using standard Concordance delimiters. They shall provide Concordance-compatible image and data load files *(i.e.,* .OPT and DAT files) in a self-identified "Data" folder.

D.    <u>Coding Fields</u>. The metadata and coding fields set forth in Table I that can reasonably, reliably, and technically be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Table I if such fields cannot be extracted from a Document and its context in the source data, with the exception of the following, (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodian, (6) OCRTextPath, (7) Confidentiality, and (8) Source. When a Producing Party determines in good faith judgment that it is practicable to accompany Documents with other metadata fields in Table I, the Producing Party shall produce those Documents with the practicable metadata fields. Producing Parties shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." Producing Parties shall use a uniform description of a particular custodian, and separate multiple custodians in the "All Custodians" field by a semicolon.  For documents with no individual custodian (*e.g.,* centralized files, document management systems), Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field and (b) identify the source of the documents in the "Source" field.  Nothing herein shall require a Producing Party to populate any coding field with information that is privileged or subject to a data protection or privacy obligation.

E.      <u>Bates Numbering</u>. Producing Parties shall assign each TIFF image a Bates number that: (1) is unique across the entire production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters (other than hyphens or underscores) or embedded spaces; and (4) is sequential within a given Document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

F.      <u>Parent-Child Relationships</u>. Producing Parties shall preserve parent-child relationships (*i.e.*, the association between an attachment and its parent Document), to the extent they exist in the manner in which the Documents are maintained in the ordinary course of business, except that otherwise non-responsive family members of a responsive Document that contain Privileged Material, Personal Data, or Protected Information may be withheld if redaction of such otherwise non-responsive family members would subject the Producing Party to substantial burden or expense.  For example, if a Producing Party produces a printout of an email with its attachments, it shall produce such attachments behind the email in the order in which they were attached.

G.      <u>Color</u>. Producing Parties need not, in the first instance, produce Documents containing color in color format. The Receiving Party may request production of such Documents in color format by (1) providing a list of the Bates numbers of the Document(s); and (2) explaining the need for production of the Documents in color format. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

H.      <u>Unitizing of Documents</u>. A Producing Party shall not, when scanning Documents: (1) merge distinct Documents into a single record; or (2) split single Documents into multiple records (*i.e.*, Documents should be logically unitized).

## IV.    PRODUCTION OF ESI

A.    <u>TIFFs</u>. Producing Parties shall produce ESI in the form of single-page, black and white, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain original document orientation (*i.e.*, portrait to portrait and landscape to landscape) as technically reasonable. They shall provide TIFF image files in a self-identified "Images" folder.

B.    <u>System Files</u>. Producing Parties need not process, review, or produce common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production).

C.    <u>De-Duplication</u>. Producing Parties need produce only a single copy of responsive ESI, and may, but need not, de-duplicate responsive ESI across custodians with MD5 or SHA-1 hash values at the parent level. However, a Producing Party:

1.    shall not eliminate attachments from their parent emails;

2.    shall list in the "All Custodians" field the identity of other custodians of de-duplicated items of the copy of the single record that is produced; and

3.    shall identify custodians as set forth in Section III. E "Metadata Fields and Processing.

If a Producing Party identifies additional duplicate ESI, the Producing Party may use a custom de-duplication protocol; <u>provided</u>, however, that the Producing Party disclose the terms of that protocol with the Receiving Parties before implementing it. To the extent feasible, Producing Parties shall provide overlays to allow custodian information to be updated with rolling ESI and Document collections so that every custodian who possessed particular ESI or Documents, irrespective of deduplication, is reflected in that ESI's or Document's metadata.

D.    <u>Parent-Child Relationships</u>. Producing Parties shall preserve parent-child relationships (*i.e.*, the association between an attachment and its parent file), except that otherwise non-responsive family members of responsive ESI that contain Privileged Material, Personal Data, or Protected Information may be withheld if redaction of such otherwise non-responsive family members would subject the Producing Party to substantial burden or expense.

E.    <u>Metadata Fields And Processing</u>. Producing Parties shall produce each of the metadata and coding fields set forth in Table I that can be extracted from ESI for that ESI. They are not obligated to populate manually any of the fields in Table I if such fields cannot be extracted from the ESI, except for the following: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodian, (6) NativeLink, (7) Confidentiality, (8) Parent ID fields (which the Producing Party or its vendor may populate), and (9) Source. They shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." A Producing Party shall use a uniform description of a particular custodian and separate multiple custodians by a semicolon in the "All Custodians" field. For documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field. and (b) identify the source of the documents in the "Source" field.   Nothing herein shall require a Producing Party to create or produce metadata that does not exist or is not reasonably, reliably, or technically accessible or that would contain information that is privileged or subject to a data protection or privacy obligation.  Nothing in this Stipulation shall require any Producing Party to re-process or recollect ESI or Documents that have been processed, collected, or produced prior to the date of this ESI Stipulation for use in this action, any prior or concurrent action, or any other proceeding. To the extent that a Party collected, processed and/or produced ESI or Documents prior to the

Parties' agreement to this ESI Stipulation and production of such ESI or Documents cannot be made in accordance with the terms of this ESI Stipulation without recollection, reprocessing, or reproduction, the Parties agree that those prior collections, processing and/or productions shall be sufficient for this matter and shall not require any recollection, reprocessing, or reproduction. Notwithstanding the preceding sentence, the Parties reserve the right to request recollection or reprocessing of Documents or ESI produced in a format that, at the time of its production in this Action, is not able to be loaded and reviewed in an industry standard document review platform after reasonable efforts are undertaken by the Receiving Party, and the Producing Party reserves all rights to object to any recollection or reprocessing.  The Parties shall meet and confer on any such objection.

 F. <u>Extracted Text Files</u>. For all ESI (other than multimedia or graphic files), Producing Parties shall provide an extracted text file along with its corresponding TIFF image file(s) and metadata. They shall name each extracted text file such that it is identical to that of the first image page of its corresponding file, followed by .txt. They shall not use file names that contain special characters or embedded spaces and shall extract the text of native files directly from the native file. If a file contains redactions, however, the Producing Party may provide OCR of the redacted file in lieu of extracted text.

 G. <u>Database Load Files/Cross-Reference Files</u>. Unless otherwise agreed to by the parties, Producing Parties shall include in each production (1) a metadata file (DAT file) using standard Concordance delimiters or carat pipe delimiters and (2) an image load file in Opticon format (.OPT file). They shall provide in a self-identified "Data" folder Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files).

 H. <u>Native Files</u>. The following governs the production of native files.

1.      Producing Parties shall produce PowerPoint presentations, large diagrams, audio files, video files, Excel or other spreadsheet files and/or .csv files in native format ("Native Files"), unless they have redactions.

2.      Producing Parties shall provide native files in a self-identified "Natives" directory. Producing Parties shall produce each native file with a corresponding single-page TIFF placeholder image, which shall state "PRODUCED IN NATIVE FORMAT" (or similar language) and provide the Confidentiality Designation, if any. Producing Parties shall name each native file with the beginning Bates number that is assigned to that specific record in the production.

3.      Producing Parties shall include a "NativeLink" entry for each native file in the .DAT load file indicating the relative file path to each native file on the production media. Producing Parties shall produce native files with extracted text and applicable metadata fields as set forth in Paragraphs IV.E and IV.F. To the extent that Native Files are to be produced in redacted form, Producing Parties may either redact the Native File format or produce redacted files with TIFF image files and OCR in lieu of a Native File, TIFF placeholder image, and extracted text file. Producing Parties shall exclude any metadata fields for redacted files that would reveal privileged information.

4.      Each Producing Party shall make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted native files that are produced as TIFF image files and ensures that redacted native files will be formatted to be readable. (For example, column widths should be formatted so that numbers do not appear as "########").

I.      Structured Data. To the extent that responding to a discovery request requires production of ESI contained in a database, a Producing Party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable Excel or .csv format. The first line of each such file will, to the extent not unduly burdensome, show the column headers for each field of data included. This ESI Stipulation does not obligate the Producing Party to create reports in a format not available during the period covered by the relevant request or to provide information that is privileged or subject to a data protection or privacy obligation. The Producing Party and Receiving Parties shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a

database. The Parties reserve all rights to object to the production of structured data or reports generated therefrom, including but not limited to objections for relevance, undue burden, and/or inaccessibility.

J.    Requests for Other Native Files. Other than as specifically set forth above, a Producing Party need not produce ESI in native format. The Receiving Party may request production in native format by (1) providing a list of the Bates numbers of ESI it requests to be produced in native format; and (2) explaining the need for reviewing such ESI in native format. The Producing Party shall comply with reasonable requests to produce in response to such request each native file with corresponding production number fields and a "NativeLink" entry in the DAT load file indicating the relative file path to each native file on the production media, all extracted text (other than for multimedia or graphic files), and applicable metadata fields set forth in Table I, provided that compliance with any such requests shall not cause the Producing Party undue burden. For the avoidance of doubt, ESI that is redacted need not be produced in native format.

K.    Confidentiality Designations. If a Producing Party reduces native files or other ESI designated "Highly Confidential Information" or "Confidential Information," as defined by the Confidentiality Stipulation, to Document form, it shall mark the Document with the appropriate designation. The failure of a Producing Party to mark any such Document with the appropriate designation shall not affect such Document's designation as "Highly Confidential Information" or "Confidential Information." Producing Parties shall produce all ESI designated as "Highly Confidential" or "Confidential" with the designation in the metadata field pursuant to Table I and in the ESI itself.

L.    Redactions. Where a Producing Party redacts ESI pursuant to an assertion of privilege, data protection obligation, or privacy obligation, metadata fields will be provided by the

Producing Party for such ESI to the extent practicable and will include as much non-redacted data as practicable without waving any privilege claims or violating any data protection or privacy obligation.  Documents redacted based on an assertion of privilege, data protection obligation, or privacy obligation shall be identified by the Producing Party as such in the load file provided with the production.  Neither Party waives any right to challenge the propriety of redactions according to the process provided by the Confidentiality Stipulation.

M.    <u>Embedded Files.</u>  A Producing Party may exclude non-substantive embedded files (e.g., company logos in email signature blocks) from production.

N.    <u>Time Zone</u>. To the extent practicable, Producing Parties shall produce all ESI normalized to Coordinated Universal Time (UTC).

## V.    PROCESSING OF THIRD-PARTY DOCUMENTS

A.    A Party that issues a non-party subpoena ("<u>Issuing Party</u>") shall include a copy of this ESI Stipulation with the subpoena and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein. If an Issuing Party issued a non-party subpoena prior to the execution of this ESI Stipulation, that Issuing Party shall promptly forward a copy of this ESI Stipulation to the non-party and request that the non-party produce Documents and ESI in accordance with the specifications set forth herein.

B.    The Issuing Party is responsible for producing to all other Receiving Parties any Documents and/or ESI obtained pursuant to a subpoena. If a non-party refuses to produce Documents and/or ESI in accordance with the specifications set forth here, the Issuing Party has no obligation to conform the non-party's production to such specifications.

C.    Nothing in this ESI Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

## VI.    PRIVILEGE LOG

A.    The Parties to an Action shall meet and confer on the frequency of and timing for privilege logs. Privilege logs shall contain the information called for by Rule 26(b)(5) of the Federal Rules of Civil Procedure, made applicable by Rule 7026 of the Federal Rules of Bankruptcy Procedure, except as otherwise provided in paragraph VI.B. The Parties agree to negotiate the format of their privilege logs, no later than the parties' deadline for substantial completion of document production.  The Parties agree that, when asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the required information by group or category, and that a party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing may not object solely on that basis, but may object if the substantive information required by this ESI Stipulation has not been provided in a comprehensible form.

B.    The Parties need not include on any privilege log:

1.    Otherwise responsive communications solely between a Party and its counsel (or among jointly-represented Parties and their counsel) that post-date the filing of these actions;

2.    Any internal communications within a law firm;

3.    Any communications regarding litigation holds or preservation, collection, or review of Documents in the Action;

4.    Entries in respect of redactions applied to obscure Personal Data; or

5.    Legal work product prepared by counsel for purposes of defending against the claims in these cases, and communications regarding any such work product.

## VII.    CONFIDENTIAL TREATMENT; CLAW-BACK PROCEDURE; 502(d) ORDER

A.    This stipulation is entered pursuant to Rule 502(d) of the Federal Rules of Evidence and subject is to the provisions of the Confidentiality Stipulation, including without limitation the provisions therein governing treatment of Privileged Material, Personal Data, and Protected Information. The provisions of the Confidentiality Stipulation, including without limitation paragraphs 17-20 thereof, are hereby incorporated into this ESI Stipulation by reference.

## VIII.    MISCELLANEOUS PROVISIONS

A.    This ESI Stipulation is intended solely to address the format of Document and ESI productions. Nothing in this ESI Stipulation is intended to affect the rights of any Party to object to any requests or demand for production on any grounds. Nothing in this ESI Stipulation shall constitute, or operate as, a waiver of any rights of any Party to object to, or to avoid, discovery or disclosure, in whole or in part, under the Applicable Rules.  Without in any way limiting the scope of the foregoing sentences of this paragraph, the Parties hereby expressly acknowledge and agree that nothing in this ESI Stipulation shall constitute, or operate as, a waiver of any rights any Party may have concerning requests for discovery of information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common common-interest doctrines, domestic or foreign bank-disclosure or data-privacy laws or regulations or other privacy obligations, and/or any other applicable domestic or foreign statute, law, regulation, privilege, or immunity, or protection against disclosure, including without limitation sensitive personally identifiable information or other information subject to the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq. (financial information); the California Consumer Privacy Act (California Civil Code, § 1798.100); the Directive 95/46/EC of the European Parliament and the Council of 24 October 1995 on the Protection of Individuals with Regard to the Processing of Personal Data and on the

Free Movement of Such Data, 1995 O.J. (L281/31) (EU Data Protection Directive); Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 (General Data Protection Regulation); Data Protection Act 2018 (c. 12) and Opinion 4/2007 issued by the Article 29 Data Protection Working Party (United Kingdom personal information); Bermuda's Personal Information Protection Act 2016 (PIPA) (Bermuda personal information); Data Protection Act 2018 (Ireland data protection); Datenschutzgesetz of 4 October 2018 (DSG-FL) (Liechtenstein data protection); Article 14 of the Law of 21 October 1992 regarding Banks and Securities Firms (Liechtenstein banking law); Articles 162, 271, and 273 of the Swiss Criminal Code, Article 47 of the Swiss Federal Act on Banks and Savings Banks, Article 328b of the Swiss Code of Obligations, the Swiss Federal Act on Data Protection of June 19, 1992, Article 69 of the Swiss Financial Institutions Act, Article 147 of the Swiss Financial Market Infrastructure Act, and related ordinances and regulations (Switzerland data protection, bank secrecy, and business and professional secrecy obligations), in each case as such is amended from time to time; Article 41 of the Luxembourg Law of April 5, 1993 on the Financial Sector, as amended, and Article 458 of the Luxembourg Penal Code (Luxembourg bank secrecy); Article 38 of the Austrian Banking Act (Bankwesengesetz) of 1993, BGBl. No. 532/1993, as amended (Austrian bank secrecy law); any other foreign or domestic data protection laws or regulations; and any other foreign banking secrecy laws or regulations.

B.      By entering into this Protocol, the Parties do not waive, and shall not be deemed to have waived, any objections that the Court lacks personal jurisdiction over any Party or claim, and/or that any request for discovery is improper, unauthorized, or premature on the ground that personal jurisdiction over the Defendant from whom such discovery is sought has not adequately been pleaded, proved, or determined by a Court of competent jurisdiction.

C.    Nothing in this ESI Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI.  This ESI Stipulation does not govern the appropriate scope of discovery under Rule 26(b)(1) (including, without limitation as to selection of custodians and sources of discovery or implementation of search methods and parameters).  Nothing in this ESI Stipulation shall be interpreted to impose any obligation inconsistent with the requirements of the Applicable Rules, or to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

D.    The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Stipulation. If a Producing Party, notwithstanding such good faith efforts, cannot comply with any material aspect of this ESI Stipulation or if compliance with such material aspect would be impossible, unreasonable, impracticable, or unduly burdensome, such Producing Party shall as soon as is reasonably practicable inform the Receiving Party in writing as to why compliance with the Stipulation is impossible, unreasonable, impracticable, or unduly burdensome.

E.    Nothing herein shall preclude any Producing Party from producing documents in an alternative format not contemplated herein upon the written consent of the Receiving Party.

F.    Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect the discovery obligations of any Party or non-party.

G.    Any application to the Court under or regarding this ESI Stipulation shall be made pursuant to and in compliance with the Applicable Rules.

Dated: New York, New York
         February 14, 2022

By:  */s/  David Elsberg*
────────────────────────────
SELENDY & GAY PLLC

David Elsberg
Lena Konanova
Jordan Garman
Ronald Krock
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
delsberg@selendygay.com
lkonanova@selendygay.com
jgarman@selendygay.com
rkrock@selendygay.com

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for Plaintiffs Foreign Represent-*
*atives*

By:  */s/ John F. Zulack*
────────────────────────────
ALLEGAERT BERGER & VOGEL
LLP

John F. Zulack
Christopher Allegaert
Lauren Pincus
Bianca Lin
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550
jzulack@abv.com
callegaert@abv.com
lpincus@abv.com
blin@abv.com

*Attorneys for Defendants Banque Cantonale*
*Vaudoise; BCV AMC Defensive Alt Fund,*
*acting by and through its manager, GERI-*
*FONDS SA; CBH Compagnie Bancaire Hel-*
*vétique SA; Edmond de Rothschild (Suisse)*
*S.A (sued as Rothschild Bank Geneva (Dub-*
*lin)), individually and as successor-in-inter-*
*est to Sella Bank AG and defendant Roth-*
*schild Lugano Dublin a/k/a Banca Privata*
*Edmond de Rothschild Lugano S.A.; and*
*Rothschild Bank AG Zurich (Dublin) a/k/a*
*Rothschild Bank AG*

By:  */s/ John F. Zulack*
────────────────────────────
ALLEGAERT BERGER & VOGEL
LLP

John F. Zulack
Christopher Allegaert
Lauren Pincus
Bianca Lin
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550

By:  */s/ John F. Zulack*
────────────────────────────
ALLEGAERT BERGER & VOGEL LLP

John F. Zulack
Christopher Allegaert
Lauren Pincus
Bianca Lin
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550
jzulack@abv.com

jzulack@abv.com
callegaert@abv.com
lpincus@abv.com

- and –

MAYER BROWN LLP

Christopher Houpt
Steven Wolowitz
Bradley A. Cohen
1221 Avenue of the Americas
New York 10020-1001
(212) 506-2380
choupt@mayerbrown.com
swolowitz@mayerbrown.com
bacohen@mayerbrown.com

*Attorneys for Defendant Société Générale
Bank & Trust (n/k/a Société Générale
Luxembourg)*

callegaert@abv.com
lpincus@abv.com

- and –

MAYER BROWN LLP

Marc Cohen
1999 K Street, NW
Washington, DC 20006-1101
(202) 263-3206
mcohen@mayerbrown.com

Mark Hanchet
Kevin Kelly
1221 Avenue of the Americas
New York, New York 10020
mhanchet@mayerbrown.com
kkelly@mayerbrown.com

*Attorneys for Defendant Banque Lombard
Odier & Co Ltd (sued as Lombard Odier
Darier Hentsch & Cie)*

By:  */s/ Lisa M. Schweitzer*
CLEARY GOTTLIEB STEEN &
HAMILTON LLP

Lisa M. Schweitzer
Ari D. MacKinnon
Thomas S. Kessler
One Liberty Plaza
New York, NY 10006
T: 212-225-2000
lschweitzer@cgsh.com
amackinnon@cgsh.com
tkessler@cgsh.com

*Attorneys for Defendants BNP Paribas
(Suisse) SA; BNP Paribas (Suisse) SA Ex
Fortis; and BNP Paribas (Suisse) SA Private*

By:  */s/ Erin E. Valentine*
CHAFFETZ LINDSEY LLP

Erin E. Valentine
Andreas Frischknecht
1700 Broadway, 33rd Floor
New York, NY 10019
(212) 257-6960
a.frischknecht@chaffetzlindsey.com
e.valentine@chaffetzlindsey.com

*Attorneys for Defendants SIS Seeganintersettle
and SIX SIS Ltd.*

By:  */s/ Rachel Polan*
CLEARY GOTTLIEB STEEN &

By:  */s/ Jeff E. Butler*
CLIFFORD CHANCE US LLP

17

HAMILTON LLP

| | |
|---|---|
| Elizabeth Vicens | Jeff E. Butler |
| Rachel Polan | Ernie Gao |
| One Liberty Plaza | La Tise Tangherlini |
| New York, New York 10006 | 31 West 52nd Street |
| T: 212-225-2000 | New York, NY 10019 |
| F: 212-225-3999 | (212) 878-8000 |
| evicens@cgsh.com | Jeff.Butler@CliffordChance.com |
| rpolan@cgsh.com | Ernie.Gao@CliffordChance.com; |
| | LaTise.Tangherlini@CliffordChance.com |

*Attorneys for Defendant Caceis Bank Luxembourg*

*Attorneys for Defendant Banque Internationale à Luxembourg*

By:  */s/ Gabriel Hermmann*
GIBSON, DUNN & CRUTCHER LLP

Marshall R. King
Gabriel Herrmann
200 Park Avenue
New York, NY 10166
T: (212) 351-4000
mking@gibsondunn.com
gherrmann@gibsondunn.com

*Attorneys for Defendants UBS AG and UBS Jersey Nominees Limited*

By:  */s/ Jeffrey Rotenberg*
DLA PIPER LLP (US)

Jeffrey Rotenberg
Rachel Ehrlich Albanese
Cherelle Glimp
1251 Avenue of the Americas
New York, New York 10020-1104
T: (212) 335-4500
F: (212) 335-4501
Jeffrey.Rotenberg@dlapiper.com
Rachel.Albanese@dlapiper.com
Cherelle.Glimp@dlapiper.com

*Attorneys for Defendant Banca Arner SA*

By:  */s/ Scott Balber*
HERBERT SMITH FREEHILLS NEW YORK LLP

Scott Balber
Jonathan Cross
450 Lexington Avenue
New York, NY 10017
T: (917) 542-7600
Scott.Balber@hsf.com
Jonathan.Cross@hsf.com

*Attorneys for Defendant Bank Hapoalim Switzerland Ltd.*

By:  */s/ Stephen M. Harnik*
HARNIK LAW FIRM

Stephen M. Harnik
666 Third Avenue, 10th Floor
New York, New York 10017-4046
T: (212) 599-7575
F: (212) 867-8120
stephen@harnik.com

*Attorney for Defendant Vorarlberger Landes Und Hypothekenbank Aktiengesellschaft*

By:  */s/ Richard A. Cirillo*
CIRILLO LAW

Richard A. Cirillo
246 East 33rd Street #1
New York, NY 10016
917-541-6778
richard@cirillo-law.com

*Attorney for Defendants National Bank of Kuwait and NBK Banque Privee Suisse SA*

By:  */s/ Anthony L. Paccione*
KATTEN MUCHIN ROSENMAN LLP

Anthony L. Paccione
Mark T. Ciani
575 Madison Avenue
New York, NY 10022
T: 212.940.8800
F: 212.940.8776
anthony.paccione@katten.com
mark.ciani@katten.com

*Attorneys for Defendants Coutts & Co. Ltd. (f/k/a RBS Coutts Bank, Ltd.), Lloyds TSB Bank Geneva (n/k/a Lloyds Bank plc), and Harmony Capital Fund Ltd.*

By:  */s/ Christopher Harris*
LATHAM & WATKINS LLP

Christopher Harris
Thomas J. Giblin
1271 Avenue of the Americas
New York, NY 10020
T: (212) 906-1200
F: (212) 751-4864
christopher.harris@lw.com
thomas.giblin@lw.com

*Attorneys for Defendant Union Bancaire Privée, UBP SA (sued as ABN AMRO Schweiz AG a/k/a ABN AMRO (Switzerland) AG)*

By:  */s/ Adam M. Lavine*
KOBRE & KIM LLP

D. Farrington Yates
Adam M. Lavine
Donna (Dong Ni) Xu
800 Third Avenue
New York, New York 10022
T: (212) 488-1200
farrington.yates@kobrekim.com
adam.lavine@kobrekim.com
donna.xu@kobrekim.com

*Attorneys for Defendants EFG Bank AG (a/k/a "EFG Bank SA," f/k/a "EFG Private Bank SA" and also sued as "EFG Bank SA Switzerland"); EFG Bank (Monaco) S.A.M. (f/k/a "EFG Eurofinancier D'Investissements S.A.M." and sued as "EFG Eurofinancier D'Invest MCL"); and BSI AG, individually and as successor-in-interest to Banca del Gottardo (sued as "BSI Ex Banca del Gottardo") and Banca Unione di Credito*

19

By:  */s/ Daniel S. Shamah*
O'MELVENY & MYERS LLP

Daniel S. Shamah
William J. Sushon
Times Square Tower
7 Times Square
New York, NY 10036-6524
T : (212) 326-2000
F : (212) 326-2061
dshamah@omm.com
wsushon@omm.com

*Attorneys for Defendants Clariden Leu Ltd.
and Credit Suisse AG Zurich*

By:  */s/ Emil A. Kleinhaus*
WACHTELL, LIPTON, ROSEN & KATZ

Emil A. Kleinhaus
Angela K. Herring
51 West 52nd Street
New York, NY 10019
T: (212) 403-1332
F: (212) 403-2332
eakleinhaus@wlrk.com
akherring@wlrk.com

*Attorneys for Defendant Banque Pictet & Cie
SA (sued as Pictet & Cie)*

By:  */s/ Heather Lamberg*
WINSTON & STRAWN LLP

Keith R. Palfin
Heather Lamberg
1901 L Street, N.W.
Washington, D.C. 20036-3506
T: (202) 282-5000
F: (202) 282-5100
kpalfin@winston.com
hlamberg@winston.com

*Attorneys for Defendant BBVA (Suisse) SA*

By:  */s/ Eric B. Halper*
MCKOOL SMITH, P.C.

Eric B. Halper
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001
T: (212) 402-9400
F: (212) 402-9444
ehalper@mckoolsmith.com

*Attorney for Defendant Bank Julius Baer &
Co. Ltd*

By:  */s/ Andrew Troop*
PILLSBURY WINTHROP SHAW
PITTMAN LLP

Andrew Troop
Eric Fishman
31 West 52nd Street
New York, NY 10019-6131
T : (212) 858-1000
andrew.troop@pillsburylaw.com
eric.fishman@pillsburylaw.com

*Attorneys for Defendants Falcon Private
Bank and Incore Bank AG*

By:  */s/ Andrew J. Finn*
SULLIVAN & CROMWELL LLP

Jeffrey T. Scott
Andrew J. Finn
125 Broad Street
New York, New York 10004
T: (212) 558-4000
F: (212) 558-3588
scottj@sullcrom.com
finna@sullcrom.com

*Attorneys for Defendant Bank J. Safra
Sarasin AG, f/k/a Bank Sarasin & Cie*

By: */s/ George W. Shuster, Jr.*

WILMER CUTLER PICKERING
HALE AND DORR LLP

George W. Shuster, Jr.
7 World Trade Center
250 Greenwich Street
New York, NY 10007
T: (212) 937-7518
george.shuster@wilmerhale.com

- and –

Benjamin W. Loveland
60 State Street
Boston, MA 02109
T: (617) 526-6000
benjamin.loveland@wilmerhale.com

*Attorneys for Defendants Privatbank IHAG
Zurich AG; PKB Privatbank AG; Corner
Banca SA; and Bank Vontobel AG (as
successor to Finter Bank Zurich)*

By: */s/ Gregory F. Hauser*

WUERSCH & GERING LLP

Gregory F. Hauser
Jascha D. Preuss
100 Wall Street, 10th Floor
New York, New York 10005
T: (212) 509-5050
gregory.hauser@wg-law.com
jascha.preuss@wg-law.com

*Attorneys for Liechtensteinische Landesbank
Aktiengesellschaft (sued here as
Liechtensteinische LB Reinvest AMS); LGT
Bank in Liechtenstein AG (now known as
LGT Bank AG); Dresdner Bank Schweiz (now
known as LGT Bank (Switzerland) Ltd.);
Verwaltungs- und Privat-Bank AG (now
known as VP Bank AG, sued here as*

By: */s/ William A. Maher*

WOLLMUTH MAHER & DEUTSCH LLP

William A. Maher
Fletcher W. Strong
Maxwell G. Dillan
500 Fifth Avenue
New York, New York 10110
T: (212) 382-3300
wmaher@wmd-law.com
fstrong@wmd-law.com
mdillan@wmd-law.com

*Attorneys for Defendants Fairfield
Investment Fund Ltd.; Fairfield GCI Fund
(sued as Fairfield Investment GCI); and FIF
Advanced Ltd.*

*Verwaltungs und Privat-Bank AG
Aktiengesellschaft (AMS)); and Centrum
Bank AG (now part of VP Bank AG, sued
here as Centrum Bank AG (AMS))*

/s/ Cecelia G. Morris

Dated: **February 16, 2022**
**Poughkeepsie, New York**



**Hon. Cecelia G. Morris
Chief U.S. Bankruptcy Judge**

22