# APPENDIX B

## APPENDIX B
Index of Letter Exhibits Regarding Preservation

| Party | Exhibit | Date | Description |
|---|---|---|---|
| The Liquidators | 17 | 09/20/22 | A letter from the Liquidators to the BNP Defendants seeking additional information regarding each entity's preservation policies and the steps each took to preserve ESI. |
| BNP Paribas Fortis (*f/k/a* Fortis Bank SA/NV) | 18 | 10/07/22 | Amended response letter from BNPP Fortis to the Liquidators' 9/20/22 letter. |
| BNP Paribas España (*f/k/a* Fortis Bank (España)) | 19 | 10/07/22 | Amended response letter from BNPP España to the Liquidators' 9/20/22 letter. |
| BNP Paribas Securities Services Luxembourg | 20 | 10/07/22 | Amended response letter from BNPP SSL to the Liquidators' 9/20/22 letter. |
| BNP Paribas (Suisse) SA (*f/k/a* BNP Paribas (Suisse) SA Ex Fortis and BNP Paribas (Suisse) SA Private) | 21 | 10/07/22 | Amended response letter from BNPP Suisse to the Liquidators' 9/20/22 letter. |
| BGL BNP Paribas S.A. (*f/k/a* BNP Paribas Luxembourg SA) | 22 | 10/07/22 | Amended response letter from BGL BNPP to the Liquidators' 9/20/22 letter. |
| BNP Paribas Securities Nominees Ltd. (*a/k/a* Harrier Holdings Ltd.) | 23 | 10/07/22 | Amended response letter from BNPP Sec. Nom. to the Liquidators' 9/20/22 letter. |

# Exhibit 17

Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

selendy
gay
elsberg

Joshua S. Margolin
Partner
212.390.9022
jmargolin@selendygay.com

September 20, 2022

**Via E-mail**

Thomas S. Kessler
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
tkessler@cgsh.com

Re:    *In re Fairfield Sentry Ltd. (In Liquidation),* Case Nos. 10-3626,
       10-3627, 10-3635, 10-3636, 10-4098, 10-4099, 11-1579, 11-1617, 12-
       1551

Dear Tom,

We write on behalf of the Liquidators in response to your e-mail
correspondence dated September 9, 2022, and September 16, 2022, regarding the
Liquidators' jurisdictional discovery requests to BGL BNP Paribas S.A., BNP
Paribas Securities Services Luxembourg ("BNPP SSL"), BNP Paribas Arbitrage
SNC, BNP Paribas Private Bank & Trust Cayman Limited, BNP Paribas (Suisse) SA
(f/k/a BNP Paribas (Suisse) SA Ex Fortis and BNP Paribas (Suisse) SA Private)
("BNPP Suisse"), BNP Paribas Securities Nominees Limited, Fortis Bank, SA/NV
("BNPP Fortis"), and BNP Paribas España (together, the "BNPP Defendants"), and
the third-party subpoena issues to BNP Paribas New York ("BNPP-NY").

I.    **BNPP Defendants**

A.    **BNPP Suisse E-Mail Deficiency**

We have reviewed the "Data Retention Narrative" (the "Narrative") you
provided regarding your search of BNPP Suisse's records for ESI from the
identified custodians during the relevant time period (2002-2008). Given that you
have found no ESI from this period, it important for us to understand why e-mails,
which your Narrative concedes may have existed, no longer do.

Accordingly, we request the following information:

Thomas S. Kessler, Esq.
September 20, 2022

1.    **What ESI Could Have Been Preserved and What ESI Was Preserved?**

a.    What were BNPP Suisse's ESI preservation policies during the relevant time period and will BNPP produce records sufficient to show the terms of those policies?

b.    Your Narrative raises the existence of an "online portal" by which BNPP Suisse personnel communicated. Were communications through this "online portal" also subject to the BNPP Suisse ten-year data retention policy? Was any of this ESI preserved pursuant to that policy?

c.    What repositories of ESI from the relevant time period (2002-2008) are currently maintained by BNPP Suisse? What types of ESI are stored in each repository? And has BNPP Suisse searched each repository for ESI responsive to the Liquidators' jurisdictional discovery requests?

d.    Will BNPP Suisse produce organizational charts for the relevant time period?

e.    Was ESI preserved during (what we understand to be) the integration of BNP Paribas (Suisse) SA Ex Fortis and BNP Paribas (Suisse) SA Private into BNPP Suisse? Were the policies and practices regarding ESI preservation the same at these organizations as at BNPP Suisse? If not, how did they differ?

2.    **When Did BNPP Suisse Anticipate Litigation Regarding BLMIS, Fairfield, and/or the Liquidators' Claims?**

a.    When and how did BNPP Suisse learn that BLMIS had been publicly revealed to be a fraud?

b.    When and how did BNPP Suisse receive notice that the Liquidators were pursuing claims against BNPP Suisse?

c.    When, if ever, did BNPP Suisse adjust its standard document preservation policies to preserve evidence related to (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?

Thomas S. Kessler, Esq.
September 20, 2022

**3.** **What Steps Did BNPP Suisse Take at the Time It Anticipated Litigation?**

a.  When, if ever, did BNPP Suisse issue a litigation hold regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?  Which of the potential custodians identified (by pseudonym) in BNPP Suisse's Supplemental Responses and Objections, dated May 31, 2022, were subject to a litigation hold and during what period(s) was that litigation hold in effect?  Please identify all counsel involved, if any, in issuing any such litigation hold and all persons responsible for overseeing implementation of the hold instructions.

b.  What were the types and sources of ESI covered by the litigation hold(s), if any, regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?  What steps were BNPP Suisse employees directed to take to preserve ESI pursuant to these holds?  Will BNPP Suisse produce the applicable litigation holds?

c.  Were <u>any</u> e-mails from the relevant time period for the custodians identified in your Supplemental Responses and Objections preserved pursuant to BNPP Suisse's retention policy?  If so, why are those e-mails not available and when were they deleted?

d.  When were e-mail inboxes for the custodians listed in your Supplemental Responses and Objections deleted or destroyed?  Were any such inboxes preserved or backed up?

e.  What additional steps, outside of those documented in litigation holds, did BNPP Suisse undertake to preserve ESI regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions, and when were such steps taken?

**4.** **Can Any Lost ESI Be Replaced?**

a.  Can BNPP Suisse describe in more detail "all available archival sources" it searched to identify e-mail communications?  Did any of these archival sources have **printed** e-mail communications that could be reviewed?

3

Thomas S. Kessler, Esq.
September 20, 2022

      b.     Which BNPP Suisse employees, if any, did you interview regarding their exchange of electronic communications or possession of ESI reflecting communications between BNPP Suisse and BLMIS, Fairfield Greenwich Group, and/or Sentry?

Judge Morris recently emphasized that it is counsel's Rule 26 duty to <u>fully</u> investigate its client's ESI. *See* Sept. 14, 2022 Hr'g Tr. 32:5-7, 34:17-21 ("Who is in charge of IT? Who is the head of IT? Who is the one responsible for retaining the documents? You get me a chain of custody because you yourself cannot testify to that information. And you know it and I know it."). Thus, we ask that BNPP Suisse inform the Liquidators no later than **Friday, September 23** if it agrees to provide responses to all the questions posed above and whether it will do so by **Friday, September 30**. Given the investigation you purport to have undertaken already, this should be ample time to provide this information.

### B.    BNPP SSL and BNPP Fortis E-mail Deficiency

After protracted negotiations, BNPP SSL and BNPP Fortis agreed to broad ESI search terms[1] across 30 and 4 custodians, respectively. Given this, we were very surprised that just **5** (entirely non-substantive) e-mails were produced from BNPP SSL, and just **2** e-mails were produced from BNPP Fortis. During the parties' August 17 meet and confer, the Liquidators informed you that these ESI productions appeared facially deficient. At that time, we requested that BNPP SSL and BNPP Fortis provide, for each entity, the total number of custodial e-mails collected and the total e-mails reviewed after the application of the parties' agreed search terms.

On September 9, you informed the Liquidators that your team reviewed 636 documents for seventeen custodians between the two entities. This information is not responsive to the question we asked. Thus, we ask again: for each of BNPP SSL and BNPP Fortis how many e-mails were collected and how many were reviewed? Please provide this information, which should be readily available, by **Friday, September 23**.

Additionally, as with BNPP Suisse, the absence of virtually any e-mail communications—in this instance from defendants with tens of million in redemptions from Sentry during the lookback period alone—raises legitimate preservation concerns. We repeat the questions posed above regarding BNPP Suisse to BNP SSL And BNPP Fortis, excepting item 1(e). We ask that BNPP SSL and BNPP Fortis inform the Liquidators no later than **Friday, September 23** if

---

[1] For the avoidance of doubt those terms were as follows:
**BNPP SSL**: (i) Fairfield; (ii) Sentry; (iii) Sigma; (iv) Lambda; (v) Madoff; (vi) BMIS; (v) BLMIS; (vi) 10335000188; and, (vii) 10336600106.
**BNPP Fortis**: (i) Fairfield; (ii) Sentry; (iii) Sigma; (iv) Lambda; (v) Madoff; (vi) BMIS; (v) BLMIS; and (vi) 8033248106.

Thomas S. Kessler, Esq.
September 20, 2022

it agrees to provide responses to all the questions posed above and whether they will do so by **Friday, September 30**.

Finally, the Liquidators need to understand how a set of 636 e-mails led to a production of 7 documents—a 1.1% responsiveness rate.   By **Friday, September 23**, please let us know if BNPP SSL And BNPP Fortis are willing to provide a randomly selected sample set of 63 "non-responsive" and non-privileged documents from this set of 636 e-mails.

### C.   Other BNPP Defendants' Missing E-mails

Along with BNPP Suisse, the BNPP Defendants BGL BNP Paribas S.A., BNP Paribas Securities Nominees Limited, and BNP Paribas España represented that they did not have e-mails in their possession to review and produce.   Given this shallow explanation and the subsequent questions regarding the sufficiency of preservation at other BNPP entities, we ask that you provide answers to questions 1-4 posed to BNPP Suisse for (i) BGL BNP Paribas S.A., (ii) BNP Paribas Securities Nominees Limited, and (iii) BNP Paribas España.

As with other defendants, we ask that you inform the Liquidators no later than **Friday, September 23** if BGL BNP Paribas S.A., BNP Paribas Securities Nominees Limited, and BNP Paribas España agree to provide responses to all the questions posed to BNPP Suisse above and whether it will do so by **Friday, September 30**.

## II.   BNPP-NY's Continued Delay in Responding to Subpoenas

The third-party subpoenas to BNPP-NY were initially served on March 21, 2022, in the 10-3626, 10-3627, 10-4098, and 10-4099 actions. At our May 9, 2022 meet and confer, BNPP-NY agreed to provide—at the least—wire records in response to Request 1 of each subpoena. We are now nearly six months after BNPP-NY was served with the subpoenas, and BNPP-NY has yet to even provide a timeline for completion of its production.   Despite the Liquidators asking multiple times, BNPP-NY has not been able to explain why it has been unable to find wire records for accounts at its bank six months after being asked to do so.   Most recently, on September 14, 2022, the Liquidators asked for "an explanation and quantification in support of this increasingly extreme delay."   In its September 16, 2022, BNPP-NY offered no explanation other than its regular refrain that it is working diligently and will complete its productions "if" it identifies relevant records.   This is an unacceptable response.

The implication in BNPP-NY's latest e-mail is clear: it still does not know when its production will be complete and what would constitute a complete response—or is simply unwilling to provide this information.   While the Liquidators are fully amenable to rolling productions, we cannot accept an open-ended timeline.   There has been more than sufficient time to identify and review potentially responsive materials.

Thomas S. Kessler, Esq.
September 20, 2022

Lastly, as raised in the Liquidators' September 14, 2022 e-mail, it remains unclear to which of the four subpoenas the September 9, 2022 production is responsive. We ask that BNPP-NY reproduce the September 9, 2022 wire records to reflect which action the subpoena is responsive to between the 10-3626, 10-3627, 10-4098, and 10-4099 actions. That way, the Liquidators can evaluate whether the transfers in and out correspond to those transfers reflected in the Liquidators' records and those records provided to the Liquidators by the BNPP Defendants.

The Liquidators wish to meet and confer by no later than **September 23, 2022** to understand if BNPP-NY will maintain its position that it does not know when its production will be complete. We ask that someone with intimate knowledge as to the search process join the call to speak to when the request was delivered to BNPP-NY, the number of records that have been reviewed in connection with the Liquidators' requests, and when they expect to be complete. We further ask that BNPP-NY be prepared at that time to provide a firm timeline for final completion. The Liquidators reserve their right to seek prompt relief from the Court should BNPP-NY continue its unjustified delay.

*****

The Liquidators are willing and available to meet and confer on all these requests.


Sincerely,

*/s/Joshua S. Margolin*

Joshua S. Margolin
Partner

# Exhibit 18

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG · BEIJING
BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL · SILICON VALLEY

D: +1 212 225 2243
amackinnon@cgsh.com

CRAIG B. BROD
NICOLAS GRABAR
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE McLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY

MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
AUDRY X. CASUSOL
JOHN A. KUPIEC
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES

RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
RESIDENT PARTNERS

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
RESIDENT COUNSEL

October 7, 2022

<u>VIA EMAIL</u>
Joshua Margolin, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
jmargolin@selendygay.com

Re:    <u>In re Fairfield Sentry Ltd. (In Liquidation), Case No. 11-1617</u>

Dear Joshua:

We write on behalf of Fortis Bank, SA/NV ("<u>BNPP Fortis</u>") in further response to the questions posed in your letter of September 20, 2022 and to supplement the responses we previously provided in our letter of September 30, 2022 (the "<u>September 30 Letter</u>"). For ease of reference, we are including the information previously provided in our September 30 Letter and have bolded any additional or supplemented responses.

The information provided below should not be interpreted as a concession or agreement by BNP that the questions raised by the Liquidators are pertinent to the jurisdictional discovery that has been sought from BNPP Fortis thus far, or that the informal discovery sought in your September 20 letter is proper or appropriate.

As we mentioned during our meet-and-confer of October 3, 2022, the nature and volume of the questions contained in your letter are such that your requested deadline for full and complete responses by October 7, 2022 is unreasonable and unworkable. Nonetheless, we have endeavored to respond to as many of your questions as possible in this letter. As mentioned previously, we will revert as soon as practicable, and in any event prior to October 14, 2022, with responses to the questions that are not answered here.

We note that, consistent with the Liquidators' questions, the responses contained herein exclusively concern ESI except where otherwise indicated. We continue to work with our client to search for any hard copy documents that may exist, including those that may reflect the contents of ESI (e.g., printed copies of email communications).

Joshua Margolin, Esq., p. 2

We further note that the enclosed responses represent our best understanding of the answers to your questions as of today.  We continue to work with our clients to confirm and refine our knowledge regarding all of the issues discussed herein, and will supplement or clarify the enclosed responses as needed as further information becomes available.

We remain willing and available to meet and confer at your convenience.

Sincerely,

*/s/ Ari MacKinnon*

Ari MacKinnon

Joshua Margolin, Esq., p. 3

**<u>Responses on Behalf of BNPP Fortis to Questions Posed in Liquidators' Letter of September 20, 2022</u>**

Question I.A.1.a:  What were [BNPP Fortis]'s ESI preservation policies during the relevant time period and will BNPP [Fortis] produce records sufficient to show the terms of those policies?

<u>Response reflected in the September 30 Letter</u>:  We are working with our client to confirm whether these exist and can be provided. We will provide a final response to this question as soon as reasonably practicable.

**<u>Further response</u>:  We have been unable to identify written document retention policies (concerning email, fax, or other paper communications, and paper or digital documents) for BNPP Fortis that relate to the period June 28, 2004 – December 31, 2008; however, BNPP Fortis personnel were generally required to comply with prevailing law regarding document retention.**

**We understand that the Liquidators have requested more detail regarding the prevailing local laws to which BNPP Fortis was subject during the relevant period, which is a complex and detailed inquiry that is not traditionally within the scope of discovery inquiries.  We are available to meet and confer regarding the relevance of this request.**

Question I.A.1.b.:  Your Narrative raises the existence of an "online portal" by which [BNPP Fortis] personnel communicated. Were communications through this "online portal" also subject to the [BNPP Fortis] ten-year data retention policy? Was any of this ESI preserved pursuant to that policy?

<u>Response reflected in the September 30 Letter</u>:  We are working with our client to confirm whether BNPP Fortis used an online portal during the relevant time periods. We will provide a final response to this question as soon as reasonably practicable.

**<u>Further response</u>:  BNPP Fortis is not aware of any online portal that was used by BNPP Fortis personnel during the relevant period.  We note that the entity currently known as BNPP Fortis was not part of the BNPP group during the relevant period.**

Question I.A.1.c.:  What repositories of ESI from the relevant time period ([2004]-2008) are currently maintained by [BNPP Fortis]? What types of ESI are stored in each repository? And has [BNPP Fortis] searched each repository for ESI responsive to the Liquidators' jurisdictional discovery requests?

<u>Response reflected in the September 30 Letter</u>:  BNPP Fortis maintained documents on a server, which stored personal email correspondence, personal workspaces, and shared drives.  This server, and all relevant categories of data therein, were searched for ESI responsive to the Liquidators' jurisdictional discovery requests.

Joshua Margolin, Esq., p. 4

Question I.A.1.d.:  Will [BNPP Fortis] produce organizational charts for the relevant time period?

Response reflected in the September 30 Letter:  We are working with our client to confirm whether these exist and can be provided.  We will provide a final response to this question as soon as reasonably practicable.

**Further response:  Simultaneous with the delivery of this letter, we have shared a BNPP Fortis organizational chart dated September 29, 2008.**

Question I.A.2.a.:  When and how did [BNPP Fortis] learn that BLMIS had been publicly revealed to be a fraud?

Response reflected in the September 30 Letter:  Our understanding is that newspaper articles mentioning the alleged fraud were published in December 2008, but we have not confirmed whether or exactly when such articles were reviewed by individual BNPP Fortis employees in 2008.  Because this request touches upon issues that may be relevant to the substance of the Liquidators' claims, we would like to meet and confer about the propriety of this request at this stage, which is similar to an interrogatory on relevant substantive issues.

Question I.A.2.b.:  When and how did [BNPP Fortis] receive notice that the Liquidators were pursuing claims against [BNPP Fortis]?

Response reflected in the September 30 Letter:  We are working with our client to determine whether records of this notice exist and can be provided. We will provide a final response to this question as soon as reasonably practicable.

**Further response:  We have been unable to identify records of the means by which BNPP Fortis first received notice that the Liquidators were pursuing claims against it, although, as discussed below, we understand BNPP Fortis was notified of the existence of the litigation no later than March 28, 2011.**

Question I.A.2.c.:  When, if ever, did [BNPP Fortis] adjust its standard document preservation policies to preserve evidence related to (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?

Response reflected in the September 30 Letter:  We are working with our client to confirm. We will provide a final response to this question as soon as reasonably practicable.

**Further response:  After BNPP Fortis received the litigation hold notice from Cleary Gottlieb (as described below), it instructed all personnel who may have had possession of relevant documents to take steps to preserve those documents.  For the avoidance of doubt, we have construed this question to refer only to the standard document preservation policies of BNPP Fortis, rather than to steps that may have been taken by individuals.**

Joshua Margolin, Esq., p. 5

Question I.A.3.a.:  When, if ever, did [BNPP Fortis] issue a litigation hold regarding (i) BLMIS,
(ii) Fairfield, and/or (iii) the Liquidators' claims in these actions? Which of the potential
custodians identified (by pseudonym) in [BNPP Fortis] Supplemental Responses and Objections,
dated May 31, 2022, were subject to a litigation hold and during what period(s) was that
litigation hold in effect? Please identify all counsel involved, if any, in issuing any such litigation
hold and all persons responsible for overseeing implementation of the hold instructions.

> Response reflected in the September 30 Letter:  We are working with our client to
> confirm the response to this question, and to determine the extent to which we can
> provide a full response without revealing privileged attorney-client communications. We
> will provide a final response to this question as soon as reasonably practicable.
>
> **Further Response:  We have identified records of at least one litigation hold related
> to the Madoff Ponzi scheme, as relevant to your question.  Our records reflect that
> this litigation hold concerned Madoff-related documents, was sent on March 28,
> 2011 to legal personnel at BNPP Fortis, and was distributed to BNPP Fortis
> personnel who may have potentially relevant information in April 2011.  Counsel
> involved in this process would have included, principally, attorneys at Cleary
> Gottlieb, BNP Paribas S.A., and BNPP Fortis.**

Question I.A.3.b.:  What were the types and sources of ESI covered by the litigation hold(s), if
any, regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?
What steps were [BNPP Fortis] employees directed to take to preserve ESI pursuant to these
holds? Will [BNPP Fortis] produce the applicable litigation holds?

> Response reflected in the September 30 Letter:  We are working with our client to
> confirm the response to this question, and to determine the extent to which we can
> provide a full response without revealing privileged attorney-client communications. We
> will provide a final response to this question as soon as reasonably practicable.
>
> **Further response:  The litigation hold notice issued to BNPP Fortis applied broadly
> to all relevant ESI.  The details of the litigation hold notice, and the notice itself,
> constitute advice of counsel and are therefore subject attorney-client privilege.  We
> are available to meet and confer regarding this request.**

Question I.A.3.c.:  Were any e-mails from the relevant time period for the custodians identified
in your Supplemental Responses and Objections preserved pursuant to [BNPP Fortis's] retention
policy? If so, why are those e-mails not available and when were they deleted?

> Response reflected in the September 30 Letter:  We are working with our client to
> confirm. We will provide a final response to this question as soon as reasonably
> practicable.
>
> **Further response:  We are not aware of any emails related to Fairfield or BLMIS
> that were preserved by BNPP Fortis beyond the ten-year retention period and later
> deleted (such that they were not available to be produced to the Liquidators in
> response to their 2022 discovery requests).  Those emails that were preserved by**

Joshua Margolin, Esq., p. 6

**BNPP Fortis personnel, and were determined to be both responsive and non-privileged, were included in earlier document productions to the Liquidators.**

Question I.A.3.d.:  When were e-mail inboxes for the custodians listed in your Supplemental Responses and Objections deleted or destroyed? Were any such inboxes preserved or backed up?

Response reflected in the September 30 Letter:  We are working with our client to confirm. We will provide a final response to this question as soon as reasonably practicable.

**Further response:  Notwithstanding the applicable ten-year data retention policy, we understand that emails related to Fairfield or BLMIS or that were otherwise archived were preserved by BNPP Fortis.**

Question I.A.3.e.:  What additional steps, outside of those documented in litigation holds, did [BNPP Fortis] undertake to preserve ESI regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions, and when were such steps taken?

Response reflected in the September 30 Letter:  We are working with our client to confirm. We will provide a final response to this question as soon as reasonably practicable.

**Further response:  Notwithstanding the applicable ten-year data retention policy, we understand that ESI related to Fairfield and/or BLMIS, as well as paper records, were collected by the BNPP Fortis legal department and preserved.  To the extent that these records were non-privileged and responsive to the jurisdictional aspects of the Liquidators' documents requests, these documents have been produced to the Liquidators.**

Question I.A.4.a.:  Can [BNPP Fortis] describe in more detail "all available archival sources" it searched to identify e-mail communications? Did any of these archival sources have printed e-mail communications that could be reviewed?

Response reflected in the September 30 Letter:  In response to the Liquidators' discovery requests, BNPP Fortis undertook to search the single repository that contained email communications – i.e. an internal server that stored personal email correspondence, personal workspaces, and shared drives.  This server, and all relevant categories of data

Joshua Margolin, Esq., p. 7

therein, were searched for ESI responsive to the Liquidators' jurisdictional discovery requests.

We are working to confirm with our client whether any printed email communications were preserved.

**Further response:  BNPP Fortis has identified no printed email communications dated during the relevant period of June 28, 2004 – December 31, 2008.**

Question I.A.4.b.:  Which [BNPP Fortis] employees, if any, did you interview regarding their exchange of electronic communications or possession of ESI reflecting communications between [BNPP Fortis] and BLMIS, Fairfield Greenwich Group, and/or Sentry?

Response reflected in the September 30 Letter:  We are working with our client to confirm whether we can provide a response to this question without violating attorney-client or other applicable privilege, or prevailing European privacy regulations. We will provide a final response to this question as soon as reasonably practicable.

**Further response:  We worked with legal personnel at BNPP Fortis, who we understand consulted with relevant IT and/or business personnel regarding potentially relevant ESI.  The identities of the particular individuals are subject to attorney-client privilege.  We are available to meet and confer on this point.**

Question in I.B. ¶ 4:  [P]lease let us know if BNPP [2S Lux] [a]nd BNPP Fortis are willing to provide a randomly selected sample set of 63 "non-responsive" and non-privileged documents from this set of 636 documents.

Response reflected in the September 30 Letter:  We are working with our client to confirm. We will provide a final response to this question as soon as reasonably practicable.

**Further response:  Substantially simultaneously with the delivery of this letter, we produced a randomly selected sample set of 32 non-responsive and non-privileged documents that were collected from BNPP 2S Lux and BNPP Fortis, which have been redacted for purposes of compliance with prevailing data privacy regulations, and as discussed at our meet-and-confer of October 3, 2022.**

# Exhibit 19

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG · BEIJING
BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL · SILICON VALLEY

CRAIG B. BROD
NICOLAS GRABAR
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY

MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
AUDRY X. CASUSOL
JOHN A. KUPIEC
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES

RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
RESIDENT PARTNERS

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
RESIDENT COUNSEL

D: +1 212 225 2243
amackinnon@cgsh.com

October 7, 2022

<u>VIA EMAIL</u>
Joshua Margolin, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
jmargolin@selendygay.com

Re:   <u>In re Fairfield Sentry Ltd. (In Liquidation), Case No. 12-1551</u>

Dear Joshua:

We write on behalf of BNP Paribas España ("<u>BNPP España</u>") in further response to the questions posed in your letter of September 20, 2022 and to supplement the responses we previously provided in our letter of September 30, 2022 (the "<u>September 30 Letter</u>"). For ease of reference, we are including the information previously provided in our September 30 Letter and have bolded any additional or supplemented responses.

The information provided below should not be interpreted as a concession or agreement by BNPP España that the questions raised by the Liquidators are pertinent to the jurisdictional discovery that has been sought from BNPP España thus far, or that the informal discovery sought in your September 20 letter is proper or appropriate.

As we mentioned during our meet-and-confer of October 3, 2022, the nature and volume of the questions contained in your letter are such that your requested deadline for full and complete responses by October 7, 2022 is unreasonable and unworkable. Nonetheless, we have endeavored to respond to as many of your questions as possible in this letter. As mentioned previously, we will revert as soon as practicable, and in any event prior to October 14, 2022, with responses to the questions that are not answered here.

We note that, consistent with the Liquidators' questions, the responses contained herein exclusively concern ESI except where otherwise indicated. We continue to work with our client to search for any hard copy documents that may exist, including those that may reflect the contents of ESI (e.g., printed copies of email communications).

Joshua Margolin, Esq., p. 2

We further note that the enclosed responses represent our best understanding of
the answers to your questions as of today.  We continue to work with our clients to confirm and
refine our knowledge regarding all of the issues discussed herein, and will supplement or clarify
the enclosed responses as needed as further information becomes available.

We remain willing and available to meet and confer at your convenience.

Sincerely,

*/s/ Ari MacKinnon*

Ari MacKinnon

Joshua Margolin, Esq., p. 3

**Responses on Behalf of BNPP España to Questions Posed in Liquidators' Letter of September 20, 2022**

Question I.A.1.a:  What were [BNPP España]'s ESI preservation policies during the relevant time period and will BNPP [España] produce records sufficient to show the terms of those policies?

> Response reflected in the September 30 Letter:  We are working with our client to confirm whether these exist and can be provided. We will provide a final response to this question as soon as reasonably practicable.
>
> **Further response:  We have been unable to identify written document retention policies (concerning email, fax, or other paper communications, and paper or digital documents) for BNPP España that relate to the period January 1, 2000 – December 31, 2008; however, BNPP España personnel were generally required to comply with prevailing law regarding document retention.**
>
> **We understand that the Liquidators have requested more detail regarding the prevailing local laws to which BNPP España was subject during the relevant period, which is a complex and detailed inquiry that is not traditionally within the scope of discovery inquiries.  We are available to meet and confer regarding the relevance of this request.**

Question I.A.1.b.:  Your Narrative raises the existence of an "online portal" by which [BNPP España]'s personnel communicated. Were communications through this "online portal" also subject to the [BNPP España] ten-year data retention policy? Was any of this ESI preserved pursuant to that policy?

> Response reflected in the September 30 Letter:  It is our understanding that this online portal did not include any "communication" functionality beyond creating reports of transactions (i.e. trade tickets), which BNPP España has already produced, and thus there would have been no such "communication records" that would have been subject to any data retention policy.

Question I.A.1.c.:  What repositories of ESI from the relevant time period ([2000]-2008) are currently maintained by [BNPP España]? What types of ESI are stored in each repository? And has [BNPP España] searched each repository for ESI responsive to the Liquidators' jurisdictional discovery requests?

> Response reflected in the September 30 Letter:  BNPP España generally maintained electronic documents in two types of repositories – servers that stored email correspondence, and hard drives containing documents (including transactional documents).  Both types of repositories were searched in connection with this discovery process.

Joshua Margolin, Esq., p. 4

Question I.A.1.d.:  Will [BNPP España] produce organizational charts for the relevant time period?

> Response reflected in the September 30 Letter:  We are working with our client to confirm whether these exist and can be provided. We will provide a final response to this question as soon as reasonably practicable.

> **Further response:  We have been unable to locate intra-entity organizational charts for the relevant time period, and we have no reason to believe that such charts were ever created.**

Question I.A.2.a.:  When and how did [BNPP España] learn that BLMIS had been publicly revealed to be a fraud?

> Response reflected in the September 30 Letter:  Our understanding is that newspaper articles mentioning the alleged fraud were published in December 2008, but we have not confirmed whether or exactly when such articles were reviewed by individual BNPP España employees in 2008.  Because this request touches upon issues that may be relevant to the substance of the Liquidators' claims, we would like to meet and confer about the propriety of this request at this stage, which is similar to an interrogatory on relevant substantive issues.

Question I.A.2.b.:  When and how did [BNPP España] receive notice that the Liquidators were pursuing claims against [BNPP España]?

> Response reflected in the September 30 Letter:  We are working with our client to determine whether records of this notice exist and can be provided. We will provide a final response to this question as soon as reasonably practicable.

> **Further response:  We have been unable to identify records of the means by which BNPP España first received notice that the Liquidators were pursuing claims against it, although, as discussed below, we understand BNPP España was notified of the existence of the litigation no later than December 4, 2012.**

Question I.A.2.c.:  When, if ever, did [BNPP España] adjust its standard document preservation policies to preserve evidence related to (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?

> Response reflected in the September 30 Letter:  We are not aware of any steps taken by BNPP España to adjust its standard document preservation policies to preserve evidence related to BLMIS, Fairfield, and/or the Liquidators' claims.

> **Further response:  For the avoidance of doubt, we have construed this question to refer only to the standard document preservation policies of BNPP España, rather than to steps that may have been taken by individuals.**

Question I.A.3.a.:  When, if ever, did [BNPP España] issue a litigation hold regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions? Which of the potential

Joshua Margolin, Esq., p. 5

custodians identified (by pseudonym) in [BNPP España's] Supplemental Responses and
Objections, dated May 31, 2022, were subject to a litigation hold and during what period(s) was
that litigation hold in effect? Please identify all counsel involved, if any, in issuing any such
litigation hold and all persons responsible for overseeing implementation of the hold instructions.

> Response reflected in the September 30 Letter:  We are working with our client to
> confirm the response to this question, and to determine the extent to which we can
> provide a full response without revealing privileged attorney-client communications. We
> will provide a final response to this question as soon as reasonably practicable.

> **Further response:  We have identified records of at least one litigation hold related
> to the Madoff Ponzi scheme, as relevant to your question.  Our records reflect that
> this litigation hold, dated December 4, 2012, concerned Madoff-related documents,
> and was distributed to legal personnel at BNPP España for distribution to BNPP
> España personnel who may have potentially relevant information.  Counsel involved
> in this process would have included, principally, attorneys at Cleary Gottlieb, BNP
> Paribas S.A., and BNPP España.**

Question I.A.3.b.:  What were the types and sources of ESI covered by the litigation hold(s), if
any, regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?
What steps were [BNPP España] employees directed to take to preserve ESI pursuant to these
holds? Will [BNPP España] produce the applicable litigation holds?

> Response reflected in the September 30 Letter:  We are working with our client to
> confirm the response to this question, and to determine the extent to which we can
> provide a full response without revealing privileged attorney-client communications. We
> will provide a final response to this question as soon as reasonably practicable.

> **Further response:  The litigation hold notice issued to BNPP España applied
> broadly to all relevant ESI.  The details of the litigation hold notice, and the notice
> itself, constitute advice of counsel and are therefore subject attorney-client privilege.
> We are available to meet and confer regarding this request.**

Question I.A.3.c.:  Were any e-mails from the relevant time period for the custodians identified
in your Supplemental Responses and Objections preserved pursuant to [BNPP España's]
retention policy? If so, why are those e-mails not available and when were they deleted?

> Response reflected in the September 30 Letter:  We are not aware of any emails related to
> Fairfield or BLMIS that were preserved by BNPP España beyond the ten-year deletion
> period and later deleted (such that they were not available to be produced to the
> Liquidators in response to their 2022 discovery requests).

Question I.A.3.d.:  When were e-mail inboxes for the custodians listed in your Supplemental
Responses and Objections deleted or destroyed? Were any such inboxes preserved or backed up?

> Response reflected in the September 30 Letter:  We are working with our client to
> confirm. We will provide a final response to this question as soon as reasonably
> practicable.

Joshua Margolin, Esq., p. 6

**Further response:  We understand that emails sourced to the custodians listed in
our Supplemental Responses and Objections were deleted pursuant to BNPP
España's ten-year data preservation policy (i.e. they were deleted 10 years after they
were sent or received).  To date, we have not identified emails sourced to these
custodians that were otherwise preserved or backed up.**

Question I.A.3.e.:  What additional steps, outside of those documented in litigation holds, did
[BNPP España] undertake to preserve ESI regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the
Liquidators' claims in these actions, and when were such steps taken?

Response reflected in the September 30 Letter:  We are not aware of any additional steps
taken to preserve ESI regarding BLMIS, Fairfield and/or the Liquidators' claims in these
actions outside of those documented in litigation holds.

Question I.A.4.a.:  Can [BNPP España] describe in more detail "all available archival sources" it
searched to identify e-mail communications? Did any of these archival sources have printed e-
mail communications that could be reviewed?

Response reflected in the September 30 Letter:  In response to the Liquidators' discovery
requests, BNPP España undertook to search the two types of repositories in which
relevant ESI might have been preserved.  These consisted of servers that stored email
correspondence, and hard drives containing documents (including transactional
documents).

**Further response:  We have not identified any printed email communications from
the relevant period.**

Question I.A.4.b.:  Which [BNPP España] employees, if any, did you interview regarding their
exchange of electronic communications or possession of ESI reflecting communications between
[BNPP España] and BLMIS, Fairfield Greenwich Group, and/or Sentry?

Response reflected in the September 30 Letter:  We are working with our client to
confirm whether we can provide a response to this question without violating attorney-
client or other applicable privilege, or prevailing European privacy regulations. We will
provide a final response to this question as soon as reasonably practicable.

**Further response:  We worked with legal personnel at BNPP España, who we
understand consulted with relevant IT and/or business personnel regarding
potentially relevant ESI.  The identities of the particular individuals are subject to
attorney-client privilege.  We are available to meet and confer on this point.**

# Exhibit 20

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG · BEIJING
BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL · SILICON VALLEY

CRAIG B. BROD
NICOLAS GRABAR
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY

MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
AUDRY X. CASUSOL
JOHN A. KUPIEC
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES

RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
RESIDENT PARTNERS

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
RESIDENT COUNSEL

D: +1 212 225 2243
amackinnon@cgsh.com

October 7, 2022

<u>VIA EMAIL</u>
Joshua Margolin, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
jmargolin@selendygay.com

Re:    <u>In re Fairfield Sentry Ltd. (In Liquidation), Case No. 10-3627</u>

Dear Joshua:

We write on behalf of BNP Paribas Securities Services Luxembourg ("<u>BNPP 2S Lux</u>") in further response to the questions posed in your letter of September 20, 2022 and to supplement the responses we previously provided in our letter of September 30, 2022 (the "<u>September 30 Letter</u>").  For ease of reference, we are including the information previously provided in our September 30 Letter and have bolded any additional or supplemented responses.

The information provided below should not be interpreted as a concession or agreement by BNPP 2S Lux that the questions raised by the Liquidators are pertinent to the jurisdictional discovery that has been sought from BNPP 2S Lux thus far, or that the informal discovery sought in your September 20 letter is proper or appropriate.

As we mentioned during our meet-and-confer of October 3, 2022, the nature and volume of the questions contained in your letter are such that your requested deadline for full and complete responses by October 7, 2022 is unreasonable and unworkable.  Nonetheless, we have endeavored to respond to as many of your questions as possible in this letter.  As mentioned previously, we will revert as soon as practicable, and in any event prior to October 14, 2022, with responses to the questions that are not answered here.

We note that, consistent with the Liquidators' questions, the responses contained herein exclusively concern ESI except where otherwise indicated.  We continue to work with our client to search for any hard copy documents that may exist, including those that may reflect the contents of ESI (e.g., printed copies of email communications).

Joshua Margolin, Esq., p. 2


        We further note that the enclosed responses represent our best understanding of
the answers to your questions as of today.  We continue to work with our clients to confirm and
refine our knowledge regarding all of the issues discussed herein, and will supplement or clarify
the enclosed responses as needed as further information becomes available.

        We remain willing and available to meet and confer at your convenience.

                Sincerely,

                */s/ Ari MacKinnon*           

                Ari MacKinnon

Joshua Margolin, Esq., p. 3


**Responses on Behalf of BNPP 2S Lux to Questions Posed in Liquidators' Letter of
September 20, 2022**

Question I.A.1.a:  What were [BNPP 2S Lux]'s ESI preservation policies during the relevant
time period and will BNPP [2S Lux] produce records sufficient to show the terms of those
policies?

> Response reflected in the September 30 Letter:  We have been unable to identify written
> document retention policies (concerning email, fax, or other paper communications, and
> paper or digital documents) for BNPP 2S Lux that relate to the period July 29, 2003 –
> December 31, 2008; however, BNPP 2S Lux personnel were generally required to
> comply with prevailing law regarding document retention.
>
> **Further response:  We understand that the Liquidators have requested more detail
> regarding the prevailing local laws to which BNPP 2S Lux was subject during the
> relevant period, which is a complex and detailed inquiry that is not traditionally
> within the scope of discovery inquiries.  We are available to meet and confer
> regarding the relevance of this request.**

Question I.A.1.b.:  Your Narrative raises the existence of an "online portal" by which [BNPP 2S
Lux] personnel communicated. Were communications through this "online portal" also subject to
the [BNPP 2S Lux] ten-year data retention policy? Was any of this ESI preserved pursuant to
that policy?

> Response reflected in the September 30 Letter:  BNPP 2S Lux is not aware of any online
> portal that was used by BNPP 2S Lux personnel during the relevant period.

Question I.A.1.c.:  What repositories of ESI from the relevant time period ([2003]-2008) are
currently maintained by [BNPP 2S Lux]? What types of ESI are stored in each repository? And
has [BNPP 2S Lux] searched each repository for ESI responsive to the Liquidators' jurisdictional
discovery requests?

> Response reflected in the September 30 Letter:  BNPP 2S Lux generally maintained
> electronic documents in two types of repositories – servers that stored email
> correspondence, and hard drives containing documents (including transactional
> documents).  Both types of repositories were searched in connection with this discovery
> process.

Question I.A.1.d.:  Will [BNPP 2S Lux] produce organizational charts for the relevant time
period?

> Response reflected in the September 30 Letter:  BNPP 2S Lux has produced to the
> Liquidators department-level organizational charts for the relevant time period.  We have
> not been able to identify further organizational charts relating to the structure of BNPP 2S
> Lux.

Question I.A.2.a.:  When and how did [BNPP 2S Lux] learn that BLMIS had been publicly
revealed to be a fraud?

Joshua Margolin, Esq., p. 4

<u>Response reflected in the September 30 Letter</u>:  Our understanding is that newspaper articles mentioning the alleged fraud were published in December 2008, but we have not confirmed whether or exactly when such articles were reviewed by individual BNPP 2S Lux employees in 2008.  Because this request touches upon issues that may be relevant to the substance of the Liquidators' claims, we would like to meet and confer about the propriety of this request at this stage, which is similar to an interrogatory on relevant substantive issues.

<u>Question I.A.2.b.</u>:  When and how did [BNPP 2S Lux] receive notice that the Liquidators were pursuing claims against [BNPP 2S Lux]?

<u>Response reflected in the September 30 Letter</u>:  We are working with our client to determine whether records of this notice exist and can be provided.  We will provide a final response to this question as soon as reasonably practicable.

**<u>Further response</u>:  We have been unable to identify records of the means by which BNPP 2S Lux first received notice that the Liquidators were pursuing claims against it, although, as discussed below, we understand BNPP 2S Lux was notified of the existence of the litigation no later than August 20, 2010.**

<u>Question I.A.2.c.</u>:  When, if ever, did [BNPP 2S Lux] adjust its standard document preservation policies to preserve evidence related to (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?

<u>Response reflected in the September 30 Letter</u>:  We are not aware of steps taken by BNPP 2S Lux to adjust its standard document preservation policies to preserve evidence related to BLMIS, Fairfield, and/or the Liquidators' claims.

However, on September 28, 2022, we identified boxes containing hard-copy documents that we are in the process of collecting and reviewing, subject to applicable European data privacy and other restrictions that unfortunately slow our work. We do not know whether these boxes contain relevant materials, but will revert to you as soon as we do know.

**<u>Further Response</u>:  As we have informed you in the past, the subscriptions and redemptions underlying the Liquidators' claims against BNPP 2S Lux generally arose from the investment activities of BNPP 2S Lux's clients, rather than proprietary investments carried out by BNPP 2S Lux.  We have also informed you of our understanding that, during the relevant period, BNPP 2S Lux generally received client orders by fax, and therefore would not have generated significant numbers of electronic documents or communications related to BLMIS, Fairfield, and/or the Liquidators' claims.  Further, as previously indicated, BNPP 2S Lux retained documents relating to BLMIS, Fairfield, and/or the Liquidators' claims in these actions in the form of hard copy and electronically stored documents.  We have previously produced to the Liquidators all responsive, non-privileged documents and communications retained by BNPP 2S Lux in electronic form, and we are working to finalize our review of the hard copy documents retained by BNPP**

Joshua Margolin, Esq., p. 5

**2S Lux, including those hard-copy documents referenced above. For the avoidance of doubt, we have construed this question to refer only to the standard document preservation policies of BNPP 2S Lux, rather than to steps that may have been taken by individuals.**

Question I.A.3.a.: When, if ever, did [BNPP 2S Lux] issue a litigation hold regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions? Which of the potential custodians identified (by pseudonym) in [BNPP 2S Lux's] Supplemental Responses and Objections, dated May 31, 2022, were subject to a litigation hold and during what period(s) was that litigation hold in effect? Please identify all counsel involved, if any, in issuing any such litigation hold and all persons responsible for overseeing implementation of the hold instructions.

> Response reflected in the September 30 Letter: We are working with our client to confirm the response to this question, and to determine the extent to which we can provide a full response without revealing privileged attorney-client communications. We will provide a final response to this question as soon as reasonably practicable.

> **Further response: We have identified records of at least three litigation holds related to the Madoff Ponzi scheme, as relevant to your question. Our records reflect that the first, dated August 20, 2010, concerned the Liquidators' suit against BNPP 2S Lux, and we understand that it was distributed to BNPP 2S Lux personnel who may have potentially relevant information. Our records reflect that the second, dated January 10, 2011, concerned Madoff-related documents, and was delivered to BNPP 2S Lux personnel who may have potentially relevant information. Counsel involved in this process would have included, principally, attorneys at Cleary Gottlieb, BNP Paribas S.A., and BNPP 2S Lux.**

Question I.A.3.b.: What were the types and sources of ESI covered by the litigation hold(s), if any, regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions? What steps were [BNPP 2S Lux] employees directed to take to preserve ESI pursuant to these holds? Will [BNPP 2S Lux] produce the applicable litigation holds?

> Response reflected in the September 30 Letter: We are working with our client to confirm the response to this question, and to determine the extent to which we can provide a full response without revealing privileged attorney-client communications. We will provide a final response to this question as soon as reasonably practicable.

> **Further response: The litigation hold notice issued to BNPP 2S Lux applied broadly to all relevant ESI. The details of the litigation hold notice, and the notice itself, constitute advice of counsel and are therefore subject attorney-client privilege. We are available to meet and confer regarding this request.**

Question I.A.3.c.: Were any e-mails from the relevant time period for the custodians identified in your Supplemental Responses and Objections preserved pursuant to [BNPP 2S Lux]'s retention policy? If so, why are those e-mails not available and when were they deleted?

> Response reflected in the September 30 Letter: Notwithstanding the applicable ten-year data retention policy, we understand that emails related to Fairfield and/or BLMIS were

Joshua Margolin, Esq., p. 6

preserved by BNPP 2S Lux.  Furthermore, emails responsive to the Liquidators'
jurisdictional discovery requests were produced to the Liquidators.

Question I.A.3.d.:  When were e-mail inboxes for the custodians listed in your Supplemental
Responses and Objections deleted or destroyed? Were any such inboxes preserved or backed up?

> Response reflected in the September 30 Letter:  Notwithstanding the applicable ten-year
> data retention policy, we understand that emails archived by individual employees of
> BNPP 2S Lux were preserved by BNPP 2S Lux. We are working to confirm whether any
> printed email communications were preserved, including potentially in the boxes
> mentioned in our response to question I.A.2.c above.

> **Further response:  We are working to finalize our review of the hard copy
> documents retained by BNPP 2S Lux, including specifically any hard copies of
> emails that may be located within the files referenced in our response to Question
> I.A.2.c above.**

Question I.A.3.e.:  What additional steps, outside of those documented in litigation holds, did
[BNPP 2S Lux] undertake to preserve ESI regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the
Liquidators' claims in these actions, and when were such steps taken?

> Response reflected in the September 30 Letter:  Notwithstanding the applicable ten-year
> data retention policy, we understand that BNPP 2S Lux preserved ESI related to BLMIS,
> Fairfield and/or the Liquidators' claims.

Question I.A.4.a.:  Can [BNPP 2S Lux] describe in more detail "all available archival sources" it
searched to identify e-mail communications? Did any of these archival sources have printed e-
mail communications that could be reviewed?

> Response reflected in the September 30 Letter: We are working with our client to confirm
> whether any printed email communications were preserved, including potentially in the
> boxes mentioned in our response to question I.A.2.c above. We will provide a final
> response to this question as soon as reasonably practicable.

> **Further response:  As described in our response to Question I.A.1.c. above, BNPP
> 2S Lux generally maintained electronic documents in two types of repositories –
> servers that stored email correspondence, and hard drives containing documents
> (including transactional documents).  We are working to finalize our review of the
> hard copy documents retained by BNPP 2S Lux, including any hard copies of emails
> that may be located within the files referenced in our response to Question I.A.2.c
> above.**

Question I.A.4.b.:  Which [BNPP 2S Lux] employees, if any, did you interview regarding their
exchange of electronic communications or possession of ESI reflecting communications between
[BNPP 2S Lux] and BLMIS, Fairfield Greenwich Group, and/or Sentry?

> Response reflected in the September 30 Letter:  We are working with our client to
> confirm whether we can provide a response to this question without violating attorney-

Joshua Margolin, Esq., p. 7

client or other applicable privilege, or prevailing European privacy regulations. We will
provide a final response to this question as soon as reasonably practicable.

**Further response: We worked with legal personnel at BNPP 2S Lux, who we
understand consulted with relevant IT and/or business personnel regarding
potentially relevant ESI. The identities of the particular individuals are subject to
attorney-client privilege. We are available to meet and confer on this point.**

Question in I.B. ¶ 4: [P]lease let us know if BNPP [2S Lux] [a]nd BNPP Fortis are willing to
provide a randomly selected sample set of 63 "non-responsive" and non-privileged documents
from this set of 636 documents.

Response reflected in the September 30 Letter: We are working with our client to
confirm. We will provide a final response to this question as soon as reasonably
practicable.

**Further response: Substantially simultaneously with the delivery of this letter, we
produced a randomly selected sample set of 32 non-responsive and non-privileged
documents that were collected from BNPP 2S Lux and BNPP Fortis, which have
been redacted for purposes of compliance with prevailing data privacy regulations,
and as discussed at our meet-and-confer of October 3, 2022.**

# Exhibit 21

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG · BEIJING
BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL · SILICON VALLEY

CRAIG B. BROD
NICOLAS GRABAR
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY

MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
AUDRY K. CASUSOL
JOHN A. KUPIEC
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES

RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
RESIDENT PARTNERS

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
RESIDENT COUNSEL

D: +1 212 225 2243
amackinnon@cgsh.com

October 7, 2022

VIA EMAIL
Joshua Margolin, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
jmargolin@selendygay.com

Re:     In re Fairfield Sentry Ltd. (In Liquidation), Case Nos. 10-3635, 10-3636

Dear Joshua:

We write on behalf of BNP Paribas (Suisse) SA ("BNPP Suisse") in further response to the questions posed in your letter of September 20, 2022 and to supplement the responses we previously provided in our letter of September 30, 2022 (the "September 30 Letter").  For ease of reference, we are including the information previously provided in our September 30 Letter and have bolded any additional or supplemented responses.

The information provided below should not be interpreted as a concession or agreement by BNPP Suisse that the questions raised by the Liquidators are pertinent to the jurisdictional discovery that has been sought from BNPP Suisse thus far, or that the informal discovery sought in your September 20 letter is proper or appropriate.

As we mentioned during our meet-and-confer of October 3, 2022, the nature and volume of the questions contained in your letter are such that your requested deadline for full and complete responses by October 7, 2022 is unreasonable and unworkable.  Nonetheless, we have endeavored to respond to as many of your questions as possible in this letter.  As mentioned previously, we will revert as soon as practicable, and in any event prior to October 14, 2022, with responses to the questions that are not answered here.

We note that, consistent with the Liquidators' questions, the responses contained herein exclusively concern ESI except where otherwise indicated.  We continue to work with our client to search for any hard copy documents that may exist, including those that may reflect the contents of ESI (e.g., printed copies of email communications).

Joshua Margolin, Esq., p. 2

We further note that the enclosed responses represent our best understanding of the answers to your questions as of today.  We continue to work with our clients to confirm and refine our knowledge regarding all of the issues discussed herein, and will supplement or clarify the enclosed responses as needed as further information becomes available.

We remain willing and available to meet and confer at your convenience.

Sincerely,

*/s/ Ari MacKinnon*

Ari MacKinnon

Joshua Margolin, Esq., p. 3

**Responses on Behalf of BNPP Suisse to Questions Posed in Liquidators' Letter of
September 20, 2022**

Question I.A.1.a:  What were BNPP Suisse's ESI preservation policies during the relevant time
period and will BNPP [Suisse] produce records sufficient to show the terms of those policies?

>   Response reflected in the September 30 Letter:  We are working with our client to
>   confirm whether these exist and can be provided. We will provide a final response to this
>   question as soon as reasonably practicable.
>
>   **Further response:  We have been unable to identify written document retention
>   policies (concerning email, fax, or other paper communications, and paper or digital
>   documents) for BNPP Suisse that relate to the period November 22, 2002 –
>   December 31, 2008; however, BNPP Suisse personnel were generally required to
>   comply with prevailing law regarding document retention.**
>
>   **We understand that the Liquidators have requested more detail regarding the
>   prevailing local laws to which BNPP Suisse was subject during the relevant period,
>   which is a complex and detailed inquiry that is not traditionally within the scope of
>   discovery inquiries.  We are available to meet and confer regarding the relevance of
>   this request.**

Question I.A.1.b.:  Your Narrative raises the existence of an "online portal" by which BNPP
Suisse personnel communicated. Were communications through this "online portal" also subject
to the BNPP Suisse ten-year data retention policy? Was any of this ESI preserved pursuant to
that policy?

>   Response reflected in the September 30 Letter:  We are working with our client to
>   confirm whether this online portal included communications functionality beyond
>   creating reports of transactions that have already been produced to the Liquidators. We
>   will provide a final response to this question as soon as reasonably practicable.
>
>   **Further response:  It is our understanding that this online portal did not include
>   any "communication" functionality beyond creating reports of transactions (i.e.
>   trade tickets), which BNPP Suisse has already produced, and thus there would have
>   been no such "communication records" that would have been subject to any data
>   retention policy.**

Question I.A.1.c.:  What repositories of ESI from the relevant time period (2002-2008) are
currently maintained by BNPP Suisse? What types of ESI are stored in each repository? And has
BNPP Suisse searched each repository for ESI responsive to the Liquidators' jurisdictional
discovery requests?

>   Response reflected in the September 30 Letter:  BNPP Suisse generally maintained
>   electronic documents in three types of repositories – servers that stored email
>   correspondence, CD-ROMs that stored email correspondence and other documents (not
>   including transactional documents), and an electronic database containing documents

Joshua Margolin, Esq., p. 4

(including transactional documents, client instructions, and account opening documents). All types of repositories were searched in connection with this discovery process.

Question I.A.1.d.:  Will BNPP Suisse produce organizational charts for the relevant time period?

Response reflected in the September 30 Letter:  We are working with our client to confirm whether these exist and can be provided. We will provide a final response to this question as soon as reasonably practicable.

**Further response:  We have been unable to locate intra-entity organizational charts for the relevant time period, and we have no reason to believe that such charts were ever created.**

Question I.A.1.e.:  Was ESI preserved during (what we understand to be) the integration of BNP Paribas (Suisse) SA Ex Fortis and BNP Paribas (Suisse) SA Private into BNPP Suisse? Were the policies and practices regarding ESI preservation the same at these organizations as at BNPP Suisse? If not, how did they differ?

Response reflected in the September 30 Letter:  Subsequent to the integration of BNP Paribas (Suisse) SA Ex Fortis ("Former BNPP Suisse Ex Fortis") into BNP Paribas (Suisse) SA Private ("Former BNPP Suisse Private"), which created the present BNPP Suisse, the email data of personnel from Former BNPP Suisse Ex Fortis that was previously held on Former BNPP Suisse Ex Fortis servers was migrated onto the server for Former BNPP Suisse Private (now BNPP Suisse).  The emails saved on this server were all later subject to BNPP Suisse's email auto-delete policy.  However, certain ESI was saved on CD-ROMs by BNPP Suisse and was not subject to BNPP Suisse's email auto-delete policy.

Question I.A.2.a.:  When and how did BNPP Suisse learn that BLMIS had been publicly revealed to be a fraud?

Response reflected in the September 30 Letter:  Our understanding is that newspaper articles mentioning the alleged fraud were published in December 2008, but we have not confirmed whether or exactly when such articles were reviewed by individual BNPP Suisse employees in 2008.  Because this request touches upon issues that may be relevant to the substance of the Liquidators' claims, we would like to meet and confer about the propriety of this request at this stage, which is similar to an interrogatory on relevant substantive issues.

Joshua Margolin, Esq., p. 5

Question I.A.2.b.:  When and how did BNPP Suisse receive notice that the Liquidators were
pursuing claims against BNPP Suisse?

> Response reflected in the September 30 Letter:  We are working with our client to
> determine whether records of this notice exist and can be provided. We will provide a
> final response to this question as soon as reasonably practicable.

> **Further response:  We have been unable to identify records of the means by which
> BNPP Suisse first received notice that the Liquidators were pursuing claims against
> it, or the exact date on which such notification happened.**

Question I.A.2.c.:  When, if ever, did BNPP Suisse adjust its standard document preservation
policies to preserve evidence related to (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators'
claims in these actions?

> Response reflected in the September 30 Letter:  We are not aware of any steps taken by
> BNPP Suisse to adjust its standard document preservation policies to preserve evidence
> related to BLMIS, Fairfield, and/or the Liquidators' claims.

> **Further response:  For the avoidance of doubt, we have construed this question to
> refer only to the standard document preservation policies of BNPP Suisse, rather
> than to steps that may have been taken by individuals.**

Question I.A.3.a.:  When, if ever, did [BNPP Suisse] issue a litigation hold regarding (i) BLMIS,
(ii) Fairfield, and/or (iii) the Liquidators' claims in these actions? Which of the potential
custodians identified (by pseudonym) in [BNPP Suisse] Supplemental Responses and
Objections, dated May 31, 2022, were subject to a litigation hold and during what period(s) was
that litigation hold in effect? Please identify all counsel involved, if any, in issuing any such
litigation hold and all persons responsible for overseeing implementation of the hold instructions.

> Response reflected in the September 30 Letter:  We are working with our client to
> confirm the response to this question, and to determine the extent to which we can
> provide a full response without revealing privileged attorney-client communications. We
> will provide a final response to this question as soon as reasonably practicable.

> **Further response:  We have identified records of at least two litigation holds related
> to the Madoff Ponzi scheme, as relevant to your question.  Our records reflect that
> the first, dated May 23, 2011, concerned the Fairfield litigation, and was distributed
> to BNPP S.A. personnel for distribution to BNPP Suisse personnel who may have
> potentially relevant information.  Our records reflect that the second, dated October
> 24, 2013, concerned Madoff-related documents, and was distributed to BNPP Suisse
> legal personnel for distribution to BNPP Suisse personnel who may have potentially
> relevant information.  Counsel involved in this process would have included,
> principally, attorneys at Cleary Gottlieb, BNP Paribas S.A., and BNPP Suisse.**

Question I.A.3.b.:  What were the types and sources of ESI covered by the litigation hold(s), if
any, regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?

Joshua Margolin, Esq., p. 6

What steps were [BNPP Suisse] employees directed to take to preserve ESI pursuant to these holds? Will [BNPP Suisse] produce the applicable litigation holds?

> Response reflected in the September 30 Letter:  We are working with our client to confirm the response to this question, and to determine the extent to which we can provide a full response without revealing privileged attorney-client communications. We will provide a final response to this question as soon as reasonably practicable.

> **Further response:  The litigation hold notice issued to BNPP Suisse applied broadly to all relevant ESI.  The details of the litigation hold notice, and the notice itself, constitute advice of counsel and are therefore subject attorney-client privilege.  We are available to meet and confer regarding this request.**

Question I.A.3.c.:  Were any e-mails from the relevant time period for the custodians identified in your Supplemental Responses and Objections preserved pursuant to BNPP Suisse's retention policy? If so, why are those e-mails not available and when were they deleted?

> Response reflected in the September 30 Letter:  We are not aware of any emails related to Fairfield or BLMIS that were preserved by BNPP Suisse beyond the ten-year deletion period and later deleted (such that they were not available to be produced to the Liquidators in response to their 2022 discovery requests).  As noted above in the response to Question I.A.1.c., certain ESI was maintained on CD-ROMs that was not subject to BNPP Suisse's email auto-delete policy; this ESI was searched in connection with the Liquidators' requests.

> **Further response:  We understand that certain ESI was also maintained in an archive by the BNPP Suisse legal department and therefore not subject to BNPP Suisse's email auto-delete policy; this ESI was searched in connection with the Liquidators' requests, and to the extent it contained non-privileged documents that were responsive to the jurisdictional aspects of the Liquidators' requests, these documents have been produced to the Liquidators.**

Question I.A.3.d.:  When were e-mail inboxes for the custodians listed in your Supplemental Responses and Objections deleted or destroyed? Were any such inboxes preserved or backed up?

> Response reflected in the September 30 Letter:  We are working with our client to confirm. We will provide a final response to this question as soon as reasonably practicable.

> **Further response:  We understand that emails sourced to the custodians listed in our Supplemental Responses and Objections, other than those that were otherwise preserved in the archive maintained by BNPP Suisse's legal department or otherwise, and which have been produced to the Liquidators to the extent they have been determined to be both responsive and non-privileged, were deleted pursuant to BNPP Suisse's ten-year data preservation policy (i.e. they were deleted 10 years after they were sent or received).  To date, we have not identified emails sourced to these custodians that were otherwise preserved or backed up, other than those already searched in connection with the Liquidators' requests for production.**

Joshua Margolin, Esq., p. 7

**Question I.A.3.e.**: What additional steps, outside of those documented in litigation holds, did BNPP Suisse undertake to preserve ESI regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions, and when were such steps taken?

> Response reflected in the September 30 Letter: We are not aware of any additional steps taken to preserve ESI regarding BLMIS, Fairfield and/or the Liquidators' claims in these actions outside of those documented in litigation holds.

**Question I.A.4.a.**: Can BNPP Suisse describe in more detail "all available archival sources" it searched to identify e-mail communications? Did any of these archival sources have printed e-mail communications that could be reviewed?

> Response reflected in the September 30 Letter: In response to the Liquidators' discovery requests, BNPP Suisse undertook to search the two types of repositories that contained email communications – servers that stored email correspondence, and CD-ROMs that stored email correspondence and other documents.

> We are working to confirm with our client whether any printed email communications were preserved.

> **Further response: We are not aware of any printed email communications that have been preserved.**

**Question I.A.4.b.**: Which BNPP Suisse employees, if any, did you interview regarding their exchange of electronic communications or possession of ESI reflecting communications between BNPP Suisse and BLMIS, Fairfield Greenwich Group, and/or Sentry?

> Response reflected in the September 30 Letter: We are working with our client to confirm whether we can provide a response to this question without violating attorney-client or other applicable privilege, or prevailing European privacy regulations. We will provide a final response to this question as soon as reasonably practicable.

> **Further response: We worked with legal personnel at BNPP Suisse, who we understand consulted with relevant IT and/or business personnel regarding potentially relevant ESI. The identities of the particular individuals are subject to attorney-client privilege. We are available to meet and confer on this point.**

# Exhibit 22

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG · BEIJING
BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL · SILICON VALLEY

D: +1 212 225 2243
amackinnon@cgsh.com

October 7, 2022

VIA EMAIL
Joshua Margolin, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
jmargolin@selendygay.com

Re:   In re Fairfield Sentry Ltd. (In Liquidation), Case No. 10-3626

Dear Joshua:

We write on behalf of BGL BNP Paribas S.A. ("BGL BNPP") in further response to the questions posed in your letter of September 20, 2022 and to supplement the responses we previously provided in our letter of September 30, 2022 (the "September 30 Letter"). For ease of reference, we are including the information previously provided in our September 30 Letter and have bolded any additional or supplemented responses.

The information provided below should not be interpreted as a concession or agreement by BGL BNPP that the questions raised by the Liquidators are pertinent to the jurisdictional discovery that has been sought from BGL BNPP thus far, or that the informal discovery sought in your September 20 letter is proper or appropriate.

As we mentioned during our meet-and-confer of October 3, 2022, the nature and volume of the questions contained in your letter are such that your requested deadline for full and complete responses by October 7, 2022 is unreasonable and unworkable. Nonetheless, we have endeavored to respond to as many of your questions as possible in this letter. As mentioned previously, we will revert as soon as practicable, and in any event prior to October 14, 2022, with responses to the questions that are not answered here.

We note that, consistent with the Liquidators' questions, the responses contained herein exclusively concern ESI except where otherwise indicated. We continue to work with our client to search for any hard copy documents that may exist, including those that may reflect the contents of ESI (e.g., printed copies of email communications).

Joshua Margolin, Esq., p. 2

We further note that the enclosed responses represent our best understanding of the answers to your questions as of today.  We continue to work with our clients to confirm and refine our knowledge regarding all of the issues discussed herein, and will supplement or clarify the enclosed responses as needed as further information becomes available.

We remain willing and available to meet and confer at your convenience.

Sincerely,

*/s/ Ari MacKinnon*

Ari MacKinnon

Joshua Margolin, Esq., p. 3

**Responses on Behalf of BGL BNPP to Questions Posed in Liquidators' Letter of September 20, 2022**

Question I.A.1.a:  What were [BGL BNPP's] ESI preservation policies during the relevant time period and will [BGL] BNPP produce records sufficient to show the terms of those policies?

Response reflected in the September 30 Letter:  We have been unable to identify written document retention policies (concerning email, fax, or other paper communications, and paper or digital documents) for BGL BNPP that relate to the period January 1, 2004 – December 31, 2008; however, BGL BNPP personnel were generally required to comply with prevailing law regarding document retention.

**Further response:  We understand that the Liquidators have requested more detail regarding the prevailing local laws to which BGL BNPP was subject during the relevant period, which is a complex and detailed inquiry that is not traditionally within the scope of discovery inquiries.  We are available to meet and confer regarding the relevance of this request.**

Question I.A.1.b.:  Your Narrative raises the existence of an "online portal" by which [BGL BNPP's] personnel communicated. Were communications through this "online portal" also subject to the [BGL BNPP] ten-year data retention policy? Was any of this ESI preserved pursuant to that policy?

Response reflected in the September 30 Letter:  It is our understanding that this online portal did not include any "communication" functionality beyond creating reports of transactions (i.e. trade tickets), which BGL BNPP has already produced, and thus there would have been no such "communication records" that would have been subject to any data retention policy.

Question I.A.1.c.:  What repositories of ESI from the relevant time period ([2004]-2008) are currently maintained by [BGL BNPP]? What types of ESI are stored in each repository? And has [BGL BNPP] searched each repository for ESI responsive to the Liquidators' jurisdictional discovery requests?

Response reflected in the September 30 Letter:  BGL BNPP generally maintained electronic documents in two types of repositories – servers that stored email correspondence, and hard drives containing documents (including transactional documents).  Both types of repositories were searched in connection with this discovery process.

Question I.A.1.d.:  Will [BGL BNPP] produce organizational charts for the relevant time period?

Response reflected in the September 30 Letter:  Simultaneous with the delivery of [our letter of September 30, 2022], we have shared lists of BGL BNPP personnel and their positions from 2004-2008, in which the names of BGL BNPP personnel have been redacted pursuant to prevailing European privacy regulations.

Joshua Margolin, Esq., p. 4

Question I.A.2.a.:  When and how did [BGL BNPP] learn that BLMIS had been publicly revealed to be a fraud?

> Response reflected in the September 30 Letter:  Our understanding is that newspaper articles mentioning the alleged fraud were published in December 2008, but we have not confirmed whether or exactly when such articles were reviewed by individual BGL BNPP employees in 2008.  Because this request touches upon issues that may be relevant to the substance of the Liquidators' claims, we would like to meet and confer about the propriety of this request at this stage, which is similar to an interrogatory on relevant substantive issues.

Question I.A.2.b.:  When and how did [BGL BNPP] receive notice that the Liquidators were pursuing claims against [BGL BNPP]?

> Response reflected in the September 30 Letter:  We are working with our client to determine whether records of this notice exist and can be provided. We will provide a final response to this question as soon as reasonably practicable.

> **Further response:  We have been unable to identify records of the means by which BGL BNPP first received notice that the Liquidators were pursuing claims against it, although, as discussed below, we understand BGL BNPP was notified of the existence of the litigation no later than August 20, 2010.**

Question I.A.2.c.:  When, if ever, did [BGL BNPP] adjust its standard document preservation policies to preserve evidence related to (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?

> Response reflected in the September 30 Letter:  We are not aware of steps taken by BGL BNPP to adjust its standard document preservation policies in order to preserve ESI related to BLMIS, Fairfield, and/or the Liquidators' claims.

> **Further response:  For the avoidance of doubt, we have construed this question to refer only to the standard document preservation policies of BGL BNPP, rather than to steps that may have been taken by individuals.**

Question I.A.3.a.:  When, if ever, did [BGL BNPP] issue a litigation hold regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions? Which of the potential custodians identified (by pseudonym) in [BGL BNPP's] Supplemental Responses and Objections, dated May 31, 2022, were subject to a litigation hold and during what period(s) was that litigation hold in effect? Please identify all counsel involved, if any, in issuing any such litigation hold and all persons responsible for overseeing implementation of the hold instructions.

> Response reflected in the September 30 Letter:  We are working with our client to confirm the response to this question, and to determine the extent to which we can

Joshua Margolin, Esq., p. 5

provide a full response without revealing privileged attorney-client communications. We will provide a final response to this question as soon as reasonably practicable.

**Further response:  We have identified records of at least two litigation holds related to the Madoff Ponzi scheme, as relevant to your question.  Our records reflect that the first, dated August 20, 2010, concerned the Liquidators' suit against BGL BNPP, and we understand that it was distributed to BGL BNPP personnel who may have potentially relevant information.  Our records reflect that the second, dated January 10, 2011, concerned Madoff-related documents, and was delivered to BGL BNPP personnel who may have potentially relevant information.  Counsel involved in this process would have included, principally, attorneys at Cleary Gottlieb, BNP Paribas S.A., and BGL BNPP.**

Question I.A.3.b.:  What were the types and sources of ESI covered by the litigation hold(s), if any, regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions? What steps were [BGL BNPP] employees directed to take to preserve ESI pursuant to these holds? Will [BGL BNPP] produce the applicable litigation holds?

Response reflected in the September 30 Letter:  We are working with our client to confirm the response to this question, and to determine the extent to which we can provide a full response without revealing privileged attorney-client communications. We will provide a final response to this question as soon as reasonably practicable.

**Further response:  The litigation hold notice issued to BGL BNPP applied broadly to all relevant ESI.  The details of the litigation hold notice, and the notice itself, constitute advice of counsel and are therefore subject attorney-client privilege.  We are available to meet and confer regarding this request.**

Question I.A.3.c.:  Were any e-mails from the relevant time period for the custodians identified in your Supplemental Responses and Objections preserved pursuant to [BGL BNPP's] retention policy? If so, why are those e-mails not available and when were they deleted?

Response reflected in the September 30 Letter:  We are not aware of any emails related to Fairfield or BLMIS that were preserved by BGL BNPP beyond the ten-year deletion period and later deleted (such that they were not available to be produced to the Liquidators in response to their 2022 discovery requests).

Question I.A.3.d.:  When were e-mail inboxes for the custodians listed in your Supplemental Responses and Objections deleted or destroyed? Were any such inboxes preserved or backed up?

Response reflected in the September 30 Letter:  We understand that emails sourced to the custodians listed in our Supplemental Responses and Objections were deleted pursuant to BGL BNPP's ten-year data preservation policy (i.e. they were deleted 10 years after they were sent or received).  To date, we have not identified emails sourced to these custodians that were otherwise preserved or backed up.

Joshua Margolin, Esq., p. 6

Question I.A.3.e.:  What additional steps, outside of those documented in litigation holds, did [BGL BNPP] undertake to preserve ESI regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions, and when were such steps taken?

> Response reflected in the September 30 Letter:  We are not aware of any additional steps taken to preserve ESI regarding BLMIS, Fairfield and/or the Liquidators' claims in these actions outside of those documented in litigation holds.

Question I.A.4.a.:  Can [BGL BNPP] describe in more detail "all available archival sources" it searched to identify e-mail communications? Did any of these archival sources have printed e-mail communications that could be reviewed?

> Response reflected in the September 30 Letter:  In response to the Liquidators' discovery requests, BGL BNPP undertook to search the two types of repositories in which relevant ESI might have been preserved.  These consisted of servers that stored email correspondence, and hard drives containing documents (including transactional documents).

Question I.A.4.b.:  Which [BGL BNPP] employees, if any, did you interview regarding their exchange of electronic communications or possession of ESI reflecting communications between [BGL BNPP] and BLMIS, Fairfield Greenwich Group, and/or Sentry?

> Response reflected in the September 30 Letter:  We are working with our client to confirm whether we can provide a response to this question without violating attorney-client or other applicable privilege, or prevailing European privacy regulations. We will provide a final response to this question as soon as reasonably practicable.
>
> **Further response:  We worked with legal personnel at BGL BNPP, who we understand consulted with relevant IT and/or business personnel regarding potentially relevant ESI.  The identities of the particular individuals are subject to attorney-client privilege.  We are available to meet and confer on this point.**

# Exhibit 23

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG · BEIJING
BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL · SILICON VALLEY

CRAIG B. BROD
NICOLAS GRABAR
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY

MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
AUDRY X. CASUSOL
JOHN A. KUPIEC
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES

RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
RESIDENT PARTNERS

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
RESIDENT COUNSEL

D: +1 212 225 2243
amackinnon@cgsh.com

October 7, 2022

<u>VIA EMAIL</u>
Joshua Margolin, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
jmargolin@selendygay.com

Re:   <u>In re Fairfield Sentry Ltd. (In Liquidation), Case No. 11-1579</u>

Dear Joshua:

We write on behalf of BNP Paribas Securities Nominees Limited ("<u>BNPP Sec.
Nom.</u>") in further response to the questions posed in your letter of September 20, 2022 and to
supplement the responses we previously provided in our letter of September 30, 2022 (the
"<u>September 30 Letter</u>").  For ease of reference, we are including the information previously
provided in our September 30 Letter and have bolded any additional or supplemented responses.

The information provided below should not be interpreted as a concession or
agreement by BNPP Sec. Nom. that the questions raised by the Liquidators are pertinent to the
jurisdictional discovery that has been sought from BNPP Sec. Nom. thus far, or that the informal
discovery sought in your September 20 letter is proper or appropriate.

As we mentioned during our meet-and-confer of October 3, 2022, the nature and
volume of the questions contained in your letter are such that your requested deadline for full and
complete responses by October 7, 2022 is unreasonable and unworkable.  Nonetheless, we have
endeavored to respond to as many of your questions as possible in this letter.  As mentioned
previously, we will revert as soon as practicable, and in any event prior to October 14, 2022,
with responses to the questions that are not answered here.

We note that, consistent with the Liquidators' questions, the responses contained
herein exclusively concern ESI except where otherwise indicated.  We continue to work with our
client to search for any hard copy documents that may exist, including those that may reflect the
contents of ESI (e.g., printed copies of email communications).

Joshua Margolin, Esq., p. 2

We further note that the enclosed responses represent our best understanding of the answers to your questions as of today.  We continue to work with our clients to confirm and refine our knowledge regarding all of the issues discussed herein, and will supplement or clarify the enclosed responses as needed as further information becomes available.

We remain willing and available to meet and confer at your convenience.

Sincerely,

*/s/ Ari MacKinnon*

Ari MacKinnon

Joshua Margolin, Esq., p. 3

**Responses on Behalf of BNPP Sec. Nom. to Questions Posed in Liquidators' Letter of**
**September 20, 2022**

Question I.A.1.a:  What were [BNPP Sec. Nom.]'s ESI preservation policies during the relevant
time period and will BNPP [Sec. Nom.] produce records sufficient to show the terms of those
policies?

> Response reflected in the September 30 Letter:  We have been unable to identify written
> document retention policies (concerning email, fax, or other paper communications, and
> paper or digital documents) for BNPP Sec. Nom. that relate to the period October 4, 2004
> – December 31, 2008; however, BNPP Sec. Nom. personnel were generally required to
> comply with prevailing law regarding document retention.

> **Further response:  We understand that the Liquidators have requested more detail**
> **regarding the prevailing local laws to which BNPP Sec. Nom. was subject during the**
> **relevant period, which is a complex and detailed inquiry that is not traditionally**
> **within the scope of discovery inquiries.  We are available to meet and confer**
> **regarding the relevance of this request.**

Question I.A.1.b.:  Your Narrative raises the existence of an "online portal" by which [BNPP
Sec. Nom.] personnel communicated. Were communications through this "online portal" also
subject to the [BNPP Sec. Nom.] ten-year data retention policy? Was any of this ESI preserved
pursuant to that policy?

> Response reflected in the September 30 Letter:  BNPP Sec. Nom. is not aware of any
> online portal that was used by BNPP Sec. Nom. personnel during the relevant period.

Question I.A.1.c.:  What repositories of ESI from the relevant time period ([2004]-2008) are
currently maintained by [BNPP Sec. Nom.]? What types of ESI are stored in each repository?
And has [BNPP Sec. Nom.] searched each repository for ESI responsive to the Liquidators'
jurisdictional discovery requests?

> Response reflected in the September 30 Letter:  BNPP Sec. Nom. generally maintained
> electronic documents in two types of repositories – servers that stored email
> correspondence, and hard drives containing documents (including transactional
> documents).  Both types of repositories were searched in connection with this discovery
> process.

Question I.A.1.d.:  Will [BNPP Sec. Nom.] produce organizational charts for the relevant time
period?

> Response reflected in the September 30 Letter:  Simultaneous with the delivery of [our
> letter of September 30, 2022], we have shared an internal organizational chart dated April
> 2008, in which the names of BNPP Sec. Nom. personnel have been redacted pursuant to
> applicable data privacy regulations.

Joshua Margolin, Esq., p. 4

Question I.A.2.a.:  When and how did [BNPP Sec. Nom.] learn that BLMIS had been publicly revealed to be a fraud?

> Response reflected in the September 30 Letter:  Our understanding is that newspaper articles mentioning the alleged fraud were published in December 2008, but we have not confirmed whether or exactly when such articles were reviewed by individual BNPP Sec. Nom. employees in 2008.  Because this request touches upon issues that may be relevant to the substance of the Liquidators' claims, we would like to meet and confer about the propriety of this request at this stage, which is similar to an interrogatory on relevant substantive issues.

Question I.A.2.b.:  When and how did [BNPP Sec. Nom.] receive notice that the Liquidators were pursuing claims against [BNPP Sec. Nom.]?

> Response reflected in the September 30 Letter:  We are working with our client to determine whether records of this notice exist and can be provided. We will provide a final response to this question as soon as reasonably practicable.

> **Further response:  We have been unable to identify records of the means by which BNPP Sec. Nom. first received notice that the Liquidators were pursuing claims against it, although, as discussed below, we understand BNPP Sec. Nom. was notified of the existence of the litigation no later than October 24, 2013.**

Question I.A.2.c.:  When, if ever, did [BNPP Sec. Nom.] adjust its standard document preservation policies to preserve evidence related to (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?

> Response reflected in the September 30 Letter:  We are not aware of steps taken by BNPP Sec. Nom. to adjust its standard document preservation policies to preserve evidence related to BLMIS, Fairfield, and/or the Liquidators' claims.

> **Further response:  For the avoidance of doubt, we have construed this question to refer only to the standard document preservation policies of BNPP Sec. Nom., rather than to steps that may have been taken by individuals.**

Question I.A.3.a.:  When, if ever, did [BNPP Sec. Nom.] issue a litigation hold regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions? Which of the potential custodians identified (by pseudonym) in [BNPP Sec. Nom.'s] Supplemental Responses and Objections, dated May 31, 2022, were subject to a litigation hold and during what period(s) was that litigation hold in effect? Please identify all counsel involved, if any, in issuing any such litigation hold and all persons responsible for overseeing implementation of the hold instructions.

> Response reflected in the September 30 Letter:  We are working with our client to confirm the response to this question, and to determine the extent to which we can

Joshua Margolin, Esq., p. 5

provide a full response without revealing privileged attorney-client communications. We
will provide a final response to this question as soon as reasonably practicable.

**Further response:  We have identified records of at least one litigation hold related
to the Madoff Ponzi scheme, as relevant to your question.  Our records reflect that
this litigation hold, dated October 24, 2013, concerned Madoff-related documents,
and was distributed to legal personnel at BNPP Sec. Nom. for distribution to BNPP
Sec. Nom. personnel who may have potentially relevant information.  Counsel
involved in this process would have included, principally, attorneys at Cleary
Gottlieb, BNP Paribas S.A., and BNPP Sec. Nom.**

Question I.A.3.b.:  What were the types and sources of ESI covered by the litigation hold(s), if
any, regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?
What steps were [BNPP Sec. Nom.] employees directed to take to preserve ESI pursuant to these
holds? Will [BNPP Sec. Nom.] produce the applicable litigation holds?

Response reflected in the September 30 Letter:  We are working with our client to
confirm the response to this question, and to determine the extent to which we can
provide a full response without revealing privileged attorney-client communications. We
will provide a final response to this question as soon as reasonably practicable.

**Further response:  The litigation hold notice issued to BNPP Sec. Nom. applied
broadly to all relevant ESI.  The details of the litigation hold notice, and the notice
itself, constitute advice of counsel and are therefore subject attorney-client privilege.
We are available to meet and confer regarding this request.**

Question I.A.3.c.:  Were any e-mails from the relevant time period for the custodians identified
in your Supplemental Responses and Objections preserved pursuant to [BNPP Sec. Nom.]'s
retention policy? If so, why are those e-mails not available and when were they deleted?

Response reflected in the September 30 Letter:  We are not aware of any emails related to
Fairfield or BLMIS that were preserved by BNPP Sec. Nom. beyond the ten-year
deletion period and later deleted (such that they were not available to be produced to the
Liquidators in response to their 2022 discovery requests).

Question I.A.3.d.:  When were e-mail inboxes for the custodians listed in your Supplemental
Responses and Objections deleted or destroyed? Were any such inboxes preserved or backed up?

Response reflected in the September 30 Letter:  We understand that emails sourced to the
custodians listed in our Supplemental Responses and Objections were deleted pursuant to
BNPP Sec. Nom.'s ten-year data preservation policy (i.e. they were deleted 10 years after
they were sent or received).  To date, we have not identified emails sourced to these
custodians that were otherwise preserved or backed up.

Question I.A.3.e.:  What additional steps, outside of those documented in litigation holds, did
[BNPP Sec. Nom.] undertake to preserve ESI regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the
Liquidators' claims in these actions, and when were such steps taken?

Joshua Margolin, Esq., p. 6

<u>Response reflected in the September 30 Letter</u>:  We are not aware of any additional steps taken to preserve ESI regarding BLMIS, Fairfield and/or the Liquidators' claims in these actions outside of those documented in litigation holds.

<u>Question I.A.4.a.</u>:  Can [BNPP Sec. Nom.] describe in more detail "all available archival sources" it searched to identify e-mail communications? Did any of these archival sources have printed e-mail communications that could be reviewed?

<u>Response reflected in the September 30 Letter</u>:  In response to the Liquidators' discovery requests, BNPP Sec. Nom. undertook to search the two types of repositories in which relevant ESI might have been preserved.  These consisted of servers that stored email correspondence, and hard drives containing documents (including transactional documents).

We are working to confirm with our client whether any printed email communications were preserved.

**Further response:  We have not identified any printed email communications from the relevant period.**

<u>Question I.A.4.b.</u>:  Which [BNPP Sec. Nom.] employees, if any, did you interview regarding their exchange of electronic communications or possession of ESI reflecting communications between [BNPP Sec. Nom.] and BLMIS, Fairfield Greenwich Group, and/or Sentry?

<u>Response reflected in the September 30 Letter</u>: We are working with our client to confirm whether we can provide a response to this question without violating attorney-client or other applicable privilege, or prevailing European privacy regulations. We will provide a final response to this question as soon as reasonably practicable.

**Further response:  We worked with legal personnel at BNPP Sec. Nom., who we understand consulted with relevant IT and/or business personnel regarding potentially relevant ESI.  The identities of the particular individuals are subject to attorney-client privilege.  We are available to meet and confer on this point.**