# Exhibit 11

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>          Debtor in Foreign<br>          Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>          Plaintiffs,<br><br>   v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>          Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>          Plaintiffs,<br><br>   v.<br><br>BGL BNP PARIBAS SA, et al.,<br><br>          Defendants. | Adv. Pro. No. 10-03626 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>          Plaintiffs,<br><br>   v.<br><br>BNP PARIBAS SECURITIES SERVICES LUXEMBOURG, et al.,<br><br>          Defendants. | Adv. Pro. No. 10-03627 (CGM) |

| | |
|---|---|
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., <br><br> Plaintiffs, <br><br> v. <br><br> ABN AMRO SCHWEIZ AG, et al., <br><br> Defendants. | Adv. Pro. No. 10-03635 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., <br><br> Plaintiffs, <br><br> v. <br><br> ABN AMRO SCHWEIZ AG, et al., <br><br> Defendants. | Adv. Pro. No. 10-03636 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., <br><br> Plaintiffs, <br><br> v. <br><br> BNP PARIBAS ARBITRAGE SNC, et al., <br><br> Defendants. | Adv. Pro. No. 10-04098 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., <br><br> Plaintiffs, <br><br> v. <br><br> BNP PARIBAS PRIVATE BANK & TRUST CAYMAN LTD., et al., <br><br> Defendants. | Adv. Pro. No. 10-04099 (CGM) |

| | |
|---|---|
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>                Plaintiffs,<br><br>     v.<br><br>BNP PARIBAS SECURITIES NOMINEES LTD., et al.,<br><br>                Defendants. | Adv. Pro. No. 11-01579 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>                Plaintiffs,<br><br>     v.<br><br>FORTIS BANK, SA/NV, et al.,<br><br>                Defendants. | Adv. Pro. No. 11-01617 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>                Plaintiffs,<br><br>     v.<br><br>BNP PARIBAS ESPANA, et al.,<br><br>                Defendants. | Adv. Pro. No. 12-01551 (CGM) |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO THE BNP PARIBAS DEFENDANTS

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7034, and Federal Rules of Civil Procedure 26 and 34 made applicable thereby, Liquidators request that Defendants BNP Paribas Luxembourg SA (a/k/a BGL BNP Paribas); BNP Paribas Securities Services Luxembourg; BNP Paribas (Suisse) SA; BNP Paribas (Suisse) SA Ex Fortis (n/k/a BNP Paribas (Suisse) SA); BNP Paribas (Suisse) SA Private (n/k/a BNP Paribas (Suisse) SA); BNP Paribas Arbitrage SNC;

BNP Paribas Private Bank & Trust Cayman Ltd.; BNP Paribas Securities Nominees Ltd. (a/k/a

Harrier Holdings Ltd.); BNP Paribas Fortis (f/k/a Fortis Bank SA/NV; and BNP Paribas España

(f/k/a Fortis Bank (España)) (each a "Defendant," collectively "Defendants," and together, with

Liquidators, "Parties") produce for inspection and copying the Documents listed in these Requests,

to Plaintiffs' attorneys, Selendy & Gay PLLC, at 1290 Avenue of the Americas, New York, NY

10104, within 30 days of being served or at a time and place mutually agreed by the Parties or

ordered by the Court.

## DEFINITIONS

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses.

3.      Any natural person includes that person's agents, assigns, attorneys, employees,

representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former

agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions, em-

ployees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b)

any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or

owned by that entity; and (c) any other person or entity acting or purporting to act on behalf of (a)

or (b).

5.      "Action" means the above-captioned adversary proceeding, or proceedings, in

which You are named a Defendant.

6.      "All," "any," and "each" mean any and all.

7.      "And" and "or" are construed both conjunctively and disjunctively.

8.      "Beneficial Shareholder" means any Person on whose behalf You acted as a trustee, agent, representative custodian, nominee, or otherwise with respect to any subscriptions in or redemptions from the Funds.

9.      "BLMIS" means Bernard L. Madoff Investment Securities LLC, including the funds and accounts under its custody or management.

10.      "BNP Entity" or "BNP Entities" means BNP Paribas SA and its subsidiaries, affiliates, predecessors, successors, and assignees.

11.      "Brokerage & Custody Agreements" means the agreements that You entered with Citco Subscribers in connection with Your subscriptions in the Funds.

12.      "Citco" refers to the entity Citco Group Limited and its subsidiaries, affiliates, predecessors, successors, and assignees, including Citco Group; Citco Global Custody NV; Citco Global Custody (NA) NV; CGC (NA); Citco Fund Services (BVI); Citco Fund Services (Europe) B.V.; Citco (Canada) Inc.; Citco Global Security Services; Citco Bank Nederland N.V.; Citco Bank Nederland N.V. Dublin Branch; and Citco Banking Corporation N.V.

13.      "Citco Subscriber" or "Citco Subscribers" means CGC NA; Citco Bank Nederland N.V.; Citco Bank Nederland N.V. Dublin Branch, and Citco Banking Corporation N.V., individually or collectively.

14.      "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

15.      "Complaint" in Action 10-ap-03626 (CGM) (Bankr. S.D.N.Y.) means the Fourth Amended Complaint filed on August 11, 2021 at Dkt. 92.

16.      "Complaint" in Action 10-ap-03627 (CGM) (Bankr. S.D.N.Y.) means the Fifth Amended Complaint filed on August 11, 2021 at Dkt. 143.

17.    "<u>Complaint</u>" in Action 10-ap-03635 (CGM) (Bankr. S.D.N.Y.) means the Fifth Amended Complaint filed on August 11, 2021 at Dkt. 620.

18.    "<u>Complaint</u>" in Action 10-ap-03636 (CGM) (Bankr. S.D.N.Y.) means the Fifth Amended Complaint filed on August 12, 2021 at Dkt. 679.

19.    "<u>Complaint</u>" in Action 10-ap-04098 (CGM) (Bankr. S.D.N.Y.) means the Fourth Amended Complaint filed on August 11, 2021 at Dkt. 86.

20.    "<u>Complaint</u>" in Action 10-ap-04099 (CGM) (Bankr. S.D.N.Y.) means the Fourth Amended Complaint filed on August 11, 2021 at Dkt. 107.

21.    "<u>Complaint</u>" in Action 11-ap-01579 (CGM) (Bankr. S.D.N.Y.) means the Third Amended Complaint filed on August 11, 2021 at Dkt. 90.

22.    "<u>Complaint</u>" in Action 11-ap-01617 (CGM) (Bankr. S.D.N.Y.) means the Third Amended Complaint filed on August 11, 2021 at Dkt. 84.

23.    "<u>Complaint</u>" in Action 12-ap-01551 (CGM) (Bankr. S.D.N.Y.) means the Third Amended Complaint filed on August 11, 2021 at Dkt. 81.

24.    "<u>Concerning</u>" means relating to, referring to, describing, evidencing, or constituting.

25.    "<u>Document</u>" means "document" and "electronically stored information" as defined in Federal Rule of Civil Procedure 34.  A draft or non-identical copy is a separate document within the meaning of this term.

26.    "<u>Electronically stored information</u>" means "electronically stored information" as defined in Federal Rule of Civil Procedure 34.

27.    "<u>FGG</u>" means Fairfield Greenwich Group, and any subsidiaries, affiliates, predecessors, successors, and assignees.

28.    "<u>Fortis Entity</u>" or "<u>Fortis Entities</u>" means Fortis Bank SA/NV (n/k/a BNP Paribas Fortis) and its subsidiaries, affiliates, predecessors, successors, and assignees.

29.    "<u>Fund</u>" or "<u>Funds</u>" means Sentry, Sigma, and Lambda, individually or collectively.

30.    "<u>Identify</u>" means (a) with respect to Persons, to give, to the extent known, the Person's full name, present or last known address and contact information, and when referring to a natural person, additionally, the present or last known place of employment and the place of employment during the relevant time period; (b) with respect to Documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the Document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the Documents, together with sufficient identifying information to satisfy Federal Rule of Civil Procedure 33(d).

31.    "<u>Including</u>" means including but not limited to.

32.    "<u>KYC Due Diligence</u>" means Know Your Client due diligence, including but not limited to due diligence performed by You before entering into a business relationship with a client.

33.    "<u>Lambda</u>" means Fairfield Lambda Limited (In Liquidation).

34.    "<u>Liquidator</u>" or "<u>Liquidators</u>" means Kenneth M. Krys and Greig Mitchell, individually or collectively, in their capacities as the duly appointed Liquidators and Foreign Representatives of the Funds.

35.    "<u>NAV</u>" means net asset value.

36.    "<u>Person</u>" means a natural person or legal entity including any business or governmental entity or association.

37.    "<u>Regarding</u>" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, confirming, connected to, considering,

containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identify-

ing, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting,

pertaining to, probative of, proving, recording, reflecting, referring to, regarding, relating to, re-

porting on, reviewing, setting forth, supporting, suggesting, summarizing, stating, showing, touch-

ing upon, a subject, or having been created, generated, or maintained in connection with or as a

result of that subject.

38.    "Request" means any of these Requests for Production.

39.    "SEC" means the United States Securities and Exchange Commission.

40.    "Sentry" means Fairfield Sentry Limited (In Liquidation).

41.    "Sigma" means Fairfield Sigma Limited (In Liquidation).

42.    "Subscription Agreement" or "Subscription Agreements" means the agreements

between Citco Subscribers and the Funds pursuant to which Citco Subscribers subscribed for

shares of the Funds.

43.    "You" or "Your" in Action 10-ap-03626 (CGM) (Bankr. S.D.N.Y.) means BNP

Paribas Luxembourg SA (a/k/a BGL BNP Paribas) as well as its officers, directors, employees,

partners, corporate parent, subsidiaries, affiliates, predecessors, successors, or assignees.

44.    "You" or "Your" in Action 10-ap-03627 (CGM) (Bankr. S.D.N.Y.) means BNP

Paribas Securities Services Luxembourg as well as its officers, directors, employees, partners, cor-

porate parent, subsidiaries, affiliates, predecessors, successors, or assignees.

45.    "You" or "Your" in Action 10-ap-03635 (CGM) (Bankr. S.D.N.Y.) means BNP

Paribas (Suisse) SA, BNP Paribas (Suisse) SA Ex Fortis (n/k/a BNP Paribas (Suisse) SA), or BNP

Paribas (Suisse) SA Private (n/k/a BNP Paribas (Suisse) SA) as well as their officers, directors,

employees, partners, corporate parent, subsidiaries, affiliates, predecessors, successors, or assignees.

46.    "You" or "Your" in Action 10-ap-03636 (CGM) (Bankr. S.D.N.Y.) means BNP Paribas (Suisse) SA, BNP Paribas (Suisse) SA Ex Fortis (n/k/a BNP Paribas (Suisse) SA), or BNP Paribas (Suisse) SA Private (n/k/a BNP Paribas (Suisse) SA) as well as their officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, predecessors, successors, or assignees.

47.    "You" or "Your" in Action 10-ap-04098 (CGM) (Bankr. S.D.N.Y.) means BNP Paribas Arbitrage SNC as well as its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, predecessors, successors, or assignees.

48.    "You" or "Your" in Action 10-ap-04099 (CGM) (Bankr. S.D.N.Y.) means BNP Paribas Private Bank and Trust Cayman Ltd. as well as its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, predecessors, successors, or assignees.

49.    "You" or "Your" in Action 11-ap-01579 (CGM) (Bankr. S.D.N.Y.) means BNP Paribas Securities Nominees Ltd. (a/k/a Harrier Holdings Limited) as well as its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, predecessors, successors, affiliates, predecessors, successors, or assignees.

50.    "You" or "Your" in Action 11-ap-01617 (CGM) (Bankr. S.D.N.Y.) means BNP Paribas Fortis (f/k/a Fortis Bank SA/NV) as well as its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, predecessors, successors, or assignees.

51.    "You" or "Your" in Action 12-ap-01551 (CGM) (Bankr. S.D.N.Y.) means BNP Paribas España (f/k/a Fortis Bank (España)) as well as its officers, directors, employees, partners, corporate parent, subsidiaries, affiliates, predecessors, successors, or assignees.

## <u>INSTRUCTIONS</u>

1.      These Requests seek production of material in Your possession, custody, or control.

2.      These Requests seek production of nonprivileged material.

3.      For each Request, either state that You will produce the requested material or state with specificity the grounds for objecting to the Request, including the reasons.

4.      If You object to all or part of a Request, state whether You are withholding any responsive material based on that objection.

5.      If You object to part of a Request, specify the part and state that You will produce documents responsive to the rest.

6.      If You withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable Plaintiffs to assess the claim.  For each Document You withhold as privileged, provide in writing (a) the type of document (e.g., letter or memorandum); (b) the general subject matter of the Document; (c) the date of the document; (d) the author, addresses, and any other recipients of the Document; (e) where not apparent, the relationships of the author, addressees, and recipients to each other; (f) the nature of the privilege being claimed.

7.      Produce Documents as they are kept in the usual course of business.  For each Document, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

8.      Produce electronically stored information in the form in which it is usually maintained.

9.      Produce each Document in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

10.     Produce all versions of each Document that are not identical to the original document (including all drafts) whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

11.     Produce Documents (a) with Bates numbers; (b) in single page TIFF images that are 300 DPI Group IV compressed TIFF images (except excel spreadsheets and other such file types that include logical formulae or files that, when converted to image format, take on an appearance noticeably different from the one the running-native file took when viewed on a computer screen, should be produced in native format, with a "nativelink" file); (c) with extracted text or OCR at the Document level; and (d) with the following load files: LFP, OPT and DAT; (e) with load files as delimited load files; and (f) all metadata, including BEGDOC, ENDDOC, BEGATTACH, ENDATTACH, Page Count, Author, To, Cc, Bcc, Custodian, Date Sent, Time Sent, Subject, File Name, Date Last Modified, MD5Hash and NATIVELINK (link to native on media if applicable).

12.     If after responding to any Request You learn that Your response is in some material respect incomplete or incorrect, supplement or correct Your response in a timely manner.

## **RELEVANT TIME PERIOD**

1.     Unless otherwise specified, these Requests cover the following time periods:

    a.     for Actions 10-ap-03626 (CGM) (Bankr. S.D.N.Y.), 10-ap-03627 (CGM) (Bankr. S.D.N.Y.), 10-ap-04098 (CGM) (Bankr. S.D.N.Y.), 10-ap-04099 (CGM) (Bankr. S.D.N.Y.), 11-ap-01579 (CGM) (Bankr. S.D.N.Y.), and 12-ap-01551 (CGM) (Bankr. S.D.N.Y.):  from and including January 1, 1997 through December 31, 2008;

    b.     for Action 11-ap-01617 (CGM) (Bankr. S.D.N.Y.): from and including January 1, 1996 through December 31, 2008;

      c.      for Actions 10-ap-03635 (CGM) (Bankr. S.D.N.Y.) and 10-ap-03636

(CGM) (Bankr. S.D.N.Y.): from and including January 1, 1990 through

December 31, 2008.

## **REQUESTS**

### **For all Defendants**

1.      For the period January 1, 1990 to December 31, 2008, Documents and Communications concerning any decision made by You (on Your behalf or on behalf of any other Person) to subscribe in Sentry rather than a different Fund, including but not limited to Documents and Communications with Beneficial Shareholders concerning the differences between the Funds and choice of Fund.

2.      For the period January 1, 1990 to December 31, 2008, Documents and Communications concerning Your use of U.S. correspondent banks to effect subscriptions in and receive redemptions from Sentry, including but not limited to those exchanged with Beneficial Shareholders concerning use or purpose of using U.S. correspondent banks.

3.      Documents sufficient to show the identity of any recipient of redemptions from the Funds made between January 1, 2004 and December 31, 2008 (including any portion of a redemption payment or proceeds therefrom), including the identity of any Beneficial Shareholder.

4.      Documents sufficient to show any KYC Due Diligence or similar You collected or performed on any Beneficial Shareholder identified in Request No. 3.

5.      All agreements concerning subscription in the Funds dated January 1, 1990 to December 31, 2008 between You and any Person on whose behalf you redeemed shares from the Funds between January 1, 2004 and December 31, 2008.

6.      Documents sufficient to show all accounts held by You for any Person with whom you identified an agreement in Request No. 5.

7.       For the period January 1, 2010 to present, Documents and Communications concerning Your or any BNP Entity's actual or contemplated decision to freeze, suspend, or otherwise modify access or use of any accounts identified in Request No. 6 in relation to this or other BLMIS-related litigation.

**For Defendants in Actions 10-ap-03626 (CGM) (Bankr. S.D.N.Y.), 10-ap-03627 (CGM) (Bankr. S.D.N.Y.), 10-ap-04098 (CGM) (Bankr. S.D.N.Y.), 10-ap-04099 (CGM) (Bankr. S.D.N.Y.), 11-ap-01579 (CGM) (Bankr. S.D.N.Y.), and 12-ap-01551 (CGM) (Bankr. S.D.N.Y.)**

8.       Documents sufficient to show (i) Your organizational structure for each year during the Relevant Time Period, including Your direct and indirect equity owners in any part, and the subsidiaries that You directly or indirectly owned in any portion, and (ii) those of Your affiliates, including the BNP Entities.

9.       Documents concerning Your and the BNP Entities' protocols or policies regarding sharing of information among any BNP Entities, including but not limited to those protocols, policies, or reporting structures regarding risk management monitoring and reporting.

10.       Documents concerning Your and the BNP Entities' internal compliance rules, guidelines, or risk policies regarding investing with or subscribing through asset managers, including the approval process, mandatory diligence items, and necessary documentation.

11.       Documents and Communications concerning Your or the BNP Entities' due diligence review of BLMIS, the Funds, or other BLMIS feeder funds, including but not limited to those regarding any due diligence audits, reports, or reviews concerning those entities, and any Documents prepared or Communications exchanged relating to any due diligence meetings or calls with BLMIS, the Funds, or other BLMIS feeder funds, and including but not limited to those exchanged with any Beneficial Shareholder concerning the same.

13

12.    Documents and Communications concerning any internal or external audits, re-
ports, or reviews that You or any of the BNP Entities commissioned or otherwise received, re-
viewed, or shared with any Beneficial Shareholder concerning BLMIS, the Funds, or other BLMIS
feeder funds.

13.    Documents and Communications concerning any BNP Entity's subscription to
shares of the Funds, including on behalf of any Beneficial Shareholder, including but not limited
to circulation of, review of, or commentary on the Funds' periodically published NAV statements.

14.    Documents and Communications between You and any subscriber (direct or indi-
rect) in the Funds, including any Beneficial Shareholder, concerning the actual or potential (direct
or indirect) subscription to or continued holding of shares of the Funds, including but not limited
to any marketing or solicitation of subscriptions to shares of the Funds or any investment in
BLMIS; circulation of, review of, or commentary on the Funds' periodically published NAV state-
ments; questions, comments or concerns from any Beneficial Shareholder; or any relationship of
trustee, agent, representative, nominee, custodian, or otherwise with respect to any actual or po-
tential subscription (direct or indirect) in the Funds.

15.    Documents and Communications between You and FGG concerning the actual or
potential (direct or indirect) subscription to or continued holding of shares of the Funds; circulation
of, review of, or commentary on the Funds' periodically published NAV statements; questions,
comments, or concerns elevated to FGG concerning the Funds, subscriptions therein, BLMIS, or
the Funds' or BLMIS' NAV statements; or meetings or calls with FGG about the same.

16.    Documents and Communications concerning or exchanged with BLMIS, including
but not limited to those regarding segregation between BLMIS' custodial, advisory, and brokerage
services; asset segregation at BLMIS; the integrity of BLMIS audits; Your or the BNP Entities'

14

ability or inability to confirm or identify the existence of BLMIS trades, BLMIS-held assets, or BLMIS counterparties; BLMIS' rate of returns and/or periodically published NAV statements; BLMIS' fee structure; BLMIS' split-strike strategy; BLMIS' firm structure; and Your or the BNP Entities' ability or inability to meet with BLMIS, and including but not limited to those exchanged with any Beneficial Shareholder concerning the same.

17.    Documents and Communications exchanged with the SEC or any other United States or British Virgin Island regulatory agency, auditors, or other third parties that provided accounting or other services to the Funds, including but not limited to those regarding segregation between BLMIS' custodial, advisory, and brokerage services; asset segregation at BLMIS; the integrity of BLMIS audits; Your or the BNP Entities' ability or inability to confirm or identify the existence of BLMIS trades, BLMIS-held assets, or BLMIS counterparties; BLMIS' rate of returns and/or periodically published NAV statements; BLMIS' fee structure; BLMIS' split-strike strategy; BLMIS' firm structure; and Your or the BNP Entities' ability or inability to meet with BLMIS.

18.    Documents and Communications concerning any risks perceived by You or the BNP Entities, or distrust or concerns held by You or the BNP Entities associated with Your or the BNP Entities' transacting business relating to BLMIS, the Funds, or other BLMIS feeder funds, including but not limited to those raised with any BNP Entity risk management committee or committee member, and including but not limited to those exchanged with any Beneficial Shareholder concerning the same.

19.    Documents and Communications concerning Your or any BNP Entity's redemptions of shares subscribed in the Funds or BLMIS.

15

20.    Documents and Communications concerning any fees, profits, or gains You earned in relation to redeeming shares from the Funds on behalf of Beneficial Shareholders in relation to transactions at issue listed in the Complaint.

21.    To the extent not requested above, all Documents and Communications from any time upon which You may rely in seeking dismissal of the operative complaint.

## **For Defendant in Action 11-ap-01617 (CGM) (Bankr. S.D.N.Y.)**

22.    Documents sufficient to show (i) Your organizational structure for each year during the Relevant Time Period, including Your direct and indirect equity owners in any part, and the subsidiaries that You directly or indirectly owned in any portion, and (ii) those of Your affiliates, including the Fortis Entities.

23.    Documents concerning Your and the Fortis Entities' protocols or policies regarding sharing of information among any Fortis Entities, including but not limited to those protocols, policies, or reporting structures regarding risk management monitoring and reporting.

24.    Documents concerning Your and the Fortis Entities' internal compliance rules, guidelines, or risk policies regarding investing with or subscribing through asset managers, including the approval process, mandatory diligence items, and necessary documentations.

25.    Documents and Communications concerning Your or the Fortis Entities' due diligence review of BLMIS, the Funds, or other BLMIS feeder funds, including but not limited to those regarding any due diligence audits, reports, or reviews concerning those entities, and any Documents prepared or Communications exchanged relating to any due diligence meetings or calls with BLMIS, the Funds, or other BLMIS feeder funds, and including but not limited to those exchanged with any Beneficial Shareholder concerning the same.

26.     Documents and Communications concerning any internal or external audits, re-ports, or reviews that You or any of the Fortis Entities commissioned or otherwise received, re-viewed, or shared with any Beneficial Shareholder concerning BLMIS, the Funds, or other BLMIS feeder funds.

27.     Documents and Communications concerning any Fortis Entity's subscription to shares of the Funds, including on behalf of any Beneficial Shareholder, including but not limited to circulation of, review of, or commentary on the Funds' periodically published NAV statements.

28.     Documents and Communications between You and any subscriber (direct or indi-rect) in the Funds, including any Beneficial Shareholder, concerning the actual or potential (direct or indirect) subscription to or continued holding of shares of the Funds, including but not limited to any marketing or solicitation of subscriptions to shares of the Funds or any investment in BLMIS; circulation of, review of, or commentary on the Funds' periodically published NAV state-ments; questions, comments or concerns from any Beneficial Shareholder; or any relationship of trustee, agent, representative, nominee, custodian, or otherwise with respect to any actual or po-tential subscription (direct or indirect) in the Funds.

29.     Documents and Communications between You and FGG concerning the actual or potential (direct or indirect) subscription to or continued holding of shares of the Funds; circulation of, review of, or commentary on the Funds' periodically published NAV statements; questions, comments, or concerns elevated to FGG concerning the Funds, subscriptions therein, BLMIS, or the Funds' or BLMIS' NAV statements; or meetings or calls with FGG about the same.

30.     Documents and Communications concerning or exchanged with BLMIS, including but not limited to those regarding segregation between BLMIS' custodial, advisory, and brokerage services; asset segregation at BLMIS; the integrity of BLMIS audits; Your or the Fortis Entities'

17

ability or inability to confirm or identify the existence of BLMIS trades, BLMIS-held assets, or BLMIS counterparties; BLMIS' rate of returns and/or periodically published NAV statements; BLMIS' fee structure; BLMIS' split-strike strategy; BLMIS' firm structure; and Your or the Fortis Entities' ability or inability to meet with BLMIS, and including but not limited to those exchanged with any Beneficial Shareholder concerning the same.

31.    Documents and Communications exchanged with the SEC or any other United States or British Virgin Island regulatory agency, auditors, or other third parties that provided accounting or other services to the Funds, including but not limited to those regarding segregation between BLMIS' custodial, advisory, and brokerage services; asset segregation at BLMIS; the integrity of BLMIS audits; Your or the Fortis Entities' ability or inability to confirm or identify the existence of BLMIS trades, BLMIS-held assets, or BLMIS counterparties; BLMIS' rate of returns and /or periodically published NAV statements; BLMIS' fee structure; BLMIS' split-strike strategy; BLMIS' firm structure; and Your or the Fortis Entities' ability or inability to meet with BLMIS.

32.    Documents and Communications concerning any risks perceived by You or the Fortis Entities, or distrust or concerns held by You or the Fortis Entities associated with Your or the Fortis Entities' transacting business relating to BLMIS, the Funds, or other BLMIS feeder funds, including but not limited to those raised with any Fortis Entity risk management committee or committee member, and including but not limited to those exchanged with any Beneficial Shareholder concerning the same.

33.    Documents and Communications concerning Your or any Fortis Entity's redemptions of shares subscribed in the Funds or BLMIS.

34.     Documents and Communications concerning any fees, profits, or gains You earned in relation to redeeming shares from the Funds on behalf of Beneficial Shareholders in relation to transactions at issue listed in the Complaint.

35.     To the extent not requested above, all Documents and Communications from any time upon which You may rely in seeking dismissal of the operative complaint.

### For Defendants in Actions 10-ap-03635 (CGM) (Bankr. S.D.N.Y.) and 10-ap-03636 (CGM) (Bankr. S.D.N.Y.)

36.     Documents and Communications between You and the Citco Subscribers concerning the Citco Subscribers' actual or potential (direct or indirect) subscription to shares of the Funds, including but not limited to any marketing or solicitation of subscriptions to shares of the Funds or any investment in BLMIS, or any relationship of trustee, agent, representative, nominee, custodian, or otherwise with respect to any actual or potential subscription (direct or indirect) in, the Funds on Your behalf, including but not limited to Brokerage & Custody Agreements between You and the Citco Subscribers.

37.     Documents and Communications concerning the nature or scope of the Citco Subscribers' role as Your trustee, agent, representative, nominee, custodian, or otherwise in connection with subscriptions in the Funds under any Brokerage & Custody Agreement or otherwise, including but not limited to the extent of the Citco Subscriber's ability to exercise control or discretion over Your subscriptions in the Funds.

38.     All copies of the Subscription Agreements between the Citco Subscribers and the Funds entered on Your behalf.

39.     Documents and Communications concerning the nature or scope of the Citco Subscribers' role vis-à-vis You under any Subscription Agreement entered by the Citco Subscribers with the Funds on Your behalf.

40.     Documents and Communications concerning the authority of the Citco Subscribers to act on Your behalf, including with respect to entering Subscription Agreements with the Funds.

41.     Documents and Communications concerning the Funds' Articles of Association.

42.     Documents and Communications concerning Your internal compliance rules, guidelines, or policies regarding investing with or subscribing through third-party asset managers, including the approval process, mandatory diligence items and necessary documentations.

43.     Documents and Communications concerning whether Your subscriptions in Funds through the Citco Subscribers complied with Your internal compliance rules, guidelines, or policies regarding investing with or subscribing through third-party asset managers.

44.     Communications between You or the Citco Subscribers and BLMIS regarding Your subscriptions in the Funds, BLMIS, or other BLMIS feeder funds.

45.     Documents and Communications exchanged with the Citco Subscribers regarding the Funds, BLMIS, other BLMIS feeder funds, or Your subscriptions therein, including but not limited to the performance of Your subscriptions in the Funds, BLMIS, or other BLMIS feeder funds, and redemptions of Your subscriptions in the Funds, BLMIS, or other BLMIS feeder funds.

46.     Documents and Communications concerning any fees You paid to the Citco Subscribers in relation to their redeeming shares from the Funds on Your behalf.

47.     To the extent not requested above, all Documents and Communications from any time upon which You may rely in seeking dismissal of the operative complaint.

Dated:    New York, NY                    Respectfully submitted,
          August 18, 2021

                                          SELENDY & GAY PLLC


                                  By:        /s/ *David Elsberg*
                                          _____
                                          SELENDY & GAY PLLC

                                          David Elsberg
                                          Lena Konanova
                                          Jordan Garman
                                          Ronald Krock
                                          1290 Avenue of the Americas
                                          New York, NY 10104
                                          Telephone: 212-390-9000
                                          delsberg@selendygay.com
                                          lkonanova@selendygay.com
                                          jgarman@selendygay.com
                                          rkrock@selendygay.com

                                          -and-

                                          BROWN RUDNICK LLP

                                          David J. Molton
                                          Marek P. Krzyzowski
                                          Seven Times Square
                                          New York, NY 10036
                                          Telephone: 212-209-4800
                                          dmolton@brownrudnick.com
                                          mkrzyzowski@brownrudnick.com

                                          *Attorneys for Plaintiffs Foreign Representatives*

## CERTIFICATE OF SERVICE

I, David Elsberg, hereby certify that on the 18th day of August, 2021, I caused to be served

of the foregoing document upon counsel for Defendant by first-class mail at the following

addresses:

> Ari D. MacKinnon
> Breon S. Peace
> Thomas S. Kessler
> CLEARY GOTTLIEB STEEN & HAMILTON LLP
> One Liberty Plaza
> New York, NY 10006
> T: 212-225-2000
> F: 212-225-3999
> amackinnon@cgsh.com
> bpeace@cgsh.com
> tkessler@cgsh.com


Dated:   New York, New York
         August 18, 2021

                                    /s/            *David Elsberg*
                                                   David Elsberg