**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LTD., *et al.*, | Case No. 10-13164 (CGM) |
| Debtors in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | |
| Plaintiffs, | |
| -against- | Adv. Pro. No. 10-03635 (CGM) |
| ABN AMRO SCHWEIZ AG, *et al.*, | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | |
| Plaintiffs, | |
| -against- | Adv. Pro. No. 10-03636 (CGM) |
| ABN AMRO SCHWEIZ AG, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO
THE LIQUIDATORS' MOTION FOR SANCTIONS AGAINST
BANQUE INTERNATIONALE À LUXEMBOURG SA**

CLIFFORD CHANCE US LLP

Jeff E. Butler
Meredith George
31 West 52nd Street
New York, NY 10019
Tel: 212-878-8000

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................. 1

Relevant Background ................................................................................................... 2

    A.    Three Actions Filed by the Liquidators Against BIL. ......................................... 2

    B.    BIL's Document Preservation Efforts in Late 2010. .......................................... 4

    C.    Subsequent Developments in the Three Actions Against BIL. ........................... 5

    D.    Jurisdictional Discovery in the Citco Actions. ................................................... 7

Applicable Legal Standard ........................................................................................... 8

Argument ..................................................................................................................... 9

    I.    THE LIQUIDATORS HAVE NO RIGHT TO RELIEF OF ANY KIND
        IN THE 10-3635 ACTION. ............................................................................... 9

    II.    THE LIQUIDATORS HAVE NOT ESTABLISHED THE BASIC
        ELEMENTS OF SPOLIATION IN THE 10-3636 ACTION. ............................... 9

        A.    BIL's Obligation to Preserve Evidence Began No Earlier Than
            August 30, 2010. ...................................................................................... 9

        B.    The Scope of the Duty to Preserve Documents Was Not Clear
            From Information Provided in the Liquidators' Complaints. .................. 12

        C.    The Liquidators Have Not Established That Internal Emails Were
            Lost Due to a Failure to Preserve After August 30, 2010. ...................... 16

        D.    Supposedly "Lost" External Emails Have Been Replaced Through
            Discovery From Other Sources. ............................................................... 17

    III.    THE LIQUIDATORS HAVE NOT EXPERIENCED PREJUDICE FROM
        ANY LOST INFORMATION. ............................................................................ 19

    IV.    THE LIQUIDATORS HAVE NOT ESTABLISHED INTENT TO
        DEPRIVE THE LIQUIDATORS OF THE USE OF INFORMATION. ............ 20

Conclusion ................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
No. 13 Civ. 2581, 2021 WL 4190628 (S.D.N.Y. Aug. 18, 2021) ........................... 8, 12, 13, 20

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
337 F.R.D. 47 (S.D.N.Y. 2020) .............................................................................. 20

*CrossFit Inc. v. Nat'l Strength & Conditioning Ass'n*,
14 Civ. 1191, 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019)..................................... 22

*Cruz v. G-Star Inc.*,
No. 17 Civ. 7685, 2019 WL 4805765 (S.D.N.Y. Sept. 30, 2019)........................... 12

*Dilworth v. Goldberg*,
3 F. Supp. 3d 198 (S.D.N.Y. 2014) ........................................................................ 19

*Doubleline Cap. LLP v. Odebrecht Fin., Ltd.*,
No. 17 Civ. 4576, 2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021) ......................... 11, 17, 18, 21

*Fujitsu Ltd. v. Fed. Expr. Corp.*,
247 F.3d 423 (2d Cir. 2001)................................................................................... 10

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
341 F.R.D. 474 (S.D.N.Y. 2022) ............................................................... 10, 19, 21

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998)................................................................................... 10

*Leidig v. Buzzfeed, Inc.*,
No. 16 Civ. 542, 2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017).............................. 20

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
No. 15 Civ. 9363, 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ............................ 8

*McIntosh v. United States*,
No. 14 Civ. 7889, 2016 WL 1274585 (S.D.N.Y. Mar. 31, 2016) ........................... 21

*Moody v. CSX Transport., Inc.*,
271 F. Supp. 3d 410 (W.D.N.Y. 2017) ................................................................... 21

*Pippins v. KPMG LLP*,
279 F.R.D. 245 (S.D.N.Y. 2012) ........................................................................... 13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Schaffer v. Horizon Pharma PLC*,
No. 16 Civ. 1763, 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018)................................................ 11

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
277 F. Supp. 3d 521 (S.D.N.Y. 2017)..................................................................................... 18

*Tchatat v. O'Hara*,
249 F. Supp. 3d 701 (S.D.N.Y. 2017)..................................................................................... 17

**Rules**

Fed. R. Civ. P. 26.................................................................................................................. 13

Fed. R. Civ. P. 37.......................................................................................................... *passim*

Defendant Banque Internationale à Luxembourg SA ("BIL"), formerly known as Dexia Banque Internationale à Luxembourg SA, respectfully submits this Memorandum of Law in Opposition to the Liquidators' Motion for Sanctions Under Rule 37(e) Against Banque Internationale à Luxembourg SA.  BIL's position is also supported by the accompanying Declaration of Jeff E. Butler dated February 22, 2023 ("Butler Decl.").

## Introduction

Rule 37(e) significantly limits the sanctions available in federal court for a failure to preserve electronically stored information ("ESI").  In a case of alleged spoliation of ESI, the rule does not allow any sanction unless (i) there was a duty to preserve the ESI at issue, (ii) the ESI was lost due to a failure of reasonable steps to preserve it and (iii) the ESI cannot be restored or replaced from another source.  *See* Fed. R. Civ. P. 37(e).  Even if these basic elements are satisfied, sanctions are appropriate only if there is a showing of prejudice to the moving party. Fed. R. Civ. P. 37(e)(1).  The most severe sanctions—including the sanctions sought in this motion—are available only upon proof, by clear and convincing evidence, that a party acted with intent to deprive the moving party of the use of information in the litigation.  *See* Fed. R. Civ. P. 37(e)(2).

Here, the Liquidators have failed to show that these requirements have been satisfied. The ESI at issue is electronically stored email of six BIL employees, at least to the extent it relates to the redemption payment at issue.  The Liquidators have failed to show, however, that BIL had a duty to preserve any evidence for use in these actions before August 30, 2010.  Even after that date, the *scope* of BIL's duty to preserve ESI was unclear.  This results from the fact that the pleadings in these actions did not provide enough information to identify the one redemption—among more than 1,500 alleged redemptions—that involved BIL.  For this reason,

-1-

a reasonable person could not conclude, from reading the pleadings, that ESI from six BIL employees should be preserved.

Even assuming, for purposes of argument, that BIL had a duty to preserve the ESI at issue on this motion, the Liquidators have not established that all such ESI was lost due to a failure of preservation measures by BIL. For purely internal emails, there is no reason to believe such emails still existed in electronic form by the time a duty to preserve for these cases arose. For external emails, the Liquidators have not established that copies of such emails are not available from other sources. On the contrary, the Liquidators have submitted copies of BIL emails obtained from third parties in support of this motion.

Evidence of prejudice is also lacking. At most, the Liquidators speculate that information relevant to the issue of personal jurisdiction might have been lost. There is no circumstantial evidence, however, that would allow the Court to conclude that significant information actually has been lost.

Finally, there is no evidence that BIL acted with intent to deprive the Liquidators of the use of information in these cases. In fact, BIL took a number of reasonable steps to preserve relevant documents within a short time after learning of these cases. These measures themselves are inconsistent with any suggestion that BIL intended to deprive the Liquidators of relevant information for use in these cases. The fact that BIL might have done more to preserve evidence does not establish an intent to deprive under Rule 37(e).

## **Relevant Background**

### A.    **Three Actions Filed by the Liquidators Against BIL**

This motion has been made in two separate actions: *Fairfield Sentry Ltd., et al. v. ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03635 (Bankr. S.D.N.Y.) (the "10-3635 Action") and *Fairfield Sentry Ltd., et al. v. ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03636

(Bankr. S.D.N.Y.) (the "10-3636 Action").  Together, these actions are referred to herein as the
"Citco Actions."

Each of the Citco Actions was initially commenced in New York State Supreme Court in
April 2010 through the filing of a "Summons with Notice."  (*See* Butler Decl. Exs. 1 & 2.)  Each
Summons with Notice is an abbreviated pleading containing only a brief description of the claim.
For each of these cases, the claim described is one for "mistake and restitution" arising from
unspecified payments by one or more of the Fairfield Funds made beginning in April 2004.  (*See
id.*)  Neither Summons with Notice references BIL by name.

On August 17, 2010, the Liquidators filed an Amended Summons with Notice in each of
the two state court actions.  (Butler Decl. Exs. 3 & 4.)  These Amended Summonses listed, for
the first time, individual named defendants in the two state court actions.  A total of 81 named
defendants were listed in each Amended Summons with Notice, and BIL was named as an
individual defendant in each case.  (*Id.*)  The Amended Summonses did not provide any
additional information about the claims against these defendants, stating only that "[t]he nature
of this action is for mistake and restitution based on payments made by plaintiff Fairfield Sentry
Limited ('Plaintiff') and received by Defendants from and after April 21, 2004."  (*See id.* Ex. 4.)

On September 10, 2010, the Liquidators removed the two state court actions to the United
States District Court for the Southern District of New York, and each action was transferred to
the Bankruptcy Court.  (Butler Decl. ¶ 5.)

On September 21, 2010, the Liquidators filed a Complaint in each of these now-federal
actions.  (Butler Decl. Exs. 5 & 6.)  Each Complaint names BIL as one of more than
80 defendants, and includes claims for unjust enrichment, money had and received, mistaken
payment and constructive trust.  (*See id.*)  The Complaints each allege that the named defendants

-3-

received payments from one or more of the Fairfield Funds, but they do not specify the alleged

amount or the date of any individual payments. (*See id.*) Thus, there was no way to tell from the

face of these early pleadings which payments, if any, the Liquidators may have been seeking

from BIL.

On October 27, 2010, the Liquidators filed a third action against BIL in the Bankruptcy

Court, which was styled *Fairfield Sentry Limited, et al. v. Dexia BIL for Customer Account*, Adv.

Pro. No. 10-04090 (Bankr. S.D.N.Y.) (the "10-4090 Action"). (Butler Decl. Ex. 7.) This third

action named BIL as the only defendant, and the Complaint includes claims for unjust

enrichment, money had and received, mistaken payment and constructive trust. (*See id.*) Unlike

the Complaints filed at that time in the Citco Actions, the Complaint in the 10-4090 Action

attaches exhibits listing the specific redemption payments alleged to have been received by BIL

by date, amount and number of shares. (*See id.* Exs. A & B.) The Complaint in the 10-4090

Action thus made much more clear and specific claims against BIL than the Complaints in the

Citco Actions.[1]

### B.    BIL's Document Preservation Efforts in Late 2010

BIL first learned about these lawsuits in the United States on August 30, 2010, when it

received a copy of the Summons with Notice associated with one of the two Citco Actions. (*See*

Dewitte Tr. 51:17-21.)[2] BIL initially contacted the Luxembourg office of Clifford Chance with

respect to this information and, beginning in October 2010, communicated directly with the New

York office of Clifford Chance concerning the cases. (*Id.* 213:24-214:6.)

---

[1] The redemption payment at issue in the 10-3636 Action—and thus the payment relevant to this sanctions motion—is not among the payments listed in the 10-4090 Action.

[2] The transcript of the deposition of BIL's Rule 30(b)(6) witness, Herman Dewitte, has been filed as Exhibit 1 to the Declaration of David S. Flugman dated January 20, 2023 ("Flugman Decl.").

BIL began taking actions to collect and secure documents relating to redemptions from the Fairfield Funds in September 2010. For example, Mr. Dewitte collected copies of hard-copy transaction files relating to investments in the Fairfield Funds from his colleague, Benny Reiter, in September 2010. (*See id.* 254:2-255:9; *see also* Flugman Decl. Ex. 9 (establishing the date).) These hard-copy files contain copies of emails from the time of each transaction involving the Fairfield Funds. (*See, e.g.*, Flugman Decl. Ex. 2.)

Several other categories of potentially relevant documents were effectively preserved at this time without any action by BIL. For example, account statements showing the timing and amounts of individual securities transactions—including subscriptions and redemptions from the Fairfield Funds—were maintained indefinitely at BIL. (*See* Butler Decl. ¶ 23.) Also, customer account opening documents—including agreements entered with individual customers—were likewise maintained by BIL indefinitely. (*See id.*)

In addition, on November 25, 2010, BIL's Head of Legal sent a document retention notice to a large group of BIL employees. (*See* Flugman Decl. Exs. 10, 12.) This notice emphasized the importance of preserving documents for use in U.S. legal proceedings, and asked recipients to locate and set aside, among other things, emails and electronic documents that may be related to investments in the Fairfield Funds. (*See id.*)

### C.     Subsequent Developments in the Three Actions Against BIL

The two Citco Actions and the 10-4090 Action were substantively consolidated in November 2010 with the many other similar actions filed by the Liquidators against other parties.

On January 10, 2011, the Liquidators filed First Amended Complaints in the two Citco Actions. These First Amended Complaints, for the first time, attached exhibits listing the individual redemptions at issue in each case with a payment date, payment amount and number

of shares.  The First Amended Complaint in the 10-3635 Action lists 70 individual redemptions.
(Butler Decl. ¶ 9 & Ex. 9.)  The First Amended Complaint in the 10-3636 Action lists 1,536
individual redemptions.  (*Id.*, Ex. 8.)  Although individual redemptions are listed, the First
Amended Complaints do not connect any individual redemptions with any specific defendant.
Thus, the First Amended Complaints do not disclose, for any defendant, the redemption
payments at issue in each case.

The Liquidators filed additional amended complaints in each of the Citco Actions in
May 2011, July 2012 and January 2020.  (Butler Decl. ¶ 10.)  These amended complaints
similarly listed large numbers of redemption payments without indicating, for any individual
redemption, the defendant alleged to have received the payment.  (*Id.*)

In the meantime, the defendants in the consolidated Fairfield proceedings moved to
dismiss all of the cases brought by the Liquidators.  In a series of decisions culminating in a
Memorandum Decision dated December 14, 2020, the Bankruptcy Court (Bernstein, J.)
dismissed each of the claims in the consolidated proceedings except for the constructive trust
claims against certain defendants, including the constructive trust claims in the two Citco
Actions.

As a result, the 10-4090 Action against BIL has been dismissed with prejudice.  The
Liquidators appealed this dismissal to the District Court and, on August 24, 2022, the District
Court issued a decision affirming the dismissal.  The Liquidators are currently appealing that
decision to the Court of Appeals for the Second Circuit.

Following the decisions dismissing all claims other than the constructive trust claim, the
Liquidators filed a new Fifth Amended Complaint ("FAC") in each of the Citco Actions.  Each
Fifth Amended Complaint, like earlier amended complaints, attaches exhibits listing many

individual redemptions, but does not indicate which defendant is alleged to have received any redemption payment.  (*See* Butler Decl. Exs. 10 & 11.)

### D.    Jurisdictional Discovery in the Citco Actions

On October 29, 2021, BIL moved to dismiss each of the Citco Actions for lack of personal jurisdiction.  The Court subsequently allowed the Liquidators to conduct jurisdictional discovery of defendants in the Citco Actions.

In connection with this discovery, BIL and other Luxembourg-based defendants participated in a meet and confer telephone conference with the Liquidators on December 10, 2021.  During the meet and confer, counsel for defendants pointed out that the Fifth Amended Complaints did not indicate which redemptions are alleged to have been received by any individual defendant.  This ambiguity made it impossible, as a practical matter, for any individual defendant to select documents for potential production for jurisdictional discovery. Counsel for the Liquidators informed the group that the Liquidators would attempt to provide additional information on the specific redemptions alleged to have been received by each defendant.  (*See* Butler Decl. ¶ 16 & Ex. 12.)

On March 2, 2022, the Liquidators made an "informal production" of documents to BIL. These documents included confirmations for a redemption of 3,162.62 shares of Fairfield Sentry with a trade date of August 1, 2007.  (Butler Decl. ¶ 17.)  The amount of the redemption was $3,964,353.  No other redemption confirmations were included in the informal production.  From the documents provided by the Liquidators, it appears that only one redemption at issue in the Citco Actions was received by BIL.  That redemption is one of the more than 1,500 redemptions listed in the 10-3636 Action.  It is not listed at all in the 10-3635 Action.

The BIL redemption at issue in the 10-3636 Action arose from a subscription of 3,162.62 shares of Fairfield Sentry in April 2005 for a purchase price of $3,329,613. Thus, the "fictitious profit" associated with this redemption is $634,740.

Armed with the knowledge that only one redemption (and one corresponding subscription) is at issue, BIL has been able to produce numerous documents relating to these transactions as part of jurisdictional discovery. For example, BIL produced the hard-copy transaction files associated with the subscription and redemption. (Butler Decl. ¶ 20.) These files include hard-copy versions of emails from 2005 and 2007 associated with these transactions. (*See* Flugman Decl. Ex. 2.) In addition, BIL has produced account statements for the bank customer involved in the subscription and redemption, as well as copies of written agreements with that customer. (Butler Decl. ¶ 23.)

## Applicable Legal Standard

Rule 37(e) permits a court to impose sanctions if ESI (1) "should have been preserved in the anticipation or conduct of litigation"; (2) was "lost because a party failed to take reasonable steps to preserve it"; and (3) "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). As the party seeking sanctions, the Liquidators have the burden of establishing these three elements by a preponderance of the evidence. *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13 Civ. 2581, 2021 WL 4190628, at *13 (S.D.N.Y. Aug. 18, 2021). Rule 37(e) "does not call for perfection" in preserving documents, and a "[a] party may act reasonably by choosing a less costly form of information preservation, if it is substantially as effective as more costly forms." *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15 Civ. 9363, 2018 WL 1512055, at *11 (S.D.N.Y. Mar. 12, 2018) (internal quotation marks omitted).

A court may impose sanctions under Rule 37(e)(1) where the moving party has established each of the foregoing three elements for some ESI and the court finds that the

-8-

moving party has been prejudiced by the loss of the ESI.  The more severe sanctions under

Rule 37(e)(2) are available only if a court finds that the non-moving party acted with intent to

deprive the moving party of the use of the ESI in the litigation.

<u>**Argument**</u>

I.    **THE LIQUIDATORS HAVE NO RIGHT TO RELIEF OF ANY KIND IN
      THE 10-3635 ACTION.**

The single payment to BIL at issue in the Citco Actions is alleged in the 10-3636 Action,

not the 10-3635 Action.  (Butler Decl. ¶ 17.)  This important fact is not advertised in the

Liquidators' opening brief, but language used in the brief acknowledges that BIL was involved

in only one relevant redemption.  (*See* Liquidators' Br. 5 (referring to "the subscription and

redemption at issue in this case") & 10 (referring to "the at-issue investment").)

Because there is no actual payment involving BIL in the 10-3635 Action, there is no way

to apply the standards for spoliation under Rule 37(e).  For example, there is no factual basis for

determining the timing and scope of any obligation to preserve documents.  Similarly, there is no

basis for the Court to conclude that the Liquidators suffered prejudice from any alleged loss of

evidence.  For these reasons, the Liquidators' motion for sanctions in the 10-3635 Action has no

colorable basis and should be denied.

II.   **THE LIQUIDATORS HAVE NOT ESTABLISHED THE BASIC ELEMENTS OF
      SPOLIATION IN THE 10-3636 ACTION.**

A.    **BIL's Obligation to Preserve Evidence Began No Earlier Than
      August 30, 2010.**

BIL first received notice of a lawsuit by the Fairfield Liquidators in the United States on

August 30, 2010, when it received a copy of the Summons with Notice filed by the Liquidators

in New York State Supreme Court.  (*See* Dewitte Tr. 51:17-21.)  The Second Circuit has

observed that the "obligation to preserve evidence arises when the party has notice that the

evidence is relevant to litigation—most commonly when suit has already been filed, providing

the party responsible for the destruction with express notice, but also on occasion in other

circumstances, as for example when a party should have known that the evidence may be

relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126-27 (2d Cir. 1998).

Moreover, "[t]he Second Circuit has rejected the suggestion that simply being on notice of

potential injury that might give rise to litigation triggers a duty to preserve." *In re Keurig Green*

*Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 532 (S.D.N.Y. 2022) (citing

*Fujitsu Ltd. v. Fed. Expr. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).   Here, there was no

evidence that BIL received notice of *any* litigation in the United States potentially directed at

BIL before August 30, 2010.

The Liquidators argue that BIL was on notice of potential litigation on behalf of the

Fairfield Funds in the United States from the moment BIL learned of the collapse of BLMIS

from public news reports in December 2008.  (Liquidators' Br. 22-25.)  This is a bridge too far.

Information about BLMIS in the public domain in December 2008 would not have put a

reasonable party on notice (1) that the Fairfield Funds would be placed into liquidation in the

British Virgin Islands ("BVI"), (2) that the BVI-appointed Liquidators would pursue lawsuits in

the United States to claw back redemptions from Fairfield Fund investors or (3) that BIL would

be targeted in such lawsuits.  Indeed, the BVI liquidations of the Fairfield Funds did not even

begin until April 2009, and the Liquidators of Fairfield Sentry were not appointed until

July 2009.  (*See* FAC, Butler Decl. Ex. 10, ¶¶ 26, 29.)

The Liquidators contend that BIL should have been aware of the potential for clawback

proceedings from a Bloomberg article dated December 31, 2008.  (*See* Liquidators' Br. 8-9;

Flugman Decl. Ex. 7.)  As an initial matter, there is no evidence that management at BIL were

-10-

aware of this particular, English-language article, among the many thousands of news pieces written about BLMIS around this time.[3] More importantly, the article itself does not mention the Fairfield Funds, or potential lawsuits in the United States by the future liquidators of the Fairfield Funds. Finally, this Bloomberg article does not suggest, in any way, that BIL itself would be targeted in a lawsuit similar to the 10-3636 Action.

The Liquidators rely on *Doubleline Cap. LLP v. Odebrecht Fin., Ltd.*, No. 17 Civ. 4576, 2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021), and *Schaffer v. Horizon Pharma PLC*, No. 16 Civ. 1763, 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018), to argue that the collapse of BLMIS was the kind of event that would place a party on notice of future litigation. Those cases are inapposite. *Doubleline* involved a party that was under investigation in the United States for a wide-ranging bribery scheme when it destroyed certain documents. The *Doubleline* court concluded that the party under investigation was on notice that litigation claims were likely to be brought arising from the bribery scheme. *See* 2021 WL 1191527, at *6. Here, there was no analogous investigation against BIL that might have triggered a duty to preserve evidence in December 2008. The *Schaffer* decision is even less relevant. That case did not deal with the issue of spoliation, and the court in that case merely observed that securities litigation often follows a steep decline in stock price. *See* 2018 WL 481883, at *2.

Finally, the Liquidators say it is "wholly incredible" that BIL did not anticipate this lawsuit in December 2008 because BIL created an internal task force in response to the BLMIS collapse, and the task force collected documents relating to certain feeder funds for BLMIS, but not documents relating to the Fairfield Funds. (Liquidators' Br. 24.) On the contrary, the

---

[3] At the Rule 30(b)(6) deposition, Mr. Dewitte was shown the article, but he was not asked if he or anyone else at BIL had seen it before. (Dewitte Tr. 214:17-215:21.)

activities of the internal task force *confirm* that BIL did not anticipate a potential lawsuit in the United States arising from Fairfield Fund investments.  As Mr. Dewitte explained, BIL made substantial loans to four funds that invested in BLMIS (Rafale Partners, Blue Star, Mianda and Mount Capital), and also actively marketed two of those funds to its customers.  (*See* Dewitte Tr. 40:3-41:2.)  The internal task force was formed to evaluate BIL's potential exposure arising from these activities.  (*Id.* 39:8-24.)  Thus, the internal task force was not focused on exposure from investments in the Fairfield Funds and, accordingly, BIL did not collect or preserve documents relating to those investments in the early part of 2009.

> **B.    The Scope of the Duty to Preserve Documents Was Not Clear From Information Provided in the Liquidators' Complaints.**

The ESI that the Liquidators contend should have been preserved for the 10-3636 Action consists of email, in electronic form, from the mailboxes of six custodians identified by BIL in Rule 26(a) Disclosures on October 11, 2022.  (*See* Liquidators' Br. 13-14; Flugman Decl. Ex. 13.)  The Liquidators have the burden to show that this ESI should have been preserved by BIL at some point after BIL received notice of the lawsuit on August 30, 2010.  In other words, the Liquidators must show not only a duty to preserve, but that the *scope* of the duty extends to this particular ESI.  *See CBF*, 2021 WL 4190628, at *15 (addressing the scope of the duty to preserve); *see also* Fed. R. Civ. P. 37(e), Advisory Committee Notes (2015 Amendment) ("Courts should consider the extent to which a party was on notice . . . that the information would be relevant.").  The standard for evaluating the scope of a duty to preserve is an objective one, *i.e.*, it extends to "what it knows, or reasonably should know" is relevant in the action or is likely to be requested in discovery.  *See Cruz v. G-Star Inc.*, No. 17 Civ. 7685, 2019 WL 4805765, at *11 (S.D.N.Y. Sept. 30, 2019).  Thus, the Liquidators must show that a reasonable

-12-

person in the same circumstances as BIL would have taken steps to preserve ESI from these six

individuals at some point after August 30, 2010.

In addition, the scope of the duty to preserve is naturally circumscribed by Rule 26(b)(1),

which defines the overall scope and limits of discovery.  Rule 26(b)(1) defines the scope of

discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving the issues, and whether the
> burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Accordingly, the issue of whether particular ESI falls with the scope of

a duty to preserve depends not only on the ESI's potential relevance to claims and defenses, but

also on whether preservation of the ESI is *proportional* to the needs of the case considering,

among other factors, the importance of the ESI in resolving the issues at stake in the litigation.

*See Pippins v. KPMG LLP*, 279 F.R.D. 245, 255 (S.D.N.Y. 2012) (noting that "proportionality is

necessarily a factor in determining a party's preservation obligations").

The Liquidators have failed to show that a reasonable person, taking into account the

apparent needs of the case, would have taken steps to preserve ESI for the six individuals at

issue.  The scope of a duty to preserve evidence is normally evaluated based on the content of the

pleading or other document that provided notice of the lawsuit.  *See CBF*, 2021 WL 4190628,

at *14 ("[A]ny obligation to preserve that the [notice of breach] letter triggered would be limited

to the scope of its contents[.]").  In this case, however, there is nothing in the pleadings that

-13-

would have put a reasonable person on notice that ESI from six BIL employees should be preserved.[4]

For example, the initial pleading in the case that would become the 10-3636 Action was a Summons with Notice filed in New York State Supreme Court. (Butler Decl. Ex. 1.) This two-page document does not make any reference to BIL, and it certainly does not identify any specific payment allegedly made to BIL. Obviously, the content of this bare-bones document would not put a reasonable person on notice that ESI from the six BIL employees should be preserved.

The first pleading naming BIL as a defendant was the Amended Summons with Notice filed in the state court action on August 17, 2010. (Butler Decl. Ex. 3.) This document, like the original Summons with Notice, contains only a very brief description of the nature of the action. This document, once again, is too vague for a reasonable person to conclude that the ESI associated with six individuals should be preserved.

The Amended Summons with Notice does disclose that the Liquidators are seeking to recover payments made to BIL from one or more of the Fairfield Funds. Accordingly, one might argue that the Amended Summonses gave rise to a duty to preserve ESI from *all* BIL employees who were involved in transactions with those funds. The flaw in this argument is that ESI preservation on such a scale would not have been proportional to the needs of the 10-3636 Action, which seeks to claw back only one redemption payment from BIL. The ambiguity of

---

[4] The pleadings were BIL's only source of information about the scope of document preservation for the 10-3636 Action. The Liquidators did not send any document retention notice to BIL either before or after the litigation commenced. Likewise, the Liquidators did not seek any court order relating to the preservation of ESI in the 10-3636 Action. *See* Fed. R. Civ. P. 37(e), Advisory Committee Notes (2015 Amendment) ("Once litigation has commenced, if the parties cannot reach agreement about preservation issues, promptly seeking judicial guidance about the extent of reasonable preservation may be important.").

this early pleading could not give rise to a *broader* duty to preserve in the 10-3636 Action than a clear and particularized pleading, filed at the same time, would have created.[5]

Following removal and transfer to the Bankruptcy Court, the Liquidators filed a Complaint in the 10-3636 Action on September 21, 2010. (Butler Decl. Ex. 5.) The initial Complaint provides more detail on the claims made by the Liquidators by including individual claims for unjust enrichment, money had and received, mistaken payment and constructive trust. It does not, however, contain any specific allegations about BIL. Accordingly, a reasonable person would not conclude, from reading the Complaint, that ESI from six individuals at BIL should be preserved.

The Liquidators filed a First Amended Complaint on January 10, 2011. (*Id.* Ex. 8.) In this pleading, for the first time, the Liquidators added exhibits listing a total of 1,536 individual redemptions from the Fairfield Sentry and Fairfield Sigma funds. (*Id.*, Exs. A & B.) The First Amended Complaint, however, does not connect any of the 80+ defendants to any one or more of the 1,536 redemptions. Thus, from the face of the First Amended Complaint, a reasonable person cannot tell which of the 1,500+ redemptions, if any, are alleged to have involved BIL. Accordingly, a reasonable person would not have concluded, from the information provided in the First Amended Complaint, that ESI from the six individuals at BIL should be preserved for use in this case.[6]

---

[5] Also, when the complaint in the 10-4090 Action was filed in October 2010, it would have been clear to a reasonable person that the 10-3636 Action did *not* relate to *all* redemption payments received by BIL from the Fairfield Funds. Indeed, at that time, there was little basis for a reasonable person to understand the difference between the 10-3635 Action, the 10-3636 Action and the 10-4090 Action.

[6] The redemption payment to BIL is one of the 1,536 redemptions listed in the First Amended Complaint. The Liquidators have not argued that BIL had a duty to sift through the exhibits to the First Amended Complaint and make its own, independent determination that only one of the listed payments applies to BIL. Normally, the scope of a duty to preserve is determined by an

The Liquidators went on to file several more amended complaints, culminating with the Fifth Amended Complaint on August 12, 2021. Each of the amended complaints names 80+ defendants, including BIL, and none of them connects any of the 1,500+ alleged redemptions to any particular defendant. Accordingly, even as of August 12, 2021, a reasonable person could not have concluded, based on the content of the various pleadings in this case, that the ESI from the six individuals at BIL should be preserved.

In short, the fundamental ambiguity of the pleadings filed by the Liquidators is at odds with any claim that BIL had a duty to preserve ESI for six specific BIL employees. Certainly, a reasonable person could not know, merely by reading the pleadings, that BIL is alleged in this case to have received only one redemption, or that six specific BIL employees were involved in that redemption and the corresponding subscription. For this reason, the Liquidators have not met their burden of showing that the scope of BIL's duty to preserve extended to ESI for these six BIL employees.

### C.  The Liquidators Have Not Established That Internal Emails Were Lost Due to a Failure to Preserve After August 30, 2010.

Even if the Court concludes that BIL had a duty to preserve the ESI from the six individuals at some point after August 30, 2010, the question remains of whether there was any relevant ESI in existence at that time to preserve. For *internal* emails at BIL, there is not an obvious answer to that question.[7] The redemption at issue in this action took place in August 2007, and the corresponding subscription took place more than two years earlier in

---

objective evaluation of the pleadings, not by the defendant's subjective evaluation of the case. In any event, if BIL had a duty to develop its own view of the case, such a duty could not have arisen before the First Amended Complaint was filed on January 10, 2011.

[7] The situation is different for external emails, which would have been preserved for 10 years on the bank's "journal" server. (*See* Dewitte Tr. 66:4-69:7.) External emails are addressed in the next section.

April 2005.  (Butler Decl. ¶ 19; *see also* Flugman Decl. Ex. 2.)  This means that at least *three years* passed between any relevant event and August 30, 2010, when BIL first received notice of this lawsuit.  To claim spoliation of internal emails, the Liquidators have the burden to show that internal emails maintained by relevant employees remained in existence at that time.  *See Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 707 (S.D.N.Y. 2017) (noting that "plaintiff must show that defendants had an obligation to preserve the evidence *at the time it was destroyed*" (emphasis added; internal quotation marks and alterations omitted)).

There is no evidence that the six BIL employees retained internal emails related to the redemption at issue for three years or more.  For example, the Liquidators do not have testimony from any of the employees regarding their individual email retention practices, and the Liquidators did not seek that type of information in their Rule 30(b)(6) deposition notice.  (*See* Flugman Decl. Ex. 18.)  Accordingly, the Court has no basis for concluding that relevant internal emails for these employees remained in existence when BIL's duty to preserve evidence first arose in this case.

        **D.**        **Supposedly "Lost" External Emails Have Been Replaced Through Discovery From Other Sources.**

The Liquidators have a better argument with respect to *external* email, that is, email to and from parties external to the BIL organization.  The reason is that external emails were automatically preserved for ten years on a "journal server" maintained by BIL's email vendor.  (*See* Dewitte Tr. 66:4-69:7.)  Thus, there is evidence that emails to and from external parties from 2007 and earlier still would have been available on BIL's journal server after August 30, 2010.  There is no dispute that a litigation hold was not placed on BIL's journal server, and therefore external emails from 2007 would have been deleted in 2017 by BIL's email vendor as a matter of routine practice.

-17-

With respect to external emails, however, the Liquidators fall short on the third element under Rule 37(e).  They have not proven that relevant external email cannot be replaced from another source through additional discovery.  *See Doubleline*, 2021 WL 1191527, at *6 ("Ordinarily, if emails were sent to or from other parties, those emails are not 'permanently lost or unrecoverable' because they can be replaced in discovery by obtaining them from those other parties.").

When considering this element, it is important to bear in mind that discovery in this case to date has been limited to the issue of personal jurisdiction.  Jurisdictional discovery is always narrower than the more general discovery that may be permitted later in a case.  *See Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 599 (S.D.N.Y. 2017) (noting that jurisdictional discovery is "not appropriate" when it "goes as much to the heart of plaintiffs' claims on the merits as it does the jurisdictional issues").  Relevant here, the Liquidators have not yet had the opportunity to conduct significant third-party discovery tailored to the issues in this case.  For these reasons, it would be premature to reach any conclusion on the third element of spoliation under Rule 37(e), at least as it relates to external emails.  Simply put, we do not know yet whether additional discovery in this case may reveal external emails from other sources.

Even in the absence of full discovery in this case, the record is clear that the Liquidators have been successful in obtaining copies of external emails that can no longer be found in BIL's files.  Indeed, the main evidence of "missing" external emails offered by the Liquidators consists of copies of the very same emails obtained by the Liquidators from other sources.  (*See* Flugman Decl. Exs. 3-6.)  The Liquidators obviously cannot claim that the third element under Rule 37(e) is satisfied with respect to these emails.  For other, unspecified external emails involving BIL,

the Liquidators have failed to present evidence that any such emails existed when a duty to

preserve came into effect, and that they cannot be obtained from other sources through future

discovery in this case.

### III.    THE LIQUIDATORS HAVE NOT EXPERIENCED PREJUDICE FROM ANY LOST INFORMATION.

If the moving party establishes the three basic elements of spoliation, Rule 37(e)(1)

requires a finding of "prejudice . . . from loss of the information" and allows the Court to order

"measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  Even if

there is "proof of relevance," that "does not necessarily equal proof of prejudice."  *In re Keurig*,

341 F.R.D. at 495 (internal quotations omitted).  Rather, as set forth in the Advisory Committee

Notes:  "An evaluation of prejudice from the loss of information necessarily includes an

evaluation of the information's importance in the litigation."  Fed. R. Civ. P. 37(e)(1), Advisory

Committee Notes (2015 Amendment).  In addition, "[t]he moving party must come forward with

plausible, concrete suggestions as to what the destroyed evidence might have been."  *In re

Keurig*, 341 F.R.D. at 495 (internal quotation marks and alterations omitted); *see also Dilworth

v. Goldberg*, 3 F. Supp. 3d 198, 202 (S.D.N.Y. 2014) (noting that "speculative assertions as to

the existence of documents do not suffice to sustain a motion for spoliation of evidence"

(internal quotation marks omitted)).  Thus, the evaluation of prejudice must involve some non-

speculative determination of the content of the lost information, and an assessment of its

significance in the litigation.

In this case, based on the discovery that has taken place to date, there is no basis for the

Court to conclude that significant information has been lost.  The Liquidators strive to suggest

that emails demonstrating contacts with the United States in connection with the redemption at

issue may have been lost.  (*See* Liquidators' Br. 33.)  There is no circumstantial evidence,

-19-

however, pointing to the existence of such documents.  For example, none of the hard-copy

documents (including email) produced by BIL, or electronic documents produced by other non-

parties, suggest that there was any communication with the United States in connection with the

redemption.  (*See* Flugman Decl. Ex. 2.)  Moreover, the Liquidators' Rule 30(b)(6) deposition

did not seek information about communications with the United States and, accordingly,

Mr. Dewitte was not asked about any such contacts in connection with the redemption at issue.

(*See* Flugman Decl. Ex. 18.)  Thus, this is not a case in which witness testimony suggests the

existence of emails that have gone missing.  Without at least some circumstantial evidence that

relevant emails actually existed and were lost through a failure to preserve by BIL after

August 30, 2010, there is no basis for the Court to make a finding of prejudice.

## IV.    THE LIQUIDATORS HAVE NOT ESTABLISHED INTENT TO DEPRIVE THE LIQUIDATORS OF THE USE OF INFORMATION.

The Liquidators have not proven that BIL acted with intent to deprive the Liquidators of

the use of information in the 10-3636 Action.  Such a finding would be necessary to impose the

more severe sanctions available under subdivision (2) of Rule 37(e), including any presumption

that the lost information was unfavorable to BIL.  The intent standard under Rule 37(e)(2) is

"both stringent and specific"—*i.e.*, "the intent contemplated by Rule 37 is not merely the intent

to perform an act that destroys ESI but rather the intent to actually deprive another party of

evidence."  *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 66

(S.D.N.Y. 2020) (internal quotation marks omitted); *see also Leidig v. Buzzfeed, Inc.*, No. 16

Civ. 542, 2017 WL 6512353, at *11 (S.D.N.Y. Dec. 19, 2017) (noting that there must be "intent

to deprive another party of the information's use in the litigation" (emphasis in original)).  Even

"gross negligence" or a "protracted disregard" of preservation obligations are not by themselves

sufficient to show the requisite intent.  *See Charlestown*, 337 F.R.D. at 67.  The moving party

has the burden to prove intent to deprive, and the standard usually applied is "clear and convincing" evidence. *See CBF*, 2021 WL 4190628, at *18 (collecting cases applying the clear and convincing standard); *see also Doubleline*, 2021 WL 1191527, at *8 (applying the clear and convincing standard).

In this case, there is no evidence—let alone clear and convincing evidence—that BIL acted with the specific purpose of depriving the Liquidators of the use of information in this proceeding. There is no evidence, for example, that BIL targeted specific ESI for destruction. On the contrary, the evidence shows that BIL took significant steps to preserve documents when it learned of this action in late 2010, including identifying and sequestering hard-copy files (which included many relevant emails) and sending out a broad document retention notice seeking the preservation of both hard-copy and electronic documents by individual employees. The fact that BIL could have done more to preserve emails in electronic form does not change the fact that BIL took significant steps at the appropriate time to preserve evidence. The steps actually taken by BIL are inconsistent with any suggestion that BIL acted with intent to deprive the Liquidators of evidence. *See In re Keurig*, 341 F.R.D. at 521 (concluding that there was no "intent to deprive" in part because the party "timely issu[ed] litigation holds" to numerous custodians).

The Liquidators contend that courts "often" infer an intent to deprive from the "conscious dereliction of a known duty to preserve." (Liquidators' Br. 36.) Respectfully, the Liquidators' proposed standard is equivalent to gross negligence, a standard for intent to deprive that Rule 37(e) expressly rejects. *See McIntosh v. United States*, No. 14 Civ. 7889, 2016 WL 1274585, at *31 (S.D.N.Y. Mar. 31, 2016). Moreover, the cases cited by the Liquidators can be distinguished from this case. For example, *Moody v. CSX Transport., Inc.*, 271 F. Supp. 3d 410

(W.D.N.Y. 2017), involved the loss of event recorder information that would have been "highly

relevant—if not the most important objective evidence" in a railway accident case. (*Id.* at 431.)

The failure to preserve that data cannot be compared with the loss of ESI versions of email in

this case. In *CrossFit Inc. v. Nat'l Strength & Conditioning Ass'n*, 14 Civ. 1191, 2019 WL

6527951 (S.D. Cal. Dec. 4, 2019), the finding of intent resulted from a long history of

obstructive behavior in discovery. *See id.* at *11. Here, in contrast, BIL has cooperated in the

discovery process by, among other things, producing many emails for the relevant redemption in

hard-copy format.

It should not be overlooked that this case is highly unusual in that more than *ten years*

passed between the initial filing of the complaint and the beginning of fact discovery. In many

federal cases, fact discovery proceeds within a year or two of the filing of the case. If this had

been a more normal case, with fact discovery proceeding within a few years after filing, the

document preservation measures taken by BIL probably would have been adequate to preserve

ESI for use in this case. For example, without taking any extra steps, BIL could have relied on

the journal server to preserve external emails relating to the redemption at issue for *seven years*

after the 10-3636 Action was commenced. Thus, it is in large part due to the unusual passage of

time in this case—and not any intentional act of BIL—that relevant ESI may have been lost.

**<u>Conclusion</u>**

For the foregoing reasons, the Liquidators' Motion for Sanctions under Rule 37(e) should

be denied.


Dated: February 22, 2023                    Respectfully Submitted,
       New York, New York

                                            CLIFFORD CHANCE US LLP


                                            By:   <u>  s/ Jeff E. Butler                    </u>

                                            Jeff E. Butler
                                            Meredith George
                                            31 West 52nd Street
                                            New York, NY 10019
                                            Telephone: (212) 878-805
                                            jeff.butler@cliffordchance.com
                                            meredith.george@cliffordchance.com


                                            *Attorneys for Defendant Dexia*
                                            *Banque Internationale à Luxembourg*
                                            *SA, now known as Banque*
                                            *Internationale à Luxembourg SA*