**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
(212) 209-4800
David J. Molton
May Orenstein
Daniel J. Saval
Kerry Quinn

*Attorneys for the Foreign Representatives*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | **Chapter 15 Case** |
| | ) | |
| **Fairfield Sentry Limited, et al.,** | ) | **Case No. 10-13164 (BRL)** |
| | ) | |
| **Debtors in Foreign Proceedings.** | ) | **Jointly Administered** |
| | ) | |
| | ) | |
| | ) | |
| **Fairfield Sentry Limited, et al. (In Official Liquidation), acting by and through the Foreign Representatives Thereof** | ) | **Adv. Pro. No. 10-3636** |
| | ) | |
| **Plaintiffs,** | ) | **Complaint** |
| | ) | |
| **-against-** | ) | |
| | ) | |
| **ABN AMRO Schweiz AG, Adler and Co Privatbank AG, Allianzbank SPA/Unifortune Conservative Side Pocket, Alternative Investment Strategies, Arsenal SPC, Arsenal SPC OBO Glasgow SEG Port, Banca Arner SA, Banca Unione Di Credito, Bank Hapoalim Switzerland Ltd., Bank Julius Baer & Co. Ltd., Bank Sarasin & CIE, Banque Cantonale Vaudoise, Banque Cramer & CIE SA, Banque Safdie SA, Barclay's Bank PLC Singapore Wealth, BBH Lux Guardian II, BBH Lux Ref Fairfield GRN, Bbva (Suisse) SA, BCV** | ) | **Jury Trial Demanded** |

1

| | |
|---|---|
| AMC Defensive AL Fund, BNP Paribas | ) |
| (Suisse) SA, BNP Paribas (Suisse) SA Ex | ) |
| Fortis, BNP Paribas (Suisse) SA Private, | ) |
| BSI AG, BSI Ex Banca Del Gottardo, Caceis | ) |
| Bank Luxembourg, CBB (BVI)/ The Alkima | ) |
| Fund, CBT Gems Low Vol Reg, Compagnie | ) |
| Bancaire Helvetique, Centrum Bank AG | ) |
| (AMS), Fidulex Managament Inc, Lariden | ) |
| Leu Ltd., Corner Banca SA, Credit Suisse | ) |
| AG Zuirch, Dexia Banque International A | ) |
| Luxembourg, Dresdner Bank Schweiz, EFG | ) |
| Bank SA Switzerland, EFG Eurofinancier | ) |
| D'Invest MCL, Endurance Absolute Ltd. | ) |
| Master, Fairfield Investment GCI, Fairfield | ) |
| Investment Fund Ltd., Fairfield Masters | ) |
| Ltd., Falcon Private Bank, FCL IFP Global | ) |
| Diversified CLS, FIF Advanced Ltd., Finter | ) |
| Bank Zuirch, Harmony Capital Fund Ltd., | ) |
| IHAG Handelsbank AG, Incore Bank AG, | ) |
| JP Morgan (Suisse) SA, Karla | ) |
| Multistrategies Ltd., KBC Investments | ) |
| LTD., LGT Bank In Liechtenstein AG, | ) |
| Liechtensteinische LB Reinvest AMS, | ) |
| Lloyds TSB Bank Geneva, Lombard Odier | ) |
| Darier Hentsch & CIE, Longboat Ltd., | ) |
| Master Capital and Hedge Fund, NBK | ) |
| Banque Privee Suisse SA, Pictet & CIE, | ) |
| PKB Privatbank AG, Private Space Ltd., | ) |
| Quasar Funs SPC, RBC Dexia Investor | ) |
| Service Julius Baer SICAV, RBS Coutts | ) |
| Bank Ltd., Richourt AAA Multistrategies, | ) |
| Rothscheld Bank AG Zurich (Dublin), | ) |
| Rothschild Bank Geneva (Dublin), | ) |
| Rothschild Lugano Dublin, Sella Bank AG, | ) |
| SIS Seeganintersettle, Six SIS Ltd., Societe | ) |
| Generale Bank & Trust, Soundview Fund, | ) |
| Springer Fund of Funds Ltd., Swisscanto | ) |
| FD Centre Clients A/C, T1 Global Fund | ) |
| Ltd., Teorema Alternative Strategies, UBS | ) |
| AG New York, UBS AG Zurich, UBS Jersey | ) |
| Nominees, Verwaltungs UND Privat-Bank | ) |
| AG Aktiengesellschaft (AMS), Vorarlberger | ) |
| Landes UND Hypothekenbank | ) |
| Ankiengesellscharft and Beneficial Owners | ) |
| of the Accounts Held in the Name of Citco | ) |

| Global Custody NV 1-1000 and Beneficial Owners of the Accounts Held in the Name of Citco Global Custody (NA) NV 1-1000, | ) ) ) ) |
|---|---|
| Defendants. | ) ) ) ) |

Plaintiffs Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited, ("Lambda" and collectively, the "Funds"), through their attorneys Brown Rudnick LLP, for the complaint against Defendants, allege the following based on personal knowledge or information derived from their books and records or from other sources, including, *inter alia*, court filings and statements of governmental agencies and other parties.

## PRELIMINARY STATEMENT

1.    This action and similar actions brought by the Funds have been authorized by their respective court-appointed liquidators to recover payments made by the Funds for the redemption of Sentry, Sigma and Lambda shares prior to December 2008.  Sentry, Sigma and Lambda were created as a means for private investment in managed accounts established with Bernard L. Madoff Investment Securities LLC ("BLMIS"), a broker dealer purportedly providing investment advisory services.  Following revelations in December 2008 that Bernard L. Madoff ("Madoff"), the proprietor of BLMIS, had been operating a Ponzi scheme, the Funds were involuntarily put into liquidation in proceedings commenced in the Commercial Division of the High Court of Justice, British Virgin Islands.

2.    From the Funds' inception until the disclosure of Madoff's fraud, substantially all investor funds, net of fees and expenses, raised by Sentry, Sigma and

Lambda through the sale of shares were transferred to BLMIS for investment in accounts managed by Madoff.  Prior to December 2008, the voting, participating shares of Sentry, $.01 par value per share, Sigma, €.01 par value per share, and Lambda, CHF.01 par value per share, (the "Shares") were redeemable in accordance with their terms for a price equal to their "Net Asset Value."  Net Asset Value was to be determined, in accordance with applicable accounting standards, as the value of the respective assets of Sentry, Sigma and Lambda divided by the number of shares outstanding in each fund, net of certain expenses ("Net Asset Value").  From time to time, in order to make payments believed by the Funds to be due upon redemption of Shares ("Redemption Payments"), the Funds made withdrawals from their BLMIS accounts.

3.      At all relevant times, the Funds believed payments received by them from BLMIS were the proceeds from the sale of securities held by BLMIS for the accounts of the Funds.  The Funds furthermore believed that the amount, per share, paid by them for each Share redeemed was equal to the per share Net Asset Value.

4.      At all relevant times, the Funds were mistaken both as to the source of the funds received by them from BLMIS and the value and existence of assets held for the Funds' accounts by BLMIS.  Upon information and belief, none of the securities shown on statements provided to the Funds by BLMIS as being held for their accounts existed in fact.  Furthermore, upon information and belief, amounts withdrawn by the Funds from their accounts with BLMIS, believed by the Funds to be the proceeds from the sale of securities held by BLMIS for the Funds, were, in fact, derived from amounts obtained by BLMIS from deposits made by the Funds, or from other investors and customers of BLMIS.  As a result of these mistakes, at all relevant times, the Net Asset Value of each

4

Share redeemed was miscalculated, and Redemption Payments were mistakenly made for amounts far in excess of the actual Net Asset Value of Shares redeemed.

5.      During the period from and after April 20, 2004, the Funds made Redemption Payments aggregating USD $1,718,850,176.68 to the above beneficiaries of accounts held in the name of Citco Global Custody NV and Citco Global Custody (NA) NV (collectively, the "Citco Defendants").  At the time such payments were made, the Funds mistakenly believed that such payments were in the amount of the Net Asset Value of the Shares tendered at the time of redemption.  In fact, however, the Redemption Payments made to the Citco Defendants far exceeded the actual Net Asset Value of the Shares redeemed.  Moreover, to the extent that the funds used to pay such Redemption Payments were made with amounts that had been withdrawn by the Funds from their BLMIS accounts, such amounts were not, as the Funds believed them to be, proceeds of the liquidation of securities held for their accounts.  On information and belief, any amounts obtained by the Funds from BLMIS to make Redemption Payments to the Citco Defendants were obtained from Sentry, Sigma and Lambda investors other than the Citco Defendants or other investors who had made deposits, directly or indirectly, with BLMIS.

6.      Upon information and belief, the Citco Defendants have either retained the Redemption Payments made to them by the Funds for their own account and benefit or, alternatively, paid all or some portion of such payments to or for the account of persons or entities (the "Beneficial Shareholders") for whom the Citco Defendants may have subscribed for shares of the Funds in the capacity of trustee, agent, representative, nominee or custodian.

7.      In December 2008, it became known to the Funds that BLMIS had been operated for many years by Madoff as a massive Ponzi scheme and that account statements rendered by BLMIS prior to December 2008, showing that the Funds had securities having a market value in excess of $6 billion on account with BLMIS, were entirely fictitious.  Following the revelation of the fraud, the Funds' board of directors suspended any further redemptions of the Funds' shares and the calculation of the Net Asset Value.  As of December 2008 and presently, Sentry, Sigma and Lambda have, respectively, approximately 4.7 million, 3.8 million and 0.2 million shares outstanding.

8.      The Funds' actual assets are estimated to be far less than the amount needed by the Funds to satisfy claims that have been or may be asserted against them. Irving H. Picard, the Trustee appointed by the United States District Court for the Southern District of New York for the liquidation of BLMIS (the "BLMIS Trustee"), has asserted claims against Sentry in an adversary proceeding pending before the United States Bankruptcy Court of the Southern District of New York, Picard v. Fairfield Sentry Limited, et al., No. 08-01789 (BRL) (the "BLMIS Adversary Proceeding").  Pursuant to the complaint filed in the BLMIS Adversary Proceedings, the BLMIS Trustee seeks recovery from Sentry of approximately $3.2 billion transferred to it from BLMIS, which funds, the BLMIS Trustee alleges, were the misappropriated assets of other direct and indirect investors of BLMIS.  A substantial amount of such transferred funds were applied by Sentry to the making of Redemption Payments.

9.      Unless Redemption Payments mistakenly paid to shareholders are recovered by the Funds, they will be unable to satisfy their liabilities and claims that have been made or are expected to be made against them.  Moreover, to the extent such

liabilities and claims must be satisfied solely from the Funds' current assets, the Defendants will have been unjustly enriched since they will not bear their proportionate share of such liabilities and claims, but rather Defendants would retain a windfall at the expense of other shareholders, claimants and creditors of the Funds.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1334(b), as this adversary proceeding arises under, arises in and/or relates to the Chapter 15 proceedings of the above-captioned Debtors, In re Fairfield Sentry Limited, et al., No. 10-13164 (BRL), pending in this Court.  Additionally, pursuant to section 78eee(b)(2)(A)(iii) of the Securities Investor Protection Act ("SIPA"), which incorporates 28 U.S.C. § 1334(b) and applicable provisions of Title 11 of the United States Code, jurisdiction is also proper in this Court because this action also relates to the consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, pending in this Court under the caption Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, SIPA Liquidation No. 08-1789 (BRL).  Pursuant to the standing order of reference of the United States District Court for the Southern District of New York, dated July 10, 1984, all proceedings related to cases under Title 11 of the United States Code (as amended, the "Bankruptcy Code") are referred to this Court for adjudication.

11.     This is a core proceeding under 28 U.S.C. §§ 157(b)(2).  Should the Court determine this to be a non-core proceeding, the Funds consent to entry of final judgment and order by this Court.

12.     This Court has jurisdiction over the Citco Defendants and any Beneficial Shareholders pursuant to Rules 7004(d) and (f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") because HSBC and the Beneficial Shareholders, on information and belief, conducted investment transactions from within or directed to the United States.

13.     Moreover, upon information and belief, this Court has jurisdiction over the Citco Defendants and any Beneficial Shareholders by virtue of the legally binding and valid agreements and representations set forth in one or more Subscription Agreements the Citco Defendants entered into with the Funds (collectively, the "Subscription Agreement").

14.     The Subscription Agreement provides for, *inter alia*, the irrevocable submission by the Citco Defendants to the jurisdiction of the New York courts with respect to any proceeding in respect of the Funds and the Citco Defendants' consent to service of process by the mailing of such process to the Citco Defendants. Furthermore, by executing the Subscription Agreement, the Citco Defendants agreed to all terms and conditions contained therein, including the express provision that any agreement made by the Citco Defendants in the Subscription Agreement would also apply to any other person for whom the Citco Defendants was subscribing as trustee, agent, representative, or nominee – i.e., all Beneficial Shareholders. Moreover, by executing the Subscription Agreement, the Citco Defendants represented that they had all requisite authority from Beneficial Shareholders to execute and perform any and all obligations on their behalf, and also agreed to indemnify the Funds for any damages resulting from an assertion by a

Beneficial Shareholder that the Citco Defendants lacked proper authorization to enter into the Subscription Agreement or perform the obligations thereof.

15.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## PARTIES

16.  Sentry, a British Virgin Islands company, was organized in 1990 under the International Business Company Act of the British Virgin Islands and was subsequently re-registered as a business company under the BVI Business Companies Act 2004. Sentry's registered agent is Codan Trust company (B.V.I.) located at Romasco Place, Wickhams Cay 1, Road Town, Tortola, BVI.  Sentry is currently in liquidation in proceedings commenced on April 21, 2009 in the Commercial Division of the High Court of Justice, British Virgin Islands (the "BVI Court").

17.  Sigma, a British Virgin Islands company, was organized in 1990 under the International Business Company Act of the British Virgin Islands and was subsequently re-registered as a business company under the BVI Business Companies Act 2004. Sigma's registered agent is Codan Trust company (B.V.I.) located at Romasco Place, Wickhams Cay 1, Road Town, Tortola, BVI.  Sigma is currently in liquidation in proceedings commenced on April 21, 2009, in the BVI Court.

18.  Lambda, a British Virgin Islands company then known as Fairfield Henry Limited, was organized in 1990 under the International Business Company Act of the British Virgin Islands and was subsequently re-registered as a business company under the BVI Business Companies Act 2004. Lambda's registered agent is Codan Trust company (B.V.I.) located at Romasco Place, Wickhams Cay 1, Road Town, Tortola, BVI.  Lambda is currently in liquidation in proceedings commenced on February 27,

9

2009, in the BVI Court.  This action and other similar actions brought by Sentry, Sigma and Lambda have been authorized by these funds' BVI Court-appointed liquidators with the permission of the BVI Court.

19.    The Citco Defendants were, at all relevant times, registered holders of Shares.  Upon information and belief, the Citco Defendants are various corporate entities and individuals organized and residing in various jurisdictions.  Upon information and belief,  the Citco Defendants subscribed for the purchase of Shares by entering into one or more Subscription Agreements with the Funds (collectively, the "Subscription Agreement").  All purchases of Shares by the Citco Defendants were subject to the terms of the Subscription Agreement.

20.    Defendants "Beneficial Owners of the Accounts Held in the Name of Citco Global Custody NV 1-1000 and Beneficial Owners of the Accounts Held in the Name of Citco Global Custody (NA) NV 1-1000" are any persons or entities having a beneficial ownership or interests in Shares of the Funds issued to the Citco Defendants and on whose behalf the Citco Defendants were acting as trustee, agent, representative, or nominee (individually, a "Beneficial Shareholder" and collectively, "Beneficial Shareholders").

<u>**NOTICE PURSUANT TO FED. R. CIV. P. 44.1**</u>

21.    Issues to be resolved in this case may be determined to be governed by the laws of the British Virgin Islands.  In that event, Plaintiffs intend to rely upon the applicable laws of that territory.

## FACTUAL ALLEGATIONS

22.     Sentry was the largest of all so-called "feeder funds" to maintain accounts with BLMIS.  Sigma and Lambda were indirect BLMIS feeder funds established for foreign currency (respectively, Euro and Swiss franc) investment through purchase of shares of Sentry.  Sentry's account statements with BLMIS as of the end of October 2008 showed in excess of $6 billion of assets supposedly held by BLMIS.  As stated in its offering materials, Sentry's investment objective was to achieve capital appreciation of its assets primarily through investments in BLMIS.  Sentry raised funds for investment in BLMIS by selling its Shares, which were listed on the Irish Stock Exchange in Dublin, to qualified investors.

23.     Substantially all of the funds (some 95%) raised by Sentry from sales of its Shares, net of fees and expenses, were turned over to BLMIS, and supposedly credited to accounts held in the name of Sentry with BLMIS, purportedly for use in a split-strike conversion investment strategy.  In accordance with the Funds' Articles of Association and other relevant documents governing the Funds and their Shares, from time to time, the Funds paid to shareholders, for each Share tendered for redemption, an amount that was based on the Funds' Net Asset Value, as it was then calculated.

24.     In calculating Net Asset Value, the Funds used and relied upon account statements rendered from time to time by BLMIS purportedly showing securities or interests or rights in securities held by BLMIS for the account of Sentry.  Generally, all securities identified on BLMIS account statements were traded on public exchanges and had readily ascertainable market values.

25.     Upon information and belief, the purchases and sales of securities and
other transactions shown on the account statements provided by BLMIS as having been
made for the account of Sentry never in fact occurred and no investments were ever made
by BLMIS for the account of Sentry.  Upon information and belief, all assets shown on
BLMIS account statements rendered to the Funds were entirely fictitious.  Further, upon
information and belief, amounts deposited by the Funds with BLMIS for the purchase of
securities to be held by BLMIS for the account of Sentry were used by Madoff to pay
requests for payments or redemptions from other BLMIS account holders or were
misappropriated by Madoff for other unauthorized uses.

26.     From time to time, to make Redemption Payments, the Funds requested
payments from BLMIS.  The Funds believed that the amounts provided to it in response
to such requests represented proceeds from the sale or liquidation of securities or
positions held for the account of Sentry.  Upon information and belief, however,
payments made by BLMIS purportedly representing the proceeds of securities
transactions were in fact deposits made with BLMIS by the Funds and/or other investors
with BLMIS.

27.     During the period from and after April 20, 2004, the Citco Defendants
received Redemption Payments totaling USD $1,718,850,176.68 from the Funds in
respect of Shares tendered for redemption.

28.     On December 11, 2008, the FBI arrested Madoff for violation of federal
securities laws.  On that same day, the United States Attorney brought criminal charges
against Madoff, alleging that Madoff ran a multi-billion dollar Ponzi scheme.  United

States v. Madoff, No. O8-mj-2735 (S.D.N.Y. filed Dec. 11, 2008).  Upon arrest, Madoff

was reported to have told the agents that "there is no innocent explanation" for the

fraudulent scheme he had orchestrated and confessed that he "paid investors with money

that wasn't there." Although Madoff had purported to invest funds obtained from

investors and feeder funds in securities, in reality, funds obtained from investors were not

used to purchase securities.   Instead, new funds obtained from investors, including

amounts obtained from Sentry, Sigma and Lambda, were misappropriated by Madoff and

used to fund withdrawals from accounts held by other investors with BLMIS, including

Sentry.  In March 2009, Madoff pleaded guilty to the criminal charges brought against

him, and he is now serving a 150-year sentence in federal prison.

29.    On December 11, 2008, the United States Securities and Exchange

Commission ("SEC") filed an emergency action in the Southern District of New York to

halt ongoing fraudulent offerings of securities and investment advisory fraud by Madoff

and BLMIS.   SEC v. Madoff, No. 08-cv-10791 (S.D.N.Y. filed Dec. 11, 2008). On

February 9, 2009, the SEC submitted to the Court a proposed partial judgment, to which

Madoff consented, imposing a permanent injunction and continuing relief against him,

including a permanent freezing of his assets.

30.    Following the revelation of the fraud,  the Funds' boards of directors

suspended any further redemptions of Sentry, Sigma and Lambda shares and the

calculation of the Net Asset Value. As of December 2008 and presently, Sentry, Sigma

and Lambda had, respectively, approximately 4.7 million, 3.8 million and 0.2 million

shares outstanding.

31.    On December 15, 2008, a trustee was appointed for the liquidation of the
BLMIS estate.  Proceedings for such liquidation are pending in the Bankruptcy Court for
the Southern District of New York under the caption Securities Investor Protection
Corporation v. Bernard L. Madoff Investment Securities LLC, SIPA Liquidation No. 08-
1789 (BRL).

32.    On May 18, 2009, the BLMIS Trustee commenced the BLMIS Adversary
Proceeding against Sentry and other defendants.  In the BLMIS Adversary Proceeding,
the BLMIS Trustee seeks to recover approximately $3.5 billion from Sentry and others
on account of transfers that BLMIS allegedly made to Sentry and other persons during
the six year period preceding the filing of the BLMIS liquidation proceedings.  These
transfers are alleged by the BLMIS Trustee to have been preferential transfers under
Section 547 of the Bankruptcy Code and/or fraudulent transfers under Sections 544 and
548 of the Bankruptcy Code and applicable state law.  The BLMIS Adversary Proceeding
is currently pending and the claims asserted therein are unresolved.

33.    On April 21, 2009, shareholders of Sentry and Sigma applied to the BVI
Court for the appointment of a liquidator over each of Sentry and Sigma.  On July 21,
2009, Messrs. Kenneth Krys and Christopher Stride were appointed by the BVI Court as
the joint liquidators of Sentry and Sigma in their separate liquidation proceedings, under
Matter Nos. BVIHCV2009/136 and BVIHCV2009/139, respectively, which are currently
pending before the BVI Court under Part VI, titled "Liquidation," of the Insolvency Act,
2003 of the BVI.   Effective on September 8, 2010, in accordance with BVI law,
Christopher Stride resigned from his position as official liquidator for Sentry and Sigma
and was replaced by Ms. Joanna Lau, who now serves as joint liquidator and foreign

representative for Sentry and Sigma along with Mr. Krys (together, the "Foreign Representatives").

34.    On February 27, 2009, a creditor of Lambda applied to the BVI Court for the appointment of a liquidator over Lambda.   On April 23, 2009, the BVI Court appointed Christopher Stride as a liquidator (together with Kenneth Krys and Christopher Stride in their capacity as joint liquidators of Sentry and Sigma, the "Liquidators") over Lambda its liquidation proceeding, under Matter No. BVIHCV 2009/74.   Effective on September 8, 2010, in accordance with BVI law, Christopher Stride resigned from his position as official liquidator for Lambda and was replaced by the Foreign Representatives, who now serve as joint liquidators and foreign representatives for Lambda.

35.    Upon appointment, the Foreign Representatives obtained, among other things, custody and control of the Funds' assets, the power to do all acts and execute, in the name and on behalf of the Funds, any deeds, receipts or other documents, and the power to compromise claims, commence litigation and to dispose of property on behalf of the Funds.

36.    Acting in accordance with authority afforded to them as Foreign Representatives, and with the consent of the BVI Court, the Foreign Representatives authorized this and similar actions against redeeming shareholders to be commenced for and in the name of the Funds.

## FIRST CLAIM
### *(Unjust Enrichment- Against the Citco Defendants)*

37.    The Funds repeat and allege again the allegations contained in paragraphs 1 through 36 above as if set forth herein.

38.    As alleged above, to the extent amounts were withdrawn from BLMIS to make Redemption Payments to the Citco Defendants, such withdrawn funds consisted of funds deposited with BLMIS by the Funds and other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

39.    By reason of its receipt of funds deposited by other investors with BLMIS, the Citco Defendants have been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

40.    It would offend principles of equity and good conscience to permit the Citco Defendants to retain the Redemption Payments it received from the Funds.

41.    Sentry is entitled to recover from the Citco Defendants a sum equal to the Redemption Payments received by them from the Funds.

## SECOND CLAIM
### *(Unjust Enrichment- Against Beneficial Shareholders)*

42.    The Funds repeat and allege again the allegations contained in paragraphs 1 through 41 above as if set forth herein.

43.    Upon information and belief, the Citco Defendants may have subscribed to all or some portion of the Shares issued to them under the Subscription Agreement in the capacity of trustee, agent, representative, or nominee for Beneficial Shareholders.

44.     Upon information and belief, the Citco Defendants may have paid to or credited some or all of the Redemptions Payments received by them to accounts of Beneficial Shareholders.  As alleged above, any payments received by Beneficial Shareholders upon the redemption of Shares issued to the Citco Defendants consisted of funds invested with BLMIS by the Funds and other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

45.     To the extent that a Beneficial Shareholder received any portion of the Redemption Payments paid to the Citco Defendants in their capacity as trustee, agent, representative, or nominee for a Beneficial Shareholder, such Beneficial Shareholder has been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

46.     It would offend principles of equity and good conscience to permit any Beneficial Shareholders to retain the Redemption Payments made by the Funds.

47.     The Funds are entitled to recover from any Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of the Funds held by them through the Citco Defendants.

### THIRD CLAIM
### *(Money Had and Received-Against the Citco Defendants)*

48.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 47 above as if set forth herein.

49.     As alleged above, the Redemption Payments received by the Citco Defendants upon the tender of Shares consisted of amounts deposited with BLMIS by the

Funds and other investors to BLMIS and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

50.     By reason of their receipt of funds representing the deposits with BLMIS of the Funds and other investors, the Citco Defendants have been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

51.     Furthermore, the Citco Defendants were not entitled to receive the Redemption Payments because the amounts of the Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received by the Citco Defendants for their redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

52.     To the extent that Redemption Payments are not recovered by the Funds, the loss will be disproportionately and unjustly borne by the Funds, their creditors and the current holders of shares in the Funds.

53.     It would offend principles of equity and good conscience to permit the Citco Defendants to retain the Redemption Payments they received from the Funds.

54.     By reason of the foregoing, the Funds are entitled to recover from the Citco Defendants a sum in an amount equal to the Redemption Payments.

## FOURTH CLAIM
### *(Money Had and Received-Against Beneficial Shareholders)*

55.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 54 above as if set forth herein.

56.    Upon information and belief, the Citco Defendants may have subscribed to all or some portion of the Shares issued to them under the Subscription Agreement in the capacity of trustee, agent, representative, or nominee for Beneficial Shareholders.

57.    Upon information and belief, the Citco Defendants may have paid to or credited some or all of the Redemptions Payments received by them to accounts of Beneficial Shareholders.  As alleged above, any payments received by Beneficial Shareholder upon the redemption of Shares issued to the Citco Defendants consisted of amounts deposited with BLMIS by the Funds or by other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

58.    To the extent that a Beneficial Shareholder received any portion of the Redemption Payments paid to the Citco Defendants in their capacity as trustee, agent, representative, or nominee for Beneficial Shareholders, such Beneficial Shareholders have been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

59.    Furthermore, Beneficial Shareholders were not entitled to receive any portion of the Redemption Payments paid to the Citco Defendants upon the redemption of Shares issued to them in their capacity as trustee, agent, representative, or nominee for Beneficial Shareholders because the amounts transferred by the Funds with respect to Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received for redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

60.    To the extent the Redemption Payments are not recovered by the Funds, the loss will be disproportionately and unjustly borne solely by the Funds, their creditors and the current holders of Shares in the Funds.

61.    It would offend principles of equity and good conscience to permit Beneficial Shareholders to retain the Redemption Payments made by the Funds.

62.    By reason of the foregoing, the Funds are entitled to recover from Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of the Funds held for them through the Citco Defendants.

## FIFTH CLAIM
### *(Mistaken Payment-Against the Citco Defendants)*

63.    The Funds repeat and allege again the allegations contained in paragraphs 1 through 62 above as if set forth herein.

64.    As described above, the Funds made each of the Redemption Payments to the Citco Defendants under the mistaken belief that the amounts paid to the Citco Defendants represented the proceeds of the sale of securities held for Sentry in accounts established with BLMIS.

65.    Upon information and belief, however, BLMIS did not hold any securities or interests of securities on account for Sentry and the payments made by BLMIS to Sentry to fund Redemption Payments to the Citco Defendants represented, in fact, funds deposited with BLMIS by the Funds and other investors.

66.    The Redemption Payments, while benefiting the Citco Defendants, were made to the detriment of the Funds, their creditors and the current holders of their Shares.

67.    Additionally, the Citco Defendants were not entitled to receive the Redemption Payments because, as was unknown to the Funds, the amounts transferred by the Funds with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received by the Citco Defendants for its redemption of Shares to be in excess of the actual Net Asset Value of such Shares.  In these circumstances, the Redemption Payments should be returned for the benefit of the Funds, their creditors and the current holders of Shares in the Funds.

68.    To the extent the Redemption Payments are not recovered by the Funds, the loss will be disproportionately and unjustly borne solely by the Funds, their creditors and the current holders of Shares in the Funds.

69.    It would thus offend principles of equity and good conscience to permit the Citco Defendants to retain the Redemption Payments.

70.    By reason of the foregoing, the Funds are entitled to recover from the Citco Defendants a sum in an amount equal to the Redemption Payments.

### SIXTH CLAIM
*(Mistaken Payment-Against Beneficial Holders)*

71.    The Funds repeat and allege again the allegations contained in paragraphs 1 through 70 above as if set forth herein.

72.    As described above, the Funds made each of the Redemption Payments to the Citco Defendants under the mistaken belief that the amounts paid to the Citco Defendants represented the proceeds of the sale of securities held for Sentry in accounts established with BLMIS.

73.    However, upon information and belief, BLMIS did not hold any securities or interests of securities on account for Sentry and the payments made by BLMIS to Sentry to fund Redemption Payments to the Citco Defendants represented, in fact, amounts deposited with BLMIS by the Funds and other investors.

74.    Upon information and belief, the Citco Defendants may have paid to or credited some or all of the redemptions payments received by them to accounts of Beneficial Shareholders.   As alleged above, any payments received by Beneficial Shareholders upon the redemption of shares issued to the Citco Defendants consisted of amounts deposited with BLMIS by the Funds and other investors and were not the proceeds of the sale of assets held by BLMIS for the account of Sentry.

75.    Additionally, Beneficial Shareholders were not entitled to receive any portion of the Redemption Payments received by the Citco Defendants upon the redemption of Shares issued to them in their capacity as trustee, agent, representative, or nominee for Beneficial Shareholders because, as was unknown to the Funds, the amounts transferred by the Funds with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the Redemption Payments received by the Citco Defendants for their redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

76.    The Redemption Payments, while benefiting any Beneficial Shareholder receiving any portion thereof, were made to the detriment of the Funds, their creditors and the current holders of their Shares.

77.    It would thus offend principles of equity and good conscience to permit any Beneficial Shareholder to retain the Redemption Payments.

78.     By reason of the foregoing, the Funds are entitled to recover from any Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of the Funds held for them through the Citco Defendants.

## SEVENTH CLAIM
### (Constructive Trust-Against all Defendants)

79.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 78 above as if set forth herein.

80.     As described above, upon receipt of a redemption request, the Funds made each redemption payment to the Citco Defendants based on a miscalculated and inflated Net Asset Value, which caused Redemption Payments to be in excess of the actual Net Asset Value of redeemed Shares.

81.     As alleged above, the Redemption Payments represented deposits with BLMIS made by the Funds and other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

82.     Upon information and belief, the Citco Defendants may have paid some or all of the Redemptions Payments they received to Beneficial Shareholders.

83.     By reason of their receipt of some or all of the Redemption Payments, Defendants have been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

84.     Furthermore, Defendants were not entitled to receive the Redemption Payments because the amounts transferred by the Funds with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the

payment received by the Citco Defendants for their redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

85.    It would offend principles of equity and good conscience to permit Defendants to retain the Redemption Payments.

86.    By reason of the foregoing, a constructive trust should be imposed on the Redemption Payments that were received by Defendants for the benefit of the Funds, their creditors and the current holders of Shares in the Funds.

## **PRAYER FOR RELIEF**

WHEREFORE, Sentry, Sigma and Lambda request the following relief:

87.    On the First, Third and Fifth Claims, judgment for compensatory damages in favor of the Funds against the Citco Defendants in an amount representing the Redemption Payments made to the Citco Defendants, plus interest;

88.    On the Second, Fourth and Sixth Claims, judgment for compensatory damages in favor of the Funds against Beneficial Shareholders in an amount representing the amounts of Redemption Payments received by Beneficial Shareholders, plus interest;

89.    On the Seventh Claim, imposing a constructive trust on Redemption Payments; and

90.    Awarding the Funds the costs and disbursements of the action, including reasonable attorneys' fees and accountants' and experts' fees, costs and expenses;

91.     Granting the Funds such other and further relief as the Court deems just

and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda

Limited demand a trial by jury.

Dated: New York, New York
        September 21, 2010

BROWN RUDNICK LLP

By: /s/ Kerry L. Quinn_____
        David J. Molton
        May Orenstein
        Daniel J. Saval
        Kerry L. Quinn

Seven Times Square
New York, New York 10036
Telephone: 212.209.4800
Facsimile: 212.209.4801

*Attorneys for the Foreign
Representatives*