# Exhibit 4

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG • BEIJING
BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL • SILICON VALLEY

CRAIG B. BROD
NICOLAS GRABAR
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY

MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
AUDRY X. CASUSOL
JOHN A. KUPIEC
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES

RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
    RESIDENT PARTNERS

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
    RESIDENT COUNSEL

D: +1 212 225 2243
amackinnon@cgsh.com

October 7, 2022

VIA EMAIL
Joshua Margolin, Esq.
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, NY 10104
jmargolin@selendygay.com

Re:   In re Fairfield Sentry Ltd. (In Liquidation), Case Nos. 10-3635, 10-3636

Dear Joshua:

We write on behalf of BNP Paribas (Suisse) SA ("BNPP Suisse") in further response to the questions posed in your letter of September 20, 2022 and to supplement the responses we previously provided in our letter of September 30, 2022 (the "September 30 Letter"). For ease of reference, we are including the information previously provided in our September 30 Letter and have bolded any additional or supplemented responses.

The information provided below should not be interpreted as a concession or agreement by BNPP Suisse that the questions raised by the Liquidators are pertinent to the jurisdictional discovery that has been sought from BNPP Suisse thus far, or that the informal discovery sought in your September 20 letter is proper or appropriate.

As we mentioned during our meet-and-confer of October 3, 2022, the nature and volume of the questions contained in your letter are such that your requested deadline for full and complete responses by October 7, 2022 is unreasonable and unworkable. Nonetheless, we have endeavored to respond to as many of your questions as possible in this letter. As mentioned previously, we will revert as soon as practicable, and in any event prior to October 14, 2022, with responses to the questions that are not answered here.

We note that, consistent with the Liquidators' questions, the responses contained herein exclusively concern ESI except where otherwise indicated. We continue to work with our client to search for any hard copy documents that may exist, including those that may reflect the contents of ESI (e.g., printed copies of email communications).

Joshua Margolin, Esq., p. 2

      We further note that the enclosed responses represent our best understanding of the answers to your questions as of today.  We continue to work with our clients to confirm and refine our knowledge regarding all of the issues discussed herein, and will supplement or clarify the enclosed responses as needed as further information becomes available.

      We remain willing and available to meet and confer at your convenience.

      Sincerely,

      */s/ Ari MacKinnon*

      Ari MacKinnon

Joshua Margolin, Esq., p. 3

**Responses on Behalf of BNPP Suisse to Questions Posed in Liquidators' Letter of September 20, 2022**

Question I.A.1.a:  What were BNPP Suisse's ESI preservation policies during the relevant time period and will BNPP [Suisse] produce records sufficient to show the terms of those policies?

> Response reflected in the September 30 Letter:  We are working with our client to confirm whether these exist and can be provided. We will provide a final response to this question as soon as reasonably practicable.
>
> **Further response:  We have been unable to identify written document retention policies (concerning email, fax, or other paper communications, and paper or digital documents) for BNPP Suisse that relate to the period November 22, 2002 – December 31, 2008; however, BNPP Suisse personnel were generally required to comply with prevailing law regarding document retention.**
>
> **We understand that the Liquidators have requested more detail regarding the prevailing local laws to which BNPP Suisse was subject during the relevant period, which is a complex and detailed inquiry that is not traditionally within the scope of discovery inquiries.  We are available to meet and confer regarding the relevance of this request.**

Question I.A.1.b.:  Your Narrative raises the existence of an "online portal" by which BNPP Suisse personnel communicated. Were communications through this "online portal" also subject to the BNPP Suisse ten-year data retention policy? Was any of this ESI preserved pursuant to that policy?

> Response reflected in the September 30 Letter:  We are working with our client to confirm whether this online portal included communications functionality beyond creating reports of transactions that have already been produced to the Liquidators. We will provide a final response to this question as soon as reasonably practicable.
>
> **Further response:  It is our understanding that this online portal did not include any "communication" functionality beyond creating reports of transactions (i.e. trade tickets), which BNPP Suisse has already produced, and thus there would have been no such "communication records" that would have been subject to any data retention policy.**

Question I.A.1.c.:  What repositories of ESI from the relevant time period (2002-2008) are currently maintained by BNPP Suisse? What types of ESI are stored in each repository? And has BNPP Suisse searched each repository for ESI responsive to the Liquidators' jurisdictional discovery requests?

> Response reflected in the September 30 Letter:  BNPP Suisse generally maintained electronic documents in three types of repositories – servers that stored email correspondence, CD-ROMs that stored email correspondence and other documents (not including transactional documents), and an electronic database containing documents

Joshua Margolin, Esq., p. 4

(including transactional documents, client instructions, and account opening documents). All types of repositories were searched in connection with this discovery process.

Question I.A.1.d.:  Will BNPP Suisse produce organizational charts for the relevant time period?

Response reflected in the September 30 Letter:  We are working with our client to confirm whether these exist and can be provided. We will provide a final response to this question as soon as reasonably practicable.

**Further response:  We have been unable to locate intra-entity organizational charts for the relevant time period, and we have no reason to believe that such charts were ever created.**

Question I.A.1.e.:  Was ESI preserved during (what we understand to be) the integration of BNP Paribas (Suisse) SA Ex Fortis and BNP Paribas (Suisse) SA Private into BNPP Suisse? Were the policies and practices regarding ESI preservation the same at these organizations as at BNPP Suisse? If not, how did they differ?

Response reflected in the September 30 Letter:  Subsequent to the integration of BNP Paribas (Suisse) SA Ex Fortis ("Former BNPP Suisse Ex Fortis") into BNP Paribas (Suisse) SA Private ("Former BNPP Suisse Private"), which created the present BNPP Suisse, the email data of personnel from Former BNPP Suisse Ex Fortis that was previously held on Former BNPP Suisse Ex Fortis servers was migrated onto the server for Former BNPP Suisse Private (now BNPP Suisse). The emails saved on this server were all later subject to BNPP Suisse's email auto-delete policy. However, certain ESI was saved on CD-ROMs by BNPP Suisse and was not subject to BNPP Suisse's email auto-delete policy.

Question I.A.2.a.:  When and how did BNPP Suisse learn that BLMIS had been publicly revealed to be a fraud?

Response reflected in the September 30 Letter:  Our understanding is that newspaper articles mentioning the alleged fraud were published in December 2008, but we have not confirmed whether or exactly when such articles were reviewed by individual BNPP Suisse employees in 2008. Because this request touches upon issues that may be relevant to the substance of the Liquidators' claims, we would like to meet and confer about the propriety of this request at this stage, which is similar to an interrogatory on relevant substantive issues.

Joshua Margolin, Esq., p. 5

Question I.A.2.b.: When and how did BNPP Suisse receive notice that the Liquidators were pursuing claims against BNPP Suisse?

>Response reflected in the September 30 Letter: We are working with our client to determine whether records of this notice exist and can be provided. We will provide a final response to this question as soon as reasonably practicable.
>
>**Further response: We have been unable to identify records of the means by which BNPP Suisse first received notice that the Liquidators were pursuing claims against it, or the exact date on which such notification happened.**

Question I.A.2.c.: When, if ever, did BNPP Suisse adjust its standard document preservation policies to preserve evidence related to (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?

>Response reflected in the September 30 Letter: We are not aware of any steps taken by BNPP Suisse to adjust its standard document preservation policies to preserve evidence related to BLMIS, Fairfield, and/or the Liquidators' claims.
>
>**Further response: For the avoidance of doubt, we have construed this question to refer only to the standard document preservation policies of BNPP Suisse, rather than to steps that may have been taken by individuals.**

Question I.A.3.a.: When, if ever, did [BNPP Suisse] issue a litigation hold regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions? Which of the potential custodians identified (by pseudonym) in [BNPP Suisse] Supplemental Responses and Objections, dated May 31, 2022, were subject to a litigation hold and during what period(s) was that litigation hold in effect? Please identify all counsel involved, if any, in issuing any such litigation hold and all persons responsible for overseeing implementation of the hold instructions.

>Response reflected in the September 30 Letter: We are working with our client to confirm the response to this question, and to determine the extent to which we can provide a full response without revealing privileged attorney-client communications. We will provide a final response to this question as soon as reasonably practicable.
>
>**Further response: We have identified records of at least two litigation holds related to the Madoff Ponzi scheme, as relevant to your question. Our records reflect that the first, dated May 23, 2011, concerned the Fairfield litigation, and was distributed to BNPP S.A. personnel for distribution to BNPP Suisse personnel who may have potentially relevant information. Our records reflect that the second, dated October 24, 2013, concerned Madoff-related documents, and was distributed to BNPP Suisse legal personnel for distribution to BNPP Suisse personnel who may have potentially relevant information. Counsel involved in this process would have included, principally, attorneys at Cleary Gottlieb, BNP Paribas S.A., and BNPP Suisse.**

Question I.A.3.b.: What were the types and sources of ESI covered by the litigation hold(s), if any, regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions?

Joshua Margolin, Esq., p. 6

What steps were [BNPP Suisse] employees directed to take to preserve ESI pursuant to these holds? Will [BNPP Suisse] produce the applicable litigation holds?

> Response reflected in the September 30 Letter:  We are working with our client to confirm the response to this question, and to determine the extent to which we can provide a full response without revealing privileged attorney-client communications. We will provide a final response to this question as soon as reasonably practicable.
>
> **Further response:  The litigation hold notice issued to BNPP Suisse applied broadly to all relevant ESI.  The details of the litigation hold notice, and the notice itself, constitute advice of counsel and are therefore subject attorney-client privilege.  We are available to meet and confer regarding this request.**

Question I.A.3.c.:  Were any e-mails from the relevant time period for the custodians identified in your Supplemental Responses and Objections preserved pursuant to BNPP Suisse's retention policy? If so, why are those e-mails not available and when were they deleted?

> Response reflected in the September 30 Letter:  We are not aware of any emails related to Fairfield or BLMIS that were preserved by BNPP Suisse beyond the ten-year deletion period and later deleted (such that they were not available to be produced to the Liquidators in response to their 2022 discovery requests).  As noted above in the response to Question I.A.1.c., certain ESI was maintained on CD-ROMs that was not subject to BNPP Suisse's email auto-delete policy; this ESI was searched in connection with the Liquidators' requests.
>
> **Further response:  We understand that certain ESI was also maintained in an archive by the BNPP Suisse legal department and therefore not subject to BNPP Suisse's email auto-delete policy; this ESI was searched in connection with the Liquidators' requests, and to the extent it contained non-privileged documents that were responsive to the jurisdictional aspects of the Liquidators' requests, these documents have been produced to the Liquidators.**

Question I.A.3.d.:  When were e-mail inboxes for the custodians listed in your Supplemental Responses and Objections deleted or destroyed? Were any such inboxes preserved or backed up?

> Response reflected in the September 30 Letter:  We are working with our client to confirm. We will provide a final response to this question as soon as reasonably practicable.
>
> **Further response:  We understand that emails sourced to the custodians listed in our Supplemental Responses and Objections, other than those that were otherwise preserved in the archive maintained by BNPP Suisse's legal department or otherwise, and which have been produced to the Liquidators to the extent they have been determined to be both responsive and non-privileged, were deleted pursuant to BNPP Suisse's ten-year data preservation policy (i.e. they were deleted 10 years after they were sent or received).  To date, we have not identified emails sourced to these custodians that were otherwise preserved or backed up, other than those already searched in connection with the Liquidators' requests for production.**

Joshua Margolin, Esq., p. 7

Question I.A.3.e.:  What additional steps, outside of those documented in litigation holds, did BNPP Suisse undertake to preserve ESI regarding (i) BLMIS, (ii) Fairfield, and/or (iii) the Liquidators' claims in these actions, and when were such steps taken?

> Response reflected in the September 30 Letter:  We are not aware of any additional steps taken to preserve ESI regarding BLMIS, Fairfield and/or the Liquidators' claims in these actions outside of those documented in litigation holds.

Question I.A.4.a.:  Can BNPP Suisse describe in more detail "all available archival sources" it searched to identify e-mail communications? Did any of these archival sources have printed e-mail communications that could be reviewed?

> Response reflected in the September 30 Letter:  In response to the Liquidators' discovery requests, BNPP Suisse undertook to search the two types of repositories that contained email communications – servers that stored email correspondence, and CD-ROMs that stored email correspondence and other documents.
>
> We are working to confirm with our client whether any printed email communications were preserved.
>
> **Further response:  We are not aware of any printed email communications that have been preserved.**

Question I.A.4.b.:  Which BNPP Suisse employees, if any, did you interview regarding their exchange of electronic communications or possession of ESI reflecting communications between BNPP Suisse and BLMIS, Fairfield Greenwich Group, and/or Sentry?

> Response reflected in the September 30 Letter:  We are working with our client to confirm whether we can provide a response to this question without violating attorney-client or other applicable privilege, or prevailing European privacy regulations. We will provide a final response to this question as soon as reasonably practicable.
>
> **Further response:  We worked with legal personnel at BNPP Suisse, who we understand consulted with relevant IT and/or business personnel regarding potentially relevant ESI.  The identities of the particular individuals are subject to attorney-client privilege.  We are available to meet and confer on this point.**