UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>            Debtor in Foreign<br>            Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>            Defendants. | Adv. Pro. No. 10-03635 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>            Defendants. | Adv. Pro. No. 10-03636 (CGM) |

## REPLY IN FURTHER SUPPORT OF THE LIQUIDATORS' MOTION FOR SANCTIONS UNDER RULE 37(e) AGAINST BANQUE INTERNATIONALE À LUXEMBOURG SA

Date: March 8, 2023

SELENDY GAY ELSBERG PLLC

David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
1290 Avenue of the Americas
New York, New York 10104
Telephone: 212-390-9000

FILED UNDER
PENDING MOTION TO SEAL

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800

FILED UNDER
PENDING MOTION TO SEAL

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................3

I.    BIL's Spoliation Of Relevant ESI Entitles The Liquidators To A Preclusion Order .........3

    A.    BIL's Duty To Preserve Emails Was Triggered In December 2008 ......................4

    B.    BIL Had An Obligation To Preserve ESI But Did Not ...........................................5

        1.    BIL's Duty To Preserve Information Related To The Fairfield
Funds Was Abundantly Clear ......................................................5

        2.    The Scope Of BIL's Obligation To Preserve Included ESI........................9

    C.    External ESI Has Not Been Replaced Through Third-Party Discovery ................10

    D.    The Liquidators Have Shown That Internal ESI Was Available To
Preserve ........................................................................................11

    E.    The Liquidators Are Prejudiced By BIL's Spoliation ...........................................13

    F.    The Court Should Preclude BIL From Disputing Personal Jurisdiction On
The Grounds That Certain Evidence Is Lacking....................................................15

II.    Because BIL Destroyed ESI Through Its Conscious Dereliction Of Its Duty To
Preserve, This Court Should Presume The Deleted ESI Would Have Been
Unfavorable For BIL.............................................................................................15

    A.    BIL's Conscious Dereliction Of Its Duty To Preserve Demonstrates Its
Intent To Deprive Future Litigants Of This Evidence ..........................................16

    B.    The Court Should Grant The Liquidators An Adverse Inference..........................20

CONCLUSION.....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                  **Page(s)**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
   2014 WL 12776440 (S.D.N.Y. June 17, 2014) ....................................................................4

*Brown Jordan Int'l, Inc. v. Carmicle*,
   2016 WL 815827 (S.D. Fla. Mar. 2, 2016), *aff'd*, 846 F.3d 1167 (11th Cir.
   2017) .........................................................................................................................................15

*CAT3, LLC v. Black Lineage, Inc.*,
   164 F. Supp. 3d 488 (S.D.N.Y. 2016)....................................................................................14

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
   2021 WL 4190628 (S.D.N.Y. Aug. 18, 2021) ..................................................................14, 16

*Coan v. Dunne*,
   602 B.R. 429 (D. Conn. 2019) ................................................................................................10

*CrossFit Inc. v. Nat'l Strength & Conditioning Ass'n*,
   2019 WL 6527951 (S.D. Cal. Dec. 4, 2019)..........................................................................19

*Cruz v. G-Star Inc.*,
   2019 WL 4805765 (S.D.N.Y. Sept. 30, 2019) .........................................................................9

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
   2022 WL 16551632 (E.D. Cal. Oct. 31, 2022) .................................................................15, 17

*Doe v. Wesleyan Univ.*,
   2022 WL 2656787 (D. Conn. July 8, 2022) ...........................................................................12

*Doubleline Cap. LP v. Odebrecht Fin., Ltd.*,
   2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021) ......................................................................5, 7

*Karsch v. Blink Health Ltd.*,
   2019 WL 2708125 (S.D.N.Y. June 20, 2019) ........................................................................13

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   341 F.R.D. 474 (S.D.N.Y. 2022) .......................................................................................8, 16

*Kronisch v. United States*,
   150 F.3d 112 (2d Cir. 1998).....................................................................................................13

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
   2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) .........................................................................6

*Moody v. CSX Transportation, Inc.*,
   271 F. Supp. 3d 410 (W.D.N.Y. 2017)...........................................................15, 17, 18, 19

*Mule v. 3-D Bldg.& Constr. Corp.*,
    2021 WL 2788432 (E.D.N.Y. July 2, 2021)....................................................15, 16

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
    271 F.R.D. 429 (S.D.N.Y. 2010) ..............................................................................9

*Ottoson v. SMBC Leasing & Fin., Inc.*,
    2017 WL 2992726 (S.D.N.Y. 2017)........................................................................20

*Pippins v. KPMG LLP*,
    2011 WL 4701849 (S.D.N.Y. Oct. 7, 2011) .............................................................9

*SIPC v. BLMIS*,
    2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022), 2022 WL 3094092 ..............20

*Treppel v. Biovail Corp.*,
    249 F.R.D. 111 (S.D.N.Y. 2008) ............................................................................12

*Zubulake v. UBS Warburg LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003) ................................................................. *passim*

*Zubulake v. UBS Warburg LLC*,
    229 F.R.D. 422 (S.D.N.Y. 2004) ........................................................8, 11, 13, 16

**Other Authorities**

Fed. R. Civ. P. 11 ............................................................................................................19

Fed. R. Civ. P. 26 ......................................................................................................10, 19

Fed. R. Civ. P. 30(b)(6)............................................................................................12, 13, 19

Fed. R. Civ. P. 37(e) ............................................................................................. *passim*

## PRELIMINARY STATEMENT

BIL's Opposition Brief ("Opp.") is tantamount to an admission that BIL spoliated evidence that is directly relevant to the personal jurisdiction issues pending before this Court. BIL concedes, as it must, that relevant ESI existed not only in December 2008—when it convened an internal "Madoff Task Force" to gather and preserve information relating to Madoff feeder funds, but did not include the Fairfield Funds—and not only in August 2010—when it admits it received actual notice of this action—but through at least 2017, when it admits that all external correspondence from 2007 (the year of the redemption at issue) was automatically deleted from its email journalling systems. BIL admits that it first sought to preserve ESI relevant to this action in November 2010—three months after it concedes having actual notice of this action and nearly two years after it reasonably should have been on notice. And even then, BIL makes no effort to argue that its preservation efforts were adequate, because they were not: in direct violation of *Zubulake V* (which BIL does not even cite, let alone address), BIL failed to interview potential custodians to determine the correct recipients of its litigation hold; it failed to send the litigation hold to one-third of the custodians that it now contends would have had relevant information; it never attempted to collect information from recipients of the hold until *eleven years later*; and, critically, it took no steps at the institutional level to preserve information, such as suspending its document destruction policies. BIL further concedes that no relevant ESI for any of its six key custodians currently exists and that it destroyed ESI from one of those custodians as recently as *late 2021*—while this Court was presiding over this case and after the Liquidators served their discovery requests. BIL's egregious conduct is sanctionable.

Faced with this factual record, BIL feigns ignorance, arguing that—even though it was aware in August 2010 that the Liquidators had filed a lawsuit in New York seeking the "return of payments made by Fairfield Sentry Limited … from and after April 21, 2004," *see* Dkt. 1-5 at 27

(the "Amended Summons")—it was not sufficiently on notice of the *specific* redemption at issue in this case to trigger a duty to preserve ESI relevant to that transaction. BIL's position is absurd and is belied by the fact that, almost immediately after learning of this lawsuit in August 2010, BIL collected the so-called "transaction file" pertaining to the *specific* redemption at issue in this case and, three months later, issued a litigation hold relating to Fairfield (albeit one that was wholly inadequate under the law of this Circuit).

Even more remarkably, BIL argues that it should not be sanctioned for its destruction of relevant ESI because this has been a slow-moving case; indeed, BIL concedes that had the case moved quicker, it "probably" would have had ESI to produce for "a few years" after 2010. This is nothing less than an admission that BIL spoliated evidence. The length of a case does not alter the obligation to preserve; indeed, one of the reasons for implementing a litigation hold when the duty to preserve attaches is to safeguard against information being lost due to the passage of time—as it has been here.

Since there is no dispute that relevant ESI existed after BIL had notice of this litigation, and that BIL did not take reasonable steps to preserve it, the only remaining questions for the Court are whether this lost ESI can be replaced and, if it cannot, what relief this Court should grant in light of the prejudice to the Liquidators and BIL's flagrant misconduct.

BIL's lost ESI cannot be restored or replaced. BIL points to the Liquidators' access to a limited set of third-party documents to argue that the Liquidators have not faced prejudice. That is not the law. To begin, BIL's missing metadata, BCC's, attachments, and other internal communications cannot be obtained from third parties. But moreover, where (as here) one cannot assess the full extent or nature of the lost ESI, one cannot confirm whether third-party evidence has replaced destroyed evidence, and there can be no "replacement" for purposes of Rule 37(e).

FILED UNDER
PENDING MOTION TO SEAL                 2

To address the prejudice they face in responding to BIL's motion to dismiss for lack of personal jurisdiction, the Liquidators seek preclusion orders that disallow BIL from arguing that it did not engage in certain types or a certain volume of communications. Such an order provides the proper remedy where, as here, BIL has asserted that it had "no contacts whatsoever with the United States" related to the Liquidators' claims. BIL's Mem. of Law (Dkt. 755) ("Mot.") at 18. BIL does not argue otherwise.

And because BIL intentionally avoided known duties to preserve, the Court should grant an adverse inference that lost ESI would have been favorable to establishing jurisdiction. BIL insists that the fact that it issued a litigation hold and preserved certain hard-copy documents means there was no intent to deprive the Liquidators of ESI. But that is not the test, and in any event, deposition testimony paints a different picture: for over a decade, BIL ignored well-established law and actively deleted ESI of key custodians through the opening of discovery in 2021. These deviations are so consistent, so significant, and so prolonged as to evince BIL's conscious disregard of its preservation obligations, and therefore, an intent to deprive.

## ARGUMENT

### I.   BIL's Spoliation Of Relevant ESI Entitles The Liquidators To A Preclusion Order

In their opening brief ("Pl. Br."), the Liquidators demonstrated (at 22-25) that BIL[1] should have reasonably been on notice of the potential for litigation in December 2008, when news of the Madoff fraud broke and BIL assembled a "Madoff Task Force" to preserve information relating to some, but not all, of BIL's Madoff investments. *See* Dkt. 1083.[2] In response, BIL does not attempt to justify its failures. Rather, it argues that all its ESI was likely deleted by the time it

---

[1] Capitalized terms not defined herein have the same meaning as in the Liquidators' opening brief.

[2] Unless otherwise specified, docket citations refer to filings in Adv. Pro. No. 10-03636 (CGM).

FILED UNDER
PENDING MOTION TO SEAL                    3

realized its discovery obligations and, even if that were not the case, that BIL never had a duty to

preserve ESI to begin with. In doing so, BIL claims a plainly unreasonable level of ignorance and

makes baseless assertions about when ESI might have been deleted and whether it can be replaced.

All these arguments are unavailing.

### A.    BIL's Duty To Preserve Emails Was Triggered In December 2008

BIL argues that it had no duty to preserve in December 2008 because it lacked actual

knowledge that BIL would be sued by the Fairfield Funds in the United States. Opp. at 9-12. This

misstates the legal standard, which is objective: the duty arises when "a reasonable party in the

same factual circumstances would have reasonably foreseen litigation." *Alexander Interactive, Inc.*

*v. Adorama, Inc.*, 2014 WL 12776440, at *3 (S.D.N.Y. June 17, 2014) (citation omitted).

While determining when a party should have been on notice of litigation is sometimes

difficult, here the Court need look no further than what BIL actually did in December 2008:

immediately after learning of the "catastrophic" collapse of BLMIS, *see* Pl. Br. Ex. 1 ("Tr.") at

201:1-3, and after being inundated with inquiries from clients, *see id.* 193:16-18, BIL consulted

with legal counsel and set up a "Madoff Task Force" to address its exposure to certain Madoff

feeder funds. *See id.* 38:22-39:1. A key objective of this task force was to collect and preserve

documents related to those Madoff feeder funds, *id.* 218:17-219:8, including ESI. *Id.* 227:21-

228:2. But despite the millions of dollars it had invested in Sentry—a Madoff feeder-fund—BIL

failed to do the same for Fairfield.[3] *See id.* 219:9-17. Remarkably, BIL argues (at 11-12) that

because it did include the Fairfield Funds in the mandate of the Task Force, it "confirms" that BIL

did not anticipate litigation concerning the Fairfield Funds. The Court should reject this tautology

---

[3] BIL knew Sentry was a similarly-situated Madoff feeder fund. Correspondence recovered from
third party productions include BIL's ███████████████████████████████████
███████████████████████████. *See* Pl. Br. Ex. 4.2 at -933--934.

and draw the obvious conclusion—that BIL simply failed to comply with a duty to preserve that a reasonable party in BIL's position would have recognized.

BIL argues that *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, is inapposite. 2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021). BIL is wrong. In *Doubleline*, defendants were affiliates of a Brazilian corporation with business in the U.S. *Id.* at *1. Noting that "certain types of incidents tend to trigger litigation," the Court held that investigation in the United States for a "wide-ranging criminal bribery" scheme to which defendants were connected was sufficient to trigger their duty to preserve. *Id.* at *6. As there, and notwithstanding BIL's "Madoff Task Force," this Court can conclude that BIL was reasonably on notice of U.S.-based litigation given its millions of dollars in redemptions from Sentry, BIL's "huge" exposure to BLMIS through feeder funds generally, *see* Tr. 40:13-15, and the Madoff fraud's deep connection with the United States.

### B.    BIL Had An Obligation To Preserve ESI But Did Not

Irrespective of when the duty to preserve arose, BIL makes no attempt to justify the cursory steps it took to preserve ESI. Nor could it, in light of the myriad failures the Liquidators have detailed for the Court. *See* Pl. Br. 10-13, 25-31. Instead, BIL argues that it never had a duty to preserve this ESI because (1) a reasonable party in its position would not have realized the nature of the Liquidators' claims, even after receiving the complaint(s), and (2) even if it had known what information would be relevant, the preservation of ESI was not proportional to the needs of the case. BIL's arguments are contrary to the facts, the law, and this Court's own guidance as to BIL's duties in discovery, *see* Pl. Br. Ex. 16 at 32:22-33:2, and they should be rejected.

### 1.    BIL's Duty To Preserve Information Related To The Fairfield Funds Was Abundantly Clear

BIL asserts that it never had a duty to preserve ESI in this case because, through at least 2022, it could not have reasonably understood the nature of the Liquidators' claim to recover

payments made to BIL by Sentry. Opp. at 9-16. In fact, BIL goes so far as to assert that all pleadings, beginning with the Amended Summons—which it admits it received no later than August 30, 2010, *see* Opp. at 14-15—and over the *next 11 years* of litigation, were too vague for it to understand the nature of this action. *See* Opp. at 15-16. At the same time, BIL insists (at 21) that sanctions are not warranted because it took steps to preserve documents related to this litigation. BIL's contradictory arguments run counter to reason and law.

A party's duty to preserve evidence typically arises no later than the date it is sued, but can and does arise earlier if a similarly-situated party would have reasonably anticipated litigation. *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018) (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). If the potential for clawback litigation related to Fairfield was not already abundantly clear in December 2008 (which it was), there is no question that by August 30, 2010, a reasonable party in BIL's position would have understood the nature of the Liquidators' claims and, with it, what information might be relevant. The Amended Summons, which BIL admits it received no later than August 30, 2010, is crystal clear that "[t]he nature of this action is for mistake and restitution based on payments made by plaintiffs Fairfield Sentry Limited, … and received by Defendants from and after April 20, 2004." Dkt. 1-5 at 27. BIL further asks this Court to believe that every subsequent pleading filed in this litigation was too vague to put them on notice of their duty to preserve *any* documents related to Fairfield. Opp. at 15-16.

BIL's argument strains credulity; pleadings in this case—including the earliest ones—provide *extensive* clarity as to the nature of the Liquidators' claims and certainly were sufficient to put any reasonable party on notice as to what to preserve. In particular, the First Amended Complaint, filed on January 10, 2011, specifies the exact redemption date, redemption amount,

and number of shares for the transaction at issue. *See* Dkt. 67 at 88. BIL does not dispute this. Any similarly-situated, reasonable party would have known that documents and communications related to Fairfield would likely be relevant to the ongoing litigation. *See Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("*Zubulake IV*") (holding that the duty to preserve extends to all materials that a party "reasonably should know[] is … reasonably likely to be requested during discovery." (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991)). And if that party had any questions about which transactions were at issue, it should have taken steps to preserve information relating to *all* of them.[4]

BIL's fantastical arguments are also unsupported in the law. Once again, *Doubleline* is instructive. Emphasizing that the question is whether a reasonable party would know evidence "may be relevant to future litigation," the court found that the mere fact of investigation into defendants' bribery scheme was sufficient to trigger their obligation to retain documents regarding civil securities fraud lawsuits that would not commence for another year. 2021 WL 1191527, at *6. Given the immense level of detail provided to BIL, there is no plausible argument that BIL was not charged with preserving ESI relating to Fairfield, including the transaction at issue here.

The implausibility of BIL's argument is critically undermined by the actual steps it took upon receiving the Liquidators' Amended Summons in August 2010. Namely, just days after it received the Amended Summons, BIL collected the so-called "Transaction File" which consisted of documents and hard-copy email communications *for the specific redemption at issue* in this case. *See* Pl. Br. Ex. 2 (BIL's "Transaction File"), Opp. at 5 (noting September 2010 collection).

---

[4] BIL's argument that it did not know what redemption was at issue in this case until only recently, after the Liquidators made an informal production of documents recovered from third parties to them, *see* Opp. at 7-8, rings hollow against these facts—including the fact that BIL actually collected the hard copy transaction file for the redemption at issue in September 2010.

Indeed, the very steps BIL claims it took to preserve documents—including its counsel's issuance of a litigation hold that described the Liquidators' claims—show that it fully understood what information may be relevant to future litigation. BIL cannot have it both ways; it cannot, on one hand, feign ignorance as to what documents might be relevant to this action and claim, on the other, that it reasonably identified and collected those documents.

BIL further argues that no reasonable person would have known to preserve the documents of the six custodians who BIL itself has identified as key to the transaction. *See* Opp. at 13-14, *see* Pl. Br. Ex. 13 (BIL's Amended Initial Disclosures). This, too, is not plausible. The relevance of these custodians was apparent from the Transaction File that BIL had already collected.[5] Five of the six appear on printed email correspondence in this file, and the sixth (Gianni Baldinucci) was the relationship manager for the transaction (and received the November 2010 hold).

In any event, BIL's purported ignorance stems only from its own failures to take its obligations seriously. No later than when it received the Amended Notice, BIL was charged with investigating which individuals are important to the claims and those individuals' document storage practices. *See Zubulake IV*, 220 F.R.D. 212 (noting that the duty to preserve extends to employees likely to have relevant information); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("*Zubulake V*") (noting obligation to speak to identify and speak with "key players" to preserve documents); *In re Keurig Green Mountain Single-Serve Coffee Antitrust*

---

[5] *See* Pl. Br. Ex. 2 at -005–-010 (printed email chain ███████████████████████) -012 (███████████████████████████████), -018 (███████████████), -021 (███████████████████), -022–-026 (██████████████████████████████████), -027–-028 (██████████████████████████████████████), -032 (███████████████), -035 (██████████████████████), -041–-050 (██████████████████), -054–-057 (██████████), -058–-061 (██████████████), -065–-068 (█████████████████), -071–-073 (██████████████████████████). Despite repeatedly appearing in the Transaction File correspondence, neither Chantal May-Reyter nor Marie-Anne Salentiny received a litigation hold. *See* Pl. Br. at 14-16.

*Litig.*, 341 F.R.D. 474, 502 (S.D.N.Y. 2022) (noting obligation to timely interview key custodians). BIL never spoke with the relevant custodians regarding their preservation practices and never even investigated the appropriate custodians to whom to send its litigation hold (resulting in two of the six key custodians in this case failing to receive the litigation hold). *See* Tr. 258:7-16; 260:4-10, 260:16-18.

### 2.    The Scope Of BIL's Obligation To Preserve Included ESI

BIL also argues that it did not have an obligation to preserve ESI because doing so would not be proportional to the needs of the case. Opp. at 12-14. This argument, too, is meritless.

Relevance, for purposes of Rule 37(e), "is an extremely broad concept," *Cruz v. G-Star Inc.*, 2019 WL 4805765, at *11 (S.D.N.Y. Sept. 30, 2019). Thus, the duty to preserve extends to all information that is "reasonably likely to be requested during discovery." *Zubulake IV*, 220 F.R.D. at 218. As courts in this Circuit have long noted, "[a]lthough some cases have suggested that the definition of what must be preserved should be guided by principles of reasonableness and proportionality … a party is well-advised to 'retain all relevant documents … in existence at the time the duty to preserve attaches.'" *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 436 (S.D.N.Y. 2010) (cleaned up) (quoting *Zubulake IV*). In fact, as BIL's own cited authority explains, courts in this district are reluctant to allow a party to destruct ESI before "the parties can resolve what materials … are responsive to the [a party's] document requests," and "establish conclusively that [those] materials … are of either little value or not unique." *Pippins v. KPMG LLP*, 2011 WL 4701849, at *8 (S.D.N.Y. Oct. 7, 2011) (cleaned up).

Finally, even if its obligation to preserve information were bounded by proportionality, BIL does not actually attempt to demonstrate that preserving relevant ESI was not proportionate or overly burdensome. At no point does BIL point to particular costs or expenses it would have incurred in preserving ESI or give any indication that its decision to destroy information was made,

as required by Rule 26, in light of "the importance of the issues at stake." Nor could it. As BIL has

conceded, it was already automatically preserving ESI (at least as to external communications)

through at least 2017, Opp. at 17, and its preservation policies called for ███████████████

███████████████████████████████. *See* Tr. 161:21-162:1.

### C.    External ESI Has Not Been Replaced Through Third-Party Discovery

Because there is no dispute that BIL had relevant ESI in its possession until at least 2017,

BIL attempts to bifurcate its analysis between *external* ESI and *internal* ESI—that is, between

documents and correspondence sent to or from BIL, and ESI that was generated internal to BIL.

With respect to *external* ESI, BIL concedes that "external emails were automatically preserved for

ten years" and thus "would have been deleted in 2017 by BIL's email vendor as a matter of routine

practice." Opp. at 17. Nonetheless, BIL attempts to evade responsibility for its spoliation of

evidence by urging the Court to presume that third parties can fill the evidentiary gaps that BIL

created. Opp. at 18-19. It is precisely to prevent that sort of unjust result that courts have held that

third-party documents cannot be deemed to restore or replace ESI when "[t]here can be no

assurance that [the non-spoliating party] has received from third-party sources all of the

meaningful emails that could and should have been obtained in the first instance from [the

spoliating party]." *Coan v. Dunne*, 602 B.R. 429, 439-40 (D. Conn. 2019).

Nor does the production of some emails from third parties remedy the prejudice to the

Liquidators as to BIL's missing ESI. Where "there can be no assurance" that the Liquidators have

obtained "all of the meaningful emails that could and should have been obtained in the first

instance from" BIL, third party productions do not obviate the prejudice the Liquidators face. *See*

*Id.* at 440 (noting recovery of an unknown percentage of emails from third parties "merely turns

the question of prejudice [on movant] from one of *kind* to one of *degree*" and imposing sanctions

where it was "plausible to conclude that the emails received from third parties are but the tip of a

proverbial iceberg" (emphasis in original)); *Zubulake V*, 229 F.R.D. at 429 (imposing sanctions

despite some e-mails being recovered because "some—and no one can say how many—were not

[recovered]"). Nor is there any reason to expect that third parties (who unlike BIL may not have

been under any obligation to maintain complete records) would have all relevant documents.

And to the extent that ESI between BIL and the underlying clients on whose behalf BIL

subscribed in Fairfield could replace the copies that BIL spoliated, BIL has foreclosed that

possibility by refusing to disclose the identities of those clients, citing foreign privacy laws. Thus,

from a practical perspective, the Liquidators have been left unable to even attempt to recover those

communications for use in opposing BIL's personal jurisdiction motion to dismiss.[6] BIL cannot

simultaneously argue that documents are available from third parties in order to oppose this

spoliation motion and cut off the ability for the Liquidators to obtain those documents in order to

oppose BIL's motion to dismiss. Thus, even absent the missing internal communications, the

missing metadata, BCC's, and attachments, and the sheer improbability that third parties preserved

all documents, BIL's spoliation cannot be remedied by third-party productions.

### D.    The Liquidators Have Shown That Internal ESI Was Available To Preserve

While conceding that *external* ESI was lost after 2017, BIL concocts a fantastical

explanation for the loss of *internal* ESI. Without attempting to justify the steps it took to preserve

ESI for this litigation, BIL instead suggests that there was no relevant internal ESI as of August

---

[6] Communications between BIL and the underlying client on whose behalf BIL made the
investment at issue here would be relevant to rebutting BIL's assertions that it was acting in an
"execution only" capacity, *see* Tr. 97:6-20, and that it did not purposefully direct its activities to
the United States. *See* Mot. at 17. The content of those communications could, for example, contain
directions from the underlying client demonstrating knowledge that the investment would be
placed in the United States or evidence diligence obtained by BIL and passed along to the
underlying client to facilitate its Fairfield investment. But because in late 2021 BIL destroyed all
of the ESI belonging to Gianni Baldinucci, Tr. 82:4-14—the relationship manager for that client
and a person at BIL who would have communicated with that client, *see* Tr. 79:18-80:13—the
only source for the communications would be the client (who may or may not still have them).

30, 2010. Without speaking to a single key custodian about their email practices, BIL asks the

court to draw the conclusion that all relevant BIL employees had deleted all relevant internal ESI

before August 30, 2010. This position is baseless and is directly contradicted later in BIL's brief.

BIL claims that there is "no evidence" that the six key custodians retained internal ESI

through August 2010. Not so. The Liquidators have more than carried their burden of showing that

documents that should have been preserved existed when the duty to preserve attached in either

2008 or 2010. BIL ignores the testimony of its Rule 30(b)(6) witness explaining that, throughout

the relevant time period, BIL had a document preservation policy ████████████████

████████████████████████████████████████████████████

████████████████████████. *See* Tr. 161:21-162:1; *see also* Pl. Br. Ex. 11 (BIL's

document retention policy). BIL thus asks the Court to believe that every relevant BIL employee

operated in violation of this policy. Absent that unbelievable (and unsupported) hypothetical,

internal emails for the at-issue transactions ██████████████████████. *Cf. Treppel v.

Biovail Corp.*, 249 F.R.D. 111, 119 (S.D.N.Y. 2008) (relying on spoliator's retention policy to

discern documents in existence after the duty to preserve attached); *Doe v. Wesleyan Univ.*, 2022

WL 2656787, at *14 (D. Conn. July 8, 2022) (relying on party's "general business practice" of

"preserving data for a specified period" in determining when evidence was likely spoliated).

To say that no internal ESI existed to preserve in 2010 also runs counter to reason, as BIL

tacitly concedes. In a later attempt to justify its own actions, BIL insists that "[i]f this had been a

more normal case, with fact discovery proceeding within a few years after filing, the document

preservation measures taken by BIL probably would have been adequate to preserve ESI for use

in this case." Opp. at 22. In other words, though it argues that the Liquidators have not carried their

burden to demonstrate internal ESI existed after 2010, BIL itself believes it had substantial ESI in

2010 which it has lost due to the passage of time.[7]

### E.    The Liquidators Are Prejudiced By BIL's Spoliation

In the face of its evident spoliation, BIL Claims that the Liquidators have not carried their

burden of demonstrating prejudice by demonstrating the content of lost information and its

significance. *See* Opp. at 19-20. This misstates the law. Rule 37(e) "does not place a burden of

proving or disproving prejudice on one party or the other" precisely because "placing the burden

of proving prejudice on the party that did not lose the information may be unfair." Fed. R. Civ. P.

37(e) advisory committee's note to 2015 amendment; *see also Kronisch*, 150 F.3d at 128 (2d Cir.

1998) ("holding the prejudiced party to too strict a standard of proof … would allow parties who

have intentionally destroyed evidence to profit from that destruction."). The Rule merely requires

the moving party to show that the "evidence plausibly 'suggests' that the spoliated ESI could

support the moving party's case." *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *21

(S.D.N.Y. June 20, 2019) (collecting cases).

The Liquidators easily satisfy this standard. As discussed in the Liquidators' opening brief

(at 5, 32-33), third-party documents demonstrate that BIL spoliated ESI bearing not only on this

litigation generally, but directly on the issue of personal jurisdiction. *See e.g.*, Pl. Br. Exs. 3

---

[7] To the extent that there is any doubt whether internal ESI was still in existence in December 2008 or August 2010, BIL should not be allowed to insulate itself from sanctions by failing adequately to prepare its witness. The Liquidators' Rule 30(b)(6) notice clearly sought testimony regarding "[a]ll facts and circumstances regarding [BIL's] retention, preservation, and destruction and/or deletion of [BIL's] pre-2008 e-mails or electronic communications." *See* Pl. Br. Ex. 18 at 7. BIL's designated representative could not answer what, if any, emails compiled for its Transaction File were deleted prior to August 2010. *See, e.g.,* Tr. 111:21-112:10. *Zubulake V* requires parties to "make certain that all sources of potentially relevant information are identified and placed 'on hold[]'" as soon as a litigation hold is put in place so that information is not lost to the passage of time. *See Zubulake V*, 229 F.R.D. at 432, 436 (noting counsel's failure to "ascertain each of the key players' document management habits" when litigation hold was issued) (citation omitted).

(███████████████████████████████████████████████), 4
(same), 5 (███████████████████████████████████████████
███████████████). While BIL asserts that none of these documents "suggest that there was
any communication with the United States in connection with the redemption," the documents,
including ████████████████████████████████████████████████████,
demonstrate otherwise. *See* Ex. 5 (██████████████████████████████
████████████████████████████). In fact, the Liquidators have
even identified a more complete version of one email chain that BIL itself produced from its
Transaction File, ██████████████████████. *See* Tr. 125:7-126:3. Courts have
found correspondence like this bears directly on personal jurisdiction. *See* Pl. Br. at 6-7, n.2.

BIL's motion to dismiss for lack of personal jurisdiction is premised on its presumed lack
of contacts with the United States. *See* Pl. Br. at 31-35; Mot. at 18 (asserting that BIL "had no
contacts whatsoever with the United States"). The Liquidators are prejudiced because the spoliated
communications are directly relevant to their efforts to make this showing. *See, e.g., CAT3, LLC
v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 499 (S.D.N.Y. 2016) ("Plaintiff's case against
Defendants is weaker when it cannot present the overwhelming quantity of evidence it otherwise
would have to support its case."); *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 2021 WL
4190628, at *2 (S.D.N.Y. Aug. 18, 2021) (noting that "[d]estruction of relevant ESI" prejudices a
moving party by "limit[ing] the universe of documents available"). Indeed, as this Court has
already noted, BIL's missing BCCs fields on its printed email communications—which BIL does
not dispute is unrecoverable—could demonstrate contacts with the United States. *See* Ex. 16 at
33:9-18 (noting that BCCs to the United States in BIL's email would be discoverable). While BIL
may disagree as to the ultimate relevance of these communications, this motion is not the

appropriate place to litigate this issue. What matters here is that these documents "plausibly suggest" that BIL spoliated ESI relevant to the Liquidators' personal jurisdiction arguments.

### F. The Court Should Preclude BIL From Disputing Personal Jurisdiction On The Grounds That Certain Evidence Is Lacking

The Liquidators' requested sanctions under Rule 37(e)(1), Pl. Br. at 33-35, are tailored to remedy the prejudice caused by BIL's failure to preserve evidence. BIL does not contest this point. Therefore, to extent the Court agrees that relief under Rule 37(e)(1) is proper, the Court should enter the requested preclusion order as submitted.[8]

### II. Because BIL Destroyed ESI Through Its Conscious Dereliction Of Its Duty To Preserve, This Court Should Presume The Deleted ESI Would Have Been Unfavorable For BIL

Courts may infer that a party acted with an intent to deprive sufficient for Rule 37(e)(2) sanctions based on its "conscious dereliction of a known duty to preserve." *Mule v. 3-D Bldg.& Constr. Corp.*, 2021 WL 2788432, at *12 (E.D.N.Y. July 2, 2021). BIL argues (at 20-22) that an intent to deprive cannot be inferred from its egregious pattern of spoliation. BIL is wrong: its years-long practice of ignoring and then flouting clear preservation obligations indicates an "intentional failure to take steps necessary to preserve evidence[,] [which] 'satisfies the requisite level of intent'" under Rule 37(e)(2). *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017) (quoting *Ottoson v. SMBC Leasing & Fin., Inc.,* 2017 WL 2992726, *9 (S.D.N.Y. 2017)); *Brown Jordan Int'l, Inc. v. Carmicle*, 2016 WL 815827, at *37 (S.D. Fla. Mar. 2, 2016), *aff'd*, 846 F.3d 1167 (11th Cir. 2017) (finding intent to deprive where "[the] information was lost because [defendant] failed to take reasonable steps to preserve"); *Deerpoint Grp., Inc. v.*

---

[8] BIL contends (at 9) that the Liquidators are not entitled to any relief in the 10-03635 action. However, the 10-03636 and 10-03635 actions are consolidated, Dkt. 921, and BIL has filed the same motion to dismiss for lack of personal jurisdiction in both actions. *See* 10-03635, Dkt. 691. The relief sought in this motion should likewise be granted in both actions.

FILED UNDER
PENDING MOTION TO SEAL                15

*Agrigenix, LLC*, 2022 WL 16551632, at *15 (E.D. Cal. Oct. 31, 2022) ("[c]ourts may find intentional spoliation where it is … reasonably inferred[] that the spoliating party acted purposefully" and a pattern of conduct can support intentional spoliation (citation omitted)).

As BIL's own authorities acknowledge, "courts in this District are divided on the level of proof required to show intent, with some courts using a 'preponderance of the evidence' standard, and others applying a 'clear and convincing' standard" when assessing intent to deprive. *CBF*, 2021 WL 4190628, at *18; *see also In re Keurig*, 341 F.R.D. at 496 (same). The Court need not resolve that question because the Liquidators have shown BIL's intent to deprive the Liquidators of relevant evidence through its conscious dereliction of known preservation obligations, satisfying both standards. *See Mule*, 2021 WL 2788432, at *12.

### A.    BIL's Conscious Dereliction Of Its Duty To Preserve Demonstrates Its Intent To Deprive Future Litigants Of This Evidence

BIL asserts (at 21) that the purportedly "significant steps" it took to preserve ESI are inconsistent with an intent to deprive and should shield it from sanctions under Rule 37(e)(2). In doing so, it cites to the only step it took that was actively targeted towards preserving ESI: its issuance of a litigation hold directing employees to preserve ESI. But BIL ignores the litany of procedural and substantive defects with that litigation hold, including that it was sent nearly two years too late; was sent to employees unfamiliar with litigation holds; involved no explanation, follow-up, or reminders; left off one-third of the key custodians; shifted the responsibility to comply wholly onto recipients; and neither removed recipients' ability to delete ESI themselves nor preserved a copy of that ESI at the bank level. Pl. Br. at 26-29. Under the well-established law in this Circuit—which BIL does not even cite, let alone attempt to address—BIL's single litigation hold was manifestly inadequate. *See, e.g.*, *Zubulake V*, 229 F.R.D. at 432 (explaining requirement to identify key custodians and that "it is *not* sufficient to notify all employees of a litigation hold

and expect that the party will then retain and produce all relevant information" (emphasis in original)).

But even if it were sufficient, the litigation hold is not a panacea for BIL's regular and intentional pattern of conduct that resulted in the destruction of all its ESI relevant to this case. *See Moody*, 271 F. Supp. 3d at 426 (noting defendant downloaded the relevant data "shortly after the accident occurred" and "uploaded certain data to a centralized system within hours of the accident," but still granting adverse inference); *see also Deerpoint*, 2022 WL 16551632, at *15 (finding that "simply making some effort [to preserve] is not sufficient" and granting adverse inference). Even assuming that BIL's employees had followed the litigation hold to the letter, it would be for naught because BIL affirmatively destroyed the ESI of three key departing employees who were subject to the litigation hold, *see* Pl. Br. at 13-16, and did not even send the hold to two key employees who, as is plainly evident from the printed emails BIL produced in discovery (and which BIL had collected at the time it issued the hold), used emails regularly to communicate about the transaction at issue in this case. *See* Tr. 264:1-11; 266:16-22.

BIL also ignores (at 21-22) the factual similarities between this case and *Moody*, which applied a four-prong test for inferring an intent to deprive: (1) evidence once existed that "could fairly be supposed" to be material to the Liquidators' jurisdictional arguments, *supra* § I.E; (2) BIL engaged in "affirmative act[s] causing [] evidence to be lost" by affirmatively destroying the ESI of key custodians who received its litigation after their departure from the bank, by failing to suspend its 10-year destruction of email back-ups, and by using the Madoff Task Force to collect documents for the Non-Fairfield Feeder Funds, but not including Fairfield, *see* Pl. Br. 25-29; (3) these acts occurred after BIL "knew or should have known of its duty to preserve evidence," *supra* §§ I.A-I.B; and (4) these acts "cannot be credibly explained as not involving bad faith by

the reason proffered by the spoliator," because BIL has offered no alternative explanation for its

failure other than the passage of time. *See Moody*, 271 F. Supp. 3d at 431; Opp. at 22.

In *Moody*, the "affirmative act causing …evidence to be lost" was defendants "allow[ing]

the … data on [an] event recorder to be overwritten" and "recycl[ing] [a] laptop" without

confirming the data had been preserved elsewhere. *See id.* at 431. Similarly, BIL first failed to

suspend its practice of deleting external email communications from its journaling server ten years

after they were sent or received, and then continued its practice of deleting all ESI of employees

following their departure from the bank. The latter is a clear, affirmative act that required BIL to

deliberately select for deletion the ESI of custodians whom BIL agrees are key to this case. *See* Pl.

Br. at 15. Revealingly, BIL does not even address this deletion practice in its brief.

BIL has no credible explanation of why it continued to delete this ESI for years after it

became aware of the litigation. Its only attempt to provide one is a suggestion that "[i]n many

federal cases, fact discovery proceeds within a year or two of the filing of the case" and that "[i]f

this had been a normal case … the document preservation measures taken by BIL probably would

have been adequate to preserve ESI for use in this case." Opp. at 22. But there is no "time"

exception to Rule 37(e). To the contrary, the very purpose of the obligation to preserve evidence

is that litigation is unpredictable and may take a significant amount of time. This again is akin to

*Moody*, where defendants' proffered excuse "strain[ed] credulity," particularly given that

defendants were a members of "sophisticated … corporation," and made no attempt to review data

for years after being sued. *Id.* at 426-27. Likewise, BIL is a sophisticated entity that made no effort

to collect or preserve ESI for years, despite doing so for Madoff feeder funds *other* than Sentry.

*See* Pl. Br. at 8-11. Moreover, the *Moody* court found that, even with a credible explanation

"defendants' repeated failure over [four] years to confirm that data had been properly preserved

despite its ongoing affirmative Rule 11 and Rule 26 obligations" were still sufficient on their own to "evince intentionality." 271 F. Supp. 3d at 431-32. Similarly here, despite circulating a litigation hold, and promising to follow-up to collect documents, BIL never attempted to reach out, never followed up, and never collected documents until 2022. Because BIL's extensive, ongoing, and insufficiently explained failures to preserve meet all four *Moody* elements, this Court should find an intent to deprive and grant an adverse inference. *See Moody*, 271 F. Supp. 3d at 431-32.

BIL further attempts (at 22) to distinguish itself from the defendants in *CrossFit Inc. v. Nat'l Strength & Conditioning Ass'n*, 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019), by arguing that it "has cooperated in the discovery process." The record demonstrates otherwise. Aside from its continued failure to acknowledge its duty to preserve ESI, BIL has long hid the fact of these failures. *See* Pl. Br. at 16-17. During two Rule 26(f) conferences, BIL failed to disclose that all relevant ESI was missing. *Id*. It continued to conceal this fact in its initial disclosures, served on October 28, 2021, which failed to provide *any responsive information whatsoever* and again omitted the fact that BIL had lost ESI from the relevant time period. *See* Pl. Br. Ex. 13. And BIL's refusal to meet and confer with the Liquidators and refusal to provide answers as to its preservation efforts required two court conferences to resolve. *See generally* Dkt. 1004, Dkt. 1035; Pl. Br. Exs. 16 (Sept. 14, 2022 Hr'g Tr.), 17 (Oct. 19, 2022 Hr'g Tr.). After the initial conference, the Court ordered BIL to explain what happened to missing attachments, where BIL's metadata was, who may have been blind-copied on relevant emails, and whether BIL's policy to delete the ESI of former employees was suspended for recipients of the litigation hold (which it was not)—all of which BIL had a duty to disclose under Rule 26. Pl. Br. Ex. 16 at 31:18-32:7, 32:22-33:2, 33:12-18; *see* Dkt. 1035. But it could not do so, requiring a second conference where, over BIL's motion for a protective order, the Court granted a Rule 30(b)(6) deposition. *See* Pl. Br. Ex. 17 at 24:4-7.

FILED UNDER
PENDING MOTION TO SEAL            19

### B.  The Court Should Grant The Liquidators An Adverse Inference

BIL's disregard of known preservation obligations is exactly the sort of "conscious dereliction" from which an intent to deprive should be inferred. An adverse inference presuming that the emails BIL destroyed would have been favorable to the Liquidators in establishing personal jurisdiction is warranted given BIL's knowing failures to preserve—which has substantially undercut the Liquidators' ability to make jurisdictional arguments. *Supra*, § I.E; *see also Ottoson*, 268 F. Supp. 3d at 584 ("An adverse inference instruction 'is imposed to ameliorate any prejudice to the innocent party by filling the evidentiary gap created by the party that destroyed evidence.'" (citation omitted)). The *very existence* of emails demonstrating contact between BIL and U.S. entities, such as FGG, about the Funds help demonstrate this Court's jurisdiction over BIL, regardless of the exact content of the emails. Any such emails would further show BIL's knowledge of the U.S.-focused nature of its investments in the Funds, as this Court has noted repeatedly when finding personal jurisdiction on that basis. *See, e.g.*, *SIPC v. BLMIS*, 2022 WL 3094092, at *3-4 (Bankr. S.D.N.Y. Aug. 3, 2022), 2022 WL 3094092, at *3-4 (citing communication with FGG U.S. about Sentry subscriptions and redemptions as evidence of jurisdictional contacts); *see also* Mot. at 18 (asserting that BIL "had no contacts whatsoever with the United States"). Thus, because such emails clearly existed, *supra*, §§ I.C, I.D; and have been destroyed by BIL through its "conscious dereliction" of its preservation obligations, this Court should grant an adverse inference to ameliorate the prejudice the Liquidators have suffered.

### CONCLUSION

For all these reasons, and those discussed in their opening brief, the Liquidators respectfully request that the Court (1) find that BIL spoliated evidence and that such spoliation prejudiced the Liquidators, (2) find that BIL's conscious disregard of its preservation obligations evinces an 'intent to deprive' and (3) grant the Liquidators' requested relief, *see* Pl. Br. 40.

Dated:    New York, New York              Respectfully submitted,
          March 8, 2023

                                         SELENDY GAY ELSBERG PLLC


                              By:    /s/              *David S. Flugman*
                                     David Elsberg
                                     Maria Ginzburg
                                     Jordan Goldstein
                                     Lena Konanova
                                     David S. Flugman
                                     Joshua S. Margolin
                                     1290 Avenue of the Americas
                                     New York, New York 10104
                                     Telephone: 212-390-9000
                                     delsberg@selendygay.com
                                     mginzburg@selendygay.com
                                     jgoldstein@selendygay.com
                                     lkonanova@selendygay.com
                                     dflugman@selendygay.com
                                     jmargolin@selendygay.com

                                     -and-

                                     BROWN RUDNICK LLP

                                     David J. Molton
                                     Marek P. Krzyzowski
                                     Seven Times Square
                                     New York, New York 10036
                                     Telephone: 212-209-4800
                                     dmolton@brownrudnick.com
                                     mkrzyzowski@brownrudnick.com

                                     *Attorneys for Plaintiffs Joint Liquidators*


FILED UNDER
PENDING MOTION TO SEAL              21