UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>       Debtor in Foreign<br>       Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>       Plaintiffs,<br><br>       v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>       Defendants. | Adv. Pro. No. 10-03635 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>       Plaintiffs,<br><br>       v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>       Defendants. | Adv. Pro. No. 10-03636 (CGM) |

**REPLY BRIEF IN FURTHER SUPPORT OF THE LIQUIDATORS' MOTION FOR
SANCTIONS UNDER RULE 37(e) AGAINST BNP PARIBAS (SUISSE) SA**

Date: March 8, 2023

SELENDY GAY ELSBERG PLLC

David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
1290 Avenue of the Americas
New York, New York 10104
Telephone: 212-390-9000

FILED UNDER
PENDING MOTION TO SEAL

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800

FILED UNDER
PENDING MOTION TO SEAL

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ........................................................................................................................2

I.  BNP Suisse's Spoliation Of ESI Under Rule 37(e)(1) Entitles The Liquidators To
    A Preclusion Order ..................................................................................................2

    A.  BNP Suisse's Duty To Preserve Emails Was Triggered In December 2008...........3

    B.  BNP Suisse Failed To Take Reasonable Steps To Preserve ESI............................4

    C.  BNP Suisse's ESI Cannot Be Restored Or Replaced ............................................8

    D.  The Liquidators Are Prejudiced By BNP Suisse's Spoliation..............................10

    E.  The Court Should Preclude BNP Suisse From Disputing Personal
        Jurisdiction On The Grounds That Certain Evidence Is Lacking .........................12

II. Because BNP Suisse Destroyed ESI Through Its Conscious Dereliction Of Its
    Duty To Preserve, This Court Should Presume The Deleted ESI Would Have
    Been Unfavorable For BNP Suisse........................................................................14

    A.  BNP Suisse's Conscious Dereliction Of Its Duty To Preserve
        Demonstrates Its Intent To Deprive Future Litigants Of This Evidence ...............15

    B.  The Court Should Grant The Liquidators An Adverse Inference.........................19

CONCLUSION....................................................................................................................20

FILED UNDER
PENDING MOTION TO SEAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Aircraft Indus., Inc. v. Boeing Co.*,
  319 F.R.D. 730 (N.D. Ala. 2017), *aff'd*, 2022 WL 433457 (11th Cir. Feb. 14,
  2022) ................................................................................................................16

*Alexander Interactive, Inc. v. Adorama, Inc.*,
  2014 WL 12776440 (S.D.N.Y. June 17, 2014) .................................................3

*Brown Jordan Int'l, Inc. v. Carmicle*,
  2016 WL 815827 (S.D. Fla. Mar. 2, 2016), *aff'd*, 846 F.3d 1167 (11th Cir.
  2017) ................................................................................................................14

*CAT3, LLC v. Black Lineage, Inc.*,
  164 F.Supp.3d 488 (S.D.N.Y. 2016) .........................................................11, 14, 15

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
  2021 WL 4190628 (S.D.N.Y. Aug. 18, 2021) ...........................................11, 18

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
  337 F.R.D. 47 (S.D.N.Y. 2020) ................................................................13, 19

*Coan v. Dunne*,
  602 B.R. 429 (D. Conn. 2019) ...................................................................8, 9

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
  2022 WL 16551632 (E.D. Cal. Oct. 31, 2022) ..........................................14, 15

*Doe v. Wesleyan Univ.*,
  2022 WL 2656787 (D. Conn. July 8, 2022) ....................................................7

*Doubleline Cap. LP v. Odebrecht Fin., Ltd.*,
  2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021) ..............................................3, 4

*EBIN N.Y., Inc. v. SIC Enter., Inc.*,
  2022 WL 4451001 (E.D.N.Y. Sept. 23, 2022) ...............................................18

*Europe v. Equinox Holdings, Inc.*,
  592 F.Supp.3d 167 (S.D.N.Y. 2022) ...............................................................5

*Karsch v. Blink Health Ltd.*,
  2019 WL 2708125 (S.D.N.Y. June 20, 2019) ................................................10

*Kronisch v. United States*,
   150 F.3d 112 (2d Cir. 1998).................................................................................................10

*Moody v. CSX Transportation, Inc.*,
   271 F. Supp. 3d 410 (W.D.N.Y. 2017) ...............................................................14, 15, 16, 17

*Mule v. 3-D Bldg.& Constr. Corp.*,
   2021 WL 2788432 (E.D.N.Y. July 2, 2021) .........................................................................14

*Ottoson v. SMBC Leasing & Fin., Inc.*,
   268 F.Supp.3d 570 (S.D.N.Y. 2017)........................................................................13, 14, 19

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*,
   685 F.Supp.2d 456 (S.D.N.Y. 2010), *abrogated on other grounds by Chin v.*
   *Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012) ....................................................4, 8, 9

*In re Petters Co., Inc.*,
   606 B.R. 803 (Bankr. D. Minn. 2019) ..................................................................................19

*Picard v. Cathay Life Ins. Co.*,
   2022 WL 16626325 (Bankr. S.D.N.Y. 2022) .......................................................................13

*Resnik v. Coulson*,
   2019 WL 2256762 (E.D.N.Y. Jan. 4, 2019) .........................................................................15

*SIPC v. BLMIS*,
   2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) .......................................................13, 20

*Treppel v. Biovail Corp.*,
   249 F.R.D. 111 (S.D.N.Y. 2008) .........................................................................................6, 7

*Zubulake v. UBS Warburg LLC*,
   229 F.R.D. 422 (S.D.N.Y. 2004) ................................................................................5, 6, 7, 9

**Other Authorities**

Fed. R. Civ. P. 11 ........................................................................................................................17

Fed. R. Civ. P. 26 .....................................................................................................................8, 17

Fed. R. Civ. P. 37(e) ............................................................................................................1, 2, 10, 14

## PRELIMINARY STATEMENT

In its Opposition Brief ("Opp."), BNP Suisse[1] confirms that it has utterly failed to preserve evidence that bears directly on this case and, as such, has violated its duties to this Court. BNP Suisse glosses over its failure to take even the most basic preservation steps—such as distributing a litigation hold to *any* potentially relevant custodians, suspending deletion policies (a failure which resulted in the destruction of CDs containing the emails of 22 out of 27 former employees on BNP Suisse's Custodians List), preserving the hard drive containing the emails of former Fortis Banque[2] employees, and preserving emails on its servers from current BNP Suisse employees.[3] The result is that BNP Suisse—which engaged in hundreds of transactions with the Fairfield Funds and redeemed tens of millions of dollars originating from the Madoff Ponzi scheme—has produced *zero emails* in this case. BNP Suisse's blatant disregard of its preservation obligations has prejudiced the Liquidators, and this Court should impose sanctions under Rule 37(e).

Remarkably, rather than address the myriad failures set forth in the Liquidators' opening brief ("Pl. Br."), BNP Suisse instead attempts to weaponize its own misconduct by asking this Court to accept—without any evidence—rank speculation that its employees inexplicably and co-incidentally deleted every relevant electronic communication before a duty to preserve attached, and that nothing in the spoliated documents was relevant to the jurisdictional arguments asserted in BNP Suisse's motion to dismiss. But, based on documents produced by third parties, we know that this is not true: those documents show jurisdictionally relevant contacts between BNP Suisse

---

[1] Capitalized terms not herein defined have the same meaning as in the Liquidators' opening brief.

[2] An entity that also transacted in the Funds and with which BNP Suisse merged in May 2010.

[3] Including Fortis Banque employees who stayed on at BNP Suisse after the May 2010 merger and had their emails transferred to BNP Suisse's system.

FILED UNDER
PENDING MOTION TO SEAL

and the United States, and the Court can and should conclude that the spoliated communications would have contained more such contacts. Black-letter law dictates that BNP Suisse, which failed to take basic steps to preserve electronic communications, must bear the consequences of its spoliation—not the Liquidators. Any other result would be inequitable.

BNP Suisse has no answer to the majority of the arguments made in the Liquidators' opening brief. Instead, it tries to sidestep those arguments by claiming that the Liquidators have not yet been prejudiced by the spoliation, asking the Court to postpone a decision on this sanctions motion until after a decision on its jurisdictional motion. This is a red herring. The Liquidators already have suffered significant prejudice. The parties are in the midst of briefing BNP Suisse's motion to dismiss for lack of jurisdiction where BNP Suisse has argued that the Liquidators have insufficiently alleged BNP Suisse had "any contacts" with the United States. BNP Suisse's Mem. Of Law (Dkt. 748)[4] ("Mot.") at 3. Yet, BNP Suisse has hamstrung the Liquidators' ability to respond to this argument by spoliating evidence that directly bears on its U.S. contacts. BNP Suisse's spoliation is inexcusable and sanctionable, and the Court should grant relief to the Liquidators now as provided by Rule 37.

## **ARGUMENT**

### I.    **BNP Suisse's Spoliation Of ESI Under Rule 37(e)(1) Entitles The Liquidators To A Preclusion Order**

In their opening brief, the Liquidators demonstrated (at 20-22) that BNP Suisse should have been on notice of the potential for litigation in December 2008, when news of the Madoff fraud broke—and that instead of preserving evidence, BNP Suisse destroyed or lost relevant ESI. Pl. Br. at 24-28. In response, BNP Suisse misstates the applicable legal standard and attempts to

---

[4] Unless otherwise specified, docket citations refer to filings in Adv. Pro. No. 10-03636 (CGM).

FILED UNDER                                   2
PENDING MOTION TO SEAL

benefit from its spoliation by relying on baseless assertions about what the spoliated documents

might have shown, and when they might have been deleted. These arguments are unavailing.

### A.    BNP Suisse's Duty To Preserve Emails Was Triggered In December 2008

BNP Suisse argues (at 5-6, 17) that it had no duty to preserve because it did not foresee

litigation after BLMIS's collapse. However, as BNP Suisse itself admits (at 16-17), the applicable

inquiry is objective, not subjective: whether or not BNP Suisse actually foresaw litigation, it had

a legal duty to preserve once "a reasonable party in the same factual circumstances would have

reasonably foreseen litigation." *Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 12776440,

at *3 (S.D.N.Y. June 17, 2014) (citation omitted). The "factual circumstances" here are straight-

forward: BNP Suisse admits that both it and Fortis Banque were aware in December 2008 of the

implosion of Madoff's fraud, Tr. 51:18-25—a fraud from which they had redeemed tens of mil-

lions of dollars through the Funds, ████████████████████████████, *see* Pl.

Br. Ex. 7. The Madoff fraud is the paradigmatic event that triggers a reasonable expectation of

litigation—particularly for those institutions, like Defendants, who redeemed money from

Madoff's scheme. *Cf. Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, 2021 WL 1191527, at *6

(S.D.N.Y. Mar. 30, 2021) (noting that "[c]ertain types of incidents tend to trigger litigation" and

providing "[l]arge-scale criminal bribery schemes" as one such example (citation omitted)). A

reasonable, similarly situated party would have anticipated litigation in December 2008.

Nor should the Court credit BNP Suisse's assertion (at 6, 17) that neither BNP Suisse nor

Fortis Banque ever solicited or recommended investments from clients in the Fairfield Funds and

therefore were unaware of the likelihood of litigation. It is irrelevant for litigation anticipation

purposes whether BNP Suisse or Fortis Banque ██████████████████████:

they still funneled tens of millions of dollars through their accounts, in and out of the Funds. That

alone would put a reasonable, sophisticated entity on notice of potential future litigation as soon

as it learned of the Funds' collapse. Moreover, crediting this argument would reward BNP Suisse

for spoliation, because the degree and nature of BNP Suisse and Fortis Banque's communications

concerning the Funds are very much in dispute—and the best evidence of those activities are in

the documents that BNP Suisse spoliated. Furthermore, the limited documentary evidence availa-

ble from third parties ███████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████. *See* Pl. Br. Ex. 5.

Finally, BNP Suisse argues that a party must have anticipated litigation in the United States

for the preservation duty to arise. Opp. at 17-18. The Liquidators know of no law supporting that

erroneous position, and one of BNP Suisse's own cited authorities cuts against it: in *Pension Com-*

*mittee*, the court found that the duty to preserve evidence for U.S. litigation arose in part based on

another foreign party's filing of a complaint with a foreign regulator. *See Pension Comm. of Univ.*

*of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F.Supp.2d 456, 475 (S.D.N.Y. 2010), *abro-*

*gated on other grounds by Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012). In any

event, the Court can and should conclude that BNP Suisse reasonably should have been on notice

that U.S.-based litigation would arise from the collapse of U.S.-based BLMIS, given the Madoff

fraud's deep connections with the United States—as evidenced by the SEC complaint against

BLMIS cited by BNP Suisse (Opp. at 6, n.3), which was filed in a New York federal district court

in December 2008. *Cf. Doubleline* 2021 WL 1191527, at *1, *6 (finding that duty to preserve

attached to Brazilian defendants involved in "international bribery scheme" when scheme was

under investigation by U.S. authorities over a year before action commenced).

### B.    BNP Suisse Failed To Take Reasonable Steps To Preserve ESI

Even after BNP Suisse concedes it had actual knowledge of this litigation in August 2010,

it continued to flout basic preservation obligations. BNP Suisse contemptuously dismisses the

Liquidators' arguments about its failure to properly issue, distribute, and execute a litigation hold as "quibbles," *see* Opp. at 19—but litigation holds are at the heart of a potential litigant's preservation requirements. Issuing a timely litigation hold and then "oversee[ing] compliance with the … hold [and] monitoring the party's efforts to retain … relevant documents" are critical early steps in the preservation process, not a minor procedural matter. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("*Zubulake V*"). Failure "to timely institute 'a formal litigation hold'" supports a conclusion that the party "did not undertake reasonable steps to preserve ESI." *Europe v. Equinox Holdings, Inc.*, 592 F.Supp.3d 167, 177 (S.D.N.Y. 2022) (citation omitted).

Here, BNP Suisse's litigation hold fails multiple aspects of the *Zubulake* test. BNP Suisse delayed sending its initial litigation hold out for 28 months after it should have reasonably been on notice of litigation and for nine months after having actual knowledge of this litigation. When it circulated its litigation holds, it failed to distribute them to any individuals likely to have responsive information and improperly relied entirely on individual employees to carry out preservation instructions. *Zubulake V*, 229 F.R.D. at 432 ("[I]t is *not* sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information.") (emphasis in original). Compounding these failures, BNP Suisse conceded that it never suspended its ten-year deletion policy for CDs containing former employees' emails—including the emails for 22 out of its 27 former employee custodians—███████████████████████████████ ██████. *See* Opp. at 4; Tr. 64:9-65:11. And it admits (at 2) that it cannot locate the Fortis Banque drive, which preserved employees' emails from the relevant period.

Remarkably, BNP Suisse asks this Court to believe that, rather than ESI being destroyed due to this litany of preservation errors, every one of its 31 custodians coincidentally happened to delete all relevant emails before August 2010, when BNP Suisse concedes it was actually aware

of this litigation. *See* Opp. at 18. The Court should reject this utterly implausible hypothesis. Indeed, BNP Suisse has no factual basis for its rank conjecture, given that its corporate representative never spoke to a *single custodian* about their deletion practices. *See* Tr. 91:15-19; *see also Zubulake V*, 229 F.R.D. at 436 (noting counsel's failure to "ascertain each of the key players' document management habits" when litigation hold was issued). The absurdity of this "mass deletion" hypothesis is even more apparent because it is simply parroting the same arguments repeated by all five BNP entities against which the Liquidators have filed a 37(e) motion. *See* Opp. at 18; BNP SSL Opp. at 20; BNP Sec. Nom. Opp. at 19; BNP Fortis Opp. at 20; BGL BNP Opp. at 8. If it is in fact true that custodians across five BNP entities all deleted Fairfield-related ESI, that reflects a coordinated effort to conceal and destroy relevant evidence. Elsewhere in its brief BNP Suisse contradicts itself, asserting (at 29) that one "likely explanation[]" is that it "lost … ESI … over the … years *since the Original Complaint was filed*" (emphasis added). This unsupported hypothesis would not even be on the table had BNP Suisse taken the basic steps to preserve evidence that the law clearly requires.

Considerable evidence also supports the conclusion that BNP Suisse spoliated relevant evidence even after it concedes actual knowledge of this litigation in mid-August 2010. BNP Suisse's policy was to retain CDs containing departed employees' emails for ten years: so, for example, a CD containing the emails from an employee who departed in 2002—the earliest year in the relevant time frame—would not have been destroyed until 2012. *See* Pl. Br. Ex. 2 at 3; Tr. 36:22-23. Thus, pursuant to BNP Suisse's own policy, BNP Suisse destroyed the CDs containing the emails of 22 out of 27 former employee custodians years after this litigation began. *Cf. Treppel v. Biovail Corp.*, 249 F.R.D. 111, 119 (S.D.N.Y. 2008) ("Since [defendant's] policy is to retain its monthly backups for one year before overwriting them, as of May 1, 2003, it presumably possessed backups

dating back to May 2002 … ."); *Doe v. Wesleyan Univ.*, 2022 WL 2656787, at *14 (D. Conn. July

8, 2022) (relying on party's "general business practice" of "preserving data for a specified period"

in determining when evidence was likely spoliated). ████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████ .

      Finally, the Liquidators' attempt to investigate what happened to these relevant documents

was stymied by BNP Suisse's failure to answer questions about the existence and preservation of

ESI during its 30(b)(6) deposition. BNP Suisse blames the passage of time for its inability to pro-

vide meaningful answers, complaining that "those questions are no longer reasonably possible to

answer." [5] *See* Opp. at 13. This explanation ignores the many questions for which its corporate

representative simply made no attempt to gather information. [6] But it is also reflects a contemptu-

ous approach to preservation obligations. *Zubulake* requires parties to "make certain that all

sources of potentially relevant information are identified and placed 'on hold[]'" as soon as a liti-

gation hold is put in place so that information is not lost to the passage of time. *See Zubulake V*,

229 F.R.D. at 432 (citation omitted). Put otherwise, by claiming that it should be excused from

having to answer questions about documents that it spoliated, BNP Suisse has conceded that it

failed in its duties to this Court.

---

[5] The Liquidators reject BNP Suisse's assertion (at 13 n.6) that the fact the Liquidators did not serve additional deposition notices and discovery requests indicates that the Liquidators understood "that there were no reasonably available answers to their questions." BNP Suisse claims (at 12) it spent "hundreds" of hours to prepare its corporate representative, yet clearly testified that it did not know the answers to basic questions about its preservation and deletion practices. It does not get to walk away from this testimony by suggesting that the Liquidators had any obligation to seek additional discovery beyond the 30(b)(6) deposition and accompanying document requests.

[6] *See* Tr. 18:16-22; Tr. 29:5-30:20; Tr. 34:6-16; Tr. 35:6-11; Tr. 39:19-40:16; Tr. 54:2-20; Tr. 75:13-76:8; Tr. 91:15-19.

FILED UNDER              7
PENDING MOTION TO SEAL

BNP Suisse should not be allowed to insulate itself from sanctions by taking advantage of

unknowns created by its own failure to take timely and adequate preservation measures. The Court

should thus reject BNP Suisse's unsupported and self-serving assertions about when its spoliation

occurred, especially in light of the record evidence to the contrary.

### C.    BNP Suisse's ESI Cannot Be Restored Or Replaced

BNP Suisse next attempts to downplay the effects of its spoliation by urging the Court to

presume that third parties can fill the evidentiary gaps BNP Suisse created. Opp. at 19-20. This is

yet another transparent attempt by BNP Suisse to profit from its own spoliation, since without the

spoliated documents, no one can know what may or may not be duplicated in third-party

collections. It is precisely to prevent that sort of unjust result that courts have held that third-party

documents cannot be deemed to restore or replace ESI when "[t]here can be no assurance that [the

non-spoliating party] has received from third-party sources all of the meaningful emails that could

and should have been obtained in the first instance from [the spoliating party]." *Coan v. Dunne*,

602 B.R. 429, 439-40 (D. Conn. 2019).

As a threshold matter, BNP Suisse does not even try to address the fact that third-party

productions capture neither relevant internal emails nor the metadata that parties have a Rule 26

obligation to provide. Pl. Br. at 5-6, 30. These internal documents would help the Liquidators

demonstrate BNP Suisse's jurisdictional contacts—including the timing of those contacts and the

personnel involved. It is undisputed that there is no replacement for these documents.

As to documents exchanged with third parties, the Liquidators "do not know what has been

destroyed," and so cannot know "[t]he volume of missing emails and documents," or their

"substance." *Pension Comm.*, 685 F.Supp.2d at 478. And although "it is impossible to know the

extent of the prejudice suffered," *id.* (citation omitted), the prejudice is far more substantial than

in *Pension Committee,* a case on which BNP Suisse relies, in which an "enormous amount" of

third-party discovery, including documents and witness testimony, filled the gap and limited the harm, *id.* at 496-97; *see also Coan*, 602 B.R. 429 at 440 (granting a permissive adverse inference despite third-party productions because "[i]t is equally plausible to conclude that the emails received from third parties are but the tip of a proverbial iceberg"); *Zubulake V*, 229 F.R.D. at 429 (imposing sanctions despite some emails being recovered because "some—and no one can say how many—were not [recovered]"). By contrast, the third-party emails available to the Liquidators are useful to show certain *categories* of documents that were destroyed—but there is simply no indication that third-party documents capture a substantial portion of the communications that BNP Suisse spoliated.[7]

And to the extent that ESI between BNP Suisse and the underlying clients on whose behalf BNP Suisse subscribed in the Funds could replace the copies that BNP Suisse spoliated, BNP Suisse has foreclosed that possibility by refusing to disclose the identities of those clients, citing foreign privacy laws. Thus, from a practical perspective, the Liquidators have been left unable to even attempt to recover those communications for use in opposing BNP Suisse's personal jurisdiction motion to dismiss.[8] BNP Suisse cannot simultaneously argue that documents are

---

[7] BNP Suisse argues (at 19-20) that the Liquidators have "chosen to conceal" productions from FGG and Citco Fund Services. This argument drastically misleads the Court. The Liquidators disclosed the existence of these productions to BNP Suisse sixteen months ago in their initial disclosures and, in fact, informed BNP Suisse directly in August 2022 that third-party records demonstrate its spoliation of ESI. BNP Suisse has also known the contents of certain of these emails since at least October 14, 2022, when the Liquidators attached them to a letter to the Court. *See* Dkt. 1033. Despite ample opportunity, BNP Suisse waited to make any request for documents until over five months after the Court ordered the close of jurisdictional discovery, and just a few weeks before the Liquidators' opening briefs were due. Regardless, BNP Suisse could review these records in perpetuity and *still be* unable to answer whether they are complete, given it does not know the full extent or types of communications it had about the Funds. *See* Pl. Br. at 29.

[8] Such client communications would be relevant to rebutting BNP Suisse's repeated assertions that it was operating ███████████████████████ *See* Opp. at 17; *see also id.* at 5-6, 24.

FILED UNDER                          9
PENDING MOTION TO SEAL

available from third parties in order to oppose this spoliation motion but cut off the ability for the

Liquidators to obtain those documents in order to oppose BNP Suisse's motion to dismiss.

> ### D.    The Liquidators Are Prejudiced By BNP Suisse's Spoliation

In the face of its evident spoliation, BNP Suisse first attempts to avoid sanctions by mis-

stating the legal standard, and then asserts (without any basis) that the motion for sanctions is

unnecessary because the Liquidators have the evidence they need to argue personal jurisdiction.

Here again, the Court need not indulge BNP Suisse's convoluted arguments, because the prejudice

to the Liquidators is plain.

Though BNP Suisse implies otherwise, *see* Opp. at 15, Rule 37(e) "does not place a burden

of proving or disproving prejudice on one party or the other" precisely because "placing the burden

of proving prejudice on the party that did not lose the information may be unfair," Fed. R. Civ. P.

37(e) advisory committee's note to 2015 amendment; *see also Kronisch v. United States*, 150 F.3d

112, 128 (2d Cir. 1998) ("holding the prejudiced party to too strict a standard of proof … would

allow parties who have intentionally destroyed evidence to profit from that destruction"). Courts

in this Circuit require the moving party to show only that the "evidence plausibly 'suggests' that

the spoliated ESI could support the moving party's case." *Karsch v. Blink Health Ltd.*, 2019 WL

2708125, at *21 (S.D.N.Y. June 20, 2019) (collecting cases).

The Liquidators easily satisfy this standard. As discussed in the Liquidators' Motion (at 4-

5, 33), third-party documents demonstrate that BNP Suisse spoliated ESI that bears not only on

this litigation generally, but directly on the issue of personal jurisdiction. *See e.g.*, Pl. Br. Exs. 5

and 6 (██████████████████████████████████████████

███████); Exs. 7 and 8 (█████████████████████████████████████);

Ex. 9 (████████████████████████████████████); Ex. 10 (██████████

██████████████████████████████████████████████).[9] BNP Suisse mis-

characterizes (at 21) these documents as "shaky" evidence of jurisdiction, but that is irrelevant

here, as this motion is not the appropriate place to make (or litigate) the Liquidators' jurisdictional

showing. What matters is that these documents "plausibly suggest" that BNP Suisse spoliated ESI

that could support the Liquidators' personal jurisdiction argument.

BNP Suisse next pivots to claiming that the Liquidators cannot be prejudiced because it

has produced "exactly the types of (non-email) documents the Liquidators have cited in other cases

to make a showing of personal jurisdiction." Opp. at 21. Not only is BNP Suisse's statement mis-

leading[10] but it ignores the fact that the Liquidators are entitled to make the strongest possible case

available to them—an ability that has been directly hindered by BNP Suisse's spoliation. *See, e.g.*,

*CAT3, LLC v. Black Lineage, Inc.*, 164 F.Supp.3d 488, 497 (S.D.N.Y. 2016) ("Plaintiff's case

against Defendants is weaker when it cannot present the overwhelming quantity of evidence it

otherwise would have to support its case." (citation omitted)); *CBF Industria de Gusa S/A v. AMCI

Holdings, Inc.*, 2021 WL 4190628, at *17 (S.D.N.Y. Aug. 18, 2021) ("[D]estruction of relevant

ESI" prejudices a moving party by "limit[ing] the universe of documents available"). If BNP

Suisse believes this Court's jurisdiction to be a foregone conclusion, the Liquidators invite it to

---

[9] BNP Suisse contends (at 20) that the @fggus domain is not indicative of whether an FGG employee was U.S.-based because it claims ███████████, the FGG representative in Pl. Br. Exs. 5 and 6, ██████████████████████████. *See* Pl. Br. Ex. 6. BNP Suisse simply misstates the Liquidators' argument—and the documents. These emails are jurisdictionally relevant not because of ████████ email domain (██████████████), but because Ex. 6 shows that ██████████████████████, and because—regardless of where ████████

[10] BNP Suisse omits the fact that the Liquidators cited a variety of email exchanges (in addition to other non-email evidence) in their *HSBC* declaration, including defendant-produced email exchanges—which would be impossible to replicate here due to BNP Suisse's spoliation. *See* Opp. at 21; Decl. of Lena Konanova at ¶¶ 7-8, 45, 48-50, *Fairfield Sentry Ltd. (In Liquidation), v. HSBC Private Bank (Suisse) SA*, No. 10-03633 (CGM) (Bankr. S.D.N.Y. Dec. 14, 2022), ECF No. 212.

FILED UNDER                    11
PENDING MOTION TO SEAL

promptly withdraw its motion and pay the Liquidators' fees and costs for unnecessary motion
practice. But if BNP Suisse is unwilling to do that, this motion is necessary because BNP Suisse's
spoliation of documents has made it more difficult for the Liquidators to respond to its argument
that it lacked "any contacts with the United States." *See* Mot. at 3. The Liquidators are prejudiced
because the spoliated communications are directly relevant to refuting BNP Suisse's claim.

Nor should the Court countenance BNP Suisse's invitation to delay a decision on its
spoliation until after deciding the motion to dismiss. *See* Opp. at 23-24. Deciding this issue now
would not "pre-judge" anything. *See id.* On the contrary, the Liquidators are currently prejudiced
by BNP Suisse's spoliation, and the Court's decision on how to remedy this prejudice will impact
how the Liquidators respond to BNP Suisse's motion to dismiss for lack of personal jurisdiction.

### E.   The Court Should Preclude BNP Suisse From Disputing Personal Jurisdiction On The Grounds That Certain Evidence Is Lacking

The preclusion orders that the Liquidators seek, Pl. Br. at 33, are tailored to remedy the
prejudice caused by BNP Suisse's failure to preserve evidence. BNP Suisse misrepresents the Liq-
uidators' requested 37(e)(1) relief, which does not ask the Court to presume anything about the
content or volume of BNP Suisse's communications. *See* Opp. at 23-24. Rather, the Liquidators
simply seek to prevent BNP Suisse from profiting from its spoliation by arguing that it did not
engage in certain types or a certain volume of communications.

BNP Suisse contends that the Liquidators' proposed preclusion orders are not "reasonably
tailored" because they are not limited to solely those subjects the Liquidators can already prove
BNP Suisse communicated about. *See* Opp. at 23-24. BNP Suisse fails to recognize that the very
purpose of a preclusion order is to prevent a party from taking advantage of the gap created by its
own unlawful spoliation—the court need not already have a clear picture of exactly what evidence
a party spoliated, because in that case preclusion orders would be pointless as there would be no

FILED UNDER                                    12
PENDING MOTION TO SEAL

gap left for the spoliator to exploit. *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 68 (S.D.N.Y. 2020).

Further, any "risk of an erroneous judgment" should be "place[d] … on [the] party who wrongfully created the risk." *See Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F.Supp.3d 570, 580 (S.D.N.Y. 2017). The only way to know the true extent of BNP Suisse's jurisdictional contacts would be to examine a full record, which does not exist because BNP Suisse destroyed it. By precluding BNP Suisse from arguing that it lacked certain kinds and a certain volume of communications, this Court will properly allocate the risk to BNP Suisse, who spoliated evidence, rather than the Liquidators, who are the victims of BNP Suisse's failure to preserve.

BNP Suisse also asserts that there is "no rational relationship" between its spoliation and the proposed preclusion orders because "most of" the Liquidators' third-party example emails "have nothing to do with the United States." Opp. at 23. This is false. *See* Pl. Br. Exs. 5-10 (███ ███████████████████████████████████████████████████); *see also supra*, § I.D. And BNP Suisse's further argument that "most of" the third-party emails "have nothing to do with" the subscriptions or redemptions at issue is also inapposite. Regardless of whether a communication mentions a *specific* subscription or redemption, they relate to such transactions generally because ███████████████████████████████████████████████. *See, e.g., Picard v. Cathay Life Ins. Co.*, 2022 WL 16626325 (Bankr. S.D.N.Y. 2022) (citing to information about the Funds received by foreign bank when finding personal jurisdiction). [11]

---

[11] BNP Suisse's attempt (at 23-24) to divorce the Liquidators' requested preclusion order about due diligence, investment strategy, and BLMIS-related communications from personal jurisdiction is also unavailing: this Court has already determined that such materials can evince jurisdictional contacts. *See, e.g., SIPC v. BLMIS*, 2022 WL 3094092, at *3-4 (Bankr. S.D.N.Y. Aug. 3, 2022).

The Liquidators have proffered ample evidence demonstrating the likelihood that BNP Suisse spoliated email communications relevant to personal jurisdiction after the duty to preserve attached. *Supra*, §§ I.A-I.B. Through the Rule 37(e)(1) sanctions they propose, Pl. Br. at 33, the Liquidators ask only that this Court prevent BNP Suisse from taking unfair advantage of its spoliation, resolving uncertainty in favor of the Liquidators—the prejudiced party. *See Ottoson*, 268 F.Supp.3d at 580.

## II.    Because BNP Suisse Destroyed ESI Through Its Conscious Dereliction Of Its Duty To Preserve, This Court Should Presume The Deleted ESI Would Have Been Unfavorable For BNP Suisse

Courts may infer that a party acted with an intent to deprive sufficient for Rule 37(e)(2) sanctions based on its "conscious dereliction of a known duty to preserve." *Mule v. 3-D Bldg.& Constr. Corp.*, 2021 WL 2788432, at \*12 (E.D.N.Y. July 2, 2021) (citation omitted). BNP Suisse argues that the Court cannot infer an intent to deprive from its egregious pattern of spoliation. *See* Opp. at 26. BNP Suisse is wrong: its years-long practice of ignoring and then flouting clear preservation obligations indicates an "intentional failure to take steps necessary to preserve evidence[,] [which] 'satisfies the requisite level of intent'" under Rule 37(e)(2). *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017)  (quoting *Ottoson*, 268 F.Supp.3d at 582); *see also Brown Jordan Int'l, Inc. v. Carmicle*, 2016 WL 815827, at \*37 (S.D. Fla. Mar. 2, 2016), *aff'd*, 846 F.3d 1167 (11th Cir. 2017) (finding intent to deprive where "information was lost because [defendant] failed to take reasonable steps to preserve"); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 2022 WL 16551632, at \*15 (E.D. Cal. Oct. 31, 2022) (finding that a pattern of conduct can support intentional spoliation (citation omitted)).

As BNP Suisse's own authorities acknowledge, courts are divided in whether to apply a 'preponderance of the evidence' or a 'clear and convincing evidence' standard for determining an intent to deprive. *See, e.g., CAT3*, 164 F.Supp.3d at 498-99 (acknowledging division but applying

'clear and convincing' standard because terminating sanctions were at issue); *see also Resnik v. Coulson*, 2019 WL 2256762, at *6 (E.D.N.Y. Jan. 4, 2019), report and recommendation adopted, 2019 WL 1434051 (E.D.N.Y. Mar. 30, 2019). The Court need not resolve that question because the Liquidators satisfy both standards.

### A.   BNP Suisse's Conscious Dereliction Of Its Duty To Preserve Demonstrates Its Intent To Deprive Future Litigants Of This Evidence

BNP Suisse asserts (at 25-26, 30) that the barebones steps it took to preserve documents[12] should shield it from sanctions under 37(e)(2). That is not the law. *See Moody*, 271 F.Supp.3d at 422, 426 (noting defendant downloaded the relevant data "shortly after the accident occurred" and uploaded certain data to a centralized system within hours of the accident but still granting adverse inference); *see also Deerpoint*, 2022 WL 16551632, at *15 (finding that "simply making 'some effort' [to preserve] is not sufficient" and granting adverse inference).

BNP Suisse also argues that its conduct fails the four-factor test laid out in *Moody*. *See* Opp. at 29. Not so. Here, as in *Moody*: (1) evidence once existed that "could fairly be supposed" to be material to the Liquidators' jurisdictional arguments, *supra*, § I.D; (2) BNP Suisse engaged in "affirmative act[s] causing [] evidence to be lost" by destroying the CDs, destroying or losing the hard drive, and allowing employees to continue permanently deleting emails by failing to timely issue a litigation hold, distribute litigation holds, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; (3) these acts occurred after BNP Suisse "knew or should have known of its duty to preserve evidence," *supra*, §§ I.A-I.B; and (4) these acts "cannot be credibly explained as not involving bad

---

[12] BNP Suisse incredulously cites (at 2, 26, 30) its retention of CDs with former employees' emails and its two litigation holds as examples of its preservation efforts—despite the fact that it subsequently destroyed the CDs containing the emails of over 80% of its former employee custodians and failed to distribute its litigation holds to a single custodian.

FILED UNDER
PENDING MOTION TO SEAL                    15

faith by the reason proffered by the spoliator," because BNP Suisse has offered only guesswork

and surmise. *See Moody*, 271 F.Supp.3d at 431.

In *Moody*, the "affirmative act causing … evidence to be lost" was defendants "allow[ing]

the … data on [an] event recorder to be overwritten" and "recycl[ing] [a] laptop" without ever

confirming that the data was preserved elsewhere. *See id.* at 431. Similarly, BNP Suisse destroyed

CDs containing the emails of 22 out of 27 former employee custodians—an affirmative act ███

███████████████████████████████████████████████████████████████████

███████████████—and either lost or destroyed the Fortis Banque hard drive, without

backing up any of the relevant data. This spoliation occurred after the duty to preserve attached.

*Supra*, §§ I.A-I.B. Contrary to BNP Suisse's contention (at 29), the destruction and loss of these

archival sources is itself sufficient to show an "affirmative act" in which BNP Suisse "destroy[ed]

jurisdictionally relevant evidence."

Just as in *Moody*, BNP Suisse provides no credible explanation of how these two central

sources of data from the relevant period were spoliated, *see* Pl. Br. at 6-7; Tr. at 36:6-8; 271

F.Supp.3d at 426-27—nor could BNP Suisse explain its other preservation failures, such as why

there was a nine-month delay between having actual knowledge of this litigation and issuing its

first litigation hold, Tr. 57:17-24. [13] BNP Suisse speculates (at 29) that "the more likely

explanations" for its inability to produce even a single email are its mass deletion hypothesis and

that it "lost other ESI in the course of business combinations and over the dozen years since the

---

[13] BNP Suisse does not deny the Liquidators' reasonable inference that the CDs were destroyed
because it never suspended its ten-year deletion policy, ████████████████████
███████. *Cf. Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017),
*aff'd*, 2022 WL 433457 (11th Cir. Feb. 14, 2022) (finding that defendant's deletion of data ███
████████████ was "[the] type of unexplained, blatantly irresponsible behavior
[that] leads the court to conclude that [defendant] acted with the intent to deprive").

[complaint] was filed." [14] BNP Suisse's surmise is insufficient to avoid sanctions. In *Moody*, for example, the defendants suggested similar innocent explanations as to how "inadvertent human error" caused the data loss. 271 F.Supp.3d at 424. The court rejected them, finding that defendants' explanation "strains credulity," particularly given that they were a "sophisticated … corporation," made no attempt to access or review the data for years after being sued and could not explain what happened to the spoliated laptop. *Id.* at 426-27. Every one of the reasons the *Moody* court had to doubt the spoliators' story applies here: BNP Suisse is a sophisticated entity; ███████████████ █████████████████████████████, *see* Pl. Br. at 11-12; and it has been entirely unable to explain what happened to these items, *id.* at 6-7.

Further, the *Moody* court found that, even if it accepted the defendants' excuse, "defendants' repeated failure over [four] years to confirm that data had been properly preserved despite its ongoing affirmative Rule 11 and Rule 26 obligations" was sufficient on its own to "evince intentionality." 271 F.Supp.3d at 431-32. ████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████. *See* Pl. Br. at 11-13, 27. BNP Suisse's extensive, ongoing, and insufficiently explained failures to preserve easily meet all four *Moody* elements: this Court should thus find 'intent to deprive' and grant an adverse inference. *See Moody*, 271 F.Supp.3d at 431-32.

In fact, BNP Suisse's failures to preserve go beyond even those in *Moody*. In addition to the two tangible sources of ESI that BNP Suisse spoliated, it also failed to issue a timely litigation hold or distribute either of its litigation holds to a single relevant employee. Simply put, since this

---

[14] *Contra* Pl. Br. Ex. 2 at 2 (letter from BNP Suisse received the night before its 30(b)(6) deposition stating that "ESI was generally not lost as a result of the [May 2010] merger" with Fortis Banque).

litigation began over a decade ago, neither BNP Suisse nor its sophisticated U.S. counsel has ever once communicated to its employees that they must stop permanently deleting emails relevant to this litigation. And, knowing that employees had the discretionary ability to permanently delete emails, BNP Suisse compounded this failure by neglecting ██████████████████████████ ████ or to image employees' emails to preserve them, despite having the technological capacity to do so. *See* Tr. 46:3-8, 55:12-56:10.

While BNP Suisse relies (at 27-28) on cases where courts have not found an intent to deprive, these cases are distinguishable. For example, in *EBIN*, though the court found it should have been issued earlier, the plaintiff nonetheless issued a litigation hold to employees as soon as it filed its complaint; here, BNP Suisse failed to issue a litigation hold until nine months after it had actual knowledge of this litigation and then failed to distribute it. *See EBIN N.Y., Inc. v. SIC Enter., Inc.*, 2022 WL 4451001, at *8-9 (E.D.N.Y. Sept. 23, 2022). The spoliating party in *EBIN* also successfully retrieved at least some of the lost data, *id.* at *11, whereas BNP Suisse has been unable to do so, *see also* Pl. Br. at 11-12 n.8. Finally, the *EBIN* plaintiff's "general lack of sophistication" supported the court's "conclusion that [the] [p]laintiff did not act with an intent to deprive," *EBIN*, 2022 WL 4451001 at *11. BNP Suisse has no such excuse.

In *CBF*, there was merely a gap in the defendants' email production, and defendants' retrieval efforts enabled them to produce some of the spoliated emails, in stark contrast to BNP Suisse's inability to produce a single email. 2021 WL 4190628, at *16, *19 (granting attorney's fees and a preclusion order). There were no facts in *CBF* comparable to BNP Suisse's spoliation of the CDs and hard drive. *Id.*

And in *Charlestown*, unlike in this case, the defendants issued a timely litigation hold less than a month after the complaint was filed and a second litigation hold two months later,

distributing these holds to at least some relevant business employees. *Charlestown*, 337 F.R.D. at 53-54 (granting attorney's fees, preclusion order, and allowing jury to consider spoliation). Moreover, the defendants "searched for, copied, and segregated the emails most likely to contain relevant evidence": BNP Suisse took no such steps. *Id.* at 60. And, despite their subsequent spoliation of that ESI, the *Charlestown* defendants were still able to produce some relevant emails. *Id.* at 58. Finally, those defendants were able to offer a clear and credible explanation as to how emails were inadvertently spoliated, which BNP Suisse cannot do. *Id.* at 67-69.[15]

## B.   The Court Should Grant The Liquidators An Adverse Inference

BNP Suisse's disregard of known preservation obligations is exactly the sort of "conscious dereliction" from which the Court should infer an intent to deprive. An adverse inference presuming that the emails BNP Suisse destroyed would have been favorable to the Liquidators in establishing personal jurisdiction is warranted given BNP Suisse's knowing failures to preserve— which has substantially undercut the Liquidators' ability to make jurisdictional arguments. *Supra*, § I.D; *see also Ottoson*, 268 F.Supp.3d at 584 ("An adverse inference instruction 'is imposed to ameliorate any prejudice to the innocent party by filling the evidentiary gap created by the party that destroyed evidence.'" (citation omitted)). The *very existence* of emails demonstrating contact between BNP Suisse and U.S. entities about the Funds helps demonstrate this Court's jurisdiction over BNP Suisse, regardless of the exact content of the emails. Any such emails would further demonstrate BNP Suisse's knowledge of the U.S.-focused nature of its investments in the Funds, as this Court has noted repeatedly when finding personal jurisdiction on that basis. *See, e.g.*, *SIPC*,

---

[15] BNP Suisse also mischaracterizes (at 28) *In re Petters* as holding "that incidental deletion of ESI or even the failure to implement a timely litigation hold is not sufficient to find an intense [*sic*] to deprive." In fact, the court found an intent to deprive and granted an adverse inference, in part because there was no credible explanation for the failure to preserve ESI. *In re Petters Co., Inc.*, 606 B.R. 803, 827-28, 831-32 (Bankr. D. Minn. 2019).

FILED UNDER
PENDING MOTION TO SEAL                    19

2022 WL 3094092, at *3-4 (citing communication with FGG U.S. about Sentry subscriptions and redemptions as evidence of jurisdictional contacts); *see also* Mot. at 3 (BNP Suisse asserting Liquidators fail to allege it had "any contacts" with the U.S.). Thus, because it is clear that such emails existed, *supra*, § I.D, and have been destroyed by BNP Suisse through its "conscious dereliction" of its preservation obligations, this Court should grant an adverse inference to ameliorate the prejudice the Liquidators have suffered.

## <u>CONCLUSION</u>

For the reasons explained above, and in their opening brief, the Liquidators respectfully request that this Court (1) find that BNP Suisse spoliated evidence and that such spoliation prejudiced the Liquidators, (2) find that BNP Suisse's conscious disregard of its preservation obligations evinces an 'intent to deprive' and (3) grant the Liquidators' requested relief, *see* Pl. Br. 37-38.

Dated:   New York, New York
       March 8, 2023

Respectfully submitted,

SELENDY GAY ELSBERG PLLC

By:   /s/      *Joshua S. Margolin*

David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
1290 Avenue of the Americas
New York, New York 10104
Telephone: 212-390-9000
delsberg@selendygay.com
mginzburg@selendygay.com
jgoldstein@selendygay.com
lkonanova@selendygay.com
dflugman@selendygay.com
jmargolin@selendygay.com

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for Plaintiffs Joint Liquidators*

FILED UNDER
PENDING MOTION TO SEAL

21