UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>Debtor in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ABN AMRO Schweiz AG a/k/a AMRO (SWITZERLAND) AG, et al.,<br><br>Defendants. | Adv. Pro. No. 10-03635 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ABN AMRO Schweiz AG a/k/a AMRO (SWITZERLAND) AG, et al.,<br><br>Defendants. | Adv. Pro. No. 10-03636 (CGM) |

**MEMORANDUM OF LAW IN OPPOSITION TO UBS AG'S MOTION TO DISMISS**

Date: April 12, 2023

SELENDY GAY ELSBERG PLLC

David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
Lauren Zimmerman
1290 Avenue of the Americas

New York, NY 10104
Telephone: 212-390-9000

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ....................1

BACKGROUND ....................5

A. The Funds....................5

B. The Citco Entities ....................5

C. UBS's Decision To Invest In The Funds ....................6

D. Brokerage And Custody Agreements ....................9

E. UBS's Investment In The Funds....................10

STANDARD....................15

ARGUMENT....................16

I. UBS Has Sufficient Minimum Contacts With The United States ....................16

A. The Citco Subscriber's Contacts With The United States And Knowledge About The Funds Are Imputed To UBS ....................18

B. UBS Knowingly And Intentionally Invested In Madoff Feeder Funds....................22

1. UBS Purposefully Availed Itself Of The United States Via Its Intentional Investment In The Funds ....................22

2. UBS's Intentional Investment In The Funds Directly Relates To The Liquidators' Claims ....................28

C. UBS Utilized The [REDACTED] Of Sentry And The Citco Subscriber To Invest In And Receive Redemption Payments From Sentry....................29

1. [REDACTED] In Lieu Of Offshore Accounts ....................29

a. UBS Itself Deliberately Used The Citco Subscriber's [REDACTED] ....................30

b. The Citco Subscriber's Deliberate Use Of Its [REDACTED] Is Imputed To UBS ....................30

c. [REDACTED] ....................31

2. UBS And Its Agent Utilized [redacted] To Effectuate [redacted] Wire Transfers ........ 32

3. UBS's And Its Agent's [redacted] Use Was Sufficiently Related To The Harms Alleged ........ 33

D. UBS And Its Agent Engaged In Other Business Activity In And Directed At The United States ........ 34

E. The Court May Exercise Jurisdiction Over UBS Even If The Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis ........ 36

F. The Court Should Reject UBS's "Group Pleading" Argument ........ 37

II. The Exercise Of Jurisdiction Over UBS Is Reasonable ........ 38

CONCLUSION ........ 40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012)....................36

*In re Ampal-Am. Israel Corp.*,
562 B.R. 601 (Bankr. S.D.N.Y. 2017)....................36

*Averbach v. Cairo Amman Bank*
2020 WL 486860 (S.D.N.Y Jan. 21, 2020) ....................33

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014) ....................21

*Branham v. ISI Alarms, Inc.*,
2013 WL 4710588 (E.D.N.Y. Aug. 30, 2013)....................19

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................16, 34

*CutCo Indus., Inc. v. Naughton*,
806 F.2d 361 (2d Cir. 1986)....................17

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................17

*Drake v. Lab. Corp. of Am. Holdings*,
2008 WL 4239844 (E.D.N.Y. Sept. 11, 2008) ....................15

*In re Eur. Gov't Bonds Antitrust Litig.*,
2020 WL 4273811 (S.D.N.Y. Jul. 23, 2020) ....................17, 18, 26, 34

*In re Fairfield Sentry Ltd.*,
2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ....................35

*In re Fairfield Sentry Ltd.*,
596 B.R. 275 (Bankr. S.D.N.Y. 2018)....................36

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
667 F. Supp. 2d 308 (S.D.N.Y. 2009)....................18

*Gucci Am., Inc. v. Weixing Li*,
135 F. Supp. 3d 87 (S.D.N.Y. 2015)....................40

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, ("Licci II"),
673 F.3d 50 (2d Cir. 2012)....................4

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, ("Licci IV"),
732 F.3d 161 (2d Cir. 2013).................... *passim*

*Loginovskaya v. Batrachenko*,
764 F.3d 266 (2d Cir. 2014)....................37

*In re Madoff Sec.*,
513 B.R. 222 (S.D.N.Y. 2014)....................37

*Maersk, Inc. v. Neewra, Inc.*,
554 F. Supp. 2d 424 (S.D.N.Y. 2008)....................19

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
295 F. Supp. 3d 404 (S.D.N.Y. 2017)....................15

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)....................15, 16, 38, 39

*In re Motors Liquidation Co.*,
565 B.R. 275 (Bankr. S.D.N.Y. 2017)....................35

*MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*,
2021 WL 4461773 (S.D.N.Y. Sept. 29, 2021)....................17

*Nike, Inc. v. Wu*,
349 F. Supp. 3d 310 (S.D.N.Y. 2018)....................40

*Obabueki v. Int'l Bus. Machines Corp.*,
2001 WL 921172 (S.D.N.Y. Aug. 14, 2001)....................15

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016)....................31, 33

*Picard v. Banque Lombard Odier & Cie SA* (*In re Bernard L. Madoff*) ("Lombard Odier I"),
2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022).................... *passim*

*Picard v. Banque Lombard Odier & Cie SA (In re Bernard L. Madoff)*, ("Lombard Odier II"),
2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ....................24, 26, 27

*Picard v. Barfield Nominees Ltd.* (*In re Bernard L. Madoff*) ("Barfield"),
2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022)....................4, 23, 24

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) .......... 34

*Picard v. Bureau of Lab. Ins.*,
2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) .......... 37

*Picard v. Bureau of Labor Ins.* (*SIPC v. Bernard L. Madoff Inv. Secs. LLC*)
("*BLI*"),
480 B.R. 501 (Bankr. S.D.N.Y. 2012) .......... *passim*

*Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*) (*Cathay Life Ins. Co.)*,
2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) .......... *passim*

*Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), (*"FGG"*),
627 B.R. 546 (Bankr. S.D.N.Y. 2021) .......... *passim*

*Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*),
2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) .......... 23

*Picard v. Maxam Absolute Return Fund, L.P.*,
460 B.R. 106 (Bankr. S.D.N.Y. 2011) .......... 17, 23

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.* (*In re Bernard L. Madoff*),
2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) .......... 30

*Picard v. Merkin*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) .......... 22

*Picard v. UBS AG (In re Bernard L. Madoff)* (*"UBS"*),
2022 WL 17968924 (Bankr. S.D.N.Y. 2022) .......... *passim*

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
917 F.3d 85 (2d Cir. 2019) .......... 23

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
2021 WL 2000371 (S.D.N.Y. May 19, 2021) .......... 21

*In re Platinum & Palladium Antitrust Litig.*,
449 F. Supp. 3d 290 (S.D.N.Y. 2020) .......... 34

*RJR Nabisco, Inc. v. European Cmty.*,
579 U.S. 325 (2016) .......... 36

*Schansman v. Sberbank of Russia PJSC*,
565 F.Supp.3d 405 (S.D.N.Y. 2021) .......... 33

*Schechter v. Banque Commerciale Privee*,
1991 WL 105217 (S.D.N.Y. June 11, 1991) .......... 21

*Sec. Ins. Co. of Hartford v. ITA Textiles Corp.*,
2000 WL 1576879 (S.D.N.Y. Oct. 23, 2000) ....................20

*Strauss v. Credit Lyonnais, S.A.*,
175 F. Supp. 3d 3 (E.D.N.Y. 2016) ....................40

*Struna v. Leonardi*,
2022 WL 4096146 (S.D.N.Y. Sept. 7, 2022) ....................19

*Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*,
2022 WL 36489 (S.D.N.Y. Jan. 4, 2022) ....................17

*In re Sumitomo Copper Litig.*,
120 F. Supp. 2d 328 (S.D.N.Y. 2000) ....................17, 18

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004) ....................35, 37

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019) ....................16, 39

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*,
2015 WL 4040882 (S.D.N.Y. July 2, 2015) ....................38

*Walden v. Fiore*,
571 U.S. 277 (2014) ....................26, 27

**Statutes**

Federal Rule of Bankruptcy Procedure 7004 ....................16

Federal Rule of Bankruptcy Procedure 7012 ....................1

Federal Rule of Civil Procedure 12(b)(2) ....................1, 15, 16

**Other Authorities**

Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb. 6, 2009) ....................2

Kenneth M. Krys and Greig Mitchell (the "Liquidators"), in their capacities as the duly appointed Liquidators and Foreign Representatives of Fairfield Sentry Limited (In Liquidation) ("Sentry"), Fairfield Sigma Limited (In Liquidation) ("Sigma"), and Fairfield Lambda Limited (In Liquidation) ("Lambda", and together with Sentry and Sigma, the "Funds") in the above-captioned adversary proceedings[1] (together, with the other adversary proceedings now pending against the Funds' former shareholders, the "U.S. Redeemer Actions"), respectfully submit this memorandum of law in opposition to UBS AG's ("UBS") motion to dismiss the Fifth Amended Complaint ("Complaint" or "Compl.") (Case No. 10-ap-03635, Dkt. 620; Case No. 10-ap-03636, Dkt. 679) under Federal Rule of Civil Procedure 12(b)(2) as made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Motion" or "Mot.") (Case No. 10-ap-3635, Dkt. 786; Case No. 10-ap-3636, Dkt. 851).[2]

## PRELIMINARY STATEMENT

The Liquidators seek to recover at least [REDACTED] in payments[3] that UBS received as

---

[1] Sentry and Sigma each are parties to both 10-ap-03635 and 10-ap-03636. Lambda is a party only to 10-ap-03636. UBS AG filed almost identical motions to dismiss in both actions. Unless otherwise specified, citations herein refer to documents as filed on both dockets, which are largely identical as they relate to the issue of personal jurisdiction.

[2] The Liquidators originally named UBS AG Zurich and UBS AG New York in the Fifth Amended Complaint in these proceedings. UBS filed a single motion to dismiss on behalf of only "UBS AG" in response, arguing that UBS AG Zurich and UBS AG New York are not two separate entities and that UBS AG is the single entity involved. Mot. at 2. This brief responds to that structure in kind, opposing UBS's motion to dismiss the claims against both UBS AG Zurich and UBS AG New York by reference to a single entity: UBS AG.

[3] UBS received [REDACTED] from Sentry, approximately [REDACTED] from Sigma, and [REDACTED] from Lambda through the redemption payments at issue here. For purposes of this brief, the Liquidators have applied the exchange rate as of the date of each redemption payment out of Sigma and Lambda and calculated the dollar value of those redemptions to be approximately [REDACTED] and [REDACTED], respectively. This number may vary if the Court ultimately determines that a different exchange rate applies. The Liquidators seek all of these Sigma and

redemptions of its investment in Bernie Madoff's Ponzi scheme. Several Fairfield investors saw their life savings, retirement funds, and pensions wiped out in an instant when the scheme collapsed in December 2008.[4] But as a sophisticated entity with inside knowledge about Madoff's fraud, UBS was able to get out early and reap a massive profit for itself and its clients before Madoff's investment firm was put into bankruptcy. UBS now attempts to evade responsibility by minimizing its own substantial and purposeful connections with the U.S.; UBS should be held to account and its motion to dismiss denied.

The facts relevant to this motion are simple. When UBS withdrew its investment from the Fairfield Funds, it received inflated redemption payments that were substantially sourced from investors' monies that Fairfield had invested in Madoff's eponymous New York investment firm Bernard L. Madoff Investment Securities LLC ("BLMIS"), through which Madoff operated his Ponzi scheme. Both to make its investments in and, at the expense of other investors, to receive redemption payments from the Funds—the same redemption payments the Liquidators seek to recover in this action—UBS retained Citco entities as an agent.

Citco was at the center of the Funds' business: entities within the Citco corporate family provided administration, banking, and custodial services to the Funds. Some of the Citco entities also facilitated investors' subscriptions in the Funds by serving as the shareholder of record and as a brokerage and custodial agent for the Funds' beneficial shareholders, such as UBS. In serving as UBS's agent in connection with its investments in the Funds, Citco acknowledged that it

Lambda redemptions as well as [redacted] of UBS's Sentry redemptions in Case No. 10-ap-03636. The Liquidators seek the remaining [redacted] of Sentry redemptions in Case No. 10-ap-03635.

[4] *See generally* Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb. 6, 2009), https://www.reuters.com/article/us-madoff-victims/savings-lost-to-madoff-elderly-forced-back-to-work-idUSTRE5156FB20090207.

understood the Funds were investing in the U.S. securities market through BLMIS and also deliberately and repeatedly utilized U.S. bank accounts to process UBS's redemption payments as authorized by UBS. The Citco agent's conduct is imputed to UBS for purposes of this motion.

UBS knew where its investments were going: it took these actions after it conducted due diligence on the Funds; the Funds' manager, Fairfield Greenwich Group ("FGG"); and BLMIS, including meetings UBS had with FGG in New York, and after both UBS and its agent received offering materials informing them that these investments would be placed with BLMIS for the purpose of trading in the U.S. securities market. UBS is subject to this Court's jurisdiction as a result of that conduct.

For the Court to exercise specific jurisdiction over a defendant, the defendant must have sufficient contacts with the forum that relate to the claims at issue, and the exercise of jurisdiction must be reasonable. UBS's and its agent's extensive, intentional contacts with the United States more than sufficiently support this Court's exercise of jurisdiction over UBS.

*First*, UBS's and its agent's contacts with the United States were voluminous and are directly related to the Liquidators' claims. For example, UBS:



- Subscribed for almost [redacted] shares in the Funds, worth approximately [redacted], from [redacted] to [redacted],[5] with the sole purpose of investing in U.S.-based BLMIS and after it and its agent reviewed private placement memoranda ("PPMs") communicating that UBS's investment would be placed with BLMIS, a registered U.S. broker dealer;[6]

---

[5] The value of UBS's Sigma and Lambda subscriptions is calculated as discussed above, *see supra* note 3, and is subject to the same caveat discussed therein.

[6] Throughout this brief, the Liquidators refer to UBS's "investment" with BLMIS. The Liquidators do not allege that the UBS was invested in BLMIS itself, but instead refer to the UBS's investment in BLMIS by way of the Funds.

- Authorized its agent to utilize [REDACTED][7] on [REDACTED] occasions to make [REDACTED] in subscription payments and to receive [REDACTED] redemption payments, worth [REDACTED] in total, stemming from those investments;
- Instructed its agent to sign at least [REDACTED] subscription agreements governed by the laws of New York and that selected New York as the forum for any related litigation;
- 

Courts have held that contacts nearly identical to these support the exercise of personal jurisdiction. Indeed, this Court recently found personal jurisdiction existed over UBS based on similar investments in the Funds in actions brought by the BLMIS Trustee, including on motions brought by this same defendant.[8] And these contacts directly relate to the crux of the Liquidators' claims: that UBS redeemed its Fund shares knowing that the payments it would receive in return would be inflated due to inaccurate and fraudulent value statements. Without these U.S. contacts, there would have been no investment, no redemptions, and no benefit to UBS. The factual nexus between UBS's forum contacts and the Liquidators' claims more than sufficiently supports the exercise of specific personal jurisdiction.

*Second*, this Court's exercise of personal jurisdiction over UBS is more than reasonable, and allowing the suit to proceed is consistent with notions of fair play and substantial justice. The

---

[7] "Correspondent accounts are accounts in domestic banks held in the name of foreign financial institutions" that are used "to effect dollar transactions." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"), 673 F.3d 50, 56 n.3 (2d Cir. 2012) (cleaned up).

[8] *See, e.g.*, *Picard v. UBS AG (In re Bernard L. Madoff)* ("*UBS*"), 2022 WL 17968924 (Bankr. S.D.N.Y. 2022); *Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*) ("*Cathay Life Ins.*"), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022); *Picard v. Barfield Nominees Ltd.* (*In re Bernard L. Madoff*) ("*Barfield*"), 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022).

United States has a substantial interest in this dispute, as it concerns UBS's deliberate choice to invest over a hundred million dollars in, and wrongfully profit from, a fraudulent scheme in the U.S. securities market and [redacted] at the expense of other investors. Any burden UBS faces as a litigant in this forum is minimal at best and can be mitigated through electronic transmission of document productions and redactions to address asserted privacy concerns arising from foreign law. UBS has not come close to meeting its burden of presenting a compelling case that exercising jurisdiction would be unreasonable.

This Court should deny UBS's Motion and reach the merits of the Liquidators' claims.

## BACKGROUND

### A. The Funds

Sentry, Sigma, and Lambda were collectively the largest BLMIS "feeder funds," funneling billions of dollars into New York-based BLMIS over 18 years. Case No. 10-ap-03636, Compl. ¶¶ 5, 133-35. From their inception in 1990, until the widespread disclosure of Madoff's fraud in December 2008, the Funds sought out new investments through the sale of shares and transferred substantially all net proceeds to their New York accounts, which were managed by BLMIS. *Id*. Sentry transferred its proceeds directly to BLMIS in New York, while Sigma and Lambda, established for Euro- and Swiss-Franc-denominated investments, respectively, transferred proceeds to Sentry. *Id.*

### B. The Citco Entities

Central to the Funds' operations were several companies within the Citco corporate family. The Funds were administered by Citco Fund Services (Europe) B.V., and Citco Global Custody N.V. served as the Funds' custodian. Citco Bank Nederland N.V. Dublin Branch provided an important banking service function for the Funds—it received subscription payments from and paid out redemption payments to the Funds' shareholders. Citco Bank Nederland N.V. Dublin

Branch also facilitated the transfer of the money the Funds received from its shareholders to and from BLMIS. Thus, the U.S. dollars that the Funds held at any point were sourced from or transmitted through Citco Bank Nederland N.V. Dublin Branch's [REDACTED] [REDACTED].

Citco Global Custody N.V. and Citco Bank Nederland N.V. Dublin Branch as well as Citco Global Custody (N.A.) N.V. and Citco Banking Corporation N.V. (collectively, the "Citco Subscriber") also played an important role in facilitating investments by the Funds' beneficial shareholders, such as UBS, by serving as the subscriber of record for UBS's shares. For such investments, the beneficial shareholders' shares were registered in the name of Citco Global Custody N.V. or Citco Global Custody (N.A.) N.V. (collectively, "Citco Global Custody"), and Citco Bank Nederland N.V. Dublin Branch and Citco Banking Corporation N.V. (collectively, "Citco Bank") carried out the subscription and redemption process on behalf of the investor, utilizing Citco Global Custody as the nominee for these shares in the Funds. *See* Ex. 1 (Citco Subscriber's subscription request); Ex. 2 (Citco Subscriber's redemption request).[9]

**C. UBS's Decision To Invest In The Funds**

UBS first invested in these three Fairfield feeder funds through the Citco Subscriber as early as [REDACTED]. *See* Ex. 3 ([REDACTED] [REDACTED]). From [REDACTED] (the "Subscription Period"), the Citco Subscriber, on behalf of UBS, entered into at least [REDACTED] individual subscription agreements with Sentry, Sigma, and Lambda for a total of approximately [REDACTED] shares between the three Funds. Exs. 43-54.

[9] Unless indicated otherwise, all exhibits refer to those attached to the Declaration of Joshua S. Margolin ("Margolin Decl.").

UBS knew where the money was going when it made these investments. [REDACTED] . *See, e.g.*, Ex. 4 at -442 ([REDACTED]); Ex. 5 ([REDACTED]); Ex. 6 ([REDACTED]).

[REDACTED] Ex. 7 ([REDACTED] Ex. 8 (April 21, 2008 email). [REDACTED] Ex. 9 (July

11, 2008 email).

[redacted]. *See, e.g.*, Ex. 10 (Sentry PPM dated August 14, 2006); Ex. 11 (Sentry PPM dated October 1, 2004). [redacted] Ex. 10 at -792. [redacted] *Id.* at -798. [redacted]. *E.g.*, *id.* at -784, -791-92 ([redacted]).

[redacted]



Ex. 10 at -796 ([redacted]).

### D. Brokerage And Custody Agreements

In connection with its investments in the Funds, UBS opened an account at Citco Bank and retained the Citco Subscriber[10] as its agent by entering into Brokerage and Custody Agreements (the "B&C Agreements"). *See* Ex. 12 (April 29, 2005 B&C Agreement between UBS AG, Citco Bank Nederland N.V. Dublin Branch, and Citco Global Custody N.V.); Ex. 13 (February 10, 2005 B&C Agreement between UBS AG New York Branch, Citco Banking Corporation N.V., and Citco Global Custody (N.A.) N.V.). Under the B&C Agreements, [redacted] Ex. 12 at -349-50; Ex. 13 at -311-12. [redacted] Ex. 12 at -353; Ex. 13 at-315.[11]

[redacted]. Ex. 14; Ex. 13 at -325. [redacted]

---

[10] As defined above, "Citco Subscriber" collectively refers to Citco Bank, which executed UBS's orders, and Citco Global Custody, which was a nominee entity Citco Bank used in subscribing in the Funds on behalf of UBS. Therefore, Citco Bank was the effective operator of Citco Global Custody. *See supra* at 6.

[11] [redacted] Ex. 12 at -351 (emphasis added).

[redacted]. Ex. 14 at -330; Ex. 13 at -325-26. [redacted]. Ex. 14 at -330-31; Ex. 13 at -325-26.

**E. UBS's Investment In The Funds**

[redacted]. Ex. 15 (CitcoFundsNet Trade Notification); *see also* Ex. 12 at -363 ([redacted]). [redacted]. Ex. 16 (Subscription Request Confirmation). [redacted] *Id.* [redacted][12] *Id.*

---

[12] [redacted]. *See* Ex. 27 at row 4644.



[redacted]

Ex. 16 ([redacted]).

[redacted]. *E.g.*, Ex. 17 (Sentry Long Form Subscription Agreement); Ex. 18 at -780 (Sigma Long Form Subscription Agreement); Ex. 19 (Lambda Long Form Subscription Agreement).[13] [redacted]

[13] The long form subscription agreements included provisions designating New York law as the governing law and New York as the venue for dispute resolution. Ex. 17 at ¶¶ 16, 19; *see also* Compl. ¶ 23 (alleging that the Citco Subscriber agreed to submit to the jurisdiction of New York courts in connection with its investments in the Funds).



. Ex. 17 at ¶ 7.[14] *E.g.*, Ex. 20 at -256 ( ). . *Id.*

. *E.g.*, Ex. 17 at ¶ 3 (Sentry Long Form Subscription Agreement); Ex. 11 at -295 (Sentry PPM). .

. *See* Ex. 16; Ex. 21. *See, e.g.*, Ex. 17 at -992. , *see* Declaration of Sara Joyce ("Joyce Decl."), at 6-9, 12-13, . *See, e.g.*, Ex. 17 at -992. . *See* Exs. 34-37

[14] UBS also received a copy of the Sentry PPM, and the Citco Subscriber's knowledge of these PPMs as well as those of Sigma and Lambda is imputed to UBS, as explained below.

(Sentry redemption transaction documents); Exs. 46-49 (Sentry subscription transaction documents).

*See, e.g.*, Ex. 22. *See, e.g.*, Ex. 23. Ex. 24. Ex. 23. *See* Joyce Decl. at 6-9, 12-13. *See* Exs. 34-37.



Ex. 25; *see also* Exs. 34-37.



[redacted]

[redacted]

Ex. 26[15]

From [redacted] (the "Redemption Period"), the Citco Subscriber requested (and the Funds processed) at least [redacted] redemptions and the Citco Subscriber took payments totaling [redacted], all on UBS's behalf. *See, e.g.*, Exs. 34-42. [redacted] *See, e.g.*, Exs. 34-37. [redacted] *Id.*

In addition to any redemption payments it retained, [redacted]

[15] Certain other transaction documents, such as Requests for Wire Transfer Payment, related to UBS's redemption payments suggest that Sentry might have sent UBS's redemption payments directly to the Citco Subscriber's account at Citco Bank. At this stage of the litigation, ambiguity in the documentary evidence should be resolved in the Liquidators' favor.

[REDACTED].

Ex. 28; Ex. 29 ([REDACTED]

[REDACTED]).

**STANDARD**

Courts in this Circuit apply one of three standards to Rule 12(b)(2) motions. If the motion is assessed solely on the pleadings, the plaintiff may defeat the motion based on "legally sufficient allegations" alone. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007 (1996). If discovery is permitted *and* the court holds an evidentiary hearing, "the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence." *Id.* at 567. And where, as here, the court assesses the motion after jurisdictional discovery but *without* holding an evidentiary hearing, the plaintiff need only make a factually supported *prima facie* showing of jurisdiction. *See id.* (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Obabueki v. Int'l Bus. Machines Corp.*, 2001 WL 921172, at *2 (S.D.N.Y. Aug. 14, 2001).

In this context, the court must credit the facts averred in the pleadings and motion papers as true and must "construe[] the pleadings and affidavits in the light most favorable to the plaintiff … resolv[ing] all doubts in plaintiff's favor, notwithstanding any 'controverting presentation by the moving party.'" *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 409 (S.D.N.Y. 2017) (quoting *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85-86 (2d Cir. 2013)); *accord Drake v. Lab. Corp. of Am. Holdings*, 2008 WL 4239844, at *1 (E.D.N.Y. Sept. 11, 2008) ("Despite this higher burden, the Court must 'credit [Plaintiff's] averments of jurisdictional facts as true.'" (quoting *Metro. Life Ins. Co.*, 84 F.3d at 567)). Likewise, the court must draw "reasonable inference[s]" in the plaintiff's favor based on facts developed in discovery. *Drake*, 2008 WL 4239844, at *5; *see also Obabueki*, 2001 WL 921172, at *1 (stating that the court

must draw reasonable inferences in the plaintiff's favor notwithstanding the fact that the parties had engaged in jurisdictional discovery).[16]

## ARGUMENT

This Court has personal jurisdiction over UBS because UBS has sufficient minimum contacts with the United States and because the exercise of jurisdiction over UBS is reasonable.

### I. UBS Has Sufficient Minimum Contacts With The United States

UBS has sufficient minimum contacts with the United States to permit this Court to exercise jurisdiction over it. Jurisdiction under Bankruptcy Rule 7004 is assessed based upon the defendant's "contacts with the United States, rather than with the forum state," and there is no need for the Court to address the forum state's long-arm statute. *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*) ("*FGG*"), 627 B.R. 546, 565 nn.12, 13 (Bankr. S.D.N.Y. 2021) (citing *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015)). Demonstrating the requisite minimum contacts for specific personal jurisdiction requires showing (1) a defendant's "purposeful availment" of the forum (2) that "arises out of or relates to" the alleged misconduct. *FGG*, 627 B.R. at 566; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985); *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1785-86 (2017)). Courts assess both prongs based on the "totality of the circumstances." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"), 732 F.3d 161, 170 (2d Cir. 2013).

Satisfying the first prong, "purposeful availment," requires showing that the defendant has

[16] The Liquidators have not pursued discovery on the merits from UBS, including, for example, documents demonstrating that UBS knew the Funds' net asset values were inflated. To the extent the Court considers those allegations in resolving UBS's Rule 12(b)(2) motion, it should credit those allegations as true per the standard applicable in the absence of jurisdictional discovery. *See Metro. Life Ins. Co.*, 84 F.3d at 566-67.

sufficient contacts with the forum resulting from the defendant's own actions. *FGG*, 627 B.R. at 566. The defendant's activities "need not have taken place within the forum, and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (cleaned up) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Moreover, a defendant "can purposefully avail itself of a forum by directing its agents … to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). Imputing an agent's conduct for jurisdictional purposes does not require "a formal agency relationship between the defendant and [its] agent." *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000). Rather, courts may impute an agent's conduct within or aimed at the forum to the principal when, based on "the realities of the relationship in question rather than the formalities of agency law," *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986), the court concludes that the "alleged agent acted in [the forum] for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. Jul. 23, 2020).

Satisfying the second prong, "arises out of or relates to," requires showing that there is a "sufficiently close link" between the defendant's contacts and the claims at issue. *MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*, 2021 WL 4461773, at *3 (S.D.N.Y. Sept. 29, 2021) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1032 (2021)). A causal relationship between the plaintiff's claims and the defendant's forum contacts is *not* required. *See, e.g.*, *Cathay Life Ins.*, 2022 WL 16626325, at *4 (citing *Ford Motor Co.*, 141 S. Ct. at 1027). An "affiliation between the forum and the underlying controversy" is sufficient. *Id.* (quoting *Goodyear Dunlap Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*, 2022 WL 36489, at *8 (S.D.N.Y. Jan. 4, 2022)

(holding that the claims must be "arguably connected" to, rather than "completely unmoored" from, the contacts at issue (quoting *Licci v. Lebanese Canadian Bank, SAL* ("*Licci III*"), 984 N.E.2d 893, 900-01 (N.Y. 2012))).

The facts averred and evidence presented by the Liquidators, which must be taken as true for purposes of this motion, are sufficient to satisfy both prongs of the minimum contacts test. UBS purposefully availed itself of the United States by intentionally investing in BLMIS feeder funds Sentry, Sigma, and Lambda via the Citco Subscriber with the express intention of profiting from BLMIS's investments in the U.S. securities market (**Section I.B**, *infra*), repeatedly directing, via the Citco Subscriber, [redacted] to effectuate both the investment in and then the redemptions from Sentry (**Section I.C**, *infra*), and engaging in other business activity within and aimed at the United States (**Section I.D**, *infra*), each of which constitutes an independent basis for the Court's exercise of personal jurisdiction over UBS. And each of those contacts is closely related to the Liquidators' claims. UBS therefore has sufficient minimum contacts with the United States.

### A. The Citco Subscriber's Contacts With The United States And Knowledge About The Funds Are Imputed To UBS

The Court should impute the Citco Subscriber's knowledge and forum-directed activities to UBS in resolving the instant motion because (1) the Citco Subscriber's conduct in investing in the Funds was taken on behalf and for the benefit of UBS; (2) the Citco Subscriber acted at the direction and under the control of UBS; and (3) the Citco Subscriber acted pursuant to UBS's knowledge and consent. *See In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6.

The on behalf/benefit of prong is satisfied when an agent's activities open the principal to financial gain. *See In re Sumitomo Copper Litig.*, 120 F. Supp. 2d at 336 (finding that potential profits from an agent's trading activities established benefit); *GEM Advisors, Inc. v. Corporacion*

*Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (holding that proceeds from sale of a property by the agent established benefit). The control prong is satisfied when the principal has "[an] ability … to influence [the agent's] acts or decisions by virtue of the parties' respective roles." *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 442 (S.D.N.Y. 2008) (cleaned up) (citing *CutCo*, 806 F.2d at 336). Absolute control by the principal is not necessary. *Id.* The knowledge and consent prong is satisfied when the principal is apprised of the agent's activities. *See Struna v. Leonardi*, 2022 WL 4096146, at *9 (S.D.N.Y. Sept. 7, 2022). The principal's decision not to take any action regarding the agent's activities further evidences the principal's knowledge and consent as to those activities. *Branham v. ISI Alarms, Inc.*, 2013 WL 4710588, at *7 (E.D.N.Y. Aug. 30, 2013). Applied here, those three factors demonstrate that the Citco Subscriber's contacts with the forum concerning UBS's investment in the Funds and knowledge about the relationship between the Funds and BLMIS should be imputed to UBS.

*First*, the Citco Subscriber's activities were performed on behalf of UBS and benefited UBS. It is undisputed that the Citco Subscriber subscribed to shares of the Funds pursuant to UBS's order of the shares and that UBS was the beneficial owner of those shares. [REDACTED]. UBS subscribed to the Funds through the Citco Subscriber as a means to profit by investing, albeit indirectly, in BLMIS, [REDACTED]. Through the Citco Subscriber's activities, UBS could (and did) obtain financial gains by investing money in BLMIS.

*Second*, UBS exercised control over the Citco Subscriber's subscription- and redemption-related activities. [REDACTED]

[redacted] *E.g.*, Ex. 12 (emphasis added) at -353; Ex. 13 at -315. [redacted] *E.g.*, Ex. 14 at -326-27; Ex. 13 at -325. [redacted] Therefore, UBS was the principal with respect to those transactions and exercised the requisite control over the Citco Subscriber as its agent.

*Finally*, UBS was aware of and consented to the activities by the Citco Subscriber relating to the subscriptions and redemptions on UBS's behalf. [redacted] Ex. 12 at -350; Ex. 13 at -311-12. [redacted] Ex. 12 at -363; Ex. 13 at -330. [redacted] *See, e.g.*, Ex. 29; Ex. 24 While fully aware of the Citco Subscriber's actions, UBS neither objected to those actions nor instructed the Citco Subscriber to act any differently, further evidencing UBS's consent to the steps taken by the Citco Subscriber in implementing UBS's instructions.

In sum, the Citco Subscriber conducted activities relating to its subscriptions and redemptions on behalf and for the benefit of, under the control of, and with the knowledge and consent of UBS. Courts have found an agency relationship in similar cases. *See, e.g.*, *Sec. Ins. Co.*

*of Hartford v. ITA Textiles Corp.*, 2000 WL 1576879, at *2 (S.D.N.Y. Oct. 23, 2000) (imputing contacts of an insurance broker who solicited quotes and secured an insurance policy for the defendant); *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, 2014 WL 1331046, at *4 (S.D.N.Y. Mar. 31, 2014) (finding that foreign corporation acted as an agent of foreign defendant by negotiating and entering a joint venture agreement on the defendant's behalf); *Schechter v. Banque Commerciale Privee*, 1991 WL 105217, at *11 (S.D.N.Y. June 11, 1991) (finding that individual who secured a guaranty for a note per defendant's directions served as defendant's agent for jurisdictional purposes); *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 2021 WL 2000371, at *8 (S.D.N.Y. May 19, 2021) (imputing the conduct of a corporation that sourced an insurance policy from New York-based underwriter pursuant to authority delegated by defendant). Therefore, the Citco Subscriber was UBS's agent for jurisdictional purposes.

Of the various functions it served as UBS's agent in connection with UBS's investment in the Funds, the Citco Subscriber's role as a payment processor is particularly relevant here. [REDACTED], Ex. 12 at -351; Ex. 13 at -312, [REDACTED] Ex. 12 at -353; Ex. 13 at -315. [REDACTED] Ex. 12 at -351 (emphasis added).

Simply put, [REDACTED]

[REDACTED]

[REDACTED]. An action taken by an agent in exercise of discretion entrusted to it by the principal is imputed to the principal for jurisdictional purposes. *See Picard v. Merkin*, 515 B.R. 117, 147-48 (Bankr. S.D.N.Y. 2014). Accordingly, the Citco Subscriber's actions in effectuating payments relating to UBS's investments and redemption of shares in the Funds—those expressly instructed by UBS, as well as those taken by the Citco Subscriber in the exercise of discretion delegated by UBS—are imputed to UBS.

**B. UBS Knowingly And Intentionally Invested In Madoff Feeder Funds**

The evidence presented by the Liquidators makes clear that UBS intentionally invested in BLMIS feeder funds Sentry, Sigma, and Lambda knowing that the Funds were designed to subsequently invest that money in New York-based BLMIS. UBS is subject to this Court's jurisdiction with respect to its Sentry, Sigma, and Lambda redemptions as a result of that conduct.

**1. UBS Purposefully Availed Itself Of The United States Via Its Intentional Investment In The Funds**

This Court, applying Judge Lifland's decision in *Picard v. Bureau of Labor Ins.* (*SIPC v. Bernard L. Madoff Inv. Secs. LLC*) ("*BLI*"), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012), recently held that "[a] party 'purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS.'" *Cathay Life Ins.*, 2022 WL 16626325, at *3. *BLI* applies with at least equal force here.

In *BLI*, Judge Lifland held—in a very similar action seeking to reclaim redemption payments made by Fairfield Sentry—that a foreign defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New

York to be invested in the New York securities market." 480 B.R. at 517. As with UBS and the Citco Subscriber here, the *BLI* defendant subscribed in Sentry after reviewing "a private placement memorandum and other information about Fairfield Sentry, including specifics about the Fund's investment strategy and past results and trades in the S & P 100," provided to it by FGG. *Id.* at 517. [REDACTED], the defendant "signed [a] Subscription Agreement [that] incorporated the [offering memorandum]," meaning the defendant knew "Sentry was required to invest at least 95% of its assets" in BLMIS, which would hold the assets in accounts in New York to be "invested in U.S. Securities." *Id.*

Courts repeatedly have employed *BLI*'s reasoning to find jurisdiction in similar circumstances. *See Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) ("[BLI] confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS … as subsequent transferees … [are] subject to the Court's personal jurisdiction"); *Maxam Absolute Return Fund, L.P.*, 460 B.R. at 118 (finding jurisdiction over defendant that "engaged in a series of repeated transactions that intentionally channeled investor money into the BLMIS Ponzi scheme in New York"); *cf. In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d Cir. 2019) ("When these investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going.").

Most recently, this Court cited *BLI* in exercising personal jurisdiction over several defendants in actions brought by the BLMIS Trustee seeking to recoup the very same kind of redemption payments at issue here, including this same defendant. *See, e.g.*, *Cathay Life Ins.*, 2022 WL 16626325; *Barfield*, 2022 WL 4542915; *see also UBS*, 2022 WL 17968924, at *8-9 (finding personal jurisdiction over UBS AG in its capacity as administrator of BLMIS feeder funds). This

Court did so by citing facts nearly identical to those presented here: that the defendant "knowingly directed funds to be invested with New York-based BLMIS through Fairfield Sentry"; that Sentry "invested almost all of its assets in BLMIS"; that the defendant reviewed PPMs substantively identical to those at issue in *BLI*; that the defendant signed subscription agreements incorporating the same; and that the defendant communicated with FGG employees in New York. *Compare Cathay Life Ins.*, 2022 WL 16626325, at *3, *and Barfield*, 2022 WL 4542915, at *3, *with* Compl. ¶ 20 (alleging that UBS invested in the Funds while knowing and intending that its investments would be passed along to BLMIS), *and* Exs. 5-9. In light of these allegations, this Court held that a defendant "intentionally directed its investment to New York-based BLMIS, through Fairfield Sentry," which in turn was a basis for exercising personal jurisdiction pursuant to *BLI*. *Picard v. Banque Lombard Odier & Cie SA* (*In re Bernard L. Madoff*) ("*Lombard Odier I*"), 2022 WL 2387523, at *3 (Bankr. S.D.N.Y. June 30, 2022); *see also Picard v. Banque Lombard Odier & Cie SA (In re Bernard L. Madoff)*, 2023 WL 395225, at *4 (S.D.N.Y. Jan. 25, 2023) ("*Lombard Odier II*") (denying appeal from *Lombard Odier I* and concluding that this Court's decision was based on proper application of "settled precedent").

Here, the Funds' offering documents (virtually identical to those at issue in *BLI*, *Cathay Life Insurance*, *Lombard Odier*, and others), as well as UBS's own due diligence during the Subscription Period, all demonstrate that UBS, a sophisticated investor, invested more than $[redacted] dollars in Sentry, Sigma, and Lambda with the intention, knowledge, and expectation that its investments would be channeled into BLMIS. In addition to any investment profits it retained, [redacted]. Under *BLI* and this Court's recent decisions, that defeats UBS's Motion.

Specifically, as in *BLI*, UBS received PPMs for Sentry informing it that subscribing in the Funds amounted to an indirect investment in BLMIS in New York. The PPMs explained that:

1. [redacted] Ex. 10 at -784, -791.
2. [redacted] Ex. 10 at -792.[17]
3. [redacted] Ex. 10 at -798
4. [redacted] *See* Ex. 10 at -791; Ex. 11 at -490.

[redacted]. *See, e.g.*, Ex. 4 at -442 ([redacted]); Ex. 5 (same); Ex. 6 (same). [redacted] *See* Exs. 7-9.

The offering materials UBS and its agent received and the [redacted] conducted both "highlighted BLMIS's central role" in the Funds' investment strategy and informed UBS that, by investing in the Funds, it was, in fact, indirectly investing in BLMIS in New York. *BLI*, 480 B.R. at 517. UBS thus instructed the Citco Subscriber to execute its subscriptions while "knowing, intending and contemplating that the substantial majority of funds … would be transferred to BLMIS in New York to be invested in the New York securities market." *Id.* As in *BLI*, that suffices

---

17 [redacted]. *See, e.g.*, Ex. 30; Ex. 31. As discussed *infra* § I.A., the Court should impute this knowledge to UBS AG.

to establish jurisdiction over UBS. *See id; Lombard Odier I*, 2022 WL 2387523, at *3; *Lombard Odier II*, 2023 WL 395225, at *4-5.

Moreover, the Citco Subscriber, acting as UBS's agent, also affirmed that it read and relied on these or similar PPMs each time it subscribed in the Funds. *See, e.g.*, Ex. 17 at -985; *see also BLI*, 480 B.R. at 517 ("BLI signed the Subscription Agreement, which incorporated the PPMs."). For the reasons explained above, *see supra* Section I.A, the Citco Subscriber's knowledge and conduct—[REDACTED]—is imputed to UBS for purposes of this motion and further supports the exercise of jurisdiction here. *See, e.g.*, *In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6.

UBS's attempts to distinguish *BLI* fail. UBS incorrectly asserts that the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), bars jurisdiction here. Mot. 17-18. *Walden* does no such thing. The *Walden* Court held there was no jurisdiction because, unlike UBS here, the defendant did not do anything to avail himself of the benefits and protections of the forum. In *Walden*, the defendant was a Georgia police officer who searched the plaintiffs and physically seized cash from them while they were passing through the state. The plaintiffs attempted to sue the officer in their home state of Nevada, arguing that jurisdiction existed on the basis that the officer knew the plaintiffs were Nevada residents. *Walden*, 571 U.S. at 288-91. The Supreme Court rejected that theory, stating that "the plaintiff cannot be the *only* link between the defendant and the forum," as "the defendant's conduct … must form the necessary connection with the forum State." *Id*. at 289 (emphasis added). In so concluding, the Court relied on the fact that the defendant "never traveled to, conducted activities within, *contacted anyone in, or sent anything* or anyone to Nevada." *Id*. (emphasis added).

By contrast, the Liquidators do not argue (and *BLI* did not hold) that UBS is subject to

jurisdiction because of the Funds' own contacts with the U.S., or UBS's knowledge of those contacts, or the mere foreseeability that the money they invested in the Funds would end up in the United States. Rather, as explained above, UBS directed the Citco Subscriber to invest in Madoff feeder funds with the *express aim* of having those investments placed with a U.S.-based investment fund to take advantage of the U.S. securities markets and [REDACTED], *see, e.g.*, Ex. 10 at -792 ([REDACTED]); Ex. 6 ([REDACTED]); Ex. 9 ([REDACTED]), not that the Funds *might* "decide[] to make investments" in the United States, Mot. 18. Moreover, as explained below, UBS, by itself and via the Citco Subscriber, used U.S. accounts to effectuate these investments.

That conduct is not attributable to the Funds, nor are the resulting contacts "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286 (quoting *Burger King Corp*., 471 U.S. at 475). Rather, jurisdiction here, as in *BLI*, stems directly from UBS and its agent's own deliberate actions aimed at the United States. *Lombard Odier II*, 2023 WL 395225 (concluding that *Walden* does not foreclose jurisdiction in this context because "New York is not just where Defendant's money happened to end up"). Even after *Walden*, Sentry's mere involvement in facilitating some of those actions does not foreclose jurisdiction. *Id.*; *see also Walden*, 571 U.S. at 286 ("[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties.").

### 2. UBS's Intentional Investment In The Funds Directly Relates To The Liquidators' Claims

UBS's intentional investment in the Funds via the Citco Subscriber is directly related to the Liquidators' claims. To demonstrate a sufficient relationship between its claims and UBS's forum contacts, the Liquidators need only show "an affiliation between the forum and the underlying controversy." *Cathay Life Ins.*, 2022 WL 16626325, at *4. That standard is satisfied here.

The sole purpose for subscribing for shares of the Funds was to ultimately redeem those shares; otherwise, the Funds would hold the money in perpetuity. Without the subscriptions UBS would have had no shares to redeem and could not have received the redemption payments to which its subscriptions gave rise. The two are inextricably linked.

UBS asserts that the Liquidators' claims "relate[] to and arise[] out of the calculation of the NAV," and, from this premise, UBS somehow draws the conclusion that the Liquidators' claims are therefore wholly unrelated to UBS's subscriptions in the Funds. Mot. 17. But UBS cannot artificially decouple its subscriptions in the Funds from its redemptions. This Court previously rejected UBS's argument when this Court held that "subsequent transfer claims against [d]efendant[s] for monies [they] received from the Fairfield Funds … are directly related to [those defendants'] investment activities with Fairfield and BLMIS." *Lombard Odier I*, 2022 WL 2387523 at *4 (citing *BNP Paribas S.A.*, 594 B.R. at 191).

UBS further argues that the Liquidators have not established jurisdiction over each individual subsequent transfer. The Court has also rejected this argument in a parallel proceeding by the BLMIS Trustee against similarly situated defendants, where this Court held that "[b]y alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS." *Lombard Odier*

*I*, 2022 WL 2387523, at *6. The Liquidators, just like the Trustee, alleged that UBS intentionally invested in BLMIS and have therefore established jurisdiction as to each subsequent transfer.

**C. UBS Utilized The [REDACTED] Of Sentry And The Citco Subscriber To Invest In And Receive Redemption Payments From Sentry**

Over [REDACTED] of the redemptions at issue in this case were from Sentry. UBS's intentional use of U.S. correspondent accounts—by itself and through its agent the Citco Subscriber—to subscribe for shares in Sentry[18] and receive each of the at-issue redemption payments from Sentry also supports the exercise of jurisdiction. A defendant's use of an in-forum correspondent account is sufficient to establish personal jurisdiction where said use is "deliberate," "recurring," and sufficiently related to the harm for which the plaintiff seeks redress. *Licci IV*, 732 F.3d at 171-73. [REDACTED] and its agent satisfies each of those three prongs.[19]

**1. [REDACTED] In Lieu Of Offshore Accounts**

[REDACTED]. A defendant's correspondent account use is "deliberate" if it "indicates desirability and a lack of coincidence." *Licci IV*, 732 F.3d at 168 (quoting *Licci III*, 984 N.E.2d at 901). UBS's and its agent's use of [REDACTED]

[18] As noted above, the redemption payments that the Liquidators seek from UBS in Case No. 10-ap-03635 derived from shares which UBS received in a single transfer in March 2005, not from an original subscription. As a result, the arguments in this section related to [REDACTED] do not apply to UBS in Case No. 10-ap-03635. Nevertheless, all of the Liquidators' remaining jurisdictional arguments—including arguments relating to [REDACTED]—apply to UBS in both actions with full force.

[19] While UBS and its agent did not designate a [REDACTED] for UBS's redemption of Sigma or Lambda shares, UBS is still subject to jurisdiction with respect to those transactions, as the Liquidators' jurisdictional theories detailed in Sections I.B, *supra*, and I.D, *infra*, do not turn on correspondent account use.



[redacted] was a conscious and volitional one—not mere coincidence—that supports the exercise of jurisdiction. *See, e.g.*, *Picard v. Meritz Fire & Marine Ins. Co. Ltd.* (*In re Bernard L. Madoff*), 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022) ("Where a defendant chooses to use a United States bank account to receive funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional."); *Cathay Life Ins.*, 2022 WL 16626325, at *3; *Licci IV*, 732 F.3d at 170-71.

**a. UBS Itself Deliberately Used The Citco Subscriber's [redacted]**

UBS's use of Citco Subscriber's [redacted] in connection with its investments in Sentry was deliberate. [redacted]. Exs. 46-49. Because UBS's order had not been executed yet, UBS could withdraw its order had it wished to avoid using the Citco Subscriber's U.S. account. [redacted]. *See id.*

**b. The Citco Subscriber's Deliberate Use Of Its [redacted] Is Imputed To UBS**

UBS is also subject to jurisdiction in light of the Citco Subscriber's use of its own [redacted] to receive UBS's redemption payments. *Licci IV*, 732 F.3d at 171-73. [redacted]. Exs. 34-37.

[redacted]. *See, e.g.*, Ex. 32. The Citco Subscriber, acting as UBS's agent, had complete control over which account it used for these transfers. *See* Joyce Decl. at 12-13 (concluding that Fairfield Sentry investors could have used



foreign, U.S. dollar denominated correspondent accounts to send and receive subscription and redemption payments, respectively, without employing correspondent banking services in the U.S.).[20] [redacted].

The Citco Subscriber's use of its [redacted] to receive redemption payments from Sentry on behalf of UBS is imputed to UBS. *See supra* at Section I.A. Therefore, the Citco Subscriber's deliberate use of its [redacted] firmly supports this Court's exercise of jurisdiction over UBS. *See, e.g.*, *Licci IV*, 732 F.3d at 170-71; *Cathay Life Ins.*, 2022 WL 16626325, at *3.

**c.** [redacted]

[redacted]. Courts have held that a defendant's transfer of monies to a third-party's U.S. account can support the exercise of jurisdiction. *See Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank* ("*Arcapita I*"), 549 B.R. 56, 68-69, 70 n.18 (S.D.N.Y. 2016). [redacted]. *See, e.g.*, Ex. 10 at -796. [redacted]

---

[20] Neither the subscription agreements, redemption request forms, nor rules governing the Citco Subscriber's investments in Sentry, nor the mere fact that Sentry designated U.S. dollars as its base currency, required the Citco Subscriber designate a U.S. account for the receipt of UBS's redemption payments. *See* Joyce Decl. at 12-13. Sentry required only that redemptions occur in dollars, *not* that UBS receive payments in an account in the U.S. *See* Ex. 17 at -986 ¶ 9; Ex. 33 at 8-11. Further, the Second Circuit has recognized that, "[i]n light of the widespread acceptance and availability of U.S. currency, [a foreign bank] could have … processed U.S.-dollar-denominated wire transfers … through correspondent accounts anywhere in the world." *Licci IV*, 732 F.3d at 171.



[redacted]. UBS nonetheless *chose* Sentry rather than investing in a different fund that lacked such a requirement. UBS's use of Sentry's [redacted] via the Citco Subscriber was therefore deliberate—it was a direct consequence of its affirmative choice to execute investments in Sentry, [redacted].

**2. UBS And Its Agent Utilized [redacted] To Effectuate [redacted] Wire Transfers**

UBS and the Citco Subscriber *frequently* used [redacted] in transacting with Sentry. "[A] foreign bank's *repeated use* of a correspondent account in New York show[s] purposeful availment of New York's" banking, currency, and legal systems. *Licci IV*, 732 F.3d at 168 (emphasis added) (quoting *Licci III*, 984 N.E.2d at 900).

UBS and the Citco Subscriber repeatedly utilized [redacted] at three points when investing in and receiving redemption payments from Sentry. *First*, UBS sent at least [redacted]. Exs. 46-49. *Second*, when Citco Subscriber [redacted]. *Id. Third*, when UBS [redacted]. Exs. 34-37. In total, the Citco Subscriber received [redacted] redemption payments from Sentry on UBS's behalf, totaling [redacted] over almost [redacted] years through its [redacted]. *Id.* Overall, UBS and the Citco Subscriber collectively processed [redacted] transactions, amounting to [redacted], using the Citco Subscriber's and Sentry's [redacted], all for UBS's benefit and at its instruction.

With respect to both the volume of transfers and the total sum of money involved, [redacted] dwarfs what courts have found sufficient in other cases to establish personal jurisdiction. In *Licci IV*, the court exercised personal jurisdiction based on "dozens" of wire transfers "total[ing] several million dollars." 732 F.3d at 170-71. In *Averbach v. Cairo Amman Bank*, the court concluded that twenty-three fund transfers through correspondent banks over the course of two years were sufficient. 2020 WL 486860, at *5 (S.D.N.Y. Jan. 21, 2020), *R. & R. adopted*, 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020). And still other cases have held that as few as one or two transfers can suffice. *See Arcapita I*, 549 B.R. at 70 n.18 (holding that even a single use of a third party's correspondent account use was sufficient); *Schansman v. Sberbank of Russia PJSC*, 565 F.Supp.3d 405, 414 (S.D.N.Y. 2021) (two transfers for a combined $300 where the plaintiff alleged more generally that "some of" the millions of dollars had been routed through U.S. accounts). *A fortiori*, UBS's and the Citco Subscriber's u[redacted] wire transfers involving over [redacted] and spanning almost [redacted] years is "recurring" and sufficient to confer personal jurisdiction over UBS.

### 3. UBS's And Its Agent's [redacted] Was Sufficiently Related To The Harms Alleged

UBS's and the Citco Subscriber's use of [redacted] is sufficiently related to the Liquidators' claims seeking to recover Sentry redemption payments. Where a defendant's use of a U.S. account is "*an instrument for accomplishing the alleged wrongs* for which the plaintiff seeks redress," it is sufficiently related to the claims at issue. *Licci IV*, 732 F.3d at 171; *see also FGG*, 627 B.R. at 566 ("[The arising out of prong] may be satisfied when defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum").

As discussed above, a core element of the Liquidators' claims is that UBS received inflated

redemption payments. And UBS accomplished the wrongs for which the Liquidators seek redress using the [redacted] to buy shares and obtain the resulting Sentry redemption payments that the Liquidators seek to claw back. That is enough to establish jurisdiction as to those redemptions. *See Licci IV*, 732 F.3d at 171; *Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the claims for redemption payments received by investors in a BLMIS feeder fund arose from the investors' receipt of redemption payments at a New York account).

**D. UBS And Its Agent Engaged In Other Business Activity In And Directed At The United States**

UBS's and its agent's additional U.S.-oriented business activity also supports the exercise of jurisdiction here. Business contacts have long been considered a basis for the exercise of jurisdiction over a foreign defendant where that conduct is sufficiently related to the claims at issue. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 475-76 (collecting cases). That is true even where the defendant conducted most or even all of this business while overseas, *see In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 319 (S.D.N.Y. 2020) (explaining that conduct that "occurs entirely out-of-forum" may support jurisdiction "if the defendant expressly aimed its conduct at the forum'" (quoting *Licci IV*, 732 F.3d at 173)), *rev'd in part on other grounds*, 61 F.4th 242 (2d Cir. 2023), and even where the conduct is carried out by the defendant's agent, *see In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. July 23, 2020). UBS has at least two categories of such contacts relevant here.

*First*, the long-form subscription agreements [redacted]

[redacted]. *See, e.g.*, Ex. 17 at ¶¶ 16, 19; *see also* Compl. ¶ 23 (alleging that UBS agreed to submit to the jurisdiction of New York courts in connection with proceedings related to the Funds). Judge Bernstein

previously held that those provisions, standing alone, did not amount to a consent to personal jurisdiction in this action. *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018).[21] But they nonetheless support the exercise of jurisdiction: "[A] choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law" and signal a lack of objection to litigating at least some disputes in U.S. courts. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004); *see also In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (holding that forum selection and choice of law clauses "support[ed] finding personal jurisdiction"); *Lombard Odier*, 2022 WL 2387523, at *5 n.2 (same); *BLI*, 480 B.R. at 516, 517 n.15 (same).



*Second*, . *See* Exs. 7-9. Ex. 7 (); Ex. 8 ().

Those contacts, particularly when considered alongside UBS's intentional investment in Madoff feeder funds, as well as UBS's and its agent's purposeful use of (discussed in Sections I.B and I.C, *supra*), support this Court's exercise of personal jurisdiction over UBS. And each of these contacts plainly relates to the Liquidators' claims. The forum-selection and choice-of-law clauses were contained in the subscription agreements that gave

[21] The Liquidators are appealing that decision to the Second Circuit.

rise to the redemption payments at issue here. [REDACTED] [REDACTED]—a core element of the Liquidators' constructive trust claims. *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018). That is more than sufficient to conclude that the above contacts relate to the Liquidators' claims and therefore support the exercise of jurisdiction. *See Cathay Life Ins.*, 2022 WL 16626325, at *4.

**E. The Court May Exercise Jurisdiction Over UBS Even If The Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis**

UBS attempts to make much ado about nothing by insisting that the Liquidators have previously conceded "[t]he redemption transfers at issue here were purely foreign" and that "every *relevant* component of the transactions at issue here occurred outside the [United States]" Mot. 16 (emphasis added) (quoting Pls.'-Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911, Dkt. 440 (S.D.N.Y. July 21, 2021) ("Pls.' Opening Br.")); *see also id.* at 17 ("As the Liquidators themselves maintain, every element of the transaction is 'purely foreign.'" (quoting Pls.' Opening Br. at 24)); *id.* at 3. UBS is quoting the Liquidators' appellate brief out of context and ignoring black-letter law holding that "[t]he tests for personal jurisdiction and extraterritoriality are not the same." *In re Ampal-Am. Israel Corp.*, 562 B.R. 601, 613 n.14 (Bankr. S.D.N.Y. 2017); *see also Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (distinguishing the two tests).

For this reason, the set of facts relevant to the personal jurisdiction inquiry is different from the set of facts relevant to the extraterritoriality inquiry. *Compare RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016) (explaining that the extraterritoriality inquiry focuses on "conduct relevant to the statute's focus"), *with Licci IV*, 732 F.3d at 170 (holding that the specific personal jurisdiction inquiry focuses on the "totality" of the defendant's forum contacts that give rise or relate to the plaintiff's claim). In this action, "the focus [of the *extraterritoriality*] analysis is the

location of the transfer" itself. *Picard v. Bureau of Lab. Ins.*, 2016 WL 6900689, at *19 (Bankr. S.D.N.Y. Nov. 22, 2016), *vacated and remanded on other grounds*, 917 F.3d 85. By contrast, the personal jurisdiction inquiry addresses a much broader set of facts, *see supra* Sections I.B-I.D, including UBS's knowledge and intent in making the investment that gave rise to the transfers at issue, *see BLI*, 480 B.R. at 517, [REDACTED] , *see Cathay Life Ins.*, 2022 WL 16626325, at *3, forum selection clauses in the contracts governing that investment, *see Sunward Elecs.*, 362 F.3d at 23, and [REDACTED] , *see Licci IV*, 732 F.3d at 168-71.[22]

The Liquidators referred to the redemption transfers as "purely foreign" because under applicable law the only "*relevant component[s]*" of the redemption transfers for purposes of the extraterritoriality analysis were in fact foreign. Pls.' Opening Br. at 24 (emphasis added). The Liquidators' characterization of the transfers as foreign for purposes of extraterritoriality has no bearing on this motion.[23]

**F. The Court Should Reject UBS's "Group Pleading" Argument**

UBS argues that because the Liquidators engaged in so-called "group pleading" with

---

[22] The redemption transfers from Sentry are relevant to both inquiries given UBS and its [REDACTED] . The Liquidators' prior extraterritoriality argument that those transfers are "foreign" was premised on well-settled law holding that use of a U.S. correspondent account does not render otherwise foreign transfers domestic for extraterritoriality purposes. *See* Pls' Opp'n Br. at 68-70, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, 10-ap-03496, Dkt. 1336 (citing *Bureau of Lab. Ins.*, 2016 WL 6900689, at *20); *see also In re Madoff Sec.*, 513 B.R. 222, 228 n.1 (S.D.N.Y. 2014); *Loginovskaya v. Batrachenko*, 764 F.3d 266, 268-69 (2d Cir. 2014). That is not so for personal jurisdiction. *See, e.g.*, *Licci IV*, 732 F.3d at 168-71.

[23] For years, the Liquidators have consistently made these extraterritoriality and personal jurisdiction arguments in tandem, pointing out that transfers that are "foreign" for purposes of extraterritoriality may still support personal jurisdiction. *See* Pls.' Opp'n Br. at 68-69.

respect to their jurisdictional allegations, they cannot satisfy their burden of establishing personal jurisdiction on an individualized basis. Mot. 2. Not so. As UBS acknowledges, the Liquidators' complaint includes allegations specific to UBS. *See* Mot. 9-10; Compl. ¶ 15 ("the Citco Subscribers" either retained the Redemption Payments or "paid all or some portion" of them to defendants including UBS); Case No. 10-03635 Compl. ¶¶ 100-01 ("Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscribers may have been paid to an account holder or holders associated with the Beneficial Shareholder, UBS[.]"); Case No. 10-03636 Compl. ¶¶ 108-09 (same). And where the complaint does generalize amongst groups of defendants, it does so because the Liquidators' allegations apply with equal force to each defendant within that group. "Nothing … prohibits [the Liquidators from] collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015). And post-discovery, the question is not just what the Liquidators alleged, but whether the Liquidators have averred facts that, when credited, establish personal jurisdiction. *Metro. Life Ins. Co.* 84 F.3d at 567.

Here, the Liquidators have averred facts based on documents and information uncovered during discovery which support the Court's exercise of personal jurisdiction over UBS. These facts show UBS's intent to invest in the U.S. securities market, its [redacted] to do so, and its engagement in additional business activity connected to the claims at issue. Based on those facts specific to UBS and its relevant contacts, the Liquidators have met their burden to establish jurisdiction over UBS on an individualized basis.

**II. The Exercise Of Jurisdiction Over UBS Is Reasonable**

Exercising specific jurisdiction over UBS—which, through its agent the Citco Subscriber, deliberately chose to invest in and profit from the U.S. securities market and repeatedly used the

U.S. banking system to do so—is "reasonable under the circumstances" presented here. *U.S. Bank Nat'l Ass'n*, 916 F.3d at 150 (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1786). Because the Liquidators have made "a threshold showing of minimum contacts," the burden is on UBS to "present[] 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life Ins. Co.*, 84 F.3d at 568 (quoting *Burger King Corp.*, 471 U.S. at 477). UBS has not done so.

To assess reasonableness, courts consider: "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the 'interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and (5) 'the shared interests of the several States in furthering fundamental substantive social policies.'" *U.S. Bank Nat'l Ass'n*, 916 F.3d at 151 n.5 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)). "The primary concern is the burden on the defendant," *id.* (cleaned up), and dismissals on reasonableness grounds "should be few and far between." *Metro. Life Ins. Co.*, 84 F.3d at 575. These factors strongly support the exercise of jurisdiction in this case.

UBS argues that the exercise of jurisdiction would be unreasonable because UBS had no relevant contacts with the United States. Mot. 19. This is not so; UBS's U.S. contacts are sufficient to allow the Court to exercise jurisdiction over it. And UBS does not advance a single additional argument as to why the exercise of jurisdiction would be unreasonable.

UBS has no legally cognizable burden here. As this Court held in a similar action brought by the BLMIS Trustee, UBS has "actively participated in this Court's litigation for over twelve years." *UBS*, 2022 WL 17968924, at *10. And "the conveniences of modern communication and transportation ease any burden the defense of this case in New York might impose on [UBS]."

*Licci IV*, 732 F.3d at 174 (citation omitted).[24]

Moreover, courts have long recognized that the U.S. has a strong interest in ensuring that its financial system is not used for unlawful purposes. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 31 (E.D.N.Y. 2016) ("[T]he Court also may take into account 'the United States' and New York's interest in monitoring banks and banking activity to ensure that its system is not used' [for unlawful purposes]" (quoting *Licci IV*, 732 F.3d at 174)). At its core, the case is about UBS's decision to indirectly invest in and reap profits from BLMIS and the U.S. securities market through feeder funds. Allowing foreign investors like UBS to evade U.S. jurisdiction in these circumstances, simply because they chose to invest through a foreign-based conduit as part of their scheme, would ignore the reality of the transactions, allowing those investors to reap all the benefits of the U.S. securities market without any of the corresponding obligations. That result would be all the more perverse where, as here, [REDACTED]. *See supra* Section I.C.

In sum, UBS has failed to establish that the exercise of jurisdiction is unreasonable, where UBS intentionally invested in a Madoff feeder fund and used a [REDACTED] to reap profits therefrom. UBS cannot now shield itself from liability after benefiting from those U.S. investments.

**CONCLUSION**

For the reasons discussed above, the Court should deny UBS's Motion.

---

[24] Even if UBS had legitimate concerns about the burden of particular discovery requests, they have no place "in the context of assessing the reasonableness of an exercise of personal jurisdiction." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 333 (S.D.N.Y. 2018) (cleaned up), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018); *see Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 99 (S.D.N.Y. 2015) (noting "no other courts" considered this version of a foreign law argument, and "declin[ing] to be the first").

Date: April 12, 2023

Respectfully submitted,

SELENDY GAY ELSBERG PLLC

*/s/ David Elsberg*

David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
Lauren Zimmerman
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
delsberg@selendygay.com
mginzburg@selendygay.com
jgoldstein@selendygay.com
lkonanova@selendygay.com
dflugman@selendygay.com
jmargolin@selendygay.com
lzimmerman@selendygay.com

-and-

BROWN RUDNICK LLP
David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for the Plaintiffs Joint Liquidators*