UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LIMITED, et al., | Case No. 10-13164 (CGM) |
| Debtor in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03635 (CGM) |
| Plaintiffs, | |
| v. | |
| ABN AMRO Schweiz AG a/k/a AMRO (SWITZERLAND) AG, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03636 (CGM) |
| Plaintiffs, | |
| v. | |
| ABN AMRO Schweiz AG a/k/a AMRO (SWITZERLAND) AG, et al., | |
| Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEXIA BANQUE INTERNATIONAL À LUXEMBOURG SA'S MOTION TO DISMISS

Date: May 2, 2023

SELENDY GAY ELSBERG PLLC

David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
Lauren Zimmerman
1290 Avenue of the Americas

New York, NY 10104
Telephone: 212-390-9000

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800

## TABLE OF CONTENTS

Pages

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ............................................................................................................5

    A.   The Funds.........................................................................................5

    B.   BIL's Spoliation Of ESI Reflecting Jurisdictional Contacts And The Court's Adverse Inference ...............................................................5

    C.   The Citco Entities ...............................................................................7

    D.   BIL's Decision To Invest In The Funds ...............................................8

    E.   Brokerage And Custody Agreement....................................................10

    F.   BIL's Investment In The Funds ...........................................................11

STANDARD..................................................................................................................14

ARGUMENT.................................................................................................................15

I.    BIL Has Sufficient Minimum Contacts With The United States ......................15

    A.   The Citco Subscriber's Contacts With The United States And Knowledge About The Funds Is Imputed To BIL ...............................17

    B.   BIL Knowingly And Intentionally Invested In Madoff Feeder Funds .................21

        1.   BIL Purposefully Availed Itself Of The United States Via Its Intentional Investment In The Funds ...........................................21

        2.   BIL's Intentional Investment In The Funds Directly Relates To The Liquidators' Claims .........................................................27

    C.   BIL And Its Agent Engaged In Other Business Activity In And Directed At The United States...........................................................28

        1.   Evidence Indicates BIL Engaged In Business Activity In And Directed At The United States ...................................................28

        2.   The Court Should Infer That More Extensive Evidence Of U.S. Business Activity Once Existed And Has Been Destroyed ......................29

    D.   BIL Utilized ████████████████ Of Sentry And The Citco Subscriber To Invest In And Receive Redemption Payments From Sentry .........31

i

1.      BIL And Its Agent Deliberately ██████████████████████
██████ ....................................................................... 31

a.     BIL Itself Deliberately Used ███████████████
█████ ........................................................ 32

b.     The Citco Subscriber's Deliberate Use █████████
███████████████ Is Imputed To BIL ................................. 32

c.     BIL Deliberately Instructed Its Agent Citco Subscriber To
██████████████████ ...................................................... 33

2.      BIL And Its Agent Utilized ███████████████████
█████████████████ ................................................. 34

3.      BIL's And Its Agent's █████████████████ Was
Sufficiently Related To The Harms Alleged ................................. 35

E.     The Court May Exercise Jurisdiction Over BIL Even If The Transfers Are
Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis .......... 36

F.     The Court Should Reject BIL's "Group Pleading" Argument ............ 38

II.   The Exercise Of Jurisdiction Over BIL Is Reasonable ..................... 38

CONCLUSION ................................................................................ 40

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012)...................................................................................36

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996)....................................................................................30

*In re Ampal-Am. Israel Corp.*,
    562 B.R. 601 (Bankr. S.D.N.Y. 2017)................................................................36

*Averbach v. Cairo Amman Bank*,
    2020 WL 486860 (S.D.N.Y. Jan. 21, 2020) .......................................................35

*In re Bernard L. Madoff Investment Securities LLC* ("*Lombard Odier II*"),
    2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ...............................4, 23, 25, 26

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
    2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014)....................................................19

*Branham v. ISI Alarms, Inc.*,
    2013 WL 4710588 (E.D.N.Y. Aug. 30, 2013).....................................................18

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)......................................................................................15, 28

*CutCo Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986)................................................................................16

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).............................................................................................16

*Drake v. Lab. Corp. of Am. Holdings*,
    2008 WL 4239844 (E.D.N.Y. Sept. 11, 2008) ...................................................14

*In re Eur. Gov't Bonds Antitrust Litig.*,
    2020 WL 4273811 (S.D.N.Y. Jul. 23, 2020) ..........................................16, 17, 28

*In re Fairfield Sentry Ltd.*,
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ...........................................28

*In re Fairfield Sentry Ltd.*,
    596 B.R. 275 (Bankr. S.D.N.Y. 2018)................................................................31

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
    667 F. Supp. 2d 308 (S.D.N.Y. 2009).............................................................17, 18

*Gucci Am., Inc. v. Weixing Li*,
    135 F. Supp. 3d 87 (S.D.N.Y. 2015)........................................................................40

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"),
    673 F.3d 50 (2d Cir. 2012)........................................................................................3

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"),
    732 F.3d 161 (2d Cir. 2013)............................................................................ *passim*

*Loginovskaya v. Batrachenko*,
    764 F.3d 266 (2d Cir. 2014)....................................................................................37

*In re Madoff Sec.*,
    513 B.R. 222 (S.D.N.Y. 2014)................................................................................37

*Maersk, Inc. v. Neewra, Inc.*,
    554 F. Supp. 2d 424 (S.D.N.Y. 2008)..............................................................17, 18

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
    295 F. Supp. 3d 404 (S.D.N.Y. 2017)....................................................................14

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)..............................................................14, 15, 38, 39

*In re Motors Liquidation Co.*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017)....................................................................29

*MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*,
    2021 WL 4461773 (S.D.N.Y. Sept. 29, 2021)........................................................16

*Nike, Inc. v. Wu*,
    349 F. Supp. 3d 310 (S.D.N.Y. 2018)....................................................................40

*Obabueki v. Int'l Bus. Machines Corp.*,
    2001 WL 921172 (S.D.N.Y. Aug. 14, 2001)..........................................................14

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)............................................................................33, 35

*Picard v. ASB Bank Corp.* (*In re Madoff*),
    2022 WL 17087667 (Bankr. S.D.N.Y. Nov. 18, 2022)..........................................30

*Picard v. Banque Internationale
    à Luxembourg S.A.* (*In re Bernard L. Madoff*) ("*BIL*"), 2023 WL 2504787
    (Bankr. S.D.N.Y. Mar. 14, 2023)..........................................................4, 22, 27, 39

*Picard v. Banque Lombard Odier & Cie SA* (*In re Bernard L. Madoff*) ("*Lombard Odier I*"),
  2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022)....................................................*passim*

*Picard v. BNP Paribas S.A.* (*In re Bernard L. Madoff*),
  594 B.R. 167 (Bankr. S.D.N.Y 2018)..................................................................................36

*Picard v. Bureau of Lab. Ins.*,
  2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) ...........................................................37

*Picard v. Bureau of Lab. Ins.* (*SIPC v. Bernard L. Madoff Inv. Sec. LLC*) ("*BLI*"),
  480 B.R. 501 (Bankr. S.D.N.Y. 2012)..............................................................................*passim*

*Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*) ("*Cathay Life Ins.*"),
  2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ...................................................*passim*

*Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*) ("*FGG*"),
  627 B.R. 546 (Bankr. S.D.N.Y. 2021).............................................................................15, 35

*Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*),
  2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ...........................................................22

*Picard v. LGT Bank in Liechtenstein Ltd.* (*In re Madoff*),
  2023 WL 2003960 (Bankr. S.D.N.Y. Feb. 14, 2023) ...........................................................30

*Picard v. Maxam Absolute Return Fund, L.P.*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011).............................................................................15, 22

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.* (*In re Bernard L. Madoff*),
  2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ...........................................................32

*Picard v. Merkin*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014).................................................................................20

*Picard v. Parson Finance Panama S.A.* (*In re Bernard L. Madoff*),
  2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ...........................................................25

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
  917 F.3d 85 (2d Cir. 2019)..................................................................................................22

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
  2021 WL 2000371 (S.D.N.Y. May 19, 2021) ......................................................................20

*In re Platinum & Palladium Antitrust Litig.*,
  449 F. Supp. 3d 290 (S.D.N.Y. 2020)..................................................................................28

*Ralph Lauren Corp. v. CSR Grp., Inc.*,
  2016 WL 4919961 (S.D.N.Y. Sept. 14, 2016).......................................................................30

*RJR Nabisco, Inc. v. European Cmty.*,
  579 U.S. 325 (2016)..........................................................................................36

*Schansman v. Sberbank of Russia PJSC*,
  565 F. Supp. 3d 405 (S.D.N.Y. 2021).............................................................35

*Schechter v. Banque Commerciale Privee*,
  1991 WL 105217 (S.D.N.Y. June 11, 1991) ...................................................20

*Sec. Ins. Co. of Hartford v. ITA Textiles Corp.*,
  2000 WL 1576879 (S.D.N.Y. Oct. 23, 2000) ..................................................19

*Strauss v. Credit Lyonnais, S.A.*,
  175 F. Supp. 3d 3 (E.D.N.Y. 2016) .................................................................40

*Struna v. Leonardi*,
  2022 WL 4096146 (S.D.N.Y. Sept. 7, 2022)....................................................18

*Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*,
  2022 WL 36489 (S.D.N.Y. Jan. 4, 2022) .........................................................16

*In re Sumitomo Copper Litig.*,
  120 F. Supp. 2d 328 (S.D.N.Y. 2000)..........................................................16, 17

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004)............................................................................29, 37

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019)..........................................................................15, 39

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*,
  2015 WL 4040882 (S.D.N.Y. July 2, 2015) ....................................................38

*Walden v. Fiore*,
  571 U.S. 277 (2014)......................................................................................25, 26

**Statutes**

Federal Rule of Bankruptcy Procedure 7004 ..............................................................15

Federal Rule of Bankruptcy Procedure 7012.................................................................1

Federal Rule of Civil Procedure 12(b)(2) ......................................................................1

Federal Rule of Civil Procedure 30(b)(6) ...................................................................6, 9

Federal Rule of Civil Procedure 34(a) ...........................................................................5

Federal Rule of Civil Procedure 37(e) ...........................................................................6

**Other Authorities**

Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb. 6, 2009) ....................................................................................................................1

Kenneth M. Krys and Greig Mitchell (the "Liquidators"), in their capacities as the duly appointed Liquidators and Foreign Representatives of Fairfield Sentry Limited (In Liquidation) ("Sentry"), Fairfield Sigma Limited (In Liquidation) ("Sigma"), and Fairfield Lambda Limited (In Liquidation) ("Lambda", and together with Sentry and Sigma, the "Funds") in the above-captioned adversary proceedings[1] (together, with the other adversary proceedings now pending against the Funds' former shareholders, the "U.S. Redeemer Actions"), respectfully submit this memorandum of law in opposition to Banque Internationale à Luxembourg S.A.'s (*f/k/a* Dexia Banque Internationale à Luxembourg S.A.) ("BIL") motion to dismiss the Fifth Amended Complaint ("Complaint" or "Compl.") (10-ap-3635, Dkt. 620; 10-ap-3636 Dkt. 679) under Federal Rule of Civil Procedure 12(b)(2) as made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Motion" or "Mot.") (10-ap-3635, Dkt. 691; 10-ap-3636, Dkt. 755).

## PRELIMINARY STATEMENT

The Liquidators seek to recover at least $5.5 million in payments that BIL received as redemptions of its investment in Bernie Madoff's Ponzi scheme on behalf of its clients. Several Fairfield investors saw their life savings, retirement funds, and pensions wiped out in an instant when the scheme collapsed in December 2008.[2] But as a sophisticated entity with inside knowledge about Madoff's fraud, BIL was able to get out early and reap a profit for itself and its clients before Madoff's investment firm was put into bankruptcy. BIL now attempts to evade responsibility by minimizing its own substantial and purposeful connections with the U.S.; BIL

---

[1] Sentry and Sigma each are parties to both 10-ap-03635 and 10-ap-03636. Lambda is a party only to 10-ap-03636. BIL filed identical motions to dismiss in both actions. Unless otherwise specified, citations herein refer to filings in the 10-3636 action, which are largely identical as they relate to the issue of personal jurisdiction.

[2] *See generally* Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb. 6, 2009), https://www.reuters.com/article/us-madoff-victims/savings-lost-to-madoff-elderly-forced-back-to-work-idUSTRE5156FB20090207.

1

should be held to account and its motion to dismiss denied.

The facts relevant to this motion are simple. When BIL withdrew its investment from the Fairfield Funds, it received inflated redemption payments that were substantially sourced from investors' monies that Fairfield had invested in Madoff's eponymous New York investment firm Bernard L. Madoff Securities LLC ("BLMIS"), through which Madoff operated his Ponzi scheme. Both to make its investments in and, at the expense of other investors, to receive redemption payments from the Funds—the same redemption payments the Liquidators seek to recover in this action—BIL retained Citco entities as an agent.

Citco was at the center of the Funds' business: entities within the Citco corporate family provided administration, banking, and custodial services to the Funds. Some of those Citco entities also facilitated investors' subscriptions in the Funds by serving as the shareholder of record and as a brokerage and custodial agent for the Funds' beneficial shareholders. Specifically, BIL used Citco Global Custody N.V. and Citco Bank Nederland N.V. Dublin Branch, as well as Citco Global Custody (N.A.) N.V. and Citco Banking Corporation N.V. (collectively, the "Citco Subscriber") for such transactions. In serving as BIL's agent in connection with its investments in the Funds, the Citco Subscriber acknowledged that it understood the Funds were investing in the U.S. securities market through BLMIS, and also deliberately and repeatedly █████████████ ███████████████████████████ as authorized by BIL. The Citco Subscriber's conduct is imputed to BIL for purposes of this motion.

BIL also knew where its investments were going: it took these actions after ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████. Indeed, in addition to investing through Citco during this period, BIL invested directly in

2

Sentry.[3] BIL is subject to this Court's jurisdiction as a result of that conduct.

For the Court to exercise specific jurisdiction over a defendant, the defendant must have sufficient contacts with the forum that relate to the claims at issue, and the exercise of jurisdiction must be reasonable. BIL's and its agent's extensive, intentional contacts with the U.S. more than sufficiently support this Court's exercise of jurisdiction over BIL.

*First*, BIL's and its agent the Citco Subscriber's contacts with the U.S. were voluminous and are directly related to the Liquidators' claims. The evidence that the Liquidators have been able to obtain demonstrates that BIL:



- Subscribed for ███████ shares in Sentry from 2004 to 2005 with the sole purpose of investing in U.S.-based BLMIS and ████████████████████████████████████████████████████;[4]

- ████████████████████████████████████████;

- ████████████████████████████████████████████ in total, stemming from those investments;

- ████████████████████████████████████ governed by the laws of New York and that selected New York as the forum for any related litigation;

- ████████████████████████████████████████████; and

- ████████████████████████████████████ concerning investing in Sentry.

---

[3] Although the Liquidators are not seeking in this action to recoup the redemptions associated with BIL's direct investment in Sentry, the knowledge BIL gained in making that investment (including ████████████████████████████████████████████) bear directly on its decision to invest in the Funds through Citco.

[4] Throughout this brief, the Liquidators refer to BIL's "investment" with BLMIS. The Liquidators do not allege that the BIL was invested in BLMIS itself, but instead refer to BIL's investment in BLMIS by way of Sentry.

[5] "Correspondent accounts are accounts in domestic banks held in the name of foreign financial institutions" that are used "to effect dollar transactions." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"), 673 F.3d 50, 56 n.3 (2d Cir. 2012) (cleaned up).

3

The Court, however, is not limited to considering just the facts evident from the partial discovery BIL was able to produce or that the Liquidators have been able to obtain from third parties. As this Court held in its March 17, 2023 Order Granting the Joint Liquidators' Motion for Sanctions, Dkt. 1098 (the "Spoliation Order"), BIL intentionally spoliated evidence bearing directly on the question of personal jurisdiction. Pursuant to that finding, this Court can and should conclude that additional documentary evidence once existed and that that evidence would have shown that BIL engaged in extensive, intentional contacts with the United States in connection with its subscriptions in and redemptions from Sentry.

The existing evidence, together with that adverse inference, is plainly sufficient to support the exercise of personal jurisdiction. Indeed, this Court recently found personal jurisdiction existed over BIL based on its investments in the Funds, including some of the exact redemption payments at issue here, in actions brought by the BLMIS Trustee.[6] And these contacts directly relate to the crux of the Liquidators' claims: that BIL redeemed its Sentry shares knowing that the payments it would receive in return would be inflated due to inaccurate and fraudulent value statements. Without these U.S. contacts, there would have been no investment, no redemptions, and no benefit to BIL. The factual nexus between BIL's forum contacts and the Liquidators' claims more than sufficiently supports the exercise of specific personal jurisdiction.

This Court's exercise of personal jurisdiction over BIL is more than reasonable, and allowing the suit to proceed is consistent with notions of fair play and substantial justice. The

---

[6] *Picard v. Banque Internationale à Luxembourg S.A.,* 2023 WL 2504787 (*In re Bernard L. Madoff*) (Bankr. S.D.N.Y. Mar. 14, 2023) ("*BIL*"); *see, e.g.*, *Picard v. Banque Lombard Odier & Cie SA* (*In re Bernard L. Madoff*) ("*Lombard Odier I*"), 2022 WL 2387523, at *3 (Bankr. S.D.N.Y. June 30, 2022), *leave to appeal denied sub nom. In re Bernard L. Madoff Investment Securities LLC* ("*Lombard Odier II*"), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023); *Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*) ("*Cathay Life Ins.*"), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022).

United States has a substantial interest in this dispute, as it concerns BIL's deliberate choice to ████████████████████, and wrongfully profit from, a fraudulent scheme in the U.S. securities market and ████████████████████████████ at the expense of other investors. Any burden BIL faces as a litigant in this forum is minimal at best, and can be mitigated through electronic transmission of document productions and redactions to address asserted privacy concerns arising from foreign law. BIL has not come close to meeting its burden of presenting a compelling case that exercising jurisdiction would be unreasonable.

This Court should deny BIL's Motion and reach the merits of the Liquidators' claims.

## BACKGROUND

### A.    The Funds

Sentry was the largest BLMIS "feeder funds," funneling billions of dollars into New York-based BLMIS over 18 years. Compl. ¶¶ 5, 133-34. From their inception in 1990, until the widespread disclosure of Madoff's fraud in December 2008, the Funds sought out new investments through the sale of shares and transferred substantially all net proceeds to their New York accounts, which were managed by BLMIS. *Id.* ¶¶ 5, 135. Sentry transferred its proceeds directly to BLMIS in New York. *Id.* ¶¶ 5, 133-34.

### B.    BIL's Spoliation Of ESI Reflecting Jurisdictional Contacts And The Court's Adverse Inference

While existing transactional records paint a partial picture of BIL activities related to its investments in Sentry, this Court has held that BIL destroyed evidence that "would have would have been favorable to the Liquidators in establishing personal jurisdiction over [BIL]." Dkt. 1098.

On August 5, 2021, this Court lifted the stay and opened discovery in this action. Dkt. 675. Over the following year, the Liquidators sought discovery from BIL, including electronically

stored information ("ESI")[7] that would be relevant to the jurisdictional inquiry before the Court.

Despite the fact that the Liquidators knew from third parties that individuals at BIL had used email

to communicate about Sentry, BIL produced only partial, hard-copy records of its email

correspondence and could not identify *any* relevant ESI whatsoever in its possession, custody, or

control from the relevant time period. The Liquidators took a Rule 30(b)(6) deposition and

submitted spoliation briefing in light of BIL's inability to produce or identify relevant ESI. *See*

Dkt. 1083-1(Memorandum of Law in Support of Motion for Sanctions); Dkt. 1094-1 (Reply in

Further Support of Motions for Sanctions). This briefing demonstrated that BIL kept only

incomplete hard-copy correspondence, which did not include complete email chains, metadata, or

attachments, that it did not centrally collect any ESI following its notice of this litigation, and that

it continued to delete all ESI for recipients of its litigation hold after they departed BIL. *See id*.

After briefing and argument, the Court concluded that "(i) [BIL] spoliated evidence in

violation of Federal Rule of Civil Procedure 37(e) […]; (ii) [BIL] acted with intent in doing so;

and (iii) such spoliation has prejudiced the Liquidators." Dkt. 1098; *see also* Dkt. 1100 at 123:11-

132:23 (March 15, 2023 Hr'g Tr.). To remedy BIL's spoliation, the Court entered an adverse

inference against BIL "that any spoliated evidence would have been favorable to the Liquidators

in establishing personal jurisdiction over Defendant." Dkt. 1098 ¶ 3.[8] Accordingly, the Court will

---

[7] "ESI" should encompass "any type of information that is stored electronically … such as email … [and] all current types of computer-based information." Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment.
[8] Under the Spoliation Order, BIL is further precluded from asserting that:
"a. It did not communicate internally or externally about its investments in the Funds via email, including but not limited to (i) communications regarding its use of correspondent accounts and (ii) communications with U.S.-based entities or individuals;
b. Such communications did not include diligence on the Funds, the Funds' investment strategy, and/or Bernard L. Madoff Investment Securities LLC; and
c. Such communications are limited to the volume or frequency that the Liquidators can demonstrate by use of evidence produced by third parties[.]"

infer that BIL generated ESI—such as emails and their attachments, word processing documents, spreadsheets, instant messages, or voicemails—and that this ESI would have reflected activities relevant to the exercise of personal jurisdiction over BIL.

### C.    The Citco Entities

Central to the Funds' operations were several companies within the Citco corporate family. The Funds were administered by Citco Fund Services (Europe) B.V., and Citco Global Custody N.V. served as the Funds' custodian. Citco Bank Nederland N.V. Dublin Branch provided an important banking service function for the Funds—it received subscription payments from and paid out redemption payments to the Funds' shareholders. Citco Bank Nederland N.V. Dublin Branch also facilitated the transfer of the money the Funds received from its shareholders to and from BLMIS. Thus, the U.S. dollars that the Funds held at any point were sourced from or transmitted through Citco Bank Nederland N.V. Dublin Branch's correspondent account with HSBC USA, N.A. ("HBUS").

The Citco Subscriber played other important roles in facilitating investments by the Funds' beneficial shareholders, such as BIL, by serving as the subscriber of record for BIL's shares. For such investments, the beneficial shareholders' shares were registered in the name of Citco Global Custody N.V. or Citco Global Custody (N.A.) N.V. (collectively, "Citco Global Custody"), and Citco Bank Nederland N.V. Dublin Branch and Citco Banking Corporation N.V. (collectively, "Citco Bank") ████████████████████████████████████████

████████████████████████████████████████. *See* Ex. 1 at -972 (Citco Bank Redemption Order Confirmation).[9]

---

[9] Unless indicated otherwise, all exhibits refer to those attached to the Declaration of David S. Flugman ("Flugman Decl.").

D.    **BIL's Decision To Invest In The Funds**

BIL first directly invested in Sentry as early ██████, and continued to make direct investments for years afterwards. *See* Ex. 24 at -176 (subscription confirmation); Ex. 20. at -960 (subscription confirmation), -984-003 (direct subscription agreement). BIL also invested in Fairfield Sentry through the Citco Subscriber ████████████████████████████████ (the "<u>Subscription Period</u>"), for a total of ██████ share*s, see* Ex. 2 at -225, Ex. 3—which resulted in the redemptions that are the subject of this motion.

BIL knew where the money was going when it made these investments. ████████████ ██████████, BIL had conducted an extensive investigation into various ██████████████ ██████████████████████████████████████████████████████████ ████████████████. BIL's investigation noted that ███████████████ ████████████████ Ex. 4 at -076, and ████████████████ ████████████ *Id.* at -081. The diligence further █████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████. *Id.* at -081-082. BIL also received █████████████ ██████████████, Ex. 5 at -106-155, 191-214; and ████████████████ *see* Ex. 5 at -365-433. These voluminous materials noted, among other things, ████████ ██████████████████████████████████, *id.* at -208, "███████████████████ ██████████████████████████████████. *Id.* at -202.

On multiple other occasions, while it was invested in the Funds, ████████████ ██████████████████████████████████. *See* Exs. 22 (May 25, 2005 email from FGG to BIL), 23 (November 21, 2006 email from FGG to BIL). In each instance, ████ ██████████████████████████████████. The materials provided by ████████

8



███████, Ex. 22 at -693; that ████████████████████████████████████████, Ex. 23 at -078; that ██████████████████████████████████████████████████ ██████████████████████████████████████████ Ex. 23 at -087.

In addition to this extensive diligence, BIL also periodically ████████████. *See, e.g.*, Ex. 6 (June 18, 2004 email attaching ██████████); Ex. 7 (July 18, 2007 email ████████████). As with BIL's prior diligence, those ██████████████████████ ██████████████████████████████. Ex. 6 at -669; Ex. 7 at -936. They explained ██ ██████████████████████████████████████████████████ ████████████████████████████. Ex. 6 at -667, -658; Ex. 7 at -934, -927. In other words, ██████████████████████████ ████████████████████. *E.g.*, Ex. 6 at -651; Ex. 7 at -921 (describing the ██████████████████████████████████████████ ████████████████████████████████████████████). Finally, these ██████████████████████████████████████ ██████████████████████. *E.g.*, Ex. 6 at -665, Ex. 7 at -932.

In addition to the evidence the Liquidators were able to obtain from third parties, the Court has held that it will infer that the evidence that BIL destroyed would have included jurisdictionally relevant information. Dkt. 1098. For example, BIL lost all ESI for custodian Gianni Baldinucci, whom BIL has identified as "head[] [of] the team of relationship managers," *see* Ex. 29 (Rule 30(b)(6) Deposition of BIL) at 78:8-17, and who—as part of that role—would likely have communicated with BIL's clients about strategy and placement of investments. The Court should therefore infer that communications between Baldinucci, BIL employees, and/or BIL customers

would have reflected BIL's knowledge and intent that money invested in Sentry would be placed with BLMIS in New York.

### E.    Brokerage And Custody Agreement

In connection with its investments in Sentry, BIL ██████████████████████████
███████████████████████████████████████████████████, Ex. 8, ███████
█████████████████████████ (the "B&C Agreement"), Ex. 9. Under the B&C Agreement,
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████ Ex. 9 at -062-063. ███████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
*Id.* at -066; Ex. 8 at -935. The B&C Agreement further provided ████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████ Ex. 9 at -064 (emphasis added).

█████████████ to the B&C Agreement █████████████████████████████
████████████████████████████████████████████████████████████
██████████████████. *See id.* at -074; *see also* Ex. 8 at -943 (██████████
██████████████████). Per the terms of ████████████████████████████

---

[10] As defined above, "Citco Subscriber" collectively refers to Citco Bank, which executed BIL's orders, and Citco Global Custody, which was a nominee entity Citco Bank used in subscribing in the Funds on behalf of BIL. Therefore, Citco Bank was the effective operator of Citco Global Custody. *See supra* at 7.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████ Ex. 9 at -075 █████

██████████████████████████████████████████████████████

████████████████████████████████████ *Id.* at -075-077.

### F.    BIL's Investment In The Funds

Each time it subscribed for shares in the Funds, █████████████████████████████

███████████████████ *See* Ex. 10 at -014-015.[11]

█████████████████████████████████. *See* Ex. 10 at -017. █████████████

██████████████████████████████████████████████████████

████████████████.



Ex. 10 at -017 (annotation added). ████████████████████████████████

*See e.g.,* Ex. 10 at -013 (confirming receipt of funds).

---

[11] Transaction documents sometimes refer to BIL through identification numbers or account numbers with Citco Global Custody. ████████████████████ *See* Ex. 10 at -014 ██████ Ex. 9 at -062 █████████████████████████████████████████ *See* Ex. 13 ████████████████████ Ex. 8 at -932 ████████████

The Citco Subscriber ████████████████████████████████████████

████████████████████████████████████████████████. *See* Ex. 21

(Sentry Long Form Subscription Agreement ██████████████). These agreements

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████ *See id.* at -643.[12]

    ██████████████████████████████████████████████

████████████████████████████████. *E.g.*, Ex. 6 at -665; Ex. 21 at -640-

641. ██████████████████████████████████████████████

████████████████████████████████████, BIL nonetheless chose to invest in Sentry.

    BIL initiated the process of redeeming its Sentry shares by ██████████████████

██████████████. *See* Ex. 10 at -037. ██████████████████████████████

██████████████████ *See* Ex. 11. ██████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *see* Declaration

of Sara Joyce ("Joyce Decl.") at 6-9, 12-13, ████████████████████████



*See* Ex. 11 (annotation added).

---

[12] The long form subscription agreements included provisions designating New York law as the governing law and New York as the venue for dispute resolution. *See* Ex. 21 at -645; *see also* Compl. ¶ 23 (alleging that the Citco Subscriber agreed to submit to the jurisdiction of New York courts in connection with proceedings related to Sentry).

Sentry then █████████████████████████████████████████

███████████████████████████████████████████.



*See* Ex. 1 at -971 (annotation added).[13]

From ████████, through ████████████ (the "Redemption Period"), the Citco

Subscriber █████ (██████████████████) ████████████████████████

████████████████████████████. Ex. 10 at -003; Ex. 12.[14] As to those ████

redemptions from Sentry, ████████████████████████████████████████

██████████████████████████████. Ex. 1 at -972, Ex. 13. ████

████████████████████████████████████████████████████████

████████. Ex. 1 at -971, Ex. 12

In addition to any redemption payments it retained, BIL profited from these investments

---

[13] Certain other transaction documents, such as ███████████████████████

██████████████████████████. *See* Ex. 19. At this stage of the litigation,
ambiguity in the documentary evidence should be resolved in the Liquidators' favor.
[14] BIL produced transactional records for ████████████████████████████████
████. *See generally* Ex. 10. Third party discovery further demonstrates that BIL
████████████████████████. *See* Ex. 25 (████████████████████████████
████████████████████); Ex. 8 at -953 (████████████████████████████████
██████); Ex. 26 (██████████████████████████████████████.



through ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* Ex. 14 (BIL Client Agreement), ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see, e.g.,* Ex. 15 (BIL Client Account

Statement), ▮▮▮▮▮▮▮▮▮▮, *see, e.g.,* Ex. 16 (BIL Client Account Statement)

## STANDARD

Courts in this Circuit apply one of three standards to Rule 12(b)(2) motions. If the motion

is assessed solely on the pleadings, the plaintiff may defeat the motion based on "legally sufficient

allegations" alone. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir.

1996), *cert. denied*, 519 U.S. 1007 (1996). If discovery is permitted *and* the court holds an

evidentiary hearing, "the plaintiff must demonstrate the court's personal jurisdiction over the

defendant by a preponderance of the evidence." *Id.* at 567. And where, as here, the court assesses

the motion after jurisdictional discovery but *without* holding an evidentiary hearing, the plaintiff

need only make a factually supported *prima facie* showing of jurisdiction. *See id.* (quoting *Ball v.

Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Obabueki v. Int'l Bus.

Machines Corp.*, 2001 WL 921172, at *2 (S.D.N.Y. Aug. 14, 2001).

In this context, the court must credit the facts averred in the pleadings and motion papers

as true and must "construe[] the pleadings and affidavits in the light most favorable to the plaintiff

… resolv[ing] all doubts in plaintiff's favor, notwithstanding any 'controverting presentation by

the moving party.'" *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404,

409 (S.D.N.Y. 2017) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85-86

(2d Cir. 2013)); *accord Drake v. Lab. Corp. of Am. Holdings*, 2008 WL 4239844, at *1 (E.D.N.Y.

Sept. 11, 2008) ("Despite this higher burden, the Court must 'credit [Plaintiff's] averments of

jurisdictional facts as true.'" (quoting *Metro. Life Ins. Co.*, 84 F.3d at 567)). Likewise, the court

must draw "reasonable inference[s]" in the plaintiff's favor based on facts developed in discovery.

*Drake*, 2008 WL 4239844, at *5; *see also Obabueki*, 2001 WL 921172, at *1 (stating that the court

14

must draw reasonable inferences in the plaintiff's favor notwithstanding the fact that the parties had engaged in jurisdictional discovery).[15]

## ARGUMENT

This Court has personal jurisdiction over BIL because BIL has sufficient minimum contacts with the United States and because the exercise of jurisdiction over BIL is reasonable.

## I.    BIL Has Sufficient Minimum Contacts With The United States

BIL has sufficient minimum contacts with the United States to permit this Court to exercise jurisdiction over it. Jurisdiction under Bankruptcy Rule 7004 is assessed based upon the defendant's "contacts with the United States, rather than with the forum state," and there is no need for the Court to address the forum state's long-arm statute. *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*) ("*FGG*"), 627 B.R. 546, 565 nn.12, 13 (Bankr. S.D.N.Y. 2021). Demonstrating the requisite minimum contacts for specific personal jurisdiction requires showing (1) a defendant's "purposeful availment" of the forum (2) that "arises out of or relates to" the alleged misconduct. *FGG*, 627 B.R. at 566; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985); *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). Courts assess both prongs based on the "totality of the circumstances." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"), 732 F.3d 161, 170 (2d Cir. 2013).

Satisfying the first prong, "purposeful availment," requires showing that the defendant has sufficient contacts with the forum resulting from the defendant's own actions. *FGG*, 627 B.R. at 566. The defendant's activities "need not have taken place within the forum, and a single

---

[15] The Liquidators have not pursued discovery on the merits from BIL, including, for example, documents demonstrating that BIL knew the Funds' net asset values were inflated. To the extent the Court considers those allegations in resolving BIL's Rule 12(b)(2) motion, it should credit those allegations as true per the standard applicable in the absence of jurisdictional discovery. *See Metro. Life Ins. Co.*, 84 F.3d at 566-67.

transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (cleaned up) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Moreover, a defendant "can purposefully avail itself of a forum by directing its agents … to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). Imputing an agent's conduct for jurisdictional purposes does not require "a formal agency relationship between the defendant and [its] agent," *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000). Rather, courts may impute an agent's conduct within or aimed at the forum to the principal when, based on "the realities of the relationship in question rather than the formalities of agency law," *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986), the court concludes that the "alleged agent acted in [the forum] for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. Jul. 23, 2020).

Satisfying the second prong, "arises out of or relates to," requires showing that there is a "sufficiently close link" between the defendant's contacts and the claims at issue. *MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*, 2021 WL 4461773, at *3 (S.D.N.Y. Sept. 29, 2021) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1032 (2021)). A causal relationship between the plaintiff's claims and the defendant's forum contacts is *not* required. *See, e.g.*, *Cathay Life Ins.*, 2022 WL 16626325, at *4. An "affiliation between the forum and the underlying controversy" is sufficient. *Id.* (quoting *Goodyear Dunlap Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*, 2022 WL 36489, at *8 (S.D.N.Y. Jan. 4, 2022) (holding that the claims must be "arguably connected" to, rather than "completely unmoored" from, the contacts at issue (quoting *Licci v. Lebanese Canadian Bank, SAL* ("*Licci III*"), 984 N.E.2d 893, 900-01 (N.Y. 2012))).

16

The facts averred and evidence presented by the Liquidators, which must be taken as true for purposes of this motion, are sufficient to satisfy both prongs of the minimum contacts test. BIL purposefully availed itself of the United States by intentionally investing in BLMIS feeder funds Sentry via the Citco Subscriber with the express intention of profiting from BLMIS's investments in the U.S. securities market (**Section I.B**, *infra*), engaging in other business activity within or aimed at the United States (**Section I.C**, *infra*), and ████████████████████████████

████████████████████████████████████████████████

████████████████████████████ (**Section I.D**, *infra*), each of which constitutes an independent basis for the Court's exercise of personal jurisdiction over BIL. And each of those contacts is closely related to the Liquidators' claims. BIL therefore has sufficient minimum contacts with the United States.

### A.    The Citco Subscriber's Contacts With The United States And Knowledge About The Funds Is Imputed To BIL

The Court should impute the Citco Subscriber's knowledge and forum-directed activities to BIL in resolving the instant motion because (1) the Citco Subscriber's conduct in investing in the Funds was taken on behalf and for the benefit of BIL; (2) the Citco Subscriber acted at the direction and under the control of BIL; and (3) the Citco Subscriber acted pursuant to BIL's knowledge and consent. *See In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6.

The on behalf/benefit of prong is satisfied when an agent's activities open the principal to financial gain. *See In re Sumitomo Copper Litig.*, 120 F. Supp. 2d at 336 (finding that potential profits from agent's trading activities established benefit); *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (holding that proceeds from sale of a property by the agent established benefit). The control prong is satisfied when the principal has "[an] ability . . . to influence [the agent's] acts or decisions by virtue of the parties' respective

roles." *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 442 (S.D.N.Y. 2008) (cleaned up) (citing

*CutCo*, 806 F.2d at 336). Absolute control by the principal is not necessary. *Id.* The knowledge

and consent prong is satisfied when the principal is apprised of the agent's activities. *See Struna*

*v. Leonardi*, 2022 WL 4096146, at *9 (S.D.N.Y. Sept. 7, 2022). The principal's decision not to

take any action regarding the agent's activities further evidences the principal's knowledge and

consent as to those activities. *Branham v. ISI Alarms, Inc.*, 2013 WL 4710588, at *7 (E.D.N.Y.

Aug. 30, 2013). Applied here, those three factors demonstrate that the Citco Subscriber's contacts

with the forum ████████████████████████████████████████████████

████████████████████ should be imputed to BIL.

 *First*, the Citco Subscriber's activities were performed on behalf of BIL and benefited BIL.

It is undisputed that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████. Through the Citco Subscriber's activities, BIL

could (██████) obtain financial gains by ████████████████████████████████

████████████████████████████████████. *See* Exs. 14-16.[16]

 *Second*, BIL exercised control over ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[16] The Citco Subscriber's activities also allowed BIL to benefit through its relationship with clients
on whose behalf BIL invested in the Funds. *See GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009)

███████████████████████████████████████████████ Ex. 9 at -066 (emphasis added);

Ex. 8 at -935. ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████ Ex. 9 at -074-075. Simply put, the Citco

Subscriber ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████

     *Finally*, BIL was aware of and consented to the activities by the Citco Subscriber relating

to the subscriptions and redemptions on BIL's behalf. ████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████ *Id.* at -063. ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████ *Id* at -075-076. Under this arrangement, the Citco

Subscriber ████████████████████████████████████████ *See, e.g.,* Ex. 10 at -

017, -020. While fully aware of the Citco Subscriber's actions, ██████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

     In sum, the Citco Subscriber conducted activities relating to its subscriptions and

redemptions on behalf and for the benefit of, under the control of, and with the knowledge and

consent of BIL. Courts have found an agency relationship in similar cases. *See, e.g.*, *Sec. Ins. Co.*

*of Hartford v. ITA Textiles Corp.*, 2000 WL 1576879, at *2 (S.D.N.Y. Oct. 23, 2000) (imputing

contacts of insurance broker who solicited quotes and secured an insurance policy for the

defendant); *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, 2014 WL 1331046, at *4

19

(S.D.N.Y. Mar. 31, 2014) (finding that foreign corporation acted as agent of foreign defendant by negotiating and entering a joint venture agreement on the defendant's behalf); *Schechter v. Banque Commerciale Privee*, 1991 WL 105217, at *11 (S.D.N.Y. June 11, 1991) (finding that individual who secured a guaranty for a note per defendant's directions served as defendant's agent for jurisdictional purposes); *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 2021 WL 2000371, at *8 (S.D.N.Y. May 19, 2021) (imputing the conduct of a corporation that sourced an insurance policy from New York-based underwriter pursuant to authority delegated by defendant). Therefore, the Citco Subscriber was BIL's agent for jurisdictional purposes.

Of the various functions it served as BIL's agent in connection with BIL's investment in the Funds, the Citco Subscriber's role as a payment processor is particularly relevant here. The B&C Agreement provides that ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████, Ex. 9 at -064, ████████████████████████████████████ *id.* at -066; *see also* Ex. 8 at -935 (██████████████████████████████). Moreover, BIL ████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████ Ex. 9 at -064 (emphasis added).

Simply put, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. An action taken by an agent in exercise of discretion entrusted to it by the principal is imputed to the principal for jurisdictional purposes. *See Picard v. Merkin*, 515 B.R. 117, 147-48 (Bankr. S.D.N.Y. 2014).

Accordingly, the Citco Subscriber's actions in effectuating payments relating to BIL's investments and redemption of shares in the Funds—those expressly instructed by BIL, as well as those taken by the Citco Subscriber in exercise of the discretion delegated by BIL—are imputed to BIL.

**B.    BIL Knowingly And Intentionally Invested In Madoff Feeder Funds**

The evidence presented by the Liquidators makes clear that BIL intentionally invested in BLMIS feeder fund Sentry knowing that it was designed to subsequently invest that money in New York-based BLMIS. BIL is subject to this Court's jurisdiction with respect to its Sentry redemptions as a result of that conduct.

**1.    BIL Purposefully Availed Itself Of The United States Via Its Intentional Investment In The Funds**

This Court, applying Judge Lifland's decision in *Picard v. Bureau of Labor Insurance* (*SIPC v. Bernard L. Madoff Inv. Sec. LLC*) ("*BLI*"), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012), recently held that "[a] party 'purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS.'" *Cathay Life Ins.*, 2022 WL 16626325, at *3. *BLI* applies with at least equal force here.

In *BLI*, Judge Lifland held—in a very similar action seeking to reclaim redemption payments made by Fairfield Sentry—that a foreign defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." 480 B.R. at 517. █████, the *BLI* defendant subscribed in Sentry after engaging in "diligence on Fairfield Sentry and its investment strategies" and after reviewing "a [PPM] and other information about Fairfield Sentry, including specifics about Sentry's investment strategy and past results and trades in the S & P 100," provided

21

to it by FGG. *Id.* at 517. And, ███████████████████████████████████, the

defendant "signed [a] Subscription Agreement [that] incorporated the [offering memorandum],"

meaning the defendant knew "Sentry was required to invest at least 95% of its assets" in BLMIS,

which would hold the assets in accounts in New York to be "invested in U.S. Securities…." *Id.*

Courts repeatedly have employed *BLI*'s reasoning to find jurisdiction in similar

circumstances. *See Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*),

2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) ("[*BLI*] confirmed that defendants who

invested directly or indirectly with BLMIS and received payments from BLMIS as … subsequent

transferees … [are] subject to the Court's personal jurisdiction"); *Maxam Absolute Return Fund,*

*L.P.*, 460 B.R. at 118 (finding jurisdiction over defendant that "engaged in a series of repeated

transactions that intentionally channeled investor money into the BLMIS Ponzi scheme in New

York"); *cf. In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105

(2d Cir. 2019) ("When these investors chose to buy into feeder funds that placed all or substantially

all of their assets with Madoff Securities, they knew where their money was going.").

Most recently, this Court cited *BLI* in exercising personal jurisdiction over several

defendants in actions brought by the BLMIS Trustee seeking to recoup the very same kind of

redemption payments at issue here. *See, e.g.*, *BIL*, 2023 WL 2504787, at *3-4 *Cathay Life Ins.*,

2022 WL 16626325, at *3; *Lombard Odier I*, 2022 WL 2387523 at *3. This Court did so citing

████████████████████████: that the defendant "knowingly directed funds to be invested

with New York-based BLMIS through Fairfield Sentry"; that Sentry "invested almost all of its

assets in BLMIS"; that the defendant reviewed PPMs substantively identical to those at issue in

*BLI*; that the defendant signed subscription agreements incorporating the same; and that the

defendant communicated with FGG employees in New York. *Compare Cathay Life Ins.*, 2022 WL

16626325, at *3, *and Lombard Odier I*, 2022 WL 2387523, at *3, *with* Compl. ¶ 20 (alleging that BIL invested in the Funds while knowing and intending that its investments would be passed along to BLMIS), *and* Ex. 17 (███████████████████████████████████ ████████████████). In light of these allegations, this Court held that defendants "intentionally directed its investment to New York-based BLMIS, through Fairfield Sentry," which in turn was a basis for exercising personal jurisdiction pursuant to *BLI. Lombard Odier I*, 2022 WL 2387523, at *3; *see also Lombard Odier II*, 2023 WL 395225, at *4 (denying appeal from *Lombard Odier I* and concluding that this Court's decision was based on proper application of "settled precedent").

Here, Sentry's offering documents (virtually identical to those at issue in *BLI*, *Cathay Life Insurance*, *Lombard Odier*, and others), as well as ███████████████████████████ █████████████, all demonstrate that BIL, a sophisticated investor, invested ███████████ ████████ in Sentry with the intention, knowledge, and expectation that its investments would be channeled into BLMIS. BIL obtained pecuniary gains through these investments in the form of ████████████████. Under *BLI* and this Court's recent decisions, that defeats BIL's Motion.

Specifically, as in *BLI*, BIL received ████████████████████████████████████ ███████████████████████████████████████████. *See supra* at 8-10.[17] And BIL's ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████ *See* Exs. 4-5. ███████████████████ ███████████████████████████████████████████████████████████████████ ██████████, *see, e.g.,* Ex. 4 at -081, ████████████████████████████████████

---

[17] The PPM in *BLI* conveyed virtually the same information. *See* No. 11-ap-02732, Dkt. 17-4 at 8-9, 14-16.



. *See, e.g.,* Ex. 5 at -119, -202.

. *BLI*, 480 B.R. at 517. BIL thus

*Id.*[18]

Pursuant to the adverse inference entered against BIL, the Court can and should infer that BIL also deleted or destroyed ESI that would have ███ evidenced BIL's knowledge that by investing in the Funds, it was investing in the United States. For instance, surviving evidence shows BIL ███. *See, e.g.*, Ex. 5 (email correspondence ███). As discussed further *infra* at Section I(C)(2), the Court can infer that BIL spoliated ███ and communications involving BIL's relationship manager, Gianni Baldinucci, whose documents were spoliated and who likely had conversations with BIL's customers and others concerning the Funds and BLMIS.[19]

This Court has recognized other instances where ESI can reflect that a party had knowledge

---

[18] The Citco Subscriber further affirmed that it ███ See Ex. 21 at ¶ 7

[19] BIL ███ *See* Ex. 29 at 97:6-20. But BIL has not established as much, and in any event cannot evade responsibility on that ground. *First*, ███. *See* Exs. 5-7. *Second*, the Spoliation Order precludes BIL from arguing that its communications "did not include diligence of the Funds, the Funds' investment strategy, and/or [BLMIS]." Dkt. 1098.

about the relationship between the Funds and BLMIS, demonstrating an intent to invest in BLMIS via the Funds. *See, e.g., Cathay Life Ins.*, 2022 WL 16626325, at *3 (citing to correspondence seeking clarification that funds in Sentry would be transferred to BLMIS); *Lombard Odier I*, 2022 WL 2387523 at *3 (citing to correspondence "with FGG employees located in New York via mail and email"). For example, in *Picard v. Parson Finance Panama S.A.* (*In re Bernard L. Madoff*) ("*Parson Finance*"), 2022 WL 3094092, at *4 (Bankr. S.D.N.Y. Aug. 3, 2022), this Court found that emails supported purposeful availment of a defendant by reflecting defendant's intent "to invest with BLMIS through Fairfield Sentry . . . [and] purposeful[] avail[ment] of the privilege of doing business in New York." The Court should presume that, but for BIL's spoliation, similar contacts would have been reflected in the record and would have demonstrated knowledge and intent to invest in BLMIS through the Funds. As in *BLI*, that suffices to establish jurisdiction over BIL. *See BLI*, 480 B.R. at 517; *Lombard Odier I*, 2022 WL 2387523, at *3; *Lombard Odier II*, 2023 WL 395225, at *4-5.

BIL's attempts to distinguish *BLI* fail. BIL incorrectly asserts that the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), bars jurisdiction here. Mot. 17. *Walden* does no such thing. The *Walden* Court held there was no jurisdiction because, unlike BIL here, the defendant did not do anything to avail himself of the benefits and protections of the forum. In *Walden*, the defendant was a Georgia police officer who searched the plaintiffs and physically seized cash from them while they were passing through the state. The plaintiffs attempted to sue the officer in their home state of Nevada, arguing that jurisdiction existed on the basis that the officer knew the plaintiffs were Nevada residents. 571 U.S. at 288-91. The Supreme Court rejected that theory, stating that "the plaintiff cannot be the *only* link between the defendant and the forum," as "the defendant's conduct … must form the necessary connection with the forum State." *Id*. at

289 (emphasis added). In so concluding, the Court relied on the fact that the defendant "never traveled to, conducted activities within, *contacted anyone in, or sent anything* or anyone to Nevada." *Id*. (emphasis added).

By contrast, the Liquidators do not argue (and *BLI* did not hold) that BIL is subject to jurisdiction because of the Funds' own contacts with the U.S., or BIL's knowledge of those contacts, or the mere foreseeability that the money they invested in the Funds would end up in the United States. Rather, as explained above, BIL ████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████, *see* Ex. 6 -659, -667, ████████████████ ██████████████████████████████, Mot. 18. And BIL did all of this after ████████████████████████████████████████████████. *See, e.g.*, Ex. 4-5. Moreover, as explained below, BIL—itself and via the Citco Subscriber—████████████████ ████████████████.

That conduct is not attributable to the Funds, nor are the resulting contacts "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286 (quoting *Burger King Corp.*, 471 U.S. at 475). Rather, jurisdiction here, as in *BLI*, stems directly from BIL and its agent's own deliberate actions aimed at the United States. *Lombard Odier II*, 2023 WL 395225 (concluding that *Walden* does not foreclose jurisdiction in this context because "New York is not just where Defendant's money happened to end up"). Even after *Walden*, Sentry's mere involvement in facilitating some of those actions does not foreclose jurisdiction. *Id.*; *see also Walden*, 571 U.S. at 286 ("[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties.").

26

2.    **BIL's Intentional Investment In The Funds Directly Relates To The Liquidators' Claims**

BIL's intentional investment in the Funds via the Citco Subscriber is directly related to the Liquidators' claims. To demonstrate a sufficient relationship between its claims and BIL's forum contacts, the Liquidators need only show "an affiliation between the forum and the underlying controversy." *Cathay Life Ins.*, 2022 WL 16626325, at *4. That standard is satisfied here.

The sole purpose for subscribing for shares of the Funds was to ultimately redeem those shares; otherwise, the Funds would hold the money in perpetuity. Without the subscriptions, BIL would have had no shares to redeem and could not have received the redemption payments to which its subscriptions gave rise. The two are inextricably linked.

BIL asserts that the Liquidators' claims "relate[] to and arise[] out of the calculation of the NAV," and, from this premise, BIL somehow draws the conclusion that the Liquidators' claims are therefore wholly unrelated to BIL's subscription in the Funds. Mot. 16. But BIL cannot artificially decouple its subscriptions in the Funds from its redemptions. This Court previously rejected that argument the last time BIL attempted to make it, when this Court held that "subsequent transfer claims against [d]efendant[s] for monies [they] received from the Fairfield Funds … are directly related to [those defendants'] investment activities with Fairfield and BLMIS." *BIL*, 2023 WL 2504787 at *5.

BIL further argues that the Liquidators have not established jurisdiction over each individual subsequent transfer. Mot. 11. The Court has also rejected this argument in a parallel proceeding by the BLMIS Trustee against BIL, where this Court held that "[b]y alleging that Dexia Defendants intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS." *BIL,* 2023 WL 2504787, at *6. The Liquidators, just like the Trustee, alleged that BIL intentionally invested in BLMIS and

27

have therefore established jurisdiction as to each subsequent transfer.

**C.    BIL And Its Agent Engaged In Other Business Activity In And Directed At The United States**

BIL's and its agent the Citco Subscriber's additional U.S.-oriented business activity also supports the exercise of jurisdiction here. Business contacts have long been considered a basis for the exercise of jurisdiction over a foreign defendant where that conduct is sufficiently related to the claims at issue. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 475-76 (collecting cases). That is true even where the defendant conducted most or even all of this business while overseas, *see In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 319 (S.D.N.Y. 2020) (explaining that conduct that "occurs entirely out-of-forum" may support jurisdiction "if the defendant expressly aimed its conduct at the forum" (quoting *Licci IV*, 732 F.3d at 173)), *rev'd in part on other grounds*, 61 F.4th 242 (2d Cir. 2023), and even where the conduct is carried out by the defendant's agent, *see In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. July 23, 2020).

**1.    Evidence Indicates BIL Engaged In Business Activity In And Directed At The United States**

The existing documentary record evidences business activities by BIL in and directed at the United States in connection with its Fund investments.

*First*, the long-form subscription agreements that ███████████████████████████ ████████████████████████████████████████████████████. *See* Ex. 21 at ¶ 19; *see also* Compl. ¶ 23. Judge Bernstein previously held that those provisions, standing alone, did not amount to a consent to personal jurisdiction in this action. *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018).[20] But they nonetheless support the exercise of jurisdiction: "A choice of law clause is a significant factor in a personal jurisdiction

---

[20] The Liquidators are appealing that decision to the Second Circuit.

analysis because the parties, by so choosing, invoke the benefits and protections of New York law"

and signal a lack of objection to litigating at least some disputes in U.S. courts. *Sunward Elecs.,*

*Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004); *see also In re Motors Liquidation Co.*, 565 B.R.

275, 288-89 (Bankr. S.D.N.Y. 2017) (holding that forum selection and choice of law clauses

"support[ed] finding personal jurisdiction"); *Lombard Odier I*, 2022 WL 2387523, at *5 n.2

(same); *BLI*, 480 B.R. at 516, 517 n.15 (same).



   *Second*, before, during, and after the Subscription Period, BIL ████████████

███████████████████████████████████████████████ *See* Exs. 4-5.

███████████████████████████████████████, *see* Ex. 5, ████████

███████████████████████, *see* Ex. 4 at -080-081. Moreover, on at least ████

████████████████████████████████████████. *See* Ex. 5 at -365-

433; Exs. 6-7. Finally, BIL ████████████████████████████████

████████████. Ex. 17.[21]

## 2.  The Court Should Infer That More Extensive Evidence Of U.S. Business Activity Once Existed And Has Been Destroyed

   This Court should also infer that BIL destroyed evidence of additional business contacts

with the United States. Courts have long recognized that ESI—such as emails and their

attachments, word processing documents, spreadsheets, instant messages, or voicemails—are

critical means by which businesses transact business, and as such can be sufficient to establish

---

[21] BIL has previously asserted that the correspondence attached as Ex. 17 is unrelated to investments at issue in this case. *See* Dkt. 1039 at 21:15-22:9 (Oct. 19, 2022 Hr'g Tr.). However, the Court should not credit this assertion. █████████████████████ Ex. 17 at -537 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ more directly concerning the at-issue investments occurred but was destroyed. Dkt. 1098 ¶¶ 2-3.

jurisdiction if aimed at the forum. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 30 (2d Cir. 1996) (questioning "whether, in an age of e-mail and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence"); *Ralph Lauren Corp. v. CSR Grp., Inc.*, 2016 WL 4919961, at *3 (S.D.N.Y. Sept. 14, 2016) (finding New York long-arm statute satisfied based on regular emails and telephone calls to New York). As this Court has likewise recognized, emails can demonstrate activities in or directed at the U.S. that directly bear on jurisdiction in actions similar to this. For instance, this Court has cited as favorable in establishing jurisdiction ESI reflecting, among other things: a party's regular communications with entities in the U.S., such as FGG, *see Picard v. LGT Bank in Liechtenstein Ltd.* (*In re Madoff*), 2023 WL 2003960, at *3 (Bankr. S.D.N.Y. Feb. 14, 2023); travel to, and meetings between a party and entities in, New York, including FGG and Madoff, *see Picard v. ASB Bank Corp.* (*In re Madoff*), 2022 WL 17087667, at *3 (Bankr. S.D.N.Y. Nov. 18, 2022); and detailed discussions of diligence concerning Fairfield and BLMIS, *see LGT Bank*, 2023 WL 2003960, at *3.



Here, the record demonstrates that BIL ███████████████████████████ ███████████████, *see* Exs. 4-5, 22-23, and the Court can and should infer that █████████████████████████████████ once existed but have been destroyed, ██████████████████████████████████████████. For instance, in 2005, ███████████████████████████████████████ ██████████████████████. Exs. 27-28; *see also* Ex. 29 at 136:4-20 (████████ ██████████████████████████████████). BIL has conceded that ███████████████████████████████ █████████████████████. *See* Ex. 29 at 145:8-146:17. Consistent with its ruling that "spoliated evidence would have been favorable to the Liquidators in

establishing personal jurisdiction over Defendant," Dkt. 1098 ¶ 3, the Court should infer that

deleted evidence would have shown that BIL ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████. *See, e.g.,* Exs. 4-5.

These contacts also plainly relate to the Liquidators' claims. For instance, BIL's ████

████████████████████████████████████████████████████████████████

████—a core element of the Liquidators' constructive trust claims. *In re Fairfield Sentry*

*Ltd.*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018). That is more than sufficient to conclude that the

above contacts relate to the Liquidators' claims and therefore support the exercise of jurisdiction.

*See Cathay Life Ins.*, 2022 WL 16626325, at *4.

**D.    BIL Utilized ████████████████ Of Sentry And The Citco
        Subscriber To Invest In And Receive Redemption Payments From Sentry**

The redemptions at issue in this case were with Sentry. BIL's intentional use of ████

████████████████████████████████████████████████—to subscribe for

shares in Sentry and receive each of the at-issue redemption payments from Sentry also supports

the exercise of jurisdiction. A defendant's use of an in-forum correspondent account is sufficient

to establish personal jurisdiction where said use is "deliberate," "recurring," and sufficiently

related to the harm for which the plaintiff seeks redress. *Licci IV*, 732 F.3d at 171-73. ████████

████████████████████████████ satisfies each of those three prongs.

**1.    BIL And Its Agent Deliberately ████████████████████████**

BIL, by itself and through its agent the Citco Subscriber, deliberately ████████

████████████████. A defendant's correspondent account use is "deliberate" if it "indicates

desirability and a lack of coincidence." *Licci IV*, 732 F.3d at 168 (quoting *Licci III*, 984 N.E.2d at

901). BIL's and its agent's ████████████████████████████████████████

████████████████ was a conscious and volitional one—not mere coincidence—that supports

the exercise of jurisdiction. *See, e.g.*, *Picard v. Meritz Fire & Marine Ins. Co. Ltd.* (*In re Bernard

L. Madoff*), 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022) ("Where a defendant

chooses to use a United States bank account to receive funds, exercising personal jurisdiction over

the defendant for causes of action relating to those transfers is constitutional."); *Cathay Life Ins.*,

2022 WL 16626325, at *3; *Licci IV*, 732 F.3d at 170-71.

### a.    **BIL Itself Deliberately Used** ████████████████████
████████

BIL's ████████████████████████████████████ in connection with its

investments in Sentry was deliberate. In its confirmation of ████████████████████

████████████████████████████████████████████████████████████

████████████████████████. Ex. 10 at -017. Because ████████████████

████████████████████████████████████████████████████████████.

*Id.* (████████████████████████████████████); Ex. 9 at -077 (████████████

████████████████████████). BIL—████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████. *See* Ex. 10 at -013

### b.    **The Citco Subscriber's Deliberate Use** ████████████████
████████████████████ **Is Imputed To BIL**

BIL is also subject to this Court's jurisdiction in light of the Citco Subscriber's ████████

████████████████████████████████████████████████████. *Licci IV*, 732 F.3d at 171-

73.

The Citco Subscriber, acting as BIL's agent, deliberately ████████████████████

32

██████████████████████████████████████████████████████████. *See*

Ex. 1 at -971; Ex. 18. The Citco Subscriber ███████████████████████. Ex. 11 at

-069. The Citco Subscriber, ████████████████████████████████████████████

██████████████.[22] Sentry wired those payments to the Citco Subscriber's U.S. account,

*solely because* the Citco Subscriber made the choice to use a U.S. account.

The Citco Subscriber's use of its U.S. correspondent account at HBUS to receive

redemption payments from Sentry on behalf of BIL is imputed to BIL. *See supra* at 10-11.

Therefore, Citco Subscriber's deliberate use of its U.S. correspondent account firmly supports this

Court's exercise of jurisdiction over BIL. *See, e.g.*, *Licci IV*, 732 F.3d at 170-71; *Cathay Life Ins.*,

2022 WL 16626325, at *3.

> c.    **BIL Deliberately Instructed Its Agent Citco Subscriber To** ████
> ████████████████

BIL also deliberately utilized Sentry's U.S. correspondent account, to which the Citco

Subscriber sent BIL's subscription payments. Courts have held that a defendant's transfer of

monies to a third-party's U.S. account can support the exercise of jurisdiction. *See Off. Comm. of*

*Unsecured Creditors of Arcapita v. Bahrain Islamic Bank* ("*Arcapita I*"), 549 B.R. 56, 68-69, 70

n.18 (S.D.N.Y. 2016). ████████████████████████████████████████, made clear

that ██████████████████████████████████████████████████████. Ex. 6

at -665, -696-697; Ex. 7 at -932, -964-965; Ex. 21 at -639, -641. BIL thus knew at the time of its

---

[22] Neither the subscription agreements, redemption request forms, nor rules governing the Citco
Subscriber's investments in Sentry, nor the mere fact that Sentry designated U.S. dollars as its base
currency, required the Citco Subscriber ████████████████████████████████████████
██████████████. *See* Joyce Decl. at 12-13. Sentry required ████████████████████
████████████████████████████████. *See* Ex. 4 ¶ 9; Ex. 30 (Sentry
Articles of Association) at 8-11. Further, the Second Circuit has recognized that, "[i]n light of the
widespread acceptance and availability of U.S. currency, [a foreign bank] could have … processed
U.S.-dollar-denominated wire transfers … through correspondent accounts anywhere in the
world." *Licci IV*, 732 F.3d at 171.

investments in Sentry that ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████ was therefore deliberate[23]—it was a direct consequence of its affirmative

choice to execute investments in Sentry, fully aware that ██████████████████████████

██████████████████████████████████

## 2.    **BIL And Its Agent Utilized** ████████████████████████
████████████████████████████████

BIL and the Citco Subscriber used U.S. correspondent accounts in transacting with Sentry.

"[A] foreign bank's *repeated use* of a correspondent account in New York [on behalf of a client]

… show[s] purposeful availment of New York's" banking, currency, and legal systems. *Licci IV*,

732 F.3d at 168 (emphasis added) (quoting *Licci III*, 984 N.E.2d at 900).

*First*, BIL sent ████████████████████████████████████████████

████████████████████████████. Ex. 10 at -013.[24] *Second*, ████████████████

████████████████████████████████████████████████████████████

████████████████████. *See* Ex. 21 at -640-641 (requiring that ████████████████

████████████████). *Third*, when BIL ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ Exs. 11, 13. In total, the Citco Subscriber received ███

████████████████████████████████████████████████████████████████

---

[23] The Court should also infer that additional evidence of such intentional use would have existed, but for BIL's spoliation. *See* Dkt. 1098. For example, surviving third-party evidence demonstrates that ████████████████████████████████████████████████████████████████
█████████████████████. *See* Ex. 17 (████████████████████████████████████).
[24] While the preliminary ██████████████ was for ██████████████, *see* Ex. 10 at -017, the final cost to BIL included ████████████████████████████████████████████████████████
████████████████████ *Id.* at -013.

████████. Exs. 18-19.[25]

BIL's and the Citco Subscriber's ████████████████ is sufficient to establish

personal jurisdiction. Courts have held that as few as one or two wire transfers in the scale of

millions through U.S. correspondent banks can suffice. *See Arcapita I*, 549 B.R. at 70 & n.18

(holding that even a single use of a third party's correspondent account use was sufficient);

*Schansman v. Sberbank of Russia PJSC*, 565 F. Supp. 3d 405, 414 (S.D.N.Y. 2021),

*reconsideration denied*, No. 119CV02985ALCGWG, 2022 WL 4813472 (S.D.N.Y. Sept. 30,

2022) (holding two transfers for a combined $300 where the plaintiff alleged generally that "some

of" the millions of dollars had been routed through U.S. accounts).[26] *A fortiori*, BIL's and the Citco

Subscriber's ███████████████████████████████████████████████

███████████████ is "recurring" and sufficient to confer personal jurisdiction over BIL.

3.    **BIL's And Its Agent's ██████████████ Was Sufficiently
      Related To The Harms Alleged**

BIL's and the Citco Subscriber's ████████████████ is sufficiently related to the

Liquidators' claims seeking to recover Sentry redemption payments. Where a defendant's use of

a U.S. account is "an instrument for accomplishing the alleged wrongs for which the plaintiff seeks

redress," it is sufficiently related to the claims at issue. *Licci IV*, 732 F.3d at 171; *see also FGG*,

627 B.R. at 566 ("[The 'arising out of' prong] may be satisfied when defendant's allegedly

culpable conduct involves at least in part financial transactions that touch the forum.").

As discussed above, a core element of the Liquidators claims is that BIL received inflated

---

[25] Though Sentry's ████████████████████████████████████████████████ Ex. 12, this payment was
ultimately ██████████████, Ex. 18.
[26] The same logic applies here as in other cases where additional transfers were at issue. *See Licci
IV*, 732 F.3d at 170-71; *Averbach v. Cairo Amman Bank*, 2020 WL 486860, at *5 (S.D.N.Y. Jan.
21, 2020), *R. & R. adopted* 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020).

redemption payments. And BIL accomplished the wrongs for which the Liquidators seek redress

████████████████████████████████████████████████████████

████████  █████████████████████████████████. That is enough to establish jurisdiction as to those

redemptions. *See Licci IV*, 732 F.3d at 171; *Picard v. BNP Paribas S.A.* (*In re Bernard L. Madoff*),

594 B.R. 167, 191 (Bankr. S.D.N.Y 2018) (finding that the claims for redemption payments

received by investors in a BLMIS feeder fund arose from the investors' receipt of redemption

payments at a New York account).

### E.    The Court May Exercise Jurisdiction Over BIL Even If The Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis

BIL attempts to make much ado about nothing by insisting that the Liquidators have

previously conceded "[t]he redemption transfers at issue here were purely foreign" and that "every

*relevant* component of the transactions at issue here occurred outside the [U.S.]" Mot. 15

(emphasis added) (quoting Pls.'-Appellants' Opening Br. for Second-Round Appeal at 24,

*Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911, Dkt. 440 (S.D.N.Y. July 21, 2021)

("Pls.' Opening Br.")); *see also id.* at 16 ("As the Liquidators themselves maintain, every element

of the transaction is 'purely foreign.'" (quoting Pls.' Opening Br. at 24)); *id.* at 3. BIL is quoting

the Liquidators' appellate brief out of context and ignoring black-letter law holding that "[t]he tests

for personal jurisdiction and extraterritoriality are not the same." *In re Ampal-Am. Israel Corp.*,

562 B.R. 601, 613 n.14 (Bankr. S.D.N.Y. 2017); *see also Absolute Activist Value Master Fund*

*Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (distinguishing the two tests).

For this reason, the set of facts relevant to the personal jurisdiction inquiry is different from

the set of facts relevant to the extraterritoriality inquiry. *Compare RJR Nabisco, Inc. v. European*

*Cmty.*, 579 U.S. 325, 337 (2016) (explaining that the extraterritoriality inquiry focuses on "conduct

relevant to the statute's focus"), *with Licci IV*, 732 F.3d at 170 (holding that the specific personal

jurisdiction inquiry focuses on the "totality" of the defendant's forum contacts that give rise or

relate to the plaintiff's claim). In this action, "the focus [of the *extraterritoriality*] analysis is the

location of the transfer" itself. *Picard v. Bureau of Lab. Ins.*, 2016 WL 6900689, at *19 (Bankr.

S.D.N.Y. Nov. 22, 2016), *vacated and remanded on other grounds*, 917 F.3d 85. By contrast, the

personal jurisdiction inquiry addresses a much broader set of facts, *see supra* Sections I.B-I.D,

including BIL's knowledge and intent in making the investment that gave rise to the transfers at

issue, *see BLI*, 480 B.R. at 517, BIL's ███████████████████████████████████████

███████████████████, *see Cathay Life Ins.*, 2022 WL 16626325, at *3, forum selection clauses in

the contracts governing that investment, *see Sunward Elecs.*, 362 F.3d at 23, and BIL's and its

agent's deliberate ██████████████████████████████████████████████████████████████

██████, *see Licci IV*, 732 F.3d at 168-71.[27]

The Liquidators referred to the redemption transfers as "purely foreign," because under

applicable law the only "*relevant component[s]*" of the redemption transfers for purposes of the

extraterritoriality analysis were in fact foreign. Pls.' Opening Br. at 24 (emphasis added), not

because it "served their purposes," Mot. 2. The Liquidators' characterization of the transfers as

foreign for purposes of extraterritoriality has no bearing on this motion.[28]

---

[27] The redemptions from Sentry are relevant to both inquiries given BIL's and Citco's ████████
████████████████████████████████████. The Liquidators' prior extraterritoriality argument
that those transfers are "foreign" was premised on well-settled law holding that use of a U.S.
correspondent account does not render otherwise foreign transfers domestic for extraterritoriality
purposes. *See* Pls' Opp'n Br. at 68-70, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, 10-ap-
03496, Dkt. 1336 (citing *Bureau of Lab. Ins.*, 2016 WL 6900689, at *20); s*ee also In re Madoff
Sec.*, 513 B.R. 222, 228 n.1 (S.D.N.Y. 2014); *Loginovskaya v. Batrachenko*, 764 F.3d 266, 268-
69 (2d Cir. 2014). That is not so for personal jurisdiction. *See, e.g., Licci IV*, 732 F.3d at 168-71.
[28] For years, the Liquidators have consistently made these extraterritoriality and personal
jurisdiction arguments in tandem, pointing out that transfers that are "foreign" for purposes of
extraterritoriality may still support personal jurisdiction. *See* Pls.' Opp'n Br. at 68-69.

## F.    The Court Should Reject BIL's "Group Pleading" Argument

BIL argues that because the Liquidators engaged in so-called "group pleading" with respect to their jurisdictional allegations, they cannot satisfy their burden of establishing personal jurisdiction on an individualized basis. Mot. 2, 9-10. Not so. As BIL acknowledges, the Liquidators' complaint includes allegations specific to BIL. *See* Mot. 9-10; Compl. ¶ 15 ("the Citco Subscribers" either retained the Redemption Payments or "paid all or some portion" of them to defendants including "Dexia Banque International A Luxembourg"); *id.* ¶ 65 ("[S]ome or all of the Redemption Payments made to the Citco Subscribers may have been paid to an account holder or holders associated with the Beneficial Shareholder, [BIL]."). And where the complaint does generalize amongst groups of defendants, it does so because the Liquidators' allegations apply with equal force to each defendant within that group. "Nothing … prohibits [the Liquidators from] collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015). And, post-discovery, the question is not just what the Liquidators alleged, but whether the Liquidators have averred facts that, when credited, establish personal jurisdiction. *Metro. Life Ins. Co.* 84 F.3d at 567.

Here, the Liquidators have averred facts based on documents and information uncovered during discovery which support the Court's exercise of personal jurisdiction over BIL. These facts show BIL's intent to invest in the U.S. securities market, its ███████████████████ to do so, and its engagement in additional business activity connected to the claims at issue. Based on those facts specific to BIL and its relevant forum contacts, the Liquidators have met their burden to establish jurisdiction over BIL on an individualized basis.

## II.    The Exercise Of Jurisdiction Over BIL Is Reasonable

Exercising specific jurisdiction over BIL—which, through an agent, deliberately chose to

invest in and profit from the U.S. securities market and repeatedly used the U.S. banking system to do so—is "reasonable under the circumstances" presented here. *U.S. Bank Nat'l Ass'n*, 916 F.3d at 150 (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1786). Because the Liquidators have made "a threshold showing of minimum contacts," the burden is on BIL to "present[] 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life Ins. Co.*, 84 F.3d at 568 (quoting *Burger King Corp.*, 471 U.S. at 477). BIL has not done so.

To assess reasonableness, courts consider: "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the 'interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and (5) 'the shared interests of the several States in furthering fundamental substantive social policies.'" *U.S. Bank Nat'l Ass'n*, 916 F.3d at 151 n.5 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)). "The primary concern is the burden on the defendant," *id.* (cleaned up), and dismissals on reasonableness grounds "should be few and far between," *Metro. Life Ins. Co.*, 84 F.3d at 575. These factors strongly support the exercise of jurisdiction in this case.

BIL argues that the exercise of jurisdiction would be unreasonable because BIL had no relevant contacts with the United States. Mot. 18. This is not so; BIL's U.S. contacts are sufficient to allow the Court to exercise jurisdiction over it. And BIL does not advance a single additional argument as to why the exercise of jurisdiction would be unreasonable.

BIL has no legally cognizable burden here. As this Court held in a similar action brought by the BLMIS Trustee, BIL has "actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel and … submitted to the jurisdiction of New York courts' when [BIL] signed subscription agreements with the Fairfield Sentry." *BIL*, 2023 WL 2504787, at *6. And "the conveniences of modern communication and transportation ease any burden the defense

39

of this case in New York might impose on [BIL]." *Licci IV*, 732 F.3d at 174 (citation omitted).[29]

Moreover, courts have long recognized that the U.S. has a strong interest in ensuring that its financial system is not used for unlawful purposes. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 31 (E.D.N.Y. 2016) ("[T]he Court also may take into account 'the United States' and New York's interest in monitoring banks and banking activity to ensure that its system is not used' [for unlawful purposes]" (quoting *Licci IV*, 732 F.3d at 174)). This case is about BIL's decision to indirectly invest in and reap profits from BLMIS and the U.S. securities market through feeder funds. Allowing foreign investors like BIL to evade U.S. jurisdiction in these circumstances, simply because they chose to invest through a foreign-based conduit as part of their scheme, would ignore the reality of the transactions, allowing them to reap all the benefits of the U.S. securities market without any of the corresponding obligations. That result would be all the more perverse where, as here, BIL and its agent deliberately and repeatedly ████████████████████ ████████████████████████████████, *see supra* Section I.D, and where the Court can infer that deleted evidence would have reflected those goals. *See* Dkt. 1098.

In sum, BIL has failed to establish that the exercise of jurisdiction is unreasonable where BIL intentionally invested in a Madoff feeder fund and ████████████████████ to reap the profits. BIL cannot now shield itself from liability after benefiting from those U.S. investments.

## CONCLUSION

For the reasons discussed above, the Court should deny BIL's Motion.

---

[29] Even if BIL had legitimate concerns about the burden of particular discovery requests, they have no place "in the context of assessing the reasonableness of an exercise of personal jurisdiction," *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 333 (S.D.N.Y. 2018) (cleaned up), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018); *see Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 99 (S.D.N.Y. 2015) (noting "no other courts" considered this version of a foreign law argument, and "declin[ing] to be the first")—particularly because this Court has found that BIL intentionally spoliated.

Date: May 2, 2023

Respectfully submitted,

SELENDY GAY ELSBERG PLLC

/s/  David Elsberg
David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
Lauren Zimmerman
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
delsberg@selendygay.com
mginzburg@selendygay.com
jgoldstein@selendygay.com
lkonanova@selendygay.com
dflugman@selendygay.com
jmargolin@selendygay.com
lzimmerman@selendygay.com

-and-

BROWN RUDNICK LLP
David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for the Plaintiffs Joint Liquidators*