UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LIMITED, et al., | Case No. 10-13164 (CGM) |
| Debtor in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03635 (CGM) |
| Plaintiffs, | |
| v. | |
| ABN AMRO Schweiz AG a/k/a AMRO (SWITZERLAND) AG, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03636 (CGM) |
| Plaintiffs, | |
| v. | |
| ABN AMRO Schweiz AG a/k/a AMRO (SWITZERLAND) AG, et al., | |
| Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO BANK JULIUS BAER & CO. LTD.'S MOTION TO DISMISS

Date: May 12, 2023

SELENDY GAY ELSBERG PLLC

David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
Lauren Zimmerman
1290 Avenue of the Americas

New York, NY 10104
Telephone: 212-390-9000

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ................................................................................................5

    A.    The Funds ..............................................................................................5

    B.    The Citco Entities ...............................................................................5

    C.    BJB's Decision to Invest in the Funds ................................................6

    D.    █████████████████████ ...............................................9

    E.    BJB's Investment In The Funds ........................................................10

STANDARD ...................................................................................................13

ARGUMENT ..................................................................................................14

I.    BJB Has Sufficient Minimum Contacts With The United States .....................14

    A.    The Citco Subscriber's Contacts With The United States And Knowledge About The Funds Is Imputed To BJB ................................17

    B.    BJB Knowingly And Intentionally Invested In Madoff Feeder Funds .................20

        1.    BJB Purposefully Availed Itself Of The United States Via Its Intentional Investment In The Funds ........................................21

        2.    BJB's Intentional Investment In The Funds Directly Relates To The Liquidators' Claims ..............................................27

    C.    BJB Utilized ██████████████ Of Sentry And Citco Subscriber To Invest In And Receive Redemption Payments From Sentry .........28

        1.    █████████████████████████████ In Lieu Of Offshore Accounts...................28

        2.    BJB And Its Agent, The Citco Subscriber, Utilized ███ ████████████ To Effectuate At Least ██ Wire Transfers ........31

        3.    BJB's And Its Agent, The Citco Subscriber's, ████████ ██████████ Was Sufficiently Related To The Harms Alleged...............32

    D.    BJB And Its Agent, The Citco Subscriber, Engaged In Other Business Activity In And Directed At The United States...................33

E.      The Court May Exercise Jurisdiction Over BJB Even If The Transfers Are
        Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis ..........35

F.      The Court Should Reject BJB's "Group Pleading" Argument .............................37

II.    The Exercise Of Jurisdiction Over BJB Is Reasonable .....................................38

CONCLUSION.................................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

<u>Cases</u>

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012) ............................................................................. 35

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
    480 U.S. 102 (1987) ....................................................................................... 38

*Averbach v. Cairo Amman Bank*,
    2020 WL 486860 (S.D.N.Y. Jan. 21, 2020),
    *R. & R. adopted* 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020) ........................................ 32

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990) ............................................................................. 14

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
    2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014) ................................................................. 19

*Branham v. ISI Alarms, Inc.*,
    2013 WL 4710588 (E.D.N.Y. Aug. 30, 2013) ................................................................. 17

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
    137 S. Ct. 1773 (2017) ............................................................................. 15, 38

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .................................................................... 15, 26, 33, 38

*CutCo Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986) ......................................................................... 15, 17

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ....................................................................................... 15

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013) ............................................................................. 14

*Drake v. Lab. Corp. of Am. Holdings*,
    2008 WL 4239844 (E.D.N.Y. Sept. 11, 2008) ................................................................. 14

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ................................................................................... 16

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
    667 F. Supp. 2d 308 (S.D.N.Y. 2009) ................................................................. 17

*Goodyear Dunlap Tires Ops., S.A. v. Brown*,
    564 U.S. 915 (2011).................................................................................. 16

*Gucci Am., Inc. v. Weixing Li*,
    135 F. Supp. 3d 87 (S.D.N.Y. 2015).................................................... 39

*In re Ampal-Am. Israel Corp.*,
    562 B.R. 601 (Bankr. S.D.N.Y. 2017)................................................. 35

*In re Bernard L. Madoff Investment Securities LLC*,
    2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ................................. 4, 27

*In re Eur. Gov't Bonds Antitrust Litig.*,
    2020 WL 4273811 (S.D.N.Y. Jul. 23, 2020) ...................................... 16, 17, 25

*In re Fairfield Sentry Ltd.*,
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ......................... 34

*In re Madoff Sec.*,
    513 B.R. 222 (S.D.N.Y. 2014).............................................................. 36

*In re Motors Liquidation Co.*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017)................................................. 34

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019).................................................................... 22

*In re Platinum & Palladium Antitrust Litig.*,
    449 F. Supp. 3d 290 (S.D.N.Y. 2020),
    *rev'd in part on other grounds*, 61 F.4th 242 (2d Cir. 2023)............ 33

*In re Sumitomo Copper Litig.*,
    120 F. Supp. 2d 328 (S.D.N.Y. 2000).......................................... 15, 17

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012)..................................................................... 3

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)........................................................ *passim*

*Licci v. Lebanese Canadian Bank, SAL*,
    984 N.E.2d 893 (N.Y. 2012)...................................................... 16, 28, 31

*Loginovskaya v. Batrachenko*,
    764 F.3d 266 (2d Cir. 2014)................................................................ 36

*Maersk, Inc. v. Neewra, Inc.*,
    554 F. Supp. 2d 424 (S.D.N.Y. 2008)................................................. 17

iv

*McGee v. Int'l Life Ins. Co.*,
355 U.S. 220 (1957) ......................................................................................... 15

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
295 F. Supp. 3d 404 (S.D.N.Y. 2017) ............................................................... 14

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) ............................................................. 13, 14, 37, 38

*MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*,
2021 WL 4461773 (S.D.N.Y. Sept. 29, 2021) ................................................... 16

*Nike, Inc. v. Wu*,
349 F. Supp. 3d 310 (S.D.N.Y. 2018),
*aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018) ..................................................... 39

*Obabueki v. Int'l Bus. Machines Corp.*,
2001 WL 921172 (S.D.N.Y. Aug. 14, 2001) ..................................................... 14

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016) ....................................................................... 31, 32

*Picard v. Bank Julius Baer & Co. Ltd. (In re Bernard L. Madoff)*,
2022 WL 17726520 (Bankr. S.D.N.Y. Dec. 15, 2022) .............................. *passim*

*Picard v. Banque Lombard Odier & Cie SA (In re Bernard L. Madoff)*,
2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ........................................... 4

*Picard v. Barfield Nominees Ltd. (In re Bernard L. Madoff)*,
2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022) .................................... 4, 22

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*,
594 B.R. 167 (Bankr. S.D.N.Y 2018) ............................................................... 33

*Picard v. Bureau of Lab. Ins.*,
2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016),
*vacated and remanded on other grounds*, 917 F.3d 85 ..................................... 36

*Picard v. Bureau of Labor Ins. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........................................... 21, 25, 34, 36

*Picard v. Cathay Life Ins. Co. (In re Bernard L. Madoff)*,
2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ............................... *passim*

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021) .......................................................... 15, 33

v

*Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ...................................................... 21

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) ....................................................................... 15, 22

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.* (*In re Bernard L. Madoff*),
    2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ...................................................... 29

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
    2021 WL 2000371 (S.D.N.Y. May 19, 2021) ................................................................. 20

*RJR Nabisco, Inc. v. European Cmty.*,
    579 U.S. 325 (2016)........................................................................................................ 35

*Schansman v. Sberbank of Russia PJSC*,
    565 F.Supp.3d 405 (S.D.N.Y.2021).............................................................................. 32

*Schechter v. Banque Commerciale Privee*,
    1991 WL 105217 (S.D.N.Y. June 11, 1991) .................................................................. 20

*Sec. Ins. Co. of Hartford v. ITA Textiles Corp.*,
    2000 WL 1576879 (S.D.N.Y. Oct. 23, 2000) ................................................................ 19

*Strauss v. Credit Lyonnais, S.A.*,
    175 F. Supp. 3d 3 (E.D.N.Y. 2016) .............................................................................. 39

*Struna v. Leonardi*,
    2022 WL 4096146 (S.D.N.Y. Sept. 7, 2022) ................................................................. 17

*Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*,
    2022 WL 36489 (S.D.N.Y. Jan. 4, 2022) ...................................................................... 16

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004)....................................................................................... 34, 36

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019)..................................................................................... 15, 38

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*,
    2015 WL 4040882 (S.D.N.Y. July 2, 2015) .................................................................. 37

*Walden v. Fiore*,
    571 U.S. 277 (2014)................................................................................................. 26, 27

## <u>Other Authorities</u>

Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb. 6, 2009), https://www.reuters.com/article/us-madoff-victims/savings-lost-to-madoff-elderly-forced-back-to-work-idUSTRE5156FB20090207 .................................................. 1

Kenneth M. Krys and Greig Mitchell (the "Liquidators"), in their capacities as the duly appointed Liquidators and Foreign Representatives of Fairfield Sentry Limited (In Liquidation) ("Sentry") and Fairfield Sigma Limited (In Liquidation) ("Sigma" and, together with Sentry, the "Funds") in the above-captioned adversary proceeding (together, with the other adversary proceedings now pending against the Funds' former shareholders, the "U.S. Redeemer Actions"), respectfully submit this memorandum of law in opposition to Bank Julius Baer & Co. Ltd.'s ("BJB") motions to dismiss the Fifth Amended Complaint ("Complaint" or "Compl.") (10-ap-3635, Dkt. 620; 10-ap-3636 Dkt. 679)[1] under Federal Rule of Civil Procedure 12(b)(2) as made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Motion" or "Mot.") (10-ap-3635, Dkt. 760; 10-ap-3636, Dkt. 827).

## PRELIMINARY STATEMENT

The Liquidators seek to recover at least ████████ in payments[2] that BJB received as redemptions of its investment in Bernie Madoff's Ponzi scheme. Several Fairfield investors saw their life savings, retirement funds, and pensions wiped out in an instant when the scheme collapsed in December 2008.[3] But as a sophisticated entity with inside knowledge about Madoff's fraud, BJB was able to get out early and reap a massive profit for itself and its clients before Madoff's investment firm was put into bankruptcy. BJB now attempts to evade responsibility by

---

[1] Unless otherwise specified, docket citations refer to filings in the 10-ap-3636 action.

[2] BJB received approximately ████████ from Sentry and approximately ████████ from Sigma through the redemption payments at issue. For purposes of this brief, the Liquidators have applied the exchange rate as of the date of each redemption payment out of Sigma and calculated the dollar value of the Sigma redemptions to be approximately ████████. This number may vary if the Court ultimately determines that a different exchange rate applies.

[3] See generally Jason Szep, Savings Lost to Madoff, Elderly Forced Back to Work, Reuters (Feb. 6, 2009), https://www.reuters.com/article/us-madoff-victims/savings-lost-to-madoff-elderly-forced-back-to-work-idUSTRE5156FB20090207.

1

minimizing its own substantial and purposeful connections with the U.S. BJB should be held to account and its Motion denied.

The facts relevant to this Motion are simple. When BJB withdrew its investment from two Fairfield Funds, it received inflated redemption payments that were substantially sourced from investors' monies that Fairfield had invested in Madoff's eponymous New York investment firm, Bernard L. Madoff Securities LLC ("BLMIS"), through which Madoff operated his Ponzi scheme. Both to make its investments in and to receive, at the expense of other investors, redemption payments from the Funds—the same redemption payments the Liquidators seek to recover in this action—BJB retained Citco entities as its agents.

Citco was at the center of the Funds' business: entities within the Citco corporate family provided administration, banking, and custodial services to the Funds. ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████ The Citco agent's conduct is imputed to BJB for purposes of this motion.

Thus, BJB knew where its investments were going: ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ BJB is subject to this Court's jurisdiction as a result of that conduct.

For the Court to exercise specific jurisdiction over a defendant, the defendant must have sufficient contacts with the forum that relate to the claims at issue, and the exercise of jurisdiction must be reasonable. BJB's and its agent, the Citco Subscriber's, extensive, intentional contacts with the U.S. more than sufficiently support this Court's exercise of jurisdiction over BJB.

*First*, BJB's and its agent, the Citco Subscriber's, contacts with the U.S. were voluminous and are directly related to the Liquidators' claims. For example, BJB:

- Subscribed for ███████ shares in Sentry and ███████ shares in Sigma, ████████████████████, worth a combined total value of at least ████████████,[4] with the sole purpose of investing in U.S.-based BLMIS ███████████████████████████████████████████[5]

- ████████████████████████████████████████;

- Authorized an agent to utilize ███████████████████[6] on at least ██ occasions to make at least ██[7] subscription payments to Sentry worth ███████████ in total, and to receive ██ redemption payments from Sentry, worth ████████████ in total;

- Instructed its agent to sign subscription agreements governed by the laws of New York and that selected New York as the forum for any related litigation for Sentry and Sigma at least ████████████, respectively;

- ████████████████████████████████████████████████; and

---

[4] The value of BJB's Sigma subscriptions is calculated as discussed above, *see supra* note 2, and is subject to the same caveat discussed therein.

[5] Throughout this brief, the Liquidators refer to BJB's "investment" with BLMIS. The Liquidators do not allege that the BJB was invested in BLMIS itself, but instead refer to BJB's investment in BLMIS by way of the Funds.

[6] "Correspondent accounts are accounts in domestic banks held in the name of foreign financial institutions" that are used "to effect dollar transactions." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"), 673 F.3d 50, 56 n.3 (2d Cir. 2012) (cleaned up).

[7] The Liquidators have identified documents confirming ██ occasions of ██████████████ ████████ for BJB's subscriptions to Sentry. The Liquidators have no reason to believe that BJB did not also utilize ████████████████████ on the other ██ occasions it subscribed for Sentry shares.

3

- ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

This Court already found personal jurisdiction exists over BJB in an action brought by the BLMIS Trustee based on substantially the same redemptions from Sentry that are at issue in our case. *Picard v. Bank Julius Baer & Co. Ltd. (In re Bernard L. Madoff)* ("*BJB & Co.*"), 2022 WL 17726520 (Bankr. S.D.N.Y. Dec. 15, 2022). The *BJB & Co.* decision is consistent with a line of recent cases by this Court[8] in which it found jurisdiction based on a defendant's subscription into the Funds for investment through BLMIS in the U.S. securities market. And BJB's contacts listed above directly relate to the crux of the Liquidators' claims: that BJB redeemed its Fund shares knowing that the payments it would receive in return would be inflated due to inaccurate and fraudulent value statements. Without these U.S. contacts, there would have been no investment, no redemptions, and no benefit to BJB. The factual nexus between BJB's forum contacts and the Liquidators' claims more than sufficiently supports the exercise of specific personal jurisdiction.

*Second*, this Court's exercise of personal jurisdiction over BJB is more than reasonable, and allowing the suit to proceed is consistent with notions of fair play and substantial justice. The United States has a substantial interest in this dispute, as it concerns BJB's deliberate choice to invest ███████████████ in, and wrongfully profit from, a fraudulent scheme in the U.S. securities market ███████████████████████ at the expense of other investors. Any burden BJB faces as a litigant in this forum is minimal at best, and can be mitigated through

---

[8] *See, e.g.*, *Picard v. Banque Lombard Odier & Cie SA* (*In re Bernard L. Madoff*) ("*Lombard Odier I*"), 2022 WL 2387523, at *3 (Bankr. S.D.N.Y. June 30, 2022), *leave to appeal denied sub nom. In re Bernard L. Madoff Investment Securities LLC* ("*Lombard Odier II*"), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023); *Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*) ("*Cathay Life Ins.*"), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022); *Picard v. Barfield Nominees Ltd.* (*In re Bernard L. Madoff*) ("*Barfield*"), 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022).

electronic transmission of document productions and redactions to address asserted privacy concerns arising from foreign law. BJB has not come close to meeting its burden of presenting a compelling case that exercising jurisdiction would be unreasonable.

This Court should deny BJB's Motion and reach the merits of the Liquidators' claims.

## **BACKGROUND**

### A.    The Funds

Sentry and Sigma—along with non-party, Fairfield Lambda—were collectively the largest BLMIS "feeder funds," funneling billions of dollars into New York-based BLMIS over 18 years. Compl. ¶¶ 5, 133-34. From their inception in 1990, until the widespread disclosure of Madoff's fraud in December 2008, the Funds sought out new investments through the sale of shares and transferred substantially all net proceeds to their New York accounts, which were managed by BLMIS. *Id.* ¶¶ 5, 135. Sentry transferred its proceeds directly to BLMIS in New York, while Sigma, established for Euro-denominated investments, transferred proceeds to Sentry. *Id.* ¶¶ 5, 133-34.

### B.    The Citco Entities

Central to the Funds' operations were several companies within the Citco corporate family. Citco Fund Services (Europe) B.V. administered the Funds, and Citco Global Custody N.V. served as the Funds' custodian. Citco Bank Nederland N.V. and Citco Bank Nederland N.V. Dublin Branch provided an important banking service function for the Funds—they received subscription payments from and paid out redemption payments to the Funds' shareholders; they also facilitated the transfer of the money the Funds received from its shareholders to and from BLMIS. Thus, ███

███████████████████████████████████████████████████

█████████████████████████████ .

5

Citco Global Custody N.V. and Citco Global Custody (N.A.) N.V., along with Citco Bank Nederland N.V. and Citco Bank Nederland N.V. Dublin Branch (and, in one instance, the Amsterdam Branch), as well as Citco Banking Corporation (collectively, the "Citco Subscriber"), all played important roles in facilitating investments by the Funds' beneficial shareholders such as BJB that did not themselves serve as the subscriber of record. ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████. *See, e.g.*, Ex. 3 ███████████████

███████████████████████████████████████████); Ex. 2

(███████████████████████████████.[9]

### C.     BJB's Decision to Invest in the Funds

BJB[10] first invested in two Fairfield feeder funds—Sentry and Sigma—through the Citco Subscriber, beginning with ███████████. Ex. 46 (A000001.00000001); Ex. 47 (CGC-LIQ-00000002) (Citco transaction spreadsheets). This was the beginning of BJB's serial investments in the Funds. From ████████████████ (the "Subscription Period"), the Citco Subscriber, on behalf of BJB, made at least ██ separate subscriptions into Sentry and Sigma, for which it executed at least ██ subscription agreements, for a total of approximately ███████ shares between the two Funds. *Id*.; Ex. 37.

---

[9] Unless indicated otherwise, all exhibits refer to those attached to the Declaration of Lena Konanova ("Konanova Decl.").

[10] BJB is also known as Bank Julius Baer & Co. AG per Switzerland's Central Business Name Index, https://www.zefix.ch/en/search/entity/list/firm/12616.



BJB knew where the money was going when it made these investments.

Ex. 31.

Ex. 33,

Ex. 28.

(Ex. 23);                              (Ex. 22);

(Ex. 27).

*See, e.g.*, Ex. 11                              ; Ex. 29

Ex. 30

Ex. 29 at -768;

Ex. 30 at -827; *see also* Ex. 11 at 18.



Ex. 29 at -767; *see also* Ex. 11 at 6, 10, 11.

Ex. 29 at -774; Ex. 30 at -823.

Ex. 11 at 6

; *see also* Ex. 30 at -821 (similar); Ex. 29 at -767 (similar);

Ex. 29 at -772 *see also* Ex. 11 at 14-15.

(Ex. 13)        (Ex. 14),

Exs. 13, 14.

Ex. 19 at -502.1        , -506.1, -515.1. Indeed,



Ex. 20; *see also* Ex. 15.

Ex. 21; *see also* Ex. 16.

Ex. 32.

*Id.*

**D.**

*See* Ex. 7.

*Id.* at -046-47.

---

[11]

*See supra* at pp. 5-6.

██████████████████████████████████████████████████

████████████████████████████████ *Id.* at -050.

█████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ *Id.* at -059-062. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ *Id.* at -059-060. ████████

████████████████████████████████████████████████

████████████████ *Id.* at -059-061.

**E.    BJB's Investment In The Funds**

█████████████████████████████████████████████

████████████████████████████████ *See, e.g.*, Ex. 26. ████████

████████████████████████████████████████████████

████████████████ *Id.* ████████████████████████████

██████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



[12] Ex. 6 at -092-093.

*See, e.g.*, Ex. 25.

*See, e.g.*, Ex. 11 ; Ex. 29

; Ex. 30

*E.g.*, Exs. 11, 29.

(Ex. 7 at -054).

*E.g.*, Ex. 12.

*E.g.*, Ex. 4.

*E.g.*, Ex.

[12]

Ex. 6 (at -093-094); *see also*
Compl. ¶ 23 (alleging that the Citco Subscriber agreed to submit to the jurisdiction of New York courts in connection with proceedings related to Sentry and Sigma).

9 (at -154). ██████████████████████████████████████████████

████████████████████████████████████████████████ Ex. 48. The

Citco Subscriber was free to choose an account outside the U.S. *See* Declaration of Sara Joyce

("Joyce Decl.") at 6-9, 11-13. ██████████████████████████████████

██████████████████████████████████ Exs. 4, 48.

████████████████████████████████████████████████████

██████████████████████████████████████ Exs. 5, 43.[13]

From March 23, 2005, through August 18, 2008 (the "Redemption Period"), the Citco

Subscriber requested (and the Funds processed) █████████████████████████

██████████████████████████████████████████████████

Exs. 46-47. ██████████████████████████████████████████

██████████████████████████████████████████████████

Ex. 48. ████████████████████████████████████████████

███████████████ *See, e.g.*, Ex. 43.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ *See, e.g.*, Ex. 10 ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[13] Certain other transaction documents, ████████████████████████

████████████████████████████████████ At this stage of the litigation, ambiguity

in the documentary evidence should be resolved in the Liquidators' favor.

12



## **STANDARD**

Courts in this Circuit apply one of three standards to Rule 12(b)(2) motions. If the motion is assessed solely on the pleadings, the plaintiff may defeat the motion based on "legally sufficient allegations" alone. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007 (1996). If discovery is permitted *and* the court holds an evidentiary hearing, "the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence." *Id.* at 567. And where, as here, the court assesses the motion after jurisdictional discovery but *without* holding an evidentiary hearing, the plaintiff need only make a factually supported *prima facie* showing of jurisdiction. *See id.* (quoting *Ball v.*

*Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Obabueki v. Int'l Bus.
Machines Corp.*, 2001 WL 921172, at *2 (S.D.N.Y. Aug. 14, 2001).

In this context, the court must credit the facts averred in the pleadings and motion papers
as true and must "construe[] the pleadings and affidavits in the light most favorable to the
plaintiff … resolv[ing] all doubts in plaintiff's favor, notwithstanding any 'controverting
presentation by the moving party.'" *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F.
Supp. 3d 404, 409 (S.D.N.Y. 2017) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722
F.3d 81, 85-86 (2d Cir. 2013)); *accord Drake v. Lab. Corp. of Am. Holdings*, 2008 WL 4239844,
at *1 (E.D.N.Y. Sept. 11, 2008) ("Despite this higher burden, the Court must 'credit [Plaintiff's]
averments of jurisdictional facts as true.'" (quoting *Metro. Life Ins. Co.*, 84 F.3d at 567)). Likewise,
the court must draw "reasonable inference[s]" in the plaintiff's favor based on facts developed in
discovery. *Drake*, 2008 WL 4239844, at *5; *see also Obabueki*, 2001 WL 921172, at *1 (stating
that the court must draw reasonable inferences in the plaintiff's favor notwithstanding the fact that
the parties had engaged in jurisdictional discovery).[14]

## **ARGUMENT**

This Court has personal jurisdiction over BJB because BJB has sufficient minimum
contacts with the United States and because the exercise of jurisdiction over BJB is reasonable.

## I.    **BJB Has Sufficient Minimum Contacts With The United States**

BJB has sufficient minimum contacts with the United States to permit this Court to exercise
jurisdiction over it. Jurisdiction under Bankruptcy Rule 7004 is assessed based upon the

---

[14] The Liquidators have not pursued discovery on the merits from BJB, including, for example,
documents demonstrating that BJB knew the Funds' net asset values were inflated. To the extent
the Court considers those allegations in resolving BJB's Rule 12(b)(2) motion, it should credit
those allegations as true per the standard applicable in the absence of jurisdictional discovery. *See
Metro. Life Ins. Co.*, 84 F.3d at 566-67.

14

defendant's "contacts with the United States, rather than with the forum state," and there is no need for the Court to address the forum state's long-arm statute. *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*) ("*FGG*"), 627 B.R. 546, 565 nn.12, 13 (Bankr. S.D.N.Y. 2021) (citing *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015)). Demonstrating the requisite minimum contacts for specific personal jurisdiction requires showing (1) a defendant's "purposeful availment" of the forum (2) that "arises out of or relates to" the alleged misconduct. *FGG*, 627 B.R. at 566; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985); *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1785-86 (2017)). Courts assess both prongs based on the "totality of the circumstances." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"), 732 F.3d 161, 170 (2d Cir. 2013).

Satisfying the first prong, "purposeful availment," requires showing that the defendant has sufficient contacts with the forum resulting from the defendant's own actions. *FGG*, 627 B.R. at 566. The defendant's activities "need not have taken place within the forum, and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (cleaned up) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Moreover, a defendant "can purposefully avail itself of a forum by directing its agents … to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). Imputing an agent's conduct for jurisdictional purposes does not require "a formal agency relationship between the defendant and [its] agent," *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000). Rather, courts may impute an agent's conduct within or aimed at the forum to the principal when, based on "the realities of the relationship in question rather than the formalities of agency law," *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986), the court

15

concludes that the "alleged agent acted in [the forum] for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. Jul. 23, 2020).

Satisfying the second prong, "arises out of or relates to," requires showing that there is a "sufficiently close link" between the defendant's contacts and the claims at issue. *MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*, 2021 WL 4461773, at *3 (S.D.N.Y. Sept. 29, 2021) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1032 (2021)). A causal relationship between the plaintiff's claims and the defendant's forum contacts is *not* required. *See, e.g., Cathay Life Ins.*, 2022 WL 16626325, at *4 (citing *Ford Motor Co.*, 141 S. Ct. at 1027). An "affiliation between the forum and the underlying controversy" is sufficient. *Id.* (quoting *Goodyear Dunlap Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*, 2022 WL 36489, at *8 (S.D.N.Y. Jan. 4, 2022) (holding that the claims must be "arguably connected" to, rather than "completely unmoored" from, the contacts at issue) (quoting *Licci v. Lebanese Canadian Bank, SAL* ("*Licci III*"), 984 N.E.2d 893, 900-01 (N.Y. 2012)).

The facts averred and evidence presented by the Liquidators, which must be taken as true for purposes of this Motion, are sufficient to satisfy both prongs of the minimum contacts test. BJB purposefully availed itself of the United States by intentionally investing in BLMIS feeder funds Sentry and Sigma via the Citco Subscriber with the express intention of profiting from BLMIS's investments in the U.S. securities market (**Section I.B**, *infra*), repeatedly directing, via the Citco Subscriber, funds into the Citco Subscriber's and Sentry's ███████████████████ ███ to effectuate both the investment and then the redemptions from Sentry (**Section I.C**, *infra*), and engaging in other business activity within and aimed at the United States (**Section I.D**, *infra*),

16

each of which constitutes an independent basis for the Court's exercise of personal jurisdiction over BJB. And each of those contacts is closely related to the Liquidators' claims. BJB therefore has sufficient minimum contacts with the United States.

A.    **The Citco Subscriber's Contacts With The United States And Knowledge About The Funds Is Imputed To BJB**

The Court should impute the Citco Subscriber's knowledge and forum-directed activities to BJB in resolving the instant Motion because (1) the Citco Subscriber's conduct in investing in the Funds was taken on behalf and for the benefit of BJB; (2) the Citco Subscriber acted at the direction and under the control of BJB; and (3) the Citco Subscriber acted pursuant to BJB's knowledge and consent. *See In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6.

The on behalf/benefit of prong is satisfied when an agent's activities open the principal to financial gain. *See In re Sumitomo Copper Litig.*, 120 F. Supp. 2d at 336 (finding that potential profits from agent's trading activities established benefit); *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (holding that proceeds from sale of a property by the agent established benefit). The control prong is satisfied when the principal has "[an] ability … to influence [the agent's] acts or decisions by virtue of the parties' respective roles." *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 442 (S.D.N.Y. 2008) (cleaned up) (citing *CutCo*, 806 F.2d at 336). Absolute control by the principal is not necessary. *Id.* The knowledge and consent prong is satisfied when the principal is apprised of the agent's activities. *See Struna v. Leonardi*, 2022 WL 4096146, at *9 (S.D.N.Y. Sept. 7, 2022). The principal's decision not to take any action regarding the agent's activities further evidences the principal's knowledge and consent as to those activities. *Branham v. ISI Alarms, Inc.*, 2013 WL 4710588, at *7 (E.D.N.Y. Aug. 30, 2013). Applied here, those three factors demonstrate that the Citco Subscriber's contacts

with the forum concerning BJB's investment in the Funds and knowledge about the relationship

between the Funds and BLMIS should be imputed to BJB.

*First*, the Citco Subscriber's activities were performed on behalf of BJB and benefited BJB.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████ *E.g.*, Ex. 29

(emphasis added). ████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████

*Second*, BJB exercised control over the Citco Subscriber's subscription- and redemption-

related activities. ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████ (Ex. 5 at -050) (emphasis added). ██████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ *Id.*

§ 1.1 (at -059). ████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Therefore, BJB was the principal with respect to those transactions and exercised the requisite control over the Citco Subscriber as its agent.

*Finally*, BJB was aware of and consented to the Citco Subscriber's activities relating to the subscriptions and redemptions on BJB's behalf. ████████████████████████████

████████████████████████████████████████

████████████████████ *Id.* § 2.2 (at -047). ████████████

████████████████████████████████████████

████████████████████ *id.* § 1.2 (at -059), ████████████

████████████████ *id.* § 1.4 (at -060). ████████████████

████████████████████████████████████████

████████████████████████████████████████ *Id.* at

-063. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████

In sum, the Citco Subscriber conducted activities relating to its subscriptions and redemptions on behalf and for the benefit of, under the control of, and with the knowledge and consent of BJB. Courts have found an agency relationship in similar cases. *See, e.g.*, *Sec. Ins. Co. of Hartford v. ITA Textiles Corp.*, 2000 WL 1576879, at *2 (S.D.N.Y. Oct. 23, 2000) (imputing contacts of insurance broker who solicited quotes and secured an insurance policy for the defendant); *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, 2014 WL 1331046, at *4 (S.D.N.Y. Mar. 31, 2014) (finding that foreign corporation acted as agent of foreign defendant by

19

negotiating and entering a joint venture agreement on the defendant's behalf); *Schechter v. Banque Commerciale Privee*, 1991 WL 105217, at *11 (S.D.N.Y. June 11, 1991) (finding that individual who secured a guaranty for a note per defendant's directions served as defendant's agent for jurisdictional purposes); *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 2021 WL 2000371, at *8 (S.D.N.Y. May 19, 2021) (imputing the conduct of a corporation that sourced an insurance policy from New York-based underwriter pursuant to authority delegated by defendant). Therefore, the Citco Subscriber was BJB's agent for jurisdictional purposes.

Of the various functions it served as BJB's agent in connection with BJB's investment in the Funds, the Citco Subscriber's role as a payment processor is particularly relevant here. ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ (Ex. 5 at -048), ████████████████████████████████████ *id.*

§ 7.1.3 (BJBC_0000045 at -050).

Simply put, BJB *specifically authorized* the Citco Subscriber to act as its agent in submitting subscription payments to and receiving redemption payments from Sentry. Accordingly, the Citco Subscriber's actions in effectuating payments relating to BJB's investments and redemption of shares in the Funds—those expressly instructed by BJB, as well as those taken by the Citco Subscriber in exercise of the discretion delegated by BJB—are imputed to BJB.

## B.    BJB Knowingly And Intentionally Invested In Madoff Feeder Funds

The evidence presented by the Liquidators makes clear that BJB intentionally invested in BLMIS feeder funds Sentry and Sigma knowing that the Funds were designed to subsequently invest that money in New York-based BLMIS. BJB is subject to this Court's jurisdiction with respect to its Sentry and Sigma redemptions as a result of that conduct.

### 1.    BJB Purposefully Availed Itself Of The United States Via Its Intentional Investment In The Funds

This Court, applying Judge Lifland's decision in *Picard v. Bureau of Labor Ins.* (*SIPC v. Bernard L. Madoff Inv. Sec. LLC*) ("*BLI*"), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012), recently held that "[a] party 'purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS.'" *Cathay Life Ins.*, 2022 WL 16626325, at *3. *BLI* applies with at least equal force here.

In *BLI*, Judge Lifland held—in a very similar action seeking to reclaim redemption payments made by Fairfield Sentry—that a foreign defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." 480 B.R. at 517. ███████ the *BLI* defendant subscribed in Sentry after engaging in "diligence on Fairfield Sentry and its investment strategies" and after reviewing "a private placement memorandum and other information about Fairfield Sentry, including specifics about the Fund's investment strategy and past results and trades in the S & P 100," provided to it by FGG. *Id.* at 517. ████████████ ████████████ the defendant "signed [a] Subscription Agreement [that] incorporated the [offering memorandum]," meaning the defendant knew "Sentry was required to invest at least 95% of its assets" in BLMIS, which would hold the assets in accounts in New York to be "invested in U.S. Securities…." *Id.*

Courts repeatedly have employed *BLI*'s reasoning to find jurisdiction in similar circumstances. *See Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) ("[*BLI*] confirmed that defendants who

invested directly or indirectly with BLMIS and received payments from BLMIS as … subsequent

transferees … [are] subject to the Court's personal jurisdiction"); *Maxam Absolute Return Fund,*

*L.P.*, 460 B.R. at 118 (finding jurisdiction over defendant that "engaged in a series of repeated

transactions that intentionally channeled investor money into the BLMIS Ponzi scheme in New

York"); *cf. In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105

(2d Cir. 2019) ("When these investors chose to buy into feeder funds that placed all or substantially

all of their assets with Madoff Securities, they knew where their money was going.").

This Court itself invoked *BLI* in denying a similar Rule 12(b)(2) motion to dismiss by this

very same defendant, BJB, in an action by the BLMIS Trustee seeking to recoup some of the very

same redemption payments at issue here. *BJB & Co.*, 2022 WL 17726520; *see also Cathay Life*

*Ins.*, 2022 WL 16626325, at *3 (same); *Barfield*, 2022 WL 4542915, at *3 (same). In finding that

the BLMIS Trustee had sufficiently pled jurisdiction, the Court cited to ███████████████

█████████████████████—namely that:

- "BJB conducted a significant portion of its FGG Feeder Funds business out of its New York branch, through personnel employed by BJB and/or its co-located affiliated Julius Baer Investment Management LLC … as agent for BJB," including at least five meetings with FGG personnel and at least three meetings with BLMIS personnel (including Madoff himself)—all in New York and all concerning BJB's feeder fund investments;

- "Foreign-based employees of BJB met and corresponded with New York-based FGG personnel regarding BJB's investments in the FGG Feeder Funds";

- BJB voluntarily executed subscription agreements each time it invested with the Funds affirming that it received and read PPMs that would have "indicat[ed] that [BJB] was transacting in New York";

- BJB designated a New York bank account at JP Morgan Chase to receive dozens of transfers in connection with other redemptions (not at issue here) pled by the BLMIS Trustee and a separate New York correspondent account at HBUS, via Citco Global Custody, NV, to receive transfers associated with those redemptions;

- And BJB "entered into at least one distribution and fee-sharing agreement [for retrocession payments] with Fairfield Greenwich Limited, an FGG management entity, which agreement compensated BJB for investments it placed in Fairfield Sentry."

22

*BJB & Co.*, 2022 WL 17726520, at *3-5.

Accepting these allegations as true, this Court held that BJB's "contacts with New York are not random, isolated, or fortuitous" and that, therefore, "being sued in a New York court was foreseeable"; that the "allegations are directly related to [BJB's] investment activities with the FGG Feeder Funds" (defined therein as the Sentry, Sigma, and Lambda); and that exercising jurisdiction would not be unreasonable, since "BJB is not burdened by this litigation" as evidenced by its "active[] participat[ion] in this Court's litigation for over ten years" through U.S. counsel. *Id.* at *5-6. Accordingly, this Court concluded it had jurisdiction with respect to "each subsequent transfer that originated with BLMIS" (by virtue of its "intentional[] invest[ment] in BLMIS") and "each transfer [BJB] received through [its] New York bank account." *Id.* at 6.



▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ The Funds' offering documents, as well as BJB's and its agent, the Citco Subscriber's, due diligence in and directed towards the United States, all demonstrate that BJB, a sophisticated investor, invested more than ▆▆▆▆▆ in Sentry and Sigma with the intention, knowledge, and expectation that its investments would be channeled into BLMIS. ▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Under *BJB & Co.*, and the *BLI* decision it relies on, BJB's Motion fails.

Specifically, BJB ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆:

- ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. 11 at 6; *see also* Ex. 29 at -767 (similar); *cf.* Ex. 30 at -821 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

-  Ex. 11 at 6.[15]

- *Id.* at 16.

- *See id.* at 20.[16]

further informed it of the relationship between the Funds and New-York-based BLMIS at the time it instructed the Citco Subscriber to invest in the Funds on its behalf.



(Exs. 13, 14, 19 at -502.1, -506.1, -515.1; *see also* Ex. 15), 

(Ex. 35), 

It is also consistent with BJB Management's contemporaneous disclosures, in which it indicates

---

[15] See, e.g., Ex. 30 at -821.

[16] The PPM in *BLI* conveyed the same information as those referenced above. *See* No. 11-ap-02732 Dkt. 17-4 at 8-9, 14-16.

that it "sub-advised funds for affiliates including Zurich-based Bank Julius Baer & Co. Ltd."
Ex. 36.

The combination of ████████████████████████████████████████████████████████
"highlighted BLMIS's central role" in the Funds' investment strategy and informed BJB that, by
investing in the Funds, it was, in fact, indirectly investing in BLMIS in New York. *BLI*, 480 B.R.
at 517. BJB thus instructed the Citco Subscriber to execute ██ subscriptions while "knowing,
intending and contemplating that the substantial majority of funds … would be transferred to
BLMIS in New York to be invested in the New York securities market." *Id.* As in *BLI*, that suffices
to establish jurisdiction over BJB. *See id.*; *Lombard Odier I*, 2022 WL 2387523, at *3; *Lombard
Odier II*, 2023 WL 395225, at *4-5.[17]

Moreover, ████████████████████████████████████████████████████████████
█████████████████████████████████████████████. *E.g.*, Ex. 6 at -091; *see also BLI*,
480 B.R. at 517 ("BLI signed the Subscription Agreement, which incorporated the PPMs."). For
the reasons explained above, *see* Section I.A, *supra*, the Citco Subscriber's knowledge and
conduct—██████████████████████████████████████████████████████—is
imputed to BJB for purposes of this Motion and further supports the exercise of jurisdiction here.
*See, e.g.*, *In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6.

Although BJB does not identify *BLI* by name, it nevertheless attempts to avoid the logic of
that decision, by attempting to distinguish the Supreme Court's decision in *Walden v. Fiore*, 571

---

[17] Even assuming BJB could demonstrate that it invested in the Funds only on instruction from its
clients (which it has not done), BJB cannot evade responsibility on that ground. Client instructions
would not erase BJB's extensive U.S.-directed conduct in connection with its intentional
investment in the Funds. And, in any event, BJB would have made the choice in the first instance
to execute those investments on behalf of its clients and would have done so while knowing the
investments were ultimately targeted at the U.S.

25

U.S. 277 (2014), on which *BLI* relied. Mot. 17-18. That effort is unavailing. The *Walden* Court

held there was no jurisdiction because, unlike BJB here, the defendant did not do anything to avail

himself of the benefits and protections of the forum. In *Walden*, the defendant was a Georgia police

officer who searched the plaintiffs and physically seized cash from them while they were passing

through the state. The plaintiffs attempted to sue the officer in their home state of Nevada, arguing

that jurisdiction existed on the basis that the officer knew the plaintiffs were Nevada residents. 571

U.S. at 288-91. The Supreme Court rejected that theory, stating that "the plaintiff cannot be the

*only* link between the defendant and the forum," as "the defendant's conduct … must form the

necessary connection with the forum State." *Id*. at 289 (emphasis added). In so concluding, the

Court relied on the fact that the defendant "never traveled to, conducted activities within, *contacted*

*anyone in, or sent anything* or anyone to Nevada." *Id*. (emphasis added).

By contrast, the Liquidators do not argue (and *BLI* did not hold) that BJB is subject to

jurisdiction because of the Funds' own contacts with the U.S., or BJB's knowledge of those

contacts, or the mere foreseeability that the money they invested in the Funds would end up in the

United States. Rather, as explained above, BJB directed the Citco Subscriber to invest in Madoff

feeder funds with the *express aim* of having those investments placed with a U.S.-based investment

fund to take advantage of the U.S. securities markets and while knowing that the Funds were

████████████████████████████████████████████████████████. Ex. 29.

And BJB did all of this after ████████████████████████████████

████████████████████████████. *See supra*. Moreover, as explained below, ████████████

████████████████████████████████.

That conduct is not attributable to the Funds, nor are the resulting contacts "random,

fortuitous, or attenuated." *Walden*, 571 U.S. at 286 (quoting *Burger King Corp.*, 471 U.S. at 475).

26

Rather, jurisdiction here, as in *BLI*, stems directly from BJB's and its agent, the Citco Subscriber's, own deliberate actions aimed at the United States. *Lombard Odier II*, 2023 WL 395225 (concluding that *Walden* does not foreclose jurisdiction in this context because "New York is not just where Defendant's money happened to end up"). Even after *Walden*, Sentry's mere involvement in facilitating some of those actions does not foreclose jurisdiction. *Id.*; *see also Walden*, 571 U.S. at 286 ("[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties.").

### 2.    BJB's Intentional Investment In The Funds Directly Relates To The Liquidators' Claims

BJB's intentional investment in the Funds via the Citco Subscriber is directly related to the Liquidators' claims. To demonstrate a sufficient relationship between its claims and BJB's forum contacts, the Liquidators need only show "an affiliation between the forum and the underlying controversy." *BJB & Co.*, 2022 WL 17726520, at *5. That standard is satisfied here.

The sole purpose for subscribing for shares of the Funds was to ultimately redeem those shares; otherwise, the Funds would hold the money in perpetuity. Without the subscriptions, BJB would have had no shares to redeem and could not have received the redemption payments to which its subscriptions gave rise. The two are inextricably linked.

BJB asserts that "the Liquidators' claims [are] wholly unrelated to the Funds' investments in, or redemptions from BLMIS." Mot. 12. But BJB cannot artificially decouple its subscriptions in the Funds from its redemptions. This Court previously rejected that argument the last time BJB attempted to make it, when this Court held that "subsequent transfer claims against BJB for monies it received from the Fairfield Funds … are directly related to its investment activities with the FGG Feeder Funds and BLMIS." *BJB & Co.*, 2022 WL 17726520, at *5.

BJB further argues that the Liquidators have not established jurisdiction over each individual subsequent transfer. Mot. 11. The Court also rejected this same argument when BJB asserted it in the BLMIS Trustee action, holding that "[b]y alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS." *BJB & Co.*, 2022 WL 17726520, at *6. The Liquidators, just like the Trustee, have shown that BJB intentionally invested in BLMIS and have therefore established jurisdiction as to each subsequent transfer.

### C.    BJB Utilized ███████████████ Of Sentry And Citco Subscriber To Invest In And Receive Redemption Payments From Sentry

The majority of the redemptions at issue in this case were from Sentry. BJB's intentional use of ██████████████████████████████████—to subscribe for shares in Sentry and receive each of the at-issue redemption payments from Sentry also supports the exercise of jurisdiction. Exs. 38, 48. A defendant's use of an in-forum correspondent account is sufficient to establish personal jurisdiction where said use is "deliberate," "recurring," and sufficiently related to the harm for which the plaintiff seeks redress. *Licci IV*, 732 F.3d at 171-73. ████████████████████ satisfies each of those three prongs.[18]

#### 1.    ████████████████████ In Lieu Of Offshore Accounts

████████████████████████████████

██████. A defendant's correspondent account use is "deliberate" if it "indicates desirability and a lack of coincidence." *Licci IV*, 732 F.3d at 168 (quoting *Licci III*, 984 N.E.2d at 901). ████████

---

[18] While BJB and its agent did not designate a U.S. correspondent account for BJB's redemption of Sigma shares, BJB is still subject to jurisdiction with respect to those transactions as detailed in in Sections I.B, *supra*, and I.D, *infra*.



. *BJB & Co.*, 2022 WL 17726520, at *4 ("Where a defendant chooses to use a United States bank account to receive funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional."); *see also Licci IV*, 732 F.3d at 170-71; *Picard v. Meritz Fire & Marine Ins. Co. Ltd.* (*In re Bernard L. Madoff*), 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022); *Cathay Life Ins.*, 2022 WL 16626325, at *3.

a.

Exs. 8, 38.

Exs. 8, 38.

Exs. 38-39.

b.

BJB is also subject to jurisdiction in light of

. *Licci IV*, 732 F.3d at 171-73.

*See,*

29

*e.g.*, Ex. 5 ███████████████████████████████████; *see also* Ex. 43. The Citco

Subscriber voluntarily chose to designate that account. The Citco Subscriber, acting as BJB's

agent, had complete control over which account it used for these transfers. *See* Joyce Decl. at 11-

13 (concluding that Fairfield Sentry investors could have used foreign, U.S. dollar denominated

correspondent accounts to send and receive subscription and redemption payments, respectively,

without employing correspondent banking services in the U.S.).[19] Sentry wired those payments to

the ██████████████████, *solely because* the Citco Subscriber made the choice to ██

██████████████████████████████████



The Citco Subscriber's use of its ████████████████████ to receive

redemption payments from Sentry on behalf of BJB is imputed to BJB. *See* Section 1.A, *supra*.

Therefore, Citco Subscriber's deliberate use of its ██████████████ firmly supports this

Court's exercise of jurisdiction over BJB. *BJB & Co.*, 2022 WL 17726520, at *4; *see also Licci IV*,

732 F.3d at 170-71; *Cathay Life Ins.*, 2022 WL 16626325, at *3.



**c.** ████████████████████████████

████████████████████████████████████

████████████████████ Courts have held that a defendant's transfer of

monies to a third-party's U.S. account can support the exercise of jurisdiction. *See Off. Comm. of*

---

[19] Neither ████████████████████████████, nor rules governing the Citco
Subscriber's investments in Sentry, nor the mere fact that Sentry designated U.S. dollars as its base
currency, required the Citco Subscriber to designate a U.S. account for the receipt of BJB's
redemption payments. *See* Joyce Decl. at 11-13. Sentry required only that redemptions occur in
dollars, *not* that BJB receive payments in an account in the U.S. *See* Ex. 34 (Sentry Articles of
Association) at 8-11. Further, the Second Circuit has recognized that, "[i]n light of the widespread
acceptance and availability of U.S. currency, [a foreign bank] could have … processed U.S.-dollar-
denominated wire transfers … through correspondent accounts anywhere in the world." *Licci IV*,
732 F.3d at 171.

*Unsecured Creditors of Arcapita v. Bahrain Islamic Bank* ("*Arcapita I*"), 549 B.R. 56, 68-69, 70 n.18 (S.D.N.Y. 2016). ████████████████████████████████████████

████████████████████████ Ex. 11 at 14-15. ████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ BJB nonetheless *chose* Sentry rather than investing in a different fund that lacked such a requirement. ████████████████

via the Citco Subscriber was therefore deliberate—it was a direct consequence of its affirmative choice to execute investments in Sentry, ████████████████████████████

████████████████████████████████████

**2.    BJB And Its Agent, The Citco Subscriber, Utilized** ██
████████████████████ **To Effectuate At Least** ██ **Wire Transfers**

BJB and the Citco Subscriber *frequently* used ████████████████ in transacting with Sentry. "[A] foreign bank's *repeated use* of a correspondent account in New York [on behalf of a client] … show[s] purposeful availment of New York's" banking, currency, and legal systems. *Licci IV*, 732 F.3d at 168 (emphasis added) (quoting *Licci III*, 984 N.E.2d at 900).

██████ the Citco Subscriber repeatedly utilized ████████████████████
████████████████████████ when investing in and receiving redemption payments from Sentry. *First*, ██████████████████████████████████████████████

████████████████████████████████████ Exs. 38, 39. *Second*, ██

██████████████████████████████████████████████████████████

████████████████████████████ Ex. 39. *Third*, when ████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████ Ex. 48. In total,

the Citco Subscriber received ██ redemption payments from Sentry on BJB's behalf, totaling

approximately ██████████, through the Citco Subscriber's ██████████. Ex. 46; *see also*

Exs. 43, 48. In total, ██████ the Citco Subscriber collectively processed at least ██ transactions

██████████████, amounting to at least ████████████████████████████

██████████████, all for BJB's benefit and at its instruction.

With respect to both the volume of transfers and the total sum of money involved, ██████

██ the Citco Subscriber's ██████████████ dwarfs what courts have found sufficient in

other cases to establish personal jurisdiction. In *Licci IV*, the court exercised personal jurisdiction

based on "dozens" of wire transfers "total[ing] several million dollars." 732 F.3d at 170-71. In

*Averbach v. Cairo Amman Bank*, the court concluded that twenty-three fund transfers through

correspondent banks over the course of two years were sufficient. 2020 WL 486860, at *5

(S.D.N.Y. Jan. 21, 2020), *R. & R. adopted* 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020). And still

other cases have held that as few as one or two transfers can suffice. *See Arcapita I*, 549 B.R. at

70 & n.18 (holding that even a single use of a third party's correspondent account use was

sufficient); *Schansman v. Sberbank of Russia PJSC*, 565 F.Supp.3d 405, 414 (S.D.N.Y.2021) (two

transfers for a combined $300 where the plaintiff alleged more generally that "some of" the

millions of dollars had been routed through U.S. accounts). *A fortiori*, ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████.

3.   **BJB's And Its Agent, The Citco Subscriber's,** ████████████
     ██ **Was Sufficiently Related To The Harms Alleged**

BJB's and its agent, the Citco Subscriber's, use of ██████████ is sufficiently related to

the Liquidators' claims seeking to recover Sentry redemption payments. Where a defendant's use

of a U.S. account is "an instrument for accomplishing the alleged wrongs for which the plaintiff

seeks redress," it is sufficiently related to the claims at issue. *Licci IV*, 732 F.3d at 171; *see also FGG*, 627 B.R. at 566 ("[The 'arising out of' prong] may be satisfied when defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum.").

    As discussed above, a core element of the Liquidators' claims is that BJB received inflated redemption payments. And ███████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████ . That is enough to establish jurisdiction as to those redemptions. *BJB & Co.*, 2022 WL 17726520, at *5-6; *see also Licci IV*, 732 F.3d at 171; *Picard v. BNP Paribas S.A.* (*In re Bernard L. Madoff*), 594 B.R. 167, 191 (Bankr. S.D.N.Y 2018) (finding that the claims for redemption payments received by investors in a BLMIS feeder fund arose from the investors' receipt of redemption payments at a New York account).

### D.    BJB And Its Agent, The Citco Subscriber, Engaged In Other Business Activity In And Directed At The United States

    BJB's and its agent, the Citco Subscriber's, additional U.S.-oriented business activity also supports the exercise of jurisdiction here. Business contacts have long been considered a basis for the exercise of jurisdiction over a foreign defendant where that conduct is sufficiently related to the claims at issue. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 475-76 (collecting cases). That is true even where the defendant conducted most or even all of this business while overseas, *see In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 319 (S.D.N.Y. 2020) (explaining that conduct that "occurs entirely out-of-forum" may support jurisdiction "if the defendant expressly aimed its conduct at the forum" (quoting *Licci IV*, 732 F.3d at 173)), *rev'd in part on other grounds*, 61 F.4th 242 (2d Cir. 2023), and even where the conduct is carried out by the defendant's agent, *see In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. July 23, 2020). BJB has at least two categories of such contacts relevant here.

*First*, BJB's agent the Citco Subscriber ████████████████████████████
████████████████████████████████████████████████████████████.

Ex. 25; *see also* Compl. ¶ 23 (alleging that BJB agreed to submit to the jurisdiction of New York

courts in connection with proceedings related to Sentry and Sigma).[20]

*Second*, ████████████████████████████████████████████



Ex. 21.

Those contacts, particularly when considered alongside BJB's intentional investment in

Madoff feeder funds, as well as BJB's and its agent, the Citco Subscriber's, purposeful use of ████

██████████████ (discussed in Sections I.B and I.C, *supra*), support this Court's exercise of

personal jurisdiction over BJB. And each of these contacts plainly relate to the Liquidators' claims.

The forum-selection and choice-of-law clauses were contained in the subscription agreements that

gave rise to the redemption payments at issue here. And ████████████████████████████

---

[20] Judge Bernstein previously held that those provisions, standing alone, did not amount to a consent to personal jurisdiction in this action. *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018). The Liquidators are appealing that decision to the Second Circuit. However, even now, they support the exercise of jurisdiction: "A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law" and signal a lack of objection to litigating at least some disputes in U.S. courts. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004); *see also In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (holding that forum selection and choice of law clauses "support[ed] finding personal jurisdiction"); *Lombard Odier I*, 2022 WL 2387523, at *5 n.2 (same); *BLI*, 480 B.R. at 516, 517 n.15 (same).

████

████ *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018). That is more than sufficient to conclude that the above contacts relate to the Liquidators' claims and therefore support the exercise of jurisdiction. *BJB & Co.*, 2022 WL 17726520, at *6; *see also Cathay Life Ins.*, 2022 WL 16626325, at *4.

### E.    The Court May Exercise Jurisdiction Over BJB Even If The Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis

BJB attempts to make much ado about nothing by insisting that the Liquidators have previously conceded "[t]he redemption transfers at issue here were purely foreign" and that "every *relevant* component of the transactions at issue here occurred outside the [U.S.]" Mot. 16 (emphasis added) (quoting Pls.'-Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911, Dkt. 440 (S.D.N.Y. July 21, 2021) ("Pls.' Opening Br.")); *see also id.* at 17 ("As the Liquidators themselves maintain, every element of the transaction is 'purely foreign.'" (quoting Pls.' Opening Br. at 24)); *id.* at 3. BJB is quoting the Liquidators' appellate brief out of context and ignoring black-letter law holding that "[t]he tests for personal jurisdiction and extraterritoriality are not the same." *In re Ampal-Am. Israel Corp.*, 562 B.R. 601, 613 n.14 (Bankr. S.D.N.Y. 2017); *see also Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (distinguishing the two tests).

For this reason, the set of facts relevant to the personal jurisdiction inquiry is different from the set of facts relevant to the extraterritoriality inquiry. *Compare RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016) (explaining that the extraterritoriality inquiry focuses on "conduct relevant to the statute's focus"), *with Licci IV*, 732 F.3d at 170 (holding that the specific personal jurisdiction inquiry focuses on the "totality" of the defendant's forum contacts that give rise or relate to the plaintiff's claim). In this action, "the focus [of the *extraterritoriality*] analysis is the

location of the transfer" itself. *Picard v. Bureau of Lab. Ins.*, 2016 WL 6900689, at *19 (Bankr.

S.D.N.Y. Nov. 22, 2016), *vacated and remanded on other grounds*, 917 F.3d 85. By contrast, the

personal jurisdiction inquiry addresses a much broader set of facts, *see* Sections I.B-I.D, *supra*,

including BJB's knowledge and intent in making the investment that gave rise to the transfers at

issue, *see BLI*, 480 B.R. at 517, ████████████████████████████████████████████████

████████████████████████, *see Cathay Life Ins.*, 2022 WL 16626325, at *3, forum selection clauses in

the contracts governing that investment, *see Sunward Elecs.*, 362 F.3d at 23, ████████████████

██████████████████████████████████████████████████████████████████████████████████

████████████████████████████████, *see Licci IV*, 732 F.3d at 168-71.[21]

The Liquidators referred to the redemption transfers as "purely foreign," because under

applicable law the only "*relevant component[s]*" of the redemption transfers for purposes of the

extraterritoriality analysis were in fact foreign. Pls.' Opening Br. at 24 (emphasis added), not

because it "served their purposes," Mot. 2. The Liquidators' characterization of the transfers as

foreign for purposes of extraterritoriality has no bearing on this Motion.[22]

---

[21] Redemption transfers from Sentry are relevant to both inquiries given ████████████████████
████████████████. The Liquidators' prior argument that those
transfers are "foreign" was premised on well-settled law holding that use of a U.S. correspondent
account does not render otherwise foreign transfers domestic for extraterritoriality purposes. *See*
Pls' Opp'n Br. at 68-70, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, 10-ap-03496, Dkt.
1336 (citing *Bureau of Lab. Ins.*, 2016 WL 6900689, at *20); *see also In re Madoff Sec.*, 513 B.R.
222, 228 n.1 (S.D.N.Y. 2014); *Loginovskaya v. Batrachenko*, 764 F.3d 266, 268-69 (2d Cir. 2014).
Not so for personal jurisdiction. *See, e.g.*, *Licci IV*, 732 F.3d at 168-71.

[22] For years, the Liquidators have consistently made these extraterritoriality and personal
jurisdiction arguments in tandem, pointing out that transfers that are "foreign" for purposes of
extraterritoriality may still support personal jurisdiction. *See* Pls.' Opp'n Br. at 68-69.

### F.    The Court Should Reject BJB's "Group Pleading" Argument

BJB argues that because the Liquidators engaged in so-called "group pleading" with respect to their jurisdictional allegations, they cannot satisfy their burden of establishing personal jurisdiction on an individualized basis. Mot. 2, 10. Not so. As BJB acknowledges, the Liquidators' complaint includes allegations about BJB. *See* Mot. 10; Compl. ¶ 15 ("the Citco Subscribers" either retained the Redemption Payments or "paid all or some portion" of them to defendants including "BJB"); *id.* ¶ 79 ("Based on Sentry and Sigma records, some or all of the Redemption Payments made to the Citco Subscribers may have been paid to an account holder or holders associated with the Beneficial Shareholder, Lombard Odier[.]"). And where the complaint generalizes between defendants, it does so because the Liquidators' allegations apply with equal force to each defendant within that group. "Nothing … prohibits [the Liquidators from] collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015). And, post-discovery, the question is not just what the Liquidators alleged, but whether the Liquidators have averred facts that, when credited, establish personal jurisdiction. *Metro. Life Ins. Co.* 84 F.3d at 567.

Here, the Liquidators have averred facts based on documents and information uncovered during discovery which support the Court's exercise of personal jurisdiction over BJB. These facts show BJB's intent to invest in the U.S. securities market, its ███████████████████ to do so, and its engagement in additional business activity connected to the claims at issue. Based on those facts specific to BJB and its relevant forum contacts, the Liquidators have met their burden to establish jurisdiction over BJB on an individualized basis.

## II.      The Exercise Of Jurisdiction Over BJB Is Reasonable

Exercising specific jurisdiction over BJB—which, through its agent the Citco Subscriber, deliberately chose to invest in and profit from the U.S. securities market and repeatedly used the U.S. banking system to do so—is "reasonable under the circumstances" presented here. *U.S. Bank Nat'l Ass'n*, 916 F.3d at 150 (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1786). Because the Liquidators have made "a threshold showing of minimum contacts," the burden is on BJB to "present[] 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life Ins. Co.*, 84 F.3d at 568 (quoting *Burger King Corp.*, 471 U.S. at 477). BJB has not done so.

To assess reasonableness, courts consider: "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the 'interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and (5) 'the shared interests of the several States in furthering fundamental substantive social policies.'" *U.S. Bank Nat'l Ass'n*, 916 F.3d at 151 n.5 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)). "The primary concern is the burden on the defendant," *id.* (cleaned up), and dismissals on reasonableness grounds "should be few and far between," *Metro. Life Ins. Co.*, 84 F.3d at 575. These factors strongly support the exercise of jurisdiction in this case.

BJB argues that the exercise of jurisdiction would be unreasonable because BJB had no relevant contacts with the United States. Mot. 19. This is not so; BJB's U.S. contacts are sufficient to allow the Court to exercise jurisdiction over it. And BJB does not advance a single additional argument as to why the exercise of jurisdiction would be unreasonable.

BJB has no legally cognizable burden here. As this Court already ruled in the Trustee's action, which involved a partially overlapping set of redemptions, BJB has "actively participated in this Court's litigation for over ten years; it is represented by U.S. counsel; and it "'irrevocably'

38

submitted to the jurisdiction of New York courts[] when it signed its subscription agreements with the FGG Feeder Funds"; BJB also held bank accounts in New York into which it deposited redemption payments relevant to the Trustee's case. *BJB & Co.*, 2022 WL 17726520, at *6. And "the conveniences of modern communication and transportation ease any burden the defense of this case in New York might impose on [BJB]." *Licci IV*, 732 F.3d at 174 (citation omitted).[23]

Moreover, courts have long recognized that the U.S. has a strong interest in ensuring that its financial system is not used for unlawful purposes. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 31 (E.D.N.Y. 2016) ("[T]he Court also may take into account 'the United States' and New York's interest in monitoring banks and banking activity to ensure that its system is not used' [for unlawful purposes]" (quoting *Licci IV*, 732 F.3d at 174)). At its core, the case is about BJB's decision to indirectly invest in and reap profits from BLMIS and the U.S. securities market through feeder funds. Allowing foreign investors like BJB to evade U.S. jurisdiction in these circumstances, simply because they chose to invest through a foreign-based conduit as part of their scheme, would ignore the reality of the transactions, allowing those investors to reap all the benefits of the U.S. securities market without any of the corresponding obligations. That result would be all the more perverse where, as here, ██████████████████████████████████████ ██████████████████████████████████████████████████████████ *See* Section I.C, *supra*.

---

[23] Even if BJB had legitimate concerns about the burden of particular discovery requests, they have no place "in the context of assessing the reasonableness of an exercise of personal jurisdiction." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 333 (S.D.N.Y. 2018) (cleaned up), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018); *see Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 99 (S.D.N.Y. 2015) (noting "no other courts" considered this version of a foreign law argument, and "declin[ing] to be the first").

In sum, BJB has failed to establish that the exercise of jurisdiction is unreasonable, where BJB intentionally invested in a Madoff feeder fund and used a U.S. correspondent account to reap profits therefrom. BJB cannot now shield itself from liability after benefiting from those U.S. investments.

## CONCLUSION

For the reasons discussed above, the Court should deny BJB's Motion.

Date: May 12, 2023

Respectfully submitted,

SELENDY GAY ELSBERG PLLC

*/s/   David Elsberg*
David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
Lauren Zimmerman
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
delsberg@selendygay.com
mginzburg@selendygay.com
jgoldstein@selendygay.com
lkonanova@selendygay.com
dflugman@selendygay.com
jmargolin@selendygay.com
lzimmerman@selendygay.com

-and-

BROWN RUDNICK LLP
David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for the Plaintiffs Joint Liquidators*