UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

In re:                                                    : Chapter 15 Case
                                                          :
FAIRFIELD SENTRY LIMITED, et al.,                         :
                                                          : Case No. 10-13164 (JPM)
                                                          :
          Debtors in Foreign Proceedings.                 : (Jointly Administered)
------------------------------------------------------------------ :

FAIRFIELD SENTRY LIMITED (IN LIQUIDATION), et :
al.,                                                      :
                                                          :
          Plaintiffs,                                     :
                                                          : Adv. Pro. No. 10-03496 (JPM)
     v.                                                   :
                                                          : (Administratively Consolidated)
THEODOOR GGC AMSTERDAM, et al.,                           :
                                                          :
          Defendants.                                     :
------------------------------------------------------------------ :

FAIRFIELD SENTRY LIMITED (IN LIQUIDATION),                :
et al.,                                                   :
                                                          :
          Plaintiffs,                                     :
                                                          :
     -against-                                            :
                                                          :
ABN AMRO SCHWEIZ AG a/k/a ABN AMRO                        :
(SWITZERLAND) AG, et al.,                                 :
                                                          : Adv. Pro. No. 10-3635 (JPM)
          Defendants.                                     :
------------------------------------------------------------------------ X


## DEFENDANT UBS AG'S REPLY MEMORANDUM IN SUPPORT OF
## ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000


Dated:  July 11, 2023                          *Attorneys for Defendant UBS AG*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

I.    The Identified Contacts Do Not Establish Specific Personal Jurisdiction Over
      UBS ................................................................................................................................ 2

      A.    UBS's Alleged U.S.-Oriented Business Activity Is Jurisdictionally
            Irrelevant ............................................................................................................. 3

      B.    The Funds' Contacts Cannot Be Imputed to UBS .............................................. 6

      C.    The Liquidators' ███████████ Allegations Are Insufficient To
            Support Jurisdiction As A Matter of Law ........................................................... 8

            1.    The Liquidators' Claims Do Not Arise Out Of Or Relate To
                  Subscriptions ........................................................................................... 8

            2.    The Evidence Adduced In Discovery ███████ With The
                  Liquidators' Deficient Allegations ██████████ ........... 11

            3.    Redemption Payments That Passed Through ████████
                  ██████ Are Not Jurisdictionally Relevant Contacts ............................ 16

II.   Exercising Personal Jurisdiction Here Would Not Comport With The Due Process
      Clause's Reasonableness Requirement .......................................................................... 17

      CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

CASES

*Averbach v. Cairo Amman Bank*,
  2020 WL 486860 (S.D.N.Y. Jan. 21, 2020) ..........................................................................17

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
  902 F.2d 194 (2d Cir. 1990)................................................................................................2

*In re: Bernard L. Madoff Inv. Sec. LLC*,
  708 F.3d 422 (2d Cir. 2013)................................................................................................7

*In re Bernard L. Madoff Investment Securities LLC*,
  2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ........................................................................7

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*,
  137 S.Ct. 1773 (2017)........................................................................................................3

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)................................................................................................19, 20

*Chaiken v. VV Pub. Corp.*,
  119 F.3d 1018 (2d Cir. 1997)............................................................................................20

*Concepts NREC, LLC v. Qiu*,
  2021 WL 6750964 (D. Vt. Sept. 20, 2021)..........................................................................7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)............................................................................................................19

*In re Fairfield Sentry Ltd.*,
  2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018),
  *aff'd*, 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022),
  *appeal docketed*, No. 22-2101 (2d Cir. Sept. 9, 2022) .................................................4, 10, 11

*In re Fairfield Sentry Ltd.*,
  596 B.R. 275 (Bankr. S.D.N.Y. 2018),
  *aff'd*, 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022),
  *appeal docketed*, No. 22-2101 (2d Cir. Sept. 9, 2022) ...........................................................18

*Fairfield Sentry Ltd. (in Liquidation) v. Migani*
  [2014] UKPC 9, *available at*
  https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf..................................................4

*First Am. Corp. v. Price Waterhouse LLP*,
154 F.3d 16 (2d Cir. 1998)..................................................................................20

*Fischer v. Forrest*,
286 F. Supp. 3d 590 (S.D.N.Y. 2018)..................................................................11

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021)....................................................................3, 8, 10, 19

*Gucci America, Inc. v. Weixing Li*,
135 F. Supp. 3d 87 (S.D.N.Y. 2015)..............................................................19, 20

*Hau Yin To v. HSBC Holdings PLC*,
2017 WL 816136 (S.D.N.Y. Mar. 1, 2017),
*aff'd*, 700 F. App'x 66 (2d Cir. 2017)..............................................................16, 17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)..............................................................................................6

*Hepp v. Facebook*,
14 F.4th 204 (3d Cir. 2021) ...............................................................................10

*Hinrichsen v. Hinrichsen Found.*,
2018 WL 369184 (S.D.N.Y. Jan. 9, 2018) ..........................................................5

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)............................................................................................19

*Johnson v. TheHuffingtonPost.com, Inc.*,
21 F.4th 314 (5th Cir. 2021) ..............................................................................10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013)..........................................................................15, 16

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
23 N.Y.3d 129 (2014) ........................................................................................18

*Melnick v. Adelson-Melnick*,
346 F. Supp. 2d 499 (S.D.N.Y. 2004)..................................................................2

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)...................................................................................2

*In re Mexican Gov't Bonds Antitrust Litig.*,
2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020)......................................................6

*In re Motors Liquidation Co.*,
565 B.R. 275 (Bankr. S.D.N.Y. 2017)..................................................................5

*Nike, Inc. v. Wu*,
    349 F. Supp. 3d 310 (S.D.N.Y. 2018) ................................................................................... 19

*Nowak v. Tak How Inv., Ltd.*,
    94 F.3d 708 (1st Cir. 1996) ................................................................................................. 20

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ................................................................................................. 9

*Picard v. Banque Lombard Odier & Cie SA (In re Bernard L. Madoff)*,
    2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ........................................................ 5, 9

*Picard v. Barfield Nominees Ltd.*,
    2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022) ........................................................... 9

*Picard v. BNP Paribas S.A.*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ................................................................................. 17

*Picard v. Bureau of Labor Insurance (In re Sec. Inv'r Prot. Corp.) ("BLI")*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ................................................................................ 5, 6

*Picard v. Cathay Life Ins. Co.*,
    2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ............................................................. 9

*Picard v. JP Morgan Chase & Co.*,
    2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ............................................................. 9

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) ................................................................................... 9

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.*,
    2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) .......................................................... 17

*Picard v. UBS AG (In re Bernard L. Madoff)*,
    2022 WL 17968924 (Bankr. S.D.N.Y. Dec. 27, 2022) ........................................................... 9

*Randstad Gen. Partner (US), LLC v. Beacon Hill Staffing Grp. LLC*,
    2020 WL 10460623 (N.D. Ga. June 19, 2020) .................................................................... 11

*Schansman v. Sberbank of Russia PJSC*,
    565 F. Supp. 3d 405 (S.D.N.Y. 2021) ................................................................................. 17

*Shelbourne Glob. Sols., LLC v. Gutnicki LLP*,
    2023 WL 2240438 (E.D.N.Y. Feb. 27, 2023) ........................................................................ 4

*Spetner v. Palestine Inv. Bank*,
    70 F.4th 632 (2d Cir. 2023) .......................................................................................... 16, 17

*SPV Osus Ltd. v. UniCredit Bank Austria*,
 2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019) ........................................................................7

*Starke v. UPS, Inc.*,
 898 F. Supp. 2d 560 (E.D.N.Y. 2012),
 *aff'd*, 513 F. App'x 87 (2d Cir. 2013)....................................................................................4

*Strauss v. Credit Lyonnais, S.A.*,
 175 F. Supp. 3d 3 (E.D.N.Y. 2016) ......................................................................................18

*Sunward Electronics., Inc. v. McDonald*,
 362 F.3d 17 (2d Cir. 2004)......................................................................................................5

*Taormina v. Thrifty Car Rental*,
 2016 WL 7392214 (S.D.N.Y. Dec. 21, 2016) ......................................................................15

*In re Terrorist Attacks on Sept. 11, 2001*,
 714 F.3d 659 (2d Cir. 2013).............................................................................................3, 14

*United Airlines, Inc. v. Zaman*,
 152 F. Supp. 3d 1041 (N.D. Ill. 2015) ...................................................................................5

*Walden v. Fiore*,
 571 U.S. 277 (2014)..............................................................................................................6, 7

*Want2Scrap, LLC v. Larsen*,
 2018 WL 1762853 (N.D. Ind. Apr. 9, 2018) ..........................................................................5

*Wright v. Ernst & Young LLP*,
 152 F.3d 169 (2d Cir. 1998), *aff'd*, 968 F.3d 216 (2d Cir. 2020)..........................................11

*Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*,
 2001 WL 1468168 (S.D.N.Y. Nov. 19, 2001) ........................................................................2

**TREATISES**

4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
 § 1069.4 (4th ed. 2022) ...........................................................................................................7

Defendant UBS AG ("UBS") respectfully submits this reply in further support of its
motion pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the FAC filed by the
Liquidators in Adversary Proceeding No. 10-3635.[1]

## **PRELIMINARY STATEMENT**

Because New York and British Virgin Islands courts have repeatedly rejected and pared
back their claims over the years, the Liquidators are now left with only a single undismissed
theory for asserting "constructive trust" claims governed by the law of the British Virgin Islands.
*See* FAC ¶ 198.  Those claims are premised on allegations that the Funds' Dutch administrator,
Citco Fund Services, breached its duties to the Funds by miscalculating the Funds' NAV, that
UBS supposedly "knew" (not actually, but only via imputation to it of the Citco Subscribers'
alleged awareness[2]) that the NAV was wrong and the administrator was violating its duties, and
that UBS possesses certain assets traceable to that claimed breach by the administrator.  Thus,
contrary to the Liquidators' assertion, this case is *not*, "[a]t its core" "about UBS's decision to
indirectly invest in and reap profits from BLMIS and the U.S. securities market through feeder
funds."  Opp. at 40.  Unlike the various cases brought by the Trustee for BLMIS, nothing about
the surviving claims in the Citco Brokerage Proceedings involves an intent to invest in or profit
from investments with BLMIS.  In fact, the claims hardly implicate the United States at all.

Properly framed, the Citco Brokerage Complaints should be dismissed pursuant to Rule
12(b)(2), and nothing in the Liquidators' opposition disturbs that conclusion.  *First*, the

---

[1]  Defined terms in UBS's moving brief (cited here as "***Mem.***"), ECF No. 786, are incorporated herein. "***Opp.***"
refers to the Liquidators' opposition, ECF No. 1075.

[2]  For purposes of this motion, UBS does not contest that the Citco Subscribers' jurisdictional contacts can be
imputed to UBS.  UBS, however, reserves all rights to contest all allegations and assertions related to the Citco
Subscribers, including whether the Citco Subscribers' alleged knowledge can be imputed to UBS, at the
appropriate time.

purported "U.S.-oriented business activit[ies]" that the Liquidators claim UBS engaged in are jurisdictionally irrelevant.  Opp. at 34.  *Second*, the "intent" and "knowledge" test pressed by the Liquidators for imputing their own contacts with BLMIS to UBS is contrary to binding precedent.  *Third*, the contacts the Liquidators seek to shoehorn into this dispute—*e.g.*, subscription-related activities—do not relate to their remaining constructive-trust claims and thus lack jurisdictional significance.  *Fourth*, allegations and evidence about the use of a U.S. correspondent account, which the Liquidators concede do not pertain to claims on behalf of Sigma, fall short of the standards set forth in binding precedent even as applied to claims on behalf of Sentry.  *Fifth*, exercising jurisdiction over this dispute, which involves numerous foreign parties and centers on the alleged wrongdoing of yet another foreign entity—one that is not even a party to this case—would be unreasonable.

## ARGUMENT

### I.    The Identified Contacts Do Not Establish Specific Personal Jurisdiction Over UBS

The Liquidators do not dispute that general jurisdiction is inapplicable and that only specific jurisdiction is at issue.  *See* Mem. at 10-11.   Where, as here, jurisdictional discovery has occurred but no evidentiary hearing has been held, a "plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (alteration in original) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  In other words, "the *prima facie* showing must be factually supported." *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 502 (S.D.N.Y. 2004) (quoting *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001)).  Although courts must "credit [a plaintiff's] averments of jurisdictional facts as true," *Metro. Life Ins. Co.* 84 F.3d at 567, they

may neither "draw argumentative inferences in [a] plaintiff's favor … nor … accept as true a legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations and quotation marks omitted).

In an effort to meet that standard, the Liquidators levy three arguments as to why this Court has specific personal jurisdiction over UBS, though only two (the first and second) apply to claims on behalf of Sigma:  (1) UBS supposedly engaged in certain "U.S.-oriented business activity"; (2) the Funds' own contacts with BLMIS can be imputed to UBS via the Citco Subscribers because UBS knew the Funds would invest with BLMIS (albeit indirectly for Sigma), and UBS "intended" for that to occur; and (3) UBS used either Sentry's or the Citco Subscriber's ▮▮▮▮▮▮▮▮ account to invest in Sentry and to receive Sentry-related redemptions.  The Liquidators also assert that the exercise of personal jurisdiction would comport with due process.  None of these arguments withstands scrutiny.

### A.    UBS's Alleged U.S.-Oriented Business Activity Is Jurisdictionally Irrelevant

To establish specific personal jurisdiction, a plaintiff must show, among other things, that its claims "arise out of or relate to the defendant's contacts with the forum."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S.Ct. 1773, 1780 (2017)).  The Liquidators' claims do not, however, "arise out of" or "relate to" the alleged "U.S.-oriented business activity" they cite—*i.e.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and forum selection clauses contained in subscription agreements.  *See* Opp. at 34-36.

As to the ▮▮▮▮▮▮▮, the Liquidators do not dispute that each redemption is its own claim and that they must therefore establish jurisdiction over UBS as to each Redemption Payment.  *See* Mem. at 11.  Relevant here, that means the Liquidators must show that one or more of the at-issue Redemption Payments "ar[o]se out of" or "relate[s] to" ▮▮▮▮▮▮▮▮

-3-

████████████. But ████████████████████████████████████████████

████████████████████████████████████. *Compare* Exs. 34-36, 38-40, *with* Exs.

37, 41; *see also* Ex. 42.  And logic dictates that a claim does not "arise out of" or "relate to"

actions that take place *after* the events forming the basis of the claim have already occurred.  *See,*

*e.g.*, *Shelbourne Glob. Sols., LLC v. Gutnicki LLP*, 2023 WL 2240438, at *10 (E.D.N.Y. Feb. 27,

2023) ("[E]ven assuming [defendant's] [actions] somehow constituted 'transacting business' in

New York … , it cannot be said this cause of action 'arose from' such business, as [the business]

significantly postdated the events underlying Plaintiffs' Complaint.").  But even if a claim could

arise from or relate to post-claim contacts, the Liquidators have not shown that any ████████

████████████ were about redemptions, let alone any at issue in this case.  *See* Exs. 7-9.

There is thus no basis to conclude that the claims here "arose out of" or "relate to" any ████████

████████████████████.

 Moreover, the subscription agreements—which the Court has already concluded do not

control jurisdiction here—support UBS's position, not that of the Liquidators.  *See In re*

*Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y. Aug. 6, 2018), *aff'd*, 2022

WL 4391023 (S.D.N.Y. Sept. 22, 2022), *appeal docketed*, No. 22-2101 (2d Cir. Sept. 9, 2022).

Courts interpret contracts to effectuate the parties' intent.  *See, e.g.*, *Starke v. UPS, Inc.*, 898 F.

Supp. 2d 560, 568 (E.D.N.Y. 2012), *aff'd*, 513 F. App'x 87 (2d Cir. 2013).  And here, the parties

knew how to express their intent to be subject to jurisdiction in New York, something they did

with respect to claims relating to subscriptions but *not* with respect to redemptions.  *See, e.g.*,

FAC ¶¶ 23-24; *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11-12.  That difference makes

sense and surely was not accidental:  the redemption transfers are "foreign" and governed by the

law of the British Virgin Islands.  *See* Mem. at 5; *Fairfield Sentry Ltd. (in Liquidation) v. Migani*

[2014] UKPC 9, ¶¶ 10, 17 (redemptions of Fund shares are governed by the Funds' Articles of

Association, which are agreements governed by BVI law), *available at*

https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf.  Thus, if anything, the absence of

such clauses relating to redemptions shows the parties' intent *not* to subject themselves to

jurisdiction in New York for purposes *other than* subscriptions.

Indeed, in *Sunward Electronics., Inc. v. McDonald*, the Second Circuit explained that the

presence of a choice-of-law provision is significant "because the parties, by so choosing, invoke

the benefits and protections of [a forum's] law."  362 F.3d 17, 23 (2d Cir. 2004).  The same is

undoubtedly true of a forum selection clause, which expressly affords parties access to the

protections of the forum's judicial system.  But choosing to invoke the benefits and protections

of New York law or the New York courts with respect to one transaction (*i.e.*, the subscription

agreements) does not mean the parties chose the same with respect to another (*i.e.*, the regulation

of the Funds' operations, and their shareholders' redemption rights, pursuant to the Funds'

Articles of Association).  Rather, if anything the parties invoked the benefits and protections of

*BVI law*—not New York law—in contractually providing that redemption transactions would be

governed by BVI law.  The Court should therefore decline the Liquidators' invitation to infer an

intent on the parties' part that is inconsistent with both the text and clear implication of their

agreements.[3]

---

[3]  Two of the cases the Liquidators cite in support of their argument do not speak to a situation where, as here, the
relevant provisions have been held inapplicable to the current dispute.  *See Sunward Elecs.*, 362 F.3d at 21-23; *In
re Motors Liquidation Co.*, 565 B.R. 275, 280-81, 288-89 (Bankr. S.D.N.Y. 2017).  By contrast, courts have
disregarded such clauses contained, as here, in non-germane agreements.  *See, e.g.*, *Hinrichsen v. Hinrichsen
Found.*, 2018 WL 369184, at *5 (S.D.N.Y. Jan. 9, 2018) (concluding that a choice-of-law provision in a 2010
agreement "neither support[ed] nor disfavor[ed] a finding of specific jurisdiction" in a lawsuit "base[d]" on a
2009 agreement that did "not contain a choice of law clause"); *Want2Scrap, LLC v. Larsen*, 2018 WL 1762853, at
*7 (N.D. Ind. Apr. 9, 2018) (concluding that a "forum selection clause in [a] Nondisclosure Agreement [wa]s not
relevant and d[id] not provide a basis for th[e] [c]ourt to assert personal jurisdiction over" defendants where a
separate "Copyright License Agreement [wa]s at issue in th[e] litigation"); *United Airlines, Inc. v. Zaman*, 152 F.
Supp. 3d 1041, 1051 (N.D. Ill. 2015) (concluding that a forum-selection clause contained in an affiliate agreement

In sum, the alleged "U.S.-oriented business activit[ies]" do not give rise to jurisdiction.

### B.    The Funds' Contacts Cannot Be Imputed to UBS

In addition to UBS's purported "U.S.-oriented business activit[ies]," the Liquidators also claim that the *Funds*' U.S.-oriented activities somehow give rise to jurisdiction over UBS. Specifically, the Liquidators assert that the Funds' own contacts with BLMIS can be imputed to UBS via the Citco Subscriber because UBS knew that Sentry would invest with BLMIS and that Sigma would invest in Sentry, and UBS supposedly intended for all this to occur. Binding precedent precludes such imputation. *See* Mem. at 16-19.

First, *Walden v. Fiore*, 571 U.S. 277 (2014), forecloses imputing the Funds' contacts with BLMIS to UBS via the Citco Subscribers. *See* Opp. at 17-18. The Liquidators nonetheless maintain that the Funds' own contacts with BLMIS can be imputed to UBS—because of UBS's knowledge and intent—in light of *BLI*, 480 B.R. 501, and cases relying on it. *See* Opp. at 22-24, 26-27. But *Walden* contains no "knowledge" and "intent" exception. *See, e.g.*, 571 U.S. at 289 ("Petitioner's actions … did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."); *see also, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of … a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts."); *In re Mexican Gov't Bonds Antitrust Litig.*, 2020 WL 7046837, at *3-4 (S.D.N.Y. Nov. 30, 2020) (holding that neither attempt to profit from conduct underlying claim nor foreseeability of in-forum harm was sufficient to establish

---

was "not a contact with Illinois relevant to th[e] [c]ourt's personal jurisdiction analysis" because the affiliate agreement "d[id] not bear on the substantive legal dispute"). The Liquidators also cite *Picard v. Bureau of Labor Insurance (In re Sec. Inv'r Prot. Corp.) ("BLI")*, 480 B.R. 501, 517 n.15 (Bankr. S.D.N.Y. 2012), and *Picard v. Banque Lombard Odier & Cie SA (In re Bernard L. Madoff)*, 2022 WL 2387523, at *5 n.2 (Bankr. S.D.N.Y. June 30, 2022), but *BLI* was decided prior to this Court's ruling that the subscription agreements do not control, and neither case concludes that the forum selection clauses are a jurisdictionally relevant contact.

jurisdiction absent a defendant's contact with forum).  And, unsurprisingly, the Liquidators are

unable to locate any such exception.  *See* Opp. at 27.  Instead, they emphasize the supposed

importance of the Funds' own █████████████████████ to invest with BLMIS, *id.*, but they

cite no binding authority substantiating its significance.[4]  Accordingly, the Liquidators' proposed

test should be rejected.

Second, even setting *Walden* aside, the Liquidators' knowledge-and-intent test has been

at least implicitly rejected in another context—one in which a party seeks to assert jurisdiction

over a foreign parent in light of its domestic subsidiary's contacts.  In any number of parent-

subsidiary relationships, a party could claim, like the Liquidators here, that the foreign parent

created the domestic subsidiary "while knowing" and intending that the domestic subsidiary

would "invest" in "U.S.-based" entities.  Opp. at 27.  Nonetheless, it is well-settled that "a parent

company is not automatically subject to jurisdiction in [a] state simply because the subsidiary is

carrying on business in the … state."  4A Charles Alan Wright & Arthur R. Miller, Federal

Practice and Procedure § 1069.4 (4th ed. 2022).  Instead, a domestic subsidiary's contacts are

imputable to its foreign parent only if the domestic subsidiary is an alter-ego or mere department

of the parent or its agent.  *See, e.g.*, *Concepts NREC, LLC v. Qiu*, 2021 WL 6750964, at *5 (D.

---

[4]  The Liquidators also cite *In re Bernard L. Madoff Investment Securities LLC*, 2023 WL 395225, at *4 (S.D.N.Y. Jan. 25, 2023), where the court purported to distinguish *Walden* on the basis of the bankruptcy court's finding that defendants "intentionally invested in BLMIS."  But the Liquidators here concede that they "do not allege that UBS invested in BLMIS," but only that UBS invested in the Funds.  *See* Opp. at 3 n.6.  And while "[a] defendant's contacts with the forum State may be intertwined with his transactions or interaction with the plaintiff or other parties," *Walden*, 571 U.S. at 286, the Funds are distinct corporate entities that invested with BLMIS using their own assets, *cf. In re: Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422, 426-27 (2d Cir. 2013).  The *In re Bernard L. Madoff Investment Securities LLC* court also highlighted the fact that Sentry was "required" to invest in BLMIS, as distinguished from a case "in which a defendant invests in a non-New York fund because of the value proposition of that fund, knowing that its investment manager's portfolio strategy involves some New York investments."  2023 WL 395225, at *4.  But those two circumstances are not meaningfully "distinguishable."  *Id.* In both cases, one entity invests in another intending to benefit from an investment strategy that it knows involves New York.  And such a rule—*i.e.*, that intending to benefit from an investment strategy that involves New York is sufficient for personal jurisdiction—would mean untold numbers of entities around the world could be haled into courts here.

Vt. Sept. 20, 2021); *SPV Osus Ltd. v. UniCredit Bank Austria*, 2019 WL 1438163, at *8

(S.D.N.Y. Mar. 30, 2019).  But such relationships are not alleged to be present between the

Funds and UBS—nor could they be—and if a parent-subsidiary relationship is insufficient to

impute contacts, UBS's far more limited arm's-length relationship with the Funds, via the Citco

Subscribers, could not possibly suffice either.

Accordingly, applying *BLI*'s purported knowledge-and-intent test to parties that invested

in the Funds would be inconsistent with *Walden* and related precedent, and *BLI* and its progeny

are inapposite here.  At bottom, the Funds' contacts with BLMIS are their own contacts.  They

therefore are not "defendant's contacts with the forum"—regardless of whether UBS knew about

them—and may not factor into the personal jurisdiction analysis.  *Ford*, 141 S. Ct. at 1026.

    **C.**    **The Liquidators'** ███████████████ **Allegations Are Insufficient To Support Jurisdiction As A Matter of Law**

With respect to Sentry alone, the Liquidators claim that they adequately alleged

jurisdiction on account of certain subscriptions and redemptions that purportedly ███████████

███████████.[5]  But these allegations are also insufficient.

    **1.**    **The Liquidators' Claims Do Not Arise Out Of Or Relate To Subscriptions**

As an initial matter, the Liquidators concede that UBS did not use a ███████████

███████ for subscriptions in 10-ap-3635.  Instead, ██████████████████████

████████████████████████████████████████████

███████████████████████████████  Opp. at 10 n.12.  Thus, the

---

[5]  The Liquidators do not assert that subscriptions or redemptions related to Sigma ████████████████.
Instead, jurisdiction with respect to Sigma's claims rests only on the Liquidators' assertions, addressed above, that
(1) UBS engaged in "U.S.-oriented business activity," and (2) Sigma's indirect contacts with BLMIS can be
imputed to UBS via the Citco Subscribers because UBS knew Sigma would invest in Sentry, and that Sentry, in
turn, would invest in BLMIS, and UBS intended for that to occur.  For the reasons discussed above, however,
those allegations are insufficient.

Liquidators' "arguments … related to ███████████████████████████████████

███ do not apply to UBS in Case No. 10-ap-03635." *Id.* at 29 n.18.

But even if subscriptions went through ████████████████████, it would make no

jurisdictional difference here because the Liquidators' claims do not arise out of relate to

subscriptions or UBS's alleged decision to invest in the Funds.  *See* Mem. at 17.  The Liquidators

respond that UBS is "artificially decoupl[ing] its subscriptions in the Funds from its

redemptions" and claim that this Court already determined in *Lombard Odier*, 2022 WL

2387523, that subscriptions are "related to" the Liquidators' claims.  Opp. at 28.[6]  But *Lombard*

*Odier* involved subsequent-transfer claims brought by the BLMIS Trustee, and it was at least

plausible to argue that the claims there—brought by a U.S.-based party, based on transfers

originating in the U.S.—related to the defendant's intent to profit from its investments in the

U.S.  By contrast, the Liquidators' claims here have nothing to do with money invested in the

U.S.  Instead, they are based on the allegation that the Funds' foreign administrator

miscalculated the Funds' NAV, and that UBS should be deemed by law to have known of that

miscalculation through imputation of the Citco Subscribers' alleged awareness to UBS.[7]

Indeed, the Liquidators misconstrue the scope of their own claims.  Contrary to the

Liquidators' assertion that this case is, "[a]t its core, … about UBS's decision to indirectly invest

in and reap profits from BLMIS and the U.S. securities market through feeder funds," Opp. at

---

[6]  The Liquidators also cite *Arcapita* for the proposition that use of Sentry's correspondent account is a relevant contact.  Opp. at 31 (citing *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 70 n.18 (S.D.N.Y. 2016)).  But *Arcapita* is inapposite for the same reasons discussed above—namely, the Liquidators' claims do not arise out of or relate to subscriptions.

[7]  The Liquidators repeatedly cite cases involving the BLMIS Trustee, all of which are distinguishable on this basis.  *See, e.g., Picard v. UBS AG (In re Bernard L. Madoff)*, 2022 WL 17968924 (Bankr. S.D.N.Y. Dec. 27, 2022); *Picard v. Cathay Life Ins. Co.*, 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022); *Picard v. Barfield Nominees Ltd.*, 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022); *Picard v. Banque Lombard Odier & Cie SA*, 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. JP Morgan Chase & Co.*, 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014); *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106 (Bankr. S.D.N.Y. 2011).

40, the crux of their claims is that the Funds' administrator breached its fiduciary duties in

calculating the Funds' NAV, and that knowledge of the administrator's misconduct should be

imputed to UBS in connection with its receipt of "redemption payments" because the Citco

Subscribers allegedly had "knowledge that the NAV was wrong," FAC ¶ 198.  The "core" of the

Liquidators' claims is thus the Citco Subscribers' knowledge—which the Liquidators would

impute to UBS—of the Funds' foreign administrator's miscalculation of the Funds' NAV in

connection with Redemption Payments.  So the pertinent jurisdictional question here is whether

those claims, correctly framed, "relate to" subscription-related activities.  They do not.

"In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it

must to adequately protect defendants foreign to a forum."  *Ford*, 141 S. Ct. at 1026; *see also,*

*e.g.*, *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (requiring a "strong" "relationship" or

"connection" after *Ford*); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir.

2021) (noting that "a defendant must have 'fair warning' that his activities may subject him to

another state's jurisdiction," permitting it to "structure its primary conduct to lessen or avoid

exposure to a given [s]tate's courts").  Here, imposing "real limits" necessitates acknowledging

the real distinction—as the Court previously did—between UBS's involvement in arranging

*subscriptions* for shares in Sentry, and Sentry's investment with BLMIS, on the one hand, and a

dispute centered on Citco Fund Services' actions when making Redemption Payments from the

BVI-based Funds to their foreign investors, on the other hand.

Indeed, Judge Bernstein's previous ruling that defendants like UBS did not consent to be

sued in New York on redemption-related claims by executing the Funds' subscription

agreements, *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, is effectively dispositive.  As an

initial matter, the Court was merely enforcing distinctions the parties themselves—at least prior

to this litigation—understood and believed to be important; hence, why the agreements were structured as they were. *See id.* at \*11-12 (rejecting the "Liquidators' interpretation" as "ignor[ing] … distinctions made within the Subscription Agreement between and among the various Fund Documents," and explaining that "the [d]efendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions"). Furthermore, the question before the Court was whether the redemption actions were "with respect to" the subscription agreements, a phrase the Court considered "synonymous with 'in relation to'"—the same phrase at issue here. *Id.* at \*11.  If, as the Court concluded, the redemption actions were not "in relation to" the subscription agreements, it necessarily follows that the redemption actions do not "relate to" subscription activity either.  As a result, the Liquidators' claims do not arise out of or relate to the Liquidators' subscription-related allegations and evidence, and both are irrelevant here.

### 2.    The Evidence Adduced In Discovery ███████ With The Liquidators' Deficient Allegations ███████

As to redemptions, the Liquidators do not meaningfully dispute that, aside from one allegation, the Citco Brokerage Complaints allege that the Redemption Payments at issue in the Citco Brokerage Proceedings were made by the offshore Citco Banks to offshore accounts. Mem. at 8, 11-12; *see also id.* at 7-9 & nn.15-17.  Instead, they seek to pivot from their allegations.  But "[i]t is black letter law" that a party "may not alter [its] pleadings through a brief." *Fischer v. Forrest*, 286 F. Supp. 3d 590, 604 (S.D.N.Y. 2018) (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)), *aff'd*, 968 F.3d 216 (2d Cir. 2020).  Thus, absent an amended pleading, the Liquidators are stuck with the substance of their own inadequate allegations. *Cf. Randstad Gen. Partner (US), LLC v. Beacon Hill Staffing Grp. LLC*, 2020 WL

10460623, at *10 (N.D. Ga. June 19, 2020) ("[Plaintiff] cannot use jurisdictional discovery to

acquire a basis for jurisdiction that [it] at no point asserted.").

  But even if a party could alter its allegations through a brief after jurisdictional discovery,

the evidence adduced here ███████ the Liquidators' original allegations; ██████████

██████████████████████████. Exhibits 34-37 ████████

█████████████████████████████████

█████████████████████████████████

███████████████████:



See Ex. 35 at PDF p.315 (CitcoRedeemer_02047816).

█████████████████████

█████████████████████:

See Ex. 35 at PDF p.184 (CFSE-LIQ-00614824).

████████████████████████

██████████████████████:

-12-



*See* Ex. 35 at PDF p.181 (CFSE-LIQ-00614821).



. Exhibits 34-37

.

*See* Ex. 35 at PDF p.179 (CFSE-LIQ-00614817).



.



*See* Ex. 35 at PDF p.179 (CFSE-LIQ-00614817), PDF p.16 (ANWAR-CFSE-00218536).[8] █

consistent with the Liquidators' allegations, *see* Mem. at 3█

█ [9] *Compare* FAC ¶ 115 ("[A]ll Redemption Payments were, upon information

and belief, sent by the Citco Banks (upon their receipt from the Funds) to Defendants' B&C

Accounts."), *with* FAC ¶ 133 ("[S]ome or all of the Redemption Payments were received at, upon

information and belief, designated United States-based bank accounts.").

In fact, the Liquidators themselves admit that the Requests "suggest that Sentry might

have sent UBS's redemption payments directly to the Citco Subscriber's account at Citco Bank."

Opp. at 14 n.15. Nonetheless, they ask this Court to construe "ambiguity in the documentary

---

[8] █ *See* Opp. at 13-14. █
█ *See* Ex. 36 at PDF p.116 (CFSE-LIQ-00061520).

[9] The Liquidators also assert that, for example, █
█ Opp. at 32. But the fact that the █
█ at time "A" does not mean Sentry did so at
time "B," █ because Citco Fund
Services was responsible for disbursing redemption payments in its capacity as the Funds' administrator. And █
█ Citco Fund Services "sent UBS's redemption payments directly
to the Citco Subscriber's account at Citco Bank" in Ireland. *Id.* at 14 n.15.

evidence" in their favor. *Id.* But a court may not "draw argumentative inferences in [a] plaintiff's favor" at this stage. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 673. And even if it were appropriate to do so when the Liquidators have spent years developing the record, the ████████—which by the Liquidators' own admission indicate that "Sentry might have sent UBS's redemption payments directly to the Citco Subscriber's account at Citco Bank," Opp. at 14 n.15, with which UBS was required to have an account, *see* Mem. at 8 & n.16—████████ with the Liquidators' allegations that the Redemption Payments at issue here generally (or exclusively) were made by offshore Citco Banks to offshore accounts, *see* Mem. at 8, 11-12; *see also* Opp. Ex. 12 ████████████████████████████

████████████████████████████████████

████████████████ [10]

     In short, the documentary evidence is ████████ with the Liquidators' allegation that all or nearly all the Redemption Payments occurred entirely abroad. Further, the Liquidators do not dispute that each redemption is a separate claim. *See* Mem. at 11. And because each redemption is its own claim and "specific jurisdiction is claim-specific," the Liquidators must establish jurisdiction over UBS with respect to each redemption. *Taormina v. Thrifty Car Rental*, 2016 WL 7392214 at *3 (S.D.N.Y. Dec. 21, 2016). In light of the above, the Liquidators have not done so with respect to most of the redemptions even with the benefit of jurisdictional discovery and even assuming Redemption Payments passing through a ████████████████████ is sufficient for jurisdiction (which it is not).

---

[10] The Liquidators note that one of the B&C Agreements provides that ████████████████████ ████████ Opp. at 9 n.11. ████ ████████████████ *See, e.g.*, Opp. Ex. 12 at ████████ ████████ ; Opp. Ex. 13 ████████ ████

**3.    Redemption Payments That Passed Through** ███████████
███████ **Are Not Jurisdictionally Relevant Contacts**

Even for Redemption Payments that may have been ████████████████████
████████████████████████████████████████—the Liquidators'

allegations and evidence are insufficient.  The Liquidators rely on *Licci ex rel. Licci v. Lebanese*

*Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013), but misapply it.  They claim that use of a

correspondent account gives rise to jurisdiction if the use was "deliberate," "recurring," and

"sufficiently related to the harm for which the plaintiff seeks redress."  Opp. at 29.  But the

Liquidators can tout the sum total of redemptions processed in order to claim that the use at issue

here was recurring, *see id.* at 32-33, only by ignoring what they cannot dispute—*i.e.*, that each

redemption is its own claim.  In any case, regardless of the frequency and sum, the use here was

incidental, and thus not "sufficiently related to the harm for which the plaintiff seeks redress."

The *Licci* court focused on whether the "wire transfers [we]re a part of the principal

wrong at which the plaintiffs' lawsuit [wa]s directed."  732 F.3d at 170; *see also Spetner v.*

*Palestine Inv. Bank*, 70 F.4th 632, 645 (2d Cir. 2023) ("[Defendant's] use … was sufficiently

related to plaintiffs' injuries because it was 'an instrument to achieve the very wrong alleged.'"

(quoting *Licci*, 732 F.3d at 171)).  Although the Liquidators claim that "UBS accomplished the

wrongs for which the Liquidators seek redress using the ████████████████ to buy shares

and obtain the resulting Sentry redemption payments that the Liquidators seek to claw back,"

Opp. at 34, the claims against UBS are not based on wrongful conduct by UBS at all; rather, they

are based on alleged fiduciary breaches *by the Funds' administrator*, Citco Fund Services, in

miscalculating the Funds' NAV, and the Citco Subscribers' alleged knowledge of that

misconduct (which the Liquidators would impute to UBS).  In other words, UBS's use of a ████

██████████████████ to receive Redemption Payments was not, itself, wrongful—let

-16-

alone part of the "principal wrong" underlying the Liquidators' claims.  Indeed, any use of

█████████████████ by UBS was at best only incidental to the principal wrong at which the

Liquidators' suit is directed.  *See, e.g.*, *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at

*6-*7 & n.6 (S.D.N.Y. Mar. 1, 2017) (noting "the passage of money through the U.S. bank

accounts w[as] merely incidental and not specifically directed by any of the … entities to

facilitate the Ponzi scheme"), *aff'd*, 700 F. App'x 66 (2d Cir. 2017).  In fact, Citco could have

delivered the money by hand and nothing about the claims would change.  Thus, because Citco

Fund Services rather than UBS is alleged to have accomplished the wrong—and the

█████████████████ use was incidental to the alleged wrong and not itself wrongful—*Licci*

and related cases cited by the Liquidators are inapposite, and the █████████████

████████ provide no basis for jurisdiction.[11]

## II. Exercising Personal Jurisdiction Here Would Not Comport With The Due Process Clause's Reasonableness Requirement

In light of the limited jurisdictionally relevant contacts the Liquidators have identified

and the fact that the Liquidators do not dispute that they have engaged in forum shopping,

exercising personal jurisdiction would be unreasonable.  *See* Mem. at 19-21; Opp. at 38-40.[12]

---

[11] For example, the Liquidators cite *Averbach v. Cairo Amman Bank*, 2020 WL 486860, at *1 (S.D.N.Y. Jan. 21, 2020), and *Schansman v. Sberbank of Russia PJSC*, 565 F. Supp. 3d 405, 410 (S.D.N.Y. 2021), both of which involve terrorism financing.  *See also Spetner*, 70 F.4th at 43-44 ("By processing payments bearing indicia of terrorism financing … and knowingly providing material support to a customer linked to Hamas, … [plaintiff] facilitated the attacks that are at the heart of this litigation.").  *Picard v. BNP Paribas S.A.*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018) which the Liquidators also cite, Opp. at 27-28, is inapposite because it was brought by the BLMIS Trustee, does not involve constructive trust claims under BVI law, and does not address *Licci*'s emphasis on the defendant's wrong.  The Liquidators also cite *Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022), which states that "exercising personal jurisdiction over [a] defendant" who "chooses to use a United States bank account to receive[] funds" "for causes of action relating to those transfers is constitutional."  But as discussed above, the transfers here are incidental and thus not sufficiently related to the Liquidators' claims.  In addition, *Mertiz* cites *Arcapita*, which is currently on appeal and an outlier in its expansive view of jurisdiction.  *Cf. Hau Yin To*, 2017 WL 816136, at *6.

[12] The Liquidators also do not dispute that a sliding scale applies when a court is conducting its reasonableness analysis.  *See* Mem. at 19; Opp. at 38-40.

As an initial matter, the Liquidators do not dispute that they have elsewhere argued that the Redemption Payments are "purely foreign." *See* Mem. at 15-16. They nonetheless attempt to smooth over their argument by asserting that they previously were purporting to describe only the "component[s] of the transactions at issue" that were "*relevant*" for extraterritoriality purposes. Opp. at 36 (emphasis in original). But their recent appellate brief repeatedly describes the transactions as "foreign" without limitation. *See generally* Brief for Appellants, *In Re: Fairfield Sentry Ltd.*, No. 22-2101, ECF No. 227 (2d Cir. Jan. 27, 2023). And in any event, that the Liquidators agree the Redemption Payments are "purely foreign" in any context—let alone one concerning their territorial center of gravity—highlights the unreasonableness of asserting personal jurisdiction here. It would be unreasonable to permit the Liquidators to play fast-and-loose with their characterizations of their case for such obviously disingenuous strategic reasons.

It is also clear that the United States' interest in this litigation is minimal. *See* Mem. at 20. For example, the Liquidators contend that the United States has "a strong interest in ensuring that its financial system is not used for unlawful purposes." Opp. at 40 (citing *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3 (E.D.N.Y. 2016)). But this case is not about an unlawful "scheme." *Id.* This case is about Citco Fund Services allegedly miscalculating the Funds' NAV in breach of fiduciary duties arising under foreign law, and UBS's purported agents' alleged knowledge of that fact, and none of those parties is alleged to have violated U.S. law. *Cf. In re Fairfield Sentry Ltd.*, 596 B.R. 275, 298 (Bankr. S.D.N.Y. 2018) ("The Liquidators [argue] that there is nothing illegal or immoral in paying a redemption request or seeking to recover it based on the facts alleged regarding Citco's bad faith"; "[T]he redemption payments themselves were lawful."), *aff'd*, 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022), *appeal docketed*, No. 22-2101 (2d Cir. Sept. 9, 2022). Thus, no matter how strong the United States' interest is in monitoring banks

and banking activity for illicit activity, that interest is not implicated here and does not support the exercise of personal jurisdiction. *Cf. Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 23 N.Y.3d 129, 137 (2014) (explaining that "New York's interest in its banking system is not a trump to be played whenever a party … seeks to use our courts for a lawsuit with little or no apparent contact with New York" (citation and quotation marks omitted)).

Along similar lines, the Liquidators' claim that ruling in UBS's favor would "allow[] foreign investors like UBS to evade U.S. jurisdiction" is without merit. Opp. at 40. The claims here do not involve a violation of U.S. law, so there is nothing for UBS to try to evade. Indeed, the Liquidators have not explained why, assuming there is any merit to their claims, UBS could not be held accountable in another forum. Conversely, after unfavorable rulings in their home jurisdiction of the British Virgin Islands, the Liquidators do have an incentive to "evade" the forum whose law governs. In any event, the Supreme Court has stated that entities should be able to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). So there is nothing nefarious about UBS redeeming its shares in foreign funds through a foreign third party with an understanding that doing so would not render it liable to suit here. Rather, allowing a New York court to exercise personal jurisdiction over in a suit involving foreign law, foreign entities, and the alleged bad faith of another foreign entity runs counter to reasonable expectations.

The Liquidators' contention that litigating here imposes no burden on UBS likewise fails. As an initial matter, UBS moved to dismiss for lack of personal jurisdiction nearly six years ago. *See, e.g.*, Motion to Dismiss Adversary Proceeding, Case No. 10-ap-3635, ECF Doc. 171 (Jan. 13, 2017). Its lengthy and continued involuntary participation in this lawsuit is not a matter of

choice, and should not, therefore, be a basis on which to ground a finding of reasonableness.  *See*

Opp. at 39.  Further, contrary to the Liquidators' assertion, *id.* at 40 n.24, the specter of

discovery-derived criminal or civil liability abroad is a cognizable burden.  "The requirement

that a court have personal jurisdiction flows … from the Due Process Clause," and the possibility

of discovery-derived civil or criminal liability is at odds with a "personal jurisdiction

requirement" that "recognizes and protects an individual liberty interest."  *Ins. Corp. of Ireland*

*v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).[13]  Additionally, even if modern

communication and transportation mitigate some of the difficulties associated with litigating

across continents, *see* Opp. at 39, the evidence and witnesses are located abroad, and language

barriers and evidentiary-access issues persist.  By contrast, there is no indication or suggestion

that the Liquidators would be precluded from "adequately resolv[ing] the dispute" elsewhere.

*Gucci Am., Inc.*, 135 F. Supp. 3d at 100 (quoting *Nowak v. Tak How Inv., Ltd.*, 94 F.3d 708, 718

(1st Cir. 1996)).  Indeed, "because the [Funds] live in [the BVI]," adjudication in [New York]

does not appear to advance their 'interest in obtaining convenient and effective relief.'"  *Chaiken*

*v. VV Pub. Corp.*, 119 F.3d 1018, 1029 (2d Cir. 1997) (quoting *Burger King*, 471 U.S. at 477).

　　　　In short, because the relevant factors show that the exercise of jurisdiction would be

unreasonable, dismissal is warranted.

## CONCLUSION

　　　　For the reasons discussed above, this Court lacks personal jurisdiction over UBS, and the

Court should grant UBS's motion to dismiss for lack of personal jurisdiction.

---

[13] Both *Gucci America, Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015), and *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310 (S.D.N.Y. 2018), involved only subpoena compliance.  *See* Opp. at 40 n.24.  As *Gucci* itself noted, moreover, a party potentially subject to liability in a foreign jurisdiction, as UBS is here, may have more "cause to complain of an outrage to fair play" than one merely called upon to comply with a subpoena, *Gucci Am., Inc.*, 135 F. Supp. 3d at 99 (quoting *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998)).

Dated:  July 11, 2023
       New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Marshall R. King*           
    Marshall R. King
    (mking@gibsondunn.com)
    Gabriel Herrmann
    (gherrmann@gibsondunn.com)

200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000

*Attorneys for Defendant UBS AG (incorrectly sued as UBS AG New York and UBS AG Zurich)*