**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LTD., et al.,<br><br>    Debtors in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), at al.,<br><br>                Plaintiffs,<br><br>    -against-<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>                Defendants. | Adv. Pro. No. 10-03635 (CGM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), at al.,<br><br>                Plaintiffs,<br><br>    -against-<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>                Defendants. | Adv. Pro. No. 10-03636 (CGM) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY**
**<u>BANQUE INTERNATIONALE À LUXEMBOURG SA</u>**

CLIFFORD CHANCE US LLP

Jeff E. Butler
Meredith George
31 West 52nd Street
New York, NY 10019
Tel:  212-878-8000

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................... 1

II. ADDITIONAL FACTUAL BACKGROUND ............................................................. 2

III. APPLICABLE LEGAL STANDARD .......................................................................... 4

IV. ARGUMENT .................................................................................................................. 4

    A. BIL Does Not Have Sufficient Minimum Contacts with the United States. .......... 4

        1. Knowledge That Fairfield Sentry Invested in BLMIS Is Not a Contact with the United States ........................................................... 4

        2. Alleged Use of Correspondent Accounts in New York Is Not Sufficient for Personal Jurisdiction in These Actions ............................. 7

        3. Other Alleged "Business Activity" in the United States Does Not Support Personal Jurisdiction in These Actions. ...................................... 9

        4. The Sanctions Order Entered Against BIL Should Not Determine the Outcome of This Motion. ................................................................. 11

    B. The Exercise of Personal Jurisdiction Over BIL Would Not Be Reasonable. ........................................................................................................ 12

        1. Burden on the Defendant ........................................................................ 13

        2. Interests of the Forum ............................................................................. 13

        3. Interests of the Plaintiff in Obtaining Convenient and Effective Relief ........................................................................................................ 14

        4. Efficient Administration of Justice ......................................................... 14

        5. Substantive Policy Considerations ......................................................... 15

V. CONCLUSION ............................................................................................................ 155

## Table of Authorities

Page(s)

**Cases**

*Ahmed v. Purcell*,
  No. 14 Civ. 7491 (KPF), 2016 WL 1064610 (S.D.N.Y. Mar. 14, 2016) ................................ 12

*Asahi Metal Industry Co. v. Superior Court. of California*,
  480 U.S. 102 (1987) ..................................................................................................... 1, 12, 15

*Fairfield Sentry Limited v. Theodoor GGC Amsterdam, et al.*,
  No. 10-3496 (SMB), 2021 WL 771667 (Bankr. S.D.N.Y. Feb. 23, 2021) ............................... 2

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
  141 S. Ct. 1017 (2021) ............................................................................................................ 5, 6

*In re Fairfield Sentry Limited*,
  630 F. Supp. 3d 463 (S.D.N.Y. 2022) ....................................................................................... 2

*International Shoe Co. v. Washington*,
  326 U.S. (1945) ....................................................................................................................... 12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013) ..................................................................................................... 8

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) ......................................................................................... 12, 14, 15

*Paulo v. Agence France-Presse*,
  No. 21 Civ. 11209 (JLR)(SLC), 2023 WL 2873257 (S.D.N.Y. Jan. 19, 2023) ................ 13, 14

*Picard v. Bureau of Labor Insurance*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) ................................................................................... 6, 7

*Porina v. Marward Shipping Co.*,
  No. 05 CIV 5621 (RPP), 2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ......................... 13, 14

*Sherwin-Williams Company v. C.V.*,
  No. 14-CV-6227 (RA), 2016 WL 354898 (S.D.N.Y. Jan. 28, 2016) ......................... 13, 14, 15

*Spetner v. Palestine Investment Bank*,
  70 F.4th 632 (2d Cir. 2023) ..................................................................................................... 8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sunward Electronics, Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) ............................................................................................... 9

*Ticketmaster-NewYork, Inc. v. Alioto*,
    26 F.3d 201 (1st Cir. 1994) ............................................................................................ 12

*Walden v. Fiore*,
    571 U.S. 277 (2014) .................................................................................................... 4, 7

Defendant Banque Internationale à Luxembourg SA ("BIL"), formerly known as Dexia Banque Internationale à Luxembourg SA, respectfully submits this Reply Memorandum in further support of its Motion to Dismiss for Lack of Personal Jurisdiction.

## I.     PRELIMINARY STATEMENT

These actions each involve a single claim for constructive trust under the laws of the British Virgin Islands ("BVI"). At issue are two alleged redemption payments, which allegedly were made by Fairfield Sentry in the BVI to Citco Bank Netherlands N.V. Dublin Branch ("Citco Bank Dublin") in Ireland and then to BIL in Luxembourg. The Liquidators claim, in each case, that BIL had knowledge that the NAV for these payments was incorrect, and that retaining these payments would offend principles of equity and good conscience. At first glance, at least, these claims have no connection whatsoever to the United States.

After substantial jurisdictional discovery, the Liquidators attempt to meet their burden of establishing a prima facie case for personal jurisdiction by submitting evidence of a few tenuous connections between BIL and the United States. In some cases, these connections do not amount to jurisdictional contacts with the United States. In other cases, the connections do not relate to the specific claims at issue in these cases. Even giving the Liquidators the benefit of the doubt, the evidence that the claims at issue arise out of or relate to BIL's connections with the United States is sparse.

In these circumstances, even if the Court finds minimum contacts to exist, this motion to dismiss should be granted based on the "fair play and substantial justice" factors of *Asahi Metal Industry Co. v. Superior Ct. of California*, 480 U.S. 102 (1987). Given that these actions involve a foreign plaintiff asserting a foreign-law claim against a foreign defendant with minimal connections to the United States, these factors weigh heavily against the exercise of personal jurisdiction.

## II. ADDITIONAL FACTUAL BACKGROUND

This motion has been made in two separate actions: *Fairfield Sentry Ltd., et al. v. ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03635 (Bankr. S.D.N.Y.) (the "10-3635 Action") and *Fairfield Sentry Ltd., et al. v. ABN AMRO Schweiz AG, et al.*, Adv. Pro. No. 10-03636 (Bankr. S.D.N.Y.) (the "10-3636 Action"). Together, these actions are referred to herein as the "Citco Actions." In each action, BIL is named as one of more than 80 defendants.

The Fifth Amended Complaint ("FAC") in each of the Citco Actions asserts a single claim for constructive trust under BVI law. This is because all other claims—including claims for unjust enrichment, money had and received, mistaken payment and claims under BVI insolvency law—were dismissed pursuant to previous decisions of the Bankruptcy Court, and these dismissals were affirmed on appeal to the District Court. *See In re Fairfield Sentry Limited*, 630 F. Supp. 3d 463 (S.D.N.Y. 2022). The constructive trust claim avoided similar dismissal only because it is a common law claim brought under foreign law. *See Fairfield Sentry Limited v. Theodoor GGC Amsterdam, et al. (In re Fairfield Sentry Limited)*, No. 10-3496 (SMB), 2021 WL 771667, at *3-4 (Bankr. S.D.N.Y. Feb. 23, 2021).

The FAC in each case lists numerous redemption payments allegedly received through Citco Global Custody (NA) NV ("Citco Global Custody") without connecting any particular payment to BIL. Based on the Liquidators' evidentiary submission, only two of the redemption payments—one in each Citco Action—are alleged to have been received by BIL. The relevant redemption payment in the 10-3635 Action, as set forth in Exhibit A to the FAC, is as follows:

| **Payment Date** | **Redemption Payment** | **No. of Shares** | **Bank Account to which Redemption Payment Was Made** |
|---|---|---|---|
| June 15, 2005 | $1,572,836.72 | 1,495.84 | Citco Global Custody (NA) NV, Netherlands |

(*See* Flugman Decl. Ex. 25.)  The Liquidators have presented evidence that this redemption payment is connected to an earlier subscription for the same number of shares in March 2004. (*See id.* Ex. 2.)  The relevant payment in the 10-3636 Action, as set forth in Exhibit A to the FAC, is as follows:

| Payment Date | Redemption Payment | No. of Shares | Bank Account to which Redemption Payment Was Made |
|---|---|---|---|
| August 18, 2007 | $3,964,353.03 | 3,162.62 | Citco Global Custody (NA) NV, Netherlands |

(*See* Flugman Decl. Ex. 1.)  The evidence shows that this redemption payment is connected to an earlier subscription for the same number of shares in March 2005.  (*See id.* Ex. 3.)

  In addition to the two alleged investments that resulted in the redemption payments at issue in these Citco Actions, BIL had numerous other investments in Fairfield Sentry (and its sister fund, Fairfield Sigma) that resulted in redemption payments.  These other investments were made directly in the name of "Dexia BIL for Customer Account" and not in the name of any Citco entity.  The Liquidators filed a separate action against BIL with respect to these redemptions, which was styled *Fairfield Sentry Limited, et al. v. Dexia BIL for Customer Account*, Adv. Pro. No. 10-04090 (Bankr. S.D.N.Y.) (the "10-4090 Action").  This action named BIL as the only defendant, and like the Citco Actions, included claims for unjust enrichment, money had and received, mistaken payment and constructive trust, as well as claims under BVI insolvency law.  The 10-4090 Action has been dismissed with prejudice.  Thus, the various other investments in the Fairfield funds that were at issue in the 10-4090 Action are plainly *not* at issue in these Citco Actions.

BIL was also involved in other investment vehicles that were negatively affected by the collapse of BLMIS. These were Rafale Partners, Inc., Blue Star Funds, Mianda and Mount Capital Funds. (*See* Flugman Decl. Ex. 29 (Transcript of Herman Dewitte deposition) at 40:3-41:2.) Two of these funds—Rafale Partners and Blue Star—were actively marketed by BIL to its customers. (*Id.* at 96:23-97:20.) Again, investments by BIL in these other Madoff-related feeder funds are not at issue in these Citco Actions.

### III.  ARGUMENT

#### A.  BIL Does Not Have Sufficient Minimum Contacts with the United States.

##### 1.  Knowledge That Fairfield Sentry Invested in BLMIS Is Not a Contact with the United States.

The Liquidators argue that BIL's redemption of shares in Fairfield Sentry through Citco Bank Dublin, combined with the alleged knowledge that Fairfield Sentry invested 95% of its assets in New York-based BLMIS, is a contact with the United States sufficient to confer personal jurisdiction over BIL. This knowledge-based approach to minimum contacts is not consistent with controlling precedents and should be rejected.

The exercise of personal jurisdiction traditionally has been determined by the defendant's own conduct and not by the conduct of other parties or by the defendant's intent. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he defendant's conduct . . . must form the necessary connection with the forum State . . . ."). Here, the Liquidators contend that a redemption of shares in BVI-based Fairfield Sentry by Luxembourg-based BIL, combined with the knowledge that Fairfield Sentry invested most of its assets in New York-based BLMIS, is the same as a withdrawal by BIL *directly* from BLMIS for purposes of personal jurisdiction. That is simply not the case. BIL, Citco Bank Dublin, Fairfield Sentry and BLMIS are all separate corporate entities. There are well-recognized circumstances in which the conduct of one person may be

attributed to another person—for example, when one is the agent or the alter ego of another—but no such circumstances are averred in this case. The Liquidators do allege that Citco Bank Dublin and/or Citco Global Custody were BIL's agents for some purposes, but there is no allegation or averment that *Fairfield Sentry* was the agent or alter ego of BIL. Accordingly, the alleged contacts between Fairfield Sentry and BLMIS have no jurisdictional significance here.

Even if the knowledge of an indirect connection to New York could be considered a relevant contact for jurisdictional purposes, it is important to keep in mind that the claims in these cases arise from *redemptions* of shares in Fairfield Sentry. The Liquidators aver that BIL knew that Fairfield Sentry invested a large portion of its assets in BLMIS. There is no comparable averment, however, that BIL knew redemption payments from Fairfield Sentry were funded by withdrawals from BLMIS. Given that Fairfield Sentry was constantly accepting new investments from subscribers, it is plausible and even likely that redemption payments were frequently funded by cash on hand at Fairfield Sentry, and not from corresponding withdrawals from BLMIS. In any event, there is no evidentiary basis to conclude that the two redemption payments at issue here arose directly from withdrawals from BLMIS.

The Liquidators argue that subscriptions and redemptions are "inextricably linked" such that alleged contacts arising from subscriptions are also related to redemptions. (Opp. 27.) Apart from this conclusory rhetoric, the Liquidators offer no reason to conclude that claims based on redemption payments "arise out of or relate to" subscription-related contacts that allegedly occurred years beforehand. As the Supreme Court observed in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), the concept of relatedness "does not mean anything goes." *Id.* at 1026. The Court went on to clarify: "In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect

defendants foreign to a forum." *Id.* In other words, a mere tenuous connection between the alleged contact and the claim at issue is not enough. There must be a significant connection between the alleged contact and the claim to support a finding of specific personal jurisdiction.

The Liquidators rely heavily on *Picard v. Bureau of Labor Insurance (SIPC v. Bernard L. Madoff Sec. LLC)* ("<u>BLI</u>"), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), to argue that knowledge alone can satisfy the minimum contacts test. The *BLI* decision was based on the assumption that BLI's subscription payments to Fairfield Sentry were transferred by Fairfield Sentry to BLMIS in New York and that, conversely, redemption payments by BLI were funded from corresponding payments from BLMIS to Fairfield Sentry. In that way, the *BLI* court viewed redemption payments from Fairfield Sentry as equivalent to payments from BLMIS. *See id.* at 513 (finding a direct effect in the United States based on the two-way flow of funds to BLMIS).

Here, however, the Liquidators have not presented evidence that redemption payments to BIL were funded from corresponding payments from BLMIS. This omission is especially significant because the Liquidators are in a position to know, based on Fairfield Sentry's internal records, exactly how the alleged redemptions involving BIL were funded. Without a clear link between the relevant payments to BIL and payments from BLMIS in New York, the minimum contacts reasoning of *BLI* does not apply in this case.

The nature of the claim at issue further distinguishes this case from *BLI*. In *BLI*, the BLMIS Trustee was seeking to recover transfers from BLMIS to Fairfield Sentry pursuant to the avoidance provisions of the Bankruptcy Code. As such, the transfers from BLMIS to Fairfield Sentry were essential to the claims, and the claims plainly arose from payments from BLMIS in the United States. Here, in contrast, the constructive trust claim under BVI law does not depend on payments from BLMIS. It is premised instead on alleged knowledge that Fairfield Sentry's

-6-

NAV was miscalculated and inflated, which allegedly made it unfair for BIL to receive redemption payments from Fairfield Sentry.  (*See* FAC ¶¶ 198-209.)  For this additional reason, the personal jurisdiction reasoning of *BLI* does not apply here.

To the extent the *BLI* decision contradicts the reasoning of the Supreme Court in *Walden*, *BLI* should not be followed here.  The Liquidators argue that *Walden* does not contradict their argument that BIL's knowledge is a relevant forum contact.  (Opp. 25-26.)  The Liquidators' reasoning is hard to follow.  The Liquidators draw a distinction between having *knowledge* and having an *express aim*, suggesting that *Walden* would have been decided differently if the police officer defendant in that case had the "express aim" of harming a Nevada resident and not just the "knowledge" of harming a Nevada resident.  This hair-splitting distinction defies common sense and has no support in *Walden*.  Whether characterized as knowledge or express aim, the mental state of the defendant is not a contact relevant to the issue of personal jurisdiction.

### 2. Alleged Use of Correspondent Accounts in New York Is Not Sufficient for Personal Jurisdiction in These Actions.

The Liquidators have presented evidence that payments associated with the two relevant redemptions were made through New York correspondent bank accounts, including those owned by Fairfield Sentry and Citco Bank Dublin.  (Opp. 11-13.)  According to the Liquidators, the use of such bank accounts was a "deliberate" act of BIL.  (*Id.* 31.)  But, apart from the evidence that such accounts were used, there is no evidence presented of any deliberate or purposeful choice by BIL to use these accounts for the two redemption payments at issue.  To the contrary, the evidence indicates that these accounts were used for *all* redemptions from Fairfield Sentry through Citco Bank Dublin.  Thus, it was merely a matter of routine that these accounts happened to be used for the redemptions involving BIL.

In addition, the remaining claim for constructive trust under BVI law does not arise from or have a substantial relationship to the use of New York bank accounts. The constructive trust claim is premised on the allegation that BIL had knowledge that the NAV of Fairfield Sentry was miscalculated and inflated. The alleged fact that redemption payments were routed through correspondent accounts in New York has no significance for this claim. Put differently, the constructive trust claim against BIL would be *exactly the same* even if no New York bank account had been used to effect redemption payments to BIL. Under these circumstances, it cannot be said that the claim at issue arises out of or relates to the use of New York correspondent accounts.

In this regard, a recent decision by the Court of Appeals is instructive. In *Spetner v. Palestine Investment Bank*, 70 F.4th 632 (2d Cir. 2023), the court considered the issue of personal jurisdiction based on defendant's use of a New York correspondent account owned by another bank. The court held, based on *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013), that such use could support personal jurisdiction as long as the use of the correspondent account was "sufficiently related to plaintiffs' injuries." (*Id.* at 645.) The court went on to conclude that this standard was satisfied, stating: "Plaintiffs sufficiently allege facts to support the conclusion that New York was integral to the wrongful conduct." (*Id.* at 646.) Here, in contrast, there is no evidence presented that New York correspondent accounts were integral—or even meaningfully significant—to the Liquidators' constructive trust claim under BVI law. *Spetner* thus supports the conclusion that the alleged use of correspondent accounts in this case is not relevant to personal jurisdiction.

### 3. Other Alleged "Business Activity" in the United States Does Not Support Personal Jurisdiction in These Actions.

The Liquidators refer to a handful of other alleged activities that allegedly connect BIL to the United States. These activities are not contacts with the United States relevant to personal jurisdiction. In addition, most of the alleged activities do not relate to the two redemption payments at issue in these actions.

First, the Liquidators claim that a Fairfield Sentry Subscription Agreement entered by Citco Global Custody NV, allegedly on behalf of BIL, contains a choice of forum clause stating that any action "with respect to this Agreement" may be brought in New York. (*See* Flugman Decl. Ex. 21, clause 19.) The Liquidators then cite *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004), for the proposition that a choice of *law* clause is a significant factor in personal jurisdiction analysis. There is an obvious disconnect here. The Subscription Agreement does *not* contain a New York choice of law clause, and the constructive trust claim at issue in these cases is under BVI law. For these reasons, *Sunward Electronics* is inapposite. In addition, the Subscription Agreement submitted by the Liquidators does not appear to relate to the two redemptions at issue. The Subscription Agreement is dated July 3, 2007. (*See* Flugman Decl. Ex. 21.) In contrast, the Liquidators aver that the subscriptions related to the redemption payments at issue took place in March 2004 and March 2005. (*See id.* Exs. 2 & 3.) Thus, the Subscription Agreement relied upon by the Liquidators was entered more than two years *after* the allegedly relevant subscriptions.

Second, the Liquidators claim that BIL conducted due diligence "aimed at" BLMIS in the United States. The evidence submitted, however, does not indicate that this due diligence took place in the United States or involved direct communications with anyone in the United States. In addition, the evidence submitted is *not* related to the redemptions at issue in this case, nor to

the subscriptions that led to those redemptions. For example, the Liquidators submit a memorandum dated October 8, 2003 discussing Rafale Partners. (Flugman Decl. Ex. 4 at BIL000075-86.) This was a different investment vehicle investing indirectly in BLMIS, which had no connection to the two redemptions from Fairfield Sentry at issue in this case. The Liquidators also submit a presentation from February 2008 analyzing the performance and risks associated with investments in Fairfield Sentry, Rafale Partners and Blue Star. (*Id.* Ex. 4 at BIL000087-101.) This presentation was prepared more than six months *after* the last redemption payment at issue in this case.[1] Finally, the Liquidators submit an email dated November 19, 2004 attaching several annual reports of Fairfield Sentry and certain other BLMIS feeder funds. (*Id.* Ex. 5.) The email itself relates to Rafale Partners and does not address subscriptions or redemptions relating to Fairfield Sentry. In addition, the date of the email does not suggest any connection with the two redemptions at issue.

Next, the Liquidators present evidence that BIL received Private Placement Memorandums ("PPMs") for Fairfield Sentry "on at least three separate occasions." (Opp. 29.) The Liquidators claim this is relevant to personal jurisdiction because these PPMs were prepared by Fairfield Greenwich Group ("FGG"), which was based in New York. (*Id.*) The evidence shows, however, that these PPMs were sent to BIL by Citco Fund Services in Amsterdam. (*See* Flugman Decl. Exs. 6 & 7.) Thus, these PPMs do not provide a connection between BIL and the United States.

---

[1] Similarly, the Liquidators submit a short presentation titled "Why did Dexia BIL offer its clients Rafale, Blue Star and Madoff feeder funds?" (*Id.* at BIL000102-04.) This presentation is undated, but the reference to SEC controls being "abused by B. Madoff" (BIL000104) strongly suggests that it was prepared *after* the BLMIS collapse.

Finally, the Liquidators present evidence of an email communication between BIL and FGG in New York. (*Id.* Ex. 17.) This email, however, does not relate to either of the two alleged redemption payments. The email relates to a subscription in the amount of $200,000 in August 2006. In contrast, the alleged redemption payments at issue in these cases arose from alleged subscriptions in March 2004 and March 2005 (and in much larger amounts). (*See* Flugman Decl. Exs. 2 & 3.) Thus, this email plainly relates to one of BIL's numerous other investments in Fairfield Sentry, which are not at issue here.

### 4. The Sanctions Order Entered Against BIL Should Not Determine the Outcome of This Motion.

Judge Morris entered an Order Granting Motion for Sanctions Under Rule 37(e) Against Banque International à Luxembourg SA on March 17, 2023 (Dkt. 1098) (the "Sanctions Order"). The Sanctions Order establishes an adverse inference against BIL "that any spoliated evidence would have been favorable to the Liquidators in establishing personal jurisdiction" over BIL. In addition, the Sanctions Order precludes BIL from making certain arguments in these actions, including some arguments concerning BIL's "communications with U.S.-based entities or individuals." This aspect of the Sanctions Order necessarily limits the arguments BIL can make in this Reply Memorandum.

Still, the Sanctions Order does not *require* a finding of personal jurisdiction over BIL. Accordingly, the Court has discretion, consistent with the Sanctions Order and the law of the case, to decide this motion on the basis of the evidence submitted by the Liquidators. We respectfully reiterate that such evidence alone does not support a finding of minimum contacts between BIL and the United States.

### B. The Exercise of Personal Jurisdiction Over BIL Would Not Be Reasonable.

Assuming, for purposes of argument, that the Liquidators have made a prima facie showing of minimum contacts, the Court also must find that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To do so, the Court must consider the five factors set forth in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987). These are summarized in *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) as: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* at 568.

The Court should consider these factors in light of the strength or weakness of the relevant forum contacts. "[D]epending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." *Id.* (citing *Ticketmaster-NewYork, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994) ("We think . . . that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction.")). Thus, where the plaintiff meets the minimum contacts standard by only a "slender margin," a court must be "particularly careful to ensure that the exercise of personal jurisdiction [is] reasonable." *Ahmed v. Purcell*, No. 14 Civ. 7491 (KPF), 2016 WL 1064610, at *10 (S.D.N.Y. Mar. 14, 2016).

Here, each of the five *Asahi* factors weighs against the exercise of personal jurisdiction over BIL in this case.

### 1. Burden on the Defendant

It stands to reason that a bank incorporated and based in Luxembourg "would face a significant burden by having to defend [a] case in federal court in New York." *Paulo v. Agence France-Presse*, No. 21 Civ. 11209 (JLR)(SLC), 2023 WL 2873257, at *28 (S.D.N.Y. Jan. 19, 2023) (internal quotations omitted). There is no evidence that BIL has any offices or employees in the United States, or that defending an action in the United States is for some other reason less burdensome for BIL than it would be for any other resident of Luxembourg. *See Porina v. Marward Shipping Co.*, No. 05 CIV 5621 (RPP), 2006 WL 2465819, at *8 (S.D.N.Y. Aug. 24, 2006) (finding substantial burden because the defendant had no "records, files, or witnesses with information about the litigation" in New York).

The Liquidators point out that BIL has participated in these lawsuits for more than ten years. (Opp. 39.) That may be true, but it does not imply the absence of burden on BIL. In fact, these lawsuits have been expensive and burdensome for BIL throughout. The fact that BIL has been subject to this burden for over ten years should not be held against BIL when assessing this factor.

### 2. Interests of the Forum

This Court has virtually no interest in resolving the remaining claim for constructive trust under BVI law. Because the parties are foreigners, this Court automatically has a diminished interest in resolving the dispute. *See Paulo*, 2023 WL 2873257, at *29 (observing that where the parties are foreign, "New York's interests in having the dispute heard . . . are considerably diminished" (internal quotation marks omitted)). Moreover, the only remaining claim is an equitable claim under BVI law. This is further reason to conclude that this Court's interests in

-13-

resolving the dispute are minimal at best. *See Sherwin-Williams Company v. C.V.*, No. 14-CV-6227 (RA), 2016 WL 354898, at *5 (S.D.N.Y. Jan. 28, 2016) (finding no forum interest where neither party was a resident of New York and the claims arose under Mexican law). Thus, this factor too weighs against the exercise of personal jurisdiction.

### 3. Interests of the Plaintiff in Obtaining Convenient and Effective Relief

To prevail on this factor, a plaintiff must explain why this is the most convenient and efficient forum available. *See Sherwin-Williams*, WL 354898, at *5. The most suitable forum is normally the forum whose laws govern the dispute. *Id.* Where "there is no showing that the Plaintiffs are residents of the United States or that it would be more convenient for any Plaintiff to litigate in the United States rather than another country," this factor weighs in favor of the defendant. *Porina*, WL 2465819, at *8.

As the liquidators of a BVI fund, seeking to maintain a claim under BVI law against a Luxembourg bank, the Liquidators cannot reasonably claim to have an interest in obtaining relief from this particular forum. The Liquidators, with much more efficiency, could have pursued this claim either in the BVI or in BIL's home jurisdiction of Luxembourg.

### 4. Efficient Administration of Justice

In assessing this factor, courts look to "where witnesses and evidence are likely to be located." *Met. Life Ins. Co.*, 84 F.3d at 574. In *Metropolitan Life*, the Second Circuit evaluated where the witnesses and evidence were located, where the defendant was located, the site of the alleged wrongdoing and the plaintiff's domicile, and determined that "the locus of the alleged tort" and plaintiff's domicile had "far more significant interests in resolving the dispute." *Id.*; *see also Paulo*, 2023 WL 2873257, at *29; *Sherwin-Williams*, 2016 WL 354898, at *6.

Here, the Liquidators do not claim that relevant witnesses or evidence are located in the United States. Moreover, the locus of the alleged wrongful acts is Europe, where BIL allegedly

unfairly received payments from Fairfield Sentry. Accordingly, this factor also weighs against the exercise of personal jurisdiction.

### 5. Substantive Policy Considerations

Lastly, the court must assess the "common interests of the several states in promoting substantive social policies." *Met. Life Ins. Co.*, 84 F.3d at 575. When the entity potentially subject to the court's jurisdiction is foreign, "courts consider the international judicial system's interest in efficiency and the shared interests of the nations in advancing substantive policies." *Sherwin-Williams*, 2016 WL 354898, at *6. The Supreme Court in *Asahi* explained that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." 480 U.S. at 115. In *Sherwin-Williams*, because the parties agreed to be governed by Mexican law and because neither party identified a substantive social policy implicated by the case, the court held that the fifth *Asahi* factor weighed, "if in either direction, slightly against the exercise of jurisdiction." *Id.*

The Liquidators argue that the substantive policy at issue here is the United States ensuring that its financial system is not used for unlawful purposes. (Opp. 40.) This lawsuit, however, does not center on use of the United States financial system. The claim at issue in this case is one for constructive trust premised on the allegation that it was unfair for BIL in Luxembourg to receive two redemption payments from a BVI fund. The Liquidators have not put forward any evidence that the United States has a substantive policy interest in regulating this type of payment.

## IV.    CONCLUSION

For the foregoing reasons, BIL's Motion to Dismiss for Lack of Personal Jurisdiction should be granted.

Dated: July 31, 2023

Respectfully Submitted,

CLIFFORD CHANCE US LLP

By:   s/ Jeff E. Butler

Jeff E. Butler
Meredith George
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-805
jeff.butler@cliffordchance.com
meredith.george@cliffordchance.com

*Attorneys for Banque Internationale à Luxembourg SA, formerly known as Dexia Banque Internationale à Luxembourg SA*

-16-