UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>        Debtor in Foreign<br>        Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (JPM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>        Defendants. | Adv. Pro. No. 10-03496 (JPM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>ABN AMRO SCHWEIZ AG et al.,<br><br>        Defendants. | Adv. Pro. No. 10-03635 (JPM) |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>ABN AMRO SCHWEIZ AG, et al.,<br><br>        Defendants. | Adv. Pro. No. 10-03636 (JPM) |

**REPLY IN SUPPORT OF DEFENDANT SIX SIS LTD.'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

# Contents

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT .................................................................................................................3

I.    APPLICABLE STANDARD ..................................................................................3

II.   THE LIQUIDATORS HAVE FAILED TO ESTABLISH THAT SIX SIS HAS

SUFFICIENT CONTACTS WITH NEW YORK OR THE UNITED STATES. ...............4

     A.    The Liquidators Fail to Allege Any Jurisdictionally Relevant Contacts
Between SIX SIS and the United States ..............................................................4

     B.    The "Citco Subscriber's" Alleged Use of Correspondent Accounts is Not
Sufficient to Support Jurisdiction in these Actions ............................................9

     C.    The Funds' Jurisdictional Contacts Cannot be Imputed to SIX SIS ........12

     D.    The Liquidators' Claims do not Arise out of the Alleged Jurisdictional
Contacts...............................................................................................................14

III.  THE EXERCISE OF JURISDICTION OVER SIX SIS IS UNREASONABLE AND

THEREFORE INCONSISTENT WITH DUE PROCESS .................................................16

     A.    Merits Litigation Will Impose a Significant Burden on SIX SIS .............16

     B.    There is Minimal Forum Interest in This Foreign Dispute .......................17

     C.    The Liquidators' Forum Shopping to Avoid Dismissal in the BVI is Not a
Legitimate Effort to Obtain "Convenient and Effective Relief".....................18

     D.    The Liquidators Identify No Relevant Witnesses or Evidence Located in
the United States..................................................................................................19

     E.    No Substantive U.S. Social Policies are Implicated in This Case ............19

CONCLUSION ..........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Rushaid v. Pictet & Cie*,
   28 N.Y.3d 316 (2016) ................................................................................................11, 12

*In re Amaranth Nat. Gas Commodities Litig.*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008) ........................................................................ 14

*Art Assure Ltd., LLC v. Artmentum GmbH*,
   2014 WL 5757545 (S.D.N.Y. Nov. 4, 2014) ..............................................................3, 4

*Asahi Metal Industry Co. v. Superior Court of California*,
   480 U.S. 102 (1987) ....................................................................................... 16, 17, 19

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ...................................................................................................6, 14

*In re CIL Lmtd.*,
   582 B.R. 46 (S.D.N.Y. 2018) ...................................................................................... 16

*In re Commodore Intern., Ltd.*,
   242 B.R. 243 (Bankr. S.D.N.Y. 1999) ........................................................................ 13

*In re Fairfield Sentry Ltd.*,
   2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ................................................. 10

*Fairfield Sentry Ltd. (In Liquidation) v. Citibank, N.A. London*,
   2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ............................................................. 8

*Fairfield Sentry Ltd. (in Liquidation) v. Migani*
   [2014] UKPC 9 .............................................................................................................. 8

*In re Fairfield Sentry Ltd. Litig.*,
   458 B.R. 665 (S.D.N.Y. 2011) .................................................................................... 18

*Fairfield Sentry Ltd. v. Citibank NA London*,
   No. 19-cv-3911 (S.D.N.Y. July 21, 2021) (Dkt. 440).............................................14, 15

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
   414 F.3d 325 (2d Cir. 2005) ......................................................................................... 9

*GTFM, Inc. v. Fubutu Home & Educ. Media, Inc.*,
   2003 WL 22439791 (S.D.N.Y. Oct. 27, 2003)............................................................. 3

*Hau Yin To v. HSBC Holdings, PLC*,
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ........................................................................10, 12

*Hau Yin To v. HSBC Holdings PLC*,
    700 F. App'x 66 (2d Cir. 2017) ...................................................................................................7

*Hill v. HSBC Bank plc*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016) ..................................................................................7, 10

*J. McIntyre Mach. Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ..............................................................................................................13, 14

*Licci v. Lebanese Canadian Bank*,
    732 F.3d 161 (2d Cir. 2013) ..................................................................................................11, 12

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
    12 N.E.3d 456 (N.Y. 2014) .......................................................................................................11

*Met. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ........................................................................................................19

*Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) .....................................................................................................11

*Picard* v. *Banque Lombard Odier & Cie SA (In re Bernard L. Madoff)*,
    2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ................................................................15

*Picard v. Bureau of Labor Insurance*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) .......................................................................................15

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    2023 WL 3514105 (Bankr. S.D.N.Y. May 17, 2023) ................................................................10

*Sherwin-Williams Co. v. C.V.*,
    No. 14-CV-6227 (RA), 2016 WL 354898 (S.D.N.Y. Jan. 28, 2016) .......................................17

*SPV Osus, Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) .....................................................................................................2, 7

*Tamam v. Fransabank Sal*,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010) .......................................................................................10

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013) ................................................................................................3, 4, 7

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019) ........................................................................................................3

*Univ. Trading & Inv. Co. v. Tymoshenko*,
    2012 WL 6186471 (S.D.N.Y. 2012) ..........................................................................................11

*Walden v. Fiore*,
571 U.S. 277 (2014) ...........................................................................................................13, 14

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ................................................................................................................ 16

*Yellowbear v. Ashe*,
612 F. App' x 918 (10th Cir. 2015)........................................................................................... 6

**Statutes**

Swiss Banking Act.......................................................................................................................... 17

Swiss Data Protection Act.............................................................................................................. 17

Swiss Financial Market Infrastructures Act ................................................................................. 17

**Other Authorities**

Fed. R. Civ. P. 12(b).......................................................................................................................... 1

Defendant SIX SIS Ltd., f/k/a SIS SegaInterSettle AG, and named in the Complaint as

both SIX SIS Ltd. and SIS Seeganintersettle ("SIX SIS" or "Defendant"), respectfully submits

this Reply in further support of its Motion to Dismiss the Fifth Amended Complaint ("FAC"),

filed by the Fairfield Liquidators, under Federal Rule of Civil Procedure 12(b)(2) for lack of

personal jurisdiction (the "Motion").[1]  For the reasons set forth in SIX SIS's Motion, the FAC

should be dismissed in its entirety and with prejudice.

## PRELIMINARY STATEMENT

After two years of jurisdictional discovery, the Liquidators have not come close to

carrying their burden to show the "minimum contacts" necessary for personal jurisdiction over

SIX SIS.  On the contrary, discovery has confirmed that SIX SIS had no relevant contacts with

New York or the United States:  SIX SIS conducted no business in the U.S., it had no office or

employees in the U.S., and, contrary to the false allegations in the FAC (¶ 141), it did not use

any U.S. bank account to receive the relevant redemptions.  Discovery has further revealed that

SIX SIS did not conduct due diligence on BLMIS or the Fairfield Funds, had no investment

discretion, and did not provide advice concerning its clients' investments.

The documents relied on by the Liquidators only serve to confirm the limited and

ministerial nature of the services SIX SIS provided in its capacity as the national Central

Securities Depository for the Swiss financial market.  Far from being a "beneficial shareholder,"

SIX SIS's business generally, and its role here in particular, was limited to providing securities

custody and settlement services for banks and other financial institution clients.  In that capacity,

---

[1]    Unless otherwise defined, capitalized terms used herein have the same meaning as in the
Memorandum of Law in Support of Defendant's Motion to Dismiss the Fifth Amended
Complaint (the "Opening Brief" or "Opening Br.") (10-ap-03635 Dkt. Nos. 770, 774;  10-ap-
03636 Dkt. Nos. 835, 843).

1

SIX SIS acted as a mere pass-through for transactions between its foreign clients and the foreign Fairfield Funds.

Nor, contrary to the Liquidators' mischaracterization, is there any evidence that SIX SIS conducted due diligence on BLMIS or the Fairfield Funds ███████████████████ ██████████████████ The Liquidators purport to rely on an email exchange which, they claim, █████████████████████████████████████████████ But SIX SIS was *not involved in that email exchange*.  Instead, the relevant communications were between ████████ ██████ Yet, with no apparent basis, the Liquidators wrongly attribute this exchange to SIX SIS. That is simply false.  The Liquidators' remaining arguments are boilerplate – essentially cut and pasted from their oppositions against other defendants.  The tenuous connections alleged are either not attributable to SIX SIS or are jurisdictionally irrelevant.

Not only have the Liquidators' allegations concerning SIX SIS's purported contacts with New York and the United States proven to be false, but SIX SIS is not subject to personal jurisdiction in this proceeding for the further, independent reason that the Liquidators' sole remaining claim under BVI law for a constructive trust does not *arise out of* any of the contacts alleged.  The Liquidators' constructive trust claim is premised on their allegation that the Funds' Dutch Administrator, Citco Fund Services, breached its duties to the Funds by miscalculating the Funds' NAV, and that SIX SIS (like all other investors who used Citco Global Custody N.V. as a custodian) somehow "knew" that the NAV was misstated.  Thus, the Liquidator's BVI constructive trust claim does not implicate the United States.  And, even if it did, SIX SIS's purported U.S. contacts are jurisdictionally irrelevant to the Liquidators' claim.

Finally, even assuming that (i) the contacts alleged could possibly support a finding of jurisdiction (they do not), and (ii) the Liquidators' BVI constructive trust claim arose out of the alleged jurisdictional contacts (it does not), the exercise of jurisdiction over SIX SIS under these

circumstances, as demonstrated below, is not reasonable and does not pass Constitutional muster.

Accordingly, the FAC against SIX SIS should be dismissed with prejudice.

## ARGUMENT

### I.    APPLICABLE STANDARD

It is undisputed that SIX SIS is not subject to general jurisdiction in New York.

Therefore, specific jurisdiction is the only potential basis for personal jurisdiction over SIX SIS

in this proceeding.  To establish specific jurisdiction, the Liquidators must satisfy the well-

established "minimum contacts" standard.   That, in turn, requires the Liquidators to show (i) that

SIX SIS purposefully availed itself of the benefits of the forum, and (ii) that the Liquidators'

BVI constructive trust claim "arise[s] out of or relate[s] to" defendant's forum conduct.  *U.S.*

*Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (*quoting Bristol-Myers*

*Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 272 (2017)).

Where, as here, jurisdictional discovery is complete, the Liquidators can no longer rely

on mere allegations in the FAC and must instead demonstrate that the grounds for exercising

personal jurisdiction are "factually supported."  *GTFM, Inc. v. Fubutu Home & Educ. Media,*

*Inc.*, 2003 WL 22439791, at *2 (S.D.N.Y. Oct. 27, 2003) (*citing Ball v. Metallurgie Hoboken–*

*Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  The Liquidators cannot rely on

"argumentative inferences," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir.

2013) (*quoting Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994)),

"legal conclusion[s] couched as a factual allegation," *id.* (*quoting Jazini v. Nissan Motor Co.*,

148 F.3d 181, 185 (2d Cir. 1998)), or "conclusory statements without any supporting facts," *Art*

*Assure Ltd., LLC v. Artmentum GmbH*, 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014)

(*quoting Jazini*, 148 F.3d at 185).  Rather, the Liquidators' prima facie showing must be based

on actual *evidence.*

3

## II.    THE LIQUIDATORS HAVE FAILED TO ESTABLISH THAT SIX SIS HAS SUFFICIENT CONTACTS WITH NEW YORK OR THE UNITED STATES.

### A.    The Liquidators Fail to Allege Any Jurisdictionally Relevant Contacts Between SIX SIS and the United States

*i.    The Liquidators Purport to Rely on an Isolated Email Exchange in which SIX SIS Was Not Even Involved.*

In their Opposition, the Liquidators rely heavily on an email exchange ████████ to

establish minimum contacts between SIX SIS and New York or the U.S.  *See* Opp. at 7–9, 20–

26, 34–35.  The emails in the exchange are attached as Exhibits 7 and 9 to the Opposition.  The

Liquidators argue that these emails demonstrate the following jurisdictional facts:



- ████████████████████████████ ████████████████████████ Opp. at 7;

- ████████████████████████████████ ████████████████████████ Opp. at 7, 22;  and

- ██████████████████████████████ ██████████████████████████████ ████████████████████ Opp. at 7, 22–23.

This email exchange is the sole connection between SIX SIS and the Fairfield Sentry

Private Placement Memoranda (PPM)[2] and serves as the only basis for the Liquidators'

contention that SIX SIS "knowingly and intentionally" invested in the United States.  Opp. at 3,

7–9, 20, 34–35.[3]

---

[2]    The jurisdictional irrelevance of the PPM is discussed in Section II.C, below.
[3]    The Liquidators claim that, to the extent the court considers the Liquidators' allegations that SIX SIS knew the Funds' NAV were inflated in resolving this Motion, the court should "credit those allegations as true."  Opp. at 14 n.17.  That is wrong.  The Liquidators cannot rely on "argumentative inferences," *In re Terrorist Attacks*, 714 F.3d at 673, or conclusory statements without any supporting facts," *Art Assure Ltd.*, 2014 WL 5757545, at *2.  As discussed herein,

The Liquidators have it wrong.  This email exchange does not involve any SIX SIS

representative.  The Liquidators simply ignore that the emails are between individuals

unaffiliated with SIX SIS.  The emails indicate that ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████

███████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

As the Liquidators themselves note, SIX SIS did not produce the email exchange

(Declaration of David Flugman, ECF No. 1144, ¶¶ 11, 13).  And that is because, unsurprisingly,

SIX SIS had no copy of the emails in its possession.  ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  Rather, as

Exhibit 6 shows, ████████████████████████████████████████████████

████████████████████████████████████████████████████████

the Liquidators have not identified a single piece of evidence demonstrating SIX SIS's
knowledge of the Funds' investment strategy, let alone that SIX SIS knew that the Funds'
administrator, which was responsible for calculating the NAV on behalf of the Funds, had
miscalculated the NAV.



In reality, the Liquidators' exhibits merely illustrate the ministerial role that SIX SIS played as a financial intermediary in settling transactions on behalf of its clients. Indeed, Exhibit 6 shows that ███████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

██████████████████████. Opp. Ex. 6 at -050. The receipt of two emails from a U.S. contact in connection with SIX SIS's custodial duties plainly cannot support a finding of jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (holding that a defendant cannot be haled into a jurisdiction based on the "unilateral activity of another party or a third person" (citation omitted)); *Yellowbear v. Ashe*, 612 F. App' x 918, 921 (10th Cir. 2015) (holding that defendant's "passive receipt" of "letters and emails, however, does not show that he purposefully availed himself of the privilege of conducting business" in the forum).

While the Liquidators have offered **no** evidence that ████████████████████████,

even if it had done so, the Second Circuit has held that such communications "in connection with

fund administration and custodial duties do not give rise to personal jurisdiction." *Hau Yin To v.*

*HSBC Holdings PLC*, 700 F. App'x 66, 67 (2d Cir. 2017); *see also SPV Osus, Ltd. v. UBS AG*,

882 F.3d 333, 345 (2d Cir. 2018) (finding a "handful of communications and transfer of funds . .

. are insufficient to allow the exercise of specific personal jurisdiction over the [Foreign]

Defendants"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding

allegations that foreign defendants "communicated with and transmitted information and funds

to and from BLMIS located in New York" were insufficient to "project" the foreign defendants

into New York) (internal quotations omitted).

The Liquidators rely on the SIX SIS's purported receipt of the Sentry PPM and other

Fairfield documents in Exhibits 7–9 to argue that SIX SIS "knowingly and intentionally"

directed investments to the United States.  Opp. at 20. ██████████████████████████

████████████████████████████████████ ████████████████████

████████████████████████████████████████

████████████████    See Opp. Ex. 7 (████████████████████████

---

[4]    Not only do the Liquidators misrepresent SIX SIS's involvement, but they then draw
inappropriate inferences from those misstated facts.  See Opp. at 23 n.18 (arguing that SIX SIS
chose to invest in the Funds "while knowing that the investments were ultimately targeted at the
U.S."); Opp. at 24 n.20 ██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████. But the law is clear that
"argumentative inferences" cannot be drawn in the Liquidators' favor.  *In re Terrorist Attacks*,
714 F.3d at 673.



); Opp. Ex. 9 (

Nothing in the record suggests that *SIX SIS* ever received the Fairfield documents, let alone that it knowingly or intentionally directed investments to the United States based on the information in those documents – the Liquidators' argument is pure conjecture.

   ii. *The Alleged "U.S.-Oriented Business Activity" is Jurisdictionally Irrelevant*

Next, the Liquidators claim that SIX SIS had other "U.S.-oriented business activity" supporting the exercise of jurisdiction. Again, the Liquidators' allegations are belied by their own documentary evidence. Far from demonstrating "U.S.-oriented business activity," the Liquidators point to a single Fairfield Sigma subscription agreement signed by Citco Custodian, allegedly on SIX SIS's behalf. Opp. at 32–33. This subscription agreement contains New York choice of law and forum selection clauses for claims relating to the subscription. Opp. Ex. 14 at -378.

And, even if it was, multiple courts in the U.S. and abroad have found that the Fairfield subscription agreements do not support the exercise of jurisdiction, as the Liquidators' claims do not arise from those agreements. *See, e.g.*, *Fairfield Sentry Ltd. (In Liquidation) v. Citibank, N.A. London*, 2022 WL 4391023, at *12 (S.D.N.Y. Sept. 22, 2022) ("I reject [Plaintiffs'] argument that their claims are 'with respect to the Subscription Agreement' because the Subscription Agreement was the 'basis of the contractual relationship' between the investors and the Funds."); *Fairfield Sentry Ltd. (in Liquidation) v. Migani* [2014] UKPC 9, [10] ("[W]hat

matters is not the subscriber's acknowledgements, representations and warranties, nor the factual statements of the Fund, but the terms of the subscriber's membership of the Fund, which govern the redemption of its shares."). See Declaration of Erin E. Valentine in Support of SIX SIS Ltd.'s Reply in Support of Motion to Dismiss ("Valentine Decl."), Ex. A. As the U.K. Privy Council recognized, the Liquidators' claims based on the misstated NAV do not arise out of the subscription agreement.

Finally, the choice of law and forum selection clauses in the subscription agreement (signed by Citco Custodian) did not make it foreseeable that SIX SIS would be subject to suit here on BVI-law-governed, intra-corporate claims relating to redemptions from the Funds. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin*., 414 F.3d 325, 334 (2d Cir. 2005) (recognizing "a reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action"). Thus, the Liquidators' reliance on the Sigma subscription agreement is misplaced.

### B. The "Citco Subscriber's" Alleged Use of Correspondent Accounts is Not Sufficient to Support Jurisdiction in these Actions

Recognizing the lack of connection between SIX SIS and the United States, the Liquidators argue that Citco Bank Dublin's[5] use of correspondent bank accounts – including those owned by Fairfield Sentry[6] – support the exercise of jurisdiction over SIX SIS. According

---

[5]    The Liquidators acknowledge that several Citco entities were involved with the Fairfield Funds and their investors. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Citco Custodian and Citco Bank Dublin also provided custodial and banking services to the Funds independent from SIX SIS. Citco Fund Services (Europe) B.V. served as the Funds' administrator. SIX SIS had no relationship with Citco Fund Services.

[6]    As discussed in Section II.C, the Fairfield Funds' contacts with the United States cannot serve as a basis for the exercise of jurisdiction over SIX SIS.

to the Liquidators, the use of such accounts was a "deliberate" act by SIX SIS.  Opp. at 27.  Here again, the Liquidators' contention is inconsistent with the evidence and unsupported by the law.

As a preliminary matter, this Court has already determined that Citco Bank Dublin acted as the *Funds'* agent.  *See In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec. 14, 2020) (Bernstein, J.) ("[T]he Funds were customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made…."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2023 WL 3514105, at *8 (Bankr. S.D.N.Y. May 17, 2023) (Morris, J.) (recognizing that "law of the case doctrine applies across adversary proceedings within the same main case.").  On that basis alone, the Liquidators' allegations fail as a matter of law.

But even if this Court had not already found that Citco Bank Dublin was the agent of the Funds – rather than an agent of the Funds' *investors* – the Liquidators have failed to show that SIX SIS directed Citco Bank Dublin to use U.S. correspondent bank accounts.  To the contrary, these correspondent accounts were used for *all* redemptions from Fairfield Sentry through Citco Bank Dublin.  Far from being a "deliberate" act by SIX SIS, Citco Bank Dublin's use of the correspondent account was routine for all Fairfield Fund subscriptions and redemptions on behalf of the Funds and numerous investors.  Such routine use of a correspondent bank account in the ordinary course, and having nothing to do with SIX SIS specifically, cannot confer jurisdiction over SIX SIS here.  It is black letter law that a foreign party's incidental use of the U.S. banking system is insufficient to confer personal jurisdiction.  *See Hau Yin To v. HSBC Holdings, PLC*, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) at *5 (rejecting personal jurisdiction over foreign defendants because the transmission of information and funds "to and from BLMIS . . . [was an] incidental consequence[] of fulfilling a foreign contract"); *Hill*, 207 F. Supp. 3d at 339–40 (same); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have

routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.") (collecting cases); *Univ. Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on . . . a correspondent bank account.") (internal quotation omitted).[7]

While the deliberate use of the U.S banking system may, in certain limited circumstances, be an appropriate hook for exercising specific personal jurisdiction, courts in this Circuit have done so only where the foreign defendant's use of the U.S. banking system *itself* constitutes the "principal wrong." *See e.g.*, *Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016); *Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 69 (S.D.N.Y. 2016). In *Licci*, for example, the complaint alleged that the defendant foreign bank aided terrorist groups by giving them access to the U.S. financial system through its use of correspondent bank accounts. 732 F.3d at 169 ("[T]he plaintiffs' claims are also grounded in the allegation that [defendant] violated various statutory duties by using its correspondent account … [thus] the defendant's allegedly culpable conduct stems from this use of the New York correspondent account…."). Thus, the court found that the defendant was subject to personal jurisdiction because the U.S. bank accounts were used in furtherance of illegal activity and, as such, were an integral part of the claims. Similarly, in *Rushaid*, the court found that a foreign bank was subject to personal jurisdiction in New York

---

[7]    Were the incidental use of U.S.-based accounts sufficient to confer personal jurisdiction over foreign entities, New York would become a forum for a host of foreign commercial disputes that otherwise have no connection with New York, merely because global transactions are frequently cleared in U.S. dollars in New York. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459–60 (N.Y. 2014) ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York.").

because it intentionally and repeatedly used a correspondent bank account in New York as an

"integral" part of a fraudulent scheme to wire criminal proceeds to defendants.  28 N.Y.3d at

328–29, 339.  To give rise to jurisdiction, the U.S. correspondent bank account must be "an

instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress." *Licci*,

732 F.3d at 171.  These cases demonstrate that a ministerial correspondent account, with no

connection to the claims, is not a sufficient jurisdictional connection.

      In contrast, here, the evidence demonstrates that SIX SIS did not itself use a

correspondent account.  Even if the Court were to find that Citco Bank Dublin was acting on SIX

SIS's behalf (as opposed to the Funds), there is no allegation that Citco Bank Dublin provided

any "unlawful banking services" in the U.S., or that Citco Bank Dublin's ministerial use of a

U.S. correspondent account was integral to the alleged illegal conduct (the administrator's

misstated NAV) that gives rise to the Liquidators' claims. *See Hau Yin*, 2017 WL 816136, at *7

n.6 ("The wiring of funds through New York in this case, however, was passive, rather than

'integral' to the alleged Ponzi scheme. . . . Here, the passage of money through the U.S. bank

accounts were merely incidental and not specifically directed . . . to facilitate the Ponzi

scheme.").  Thus, Citco Bank Dublin's use of correspondent accounts for all Fairfield

transactions is insufficient to confer jurisdiction over SIX SIS.

### C.  The Funds' Jurisdictional Contacts Cannot be Imputed to SIX SIS

      Recognizing that SIX SIS itself had no contacts with the U.S. in connection with the

investments it facilitated in the BVI Funds, the Liquidators purport to rely mainly on

representations *by the Fairfield Funds* and their agents regarding *the Funds' U.S. activities* made

in the Funds' PPMs and other materials the Funds put together for their investors.  Opp. at 22–

24.  Those documents, the Liquidators contend, demonstrate that SIX SIS invested in the Funds

"knowingly" or "intentionally" to direct investments to New York-based BLMIS.

That theory fails for several reasons.  To begin with, as discussed above, there is no evidence suggesting that SIX SIS ever even *received* the Funds' offering documents.  *See supra* Section II.A.i.  And even if SIX SIS had, it is well-settled that the *plaintiff's* activities in a forum state cannot "drive the jurisdictional analysis."  *Walden v. Fiore,* 571 U.S. 277, 289 (2014) (rejecting foreseeability of plaintiff's contact with the forum as basis for personal jurisdiction); *see also J. McIntyre Mach. Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum…."); *In re Commodore Intern., Ltd.*, 242 B.R. 243, 253 (Bankr. S.D.N.Y. 1999) ("New York courts have declined personal jurisdiction where the activities within the state were those of the plaintiff rather than those of the defendant.").

Moreover, the Funds' PPMs, on their face, ███████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████ In short, contrary to the Liquidators' argumentative inferences (which cannot be credited), nothing in the Funds' documents suggested to investors that the Funds would act as a mere pass-through.

Finally, even if, contrary to the actual facts, SIX SIS had known the Funds would use the money raised to invest in the U.S., the United States Supreme Court has squarely rejected the

Liquidators' argument that mere knowledge of a *consequence* in a forum state is sufficient to confer personal jurisdiction. *Walden,* 571 U.S. at 289; *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum . . ."); *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 536–37 (S.D.N.Y. 2008) (finding lack of personal jurisdiction where company's sole contact with forum was investment in foreign hedge fund managed by members in forum state). And the Liquidators' argument as applied to SIX SIS, a purely execution-only custodian, is without precedent. As a matter of both fact and law, the Liquidators have not, and cannot, show that SIX SIS purposefully availed itself of the benefits and protections of New York.

### D. The Liquidators' Claims do not Arise out of the Alleged Jurisdictional Contacts

As the Liquidators recognize, to satisfy the requirements of specific jurisdiction, the alleged wrongdoing must "arise[]out of or relate[] to" the alleged jurisdictional contacts. *Burger King Corp.*, 471 U.S. at 475. The Liquidators cannot satisfy that test here. On the contrary, as the Liquidators recently acknowledged, "*every relevant component* of the transactions at issue here occurred outside the territorial jurisdiction of the United States." Pls.-Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911 (S.D.N.Y. July 21, 2021) (Dkt. 440) ("Liquidators' Appeal") (emphasis added); *see also* Opening Br. at 3, 16–17. The overwhelmingly foreign character of this action and the Liquidators' underlying claim is abundantly clear: The Liquidators, on behalf of the BVI Funds, seek to recover what they allege were inflated redemption payments paid from the foreign Funds to their foreign investors (including SIX SIS) based on NAV calculated in bad faith by the Funds' foreign agent. See FAC ¶¶ 136, 145, 170, 208. None of that conduct is alleged to have occurred in the U.S. In fact, the documents on which the Liquidators rely demonstrate that ███

████████████████████████████████████████████████ See

14

Opp. Exs. 14, 16, 22 ███████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████████████

Ignoring these numerous foreign factors, the Liquidators contend that the Funds' ultimate investments in BLMIS should be the only fact that matters. In support of that assertion, the Liquidators cite a line of decisions in the SIPC litigation brought by the BLMIS Trustee. Opp. at 20–26 (citing *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No 11-02149 (CGM) (Bankr. S.D.N.Y., June 14, 2022) (Dkt. 167); *Picard v. Bureau of Labor Insurance*, 480 B.R. 501, 516–18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*"); *Picard* v. *Banque Lombard Odier & Cie SA (In re Bernard L. Madoff)*, 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard Odier*")). But those cases do not support the Liquidators' argument. In *BLI* and *Lombard Odier*, the Trustee seeks to avoid and recover alleged "domestic" initial transfers of U.S. dollars made from BLMIS to the Fairfield Funds. The BLMIS Trustee argues that the U.S. Bankruptcy Code entitles him to trace those initial transfers to subsequent transferees, such as the Funds' investors. But here, the Liquidators seek a remedy for alleged breaches of fiduciary obligations by the Netherlands-based administrator of the Funds (and the Funds' agent), Citco Fund Services (Europe) B.V., which allegedly caused over-payment for redemptions of BVI shares in the BVI-based Funds to a Swiss financial institution defendant, SIX SIS. These contacts are entirely foreign. In short, unlike the BLMIS Trustee in the SIPC litigation, the Liquidators here do not seek to trace an initial transfer to SIX SIS. And, unlike the BLMIS Trustee, the Liquidators have repeatedly admitted that the transactions that give rise to their claims were "purely foreign," because "every relevant component of the [redemption] transactions at issue here occurred *outside the territorial jurisdiction of the United States*." Liquidators' Appeal at 24 (emphasis added).

15

### III.  THE EXERCISE OF JURISDICTION OVER SIX SIS IS UNREASONABLE AND THEREFORE INCONSISTENT WITH DUE PROCESS

Finally, even assuming that the Liquidators could make out a prima facie showing of minimum contacts (which they have not), SIX SIS *still* would not be subject to jurisdiction in this action because the exercise of jurisdiction would be unreasonable in these circumstances. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("The relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the corporation to defend the particular suit which is brought there.'" (citation omitted)).  When evaluating reasonableness of exercising jurisdiction, the court considers five factors, as set out by the Supreme Court in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987):  (1) the burden on the defendant, (2) the interests of the forum in adjudicating the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining an efficient resolution of the controversy, and (5) the shared interest of the states in furthering substantive social polices.

Where, as here, a defendant's connections with the forum are weak, the bar for showing reasonableness is higher.  *In re CIL Lmtd.*, 582 B.R. at 79 ("[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction." (citation omitted)).  Therefore, because the Liquidators rely on the most incidental of contacts to establish jurisdiction (*see supra* Section II), they must make a *stronger showing* that the exercise of jurisdiction would be reasonable. The Liquidators cannot possibly meet that burden because all relevant factors weigh decisively against a finding of reasonableness.

### A.  Merits Litigation Will Impose a Significant Burden on SIX SIS

The burden of forcing SIX SIS to defend a suit in the United States would be disproportionate to the nominal administrative fees—a mere $*125 per transaction*—that it earned in its ministerial role.  See Valentine Decl., Ex. B, ¶ 18.  Moreover, all of the activities

16

potentially relevant for merits discovery involved foreign-based entities and/or took place

outside the United States.  Hence, all relevant evidence would be located in foreign jurisdictions

and would implicate foreign law.  In particular, because SIX SIS is a Swiss Central Securities

Depository subject to the Swiss Financial Market Infrastructures Act ("FMIA"), Swiss Data

Protection Act, and the Swiss Criminal Code, each of which regulates disclosure.  The FMIA

establishes heightened secrecy and data protection obligations and allows for criminal

prosecution for any violations.  See Valentine Decl., Ex. C, Art. 147;  Bench Ruling Granting in

Part and Den. in Part the Foreign Representatives Mot. Seeking Limited Relief (ECF No. 799-2)

("The various respondents have described … the strong and undeniable interest of many nations

in enforcing their banking secrecy laws.")).[8]  Moreover, because of these laws, SIX SIS's own

counsel cannot even look at documents outside of the physical borders of Switzerland.  Swiss

secrecy laws put SIX SIS at risk of criminal sanctions for complying with discovery demands.

And to the extent SIX SIS could successfully navigate them at all, its compliance efforts would

entail significant legal costs in both the United States and Switzerland.   The Liquidators' blithe

reference to the purported "conveniences of modern communication and transportation" (Opp. at

37) ignores the very significant burdens that merits litigation would impose on SIX SIS.

### B.  There is Minimal Forum Interest in This Foreign Dispute

As the United States Supreme Court instructed in *Asahi,* the forum's interest is

"considerably diminished" where, as here, the parties are foreign and foreign law applies.  480

U.S. at 114;  *see also Sherwin-Williams Co. v. C.V.*, No. 14-CV-6227 (RA), 2016 WL 354898, at

---

[8]    Although SIX SIS is not a bank, it is subject to secrecy obligations under the FMIA
equivalent to those under the Swiss Banking Act.

*5 (S.D.N.Y. Jan. 28, 2016) (finding no forum interest where neither party was a resident of New York and the claims arose under Mexican law).

In opposition, the Liquidators argue that the United States nonetheless should be deemed to have an interest in this litigation.  In support of that assertion, the Liquidators seek to analogize this case to the BLMIS Trustee's claims against Fairfield investors in the SIPC litigation.  Opp. at 37.  However, those proceedings are readily distinguishable and only highlight the *lack* of U.S. interest in this case.  Unlike the BLMIS Trustee there, the Liquidators here concede that the redemptions at issue between the BVI funds and their foreign investors were "purely foreign" and that "every relevant component of the transactions at issue here occurred outside the [U.S.]."  Liquidators' Appeal at 24.  Indeed, this action is an "ancillary" Chapter 15 proceeding, with the *foreign main proceeding* being the Funds' long-delayed liquidation in the BVI.  As the district court found more than ten years ago, these proceedings were only meant "to aid foreign jurisdictions in administering bankruptcies by preventing debtors from squirreling away assets in the United States," but "there are no assets in the United States," and accordingly, "the ancillary character of the Chapter 15 cases here is at a low ebb." *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 682, 686 (S.D.N.Y. 2011).

### C.  The Liquidators' Forum Shopping to Avoid Dismissal in the BVI is Not a Legitimate Effort to Obtain "Convenient and Effective Relief"

These *BVI* Liquidators of a *BVI* fund have no reasonable interest in having a *BVI* law claim against a *Swiss* financial institution adjudicated in the United States beyond the Liquidators' apparent desire to avoid further adverse court rulings in the BVI.  If anything, the existing adverse rulings by the BVI courts underscore that the Liquidators' claims lack merit.  Indeed, "cases under the same legal theories could have been (and were) brought [by the Liquidators] in the BVI," but they were soundly rejected as not viable under BVI law.  *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. at 687.

18

### D.  The Liquidators Identify No Relevant Witnesses or Evidence Located in the United States

The efficient administration of justice likewise weighs against the Liquidators here.  In assessing this factor, courts look to "where witnesses and evidence are likely to be located." *Met. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996).  But the Liquidators do not claim that relevant witnesses or evidence are located in the United States.  And the alleged wrongful acts – the Funds' miscalculation of the NAV and the purported unfair redemptions based on the miscalculated NAV – occurred in the BVI and Europe.  Accordingly, this factor also weighs against the exercise of jurisdiction.

### E.  No Substantive U.S. Social Policies are Implicated in This Case

The final factor considered in the reasonableness analysis is the shared interests of the states in promoting substantive social policies.  As the Supreme Court explained in *Asahi*, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."  480 U.S. at 115.  The Liquidators contend that this case implicates the United States' policy of ensuring that its financial system is not used for unlawful purposes.  Opp. at 38.  But the Liquidators' lawsuit does not center on the use of the United States financial system.  Rather, it concerns a foreign liquidator's ability to recover a foreign fund's redemption payments to a foreign financial institution based on the fund's foreign administrator's alleged miscalculation of the fund's NAV.  The Liquidators have failed to show that the United States has a substantive policy interest in regulating this purely foreign conduct.

SIX SIS's limited and purely ministerial role further confirms the absence of any U.S. substantive policy interest.  Contrary to the Liquidators' mischaracterization, this case is not about SIX SIS's purported decision "to reap profits from BLMIS and the U.S. securities market."

Opp. at 38.[9]  Instead, the evidence shows that SIX SIS is a mere custodian—settling transactions at the direction of its foreign financial institution clients.  See Valentine Decl. Ex. B, ¶¶ 2–8 .  It had no investment discretion and offered no advice.  Id. at ¶¶ 11–12.  It never sought to benefit from the performance of BLMIS and never held any investments in the Funds for its own account.  Id. at ¶¶ 15, 19.  As noted, it received $125 per transaction for its services.  Id. at ¶ 18.  Assuming it participated in all of the redemptions the Liquidators claim, the total processing fees it would have received was less than $17,000 over the course of 5 ½ years.  Under these circumstances, it would be patently unreasonable to force SIX SIS to defend the Liquidators' BVI law constructive trust claim in the United States.

*      *      *

This action boils down to the BVI-based Funds' attempt to recover non-U.S. assets from their non-U.S. shareholders based on claims brought under BVI law which assert fiduciary breaches by the Funds' own Dutch administrator and custodian.  The Liquidators have not established the requisite minimum contacts between SIX SIS and this forum related to their claim, nor does the exercise of personal jurisdiction over SIX SIS meet the reasonableness standard required by due process.

## CONCLUSION

For the foregoing reasons and the reasons set forth in SIX SIS's Motion, this Court lacks personal jurisdiction over SIX SIS, and SIX SIS respectfully requests that the Court dismiss the Fifth Amended Complaint in its entirety, with prejudice.

---

[9]  While the Liquidators baldly claim that SIX SIS "reap[ed] massive profit for itself and its clients," ████████████████████████████████████████████  Opp. at 2, 3–4.

Dated: New York, New York
   August 16, 2023

          Respectfully Submitted,

**CHAFFETZ LINDSEY LLP**

/s/ Andreas A. Frischknecht
Andreas A. Frischknecht
Erin E. Valentine
CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, NY 10019
212-257-6960 (phone)
212-257-6950 (fax)
e.valentine@chaffetzlindsey.com
a.frischknecht@chaffetzlindsey.com

*Attorneys for Defendant SIX SIS Ltd., f/k/a SIS SegaInterSettle AG, and named in the Complaint as both SIX SIS Ltd. and SIS Seeganintersettle*