Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 10-13164 (JPM)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   FAIRFIELD SENTRY LIMITED and Nomura International PLC,

8                  Debtors.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10  Adv. Pro. No. 10-03496 (JPM)

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12  FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,

13                  Plaintiffs,

14       v.

15  THEODOOR GGC AMSTERDAM et al,

16                  Defendants.

17  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18  Adv. Pro. No. 10-03800 (JPM)

19  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF B,

21                  Plaintiffs,

22       v.

23  FAIRFIELD GREENWICH GROUP et al,

24                  Defendants.

25  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Page 2

1    Adv. Pro. No. 10-03627 (JPM)

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    KRYS, ET AL.,

4                     Plaintiffs,

5              v.

6    BNP PARIBAS SECURITIES SERVICES LUXEMBOURG, et al.,

7                     Defendants.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Pro. No. 10-03630 (JPM)

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,

12                    Plaintiffs,

13             v.

14   HSBC SECURITIES SERVICES (LUXEMBOURG) SA, et al.,

15                    Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Pro. No. 10-03635 (JPM)

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,

20                    Plaintiffs,

21             v.

22   UNION BANCAIRE PRIVEE, UBP SA et al,

23                    Defendants.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25



Page 3

1    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

2    Adv. Pro. No. 10-03636 (JPM)

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,

5                    Plaintiffs,

6           v.

7    UNION BANCAIRE PRIVEE, UBP SA et al,

8                    Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   Adv. Pro. No. 19-01122 (JPM)

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,

13                   Plaintiffs,

14          v.

15   CITCO GLOBAL CUSTODY NV, et al.,

16                   Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18                   United States Bankruptcy Court

19                   One Bowling Green

20                   New York, NY  10004

21

22                   May 3, 2024

23                   9:35 a.m.

24

25

1   B E F O R E :

2   HON JOHN P. MASTANDO III

3   U.S. BANKRUPTCY JUDGE

4

5   ECRO:  KS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

```
 1    10-03630-jpm Fairfield Sentry Ltd. (In Liquidation), et al.,

 2    v. HSBC Securities Services (Luxembourg) SA, et al.,

 3    Notice of Hearing on Private-Space Ltd.'s Motion to Dismiss

 4    for Lack of Personal Jurisdiction Under Rule 12(b)(2)

 5

 6    Adversary proceeding: 10-03627-jpm Krys et al v. BNP Paribas

 7    Securities Services Luxembourg et al

 8    Notice of Agenda for Matters Scheduled for Hearing on May 3,

 9    2024

10

11    Notice of Hearing on Motion to Dismiss for Lack of Personal

12    Jurisdiction (related document(s) 174)

13

14    Notice of Hearing on Motion to Dismiss for Lack of Personal

15    Jurisdiction (related document(s) 171)

16

17    Amended Notice of Hearing on Motion to Dismiss for Lack of

18    Personal Jurisdiction (related document(s) 171)

19

20    Notice of Agenda for Matters Scheduled for Hearing on May 3,

21    2024

22

23    Adv. Pro. No. 10-03635 (JPM) Fairfield Sentry Limited (In

24    Liquidation) et al., v. Union Bancaire Privee, UBP SA et al

25    Notice of Agenda for Matters Scheduled for Hearing on May 3,
```

Page 6

1    2024

2

3    Notice of Hearing on UBS AGs Motion to Dismiss for Lack of

4    Personal Jurisdiction Under Rule 12(b)(2)

5

6    Adv. Pro. No. 10-03636 (JPM) Fairfield Sentry Ltd. (In

7    Liquidation), et al., v. Union Bancaire Privee, UBP SA et al

8    Notice of Agenda for Matters Scheduled for Hearing on May 3,

9    2024

10

11   Notice of Hearing on UBC AGs and UBS Jersey Nominees

12   Limiteds Motions to Dismiss for Lack of Personal

13   Jurisdiction Under Rule 12(b)(2)

14

15   Adv. Pro. No. 10-03496 (JPM) Fairfield Sentry Ltd. (In

16   Liquidation), et al., v. Theodoor GGC Amsterdam et al,

17   Notice of Hearing on Motion to Dismiss for Lack of Personal

18   Jurisdiction (10-03627) (related document(s) 3971)

19

20   Amended Notice of Hearing on Motion to Dismiss for Lack of

21   Personal Jurisdiction (10-03627) (related document(s) 3971)

22

23   Adv. Pro. No. 10-03800 (JPM) Irving H. Picard, Trustee for

24   the Liquidation of B, v. Fairfield Greenwich Group et al

25   Notice of Adjournment of Hearing / Notice of Adjournment of

Page 7

1    Status Conference

2

3    Notice of Adjournment of Hearing / Notice of Adjournment of

4    Status Conference

5

6    Notice of Hearing / Notice of Status Conference

7

8    Adv. Pro. No. 19-01122 (JPM) Fairfield Sentry Ltd. (In

9    Liquidation), et al., v. Citco Global Custody NV, et al.

10   Notice of Agenda for Matters Scheduled for Hearing on May 3,

11   2024

12

13   Notice of Hearing on the Motion to Dismiss by The Citco

14   Group Limited, Citco Banking Corporation N.V., and Citco

15   Global Custody (N/A.) N.V. for Lack of Personal Jurisdiction

16   Under File 12(b)(2)

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

**Page 8**

1    A P P E A R A N C E S :

2

3    BROWN RUDNICK LLP

4        Attorneys for the Liquidators

5        1 Financial Center

6        Boston, MA 02111

7

8    BY:  JEFFREY L. JONAS

9        MAREK P. KRZYZOWSKI

10       DAVID MOLTON

11       DANNY CAMERON MOXLEY

12

13   PAUL WEISS RIFKIND WHARTON GARRISON LLP

14       Attorneys for Citco Group Limited, et al.

15       1285 Avenue of the Americas

16       New York, NY 10019

17

18   BY:  GREGORY F. LAUFER

19       ANDREW G. GORDON

20       DANIEL NEGLESS

21       LEAH PARK

22

23

24

25

1    ALSO PRESENT:

2    KENNETH KRYS

3    JAIME B. LEGGETT

4    GREIG MITCHELL

5    HARRISON CHASE WEIDNER

6    KYLLAN GILMORE

7    MICHAEL C. LAMBERT

8    MARCELLA OLIVER

9    LEIF RAANES

10    NOWELL BAMBERGER

11    DANIEL ELKIND

12    ADRIAN GARIBOLDI

13    ABBIE GOTTER-NUGENT

14    THOMAS Q. LYNCH

15    NATE REYNOLDS

16    DAVID Z. SCHWARTZ

17    CAROLINE SOUSSLOFF

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          CLERK:  All rise.

3          THE COURT:  Good morning.  Please be seated.  Good

4    morning, everyone.  We are here on multiple cases related to

5    Fairfield Sentry.  Can I have appearances for the record,

6    please?

7          MR. JONAS:  Good morning, Your Honor.  Jeff Jonas

8    from Brown Rudnik.  With me are David Molton, Mark

9    Krzyzowski, Kyle Dorso on behalf of Ken Krys and Greg

10   Mitchell in their capacities as joint liquidators for

11   Fairfield Sentry, Fairfield Sigma, and Fairfield Lambda, the

12   plaintiffs in opposition to the motions to dismiss.  Mr.

13   Krys and Mr. Mitchell are on the Zoom line today.

14         THE COURT:  Good morning.

15         MR. JONAS:  Thank you, Your Honor.  Good morning.

16         MR. LAUFER:  Good morning, Your Honor.  Greg

17   Laufer from Paul, Weiss, Rifkind, Wharton & Garrison.

18   Daniel Negless from my firm is here as well.  We represent

19   the Citco defendants.

20         THE COURT:  Good morning.

21         MR. LAUFER:  Good morning.

22         THE COURT:  Let's have everyone appear first just

23   so we get the lay of the land.

24         MR. LAMBERT:  Good morning, Your Honor.  Michael

25   Lambert of Gilmartin Poster & Shafto.  We represent

Page 11

1    defendant, Private Space Limited in Adversary Proceeding 10-

2    03630.

3         THE COURT:  Good morning.

4         MR. WEIDNER:  Good morning, Your Honor.  Chase

5    Weidner from Gibson Dunn & Crutcher.  I'm joined by my

6    colleague, Marshall King, here on behalf of the UBS AG and

7    UBS Jersey Nominees Limited in 10-03636 and 10-03635.

8         THE COURT:  Good morning.

9         MR. SHAIMAN:  Good morning, Your Honor.  David

10   Shaiman of Allegaert Berger & Vogel on behalf of Rothschild

11   & Co. Asset Management, formerly known as Rothschild & Cie

12   Gestion, as manager of the Elan Gestion Alternative Fund,

13   which was sued as Rothschild & Cie Banque-Ega.  And that's

14   in Adversary Case Number 10-03627.

15        THE COURT:  Good morning.

16        MR. SHAIMAN:  Good morning.

17        MR. HALPER:  Good morning, Your Honor.  Rick

18   Halper with McKool Smith.  I'm here with my colleague, Hal

19   Shimkoski.  We represent bank Julius Baer in adversary

20   proceedings 10-03635 and 10-03636.

21        THE COURT:  Good morning.

22        MR. HALPER:  Good morning.

23        THE COURT:  Anyone wishing to appear remotely?

24        MR. GILMORE:  Yes.  This is Kyle Gilmore of

25   Winston & Strawn LLP appearing on behalf of Altipro Master

Page 12

```
 1    Fund, sued as Altigefi-Altipro Master a/k/a Olympia Capital

 2    Management.  And my colleague Christopher Man is on the

 3    telephone line.

 4              THE COURT:  Good morning.  Okay, Counsel?

 5              Before you start, actually, I wanted to just make

 6    a point I made in the other cases.  A lot of documents have

 7    been filed under seal in the various cases.  So I will give

 8    the parties until Monday, May 6th to determine if there's

 9    anything filed under seal that any party wants to withdraw

10    from the record because they don't want it to be cited,

11    quoted, or otherwise referred to in a potential opinion.

12    And if anything is not withdrawn, I will assume even

13    something filed under seal.  The party recognizes that it

14    may be cited, quoted, otherwise referenced in an opinion.

15              So if there's anything anyone wants to not be

16    considered, just withdraw it from the record by Monday.

17    Otherwise, we'll proceed as I outlined.

18              MR. LAUFER:  Very good.  Thank you, Judge.

19              THE COURT:  And that goes to all the cases,

20    obviously.  Okay, thank you.

21              Please proceed, Counsel.

22              MR. LAUFER:  Of course.  So as I mentioned a

23    moment ago, I am Greg Laufer from Paul Weiss.  We represent

24    certain Citco defendants.  And in particular here we've made

25    a motion to dismiss on personal jurisdiction grounds with
```

Page 13

1   respect to the Citco Group Limited, Citco Banking

2   Corporation N.V., and Citco Global Custody N.V.  I will

3   refer to them collectively as either the Citco defendants or

4   the Citco moving defendants.

5          I am not going to be addressing at the podium

6   today the personal jurisdiction arguments that we've made

7   with respect to Citco Global Custody and Citco Banking

8   Corporation in light of Your Honor's decision in UBS Europe.

9   We obviously understand Your Honor's ruling in that case.

10  We reserve all rights with respect to that ruling.

11         Instead, I would like to focus our argument today

12  on the arguments we've made with respect to personal

13  jurisdiction as to the Citco Group.  And I think I can be

14  relatively brief because we don't think there's really any

15  viable argument here that this Court can exercise personal

16  jurisdiction over Citco Group under the law of this circuit.

17         I know Your Honor is very aware of the facts of

18  this case.  I just want to give a little bit of context to

19  the extent relevant to our motion.

20         So the Plaintiffs here of course are liquidators

21  appointed by a court in the BVI to represent the interests

22  of certain feeder funds that invested all or substantially

23  all of their assets with Madoff.  And they brought these

24  adversary proceedings in an effort to recoup funds from

25  beneficial holders of investments in those feeders funds who

1    redeemed.  They've sued certain Citco entities, among which

2    the Citco Banking and Citco Custody entities that I just

3    mentioned and that we also have personal jurisdiction

4    arguments with respect to.  And they sued those entities

5    because those entities had clients that were beneficial

6    holders in the feeder funds.  And those Citco entities were

7    the nominal holders of those beneficial holders' investments

8    in feeder funds.

9           Citco Group on the other hand is positioned quite

10   differently from those entities.  And as I'll explain in a

11   moment and as set out in our papers including in the

12   declaration of Robert Voges, who is a Citco Group director,

13   Citco Group is just a Cayman-based holding company.  It's

14   the indirect parent of the Citco Banking and Custody

15   entities that I just mentioned as well as dozens of other

16   Citco-related entities around the world that conduct all

17   sorts of business.

18          All of the liquidators' claims against our clients

19   have now been rejected except for one, which is a claim that

20   seeks to impose a constructive trust over proceeds sent to

21   redeeming investors in the feeder funds.  So those are the

22   facts in basic terms.

23          So now let me turn to the personal jurisdiction

24   arguments with respect to Citco Group.  As I said before,

25   the short of it is there is no personal jurisdiction with

Page 15

1   respect to Citco Group and there are really two main points

2   that I want to make.

3          The first critical point is that the complaint

4   very clearly makes, and I don't think that my friends on the

5   other side dispute, blanket group pleading jurisdictional

6   allegations sometimes as to all defendants and sometimes as

7   to various Citco-related defendants together.  And it tries

8   to collapse those distinct entities into one ball of wax.

9   That doesn't work under Second Circuit precedent.

10          As we cited in the Charles Schwab court case, 883

11   F.3d 68, the Second Circuit has been very clear that you

12   have to do this on a defendant-by-defendant basis.

13   Otherwise, it makes it, in the Second Circuit's words,

14   "impossible to determine", that's a quote, which allegations

15   apply to which defendant.  And that's exactly what we have

16   going on here in the liquidator's second-amended complaint.

17   And I'll give the Court just a couple of examples.

18          If you look at Paragraph 19, there the liquidators

19   say that "Defendants purposely availed themselves of the

20   benefits of the New York forum."  They go on in that

21   paragraph to say defendants selected U.S. dollars.  They go

22   on still in paragraph 19 of the second-amended complaint to

23   say defendants derived significant revenue from New York.

24          I'll give you one more example.  Paragraph 20 of

25   the second-amended complaint says this, "This court has

Page 16

1   jurisdiction over the Defendants," big D, "by virtue of

2   agreements entered into by the funds and what the

3   liquidators call Citco record holders," which as I'll come

4   back to in a moment is defined to include certain nonparty

5   Citco entities but to exclude, as relevant here, Citco

6   Group.

7          I don't think that my friends on the other side

8   have disputed that characterization of their complaint, and

9   the complaint doesn't actually say anything at all

10  specifically about Citco group's contacts with the United

11  States as opposed to alleging that those contacts were with

12  a constellation of other Citco entities in a generic sense.

13  That does not work under governing law.

14         So now let me get to the second point I wanted to

15  make, which is this.  Even if you put aside the group

16  pleading problem that the liquidators can't seem to get

17  around, the jurisdictional allegations are not sufficient.

18  And there are a few reasons for this.  For one, the

19  complaint itself -- and I alluded to this a moment ago -- is

20  drafted in a way that explicitly excludes the Citco group

21  from its jurisdictional allegations.  And I'll give you

22  again some examples.

23         If you look for instance at paragraph 39, the

24  second-amended complaint alleges there that what it refers

25  to as the Citco Record Holders, which are defined in the

Page 17

1    second-amended complaint to exclude the Citco group,

2    "Purchased shares in and made redemptions from the funds for

3    the benefit of the beneficial shareholders."

4            And then if you look, just to give you another

5    example, Your Honor, at Paragraph 65 and 66 of the

6    complaint, it alleges there that, quote, the Citco Record

7    Holders, again, defined to exclude the Citgo group,

8    "Purchased shares in and made redemptions from the funds for

9    the benefit of the beneficial shareholders."  And it goes on

10   to make similar allegations again referring only to the

11   Citco Record Holders, big C, big R, big H, but to exclude

12   Citco Group.

13           And beyond all of that, we've also submitted a

14   declaration from a Citco Group representative, a director

15   who I mentioned a few moments ago, Robert Voges.  He has

16   testified in his declaration, with testimony by the way that

17   the liquidators have not even tried to impugn or challenge,

18   and he has explained the following.  "The Citco Group is a

19   Cayman entity.  It is a holding company.  It has no business

20   operations of its own whatsoever.  It has no employees of

21   its own whatsoever.  It has never transacted business with

22   or provided services to the feeder funds or any of the

23   beneficial shareholders at issue in this litigation.  It's

24   never transacted any business in the United States.  It has

25   never maintained any operations or employees in the United

Page 18

1    States.  It doesn't actually have or do either of those

2    things.  And it otherwise has never had any contact with the

3    feeder funds in this case.  Again, the liquidators I don't

4    think have sought to or actually challenged any of that

5    testimony, which on its own shows that the Citco Group

6    doesn't have any nexus with this country.  So that's alone

7    enough to show that there's no personal jurisdiction here

8    under any applicable standard.

9         So what do the liquidators do in the fact of all

10   these impediments?  They've got a few arguments that are

11   either divorced from their actual allegations as set out in

12   their complaint, or legally wrong, or both.  Let me give you

13   some examples.

14        The liquidators say that the Citco Group is

15   subject to jurisdiction by virtue of what they claim is a

16   pecuniary gain on specified undefined that Citco Group is

17   alleged to have gotten from its operating subsidiaries.  And

18   for that proposition, which is unsupported by any evidence

19   by the way, they rely on this Court's decision from 2012 in

20   Picard v. Bureau of Labor.  That argument doesn't work.  For

21   starters, the complaint doesn't say anything about a

22   pecuniary gain that Citco Group is alleged to have gotten

23   from any operating subsidiaries.  But putting that aside,

24   this whole issue of pecuniary gain and agency wasn't even

25   discussed in Picard and none of the other cases that the

Page 19

1    liquidators cite supports their argument that revenue

2    indirectly, allegedly indirectly taken in by a parent

3    company through its subsidiaries is enough on its own to

4    show a principal-agent relationship for personal

5    jurisdiction purposes.

6             And on top of that, demonstrating what I just

7    said, we've actually cited caselaw showing that merely

8    alleging that the Citco Group may have indirectly gotten

9    revenue in the U.S. through entities isn't enough.  And

10   again, I'm just assuming for present purposes that's true.

11   But there is nothing to credit here because they haven't put

12   anything in front of you for that proposition.

13            But we can point the Court for support to the

14   decision by the Southern District of New York in SPV Osus

15   Ltd. v. Unicredit Bank Austria, 2019 WL 1438163 (2019).  And

16   that decision specifically held that the defendants had

17   "derived significant revenue" from the forum by facilitating

18   the transfer of funds into Madoff's account wasn't good

19   enough to make a personal jurisdiction showing.  And again

20   here the liquidators don't even try to distinguish that

21   decision in any meaningful way, which we think is

22   dispositive.

23            The other thing that the liquidators have done or

24   attempted to do to try to get around this personal

25   jurisdiction obstacle is this.  They claim in their

Page 20

1   opposition brief that the Citco Group supposedly attended

2   all of just four meetings with Madoff representatives in New

3   York in the six-year period from May 2000 to May 2006.  That

4   doesn't do the trick, either.

5        The very documents that the liquidators rely on to

6   show that that meeting or those meetings involve employees

7   of Citco Group actually show that they were employees of

8   Citco subsidiaries.  As I mentioned, Mr. Voges has testified

9   in writing in testimony that has not been challenged and

10   that the liquidators in fact haven't even tried to

11   challenge, that the Citco Group doesn't have employees.  It

12   only has a few directors.  And what's more, those meetings

13   that the liquidators are so fixated on have nothing to do

14   with redemptions from the feeder funds or any other matter

15   relating to their EDI constructive trust claims.  So it is

16   totally irrelevant for specific personal jurisdiction

17   purposes.

18        And just to put a finer point on it, even the one

19   meeting that was attempted by an individual named Ermanno

20   Unternaehrer, he was a director and executive committee

21   member at the Citco Group, he as the documents show attended

22   the one meeting that he is alleged to have attended in his

23   capacity as a representative of Citco Financial Services.

24   That is one of the many operating subsidiaries under the

25   Citco Group umbrella that provides hedge fund administration

Page 21

1    services.  And the objective and purpose of that meeting had

2    absolutely nothing to do with any of the issues in this

3    case.  That meeting was about liabilities or extinguishing

4    liabilities to that hedge fund administration business.  And

5    we have cited cases, including for the United States Supreme

6    Court, for the what I think is uncontroversial proposition

7    that officers and directors of a company can of course be

8    dual (indiscernible).  They can have different roles.  And

9    under the United States Supreme Court's decision in United

10   States v. Best Foods, there is a presumption that officers

11   and directors act for their subsidiaries, not the parent

12   company absent contrary evidence.  And we've cited other

13   decisions to that effect on Page 17 of our reply brief.  So

14   none of this smattering of emails changes anything.

15            In yet another attempt to beat back our motion,

16   the liquidators also try to impute their alleged

17   jurisdictional contacts of some of these Citco operating

18   entities to the Citco Group.  And let me give you another

19   example.  They say in Paragraph 39 of the second-amended

20   complaint that "at all relevant times all Citco

21   recordholders and the Citco banks were wholly owned

22   subsidiaries of Citco Group Limited and all the Citco

23   entities worked under the ultimate direction of the Citco

24   Group's executive committee."  That argument does not work,

25   either.  Because under Second Circuit caselaw that we've

Page 22

1    cited, the liquidators would have to show in order to

2    support their imputation or agency theory that the relevant

3    subsidiaries, meaning Citco Banking and Custody, which I

4    mentioned earlier, were either agents or mere departments of

5    the Citco Group.  That's the language from the caselaw.  And

6    the liquidators have not even tried to meet that test here,

7    meaningfully tried.  They argue instead that the Citco Group

8    and its subsidiaries acted as "an integrated company".  And

9    I think as supposed support for that proposition, they have

10   taken some language from promotional materials that are

11   publicly available on websites.  None of that is relevant in

12   the least.  The Southern District of New York's decision in

13   Tese-Milner v. De Beers Centenary proves as much.  That's

14   613 F.Supp.2d 404.  It's a 2019 case.  And that case

15   specifically said that the term "integrated enterprise" has

16   no legal meaning for personal jurisdiction purposes.  And

17   the First Department of the Appellate Division said much the

18   same thing in Fimbank P.L.C. v. Woori Fin. Holdings Co., 104

19   A.D.3d 602 (2013).  And we have other cases to that effect

20   cited in Footnote 13 on Page 15 of our reply brief.

21          And just to underscore that point once more, the

22   First Department of the Appellate Division in yet a

23   different case rejected practically identical allegations

24   concerning the Citco Group itself just a few years ago in

25   FIA Leveraged Fund Limited v. Grant Thornton LLP, 150 A.D.3d

Page 23

1      492 (N.Y. App. Div. 2017).  And again, the liquidators make

2      no attempt to distinguish that case or explain why its

3      reasoning doesn't apply with equal force here.

4              Almost finally, the other thing the liquidators do

5      is point to cases finding that in their view a subsidiary

6      acted as an agent of a foreign parent.  And they have tried

7      to analogize those cases to the circumstances here.  The

8      best example they can find though actually goes the other

9      way.  That's the Hebrew University of Jerusalem case, 2023

10     WL 2667531 from this Court, decided just last year.  As I

11     said, that case actually rejected the theory that's being

12     advanced by the liquidators here.  And in that case, the

13     Court held that there was insufficient evidence of an agency

14     relationship between a foreign parent and operating

15     subsidiaries even though in that case there were far more

16     allegations of control than there are here.  Here, there are

17     actually practically no allegations of control.  And all of

18     the other cases, just to put a finer point on that subject,

19     all the other cases that the liquidators have cited for that

20     proposition involve situations where there was either a mere

21     complete identity between the principal and the agent or it

22     was clear from the evidence that the alleged agent was

23     acting under the control or for the benefit of the

24     principal.  There is no allegation here or evidence to that

25     effect.  And in fact, courts have dismissed claims on

Page 24

1    personal jurisdiction grounds as to non-U.S. Citco parent

2    entities based on acts allegedly taken by their operating

3    subsidiaries.  One example of that is a 2004 decision from

4    the Southern District, ATSI Communications v. Shaar Fund.

5    And that case granted a motion to dismiss on personal

6    jurisdiction grounds because -- and this is from the Court's

7    own reasoning -- the plaintiffs "conclusory allegation that

8    Citco controlled --" and I'm bracketing another non-U.S.

9    entity unbracket, was "tenuous".  And again, the liquidators

10   have no response to this holding and don't try to

11   distinguish it.

12           So for all those reasons, Your Honor, personal

13   jurisdiction with respect to Citco Group is lacking.  I

14   think that's enough to grant our motion.  But we stand on

15   our papers with respect to the reasonableness test under the

16   Supreme Court's decision in Volkswagen.  For all of the

17   reasons that we've set out here, it would obviously be

18   unreasonable to subject Citco Group under the constitution

19   to this Court's personal jurisdiction under these

20   circumstances.  So we would ask for the motion to be

21   granted.  Thank you.

22           THE COURT:  Thank you, Counsel.

23           Would anyone like to be heard in response?

24           MR. JONAS:  Yes, Your Honor.  Good morning again,

25   Your Honor.

Page 25

1        THE COURT:  Good morning.

2        MR. JONAS:  Jeff Jonas from Brown Rudnick for the

3   -- on behalf of Ken Krys and Greg Mitchell as joint

4   liquidators.

5        Your Honor, before getting to any specific

6   defendant, I think it would be useful to frame up just a few

7   things that are applicable to all of the defendants and

8   arguments today.  And I'll just take a brief moment to do

9   that.

10       There have been significant briefings which I

11  incorporate and rely on.  Of course early this year Your

12  Honor issued four memorandum opinions and orders denying the

13  motions to dismiss of defendants HSBC Security Services

14  Luxembourg S.A., HSBC Private Bank Suisse S.A., UBS Europe

15  S.E. Luxembourg Branch, and Merrill Lynch International.

16  Based on our limited time, I will try not to regurgitate

17  those opinions.  But of course I incorporate and rely on

18  those for purposes of today's argument as well.

19       I will attempt to be succinct and to the point in

20  focusing the Court on what we believe to be a clear path to

21  denial of each and every of the remaining motions to dismiss

22  which are being heard today.

23       As I said the last time, Your Honor, fundamentally

24  the question before the Court today is the same as it was at

25  the earlier hearing; should sophisticated investors like the

1    defendants here which knowingly and purposely took advantage

2    of the U.S. financial markets and utilized the U.S. banking

3    system for profit be able to avoid any redress in the United

4    States?  The easy and simple answer as already found by the

5    Court on multiple occasions is no.  The ultimate merits of

6    the liquidators' claims are for another day.  But we should

7    at least be able to prosecute them against these defendants.

8           In the end, as in all matters before this Court,

9    the Court's approach should consider benefits and burdens.

10   Should these defendants get the benefits they receive,

11   including taking advantage of the U.S. securities markets,

12   without the burdens, including now being subject to

13   jurisdiction to face possible recourse for their actions.

14   Again, the answer must be no.

15          Of course, in order for a court to have personal

16   jurisdiction, the defendant must have sufficient minimum

17   contacts with the United States that relate to the claims at

18   issue and exercise of jurisdiction must be reasonable.

19   Minimum contacts are found where a party has purposely

20   availed itself of the jurisdiction.  And again to wrap up on

21   preliminaries, our burden is to make a factually supported

22   prima facie case showing of personal jurisdiction.

23          One more prelim, Your Honor.  And I think this is

24   critically important.  The highest court relevant to these

25   matters today has spoken in my opinion dispositively on the

Page 27

1    issue before the Court today.  In In re Bernard L. Madoff

2    Investment Services LLC, 2023 WL 395225 in January of 2023,

3    the district court for the Southern District of New York,

4    Judge Schofield in denying a defendant's motion for leave to

5    appeal, the bankruptcy court's denial of its motion to

6    dismiss for lack of personal jurisdiction stated as follows.

7            Defendant argues that the bankruptcy court erred

8    by stating that the trustee has alleged legally sufficient

9    allegations of jurisdiction simply by stating that Lombard

10   Odier knowingly directed funds to be invested with New York-

11   based BLMIS.

12           Contrary to that argument, the bankruptcy court

13   correctly held, applying settled precedent, that by

14   intentionally investing in the New York-based investment

15   fund, Defendant purposely availed itself of the privilege of

16   doing business in New York.

17           The trustee's instant suit is based on defendant's

18   investment of tens of millions of dollars in Fairfield

19   Sentry Limited with the specific goal of having funds

20   invested in BLMIS in New York with intent to profit

21   therefrom.  Such investment was not haphazard.  Rather,

22   defendant intentionally tossed a seed from abroad to take

23   root and grow as a tree in the Madoff money orchard in the

24   United States and reap the benefits therefrom.

25           Defendant has not pointed to any conflicting

1    authority that suggests a different conclusion.  While

2    neither party has cited a previous Second Circuit case

3    addressing this precise fact pattern, the outcome is

4    dictated by straightforward application of Supreme Court

5    precedent.

6           Your Honor, of course this makes perfect sense, as

7    you've already found.  When defendants seek to take

8    advantage of the U.S. securities market by investing in the

9    Madoff funds directly or indirectly, they should be subject

10   to personal jurisdiction in New York.

11          Although the district court has confirmed in my

12   opinion that all that is necessary for personal jurisdiction

13   here is to show a definitely intentionally invested in

14   Madoff, we'll do better than that, as we've done before.

15   Whether by showing defendants used or directed the use of

16   U.S. correspondent bank accounts, agreed to New York law and

17   New York courts governing their investments, or conducted

18   due diligence relating to Madoff, sometimes coming to New

19   York to do that.

20          No matter how much the Defendants try to hide

21   behind other parties and twist the facts and law, the

22   evidence -- and I'm going to focus on the evidence today,

23   Your Honor -- supporting personal jurisdiction is

24   overwhelming and each and every motion to dismiss should be

25   denied.

1          So let me turn to Citco, Your Honor.  And, Your

2     Honor, I think it's important, notwithstanding that my

3     adversary's arguments were focused only on one of the Citco

4     entities, the nature of our arguments and the other motions

5     are live, of course.  I think it's important to deal with

6     Citco in its entirety.  And to do that, Your Honor, I would

7     like to hand up a page or a chart from our complaint.

8          If I may, Your Honor?

9          THE COURT:  Of course.  Thank you.

10          MR. JONAS:  Your Honor, this is a chart from our

11     complaint.  And I just want to really quickly take a look at

12     it because I think it helps orientate the Citco arguments.

13     Because Citco was deeply involved in the Fairfield funds and

14     Madoff including monitoring processing subscriptions and

15     redemptions, paying to or depositing in accounts of the

16     funds all monies and securities received on behalf of the

17     funds, establishing and maintaining a register of holders of

18     shares in the funds, issuing and cancelling share

19     certificates and calculating the net asset value of funds

20     shares on a monthly basis.

21          If you look at the chart, Your Honor, I won't

22     spent too much time on it, but you'll see on the left-hand

23     side are the entity names.  You'll see a column that says

24     moving defendant.  That is are we here today on a motion to

25     dismiss for any of these particular Citco entities.  As

Page 30

1    you'll see at the top, the Citco Group Limited where -- is

2    where counsel spent most of their time today.  Yes, they are

3    a moving defendant.  Citco Banking Corporation N.V., and

4    Citco Global Custody N.A.N.V.  Yes, those also defendants

5    and have filed motions to dismiss.

6           However, I want to note, Your Honor, there are

7    additional Citco entities that are defendants that have not

8    contested jurisdiction.  Those are Citco Bank Nederland,

9    Citco Bank Nederland N.V., the Dublin Branch, Citco Global

10   N.V., Citco Fund Services Europe B.V.  Again, Citco entities

11   in the scheme here which I'll get to that have not sought to

12   have the cases dismissed back on lack of personal

13   jurisdiction.

14          The only other thing I would point out, Your

15   Honor, and then we can move on, is the column "Relationship

16   with the Fairfield Funds".  You see at the top that Citco

17   Group Limited was the parent of all the Citco entities

18   below.  Citco Banking Corporation was a subscriber of shares

19   of the funds in its nominee or agent, which I'll get to.

20   Citco Global Custody and then Citco Global Custody, an

21   actual subscriber of shares of the funds and our position as

22   agent for Citco Banking.

23          But again, Your Honor, I want to point out the

24   additional entities had many capacities relating to

25   Fairfield and effectively Madoff.  There was Citco Bank

Page 31

1    Nederland was the fund bank and custodian.  Citco Bank

2    Nederland N.V., also fund bank and custodian.  Citco Global

3    Custody, fund custodian and depository and also a subscriber

4    of shares, and Citco Fund Services, the fund administrator.

5            As you can see and will see, Your Honor, and as

6    the evidence supports, Citco, through its many entities top

7    to bottom was all over Fairfield and Madoff.  Up, down, and

8    sideways.

9            First I would like to address Citco Global Custody

10   Curacao and Citco Bank Curacao, recipients of $70 million in

11   improper redemptions.

12           Citco Global Custody was the agent and nominee of

13   Citco Bank.  I won't always reference Curacao, but those are

14   the entities I'm referring to, Your Honor.  This is

15   confirmed in the evidentiary record, including because Citco

16   Bank Curacao has confirmed in its own words, "Citco Global

17   Custody Curacao is a nominee organized under the laws of the

18   Netherlands Antilles and is operated and 100 percent owned

19   and controlled by Citco Bank Curacao.  That's at Exhibit 4,

20   Your Honor.  Sometimes I will -- today as I refer to

21   exhibits these are the numbered exhibits with respect to

22   each defendant.  So you may hear some of the numbers more

23   than once, but that's how they correlate.  So this is

24   Exhibit 4 with respect to Citco.  I won't always give the

25   Bates pages, Your Honor.  And if I do, there's different

Page 32

1    names on the Bates pages.  For example, this one is Citco

2    Redeemer, 02125117.  I won't always do that.  It's confusing

3    and it takes time.  But our papers properly reflect that,

4    Your Honor.

5           Moreover, Your Honor, brokerage and custody

6    agreements entered into between Citco Bank Curacao, Citco

7    Global Custody Curacao, and beneficial shareholders,

8    customers for brokerage and custodial services with respect

9    to Fairfield Fund investments show not only that a principal

10   agent relationship existed between Citco Bank Curacao and

11   Citco Global Custody Curacao, but that Citco Bank Curacao

12   benefitted financially from the activities of Citco Global

13   Custody Curacao.

14          Citco Global Custody acted as recordholder for

15   Citco Bank's Fairfield investments.  In other words, it

16   fronted for Citco Bank.

17          Article 3 of Citco Global Custody Curacao's

18   articles of association state that Citco Global Custody

19   Curacao's "Exclusive objective is to hold for the benefit of

20   clients of Citco Bank Curacao securities or rights regarding

21   securities."  Exhibit 53.

22          Your Honor, my adversary mentioned Picard v.

23   Hebrew University of Jerusalem.  He is right; the decision

24   was a finding that there was impersonal jurisdiction.  I

25   would say on very different and much worse facts than we

Page 33

1    have here.  But the holding of the case I think is

2    instructive.  In that case -- and that's Picard v. Hebrew

3    University of Jerusalem, WL 2667531 *7 (Bankr. S.D.N.Y. Mar.

4    28, 2023) -- Judge Morris found that, "To establish an

5    agency relationship for purposes of personal jurisdiction, a

6    plaintiff must show that the alleged agent act for the

7    benefit of and with the knowledge and consent of the non-

8    resident principal and over which that principal exercises

9    some control."  I think we've more than done that in spaces,

10   Your Honor, with respect to the two Citco entities we're

11   dealing with.  I haven't gotten to Citco Group Limited yet,

12   Your Honor, but I think we've already demonstrated just on

13   the record I've put forth.

14           She also found that what matters are the realities

15   of the relationship in question, not formal agency law.  I

16   think it's also worth noting, Your Honor, In re EUR

17   Government Bonds Antitrust Litigation, 2020 WL 427381 *6,

18   another Southern District of New York case from 2020,

19   reconsideration denied at 2020 WL 7321056, which held that a

20   defendant that "Transacts financial instruments in a forum

21   has purposely availed itself of the forum and may thusbe

22   subject to personal jurisdiction for claims arising from

23   those transactions --" here's the best part, Your Honor, "--

24   even when the defendant does so indirectly by effecting

25   those transactions through their agent."

Page 34

1          Your Honor, in our papers we've cited some other

2     examples where courts have found this types of relationship

3     and imputed the agent's conduct and contacts to the

4     principal.  I won't cite those here, but they are in our

5     papers.

6          I would cite, Your Honor -- and it's my last cite

7     on this topic, but I think it's important.  I would cite,

8     because it's very much on point, the Spetner v. Palestine

9     Inv. Bank, 70 F.4th 632 (2d Cir. 2023), a case which you

10    cited in your earlier opinions so I know you're familiar

11    with it.  And the Second Circuit Court of Appeals found that

12    "A foreign bank's choice to project itself into New York can

13    be evident through the selection of repeated use of an

14    agent's correspondent account in the forum."  This result

15    follows from two strands of well-established jurisprudence.

16    Foreign entity can be subject to suit in New York based on

17    the acts of its agent and sustained use of correspondent

18    banking account constitutes transacting business.

19          The quote went on to say that agency within the

20    meaning, in that case 302(a)(A), is given a broad

21    interpretation.  A plaintiff does not need to establish a

22    formal agency relationship in order to attribute the actions

23    of the agent to the principal.  To exercise personal

24    jurisdiction over a defendant based on the acts of an agent,

25    a showing must be made the alleged agent acted in New York

Page 35

1    for the benefit of with the knowledge and consent and under

2    some control of the non-resident principal.

3              Your Honor, this is going to come up in each of

4    the arguments today because many of these defendants did not

5    hold Fairfield shares in their own name.  They used a front.

6    In this case, Citco Bank used Citco Global Custody.  In

7    other cases, you'll see there were different fronts.  And it

8    can't be the case, it can't be the law, Your Honor, that

9    when an entity simply -- an entity takes an agent and the

10   only -- as I've just gone through with this case, the only

11   purpose of the agent is to hold and do the bidding of the

12   principal, that it can then stand up and say, oh, we've got

13   nothing to do with the jurisdiction, that was somebody else,

14   we don't know who they are.  It's silly, Your Honor.  And

15   that's going to come up repeatedly.  I won't make these

16   arguments over and over again, which is why I thought it was

17   important to do it at the outset and save ourselves some

18   time later.

19             So let's turn to this case and the particulars.

20   Here, Citco Global Custody Curacao signed subscription

21   agreements incorporating a private placement memorandum,

22   PPMs as you know, which as we've seen before made it clear

23   that substantially all of the Fairfield Funds assets were

24   investments in New York-based Bernard L. Madoff Investment

25   Securities LLC, or as I'll refer to it and we have referred

Page 36

1    to it, BLMIS.  Again, what does it mean?  They knew they

2    were investing in the U.S. securities markets.  That's at

3    Exhibit 1, Exhibit 4, Exhibit 19, Exhibit 20, Exhibit 21,

4    Exhibit 22, and Exhibit 23.

5             Citco Bank Curacao and Citco Global Custody

6    Curacao intentionally invested in Madoff, a New York-based

7    investment fund.  They purposely availed themselves of the

8    privilege of doing business in New York.  Moreover, as

9    detailed in our papers and the evidentiary record, both

10   Citco Bank and Citco Global Custody officers and directors

11   directly and repeatedly were involved with Fairfield and

12   Madoff including having concerns about verifying Madoff

13   assets.  Here's just two examples.

14            The managing directors of each of the Citco banks

15   -- this is the Citco bank itself, Your Honor -- including

16   Citco Bank Curacao participated in orderly senior banker

17   meetings.  And I'll also -- some of the exhibits are

18   deposition transcript.  That's Exhibit 5 at 99:10.

19            And the meeting on July 11th, 2001, the Citco

20   banks discussed "Madoff Fairfield Sentry custody", including

21   a discussion about "A visit is to be planned to Madoff for

22   an independent verification."  That's Exhibit 28.

23            Second, Your Honor -- and there are many, many

24   examples we put into the record, and I don't want to belabor

25   it.  I'm just going to make one more.  There are numerous

Page 37

1    emails throughout 2000, 2001, 2002, including to Citco Bank

2    Curacao managing directors regarding due diligence of

3    Madoff, which included meeting in New York with Bernie

4    Madoff himself.

5            One such email to a Citco Bank Curacao managing

6    direct stated, "The objective of increasing Citco's comfort

7    level with respect to the existence of the assets in

8    relation to our responsibilities as custodian was not

9    achieved."  That's back in 2000, Your Honor.  That's Exhibit

10   39.

11           Citco Bank Curacao and Citco Global Custody

12   Curacao voluntarily chose to designate U.S. correspondent

13   accounts at Citibank and HSBC Bank to receive the redemption

14   payments from Sentry at issue here.  Again, Exhibit 1,

15   Exhibit 4, Exhibit 40, Exhibit 41.  Also see Exhibits 45

16   through 49.

17           They also used Sentry's U.S. correspondent bank

18   accounts as the destination of their subscription payments.

19   There were 71 subscription payments to Sentry's U.S.

20   correspondent bank at HSBC totaling more than $100 million.

21   That's Exhibits 15 through 17, 18-1 and 18-2.  They also

22   directed Sentry to send redemption payments to their U.S.

23   correspondent accounts at Citibank or HSBC 77 times totaling

24   approximately $70 million.  Again, Exhibits 45 through 49.

25   It's compilations of the redemption transactional documents.

1          Citco Bank Curacao received a fee from its clients

2     for each subscription and redemption transaction.  The

3     subscription agreement signed by Citco Bank Curacao and

4     Citco Global Custody Curacao include provisions, as you've

5     seen before, designating governance of New York law and

6     submission to New York courts as the venue for dispute

7     resolution.

8          Citco Bank Curacao and Citco Global Custody

9     Curacao also communicated with Fairfield's manager, FGG, in

10    New York about Senty subscriptions, investor information and

11    relations, and account administration as evidenced by

12    Exhibits 54 through 58.

13         Citco Bank Curacao and its agent, Citco Global

14    Custody Curacao, intentionally invested in Madoff to take

15    advantage of the U.S. securities market.  They used U.S.

16    correspondent bank accounts repeatedly.  They did extensive

17    diligence, including meeting with Bernie Madoff.  Their

18    motions to dismiss should be denied.

19         Just one minute, Your Honor?

20         THE COURT:  Please.

21         MR. JONAS:  I apologize, Your Honor.  Going so

22    fast here that -- the chart is actually from our

23    oppositions, not the complaint.

24         THE COURT:  No problem.

25         MR. JONAS:  I just want to make that clear.

Page 39

1          THE COURT:  Thank you.

2          MR. JONAS:  Okay, Your Honor.  With that as a

3     backdrop, and I do think it's a critically important

4     backdrop, let's turn to Citco -- I would like to turn to

5     Citco Group Limited.

6          The liquidator's claims against Citco Group

7     Limited are somewhat different than the direct constructive

8     trust redemption claims which make up most of this

9     litigation.  The liquidators assert that Citco Group Limited

10    is liable on $1.7 billion of constructive trust claims on

11    straightforward agency liability because it directed the

12    Citco banks and Citco-registered holders as agents.

13         Citco Group Limited is liable as principal for

14    those agents' liability-creating acts.  Of course, Your

15    Honor, the merits of these claims are not before the court

16    today.  Rather, all we need to do today is demonstrate a

17    prima facie case that the Court has personal jurisdiction

18    over Citco Group Limited.

19         We believe we have put forth more than sufficient

20    evidence of Citco Group Limited's direct purposeful

21    availament to do this as I will describe momentarily.  But

22    we also believe that we have shown there is personal

23    jurisdiction over Citco Group Limited because the conduct of

24    its agents, including its subsidiaries, Citco Bank Curacao,

25    Citco Global Custody Curacao as I described a few minutes

Page 40

1    ago can be imputed to it.

2           One or the other, or taken together, the Court

3    should deny this motion so that we can get to the merits of

4    our $1.7 billion claims against Citco Group Limited.

5           With respect to Citco Group Limited, the question

6    is can an entity control, manage, and operate through other

7    entities and benefit therefrom but then when a party seeks

8    redress for harm allegedly caused by that group of entities

9    can Citco Group, like the three wise monkeys, cover their

10   eyes, ears, and mouths and see nothing, hear nothing, and

11   say nothing.

12          In fact, you heard already, Your Honor, from

13   counsel, oh, we barely exist.  We don't do anything.  We

14   don't have operations.  You'll see that's not quite true,

15   Your Honor, when I get to the evidence.  But that's

16   ridiculous on its face.  Common sense dictates that that

17   can't be the case.  Citco Group Limited can't now hide from

18   its years of involvement with Fairfield and Madoff.

19          This Court has personal jurisdiction over Citco

20   Limited, as I said, on two bases.  First, because its

21   subsidiaries acted as its agent.  And if there is personal

22   jurisdiction over those subsidiaries, which I think I've

23   demonstrated, then there is personal jurisdiction over the

24   parent.  Second, there is personal jurisdiction over Citco

25   Group Limited because of its own direct conduct.

Page 41

1          I would like to review a few key facts which are

2     supported by the evidence we've put in the record, and it's

3     described in our papers.  It's voluminous, Your Honor.  I

4     couldn't do it in the time allotted, but I'll try and focus

5     on the highlights, but I urge you to go back and take

6     another look at our opposition where it's all laid out.  And

7     we filed two separate oppositions, Your Honor, much like my

8     argument today.  One with respect to the redemption

9     defendants, if you will, and a separate opposition with

10    respect to Citco Group Limited.

11          Your Honor, the Citco Group subsidiaries

12    constituted different divisions operated as an integrated

13    company ultimately controlled by Citco Group through the

14    Citco Group Executive Committee.  It's at Exhibit 17, Your

15    Honor, where it says, quote, the Executive Committee -- and

16    that's (indiscernible) Citco Group, "The Executive Committee

17    is responsible for the daily management of the Citco Group

18    of companies."  And further noting, "Citco banking division

19    directors".  You can also see that at Exhibit 22 and Exhibit

20    23 and 20.

21          In its own audit reports, the Citco Group

22    describes itself as a "organization of financial service

23    providers comprised of international banks, trust and fund

24    companies".  Exhibit 17.  The same audit report also states,

25    "The Citco Group executive committee is responsible for the

Page 42

1    daily management of the Citco Group of companies."  I want

2    to make that clear.  That's Exhibit 17 at Citco Redeemer

3    00810062.

4         That same exhibit, "The members of the executive

5    committee", that's referring to the Citco Group executive

6    committee, "together with division directors form the

7    management team of the Citco Group of companies."  They're

8    saying the executive committee is the management team of the

9    group of companies.  This management structure was confirmed

10   by multiple Citco witnesses in their deposition, Exhibits 21

11   and 20.

12        The members of the Citco Group executive committee

13   from approximately 2003 to 2008 included a Mr. Smeets, S-M-

14   E-E-T-S, as CEO of Citco Group and Ermanno Unternaehrer --

15   my apologies for pronunciation.  That's supported in Exhibit

16   20 and Exhibit 21.  Mr. Smeets and Mr. Unternaehrer.  You'll

17   see why that becomes important.

18        The Citco Group Executive Committee appointed

19   directors to oversee the operations of each of the

20   divisions, including the Citco Fund Services Division and

21   the Citco Banking Division, which included Citco Bank

22   Curacao and Citco Bank Netherlands.  And these directors

23   acted on behalf of and reported directly to the Citco Group

24   executive committee.  That's at Exhibit 24, stating that the

25   division manager's report to the Citco Group Executive

Page 43

1      Committee, also at Exhibit 22, stating that the Citco Fund

2      Services Division companies report to Mr. Keunen in his

3      capacity as the director of Citco Fund Services Division,

4      and he reports to the Citco Group Executive Committee.

5      Again, Exhibits 20, 21, 24.

6             Mr. Smeets, CEO of Citco Group, testified at

7      deposition that the Citco Group board of directors was

8      responsible for the strategic management of the business of

9      the Citco companies and for evaluating and issuing policies

10     and overall control and oversight of the Citco companies.

11     Exhibit 23.

12            The critical audit function across all the Citco

13     companies was led and controlled at Citco Group Limited.

14     Mr. Smeets, CEO of Citco Group Limited, testified, "There is

15     an internal auditor in the Citco Group Limited who leads the

16     internal audit groups at the various divisions and

17     companies."  That person by the way, Your Honor, as he

18     notes, was Mr. Bodewes, B-O-D-E-W-E-S.  And that's at Mr.

19     Smeets' deposition, which is at Exhibit 23, at Page 24 Lines

20     10 through 23.

21            Citco Group Limited itself participated in New

22     York indirect meetings relating to Madoff.  In fact, Mr.

23     Smeets, CEO of Citco Group Limited, directed personnel,

24     including personnel based in New York, to meet with Madoff.

25     That's evidenced at Exhibit 29 and also Mr. Smeets'

Page 44

1   deposition at Exhibit 23, Pages 116, Line 10 through 23,

2   Page 117, Line 5, and Page 324, Lines 9 through 14.

3           In the spring of 2001, Mr. Meijer, M-E-I-J-E-R,

4   who was head of internal audit for Citco Fund Services,

5   emailed Mr. Bodewes, B-O-D-E-W-E-S, at Citco Group Limited

6   to address the lack of verification of Citco Global

7   Custody's position with BLMIS.  That's Exhibit 32.

8           Following that meeting, in January of 2002, Mr.

9   Meijer continued to express concerns to Citco Group Limited,

10  including the need for a legal contingency plan in the event

11  that BLMIS turned into a "financial disaster".  That's at

12  Exhibit 33.

13          For example -- and I'm almost done, Your Honor.

14  And there's a lot more in the record.  But I wanted to make

15  sure I put forth enough directly in the record today to make

16  my case.

17          For example, in September 2004, Mr. Unternaehrer,

18  a Citco Group Limited director and a Citco Group executive

19  committee member, attended a meeting in New York with Mr.

20  Keunen and Mr. Boele, B-O-E-L-E, of Fairfiled's manager,

21  FGG.  That's at Exhibits 37, also 38 and 20.

22          Following that meeting, Mr. Unternaehrer sent a

23  report to the Citco Group Executive Committee as well as

24  other management team members in dictating Citco Group's

25  concern with the Madoff funds.  That's Exhibit 37 again.

1          Your Honor, I know one of the arguments I heard

2     this morning was, well, those people wear different hats.

3     And I think they actually talked about Mr. Unternaehrer, I

4     may be wrong, and they said, well, he was somehow an

5     employee of Funds Services.  So, yes, he may have been a

6     director and on the executive committee of Citco Group

7     Limited, but whatever he was doing in New York, he must have

8     shut off his Citco Group Limited brain and he was only

9     acting for Funds Services.

10          Your Honor, that's contradicted directly because

11    in Mr. Unternaehrer's deposition, Exhibit 20 at 83:17

12    through 84, he said that he had no obligations or duties

13    with regard to Citco Fund Services, he was never involved

14    with day-to-day operation with Citco Fund Services, and he

15    had no responsibility or oversight of the administration of

16    Citco Fund Services.

17          So again, Your Honor, I think we've demonstrated

18    numerous times we have a Citco Group Limited director,

19    executive committee members involved in the minutiae, if you

20    will, of the Madoff investment and everything that Citco was

21    doing up and down the chain.

22          Your Honor, the foregoing as well as the many

23    other facts supported by the evidence in the record before

24    the Court demonstrates Citco Group Limited's direct

25    involvement with Fairfield and Madoff.  It is inconceivable

Page 46

1    that Citco Group Limited can believe that it's contacts with

2    Madoff and New York were random, fortuitous, and attenuated

3    such that it should have to face the music in New York.  But

4    even if you don't agree, Your Honor, there is no question

5    that the subsidiary Citco entities were acting for the

6    benefit of and with the knowledge and consent of the

7    principal, Citco Group Limited and over which Citco Group

8    Limited clearly exercised some control.

9           In fact, it looks like these entities acted at the

10   direction of Citco Group Limited from the record I

11   described.

12          Your Honor, for all of the foregoing reasons,

13   whether it's based on Citco Group Limited's direct contacts

14   with Madoff and New York, or whether it's based on a finding

15   that its many subsidiaries, who I think we've overwhelmingly

16   demonstrated we have personal jurisdiction over, whether

17   it's based on imputation or its subsidiaries as agents,

18   either way, Your Honor, Citco Group Limited's motion to

19   dismiss should be denied.  Thank you, Your Honor.

20          THE COURT:  Thank you, Counsel.

21          MR. LAUFER:  May I, Your Honor?

22          THE COURT:  Yes, please.

23          MR. LAUFER:  Thank you, Judge.  Again, Greg Laufer

24   from Paul Weiss for the Citco defendants.

25          As I said earlier, we will stand on our papers

Page 47

1  with respect to the Citco banking and custody entities.  But

2  for the reasons I described earlier, we won't be making

3  those arguments at oral argument right now.

4        The recitation we just heard was very interesting,

5  but I'm not sure what it has to do with the Citco Group.  In

6  the very beginning of my friend's remarks, he said that he

7  was going to show you evidence of U.S. correspondent banks

8  and New York choice of law agreements and due diligence that

9  was conducted in the U.S.  There is absolutely no evidence

10  and I don't even think an allegation that Citco Group had

11  any U.S. correspondent bank, that Citco Group entered into

12  any agreements relevant to this case that had any choice of

13  law provisions directing litigation either in New York or

14  elsewhere and that Citco Group entered into any agreements

15  at all or that Citco Group itself conducted any due

16  diligence with respect to the Fairfield funds and/or Madoff.

17        I also want to point out that the liquidators had

18  ample opportunity to conduct jurisdictional discovery.  They

19  are very competent, capable lawyers with resources at their

20  disposal.  And instead of doing that, they have given you

21  mischaracterized snippets of a couple of emails and some

22  testimony from depositions taken years ago in a different

23  matter.  But since they raised it specifically, I did raise

24  those emails earlier, so let me address them head-on.

25        They say that a May 2000 Madoff diligence meeting

Page 48

1    was "orchestrated by the CEO" of the Citco Group, Mr.

2    Smeets, who credited another individual, Mr. VanZanten, to

3    go to New York to meet with Madoff, and the meeting directly

4    related to the fund investments.  And they cite to Exhibit

5    29.  Actually if you look at Exhibit 23, Mr. Smeets

6    clarified that Mr. VanZanten was acting for Citco Fund

7    Services.  Again, that was the hedge fund administration

8    operating subsidiary.  And the testimony there is very clear

9    on its face at Pages 116, Line 17 to Page 117, Line 5.

10           The liquidators also say that Citco Group was

11   directly involved in the December 2002 meeting because in

12   their view Mr. Van Nijen, that's another Citco person, he

13   sent a report -- he was not a Citco Group person, by the

14   way.  But he sent a report to another individual, Mr.

15   Bodewes, at Citco Group, and that Mr. Bodewes then

16   circulated that report to the Citco Group Executive

17   Committee and that Mr. Smeets testified again in an

18   unrelated action that the objective of the meeting was --

19   included communications and concerns to Madoff about the

20   existence of the fund's assets.

21           Actually, Mr. Van Nijen was a member of Citco Fund

22   Services' audit department, as I think we just heard

23   confirmation of.  He was not an employee of the Citco Group

24   and his direct report, Mr. Meijer, who we also just heard

25   about, also was not a Citco Group employee and wasn't acting

Page 49

1    at its direction.  And in fact, they also concede that it

2    was Citco Fund Services, not Citco Group, that sent Mr. Van

3    Nijen to meet with Madoff representatives.

4           The liquidators also point to a May 2006 diligence

5    meeting when a Citco Fund Services managing director,

6    William Keunen, who we also just heard about, reported his

7    findings to the executive committee at the Citco Group and

8    he sought approval of the committee about next steps.

9           Mr. Keunen, as I just said, was a Citco Fund

10   Services director.  He was not a Citco Group director or

11   employee and the liquidator's own description of that

12   meeting from May 2006 specifically notes that it relates to

13   custodial services that were being provided by Citco Fund

14   Services.  That has nothing to do with this case.  And then

15   finally they argue that in September of 2004, the executive

16   committee at Citco Group, Mr. Unternaehrer, on its behalf

17   went to New York to meet with Fairfield about the feeder

18   funds and the supposed concerns about Madoff.  But Mr.

19   Unternaehrer was not a -- and they also say, sorry, that Mr.

20   Unternaehrer was not a CFS, that's Citco Fund Services,

21   employee and had no obligations or duties to that entity

22   except in his capacity as a member of the Citco Group

23   Executive Committee.  That's actually untrue, as we

24   explained in our reply at Page 17.  The meeting at issue

25   from September of 2004 concerned discussions between Citco

Page 50

1    Fund Services, Citco Bank Nederland, and Fairfield, not the

2    Citco Group.  And it's main purpose, this is a quote, was to

3    "take away possible liabilities while maintaining Citco Fund

4    Services' business", confirming that Mr. Unternaehrer was

5    there in his capacity as a representative of Citco Fund

6    Services.  And my friend can poke fun at the dual-habit

7    nature of executives, but that happens all the time in the

8    United States and elsewhere, and there is caselaw to that

9    effect that we've cited, including for the United States

10   Supreme Court that, again, my friend on the other side did

11   not try to challenge.

12        Let me make just one more point.  I think that

13   there was a suggestion that somehow it would be ridiculous

14   or absurd for a parent company or a holding company to cloak

15   itself in a personal jurisdiction argument or hide from the

16   United States, or whatever the characterization was.

17   There's nothing absurd or ridiculous about what is being

18   described there and there's nothing nefarious about it.

19   Holding companies based abroad and parent companies based

20   abroad, just like holding companies and parent companies in

21   the United States that have operating subsidiaries abroad,

22   frequently act and structure themselves in that way.  And if

23   what the liquidators are saying is true, the mere fact that

24   there's a holding company with an executive committee that

25   ultimately has indirect control over what could be hundreds

Page 51

1   of subsidiaries around the globe, that would essentially

2   mean that any holding company or any parent company is

3   subject to this country's jurisdiction or this Court's

4   jurisdiction any time it has any subsidiary, no matter what

5   it's doing, that has some nexus in the state or in this

6   country.  That is obviously not the law.  They haven't cited

7   a single case to that effect.

8          And as I said, they had an opportunity to take

9   jurisdictional discovery.  And we heard lots of salacious

10  references to emails and testimony from other matters about

11  Citco's alleged conduct.  The fact of the matter is the

12  liquidators had a burden of demonstrating a principal agency

13  relationship and control with respect to the  issues in this

14  case and/or they had an obligation to show evidence or to go

15  out and find the evidence and then bring it to this Court's

16  attention showing that the activities of any Citco operating

17  subs that had activities here that are relevant to this case

18  could actually factually and legally be imputed to Citco

19  Group.  They didn't do so.  That was their choice.  They are

20  now stuck with it.

21         Citco Group is not subject to this Court's

22  personal jurisdiction and it should be dismissed from this

23  case.  Thank you, Judge.

24         THE COURT:  Thank you, Counsel.

25         MR. JONAS:  Briefly if I may, Your Honor.  Jeff

Page 52

1    Jonas from Brown Rudnik for the liquidators, Your Honor.

2            Your Honor, let's think about why we are here

3    today.  I certainly appreciate arguments.  They love the

4    knockout punch.  It's a $1.7 billion of claims.  They love

5    to never have to face the music at all.  And I think those

6    are what most of the arguments go to, that we haven't proven

7    our case of principal agency, et cetera.  It's not a burden.

8    Today our burden is to show prima facie case with respect to

9    personal jurisdiction.  I think we've done that.  I think

10   we've done it overwhelmingly.

11           You know, maybe we've not yet proven an actual

12   principal agency relationship that's ultimately going to

13   mean they are liable for $1.7 billion of claims.  We think

14   we'll be able to do that someday, Your Honor.  That's why we

15   want to get to the merits.  But I don't think we have to

16   prove that today.  I think we've demonstrated more than

17   enough on this record for the motion to dismiss to be

18   denied.

19           And, Your Honor, one of my favorite -- I don't

20   remember the name of the cases I stand on.  I think it was a

21   Posner decision.  It's an old bankruptcy court case I cite

22   many, many times.  Something to the effect of that when a

23   judge in his gut knows something doesn't smell right, I

24   think it was in relation to bad faith, then the judge should

25   make a finding of bad faith.  I'm not suggesting bad faith

Page 53

1    here, Your Honor.  But what I am suggesting is and when I

2    say it's ridiculous, listen to the arguments.  They're

3    dancing on the head of the pin.  Oh yeah, the Citco Group

4    Limited guy was there, but he was there wearing a different

5    hat.  He reported back up to the executive committee, but it

6    was from some other entity.  It -- to me that's ridiculous,

7    Your Honor.  I think the record is replete that Citco Group

8    Limited was involved in the intricacies of the Madoff and

9    Fairfield relationships.  They say they don't even really

10   exist because they don't operate.  We've shown numerous --

11   the CEO, numerous employees, numerous executive directors,

12   executive committee members.  They're all over this.  To me,

13   Your Honor, that's proving the prima facie case on their

14   direct involvement, their direct involvement, never mind the

15   agency relationship.  And again, it's twofold, Your Honor.

16   I think we've met both.

17        Real quickly, Your Honor, I just realized I did

18   not respond to one of the arguments.  I want to make sure I

19   just put it to bed.  The complaint group pleading argument.

20   I didn't spend much time on it because I don't think it's

21   worthy of it.  But I would just say, Your Honor, we cite to

22   Vasquez v. H.K. & Shanghai Banking Corp., 477 F. Supp. 3d

23   241 (S.D.N.Y. 2020).  This case is in a very different

24   posture.  We're not limited to the allegations in the

25   complaint when we do -- when there has been jurisdictional

1    discovery.

2          In any event, Your Honor, I think I've made my

3    arguments and we believe quite strongly that we should be

4    able to proceed to the merits of our $1.7 billion claims

5    against Citco Group Limited and this motion should be denied

6    as to all the Citco defendants.  Thank you, Your Honor.

7          THE COURT:  Thank you, Counsel.

8          Okay.  Which matter are we proceeding to next?

9          MR. LAUFER:  Thank you, Judge.

10         THE COURT:  Thank you, Counsel.

11         MR. LAUFER:  May we...

12         THE COURT:  Yes, please.  Are we going in the

13   order of the agenda?

14         MR. JONAS:  Yes, Your Honor.  I'm a little

15   outnumbered today, but I'll do the best I can.

16         THE COURT:  No problem.

17         MR. LAMBERT:  Shall I proceed?

18         THE COURT:  Please, good morning.

19         MR. LAMBERT:  Good morning again, Your Honor.

20   Michael Lambert of Gilmartin Poster & Shafto LLP for

21   defendant, Private Space Limited in Adversary Proceeding 10-

22   03630.

23         My client, Private Space, has moved to dismiss for

24   lack of personal jurisdiction.  Private Space was a

25   beneficial shareholder with the two BVI funds, Sentry and

Page 55

1    Sigma, and itself was also a BVI corporation.  Its shares

2    were registered in the name of PSL's co-defendant, HSBC

3    Security Services Luxembourg S.A., which I will refer to as

4    HSSL pursuant to a custodian agreement between Private Space

5    and HSSL.  Under that agreement, which is in the record as

6    Exhibit 6 to the Moulton Declaration submitted by

7    liquidators.  In opposition to Private Space's motion,

8    that's Docket 327, HSSL acted on investments and redemption

9    directions from Private Space including Private Space's 2007

10   instructions to HSSL to redeem its positions in both Sentry

11   and Sigma.

12          HSSL's role was execution only.  And HSSL was not

13   engaged to and never did provide any investment advice to

14   Private Space.  It played no role whatsoever in Private

15   Space's decision-making processes.  The evidence in that

16   regard is undisputed.  See in particular Private Space's

17   sworn answers to the liquidator's interrogatories 7 and 12,

18   which are attached as Exhibit 1 to the reply declaration of

19   Lucio Bergamasco, which is Docket 338.

20          Those interrogatory answers are fully corroborated

21   by the (indiscernible) Quintus declaration submitted by HSSL

22   in support of its own motion to dismiss.  That's Docket 281.

23          In a memorandum opinion and order dated January

24   29th of this year, Docket 349, Your Honor has already ruled

25   that HSSL is subject to personal jurisdiction and denied

Page 56

1    HSSL's motion to dismiss for lack of personal jurisdiction.

2         Nevertheless, Private Space's own motion to

3    dismiss should I respectfully submit be treated differently

4    and be granted.  And the reasons are as follows.

5         One, Private Space has never had any U.S. contacts

6    and presence such as a place of business, telephone listing,

7    or bank account.  Assertions to that effect in the original

8    2021 declaration of Lucio Bergamasco in support of Private

9    Space's motion to dismiss, that's Docket 203, are completely

10   unrebutted and unchallenged by the liquidators despite two

11   years of expensive and voluminous jurisdictional discovery.

12        Two, evidence in the record show that Private

13   Space's contacts with Fairfield were with Fairfield

14   representatives whose business cards show addresses located

15   outside the United States, namely London, Switzerland, and

16   Bermuda.  The reference there is again to the reply

17   Bergamasco declaration, Exhibits 2 to 5 and Paragraphs 6 to

18   10.  That evidence also is unrebutted by the liquidators.

19        Third, evidence in the record also shows that

20   Private Space had no meetings with any Fairfield

21   representatives in the United States.  All such meetings

22   were at locations in Europe.  The reference there is

23   Bergamasco Reply Declaration, Paragraphs 7 and 12.  That

24   evidence of no New York meetings or U.S. meetings is again

25   also not in dispute.

Page 57

1          Fourth, evidence in the record also shows that

2     most emails sent to Private Space or its Monaco-based

3     investment advisory firm, Fedesa, from Fairfield

4     representatives were sent from the U.K. or Switzerland.

5          While there is evidence in the record that Private

6     Space did receive some Fairfield emails from an FGG.us

7     account, those emails all clearly came from a Fairfield

8     representative, that's Yanko Della Schiava, who was based in

9     Switzerland.

10          Fifth, Private Space not only never met with

11    Madoff of BLMIS in the United States as set forth in the

12    original Bergamasco declaration from 2021, but also never

13    communicated at all with Madoff or any other BLMIS

14    representative.  Private Space's sworn answer to the

15    Liquidator's Interrogatory 13 to that effect is also

16    undisputed.  That's Exhibit 1 to the reply Bergamasco

17    declaration.

18          Now, it would appear that HSSL or affiliates of

19    HSSL did have meetings with Madoff representatives in the

20    United States, contacts that Your Honor cites to in the

21    decision denying HSSL's motion to dismiss.  I am referring

22    specifically to Pages 25 and 26 of the slip opinion, Docket

23    349.

24          As I've already noted, however, under its

25    custodian agreement with Private Space, HSSL's role was a

Page 58

1    purely ministerial one that was limited to acting on Private

2    Space's instructions.  And again, it is undisputed that HSSL

3    never gave any investment advice to Private Space such as

4    warning Private Space about any perceived problems with the

5    Madoff operation based on whatever Madoff or BLMIS due

6    diligence HSBC entities might have done while acting in

7    other capacities.

8           Under basic principles of agency law discussed on

9    Pages 12 to 15 of Private Space's reply brief in support of

10   the motion, Docket 337, therefore any such contacts between

11   HSBC entities and BLMIS in New York cannot be attributable

12   to Private Space in order to establish jurisdiction over

13   Private Space as they were not within the scope of HSSL's

14   very limited agency as Private Space's custodian.

15          Based on Mr. Jonas' account in his previous

16   argument involving the Citco defendants about what it takes

17   to establish an agency for jurisdictional purposes, i.e. the

18   benefit, the knowledge, and the control test, it would

19   appear that the liquidators agree.

20          In addition, there is zero evidence in the record

21   that Private Space ever knew about those contacts.  I'm

22   talking about the contacts that HSBC representatives had

23   with Madoff in New York and that those contacts were

24   undertaken for the benefit of and/or with the consent of

25   private space, that private space had any semblance of

Page 59

1    control over those contacts, or that HSSL ever passed on to

2    Private Space any information or concerns about BLMIS

3    generated by those contacts.

4           In fact, there are not even any allegations in the

5    fourth-amended complaint, which is Docket 167, of any actual

6    knowledge by Private Space of the Madoff fraud or that HSSL

7    ever conveyed any such knowledge or concerns to Private

8    Space or that Private Space had any knowledge of or anything

9    to do with any BLMIS due diligence that any HSBC entity

10   conducted in New York.

11          The only allegations in the fourth-amended

12   complaint concerning Private Space's knowledge of the Madoff

13   fraud are in Paragraphs 130 to 136.  Those allegations,

14   however, are generalized, conclusory group pleading ones

15   that solely because HSSL subscribed to shares in the funds

16   on behalf of beneficial shareholders, whatever knowledge

17   HSSL allegedly had about BLMIS, knowledge that I am going to

18   point out is alleged in minute detail in Paragraphs 54 to

19   129 of the fourth amended complaint, is attributable to the

20   beneficial shareholders for whom HSSL was acting.

21          The key paragraph is Paragraph 132 of the fourth

22   amended complaint, which reads as follows.  "The beneficial

23   shareholders had the same knowledge as HSSL regarding all

24   relevant matters relating to BLMIS and the fund's net asset

25   values at all relevant times."  That's it.

Page 60

1              And as I've already demonstrated, however, there

2       is no factual or legal basis for any such attribution given

3       the very limited execution-only scope of HSSL's agency.  For

4       the reasons set forth at Pages 12 to 15 of Private Space's

5       reply brief therefore, none of the alleged activities by

6       HSBC entities regarding BLMIS in New York were carried out

7       as Private Space's agent or in any way attributable to

8       Private Space and do not provide a basis for subjecting

9       Private Space to personal jurisdiction.

10             I would like to turn now briefly to the issue

11      involving the use of a U.S. correspondent bank.

12             First, Private Space itself never had a U.S. bank

13      account of any type.  That's undisputed.  The funds used by

14      Private Space to make its investments in Fairfield came

15      either from an account at Citco Bank Nederland in Ireland or

16      a client account that HSSL had set up in HSBC Bank PLC in

17      London using funds from an account that Private Space had

18      set up in Luxembourg.  The reference there is to Reply

19      Bergamasco Declaration Paragraph 13.

20             With respect to Private Space's investments in

21      Sigma, it is conceded that no use bank was used at all with

22      respect to those investments or subsequent redemption.

23             As for Sentry, Private Space made a total of five

24      investments and received one redemption in transactions in

25      which funds were momentarily routed through a U.S.

Page 61

1    correspondent bank.  As to that one redemption, Fairfield

2    made the payment from a bank in Ireland.  The fourth amended

3    complaint says that the redemption payment was made to HSBC

4    Bank PLC in London, Exhibit A to the fourth amended

5    complaint.

6           The U.S. correspondent bank through which the

7    payment was routed was chosen by HSBC Bank PLC London, which

8    itself was chosen by HSSL.  And that was a correspondent

9    bank not of HSSL or Private Space, but of HSBC Bank PLC

10   London.

11          The incidental clearing of U.S. Dollar payments

12   through a New York correspondent account on six occasions

13   over a roughly three-and-a-half year period -- that's five

14   investments in Sentry plus the one redemption -- is not I

15   submit a jurisdictionally relevant contact because the

16   principal wrong was not the use of the U.S. banking system

17   as it was in the Licci cases which involved in the words of

18   the Second Circuit, "The unlawful provision of banking

19   services to fund Hezbollah's terrorist goals."  That's 732

20   F.3d 171, which resulted in the rocket attacks which injured

21   the Licci Plaintiffs or their family members.  Or, as it was

22   in the Spetner case where the transfers via a U.S.

23   correspondent bank funded terrorist attacks by Hamas in

24   Israel that injured the plaintiffs in that case.

25          Here by marked contrast once the conclusory

Page 62

1    allegations of imputed knowledge are removed from the

2    equation as they must be given the undisputed, extremely

3    limited scope of HSSL's agency for Private Space, the fourth

4    amended complaint is completely devoid of any factual

5    allegations of any actual wrongdoing at all on the part of

6    Private Space in connection with the incidental use of U.S.

7    correspondent bank by its custodian to facilitate the

8    transfer of funds from one foreign bank to another.

9           So too the fact that there was an alternative

10   albeit less attractive routing not involving U.S.

11   correspondent bank -- I'm talking here about the proposition

12   put forward by the liquidator's expert, Sarah Joyce, is I

13   submit further proof that electing to use the option of  a

14   U.S. correspondent bank to facilitate the transfer of funds

15   from one foreign bank to another simply cannot be the

16   principal wrong as it was in Licci.  That's also confirmed

17   by the fact that the liquidators are also seeking to claw

18   back Private Space's Sigma redemption payment which did not

19   involve the use of the U.S. correspondent bank at all.

20          One last point, Your Honor.  The liquidators

21   contend that exercising jurisdiction is reasonable because

22   Private Space has been litigating here for ten-plus years.

23   That that is a classic bootstrap argument that should be

24   given no credence.  Private Space was sued here and had no

25   choice but to defend itself.  And to that end, Private Space

Page 63

1    originally moved to dismiss for lack of jurisdiction at the

2    very first opportunity it had to do so.  And that was in

3    2017, Dockets 48 and 49 and 61 and 62.

4         For all of these reasons and the reasons set forth

5    in Private Space's moving and reply papers therefore I

6    respectfully submit that Private Space's motion to dismiss

7    for lack of personal jurisdiction should be granted.  Thank

8    you, Your Honor.

9         THE COURT:  Thank you, Counsel.

10        MR. JONAS:  Your Honor, Jeff Jonas from Brown

11   Rudnik for the liquidators.  This will be brief, Your Honor.

12        Private Space acknowledges that it used HSBC

13   Securities Services Luxembourg SA -- you can call it HSSL or

14   HSBC Lux, I'll use HSBC Lux because that's what you used in

15   your opinion, Your Honor -- as its custodian and agent for

16   purposes of its investment in Fairfield.  HSBC Lux

17   subscribed for Fairfield Fund shares on behalf of Private

18   Space as the beneficial owner.

19        Accordingly, the $17 million of redemption

20   payments at issue here is subsumed within the larger amount

21   which liquidators seek from HSBC Lux.  As the Court is

22   aware, HSBC Lux filed its own motion to dismissed based on

23   lack of personal jurisdiction and the Court issued its

24   memorandum opinion and order denying that motion on January

25   29th, 2004 including based on purposeful availment, use of

Page 64

1    U.S. correspondent bank accounts, et cetera.

2           While there are additional relevant facts

3    supportive of the liquidator's position here, which I will

4    get to, at the outset because the Court has already

5    considered the facts and law relevant to HSBC Lux and found

6    personal jurisdiction, if the Court now agrees with the

7    liquidators that HSBC Lux conduct can be imputed to Private

8    Space, which they oppose, there is little more that needs to

9    be done here.  Private Space's motion should be denied.

10           I won't again recite the relevant law regarding

11   agency or imputation because fortunately for us, Your Honor,

12   Private Space has already acknowledged and conceded

13   everything needed for the Court to impute HSBC Lux conduct

14   to Private Space.  Beginning at Page 12 of its reply

15   memorandum, Private Space states, and I'll quote, "PSL of

16   course takes no issue with the notion that HSSL acted as its

17   agent when it carried out Sentry and Sigma subscription and

18   redemption instructions from PSL and arranged for the

19   related payments and that it, PSL, was aware of and

20   consented to those activities.  Thus, the resulting

21   subscriptions and redemptions are binding on PSL as the

22   beneficial owner or principal on whose behalf HSSL was

23   acting."  Those are their words, Your Honor.  Not mine.

24           Private Space makes a tortured attempt to argue

25   that because the cope of the agency was somehow limited to

Page 65

1      "ministerial actions" that HSL's actions can't be imputed.

2      That's nonsense, Your Honor.

3              What this defendant and many of the other

4      defendant today would say is this, just to put it in a clear

5      example, that a sophisticated foreign financial investor or

6      institution can hire another entity to act as ISA agent,

7      even they say agent, so I'll say agent.  But if you don't

8      want to say agent, let's say recordholder, so that it can

9      knowingly, which I'll get to, knowingly invest in New York-

10     based Madoff and take advantage of the U.S. securities

11     markets.  But if there's wrongdoing, it's not subject to New

12     York jurisdiction.  That cannot be the law, Your Honor.

13             But let me come back.  There are additional facts

14     which we don't even need the agency, which I think is a slam

15     dunk.  The additional facts are as follows.  Private Space

16     independently investigated the funds as potential

17     investments, Exhibits 22 and 23.  Private Space directly

18     received diligence from the fund's manager, FGG, including

19     information and documentation indicating that the fund

20     substantially invested in BLMIS.  Same exhibits.

21             Private Space directly received PPMs which, as

22     we've seen many times highlighted the fund's investment in

23     BLMIS.  That's Exhibit 1, which is a Sentry PPM, and Exhibit

24     24, which is a Sigma PPM and the transmittal email.

25             And last, Your Honor, Exhibit 9 is evidence of the

Page 66

1    redemption payments flowing through Private Space's agent's

2    correspondent bank account at HBUS.

3              Accordingly, Your Honor, Private Space

4    independently and directly knew its investment was into New

5    York-based BLMIS.  It desired to invest and through

6    Fairfield knowingly invested in the U.S. securities markets.

7    And on that basis, Your Honor, Private Space's motion to

8    dismiss should be denied.  Thank you.

9              THE COURT:  Thank you, Counsel.

10             MR. LAMBERT:  Briefly, Your Honor?

11             THE COURT:  Please.

12             MR. LAMBERT:  Michael Lambert for defendant,

13   Private Space.

14             Private Space of course stands by what it said in

15   its reply brief with respect to the -- it's the agency

16   relationship it had with HSSL.  There is no question that

17   the actions that it took on our behalf by subscribing to the

18   funds bind Private Space.  What my argument is, however, is

19   that that was a very limited agent.  And when HSBC and HSSL

20   and other related entities were meeting with Madoff in New

21   York, meetings which Your Honor referenced in your decision

22   that denied HSSL's motion to dismiss, that those meetings

23   had nothing to do with its agency for Private Space and

24   therefore cannot be attributed to Private Space.

25             Private Space itself never had any meetings with

Page 67

1    Madoff in New York, never had any meetings with Fairfield in

2    New York.  And it was a very limited agency.  We cite the

3    caselaw.  The caselaw is black letter law.  And agency --

4    you're only an agent to the extent that the agent is acting

5    within the -- the acts of an agent only bind the principal

6    to the extent that the agent's acts were in the scope of his

7    agency.  And my argument was simply that whatever meetings

8    HSSL had in other capacities in New York with Madoff are not

9    binding on PSL because they were clearly not within the

10   scope of its agency for Private Space.  They were not

11   undertaken with the consent, knowledge, or to benefit

12   Private Space.  Thank you, Your Honor.

13              THE COURT:  Thank you, Counsel.

14              MR. JONAS:  Your Honor, Jeff Jonas for the

15   liquidators.  I will accept -- for purposes of argument

16   right now I'll accept everything Mr. Lambert said.  And I'll

17   say this.  What we know for sure, because what they

18   absolutely admit is -- and I'll accept it for purposes of

19   this argument right now -- all we -- the authorization of

20   our agency was go subscribe and ultimately redeem -- go

21   subscribe to that fund for us.  And that's exactly what they

22   did.  And they signed a subscription agreement that

23   acknowledged they looked at a PPM that said that this was an

24   investment -- we've been through this many, many times --

25   this is an investment in Madoff.  All of this or

Page 68

1    substantially all of this money is going to Madoff.

2              So now he's saying, well, yeah, they were our

3    agent for purposes of the subscription and yeah, they knew

4    they were investing in Madoff, but there's a block there.

5    We're not charged with the subscription which we authorized

6    them to sign?  It doesn't make any sense, Your Honor.  And

7    never mind the additional facts I've put forth indicating

8    their direct, if you will, contacts that I think in and of

9    themselves would be enough to have them required to submit

10   to jurisdiction.

11             Thank you, Your Honor.

12             THE COURT:  Thank you, Counsel.

13             MR. LAMBERT:  Your Honor, just very briefly.  It's

14   not my contention that we're not bound by the subscription -

15   -

16             THE COURT:  Identify yourself for the record,

17   please.

18             MR. LAMBERT:  I'm sorry?  Oh.

19             THE COURT:  Identify yourself for the record.

20             MR. LAMBERT:  Sorry.  Michael Lambert for Private

21   Space.

22             It is not our contention that we're not bound by

23   the subscription agreements that HSL signed on our behalf.

24             THE COURT:  Thank you, Counsel.  Okay, shall we

25   proceed to the next matter?

1          MR. JONAS:  Your Honor, at some point could I just

2     get just a few minutes?  A quick break?  Whenever --

3          THE COURT:  Sure.

4          MR. JONAS:  I could go through another argument or

5     now.  Whenever is convenient for you, Your Honor.

6          THE COURT:  Why don't we take five minutes now.

7     Okay?

8          MR. JONAS:  Okay, thank you.

9          THE COURT:  It's 11:06.  We'll come back at -- in

10    five minutes.

11         MR. JONAS:  Thank you, Your Honor.

12         THE COURT:  Okay.

13         (Recess)

14         CLERK:  All rise.

15         THE COURT:  Please be seated.

16         MR. JONAS:  Thank you, Your Honor.

17         THE COURT:  Okay, back on the record.  Are we

18    ready to proceed with the next matter?

19         MR. WEIDNER:  Good morning, Your Honor.  Chase

20    Weidner from Gibson Dunn on behalf of the UBS entities, UBS

21    A.G. and UBS Jersey Nominees Limited.

22         THE COURT:  Good morning.

23         MR. WEIDNER:  Good morning.  So as with the other

24    partis, I don't want to retread old ground that Your Honor

25    has already covered in your prior decisions.  But the

1   parties did spend a fair amount of time this morning

2   touching on an issue that we had raised in our UBS Lux

3   briefing and we've raised again here.  And it's an issue

4   that Your Honor did not address in the opinion.

5           We've heard the parties speak at length about

6   agency relationships and parent-subsidiary relationships and

7   when contacts can be imputed.  We've heard about agency

8   relationships, alter egos, and departments.  And I just sort

9   of want to clarify here that the fund are not UBS's agent.

10  It is alleged that Citco is UBS's agent, and it is alleged

11  that Citco was also the fund's -- it was Sentry's agent.

12  But there's no allegation that Sentry was UBS's agent.  And

13  I think that's a key insight that we've been trying to sort

14  of get across through our briefing, which is why the absence

15  of that relationship is why you cannot impute the contacts

16  of Sentry and its own investment in BLMIS to UBS in the

17  first instance.  That's why Sentry's investments are its own

18  investments and not UBS's investments and the fact that UBS

19  knew that those investments, its investments in a separate

20  entity in Sentry or Lambda would ultimately end up in New

21  York does not change that dynamic.  It also explains why the

22  2023 Southern District opinion that Mr. Jonas cited was

23  incorrect.  And if this were the law, if this were the case,

24  then it would eviscerate the parent-subsidiary caselaw and

25  agency caselaw that we've heard about at length this

Page 71

1    morning.

2            Now, Mr. Jonas has also said, despite discussing

3    all this caselaw at length, that it actually cannot be the

4    case, that this cannot be the law.  But it really dovetails

5    exactly with jurisdictional first principles.  The Supreme

6    Court has made clear that jurisdictional caselaw is about

7    clear notice and fair notice and that parties should be able

8    to structure their affairs in such a way to avoid being

9    subject to jurisdiction in any given state or in the United

10   States in general.  And when you look at the structure here,

11   that is exactly I would submit what the parties have done,

12   particularly for the foreign currency funds for Sigma and

13   Lambda where we're talking about UBS, a foreign bank,

14   investing a foreign currency in a foreign entity that

15   invests in another foreign entity that ultimately invests in

16   New York.  And so quite to the contrary that it cannot be

17   the law, I think the law is quite clear on this, that the

18   contacts of Sentry cannot be imputed to UBS.

19           And so with those out of the way, then you're just

20   left with what the liquidators have alleged are UBS's own

21   contacts with the forum.  And I think a key piece here is

22   something that we've argued and now the liquidators have

23   conceded in their response to a summary judgement motion

24   that was filed the Tab 3636 case, which is that each

25   redemption in this case is its own claim.  And the fact that

1      each redemption is its own claim is significant in at least

2      two respects.

3              And so the first relates to the meetings and

4      emails that the liquidators have put before Your Honor.

5      It's incumbent upon the liquidators to show that these

6      redemptions at issue here -- and again, each redemption is

7      its own claim -- that each individual redemption arises out

8      of or relates to these meetings or these communications.

9      And the liquidators have not shown that these meetings, that

10     these individual redemption arise out of or relate to those

11     meetings, for example.  And in some ways it's very clearcut.

12     If a meeting was in 2008, a claim based on a redemption that

13     occurred in 2006 or 2007 necessarily does not arise out of

14     or relate to a meeting that did not occur until several

15     years later.  And so again, I think with respect to the

16     meetings and the communications which Your Honor has focused

17     on, the liquidators have not shown that the individual

18     redemptions arise out of or relate to them.  And so those

19     meetings and contacts are not jurisdictionally relevant with

20     respect to a given claim or a given redemption.

21             Second, Your Honor has also cited the fact and has

22     cited to Licci and Spetner for the notion that repeated uses

23     of correspondent accounts in the United States can give rise

24     to jurisdiction when the harm is perpetrated through those

25     correspondent account uses.  But by definition if each

Page 73

1    redemption is a separate claim, we're not talking about

2    repeated uses of the wires, we're talking about single uses

3    of the words.  And with respect to those single uses, I

4    would just add parenthetically that in a number of instances

5    the amount of money we're talking about was quite small.

6    There were some redemptions in the neighborhood of $1,000,

7    $2,000, $3,000.  And so that's what we're talking about when

8    we're also thinking about the reasonableness inquiry here as

9    well.

10            And just a final quick third point on this.  The

11   liquidators allege that the redemptions at issue here went

12   from foreign bank accounts to foreign bank accounts.  They

13   went from Sentry's account with Citco Dublin branch to

14   foreign brokerage and custody accounts abroad.  And in fact

15   when you look at the evidence that they've put before the

16   Court, it confirms that that's the case, that the

17   redemptions at issue here for hundreds of the redemptions

18   we're talking about went from foreign Sentry accounts to

19   foreign brokerage and custody accounts where, according to

20   the liquidator's own allegations, UBS was required to have

21   an account.

22            And so I think when you sum all of this up, the

23   fact that the communications and the meetings, the

24   liquidators have not shown that these redemptions arise out

25   of or relate to those communications or meetings, the fact

Page 74

1    that we're talking about a single use with respect to any

2    given claim, and the fact that the redemptions in many

3    instances are not alleged to have and the evidence seems to

4    confirm did not pass through the United States.  That when

5    you sum all of that up, those distinctions merit a different

6    outcome here than with respect to the UBS Lux opinion that

7    Your Honor previously decided.  Thank you.

8            THE COURT:  Thank you, Counsel.

9            MR. JONAS:  Jeff Jonas, Brown Rudnik, Your Honor,

10   for the liquidators, the plaintiffs in opposition of the

11   motion to dismiss for lack of personal jurisdiction.

12           I'm a little confused by some of the arguments

13   that were made, Your Honor.  Because I think substantially

14   all of them were in fact addressed by the four opinions you

15   issued.  We haven't said that Sentry was UBS's agent.  In

16   fact, in your -- I think it was the HSBC Securities Services

17   opinion at Page 27, as you said, the relevant contacts were

18   not driven by the conduct of the Fairfield funds alone; they

19   were the result of Defendant's efforts to invest in BLMIS in

20   New York.  That's what we're saying.  So I don't think I

21   have to respond further than that.

22           As for each redemption is its own claim, Your

23   Honor, in large part you said the allegations, that is with

24   respect to subscriptions, et cetera, related to Defendant's

25   investment activities, that's the claim they, flow through,

Page 75

1    they flow through all the redemptions.  Once we've proven it

2    at the outset, I think we've proven it.  So just to respond

3    to those.

4         But now let me get to my argument, Your Honor.

5    This is a $108 million redemption claim against UBS AG.  I

6    think the starting point and perhaps the ending point of

7    this particular analysis with respect to UBS should be UBS's

8    reply memorandum, Footnote 2, which states, "UBS does not

9    contest that the Citco subscriber's jurisdictional contacts

10   can be imputed to UBS."  Citco Global Custody and Citco

11   Banking Corporation, which are -- those are the Citco

12   subscribers -- they acted as UBS's agent in subscribing for

13   Fairfield Fund shares for the benefit of UBS.  Thus, despite

14   its many arguments that the Court does not have personal

15   jurisdiction over UBS because of its own contacts, it has

16   acknowledged that all of Citco's jurisdictional contacts,

17   which I reviewed previously and have set forth in our

18   papers, can be imputed to it, which is appropriate under and

19   consistent with relevant law because Citco was retained by

20   UBS as its agent.

21        I would like to -- so I don't know there's much

22   more to say there, Your Honor.  I would like to note that

23   UBS filed a motion to dismiss for lack of personal

24   jurisdiction in the Madoff Trustee, Mr. Picard's action,

25   which was denied.  And in its reply memorandum, Your Honor,

Page 76

1    consistent with the arguments that were made here, I think

2    all of the arguments that they made there have been

3    dispensed with based on your memorandum opinions.  They said

4    in -- this is their preliminary statement.

5           First, the purported U.S. orientated business

6    activities that the liquidators claim UBS engaged in are

7    jurisdictionally irrelevant.  Second, the intent and

8    knowledge test pressed by the liquidators for imputing their

9    own contacts with BLMIS to UBS is contrary to binding

10   precedent.  Third, the contacts the liquidators seek to

11   shoehorn into the dispute, subscription-related activities

12   do not relate to their constructive trust claims.  Fourth,

13   allegation and evidence about the use of the U.S.

14   correspondent account fall short of the standards set forth

15   in binding precedent.  Fifth, exercising jurisdiction over

16   this dispute, which involves numerous foreign parties and

17   centers on the alleged wrongdoing of yet another foreign

18   entity would be unreasonable.  I think all of those

19   arguments have been dispensed with and are, frankly, out the

20   window.

21          In any event, the relevant contacts here are as

22   follows.  Because, just as I think I have demonstrated

23   before, even without the agency there is enough.

24          The same form of PPMs, private placement

25   memoranda, were used with respect to UBS's investments in

Page 77

1    the funds as we've seen before.  That is PPMs referencing

2    Madoff, BLMIS, its split-strike conversion strategy, et

3    cetera, et cetera.  They knew they were investing in the

4    U.S. securities markets.

5           Not only did Citco, UBS's agent, receive these,

6    but UBS received these directly.  Those are at Exhibit 10

7    and 11.  UBS sent its subscription monies to Citco's U.S.

8    correspondent account at HSBC on 69 occasions to make more

9    than $24 million in subscription payments.  UBS received at

10   least seven redemption payments totaling approximately five-

11   and-a-half million dollars that went through Citco's U.S.

12   correspondent bank account at HSBC.  The support for what

13   I've just stated, Your Honor, is Exhibits 46 through 49.

14           UBS instructed its agent, Citco, to sign many,

15   many subscription agreements governed by no law and which

16   provided for New York as the forum for any related

17   litigation, Exhibits 43 through 54.

18           UBS itself conducted due diligence and other

19   activities both within and aimed at the United States by

20   requesting fund-offering materials from U.S. entities,

21   meeting with the fund's manager, FGG, three times, at least

22   twice in New York to discuss the funds, and communicating

23   with U.S. and New York-based entities and personnel on

24   several occasions about Sentry's relationship with Madoff

25   and UBS's investment in the funds.

1           For example, Your Honor, Exhibit 7.  It's a 2003

2    email with the subject line September 24th meeting at UBS

3    New York.  Exhibit 8, a 2008 email regarding meeting with

4    FGG in New York.  Exhibit 9, another 2008 email regarding

5    meeting with FGG.

6           UBS also engaged in regular and extensive

7    communications with FGG in the United States.  For example,

8    August 26th, 2008 email from UBS employees requesting and

9    receiving fund documents from FGG on behalf of a "client who

10   is interested to have exposure to Madoff".

11          There is nothing random, fortuitous, or attenuated

12   about UBS's direct contacts with New York.  Moreover, UBS

13   accepts that its agent Citco's many contacts with New York,

14   including use of U.S. correspondent bank accounts, should be

15   imputed to UBS.  On that basis, Your Honor, UBS's motion

16   should be denied.  Thank you.

17          THE COURT:  Thank you, Counsel.

18          MR. WEIDNER:  Did you address Jersey?  I'm sorry.

19   UBS Jersey?  Are you going to do that now?  (indiscernible).

20          MR. JONAS:  (indiscernible).  Okay.  One minute,

21   Your Honor.  I just have a few other points.  Thank you.

22   Sorry for the confusion, Your Honor, there.

23          There's two UBS entities.  There's AG and Jersey.

24   And I was a little confused, I apologize.  With respect to

25   UBS Jersey Nominees Limited, it's a $4 million redemption,

Page 79

1    Your Honor.  I won't spend too much time on this, but the

2    relevant facts and law are similar to those relating to UBS

3    AG.  And again, UBS Jersey doesn't contest that its agent

4    Citco's jurisdictional contacts can be imputed to UBS

5    Jersey.

6              More particularly, Your Honor, I will be brief,

7    UBS Jersey used Citco as its agent to invest in the funds.

8    UBS itself received copies of subscription agreements.

9    That's Exhibit 3.  Citco as UBS Jersey's agent, again,

10   received private placement memorandums.  UBS Jersey entered

11   into the same form of brokerage and custody agreement with

12   Citco as UBS AG.  UBS's agent entered into at least one

13   long-form subscription agreement governed by New York law

14   provided for New York courts.  And again, Your Honor, for

15   all the same reasons, UBS Jersey's motion should be denied.

16   Thank you.

17             THE COURT:  Thank you, Counsel.

18             MR. WEIDNER:  Just a few brief points, Your Honor.

19             THE COURT:  Just identify yourself for the record.

20             MR. WEIDNER:  Sorry.  Chase Weidner for Gibson

21   Dunn on behalf of the UBS AG and UBS Jersey Nominees

22   Limited.

23             You heard Mr. Jonas note that it's a $108 million

24   redemption claim and a $4 million redemption claim.  But

25   that ignores again the fact that they themselves have

Page 80

```
 1    conceded that each of these redemptions is a separate claim.

 2    And so you can't just sum all of these redemptions up.  You

 3    can't sum all of these meetings and emails up and just

 4    pretend like it's one monolith.  Right?  They have to show -

 5    -

 6            THE COURT:  How do you connect a meeting to a

 7    redemption?

 8            MR. WEIDNER:  How do you connect a meeting...

 9            THE COURT:  To a redemption.

10            MR. WEIDNER:  So for example, so if we were to

11    look at some --

12            THE COURT:  Is it just timing?  If it was before

13    versus after?

14            MR. WEIDNER:  So I think timing would be relevant.

15    But also if we look at the nature of the meetings

16    themselves, you can see.  So, for example, one is about I

17    would like you to describe the Sentry platform to an

18    individual who works for UBS, right?  And that person will

19    then presumably go and try to get individual investors to

20    give their money to UBS to ultimately give to Sentry.  And

21    so if you could tie, for example, that meeting to subsequent

22    investments, then you would be able to show a relationship

23    between the two.  You could show that the claims, that the

24    redemptions here arise out of or relate to those meetings.

25    But just a general meeting that occurs in 2003 that says,
```

Page 81

```
1    hey, this one individual from UBS is coming to New York,

2    could you generally educate him on this so he can see if he

3    can go get clients to do something with that information

4    does not show that this specific redemption is at issue

5    here.  The hundreds of them across several years arise out

6    of or relate to that specific meeting.

7              THE COURT:  Thank you, Counsel.

8              MR. WEIDNER:  And so, again, I think if you look

9    at the meetings on their face, Mr. Jonas went through some

10   of them, you'll see that they're not specific to any

11   redemptions.  And of course I would also point out the

12   timing issue, that many of them post-date many of the

13   redemptions at issue here.  And I would say the same thing

14   for the emails as well.  Right?  You would have to have a

15   closer tie than just the fact that it's between UBS and

16   between Sentry in order to show that the specific

17   redemptions here arise out of or relate to them.

18              Mr. Jonas also noted that there are at least seven

19   redemptions that went through U.S. correspondent accounts.

20   I would just note that they've alleged hundreds of

21   redemptions.  And so that seems to concede that in fact

22   hundreds of them did not go through U.S. correspondent

23   accounts with respect to Sentry.  I would also again

24   highlight that there is no allegation with respect to Sigma

25   and Lambda that any of the redemptions or subscriptions went
```

Page 82

1    through any correspondent accounts in the United States at

2    all.

3              And then just finally, Your Honor, with regard to

4    Citco's jurisdictional contacts, its' true that we don't

5    dispute that Citco's jurisdictional contacts can be imputed

6    to UBS with the scope of their agency, right?  To the extent

7    that they are acting for the benefit of UBS, not Citco's

8    contacts as a whole, right?  That's the nature of agency

9    relationships and the nature of how contacts get imputed.

10             But I also want to clarify that the key point here

11   is there are these tests for agencies and parent

12   subsidiaries and the fact that you need to be an alter ego

13   or department in order to impute contacts from one entity to

14   another entity to sort of bridge across the corporate

15   separateness divide there.  And our point is that while

16   Citco was an agent for UBS and separately -- there's a

17   cleaner divide here -- Citco was an agent for Sentry, what

18   Sentry ultimately did cannot bridge that corporate

19   separateness divide in the absence of an agency relationship

20   and alter ego relationship, a department relationship,

21   something like that.  All the things we've been discussing

22   today.  And that's the reason that Sentry's ultimate

23   investment in Madoff can't be imputed back to UBS, because

24   there's a clean divide there and legal doctrine that we have

25   in these other contacts to divide -- or to bridge that gap.

1   Thank you, Your Honor.

2           THE COURT:  Thank you, Counsel.

3           MR. JONAS:  Your Honor, Jeff Jonas from Brown

4   Rudnick, for the liquidators.  I'll just close with this,

5   Your Honor.  Their words, UBS does not contest the Citco

6   subscribers' jurisdictional contacts can be imputed to UBS.

7   Footnote 2 of their reply memorandum.  Thank you, Your

8   Honor.

9           THE COURT:  Well, they're saying it's within a

10  narrow scope I guess.  Right?

11          MR. JONAS:  How narrow -- let's keep it very

12  narrow.  They signed a -- they told them go subscribe.

13  Okay.  They signed a subscription agreement that ties to a

14  PPM that says this is an investment in Madoff.  Is that

15  narrow enough?  I don't think it could be any narrower.

16          THE COURT:  What do you make of the argument about

17  meetings occurring after the redemption --

18          MR. JONAS:  Your Honor, I agree with that, Your

19  Honor.  And, A, I don't think we even need that, frankly.  I

20  think that's kind of down here after we've got jurisdiction

21  on any number of bases.  But I will say, Your Honor, that I

22  don't think that's -- and I don't think anybody cited

23  particular cases on this point.  But I don't -- to me that

24  does not feel right for a jurisdictional analysis because

25  look at what the true test is.  Are the contacts fortuitous,

1    attenuated?  Are the contacts such that the party would say,

2    oh my god, how did I end up in New York?  That's the basic

3    test.  It is a bit of a field test.  I don't think as to

4    meetings, correspondence, I don't think when you're looking

5    at that kind of conduct, I don't think you have to tie that

6    particular conduct.  It related to their investment.  We

7    know that.  There was no other reason for them to be there.

8    They talked about their investment and they came into New

9    York.  They talked to people in New York.  I think all of

10   that demonstrates that it certainly -- context was certainly

11   not attenuated or fortuitous or random such that should have

12   any expectation that they wouldn't be subject to New York

13   jurisdiction.

14          Thank you, Your Honor.

15          THE COURT:  Thank you, Counsel.

16          MR. WEIDNER:  Just briefly, Your Honor.  We do

17   cite a case for the notion that events that postdate the

18   relevant conduct, that the claims do not arise out of or

19   relate to conduct that occurred long after the thing at

20   issue.  So meetings in 2008, claims based on redemptions

21   that occurred before 2008 don't arise out of or relate to

22   meetings in 2008.  That's on page 4 of our reply brief.

23          And then just briefly, I realize Mr. Jonas says

24   that it doesn't feel right that those things should be

25   segregated.  But the claims must arise out of or relate to

Page 85

1    the contacts themselves.  And so regardless of how Mr. Jonas

2    feels, a claim does not arise out of or relate to something

3    that happened well after the whole event occurred.  Thank

4    you.

5              THE COURT:  Thank you, Counsel.

6              MR. JONAS:  Last, Your Honor, I just want to make

7    sure you're aware it's Exhibit 7.  They met in September in

8    New York in 2003.  And I think it's somewhat like fruits of

9    a -- everything follows, Your Honor.  So thank you.

10             THE COURT:  Thank you, Counsel.  Shall we proceed

11   to the next matter on the agenda?

12             MR. JONAS:  I think he's virtual, Your Honor.

13             THE COURT:  Okay.  So we covered three and four on

14   the agenda?

15             MR. JONAS:  Yes.

16             THE COURT:  Yes.  So we're up to five?

17             MR. JONAS:  Yeah.  Thank you, Your Honor.  There's

18   five, six, and seven left.

19             Oh you're right.  Sorry, Eric.  Yeah, we're on

20   yours.  Oh, I'm sorry, Number 5.  Julius Baer.  Sorry about

21   that.  And Mr. Gilmore is Altipro, Your Honor.

22             MR. HALPER:  Your Honor, may I proceed?

23             THE COURT:  Please.

24             MR. HALPER:  Thank you.  Again, Rick Halper with

25   McKool Smith for Defendant, Bank Julius Baer.  We represent

Page 86

1    Bank Julius Baer in two actions.  Again, it's Adversary

2    Proceeding 10-3635 and 10-3636.  The allegations in those

3    two actions are virtually identical.  And for the purposes

4    of these motions, I think we can treat them the same.  I

5    think my adversary will likely agree with that.  And so for

6    purposes of that, we're going to treat this as one

7    collective.

8              I did want to start, Your Honor, by -- well,

9    before I do that just as some of my other co-defendants and

10   colleagues have said, we are resting on our papers and

11   relying on our papers for a number of the legal arguments

12   we've made, some of which or many of which you have

13   addressed in some of your prior opinions.  You've heard a

14   lot of argument both today and in prior hearing about some

15   of those arguments.  And so we adopt the arguments of our

16   co-counsel and from our counsel on the related proceedings

17   from the prior hearing as applicable.  And you'll see that

18   that's also borne out in our briefs.

19             But I'm going to focus on a couple of things that

20   I think distinguish these cases and Julius Baer from some of

21   what you've seen before and ruled on before.

22             So first let me just start with a high-level look

23   at these actions and why they are different.  So these two

24   actions included a multitude of defendants, unlike some of

25   these other actions that are geared towards maybe sort of a

Page 87

1     set of corporately related defendants or a handful of

2     defendants that were tied together by the underlying

3     transactions and investments that are at issue.  Here you've

4     got actions that are against a multitude I think in the 3636

5     action.  It might have been 80-some-odd defendants,

6     something to that tune, all of which are completely

7     independent of each other.  There's no connection other than

8     that ultimately we're talking about investments that made

9     their way into Fairfield Sentry and related funds.  But

10    other than that, there's no connection between these

11    defendants whatsoever.

12             The group pleading issue came up, and I want to

13    address that a little bit.

14             In the complaints here -- and again, unlike some

15    of the actions that I think Your Honor has already ruled

16    upon, there are virtually no jurisdictional elements

17    whatsoever.  Not only about Julius Baer, but about any of

18    the defendants.  The specific allegations that actually

19    speak to and name and address Julius Baer and then the same

20    for other individual defendants I think are of sum total of

21    two paragraphs.  And the paragraphs say, one, they establish

22    Julius Baer is a Swiss bank that's located in Zurich.

23    Clearly that does not establish jurisdiction in the U.S.

24    And the other allegation, a much more general one, and we'll

25    get into some of this, is the Citco subscribers as they are

Page 88

1    referred to in the complaints may have paid some of the

2    redemptions to the benefit or an account of Julius Baer and

3    then other of these individual defendants.  That is it.

4    That is the sum total of the jurisdictional allegations.

5              I would submit to you, Your Honor, that there

6    never was a proper predicate in this case, unlike some of

7    the others, for the jurisdictional discovery that was

8    allowed.  You may say, well, okay, but we've had it and

9    we're going to -- I'm going to address it shortly.  But

10   there is no basis and it would be improper and it's an

11   improper use of jurisdictional discovery to allow plaintiffs

12   to through that discovery basically rewrite and/or

13   supplement and amend their complaint.  Jurisdictional

14   discovery is granted when you have some jurisdictional

15   allegations, there is a dispute over the factual basis and

16   correctness and accuracy of those allegations.  And then you

17   turn to some jurisdictional discovery to determine what is

18   actually correct.

19             So simple example, you might have an allegation,

20   well, they had a business in the U.S., it was located here.

21   They had bank accounts, they had telephone numbers, they

22   were transacting.  Those meetings, even U.S. meetings

23   occurred.  That's the basis for jurisdiction.  Defendants

24   come along and say that's not correct, we were never in the

25   U.S., you've got the wrong entity, you're describing

1    something different.  We contest that.  We put in, you know,

2    a declaration that says that's not true, we were never in

3    the U.S.  Now maybe there's a cause or a basis to say, okay,

4    well, we've got to get to the bottom of this.  Let's have a

5    little jurisdictional discovery and figure out what's the

6    truth.  That is not what happened here.

7           Here there is no jurisdictional allegations,

8    barest bones on the pleadings.  They got jurisdictional

9    discovery anyway, and now they want to take that

10   jurisdictional discovery and say, look, here's our case.

11   Here's all the allegations we never included, and we want

12   you to treat them as if they were part of the complaint.

13   And that's just presented in a brief.  That's not the way to

14   amend a complaint.  That's not a proper use of

15   jurisdictional discovery.

16           And so in the first instance we think, frankly,

17   all of that should be disregarded and you should rule it on

18   the pleadings.  And clearly there's no case for jurisdiction

19   there.  That all being said, if we credit and take a look at

20   the jurisdictional discovery that was taken, it doesn't add

21   up even close to what they claim it does.  And it's very

22   important that we start then, taking a hopefully fairly

23   brief walk, but a walk nonetheless through the evidence that

24   they are relying on to make their case for why there is

25   jurisdiction over Bank Julius Baer.

Page 90

```
 1              So let me start -- and if you look in their brief,

 2      it starts with the background.  They kind of walk through

 3      the story, if you will, Your Honor, about their basis for

 4      saying they have jurisdiction over Bank Julius Baer.  And

 5      then throughout the rest of the brief, they refer back to

 6      the very same documents.  The only problem is the documents

 7      don't really support what they say they support.

 8              So one thing I want to start with, which is

 9      actually even before you get to their background section,

10      it's on the very first page of their brief.  Liquidators

11      allege that Julius Baer had knowledge of Madoff's fraud.

12      Straightforward.  They say we actually had knowledge of the

13      fraud.  That is patently false.  There's no support for

14      that.  And then later in a footnote, I believe it's Footnote

15      14, the liquidators concede we have no evidence or documents

16      that Julius Baer actually knew about the fraud or knew that

17      the net asset values of Fairfield's funds were inflated.  We

18      don't have that discovery.  So boldface inaccuracy on the

19      beginning of the brief.  Later, a concession that that's not

20      actually the case.

21              And so I would urge Your Honor both to be looking

22      at the specific exhibits here and their footnotes where they

23      tend to make a lot of the concessions that contradict,

24      flatly contradict some of the bald assertions that they make

25      in the text of their brief.
```

1          So they allege that Julius Baer first started

2     subscribing to Fairfield Sentry in 1998.  They don't allege

3     anything prior to that date about meetings, knowledge,

4     anything of that nature.  But that's when the subscriptions

5     start.

6          They then say Julius Baer supposedly sought a

7     meeting with Madoff in 1999.  And they refer to Exhibit 31.

8     There is an email suggesting that maybe a meeting was trying

9     to be scheduled.  But clearly that meeting, which as the

10    documents show didn't actually happen, did not influence or

11    have an impact on a decision to invest which supposedly

12    predated that.  So to the extent there was a meeting in the

13    U.S. after the investment started -- and this was a point

14    that was just being discussed in the last argument -- that

15    meeting has no jurisdictionally relevant relevance to

16    establishing contacts or the transactions that are at issue.

17         They then say, wait, there's more meetings.  So

18    they jump five years to 2003.  This is Exhibit 33 to their

19    opposition.  And they say, okay, there's going to be another

20    meeting.  However, when you look at the emails or the email

21    they have that suggests there's a meeting or that they're

22    trying to schedule a meeting at that time with Fairfield,

23    the meeting is -- or as outlined in the email and that

24    exhibit is all about other Fairfield funds.  And this is a

25    point that I think gets lost both in these actions and in

Page 92

1    all of the actions that you've been hearing about from the

2    liquidators, Your Honor, Fairfield Greenwich Group had the

3    Fairfield Sentry fund and Sigma and Lambda, which have

4    obviously been the focus here.  They also had a whole series

5    of other funds that have nothing to do with Madoff, a whole

6    other business that they were trying to develop and push and

7    meet with people to get people to invest in those other

8    funds.  Because if you step back -- and I don't think this

9    is controversial and it's fairly sort of well-known and sort

10   of public domain -- investments in Sentry was not the thing

11   that Fairfield had to go around and try to sell to people.

12   People knew about that fund, people wanted into that fund.

13   Lots of times they couldn't get into the fund because it was

14   closed off.  There was this allure that was created, right,

15   that was going to attract people.

16           So when you're having these meetings that they

17   point to -- and just show -- there's an email and somebody

18   from Julius Baer is on it and somebody from Fairfield

19   Greenwich Group is on it.  That doesn't mean it's a meeting

20   that has anything to do with Fairfield Sentry.  And this

21   email -- again, this is Exhibit 28 -- lists all these other

22   funds that Fairfield Greenwich Group is trying to push.  Let

23   us tell you about all of these other funds.  That's what

24   that meeting was going to be about.

25           The only other meetings that they point to were --

Page 93

1      of these other subsequent meetings were in Switzerland by

2      the way also.  So it's not only the topic is not relevant to

3      what's at issue in the complaint, but it's not really a U.S.

4      contact because there's not people meeting in the U.S.

5           So they point to one in October of 2003.  That

6      also appears to not have gone forward.  And then they point

7      to another one in 2007.  Those aren't U.S. contacts.

8      They're not linked to the transactions.  And Your Honor can

9      take a look at those.  Those are at Exhibits 22, 23, and 27.

10          So that's pretty much where it stops and ends as

11     to meetings.  And I would just add one other point that did

12     come up in the last argument and just to supplement what my

13     co-defendant said.  There is caselaw that we've cited and

14     other defendants have cited about this issue as to are the

15     meetings connected to the transactions.  And if they're not,

16     it's really not relevant for jurisdictional purposes.

17          So just by way of example, Phoenix Ancient Art,

18     S.A. v. J. Paul Getty, 2018 WL 1605985 *1317, Southern

19     District of New York, meetings in New York that do not

20     result in the execution of contract or are not essential to

21     or do not substantially advance the business relationship

22     rarely provide the basis for jurisdiction pursuant -- and

23     then it goes on.

24          Holding that -- same case holding that even

25     meetings which rise to the level of transacting business in

Page 94

1    New York nonetheless do not establish personal jurisdiction

2    where the plaintiff's claims do not arise out of those

3    contacts.  Because there is no substantial nexus between the

4    transaction of business and the cause of action alleged.

5           And then one more.  V Cars, LLC v. Israel Corp.,

6    902 F. Supp. 2d 349, 361-362 (S.D.N.Y. 2012), finding that

7    contacts are not sufficient where the only meetings that

8    occurred in New York were exploratory, nothing was promised,

9    no agreements were negotiated, and the parties merely

10   presented on their business.

11          So they have no evidence of the specific details

12   of, A, whether these meetings actually occurred, and what

13   the substance beyond the email I pointed you to that talks

14   about other funds, what the substance of this meeting was

15   intended to be or may have been if any of them in fact

16   occurred.  But it certainly doesn't meet that standard for

17   being a relevant jurisdictional contact.

18          So even Mr. Jonas, and I'm sure he'll speak to

19   this again, but said, well, okay -- when this came up

20   before, the meetings, maybe there's a point.  That doesn't

21   matter.  We've got other stuff.  Okay, let's go to the other

22   stuff.

23          The biggest I think thing that they hang their

24   hook on and to point to knowledge of these defendants and

25   say, look, they knew what they were doing and they

Page 95

1    deliberately took advantage of using U.S. funds, U.S.

2    investment, U.S. securities, et cetera.  And they understood

3    Madoff was involved and he's holding the funds and all of

4    that knowledge.  And they point to the private placement

5    memoranda and they say BJB, Bank Julius Baer, received these

6    just like these other folks.  And so they're stuck.  Right?

7    That alone probably does it in their mind.

8           Well, again, let's take a closer look at what they

9    point to.  And I point to three exhibits, Exhibit 11, 29,

10   and 30.

11          So Exhibit 11 is Fairfield Sentry Limited.  It's

12   their information memorandum.  The copy they have included

13   doesn't have a Bates stamp.  It is not a signed version of

14   anything.  There is no cover letter, no email, nothing to

15   suggest that this went to Julius Baer, that they had it or

16   even when they had it if they did.

17          So that one doesn't get us very far because it's

18   just an example of they had these memorandums out there.

19   But we've got to do more than that to connect it up to

20   Julius Baer.

21          So they go okay, well, let's go to Exhibits 29 and

22   30 and that will answer the question, right?  We've got a

23   cover email from Fairfield Greenwich Group to somebody at

24   Julius Baer.  It's got the Sentry offering memo attached,

25   it's got the Sigma offering memo attached.  And so 29 and 30

Page 96

1    are actually the same email and the same exhibit.  It's just

2    one has one attachment attached and the next one has the

3    second attachment attached.

4           And it says, "Dear Ms. Beer,"  Ms. Beer is the

5    Julius Baer representative, "Thank you for your message of

6    today.  We appreciate your interest in Fairfield Sentry

7    Limited and Fairfield Sigma.  As part of your request, we

8    are pleased to enclose the offering memoranda of both

9    investment funds for your review."  Okay, that sounds like

10   somewhere for their benefit.  Why am I highlighting this?

11          Well, let's look at the date.  It's July 10th,

12   2007.  That is the only evidence they submit as to when this

13   was received by Julius Baer.  So all of those transactions

14   that occur before it, to the extent that they are relying on

15   the information in these memoranda to say, well, Julius Baer

16   knew about this and specifically used that knowledge when

17   they conducted all of those transactions that came before

18   this, there is no nexus here.  There is no evidence.

19          And to my point earlier, they can't have it both

20   ways.  Either we are in jurisdictional discovery land and

21   we're going to rely on the specific evidence that they have

22   put forth, or we can go back to the pleadings, which contain

23   none of this and say nothing.  But they can't say, well,

24   we've got information memoranda.  That's 2007, but that's

25   kind of good enough, we can kind of just assume there was

Page 97

1   something earlier.  That doesn't work.

2          So next point.  What do they turn to next?

3   Because obviously this is a totality of circumstances kind

4   of exercise, Your Honor.  I think you even noted that in

5   your earlier opinions.

6          So -- well, let me just add one note to the

7   memoranda to just hammer home the point of what their

8   position is.  They say in their brief knowing that investing

9   in Sentry would require use of Sentry's U.S. correspondent

10  account as the ultimate destination of the subscription

11  payments.  BJB nonetheless chose to invest in Sentry.

12  That's Page 11 of their opposition brief.  And they rely on

13  those exhibits, the 2007 and the undated exhibit.

14         So if they knew anything based on this evidence,

15  it's not until July of 2007 when we're pretty close to the

16  end of the road here on where these transactions occurred

17  and before the fraud actually got revealed.

18         So the next piece of evidence that they turn to,

19  they say, okay, well, maybe those are sort of related, but

20  Julius Baer also received tear sheets for Sentry and Sigma.

21  They were getting information about these funds, about the

22  performance, Exhibits 13 and 14.

23         If you look at 13 and 14 again, they are dated

24  2007.  That's the evidence that they have.  That's May 2007.

25  So we've moved up maybe from July, but we're at May 2007.

Page 98

1          Then they point to what they say admittedly is an

2   undated FGG, Fairfield Greenwich Group investor

3   presentation.  But the email that's attached to that gives

4   us the answer.  Maybe that tells us what the date is.  This

5   is Exhibit 19.  I just want to read you something from that

6   exhibit.

7          So they say, well, they have these presentations

8   that talked about how Sentry worked and, you know, BLMIS's

9   role in it and so forth.  So that is a November -- Exhibit

10  19, that's a November 6th, 2008 email that that's attached

11  to.  So now we're going the other direction, even later.

12  We're literally a month before the fraud is revealed. That's

13  where they point to evidence that says, okay, that's when

14  Julius Baer had some information in hand that it knew how

15  this was working.

16          And that email further says -- it's something that

17  they didn't sort of point to in their papers.  But the email

18  says, amongst some of the other language in here -- this is

19  from someone at Julius Baer saying, "Fairfield Sentry I

20  don't know too well.  Since we don't have any of the single

21  manager funds on the platform so far."  That's as of

22  November 2008.  "Certainly it's very good performing with a

23  long track record in investing equities and options

24  strategies, but it's a bit untransparent to understand fully

25  how they work as I've heard from other sources."  And

Page 99

1    attached is this presentation.  That's November 2008.  It's

2    clear from that email that Julius Baer does not seem to have

3    much knowledge at all about Fairfield Sentry and it's very

4    late in the day as far as what we are concerned about for

5    establishing jurisdictional contacts.

6            So then they have pointed to today repeatedly and

7    I'm sure we'll hear about again, well, okay, there's a

8    subscription agreement, right?  So all of this much ado I

9    have just made, that's not that big a deal, right?  Because

10   we've got the subscription agreements.  Not so.  Not here.

11           The liquidators concede they did not find in

12   discovery a long-form subscription agreement executed by

13   Citco in connection with the BJB redemptions at issue here.

14   So again, they're going to tell you, well, you have to

15   assume it was there then if they didn't make investments in

16   Fairfield Sentry.  But I don't think we have to make that

17   assumption.  Maybe the long-form subscription agreement

18   never got signed and the transactions went through anyway.

19   That's why we need the evidence.  They've had more than a

20   chance, two years' worth, to get jurisdictional discovery

21   and evidence, which sort of detoured to do all that even

22   though there was no predicate for it.  And yet they come up

23   empty on that.  So all of the stuff that they point to in

24   the subscription agreement that says this incorporates the

25   memorandum, this says you know this and that information,

Page 100

1    and we can then charge you with all of that knowledge, they

2    don't have the evidence to prove that and to make that case

3    here.

4              So then they say, okay, we do have examples of the

5    short-form subscription agreements.  And so as you may

6    recall, Your Honor, there was a longer-form subscription

7    agreement that usually got signed at least once at the

8    beginning  and then there were these tagalong sort of one or

9    two-pagers that just said, well, we incorporate the long-

10   form that we already signed and sign us up for some more

11   shares, which is the shorthand way of doing it.

12             They point to one example, it's Exhibit 25.

13   There's nothing on the face of it that really ties it to

14   Julius Baer.  And even if it did, without the long-form

15   subscription agreement, I would submit that doesn't get them

16   very far.

17             Then they get to the point in their background

18   when we're talking about the redemption process, which is

19   really what this case is about.  And that's sort of the

20   focus.  But they point to the redemptions and they start

21   saying, well, Citco Bank designated its U.S. correspondent

22   account in certain of these transactions and Sentry used a

23   correspondent account in certain of these transactions.  But

24   what's an important distinction here, Your Honor, and to

25   kind of go back where I started where these cases are

1    somewhat different, materially different I think than some

2    of the other cases you've seen so far, is there's no

3    allegations here that Julius Baer was using its own

4    correspondent account, which was something that it did rely

5    on in some of the prior opinions for some of the other cases

6    and other contacts.  They were using their own correspondent

7    account.  It wasn't passive, I think as you noted in your

8    opinion and you also noted, the defendants in those other

9    contacts were in fact the registered shareholders of the

10   funds at issue.

11          Here, a completely different story.  And I sort of

12   said this at the beginning.  But the other big distinction

13   about this case is -- and why you've perhaps got sort of all

14   these multitude of defendants is all of the transactions at

15   issue in this case were pursuant to shareholder agreements

16   that Citco bank signed.  Citco bank was the registered

17   shareholder, and it did it on behalf of other defendants,

18   Bank Julius Baer was one, who in turn did it on behalf of

19   its clients.

20          But this is not the same case as those where you

21   have these individual defendants signing up directly with

22   Fairfield Sentry and becoming the registered shareholder and

23   then directing to their own correspondent account.  It's a

24   different set of facts, Your Honor.  I don't want to gloss

25   over that and treat it, well, it's all the same, it's no

Page 102

1    different.  It is different.

2          Ane one thing that came up earlier -- and Mr.

3    Jonas made the point, well, these are fronts.  It's all

4    fronts, right?  Citco (indiscernible) just a front for

5    Julius Baer and that's how we should look at this.  Well, I

6    sort of posed a different way of looking at that, Your Honor

7    and would pose sort of a rhetorical question to think about

8    it as you go through this.  But how many levels and steps

9    removed is attenuated enough?  When do we get to the point

10   where we say, well, you weren't the one who was actually

11   investing in Madoff.  That was Sentry.  And you weren't the

12   one who invested in Sentry.  That was Citco.  Okay.  Now we

13   get to the next level.  How many layers can we go back?

14   Maybe it's liquidators' view that you could be ten times

15   removed and it would be the same argument.  But there seems

16   to be no principal distinction at this point.  So every time

17   you remove a layer of direct nexus and activity, that should

18   under basic jurisdictional principles be relevant to the

19   totality of circumstances in deciding that this is not

20   enough.  It's not enough for these defendants under these

21   circumstances, which are different than what you've seen in

22   some of the other cases, to expect that they would have been

23   hailed into court on that basis.  And we talked already --

24   somebody else talked about and I won't repeat and belabor

25   that relationships, business relationships, totally

Page 103

1   legitimate, non-nefarious relationships -- this happens

2   every day all over the world -- can be arranged to try to

3   avoid certain jurisdictional contacts.  There's nothing

4   wrong with that.  It happens all the time.  And so to the

5   extent that this is what was happening in this context in

6   part, whether they want to attribute it to that, it's still

7   removed enough that it shouldn't make a case, especially

8   when we've seen all the other things that they've pointed to

9   are not also helping to support their case that there's

10  nothing here.  And that's why we go back to when we started

11  with the original pleading, there was nothing there.  Even

12  with the evidence.  And if you consider the evidence, it

13  doesn't add up to what they claim it does.

14          The only other thing I wanted to note, Your Honor,

15  is just on the jurisdictional discovery and when we're in

16  the land where we're going to credit it and say, okay, well,

17  we've gone down that road so we are going to -- whether it

18  was legitimate or proper at the time it was done, we've made

19  that choice.  And I submit to you that I don't think that's

20  an irrevocable choice and you should look back at the

21  pleadings.  But at this point the liquidators are charged

22  with coming forward with whatever evidence they have to make

23  their jurisdictional case, and it has to be factually

24  supported.  And you've seen the type of record they've put

25  together, both timewise, date-wise, substance-wise.  It does

Page 104

1    not make the case and support the narrative that they have

2    tried to lay out in their papers.  And for those reasons, we

3    submit there is no jurisdiction over Bank Julius Baer here.

4    And unless you have any questions, Your Honor, I will rest

5    on that and reserve time if necessary.

6          THE COURT:  Thank you, Counsel.

7          MR. JONAS:  Again, Your Honor, Jeff Jonas, Brown

8    Rudnik, for the liquidators.  I'm just going to go off my

9    remarks for a moment just to say the following, Your Honor.

10          I think that a lot of what was said is old ground

11    that has been plowed.  It's been plowed by the Second

12    Circuit, by Judge Schofield, it's been plowed by Judge

13    Morris, and it's been plowed by you.  The question isn't how

14    far back or how many -- it's a simple question.  Did this

15    particular sophisticated financial investor knowingly want

16    to take advantage of the U.S. securities markets and invest

17    in Madoff?  If they did that, they're subject to

18    jurisdiction.  Full stop.  End of story.  That's my view.  I

19    know you didn't go there in your opinion because you had

20    other facts to work with.  And you said, well, yeahy, they

21    did that.  And they used correspondent banks, and they might

22    have had meetings.  And I get it.  So you didn't have to, so

23    you didn't.

24          But I think the district court has gone there.

25    They looked at it very carefully and they were dealing with

Page 105

1    the question of whether the defendant there should be able

2    to have an appeal because the defendant said, hey, all Judge

3    Morris did -- I think the word was simply -- was found that

4    if you simply and knowingly invest in Madoff, is that

5    enough?  District court said yes.

6              So, again, I'm going to show more.  But I think a

7    lot of this is just going around in circles.  And I think

8    with the additional defendants, I bet we will continue to go

9    around in circles.  And I don't think we need to.  And I

10   think, as I said, just to summarize -- and I'll get to the

11   detail -- there's two bases.  He spent a lot of time on,

12   well, we had no direct contacts and the dates were this --

13   I'm going to blow all that away in about two seconds.  I'll

14   get there.  But that's even secondary.  Because in this

15   case, it has to be the case that when you use an agent, that

16   you impute the agent's conduct to the principal.  When they

17   say go invest for us, we know it's Madoff -- and I'll show

18   you how they know that.  But go invest for us effectively

19   through Fairfield in Madoff.  And then their agent signed

20   subscription agreements, looks at PPMs that -- it's clear.

21             So again, two bases.  One, imputation, which I

22   think is very strong.  And I don't even think we have to get

23   to direct contacts but let me do that now.

24             Again, Your Honor, it is another case where an

25   investor, Bank Julius Baer, or BJB, had its agent front its

Page 106

1    investments in Fairfield.  Again, that agent was Citco.  I

2    won't repeat my prior arguments regarding imputation of

3    Citco as agent, its conduct to its principal.  All of that

4    applies here.  Substantially all of BJB's arguments its

5    reply memorandum of August 2023 have been rejected by the

6    Court's memorandum opinions and orders earlier this year.

7    However, there are additional overwhelming facts here that

8    support personal jurisdiction.  Many of the facts here are

9    similar to those in Picard v. Bank Julius Baer, 2022 WL

10   17726520, a Judge Morris decision from December of '22 where

11   she rejected BJB's efforts to have the Madoff trustee's

12   action against it dismissed for lack of personal

13   jurisdiction.  I would urge you to look at that, Your Honor.

14   2022 WL 17726520.

15        I would like to highlight the following facts as

16   supported by the evidence we've submitted in the record.

17   Although for the most part BJB used its agent, Citco, to

18   invest in Fairfield, BJB itself received offering materials

19   including PPMs which, as we've seen before, highlighted

20   BLMIS's role including that substantially all of Fairfield's

21   assets would be invested with BLMISI and the split-strike

22   strategy.

23        And I would urge you to look at Exhibit 11, Your

24   Honor.  This is something that was produced to us.  I notice

25   there's no Bates because it was produced in native format.

Page 107

1    I'll represent to you it was produced by Julius Baer.  It's

2    a July 1st, 2000 Sentry information memorandum.  So I guess

3    they could say, well, we didn't get that until 2007, '08,

4    '09.  Today I can't prove otherwise.  They produced it to

5    us.  That's the date of it.  I think that's enough.  But

6    I'll do a lot better than that, but I just wanted to make

7    that point.  And there's other references as well to Exhibit

8    -- there are later PPMs, which I know the point was made.

9    Those are Exhibits 29 and 30.

10           Our point is that we believe they demonstrate that

11   BJB knew it was investing in New York-based BLMIS

12   independent of its agents' conduct, which is clear.

13           BJB's agent, Citco, entered into 14 separate

14   subscription agreements.  Those are at Exhibit 37.  However,

15   on at least one occasion in connection with a transfer of an

16   investment, BJB itself signed a subscription agreement

17   containing provisions for governance of New York law and

18   consent to New York courts.  That's Exhibit 6.

19           BJB sent 14 subscription payments to its agent

20   Citco's U.S. correspondent bank account at HSBC amounting a

21   total of almost $3 million.  That's Exhibit 38 and 39.  The

22   record demonstrates that for 24 (indiscernible) Sentry

23   redemption payments that were made to BJB's agent, Citco,

24   totaling almost $8 million, Citco instructed Sentry to wire

25   the redemption payments to Citco's U.S. correspondent

Page 108

1    account at HSBC.

2            Your Honor, I just want to mention it again.  I

3    don't want to go back over old ground.  But the point was

4    made strongly, well, that's not our correspondent's bank,

5    it's our agent's correspondent bank.  I would urge you to

6    look at Spetner, Your Honor.  It's crystal clear that a

7    principal can be found to have jurisdictional contact based

8    on its agent's use of a correspondent bank.  That's exactly

9    what happened here.

10           Your Honor, I want to hand up one -- and I

11   apologize, I don't have an extra copy.  But it's our Exhibit

12   33.  May I, Your Honor?

13           THE COURT:  Of course.  Please.

14           MR. JONAS:  Because I just want to put a stake in

15   this.

16           THE COURT:  Thank you.

17           MR. JONAS:  Thank you.  Exhibit 33, Your Honor.

18   If you look at Exhibit 33 -- and I've highlighted something

19   for you just to make it easy -- you'll see that this is an

20   email, March 19th, 2003 from -- and it's one of many

21   examples -- from FGG, which was Fairfield's manager, to

22   Johathan Morgan at Julius Baer.  And look at his email

23   address, Your Honor.  Jonathan.Morgan@JuliusBaer.com.

24   Confirming "the meeting with Mr. Bernard Madoff at Mr.

25   Madoff's office located at Bernard L. Madoff Investment

1   Securities, 885 Third Avenue, 18th Floor, New York, New

2   York."  I don't think -- I heard an argument, well, there

3   might have been meetings, but we were talking about other

4   funds.  FGG had lots of funds.  I don't think, Your Honor --

5   I can't prove it.  I don't think they met with Bernie Madoff

6   to talk about other FGG funds.  They probably met with

7   Bernie Madoff, I think it's a reasonable supposition to talk

8   about Madoff funds.  And that's what they did in 2003.  They

9   continue to invest until 2007.  I mean, how much more direct

10  contact with the jurisdiction to prove that they knew they

11  were investing in Madoff do I need to show?  They went to

12  New York, they went to Madoff.  They met with Bernie Madoff.

13  I assume they talked about the Madoff funds.  And then they

14  continued to invest.

15          I think it's a slam dunk, Your Honor, on that

16  point, for their direct contacts.  I don't think that

17  qualifies as fortuitous or random.

18          Your Honor, I also note, as we did in our papers,

19  Exhibit 18.  BJB had its own direct separate agreement with

20  Fairfield's managers, FGL and FGG, to get paid for placing

21  investments into Fairfield.  My point is they knew what was

22  going on, they were meeting with Madoff, they were in New

23  York, et cetera, et cetera.  Thus, BJB itself directly had

24  numerous, knowing, purposeful, and repeated contacts with

25  the United States, New York, in an effort to obtain the

1    benefits which the U.S. securities market and banking system

2    offer.  With those benefits come the burden of being subject

3    to U.S. jurisdiction.  It's contacts were nor random,

4    fortuitous, or attenuated.  They were anything but.  And

5    their motion should be denied.  Thank you.

6            THE COURT:  Thank you, Counsel.

7            MR. HALPER:  May I?

8            THE COURT:  Please.

9            MR. HALPER:  So just a couple of points, Your

10   Honor.  First of all, just to emphasize, and I didn't really

11   do any response to this.  The setup of these cases, the way

12   in which these investments were done through Citco Bank is

13   entirely and materially different from other cases that

14   you've heard and pointed to.

15           So even while we've reserved our rights, Your

16   Honor, we're not up here debating and rearguing old ground

17   on your holdings as to what the law is and/or even other

18   holdings in that regard.  It's a factual exercise.  And Mr.

19   Jonas -- and they did it in their original pleadings, they

20   did it in their brief with these exhibits, and they're doing

21   it again now.  They want to kind of say, look, I'm going to

22   show you there's enough here.  It's kind of the smoke,

23   there's got to be fire kind of argument.  That's not the

24   jurisdictional analysis.  They wanted the discovery.

25   They've now got to show factually supported averments that

1    support jurisdiction.  It's not (indiscernible) stood right

2    here two seconds ago saying, look, I can't tell you what

3    they talked about in that meeting.  I assume because they're

4    meeting with Madoff, who had an entire business, Fairfield,

5    who had an entire business that is not limited to Sentry,

6    that they must have been talking about Sentry and you just

7    have to take that on faith because either liquidators can't

8    give you any evidence of it.  That is not the way

9    jurisdictional analysis works.  That's not good enough to

10   support jurisdiction.  And that's what he's asking you to

11   do, Your Honor.

12          Let me briefly mention the other decision, which

13   is referenced for another defendant and it's referenced

14   here.  In another case, Julius Baer is a defendant in a case

15   brought by the Madoff trustee, by Picard.  And he says,

16   well, there was findings there, end of story.  Right?

17   Again, totally different.  That case was based on the

18   pleadings.  No jurisdictional discovery.  So the entire

19   analysis is apples and oranges to what we're trying to do

20   here.  All they had to do was -- and they did something that

21   the liquidators failed to do in five amended complaints.

22   They actually had specific allegations to support

23   jurisdiction.  We dispute them.  We don't think that they're

24   right.  But they had them in their pleadings.  And that was

25   decided on the pleadings.  So that decision has no relevance

Page 112

1   here and does not get them the quick here's the easy answer,

2   just look over there, nothing to see here.  Completely

3   different.

4        And the same with the district court decision that

5   he was referencing that was addressing another defendant's

6   decision that was similar that they had taken up.  Again, on

7   the pleadings.  So it's just addressing a wholly different

8   type of jurisdictional analysis.

9        Exhibit 11 he pointed to.  Again, he can see

10  there's no date.  These are not sort of little details that

11  we can just sort of swap aside and ignore when inconvenient.

12  They need to make the jurisdictional case.  And they've got

13  to show the facts, and they can't do it.

14       He points to Exhibit 33 with the meeting which we

15  just talked about.  But he says it's one of many examples.

16  It's not one of many examples.  We went through the few

17  examples that they point to.  There's not that many, and

18  none of them get them where they need to get.

19       So again, unless you have any questions, Your

20  Honor, we'll rest there.  And thank you for your time.

21            THE COURT:  Thank you, Counsel.

22            MR. JONAS:  Your Honor, I won't -- I'll just go to

23  something new that I missed, because I guess good lawyers

24  can see things different ways, Your Honor.  But I'm just

25  baffled by the position that we haven't demonstrated

Page 113

1    personal jurisdiction based on direct contacts and based on

2    imputation.  But we will leave that to you, Your Honor.

3              I just wanted to -- one point.  It's been said a

4    few times, this group pleading argument.  And I did cite a

5    case previously, but I just want to come back to it because

6    it just strikes me that here we are ten-plus years into this

7    case.  And I will say, Your Honor, our complaint at 114 we

8    allege that by virtue of brokerage and custody agreements

9    the Citco subscribers had acted as an agent for all of the

10   defendants.  That would include BJB.  At 44 we allege that

11   some or all of the redemption payments to the Citco

12   subscriber were paid to BJB, said that.  Section C of the

13   complaint we described in detail the relationship between

14   the Citco subscriber and all of the defendants.  So, first

15   of all, I think the complaint was good enough.  Second of

16   all, it can't be the case that we can go through

17   jurisdictional discovery.  Their position basically is we

18   can't even introduce jurisdictional discovery.  It makes no

19   sense to me.  We've done the discovery, we've produced the

20   record to you.  I think it's more than satisfactory, and I

21   think you have to be cognizant of the record and the

22   evidence.  And on all of these bases, Your Honor, we would

23   ask that Bank Julius Baer's motion to dismiss be denied.

24   Thank you.

25             THE COURT:  Thank you, Counsel.

Page 114

1              MR. HALPER:  Your Honor, one short additional

2     point.

3              THE COURT:  Just identify yourself for the record.

4              MR. HALPER:  Sorry, Your Honor.  Rick Halper again

5     for Bank Julius Baer.  Your Honor, on the agency and

6     imputation point, again, they want to take refuge in that as

7     well.  The exhibit that they really rely on that sets that

8     up is Exhibit 7.  It's brokerage and custody agreement

9     between Citco Bank and Bank Julius Baer, all foreign

10    parties, all under foreign law subject to foreign

11    jurisdiction.  And that is a general agreement that set up a

12    relationship that is not specific and makes no mention

13    whatsoever of Sentry, Fairfield, Madoff, et cetera.

14             So again, Mr. Jonas wants to come up here and say

15    imputation, and it's all out there.  Well, we need the

16    evidence that ties -- if that's going to be the argument,

17    that ties Citco to Bank Julius Baer, not Citco to other

18    defendants or generally to Madoff or to other things that

19    they've done or they've been able to show in other contacts.

20    He didn't point you to one exhibit that really establishes

21    any of that.  And it's the same thing.  They're seeing a

22    theme and a pattern with the way the evidence is being used.

23    I don't think it adds up to jurisdiction, and we'll submit

24    that to Your Honor.  Thank you.

25             THE COURT:  Thank you, Counsel.

Page 115

1          MR. HALPER:  Nothing further, Your Honor.  Thank

2     you.

3          THE COURT:  Thank you.  Okay.  Shall we move on to

4     Agenda Item 6?

5          MR. GILMORE:  Good morning, Your Honor.  Kyllan

6     Gilmore of Winston & Strawn LLP representing Altipro

7     Masterfund (indiscernible) Altigefi-Altipro Master a/k/a

8     Olympia Capital Management in Adversary Proceeding 10-03627.

9          First I just want to thank you for accommodating

10    my request to work remotely.  I really appreciate that.  I

11    won't take up too much time rehashing things.  But I do want

12    to briefly emphasize a couple of things about my client.

13         Altipro is a French fund that doesn't do any

14    business of any kind in the United States.  And it didn't

15    directly invest in BLMIS or Fairfield Sentry Limited.

16    Instead, Altipro engaged Paribas Security Services, BNP for

17    short, which is a foreign broker, and BNP purchased the

18    subscriptions in Sentry.  And like other of the defendants

19    we've heard from today, Altipro did not sign the Sentry

20    subscription agreements.  Those were signed by BNP, which is

21    where the trustees have said the certifications about

22    independent investigation by the signatory and receipt of

23    the Sentry investing materials where that certification was.

24         And so the connection between Altipro and the

25    forum is a lot more attenuated than, for example, the

Page 116

1    contacts the court found subjected HSBC to personal

2    jurisdiction in proceeding 10-03633.  And I think that order

3    kind of confirms that no personal jurisdiction exists over

4    Altipro because the two reasons that Your Honor found

5    jurisdiction over HSBC do not apply.  As you stated in the

6    January 4th, 2024 order summarizing on Page 25 after noting

7    that the sufficiency of context for personal jurisdiction is

8    assessed on the totality of the circumstances.  The order

9    states that the Court "finds the defendant's selection and

10   use of U.S. correspondent accounts and communications with

11   Fairfield Greenwich Group support the Court's exercise of

12   jurisdiction."  So it was this combination or totality that

13   the Court found sufficient, but neither of those factors

14   apply.

15           First, unlike HSBC, Altipro has never had or used

16   any U.S. correspondent account and didn't direct anyone else

17   to do so.  Plaintiffs do allege that BNP and Sentry used

18   U.S. correspondent accounts in redeeming Altipro's

19   subscriptions, but Altipro did not direct BNP to do that or

20   have any control over BNP's use of U.S. correspondent

21   accounts.  And as the Court put it on Page 19 of that order,

22   it's "a defendant's selection and repeated use of a New York

23   correspondent account (indiscernible) the specific selection

24   was at the defendant's direction (indiscernible) can show

25   the kind of purposeful and continuous contact

Page 117

1    (indiscernible) to support jurisdiction.

2              And so the use of correspondence accounts, which

3    was pretty central to that ruling, really doesn't support

4    any jurisdiction over Altipro here.

5              And the second thing that the Court relied on in

6    the communications with Sentry, we've heard from other

7    defendants' discussions of those and their relevance.  And

8    what's most important to note about Altipro is that there's

9    no allegations that those meetings took place in New York.

10   There's allegations that there were meetings with "New York

11   personnel", but not in-person meetings in New York.

12             So just to recap, I think (indiscernible) those

13   two contacts with the forum which are so central to the

14   finding by the Court of personal jurisdiction in that case

15   don't really apply to Altipro.  There's not other contacts

16   alleged that would contribute to that totality analysis,

17   there really isn't a prima facie case for jurisdiction over

18   Altipro, which the Plaintiffs really understand, which is

19   why they go to such great pains in their complaint and their

20   opposition to the motion to dismiss to argue that BNP is an

21   agent for Altipro.  But I think somewhat ironically, the

22   line of agency cases that plaintiffs cite really confirm

23   that there's no personal jurisdiction here because there's

24   cases, as we explain in our reply, they describe

25   circumstances where one party's conduct in the forum can be

Page 118

1    attributed to a foreign third party for the purposes of

2    establishing jurisdiction.  The sort of punchline for those

3    cases, consistent with agent principles generally, is that

4    conduct in the forum by one party cannot be attributed to a

5    foreign third party without establishing an agency-type

6    relationship between them, which makes sense given the

7    Supreme Court's (indiscernible) in Fiore and McIntyre where

8    the court held that it's the defendant's conduct in the

9    forum that has to support jurisdiction.  It's a basic school

10   of agency law that you need an agency relationship before

11   there can be this imputation.

12          And so I think plaintiffs allege that BNP acted as

13   (indiscernible) agent in purchasing and redeeming shares,

14   but as other defendants have noted, that relationship, those

15   exchanges were all foreign.  So the agency relationship that

16   is relevant here is that, you know, those foreign

17   transactions, but Altipro had no control over the

18   transactions in the forum or BNP's conduct in or connections

19   with New York.  That's what's required to impute those

20   connections.

21          So to give you just a couple of cases that we

22   cite, In re Sumitomo Copper Litigation, 120 F. Supp. 2d 328

23   (S.D.N.Y. 2000), "Plaintiff's allegations must persuade a

24   court that the defendant was a primary actor in the specific

25   matter in question.  Plaintiffs must show that defendants

Page 119

1   exercised some control over the corporation in that

2   transaction."

3            And then in another case, Retail Software

4   Services, Inc. v. Lashlee, 854 F.2d 18 (2d Cir. 1988),

5   personal jurisdiction based on agency where corporate

6   officers "exercise extensive control over corporation in the

7   transaction underlying suit".

8            And then in the cases that plaintiffs cite in

9   their briefing, consistent with that idea, those cases all

10  found personal jurisdiction but based on transactions that

11  occurred in the forum itself.  And so just to quickly kind

12  of give you a few examples, Hartford and (indiscernible)

13  case they cite, the agents were directed to procure New York

14  insurance policies (indiscernible).  There were extensive

15  in-person meetings in New York in (indiscernible) by the

16  agent negotiating on behalf of the foreign principal.  In

17  the Schecter case, the agent was directed to sign documents

18  related to transactions that occurred in New York.  And the

19  last case, the Bernie Madoff case they cite actually is that

20  they do have personal jurisdiction, but rather whether

21  certain actions taken were within the scope of an undisputed

22  agency relationship.

23           And unlike the situation here, just to kind of

24  reiterate, these cases all involved extensive control by a

25  foreign principal over (indiscernible) actions in New York.

Page 120

1          And just to cite one more case.  Charles Schwab

2     Corp. v. Bank of Am. Corp., 883 F.3d 68 (2d Cir. 2018), the

3     Second Circuit found there was no agency alleged for the

4     principles "controlled or directed" broker dealers who sold

5     securities on their behalf without factual allegations that

6     the principals "availed themselves of California by

7     directing their agents to transact there," emphasis added.

8          So I think in this case it's important to note

9     that BNP was not directed to do anything in the forum and

10    BNP's actions within the forum, the use of its correspondent

11    accounts, was not activity that was within that scope of

12    that limited agency relationship.  Instead, it's really

13    Sentry that is alleged to have acted in the forum.  And that

14    conduct can't be attributed to Altipro because Sentry isn't

15    even alleged to be an agent.  And there is no allegations of

16    control that support any allegation of agency there.

17         So I think again it's important to note that all

18    of these agency's cases really stand for the sensible

19    proposition that a plaintiff that's alleging personal

20    jurisdiction over a foreign party based on conduct by

21    another party in the forum has to establish a relevant

22    agency relationship.  And it's really the fact that that

23    whole line of cases exists.  They would essentially be

24    meaningless if the Court wasn't required to find an agency

25    relationship before third party conduct could be -- in the

Page 121

1  forum could form, you know, a basis of personal jurisdiction

2  over a foreign defendant like Altipro.

3         So I think just to quickly summarize this point,

4  the two reasons that the Court found jurisdiction over HSBC

5  did not support personal jurisdiction over Altipro, which

6  didn't use any U.S. correspondent accounts or engage in any

7  conduct in the forum, and Altipro does not do business in

8  the United States, only indirectly purchased subscriptions

9  in Sentry and didn't even sign the subscriptions.  And

10 there's no other relevant contacts that would justify

11 jurisdiction.  And BNP and Sentry's conduct in the forum

12 can't serve as a basis for jurisdiction for the reasons that

13 we just discussed.

14        So Plaintiffs really haven't alleged a prima facie

15 case for personal jurisdiction over Altipro, and there's no

16 way they can remedy this with any additional discovery or

17 amendments to the complaint.

18        And to quickly conclude, I think that the Court's

19 finding in the HSBC case that jurisdiction wouldn't be

20 unreasonable against that defendant also doesn't really

21 apply to Altipro.  I think that here Altipro doesn't have

22 any U.S. affiliates or other business connections and the

23 burden is really pretty substantial to defend against a case

24 in the United States.  And the forum I think has very little

25 interest in forcing it to do so here because there really is

Page 122

```
 1    just no evidence connecting Altipro to any of the

 2    wrongdoing.  And the interest is really stronger with

 3    respect to defendants that do business in the United States.

 4             So that kind of wraps up the couple points I

 5    wanted to make.  I'll just conclude by reiterating our

 6    request that the Court grant Altipro (indiscernible)

 7    dismiss.  Thank you very much.

 8             THE COURT:  Thank you, Counsel.

 9             MR. JONAS:  Your Honor, Jeff Jonas, Brown Rudnik,

10    for the liquidators in opposition to that motion to dismiss.

11             Your Honor, Altipro was a recipient of about $15

12    million in redemptions.  That's what this case is about.  As

13    stated, Altipro used BNP Paribas Security Services S.A.,

14    I'll refer to them as BNP, as its agent for investments in

15    Fairfield Sentry.  I won't repeat my prior arguments

16    regarding imputation of an agent's conduct to a principal

17    which apply here, except I want to come back to it in a

18    minute very briefly.

19             Substantially all of Altipro's argument that's in

20    its reply memorandum dated October 10th, 2023 have been

21    rejected by the court's memorandum opinions and orders

22    earlier this year.

23             Your Honor, we have put forth evidence at Exhibits

24    10 and 11 that we believe confirms that Altipro

25    independently and directly conducted diligence on Sentry,
```

Page 123

1   including receiving materials relating to the investments

2   and knowing they would be placed with BLMIS.  That includes

3   some of the offering materials.  Altipro was agent.  BNP

4   used U.S. correspondent banks to make subscription payments

5   and receive redemptions.  Altipro's agent, BNP, signed

6   subscription agreements with all of the -- which believe

7   evidences the Madoff Investment, New York law courts, et

8   cetera.

9           So with that, Your Honor, I just want to turn

10  briefly to some of the arguments that were made because I

11  really view them as continuing to dance on the head of a

12  pin.

13          This defendant, like many of the defendants, they

14  went out and they hire -- and there's no other word that

15  describes it -- they hired an agent to make this investment

16  for them.  The agent as part of the requirements to make

17  that investment, yes, signed subscription agreements, used -

18  - they were theirs, but they had to use -- well, they didn't

19  have to actually, but they did, they used their U.S.

20  correspondent bank accounts, et cetera, et cetera, et

21  cetera.

22          And what these defendants continually tried to do

23  is say, well, yeah, they were our agent for the investment,

24  but it only -- that only goes so far.  That -- it just -- it

25  really -- to me it's dancing on the head of a pin.  How can

Page 124

1   you separate when you hire someone to make an investment for

2   you if in connection with that investment they have to

3   undertake the -- they're doing that on your behalf.  And

4   again, I come back to Spetner, Your Honor 70 F.4th 632,

5   2023.  Second Circuit Court of Appeals found that, a foreign

6   bank's choice -- that's the principal -- to project itself

7   into New York can be efficient through the selection of

8   repeated use of an agent's correspondent account in the

9   forum.  Well, its agent was using a correspondent bank

10  account.  And that's effectively -- it's got to be imputed

11  back to the principal.

12         Okay.  Your Honor, last, I think we've -- I agree

13  it's more limited than some of the other cases, but we have

14  introduced into the record Altipro conducting independent

15  and direct diligence relating to Fairfield, including

16  visiting Fairfield's manager, FGG in New York.  Those are

17  Exhibits 7 through 9 and 12 through 14.

18         And as is the case with the other defendants

19  discussed today, Altipro itself had numerous, knowing,

20  purposeful, repeated contacts with the United States, either

21  itself or through its agent, in an effort to obtain the

22  benefits of the U.S. securities market, its contacts were

23  not random, fortuitous, or attenuated.  And we would ask

24  that the motion to dismiss be denied.  Thank you, y h.

25         THE COURT:  Thank you, Counsel.

Page 125

1    Counsel did you wish to reply?

2    MR. GILMORE:  Yes, Your Honor, briefly.  This is

3 Kyllan Gilmore with Winston Strawn on behalf of Altipro.

4    First, I just want to sort of reiterate the

5 caselaw that the trustees (indiscernible) addressed the

6 relevant agent conduct for the purposes of attributing

7 conduct with the forum to a foreign defendant has to be

8 conduct in the forum, which again, is consistent with the

9 Supreme Courts caselaw which focuses on the defendant's

10 conduct and contacts with the forum.  And so it stands to

11 reason that it would be the Defendant's agent's contact and

12 conduct in the forum that would have to serve as the basis

13 for the foreign defendant's personal jurisdiction if it

14 wasn't the foreign defendant's conduct in the forum.

15    And here, the trustee acts like there's an effort

16 to use these foreign brokers as a front of some kind, but

17 the agency relationship really does only go so far.  It's

18 basic principle of agency law that agency relationship is

19 defined with respect to a specific relationship or set of

20 transactions.  And here, according to their own legal

21 standards, the alleged agent has to act in the forum for the

22 benefit of the principal with knowledge and consent of the

23 principal and under some control by the non-resident

24 principal.  Here, they haven't alleged that there was any

25 control or even knowledge on behalf of Altipro's part with

Page 126

 1    respect to what BNP or Sentry was specifically doing in the

 2    forum, for example, the use of these correspondence

 3    accounts.  And the plaintiffs allege that there was

 4    information in Altipro's possession that could have led it

 5    to form the conclusion that U.S. correspondence accounts

 6    were going to be used.  But again, this Court's ruling over

 7    HSBC makes it clear that it is the direction by principals

 8    to use U.S. correspondence accounts.  And even that has to

 9    be repeated in continuous contact.  That is what makes those

10    U.S. correspondent accounts relevant for purposes of

11    establishing personal jurisdiction over a foreign defendant.

12    So with that I will just conclude by saying I think there's

13    been a lot of discussion here over the scope of this agency

14    relationship and a lot of that sort of ignores the fact that

15    the cases are clear it's really transactions in the forum by

16    the agent that are relevant.  Thank you.

17            THE COURT:  Thank you, Counsel.  Okay.  Shall we

18    proceed to the next agenda item?

19            MR. JONAS:  Last but not least, Your Honor.

20            MR. SHAIMAN:  May I proceed, Your Honor?

21            THE COURT:  please.

22            MR. SHAIMAN:  Good afternoon, Your Honor.  David

23    Shaiman of Allegaert Berger & Vogel.  And with me is my

24    colleague, Lauren Pincus.

25            THE COURT:  Good afternoon.

Page 127

1            MR. SHAIMAN:  We are here on behalf of Rothschild

2    & Co. Asset Management, formerly known as Rothschild & Cie

3    Gestion as manager of the Elan Gestion Alternative Fund,

4    which was sued as Rothschild & Cir Bank-Ega.  I will refer

5    to them as Rothschild for simplicity.  I will be very brief,

6    Your Honor.

7            You've heard arguments from my colleagues today

8    and back in October that apply equally to Rothschild, and I

9    won't repeat them here.  I'll just say that we join in all

10   of those arguments and they are set out at length in our

11   briefs.

12           What I do want to focus the Court on, however, is

13   the extent to which Rothchild's contacts with the U.S. are

14   lacking here.

15           First and foremost, Rothschild did not redeem from

16   Fairfield Sentry.  Rothschild had a single redemption from

17   Fairfield Sigma which was denominated in Euros.  This means

18   that Rothschild did not employ a U.S. correspondent account

19   in connection with its single redemption and the liquidators

20   do not allege that the redemption was paid in or through a

21   U.S. bank account, because it was not.

22           The only connections the liquidators point to then

23   are in the form of communications and meetings with

24   Fairfield personnel.  But here those meetings and

25   communications were almost exclusively withy Fairfield

Page 128

1    personnel outside of the U.S.  In particular, the

2    liquidators point to two meetings which both took place in

3    Paris and which were both with Fairfield personnel resident

4    in the U.K.  They also point to an internal Fairfield email

5    about a possible meeting in the U.S., but there is no

6    evidence that meeting took place and it's not clear from the

7    internal Fairfield email if that proposed meeting was meant

8    to be about Sentry or another non-Madoff fund marketed by

9    Fairfield.

10        The liquidators also attached the Flugman

11    declaration, 21 emails between Fairfield and Rothchild

12    personnel which they claim demonstrate diligence Rothschild

13    conducted on the Fairfield funds.  But of those 21 emails,

14    17 are with Fairfield personnel in the U.K., Spain, or

15    Bermuda.  The other four emails which at least appear to be

16    with Fairfield personnel in the U.S., are ministerial in

17    nature.  One asked to be added to a mailing list, another

18    provides a prospectus expressly on behalf of a Fairfield

19    employee in Spain.  And the final two emails simply transmit

20    weekly nav reports.

21        Simply put, Rothschild, which redeemed only from

22    Sigma, did not use a U.S. based correspondent bank account

23    and communicated almost exclusively with Fairfield personnel

24    located outside of the U.S. is not reasonably subject to

25    jurisdiction in the U.S.

1          Unless Your Honor has any questions, we'll rest on

2     our papers for our remaining arguments and submit to Your

3     Honor that the motion should be granted.

4          THE COURT:  Thank you, Counsel.

5          MR. SHAIMAN:  Thank you.

6          MR. JONAS:  Jeff Jonas, Brown Rudnick, for the

7     liquidators.  I hope you remember, Your Honor, at the

8     beginning of this argument when I -- and since then I kept

9     making the point that per the district court all you need to

10    do is show knowing -- show that an investment purposely and

11    knowingly was -- knew they were investing in Madoff, taking

12    advantage of U.S. securities (indiscernible).  This was the

13    case I was really making -- I wanted to make the point too,

14    but this was the one I was talking about.  We are not

15    alleging use of correspondent banks, Your Honor.  We're not

16    alleging direct meetings in New York.  I don't take issue

17    with any of those statements.  But yet I still think the

18    motion to dismiss should be denied.  So let me tell you why.

19         Rothschild used BNP Paribas as its agent for

20    investments in Fairfield.  And I won't repeat my prior

21    arguments regarding imputation of an agent's conduct to the

22    principal.  They all apply here, Your Honor, and I think

23    carry the day.

24         However, we believe we've also met our burden with

25    respect to personal jurisdiction over Rothschild based on

Page 130

1   the following.

2          We've submitted evidence into the record

3   confirming certain direct interactions by Rothchild with

4   Fairfield's U.S.-based manager, FGG, including Rothschild

5   seeking and obtaining diligence materials.  Those are

6   Exhibits 14 through 16 and 21 and PPMs which as we've seen

7   made it clear to Rothschild they were investing in New York-

8   based BLMIS and the U.S. securities markets.  That's Exhibit

9   34 and Exhibit 35, Exhibit 37.

10         The evidence also establishes that either

11  Rothschild or its agent, it's a little bit unclear on this

12  one, Your Honor, entered into a subscription agreement

13  providing for governance under New York law and consent to

14  the jurisdiction of the New York courts.  Even accepting it

15  was its agent, Your Honor, for all the reasons I stated, I

16  think that's enough.  That's Exhibits 35 and 37.  And based

17  on the evidence, Your Honor, again, none of this was random,

18  fortuitous, or attenuated.  Rothschild knew it was investing

19  in Madoff.  They wanted to take advantage of the U.S.

20  securities market, it did.  And on that basis even alone,

21  Your Honor, the motion to dismiss should be denied.  Thank

22  you.

23         THE COURT:  Thank you, Counsel.

24         MR. SHAIMAN:  David Shaiman of Allegaert Berger &

25  Vogel on behalf of Rothschild.  Just two quick points, Your

Page 131

1      Honor.  All of the emails and exhibits that Mr. Jonas cited

2      to exactly make our point.  Those were diligence materials

3      which were asked for from FGG employees located outside of

4      the U.S.  They were not FGG U.S. employees.

5                 And on the BNP point, as I said, we're not going

6      to retread the arguments that have been made today.  We join

7      in the arguments that our colleagues have made on that

8      point.  Thank you.

9                 THE COURT:  Thank you, Counsel.

10                MR. JONAS:  Nothing further, Your Honor.  Thank

11     you.

12                THE COURT:  Thank you, Counsel.  I will take all

13     of the motions under advisement that we've heard today.

14     Anything else for today?

15                MR. JONAS:  Not from us, Your Honor.  Thank you

16     very much for your patience with us today.

17                THE COURT:  Okay, we are adjourned.  Thank you for

18     the excellent presentations, everyone.  Have a great day.

19                (Whereupon these proceedings were concluded at

20         12:52 PM)

21

22

23

24

25

Page 132

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 6, 2024

[& - 2008]                                                                    Page 1

| & |
| --- |
| **&**   10:17,25 11:5,10,11,11 11:13,25 53:22 54:20 115:6 126:23 127:2,2 127:4 130:24 |

| 0 |
| --- |
| **00810062**   42:3 |
| **02111**   8:6 |
| **02125117**   32:2 |
| **03630**   11:2 54:22 |

| 1 |
| --- |
| **1**   8:5 36:3 37:14 55:18 57:16 65:23 |
| **1,000**   73:6 |
| **1.7**   39:10 40:4 52:4,13 54:4 |
| **10**   11:1 43:20 44:1 54:21 56:18 77:6 122:24 |
| **10-03496**   1:10 6:15 |
| **10-03627**   2:1 5:6 6:18,21 11:14 115:8 |
| **10-03630**   2:9 5:1 |
| **10-03633**   116:2 |
| **10-03635**   2:17 5:23 11:7,20 |
| **10-03636**   3:2 6:6 11:7,20 |

**10-03800**   1:18 6:23
**10-13164**   1:3
**10-3635**   86:2
**10-3636**   86:2
**100**   31:18 37:20
**10004**   3:20
**10019**   8:16
**104**   22:18
**108**   75:5 79:23
**10th**   96:11 122:20
**11**   77:7 95:9,11 97:12 106:23 112:9 122:24
**114**   113:7
**11501**   132:23
**116**   44:1 48:9
**117**   44:2 48:9
**11:06**   69:9
**11th**   36:19
**12**   5:4 6:4,13 7:16 55:17 56:23 58:9 60:4 64:14 124:17
**120**   118:22
**12151**   132:10
**1285**   8:15
**129**   59:19
**12:52**   131:20
**13**   22:20 57:15 60:19 97:22,23
**130**   59:13
**1317**   93:18

**132**   59:21
**136**   59:13
**14**   44:2 90:15 97:22,23 107:13,19 124:17 130:6
**1438163**   19:15
**15**   22:20 37:21 58:9 60:4 122:11
**150**   22:25
**16**   130:6
**1605985**   93:18
**167**   59:5
**17**   21:13 37:21 41:14,24 42:2 48:9 49:24 63:19 128:14
**171**   5:15,18 61:20
**174**   5:12
**17726520**   106:10,14
**18**   109:19 119:4
**18-1**   37:21
**18-2**   37:21
**18th**   109:1
**19**   15:18,22 36:3 98:5,10 116:21
**19-01122**   3:10 7:8
**1988**   119:4
**1998**   91:2
**1999**   91:7

**19th**   108:20
**1st**   107:2

| 2 |
| --- |
| **2**   5:4 6:4,13 7:16 56:17 75:8 83:7 |
| **2,000**   73:7 |
| **20**   15:24 36:3 41:20 42:11,16 43:5 44:21 45:11 |
| **2000**   20:3 37:1 37:9 47:25 107:2 118:23 |
| **2001**   36:19 37:1 44:3 |
| **2002**   37:1 44:8 48:11 |
| **2003**   42:13 78:1 80:25 85:8 91:18 93:5 108:20 109:8 |
| **2004**   24:3 44:17 49:15,25 63:25 |
| **2006**   20:3 49:4 49:12 72:13 |
| **2007**   55:9 72:13 93:7 96:12,24 97:13 97:15,24,24,25 107:3 109:9 |
| **2008**   42:13 72:12 78:3,4,8 84:20,21,22 98:10,22 99:1 |

**[2012 - 77]**

**2012**   18:19
94:6
**2013**   22:19
**2017**   23:1 63:3
**2018**   93:18
120:2
**2019**   19:15,15
22:14
**2020**   33:17,18
33:19 53:23
**2021**   56:8
57:12
**2022**   106:9,14
**2023**   23:9 27:2
27:2 33:4 34:9
70:22 106:5
122:20 124:5
**2024**   3:22 5:9
5:21 6:1,9 7:11
116:6 132:25
**203**   56:9
**21**   36:3 42:10
42:16 43:5
128:11,13
130:6
**22**   36:4 41:19
43:1 65:17
93:9
**23**   36:4 41:20
43:11,19,20
44:1,1 48:5
65:17 93:9
**24**   42:24 43:5
43:19 65:24
77:9 107:22
**241**   53:23

**24th**   78:2
**25**   57:22
100:12 116:6
**26**   57:22
**2667531**   23:10
33:3
**26th**   78:8
**27**   74:17 93:9
**28**   33:4 36:22
92:21
**281**   55:22
**29**   43:25 48:5
95:9,21,25
107:9
**29th**   55:24
63:25
**2d**   34:9 94:6
118:22 119:4
120:2

**3**

**3**   3:22 5:8,20
5:25 6:8 7:10
32:17 79:9
107:21
**3,000**   73:7
**30**   95:10,22,25
107:9
**300**   132:22
**302**   34:20
**31**   91:7
**32**   44:7
**324**   44:2
**327**   55:8
**328**   118:22
**33**   44:12 91:18
108:12,17,18
112:14

**330**   132:21
**337**   58:10
**338**   55:19
**34**   130:9
**349**   55:24
57:23 94:6
**35**   130:9,16
**361-362**   94:6
**3636**   71:24
87:4
**37**   44:21,25
107:14 130:9
130:16
**38**   44:21
107:21
**39**   16:23 21:19
37:10 107:21
**395225**   27:2
**3971**   6:18,21
**3d**   53:22

**4**

**4**   31:19,24 36:3
37:15 78:25
79:24 84:22
**40**   37:15
**404**   22:14
**41**   37:15
**427381**   33:17
**43**   77:17
**44**   113:10
**45**   37:15,24
**46**   77:13
**477**   53:22
**48**   63:3
**49**   37:16,24
63:3 77:13

**492**   23:1
**4th**   116:6

**5**

**5**   36:18 44:2
48:9 56:17
85:20
**53**   32:21
**54**   38:12 59:18
77:17
**58**   38:12

**6**

**6**   33:17 55:6
56:17 107:18
115:4 132:25
**602**   22:19
**61**   63:3
**613**   22:14
**62**   63:3
**632**   34:9 124:4
**65**   17:5
**66**   17:5
**68**   15:11 120:2
**69**   77:8
**6th**   12:8 98:10

**7**

**7**   33:3 55:17
56:23 78:1
85:7 114:8
124:17
**70**   31:10 34:9
37:24 124:4
**71**   37:19
**732**   61:19
**7321056**   33:19
**77**   37:23

| 8 |
|---|
| **8**   78:3 107:24 |
| **80**   87:5 |
| **84**   45:12 |
| **854**   119:4 |
| **883**   15:10 |
| 120:2 |
| **885**   109:1 |

| 9 |
|---|
| **9**   44:2 65:25 |
| 78:4 124:17 |
| **902**   94:6 |
| **99:10**   36:18 |
| **9:35**   3:23 |

| a |
|---|
| **a.d.3d**   22:19,25 |
| **a.g.**   69:21 |
| **a.m.**   3:23 |
| **abbie**   9:13 |
| **able**   26:3,7 |
| 52:14 54:4 |
| 71:7 80:22 |
| 105:1 114:19 |
| **abroad**   27:22 |
| 50:19,20,21 |
| 73:14 |
| **absence**   70:14 |
| 82:19 |
| **absent**   21:12 |
| **absolutely**   21:2 |
| 47:9 67:18 |
| **absurd**   50:14 |
| 50:17 |
| **accept**   67:15 |
| 67:16,18 |

**accepting**
130:14
**accepts**   78:13
**accommodat...**
115:9
**account**   19:18
34:14,18 38:11
56:7 57:7
58:15 60:13,15
60:16,17 61:12
66:2 72:25
73:13,21 76:14
77:8,12 88:2
97:10 100:22
100:23 101:4,7
101:23 107:20
108:1 116:16
116:23 124:8
124:10 127:18
127:21 128:22
**accounts**   28:16
29:15 37:13,18
37:23 38:16
64:1 72:23
73:12,12,14,18
73:19 78:14
81:19,23 82:1
88:21 116:10
116:18,21
117:2 120:11
121:6 123:20
126:3,5,8,10
**accuracy**   88:16
**accurate**   132:4
**achieved**   37:9
**acknowledged**
64:12 67:23

75:16
**acknowledges**
63:12
**act**   21:11 33:6
50:22 65:6
125:21
**acted**   22:8 23:6
32:14 34:25
40:21 42:23
46:9 55:8
64:16 75:12
113:9 118:12
120:13
**acting**   23:23
45:9 46:5 48:6
48:25 58:1,6
59:20 64:23
67:4 82:7
**action**   48:18
75:24 87:5
94:4 106:12
**actions**   26:13
34:22 65:1,1
66:17 86:1,3
86:23,24,25
87:4,15 91:25
92:1 119:21,25
120:10
**activities**   32:12
51:16,17 60:5
64:20 74:25
76:6,11 77:19
**activity**   102:17
120:11
**actor**   118:24
**acts**   24:2 34:17
34:24 39:14

67:5,6 125:15
**actual**   18:11
30:21 52:11
59:5 62:5
**actually**   12:5
16:9 18:1,4
19:7 20:7 23:8
23:11,17 38:22
45:3 48:5,21
49:23 51:18
71:3 87:18
88:18 90:9,12
90:16,20 91:10
94:12 96:1
97:17 102:10
111:22 119:19
123:19
**add**   73:4 89:20
93:11 97:6
103:13
**added**   120:7
128:17
**addition**   58:20
**additional**   30:7
30:24 64:2
65:13,15 68:7
105:8 106:7
114:1 121:16
**address**   31:9
44:6 47:24
70:4 78:18
87:13,19 88:9
108:23
**addressed**
74:14 86:13
125:5

**addresses**
56:14
**addressing**
13:5 28:3
112:5,7
**adds** 114:23
**adjourned**
131:17
**adjournment**
6:25,25 7:3,3
**administration**
20:25 21:4
38:11 45:15
48:7
**administrator**
31:4
**admit** 67:18
**admittedly**
98:1
**ado** 99:8
**adopt** 86:15
**adrian** 9:12
**adv** 1:10,18 2:1
2:9,17 3:2,10
5:23 6:6,15,23
7:8
**advance** 93:21
**advanced**
23:12
**advantage**
26:1,11 28:8
38:15 65:10
95:1 104:16
129:12 130:19
**adversary** 5:6
11:1,14,19
13:24 32:22

54:21 86:1,5
115:8
**adversary's**
29:3
**advice** 55:13
58:3
**advisement**
131:13
**advisory** 57:3
**affairs** 71:8
**affiliates** 57:18
121:22
**afternoon**
126:22,25
**ag** 11:6 75:5
78:23 79:3,12
79:21
**agencies** 82:11
**agency** 18:24
22:2 23:13
33:5,15 34:19
34:22 39:11
51:12 52:7,12
53:15 58:8,14
58:17 60:3
62:3 64:11,25
65:14 66:15,23
67:2,3,7,10,20
70:6,7,25
76:23 82:6,8
82:19 114:5
117:22 118:5
118:10,10,15
119:5,22 120:3
120:12,16,22
120:24 125:17
125:18,18

126:13
**agency's**
120:18
**agenda** 5:8,20
5:25 6:8 7:10
54:13 85:11,14
115:4 126:18
**agent** 19:4 23:6
23:21,22 30:19
30:22 31:12
32:10 33:6,25
34:17,23,24,25
35:9,11 38:13
40:21 60:7
63:15 64:17
65:6,7,7,8
66:19 67:4,4,5
68:3 70:9,10
70:11,12 74:15
75:12,20 77:5
77:14 78:13
79:3,7,9,12
82:16,17
105:15,19,25
106:1,3,17
107:13,19,23
113:9 117:21
118:3,13
119:16,17
120:15 122:14
123:3,5,15,16
123:23 124:9
124:21 125:6
125:21 126:16
129:19 130:11
130:15

**agents** 22:4
39:12,24 46:17
119:13 120:7
**agents'** 39:14
107:12
**agent's** 34:3,14
66:1 67:6
105:16 108:5,8
122:16 124:8
125:11 129:21
**ago** 12:23
16:19 17:15
22:24 40:1
47:22 111:2
**agree** 46:4
58:19 83:18
86:5 124:12
**agreed** 28:16
**agreement**
38:3 55:4,5
57:25 67:22
79:11,13 83:13
99:8,12,17,24
100:7,15
107:16 109:19
114:8,11
130:12
**agreements**
16:2 32:6
35:21 47:8,12
47:14 68:23
77:15 79:8
94:9 99:10
100:5 101:15
105:20 107:14
113:8 115:20
123:6,17

agrees   64:6
ags   6:3,11
aimed   77:19
al   1:12,15,23
    2:3,6,11,14,19
    2:22 3:4,7,12
    3:15 5:1,2,6,7
    5:24,24 6:7,7
    6:16,16,24 7:9
    7:9 8:14
albeit   62:10
allegaert   11:10
    126:23 130:24
allegation
    23:24 24:7
    47:10 70:12
    76:13 81:24
    87:24 88:19
    120:16
allegations
    15:6,14 16:17
    16:21 17:10
    18:11 22:23
    23:16,17 27:9
    53:24 59:4,11
    59:13 62:1,5
    73:20 74:23
    86:2 87:18
    88:4,15,16
    89:7,11 101:3
    111:22 117:9
    117:10 118:23
    120:5,15
allege   73:11
    90:11 91:1,2
    113:8,10
    116:17 118:12

126:3 127:20
alleged   18:17
    18:22 20:22
    21:16 23:22
    27:8 33:6
    34:25 51:11
    59:18 60:5
    70:10,10 71:20
    74:3 76:17
    81:20 94:4
    117:16 120:3
    120:13,15
    121:14 125:21
    125:24
allegedly   19:2
    24:2 40:8
    59:17
alleges   16:24
    17:6
alleging   16:11
    19:8 120:19
    129:15,16
allotted   41:4
allow   88:11
allowed   88:8
alluded   16:19
allure   92:14
alter   70:8
    82:12,20
alternative
    11:12 62:9
    127:3
altigefi   12:1
    115:7
altipro   11:25
    12:1 85:21
    115:6,7,13,16

115:19,24
116:4,15,19
117:4,8,15,18
117:21 118:17
120:14 121:2,5
121:7,15,21,21
122:1,6,11,13
122:24 123:3
124:14,19
125:3
altipro's
    116:18 122:19
    123:5 125:25
    126:4
amend   88:13
    89:14
amended   5:17
    6:20 15:16,22
    15:25 16:24
    17:1 21:19
    59:5,11,19,22
    61:2,4 62:4
    111:21
amendments
    121:17
americas   8:15
amount   63:20
    70:1 73:5
amounting
    107:20
ample   47:18
amsterdam
    1:15 6:16
analogize   23:7
analysis   75:7
    83:24 110:24
    111:9,19 112:8

117:16
ancient   93:17
andrew   8:19
ane   102:2
answer   26:4,14
    57:14 95:22
    98:4 112:1
answers   55:17
    55:20
antilles   31:18
antitrust   33:17
anybody   83:22
anyway   89:9
    99:18
apologies
    42:15
apologize
    38:21 78:24
    108:11
app   23:1
appeal   27:5
    105:2
appeals   34:11
    124:5
appear   10:22
    11:23 57:18
    58:19 128:15
appearances
    10:5
appearing
    11:25
appears   93:6
appellate
    22:17,22
apples   111:19
applicable
    18:8 25:7

| | | | |
|---|---|---|---|
| 86:17 | 75:4 83:16 | **asset** 11:11 | 124:23 130:18 |
| **application** | 86:14 91:14 | 29:19 59:24 | **attorneys** 8:4 |
| 28:4 | 93:12 102:15 | 90:17 127:2 | 8:14 |
| **applies** 106:4 | 109:2 110:23 | **assets** 13:23 | **attract** 92:15 |
| **apply** 15:15 | 113:4 114:16 | 35:23 36:13 | **attractive** |
| 23:3 116:5,14 | 122:19 129:8 | 37:7 48:20 | 62:10 |
| 117:15 121:21 | **arguments** | 106:21 | **attributable** |
| 122:17 127:8 | 13:6,12 14:4 | **association** | 58:11 59:19 |
| 129:22 | 14:24 18:10 | 32:18 | 60:7 |
| **applying** 27:13 | 25:8 29:3,4,12 | **assume** 12:12 | **attribute** 34:22 |
| **appointed** | 35:4,16 45:1 | 96:25 99:15 | 103:6 |
| 13:21 42:18 | 47:3 52:3,6 | 109:13 111:3 | **attributed** |
| **appreciate** | 53:2,18 54:3 | **assuming** | 66:24 118:1,4 |
| 52:3 96:6 | 74:12 75:14 | 19:10 | 120:14 |
| 115:10 | 76:1,2,19 | **assumption** | **attributing** |
| **approach** 26:9 | 86:11,15,15 | 99:17 | 125:6 |
| **appropriate** | 106:2,4 122:15 | **atsi** 24:4 | **attribution** |
| 75:18 | 123:10 127:7 | **attached** 55:18 | 60:2 |
| **approval** 49:8 | 127:10 129:2 | 95:24,25 96:2 | **audit** 41:21,24 |
| **approximately** | 129:21 131:6,7 | 96:3 98:3,10 | 43:12,16 44:4 |
| 37:24 42:13 | **arises** 72:7 | 99:1 128:10 | 48:22 |
| 77:10 | **arising** 33:22 | **attachment** | **auditor** 43:15 |
| **aren't** 93:7 | **arranged** | 96:2,3 | **august** 78:8 |
| **argue** 22:7 | 64:18 103:2 | **attacks** 61:20 | 106:5 |
| 49:15 64:24 | **art** 93:17 | 61:23 | **austria** 19:15 |
| 117:20 | **article** 32:17 | **attempt** 21:15 | **authority** 28:1 |
| **argued** 71:22 | **articles** 32:18 | 23:2 25:19 | **authorization** |
| **argues** 27:7 | **aside** 16:15 | 64:24 | 67:19 |
| **argument** | 18:23 112:11 | **attempted** | **authorized** |
| 13:11,15 18:20 | **asked** 128:17 | 19:24 20:19 | 68:5 |
| 19:1 21:24 | 131:3 | **attended** 20:1 | **available** 22:11 |
| 25:18 27:12 | **asking** 111:10 | 20:21,22 44:19 | **availament** |
| 41:8 47:3 | **assert** 39:9 | **attention** 51:16 | 39:21 |
| 50:15 53:19 | **assertions** 56:7 | **attenuated** | **availed** 15:19 |
| 58:16 62:23 | 90:24 | 46:2 78:11 | 26:20 27:15 |
| 66:18 67:7,15 | **assessed** 116:8 | 84:1,11 102:9 | 33:21 36:7 |
| 67:19 69:4 | | 110:4 115:25 | 120:6 |

availment
63:25
avenue   8:15
109:1
averments
110:25
avoid   26:3 71:8
103:3
aware   13:17
63:22 64:19
85:7

**b**

b   1:20 4:1 5:4
6:4,13,24 7:16
9:3 43:18 44:5
44:20
b.v.   30:10
back   16:4
21:15 30:12
37:9 41:5 53:5
62:18 65:13
69:9,17 82:23
90:5 92:8
96:22 100:25
102:13 103:10
103:20 104:14
108:3 113:5
122:17 124:4
124:11 127:8
backdrop   39:3
39:4
background
90:2,9 100:17
bad   52:24,25
52:25
baer   11:19
85:20,25 86:1

86:20 87:17,19
87:22 88:2
89:25 90:4,11
90:16 91:1,6
92:18 95:5,15
95:20,24 96:5
96:13,15 97:20
98:14,19 99:2
100:14 101:3
101:18 102:5
104:3 105:25
106:9 107:1
108:22 111:14
114:5,9,17
baer's   113:23
baffled   112:25
bald   90:24
ball   15:8
bamberger
9:10
bancaire   2:22
3:7 5:24 6:7
bank   11:19
19:15 25:14
28:16 30:8,9
30:25 31:1,1,2
31:10,13,16,19
32:6,10,11,16
32:20 34:9
35:6 36:5,10
36:15,16 37:1
37:5,11,13,17
37:20 38:1,3,8
38:13,16 39:24
42:21,22 47:11
50:1 56:7
60:11,12,15,16

60:21 61:1,2,4
61:6,7,9,9,23
62:7,8,11,14
62:15,19 64:1
66:2 71:13
73:12,12 77:12
78:14 85:25
86:1 87:22
88:21 89:25
90:4 95:5
100:21 101:16
101:16,18
104:3 105:25
106:9 107:20
108:4,5,8
110:12 113:23
114:5,9,9,17
120:2 123:20
124:9 127:4,21
128:22
banker   36:16
banking   7:14
13:1,7 14:2,14
22:3 26:2 30:3
30:18,22 34:18
41:18 42:21
47:1 53:22
61:16,18 75:11
110:1
bankr   33:3
bankruptcy
1:1 3:18 4:3
27:5,7,12
52:21
banks   21:21
36:14,20 39:12
41:23 47:7

104:21 123:4
129:15
bank's   32:15
34:12 124:6
banque   11:13
barely   40:13
barest   89:8
based   14:13
24:2 25:16
27:11,14,17
34:16,24 35:24
36:6 43:24
46:13,14,17
50:19,19 57:2
57:8 58:5,15
63:22,25 65:10
66:5 72:12
76:3 77:23
84:20 97:14
107:11 108:7
111:17 113:1,1
119:5,10
120:20 128:22
129:25 130:4,8
130:16
bases   40:20
83:21 105:11
105:21 113:22
basic   14:22
58:8 84:2
102:18 118:9
125:18
basically   88:12
113:17
basis   15:12
29:20 60:2,8
66:7 78:15

88:10,15,23
89:3 90:3
93:22 102:23
121:1,12
125:12 130:20
**bates**  31:25
32:1 95:13
106:25
**beat**  21:15
**becoming**
101:22
**bed**  53:19
**beer**  96:4,4
**beers**  22:13
**beginning**  47:6
64:14 90:19
100:8 101:12
129:8
**behalf**  10:9
11:6,10,25
25:3 29:16
42:23 49:16
59:16 63:17
64:22 66:17
68:23 69:20
78:9 79:21
101:17,18
119:16 120:5
124:3 125:3,25
127:1 128:18
130:25
**belabor**  36:24
102:24
**believe**  25:20
39:19,22 46:1
54:3 90:14
107:10 122:24

123:6 129:24
**beneficial**
13:25 14:5,7
17:3,9,23 32:7
54:25 59:16,20
59:22 63:18
64:22
**benefit**  17:3,9
23:23 32:19
33:7 35:1 40:7
46:6 58:18,24
67:11 75:13
82:7 88:2
96:10 125:22
**benefits**  15:20
26:9,10 27:24
110:1,2 124:22
**benefitted**
32:12
**bergamasco**
55:19 56:8,17
56:23 57:12,16
60:19
**berger**  11:10
126:23 130:24
**bermuda**  56:16
128:15
**bernard**  27:1
35:24 108:24
108:25
**bernie**  37:3
38:17 109:5,7
109:12 119:19
**best**  21:10 23:8
33:23 54:15
**bet**  105:8

**better**  28:14
107:6
**beyond**  17:13
94:13
**bidding**  35:11
**big**  16:1 17:11
17:11,11 99:9
101:12
**biggest**  94:23
**billion**  39:10
40:4 52:4,13
54:4
**bind**  66:18
67:5
**binding**  64:21
67:9 76:9,15
**bit**  13:18 84:3
87:13 98:24
130:11
**bjb**  95:5 97:11
99:13 105:25
106:17,18
107:11,16,19
109:19,23
113:10,12
**bjb's**  106:4,11
107:13,23
**black**  67:3
**blanket**  15:5
**blmis**  27:11,20
36:1 44:7,11
57:11,13 58:5
58:11 59:2,9
59:17,24 60:6
65:20,23 66:5
70:16 74:19
76:9 77:2

107:11 115:15
123:2 130:8
**blmisi**  106:21
**blmis's**  98:8
106:20
**block**  68:4
**blow**  105:13
**bnp**  2:6 5:6
115:16,17,20
116:17,19
117:20 118:12
120:9 121:11
122:13,14
123:3,5 126:1
129:19 131:5
**bnp's**  116:20
118:18 120:10
**board**  43:7
**bodewes**  43:18
44:5 48:15,15
**boele**  44:20
**boldface**  90:18
**bonds**  33:17
**bones**  89:8
**bootstrap**
62:23
**borne**  86:18
**boston**  8:6
**bottom**  31:7
89:4
**bound**  68:14
68:22
**bowling**  3:19
**bracketing**
24:8
**brain**  45:8

**branch** 25:15
30:9 73:13
**break** 69:2
**bridge** 82:14
82:18,25
**brief** 13:14
20:1 21:13
22:20 25:8
58:9 60:5
63:11 66:15
79:6,18 84:22
89:13,23 90:1
90:5,10,19,25
97:8,12 110:20
127:5
**briefing** 70:3
70:14 119:9
**briefings** 25:10
**briefly** 51:25
60:10 66:10
68:13 84:16,23
111:12 115:12
122:18 123:10
125:2
**briefs** 86:18
127:11
**bring** 51:15
**broad** 34:20
**broker** 115:17
120:4
**brokerage** 32:5
32:8 73:14,19
79:11 113:8
114:8
**brokers** 125:16
**brought** 13:23
111:15

**brown** 8:3 10:8
25:2 52:1
63:10 74:9
83:3 104:7
122:9 129:6
**burden** 26:21
51:12 52:7,8
110:2 121:23
129:24
**burdens** 26:9
26:12
**bureau** 18:20
**business** 14:17
17:19,21,24
21:4 27:16
34:18 36:8
43:8 50:4 56:6
56:14 76:5
88:20 92:6
93:21,25 94:4
94:10 102:25
111:4,5 115:14
121:7,22 122:3
**bvi** 13:21 54:25
55:1

---

**c**

**c** 8:1 9:7 10:1
17:11 113:12
132:1,1
**calculating**
29:19
**california**
120:6
**call** 16:3 63:13
**cameron** 8:11
**cancelling**
29:18

**can't** 16:16
35:8,8 40:17
40:17 65:1
80:2,3 82:23
96:19,23 107:4
109:5 111:2,7
112:13 113:16
113:18 120:14
121:12
**capable** 47:19
**capacities**
10:10 30:24
58:7 67:8
**capacity** 20:23
43:3 49:22
50:5
**capital** 12:1
115:8
**cards** 56:14
**carefully**
104:25
**caroline** 9:17
**carried** 60:6
64:17
**carry** 129:23
**cars** 94:5
**case** 1:3 11:14
13:9,18 15:10
18:3 21:3
22:14,14,23
23:2,9,11,12
23:15 24:5
26:22 28:2
33:1,2,18 34:9
34:20 35:6,8
35:10,19 39:17
40:17 44:16

47:12 49:14
51:7,14,17,23
52:7,8,21
53:13,23 61:22
61:24 70:23
71:4,24,25
73:16 84:17
88:6 89:10,18
89:24 90:20
93:24 100:2,19
101:13,15,20
103:7,9,23
104:1 105:15
105:15,24
111:14,14,17
112:12 113:5,7
113:16 117:14
117:17 119:3
119:13,17,19
119:19 120:1,8
121:15,19,23
122:12 124:18
129:13
**caselaw** 19:7
21:25 22:5
50:8 67:3,3
70:24,25 71:3
71:6 93:13
125:5,9
**cases** 10:4 12:6
12:7,19 18:25
21:5 22:19
23:5,7,18,19
30:12 35:7
52:20 61:17
83:23 86:20
100:25 101:2,5

102:22 110:11
110:13 117:22
117:24 118:3
118:21 119:8,9
119:24 120:18
120:23 124:13
126:15
**cause** 89:3 94:4
**caused** 40:8
**cayman** 14:13
17:19
**centenary**
22:13
**center** 8:5
**centers** 76:17
**central** 117:3
117:13
**ceo** 42:14 43:6
43:14,23 48:1
53:11
**certain** 12:24
13:22 14:1
16:4 100:22,23
103:3 119:21
130:3
**certainly** 52:3
84:10,10 94:16
98:22
**certificates**
29:19
**certification**
115:23
**certifications**
115:21
**certified** 132:3
**cetera** 52:7
64:1 74:24

77:3,3 95:2
109:23,23
114:13 123:8
123:20,20,21
**cfs** 49:20
**chain** 45:21
**challenge**
17:17 20:11
50:11
**challenged**
18:4 20:9
**chance** 99:20
**change** 70:21
**changes** 21:14
**characterizat...**
16:8 50:16
**charge** 100:1
**charged** 68:5
103:21
**charles** 15:10
120:1
**chart** 29:7,10
29:21 38:22
**chase** 9:5 11:4
69:19 79:20
**choice** 34:12
47:8,12 51:19
62:25 103:19
103:20 124:6
**chose** 37:12
97:11
**chosen** 61:7,8
**christopher**
12:2
**cie** 11:11,13
127:2

**cir** 34:9 119:4
120:2 127:4
**circles** 105:7,9
**circuit** 13:16
15:9,11 21:25
28:2 34:11
61:18 104:12
120:3 124:5
**circuit's** 15:13
**circulated**
48:16
**circumstances**
23:7 24:20
97:3 102:19,21
116:8 117:25
**citco** 3:15 7:9
7:13,14,14
8:14 10:19
12:24 13:1,1,2
13:3,4,7,7,13
13:16 14:1,2,2
14:6,9,12,13
14:14,16,24
15:1,7 16:3,5,5
16:10,12,20,25
17:1,6,11,12
17:14,18 18:5
18:14,16,22
19:8 20:1,7,8
20:11,21,23,25
21:17,18,20,21
21:22,22,23
22:3,5,7,24
24:1,8,13,18
29:1,3,6,12,13
29:25 30:1,3,4
30:7,8,9,9,10

30:10,16,17,18
30:20,20,22,25
31:1,2,4,6,9,10
31:12,13,15,16
31:19,24 32:1
32:6,6,10,11
32:11,12,14,15
32:16,17,18,20
33:10,11 35:6
35:6,20 36:5,5
36:10,10,14,15
36:16,19 37:1
37:5,11,11
38:1,3,4,8,8,13
38:13 39:4,5,6
39:9,12,12,13
39:18,20,23,24
39:25 40:4,5,9
40:17,19,24
41:10,11,13,14
41:16,17,18,21
41:25 42:1,2,5
42:7,10,12,14
42:18,20,21,21
42:22,23,25
43:1,3,4,6,7,9
43:10,12,13,14
43:15,21,23
44:4,5,6,9,18
44:18,23,24
45:6,8,13,14
45:16,18,20,24
46:1,5,7,7,10
46:13,18,24
47:1,5,10,11
47:14,15 48:1
48:6,10,12,13

48:15,16,21,23
48:25 49:2,2,5
49:7,9,10,13
49:16,20,22,25
50:1,2,3,5
51:16,18,21
53:3,7 54:5,6
58:16 60:15
70:10,11 73:13
75:9,10,10,11
75:19 77:5,14
79:7,9,12
82:16,17 83:5
87:25 99:13
100:21 101:16
101:16 102:4
102:12 106:1,3
106:17 107:13
107:23,24
110:12 113:9
113:11,14
114:9,17,17
**citco's**  37:6
51:11 75:16
77:7,11 78:13
79:4 82:4,5,7
107:20,25
**cite**  19:1 34:4,6
34:6,7 48:4
52:21 53:21
67:2 84:17
113:4 117:22
118:22 119:8
119:13,19
120:1
**cited**  12:10,14
15:10 19:7

21:5,12 22:1
22:20 23:19
28:2 34:1,10
50:9 51:6
70:22 72:21,22
83:22 93:13,14
131:1
**cites**  57:20
**citgo**  17:7
**citibank**  37:13
37:23
**claim**  14:19
18:15 19:25
71:25 72:1,7
72:12,20 73:1
74:2,22,25
75:5 76:6
79:24,24 80:1
85:2 89:21
103:13 128:12
**claims**  14:18
20:15 23:25
26:6,17 33:22
39:6,8,10,15
40:4 52:4,13
54:4 76:12
80:23 84:18,20
84:25 94:2
**clarified**  48:6
**clarify**  70:9
82:10
**classic**  62:23
**claw**  62:17
**clean**  82:24
**cleaner**  82:17
**clear**  15:11
23:22 25:20

35:22 38:25
42:2 48:8 65:4
71:6,7,17 99:2
105:20 107:12
108:6 126:7,15
128:6 130:7
**clearcut**  72:11
**clearing**  61:11
**clearly**  15:4
46:8 57:7 67:9
87:23 89:18
91:9
**clerk**  10:2
69:14
**client**  54:23
60:16 78:9
115:12
**clients**  14:5,18
32:20 38:1
81:3 101:19
**cloak**  50:14
**close**  83:4
89:21 97:15
**closed**  92:14
**closer**  81:15
95:8
**cognizant**
113:21
**collapse**  15:8
**colleague**  11:6
11:18 12:2
126:24
**colleagues**
86:10 127:7
131:7
**collective**  86:7

**collectively**
13:3
**column**  29:23
30:15
**combination**
116:12
**come**  16:3 35:3
35:15 65:13
69:9 88:24
93:12 99:22
110:2 113:5
114:14 122:17
124:4
**comfort**  37:6
**coming**  28:18
81:1 103:22
**committee**
20:20 21:24
41:14,15,16,25
42:5,6,8,12,18
42:24 43:1,4
44:19,23 45:1
45:19 48:17
49:7,8,16,23
50:24 53:5,12
**common**  40:16
**communicated**
38:9 57:13
128:23
**communicati...**
77:22
**communicati...**
24:4 48:19
72:8,16 73:23
73:25 78:7
116:10 117:6
127:23,25

**companies**
41:18,24 42:1
42:7,9 43:2,9
43:10,13,17
50:19,19,20,20
**company** 14:13
17:19 19:3
21:7,12 22:8
41:13 50:14,14
50:24 51:2,2
**competent**
47:19
**compilations**
37:25
**complaint** 15:3
15:16,22,25
16:8,9,19,24
17:1,6 18:12
18:21 21:20
29:7,11 38:23
53:19,25 59:5
59:12,19,22
61:3,5 62:4
88:13 89:12,14
93:3 113:7,13
113:15 117:19
121:17
**complaints**
87:14 88:1
111:21
**complete** 23:21
**completely**
56:9 62:4 87:6
101:11 112:2
**comprised**
41:23

**concede** 49:1
81:21 90:15
99:11
**conceded**
60:21 64:12
71:23 80:1
**concern** 44:25
**concerned**
49:25 99:4
**concerning**
22:24 59:12
**concerns** 36:12
44:9 48:19
49:18 59:2,7
**concession**
90:19
**concessions**
90:23
**conclude**
121:18 122:5
126:12
**concluded**
131:19
**conclusion**
28:1 126:5
**conclusory**
24:7 59:14
61:25
**conduct** 14:16
34:3 39:23
40:25 47:18
51:11 64:7,13
74:18 84:5,6
84:18,19
105:16 106:3
107:12 117:25
118:4,8,18

120:14,20,25
121:7,11
122:16 125:6,7
125:8,10,12,14
129:21
**conducted**
28:17 47:9,15
59:10 77:18
96:17 122:25
128:13
**conducting**
124:14
**conference** 7:1
7:4,6
**confirm** 74:4
117:22
**confirmation**
48:23
**confirmed**
28:11 31:15,16
42:9 62:16
**confirming**
50:4 108:24
130:3
**confirms** 73:16
116:3 122:24
**conflicting**
27:25
**confused** 74:12
78:24
**confusing** 32:2
**confusion**
78:22
**connect** 80:6,8
95:19
**connected**
93:15

**connecting**
122:1
**connection**
62:6 87:7,10
99:13 107:15
115:24 124:2
127:19
**connections**
118:18,20
121:22 127:22
**consent** 33:7
35:1 46:6
58:24 67:11
107:18 125:22
130:13
**consented**
64:20
**consider** 26:9
103:12
**considered**
12:16 64:5
**consistent**
75:19 76:1
118:3 119:9
125:8
**constellation**
16:12
**constituted**
41:12
**constitutes**
34:18
**constitution**
24:18
**constructive**
14:20 20:15
39:7,10 76:12

contact  18:2
61:15 93:4
94:17 108:7
109:10 116:25
125:11 126:9
contacts  16:10
16:11 21:17
26:17,19 34:3
46:1,13 56:5
56:13 57:20
58:10,21,22,23
59:1,3 68:8
70:7,15 71:18
71:21 72:19
74:17 75:9,15
75:16 76:9,10
76:21 78:12,13
79:4 82:4,5,8,9
82:13,25 83:6
83:25 84:1
85:1 91:16
93:7 94:3,7
99:5 101:6,9
103:3 105:12
105:23 109:16
109:24 110:3
113:1 114:19
116:1 117:13
117:15 121:10
124:20,22
125:10 127:13
contain  96:22
containing
107:17
contend  62:21
contention
68:14,22

contest  75:9
79:3 83:5 89:1
contested  30:8
context  13:18
84:10 103:5
116:7
contingency
44:10
continually
123:22
continue  105:8
109:9
continued  44:9
109:14
continuing
123:11
continuous
116:25 126:9
contract  93:20
contradict
90:23,24
contradicted
45:10
contrary  21:12
27:12 71:16
76:9
contrast  61:25
contribute
117:16
control  23:16
23:17,23 33:9
35:2 40:6
43:10 46:8
50:25 51:13
58:18 59:1
116:20 118:17
119:1,6,24

120:16 125:23
125:25
controlled  24:8
31:19 41:13
43:13 120:4
controversial
92:9
convenient
69:5
conversion
77:2
conveyed  59:7
cope  64:25
copies  79:8
copper  118:22
copy  95:12
108:11
corp  53:22
94:5 120:2,2
corporate
82:14,18 119:5
corporately
87:1
corporation
7:14 13:2,8
30:3,18 55:1
75:11 119:1,6
correct  88:18
88:24
correctly  27:13
correctness
88:16
correlate  31:23
corresponde...
84:4 117:2
126:2,5,8

correspondent
28:16 34:14,17
37:12,17,20,23
38:16 47:7,11
60:11 61:1,6,8
61:12,23 62:7
62:11,14,19
64:1 66:2
72:23,25 76:14
77:8,12 78:14
81:19,22 82:1
97:9 100:21,23
101:4,6,23
104:21 107:20
107:25 108:5,8
116:10,16,18
116:20,23
120:10 121:6
123:4,20 124:8
124:9 126:10
127:18 128:22
129:15
corresponde...
108:4
corroborated
55:20
couldn't  41:4
92:13
counsel  12:4
12:21 24:22
30:2 40:13
46:20 51:24
54:7,10 63:9
66:9 67:13
68:12,24 74:8
78:17 79:17
81:7 83:2

| | | court's 18:19 | currency 71:12 |
|---|---|---|---|
| 84:15 85:5,10 | 46:20,22 50:10 | court's 18:19 | currency 71:12 |
| 86:16,16 104:6 | 51:24 52:21 | 21:9 24:6,16 | 71:14 |
| 110:6 112:21 | 54:7,10,12,16 | 24:19 26:9 | custodial 32:8 |
| 113:25 114:25 | 54:18 63:9,21 | 27:5 51:3,15 | 49:13 |
| 122:8 124:25 | 63:23 64:4,6 | 51:21 106:6 | custodian 31:1 |
| 125:1 126:17 | 64:13 66:9,11 | 116:11 118:7 | 31:2,3 37:8 |
| 129:4 130:23 | 67:13 68:12,16 | 121:18 122:21 | 55:4 57:25 |
| 131:9,12 | 68:19,24 69:3 | 126:6 | 58:14 62:7 |
| **country** 18:6 | 69:6,9,12,15 | **cover** 40:9 | 63:15 |
| 51:6 132:21 | 69:17,22 71:6 | 95:14,23 | **custody** 3:15 |
| **country's** 51:3 | 73:16 74:8 | **covered** 69:25 | 7:9,15 13:2,7 |
| **couple** 15:17 | 75:14 78:17 | 85:13 | 14:2,14 22:3 |
| 47:21 86:19 | 79:17,19 80:6 | **created** 92:14 | 30:4,20,20 |
| 110:9 115:12 | 80:9,12 81:7 | **creating** 39:14 | 31:3,9,12,17 |
| 118:21 122:4 | 83:2,9,16 | **credence** 62:24 | 32:5,7,11,13 |
| **course** 12:22 | 84:15 85:5,10 | **credit** 19:11 | 32:14,17,18 |
| 13:20 21:7 | 85:13,16,23 | 89:19 103:16 | 35:6,20 36:5 |
| 25:11,17 26:15 | 102:23 104:6 | **credited** 48:2 | 36:10,20 37:11 |
| 28:6 29:5,9 | 104:24 105:5 | **critical** 15:3 | 38:4,8,14 |
| 39:14 64:16 | 108:13,16 | 43:12 | 39:25 47:1 |
| 66:14 81:11 | 110:6,8 112:4 | **critically** 26:24 | 73:14,19 75:10 |
| 108:13 | 112:21 113:25 | 39:3 | 79:11 113:8 |
| **court** 1:1 3:18 | 114:3,25 115:3 | **crutcher** 11:5 | 114:8 |
| 10:3,14,20,22 | 116:1,9,13,21 | **crystal** 108:6 | **custody's** 44:7 |
| 11:3,8,15,21 | 117:5,14 118:8 | **curacao** 31:10 | **customers** 32:8 |
| 11:23 12:4,19 | 118:24 120:24 | 31:10,13,16,17 | **d** |
| 13:15,21 15:10 | 121:4 122:6,8 | 31:19 32:6,7 | |
| 15:17,25 19:13 | 124:5,25 | 32:10,11,11,13 | **d** 10:1 16:1 |
| 21:6 23:10,13 | 126:17,21,25 | 32:20 35:20 | 43:18 44:5 |
| 24:22 25:1,20 | 127:12 129:4,9 | 36:5,6,16 37:2 | **daily** 41:17 |
| 25:24 26:5,8 | 130:23 131:9 | 37:5,11,12 | 42:1 |
| 26:15,24 27:1 | 131:12,17 | 38:1,3,4,8,9,13 | **dance** 123:11 |
| 27:3,7,12 28:4 | **courts** 23:25 | 38:14 39:24,25 | **dancing** 53:3 |
| 28:11 29:9 | 28:17 34:2 | 42:22 | 123:25 |
| 34:11 38:20,24 | 38:6 79:14 | **curacao's** | **daniel** 8:20 |
| 39:1,15,17 | 107:18 123:7 | 32:17,19 | 9:11 10:18 |
| 40:2,19 45:24 | 125:9 130:14 | | **danny** 8:11 |

**date** 81:12 91:3
96:11 98:4
103:25 107:5
112:10 132:25
**dated** 55:23
97:23 122:20
**dates** 105:12
**david** 8:10
9:16 10:8 11:9
126:22 130:24
**day** 26:6 45:14
45:14 99:4
103:2 129:23
131:18
**de** 22:13
**deal** 29:5 99:9
**dealers** 120:4
**dealing** 33:11
104:25
**dear** 96:4
**debating**
110:16
**debtors** 1:8
**december**
48:11 106:10
**decided** 23:10
74:7 111:25
**deciding**
102:19
**decision** 13:8
18:19 19:14,16
19:21 21:9
22:12 24:3,16
32:23 52:21
55:15 57:21
66:21 91:11
106:10 111:12

111:25 112:4,6
**decisions** 21:13
69:25
**declaration**
14:12 17:14,16
55:6,18,21
56:8,17,23
57:12,17 60:19
89:2 128:11
**deeply** 29:13
**defend** 62:25
121:23
**defendant** 11:1
15:12,12,15
25:6 26:16
27:7,15,22,25
29:24 30:3
31:22 33:20,24
34:24 54:21
55:2 65:3,4
66:12 85:25
93:13 105:1,2
111:13,14
118:24 121:2
121:20 123:13
125:7 126:11
**defendants**
1:16,24 2:7,15
2:23 3:8,16
10:19 12:24
13:3,4 15:6,7
15:19,21,23
16:1 19:16
25:7,13 26:1,7
26:10 28:7,15
28:20 30:4,7
35:4 41:9

46:24 54:6
58:16 86:9,24
87:1,2,5,11,18
87:20 88:3,23
93:14 94:24
101:8,14,17,21
102:20 105:8
113:10,14
114:18 115:18
118:14,25
122:3 123:13
123:22 124:18
**defendants'**
117:7
**defendant's**
27:4,17 74:19
74:24 112:5
116:9,22,24
118:8 125:9,11
125:13,14
**defined** 16:4
16:25 17:7
125:19
**definitely**
28:13
**definition**
72:25
**deliberately**
95:1
**della** 57:8
**demonstrate**
39:16 107:10
128:12
**demonstrated**
33:12 40:23
45:17 46:16
52:16 60:1

76:22 112:25
**demonstrates**
45:24 84:10
107:22
**demonstrating**
19:6 51:12
**denial** 25:21
27:5
**denied** 28:25
33:19 38:18
46:19 52:18
54:5 55:25
64:9 66:8,22
75:25 78:16
79:15 110:5
113:23 124:24
129:18 130:21
**denominated**
127:17
**deny** 40:3
**denying** 25:12
27:4 57:21
63:24
**department**
22:17,22 48:22
82:13,20
**departments**
22:4 70:8
**depositing**
29:15
**deposition**
36:18 42:10
43:7,19 44:1
45:11
**depositions**
47:22

**depository**
31:3
**derived**  15:23
19:17
**describe**  39:21
80:17 117:24
**described**
39:25 41:3
46:11 47:2
50:18 113:13
**describes**
41:22 123:15
**describing**
88:25
**description**
49:11
**designate**
37:12
**designated**
100:21
**designating**
38:5
**desired**  66:5
**despite**  56:10
71:2 75:13
**destination**
37:18 97:10
**detail**  59:18
105:11 113:13
**detailed**  36:9
**details**  94:11
112:10
**determine**  12:8
15:14 88:17
**detoured**  99:21
**develop**  92:6

**devoid**  62:4
**dictated**  28:4
**dictates**  40:16
**dictating**  44:24
**didn't**  51:19
53:20 91:10
98:17 99:15
104:19,22,23
107:3 110:10
114:20 115:14
116:16 121:6,9
123:18
**different**  21:8
22:23 28:1
31:25 32:25
35:7 39:7
41:12 45:2
47:22 53:4,23
74:5 86:23
89:1 101:1,1
101:11,24
102:1,1,6,21
110:13 111:17
112:3,7,24
**differently**
14:10 56:3
**diligence**  28:18
37:2 38:17
47:8,16,25
49:4 58:6 59:9
65:18 77:18
122:25 124:15
128:12 130:5
131:2
**direct**  37:6
39:7,20 40:25
45:24 46:13

48:24 53:14,14
68:8 78:12
102:17 105:12
105:23 109:9
109:16,19
113:1 116:16
116:19 124:15
129:16 130:3
**directed**  27:10
28:15 37:22
39:11 43:23
119:13,17
120:4,9
**directing**  47:13
101:23 120:7
**direction**  21:23
46:10 49:1
98:11 116:24
126:7
**directions**  55:9
**directly**  28:9
36:11 42:23
44:15 45:10
48:3,11 65:17
65:21 66:4
77:6 101:21
109:23 115:15
122:25
**director**  14:12
17:14 20:20
43:3 44:18
45:6,18 49:5
49:10,10
**directors**  20:12
21:7,11 36:10
36:14 37:2
41:19 42:6,19

42:22 43:7
53:11
**disaster**  44:11
**discovery**
47:18 51:9
54:1 56:11
88:7,11,12,14
88:17 89:5,9
89:10,15,20
90:18 96:20
99:12,20
103:15 110:24
111:18 113:17
113:18,19
121:16
**discuss**  77:22
**discussed**
18:25 36:20
58:8 91:14
121:13 124:19
**discussing**  71:2
82:21
**discussion**
36:21 126:13
**discussions**
49:25 117:7
**dismiss**  5:3,11
5:14,17 6:3,12
6:17,20 7:13
10:12 12:25
24:5 25:13,21
27:6 28:24
29:25 30:5
38:18 46:19
52:17 54:23
55:22 56:1,3,9
57:21 63:1,6

66:8,22 74:11
75:23 113:23
117:20 122:7
122:10 124:24
129:18 130:21
**dismissed**
  23:25 30:12
  51:22 63:22
  106:12
**dispensed**  76:3
  76:19
**disposal**  47:20
**dispositive**
  19:22
**dispositively**
  26:25
**dispute**  15:5
  38:6 56:25
  76:11,16 82:5
  88:15 111:23
**disputed**  16:8
**disregarded**
  89:17
**distinct**  15:8
**distinction**
  100:24 101:12
  102:16
**distinctions**
  74:5
**distinguish**
  19:20 23:2
  24:11 86:20
**district**  1:2
  19:14 22:12
  24:4 27:3,3
  28:11 33:18
  70:22 93:19

104:24 105:5
112:4 129:9
**div**  23:1
**divide**  82:15,17
  82:19,24,25
**division**  22:17
  22:22 41:18
  42:6,20,21,25
  43:2,3
**divisions**  41:12
  42:20 43:16
**divorced**  18:11
**docket**  55:8,19
  55:22,24 56:9
  57:22 58:10
  59:5
**dockets**  63:3
**doctrine**  82:24
**document**  5:12
  5:15,18 6:18
  6:21
**documentation**
  65:19
**documents**
  12:6 20:5,21
  37:25 78:9
  90:6,6,15
  91:10 119:17
**doesn't**  15:9
  16:9 18:1,6,20
  18:21 20:4,11
  23:3 52:23
  68:6 79:3
  84:24 89:20
  92:19 94:16,20
  95:13,17 97:1
  100:15 103:13

115:13 117:3
121:20,21
**doing**  27:16
  36:8 45:7,21
  47:20 51:5
  94:25 100:11
  110:20 124:3
  126:1
**dollar**  61:11
**dollars**  15:21
  27:18 77:11
**domain**  92:10
**don't**  12:10
  13:14 15:4
  16:7 18:3
  19:20 24:10
  35:14 36:24
  40:13,14 46:4
  47:10 52:15,19
  53:9,10,20
  65:7,14 69:6
  69:24 74:20
  75:21 82:4
  83:15,19,22,22
  83:23 84:3,4,5
  84:21 90:7,18
  91:2 92:8
  98:20,20 99:16
  100:2 101:24
  103:19 105:9
  105:22 108:3
  108:11 109:2,4
  109:5,16
  111:23 114:23
  117:15 129:16
**dorso**  10:9

**dovetails**  71:4
**dozens**  14:15
**drafted**  16:20
**driven**  74:18
**dual**  21:8 50:6
**dublin**  30:9
  73:13
**due**  28:18 37:2
  47:8,15 58:5
  59:9 77:18
**dunk**  65:15
  109:15
**dunn**  11:5
  69:20 79:21
**duties**  45:12
  49:21
**dynamic**  70:21

---

e

**e**  4:1,1 8:1,1
  10:1,1 42:14
  42:14 43:18,18
  44:3,3,5,5,20
  44:20 132:1
**earlier**  22:4
  25:25 34:10
  46:25 47:2,24
  96:19 97:1,5
  102:2 106:6
  122:22
**early**  25:11
**ears**  40:10
**easy**  26:4
  108:19 112:1
**ecro**  4:5
**edi**  20:15
**educate**  81:2

**effect**  21:13
  22:19 23:25
  50:9 51:7
  52:22 56:7
  57:15
**effecting**  33:24
**effectively**
  30:25 105:18
  124:10
**efficient**  124:7
**effort**  13:24
  109:25 124:21
  125:15
**efforts**  74:19
  106:11
**ega**  11:13
  127:4
**ego**  82:12,20
**egos**  70:8
**either**  13:3
  18:1,11 20:4
  21:25 22:4
  23:20 46:18
  47:13 60:15
  96:20 111:7
  124:20 130:10
**elan**  11:12
  127:3
**electing**  62:13
**elements**  87:16
**elkind**  9:11
**email**  37:5
  65:24 78:2,3,4
  78:8 91:8,20
  91:23 92:17,21
  94:13 95:14,23
  96:1 98:3,10

98:16,17 99:2
  108:20,22
  128:4,7
**emailed**  44:5
**emails**  21:14
  37:1 47:21,24
  51:10 57:2,6,7
  72:4 80:3
  81:14 91:20
  128:11,13,15
  128:19 131:1
**emphasis**
  120:7
**emphasize**
  110:10 115:12
**employ**  127:18
**employee**  45:5
  48:23,25 49:11
  49:21 128:19
**employees**
  17:20,25 20:6
  20:7,11 53:11
  78:8 131:3,4
**empty**  99:23
**enclose**  96:8
**ends**  93:10
**engage**  121:6
**engaged**  55:13
  76:6 78:6
  115:16
**entered**  16:2
  32:6 47:11,14
  79:10,12
  107:13 130:12
**enterprise**
  22:15

**entire**  111:4,5
  111:18
**entirely**  110:13
**entirety**  29:6
**entities**  14:1,2
  14:4,5,6,10,15
  14:16 15:8
  16:5,12 19:9
  21:18,23 24:2
  29:4,25 30:7
  30:10,17,24
  31:6,14 33:10
  40:7,8 46:5,9
  47:1 58:6,11
  60:6 66:20
  69:20 77:20,23
  78:23
**entity**  17:19
  24:9 29:23
  34:16 35:9,9
  40:6 49:21
  53:6 59:9 65:6
  70:20 71:14,15
  76:18 82:13,14
  88:25
**equal**  23:3
**equally**  127:8
**equation**  62:2
**equities**  98:23
**eric**  85:19
**ermanno**  20:19
  42:14
**erred**  27:7
**especially**
  103:7
**essential**  93:20

**essentially**
  51:1 120:23
**establish**  33:4
  34:21 58:12,17
  87:21,23 94:1
  120:21
**established**
  34:15
**establishes**
  114:20 130:10
**establishing**
  29:17 91:16
  99:5 118:2,5
  126:11
**et**  1:12,15,23
  2:3,6,11,14,19
  2:22 3:4,7,12
  3:15 5:1,2,6,7
  5:24,24 6:7,7
  6:16,16,24 7:9
  7:9 8:14 52:7
  64:1 74:24
  77:2,3 95:2
  109:23,23
  114:13 123:7
  123:20,20,20
**eur**  33:16
**europe**  13:8
  25:14 30:10
  56:22
**euros**  127:17
**evaluating**
  43:9
**event**  44:10
  54:2 76:21
  85:3

events 84:17
evidence 18:18
21:12 23:13,22
23:24 28:22,22
31:6 39:20
40:15 41:2
45:23 47:7,9
51:14,15 55:15
56:12,18,19,24
57:1,5 58:20
65:25 73:15
74:3 76:13
89:23 90:15
94:11 96:12,18
96:21 97:14,18
97:24 98:13
99:19,21 100:2
103:12,12,22
106:16 111:8
113:22 114:16
114:22 122:1
122:23 128:6
130:2,10,17
evidenced
38:11 43:25
evidences
123:7
evident 34:13
evidentiary
31:15 36:9
eviscerate
70:24
exactly 15:15
67:21 71:5,11
108:8 131:2
example 15:24
17:5 21:19

23:8 24:3 32:1
44:13,17 65:5
72:11 78:1,7
80:10,16,21
88:19 93:17
95:18 100:12
115:25 126:2
examples
15:17 16:22
18:13 34:2
36:13,24 100:4
108:21 112:15
112:16,17
119:12
excellent
131:18
except 14:19
49:22 122:17
exchanges
118:15
exclude 16:5
17:1,7,11
excludes 16:20
exclusive 32:19
exclusively
127:25 128:23
executed 99:12
execution
55:12 60:3
93:20
executive
20:20 21:24
41:14,15,16,25
42:4,5,8,12,18
42:24,25 43:4
44:18,23 45:6
45:19 48:16

49:7,15,23
50:24 53:5,11
53:12
executives 50:7
exercise 13:15
26:18 34:23
97:4 110:18
116:11 119:6
exercised 46:8
119:1
exercises 33:8
exercising
62:21 76:15
exhibit 31:19
31:24 32:21
36:3,3,3,3,3,4
36:4,18,22
37:9,14,15,15
37:15 41:14,19
41:19,24 42:2
42:4,15,16,24
43:1,11,19,25
44:1,7,12,25
45:11 48:4,5
55:6,18 57:16
61:4 65:23,23
65:25 77:6
78:1,3,4 79:9
85:7 91:7,18
91:24 92:21
95:9,11 96:1
97:13 98:5,6,9
100:12 106:23
107:7,14,18,21
108:11,17,18
109:19 112:9
112:14 114:7,8

114:20 130:8,9
130:9
exhibits 31:21
31:21 36:17
37:15,21,24
38:12 42:10
43:5 44:21
56:17 65:17,20
77:13,17 90:22
93:9 95:9,21
97:13,22 107:9
110:20 122:23
124:17 130:6
130:16 131:1
exist 40:13
53:10
existed 32:10
existence 37:7
48:20
exists 116:3
120:23
expect 102:22
expectation
84:12
expensive
56:11
expert 62:12
explain 14:10
23:2 117:24
explained
17:18 49:24
explains 70:21
explicitly
16:20
exploratory
94:8

[exposure - figure]                                                 Page 20

| | | | |
|---|---|---|---|
| **exposure** 78:10 | **facilitating** | 27:18 29:13 | **faith** 52:24,25 |
| **express** 44:9 | 19:17 | 30:16,25 31:7 | 52:25 111:7 |
| **expressly** | **fact** 18:9 20:10 | 32:9,15 35:5 | **fall** 76:14 |
| 128:18 | 23:25 28:3 | 35:23 36:11,20 | **false** 90:13 |
| **extensive** | 40:12 43:22 | 40:18 45:25 | **familiar** 34:10 |
| 38:16 78:6 | 46:9 49:1 | 47:16 49:17 | **family** 61:21 |
| 119:6,14,24 | 50:23 51:11 | 50:1 53:9 | **far** 23:15 95:17 |
| **extent** 13:19 | 59:4 62:9,17 | 56:13,13,20 | 98:21 99:4 |
| 67:4,6 82:6 | 70:18 71:25 | 57:3,6,7 60:14 | 100:16 101:2 |
| 91:12 96:14 | 72:21 73:14,23 | 61:1 63:16,17 | 104:14 123:24 |
| 103:5 127:13 | 73:25 74:2,14 | 66:6 67:1 | 125:17 |
| **extinguishing** | 74:16 79:25 | 74:18 75:13 | **fast** 38:22 |
| 21:3 | 81:15,21 82:12 | 87:9 91:2,22 | **favorite** 52:19 |
| **extra** 108:11 | 94:15 101:9 | 91:24 92:2,3 | **fedesa** 57:3 |
| **extremely** 62:2 | 120:22 126:14 | 92:11,18,20,22 | **fee** 38:1 |
| **eyes** 40:10 | **factors** 116:13 | 95:11,23 96:6 | **feeder** 13:22 |
| **f** | **facts** 13:17 | 96:7 98:2,19 | 14:6,8,21 |
| | 14:22 28:21 | 99:3,16 101:22 | 17:22 18:3 |
| **f** 4:1 8:18 | 32:25 41:1 | 105:19 106:1 | 20:14 49:17 |
| 53:22 94:6 | 45:23 64:2,5 | 106:18 109:21 | **feeders** 13:25 |
| 118:22 132:1 | 65:13,15 68:7 | 111:4 114:13 | **feel** 83:24 |
| **f.2d** 119:4 | 79:2 101:24 | 115:15 116:11 | 84:24 |
| **f.3d** 15:11 | 104:20 106:7,8 | 122:15 124:15 | **feels** 85:2 |
| 61:20 120:2 | 106:15 112:13 | 127:16,17,24 | **fgg** 38:9 44:21 |
| **f.4th** 34:9 | **factual** 60:2 | 127:25 128:3,4 | 65:18 77:21 |
| 124:4 | 62:4 88:15 | 128:7,9,11,13 | 78:4,5,7,9 98:2 |
| **f.supp.2d** | 110:18 120:5 | 128:14,16,18 | 108:21 109:4,6 |
| 22:14 | **factually** 26:21 | 128:23 129:20 | 109:20 124:16 |
| **face** 26:13 | 51:18 103:23 | **fairfield's** 38:9 | 130:4 131:3,4 |
| 40:16 46:3 | 110:25 | 90:17 106:20 | **fgg.us** 57:6 |
| 48:9 52:5 81:9 | **failed** 111:21 | 108:21 109:20 | **fgl** 109:20 |
| 100:13 | **fair** 70:1 71:7 | 124:16 130:4 | **fia** 22:25 |
| **facie** 26:22 | **fairfield** 1:7,12 | **fairfiled's** | **field** 84:3 |
| 39:17 52:8 | 1:23 2:11,19 | 44:20 | **fifth** 57:10 |
| 53:13 117:17 | 3:4,12 5:1,23 | **fairly** 89:22 | 76:15 |
| 121:14 | 6:6,15,24 7:8 | 92:9 | **figure** 89:5 |
| **facilitate** 62:7 | 10:5,11,11,11 | | |
| 62:14 | | | |

file 7:16
filed 12:7,9,13
  30:5 41:7
  63:22 71:24
  75:23
fimbank 22:18
fin 22:18
final 73:10
  128:19
finally 23:4
  49:15 82:3
financial 8:5
  20:23 26:2
  33:20 41:22
  44:11 65:5
  104:15
financially
  32:12
find 23:8 51:15
  99:11 120:24
finding 23:5
  32:24 46:14
  52:25 94:6
  117:14 121:19
findings 49:7
  111:16
finds 116:9
finer 20:18
  23:18
fiore 118:7
fire 110:23
firm 10:18
  57:3
first 10:22 15:3
  22:17,22 31:9
  40:20 60:12
  63:2 70:17

71:5 72:3 76:5
  86:22 89:16
  90:10 91:1
  110:10 113:14
  115:9 116:15
  125:4 127:15
five 60:23
  61:13 69:6,10
  77:10 85:16,18
  91:18 111:21
fixated 20:13
flatly 90:24
floor 109:1
flow 74:25
  75:1
flowing 66:1
flugman
  128:10
focus 13:11
  28:22 41:4
  86:19 92:4
  100:20 127:12
focused 29:3
  72:16
focuses 125:9
focusing 25:20
folks 95:6
following
  17:18 44:8,22
  104:9 106:15
  130:1
follows 27:6
  34:15 56:4
  59:22 65:15
  76:22 85:9
foods 21:10

footnote 22:20
  75:8 83:7
  90:14,14
footnotes
  90:22
force 23:3
forcing 121:25
foregoing
  45:22 46:12
  132:3
foreign 23:6,14
  34:12,16 62:8
  62:15 65:5
  71:12,13,14,14
  71:15 73:12,12
  73:14,18,19
  76:16,17 114:9
  114:10,10
  115:17 118:1,5
  118:15,16
  119:16,25
  120:20 121:2
  124:5 125:7,13
  125:14,16
  126:11
foremost
  127:15
form 42:6
  76:24 79:11,13
  99:12,17 100:5
  100:6,10,14
  121:1 126:5
  127:23
formal 33:15
  34:22
format 106:25

formerly 11:11
  127:2
forth 33:13
  39:19 44:15
  57:11 60:4
  63:4 68:7
  75:17 76:14
  96:22 98:9
  122:23
fortuitous 46:2
  78:11 83:25
  84:11 109:17
  110:4 124:23
  130:18
fortunately
  64:11
forum 15:20
  19:17 33:20,21
  34:14 71:21
  77:16 115:25
  117:13,25
  118:4,9,18
  119:11 120:9
  120:10,13,21
  121:1,7,11,24
  124:9 125:7,8
  125:10,12,14
  125:21 126:2
  126:15
forward 62:12
  93:6 103:22
found 26:4,19
  28:7 33:4,14
  34:2,11 64:5
  105:3 108:7
  116:1,4,13
  119:10 120:3

121:4 124:5
**four** 20:2 25:12
74:14 85:13
128:15
**fourth** 57:1
59:5,11,19,21
61:2,4 62:3
76:12
**frame** 25:6
**frankly** 76:19
83:19 89:16
**fraud** 59:6,13
90:11,13,16
97:17 98:12
**french** 115:13
**frequently**
50:22
**friend** 50:6,10
**friends** 15:4
16:7
**friend's** 47:6
**front** 19:12
35:5 102:4
105:25 125:16
**fronted** 32:16
**fronts** 35:7
102:3,4
**fruits** 85:8
**full** 104:18
**fully** 55:20
98:24
**fun** 50:6
**function** 43:12
**fund** 11:12
12:1 20:25
21:4 22:25
24:4 27:15

30:10 31:1,2,3
31:4,4 32:9
36:7 41:23
42:20 43:1,3
44:4 45:13,14
45:16 48:4,6,7
48:21 49:2,5,9
49:13,20 50:1
50:3,5 61:19
63:17 65:19
67:21 70:9
75:13 77:20
78:9 92:3,12
92:12,13
115:13 127:3
128:8
**fundamentally**
25:23
**funded** 61:23
**funds** 13:22,24
13:25 14:6,8
14:21 16:2
17:2,8,22 18:3
19:18 20:14
27:10,19 28:9
29:13,16,17,18
29:19 30:16,19
30:21 35:23
44:25 45:5,9
47:16 49:18
54:25 59:15
60:13,17,25
62:8,14 65:16
66:18 71:12
74:18 77:1,22
77:25 79:7
87:9 90:17

91:24 92:5,8
92:22,23 94:14
95:1,3 96:9
97:21 98:21
101:10 109:4,4
109:6,8,13
128:13
**fund's** 48:20
59:24 65:18,22
70:11 77:21
**further** 41:18
62:13 74:21
98:16 115:1
131:10

### g

**g** 8:19 10:1
**gain** 18:16,22
18:24
**gap** 82:25
**gariboldi** 9:12
**garrison** 8:13
10:17
**geared** 86:25
**general** 71:10
80:25 87:24
114:11
**generalized**
59:14
**generally** 81:2
114:18 118:3
**generated** 59:3
**generic** 16:12
**gestion** 11:12
11:12 127:3,3
**getting** 25:5
97:21

**getty** 93:18
**ggc** 1:15 6:16
**gibson** 11:5
69:20 79:20
**gilmartin**
10:25 54:20
**gilmore** 9:6
11:24,24 85:21
115:5,6 125:2
125:3
**give** 12:7 13:18
15:17,24 16:21
17:4 18:12
21:18 31:24
72:23 80:20,20
111:8 118:21
119:12
**given** 34:20
47:20 60:2
62:2,24 71:9
72:20,20 74:2
118:6
**gives** 98:3
**global** 3:15 7:9
7:15 13:2,7
30:4,9,20,20
31:2,9,12,16
32:7,11,12,14
32:17,18 35:6
35:20 36:5,10
37:11 38:4,8
38:13 39:25
44:6 75:10
**globe** 51:1
**gloss** 101:24
**go** 15:20,21
41:5 48:3

51:14 52:6
67:20,20 69:4
80:19 81:3,22
83:12 92:11
94:21 95:21,21
96:22 100:25
102:8,13
103:10 104:8
104:19 105:8
105:17,18
108:3 112:22
113:16 117:19
125:17
**goal** 27:19
**goals** 61:19
**god** 84:2
**goes** 12:19 17:9
23:8 93:23
123:24
**going** 13:5
15:16 28:22
35:3,15 36:25
38:21 47:7
52:12 54:12
59:17 68:1
78:19 86:6,19
88:9,9 91:19
92:15,24 96:21
98:11 99:14
103:16,17
104:8 105:6,7
105:13 109:22
110:21 114:16
126:6 131:5
**good** 10:3,3,7
10:14,15,16,20
10:21,24 11:3

11:4,8,9,15,16
11:17,21,22
12:4,18 19:18
24:24 25:1
54:18,19 69:19
69:22,23 96:25
98:22 111:9
112:23 113:15
115:5 126:22
126:25
**gordon** 8:19
**gotten** 18:17
18:22 19:8
33:11
**gotter** 9:13
**governance**
38:5 107:17
130:13
**governed**
77:15 79:13
**governing**
16:13 28:17
**government**
33:17
**grant** 22:25
24:14 122:6
**granted** 24:5
24:21 56:4
63:7 88:14
129:3
**great** 117:19
131:18
**green** 3:19
**greenwich**
1:23 6:24 92:2
92:19,22 95:23
98:2 116:11

**greg** 10:9,16
12:23 25:3
46:23
**gregory** 8:18
**greig** 9:4
**ground** 69:24
104:10 108:3
110:16
**grounds** 12:25
24:1,6
**group** 1:23
6:24 7:14 8:14
13:1,13,16
14:9,12,13,24
15:1,5 16:6,15
16:20 17:1,7
17:12,14,18
18:5,14,16,22
19:8 20:1,7,11
20:21,25 21:18
21:22 22:5,7
22:24 24:13,18
30:1,17 33:11
39:5,6,9,13,18
39:20,23 40:4
40:5,8,9,17,25
41:10,11,13,14
41:16,17,21,25
42:1,5,7,9,12
42:14,18,23,25
43:4,6,7,13,14
43:15,21,23
44:5,9,18,18
44:23 45:6,8
45:18,24 46:1
46:7,7,10,13
46:18 47:5,10

47:11,14,15
48:1,10,13,15
48:16,23,25
49:2,7,10,16
49:22 50:2
51:19,21 53:3
53:7,19 54:5
59:14 87:12
92:2,19,22
95:23 98:2
113:4 116:11
**groups** 43:16
**group's** 16:10
21:24 44:24
**grow** 27:23
**guess** 83:10
107:2 112:23
**gut** 52:23
**guy** 53:4

**h**

**h** 1:20 6:23
17:11 124:24
**h.k.** 53:22
**habit** 50:6
**hailed** 102:23
**hal** 11:18
**half** 61:13
77:11
**halper** 11:17
11:18,22 85:22
85:24,24 110:7
110:9 114:1,4
114:4 115:1
**hamas** 61:23
**hammer** 97:7
**hand** 14:9 29:7
29:22 98:14

108:10
**handful** 87:1
**hang** 94:23
**haphazard**
  27:21
**happen** 91:10
**happened** 85:3
  89:6 108:9
**happening**
  103:5
**happens** 50:7
  103:1,4
**harm** 40:8
  72:24
**harrison** 9:5
**hartford**
  119:12
**hat** 53:5
**hats** 45:2
**haven't** 19:11
  20:10 33:11
  51:6 52:6
  74:15 112:25
  121:14 125:24
**hbus** 66:2
**head** 44:4
  47:24 53:3
  123:11,25
**hear** 31:22
  40:10 99:7
**heard** 24:23
  25:22 40:12
  45:1 47:4
  48:22,24 49:6
  51:9 70:5,7,25
  79:23 86:13
  98:25 109:2

110:14 115:19
117:6 127:7
131:13
**hearing** 5:3,8
  5:11,14,17,20
  5:25 6:3,8,11
  6:17,20,25 7:3
  7:6,10,13
  25:25 86:14,17
  92:1
**hebrew** 23:9
  32:23 33:2
**hedge** 20:25
  21:4 48:7
**held** 19:16
  23:13 27:13
  33:19 118:8
**helping** 103:9
**helps** 29:12
**here's** 33:23
  36:13 89:10,11
  112:1
**hey** 81:1 105:2
**hezbollah's**
  61:19
**he'll** 94:18
**he's** 68:2 85:12
  95:3 111:10
**hide** 28:20
  40:17 50:15
**high** 86:22
**highest** 26:24
**highlight** 81:24
  106:15
**highlighted**
  65:22 106:19
  108:18

**highlighting**
  96:10
**highlights** 41:5
**hire** 65:6
  123:14 124:1
**hired** 123:15
**hold** 32:19
  35:5,11
**holders** 13:25
  14:6,7 16:3,25
  17:7,11 29:17
  39:12
**holders'** 14:7
**holding** 14:13
  17:19 24:10
  33:1 50:14,19
  50:20,24 51:2
  93:24,24 95:3
**holdings** 22:18
  110:17,18
**home** 97:7
**hon** 4:2
**honor** 10:7,15
  10:16,24 11:4
  11:9,17 13:17
  17:5 24:12,24
  24:25 25:5,12
  25:23 26:23
  28:6,23 29:1,2
  29:6,8,10,21
  30:6,15,23
  31:5,14,20,25
  32:4,5,22
  33:10,12,16,23
  34:1,6 35:3,8
  35:14 36:15,23
  37:9 38:19,21

39:2,15 40:12
40:15 41:3,7
41:11,15 43:17
44:13 45:1,10
45:17,22 46:4
46:12,18,19,21
51:25 52:1,2
52:14,19 53:1
53:7,13,15,17
53:21 54:2,6
54:14,19 55:24
57:20 62:20
63:8,10,11,15
64:11,23 65:2
65:12,25 66:3
66:7,10,21
67:12,14 68:6
68:11,13 69:1
69:5,11,16,19
69:24 70:4
72:4,16,21
74:7,9,13,23
75:4,22,25
77:13 78:1,15
78:21,22 79:1
79:6,14,18
82:3 83:1,3,5,8
83:18,19,21
84:14,16 85:6
85:9,12,17,21
85:22 86:8
87:15 88:5
90:3,21 92:2
93:8 97:4
100:6,24
101:24 102:6
103:14 104:4,7

104:9 105:24
106:13,24
108:2,6,10,12
108:17,23
109:4,15,18
110:10,16
111:11 112:20
112:22,24
113:2,7,22
114:1,4,5,24
115:1,5 116:4
122:9,11,23
123:9 124:4,12
125:2 126:19
126:20,22
127:6 129:1,3
129:7,15,22
130:12,15,17
130:21 131:1
131:10,15
**honor's** 13:8,9
**hook** 94:24
**hope** 129:7
**hopefully**
89:22
**hsbc** 2:14 5:2
25:13,14 37:13
37:20,23 55:2
58:6,11,22
59:9 60:6,16
61:3,7,9 63:12
63:14,14,16,21
63:22 64:5,7
64:13 66:19
74:16 77:8,12
107:20 108:1
116:1,5,15

121:4,19 126:7
**hsl** 68:23
**hsl's** 65:1
**hssl** 55:4,5,8,10
55:12,21,25
57:18,19 58:2
59:1,6,15,17
59:20,23 60:16
61:8,9 63:13
64:16,22 66:16
66:19 67:8
**hssl's** 55:12
56:1 57:21,25
58:13 60:3
62:3 66:22
**hundreds**
50:25 73:17
81:5,20,22
**hyde** 7:25
132:3,8

**i**

**i.e.** 58:17
**idea** 119:9
**identical** 22:23
86:3
**identify** 68:16
68:19 79:19
114:3
**identity** 23:21
**ignore** 112:11
**ignores** 79:25
126:14
**iii** 4:2
**impact** 91:11
**impediments**
18:10

**impersonal**
32:24
**important**
26:24 29:2,5
34:7 35:17
39:3 42:17
89:22 100:24
117:8 120:8,17
**impose** 14:20
**impossible**
15:14
**improper**
31:11 88:10,11
**impugn** 17:17
**imputation**
22:2 46:17
64:11 105:21
106:2 113:2
114:6,15
118:11 122:16
129:21
**impute** 21:16
64:13 70:15
82:13 105:16
118:19
**imputed** 34:3
40:1 51:18
62:1 64:7 65:1
70:7 71:18
75:10,18 78:15
79:4 82:5,9,23
83:6 124:10
**imputing** 76:8
**inaccuracy**
90:18
**incidental**
61:11 62:6

**include** 16:4
38:4 113:10
**included** 37:3
42:13,21 48:19
86:24 89:11
95:12
**includes** 123:2
**including**
14:11 21:5
26:11,12 29:14
31:15 36:12,15
36:20 37:1
38:17 39:24
42:20 43:24
44:10 50:9
55:9 63:25
65:18 78:14
106:19,20
123:1 124:15
130:4
**inconceivable**
45:25
**inconvenient**
112:11
**incorporate**
25:11,17 100:9
**incorporates**
99:24
**incorporating**
35:21
**incorrect** 70:23
**increasing**
37:6
**incumbent**
72:5
**independent**
36:22 87:7

107:12 115:22 124:14

**independently**
65:16 66:4
122:25

**indicating**
65:19 68:7

**indirect** 14:14
43:22 50:25

**indirectly** 19:2
19:2,8 28:9
33:24 121:8

**indiscernible**
21:8 41:16
55:21 78:19,20
102:4 107:22
111:1 115:7
116:23,24
117:1,12 118:7
118:13 119:12
119:14,15,25
122:6 125:5
129:12

**individual**
20:19 48:2,14
72:7,10,17
80:18,19 81:1
87:20 88:3
101:21

**inflated** 90:17

**influence**
91:10

**information**
38:10 59:2
65:19 81:3
95:12 96:15,24
97:21 98:14

99:25 107:2
126:4

**injured** 61:20
61:24

**inquiry** 73:8

**insight** 70:13

**instance** 16:23
70:17 89:16

**instances** 73:4
74:3

**instant** 27:17

**institution**
65:6

**instructed**
77:14 107:24

**instructions**
55:10 58:2
64:18

**instructive**
33:2

**instruments**
33:20

**insufficient**
23:13

**insurance**
119:14

**integrated**
22:8,15 41:12

**intended** 94:15

**intent** 27:20
76:7

**intentionally**
27:14,22 28:13
36:6 38:14

**interactions**
130:3

**interest** 96:6
121:25 122:2

**interested**
78:10

**interesting**
47:4

**interests** 13:21

**internal** 43:15
43:16 44:4
128:4,7

**international**
1:7 25:15
41:23

**interpretation**
34:21

**interrogatories**
55:17

**interrogatory**
55:20 57:15

**intricacies** 53:8

**introduce**
113:18

**introduced**
124:14

**inv** 34:9

**invest** 65:9
66:5 74:19
79:7 91:11
92:7 97:11
104:16 105:4
105:17,18
106:18 109:9
109:14 115:15

**invested** 13:22
27:10,20 28:13
36:6 38:14
65:20 66:6

102:12 106:21

**investigated**
65:16

**investigation**
115:22

**investing** 27:14
28:8 36:2 68:4
71:14 77:3
97:8 98:23
102:11 107:11
109:11 115:23
129:11 130:7
130:18

**investment**
27:2,14,18,21
35:24 36:7
45:20 55:13
57:3 58:3
63:16 65:22
66:4 67:24,25
70:16 74:25
77:25 82:23
83:14 84:6,8
91:13 95:2
96:9 107:16
108:25 123:7
123:15,17,23
124:1,2 129:10

**investments**
13:25 14:7
28:17 32:9,15
35:24 48:4
55:8 60:14,20
60:22,24 61:14
65:17 70:17,18
70:18,19,19
76:25 80:22

87:3,8 92:10
99:15 106:1
109:21 110:12
122:14 123:1
129:20
**investor** 38:10
65:5 98:2
104:15 105:25
**investors** 14:21
25:25 80:19
**invests** 71:15
71:15
**involve** 20:6
23:20 62:19
**involved** 29:13
36:11 45:13,19
48:11 53:8
61:17 95:3
119:24
**involvement**
40:18 45:25
53:14,14
**involves** 76:16
**involving**
58:16 60:11
62:10
**ireland** 60:15
61:2
**ironically**
117:21
**irrelevant**
20:16 76:7
**irrevocable**
103:20
**irving** 1:20
6:23

**isa** 65:6
**isn't** 19:9
104:13 117:17
120:14
**israel** 61:24
94:5
**issue** 17:23
18:24 26:18
27:1 37:14
49:24 60:10
63:20 64:16
70:2,3 72:6
73:11,17 81:4
81:12,13 84:20
87:3,12 91:16
93:3,14 99:13
101:10,15
129:16
**issued** 25:12
63:23 74:15
**issues** 21:2
51:13
**issuing** 29:18
43:9
**item** 115:4
126:18
**its'** 82:4
**it's** 14:13 17:23
22:14 29:2,5
32:2 33:16
34:6,7,8 35:14
37:25 39:3
41:2,3,6,14
46:1,13,14,17
50:2 52:4,7,21
53:2,15,20
65:11 66:15

68:13 69:9
70:3 72:5,11
78:1,25 79:23
80:4 81:15
83:9 85:7,8
86:1 88:10
89:21 90:10,14
92:9,19 93:2,3
95:11,17,24,25
96:1,11 97:15
98:16,22,24
99:1,3 100:12
101:23,25,25
102:3,14,20
103:6 104:11
104:12,13,14
105:17,20
107:1 108:5,6
108:11,20
109:7,15 110:3
110:18,22
111:1,13 112:7
112:15,16
113:3,20 114:8
114:15,21
118:8,9 120:8
120:12,17,22
123:25 124:10
124:13 125:17
126:15 128:6
130:11
**i'll** 14:10 15:17
15:24 16:3,21
25:8 30:11,19
35:25 36:17
41:4 54:15
63:14 64:15

65:7,9 67:16
67:16,18 83:4
105:10,13,17
107:1,6 112:22
122:5,14 127:9
**i'm** 11:5,18
19:10 24:8
28:22 31:14
36:25 44:13
47:5 52:25
54:14 58:21
62:11 68:18
74:12 78:18
85:20 86:19
88:9 94:18
99:7 104:8
105:6,13
110:21 112:24
**i've** 33:13
35:10 40:22
54:2 57:24
60:1 68:7
77:13 98:25
108:18

**j**

**j** 44:3 93:18
**jaime** 9:3
**january** 27:2
44:8 55:23
63:24 116:6
**jeff** 10:7 25:2
51:25 63:10
67:14 74:9
83:3 104:7
122:9 129:6
**jeffrey** 8:8

jersey 6:11
11:7 69:21
78:18,19,23,25
79:3,5,7,10,21
jersey's 79:9
79:15
jerusalem 23:9
32:23 33:3
johathan
108:22
john 4:2
join 127:9
131:6
joined 11:5
joint 10:10
25:3
jonas 8:8 10:7
10:7,15 24:24
25:2,2 29:10
38:21,25 39:2
51:25 52:1
54:14 63:10,10
67:14,14 69:1
69:4,8,11,16
70:22 71:2
74:9,9 78:20
79:23 81:9,18
83:3,3,11,18
84:23 85:1,6
85:12,15,17
94:18 102:3
104:7,7 108:14
108:17 110:19
112:22 114:14
122:9,9 126:19
129:6,6 131:1
131:10,15

jonas' 58:15
jonathan.mor...
108:23
joyce 62:12
jpm 1:3,10,18
2:1,9,17 3:2,10
5:1,6,23 6:6,15
6:23 7:8
judge 4:3
12:18 27:4
33:4 46:23
51:23 52:23,24
54:9 104:12,12
105:2 106:10
judgement
71:23
julius 11:19
85:20,25 86:1
86:20 87:17,19
87:22 88:2
89:25 90:4,11
90:16 91:1,6
92:18 95:5,15
95:20,24 96:5
96:13,15 97:20
98:14,19 99:2
100:14 101:3
101:18 102:5
104:3 105:25
106:9 107:1
108:22 111:14
113:23 114:5,9
114:17
juliusbaer.co...
108:23
july 36:19
96:11 97:15,25

107:2
jump 91:18
jurisdiction
5:4,12,15,18
6:4,13,18,21
7:15 12:25
13:6,13,16
14:3,23,25
16:1 18:7,15
19:5,19,25
20:16 22:16
24:1,6,13,19
26:13,16,18,20
26:22 27:6,9
28:10,12,23
30:8,13 32:24
33:5,22 34:24
35:13 39:17,23
40:19,22,23,24
46:16 50:15
51:3,4,22 52:9
54:24 55:25
56:1 58:12
60:9 62:21
63:1,7,23 64:6
65:12 68:10
71:9 72:24
74:11 75:15,24
76:15 83:20
84:13 87:23
88:23 89:18,25
90:4 93:22
94:1 104:3,18
106:8,13
109:10 110:3
111:1,10,23
113:1 114:11

114:23 116:2,3
116:5,7,12
117:1,4,14,17
117:23 118:2,9
119:5,10,20
120:20 121:1,4
121:5,11,12,15
121:19 125:13
126:11 128:25
129:25 130:14
jurisdictional
15:5 16:17,21
21:17 47:18
51:9 53:25
56:11 58:17
71:5,6 75:9,16
79:4 82:4,5
83:6,24 87:16
88:4,7,11,13
88:14,17 89:5
89:7,8,10,15
89:20 93:16
94:17 96:20
99:5,20 102:18
103:3,15,23
108:7 110:24
111:9,18 112:8
112:12 113:17
113:18
jurisdictional...
61:15 72:19
76:7 91:15
jurisprudence
34:15
justify 121:10

| k | | | |
|---|---|---|---|
| **k**  12:1 115:7 | 104:19 105:17 | **labor**  18:20 | 38:5 47:8,13 |
| **keep**  83:11 | 105:18 107:8 | **lack**  5:4,11,14 | 51:6 58:8 64:5 |
| **ken**  10:9 25:3 | 118:16 121:1 | 5:17 6:3,12,17 | 64:10 65:12 |
| **kenneth**  9:2 | **knowing**  97:8 | 6:20 7:15 27:6 | 67:3 70:23 |
| **kept**  129:8 | 109:24 123:2 | 30:12 44:6 | 71:4,17,17 |
| **keunen**  43:2 | 124:19 129:10 | 54:24 56:1 | 75:19 77:15 |
| 44:20 49:6,9 | **knowingly** | 63:1,7,23 | 79:2,13 107:17 |
| **key**  41:1 59:21 | 26:1 27:10 | 74:11 75:23 | 110:17 114:10 |
| 70:13 71:21 | 65:9,9 66:6 | 106:12 | 118:10 123:7 |
| 82:10 | 104:15 105:4 | **lacking**  24:13 | 125:18 130:13 |
| **kind**  83:20 | 129:11 | 127:14 | **laws**  31:17 |
| 84:5 90:2 | **knowledge** | **laid**  41:6 | **lawyers**  47:19 |
| 96:25,25 97:3 | 33:7 35:1 46:6 | **lambda**  10:11 | 112:23 |
| 100:25 110:21 | 58:18 59:6,7,8 | 70:20 71:13 | **lay**  10:23 104:2 |
| 110:22,23 | 59:12,16,17,23 | 81:25 92:3 | **layer**  102:17 |
| 115:14 116:3 | 62:1 67:11 | **lambert**  9:7 | **layers**  102:13 |
| 116:25 119:11 | 76:8 90:11,12 | 10:24,25 54:17 | **leads**  43:15 |
| 119:23 122:4 | 91:3 94:24 | 54:19,20 66:10 | **leah**  8:21 |
| 125:16 | 95:4 96:16 | 66:12,12 67:16 | **leave**  27:4 |
| **king**  11:6 | 99:3 100:1 | 68:13,18,20,20 | 113:2 |
| **knew**  36:1 | 125:22,25 | **land**  10:23 | **led**  43:13 126:4 |
| 58:21 66:4 | **known**  11:11 | 96:20 103:16 | **ledanski**  7:25 |
| 68:3 70:19 | 92:9 127:2 | **language**  22:5 | 132:3,8 |
| 77:3 90:16,16 | **knows**  52:23 | 22:10 98:18 | **left**  29:22 |
| 92:12 94:25 | **krys**  2:3 5:6 | **large**  74:23 | 71:20 85:18 |
| 96:16 97:14 | 9:2 10:9,13 | **larger**  63:20 | **legal**  22:16 |
| 98:14 107:11 | 25:3 | **lashlee**  119:4 | 44:10 60:2 |
| 109:10,21 | **krzyzowski**  8:9 | **late**  99:4 | 82:24 86:11 |
| 129:11 130:18 | 10:9 | **laufer**  8:18 | 125:20 132:20 |
| **knockout**  52:4 | **ks**  4:5 | 10:16,17,21 | **legally**  18:12 |
| **know**  13:17 | **kyle**  10:9 11:24 | 12:18,22,23 | 27:8 51:18 |
| 34:10 35:14,22 | **kyllan**  9:6 | 46:21,23,23 | **leggett**  9:3 |
| 45:1 52:11 | 115:5 125:3 | 54:9,11 | **legitimate** |
| 67:17 75:21 | | **lauren**  126:24 | 103:1,18 |
| 84:7 89:1 98:8 | l | **law**  13:16 | **leif**  9:9 |
| 98:20 99:25 | **l**  8:8 27:1 35:24 | 16:13 28:16,21 | **length**  70:5,25 |
| | 44:20 108:25 | 33:15 35:8 | 71:3 127:10 |

**letter** 67:3
95:14
**let's** 10:22
35:19 39:4
52:2 65:8
83:11 89:4
94:21 95:8,21
96:11
**level** 37:7
86:22 93:25
102:13
**levels** 102:8
**leveraged**
22:25
**liabilities** 21:3
21:4 50:3
**liability** 39:11
39:14
**liable** 39:10,13
52:13
**licci** 61:17,21
62:16 72:22
**light** 13:8
**likely** 86:5
**limited** 1:7
5:23 7:14 8:14
11:1,7 13:1
21:22 22:25
25:16 27:19
30:1,17 33:11
39:5,7,9,13,18
39:23 40:4,5
40:17,20,25
41:10 43:13,14
43:15,21,23
44:5,9,18 45:7
45:8,18 46:1,7

46:8,10 53:4,8
53:24 54:5,21
58:1,14 60:3
62:3 64:25
66:19 67:2
69:21 78:25
79:22 95:11
96:7 111:5
115:15 120:12
124:13
**limiteds** 6:12
**limited's** 39:20
45:24 46:13,18
**line** 10:13 12:3
44:1,2 48:9,9
78:2 117:22
120:23
**lines** 43:19
44:2
**linked** 93:8
**liquidation**
1:12,20 2:11
2:19 3:4,12 5:1
5:24 6:7,16,24
7:9
**liquidators** 8:4
10:10 13:20
15:18 16:3,16
17:17 18:3,9
18:14 19:1,20
19:23 20:5,10
20:13 21:16
22:1,6 23:1,4
23:12,19 24:9
25:4 39:9
47:17 48:10
49:4 50:23

51:12 52:1
55:7 56:10,18
58:19 62:17,20
63:11,21 64:7
67:15 71:20,22
72:4,5,9,17
73:11,24 74:10
76:6,8,10 83:4
90:10,15 92:2
99:11 103:21
104:8 111:7,21
122:10 127:19
127:22 128:2
128:10 129:7
**liquidators'**
14:18 26:6
102:14
**liquidator's**
15:16 39:6
49:11 55:17
57:15 62:12
64:3 73:20
**list** 128:17
**listen** 53:2
**listing** 56:6
**lists** 92:21
**literally** 98:12
**litigating** 62:22
**litigation** 17:23
33:17 39:9
47:13 77:17
118:22
**little** 13:18
54:14 64:8
74:12 78:24
87:13 89:5
112:10 121:24

130:11
**live** 29:5
**llc** 27:2 35:25
94:5
**llp** 8:3,13
11:25 22:25
54:20 115:6
**located** 56:14
87:22 88:20
108:25 128:24
131:3
**locations** 56:22
**lombard** 27:9
**london** 56:15
60:17 61:4,7
61:10
**long** 79:13
84:19 98:23
99:12,17 100:9
100:14
**longer** 100:6
**look** 15:18
16:23 17:4
29:11,21 41:6
48:5 71:10
73:15 80:11,15
81:8 83:25
86:22 89:10,19
90:1 91:20
93:9 94:25
95:8 96:11
97:23 102:5
103:20 106:13
106:23 108:6
108:18,22
110:21 111:2
112:2

| | | | |
|---|---|---|---|
| **looked** 67:23 104:25 | 74:13 76:1,2 86:12 87:8 | 119:19 123:7 128:8 129:11 | **man** 12:2 |
| **looking** 84:4 90:21 102:6 | 99:9 102:3 103:18 107:8 | 130:19 | **manage** 40:6 |
| **looks** 46:9 105:20 | 107:23 108:4 123:10 130:7 | **madoff's** 19:18 90:11 108:25 | **management** 11:11 12:2 41:17 42:1,7,8 |
| **lost** 91:25 | 131:6,7 | **mailing** 128:17 | 42:9 43:8 |
| **lot** 12:6 44:14 86:14 90:23 | **madoff** 13:23 20:2 27:1,23 | **main** 15:1 50:2 | 44:24 115:8 127:2 |
| 104:10 105:7 105:11 107:6 | 28:9,14,18 29:14 30:25 | **maintained** 17:25 | **manager** 11:12 38:9 44:20 |
| 115:25 126:13 126:14 | 31:7 35:24 36:6,12,12,20 | **maintaining** 29:17 50:3 | 65:18 77:21 98:21 108:21 |
| **lots** 51:9 92:13 109:4 | 36:21 37:3,4 38:14,17 40:18 | **make** 12:5 15:2 16:15 17:10 | 124:16 127:3 130:4 |
| **love** 52:3,4 | 43:22,24 44:25 45:20,25 46:2 | 19:19 23:1 26:21 35:15 | **managers** 109:20 |
| **ltd.'s** 5:3 | 46:14 47:16,25 48:3,19 49:3 | 36:25 38:25 39:8 42:2 | **manager's** 42:25 |
| **lucio** 55:19 56:8 | 49:18 53:8 57:11,13,19 | 44:14,15 50:12 52:25 53:18 | **managing** 36:14 37:2,5 |
| **lux** 63:14,14,16 63:21,22 64:5 | 58:5,5,23 59:6 59:12 65:10 | 60:14 68:6 77:8 83:16 | 49:5 |
| 64:7,13 70:2 74:6 | 66:20 67:1,8 67:25 68:1,4 | 85:6 89:24 90:23,24 99:15 | **mar** 33:3 |
| **luxembourg** 2:6,14 5:2,7 | 75:24 77:2,24 78:10 82:23 | 99:16 100:2 103:7,22 104:1 | **marcella** 9:8 |
| 25:14,15 55:3 60:18 63:13 | 83:14 91:7 92:5 95:3 | 107:6 108:19 112:12 122:5 | **march** 108:20 |
| **lynch** 9:14 25:15 | 102:11 104:17 105:4,17,19 | 123:4,15,16 124:1 129:13 | **marek** 8:9 |
| | 106:11 108:24 | 131:2 | **mark** 10:8 |
| **m** | 108:25 109:5,7 109:8,11,12,12 | **makes** 15:4,13 28:6 64:24 | **marked** 61:25 |
| **m** 42:13 44:3 | 109:13,22 111:4,15 | 113:18 114:12 118:6 126:7,9 | **market** 28:8 38:15 110:1 |
| **ma** 8:6 | 114:13,18 | **making** 47:2 55:15 129:9,13 | 124:22 130:20 |
| **made** 12:6,24 13:6,12 17:2,8 | | | **marketed** 128:8 |
| 34:25 35:22 54:2 60:23 | | | **markets** 26:2 26:11 36:2 |
| 61:2,3 71:6 | | | 65:11 66:6 77:4 104:16 130:8 |

**marshall** 11:6
**mastando** 4:2
**master** 11:25
  12:1 115:7
**masterfund**
  115:7
**materially**
  101:1 110:13
**materials**
  22:10 77:20
  106:18 115:23
  123:1,3 130:5
  131:2
**matter** 1:5
  20:14 28:20
  47:23 51:4,11
  54:8 68:25
  69:18 85:11
  94:21 118:25
**matters** 5:8,20
  5:25 6:8 7:10
  26:8,25 33:14
  51:10 59:24
**mcintyre** 118:7
**mckool** 11:18
  85:25
**mean** 36:1 51:2
  52:13 92:19
  109:9
**meaning** 22:3
  22:16 34:20
**meaningful**
  19:21
**meaningfully**
  22:7
**meaningless**
  120:24

**means** 127:17
**meant** 128:7
**meet** 22:6
  43:24 48:3
  49:3,17 92:7
  94:16
**meeting** 20:6
  20:19,22 21:1
  21:3 36:19
  37:3 38:17
  44:8,19,22
  47:25 48:3,11
  48:18 49:5,12
  49:24 66:20
  72:12,14 77:21
  78:2,3,5 80:6,8
  80:21,25 81:6
  91:7,8,9,12,15
  91:20,21,22,23
  92:19,24 93:4
  94:14 108:24
  109:22 111:3,4
  112:14 128:5,6
  128:7
**meetings** 20:2
  20:6,12 36:17
  43:22 56:20,21
  56:24,24 57:19
  66:21,22,25
  67:1,7 72:3,8,9
  72:11,16,19
  73:23,25 80:3
  80:15,24 81:9
  83:17 84:4,20
  84:22 88:22,22
  91:3,17 92:16
  92:25 93:1,11

  93:15,19,25
  94:7,12,20
  104:22 109:3
  117:9,10,11
  119:15 127:23
  127:24 128:2
  129:16
**meijer** 44:3,9
  48:24
**member** 20:21
  44:19 48:21
  49:22
**members** 42:4
  42:12 44:24
  45:19 53:12
  61:21
**memo** 95:24,25
**memoranda**
  76:25 95:5
  96:8,15,24
  97:7
**memorandum**
  25:12 35:21
  55:23 63:24
  64:15 75:8,25
  76:3 83:7
  95:12 99:25
  106:5,6 107:2
  122:20,21
**memorandums**
  79:10 95:18
**mention** 108:2
  111:12 114:12
**mentioned**
  12:22 14:3,15
  17:15 20:8
  22:4 32:22

**mere** 22:4
  23:20 50:23
**merely** 19:7
  94:9
**merit** 74:5
**merits** 26:5
  39:15 40:3
  52:15 54:4
**merrill** 25:15
**message** 96:5
**met** 53:16
  57:10 85:7
  109:5,6,12
  129:24
**michael** 9:7
  10:24 54:20
  66:12 68:20
**million** 31:10
  37:20,24 63:19
  75:5 77:9,11
  78:25 79:23,24
  107:21,24
  122:12
**millions** 27:18
**milner** 22:13
**mind** 53:14
  68:7 95:7
**mine** 64:23
**mineola** 132:23
**minimum**
  26:16,19
**ministerial**
  58:1 65:1
  128:16
**minute** 38:19
  59:18 78:20
  122:18

**minutes**  39:25
  69:2,6,10
**minutiae**  45:19
**mischaracter...**
  47:21
**missed**  112:23
**mitchell**  9:4
  10:10,13 25:3
**molton**  8:10
  10:8
**moment**  12:23
  14:11 16:4,19
  25:8 104:9
**momentarily**
  39:21 60:25
**moments**  17:15
**monaco**  57:2
**monday**  12:8
  12:16
**money**  27:23
  68:1 73:5
  80:20
**monies**  29:16
  77:7
**monitoring**
  29:14
**monkeys**  40:9
**monolith**  80:4
**month**  98:12
**monthly**  29:20
**morgan**  108:22
**morning**  10:3
  10:4,7,14,15
  10:16,20,21,24
  11:3,4,8,9,15
  11:16,17,21,22
  12:4 24:24

25:1 45:2
  54:18,19 69:19
  69:22,23 70:1
  71:1 115:5
**morris**  33:4
  104:13 105:3
  106:10
**motion**  5:3,11
  5:14,17 6:3,17
  6:20 7:13
  12:25 13:19
  21:15 24:5,14
  24:20 27:4,5
  28:24 29:24
  40:3 46:18
  52:17 54:5
  55:7,22 56:1,2
  56:9 57:21
  58:10 63:6,22
  63:24 64:9
  66:7,22 71:23
  74:11 75:23
  78:15 79:15
  110:5 113:23
  117:20 122:10
  124:24 129:3
  129:18 130:21
**motions**  6:12
  10:12 25:13,21
  29:4 30:5
  38:18 86:4
  131:13
**moulton**  55:6
**mouths**  40:10
**move**  30:15
  115:3

**moved**  54:23
  63:1 97:25
**moving**  13:4
  29:24 30:3
  63:5
**moxley**  8:11
**multiple**  10:4
  26:5 42:10
**multitude**
  86:24 87:4
  101:14
**music**  46:3
  52:5

### n

**n**  7:15 8:1 10:1
  132:1
**n.a.n.v.**  30:4
**n.v.**  7:14,15
  13:2,2 30:3,9
  30:10 31:2
**n.y.**  23:1
**name**  35:5
  52:20 55:2
  87:19
**named**  20:19
**names**  29:23
  32:1
**narrative**
  104:1
**narrow**  83:10
  83:11,12,15
**narrower**
  83:15
**nate**  9:15
**native**  106:25
**nature**  29:4
  50:7 80:15

82:8,9 91:4
  128:17
**nav**  128:20
**necessarily**
  72:13
**necessary**
  28:12 104:5
**nederland**  30:8
  30:9 31:1,2
  50:1 60:15
**need**  34:21
  39:16 44:10
  65:14 82:12
  83:19 99:19
  105:9 109:11
  112:12,18
  114:15 118:10
  129:9
**needed**  64:13
**needs**  64:8
**nefarious**
  50:18 103:1
**negless**  8:20
  10:18
**negotiated**
  94:9
**negotiating**
  119:16
**neighborhood**
  73:6
**neither**  28:2
  116:13
**net**  29:19 59:24
  90:17
**netherlands**
  31:18 42:22

**never** 17:21,24
17:25 18:2
45:13 52:5
53:14 55:13
56:5 57:10,12
58:3 60:12
66:25 67:1
68:7 88:6,24
89:2,11 99:18
116:15
**nevertheless**
56:2
**new** 1:2 3:20
8:16 15:20,23
19:14 20:2
22:12 27:3,10
27:14,16,20
28:10,16,17,18
33:18 34:12,16
34:25 35:24
36:6,8 37:3
38:5,6,10
43:21,24 44:19
45:7 46:2,3,14
47:8,13 48:3
49:17 56:24
58:11,23 59:10
60:6 61:12
65:9,11 66:4
66:20 67:1,2,8
70:20 71:16
74:20 77:16,22
77:23 78:3,4
78:12,13 79:13
79:14 81:1
84:2,8,9,12
85:8 93:19,19

94:1,8 107:11
107:17,18
109:1,1,12,22
109:25 112:23
116:22 117:9
117:10,11
118:19 119:13
119:15,18,25
123:7 124:7,16
129:16 130:7
130:13,14
**nexus** 18:6
51:5 94:3
96:18 102:17
**nijen** 48:12,21
49:3
**nominal** 14:7
**nominee** 30:19
31:12,17
**nominees** 6:11
11:7 69:21
78:25 79:21
**nomura** 1:7
**non** 24:1,8
33:7 35:2
103:1 125:23
128:8
**nonparty** 16:4
**nonsense** 65:2
**note** 30:6 75:22
79:23 81:20
97:6 103:14
109:18 117:8
120:8,17
**noted** 57:24
81:18 97:4
101:7,8 118:14

**notes** 43:18
49:12
**notice** 5:3,8,11
5:14,17,20,25
6:3,8,11,17,20
6:25,25 7:3,3,6
7:6,10,13 71:7
71:7 106:24
**noting** 33:16
41:18 116:6
**notion** 64:16
72:22 84:17
**notwithstand...**
29:2
**november** 98:9
98:10,22 99:1
**nowell** 9:10
**nugent** 9:13
**number** 11:14
73:4 83:21
85:20 86:11
**numbered**
31:21
**numbers** 31:22
88:21
**numerous**
36:25 45:18
53:10,11,11
76:16 109:24
124:19
**nv** 3:15 7:9
**ny** 3:20 8:16
132:23

**o**

**o** 4:1 10:1
43:18 44:5,20
132:1

**objective** 21:1
32:19 37:6
48:18
**obligation**
51:14
**obligations**
45:12 49:21
**obstacle** 19:25
**obtain** 109:25
124:21
**obtaining**
130:5
**obviously**
12:20 13:9
24:17 51:6
92:4 97:3
**occasion**
107:15
**occasions** 26:5
61:12 77:8,24
**occur** 72:14
96:14
**occurred** 72:13
84:19,21 85:3
88:23 94:8,12
94:16 97:16
119:11,18
**occurring**
83:17
**occurs** 80:25
**october** 93:5
122:20 127:8
**odd** 87:5
**odier** 27:10
**offer** 110:2
**offering** 77:20
95:24,25 96:8

106:18 123:3
**office** 108:25
**officers** 21:7
  21:10 36:10
  119:6
**oh** 35:12 40:13
  53:3 68:18
  84:2 85:19,20
**okay** 12:4,20
  39:2 54:8
  68:24 69:7,8
  69:12,17 78:20
  83:13 85:13
  88:8 89:3
  91:19 94:19,21
  95:21 96:9
  97:19 98:13
  99:7 100:4
  102:12 103:16
  115:3 124:12
  126:17 131:17
**old** 52:21 69:24
  104:10 108:3
  110:16 132:21
**oliver** 9:8
**olympia** 12:1
  115:8
**once** 22:21
  31:23 61:25
  75:1 100:7
**ones** 59:14
**operate** 40:6
  53:10
**operated** 31:18
  41:12
**operating**
  18:17,23 20:24

21:17 23:14
  24:2 48:8
  50:21 51:16
**operation**
  45:14 58:5
**operations**
  17:20,25 40:14
  42:19
**opinion** 12:11
  12:14 26:25
  28:12 55:23
  57:22 63:15,24
  70:4,22 74:6
  74:17 101:8
  104:19
**opinions** 25:12
  25:17 34:10
  74:14 76:3
  86:13 97:5
  101:5 106:6
  122:21
**opportunity**
  47:18 51:8
  63:2
**oppose** 64:8
**opposed** 16:11
**opposition**
  10:12 20:1
  41:6,9 55:7
  74:10 91:19
  97:12 117:20
  122:10
**oppositions**
  38:23 41:7
**option** 62:13
**options** 98:23

**oral** 47:3
**oranges** 111:19
**orchard** 27:23
**orchestrated**
  48:1
**order** 22:1
  26:15 34:22
  54:13 55:23
  58:12 63:24
  81:16 82:13
  116:2,6,8,21
**orderly** 36:16
**orders** 25:12
  106:6 122:21
**organization**
  41:22
**organized**
  31:17
**orientate** 29:12
**orientated**
  76:5
**original** 56:7
  57:12 103:11
  110:19
**originally** 63:1
**osus** 19:14
**outcome** 28:3
  74:6
**outlined** 12:17
  91:23
**outnumbered**
  54:15
**outset** 35:17
  64:4 75:2
**outside** 56:15
  128:1,24 131:3

**overall** 43:10
**oversee** 42:19
**oversight**
  43:10 45:15
**overwhelming**
  28:24 106:7
**overwhelmin...**
  46:15 52:10
**own** 17:20,21
  18:5 19:3 24:7
  31:16 35:5
  40:25 41:21
  49:11 55:22
  56:2 63:22
  70:16,17 71:20
  71:25 72:1,7
  73:20 74:22
  75:15 76:9
  101:3,6,23
  109:19 125:20
**owned** 21:21
  31:18
**owner** 63:18
  64:22

| p |
|---|

**p** 4:2 8:1,1,9
  10:1
**p.l.c.** 22:18
**page** 21:13
  22:20 29:7
  43:19 44:2,2
  48:9 49:24
  64:14 74:17
  84:22 90:10
  97:12 116:6,21
**pagers** 100:9

pages  31:25
  32:1 44:1 48:9
  57:22 58:9
  60:4
paid  88:1
  109:20 113:12
  127:20
pains  117:19
palestine  34:8
papers  14:11
  24:15 32:3
  34:1,5 36:9
  41:3 46:25
  63:5 75:18
  86:10,11 98:17
  104:2 109:18
  129:2
paragraph
  15:18,21,22,24
  16:23 17:5
  21:19 59:21,21
  60:19
paragraphs
  56:17,23 59:13
  59:18 87:21,21
parent  14:14
  19:2 21:11
  23:6,14 24:1
  30:17 40:24
  50:14,19,20
  51:2 70:6,24
  82:11
parenthetically
  73:4
paribas  2:6 5:6
  115:16 122:13
  129:19

paris  128:3
park  8:21
part  33:23 62:5
  74:23 89:12
  96:7 103:6
  106:17 123:16
  125:25
participated
  36:16 43:21
particular
  12:24 29:25
  55:16 75:7
  83:23 84:6
  104:15 128:1
particularly
  71:12 79:6
particulars
  35:19
parties  12:8
  28:21 70:1,5
  71:7,11 76:16
  94:9 114:10
partis  69:24
party  12:9,13
  26:19 28:2
  40:7 84:1
  118:1,4,5
  120:20,21,25
party's  117:25
pass  74:4
passed  59:1
passive  101:7
patently  90:13
path  25:20
patience
  131:16

pattern  28:3
  114:22
paul  8:13
  10:17 12:23
  46:24 93:18
paying  29:15
payment  61:2
  61:3,7 62:18
payments
  37:14,18,19,22
  61:11 63:20
  64:19 66:1
  77:9,10 97:11
  107:19,23,25
  113:11 123:4
pecuniary
  18:16,22,24
people  45:2
  84:9 92:7,7,11
  92:12,12,15
  93:4
perceived  58:4
percent  31:18
perfect  28:6
performance
  97:22
performing
  98:22
period  20:3
  61:13
perpetrated
  72:24
person  43:17
  48:12,13 80:18
  117:11 119:15
personal  5:4
  5:11,14,18 6:4

6:12,17,21
  7:15 12:25
  13:6,12,15
  14:3,23,25
  18:7 19:4,19
  19:24 20:16
  22:16 24:1,5
  24:12,19 26:15
  26:22 27:6
  28:10,12,23
  30:12 33:5,22
  34:23 39:17,22
  40:19,21,23,24
  46:16 50:15
  51:22 52:9
  54:24 55:25
  56:1 60:9 63:7
  63:23 64:6
  74:11 75:14,23
  94:1 106:8,12
  113:1 116:1,3
  116:7 117:14
  117:23 119:5
  119:10,20
  120:19 121:1,5
  121:15 125:13
  126:11 129:25
personnel
  43:23,24 77:23
  117:11 127:24
  128:1,3,12,14
  128:16,23
persuade
  118:23
phoenix  93:17
picard  1:20
  6:23 18:20,25

32:22 33:2
106:9 111:15
**picard's** 75:24
**piece** 71:21
97:18
**pin** 53:3
123:12,25
**pincus** 126:24
**place** 56:6
117:9 128:2,6
**placed** 123:2
**placement**
35:21 76:24
79:10 95:4
**placing** 109:20
**plaintiff** 33:6
34:21 120:19
**plaintiffs** 1:13
1:21 2:4,12,20
3:5,13 10:12
13:20 24:7
61:21,24 74:10
88:11 116:17
117:18,22
118:12,25
119:8 121:14
126:3
**plaintiff's** 94:2
118:23
**plan** 44:10
**planned** 36:21
**platform** 80:17
98:21
**played** 55:14
**plc** 1:7 60:16
61:4,7,9

**pleading** 15:5
16:16 53:19
59:14 87:12
103:11 113:4
**pleadings** 89:8
89:18 96:22
103:21 110:19
111:18,24,25
112:7
**please** 10:3,6
12:21 38:20
46:22 54:12,18
66:11 68:17
69:15 85:23
108:13 110:8
126:21
**pleased** 96:8
**plowed** 104:11
104:11,12,13
**plus** 61:14
62:22 113:6
**pm** 131:20
**podium** 13:5
**point** 12:6 15:3
16:14 19:13
20:18 22:21
23:5,18 25:19
30:14,23 34:8
47:17 49:4
50:12 59:18
62:20 69:1
73:10 75:6,6
81:11 82:10,15
83:23 91:13,25
92:17,25 93:5
93:6,11 94:20
94:24 95:4,9,9

96:19 97:2,7
98:1,13,17
99:23 100:12
100:17,20
102:3,9,16
103:21 107:7,8
107:10 108:3
109:16,21
112:17 113:3
114:2,6,20
121:3 127:22
128:2,4 129:9
129:13 131:2,5
131:8
**pointed** 27:25
94:13 99:6
103:8 110:14
112:9
**points** 15:1
78:21 79:18
110:9 112:14
122:4 130:25
**poke** 50:6
**policies** 43:9
119:14
**pose** 102:7
**posed** 102:6
**position** 30:21
44:7 64:3 97:8
112:25 113:17
**positioned**
14:9
**positions** 55:10
**posner** 52:21
**possession**
126:4

**possible** 26:13
50:3 128:5
**post** 81:12
**postdate** 84:17
**poster** 10:25
54:20
**posture** 53:24
**potential** 12:11
65:16
**ppm** 65:23,24
67:23 83:14
**ppms** 35:22
65:21 76:24
77:1 105:20
106:19 107:8
130:6
**practically**
22:23 23:17
**precedent** 15:9
27:13 28:5
76:10,15
**precise** 28:3
**predated** 91:12
**predicate** 88:6
99:22
**prelim** 26:23
**preliminaries**
26:21
**preliminary**
76:4
**presence** 56:6
**present** 9:1
19:10
**presentation**
98:3 99:1
**presentations**
98:7 131:18

**presented**
89:13 94:10
**pressed** 76:8
**presumably**
80:19
**presumption**
21:10
**pretend** 80:4
**pretty** 93:10
97:15 117:3
121:23
**previous** 28:2
58:15
**previously**
74:7 75:17
113:5
**prima** 26:22
39:17 52:8
53:13 117:17
121:14
**primary**
118:24
**principal** 19:4
23:21,24 32:9
33:8,8 34:4,23
35:2,12 39:13
46:7 51:12
52:7,12 61:16
62:16 64:22
67:5 102:16
105:16 106:3
108:7 119:16
119:25 122:16
124:6,11
125:22,23,24
129:22

**principals**
120:6 126:7
**principle**
125:18
**principles** 58:8
71:5 102:18
118:3 120:4
**prior** 69:25
86:13,14,17
91:3 101:5
106:2 122:15
129:20
**private** 5:3
11:1 25:14
35:21 54:21,23
54:24 55:4,7,9
55:9,14,14,16
56:2,5,8,12,20
57:2,5,10,14
57:25 58:1,3,4
58:9,12,13,14
58:21,25,25
59:2,6,7,8,12
60:4,7,8,9,12
60:14,17,20,23
61:9 62:3,6,18
62:22,24,25
63:5,6,12,17
64:7,9,12,14
64:15,24 65:15
65:17,21 66:1
66:3,7,13,14
66:18,23,24,25
67:10,12 68:20
76:24 79:10
95:4

**privee** 2:22 3:7
5:24 6:7
**privilege** 27:15
36:8
**pro** 1:10,18 2:1
2:9,17 3:2,10
5:23 6:6,15,23
7:8
**probably** 95:7
109:6
**problem** 16:16
38:24 54:16
90:6
**problems** 58:4
**proceed** 12:17
12:21 54:4,17
68:25 69:18
85:10,22
126:18,20
**proceeding** 5:6
11:1 54:8,21
86:2 115:8
116:2
**proceedings**
11:20 13:24
86:16 131:19
132:4
**proceeds** 14:20
**process** 100:18
**processes**
55:15
**processing**
29:14
**procure** 119:13
**produced**
106:24,25
107:1,4 113:19

**profit** 26:3
27:20
**project** 34:12
124:6
**promised** 94:8
**promotional**
22:10
**pronunciation**
42:15
**proof** 62:13
**proper** 88:6
89:14 103:18
**properly** 32:3
**proposed**
128:7
**proposition**
18:18 19:12
21:6 22:9
23:20 62:11
120:19
**prosecute** 26:7
**prospectus**
128:18
**prove** 52:16
100:2 107:4
109:5,10
**proven** 52:6,11
75:1,2
**proves** 22:13
**provide** 55:13
60:8 93:22
**provided** 17:22
49:13 77:16
79:14
**providers**
41:23

**provides** 20:25
128:18
**providing**
130:13
**proving** 53:13
**provision**
61:18
**provisions**
38:4 47:13
107:17
**psl** 64:15,18,19
64:21 67:9
**psl's** 55:2
**public** 92:10
**publicly** 22:11
**punch** 52:4
**punchline**
118:2
**purchased**
17:2,8 115:17
121:8
**purchasing**
118:13
**purely** 58:1
**purported**
76:5
**purpose** 21:1
35:11 50:2
**purposeful**
39:20 63:25
109:24 116:25
124:20
**purposely**
15:19 26:1,19
27:15 33:21
36:7 129:10

**purposes** 19:5
19:10 20:17
22:16 25:18
33:5 58:17
63:16 67:15,18
68:3 86:3,6
93:16 118:1
125:6 126:10
**pursuant** 55:4
93:22 101:15
**push** 92:6,22
**put** 16:15
19:11 20:18
23:18 33:13
36:24 39:19
41:2 44:15
53:19 62:12
65:4 68:7 72:4
73:15 89:1
96:22 103:24
108:14 116:21
122:23 128:21
**putting** 18:23

**q**

**qualifies**
109:17
**question** 25:24
33:15 40:5
46:4 66:16
95:22 102:7
104:13,14
105:1 118:25
**questions**
104:4 112:19
129:1
**quick** 69:2
73:10 112:1

130:25
**quickly** 29:11
53:17 119:11
121:3,18
**quintus** 55:21
**quite** 14:9
40:14 54:3
71:16,17 73:5
**quote** 15:14
17:6 34:19
41:15 50:2
64:15
**quoted** 12:11
12:14

**r**

**r** 4:1 8:1 10:1
17:11 44:3
132:1
**raanes** 9:9
**raise** 47:23
**raised** 47:23
70:2,3
**random** 46:2
78:11 84:11
109:17 110:3
124:23 130:17
**rarely** 93:22
**rather** 27:21
39:16 119:20
**read** 98:5
**reads** 59:22
**ready** 69:18
**real** 53:17
**realities** 33:14
**realize** 84:23
**realized** 53:17

**really** 13:14
15:1 29:11
53:9 71:4 90:7
93:3,16 100:13
100:19 110:10
114:7,20
115:10 117:3
117:15,17,18
117:22 120:12
120:18,22
121:14,20,23
121:25 122:2
123:11,25
125:17 126:15
129:13
**reap** 27:24
**rearguing**
110:16
**reason** 82:22
84:7 125:11
**reasonable**
26:18 62:21
109:7
**reasonableness**
24:15 73:8
**reasonably**
128:24
**reasoning** 23:3
24:7
**reasons** 16:18
24:12,17 46:12
47:2 56:4 60:4
63:4,4 79:15
104:2 116:4
121:4,12
130:15

**recall**  100:6
**recap**  117:12
**receipt**  115:22
**receive**  26:10
  37:13 57:6
  77:5 123:5
**received**  29:16
  38:1 60:24
  65:18,21 77:6
  77:9 79:8,10
  95:5 96:13
  97:20 106:18
**receiving**  78:9
  123:1
**recess**  69:13
**recipient**
  122:11
**recipients**
  31:10
**recitation**  47:4
**recite**  64:10
**recognizes**
  12:13
**reconsiderati...**
  33:19
**record**  10:5
  12:10,16 16:3
  16:25 17:6,11
  31:15 33:13
  36:9,24 41:2
  44:14,15 45:23
  46:10 52:17
  53:7 55:5
  56:12,19 57:1
  57:5 58:20
  68:16,19 69:17
  79:19 98:23

  103:24 106:16
  107:22 113:20
  113:21 114:3
  124:14 130:2
  132:4
**recordholder**
  32:14 65:8
**recordholders**
  21:21
**recoup**  13:24
**recourse**  26:13
**redeem**  55:10
  67:20 127:15
**redeemed**  14:1
  128:21
**redeemer**  32:2
  42:2
**redeeming**
  14:21 116:18
  118:13
**redemption**
  37:13,22,25
  38:2 39:8 41:8
  55:8 60:22,24
  61:1,3,14
  62:18 63:19
  64:18 66:1
  71:25 72:1,6,7
  72:10,12,20
  73:1 74:22
  75:5 77:10
  78:25 79:24,24
  80:7,9 81:4
  83:17 100:18
  107:23,25
  113:11 127:16
  127:19,20

**redemptions**
  17:2,8 20:14
  29:15 31:11
  64:21 72:6,18
  73:6,11,17,17
  73:24 74:2
  75:1 80:1,2,24
  81:11,13,17,19
  81:21,25 84:20
  88:2 99:13
  100:20 122:12
  123:5
**redress**  26:3
  40:8
**refer**  13:3
  31:20 35:25
  55:3 90:5 91:7
  122:14 127:4
**reference**
  31:13 56:16,22
  60:18
**referenced**
  12:14 66:21
  111:13,13
**references**
  51:10 107:7
**referencing**
  77:1 112:5
**referred**  12:11
  35:25 88:1
**referring**  17:10
  31:14 42:5
  57:21
**refers**  16:24
**reflect**  32:3
**refuge**  114:6

**regard**  45:13
  55:16 82:3
  110:18
**regarding**
  32:20 37:2
  59:23 60:6
  64:10 78:3,4
  106:2 122:16
  129:21
**regardless**  85:1
**register**  29:17
**registered**
  39:12 55:2
  101:9,16,22
**regular**  78:6
**regurgitate**
  25:16
**rehashing**
  115:11
**reiterate**
  119:24 125:4
**reiterating**
  122:5
**rejected**  14:19
  22:23 23:11
  106:5,11
  122:21
**relate**  26:17
  72:10,14,18
  73:25 76:12
  80:24 81:6,17
  84:19,21,25
  85:2
**related**  5:12,15
  5:18 6:18,21
  10:4 14:16
  15:7 48:4

64:19 66:20
74:24 76:11
77:16 84:6
86:16 87:1,9
97:19 119:18
**relates**  49:12
72:3,8
**relating**  20:15
28:18 30:24
43:22 59:24
79:2 123:1
124:15
**relation**  37:8
52:24
**relations**  38:11
**relationship**
19:4 23:14
30:15 32:10
33:5,15 34:2
34:22 51:13
52:12 53:15
66:16 70:15
77:24 80:22
82:19,20,20
93:21 113:13
114:12 118:6
118:10,14,15
119:22 120:12
120:22,25
125:17,18,19
126:14
**relationships**
53:9 70:6,6,8
82:9 102:25,25
103:1
**relatively**
13:14

**relevance**
91:15 111:25
117:7
**relevant**  13:19
16:5 21:20
22:2,11 26:24
47:12 51:17
59:24,25 61:15
64:2,5,10
72:19 74:17
75:19 76:21
79:2 80:14
84:18 91:15
93:2,16 94:17
102:18 118:16
120:21 121:10
125:6 126:10
126:16
**relied**  117:5
**rely**  18:19 20:5
25:11,17 96:21
97:12 101:4
114:7
**relying**  86:11
89:24 96:14
**remaining**
25:21 129:2
**remarks**  47:6
104:9
**remedy**  121:16
**remember**
52:20 129:7
**remotely**  11:23
115:10
**remove**  102:17
**removed**  62:1
102:9,15 103:7

**repeat**  102:24
106:2 122:15
127:9 129:20
**repeated**  34:13
72:22 73:2
109:24 116:22
124:8,20 126:9
**repeatedly**
35:15 36:11
38:16 99:6
**replete**  53:7
**reply**  21:13
22:20 49:24
55:18 56:16,23
57:16 58:9
60:5,18 63:5
64:14 66:15
75:8,25 83:7
84:22 106:5
117:24 122:20
125:1
**report**  41:24
42:25 43:2
44:23 48:13,14
48:16,24
**reported**  42:23
49:6 53:5
**reports**  41:21
43:4 128:20
**represent**
10:18,25 11:19
12:23 13:21
85:25 107:1
**representative**
17:14 20:23
50:5 57:8,14
96:5

**representatives**
20:2 49:3
56:14,21 57:4
57:19 58:22
**representing**
115:6
**request**  96:7
115:10 122:6
**requesting**
77:20 78:8
**require**  97:9
**required**  68:9
73:20 118:19
120:24
**requirements**
123:16
**reserve**  13:10
104:5
**reserved**
110:15
**resident**  33:8
35:2 125:23
128:3
**resolution**  38:7
**resources**
47:19
**respect**  13:1,7
13:10,12 14:4
14:24 15:1
24:13,15 31:21
31:24 32:8
33:10 37:7
40:5 41:8,10
47:1,16 51:13
52:8 60:20,22
66:15 72:15,20
73:3 74:1,6,24

75:7 76:25
78:24 81:23,24
122:3 125:19
126:1 129:25
**respectfully**
56:3 63:6
**respects** 72:2
**respond** 53:18
74:21 75:2
**response** 24:10
24:23 71:23
110:11
**responsibiliti...**
37:8
**responsibility**
45:15
**responsible**
41:17,25 43:8
**rest** 90:5 104:4
112:20 129:1
**resting** 86:10
**result** 34:14
74:19 93:20
**resulted** 61:20
**resulting** 64:20
**retail** 119:3
**retained** 75:19
**retread** 69:24
131:6
**revealed** 97:17
98:12
**revenue** 15:23
19:1,9,17
**review** 41:1
96:9
**reviewed** 75:17

**rewrite** 88:12
**reynolds** 9:15
**rhetorical**
102:7
**rick** 11:17
85:24 114:4
**ridiculous**
40:16 50:13,17
53:2,6
**rifkind** 8:13
10:17
**right** 32:23
47:3 52:23
67:16,19 80:4
80:18 81:14
82:6,8 83:10
83:24 84:24
85:19 92:14
95:6,22 99:8,9
102:4 111:1,16
111:24
**rights** 13:10
32:20 110:15
**rise** 10:2 69:14
72:23 93:25
**road** 97:16
103:17 132:21
**robert** 14:12
17:15
**rocket** 61:20
**role** 55:12,14
57:25 98:9
106:20
**roles** 21:8
**root** 27:23
**rothchild**
128:11 130:3

**rothchild's**
127:13
**rothschild**
11:10,11,13
127:1,2,4,5,8
127:15,16,18
128:12,21
129:19,25
130:4,7,11,18
130:25
**roughly** 61:13
**routed** 60:25
61:7
**routing** 62:10
**rudnick** 8:3
25:2 83:4
129:6
**rudnik** 10:8
52:1 63:11
74:9 104:8
122:9
**rule** 5:4 6:4,13
89:17
**ruled** 55:24
86:21 87:15
**ruling** 13:9,10
117:3 126:6

**s**

**s** 5:12,15,18
6:18,21 8:1
10:1 42:13,14
43:18 44:5
**s.a.** 25:14,14
55:3 93:18
122:13
**s.d.n.y.** 33:3
53:23 94:6

118:23
**s.e.** 25:15
**sa** 2:14,22 3:7
5:2,24 6:7
63:13
**salacious** 51:9
**sarah** 62:12
**satisfactory**
113:20
**save** 35:17
**saying** 42:8
50:23 68:2
74:20 83:9
90:4 98:19
100:21 111:2
126:12
**says** 15:25
29:23 41:15
61:3 80:25
83:14 84:23
89:2 96:4
98:13,16,18
99:24,25
111:15 112:15
**schecter**
119:17
**schedule** 91:22
**scheduled** 5:8
5:20,25 6:8
7:10 91:9
**scheme** 30:11
**schiava** 57:8
**schofield** 27:4
104:12
**school** 118:9
**schwab** 15:10
120:1

schwartz 9:16
scope 58:13
  60:3 62:3 67:6
  67:10 82:6
  83:10 119:21
  120:11 126:13
seal 12:7,9,13
seated 10:3
  69:15
second 15:9,11
  15:13,16,22,25
  16:14,24 17:1
  21:19,25 28:2
  34:11 36:23
  40:24 61:18
  72:21 76:7
  96:3 104:11
  113:15 117:5
  120:3 124:5
secondary
  105:14
seconds 105:13
  111:2
section 90:9
  113:12
securities 2:6
  2:14 5:2,7
  26:11 28:8
  29:16 32:20,21
  35:25 36:2
  38:15 63:13
  65:10 66:6
  74:16 77:4
  95:2 104:16
  109:1 110:1
  120:5 124:22
  129:12 130:8

130:20
security 25:13
  55:3 115:16
  122:13
see 29:22,23
  30:1,16 31:5,5
  35:7 37:15
  40:10,14 41:19
  42:17 55:16
  80:16 81:2,10
  86:17 108:19
  112:2,9,24
seed 27:22
seeing 114:21
seek 28:7 63:21
  76:10
seeking 62:17
  130:5
seeks 14:20
  40:7
seem 16:16
  99:2
seems 74:3
  81:21 102:15
seen 35:22 38:5
  65:22 77:1
  86:21 101:2
  102:21 103:8
  103:24 106:19
  130:6
segregated
  84:25
selected 15:21
selection 34:13
  116:9,22,23
  124:7

sell 92:11
semblance
  58:25
send 37:22
senior 36:16
sense 16:12
  28:6 40:16
  68:6 113:19
  118:6
sensible 120:18
sent 14:20
  44:22 48:13,14
  49:2 57:2,4
  77:7 107:19
sentry 1:7,12
  2:11,19 3:4,12
  5:1,23 6:6,15
  7:8 10:5,11
  27:19 36:20
  37:14,22 54:25
  55:10 60:23
  61:14 64:17
  65:23 70:12,16
  70:20 71:18
  73:18 74:15
  80:17,20 81:16
  81:23 82:17,18
  87:9 91:2 92:3
  92:10,20 95:11
  95:24 96:6
  97:9,11,20
  98:8,19 99:3
  99:16 100:22
  101:22 102:11
  102:12 107:2
  107:22,24
  111:5,6 114:13

115:15,18,19
  115:23 116:17
  117:6 120:13
  120:14 121:9
  122:15,25
  126:1 127:16
  128:8
sentry's 37:17
  37:19 70:11,17
  73:13 77:24
  82:22 97:9
  121:11
senty 38:10
separate 41:7,9
  70:19 73:1
  80:1 107:13
  109:19 124:1
separately
  82:16
separateness
  82:15,19
september
  44:17 49:15,25
  78:2 85:7
series 92:4
serve 121:12
  125:12
service 41:22
services 2:6,14
  5:2,7 17:22
  20:23 21:1
  25:13 27:2
  30:10 31:4
  32:8 42:20
  43:2,3 44:4
  45:5,9,13,14
  45:16 48:7

49:2,5,10,13
49:14,20 50:1
50:6 55:3
61:19 63:13
74:16 115:16
119:4 122:13
**services'** 48:22
50:4
**set** 14:11 18:11
24:17 57:11
60:4,16,18
63:4 75:17
76:14 87:1
101:24 114:11
125:19 127:10
**sets** 114:7
**settled** 27:13
**setup** 110:11
**seven** 77:10
81:18 85:18
**several** 72:14
77:24 81:5
**shaar** 24:4
**shafto** 10:25
54:20
**shaiman** 11:9
11:10,16
126:20,22,23
127:1 129:5
130:24,24
**shanghai** 53:22
**share** 29:18
**shareholder**
54:25 101:15
101:17,22
**shareholders**
17:3,9,23 32:7

59:16,20,23
101:9
**shares** 17:2,8
29:18,20 30:18
30:21 31:4
35:5 55:1
59:15 63:17
75:13 100:11
118:13
**sheets** 97:20
**shimkoski**
11:19
**shoehorn**
76:11
**short** 14:25
76:14 100:5
114:1 115:17
**shorthand**
100:11
**shortly** 88:9
**shouldn't**
103:7
**show** 18:7 19:4
20:6,7,21 22:1
28:13 32:9
33:6 47:7
51:14 52:8
56:12,14 72:5
80:4,22,23
81:4,16 91:10
92:17 105:6,17
109:11 110:22
110:25 112:13
114:19 116:24
118:25 129:10
129:10

**showing** 19:7
19:19 26:22
28:15 34:25
51:16
**shown** 39:22
53:10 72:9,17
73:24
**shows** 18:5
56:19 57:1
**shut** 45:8
**side** 15:5 16:7
29:23 50:10
**sideways** 31:8
**sigma** 10:11
55:1,11 60:21
62:18 64:17
65:24 71:12
81:24 92:3
95:25 96:7
97:20 127:17
128:22
**sign** 68:6 77:14
100:10 115:19
119:17 121:9
**signatory**
115:22
**signature**
132:10
**signed** 35:20
38:3 67:22
68:23 83:12,13
95:13 99:18
100:7,10
101:16 105:19
107:16 115:20
123:5,17

**significant**
15:23 19:17
25:10 72:1
**signing** 101:21
**silly** 35:14
**similar** 17:10
79:2 106:9
112:6
**simple** 26:4
88:19 104:14
**simplicity**
127:5
**simply** 27:9
35:9 62:15
67:7 105:3,4
128:19,21
**single** 51:7
73:2,3 74:1
98:20 127:16
127:19
**situation**
119:23
**situations**
23:20
**six** 20:3 61:12
85:18
**slam** 65:14
109:15
**slip** 57:22
**small** 73:5
**smattering**
21:14
**smeets** 42:13
42:16 43:6,14
43:23 48:2,5
48:17

smeets'  43:19
43:25
smell  52:23
smith  11:18
85:25
smoke  110:22
snippets  47:21
software  119:3
sold  120:4
solely  59:15
solutions
132:20
somebody
35:13 92:17,18
95:23 102:24
someday  52:14
somewhat  39:7
85:8 101:1
117:21
sonya  7:25
132:3,8
sophisticated
25:25 65:5
104:15
sorry  49:19
68:18,20 78:18
78:22 79:20
85:19,20,20
114:4
sort  70:8,13
82:14 86:25
92:9,9 97:19
98:17 99:21
100:8,19
101:11,13
102:6,7 112:10
112:11 118:2

125:4 126:14
sorts  14:17
sought  18:4
30:11 49:8
91:6
sounds  96:9
sources  98:25
soussloff  9:17
southern  1:2
19:14 22:12
24:4 27:3
33:18 70:22
93:18
space  5:3 11:1
54:21,23,24
55:4,9,14 56:5
56:20 57:2,6
57:10,25 58:3
58:4,12,13,21
58:25,25 59:2
59:6,8,8 60:8,9
60:12,14,17,23
61:9 62:3,6,22
62:24,25 63:12
63:18 64:8,12
64:14,15,24
65:15,17,21
66:3,13,14,18
66:23,24,25
67:10,12 68:21
spaces  33:9
space's  55:7,9
55:15,16 56:2
56:9,13 57:14
58:2,9,14
59:12 60:4,7
60:20 62:18

63:5,6 64:9
66:1,7
spain  128:14
128:19
speak  70:5
87:19 94:18
specific  20:16
25:5 27:19
81:4,6,10,16
87:18 90:22
94:11 96:21
111:22 114:12
116:23 118:24
125:19
specifically
16:10 19:16
22:15 47:23
49:12 57:22
96:16 126:1
specified  18:16
spend  53:20
70:1 79:1
spent  29:22
30:2 105:11
spetner  34:8
61:22 72:22
108:6 124:4
split  77:2
106:21
spoken  26:25
spring  44:3
spv  19:14
stake  108:14
stamp  95:13
stand  24:14
35:12 46:25
52:20 120:18

standard  18:8
94:16
standards
76:14 125:21
stands  66:14
125:10
start  12:5 86:8
86:22 89:22
90:1,8 91:5
100:20
started  91:1,13
100:25 103:10
starters  18:21
starting  75:6
starts  90:2
state  32:18
51:5 71:9
stated  27:6
37:6 77:13
116:5 122:13
130:15
statement  76:4
statements
129:17
states  1:1 3:18
16:11 17:24
18:1 21:5,9,10
26:4,17 27:24
41:24 50:8,9
50:16,21 56:15
56:21 57:11,20
64:15 71:10
72:23 74:4
75:8 77:19
78:7 82:1
109:25 115:14
116:9 121:8,24

| | | | |
|---|---|---|---|
| 122:3 124:20 | **subject** 18:15 | **subscribers'** | 50:21 51:1 |
| **stating** 27:8,9 | 23:18 24:18 | 83:6 | 82:12 |
| 42:24 43:1 | 26:12 28:9 | **subscriber's** | **subsidiary** |
| **status** 7:1,4,6 | 33:22 34:16 | 75:9 | 23:5 46:5 48:8 |
| **step** 92:8 | 51:3,21 55:25 | **subscribing** | 51:4 70:6,24 |
| **steps** 49:8 | 65:11 71:9 | 66:17 75:12 | **substance** |
| 102:8 | 78:2 84:12 | 91:2 | 94:13,14 |
| **stood** 111:1 | 104:17 110:2 | **subscription** | 103:25 |
| **stop** 104:18 | 114:10 128:24 | 35:20 37:18,19 | **substantial** |
| **stops** 93:10 | **subjected** | 38:2,3 64:17 | 94:3 121:23 |
| **story** 90:3 | 116:1 | 67:22 68:3,5 | **substantially** |
| 101:11 104:18 | **subjecting** | 68:14,23 76:11 | 13:22 35:23 |
| 111:16 | 60:8 | 77:7,9,15 79:8 | 65:20 68:1 |
| **straightforw...** | **submission** | 79:13 83:13 | 74:13 93:21 |
| 28:4 39:11 | 38:6 | 97:10 99:8,10 | 106:4,20 |
| 90:12 | **submit** 56:3 | 99:12,17,24 | 122:19 |
| **strands** 34:15 | 61:15 62:13 | 100:5,6,15 | **subsumed** |
| **strategic** 43:8 | 63:6 68:9 | 105:20 107:14 | 63:20 |
| **strategies** | 71:11 88:5 | 107:16,19 | **succinct** 25:19 |
| 98:24 | 96:12 100:15 | 115:20 123:4,6 | **sued** 11:13 |
| **strategy** 77:2 | 103:19 104:3 | 123:17 130:12 | 12:1 14:1,4 |
| 106:22 | 114:23 129:2 | **subscriptions** | 62:24 127:4 |
| **strawn** 11:25 | **submitted** | 29:14 38:10 | **sufficiency** |
| 115:6 125:3 | 17:13 55:6,21 | 64:21 74:24 | 116:7 |
| **strike** 77:2 | 106:16 130:2 | 81:25 91:4 | **sufficient** |
| 106:21 | **subs** 51:17 | 115:18 116:19 | 16:17 26:16 |
| **strikes** 113:6 | **subscribe** | 121:8,9 | 27:8 39:19 |
| **strong** 105:22 | 67:20,21 83:12 | **subsequent** | 94:7 116:13 |
| **stronger** 122:2 | **subscribed** | 60:22 80:21 | **suggest** 95:15 |
| **strongly** 54:3 | 59:15 63:17 | 93:1 | **suggesting** |
| 108:4 | **subscriber** | **subsidiaries** | 52:25 53:1 |
| **structure** 42:9 | 30:18,21 31:3 | 18:17,23 19:3 | 91:8 |
| 50:22 71:8,10 | 113:12,14 | 20:8,24 21:11 | **suggestion** |
| **stuck** 51:20 | **subscribers** | 21:22 22:3,8 | 50:13 |
| 95:6 | 75:12 87:25 | 23:15 24:3 | **suggests** 28:1 |
| **stuff** 94:21,22 | 113:9 | 39:24 40:21,22 | 91:21 |
| 99:23 | | 41:11 46:15,17 | |

suisse  25:14
suit  27:17
    34:16 119:7
suite  132:22
sum  73:22 74:5
    80:2,3 87:20
    88:4
sumitomo
    118:22
summarize
    105:10 121:3
summarizing
    116:6
summary
    71:23
supp  53:22
    94:6 118:22
supplement
    88:13 93:12
support  19:13
    22:2,9 55:22
    56:8 58:9
    77:12 90:7,7
    90:13 103:9
    104:1 106:8
    111:1,10,22
    116:11 117:1,3
    118:9 120:16
    121:5
supported
    26:21 41:2
    42:15 45:23
    103:24 106:16
    110:25
supporting
    28:23

supportive
    64:3
supports  19:1
    31:6
supposed  22:9
    49:18
supposedly
    20:1 91:6,11
supposition
    109:7
supreme  21:5
    21:9 24:16
    28:4 50:10
    71:5 118:7
    125:9
sure  44:15 47:5
    53:18 67:17
    69:3 85:7
    94:18 99:7
sustained
    34:17
swap  112:11
swiss  87:22
switzerland
    56:15 57:4,9
    93:1
sworn  55:17
    57:14
system  26:3
    61:16 110:1

                t

t  42:14 132:1,1
tab  71:24
tagalong  100:8
take  25:8 27:22
    28:7 29:11
    38:14 41:5

50:3 51:8
    65:10 69:6
    89:9,19 93:9
    95:8 104:16
    111:7 114:6
    115:11 129:16
    130:19 131:12
taken  19:2
    22:10 24:2
    40:2 47:22
    89:20 112:6
    119:21
takes  32:3 35:9
    58:16 64:16
talk  109:6,7
talked  45:3
    84:8,9 98:8
    102:23,24
    109:13 111:3
    112:15
talking  58:22
    62:11 71:13
    73:1,2,5,7,18
    74:1 87:8
    100:18 109:3
    111:6 129:14
talks  94:13
team  42:7,8
    44:24
tear  97:20
telephone  12:3
    56:6 88:21
tell  92:23 99:14
    111:2 129:18
tells  98:4
ten  62:22
    102:14 113:6

tend  90:23
tens  27:18
tenuous  24:9
term  22:15
terms  14:22
terrorist  61:19
    61:23
tese  22:13
test  22:6 24:15
    58:18 76:8
    83:25 84:3,3
testified  17:16
    20:8 43:6,14
    48:17
testimony
    17:16 18:5
    20:9 47:22
    48:8 51:10
tests  82:11
text  90:25
thank  10:15
    12:18,20 24:21
    24:22 29:9
    39:1 46:19,20
    46:23 51:23,24
    54:6,7,9,10
    63:7,9 66:8,9
    67:12,13 68:11
    68:12,24 69:8
    69:11,16 74:7
    74:8 78:16,17
    78:21 79:16,17
    81:7 83:1,2,7
    84:14,15 85:3
    85:5,9,10,17
    85:24 96:5
    104:6 108:16

| | | | |
|---|---|---|---|
| 108:17 110:5,6 | 89:13,13,14 | 91:17,19,21 | 114:18 115:11 |
| 112:20,21 | 90:19 91:4 | 92:17 93:4 | 115:12 |
| 113:24,25 | 92:23 93:10 | 94:20 99:7 | **think**   13:13,14 |
| 114:24,25 | 96:24,24 97:12 | 100:13 101:2 | 15:4 16:7 18:4 |
| 115:1,3,9 | 97:24,24 98:3 | 103:3,9 105:11 | 19:21 21:6 |
| 122:7,8 124:24 | 98:10,10,12,13 | 106:25 107:7 | 22:9 24:14 |
| 124:25 126:16 | 98:21 99:1,9 | 110:22,23 | 25:6 26:23 |
| 126:17 129:4,5 | 99:19 100:19 | 112:10,17 | 29:2,5,12 33:1 |
| 130:21,23 | 102:5 103:10 | 117:8,10,15,23 | 33:9,12,16 |
| 131:8,9,10,12 | 103:19 104:18 | 117:23 121:10 | 34:7 39:3 |
| 131:15,17 | 105:14 107:5,5 | 121:15 123:14 | 40:22 45:3,17 |
| **that's**   11:13 | 107:18,21 | 125:15 126:12 | 46:15 47:10 |
| 15:14,15 18:6 | 108:4,8 109:8 | **they're**   42:7 | 48:22 50:12 |
| 19:10 22:5,13 | 110:23 111:9 | 53:2,12 81:10 | 52:2,5,9,9,13 |
| 23:9,11 24:14 | 111:10 114:16 | 83:9 91:21 | 52:15,16,20,24 |
| 31:19,23 33:2 | 118:19 120:19 | 93:8,15 95:6 | 53:7,16,20 |
| 35:15 36:2,18 | 122:12,19 | 99:14 104:17 | 54:2 65:14 |
| 36:22 37:9,9 | 124:6,10 130:8 | 110:20 111:3 | 68:8 70:13 |
| 37:21 40:14,15 | 130:16,16 | 111:23 114:21 | 71:17,21 72:15 |
| 41:16 42:2,5 | **theirs**   123:18 | 124:3 | 73:22 74:13,16 |
| 42:15,24 43:18 | **theme**   114:22 | **they've**   14:1 | 74:20 75:2,6 |
| 43:25 44:7,11 | **theodoor**   1:15 | 18:10 73:15 | 76:1,18,22 |
| 44:21,25 45:10 | 6:16 | 81:20 99:19 | 80:14 81:8 |
| 48:12 49:20,23 | **theory**   22:2 | 103:8,24 | 83:15,19,20,22 |
| 52:12,14 53:6 | 23:11 | 110:25 112:12 | 83:22 84:3,4,5 |
| 53:13 55:8,22 | **therefrom** | 114:19,19 | 84:9 85:8,12 |
| 56:9 57:8,16 | 27:21,24 40:7 | **thing**   19:23 | 86:4,5,20 87:4 |
| 59:25 60:13 | **there's**   12:8,15 | 22:18 23:4 | 87:15,20 89:16 |
| 61:13,19 62:16 | 13:14 18:7 | 30:14 81:13 | 91:25 92:8 |
| 63:14 65:2,23 | 31:25 44:14 | 84:19 90:8 | 94:23 97:4 |
| 67:21 70:13,17 | 50:17,18,24 | 92:10 94:23 | 99:16 101:1,7 |
| 73:7,16 74:20 | 65:11 68:4 | 102:2 103:14 | 102:7 103:19 |
| 74:25 79:9 | 70:12 75:21 | 114:21 117:5 | 104:10,24 |
| 82:8,22 83:20 | 78:23,23 82:16 | **things**   18:2 | 105:3,6,7,9,10 |
| 83:22 84:2,22 | 82:24 85:17 | 25:7 82:21 | 105:22,22 |
| 86:18 87:22 | 87:7,10 89:3 | 84:24 86:19 | 107:5 109:2,4 |
| 88:23,24 89:2 | 89:18 90:13 | 103:8 112:24 | 109:5,7,15,16 |

| | | | |
|---|---|---|---|
| 111:23 113:15 | 115:11 | **topic** 34:7 93:2 | 125:20 126:15 |
| 113:20,21 | **times** 21:20 | **tortured** 64:24 | **transacts** |
| 114:23 116:2 | 37:23 45:18 | **tossed** 27:22 | 33:20 |
| 117:12,21 | 52:22 59:25 | **total** 60:23 | **transcribed** |
| 118:12 120:8 | 65:22 67:24 | 87:20 88:4 | 7:25 |
| 120:17 121:3 | 77:21 92:13 | 107:21 | **transcript** |
| 121:18,21,24 | 102:14 113:4 | **totaling** 37:20 | 36:18 132:4 |
| 124:12 126:12 | **timewise** | 37:23 77:10 | **transfer** 19:18 |
| 129:17,22 | 103:25 | 107:24 | 62:8,14 107:15 |
| 130:16 | **timing** 80:12 | **totality** 97:3 | **transfers** 61:22 |
| **thinking** 73:8 | 80:14 81:12 | 102:19 116:8 | **transmit** |
| **third** 56:19 | **today** 10:13 | 116:12 117:16 | 128:19 |
| 73:10 76:10 | 13:6,11 25:8 | **totally** 20:16 | **transmittal** |
| 109:1 118:1,5 | 25:22,24 26:25 | 102:25 111:17 | 65:24 |
| 120:25 | 27:1 28:22 | **touching** 70:2 | **treat** 86:4,6 |
| **thomas** 9:14 | 29:24 30:2 | **towards** 86:25 | 89:12 101:25 |
| **thornton** 22:25 | 31:20 35:4 | **track** 98:23 | **treated** 56:3 |
| **thought** 35:16 | 39:16,16 41:8 | **transact** 120:7 | **tree** 27:23 |
| **three** 40:9 | 44:15 52:3,8 | **transacted** | **trick** 20:4 |
| 61:13 77:21 | 52:16 54:15 | 17:21,24 | **tried** 17:17 |
| 85:13 95:9 | 65:4 82:22 | **transacting** | 20:10 22:6,7 |
| **thusbe** 33:21 | 86:14 96:6 | 34:18 88:22 | 23:6 104:2 |
| **tie** 80:21 81:15 | 99:6 107:4 | 93:25 | 123:22 |
| 84:5 | 115:19 124:19 | **transaction** | **tries** 15:7 |
| **tied** 87:2 | 127:7 131:6,13 | 38:2 94:4 | **true** 19:10 |
| **ties** 83:13 | 131:14,16 | 119:2,7 | 40:14 50:23 |
| 100:13 114:16 | **today's** 25:18 | **transactional** | 82:4 83:25 |
| 114:17 | **together** 15:7 | 37:25 | 89:2 132:4 |
| **time** 25:16,23 | 40:2 42:6 87:2 | **transactions** | **trust** 14:20 |
| 29:22 30:2 | 103:25 | 33:23,25 60:24 | 20:15 39:8,10 |
| 32:3 35:18 | **told** 83:12 | 87:3 91:16 | 41:23 76:12 |
| 41:4 50:7 51:4 | **took** 26:1 | 93:8,15 96:13 | **trustee** 1:20 |
| 53:20 70:1 | 66:17 95:1 | 96:17 97:16 | 6:23 27:8 |
| 79:1 91:22 | 117:9 128:2,6 | 99:18 100:22 | 75:24 111:15 |
| 102:16 103:4 | **top** 19:6 30:1 | 100:23 101:14 | 125:15 |
| 103:18 104:5 | 30:16 31:6 | 118:17,18 | **trustees** 115:21 |
| 105:11 112:20 | | 119:10,18 | 125:5 |

trustee's 27:17
  106:11
truth 89:6
try 19:20,24
  21:16 24:10
  25:16 28:20
  41:4 50:11
  80:19 92:11
  103:2
trying 70:13
  91:8,22 92:6
  92:22 111:19
tune 87:6
turn 14:23
  29:1 35:19
  39:4,4 60:10
  88:17 97:2,18
  101:18 123:9
turned 44:11
twice 77:22
twist 28:21
two 15:1 33:10
  34:15 36:13
  40:20 41:7
  54:25 56:10,12
  72:2 78:23
  80:23 86:1,3
  86:23 87:21
  99:20 100:9
  105:11,13,21
  111:2 116:4
  117:13 121:4
  128:2,19
  130:25
twofold 53:15
type 60:13
  103:24 112:8

118:5
types 34:2

**u**

u.k. 57:4 128:4
  128:14
u.s. 4:3 15:21
  19:9 24:1,8
  26:2,2,11 28:8
  28:16 36:2
  37:12,17,19,22
  38:15,15 47:7
  47:9,11 56:5
  56:24 60:11,12
  60:25 61:6,11
  61:16,22 62:6
  62:10,14,19
  64:1 65:10
  66:6 76:5,13
  77:4,7,11,20
  77:23 78:14
  81:19,22 87:23
  88:20,22,25
  89:3 91:13
  93:3,4,7 95:1,1
  95:2 97:9
  100:21 104:16
  107:20,25
  110:1,3 116:10
  116:16,18,20
  121:6,22 123:4
  123:19 124:22
  126:5,8,10
  127:13,18,21
  128:1,5,16,22
  128:24,25
  129:12 130:4,8
  130:19 131:4,4

ubc 6:11
ubp 2:22 3:7
  5:24 6:7
ubs 6:3,11 11:6
  11:7 13:8
  25:14 69:20,20
  69:21 70:2,16
  70:18 71:13,18
  73:20 74:6
  75:5,7,8,10,13
  75:15,20,23
  76:6,9 77:6,7,9
  77:14,18 78:2
  78:6,8,12,15
  78:19,23,25
  79:2,3,4,7,8,9
  79:10,12,15,21
  79:21 80:18,20
  81:1,15 82:6,7
  82:16,23 83:5
  83:6
ubs's 70:9,10
  70:12,18 71:20
  74:15 75:7,12
  76:25 77:5,25
  78:12,15 79:12
ultimate 21:23
  26:5 82:22
  97:10
ultimately
  41:13 50:25
  52:12 67:20
  70:20 71:15
  80:20 82:18
  87:8
umbrella 20:25

unbracket 24:9
unchallenged
  56:10
unclear 130:11
uncontrovers...
  21:6
undated 97:13
  98:2
undefined
  18:16
under 5:4 6:4
  6:13 7:16 12:7
  12:9,13 13:16
  15:9 16:13
  18:8 20:24
  21:9,23,25
  23:23 24:15,18
  24:19 31:17
  35:1 55:5
  57:24 58:8
  75:18 102:18
  102:20 114:10
  125:23 130:13
  131:13
underlying
  87:2 119:7
underscore
  22:21
understand
  13:9 98:24
  117:18
understood
  95:2
undertake
  124:3
undertaken
  58:24 67:11

**undisputed**
55:16 57:16
58:2 60:13
62:2 119:21
**unicredit**
19:15
**union**   2:22 3:7
5:24 6:7
**united**   1:1 3:18
16:10 17:24,25
21:5,9,9 26:3
26:17 27:24
50:8,9,16,21
56:15,21 57:11
57:20 71:9
72:23 74:4
77:19 78:7
82:1 109:25
115:14 121:8
121:24 122:3
124:20
**university**   23:9
32:23 33:3
**unlawful**   61:18
**unreasonable**
24:18 76:18
121:20
**unrebutted**
56:10,18
**unrelated**
48:18
**unsupported**
18:18
**unternaehrer**
20:20 42:14,16
44:17,22 45:3
49:16,19,20

50:4
**unternaehrer's**
45:11
**untransparent**
98:24
**untrue**   49:23
**urge**   41:5
90:21 106:13
106:23 108:5
**use**   28:15
34:13,17 60:11
60:21 61:16
62:6,13,19
63:14,25 74:1
76:13 78:14
88:11 89:14
97:9 105:15
108:8 116:10
116:20,22
117:2 120:10
121:6 123:18
124:8 125:16
126:2,8 128:22
129:15
**used**   28:15
35:5,6 37:17
38:15 60:13,21
63:12,14 76:25
79:7 96:16
100:22 104:21
106:17 114:22
116:15,17
122:13 123:4
123:17,19
126:6 129:19
**useful**   25:6

**uses**   72:22,25
73:2,2,3
**using**   60:17
95:1 101:3,6
124:9
**usually**   100:7
**utilized**   26:2

**v**

**v**   1:14,22 2:5
2:13,21 3:6,14
5:2,6,24 6:7,16
6:24 7:9 18:20
19:15 21:10
22:13,18,25
24:4 32:22
33:2 34:8
53:22 93:18
94:5,5 106:9
119:4 120:2
**value**   29:19
**values**   59:25
90:17
**van**   48:12,21
49:2
**vanzanten**
48:2,6
**various**   12:7
15:7 43:16
**vasquez**   53:22
**venue**   38:6
**verification**
36:22 44:6
**verifying**   36:12
**veritext**   132:20
**version**   95:13
**versus**   80:13

**viable**   13:15
**view**   23:5
48:12 102:14
104:18 123:11
**virtual**   85:12
**virtually**   86:3
87:16
**virtue**   16:1
18:15 113:8
**visit**   36:21
**visiting**   124:16
**vogel**   11:10
126:23 130:25
**voges**   14:12
17:15 20:8
**volkswagen**
24:16
**voluminous**
41:3 56:11
**voluntarily**
37:12

**w**

**w**   43:18 44:5
**wait**   91:17
**walk**   89:23,23
90:2
**want**   12:10
13:18 15:2
29:11 30:6,23
36:24 38:25
42:1 47:17
52:15 53:18
65:8 69:24
70:9 82:10
85:6 86:8
87:12 89:9,11
90:8 98:5

101:24 103:6
104:15 108:2,3
108:10,14
110:21 113:5
114:6 115:9,11
122:17 123:9
125:4 127:12
**wanted**   12:5
16:14 44:14
92:12 103:14
107:6 110:24
113:3 122:5
129:13 130:19
**wants**   12:9,15
114:14
**warning**   58:4
**wasn't**   18:24
19:18 48:25
101:7 120:24
125:14
**wax**   15:8
**way**   16:20
17:16 18:19
19:21 23:9
43:17 46:18
48:14 50:22
60:7 71:8,19
87:9 89:13
93:2,17 100:11
102:6 110:11
111:8 114:22
121:16
**ways**   72:11
96:20 112:24
**wear**   45:2
**wearing**   53:4

**websites**   22:11
**weekly**   128:20
**weidner**   9:5
11:4,5 69:19
69:20,23 78:18
79:18,20,20
80:8,10,14
81:8 84:16
**weiss**   8:13
10:17 12:23
46:24
**went**   34:19
49:17 73:11,13
73:18 77:11
81:9,19,25
95:15 99:18
109:11,12
112:16 123:14
**weren't**   102:10
102:11
**we'll**   12:17
28:14 52:14
69:9 87:24
99:7 112:20
114:23 129:1
**we're**   33:10
53:24 68:5,14
68:22 71:13
73:1,2,5,7,8,18
74:1,20 85:16
85:19 86:6
87:8 88:9
96:21 97:15,25
98:11,12
100:18 103:15
103:16 110:16
111:19 129:15

131:5
**we've**   12:24
13:6,12 17:13
19:7 21:12,25
24:17 28:14
33:9,12 34:1
35:12,22 41:2
45:17 46:15
50:9 52:9,10
52:11,16 53:10
53:16 65:22
67:24 70:3,5,7
70:13,25 71:22
75:1,2 77:1
82:21 83:20
86:12 88:8
89:4 93:13
94:21 95:19,22
96:24 97:25
99:10 103:8,17
103:18 106:16
106:19 110:15
113:19,19
115:19 117:6
124:12 129:24
130:2,6 131:13
**wharton**   8:13
10:17
**whatsoever**
17:20,21 55:14
87:11,17
114:13
**what's**   20:12
89:5 93:3
100:24 117:8
118:19

**wholly**   21:21
112:7
**william**   49:6
**window**   76:20
**winston**   11:25
115:6 125:3
**wire**   107:24
**wires**   73:2
**wise**   40:9
103:25,25
**wish**   125:1
**wishing**   11:23
**withdraw**   12:9
12:16
**withdrawn**
12:12
**withy**   127:25
**witnesses**
42:10
**wl**   19:15 23:10
27:2 33:3,17
33:19 93:18
106:9,14
**won't**   29:21
31:13,24 32:2
34:4 35:15
47:2 64:10
79:1 102:24
106:2 112:22
115:11 122:15
127:9 129:20
**woori**   22:18
**word**   105:3
123:14
**words**   15:13
31:16 32:15
61:17 64:23

[words - '22]                                                                              Page 53

| | y | 78:12,13 79:13 | , |
|---|---|---|---|
| 73:3 83:5 | | 79:14 81:1 | |
| **work** 15:9 | y 124:24 | 84:2,9,9,12 | **'08** 107:3 |
| 16:13 18:20 | **yanko** 57:8 | 85:8 93:19,19 | **'09** 107:4 |
| 21:24 97:1 | **yeah** 53:3 68:2 | 94:1,8 107:11 | **'22** 106:10 |
| 98:25 104:20 | 68:3 85:17,19 | 107:17,18 | |
| 115:10 | 123:23 | 109:1,2,12,23 | |
| **worked** 21:23 | **yeahy** 104:20 | 109:25 116:22 | |
| 98:8 | **year** 20:3 | 117:9,10,11 | |
| **working** 98:15 | 23:10 25:11 | 118:19 119:13 | |
| **works** 80:18 | 55:24 61:13 | 119:15,18,25 | |
| 111:9 | 106:6 122:22 | 123:7 124:7,16 | |
| **world** 14:16 | **years** 22:24 | 129:16 130:7 | |
| 103:2 | 40:18 47:22 | 130:13,14 | |
| **worse** 32:25 | 56:11 62:22 | **york's** 22:12 | |
| **worth** 33:16 | 72:15 81:5 | **you'll** 29:22,23 | |
| 99:20 | 91:18 113:6 | 30:1 35:7 | |
| **worthy** 53:21 | **years'** 99:20 | 40:14 42:16 | |
| **wouldn't** 84:12 | **york** 1:2 3:20 | 81:10 86:17 | |
| 121:19 | 8:16 15:20,23 | 108:19 | |
| **wrap** 26:20 | 19:14 20:3 | **you're** 34:10 | |
| **wraps** 122:4 | 27:3,10,14,16 | 67:4 71:19 | |
| **writing** 20:9 | 27:20 28:10,16 | 84:4 85:7,19 | |
| **wrong** 18:12 | 28:17,19 33:18 | 88:25 92:16 | |
| 45:4 61:16 | 34:12,16,25 | **you've** 28:7 | |
| 62:16 88:25 | 35:24 36:6,8 | 38:4 86:13,21 | |
| 103:4 | 37:3 38:5,6,10 | 87:3 88:25 | |
| **wrongdoing** | 43:22,24 44:19 | 92:1 101:2,13 | |
| 62:5 65:11 | 45:7 46:2,3,14 | 102:21 103:24 | |
| 76:17 122:2 | 47:8,13 48:3 | 110:14 127:7 | |
| | 49:17 56:24 | | |
| x | 58:11,23 59:10 | z | |
| x 1:4,9,11,17 | 60:6 61:12 | z 9:16 | |
| 1:19,25 2:2,8 | 65:9,12 66:5 | **zero** 58:20 | |
| 2:10,16,18,24 | 66:21 67:1,2,8 | **zoom** 10:13 | |
| 3:1,3,9,11,17 | 70:21 71:16 | **zurich** 87:22 | |
| | 74:20 77:16,22 | | |
| | 77:23 78:3,4 | | |